GAY CROSTHWAIT GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:  (415) 433-6830
Facsimile:  (415) 433-7104
Email:       ggrunfeld@rbgg.com
             vswearingen@rbgg.com
             pkaul@rbgg.com
             eanderson@rbgg.com
             hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
2001 Addison Street, Suite 300
Berkeley, California  94704-1165
Telephone:  (510) 806-7366
Facsimile:  (510) 694-6314
Email:       ajf@aaronfischerlaw.com

(*additional counsel on following page*)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ERNEST ARCHULETA, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, CORRECTIONAL HEALTHCARE PARTNERS, INC., LIBERTY HEALTHCARE, INC., MID-AMERICA HEALTH, INC., LOGAN HAAK, M.D., INC., SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-WVG<br><br>**DECLARATION OF DARRYL LEE DUNSMORE IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION**<br><br>Judge:      Hon. Anthony J. Battaglia<br><br>Trial Date:   None Set |

[3903205.1]

Case No. 3:20-cv-00406-AJB-WVG

DECLARATION OF DARRYL LEE DUNSMORE IN SUPPORT OF PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

1  (*counsel continued from preceding page*)

2  CHRISTOPHER M. YOUNG – 163319
   ISABELLA NEAL – 328323
3  OLIVER KIEFER – 332830
   DLA PIPER LLP (US)
4  401 B Street, Suite 1700
   San Diego, California  92101-4297
5  Telephone:   (619) 699-2700
   Facsimile:   (619) 699-2701
6  Email:       christopher.young@dlapiper.com
                isabella.neal@dlapiper.com
7                oliver.kiefer@dlapiper.com

8  BARDIS VAKILI – 247783
   JONATHAN MARKOVITZ – 301767
9  ACLU FOUNDATION OF SAN DIEGO &
   IMPERIAL COUNTIES
10 2760 Fifth Avenue, Suite 300
   San Diego, California  92103-6330
11 Telephone:   (619) 232-2121
   Email:       bvakili@aclusandiego.org
12                jmarkovitz@aclusandiego.org

13 Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DARRYL LEE DUNSMORE IN SUPPORT OF PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

**DECLARATION OF DARRYL LEE DUNSMORE**

I, Darryl Lee Dunsmore, declare:

1.     I have personal knowledge of the matters set forth herein, and if called as a witness, I could and would competently so testify.

2.     I am 54 years old.  I have been incarcerated at the San Diego County Jail ("the Jail") multiple times over the past decade.  Most recently, I was housed at the San Diego Central Jail facility on the third floor in cell 20 from December 13, 2019 to April 21, 2021.  My booking number was BK19777041.  I am currently incarcerated in the California Department of Corrections and Rehabilitation ("CDCR") at California Health Care Facility ("CHCF") in Stockton, California.

3.     I have been incarcerated in the Jail at least four or five times since 2002.  I have returned to the Jail on out to court proceedings related to my original criminal sentence.  I have been housed at the following facilities in the Jail: Central Jail, George Bailey Detention Facility, and South Bay Detention Facility.

4.     It is my understanding that I could be sent back to the Jail if I need to be present in court related to the criminal charges that resulted in me being sent to prison.  I have two pending habeas petitions and an active appeal of a petition under SB 775.  I also recently filed another motion for resentencing under SB 483.  I anticipate returning to the Jail in the near future for resentencing or proceedings related to these and other petitions.  I could also be sent back to the Jail if it were necessary for me to testify in this case about the problems I experienced in the Jail.  In addition, I will parole from prison at some point in the future.  When I parole, I will be sent back to San Diego County, which is the county in which I was convicted and where I lived prior to my arrest.  While on parole, I could be arrested and placed in the Jail simply for allegedly violating the terms and conditions of my parole, whether or not the alleged violation constitutes a violation of a criminal law.  I am deeply concerned that, if I am sent back to the Jail, I will experience problems similar to the problems I have experienced in the past.

5.     I have physical disabilities. I have a rare and advanced form of arthritis known as Ankylosing Spondylitis ("AS"). I started to have back pain decades ago, which was an early sign of AS. I have sections of my spine fused together. I often experience inflammation, pain, and stiffness in other areas of the body, including the hands and feet. I use a wheelchair in CDCR. I also used a wheelchair while incarcerated at the Jail.

6.     My AS greatly affects the use of my hands. Over the years, I have slowly lost feeling in both of my hands, making it difficult to grip items. I require modified utensils to help me write and eat. These utensils – a pencil and spoon – have foam handles attached to them to help me with my grip. I also use a personal straw to help me drink. Because of my AS, I cannot tip my head back properly to drink things, so I require a straw when drinking. I have fastened shirts for myself that zipper off at the front, because that is the easiest way for me to take on and off my shirts. I did not use zippers at the Jail, but I created these ties at the front. Typically, at the Jail, I did not change my shirt frequently. It was hard to get assistance to change my shirts, so I kept one on me for multiple days or weeks at a time.

7.     To treat my AS, I receive injections of an experimental drug known as Enbrel. I receive an injection of Enbrel once every week in my upper left thigh. Enbrel has been effective in treating my AS and has allowed me to be more mobile than other patients with the condition. I also require regular physical activity to stay somewhat mobile. The longer I spend lying down, the more difficult it is for me to move days later.

8.     My disability waxes and wanes. There will be days where I am able to move around more than others. Sometimes, my AS flares up and I will be in such significant pain that I am paralyzed by it. In those hours or days of paralysis, I need assistance eating and performing other activities of daily living. Many outside observers do not understand how my disability presents itself differently depending

1 | on the day. It has been difficult for me to receive consistent and adequate
2 | accommodations for my disability in the Jail due to this lack of understanding.

3 |      9.     I have mental health disabilities. I have depression and anxiety. In the
4 | past, I have been diagnosed as bipolar and schizophrenic by outside clinicians. I
5 | accessed mental health care services in the Jail.

6 |      10.    I also have an intellectual disability, that I believe may be associated
7 | with my arthritis. I struggle to process information and have to re-read things to
8 | fully comprehend them.

9 |      11.    I have a number of serious medical conditions besides those already
10 | described. I am a type II diabetic. I also suffer from dysphagia, which means I
11 | struggle to swallow things on my own. I use a Nestle Food Thickener to help me
12 | swallow certain liquids. I also suffer from Gastro-esophageal Reflux Disease
13 | ("GERD") and high blood pressure. I also have chronic immunosuppression
14 | because of the Enbrel rejections I receive.

15 |      12.    In my experience, the Jail is an unsafe and unfair place for incarcerated
16 | people with disabilities.

17 |      13.    On August 16, 2018, I booked into San Diego Central Jail. I came
18 | from CDCR and was there for resentencing of my original conviction. I was housed
19 | in a Medical Observation Bed ("MOB") because of my medical conditions. I
20 | booked into the Jail with the following assistive devices for my disability: a
21 | wheelchair, walker, a cane, a mobility vest, magnifying glass, and orthotic shoes. I
22 | had my modified spoon, straw, and pencil in my possession too. I also used waffle
23 | foams on my bed rail. The foams enabled me to grip the sides of the bed and sit
24 | upright. There are days where I sometimes cannot lift myself up on the bed.
25 | Attached hereto as **Exhibit A** is a true and correct copy from my medical file of an
26 | intake note indicating some of the assistive devices with which I arrived at the Jail.

27 |      14.    During the first few weeks of my time at the Jail, I was managing in the
28 | MOB unit. The MOB cells have a bed, a toilet, and a sink. There is also an

1 adjustable table you can move up or down depending on your height. The sink and
2 toilets have railings to help assist you, as they are low to the ground. There were
3 three emergency call buttons in the cell. There was also a TV mounted up near the
4 ceiling, although I had to rely on deputies to turn it on and off. When I requested to
5 turn it on, deputies rarely did.

6     15.     Because I was able to receive more assistance and attention for my
7 physical and medical conditions in the medical unit, my symptoms from AS
8 lessened. I was able to be somewhat more mobile and exercise out on the yard.

9     16.     On September 12, 2018, the Jail suddenly confiscated my wheelchair
10 and special spoon. The floor staff informed me that on September 4, 2018, the Jail
11 had captured a video of me exercising out on the yard and walking around. They
12 told me I was lying about my disability. Attached hereto as **Exhibit B** is a true and
13 correct copy of a medical progress note indicating medical staff had received a
14 verbal order from Dr. Berkman to discontinue my wheelchair and special utensils.
15 As I explained, I am somewhat more mobile in my legs than I am in the use of my
16 back and hands. My ability to perform daily activities can vary. I require exercise
17 to treat my AS. It is a form of pain management, because the longer I am inactive,
18 the worse my symptoms get. Since my diagnosis of AS, specialists have prescribed
19 me exercise to treat my disability.

20     17.     Staff discharged me from the MOB on September 12, 2018. When
21 staff confiscated my assistive devices and informed me I would no longer receive
22 care in the MOB, I panicked. I knew that I would not be able to function without
23 these accommodations for my disability. I was distraught and angry. I began to
24 decompensate at the thought of not being able to eat or move around properly
25 without my special spoon and wheelchair. I told staff that I was suicidal upon
26 learning of my discharge.

27     18.     Staff transferred me to Enhanced Observation Housing ("EOH"). I
28 stayed in an EOH cell for five or six days. EOH cells are solitary confinement cells

1   for incarcerated people at risk of self-harm or suicide.  Clinical and custody staff are
2   supposed to conduct routine welfare checks every 15 minutes.  The Jail denied me
3   my property and clothes.  I covered myself with a safety garment.  There was only a
4   toilet and a thin mattress in the cell.

5       19.    For multiple days, I slept on the floor on a thin mattress by the cell's
6   food port.  I did not have my wheelchair and there were no grab bars installed by the
7   toilet, making it very hard to use the restroom.  I often made a mess in the cell when
8   I tried to use it, sometimes urinating and defecating on the ground.  Despite asking
9   for my ADA cutlery on multiple occasions, staff refused to give them to me.
10  Without my special utensils, I could not eat the food staff brought to me.  Because I
11  did not want to eat with my hands like an animal, I refused the food brought to me
12  for those five or six days I was in the EOH.  During that time, the room smelt like
13  urine and was filled with trash and dirtied toilet paper.  Attached hereto as **Exhibit**
14  **C** is a true and correct copy of a September 16, 2018 clinical staff observation note
15  during my EOH stay.  I pleaded with staff as they passed by that I needed to be
16  housed in an MOB cell and I needed my assistive devices.  They were indifferent to
17  my pleas.

18      20.    Suddenly, the Jail discharged me from the EOH cell and transferred me
19  back to CDCR on or around September 19, 2018.

20      21.    My experience in the Jail in 2018 has affected the way I program in Jail
21  and prison significantly.  While incarcerated, I have always had to fight to receive
22  help because no one has understood my disability.  I feel like I have to hide my
23  mobility because I am afraid that Jail and prison staff will label me a liar and take
24  away my assistive devices.  Because medical and custody personnel do not
25  understand my disability while incarcerated, I have to stay debilitated to prevent
26  myself from being even more debilitated without my assistive devices.

27

28

22.    On December 13, 2019, I again returned to the Jail for resentencing. I resided there for over a year, until I transferred back to CDCR on April 21, 2021. I was housed in an MOB cell.

23.    I arrived at the Jail with the following assistive devices I used in state prison: my spoon, straw, and writing utensil, wheelchair, cane, orthotic shoes, mobility vest, and magnifying glass to help me see. Physicians within CDCR had prescribed me these assistive devices on a permanent basis. Attached hereto as **Exhibit D** is a true and correct copy from my medical file of a CDCR form listing the assistive devices prescribed to me, updated on December 5, 2019, shortly before I arrived at the Jail. I also arrived with a large amount of my legal property, which included paperwork related to my criminal and civil proceedings. Upon my arrival, the Jail immediately confiscated many of my assistive devices, including my spoon and straw, cane, shoes, vest, and magnifying glass. The Jail also confiscated my legal property and did not return it to me for several months.

24.    Given that I have been incarcerated at the Jail multiple times, staff should have been aware of my disability-related accommodations upon my arrival. I did not receive my cane during the entirety of my stay at the Jail from December 2019 until April 2021 and only received one when I returned to CDCR. The Jail later returned my ADA-accessible straw and spoon to me.

25.    I also arrived back at the Jail with a grabber, which is a device the same length as a cane that has claws that open and close at the end. I used the grabber in CDCR to help pick items up, as my disability makes it difficult to bend down. The Jail confiscated my grabber upon arrival and never returned it to me.

26.    At the time of my incarceration in December 2019, I received four shots of insulin to treat my diabetes. When I first arrived at the Jail, I received my four shots of insulin. The Jail began to taper me off insulin, giving me only one shot a day for the next few days. The Jail then discontinued my insulin altogether. They would only give me insulin if my numbers were over 250 mg/dL. Attached hereto

1 | as **Exhibit E** is a true and correct copy of a nursing note from my medical file in
2 | which I asked staff about the change in my levels of insulin. The Jail would not
3 | relent. As a result of this sudden change in my insulin levels, I became very thirsty,
4 | started urinating frequently, and experienced extreme fatigue.

5 | 27. The Jail also refused to continue my medical diet to help treat my
6 | dysphagia. While in CDCR custody and during my previous incarcerations at the
7 | Jail, I was on a medical diet. This diet consisted of ground food and thickened
8 | liquids. Attached hereto as **Exhibit F** is a true and correct copy of a December 4,
9 | 2018 medical classification document from my time in CDCR noting that I required
10 | a "chopped/ground" diet.

11 | 28. Because the food Jail staff gave to me was not considered a ground
12 | diet, I used my ADA spoon to try and cut up the food to make it easier to eat.
13 | Around early February 2020, I broke my ADA-accessible spoon while trying to
14 | grind and cut the meat included in my meal. I requested a new ADA spoon.
15 | Attached hereto as **Exhibit G** is a true and correct copy of an inmate request form I
16 | filed on February 8, 2020, noting that I had broken my ADA spoon and asking for a
17 | new one. While waiting for a new spoon, I had made a makeshift spoon by breaking
18 | the handle on my water pitcher and using a paper clip, homemade string, and tape to
19 | tie it all together. In March 2020, more than a month later, the Jail gave me a
20 | pediatric spoon to use, but it was too small for me to grip effectively. Attached
21 | hereto as **Exhibit H** is a true and correct copy of an MOB progress note in which
22 | RN Shiflet issued me a spoon on March 8, 2020. I requested a larger spoon on
23 | several occasions. Nursing staff could see that the pediatric spoon was useless.
24 | They took the spoon away and told me they would search for a better alternative.

25 | 29. In December 2020, almost a year after I had requested a replacement
26 | spoon, the Jail gave me back the very same pediatric spoon that did not work. I was
27 | shocked and frustrated that they gave me the same ineffective spoon. Attached
28 | hereto as **Exhibit I** is a true and correct copy of a December 31, 2020 document

[3882338.1] 

7

DD

1 from my medical file reflecting my discussion with nursing staff in which I
2 explained that the pediatric spoon was too small for me and I was unable to use it.
3 During the rest of my incarceration, I continued to use my homemade spoon to eat.
4 Using this makeshift spoon put me at risk because I had created it using contraband
5 materials and staff could have issued me a disciplinary infraction for keeping
6 contraband items. However, I was desperate for a working utensil, and so I
7 accepted the risk.

8       30.    I also had issues receiving accessible writing utensils. Because of my
9 AS, I struggle to grip a pencil normally, making writing very difficult. When I
10 arrived at the Jail in 2019, I brought with me writing utensils with long handles,
11 which allowed me to grip the length of the pencil. The Jail confiscated those
12 utensils upon my arrival. I asked for longer writing utensils so that I could fit my
13 therapeutic foam handles on the length of the pencil. Attached hereto as **Exhibit J**
14 is a true and correct copy of a document from my medical file noting that I had filed
15 a sick call slip on or around February 7, 2020 requesting a proper writing utensil
16 because I could not use the small pencils.

17       31.    The Jail refused to give me longer writing utensils for over a year and
18 continued to make me use small and short pencils I could not grip. I ended up
19 having to modify the Jail-issued pencils myself. I used my Nestle Food Thickener
20 as a paste and lengthened a pencil to use it. About a year later, the Jail supplied me
21 with a special writing device that I had never used before. It was made up of a small
22 plastic tube (where the pencil could go through) and a string that I could wrap
23 around my hand to allow me to write. I asked staff to help me learn how to use the
24 device, but deputies and medical staff did not know how it worked either. Before
25 anyone could give me instructions about how to use it, a deputy confiscated the
26 device during a cell search and threw it away. I believe the deputy threw it out
27 because he thought it was contraband.

28

[3882338.1]                                         8

1     32.    During my incarceration at CHCF, I had a three tier locker to store my

2   clothing, property and legal property.  Because I am a wheelchair user with AS, I

3   struggle to bend down and pick things up from the floor.  The three tier locker

4   allowed me to store my property so that I did not have to bend down.  Upon my

5   arrival to the Jail on December 13, 2019, I had to store my property on the ground

6   because the cell was not equipped with any storage or shelving.  I requested

7   specialized shelving on or around February 10, 2020 in an inmate request form.  I

8   explained that it was difficult to bend down and pick things up.  A true and correct

9   copy of a document from my medical file noting this inmate request form is attached

10  hereto as **Exhibit K**.  The Jail did put an extra table in my cell, but it could not store

11  all of my property and I had to place the rest on the ground.

12     33.    In early March 2020, after bending over in my wheelchair to pick some

13  of my property off the ground, I noticed a sharp pain in my groin area.  After a few

14  days, a protrusion formed around my belly button and there was consistent pain in

15  the area.  I first verbally reported the pain to medical staff who were passing by my

16  cell.  On March 11, 2020, I reported that I had a hernia to medical staff in a sick call

17  slip.  Medical staff had different opinions about whether or not I had a hernia.

18  When I first saw a doctor, on or around March 26, 2020, he diagnosed me with a

19  hernia.  A few days later, on or around March 30, 2020, another doctor said that I

20  did not have a hernia.  The doctor gave me an abdominal binder to help with my

21  pain.  Attached hereto as **Exhibit L** are true and correct copies of progress notes

22  from my medical records noting these interactions with medical staff.

23     34.    I continued to experience pain in my groin and when peeing and a

24  protrusion from my belly.  The protrusion seemed to swell when I started coughing.

25  On or around June 4, 2020, I put in a medical request stating that I continued to have

26  difficulty peeing and I thought my hernia was worsening.  Medical staff gave me a

27  new abdominal binder but did not provide me with more treatment.  Attached hereto

28

1   as **Exhibit M** are true and correct copies of medical progress notes from my file

2   confirming this.

3      35.    There were many issues with the emergency call button system at the

4   Jail, which put people incarcerated there at a serious risk of harm. There are three

5   emergency call buttons in the Jail's medical isolation cells—one next to the bed, one

6   down by the toilet, and one on a cell wall near a speaker.

7      36.    During my 2019 incarceration, I discovered that the only functioning

8   call button was the one near the toilet, which the Jail had informed me was intended

9   for emergency use only. At the time, I was cutting up my food to be able to eat it

10   more easily. I started to choke on a large piece of food I had not cut properly. I

11   could not breathe and I frantically pushed the call button by my bed and the one on

12   the wall. I got no response. I pushed the one by the toilet and staff finally

13   responded twenty or thirty minutes later. Luckily, by the time staff arrived I had

14   stopped choking and managed to swallow the food. A nurse came into my cell and I

15   explained the situation: that the call buttons did not work because no one responded

16   to me when I pressed them. The nurse seemed upset with me. She said, "if you

17   have that kind of problem, you'll just go to the rubber room." The rubber room

18   refers to a safety cell that people go to when on suicide watch. I believe the nurse

19   was upset that I pushed the emergency call button but, by the time she came to see

20   me, I was no longer choking. I think she mentioned the rubber room as a threat,

21   saying that I should not push the call button unless it was a real emergency. From

22   my experience at the Jail, if a person inconveniences staff enough, they will put you

23   in the rubber room as punishment.

24      37.    The Jail's entire call button system malfunctioned on multiple other

25   occasions. My cell tended to get extremely cold, which exacerbated my AS

26   symptoms. In order to stay warm, I covered up the vents in my cell. There is a

27   sensor that should go off when I cover the vents for an extended period of time. I

28   knew this from prior incarcerations at the Jail. However, the sensor was faulty and

1 would go off at random intervals, even when the vent was not covered. I believe
2 this meant the Jail's entire alarm system had glitches.

3     38.   I also had problems showering in the medical observation unit. In my
4 cell, I had a single shower. I requested to use the shower in my cell on multiple
5 occasions, but deputies refused to let me shower alone. When the COVID-19
6 pandemic started, I became increasingly nervous about using a communal shower.
7 I am immuno-compromised, which means that I was and continue to be at risk of
8 becoming seriously ill or dying from COVID-19 or any other infection. I asked
9 deputies in my unit to turn the water on for the shower in my cell so that I could
10 shower safely, but they refused me. I was too scared to use communal showers for
11 fear of becoming sick and dying. Because I could not shower with other people, I
12 bird bathed in my cell. Bird bathing means to use the water from your cell's sink to
13 clean yourself. I cleaned myself this way for the sixteen or so months while I was in
14 custody at the Jail.

15     39.   The Jail consistently denied me proper access to legal research, its law
16 library, and the courts.

17     40.   I have been recognized as a pro per litigant by the California Court of
18 Appeal's Fourth Appellate District. I was also proceeding pro se on several federal
19 habeas petitions while in the Jail. When you are designated as pro per, you have
20 access in the Jail to the law library and a runner, who will deliver documents to the
21 court for you. There are also copy and print out services available, where I can use
22 pleading paper and legal-size envelopes. The Jail will not provide you with these
23 services unless you are pro per.

24     41.   I filed multiple cases in the Superior Court against the San Diego
25 Sheriff's Department for their failure to accommodate my disability and medical
26 conditions, as well as about my own criminal conviction. The Jail denied me pro
27 per privileges, including access to legal research, the law library, and other
28 resources. When I showed the Jail my court designations, they told me to speak

[3882338.1]            11

1 │ with the Office of Assigned Counsel ("OAC"). The OAC then referred me back to
2 │ the court to get pro per access, creating a never-ending cycle.

3 │     42.    The Jail also had a separate legal research process available where you
4 │ could request different materials that amount to a certain number of pages.
5 │ However, this process did not really allow me to perform case law research. I
6 │ would have to know exactly what case or material I was looking for; I was unable to
7 │ access a computer to do my own reading and research, which I could have done at
8 │ the Jail's law library.

9 │     43.    Because the Jail denied me this access, I was unable to develop an
10 │ accurate and sufficient record in court. I incurred multiple filing fees, and I believe
11 │ the lack of access to legal research and resources contributed to the dismissal of
12 │ several of my civil claims. Attached hereto as **Exhibit N** are true and correct copies
13 │ of request forms I filed stating the Jail was obstructing my access to the courts and
14 │ legal research.

15 │     44.    The Jail also confiscated multiple boxes of my legal property when I
16 │ first arrived in 2019. The Jail claimed that I had an excessive amount of paperwork,
17 │ but that was not true. I had paperwork that was able to fit within six or seven cubic
18 │ square feet and there remained plenty of room in my cell. When incarcerated
19 │ previously, I never had an issue with legal property.

20 │     45.    I continued to push to know where my legal property was by filing
21 │ multiple grievances. A female Sergeant Sipperly told me that she had stored my
22 │ paperwork in her office. I thought that was inappropriate and a confidentiality issue,
23 │ as many of my legal documents involved complaints I had made against the Jail
24 │ during my 2018 incarceration. After about two or three weeks, I received a small
25 │ portion of my legal property back. I did not receive the rest of my property until
26 │ about 90 days after I first arrived at the Jail. When I received the papers back, I
27 │ discovered that several documents had disappeared.

28 │

46.     I lost many materials related to potential challenges for my criminal convictions and civil proceedings.  One of the boxes that disappeared involved crucial discovery related to my original conviction.  Several grievances I filed against the Jail and Sheriff's department, as well as complaints against the Citizen's Law Enforcement Review Board ("CLERB") went missing.

47.     I have had many problems using the grievance process at the Jail.  I estimate that I have filed over twenty to thirty grievances about the Jail's failure to accommodate my disability and medical needs, as well as allow me access to my pro per privileges.  The Jail did not respond to the majority of my grievances.  I believe many deputies simply threw my grievances away and did not process them.  Attached hereto as **Exhibit O** is a November 27, 2020 grievance I filed stating that the Jail was failing to provide a timely response or any response at all to my grievances.

48.     When staff do not understand people with disabilities, those people's lives are not only endangered, but their livelihood is disrupted, just as mine was when Jail staff continually refused me my assistive devices that allow me to live my life to the fullest.  I believe the Jail needs checks and balances to ensure people incarcerated there are treated humanely.  I also believe the Jail's grievance and legal access procedures need a significant overhaul.  A system that does not allow people to air their grievances properly disempowers individuals, stops them from rehabilitating and educating themselves, and keeps them subject to mental and physical abuse.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1      49.    I agreed to be a class representative in this case because I want to help

2 improve the medical, dental, and mental health care at the Jail, ensure that

3 incarcerated people with disabilities are accommodated and treated fairly, ensure

4 access to rehabilitative programs, and help make the Jail safe and secure for all

5 people. I have been cooperating fully with my counsel and am responding to all

6 requests for information to the best of my ability and recollection, and will continue

7 to do so in the future. My lawyers keep me updated on the progress of this case, and

8 I will review all materials provided to me and provide my input to the best of my

9 ability. When I have questions about the case, I will ask the attorneys for help to

10 understand everything to the best of my ability.

11      I declare under penalty of perjury under the laws of California and the United

12 States of America that the foregoing is true and correct, and that this declaration is

13 executed at Stockton, California this __30__ day of __Mar__, 2022.

14

15                                Darryl Lee Dunsmore

16

17

18

19

20

21

22

23

24

25

26

27

28

[3882338.1]

14

# EXHIBITS A-M

## Filed Under Seal

1

# EXHIBIT N



**San Diego County**
## SHERIFF'S DEPARTMENT
### INMATE REQUEST *(PETICION DEL RECLUSO)*

---

**SECTION I**    **Complete the following information:** *(Llene la siguiente informacion)*

**Facility:**  ☒ SDCJ    ☐ FAC8    ☐ EMRF    ☐ GBDF    ☐ LCDRF    ☐ SBDF    ☐ VDF
*(Carcel)*

**Name:** Darryl Dunsmore
*(Nombre)*

**Booking #:** 1677041        **Date of Birth:** 9/12/67        **Housing Unit:** M6b 11
*(Número)*                      *(Fecha de Nacimiento)*                  *(Unidad)*

---

**SECTION II**    **Refer to instructions on the back of this form.**
*Refiere se a las instrucciones al revez de este formulario.*

**I have a Request for the following:**
*(Tengo una petición a lo siguiente):*

My Legal Access to the Court are being Obstructed I'm requesting to speak to Someone from DePo to file Grievance

**Signature:** _Darryl D_        **Date and Time:** 12/18/19
*(Firma)*                          *(Fecha y hora)*

---

**SECTION III**        **RESPONSE BY DETENTION FACILITY STAFF ONLY**

**Forwarded to:** _____    **Date:** _____    **Time:** _____

**Completed by:** _____                **Date:** _____

J-21 (REV 01/15) FRONT

Ex. N
3

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|

No front Page.
is copy of

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.

**Appeal is subject to rejection if one row of text per line is exceeded.    WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First). | CDC Number: | Unit/Cell Number: Mob - 11 | Assignment: |
|---|---|---|---|

**A.  Continuation of CDCR 602, Section A only (Explain your issue) :**

Legal Access obstruction of Court Access

I am being harrased in San Diego County Jail
and im being Denied Legal Access and my
Legal property Contrary To policy and law

Action Requested immediate Access to Legal
Services + Legal property This Complaint
Directed To The appropiate office for
Processing

Inmate/Parolee Signature: _____    Date Submitted: 12/16/19

**B.  Continuation of CDCR 602, Section B only (Action requested):**

Immediate access To Legal Services and Legal property

Supporting Document

Inmate/Parolee Signature: _____    Date Submitted: _____

Ex. N
4

# EXHIBIT O



# San Diego County
# SHERIFF'S DEPARTMENT

## INMATE GRIEVANCE/APPEAL OF DISCIPLINE
## *QUEJA/APELACION DE LA DISCIPLINA DE PRESO*

☒ **SDCJ**    ☐ **GBDF**    ☐ **EMRF**    ☐ **LCDRF**    ☐ **SBDF**    ☐ **VDF**    ☐ **FAC8**

From: Dunsmore Darryl Lee
*De:*    Name (Last, First, Middle)          Booking Number          Housing Unit
         *Nombre (Apellido, Primero, Segundo)*    *Número de ficha*    *Unidad de alojamiento*

Grievance is about:  ☒ Jail Procedures   ☒ Jail Conditions   ☐ Medical   ☐ PREA   ☒ Other  Due
*La queja es acerca:*   *Procedimientos de*   *Condiciones de*   *Médico*              *Otro*  Process
                        *la Cárcel*           *la Cárcel*

Date and Time of Incident / *Fecha y hora del incidente:*    Ongoing

Describe the reason for your grievance in your own words. Please be specific. (Use additional sheets if necessary)
*Describa la razón de su queja en sus propias palabras. Por favor sea específico. (Use hojas adicionales si es necesario)*

My Due process and ADA access are unconstitutionally denied
with Deliberate indifference with Deliberate willfull refusal
To provide a Timely or any response at all Contrary To The
Due process clause of The United State in order to Deprive
Me Meaningful access to The Court and To Discriminate against
a qualified ADA individule and Cause Cruel & Unusual
Punishment by refusal To address numerous grievence or Take
Corrective changes according To Law

D-D~~~                                    11/27/20
Inmate Signature / *Firma de Preso*        Date / *Fecha*

Received in
DEC 07 2020
Sheriff's Internal Affairs

---

THIS BOX IS FOR OFFICIAL USE ONLY
*Esta caja es para el uso oficial solamente.*

Received by: R MATA                    3986        11/27/20    1146
             Signature of receiving staff member    ARJIS #    Date    Time

Entered in JIMS: _____  _____  _____
                    Date              Time            JIMS Grievance Number

If one of the following two conditions is alleged by the inmate, this grievance must be answered within 4 days:
  ☐  The inmate's health or safety is unfairly impacted by a condition of confinement
  ☐  A condition of confinement has prevented the inmate's effective communication/participation in a legal hearing.

☐ This submission is not a grievance:
  ☐  It is an appeal of discipline—JIMS Incident # _____  JIMS Appeal Hearing # _____
  ☐  It is a complaint against staff—JIMS Incident # _____  (Refer to Detentions P&P Section N.1)
  ☐  It is an inmate request—respond in writing below.  (No entry in JIMS, copy of response to booking jacket)
Response to Inmate Request:

_____

                                          2020-527

J-22 (Rev 1/15)   **Original goes to booking jacket**    **Copy goes to inmate after being signed by staff member**

Ex. O