Page 1 of 9

GAY CROSTHWAIT GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
2001 Addison Street, Suite 300
Berkeley, California 94704-1165
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
Email: ajf@aaronfischerlaw.com

(*additional counsel on following page*)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ERNEST ARCHULETA, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, CORRECTIONAL HEALTHCARE PARTNERS, INC., LIBERTY HEALTHCARE, INC., MID-AMERICA HEALTH, INC., LOGAN HAAK, M.D., INC., SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-WVG<br><br>**DECLARATION OF DAVID FRANCIS SMITH III IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION**<br><br>Judge: Hon. Anthony J. Battaglia<br><br>Trial Date: None Set |

[3903205.1]

Case No. 3:20-cv-00406-AJB-WVG
DECLARATION OF DAVID FRANCIS SMITH III IN SUPPORT OF PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

(*counsel continued from preceding page*)

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California 92101-4297
Telephone: (619) 699-2700
Facsimile: (619) 699-2701
Email: christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

BARDIS VAKILI – 247783
JONATHAN MARKOVITZ – 301767
ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
2760 Fifth Avenue, Suite 300
San Diego, California 92103-6330
Telephone: (619) 232-2121
Email: bvakili@aclusandiego.org
jmarkovitz@aclusandiego.org

Attorneys for Plaintiffs

[3903205.1]

Case No. 3:20-cv-00406-AJB-WVG

DECLARATION OF DAVID FRANCIS SMITH III IN SUPPORT OF PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

# DECLARATION OF DAVID FRANCIS SMITH III

I, David Francis Smith III, declare:

1. I have personal knowledge of the matters set forth herein, and if called as a witness, I could and would competently so testify.

2. I have been incarcerated at the San Diego County Jail ("the Jail") since June 2, 2021. My booking number is 21119612. I am 37 years old.

3. I am housed at George Bailey Detention Facility ("George Bailey") in the medical observation ("MOB") unit. I was detained pre-trial until my conviction, and since then have been incarcerated while awaiting transfer to the custody of the California Department of Corrections and Rehabilitation ("CDCR").

4. I have served in the United States Marine Corps for over 18 years, beginning in July 2003. I currently hold the rank of Master Sergeant. I served as a Marine Corps infantryman in multiple combat zones, including in Haiti, Afghanistan, and multiple tours in Iraq. Due to injuries sustained in combat and during my service, I suffer from left sciatic pain, likely occipital neuralgia, and lumbar pain. These conditions cause severe neck and back pain. I also have bilateral plantar fasciitis in my feet. Prior to my incarceration, I was prescribed several medications to manage these conditions. Attached as **Exhibit A** is a true and correct copy of my active pain medication prescriptions, as found in military medical records released to the Sheriff's Department, prior to my incarceration in the Jail.

5. I have also been diagnosed with post-traumatic stress disorder ("PTSD") based on my experiences in the military, and have a traumatic brain injury ("TBI"). At the Jail, I often have not met with mental health staff in confidential spaces. My first several meetings with mental health staff were at the door of the housing unit, where all of the other people in my unit could hear our conversation. Attached as **Exhibit B** is a true and correct copy of a form documenting the Jail's

1

June 10, 2021 initial mental health assessment, with a "non-confidential" box checked. Attached as Exhibit C is a true and correct copy of a July 27, 2021 mental health progress note showing that the clinician met with me "at MOB cell," a non-confidential environment, "due to lack of deputy assistance." The clinician wrote in her progress note that she would only be able to discuss all treatment options "when in a private setting." Meeting within earshot of other people makes it difficult for me to talk openly about the nature of my mental health issues. I only began regularly meeting with mental health staff in confidential spaces after I filed a grievance. Custody staff have also been callous about my mental health needs. In or around August 2021, I told a deputy that due to my PTSD, I sometimes have trouble controlling my anger. The deputy told me that I have to "get over" my PTSD like everybody on the outside.

6. When I first entered the Jail, I was placed into enhanced observation housing ("EOH") because I had discussed harming myself. Attached as **Exhibit D** is a true and correct copy of a June 2, 2021 assessment form indicating that I was placed in an EOH cell that afternoon. My clothes were taken away and I was placed into the cell naked, with a heavy green safety smock. The cell had a bed, mattress, and a blanket. I had to drink water that was trickling from a nub on the toilet, like a hamster. There was no toilet paper in the cell. I had no access to any reading material or the phone to call my family. The cell floor seemed dingy and dirty, like it had not been cleaned in a long time. The time in that cell was one of the worst nights of sleep in my life. People in the unit were screaming all night long. Attached as **Exhibit E** is a true and correct copy of a June 3, 2021 ISP progress note in my Jail medical records, which states that I was not able to use the phone while in EOH and that I told the clinician I could barely sleep because of people screaming and kicking their doors. The experience was so miserable that I resolved not to tell

staff of suicidal thoughts in the future because I did not want to be placed in that cell again.

7. Custody staff have threatened to not provide me with disability accommodations. In the Jail, I am able to walk on my own because I only have to walk short distances. It is more difficult for me to walk out to court because I am shackled to someone else, which means that my back can more easily get pulled, aggravating my pain. During court days I also often have to sit on a bench in a holding cell, without adequate back support, for many hours. Given my neck and back pain, medical staff at the Jail approved me for wheelchair transportation when going out to court.

8. On October 4, 2021, I was scheduled to go out to court in Vista. I was sitting in the court holding cell at George Bailey, with my wheelchair outside the door. Three deputies opened the door of the holding cell to take people out to court and asked me why I needed the wheelchair. I told them about my back pain and that medical had approved me for a transport wheelchair. One deputy said he would check on this with medical. Everyone else in the holding cell was taken to the bus while I waited for 30 or 45 minutes. When the deputy returned, he told me that a sergeant said medical had cleared me to go to the bus for court because it was a short ride. He said that he would let me go to court this time in a wheelchair, but I would not be allowed a wheelchair for my next court date, and if I tried to ask for one, the Jail would consider me a "refusal" to go to court. I was transported to court in a wheelchair-accessible van. When I arrived in Vista, the court deputy there asked if I needed the wheelchair. One of the deputies transporting me said, "We've been asked to entertain it" in a condescending tone, and rolled her eyes. After court ended, I was told by a deputy that no wheelchair-accessible van was scheduled to come to take me back to George Bailey. I sat in the court holding cell for several hours in serious discomfort, until the transfer truck arrived at approximately 4:00

[3868599.2]

3

1 | p.m. I figured taking the transfer truck would be faster than waiting for an
2 | accommodation that would probably not come.
3 |     9. On October 14, 2021, I did take a wheelchair for transport to a medical
4 | appointment at San Diego Central Jail. I decided not to ask for a wheelchair
5 | because I did not want to be considered a refusal, after the deputy's previous threat,
6 | and did not want to miss the medical appointment. I knew from past experience that
7 | if I missed the appointment, it would be at least a few weeks before I could get the
8 | appointment rescheduled. I was especially concerned that a "refusal" would cause
9 | even more delays. I have witnessed other people who are not able to go to medical
10 | appointments and have to start over the request process to even get scheduled for an
11 | appointment.
12 |     10. After the October 14 appointment, I returned to George Bailey and was
13 | placed in a holding cell. The same deputy who harassed me on October 4 arrived to
14 | escort me back to MOB. He asked why I did not have a wheelchair and I told him I
15 | did not feel like being discriminated against, so I did not press the issue that day.
16 | The deputy told me, "You were in the military, you can handle the pain." While we
17 | walked, I explained to him the details and extent of my back pain issues. I should
18 | not have to explain or justify an accommodation medical staff have already
19 | prescribed for me. When officers have said things like that, I felt that it was
20 | bullying, because it made me feel weak and pathetic. I wish I could just walk
21 | without pain, but these are ailments that I have from 18 years of service to my
22 | country, and I should not be discriminated against or harassed because of them.
23 |     11. On October 15, 2021, I asked medical staff whether my wheelchair
24 | transportation order was still active. They said that it was still active and had not
25 | been revoked.
26 |     12. On October 15, 2021, I submitted a grievance about the discrimination
27 | I experienced when going out to court on October 4. Attached as **Exhibit F** is a true
28 |

[3868599.2]

4

and correct copy of that October 15, 2021 grievance and the Jail's response. On October 19, 2021, Sergeant Cortes provided a written response to the grievance. Sergeant Cortes also pulled me out of my dorm to the recreation area to discuss the grievance. The written response from Sergeant Cortes confirms that the Jail's database includes a medical instruction that I can use a wheelchair. Sergeant Cortes also wrote that he had contacted all staff to share this medical instruction. I do not know why all staff were not properly informed of this accommodation before October 4. I should not have to experience discrimination and file a grievance just to receive disability accommodations that are already prescribed for me.

13. The Sheriff's Department has also failed to process grievances that I filed about my treatment in the Jail, including the lack of disability accommodations. On August 12, 2021, I submitted a grievance about conditions at the Jail. It was picked up by staff on August 13. I did not receive any written or verbal response to that grievance, even though the grievance form says the Sheriff's Department must answer it in 7 days. On August 30, 2021, I submitted another grievance because my first grievance went unanswered. A true and correct copy of that August 30, 2021 grievance is attached as **Exhibit G**. I appealed that grievance and then on October 3, 2021, submitted a second level appeal of my grievance. I received a typed response from an unknown staff member stating that I had been referred to an outside pain management clinic. On October 9, 2021, I submitted another appeal asking for a response from the facility commander, as is required under the Jail's grievance policies for second level appeals. The written response to the appeal states that the Sheriff's Department has "no information regarding the nature of the grievance you are requesting a response to." The staff member, whose name is illegible, checked a box that my appeal was not a grievance, but was instead an "inmate request." Attached as **Exhibit H** are true and correct copies of my October 3, 2021 and October 9, 2021 grievances, with the Sheriff's Department's

notations and responses. I do not know how the Sheriff's Department had no record of my earlier grievances.

14. I submit this declaration because I want to help improve the medical, dental, and mental health care at the Jail, ensure that incarcerated people with disabilities are accommodated and treated fairly, and help make sure that all incarcerated people are safe at the Jail.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at San Diego, California this 9th day of March 2022.

David Francis Smith

# EXHIBITS A-H
# Filed Under Seal