1   CRAIG J. MARIAM (SBN: 225280)
    cmariam@grsm.com
2   MICHAEL J. DAILEY (SBN: 301394)
    mdailey@grsm.com
3   LARA S. GARNER (SBN: 234701)
    lsgarner@grsm.com
4   GORDON REES SCULLY MANSUKHANI, LLP
    101 W Broadway, Suite 2000
5   San Diego, CA 92101
    Tel: (619) 696-6700
6   Fax: (213) 680-4470

7   Attorneys for Defendant CORRECTIONAL
    HEALTHCARE PARTNERS, INC.

8

9                  UNITED STATES DISTRICT COURT

10               SOUTHERN DISTRICT OF CALIFORNIA

11

12  DARRYL DUNSMORE, et al.              )  Case No.: 3:20-cv-00406-AJB-WVG
                                         )
13           Plaintiffs,                 )
                                         )
14       v.                              )  **MEMORANDUM OF POINTS AND
                                         )  AUTHORITIES IN SUPPORT OF
15  SAN DIEGO COUNTY SHERIFF'S           )  DEFENDANT CORRECTIONAL
    DEPARTMENT, et al.                   )  HEATLTHCARE PARTNERS,
16                                       )  INC.'S MOTION TO DISMISS
             Defendants.                 )  PLAINTIFFS' SECOND AMENDED
17                                       )  CLASS ACTION COMPLAINT**
                                         )
18                                       )  **JURY TRIAL DEMANDED**
                                         )
19                                       )  **NO HEARING DATE REQUIRED
                                         )  PER CHAMBERS RULES**
20                                       )
                                         )  **NO ORAL ARGUMENT UNLESS
21                                       )  ORDERED BY THE COURT**
                                         )
22                                       )
                                         )  Judge:      Hon. Anthony J. Battaglia
23                                       )  Magistrate:  Hon. William V. Gallo
                                         )
24

25

26

27

28

**Gordon Rees Scully Mansukhani, LLP**
**101 W Broadway, Suite 2000**
**San Diego, CA 92101**

1

**TABLE OF CONTENTS**

2

**Page**

3  I.     INTRODUCTION ....................................................................................1

4  II.    PROCEDURAL HISTORY AND BACKGROUND...................................3

5  III.   LEGAL STANDARD FOR MOTION TO DISMISS ...............................4

6  IV.    LEGAL ARGUMENT .............................................................................6

7          A.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST CHP
                 FOR INADEQUATE MEDICAL CARE UNDER THE FIRST
8                THROUGH FOURTH CAUSES OF ACTION ................................6

9                1.    Plaintiffs Do Not Have Standing to Assert These Alleged
                       Constitutional Violations Because they Are Moot...................7
10
                 2.    Plaintiffs Fail to Assert A Claim Against CHP For
11                     Failure To Provide Adequate Medical Care..............................8

12          B.    PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION
                 UNDER THE ADA OR THE UNRUH CIVIL RIGHTS ACT .........11
13
    V.     CONCLUSION ......................................................................................12
14

**Gordon Rees Scully Mansukhani, LLP**
**101 W Broadway, Suite 2000**
**San Diego, CA 92101**

15
16
17
18
19
20
21
22
23
24
25
26
27
28

- i -

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Anderson v. County of Siskiyou*
   (N.D. Cal., Sept. 13, 2010, No. C 10-01428 SBA) 2010 WL 3619821 ............. 12

5

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................... 5

6

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................... 5

7

8

*Bell v. Wolfish,*
   441 U.S. 520, 535 n.16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) .......................... 6

9

*Berg v. Kincheloe,*
   794 F.2d 457 (9th Cir. 1986) ................................................................................. 8

10

11

*Dilley v. Gunn*
   (9th Cir. 1995) 64 F.3d 1365 ................................................................................. 7

12

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC,*
   753 F.3d 862 (9th Cir. 2014) ............................................................................... 11

13

14

*Est. of Wilson by & through Jackson v. Cty. of San Diego,*
   No. 20-CV-0457-BAS-DEB, 2022 WL 789127 (S.D. Cal. Mar. 14, 2022) ......... 9

15

*Estelle v. Gamble,*
   429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) .............................................. 6

16

17

*Giraldo v. Department of Corrections & Rehabilitation*
   168 Cal.App.4th 231 (2008) .................................................................................. 7

18

*In re Alva,*
   33 Cal.4th 254, 14 Cal.Rptr.3d 811, 92 P.3d 311 (2004) ..................................... 6

19

20

*Leer v. Murphy,*
   844 F.2d 628 (9th Cir. 1988) ................................................................................. 9

21

*Livid Holdings Ltd. v. Saloman Smith Barney, Inc.*
   416 F.3d 940 (9th Cir. 2005) ................................................................................. 5

22

23

*McQuillion v. Schwarzenegger,*
   369 F.3d 1091 (9th Cir. 2004) ............................................................................... 7

24

*Reimers v. Oregon,*
   863 F.2d 630 (9th Cir.1988) .................................................................................. 8

25

26

*Sandoval v. Cty. of San Diego*
   985 F.3d 657 (9th Cir. 2021) ................................................................................. 6

27

28

Gordon Rees Scully Mansukhani, LLP
101 W Broadway, Suite 2000
San Diego, CA 92101

- ii -

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ...................................................................................4

*Thomas v. Hickman*,
   No. 1:06-CV-0215 AWI SMS) 2009 WL 1273190 (E.D. Cal., May 5,
   2009) ........................................................................................................................6

*U.S. ex rel. Chunie v. Ringrose*,
   788 F.2d 638 (9th Cir. 1986) ...................................................................................5

*Zixiang Li v. Kerry*,
   710 F.3d 995 (9th Cir. 2013) ...................................................................................5

**Statutes**

42 United States Code
   Section 1983 .....................................................................................................3, 7, 8

California Civil Code
   Section 51 .................................................................................................................2

**Other Authorities**

Cal. Const. Art. 1, § 17 ...................................................................................................6

**Rules**

Rules of Civil Procedure
   Rule 12.............................................................................................................1, 4, 5

Rules of Civil Procedure
   Rule 8 .......................................................................................................................2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani, LLP**
**101 W Broadway, Suite 2000**
**San Diego, CA 92101**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CORRECTIONAL HEALTH PARTNERS, INC.'S MOTION TO DISMISS THE SAC

3:20-cv-00406-AJB-WVG

**Gordon Rees Scully Mansukhani, LLP**
**101 W Broadway, Suite 2000**
**San Diego, CA 92101**

1    Defendant Correctional Healthcare Partners, Inc. respectfully submits this

2    memorandum of points and authorities in support of its Motion to Dismiss the

3    Second Amended Complaint ("SAC") (ECF No. 81) brought by Plaintiffs Darryl

4    Dunsmore ("Dunsmore"), Ernest Archuleta ("Archuleta"), Anthony Edwards

5    ("Edwards"), Reanna Levy ("Levy"), Josue Lopez ("Lopez"), Christopher Nelson

6    ("Nelson"), Christopher Norwood ("Norwood"), and Laura Zoerner ("Zoerner")

7    (collectively, "Plaintiffs") on behalf of themselves individually and a putative class

8    of similarly situated individuals, pursuant to Rule 12(b)(6) of the Federal Rules of

9    Civil Procedure.

## I.    INTRODUCTION

11    Correctional Healthcare Partners, Inc. ("CHP") was established in June of

12    2020.  It is a private medical group that contracted with the County of San Diego

13    (the "County") in October of 2020 to provide medical services within the County's

14    jail facilities (the "Jail").  Specifically, CHP's licensed physicians and nurse

15    practitioners provide on-site primary and urgent care medical services akin to an

16    urgent care clinic "in accordance with the Sheriff's Department's policies and

17    procedures." *See* SAC ¶ 31.  CHP does <u>not</u> provide any in-patient (*i.e.*, hospital) or

18    out-patient medical treatments, which are separately handled by Tri-City Medical

19    Center ("Tri-City")—a defendant that has already been dismissed from this

20    litigation.  *See* SAC ¶ 32; ECF No. 93 (dismissing defendant Tri-City).

21    Plaintiffs are a variety of individuals, the majority of whom are no longer at

22    the Jail because they either returned to prison or have been released from the

23    California correctional system.  In general terms, Plaintiffs' SAC collects a variety

24    of secondary sources over the last decade to allege that the County Jail is not being

25    run properly.  Despite its heft, the SAC includes a remarkable dearth of allegations

26

27

28

- 1 -

Gordon Rees Scully Mansukhani, LLP
101 W Broadway, Suite 2000
San Diego, CA 92101

1   against CHP and lacks *specific* claims of inadequate medical treatment.[1] The vast

2   majority of the SAC's factual allegations concern neither CHP nor its medical

3   services, relying instead on vague, boilerplate allegations and anecdotal claims

4   largely unrelated to Plaintiffs.  Moreover, the limited medical-related allegations in

5   the SAC actually concern the *former medical provider(s)*, demonstrated by the fact

6   that they pre-date CHP's September 23, 2020 contract with the County.  The SAC

7   also attempts to lump CHP (or its predecessor) in with other defendants, including

8   Tri-City and the San Diego County Sheriff's Department (the "Sheriff's Dept."),

9   which makes it impossible for CHP to discern what allegations are actually being

10  raised against it versus other co-defendants.

11         Only the First through Fourth, Sixth and Eighth Causes of Action are raised

12  against CHP.  The First through Fourth Causes of Action, for violations under the

13  United States and California Constitutions (based on alleged inadequate medical

14  care), fail because [1] Plaintiffs do not have standing to assert any claims because

15  they are no longer being held at the Jail or are on the precipice of being transferred

16  out of the Jail; and [2] Plaintiffs' allegations do include any direct allegations

17  against CHP for failure to provide medical services or any allegations that CHP has

18  ever acted with deliberate indifference.  Instead, the SAC relies on anecdotal

19  evidence concerning prior service providers and pleads in a conclusory, general

20  fashion against multiple defendants, which runs afoul of Rule 8 of the Federal

21  Rules of Civil Procedure.

22         The Sixth Cause of Action for violations of the Americans with Disabilities

23  Act ("ADA") and the Eighth Cause of Action for violations of the California

24  Unruh Civil Rights Act (Cal. Civ. Code § 51 *et seq.*) fail to assert that CHP has

25  discriminated against any Plaintiff—or, indeed, anyone at any time.  No Plaintiff

26

27  [1] The SAC separately refers to medical treatments and "mental health" treatments.
CHP does not provide mental health treatments, which are separately provided by

28  Liberty Healthcare, Inc. ("Liberty").

- 2 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CORRECTIONAL HEALTH PARTNERS, INC.'S MOTION TO DISMISS THE SAC

3:20-cv-00406-AJB-WVG

1  alleges that CHP committed any violation of the ADA, which is the basis for

2  Plaintiffs' claims under the Unruh Act.  Most factual allegations related to alleged

3  ADA violations concern other defendants (*e.g.*, the County and the Sheriff's Dept.)

4  or pertain to issues that are outside the scope of medical services that CHP

5  provides.  *See* SAC, ¶§ 212-271.  The singular specific allegation concerning

6  Plaintiff Mr. Lopez's hearing disability also pre-dates CHP's existence in 2019 and

7  early 2020 (*see* SAC, ¶¶ 215, 223) and concerns other co-defendants rather than

8  CHP.  *See* SAC, ¶ 227 ("Jail staff did not provide Plaintiff LOPEZ a sign language

9  interpreter"). Even if Plaintiffs' allegations were directed to CHP, Plaintiffs fail to

10  show how these claims apply in the Jail context, which the Unruh Civil Rights Act

11  does not consider a "business establishment."

12      Accordingly, the SAC fails to state a single viable claim against CHP.

## II.    PROCEDURAL HISTORY AND BACKGROUND

14      The claims raised in the current complaint are drastically different from

15  those Dunsmore originally asserted under the Civil Rights Act (42 U.S.C. § 1983)

16  more than two years ago as a *pro se* plaintiff.  *See* ECF No. 1.  Now, Dunsmore,

17  along with seven additional plaintiffs and a purported class, have filed the SAC

18  seeking solely declaratory and injunctive relief associated with a list of grievances

19  spanning the last decade.  (*See e.g.,* SAC, ¶¶ 73, 80, 206).

20      The SAC is the first iteration of the complaint that named CHP as a

21  defendant.  CHP was in incorporated in June of 2020 as a California corporation—

22  months after the original complaint was filed.  *See* CHP's Request for Judicial

23  Notice ("RJN") No. 1 (establishing CHP's date of incorporation via Cal. Secretary

24  of State filing); ECF No. 1.  CHP did not commence providing medical services to

25  the Jail until almost October of 2020.  *See* RJN No. 2 (copy of CHP's service

26  agreement with the County identifying September 23, 2023, as the effective date of

27  the agreement).

28

Gordon Rees Scully Mansukhani, LLP
101 W Broadway, Suite 2000
San Diego, CA 92101

- 3 -

Gordon Rees Scully Mansukhani, LLP
101 W Broadway, Suite 2000
San Diego, CA 92101

1   CHP is almost uniformly lumped together with other Defendants with

2   respect to facts alleged only in vague and conclusory terms.  And, to the extent

3   Plaintiffs include any factual details, those details often pre-date CHP's existence

4   or relate to other defendants' alleged conduct and not CHP's.  For example, in

5   Paragraph 80, Plaintiffs allege that all of the County Defendants (as defined in the

6   SAC), now-dismissed defendant Tri-City, and CHP all somehow "failed to provide

7   other medically necessary treatment for incarcerated people with chronic diseases

8   and conditions."  *See* SAC, ¶ 80; *see also id.*, ¶ 73 ("in 2014, medical staff at

9   Central. . . .").  In support of this boilerplate allegation, Plaintiffs include

10   allegations from 2014 and 2019—before CHP even existed, much less was

11   contracted to perform any medical services at the Jail.  *See* RJN Nos. 1 and 2.

12   Plaintiffs also allege actions that were taken not by CHP's doctors or nurse

13   practitioners, but rather by the Jail's own staff or other defendants.  *See e.g.*, SAC,

14   ¶¶ 74 (". . . Jail staff failed to adequately monitor him or provide him any medical

15   care.") ¶ 27 (plaintiff Zoerner "was not seen by a dentist[2] for almost three weeks").

16   Defendant CHP is not on notice of any factual allegations to which it must respond

17   because of the structural infirmities that pervade the SAC.

18   Plaintiffs have now filed a Motion for a Preliminary Injunction and

19   Provisional Class Certification even though the pleadings are not yet settled.  Like

20   the SAC, that separate motion also fails to make clear exactly what relief is being

21   sought against CHP, if any, and further evidences that the claims against CHP are

22   attenuated at best and cannot withstand judicial scrutiny.

23   **III.   LEGAL STANDARD FOR MOTION TO DISMISS**

24   A complaint must be dismissed under Rule 12(b)(6) if it either "(1) lacks a

25   cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable

26   legal theory."  *See Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  In

27

28   [2] Defendant Mid-America Health, Inc. ("Mid-America") provides dental services.  *See* SAC, ¶ 34.

- 4 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CORRECTIONAL HEALTH PARTNERS, INC.'S MOTION TO DISMISS THE SAC

3:20-cv-00406-AJB-WVG

**Gordon Rees Scully Mansukhani, LLP**
**101 W Broadway, Suite 2000**
**San Diego, CA 92101**

1  addition, dismissal is warranted under Rule 12(b)(6) if the complaint fails to satisfy

2  Rule 8 of the Federal Rules of Civil Procedure, "which requires not only 'fair

3  notice of the nature of the claim, but also grounds on which the claim rests.'" *See*

4  *Zixiang Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013) (quoting *Bell Atl. Corp. v.*

5  *Twombly*, 550 U.S. 544, 556 n. 3 (2007)).  In other words,

6      To survive a motion to dismiss, a complaint must contain

7      sufficient factual matter, accepted as true, to state a claim

8      to relief that is plausible on its face. [citations]  A claim

9      is facially plausible when the plaintiff pleads factual

10      content that allows the court to draw the reasonable

11      inference that the defendant is liable for the misconduct

12      alleged. [citations]  The plausibility standard requires

13      more than the sheer possibility or conceivability that a

14      defendant has acted unlawfully. [citations]  Where a

15      complaint pleads facts that are merely consistent with a

16      defendant's liability, it stops short of the line between

17      possibility and plausibility of entitlement to relief.

18  *Zixiang Li*, 710 F.3d at 998-999 (citations omitted).

19      "[I]t is the conclusory nature of respondent's allegations, rather than their

20  extravagantly fanciful nature, that disentitles them to the presumption of truth."

21  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  Moreover, "[w]hile the court

22  generally must assume factual allegations to be true, it need not assume the truth of

23  legal conclusions cast in the form of factual allegations." *See U.S. ex rel. Chunie*

24  *v. Ringrose*, 788 F.2d 638, 643 (9th Cir. 1986).

25      The Court is not required to allow a plaintiff to attempt to amend where "it is

26  clear that the complaint would not be saved by an amendment." *Livid Holdings*

27  *Ltd. v. Saloman Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

28

**Gordon Rees Scully Mansukhani, LLP**
**101 W Broadway, Suite 2000**
**San Diego, CA 92101**

1    IV.    **LEGAL ARGUMENT**

2          A.    **PLAINTIFFS FAIL TO STATE A CLAIM AGAINST CHP FOR INADEQUATE MEDICAL CARE UNDER THE FIRST THROUGH FOURTH CAUSES OF ACTION**

3

4          The Ninth Circuit in *Sandoval v. Cty. of San Diego* identified the appropriate

5    framework under the U.S. Constitution related to medical treatment based on the

6    inmate's status:

7          Individuals in state custody have a constitutional right to

8          medical treatment. *Estelle v. Gamble*, 429 U.S. 97, 104–

9          05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). For inmates

10         serving   custodial   sentences   following   a   criminal

11         conviction, that right is part of the Eighth Amendment's

12         guarantee against cruel and unusual punishment. *Id.*

13         However, pretrial detainees have not yet been convicted

14         of a crime and therefore are not subject to punishment by

15         the state. Accordingly, their rights arise under the

16         Fourteenth Amendment's Due Process Clause. *Bell v.*

17         *Wolfish*, 441 U.S. 520, 535–36, 535 n.16, 99 S.Ct. 1861,

18         60 L.Ed.2d 447 (1979).

19   *See Sandoval v. Cty. of San Diego* (985 F.3d 657, 667 (9th Cir. 2021).  Courts

20   analyze claims under the California Constitution in a similar fashion.  "Article I,

21   Section 17 of the California Constitution states that '[c]ruel or unusual punishment

22   may not be inflicted or excessive fines imposed.' Cal. Const. Art. 1, § 17.

23   'Punishment' under California law has the same meaning than would apply under

24   the Eighth Amendment.'" *See Thomas v. Hickman*, No. 1:06-CV-0215 AWI SMS)

25   2009 WL 1273190, at *14 (E.D. Cal., May 5, 2009) (*quoting In re Alva*, 33 Cal.4th

26   254, 291, 14 Cal.Rptr.3d 811, 92 P.3d 311 (2004)). Similarly, Section 7 of Article I

27   of the California Constitution closely follows the federal due process requirements.

28   *See id.*

- 6 -

Gordon Rees Scully Mansukhani, LLP
101 W Broadway, Suite 2000
San Diego, CA 92101

1    Here, Plaintiffs' SAC, on its face, fails to demonstrate that they have

2  standing to assert any Constitutional violations.  And if they had standing,

3  Plaintiffs still fail to state a viable cause of action against CHP for any such

4  Constitutional violation.

**1.      Plaintiffs Do Not Have Standing to Assert These Alleged Constitutional Violations Because they Are Moot**

7    A plaintiff's request for injunctive and declaratory relief based on Section

8  1983 for Constitutional violations will be rendered moot of the plaintiff is

9  subsequently released after filing his or her action.  *See Giraldo v. Department of*

10  *Corrections & Rehabilitation* 168 Cal.App.4th 231, 258–259 (2008).  "'A judicial

11  pronouncement, as it would relate to [a released inmate], would be an advisory

12  opinion, which the United States Constitution prohibits.'"  *Id.* (quoting *McQuillion*

13  *v. Schwarzenegger*, 369 F.3d 1091, 1095 (9th Cir. 2004).  Similarly, a "declaratory

14  judgment without the possibility of prospective effect would be superfluous."

15  *McQuillion*, 369 F.3d at 1095 (2004).  A plaintiff will also lack standing if he or

16  she is transferred to another facility.  *See Dilley v. Gunn* (9th Cir. 1995) 64 F.3d

17  1365, 1368.  ("The defendants argue that this case is moot. We agree. Since the

18  district court granted injunctive relief in this case, [the inmate] has been transferred

19  from Calipatria to another California state prison. . . .").  And, the sheer possibility

20  that a plaintiff "might be transferred back [to the facility] is 'too speculative' to

21  prevent mootness."  *See id.*, at 1369.

22    Here, Plaintiffs all lack standing to assert their constitutional claims based

23  on the face of the SAC.  The original plaintiff, Mr. Dunsmore is no longer at the

24  Jail because he has returned to a California state prison facility.  *See* SAC, ¶ 20

25  ("DUNSMORE is currently incarcerated at the California Health Care Facility, a

26  California Department of Corrections and Rehabilitation ("CDCR") facility in

27  Stockton, CA.").  Ms. Levy, Ms. Zoerner, and Mr. Lopez are also no longer at the

28  Jail.  *See* SAC, ¶¶ 23, 24, and 27 (establishing that none of them are at the jail).

- 7 -

Gordon Rees Scully Mansukhani, LLP
101 W Broadway, Suite 2000
San Diego, CA 92101

1    And, it is undisputed that as of the SAC in February, three months ago, Mr.

2    Archuleta, Mr. Nelson, and Mr. Norwood were imminently awaiting transfer to a

3    CDCR facility outside of the Jail.  *See* SAC, ¶¶ 21, 25, and 26. [3]

4         Plaintiffs attempt to overcome their lack of standing by speculating that it is

5    possible that they might return to Jail at some unspecified time in the future.  For

6    example, Ms. Levy alleges that she is at "risk of reincarceration" despite being

7    released.  SAC, ¶ 23.  However, the Ninth Circuit has also ruled that this is also too

8    speculative.  *See Reimers v. Oregon*, 863 F.2d 630, 632 & n. 4 (9th Cir.1988)

9    (plaintiff who had been released from prison had no reasonable expectation of

10   return because such return would occur only if the plaintiff committed additional

11   criminal acts).

12        Accordingly, the First through Fourth Cause of Action fail because Plaintiffs

13   do not have standing to assert these now-moot claims.

### 2.    Plaintiffs Fail to Assert A Claim Against CHP For Failure To Provide Adequate Medical Care.

16   "A prisoner may state a section 1983 claim under the eighth and fourteenth

17   amendments against prison officials where the officials acted with 'deliberate

18   indifference' to the threat of serious harm or injury by another prisoner."  *Berg v.*

19   *Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).  Claims under the Eighth

20   Amendment employ a "subjective deliberate indifference standard," whereas

21   claims under the Fourteenth Amendment are assessed under a "less scrutinizing

22   objective deliberate indifference standard."  *See Est. of Wilson by & through*

23   *Jackson v. Cty. of San Diego*, No. 20-CV-0457-BAS-DEB, 2022 WL 789127, at

24

25

[3] The only individual who presumably remains at the Jail and is not already

26   transferred or scheduled to be transferred is Mr. Edwards.  *See* SAC, ¶ 22.  But his
     factual allegations do not concern his treatment by CHP at all.  Even if he did have
27   standing, his complaint about not receiving a CPAP machine was remedied before
28   CHP was ever engaged to provide services.  *See id; see also* RJN No. 2.

- 8 -

Gordon Rees Scully Mansukhani, LLP
101 W Broadway, Suite 2000
San Diego, CA 92101

1   *14 (S.D. Cal. Mar. 14, 2022) (collecting cases).[4]  Even under the less demanding

2   objective standard, a plaintiff must allege "more than negligence."  *See id.*

3        In addition, this deliberate indifference standard "requires a finding of some

4   degree of 'individual culpability' . . . ."  *Id.*  When seeking injunctive or

5   declaratory relief (as opposed to damages) "against a myriad of prison personnel

6   responsible for operating a prison" courts will examine "the combined acts or

7   omissions of the state officials responsible for operating the state's penal system."

8   *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  But the causal link must

9   still exist in all circumstances, even if it is "broader and more generalized" when

10  damages are not sought.  *See id.*

11       Here, Plaintiffs' First through Fourth Causes of Action for alleged failure to

12  provide adequate medical care lump together CHP with the Sheriff's Dept., the

13  County, Tri-City (now dismissed hospital provider), Liberty Healthcare, Inc.

14  (mental health provider), Mid-America (the dental provider), and Dr. Logan Haak,

15  M.D., Inc. (the eye doctor).

16       Plaintiffs make virtually no attempt to discern those allegations that relate to

17  CHP versus other defendants.  And, Plaintiff makes no claim that CHP was acting

18  with deliberate indifference—or even negligence.  Indeed, throughout the SAC,

19  Plaintiffs refer to issues that occurred before CHP was operating (or even

20  incorporated).  *See e.g.,* SAC, ¶¶ 39, 43 (quoting a 2017 study for evidence that the

21  Jail failed to provide adequate medical care and staffing).  Thus, even if stretched

22  to its absolute limit, Plaintiffs have not established a causal link between CHP and

23  any of the alleged issues about which Plaintiffs complain.  Moreover, to the extent

24  there were issues before CHP was engaged, they are now remedied.  *See* SAC, ¶ 22

25  (noting that Mr. Edwards was provided his CPAP machine).

26  _____

27  [4] As noted in *Wilson*, convicted individuals' claims are analyzed under the Eighth
    Amendment, whereas pre-trial detainees are assessed under the Fourteenth

28  Amendment.  *See id.* at *13-14 (collecting cases).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF          3:20-cv-00406-AJB-WVG
CORRECTIONAL HEALTH PARTNERS, INC.'S MOTION TO DISMISS THE SAC

Gordon Rees Scully Mansukhani, LLP
101 W Broadway, Suite 2000
San Diego, CA 92101

1      Plaintiffs also readily acknowledge that the majority of the factual

2 allegations are beyond CHP's control or impact CHP through no fault of its own.

3 *See* SAC, ¶¶ 42 (complaining about the vacancies in the Sheriff Dept.'s health care

4 unit, which does not concern the doctors and registered nurses that CHP separately

5 provides pursuant to its agreement with the County); ¶ 45 (alleging that

6 "COUNTY DEFENDANTS [rather than CHP] improperly allow untrained nurses

7 to perform mental health evaluation gatekeeping functions."). Plaintiffs go so far

8 as to assert that "[m]edical professionals are implicitly and expressly informed that

9 if [the Jail's] command staff and/or custody staff give orders about medical care of

10 an incarcerated person, the medical staff must follow those orders." *See* SAC, ¶

11 51; *see also id.* ("sworn command staff oversee all health care professionals and

12 contractors within the SHERIFF's DEPARTMENT . . ."); ¶ 55 (claiming that "the

13 SHERIFF'S DEPARTMENT fails to adequately identify and treat the medical

14 issues of newly arriving incarcerated people during the screening and intake

15 process."); ¶ 59 (alleging that the Sheriff's Dept.'s policies and practices

16 undermine the continuity of care, which impacts CHP's ability to perform, without

17 any allegation that CHP ever acted with deliberate indifference."); ¶ 65 (noting that

18 the Jail [rather than CHP] would not provide Mr. Norwood with Suboxone [for his

19 opioid dependence] and that "[t]he Jail continues to provide no substance use

20 counseling or groups. . . ."); ¶ 67 (claiming that Librium is not being proscribed for

21 alcohol dependence, not through the fault of CHP, but rather because it "is not

22 available from the Jail's pharmacy provider").

23      None of these claims implies that CHP is acting with deliberate indifference

24 or even in a negligent fashion. As a result, the claims fail as a matter of law and

25 should be dismissed as to CHP.

26 / / /

27 / / /

28 / / /

- 10 -

**Gordon Rees Scully Mansukhani, LLP**
**101 W Broadway, Suite 2000**
**San Diego, CA 92101**

**B.    PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER THE ADA OR THE UNRUH CIVIL RIGHTS ACT**

Plaintiffs request injunctive relief because they claim that all of the so-called Contractor Defendants violate the ADA[5] "by discriminating against individuals with disabilities on the basis of disability, in the full and equal enjoyment of CONTRACTOR DEFENDANTS' goods, services, facilities, privileges, advantages, or accommodations." *See* SAC, ¶ 422. However, "it is not the presence or 'absence of a past injury' that determines Article III standing to seek injunctive relief; it is the imminent 'prospect of future injury.'" *See Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014)

Here, Plaintiffs' boilerplate claims against CHP fail because they do not assert that CHP committed any discriminatory act at any time. Nor do Plaintiffs allege that there is the prospect of future injury either—as required—likely because almost all of the Plaintiffs are no longer at the Jail or are scheduled to be transferred to other facilities. Instead, Plaintiffs claim that the Sheriff's Dept. does not adequately train its staff to identify or track people with disabilities. *See* SAC, ¶ 213. They further assert that it is the County's responsibility—not CHP's—to identify and track individuals with disabilities and the accommodations that they require. *See id.*

Although replete with conclusory statements, the SAC contains not a single allegation that CHP discriminated against a single individual. Instead, Plaintiffs focus on allegations that concern other defendants (*e.g.*, the County and the Sheriff's Dept.) or pertain to issues that are outside the scope of medical services that CHP provides. *See* SAC, ¶¶ 212-271 (failing to allege a single instance where CHP discriminated against any of the Plaintiffs). At most, Plaintiff Lopez claimed that the Jail (not CHP) failed to provide CHP with a sign-language interpreter in

---

[5] Plaintiffs' claims under the Unruh Civil Rights Act are largely premised upon the alleged ADA violations. *See* SAC, ¶430; 433.

- 11 -

Gordon Rees Scully Mansukhani, LLP
101 W Broadway, Suite 2000
San Diego, CA 92101

1   2019 and early 2020.  *See* SAC, ¶¶ 215, 223.  Mr. Lopez does not allege that there

2   is the potential for any future violations either, nor can he – because he is no longer

3   at the Jail.  There is also nothing to suggest that CHP is under any obligation to

4   provide any inmate with any such accommodations.  If that were true, then every

5   business would have to ensure it employed a sign-language interpreter, which is

6   certainly not required.[6]

7         As a result, these claims should also be dismissed against CHP because there

8   are no actionable violations of the ADA or the Unruh Act claimed (nor can there

9   be).

10  **V.     CONCLUSION**

11        For the reasons set forth above, Defendant Correctional Healthcare Partners,

12  Inc. respectfully requests that this Court dismiss all causes of action against it with

13  prejudice.

14

15  Dated: May 9, 2022                    Respectfully submitted,

16

17                                        GORDON REES SCULLY MANSUKHANI, LLP

18

19                                        By:   */s/ Craig J. Mariam*
                                                Craig J. Mariam
20                                              Michael J. Dailey
                                                Lara S. Garner
21                                              Attorneys for Defendant
                                                CORRECTIONAL HEALTHCARE
22                                              PARTNERS, INC.

23

24  [6] Plaintiffs are likely attempting to impose liability on CHP because it is unclear

25  whether any such allegations can be made against the Jail itself, which is not a
    "business establishment" under the Unruh Civil Rights Act.  *See Anderson v.*

26  *County of Siskiyou* (N.D. Cal., Sept. 13, 2010, No. C 10-01428 SBA) 2010 WL

27  3619821, at *6.  ("To conclude that a jail is governed by the Unruh Act,
    notwithstanding the fact that it lacks the attributes of a business, would amount to

28  an impermissible expansion of the statute.")

- 12 -