1  Susan E. Coleman (SBN 171832)
   E-mail: scoleman@bwslaw.com
2  BURKE, WILLIAMS & SORENSEN, LLP
   444 South Flower Street, Suite 2400
3  Los Angeles, CA 90071-2953
   Tel: 213.236.0600    Fax: 213.236.2700
4
   Attorneys for Defendant
5  COUNTY OF SAN DIEGO
   (also erroneously sued as SAN DIEGO COUNTY
6  SHERIFF'S DEPARTMENT, and SAN DIEGO
   COUNTY PROBATION DEPARTMENT)
7
   Craig J. Mariam (SBN: 225280)
8  cmariam@grsm.com
   Michael J. Dailey (SBN: 301394)
9  mdailey@grsm.com
   Lara S. Garner (SBN: 234701)
10 lsgarner@grsm.com
   GORDON REES SCULLY MANSUKHANI, LLP
11 101 W Broadway, Suite 2000
   San Diego, CA 92101
12 Tel: (619) 696-6700    Fax: (213) 680-4470
   Attorneys for Defendant CORRECTIONAL
13 HEALTHCARE PARTNERS, INC.

14            UNITED STATES DISTRICT COURT

15           SOUTHERN DISTRICT OF CALIFORNIA

16

17 DARRYL DUNSMORE, et.al.,            Case No. 3:20-cv-00406-AJB-WVG

18            Plaintiffs,              **DEFENDANTS COUNTY OF SAN
                                       DIEGO AND CORRECTIONAL
19 v.                                  HEALTHCARE PARTNERS, INC.'S
                                       OPPOSITION TO PLAINTIFFS'
20 SAN DIEGO COUNTY SHERIFF'S          MOTIONS FOR PRELIMINARY
   DEPARTMENT, et.al.,                 INJUNCTION AND PROVISIONAL
21                                     CLASS CERTIFICATION**
            Defendants.
22                                     [*Declarations of Coleman, Adamos,
                                       Bennett, Bibel, Blackwell, Darnell,
23                                     Hunting, McArdle, Mendoza,
                                       Montgomery, Quiroz, Rodriguez, and
24                                     Williamson filed concurrently herewith*]

25                                     Date:        June 30, 2022
                                       Time:        2:00 p.m.
26                                     Courtroom: 4A

27                                     Judge:       Hon. Anthony J. Battaglia

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

- 1 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

1      Defendants hereby submit their Opposition to Plaintiffs' Motion for

2   Preliminary Injunction and Provisional Class Certification.

3

4   Dated:  May 31, 2022              BURKE, WILLIAMS & SORENSEN, LLP

5

6                                    By:  */s/ Susan E. Coleman*
                                          Susan E. Coleman
7
                                     Attorneys for Defendant
8                                    COUNTY OF SAN DIEGO

9

10  Dated:  May 31, 2022              GORDON REES SCULLY
                                     MANSUKHANI, LLP
11

12
                                     By:  */s/ Lara S. Garner*
13                                        Craig J. Mariam
                                          Michael J. Dailey
14                                        Lara S. Garner

15                                   Attorneys for Defendant Correctional
                                     Healthcare Partners, Inc.
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION
      SHOULD BE DENIED ........................................................................ 2

      A.    Legal Standards for the Drastic Remedy of Injunctive Relief .............. 2

      B.    Plaintiffs Cannot Demonstrate A Likelihood Of Success On The
            Merits And/Or A Substantial Threat Of Irreparable Future Harm ........ 3

            1.    Plaintiffs Lack Standing to Seek Injunctive Relief ................... 3

            1.    Plaintiffs Failed To Exhaust Administrative Remedies ............. 4

            2.    Plaintiffs Fail to Establish *Monell* Liability ........................... 5

            3.    Plaintiffs' Request for Injunctive Relief is Speculative,
                  Premature and Potentially Moot Given the Changes In the
                  Process of Being Implemented ............................................. 6

            4.    Plaintiffs Do Not Meet the Standard of Deliberate Indifference. 7

      C.    All of Plaintiff's Proposed Injunction Items Fail ................................ 8

            2. Intercom and "Emergencies" ................................................. 8

            3. Surveillance Equipment ...................................................... 11

            4. Safety Checks ................................................................... 14

            5. Overdose Prevention, Addiction Treatment ............................ 15

            6. Mental Health Care and Clinical Input in Placement Decisions ..... 20

            7. Meaningful Program Access for People with Mobility Disabilities 23

      D.    If The Injunction Is Granted, The Court Should Require A Bond That
            Covers Defendants' Compliance Costs ............................................ 27

III.  PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE
      DENIED ......................................................................................... 27

      A.    Standards to Certify a Class ........................................................ 28

      B.    The Class Definition Is Defective and Overly Broad Because It
            Includes Individuals Who Lack Article III Standing ......................... 28

      C.    Plaintiffs Have Failed to Establish Commonality under Rule 23(a)  or
            that Common Issues Predominate under Rule 23(b)(3) ..................... 29

      D.    Plaintiffs Have Failed to Establish Typicality under Rule 23(a) ......... 31

      E.    Named Plaintiffs Are Inadequate ................................................. 32

      F.    Plaintiffs Have Failed to Demonstrate that a Class Action is a Superior
            Method of Adjudication under Rule 23(b)(3) ................................... 32

IV.   CONCLUSION ................................................................................. 34

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

# TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Adashunas v. Negley*,
626 F.2d 600 (7th Cir. 1980) ................................................................. 29

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) ................................................................. 27

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ................................................................... 3

*Baxter v. Rodale, Inc.*,
No. 12-cv-585, 2012 WL 1267880 (C.D. Cal. Apr. 12, 2012) ............................ 29

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d. 1121 (9th Cir. 2017) ............................................................... 32

*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988) ................................................................... 3

*Castro v. Cnty. of Los Angeles*,
833 F.3d 1060 (9th Cir. 1992) ................................................................. 5

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .............................................................................. 4

*Comcast Corp. v. Berhrend*,
569 U.S. 27 (2013) ............................................................................. 28

*Connick v. Thompson*,
131 S.Ct. 1350 (2011) .......................................................................... 5

*In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.*,
277 F.R.D. 586 (S.D. Cal. 2011) ............................................................. 30

*Dahl v. HEM Pharm. Corp.*,
7 F.3d 1399 (9th Cir. 1993) ................................................................... 3

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

*Dougherty v. City of Covina*,
  654 F.3d 892 (9th Cir. 2011) ................................................................ 5

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .............................................................. 30

*Frost v. Agnos*,
  152 F.3d 1124 (9th Cir. 1998) .............................................................. 7

*Gen. Tel. Co. of Sw v. Falcon*,
  457 U.S. 147 (1982) ............................................................................ 31

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................ 32

*Hass v. Cnty. of Sacramento Dep't of Support Servs.*,
  No. 2:13-CV-01746 JAM, 2014 WL 5035949 (E.D. Cal. Oct. 8,
  2014) ...................................................................................................... 4

*Hernandez v. City of San Jose*,
  No. 16-CV-03957-LHK, 2019 WL 4450930 (N.D. Cal. Sept. 17,
  2019) ...................................................................................................... 4

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ..................................................... 3, 6, 9, 32

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
  174 F.3d 411 (4th Cir. 1999) .............................................................. 27

*Hutchinson v. United States*,
  838 F.2d 390 (9th Cir. 1987) ................................................................ 8

*Johnston v. HBO Film Mgmt., Inc.*,
  265 F.3d 178 (3d Cir. 2001) ................................................................ 30

*Jorgensen v. Cassiday*,
  320 F.3d 906 (9th Cir. 2003) .............................................................. 27

*Klein v. City of San Clemente*,
  584 F.3d 1196 (9th Cir. 2009) .............................................................. 2

*Leer v. Murphy*,
  844 F.2d 628 (9th Cir.1988) ................................................................ 8

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

*Mayfield v. United States*,
   599 F.3d 964 (9th Cir. 2010) ........................................................................ 4

*Mazur v. eBay, Inc.*,
   257 F.R.D. 563 (N.D. Cal. 2009) ................................................................ 28

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ...................................................................... 29

*Monell v. Department of Soc. Svcs.*,
   436 U.S. 658 (1978) ...................................................................................... 5

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ...................................................................................... 2

*Nintendo of Am. v. Lewis Galoob Toys*,
   16 F.3d 1032 (9th Cir. 1994) ...................................................................... 27

*Oviatt By and Through Waugh v. Pearce*,
   954 F.2d 1470 (9th Cir. 1992) ...................................................................... 5

*Owen v. Regence Bluecross Blueshield*,
   388 F.Supp.2d 1318 (D. Utah 2005) .......................................................... 28

*Perfect 10, Inc. v. Google, Inc.*,
   653 F.3d 976 (9th Cir. 2011) ................................................................... 1, 3

*Reimers v. Oregon*,
   863 F.2d 630 (9th Cir.1988) ........................................................................ 4

*Rodriguez v. County of San Diego*,
   No. 14CV949-JLS-RBB, 2016 WL 4515860, at *5 (S.D. Cal. Feb. 9, 2016) ........................................................................................................ 24

*Sanchez v. Wal-Mart Stores, Inc.*,
   2009 WL 1514435 (E.D. Cal. May 28, 2009) ............................................ 32

*Sanders v. Apple, Inc.*,
   672 F.Supp.2d 978 (N.D. Cal. 2009) .......................................................... 29

*Scalia v. Cty. of Kern*,
   308 F. Supp. 3d 1064 (E.D. Cal. 2018) .................................................... 7, 8

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- iv -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

*Shapley v. Nevada Bd. of State Prison Comm'rs*,
  766 F.2d 404 (9th Cir. 1985) .................................................................. 8

*Simon v. American Telephone & Telegraph Corp.*,
  No. CV 99-11641 RSWL, 2001 WL 34135273, *3 (C.D. Cal. 2001) ............... 29

*Simon v. Eastern Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) .................................................................................. 32

*M.D. ex rel. Stukenberg v. Perry*,
  675 F.3d 832 (5th Cir. 2012) ................................................................. 30

*Toguchi v. Chung*,
  391 F.3d 1041 (9th Cir. 2004) .................................................................. 8

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ................................................................. 33

*Van Ort v. Estate of Stanewich*,
  92 F.3d 831 (9th Cir. 1996) ..................................................................... 5

*Wal- Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................... 29

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*,
  571 F.3d 953 (9th Cir. 2009) ................................................................. 30

*Wiener v. Dannon Co., Inc.*,
  255 F.R.D. 658 (C.D. Cal. 2009) ............................................................. 32

*Williams v. Paramo*,
  775 F.3d 1182 (9th Cir. 2015) .................................................................. 4

*Wilson v. Seiter*,
  501 U.S. 294 (1991) ................................................................................. 7

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................... 2

*Wood v. Housewright*,
  900 F.2d 1332 (9th Cir. 1990) .................................................................. 8

*Xavier v. Philip Morris USA Inc.*,
  787 F. Supp. 2d 1075 (N.D. Cal. 2011) .................................................. 33

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- v -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ............................................................... 28

## Federal Statutes

18 U.S.C. §3626(a)(1)(A) ................................................................... 3, 13

29 U.S.C. §705(9)(B) ............................................................................ 28

42 U.S.C. §1997e(a) ................................................................................. 5

42 U.S.C. §12102 ................................................................................... 28

2010 ADA Standards, §§ 232, 232.1, 232.2, 232.2.1 ................. 24, 25, 26, 31

ADA, Title II ......................................................................................... 24

RICO ..................................................................................................... 30

## State Statutes

Government Code §12926(j) .................................................................. 28

Government Code §12926(m) ................................................................ 28

Prison Litigation Reform Act ("PLRA") ............................................. 3, 4

Unruh Act .............................................................................................. 31

## Regulations

15 C.C.R. §1027.5 ................................................................................. 14

28 C.F.R. §35.150(a)(1) ........................................................................ 24

## Other Authorities

Eighth Amendment ............................................................................. 7, 8

Fed. R. Civ. P.
   Rule 23 .............................................................................................. 32
   Rule 23(a) ............................................................................... 28, 29, 31
   Rule 23(a) .......................................................................................... 30
   Rule 23(a)(2) ...................................................................................... 29
   Rule 23(a)(3) ...................................................................................... 31

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- vi -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rule 23(a)(4) .......................................................................................... 32

Rule 23(b)(3) ............................................................................... 28, 29, 32

Rule 65 ...................................................................................................... 8

Rule 65(d) ............................................................................................... 26

Fourteenth Amendment ........................................................................... 7

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- vii -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    <u>INTRODUCTION</u>**

3        Plaintiffs seek extraordinary relief for a preliminary injunction for 19

4    separate items and provisional class certification, asserting immediate action must

5    be taken due to the purported high risk of death at the County's jails based on a

6    California State Auditor's report released February 2022 and the number of in-

7    custody deaths to date.  Plaintiffs assert without evidentiary support that immediate

8    action will reduce suicides and overdoses but fail to make all but a few conclusory

9    and factually unsupported connections between the alleged deficiencies and the

10    deaths, which forms the basis for the emergency nature of the requested relief.

11    Plaintiffs cannot demonstrate a clear likelihood they will prevail on their claims or

12    establish a sufficient causal connection between the alleged irreparable harm and

13    the activity to be enjoined.  *Perfect 10, Inc. v. Google, Inc*., 653 F.3d 976, 981-82

14    (9th Cir. 2011).

15        Plaintiffs have failed to exhaust administrative remedies and lack standing to

16    assert their claims.  Plaintiffs fail to demonstrate harm as a result of the claimed

17    deficiencies (intercom, surveillance, safety checks, overdose prevention, mental

18    health input for segregation/isolation, etc.).  There is no evidence presented that the

19    County has acted with "deliberate indifference" to support the Section 1983 claims,

20    or that they will face a serious threat of irreparable harm without the issuance of an

21    injunction on these specified items given that many Plaintiffs have been release or

22    are in CDCR custody.

23        Most significantly, many of the requested changes to medical and mental

24    health care are moot.  The County has already made changes that have been in the

25    works for years and have either already been implemented, or are in the process of

26    being implemented after years of work.  A new and vastly improved drug detection

27    and withdrawal protocol in effect as of a few weeks ago, allows detection within 12

28    hours of arrival and prescription of the appropriate drugs immediately, significantly

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

1    reducing the mental health issues from withdrawal which can lead to suicide

2    attempts.  The County has implemented the True Scripts database and all-new

3    medical/mental health policies compliant with NHCC, through Naphcare Inc.,

4    based upon a contract which was years in the making and goes into full effect on

5    June 1, 2022.  A full complement of precautionary measures are in place to prevent

6    smuggling of illegal drugs into jails and Plaintiffs offer no evidence to suggest the

7    measures do not work, do not drastically reduce the incidents of illegal drugs

8    entering the jails, or offer any suggestions of what more can be done or how it can

9    be funded.  The declarations in support of the request are based upon hearsay,

10    conclusions lacking any factual foundation, and are, to the extent time warranted,

11    directly contradicted by the opposition declarations submitted by defendants.

12        Provisional class certification is likewise unwarranted as discussed below

13    because of the wide-ranging and unrelated issues of the representative class

14    members and inability to manage the proposed class which includes individuals

15    with no standing because they are not incarcerated and may never be incarcerated,

16    individuals with varying types of disabilities, wholly unrelated claims of inability to

17    get access to counsel, and the issue of drug smuggling into the jails.

18  **II.    PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED**

19

20        **A.    Legal Standards for the Drastic Remedy of Injunctive Relief**

21        An injunction is "a drastic and extraordinary remedy, which should not be

22    granted as a matter of course."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S.

23    139, 165 (2010). Plaintiffs seeking a preliminary injunction must establish: (1)

24    likelihood of success on the merits; (2) likely to suffer irreparable harm absent

25    preliminary relief; (3) the balance of equities tips in their favor; and (4) an

26    injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.

27    7, 20 (2008).  The party seeking the injunction bears the burden of proving these

28    elements.  *See Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009);

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

*see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.")   In addition, there must be a "sufficient causal connection" between the alleged irreparable harm and the activity to be enjoined. *Perfect 10, Inc. v. Google, Inc*., 653 F.3d 976, 981-82 (9th Cir. 2011).

Injunctions that command a defendant to perform an affirmative act (*i.e.* a mandatory injunction), as opposed to refraining from action, are particularly disfavored, and are subject to a heightened standard.  Mandatory injunctions "should not be issued unless the facts and law *clearly favor* the moving party." *Dahl v. HEM Pharm. Corp*., 7 F.3d 1399, 1403 (9th Cir. 1993).

Any award of equitable relief in the corrections setting is governed by the Prison Litigation Reform Act, which requires that any prospective relief be *narrowly drawn and extend no further than necessary* to correct the violation of a Federal right and is the least intrusive means necessary to correct the violation. 18 U.S.C. §3626(a)(1)(A) [*emphasis added*].

### B.   Plaintiffs Cannot Demonstrate A Likelihood Of Success On The Merits And/Or A Substantial Threat Of Irreparable Future Harm

#### 1.   *Plaintiffs Lack Standing to Seek Injunctive Relief*

Plaintiffs must demonstrate that they have individual standing to seek an equitable remedy.  "In order to assert claims on behalf of a class, a named plaintiff must have personally sustained or be in immediate danger of sustaining 'some direct injury as a result of the challenged statute or official conduct.'" *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001) quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).  "Allegations that a defendant's conduct

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

will subject unnamed class members to the alleged harm is insufficient to establish standing to seek an injunction on behalf of the class." *Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2019 WL 4450930, at \*19 (N.D. Cal. Sept. 17, 2019). "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Plaintiffs are not entitled to an injunction against past illegal conduct unless they demonstrate "a sufficient likelihood that [they] will again be wronged in a similar way." *Id*. at 111; *see also Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010).

Plaintiffs gloss over the standing requirement. Plaintiffs fail to establish standing with respect to each alleged violation that is the subject of the specific injunction request and a likelihood of future harm. Those that are no longer in jail, are in the process of being transferred or have already been transferred have no standing. *See* SAC, ¶¶ 20-27. Plaintiffs Dunsmore, Levy, and Zoerner are no longer in Jail, while Plaintiffs Archuleta, Nelson, and Norwood were or are awaiting transfer to a CDCR (state operated) facility. *Id*. Plaintiffs' assertion that there is a possibility they may return to the jail in the future is speculative and cannot support a claim of threat of imminent harm. *Hernandez v. City of San Jose*, 2019 WL 4450930, at \*21; *Reimers v. Oregon*, 863 F.2d 630, 632 & n. 4 (9th Cir.1988) [plaintiff who had been released from prison had no reasonable expectation of return despite parole]. Dunsmore, Levy, Zoerner, Archuleta, Nelson and Norwood cannot allege they are currently being exposed to a continuing risk of harm and the request for injunction must fail. *Hass v. Cnty. of Sacramento Dep't of Support Servs*., No. 2:13-CV-01746 JAM, 2014 WL 5035949, at \*2 (E.D. Cal. Oct. 8, 2014).

### 1. *Plaintiffs Failed To Exhaust Administrative Remedies*

The Prison Litigation Reform Act ("PLRA") "requires a prisoner to exhaust 'available administrative remedies' before bringing an action with respect to prison conditions." *Williams v. Paramo*, 775 F.3d 1182, 1190–91 (9th Cir. 2015) (quoting

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

42 U.S.C. § 1997e(a)); see 42 U.S.C. § 1997e(a).  Plaintiffs failed to exhaust their administrative remedies prior to filing suit and there is no allegation of having done so.

### 2.    *Plaintiffs Fail to Establish Monell Liability*

A local government may only be liable under §1983 for its own action or inaction, not that of its employees.  *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978); *see also Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).  A successful *Monell* claim must prove that a government entity's policy, practice, or custom is the "moving force behind a violation of constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  Deliberate indifference only exists "when the need for more or different action 'is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers...can reasonably be said to have been deliberately indifferent to the need.' " *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).  The deliberate indifference standard for municipalities is objective. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 1992).  A municipal policy is the "moving force" behind a constitutional violation if it is the proximate cause of the constitutional injury.  *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996).  Plaintiffs raise various complaints about their treatment, most frequently as to their medical care, but the standard to show deliberate indifference has not been met.  The declarations of Dr. Jon Montgomery as to each Plaintiff who submitted a declaration claiming inadequate medical care, show a very different picture than those portrayed by the plaintiffs.  Dr. Montgomery's declarations cite to very specific information contained in the medical records which contradict the statements made in the Plaintiffs' declarations.  In addition, the evidentiary objections submitted herewith demonstrate that the information put forth to support the claims of deliberate

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

1    indifference are inadmissible.

2            3.     ***Plaintiffs' Request for Injunctive Relief is Speculative,***
3                  ***Premature and Potentially Moot Given the Changes In the***
              ***Process of Being Implemented***

4           An injunction cannot be issued based on past conduct.  Rather, there must be

5    proof of an ongoing or future problem which will not be remedied absent an

6    injunction.  *Hodgers-Durgin v. De la Vina*, 199 F.3d at 1043 (9th Cir. 1999).

7           Plaintiffs' request for injunctive relief is premature and moot given the recent

8    and ongoing changes that have been in process for years and have already begun to

9    be implemented by the County.  The changes are substantial and systemic.  In

10    approximately February of 2021, as part of a longer process to address medical and

11    mental health care issues, the decision was made by the County to replace detention

12    division subcontractors for medical, mental health, dental, and vision care with a

13    single subcontractor who would handle all of the needs and provide on-site staffing.

14    [Bibel Decl., ¶3; Freedland Decl., ¶6-10]. The goal of retaining one contractor for

15    services was to provide for a robust, comprehensive and integrated health care

16    delivery system with the best interest of patients at its core.  [*Id.*].  NaphCare, Inc.

17    ("NaphCare") was awarded the contract for care in the County's Detention Services

18    Bureau by action of the Board of Supervisors in September of 2021[1].  [Bibel Decl.,

19    ¶4; Exh. "A" County of San Diego and Naphcare Contract executed in April of

20    2022].  Naphcare begins acting under the terms of its contract with the County on

21    June 1, 2022, for an initial term of five (5) years through May 31, 2027, with

22    options to extend the contract thereafter.  [Bibel Decl., ¶5].

23           The Statement of Work portion of the contract explains the requirements and

24

25    [1] It is worth noting that the supposed whistleblowers, Dr. Evans and Ms. Alonso,
LCSW, left their employ with the County in August 2021 and April 2022,
26    respectively.  (Evans Decl, ¶1; Alonso Decl, ¶1)  Neither was present for any of the
recent changes but both were obviously aware of the changes to come but did not
27    bother to mention that fact in their declarations.  The characterization of the
declarations is indeed remarkable as Plaintiffs' posit, in their failure as licensed
28    mental health care professionals to mention the forthcoming changes.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

1  expectations for Naphcare.  [Bibel Decl., ¶7].   These include but are not limited to:

2  preparing policies and procedures to meet National Commission on Correctional

3  Health Care (NCCHC) standards, with the goal of obtaining accreditation for all of

4  the County jails; telehealth support from a mid-level provider 24/7 to the booking

5  nurses; patients with chronic illnesses will be identified during the Receiving

6  Screening and enrolled in a chronic care clinic; implementation of policies and

7  procedures to ensure a comprehensive health assessment (including a physical

8  exam) is completed – typically during the intake process but always within 14 days;

9  screening processes to include rapid intervention to stabilize patients and identify

10 and treat existing medical, mental health and substance abuse conditions as early as

11 possible including starting medications, managing chronic conditions, and initiating

12 withdrawal protocols; mental health screening to be performed as soon as possible

13 from the time of intake but no later than 14 days after admission; any patient

14 screening positive in the initial mental health screening (*i.e.* suicide risk

15 assessment) shall receive the mental health assessment immediately or as soon as

16 possible to protect the patient and address any urgent mental health needs; dental

17 staffing compliant with NCCHC standards; the implementation of a medically

18 supervised withdrawal and MAT program; agreements for methadone onsite for

19 treatment, etc.   [Bibel Decl., ¶7].

20        4.     ***Plaintiffs Do Not Meet the Standard of Deliberate Indifference***

21        In order to establish a Section 1983 claim based on conditions of

22 confinement, a plaintiff must establish that (1) the plaintiff has actually suffered an

23 extreme deprivation or is placed at a substantial risk of suffering a significant injury

24 (*e.g.*, a serious medical need) and (2) the defendants acted with a sufficiently

25 culpable state of mind (deliberate indifference). *Wilson v. Seiter*, 501 U.S. 294, 298

26 (1991).  Upon demonstration of a serious medical need, the plaintiff must then

27 show that the defendant's response was deliberately indifferent.  Thus, "[a] § 1983

28 action premised on violation of the Fourteenth Amendment for inadequate medical

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

1    care requires allegations that each defendant acted with deliberate indifference to

2    the decedent's serious medical needs." *Scalia v. Cty. of Kern,* 308 F. Supp. 3d

3    1064, 1072 (E.D. Cal. 2018).  "Because pretrial detainees' rights under the

4    Fourteenth Amendment are comparable to prisoners' rights under the Eighth

5    Amendment," courts "apply the same standards." *Frost v. Agnos*, 152 F.3d 1124,

6    1128 (9th Cir. 1998); *Scalia*, 308 F. Supp. 3d at 1072.

7        "Deliberate indifference is a high legal standard," *Toguchi v. Chung*, 391

8    F.3d 1041, 1060 (9th Cir. 2004).  Deliberate indifference requires a purposeful act

9    or failure to act on the part of the defendant and resulting harm.  *Shapley v. Nevada*

10   *Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  However, "[m]ere

11   negligence in diagnosing or treating a medical condition, without more, does not

12   violate a prisoner's Eighth Amendment rights." *Hutchinson v. United States*, 838

13   F.2d 390, 394 (9th Cir. 1987).  Even gross negligence is insufficient to establish

14   deliberate indifference to serious medical needs.  *See Wood v. Housewright*, 900

15   F.2d 1332, 1134 (9th Cir. 1990); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir.1988)

16       C.    **All of Plaintiff's Proposed Injunction Items Fail**

17       Plaintiffs are intentionally vague as to the specific injunctive relief sought,

18   never articulating the exact injunctive relief being requested.  Instead, the Proposed

19   Order is an attachment to the Swearingen Declaration (Exhibit A).  Nineteen

20   injunction items are at issue (specified below), all of which lack merit and Plaintiffs

21   seek resolution within 30 days.

22       1.    ***Development of a "Plan"***

23   "Within thirty (30) days of this Order, Defendants shall develop a plan to remedy

24   the constitutional and statutory violations, described above, that includes, at a

25   minimum, the following elements.."

26       Plaintiffs' request that Defendants to develop within 30 days a "plan to

27   remedy the constitutional and statutory violations . . .", is overbroad, vague, and

28   violates the specificity requirement of FRCP 65, the PRLA, and law governing

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

injunctions.  The suggestion that a government entity directed by a County Board of Supervisors, answerable to the voters and subject to budget constraints, would be able to draft remedial plans on 19 different topics within 30 days is absurd.

### 2. *Intercom and "Emergencies"*

(A):   Defendants shall immediately repair any non-functional elements of the intercom and emergency button system (including visual and audio notifications to custody staff) and regularly test the system to ensure functionality and identify and remediate inoperable components;
(B):   Defendants shall develop a plan to ensure that when any elements of the intercom and emergency button system become inoperable, they are promptly repaired;
(C):   Defendants shall develop a plan to ensure that custody staff timely respond to emergencies in the Jail, including revising Defendants' policies and procedures and training materials as necessary.

Plaintiffs lack standing to seek any injunctive relief regarding the "intercom and emergency button system."  None of the Plaintiffs establish that they have been injured or have their Constitutional rights violated due to any non-functioning intercom or button system in order to confer standing to seek an injunction on behalf of a class. *See, Hodgers-Durgin v. de la Vina*, 199 F.3d at 1045 (named plaintiffs must be able to obtain an injunction for themselves before seeking an injunction on behalf of the class).  Plaintiff Lopez broadly states that the "call boxes in the cells do not seem to work and deputies do not respond to calls quickly, if at all." [Lopez Decl., ¶7].  He claims he used the call box to tell deputies his stool sample was ready and they did not collect it.  [*Id*.].  This does not rise to deliberate indifference or constitute a threat of irreparable harm, and is certainly not a dire issue.  Plaintiff Dunsmore recounts an incident in 2019, where he was purportedly choking on a piece of food, and claims the call box was not working because no one responded to him right away.  He claims staff responded 20 to 30 minutes later. [Dunsmore Decl., ¶36].  Dunsmore cannot establish a likelihood that he will suffer from similar injury in the future or that alleged failure to respond sooner was due to

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

1    a nonfunctioning call box.

2         None of the Plaintiffs can establish that they would incur similar harm in the

3    future from intercoms/call boxes since this would require speculation into a

4    confluence of conditions – that the Plaintiffs would be incarcerated in the future,

5    that they would experience an event requiring an intercom, and that a non-working

6    intercom would result in harm.  Plaintiffs' conclusory suggestion that the alleged

7    condition of the intercoms require immediate injunctive relief is based on the

8    Declaration of James Austin, who has not conducted any inspection of the jail

9    facilities, has not interviewed any staff or incarcerated people, and "only reviewed a

10   small number of records and declarations." [Austin Decl., ¶11].  He admits this

11   case is at an early stage and he would like to conduct an inspection that would

12   include evaluation of the technology at issue and speaking with staff knowledgeable

13   of the Jail's policies and practices.  [Austin Decl., ¶12].  Instead, Austin's review is

14   speculation based on secondhand information and statements contained in various

15   accounts and reports dating back years.[2]  There is no admissible evidence that the

16   intercom system proximately caused any death or injury or that Defendants'

17   policies constitute deliberate indifference.

18        Defendants' declarations establish a lack of constitutional violations or

19   deliberate indifference with admissible evidence based upon first hand knowledge.

20   At the Central Jail, a process has been implemented to check the intercom buttons

21   in the intake process and other holding areas at least twice daily.  [Adamos Decl.,

22   ¶3.]  The Facility Commander's Directive #5, dated May 6, 2022, regarding 1st and

23   2nd Floor Daily Intercom Check, directs the 1st and 2nd floor emergency call

24

25   _____

26   [2] Plaintiffs' declaration regarding the negligent muting of a call does not create
     *Monell* liability.  Plaintiffs admit that the Sheriff's Department's policy provides
27   that intercoms shall not be routinely muted or silenced.  [SAC, Exh. Exhibit SS].
     The Department has taken steps to ensure a similar incident does not recur.  (*See*
28   Adamos Decl.)

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

intercoms be checked each shift during the Sergeant's daily supervisor inspection safety check. [Exh. "A" to Adamos Decl., ¶4.] The information will be entered into the Jail Information Management System to indicate that the intercom check has been completed and any discrepancies identified in the notes. [Adamos Decl., ¶4.] Any cell with an inoperable intercom is placed out of service and a maintenance request is submitted. If an incarcerated person is put into a holding area with an inoperable intercom because of necessity, the cell will be directly supervised or have 30-minute safety checks. [*Id.*]. Intercom buttons in housing areas are inspected weekly. [Darnell Decl., ¶5.] The County prohibits any muting of the intercom system on the security side, and it made muting more difficult to accomplish to avoid accidental muting. [Darnell Decl., ¶5.] A renovation of the digital equipment used with the intercom system is planned and expected to be completed by the end of 2022.

Pursuant to the SDCJ Green Sheet for Policy I.61.C.2 – Facility Security – Control Touch Screen Operation, unplugging or disabling the speakers for the touchscreen system is prohibited. [Adamos Decl., ¶5.] Deputies must log in when they go on duty and check the volume of the speaker and operation of the intercom. Muting of the touch screen speaker is strictly prohibited. [*Id.*]. There is a way to temporarily disable calls from a particular cell for a period of 15 minutes; however, this is to be used sparingly if the repeated calls from one cell are impeding safe and effective control position operations and only after floor deputies have verified there is no emergency. [Adamos Decl., ¶6; Exh. B] A persistent incarcerated person can repeatedly push the intercom asking for more toilet paper (for example), and the control screen flashes to his cell alarm instead of the overall map image of the unit.

The language of the proposed injunctions is vague and lacks the required specificity making it impossible to comply with if it were granted.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

- 11 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

### 3.    *Surveillance Equipment*

D.    Defendants shall develop a plan for the replacement of all outdated and non-functional elements of the video surveillance system at the Jail;

E.    Defendants shall develop a plan to ensure that when any video surveillance equipment at the Jail becomes non-functional in the future, the non-functional equipment is timely identified and repaired;

F.    Defendants shall not house incarcerated people in any units without adequate video surveillance coverage;

Plaintiffs cannot establish standing for any injunctive relief regarding surveillance.  There is no claimed injury, proximate cause, or deliberate indifference to named Plaintiffs.  Any claimed harm to named Plaintiffs would be speculative – requiring future incarceration and injury that is proximately caused by surveillance defects.  There is no showing of deliberate indifference as to the class.  Plaintiffs' assertions regarding statements from CLERB reports and observations that investigations will be impeded, are speculative and do not prove deliberate indifference or that irreparable harm will result.  The California State Audit relied upon surveillance footage for its findings.  Austin's conclusions are based upon secondhand, hearsay information which is nothing more than a snapshot of a moment in time.  He did not conduct any inspection of the surveillance system and has no evidentiary basis to make the statements he makes.

The Sheriff's Department is scheduled to upgrade the camera system at the San Diego Central Jail in the next fiscal year (FY 23/24) to take advantage of the latest technical advances and improve image quality and retention.  [McCardle Decl., ¶4].  In addition, repairs are always performed.  If one camera is not working, it gets reported, addressed, and if necessary, replaced as soon as possible.  [McCardle Decl., ¶7].  Staff can see the video camera footage live on monitors in various assigned areas, with the ability to see different camera views simultaneously.  [McCardle Decl., ¶6].  Not all locations are conducive to surveillance.  Surveillance cameras cannot be mounted in areas where incarcerated

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

persons can access them and remove or vandalize them. Cameras are strategically mounted in positions to give deputies the best view and coverage while still providing context. For example, if an assault or riot occurs, the footage is reviewed to determine who was involved and how the incident began. If an incident occurs, the recorded video footage is typically archived immediately. [McCardle Decl., ¶5]

Body worn cameras are an additional resource. The County Board of Supervisors has approved the Detention Services Bureau to move forward with Axon Body Worn Cameras (BWC) for all deputies working in the jails and transportation. [Blackwell, ¶3]. There is an operational pilot program at Las Colinas with 72 deputies outfitted with Axon Body 2 cameras. The County's efforts to implement BWC in the detention services bureau began in April 2021. [Blackwell, ¶4]. Las Colinas will complete its BWC rollout by the end of 2022. The Central Jail is next and is currently undergoing active construction for this purpose. Rock Mountain already has a specific area designated for BWC storage and docking. Implementation of BWC will continue to roll out at other facilities as soon as feasible. [Blackwell, ¶4].

The upgrades in cable/fiber and WiFi in the facilities provide many opportunities for technological upgrades. For example, the County anticipates upgrading the cameras in the housing units, safety cells, and intake cells. The iPhones selected for use with the Axon Body 3 BWC have RFID readers, which will allow future options such as having deputies scan RFID devices at various locations, such as at safety cells for safety checks to be logged. [Blackwell, ¶7]. The County has already developed policy on BWC use for deputies because patrol deputies began using body worn cameras first. [Blackwell, ¶5; Exh. A-Sheriff's Department Policy 6.131; Exh. B-Sheriff's Department Detention Services Bureau Policy I.20]

The proposed injunctions as to surveillance are vague and overbroad, and not narrowly-tailored or the least intrusive means necessary to correct any asserted

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

violation, especially with respect to burden.  18 U.S.C. §3626(a)(1)(A).  For example, Plaintiffs seek an order that no one can be incarcerated in any units without "adequate video surveillance coverage".  There is no attempt to specify what constitutes "adequate" or what would be done differently based upon the actual facts present and not the pure speculation of Mr. Austin.

### 4.  *Safety Checks*

g.    Defendants shall conduct safety checks at least once every 30 minutes at irregular and unpredictable intervals of all incarcerated people held in isolation (i.e., cells with 2 hours or less daily out-of-cell time, including in Admin. Segregation, in Administrative Segregation Overflow, or on Lockdown (or "Bypass") status);
h.    Defendants shall reform their policies and procedures for safety checks to require that staff ascertain that the individual is still alive without disrupting the individual's sleep;
i.    Defendants shall develop formal policies and procedures for supervisors to audit safety checks by custody staff and ensure that they have actually occurred in a timely and adequate manner, with appropriate accountability and quality assurance measures taken to address deficiencies.

Plaintiffs' offer inadmissible evidence in relying on the CLERB documents, the 2018 DRC Report, and the State Auditor's report.  Plaintiffs do not provide any evidence based upon personal knowledge of any safety check issue that has allegedly caused them harm and certainly nothing that rises to an immediate threat of harm.  Any attempt to theorize that Plaintiffs will be incarcerated in the future, suffer a condition, or make a suicide attempt that would result in serious death or injury specifically as a result of the lack of a safety check is purely speculative.

The County also demonstrates that there is no *Monell* liability or deliberate indifference.  Both the California Code of Regulations Title 15 §1027.5, which governs county jails, and the County SDSD Detention Services Bureau internal policies require safety checks every hour in mainline units.  [Williamson Decl., ¶3].  Safety checks are conducted every 30 minutes for inmates identified at risk (medically or psychologically) pursuant to the Inmate Safety Program (ISP).

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

- 14 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

Deputies must complete ISP logs outside each cell to note the time, what the incarcerated person was doing, the position or location of the incarcerated person, and any statements made.  [Williamson Decl., ¶4; Darnell Decl., ¶¶13-16]

In addition to formal, regularly scheduled safety checks, there are other precautions taken to help keep inmates safe.  For example, there are cameras in dayrooms and common areas.  Cameras are also installed inside safety cells and medical observation bed cells.  There are two-way intercoms in each cell.  The cameras and intercoms are monitored by a deputy in the control tower of each unit.  [Williamson Decl., ¶5].  There is regular movement within the units by both staff and incarcerated persons.  Incarcerated persons have dayroom access on most of the units, where they can socialize, play cards or board games, and watch TV.  When food is brought to the unit for meals, typically an inmate passes out the sack lunches or trays to others in the unit.  [Williamson Decl., ¶6].  During the daytime, deputies retrieve incarcerated persons for court, medical appointments, and visiting.  Medical staff make rounds to pass out medication in the units, accompanied by a deputy.  Deputies make rounds to count the inmates several times per shift (more often for higher security classifications). During night shift, mail is passed out to incarcerated persons and razors are loaned for shaving as needed.  [Williamson Decl., ¶7].

The County provided a response to the California State Auditor's report, describing flaws in its methodology and addressing other inaccuracies.  The report inaccurately implies that the 185 people who died in San Diego County were the result of inadequate medical care.  Natural deaths comprise nearly half of in-custody deaths identified by the auditors.  The draft report does not identify any medical care that was "inadequate," resulting in an individual's death.  By excluding the Los Angeles Sheriff's Department and San Bernardino Sheriff's Department, the auditors also excluded the other two departments with the highest number of in-custody deaths in the state.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

### 5. *Overdose Prevention, Addiction Treatment*

j.      Defendants shall develop a plan to revise Defendants' policies, procedures, practices, and training for the interdiction of drug contraband being brought into the Jail so as to significantly reduce the amount of drugs entering the Jail;

k.      Defendants shall develop a plan to maintain fully functioning body scanners located at all Jail facilities, ensure that all people who enter the facility are properly scanned, and ensure all staff who operate scanners are properly trained;

l.      Defendants shall develop a plan to implement a medication assisted treatment ("MAT") program available to all incarcerated people for whom it is clinically appropriate and at all facilities;

m.      Defendants shall develop a plan to expand and ensure access to naloxone ("Narcan") for incarcerated people, including by supplying naloxone directly to people at risk of overdose and making naloxone available to incarcerated people in the intake and housing areas with appropriate guidance on its use in case of emergency;

Other than Plaintiff Norwood, Plaintiffs do not allege that they bring in drug contraband, use drugs while in jail, risk overdosing in jail, need Narcan in jail, or are addicted to opioids, much less that they are at risk of imminent harm. Such harm and any claimed causation would be speculative. Norwood's account regarding his addiction and treatment is unreliable and contradicts the medical records. Mr. Norwood's declaration implies that he was taking Suboxone, a medication that helps prevent relapses into drug abuse, daily before his incarceration. [Norwood Decl., ¶3] His medical records do not reflect the medication. The records indicate Norwood's last prescription to avoid opiate addiction before jail was Vivitrol. (Ex. B, 150.) Mr. Norwood states that during his incarceration, he requested, but was denied Suboxone. [Norwood Decl., ¶ 6] He fails to mention that he was evaluated twice for Suboxone, and the medical providers, including a specialist, found Vivitrol to be the appropriate treatment. [Ex. B, 151-153] Mr. Norwood was offered and refused the Vivitrol.

Plaintiffs rely on the Disability Rights California report issued in April 2018 for their claim of deliberate indifference to mental health issues resulting in suicide.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

Plaintiffs intentionally omit the official Sheriff's Department responses including a response from Dr. Colleen Kelly, Ph.D. and San Diego County Sheriff Gore. (Coleman Decl., Exhs. B and C)   Plaintiffs' third party witnesses, James Austin, Robert Cohen, and Pablo Stewart, M.D., did not conduct any inspections of the jail and did not conduct any interviews prior to signing declarations.  [Austin Decl., ¶11; Cohen Decl., ¶8; Stewart Decl., ¶14].  Cohen acknowledges that the jail population is at high risk of suffering from a substance abuse disorder and concludes that because incarcerated individuals are 2 x more likely than un-incarcerated individuals, the Jail is failing to prevent dangerous narcotics from entering the Jail, and failing to ensure that people have access to Methadone and Narcan.  [Cohen, ¶12].  Is the jail population 2 times more likely to suffer from drug addiction?  If so, then the rate of overdoses is consistent without outside conditions.  If the rate of overdoes outside the jail is higher, then the jail is doing a better job of controlling overdose.  Cohen fails to indicate any method of counteracting illicit drugs being smuggled into the jail and never investigated or took into account the newly implemented health system that will provide more immediate services to overdose victims.  He fails to take into account turnover in jail population which has a significant downward impact on suicide rates. [Coleman Decl., Ex. I-Hildreth report re statistics and distorted suicide rates due to failure to consider turnover in jail population]

The County has taken significant strides toward overdose prevention.  Upon booking, the incarcerated person is seen by medical staff as soon as reasonable based upon the inmate's condition.  If urgency is required because of medical issues present at intake, medical staff respond in an urgent manner and timeframe.  If an inmate presents with concerns that are urgent and cannot be addressed by on site staff, the inmate is transported on an emergency basis to a nearby hospital's Emergency Room.  [Montgomery Decl., ¶2].  A new policy went into effect on May 11, 2022, for medically supervised drug and alcohol withdrawal and treatment.

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

- 17 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

This program puts the incarcerated patient on a medication withdrawal protocol in order to ease the pain and treat the symptoms of withdrawal.  With the Naphcare contract, a full Medication Assisted Treatment (MAT) protocol – combining medication with counseling and behavioral therapy – is being implemented within the next two weeks.  [Montgomery Decl., ¶11; Freedland Decl., ¶¶10, 12].

The Sheriff's Department is in the process of changing its medical and mental health care policies and procedures, and engaging a new comprehensive health care provider.  The new contract goes into full effect on June 1, 2022, but the changes and implementation have been ongoing for the last few months.  [Montgomery Decl., ¶3; Freedland Decl, ¶6-10]. The new service provider will provide 22 separate services including outsourcing of medical and psychiatric care, and tele-support which will provide a more "front facing" approach to medical and mental health care rather than "rear facing."  In other words, the new system will allow almost immediate transfer of care in terms of medications and chronic condition care, mental health assessments, and drug testing upon arrival at the County jail facility.  [Montgomery Decl., ¶4]

The new, already begun, process for drug testing by urinalysis upon arrival is extremely significant.  It will allow detection of drugs in the incarcerated person's system that may require targeted withdrawal medications, which will in turn prevent the myriad physical and mental health side effects they suffer from withdrawal.  Incarcerated persons often lie to staff about having taken drugs for fear of further charges and/or be unaware of having taken a substance that was laced with another substance unknown to the inmate at the time taken.  This happens with the drug Fentanyl, which can have severe physical and psychological withdrawal symptoms.  [Montgomery Decl., ¶5]  Based upon the new real time chart check with a provider off site, the urine drug screening, and COVID tests, definitive results are obtained within 12 hours.  Having the new methods in place will provide knowledge of illicit substances, which will in turn reduce suicide attempts,

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

eliminate deaths from withdrawal, and are expected to have some effect on
reducing the number of overdoses.  [Montgomery Decl., ¶6]

Overdoses in custody can happen because an inmate's tolerance to a drug
goes down while being essentially (and involuntarily) drug free in jail.  When small
amounts are smuggled in to the inmate, even a tiny amount can cause an overdose.
[Montgomery Decl., ¶7]. The new system has brought rapid results.  In the first 48
hours that urine drug tests were being administered upon inmate arrival, medical
staff was able to identify 10 inmates on dangerous amounts of drugs, and the staff
was able to start those 10 individuals on medications to address the problem.  In
each of those 10 cases, the jail would not have known about the illegal drugs in
their systems because they did not self-report.  [Montgomery Decl., ¶8]

Body Scanners are also being employed to combat contraband.  The County
currently has body scanners at 4 of its 6 facilities, with a total of 5 scanners.
[Adamos Decl., ¶10.]  Two are at Las Colinas DRF, one at Vista DF, one at SD
Central Jail, and one at George Bailey DF.  These are the facilities that conduct
intake/ booking, so scanners are not needed at the other facilities.  As explained by
declarant C. Darnell, Facility Captain of the Central Jail, he has been advised that if
a body scanner is out of order and repairs are requested immediately.  [Darnell
Decl., ¶7]

If a body scanner is out of service at SDCJ, the County does pat-down
searches, strip searches, and take the individuals to X-ray their mid-section on the
second floor.  [Adamos Decl., ¶10.]  If an abnormality is seen on the scanner and
the person is still in the custody of the arresting officer, they are refused for
booking and taken to the hospital.  [Adamos Decl., ¶11.]  Otherwise, if an
abnormality is seen during scanning, the person is sent for an X-ray, which is read
by a licensed radiologist.  [*Id.*]. Not every person is scanned during intake because
the County relies on voluntary compliance.  [Adamos Decl., ¶12.]  Some people
refuse to be scanned.  An X-ray can be offered as an alternative if they agree and

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

the X-rays are interpreted by radiologists. [Darnell Decl., ¶8.] They can also be put on contraband watch, where they are put into an observation room without a flushing toilet until they have a bowel movement and it can be determined if they excreted any drugs/packaging. [Adamos Decl., ¶12.] If there is an abnormality on the body scanner, the County has to obtain a search warrant in order to remove the item (preferably at the hospital) unless the person agrees to voluntarily remove the item or it is excreted in an observation room while on contraband watch. [Darnell Decl., ¶9].

While the County jails use body scanners, X-ray machines, pat downs and strip searches to detect drug smuggling, some drugs go undetected. DIU monitors inmate phone calls in order to flag potential smugglers, coordinates random cell searches, and uses the mail processing center and K-9 dogs to check incoming mail. Despite all of these efforts, incoming arrestees/inmates/parolees are creative at finding new ways to bring in drugs and avoid detection. [Hunting Decl., ¶5; Exh. "A"-Powerpoint presentation regarding Drugs in Prison]. The amount of fentanyl in the system has steadily grown, which is problematic given that it is the most deadly relative to quantity. [Hunting Decl., ¶9] Plaintiffs do not name any prison or jail that manages to keep drugs, including fentanyl, completely out of their facilities because there are none.

### 6. *Mental Health Care and Clinical Input in Placement Decisions*

n.      Defendants shall revise their policies, procedures, practices, and training to ensure that mental health staff's input is meaningfully considered prior to and during any placement of an incarcerated person in isolation/segregation housing (i.e., cells with 2 hours or less daily out-of-cell time, including in Ad. Seg., in Administrative Segregation Overflow, and on Lockdown (or "Bypass") status);
o.      Defendants shall revise their policies, procedures, practices, and training to ensure that mental health staff have primary authority in determining the placement of an incarcerated person with mental illness in a mental health-designated program or housing unit (e.g., Outpatient Step Down Program, Enhanced Observation Housing), and in determining the clinically appropriate provision of clothing,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

property, and privileges for patients at risk of suicide, without any custodial blanket exclusions or interference with clinical judgment;

p.      Defendants shall develop a plan to ensure that all mental health clinical contacts and intake interviews between incarcerated people and mental health professionals, including mental health clinicians, psychologists, and psychiatrists, are conducted in a confidential setting;

Plaintiffs have failed to establish any failure to consider mental health staff input or follow their input on placement of an incarcerated person in whenever possible in isolation and/or segregation housing.  Plaintiffs rely on Dr. Stewart's declaration, which is in turn based on the Evans and Alonso declarations containing hearsay.  Dr. Stewart has not conducted interviews or inspections and makes blanket conclusions about policies as written—not as implemented.  He provides no foundational facts as to statistics on the population of the jail, the proportion who have any mental health concern, any claimed contraindications, or causative result as to the claimed harm.  Plaintiffs do not establish standing and any risk of harm to them would be speculative.  Plaintiffs' overbroad and untenable request that all contacts with mental health be conducted by staff alone without any deputy for security is impossible in an incarceration setting and places lives at risk, including incarcerated persons, deputies and mental health staff.

The County has demonstrated with fact based declarations that custody staff take into account mental health clinicians' input and recommendations and are sometimes forced to disagree for security reasons.  For example, while it may often be beneficial for a patient to have a cellmate to have someone to talk to and reduce the risk of suicide, if that patient has homicidal tendencies, the security risk to the other patients outweighs the benefits.  Clinical judgments about mental health care are the sole province of the psychiatrist or mental health provider.  [Quiroz Decl., ¶6].

In February 2019, the Sheriff's Department's safety policy program was updated giving mental health staff rather than custody staff the authority to make

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

- 21 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

placement decisions into the safety program and when they will be released from it. Custody staff may no longer make this decision unless it is an emergency or exigent circumstance. [Quiroz Decl., ¶7]  Mental Health Clinicians also recommend where patients are to be placed within the patient Safety Program (ISP).  Prior to June 1st, 2022, R.N.'s conducted a suicide risk assessments and if there is a "yes" answer to one of the questions, and the assessment occurred between 6:00 a.m. and 10:00 p.m., a mental health clinician or psychologist does an additional assessment.  If it was after 10:00 p.m., the individual was placed in safety housing until the next morning.  (Quiroz Decl., ¶5)   Effective June 1st, there will be mid-level psychiatric staff available from 10:00 p.m. to 6:00 a.m. for consultation where there is a "yes" response to suicide risk.  (Id, at ¶6)

As of June 1, 2022, NaphCare is taking over the contract previously held by Liberty Healthcare, Inc., and NaphCare will be providing psychiatrists and psychologists for the County jails.  Part of the contract provides that the policies and procedures used by NaphCare will be merged with the Mental Health policies and procedures for the County Jails, with the goal of each jail qualifying for NCCHC accreditation.  NaphCare has been asked to staff a mental health professional on the overnight shift to be available as needed for consultation, such as for assessment when an incoming patient answers "yes" on a suicide risk screening.  [Quiroz Decl., ¶14]

The Sheriff's Department has started the process of wellness checks as a multi-disciplinary team at the San Diego Central Jail and Las Colinas Detention, and Reentry Facility will soon be expanding these checks to all facilities. Currently checks take place on Mondays, Wednesdays and Fridays. The wellness checks include nursing, mental health, reentry services and custody staff.  The goal is to observe the patient in their environment to assess the condition of the environment, medical and mental health needs, and plan services for reintegration back into the community.  [Quiroz Decl., ¶17]   During rounds to check on patients, mental

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

health clinicians often do wellness checks at the cell front. This is a brief check in to ask how the patient is doing, obtain information if appropriate, and for the patient to request a confidential session if needed. Typically, patients can obtain a confidential meeting if requested but it may take time to coordinate. If the patient is interested in discussing something privately but it is not urgent, they can request to schedule a confidential session. These confidential sessions are also routinely scheduled at the request of mental health clinicians. [Quiroz Decl., ¶11] A Sheriff's deputy is always present with the mental health clinician on rounds, though the deputy is usually standing back, to the side, and out of view of the patient if possible. A deputy is also present if a patient is at a hospital or goes to an outside medical specialist for security reasons. [Quiroz Decl., ¶12]

Sometimes private (confidential) rooms to use for mental health sessions are in short supply or unavailable, such as at the Central Jail where the clinic rooms were re-purposed during Covid for remote court appearances and legal visits. However, there are still places available for confidential consultations with patients. George Bailey, Vista, and Las Colinas each have 3 clinic rooms. At the Central Jail, there is 1 clinic room in PSU, 4 clinic rooms in OPSD on the 6th floor, and build-outs on the 2nd floor. If needed, a patient can also be put into a holding cell out of the way or into an empty cell with no neighboring patients, or temporarily in EOH, in order to talk more privately. A deputy would still be standing by for security reasons. [Quiroz Decl., ¶13] There have been 793 assaults on staff by incarcerated persons from January 2017 to present, with 71 assaults on staff as of May 16th in calendar year 2022. [Adamos Decl., ¶14]. These range from assaults with a fist/foot/elbow to having urine or feces thrown, to deadly assaults with inmate-manufactured weapons. [*Id.*] The risk to staff of assault is higher with some incarcerated individuals. For example, Gary Bartlett has a history of assaulting staff and making threats against them. [Mendoza Decl., ¶3; Exh. A- Incident Report]. Eliminating deputy attendance is not an option given the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

population being served and the place the services are being rendered.

### 7.    Meaningful Program Access for People with Mobility Disabilities

q.    Defendants shall offer all programs, services, and activities, including but not limited to exercise, recreation, day room, classes, religious services, professional and social visitation, and drug or alcohol use disorder treatment, in locations that do not require incarcerated people to climb stairs in order to access the programs, services, and activities, and shall ensure that all elevators used by incarcerated people to access programs, services, and activities are promptly repaired whenever broken;

r.    Defendants shall develop a plan to ensure that Jail facilities are accessible to incarcerated people with mobility disabilities, including in the housing units, and in program and activity areas; and

s.    Defendants shall develop a plan to train custody and health care staff on the rights of incarcerated people with mobility disabilities to use assistive devices in working order, such as canes, crutches, wheelchairs, walkers, and prostheses, and shall ensure that individuals may retain an assistive device unless Jail staff identify and document with specificity why such device poses an immediate threat to safety or security, and in such cases health care and custody staff shall determine an appropriate alternative device or accommodation.

Title II of the ADA requires access to services, programs and activities which may often times require modification to existing facilities but it does not mean that each pre-existing facility [prior to January 1992] must comply with ADA construction standards after January 1992. *Rodriguez v. County of San Diego*, No. 14CV949-JLS-RBB, 2016 WL 4515860, at *5 (S.D. Cal. Feb. 9, 2016); 28 C.F.R. §35.150(a)(1)    ". . .[T]he ADA regulations and architectural standards are "relevant in the context of a 'program accessibility' case," but failure to comply with a guideline does not give rise to a Title II violation as a matter of law.  [Citations omitted]  *Id,* at *6.

Plaintiffs' are required to put forth admissible evidence to establish a likelihood of prevailing and the specific remedial action they claim can/should be taken or they are not entitled to a preliminary injunction.  Based upon

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

1  unsubstantiated statements that all or most of the elevators in the Central Jail do not

2  always work (at the same time), Plaintiffs seek to impose a mandatory injunction

3  requiring the County to reconfigure the space in this multi-story building so that all

4  "programs, services, and activities" are on the same floor as the inmates being

5  housed.  There is no identification of which specific programs, services and

6  activities were denied outright (versus have to use an alternate elevator and possibly

7  waiting for that elevator to become available).

8  The Central jail facility was built in 1998 and was compliant with the 1991

9  ADA standards when it was built.  [Bennett Decl., ¶2].  The facility has 8 floors and

10  each floor has 5 modules for housing inmates.  There is one ADA mobility

11  compliant (as of 1998) module on each floor.  There is one dayroom per module.

12  Whether a disabled detainee has free movement at all times or limited times within

13  their module depends upon their security classification.  With a higher security risk,

14  comes less free movement and fewer alternatives for housing.  [*Id*.].  Section 232 of

15  the 2010 ADA guidelines relating to Detention and Correctional facilities provides

16  generally that such facilities shall comply with Section 232 and that the accessible

17  cells need to be dispersed throughout the facility, at least 2% of the cells must have

18  mobility features, etc.  (2010 ADA Standards, Section 232, 232.1, 232.2 and

19  232.2.1.) [Bennett Decl., ¶6].  The Central jail has 10%.  [Bennett Decl., ¶7]

20  With respect to the elevators, there are 2 elevators available to incarcerated

21  persons at the Central Jail.   [Bennett Decl., ¶9.]  The Central Jail is currently in the

22  process of making elevator improvements to be completed in 2022.  [Darnell Decl.,

23  ¶3.]  One elevator for incarcerated persons has already been fully renovated.  The

24  other incarcerated persons' elevator is in process.  [Adamos Decl., ¶3.]  This in and

25  of itself renders the request for injunction moot.  There has never been an instance

26  where all of the elevators in the Central facility are out of service.  [Bennett Decl.,

27  ¶9.]  There are also two staff elevators.  The staff elevators can be transferred at any

28  time to use for movement of inmates and there is a process in place to effect the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

transfer if it becomes necessary.  No inmate would ever be taken down stairs for any reason other than a possible complete building collapse, severe earthquake or fire emergency, because of the security concerns to the officers and incarcerated persons.  [Bennett Decl., ¶9; Darnell Decl., ¶4.]

Plaintiffs' requested injunction that Defendants develop a plan to ensure that "Jail facilities are accessible" to incarcerated people with mobility disabilities is overbroad and fails the specificity requirement of Rule 65(d).  Plaintiffs set forth alleged ADA violations in the 35-page Sanossian Declaration, from stools to the positioning of fixed furniture, grab bars, cell renovation, shelves, communication systems, etc.  The declaration has no suggested solutions, demonstrates a lack of personal knowledge of any of the conditions claimed by Plaintiffs, and does not identify the type of immediate "irreparable harm" that cannot wait for the discovery process to identify and address.

The claims of inadequate training are based upon nothing more than a reading of select documents, no personal knowledge of what training is or is not provided, why or when an assistive device may be taken away for security or safety reasons, what measures are taken to counteract the impact of device removal, etc. Upon arrival at County jail facilities, medical staff identify durable medical devices needed by disabled detainees if they arrive without any, and/or abide by what the inmate had in their prior placement.  The designated ADA coordinator uses the inmate's *Armstrong* documents and makes sure appropriate notifications are placed in HER ("TechCare"), which in turn communicates with JIMS (Jail Information Management Service), again to ensure as much continuity of care as possible. [Montgomery Decl., ¶10].  The source of information presumably supporting Plaintiffs' claim to retain assistive devices is also suspect.  Mr. Archuleta states in his declaration that he was not permitted to keep both his wheelchair and crutches, and that his crutches were confiscated by jail staff while he went to the yard in his wheelchair.  [Archuleta Decl. ¶ 11]   According to the medical records, Mr.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

Archuleta told medical staff on August 13, 2019, that he could not use the crutches because he was "too old and off balance with the crutches and nearly fell." He then requested his wheelchair back, which was given to him in place of the crutches. On August 14, 2019, it was noted that Mr. Archuleta had asked for his wheelchair back because his "back [is] too weak for crutches." Mr. Nelson asserts that he was given a faulty wheelchair which caused him physical pain to use, and was forced to use it for 4 months until he received a replacement. [Nelson Decl., ¶7] Mr. Nelson's medical records reveal not a single complaint about his wheelchair or any pain associated with its use. [Montgomery Decl. re: Inmate Nelson, ¶9]

### D. If The Injunction Is Granted, The Court Should Require A Bond That Covers Defendants' Compliance Costs

The bond requirement is mandatory (*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999)), and although some courts have waived it, they do so only where there is no realistic likelihood of harm to the defendant or where the moving party shows an overwhelming likelihood of success. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Plaintiffs not only fail to demonstrate an overwhelming likelihood of success, they seek a mandatory injunction that would require Defendants to expend unidentified amounts of resources that may not be available before Plaintiffs' claims are adjudicated on the merits. *Nintendo of Am. v. Lewis Galoob Toys*, 16 F.3d 1032, 1037 (9th Cir. 1994). Those costs cannot be determined on the present record, which as noted above, are vague, overbroad and uncertain. Accordingly, if preliminary relief is granted, Defendants request permission to submit a cost estimate before the Court sets the bond amount.

### III. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED

Plaintiffs seek provisional certification of a class for the purposes of their preliminary injunction. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 (9th Cir. 2020) (courts may provisionally certify a class for purposes of preliminary injunction

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

proceedings). If the Court determines no preliminary injunction should issue, the class certification motion becomes moot and should be denied. Plaintiffs cannot use class certification on their preliminary injunction items to attempt to circumvent standing issues to seek relief on all the issues raised in their 223-page Complaint.

### A.    Standards to Certify a Class

Plaintiffs bear the burden of establishing the propriety of class certification. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001). Under Rule 23(a), Plaintiffs must satisfy all four requirements of numerosity, commonality, typicality, and adequacy of representation. *Id.* at 1189; Fed. R. Civ. P. 23(a). Under a Rule 23(b)(3), Class Plaintiffs must also establish through evidentiary proof that common questions predominate over individual issues and a class action is a superior method to fairly and efficiently adjudicate the controversy. Fed R. Civ. P. 23(b)(3); *Comcast Corp. v. Berhrend*, 569 U.S. 27, 33 (2013). Since Plaintiffs seek injunctive relief on behalf of all incarcerated individuals, there may not even be a need to certify a class. The named Plaintiffs can seek injunctive relief on the issues to which they have standing.

### B.    The Class Definition Is Defective and Overly Broad Because It Includes Individuals Who Lack Article III Standing.

Plaintiffs' motion for class certification should be denied due to the defective and overly broad nature of their class definition. Plaintiffs seek provisional certification of an "Incarcerated People Class," defined as "all adults who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities" (hereafter "Proposed Class"), and an "Incarcerated People with Disabilities Subclass," defined as "all qualified individuals with a disability, as that term is defined in 42 U.S.C. §12102, 29 U.S.C. §705(9)(B), and California Government Code §12926(j) and (m), and who are now, or will be in the future, incarcerated in all San Diego County Jail facilities" ("Proposed Subclass").

Where a class definition includes both those that have been harmed and those

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For Prelim. Injunction and Prov. Class Certification

that have not, it is impermissibly overbroad and imprecise. *Mazur v. eBay, Inc.,* 257 F.R.D. 563, 567 (N.D. Cal. 2009) ("Because the class as currently defined would include these non-harmed auction winners, this portion of the class definition is both imprecise and overbroad"); *Owen v. Regence Bluecross Blueshield*, 388 F.Supp.2d 1318, 1334 (D. Utah 2005) (proposed definition of the class was overbroad because many of the proposed class members have suffered no harm); *Simon v. American Telephone & Telegraph Corp*., No. CV 99-11641 RSWL, 2001 WL 34135273, *3 (C.D. Cal. 2001) (holding that a class could not be certified because plaintiffs' proposed class definitions included persons who had not yet been aggrieved); *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (affirming the denial of class certification because the definition of the class was "so amorphous and diverse" that it was not "reasonably clear that the proposed class members ha[d] all suffered a constitutional or statutory violation warranting some relief").

Plaintiffs propose a class which, as defined, would include individuals who lack Article III standing. All class members, not just class representatives, must have standing. *See Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 594 (9th Cir. 2012); *see also Baxter v. Rodale, Inc*., No. 12-cv-585, 2012 WL 1267880, at *2 (C.D. Cal. Apr. 12, 2012). An ascertainable class is essential to ensure that anyone within the class has suffered actionable harm. Where a class definition includes those with no cause of action, it is impermissibly overbroad, imprecise and certification should be denied. *Sanders v. Apple, Inc*., 672 F.Supp.2d 978, 982-983 (N.D. Cal. 2009).

### C.    Plaintiffs Have Failed to Establish Commonality under Rule 23(a) or that Common Issues Predominate under Rule 23(b)(3)

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "That language is easy to misread, since '[a]ny competently crafted class complaint literally raises common 'questions.'" *Wal- Mart Stores, Inc.*

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

*v. Dukes,* 564 U.S. 338, 350 (2011) (internal citation omitted.)  "What matters to class certification…is not the raising of common 'questions'- even in droves - but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*   "If there is no evidence that the entire class was subject to the same allegedly discriminatory practice, there is no question common to the class. In other words, the district court must determine whether there was "significant proof that [Costco] operated under a general policy of discrimination." *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 983 (9th Cir. 2011).  Plaintiffs have the burden to show that the putative class is sufficiently cohesive to warrant adjudication by class representation. *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F.3d 953, 957 (9th Cir. 2009).   Mere allegations of systemic violations of the law will not automatically satisfy Rule 23(a)'s commonality requirement.  *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012).

Here, common issues do not predominate.  The declarations submitted by potential class members demonstrate the variation in the allegations and a lack of commonality.   In order to evaluate liability for Plaintiffs' class, it would require witnesses, evidence, and inquiry into each alleged threat, and not common proof. Resolving questions for the proposed class representatives does not resolve the factual and legal questions for the entire class.  Individual questions predominate over common issues.  *See, e.g., Johnston v. HBO Film Mgmt., Inc*., 265 F.3d 178, 190-94 (3d Cir. 2001) (class certification denied as the alleged misrepresentations would require individual review and present "insurmountable manageability problems" of what exactly was said to each investor).  For example, proof of deliberate indifference to medical or mental health needs is highly individualized. *See In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig*., 277 F.R.D. 586, 605 (S.D. Cal. 2011) (denying class certification because, plaintiffs "failed to demonstrate that common issues predominate on the element of

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

- 30 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

causation" for their RICO claim).  As stated in *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, "the proposed class's proffered common issues "stretch the notions of commonality' by attempting to aggregate several amorphous claims of systemic or widespread conduct into one "superclaim."  *Id*. at 844.  Plaintiffs cannot show how the specific circumstances of the named Plaintiffs are necessarily in common with and typical to the circumstances of the putative class members.

Plaintiffs claim that commonality is achieved because the class "are or will be detained in the Jail and thus subject to Defendants' system-wide failures to provide adequate safety and security, medical and mental health care, and disability accommodations."  [Mtn, p. 33].  However, each of the claims is based upon alleged violation of the United States and California Constitutions, and specifically Due Process and Cruel and Unusual Punishment provisions. The alleged "commonalities" are claimed to affect everyone ever incarcerated at the County jail and anyone who might become incarcerated.  Each of the named Plaintiffs suffers from a specific illness or disability that may require certain accommodations under the California and Federal accessibility laws while incarcerated.  The ADA and Unruh Act claims require an individual to have standing as a disabled person under Federal and California laws defining disabilities, and to have been denied access based upon the disability.  Someone that *might* be incarcerated has no standing.  As is clear from the descriptions of the varying needs and accommodations required by just the eight named Plaintiffs, there cannot be any commonality among the current Jail population of 4,000 persons plus any adults who will be incarcerated in a county Jail in the future, including many that do not suffer from any qualifying disabilities.

### D.    Plaintiffs Have Failed to Establish Typicality under Rule 23(a)

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. Pro. 23(a)(3). Where proof of a named plaintiff's claims does not resolve the class claims,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

1   typicality is lacking. *See Gen. Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 159 (1982).

2   "The test for typicality is 'whether other members have the same or similar injury,

3   whether the action is based on conduct which is not unique to the named plaintiffs,

4   and whether other class members have been injured by the same course of

5   conduct.'" *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 665 (C.D. Cal. 2009).

6        The proposed class representatives assert in a conclusory fashion their claims

7   are typical of those of the proposed class. The circumstances and claimed harm

8   vary as to each person, and Plaintiffs cannot show they are typical of the class.

9   Further, because Plaintiffs cannot demonstrate they are entitled to seek injunctive

10  relief on their enumerated items, they may not represent a class seeking that relief.

11  *Hodgers-Durgin v. de la Vina*, 199 F.3d at 1045.

12       **E.**    **Named Plaintiffs Are Inadequate**

13       To satisfy Rule 23(a)(4), a party seeking class certification must show he will

14  "prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler Corp.*,

15  150 F.3d 1011, 1020 (9th Cir. 1998). "[T]he Court must ensure that the litigation is

16  brought by a named Plaintiff who understands and controls the major decisions of

17  the case," *Sanchez v. Wal-Mart Stores, Inc*., 2009 WL 1514435, at *3 (E.D. Cal.

18  May 28, 2009). Class representatives must have standing, which named Plaintiffs

19  lack because they are no longer at County jails and/or are being transferred shortly.

20  *See Simon v. Eastern Ky. Welfare Rights Org*., 426 U.S. 26, 40 (1976) (named

21  plaintiffs who represent a class must allege and show that they have personally been

22  injured.).

23       **F.**    **Plaintiffs Have Failed to Demonstrate that a Class Action is a Superior Method of Adjudication under Rule 23(b)(3)**

24       Lastly, Plaintiffs have failed to establish that "a class action is superior to

25  other available methods for the fair and efficient adjudication of the controversy."

26  Fed. R. Civ Proc. 23(b)(3). A key factor under Rule 23(b)(3) is "the likely

27  difficulties in managing a class action." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d.

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 32 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

1121, 1127 (9th Cir. 2017) (stating that Rule 23 incorporates a "manageability criterion").

First, a class is unmanageable, and therefore not superior, when "there is no good way to identify [ ] individuals" in the class or to provide them with notice, a judgment, or a settlement. *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). Who is the class? Are notices going to be mailed to every person ever incarcerated? Anyone with any criminal history who might be incarcerated at the County? Does this include arrests or just convictions? Misdemeanors or felonies, or both? What are the specific disabilities being claimed? A person with blindness has no commonality with a mobility impaired individual. How is a mobility impairment defined? The services and programs available to them are completely different. How are the un-incarcerated individuals factored in to the disability inquiry since they are unidentified? What if they have a disability different and distinct from class member disabilities? What if they are clean and sober now and have no risk of overdose or mental health issues related to drugs? The myriad of highly individualized inquiries renders this case unmanageable as a class action as proposed by Plaintiffs. Plaintiffs have not met their burden in explaining how the Court can sort out the many individual issues. There is no way to show each person in the enormous proposed class was threatened and incurred injuries, without individual trials. This failure provides another basis to deny certification. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

///
///
///
///
///
///

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

- 33 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification

1    **IV.    <u>CONCLUSION</u>**

2        For the foregoing reasons, Defendant requests that the Court deny Plaintiffs'

3    Motion for Preliminary Injunction and Provisional Class Certification.

4

5    Dated:  May 31, 2022           BURKE, WILLIAMS & SORENSEN, LLP

6

7                        By:  */s/ Susan E. Coleman*

8                            Susan E. Coleman

9                        Attorneys for Defendant
                    COUNTY OF SAN DIEGO

10

11    Dated:  May 31, 2022           GORDON REES SCULLY
                    MANSUKHANI, LLP

12

13                        By:  */s/ Lara S. Garner*

14                            Craig J. Mariam

15                            Michael J. Dailey
                        Lara S. Garner

16                        Attorneys for Defendant Correctional

17                        Healthcare Partners, Inc.

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 34 -

Case No. 3:20-CV-00406-AJB-WVG
Defendants' Opposition To Plaintiffs' Motion For
Prelim. Injunction and Prov. Class Certification