1 | Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
2 | BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
3 | Los Angeles, CA 90071-2953
Tel: 213.236.0600    Fax: 213.236.2700
4 |
Attorneys for Defendant
5 | COUNTY OF SAN DIEGO (Also
erroneously sued herein as SAN DIEGO
6 | COUNTY SHERIFF'S DEPARTMENT, and
SAN DIEGO COUNTY PROBATION
7 | DEPARTMENT)

8 |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DARRYL DUNSMORE, ERNEST ARCHULETA, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, CORRECTIONAL HEALTHCARE PARTNERS, INC., TRI-CITY MEDICAL CENTER, LIBERTY HEALTHCARE, INC., MID-AMERICA HEALTH, INC., LOGAN HAAK, M.D., INC., SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,

Defendants.

Case No. 3:20-cv-00406-AJB-WVG

**DECLARATION OF DARREN SCOTT BENNETT IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION**

I, DARREN SCOTT BENNETT, declare as follows:

1.    I have personal knowledge of the matters herein and would

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

3:20-CV-00406-AJB-WVG
BENNETT DECLARATION ISO OPPOSITION

competently testify to them if called to do so.  I am Project Manager for the San Diego County Sheriff's Department.  I started with the County in 1986, and moved to the Sheriff's Department in 2006.  As Project Manager, I am responsible to oversee maintenance including 5 direct staff and supervision of 75 dedicated maintenance people, construction projects for all aspects of construction at the jail facilities (as opposed to maintenance issues), and addressing requested upgrades as part of construction projects which are issued by different divisions within the Sheriff's Department.  I am the asbestos and lead coordinator for all facilities and the Contract Operations Representative for 5 different County contracts for the jails including security, epoxy, detention equipment (locks, etc.), audio and video equipment and liquid waste removal.  I am responsible to ensure that all contractors are fulfilling their contract requirements with the Sheriff's Department contracts and complying with applicable Board of State and Community Corrections standards.

2.      The Central jail facility was opened in 1998 and was compliant with the 1991 ADA standards when it was built.  The facility has 12 floors with 5 housing floors, with 5 modules each for housing incarcerated persons, two booking floors and a medical floor for Incarcerated Persons.  There is one ADA mobility compliant (as of 1998) cell in each module on each housing floor.  There is one dayroom per module.  Whether a disabled Incarcerated Person has free movement at all times or limited times within their module depends upon their security classification.  With a higher security risk comes less free movement and fewer alternatives for housing.

3.      Shower seats were originally installed per the ADA requirements in 1998 but all most all have been removed from Central Jail.  They were all removed by approximately 2003 because they became a security issue in that they were ripped off the walls and used as weapons.  They were made of heavy plastic and metal and caused serious bodily injury.  Plastic shower chairs are being used in

1    place, which can be picked up and used as a weapon, but inflict far less damage

2    than a metal seat.  They were also non-compliant with "anti-ligature" (potential for

3    use as a method of hanging/suicide) requirements.  A new shower seat model which

4    is anti-ligature compliant is now available but because the showers were built to the

5    1991 ADA standards, the stalls are too small to allow installation of the new seats

6    based upon the 2010 ADAAS standard which requires a larger shower footprint.

7         4.    There are no stools in front of desks in the ADA cells.  There were

8    only three stools installed in front of desks in the ADA modules after the 1998

9    construction and those were removed in approximately 2005.

10        5.    I am not a CASp but I am generally familiar with the existence of both

11   California accessibility standards through the California Building Code and the

12   2010 accessibility standards under the ADA.

13        6.    I am aware of the following specific provision of the 2010 ADA

14   guidelines that relates to Detention and Correctional facilities: Section 232 provides

15   generally that such facilities shall comply with Section 232 and that the accessible

16   cells need to be dispersed throughout the facility, at least 2% of the cells must have

17   mobility features, etc.  (2010 ADA Standards, Sections 232, 232.1, 232.2 and

18   232.2.1.)

19        7.    There are a total of 250 housing cells, one floor has dormitory style

20   units at the Central jail, and there are 25 cells that have mobility features.  As stated

21   above, each module, on each floor has a mobility cell and there has been an attempt

22   to concentrate wheelchair disabled individuals in 8C where the accessible features

23   are located.  The goal is to house all wheelchair users at Rock Mountain once the

24   facility opens.  I am also aware that Title II of the ADA requires that the Central

25   Jail must make every effort to meet the needs of disabled incarcerated persons and

26   it has endeavored to do so except when the security and safety risks posed by any

27   such change are deemed too high, such as in the case of shower chairs.

28        8.    Each dayroom in the modules has one wheelchair accessible seat at the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

3:20-CV-00406-AJB-WVG
BENNETT DECLARATION ISO OPPOSITION

table for one ADA accessible cell bunk and they have been that way since 1998, when the building was constructed. There are 40 beds in the modules, 39 seats at the dayroom table, and 1 space with the seat removed for ADA access. There is only one wheelchair accessible cell/bed in each of the modules.

9.      There has never been an instance when all of the elevators in the Central facility were out of service due to mechanical issues. There are two elevators available for movement of incarcerated persons and two staff elevators. The staff elevators can be transferred at any time to use for movement of incarcerated persons and there is a process in place to effect the transfer if it becomes necessary. No incarcerated person would ever be taken down stairs for any reason other than a possible complete building evacuation when elevators don't work or are deemed a hazard such as a life threatening event such as a fire or severe earth quake because of the security and safety concerns to the officers and incarcerated persons.

10.     I have reviewed the claims made by Plaintiffs as to Unit 7B. In 7B, the ADA cell is designed for one mobility disabled person and one able bodied person. The bar originally installed for the toilet transfer was a fold down bar and it was removed because of anti-ligature and safety regulations and because it was taken off and used for a weapon. The desk in the ADA cell is within the required height of 28" minimum and 34" maximum, as are the adjacent dayroom tables.

11.     I have reviewed the claims made by Plaintiffs as to Unit 5A. In 5A, the ADA cell has no stool bolted in front of the desk and the dayroom table has one accessible seat corresponding to the one accessible cell/bed. There is a shower chair in the shower which has been there since the fold-down shower seat was removed. The phone is not currently accessible but I have been given instructions to find an acceptable solution that takes into account reach ranges, required cord length and anti-ligature rules.

12.     I have reviewed the claims made by Plaintiffs as to Unit 8C. In 8C,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

3:20-CV-00406-AJB-WVG
BENNETT DECLARATION ISO OPPOSITION

both the accessible toilet and the shower have grab bars. There are 12 individuals in wheelchairs in the module who all could be moved to Rock Mountain upon opening this Fall. 8C houses individuals with all manner of disabilities, including mobility disabilities, blindness, missing limbs, medication needs or other medical issues that require a high level of medical care. There is one wheelchair compliant seat in the day room at the dining table. With 40 seats available, 2 accessible seats are required and I have been instructed to come up with an acceptable solution for more than 2 wheelchair accessible seats without significant impact on the other disabled detainees in 8C. One seat is being removed immediately to bring the module into strict compliance but the goal is to provide more than the 2 required seats.

13.    The dayroom table and desks are 31 and 32 inches off the floor, respectively, which is compliant with the ADA standards. There are two showers available and one is ADA compliant with grab bars and a moveable plastic shower chair. Based upon my understanding, Section 213.3.6. requires that there be one accessible shower where showers are provided. The phones in 8C all have stools in front of them and I have again been instructed to come up with a solution that takes into account reach ranges, required cord length and anti-ligature rules, including removal of the stool, lowering of the phone and/or providing a longer phone cord which complies with anti-ligature rules.

14.    I have reviewed the claims made by Plaintiffs as to grab bars next to toilets and in showers, and shower chairs in EOH (Enhanced Observation Housing). This unit is most frequently used to house potentially suicidal incarcerated persons or those coming off drugs who need additional supervision. Plaintiffs also refer to the PSU (Psychiatric Care Unit), which houses those who are suicidal and have been put on medications while the medical and mental health staff determine if the individual is no longer suicidal. Shower chairs are available in PSU and EOH. EOH has one ADA cell and there has never been a stool mounted in front of its

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

3:20-CV-00406-AJB-WVG
BENNETT DECLARATION ISO OPPOSITION

1   desk.  The shower has grab bars and a plastic chair available.  The PSU has one

2   ADA cell which has grab bars behind and next to the toilet, grab bars in the shower

3   and a plastic shower seat.  The shower opening is 42" wide.

4       15.    The MOB refers to the Medical Observation Bed Unit.  MOB is a

5   section dedicated to those who need to be in a hospital bed.  The rooms are

6   approximately 10 foot x 10 foot and have more than the 60 inches of clear floor

7   space for wheelchair users, contrary to the Sanossian declaration.  The Sanossian

8   declaration refers to "bunks" in the MOB but there are no bunks in these hospital

9   type rooms and there are no communal bathrooms.   To the extent Mr. Sanossian is

10  referring to the communal restrooms in 8C, the opening to the bathroom is

11  approximately 42" wide so I am unsure what he is addressing.  All of the communal

12  toilets have at least one grab bar and the shower has grab bars and plastic chairs for

13  showering.

14      I declare under penalty of perjury under the laws of California and the United

15  States of America that the foregoing is true and correct.

16      Executed on May 31, 2022, at San Diego, California.

17

18

19  DARREN SCOTT BENNETT

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

3:20-CV-00406-AJB-WVG
BENNETT DECLARATION ISO OPPOSITION