Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600   Fax: 213.236.2700

Attorneys for Defendant
COUNTY OF SAN DIEGO (Also erroneously sued herein as SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, and SAN DIEGO COUNTY PROBATION DEPARTMENT)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ERNEST ARCHULETA, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, CORRECTIONAL HEALTHCARE PARTNERS, INC., TRI-CITY MEDICAL CENTER, LIBERTY HEALTHCARE, INC., MID-AMERICA HEALTH, INC., LOGAN HAAK, M.D., INC., SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-WVG<br><br>**DECLARATION OF O. RODRIGUEZ IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION** |

I, O. RODRIGUEZ, declare as follows:

1. I am a Lieutenant in the Detention Services Unit of the San Diego

1. County Sheriff's Department, where I have worked since February 1998. During my career, I have worked in various assignments including detention facilities, training officer positions, Transportation, Jail Population Management Unit and Detention Investigations Unit prior to promoting to supervisor. I was promoted to the rank of Sergeant in December 2014. As a Sergeant, I was assigned to two detention facilities, Facility Administrative Sergeant and County Parole and Alternative Custody Unit. I was promoted to the rank of Lieutenant in December 2021; I was assigned to Las Colinas Detention and Reentry Facility as a watch commander and assigned to the Jail Population Management Unit in February 2022.

2. I have personal knowledge of the matters set forth herein, except as to those matters stated on information and belief, and would competently testify thereto if called and sworn as a witness.

3. My current assignment is to oversee the Jail Population Management Unit (JPMU). The JPMU unit's purpose is to screen, asses and house incarcerated persons in a manner that will protect the safety of the community, staff and other incarcerated persons. JPMU conducts the reviews on the Administrative Separation incarcerated persons every 7 days (on Sundays) per our Detentions Bureau policy and procedures.

4. There are a variety of reasons why incarcerated persons may be placed in an Administrative Segregation Unit (ASU). These are enumerated in the Sheriff's Detention Services Bureau Manual, section J.3. A true and correct copy of this policy is attached as Exhibit A. The most common reasons are disciplinary (serious rules violations or multiple violations) or for protective custody reasons.

5. If a person is housed in ASU for non-disciplinary reasons, such as protective custody, they do not have any property restrictions.

6. Protective custody status is assigned to inmates who cannot safely program in the general population. This can be related to their commitment offense

(such as sex offenses with minors), providing testimony against a co-defendant or others ("snitches"), dropping out of a prison or street gang ("dropouts"), or other reasons. Once an inmate is classified as protective custody, whether in state prison or county jails, it is difficult for them to return to the mainline/general population for safety reasons.

7. Inmates in ASU have yard and dayroom access, although the groups they are released with are smaller. They also have phone access, legal visits, family visits via video, and canteen privileges.

8. For inmates who are placed in ASU for disciplinary reasons, they are re-evaluated every 7 days. A classification deputy meets the inmates, talks to them, and reviews their paperwork. The goal is to return them to regular housing.

9. Most inmates clean their own cells and cleaning materials are provided. If inmates have mental health issues, then typically staff remove the inmate(s) from the cell and then clean it, returning the inmate(s) to a clean cell.

10. When deputies do rounds, they pick up trash. If inmates refuse to provide their trash, sometimes they are asked to exit the cell so that deputies can remove their trash and remove any extra food items, trays, pruno and other contraband. Inmates often save apples, bread, oranges, sugar and other food items to make batches of "pruno," inmate-manufactured alcohol; however, making alcohol is prohibited and pruno is seized whenever found.

11. A hygiene inspection is conducted weekly in ASU, when staff tour the unit and look into the cells to make sure the areas are clean and there is no excess trash or other unsanitary/unnecessary items. No one wants gnats, rodents, or other unsanitary conditions to develop, which can occur if people do not empty their trash and have open/ partially consumed food items in their cell.

12. In ASU, intercoms are checked weekly although problems are reported if noticed/reported earlier. If a problem needs to be fixed, deputies submit a maintenance request. Intercoms are not permitted to be muted from the control

booth. Inmates often yell from their cells too, as there are frequently deputies and other staff in the unit whom they can address in person.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

Executed on May 24, 2022, at San Diego, California.

_____
O. Rodriguez

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

3:20-CV-00406-AJB-WVG
RODRIGUEZ DECL. ISO OPPOSITION

EXHIBIT A

**San Diego County Sheriff's Department Detention Services Bureau – Manual of Policies and Procedures**

| | |
|---|---|
| **DATE:** | SEPTEMBER 21, 2020 |
| **NUMBER:** | J.3 |
| **SUBJECT:** | SEGREGATION: DEFINITION AND USE |
| **RELATED SECTIONS:** | O.1, R.3, Q.9, M.25, M.26, PRISON RAPE ELIMINATION ACT OF 2003 |

PURPOSE

To ensure all inmates are assessed and screened with an objective screening instrument. After individual review of inmate history, criminal charges and information obtained from the inmate interview and/or health staff, specified inmates will be properly segregated from the inmate general population. Reasons include, but are not limited to, inmates who require special housing for their own safety, staff safety, facility security, or those who are pending a disciplinary action hearing.

POLICY

The guidelines for inmate segregation shall conform to all local, state and federal laws. Inmates shall not be segregated solely because of their race, color, religion, national origin, gender identity or sexual orientation. Each inmate's housing assignment will be made based on an individual assessment. Segregation shall be used only for those inmates who are classified for safety and/or security reasons, are pending disciplinary action or for investigative purposes.

PROCEDURE

I.  DEFINITIONS

    Segregation is a general term used to encompass the following types of separate housing for inmates who cannot remain in the general inmate population:

    A.  Administrative segregation

    B.  Protective custody

    C.  Acute mental health (Psychiatric Stabilization Unit/Jail Based Competency Treatment)

    D.  Disciplinary separation

II. ADMINISTRATIVE SEGREGATION

    A.  Administrative segregation shall consist of separate and secure housing, but shall not involve any other deprivation of privileges, other than is necessary to obtain the objective of protecting the inmates, staff, or public.

    B.  The following are types of inmates who may be placed into administrative segregation housing:

        1.  Those pending a hearing or investigation for a rule violation or criminal act.

  2. Those who have displayed a continual failure to adjust and conform to the minimum standards expected of those in mainline housing or designated special housing. The inmate's behavior is either criminal in nature or disruptive to the safe operation of the facility.

  3. Those who have shown a propensity for violence towards other inmates and/or staff, or participatory action in a conspiracy, or known premeditated thoughts or indications by a single inmate, to assault or harm other inmates and/or staff.

  4. Inmates who have paroled from, been released from or are anticipated to be housed in a security housing unit (SHU) or administrative segregation unit (ASU) or similar restrictive housing in a correctional setting.

  5. Those who have a case with a high profile nature or an extreme act of violence which jeopardizes public safety.

  6. Those who demonstrate influence over other inmates, including influence to promote or direct action or behavior that is criminal or disruptive to the safety and security of other inmates and/or facility staff, as well as to the safe operation of the facility.

  7. Those suspected of being a juvenile. Juveniles shall remain segregated until they are determined to be an adult or are transported to Juvenile Hall.

  8. Inmates sentenced to death.

  9. Per Jail Population Management Unit (JPMU) approval.

C. All inmates placed in administrative segregation housing will require a Jail Information Management System (JIMS) incident report or rule violation report, and a Segregated Housing Order (J-72) form. Inmates in administrative segregation housing shall be served a copy of the J-72 form signed by JPMU staff or a detentions supervisor.

D. When administrative segregation housing is used as pre-disciplinary housing pending a hearing, the decision must be based on the need to segregate for security reasons, rather than an attempt to limit privileges pending a hearing.

E. Upon placement of an inmate into administrative segregation housing or pre-disciplinary housing, sworn staff shall notify the facility charge nurse of the placement. A qualified health care professional will review the inmate's health record. If existing medical, dental or mental health needs require accommodation, sworn staff will be notified. Sworn staff will document the name and ARJIS number of the nurse who received notification in the incident report or rule violation report.

F. Inmates in administrative segregation housing may be eligible to share the dayroom with another compatible inmate or inmates housed in administrative segregation housing. JPMU will determine if the inmates are compatible based on their classification and will document the approval for shared dayroom in an inmate status report. Inmates who agree to share the dayroom may be provided with a three-hour block of dayroom time. A shared

dayroom program can serve as a step towards a return to mainline or designated special housing, but it is not required.

III. PROTECTIVE CUSTODY

    A. Protective custody (P/C) is the voluntary or involuntary placement of an inmate into separate and secure housing when there is a verified threat against their life, whether stated or implied, or when an inmate's circumstances render them a target for physical violence. Examples of use would be when an inmate is a witness against another or the inmate's relationships or affiliations may be unpopular or considered threatening by the general population (e.g., a law enforcement officer or prior law enforcement officer).

    B. Involuntary P/C housing should only be used after an assessment of all available housing alternatives have shown there are no other means of protecting the inmate. Involuntarily housed P/C inmates shall have all possible access to programs and services for which the inmate is otherwise eligible.

    C. P/C shall consist of separate and secure housing but shall not involve any other deprivation of privileges other than is necessary to obtain the objective of protecting the inmates, staff or public. The following examples are types of inmates who may warrant placement into P/C:

        1. Has been determined by the mental health staff to be developmentally disabled, and does not require treatment for a disease, injury or psychiatric disorder (e.g., Regional Center Clients [RCC]).

        2. By virtue of their small size, advanced age, gender nonconformance or other risk factors and characteristics, may be in danger of abuse or sexual victimization from inmates in the general population.

        3. Has been accused of a crime of a nature and sufficient publicity that would place them in physical jeopardy if housed with the general population (e.g., child victim charges).

        4. Is a material witness in a high profile case.

        5. Employment in law enforcement (past or current).

        6. Are held pending the civil process under the sexually violent predator (SVP) law. SVP's shall be kept separate from all other inmates. When an SVP demonstrates a failure to conform to the rules of the facility or is a danger to staff or other SVP's, they may be placed into administrative segregation housing.

        7. Has paroled from or is anticipated to be housed in a P/C environment [e.g., sensitive needs yard (SNY)] in a correctional setting.

        8. Segregated at their own request after all other housing options have been exhausted and the inmate has been interviewed by JPMU staff (requires JPMU supervisor approval).

    D.    "Keep separate all" (KSA) is a housing status that further restricts housing options within P/C. Although KSA inmates are to be kept separate from other inmates, they may be housed with other inmates with similar KSA criteria. The following inmates may be placed in KSA for the safety and security of the inmate and the facility:

        1.    Prior or active members of law enforcement.

        2.    Gang dropouts from Northern California gangs (e.g., "Norteños" or "Fresno Bulldogs").

        3.    RCC inmates may be classified P/C or KSA if they require separate and secure housing from mainline inmates per a mental health staff evaluation. If mental health staff does not require separate and secure housing, RCC inmates will be housed in mainline or designated special housing.

        4.    Additional exceptions may be approved by the JPMU lieutenant.

    E.    Lesbian, gay, bisexual, transgender, questioning and "plus" (LGBTQ+) inmates will be individually assessed and placed in the most suitable housing, with consideration given to each individual's needs and the ability to maintain facility security. Staff will familiarize themselves with LGBTQ+ terminology to better understand LGBTQ+ individuals and make the best housing determination.

    F.    Inmates initially being placed into P/C will require an incident report in JIMS and a J-72 form. Inmates returning to custody who will remain in P/C will not require an incident report but will need a new J-72 form. All P/C inmates shall be served a copy of the J-72 form signed by JPMU staff or a detentions supervisor.

IV.    ACUTE MENTAL HEALTH

The Psychiatric Stabilization Unit (PSU/WPSU) and the Jail Based Competency Treatment (JBCT) consist of a mixed classification population, where some inmates may have safety concerns in other housing assignments. Inmates who are admitted to the PSU/WPSU or the JBCT require segregation from other populations. Inmates who are housed in the PSU/WPSU and the JBCT are admitted as patients, at the order of a mental health professional or by court order, without regard for the inmate's individual classification status. When an inmate is discharged from the PSU/WPSU or JBCT, JPMU must be consulted to determine the appropriate housing assignment for the inmate.

V.    DISCIPLINARY SEPARATION

    A.    Disciplinary separation may be used when other less stringent methods have failed to correct behavior or when the violation is of such a nature that other methods would be ineffective or inappropriate. The use of separation as a disciplinary measure should be reserved for major sanctions and/or multiple sustained offenses. Examples include assaultive behavior or violence towards staff.

    B.    All disciplinary separation actions against inmates must be approved by the disciplinary review officer prior to the discipline being imposed.

VI.   BEDDING AND LINEN IN ADMINISTRATIVE SEGREGATION HOUSING

Cotton/wool blankets and sheets are prohibited in administrative segregation housing units. All inmates in administrative segregation housing will be provided with two safety blankets, one of which may be used as a mattress cover.

VII.  MONITORING

   A.   Sworn staff:

      1.   JPMU will ensure the status of each segregated inmate listed in sections II and III.D is reviewed at least every seven days. The objective is to return segregated inmates to the general inmate population or designated special housing when appropriate.

      2.   The seven-day review will be documented in JIMS. Comments will be entered into each inmate's JIMS history to describe the need for continued placement. The removal of an inmate from administrative segregation housing will be documented in JIMS on an incident report.

      3.   JPMU will monitor the inmate counts in all segregation modules and cells to ensure maximum effectiveness and compliance with the Armstrong lawsuit agreement.

      4.   If a request for placement in P/C or administrative segregation housing is denied, it will be documented in JIMS on an incident report and approved by JPMU supervisors.

   B.   Health Staff:

      1.   Health staff and mental health staff will receive a JIMS notification an inmate was placed into administrative segregation housing based on a mental health recommendation due to an inmate's increased risk for self-harm. Mental health staff and medical staff will review the inmate's health record to determine whether existing medical, dental or mental health needs require accommodation. Examples of such conditions include, but are not limited to: withdrawal, dementia, Alzheimer's, diagnosed mental illness, history of self-harm, prior Inmate Safety Program (ISP) placement or diagnosed obstructive sleep apnea. Health staff will document the review in the inmate's health record and notify the watch commander of any accommodation needed.

      2.   Health staff will monitor all inmates housed in administrative segregation housing. A qualified health care professional will conduct a "wellness check" three days each week on all segregated inmates. A Qualified Mental Health Provider (QMHP) will monitor and assess all segregated inmates at least one day each week. Documentation of segregation rounds will be made in the inmate's health record and will include: significant health findings, signs of physical and/or psychological deterioration and other signs or symptoms of failing health. Health staff shall notify the watch commander if any of the above are discovered during a "wellness check" (refer to Medical Services Division Operations Manual S.4, section I.D).