GAY CROSTHWAIT GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email:  ggrunfeld@rbgg.com
        vswearingen@rbgg.com
        pkaul@rbgg.com
        eanderson@rbgg.com
        hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
2001 Addison Street, Suite 300
Berkeley, California 94704-1165
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
Email:  ajf@aaronfischerlaw.com

(*additional counsel on following page*)
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ERNEST ARCHULETA, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, CORRECTIONAL HEALTHCARE PARTNERS, INC., LIBERTY HEALTHCARE, INC., MID-AMERICA HEALTH, INC., LOGAN HAAK, M.D., INC., SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-WVG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT LIBERTY HEALTHCARE CORPORATION'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Judge: Hon. Anthony J. Battaglia<br>Mag. Judge: Hon. William V. Gallo<br><br>NO HEARING DATE PER DKT. 126 |

(*counsel continued from preceding page*)

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California  92101-4297
Telephone:   (619) 699-2700
Facsimile:   (619) 699-2701
Email:         christopher.young@dlapiper.com
                   isabella.neal@dlapiper.com
                   oliver.kiefer@dlapiper.com

BARDIS VAKILI – 247783
JONATHAN MARKOVITZ – 301767
ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
2760 Fifth Avenue, Suite 300
San Diego, California  92103-6330
Telephone:   (619) 232-2121
Email:         bvakili@aclu-sdic.org
                   jmarkovitz@aclu-sdic.org

Attorneys for Plaintiffs

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

FACTUAL ALLEGATIONS ............................................................................................ 2

LEGAL STANDARD ....................................................................................................... 4

ARGUMENT ..................................................................................................................... 4

I.  Liberty Does Not Dispute That It is Subject to the ADA and Unruh Act, Both of Which Protect People with Mental Health Disabilities ............... 5

II. Plaintiffs Have Alleged Sufficient Facts to Support Their Claims Against Liberty for Discriminating Against People with Disabilities and for its Failure to Provide Reasonable Accommodations Under the ADA and Unruh Act ................................................................................................ 7

CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

Page

**CASES**

*Ass'n for L.A. Deputy Sheriffs v. Cnty. of L.A.*,
  648 F.3d 986 (9th Cir. 2011) ............................................................................ 4

*Brown v. Wash. Dep't of Corr.*,
  2015 WL 4039322 (W.D. Wash. May 13, 2015) ............................................. 8

*C.L. v. Del Amo Hospital, Inc.*,
  992 F.3d 901 (9th Cir. 2021) ............................................................................ 6

*Henry A. v. Willden*,
  678 F.3d 991 (9th Cir. 2012) ............................................................................ 4

*Hernandez v. Cty. of Monterey*,
  70 F. Supp. 3d 963 (N.D. Cal. 2014) ............................................................... 6

*Karczewski v. DCH Mission Valley LLC*,
  862 F.3d 1006 (9th Cir. 2017) .......................................................................... 6

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) .......................................................................... 4

*Sony Biotechnology, Inc. v. Chipman Logistics & Relocation*,
  2017 WL 3605500 (S.D. Cal. Aug. 22, 2017) ............................................... 11

*Taylor v. List*,
  880 F.2d 1040, 1045 (9th Cir. 1989) ................................................................ 5

*Wilkins-Jones v. Cty. of Alameda*,
  859 F. Supp. 2d 1039 (N.D. Cal. 2012) ........................................................... 6

**STATUTES**

28 C.F.R. § 36.105 .................................................................................................. 5

42 U.S.C. § 12102 ................................................................................................... 5

42 U.S.C. § 12182 ................................................................................................... 5

42 U.S.C. § 1983 ..................................................................................................... 5

Cal. Civ. Code § 51 ................................................................................................. 6

Cal. Gov. Code § 12926 .......................................................................................... 7

# INTRODUCTION

Pursuant to a contract with the County of San Diego, Defendant Liberty Healthcare Corporation ("Liberty") is responsible for mental health care for people incarcerated in the San Diego County Jail (the "Jail"), including all of the Proposed Class and Subclass members in Plaintiffs' Second Amended Complaint ("SAC"). The SAC contains numerous and extensive allegations that Liberty's policies and practices expose all people incarcerated in the Jail, including people with mental health disabilities, to a substantial risk of serious harm, and that Liberty fails to accommodate and discriminates against people with mental and physical disabilities.

Liberty's motion to dismiss (the "Motion") addresses only two of the six causes of action against Liberty. The Motion does not challenge the sufficiency of the pleading as to four causes of action, including for violations of the Eighth and Fourteenth Amendments of the U.S. Constitution and Sections 7 and 17 of Article 1 of the California Constitution for failure to provide constitutionally adequate mental health care.

In moving to dismiss Plaintiffs' disability-related claims, Liberty contends that Plaintiffs' allegations are not specific to Liberty because Plaintiffs use the term "CONTRACTOR DEFENDANTS" instead of Liberty. But the SAC plainly states that Liberty is one of the CONTRACTOR DEFENDANTS, SAC ¶ 5. Liberty also contends that Plaintiffs have not alleged enough specific facts against Liberty to support the ADA and Unruh Act claims. However, despite Liberty's concession that it is responsible for mental health care within the Jail, it fails to challenge Plaintiffs' constitutional claims based on Liberty's deficient mental health policies, procedures, and practices. Liberty's Motion entirely ignores Plaintiffs' extensive allegations that Liberty discriminates against and fails to accommodate people with mental health disabilities. Liberty's arguments are unsupported by any law and fail to grapple with the actual allegations in the SAC. The Motion should be denied.

# FACTUAL ALLEGATIONS

Defendant Liberty "provides mental health care staffing and services at the Jail pursuant to a contract with" the County (the "Contract"). SAC ¶ 33. Pursuant to the Contract, Liberty is responsible for "comprehensive mental health and programming services" at the Jail. *Id.* (quoting the Contract). Liberty's responsibilities include, but are not limited to, "identifying mental health needs at booking, providing comprehensive mental health evaluations, conducting psychiatric evaluations of incarcerated people on suicide watch, diagnosing and providing psychotropic medications, providing individual and group counseling, and providing … aid for people with intellectual and developmental disabilities…" *Id.* The Contract's terms require Liberty to provide the licensed staff and medical equipment necessary to operate those on-site clinics. *Id.* Liberty is also responsible for addressing grievances submitted by incarcerated people, including grievances about disability accommodations. *Id.* ¶¶ 261, 263. Liberty may not "discriminate against qualified people with disabilities" and must comply with the ADA. Declaration of Van Swearingen in Support of Plaintiffs' Request for Judicial Notice, Ex. A (Contract), § 8.7.[1] Liberty is responsible for providing care and monitoring to people requiring "patient commitment or transfer to an inpatient psychiatric setting." *Id.*, Statement of Work 3.2.19. Liberty must use "written policies and procedures for mental health treatment" and work to "alleviate symptoms of serious mental disorders." *Id.*, Statement of Work § 3.2.21.

Liberty is responsible for providing care to a substantial number of incarcerated people with disabilities, as more than 1,000 people in the Jail have mental health needs and are prescribed psychotropic medications. SAC ¶ 130 (citing public County statistics). The SAC alleges in detail how Liberty, by policy

---

[1] In conjunction with this Opposition, Plaintiffs request judicial notice of the Contract pursuant to the incorporation by reference doctrine.

and practice, violates the rights of individuals with mental and physical disabilities incarcerated in the Jail. For example, Liberty *itself* fails to (1) "provide incarcerated people with disabilities reasonable accommodations and to ensure meaningful and equal access to all of the programs and services offered by the Jail," *id.* ¶ 212; (2) "accommodate incarcerated people with disabilities" resulting in the provision of inadequate mental health care, *id*; (3) "adequately identify individuals with disabilities and the reasonable accommodations they require," *id.* ¶ 213; (4) "adequately train staff to maintain records or information about incarcerated people's disabilities and related accommodations," *id.* ¶ 216; and (5) "ensure that incarcerated people with disabilities who require assistive devices as accommodations are provided with and allowed to retain" those devices, *id.* ¶ 229.

Specific to people with mental health disabilities, the SAC alleges in detail how Liberty's policies and procedures result in discrimination against such individuals. For example, Liberty itself, along with the County, "lack[s] adequate policies, procedures, and practices for screening, supervising, and treating" people at risk of suicide. *Id.* ¶ 182. As a result of Liberty's and the Sheriff's Department's deficient screening procedures and practices, *id.* ¶ 186, patients at risk of suicide are placed in cells where they are "deprived of access to their property, and denied programs, showers, phone calls, family visits, social interaction, and recreation"—unlike other incarcerated people. *Id.* ¶ 169; *see also id.* ¶ 181 (alleging how Plaintiff Dunsmore was deprived of access to the phone, yard, and socialization while in an EOH cell). As another example, Liberty, in conjunction with the County, is also responsible for providing care to people "with acute mental health needs," including in the psychiatric stabilization units ("PSUs"). *Id.* ¶¶ 194, 203. The PSU "lacks space for confidential mental health visits," which means that incarcerated people with serious mental illness are "unable to speak about their serious mental health needs," and are thus denied full and equal access to mental health services. *Id.* ¶ 165. Patients in the PSU require high levels of care, but "there are not enough

assigned PSU . . . contractors [from Liberty] to provide daily treatment." *Id.* ¶ 197.

## LEGAL STANDARD

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020). "All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists." 5B Federal Practice and Procedure (Wright & Miller) § 1357 (3d ed. 2022). Dismissal is proper only "if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011). Even if a motion to dismiss is granted, "a district court should grant leave to amend" unless the complaint "could not possibly be cured by the allegation of other facts." *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012) (internal citations omitted).

## ARGUMENT

Plaintiffs' SAC alleges six causes of action against Liberty: (1) violation of the Eighth Amendment for subjecting Plaintiffs "to a substantial risk of harm and injury from inadequate … mental health … care," SAC ¶¶ 398-400; (2) violation of the Fourteenth Amendment for subjecting Plaintiffs "to a substantial risk of harm and injury from inadequate … mental health … care," *id.* ¶¶ 401-03; (3) violation of Article 1, Section 7 of the California Constitution for subjecting Plaintiffs "to a substantial risk of harm and injury from inadequate … mental health … care," *id.* ¶¶ 404-06; (4) violation of Article 1, Section 17 of the California Constitution for subjecting Plaintiffs "to a substantial risk of harm and injury from inadequate … mental health … care," *id.* ¶¶ 407-09; (5) violation of Title III of the Americans with Disabilities Act for failing to provide Plaintiffs with full and equal enjoyment of Liberty's services, *id.* ¶¶ 419-22; and (6) violation of the Unruh Civil Rights Act for failing to provide Plaintiffs with full and equal access to Liberty's services and with

disability accommodations, *id.* ¶¶ 428-35.

Liberty's Motion does not contest whether Plaintiffs state claims against Liberty for inadequate mental health care under the United States and California Constitutions. Rather, Liberty challenges only the ADA and Unruh Act causes of action. *See* Mot. at 2.

### I. Liberty Does Not Dispute That It is Subject to the ADA and Unruh Act, Both of Which Protect People with Mental Health Disabilities

In its Motion, Liberty does not dispute that it is subject to the ADA and Unruh Act. Nor does Liberty dispute that the allegations in the SAC sufficiently describe violations of these statutes and sufficiently identify the risks to incarcerated people of continuing disability rights violations. Liberty's argument section cites *zero law*.[2]

The ADA defines disability to include "a physical or ***mental*** impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A) (emphasis added). The ADA's implementing regulations further specify that a "mental impairment" means "***[a]ny* mental** or psychological disorder such as … emotional or mental illness…" 28 C.F.R. § 36.105(b)(1)(ii) (emphasis added); *see also id.* at § 36.105(b)(2) (providing non-exhaustive list of conditions qualifying as disability).

Title III of the ADA prohibits Liberty from discriminating against individuals "on the basis of disability" in the provision of services at the Jail. 42 U.S.C. § 12182(a); *see also C.L. v. Del Amo Hospital, Inc.*, 992 F.3d 901, 905, 915 (9th Cir.

---

[2] The case law Liberty cites in subsection B of its Legal Standard section is inapplicable to the instant Motion. *See* Mot. at 4 (referring to cases on "§ 1983 jurisprudence"). Liberty's decades-old cases concern 42 U.S.C. § 1983, not the ADA and Unruh Act claims that Liberty challenges. Several of the cases even predate the disability protections in the ADA (enacted in 1990) and Unruh Act (amended in 1992 to incorporate ADA standards). *See, e.g.*, *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (pre-ADA case discussing standards for an individual government official's vicarious liability under § 1983).

2021) (holding that Title III required hospital to provide reasonable accommodation to person with psychiatric disabilities). Whereas Title II of the ADA prohibits discrimination by public entities, such as the Sheriff's Department, Title III prohibits discrimination by "private entities" including Liberty. *Hernandez v. Cty. of Monterey*, 70 F. Supp. 3d 963, 973, 978 (N.D. Cal. 2014) (holding that Title III applies to jail healthcare contractor, including to provision of mental health care). Among other requirements, Title III requires Liberty to make "reasonable modifications in policies, practices, or procedures" when necessary to ensure that people with disabilities have access to programs, auxiliary aids, and services. 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii); *see also Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1012 (9th Cir. 2017) (noting that Title III "provides a non-exhaustive, illustrative list of certain actions that qualify as discrimination"); 28 C.F.R. part 36 (implementing regulations for Title III of ADA). The failure to make reasonable accommodations under the ADA constitutes discrimination.

The Unruh Civil Rights Act similarly provides that all persons in California, "no matter what their … disability … are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The Unruh Act is also violated by any violation of the ADA. *Id.* at § 51(f). Liberty does not contest that it is subject to the Unruh Act. *See* Mot. at 6-8; *cf. Wilkins-Jones v. Cty. of Alameda*, 859 F. Supp. 2d 1039, 1050 (N.D. Cal. 2012) (holding that the Unruh Act applies to a private health contractor operating in a county jail). The Unruh Act, like Title III, protects people with mental health disabilities as well as physical disabilities. Under the Unruh Act, a disability is defined to include any "any mental or physical disability," and references further definitions in the California Government Code. *Id.* at § 51(e)(1). In turn, the Government Code provides a non-exhaustive definition of "mental disability," including "any mental or psychological disorder or condition, such as intellectual disability … [or] emotional or mental

illness." Cal. Gov. Code § 12926(j)(1).

Accordingly, both the ADA and the Unruh Act protect people incarcerated in the Jail with mental health disabilities, many of whom are admittedly in Liberty's care. *See* Mot. at 2, 5 (acknowledging that Liberty is the only contractor "responsible for mental health care" at the Jail and provides "mental health services" and "mental health treatment" to incarcerated people).

**II. Plaintiffs Have Alleged Sufficient Facts to Support Their Claims Against Liberty for Discriminating Against People with Disabilities and for its Failure to Provide Reasonable Accommodations Under the ADA and Unruh Act**

Liberty contends that Plaintiffs' ADA and Unruh Act allegations are insufficiently specific as to Liberty *itself*—as opposed to other defendants. *See* Mot. at 4-6.

Contrary to Liberty's selective reading, Plaintiffs' SAC contains extensive allegations that Liberty violates the statutory rights of individuals with disabilities incarcerated in the Jail. The SAC includes allegations that Liberty's specific policies, procedures, and practices deny incarcerated people with mental health disabilities full and equal access to services and programs at the Jail. For example, Liberty fails to provide accommodations to people with disabilities, resulting in the provision of inadequate mental health care. SAC ¶ 212. Moreover, Liberty fails to identify people with disabilities and the accommodations they require, *id.* ¶ 213, and fails to "ensure that incarcerated people with disabilities who require assistive devices as accommodations are provided with and allowed to retain" those devices, *id.* ¶ 229; *cf. C.L.*, 992 F.3d at 915 (holding Title III may require hospital to permit person with disability to retain service dog accommodation).

Plaintiffs specifically allege that Liberty fails "to identify newly arriving people's disabilities and needed accommodations during the intake process, which results in the denial of accommodations mandated by the ADA and the Rehabilitation Act and places people with disabilities at risk of discrimination,

injury, and/or exploitation." SAC ¶ 214. Plaintiffs allege that without an adequate tracking system, Liberty has "no easily accessible means to determine whether a person has a disability, and what, if any, accommodations that person requires. Consequently, [Liberty] fail[s] to provide people with accommodations and/or take[s] away accommodations that have already been provided without justification." *Id.* ¶ 217. Plaintiffs similarly allege that Liberty fails to "maintain adequate information about incarcerated people's mental health needs"—which includes accommodations necessary to deliver and ensure appropriate treatment—in their medical files. *Id.* ¶ 151.

Plaintiffs also allege that Liberty lacks sufficient policies and procedures for triaging sick call requests for mental health care, which means that incarcerated people with mental illness may not receive the timely and appropriate services they require based on their mental health disability. SAC ¶¶ 145-46. Plaintiffs allege that individuals with mental illness and at risk of suicide are placed in cells where they are "deprived of access to their property, and denied programs, showers, phone calls, family visits, social interaction, and recreation"—unlike other incarcerated people. *Id.* ¶ 169; *see id.* ¶¶ 183-188 (alleging that Liberty's screening policies result in people at risk of suicide being placed in these cells). *See Brown v. Wash. Dep't of Corr.*, 2015 WL 4039322, at *11 (W.D. Wash. May 13, 2015) (finding that placing incarcerated person in a restraint chair for behavior related to his mental illness rather than "accommodating [his] mental illness with appropriate treatment" could indicate a "discriminatory response" under the ADA), *report and recommendation adopted*, 2015 WL 4039270 (W.D. Wash. July 2, 2015).

Plaintiffs allege that Liberty fails to timely respond to disability-related grievances filed by incarcerated people, *id.* ¶ 261, which means that these grievances "are not a functional means for people with disabilities to request and receive accommodations for their disabilities." *Id.* ¶ 262. Plaintiffs allege that Liberty fails to "adequately train staff on how to visually identify people with

mobility disabilities." *Id.* ¶ 269. Plaintiffs also allege that Liberty fails to adequately train staff on how to notify people with disabilities of emergencies and how to safely evacuate them. *Id.* ¶¶ 267-68.

Liberty contends that none of Plaintiffs' allegations are sufficient to state a claim *against Liberty* because Plaintiffs use the label "CONTRACTOR DEFENDANTS" to refer to the healthcare contractors at the Jail, Mot. at 6, rather than describing Liberty specifically by its name. But the SAC clearly identifies Liberty as one of the Contractor Defendants, *see* SAC ¶ 5, so Liberty cannot credibly claim that it is not on notice about which allegations pertain to Liberty.

Liberty next argues that Plaintiffs' SAC fails to include "facts alleging that Liberty discriminated against disabled inmates." Mot. at 6. However, in addition to making numerous allegations about how Liberties' policies and practices discriminate in violation of the ADA and Unruh Act, the SAC alleges that Liberty discriminates against Plaintiffs and other incarcerated people by placing people at risk of suicide (who are likely to have a mental health disability) in cells where they are denied access to programs and privileges that are available to other incarcerated people. SAC ¶¶ 169-70, 183-188. The SAC alleges that both Plaintiff Zoerner and Plaintiff Dunsmore were placed in these cells and denied access to their property, including disability accommodations in Plaintiff Dunsmore's case, and Jail programs accessible to other incarcerated people. *Id.* ¶¶ 176, 181.

The SAC further alleges, for example, that Liberty discriminated against Plaintiff Lopez, who is hard of hearing and uses sign language to communicate, by failing to ensure that he could effectively communicate during a mental health appointment due to Liberty's deficient policies, procedures, and practices. *Id.* ¶ 223; *see also id.* ¶ 227 (alleging that Lopez was denied a sign language interpreter on several other occasions). The SAC alleges that Plaintiff Lopez had to "rely on written notes to understand complex medical issues and advice that the provider was trying to discuss"; that Plaintiff Lopez "did not understand what medical staff tried

to communicate to him"; that sometimes "health care staff did not write any information down" for him; and that Plaintiff Lopez "could not read their lips because the majority of interactions occurred while staff wore masks." *Id.* ¶ 265. Liberty does not contest whether these allegation are sufficient to allege a violation of the ADA (again, Liberty never discusses what the ADA or Unruh Act require) but instead points the blame at the Sheriff's Department. Mot. at 5-6. Liberty's factual defense that it did not have a responsibility to ensure that Plaintiff Lopez could effectively communicate during a mental health appointment cannot be decided in a Rule 12(b)(6) motion. *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.,* 911 F.2d 242, 245 (9th Cir. 1990); *cf.* SAC ¶ 33 (Liberty must comply with disability anti-discrimination laws when executing its duties at the Jail). In any event, Liberty's factual assertions are also disproven by its Contract with the County, which requires Liberty to "ensure that services and facilities are provided without regard to … physical… [or] mental disability." Contract ¶ 8.5. Whether Jail staff handcuffed Plaintiff Lopez or not, under the Contract, the ADA, and the Unruh Act, Liberty is responsible for ensuring that Plaintiff Lopez was not prevented from receiving mental health services due to his disability.

Liberty lastly contends that "the SAC fails to allege any facts that support the conclusory allegations contained in the Eighth Cause of Action that Liberty allegedly violated the Unruh Act by discriminating against disabled inmates." Mot. at 8.[3] However, the allegations above about Liberty's violations of the ADA alone support a violation of the Unruh Act. *See* Cal. Civ. Code § 51(f) (any violation of the ADA also constitutes a violation of the Unruh Act). For example, the SAC alleges that Liberty lacks sufficient policies and procedures for triaging sick call

---

[3] Liberty's singular focus on factual allegations in a single section of the SAC is misplaced. *See* Mot. at 4:22-23, 7:9-10. The SAC plainly alleges that the Title III cause of action is based on ***all*** of the preceding factual allegations in the SAC, *id.* ¶ 419, and that the Unruh Act cause of action is based on ***all*** of the preceding factual allegations in the SAC, *id.* ¶ 428.

requests for mental health care, which results in discrimination because people with certain mental illnesses are prioritized over others. SAC ¶¶ 145-46, 151. The SAC also alleges that Liberty's practices for responding to disability-related grievances are statutorily unlawful, and lead to incarcerated people with disabilities being denied accommodations for their disabilities. *Id.* ¶¶ 261-62.

## CONCLUSION

Plaintiffs' SAC states sufficient allegations to support their ADA and Unruh Act causes of action against Liberty. The Motion should therefore be denied. Should the Court be inclined to dismiss either of these claims, Plaintiffs respectfully ask that such dismissal should be made with leave to amend. *See Sony Biotechnology, Inc. v. Chipman Logistics & Relocation*, 2017 WL 3605500, at *2 (S.D. Cal. Aug. 22, 2017) (courts "should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading").

DATED: June 5, 2022          Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Van Swearingen*
    Van Swearingen

Attorneys for Plaintiffs
Email: VSwearingen@rbgg.com