GAY CROSTHWAIT GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
2001 Addison Street, Suite 300
Berkeley, California 94704-1165
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
Email: ajf@aaronfischerlaw.com

(*additional counsel on following page*)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ERNEST ARCHULETA, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, CORRECTIONAL HEALTHCARE PARTNERS, INC., LIBERTY HEALTHCARE, INC., MID-AMERICA HEALTH, INC., LOGAN HAAK, M.D., INC., SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-WVG<br><br>**REPLY TO DEFENDANTS COUNTY OF SAN DIEGO AND CORRECTIONAL HEALTHCARE PARTNERS, INC.'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION**<br><br>Judge: Hon. Anthony J. Battaglia<br><br>Date: August 11, 2022<br>Time: 2:00 p.m.<br>Ctrm.: 4A |

[3916933.6]

Case No. 3:20-cv-00406-AJB-WVG

(*counsel continued from preceding page*)

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California 92101-4297
Telephone: (619) 699-2700
Facsimile: (619) 699-2701
Email:  christopher.young@dlapiper.com
  isabella.neal@dlapiper.com
  oliver.kiefer@dlapiper.com

BARDIS VAKILI – 247783
JONATHAN MARKOVITZ – 301767
ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
2760 Fifth Avenue, Suite 300
San Diego, California 92103-6330
Telephone: (619) 232-2121
Email:  bvakili@aclu-sdic.org
  jmarkovitz@aclu-sdic.org

Attorneys for Plaintiffs

# TABLE OF CONTENTS

Page

I. A PRELIMINARY INJUNCTION IS WARRANTED ................................... 2

    A. Plaintiffs Are Likely to Succeed on Their Claims .................................. 2

        1. Plaintiffs Have Standing and Their Claims Are Not Moot .......... 2

        2. Plaintiffs Exhausted Their Administrative Remedies ................. 4

        3. Plaintiffs Show Deliberate Indifference and *Monell* Liability ...................................................................................... 4

        4. Alleged "Changes" Do Not Moot Plaintiffs' Requested Relief ............................................................................................ 6

        5. Plaintiffs' Proposed Remedial Plans Are Appropriate ................ 6

    B. Preliminary Injunctive Relief Is Necessary to Avoid Future Harms ........................................................................................................ 7

        1. Intercom and Emergency Response Remedies ........................... 7

        2. Video Surveillance Coverage and Functionality Remedies ........ 8

        3. Safety Check Remedies ............................................................... 9

        4. Drug Contraband Interdiction, MAT, and Narcan Remedies ...................................................................................... 9

        5. Mental Health Input and Confidentiality Remedies .................. 11

        6. Mobility Access Remedies ........................................................ 13

    C. The Balance of Hardships and Public Interest Favor Plaintiffs ............ 14

    D. The Court Should Waive Bond for Plaintiffs ........................................ 15

II. PROVISIONAL CLASS CERTIFICATION SHOULD BE GRANTED ...... 15

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

Page

**CASES**

*Albino v. Baca,*
    747 F.3d 1162 (9th Cir. 2014) ................................................................... 4

*All. for the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) ................................................................. 14

*Andres v. Marshall,*
    867 F.3d 1076 (9th Cir. 2017) ................................................................... 4

*Armstrong v. Newsom,*
    No. 94-cv-02307 CW, 2021 WL 933106 (N.D. Cal. Mar. 11, 2021) ............... 5

*Armstrong v. Schwarzenegger,*
    622 F.3d 1058 (9th Cir. 2010) ................................................................... 7

*Bell v. Wolfish,*
    441 U.S. 520 (1979) .................................................................................. 3

*California ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency,*
    766 F.2d 1319 (9th Cir. 1985) ................................................................. 15

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) .................................................................................... 4

*Clark v. City of Lakewood,*
    259 F.3d 996 (9th Cir. 2001), as amended (Aug. 15, 2001) ...................... 2

*Connick v. Thompson,*
    563 U.S. 51 (2011) .................................................................................... 5

*Daubert v. Merrell Dow Pharmaceuticals,*
    509 U.S. 579 (1993) ................................................................................ 13

*Demery v. Arpaio,*
    378 F.3d 1020 (9th Cir. 2004) ................................................................... 3

*Dougherty v. City of Covina,*
    654 F.3d 892 (9th Cir. 2011) ..................................................................... 5

*Farmer v. Brennan,*
    511 U.S. 825 (1994) .................................................................................. 5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) .................................................................................. 6

*Gluth v. Kangas,*
    951 F.2d 1504 (9th Cir. 1991) ................................................................... 6

*Harris v. Bd. of Supervisors, L.A. Cnty.*,
    366 F.3d 754 (9th Cir. 2004) .................................................................. 14

*Hass v. Cnty. of Sacramento Dep't of Support Servs.*,
    No. 2:13-CV-01746 JAM, 2014 WL 5035949 (E.D. Cal. Oct. 8, 2014) .......... 4

*Hernandez v. City of San Jose*,
    No. 16-CV-03957-LHK, 2019 WL 4450930 (N.D. Cal. Sept. 17, 2019) ......... 4

*Hernandez v. Cnty. of Monterey* ("*Hernandez II*"),
    110 F. Supp. 3d 929 (N.D. Cal. 2015) ................................................ 7, 9, 15

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,
    567 U.S. 298 (2012) .................................................................................. 6

*Mayfield v. United States*,
    599 F.3d 964 (9th Cir. 2010) ..................................................................... 4

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ................................................................... 14

*Or. Adv. Ctr. v. Mink*,
    322 F.3d 1101 (9th Cir. 2003) ................................................................... 3

*Oviatt By & Through Waugh v. Pearce*,
    954 F.2d 1470 (9th Cir. 1992) ................................................................... 6

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ..................................................................... 4

*Reimers v. State of Or.*,
    863 F.2d 630, 632 (9th Cir. 1988) .............................................................. 4

*Rodriguez v. County of San Diego*,
    No. 14cv949-JLS-RBB, 2016 WL 4515860 (S.D. Cal, Feb. 9, 2016) ........... 13

*Toussaint v. Rushen*,
    553 F. Supp. 1365 (N.D. Cal. 1983), *aff'd in part*, 722 F.2d 1490 (9th
    Cir. 1984) ................................................................................................ 15

*Turner v. Rogers*,
    564 U.S. 431 (2011) .................................................................................. 3

*U.S. Parole Comm. v. Geraghty*,
    445 U.S. 388 (1980) .................................................................................. 3

*Van Ort v. Est. of Stanewich*,
    92 F.3d 831 (9th Cir. 1996) ....................................................................... 6

Defendants do not disprove Plaintiffs' extensive evidence of a crisis at the Jail, including evidence that people have been dying from drug overdoses at a rate of every 2-3 months since 2019, that 18 people died at the Jail last year (triple the national rate), and that the Jail's death rate is currently on track for 24 in-custody deaths this year.  Nor do Defendants even acknowledge that two people have died at the Jail since Plaintiffs filed their Motion (Dkt. 119-1) ("Mot.") on May 2, 2022.

Among the major issues not rebutted in Defendants' Opposition (Dkt. 153) ("Opp.") are the following:  deadly narcotics are widely available within the Jail; body scanners are not used with staff and visitors to interdict narcotics; life-saving Narcan is not accessible to incarcerated people during drug overdoses; MAT is currently unavailable to most people with opioid dependence; custody staff are not required to ensure people are alive when conducting safety checks; intercoms are not checked for functionality in all housing units; there is no plan to ensure video camera coverage in places where Defendants know physical violence regularly occurs; most mental health visits are not confidential; there is no process for custody staff to consider or implement mental health staff's clinically-based input on housing and conditions; and Defendants house people with mobility disabilities in units where the Jail's programs, services, and activities are often inaccessible.

Defendants ask the Court to ignore the extraordinary amount of evidence establishing that each person at the Jail is exposed to substantial risk of serious harm by Defendants' policies and practices, and instead assert that they have the problems under control.  "Most significantly," Defendants claim, "[t]he County has already made changes that have been in the works for years." Opp. at 1.  But in reality, Defendants' own evidence establishes that their "changes" amount to:  (1) in most instances, changing nothing and instead staying the course; (2) in several instances, promising vague and undefined changes that may happen sometime in the future; and (3) in a couple instances, pointing to last-minute, half-measure policy changes that lack credibility.  Despite the volume of their filing, Defendants identify only

two policy changes responsive to Plaintiffs' Motion: First, Defendants tout the "extremely significant" process for drug testing by urinalysis, which their own Medical Director equivocally opines will "hopefully have some effect on reducing the number of overdoses." *Id*. at 18; Montgomery Decl.[1] at ¶ 5. Second, Defendants now check intercom buttons and prohibit deputies from muting the volume—but only at Central Jail (one of six Jail facilities). Opp. at 10-11. The remaining promised "changes" are not responsive to Plaintiffs' Motion, are not memorialized in any policy, have not been implemented, and have no set timelines.

Real change is long overdue. By granting Plaintiffs' Proposed Order, this Court will help ameliorate some of the irreparable harms caused by Defendants' documented unlawful policies and practices, and will create a framework for monitoring Defendants' compliance with necessary remedial measures.

## I. A PRELIMINARY INJUNCTION IS WARRANTED

### A. Plaintiffs Are Likely to Succeed on Their Claims

#### 1. Plaintiffs Have Standing and Their Claims Are Not Moot

Defendants' argument that Plaintiffs lack standing because some Plaintiffs are no longer at the Jail or are awaiting transfer is meritless.[2] Opp. at 3-4. Defendants concede that some Plaintiffs remain in Jail custody.[3] Defendants' standing argument must be rejected on this basis alone.

Transferred and released Plaintiffs also have standing to pursue injunctive relief because this case falls squarely within the "capable of repetition yet evading review" exception to the mootness doctrine, applicable when "(1) the duration of the

---

[1] All Defendants' cited declarations appear in Dockets 151 and 153. All Plaintiffs' cited declarations, other than those filed herewith, appear in Dockets 119 and 122.

[2] Defendants do not challenge that Plaintiffs had standing at the time their SAC was filed. *See Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) ("Standing is determined by the facts that exist at the time the complaint is filed.").

[3] Defendants do not even mention Plaintiff Edwards, who remains in Jail awaiting sentencing. Swearingen Reply Decl. ¶ 31. Defendants also cite no case law for the proposition that people at the Jail lack standing while awaiting transfer to prison.

challenged action is too short to be litigated prior to cessation, and (2) there is a 'reasonable expectation' that the same parties will be subjected to the same offending conduct." *Demery v. Arpaio*, 378 F.3d 1020, 1026-27 (9th Cir. 2004).

Courts routinely find the short nature of a plaintiff's incarceration satisfies the first prong. *See. e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 526 n.5 (1979) ("[B]ecause of the temporary nature of confinement [in jail], the issues presented are … 'capable of repetition, yet evading review.'"); *see also Turner v. Rogers*, 564 U.S. 431, 440 (2011); *U.S. Parole Comm. v. Geraghty*, 445 U.S. 388, 404 (1980); *Or. Adv. Ctr. v. Mink*, 322 F.3d 1101, 1117-18 (9th Cir. 2003). Defendants themselves argue that the Jail holds its "inmates for a shorter period of time than almost any other county in California." *See* Hildreth Report at ¶ 14 (Dkt. 153-1, Ex. I at ECF 229).

Plaintiffs satisfy the second prong because they have a reasonable expectation that they may be transferred back to the Jail or released and reincarcerated there. Contrary to Defendants' contention, this is not mere speculation—it is well-supported by evidence. The eight Plaintiffs have been incarcerated at the Jail approximately 56 times in total, including Plaintiff Zoerner who was incarcerated 24 times since 2010 and six times in 2021 alone. *See* Zoerner Reply Decl. ¶ 2. Plaintiff Dunsmore has been re-incarcerated at the Jail multiple times while out to state court for re-sentencing. Dunsmore Decl. ¶ 3. This pattern of reincarceration at the Jail establishes a reasonable expectation that Plaintiffs will be exposed to a continuing risk of harm in the future. *See Demery*, 378 F.3d at 1027 (jail's release of plaintiffs did not moot case where one plaintiff was incarcerated 20 different time in five years, and eleven plaintiffs had been detained more than once).

Throughout their Opposition, Defendants also try to argue that Plaintiffs lack standing because the exact same "confluence of conditions" for any given Plaintiff is unlikely to occur. *See, e.g.*, Opp. at 9-10. Defendants mistakenly frame the harm to which Defendants are deliberately indifferent as one that is unique to each individual; in doing so, they fail to acknowledge that "although a presently existing

risk may ultimately result in different future harm for different inmates—ranging from no harm at all to death—every inmate suffers exactly the same constitutional injury when he is exposed to a single … policy or practice that creates a substantial risk of serious harm." *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014).

Defendants' cases are inapposite: *Hernandez v. City of San Jose*, No. 16-CV-03957, 2019 WL 4450930, at *20-22 (N.D. Cal. Sept. 17, 2019) (rally attendees unlikely to attend another rally where officers exposed them to violence by directing them to an exit where they faced violent protestors); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-6 (1983) (individual unable to allege he would likely have another encounter with the police *and* be choked by virtue of some choking policy/practice); *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (plaintiff failed to show a declaratory judgment—not an injunction—would redress his alleged harms). *Reimers v. State of Or.*, 863 F.2d 630 (9th Cir. 1988) and *Hass v. Cnty. of Sacramento Dep't of Support Servs.*, No. 2:13-CV-01746 JAM, 2014 WL 5035949 (E.D. Cal. Oct. 8, 2014), the only cases involving incarcerated people, were brought as individual rather than class actions, and in neither case did plaintiffs—unlike Plaintiffs here—show a reasonable expectation of reincarceration.

### 2. Plaintiffs Exhausted Their Administrative Remedies

Defendants provide no factual support for their two-sentence argument, for which they bear the burden of proof, that Plaintiffs failed to exhaust administrative remedies. Opp. at 4-5; *see Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). In any event, Plaintiffs have exhausted their administrative remedies. Swearingen Reply Decl. ¶¶ 14-22; *see also Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) (finding exhaustion where officials fail to process grievances).

### 3. Plaintiffs Show Deliberate Indifference and *Monell* Liability

Defendants' deliberate indifference section only recites general legal principles without ever articulating how Plaintiffs fail to establish deliberate indifference. Opp. at 7-8. Plaintiffs' extensive evidence from state and county

oversight agencies,[4] detentions experts, the Jail's former Medical Director and Chief Psychiatrist, a Jail mental health clinician, and over 30 declarations from incarcerated people[5]—as well as admissions from Defendants themselves—shows Defendants have: (1) policies and practices that place people at the Jail at substantial risk of serious harm; (2) long known about these risks; and (3) chosen not to take appropriate and responsive actions to ameliorate those risks. Mot. at 7-16; *cf. Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (conscious disregard to substantial risks of serious harm is deliberate indifference).

In response to this voluminous evidence, the *only* argument offered by Defendants to try to defeat *Monell* liability is that the declarations of Dr. Jon Montgomery "show a very different picture than those portrayed by the plaintiffs." Opp. at 5. While Plaintiffs strongly dispute Dr. Montgomery's characterizations,[6] his declarations challenge only a select handful of discrete past events (often misrepresenting facts), and do not rebut the existing *risks of harm* from Defendants' current policies and practices.[7] *See* Cohen Reply Decl. ¶¶ 6, 11, 17.

---

[4] As explained in Plaintiffs' Request for Judicial Notice, it is well-settled that judicial notice of the reports supporting Plaintiffs' Motion is proper. Dkt. 119-2. Defendants do not meaningfully dispute the specific facts therein, nor do they argue that they have been unaware of the issues. Courts routinely consider evidence from public agencies to enter injunctions. *See, e.g., Armstrong v. Newsom*, No. 94-cv-02307 CW, 2021 WL 933106, at *11, n.19 (N.D. Cal. Mar. 11, 2021) (relying in part on governmental entity "records, reports, statements, and data compilations" to order remedial measures to prevent ADA violations at five prison facilities).

[5] Filed herewith are eight additional declarations from incarcerated people establishing further evidence of substantial risk of serious harm. Multiple declarants have stated they want to join the case as plaintiffs.

[6] Dr. Montgomery's under-seal declarations respond selectively and incompletely to certain incarcerated person declarations. Dr. Montgomery is not the treatment provider for any of these patients and admits in every declaration that "I was not able to conduct a thorough review of the entire file." *See* Dkts. 151-1 through 151-23. They should be treated with little to no evidentiary weight.

[7] The three cases cited by Defendants finding no *Monell* liability are easily distinguishable: *Connick v. Thompson*, 563 U.S. 51. 62-63 (2011) (DA's office not liable for failure to train prosecutors based on four unrelated *Brady* violations); *Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011) (plaintiff alleged

### 4. Alleged "Changes" Do Not Moot Plaintiffs' Requested Relief

Defendants argue that Plaintiffs' request for injunctive relief is moot given "changes that have been in process for years" and have allegedly "begun to be implemented." Opp. at 6. However, the "voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012). Defendants carry a "heavy burden" of making it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

Far from meeting that burden, Defendants point only to their June 1, 2022 (effective date) contract for health care services with the Alabama-based NaphCare, Inc. as evidence of reforms.[8] But despite having "approximately two years" to negotiate "concurrent changes in policy" that "will be merged" into the Jail's policies and procedures, Defendants do not identify any new policies responsive to the long-standing problems identified in Plaintiffs' Motion. Montgomery Decl. ¶ 3; Opp. at 22. Plaintiffs' requested relief is not moot. *See Gluth v. Kangas*, 951 F.2d 1504, 1507 (9th Cir. 1991) (new policy did not moot claims given history of deprivations, "vagueness of the new policy," and fact that "the Department provided no *facts* to support its claim that the inmate access situation had changed at all").

### 5. Plaintiffs' Proposed Remedial Plans Are Appropriate

Plaintiffs' request that Defendants develop a plan to remedy constitutional

---

no facts demonstrating the constitutional deprivation was the result of a custom or practice); *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (no *Monell* liability for a private citizen). The other cases cited by Defendants actually illustrate why *Monell* liability *is* appropriate here. *See, e.g., Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (finding "no question that the decision not to take any action to alleviate the problem" warrants *Monell* liability).

[8] Deficient practices may likely be replicated and perpetuated with NaphCare. *See* Stewart Reply Decl. ¶¶ 40-41; *see also* Swearingen Reply Decl. ¶¶ 28-30.

and statutory violations is not, as Defendants contend, "overbroad, vague," and violative of "the specificity requirement of FRCP 65, the PLRA, and the law governing injunctions." Opp. at 8-9. The Ninth Circuit has held that injunctions that give defendants leeway to design and implement a remedial plan are consistent with applicable law. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010) ("Allowing defendants to develop policies and procedures … is precisely the type of process that the Supreme Court has indicated is appropriate for devising a suitable remedial plan in a prison litigation case."); *see also Hernandez v. Cnty. of Monterey* ("*Hernandez II*"), 110 F. Supp. 3d 929, 959-60 (N.D. Cal. 2015) (ordering defendants to draft jail remedial plans addressing at least 16 elements).

Defendants claim it would be "absurd" to require them "to draft remedial plans on 19 different topics within 30 days." Opp. at 9. But all of the requested elements of the plans have been on Defendants' radar for months if not years. And Defendants claim to be working on policy changes with NaphCare.[9] They should be able to complete plans within 30 days of a court order, which will occur in August at the earliest. To the extent that plans require additional funding or action by third parties, Defendants can specify in their plans a timeline for those aspects to occur.

**B.     Preliminary Injunctive Relief Is Necessary to Avoid Future Harms**

**1.     Intercom and Emergency Response Remedies**

Defendants do not dispute that people have suffered and even died after they were unable to summon help using intercoms. Mot. at 10; *see also* Christiansen Decl. ¶ 2 (no response to intercom calls when bunkmate died by drug overdose); Sepulveda Decl. ¶¶ 3-4 (no response to intercom calls regarding violent attacks); Ross Decl. ¶ 5 (no response to intercom calls regarding medical emergencies).

Defendants state that reforms were made on May 6, 2022 (after Plaintiffs filed their Motion), when they started requiring a twice daily check of the intercoms on

---

[9] NaphCare is a County "contractor" in the Proposed Order. Dkt. 119-3, Ex. A ¶ 9.

two floors at the Central jail. Opp. at 10-11. Defendants do not explain why this change has not been made on the other six floors at Central jail or at any other Jail facility. *See* LaCroix Decl. ¶¶ 2-7 (housed on 5th floor at Central); Christiansen Decl. ¶ 2 (housed at George Bailey). Defendants also point to a new procedure at Central jail prohibiting deputies from muting the system's volume, but confusingly state that deputies can nevertheless "temporarily disable calls from a particular cell." Opp. at 11. Again, these "changes" apply *only* at Central jail, and no new written policy has been presented. Defendants point to no other reforms, and their remedial actions are insufficient to ameliorate the risk of harm to people denied reliable ways to summon help during emergencies. Austin Reply Decl. ¶¶ 16-28.

### 2.  Video Surveillance Coverage and Functionality Remedies

Defendants present a host of underdeveloped objections about Plaintiffs' evidence of antiquated video surveillance equipment, broken cameras, and unmonitored spaces where people suffer harm. Opp. at 12-13. But Defendants do not present any rebuttal evidence. Notwithstanding Defendants' blanket and unsupported assertion that "repairs are always performed" (Mot. at 12),[10] they do not rebut the State Auditor's finding that a "key, recurring recommendation that the Sheriff's Department has not implemented for nearly a decade relates to updating equipment for monitoring the safety of incarcerated individuals." Mot. at 10-11. Nor do they argue that their video surveillance coverage adequately protects incarcerated people from risk of harm. Instead, Defendants' only planned change is to "upgrade" the camera system at Central jail sometime in 2023 or 2024. Opp. at 12. Defendants do not explain what the upgrade entails, why it is limited to one facility, or why they are waiting until next fiscal year to perform the upgrade. Austin Reply Decl. ¶¶ 29-33. This is too little, too late.

---

[10] Plaintiffs object to foundationless, hearsay statements suggesting that non-working intercoms and cameras are timely reported and addressed. *See* McArdle Decl. ¶ 7; O. Rodriguez Decl. ¶ 12. Neither declarant offers any concrete evidence such as maintenance logs; nor do they point to any policies concerning repairs.

Plaintiffs provided extensive evidence that insufficient surveillance coverage places vulnerable people at risk, as unmonitored spaces are used to fight without fear of deputy intervention. Mot. at 11; *see also* Moore Decl. ¶ 4. Defendants have no plan to ameliorate these risks; their response is continued indifference. *See* Opp. at 12 ("Not all locations are conducive to surveillance"); Austin Reply Decl. ¶ 30.

### 3.  Safety Check Remedies

Defendants do not rebut any of the evidence of inadequate safety checks from the State Auditor, CLERB, and DRC (Mot. at 7-8), and instead argue that "Plaintiffs do not provide any evidence based upon personal knowledge of any safety check issue that has allegedly caused them harm." Opp. at 14. Defendants ignore a former jail clinician's observations that safety checks "are not thorough" and that "many of the people whom the custody staff are supposed to check to ensure safety and well-being are in states of significant decompensation and distress." Alonso Decl. ¶¶ 62-63; *see also* Stewart Reply Decl. ¶¶ 31-34; Austin Reply Decl. ¶¶ 38-40.

Defendants offer no planned improvements, and instead argue that "there are other precautions taken to help keep inmates safe" like cameras and intercoms. Opp. at 15; *see also* Austin Reply Decl. ¶¶ 34-37. Defendants argue there can be no deliberate indifference because Title 15 of the California Code of Regulations requires safety checks every hour. Opp. at 14. "But that argument does not work. There is nothing inconsistent in complying with both the Constitution and Title 15, and Defendants have not suggested any manner in which complying with the former might violate the latter." *Hernandez II*, 110 F. Supp. 3d at 945–46; *see id.* at 959-60 (ordering jail to develop plans to ensure "safety checks of all [people] housed in segregation at least once every 30 minutes at irregular and unpredictable intervals").

### 4.  Drug Contraband Interdiction, MAT, and Narcan Remedies

**Body Scanners**. Defendants argue that "[a] full complement of precautionary measures are in place to prevent smuggling of illegal drugs into jails and Plaintiffs offer no evidence to suggest the measures do not work." Opp. at 2. Defendants

ignore the uncontroverted evidence that methamphetamine and fentanyl are widely available inside the Jail (*see, e.g.*, Cozart Decl. ¶ 3), and that overdoses (including mass overdoses) have resulted in deaths every 2-3 months and the highest overdose death rate among the state's most populous counties (*see* Mot. at 4). In fact, another overdose death occurred since Plaintiffs filed this Motion. Swearingen Reply Decl. ¶ 2. Defendants concede that "[t]he amount of fentanyl in the system has steadily grown" and that "drugs go undetected." Opp. at 20; *see also* Austin Reply Decl. ¶ 16. But Defendants nevertheless refuse to commit to *any* new remedial actions that would reduce the amount of drugs in the Jail, such as scanning all people—including staff and visitors—at entry or training staff to properly evaluate scan results. Mot. at 5; Austin Reply Decl. ¶¶ 16-21.

**Medication Assisted Treatment (MAT)**. Defendants concede that they currently provide methadone only for "exceptional cases, such as … pregnant women who were addicted to heroin who are at custody in Las Colinas," and that only 40 to 60 patients have been on MAT therapies since October 2020. Montgomery Decl. ¶ 11; Freedland Decl. ¶ 10; *see also* Lewis Decl. ¶ 5 (requests for MAT medication denied); Sepulveda Decl. ¶ 6 (same). Defendants appear to agree about the need for an expanded MAT program, claiming that "a full [MAT] protocol – combining medication with counseling and behavioral therapy – is being implemented within the next two weeks." Opp. at 18. However, the evidence cited in support of this claim shows otherwise. The Jail's Medical Director states that a full MAT protocol is "in development" but he is "not clear on the specific timeline." Montgomery Decl. ¶¶ 10-11. Defendant CHP's CEO states only that the company is "actively working with its partners" to develop a full-time MAT program. Freedland Decl. ¶ 10. Defendants' alleged MAT plan fails to address the role of Jail staff in the provision of MAT medication and therapy, the eligibility restrictions on participation, the scope of counseling and behavioral health therapies, and the implementation timeline—despite the fact that "the details of such a program are

critical to ensure its success." Cohen Reply Decl. ¶¶ 11-16, 21-22, 25.

While Defendants' new urinalysis protocol may assist with identifying people who are under the influence of illicit substances at the time of booking, they vastly overstate the usefulness of the process in addressing the high number of overdose deaths in the Jail. *See* Opp. at 18-19; Cohen Reply Decl. ¶¶ 19-23. Defendants claim Plaintiff Norwood's account "regarding his addiction and treatment is unreliable" (Opp. at 16); however, the evidence indisputably shows that: (1) he self-reported using Suboxone treatment for over ten years; (2) he asked for Suboxone before overdosing; (3) the Jail did not place him on any MAT medications before he overdosed; and (4) the Jail offered him MAT medication precisely one day *after* he overdosed. Dkts. 151-16, Ex. B at 5, 150-52; *see also* Cohen Reply Decl. ¶ 13.

**Narcan**. After Plaintiffs filed their Motion, CLERB recommended the Jail make naloxone "readily available to [Jail] inmates", and "educate inmates on … [the] correct technique for administration." Stewart Reply Decl. ¶ 36. The Jail's Medical Director confusingly states that the Sheriff's Department "is <u>taking active steps to consider</u> direct availability of Naloxone (Narcan) to patients in the housing units" and is "<u>taking definitive steps</u> toward putting Naloxone (Narcan) in the housing units, accessible directly to incarcerated persons." Montgomery Decl. ¶¶ 6, 12 (emphasis added). No written policy is offered, and it is not at all clear whether this change is being considered or implemented, and if the latter, when and how implementation will take place. Cohen Reply Decl. ¶ 17; Stewart Reply Decl. ¶ 37.

### 5. Mental Health Input and Confidentiality Remedies

Defendants do not address or rebut the substantial evidence from the former Jail Medical Director and a clinician establishing that custody staff regularly do not consider clinician input in housing decisions, and that mental health consultations are not confidential. Mot. at 12-16; Evans Decl. ¶¶ 13-33; Alonso Decl. ¶¶ 16-60.

**Clinician Input**. Plaintiffs have shown that allowing custody officers to place patients in <u>segregated housing</u> without clinicians' input places patients at

substantial risk of serious harm. Mot. at 12-13. Defendants' only response is a statement from the Jail's Mental Health Director stating "[i]n my experience, custody staff do take into account mental health clinicians' input and recommendations, though they sometimes disagree." Quiroz Decl. ¶ 6. Defendants submit no evidence substantiating this opinion, and the clear implication is that there is no policy for addressing such a disagreement; instead, as Plaintiffs have shown, "custody decides." Stewart Reply Decl. ¶¶ 9-12.

Defendants do not address in any way Plaintiffs' evidence that <u>exclusion of patients who are classified as protective custody ("PC") from OPSD housing</u> puts those patients at a substantial risk of harm. Mot. at 13-14; Stewart Reply Decl. ¶ 13; Lewis Decl. ¶ 6 (PC housing units are dangerous for people with mental illness).

In response to Plaintiffs' evidence of custodial interference with clinical judgment regarding <u>placement and conditions in the EOH unit</u> (Mot. at 14-15), Defendants point to a February 2019 safety policy program "update." Opp. at 21. But the unrebutted evidence of harm documented by Evans and Alonso, the several deaths that have followed a custodial-driven placement without or in contravention of clinical input, and the testimony of several patients about their recent experiences make clear that the 3.5-year old "update" did *not* remedy the fundamental deficiency of custody interference with clinical judgment, which continues to put patients at substantial risk of serious harm. Stewart Reply Decl. ¶¶ 14-16; *see also* Zoerner Reply Decl. ¶ 6 (describing harsh conditions in EOH cell).

**Confidential contacts**. Despite evidence that non-confidential mental health visits are routine, prevent delivery of adequate treatment, and place patients at risk of harm (*see* Mot. at 15-16; Stewart Reply Decl. ¶¶ 17-26; Zoerner Reply Decl. ¶ 8), Defendants throw up their hands and claim confidentiality is "impossible" for security reasons. Opp. at 21. They fail to consider the "numerous ways to provide confidential mental health treatment while addressing security risks," including making individualized determinations of security risks and utilizing settings that

address such risks (*e.g.*, non-contact booths). Stewart Reply Decl. ¶¶ 27-30.

### 6. Mobility Access Remedies

Defendants' do not meaningfully respond to evidence of ADA violations in the Jail. Mot. at 16-18. Defendants say nothing about their inadequate policies and procedures and concede ADA violations. *See* Sanossian Reply Decl. ¶¶ 5-17. Mr. Bennett, who is "not a CASp" but instead a Project Manager whose principal tasks include "asbestos[,] … lead[,] … security, epoxy, detention equipment …, audio and visual equipment, and liquid waste removal" (Bennett Decl. ¶¶ 1, 5), is not qualified to opine on the accessibility of Central jail. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589-95 (1993).[11] Nor do his claims of accessibility hold water. Sanossian Reply Decl. ¶¶ 6, 8-12. And his vague promises to come up with "solution[s]" to the lack of access to telephones and dayroom tables (Bennett Decl. ¶¶ 11-13) are insufficient to ensure meaningful change for incarcerated people with mobility disabilities. Sanossian Reply Decl. ¶ 8.[12]

Waiting for "the discovery process" as Defendants suggest (Opp. at 26) would cause continued irreparable harm. *See, e.g.*, Tucker Decl. ¶¶ 3-5, 7 (denied

---

[11] Defendants baldly assert that incarcerated people with mobility disabilities have not been required to take the stairs when the elevators are broken. But they rely on the foundationless, hearsay statements of Mr. Bennett and Captain Darnell, neither of whom could possibly have first-hand knowledge of all instances of elevator breakdowns. *See* Bennett Decl. ¶ 9; Darnell Decl. ¶ 4. Neither declarant offers any concrete evidence such as elevator maintenance logs; nor do they point to any policy permitting use of staff elevators when the "inmate elevators" are out of order. Defendants do not offer the statement of the officer who escorted Mr. Archuleta on March 9, 2022, one of the dates he was forced to use the stairs. Archuleta Decl. ¶ 12. And the potential renovation of "[o]ne elevator for incarcerated persons[]" (Opp. at 25) does not address the fear that they will nonetheless be forced to take the stairs when elevators are broken or provide a meaningful evacuation policy. Dr. Montgomery's vague claim that an "ADA coordinator uses the inmate's *Armstrong* documents" to provide "continuity of care" (*id.* at 26), even if true, would not suffice to meet the disability needs of incarcerated people with disabilities. Swearingen Reply Decl. ¶¶ 25-26.

[12] *Rodriguez v. County of San Diego*, No. 14cv949-JLS-RBB, 2016 WL 4515860 (S.D. Cal, Feb. 9, 2016) is inapposite: the plaintiff there failed to "show that … he is prevented from using and enjoying Park Services…" *Id.* at *10. Here, by contrast, Plaintiffs' declarants advance credible and unrebutted examples of denials of access causing irreparable harm. *See* Sanossian Reply Decl. ¶¶ 10, 12, 15-17.

medical equipment and accessible housing due to disability); Ross Decl. ¶ 4 (denied veterans unit placement and programs due to disability). Ms. Sanossian offers a number of solutions that can be promptly implemented, including housing incarcerated individuals with disabilities in the existing ADA-accessible cells; making improvements to dayroom tables and telephones, removing stools in front of desks in cells; purchasing sturdy shower chairs; improving Defendants' elevator repair contract; and creating a plan for transporting people in wheelchairs to programs when the elevators are not functioning or evacuating them in the event of emergency. Sanossian Decl. ¶¶ 61-70; Sanossian Reply Decl. ¶¶ 18-19. To be effective, these improvements should be monitored as indicated in Plaintiffs' Proposed Order, especially at Rock Mountain where Defendants plan to segregate people in wheelchairs. Sanossian Reply Decl. ¶ 11.

### C. The Balance of Hardships and Public Interest Favor Plaintiffs

Defendants advance no hardship or interest that would be affected by the requested injunction. *Cf. All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (preliminary injunction warranted where plaintiffs demonstrate "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor"). Absent an injunction, Plaintiffs will continue to suffer serious risks of harm and death[13] from Defendants' inadequate policies and procedures. Mot. at 29-30. Any costs incurred by Defendants cannot outweigh serious risk of harm to Plaintiffs. *Harris v. Bd. of Supervisors, L.A. Cnty.*, 366 F.3d 754, 766 (9th Cir. 2004). Defendants do not contest that the public interest is decidedly in Plaintiffs' favor. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's

---

[13] Defendants attempt to cast doubt on evidence of the extraordinarily high death rate at the Jail by challenging the State Auditor's methodology. *See* Hildreth Report (Dkt. 153-1, Ex. I). Mr. Hildreth's methodology does not comport with DOJ's Bureau of Justice Statistics methodology, and appears designed to make the death rate at the Jail appear less significant than it is. *See* Austin Reply Decl. ¶¶ 4-15.

constitutional rights."); *Hernandez II*, 110 F. Supp. 3d at 958 ("[T]he public's interest in enforcement of the ADA … is advanced by a preliminary injunction").

### D. The Court Should Waive Bond for Plaintiffs

The Court should exercise its discretion to waive bond. First, by protecting constitutional rights, issuance of the preliminary injunction would serve the public interest. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999). Second, Plaintiffs' likelihood of success "tips in favor of a minimal bond or no bond at all." *California ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). Third, where "suit is brought on behalf of poor persons, preliminary injunctive relief may be granted with no payment of security whatever." *Toussaint v. Rushen*, 553 F. Supp. 1365, 1383 (N.D. Cal. 1983), *aff'd in part*, 722 F.2d 1490 (9th Cir. 1984). It would be unjust to require people who are incarcerated and unable to earn income to post a bond as a condition of injunctive relief. *See, e.g.*, Webb Decl. ¶¶ 4-5; Archuleta Decl. ¶ 2.

## II. PROVISIONAL CLASS CERTIFICATION SHOULD BE GRANTED

Plaintiffs incorporate by reference their Reply to Liberty's Opposition, filed herewith, which shows that provisional class certification is entirely appropriate.

### CONCLUSION

Plaintiffs respectfully ask the Court to enter Plaintiffs' Proposed Order to effectuate real reform and to stem the tide of unnecessary deaths and suffering.

DATED: June 7, 2022                 Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Van Swearingen*
    Van Swearingen

Attorneys for Plaintiffs