1  GAY CROSTHWAIT GRUNFELD – 121944
   VAN SWEARINGEN – 259809
2  PRIYAH KAUL – 307956
   ERIC MONEK ANDERSON – 320934
3  HANNAH M. CHARTOFF – 324529
   ROSEN BIEN GALVAN & GRUNFELD LLP
4  101 Mission Street, Sixth Floor
   San Francisco, California 94105-1738
5  Telephone: (415) 433-6830
   Facsimile: (415) 433-7104
6  Email:    ggrunfeld@rbgg.com
             vswearingen@rbgg.com
7            pkaul@rbgg.com
             eanderson@rbgg.com
8            hchartoff@rbgg.com

9  AARON J. FISCHER – 247391
   LAW OFFICE OF
10 AARON J. FISCHER
   2001 Addison Street, Suite 300
11 Berkeley, California 94704-1165
   Telephone: (510) 806-7366
12 Facsimile: (510) 694-6314
   Email:    ajf@aaronfischerlaw.com

13 (*additional counsel on following page*)

14 Attorneys for Plaintiffs

15

16                UNITED STATES DISTRICT COURT

17                SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 18  DARRYL DUNSMORE, ERNEST ARCHULETA, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, CORRECTIONAL HEALTHCARE PARTNERS, INC., LIBERTY HEALTHCARE, INC., MID-AMERICA HEALTH, INC., LOGAN HAAK, M.D., INC., SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>                    Defendants. | Case No. 3:20-cv-00406-AJB-WVG<br><br>**REPLY TO DEFENDANT LIBERTY HEALTHCARE, CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION**<br><br>Judge: Hon. Anthony J. Battaglia<br><br>Date: August 11, 2022<br>Time: 2:00 p.m.<br>Ctrm.: 4A |

(*counsel continued from preceding page*)

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California 92101-4297
Telephone: (619) 699-2700
Facsimile: (619) 699-2701
Email: christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

BARDIS VAKILI – 247783
JONATHAN MARKOVITZ – 301767
ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
2760 Fifth Avenue, Suite 300
San Diego, California 92103-6330
Telephone: (619) 232-2121
Email: bvakili@aclu-sdic.org
jmarkovitz@aclu-sdic.org

Attorneys for Plaintiffs

[3925131.9]

Case No. 3:20-cv-00406-AJB-WVG

REPLY TO DEF. LIBERTY HEALTHCARE, CORPORATION'S OPPOSITION TO PLS.' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

I. PRELIMINARY INJUNCTIVE RELIEF AS TO LIBERTY IS PROPER ........................................................................................................... 2

II. PLAINTIFFS' PROPOSED PROVISIONAL CLASS MEETS THE STANDARDS OF RULE 23 ............................................................................. 3

    A. Federal Courts Routinely Certify Classes of Incarcerated People Like the One Plaintiffs Seek Here ......................................................... 3

    B. The Proposed Class and Subclass Are Properly Defined to Include Individuals Who Have Standing ............................................. 6

    C. The Proposed Class and Subclass Satisfy Commonality (Rule 23(a)(2)) ................................................................................................. 8

    D. The Proposed Class and Subclass Satisfy Typicality (Rule 23(a)(3)) ................................................................................................. 11

    E. The Proposed Class and Subclass Satisfy Adequacy (Rule 23(a)(4)) ................................................................................................. 12

    F. Plaintiffs Satisfy the Requirement of Rule 23(b)(2). ............................ 13

    G. The Court Need Not Consider Rule 23(b)(3). ..................................... 13

CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adashunas v. Negley*,
    626 F.2d 600 (7th Cir. 1980)..................................................................8

*Ahlman v. Barnes*,
    445 F. Supp. 3d 671 (C.D. Cal. 2020)...................................................13

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001).........................................................5, 6, 7, 11

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007)......................................................................6

*Baxter v. Rodale, Inc.*,
    No. CV 12-00585, 2012 WL 1267880 (C.D. Cal. Apr. 12, 2012)...................7

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017)...............................................................8, 14

*Damus v. Nielsen*,
    313 F. Supp. 3d 317 (D.D.C. 2018) ..........................................................6

*Elliot v. Weinberger*,
    564 F.2d 1219 (9th Cir. 1977), *aff'd in pertinent part and rev'd in part
    sub nom. Califano v. Yamasaki*, 442 U.S. 682 (1979) ....................................14

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011)....................................................................10

*Hernandez v. Cty. of Monterey*,
    305 F.R.D. 132 (N.D. Cal. 2015) .......................................................4, 7, 9, 14

*Hodgers-Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999)..................................................................12

*Johnston v. HBO Film Mgmt., Inc*,
    265 F.3d 178 (3d Cir. 2001).....................................................................10

*Lewis v. Casey*,
    518 U.S. 343 (1996) ..................................................................................6

*M.D. ex rel. Stukenberg v. Perry*,
    675 F.3d 832 (5th Cir. 2012)....................................................................10

*Mazur v. eBay Inc.*,
    257 F.R.D. 563 (N.D. Cal. 2009) ...............................................................7

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012)......................................................................7

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
 31 F.4th 651 (9th Cir. 2022) .................................................................................. 7

*Owen v. Regence Bluecross Blueshield of Utah*,
 388 F. Supp. 2d 1318 (D. Utah 2005) ................................................................... 7

*Parsons v. Ryan*,
 754 F.3d 657 (9th Cir. 2014) ........................................................................ passim

*Rodriguez v. Hayes*,
 591 F.3d 1105 (9th Cir. 2009) ............................................................................... 7

*Sanders v. Apple Inc.*,
 672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................. 7

*Simon v. E. Kentucky Welfare Rts. Org.*,
 426 U.S. 26 (1976) ......................................................................................... 12, 13

*Torres v. Mercer Canyons, Inc.*,
 835 F.3d 1125 (9th Cir. 2016) ............................................................................... 8

*Valentino v. Carter-Wallace, Inc.*,
 97 F.3d 1227 (9th Cir. 1996) ............................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ............................................................................... passim

*Warth v. Seldin*,
 422 U.S. 490 (1975) .............................................................................................. 6

*Wiener v. Dannon Co.*,
 255 F.R.D. 658 (C.D. Cal. 2009) ........................................................................ 12

*Xavier v. Philip Morris USA Inc.*,
 787 F. Supp. 2d 1075 (N.D. Cal. 2011) .............................................................. 14

**RULES**

Fed. R. Civ. P. 23 .................................................................................... passim

Defendant Liberty Healthcare, Corporation ("Liberty"), the County's mental health provider, filed an Opposition to Plaintiffs' Motions for Preliminary Injunction and Provisional Class Certification, arguing both that injunctive relief is improper as to Liberty and that Plaintiffs have failed to satisfy the requirements for provisional class certification. Dkt. 149 ("Liberty Opp."). Liberty's Opposition also "reasserts authorities and arguments described in the County's Opposition." Liberty Opp. at 3. Given the overlap in and cross-reference of arguments pertaining to provisional class certification in both Liberty's Opposition and the County and Correctional Healthcare Partners, Inc.'s Opposition (Dkt. 153, "County Opp."), Plaintiffs address provisional class certification issues in this Reply brief with respect to both sets of Defendants' Oppositions.

**INTRODUCTION**

Defendants' Oppositions to provisional class certification are exercises in willful misdirection. Defendants largely rely on consumer class action and Rule 23(b)(3) damages cases to argue that the specific circumstances, witnesses, evidence, and injuries associated with each individual Plaintiff's past experiences make class certification inappropriate here. But in this Rule 23(b)(2) action by incarcerated people for the vindication of their constitutional and statutory rights, the proper inquiry is not the degree to which past injuries are similar. Rather, it is whether members of the putative class are *exposed to the same policies and practices* that place them at a substantial risk of serious future harm. The controlling case in the Ninth Circuit is *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014), where the court certified a class nearly identical to the one at issue here. Yet, Defendants fail even to discuss—let alone distinguish—this binding authority. Instead, Defendants focus only on individual Plaintiffs' past treatment, and ignore the fact that their policies and procedures apply generally to the putative class.

What matters, and what Plaintiffs have overwhelmingly demonstrated through extensive evidence from state and county oversight agencies, corrections experts,

the Jail's former Medical Director and Chief Psychiatrist, a jail mental health clinician, and over 30 declarations from incarcerated people—as well as admissions from Defendants themselves—is that the unconstitutionality and unlawfulness of Defendants' policies and practices (to which all prisoners incarcerated in the Jail are subjected) *can* be determined in "one stroke." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Every time a person is booked into the Jail, the risk of harm is real and omnipresent. Since Plaintiffs filed their motion for preliminary injunction and provisional class certification five weeks ago, thousands of people have been subjected to the same risk of being harmed by Defendants' unconstitutional and unlawful policies and practices. Two have died. Plaintiffs have satisfied every requirement of Rule 23, and provisional class certification should be granted.

## I. PRELIMINARY INJUNCTIVE RELIEF AS TO LIBERTY IS PROPER

As a threshold matter, Liberty claims that it should be exempt from any injunctive relief ordered by this Court. Liberty states that it was informed on May 17, 2022 that the County would be terminating its contract with Liberty effective May 31, 2022, after which Liberty would no longer be the mental health service provider for the Jail. Liberty Opp. at 2. Although Liberty filed its opposition brief after the date of termination, Liberty presents no evidence that its staff are no longer on-site at or providing services for the Jail in any capacity. There may, for example, be a transition period through which Liberty continues to have a role in the provision of mental health services at the Jail. Absent evidence that Liberty is no longer involved in any way with providing mental health services at the Jail, it is properly subject to a Court order granting preliminary injunctive relief.

Liberty also argues that Plaintiffs' request for preliminary injunctive relief should be denied because Plaintiffs cannot demonstrate deliberate indifference.[1]

---

[1] Liberty "realleges and reasserts authorities and arguments described in the

Liberty Opp. at 3-4.  Neither reason offered by Liberty is persuasive.  First, Liberty cherry-picks and misconstrues two sentences from the declarations of former Jail mental health providers submitted in support of Plaintiffs' Motions, and based on these sentences, concludes that Jail staff "consider the input of mental health clinicians, weigh the risks of serious harm, and make determinations concerning the best location to house the [incarcerated person] for his or her safety." *Id.*  There is no evidence in the record to support this assertion.  To the contrary, the Declarations of Christine Evans and Jennifer Alonso paint a harrowing picture of systemic deficiencies in the provision of mental health services in the Jail. *See* Dkt. Nos. 119-10, 119-11.  Second, Liberty claims that Plaintiffs have "presented no authority finding a direct link between lack of confidential contacts with mental health clinicians and serious harm."  Liberty Opp. at 4.  The deliberate indifference standard, however, only requires a showing that Defendants consciously disregarded a substantial risk of serious harm—not necessarily harm itself—to Plaintiffs and members of the Proposed Class and Subclass.  *Parsons*, 754 F.3d at 677-78.  The evidence submitted in support of Plaintiffs' Motion, including the State Audit Report, the report of suicide prevention expert Lindsay Hayes, and the Declarations of Evans, Alonso, and Pablo Stewart, *see* Dkt. Nos. 119-03, 119-07, 119-10, 119-11, establish a causal link between lack of confidentiality during mental health contacts and a substantial risk of harm posed to the mental health of incarcerated people.

**II.    PLAINTIFFS' PROPOSED PROVISIONAL CLASS MEETS THE STANDARDS OF RULE 23**

   **A.    Federal Courts Routinely Certify Classes of Incarcerated People Like the One Plaintiffs Seek Here**

Class actions challenging "policies and practices of [facility-wide] and systemic application" that "expose all inmates in [an institution's] custody to a

---

County's opposition" as to deliberate indifference.  Liberty Opp. at 3.  For the reasons set forth in Plaintiffs' Reply to the County and CHP's Opposition ("Reply to County Opp."), filed herewith, those arguments fail.

substantial risk of serious harm" are "firmly established in our constitutional law." *Parsons*, 754 F.3d at 676. The Ninth Circuit and district courts in California have therefore repeatedly certified classes of incarcerated individuals seeking injunctive relief to remedy corrections officials' unconstitutional and unlawful policies and practices. *See, e.g.*, *id.*; *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 163 (N.D. Cal. 2015) (certifying class and subclass defined as: "all adult men and women who are now, or will be in the future, incarcerated in Monterey County Jail" and "all qualified individuals with a disability … and who are now, or will be in the future, incarcerated in Monterey County Jail").[2]

---

[2] *See also Babu v. Alameda County*, Case No. 5:18-cv-007677 (N.D. Cal.) (ECF 266-1) (stipulated class defined as "all adults who are now, or in the future will be, incarcerated in the **Alameda County Jail**," and subclass defined as "all qualified individuals with a psychiatric disability … who are now, or will be in the future, incarcerated in the Alameda County Jail"); *Young v. County of Contra Costa*, Case No. 5:20-cv-06848 (ECF 7) (unopposed class defined as "[a]ll individuals who are now, or in the future will be, detained in a **Contra Costa County Jail**," and subclass as "[a]ll individuals who are now, or in the future will be, detained in a Contra Costa County Jail and who have a qualified disability under the ADA and Section 504"); *Hall v. County of Fresno*, Case No. 1:11-cv-02047 (E.D. Cal.) (ECF 112-1) (stipulated class defined as "[a]ll prisoners who are now, or at some in the future during the terms of this Consent Decree are, incarcerated in the **Fresno County Jail**"); *Johnson v. County of Los Angeles*, Case No. CV 08-03515 (C.D. Cal.) (ECF 222-1) (class defined as "all present and future **detainees and inmates** with mobility impairments who, because of their disabilities, need appropriate accommodations, modifications, services, and/or physical access in accordance with federal and state disabilities laws"); *Rosas v. Baca*, Case No. CV 12-00428 (C.D. Cal.) (ECF 130-1) (class defined as "[a]ll present and future inmates confined in **the Jail Complex in downtown Los Angeles**"); *Mays v. County of Sacramento*, Case No. 2:18-cv-02081 (E.D. Cal.) (ECF 85-1) (stipulated class defined as "[a]ll people who are now, or in the future will be, incarcerated in the **Sacramento County Jails**," and subclass defined as "[a]ll qualified individuals with disabilities … who are now, or will be in the future, incarcerated in the Sacramento County Jails"); *Turner v. County of San Bernardino*, Case No. 5:16-cv-00355 (C.D. Cal.) (ECF 106) (stipulated class defined as "all people who are now, or in the future will be, incarcerated in the **San Bernardino County jails**," and subclass defined as "all people who are now, or in the future will be, incarcerated in the San Bernardino County jails and who have a psychiatric and/or intellectual disability, as defined under …"); *Murray v. County of Santa Barbara*, Case No. 2:17-cv-08805 (C.D. Cal.) (ECF 35, 75-1) (unopposed class defined as "all people who are now, or in the future will be, incarcerated in the **Santa Barbara County Jail** system," and subclass defined as "all people who are now, or in the future will be, incarcerated in the Santa Barbara County Jail system and who are qualified individuals with disabilities, as that term is defined …"; *Chavez v. County of Santa Clara*, Case No. 1:15-cv-05527 (N.D. Cal.) (ECF 74, 77) (stipulated class defined as "all people who

For example, similar to Plaintiffs' SAC in this case, the *Parsons* complaint identified "a number of statewide, uniform [] policies and practices"—such as "'dangerous delays in receiving' care and 'outright denials of health care,'" "failure to provide timely access to medically necessary specialty care," and "provisions of substandard mental health care"—and alleged "that these policies and practices expose all members of the proposed class and subclass to a substantial risk of serious harm." 754 F.3d at 663-68. In support of their class certification motion, the *Parsons* plaintiffs—like Plaintiffs in this case—filed expert reports and declarations of incarcerated people "as evidence of the defendants' unlawful policies and practices, and as examples of the serious harm to which all inmates in ADC custody are allegedly exposed." *Id.* at 672. The Ninth Circuit affirmed certification of a class consisting of "all prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC [Arizona Department of Corrections]." 754 F.3d at 678. In *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001), disabled individuals and parolees brought a class action against prison officials alleging that policies and practices for parole and parole revocation proceedings violated the ADA and Rehabilitation Act. The Ninth Circuit affirmed certification of class of "all present and future California state prisoners and parolees with mobility, sight, hearing, learning, developmental and kidney disabilities that substantially limit one or more of their major life activities." *Id.* at 856-57.

*Parsons* and *Armstrong* squarely govern this case and confirm that provisional class certification is appropriate. Indeed, both *Parsons* and *Armstrong* concern full class certification, whereas provisional class certification, as Plaintiffs request, will apply only for purposes of the preliminary injunction, and as such

---

are now, or in the future will be, incarcerated in the **Santa Clara County jails**," and subclass defined as "all people who are now, or in the future will be, incarcerated in the Santa Clara County jails and who have a psychiatric and/or intellectual disability, as defined under …").

"may be altered or amended before the decision on the merits." *Damus v. Nielsen*, 313 F. Supp. 3d 317, 329 (D.D.C. 2018). Defendants do not even mention that binding authority in either Opposition brief. Instead, the Oppositions largely repeat arguments regarding lack of commonality, typicality, and adequacy that the Ninth Circuit already rejected in *Parsons* and raise irrelevant arguments about predominance under Rule 23(b)(3).[3] This Court should similarly reject Defendants' arguments and provisionally certify the Proposed Class and Subclass.

### B. The Proposed Class and Subclass Are Properly Defined to Include Individuals Who Have Standing

Defendants claim that Plaintiffs' class and subclass include some people who have not been harmed and lack standing, and thus the definitions are overbroad. County Opp. at 28-29. The Ninth Circuit has clearly held, however, that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc) (citing *Armstrong*, 275 F.3d at 860); *see also Warth v. Seldin*, 422 U.S. 490, 502 (1975); *Lewis v. Casey*, 518 U.S. 343, 395 (1996) (Souter, J., concurring). As explained in Plaintiffs' Reply to the County's and CHP's Opposition, filed herewith, named Plaintiffs remain in Jail and even those who do not are likely to return; all have standing, as do the declarants who seek to serve as plaintiffs. Reply to County Opp. at 2-4. Moreover, as explained more fully in Part II.C *infra*, the injury suffered by *all* Plaintiffs in a case such as this is their exposure to a "policy or practice that creates a substantial risk of serious harm." *Parsons*, 754 F.3d at 678.

Defendants' argument that a class definition can never include "persons who have not yet been aggrieved," *i.e.*, people who will be incarcerated in the Jail in the future, wrongly relies on a district court decision that runs contrary to Ninth Circuit precedent. *Compare* County Opp. at 29, 31 (arguing that "Someone that *might* be

---

[3] Defendants do not dispute that the proposed class is sufficiently numerous. *See* Fed. R. Civ. P. 23(a)(1).

incarcerated has no standing") *with Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2009), *as amended* (9th Cir. 2010) ("[T]he inclusion of future class members in a class is not itself unusual or objectionable."). Courts routinely certify injunctive classes containing future class members. *See, e.g.*, *Parsons*, 754 F.3d at 672, 676; *Armstrong*, 275 F.3d at 856-57; *Hernandez*, 305 F.R.D. at 164.

None of the cases relied upon by Defendants undermine this well-established precedent and its application to this case. The only Ninth Circuit decision they cite in support of their standing argument is *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012). However, the Ninth Circuit expressly "overrule[d] the statement in *Mazza* that 'no class may be certified that contains members lacking Article III standing,' which does not apply when a court is certifying a class seeking injunctive or other equitable relief." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022). Defendants' other cases are inapposite, as most are consumer actions and all involve claims for damages under Rule 23(b)(3). *See Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (damages case in which state law precluded some putative class members from bringing claims); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (damages case in which class definition included people who did not purchase product); *Baxter v. Rodale, Inc.*, No. 12-00585, 2012 WL 1267880, at *2 (C.D. Cal. Apr. 12, 2012) (consumer damages case); *Owen v. Regence Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1318, 1334 (D. Utah 2005) (ERISA damages case).[4]

Finally, Defendants' challenge to the Proposed Class and Subclass on the ground of ascertainability, *see* County Opp. at 29 ("[A]n ascertainable class is essential …."), is unavailing. The Ninth Circuit has not adopted a standalone ascertainability requirement, but instead has "addressed the types of alleged definitional deficiencies other courts have referred to as 'ascertainability' issues …

---

[4] In addition, the Court in *Owen* did not actually resolve the issue of class certification, but rather invited more briefing on it. 388 F. Supp. 2d at 1334.

through analysis of Rule 23's enumerated requirements." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017).[5]  In particular, the Court has explained that overbreadth challenges to class definition on the basis that some class members may not have been injured is appropriately analyzed "as a Rule 23(b)(3) predominance issue." *Id.* (citing *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1136-39 (9th Cir. 2016)).  As explained in Parts II.F and II.G *infra*, Rule 23(b)(2) is satisfied, and therefore Rule 23(b)(3) predominance is irrelevant.

### C. The Proposed Class and Subclass Satisfy Commonality (Rule 23(a)(2))

The Ninth Circuit has explained that the commonality requirement is satisfied where, as here, "all members of the putative class and subclass have in common … alleged exposure, as a result of specified statewide … policies and practices that govern the overall conditions of health care services and confinement, to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent." *Parsons*, 754 F.3d at 678.

In *Parsons*, defendants argued that "a systemic constitutional violation" of the kind alleged against ADC "'is a collection of individual constitutional violations,' each of which hinges on 'the particular facts and circumstances of each case,'" and therefore such a claim failed the commonality test articulated in *Wal-Mart*. 754 F.3d at 675 (quoting defendants' briefing).  The Ninth Circuit rejected that argument, explaining that defendants had "fundamental[ly] misunderst[ood] … *Wal-Mart*, Eighth Amendment doctrine, and the plaintiffs' constitutional claims." *Id.* at 676.  That "a presently existing risk may ultimately result in different future harm for different inmates" is not material to the issue of commonality in a "systemic,

---

[5] Defendants' citation to a forty-year-old, out-of-circuit case, *Adashunas v. Negley*, 626 F.2d 600 (7th Cir. 1980), does not justify ignoring Ninth Circuit law.  Contrary to the Ninth Circuit's instruction that the only prerequisites to class certification are those enumerated in Rule 23, the Seventh Circuit's analysis in *Adashunas* is not grounded in the text of Rule 23, but instead relies on ascertainability and numerosity, the latter of which Defendants here do not challenge  *Id.* at 603-04.

future-oriented Eighth Amendment claim." *Id.* at 677-78.  "[E]very inmate suffers exactly the same constitutional injury when he is exposed to a single … policy or practice that creates a substantial risk of serious harm." *Id.* at 678.

In challenging the Proposed Class and Subclass under Rule 23(a)(2), Defendants repeat the very argument that the Ninth Circuit already rejected in *Parsons*—that the individual experiences of potential class members show a lack of commonality.  County Opp. at 30-31 ("proof of deliberate indifference" is "highly individualized," "[e]ach of the named Plaintiffs suffers from a specific illness or disability"); Liberty Opp. at 5-7 (describing need to "evaluate each particular interaction between Plaintiffs and Defendants").[6]

As in *Parsons* and *Armstrong*, here Plaintiffs allege constitutional and statutory violations based on Jail-wide policies and practices that expose all members of the Proposed Class and Subclass to the same risk of serious and irreparable harm and/or discrimination on the basis of disability.  *See, e.g.*, Mot. at 1-2.  The declarations submitted by Plaintiffs and other putative class members are examples of specific harms certain individuals suffered by virtue of being exposed to the Jail's policies and procedures.  *Cf. Hernandez*, 305 F.R.D. 148 ("Plaintiffs did not submit these declarations in support of individual constitutional and statutory claims, which they do not bring, but instead offer these declarations as evidence of the defendants' unlawful policies and practices, and as examples of the serious harm to which all inmates in jail custody are allegedly exposed.").

Plaintiffs and the putative class members may have different medical conditions, mental health conditions, or disabilities, and the specific details of the harm they suffered may not be identical, but the risks they face by virtue of being

---

[6] Liberty also challenges the inclusion of the term "qualified" in the Proposed Subclass definition, without further explanation or argument.  Liberty Opp. at 6.  As described in note 2 *supra*, multiple district courts in California have certified subclasses of incarcerated people with disabilities using the same language.  *See, e.g.*, *Hernandez v. Cty. of Monterey*, 305 F.R.D. at 164; *Mays v. County of Sacramento*, Case No. 2:18-cv-02081 (E.D. Cal.) (ECF 85-1).

subjected to the Jail's policies and practices consistently place them at risk of harm. Plaintiffs are not seeking damages or even individual injunctive relief; instead, they seek changes to Defendants' unlawful and systemic policies and procedures. *See Parsons*, 754 F.3d at 679 (a decision on the merits would "not require [the Court] to determine the effect of [the Jail's] policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination"). The cases cited by Defendants—none of which post-date *Parsons* or address prison or jail conditions—are not to the contrary. *See* County Opp. at 30. Plaintiffs in those cases did not identify a policy or practice to challenge, but instead challenged the exercise of defendants' employees' discretion. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 & n.7 (9th Cir. 2011) (employment discrimination); *Johnston v. HBO Film Mgmt., Inc*, 265 F.3d 178, 190 (3d Cir. 2001) (securities fraud). As the Supreme Court explained in *Wal-Mart*, a "'policy' of *allowing discretion* by local supervisors" "is just the opposite of a uniform employment practice …; it is a policy *against having* uniform employment practices." 564 U.S. at 355. In this case, however, Defendants do not dispute that Plaintiffs have identified specific policies and practices of the County and its contractors. Rather, they argue that Plaintiffs suffered different and unique harms from those policies and practices—as explained, this does not defeat commonality.

Nor does *M.D. ex rel. Stukenberg v. Perry*, regarding the Texas foster care system, save Defendants' argument. County Opp. at 30 (citing 675 F.3d 832 (5th Cir. 2012)). In *M.D.*, the Fifth Circuit concluded that the district court did not sufficiently analyze underlying causes of action before certifying the class and remanded so that the district court could "analyze the elements and defenses and requisite proof for each of the proposed class claims." 675 F.3d at 843. Here, the Ninth Circuit has already analyzed the elements, defenses, and requisite proof for a systemic Eighth Amendment claim in *Parsons*, and determined that no such individualized analysis is necessary. *See* 754 F.3d at 676-80; *see also Armstrong*,

275 F.3d 849 ("the differences that exist here do not justify requiring groups of persons with different disabilities, all of whom suffer similar harm from the Board's failure to accommodate their disabilities, to prosecute separate actions").

Finally, Defendants also conflate the standards for commonality and predominance. County Opp. at 30. "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question will do,'" whereas Rule 23(b)(3) demands a higher showing that "common questions *predominate*." *Wal-Mart*, 564 U.S. at 359 (alterations in original). As explained below, Plaintiffs need not meet the Rule 23(b)(3) predominance requirement because Rule 23(b)(2) is satisfied.

### D. The Proposed Class and Subclass Satisfy Typicality (Rule 23(a)(3))

Defendants' challenge to the Proposed Class and Subclass's typicality is effectively the same as their challenge to commonality: individual plaintiffs' circumstances vary and thus the claims allegedly cannot be typical. County Opp. at 32 ("circumstances and claimed harm vary as to each person"); Liberty Opp. at 7-9 (citing specific details of Plaintiffs' experiences). That argument fails for the reasons explained above. The question of typicality "refers to the nature of the claim or defense of the class representative, and *not to the specific facts from which it arose* or the relief sought." *Parsons*, 754 F.3d at 685 (emphasis added) (internal quotation marks omitted). As the Ninth Circuit explained in *Parsons*, "given that *every* inmate in ADC custody is highly likely to require medical, mental health, and dental care, each of the named plaintiffs is similarly positioned to all other ADC inmates with respect to a substantial risk of serious harm resulting from exposure to defendants' policies and practices governing health care." 754 F.3d at 686. This reasoning extends to the issues raised in Plaintiffs' Motions—Plaintiffs have shown that every incarcerated person is put at risk by Defendants' systemic deficiencies in in safety and security, overdose prevention, mental health care, and disability accommodations. Mot. at 2-16.

Similarly, Defendants' argument that Plaintiffs have failed to establish

typicality because the proposed class representatives merely "assert in a conclusory fashion" that "their claims are typical," County Opp. at 32, is—again—squarely foreclosed by *Parsons*. In *Parsons*, the Ninth Circuit found the typicality requirement satisfied because the named plaintiffs were "inmates in ADC custody" and "each declare[d] that he or she [was] being exposed, like all other members of the putative class, to a substantial risk of serious harm by the challenged … policies and practices." 754 F.3d at 685. Plaintiffs here are similarly exposed to a substantial risk of serious harm and lack of disability accommodation. Mot. at 2-16. No more is required, and the case law cited by Defendants is again inapposite. *See* County Opp. at 32 (citing *Wiener v. Dannon Co.*, 255 F.R.D. 658, 665 (C.D. Cal. 2009) (consumer plaintiff's claim not typical because she did not purchase product); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999) (not reaching question of class certification).[7]

### E. The Proposed Class and Subclass Satisfy Adequacy (Rule 23(a)(4))

Defendants' primary challenge to Plaintiffs' adequacy to represent a class is based on a purported lack of standing. County Opp. at 32. For the reasons explained in Part II.B *supra*, as well as in the Reply to the County Opposition at pp. 2-4, filed herewith, Plaintiffs have standing to seek preliminary injunctive relief such that this Court should grant provisional class certification.[8] Defendants' case law is not to the contrary. *Id.* (citing *Simon v. E. Kentucky Welfare Rts. Org.,* 426

---

[7] Liberty's suggestion that Plaintiff Ernest Archuleta was not discriminated against on the basis of his disability, but was only denied access to an elevator in "retaliation for being a named plaintiff" (Liberty Opp. at 9) is both inapposite to the issue of typicality and ignores that Mr. Archuleta's declaration which includes multiple instances of discrimination, including another instance of being denied access to the elevator. *See, e.g.*, Dkt. 119-21 at ¶¶ 13 (denial of wheelchair), 14 (denial of elevator). Moreover, the ADA prohibits retaliation for or interference with asserting an individual's rights under the Act. *See Armstrong v. Newsom*, 475 F. Supp. 3d 1038, 1058-59 (N.D. Cal. 2020).

[8] Plaintiffs herewith submit additional declarations from three individuals currently incarcerated at the Jail addressing issues raised in Plaintiffs' Motions and stating their willingness to join the case as named Plaintiffs.

U.S. 26, 40-41 (1976) (organizational plaintiffs failed to allege harm to themselves; and individual plaintiffs failed to allege even "some threatened or actual injury" resulting from defendant's actions)). Plaintiffs here are all individuals who have been exposed to a risk of harm due to Defendants' policies and procedures.[9]

### F. Plaintiffs Satisfy the Requirement of Rule 23(b)(2).

The County and CHP do not dispute that Plaintiffs have satisfied the requirement of Rule 23(b)(2) (injunctive relief "is appropriate respecting the class as a whole" because defendants have "acted or refused to act on grounds that apply generally to the class"), *see* County Opp. at 32, and Liberty does not raise a meaningful challenge to its application in this case. Without citation to any on-point case law,[10] Liberty argues that because some "changes to policy affect one plaintiff and not another, Plaintiffs are attempting to divide the nature of the injunctive relief." Liberty Opp. at 11-12. Liberty's cryptic argument cannot be squared with *Parsons*, where the Ninth Circuit affirmed a Rule 23(b)(2) class challenging at least 10 different systemwide policies and practices. *See* 754 F.3d at 664, 687-89.

### G. The Court Need Not Consider Rule 23(b)(3).

In this Motion for provisional certification to obtain injunctive relief, Plaintiffs must show only that "one of the three requirements listed in Rule 23(b)" is satisfied. *Wal-Mart*, 564 U.S. at 345; *see also Ahlman v. Barnes*, 445 F. Supp. 3d 671, 687 n.9 (C.D. Cal. 2020). As explained above, Defendants do not meaningfully dispute that Rule 23(b)(2) is satisfied. So, it is irrelevant whether the predominance, manageability, or superiority requirements of Rule 23(b)(3) are met. County Defendants' argument that the Proposed Class and Subclass are unmanageable is particularly misplaced. "By its terms, Rule 23 makes

---

[9] Liberty explicitly reasserts its typicality argument as an adequacy argument, Liberty Opp. at 10-11, and it fails for the reasons explained in Part II.D *supra*.

[10] *Wal-Mart*, the only case Liberty cites, is inapposite, as that case merely held that a claim for backpay, *i.e.*, money damages, could not be certified under Rule 23(b)(2). 564 U.S. at 360-61.

manageability an issue important only in determining the propriety of certifying an action as a (b)(3), not a (b)(2) class action." *Elliot v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977), *aff'd in pertinent part and rev'd in part sub nom. Califano v. Yamasaki*, 442 U.S. 682 (1979). Indeed, the very case Defendants rely on to assert a manageability requirement, *Briseno*, 844 F.3d at 1126, makes clear that manageability is a requirement of Rule 23(b)(3). *See* County Opp. at 32-33. Critically, the Court in *Briseno* refused to adopt any prerequisites to class certification—such as an "administrative feasibility" requirement—outside of the statutory language of Rule 23(b)(3). 844 F.3d at 1126. Defendants' citation to *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1230 (9th Cir. 1996), is similarly unavailing, as that is also a Rule 23(b)(3) case in which the plaintiffs failed to meet the statutory predominance and superiority requirements.[11]

Defendants' argument about difficulties providing notice to class members is similarly irrelevant, and their questions supposedly making the Proposed Class and Subclass unmanageable are red herrings. *See* County Opp. at 33. Again, Defendants fail to acknowledge that Plaintiffs are seeking class certification under Rule 23(b)(2). Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action." *Wal-Mart*, 564 U.S. at 362; *see also Hernandez*, 305 F.R.D. at 152 ("[A]s a general matter, less precision is required of class definitions under Rule 23(b)(2)

---

[11] While the district court decision in *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075 (N.D. Cal. 2011), cited by Defendants, rejects both a Rule 23(b)(2) class and Rule 23(b)(3) class on grounds of ascertainability, *Xavier* cannot save Defendants' attack on the Proposed Class and Subclass. The Ninth Circuit's explicit rejection of an ascertainability or administrative feasibility requirement, as described in *Briseno* above, casts doubt on the district court's reasoning. In addition, the *Xavier* plaintiffs asserted a far more complicated class definition, which required identifying smokers with a history of "twenty pack-years … of using Marlboro cigarettes," with the term "pack-year" further mathematically defined in the complaint. *See id.* at 1088-91. The district court noted that declarations from plaintiffs involving such estimates posed unreliability problems, in a way that more straightforward binary statements, *e.g.*, "I have been to Paris, France," would not. *Id.* at 1090. Such broad ranging estimates would not be required here, where the question for class members is only "are you incarcerated at the Jail?"

than under Rule 23(b)(3), where mandatory notice is required by due process.").

More broadly, individualized inquiries to determine class membership or even a remedy are not necessary in this case, because the Motion for Preliminary Injunction seeks changes to the Jail's policies and procedures affecting the Class and Subclass as a whole. Rather than a case asking for one person to be provided a wheelchair or one person to have access to confidential mental health visits, this Motion seeks to remedy deficiencies in Defendants' system in nineteen discrete areas. *See* Proposed Order, Dkt. 119-03, Ex. A. As the Ninth Circuit has explained, "claims of this kind, involving detailed factual and legal allegations of specified systemic deficiencies in prison conditions giving rise to a substantial risk of serious harm, have long been brought in the form of class action lawsuits. In fact, without such a means of challenging unconstitutional prison conditions, it is unlikely that a [government's] maintenance of prison conditions that violate [the Constitution] could ever be corrected by legal action." *Parsons*, 754 F.3d at 680.

## CONCLUSION

For all the foregoing reasons, Plaintiffs meet the requirements of Rule 23(a) and (b), and their request for provisional class certification should be granted.

DATED: June 7, 2022　　　　　　Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Van Swearingen*
　　　Van Swearingen

Attorneys for Plaintiffs