1  GAY CROSTHWAIT GRUNFELD – 121944
   VAN SWEARINGEN – 259809
2  PRIYAH KAUL – 307956
   ERIC MONEK ANDERSON – 320934
3  HANNAH M. CHARTOFF – 324529
   ROSEN BIEN GALVAN & GRUNFELD LLP
4  101 Mission Street, Sixth Floor
   San Francisco, California  94105-1738
5  Telephone:  (415) 433-6830
   Facsimile:  (415) 433-7104
6  Email:       ggrunfeld@rbgg.com
                vswearingen@rbgg.com
7               pkaul@rbgg.com
                eanderson@rbgg.com
8               hchartoff@rbgg.com

9  AARON J. FISCHER – 247391
   LAW OFFICE OF
10 AARON J. FISCHER
   2001 Addison Street, Suite 300
11 Berkeley, California  94704-1165
   Telephone:  (510) 806-7366
12 Facsimile:  (510) 694-6314
   Email:       ajf@aaronfischerlaw.com

13 (*additional counsel on following page*)

14 Attorneys for Plaintiffs

15

16                 UNITED STATES DISTRICT COURT

17               SOUTHERN DISTRICT OF CALIFORNIA

18 DARRYL DUNSMORE, ERNEST            Case No. 3:20-cv-00406-AJB-WVG
   ARCHULETA, ANTHONY EDWARDS,
19 REANNA LEVY, JOSUE LOPEZ,          **PLAINTIFFS' OPPOSITION TO**
   CHRISTOPHER NELSON,                **DEFENDANT**
20 CHRISTOPHER NORWOOD, and           **CORRECTIONAL**
   LAURA ZOERNER, on behalf of        **HEALTHCARE PARTNERS,**
21 themselves and all others similarly situated,  **INC.'S MOTION TO DISMISS**
                                      **SECOND AMENDED**
22              Plaintiffs,           **COMPLAINT**

23       v.                           Judge:    Hon. Anthony J. Battaglia
   SAN DIEGO COUNTY SHERIFF'S         Mag. Judge:  Hon. William V. Gallo
24 DEPARTMENT, COUNTY OF SAN
   DIEGO, CORRECTIONAL                NO HEARING DATE PER
25 HEALTHCARE PARTNERS, INC.,         DKT. 138
   LIBERTY HEALTHCARE, INC., MID-
26 AMERICA HEALTH, INC., LOGAN
   HAAK, M.D., INC., SAN DIEGO
27 COUNTY PROBATION DEPARTMENT,
   and DOES 1 to 20, inclusive,

28              Defendants.

1  (*counsel continued from preceding page*)

2  CHRISTOPHER M. YOUNG – 163319
   ISABELLA NEAL – 328323
3  OLIVER KIEFER – 332830
   DLA PIPER LLP (US)
4  401 B Street, Suite 1700
   San Diego, California  92101-4297
5  Telephone:  (619) 699-2700
   Facsimile:  (619) 699-2701
6  Email:      christopher.young@dlapiper.com
               isabella.neal@dlapiper.com
7              oliver.kiefer@dlapiper.com

8  BARDIS VAKILI – 247783
   JONATHAN MARKOVITZ – 301767
9  ACLU FOUNDATION OF SAN DIEGO &
   IMPERIAL COUNTIES
10 2760 Fifth Avenue, Suite 300
   San Diego, California  92103-6330
11 Telephone:  (619) 232-2121
   Email:      bvakili@aclu-sdic.org
12             jmarkovitz@aclu-sdic.org

13 Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT CORRECTIONAL HEALTHCARE PARTNERS, INC.'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

FACTUAL ALLEGATIONS ................................................................................ 2

LEGAL STANDARD .......................................................................................... 4

ARGUMENT ........................................................................................................ 5

I.    Plaintiffs State Plausible Claims Against CHP for Failure to Provide
      Adequate Medical Care (First through Fourth Causes of Action) ................ 6

      A.    Plaintiffs Have Standing to Assert Their Constitutional Claims ........... 6

            1.    Plaintiffs' Constitutional Claims Are Not Moot Because
                  Plaintiff Edwards Remains in Jail Custody ................................. 6

            2.    The "Capable of Repetition Yet Evading Review"
                  Exception to the Mootness Doctrine Applies ............................ 7

      B.    Plaintiffs Have Alleged Facts Sufficient to Support Their
            Constitutional Claims Against CHP ..................................................... 13

            1.    Plaintiffs Have Sufficiently Alleged That CHP *Itself* Fails
                  to Provide Adequate Medical Care ............................................. 14

            2.    Plaintiffs Have Sufficiently Alleged That CHP—Not Only
                  Other Defendants—Fails to Provide Adequate Medical
                  Care ............................................................................................ 15

II.   Plaintiffs Have Alleged Sufficient Facts to Support Their ADA and
      Unruh Civil Rights Act Claims (Sixth and Eighth Causes of Action) ........... 17

CONCLUSION ..................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Ass'n for L.A. Deputy Sheriffs v. Cnty. of L.A.*,
    648 F.3d 986 (9th Cir. 2011) ................................................................. 4

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007) ................................................................. 7

*Bell v. Wolfish*,
    441 U.S. 520 (1979) ................................................................. 8, 13

*Brown v. Plata*,
    563 U.S. 493 (2011) ................................................................. 7, 15

*Clark v. City of Lakewood*,
    259 F.3d 996 (9th Cir. 2001) ................................................................. 6

*Cohea v. Pliler*,
    No. 2:00-CV-2799 GEB EFB, 2013 WL 687081 (E.D. Cal. Feb. 25,
    2013), *report and recommendation adopted as modified*, No. 2:00-CV-
    2799 GEB EFB, 2013 WL 1281888 (E.D. Cal. Mar. 26, 2013) ................... 10

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990) ................................................................. 16, 17

*Demery v. Arpaio*,
    378 F.3d 1020 (9th Cir. 2004) ................................................................. 8, 9, 10, 11

*Dilley v. Gunn*,
    64 F.3d 1365 (9th Cir. 1995) ................................................................. 12

*Doe v. Gallinot*,
    657 F.2d 1017 (9th Cir. 1981) ................................................................. 10

*Doe v. Wolf*,
    424 F. Supp. 3d 1028 (S.D. Cal. 2020) ................................................................. 12

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ................................................................. 13

*Gerstein v. Pugh*,
    420 U.S. 103 (1975) ................................................................. 8, 9

*Giraldo v. Dep't of Corr. & Rehab.*,
    168 Cal. App. 4th 231 (2008) ................................................................. 12

*Gordon v. Cnty. of Orange*,
    888 F.3d 1118 (9th Cir. 2018) ................................................................. 14

*Gray v. Cnty. of Riverside*,
  No. EDCV 13-00444-VAP, 2014 WL 5304915 (C.D. Cal. Sept. 2,
  2014).................................................................................................7, 14, 15

*Haro v. Sebelius*,
  747 F.3d 1099 (9th Cir. 2014).......................................................................11

*Henry A. v. Willden*,
  678 F.3d 991 (9th Cir. 2012)...........................................................................5

*In re Alva*,
  33 Cal. 4th 254 (2004)...................................................................................14

*Johnson v. Hamilton*,
  15 Cal.3d 461 (1975).....................................................................................11

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018)............................................................................2

*Liberty Mut. Ins. Co. v. Fales*,
  8 Cal. 3d 712 (1973)......................................................................................13

*Madrid v. Gomez*,
  889 F. Supp. 1146 (N.D. Cal. 1995) ..............................................................14

*McQuillion v. Schwarzenegger*,
  369 F.3d 1091 (9th Cir. 2004).................................................................11, 12

*Mendoza v. Cnty. of Tulare*,
  128 Cal. App. 3d 403 (Ct. App. 1982) ...............................................9, 11, 13

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020)..........................................................................4

*Oregon Advoc. Ctr. v. Mink*,
  322 F.3d 1101 (9th Cir. 2003)..........................................................................8

*S. Pac. Terminal Co. v. Interstate Com. Comm'n*,
  219 U.S. 498 (1911) .........................................................................................9

*Sanchez v. City of Fresno*,
  914 F. Supp. 2d 1079 (E.D. Cal. 2012)..........................................................14

*Sony Biotechnology, Inc. v. Chipman Logistics and Relocation*,
  17-CV-1292-AJB-WVG, 2017 WL 3605500 (S.D. Cal. Aug. 22, 2017).......18

*Turner v. Rogers*,
  564 U.S. 431 (2011) .........................................................................................9

*United States Parole Comm. v. Geraghty*,
  445 U.S. 388 (1980) .........................................................................................8

*Wade v. Kirkland*,
  118 F.3d 667 (9th Cir. 1997)..........................................................................11

PLAINTIFFS' OPPOSITION TO DEFENDANT CORRECTIONAL HEALTHCARE PARTNERS, INC.'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

## CONSTITUTIONS

Cal. Const., Art. 1, § 17 ...................................................................... 5, 14

Cal. Const., Art. 1, § 7 ........................................................................ 5, 14

U.S. Const., Amendment VIII ................................................................. 13

U.S. Const., Amendment XIV ................................................................. 13

## OTHER AUTHORITIES

5B Federal Practice and Procedure (Wright & Miller) § 1357 (3d ed. 2022) ....... 4, 12

## RULES

Fed. R. Civ. P. 12 ...................................................................................... 4

## INTRODUCTION

Pursuant to a contract with the County of San Diego (the "County"), Defendant Correctional Healthcare Partners, Inc. ("CHP") has been responsible for on-site medical staff and care services for all people incarcerated in San Diego County Jail (the "Jail"), including all of the Proposed Class and Subclass members in Plaintiffs' Second Amended Complaint (the "SAC"), since September 23, 2020. The SAC contains numerous allegations that CHP violates incarcerated people's constitutional and statutory rights through its policies and practices, which expose all people incarcerated in the Jail to a substantial risk of serious harm.

In attempting to challenge the sufficiency of Plaintiffs' claims, CHP's motion to dismiss (the "Motion") incorrectly asserts that Plaintiffs' claims are moot because some Plaintiffs are no longer incarcerated at the Jail or are awaiting transfer.  As alleged in the SAC, Plaintiffs are among thousands of putative class members who have been and likely will continue to be exposed to harm.  Plaintiffs allege that they all have been exposed to the risk of harm posed by CHP's unconstitutional and unlawful policies and practices.  Four months after filing the SAC, one Plaintiff is still incarcerated in the Jail, defeating any claim of mootness.  The other seven have demonstrated a reasonable likelihood of return based on their reincarceration histories at the Jail.  Their claims may proceed because the "capable of repetition, yet evading review" exception to mootness applies and ensures that the brief nature of any single individual's incarceration term does not preclude relief.

CHP's argument that Plaintiffs insufficiently pled their claims ignores most allegations in the SAC.  Instead, CHP selectively cites to allegations regarding other Defendants' constitutional and statutory violations or harm suffered by incarcerated people prior to CHP contracting with the County.  This is nothing but a diversion tactic.  Plaintiffs' 214-page SAC is replete with specific allegations that CHP failed to provide adequate medical care to incarcerated people and discriminated against incarcerated people with disabilities, risking their health and lives.

The Motion should be denied in its entirety.

## FACTUAL ALLEGATIONS

On September 23, 2020, CHP entered into a contract with the County to provide on-site medical staff and care services for incarcerated people in the Jail. *See* Declaration of Van Swearingen in Support of Plaintiffs' Request for Judicial Notice ("Swearingen Decl."), filed herewith, ¶ 2, Ex. A at 22.[1]  The contract requires CHP to offer on-site health care providers at the Jail for primary and urgent care as part of sick call, specialty clinic services, and on-call services during periods outside of scheduled on-site sick call hours.  SAC ¶ 31.  Specifically, CHP is responsible for ensuring all scheduled clinics at the Jail have physician coverage and for appropriately staffing those clinics to provide timely care.  *Id*.  CHP's physicians are responsible for prescribing and monitoring medications in accordance with the policies of Defendant San Diego County Sheriff's Department (the "Sheriff's Department").  *Id*.  In collaboration with the Sheriff's Department, CHP is also responsible for peer review, quality assurance monitoring, quality improvement, utilization review, and clinical policy and procedure development and implementation.  *Id*.  CHP is further required to provide qualified administrative, management, and professional staffing in the performance of on-site services.  *Id*.  CHP's contract with the County expressly provides that CHP must fulfill its contractual obligations according to its "own means and methods of work, which shall be in the exclusive charge and under the control of [CHP], and which shall not be subject to control or supervision by [the] County except as to the results of the work."  Swearingen Decl. ¶ 2, Ex. A at ¶ 1.3.

---

[1] The Court may consider the contract "as though [it is] part of the complaint itself" under the doctrine of incorporation-by-reference because the contract is extensively referenced in the SAC and forms the basis of claims against CHP.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also* Plaintiffs' Request for Judicial Notice, filed herewith.

The SAC specifically alleges that CHP engages in policies and practices that place incarcerated people at a serious risk of harm, in violation of the United States and California Constitutions.  For example, by policy and practice, CHP specifically (1) "maintains insufficient numbers of health care professionals to provide minimally adequate care" to incarcerated people, SAC ¶ 42; (2) "fail[s] to provide adequate medical treatment for incarcerated people with substance use disorders," *id*. ¶ 60; (3) "fail[s] to provide adequate withdrawal treatment for incarcerated people who enter the Jail under the influence of alcohol, opiates, benzodiazepines, and other substances," *id*. ¶ 66; (4) "lack[s] adequate policies and practices" to ensure that incarcerated people under the influence of drugs and alcohol at booking "receive prompt and adequate medical treatment," *id*. ¶ 72; (5) "fail[s] to continue medically necessary treatments for incarcerated people . . . undergoing care for chronic or serious conditions" prior to booking, *id*. ¶ 75; (6) "fail[s] to provide a timely and reliable way for incarcerated people to alert health care staff and contractors of their need for evaluation of medical problems," *id*. ¶ 85; (7) "fail[s] to maintain adequate, accurate, and complete medical records" and "adequately train staff [on] how to maintain adequate medical records," *id*. ¶ 95; (8) "fail[s] to provide medical care in confidential settings," *id.* ¶ 102; (9) "fail[s] to order diagnostic testing when medically necessary," *id.* ¶ 103; (10) "fail[s] to adequately train medical staff and contractors regarding when it is appropriate to refer incarcerated people to medical specialists or outside medical centers," *id.* ¶ 103; (11) "fail[s] to provide adequate follow-up treatment to incarcerated people when they return to the Jail after receiving care from outside medical specialists," *id.* ¶ 108; (12) "fail[s] to adequately train staff how to prepare for release of incarcerated people with serious medical concerns," *id.* ¶ 111; and (13) "fail[s] to engage in meaningful Quality Assurance/Quality Control [] processes," *id*. ¶ 114.

The SAC also sets forth in detail the ways in which CHP, by policy and practice, violates the rights of individuals with disabilities incarcerated in the Jail.

PLAINTIFFS' OPPOSITION TO DEFENDANT CORRECTIONAL HEALTHCARE PARTNERS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

For example, CHP fails to (1) "provide incarcerated people with disabilities reasonable accommodations and to ensure meaningful and equal access to all of the programs and services offered by the Jail," *id.* ¶ 212; (2) "accommodate incarcerated people with disabilities result[ing] in the provision of inadequate medical . . . care," *id.*; (3) "adequately identify individuals with disabilities and the reasonable accommodations they require," *id.* ¶ 213; (4) "adequately train staff to maintain records or information about incarcerated people's disabilities and related accommodations," *id.* ¶ 216; and (5) "ensure that incarcerated people with disabilities who require assistive devices as accommodations are provided with and allowed to retain those devices," including "wheelchairs, walkers, . . . crutches, canes, braces, [and] tapping canes." *id.* ¶ 229.

The SAC includes illustrative examples of incarcerated people who have been subjected to CHP's unlawful policies and practices. For example, Plaintiffs allege that Plaintiff Archuleta was not continued on blood pressure medication, Plaintiff Levy faced delays in being referred to an endocrinologist, and nurses passing out medication ignored the pleas of a person with an infected wound, all during the timeframe that CHP was responsible for providing medical care in the Jail. *Id.* ¶¶ 79, 89, 103.

## LEGAL STANDARD

For purposes of a motion to dismiss under Federal Rule of Civil Procedure Fed. R. Civ. P. 12(b)(6), "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020). "All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists." 5B Federal Practice and Procedure (Wright & Miller) § 1357 (3d ed. 2022). Dismissal is proper only "if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Ass'n for L.A. Deputy Sheriffs v. Cnty. of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011). Moreover, even if the

1  motion to dismiss is granted, "a district court should grant leave to amend" unless

2  the complaint "could not possibly be cured by the allegation of other facts." *Henry*

3  *A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012) (citation omitted).

4  **ARGUMENT**

5      The SAC raises six causes of action against CHP:  (1) violation of the Eighth

6  Amendment for subjecting Plaintiffs "to a substantial risk of harm and injury from

7  inadequate medical . . . care," SAC ¶¶ 398-400; (2) violation of the Fourteenth

8  Amendment for subjecting Plaintiffs "to a substantial risk of harm and injury from

9  inadequate medical . . . care," *id.* ¶¶ 401-03; (3) violation of Article 1, Section 7 of

10  the California Constitution for subjecting Plaintiffs "to a substantial risk of harm and

11  injury from inadequate medical . . . care," *id.* ¶¶ 404-06; (4) violation of Article 1,

12  Section 17 of the California Constitution for subjecting Plaintiffs "to a substantial

13  risk of harm and injury from inadequate medical . . . care," *id.* ¶¶ 407-09;

14  (5) violation of Title III of the Americans with Disabilities Act for failing to provide

15  full and equal enjoyment of CHP's services, *id.* ¶¶ 419-22; and (6) violation of the

16  Unruh Civil Rights Act for failing to provide Plaintiffs with disability

17  accommodations, *id.* ¶¶ 428-35.

18      CHP's Motion fails to defeat these claims.  As to Plaintiffs' First through

19  Fourth Causes of Action, CHP's standing argument fails because each Plaintiff was

20  incarcerated at the Jail or likely to be reincarcerated in the Jail when the SAC was

21  filed, which is sufficient to confer standing.  To the extent Defendants' standing

22  argument is construed as a mootness argument, Plaintiffs are either presently incar-

23  cerated at the Jail or are reasonably likely to return, and thus fall within an exception

24  to the mootness doctrine.  The Motion also misrepresents Plaintiffs' allegations

25  regarding constitutional violations, focusing on other Defendants' conduct or con-

26  duct pre-dating CHP's contract instead of the many allegations regarding inadequate

27  medical care by CHP pursuant to CHP's own policies and practices.  Finally, CHP's

28  arguments as to the Sixth and Eighth Causes of Action for failure to accommodate

Plaintiffs' disabilities rely on unsupported factual assertions and are not appropriate for consideration on a motion to dismiss.

## I.    Plaintiffs State Plausible Claims Against CHP for Failure to Provide Adequate Medical Care (First through Fourth Causes of Action)

### A.    Plaintiffs Have Standing to Assert Their Constitutional Claims

CHP argues that Plaintiffs lack standing to assert their constitutional claims because some Plaintiffs are no longer at the Jail or are awaiting transfer.  Mot. at 7-8.  This argument wholly lacks merit.

As a threshold matter, CHP does not challenge Plaintiffs' standing when they filed the SAC—nor could they.  "Standing is determined by the facts that exist at the time the complaint is filed."  *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001).  Here, at the time the SAC was filed on February 9, 2022, at least four of the eight Plaintiffs were in custody at the Jail (Plaintiffs Archuleta, Edwards, Nelson, and Norwood).  SAC ¶¶ 21, 22, 25, 26.  CHP claims that Plaintiffs Archuleta, Nelson, and Norwood were "imminently" awaiting transfer to state prison at the time, Mot. at 8, but the Motion cites no authority for the proposition that people at the Jail lack standing while awaiting transfer.

As of this filing, at least one Plaintiff remains in the Jail, and although certain Plaintiffs' custody statuses have changed since the SAC was filed, Plaintiffs maintain standing to pursue this case, and their claims are not moot.

### 1.    Plaintiffs' Constitutional Claims Are Not Moot Because Plaintiff Edwards Remains in Jail Custody

CHP concedes that Plaintiff Edwards is still in Jail custody and not scheduled to be transferred.  Mot. at 8 n.3; Swearingen Decl. ¶ 3.  CHP incorrectly asserts, however, that Plaintiff Edwards' allegations do not concern treatment by CHP or were remedied before CHP was engaged by the County.  Mot. at 8 n.3.  The SAC alleges that Plaintiff Edwards was not provided a CPAP machine until August 2021, despite submitting sick call slips and urgent grievances and enduring significant

1    suffering throughout the time when CHP has been providing services in the Jail.

2    SAC ¶¶ 22, 82, 88.  The presence of a Plaintiff who was in Jail custody at the time

3    the SAC was filed and has adequately pleaded claims against CHP is sufficient to

4    confer standing.  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir.

5    2007) (en banc) ("In a class action, standing is satisfied if at least one named

6    plaintiff meets the requirements.").  Because Plaintiff Edwards remains in Jail to this

7    day, CHP's mootness argument should be rejected on this basis alone.

8        In highlighting the experience of Plaintiff Edwards, CHP also misconstrues

9    the nature of this case.  The relevant inquiry here is not whether deficient care was

10    provided to one person but whether CHP's policies and practices create a systemic

11    risk of serious harm to incarcerated people.  *See Brown v. Plata*, 563 U.S. 493, 505

12    n.3 (2011) (where "plaintiffs do not base their case . . . on any one occasion," courts

13    need not consider whether any "particular deficiency in medical care . . . would

14    violate the Constitution . . . in isolation").[2]  Plaintiffs sufficiently allege that CHP's

15    policies and practices pose a substantial risk of serious harm to incarcerated persons'

16    health and wellbeing.  *See, e.g.*, SAC ¶¶ 42, 60, 66, 72, 75, 85, 95, 102, 103, 108,

17    111, 114.

18        **2.    The "Capable of Repetition Yet Evading Review" Exception
19              to the Mootness Doctrine Applies**

20        Since the SAC was filed, Plaintiffs Archuleta, Nelson, and Norwood have

21    been transferred to CDCR custody to serve their sentences.  Swearingen Decl. ¶ 3.

22    Plaintiff Dunsmore remains in CDCR custody as well.  *Id.*[3]  Plaintiffs Levy, Lopez,

23

---

24    [2] *See also Gray v. Cnty. of Riverside*, No. EDCV 13-00444-VAP, 2014 WL

25    5304915, at *9 (C.D. Cal. Sept. 2, 2014) (where complaint includes individual

26    examples "only . . . as evidence" of deficient policies, "no 'claim' [] may be
      dismissed based on the constitutional adequacy of [an] individual [] experience").

27    [3] Plaintiff Dunsmore was in custody at the Jail when he filed the Complaint and

28    First Amended Complaint in this case.  SAC ¶ 20.

and Zoerner are out of custody for the time being. *Id*.

The claims of these seven Plaintiffs not in Jail custody as of this filing are not moot because this case falls squarely within the "capable of repetition yet evading review" exception to the mootness doctrine. The exception applies when (1) the duration of the challenged action is too short to be litigated prior to cessation, and (2) there is a reasonable expectation that the same parties will be subjected to the same offending conduct. *See Demery v. Arpaio*, 378 F.3d 1020, 1026 (9th Cir. 2004) (citations omitted). Both prongs are easily satisfied here.

This action presents a textbook example of a case with too short a duration to be fully litigated before cessation. *See id*. Approximately 70% of individuals incarcerated in the Jail last year had not been sentenced.[4] Each of the Plaintiffs have served time in the Jail pre-sentencing. Swearingen Decl. ¶ 3. As the Supreme Court has stated, "[p]retrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted." *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975); *see also Bell v. Wolfish*, 441 U.S. 520, 527 (1979) ("[B]ecause of the temporary nature of confinement [in jail], the issues presented are . . . capable of repetition, yet evading review."); *United States Parole Comm. v. Geraghty*, 445 U.S. 388, 399 (1980) ("Some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires."); *Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1117-18 (9th Cir. 2003) ("the length of detention in the county jail is short enough that any individual detainee's claim would probably become moot before trial").[5] An individual's pretrial custody can end at any time because of release on

---

[4] San Diego County Sheriff's Department, Jail Population Data, *available at* https://www.sdsheriff.gov/resources/jail-population-data.

[5] The population of pretrial detainees at the Jail is likely to increase given the recent decision to rescind "Zero Bail" across the state. *See* San Diego County Sheriff's

1    recognizance, dismissal of charges, a guilty plea, acquittal, or conviction after trial.

2    *See Gerstein*, 420 U.S. at 111 n.11.  Even so, "the constant existence of a class of

3    persons suffering the deprivation is certain."  *Id.*

4          Sentenced individuals, who comprised approximately 30% of the Jail's

5    population last year, also face unpredictable and relatively brief periods in Jail

6    custody.  *See Mendoza v. Cnty. of Tulare*, 128 Cal. App. 3d 403, 412 (Ct. App.

7    1982) ("[S]entenced inmates may be in custody longer than pretrial or trial

8    detainees; however, in many instances the converse could be true, especially for

9    those awaiting long and involved felony prosecutions.").  CHP's Motion

10   acknowledges the transitory nature of sentenced individuals' incarceration by

11   asserting that several Plaintiffs were likely to be "imminently" transferred to state

12   prison at the time of the SAC's filing.  Mot. at 8.  In its opposition to Plaintiffs'

13   pending motions for a preliminary injunction and provisional class certification,

14   filed jointly with the County, CHP itself argued that the Jail holds its "inmates for a

15   shorter period of time than almost any other county in California."  Dkt. 153-1, Ex. I

16   at ECF 229.  The length of individuals' incarceration at the Jail typically is far too

17   short for any individual to litigate a case like this one to completion.  *See Turner v.*

18   *Rogers*, 564 U.S. 431, 440 (2011) ("imprisonment for up to 12 months is in its

19   duration too short to be fully litigated . . . prior to its expiration" (internal quotation

20   marks and citation omitted)); *S. Pac. Terminal Co. v. Interstate Com. Comm'n*, 219

21   U.S. 498, 514-16 (1911) (two years too short for judicial review).

22         Plaintiffs also satisfy the second prong of the "capable of repetition yet

23   evading review" exception because they have a reasonable expectation that they

24   may be (a) transferred back to the Jail or (b) released and reincarcerated at the Jail.

25   *See Demery*, 378 F.3d at 1026-27.  Contrary to CHP's contention, this risk of

26

27   _____

     Department, Zero Bail, *available at*

28   https://www.sdsheriff.gov/Home/Components/News/News/1234/514.

PLAINTIFFS' OPPOSITION TO DEFENDANT CORRECTIONAL HEALTHCARE PARTNERS, INC.'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

reincarceration is not merely speculative—it is supported by evidence.  The eight Plaintiffs have been incarcerated at the Jail approximately 56 times in total, including Plaintiff Edwards, incarcerated eight times since 2011; Plaintiff Norwood, incarcerated fifteen times since 2005; and Plaintiff Zoerner, incarcerated more than twenty times since 2010 and six times in 2021 alone.  SAC ¶¶ 20-27.[6]  This pattern of reincarceration supports a reasonable expectation Plaintiffs will be subject to the same unconstitutional conduct in the future.  *See Doe v. Gallinot*, 657 F.2d 1017, 1021 n.6 (9th Cir. 1981) (claim not moot where plaintiff returned to confinement six times after case filed); *Cohea v. Pliler*, No. 2:00-CV-2799 GEB EFB, 2013 WL 687081, at *8 (E.D. Cal. Feb. 25, 2013), *report and recommendation adopted as modified*, No. 2:00-CV-2799 GEB EFB, 2013 WL 1281888 (E.D. Cal. Mar. 26, 2013) (case not moot where plaintiff claimed he might be transferred back to prison and proffered facts showing he had been close to transfer in the past).

Even those Plaintiffs who have been transferred to state prison are likely to return to the Jail.  Plaintiff Dunsmore, for example, has already been re-incarcerated at the Jail twice for appearances in San Diego County court related to re-sentencing, from August 16, 2018 to September 19, 2018, and from December 13, 2019 to April 21, 2021.  SAC ¶ 20.

*Demery* is instructive as to why CHP's standing argument must fail.  There, plaintiff jail detainees sought injunctive relief barring the sheriff from continuing to use webcams to stream live images of detainees from the jail.  *Demery*, 378 F.3d at 1023.  The Ninth Circuit found the jail's release of plaintiffs did not render the case moot because the "capable of repetition yet evading review" exception applied.  *Id*. at 1025-27.  Specifically, the court found "compelling evidence" that plaintiffs likely would be reincarcerated, citing examples of one plaintiff who was detained at

---

[6] The SAC alleges that Plaintiff Zoerner was incarcerated 21 times since 2010.  SAC ¶ 27.  In a recently-filed declaration from Plaintiff Zoerner, she provides an updated and more accurate total of 24 incarcerations since 2010.  Dkt. 162-14, ¶ 2.

the jail on twenty different occasions in five years, and eleven plaintiffs who had been detained there on more than one occasion. *Id*. at 1026. Here, Plaintiffs are similarly likely to be reincarcerated at the Jail and subject to the same unconstitutional conduct by CHP.

Unlike *Demery*, the cases cited by CHP in support of its mootness argument are easily distinguishable. *See* Mot. at 7-8. None of CHP's cited cases were brought by individuals incarcerated in jails (as opposed to prisons), where the incarcerated population is particularly transitory, in part because of the high proportion of pre-trial detainees, making it likely claims will evade review. Nor did any of CHP's cases involve putative class actions; they were individual actions, or in the case of *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1095 (9th Cir. 2004), an action brought by one lead plaintiff and several co-plaintiffs whose claims were dismissed on other grounds and did not factor into the court's mootness analysis.

Dismissing this case as moot would be inappropriate given that it was brought on behalf of a Proposed Class and Subclass that would continue to be harmed by unconstitutional policies and procedures even if Plaintiffs were no longer affected. *See Johnson v. Hamilton*, 15 Cal.3d 461, 465 (1975) ("Although the underlying controversy may be moot as to petitioner, others similarly situated may be affected and the issues as to them may not be moot."); *Mendoza*, 128 Cal. App. 3d at 413 ("mootness does not bar resolution of a class claim where public interest in a matter is strong and *unnamed* class members maintain a live controversy therein" (emphasis in original)); *Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997) (by seeking "to represent short-term" detainees "in a county jail" whose individual claims would expire before litigation concluded, plaintiffs "present[ed] a classic example of a transitory claim . . . because there is a constantly changing putative class that will become subject to these allegedly unconstitutional conditions"); *Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir. 2014) (holding "expiration of [plaintiff's] personal stake in injunctive relief did not moot" classwide "claim for injunctive

1  relief"); *McQuillion,* 369 F.3d at 1095 n.3 (in finding an exception to the mootness

2  doctrine applied, noting that plaintiffs were not a certified class and had not even

3  sought class certification).  Plaintiffs filed a motion for provisional class

4  certification on May 2, 2022, which remains pending before this Court.  *See Doe v.*

5  *Wolf*, 424 F. Supp. 3d 1028, 1038 (S.D. Cal. 2020) ("Inherently transitory claims

6  will certainly repeat as to the class, either because the individual could nonetheless

7  suffer repeated harm or because it is certain that other persons similarly situated will

8  have the same complaint.").

9       Further, in none of the cases cited by CHP did named plaintiffs—unlike

10  Plaintiffs here—show a reasonable expectation that they would be reincarcerated

11  and subjected to the same policies and practices at issue in the case.  In *Giraldo v.*

12  *Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 257 (2008), for example, the

13  plaintiff conceded that the case would be moot after she paroled.  In *McQuillion*,

14  369 F.3d at 1095 n.3, the plaintiff, who was released on habeas grounds after filing

15  suit, failed to demonstrate that he would find himself back before the Board of

16  Prison Terms while serving a life sentence and be subjected to a specific parole

17  policy—an unlikely and unforeseeable set of circumstances.  In *Dilley v. Gunn*, 64

18  F.3d 1365, 1371-72 (9th Cir. 1995), the plaintiff's transfer to a lower security prison

19  was due to him serving time in a high security institution without substantial

20  disciplinary problems, rendering any claim that he would be transferred back to high

21  security for violating prison rules purely speculative.  Unlike the cases on which

22  CHP relies, this putative class action lawsuit was brought by plaintiffs who have

23  been in and out of the same Jail repeatedly, have been subjected to the same

24  unconstitutional policies and procedures each time, and will continue to face the

25  same challenges obtaining judicial review during relatively short durations in Jail

26  custody.

27       Finally, this case involves a "matter of continuing public interest," where the

28  conduct alleged "is likely to recur," and thus, the Court should "exercise [its]

inherent discretion to resolve [the] issue[s], even [if] an event occurring during its pendency would normally render the matter moot." *Liberty Mut. Ins. Co. v. Fales*, 8 Cal. 3d 712, 715-16 (1973); *see also Mendoza*, 128 Cal. App. 3d at 413 (finding exception to mootness applied in part because "[c]onditions at any correctional facility are a public concern, not only as to convicted inmates but especially as to unconvicted defendants awaiting trial who are clothed with the presumption of innocence"). If certain Plaintiffs' release or transfer was sufficient to end this case, it would deliver a striking blow to jail class actions, which are complex, time-consuming to develop and present evidence, and essential to ensure adequate treatment of incarcerated people.

Dismissal on this basis would also be an exercise in absurdity. Plaintiffs' counsel is in communication with numerous people incarcerated at the Jail who have been harmed by the unconstitutional and illegal conditions set forth in the SAC, and they remain at risk of further harm. Swearingen Decl. ¶ 4. Counsel can seek amendment of the complaint to insert additional class representatives; in all likelihood, some of those additional class representatives may leave the Jail (at least temporarily) during the pendency of Plaintiffs' class certification motion. If CHP's position were to be adopted, this process could be repeated indefinitely, with proceedings to vindicate the rights of the Proposed Class and Subclass forever stalled.

**B.    Plaintiffs Have Alleged Facts Sufficient to Support Their Constitutional Claims Against CHP**

A defendant violates the Eighth Amendment if it creates conditions posing a substantial risk of serious harm to incarcerated persons' health or safety and acts with deliberate indifference to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834, 839-40 (1994). The Fourteenth Amendment's protection of pretrial detainees affords even greater protection from dangerous conditions than the Eighth Amendment's protection of sentenced individuals. *See Bell*, 441 U.S. at 535-37;

1    *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018).  "Deliberate

2    indifference to serious medical needs may be established by showing that there are

3    'systemic and gross deficiencies in staffing, facilities, equipment, or procedures that

4    the inmate population is effectively denied access to adequate medical care.'"  *Gray*,

5    2014 WL 5304915, at *8 (quoting *Madrid v. Gomez*, 889 F. Supp. 1146, 1256 (N.D.

6    Cal. 1995)).  Claims brought under Sections 7 and 17 of Article 1 of the California

7    Constitution are analyzed using a similar standard.  *See In re Alva*, 33 Cal. 4th 254,

8    291 (2004); *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1116 (E.D. Cal. 2012).

9    The SAC sufficiently alleges that CHP's policies and practices related to the

10    provision of medical care at the Jail pose a substantial risk of serious harm to

11    incarcerated persons' health.

### 1.    Plaintiffs Have Sufficiently Alleged That CHP *Itself* Fails to Provide Adequate Medical Care

14    CHP's contention that Plaintiffs lump together CHP and other Defendants

15    fails.  Mot. at 9.  The SAC alleges numerous facts regarding CHP's specific conduct

16    that violates incarcerated individuals' constitutional rights.  Among other

17    allegations, Plaintiffs allege that CHP *itself* "fail[s] to timely treat the serious and

18    chronic medical needs of people transferred between the Jail facilities"; "fail[s] to

19    provide adequate medical treatment for incarcerated people with substance use

20    disorders"; "lack[s] adequate policies and practices to ensure that incarcerated

21    people who are under the influence of drugs or alcohol when they arrive at the Jail

22    receive prompt and adequate medical treatment"; "fail[s] to continue medically

23    necessary treatments for incarcerated people" with "chronic or serious conditions";

24    "fail[s] to maintain adequate, accurate, and complete medical records; and "fail[s] to

25    order diagnostic testing when medically necessary."  SAC ¶¶ 59, 60, 72, 75, 95, 103.

26    Plaintiffs allege examples of instances in which individuals were not provided

27    adequate on-site primary and urgent care medical services after the County had

28    contracted with CHP to provide exactly those services.  *See, e.g.*, *id*. ¶ 79 (alleging

1   Plaintiff Archuleta was not continued on blood pressure medication in and around

2   May 2021); *id*. ¶ 89 (alleging nurses passing out medication in 2021 ignored pleas

3   of incarcerated person with an infected wound); *id*. ¶ 103 (alleging delays in

4   referring Plaintiff Levy to endocrinologist through February 2021).  The SAC

5   alleges sufficient facts to demonstrate that CHP has caused harm to Plaintiffs and

6   members of the Proposed Class and Subclass.

### 2.    Plaintiffs Have Sufficiently Alleged That CHP—Not Only Other Defendants—Fails to Provide Adequate Medical Care

9   CHP further seeks to avoid liability by shifting blame for the constitutional

10  violations at issue onto its predecessors and other Defendants.  CHP claims that

11  Plaintiffs have failed to allege that CHP itself acted with deliberate indifference,

12  cherry-picking allegations from the SAC regarding events that occurred before CHP

13  contracted to provide services in the Jail.  Mot. at 9.  In so arguing, CHP ignores

14  Plaintiffs' numerous, specific allegations of inadequate medical care from late 2020

15  through the time the SAC was filed, during which time CHP has been responsible

16  for on-site medical staff and care services in the Jail.  *See, e.g.*, SAC ¶¶ 42, 44, 45,

17  46, 79, 88, 89, 91, 92, 93, 103.  Plaintiffs also allege facts regarding unconstitutional

18  conduct that started before CHP contracted with the County but continued ***after*** that

19  time.  *See, e.g.*, SAC ¶¶ 43, 102, 103, 111.  CHP's claim that prior constitutional

20  violations were remedied simply because Plaintiff Edwards was given a CPAP

21  machine in August 2021, Mot. at 9, ignores the fact that CHP contracted with the

22  County in September 2020 and ignores allegations regarding other individuals.  *See*

23  *Plata*, 563 U.S. at 505 n.3; *Gray*, 2014 WL 5304915, at *9.

24  CHP also contends that Plaintiffs have acknowledged CHP is not at fault for

25  "the majority" of Plaintiffs' allegations.  *Id*. at 10.  Even if this was true—which it is

26  not—CHP can and should be held liable for its unconstitutional conduct even if it

27  was involved in less than "the majority" of the conduct at issue in this case.

28  Moreover, CHP's attempt to lay blame solely on other Defendants is misplaced.

1 Plaintiffs' allegations that other Defendants failed to provide adequate medical care
2 do not in any way detract from the numerous allegations regarding ***CHP's*** failure to
3 provide adequate medical care.  For example, CHP emphasizes allegations in the
4 SAC that the Sheriff's Department left vacant health care positions unfilled and the
5 County allowed untrained nurses to provide health care, without acknowledging
6 Plaintiffs' allegation that CHP specifically "fail[s] to provide sufficient staff to stem
7 the understaffing crisis."  SAC ¶ 43.  In addition, while Plaintiffs allege that
8 command and custody staff may interfere with the provision of care by medical
9 personnel, *id*. ¶¶ 51-54, the contract between CHP and the County provides that
10 CHP must fulfill its responsibilities according to its "own means and methods of
11 work, which shall be in the exclusive charge and under the control of [CHP]."
12 Swearingen Decl. ¶ 2 Ex. A at ¶ 1.3.  While in no way absolving other Defendants
13 of their own constitutional and legal duties to provide minimally adequate care, the
14 contract between CHP and the County supplies substantial foundation for Plaintiffs'
15 claims against CHP.

16        To the extent there is a dispute regarding which of the Defendants is
17 responsible for particular harms alleged, such a dispute is not properly resolved on a
18 motion to dismiss.  *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
19 911 F.2d 242, 245 (9th Cir. 1990) ("It is well-established that questions of fact
20 cannot be resolved or determined on a motion to dismiss for failure to state a claim
21 upon which relief can be granted."); *Est. of Wilson by & through Jackson v. Cnty. of*
22 *San Diego*, No. 20-CV-0457-BAS-DEB, 2022 WL 789127, at *9 (S.D. Cal.
23 Mar. 14, 2022) (declining at pleading stage to resolve "highly factual" question of
24 causation where multiple defendants, including various medical providers, were
25 alleged to have been involved in death of incarcerated person).  CHP's argument to
26 the contrary does not work to challenge the sufficiency of the allegations in the SAC
27 that CHP "knowingly provide[s] inadequate . . . medical care . . . to the individuals
28 incarcerated … in the Jail, which exposes incarcerated people to substantial,

PLAINTIFFS' OPPOSITION TO DEFENDANT CORRECTIONAL HEALTHCARE PARTNERS, INC.'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  unreasonable, and life-threatening risks of harm."  SAC ¶ 5.

2  **II.    Plaintiffs Have Alleged Sufficient Facts to Support Their ADA and
3       Unruh Civil Rights Act Claims (Sixth and Eighth Causes of Action)**

4       Plaintiffs allege that CHP violates the statutory rights of individuals with

5  disabilities incarcerated in the Jail in two primary ways: (1) by failing "to provide

6  reasonable accommodations and to ensure meaningful and equal access to all of the

7  programs and services offered by the Jail," including medical services, SAC ¶¶ 212,

8  222; and (2) failing to "timely provide assistive devices to incarcerated people with

9  disabilities," *id.* ¶ 229.

10      CHP attempts to deflect responsibility for its conduct by relying on unsup-

11 ported factual and legal assertions, claiming that it is not obligated to provide

12 incarcerated people with accommodations like sign language interpretation and that

13 the conduct about which Plaintiffs complain falls outside the scope of medical

14 services CHP provides.  Mot. at 11-12.  These arguments cannot succeed on a

15 motion to dismiss.  *See Cook, Perkiss & Liehe*, 911 F.2d at 245.  The SAC plainly

16 states that the "contractor defendants," defined to include CHP specifically, violate

17 the law by failing to provide accommodations to incarcerated people with

18 disabilities, including access to medical services and devices.  SAC ¶¶ 212, 222,

19 229.  CHP's factual assertions also are disproven by the contract between CHP and

20 the County, which clearly states that CHP must "ensure that services and facilities

21 are provided without regard to . . . physical or mental disability," and "shall not

22 discriminate against qualified people with disabilities."  Swearingen Decl. ¶ 2,

23 Ex. A at ¶¶ 8.5, 8.7.  Other Defendants' failures to provide legally required

24 accommodations are alleged separately and have no effect on the viability of alleged

25 claims against CHP.

26      CHP further claims that Plaintiffs have failed to allege that CHP

27 discriminated against any of the Plaintiffs or that there is a prospect of future injury.

28 Mot. at 11.  As explained, *supra* at 7-8, Plaintiffs' claims are focused on systemic

PLAINTIFFS' OPPOSITION TO DEFENDANT CORRECTIONAL HEALTHCARE PARTNERS, INC.'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   risk of serious harm to incarcerated people resulting from CHP's policies and
2   practices.  The SAC alleges that each of the Plaintiffs is a person with a disability
3   under federal and state law.  SAC ¶¶ 20-27.  Plaintiff Edwards is currently
4   incarcerated in the Jail, and the other Plaintiffs have demonstrated a reasonable
5   likelihood of returning.  Plaintiffs are subject to CHP's discriminatory policies and
6   practices as individuals with disabilities who are or are likely to be incarcerated in
7   the Jail.  The Motion should be denied as to the Sixth and Eighth Causes of Action.[7]

8                                    **CONCLUSION**

9          Plaintiffs' SAC sets forth sufficient facts to support their First, Second, Third,
10  Fourth, Sixth, and Eighth Causes of Action against CHP.  For the reasons set forth
11  above, the Motion should be denied.  Should the Court be inclined to dismiss any of
12  the claims against CHP, however, Plaintiffs respectfully request that the Court grant
13  leave to amend.  *See Sony Biotechnology, Inc. v. Chipman Logistics and Relocation*,
14  17-CV-1292-AJB-WVG, 2017 WL 3605500, at *2 (S.D. Cal. Aug. 22, 2017)
15  (courts "should grant leave to amend unless the plaintiff could not possibly cure the
16  defects in the pleading").

17  DATED:  June 10, 2022            Respectfully submitted,

18                                   ROSEN BIEN GALVAN & GRUNFELD LLP
19
20                                   By: */s/ Van Swearingen*
                                         Van Swearingen
21
22                                   Attorneys for Plaintiffs
23

---

24  [7] CHP speculates that it was sued by Plaintiffs because Unruh Civil Rights Act
25  claims typically cannot be brought against jails.  Mot. at 3, 12 n.6.  This is irrelevant
    to the Motion, and in any event, is not true.  As CHP's contract with the County
26  makes clear, CHP has been responsible for the provision of medical care in the Jail,
27  pursuant to its own policies and procedures, since September 23, 2020.  Its failures
    have caused and continue to cause serious harm to incarcerated people.  Its status as
28  a defendant is warranted.

PLAINTIFFS' OPPOSITION TO DEFENDANT CORRECTIONAL HEALTHCARE PARTNERS, INC.'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT