**ERICKSEN ARBUTHNOT**
SHARON L. HIGHTOWER (SBN: 129874)
LAURA E. MALKOFSKY (SBN: 142536)
210 North Fourth Street, Suite 350
San Jose, CA  95112
Tel:  (408) 286-0880
Fax: (408) 286-0337
shightower@ericksenarbuthnot.com
lmalkofsky@ericksenarbuthnot.com

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
MARILYN R. MORIARTY, SB# 89818
E-Mail: Marilyn.Moriarty@lewisbrisbois.com
550 West C Street, Suite 1700
San Diego, California 92101
Telephone: 619.233.1006
Facsimile: 619.233.8627

Attorneys for Defendant
LIBERTY HEALTHCARE CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA – SAN DIEGO

| | |
|---|---|
| DARRYL DUNSMORE, EARNEST ARCHULETA, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>                          Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, et al.<br><br>                          Defendants. | Case No. 3:20-cv-00406-AJB-WVG<br><br>REPLY IN SUPPORT OF DEFENDANT LIBERTY HEALTHCARE CORP.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CIVIL CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF<br>[FRCP 12(b)(6)]<br><br>Jury Trial Demanded<br><br>NO HEARING DATE REQ'D. PER CHAMBER RULES - NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT |

- 1 -

4885-9621-8661.2                                                    Case No. 3:20-cv-00406-AJB-WVG
REPLY IN SUPPORT OF  DEFENDANT LIBERTY HEALTHCARE CORP.'S  MOTION TO DISMISS

## I.  INTRODUCTION

There is one thing that Plaintiffs' Opposition papers got right:  Plaintiffs accuse Liberty of failing "to grapple with the actual allegations in the SAC."  (Opp. 1:26-27)  Liberty's inability to "grapple" with the allegations is the very reason why its Motion to Dismiss the Sixth and Eighth Causes of Action as to it, must be granted.  A Defendant should not be forced to "grapple" with allegations.  Instead, it is Plaintiffs' duty to allege sufficient facts to put each defendant on notice as to whatever wrongdoing plaintiffs contend it committed.  Any failure by Liberty to "grapple" with the allegations in this case is due to a failure on Plaintiffs' part in drafting the SAC, not on Liberty's part in trying to make sense of it.

## II.  LIBERTY DOES NOT OPPOSE PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE OF ITS CONTRACT WITH THE COUNTY

Liberty does not oppose Plaintiffs' request that the Court consider Liberty's Contract with The County as if it were "incorporated by reference in the complaint." In fact, the terms of the Contract bolster Liberty's Motion to Dismiss because they contradict some of Plaintiffs' claims in the SAC and Opposition papers.  "Plaintiffs may plead themselves out of court by attaching exhibits inconsistent with their claims because the court may disregard contradictory allegations."  . *Indian Hills Holdings, LLC v. Frye* 2021 U.S. Dist. LEXIS 241821.

For example, pursuant to the Contract, it is the County, not Liberty, who has the following responsibilities (emphasis added):

**3.1.  Duties of the County**

3.1.1.  ***Provide adequate office and clinical space***, furniture and supplies . .

3.1.8.  ***Comply with all federal and state laws pertaining to the administration of the jails and keeping of inmates.  Contractor (Liberty) will not be charged with, billed for or otherwise expected to provide inmates the items the Sheriff is required to provide.***

3.1.9.  ***Provide for and dispense psychotropic and other medications as prescribed by Contractor personnel* . . .**

4885-9621-8661.2

Thus, Liberty's contract establishes that many allegations against the CONTRACTOR DEFENDANTS in the SAC do not relate to duties Liberty had at the San Diego jails.  For example, Liberty was not responsible for: (1) providing sufficient clinical space so inmates can have private exams with Liberty staff; (2) providing housing facilities for in-patient inmates' mental health treatment; (3) determining who has physical or intellectual disabilities at intake; (4) providing inmates with ADA assistive devices such as crutches, walkers, etc., and (5) tracking inmates with physical or intellectual disabilities.  Yet the SAC alleges otherwise.  Liberty submits that the Court can (and should) disregard allegations in the SAC that contradict the exhibits attached to it.  See, *Indian Hills Holdings, LLC, supra.*

## III.  LEGAL ARGUMENT

### A. The CONTRACTOR DEFENDANTS Are Five Separate Entities With Divergent Roles - Allegations Against The Group Do Not Adequately Put The Individual Parties On Notice Of The Claims Against Which They Must Defend Themselves

The cause of Liberty's difficulties in deciphering the SAC is that it is a 214-page mishmash of assertions regarding numerous parties who have separate and distinct duties and obligations but who have been lumped together as the "CONTRACTOR DEFENDANTS" because they operate under separate contracts with San Diego County.  The "CONTRACTOR DEFENDANTS" include the following diverse businesses, all who have different contract terms and duties:

1.  CORRECTIONAL HEALTHCARE PARTNERS, INC. – provides medical care staffing and services, including primary and urgent care; (SAC, ¶31)

2.  TRI-CITY MEDICAL CENTER – provides health care staffing and services and inpatient and outpatient hospital services; provides on-site physicians for primary and urgent care as part of sick call, specialty clinic services, and on-call services; responsible for prescribing and monitoring medications; (SAC ¶32)

- 3 -

3. LIBERTY HEALTHCARE, INC. ("LIBERTY") provides mental health care staffing and services, (SAC ¶33)

4. MID-AMERICA HEALTH, INC.  ("MID-AMERICA") provides dental care staffing and services; (SAC ¶34)

5. LOGAN HAAK, M.D., INC. ("LOGAN HAAK") provides vision care staffing and services; (SAC ¶35)

According to Plaintiffs' Opposition, so long as paragraph 5 of the 464 paragraph SAC identifies Liberty as one of the "CONTRACTOR DEFENDANTS", Plaintiffs can thereafter lump Liberty into every allegation relating to the "CONTRACTOR DEFENDANTS" and they will have satisfied FRCP 8(a)(2)'s requirement of providing fair notice to Liberty of the claims against it.  Plaintiffs are mistaken. Rule 8 requires, at a minimum, that a complaint allege enough specific facts to provide "fair notice" of both the particular claim being asserted and "***the grounds upon which [that claim] rests.***" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (emphasis added.)

There can be no compliance with FRCP 8 if the complaint lumps multiple defendants together without delineating the alleged wrongs of each Defendant. *Mora v. City of Chula Vista* 2021 U.S. Dist. LEXIS 57948.  See also *Hernandez v. City of Farmersville*, No. 2010 U.S. Dist. LEXIS 24747 (E.D. Cal. Mar. 3, 2010) (dismissing complaint because it lumps three individual officer defendants as "officers" without attributing separate acts, wrongs or omissions to each of them respectively); see also *Corazon v. Aurora Loan Servs., LLC*, No. 2011 U.S. Dist. LEXIS 52712, (N.D. Cal. May 5, 2011) ("Aurora should not be required to guess which allegations pertain to it. By failing to differentiate among defendants or specify which defendant is the subject of Plaintiff's  various allegations, Plaintiff's Complaint violates Rule 8(a)(2) because it fails to provide Aurora with fair notice of its alleged misconduct.").

Although this defect occurs throughout the SAC, it is especially egregious in the Sixth Cause of Action alleging violation of the American with Disabilities Act against the "CONTRACTOR DEFENDANTS", and the Eighth Cause of Action for violation of the Unruh Act against the Sheriff's Department, County, Correctional Healthcare Partners, Tri-City, Liberty, Mid-America and Logan Haak. Plaintiffs gloss over the problem in their Opposition by inaccurately summarizing certain allegations in the SAC and claiming they are specifically made against Liberty. However, when one compares the allegations in the SAC to those summarized in the Opposition, (as Liberty does below), it is obvious that the Opposition misrepresents the SAC's allegations against Liberty (or lack thereof) and that the actual allegations fail to identify Liberty or even assert facts that would allow Liberty to understand the allegations against it. For these reasons, the Sixth and Eighth Causes of Action must be dismissed as to Liberty.

| Claims in Pltfs. Opp. | Actual Allegations in the SAC |
|---|---|
| "The PSU 'lacks space for confidential mental health visits,' which means that incarcerated people with serious mental illness are unable to speak about their serious mental health needs,' and are thus denied full and equal access to mental health service." Citing SAC[1] ¶165 | "165. . ... Even the PSU at Central—where incarcerated people with the most serious mental health needs are housed—lacks space for confidential mental health visits. For example, the clinical treatment room in the PSU lacks auditory privacy, which means that custody staff can overhear conversations between mental health staff and incarcerated people. Some concerned mental health staff have resorted to asking clients to whisper or to write notes as a workaround for confidential communication. Many incarcerated people describe being unable to speak about their serious mental health needs, and having their conditions deteriorate, due to lack of confidentiality." - (Note: Liberty is not mentioned.) |
| "As a result of Liberty's and the Sheriff's Department's deficient screening procedures and practices, | "169. Nonetheless, the SHERIFF'S DEPARTMENT's Inmate Safety Program ("ISP") relies exclusively on harsh isolation settings to house patients in crisis. . . . Patients in safety cells and EOH cells are on near-total |

---

[1] Pursuant to the terms of the Contract, it is the duty of the County, to provide adequate clinical space: " 3.1.1.  *Provide adequate office and clinical space*"

| patients at risk of suicide are placed in cells where they are 'deprived of access to their property, and denied programs, showers, phone calls, family visits, social interaction, and recreation' unlike other incarcerated people." Citing SAC ¶169 | lockdown, deprived of access to their property, and denied programs, showers, phone calls, family visits, social interaction, and recreation. . ." – (Note: Liberty is not mentioned.) |
| --- | --- |
| "Patients in the PSU require high levels of care, but 'there are not enough assigned PSU . . . contractors [from Liberty] to provide daily treatment.'" Citing SAC ¶197 | "197. COUNTY DEFENDANTS' failure to maintain sufficient numbers of mental health staff creates pronounced problems in the PSU, as well as in the Jail's mental health stepdown units, where many other patients requiring high levels of mental health care are housed. . . . ." – (Note: Not only is Liberty not mentioned, but the SAC actually attributes the failure to maintain sufficient mental health staff to the COUNTY DEFENDANTS, whereas the Opposition papers disingenuously claim it is Liberty's responsibility.) |
| "Liberty *itself* fails to (1) 'provide incarcerated people with disabilities reasonable accommodations and to ensure meaningful and equal access to all of the programs and services offered by the Jail'", citing SAC ¶212 | "212. COUNTY DEFENDANTS incarcerate significant numbers of individuals with disabilities, as that term is defined in the ADA, the Rehabilitation Act, and California's Unruh Act. By policy and practice, COUNTY DEFENDANTS and CONTRACTOR DEFENDANTS routinely fail to provide incarcerated people with disabilities reasonable accommodations and to ensure meaningful and equal access to all of the programs and services offered by the Jail. – (Note: "Liberty itself" is not mentioned.)) |
| "Liberty *itself* fails to 'adequately identify individuals with disabilities and the reasonable accommodations they require.'" Citing SAC ¶213 | "213. Under the ADA and the Rehabilitation Act, the COUNTY DEFENDANTS must create and maintain a system to identify and track individuals with disabilities and the accommodations they require. However, by policy and practice, the COUNTY DEFENDANTS and CONTRACTOR DEFENDANTS fail to adequately identify individuals with disabilities and the reasonable accommodations they require. During the intake process, Jail staff gather information about newly arriving people, and use this information to make a number of determinations, including for classification, housing, and treatment decisions. The |

| | |
|---|---|
| | staff responsible for intake are not adequately trained by the SHERIFF'S DEPARTMENT about how to identify and track people with disabilities, and therefore frequently fail to identify people with disabilities or the accommodations they need . . ." – (Note: "Liberty itself" is not mentioned.) |
| "Plaintiffs specifically allege that Liberty fails 'to identify newly arriving people's disabilities and needed accommodations during the intake process, which results in the denial of accommodations mandated by the ADA and the Rehabilitation Act and places people with disabilities at risk for discrimination, injury and/or exploitation.'" Citing SAC ¶214 | "214.  As a result of these inadequate policies and procedures, Defendants fail to identify newly arriving people's disabilities and needed accommodations during the intake process, which results in the denial of accommodations mandated by the ADA and the Rehabilitation Act and places people with disabilities at risk of discrimination, injury, and/or exploitation." |
| "Liberty *itself* fails to 'adequately train staff to maintain records or information about incarcerated people's disabilities and related accommodations."  Citing SAC ¶216 | "216. . . .The SHERIFF'S DEPARTMENT and CONTRACTOR DEFENDANTS do not adequately train staff to maintain records or information about incarcerated people's disabilities and related accommodations." – (Note: "Liberty itself" is not mentioned.) |
| "Plaintiffs allege that without an adequate tracking system, Liberty has 'no easily accessible means to determine whether a person has a disability, and what, if any, accommodations that person requires. Consequently, [Liberty] fail[s] to provide people with accommodations and/or take[s] away accommodations that have | "216.  Upon information and belief, the SHERIFF'S DEPARTMENT does not maintain an effective central tracking system, electronic or otherwise, of incarcerated people with disabilities and the accommodations they require. . ..

217.  The lack of an adequate disability and accommodation tracking system results in substantial injuries to incarcerated people with disabilities. Without an adequate tracking system, custody, medical, and mental health staff and contractors have no easily accessible means to determine whether a person has a disability, and what, if any, |

REPLY IN SUPPORT OF  DEFENDANT LIBERTY HEALTHCARE CORP.'S  MOTION TO DISMISS

| | |
|---|---|
| already been provided without justification." Citing SAC ¶217 | accommodations that person requires.  Consequently, the SHERIFF'S DEPARTMENT and CONTRACTOR DEFENDANTS fail to provide people with accommodations and/or take away accommodations that have already been provided without justification." Note – the SAC alleges the Sheriff's Dept. is the cause of the lack of an effective tracking system, not Liberty. |
| "Liberty *itself* fails to 'ensure that incarcerated people with disabilities who require assistive devices as accommodations are provided with and allowed to retain' those devices.'" Citing SAC ¶229[2] | "229.  By policy and practice, the COUNTY DEFENDANTS and CONTRACTOR DEFENDANTS fail to ensure that incarcerated people with disabilities who require assistive devices as accommodations are provided with and allowed to retain these devices, including, but not limited to, wheelchairs, walkers, eyeglasses, magnifiers, screen readers, crutches, canes, braces, tapping canes, hearing aids, and pocket talkers. . . ."  - (Note: "Liberty itself" is not mentioned.) |
| "Plaintiffs allege that Liberty fails to 'adequately train staff on how to visually identify people with mobility disabilities.  Citing SAC ¶269 | "269.  The SHERIFF'S DEPARTMENT endangers incarcerated people with mobility disabilities by failing to institute any system for staff to visually identify people with mobility disabilities.  Upon information and belief, the SHERIFF'S DEPARTMENT and CONTRACTOR DEFENDANTS fail to adequately train staff how to visually identify people with mobility disabilities."   Note – Liberty is not mentioned. |

In sum, because the Opposition misrepresents the actual SAC allegations, the Court must disregard the Opposition papers and focus instead on the text of the SAC itself.  When the allegations of the SAC (or taken together with the contract,) are analyzed on their face, they simply do not contain sufficient facts to support the Sixth or Eighth Causes of Action for discrimination as to Liberty.

**B. The Sixth and Eighth Causes Of Action Lack Sufficient Specificity To State A Valid Claim For Relief As Against Liberty**

As it relates to Liberty, the SAC is 214 pages of confusing boilerplate allegations.  In fact, it is so confusing that Liberty cannot decipher which inmates Plaintiffs claim are subject to the ADA and Unruh Act.  The Opposition appears

[2] Liberty's Contract with the County does not require Liberty to provide assistive devices.

to contend that *every inmate who receives mental health care* of some form or another, qualifies as "disabled" under the ADA and Unruh Act. ("Liberty's Motion entirely ignores Plaintiffs' extensive allegations that Liberty discriminates against and fails to accommodate people with mental health disabilities." (Opp. 1:24-26)) If this is true, and every inmate receiving mental health treatment from Liberty is "disabled", then everyone in the general population who sees a therapist also falls under the American with Disabilities Act, and we know that this is not true. Taking this argument to its logical conclusion, if all of Liberty's patients fall under the ADA and Unruh Act definition of "disabled", it is logically impossible for Liberty to discriminate against inmates with mental health issues because it is only treating one category of inmates.[3] Further, if Plaintiffs are correct, and every Liberty patient falls under the ADA and Unruh Act, the SAC fails to provide specific facts supporting its conclusory allegations that Liberty (as opposed to other defendants) failed to meet its obligations to provide screening and mental health treatment to these inmates.

Even if Plaintiffs are contending that only some of the inmates treated by Liberty are "disabled" as defined by the ADA and Unruh Act, (vision, hearing, mobility or intellectual disabilities, etc.), the SAC still does not adequately assert facts supporting the Sixth and Eighth causes of action as to Liberty. Despite what Plaintiffs claim in their Opposition, the SAC does not include "extensive allegations" that Liberty violates the statutory rights of individuals with disabilities. (Opp. 7:13-15). For example, as mentioned above, Plaintiffs claim that the SAC alleges, at ¶212, that Liberty fails to provide accommodations to people with disabilities, resulting in the provision of inadequate mental health care. Yet the true text of paragraph 212 states:

---

[3] According to the New Oxford American Dictionary, "discriminate" is defined as "to make an unjust or prejudicial distinction in the treatment of different categories of people".

COUNTY DEFENDANTS incarcerate significant numbers of individuals with disabilities, as that term is defined in the ADA, the Rehabilitation Act, and California's Unruh Act.  By policy and practice, COUNTY DEFENDANTS and CONTRACTOR DEFENDANTS routinely fail to provide incarcerated people with disabilities reasonable accommodations and to ensure meaningful and equal access to all of the programs and services offered by the Jail.  These actions and inactions significantly increase the risk of substantial harm to incarcerated people with disabilities.  Moreover, COUNTY DEFENDANTS' and CONTRACTOR DEFENDANTS' refusal to accommodate incarcerated people with disabilities results in the provision of inadequate medical, mental health, and dental care.

This boilerplate and conclusory language does not attribute any specific actions or inactions to Liberty.  There are no examples of Liberty denying its mental health patients access to reasonable accommodations or assistive devices.  Nor does Liberty's contract with the County require it to identify individuals with disabilities during the intake process.  In short, Liberty cannot be included in the Sixth and Eighth Causes of action for violations of the ADA and Unruh Act when the Complaint does not adequately allege what, if anything, Liberty specifically did or failed to do.

## IV.    CONCLUSION

For the reasons set forth above, Liberty requests that the Court grant its Motion to Dismiss as to the Sixth and Eighth Causes of Action of the Second Amended Complaint. Respectfully submitted,

Dated: June 17, 2022

ERICKSEN ARBUTHNOT
/s/ *Sharon L. Hightower*

_____
Sharon L. Hightower
Laura E. Malkofsky
Attorneys for Defendant
LIBERTY HEALTHCARE CORPORATION

- 10 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: June 17, 2022                 LEWIS, BRISBOIS, BISGAARD & SMITH

/s/ *Marilyn R. Moriarty*

_____

Marilyn R. Moriarty
Attorneys for Defendant
LIBERTY HEALTHCARE CORPORATION

- 11 -

CASE NAME: DUNSMORE v. SAN DIEGO COUNTY SHERIFF'S DEPARTMENT
ACTION NO: 3:20-cv-00406-AJB-WVG

## **CERTIFICATE OF SERVICE**

I declare that I am employed in the County of Santa Clara, California. I am over the age of eighteen (18) years and not a party to the within cause; my business address is 210 No. Fourth Street, Suite 350, San Jose, CA 95112.

I served the attached: *REPLY IN SUPPORT OF DEFENDANT LIBERTY HEALTHCARE, CORPORATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CIVIL CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF [FRCP 12(b)(6)]* on the interested parties in said cause, using the following method:

/ /   (**BY MAIL**) I placed each sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at San Jose, California, following ordinary business practices. I am readily familiar with the practice of ERICKSEN ARBUTHNOT for the processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for processing.

/ /   (**BY PERSONAL SERVICE**) I caused each such envelope to be delivered by hand to the addressee(s) noted below.

/ /   (**BY FEDERAL EXPRESS**) The foregoing document was placed in a sealed envelope provided by Federal Express/UPS, designated as overnight (delivery by next business day) with delivery fees paid or provided for and addressed as stated below. I deposited such envelope in the Federal Express/UPS collection box at 210 North Fourth Street, San Jose, California.

/ /   (**BY FACSIMILE**) I caused the said document to be transmitted by facsimile machine to the facsimile number indicated after the address(es) noted below. Such transmission was verified as complete and without error.

/XX/   (**BY ELECTRONIC SERVICE**) Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed below. OR: The above-described document(s) will be delivered electronically through the Court's electronic filing system.

/ /   (**ELECTRONIC SERVICE VIA ONE LEGAL**) Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the above-entitled document to be served through One Legal at www.onelegal.com addressed to all parties appearing on the electronic service list for the above-entitled case. The service transmission was reported as complete and a copy One Legal Receipt Page/ Confirmation will be filed, deposited or maintained with the original document in this office. All parties that do not appear on the electronic service list will be sent a copy by US Mail.

## **ATTORNEYS FOR PLAINTIFF DARRYL DUNSMORE:**

Christopher M. Young
DLA Piper US
401 B Street
Suite 1700
San Diego, CA 92101-4297
P: (619) 699-2700/ Fax: (619) 699-2701
Email: christopher.young@dlapiper.com

- 12 -

1    Gay Crosthwait Grunfeld
     Rosen Bien Galvan & Grunfeld, LLP
2    101 Mission Street
     Sixth Floor
3    San Francisco, CA 94105
     P: 415-433-6830 / Fax: 415-433-7104
4    Email: ggrunfeld@rbgg.com
5
     Isabella Maria Neal
6    4084 Eagle Street
     Apartment B
7    San Diego, CA 92103
     360-915-3920
8    Email: isabella.neal@us.dlapiper.com
9
     Oliver M. Kiefer
10   DLA Piper LLP (US)
     401 B Street
11   Suite 1700
     San Diego, CA 92101
12   619-699-2781
     Email: oliver.kiefer@us.dlapiper.com
13
14
     Aaron J. Fischer
15   Law Office of Aaron J. Fischer
     2001 Addison Street
16   Suite 300
     Berkeley, CA 94704
17   510-806-7366
     Fax: 510-694-6314
18   Email: ajf@aaronfischerlaw.com
19
20   Bardis Vakili
     ACLU Foundation of San Diego & Imperial Counties
21   P.O. Box 87131
     San Diego, CA 92138-7131
22   (619) 232-2121 / Fax: (619) 232-0036
     Email: bvakili@aclusandiego.org
23
24   Eric D. Monek Anderson
25   Rosen Bien Galvan & Grunfeld LLP
     101 Mission Street
26   Sixth Floor
     San Francisco, CA 94105
27   415-433-6830
     Email: eanderson@rbgg.com
28

- 13 -

1  Jonathan Paul Markovitz
   ACLU of San Diego & Imperial Counties
2  P.O. Box 87131
   San Diego, CA 92138
3  619-232-2121 / Fax: 619-232-0036
   Email: jmarkovitz@aclusandiego.org
4

5  Priyah Kaul
   Rosen Bien Galvan & Grunfeld LLP
6  101 Mission Street
   Sixth Floor
7  San Francisco, CA 94105
   415-433-6830
8  Email: pkaul@rbgg.com

9

10 **ATTORNEY FOR PLAINTIFFS:**
   *Josue Lopez, Christopher Nelson, Reanna Levy,*
11 *Christopher Norwood, Ernest Archuleta, Anthony Edwards,*
   *Laura Zoerner*
12

13 Richard Van Swearingen
   Rosen Bien Galvan & Grunfeld, LLP
14 101 Mission Street
   Sixth Floor
15 San Francisco, CA 94105
   415-433-6830
16 Fax: 415-433-7104
   Email: vswearingen@rbgg.com
17

18 **ATTORNEY FOR DEFEDANT SD SHERIFF DEPT.:**

19 Ronald Lenert
   County of San Diego Office of County Counsel
20 1600 Pacific Highway, Room 355
   San Diego, CA 92101
21 (619) 531-4860 Fax: 619-531-6005
   E-mail: Ronald.;emert@sdcounty.ca.gov
22

23 **ATTORNEY FOR DEFENDANT MID-AMERICA HEALTH, INC.**

24 Christopher Thomas Grohman
   Taft Stettinius & Hollister LLP
25 111 East Wacker, Suite 2800
   Chicago, IL 60601
26 (312) 515-7313
   E-mail: egrohman@taftlaw.com
27

28

- 14 -

1    I declare under penalty of perjury under the laws of the State of California that the foregoing is

2    true and correct, and that this declaration was executed on June 17, 2022, at San Jose, California.

JENNIFER L. SHARPE

4885-9621-8661.2

Case No. 3:20-cv-00406-AJB-WVG

REPLY IN SUPPORT OF DEFENDANT LIBERTY HEALTHCARE CORP.'S MOTION TO DISMISS