GAY CROSTHWAIT GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email:     ggrunfeld@rbgg.com
           vswearingen@rbgg.com
           pkaul@rbgg.com
           eanderson@rbgg.com
           hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
2001 Addison Street, Suite 300
Berkeley, California 94704-1165
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
Email:     ajf@aaronfischerlaw.com

(*additional counsel on following page*)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ERNEST ARCHULETA, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, CORRECTIONAL HEALTHCARE PARTNERS, INC., LIBERTY HEALTHCARE, INC., MID-AMERICA HEALTH, INC., LOGAN HAAK, M.D., INC., SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No. 3:20-cv-00406-AJB-WVG <br><br> **PLAINTIFFS' OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** <br><br> Judge:   Hon. Anthony J. Battaglia |

[4112580.2]

1  (*counsel continued from preceding page*)

2  CHRISTOPHER M. YOUNG – 163319
   ISABELLA NEAL – 328323
3  OLIVER KIEFER – 332830
   DLA PIPER LLP (US)
4  401 B Street, Suite 1700
   San Diego, California  92101-4297
5  Telephone:   (619) 699-2700
   Facsimile:   (619) 699-2701
6  Email:        christopher.young@dlapiper.com
                 isabella.neal@dlapiper.com
7                oliver.kiefer@dlapiper.com

8  BARDIS VAKILI – 247783
   JONATHAN MARKOVITZ – 301767
9  ACLU FOUNDATION OF SAN DIEGO &
   IMPERIAL COUNTIES
10 2760 Fifth Avenue, Suite 300
   San Diego, California  92103-6330
11 Telephone:   (619) 232-2121
   Email:        bvakili@aclu-sdic.org
12               jmarkovitz@aclu-sdic.org

13 Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................. 1

STATEMENT OF FACTS ............................................................................... 2

LEGAL STANDARD ...................................................................................... 4

ARGUMENT .................................................................................................... 5

I.  PLAINTIFFS EXHAUSTED ADMINISTRATIVE REMEDIES AND, IN ANY EVENT, FAILURE TO EXHAUST IS NOT A PROPER ARGUMENT FOR A MOTION TO DISMISS ......................................... 5

II.  PLAINTIFFS' CLASS ALLEGATIONS SHOULD NOT BE STRICKEN ............................................................................................... 8

III.  THE PLRA DOES NOT BAR PLAINTIFFS' REQUESTED INJUNCTIVE RELIEF ................................................................................ 11

IV.  THE SAC STATES A CLAIM FOR DISCRIMINATION AGAINST PEOPLE WITH DISABILITIES CONTRIBUTING TO UNNECESSARY INCARCERATION ........................................................ 12

V.  THERE IS NO BASIS FOR THE COURT TO LIMIT PLAINTIFFS' CLAIMS ...................................................................................................... 15

CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Akhtar v. J. Mesa*,
    698 F.3d 1202 (9th Cir. 2010) ................................................................ 5

*Albino v. Baca*,
    747 F.3d 1162 (9th Cir. 2014) (en banc) .......................................... 6

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ...................................................... 9, 10, 11

*Armstrong v. Schwarzenegger*,
    622 F.3d 1058 (9th Cir. 2010) ...................................................... 11, 12

*Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.*,
    648 F.3d 986 (9th Cir. 2011) .................................................................. 4

*Bennett v. N. Am. Bancard, LLC*,
    2022 WL 581828 (S.D. Cal. Feb. 25, 2022) .................................... 8

*Black v. Dep't of Mental Health*,
    83 Cal. App. 4th 739 (2000) ............................................................... 14

*Braggs v. Dunn*,
    257 F. Supp. 3d 1171 (M.D. Ala. 2017) ....................................... 16

*Gomez v. Vernon*,
    255 F.3d 1118 (9th Cir. 2001) ......................................................... 12

*Gray v. Cty. of Riverside*,
    2014 WL 5304915 (C.D. Cal. Sept. 2, 2014) ................................ 16

*Griffin v. Arpaio*,
    557 F.3d 1117 (9th Cir. 2009) ........................................................... 6

*Henry A. v. Willden*,
    678 F.3d 991 (9th Cir. 2012) .............................................................. 4

*Hernandez v. Cty. of Monterey*,
    110 F. Supp. 3d 929 (N.D. Cal. 2015) ........................................... 11

*Hernandez v. Cty. of Monterey*,
    305 F.R.D. 132 (N.D. Cal. 2015) ................................................. 9, 16

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ............................................. 4

*Jones v. Bock*,
    549 U.S. 199 (2007) ............................................................................. 5

*M.D. ex rel. Stukenberg v. Perry*,
    675 F.3d 832 (5th Cir. 2012) .................................................................. 10, 11

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) ......................................................................... 4

*Morgan v. Ariz. Dep't of Corrs.*,
    976 F. Supp. 892 (D. Ariz. 1997) .................................................................. 6

*Morrelli v. Corizon Health, Inc.*,
    2019 WL 918210 (E.D. Cal. Feb. 25, 2019) ................................................ 8

*Nevarez v. Forty Niners Football Co.*,
    474 F. Supp. 3d 1041 (N.D. Cal. 2020) ...................................................... 16

*Nevarez v. Forty Niners Football Co., LLC*,
    2019 WL 13148141 (N.D. Cal. Feb. 5, 2019) ............................................. 15

*Olmstead v. L.C. ex rel. Zimring*
    527 U.S. 581 (1999) .................................................................................... 15

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ............................................................. 1, 9, 16

*Rosales v. Citibank, Fed. Sav. Bank*,
    133 F. Supp. 2d 1177 (N.D. Cal. 2001) ........................................................ 5

*Ross v. Baker*,
    578 U.S. 632 (2016) ...................................................................................... 7

*Simpson v. Best W. Int'l, Inc.*,
    2012 WL 5499928 (N.D. Cal. Nov. 13, 2012) .............................................. 8

*Sony Biotechnology, Inc. v. Chipman Logistics and Relocation*,
    17-CV-1292-AJB-WVG, 2017 WL 3605500 (S.D. Cal. Aug. 22, 2017) ....... 17

*Thomas v. County of Los Angeles*,
    978 F.2d 504 (9th Cir. 1992) ....................................................................... 12

*Turner v. Safley*,
    482 U.S. 78 (1987) ...................................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................... 10

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ......................................................................... 4

*Williams v. Paramo*,
    775 F.3d 1182 (9th Cir. 2015) ................................................................... 6, 7

*Zamani v. Carnes*,
    491 F.3d 990 (9th Cir. 2007) ......................................................................... 1

1

## **<u>OTHER AUTHORITIES</u>**

5B Federal Practice and Procedure
    (Wright & Miller) § 1357 (3d ed. 2022) ...........................................................4

Fed. Rule of Civ. Proc. 12 ...............................................................................4

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Plaintiffs' Second Amended Complaint ("SAC") challenges a variety of policies and practices at the San Diego County Jail (the "Jail"), including those related to medical and mental health care, environmental hazards, and disability accommodations, which systematically violate the rights of all people incarcerated there.  Class action lawsuits against criminal detention facilities, like this one, are "firmly established in our constitutional law."  *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014).

In the motion to dismiss (Dkt. 133, the "Motion") filed by the County of San Diego, the San Diego County Sheriff's Department, and the San Diego County Probation Department (collectively, "County Defendants"),[1] County Defendants raise a variety of disparate and meritless procedural arguments in their attempt to avoid judicial scrutiny of the situation in the Jail:

First, County Defendants contend that Plaintiffs failed to exhaust their administrative remedies.  But exhaustion is appropriately raised as an affirmative defense (rather than in a Rule 12(b)(6) motion).  Moreover, Plaintiffs have alleged not only that they did in fact exhaust administrative remedies but also that the grievance process at the Jail is unavailable.

Second, County Defendants seek to strike all class allegations, but the Proposed Class and Subclass are appropriately defined and plainly consistent with Ninth Circuit law.  In any event, a challenge to the class definition is premature.

Third, County Defendants claim that "Plaintiffs' lawsuit for injunctive relief fails as a matter of law," Mot. at 12, because it fails the needs-narrowness-

---

[1] Although the Motion asserts that the County of San Diego is "erroneously sued herein as San Diego County Sheriff's Department and San Diego County Probation Department," *see* Notice of Motion at 1-2, neither the Sheriff's Department or Probation Department have moved to be dismissed in those capacities and/or on any grounds.  *Cf. Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

intrusiveness test under the Prison Litigation Reform Act ("PLRA"). The proposed injunctive relief, however, is appropriately tailored in that it asks County Defendants themselves to develop and implement a remedial plan to address the unconstitutional and illegal conditions at the Jail.

Fourth, County Defendants assert that "Plaintiffs' case is unmanageable," Mot. at 17, and request that the court exercise discretion to narrow Plaintiffs' claims. This request has no merit, as courts in this Circuit are eminently capable and routinely handle complex class action cases, including jail and prison cases involving numerous alleged issues.

As to the specific claims in Plaintiffs' SAC, County Defendants challenge only two of Plaintiffs' causes of action—out of fourteen addressed to them—the Eighth and Fourteenth causes of action. Plaintiffs concede that a claim under the Unruh Act (Eighth cause of action) does not lie against County Defendants and should be dismissed as to those Defendants only. But County Defendants' challenge to Plaintiffs' Americans with Disabilities Act integration claim (Fourteenth cause of action) fails because the SAC clearly alleges that the County administers diversion programming and other alternatives to incarceration, yet provides them on a discriminatory basis to the detriment of people with disabilities.

As to every claim except the Eighth cause of action, the Motion should be denied. Plaintiffs' systemic challenge to Jail policies and practices should go forward.

## STATEMENT OF FACTS

Plaintiffs' SAC provides detailed allegations of the unconstitutional and unlawful policies and practices administered by County Defendants—and includes vivid examples of the harm caused by those policies—such as failing to provide adequate medical, dental, and vision care; failing to provide minimally adequate mental health care; discriminating against and failing to accommodate incarcerated people with disabilities; failing to ensure adequate environmental health conditions;

failing to ensure that the Jail is safe and secure; denying incarcerated people's access to the courts; and discriminating against people with disabilities and on the basis of race in diversion programming. *See generally*, SAC.

Specifically relevant to particular arguments in County Defendants' Motion:
**_Disability Discrimination as to Alternatives-to-Incarceration Programs._**

The SAC alleges that the County provides programs as alternatives to incarceration for some pretrial detainees, but that it illegally discriminates against people with disabilities in the administration of these programs. For example, the County runs a "Home Detention" program, under which "a person may reside at their home with a GPS monitor in lieu of confinement at the Jail." *Id.* ¶ 341. Similarly, "the COUNTY has a pre-trial mental health diversion program." *Id.* ¶ 344. The SAC alleges, however, that such alternatives to incarceration or diversion programming lack "adequate capacity and reach" and are provided on a discriminatory basis. *See id.* ¶ 454. In particular, the SAC alleges that "the SHERIFF'S DEPARTMENT uses discriminatory eligibility criteria that unnecessarily limit the people who may receive Home Detention," *id.* ¶ 341, and that the separate mental health diversion program "is available to at most 30 participants at any given time." *Id.* ¶ 344. As a result, many people with mental health disabilities and other disabilities remain incarcerated while awaiting trial at a disproportionate rate. *See id.*

**_Exhaustion to Administrative Remedies._** In addition, Plaintiffs have repeatedly submitted grievances—or tried to—on the many deficiencies with Jail policies enumerated in the SAC. *Id.* ¶¶ 22, 24, 27, 79, 82, 104, 253, 255-56, 259, 323. Plaintiffs have also sought care outside of the grievance process. For example, Christopher Norwood repeatedly requested certain health care to address his needs. *See, e.g.*, *id.* ¶¶ 26, 65, 156, 167, 325. The SAC further alleges that the grievance process at the Jail is systematically unavailable and deficient, rendering any argument that Plaintiffs' claims should be dismissed for failure to exhaust without

merit. *Id.* ¶¶ 251-263.

When their attempts to utilize administrative procedures to address these dangerous and unlawful conditions were unsuccessful, Plaintiffs, on behalf of all those similarly situated, filed the instant suit, asking this Court to require County Defendants to draft a plan to remedy these violations of the law. *See* SAC at pp. 209-13.

## LEGAL STANDARD

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020). "All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists." 5B Federal Practice and Procedure (Wright & Miller) § 1357 (3d ed. 2022). Dismissal is proper only "if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011). Moreover, even if the motion to dismiss is granted, "a district court should grant leave to amend" unless the complaint "could not possibly be cured by the allegation of other facts." *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012) (citations omitted).

Under Federal Rule of Civil Procedure 12(f), a court may strike "from a pleading … any redundant, impertinent, or scandalous matter." "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)).

"Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delay tactic." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007). As such, Rule 12(f) motions are "generally not granted

1   unless it is clear that the matter sought to be stricken could have no possible bearing
2   on the subject matter of the litigation." *Rosales v. Citibank, Fed. Sav. Bank*, 133 F.
3   Supp. 2d 1177, 1180 (N.D. Cal. 2001).

4                                **ARGUMENT**

5          The SAC contains fourteen causes of action directed against County
6   Defendants.  County Defendants' Motion does not challenge the majority of these
7   causes of action, including that County Defendants have:  failed to provide adequate
8   medical, mental health, and dental care to incarcerated people (First through Fourth
9   causes of action); failed to ensure adequate environmental health and safety
10  conditions (First through Fourth causes of action); discriminated against and failed
11  to accommodate incarcerated people with disabilities (Fifth, Seventh, and Ninth
12  causes of action); interfered with incarcerated people's access to effective assistance
13  of counsel and to the courts (Tenth through Thirteenth causes of action); and
14  overincarcerated people of color (Fifteenth cause of action).

15         Instead, County Defendants' Motion challenges only two causes of action
16  directly and raises unpersuasive— and procedurally deficient—arguments against
17  the SAC as a whole.  Although Plaintiffs concede that the County is not a proper
18  defendant under the Unruh Act and that claim should be dismissed as to County
19  Defendants only, the remainder of County Defendants' Motion should be denied.
20  This case, which seeks remedial actions to address serious and dangerous
21  deficiencies at the Jail, must proceed.

22  **I.     Plaintiffs Exhausted Administrative Remedies and, in Any Event, Failure
23          to Exhaust Is Not a Proper Argument for a Motion to Dismiss**

24         "The failure to exhaust administrative remedies is an affirmative defense on
25  which the defendant bears the burden of proof."  *Akhtar v. J. Mesa*, 698 F.3d 1202,
26  1210 (9th Cir. 2010); *see also Jones v. Bock*, 549 U.S. 199, 204, 212 (2007).
27  County Defendants therefore "must produce evidence proving failure to exhaust in
28  order to carry their burden" in a motion for summary judgment, except in the "rare

1   event that a failure to exhaust is clear on the face of the complaint." *Albino v. Baca*,

2   747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).

3       This case is far from the "rare" occurrence hypothesized by the Ninth Circuit

4   in *Albino*. The County Defendants agree that the SAC alleges that Plaintiffs

5   submitted grievances. Mot. at 6; *see also* SAC ¶¶ 22, 24, 27, 79, 82, 104, 253, 255-

6   56, 259, 323 (describing examples of grievances filed by Plaintiffs); *see also id.*

7   ¶ 439 ("From at least August 2021 to January 2022, through grievances submitted to

8   the Jail, PLAINTIFFS and the Incarcerated People Class they represent demanded

9   that the COUNTY, SHERIFF'S DEPARTMENT, and TRI-CITY stop their

10  unlawful discriminatory conduct described above."). And, contrary to County

11  Defendants' characterization of those allegations as "scant references to grievances

12  with respect to only some of the plaintiffs," Mot. at 6, the SAC contains specific

13  allegations of seven out of eight named plaintiffs submitting a "grievance" on a

14  relevant issue or attempting to do so. The remaining plaintiff, Christopher

15  Norwood, has repeatedly "requested" specific health care treatment, *see, e.g.*, *id.*

16  ¶¶ 26, 65, 156, 167, 325, and, in any event, a grievance submitted by Mr. Norwood

17  is already on file in this litigation. *See* Dkt. 162-2 at ¶ 15 & Ex. L.[2]

18      None of the cases cited by County Defendants support their contention. Most

19  cases cited in the Motion pre-date the Ninth Circuit's decision in *Albino*, in which

20  the Court clarified that exhaustion should generally be decided on a motion for

21  summary judgment. Mot. at 6 (citing *Griffin v. Arpaio*, 557 F.3d 1117 (9th Cir.

22  2009); *Morgan v. Ariz. Dep't of Corrs.*, 976 F. Supp. 892 (D. Ariz. 1997)). In

23  County Defendants' only case post-dating *Albino*, *Williams v. Paramo*, 775 F.3d

24  1182 (9th Cir. 2015), the Ninth Circuit remanded a grant of summary judgment to

25

26  [2] County Defendants also claim that they "could and would file declarations and
    other evidence … demonstrating that none of the named Plaintiffs have exhausted
27  the administrative process," Mot. at 6 n.3. Plaintiffs have already rebutted that
    promise of evidence in their Reply to the County's Opposition to Plaintiffs' Motion
    for Preliminary Injunction and Provisional Class Certification. *See* Dkt. 162-2 at ¶¶
28  15-22 & associated exhibits (grievances filed by plaintiffs).

defendants on the issue of exhaustion, because the defendants had failed to meet their evidentiary burden.  In light of the burden-shifting test outlined in *Albino*, the Court should deny County Defendants' motion to dismiss on the issue of exhaustion.

In addition, the SAC further alleges that the grievance process at the Jail is systematically unavailable and deficient, rendering any argument that Plaintiffs' claims should be dismissed for failure to exhaust inapposite.  *See* SAC ¶¶ 251-263.  Under the PLRA, an incarcerated person "need not exhaust *unavailable*" remedies.  *Ross v. Baker*, 578 U.S. 632, 642 (2016) (emphasis added).  "[A]n administrative procedure is unavailable when (despite what regulations or guidance may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id.* at 643; *see also Williams*, 775 F.3d at 1191 ("To be available, a remedy must be available 'as a practical matter'; it must be capable of use, at hand.") (citation omitted).  For example, if incarcerated people are directed "to submit their grievances to a particular administrative office," but "in practice that office disclaims the capacity to consider those petitions," the exhaustion requirement does not apply.  *Ross*, 578 U.S. at 643.  Similarly, if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," the exhaustion requirement does not apply.  *Id.* at 644.

The SAC plainly alleges that the Jail's administrative remedies are unavailable for the very reasons that the Supreme Court described in *Ross*:  "The SHERIFF'S DEPARTMENT lacks adequate policies and procedures for responding to grievances," including by "fail[ing] timely and adequately respond to grievances," "fail[ing] to adequately train staff … how to receive … grievances," "refus[ing] to accept grievance forms directly," "fail[ing] to provide … receipt[s]," "argu[ing] that grievances filed on the Jail's grievance forms are not in fact grievances," and at times "overtly interfer[ing] with the grievance process."

1  SAC ¶¶ 252-53, 255.[3]  As such, the PLRA's exhaustion requirement cannot be a

2  ground for dismissal.

3  **II.    Plaintiffs' Class Allegations Should Not Be Stricken**

4         County Defendants seek to strike Plaintiffs' class allegations under

5  Rule 12(f), arguing generally that Plaintiffs fail to meet the Rule 23(a)(2) and (3)

6  requirements of typicality and commonality because "[e]ach of the named Plaintiffs

7  suffers from a specific illness or disability," and "the applicable facts and law are so

8  divergent that they cannot reasonably or feasibly be addressed in this Class Action."

9  Mot. at 9.  County Defendants' argument is not only procedurally improper, but it

10  also ignores clear Ninth Circuit precedent.

11         As an initial matter, dismissal of class allegations "at the pleading stage is

12  rare."  *Bennett v. N. Am. Bancard, LLC*, 2022 WL 581828, at *2 (S.D. Cal. Feb. 25,

13  2022) (Battaglia, J.) (citation omitted).  "[A]lthough a defendant is not prohibited

14  from moving to strike allegations before the motion for class certification, courts

15  often decline to grant such motions 'because the shape and form of a class action

16  evolves only through the process of discovery.'"  *Id.* (quoting *Simpson v. Best W.*

17  *Int'l, Inc.*, 2012 WL 5499928, at *9 (N.D. Cal. Nov. 13, 2012)).  As this Court has

18  explained, "a class action is a procedural device, not a claim for relief."  *Id.* (quoting

19  *Morrelli v. Corizon Health, Inc.*, 2019 WL 918210, at *12 (E.D. Cal. Feb. 25,

20  2019)).  Therefore, striking Plaintiffs' class allegations would be appropriate only

21  "if the claim could not possibly proceed on a classwide basis."  *Id.*

22         Far from the rare case where a class action plainly cannot be maintained,

23  Plaintiffs' Proposed Class of "all adults who are now, or will be in the future,

24  incarcerated in any of the San Diego County Jail facilities" follows directly from

25  binding precedent.  The Ninth Circuit has explained that class actions challenging

26

27  [3] The record also shows that Plaintiffs in fact submitted grievances that were never
    responded to, and therefore that administrative remedies were unavailable.  *See, e.g.*,
28  Dkt. 162-2 at ¶¶ 15, 17, 20; Dkt. 119-14 at ¶ 25.

"policies and practices of [facility-wide] and systemic application" that "expose all inmates in [an institution's] custody to a substantial risk of serious harm" are "firmly established in our constitutional law." *Parsons*, 754 F.3d at 676.  The Ninth Circuit and district courts in California have therefore repeatedly certified classes of incarcerated individuals seeking injunctive relief to remedy corrections officials' unconstitutional and unlawful policies and practices.  *See, e.g.*, *id.*; *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 163 (N.D. Cal. 2015) (certifying class and subclass defined as: "all adult men and women who are now, or will be in the future, incarcerated in Monterey County Jail" and "all qualified individuals with a disability … and who are now, or will be in the future, incarcerated in Monterey County Jail").

For example, similar to Plaintiffs' SAC in this case, the *Parsons* complaint identified "a number of statewide, uniform [] policies and practices"—such as "'dangerous delays in receiving' care and 'outright denials of health care,'" "failure to provide timely access to medically necessary specialty care," and "provisions of substandard mental health care"—and alleged "that these policies and practices expose all members of the proposed class and subclass to a substantial risk of serious harm."  754 F.3d at 663-68.  The *Parsons* plaintiffs—like Plaintiffs here— provided factual examples of individuals' experiences in the prison "as evidence of the defendants' unlawful policies and practices, and as examples of the serious harm to which all inmates in ADC custody are allegedly exposed."  *Id.* at 672.  The Ninth Circuit affirmed certification of a class consisting of "all prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC [Arizona Department of Corrections]."  *Id.* at 678.

Likewise, in *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001), disabled individuals and parolees brought a class action against prison officials alleging that policies and practices for parole and parole revocation proceedings violated the ADA and Rehabilitation Act.  The Ninth Circuit affirmed certification of a class of

"all present and future California state prisoners and parolees with mobility, sight, hearing, learning, developmental and kidney disabilities that substantially limit one or more of their major life activities." *Id.* at 856-57.

At the class certification stage, the Ninth Circuit in *Parsons* rejected the very argument that County Defendants prematurely make here:  that, under the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), Plaintiffs failed to establish commonality.  Mot. at 11-12.  In *Parsons*, defendants argued that "a systemic constitutional violation" of the kind alleged "'is a collection of individual constitutional violations,' each of which hinges on 'the particular facts and circumstances of each case,'" and therefore such a claim failed the commonality test articulated in *Wal-Mart*.  754 F.3d at 675 (quoting defendants' briefing).  The Ninth Circuit rejected that argument, explaining that defendants had "fundamental[ly] misunderst[ood] … *WalMart*, Eighth Amendment doctrine, and the plaintiffs' constitutional claims." *Id.* at 676.  That "a presently existing risk may ultimately result in different future harm for different inmates" is not material to the issue of commonality in a "systemic, future-oriented Eighth Amendment claim." *Id.* at 677-78.  "[E]very inmate suffers exactly the same constitutional injury when he is exposed to a single . . . policy or practice that creates a substantial risk of serious harm." *Id.* at 678.

County Defendants overlook *Parsons* and *Armstrong*, and instead principally rely on an easily distinguishable Fifth Circuit decision.  Mot. at 11-12 (citing *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012)).  In *M.D.*, a case brought by nine children seeking to challenge deficiencies in Texas's administration of its long-term foster care system, the Fifth Circuit concluded that the district court did not sufficiently analyze underlying causes of action before certifying the class and remanded for the district court to analyze "the elements and defenses and requisite proof for each of the proposed class claims."  675 F.3d at 843-44.  Here, the Ninth Circuit analyzed the elements, defenses, and requisite proof for a class case

1  challenging conditions of confinement in criminal detention in *Parsons*, and

2  determined that such a claim should proceed on a class-wide basis.  *See* 754 F.3d at

3  676-80; *see also Armstrong*, 275 F.3d at 868 ("the differences that exist here do not

4  justify requiring groups of persons with different disabilities, all of whom suffer

5  similar harm from the Board's failure to accommodate their disabilities, to prosecute

6  separate actions").

7  **III.    The PLRA Does Not Bar Plaintiffs' Requested Injunctive Relief**

8         Plaintiffs' request that County Defendants develop a plan to remedy

9  constitutional and statutory violations is not, as County Defendants contend, "wide-

10  ranging and uncertain," nor would it "run afoul of the PLRA and equity doctrine

11  requirements that injunctive relief be as minimally intrusive as possible."  Mot. at

12  13-14.  The Ninth Circuit has held that injunctions that give defendants leeway to

13  design and implement a remedial plan are consistent with applicable law.  *See*

14  *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010) ("Allowing

15  defendants to develop policies and procedures … is precisely the type of process

16  that the Supreme Court has indicated is appropriate for devising a suitable remedial

17  plan in a prison litigation case."); *see also Hernandez v. Cty. of Monterey*

18  ("*Hernandez II*"), 110 F. Supp. 3d 929, 959-60 (N.D. Cal. 2015) (ordering

19  defendants to draft jail remedial plans addressing at least 16 elements).

20         Similarly, County Defendants incorrectly claim that Plaintiffs' proposed

21  injunction does not grant sufficient "deference … to prison authorities" or otherwise

22  fails to consider public safety in remedying the alleged violations of Plaintiffs'

23  constitutional and statutory rights.  *See* Mot. at 12-13 (citing *Turner v. Safley*, 482

24  U.S. 78 (1987)).  To the contrary, the proposed injunction asks County Defendants

25  to *draft a plan themselves*—thereby ensuring that public safety considerations are

26  considered.  *See Armstrong*, 622 F.3d at 1071 ("Intrusiveness is a particularly

27  difficult issue for defendants to argue, as by ordering them to draft and promulgate a

28  plan, the district court left to defendants' discretion as many of the particulars

1 regarding how to deliver the relief as it deemed possible.").

2      The authority cited by County Defendants is unavailing. *Gomez v. Vernon*,

3 255 F.3d 1118 (9th Cir. 2001), in which the Court did not consider a class-wide

4 injunction, pre-dates Ninth Circuit decisions in *Armstrong*—a case in which

5 injunctive relief was ordered on behalf of a class of present and future people with

6 disabilities incarcerated in prisons across the entire state of California. *See* 622 F.3d

7 at 1063. And *Thomas v. County of Los Angeles*, 978 F.2d 504 (9th Cir. 1992), does

8 not even concern prison or jail policy, but rather is about policing practices. In that

9 case, the Ninth Circuit remanded because the injunctive relief was not circumscribed

10 to a particular geographic area. *Id.* at 509. Those concerns are not relevant here,

11 where all people subject to the alleged unconstitutional conduct are confined in the

12 Jail.

13 **IV.  The SAC States a Claim for Discrimination Against People with Disabilities Contributing to Unnecessary Incarceration**

14

15      In addition to Plaintiffs' claim that County Defendants discriminate against

16 incarcerated people with disabilities by failing to provide them with reasonable

17 accommodations while they are incarcerated at the Jail (which County Defendants

18 do not challenge), *see* SAC ¶¶ 419-22, Plaintiffs also allege that County Defendants

19 discriminate against incarcerated people with disabilities by denying them access to

20 diversion and reentry services. *Id.* ¶¶ 450-56. In particular, the SAC explains that

21 the County Defendants lack "adequate capacity and reach" in their "diversion and

22 reentry services" to adequately provide those services to people with disabilities,

23 and thus effectively "ration[s]" those services in a way that "discriminates against

24 people based on the severity of their disability." *Id.* ¶ 454. For example, the SAC

25 alleges that the County Defendants already maintain a "'Home Detention' program

26 available to pretrial detainees," under which "a person may reside at their home with

27 a GPS monitor in lieu of confinement at the Jail." *Id.* ¶ 341. However, "the

28 SHERIFF'S DEPARTMENT uses discriminatory eligibility criteria that

unnecessarily limit the people who may receive Home Detention." *Id.* Similarly, "the COUNTY has a pre-trial mental health diversion program, but it is available to at most 30 participants at any given time." *Id.* ¶ 344. As a result of the limited number of placements in those programs, many people with serious mental health needs remain incarcerated while awaiting trial at a disproportionate rate. *See id.*

County Defendants' arguments challenging this claim, which rely on little case law, all fail. First, County Defendants assert that Plaintiffs' claim is "nonsensical" and "unintelligible," because Plaintiffs are "already incarcerated." Mot. at 15. As explained in the SAC, the County provides programming through which pretrial detainees may be released into the community during the period that they are awaiting trial, but, due to insufficient capacity and other deficiencies, people with disabilities (including mental health disabilities) are denied participation in such programs, which amounts to a denial of program access based on disability in violation of disability anti-discrimination law. SAC ¶¶ 341-44. There is nothing nonsensical about alleging that people with disabilities are denied equal access to those programs and are harmed as a result, including by being unnecessarily incarcerated.

Second, County Defendants argue that Plaintiffs have failed to state a claim because the ADA cannot require the County to "increase capacity" of existing diversion and reentry programs. Mot. at 15. That argument fails. Plaintiffs have alleged that "[t]he lack of adequate capacity and reach regarding diversion and reentry services for people with mental health and other disabilities leads to the rationing of services that is arbitrary and/or discriminates against people based on the severity of their disability, in violation of the ADA and other relevant disability law." SAC ¶ 454. The ADA requires public entities to provide meaningful access to their services, programs, and activities by making "reasonable modifications," so long as those modifications do not "fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). If every entity could refuse to

1   accommodate people with disabilities because of a lack of capacity, the ADA's

2   "reasonable modification" requirement would have no meaning.

3          Third, County Defendants appear to misunderstand the allegation in

4   Paragraph 455, which explains that the County Defendants already provide

5   diversion programs (also known as "alternatives to incarceration" programs) and

6   reentry programs, and that incarcerated people with disabilities could be afforded

7   access to those programs without "fundamentally alter[ing]" County Defendants'

8   existing programs.  SAC ¶ 455.  County Defendants do not argue (nor could they)

9   that expanding their existing diversion programs to accommodate and serve people

10  with disabilities would fundamentally alter their existing programming.  As

11  explained above, given that County Defendants already offer alternative

12  programming for people who would otherwise be incarcerated, such as the Home

13  Detention program, there is nothing inconsistent with requiring those alternatives to

14  be made available to people with disabilities in a non-discriminatory way.

15         Fourth, County Defendants suggest that certain people with disabilities may

16  not be "suitable candidate[s] for a more integrated setting," Mot. at 15, but questions

17  about eligibility determinations go to the merits of the claim and are not an

18  appropriate basis for dismissal on a Rule 12(b)(6) motion.

19         Nor does County Defendants' lone federal court citation to a footnote in

20  *Olmstead v. L.C. ex rel. Zimring* save their argument.[4]  *See* Mot. at 15.  That

21  footnote states only that the opinion does not impose a "'standard of care' for

22  whatever medical services" are rendered to people with disabilities.  527 U.S. 581,

23

24  ───────────────
    [4] County Defendants also cite to a state court decision, *Black v. Dep't of Mental Health*, 83 Cal. App. 4th 739 (2000).  *Black*, a wrongful death and elder abuse suit,
25  is inapposite.  In that case, plaintiff's disabled brother died after being transferred from a state hospital to a private one, at which the brother allegedly received a lower
26  level of care.  *Id.* at 743-44.  The California court discussed the ADA integration mandate only as it related to whether there were *medical* reasons that community-
27  based treatment would have been inappropriate.  Contrary to County Defendants' use of the citation in their Motion, *Black* does not discuss gang membership or the
28  role of non-medical considerations in applying the integration mandate.

603 n.14 (1999).  Plaintiffs here are not advocating for a particular standard of care, but instead allege that County Defendants have discriminated in their equitable provision of diversion and reentry programs.

**V.    There Is No Basis for the Court to Limit Plaintiffs' Claims**

In a last-ditch attempt to dismiss Plaintiffs' well-pleaded claims, County Defendants urge the Court to exercise its discretion to "limit" or "narrow" Plaintiffs' claims.  Mot. at 16-17.  In so doing, County Defendants rely exclusively on actions against private companies—none of which are about conditions and care provided to thousands of people in a detention setting.  *See id.*

The Court should reject this argument out of hand.  As an initial matter, almost every single one of the cases County Defendants cite is a patent dispute, *i.e.*, a case between private companies over money.  Mot. at 16.  In contrast to those disputes, the current litigation is a civil rights dispute, in which Plaintiffs allege that County Defendants have violated the U.S. and California constitutions, exposing all people incarcerated in the County to a substantial risk of serious harm—including death.  Indeed, ten people have died in the Jail already this year.  In response to those allegations, County Defendants appear to have thrown up their hands, arguing that the problems at the Jail are so "unmanageable" that the Court should not engage with them.  The Court should not accept County Defendants' invitation to ignore the harmful and unconstitutional deficiencies that persist at the Jail.

County Defendants also cite one case about physical access barriers for individuals with disabilities, *Nevarez v. Forty Niners Football Co., LLC*, 2019 WL 13148141 (N.D. Cal. Feb. 5, 2019).  That case is distinguishable.  As County Defendants acknowledge, *see* Mot. at 16, summary judgment or trial in that case would have required a jury to analyze 2,500 individual access barriers at Levi Stadium.  The court thus issued a case management order to narrow the number of alleged physical access barriers to be litigated at what had been a scheduled 8-day trial.  *Id.* at *2-3.  The case proceeded and ultimately resulted in remediation of

thousands of physical access barriers that the plaintiffs had identified.  *See Nevarez v. Forty Niners Football Co.*, 474 F. Supp. 3d 1041, 1044 (N.D. Cal. 2020) (approving final settlement); *Nevarez v. Forty Niners Football Co.*, Case No. 16-cv-07013-LHK, at Dkts. 375-2, 391 (settlement agreement).

In this case, County Defendants point to "over 50 separate types of violations."  Mot. at 17.  At this stage, there is no credible threat that the alleged violations at issue will overwhelm the Court, and all alleged violations require a similar analysis determining whether Plaintiffs have sufficiently asserted that the Jail's policies and practices violate the law.  Courts routinely address numerous criminal detention policies and practices in a single class action, resulting in lengthy remedial plans.  *See, e.g.*, *Parsons*, 754 F.3d at 678 (challenging ten separate health care polices and additional policies related to isolation units); *Hernandez*, 305 F.R.D. at 157 (challenging 37 policies and practices in the Monterey County Jail); *Gray v. Cty. of Riverside*, 2014 WL 5304915, at *2-5, *8-11 (C.D. Cal. Sept. 2, 2014) (denying motion to dismiss is class action lawsuit challenging numerous policies related to medical and mental health care, intake procedures, privacy, and use of restraints, among others).  District courts have successfully managed similar detention setting cases of even greater complexity and scale.  *See, e.g.*, *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1180 (M.D. Ala. 2017) (describing case management through distinct phases in class action case challenging Alabama state prison system regarding deficiencies in mental health care, medical care, dental care, disability access, and more).

## CONCLUSION

For the forgoing reasons, County Defendants' Motion to Dismiss should be denied (except as to the Eighth cause of action, as to County Defendants only).  Should the Court be inclined to dismiss any other claims against County Defendants, however, Plaintiffs respectfully request that the Court grant leave to amend.  *See Sony Biotechnology, Inc. v. Chipman Logistics and Relocation*, 17-CV-

1   1292-AJB-WVG, 2017 WL 3605500, at *2 (S.D. Cal. Aug. 22, 2017) (courts

2   "should grant leave to amend unless the plaintiff could not possibly cure the defects

3   in the pleading").

4

5   DATED:  June 23, 2022              Respectfully submitted,

6                                     ROSEN BIEN GALVAN & GRUNFELD LLP

7

8                                     By: */s/ Van Swearingen*

9                                         Van Swearingen

10                                    Attorneys for Plaintiffs
11                                    Email:  vswearingen@rbgg.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT