CRAIG J. MARIAM (SBN: 225280)
cmariam@grsm.com
MICHAEL J. DAILEY (SBN: 301394)
mdailey@grsm.com
LARA S. GARNER (SBN: 234701)
lsgarner@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W Broadway, Suite 2000
San Diego, CA 92101
Tel: (619) 696-6700
Fax: (213) 680-4470

Attorneys for Defendant CORRECTIONAL HEALTHCARE PARTNERS, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, et al.<br><br>    Plaintiffs,<br><br>  v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, et al.<br><br>    Defendants. | Case No.: 3:20-cv-00406-AJB-WVG<br><br>**REPLY IN SUPPORT OF DEFENDANT CORRECTIONAL HEATLTHCARE PARTNERS, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**NO HEARING DATE REQUIRED PER CHAMBERS RULES**<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT**<br><br>Judge:       Hon. Anthony J. Battaglia<br>Magistrate:  Hon. William V. Gallo |

## I. Introduction

Plaintiffs fail to meet FRCP 8(a)(2)'s requirement of providing fair notice to Correctional Healthcare Partners, Inc. ("CHP") of claims against it. Fair notice "requires not only 'fair notice of the nature of the claim, ***but also grounds on which the claim rests***.'" (*See Zixiang Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n. 3 (2007)(emphasis added)). To the extent any allegations in the Second Amended Complaint For Declaratory and Injunctive Relief ("SAC"), and cited in Plaintiffs' Opposition, concern CHP, they are conclusory and insufficient. CHP has never had control over, or even impact on, County policies and procedures, the safety of inmates or their housing location or conditions, or whether they are provided with or permitted to retain medical equipment. And the SAC does not allege otherwise. Plaintiffs cannot so allege because the services agreement between CHP and the County, on which the Plaintiffs purport to rely in opposition, makes CHP's role clear: "to provide On-Site Physicians and Specialty Care Services for Inmates." (ECF 170-1 p. 1 of 43, Recital B.) Moreover, and importantly in that the SAC seeks only prospective relief, that services agreement was terminated subsequent to the filing of CHP's Motion to Dismiss.

The parties requested that the Court take judicial notice of the CHP's September 23, 2020 service agreement with the County ("Services Agreement"). (*See* ECF 135, ECF 170-2.) However, subsequent to the filing of CHP's Motion to Dismiss, the Services Agreement was terminated by the County of San Diego. Termination was effective on May 31, 2022, and, as Plaintiffs are aware,[1] the County has entered into a service agreement with NaphCare effective June 1, 2022. (*See* CHP's Request for Judicial Notice, Exs. C, D.) As such, Plaintiffs' reliance now on incorporation of the Services Agreement by reference into the SAC is misplaced.

---

[1] *See* ECF 153-4 ¶¶ 4, 5, Exhibit A.

- 1 -

REPLY IN SUPPORT OF CORRECTIONAL HEALTH PARTNERS, INC.'S MOTION TO DISMISS THE SAC    3:20-cv-00406-AJB-WVG

Plaintiffs' SAC lacks specific claims of inadequate medical treatment that can be attributed to CHP. And Plaintiffs' Opposition has identified none. The SAC acknowledges that CHP "provide[d] medical care staffing and services *at the Jail*." (ECF 81 ¶31 (emphasis added).) The SAC includes no allegation that CHP was responsible for hospitalizations, or for security, housing, mental health care, dental health care, or the provision of medical or assistive devices. The SAC further acknowledges that CHP was subject to "the Sherriff's Department's policies and procedures." (*Id.*)

The generic allegations actually raised in the SAC—none particular to CHP—are insufficient. The allegations do not entitle Plaintiffs to the relief sought. And regardless, the declaratory and injunctive relief sought is not within the control of CHP.

## II.     The Now-Terminated Services Agreement

CHP does not oppose Plaintiffs' request that the Court consider the now-terminated Services Agreement as if it were incorporated by reference into the SAC. The Services Agreement was operative from September 23, 2020 through and terminating on May 31, 2022. (*See* RJN, Ex. C.) Plaintiffs, in their SAC and now their Opposition, identify no failure to provide care that was within the purview of CHP during that timeframe. There are no allegations in the SAC that care or treatment provided by CHP fell below the standard of care. There are no allegations that CHP failed to see any inmate referred for services.

To the extent Plaintiffs' allegations contradict the Services Agreement, those allegations should be disregarded. *Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 942 (S.D. Cal. 2021) ("plaintiffs may plead themselves out of court by attaching exhibits inconsistent with their claims because the court may disregard contradictory allegations"); *See also Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007–08 (9th Cir. 2015) (noting that courts "need

- 2 -

REPLY IN SUPPORT OF CORRECTIONAL HEALTH PARTNERS, INC.'S MOTION TO DISMISS THE SAC          3:20-cv-00406-AJB-WVG

*Gordon Rees Scully Mansukhani, LLP*
*101 W Broadway, Suite 2000*
*San Diego, CA 92101*

not accept as true allegations contradicting documents that are referenced in the complaint").

The Services Agreement, of which Plaintiffs request this Court take judicial notice, was just that—an agreement to provide physician services. (*See* for example ECF 170-1 p. 1 of 43, Recital B ("This Agreement is to provide On-Site Physicians and Specialty Care Services for Inmates." (ECF 170-1 p. 1 of 43, Recital B, C (Agreement to provide services), Recital D (CHP "is a physicians' group"), Recital E (CHP "is specially trained…to perform these services".) The Services Agreement is not an agreement to provide, for example, medical devices.

The County, through the Services Agreement, dictated the number, frequency, and location of clinics. And the Sheriff's Department was "responsible for scheduling all sick call hours for each facility."[2] (ECF 170-1 p. 27 of 43, ¶5.9.6.) While the Services Agreement was in force, CHP provided "duly licensed physicians and medical support staff for primary care/urgent care ("Sick Call Clinics") during regularly scheduled facility sick call hours." (ECF 170-1 p. 23 of 43, ¶3.2.) But those schedules were determined by the Sheriff and subject to change at the Sheriff's discretion. (ECF 170-1 p. 33 of 43.)

All facilities for onsite services were provided by the County and not CHP. "County shall provide all supplies, equipment, and facilities it deems necessary and/or proper for the contractor to perform and complete the services required by this contract for on-site services at the detention facilities." (ECF 170-1 p. 30 of 43, ¶10.) And any and all referrals to providers other than CHP were subject to the approval of the County. "These outside referrals shall be coordinated with the Sheriff's Managed Care Group (MCG) and must be approved by the MCG." (ECF 170-1 p. 23 of 43, ¶3.4.)

---

[2] "Also referred to as a Clinic, Sick Call is the system whereby physicians see inmates during scheduled times in an outpatient clinic setting at detention facilities…" (ECF 170-1 p. 23 of 43, ¶2.7.)

- 3 -
REPLY IN SUPPORT OF CORRECTIONAL HEALTH PARTNERS, INC.'S MOTION TO DISMISS THE SAC   3:20-cv-00406-AJB-WVG

1    The Court may, and CHP submits should, disregard allegations that
2  contradict the Services Agreement under which, for example, CHP was not
3  responsible for: (1) providing facilities that allowed inmates to have private exams
4  with CHP staff; (2) identifying "at booking" inmates under the influence of drugs
5  or alcohol; (3) providing "sobering cells" and observation of inmates so identified
6  when they arrive at the jail; (4) providing a way for inmates to alert CHP of the
7  need for evaluation; (5) training jail staff; (6) providing access to jail programs and
8  services; (7) identifying inmates with disabilities; (8) providing and/or allowing
9  retention of ADA assistive devices such as wheelchairs, walkers, crutches, etc.
10   CHP is not alleged to have and never did fail to perform its *actual*
11 responsibilities under the no longer operative Services Agreement. There are no
12 allegations that any inmate has reported a grievance regarding care provided by
13 CHP. And Plaintiffs further fail to allege any particular policy or procedure of
14 CHP (as opposed to that of the Sheriff's Department) caused harm to any Plaintiff.
15 In opposition and without citation, (ECF 170 at 1), Plaintiffs state that they "allege
16 that they all have been exposed to the risk of harm posed by CHP's
17 unconstitutional and unlawful policies and practices." But Plaintiffs' SAC
18 identifies not a single policy or procedure of CHP. These allegations do not
19 identify a policy, how the policy was deficient, or any way in which the policy
20 caused harm.

21 **III.    No Allegation of Inadequate Care by CHP**

22   To the extent the SAC includes allegations concerning medical care, CHP
23 (or its predecessor) is lumped in with other defendants making it impossible for
24 CHP to discern what allegations are raised against it. While Plaintiffs opposition
25 purports to cite particular allegations specific to CHP, in reality the allegations are
26 vague and conclusory and/or concern defendants other than CHP.
27   Contrary to Plaintiffs' Opposition (ECF 170 at 3), the SAC does not, in fact,
28 allege that "CHP specifically…'maintains insufficient numbers of health care

- 4 -

REPLY IN SUPPORT OF CORRECTIONAL HEALTH
PARTNERS, INC.'S MOTION TO DISMISS THE SAC           3:20-cv-00406-AJB-WVG

professionals… SAC ¶ 42." While that paragraph nominally includes CHP in addition to the County, the Sheriff's Department, and Tri-City, the only factual allegations concern vacancies in Sheriff's Department staffing.

The SAC also does not allege that CHP specifically "'fail[s] to provide adequate medical treatment for incarcerated people with substance use disorders,' *id*. ¶ 60." Paragraph 60 of the SAC again names CHP, lumped in with other defendants, but includes factual allegations regarding the policies and procedures only of the Sherriff's Department. "The SHERIFF'S DEPARTMENT lack adequate policies and practices for the tracking and treatment of people with substance use disorders." (ECF 81 ¶60.)

Paragraph 72 of the SAC is exclusively directed to procedures at intake—the identification of new arrivals who are under the influence of drugs or alcohol and the housing (in sobering cells) and observation of inmates so identified. Plaintiffs' nominal inclusion of CHP in this paragraph is contradicted by the Services Agreement of which Plaintiffs have requested the Court take judicial notice. These allegations should be disregarded as to CHP.

Paragraph 102 of the SAC is exclusively directed to the provision of confidential settings—which, under the Services Agreement, falls squarely within the County's purview. "County shall provide all supplies, equipment, and *facilities* it deems necessary …." (ECF 170-1 p. 30 of 43, ¶10.) Plaintiffs' nominal inclusion of CHP in this paragraph is contradicted by the Services Agreement of which Plaintiffs have requested the Court take judicial notice. These allegations should be disregarded as to CHP.

Similarly with regard to the other SAC paragraphs cited in Plaintiffs' Opposition, there are no particular allegations against CHP specifically and no identification of any specific alleged policy or practice of CHP. Many of these paragraphs are fact-free and conclusory regarding indefinite "policy and practice," and none are particular to CHP. (ECF 81 ¶¶ 66, 75, 85, 95, 108, 111, 114.) These

paragraphs generally follow a formula: 1) state "by policy and practice," 2) list multiple (four or five) Defendants 3) allege conclusory and vague "failures" identifying no particular facts. (*Id.*)

The portions of the SAC identified by Plaintiffs in opposition fail to give CHP fair notice of claims plainly and succinctly. There can be no compliance with FRCP 8 where a complaint lumps multiple defendants together without delineating the alleged wrongs of each Defendant. *Hernandez v. City of Farmersville*, No. CVF 09-2125 LJO GSA, 2010 WL 761202, at *5 (E.D. Cal. Mar. 3, 2010) ("The complaint appears to lump [defendants together] without attributing separate acts, wrongs or omissions to each of them respectively. The complaint fails to give defendants fair notice of claims plainly and succinctly to warrant its dismissal.")

Each of the purported "illustrative examples" of "CHP's supposed unlawful policies and practices" is, in actuality, an allegation about a different Defendant. Plaintiffs' do not allege that CHP failed to continue Plaintiff Archuleta on blood pressure medication, but rather that "the Jail failed to continue ARCHULETA's blood pressure medication for several days, apparently because they forgot to reorder the medication." (ECF 81 ¶79.) "Plaintiff Levy faced delays in being referred to an endocrinologist," not allegedly because of any CHP policy or practice but because "Jail staff failed to take LEVY's complaints seriously." (ECF 81 ¶23.) And "nurses passing out medication," who are not alleged to be CHP personnel, are alleged to have ignored requests of a person with an infected wound. (*Id.* at ¶89.) Moreover, each and every Plaintiff who is identified regarding these allegations, (those other than the individual referred in the SAC only as "one person" (ECF 82 ¶79)), has been released or transferred out of the jail.

According to Plaintiffs, Mr. Edwards is the only Plaintiff who remains in custody at a San Diego jail facility. (ECF 170-1 ¶3.) The SAC, (ECF 81 ¶22), includes the following allegations regarding Plaintiff Edwards:

1  •  Plaintiff Edwards was not timely provided with a CPAP machine in 2020 and 2021;
2
3  •  Plaintiff Edwards has not received dental care;
4  •  Plaintiff Edwards has not received adequate mental health care;
5  •  Defendant Sheriff's Department has failed to communicate attorney call requests;
6
7  •  County Defendants (not defined to include CHP) failed to provide access to programs.
8

(ECF 81 ¶22.) None of these allegations implicates CHP.

As to the allegations regarding a CPAP machine, the SAC acknowledges that the Jail referred Mr. Edwards to an outside provider for a sleep study in August 2020. (*Id.; see also* ECF 119-12 ¶¶ 13, 14.) Mr. Edwards was referred to Sleep Data Diagnostics, Inc., not to CHP, on August 29, 2020—before CHP was under contract with the County. And, according to the SAC, the Jail subsequently provided Mr. Edwards with a CPAP machine. (ECF 81 ¶22.)

The SAC does not alleged that CHP was responsible to provide dental or mental health care—because it was not as is clear from the Services Agreement of which Plaintiffs have requested judicial notice. And the allegations regarding lack of access to attorneys and programs are expressly directed to alleged failures by other Defendants—the Sheriff's Department and the County.[3]

///

---

[3] Even if the remaining Plaintiffs were still in the custody of the Sheriff's Department, their allegations implicate the previous medical care provider or other Defendants, for example: allegations regarding Plaintiff Dunsmore are expressly directed to conduct by "custody staff" and "the Jail" (ECF 81 ¶20); allegations regarding Plaintiff Archuleta concern a medical evaluation in 2019 (prior to the effective date of the CHP service agreement) and subsequent conduct by "the Jail" (ECF 81 ¶21); allegations regarding Plaintiff Levy are expressly directed to conduct by "the Jail" related to Ms. Levy's condition that required hospitalization and her mental health issues which are not, and are not alleged to be, services that were provided by CHP. (ECF 81 ¶23).

### IV. No Allegation of Discriminations by CHP

Plaintiffs do not even address the issue of the inapplicability of the Unruh Civil Rights Act under which a jail is not considered a "business establishment." Instead Plaintiffs argue, (ECF 170 at 17), that the SAC includes allegations that CHP violated the rights of individuals with disabilities in two ways—both supposed ways are contradicted by Services Agreement which Plaintiff relies on and requested be considered incorporated in the SAC. As discussed above, the Services Agreement makes clear that neither provision of access to jail programs and services nor the provision of medical devices is the responsibility of—or even within the capability of—CHP. These allegations, contradicted by the Services Agreement, should be disregarded.

### V. Conclusion

The vast majority of the allegations in the SAC concern Plaintiffs who are no longer incarcerated in a San Diego County jail facility and hence have no standing. Regardless, Plaintiffs identify no inadequate care and no discrimination by CHP. Finally, the Services Agreement on which Plaintiffs rely in opposition is no longer operative. Accordingly, the SAC fails to state a single viable claim against, and should be dismissed with prejudice as to, CHP.

Dated: June 24, 2022          Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Craig J. Mariam*
  Craig J. Mariam
  Michael J. Dailey
  Lara S. Garner
  Attorneys for Defendant
  CORRECTIONAL HEALTHCARE PARTNERS, INC.