Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600
San Diego, CA 92101-8474
Tel: 619.814.5800    Fax: 619.814.6799

Attorneys for Defendant
COUNTY OF SAN DIEGO (Also
erroneously sued herein as SAN DIEGO
COUNTY SHERIFF'S DEPARTMENT, and
SAN DIEGO COUNTY PROBATION
DEPARTMENT)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ERNEST ARCHULETA, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, CORRECTIONAL HEALTHCARE PARTNERS, INC., TRI-CITY MEDICAL CENTER, LIBERTY HEALTHCARE, INC., MID-AMERICA HEALTH, INC., LOGAN HAAK, M.D., INC., SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-WVG<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Judge Anthony J. Battaglia |

Defendant responds herein to Plaintiffs' Opposition to the Motion to Dismiss. [Dkt. 177.] Plaintiffs' Unruh Act and Title II ADA claims should be dismissed. Further, they fail to adequately allege exhaustion of administrative

remedies – or an exception to the requirement – in the Second Amended Complaint. Their class allegations should be stricken and their injunctive relief is overly broad, in violation of the PLRA.

## I. ARGUMENT.

### A. The Unruh Act Claim Must Be Dismissed

Plaintiffs concede that the Unruh Act claim cannot be brought against the County and the Cause of Action should be dismissed.

### B. Plaintiffs Failed to Exhaust Administrative Remedies

Plaintiffs assert that exhaustion is an affirmative defense and suggest that it may not be raised at the pleading stage. This is incorrect. While it may be used an affirmative defense, requiring evidence to prevail on summary judgment or trial, it is appropriately raised at the initial pleading stage when full exhaustion is not even alleged and thus no presentation of evidence is needed. Where it is clear from the face of the Complaint that the plaintiff did not exhaust administrative remedies, dismissal may be sought by a dispositive motion rather than by presentation of evidence. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

Plaintiffs rely on various paragraphs in the SAC that reference defects in the grievance process. This does not demonstrate exhaustion of remedies. Defendant does not dispute that the SAC alleges that some of the named Plaintiffs submitted initial grievances on certain issues, but there are no allegations establishing any attempt to exhaust the administrative procedure. Submission alone is not exhaustion. This is the pleading phase and Plaintiffs are, at a minimum, required to plead the proper elements on their claim if they have the facts to substantiate them.

Moreover, the SAC lacks allegations as to specific grievances submitted by each Plaintiff for each of their claimed violations or wrongful acts, and whether they <u>exhausted</u> the grievance process. Plaintiffs also appear to contend that requests for medical care are equivalent to grievances. (*See* Opp'n at 3, citing Norwood's requests for health care.) This argument lacks any legal basis or

1  citation.  While the fact that a prisoner repeatedly requested medical appointments or medication might be relevant to an allegation of deliberate indifference to his/her care, it does not indicate any attempt to exhaust administrative remedies.

Making conclusory and generalized statements, such as those cited in the Opposition, are inadequate to make even a prima facie showing of exhaustion.  Plaintiffs cite to an allegation that does nothing more than assert that the Plaintiffs submitted a grievance, which is not sufficient.  (*See, e.g.* Opp'n at 6: "From at least August 2021 to January 2022, through grievances submitted to the Jail, PLAINTIFFS and the Incarcerated People Class they represent demanded that the COUNTY, SHERIFF'S DEPARTMENT, and TRI-CITY stop their unlawful discriminatory conduct described above.")  The cited allegation does not indicate which prisoners submitted grievances, on which date(s), regarding which specific issues, or whether any other steps other than submission were ever taken.  The mere submission of a grievance does not satisfy the PLRA.   Every claim raised in the lawsuit must be <u>exhausted</u>, meaning the administrative appeal process has to be completed for all available levels.  See, *Barry v. Ratelle*, 985 F. Supp. 1235, 1237-38 (S.D. Cal 1997); *Cooper v. Garcia*, 55 F. Supp. 2d 1090 (S.D. Cal. 1999).

Unavailability of a grievance process may operate as an exception to the exhaustion requirement, but the applicability of the exception must be established through facts pled in the Complaint and not merely as a conclusory statement.  *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016)   The SAC does not allege any facts establishing the nature of the grievances or specific obstructions to their processing, only general statements that grievances were submitted.  The law is clear that only alleged violations that are the specific subject of the grievances that have been fully exhausted should be included in this lawsuit. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Based on the allegations in the SAC, this does not apply to any of the causes of action.

///

### C. Plaintiffs' Class Allegations Should Be Stricken

Class allegations may be stricken at the pleading stage in the appropriate case. *See, Kamm v. California City Development Co.,* supra, 509 F.2d at 207. This is one of those rare cases where it is appropriate.

Plaintiffs defend their proposed class definition of "all adults who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities," based in part on *Hernandez v. Cty. Of Monterey*, 305 F.R.D. 132, 163 (N.D. Cal. 2015). The reliance on *Hernandez* is misplaced. *Hernandez* stands for the proposition that anyone who is ultimately incarcerated in the jail before correction of the defects would be a class member, in contrast to anyone on earth who might be incarcerated. To ultimately be included in the class, per *Hernandez*, the class members must actually be incarcerated. The Court establishes a time period for the class and *if* Plaintiffs prevail in class certification, the start date of the Class will set a parameter of class members on one side (the beginning date), while the date of trial or judgment will set the parameter on the other side of the scale. The definition demanded by Plaintiffs includes people who may never have been incarcerated and may never be incarcerated. The language proposed is so broad that there is no limitation to actually being incarcerated. Possibly it is poor drafting, but the language proposed by Plaintiffs in this matter is not analogous to the language approved by the Court in *Hernandez*.

Plaintiffs also cite *Parsons v Ryan*, 754 F.3d, 657, 676 (9th Cir. 2014), which certified a class of inmates challenging Arizona's health care policies and practices and a sub-class of inmates challenging isolation unit policies and practices. *Parsons* does not help Plaintiffs' cause. The Court in *Parsons* identified 10 statewide ADC policies and practices providing constitutionally deficient care that affected *all* members of the class, and 7 that affected *all* of the subclass, all of whom were incarcerated and disabled. (*Id.* at 679.) In contrast to the *Parsons* class, Plaintiffs include people who may never be incarcerated and include a litany

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

- 4 -

3:20-CV-00406-AJB-WVG
COUNTY REPLY MPA'S IN SUPPORT OF
MOTION TO DISMISS

of alleged issues that do not apply to all or even most inmates. These include access to counsel, medical care, psychological care, ADA accessibility, and conditions of cells. Access to counsel could apply to all inmates but not those who are not now and never will be incarcerated. Is the access issue related to a disability or disabilities? Medical and Psychological care could conceptually apply to all inmates (but not those who will never be inmates), but the SAC only alleges issues as to those with specific disability related medical issues and psychological issues resulting from drug withdrawal. Cell conditions, again, could conceptually apply to incarcerated (versus un-incarcerated) individuals. But underlying the entire complaint is a cross-over with ADA issues, which do not affect most inmates. Are the medical and psychological issues specific only to those with disabilities as defined under State and Federal law? Are Plaintiffs even asserting that there are problems with the medical and psychological care as it relates to non-disabled inmates? Individuals with illegal drugs in their system are not per se disabled, and the drug issue contains components of medical care (which has with great success been addressed through immediate urinalysis and prescription of withdrawal medications and/or MAT protocol), and resulting psychiatric symptoms secondary to the drug withdrawal process. However, the ADA has no application. The concept of "commonality" cannot be met under any circumstances given the breadth of issues and the lack of connectedness as to disabled vs. non-disabled.

### D. The Injunctive Relief Requested Is Not Narrowly Tailored

Plaintiffs fail to address their failure to narrowly tailor the request for injunctive relief. Both the PRLA (18 U.S.C. § 3626(a)(1)(A)) and Rule 65 of the Federal Rules of Civil Procedure mandate that injunctive relief be narrowly drawn. Plaintiffs skirt this essential requirement by making the conclusory statement that their request for injunctive relief is not "widespread."

Plaintiffs do not contest that the prayer for relief is overbroad or make any attempt to narrow the relief requested, but instead claim this Court can order

1  generic injunctive relief requiring Defendant to create a plan.  Given the lack of any
2  detail in the prayer for relief as outlined in the moving papers, it is unclear what this
3  "plan" is supposed to say.  The suggestion seems to be that Defendant is to guess at
4  what might be acceptable to Plaintiffs and if it is not, Defendant would be subject to
5  contempt for not following an injunctive order to, "make a plan".  For example,
6  Plaintiffs demand "minimally adequate health care to incarcerated people." What
7  specifically about the current system is not "minimally adequate" for all individuals
8  (as distinguished from disabled individuals)?  Are there enough medical staff or too
9  many in one area, and not enough in another?  Are the intake questions insufficient
10 to flush out medical problems?  Are the medical providers unqualified or not asking
11 the right questions to elicit necessary medical information?  In short, what exactly
12 is the specific deficiency so that the relief can be narrowly tailored.

13       Another example of the undefined relief requested is to "cease discriminating
14 against, interfering with the ADA rights of, and failing to provide accommodations
15 to incarcerated people with disabilities and violating their due process rights."
16 Which due process rights of disabled individuals are being violated?  There could
17 be hundreds.  What about the accommodations needs to be addressed?  Compliant
18 toilets? Grab bars? Procedures about intake and medical to determine needs?  The
19 possibilities for the "plan" are endless and it amounts to an impermissible "obey the
20 law" injunction cloaked in "policies and procedures."  *See, Mulcahy v. Cheetah*
21 *Learning LLC*, 386 F.3d 849, 852 n.1 (8th Cir.2004) ["blanket injunctions to obey
22 the law are disfavored."].  Rule 65(d) requires injunctions be specific:

23     "Every order granting an injunction and every restraining order shall set forth
24     the reasons for its issuance; shall be specific in terms; shall describe in
25     reasonable detail, and not by reference to the complaint or other document,
26     the act or acts sought to be restrained." *Id.*

27 Plaintiffs' laundry list of conclusions provide no specific terms being sought, no
28 detail at all - setting aside their term "reasonable detail," and it relies entirely on the

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

- 6 -

3:20-CV-00406-AJB-WVG
COUNTY REPLY MPA'S IN SUPPORT OF
MOTION TO DISMISS

conclusions set forth in the SAC, which itself is lacking in any detail.

Contrary to Plaintiffs' assertion, the Ninth Circuit has never renounced Rule 65 or the PRLA's requirement for specificity in granting injunctive relief. The fact that some courts may have granted injunctions on a class-wide basis or ordered injunctive relief does not detract from the fact that broad injunctive relief will always be improper. Who is a member of the class is not the issue, at least for this, but rather what specifically the Plaintiffs want fixed or changed or altered.

Plaintiffs reference to *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1064 (9th Cir. 2010), is misplaced and does not support the notion that an injunctive order may be issued that states, "make a plan". To the contrary, as the Court in *Armstrong* noted,

> "The order here at issue required defendants to produce a plan with specific features that would be disseminated to the counties and that would govern future interactions between defendants, the counties, and the disabled prisoners and parolees housed in the county jails."

*Id. at* 1064–65. In making the quoted statement, the Court was considering the question of whether it had jurisdiction over an appeal because Plaintiffs contended that the order was not final in that the Court might make further orders about what the plan should include. The assertion was rejected, and it has no bearing on the issue presented by this motion. *Id.* The substance of the injunction issues in the *Armstrong* case is not set forth anywhere in the opinion.

The *Armstrong* Plaintiffs made a motion 15 years after the original litigation was filed, to require the defendants to track and accommodate the needs of class members housed in county jails and to ensure a workable grievance procedure for such class members. The specific language requested was:

> ". . . an "order requiring Defendants to develop and implement effective policies and procedures ensuring all prisoners and parolees with mobility, vision, hearing, developmental, kidney, and learning disabilities housed in

county jails receive the accommodations they need."
*Armstrong v. Schwarzenegger*, supra, 622 F.3d at 1064. The Court granted the motion on the above terms and further ordered,

> ". . . that "at a minimum" several specific provisions regarding the timing of tracking, and response to notice of disabilities and class members' grievances be included in the plan.

*Id.* There was no ambiguity and there was no order to "make a plan".

### E. Plaintiffs' Title II ADA 14th Cause of Action Fails To State a Claim

In opposition to the Motion to Dismiss as to the Fourteenth Cause of Action for violation of Title II of the ADA, Plaintiffs recite the deficient allegations of the SAC, and improperly interpret the case law interpreting 28 C.F.R. §35.130(d). Plaintiffs offer no legal authority to the contrary and their claim lacks merit.

Plaintiffs try to limit the holding of *Black v. Dep't of Mental Health,* 83 Cal.App.4th 739, 754 (2000) [there is no requirement that a public entity provide a more integrated setting for all disabled detainees if the detainee is not a suitable candidate for the available integrated setting], to situations involving medical treatment. There is no such limitation in the language of the case. The Court in *Black* was interpreting 28 C.F.R. §35.130(d), which is applicable to all services provided by public entities, and the specific language that public entities "shall administer services, programs and activities in the most integrated setting". *Id.* at 756. While the facts of the case involved medical care, the case stands for the general proposition that services must be provided on a nondiscriminatory basis in the "most integrated setting"---not as plaintiff advocated, in the "setting appropriate to the needs of qualified [disabled persons]". The Court rejected the plaintiff's interpretation of the statute as being contrary to basic rules of statutory interpretation pointing to the "most integrated setting" language in the statute. *Id.*

Plaintiffs also misstate the holding of *Olmstead v. L.C.,* 527 U.S. 581, 603, fn.14 (1999), contained in Footnote 14. So there can be no confusion, the Court

stated:

> "Fn 14. We do not in this opinion hold that the ADA imposes on the States a "standard of care" for whatever medical services they render, or that the ADA requires States to "provide a certain level of benefits to individuals with disabilities." *Cf.* post, at 617 (THOMAS, J., dissenting). We do hold, however, that States must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide.

*Id.* at 306.

Plaintiffs also incorrectly assert that cost is not a defense to a claim that a public entity must provide an increased level of available benefits. The *Olmstead* Court held that cost is one of the issues that must be taken into account.

> "For the reasons stated, we conclude that, under Title II of the ADA, States are required to provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities."

*Id.* at 607. Contrary to the suggestion by Plaintiffs, the integration mandate is not an inflexible doctrine that does not take into account a host of factors to determine if there has been compliance with the "most integrated setting" language. As the Supreme Court stated, there is no "standard of care" being imposed on every public entity for any particular services. It is a fact and circumstance dependent inquiry.

As stated in the moving papers, the allegations of the SAC are insufficient to sustain a claim for violation of the ADA because it seeks relief for individuals already incarcerated as if they were not incarcerated. In addition, lack of capacity and reach do not amount to a violation of the ADA unless the available services are provided on a discriminatory basis, which is not alleged. Providing "alternatives"

is beyond the scope of Title II because a public entity is not required to create new programs.

## II. Conclusion.

For the reasons stated above and those set forth in the moving papers, Defendant's Motion to Dismiss should be granted as requested.

Dated: July 7, 2022                    BURKE, WILLIAMS & SORENSEN, LLP


By: *s/ Susan E. Coleman*
Susan E. Coleman
Attorneys for Defendant
COUNTY OF SAN DIEGO[1]

---

[1] Plaintiffs note that neither the Sheriff's Department nor the Probation Department have moved to be dismissed. See Opp'n at 1, fn. 1. This is because both are departments of the County, not separate municipal entities.