UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ERNEST ARCHULETA, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, CORRECTIONAL HEALTHCARE PARTNERS, INC., TRI-CITY MEDICAL CENTER, LIBERTY HEALTHCARE, INC., MID-AMERICA HEALTH, INC., LOGAN HAAK, M.D., INC., SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No.: 20-cv-00406-AJB-WVG<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION;** and<br><br>**(2) DENYING AS MOOT PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION**<br><br>(Doc. No. 119) |

Presently pending before the Court is Plaintiffs' motions for preliminary injunction and provisional class certification. (Doc. No. 119.) On August 11, 2022, the Court heard oral arguments and took the matter under submission. For the reasons set forth below, the

1

Court **DENIES** Plaintiffs' motion for preliminary injunction and **DENIES AS MOOT** Plaintiffs' motion for provisional class certification of an injunctive class.

## I. BACKGROUND

As a preliminary matter, the Court fully appreciates the seriousness of the allegations brought by Plaintiffs regarding the conditions and high death rates in the San Diego County Jail facilities. However, preliminary injunctions are highly disfavored by courts and the burden on plaintiffs for a mandatory injunction is very difficult to overcome. Plaintiffs fail to meet their burden at this time.

Plaintiffs Darryl Dunsmore, Ernest Archuleta, Anthony Edwards, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, and Laura Zoerner (collectively, "Plaintiffs") are current or former inmates of San Diego County Jail facilities (the "Jail"), operated by Defendants San Diego County Sheriff's Department ("Sheriff's Department") and County of San Diego (the "County") (collectively, "County Defendants"). Correctional Healthcare Partners, Inc. and Liberty Healthcare, Inc., (collectively, "Contractor Defendants") provide security, medical care, mental health care, and dental care to the individuals incarcerated in the Jail. Plaintiffs bring this action on behalf of "themselves and the approximately 4,000 incarcerated people who are similarly situated on any given day" to "remedy the dangerous, discriminatory, and unconstitutional conditions in the Jail." (Second Amended Complaint ("SAC"), Doc. No. 81, ¶ 6.) Specifically, Plaintiffs contend Defendants' policies and practices contribute to the high death rates in the Jail, which "has for years exceeded the rates nationally and in other large California jails, [and] it reached chilling heights in 2021 when 18 people died, amounting to a death rate of 458 incarcerated people per 100,000." (*Id.* ¶ 1.)

To this point, the California State Auditor's February 3, 2022 report found that "the Sheriff's Department has failed to adequately prevent and respond to the deaths of individuals in its custody." (*Id.* ¶ 2 (quoting Doc. No. 119-3 at 44).) These deaths are "often attributable to suicide, overdoses, homicide, and medical neglect, and many involved persons with a mental illness." (*Id.* ¶ 3.) As such, Plaintiffs seek declaratory and injunctive

relief against Defendants for their "deliberate indifference to their obligation to provide incarcerated people with minimally adequate medical care[,]" (*id.* ¶ 7); "deliberate indifference to their failure to provide incarcerated people with minimally adequate mental health care[,]" (*id.* ¶ 9); "systemic and willful discrimination against, and failure to provide reasonable accommodations in, programs, services, and activities to incarcerated people in the Jail who have disabilities[,]" (*id.* ¶ 10); "deliberate indifference to their failure to ensure the safety and security of incarcerated people against other unreasonably dangerous conditions in the Jail[,]" (*id.* ¶ 11); "deliberate indifference to their failure to provide incarcerated people with adequate dental care[,]" (*id.* ¶ 12); and "interference with Plaintiffs' right to effective assistance of counsel and right to access the courts . . . ." (*id.* ¶ 13).

The FAC alleges 42 U.S.C. § 1983 violations of Plaintiffs' (1) Eighth Amendment right to be free from cruel and unusual punishment; (2) Fourteenth Amendment right to equal protection under the law; and (3) Sixth Amendment right to counsel. Plaintiffs also claim violations of the Americans with Disabilities Act ("ADA") against both County and Contractor Defendants, including (4) Discrimination on the Basis of Disability; and (5) Discrimination Contributing to Unnecessary Incarceration and Institutionalization. Plaintiffs further claim violations of (6) Article 1, Section 7 of the California Constitution; (7) Article 1, Section 17 of the California Constitution; (8) Title II of the Rehabilitation Act, 29 U.S.C. § 794 (Discrimination on the Basis of Disability); (9) the Unruh Civil Rights Act, California Civil Code § 51, *et seq.*; (10) California Gov't Code § 11135 (Discrimination on the Basis of Disability); (11) Section 15 of the California Constitution; (12) Section 7 of the California Constitution; and (13) California Gov't Code § 11135 (Discriminatory Impact). (*Id.* ¶¶ 398–464.)

Plaintiffs apply for a preliminary injunction requesting the Court require Defendants to institute various policies for improved conditions for inmates remaining in the Jail.

## II. REQUEST FOR JUDICIAL NOTICE

To begin, Plaintiffs request judicial notice of several documents. (Doc. No. 119-2.) Federal Rule of Evidence 201(b) permits judicial notice of any fact "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be questioned." Fed. R. Evid. 201(b); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). "Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the internet such as websites run by government agencies." *U.S. ex rel. Modglin v. DJO Global Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014) (collecting cases).

First, Plaintiffs request judicial notice of several governmental agency reports regarding the San Diego County Sheriff's Department. (Doc. No. 119-2 at 5.) Specifically, Plaintiffs request the Court take judicial notice of the California State Auditor's February 3, 2022 report, No. 2021-109, as well as the Sheriff's Department's response to the report; several findings by the County of San Diego's Citizens' Law Enforcement Review Board ("CLERB"); and the San Diego Association of Governments ("SANDAG") Report. (*Id.*) While each of these proffered documents are public documents whose existence is not subject to reasonable dispute, the Court may not take judicial notice of the facts contained within these documents. *See United States v. Kiewit Pac. Co.*, No. 12-cv-02698-JST, 2013 WL 5770514, at *5 (N.D. Cal. Oct. 24, 2013) (taking judicial notice of public reports, but not "for the truth of their content, but rather for the fact that the reports were made"); *see also Johnson v. Napa Valley Wine Train, Inc.*, No. 15-cv-04515-TEH, 2016 WL 493229, at *14 (N.D. Cal. Feb. 9, 2016) ("[W]hile a court may take judicial notice of undisputed matters of public record, judicial notice is taken of the fact that the records exist, not the facts stated within the records."). With these limitations in mind, the Court **GRANTS** Plaintiffs' first request for judicial notice.

Plaintiffs further request judicial notice of publicly available data regarding the incarcerated population in San Diego County, posted on the Sheriff's Department's

4

website, (Doc. No. 119-2 at 7–8); the Sheriff's Department's policies and procedures, (*id.* at 8–9); additional findings and policy recommendations by CLERB, (Doc. No. 162-1 at 3); the Sheriff's Department Detention Services Bureau report on "Suspected Overdose Incidents with Naloxone Deployment," dated June 2, 2022, (*id.*); the Sheriff's Department Detention Services Bureau's June 6, 2022 Realigned Population Report, (*id.*); and the Order Distributing and Enforcing the Amended County Jail Order and Plan in *Armstrong v. Brown*, No. C 94-2307 CW (N.D. Cal. Aug. 12, 2012), (*id.*). Because the Court does not rely on these documents in deciding this motion, Plaintiffs' request for judicial notice is **DENIED AS MOOT**.

### III.   MOTION FOR PRELIMINIARY INJUNCTION

#### A.   Legal Standard

A party seeking a preliminary injunction must fulfill one of two standards, described by the Ninth Circuit as the "traditional" and "alternative" standards. *See Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Under the traditional standard, a court may issue preliminary relief if it finds: (1) the moving party will probably prevail on the merits; (2) the moving party will suffer irreparable injury if the relief is denied; (3) the balance of the hardships favor the moving party; and (4) the public interest favors granting relief. *Id.*

Under the alternative standard, the moving party may meet its burden by demonstrating either: (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) that serious questions exist and the balance of hardships tips sharply in its favor. *See id.* This latter formulation represents two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *See Oakland Trib., Inc. v. Chron. Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985).

A preliminary injunction can be either prohibitory, which means it "preserves the status quo pending a determination of the action on the merits," or mandatory, which means it "orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009) (internal quotations omitted). "A

mandatory injunction goes well beyond simply maintaining the status quo and is particularly disfavored. In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* at 879 (internal quotations and citations omitted).

### B.  Discussion

In their preliminary injunction application, Plaintiffs request nineteen mandatory injunctions regarding Defendants' response to emergencies, overdose prevention and addiction treatment, mental health care and clinical input in placement decisions, and meaningful program access for people with mobility disabilities. (Doc. No. 119-3 at 37–40.)

#### 1.  Likelihood of Success on the Merits

##### a.  Mootness

Defendants first argue Plaintiffs fail to establish standing because those plaintiffs who are no longer in jail, are in the process of being transferred, or have already been transferred have no standing. (Doc. No. 153 at 13.)

In order to have standing for prospective injunctive relief, a plaintiff must establish a "real and immediate threat of repeated injury." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Instead, a plaintiff is not entitled to an injunction against past illegal conduct unless he demonstrates "a sufficient likelihood that he will again be wronged in a similar way." *Id.* at 111; *see also Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) ("Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a real or immediate threat that he will again be wronged in a similar way.") (alterations and internal quotation marks omitted). The threat of harm cannot be "speculative." *Lyons*, 461 U.S. at 111. It must be a "prospect of immediacy and reality." *Id.* at 104 (internal quotation marks omitted); *see also*

*Munns v. Kerry*, 782 F.3d 402, 411–12 (9th Cir. 2015) ("Despite being harmed in the past, the [plaintiffs] must still show that the threat of injury in the future is 'certainly impending' or that it presents a 'substantial risk' of recurrence for the court to hear their claim for prospective relief.") (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

In addition, the need for a "real and immediate threat of repeated injury" has particular force where, as here, a federal court is "asked to oversee state law enforcement authorities." *Lyons*, 461 U.S. at 112. The United States Supreme Court has cautioned that "the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers . . . in the absence of irreparable injury which is both great and immediate." *Id.*; *see also O'Shea*, 414 U.S. at 499.

Here, the release of Plaintiffs from the San Diego County Jail does not render this case moot because this controversy falls squarely within the capable-of-repetition-yet-evading-review branch of the mootness doctrine. "This branch applies when (1) the duration of the challenged action is too short to be litigated prior to cessation, and (2) there is a 'reasonable expectation' that the same parties will be subjected to the same offending conduct." *Demery v. Arpaio*, 378 F.3d 1020, 1026 (9th Cir. 2004) (citing *Spencer v. Kemna*, 523 U.S. 1, 17–18 (1998)). Because the Jail is a pretrial detention center, "the length of detention in the county jail is short enough that any individual detainee's claim would probably become moot before trial." *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1117–18 (9th Cir. 2003). As the Supreme Court has explained, "[p]retrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted." *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975). In these circumstances, Plaintiffs readily satisfy the first prong of the capable-of-repetition-yet-evading-review branch of the mootness doctrine.

To satisfy the second prong, Plaintiffs "must show either a 'demonstrated probability' or a 'reasonable expectation' that [they] would be transferred back to [the Jail] or released and reincarcerated there." *Demery*, 378 F.3d at 1027 (quoting *Oliver v. Scott*,

276 F.3d 736, 741 (5th Cir. 2002)); *see also Mitchel v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996).

Here, the record contains compelling evidence that Plaintiffs likely will be reincarcerated at the Jail. For example, the eight named Plaintiffs have been incarcerated at the Jail approximately 56 times in total, including Plaintiff Zoerner who has been incarcerated 24 times since 2010. (Doc. No. 162 at 8.) Thus, this controversy also satisfies the capable-of-repetition prong. Accordingly, the case is not moot, and the Court has jurisdiction to decide the merits of Plaintiffs' preliminary injunction motion.

Additionally, Defendants' contention that Plaintiffs' request for injunctive relief is moot because of recent and ongoing changes in medical and dental subcontractors is unavailing. (*See* Doc. No. 153 at 15.) "[T]he standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). Defendants have not met that burden. Although Defendants assert the County is to "replace detention division subcontractors for medical, mental health, dental, and vision care with a single subcontractor who would handle all of the needs and provide on-site staffing," Defendants have not provided any facts supporting their contention that "the allegedly wrongful conduct could not reasonably be expected to recur." (*See* Doc. No. 153 at 15.)

### b. Plaintiffs Have Exhausted Administrative Remedies

Defendants next contend Plaintiffs failed to exhaust their administrative remedies under the Prison Litigation Reform Act ("PLRA"). (Doc. No. 153 at 13.)

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Plaintiffs argue they have exhausted their administrative remedies and offer into evidence multiple grievance reports by various named Plaintiffs, and in each instance,

Plaintiffs largely assert they received no response. (Doc. No. 162 at 9; *see also* Declaration of Van Swearingen ("Swearingen Decl."), Doc. No. 162-2, ¶¶ 14–22; Doc. No. 162-2 at 77–79, 81–84, 86–101, 103, 105, 107–108, 110.)  The Court agrees. When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies. In such circumstances, prison officials have "thwart[ed] inmates from taking advantage of [the] grievance process," making that process unavailable. *Ross v. Blake*, 578 U.S. 632, 643 (2016); *cf. Brown v. Valoff*, 422 F.3d 926, 943 n.18 (9th Cir. 2005) ("Delay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available.") As such, the Court finds Plaintiffs exhausted their administrative remedies.

### c. Merits

Likelihood of success is the most important *Winter* factor. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015); *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) ("We begin with the first and most important factor: whether petitioners have established a likelihood of success on the merits."). A "district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)). In plain terms, mandatory injunctions should not issue in "doubtful cases." *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011).

Here, the Court is unable to determine for which claims Plaintiffs seek preliminary injunction, and Plaintiffs fail to connect the dots for the Court as to which factual allegations go to each claim. Although the Court appreciates the seriousness of Plaintiffs' claims, Plaintiffs have the burden of specifying on which claims they seek preliminary injunction and how they are to succeed on the likelihood of the merits by analyzing the elements of each claim. Plaintiffs have not done so here. It is very well possible that the factual elements of the causes of action asserted are present, but they are presented in a rather undecipherable manner. The Court had difficulty distinguishing between a cause of

action and an irrelevant assertion or grievance and distinguishing between causes of action themselves in Plaintiffs' 223-page SAC. An inadequately pled claim, by definition, is not a claim which has a substantial likelihood of success on the merits.

Additionally, in several instances, Plaintiffs failed to identify a single named plaintiff who suffered an injury-in-fact from Defendants' conduct or to plead an injury altogether. For example, Plaintiffs seek preliminary injunction based on Defendants' alleged failure to conduct adequate and timely safety checks. (Doc. No. 119 at 32.) However, Plaintiffs' FAC fails to name any Plaintiff who was injured as a result of Defendants' alleged conduct. As such, Plaintiffs lack standing on many of their claims.

Lastly, the requested relief is far reaching and overly broad, and Plaintiffs lack specificity in the relief requested. No clear plan is advanced for the Court to make specific recommendations for provisional relief. Discovery will no doubt edify the merits of Plaintiffs' claims beyond what currently exists and will assist the Court in understanding the true depths of the problems alleged as well as the remedies available. Thus, Plaintiffs have failed to meet their burden to show a likelihood of success on the merits. As such, the Court need not analyze the remaining *Winter* factors.

Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' motion for preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for preliminary injunction and **DENIES AS MOOT** Plaintiffs' motion for provisional class certification of an injunctive class.

**IT IS SO ORDERED.**

Dated: August 15, 2022

Hon. Anthony J. Battaglia
United States District Judge