1                    UNITED STATES DISTRICT COURT

2                   SOUTHERN DISTRICT OF CALIFORNIA

3

4  DUNSMORE, et al.,              )  Case No. 20CV0406-AJB-DDL
                                  )
5            Plaintiffs,          )  San Diego, California
                                  )
6  vs.                            )  Wednesday,
                                  )  August 31, 2022
7  STATE OF CALIFORNIA, et al.,   )  2:00 p.m.
                                  )
8            Defendants.          )
   _____)

9

10             TRANSCRIPT OF DISCOVERY CONFERENCE
             BEFORE THE HONORABLE DAVID D. LESHNER
11               UNITED STATES MAGISTRATE JUDGE

12
   APPEARANCES:
13
   For the Plaintiffs:          PRIYAH KAUL, ESQ.
14                              RICHARD VAN SWEARINGEN, ESQ.
                                Rosen Bien Galvan &
15                                Grunfeld, LLP
                                101 Mission Street
16                              Sixth Floor
                                San Francisco, California
17                                94105
                                (415) 433-6830
18

19 For the County of San Diego:  SUSAN E. COLEMAN, ESQ.
                                Burke, Williams & Sorensen, LLP
20                              444 South Flower Street
                                Suite 2400
21                              Los Angeles, California 90071
                                (213) 236-0600
22

23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

*Echo Reporting, Inc.*

ii

1  APPEARANCES:   (Cont'd.)

2  For Correctional Healthcare       LARA S. GARNER, ESQ.
     Partners, Inc.:                 Gordon Rees Scully
3                                       Mansukhani, LLP
                                     101 West Broadway, Suite 2000
4                                    San Diego, California 92101
                                     (619) 230-7733
5
   For Liberty Healthcare, Inc.:     MARILYN R. MORIARTY, ESQ.
6                                    Lewis Brisbois Bisgaard
                                       & Smith
7                                    701 B Street, Suite 1900
                                     San Diego, California 92101
8                                    (619) 233-1006

9                                    SHARON L. HIGHTOWER, ESQ.
                                     Ericksen Arbuthnot
10                                   210 North Fourth Street
                                     Suite 350
11                                   San Jose, California 95112
                                     (408) 286-0880
12
   Transcript Ordered by:           RICHARD VAN SWEARINGEN, ESQ.
13
   Transcriber:                     Jordan Keilty
14                                   Echo Reporting, Inc.
                                     9711 Cactus Street, Suite B
15                                   Lakeside, California 92040
                                     (858) 453-7590
16

17

18

19

20

21

22

23

24

25

1

1    SAN DIEGO, CALIFORNIA WEDNESDAY, AUGUST 31, 2022 2:00 P.M.

2                          --oOo--

3        (Call to order of the Court.)

4            THE COURT:  Okay.  Good afternoon everyone.  I will

5    call the case.  Darryl Dunsmore, et al. versus the San Diego

6    County Sheriff's Department, et al., Case Number 20CV406.

7            Could I have appearances from the Plaintiffs'

8    counsel, please?

9            MS. KAUL (via Zoom):  Good morning -- or afternoon,

10   your Honor.  Priyah Kaul for the Plaintiffs.

11           MR. SWEARINGEN (via Zoom)  Dan Swearingen, also for

12   the Plaintiffs.

13           THE COURT:  Good afternoon to you both.

14           MS. COLEMAN (via Zoom):  Susan Coleman for the

15   County of San Diego.

16           THE COURT:  Good afternoon, Ms. Coleman.

17           MS. HIGHTOWER (via Zoom):  Sharon Hightower on

18   behalf of Liberty Healthcare Corporation.

19           MS. GARNER (via Zoom):  Laura Garner for

20   Correctional Healthcare Partners.

21           THE COURT:  Got it.

22           Just so I've got this right, I'll show the back of

23   a true -- true rookie to the case.  Ms. Coleman, do you

24   represent both the San Diego County Sheriff's Department and

25   the County of San Diego?

2

1          MS. COLEMAN:  The Sheriff's Department was actually
2  dismissed.  It's a subset of the County.

3          THE COURT:  Okay.

4          MS. COLEMAN:  So -- or it's erroneously named as --
5  as an additional Defendant.  We have not separately appeared
6  for the Sheriff's Department, but they're a subdivision of the
7  county.

8          THE COURT:  Okay.  So, everyone's expectation is
9  that the main Defendant, so to speak, is simply the County of
10  San Diego?

11          MS. COLEMAN:  Correct.

12          THE COURT:  Okay.  Is it --

13          MS. COLEMAN:  I know --

14          MR. SWEARINGEN:  Your Honor, that's --

15          MS. COLEMAN:  -- Plaintiffs' counsel is shaking --

16          MR. SWEARINGEN:  -- that's not --

17          MS. COLEMAN:  -- his head and he disagrees with
18  that.  It's our position that it's really just the County.

19          THE COURT:  Okay.  Well, and I promise you I will
20  get to everybody to allow people to state their views on this.
21  It really isn't directly relevant to what we're going to --
22  we're doing this afternoon, but I do want to have a better
23  sense of that.

24          So, Ms. Coleman, your position is that as to the
25  San Diego County entities, the -- it is just simply the County

3

1  of San Diego.

2           Mr. Swearingen, it sounds like you don't see that

3  exactly the same way.  And, again, I -- this isn't really an

4  issue before me, but it -- I do want to just at least

5  understand who everyone thinks the parties are.  So, what is

6  the Plaintiffs' take on this?

7           MR. SWEARINGEN:  Thank you, your Honor.  And, just

8  so you know, my colleague, Priyah Kaul, plans to address the

9  discovery portion of this, but I just wanted to pipe in for

10 the limited purpose to say that the County of San Diego and

11 the Sheriff's Department are both named Defendants in this

12 matter, and neither the County nor the Sheriff's Department

13 moved the Court in its motion to dismiss to dismiss one or the

14 other entity.

15          THE COURT:  Okay.  Fair enough.  I understand your

16 respective positions.  Leave it at that for now.

17          But, for purposes of today's conference, I

18 understand that we're not waiting on separate counsel for the

19 -- the Sheriff's Department.

20          Turning to the reason why we're here, I do want to

21 begin with a thank you to Ms. Kaul for your email that you

22 sent on Friday.  I realize that, you know, summarizing the

23 parties' positions in one sentence in a matter like this is

24 challenging and that, you know, providing a neutral statement

25 of the dispute can also be challenging.  Thank you for doing

4

1 that.  I really do appreciate it.  I, of course, have a number
2 of questions.  But to really have it laid out in the neutral
3 way that you did and to be as concise as you were is a great
4 help to myself and my chambers.  So, thank you for that, Ms.
5 Kaul.

6            Am I pronouncing your name correctly, ma'am?
7            MS. KAUL:  That's correct.
8            THE COURT:  Okay.  Before I -- I turn to the
9 parties on the issue, let me just provide you with my
10 tentative thoughts to help focus that discussion.

11            My -- my purpose in holding these discovery
12 conferences is to help me understand the issue, to hopefully
13 help crystalize it with the parties, and then to decide on the
14 best way to proceed.  There may be instances in which I feel
15 I've got enough information to rule at the discovery
16 conference.  This is probably not one of those situations
17 because I do have more questions that I think would benefit
18 from briefing.

19            So, my tentative thought is that I do want to
20 discuss what's going on with the parties and then set, you
21 know, a fairly tight briefing schedule on the Plaintiffs'
22 request for expedited discovery because there's -- I don't
23 need to tell you all this.  There's obviously a lot going on
24 with the case.  As concise as Ms. Kaul's email was, you know,
25 the -- the six discrete issues are themselves, you know --

5

1 well, they're discrete, but they're also large issues.  And I

2 want to understand that a little bit better.

3         Amongst other things, I do want to hear what the

4 parties have to say on first, you know, the way in which each

5 of these six categories of discovery is tied to a specific

6 cause of action alleged by the Plaintiffs.  I understanding

7 from reviewing Judge Battaglia's order denying the preliminary

8 injunction, that was a concern that he had with respect to the

9 proposed injunctive relief.  I do understand the Plaintiffs

10 are seeking, you know, six discrete areas in which to conduct

11 discovery, and I'd like to hear from you all both today and in

12 your briefing how that ties to the -- the claims that the

13 Plaintiffs have alleged.

14         I also would like to hear the parties' views on

15 whether this is the type of case in which it makes sense to

16 advance the Rule 26(f) conference.  I'm aware that oftentimes

17 that conference is held after the Defendant has answered, and

18 it goes from the Rule 26 conference, which is triggered by an

19 order setting an ENE and a case management conference.

20         I would like to know -- in looking at Rule 26(f)

21 and the, of course, Local Rules, I'm not sure that that's

22 something that it has to occur in that manner.  And this may

23 be a type of case where I consider ordering an earlier Rule 26

24 conference and allow at least some discovery to proceed even

25 while the motions to dismiss are ending.

6

1          I would like to hear from -- you know, briefly on

2 that today.  And then, of course, that will be something that

3 will be helpful to address in your written submissions.

4          And then finally, today, I would like to hear the

5 parties' views on whether an early neutral evaluation would be

6 helpful in this case prior to the ruling on the motion to

7 dismiss, and assuming the motions are denied -- well, I'm just

8 going to say that -- that defendants generally file an answer

9 as to the second amended complaint.

10          Again, I am aware that the ordinary practice is to

11 hold the ENE subsequent to the answer, but there's -- there

12 seems to me facially at least some good reasons why we might

13 want to begin that process with this case earlier.

14          So, those are some tentative thoughts,

15 understanding that I will probably ask the parties to -- to

16 brief this issue further in what would most likely be 10-page

17 briefs by each side on expedited discovery.  Don't feel

18 obligated to tell me, you know, every single point you intend

19 to make in that brief, because you may not know exactly yet.

20 But I would like to hear from the parties generally on those

21 issues.

22          So, I'd like to start with you, Ms. Kaul.

23          MS. KAUL:  Sure.  I'll just sort of -- I think it

24 would be helpful possibly for the Court if you'll allow us to

25 just take a quick step back and kind of frame how we got here

7

1 just briefly, and then I'll touch on each of your -- your

2 questions that you presented.

3        So, and I -- I think the background informs some of

4 -- some of the answers to those questions.  So --

5        THE COURT:  And, Ms. Kaul, that's great.  I don't

6 mind that at all.  I have reviewed the entirety of the docket,

7 you know, starting back in March of 2020 when Mr. Dunsmore

8 filed the complaint pro se to the point when he -- counsel

9 came into the case.  So, yes, please don't -- don't -- not

10 going to shortcut it, but I -- I think it was helpful to me to

11 review the document and understand the -- the path the case

12 has taken over the past almost two and a half years.  But

13 please go ahead.

14        MS. KAUL:  Thank you.  That's -- that's helpful to

15 know, your Honor.

16        So, I'll be -- I'll be especially brief then.  So,

17 our operative complaint includes, you know, as Judge Battaglia

18 noted in his order, many different allegations and claims

19 about unconstitutional and unlawful conditions at the San

20 Diego County --

21        THE COURT:  Ms. Kaul, let me stop you.  And I'm

22 sorry to interrupt you a second time.  I see there are two

23 people in the waiting room.  I did not realize that until just

24 now.  Let me admit them, and then I'll take their appearances

25 and turn to you, ma'am.

8

1            MS. KAUL:  Sure.

2            THE COURT:  Good afternoon, Ms. Moriarty.  I think

3 you're muted, ma'am.

4            MS. MORIARTY (via Zoom):  Good afternoon.

5            THE COURT:  There we go.  Ms. Moriarty, I -- I

6 apologize if you were waiting in the waiting room for a period

7 of time.  There was a bit of a snafu with the Zoom link on our

8 end, and so I -- I didn't realize you were in the waiting room

9 until just now.  So, sorry to -- sorry to keep you waiting.

10            MS. MORIARTY:  No problem.

11            THE COURT:  I'll try not to do that again, of

12 course, but no -- no worries.  Who do you represent, Ms.

13 Moriarty?

14            MS. MORIARTY:  Liberty Healthcare Corporation.

15            THE COURT:  Okay.  I'm sorry.  I was trying --

16 writing as quickly as I could.  Do you and Ms. Hightower

17 represent the same client?

18            MS. MORIARTY:  Yes.

19            THE COURT:  Okay.  Then, understanding that, Ms.

20 Hightower has been on the line.  Ms. Moriarty, for your

21 benefit, I just provided a tentative thought that I would

22 probably want additional briefing on the Plaintiffs' request

23 for expedited discovery.  I raised a few issues that I would

24 appreciate the parties addressing.  Ms. Kaul on behalf of the

25 Plaintiffs was just about to talk a little bit about the

9

1 background of the case for my benefit, and that's pretty much

2 where we are.

3          So, Ms. Kaul, I'll try not to interrupt you for a

4 third time.  Go ahead, ma'am.

5          MS. KAUL:  No problem.  So, our operative

6 complaint, as I said, includes many allegations and claims

7 about the conditions at the San Diego County jails.  Since we

8 entered the case earlier this year, we have proposed to County

9 Defendants and counsel for all the Defendants really numerous

10 ways that we thought we could try to move the case forward

11 informally in various ways, including making proposals about

12 entering into a protective order, about -- about paths to move

13 forward in discovery, including requests for -- to use joint

14 experts as an efficient process to identify and remedy certain

15 issues in the jail.  None of those we felt were -- were very

16 fruitful or successful, and we -- you know, Defendants really,

17 in our view, refused to -- to agree to any of those possible

18 paths to kind of move things on.

19          As you noted, several months ago, we filed a motion

20 for a preliminary injunction, and that was focused on six very

21 specific issues out of the money that we identify in our

22 complaint, and these were issues that oversight agencies and

23 nationally recognized correctional experts had identified as

24 ones that required immediate remedial actions to address the

25 jail's extraordinary death rate, which I do want to come back

10

1 to, and certain obvious and particular ADA violations as it

2 relates to incarcerated people with mobility disabilities.

3        So, those six specific issues are the ones that we

4 listed in our email to chambers.  They were the same issues

5 that were raised in our preliminary injunction motion and

6 which we're now -- on which we're now seeking discovery.

7        You asked how those issues map onto our -- our

8 causes of action or claims in our complaint.  It's actually --

9 the simple and straightforward answer to that is our causes of

10 action one and two are for Eighth and Fourteenth Amendment

11 violations.  That encompasses the policies and procedures that

12 put incarcerated people out of substantial risk of harm.

13        All of our topics, all of our six topics, except

14 for the one ADA topic, fall under and relate to those -- those

15 causes of actions.  We have -- our sixth topic, the other one,

16 relates to ADA issues for mobility impaired -- individuals

17 with mobility disabilities.  That really maps on to cause of

18 action five, which is an ADA claim for lack of access to

19 services for people with mobility disabilities.

20        So, it's causes of action one, two, and five in our

21 view.  All six of the PI topics, you know, are directly

22 related to those.

23        So, just to kind of move forward a little bit with

24 what brought us here I guess, and this is -- I will return

25 back to answer your Honor's questions, but just to set the

11

1 stage a bit more.  So, Judge Battaglia denied our motion

2 without prejudice.  And in his order, he wrote:

3              "Discovery will no doubt edify the

4         merits of Plaintiffs' claims beyond what

5         currently exists and assist the Court in

6         understanding the depths of the problems

7         alleged, as well as remedies available."

8         Through the preliminary injunction process, what

9 became clear to us is that we need -- Plaintiffs need

10 discovery as to those -- those specific and limited issues,

11 and -- and I think there are really sort of a couple of two

12 reasons.

13         So, one is Judge Battaglia's order acknowledged the

14 seriousness of the issues in -- that we raised in our motion.

15 It really can't be overstated that those in our view make this

16 case something different.  There were 18 people who died in

17 the jail last year.  That's three times the national average

18 for jails.  There have been 16 deaths so far this year.

19 That's even worse than Rikers Island, which has obviously

20 garnered a lot of attention.  And, you know, we, frankly, are,

21 in our view, holding our breaths for the next one, and we

22 think these deaths are preventable, and it's the reason we're

23 coming here with this urgent request for discovery.

24         The other thing is that through the course of our

25 preliminary injunction process, both the Court and County

12

1 Counsel acknowledged, again, the need for discovery.  The

2 Court's order, as I mentioned, specifically called that out.

3 County Counsel had oral argument, agreed, saying that it's

4 premature without doing some discovery to determine what is

5 actually the case in the jails.  That's a quote from the

6 hearing.

7          THE COURT:  Where is that in the transcript?  Do

8 you have it in front of you?

9          MS. KAUL:  I can pull it up for you in just --

10          THE COURT:  You can go on if you want, and I'd like

11 you to come back to it, please.  I don't want to --

12 (indiscernible) out of your argument.

13          MR. SWEARINGEN:  your Honor, it's on page 18.

14          THE COURT:  Thank you.  Go ahead, Ms. Kaul.

15 Thanks.

16          MS. KAUL:  And then just the last point I want to

17 emphasize about why we think this is important is that County

18 also made numerous representations at the hearing about

19 changes that were supposed to be made in the jail in the last

20 six months.  There was no evidence of that, of those -- those

21 assertions in the record, in our view.  And, in fact, there

22 was record evidence that contracted many of the statements

23 that were made.  So, that included statements made about

24 changes made to the jail system.  Staff could no longer mute

25 audio intercoms.  Scanners are working in all of the

13

1 facilities.  There are regular audits of safety checks.  Those

2 are things that -- that were not reflected in the record.

3          In order for us to evaluate the need for another

4 preliminary injunction motion, the need and -- and scope of

5 that.  We need additional discovery to really understand

6 what's happening -- what's happening on the ground in the jail

7 and to sort of understand the -- the veracity of those

8 assertions.

9          So, that's -- that's what brought us here today.

10 Procedurally, just to go back to your questions, we -- we

11 would be in favor of, you know, speeding up the Rule 26(f)

12 conference, if that's another mechanism to get immediate

13 discovery.  I'll -- we did understand that -- it's our

14 understanding that there's nothing in the Rules that prevents

15 that from happening, as your Honor said.  It was also an

16 understanding we had that judges often do wait for the

17 pleadings to be settled for -- for that conference to be

18 scheduled.  So, that's the reason that we were searching for

19 various paths to try to get the discovery.  We needed it

20 immediately, but we'd be open to moving up that -- that

21 conference if that's sort of the one that makes sense to add

22 structure to this process.

23          And, then, just your final point about the early

24 ENE, Plaintiffs are open to exploring that if Defendants think

25 that that would be a fruitful and productive path forward.

14

1          THE COURT:  One question for you, Ms. Kaul.  In

2    reviewing the docket in the case, I was unable to see if there

3    was an actual proposed preliminary injunction submitted by the

4    Plaintiffs.  I noticed it was -- there's a lot going through

5    your filing.  It was about 1500 pages.  So, I know it was --

6    it was me, but did you all actually submit a proposed

7    injunction?

8          MS. KAUL:  We did.  We submitted a proposed order.

9    It was Exhibit 1 to Mr. Swearingen's declaration.

10          THE COURT:  I see.  Okay.  Thank you.  I didn't

11    mean to cut you off.  Go ahead, but that's -- that's helpful.

12          MS. KAUL:  No, your Honor.  It's -- so, it's -- by

13    my records, it's Docket 119-3 is that declaration, and -- and

14    so our proposal would have been the first exhibit to that.

15          THE COURT:  Okay.  Thank you.  That -- that's

16    helpful.  And, just for what it's worth, when I was talking

17    about an early Rule 26 conference, it wasn't because I have

18    questions about, you know, the Court's authority to order

19    earlier discovery under Rule 26(d), but I -- I -- for the

20    benefit of my -- I try to provide the parties with my

21    tentative thinking and what might be a workable framework.  I

22    -- it is a -- it would be -- in an ideal world, the parties

23    would be meeting and conferring about the scope of discovery

24    and how it's going to take place.  I mean, just by way of

25    example -- and the parties are in a better position to do that

15

1  oftentimes than the Court, and I understand you want to have

2  your experts go into five of the seven facilities, for

3  example, in addition to the document requests and the

4  depositions.  How -- how exactly that -- you know, those

5  inspections would take place, I mean, raises a whole host of

6  issues that I -- I do believe the parties are best prepared to

7  address in the first instance, and that's what led to my

8  thinking that perhaps, you know, one option of advancing the

9  Rule 26(f) conference, depending on the parties' briefing, is

10 something that I would -- that I would consider.  But I

11 understand why you at least sought initially expedited

12 discovery under -- under Rule 26(d).

13         So, with all of that -- and I'll certainly turn

14 back to you again, Ms. Kaul -- Ms. Coleman, did you -- did you

15 want to speak on behalf of the County?

16         MS. COLEMAN:  Yes, your Honor.  Thank you.

17         So, Plaintiffs' counsel, Ms. Kaul, said that

18 they've been trying to meet and have us agree to move forward

19 with things over the course of the case, and -- and that's

20 true to some extent, but they haven't been willing to narrow

21 down much the issues.  So, for example, you know, a lot of the

22 proposals were contingent on our agreement that there was --

23 that a class would be certified, for example.  And, with

24 regard to the -- the discovery that they wanted to seek, you

25 know, I -- I asked if they'd be willing to do some part of it

16

1  but not all, and they -- they weren't willing to do, for

2  example, just site inspections without also doing PMK

3  depositions and discovery.

4          So, the County believes that the discovery that

5  they've asked for is premature for a number of reasons.

6  First, Plaintiffs have been talking to incarcerated persons.

7  And, as you saw from their collection of declarations, they've

8  been in communication with people that have been in custody,

9  people that are in custody.  They've been gathering

10 information from them.  They've also talked to former

11 employees.  They have experts.  For more than a year, they've

12 been submitting PRA requests and obtaining a large number of

13 documents from the Sheriff's Department.  I've obtained copies

14 of that, and it's so voluminous, it has to be put in

15 relativity.  There's a lot of documents that they've obtained,

16 including after the County filed its opposition to the

17 preliminary injunction motion, PRA requests on the subject of

18 changes to policy and procedures.

19          Plaintiffs' counsel indicated that there was no

20 evidence in the record of changes in the Department, and that

21 is inaccurate.  There were a lot of declarations that talked

22 about the changes in policies and procedures, for example.

23 The other Defendants that are here on the Zoom conference are

24 no longer part of the medical care system.  The whole medical

25 care, dental, vision, all of the components that they had

17

1 before, have all been replaced with Mass Care, an entirely

2 different company that's not currently sued by Plaintiffs but

3 is the company going to work for the -- for the comprehensive

4 medical, vision, dental, psych, everything for the County

5 incarcerated persons.

6          There have been a lot of changes that have been

7 made by the County, including the Rock Mountain facility

8 that's going to be open this fall, which is entirely ADA

9 compliant.

10          In terms of the death rate, they characterized in a

11 lot of their pleadings and here today as extraordinary and

12 higher than other counties.  The statistics they compiled

13 didn't include L.A. County.  L.A. County has a higher death

14 rate.  Not all of the deaths that they had this year or last

15 year were preventable.  There were some for cancer, natural

16 causes, COVID.  They are not, for example, all from drug

17 overdoses or something.

18          In terms of the injunction they proposed, it really

19 wasn't a proposal.  They asked for the County to come up with

20 plans to fix things like not having drugs come into the prison

21 anymore, for the County to come up with a plan within 30 days.

22 The County is already doing scanning, drug dogs, you know, a

23 lot of measures, and they're interdicting a lot of drugs.

24 But, you know, with Fentanyl, it's smaller and smaller

25 quantities.  So, it's -- it's difficult.  It's an issue, but

18

1 there's been no concrete proposals, just that the County
2 should come up with something to -- to fix these issues.  But
3 a large part of the County's solutions to these are that there
4 -- they've upgraded the elevators.  They're upgrading the
5 intercom system.  They're upgrading the video.  That's all in
6 process.  They have a new facility that's coming online that's
7 ADA compliant.  So, there's -- and then the new medical care
8 system.
9          So, there's a lot of things that the County's been
10 working on in response to the -- the state auditor's clear
11 criticisms, things like that.  Every time there's a death,
12 there's a post-incident review, and the County determines if
13 there's changes that can be made to prevent that kind of thing
14 from happening again.
15          So, with that background, we're happy to do
16 briefing and address these issues, but the issues that they
17 want to do discovery are tied to the causes of action.  We're
18 not disputing that.  But they're very broad, and we don't
19 believe all of the issues that they're raising are ones that
20 need discovery before the complaint is at issue or before the
21 Rule 26 conference.  They're not all emergency matters that
22 are life and death.  Some of those things like ADA access to
23 programs in facilities where there is a very high turnover,
24 obviously, you know, if there's a lack of access or -- then
25 that needs to be addressed, but that's not the type of an

19

1  emergency thing that should be addressed before we begin

2  normal discovery.

3         Would an early ENE be helpful?  I doubt it because

4  there were some discussions beforehand about, you know,

5  whether we could proceed with just, for example, ADA issues,

6  some discrete issues, rather than, you know the entire system,

7  and Plaintiffs were not amenable to that kind of thing.  So,

8  it's -- it's sort of been all or nothing, and -- and the

9  County is not going, at this point, to agree to an early

10 resolution given that mind frame.

11        And then the other issue, an advance Rule 26

12 conference.  Well, if the Court orders it, that's fine.  But,

13 otherwise, we think this case should proceed in the normal

14 course and scope unless there's something that we can agree on

15 that actually needs to be expedited and is a -- a discrete

16 portion of the issues rather than a huge swath of issues.

17        THE COURT:  No, I -- I appreciate that, Ms.

18 Coleman.  And, for what it's worth, two things.  For Ms.

19 Garner, Ms. Moriarty, Ms. Hightower, I'm not trying to exclude

20 you.  You may be more than happy to just sit back and just

21 listen given what we're discussing now, but I will trust you

22 all to raise your hands or jump in if you wish to be heard on

23 any of these issues.  It's been my understanding this is

24 really -- this issue primarily concerns the County.  But

25 please jump in if you wish.

20

1          For purposes of this conference, Ms. Coleman, I
2 know you were responding to Ms. Kaul's statements about the
3 deaths in the jail.  I don't need to get into that right now.
4 That is -- I understand that's an issue in the case.  I really
5 am focused on, you know, the procedural mechanism that will
6 best move this case forward and protect the rights of both the
7 Plaintiffs and the Defendants.
8          I have to tell you, Ms. Coleman, as you're talking
9 about, you know, the County's -- let's call it remedial
10 efforts, with respect to ADA compliance at Rock Mountain and
11 other steps that the County has -- consolidating the
12 healthcare services, I would sort of gently push back on the
13 idea that an early ENE would not be productive.  I fully get
14 that this isn't the type of case that I might otherwise have
15 or we're going to meet for a couple of hours and come up with
16 a settlement agreement.  I'm not -- so, I'm optimistic, but
17 I'm not so naive as to think that.  But I -- I do think that
18 in light of that -- and there may have been dialogue between
19 the parties on these issues.  I -- I do think that it -- I
20 would really strongly urge the parties to consider it.  I
21 mean, I know I have the authority to set it, but, I mean,
22 really, to come into it prepared to talk in good faith,
23 because this -- this case -- you know, I don't hear Ms. Kaul
24 saying this is, you know, an all or nothing in one session,
25 and if we could work toward really focusing the issues that

21

1 are in dispute, I -- I think that would benefit the parties.
2 It would help us focus discovery.  It would -- and it would
3 really allow for this case to proceed as efficiently as
4 possible.  And I don't -- Ms. Coleman, I don't understand you
5 to be disagreeing with that.  I think what you're saying, as I
6 understood it, was you thought it -- you had been told it was
7 an all or nothing with respect to settlement.  I don't need to
8 get -- revisit what happened before, but going forward, I
9 think that there is that possibility of an early ENE actually
10 being very helpful in this.  And by early ENE, I mean possibly
11 multiple early ENE's as we work through the issues in the
12 case.

13          MS. COLEMAN:  If this Court thinks it will be
14 helpful, we're amenable.  Just -- yeah, and maybe the Court
15 could help us narrow the issues a little bit.

16          THE COURT:  Sure.  Okay.  This is what would be
17 very -- Ms. Kaul, if you want to respond to any of that, I'm
18 more than happy to hear you.  I think I -- I understand the
19 parties' respective positions, and I -- it's not going to be
20 helpful to me for this conference to debate, you know, sort of
21 the merits of the claims.  But if there's more about the
22 procedural issues, Ms. Kaul, Mr. Swearingen, I'm happy to --
23 to hear from you further.

24          MS. KAUL:  I'll just briefly respond to a couple of
25 points without rehashing the arguments that were really set

22

1 forth on -- on the preliminary injunction motion.  So, first,

2 Ms. Coleman noted that we have been investigating the jail and

3 gathering evidence through other mechanisms, including Public

4 Records Act request.  In our view, that is -- that's just no

5 replacement for discovery, for a few reasons.  First of all,

6 we are seeking discovery that goes beyond purely just

7 documents.  Second of all, even as to the documents, the

8 County has refused to provide many categories, citing

9 provisions of the Government Code, for example, drafts and

10 notes and memoranda for these updated policies.  Security

11 files, personnel and medical records, all of that has been

12 deemed private or otherwise subject to  withholding.

13         There have also been delays in receiving those

14 documents.  We're still working on PRA requests that we

15 submitted back in March.  And what we're looking for is some

16 formality to the process or court oversights.  Whether that

17 happens through 26(d) or early Rule 26(f), that's -- that's

18 what we're seeking.

19         And just the other point I want to make is some of

20 the representations that Ms. Coleman just made, again, about

21 the remedial actions that have been taken by the jail, it's

22 the exact reason that we need discovery.  Those are the exact

23 kind of statements that, in our view, there is no evidence for

24 that.  We haven't been able to obtain it through any -- any

25 other means or mechanisms.  They were stated at the hearing on

23

1 the preliminary injunction.  They've been stated again today.

2 That is not our understanding what's happening on the ground,

3 and we cannot evaluate a potential further motion for

4 injunction without -- without more information.  But I -- you

5 know, I think, just to circle back, I think we're open to

6 talking.  There has obviously been quite a wide gulf between

7 the parties' positions on the various issues.  But -- but --

8 but we -- you know, if that's the best path forward that the

9 Court sees, then we'd be willing to engage in those kinds of

10 discussions.

11          But I would say, you know, we, again, wouldn't want

12 any of that to derail proceeding with discovery in the event

13 that other sorts of efforts to -- to resolve certain issues

14 are unsuccessful.

15          THE COURT:  For what it's worth, I -- I don't

16 believe there's any provision in the Federal Rules of Civil

17 Procedure that would allow your informal efforts to gather

18 information to replace, you know, the more formal mechanism

19 for discovery.

20          But -- and -- but -- but the fact is if you -- I

21 think what I understood Ms. Coleman to be saying is you've

22 already done -- you've done a lot of investigating as, you

23 know, good lawyers will do to try to gather the materials that

24 they can.  This all informs my, you know, tentative view that,

25 although I understand the Plaintiffs want additional

24

1 information and, you know, we'll work through that, that

2 waiting until all of that has happened before beginning the

3 ENE process might unnecessarily delay at least reaching

4 agreement on some areas or at least crystalizing the issue.

5          So, I don't -- I don't see -- to address your

6 concern, Ms. Kaul, I -- I see these as, you know, parallel

7 tracks.  And, so, with that in mind, let me ask you this.

8 Have -- the Plaintiffs seek -- let's go with site visits.  The

9 Plaintiffs are seeking expedited discovery for site visits at

10 I believe five of the seven facilities that the Sheriff's

11 Department is running.

12          Have -- have the parties engaged in a -- any sort

13 of meet and confer process as to how that would work

14 logistically, beyond just naming the facilities?

15          MS. KAUL:  I don't -- I don't want to speak for

16 both parties, but I don't think we got that far.

17          THE COURT:  Okay.  I mean, that's the -- not so

18 much as -- if that's the correct answer, then fair enough.

19          And, Ms. Coleman, it looks like you're shaking your

20 head.

21          MS. COLEMAN:  No, we --

22          THE COURT:  Not so much either?

23          MS. COLEMAN:  We haven't talked about specifics,

24 no.

25          THE COURT:  Okay.  Well, I mean, you guys agree on

25

1 something.  You haven't talked about specifics.  So, we're

2 making progress.

3          All right.  I -- here's what I would like to do.

4 And I'll be happy to hear from you all as to -- as to your

5 thoughts on this, but this is what I'm inclined to do, and I

6 will memorialize this in a -- in a minute order.

7          I would like the parties to brief the issue raised

8 by the Plaintiffs for expedited discovery, and I would like to

9 have that addressed in briefs not to exceed 10 pages per side,

10 and I would like to have -- I do want to move forward on this.

11 So, I don't want to unnecessarily jam anyone up, but so please

12 speak up if you think this is really something that we cannot

13 accomplish.  But I -- I would like to rule on this issue

14 quickly, and to do so, it would be helpful for me to have the

15 Plaintiffs' brief within one week by September 7th and the

16 Defendants' brief one week after that.  I don't need a reply

17 brief unless I specifically request it after I read the

18 Defendants' opposition brief.

19          In those -- in those briefs, it would be helpful to

20 address the issues that I raised at the beginning as to

21 whether it's expedited discovery or an earlier Rule 26(f)

22 conference.

23          And then, Ms. Kaul, you've clarified for me pretty

24 quickly the causes of action that these six areas of discovery

25 relate to.  You could put that in your -- in your motion, but

26

1 that can be just a sentence or two.  I get it.

2           And then I think it would really inform what I'm

3 trying to do to get some more clarity as to how this is

4 actually going to happen.  I mean, and I'm talking

5 specifically about the site visits.  I mean, I get the Rule 34

6 document requests and the PMK deposition.  For the deposition,

7 it would be helpful for me to know how many you anticipate

8 taking.  Is it just the person most knowledgeable for the

9 County on each of these six issues presumably, which would

10 then be up to the County as to how many -- how many deponents

11 there may be?

12           I really -- and the -- before you file that brief,

13 it would, I think, be productive to have the parties speak

14 about this.  And, so, I am going to direct the parties to meet

15 and confer prior to the Plaintiff filing your opening brief.

16 I am hopeful that that -- even though I know that the County

17 is not going to agree to probably expedited discovery.  I

18 understand Ms. Coleman's position -- but, at least for the

19 County to have some idea of how -- how the Plaintiffs would

20 propose going about this, you know, it's going to be the same

21 kind of thing you're going to be talking about at your Rule

22 26(f) conference anyway when you're coming up with a joint

23 discovery plan.  So, that's really -- as you can tell the

24 direction in which I'm moving, that's really what we're

25 talking about doing now.

27

1          And I would also direct the parties when you do

2 meet and confer, assuming there is going to be an early ENE in

3 this case, which is a pretty fair assumption at this point,

4 what issues should we address.  I hear what Ms. Coleman is

5 saying.  This case is not going to be amenable to one ENE

6 which is we just sit down and say, okay, "What's at issue

7 here?"  There's a bunch of things at issue.  And I think

8 really coming up with a plan for how to focus on the ENE's in

9 this case would be -- would be helpful.  And I would ask the

10 parties to engage in that meet and confer prior to Plaintiff

11 filing your brief, and hopefully that will help with the

12 briefing for both of you.

13          MS. COLEMAN:  And, your Honor, might I make a

14 request as well?

15          THE COURT:  Sure.

16          MS. COLEMAN:  It would be helpful in terms of the

17 PMK to see a list of topics, like what the deposition notices

18 would look like or at least the topics specified for the

19 notices.

20          THE COURT:  And that is a perfect subject to cover

21 at your meet and confer.  And I'm sure -- and, no, look, I

22 don't mean that flip at all, Ms. Coleman.  I think that's

23 exactly what the parties should be talking about.  The answer

24 from Ms. Kaul and Mr. Swearingen may be the six issues that

25 are listed in Ms. Kaul's email, but I think it's a fair

28

1 question for you to say, look, those issues are really broad.

2 You know, Western's going to want to dig in on them to the

3 extent we can't agree, and, you know, to really have that

4 conversation so that we can do this in a meaningful manner,

5 because, you know, I do expect that figuring out who the

6 person most knowledgeable is on the various topics.  It should

7 be, you know, a pretty rare instance in which I'm becoming

8 involved in that level of detail.  I understand this case is

9 different.  I really do.  And if that's what you need me to

10 do, no problem.  I will do it, but I will -- you know, I

11 really will look to the parties in this case -- and speaking

12 specifically to the Plaintiffs and the County -- to

13 understanding your fundamental disagreements and that this

14 case, you know, involves, you know, some very serious

15 allegations, as Judge Battaglia mentioned, to -- you know, to

16 work on this as cooperatively as -- as you can.  And I'll --

17 to the extent you can't figure it out, I -- you've got me, and

18 -- but I -- I think that will hopefully focus your issues.

19         What I would then do is after I receive the

20 Defendants' opposition brief on or before September 14th, I

21 will decide if I need a reply brief from the Plaintiffs.  If I

22 do, it will be on a tight turnaround, but I don't anticipate

23 that will be necessary if you've met and conferred, and I will

24 then either issue a written ruling or I will, if I've gotten

25 more questions, which I might given the nature of this case, I

29

1 will -- I will convene, you know, a quick further hearing on

2 this request.

3          So, that is my tentative thinking, along with the

4 directive to -- to meet and confer.

5          Ms. Moriarty, I see that you've unmuted.  Do you

6 wish to be heard on this issue?

7          MS. MORIARTY:  I just wanted to be -- yes, your

8 Honor.  Thank you.  I just wanted to be clear that we would

9 not be required to meet and confer or participate in this

10 discussion, right?

11          THE COURT:  Well, let me ask.  Ms. Kaul, Mr.

12 Swearingen, do you think that this meet and confer requires

13 Defendants beyond the County?

14          MS. KAUL:  No, your Honor, we don't think so.  And

15 I should clarify our meet and confer before this conference

16 was also with the County only.  We just copied everyone on the

17 email to the Court to -- to, you know, cover our bases.  But

18 we don't believe that any other Defendants are directly

19 involved in what we're proposing.

20          THE COURT:  Ms. Garner -- oh, go ahead, Ms.

21 Moriarty.

22          MS. MORIARTY:  So, then your order will reflect

23 that?  Thank you.

24          THE COURT:  Yes.  It will be -- it will be limited

25 to -- it will say specifically the County of San Diego and --

30

1 and the Plaintiffs.

2          MS. MORIARTY:  Thank you.

3          THE COURT:  Ms. Garner, I'm assuming that's just

4 fine with you, but if you -- if you feel otherwise, please let

5 me know.

6          MS. GARNER:  No, your Honor.  I agree with that.

7          THE COURT:  All right.  So, before we -- before we

8 adjourn for today, again, I know there's a lot going on in

9 this case, and I want to -- I really want to assist the

10 parties in -- in working through this, whether it's working

11 toward a resolution or working toward an efficient discovery

12 process or probably both.

13          So, is there anything else that would be helpful

14 for us to address this afternoon that we have not already from

15 your perspective, Ms. Kaul?

16          MS. KAUL:  No, not for Plaintiffs, your Honor.

17          THE COURT:  Okay.  How about you, Ms. Coleman?

18          MS. COLEMAN:  No, your Honor.  Thank you.

19          THE COURT:  Okay.  Look, I appreciate you all being

20 here today.  I -- I'm looking forward to working with -- with

21 all the parties to move forward with the case.  I'll issue an

22 order forthwith reflecting, you know, what we've discussed at

23 today's hearing, and then I'll look forward to seeing

24 Plaintiffs' brief in a week and the County's brief a week

25 after that.

31

1        I don't -- and then the issues with respect to
2 who's a proper party and who's been served, I asked that at
3 the beginning just so I had clarity on whether everyone was
4 here, and that is really an issue that is more properly
5 addressed by Judge Battaglia probably.  So, I'll table that
6 one.  I understand your positions on it.

7        MS. COLEMAN:  Well, if we do have an ENE with all
8 the parties, that might to be a good thing to address, whether
9 there needs to be other Defendants other than the County, in
10 particular, the past medical providers versus the future,
11 but --

12        THE COURT:  Okay.  No, I understand.  Let's -- and,
13 yes, fair point, Ms. Coleman.

14        Okay.  If that is it for now, thank you all for --
15 for being here and for taking the time to educate me a little
16 bit.  This is -- oh, okay.

17        I was looking through the docket today as I was
18 preparing for the hearing.  So, Ms. Kaul, if I could impose on
19 you for something, one of the DLA attorneys has an address in
20 CMECF that appears to be an apartment, Ms. -- Ms. Neal.  This
21 is not really my business, but it -- it jumped out at  me that
22 some -- I haven't seen a home address in CMECF before that may
23 not be.  It may be a law office that I don't know about, but
24 if you could reach out to your co-counsel and just make sure
25 that Ms. Neal is aware of that.  She may or may not want that

32

1 address to be on CMECF.

2          MS. KAUL:  Thank you, your Honor.  I think that's

3 probably just an error.  So, we'll fix that on our end.

4          THE COURT:  Or -- or she doesn't care or not, but,

5 you know, it's unusual enough that, you know, everybody can

6 access it.  That's all.

7          MS. KAUL:  Yes.  I appreciate that.

8          THE COURT:  Okay.  Thank you all.  Enjoy the rest

9 of your day, and I look forward to receiving your briefs in

10 short order.

11          ALL:  Thank you, your Honor.

12          THE COURT:  Thanks everyone.  Take care.  Bye bye.

13      (Proceedings concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

33

1          I certify that the foregoing is a correct

2   transcript from the electronic sound recording of the

3   proceedings in the above-entitled matter.

4

5   /s/Jordan Keilty                    9/28/2022
    Transcriber                         Date

6

    FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

7

8   /s/L.L. Francisco
    L.L. Francisco, President
9   Echo Reporting, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25