GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California 92101-4297
Telephone: (619) 699-2700
Facsimile: (619) 699-2701
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>　　　　Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' SECOND MOTION FOR LIMITED EXPEDITED DISCOVERY**<br><br>Mag. Judge: Hon. David D. Leshner<br><br>**NO HEARING DATE PER DKT. 240** |

## I. INTRODUCTION

Defendants San Diego County Sheriff's Department and the County of San Diego ("Jail Defendants") systemically and willfully discriminate against Plaintiffs and incarcerated people with disabilities and fail to provide reasonable accommodations in running the San Diego County Jail's programs, services, and activities. Plaintiffs seek expedited discovery related to these matters, in anticipation of a renewed motion for preliminary injunctive relief.

The systemic mistreatment of people with disabilities is unlawful under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("Rehab Act"), and causes serious and irreparable harm. For example, Anthony Edwards missed an eye appointment with a specialist to assess treatment for ongoing vision problems from glaucoma—it was not rescheduled for months—because he could not attend the appointment without a cane or wheelchair, which the Sheriff's Department failed to provide him. Dkt. 176 ¶ 17 & Ex. K. Christopher Nelson, who uses a wheelchair, was housed in a cell with a stool bolted in front of the desk, which meant he could not roll his wheelchair to use the desk. While trying to transfer from his wheelchair to the stool, Nelson fell and hurt his wrist so badly he could not move it. Dkt. 176-2 ¶ 8 & Ex. C. Ernest Archuleta missed a hearing in his criminal case after Jail staff refused to provide him a wheelchair for court, and he fell and struck his head when forced to take the stairs for a family visit. Dkt. 176-7 ¶¶ 13-14.

The disability-related legal violations at the Jail are pervasive, as evidenced by the declarations already submitted in this case. The Sheriff's Department's deficient systems and policies for identifying people with disabilities, tracking their accommodations, and providing assistive devices or effective communication contributed to James Clark falling out of a broken wheelchair that the Sheriff's Department had failed to promptly repair or replace, Dkt. 175-12 ¶ 9, deprived Darryl Dunsmore of accommodations that allow him to eat, ambulate, and communicate, Dkt. 175-7 ¶¶ 16, 19, 22-24, and left Josue Lopez unable to

effectively communicate during many medical appointments and interactions with deputies who appeared not to know that Lopez is Deaf. Dkt. 119-28 ¶¶ 12-13. One person testified that they could not safely use the toilet at Central Jail because their toilet had no grab bar, Dkt. 162-12 ¶ 10, and another person could not access veterans' programming at Vista on account of his disability. Dkt. 162-10 at ¶ 4. *See also* Dkt. 119-9 ¶¶ 39-58; Dkt. 162-6 at ¶¶ 14-17 (ADA expert describing harm from ADA violations at the Jail). These declarations likely only scratch the surface of problems at the Jail.

Plaintiffs seek discovery about the Jail's current ADA policies and practices to evaluate the need for and scope of a potential renewed motion for a preliminary injunction. Systemic violations of the rights of incarcerated people with disabilities constitutes irreparable harm to warrant preliminary injunctive relief. *See, e.g.*, *Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 956-57 (N.D. Cal. 2015).

Specifically, Plaintiffs seek permission to propound the following early discovery: (1) Approximately 35 document requests; (2) ADA expert inspections at the Central, George Bailey, Las Colinas, Rock Mountain, and Vista facilities; and (3) Rule 30(b)(6) depositions of persons most knowledgeable about ADA issues. Plaintiffs request that the Court's order require document productions within 30 days of service of requests, inspections within 45 days of service of notices, and depositions within 60 days of service of notices. Plaintiffs do not believe this early discovery will impact case management, other than to make an early neutral evaluation conference on ADA issues more productive. Separately, Plaintiffs request that the Rule 26(f) conference be advanced to help the parties move this case toward resolution. Given the issues this lawsuit seeks to address—which cause increasing harm to those incarcerated at the Jail with each passing day—the action is unique in its urgency. Plaintiff Dunsmore filed this case almost three years ago, but no discovery has been exchanged to date.

## II. PROCEDURAL HISTORY

Plaintiffs previously moved for expedited discovery on six different issues in their preliminary injunction motion filed May 2, 2022. Dkt. 119; *see* Dkt. 212 (discovery motion). On September 27, 2022, this Court issued a tentative ruling indicating it was inclined to grant Plaintiffs discovery on three of the six issues. Later the same day, the District Court dismissed Plaintiffs' Second Amended Complaint, *see* Dkt. 219,[1] thereby mooting Plaintiffs' expedited discovery motion. Dkt. 221. Plaintiffs filed a Third Amended Complaint ("TAC") on November 18, 2022. Dkt. 231.

Plaintiffs bring this renewed, more narrow motion to seek discovery related to the issue of Jail Defendants' compliance with the ADA and Rehab Act under Count 3 of the TAC. Thirteen of the fourteen Plaintiffs have disabilities, including eight with mobility disabilities. TAC ¶¶ 18-31. Plaintiffs' original preliminary injunction motion included this issue, and Plaintiffs seek early discovery to better identify the scope of the problems as they consider a forthcoming preliminary injunction motion.

## III. ARGUMENT

This Court has discretion to authorize discovery prior to the Rule 26(f) conference. *See Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); *Citizens for Quality Educ. San Diego v. San Diego Unified Sch. Dist.*, No. 17-CV-1054-BAS-HMA, 2018 WL 1150836, at *2 (S.D. Cal. Mar. 5, 2018). Courts in the Ninth Circuit apply a "good cause" standard in deciding whether to allow expedited discovery. *Semitool, Inc.*, 208 F.R.D. at 276. Good cause may be found "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id*. at 276. A court must examine the requested discovery based on "the entirety of the record and the reasonableness of the request in light of all surrounding

---

[1] The District Court did not find Plaintiffs' ADA allegations lacked merit, but rather dismissed the entire complaint on the basis of "shotgun pleading." *Id.* at 7.

circumstances." *Id.* at 275.  Courts consider five non-exhaustive factors to determine whether good cause justifies expedited discovery:  "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 768 F. Supp. 2d 1040, 1044 (N.D. Cal. 2011); *see also Light Salt Invs., LP v. Fisher*, No. 13-CV-1158-MMA-DHB, 2013 WL 3205918, at *1 (S.D. Cal. June 24, 2013).

### A. Plaintiffs Have Good Cause for Expedited Discovery

Each factor weighs in favor of a finding that good cause exists for the Court to permit the commencement of this limited pre-Rule 26(f) conference discovery.

#### 1. Plaintiffs Seek Discovery as to an Issue Raised in Their Preliminary Injunction Motion, Which May Be Renewed

Expedited discovery is appropriate in cases "such as those involving requests for a preliminary injunction." Fed. R. Civ. P. 26(d), Advisory Committee's Note to 1993 Amendment.  Even where, as here, a preliminary injunction motion is not pending, expedited discovery may be appropriate to "allow [a] plaintiff to determine whether to seek an early injunction." *Interserve, Inc. v. Fusion Garage PTE, Ltd.*, No. 09-CV-05812-JW-PVT, 2010 WL 143665, at *2 (N.D. Cal. Jan. 7, 2010).

Plaintiffs previously sought a preliminary injunction related to Jail Defendants' violations of disability laws.  *See* Dkt. 119-1 at 16-18, 26-28.  The District Court recognized the "seriousness of the allegations brought by Plaintiffs regarding the conditions" in the Jail and stated that "[d]iscovery will no doubt edify the merits of Plaintiffs' claims … and will assist the Court in understanding the true depths of the problems alleged as well as the remedies available." Dkt. 203 at 10. Jail Defendants' ongoing ADA and Rehab Act violations constitute irreparable harm and warrant a preliminary injunction. *See Hernandez*, 110 F. Supp. 3d at 956-57 (denial of access to programs including exercise, religious services, substance use

programming, and reentry classes constitutes irreparable harm meriting preliminary injunction); *D.R. v. Antelope Valley Union High Sch. Dist.*, 746 F. Supp. 2d 1132, 1145-46 (C.D. Cal. 2010) (denial of access to programs and services due to non-functioning elevator constitutes ongoing irreparable harm meriting preliminary injunction); *Lonberg v. City of Riverside*, 2007 WL 2005177, at *8 (C.D. Cal. May 16, 2007) (holding that non-compliant architectural features cause "a real and immediate threat of substantial and irreparable harm").  The evidence already submitted in this case demonstrate that the prospective harms Plaintiffs face are in many ways more serious than the above-cited cases.

### 2. The Requested Discovery Is Limited and Narrowly Tailored

Expedited discovery is permissible when it has a "narrow focus," *Sambreel Holdings LLC v. Facebook, Inc.*, No. 12-CV-668-CAB-KSC, 2012 WL 13175902, at *4 (S.D. Cal. June 18, 2012), or where it is "relatively limited," *Light Salt Invs.*, 2013 WL 3205918, at *2.  The requested discovery is far more limited than the discovery Plaintiffs requested in their first discovery motion.  Dkt. 212.  It is more limited than the initial set of discovery that the Court was tentatively inclined to grant in response to that motion.  And it is narrowly tailored in a manner that Jail Defendants previously implied would be sufficient.  *See* Dkt. 213 at 8 (Jail Defendants' prior opposition noting that prior request for expedited discovery would be more narrowly tailored if focused "on one subject area, such as ADA-compliance for example").

### 3. The Discovery Is Necessary for Plaintiffs to Evaluate a Renewed Motion for Injunctive Relief and for the Court to Rule on Such a Motion

Plaintiffs seek evidence that is directly relevant to a potential renewed preliminary injunction motion.  This evidence is necessary in part to address contradictions and open questions in the record, and to respond directly to the District Court's statement that discovery may reveal the depths of the problem at the Jail and available remedies.  Dkt. 203 at 10.  As this Court aptly noted, there is "a lot

of anecdotal stuff flying around." Dec. 7 IDC Trans. at 15:15-16.

Jail Defendants have made inconsistent unsworn representations about improving ADA compliance at the Jail, but only discovery can test whether those claims are supported by evidence. In August, Jail Defendants' counsel told this Court about "the Rock Mountain facility that's going to be open *this fall*, which is entirely ADA compliant." Aug. 31 IDC Trans. at 17:6-9 (emphasis added). Now, Jail Defendants represent that the Rock Mountain facility is still not ADA-compliant and will not be "done and operational [until] the first quarter of 2023." Dec. 7 IDC Trans. at 9:17-19. Left unsaid is that Rock Mountain's opening has repeatedly been promised and then delayed since at least 2019. *See, e.g.*, Dkt. 119-3 ¶ 13, Ex. L at 598 (grand jury report stating in May 2019 that "Rock Mountain … is projected to open soon, but the completion date continues to be delayed").

Meanwhile, incarcerated people continue to be irreparably harmed in Jail Defendants' non-ADA compliant facilities. Even if some males with disabilities are eventually moved to Rock Mountain, the Sheriff's Department houses (and will continue to house) people with disabilities at other facilities in the Jail system. *See, e.g.*, Dkt. 119-19 ¶¶ 2-7; TAC ¶¶ 243-44, 251, 270, 272 (describing problems with accessibility and reasonable accommodations at George Bailey, Las Colinas, and Vista). A Sheriff's Department official testified that Central will remain the primary booking facility for males, meaning that people with disabilities will still be housed at Central, even if some later transfer to Rock Mountain. *See* Dkt. 153-8 ¶ 11.

Jail Defendants' counsel also represented that once Rock Mountain is open, the Sheriff's Department plans to—at some unspecified future time—upgrade "Central Jail and some of the other facilities that need some updates," an implicit admission that those facilities are not ADA-compliant. Dec. 7 IDC Trans. at 9:20-24. Plaintiffs' ADA expert is "very skeptical" that Rock Mountain will be ADA-compliant if the Sheriff's Department remodeled Rock Mountain based on the site accessibility evaluation available to her. Dkt. 162-6 ¶ 11. "Wait for Rock

Mountain" is a hollow refrain to the many incarcerated people that are presently subjected to unsafe facilities without adequate accommodations.

There are also factual disputes between Plaintiffs' ADA expert and Sheriff's Department declarants about accessibility features at the Jail, such as about stools in front of desks in cells housing people with mobility disabilities. Compare Dkt. 119-9 ¶ 44 with Dkt. 153-3 ¶¶ 4, 11. Plaintiff declarations show how broken elevators at Central result in missed court hearings or people with mobility disabilities being forced to try and take the stairs. Dkt. 119-9 ¶¶ 40-41. By contrast, the Sheriff's Department's declarant claims that "[t]here has never been an instance when all of the elevators in the Central facility were out of service," and that staff elevators would be used instead of forcing incarcerated people to use stairs. Dkt. 153-3 ¶ 9. Plaintiffs' ADA expert describes factual disputes with Sheriff's Department declarants about grab bars for toilets, shower chairs for people with mobility disabilities, and stools blocking wheelchair users from using telephones, as well as how inspections can help resolve the disputes. Dkt. 162-6 ¶¶ 7-10. The Sheriff's Department also concedes some architectural features are non-compliant but claims they will be addressed (without providing any deadline). Dkt. 153-3 ¶¶ 11-13. Plaintiffs' discovery requests aim to resolve these factual disputes and gaps in the record, and to assess whether the Sheriff's Department's promises to act have come to fruition.

Plaintiffs' ADA expert also detailed systemic problems with the Sheriff's Department's policies and procedures for, *inter alia*, identifying and accommodating people with disabilities, Dkt. 119-9 ¶¶ 17-20; providing and replacing assistive devices, *id.* ¶¶ 24-28; evacuating incarcerated individuals with mobility disabilities in the case of an emergency, *id.* ¶ 30; and tracking individuals with disabilities. *Id.* ¶ 31. Plaintiffs' discovery requests seek unredacted policies and information about their implementation in practice in order to understand why and to what extent the Sheriff's Department is failing to provide reasonable accommodations, effective

communication, and assistive devices.

In ruling on motions like this one, "[c]ourts also consider whether the requested 'expedited discovery would ultimately conserve party and court resources and expedite the litigation.'" *Rose v. Seamless Fin. Corp.*, No. 11-CV-00240-AJB-KSC, 2012 WL 6052006, at *2 (S.D. Cal. Dec. 4, 2012) (quoting *Semitool*, 208 F.R.D. at 276). This discovery will help Plaintiffs determine the scope of a renewed preliminary injunction motion and provide better factual information if/when the Court hears such a motion. This evidence is not available through any other means.[2] Jail Defendants have conceded that discovery will clarify issues raised in Plaintiffs' first preliminary injunction motion. Dkt. 204 at 18:12-16 (counsel stating that "it's premature, without doing some discovery, to determine what is actually the case").

### 4. This Discovery Would Not Impose an Undue Burden

Courts in this district have granted requests for expedited discovery of a similar nature and scope. *See, e.g.*, *NobelBiz, Inc. v. Wesson*, No. 14-CV-0832-W-JLB, 2014 WL 1588715, at *2 (S.D. Cal. Apr. 18, 2014) (ordering expedited discovery including requests for production, a deposition, interrogatories, and a third-party subpoena); *U.S. v. Erie County, N.Y.*, No. 09-CV-849, Dkt. 42, at 10 (W.D.N.Y. Mar. 6, 2010) (ordering expedited discovery including interrogatories, requests for production, and an inspection of jail). Notably, Plaintiffs' discovery requests would impose a lesser burden than the discovery the Court was previously inclined to grant before Judge Battaglia dismissed the then-operative complaint.

**RFPs**. Plaintiffs provided draft document requests to Jail Defendants last month, well in advance of this motion. Jail Defendants have already sought

---

[2] Jail Defendants previously argued that Plaintiffs have received documents through California Public Records Act ("CPRA") requests. The CPRA is no substitute for discovery. Of course, CPRA does not provide for inspections and depositions. Even as to documents, the Sheriff's Department has refused to provide many categories of documents and delayed for months in providing documents—which are often heavily redacted. Defendants have failed to produce any materials responsive to the 27 ADA-related requests submitted almost two months ago.

clarification on most of the RFPs, the majority of which are limited to the past two years.[3] In meet and confer discussions, Jail Defendants have stated that they may not be able to respond within 30 days. But at the hearing on Plaintiffs' preliminary injunction motion, Jail Defendants' counsel indicated they had searched for any available and relevant ADA documents. Dkt. 204 at 16:22-18:5. Jail Defendants have had nearly two months to start collecting responsive documents, as their counsel has acknowledged that Plaintiffs' October CPRA requests are "very similar" to what Plaintiffs propose for document discovery.

**Inspections**. Plaintiffs request that their ADA expert inspect the five Jail facilities where incarcerated people with disabilities are housed (or will be housed). The parties have tentatively agreed that if the motion is granted, such inspections would include no more than two people from Plaintiffs' counsel, would be limited to a half-day per facility, that Plaintiffs' expert could conduct limited staff interviews, that Sheriff's Department's counsel will not ask questions of incarcerated people, and that Jail Defendants would review any photos Plaintiffs' counsel takes.

**PMK Depositions**. Plaintiffs seek to depose persons most knowledgeable about ADA issues. Jail Defendants have expressed concern that Plaintiffs' topics will require a large number of PMK deponents, which will take longer than the 60 days Plaintiffs propose. Plaintiffs are amenable to the Court providing Jail Defendants more time to complete the depositions, if and as necessary.

### 5. A Motion to Dismiss Will Not Obviate This Discovery

It is unclear when Jail Defendants' anticipated motion to dismiss the TAC will be resolved and the Rule 26(f) conference scheduled.[4] Jail Defendants' prior motion to dismiss did not specifically seek to dismiss the claim on which Plaintiffs

---

[3] Plaintiffs are willing to work together with Jail Defendants to specify the precise documents sought, to the extent necessary.

[4] Courts routinely grant motions for expedited discovery even with motions to dismiss pending. *See, e.g.*, *Quintero Fam. Tr. v. Onewest Bank, F.S.B.*, No. 09-cv-1561-IEG-AJB, 2009 WL 3381804, at *1 (S.D. Cal. Oct. 16, 2009).

1  currently seek discovery.  Limited discovery now is not too far in advance of when
2  discovery may commence in the normal course.  *See Bona Fide Conglomerate Inc.*
3  *v. SourceAmerica*, No. 14-CV-0751-GPC-DHB, 2014 WL 12515242, at *2 (S.D.
4  Cal. Nov. 7, 2014).  Waiting severely prejudices Plaintiffs, as every instance of
5  irreparable harm that occurs between now and the opening of discovery is one that
6  potentially could be prevented.  Jail Defendants would be unharmed by an expedited
7  discovery schedule on this discrete issue in the case.

DATED:  December 14, 2022         Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Van Swearingen*
    Van Swearingen

Attorneys for Plaintiffs
Email:  vswearingen@rbgg.com