GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

(*additional counsel on following page*)

Attorneys for Plaintiffs

SUSAN E. COLEMAN – 171832
BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600
San Diego, California 92101-8474
Telephone: (619) 814-5803
Facsimile: (619) 814-6799
scoleman@bwslaw.com

ELIZABETH M. PAPPY – 157069
BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Ste. 1000
San Jose, California 95113-2336
Telephone: (408) 606-6300
Facsimile: (408) 606-6333
epappy@bwslaw.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DARRYL DUNSMORE, ANDREE
ANDRADE, ERNEST ARCHULETA,
JAMES CLARK, ANTHONY EDWARDS,
LISA LANDERS, REANNA LEVY,
JOSUE LOPEZ, CHRISTOPHER
NELSON, CHRISTOPHER NORWOOD,
JESSE OLIVARES, GUSTAVO
SEPULVEDA, MICHAEL TAYLOR, and
LAURA ZOERNER, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

SAN DIEGO COUNTY SHERIFF'S
DEPARTMENT, COUNTY OF SAN
DIEGO, SAN DIEGO COUNTY
PROBATION DEPARTMENT, and DOES
1 to 20, inclusive,

Defendants.

Case No. 3:20-cv-00406-AJB-DDL

**JOINT CASE STATUS STATEMENT**

Mag. Judge: Hon. David D. Leshner

1  (*counsel continued from preceding page*)

2  CHRISTOPHER M. YOUNG – 163319
   ISABELLA NEAL – 328323
3  OLIVER KIEFER – 332830
   DLA PIPER LLP (US)
4  401 B Street, Suite 1700
   San Diego, California  92101-4297
5  Telephone:   (619) 699-2700
   Facsimile:   (619) 699-2701
6  Email:       christopher.young@dlapiper.com
                isabella.neal@dlapiper.com
7               oliver.kiefer@dlapiper.com

8  Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

On December 7, 2022, the Court (Hon. Magistrate Judge David D. Leshner) ordered:

> … that not later than December 28, 2022, the parties must file a joint statement addressing the parties' proposals for the timing, structure and topics of Early Neutral Evaluation conferences.  In addition, the parties' joint statement shall address whether the parties can agree to an inspection by plaintiffs' expert of the Rock Mountain facility prior to its opening.

ECF No. 240.  The parties submit the following Joint Statement pursuant to the Court's order.

## I.    JOINT STATEMENT

The parties met and conferred on December 15, 2022, regarding the topics addressed in the Court's order.  The parties have reached a tentative agreement that Plaintiffs' disability access expert and Plaintiffs' counsel will inspect the Rock Mountain facility on a mutually agreed-upon date in February.  Defendant's expert and counsel will attend the inspection as well.  The proposed Rock Mountain inspection is subject to agreement on the logistics of the inspection and will focus on physical and structural barriers to accessibility only.  Plaintiffs propose that the parties meet and confer within 30 days of the inspection to discuss whether an Early Neutral Evaluation (ENE) conference to address ADA issues including at the Rock Mountain facility makes sense.  Defendant proposes that Plaintiffs' expert provide a list of alleged physical and structural barriers at Rock Mountain following the inspection, so that the parties can meet and confer within 30 days thereafter to create a list of issues – either "agreed" (barrier + fix or agreed not readily achievable) or "no agreement" (no barrier or barrier + disputed readily achievable).  Defendant's position is that there is no reason to perform this analysis on the Court's time but that the parties should meet and confer to narrow down the physical barriers at issue before an ENE.  Defendant is amenable to an ENE regarding physical barriers at Rock Mountain, if any, after this process between the parties is completed.

1    Defendant believes that potentially this process – if successful – could be repeated

2    for other facilities.

3    **II.    PLAINTIFFS' POSITION ON ADDITIONAL ISSUES**

4        *A.    Limitations on Rock Mountain Inspection and ADA ENE*

5        Plaintiffs' Third Amended Complaint ("TAC") describes significant ADA

6    violations occurring within the Jail system with respect to multiple disabilities,

7    including hearing, vision, mental health, substance use, and mobility.  These

8    violations are systemic, including with respect to program access, assistive devices,

9    grievances and physical barriers at all Defendants' currently occupied facilities.  *See*

10   Dkt. 231 ¶¶ 230-294.  The most efficient use of the ENE process would be to

11   address all of these ADA issues together once Plaintiffs are allowed to conduct

12   discovery, as requested in their pending motion. Dkt. 243-1.  Unfortunately,

13   Defendants are opposing Plaintiffs' second discovery motion and placing significant

14   limitations on ADA inspections, including at Rock Mountain.

15       In support of Plaintiffs' Motions for Preliminary Injunction and Provisional

16   Class Certification, Dkts. 119-1, 162, 163 ("Plaintiffs' Motions"), Plaintiffs filed the

17   Declaration of Syroun Sanossian.  Ms. Sanossian, a highly-credentialed and well-

18   regarded disability expert, expressed doubt about Rock Mountain's accessibility

19   based on an inspection report from 2019.  Given Ms. Sanossian's extensive

20   experience working with public entities, her inspection of Rock Mountain can be

21   used to improve accessibility at that facility.  However, while access to Rock Moun-

22   tain as soon as possible is imperative, it does not obviate the need for expedited

23   discovery on other aspects of Defendants' compliance with the ADA, including

24   inspections of facilities currently and likely to continue to be occupied by people

25   with disabilities.  *See* Second Motion for Limited Expedited Discovery, Dkt. 243-1.

26       Ms. Sanossian's declaration highlighted issues that cannot be resolved by

27   simply inspecting Rock Mountain while unoccupied, which underscores that the

28   proposed February 2023 inspection should not preclude a later inspection once Rock

Mountain is occupied.  Ms. Sanossian stated that Defendants' 2019 evaluation of the Rock Mountain facility "appears to be incomplete …. [and] [o]ther serious lapses are likely to exist."  Decl. of Syroun Sanossian In Support of Plaintiffs' Motions, Dkt. 119-9, ¶ 9.  Ms. Sanossian further testified:

> In addition, in reviewing the existing CASp report (site accessibility evaluation), I found that photos in the report illustrated many significant barriers that were not recorded in the report.  I am very skeptical that such a report will result in full compliance, or where technical infeasibility exists, compliance to the maximum extent feasible, as required under the ADA. … Clustering is itself concerning, as … [it] is likely to reduce the ability of incarcerated people with mobility disabilities to participate in Jail programming.

Reply Decl. of Syroun Sanossian In Support of Pls.' Motions, Dkt. 162-9, ¶ 11.

Because Rock Mountain is unoccupied, programmatic access cannot be fully assessed at this time.  For example, even if there are ADA-compliant cells and restrooms, if Defendants house too many individuals with disabilities in the same housing unit or do not identify people with disabilities, do not track their housing to ensure they are actually housed in those ADA-compliant cells, or do not provide equal access to programing, they will not be in compliance with the ADA.  For this reason, Plaintiffs are seeking access to documents, inspections, and deposition testimony from a Person Most Knowledgeable regarding ADA compliance through Plaintiffs' Second Motion for Limited Expedited Discovery, Dkt. 243-1.

Defendants assert that the proposed informal inspection of Rock Mountain would preclude a later inspection under Rule 34.  Defendants have not stated how long Plaintiffs' expert may be inside the facility and appear to be denying her ability even to speak with construction personnel.  They may also block access to floor plans, construction documents and inspection reports regarding Rock Mountain, materials that Plaintiffs' expert has requested.   Defendants' limitations are likely to reduce the usefulness of the Rock Mountain inspection to determine even the narrow issue of physical and structural barriers.

B.    *Neutral mutually agreed-upon experts*

In addition to a potential ENE regarding ADA issues, Plaintiffs propose an ENE to develop a coordinated, streamlined process for information-sharing and expert review of the issues raised in Plaintiffs' Third Amended Complaint, Dkt. 231. Plaintiffs first raised this concept by letter dated March 15, 2022. Such a process will put the parties in the best position to identify and implement adequate solutions to the constitutional and statutory violations asserted, with the parties realizing cost savings and efficiencies wherever feasible. The most successful procedure, in Plaintiffs' counsel's experience, is for Defendants to retain mutually agreed-upon neutral experts with subject matter expertise on the relevant case issues. Neutral expert reports and recommendations would provide a useful guide to negotiations and the drafting of a remedial plan if the parties reach a class-wide settlement, and may assist in narrowing issues in the case. Defendants' counsel attacks Plaintiffs' experts as not neutral, *see infra* at 8, yet the parties have not discussed the names of any experts. Nor are Plaintiffs aware of any neutral experts serving in either of our CDCR class actions.

Defendants argue that the "issues [in Plaintiffs' TAC] are so broad and undefined, it would be impossible at this stage to determine what experts are needed." *See infra* at 8. This approach by the County is tantamount to hiding its head in the sand. In February of this year, the California State Auditor made detailed findings of serious problems at Jail. *See* California State Auditor, "San Diego County Sheriff's Department: It Has Failed to Adequately Prevent and Respond to the Deaths of Individuals in Its Custody," Feb. 3, 2022, at iii (outlining "systemic deficiencies" with the Jail's "intake screenings, medical and mental health care, safety checks, and responses to emergencies" which "likely contributed" to deaths at the Jail). Any one of these issues—all of which are included in the TAC—would be amenable to neutral expert review. An ENE on this topic could occur as soon as the Court's schedule permits.

1    However, given Defendants' unwillingness to participate in an ENE on

2    neutral mutually agreed-upon experts at this time, Plaintiffs request that the Court

3    request a Joint Case Status Statement within 21 days of the Court's order on

4    Defendants' Motion to Dismiss.

5         *C.    Class certification*

6        In every significant jail system class action case filed in California's federal

7    courts in recent years, class certification has been granted.  *See* Plaintiffs' Motions,

8    Dkt. 163 at ECF p. 9.  Stipulated class certification would bring efficiency, cost

9    savings, and an additional benefit for the Defendants:  protecting them from

10   additional suits for systemwide injunctive relief.  As such, stipulated class

11   certification is an issue that is ripe for potential resolution at an ENE.  This ENE

12   could also occur as soon as the Court's schedule permits.

13       Defendants argue that the "most significant" barrier to a class certification

14   ENE is determining "who is in what class."  *See infra* at 9.  This is not a true

15   obstacle.  Plaintiffs seek certification of one class and one subclass, which are not

16   mutually exclusive.  The class to be certified includes all adults who are now, or will

17   be in the future, incarcerated in any of the San Diego County Jail facilities ("the

18   Class").  The subclass to be certified includes all qualified individuals with a

19   disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and

20   California Government Code § 12926(j) and (l), and who are now, or will be in the

21   future, incarcerated in all San Diego County Jail facilities ("the Subclass").  *See*

22   TAC, ¶¶ 425 & 433. People with disabilities can be part of the Class and Subclass.

23   People without disabilities can only be part of the Class.

24       Defense counsel's representations of changes at the Jail since June 1, 2022 are

25   not evidence and should be accorded no weight, especially given that Defendants

26   have fought hard against Plaintiffs' attempts to obtain discovery as to such issues.

27   Given Defendants' unwillingness to participate in an ENE on class certification at

28   this time, Plaintiffs request that the Court request an Joint Case Status Statement

within 21 days of the Court's order on Defendants' Motion to Dismiss.

### D.    *Preventing deaths in the Jail*

With an exceptionally-high death rate, TAC ¶ 1, there is a crisis of prevent-able deaths occurring inside the Jail.  Plaintiffs have proposed improvements to the Jail's policies, procedures, and practices concerning, among other things, the avail-ability of naloxone and medication-assisted treatment, body scanners, safety checks, and suicide precautions.  *See* Plaintiffs' Motions, Dkts. 119-1, 162.  Defendants have represented that they made certain changes with respect to these issues since Plaintiffs filed the preliminary injunction motion.  Defendants have submitted no evidence establishing the extent or effectiveness of any reforms.  Defense counsel's representations of a "new health care system" are not evidence and should be accorded no weight, especially given that Defendants have fought hard against Plaintiffs' attempts to obtain discovery as to such issues.  Regardless, greater efforts are necessary.  The year 2022 has seen the highest number of in custody deaths at the Jail.  *See* https://www.sdsheriff.gov/resources/transparency-reports.

Plaintiffs propose that any ENE on preventing deaths in the Jail occur within 15 days of an informal exchange of information by the parties to facilitate the ENE process.  However, given Defendants' unwillingness to participate in an ENE on deaths at this time, Plaintiffs request that the Court request an Joint Case Status Statement within 21 days of the Court's order on Defendants' Motion to Dismiss.

### E.    *Stipulated Protective Order*

Another topic that could be addressed through an ENE is the entry of a stipulated protective order in this case.  On March 18, 2022, Plaintiffs sent a draft protective order to Defendants' counsel that remains unsigned.  Plaintiffs' counsel emailed to follow up several times and the parties exchanged redlines on the Protective Order on September 6 and 7, 2022.  Plaintiffs await a response to the most recent draft of their proposed Protective Order, which is based on the Southern District model protective order.

Defendants have indicated a willingness to allow photographs to be taken during the Rock Mountain inspection, which is routine for ADA inspections. Having a protective order in place would facilitate the confidentiality of such photographs and any site plans or construction documents, and make discovery more efficient once it begins. This is also an ENE that could occur as soon as the Court's schedule permits.

## III.   DEFENDANT'S POSITION ON ADDITIONAL ISSUES

### A.   *Limitations on Rock Mountain Inspection*

Plaintiffs are only entitled to inspect physical property to evaluate ADA barriers. They may not interview people, observe people or otherwise do anything in any facility, including Rock Mountain, other than inspection of alleged physical barriers based upon the claims made in the Complaint about mobility disabilities and hearing impairments. The request to leave open the option of future inspection is an attempt to skirt FRCP 34 and the discovery rules applicable to contact with witnesses through means other than depositions and obtaining documents through other than proper document requests. The request for a future inspection of the same facility (i.e. Rock Mountain) should be denied. If need arises for a future inspection of a physical barrier, Plaintiffs are free to meet and confer and make the appropriate application to the Court.

As with Plaintiffs' Motion for Expedited Discovery, Plaintiffs omit the actual draft inspection request which includes a demand that Plaintiffs be allowed free and unfettered interviews with all staff and detainees, observation of confidential and HIPAA-protected medical and mental health visits and procedures, and other unauthorized aspects of an "inspection". Inspections are limited in scope by FRCP 34. Plaintiffs also attempt to create a perception of urgency by claiming that a 2019 report demonstrates that current conditions at Rock Mountain reflect what may or may not be in the report; However, construction is still ongoing and a three year old report is irrelevant to what exists today. Plaintiffs and their expert have no basis to

claim any knowledge of any physical condition at Rock Mountain, which is
presently an unoccupied and incomplete renovation project.

In addition, <u>programs</u> are not "discovered" through physical inspections.
Physical barriers are discovered through physical inspections.  Programs are
discoverable through interrogatories, depositions, and document production
requests.  "Programmatic access", as defined by Plaintiffs as a disability tracking
system, cannot be "discovered" through a physical inspections.  What Plaintiffs do
not share is that they and their experts expect to be allowed to conduct improper
interviews with facility personnel and detainees to "discover" "programmatic
access" via informal (and inadmissible) conversations.  This is improper.

### B.    Neutral mutually agreed-upon experts

Defendant does not agree to mutually agreed-upon experts at this point in the
litigation.  The Third Amended Complaint is subject to a pending Motion to Dismiss
and includes disability issues, non-disability issues, constitutional issues, and issues
of whether certain people should and should not be incarcerated at all versus
alternatives to incarceration.  The issues are so broad and undefined, it would be
impossible at this stage to determine what experts are needed.  Additionally, based
on past experiences with these counsel and class actions in the CDCR system,
Plaintiff's proposed "neutral" experts are likely people who have made a career out
of criticizing prisons and jails and are not neutral in any sense of the word.

On the other hand, physical barriers is a simple, straightforward issue, about
which there should not be much dispute.  With reports or even lists from experts,
there is no reason why the parties cannot resolve the issues themselves by creating
agreed lists of issues and mediating (or resolving via ENE) the remainder of the
physical barriers.  There is no need for expensive, time consuming expert work or
Court time in addressing the issue.

The notion of an expert to address the constitutional and any non-physical
barrier statutory violations is so uncertain at this point, the Defendant cannot agree

to experts on as yet undefined issues. Nor is it clear that "neutral" experts are possible on these issues. Defendant is not unwilling to hold additional ENE sessions; however, it makes sense to first start with physical/structural ADA barriers at the facilities – beginning with Rock Mountain – as these are likely the most straightforward topics to begin discussions.

C.    Class Certification

Class certification is premature.  As stated above, the pleadings are not yet settled.  The operative Complaint remains an unwieldy document with disconnected claims based upon reports and information that are years old.  For example, the County has been in process for several years in contracting with a new, superior and streamlined health care provider, NaphCare, to coordinate medical, dental, vision, and mental health care.. The system went into effect on June 1, 2022, and it also includes a MAT and drug withdrawal program, SureScrips (providing rapid access to prescription information), Urinalysis testing on entry, and other improvements. Naloxone is present in every housing unit and holding cell.  While Plaintiffs contend there is no "evidence" of these changes, evidence was submitted in the form of declarations and documents in opposition to Plaintiffs' Motion for Preliminary Injunction.  Plaintiffs' Third Amended Complaint takes none of the significant changes into account and makes no attempt to determine whether the new system has resolved any issues before seeking class certification on a huge range of issues. And the most significant question remains of who is in what class.  Are mobility disabled individuals and hearing impaired in the same class with individuals with drug addictions?  Is dental care a part of the disability claim?  How is drug smuggling into the jails are part of the disability claims?  It is premature to discuss class certification while the complaint remains unsettled.

D.    Preventing deaths in the Jail

Preventing deaths in the jail is of paramount concern to all parties.  But again, Plaintiffs rely on outdated and incorrect information to create the impression of

JOINT CASE STATUS STATEMENT

urgency.  With the new health care system, the County now provides Narcan in every "module" housing detainees.  The new system provides almost immediate drug testing information via urinalysis to enable staff to medicate incoming detainees who fail to disclose recent drug ingestion, allowing the "medication-assisted treatment" Plaintiffs claim doesn't exist – but now does exist.  There are body scanners, safety checks, and suicide precautions.

Plaintiffs state that 2022 has had the highest death rate ever. (The chart tracks only back to 2002, and is not adjusted proportionate to the population.)  The chart also shows that of the three deaths in February 2022, two were natural (metastatic adenocarcinoma of esophagus for one and end stage renal disease/diabetes/COVID for the other) and one was accidental (hypertension, diabetes, pulmonary emphysema, and methampetamine toxicity).  The rest are listed as "TBD."  While some of these prisoners died of drugs or had drug-related complications (7 to date including the accidental death in February 2022), more prisoners died of natural causes. In addition to the two inmates above who died in February, one prisoner died of his injuries from a multi-vehicle collision after refusing medical treatment. One died of pulmonary thromboemboli due to DVT.  One died of a liver tumor. One died of his injuries after falling out of his bunk (while housed alone) complicated by COVID. One died of an enlarged heart with 90% arterial blockage. One died of liver disease.  And another died of end-stage renal failure with HIV contributing.  While Plaintiffs point to the numbers alone, they have no idea what the causes of death were and offer no evidence of what the average death rate was in comparable large counties such as Los Angeles, nor do they take into account the turnover rate in the jails when comparing death rates -- though the first few days of incarceration are statistically the most precarious both in terms of suicide risk and drugs.  This is yet another example of the overreaching behavior of Plaintiffs' counsel.  Why isn't the request limited to the procedures for detecting drugs, since drug overdose seems to be the focus of the assertions?  All of the suggestions made

by Plaintiffs' counsel are already in place.  Having an ENE is premature because Plaintiffs have no basis for any of the claims they make, which again, can and should be obtained through appropriately focused document production requests and not unsubstantiated statements in a Joint Statement.

### E.    Stipulated Protective Order

Defendant is reviewing the protective order which was sent by Plaintiffs in March of 2022, prior to any discovery being authorized and prior to the hearing on Defendant's successful opposition to the Motion for Injunction and Motion to Dismiss.  Defendant does not anticipate any issues with the proposed order or any need for judicial intervention as long as it complies with the Southern District standard format.

Respectfully submitted,

DATED:  December 28, 2022    ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Gay Crosthwait Grunfeld*
      Gay Crosthwait Grunfeld

Attorneys for Plaintiffs

DATED:  December 28, 2022    BURKE, WILLIAMS & SORENSEN, LLP

By:  */s/ Susan E. Coleman*
      Susan E. Coleman

Attorneys for Defendant COUNTY OF SAN DIEGO