GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California  94709
Telephone:  (510) 806-7366
Facsimile:   (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California  92101-4297
Telephone:  (619) 699-2700
Facsimile:   (619) 699-2701
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>    Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Judge:    Hon. Anthony J. Battaglia<br>Magistrate: Hon. David D. Leshner<br><br>Hearing:    March 9, 2023<br>Time:      2:00 p.m.<br>Courtroom: 4A<br><br>Trial Date:  None Set |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

STATEMENT OF FACTS ......................................................................... 2

LEGAL STANDARD ................................................................................ 4

ARGUMENT .............................................................................................. 4

I.    The Third Amended Complaint Is Not a Shotgun Pleading ............................ 4

II.   The Sheriff's Department and Probation Department Are Proper Parties to This Lawsuit ................................................................................. 8

III.  Plaintiffs' Seventh Claim Adequately States a Claim For Disability Discrimination That Contributes to Over-Incarceration of People With Disabilities ...................................................................... 11

IV.   Plaintiffs' Ninth Claim Adequately States a Claim for Discriminatory Racial Impact ........................................................ 14

V.    Plaintiffs' Sixth Claim Adequately States a Claim for Failure to Provide Adequate Dental Care ...................................................... 17

VI.   There Is No Basis to Limit Plaintiffs' Claims ........................................ 18

CONCLUSION ........................................................................................ 21

1

# TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4

*Alexander v. Choate,*
    469 U.S. 287 (1985) ...................................................................12

*Armstrong v. Davis,*
    274 F.3d 849 (9th Cir. 2001) ........................................................7

*Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.,*
    648 F.3d 986 (9th Cir. 2011)..........................................................4

*Braggs v. Dunn,*
    257 F. Supp. 3d 1171 (M.D. Ala. 2017) .......................................20

*Brown v. Plata,*
    563 U.S. 493 (2011) ......................................................................6

*C.B. v. Moreno Valley Unified Sch. Dist.,*
    544 F. Supp. 3d 973 (C.D. Cal. 2021)......................................15, 16

*Cohen v. City of Culver City,*
    754 F.3d 690 (9th Cir. 2014) .......................................................12

*Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma,*
    644 F. Supp. 2d 1177 (N.D. Cal. 2009) .......................................15

*Crowder v. Kitagawa,*
    81 F.3d 1480 (9th Cir. 1996).........................................................12

*Darensburg v. Metro. Transp. Comm'n,*
    636 F.3d 511 (9th Cir. 2011).........................................................15

*Dean v. Barber,*
    951 F.2d 1210 (11th Cir. 1992)......................................................9

*Disability Rights California v. County of Alameda,*
    2021 WL 212900 (N.D. Cal. Jan. 21, 2021) ..................................14

*Gray v. Cty. of Riverside,*
    2014 WL 5304915 (C.D. Cal. Sept. 2, 2014)..................................19

*Hernandez v. Cty. of Monterey,*
    70 F. Supp. 3d 963 (N.D. Cal. 2014) ............................................19

*Hervey v. Estes,*
    65 F.3d 784 (9th Cir. 1995)............................................................9

*Hodgers-Durgin v. de la Vina,*
    199 F.3d 1037 (9th Cir. 1999).........................................................7

*Holt v. Sarver,*
   309 F. Supp. 362 (E.D. Ark. 1970) .................................................................. 18, 19

*Hupp v. San Diego Cty. Dist. Atty.,*
   2012 WL 2887229 (S.D. Cal. July 12, 2012) .................................................. 8

*Jensen v. Shinn,* — F. Supp. 3d —,
   2022 WL 2911496 (D. Ariz. June 30, 2022) .................................................. 19

*Jones v. Cty. of San Diego,*
   2021 WL 4460788 (S.D. Cal. Sept. 29, 2021) ................................................ 8

*Karim-Panahi v. L.A. Police Dep't,*
   839 F.2d 621 (9th Cir. 1988) ........................................................................... 8

*M.R. v. Dreyfus,*
   697 F.3d 706 (9th Cir. 2012) ................................................................ 11, 13, 14

*Moore v. Mars Petcare US, Inc.,*
   966 F.3d 1007 (9th Cir. 2020) ......................................................................... 4

*Nevarez v. Forty Niners Football Co.,*
   474 F. Supp. 3d 1041 (N.D. Cal. 2020) ......................................................... 21

*Nevarez v. Forty Niners Football Co., LLC,*
   2019 WL 13148141 (N.D. Cal. Feb. 5, 2019) ................................................ 20

*Olmstead v. L.C.,*
   527 U.S. 581 (1999) ....................................................................................... 13

*Parsons v. Ryan,*
   754 F.3d 657 (9th Cir. 2014) ................................................................... passim

*Paschelke v. Doe,*
   2010 WL 2640501 (S.D. Cal. June 30, 2010) ................................................ 9

*Payne v. Cty. of Calaveras,*
   2018 WL 6593347 (E.D. Cal. Dec. 14, 2018) ................................................ 8

*Pride v. Correa,*
   719 F.3d 1130 (9th Cir. 2013) ........................................................................ 5

*Radaszewski ex rel. Radaszewski v. Maram,*
   383 F.3d 599 (7th Cir. 2004) ........................................................................ 14

*Ruiz v. Estelle,*
   503 F. Supp. 1265 (S.D. Tex. 1980) ............................................................. 19

*Schneider v. Cal. Dept. of Corrs.,*
   151 F.3d 1194 (9th Cir. 1998) ............................................................ 4, 16, 17

*Smith-Berch, Inc. v. Baltimore Cty., Md.,*
   68 F. Supp. 2d 602 (D. Md. 1999) ................................................................. 9

*Spatcher v. San Diego Sheriff Dep't,*
   2019 WL 6877575 (S.D. Cal. Dec. 16, 2019)...............................................9

*Streit v. County of Los Angeles,*
   236 F.3d 552 (9th Cir. 2001)..............................................................1, 8

*Townsend v. Quasim,*
   328 F.3d 511 (9th Cir. 2003)................................................................14

*United States v. Kama,*
   394 F.3d 1236 (9th Cir. 2005)................................................................9

*Vance v. Cty. of Santa Clara,*
   928 F. Supp. 993 (N.D. Cal. 1996) ..........................................................9

*Verdun v. City of San Diego,*
   2020 WL 1332772 (S.D. Cal. Mar. 23, 2020)................................................9

*Wainscott v. Cty. of San Diego,*
   2020 WL 5747389 (S.D. Cal. Sept. 25, 2020) .............................................10

*Young v. Bd. of Supervisors,*
   93 Cal. App. 3d 864 (1979)................................................................10

## STATUTES

42 U.S.C. § 12131...............................................................................10

42 U.S.C. § 1983.................................................................................9

Cal. Gov't Code § 11135 ....................................................................2, 15

Cal. Gov't Code § 811.2 ........................................................................8

Cal. Gov't Code § 945 ..........................................................................8

## RULES

Fed. R. Civ. P. 12................................................................................4

Fed. R. Civ. P. 17................................................................................8

## REGULATIONS

28 C.F.R. § 35.130 ........................................................................11, 12

**<u>OTHER AUTHORITIES</u>**

5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2022) .............4

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT

# INTRODUCTION

In its Motion to Dismiss Plaintiffs' Third Amended Complaint ("the Motion" or "Mot."), the County of San Diego ("the County") does not raise *any* substantive ground to dismiss the majority of Plaintiffs' claims, including for failure to provide adequate medical care (First Claim); failure to provide adequate mental health care (Second Claim); failure to provide reasonable accommodations to incarcerated people with disabilities (Third Claim); failure to ensure adequate environmental health and safety conditions (Fourth Claim); failure to ensure the safety and security of incarcerated people (Fifth Claim); and denial of access to counsel and the courts (Eighth Claim). As to Plaintiffs' remaining claims for failure to provide adequate dental care (Sixth Claim), over-incarceration of people with disabilities (Seventh Claim), and discriminatory racial impact (Ninth Claim), the County has not met its burden of showing that no legally cognizable claim for relief exists.

None of the County's arguments is availing.

First, the County contends that the Third Amended Complaint ("TAC") is a shotgun pleading because it "fail[s] to identify which Plaintiffs are tied to which claims." Mot. at 6. This argument is factually incorrect and is inconsistent with well-settled Ninth Circuit case law, which holds that incarcerated plaintiffs may bring claims alleging that system-wide policies and practices "expose all inmates in [custody] to a substantial risk of serious harm." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014). Plaintiffs need not separately identify an individualized past harm for each Plaintiff, because *all* Plaintiffs are subject to the *same* policies and practices.

Second, both the San Diego County Sheriff's Department ("Sheriff's Department") and San Diego County Probation Department ("Probation Department") are proper defendants to Section 1983 claims, as explained by the Ninth Circuit in *Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir. 2001). The County ignores this binding precedent and relies instead on inapposite cases. The Sheriff's Department

and Probation Department also cannot be dismissed because they are appropriate public entity defendants for Plaintiffs' Americans with Disabilities Act ("ADA") and state law claims.

Third, the County argues that Plaintiffs' Seventh Claim for over-incarceration of people with disabilities must fail because the ADA provides no remedy "for an alleged lack of any particular service." Mot. at 9. The Motion completely ignores Plaintiffs' allegations that the County does in fact provide diversion and reentry services—such as Drug Court and Home Detention—but without adequate capacity and reach, such that those services are effectively rationed in a way that discriminates against people with disabilities.

Fourth, the Motion contends that Plaintiffs' Ninth Claim for discriminatory racial impact fails because "Plaintiffs have not shown a disproportionate adverse impact on the protected classes." Mot. at 11. The County attempts to disprove the claim by inappropriately proffering allegedly factual information, but fails to explain how Plaintiffs fail to state a claim under California Government Code Section 11135.

Fifth, the Motion's challenge to Plaintiffs' Sixth Claim for inadequate dental care is similarly a factual challenge and thus inappropriate for a motion to dismiss.

Sixth, the County's request that the Court narrow this case at the pleading stage is not based on any apposite case law. Moreover, the County ignores the fact that for over 50 years, federal courts have competently addressed systemic jail and prison conditions cases. Like the cases that came before it, this one can be managed in an efficient manner.

### STATEMENT OF FACTS

The TAC alleges that Defendants employ policies and practices that place Plaintiffs and all people incarcerated in San Diego County Jail facilities ("the Jail") at a serious risk of substantial harm, discriminate against and deny reasonable accommodations to incarcerated people with disabilities, and over-incarcerate Black

and Latinx people and people with mental health disabilities.  Those policies and practices—for example, failing to provide accessible housing and accommodations for incarcerated people with disabilities; housing people with serious mental illness in punitive segregation conditions; refusing to refer incarcerated people to medical specialists when appropriate; and failing to conduct adequate safety and security checks—expose incarcerated people to substantial risks of serious harm and contribute to the extraordinarily and disproportionately high number of in-custody deaths that have occurred (and continue to occur) at the Jail.  TAC ¶ 1.

While the Jail's unconstitutional and unlawful policies and practices have existed for years, as documented in part in the February 3, 2022 California State Auditor report, Plaintiffs allege that the problems persist—even after the Jail entered into a contract for certain medical and mental health services with NaphCare, Inc. *See, e.g.*, TAC ¶¶ 123 ("Although JAIL DEFENDANTS contract with NaphCare …, JAIL DEFENDANTS are ultimately responsible for all mental health care in the Jail," which "is woefully inadequate …."); 357-58 (Although "NaphCare provides some dental care and staffing," "JAIL DEFENDANTS maintain insufficient numbers of dental professionals to provide minimally adequate care ….").  This is because, even under the contract with NaphCare, the Sheriff's Department and County "bear ultimate responsibility for medical care provided at the Jail."  *Id.* ¶ 40. Specifically, "the SHERIFF'S DEPARTMENT's medical officials and the COUNTY Public Health Officer have final say 'in any disputes [with NaphCare] concerning appropriate health care standards and/or provision of care.'"  *Id.*  The Sheriff's Department has "final approval over policies and procedures" imple-mented by NaphCare and "must approve any change in contracted provider staffing levels and schedules."  *Id.*  In sum, "NaphCare staff must follow the SHERIFF'S DEPARTMENT's and COUNTY's respective policies and procedures."  *Id.*

The Motion to Dismiss also contains numerous factual assertions by counsel that are extraneous to the TAC, unsupported by any evidence or citation, and

inappropriate for consideration in a motion to dismiss. *See* Mot. at 3-4, 12. Some factual information asserted in the Motion is directly contradicted by representations made by Defendants elsewhere. For example, the Motion asserts: "A medically supervised withdrawal and full [Medication Assisted Therapy ("MAT")] program has been implemented." *Id.* at 4. Yet, in response to a Public Records Act request for "documents and other writings related to the Jail's supply of MAT medications," the Sheriff's Department responded on December 22, 2022 (one day before the County filed its Motion): "The MAT program has not been implemented." *See* Decl. of Van Swearingen, Ex. A.

## LEGAL STANDARD

For purposes of a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020). "[T]he burden is on the moving party to prove that no legally cognizable claim for relief exists." 5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2022). Dismissal is proper only "if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011). "[A] court *may not* look beyond the complaint" in deciding a motion to dismiss under Rule 12(b)(6). *Schneider v. Cal. Dept. of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in original).

## ARGUMENT

### I.      The Third Amended Complaint Is Not a Shotgun Pleading

This Court's September 27, 2022 Order dismissed Plaintiffs' Second Amended Complaint ("SAC"), stating that the SAC incorporated by reference preceding paragraphs "without regard to the relevancy of the earlier allegations or how they relate to each claim." Dkt. 219 at 7. The Court found the "allegations

under the individual claims" were "inadequate" and that the claims were "conclusory and lack specificity." *Id.* The Court directed Plaintiffs "to file a new, more specific complaint and designate the specific facts that underlie each claim, and the Defendant(s) to which a claim is directed." *Id.* at 7-8.

The TAC addresses the Court's concerns. Each claim in the TAC has been revised to include (1) the elements of the claim under federal and/or state law; (2) the specific policies and practices that Plaintiffs challenge; and (3) references to specific paragraphs containing the relevant factual allegations and explaining how these allegations relate to the elements of each claim, including examples of how each policy or practice harms people incarcerated in the Jail. The TAC does not include any claims against Jail contractors (formerly named as Defendants in the SAC), removing any confusion over which Defendant is subject to which claim. The TAC identifies in bold, capitalized letters under each claim the specific Plaintiffs asserting that claim.

The County asserts that Plaintiffs' claims "still lack specificity and are conclusory" because they "fail to identify <u>which</u> Plaintiffs are tied to which claims to establish standing." Mot. at 6. Implicit in the County's argument is an incorrect assumption that each claim must include allegations of a specific past injury for each Plaintiff bringing the particular claim. The County's argument misconstrues the nature of this class action lawsuit and ignores binding law.

In *Parsons v. Ryan*, the Ninth Circuit explained that there are two distinct types of cases challenging conditions of incarceration: on the one hand, there are cases challenging "individual mistreatment" of a particular incarcerated person on a "particular occasion" in the past; on the other hand, there are cases challenging the prison or jail's "policies and practices of statewide and systemic application" which "expose all inmates in [the institution's] custody to a substantial risk of serious harm" in the present and future. 754 F.3d at 676; *see also Pride v. Correa*, 719 F.3d 1130, 1137 (9th Cir. 2013) ("Individual claims for injunctive relief related to

medical treatment are discrete from [] claims for systemic reform."); *Brown v. Plata*, 563 U.S. 493, 505 n.3 (2011) ("Plaintiffs rely on systemwide deficiencies in the provision of medical and mental health care that, taken as a whole, subject sick and mentally ill prisoners … to 'substantial risk of serious harm'"; as such, "this Court has no occasion to consider whether … any [] particular deficiency in medical care complained of … would violate the Constitution."). *Parsons* instructs that the latter type of claim, which protects incarcerated people from the risk of future harm created by constitutionally inadequate policies and practices, "is firmly established in our constitutional law." 754 F.3d at 676.

The TAC's structure tracks the very complaint that the Ninth Circuit approved of in *Parsons*: it "contains detailed factual allegations concerning the existence of uniform, statewide policies and practices" in the Jail, which "expose all [incarcerated people] to a substantial risk of harm," as well as "allegations that demonstrate the kinds of serious harm to which members of the proposed class are exposed by [those] policies and practices." 754 F.3d at 664; *see also id.* at 664-68 nn. 5-9 (listing examples from complaint of harm suffered by both named plaintiffs and other incarcerated people due to alleged policies and practices).

The Ninth Circuit in *Parsons* rejected the Motion's argument that the TAC makes it "difficult to … discern what claims and relief are sought as with respect to each Plaintiff …." *See* Mot. at 6. As the Ninth Circuit explained: in systemic prison or jail conditions cases like this one, courts "recognize[] that many inmates can simultaneously be endangered by a single policy." 754 F.3d at 678. It is not necessary for the Court to consider whether any individual "past instance of mistreatment is alleged to have violated the Constitution," because "every [incarcerated person] suffers exactly the same constitutional injury when he is exposed to a single statewide [] policy or practice that creates a substantial risk of serious harm." *Id.* at 677-78. It is thus appropriate for "all Plaintiffs" to allege a failure to provide adequate medical care, for example, because—as *Parsons*

teaches—*every person* incarcerated in the Jail suffers a constitutional injury from being exposed to a medical care system that subjects them to substantial risks of serious harm. *See id.* This is true even for those Plaintiffs for whom there are not specific factual allegations in the complaint about a specific past incident in which the Jail provided inadequate medical care.

No case cited in the Motion contradicts *Parsons*. Instead, the Motion repeats only general statements that a plaintiff must have individual standing to represent a class, *see* Mot. at 7 (citing *Armstrong v. Davis*, 274 F.3d 849 (9th Cir. 2001) and *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999))—which, as explained above, all Plaintiffs have by virtue of their exposure to the Jail's unconstitutional policies and practices. In addition, both *Armstrong* and *Hodgers-Durgin* address the separate question whether a plaintiff, who had been harmed by defendants in the past, was likely to be harmed again and therefore had standing to represent a class seeking prospective injunctive relief. *See Armstrong*, 274 F.3d at 865-67; *Hodgers-Durgin*, 199 F.3d at 1044.[1]

Finally, as addressed in more detail in Part VI, *infra*, the fact that Plaintiffs' complaint is "broad," "wide-ranging," and/or "length[y]," Mot. at 5-7, suggests only that the problems in the Jail are extensive. That Defendants' unconstitutional and unlawful acts and omissions are vast is not a reason for dismissal.[2]

---

[1] This Court has already decided that question in this case, stating that Plaintiffs in the SAC have standing to seek an injunction because "this controversy falls squarely within the capable-of-repetition-yet-evading-review" doctrine and "the record contains compelling evidence that Plaintiffs likely will be reincarcerated at the Jail." Dkt. 203 at 7-8.

[2] The Motion's brief reference to Plaintiffs' exhaustion of administrative remedies, Mot. at 7, is moot. The TAC alleges that the grievance procedure is not functional. TAC ¶¶ 275-86. The Court's August 15, 2022 Order held that "[w]hen prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies. … As such, the Court finds Plaintiffs exhausted their administrative remedies." Dkt. 203 at 9. In addition, this is a factual defense, not appropriate for a motion to dismiss.

## II.    The Sheriff's Department and Probation Department Are Proper Parties to This Lawsuit

The County incorrectly argues that the Sheriff's Department and Probation Department are not proper defendants under Section 1983 and therefore should be dismissed not only from those claims but from all claims in this litigation. However, the County fails to address binding Ninth Circuit law holding that municipal departments in California are appropriate defendants under Section 1983 and completely overlooks that those entities are also proper defendants under Plaintiffs' ADA and state law claims.

Sheriff's departments, as well as municipal police departments, "are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations." *Streit*, 236 F.3d at 565 (quoting *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 n.2 (9th Cir. 1988)). In *Streit*, the Ninth Circuit directly addressed whether the Los Angeles Sheriff's Department was "a separately suable entity," such that it could be subject to liability under Section 1983. *Id.* at 565-66. The *Streit* court concluded that *both* the county and the sheriff's department were proper defendants, rejecting the sheriff's arguments to the contrary. *Id.* at 555-56. In its analysis, the Ninth Circuit first referred to Federal Rule of Civil Procedure 17(b), which explains that capacity to sue or be sued is a question of state law. *Id.* at 565. The court then looked to California law, which states that public entities, including a "public authority, public agency, [or] any other political subdivision or political corporation in the State," "may sue or be sued." *Id.* (quoting Cal. Gov't Code §§ 811.2, 945). Consistent with *Streit*, district courts in California do adjudicate claims against sheriff's departments. *See, e.g.*, *Hupp v. San Diego Cty. Dist. Atty.*, 2012 WL 2887229, at *2 (S.D. Cal. July 12, 2012); *Jones v. Cty. of San Diego*, 2021 WL 4460788, at *8 (S.D. Cal. Sept. 29, 2021); *Payne v. Cty. of Calaveras*, 2018 WL 6593347, at *3-4 (E.D. Cal. Dec. 14, 2018). Because the San Diego Sheriff's Department and Probation Department are public entities under

California law, they are proper defendants in this case.

The Motion, however, ignores this binding, on-point Ninth Circuit precedent and instead relies on dicta from a concurring opinion in *United States v. Kama*, 394 F.3d 1236 (9th Cir. 2005). *Kama* is inapposite for several reasons. First, no municipal department was a party in *Kama*, nor was California law even considered; the case was between the federal Drug Enforcement Administration and a private individual, taking place in Oregon. *Id.* at 1236-37. Second, the only Ninth Circuit case cited by the *Kama* concurrence for its general assertion that "municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983," *id.* at 1239-40—*Hervey v. Estes*, 65 F.3d 784 (9th Cir. 1995)—*also* does not interpret California law.[3] *Hervey* interprets Washington state law and, in any event, predates *Streit* and considers whether an *intergovernmental association*, rather than a municipal department, can be sued under Section 1983. *Id.* at 791-92. Third, the *Kama* concurrence did not purport to interpret Section 1983, as the Motion does here; rather, *Kama* was about the meaning of the term "person" in Section 844(a) of the Controlled Substances Act. 394 F.3d at 1239-40. *Kama* does not govern this case.

None of the district court cases cited in the Motion changes this analysis, as every case either incorrectly relies on *Kama* or pre-dates *Streit*. *See* Mot. at 8-9 (citing *Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) (pre-dating *Streit*); *Verdun v. City of San Diego*, 2020 WL 1332772, at *5 (S.D. Cal. Mar. 23, 2020) (relying on *Kama*); *Paschelke v. Doe*, 2010 WL 2640501, at *1 (S.D. Cal. June 30, 2010) (relying on *Kama*); *Spatcher v. San Diego Sheriff Dep't*, 2019 WL 6877575, at *4 (S.D. Cal. Dec. 16, 2019) (relying on *Kama* and *Vance*);

---

[3] Nor do the two out-of-circuit cases cited in *Kama*'s concurring opinion interpret California law. *See Dean v. Barber*, 951 F.2d 1210, 1214-15 (11th Cir. 1992) (interpreting Alabama law); *Smith-Berch, Inc. v. Baltimore Cty., Md.*, 68 F. Supp. 2d 602, 619-20 (D. Md. 1999) (interpreting Maryland law and holding, in any event, that municipal departments *can* be sued under the ADA regardless whether state law subjects them to suit under Section 1983).

1  *Wainscott v. Cty. of San Diego*, 2020 WL 5747389, at \*3 (S.D. Cal. Sept. 25, 2020)

2  (relying on *Spatcher* and *Paschelke*, which in turn rely on *Kama*, and *Vance*)).  In

3  light of *Streit*, every one of those cases is bad law.

4          The County's argument that the Sheriff's and Probation Departments are not

5  proper defendants fails for another reason:  the Motion addresses only Plaintiffs'

6  Section 1983 claims.  But the TAC also raises claims against the Sheriff's

7  Department and Probation Department under other statutes, including the ADA and

8  California state law.  As the Ninth Circuit already acknowledged in a prior order *in*

9  *this case*, "a public entity under the ADA [is defined] as any local government *or*

10 *agency of a local government*."  Dkt. 46 at 2 (citing 42 U.S.C. § 12131(1)(A)-(B))

11 (emphasis added).  Therefore, at a minimum, the Sheriff's Department and

12 Probation Department cannot be dismissed from this case entirely.

13         Naming the Sheriff's Department and Probation Department as defendants in

14 this lawsuit is not an empty exercise.  As alleged in the TAC, while the County is

15 responsible for setting the budget for the Sheriff's and Probation Departments'

16 operation, relevant policies and practices are set and administered by the Sheriff's

17 and Probation Departments themselves.  TAC ¶¶ 32-35.  Because this lawsuit seeks

18 injunctive relief changing those policies and practices, it is critical that the policy-

19 setting and practice-administering agencies themselves are bound by this Court's

20 orders.  Moreover, the Sheriff is an independently elected official, and the County's

21 ability to oversee the Sheriff's Department's operations is, arguably, not unlimited.

22 *See, e.g.*, *Young v. Bd. of Supervisors*, 93 Cal. App. 3d 864, 873 (1979) (holding San

23 Diego County charter provision placing term limits on elected county officials

24 violated California Constitution).  To ensure that any injunction in this case will

25 bind all public entities responsible for the operations of the Jail and associated

26 programming, the Sheriff's and Probation Departments must remain as Defendants,

27

28

1  consistent with both California and federal law.[4]

2  **III.    Plaintiffs' Seventh Claim Adequately States a Claim For Disability**
3  **Discrimination That Contributes to Over-Incarceration of People With Disabilities**

4       The County asserts that Plaintiffs fail to state a claim for disability-based

5  discrimination that contributes to over-incarceration of people with disabilities on

6  the vague ground that "a desire for policy change does not form the basis for a

7  cognizable claim."  Mot. at 9.  Defendants misconstrue the foundation of this claim.

8  In fact, Plaintiffs allege that Defendants "violate the ADA, and its implementing

9  regulations, including by utilizing methods of administering their programs in ways

10 that deny [people with disabilities] access to services and programs for which they

11 would be eligible, resulting in avoidable incarcerations" and "placing them at

12 unnecessary risk of institutionalization."  TAC ¶ 492.  This claim is supported by

13 law on two primary grounds:  first, the denial of meaningful access to services,

14 programs, and activities for people with disabilities, 28 C.F.R. § 35.130(b)(3) & (7);

15 and second, the failure to provide services such that people with disabilities are

16 placed at serious risk of institutionalization, *M.R. v. Dreyfus*, 697 F.3d 706, 734 (9th

17 Cir. 2012).

18      First, the TAC alleges that Defendants discriminate against incarcerated

19 people with disabilities by denying them meaningful access to diversion and reentry

20 services, which results in over-incarceration and other cognizable harms to people

21 with disabilities.  TAC ¶¶ 377-99.  In particular, the TAC explains that Defendants

22 lack "adequate capacity and reach" in their "diversion and reentry services" to

23 adequately provide those services to people with disabilities, and thus effectively

24 "ration[]" those services in a way that "discriminates against people based on the

25 severity of their disability."  *Id.* ¶ 493.  Moreover, Defendants "do not provide

26 adequate reentry programming or planning," particularly for people with mental

27

28 [4] Both entities have been served, *see* Dkts. 238-39, but have not responded to the TAC and are therefore in default.  The Court should require Defendants to answer.

1 health disabilities, "setting up such individuals for further and repeated
2 incarcerations." *Id.* ¶¶ 384-85.

3    The ADA requires public entities to provide meaningful and equal access to
4 their services, programs, and activities for people with disabilities by making
5 "reasonable modifications," so long as those modifications do not "fundamentally
6 alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). As
7 explained in the TAC, Defendants maintain programming through which pretrial
8 detainees may be released into the community during the period that they are
9 awaiting trial. *See* TAC ¶¶ 377-83 (describing Home Detention, Supervised Own
10 Release, Crisis Stabilization Units, and other programs). However, people with
11 disabilities (including mental health disabilities) are denied meaningful and equal
12 access to such programs, compared to people without disabilities. TAC ¶¶ 377-92.

13    For example, Plaintiffs allege that Defendants "provide a Drug Court
14 program," that *excludes* people with mental health disabilities "due to lack of
15 capacity, discriminatory eligibility criteria, and other systemic deficiencies." *Id.*
16 ¶ 382. Similarly, Defendants' existing "Home Detention" program "uses
17 discriminatory eligibility criteria." *Id.* ¶ 378. The denial of participation in the
18 Defendants' *existing* programming amounts to a denial of program access based on
19 disability—in violation of disability anti-discrimination law. *See Alexander v.*
20 *Choate*, 469 U.S. 287, 295 (1985) (explaining that disability anti-discrimination law
21 not only protects against intentional exclusion of people with disabilities but also
22 unintentional discrimination that results from "thoughtlessness and indifference—of
23 benign neglect"); *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (noting
24 the operative question regarding unintentional discrimination under these laws is
25 "whether disabled persons were denied 'meaningful access' to state-provided
26 services"); *Cohen v. City of Culver City*, 754 F.3d 690, 694-95 (9th Cir. 2014)
27 ("[ADA] Title II emphasizes 'program access,' meaning that a public entity's
28 programs and services, viewed in their entirety," must be meaningfully accessible to

1    individuals with disabilities).

2        Without citations to any case law, the Motion baldly claims that although the

3    ADA "provides a remedy for discrimination in the provision of access to

4    'services,'" it does "not offer a remedy for an alleged lack of any particular service."

5    Mot. at 9.  But Plaintiffs' allegations *do* identify discrimination in particular

6    services.  The TAC alleges that Defendants provide services to which people with

7    disabilities have unequal access, *e.g.*, TAC ¶ 378 (Home Detention Program), ¶ 382

8    (Drug Court Program), and describe how such discrimination causes real and

9    significant injury, including unnecessary and disproportionate incarceration.  The

10   ADA does not permit discrimination that results in denial of meaningful access to

11   services, programs, and activities for large numbers of people with disabilities.

12   Similarly, the Motion's argument that it is exclusively the decision of courts

13   regarding whether someone is incarcerated misses the mark.  *See* Mot. at 9.  This

14   claim relates not to the decision whether a person with disabilities is convicted or

15   sentenced, but rather whether someone who is *already detained* in the Jail is

16   provided with equal access to the County's existing alternatives-to-incarceration

17   programs and services.

18        Second, the Ninth Circuit has explained that, to state a claim under the ADA's

19   Integration Mandate, including *Olmstead v. L.C.*, 527 U.S. 581 (1999), "a plaintiff

20   need only show that the challenged state action creates a serious risk of institution-

21   alization." *M.R. v. Dreyfus*, 697 F.3d at 734.  The TAC alleges a number of services

22   that Defendants provide at insufficient capacity and reach, creating a serious risk

23   that people with mental health and other disabilities will be subjected to

24   institutionalization in County psychiatric facilities, including acute psychiatric units

25   both in the community and in the Jail.  Those services include, for example, Crisis

26   Stabilization Units, pre-trial mental health diversion, Center Star Assertive

27   Community Treatment, and Reentry Court.  *See* TAC ¶¶ 381, 390.

28        The Motion's lone citation to an unpublished decision in *Disability Rights*

*California v. County of Alameda*, 2021 WL 212900 (N.D. Cal. Jan. 21, 2021), is not instructive, as that case relied on outdated precedent and is not binding on this Court. Citing *Townsend v. Quasim*, 328 F.3d 511 (9th Cir. 2003), the *Disability Rights* court concluded that *Olmstead* applies only if plaintiffs can "point to services being provided in institutional settings that could be provided in the community, or a risk that [plaintiffs] will need to endure institutionalization to receive specific services." 2021 WL 212900, at *11-12. The more recent Ninth Circuit *M.R.* case and other federal case law, however, establish that *Olmstead* is not so narrow and expressly rejected the position adopted in *Disability Rights*. In *M.R.*, the Ninth Circuit explained that "[i]mminent risk of institutionalization is not required" for a violation of *Olmstead*; rather, any state policy "that place[s] individuals at risk of unnecessary institutionalization" violates the ADA, even if that policy only "causes them to decline in health over time and eventually enter an institution in order to seek necessary care." 697 F.3d at 734-35 (quoting Department of Justice statement of interest filed in that case); *see also Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 609 (7th Cir. 2004) (finding public entity "may violate Title II when it refuses to provide an existing benefit to a disabled person that would enable that individual to live in a more community integrated setting"). In other words, *Olmstead* does not require plaintiffs to allege that they must immediately enter an institution to receive a particular service. Claims seeking to expand community services, for the purpose of addressing the risk of unnecessary institutionalization of people with disabilities, are consistent with prevailing law. However, Plaintiffs are amenable to amending this claim to clarify the allegations if the Court finds it inadequately pled.

## IV. Plaintiffs' Ninth Claim Adequately States a Claim for Discriminatory Racial Impact

The County contends that "Plaintiffs have not shown a disproportionate adverse impact on the protected classes," and attempts to provide factual

information to disprove the claim.  *See* Mot. at 11-12.  This is not a sufficient—or even proper—basis to dismiss this claim, and the County has not argued that Plaintiffs have failed to state a claim upon which relief may be granted.

California Government Code Section 11135 prohibits Defendants from denying "full and equal access" or otherwise discriminating against people on account of their race, color, national origin, or ethnic group identification.  "Courts apply a burden-shifting framework to analyze disparate impact cases," in which plaintiffs first "must show 'defendants' facially neutral practice causes a disproportionate adverse impact on a protected class.'"  *C.B. v. Moreno Valley Unified Sch. Dist.*, 544 F. Supp. 3d 973, 993 (C.D. Cal. 2021) (quoting *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 519 (9th Cir. 2011)).  The burden then shifts to the defendant, who "must justify the challenged practice." *Id.*  Finally, even if the defendant meets its rebuttal burden, "the plaintiff may still prevail by establishing a less discriminatory alternative." *Id.*  Under this framework, plaintiffs at the pleading stage must simply allege that a state-funded entity is implementing its programs in a racially discriminatory fashion.  *See, e.g.*, *C.B.*, 544 F. Supp. 3d at 993-94 (denying motion to dismiss); *Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma*, 644 F. Supp. 2d 1177, 1207 (N.D. Cal. 2009) (denying motion to dismiss "[b]ecause the complaint alleges that Sonoma County receives state funding, and that Sonoma County Sheriff's deputies have engaged in a racially-biased policy, practice and custom").

The TAC provides "specific allegations of racial discrimination."  *See C.B.*, 544 F. Supp. 3d at 994.  In particular, Plaintiffs allege that Defendants provide various programs, such as alternatives-to-pretrial incarceration programs, reentry programs, and early release programs, and that White people are more likely to be given access to those programs than Black and Latinx people.  *See* TAC ¶¶ 403-07, 505-06.  Plaintiffs also allege that Defendants use racially biased risk assessment tools to determine eligibility to those programs.  *Id.* ¶ 405.  As a result of the

discriminatory administration of such alternatives-to-incarceration programs, Plaintiffs allege that "Black and Latinx arrestees are disproportionately more likely … to stay incarcerated at the Jail, than White arrestees"—for example, even though a greater percentage of people arrested in San Diego are White (41%), White people account for only 31% of people in the Jail, in contrast to disproportionately high rates of incarceration for Black and Latinx arrestees.  *Id.* ¶ 402.

The County's attack on this claim is, in effect, that Plaintiffs have not yet proved their claims.  *See* Mot. at 12 ("Plaintiffs' bald allegation that it is race-based does not make it so, particularly when more details are examined.").  But the County's arguments—first, that arrests are made by other agencies, not just the Sheriff's Department; and second, that the County's incarceration statistics "are similar to those of other counties"—rely on unsupported factual assertions outside the record and are inappropriate for a motion to dismiss.  *See Schneider*, 151 F.3d at 1197 n.1.  As the court explained when dispatching with a similar argument in *C.B.*: "County Defendants may disagree with Plaintiff's allegations, but merely dismissing these (as well as the mere mention of Plaintiff's race) as 'playing the race card' is not a legal argument" for a motion to dismiss.  544 F. Supp. 3d at 994.

Moreover, the County's argument that "it is the crimes that dictate the arrest or probation violation," Mot. at 12, is beside the point.  As explained above, the TAC does not merely challenge an agency's decision to make an arrest; it challenges decisions made *after* arrest, such as whether to keep someone incarcerated pre-trial as opposed to making use of an alternative-to-incarceration or pretrial diversion program.  The factual assertions about arrests in the Motion relate to only a piece of the picture.  The factual issues about the availability of pretrial and post-conviction alternatives programs can be resolved only at a later stage.  The County has failed to challenge the sufficiency of the TAC's pleading on this claim.[5]

---

[5] Contrary to the Motion's assertion, *see* Mot. at 12, there is no "ADA reference[]" in Plaintiffs' Ninth Claim.  *See* TAC ¶¶ 501-07.

## V.    Plaintiffs' Sixth Claim Adequately States a Claim for Failure to Provide Adequate Dental Care

The County argues that "none of [Plaintiffs'] allegations about dental care pertain to the time period after NaphCare took over the provision of dental care." *See* Mot. at 12-13.  That is incorrect, and the County's factual challenge to Plaintiffs' allegations is not a basis for dismissal.

The TAC alleges that the Sheriff's Department *currently*—under the County's contract with NaphCare—"maintain[s] insufficient numbers of dental professionals to provide minimally adequate care," fails to "timely respond to requests for dental evaluations and treatment," does not "adequately screen, monitor, and provide follow-up care to people with serious dental conditions," and fails to "treat people on an emergency basis."  TAC ¶¶ 357-58.  Moreover, the TAC is clear that, even under the current NaphCare contract, it is the Sheriff's Department who has "ultimate authority over and responsibility for" setting policy and procedures at the Jail, not any of its contractors.  *Id.* ¶ 32; *see, e.g.*, *id.* ¶ 358 ("[P]er SHERIFF'S DEPARTMENT policy, people requesting dental care are often first seen or triaged by undefined 'health staff'—not a dentist—who are not capable of evaluating a person's dental needs").

The Motion challenges this claim on the basis that Plaintiffs' factual allegations must be incorrect because the County has a new system under NaphCare, which was "designed to provide streamlined and thorough care to jail residents in compliance with NHCC standards."  Mot. at 12-13.  This argument is inappropriate for a Rule 12(b)(6) motion, as the Court is not permitted to evaluate the extent or adequacy of NaphCare's dental program in deciding the Motion.  *See Schneider*, 151 F.3d at 1197 n.1.

That some examples contained in the TAC predate the County's contract with NaphCare is not grounds for dismissal of the claim.  The TAC alleges that the Jail's policy and practices, including those for dental care, are set by the Sheriff's

Department.  TAC ¶¶ 32, 40.  It further alleges that those policies, which are currently in effect, have the result of denying constitutionally adequate dental care to incarcerated people.  *Id.* ¶¶ 357-58.  To the extent that the County is alleging that the Sheriff's Department's policies have changed since it began contracting with NaphCare, it can assert those factual arguments in a summary judgment motion or at trial.  Moreover, as explained in Part I, *supra*, this is not a case about any individual past incident of harm, but rather a systemic, future-oriented claim about the Jail's current policies and procedures.  The Ninth Circuit has made clear that conflating the two—exactly as Defendants attempt to do here—"rests on a misunderstanding of the plaintiffs' allegations."  *Parsons*, at 754 F.3d at 676 ("The Complaint does not allege that the care provided on any particular occasion to any particular inmate (or group of inmates) was insufficient …, but rather that [] policies and practices of statewide and systemic application expose all inmates in [the institution's] custody to a substantial risk of serious harm.").

## VI.    There Is No Basis to Limit Plaintiffs' Claims

The Motion urges the Court to "limit" or "narrow" Plaintiffs' claims, despite the fact that it has, in effect, conceded the adequacy of Plaintiffs' First, Second, Third, Fourth, Fifth, and Eighth Claims for Relief.  Mot. at 13-15.

The Court should reject this argument.  As an initial matter, federal courts throughout the country have managed system-wide cases against other jail and prison systems for well over the past half century.  For example, the Arkansas prison system was the subject of a series of class action lawsuits in the 1960s, which were consolidated into a single case for trial on the constitutionality of various policies and practices, ranging from the prisons' use of the trusty system, failure to provide sufficient safety and security policies, failure to provide adequate medical care, and racial segregation, among others.  *See Holt v. Sarver*, 309 F. Supp. 362, 365-69, 381 (E.D. Ark. 1970) (describing history and scope of litigation).  The *Holt* court ordered class-wide injunctive relief, explaining that "all of the Petitioners are subject

to the overall situation which renders the Penitentiary unconstitutional." *Id.* at 382; *see also Ruiz v. Estelle*, 503 F. Supp. 1265 (S.D. Tex. 1980) (describing findings of fact regarding unconstitutional conditions at Texas state prison system, including overcrowding, understaffing, staff "brutality," inadequate medical care, inadequate psychiatric care, inadequate dental care, inadequate care for people with disabilities, environmental hazards, hearing procedures for disciplinary violations, use of isolation units, and access to court).

District courts in this Circuit have similarly managed such cases. California entities have been subject to system-wide litigation in prisons, as well as in county jails. *See, e.g.*, *Hernandez v. Cty. of Monterey*, 70 F. Supp. 3d 963, 967 (N.D. Cal. 2014) (denying defendants' motion to dismiss claims challenging the Jail's policies and practices regarding medical care, mental health care, dental care, safety and security, and disability access); *Gray v. Cty. of Riverside*, 2014 WL 5304915, at *2-5, *8-11 (C.D. Cal. Sept. 2, 2014) (denying motion to dismiss in class action lawsuit challenging jail policies related to medical and mental health care, intake procedures, privacy, and use of restraints, among others). Most recently, a trial was held in the above-mentioned *Parsons* case (now under the name *Jensen v. Shinn*). The district court there issued detailed findings of fact explaining how the Arizona Department of Corrections' policies and practices related to medical care, mental health care, dental care, emergency responses, use of isolation units, and other issues violated the U.S. Constitution. *Jensen v. Shinn*, — F. Supp. 3d —, 2022 WL 2911496 (D. Ariz. June 30, 2022); *see also id.*, Case No. 2:12-cv-00601-ROS, Dkt. 4380 (Jan. 9, 2023) (remedial order directing changes to medical care, mental health care, release planning, substance abuse treatment, recordkeeping, classification, and disciplinary processes, among others). The County fails to explain why this Court is uniquely unable to manage this case.

Rather than dismissing viable claims because there are "a multitude of violations," Mot. at 14, federal courts can and do use their authority to manage

complex cases by use of early neutral evaluation conferences, staging and trying issues in phases, and through other case management procedures. *See, e.g.*, *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1180-81 (M.D. Ala. 2017) (describing case management through distinct phases in class action case against Alabama prison system regarding overcrowding, mental health care, medical care, dental care, disability access, under-staffing, unsafe housing, inappropriate disciplinary actions, improper use of segregation, and more).

The Motion does not cite *any* directly on-point prison or jail cases in support of this argument.[6]  Instead, almost every case the County cites is a patent dispute. Mot. at 13-14.  Not only are those cases meaningfully distinct in terms of substance and public import, but they are also subject to different procedural rules.  *See generally* S.D. Patent Local Rules.  In any event, the County does not point to a single case in which a court dismissed a plaintiff's claims—shutting that party off from relief—on the grounds that its asserted claims are unmanageable.  Rather, those patent cases show that courts may ask parties to select a sample of claims for trial, the outcome of which would guide future proceedings in the litigation, namely calculation of damages.

The County cites one distinguishable case about physical access barriers for individuals with disabilities:  *Nevarez v. Forty Niners Football Co., LLC*, 2019 WL 13148141 (N.D. Cal. Feb. 5, 2019).  As the County acknowledges, summary judgment or trial in *Nevarez* would have required a jury to analyze 2,500 individual access barriers at Levi Stadium.  *See* Mot. at 14.  The court thus issued a case management order to narrow the number of alleged physical access barriers to be litigated at what had been a scheduled 8-day trial.  *Id.* at *2-3.  The case proceeded and ultimately resulted in remediation of thousands of physical access barriers that

---

[6] Indeed, the County cites only one systemic corrections case in the entire Motion (the *Armstrong* parole decision), despite the fact that such actions are common and well-established in the law.

the plaintiffs had identified.  *See Nevarez v. Forty Niners Football Co.*, 474 F. Supp. 3d 1041, 1044 (N.D. Cal. 2020) (approving final settlement); *Nevarez v. Forty Niners Football Co.*, Case No. 16-cv-07013-LHK, at Dkts. 375-2, 391 (settlement agreement).

By failing to identify *any* grounds to dismiss the majority of Plaintiffs' claims for relief, yet asking the Court to "limit" this case, Defendants effectively seek to break this case into several individual lawsuits challenging, *e.g.*, inadequate medical care in one case, inadequate mental health care in a second case, inadequate safety and security procedures in a third case, etc.  That alternative—resulting in separate, piecemeal injunctions governing the Jail, which may or may not overlap or conflict—would risk delaying necessary relief and allow harmful and unconstitutional deficiencies to persist at the Jail.  That alternative would also result in duplicative discovery and be more costly and burdensome for the judiciary and parties.

## CONCLUSION

Plaintiffs have adequately pled cognizable claims.  The County's Motion should be denied in its entirety.

DATED:  January 17, 2023

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Van Swearingen*

Van Swearingen

Attorneys for Plaintiffs

PLAINTIFFS' OPPOSITION TO  MOTION TO DISMISS THIRD AMENDED COMPLAINT