1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DARRYL DUNSMORE, ANDREE
ANDRADE, ERNEST
ARCHULETA, JAMES CLARK,
ANTHONY EDWARDS, LISA
LANDERS, REANNA LEVY, JOSUE
LOPEZ, CHRISTOPHER NELSON,
CHRISTOPHER NORWOOD, JESSE
OLIVARES, GUSTAVO
SEPULVEDA, MICHAEL TAYLOR,
and LAURA ZOERNER, on behalf of
themselves and all others similarly
situated,

                    Plaintiffs,

v.

SAN DIEGO COUNTY SHERIFF'S
DEPARTMENT, COUNTY OF SAN
DIEGO, SAN DIEGO COUNTY
PROBATION DEPARTMENT, and
DOES 1 to 20, inclusive,

                    Defendants.

Case No.:  20-cv-00406-AJB-DDL

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT
COUNTY OF SAN DIEGO'S MOTION
TO DISMISS THIRD AMENDED
COMPLAINT**

**(Doc. No. 247)**

Presently pending before the Court is Defendant County of San Diego's (the "County") motion to dismiss. (Doc. No. 247.) The motion is fully briefed, (Doc. Nos. 259, 264), and the matter is suitable for determination on the papers. For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the County's motion to dismiss.

1

# I.   BACKGROUND

The facts of this case have been recited in previous orders. (*See* Doc. No. 219.) Plaintiffs are current or former inmates of San Diego County Jail facilities (the "Jail"), operated by Defendants San Diego County Sheriff's Department ("Sheriff's Department") and the County (collectively, "Jail Defendants"). Plaintiffs bring this action on behalf of "themselves and the approximately 4,000 incarcerated people who are similarly situated on any given day" to "remedy the dangerous, discriminatory, and unconstitutional conditions in the Jail." (Third Amended Complaint ("TAC"), Doc. No. 231, ¶ 4.) Specifically, Plaintiffs contend Defendants' policies and practices contribute to the high death rates in the Jail, which "has for years exceeded the rates nationally and in other large California jails, [and] it reached chilling heights in 2021 when 18 people died, amounting to a death rate of 458 incarcerated people per 100,000." (*Id.* ¶ 1.)

The TAC brings claims for:

1.    Failure to provide adequate medical care in violation of the Eighth and Fourteenth Amendments, and Article 1, Sections 7 and 17 of the California Constitution;

2.    Failure to provide adequate mental health care in violation of the Eighth and Fourteenth Amendments, and Article 1, Sections 7 and 17 of the California Constitution;

3.    Failure to provide reasonable accommodations to incarcerated people with disabilities in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132, 12203, the Rehabilitation Act, 29 U.S.C. § 794, and California Gov't Code § 11135;

4.    Failure to ensure adequate environmental health and safety conditions in violation of the Eighth and Fourteenth Amendments, and Article 1, Sections 7 and 17 of the California Constitution;

5.    Failure to ensure the safety and security of incarcerated people in violation of the Eighth and Fourteenth Amendments, and Article 1, Sections 7 and 17 of the California Constitution;

///

2

6.      Failure to provide adequate dental care in violation of the Eighth and Fourteenth Amendments, and Article 1, Sections 7 and 17 of the California Constitution;

7.      Overincarceration of people with disabilities in violation of the ADA, the Rehabilitation Act, and California Gov't Code § 11135;

8.      Denial of access to counsel and the courts in violation of the Sixth and Fourteenth Amendments, and Article 1, Sections 7 and 15 of the California Constitution; and

9.      Discriminatory racial impact in violation of California Gov't Code § 11135.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

///

1

## III.   DISCUSSION

2     The Third Amendment Complaint brings nine causes of action seeking injunctive

3   and declaratory relief. The County moves to dismiss Plaintiffs' TAC pursuant to Federal

4   Rule of Civil Procedure 12(b)(6). (Doc. No. 247.) Specifically, the County asserts Plaintiffs

5   failed to cure their shotgun-style pleading in the Second Amended Complaint, (*see* Doc.

6   No. 219 at 7), that the Sheriff's Department and San Diego County Probation Department

7   ("Probation Department") are erroneously named defendants that must be dismissed as

8   subdivisions of the County, that Plaintiffs lack Article III standing, and that Plaintiffs'

9   sixth, seventh, and ninth claims fail to state a claim. (*Id.* at 7–8.)

10     **A.   Shotgun Pleading**

11     Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the

12   claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The primary

13   purpose of Rule 8(a)(2) is "to give the defendant fair notice of the factual basis of the

14   claim[.]" *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 841–42 (9th Cir.

15   2007). "A complaint which fails to comply with [Rule 8(a)(2)] may be dismissed." *Nevijel*

16   *v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981).

17     As an initial matter, Plaintiffs' TAC is not a model of a "short and plain" statement

18   that states a claim for relief. However, while some degree of assembly is required to match

19   the allegations in the "Factual Allegations" portion of the TAC with the elements of each

20   claim, the Court does not find the pleading deprives Defendants of fair notice because the

21   TAC provides Defendants with visibility into the factual and legal bases of Plaintiffs'

22   claims. *See Lindblad v. Presidio Trust Bd.*, No. 21-cv-6806, 2021 WL 5048347, at *3 (N.D.

23   Cal. Sept. 7, 2021) (holding that only where a purported puzzle pleading deprives a

24   defendant of fair notice is dismissal warranted). For example, in the "Factual Allegations"

25   portion of the TAC, Plaintiffs provide headings for facts which correspond to each cause

26   of action. (*See* TAC ¶¶ 38–122.)

27     Accordingly, the Court declines Defendants' invitation to dismiss the TAC on the

28   ground it fails to satisfy Rule 8(a)(2).

1

**B.     Standing**

2      The County next asserts Plaintiffs' TAC fails to show an individualized showing of

3 Article III standing to bring claims related to any injuries they themselves did not suffer.

4 (Doc. No. 247 at 12–13.) Plaintiffs respond they have standing under *Parsons v. Ryan*, 754

5 F.3d 657, 676 (9th Cir. 2014) ("*Parsons* II"), in which the Ninth Circuit recognized

6 standing in cases challenging a prison or jail's "policies and practices of statewide and

7 systemic application" which "expose all inmates in [the institution's] custody to a

8 substantial risk of serious harm" in the present and future. (Doc. No. 259 at 11–12.)

9      Article III standing requires a plaintiff to demonstrate an "invasion of a legally

10 protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

11 conjectural or hypothetical." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1036

12 (9th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). In the

13 context of claims arising from prison conditions, an inmate who is claiming the defendant

14 fails to prevent harm must show they are incarcerated under conditions "posing a

15 substantial risk of serious harm." *Brown v. Plata*, 563 U.S. 493, 505 n.3 (citing *Farmer v.

16 Brennan*, 511 U.S. 825, 834 (1994)) (no consideration of whether specific instances of care

17 violate the Constitution, because plaintiffs rely on systemwide deficiencies that, taken as a

18 whole, subject sick and mentally ill prisoners to a substantial risk of serious harm). When

19 seeking only injunctive relief, a plaintiff need not wait until they suffer an actual injury

20 because the constitutional injury is the exposure to the risk of harm. *Parsons* II, 754 F.3d

21 at 678; *Parsons v. Ryan*, 289 F.R.D. 513, 521 (D. Ariz. 2013) ("*Parsons* I"); *see also Chief

22 Goes Out v. Missoula Cnty.*, No. CV 12–155–M–DWM, 2013 WL 139938, at *5 (D. Mont.

23 Jan. 10, 2013) (injury suffered is the "deprivation itself, not just the negative effects

24 resulting from the deprivation."). Indeed, the United States Supreme Court has commented

25 that "it would be odd to deny an injunction to inmates who plainly proved an unsafe, life-

26 threatening condition in their prison on the ground that nothing yet had happened to them."

27 *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

28 ///

5

Here, Plaintiffs' TAC "contains detailed factual allegations concerning the existence of uniform, statewide policies and practices" in the Jail which "expose all [incarcerated people] to a substantial risk of harm," as well as "allegations that demonstrate the kinds of serious harm to which members of the proposed class are exposed by [those] policies and practices." *Parsons* II, 754 F.3d at 664. Thus, the Court finds Plaintiffs have sufficiently alleged standing.

### C.     42 U.S.C. § 1983 Claims

Section 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. In order to prevail on a § 1983 claim, a complaint need contain "two essential elements": "(1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of State law." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). "The term 'persons' encompasses state and local officials sued in their individual capacities, private individuals, and entities which act under the color of state law and local governmental entities." *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 995–96 (N.D. Cal. 1996).

States and state officials acting within their official capacity granted by the state are not considered "persons" within the language of § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (holding "a suit against a state official" is "a suit against that official's office" which is essentially "no different from a suit against the State itself," therefore "arm[s] of the state" enjoy Eleventh Amendment immunity from § 1983 liability). In contrast, "municipalities and other local governmental units . . . [are] among those persons to whom § 1983 applies." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 688, 690 (1978). Therefore, counties qualify as persons within the scope of § 1983. *Jackson v. Barnes*, 749 F.3d 755, 764 (9th Cir. 2014). However, § 1983 does not employ a theory of respondeat superior liability; a municipal entity cannot be held liable for the actions of its agents or employees alone. *Board of Cnty. Com'rs of Bryan Cnty. v.*

6

*Brown*, 520 U.S. 397, 403 (1997). However, municipalities and their entities may be held liable as "persons" under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. Thus, in order to demonstrate liability, § 1983 compels a plaintiff to allege some municipal policy or custom affected the alleged civil rights violation as opposed to the individual actions of those employed by the entity. *Brown*, 520 U.S. at 403; *see Daniel v. Contra Costa Cnty. Sheriff's Dept.*, Case No. 16-cv-02037-EMC, 2016 WL 5109992, at *2 (N.D. Cal. Sept. 21, 2016) ("To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation.").

Here, Plaintiffs name the County of San Diego, the Sheriff's Department, and Probation Department as Defendants. (TAC ¶¶ 32–35.) The County asserts the Sheriff's Department and Probation Department should be dismissed from this action because they are not "persons" subject to suit under § 1983. (Doc. No. 247 at 14.) However, the Ninth Circuit recently ruled on this issue, reversing a lower court's determination that a municipal police department was not a "person" within the meaning of § 1983. *Duarte v. City of Stockton*, 60 F.4th 566, 573–74 (9th Cir. 2023). The *Duarte* court noted the Ninth Circuit resolved this issue over thirty years ago in *Karim-Panachi v. Los Angeles Police Department*, 839 F.2d 621, 624 n.2 (9th Cir. 1988), and was extended to California's county sheriff's department in *Streit v. County of Los Angeles*, 236 F.3d 552, 565–66 (9th Cir. 2001). Because the Probation Department is also a municipal department of the County of San Diego, the Court finds it is a properly named defendant. Accordingly, the Sheriff's Department and Probation Department are "persons" within the meaning of § 1983, and are therefore proper defendants.

///

7

1  As such, the Court **DIRECTS** the Sheriff's Department and Probation Department
2  to file a responsive pleading to the TAC consistent with this Order.

3  **D.    Seventh Claim – Over Incarceration of People with Disabilities**

4  Turning to the merits, the County argues Plaintiffs' seventh claim asserting
5  violations of the ADA, the Rehabilitation Act, and California Government Code § 11135
6  fails to state a claim. (Doc. No. 247 at 14–17.) Plaintiffs contend the County, Sheriff's
7  Department, and Probation Department (collectively, "All Defendants") fail to provide
8  sufficient community-based mental health services and "to implement adequate
9  alternatives-to-incarceration programs, adequate reentry programs, and other evidence-
10 based policies to stop mass incarceration." (TAC ¶ 11.) Plaintiffs further argue "All
11 Defendants must significantly expand alternatives to incarceration and other programs to
12 shift the pipeline away from the Jail and towards adequate community-based services,
13 programming, and resources that can prevent unnecessary detention." (*Id.*) Specifically,
14 Plaintiffs argue that All Defendants' policies and practices disproportionately impact the
15 poor, homeless, mentally ill, and people of color. (*Id.*)

16 Title II of the ADA provides that "no qualified individual with a disability shall, by
17 reason of such disability, be excluded from participation in or be denied the benefits of the
18 services, programs, or activities of a public entity, or be subjected to discrimination by any
19 such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides
20 as follows: "No otherwise qualified individual with a disability . . . shall, solely by reason
21 of her or his disability, be excluded from the participation in, be denied the benefits of, or
22 be subjected to discrimination under any program or activity receiving Federal financial
23 assistance." 29 U.S.C. § 794. Finally, California Government Code section 11135 provides
24 that "[n]o person in the State of California shall, on the basis of . . . mental disability [or]
25 physical disability . . . be unlawfully denied full and equal access to the benefits of, or be
26 unlawfully subjected to discrimination under, any program or activity that is conducted,
27 operated, or administered by the state or by any state agency, is funded directly by the state,
28 or receives any financial assistance from the state."

The ADA applies in the jail context. *See* 42 U.S.C. § 12131(1)(B); *United States v. Georgia*, 546 U.S. 151, 154 (2006); *see also Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008) (stating "[i]t is undisputed that Title II applies to the . . . jails' services, programs, and activities for detainees"). In order to state a claim under Title II of the ADA, however, a plaintiff must allege:

> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)). Title II of the ADA was modeled after § 504 of the Rehabilitation Act and are thus analyzed under the same standard. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135–36 (9th Cir. 2001). A violation under Title II or § 504 is also a violation of California Government Code section 11135. *See Disability Rights Cal. v. Cnty. of Alameda*, Case No. 20-cv-05256-CRB, 2021 WL 212900, at *9 (N.D. Cal. Jan. 21, 2021).

The ADA and Rehabilitation Act cover both intentional discrimination and facially neutral practices that disproportionately impact disabled people. *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996). The Ninth Circuit has counseled that courts should not dwell on distinctions between intentionally discriminatory practices and those that are merely "thoughtless," but should instead "assess whether disabled persons were denied 'meaningful access' to state-provided services." *Id.* (discussing *Alexander v. Choate*, 469 U.S. 287, 302 (1985)). A policy that denies disabled persons meaningful access to state services by reason of their disability discriminates against disabled individuals in violation of the ADA. *Crowder*, 81 F.3d at 1485.

The County first contends Plaintiffs fail to state a claim because it is typically the court's decision whether to incarcerate someone, and the County plays no role and cannot

9

independently decide that persons with disabilities should not be incarcerated. (Doc. No. 247 at 15.) Plaintiffs respond that this "claim relates not to the decision whether a person with disabilities is convicted or sentenced, but rather whether someone who is *already detained* in the Jail is provided with equal access to the County's existing alternatives-to-incarceration programs and services." (Doc. No. 259 at 19.) As such, the Court analyzes Plaintiffs' claim in this context.

### 1.    Violation of Access to Services

The County next argues the ADA and similar laws "do not offer a remedy for an alleged lack of any particular service including alternatives to incarceration for anyone, disabled or not." (Doc. No. 247 at 15.) Plaintiffs maintain that "Defendants discriminate against incarcerated people with disabilities by denying them meaningful access to diversion and reentry services, which results in over-incarceration and other cognizable harms to people with disabilities." (Doc. No. 259 at 17 (citing TAC ¶¶ 377–99).)

To state an ADA claim based on disability discrimination, Plaintiffs must include factual content to show "either (i) discrimination based on disparate treatment or impact, or (ii) denial of reasonable modifications or accommodations." *Atayde v. NAPA State Hosp.*, 255 F. Supp. 3d 978, 1000 (E.D. Cal. 2017) (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1086 (9th Cir. 2004)). To show disparate treatment, they must allege that other non-disabled individuals without disabilities were treated more favorably. *Id.* (citing *McGary*, 386 F.3d at 1265–66). To show disparate impact, they must allege that a facially neutral policy has a significantly adverse or disproportionate impact on disabled persons. *Id.* (citing *Lawman v. City & Cnty. of San Francisco*, 159 F. Supp. 3d 1130, 1148 n.11 (N.D. Cal. 2016)). Because Plaintiffs make no such allegations, their ADA claims based on disability discrimination must be dismissed.

In review of Plaintiffs' TAC, the Court notes that Plaintiffs do not claim Defendants deny access to such services to incarcerated people with disabilities compared to those without disabilities. Rather, Plaintiffs broadly state that although Defendants "currently maintain some alternatives to incarceration programs, they are insufficient in size, scope,

10

and funding . . . ." (TAC ¶¶ 377, 379, 381, 382, 383, 386, 387, 389, 390, 392.) Plaintiffs further assert the Sheriff's Department uses discriminatory eligibility criteria that limits the people who may receive Home Detention. (*Id.* ¶ 378.) Plaintiffs provide an example asserting the eligibility criteria "disqualifies people who are poor, people who only have cell phones, individuals without stable housing, and many others." (*Id.*) However, these categories do not fall under the meaning of qualified individuals with a disability under the ADA or similar laws.

Moreover, Plaintiffs assert in their Opposition that they are not given reasonable modifications and thus are denied meaningful and equal access to certain programs. (Doc. No. 259 at 18.) However, Plaintiffs' reasonable accommodation claim is brought under their third claim for relief, and is not mentioned under their seventh claim. (*See* TAC ¶¶ 454–68.) Thus, the Court declines to read a reasonable accommodation claim under Plaintiffs' seventh cause of action.

### 2.   Violation of the Integration Mandate

Another form of disability discrimination is a violation of the ADA's "integration mandate." *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 592, 600–601 (1999); *Townsend v. Quasim*, 328 F.3d 511, 515–18 (9th Cir. 2003). This mandate, which is embodied within the ADA and its implementing regulations, specifies that persons with disabilities receive services in the "most integrated setting appropriate to their needs." 28 C.F.R. § 35.130(d) ("[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."); *see* 42 U.S.C. § 12182(b)(1)(B). The "most integrated setting" is defined as "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible." 28 C.F.R. pt. 35 app. A; *Olmstead*, 527 U.S. at 592. This mandate "serves one of the principal purposes of Title II of the ADA: ending the isolation and segregation of disabled persons." *Arc of Wash. State Inc. v. Braddock*, 427 F.3d 615, 618 (9th Cir. 2005).

///

In this context, however, unjustified isolation does not mean isolation that could be avoided if a state or public entity simply provided more or better services. *Olmstead* did not establish that state or local governments are subject to a particular "standard of care" in their provision of "medical services . . . or that the ADA requires States to provide a certain level of benefits to individuals with disabilities." 527 U.S. at 603 n.14. Instead, it established "that States must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide." *Id.* When a state provides a particular service, the state must "provide community-based treatment for [qualified] persons with . . . disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with . . . disabilities." *Id.* at 607. Failure to do so constitutes disability discrimination. *Id.*

To state a claim under Title II of the ADA based on a violation of the integration mandate, the plaintiff must plead and prove that he or she: (1) is a "qualified individual with a disability"; (2) was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of their disability. *See Townsend*, 328 F.3d at 517.

The County argues *Olmstead*'s integration mandate does not require states to provide community-based treatment as an alternative to being incarcerated or institutionalized. (Doc. No. 247 at 15–16.) Plaintiffs respond that the services provided by Defendants suffer from "insufficient capacity and reach, creating a serious risk that people with mental health and other disabilities will be subjected to institutionalization in County psychiatric facilities, . . . both in the community *and* in the Jail." (Doc. No. 259 at 19 (emphasis added).) However, in their TAC, Plaintiffs fail to plead they were excluded from participation or denied benefits by reason of their disability, that Defendants believe "community placement is appropriate," or that "the placement can be reasonably

12

accommodated." *Olmstead*, 527 U.S. at 587. Thus, based on the foregoing, Plaintiffs' seventh claim is **DISMISSED WITH LEAVE TO AMEND**.

### E.     Ninth Claim – Discriminatory Racial Impact

California Government Code section 11135 prohibits discrimination "under[] any program or activity that . . . receives any financial assistance from the state." Under section 11135,

> (1) a plaintiff establishes a prima facie case if the defendant's facially neutral practice causes a disproportionate adverse impact on a protected class; (2) to rebut, the defendant must justify the challenged practice; and (3) if the defendant meets its rebuttal burden, the plaintiff may still prevail by establishing a less discriminatory alternative.

*Darensburg v. Metro. Transp. Com'n*, 636 F.3d 511, 519 (9th Cir. 2011).

In their TAC, Plaintiffs assert the Sheriff's Department uses state funds to over-police Black and Latinx communities, (TAC ¶ 401), and that All Defendants' disproportionate and discriminatory administration of state-funded pretrial alternatives to incarceration programs causes disproportionate incarceration of Black and Latinx individuals, (*id.* ¶ 403). The County argues that Plaintiffs fail to show a disproportionate impact on the protected classes because (1) the Jail receives arrestees and convicted persons from other agencies in addition to the Sheriff's Department, and (2) the County's incarceration and arrest statistics are not disproportionate when compared to statewide and county statistics. (Doc. No. 247 at 17–18.) However, these are factual disputes not suited for a motion to dismiss. Because the Ninth Claim clearly avers that Defendants receive financial assistance from the State of California and are thus subject to liability under section 11135, (TAC ¶ 400), and since there is no basis for concluding the statute does not apply to the circumstances present here as a matter of law, the County's challenge cannot be adjudicated in the context of a motion to dismiss. Thus, the County's motion to dismiss Plaintiffs' ninth claim is **DENIED**.

///

## F.    Sixth Claim – Inadequate Dental Care

Plaintiffs bring their sixth claim for failure to provide adequate dental care under the Eight Amendment and the parallel provision of Article 1, Section 17 of the California Constitution, as well as the Fourteenth Amendment and the parallel provision in Article 1, Section 7 of the California Constitution. (TAC ¶ 483.) Plaintiffs allege that by their policies, practices, and failures to train staff, Defendants subject Plaintiffs to "a substantial risk of serious harm and injury from inadequate dental care at the Jail." (*Id.* ¶ 483.)

The County asserts Plaintiffs sixth claim fails to state a claim because the Sheriff's Department has contracted with NaphCare, Inc. to begin "a comprehensive system which was implemented on June 1, 2022 . . . ." (Doc. No. 247 at 18–19.) Specifically, the County argues Plaintiffs cite to examples which occurred before the NaphCare system was implemented. (*Id.* at 19.) Plaintiffs respond that they allege the Sheriff's Department *currently* fails to provide adequate dental care and that even under the current NaphCare contract, "it is the Sheriff's Department who has 'ultimate authority over and responsibility for' setting policy and procedures at the Jail, not any of its contractors." (Doc. No. 259 at 23.)

The Court finds Plaintiffs' claims are directed toward Defendants, rather than NaphCare, and that the County's argument as to the efficacy of NaphCare's dental program is inappropriate for a Rule 12(b)(6) motion. As such, the County's motion to dismiss Plaintiffs' sixth claim is **DENIED**.

## G.    The County's Request for a Case Narrowing Order

Lastly, the County asks the Court to limit Plaintiffs' claims, asserting Plaintiffs' case is unmanageable and imposes an extreme burden on this Court as well as counsel. (Doc. No. 247 at 20–21.) The United States Supreme Court has "held that district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892–93 (2016). Indeed, "[i]t is well established that '[d]istrict courts have inherent power to control their

14

docket.'" *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (quoting *Atchison, Topeka & Santa Fe Ry. v. Hercules, Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998)).

In review of the cases cited by the County, the Court does not find the extraordinary circumstances present in this case to warrant a narrowing order. *See Nevarez v. Forty Niners Football Co., Inc.*, Case No. 16-CV-07013-LHK, 2019 WL 13148141, at *2–3 (N.D. Cal. Feb. 5, 2019) (staying case for case narrowing where the plaintiffs alleged over 2,500 physical access barriers). As such, the Court declines to narrow or limit Plaintiffs' claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the County's motion to dismiss. Should Plaintiffs choose to do so, where leave is granted, they must file an amended complaint curing the deficiencies noted herein no later than <u>Monday, May 8, 2023</u>. Defendants must file a responsive pleading <u>no later than May 22, 2023</u>.

**IT IS SO ORDERED.**

Dated:  April 27, 2023

Hon. Anthony J. Battaglia
United States District Judge

15