1               UNITED STATES DISTRICT COURT

2             FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3    DARRYL DUNSMORE, ERNEST          )
     ARCHULETA, ANTHONY EDWARDS, REANNA)
4    LEVY, JOSUE LOPEZ, CHRISTOPHER    )
     NELSON, CHRISTOPHER NORWOOD, and  )
5    LAURA ZOERNER, on behalf of       )
     themselves and all others         )
6    similarly situated,               )
                                       )   No. 20-CV-00406-AJB-DDL
7              Plaintiffs,             )
                                       )
8    v.                                )   May 3, 2023
                                       )
9    SAN DIEGO COUNTY SHERIFF'S        )
     DEPARTMENT; COUNTY OF SAN DIEGO;  )
10   CORRECTIONAL HEALTCARE PARTNERS,  )
     INC.; LIBERTY HEALTHCARE, INC.;   )
11   MID-AMERICA HEALTH, INC.; LOGAN   )
     HAAK, M.D., INC.; SAN DIEGO COUNTY)
12   PROBATION DEPARTMENT, and DOES 1  )
     to 20 inclusive,,                 )
13                                     )   Courtroom 14A
               Defendants.             )
14   _____)   San Diego, California

15

16                  TRANSCRIPT OF PROCEEDINGS
                 (Telephonic Status Conference)

17

18      BEFORE THE HONORABLE DAVID D. LESHNER, MAGISTRATE JUDGE

19

20

21

22   COURT REPORTER:        AMANDA M. LeGORE
                            RDR, CRR, CRC, FCRR, CACSR
23                          U.S. District Court
                            333 West Broadway, Suite 420
24                          San Diego, CA 92101
                            amanda_legore@casd.uscourts.gov

25

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:        VAN SWEARINGEN
                                GAY GRUNFELD
 3                              Rosen Bien Galvan & Grunfeld LLP
                                101 Mission Street, Sixth Floor
 4                              San Francisco, CA  94105-1738
                                (415)433-6830
 5                              vswearingen@rbgg.com
                                ggrunfeld@rbgg.com
 6

 7
     FOR DEFENDANT COUNTY OF
 8   SAN DIEGO:                 SUSAN COLEMAN
                                ELIZABETH PAPPY
 9                              Burke Williams & Sorenson LLP
                                501 W. Broadway, Suite 1600
10                              San Diego, CA  92101
                                (619)814-5800
11                              scoleman@bwslaw.com

12

13

14                                    -0-

15

16

17

18

19

20

21

22

23

24

25
```

1          (Wednesday, May 3, 2023; 4:00 p.m.)

2

3                    P R O C E E D I N G S

4

5          THE COURT:  Good afternoon, everyone.  This is

6  Dunsmore versus the County of San Diego, et al., Case Number

7  20-CV-406.  We are on calendar for a status conference.

8          May I have appearances from counsel, beginning with

9  the plaintiff.

10          ATTORNEY GRUNFELD:  Good afternoon, your Honor.  Gay

11  Grunfeld for the plaintiffs and the putative class.

12          THE COURT:  Thank you.

13          ATTORNEY VAN SWEARINGEN:  Good afternoon, your Honor.

14  Van Swearingen for the plaintiffs and the putative class.

15          THE COURT:  Thank you.

16          ATTORNEY COLEMAN:  Good afternoon, your Honor.  Susan

17  Coleman for the County of San Diego.

18          THE COURT:  Thanks, Ms. Coleman.

19          ATTORNEY PAPPY:  And good afternoon.  Elizabeth Pappy

20  on behalf of the County of San Diego.

21          THE COURT:  Okay.  Thank you.  Thank you all.  And I

22  appreciate you all being here on -- I guess it's relatively

23  short notice.  But I received the email from Ms. Coleman on

24  April 27th, and I did think it made sense to convene a status

25  conference to discuss, you know, my efforts to work with you

1    all to try to resolve as much of this case as we can, in light

2    of the recent developments.

3            So, as I understand it, Judge Battaglia granted the

4    motion to dismiss the plaintiffs' ADA claim with leave to amend

5    and denied the motion to dismiss in other respects.  And there

6    is, of course, a preliminary injunction motion that has been

7    filed.

8            And as I looked at the docket, I think -- as of

9    now -- the defendants' deadline to respond is May 10th, with a

10   date for a reply and a hearing on June 29th.

11           Is that generally accurate?  If I got something

12   wrong, let me know.

13           ATTORNEY GRUNFELD:  Well, your Honor, Gay Grunfeld.

14   The only slightly different point is that the Court dismissed

15   one of our ADA causes of action, not both.

16           THE COURT:  Got it.  Fair point.  Okay.

17           ATTORNEY GRUNFELD:  And you may have seen on the

18   docket that defendants just filed a joint motion for additional

19   time on the briefing on the preliminary injunction.

20           THE COURT:  I did not see that but now I do.  Okay.

21   So that's helpful to know.

22           All right.  So what are -- okay.  So you're asking up

23   until May 17th, Ms. Coleman?

24           ATTORNEY COLEMAN:  Correct.  For the opposition.  And

25   then a few -- a few extra days for the reply.  It won't

1   necessarily change the hearing date.

2          THE COURT:  Right.

3          All right.  Well, look, I understand the first

4   paragraph about -- from your email, Ms. Coleman, that you had

5   wanted to avoid motion practice while the parties worked on

6   possible settlement.

7          I mean, that ship has sailed, at least in part.  The

8   motion is filed, and you've got your briefing schedule from

9   Judge Battaglia.  And let's assume the joint motion is going to

10  be granted, and you'll get an extra week.

11         I would really like to hear from the parties, you

12  know, what we can do -- you know, sort of working on a parallel

13  track -- to try to start working on some of these issues in the

14  case through the ENE process.

15         I don't think this case is amenable to having one ENE

16  to resolve every issue that the plaintiffs are alleging.  I

17  just -- I don't think that's going to be realistic.  But I do

18  think we can try to make some progress on discrete issues.

19         And what I -- I know we've spoken about, as I recall,

20  was working on the ADA issues following the expedited

21  discovery, including the inspections; and then turning to the

22  medical and mental health issues.

23         So what can we do to move this case forward?  You all

24  know the case better than anybody.  And I would be really

25  interested in hearing, you know, if you have any -- if there's

1  been any discussion between the parties; what agreements you

2  all have; as to how we can try to move forward.  If not, what

3  your thoughts are.

4          Why don't you start, Ms. Grunfeld and Mr. Swearingen.

5          ATTORNEY GRUNFELD:  Thank you, your Honor.

6          We are happy to go to an ENE on the ADA issues.  We

7  have always been happy to do that.  And we have our calendars

8  open for the earliest date that the Court has time for us.

9          We did propose joint experts some time ago.  That

10  proposal was rejected.  So we did retain our own experts.  And,

11  unfortunately, for the people incarcerated in this jail, our

12  expert has concluded that there are serious problems with

13  respect to ADA compliance.  That is all laid out in our motion.

14          THE COURT:  Right.

15          ATTORNEY GRUNFELD:  So I would say that what we can

16  do to move the case forward is two things.

17          We would ask that the Court set a CMC, since the case

18  is going to be at issue in the near future.  Plaintiffs are not

19  amending their complaint.  We will stand on our third amended

20  complaint.  And we will expect the defendants to answer in the

21  near future.

22          So we need a CMC, and we need an ENE within 45 days

23  of the answer; as required by the court's local rules.

24          THE COURT:  Okay.  Well, I'm open to giving you an

25  ENE earlier than that, which is one thing we've been talking

1    about.

2              And I guess what I would like to know is how do you

3    think an ENE on the ADA issues should proceed?

4              I understand your expert filed a lengthy declaration

5    in support of the preliminary injunction motion.  Is there

6    anything that we can do in this case to make that ENE as

7    productive as possible?

8              So, question:  Should the initial ENE be limited to

9    the ADA issues, Ms. Grunfeld?

10             ATTORNEY GRUNFELD:  It could be.  That's fine with

11   us.  Yes.

12             THE COURT:  I -- I need a little bit more than that.

13   And I'm asking that because you -- it sounds like the scope of

14   the issues is going to be pretty broad.

15             And so I don't know that it's going to be even

16   possible to have everybody prep up for an ENE that addresses

17   additional issues.  It sounds like the number of issues is such

18   that we may want to have an ENE limited to the ADA issues.  But

19   you know it better than I do, so what do you think?

20             ATTORNEY GRUNFELD:  Well, I certainly think having

21   several ENEs on the different causes of action is a great plan.

22             We have filed our motion for preliminary injunction

23   with respect to the issues that we consider most urgent and

24   serious.

25             And if we limited our A -- our ENE to those issues,

 1 | that could be productive as long as the schedule for the
 2 | preliminary injunction does not move.
 3 |        THE COURT:  That's -- that's above my pay grade.  So
 4 | that will be -- Judge Battaglia is going to be dealing with
 5 | that.
 6 |        And I -- to be clear, if we're holding an ENE, it
 7 | wouldn't be as though -- holding a series of ENEs, my intent
 8 | would not be to wait to issue the scheduling order pending
 9 | completion of all of the ENEs.  I want to do that -- issue the
10 | scheduling order and continue working with you all in the
11 | meantime, because I do think this case lends itself to that.
12 |        Ms. Coleman, Ms. Pappy, what do you think about
13 | beginning with an ENE on the ADA issues?
14 |        If you agree with that, how should we structure the
15 | ENE to try to maximize the chances of success?
16 |        ATTORNEY COLEMAN:  Sure.  Your Honor, so if you
17 | recall, last January I suggested a very specific ENE process;
18 | which I have subsequently suggested to the plaintiffs two more
19 | times before the injunction was filed.
20 |        And what I had suggested was get the experts on a
21 | call with each other, come up with a list.  I suppose you could
22 | say we have their list in the form of the declaration.
23 | Which -- which I would like Ms. Sanossian and Mr. Joelsen to
24 | get on the phone and see if they can hash out what can be
25 | agreed to and what's not.

1          Because as much as I may think I know about this

2    stuff, it's their -- they're the people who are going to

3    convince the Court what needs to be fixed and what doesn't.

4    And, in that way, pare down the ENE to, "All right, you have

5    this agreed list.  How fast can you get these things done?  Are

6    these things already ordered?"  You know, "Yeah, that will be

7    here in three months."  And simply check off the list the

8    things they can't agree to.  I would consider that first part

9    to be a very short part of the ENE.  Maybe even counsel and I

10   can -- can agree to something -- a schedule for repairs -- some

11   of which has been in process since November and January,

12   especially, you know -- before we go to the ENE.  And then

13   spend the time at the ENE discussing the things that we can't

14   agree about.

15          Either we don't think there's a violation and they

16   do, under the law.  Or they want something structural done that

17   we contend is not readily achievable because you can't take a

18   load-bearing wall down.  Something to that effect.  So spend

19   the time to argue about the things that we really disagree

20   about.  And we still stand ready to do that, and before the

21   injunction.

22          THE COURT:  Right.

23          Understanding that the ENE we're talking about is

24   going to proceed separately from the briefing and hearing on

25   the preliminary injunction motion.

1          Ms. Grunfeld, what are your thoughts about that

2    proposal?

3          ATTORNEY GRUNFELD:   I think that proposal is

4    unrealistic, your Honor.   This is not something where you,

5    quote, get on the phone, close quote.

6          If -- we have presented our list.   They have our

7    expert's report.   They were with us during these inspections.

8    There was no discussion during the inspections of, oh, I

9    disagree with this or that.   So -- and, in fact, they've

10   instructed all of their witnesses not to answer questions about

11   what their expert is recommending.

12         So it's time for their expert to come forward and

13   provide us with information in writing about the disagreements.

14   This is normal to do.   They have our report.   So that's one

15   part of this.   The two experts on the phone is not really a

16   workable solution.

17         However, we're open to reading what their expert is

18   saying.   He was present on both inspections.   And to learning

19   what their position is.   To this day, we do not know whether

20   they are claiming that these facilities are accessible in part

21   or in whole.

22         So if they have something in writing they want to

23   give us about that, we're happy to read it.   We're also happy

24   to go to an ENE.

25         We've presented to them our proposed order.   These

1   are the orders that we're seeking from the Court.  And they're

2   not just about barriers.  We're seeking identification and

3   tracking and better policies and procedures.  Better grievance

4   process.  That will address all of these issues; the ones we've

5   brought up in the -- in the motion and -- of course, those are

6   not the only ADA issues in the third claim for relief.  There's

7   numerous others, on behalf of numerous different people and

8   types of disabilities.  But, of course, the Court's expedited

9   discovery was limited to two jails and two disabilities.  So

10  that is what we have received to date, and that is what we have

11  put in our motion.

12          ATTORNEY COLEMAN:  And just to respond to that

13  quickly, your Honor -- this is Susan Coleman -- we did not

14  instruct witnesses not to talk about Mr. Joelsen's

15  recommendations.  In fact, that was a topic of discussion at

16  one of the -- one or more of the recent depositions on ADA

17  issues and renovations that are planned.

18          Mr. Bennett testified that he had gotten

19  recommendations from Mr. Joelsen.  Talked to him.  Worked on a

20  list with him.  So there was -- there has been information

21  sharing about that.

22          At the site inspections, I was there and

23  Ms. Grunfeld.  And her expert, Ms. Sanossian was not openly

24  discussing things.  She had an assistant who was noting down

25  measurements and stuff.  There wasn't any open -- there wasn't

1    any statement about "This needs to be done.  This needs" -- you

2    know, I had only asked that discussion go through me, if there

3    were questions, so that they weren't -- as they had initially

4    proposed questioning inmates at the facility, and things like

5    that.  So to keep some control over the proceedings.  It wasn't

6    to stop our expert or their expert from talking.

7              THE COURT:  What's the name of your expert,

8    Ms. Coleman?

9              ATTORNEY COLEMAN:  Paul Joelsen is -- is the

10   structural ADA expert.

11             THE COURT:  And how do you spell that?

12             ATTORNEY PAPPY:  J --

13             ATTORNEY COLEMAN:  P-A-U-L, Paul.  And then Joelsen,

14   J-O-E-L-S-E-N.

15             THE COURT:  And how do you pronounce your expert's

16   name, Ms. Grunfeld?  Is it Sanossian?

17             ATTORNEY GRUNFELD:  Yes, your Honor.

18             ATTORNEY PAPPY:  And, your Honor, I wanted to add one

19   comment to what Ms. Coleman said, which is that I handled a

20   class action across the street from Central jail for the GEO

21   facility, and we had fantastic success having our experts talk

22   on the phone and resolving -- you know, coming up with a list

23   of things we agreed to and didn't agree to.  And we actually

24   never had to mediate those issues.  We only focused on money

25   because we were very successful and efficient in getting those

1    thing done over the phone.

2          So I have to disagree with that, because I've had

3    personal experience.

4          THE COURT:  And I understand.

5          And what -- is it your intent as of right now --

6    Ms. Coleman and Ms. Pappy, to the extent you're comfortable

7    sharing it -- to have Mr. Joelsen prepare some sort of a report

8    about accessibility issues at the two facilities that were

9    inspected; whether it's a standalone report or a response to

10   Dr. Sanossian's report?

11         ATTORNEY COLEMAN:  Well, basically in opposition to

12   the motion for preliminary injunction, he will be providing a

13   declaration and responses to all the different repairs that she

14   suggested.  A lot of the things that Ms. Sanossian came up with

15   are hypertechnical, and some do not take into account

16   correctional facility concerns such as antiligature, you know.

17   For example, having a whole grasp around the grab bar, that's

18   not always possible when you take into account the antiligature

19   rules.  And, really, if push comes to shove, we would rather

20   have someone fall down than hang themselves from a grab bar.

21   You know, not that we want either to happen.  But, you know,

22   that's -- that's the higher priority, is preventing suicide.

23         THE COURT:  When -- do you think that before there is

24   a -- any communication between Ms. Sanossian and Mr. Joelsen,

25   that it would be helpful to have Mr. Joelsen's declaration in

1    hand, so that they can know what the other is thinking about?

2         I mean, I think -- and that sort of gets to what

3    Ms. Grunfeld is saying.  I think she's -- I don't want to put

4    words in your mouth, Ms. Grunfeld.  But their expert's prepared

5    a report.  And so they would like to see something in writing

6    from Mr. Joelsen, so that everyone, you know, has something

7    that they -- that they can aim at.

8         And the reason I ask is because I don't know when you

9    intend to get a declaration from Mr. Joelsen.  But maybe

10   that's -- maybe that's the way to really start this off is

11   with -- if the declaration is ready before the motion is

12   filed -- again, I realize that the preliminary injunction

13   motion may change things a little bit.  But as I'm thinking out

14   loud, Mr. Joelsen's declaration is prepared.  It's provided --

15   formally or informally -- to the plaintiffs and Ms. Sanossian.

16        If that happens, Ms. Grunfeld, would you object to a

17   meet and confer between the experts, so they can see if they

18   can, you know, agree on some issues or agree to disagree on

19   other issues?

20        ATTORNEY GRUNFELD:  With appropriate protections,

21   your Honor.  For example, I would need to be present,

22   obviously.  And I think we would have to decide what -- what

23   the time period would be, and, you know, what the admissibility

24   of these discussions would be.

25        I mean, during the inspection, I was not allowed to

1  speak to the expert or to any of the people there.  So I --

2  this is the total turnaround from the way these things have

3  been conducted to date.  So I -- I -- I think what we're

4  referring to is called a hot tub, where the experts discuss

5  among themselves.  And it's a new procedure.  And I'm open to

6  discussing it, if there are appropriate protections.

7           THE COURT:  I'm sorry.  I've got to back up.  A hot

8  tub?

9           ATTORNEY GRUNFELD:  Yes.  That's what I learned --

10          THE COURT:  Is this something with the ADA?  What

11  rule?  Or is this something that I should know about but I

12  don't?

13          ATTORNEY GRUNFELD:  This is a Northern District of

14  California procedure, where experts come into the room and talk

15  to each other directly prior to a court ruling on *Daubert*

16  motions.

17          THE COURT:  And you call it a "hot tub"?

18          ATTORNEY GRUNFELD:  Yes, that's what they call it up

19  here.

20          THE COURT:  All right.  I guess I learned something

21  new.

22          ATTORNEY GRUNFELD:  In a jocular fashion.  Not in

23  open court.

24          THE COURT:  Understood.

25          ATTORNEY PAPPY:  So I would --

1            ATTORNEY GRUNFELD:  I mean, I've never done it

2    because it's pretty new.  And this would not be leading up to

3    *Daubert* motions, obviously.  This is leading up to an ENE.  So

4    when you hear hesitancy in my voice, it's not usually done,

5    that experts speak to each other.

6            THE COURT:  I understand.

7            Okay.  What were you going to say, Ms. Pappy?

8            ATTORNEY PAPPY:  Well, I was going to say that,

9    obviously, it would be protected by the mediation privilege.

10   No question about it.  And we don't meet -- I don't -- I find

11   lawyers to be a problem.  But -- no self-insult intended.

12   But -- if Ms. Grunfeld wanted us both to be on the phone while

13   they talked, I don't care.  That's fine.  But I would like to

14   see that happen before the ENE and not while they're sitting in

15   the courtroom, waiting for a ruling.  Because I want the ENE to

16   be productive.  I want us all to use our time and the Court's

17   time productively and try to pare the issues down before we get

18   there.

19           THE COURT:  So I think we agree on one thing, is that

20   the -- we are proceeding on a parallel track to what's

21   happening in the preliminary injunction motion.  And for

22   purposes of our ENE proceedings, yes, they would all be

23   confidential.  And whatever informal discussions are taking

24   place between Mr. Joelsen and Ms. Sanossian would be

25   confidential.

1              Now, again, I -- this is a little bit unusual,

2    Ms. Grunfeld.  Again, I'm not going to hold you to this right

3    now.  I want you to be able to think through this because you

4    have experts who may be testifying as to something, and that is

5    a little bit tricky.  Right?  Where they're going to be talking

6    confidentially for purposes of an ENE but then perhaps

7    testifying later and not testifying about what they -- what

8    they discussed.  So I -- I'm not trying to force something on

9    anyone right now.

10             But it does seem to me that at least -- my first

11    thought is it would be helpful for the experts to talk with

12    appropriate protections.  And, Ms. Grunfeld, if you want to be

13    there, then sure, of course, that would be --

14             ATTORNEY GRUNFELD:  And, your Honor, I don't know

15    that we'll have time before May 17th, to do this process, given

16    what plaintiffs have filed.

17             THE COURT:  Okay.

18             ATTORNEY GRUNFELD:  But as of May 17th, when we file

19    our opposition, they will have basically Mr. Joelsen's response

20    to Ms. Sanossian, so they can compare and see where the -- the

21    disputes lie.

22             THE COURT:  So you were -- okay.  So if you file your

23    opposition by May 17th, that includes Mr. Joelsen's

24    declaration.  And everybody knows what Ms. Sanossian thinks and

25    what Mr. Joelsen thinks.  And the parties would be in a

1    position, thereafter, to participate in a discussion with their

2    respective experts, to see where any areas of agreement are.

3    And then have an ENE with me.

4              Is that just -- again, this is a conceptual

5    framework.

6              Would that be something that you think might be

7    workable, Ms. Grunfeld?

8              ATTORNEY GRUNFELD:  Yes, your Honor.

9              THE COURT:  Ms. Coleman?

10              ATTORNEY COLEMAN:  Yes, your Honor.  Although I would

11    state that as to a series of ENEs, I would like to see how this

12    first one goes.  And, also, we are -- as of last week and this

13    week -- providing them with mountains of information about all

14    of the deaths that have happened in custody:  Suicides,

15    homicides, medical, including a ton of records, video, audio.

16              If they're going to use that to file another motion

17    and we're going to be responding to that, then it's going to

18    hamper the ENE process.  And the reason I sent the email was I

19    thought we were doing some early discovery and some talking

20    about things that we, you know, could agree that needed to be

21    fixed and what we can do about them.  But, you know, it's -- if

22    we're going to be in litigation on the one hand, it makes it

23    difficult to -- to engage in that process at the same time.

24              THE COURT:  I understand.

25              And we're going to -- I don't need a response from

1    the plaintiffs on that.  The motion is filed, and I -- I'm not

2    going to condition this on additional motions.  But I also

3    understand where you're coming from, Ms. Coleman.

4              Let me see what we've got.  (Pause.)  I just need a

5    moment.

6              Give me just a sec, everyone.  I want to check

7    something on my calendar.

8              (Pause.)

9              THE COURT:  All right.  My -- my schedule is not

10   great right now to give you a prompt ENE on the ADA issues, but

11   I really want to try to do that.

12             I might be able to move something else -- but I'm not

13   sure yet -- on Wednesday, May 24th.

14             Would that date work for you all to have an ENE on

15   the ADA issues?

16             ATTORNEY GRUNFELD:  Your Honor, it might need to be a

17   little further out just because if we have Mr. Joelsen's filed

18   on the 17th and then a conversation by the experts on the 17th

19   but before the ENE, it cuts it a little close.  But I

20   appreciate you --

21             THE COURT:  I know it does, and I -- my issue, in all

22   honesty, is I schedule, you know, half-day blocks for all of my

23   ENEs and MSCs, and I'm filling them all up right now.  So

24   that's my -- that's my concern.  And --

25             ATTORNEY PAPPY:  You know, we'll make it work.  We'll

1    make it work.  It's worth the effort.

2         ATTORNEY COLEMAN:  Your Honor, could we have the

3    afternoon slot, so that we could fly in the morning?

4         THE COURT:  Yes.  And what I'm going to do is -- yes.

5    Absolutely.  It would be in the afternoon, starting at 1:30.

6    And then -- but I -- right now I have another MSC that's set

7    for that same time.

8         I think that case may resolve, and I need to look

9    into that to figure it out.  And there is some time sensitivity

10   here, given the pending preliminary injunction motion.  I

11   really do want to start working with you all.  And it's going

12   to give me a sense of what progress we can make on the other

13   issues, as Ms. Coleman mentioned.

14        So, yes, the afternoon of May 24th.  But, again, I'm

15   not going to set a minute order setting that date yet.  I just

16   want to make sure that's available, if I can set it.  And let

17   me see what I can do in that regard.  But I'll figure that out

18   before the end of the week.  And if I can't, for some reason,

19   I'll send you all some additional -- other potential dates.  I

20   just -- I don't want to go into July on this, which I might

21   have to.  Otherwise, I really want to get started with you all,

22   and see if we can make some progress on this.

23        ATTORNEY GRUNFELD:  Thank you, your Honor.  I just

24   wanted to, though, mention that our goal is to have

25   court-supervised remedial action.  We are seeking an order for

1  reform.

2          So I don't want anyone to be surprised that that is

3  our position.  That the ENE will only be beneficial from

4  plaintiffs' perspective if it results in stipulated orders for

5  reform and change.  It doesn't have to be everything we want,

6  of course, but that is what we are seeking.

7          THE COURT:  Okay.

8          ATTORNEY GRUNFELD:  Also, would your Honor be able to

9  set our CMC at this time?

10          THE COURT:  Ms. Coleman, Ms. Pappy, I would

11  ordinarily set the ENE and CMC after an answer is filed, given

12  the representation from Ms. Grunfeld that the plaintiffs intend

13  to stand on their answer -- excuse me, on their complaint.

14          Do you have any objection to setting the CMC with the

15  ENE on the same date, even if that may precede your answer?

16          ATTORNEY GRUNFELD:  No, your Honor.

17          ATTORNEY COLEMAN:  No.

18          THE COURT:  We'll do that then, Ms. Grunfeld.

19          ATTORNEY GRUNFELD:  We'll have it with the ENE?

20          THE COURT:  That's right.  But -- and I'll issue an

21  order detailing the CMC requirements.  And we'll set that for

22  the same date as the ENE, which I hope -- my goal is to do the

23  ENE on May 24th, if I can figure it out.  Even if I cannot, I'm

24  going to hold the CMC on an earlier date because you need

25  dates.  So if it has to be a standalone CMC, we can do that.

1    But I would prefer to do it with the ENE.  So let me see what I

2    can do on my end.

3                 ATTORNEY GRUNFELD:  Thank you, your Honor.

4                 THE COURT:  Right.  And I was just reminded that --

5    to make clear that if it's the CMC only, I'll do it by Zoom, so

6    that you don't have to come to San Diego for the CMC.  But if

7    it's an ENE -- if it's an ENE, I think it's worth the

8    investment of everyone's time to try to get this done in

9    person.

10                ATTORNEY GRUNFELD:  Thank you.

11                ATTORNEY PAPPY:  Agreed.

12                THE COURT:  All right.  Thank you, everyone.  Look, I

13   appreciate your time, and I realize there's a lot going on with

14   the case.  And I continue to believe that the way we're going

15   to make progress is by breaking it down into at least -- I

16   hesitate to call them manageable pieces.  But more manageable

17   pieces than otherwise.  So thank you for your flexibility, in

18   that.  I will figure out on my end if I can make May 24th work.

19   And I will issue an appropriate order as soon as I can.

20                ATTORNEY COLEMAN:  Thank you.

21                ATTORNEY GRUNFELD:  Thank you, your Honor.

22                THE COURT:  Thanks.  Have a good day, everyone.

23                ATTORNEY VAN SWEARINGEN:  Thank you, your Honor.

24                THE COURT:  Take care.

25                (Conclusion of proceedings.)

1

2

3

4                              --oOo--

5   I certify, by signing below, that the foregoing is a correct

6   stenographic transcript, to the best of my ability, of the

7   digital recording of the audio proceedings had in the

8   above-entitled matter this 8th day of May, 2023.  A transcript

9   without an original signature or conformed signature is not

10  certified.  I further certify that the transcript fees and

11  format comply with those prescribed by the Court and the

12  Judicial Conference of the United States.

13

                    /S/ Amanda M. LeGore
14              _____

15           AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

16

17

18

19

20

21

22

23

24

25