Susan E. Coleman (SBN 171832)
E-mail:  scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600
San Diego, California 92101-8474
Tel:  619.814.5800 Fax:  619.814.6799

Elizabeth M. Pappy (SBN 157069)
E-mail:  epappy@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Suite 1000
San Jose, California 95113-2336
Tel:  408.606.6300 Fax: 408.606.6333

Attorneys for Defendant
COUNTY OF SAN DIEGO

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ERNEST ARCHULETA, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, | Case No. 3:20-cv-00406-AJB-DDL |
| Plaintiffs, | **DEFENDANT COUNTY OF SAN DIEGO'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION** |
| v. | *[Filed concurrently with Declarations]* |
| SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, CORRECTIONAL HEALTHCARE PARTNERS, INC., TRI-CITY MEDICAL CENTER, LIBERTY HEALTHCARE, INC., MID-AMERICA HEALTH, INC., LOGAN HAAK, M.D., INC., SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 TO 20, inclusive, | Judge:  Hon. Anthony J. Battaglia<br>Date:    June 29, 2023<br>Time:    2:00 p.m.<br>Crtrm.:  4A<br><br>District Judge Anthony J. Battaglia |
| Defendants. | |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   THE COUNTY PROVIDES EFFECTIVE COMMUNICATION FOR HEARING IMPAIRED/ DEAF PERSONS ...................................................... 2

III.  THE COUNTY PROVIDES SAFE HOUSING FOR PEOPLE WITH MOBILITY DISABILITIES ...................................................................... 6

    A.    San Diego Central Jail ("SDCJ" or "Central Jail") ................................ 7

    B.    ROCK MOUNTAIN DETENTION FACILITY ............................... 10

    C.    Policies and Procedures. ..................................................................... 11

IV.   PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED ............................................................................ 13

    A.    Legal Standards for the Drastic Remedy of Injunctive Relief .............. 13

    B.    Plaintiffs Cannot Demonstrate A Likelihood Of Success On The Merits And/Or A Substantial Threat Of Irreparable Future Harm ....... 14

        1.    *Plaintiffs Lack Standing to Seek Injunctive Relief* ..................... 14

        2.    *Plaintiffs' Request for Injunctive Relief is Speculative, Premature and Moot Given Changes* .......................................... 15

    C.    All of Plaintiffs' Proposed Injunction Items Fail or Are Moot ........... 16

        1.    *Provide SLI for all hearing impaired persons who use it as primary communication during medical/psych, booking, classification, disciplinary* ......................................................... 16

        2.    *Evaluate during booking for hearing disability and preference for SLI/writing and document/use method* ............... 16

        3.    *Stop Using Triple Bunks, Top of Double Bunks, Bring Showers and Toilet Areas to 2010 Standards* ............................ 17

        4.    *Must include accessible/safe housing for people with mobility disabilities throughout incarceration including booking* ...................................................................................... 17

        5.    *Evaluate during booking for mobility disabilities and accommodations needed, and document/provide* ..................... 18

    D.    If The Injunction Is Granted, The Court Should Require A Bond ....... 18

V.    PLAINTIFFS' CLASS CERTIFICATION SHOULD BE DENIED ............. 19

    A.    Standards to Certify a Class ................................................................. 19

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

i

3:20-cv-00406-AJB-DDL
DEFS' OPPOSITION TO MPI

B.    The Class Definition Is Defective and Overly Broad ........................... 19

C.    The Proposed Class Impermissibly Includes Individuals that Are Already Members of the *Armstrong* Class Action ................................ 20

D.    Plaintiffs Have Failed to Establish Commonality under Rule 23(a) or that Common Issues Predominate under Rule 23(b)(3) .................. 22

E.    Plaintiffs Have Failed to Establish Typicality under Rule 23(a) .......... 24

F.    Named Plaintiffs Are Inadequate ............................................................ 24

G.    Plaintiffs Have Failed to Demonstrate that a Class Action is a Superior Method of Adjudication under Rule 23(b)(3) ....................... 25

V.    CONCLUSION ............................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Federal Cases

*Adashunas v. Negley*,
  626 F.2d 600 (7th Cir. 1980) ................................................................. 20

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ................................................................. 19

*Armstrong v. Brown*,
  732 F.3d 955 (9th Cir. 2013) ............................................................. 21, 22

*Armstrong v. Brown*,
  857 F. Supp. 2d 919 (N.D. Cal. 2012) ................................................ 21, 22

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ............................................................. 14, 21

*Armstrong v. Newsom*,
  58 F.4th 1283 (9th Cir. 2023) ................................................................. 22

*Armstrong v. Wilson*,
  124 F.3d 1019 (9th Cir. 1997) ................................................................. 22

*Baxter v. Rodale, Inc.*,
  No. 12-cv-585, 2012 WL 1267880 (C.D. Cal. Apr. 12, 2012) ......................... 20

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d. 1121 (9th Cir. 2017) ................................................................. 25

*Caribbean Marine Servs. Co. v. Baldrige*,
  *844 F.2d 668 (9th Cir. 1988)* ............................................................... 1, 13

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ................................................................................. 14

*Comcast Corp. v. Berhrend*,
  569 U.S. 27 (2013) ................................................................................. 19

*Dahl v. HEM Pharm. Corp.*,
  7 F.3d 1399 (9th Cir. 1993) ..................................................................... 13

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................. 23

*Gen. Tel. Co. of Sw v. Falcon*,
  457 U.S. 147 (1982) ............................................................................. 24

*Gilliam v. Frances*,
  2015 WL 5895770 (C.D. Cal. Aug. 26, 2015) .................................... 21

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................. 24

*Hass v. Cnty. of Sacramento Dep't of Support Servs.*,
  2014 WL 5035949 (E.D. Cal. Oct. 8, 2014) ...................................... 15

*Hernandez v. City of San Jose*,
  No. 16-CV-03957-LHK, 2019 WL 4450930 (N.D. Cal. Sept. 17,
  2019) ............................................................................................. 14, 15

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ................................................ 14, 15, 24

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
  174 F.3d 411 (4th Cir. 1999) ............................................................... 18

*Johnston v. HBO Film Mgmt., Inc.*,
  265 F.3d 178 (3d Cir. 2001) ................................................................ 23

*Jorgensen v. Cassiday*,
  320 F.3d 906 (9th Cir. 2003) ............................................................... 18

*Klein v. City of San Clemente*,
  584 F.3d 1196 (9th Cir. 2009) ............................................................. 13

*Mayfield v. United States*,
  599 F.3d 964 (9th Cir. 2010) ............................................................... 14

*Mazur v. eBay, Inc.*,
  257 F.R.D. 563 (N.D. Cal. 2009) ........................................................ 19

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ............................................................... 20

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ............................................................................. 13

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

iv

3:20-cv-00406-AJB-DDL
DEFS' OPPOSITION TO MPI

*Nintendo of Am. v. Lewis Galoob Toys*,
  16 F.3d 1032 (9th Cir. 1994) ............................................................................ 18

*Owen v. Regence Bluecross Blueshield*,
  388 F.Supp.2d 1318 (D. Utah 2005) ................................................................ 20

*Perfect 10, Inc. v. Google, Inc.*,
  653 F.3d 976 (9th Cir. 2011) ................................................................. 1, 2, 13

*Reimers v. Oregon*,
  863 F.2d 630 (9th Cir.1988) ............................................................................ 15

*Sanchez v. Wal-Mart Stores, Inc.*,
  2009 WL 1514435 (E.D. Cal. May 28, 2009)................................................. 24

*Sanders v. Apple, Inc.*,
  672 F.Supp.2d 978 (N.D. Cal. 2009) .............................................................. 20

*Simon v. American Telephone & Telegraph Corp.*,
  No. CV 99-11641 RSWL, 2001 WL 34135273, *3 (C.D. Cal. 2001).............. 20

*Simon v. Eastern Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) .......................................................................................... 24

*Stewart v. Asuncion*,
  No. CV 16-5872 JFW (AJW), 2016 WL 8735720 (C.D. Cal. Oct.
  26, 2016)...................................................................................................21, 22

*M.D. ex rel. Stukenberg v. Perry*,
  675 F.3d 832 (5th Cir. 2012) .......................................................................... 23

*Tauscher v. Phoenix Board of Realtors, Incorporated*,
  931 F.3d 959 (9th Cir. 2019) ............................................................................ 2

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) .......................................................................... 25

*Ventura Mobilehome Communities Owners Ass'n v. City of San
  Buenaventura*,
  371 F.3d 1046 (9th Cir.2004) ............................................................................ 2

*Wal- Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................................ 22

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

v

3:20-cv-00406-AJB-DDL
DEFS' OPPOSITION TO MPI

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*,
   571 F.3d 953 (9th Cir. 2009) ................................................................. 23

*Wiener v. Dannon Co., Inc.*,
   255 F.R.D. 658 (C.D. Cal. 2009) ............................................................ 24

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .................................................................................. 13

*Xavier v. Philip Morris USA Inc.*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) ................................................. 25

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ............................................................... 19

**Federal Statutes**

18 U.S.C. §3626(a)(1)(A) ............................................................................ 14

29 U.S.C. §705(9)(B) ................................................................................. 19

42 U.S.C. §12102 ........................................................................................ 19

ADA ....................................................................................................... *passim*

**State Statutes**

California Building Code ("CBC") ................................................................. 9

California Government Code § 12926(j) and (m) ...................................... 19

Prison Litigation Reform Act ..................................................................... 14

Unruh Act .................................................................................................. 23

**Regulations**

28 C.F.R. § 36.303(c)(1)(ii) .......................................................................... 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

3:20-cv-00406-AJB-DDL
DEFS' OPPOSITION TO MPI

1

# Other Authorities

2

Fed. R. Civ. P.
    Rule 23 ...................................................................................................... 25
    Rule 23(a) ............................................................................. 19, 22, 23, 24
    Rule 23(a)(2) ............................................................................................ 22
    Rule 23(a)(3) ............................................................................................ 24
    Rule 23(a)(4) ............................................................................................ 24
    Rule 23(b)(3) ............................................................................... 19, 22, 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

After a previous failed attempt at an injunction in which the Court noted in its Order Denying the Injunction that "discovery will no doubt edify the merits of Plaintiffs' claims beyond what currently exists," Plaintiffs perhaps included this reference to suggest that their discovery has come up with something "new" to justify imposition of a preliminary injunction. The claim is meritless. Plaintiff must demonstrate "immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988).* This translates to *current* conditions as of the day the motion is decided by the Court based upon the evidence and not *past* conditions.

Included in their list of supposed life and limb threatening structural barriers are numerous hyper-technical matters to make the list look longer – such as mirrors 1" too high – which fail to support the need for a preliminary injunction. Plaintiffs must demonstrate they are likely to suffer irreparable harm without an injunction, and they must establish a sufficient causal connection between the alleged irreparable harm and the activity/item to be enjoined. *Perfect 10, Inc. v. Google, Inc*., 653 F.3d 976, 981-82 (9th Cir. 2011). There is no evidence Plaintiffs are likely to face irreparable harm without the issuance of a preliminary injunction because many of the requested changes to structures and access are moot. The County has already made structural and policy changes that have been in the works for months, which have either been implemented or are in the process of being implemented.

Plaintiffs seek class certification for individuals who do not qualify to be a part of the Dunsmore class, including Mr. Dunsmore himself. Plaintiffs' counsel, Ms. Grunfeld, references her firm Rosen Bien's ongoing monitoring of CDCR parolees in County custody pursuant to a State remedial plan (*Armstrong v. Brown*) to ensure ADA accommodations for those with mobility and hearing impairments, *inter alia*.

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

1

3:20-cv-00406-AJB-DDL
DEFS' OPPOSITION TO MPI

The lead Plaintiff Dunsmore, and two other named Plaintiffs[1] are CDCR prisoners who were only in County custody on parole revocations and thus cannot be class members for a new "Dunsmore" class action for the same issues. Further, although Ms. Grunfeld states the County has received letters and reports about CDCR parolees in San Diego County custody since 2015, the issue to be considered for this preliminary injunction is whether the <u>current</u> conditions warrant judicial intervention[2]. They do not. The request for injunction should be denied.

## II.    THE COUNTY PROVIDES EFFECTIVE COMMUNICATION FOR HEARING IMPAIRED/ DEAF PERSONS

Plaintiffs contend that the County's polices for Effective Communication with hearing impaired persons are "rudimentary and deficient." The claim is meritless. To warrant an injunction, policies must be so deficient that there is a causal connection between those policies and a likelihood of irreparable harm. *Perfect 10, Inc. v. Google, Inc*., 653 F.3d 976, 981-82 (9th Cir. 2011). Plaintiffs seem to labor under a belief that an ASL interpreter must be provided for a hearing-impaired individual, on demand, 24 hours a day, and that this is the only way hearing impaired persons can communicate. This is untrue and contradicted by the evidence. ' ."[T]he ultimate decision as to what measures to take rests with the public accommodation," so long as the measures provide effective communication. 28 C.F.R. § 36.303(c)(1)(ii)" (*Tauscher v. Phoenix Board of Realtors, Incorporated*, 931 F.3d 959, 963 (9th Cir. 2019) Here, the County practices ensure effective communication in every instance and additional policies and procedures have been and are being implemented to provide even better communication with the possibility of 24-hour ASL

---

[1] This applies to Dunsmore, Clark and Olivares.

[2] Plaintiffs also request judicial notice be taken of favorable injunction decisions in other cases. Rulings in unrelated cases which have no relevance to the facts of the case at issue are not judicially noticeable. See, *Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1052 n. 5 (9th Cir.2004)

communication in process right now.

All individuals with ADA needs are medically screened on intake, and after "Flags" are placed in the computer system, they are automatically seen by a Reentry Counselor for an ADA check within 72 hours to make sure they know how to use request and grievance forms and see if they have any further questions or needs. (Cardenas Decl. ¶¶ 2-4.) The County began working with "Purple" to expand ASL services to all facilities in September of 2022.  (Bavencoff Decl, ¶ 4.) The project was hampered by WiFi connectivity issues in the various jail facilities to get "Purple" up and running.  (*Id*.)  In March of 2023, the County had "Purple" accounts set up for three facilities and were only waiting for WiFi issues to be solved and obtaining the necessary equipment for hearing impaired individuals to use.  (*Id*.) In April 2023, the County requested Data Services make cell reception at Central Jail a priority to allow use of tablets for ASL.  (*Id*.)  On May 3, 2023, a first draft of a revised Sheriff's Dept. policy (for all facilities) for effective communication was prepared and two ASL video service agreements were adopted by the County. (Bavencoff Decl., ¶ 4, p.7:15-17, Ex. F.) The draft policy followed months of research and consultation with the County's ADA policy expert, Julian Martinez, and review of other facility policies provided by Mr. Martinez.  (*Id*., ¶ 3; Martinez Decl., ¶¶ 28- 29) On May 12" 2023 the County tested and launched the new iPad ASL system at SDCJ intake.  (Bavencoff Decl., ¶ 4, p.8:6-11.) Staff was alerted to the arrival of a hearing-impaired individual on May 12th, and the staff person went to SDCJ to assist the individual with intake, successfully using the iPad to explain the necessary information during intake. (*Id*.)

Ms. Cardenas, in Re-entry services, has coordinated an ASL interpreter for HSE (GED) courses, and another counselor set up ASL services to assist a person with legal research. (*Id*. ¶ 7.)  The County's goal with deaf/hearing impaired persons is to help facilitate meaningful and effective communication, taking the individual's preferences into account. (*Id*.) Not every individual needs or wants an ASL interpreter to request shower shoes or tell their dentist they have pain in a tooth.

In addition to setting up an ASL interpreter in advance, such as for a GED class, the County has emergency access to sign language interpreters 24/7. (Grunfeld Decl. Ex. H-60-61, Policy P.11.) Further, each facility has TDD/TTY devices available on request; TDD can increase the volume substantially and connect to a hearing aid, while TTY acts as a text-like communication. (Montgomery Decl. re Esquivel ¶ 15.) Most dayrooms also have video phones, which can be used for sign language if the person on the other end communicated via signing. (*Id*.)  San Diego Central Jail has Video Relay Services (VSR) through a County contract with Purple Communications and is working on getting it into all facilities by the end of the year once WiFi capabilities are upgraded. (Pappy Decl., Ex. A, Jensen Depo, p.19:11-21:14) The County recently contracted with Lionbridge to have mobile ASL services, which will allow iPads to be used to help communicate during medical/dental appointments, intake, disciplinary hearings, etc. (Bibel Decl. ¶ 3; Bavencoff Decl., ¶¶ 4, 6.)

Plaintiffs contend that deaf people do not receive ASL in medical encounters and thus do not understand what is happening.  (Pls' Mot'n at 4.) This underestimates their comprehension and blithely assumes deaf individuals <u>only</u> communicate via ASL/SLI.  Plaintiffs contend Josue Lopez was "never provided . . . with an interpreter for routine medical contacts inside" the jail.  (*Id*. at 4.)  Mr. Lopez' records show he communicated with staff using a combination of lip reading, sign language, and writing notes.  (Coleman Decl., Ex. E, ¶¶ 3-5, 7.) During his intake screening, the RN elicited information from Mr. Lopez wherein she noted that he was deaf, she did not note any issues with communication, and Mr. Lopez communicated he lost his aunt 4 months ago and felt a bit as though he had nothing to look forward to in the immediate future. (*See id*., and Ex. A-3, 6-7.) This exchange demonstrates in depth understanding on his part and communication.

Plaintiffs also cite Cristian Esquivel as an example of someone who was not provided with SLI during interactions with clinicians. (Pls' Mot'n at 5.) Mr. Esquivel communicated several times with the RN on staff at the Central Jail by using sign

language. (Montgomery Decl. re Esquivel, ¶ 6.) The records show Mr. Esquivel consented to a dental extraction and he signed the form. (*Id*., ¶ 10, and Ex. A, 18-27.) Whatever the means of communication, Mr. Esquivel's skills are limited because of developmental disabilities. (*Id*. ¶¶ 7-8.) Mr. Esquivel has twice been deemed incompetent to stand trial. (*Id*.) An ASL interpreter who accompanied a psychological expert noted that s/he was not clear with Esquivel's usage of sign language, and the psychologist theorized this was perhaps because of his disorganized thought, problems with language, or cognitive confusion. (*See id*., Exh. A, 8-11.)

Plaintiffs complain that the County's PMK deponent could not identify any specific example of ASL being provided and had never used the emergency interpreting services as evidence that there is no effective communication. (Pls' Mot'n at 3-4.) The statement is intentionally misleading and nonsensical. The topic designated broadly in the notice covered "all current policies, procedures, and practices regarding the accessibility of facilities, housing program services, activities, effective communication, reasonable accommodations, and assistive devices for incarcerated persons with disabilities." (Bibel Decl. ¶ 3.) Captain Bibel is in charge of the Central Jail and he is very familiar with policies and procedures, but he is not interacting with the incarcerated persons nearly as often as the deputies. Bibel supervises Lieutenants and Sergeants, who in turn supervise the deputies on the floor who interact with the persons in custody day to day. (*Id*. ¶¶3-5.) Deputies on a housing floor try different ways to achieve effective communication with incarcerated persons if verbal communication is not effective, perhaps starting with writing notes. (*See id*., ¶ 5.) If there are no notes or a "flag" in JIMS that the person needs/prefers ASL, the deputy would try other more readily available methods first such as writing. (*Id*.)

The evidence is clear that the County has had effective communication and continues to improve. Within the last week, the County has started ASL translation services through iPads at intake at Central Jail with a clear plan to make the technology available in all facilities as the WiFi issues are resolved at facilities and

more iPads are put into service. The County is also working with the most experienced expert in the State of California (Julian Martinez, whom Plaintiffs have retained in other cases as a neutral expert) to update its policies for hearing impaired and has been doing that work since February of 2023, months before this motion was filed.

## III. THE COUNTY PROVIDES SAFE HOUSING FOR PEOPLE WITH MOBILITY DISABILITIES

Plaintiffs cite to various evidence lacking in credibility (*i.e.*, people who say they fell and hurt themselves but never reported it to medical or filed a grievance) in order to generically assert that the mobility disabled population cannot safely access beds, toilets or showers. They curiously cite to a statement made by the Captain who oversees the entirety of San Diego Central Jail to criticize him because he doesn't have the time to receive calls about every individual who falls in the facility. It's highly unlikely that the head administrator at a hospital is advised of every slip and fall either but that does not make the hospital unsafe or the administrator incompetent or callous, as Plaintiffs attempt to suggest. Nor does it suggest it happens often, only that the Captain is not involved in the minutiae of operations but instead supervises the supervisors. Once again, the actual evidence demonstrates a very different picture than that painted by Plaintiffs' intentionally narrow scope of evidence.

The declarations submitted by Plaintiffs, after review of the medical records to evaluate the veracity of their claims, demonstrate that their mobility issues are overstated. For example, while Kevin Martin declares he was denied a cane despite having back pain in 2022, he was in and out of custody and never expressed any mobility concerns or appeared for booking with any mobility device. (Montgomery Decl. re: Martin at ¶¶ 3-4.) Nor do Martin's sick calls reference any complaints of back pain or mobility issues. (*Id*.¶ 5, and Ex. A.) Other declarations, when examined with the medical records, show a verifiable disability but that accomodations and assistive devices have been provided. This brief lacks space to go through each one but Defendant encourages review of the declarations accompanying this brief.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

6

3:20-cv-00406-AJB-DDL
DEFS' OPPOSITION TO MPI

Despite Ms. Grunfeld and ADA expert Ms. Sanossian having personally inspected areas in the Central Jail including going into dorm units 8C and 8D, Plaintiffs submitted multiple declarations from incarcerated persons who claim there are <u>no</u> grab bars in the 8C toilets. Mr. Clark said "the toilets I have used did not have grab bars." (Clark Decl. [281-7] ¶¶ 4-5.) Mr. Ybarra stated there are stools in front of all 4 telephones and that the lower tier bathroom of 8C does not have any grab bars. (Ybarra Decl. [281-18] ¶¶ 10-11.) This is incorrect. There is one stool removed from a telephone in the unit, and one of the two toilets in the dorm has grab bars. (*See* Bibel Decl., ¶¶ 10-11, and Ex.C thereto [photo of the grab bars].)

### A. San Diego Central Jail ("SDCJ" or "Central Jail")

San Diego Central Jail was opened in 1998 and was compliant with 1991 ADA standards when it was built. (Bennett Decl., ¶ 4.) The facility has 12 floors with 5 housing floors, with 5 modules each for housing incarcerated persons, two booking floors and a medical floor for Incarcerated Persons. (*Id*.) There is one ADA mobility compliant cell based upon 1998 standards in each module on each housing floor. There is one dayroom per module. (*Id*.)

Shower seats were originally installed per the ADA requirements in 1998 but all were removed by approximately 2003 because they became a security issue in that they were ripped off the walls and used as weapons. (Bennett Decl., ¶ 5.) They also posed a ligature issue and would now be non-compliant with "anti-ligature" rules. (*Id*.) There is a sturdy shower chair in 8C, which has been there since approximately 2015. (Bennett Decl., ¶13, Ex. G) There are no stools in front of desks in the ADA cells and they have been absent since 2005 to improve access. (*Id*., ¶ 6.)

Because of the age of the facility and the lack of ADA clearances based upon structural issues (walls that can't be moved without significant structural changes), there has been an attempt to concentrate wheelchair disabled individuals in Module 8C, where the majority of accessible features are located. (*Id.,* at ¶ 6; Joelson Decl., ¶ 17.) The County requested and has received architectural plans for the Central Jail 8th

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

7

3:20-cv-00406-AJB-DDL
DEFS' OPPOSITION TO MPI

Floor and 8th Floor mezzanine, dated September 16, 2022, to replace all triple bunks with double bunks. (Bennett Decl., ¶7, Ex. A.) The plan was created in response to the Sheriff's Command Direction. (*Id*.) Command Staff just approved a plan (updated by Scott Bennett) which represents a new floor bunk plan, to install as many single bunks as possible while maintaining the current module population if possible. (*Id*., Ex. B.) The original direction to remove triple bunks came from Command staff in the end of February 2022. (*Id*.) Some single beds were installed in place of triple bunks on May 11, 2023. (Bennett Decl., ¶ 11, and Ex. E.)

The County updated its Central Jail Modernization plan on October 24, 2022 (i*d.,* ¶ 8, Ex. C), and it includes ADA upgrades to showers and Inmate Bunks on levels 8 and 8 Mezzanine, and replacement of double bunks in the cells on levels 4 and 5 with single bunks, table, stool, grab bars, sink, mirrors, etc. in compliance with "accessibility/clearance requirements." (*Id*.) The plan has already been submitted for funding approval. (*Id*.) While waiting for approval, the County is working to implement as many ADA code changes to the facility as can be done within current budget and capabilities. (*Id.,* Ex. H)

As part of the upgrade process in working with the County's Casp expert, the County obtained estimates from the Rock Mountain contractor, including for showers. (Bennett Decl., ¶17.) There are 25 showers at Central Jail that need to be repaired and new accessibility features added, and it will cost between $1,000,000 and $1,250,000 to complete the work. (*Id*.)  Mr. Bennett was provided with all of Mr. Joelson's findings at the Central Jail, which were incorporated into the short and long term plans to modify the facility.  (Joelson Decl., ¶18(o).)

The Sheriff's Department Project Manager, Scott Bennett, attended an inspection with the County's CASp inspector, Paul Joelson, on November 30, 2022, during which they discussed issues and possible solutions, continued to communicate via phone and email about solutions, and Mr. Joelson provided the County with a list of all issues he found based upon his Central Jail inspection which is being used to

guide improvements and plans for future improvements. (Bennett Decl., ¶ 9.)

Prior to February of 2023, all telephones in all modules were lowered to be compliant with the ADA and California Building Code ("CBC"), and since the November 2022 tour with Mr. Joelson, the County has removed the appropriate number of stools at phone banks to allow wheelchair access, removed stools at tables in the day room (one at each table), lowered all mailboxes, and lowered all Narcan boxes in all modules.  (Bennett Decl., ¶10.)

Plaintiffs were permitted access to all areas they requested on the tour of Central and were never denied access to any area they wanted to see.  (Bennett Decl., ¶16.)  After Defense counsel suggested that Plaintiffs depose Mr. Bennett about the changes made since the lawsuit was filed, he was deposed on April 20th, 2023. Mr. Bennett prepared a list of items and provided it to Plaintiffs' counsel at the deposition. (Bennett Decl., Ex. H.)  It noted that the following work has been done, equipment has been ordered, and/or funding approval is pending:

- replacement of 3 separate toilet/sinks with combo units on Floors 1 and 2 (ordered March 8, 2023).

- Lowering mirrors in all ADA cells and dorms in all facilities to appropriate height. This is a continuous process to complete. 30 to date have been installed since January 2023 and 15 more are on order.

- Resetting toilets or pony walls to comply with 18" center (Floor 1 -3)

- Lower/move phones to appropriate height (Floor 1 -3)

- Remove and/or add wider benches for appropriate approach (Floor 1 -3) Additional benches were ordered on April 8, 2023

- Grab bars realigned appropriately and installed where needed (Floor 1 -3) Additional grab bars were ordered on April 8, 2023

- Rework all module showers to comply with current code of 36" x 36", appropriate shower seat and grab bar height (planned but unfunded)

- Shower controls moved to appropriate height in intake and medical floors with shower seats (planned but unfunded)

- ADA Housing Cells - grab bars, collapsible desk/tables for clear access to bunk in cells (planned but unfunded)

- De-triple bunk all living area cells throughout CJ (planned but unfunded)

- Dorm modules - (planned but unfunded) We are adding as many single ADA compliant beds as possible in Modules 8C and 8D while still maintaining the BSCC rated capacity, to be completed by June 1, 2023.

- Realign bunks for ADA access clearance, 8th floor

- Replace 5% of top bunks to single ADA bunks if required after single bunks are insufficient

Plaintiffs falsely assert that there are no grab bars in the restroom in 8C. Attached to Mr. Bennett's declaration as **Exhibit F** is a photo Mr. Bennett took of the grab bars on May 11, 2023, which have existed for years. (*Id.*, ¶12.) Plaintiffs' expert Ms. Sanossian criticizes the grab bars because a hand cannot grasp all the way around them; this is due to anti-ligature plates installed on the bottom, to prevent persons from being able to hang themselves from it. (Joelson Decl. 24(n).)

**B.    ROCK MOUNTAIN DETENTION FACILITY**

The County regained possession of Rock Mountain in approximately January of 2016, and contracted to have renovations performed. (Bennett Decl. ¶18.) Due to the contractor's inability to obtain bonding for the project, the County had to restart the bid process and ultimately awarded a new contract to Turner Construction in July 2019. (*Id.*, ¶19) The new scope of work included ADA work identified by a consultant engaged for that specific purpose, which was relied upon by the project architect. (*Id.*) On site construction began in September of 2020. (*Id.*) Turner substantially completed word by December of 2022, with some delays from COVID-19. (*Id.*, ¶21.) A new contractor, Sundt Construction, Inc., was retained to perform the second phase of planned work at Rock Mountain. (*Id.*, ¶22) Mr. Joelson and Mr. Bennett also toured Rock Mountain, in January of 2023, and Mr. Joelson's written recommendations were all incorporated into additional scope under the Sundt contract. (*Id*, ¶¶21, 25 -26.)

Contrary to the statements of Plaintiffs that they were not allowed to see certain areas of Rock Mountain during the inspection and that there was very little construction happening at Rock Mountain, Plaintiffs were given full access to the facility and construction trades were asked to stay away from the facility that day or

work in areas away from the inspection. (Bennett Decl., ¶23, Ex. K.) Several construction companies elected to take the day off to avoid disturbing the inspection process and because their work would be in and around the inspection areas. (*See id*.)

The County has consistently relied upon its CASp expert, Paul Joelson, for identification of issues and guidance on means and methods of resolving outstanding issues with a genuine desire to correct issues and observed ongoing construction activities on each of his visits to Rock Mountain. (Joelson Decl.,¶18(f-j).) Plaintiffs expert declaration and report disingenuously suggests that areas of incomplete construction are evidence of "noncompliance," and Mr. Joelson politely pointed out that her approach "differed" from his. (*Id,* ¶18(l).)

**C.    Policies and Procedures.**

Coincident with addressing physical barriers, the County has been diligently working on revisions to its policies, largely under the guidance of one of the State's most respected experts on ADA policies for incarceration facilities, Julian Martinez. (Martinez Decl., ¶¶ 2-6, Ex. 1) Mr. Martinez reviewed all of the Sheriff's Department policies (*id*, ¶¶7, 13-14) and conducted an in person tour of SDCJ on May 4, 2023. (*Id*, ¶ 15.) Mr. Martinez' declaration lays out all of the current processes per his review of records, his personal tour and conversations with staff. (*Id.*, ¶16-24.) He concludes the County is on track to achieve ADA compliance and does not need judicial intervention. He provides detailed responses to Ms. Sanossian's declaration and either disagrees with her conclusions (*e.g.,* Martinez Decl., ¶26(a)) and/or points out her failure to reference current County policies that comply with the ADA and address her complaint (*e.g.,*¶26(d)), and her lack of any information about the County's current plans already in process to address various issues.

Commander Christina Bavencoff, a Law Enforcement Commander with the San Diego County Sheriff's Department assigned to Detention Services Bureau – Facilities, which includes oversight and management of 6 detention facilities with an average daily population of 4,000 incarcerated persons, became involved in this

litigation in September of 2022, attending site inspections at all County detention facilities on November 30, 2022, January 10, 2023, and January 11, 2023. (Bavencoff Decl., ¶¶ 1-2.) She reviewed all policies specific to accessibility matters, started meeting with Mr. Bennett to gain a greater understanding of the infrastructure issues and possible solutions, and researching resources to address the ADA issues online and from other law enforcement agencies. (*Id*).

Commander Bavencoff and the Sheriff's Department began working on an ADA Unit within the Sheriff's Department Detention Service Bureau, received approval for all positions in the Unit, filled two positions with existing staff and issued two job announcements for internal transfers to a Sergeant and Deputy position within the Unit. (Bavencoff Decl., ¶¶2, 4 and 5.)

In early February 2023, the County hired Mr. Martinez and Commander Bavencoff used sample policies from other counties to assist in revision of the County of San Diego policies. (Id, ¶¶3 and 4). Commander Bavencoff and another staff person went to Orange County to meet with their ADA Unit coordinator for an on-site tour and guidance. (Id, ¶4) Commander Bavencoff outlines all of her various steps in her declaration in Paragraph 4, providing a detailed timeline of work that she and her staff have performed since September of 2022 including modification of "Green Sheets", and overall Sheriff's Department policies. They include the following:

San Diego Central Jail Green Sheets:  G.3.C.1 – Elevators, H.3.C.1 – Evacuation Plans, I.50.C.1 – Incarcerated Person Movement, I.51.C.3 – Incarcerated Person Movements – Transfers, I.51.C.5 – Incarcerated Person Movements – Releases, M.9.C.1 – Receiving Screening, P.9.C.1 – Social Visiting, P.11.C.1 – Incarcerated Persons who are deaf or hard of hearing

Rock Mountain Detention Facility Green Sheets:  G.3.R – Elevators, H.3.R – Evacuation Plans, I.51.R – Movement of Incarcerated Persons, I.52.R – Strip and Pat Down Searches of Incarcerated Persons, M.39.R – Disabled Incarcerated Persons

1  (Id.)

2      Commander Bavencoff created lists of projects classified as short term and

3  long-term projects to address ADA issues.  (Id, ¶5) She has examined various County

4  service providers an Incarcerated Person may encounter, obtained a description of the

5  way services are currently being provided, and after research, noted where changes

6  could be made or have already been requested.  (Id)

7  \\

8  **IV.    PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED**

9      **A.    Legal Standards for the Drastic Remedy of Injunctive Relief**

10     An injunction is "a drastic and extraordinary remedy, which should not be

11  granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139,

12  165 (2010). Plaintiffs seeking a preliminary injunction must establish: (1) likelihood

13  of success on the merits; (2) likely to suffer irreparable harm absent preliminary relief;

14  (3) the balance of equities tips in their favor; and (4) an injunction is in the public

15  interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party

16  seeking the injunction bears the burden of proving these elements.  *See Klein v. City*

17  *of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine*

18  *Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more

19  than merely allege imminent harm sufficient to establish standing; a plaintiff must

20  demonstrate immediate threatened injury as a prerequisite to preliminary injunctive

21  relief.") There must also must be a "sufficient causal connection" between the alleged

22  irreparable harm and the activity to be enjoined. *Perfect 10, Inc. v. Google, Inc.*, 653

23  F.3d 976, 981-82 (9th Cir. 2011).

24     Injunctions that command a defendant to perform an affirmative act (*i.e.* a

25  mandatory injunction) are particularly disfavored, and are subject to a heightened

26  standard. Mandatory injunctions "should not be issued unless the facts and law *clearly*

27  *favor* the moving party." *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir.

28

1993). Any award of equitable relief in the corrections setting is governed by the Prison Litigation Reform Act, which requires that any prospective relief be *narrowly drawn and extend no further than necessary* to correct the violation of a Federal right and is the least intrusive means necessary to correct the violation. 18 U.S.C. §3626(a)(1)(A) [*emphasis added*].

### B.  Plaintiffs Cannot Demonstrate A Likelihood Of Success On The Merits And/Or A Substantial Threat Of Irreparable Future Harm

#### 1.  *Plaintiffs Lack Standing to Seek Injunctive Relief*

Plaintiffs must demonstrate that they have individual standing to seek an equitable remedy.  "In order to assert claims on behalf of a class, a named plaintiff must have personally sustained or be in immediate danger of sustaining 'some direct injury as a result of the challenged statute or official conduct.'" *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001) quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).  "Allegations that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient to establish standing to seek an injunction on behalf of the class." *Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2019 WL 4450930, at *19 (N.D. Cal. Sept. 17, 2019). "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).  Plaintiffs are not entitled to an injunction against past illegal conduct unless they demonstrate "a sufficient likelihood that [they] will again be wronged in a similar way." *Id*. at 111; *see also Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010).

Plaintiffs gloss over the standing requirement.  Plaintiffs fail to establish standing with respect to each alleged violation that is the subject of the specific

injunction request and a likelihood of future harm. Those that are no longer in jail, are in the process of being transferred, or have already been transferred have no standing. Of the named Plaintiffs, only Lisa Landers remains in County Jail. *Jensen Decl.* Plaintiffs' assertion that there is a possibility they may return to the jail in the future is speculative and cannot support a claim of threat of imminent harm. *Hernandez v. City of San Jose*, 2019 WL 4450930, at \*21; *Reimers v. Oregon*, 863 F.2d 630, 632 & n. 4 (9th Cir.1988) [plaintiff who had been released from prison had no reasonable expectation of return despite parole]. Plaintiffs Dunsmore, Andrade, Archuleta, Clark, Edwards, Levy, Lopez, Nelson, Norwood, Olivares, Sepulveda, Taylor, and, Zoerner are no longer in County Custody. Declarants Childs and Ybarra similarly are no longer in custody. *(See* Jensen Decl., and Ex. A.) Accordingly, these individuals cannot allege they are currently being exposed to a continuing risk of harm, and the request for injunction must fail. *Hass v. Cnty. of Sacramento Dep't of Support Servs*., 2014 WL 5035949, at \*2 (E.D. Cal. Oct. 8, 2014).

## 2.    *Plaintiffs' Request for Injunctive Relief is Speculative, Premature and Moot Given Changes*

An injunction cannot be issued based on past conduct. Plaintiffs cite newspaper articles about settlement of an incident that happened 5 years earlier (Grunfeld Decl., Ex. AA), a Grand Jury report from 2019 (id., Ex. BB), a SBSCC report on a 2020-2022 inspection which condemned triple bunking (*id*., Ex. S), and general DOJ statistics from 2016 about prisoners (*id.,* Ex. CC). They also refer to declarations submitted previously in 2022, in support of their first attempt for an injunction (s*ee id*., Exs. V (Dunsmore), W (Archuleta), X (Josue Lopez), and Y (Nelson), ignoring the responses/evidence submitted in response to those.

Plaintiffs must prove ongoing or future problems which will not be remedied absent an injunction. (Hodgers-*Durgin v. De la Vina*, 199 F.3d at 1043 (9th Cir.1999)). Plaintiffs' request for injunctive relief is moot given recent and ongoing changes which include ASL services through iPad's, new contracts for the provision

of the ASL services, more iPad's, and more availability of WiFi in facilities built before the existence of WiFi.  Single bunks are installed and will continue to be installed to with long term plans submitted and awaiting budget approval for as many single bunks as necessary along with complete refurbishment of SDCJ's showers. Grab bars and sinks/toilets have been replaced and more are on order.  Policies have been amended and in place for months at Central Jail to address physical barriers that cannot or have not been remedied.  Experts have been retained to lead physical barrier remediation and policy revisions.  An ADA Unit already has two staff members, two more are being advertised with the goal of having a complete team in place by Summer 2023.  The picture Plaintiffs attempt to create is untrue.

### C.    All of Plaintiffs' Proposed Injunction Items Fail or Are Moot

Plaintiffs' proposal is overly broad and assumes that no renovations are planned, despite touring a facility (Rock Mountain) that was in the midst of construction.  Further, the proposal is not limited to Rock Mountain and Central Jail, though those are the only two facilities they have inspected and on which their ADA expert Sanossian opines.

#### 1.    *Provide SLI for all hearing impaired persons who use it as primary communication during medical/psych, booking, classification, disciplinary*

As discussed above, the first successful test of an iPad during intake took place last week.  The contracts for the ASL services are in place and in effect.  The County has been and will continue to book ASL services when requested and now has the ability to have those services on demand through the iPad and ASL contracts.  The entire Department (versus one facility) policy for effective communication was put into first draft format in early May 2023, after months of consultation with Mr. Martinez and review of other facility policies, months before Plaintiffs held them up as model policies.

#### 2.    *Evaluate during booking for hearing disability and preference*

*for SLI/writing and document/use method*

Commander Bavencoff's declaration and the declarations of Dr. Montgomery, Ms. Cardenas, and Captain Bibel make clear that Incarcerated Person preferences are respected and accommodated to the greatest extent possible and there is no credible evidence that effective communication has not been achieved through writing, lip reading, ASL and now, the iPad system.

**3.** *Stop Using Triple Bunks, Top of Double Bunks, Bring Showers and Toilet Areas to 2010 Standards*

Plaintiffs propose in their Order to stop putting incarcerated people with mobility disabilities in triple bunks, any top bed in a double bunk, or toilets/showers without 2010 ADAS-compliant grab bars and shower chairs. (*See* Proposed Order.) There is already a plan in place to remove all triple bunks from the Central Jail. (Bibel Decl. ¶ 9.) As discussed above, the complete remodel of showers carries a $1,250,000 price tag and the County has already requested and is waiting for budgetary approval. The plans were in place long before Plaintiffs filed this lawsuit or filed this motion. There is no credible evidence that individuals with mobility impairments have ever been <u>assigned</u> to a top bed in either a double or triple bunk. (*See* Bibel Decl.) Mr. Martinez reviewed all of the policies and procedures at SDCJ and contradicts the claims of Plaintiffs. An injunction is intended to force compliance where there is none. Here, there is ample evidence of compliance and thus an injunction is unwarranted.

**4.** *Must include accessible/safe housing for people with mobility disabilities throughout incarceration including booking*

As discussed above, in the Declarations of Martinez, Joelson declaration, Bavencoff, and Bennett, the renovation of Central Jail has been in process since 2018. The County has modified its plans based upon Mr. Joelson's input and requested a substantial budget for renovations to include all of Mr. Joelson's suggestions. In the

meantime, the County has and continues to address items within its current budget and capability (*i.e.* without major construction) including replacing bunks with single beds, providing grab bars and ordering more, lowering mirrors, replacing toilet/sinks to be compliant, ordering more to be installed, and providing sturdy shower chairs, among other changes. They removed one stool at phones and seating at tables before Plaintiffs ever toured the facilities, and more afterward.

### 5. *Evaluate during booking for mobility disabilities and accommodations needed, and document/provide*

This is already done, as evidenced by already existing medical intake forms and processes (Bavencoff Declaration), in compliance with the law (Martinez Declaration), and followed closely by re-entry services and medical staff. (Cardenas and Montgomery Declarations).

### D. <u>If The Injunction Is Granted, The Court Should Require A Bond</u>

The bond requirement is mandatory (*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999)), and although some courts have waived it, they do so only where there is no realistic likelihood of harm to the defendant or where the moving party shows an overwhelming likelihood of success. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Plaintiffs not only fail to demonstrate an overwhelming likelihood of success, they seek a mandatory injunction that would require Defendants to expend unidentified amounts of resources that may not be available before Plaintiffs' claims are adjudicated on the merits. *Nintendo of Am. v. Lewis Galoob Toys*, 16 F.3d 1032, 1037 (9th Cir. 1994). Those costs cannot be determined on the present record, which as noted above, are vague, overbroad and uncertain. Accordingly, if preliminary relief is granted, Defendants request permission to submit a cost estimate before the Court sets the bond amount.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

18

3:20-cv-00406-AJB-DDL
DEFS' OPPOSITION TO MPI

1    **V.    <u>PLAINTIFFS' CLASS CERTIFICATION SHOULD BE DENIED</u>**

2         Plaintiffs seek provisional certification of a class for the purposes of their

3    preliminary injunction. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 (9th Cir. 2020)

4    (courts may provisionally certify a class for purposes of preliminary injunction

5    proceedings). If the Court determines no preliminary injunction should issue, the class

6    certification motion becomes moot and should be denied. Plaintiffs cannot use class

7    certification on their preliminary injunction items to attempt to circumvent standing

8    issues to seek relief on all the issues raised in their 230-page Complaint.

9         **A.    <u>Standards to Certify a Class</u>**

10        Plaintiffs bear the burden of establishing the propriety of class certification.

11   *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001). Under Rule

12   23(a), Plaintiffs must satisfy all four requirements of numerosity, commonality,

13   typicality, and adequacy of representation. *Id*. at 1189; Fed. R. Civ. P. 23(a). Under

14   a Rule 23(b)(3), Class Plaintiffs must also establish through evidentiary proof that

15   common questions predominate over individual issues and a class action is a superior

16   method to fairly and efficiently adjudicate the controversy. Fed R. Civ. P. 23(b)(3);

17   *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

18        **B.    <u>The Class Definition Is Defective and Overly Broad</u>**

19        Plaintiffs' motion for class certification should be denied due to the defective

20   and overly broad nature of their class definition. Plaintiffs seek provisional

21   certification of an "Incarcerated People with Disabilities Subclass," defined as "all

22   qualified individuals with a disability, as that term is defined in 42 U.S.C. §12102, 29

23   U.S.C. §705(9)(B), and California Government Code §12926(j) and (m), and who are

24   now, or will be in the future, incarcerated in the [San Diego County Jail]" ("Proposed

25   Subclass").  [See 281-2, p. 30 of 473 (Proposed Order)]

26        Where a class definition includes both those that have been harmed and those

27   that have not, it is impermissibly overbroad and imprecise. *Mazur v. eBay, Inc.*, 257

28   F.R.D. 563, 567 (N.D. Cal. 2009) ("Because the class as currently defined would

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

19

3:20-cv-00406-AJB-DDL
DEFS' OPPOSITION TO MPI

include these non-harmed auction winners, this portion of the class definition is both imprecise and overbroad"); *Owen v. Regence Bluecross Blueshield*, 388 F.Supp.2d 1318, 1334 (D. Utah 2005) (proposed definition of the class was overbroad because many of the proposed class members have suffered no harm); *Simon v. American Telephone & Telegraph Corp*., No. CV 99-11641 RSWL, 2001 WL 34135273, *3 (C.D. Cal. 2001) (holding that a class could not be certified because plaintiffs' proposed class definitions included persons who had not yet been aggrieved); *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (affirming the denial of class certification because the definition of the class was "so amorphous and diverse" that it was not "reasonably clear that the proposed class members ha[d] all suffered a constitutional or statutory violation warranting some relief").

Plaintiffs propose a class which, as defined, would include individuals who lack Article III standing. All class members, not just class representatives, must have standing. *See Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 594 (9th Cir. 2012); *see also Baxter v. Rodale, Inc*., No. 12-cv-585, 2012 WL 1267880, at *2 (C.D. Cal. Apr. 12, 2012). An ascertainable class is essential to ensure that anyone within the class has suffered actionable harm. Where a class definition includes those with no cause of action, it is impermissibly overbroad, imprecise and certification should be denied. *Sanders v. Apple, Inc*., 672 F.Supp.2d 978, 982-983 (N.D. Cal. 2009).

## C.   The Proposed Class Impermissibly Includes Individuals that Are Already Members of the *Armstrong* Class Action

There is significant and impermissible overlap of members in the proposed class who are already members in the *Armstrong* class action, a case which Plaintiffs' counsel cite repeatedly (*i.e.* for the remedial plan, the case law, and to demonstrate they are already monitoring County jails on these same issues). (*See e.g*., Grunfeld Decl. and Exs. B, C, T.) There are three named Plaintiffs – including the lead Plaintiff Dunsmore - who were in jail only on parole revocations and thus <u>state inmates</u>, subject to *Armstrong* dictates while in County custody.

Those individuals in custody at the Jail for a parole revocation or who are otherwise "state" inmates are already members of the *Armstrong* class and cannot be members of the *Dunsmore* proposed class. *See Armstrong v. Brown*, 857 F. Supp. 2d 919, 937 (N.D. Cal. 2012), order enforced (Aug. 28, 2012), order aff'd, appeal dismissed, 732 F.3d 955 (9th Cir. 2013). Nearly 15 years ago, the district court in the *Armstrong* class action held that the defendants "are responsible for ensuring that *Armstrong* class members receive reasonable accommodations when Defendants elect to house them in county jails." The number of persons housed in county jails was "significant" (forecasting that thousands of parolees will be housed in county jails on a daily basis). The court held that class members being housed in county jails were not receiving accommodations to which they were entitled, and accordingly entered an order requiring that the defendants submit a plan "for ensuring timely and appropriate accommodations for Armstrong class members in county jails." *Id*. at 938. As part of the injunctive relief ordered, the district court required the development, oversight, and adherence to a detailed plan to address grievances and for Armstrong class members housed in a county jail and who is failing to receive required disability accommodations. *Id*. at 940.

"A plaintiff who is a member of a class action for equitable relief concerning prison conditions may not maintain an individual suit for equitable relief arising from the same issues in the class action." *Gilliam v. Frances*, 2015 WL 5895770, at *8 (C.D. Cal. Aug. 26, 2015), report and recommendation adopted, 2015 WL 5842267 (C.D. Cal. Oct. 5, 2015) (citing *Crawford v. Bell*, 599 F.2d 890, 892–893 (9th Cir. 1979) (a district court may dismiss portions of claims duplicating issues litigated in a class action)). In *Stewart v. Asuncion*, No. CV 16-5872 JFW (AJW), 2016 WL 8735720 (C.D. Cal. Oct. 26, 2016), report and recommendation adopted, No. CV16-5872 JFW (AJW), 2016 WL 8738146 (C.D. Cal. Nov. 18, 2016), the court held that the *Armstrong* class action barred the plaintiff's claims seeking declaratory or injunctive relief, stating: "Plaintiff, a disabled California state prisoner seeking

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

injunctive relief for alleged ADA violations, is a member of the class to which Armstrong applies. As a result, his claims for injunctive relief under the ADA fall squarely under Armstrong, and he must pursue those claims via the consent decree or through class counsel." *Id*. at \*2.

The *Armstrong* court certified a class of "all present and future California state prisoners ... with mobility, sight, hearing, learning[,] and kidney disabilities that substantially limit one or more of their major life activities," and held that Defendants' treatment of disabled prisoners violated the ADA and RA. *See Armstrong v. Newsom*, 58 F.4th 1283, 1288 (9th Cir. 2023); *Armstrong v. Wilson*, 124 F.3d 1019, 1020–21 (9th Cir. 1997). In particular, the alleged issues at the County jails for *Armstrong* class members for failure to accommodate have been and are already part of the *Armstrong* litigation and injunction efforts with respect to the *Armstrong* class members, which has been extended to County jails. *See Armstrong v. Brown*, 857 F. Supp. 2d 919; *Armstrong v. Brown*, 732 F.3d 955, 962 (9th Cir. 2013) (containing detailed discussion of issues involving the County jails). The overlap of *Armstrong* class members and *Dunsmore* class members is impermissible. Currently and future incarcerated individuals cannot be members of both classes. The *Dunsmore* class definition is invalid.

### D.  Plaintiffs Have Failed to Establish Commonality under Rule 23(a) or that Common Issues Predominate under Rule 23(b)(3)

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "That language is easy to misread, since '[a]ny competently crafted class complaint literally raises common 'questions.'" *Wal- Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011) (internal citation omitted.) "What matters to class certification…is not the raising of common 'questions'- even in droves - but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. "If there is no evidence that the entire class was subject to the same allegedly discriminatory practice, there is no question common to

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

22

3:20-cv-00406-AJB-DDL
DEFS' OPPOSITION TO MPI

the class. In other words, the district court must determine whether there was "significant proof that [Costco] operated under a general policy of discrimination." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011).  Plaintiffs have the burden to show that the putative class is sufficiently cohesive to warrant adjudication by class representation. *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F.3d 953, 957 (9th Cir. 2009).  Mere allegations of systemic violations of the law will not automatically satisfy Rule 23(a)'s commonality requirement.  *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012).

Here, common issues do not predominate.  The declarations submitted demonstrate the variation in the allegations and a lack of commonality.  In order to evaluate liability for Plaintiffs' class, it would require witnesses, evidence, and inquiry into each alleged issue.  Resolving questions for the proposed class representatives does not resolve the factual and legal questions for the entire class. Individual questions predominate over common issues. *See, e.g., Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 190-94 (3d Cir. 2001) (class certification denied as alleged misrepresentations would require individual review and present "insurmountable manageability problems" ).  Plaintiffs cannot show how the circumstances of the named Plaintiffs are typical to the circumstances of the putative class members.

Plaintiffs claim that commonality is achieved because the class are or will be detained in the Jail and thus subject to Defendants' system-wide failures to provide adequate disability accommodations. (Pls' M'tn at 23-24.)  The alleged "commonalities" are claimed to affect everyone ever incarcerated at the County jail and anyone who might become incarcerated.  Each of the named Plaintiffs suffers from a specific illness or disability that may require certain accommodations under the California and Federal accessibility laws while incarcerated.  The ADA and Unruh Act claims require an individual to have standing as a disabled person under Federal and California laws defining disabilities, and to have been denied access based upon

the disability. Someone that *might* be incarcerated has no standing. As is clear from the descriptions of the varying needs and accommodations required by just the 14 named Plaintiffs, there cannot be any commonality among the average Jail population of 4,000 persons plus any adults who will be incarcerated in a county Jail in the future, including many that do not suffer from any qualifying disabilities.

### E.    Plaintiffs Have Failed to Establish Typicality under Rule 23(a)

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. Pro. 23(a)(3). Where proof of a named plaintiff's claims does not resolve the class claims, typicality is lacking. *See Gen. Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 159 (1982). "The test for typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Wiener v. Dannon Co., Inc.,* 255 F.R.D. 658, 665 (C.D. Cal. 2009).

The proposed class representatives assert in a conclusory fashion their claims are typical of those of the proposed class. The circumstances and claimed harm vary as to each person, however, and Plaintiffs cannot show they are typical of the class. Further, because Plaintiffs cannot demonstrate they are entitled to seek injunctive relief on their enumerated items, they may not represent a class seeking that relief. *Hodgers-Durgin v. de la Vina*, 199 F.3d at 1045.

### F.    Named Plaintiffs Are Inadequate

To satisfy Rule 23(a)(4), a party seeking class certification must show he will "prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "[T]he Court must ensure that the litigation is brought by a named Plaintiff who understands and controls the major decisions of the case," *Sanchez v. Wal-Mart Stores, Inc.*, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009). Class representatives must have standing, which named Plaintiffs lack because they are no longer at County jails or being transferred shortly. *See Simon v. Eastern*

*Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976) (named plaintiffs who represent a class must allege and show that they have personally been injured.).

### G.    Plaintiffs Have Failed to Demonstrate that a Class Action is a Superior Method of Adjudication under Rule 23(b)(3)

Lastly, Plaintiffs have failed to establish that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ Proc. 23(b)(3).  A key factor under Rule 23(b)(3) is "the likely difficulties in managing a class action." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d. 1121, 1127 (9th Cir. 2017) (stating that Rule 23 incorporates a "manageability criterion").

First, a class is unmanageable, and therefore not superior, when "there is no good way to identify [ ] individuals" in the class or to provide them with notice, a judgment, or a settlement. *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).  Who is the class?  Are notices going to be mailed to every person ever incarcerated?  Anyone with any criminal history who might be incarcerated at the County?  Does this include arrests or just convictions? Misdemeanors or felonies, or both?  What are the specific disabilities being claimed? How is a mobility impairment defined?  The services and programs available to them are completely different.  How are the un-incarcerated individuals factored in to the disability inquiry since they are unidentified?  The myriad of highly individualized inquiries renders this case unmanageable as a class action as proposed by Plaintiffs. Plaintiffs have not met their burden in explaining how the Court can sort out the many individual issues.  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

## V.    CONCLUSION

For the foregoing reasons, Defendant requests that the Court deny Plaintiffs' Motion for Preliminary Injunction and Provisional Class Certification.

1   Dated:  May 17, 2023            BURKE, WILLIAMS & SORENSEN, LLP

2

3                    By:  */s/ Susan E. Coleman*

4                        Susan E. Coleman
                         Elizabeth M. Pappy

5                 Attorneys for Defendant
                 COUNTY OF SAN DIEGO

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

26

3:20-cv-00406-AJB-DDL
DEFS' OPPOSITION TO MPI