1  Susan E. Coleman (SBN 171832)
   E-mail: scoleman@bwslaw.com
2  BURKE, WILLIAMS & SORENSEN, LLP
   501 West Broadway, Suite 1600
3  San Diego, California 92101-8474
   Tel: 619.814.5800 Fax: 619.814.6799
4
   Elizabeth M. Pappy (SBN 157069)
5  E-mail: epappy@bwslaw.com
   BURKE, WILLIAMS & SORENSEN, LLP
6  60 South Market Street, Suite 1000
   San Jose, California 95113-2336
7  Tel: 408.606.6300 Fax: 408.606.6333

8
   Attorneys for Defendant
9  COUNTY OF SAN DIEGO (Also
   erroneously sued herein as SAN DIEGO
10 COUNTY SHERIFF'S DEPARTMENT, and
   SAN DIEGO COUNTY PROBATION
11 DEPARTMENT)

12                    UNITED STATES DISTRICT COURT

13                  SOUTHERN DISTRICT OF CALIFORNIA

14

15 DARRYL DUNSMORE, ERNEST          Case No.  3:20-cv-00406-AJB-WVG
   ARCHULETA, ANTHONY
16 EDWARDS, REANNA LEVY,            **DECLARATION OF PAUL
   JOSUE LOPEZ, CHRISTOPHER         JOELSON IN SUPPORT OF
17 NELSON, CHRISTOPHER              DEFENDANT'S OPPOSITION TO
   NORWOOD, and LAURA               PLAINTIFFS' MOTIONS FOR
18 ZOERNER, on behalf of themselves PRELIMINARY INJUNCTION AND
   and all others similarly situated, PROVISIONAL CLASS
19                                   CERTIFICATION**
                  Plaintiffs,
20
   v.
21
   SAN DIEGO COUNTY SHERIFF'S
22 DEPARTMENT, et.al.,

23                  Defendants.

24

25

26        I, PAUL JOELSON, AIA, NCARB, CASp, ICC, declare as follows:

27        1.    I am a competent adult and make this Declaration of my own free will.

28 If called to testify to the facts stated herein I could and would competently do so as

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 1 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

1  they are within my own personal knowledge or professional expertise.

2      2.      I am an architect licensed by the State of California (License No. C

3  23998, issued March 10, 1993) and the State of Arizona (Registration No. 27627,

4  issued January 5, 1994), with over 50 years of experience in the construction

5  industry.  I am a member of the American Institute of Architects.  I am certified by

6  the National Council of Architectural Registration Boards (NCARB).  Since 2009, I

7  have been a California Certified Access Specialist (CASp--061), administered by

8  the California Division of the State Architect (DSA).  I am a founding member of

9  the Certified Access Specialist Institute (CASI).  I have been an Accessibility

10 Inspector and Plans Examiner and a Building Inspector certified by the

11 International Code Council (ICC) since 2001.  I have been a licensed California

12 General Contractor (B-454727) since 1983.

13     3.      As an architect, CASp inspector and construction industry expert, I

14 have consulted on and inspected numerous publicly owned facilities including

15 schools, civic buildings, parking lots, sports arenas, public rights-of-way and parks

16 including playgrounds for cities that include Los Angeles, San Diego, Encinitas,

17 San Marcos, Solana Beach, San Clemente and  Anaheim.

18     4.      I consulted with The Geo Group in an ADA discrimination lawsuit

19 filed by detainees pertaining to accessibility conditions  the Western Regional

20 Detention Center in San Diego.  The site was formerly the San Diego County Jail

21 until the county vacated the premises in 1999 and moved across the street to the

22 new jail facility which is a subject in the current lawsuit.  I performed numerous

23 site inspections of the entire facility, developed reports with recommendations to

24 remove barriers, and then assisted staff and the company's in-house architect to

25 implement those recommendations during the reconstruction phase.  I performed a

26 final inspection of the work as a condition of the negotiations.  The case was settled

27 in September 2022.

28     5.      I have provided CASp inspections of medical care facilities, acute care

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 2 -

hospitals and psychiatric hospitals. The scope of work included assessment of interior conditions, including patient rooms, emergency rooms, cafeterias, exam rooms, restrooms and exterior conditions including parking and site access. The scope of services included as the lead architect generating the scope of work with plans for barrier removal and accessibility upgrades. Projects include Providence Tarzana Medical Center, St. Joseph's Hospital in Orange, CA and St. Mary's Hospital in Apple Valley, CA.

6. In 2018, I performed a complete accessibility inspection and report for 9 buildings at the Intermountain Hospital in Boise, Idaho. The behavioral health facility had been sued by the Department of Justice pursuant to complaints filed by the public and patients. I was designated by DOJ as the Independent Licensed Architect (ILA) to consult with the local architect of record during design and contractors during construction. I provided consulting and plan review services during design and construction culminating in a final inspection, report of assessment and certification provided to the DOJ representative in charge of the case. The case was closed in April 2023.

7. I have provided CASp inspections and reports for retail stores, office buildings, shopping centers, hotels, restaurants and department stores. Clients have included Levi Strauss stores in seven (7) states; Cost Plus / World Market stores throughout California; Bed Bath and Beyond Stores in California; Del Taco stores throughout southern California; Church's Chicken throughout southern California; Embassy Suites Hotels throughout California, Nevada and Georgia; Marriott Hotels in California; and all Neiman Marcus Department and Last Call outlet stores in California.

8. The scope of consulting services has also included assessment of housing and related recreation facilities, 'pocket-parks' and playgrounds for developers of low-income housing, student-housing, apartments, condominiums and single family housing. Clients have included Shea Homes, Chelsea

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 3 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

Development, Trestle Build, University of Pacific, and numerous owners and managers of such multi-family projects.

9. My Curriculum Vitae is attached to this Declaration as **Exhibit 1**.

10. I reviewed the following documents, resources and/or files provided by defense counsel for the County of San Diego and San Diego County Sheriff's Department.

a) Reconstruction Plans by Randall Lamb and CarrierJohnson + Cultur3 entitled "Rock Mountain Detention Facility Renovation" dated 08/10/2020. The listed Scope of Work - "Provide handicap accessibility improvements at Rock Mountain Detention Facility including upgrades to site entry, parking lot, housing units 1, 2, 3, 4, 5, and 6, and Administration Building 7. Improvements shall comply with 2016 CBC Chapter 11B."

b) Modifications to Reconstruction Plans per ASI-009 dated 01/20/21.

c) Modifications to Reconstruction Plans per ASI-008 dated 01/08/21.

d) Modifications to Reconstruction Plans Phase 2 including Addenda 1-9, 07/01/22.

e) "Site Accessibility Evaluation" of Rock Mountain by John Battista (CASp 592), dated March 1, 2019.

f) Complaint filed by Plaintiff—Dunsmore, et al v County of San Diego.

g) Plaintiff Expert's Declaration and Report in support of Plaintiff's. Motions for Preliminary Injunction and Provisional Class Certification.

h) Inspection Photographs taken by Plaintiff Expert at Rock Mountain Detention Facility on February 10, 2023.

i) Inspection Photographs taken by Plaintiff Expert at San Diego Central Jail on March 13, 2023.

j) Various editions of the California Building Code—Chapter 11B—1995, 1998, 2007, 2010, 2013, 2016, 2019 and 2022.

k) Americans with Disabilities Act of 1990—2010 ADA Standards for

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 4 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

Accessible Design.

l)    Americans with Disabilities Act Accessibility Guidelines—1991.

m)    Literature and specification sheets by various manufacturers of plumbing fixtures, grab bars, and other products intended to facilitate use by person with disabilities in a correctional facility and similar environment.

11.    I conducted inspections of the following detention facilities operated the County of San Diego Sheriff's Department:

a)    San Diego Central Jail, San Diego—November 30, 2022.

b)    Vista Detention Facility, Vista—January 10, 2023.

c)    Las Colinas Detention and Re-Entry Facility, Santee—January 10, 2023.

d)    South Bay Detention Facility—Chula Vista—January 11, 2023.

e)    George Baily Detention Facility—Otay Mesa—January 11, 2023.

f)    East Mesa Detention and Re-Entry Facility—January 11, 2023.

g)    Rock Mountain Detention Facility—January 11, 2023.

h)    Rock Mountain Detention Facility—January 31, 2023.

i)    Rock Mountain Detention Facility—February 10, 2023 (with Plaintiff).

j)    Rock Mountain Detention Facility—February 27, 2023.

k)    San Diego Central Jail, San Diego—March 13, 2023 (with Plaintiff)

Peter Vail participated in the following inspection: b, c, d, e, f, g, h, and j.

12.    As a Title II public entity, the County of San Diego Sheriff's Department is obligated to abide by the requirements of the accessibility standards outlined in prevailing federal ADA design standards.

13.    According to the state building code, all newly built county projects and alterations to existing facilities to remove barriers to increase accessibility are required to comply with requirements of the current California Building Code—Chapter 11B in design, at the time of plan submittal, throughout construction to

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 5 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

1    completion and issuance of a Certificate of Occupancy for each respective facility.

2        14.    In addition, new work or alterations to existing facilities shall comply

3    with the design and construction standards outlined in the federal 2010 ADA

4    Standards for Accessible Design (ADAS).

5        15.    The goal of the applicable state model codes and federal standards is to

6    achieve compliance for all built systems, components and elements incorporated in

7    a project at large.  Included is the goal to provide accessible and compliant facilities

8    to facilitate access for persons with a qualified disability.

9        16.    As a Title II entity, the county is obligated to develop policies that

10    abide by the ADAS standards to facilitate access for people with disabilities

11    currently under their care.  Since the buildings were constructed in the 1990's when

12    the accessibility standards where in their infancy exemplified by the fact the state

13    building code did not align with the federal ADAAG 1991 standards pertaining

14    numerous assemblies.  Furthermore, the arrangement of elements, clearance

15    requirements, and dimensional requirements of some assemblies outlined in the

16    building code changed over the numerous editions of the code published on a

17    triennial cycle.

18        17.    The plaintiff's report highlights areas within housing cell claiming

19    clearances are insufficient necessitating, in Ms. Sanossian's view, that alteration of

20    the cell footprint and demolition of walls is required.  In my view, the necessary

21    clearances are provided with minor deviations and disagree with her view that such

22    work she deems necessary is technically feasible.  In my opinion removing such

23    walls and associated utilities in the adjacent utility chases is disruptive, costly and

24    comes with no guarantee that broadening the 'shoulders of the room', so to speak,

25    can be accomplished.  Furthermore, the gain is likely minimal for the enormous

26    costs necessary to implement her proposals.  The money is better spent elsewhere in

27    areas where barrier removal is more achievable, less complicated and the costs for

28    the effort more predictable.  Demolition of concrete structural walls for minimal

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 6 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

1    dimensional gain, in my opinion, is tantamount to throwing money down a 'rabbit

2    hole' with no clear end in sight.

3        18.    After a review of the Declaration Syroun Sanossian and Report I have

4    the following comments:

5        a)    At the time of inspection of Rock Mountain by Ms. Sanossian, the

6    facility was undergoing an extensive alternation to modernize the facility built in

7    the 1990's.  As conveyed to me by staff, after completion, the facility was leased to

8    a private contractor to house detainees of the federal government as administered

9    by the United States Marshals Service.

10        b)    At the time the Marshals vacated the facility in approximately 2015

11    numerous elements and systems were in need of repair, replacement and/or

12    upgrades since they were obsolete, worn, broken or beyond their useful life.  Those

13    systems include communication and surveillance systems, HVAC systems, lighting,

14    storage, inmate support facilities, doors, accessibility features and components,

15    painting and coatings, flooring, etc.

16        c)    Furthermore, considering the facility age and the evolution of the

17    California Building Code (CBC) and ADAS-2010 standards pertaining to

18    accessibility, the County began an upgrade program to remove barriers to access as

19    defined by the referenced accessibility standards.

20        d)    The County hired Randal Lamb and Davy Architecture to develop

21    construction documents for the work to engineer the system upgrades and revisions

22    including removal of architectural barriers to increase accessibility and achieve

23    compliance with prevailing accessible state codes and federal standards.  The

24    applicable code for the work is 2016 CBC Chapter 11B.

25        e)    Overall the work included removal of barriers to improve access

26    within inmate housing modules, designated accessible sleeping cells and holding

27    facilities at intake and the medical services area.  The scope has included replacing

28    lavatories and toilets; construction of new roll-in shower stalls; and the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 7 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

1    modification of existing and installation of new safety devices and amenities

2    including grab bars, mirrors, toilet paper holders, beds, tables and stools, desks and

3    stools, etc.

4         f)      During my inspections and discussions with the county project

5    manager, Scott Bennett, he conveyed a genuine and sincere interest to achieve

6    compliance with the standards.  We have communicated since we meet on

7    November 30, 2022, during the first inspection of the Central Jail.  Since then he

8    has reached out with many times with questions.  I responded by providing

9    guidance on interpretation of the applicable codes and standards regarding

10   numerous assemblies.   We is a consummate professional who has directed the

11   onsite work with care to assure the work is performed correctly the first time in

12   order to avoid revisions, expensive cost overruns and project delays.

13        g)      In conjunction with the upgrade of communication and surveillance

14   systems, the scope also included installation of new and relocation of existing

15   intercom devices within inmate cells, dayrooms, housing modules, holding areas,

16   etc.  At the time of the inspections, the work was not complete.  During the

17   inspections, I advised the facility director, Lt. Michael Binsfield, about the proper

18   location of the intercom devices regarding position in a room, height of the actuator

19   button above the floor, and requirement for 30x48 clear floor space below centered

20   on the device.   He was informed that a wheelchair user or anyone else should not

21   have to reach over a bench to activate the intercom.

22        h)      Within inmate housing modules new accessible telephone banks were

23   in place, however, the actual telephone equipment had not been installed as of the

24   last inspection conducted on February 27th.

25        i)      During each of my four inspections of the facility, construction

26   workers and subcontractors with the prime contractor, Sundt Construction, were

27   present performing various activities referenced above.  The project manager was

28   multi-taking and very engaged with both the construction team and representatives

Burke, Williams &
Sorensen, LLP
Attorneys At Law
San Diego

- 8 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

1    of Joelson Vail Associates LLC (JVA).  I found that the facilities director, the

2    project manager and jail staff were genuinely interested in achieving compliance

3    and were acting in good faith.

4        j)    I submitted a report of observations with recommendations for Rock

5    Mountain on February 3, 2023.  Since its submittal, I have consulted with Mr.

6    Bennett and provided guidance and advice on numerous occasions when requested.

7        k)    When the Plaintiff's expert inspected the facility on February 10,

8    2023, the work overall was partially complete.  Numerous plumbing fixtures had

9    been removed, however, the new fixtures including grab bars and similar elements

10   associated with toilet facilities were on order and had not yet arrived.  The

11   plaintiff's photographs, including those taken by JVA, clearly illustrate work in

12   progress.

13       l)    Throughout the plaintiff's report, those incomplete areas were

14   accessed with commentary implying with skepticism that the work would be correct

15   or without deficiencies. Such claims are speculative, unfounded, and premature.

16   Examples include assessments of positions of lavatories, toilets and amenities (T.P.

17   holders, grab bars, mirrors, etc.) prior to their installation.  Her approach differed

18   from my own since having been involved in numerous rehabilitation projects over

19   the years, I found Mr. Bennett's team professional and skilled with a full

20   understanding of the importance of abiding by the construction documents and

21   applicable codes..

22       m)    On February 27, 2023, Peter Vail and I conducted another inspection

23   to confirm status of the work in progress and other conditions  We conducted a

24   "slope duty" to evaluate the condition and slopes of the walking surfaces that were

25   tested by the plaintiff on February 10, 2023.  We also consulted with Mr. Bennett

26   about various issues and inspected the recent installation of an accessible sink

27   within a designated accessible cell at House 1.  I found the installation was

28   compliant with the applicable codes and standards for type of fixture to meet anti-

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 9 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

ligature standards, operational features, height, position, knee clearance below and

clearances required to approach the fixture and/or to enter or leave the cell.  The

horizontal clearance between the front of the fixture and opposing wall is 40".

Condition complies with standards that require a 36" wide accessible route between

the door opening and cell interior.

n)      Our slope study findings were published in a report submitted on

March 9, 2023.  During the inspection we confirmed that the areas tested by the

plaintiff expert during the inspection and cited in the SZS report were nominal

variations of running or cross slope within the building or outside at the walkways

between the administration building and inmate housing units.  Our study illustrates

that the footprints of affected areas are small and isolated, and variations of slope

virtually imperceptible.  Refer to our discussion in the Issue Analysis to follow

regarding Barriers 32A thru 32I.

o)      On November 30, 2022, I inspected the San Diego Central Jail.  I

submitted a report of my observations with recommendation on December 16,

2022.  The report addressed areas were inmates are booked and processed, the

medical services area, visitation areas and inmate housing modules in both with

dormitory configuration and with individual cells. The report cited conditions that

were not compliant with prevailing standards outlined in ADAS 2010 or the current

version of the state building code.  As I understand it, my findings and

recommendations are being incorporated among other resources to develop a scope

of work for the future rehabilitation of building systems, in general, and removal of

architectural barriers specifically.  The goal is to increase accessibility to achieve

compliance as is technically feasible given the buildings age, physical configuration

of spaces and cells, and limitations working within a high-rise building with poured

concrete floors and concrete block demising walls.  The focus of barrier removal

and upgrades, as discussed with Mr. Bennet, is to install accessible single level

beds, accessible inmate storage unit, accessible dayroom seating at tables, and

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 10 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

portable shower seats in showers currently with grab bars in Module 8C. The goal is to address those fixtures and amenities in which inmates with mobility disabilities have direct contact with or use of.

p)    Since the two inspections by the Plaintiff, I have consulted with Mr. Bennett to confirm status of the work and schedule for admitting inmates at Rock Mountain. He mentioned the work at the Housing Units 1, 2 and 3 is scheduled for completion by the end of May 2023. Partial occupancy is anticipated in July of 2023.

q)    In the meantime, as stated above, remedial work at Central Jail is ongoing daily to install accessible single level beds and associated amenities, i.e., storage, table seating space, etc. at Dormitory Module 8C.

r)    In order to comply with the mandated standards for housing inmates, Mr. Bennett stated the work has to be incremental at each facility and phased in conjunction with work between George Baily, Rock Mountain and Central Jail in order to provide ongoing services to all inmates including those with qualifying disabilities. Once areas are ready for a transfer of the population between facilities, Rock Mountain will receive inmates as the other existing facilities remain open out of necessity for intake of arrestees and others under the jurisdiction of Sheriff's Department.

19.    The following is an overview of my assessment and opinion regarding the specific claims made in the plaintiff report regarding Rock Mountain. The following comments pertain to the alleged barriers identified in the plaintiff expert's database form. The commentary is condensed into assemblies that are similar and/or continually repeated throughout the report. Those issues pertain to toilets, lavatories, showers, grab bars, shower seats, benches, door heights, tactile signage, etc.

20.    Note that I agree with some of the plaintiff expert's assessment and recommendations since some, but not most, pertain to safety concerns, such as the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 11 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

walking surfaces throughout the facility.  Those issues pertain to excessive cross slope around floor drains in holding cells, uncaulked gaps between concrete panels at exterior walkways, tall thresholds at roll-in shower and below exterior doors serving the exterior recreation areas.  Such mitigation will benefit the entire population of inmates who may encounter these conditions.  However, Mr. Bennett and I previously discussed these and similar conditions during the inspections of each facility and have been part of the overall plan issues to address since that time.

21.    However, in many cases I do not agree with the assessment or recommendations.  Numerous conditions cited as barriers, in my view, are not barriers or violations of either the state building code or the ADAS federal standards.  In my opinion, many comments are based on misinterpretation and improper application of the referenced code sections.  For examples refer to the Issue Analysis to follow regarding Barriers—2B, 5C, 5E, 19A-19D, 20D, etc.

22.    Due to time constraints and the sheer volume of issues, many of which are similar, this declaration does not address each and every barrier cited.  I have condensed the issues into the  primary and essential components of accessible systems for brevity—accessible route, toilets lavatories, shower, shower seats, grab bars, floor slope, clearances around fixtures, cell and holding room doors, etc.

23.    The six hundred forty two (642) page report consists of forty-nine (49) pages of declaration and summary of observations and opinions, two hundred twenty two (222) pages with data files for Rock Mountain, and Three Hundred Seventy One (371) pages devoted to observations made at the San Diego Central Jail in downtown San Diego.

24.    The following is a preliminary, condensed overview of my response to the plaintiff report pertaining to Rock Mountain.  Note many of the issues raised regarding conditions at Central Jail are similar to those raised at Rock Mountain. Refer to the commentary.

a)    BARRIER 1A, 1B & 1C—(At Intake Drop Off)—

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 12 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

1      PLAINTIFF'S CLAIM—Running slope of 16" wide built-up asphalt wedge

2  at the bottom of the sloped walkway outside Inmate Intake exceeds 8.3%, the

3  maximum allowable within an accessible route.  The excess slope condition was

4  measured at 12.1% and isolated to the asphalt "wedge".

5      JVA RESPONSE—Slope of asphalt wedge is 11-12% inn direction of travel.

6  The running slope of the concrete surface is less than 5%.  Consequently the walk is

7  not a ramp since slope is 5% or less.  Observed isolated areas were cross slope of

8  walking surface exceeded 2% on the sloped surface and top landing.

9      RECOMMENDATION:  Remove asphalt wedge and apply new asphalt to

10  abut edge of existing concrete and feather surface toward parking area to achieve a

11  running slope consistent with concrete area which is less than 5%.  Note that the

12  slope of the drop-off parking and off-loading area (14' x 20") beyond the new

13  wedge should not exceed 2% in all directions.  Asphalt contractor should confirm

14  the slope of drop-off area in compliance with applicable standards.  Assess

15  condition of concrete walking surface and grind areas where cross slope exceeds

16  2%.

17      b)    BARRIER—1D, 1E, 1F & 1G—Exterior Intake Area.

18      PLAINTIFF CLAIM—Vertical distance between landing at top of intake

19  walk and adjoining covered concrete walk exceeds 1/2".  The 1" wide cold joint

20  between the landing is open and uncaulked, the cross slope at the landing exceeds

21  2% in isolated areas.

22      RECOMMENDATION:  Grind concrete down to achieve a flush transition

23  between landing and covered walk.  Apply a concrete topping to fill any dips, etc.

24  to achieve flush transition.  Fill and caulk all expansion joints in area.  Grind area

25  where the cross slope at landing exceeds 2%.

26      c)    BARRIER 1G—Exterior Intake Area.

27      PLAINTIVE CLAIM—Observed severed anchor bolts securing a baseplate

28  since removed .  The bolts are not flush to adjoining concrete.  Condition could

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 13 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

problematic are all persons walking and traversing the area using mobility aids.

RECOMMENDATIONS:  Grind down bolts flush to concrete surface.

d)    BARRIER 1A—Exterior Intake Area.

PLAINTIFF CLAIM—Vertical distance between the covered walkway and adjoining sloped walkway and asphalt exceeds 4".  Per CBC 11B-303.5—a warning curb or guard rail is required when the distance exceeds 4".  Note—ADAS 2010 does not have a corresponding requirement.  Condition as-built was compliant with ADAAG 1991.

RECOMMENDATION:  Install a 6" high warning curb or guardrail with a wheelchair guide according to 11B-303.5.  Curb should run full distance between landing (referenced above) and westward to intake door of building.

e)    BARRIER 1H—Exterior Intake Area.

PLAINTIFF CLAIM—Bird droppings.

RECOMMENDATION:  This is a temporary condition.  Maintain and clean concrete surface on a continuing basis.

f)    BARRIER 2A, 2C, ETC.—Signage—This issue is cited as deficiency throughout the report.

PLAINTIFF CLAIM—Lack of sign raised characters where visual sign exists.

RECOMMENDATION:  The applicable codes and standards require room identification signages at permanent rooms.  Assess issue in terms of operating the facility and customary practice of escorting inmates throughout the facility at all times.  According to staff all inmates outside of the seven (7) housing modules are not allowed to move about or walk freely in common areas.  The inmates are handcuffed and escorted by a deputy between the housing areas and any destination, i.e., medical treatment, release, activity areas, visitation, etc.  The policy would render plaintiff recommendation moot since handcuffed inmates would not interact with such signage according to policy.  This requirement

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 14 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

1    assumes a person moving freely about a public space—not an inmate in a detention

2    facility.  This is technical issue that should be balanced with operational polices

3    versus the expressed requirements in both the standards and code..

4          g)      BARRIER 2B—Height of Doors.

5          PLAINTIFF CLAIM—Vertical clearance at door openings is less than 80".

6    Clearance is 79" +/-.

7          RECOMMENDATION:  No Action Required since the condition is likely

8    not a barrier to a majority of the jail population who are not 6'7" tall.  Referenced

9    CBC section 404.2.3 and Exception allows a reduction in the vertical clearance to

10   78" AFF to account for door closers and door stops.  The guidance channel at the

11   top of the centrally controlled doors can be reasonably interpreted as a stop serving

12   as a closer and alignment stop/mechanism.   Note—This recommendation applies to

13   all locations throughout the facility where plaintiff claims the subject doors should

14   be replaced.  This is certainly not a barrier to wheelchair users and majority of the

15   population.

16         h)      BARRIER 3A, 4A—Protruding Objects: All instances regarding CBC

17   11B-307 / ADAS 307.

18         PLAINTIFF CLAIM—Counter at Intake Corridor projects 8" from wall at

19   40.5" AFF.  Install cane detection devices.

20         RECOMMENDATION:  Per ADAAG 1991 4.4 Protruding Objects—If an

21   object projects more than 4" off a wall along an accessible or circulation route, a

22   cane detection device is required below 27" above the floor so a visually impaired

23   or blind person using a cane can detect the detection device and adjust their course

24   and move away from the protruding object on wall.  This assumes that such person

25   can move freely about a facility.  However, according to policy as conveyed by

26   staff, inmates are escorted at all times and never allowed to move about in such

27   common area corridors outside the housing modules in which they are confined.  In

28   is reasonable to presume a staff member escorting an inmate who is blind or

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 15 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

visually impaired requiring the use of a white cane would adjust and inform the person of a direction change.  To mitigate this issue the staff member could walk down the center of the corridor exercising do care to avoid a potential hazard or obstruction in the walking path.  Develop a policy as to the means and methods to escort blind inmates.  Such as policy does not preclude installing a cane detection devise at either end of the protruding object or reducing the projection of the wall to 4" or less.  Elsewhere in the plaintiff report there is a claim of violation with CBC 11B-307.4 and ADAS 307.4 that requires a cane detection barrier for the benefit of the blind who may walk below exposed stairs when not enclosed in a shaft, housing, etc.  This condition pertains to all stairs in both facilities that serve the upper level cells in two story housing modules.  According to Mr. Bennett, blind or visually impaired inmates are housed in such story modules.  In Rock Mountain they are housed in House 7 adjacent to the medical area and at Central Jail they are housed in a dormitory without stairs. Note the current California Building Code and ADAS 2010 reiterate the standard in 11B-307 and 307 respectively.   For long term risk management and compliance, I advise installation of the cane detection device under all such stairs in both facilities.

i)      BARRIER 3B, 4B—Service Counters.

PLAINTIFF CLAIM—counters addressed in 3A are service counters subject to CBC 11B-902.2 & 11B-904.4.

RECOMMENDATION:  No Action Required.  According to staff, the subject counters are not used by inmates in the typical scenario where they may receive documents or conduct a transaction with staff.  If such a situation arises where staff interacts with an inmate requiring such a counter, an alternative location in the immediate area could be provided with a table, flip-up counter or similar device.  Direct all wheelchair users to the alternative location and device, if required, to complete the transaction as necessary.

j)      BARRIER 5A—Intercom locations.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 16 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

1    PLAINTIFF CLAIM—Intercom call device in holding cell 2145 is mounted

2    in the room corner above a fixed bench.  Access for a wheelchair user is

3    problematic and likely out of reach per CBC 11B-303 and ADAS 308.

4    Furthermore, the bench obstructs the 30x48 clear floor space required below and

5    centered on the device.

6    RECOMMENDATION:  Relocate the intercom device to an open area that is

7    not obstructed by benches, tables, beds, etc.  Reposition and center the device above

8    30x 48 clear floor space below so the top actuator button does not exceed 48" AFF

9    to facilitate use by all persons including wheelchair users.   I suggest placing at 44-

10   46" AFF.  NOTE—This recommendation applies to such intercom devices

11   throughout the facility in dayrooms, exam rooms, activity area, exterior recreation,

12   holding cells, sleeping cells, etc.

13       k)       BARRIER 5B—Benches in holding areas.

14   PLAINTIFF CLAIM—Bench installed in Holding Cell 2145 lacks 30 x 48

15   clear floor space at the end to facilitate side transfer from a wheelchair per CBC-

16   11B 807.2.2 & 11B-903.2 and ADAS 2010 807.2.2 & 903.2.

17   RECOMMENDATION:  This standard is intended to facilitate a wheelchair

18   user to transfer to the bench to change clothes in a gym, changing room, restroom,

19   shower area, etc.  It does not apply to park benches, bus stops, etc.  Section 11B-

20   807.2.2 applies to holding cells with a shower assuming an inmate using a

21   wheelchair may change clothes, etc.  Modify the arrangement in all similar holding

22   areas.  Per CBC-11B-902—the bench shall be minimum 48" long, 20-24" deep and

23   17-19" to the top AFF.

24       l)       BARRIER 5C—Lack of Proper Knee Space under Lavatory.

25   PLAINTIFF CLAIM—Claim is the lavatory in Holding Cell 2145 lacks 27"

26   of knee space according to CBC 11B-306.3.3 (Exception1)

27   RECOMMENDATION:  No Action Required to adjust the existing lavatory.

28   According to JVA photos and the plaintiff expert's own photos the clearance below

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 17 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

the fixture apron is 29" as required by the referenced section and Figure 11B-306.3.
Note—we observed that all similar lavatories installed in such holding or housing
cells have the required knee clearance below.  Plaintiff appears to claim the
overflow / drain below the fixture reduces the required knee clearance.  According
to CBC 11B-606.2, Exception 6, the dip of an overflow and connected drain shall
not be considered in determining knee and toe clearance.  We observed that the new
lavatory installed in the sleeping cell at House A Module provided the required
knee space and operational controls.

m)    BARRIER 5D—Toilet Offset from side wall.

PLAINTIFF CLAIM—Within Holding Cell 2145, the center of the toilet is
18.5" offset from the side wall.  According to CBC 11B-604.2, the center shall be
17-18" to center.

RECOMMENDATIONS:  According to my photo of the same toilet, the
offset is 18.25" to center.  In my view the ¼" is di minimis and not functional
barrier preventing safe use by a wheelchair user or person with a mobility disorder.
Where the toilets offsets are greater, if feasible, consider adjusting the toilet to
move closer to meet state standards.  Note the facility was built when the California
Building Code required a hard, exact 18" offset to center.  Since then, the state
relaxed the requirement to allow a 17-18" range to provide relief to account
construction tolerances.  ADA allows a 16-18" range.

Note, considering the period of construction and supporting concrete or
masonry structure there are other locations that measure 18.125" to 18.75".
Evaluate feasibility of adjusting the fixtures at designated accessible locations.

n)    BARRIER 5E—Grab Bars with Anti Ligature Feature.

PLAINTIFF CLAIM—Grab Bars with anti-ligature feature at base of bar
obstructs full grip around bar itself and are not compliant.

RECOMMENDATION:  No Action Required.  The configuration of grab
bars installed with the flat plate welded to the bottom of the cylindrical section of

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 18 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

bar is typical of numerous manufacturer's solutions to providing anti-ligature grab bars.  The cross section drawing the plaintiff expert provided in the narrative of opinions illustrates a standard handrail with typical mounting brackets that project minimum 1.5" below the rail and returns to a typical wall mounting plate.  Such devices are typically spaced between 4-6' depending on stiffness and structural strength of the handrail.  Refer to CBC 11B-505.5 (Handrail Clearance) and CBC 11B-505.6 (Horizontal Projections Below Gripping surface).  The section applies to handrails at stairs and ramps, not grab bars.  According to past research and developing specifications for rehabilitation of security facilities in psychiatric hospitals, federal detention centers, etc. the configuration of the grab bars currently installed is representative of typical grab bars on the market manufactured by Bradley Manufacturing, American Specialties Inc., Inpro Corporation, Willoughby Industries, Acorn, etc.   The configuration proposed by the plaintiff expert is not available on market since the "drop" below the bar creates an open area at the end of bars that would require closure.  The plaintiff's proposal implies a "trough configuration"  which is neither practical nor readily available in the marketplace. This recommendation applies to all such installations in the facility.  Refer to the following authority and document—ADA/Section 504 Design Guide:  Accessible Cells in Correctional Facilities, published by the Department of Justice (DOJ) on February 25, 2020. **Exhibit 2**  Page 3 illustrates two section diagrams of compliant anti-ligature grab bars—the one on the left matches the diagram proposed by the plaintiff expert and the diagram on the right illustrates the as-built condition with the plate welded to the bottom of the bar.  Both are presented as "profiles of accessible grab bars with suicide prevention features".  The plaintiff report fails to convey the DOJ's assessment and acceptance of the grab bars currently installed.

o)      BARRIER 5F—Horizontal Clearance in front of Toilet to an Obstruction—All Locations including holding cells and sleeping cells.

PLAINTIFF CLAIM—Per plaintiff, at holding cell 2145, the horizontal

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 19 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

1  clearance to privacy wall in front of toilet is less than 48". According to plaintiff

2  expert condition does not comply with CBC-11B-604.8.1.1.3 (and 11B-604.3.1)

3  which requires 48" clearance. Note the clearance from the rear wall to the inside of

4  the privacy wall is 64.5" and distance between wall and toilet front edge is 38".

5      RECOMMENDATION: According to ADAAG 1991 4.16.2 and Figure 28,

6  the required footprint of the clearance area around a toilet is 60" wide and 56" deep

7  (measured perpendicular to rear wall). The is no specific call-out for a 48"

8  clearance between the toilet front edge and opposing obstruction in the illustration.

9  The current ADAS 2010 standards per 604.3.1 and 604.8.1.1 aligns with this legacy

10 standard which does not require the 48" clearance. The 48" clearance is a current

11 California requirement only. Unless the specific area was remodeled with

12 relocation of fixtures and elements, replacing fixtures, in kind, does not trigger a

13 requirement for a permit. Technically, in my view, the fixtures could be replaced,

14 as long as the installation and fixtures are ADA compliant, without triggering the

15 state requirement to remove the privacy wall and increase the clearance to 48" min.

16 My interpretation and recommendation may be subject to verification with the local

17 jurisdiction and building department for the current remodeling. Note—The

18 plaintiff report raises the issue at each designated accessible sleeping cell within

19 each housing module inspected. In those cases, the clearance was consistently

20 47.5" between the toilet from edge and opposing bed frame. In my view the

21 dimensional variation from the standard is di minimis and not a hazard, unsafe

22 condition nor a safety risk to the inmate.

23      p)    BARRIER 5G—Toilet Paper Holder—All locations.

24      PLAINTIFF CLAIM—At Holding Cell 2145, toilet paper holder is missing.

25      RECOMMENDATION: At the time of the inspections, the installation of

26 plumbing fixtures and supports components was in progress. Toilet paper holder

27 installation was partial and not complete since the typical sequence is to install the

28 toilet first followed by the holder. The facilities director was advised to the proper

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 20 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

installation of the device according to the current California Building Code Figure 11B-604.7.1 and Figure 11B-604.7.2.   The center of the hole or roll should be 'centered' 7-9" from the toilet front edge.  The work in progress observed is substantially compliant with the standards.  The holders mounted on the rear wall behind the toilet is a legacy installation dating back to original construction.

> q)      BARRIER 6A—Slope to Floor Drain.

PLAINTIFF CLAIM—Slope of floor surrounding central floor drain varies between 3.8% to 6.8% in Shower – Dressing Area 2140.  Condition is not compliant with CBC 11B-608.9.  There is no corresponding standard in ADAS 2010.

RECOMMENDATION:  Investigate feasibility of raising drain grate / ring to reduce drop from surfacing floor elevation in conjunction with grinding / feathering surface followed by application of a self-leveling waterproof flooring system surrounding the drain to reduce the drop and level cross slope in all directions to less than 2%.  The "drop" between the floor surface and drain grate should be beveled and not exceed ¼" high.  This recommendation applies to all such locations.

> r)      BARRIER 6B—Shower Compartment Entry and Transfer to Bench— All locations.

PLAINTIFF CLAIM—At roll-in shower in 2140, the leading end of the bench is 11" from the compartment entry.  Condition is not compliant with CBC 11B-610.3 and ADAS 610.3.

RECOMMENDATION: Condition pertains to the distance between the edge of bench when deployed to the outside edge of the marble threshold below.  Current arrangement requires a wheelchair user to straddle the threshold and position the chair partially inside the tiled compartment (wet) and outside on the concrete floor (dry).  Facilities director was advised by JVA to remove the threshold and tile and reinstall, so the outside edge of the threshold is maximum 3" from the bench end.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 21 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

This recommendation applies to all similar conditions observed elsewhere in the facility.

s)    BARRIER 6C AND 6D—Shower Bench / Seat.

PLAINTIFF CLAIM—At Shower 2140, L-shaped shower seat does not extend min. 15" to max. 16" from seat wall on long side.  Plaintiff proposes replacing the seat.

RECOMMENDATION:  No Action Required.  The footprint of the seating platform itself is equivalent to the range of dimensions according to CBC 11B-610.3.2 and corresponding ADAS requirement.  Any dimensional variation between as-built condition and cited code diagram is di minimis, does not limit usability and is not a hazard or unsafe to the user.  The frame with the chamfered top into which the seat platform retracts is intended to satisfy anti-ligature requirements.  When folded back into the frame the seat itself cannot be used as a potential ligature device.  When partially deployed the seat descends to the fully open position due to its weight and cannot be used as a ligature device.  The rear frame has no impact to facilitate a person transferring from a wheelchair. Plaintiff's criticism is focused on di minimis variations that have no material effect on its accessibility and usability.  This applies to all such benches installed through the facility.

t)    BARRIER 6E—Grab Bar overlap to Shower Bench / Seat.

PLAINTIFF CLAIM—At Shower 2140, the grab bar along the rear wall overlaps the shower seat.

RECOMMENDATION:  Grab bar overlaps seat by 3" +/-.  Condition is the result of the seat housed in the anti-ligature frame which pushes the seat away from side wall approximately 3-4".   Condition is a minor deviation that in my opinion is not functional obstruction to access the push button controls and grab bar itself.

u)    BARRIER 6F AND 6G—Shower Controls.

PLAINTIFF CLAIM—At Shower 2140, plaintiff claims the fixed shower

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 22 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

1  head is not adjustable and controls cannot be used independently.

2    RECOMMENDATION:  No Action Required.  Requirement for adjustable

3  shower head is a California Building Code requirement—not a requirement of

4  ADAS 2010.  According to Mr. Bennett, the ball-shaped head is not adjustable due

5  to anti-ligature requirements.  The spray spout is housed in the dome or rounded

6  shaped hosing to prevent installation of a ligature device—rope, clothing, etc. There

7  are two push buttons provided, one for the top head and the other for the bottom.

8    v)  BARRIER 15, ETC.—Cross Slope of Corridor Floor in

9  Administration Building / Medical Areas.

10    PLAINTIFF CLAIM—Cross Slope exceeds 2%. "Alter Path to Comply"

11    RECOMMENDATION:  Plaintiff expert measured the cross slope of the

12  hallways, holding room and cells, areas around toilets, areas around floor drains,

13  and exterior walkways between housing units.  A 2' digital level on a hand loop

14  was placed on the walking surface without any consistency, interval or published

15  plan.  The methods amounted to a spontaneous effort that does not correspond with

16  industry standards outlined by the American Concrete Institute (ACI), or those

17  methodologies outlined by David Kent Ballast in "Dimensional Tolerance in

18  Construction for Surface Accessibility" published by the US Access Board in 2011.

19  The documents outline a prescribed methodology to access a walking surface in a

20  grid pattern using straight edges supplemented by digital levels in both directions.

21  In effect the goal it to access "floor flatness" to determine consistency through a

22  large slab.  The floors inside the building are either slabs on grade or are suspended

23  post-tension slab spanning between bearing walls.  The exterior walkway slabs are

24  poured on grade.

25    •  The following conditions are minor deviations from the dimensional

26  requirements which in my opinion do not constitute a dangerous condition or

27  impose a potential risk of injury, except as noted.

28    •  I agree that shower floors exceeding 2% slope should be modified to

Burke, Williams &
Sorensen, LLP
Attorneys At Law
san diego

- 23 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

reduce the slope to drain in conjunction with replacing outside thresholds that exceed 1/2" high to achieve compliance with CBC-11B-303 and ADAS 303.

•      I also agree that the slope immediate area within 12" radius) around some floor drains should be reduced to 2% or less.  Refer to comments above.

•      I do not agree that the "bumps" or cross slope areas measuring 2.0% to 2.6% are a barrier or are a significant hazard inside the buildings.  During our own slope assessment conducted on February 27, we found that the high spots were incidental, isolated, and did not reflect an obvious hazard in the corridors, housing areas, inmate cells or within rooms in the medical area.  While traversing across those area, I found that any variation to such as low degree was imperceptible.

•      We also assessed all exterior walkways between the administration building and 6 housing units located on the east and west sides.  We identified areas where the cross slope exceeded 2% and running slope exceeded 5%.  We observed they were infrequent and isolated.  The facilities director indicated that we would explore the option to install handrails on both sides of each walk and selectively grind surfaces to achieve compliance.

•      Peter Vail and I employed straight edges and digital levels of varying lengths to assess areas tested by the plaintiff.  We were unable to replicate the measurements in numerous areas which led to question the methodology they employed and accuracy of their device.  Note, when a 2' long digital level is placed on a surface, the accuracy of the measurement is dependent on a clean surface without debris, grit, sand, etc. which can skew the results with a false reading.

•      Our study found the exterior walkways were troweled and finished by hand rather than with laser screeds and troweling machines.  Such a methodology may result in minor rolling dips or 'dishes' where the slope of one section may differ from another 2' away.

w)      BARRIER 19A THRU 19D, ETC.—ACCESS TO MEDICAL EXAM ROOM SINK.

1      PLAINTIFF CLAIM—At Treatment Room 2032 in the medical area,

2  plaintiff addresses the sink counter and amenities implying the assembly is

3  deficient in need of revision.

4      RECOMMENDATION:  No Action Required.  This is not a barrier to access

5  for inmates.  During my discussion with staff and the facilities director, inmates are

6  not allowed access to the sink in an exam room as a matter of policy.  As is typical

7  in medical office settings, such sinks and amenities are for staff use only.   Having

8  designed and constructed medical and dental offices for both private and public

9  entities, it is my direct experience that such sinks and amenities are not used by

10  patients according to policy due to health and sanitary issues.  This opinion applies

11  to all similar installations in the medical area or where services are provided to an

12  inmate by staff where a use of sinks is normally provided in a public or controlled

13  setting such as a barber shop.

14      x)      BARRIER 20D—ACCESS TO TOILET AT HOLDING 2012.

15      PLAINTIFF CLAIM—The route from the room as large to the toilet is

16  narrowed to 35.25" horizontal clearance between opposing privacy walls.  Claim is

17  the condition is not compliant with CBC 11B-403.5.1 (Exception 5) which requires

18  a 44" wide min. the route to "accessible toilet compartments".

19      RECOMMENDATION:  No Action Required.  This is a California only

20  requirement.  ADAS 2010 does not have a corresponding requirement.  ADAS

21  requires a 36" wide min route which can be narrowed to 32" for a maximum

22  horizontal distance of 24" at doorway, cased openings, etc.  The area in which the

23  toilet is placed is not a compartment by definition since there is no door or typical

24  privacy partitions installed in public restroom.  The intent of this section is to

25  provide a 44" wide route that runs in front of standard toilet stalls where the

26  accessible toilet is located at the end of the route in multiple accommodation

27  restrooms.  This is an incorrect interpretation of the code.

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 25 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

CENTRAL JAIL—SAN DIEGO, CA

SUMMARY OF PLAINTIFF ISSUES – EX, C—258

1.      Housing cells inspected are not accessible due to lack of maneuvering room to turn around and transfer to the bed or toilet.  Cells lack grab bars around toilet to facilitate a transfer.

2.      Showers are not accessible to people with mobility disabilities at Floors 4-7. Showers at floor 8 have no level wheelchair space to transfer to seat (if provided) and no required maneuvering clearance for wheelchairs.  All showers lack fixed shower seats with backrest, accessible grab bars, controls and shower spray units.

3.      Use of triple bunks.  In sum, the devices prevent a wheelchair user from transferring to bed since bottom bunk is typically too low and level of the middle bunk obstructs the head and upper body from transferring without having to bend and crouch their back and neck.

4.      People with serious mobility disabilities, including wheelchair users, are often housed in general cells.

5.      Cluster a large number of individuals with mobility disabilities into single dormitory housing unit 8C.  Other dormitory housing units with more amenities are limited to incarcerated people who are part of work programs which do not appear to include individuals with serious mobility disabilities based on provided roster and observations during inspection.

JVA RESPONSE:

1.      The sleeping cells I inspected are physically too small to accommodate the required 60" diameter maneuvering space and clear floor space required alongside the bed, and at approaches to the toilet, lavatory and desk.  As discussed with Mr. Bennet, I suggested establishing a policy to house persons with mobility disabilities using wheelchairs in a dormitory setting with toilet, lavatory and shower facilities within a larger footprint. The recommendations included using single level

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 26 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

beds and providing accessible storage devices for personal effects.  I was informed the policy and particular location would depend on each inmates risk classification, medical needs, behavioral history, sentence, etc.

2. As previously mentioned above, according to my conversation with Mr. Bennett on May 15, 2023, upgrades to provide accessible sleeping, housing, toileting and showering facilities are currently underway.  The as-built 42x48 showers are the legacy of the California Building Codes acceptance of the configuration during construction of both Rock Mountain and Central Jail during the 1990's.  The configuration was finally abandoned upon the publication of the 2007 CBC.  The configuration was never endorsed by the Department of Justice nor published as an acceptable solution in ADAAG-1991.  According to our conversations, the goal of future remodeling to Central Jail includes installing conventional 30x60 roll-in showers in areas where inmates with mobility disabilities will be housed according to policy.  The units can be constructed within or adjacent to existing facilities that currently have the obsolete California shower. Currently the staff is investigating sources for alternative mobile devices often employed in hospitals and care facilities serving geriatric and rehabilitation facilities housing persons with numerous types of mobility disabilities.

NOTE—The typical foldup shower seat found in gyms, hotels, schools, etc. does not comply with anti-ligature standards since there are numerous places where such devices may be tied, hooked and/or attached.

3. According to Mr. Bennett's photos he shared with me, five single level beds have been installed as a bridge solution in Housing Module 8C to satisfy the requirements.  The required clear floor space is provided at each bed to facilitate a transfer for a wheelchair user.

4. According to my interviews with staff during the inspections including Mr. Bennett, it has been recognized the typical cells are too small and do not accommodate wheelchair users.  Consequently, they have been assigned to

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 27 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

1    dormitories instead.

2         5.        According to my understanding and discussions with staff, persons

3    with mobility disabilities are not separated from other classifications and are not

4    restricted to one dormitory to the exclusion of participating in trustee programs,

5    activities, etc.  According to policy trustees are given assignments as a reward for

6    good behavior.  Their assignment to a particular job is partially based on their

7    ability to perform certain tasks considering their physical condition and potential

8    limitations due to disabilities, such as, mobility, sight impairment, hearing loss, etc.

9

10       SUMMARY OF REVIEW  OF PLAINTIFF REPORT:

11        1.        The plaintiff cites numerous components where their placement or

12   location may deviate from technical and/or dimensional requirements outlined in

13   the applicable ADAS or building code requirements.  As expressed above, many

14   deviations are minor and, in my view, do not expose a person with mobility

15   disabilities to the risk of a slip, trip or fall accident.  In my experience, as an expert

16   having represented both private and public entities and having testified in superior

17   court in such cases, most accidents involving ADA claims or issues pertain to

18   conditions in the path of travel—ramps, stairs, walks, curbs, wheelstops, etc.

19   Having consulted on such issues in 1995, I have never heard that a 1/2" deviation in

20   the toilet offset from the sidewall was the cause or contributed to an accident.

21        2.        Those items that may contribute to an accident may include excessive

22   running or cross slope at ramps or walks, excessive vertical level changes or

23   "lippage" between opposing concrete panels in a walkway, uncaulked expansion

24   joints in walkways, tall door thresholds, improper configuration of handrails at

25   ramps and stairs, etc.

26        3.        As discussed and recommended above, I agree that certain conditions

27   in the walking surface cited in the plaintiff report may contribute to a fall accident.

28   Those items include resolving the steep descent of the floor surface around certain

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 28 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

floor drains in holding cells, incomplete door thresholds at the transition to exterior

recreation areas at the six houses, slope of shower floors to drain that exceed 2%,

etc.  In my view, the number of locations is isolated, not widespread throughout and

not representative of either facility, as a whole.

4.    I recommended to Mr. Bennett that each condition at both facilities

should be repaired to achieve compliance.  I stressed that safety, and reduction of

potential accident risk, is a preeminent concern.  Mr. Bennett agreed that is goal of

the barrier removal program.

5.    The plaintiff report cites numerous standards for components,

elements, amenities, etc. that are required in a typical public accommodation or

publicly owned building to facilitate access for persons with mobility, sight and

hearing disabilities.  Such elements include tactile signage, door hardware,

protruding elements in walkways, vision panels at doors, etc.  These standards are

intended to promote accessibility for persons who may openly and freely navigate

about without limitation or control in such projects as office buildings, shopping

centers, hotels, public buildings open to the public, etc.  As discussed above, due to

policies established by the state and Sherriff's Department, inmates are not guests

who are free to roam about the facility.  The inmates are handcuffed and escorted

everywhere when outside the module in which they are housed.  Staff stated that a

person in a wheelchair is pushed by staff to facilitate safe passage.  Wheelchairs

and mobility aids are available on request.

6.    I recognize that applicable standards address and require inclusion of

those components cited in Item 5 above, however, I also recognize, due to

department policy, that the general population of inmates and persons with

disabilities in particulate will not interact nor benefit from such amenities as tactile

signage, lowered vision panels at doors, lever door hardware configurations, etc.

This is a case where the published ADAS standards and state model code

requirements do not align with local policies to safely operate the facility.  This is

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

- 29 -

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

1    the difference, or conundrum, between the goals expressed in the model codes and

2    policy requirements to operate the facility in a safe and secure manner.

3    7.    To summarize, the work ongoing at Rock Mountain for several years, and

4    recent revisions at Central Jail at Module 8C demonstrate that County of San Diego

5    Sheriff's Department, under the direction of project manager, Scott Bennett, is

6    moving forward and demonstrating good faith to implement the recommendations

7    outlined in various assessments by numerous consultants including myself.

8         I declare under penalty of perjury under the laws of California and the United

9    States of America that the foregoing is true and correct.

10        Executed on May 16, 2023, at San Diego, California.

11

12                                                PAUL JOELSON

13

Burke, Williams &
Sorensen, LLP
Attorneys At Law
san diego

3:20-CV-00406-AJB-WVG
JOELSON DECLARATION ISO OPPOSITION

# EXHIBIT 1

# Joelson Vail Associates LLC

Architects · General Contractors · Forensic Consultants

## PAUL A. JOELSON AIA NCARB CASp ICC

### Architect, General Contractor, Certified Access Specialist & Building Inspector



Mr. Joelson, over the last 25 years, has specialized in the consulting, litigation support, expert witness and reconstruction design services on the following issues:

- CASp Inspections, Reports and Consulting
- ADA Compliance in Civil Rights Litigation over Denial of Access;
- Compliance with State and Federal Accessibility Standards;
- Building Code Compliance;
- Building Envelope and Water Intrusion Failures;
- Design and Construction Defects;
- Contract Disputes and Claims pertaining to Architect, Developer, Builder and Subcontractor Performance;
- Disclosure in Real Estate Transactions;
- Reconstruction Plans, Engineering, Cost Estimates and Construction Management to Implement Reconstruction Programs.

Mr. Joelson's expertise was gained first-hand as a designer and draftsman, construction supervisor and trade craftsman on school and educational projects, retail stores, office buildings, tenant improvements and custom homes in the 70's, 80's and early 90's. Clients included the University of California, San Diego; the State of California, Department of Parks and Recreation; the U.S. Navy; the City of San Diego; major national retailers; real estate developers; and condominium homeowners associations.

After the 1994 Northridge Earthquake, Mr. Joelson, as an architect and construction manager, directed damage assessments, engineering studies, reconstruction planning and cost estimates on behalf of insurance companies and owners of severely damaged properties. The scope of the program included the assessment and reconstruction design to over 150 projects including shopping centers, office buildings, multi-family, and single family projects on behalf of Farmers, Liberty Mutual, Continental, CNA, Prudential, TransAmerica, and AIG Insurance Companies between 1994 and 2003.

Between 1997 and 2000, Mr. Joelson, and partners, provided architectural, cost estimating and consulting services to the Fullerton Joint Union High School District. Projects included conversion of vocational classrooms and shops building into high-tech computer rooms and general classrooms at Troy High School; Remodel of two football stadium to provide disabled access, upgraded seating and press boxes at Fullerton Union High School and La Habra High School; and remodeling and replacement of the bleacher seating in the gymnasium at Sunny Hills High School.

Mr. Joelson has discussed his experience and practice on radio talk shows, during interviews with media representatives, in educational seminars and industry sponsored forums pertaining to numerous architectural and construction topics including building forensics, causes of building envelope failures and compliance with disabled access codes and standards.

# Joelson Vail Associates LLC

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

### Architect, General Contractor, Certified Access Specialist & Building Inspector

In addition, as an AIA certified provider, Paul has provided Continuing Education seminars to licensed architects and construction professionals on ADA and state accessibility codes, design standards and issues of compliance raised in civil rights litigation over denial of access.

## PROFESSIONAL EXPERIENCE:

Joelson Vail Associates LLC—Architects / General Contractors / Forensic Consultants.
Since 1996, a joint-venture member of combined architectural, construction management, and forensics consulting firm specializing in Building Forensics and ADA Compliance.

P.A. Joelson & Co., Inc.—Construction & Development.  President of continuously operating architectural design, consulting and construction firm since 1984.  Company is a joint-venture member of Joelson Vail Associates LLC since 1996.  Projects included consulting on repairs of construction defects, building restoration, and construction of new shopping centers, retail stores, office buildings, multi-use complexes, public works, and single and multi-family residential projects between 1984 and 2001.

Archimatics - Planning and Architecture.  Project manager between 1983-84 provided client coordination, working drawings and specifications, administered project budgets and directed construction administration.  Projects included multi-family residential, restaurants, retail stores and office interiors.

Michael Paul Construction Inc.  Managing general partner between 1980-83, directed design/build and construction firm. Projects included retail stores, specialized military and educational projects including classrooms, university laboratories, medical and dental offices, hospital interiors, and computer rooms.

Paul W. McKim, AIA, Architect & Associates.  Project manager between 1978-80 providing design, document production, structural detailing, and construction administration on medical and health care facilities, city redevelopment projects, and office buildings.  Coordinated consultants and development teams during construction document production and construction administration.

C and C Services Inc., Cucamonga, CA.  Architectural and construction project manager with real estate developer and restaurant operations company between 1974-78.  Assisted in site selection, budgeting, planning, building design, cost estimating, and production of construction documents for commercial, retail and restaurant sites.  Scope included investigations and drawings for on and off-site improvements, buildings, restaurant interiors, and kitchen facilities.  Projects were located throughout southern California.

James Rodney Youngson AIA, Architect.  Draftsman/designer between 1973-74 on 2-custom residential projects and two ocean-front condominium projects in La Jolla, California.

John T. Sigurdson AIA and Associates.  Draftsman/designer between 1971-73 on new church sanctuary and multi-purpose building, professional office building and custom homes in San Diego County.

Brown and Zammitt Electrical Engineering.  Draftsman between 1970-71 on assorted US Navy projects and corporate office buildings in San Diego County.

# Joelson Vail Associates LLC

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

### Architect, General Contractor, Certified Access Specialist & Building Inspector

**EDUCATION:**

Mount San Antonio College—A.A. in Liberal Arts and Sciences, 1970
San Diego State University—A.B. in Liberal Arts, 1971,  Philosophy with Minor in English
Newschool  of Architecture and Design, San Diego—Bachelor of Architecture, 2001

**Additional Studies:**

| | |
|---|---|
| University of California, Berkeley – | Liberal Arts and Philosophy – 1970 |
| University of California, San Diego – | Extension Studies in Architecture and Construction  - 1973-74 |
| San Diego State University – | Extension Studies in Construction Practices and Technology - 1976-77 |
| San Diego Community Colleges— | Studies in Computers, Architecture, AutoCAD, and Commercial Photography – 1989-94 |

**CERTIFICATIONS AND MEMBERSHIPS:**

➢ *Licensed Architect - States of California (C-23998) and Arizona (27627)*
➢ *Member-American Institute of Architects (AIA)*
➢ *Certified by National Council of Architectural Registration Boards (NCARB)—69373*
➢ *Certified Access Specialist—CASp—061 by California Division of State Architect (CA-DSA)*
➢ *Founding Member—Certified Access Specialist Institute (CASI)*
➢ *Certified Accessibility Inspector and Plans Examiner-(0426540-21) by International Code Council (ICC)*
➢ *Certified Building Inspector-(0426540-01 & 10) by International Code Council (ICC)*
➢ *Licensed General Building Contractor – P.A. Joelson & Co., Inc. (B-454727-- California)*
➢ *Licensed General Building Contractor - Joelson/Vail Associates LLC (B-740477 – California)*
➢ *Member- Forensic Expert Witness Association (FEWA)—Orange County/San Diego County*

## Joelson Vail Associates LLC

### PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

**PAUL A. JOELSON AIA, NCARB, CASp and PETER C. VAIL** teamed up over 25 years ago to establish a forensic consulting and construction management firm that would offer a unique approach where each principal would combine their diverse experiences in real estate development, the construction industry and the architectural professions.  With over 90 years of combined experience managing projects throughout California and the southwest, the partners are each a recognized expert in his area of expertise with proven technical and leadership skills in managing forensic investigations.  Their solid experience, and investigative, analytic and skills in testifying have gained the respect of clients and peers.

The firm specializes in providing investigative and forensic services to attorneys, developers, contractors, architects,  insurance companies and property owners.  Services are provided during preconstruction in the form of consulting and plan reviews, quality control inspections during construction and the close-out / punch-list phase, and during litigation in such matters as construction defect claims, ADA compliance, errors and omissions, contract disputes, personal injury claims and real estate disclosure.  Project types include single family dwellings, industrial buildings, mid-rise/high-rise multi-family and mixed-use, public works and commercial projects.

The following is an overview of general services provided by the firm:

### GENERAL CONSULTING AND FORENSIC SERVICES INCLUDE:

➢ Condition Assessments of Distressed Properties and Failed Building Systems
➢ During Real Estate Transactions—Due Diligence Investigations and ADA Assessments
➢ Building Code Analysis and Compliance Inspections
➢ CASp Certified / Accessibility Compliance Assessments per CBC, ADA & ICC/ANSI A117.1
➢ Cost Estimating and Value Analysis for Repairs and New Construction
➢ Architectural Design and Project Specifications for Reconstruction and Repairs
➢ Permit Coordination with Public Agencies, i.e., Planning, Coastal, Zoning, Building, etc.
➢ Delay Claims, Scheduling and Construction Management
➢ Personal Injury Claims Related to Architectural Components
➢ Quality Control—Peer Reviews of Construction Documents and Work in Progress
➢ Inspection and Assessment of Building Envelope Failures, i.e., curtain walls, roofs, sheet metal, windows, doors, exterior finishes, decks, waterproofing, drainage systems, foundations, retaining walls, etc.

# Joelson Vail Associates LLC

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

### CLIENT LAW FIRMS—Partial List

Yunker & Schneider
San Diego, CA.

Morris, Polich, & Purdy
Los Angeles & Orange County, Ca

Rockwood & Noziska LLP
San Diego, CA

Borton, Petrini & Conron
Los Angeles, Newport Beach & San Bernardino

Balestreri, Pendleton & Potocki
San Diego, CA

Law Office of D. Reid Garrey
Scottsdale, AZ

Laskero and Associates
San Diego & Santa Ana, CA

Endeman, Lincoln Turek & Heater
San Diego, CA

Law Office of James Greer
Del Mar, CA

Lewis, D'Amato, Brisbois & Bisgaard
San Diego, Orange County & San Bernardino, CA

Law Office of James Zurawski
Orange, CA

DLA Piper US LLP
San Diego, CA

Neil, Dymott, Perkins, Brown & Frank
San Diego, CA

Kring & Chung
San Diego and Irvine, CA

Prenovost, Normandin, Bergh & Dawe
Santa Ana, CA

Berger Kahn
Irvine & Los Angeles

Gordon & Rees
San Diego, CA

Kolodny & Pressman
San Diego, CA

Schreck Brignon
Las Vegas, NV

Murchison & Cumming
Los Angeles, CA

Law Office of Richard Wianecki
Orange, CA

Smith. Larson & Wixom
Las Vegas, NV

Gordon & Holmes
San Diego, CA

Simpson, Delmore & Greene
San Diego, CA

Hollins & Schechter
Santa Ana, CA

Wingert, Grebing, Brubaker & Ryan
San Diego, CA

**Joelson Vail Associates LLC**

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector



### ADA, ANSI, IBC AND TITLE 24 (CBC) ACCESSIBILITY CONSULTANTS

### CALIFORNIA CASp CERTIFIED COMPLIANCE AUDITS

Under the direction of Paul A. Joelson AIA NCARB CASp, Joelson Vail Associates LLC consults on compliance with the accessibility design standards and code requirements as prescribed by the Americans with Disabilities Act of 1990 (ADA), the International Building Code (IBC), ICC/ANSI A117.1, and Title 24-California Building Code (CBC).

Mr. Joelson's expertise is demonstrated by his unique qualifications as a California and Arizona Licensed Architect, a Certified Access Specialist (CASp-061) regulated by the California Division of the State Architect, and a Certified Building Inspector and Accessibility Inspector / Plans Examiner regulated by the International Code Council (ICC).

Over the last twenty five years, Mr. Joelson has been an ADA design specialist, code compliance consultant and expert recognized by both state and federal courts.  The scope of services has included consulting to architects, developers, public entities, retail businesses and property owners during the planning, construction document and construction phases.  In addition, he has provided litigation support and expert witness services representing such clients in lawsuits over denied access for person with disabilities, design standards of care, design errors and/or omissions, construction defects, personal injury claims and/or contract disputes.

Mr. Joelson has provided design services to modify and construct personal home-care facilities employing universal design principles to accommodate quadriplegic and paraplegic clients injured in a variety of workplace or traffic accidents.

Under authority of Senate Bill 1608, as a CASp Inspector (#061), Mr. Joelson is authorized to provide CASp certified inspections and reports.  Upon completion of an inspection and delivery of a report of findings and recommendations, he is authorized by the State of California, Division of the State Architect (DSA) to issue a watermarked and numbered certificate as evidence of



## PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

such inspections.  The certificate is accompanied by a cover letter with one of two caveats:

1) The premises as inspected are in "Full- Compliance" with the code and standards and the certificate represents that fact;

2) The certificate represents evidence of an CASp inspection, however, "Compliance is Pending" and contingent upon repairs according to the  report.

The goal of the state sponsored program is to provide special benefits to property owners to discourage litigation, and/or streamline a disabled access lawsuit to contain costs and save time by mandating a 90 day stay and directing the parties to meet in an early evaluation conference.



Between 2009 and 2013, Mr. Joelson conducted over twenty (20) seminars and developed coursework on behalf of the American Institute of Architects (AIA) for over 1,500 architects to obtain Mandatory Continuing Education (MCE) units for license renewal as required by the California Board of Architects pursuant to SB 1608.  The courses are also approved to satisfy annual AIA requirements for continuing education on Health, Safety and Welfare (HSW) issues.  The courses cover the history and scope of accessibility laws and standards, differences between state and federal standards, practical applications in design and construction, Design Strategies for Compliance—Practical Applications of Code Requirements, Universal Design, Peer Review Techniques, and the typical "ADA Suspect" assemblies that are the basis for lawsuits claiming civil rights violations and denial of equal access to public accommodations.

In addition, Mr. Joelson has provided seminars and managed discussion groups with various business groups including various Chambers of Commerce in San Diego County, insurance adjusters, industry experts, manufacturer's of accessibility related products, property managers, etc.

**Joelson Vail Associates LLC**

### PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

## OVERVIEW OF JOELSON VAIL ASSOCIATES ACCESSIBILITY COMPLIANCE CONSULTING , INSPECTION AND DESIGN SERVICES

➢ CASp Certified Accessibility Compliance Audits to Private and Public Clients;
➢ Property Inspections, Inspection Reports and Compliance Recommendations;
➢ Transition Plans for Public Entities Covered by Title II;
➢ Expert Witness to Attorneys on Behalf of Public Entities and Private Businesses;
➢ Peer Review of Architectural Plans—Consulting Strategies for Compliance;
➢ Barrier Removal Design, Plans, and Permit Services;
➢ Cost Estimating and Value Engineering for Compliance Strategies;
➢ Third Party Inspections of New Construction and Alterations;
➢ Coordination and Representation with Local Building and Planning Departments;
➢ Training Seminars to Architects, Engineers, Building Inspectors and the Property Management-Facilities Staff of Public  and Private Corporate Entities

## THE APPLICABLE CODES AND STANDARDS ON WHICH JVA CONSULTS

➢ California Building Code—Title 24, (CBC 95, 98, 2001, 2007, 2010, 2013, 2016);
➢ Uniform Building Code (UBC)—Legacy Codes through 1997;
➢ Americans with Disabilities Act Of 1990 (ADA) and the 1991 ADAAG Standards and Supplements (1998—2002);
➢ ADA/ABA Guidelines—2004 and ADAS—2010, FINAL VERSION;
➢ Federal Fair Housing Act (FHA);
➢ ICC/ANSI A-117.1-1998, 2003, 2009 and 2012;
➢ International Building Code (IBC)—2000, 2003, 2006, 2009 and 2012;
➢ California—Office of Statewide Health Planning and Development (PSHPD) Accessibility Regulations pertaining to Hospitals, Assistive Living, Licensed Care Facilities, etc.
➢ Principals of Universal Design as applied in Acute Care and Long Term Care Facilities, and Home Care Facilities.
➢ Principals of Universal Design as applied to Residential and Independent Living Arrangements for Seniors and/or Persons with Disabilities.

# Joelson Vail Associates LLC

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

### PARTIAL LIST—ADA CLIENTS, SCOPE OF SERVICES & FACILITY TYPE:

➢ Windsor Capital—ADA/ CASp compliance consultant to franchise operator upgrading Embassy Suites and Marriott Hotels in California, Georgia and Nevada.

➢ City of Imperial Beach—Consultant to City Attorney regarding compliance of restrooms, parking, paths of travel, and amenities at Veterans Park

➢ City of Solana Beach—Consultant to City Attorney regarding status of accessible parking in various public parking lots and Public Right of Way.

➢ Neiman Marcus Department and Outlet Stores—ADA/ CASp compliance consultant on upgrade of the company's California Stores.

➢ San Diego Trolley District / San Diego MTS  Expert witness and court testimony, accessibility consultant on train-trolley stations, site access and parking;

➢ Providence Tarzana Medical Center, Tarzana, CA  Expert witness, accessibility consultant regarding hospital facilities, multi-building campus/site facilities;

➢ State of California Employment Development Department  Inspection of branch offices and related sites in San Diego county;

➢ San Diego Work Force Partnership  Inspection of office building, training rooms and related sites in San Diego county;

➢ City of San Clemente, CA  Expert witness, accessibility consultant and inspection of city center administration building and site;

➢ San Diego Unified Port District  Expert witness—San Diego International Airport—Terminal 1—paths of travel and entrance doors;

➢ Helix Water District, La Mesa California  Conducted self audit and transition plan of 4 sites including, administration building, treatment facilities, operations center and Lake Jennings campground and boating-fishing facilities;

➢ Buca de Beppo Restaurants  Expert witness, accessibility code consultant and site compliance assessments at various southern California stores;

➢ Cost Plus / World Market  Self-audit and compliance assessment of retail stores throughout California—public and employee sides.  Scope included over 70 stores;

➢ Petco Stores  Conducted CASp inspection relative to entrances, public restrooms, aisles, checkout counters and POS devices;

➢ Levi Strauss Company  Expert witness, forensic consultants and site inspections of mall and outlet center stores (Docker and Levis) throughout California, New York, Florida, Georgia, Alabama, Illinois and Oregon—scope include both public and employee sides;

➢ Target Corporation / Target Stores  Expert witness, building code and accessibility codes consultant and site inspections and store audits in various southern California stores ;

**Joelson Vail Associates LLC**

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

- ➤ Fullerton Joint Union High School District, Fullerton, CA  Architect of record and accessibility consultant on remodeling and upgrades at 7 high schools between 1996-2000—scope included football stadiums, gymnasiums, classroom and physical education facilities;
- ➤ San Diego Padres Baseball Club—Petco Park   Expert witness and consultant regarding stairs, ramps, circulation and paths of travel, etc.;
- ➤ Los Angeles Clippers—Los Angeles Sports Arena  Architect of record regarding upgrades to stairs, ramps, circulation and paths of travel, restrooms, administrative offices, locker rooms, etc.;
- ➤ City of San Diego, CA  Consulted on multiple public park facilities—expert witness and consultants regarding design of public rights of way elements (PROW), etc.);
- ➤ Mandalay Bay Hotel & Casino, Las Vegas   Expert witness and accessibility consultant regarding client rooms, public recreational areas, common area paths of travel, swimming pools, public restrooms, check-in desk, etc.;
- ➤ Monte Carlo Hotel & Casino, Las Vegas  Expert witness and accessibility consultant regarding client rooms and bathing facilities;
- ➤ Luxor Hotel and Casino  Expert witness and accessibility consultant regarding design of accessible guest rooms and supporting bathroom elements, fixtures, etc.
- ➤ Ralph's Supermarkets, Southern California  Expert witness and accessibility consultant regarding site and interior facilities—parking, paths of travel, restrooms, service counters, check-stands and POS devices, etc.—numerous locations in southern California);
- ➤ Party City Stores—Southern California   Expert witness and accessibility consultant regarding site and interior facilities—parking, paths of travel, restrooms, service counters, check-stands and POS devices, etc.—various locations in San Diego county;
- ➤ NewSchool of Architecture and Design—San Diego   Conducted CASp accessibility audit and developed transition plan for school, included 30+ classrooms, 19 restrooms, elevators, paths of travels, directional signage, administrative offices, etc.;
- ➤ Yoshinoya Beef Bowl Restaurants—Southern California   Expert witness and accessibility consultant regarding site and interior facilities including parking, sales counters, seating and restrooms—various locations;
- ➤ Del Taco Restaurants, Southern California   Expert witness and accessibility consultant regarding site and interior facilities including parking, sales counters, seating and restrooms—numerous locations throughout southern California;
- ➤ City of San Marcos, CA   Expert witness and accessibility consultant regarding major city park and facilities and public right of way improvements throughout city;

# Joelson Vail Associates LLC

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

### Architect, General Contractor, Certified Access Specialist & Building Inspector

➢ <u>City of Encinitas, CA</u>   Designed quality control program and inspection checklist for assessment of curb ramps and other PROW elements.  Conducted teaching seminars to public works and city engineering staff to implement inspection procedures for both public and private contracts;

➢ <u>Pizza Hut Restaurants, San Diego and Imperial Counties, CA</u>  Expert witness and accessibility consultant regarding site and interior facilities including parking, sales counters, seating and restrooms;

➢ <u>Subway Restaurants, Southern California</u>   Expert witness and accessibility consultant regarding site and interior facilities including parking, sales counters, seating and restrooms;

➢ <u>Frye's Electronics, Southern California</u>   Expert witness and accessibility consultant regarding site and interior display and sales facilities;

➢ <u>Grossmont Shopping Center, La Mesa, CA</u>  Expert witness and accessibility consultant regarding site accessibility and disabled access parking;

➢ <u>Honda Center—Anaheim, CA</u>   Consultant and expert to City of Anaheim regarding claims of non-compliant conditions pertaining to stadium seating, restrooms, ticket counters, food service and bar counters, amenities, and seating;

➢ <u>St. Mary's Hospital and Medical Center—Apple Valley, CA</u>  Consultant and expert on case filed pertaining to interior facilities at emergency room and accessible parking;

➢ <u>Grossmont High School District—La Mesa, CA</u>   Consultant and expert for school district on accessibility issues raised regarding accessibility parking, and access to and accessible seating at El Capitan High School football stadium in Lakeside, CA;

➢ <u>Sweetwater High School District—Chula Vista, CA</u>   Consultant and expert for school district on accessibility issues raised regarding accessibility parking, and access to and accessible seating at Rancho Bonita High School football stadium in Chula Vista, CA;

➢ Consultant to numerous owners and developers of "covered housing projects" – apartments, student housing and mixed-used projects subject to (Title 24-CBC—Chapter 11A—Accessible Housing Requirements);

➢ Consultants and Experts to Numerous Real Estate Investment Trusts (REIT's)—Consultant and expert to owners and managers of office buildings and parks, regional and neighborhood shopping centers and industrial parks.  Issues include site accessibility and parking, and interior facilities including circulation, restrooms, etc.;

➢ Consultants and Experts—Consultant and expert to numerous individually owned southern California retail outlets, office buildings, shopping centers, professional

 **Joelson Vail Associates LLC**

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

### Architect, General Contractor, Certified Access Specialist & Building Inspector

buildings, medical offices, etc.  Issues include site accessibility and parking, and interior facilities including circulation, restrooms, etc.;

## FACILITY OR BUILDING TYPES:

Joelson Vail Associates LLC provides ADA compliance assessments, accessibility-universal design, transition plans and reconstruction management services on the following building types and program uses:

➢ Public Buildings—Municipal and State
➢ Public Schools and Related Sites;
➢ City Parks and Recreation Facilities;
➢ Municipal and School Playgrounds;
➢ Public Campgrounds and Picnic Areas;
➢ Public and Private Parking Lots and Garages (Above and Below Grade)
➢ Municipal Rights of Way—Streets, Sidewalks, Bike Lanes, Paths of Travel, etc.;
➢ Swimming Pools and Spas;
➢ Health Clubs and Gyms;
➢ Lakes—Boating and Fishing Facilities;
➢ Shopping Centers—Retail Stores and Food Courts;
➢ Restaurants and Bars;
➢ General Retail—Food Stores, Clothing, General Merchandise, etc.;
➢ General Office Buildings and Interiors;
➢ Medical Buildings and Interiors;
➢ Motel and Hotel Guest Rooms;
➢ Hotel and Casino Facilities—Las Vegas;
➢ Multi-Family Projects—Apartment Buildings, Condominiums;
➢ Mixed-Use Projects—Residential, Office and Retail Combined;
➢ Hospital and Rehabilitation Facilities,
➢ Sports Arenas and Public Sports Stadiums;
➢ Single Family Residences—Universal Design Consulting and Retrofitting of Properties for Seniors, Quadriplegics and Paraplegics.

# Joelson Vail Associates LLC

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

### HISTORY OF TESTIMONY PROVIDED—2010 TO DATE

KEY—Court/Deposition Testimony Provided with ADA Issues Highlighted

    A.  Depositions (D x Days-Full or Partial);
    B.  Trial (T x Days-Full or Partial);
    C.  ADA (Includes Federal ADA Compliance, FHA or State Housing Accessibility Code Compliance (Chapter 11A), California Building Code Accessibility Compliance (Chapter 11B), ANSI Standards,  International Building Code (Chapter 11), and/or Accessibility-Universal Design Issues)

PARTIAL LIST OF RECENT CASES WHERE TESTIMONY WAS PROVIDES SINCE 2012:

1. Durant vs. Ramparts (Luxor Hotel and Casino) (Dx1) (ADA)

2. Grande South HOA vs. Bosa Development of California (Dx1)

3. Horizons vs. Bosa Development of California (Dx1)

4. Jolon-Puac vs. Jefford, et al (D x 1) (ADA)

5. JJM Resorts vs. J.W. Stratton (T x 1)

6. Young vs. Zarians, et al (D x 1) (T x 1) (ADA)

7. Miller vs. General Motors, et al (D x 1) (ADA)

8. Beck vs. Providence Tarzana Medical Center (Tx1) (ADA)

9. Hurtado vs. Century Housing, et al (D x 1) (ADA)

10. Romaine vs. San Diego MTS / San Diego Trolley (D x1) (T x 2) (ADA)

11. Seaton vs. City of San Marcos (D x1) (ADA)

12. Porto Siena HOA vs. InterCorp, et al (D x 7) (ADA)

13. Price Charities vs. Martinez and Cutri, et al (D x 6) (ADA)

14. Rodriquez vs. Cake Trust (T x 1) (ADA)

15. Elliman vs. Tourian (D x 1)

16. Sturgeon vs. Milcon Services (D x 4)

17. Smith vs. Byrnes ( D x 1)

18. Chait vs. Strauch (D x 4) (T x 2)

# Joelson Vail Associates LLC

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

### Architect, General Contractor, Certified Access Specialist & Building Inspector

19. San Diego Zoological Society vs. Nielsen Construction, Tucker Sadler Associates, et al (D x 4) (ADA)

20. Villa Bay HOA, et al vs. Luben Walchef, et al (D x 4) (T x 1) (ADA)

21. Michael York vs. Jacobson (D x 1) (T x 1)

22. Lehman vs. Bondy (D x 1)

23. Neighborhood Management Services vs. Island Dental, et al (D x 1) ( T x 1) (ADA)

24. Treehouse v. Eide (D x1) (Tx1) (ADA)

25. Winslow vs. Kingsbury (Dx1) (Tx1)

26. Tang vs. Arena Associates / Staples Center (Dx1) (Tx1)

27. Lammey vs. WGSL-2 (Church's Chicken) (Tx1 in Federal District Court / Los Angeles) (ADA)

28. Malave vs. City of Los Angeles (Third Party Complaint against General Contractor/Architect) (Dx1) (Tx1 in Federal District Court / Los Angeles) (ADA)

29. Montoya v City of San Diego – ADA Claim against City Regarding Scooters in PROW (Dx1)

# EXHIBIT 2

U.S. Department of Justice
Civil Rights Division
*Disability Rights Section*



---

**Americans with Disabilities Act**
**Section 504 of the Rehabilitation Act**

# ADA/Section 504 Design Guide:
# Accessible Cells in Correctional Facilities

---

Many inmates in State and local correctional facilities have mobility disabilities and need to be housed in accessible cells. Yet, many correctional facilities do not have enough cells that are accessible to inmates with disabilities. Federal laws protect people with disabilities from discrimination by State and local governments, including entities that own or operate correctional facilities. All such entities are covered by the Americans with Disabilities Act of 1990 (ADA), and those that receive Federal funds are also covered by section 504 of the Rehabilitation Act (Section 504).[1] These laws prohibit discrimination against persons with disabilities, including inmates who use wheelchairs, walkers, or other mobility devices. While all aspects of law enforcement and correctional services are covered by these laws - including facilities, employment, transportation, and other activities, programs, and services - this guide focuses on the prevention of discrimination against inmates with mobility disabilities through the design of accessible cells.

**Security**
Accessible cells do not compromise the security of prison personnel. In fact, having accessible cells increases security because they allow inmates with mobility disabilities to function independently, minimizing the need for assistance from corrections officers.

**Basic Features**
Inmates with disabilities - including those who use wheelchairs - need to be able to enter their cells and move around inside them, using the cells' features without assistance. What makes this possible? Careful planning and design will incorporate elements such as a wider entrance door, adequate clear floor space, appropriate placement and models of fixtures and furniture, and grab bars.

**Location or Dispersion of Cells**
Dispersing accessible cells throughout a facility ensures that inmates with disabilities are able to be housed with inmates of the same classification levels. Generally, inmates with disabilities who are not ill do not need to be housed in medical areas unless they are receiving medical care or treatment.

**Furniture and Cell Features**
Accessible cells need to contain the same features as other cells for inmates housed at the same classification level. For instance, where other cells contain writing desks, accessible writing desks are needed in accessible cells.



**Clear floor spaces for inmates who use mobility devices**

## Room Layout and General Features



**Drawing Notes:**

1. Accessible toilet with rear and side grab bars, clear floor space for wheelchair transfer, and an accessible flush valve.

2. Accessible lavatory with knee and toe space below, faucet controls usable with a loosely closed fist, clear floor space for front approach, and lowered mirror.

3. Doors with 32 inches of clear opening width (when a sliding door is fully opened or a hinged door is open 90 degrees). Clear floor space is required in front of the door.

4. Desk with knee and toe space and clear floor space for front approach.

5. Bed with clear floor space for a side approach next to bed.


Appropriate clear floor space (shown by dashed lines) is needed adjacent to each cell feature (see page 1 diagrams on clear floor space). As shown in this drawing, the clear floor spaces for each element may overlap. Inmates with a mobility disability should be able to use, and move without obstruction among, the easily accessible features of their cells. There needs to be adequate turning space within the cell -- either a 60-inch-diameter circle or a T-shaped turn area. (See diagrams on turning space.)


**Note:**

Some features shown in this document may be inappropriate for cells where inmate suicide is a concern. See the notes for features specifically designed to minimize suicide risk, while providing accessibility for inmates with mobility disabilities.

## Features of an Accessible Toilet



**Drawing Notes:**

1. Side grab bar: There is a grab bar on the adjacent side wall that is at least 42 inches long and from 33 to 36 inches above the floor.

2. Rear grab bar: There is a grab bar behind the toilet that is at least 36 inches long and from 33 to 36 inches above the floor.

3. Flush valve is located in reach range and is operable without tight grasping, twisting, or pinching.

4. Toilet seat height: The toilet seat needs to be from 17 to 19 inches above the floor to permit transfers to and from wheelchairs.

5. Toilet centerline: The toilet bowl needs to be centered 16 to 18 inches from the side wall,[2] so that inmates with disabilities can use the side grab bar.

6. Clear floor space: Adequate space is provided to approach the toilet from a variety of wheelchair transfer positions (i.e. diagonal or side approaches). Generally, the toilet needs to be placed within a 60-inch-wide by 59-inch-deep clear area of the floor.

**Note:**

Grab bars can be designed so they do not increase suicide risk. As shown, there are several ways for grab bars to be designed with adequate gripping surfaces, while ensuring that nothing can be tied onto them.



1. Profiles of accessible grab bars with suicide prevention feature.

**Note:**

In every instance, regardless of toilet and lavatory configuration, adequate space needs to be provided for inmates who use wheelchairs to transfer onto and off of the toilet.

**Features of Accessible Lavatories and Mirrors**



**Drawing Notes:**

1. Faucets: Faucet handles or controls need to be usable with one loosely closed fist, because some people with disabilities can use only one hand and cannot grasp or twist faucets. Lever-operated, push-type mechanisms, and U-shaped handles are acceptable designs.

2. Mirrors: If provided, mirrors need to be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the floor.

3. Lavatory knee clearance: To allow persons who use wheelchairs to pull under the lavatory and to use the faucet hardware, the following features need to be provided -- a 27-inch-high clearance under the front edge of the lavatory,[3] the top of the bowl mounted no higher than 34 inches above the floor, a 27-inch-high clearance for knee space extending at least 8 inches from the front of the lavatory, and a 9-inch-high toe space extending not more than 6 inches from the back wall.

4. Burn protection: To protect against leg burns, hot water and drain pipes need to be covered or otherwise configured to protect against contact. Some people with disabilities have little or no sensation in their legs and can be burned without knowing it.

5. Clear floor space is needed for a forward approach to the lavatory.

**Features of Accessible Furniture**



**Drawing Notes:**

1. Desk size: If provided, the writing surface of desks and writing tables is no higher than 34 inches. To provide adequate knee and leg clearance, desks and writing tables need to have at least 30 inches of knee width, 29 inches of knee height, and 19 inches of leg depth.

2. Beds: Providing beds at an appropriate height, generally from 17 to 19 inches, facilitates transfers to and from wheelchairs. In some cases, an appropriately mounted grab bar can assist an inmate to transfer between the bed and a wheelchair.

3. Desk clear floor space: If provided, desks and writing tables need to have a 30-inch by 48-inch clear floor space that extends 19 inches under the desk and any fixed seat needs to be removable.

4. Bed transfer space: A 30-inch by 48-inch clear floor space facilitates transfer from a wheelchair to the bed.

All furniture placed in accessible cells for the use of inmates with disabilities needs to be accessible.



60-inch (1525mm) Diameter Space and T-Shaped Space for 180 Degree Turns

For more information about the
Americans with Disabilities Act (ADA), please visit the Department of Justice's Home Page, archive.ada.gov, or call us on the ADA Information Line.

800-514-0301 (voice)
833-610-1264 (TTY)

Reproduction is encouraged.

---

1 While the accessibility standard for new construction and alterations under the ADA is the 2010 ADA Standards for Accessible Design (the 2010 ADA Standards), the accessibility standard for new construction and alterations under section 504 is the Uniform Accessibility Standards (UFAS).  While most of the requirements are the same under both sets of standards, we have noted some differences between the two, where applicable.

2 Under UFAS, the toilet bowl centerline must be 18 inches from the side wall.

3 UFAS provides for a 29-inch high clearance.

The Americans with Disabilities Act authorizes the Department of Justice (the Department) to provide technical assistance to individuals and entities that have rights or responsibilities under the Act. This document provides informal guidance to assist you in understanding the ADA and the Department's regulations.

This guidance document is not intended to be a final agency action, has no legally binding effect, and may be rescinded or modified in the Department's complete discretion, in accordance with applicable laws. The Department's guidance documents, including this guidance, do not establish legally enforceable responsibilities beyond what is required by the terms of the applicable statutes, regulations, or binding judicial precedent.

ADA Homepage

February 25, 2020