Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600
San Diego, California 92101-8474
Tel: 619.814.5800 Fax: 619.814.6799

Elizabeth M. Pappy (SBN 157069)
E-mail: epappy@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Suite 1000
San Jose, California 95113-2336
Tel: 408.606.6300 Fax: 408.606.6333

Attorneys for Defendant
COUNTY OF SAN DIEGO

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DARRYL DUNSMORE, ERNEST
ARCHULETA, ANTHONY
EDWARDS, REANNA LEVY, JOSUE
LOPEZ, CHRISTOPHER NELSON,
CHRISTOPHER NORWOOD, and
LAURA ZOERNER, on behalf of
themselves and all others similarly
situated,

                Plaintiffs,

        v.

SAN DIEGO COUNTY SHERIFF'S
DEPARTMENT, COUNTY OF SAN
DIEGO, CORRECTIONAL
HEALTHCARE PARTNERS, INC.,
TRI-CITY MEDICAL CENTER,
LIBERTY HEALTHCARE, INC.,
MID-AMERICA HEALTH, INC.,
LOGAN HAAK, M.D., INC., SAN
DIEGO COUNTY PROBATION
DEPARTMENT, and DOES 1 TO 20,
inclusive,

                Defendants.

Case No. 3:20-cv-00406-AJB-DDL

**DECLARATION OF JULIAN
MARTINEZ IN SUPPORT OF
DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

District Judge Anthony J. Battaglia

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

4893-3459-9267 v2

1

Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

I, JULIAN MARTINEZ, declare as follows:

1. I am a competent adult and make this Declaration of my own free will. If called to testify to the facts stated herein, I could and would competently do so as they are within my own personal knowledge or professional expertise.

2. I have served as an independent Americans with Disabilities Act expert for the past five (5) years. I have also been a consultant and senior consultant at Sabot Consulting (Criminal Justice Division) for the past eight (8) years. I am now assigned to the position of Director for the Criminal Justice Division at Sabot Consulting, in Folsom, California, 95630. I am a recognized expert in the field of state prison and county jail/detention facility operations, with a 35-year history including 28 years as an employee of the California Department of Corrections (CDCR) and afterward as a consultant. During my career, I studied and developed an understanding of the requirements imposed by the ADA on correctional systems. I also assessed and developed compliance programs to meet the ADA's requirements. Over the last approximately eight (8) years, I have provided consulting services for state prisons, county jails, and local detention facilities, with a particular focus on compliance with Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, 28 CFR § 35.130, 28 CFR § 35.160, and other federal and state disability laws and regulations. Some of the services were a result of litigation, and others were to conduct a gap analysis in hopes of preventing litigation and/or assisting the agencies in identifying gaps or areas of concern (*e.g.*, evaluation of compliance with California Code of Regulations [CCR] Title 15; review of local policies, procedures, and post orders; and evaluations of compliance with ADA Title II, Section 504 of the Rehabilitation Act, and other federal and state laws). I have served (and currently serve) as a court-appointed neutral monitor in several state prison and county jail/detention facility class action ADA litigation cases. I have also been retained by and provided related services for plaintiffs' counsel and defendants' counsel in different cases as an expert witness. Aside from disability-related litigation,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4893-3459-9267 v2                    2                    Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

as a consultant (now Director), I have provided consulting services (including gap analysis reviews) for overall jail safety and security operations; conditions of confinement; use-of-force; and Lesbian, Gay, Bisexual, Transgender, Queer, and/or Questioning, and Intersex (LGBTQI) program reviews. My work history and expertise also extend to the provision of healthcare (medical and mental health) from a programmatic and non-clinical perspective.

3.      My experience working in prison administration over the past 35 years provides me with additional expertise to testify in this matter as an expert witness. Prior to working as a consultant for Sabot Consulting, I was employed by the California Department of Corrections and Rehabilitation (CDCR) from 1986-2014. From 1986-2014, I was assigned to work in four different California prisons. I was promoted through the ranks, working as a Correctional Officer at California State Prison-Solano, Correctional Sergeant at Wasco State Prison and the California Medical Facility, and as a Sergeant Instructor at the Basic Correctional Officers Academy. I served as a Correctional Lieutenant at Valley State Prison for Women and the Institutions Division at CDCR Headquarters, served as a Correctional Counselor II Specialist at CDCR's Headquarters, and served as a Facility Captain at the California Medical Facility (CMF). At CMF, I managed the Enhanced Outpatient Housing Unit, and in cases where incarcerated persons exhibited suicidal ideations and/or suicide attempts, I ensured these cases were referred to the Mental Health staff for risk assessment. I also served as the Chief of the Health Care Placement Unit in the Division of Correctional Healthcare Services and as the Chief of Court Compliance in the Office of Audits and Court Compliance. As the Chief of Court Compliance, I was CDCR's subject matter expert for the ADA and provided guidance to CDCR's executive and line staff. While assigned as the Chief of the Health Care Placement Unit, I was responsible for coordinating the placement of incarcerated persons into Mental Health Crisis Beds with the mental health staff from all of the 32 California State Prisons in cases where placement into a higher level of care was

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4893-3459-9267 v2                              3                    Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

ordered due to incarcerated persons exhibiting suicidal ideations or suicide attempts. While assigned as the Chief of the Office of Audits and Court Compliance, I provided managerial oversight for CDCR's major litigation compliance unit. I have developed, implemented, and conducted compliance reviews/audits in the areas of Security, Administrative Segregation, Inmate Discipline, Appeals, Classification, Mailroom, and Escape Prevention. As the Chief of Court Compliance, I developed and implemented compliance review/audit instruments and methodologies, as well as a training curriculum with respect to Federal class action litigation. Specific class action cases included *Armstrong v. Brown*, 94-cv-02307 CW (N.D. Cal.) (physical and cognitive disabilities such as mobility, vision, hearing, speech, learning disabilities, and kidney disease) and *Clark v. California*, No. C 96-1486-CRB (N.D. Cal.) (cognitive and adaptive support disabilities, including intellectual disability, Cerebral Palsy, Epilepsy, and Autism). Other managerial responsibilities included working collaboratively with internal and external stakeholders to ensure departmental compliance with Federal court-ordered remedial plans and injunctions in CDCR's class action litigation cases *Lancaster v. Tilton*, No. C 79-01630 WHA (N.D. Cal.) (conditions of confinement for condemned incarcerated persons), *Gilmore v. State of California*, No. 3:66-cv-45878 (N.D. Cal.) (access to law library services), *Valdivia v. Davis*, No. 2:94-cv-00671 (E.D. Cal.) (parole revocation due process), and *Farrell v. Cate*, No. RG 03079344 (California state court) (conditions of confinement in the juvenile facilities). My knowledge and experience encompass a variety of policy and procedure areas for prison and jail operations and programs.

4.    I have served as a joint neutral corrections operations expert/monitor as it relates to ADA, LGBTQI, and COVID-19 non-clinical inspections. Cases in which I was appointed to and currently serve or have previously served as a neutral monitor or inspector include the following:

- *McBride v. Michigan Department of Corrections*, No. 2:15-cv-11222 (ED Mich.) (current)

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4893-3459-9267 v2                                    4                        Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

- o Deaf and Hard of Hearing
- *Hernandez v. County of Monterey*, No. 5:13-cv-02354-PSG (N.D. Cal.)
  - o All disabilities
- *Babu v. Ahern*, (County of Alameda) No. 18-cv-07667-NC (N.D. Cal.) (current)
  - o Mental illness, intellectual disabilities, learning disabilities
- *Cole v. County of Santa Clara* No. 5:16-cv-06594 (N.D. Cal.) (current)
  - o Mobility disabilities
- *Criswell v. Boudreaux*, (County of Tulare) No. 1:20-cv-01048-DAD-SAB (E.D. Cal.)
  - o COVID-19
- *Murray v. County of Santa Barbara*, No. 2:17-cv-08805-GW-JPR (C.D. Cal.) (current)
  - o All disabilities
- *Jewett v. County of Shasta, et.al*, No. 2:13-cv-0822 MCE (E.D. Cal.) (current)
  - o Mobility disabilities
- Orange County (Pre-litigation agreement) (current)
  - o All disabilities, restrictive housing, and LGBTQI

I am also currently serving as one of the plaintiffs' experts in the case of *Faour Abdallah Fraihat v. US Immigration and Customs Enforcement; US Department of Homeland Security*, Case No. 19-cv-01546 (C.D. Cal.), a case related to disabled detainees housed in the jurisdiction of the US Immigration and Customs Enforcement; US Department of Homeland Security and contracted facilities.

5.     I have prepared expert reports in the cases of *Jeremy Jones v. Ballesteros et al.,* Case No. 2:10-cv-02661 (E.D. Cal.); *Everett Joseph Jewett v. County of Shasta et al.*, 2:13-cv-0882 –MCE (E.D. Cal.); *Leon Thomas v. Francisco Quintana, et al.* CV-10-02671 JGB-CW (C.D. Cal.); *Norbert v. San Francisco County Sheriff's*

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

4893-3459-9267 v2

5

Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

*Department, City and County of San Francisco*, Case No. 3:19-cv-02724 SK (N.D. Cal.); *Maxwell v. Outagamie County* No.: 2:20-CV-0386-WED (ED Wis.) and *Ricardo Harris, et al. v. Georgia Department of Corrections, et al.*, Case No. 5:18-cv-365-TES (MD Ga.). I have testified as an expert by deposition in the past four years in the cases of *Norbert v. San Francisco County Sheriff's Department, City and County of San Francisco,* Case No. 3:19-cv-02724 SK (N.D. Cal.), and *Maxwell v. Outagamie County*, No. 2:20-CV-0386-WED (ED Wis.).

6.     A true and correct copy of my Curriculum Vitae is attached hereto as **Exhibit 1**.

7.     I reviewed the following documents, resources, and/or files provided by defense counsel for the County of San Diego:

    a)     Declaration of Syroun Sanossian in Support of Plaintiffs' Motions for Preliminary Injunction and Provisional Class Certification—*Dunsmore, et al. v County of San Diego*;

    b)     San Diego County Sheriff's Department Appliance and Prosthesis Authorization;

    c)     San Diego County Sheriff's Department Medical Services Division, Operations Manual E.2.1 Receiving Screening;

    d)     San Diego County Sheriff's Department Medical Services Division, Operations Manual MSD.F.1.2 Lower Bunk/Lower Tier;

    e)     San Diego County Sheriff's Department Medical Services Division, Operations Manual MSD.P.7 Prostheses, Orthoses and Other Aids to Impairment;

    f)     San Diego County Sheriff's Department Detention Services Bureau – Manual of Policies and Procedures, M.39 Disabled Incarcerated Persons;

*///*

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4893-3459-9267 v2

6

Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

g)    TechCare Questions at Receiving Screening related to disability;

h)    San Diego County Sheriff's Department ADA Function Performance;

i)    Americans with Disabilities Act Title II Regulations (October 11, 2016).

8.    As a Title II public entity, the County of San Diego Sheriff's Department is obligated to abide by the requirements of the Americans with Disabilities Act Title II Regulations.

9.    According to CFR § 35.130 (a) "No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."

10.    According to CFR § 35.130 (b) 1, A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability:

(i)    Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;

(ii)    Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii)    Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

(iv)    Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

4893-3459-9267 v2                    7                    Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

aids, benefits, or services that are as effective as those provided to others;

(v)   Aid or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program;

(vi)   Deny a qualified individual with a disability the opportunity to participate as a member of planning or advisory boards; - (vii) Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

11.   According to CFR § 35.160 (a)(1), A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others.

12.   According to CFR § 35.160 (b)(1), A public entity shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity.

13.   In February 2023, I was retained by the San Diego County Sheriff's Department to conduct a review and make recommendations to the San Diego County Sheriff's Department Detention Services Bureau Manual of Policies and Procedures, Facility Green Sheets, and Medical Services Division Operations Manual related to the requirements of the Americans with Disabilities Act Title II Regulations. The Manuals, Policies, and Procedures consisted of 2,659 pages.

///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4893-3459-9267 v2

8

Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

14.     I completed my review and provided the San Diego County Sheriff's Department with comments and recommended changes in addition to sample policy language for an Effective Communication Policy, Comprehensive ADA Policy, ADA Grievance and Request for Accommodation Policy, Incarcerated person ADA Orientation, and Sample Disciplinary Process. The sample policies provided were based on policies other California Jails have implemented related to the requirements of the ADA Title II Regulations. The County is in the process of revising the Operations Manuals and Procedures based on my recommendations.

15.     I also conducted a site visit of the San Diego Central Jail (Central Jail) on May 4, 2023, to familiarize myself with the intake screening process, including the medical intake screening and the housing placement process. During the site visit, I also observed the bunk/cell configurations of the Central Jail.

16.     All individuals processed into the Central Jail receive an initial medical intake screening as part of the intake/booking process, which is conducted by a Registered Nurse. The Medical Intake Screening process includes the following disability-related screening questions;

   a.     Are you a client of the Regional Center for the developmentally disabled, or have you been in special education classes in school?

   b.     Does the inmate have issues with mobility (Cane, Wheelchair, Prosthetics, Crutches, Splints)?

   c.     Does the individual have other limitations like hearing, visual, communication?

17.     San Diego County Sheriff's Department Medical Services Division, Operations Manual E.2.1 Receiving Screening IV O, states, "The RN will note all applicable patient flags including but not limited to pertinent durable medical equipment (DME), disability accommodation or necessary precautionary measures in the health record."

///

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

4893-3459-9267 v2                              9                    Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

18.    During the on-site tour, I viewed the "Flag Selection" in TechCare and noted the following ADA/Disability/Accommodations-related flags that can be selected by the intake nurse:

a.    ADA Learning

b.    ADA Mobility

c.    ADA Special Needs

d.    ADL RCC

e.    Amputee

f.    Armstrong

g.    ASL

h.    Assistive Device

i.    Blind

j.    Blind Tapping Cane

k.    Cane

l.    Communications

m.    Crutches

n.    Dementia

o.    Developmentally Disabled

p.    Egg Crate Mattress

q.    Extra Blanket

r.    Extra Blanket

s.    Handicap Cell

t.    Hearing

u.    Hearing Aid

v.    Hearing Impaired

w.    Interpreter Services

x.    Lower Bunk

y.    Lower Bunk/Lower Tier

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4893-3459-9267 v2                                          10                      Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

z.     Lower Tier

aa.    Needs help reading

bb.    Needs help writing

cc.    Orange Shoes

dd.    Prescription eyewear

ee.    Prosthesis eye

ff.    Prosthesis limb

gg.    Prosthesis devices

hh.    Prosthetics

ii.    Sling

jj.    Special cuffing

kk.    Speech impediment

ll.    Splint

mm.    Stroke

nn.    TTY/TDD access

oo.    Vision impaired

pp.    Walker

qq.    Wheelchair

rr.    Wheelchair JIMS

19.    Based on the results of the initial medical intake screening, the registered nurse temporarily approves the accommodation, and all incarcerated persons who have a flag designation are scheduled for a medical provider appointment. The San Diego County Sherriff's Department Medical Services Division, Operations Manual E.2.1 Receiving Screening V, states, Nurse Assessment Protocol is as follows:

(1)    Perform a focused physical assessment based on the individual's clinical presentation.

(2)    Initiate appropriate nursing assessment protocol as indicated.

///

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

4893-3459-9267 v2                    11                    Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

(3)    Schedule necessary medical chart review for medication ordering or doctor sick call for further evaluation and treatment.

20.    During the Medical Provider's evaluation/sick call, the Medical Provider will approve the accommodation(s), modify the accommodation(s), order additional accommodations, or discontinue the accommodation based on the evaluation. The evaluation/sick call is conducted within ten days of the incarcerated person's arrival.

21.    Once the "Flag" is entered in TechCare, the flag is automatically shared with the San Diego County Sheriff's Detention Custody staff as TechCare is interfaced with the San Diego County Sherriff's Detention Jail Information Management System (JIMS).

22.    Following the medical intake screening process, the incarcerated person begins the custody intake process, which includes search, booking, identification, property, and classification. During the classification process, the classification staff reviews the ADA Flags in JIMS, which include any of the "Flags" temporarily approved by the medical intake nurse. In the event the incarcerated person has a lower bunk/lower tier housing restriction (Flag), the classification staff will note this on the incarcerated person's face card, which follows them to the housing unit deputy workstation.

23.    Following the search, booking, identification, property, and classification process, the incarcerated person is moved to the upper floors for housing based on the classification case factors. The housing deputy, where the incarcerated person is assigned, assigns the incarcerated person to a bunk/cell/bed. The assignment is made within the JIMS housing assignment screen.

24.    During the on-site tour, I observed a demonstration of the housing assignment process. I then asked the deputy to assign an incarcerated person with a lower bunk/lower tier "Flag" to an upper bunk. When the deputy attempted to assign the incarcerated person with a lower bunk/lower tier housing restriction (Flag) into an upper bunk, I noted the following "Bed Alert" was displayed on the screen: "Inmate

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4893-3459-9267 v2

12

Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

1  has Lower/Bunk/Tier medical instructions. The assigned bed does not meet the

2  required criteria." The JIMS bed assignment function provides an alert to the housing

3  deputies in the event they inadvertently attempt to house an incarcerated person with

4  a lower bunk and lower tier restriction in an inappropriate bunk/bed.

5      25.    Based on my correctional experience, I am aware that at times

6  incarcerated persons relocate from their assigned bunk/bed assignments without the

7  custody staff's approval and knowledge based on jail "politics" (racial and ethnic).

8  Incarcerated persons may identify certain bunks/beds as belonging to specific racial

9  groups and being housed in areas that are not designated for a specific race is not

10  allowed based on these incarcerated persons' own rules.  It is my understanding based

11  on discussions with County jail staff is that deputies conduct audits on where

12  incarcerated persons are actually bunking, and if someone with a lower bunk is found

13  in a different/higher bunk, they will be moved and reminded of their bed assignment.

14  (This audit process is described more fully in the following paragraph.)

15      26.    After a review of the Declaration of Syroun Sanossian, I have the

16  following comments/responses:

17      a)    Ms. Sanossian states that Defendant's Policies, Procedures, and Practices

18  for Housing People With Mobility Disabilities are Dangerous.

19      I disagree.  It is my expert opinion that the current San Diego County Sheriff's

20  Department Detention Services Bureau Manual of Policies and Procedures, Facility

21  Green Sheets, and Medical Services Division Operations Manual include a process

22  for the County to identify appropriate housing accommodations for incarcerated

23  persons with Mobility Disabilities. In addition, the medical intake screening process

24  and the follow-up Medical Provider evaluations identify the housing accommodations

25  needs of Mobility Disabled incarcerated persons (Lower Bunk/Lower Tier/Handicap

26  Cell). Once identified, the County has a mechanism in place to alert the custody

27  housing unit staff of the housing restrictions (Flags), and JIMS includes a process in

28  which staff is alerted when attempting to house an incarcerated person in a bunk/bed

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

4893-3459-9267 v2                           13                    Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

that is inconsistent with their Mobility Disabled housing accommodations needs. The County also reported, and I confirmed that at the beginning of every shift, the housing unit deputies conduct a visual and electronic Lower Bunk/Lower Tier Discrepancies Report/Audit within JIMS and based on their observations in the units in order to identify any incarcerated person who is housed inconsistently with their Lower Bunk/Lower Tier housing restrictions. In the event cases are identified, they are rehoused as appropriate. I also noted that the Low Bunk/Low Tier Review is electronically logged with the date, time, facility, area, number of cases out of compliance, and the staff member's name who conducted the review.

b)      Ms. Sanossian states that "Cells at the Jail that I inspected typically include double or triple bunks, with two or three beds stacked in a cell.

I inspected all of the dormitory housing at Central Jail, in which triple bunks were provided exclusively." During my on-site tour, I observed that the cells included triple bunks, and the dorms have both triple and double bunks, not exclusively triple bunks.

c)      During the on-site tour, the County reported that during the week of May 8, 2023, the County would be removing some of the double bunks in modules 8C and 8D of the Central Jail and replacing them with single beds, for use by Mobility Disabled incarcerated persons who are prescribed wheelchairs. Additional stools will also be removed from the dayroom tables this month to provide better wheelchair access.

d)      Ms. Sanossian states: "These dangerous practices appear to stem in part from problems with the Sheriff's Department's written policy and procedure. For example, the Sheriff's Department's I.22 Lower Bunk / Lower Tier Assignment housing policy and procedure state that medical staff merely recommend placement of an incarcerated person on a lower bunk or lower tier rather than medical staff requiring such placement. Specifically, the policy and procedure, at subsection I.A.1, states that "[t]he recommendation for a lower bunk and/or lower tier will be

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

4893-3459-9267 v2                                      14                    Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

determined by health staff." (emphasis added).  Medical Services Division policy and procedure MSD.F.1.2 also states, at subsection II.A.3, that health staff should "[e]nter reason for recommending lower bunk/lower tier" (emphasis added) in the patient's health record.

However, although Ms. Sanossian correctly cites the San Diego County Sheriff's Department Detention Services Bureau – Manual of Policies and Practices, I.22 Lower Bunk / Lower Tier Assignment housing policy as using the word "recommendation," her citation fails to include the other language in the procedure which states:

> I.    LOWER    BUNK/LOWER    TIER    HOUSING ASSIGNMENT
>
> A.    Sheriff's health staff will ensure inmates with physical impairments or mobility issues are accommodated for their safety and appropriate bed assignment.
>
>> 1.    The recommendation for a lower bunk and/or lower tier will be determined by health staff and entered into the medical instructions.
>>
>> 2.    The health staff's order for lower bunk and/or lower tier housing is considered a housing restriction to minimize the risk of injury to the inmate.
>>
>> 3.    Inmates without an instruction for lower bunk and/or lower tier may submit a Sick Call Request (J-212) form to request this type of bed assignment. A medical evaluation is required to determine the need to establish or reinstate an instruction for lower bunk and/or lower tier.
>
> B.    If the health staff recommendation for a lower bunk and/or lower tier housing restriction is established during the intake process, Jail Population Management Unit (JPMU) deputies will notate such housing restriction on the inmate's face card. If the restriction is determined after the inmate has been housed, health staff will notify the housing deputies of the restriction.
>
>> 1.    Housing deputies will be responsible for assigning these inmates in the Jail Information Management System (JIMS) to either a lower bunk ("LOWER BUNK"), lower tier ("LOWER TIER") or a lower bunk on the lower tier ("LOWER BUNK/LOWER TIER").

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

4893-3459-9267 v2                                    15                        Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

Likewise, Ms. Sanossian fails to cite the following language in San Diego County Sheriff's Department Medical Services Division, Operations Manual MSD.F.1.2 Lower Bunk/Lower Tier:

**PURPOSE**

To ensure that patients with medical problems will be housed in the bunk and/or tier appropriate to the need assessed by health staff.

To clarify criteria for lower bunk and/or lower tier when entering patient flags in the health record.

To emphasize that a qualified health provider's order for lower bunk and/or lower tier housing is recommended to minimize the risk of injury to patient meeting criteria.

To ensure patients with physical impairments or mobility issues be accommodated for their safety and appropriate bed assignment.

**PROCEDURE**

I.      Criteria for placement as follows:

    A.      Patients having physical disabilities or limitations but ambulating without the use of crutches, walker or wheelchair, may be housed on an upper tier.

    B.      Patients requiring a cane for ambulation will be assessed on a case by case basis by health staff to determine their ability to safely use the stairs.

    C.      Patients with the following conditions must be placed in a lower bunk and on the lower tier:

        1.      Seizures

        2.      Active alcohol withdrawal treatment. (*time limited)

        3.      Active heroin withdrawal treatment. (*time limited)

        4.      Pregnancy

        5.      Status post cesarean-section

II.     Notification and Documentation:

    A.      Adding patient flag in the health record should include the following:

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4893-3459-9267 v2

16

Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

1.    Enter reason for recommending lower bunk/lower tier in the comment field.

2.    Add expiration date as needed for time limited conditions.

B.    Notify the corresponding housing deputies of the restriction.

Notably, although the policy uses the term "recommending," the policy also states in II. B. "Notify the corresponding housing deputies of the restriction." This supports the County's position and my expert opinion that the "Flag" for a Lower Bunk/Lower Tier is a housing <u>restriction</u> and not just a recommendation.

e)    Ms. Sanossian states: "The Medical Services Division policy and procedure MSD.F.1.2 is also ambiguous about who must be housed on a lower bunk. The procedure, at subsection IA, states that "[p]atients having physical disabilities or limitations but ambulating without the use of crutches, walker or wheelchair, may be housed on an upper tier." Many people with mobility disabilities can ambulate for short periods without crutches, a walker, or wheelchair, but need the use of these assist devices most of the time. This procedure does not address that large group of individuals and will, without better definition, increase risk for Defendants and the rate of injury for the incarcerated. While the existing policy and practice implies, in an albeit limited fashion, that people with mobility disabilities who rely on assistive devices may be housed on the lower tier, it is silent about whether those people must be housed on a lower bunk."

However, in my 37 years of correctional experience, incarcerated persons who have been prescribed assistive devices and/or those that have a lower tier housing restriction are, by default, assigned to a lower bunk and lower tier. This is also the practice of the San Diego County Sheriff's Department.

f)    Ms. Sanossian states: "Housing people with mobility disabilities in cells without grab bars is another dangerous practice in the Jail system, as it places people at risk of falls and serious injury."

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

4893-3459-9267 v2                                    17                    Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

1     However, plans are already in place to ensure that all individuals with mobility

2 issues have appropriate grab bars.  As part of the physical plant modifications, in the

3 event the retrofitted ADA-compliant cells are not sufficient to accommodate all

4 mobility-disabled incarcerated persons, the County will retrofit cells with ADA assets

5 and features (grab bars) for the mobility disabled incarcerated person that require the

6 in-cell accommodations.

7     27.   Ms. Sanossian states: "Defendants Lack Adequate Policies and

8 Procedures for Providing Effective Communication to Incarcerated People with

9 Communication Disabilities, Including Those with Hearing Disabilities."

10     This statement ignores that these policies are already in process of revision.  As

11 referenced in #13 above, I was retained to conduct a review and make

12 recommendations of the San Diego County Sherriff Department Detention Services

13 Bureau Manual of Policies and Procedures, Facility Green Sheets, and Medical

14 Services Division Operations Manual related to the requirements of the ADA Act

15 Title II Regulations. The recommendations include identification of the incarcerated

16 persons' preferred method of communication, types of due process, clinical

17 encounters, and other jail programming opportunities that require the provision and

18 documentation of effective communication, type of effective communication

19 assistance, and the provision of sign language interpreters. The recommended policy

20 is consistent with the Orange County Jails' Policies, as I Monitor the Orange County

21 Settlement Agreement and I have reviewed the Orange County Jails' ADA Policies.

22     28.   In addition to revising the ADA policy to include comprehensive

23 language and requirements for staff, the San Diego County Sheriff's Department is

24 also in the process of developing and implementing the following processes to assist

25 the County in ensuring the disabled incarcerated persons are identified, including their

26 accommodation needs:

27     a.   Expansion of ASL services to all of the jail facilities with a

28     telecommunication service provider, which will include

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4893-3459-9267 v2

18

Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

videophones, VRS, and VRI technology;

    b.    Tracking of ADA modifications;

    c.    Establishment of an ADA Unit'

    d.    Coordination with Regional Centers for incarcerated persons identified as intellectually/developmentally disabled;

    e.    Revising JIMS to include functionality to track accommodations; and

    f.    Development of ADA training.

29.    In addition, the County uses the Re-entry Services counselors to identify what needs, if any, the disabled incarcerated persons have. The counselor assists in making the accommodations available.  Examples include but are not limited to the provision of an ASL interpreter to assist with high school equivalency (GED) classes, the provision of an ASL interpreter for a (pro per) incarcerated person to assist with a hearing, provision of large print materials, magnifying screens, note pads, and/or audiobooks.

30.    I also provided the San Diego County Sheriff's Department a "blueprint" for a comprehensive Disability Program. The elements of the "blueprint" include: Policies and Procedures (Custody and Medical), ADA Coordinator and ADA Unit, Identification of disabled incarcerated persons and the associated accommodations, Tracking, Orientation, Postings, Effective Communication Provisions, retention and removal of assistive devices, durable medical equipment and health care appliances, Provision of auxiliary aids and services, Access to program, services, and activities, Provision of telecommunication equipment and devices, Access to work opportunities including community programs, Housing placements, Disability grievances and requests, Accommodations during alarms, emergencies, and announcements, Accommodations during searches, application of restraints and counts, Accommodations during transportation, Accommodations during the disciplinary process, and Training.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4893-3459-9267 v2    19    Case No. 3:20-cv-00406-AJB-DDL
MARTINEZ DECL. ISO OPPO MPI

31.    With the implementation of the processes the County has put in place and the development and implementation of a comprehensive ADA program, I believe the San Diego County Sheriff's Department will be able to provide the accommodations required by the ADA and ensure the incarcerated persons are provided equal access to the San Diego County Jails' programs, services and activities without judicial intervention. Based on my conversations with Commanders and other Sheriff's Department staff, as well as the Sheriff's Department's Medical Director, my tour of Central Jail, and my review of their progress to date and their plans to achieve ADA compliance both structurally and otherwise, I am informed and strongly believe that the County is on track and does not require judicial intervention.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed in Woodland, California, on this 10th day of May 2023.

_____
JULIAN MARTINEZ

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

# EXHIBIT 1



Sabot Consulting
101 Parkshore Drive
Suite 100
Folsom, CA 95630

Phone: 888.447.2268
Fax: 916.848.3451
www.sabotconsult.com
info@sabotconsult.com

**Julian Martinez Resume**

*Summary of Qualifications*

Served over 28 years in the California Department of Corrections and Rehabilitation (CDCR) before retiring as a Correctional Administrator. Worked at four adult institutions ranging from minimum to maximum security. 35 years of experience in correctional management and operations both in administrative and custodial positions.

Served as an institution investigator, academic, physical fitness, and tactical instructor as well as the Assistant Drill Commander at the Correctional Academy. Spent 17 years assigned to the CDCR's administration writing departmental policies and procedures, developing audit tools and methodologies, and conducting institutional audits of the incarcerated person discipline process, mailroom, institution security, escape prevention, use of force, conditions of confinement and administrative segregation bed utilization. Served as the assistant project manager for CDCR's drug reduction strategy and as the Chief of the Health Care Placement Unit. Served as the Chief of Court Compliance and managed the major litigation cases related to the Americans with Disabilities Act (Clark v California, and Armstrong v Brown), conditions of confinement for condemned incarcerated persons (Lancaster v Tilton), access to law library services, (Gilmore v State of California), parole revocation due process (Valdivia v Davis), and conditions of confinement in the juvenile facilities (Farrell v Cate).  Reviewed and approved institutions American Correctional Association Standards & Accreditation reports that were conducted of CDCR institutions/facilities.

Served as an expert and provided testimony in disability related matters and has also provided expertise in developing curriculum for managers, supervisors, and correctional staff throughout the State of California.

Served as Federal Court Monitor in ADA litigation cases ensuring defendants in ADA litigation cases comply with settlement agreements/consent decrees for ADA cases involving mobility disabilities and deaf and/or hard of hearing for incarcerated persons housed in county jails and state prisons. Cases include McBride v. Michigan Department of Corrections (Deaf and/or Hard of Hearing) Civil Action No. 2:15-cv-11222, Jewitt v. County of Shasta, et.al. Cole v. (Mobility Disabilities) Civil Action No. 2:13-cv-0882, Cole v. County of Santa Clara (Mobility Disabilities) Civil Action N0. 5:16-cv-06594, Murray v. County of Santa Barbara Case No. 2:17-cv-08805-GW-JPR, Hernandez v. County of Monterey Case No.CV 13 2354 PSG, and Criswell v. Boudreaux Case No. 1:20-cv-01048-DAD-SAB (COVID-19). Babu v. Ahern (County of Alameda) Case No. 18-cv-07677-NC, and Orange County Pre-litigation agreement (All Disabilities, Restrictive Housing, and LGBTQI).

I am also currently serving as plaintiff's expert in the case of Harris et al. v. Georgia Department of Corrections, et al., 5:18-cv-00365-TES a case related to Deaf and/or Hard of Hearing incarcerated persons housed in the Georgia Department of Corrections.

Conducted Gap Analysis Assessments of the Jails for the County of Orange (ADA, Restrictive Housing, Access to Medical/Dental and Mental Health Care, LGBTQI), Santa Clara County (ADA and Use of Force), Sacramento County (ADA), and Shasta County (ADA).

Conducted security audits of Mexican prisons in coordination with International Narcotics and Law Enforcement Section of the United States Embassy.

Resume of Mr. Julian Martinez
Page 2 of 6



Conducted Prevention of Sexual Abuse audits of Office of Refugee Resettlement shelter facilities throughout the United States.

Conducted a COVID-19 review at the Shasta County Jail.

## *Experience*

**April 2019 to Present**

Appointed as the Operational Monitor in the Cole v. Santa Clara County federal class-action lawsuit challenging access to programs, services, and activities at the Santa Clara County Jails (SCCJ) for Mobility Disabled incarcerated persons housed in the SCCJ.

**June 2015 to Present, Sabot Consulting, Folsom, CA**

Provided consultant services to Santa Clara, Shasta, and Sacramento County Jails.  Conducted ADA Assessments (program and policies) and Use-of-Force review at Santa Clara County Jail and Sacramento County Jail. Conducted ADA and Use-of–Force training to managers, supervisors, correctional deputies, medical/mental health staff, and other non-peace officer staff at Santa Clara County Jail.  Training included Americans with Disabilities Act disability awareness. Provided expert witness reports in ADA related cases in Shasta and Solano counties in California. Monitored ADA litigation cases for mobility disabled (Shasta and Santa Clara County), all disabilities (Santa Barbara and Orange County), and deaf and/or hard of hearing cases (Michigan Department of Corrections) in county jails and state prisons.

**March 2008 to May 2014, Chief of Court Compliance**
**Office of Audits and Court Compliance**

Responsible for the supervision of Facility Captains and 46 staff ensuring court-mandated compliance with the Department's Americans with Disabilities Act (ADA) programs for incarcerated persons and parolees with disabilities, the remedial policies approved by the courts in major class action lawsuits including, but not limited to, Armstrong v. Schwarzenegger, Clark v. California, Valdivia v. Schwarzenegger, Lugo v. Schwarzenegger and Lancaster v. Schwarzenegger.  Providing general oversight of Facility Captain and Correctional Counselor II staff located at California Department of Corrections and Rehabilitation's (CDCR) Headquarters and at institutions throughout the state.   Working collaboratively with staff from other CDCR divisions and offices impacted by the above listed court cases and with staff from other State agencies as necessary. Reviewed and approved institutions American Correctional Association Standards & Accreditation reports that were conducted of CDCR institutions/facilities

**August 2007 to March 2008, Facility Captain**
**Division of Addiction and Recovery Services**

Supervise and train DARS' Correctional Counselors II/III. Provide administrative and technical expertise in the development and implementation of new in-prison Substance Abuse Programs (SAPs), and SAP policies and procedures.  Perform in-prison SAP reviews for program effectiveness and make recommendations for improvement to the DARS Program Managers.  Plans, organize, and direct the development, implementation, and administration of SAPs statewide.  Provide management and supervision, to all Correctional Counselors II/III who have responsibility for statewide SAP monitoring, institution liaison, SAP program development and activation, and incarcerated person classification and custody issues. Investigate reports of incarcerated person, parolee, and contract staff misconduct and other regulation and rule infractions and recommend appropriate action.  Evaluate the effectiveness of existing incarcerated person placement criteria and provide technical expertise in development of new placement programs designed to



increase bed capacity. Liaison with in-prison SAP Contractor staff, Parole Agents, Correctional Counselors, incarcerated persons, incarcerated person families, the Legislature, the media, and the public on sensitive in-prison SAP issues.  Liaisons with the Division of Adult Institutions, Division of Parole Operations, and other agencies, on SAP establishment and incarcerated person classification and placement issues. Liaison with key administrators at the University of California, San Diego, Pacific Southwest Addiction Transfer Center, concerning training and technical assistance issues for the statewide SAPs, and the University of California, Los Angeles, for program evaluation and continuous quality improvement issues.  Serves as a member of the DARS Policy Advisory Committee and the DARS Continuous Quality Improvement Committee.

**April 2006 to August 2007 Chief, Health Care Placement Unit**
**Division of Correctional Health Care Services**

Managed and directed the Population Management Unit supervising a multi-disciplinary team of three Correctional Counselor III's, two AGPA's and one OT.  Coordinated with Health Care Regional Administrators, Mental Health Headquarters staff as well as clinical and custody staff in the field, in the direction, placement, and transportation of incarcerated persons/patients who need medical or psychiatric care, consistent with custody requirements and the Department's need to protect public safety.  Was responsible for coordinating the development and implementation of Unit policies and systems with managers with DCHCS, as well as managers in other organizations such as; Classification Services Unit, Transportation Services Unit, Division of Adult Institutions, Board of Parole Hearings, Offender Information Services, Community Correctional Facilities, Division of Adult Parole Operations, Parole Outpatient Clinics, Department of Mental Health, County Jails and Community Hospitals and Medical Transportation Contractors.

Supervised the development and implementation of policies and systems that enabled the DCHCS to classify, endorse, place, and move incarcerated persons/patients in a manner which best met the incarcerated persons/patients' health care needs and protected public safety. Managed the reporting system, which enables the institutions and regional staff to rapidly communicate information regarding needed transfers of incarcerated persons/patients. Managed in conjunction with regional clinicians and the Institutions Division's Classification and Transportation Units, appropriate health care classification criteria that was used to evaluate incarcerated person/patient health care needs in relation to security requirements for placement and transportation of incarcerated persons/patients. Managed, in conjunction with the Division of Adult Institutions, Transportation Unit, policies and procedures, which promote the safe and timely transfer of incarcerated persons/patients, including the transport of difficult or exceptional cases. Supervised the analysis and evaluation of health care transport needs, including those which could be met by private contractors and coordinated with health care regional administrative staff, Chief Medical Officers and Classification and Transportation staff the scheduling of incarcerated person/patient movement to ensure incarcerated persons/patients were moved in a safe and timely manner consistent with both health care needs and custody and security requirements on an ongoing basis.  Provided the principal interface/liaison with Health Care Regional Administrators, Associate Director's, Chief Medical Officers, Wardens, DAPO Administrators, and others regarding the Population Management policies and systems to ensure the timely movement and continuity of care of incarcerated persons/patients requiring health services consistent with safety   and security requirements.  This included supervising the development and provision of training on Population Management issues.

Resume of Mr. Julian Martinez
Page 4 of 6



**August 2005 to April 2006 Facility Captain**
**California Medical Facility**

Managed planed, organized, and directed a progressive program for the custody, discipline, classification, treatment, employment, and recreation of incarcerated persons in a program that housed 1000 incarcerated persons including, 600 EOP's 100 DDP, 200 CCCMS and 100 GP's.  Interpreted and carried out the policies of the Department of Corrections and Rehabilitation and the institution. Chaired the Unit Classification Committee, organized and conducted classification and other staff meetings for the proper placement of incarcerated persons in the academic and vocational education training and occupational programs. Interviewed and counseled incarcerated persons on their personal problems and selected incarcerated persons to be re-interviewed by members of the classification committee and treatment staff. Reviewed pre-release and board reports for the qualitative improvement of case understanding and recording. Managed the Unit's Incarcerated person Disciplinary Process.  Established and maintained cooperative working relationships with the institution staff outside the unit; trained, supervised, and evaluated the work of assistants and took and/or recommended appropriate action. Supervised the maintenance of safety and sanitary living conditions within the unit.

**July 2003 to August 2005 Correctional Counselor II Specialist**
**Court Compliance Section**

Performed a variety of tasks ensuring the implementation of effective standards and ongoing compliance and monitoring of constitutional requirements applicable to incarcerated persons. Worked with staff from other units/branches, divisions, and agencies in the development and implementation of new and revised policy, including DOM and Title 15 revisions affecting institution and parole operations and processes such as: incarcerated person appeals, custody and classification, disciplinary process, program assignments, services, activities, physical plant, etc.  Had lead responsibility for Americans with Disabilities Act (ADA) projects, which required review of field operations to resolve local, or system wide ADA compliance issues. Had led responsibility to develop specialized data needed for CDCR administrators to make necessary decisions pertaining to institution missions, and designated housing or specialized programs for incarcerated persons with disabilities.  Prepared reports and presented findings to appropriate administrators. Investigated and prepared written responses to inquiries and correspondence from plaintiffs' attorneys, state, and local agencies, concerned citizens, incarcerated persons and members of their family, etc.  Researched and responded to verbal inquiries.  Served as a liaison on cases in litigation impacting the Court Compliance Team. Participated in meetings/task force with other CDCR Divisions and/or units to resolve issues relative to incarcerated persons/parolees with disabilities.  Developed and provided training to field staff on established policy for incarcerated persons with disabilities.  Prepared proposals to secure resources for the support of programs for incarcerated persons with disabilities. Participated in and managed the audits and monitoring tours of CDCR institutions with plaintiffs' attorneys in class action lawsuits. Provided expertise and functional guidance to field ADA coordinators.  Served as ADA liaison and expert resource within the Department and representing the Department to federal, state, and local agencies and other persons and entities regarding incarcerated person and visitor accessibility issues and general ADA compliance.  Provided staff support to the ADA Title II Warden's Advisory Group. Participated in compliance reviews, studies, projects, and task force groups regarding Title II of ADA.



**July 2001 to July 2003 Correctional Counselor II Specialist
Classification Services Unit**

• Health Care Section

Developed and implemented the Developmental Disability Program

to identify DDP incarcerated persons for classification endorsement and transfer of difficult to place incarcerated persons with disabilities.  Monitored and ensured conformity of the DDP plan in the impacted DDP facilities.  Tracked and monitored DDP incarcerated person placements to ensure appropriate placement.  Prepared reports and presented findings to Executive staff and administrators.  Assisted in the preparation of Departmental Review Board cases.  Responded to inquiries from the public and elected officials.  Prepared and processed PC 1170 (d) compassionate release requests for the Directors review.  Case conferenced complex classification cases (disciplinary, medical and disability) with CSR's, CDO's, Facility Captains.  Conducted Institutional Audits and Compliance Reviews of the Administrative Segregation-Due Process and Administrative Segregation Unit Bed Utilization Reviews.

• Special Assignment – Institution Services Unit, Litigation Management Section.

Member of the Harrington-Wisely vs. State of California Liability Assessment Team.  Conducted site visits at specific institutions to gather pertinent statistical data and specific information related to the following areas:  1) discovery of contraband in visiting areas, 2) institutional drug-related offenses, 3) serious/violent incidents, 4) drug-related investigations, and 5) institutional drug interdiction efforts.  Worked in cooperation with the Deputy Attorney General's Office representing the Department in this litigation.

1996–2000    Correctional Lieutenant    Institution Services Unit

• Policy Coordination Section

Developed and reviewed departmental policy.  Drafted Regulations, DOM, Administrative Bulletins, Informational Bulletins, and Instructional Memorandums for the areas of Visiting, Property, Incarcerated person Disciplinary process. Responded to inquiries from the public and elected officials.  Conducted Institutional Compliance Reviews of the Incarcerated person Disciplinary Process.

• Disciplinary Compliance Review Section

Developed departmental policy related to incarcerated person discipline. Drafted Regulations, DOM, Administrative Bulletins, Informational Bulletins, Instructional Memorandums.  Developed and conducted Institutional Audits and Compliance Reviews of the Administrative Segregation-Conditions of Confinement, Incarcerated person Disciplinary Process, Escape Prevention, Institution Security, and Institution Mailroom.  Provided training at the Lieutenants Academy in the Disciplinary process and Incident Reporting.  Conducted Incarcerated person Disciplinary training at institutional at Wardens request.  Participated in numerous institutional Administrative Reviews for the Directorate.  Responded to inquiries from the public and elected officials.  Drafted Budget Change Proposals.  Assigned as the Institutions Division Liaison for the Drug Reduction Strategy Pilot Project.

Resume of Mr. Julian Martinez
Page 6 of 6



**August 2000 to June 2001 Correctional Counselor II Specialist**
**Institution Services Unit**

•     Disciplinary Compliance Review Section

Developed departmental policy related to incarcerated person discipline drugs

and drug testing. Conducted Institutional Compliance Reviews of the Administrative Segregation-Conditions of Confinement and Incarcerated person Disciplinary Process. Provided training at the Lieutenants Academy in the Disciplinary process and Incident Reporting.  Conducted Incarcerated person Disciplinary training at institutional at Wardens request.  Participated in numerous institutional Administrative Reviews for the Directorate.  Responded to inquiries from the public and elected officials. Drafted Budget Change Proposals.  Assigned as the Institutions Division Liaison for the Drug Reduction Strategy Pilot Project. Assisting in the implementation of a Statewide Drug Interdiction Plan.

**1996–1996     Correctional Lieutenant          Valley State prison for Women**

**1994–1996     Correctional Sergeant Instructor          R. A. McGee  Correctional Training Center**

Provided formal instruction to the Basic Correctional Officer Cadets attending the BCOA.  Curriculum included Peace Officer Standards and Training core curriculum, Report Writing, Physical Training, Firearms Familiarization, Chemical Agents, and numerous other class instructions.

**1993–1994     Correctional Sergeant   California Medical Facility**

**1992–1993     Correctional Sergeant Wasco State Prison**

**1986–1992     Correctional Officer     California State Prison-Solano**