GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION**<br><br>Date: June 29, 2023<br>Time: 2:00 p.m.<br>Crtrm.: 4A<br><br>Judge: Hon. Anthony J. Battaglia<br>Magistrate: Hon. David D. Leshner<br><br>Trial Date: None Set |

[4295809.6]

Case No. 3:20-cv-00406-AJB-DDL

PLAINTIFFS' REPLY IN SUPPORT OF MOTIONS FOR PRELIMINARY INJUNCTION AND
PROVISIONAL CLASS CERTIFICATION

# TABLE OF CONTENTS

Page

ARGUMENT ........................................................................................................... 2

I. THIS COURT HAS ALREADY HELD THAT PLAINTIFFS HAVE STANDING. ................................................................................................. 2

II. PLAINTIFFS' REQUEST FOR AN INJUNCTION IS NOT MOOT. ............ 2

    A. Defendants Should Be Required to Provide SLI. .................................. 4

    B. Defendants Should Be Required to Provide Accessible Beds, Toilets, and Showers. ............................................................................ 6

III. THE BOND REQUIREMENT SHOULD BE WAIVED. ............................... 8

IV. THE SUBCLASS SHOULD BE PROVISIONALLY CERTIFIED. ............... 8

    A. The Class Definition Is Not Overly Broad. ........................................... 9

    B. It Is Irrelevant That Members of the Proposed Subclass Are Also *Armstrong* Class Members. ................................................................. 10

    C. The Proposed Class Satisfies Commonality and Typicality. ............... 10

    D. Plaintiffs Are Adequate Class Representatives. .................................. 10

CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) .................................................................. 10, 11

*Armstrong v. Newsom*,
  58 F.4th 1283 (9th Cir. 2023) ........................................................................ 3

*Barnes v. Healy*,
  980 F.2d 572 (9th Cir. 1992) ................................................................ 1, 3, 4

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007) ......................................................................... 9

*Booth v. McManaman*,
  830 F. Supp. 2d 1037 (D. Haw. 2011) .......................................................... 8

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ..................................................................... 10

*Hernandez v. Cty. of Monterey*,
  305 F.R.D. 132 (N.D. Cal. 2015) ................................................................ 11

*Johnson v. Couturier*,
  572 F.3d 1067 (9th Cir. 2009) ....................................................................... 8

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ....................................................................... 10

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*,
  16 F.3d 1032 (9th Cir. 1994) ......................................................................... 9

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ........................................................................ 10

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ................................................................... 9, 11

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2009), *abrogated on other grounds by
  Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) .......................... 9

**RULES**

Fed R. Civ. P. 23 .................................................................................... 8, 9, 10

## REGULATIONS

28 C.F.R. § 35.152 ................................................................................................8

28 C.F.R. § 35.160 ................................................................................................5

[4295809.6]                                              iii                        Case No. 3:20-cv-00406-AJB-DDL
PLAINTIFFS' REPLY IN SUPPORT OF MOTIONS FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

The Opposition concedes that the County and Sheriff's Department violate the Americans with Disabilities Act and related federal and state laws ("ADA") by failing to *currently* accommodate people with disabilities at the Jail. Plaintiffs' Motions seek four ADA accommodations critical to activities of daily life: (1) sign language interpretation ("SLI") for people with hearing disabilities in medical, mental health, and due process encounters; and safe and accessible (2) beds; (3) toilets; and (4) showers for people with mobility disabilities. It is uncontested that Defendants fail to provide those accommodations, and Plaintiffs have shown that this results in severe, ongoing harm to incarcerated people with disabilities.

The County claims that it is in the process of remedying these violations and that its vague and inchoate efforts moot Plaintiffs' Motions. Opp. at 15. The alleged "changes" consist of "first draft[s]" of new policies and yet-to-be-funded renovation plans, *e.g.*, Dkt. 311-16 at 7, Ex. F; Dkt. 312 at ¶¶ 9, 14, which are insufficient as a matter of law to defeat a motion for preliminary injunction. *See Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992). The County's own timeline makes clear that Defendants' recent steps occurred only in response to the instant Motions and threat of a court order. For example, despite apparently acknowledging the problem with triple bunks as early as 2018, *see* Dkt. 312 at ¶ 11, Defendants did not begin to remove them from Central Jail until May 8, 2023. Dkt. 311-19 at ¶ 10; *see also* Grunfeld Reply Decl. ¶¶ 2-3 (timeline since Plaintiffs raised ADA issues).

Judicial intervention, including court approval and ongoing oversight of any remedial plans, is required to remedy the admittedly unlawful conditions at the Jail. Plaintiffs' Proposed Order requires Defendants to ensure effective communication for people with hearing disabilities, and to provide safe and accessible housing for people with mobility disabilities, with staged deadlines for completion of the renovations, and all remediation to occur within a year. *See* Dkt. 281-2 at Ex. A. Plaintiffs' Motions should be granted.

# ARGUMENT

The County does not dispute that the balance of the equities tips in Plaintiffs' favor or that the public interest would be served by an injunction. Rather, it argues that Plaintiffs lack standing—notwithstanding the Court's prior rulings on this issue—and that the request for an injunction is moot. Both arguments fail.

## I. THIS COURT HAS ALREADY HELD THAT PLAINTIFFS HAVE STANDING.

The County's argument that Plaintiffs lack standing to seek an injunction is a near carbon-copy of the opposition to Plaintiffs' 2022 preliminary injunction motion, *compare* Opp. at 14-15 *with* Dkt. 153 at 3-4, which this Court has already twice rejected. *See* Dkt. 203 at 6-8. Plaintiffs have standing because they are currently in jail and being deprived of ADA accommodations and/or "the record contains compelling evidence that Plaintiffs likely will be reincarcerated" in these unlawful conditions. *Id.* at 7-8; *see, e.g.*, Dkt. 281-2 at Ex. V-337, W-354, and Y-410; *see also* Dkt. 287 at 5-6. The Opposition incorrectly states that Plaintiffs Clark and Zoerner are not currently in custody, Opp. at 15, but the County's supporting declarations in fact show that Ms. Zoerner and Mr. Clark, who has been incarcerated at the Jail on many occasions, Dkt. 281-7 at ¶¶ 2, 7, are both currently incarcerated. *See* Dkt. 311-4 at ¶ 7; Dkt. 311-17 at ¶¶ 3(c), 4. These and the other named Plaintiffs are people with disabilities who have sustained or are in immediate danger of sustaining direct injury as a result of Defendants' unlawful practices at the Jail.

## II. PLAINTIFFS' REQUEST FOR AN INJUNCTION IS NOT MOOT.

The County's primary argument is that "recent and ongoing changes" to Jail policies and facilities render the Motions "moot." Opp. at 15. In other words, the County concedes ADA violations, but nonetheless claims that an injunction is unnecessary because Defendants are in the process of voluntary remediation.

That argument finds no purchase in the law. As the Ninth Circuit has explained, because "voluntary plans may change," the relevant inquiry is not

whether a government has "already committed" to "voluntarily" remedy a violation of civil rights laws. *Armstrong v. Newsom*, 58 F.4th 1283, 1298 (9th Cir. 2023). Rather, "[v]oluntary cessation of an illegal course of conduct" renders a claim for injunctive relief moot only if "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes*, 980 F.2d at 580. In *Barnes*, the Ninth Circuit held that the district court abused its discretion in denying a preliminary injunction to class members, despite the defendant's representation that the state agency would "voluntarily" provide the requested relief. *Id.*

The potential changes outlined in the Opposition have not been implemented and do not completely remedy the ADA violations identified in the Motions, as explained below. Defendants have not met their burden for avoiding injunctive relief under *Barnes*, and the Court need not "sit idly by while Defendants violate[]" Plaintiffs' rights, "even if Defendants [are] already making marginal improvements," *Armstrong*, 58 F.4th at 1298. Moreover, Defendants' own evidence makes clear that the alleged changes thus far are occurring only because of this litigation and these Motions in particular. The County asserts that their plans for remedial changes "have been in the works for months." Opp. at 1. But Defendants' largely nebulous and unfunded plans are purely reactionary and would not have occurred but for Plaintiffs' explicit efforts to bring these Motions, as evidenced by a comparison of the County's timeline and the timeline of this lawsuit—including Plaintiffs' November 2022 notice of intent to seek expedited discovery on ADA issues, the January 2023 order granting such discovery, and these April 2023 Motions. *See* Grunfeld Reply Decl. at ¶¶ 2-3. Plaintiffs are "entitled to the protection of an enforceable order to ensure that past [ADA] violations will not be repeated." *See Barnes*, 980 F.2d at 580.

And, contrary to Defendants' assertions, Plaintiffs are suffering immediate threatened injury as a result of "current conditions …, based upon the evidence, and

not past conditions." *See* Opp. at 1.  As of May 24, 2023, Mr. Esquivel is still not receiving SLI, Esquivel Reply Decl. ¶ 5; Stewart Decl. ¶ 4, and Mr. Montgomery fell in the shower at Central Jail, S. Montgomery Decl. ¶ 5.  Plaintiffs and other incarcerated people are suffering ongoing harm from the serious ADA violations at the Jail.  *See, e.g.*, Clark Reply Decl. ¶¶ 4-5; Medrano Reply Decl. ¶¶ 4-5.

### A. Defendants Should Be Required to Provide SLI.

The Opposition largely does not dispute Plaintiffs' explanation of the relevant law, and its sole attempt to do so incorrectly cites an inapplicable case (*Tauscher*) and regulation governing private entities under Title III of the ADA, when the Defendants are public entities subject to Title II.  *See* Opp. at 2.  Title II requires that jails provide SLI in medical and mental health encounters, classification and disciplinary hearings, and at intake to deaf incarcerated people for whom sign language is their primary means of communication.  *See* Mot. at 12-14.

The County provides no evidence that SLI is currently provided to incarcerated people in medical, mental health, or due process encounters.  The Opposition asserts that "contracts for ASL services," including via iPad, are "in effect," Opp. at 16, yet their Bavencoff Declaration admits that "a lack of Wi-Fi access" prohibits the current use of iPads in every facility, and that ensuring internet connectivity "in all facilities" is a "Long Term Project[]," Dkt. 311-16 at 3, 9.  Nor will iPads be appropriate for all encounters.  Sanossian Decl. ¶ 31; Alonso Decl. ¶¶ 28-32.

The Opposition's only alleged example of SLI being provided during medical encounters is from over four years ago, *see* Opp. at 5; Dkt. 311-5 at ¶ 6, and the County fails to show that the provider was certified in SLI.  The patient himself testifies that the nurse "was nowhere near fluent" in SLI and "our communications were not very good at all."  *See* Esquivel Reply Decl. ¶ 6; *see also* Dkt. 281-2 at Ex. N-93:25–94:19 (Rule 30(b)(6) deponent had no knowledge of any instance of SLI being provided).  Although the Opposition asserts that the Jail has "24/7" access to "emergency" SLI, Opp. at 4, the County's Rule 30(b)(6) deponent testified that

no such requests have ever been made. Grunfeld Reply Decl. at Ex. G-77. Defendants have produced no logs, receipts, or invoices showing provision of in-person SLI at the Jail at any time. *Id.* ¶ 18.

Nor is there credible evidence that Defendants evaluate and track people's primary means of communication, as the ADA requires. *See* Mot. at 13-14. Despite being aware of Mr. Esquivel's need for SLI since 2019, Dkt. 311-5 at ¶ 6, the County does not dispute that Mr. Esquivel has not received SLI in any of his medical and mental health appointments since his most recent arrest in 2022, which violates the ADA. 28 C.F.R. § 35.160(b). Although County declarants describe a vague evaluation practice, *see* Dkt. 311-20 at ¶ 29; Dkt. 311-22 at ¶¶ 3-5, no policy actually requires such evaluations, and there is no evidence that people requiring SLI are identified, tracked, and provided it. Indeed, the Opposition concedes that deputies are left on their own to "try different ways to achieve effective communication," suggesting that staff untrained in the ADA force deaf people to rely on gestures, lip reading, and written notes. *See* Opp. at 4, 5, 17. Mental health clinicians at the Jail are also not provided training on obtaining SLI; as a result, deaf people are denied adequate mental health care. Alonso Decl. ¶¶ 13, 18.

Most changes that the County claims are being made are irrelevant to these Motions: video relay service ("VRS"), teletypewriters ("TTY"), and telecommunications devices for the deaf ("TDD"), *see* Opp. at 4, are telephone substitutes used to communicate with those *outside* the Jail; they cannot be used for in-person interpretation. Sanossian Decl. ¶ 30. Similarly, GED classes and legal research are not the subject of these Motions. *See* Opp. at 3 (identifying only one, undated instance of such forms of SLI *ever* being provided at the Jail).

The changes just beginning at the Jail fall far short of the *Barnes* voluntary cessation standard. The County asserts that a "first draft" of a policy for effective communication was circulated only this month, Dkt. 311-16 at 7, though that draft is insufficient, *see* Sanossian Decl. ¶¶ 27-28. As of May 1, 2023, the Jail's

Commander had yet "to determine what resources we currently have if a need [for SLI] arose …." Dkt. 311-16 at Ex. C. There is no certainty that Defendants will in fact adopt draft proposals, let alone implement, fund, train on, and monitor their adequacy. Defendants are already falling short: the County states that SLI via iPad will initially be available only at Central Jail due to internet connectivity concerns at other facilities, which there is no timeline to correct, *see* Opp. at 5-6; Grunfeld Reply Decl., Ex. E-21, yet Mr. Esquivel is still housed at George Bailey, where virtual SLI remains unavailable. Chartoff Decl. ¶ 2 & Ex. A.

### B. Defendants Should Be Required to Provide Accessible Beds, Toilets, and Showers.

The County does not dispute that the ADA requires jails to provide safe sleeping, toileting, and showering facilities, nor does it dispute Plaintiffs' explanation of the governing law. *See* Mot. at 15-18. The County's attempts to downplay the seriousness of the Jail's ADA violations[1] and to assert that Defendants are already in the process of remedying those issues are unavailing.

There is no dispute that Central Jail lacks accessible sleeping, toileting, and showering facilities—as the County's expert acknowledges. *See* Dkt. 311-18 at ¶ 18(o); Sanossian Decl. ¶¶ 6-14. The Opposition's attempt to minimize those violations is riddled with factual inaccuracies. For example, contrary to the County's assertion that "[t]here is no credible evidence that individuals with mobility impairments have ever been <u>assigned</u> to a top bed in either a double or triple bunk," Opp. at 17, the rosters produced *by the County* plainly show people with mobility disabilities assigned to top bunks. Dkt. 284-2 at Ex. Z-424–427.[2]

---

[1] The County tries to distinguish the *Greer* settlement as an out-of-date example, *see* Opp. at 15, but the problems persist: only last month, another person with a seizure disorder was assigned to a top bunk and injured after falling from it. Rios Decl. ¶ 4.

[2] The Bennett Declaration suggests that all triple bunks will be removed, Dkt. 312 at ¶¶ 7-8, yet its supporting documents show that triple bunks will be *added*, *id.* Ex. B at 17, 19.

It is evident that the County's efforts to remedy these issues are only preliminary, ad hoc plans created in response to the instant Motions. A substantial amount of work remains to ensure that the County complies with the ADA. *See* Sanossian Decl. ¶ 17. The County's CASp expert Mr. Joelson began his work analyzing the Jail facilities on November 30, 2022, promptly after Plaintiffs informed Defendants that they intended to seek expedited discovery in order to file a motion for relief on ADA issues on November 21, 2022. Grunfeld Reply Decl. ¶¶ 2-3. Mr. Joelson's recommendations have not been shared with the Court, and various documents attached to the Bavencoff and Bennett Declarations describe proposed renovations that are not yet funded. *See, e.g.*, Dkt. 312 at Ex. C. Indeed, funding for those projects will not even be *requested* until 2024. Grunfeld Reply Decl., Ex. F-59. Moreover, it is unclear if the proposed changes would even comply with the ADA. *See* Sanossian Decl. ¶¶ 18-21.

Even if those construction projects were fully funded and completed, Defendants have not established that the Jail has the other infrastructure, such as functioning grievance and tracking systems, a dedicated ADA coordinator, and ADA training, necessary to ensure that accommodations are actually provided to people who need them. Defendants cannot identify which incarcerated people are requesting accommodations, and thus cannot ensure that those people are accommodated. For example, although the Opposition asserts that Mr. Martin made no "complaints of back pain or mobility issues" during his incarceration, Opp. at 6, he submitted over a dozen grievances and sick call slips reporting his inability to stand in the shower and "<u>SEVERE</u> pain!!" Grunfeld Reply Decl. ¶ 17 & Ex. I.[3]

---

[3] The Montgomery declarations' other attempts to attack the credibility of incarcerated declarants are similarly unavailing. For example, the County challenges Mr. Fuentes' statement that he fell in his cell due to lack of grab bars, arguing that the real cause of the fall was that he was using an unlocked wheelchair to support himself while he transferred into bed. Dkt. 311-6 at ¶ 4. This is nonsensical: if Mr. Fuentes' cell had grab bars, as the ADA requires, Mr. Fuentes would never have needed to put his full body weight on his wheelchair while

Defendants' preliminary plans to make policy changes and request funding for renovations do not meet the *Barnes* voluntary cessation standard and are therefore not a basis to deny an injunction. Moreover, some changes made since the filing of the Motions are plainly temporary in nature and wholly inadequate. For example, Mr. Rosier, who was housed in an inaccessible and unsafe cell, has now been moved to Central Jail's medical unit even though he is not currently receiving medical care. Rosier Reply Decl. ¶¶ 5-6. This is a straightforward violation of ADA regulations, 28 C.F.R. § 35.152(b)(2)(ii), which Defendants must also remedy.

### III. THE BOND REQUIREMENT SHOULD BE WAIVED.

A bond is not necessary when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009), for example, when the injunction merely "requir[es] compliance with federal laws that [the defendant] is already obligated to follow," *Booth v. McManaman*, 830 F. Supp. 2d 1037, 1045 (D. Haw. 2011). Courts routinely waive the bond requirement for indigent plaintiffs challenging prison and jail conditions. *See* Mot. at 21. The cases cited in the Opposition are inapposite.[4]

### IV. THE SUBCLASS SHOULD BE PROVISIONALLY CERTIFIED.

The Court should provisionally certify the Rule 23(b)(2) Subclass of "all qualified individuals with a disability … who are now, or will be in the future, incarcerated in [the Jail]." The County does not dispute that the proposed subclass is sufficiently numerous or that it satisfies the requirements of Rule 23(b)(2). The County's argument that Rule 23(b)(3) is not satisfied, *see* Opp. at 22-24, is not relevant since Plaintiffs do not seek to certify a class under 23(b)(3), *see* Mot. at 25.

---

transferring in the first place. *See also* Grunfeld Reply Decl. ¶¶ 20-24.

[4] The County relies on a copyright infringement case, *see* Opp. at 18. in which the Plaintiff, Nintendo of America, Inc., manufactured "the most popular home video game system in the United States." *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1033 (9th Cir. 1994).

### A. The Class Definition Is Not Overly Broad.

The County argues that the Proposed Subclass is overly broad by including people "that have not" "been harmed" and thus purportedly lack standing, *i.e.*, future class members. *See* Opp. at 19-20. But "the inclusion of future class members in a class if not itself unusual or objectionable." *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2009), *abrogated on other grounds by Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). And, "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc). Courts routinely certify injunctive classes with future class members. *E.g.*, *Parsons v. Ryan*, 754 F.3d 657, 672, 676 (9th Cir. 2014); *Armstrong v. Davis*, 275 F.3d 849, 864 (9th Cir. 2001). As explained above, Plaintiffs have standing. Part I, *supra*.

No case cited by the County undermines this well-established precedent.[5] *See* Opp. at 19-20. The County's only Ninth Circuit citation is to *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012), but "the statement in *Mazza* that 'no class may be certified that contains members lacking Article III standing'" has been "overrule[d]" as it relates to injunctive classes. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022).

Finally, there is no standalone ascertainability requirement in the Ninth Circuit, *contra* Opp. at 20. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017). Rather, overbreadth challenges to class definition on the basis that some class members may not have been injured is appropriately analyzed "as a Rule 23(b)(3) predominance issue." *Id*. Because Plaintiffs are not seeking to certify a Rule 23(b)(3) class, the County's overbreadth argument fails.

---

[5] The other cases in the Opposition are commercial or consumer antitrust cases, largely involving damage claims under Rule 23(b)(3). *See* Dkt. 163 at 6-8.

### B. It Is Irrelevant That Members of the Proposed Subclass Are Also *Armstrong* Class Members.

The County provides no support for its argument that the "*Dunsmore* class definition is invalid," because it contains "*Armstrong* class members." Opp. at 22. Rather, the County misconstrues several cases holding that an *Armstrong* class member may not maintain an individual lawsuit for injunctive relief *against the same defendant*, *i.e.*, the California Department of Corrections and Rehabilitation ("CDCR"), for ADA violations they experience while incarcerated *in CDCR*. *See id.* at 21. Those cases say nothing about the viability of class actions against other actors, who are not a party to the *Armstrong* litigation. Indeed, California district courts have repeatedly certified classes of people with disabilities who are incarcerated in county jails in cases brought against county governments, without carving out *Armstrong* class members. *E.g.*, Hernandez v. Cty. of Monterey, 305 F.R.D. 132, 163-64 (N.D. Cal. 2015); *see also* Dkt. 163 at 4 n.2 (collecting cases).

### C. The Proposed Class Satisfies Commonality and Typicality.

The County's arguments under Rule 23(a)(2)-(3) ignore the on-point case law in *Armstrong* and *Parsons*, which make clear that commonality and typicality are satisfied in cases brought by incarcerated people challenging systemic conditions of confinement because "all [class] members … have in common … alleged exposure, as a result of specified statewide … policies and practices." *Parsons*, 754 F.3d at 678, 685; *Armstrong*, 275 F.3d at 868-69; *see also* Dkt. 163 at 8-12.

### D. Plaintiffs Are Adequate Class Representatives.

The County's argument that Rule 23(a)(4) is not satisfied because Plaintiffs lack standing, Opp. at 24-25, fails for the reasons explained in Part I, *supra*.

### CONCLUSION

Plaintiffs respectfully request that the Court GRANT these Motions.

| | | |
|---|---|---|
| DATED: May 26, 2023 | | Respectfully submitted, |
| | | ROSEN BIEN GALVAN & GRUNFELD LLP |
| | | By: */s/ Gay Crosthwait Grunfeld* |
| | | Gay Crosthwait Grunfeld |
| | | Attorneys for Plaintiffs |