UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION**<br><br>(Doc. No. 349) |

On April 25, 2023, Plaintiffs filed Motions for Preliminary Injunction and Provisional Class Certification ("the Motions") seeking to ensure that Defendants County of San Diego and the San Diego County Sheriff's Department ("Defendants") : (1) provide incarcerated people with hearing disabilities effective communication through sign language interpretation; and (2) house incarcerated people with mobility disabilities in accessible locations, where they can safely access sleeping, toileting, and showering facilities, in compliance with the Americans with Disabilities Act, the Rehabilitation Act, and California Government Code Section 11135 ("ADA"). On May 17, 2023, the County of San Diego opposed the motions, on the grounds that many of the factual allegations were incorrect and because the County was already in the process of renovating its policies and facilities.

On May 22, 2023, the parties and their experts (hereinafter the "Parties' Experts") met and conferred via Zoom for two hours. On May 24, 2023, the parties and their experts conducted an Early Neutral Evaluation before the Honorable David Leshner at the United States District Court for the Southern District of California in San Diego. On June 5, 8, 15, and 16, 2023, the parties conducted further settlement discussions via Zoom with Judge Leshner.

As a result of these discussions, the parties have reached the following agreements:

1. Plaintiffs' motion for provisional class certification should be granted for settlement purposes only, per the terms of this Stipulation and [Proposed] Order, with certification of the Incarcerated People with Hearing and/or Mobility Disabilities subclass defined as "all qualified individuals with a hearing and/or mobility disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in the Jail."

2. Showers: The parties agree that some of the showers at Central Jail need

to be modified to comply with the ADA. The Parties' Experts agree that compliant showers must be constructed within some of the housing modules. Defendants have agreed to continue to explore an interim solution of portable accessible showers, but Plaintiffs acknowledge there may be no viable portable shower solution and that shower chairs may be the best interim solution.

3. Toilets: The Parties' Experts agree that some of the existing cells in *celled* housing units at Central Jail are too small to accommodate the required clear floor spaces required for turning, bed transfer and/or toilet transfer required by the ADA. The Parties' Experts agree that the toilets in the *dormitory* housing units require relatively minor modifications to comply with the ADA.

4. Beds: The Parties' Experts agree that triple bunks should not be used for housing of individuals with mobility disabilities. Plaintiffs acknowledge that Defendants' policy for bed assignments for people with mobility disabilities will be amended such that an existing middle bunk does not qualify as a lower bunk and clarifying that lower bunk/lower tier placement is required rather than recommended in certain situations. The parties have agreed that more information from the Sheriff's Department about the population of incarcerated people will be needed to determine the correct number of accessible cells and dorm beds needed for the population with mobility disabilities.

5. Intake: The parties agree that remedial measures are necessary to ensure accessibility for incarcerated people with mobility disabilities during intake screening and other intake processes, consistent with the ADA. The parties have agreed that more information from the Sheriff's Department about the use of holding cells, intake and Jail population data, and intake/housing procedures would inform consideration of appropriate remedial measures for intake.

6. Sign Language Interpreters: The Parties' Experts agree that Defendants must revise and are in the process of revising their disability policies, and develop and implement processes to evaluate, document, and track incarcerated people with

disabilities' primary method of communication as well as to provide effective communication to incarcerated people whose primary method of communication is Sign Language, consistent with the requirements of the ADA.

    7.    Within sixty days of the Court approving this Stipulation and [Proposed] Order, Defendants shall develop and provide to Plaintiffs a plan to remedy the accessibility and effective communication issues identified in Plaintiffs' Motions, which shall include, at a minimum, the following elements:

    a.    For incarcerated people with hearing disabilities at San Diego County jail facilities:

        i.    Defendants will provide Sign Language Interpretation via in person (or remote technology as appropriate) to all incarcerated people with hearing disabilities who use Sign Language Interpretation as their primary means of communication for all medical and mental health encounters, booking, classification proceedings, available structured programming (e.g., classes, religious services, etc.), investigative purposes, and disciplinary proceedings.

        ii.    During booking, Defendants will evaluate every person to determine whether they have a hearing or speaking disability and, if so, the person's primary method of communication (*e.g.*, sign language, written notes, hearing aids, etc.). In determining a person's primary method of communication, Defendants must ensure that the incarcerated person is assessed by a nurse and must give deference to the preference of the incarcerated person. Defendants will then document that method of communication and require that their staff and contractors use that method as appropriate when interacting with the incarcerated person during all medical and mental health encounters, booking, classification proceedings, available structured programming (e.g., classes, religious services, etc.), investigative processes, and disciplinary proceedings.

        iii.    Defendants will provide access to Sign Language Interpretation services at all San Diego County jail facilities that house people with

hearing disabilities who use Sign Language Interpretation as their primary means of communication, including with a telecommunication service provider, videophones, VRS technology, and in-person Sign Language Interpretation, as appropriate to ensure effective communication;

        iv.    Defendants will track disability-related effective communication needs, including as to Sign Language Interpretation, through its San Diego County jail management systems; and

        v.    These changes will be incorporated into policy and Defendants will train all deputies, health care staff, and other relevant staff to follow the policy.

    b.    For incarcerated people with mobility disabilities at San Diego Central Jail:

        i.    Defendants will ensure that incarcerated people with mobility disabilities are housed in accessible facilities, based on their accessibility needs, including:

        (1)    No person with a mobility disability using a wheelchair will be assigned to any bed in a triple bunk;

        (2)    No person with a mobility disability will be assigned to the top bed of a triple bunk;

        (3)    Anyone assigned by medical to a lower bunk/lower tier will be assigned to a single or bottom bunk;

        (4)    People with mobility disabilities will be assigned to accessible housing, based on their accessibility needs, which may include accessible beds and clearance space;

        (5)    People with mobility disabilities will be provided accessible toileting, based on their accessibility needs, which if appropriate shall have 2010 ADAS-compliant grab bars and other features; and

          (6)      People with mobility disabilities will be provided accessible showers, based on their accessibility needs which if appropriate shall have 2010 ADAS-compliant grab bars and shower chairs.

    ii.    Defendants' remedial plan will identify each element in each housing unit that they will renovate and any other remedial measures to be taken, as well as the maximum number of incarcerated people with disabilities that can be safely housed in each unit. This portion of Defendants' plan will include staged deadlines for completion of renovations, with at least 25 accessible beds and toileting, which may be located in dormitory housing, becoming available as soon as possible and no later than 90 days from the date of this Stipulation and [Proposed] Order. As noted above, shower chairs will be provided as an interim solution. All renovations and changes required to make accessible housing available to all incarcerated people with mobility disabilities that require ADA compliant housing shall be completed within eighteen (18) months of the date of this Stipulation and [Proposed] Order. This does not include modifications to MOB, PSU, OP Step Down and JBCT as identified below.

    iii.    Defendants' plan must include accessible and safe housing for people with mobility disabilities throughout their incarceration, including accessible cells during the intake and booking process within eighteen (18) months of the date of this Stipulation and [Proposed] Order. The plan to achieve compliance in PSU, OP Step Down and JBCT must include sufficient accessible and safe housing for people with mobility disabilities throughout their incarceration as soon as possible and not later than three years of the date of this Stipulation and [Proposed] Order. Defendants' plan must include interim accommodations made as accessible as feasible for those in these specialized units. The 3% Defendants plan to provide will be determined at the time that construction begins on this second phase.

    iv.    Defendants' plan will ensure that during booking, and at

the request of any incarcerated person, Defendants will evaluate every person to determine whether they have a mobility disability and, if so, what accessibility features and accommodations each person requires. Defendants must then document those accommodations and ensure that the incarcerated person is housed accessibly with their accommodations.

          v.     These changes will be incorporated into policy and Defendants will train all deputies, health care staff, and other relevant staff to follow the policy.

    c.     To the extent that any necessary remedial measures regarding physical plant changes will require an extended period of time (e.g., more than 6 months), Defendants' plan will include interim measures that mitigate significant safety issues for incarcerated people with disabilities as related to beds, showers, and toilets/lavatories, along with the plan for achieving full compliance.

    8.     Within fifteen (15) days of Plaintiffs' receipt of Defendants' proposed plan, Plaintiffs will provide feedback (if any) to the proposed plan as to necessary modifications. Within fifteen (15) days of Defendants' receipt of Plaintiffs' feedback, the parties and the Parties' Experts will confer to address any concerns or disputes.

    9.     Within fifteen (15) days of the above-mentioned meet and confer, Defendants will submit their plan (with any modifications) to the Court. Plaintiffs will submit to the Court objections (if any) to the proposed plan as to necessary modifications within fifteen (15) days of Defendants' submission.

    10.    The Court thereafter shall enter an Order adopting the plan, as revised (if at all) by the Court, in consideration of Plaintiffs' objections.

    11.    Within fifteen (15) days after the Court issues the Order adopting the plan, the parties will agree on a qualified independent expert (or experts). The independent expert(s) will work with Defendants to ensure timely and appropriate implementation of the plan. The independent expert(s) will issue a quarterly report

to counsel for Plaintiffs and Defendants addressing Defendants' progress toward implementation of the plan. Defendants will pay reasonable fees for work performed by the independent expert(s) at Defendants' request and as required to confirm compliance. If Plaintiffs expect to require the independent expert to expend time that would be in excess of $1000 per quarter they shall first meet and confer with defendants and the issue may be brought to Judge Leshner.

12. After the Court issues the Order adopting the plan, Plaintiffs shall be allowed access to relevant documents and records in Defendants' custody and control relevant to the provision of Sign Language Interpretation to incarcerated people with hearing disabilities.

13. Within ninety (90) days of this Order, and for the twelve months following entry of the Order adopting Defendants' plan, Defendants must, on a monthly basis, provide daily housing rosters for the preceding month to the Court and Plaintiffs and marked as Attorney's Eyes Only, reflecting the disability needs of every person incarcerated at Central Jail who have been identified as having a mobility or hearing disability, including information sufficient to describe their mobility disability (if any), hearing disability (if any), effective communication needs (if any), housing unit, bed assignment (including top, middle, or lower bunk), and whether the person's cell or housing unit has 2010 ADAS-compliant toilet grab bars, shower grab bars, and shower seat. Housing does not include intake and holding.

14. Four months after the Court issues the Order adopting the plan, Plaintiffs shall be allowed to inspect with their experts any renovations completed by Defendants at the Central Jail to ascertain whether Defendants have adequately modified their housing for people with mobility disabilities per this order. Plaintiffs may conduct a second inspection of the Central Jail eighteen (18) months after the Court issues the Order adopting the plan.

15. Eighteen (18) months after the Court issues the Order adopting the

plan, the independent expert(s) will assess whether Defendants have implemented their plan adequately to address the deficiencies identified by the Parties' Experts as part of the eighteen (18) month plan.  All components of Defendants' plan determined to be adequately implemented will not be subject to further inspection by Plaintiffs or the independent expert(s).  Inspections may, however, continue if and as necessary for determining whether Defendants have adequately implemented any other components of this or any other Court-ordered remedial plan.

16.   If, following a finding by the independent expert(s) that one or more components of Defendants' plan has been adequately implemented, Plaintiffs form the good faith belief that Defendants are no longer adequately implementing the component(s) of the plan, Plaintiffs will promptly so notify Defendants in writing and present a summary of the evidence upon which such a belief is based.  Within 30 days thereafter, Defendants shall serve a written response stating whether they agree or disagree with Plaintiffs' position.  In the event that Defendants agree, monitoring by the qualified independent expert(s) and Plaintiffs shall resume until adequate implementation is again established.  In the event Defendants disagree, the parties shall present their positions in writing to the qualified independent expert(s). The qualified independent expert(s) will, within 30 days, issue a written decision regarding whether to resume monitoring of the remedial plan component(s) at issue.

### Dispute Resolution

17.   Any party may initiate the dispute resolution process with respect to any matter covered by this Stipulation and [Proposed] Order by providing written notice of a dispute ("Dispute Notice").

18.   Following service of the Dispute Notice, the parties shall undertake good faith negotiations at such times and places as they deem sufficient in an effort to resolve the dispute informally between them.  If, within 30 days after service of the Dispute Notice, the parties have failed to resolve the dispute, either party may request that the qualified independent expert(s) most knowledgeable in the subject

matter of the dispute be permitted to evaluate the issue in dispute and prepare a report. The qualified independent expert(s) must provide the report regarding the area of disagreement to the parties within 30 days of the request.

19. In the event the parties' good faith attempt to resolve the dispute informally proves unsuccessful, the parties shall next seek the assistance, advice, and/or guidance of Magistrate Judge David Leshner. Any party may request that a settlement conference be scheduled within 30 days of the Dispute Notice, unless the parties mutually agree upon an alternative schedule.

20. With the exception of any report prepared by the expert(s), as described above, and any notice that negotiations are concluded, nothing said and no document prepared in connection with the Dispute Resolution proceedings shall be offered in evidence in any subsequent judicial proceeding in this case.

21. This Stipulation and [Proposed] Order will resolve only the issues raised in Plaintiffs' Motions. Plaintiffs expressly reserve all rights to pursue the legal claims and any necessary relief as to all other issues in the operative complaint.

IT IS SO STIPULATED.

Respectfully submitted,

DATED: June 20, 2023         ROSEN BIEN GALVAN & GRUNFELD LLP

                             By: /s/ Gay C. Grunfeld
                                 Gay C. Grunfeld

                             Attorneys for Plaintiffs

DATED: June 20, 2023         BURKE, WILLIAMS & SORENSEN, LLP

                             By: /s/ Elizabeth M. Pappy
                                 Elizabeth M. Pappy

                             Attorneys for Defendants

The Court, having reviewed the above Stipulation of the parties, as well as the pleadings in support and opposition to Plaintiffs' Motions, and good cause appearing, hereby issues the following Order:

1. Defendants shall take the actions described above in the timeframes listed above. The Court further adopts the findings above and directs the parties to follow the procedures and timelines set forth above.

2. These remedies are all consistent with the Prison Litigation Reform Act's requirement that the Court's orders be narrowly drawn, extend no further than necessary to correct the violation of a federal right, and be the least intrusive means necessary to correct the violation. *See* 18 U.S.C. § 3626(a)(1)(A).

3. The Court provisionally certifies a Subclass of all qualified individuals with a hearing and/or mobility disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (i), and who are now, or will be in the future, incarcerated in all San Diego County Jail facilities. The Court appoints Plaintiffs as the provisional class representatives for the Subclass. The Court appoints Plaintiffs' counsel—Gay Grunfeld and Van Swearingen of Rosen Bien Galvan & Grunfeld LLP, Aaron Fischer of Law Office of Aaron J. Fischer, and Christopher Young of DLA Piper LLP—as provisional class counsel. Fed. R. Civ. P. 23(g)(1) and (4).

4. This Order shall apply to Defendants, their agents, contractors, employees, successors in office, and all persons with knowledge of it. No person who has notice of this injunction shall fail to comply with it, nor shall any person subvert the injunction by any sham, indirection, or other artifice.

/ / /

/ / /

/ / /

/ / /

/ / /

5. The bond requirement is waived.

6. The Court shall retain jurisdiction to enforce the terms of this Order.

IT IS SO ORDERED.

Dated: June 21, 2023

*[signature]*
Hon. Anthony J. Battaglia
United States District Judge

12

Case No. 3:20-cv-00406-AJB-DDL
JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION