```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3   DARRYL DUNSMORE, ERNEST         )
     ARCHULETA, ANTHONY EDWARDS, REANNA)
 4   LEVY, JOSUE LOPEZ, CHRISTOPHER   )
     NELSON, CHRISTOPHER NORWOOD, and )
 5   LAURA ZOERNER, on behalf of      )
     themselves and all others        )
 6   similarly situated,              )
                                      )   No. 20-CV-00406-AJB-DDL
 7             Plaintiffs,            )
                                      )
 8   v.                               )   September 18, 2023
                                      )
 9   SAN DIEGO COUNTY SHERIFF'S       )
     DEPARTMENT; COUNTY OF SAN DIEGO; )
10   CORRECTIONAL HEALTCARE PARTNERS, )
     INC.; LIBERTY HEALTHCARE, INC.;  )
11   MID-AMERICA HEALTH, INC.; LOGAN  )
     HAAK, M.D., INC.; SAN DIEGO COUNTY)
12   PROBATION DEPARTMENT, and DOES 1 )
     to 20 inclusive,,                )
13                                    )
               Defendants.            )
14   _____)   San Diego, California

15

     TRANSCRIPT OF DIGITALLY RECORDED VIDEOCONFERENCED PROCEEDINGS
16                   (Discovery Conference)

17

18      BEFORE THE HONORABLE DAVID D. LESHNER, MAGISTRATE JUDGE

19

20

21

22

23   COURT REPORTER:        AMANDA M. LeGORE
                            RDR, CRR, CRC, FCRR, CACSR
24                          U.S. District Court
                            333 West Broadway, Suite 420
25                          San Diego, CA 92101
                            amanda_legore@casd.uscourts.gov
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:      PRIYAH KAUL
                              ERIC MONEK ANDERSON
 3                           Rosen Bien Galvan & Grunfeld LLP
                              101 Mission Street, Sixth Floor
 4                           San Francisco, CA  94105-1738
                              (415)433-6830
 5                           pkaul@rbgg.com
                              eanderson@rbgg.com
 6

 7
     FOR DEFENDANT COUNTY OF
 8   SAN DIEGO:               SUSAN COLEMAN
                              Burke Williams & Sorenson LLP
 9                           501 W. Broadway, Suite 1600
                              San Diego, CA  92101
10                           (619)814-5800
                              scoleman@bwslaw.com
11

12

13

14                              -0-

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (Monday, September 18, 2023)

 2

 3                      P R O C E E D I N G S

 4

 5           THE COURT:  All right.  Good morning, everyone.

 6           This is Dunsmore versus San Diego Sheriff's

 7    Department, et al., Case Number 20-CV-406.

 8           We are on calendar for a discovery conference.

 9           May I have appearances from counsel, beginning with

10    the plaintiffs.

11           ATTORNEY KAUL:  Good afternoon, your Honor.  Priyah

12    Kaul for the plaintiffs.

13           THE COURT:  Thanks.

14           ATTORNEY ANDERSON:  Eric Monek Anderson for the

15    plaintiffs.  Good afternoon.

16           THE COURT:  Thank you.  Good afternoon.

17           ATTORNEY COLEMAN:  And Susan Coleman for the

18    defendants.

19           THE COURT:  All right.  Great.  Thanks, Ms. Coleman.

20           All right.  So let -- let me ask this.  I realize

21    that there is a dispute not just over the -- the merits, but

22    also a threshold issue as to the timeliness of the issues

23    that -- that have been raised; including, for example, the CIRB

24    reports and the County's preparation of a privileged log.  So

25    let me start with this.
```

1          Which issues do the parties agree are truly ready for

2    us to have a discovery conference, figure out the gist of the

3    dispute, and then for me to set a briefing schedule if I need

4    to?

5          And I guess I'll start with you, Mr. Anderson,

6    Ms. Kaul.  Which of the issues does everyone -- does everyone

7    agree, you think, like these are -- these are ripe?

8          ATTORNEY KAUL:  So I think from our perspective, your

9    Honor, there is agreement as to ripeness on everything other

10   than the CIRB issue.

11         THE COURT:  Okay.

12         ATTORNEY KAUL:  Which we think, you know, we're

13   prepared to discuss.  But I think that's the only one where

14   there's a real dispute.

15         I think that the -- some of the deposition issues are

16   still -- there's sort of an ongoing discussion about them.  But

17   the ones that were raised in our email were -- we think we're

18   prepared to discuss.

19         THE COURT:  Okay.  Do you agree Ms. Coleman?

20         ATTORNEY COLEMAN:  Yes, your Honor.

21         THE COURT:  All right.  Well, let's -- let's -- let's

22   talk about them in this order.

23         Why don't we talk, first, about the -- the privacy

24   issue as to RFP Number 3, and then Interrogatory 1.  We'll talk

25   about, second, employee discipline documents responsive to RFP

43.  We'll talk about the -- I guess, let's just then, before

we get to depositions, we'll talk about CIRB third.  And then

we'll talk about the depositions.

So I understand that with the first issue, RFP Number

3 and Interrogatory 1, are -- are not the only written

discovery at issue.  But that's -- that's the overarching issue

between the parties.

Is that correct, Ms. Kaul?

ATTORNEY KAUL:  Yes.  I think that's correct.

THE COURT:  Do you agree, Ms. Coleman?

ATTORNEY COLEMAN:  Yes, your Honor.

THE COURT:  Okay.  So let me ask this, Ms. Kaul.

What -- what information are you seeking in -- let's

just limit it, right now, to RFP 3 and Interrogatory 1, as to

which the defendants are asserting privacy rights.

ATTORNEY KAUL:  Sure.  And before I answer your

question, your Honor, I just want to flag one more thing

because I know we have only 30 minutes.

I would, before we leave, just appreciate the Court's

guidance on our extension for -- our request for an extension

of -- of the timeline to respond and to raise IDCs.  I think

your Honor had previously said that that would be something we

could discuss today.  So I just want to make sure that's

included in your list of -- of items.

THE COURT:  Okay.

1          ATTORNEY KAUL:  So with respect to HIPAA, the

2     objections were raised in response to a number of

3     interrogatories and RFPs.

4          So for the interrogatories, it's 1 through 6.  And

5     the gist of it is we've asked for the identities of class

6     members who have been exposed to certain conditions in the

7     jail.  So, for example, the identities of all individuals who

8     are in with -- with the County's withdrawal protocols who are

9     receiving M.A.T., things like -- or in specialized mental

10    healthcare units, things like that.

11         For the RFPs, I have them listed here.  There are

12    about 15, or so, where this objection was raised.  And they --

13    you know, it's a range of things.  From communications with

14    the -- with NaphCare, with the medical provider regarding

15    medical/mental healthcare incidents; documents that relate to

16    people who, again, are at risk of suicide or self-harm; logs

17    for people who are in -- who have -- are in these mental health

18    units who have had certain kinds of incidents; excessive force

19    complaints, things like that.

20         So it's a range of kinds of issues that implicate,

21    potentially, HIPAA protected material or material that

22    implicates privacy concerns.

23         THE COURT:  Can I ask you a question about that,

24    Ms. Coleman?

25         ATTORNEY COLEMAN:  Sure.

1            THE COURT:  I understand that the parties have

2      reached an agreement on the -- the classes that you will

3      jointly ask Judge Battaglia to certify.  And let's say that

4      moves forward as I fully expect that it will.

5            Once there's an order entered certifying the classes,

6      would your objections on privacy grounds remain, given that

7      presumably the plaintiffs' counsel would take the position

8      these are all of their clients?

9            ATTORNEY COLEMAN:  (Pause.)  Arguably.  Although

10     people may still have a right to object on grounds of privacy,

11     if they wish to opt out, for example.  And not having even been

12     given notice that they're potentially part of a class yet, it

13     seems premature and would violate their privacy to give them

14     all of these documents with names on them.

15            I suppose if we redact them, that's another issue.

16     But we're also talking about -- you know, the population

17     changes daily.  And so to pull up all of these things over a

18     span of time, we're talking about a huge amount of material --

19            THE COURT:  Sure.

20            ATTORNEY COLEMAN:  -- potentially.  So it's also

21     unduly burdensome.

22            THE COURT:  Sure.  Okay.  No, I understand.  I was

23     just sort of trying to look ahead and see how the class

24     certification would affect this dispute.

25            Ms. Kaul, just leaving aside the issue of privacy

1    rights for a moment, I hear what Ms. Coleman is saying, is that

2    the population changes, you know, on a daily basis.

3            Is it the plaintiffs' request to have, you know, a

4    daily update as to all of these interrogatories, for example?

5            Are you asking for the population, for example, of

6    individuals in the withdrawal protocol at a certain point in

7    time, or as of the date the responses are served?

8            ATTORNEY KAUL:  Yeah.  So with respect to the

9    interrogatories, as of the date the responses are served

10   would -- would be adequate.  And the RFPs are similarly limited

11   in time.  In most cases, they only go back as far as January

12   1st, 2021.  And then there are some exceptions that are, you

13   know, for various reasons.

14           But we -- you know, we fully understand that --

15   that -- that the population is changing.  We're prepared to --

16   on our side, you know, move as quickly as possible to -- to

17   make the most of -- of the response of the interrogatory as of

18   the date of the response.  But that's all we're asking for

19   here.  And certainly not a daily or any type of updated

20   response.

21           THE COURT:  Why do the requests go back to 2021?  I

22   mean, why is it not relevant who's there right now?

23           ATTORNEY KAUL:  So -- I apologize.  So for the

24   interrogatories, all the -- the identities are requested as of

25   the date of the response.  It's for the RFPs, for example,

9

1   where we're asking for, you know, audits of the mental health

2   care program, the results or records for audits or quality

3   assurance --

4           THE COURT:  Okay.

5           ATTORNEY KAUL:  -- examinations, where we're going

6   back a couple of years to understand, you know, the recent

7   history of -- of policy changes, practices in the jail, things

8   like that.

9           THE COURT:  Okay.  Is your proposed class for

10  individuals who are now incarcerated or will be?  Not

11  individuals who were incarcerated but are not incarcerated any

12  longer?  That's why I was asking about the interrogatories.

13          ATTORNEY KAUL:  Certainly.  Yeah.

14          THE COURT:  Okay.  With respect to privacy rights,

15  Ms. Coleman, why would the redaction of responsive documents

16  pursuant to the protective order be insufficient to address

17  those privacy concerns?

18          ATTORNEY COLEMAN:  Well, they don't represent these

19  individuals yet.  So with regard to HIPAA and privacy rights,

20  is it enough to have a protective order saying that only the

21  attorneys are going to look at it, but they are potentially

22  going to use it in motions?  Or we could redact the name, I

23  suppose.  But they don't yet represent these individuals.

24          THE COURT:  No.  I understand that -- I think there

25  are two issues.  One is if a class is certified, what changes?

1            But even now, let's say there's not a certified class

2     yet.  My question is, really -- so I understand that HIPAA

3     protects information.  But HIPAA also authorizes the production

4     of protected medical information pursuant to a court order.

5     And to the extent -- is the County's objection, really, that

6     you don't want to produce this information absent a court order

7     compelling you to do so?  Or is there another -- a further

8     dispute?

9            Because one thing you could do is a joint motion for

10    an order either by myself or Judge Battaglia on the directing

11    the production of the information, which I believe would cover

12    HIPAA as well as the California Confidentiality Medical Records

13    Act.  But I don't want to -- if I'm not getting that right, you

14    can tell me.

15            Because I think what you raise is legit, Ms. Coleman.

16    You want to be concerned about HIPAA.  But it seems like

17    there's a way to get that information, if that's really the

18    nature of the dispute, without, you know, full-on briefing on

19    motions to compel, perhaps.

20            ATTORNEY COLEMAN:  Well, if the Court orders it

21    pursuant to the protective order, we'll certainly produce it.

22    And that would allay the concerns about HIPAA and privacy, if

23    it was pursuant to Court order.

24            It's also -- I mean, since we're -- the class is

25    going to be moving forward as of the date of certification and

1  forward and not looking backwards, which should limit

2  production to, you know, a date certain so that it's not unduly

3  burdensome.  If we have to go back multiple years on

4  production, it's going to be just hugely burdensome.

5          THE COURT:  And I haven't seen the request for

6  production.  So we're talking, like, generally about the

7  issues.  Is that something that has been the subject of

8  discussion between the parties, Ms. Coleman?  Is to -- for --

9  at least for the request for production, a reasonable, you

10 know, start date in the past, up to the present, for those

11 documents?

12         ATTORNEY COLEMAN:  I don't know the answer to that,

13 your Honor.  Ms. Pappy was handling some of the negotiations on

14 that front, and she is currently in trial.

15         THE COURT:  Okay.  No, I remember she told me she was

16 going to be in trial, so no problem.

17         Ms. Kaul, what's the plaintiffs' position with

18 respect to an appropriate start date for the production of

19 documents for burden -- you know, proportionality and burden

20 concerns?

21         ATTORNEY KAUL:  You know, your Honor, I think that

22 hasn't been sort of the focus, you know, in terms of what we've

23 been talking about; the HIPAA documents or -- or, more

24 generally, that hasn't been a focus of our discussions.

25 Although, I understand that that's raised in the objections.

1          On an RFP-by-RFP basis, we've been working hard to

2    meet and confer, to try to figure out ways to narrow these.

3          THE COURT:  Okay.

4          ATTORNEY KAUL:  We've figured out some ways to do

5    that on some of them, and some of them it either hasn't been

6    discussed or we just, you know, haven't really reached an

7    agreement there.

8          But I'm not sure that that really -- you know, I

9    think that's somewhat of a separate issue from the privacy one.

10   And I understand defendants' position to be that they need a

11   court order to do that.  I hope that we can leave today

12   understanding whether we can do that through joint motion or

13   whether there has to be some other briefing.

14         I think we just want to get some certainty, since it

15   implicates so many of these discovery issues.  And I think

16   that's sort of separate and apart from the burden -- burden

17   issue.

18         But we're happy to address burden concerns, I think,

19   on a, you know, request-by-request basis, it seems to me, is

20   the best way to do it.

21         THE COURT:  Okay.  Stand by.

22         (Pause.)

23         THE COURT:  Okay.  All right.  Here's what I would

24   say on this issue with respect to the privacy.  I agree that

25   there are two separate -- the privacy and the burden are two

 1    separate yet related issues.

 2            And I'm not going to put Ms. Coleman on the spot

 3    right now to agree that the County's going to be on board

 4    with -- with a joint motion.

 5            But what I will do is I think it makes sense for you

 6    all to meet and confer as to that specific topic.

 7            When we were -- you are probably aware of the order

 8    that I issued in *Estate of Emily Soserna (phonetic) versus the*

 9    *County*, that does contain at least an analysis, in the context

10    of that case, regarding the sufficiency of a protective order

11    to address concerns related to third-party privacy and HIPAA

12    and the California Confidentiality of Medical Records Act.

13            I'm not saying that controls.  There may be

14    additional facts that are relevant here that were not before me

15    in that case.  But I think it -- it does provide some guidance,

16    I hope, to the parties on that issue.

17            What I would propose to do is provide the parties

18    with a deadline to meet and confer with respect to both the

19    privacy issues and how those can be solved, whether it's

20    through joint motion or needs to be a motion to compel, as well

21    as the burden issues by trying to figure out what -- the dates

22    for which the plaintiffs truly need information.

23            And I -- let me ask you this, Ms. Coleman.  I

24    think -- I seem to recall that you were getting ready to start

25    a trial as well.  And I don't want to place an undue burden on

1    you, personally, given that Ms. Pappy is in trial.

2          If I -- would you be in a position to meet and confer

3    with plaintiffs' counsel over the course of this week on this

4    issue?

5          ATTORNEY COLEMAN:  Yes, your Honor.  My trial got

6    vacated and has further briefing.  So --

7          THE COURT:  You sound thrilled about that.  So,

8    great.  I got you.

9          All right.  Well, with that being said, why don't I

10    direct the parties to meet and confer by September 25th.  To

11    the extent that you all cannot reach an agreement, I think I

12    would like to find time for us to -- what I would propose to do

13    is hold a further hearing on September 28th, at 4:00 p.m.

14          Does that work for you, Ms. Coleman?

15          ATTORNEY COLEMAN:  I have an all-day depo but --

16          THE COURT:  Well, then, how about -- I could also do

17    September 29th, at 4:00 p.m.  Is that better?

18          ATTORNEY COLEMAN:  No.

19          27?  26?  25th?

20          THE COURT:  Well, the 25th is going to be your

21    deadline to meet and confer.  And I have got criminal duty that

22    afternoon.  I've got an all-day -- or afternoon settlement

23    conference on the 26th and as well as on the 27th.  So is

24    the --

25          ATTORNEY COLEMAN:  Let's do it on the 28th, then, and

15

1    I'll take a break then.

2            THE COURT:  Well, if that turns out to be a problem

3    for you, Ms. Coleman, you can let me know.

4            I could also -- you said your -- your deposition is

5    all day on the 28th?

6            ATTORNEY COLEMAN:  Yes.

7            THE COURT:  Would you rather do it in the morning of

8    the 29th, rather than the afternoon?

9            ATTORNEY COLEMAN:  Like before 10:00 a.m., you mean?

10           THE COURT:  Sure.

11           ATTORNEY COLEMAN:  Sure.

12           THE COURT:  Would that be better for you?

13           ATTORNEY COLEMAN:  Yes, thank you.

14           THE COURT:  Sure.

15           Ms. Kaul, would that be okay with you on the 29th, at

16   9:00 a.m.?

17           ATTORNEY KAUL:  That should be fine, your Honor.

18   Yeah.

19           THE COURT:  Okay.  All right.  Well, I appreciate you

20   all accommodating each other's schedule.

21           So I'll set a further hearing on -- and that -- and

22   to the extent that you all have resolved your issue, you can

23   just let me know and I'll vacate that hearing.

24           That's only in the event that there is a -- a need

25   for us to figure out exactly what's in dispute, and then I will

16

1   give you a tight briefing schedule, to let you move forward.

2          ATTORNEY KAUL:  Your Honor, can I throw one -- one

3   other thought out there?  Is there --

4          THE COURT:  Sure.

5          ATTORNEY KAUL:  Oh, so the 25th would be -- okay.

6   I'm sorry.  That -- the 29th works.

7          Thank you.

8          THE COURT:  Okay.  (Pause.)  To the extent that there

9   is a dispute between the parties after you meet and confer, it

10  would be helpful for me to see at least a representative sample

11  of the discovery in dispute, so that I can provide some

12  meaningful guidance on the 29th.  So if you could just file

13  that, please.

14         You can actually -- you know, what you could do?  You

15  could even just submit it to me, to my e-file, for that

16  discovery, without having to file it and worry about a motion

17  to seal.

18         All right.  Okay.

19         ATTORNEY COLEMAN:  Thank you.

20         THE COURT:  Sure.  That's issue number one.

21         And, Ms. Kaul, I did originally block out a half hour

22  for this, and you mentioned not wanting -- wanting to raise the

23  additional information.

24         I can -- I've got some flexibility to go till about

25  1:15, if that works for everyone, so we can, you know, be

1    thoughtful about each of these.

2              Employee discipline documents.  Is it privacy or --

3    and relevance?  Or just one or the other are the objections,

4    Ms. Coleman?

5              ATTORNEY COLEMAN:  Well, privacy, relevance, peace

6    officer Bill of Rights.  There's a number of objections to

7    production of employee discipline documents, particularly peace

8    officers.  But -- also with regard to medical.

9              THE COURT:  I see.

10             Well, what does Request for Production Number 43

11   seek, Ms. Kaul?

12             ATTORNEY KAUL:  It asks for documents and

13   communications relating to disciplinary actions taken against

14   employees related to the provision of inappropriate,

15   insufficient, or substandard healthcare at the jail.

16             So we're specifically looking for, you know,

17   instances of -- of inadequate provision of healthcare, which

18   relates directly to our claims.

19             THE COURT:  And it's your view that's not duplicative

20   of the other discovery that you've served?

21             ATTORNEY KAUL:  Your Honor, I -- I don't think it is.

22   It's, I guess, potentially subsumed by -- by certain of our

23   other requests.  But these are -- these are separate.  I think

24   that I could imagine a world and -- based on my understanding

25   of how these may be maintained, I think they could certainly be

1    separate from any of the records that we've sought through

2    other RFPs.

3           And part of it, you know, just to expand on that,

4    your Honor, is not just about the -- the -- it's learning and

5    obtaining evidence not just about the incidents as it relates

6    to, you know, our clients.  But it's -- it's also having an

7    understanding of defendants' systems, or lack thereof, for

8    addressing and holding accountable individuals in the jail

9    who -- who fail to meet these standards for providing

10   healthcare.

11          THE COURT:  You want records pertaining to every

12   disciplinary proceeding involving county employees in the jails

13   for failure to provide healthcare, and so forth?

14          ATTORNEY KAUL:  Yes.  From January 1st, 2021, to the

15   present.  And, you know, without knowing -- I think -- I think

16   it does matter the qualifier; that it's related to the

17   substandard provision of healthcare.  I don't think it's --

18   it's every incident or every sort of disciplinary action.  I

19   think that, actually, that qualifier makes this a much narrower

20   set of incidents and set of documents, potentially.

21          ATTORNEY COLEMAN:  And, also, if I might respond,

22   your Honor.

23          THE COURT:  Sure.

24          ATTORNEY COLEMAN:  It requires -- requires that much

25   more work to determine if it's for substandard medical care, as

19

```
 1   opposed to some other breach of duty.

 2              THE COURT:  How does the County maintain -- is there

 3   a central database of employee disciplinary records,

 4   Ms. Coleman?  Or does it require a -- a manual review?

 5              And I realize that you -- that doesn't address the

 6   privacy issue.  I'm talking about the burden as well.

 7              ATTORNEY COLEMAN:  I don't know.  I know they have

 8   some indexes, like for use-of-force type stuff.  But for when

 9   we come to healthcare workers, some are County, some are in

10   NaphCare.  Some, in the past, were, you know, Liberty, and

11   other providers.  So there may be more than one place to look

12   for these things.

13              THE COURT:  Why is this information relevant,

14   Ms. Kaul?

15              And I can see if your argument that the -- the, you

16   know, instances of alleged substandard provision of health care

17   would be relevant to the plaintiffs' claim.  But we're going,

18   you know, a step further in saying that -- post-incident

19   disciplinary proceedings.

20              I can see you on the former, but I'm having a little

21   bit more trouble on the latter, as to why disciplinary

22   proceedings really would be relevant to a claim or defense and

23   proportion of the needs of the case if you are receiving

24   information about instances where there was an alleged failure

25   to provide healthcare to an inmate at one or more county
```

1    facilities.

2            ATTORNEY KAUL:  Sure.

3            I think it's highly relevant, your Honor.  So -- so

4    the -- I don't think that we need to know every -- you know,

5    every aspect, every detail of what happened in the course of

6    the disciplinary proceedings.

7            I think there is, you know, potentially a line to be

8    drawn there.  But I'm not sure it -- any of those lines would

9    satisfy the objections.

10            But, you know, the reason it's relevant is -- and we

11   see this in -- in -- in our firms' cases, in CDCR, things like

12   that.  The process for identifying and holding accountable

13   staff -- you know, staff who provide substandard care actually

14   does go to the merits.  It's part of a system for ensuring, you

15   know, that those issues are handled.  That there's proper

16   remediation.

17            When problems arise -- you know, if -- if defendants

18   have found that what -- some of their own employees have

19   committed some misconduct, the way that they handle those does

20   actually go to -- to this.  Are they -- are they -- you know,

21   are they provided training services after a staff member

22   commits some type of misconduct?  What does that training

23   entail?  Is that the discipline?  Is there something further?

24   Further steps that are taken?  That all sort of goes to the

25   systems that are set up for -- for providing, you know, proper

1  medical care in the jail setting.

2          THE COURT:  I see.

3          ATTORNEY COLEMAN:  But, your Honor, this is sort of a

4  backwards look at it, to determine if things, in retrospect,

5  were done improperly.  That's not one of the claims in

6  plaintiffs' complaint; that there's not adequate disciplinary

7  measures, or that they're -- so, you know, we're not tasked

8  with looking at the disciplinary measures.  They are saying

9  that the medical care was inadequate.

10          THE COURT:  Right.  I think what Ms. Kaul is saying

11  is that, you know, they have -- they're alleging a policy and

12  practice of failing to provide adequate medical care.  And that

13  if somebody fails to provide adequate medical care and isn't

14  properly disciplined -- like they just are let off scot-free,

15  for example -- that that goes to -- that would be relevant to

16  establish a policy and practice.

17          I think that's the argument that I heard from you,

18  Ms. Kaul.  Is that correct?

19          ATTORNEY KAUL:  It is.  But your Honor said it much

20  better than I did.  But, yeah -- (laughing).

21          THE COURT:  No.  But having said it --

22          ATTORNEY KAUL:  Right.

23          THE COURT:  -- I'm still not --

24          ATTORNEY COLEMAN:  And I see that argument, your

25  Honor.  But, on the other hand, I mean, isn't this something

1    that we could find out about the practices for that in terms of

2    looking at the policies or taking the deposition of PMKs about

3    does that actually occur?  How often does that occur?  Without

4    getting into people's individual disciplinary files?

5              THE COURT:  No, I understand your point.

6              And that's -- that's something that I really would

7    want to -- to think through because I -- and also think through

8    in the context of what other discovery has been produced.

9              And I will confess that I did not review the entirety

10   of the orders on expedited discovery, as -- and I'm not

11   familiar with, you know, exactly what RFPs have been propounded

12   by the plaintiffs that would cover at least the -- you know,

13   evidence of alleged failures to provide, you know, adequate

14   healthcare.

15             So let me ask you this.  Are the parties at an

16   impasse on RFP 43, Ms. Kaul?

17             ATTORNEY KAUL:  I think to the extent that the

18   records won't be produced, then I think we are.

19             THE COURT:  Okay.

20             ATTORNEY COLEMAN:  Yeah.

21             THE COURT:  All right.  I don't want -- what I would

22   like to have -- I don't want to have piecemeal discovery

23   briefing if we can -- if we can help it.

24             Let me ask this very generally.  Have the plaintiffs

25   propounded requests for production that seek information about

1  instances of alleged substandard provision of healthcare, based

2  on -- on the front end, as opposed to disciplinary proceedings

3  after the fact?

4       ATTORNEY KAUL:  Your Honor, I would have to look

5  through -- look through our requests.  But I think that is --

6  I -- I think that is probably captured.  The -- I think that

7  probably is captured by some of our requests.  Everything that

8  precedes any -- any -- any consequences or outcome or

9  investigations into misconduct.

10       THE COURT:  You're right.  So with that being said,

11  that would inform my analysis.  And so I don't want to put you

12  on the spot by saying yes or no for sure, given that -- I don't

13  want you to have to answer that on the fly, Ms. Kaul.  I think

14  this is something that I would want to know more about in the

15  context of any motion to compel; as to what -- what information

16  has been sought and what has been provided about the -- the

17  alleged instance, the facts and circumstances of these alleged

18  instances, in addition to the requests for subsequent

19  disciplinary proceedings.

20       Does that make sense?

21       ATTORNEY KAUL:  It does.  Thank you, your Honor.

22       THE COURT:  Well, let me give that some thought, and

23  we'll come back to it.

24       Critical Incident Review Board.  What -- what

25  specific information are the plaintiffs seeking that the

1   defendants object to?

2          ATTORNEY ANDERSON:  Your Honor, our request is for

3   all CIRB reports, going back to 2021 on in-custody deaths only.

4   And the defendants have objected to providing any of that.

5          THE COURT:  Okay.  Ms. Coleman, is that an

6   attorney-client privilege objection?

7          ATTORNEY COLEMAN:  Yes, your Honor.  And, also, we

8   know there's been some orders on this issue but they're not yet

9   final.  So it could -- seems to be sort of we want to see how

10  that plays out in the court.

11         THE COURT:  Okay.

12         ATTORNEY COLEMAN:  I mean, it --

13         THE COURT:  But I -- look, I issued one order, and

14  the objection was overruled.  I issued another order that

15  covers probably all of the reports that you're seeking --

16  again, in the context of a different case.  So I'm not

17  prejudging the issue here as to relevance or proportionality.

18  But that is -- I mean, I don't know when the district judge is

19  going to rule on the County's objection that was filed, I

20  think, last week.

21         So I guess is it your thought, Ms. Coleman, that we

22  should just stay that and see what Judge Burns does?

23         And, if so, you know, this is going to be -- judge --

24  well, however I rule, whoever objects is going to be appealing

25  if it's Judge Battaglia.  So I guess that's my question.  Why

1    should we wait for Judge Burns, in the other case, when any

2    objection is going to be taken to Judge Battaglia in this case?

3              ATTORNEY COLEMAN:  Well, it might -- the County may

4    seek a written writ, or something, too, to get a higher court

5    ruling on that, if they're ordered to produce them.

6              THE COURT:  Sure.  No, I understand.  Okay.  But --

7              ATTORNEY ANDERSON:  Your Honor, if I could -- I think

8    that the suggestion that there might be a writ and that this

9    order would be appealed to Judge Battaglia is part of what is

10   motivating our desire to bring the issue to the Court now.

11   These are documents that are highly relevant and critical to

12   our case.

13              And so if it's going to take a long time for them to

14   be resolved, and the Court's familiar with the issue --

15   understanding the context of this case may be different.  We --

16   you know, we're eager to get started.

17              THE COURT:  No, I understand.

18              And, Ms. Coleman, I hear what you're saying about

19   the -- either party, no matter how I might rule on it, may well

20   seek review by Judge Battaglia.  And, if so -- and otherwise.

21              I'm not inclined to simply defer this issue in this

22   case pending a ruling by Judge Burns to -- in an order I issued

23   in another case.  I understand why, Ms. Coleman.  But I think

24   I -- I'm not comfortable with just waiting on it.

25   Understanding that the parties would be preserving their rights

1    in this case to any discovery order that I issue, whether in

2    favor of the plaintiffs or the defendants.

3            So with that being said, other than a timeliness

4    issue, what -- is there another reason why this issue would not

5    be ripe for a motion, Ms. Coleman?

6            ATTORNEY COLEMAN:  No, your Honor.  We just feel

7    strongly about the attorney-client privilege.

8            THE COURT:  Sure.  Oh, and I'm not going to rule on

9    it now.  And, certainly, I would want to understand from the

10   County's perspective.

11           Let me ask you this, Ms. Coleman.  I read in the

12   newspaper, the other day, that there's a bill that's before

13   Governor Newsom that might be relevant to this issue.  Is that

14   correct?

15           ATTORNEY COLEMAN:  I'm not aware of that.  I was

16   prepping for trial until pretty recently.

17           THE COURT:  All right.  Ms. Kaul, are you familiar

18   with what I'm talking about?

19           ATTORNEY KAUL:  I'm not, but my colleague might be.

20           ATTORNEY ANDERSON:  I'm only aware in general, so not

21   prepared to talk about it.

22           THE COURT:  That's fine.  I just -- there is a -- a

23   bill that has been introduced and amended, so I don't -- the

24   details are not relevant.  And, frankly, the fact that it's not

25   yet law or may never be law is -- is not going to defer me from

1    ruling on the issue.  But the -- that's why I was curious.

2              So forget about that.  Let's move forward.  And I'll

3    include that in what we're talking about for purposes of

4    briefing.

5              Let's move on to the 30(b)(6) deposition notices.

6    That there is an inclusion of the word "practices" that is in

7    addition to policies and procedures.

8              Is that right, Mr. Anderson?  Ms. Kaul?

9              ATTORNEY ANDERSON:  Yes, that's correct.

10             THE COURT:  All right.  I don't have the 30(b)(6)

11   deposition notice in front of me.

12             What's the objection, Ms. Coleman?

13             ATTORNEY COLEMAN:  So some facilities have practices

14   that differ from the policies.  The County does not.  I mean,

15   they can certainly ask deponents if there -- is there a

16   practice that differs from the policy?  Is there -- you know,

17   do deputies do something else when they're doing safety checks,

18   for example.

19             But to have us designate someone on practices, we --

20   we don't have practices that are different from -- or we're not

21   supposed to.  I mean, people get disciplined if they're

22   deviating from policy and creating their own practices.

23             THE COURT:  But if there are any practices -- let's

24   say -- I don't know -- what -- what's an example that we could

25   just use in concrete terms?

28

```
1        ATTORNEY COLEMAN:  Let's say safety checks.  They're
2   supposed to check every 15 minutes for suicide watch.
3        THE COURT:  Okay.
4        ATTORNEY COLEMAN:  And if someone's practice is to do
5   it something else, that would be in violation of policy.
6        THE COURT:  Okay.  Let's just -- for purposes --
7   purely hypothetical -- there's a practice at one facility to do
8   it every 30 minutes instead of 15 minutes.  Just, again, purely
9   hypothetical.
10        Is it the County's position that the 30(b)(6)
11   deponent would only be prepared to talk about the 15-minute
12   formal policy or procedure, even if one or more facilities have
13   the practice of doing it every 30 minutes?
14        And, if so, how would the plaintiffs get that
15   information, that the policy is not being followed?
16        ATTORNEY COLEMAN:  Well, I think this can be
17   handled -- instead of designating someone on practices, we
18   designate someone on policies, and then they quiz them.  Are
19   these followed?  Is there a different practice?
20        They could still ask about it in the depositions.
21        THE COURT:  Is this really -- is this -- is there
22   really disagreement between the parties, then?  Because are you
23   saying that the 30(b)(6) deponent would be prepared to talk
24   about the practices of each of the facilities?
25        ATTORNEY COLEMAN:  Well, we're having a resistance on
```

1    designating someone to talk about practices as distinct from

2    policies as a 30(b)(6).

3              So they've listed a number of topics.

4              THE COURT:  Um-hmm.

5              ATTORNEY COLEMAN:  Which, you know, is going to yield

6    more than one witness.

7              To the extent that -- if there are practices

8    different from policies, if that's a separate person, we -- we

9    don't recognize practices as different from policies.  But if

10   someone would come and talk about policies, should, yes, I -- I

11   agree, also be prepared to talk about if the actual practices

12   differ from policy, or what is done when people don't -- don't

13   follow policy.

14             THE COURT:  Why are you -- so I guess what I'm trying

15   to struggle with, Ms. Coleman, is if the person who is going to

16   be testifying will be prepared to testify on practices, which

17   would be the actual what's happening in a particular facility,

18   what -- what's the objection to having a 30(b)(6) designee on

19   practices?

20             I'm just not following.  Sorry.

21             ATTORNEY COLEMAN:  I'm defending an objection that I

22   wasn't involved in initially.  But I guess I could see a

23   situation where there's a -- to the extent they have to be

24   familiar with practices and not just the policy, then you could

25   have eight different people, if there's eight facilities.

1        THE COURT:  But isn't it somebody -- it doesn't have

2   to be someone with personal knowledge, as long as they make a

3   reasonable inquiry, isn't it?

4        ATTORNEY COLEMAN:  True.  They could become the most

5   knowledgeable.

6        THE COURT:  Well, it doesn't -- it's not a person

7   most knowledgeable.  It's a designee.  So it doesn't have to be

8   the person that is actually the most knowledgeable based upon

9   personal knowledge.

10        And I guess that's what I'm really getting at.  Is if

11   you have somebody who's going to be talking about policies and

12   procedures for men's central jail, on a particular topic, why

13   could -- let me just put it this way.  I'm not going to

14   foreclose the County from, you know, either take -- keeping

15   this position and having the plaintiffs move to compel.  I

16   just -- all I can say is, right now, I -- it seems to me that

17   this really is something that can be covered by an

18   appropriately prepared 30(b)(6) designee to talk about if the

19   practices in any facility are consistent with policy or not

20   consistent with policy.

21        I would think that would be appropriate for a

22   30(b)(6) designee.  Because if the policy says one thing but

23   one facility is doing something totally different, I think the

24   plaintiffs are probably entitled to know that.

25        So with that --

1          ATTORNEY COLEMAN:  That's fine, your Honor.

2          THE COURT:  Okay.  Got it.

3          Ms. Kaul, is there anything more we should talk about

4   on this one?

5          ATTORNEY ANDERSON:  No, your Honor.

6          THE COURT:  Oh, Mr. Anderson.  Sorry about that.

7   Okay.

8          ATTORNEY ANDERSON:  No problem.

9          ATTORNEY COLEMAN:  Well, we did have a dispute about

10  the -- you know, the number of people and whether they could be

11  on Zoom versus in person.  Or if they are in person, they

12  should be at our San Diego office, which is very close to the

13  central jail.

14          But we -- you know, instead of having three or four

15  attorneys at each one on behalf of the plaintiffs, we would

16  like to have it limited just before they can -- you know, just

17  bill for the first two attorneys, so that we are not later hit

18  with a huge fee.

19          THE COURT:  Hold on.  No, I understand your concern

20  about fees.  And -- but at the same time, it strikes me that

21  that's premature right now.  Let's say ten attorneys show up

22  for a deposition on behalf of either plaintiff -- well, on

23  behalf of the plaintiffs.  And your position is that's too many

24  attorneys.

25          Isn't the appropriate time to litigate that later on,

1    if there's ever an application for fees made, where you would

2    point out, "Hey, that was -- that was excessive"?

3              I mean, I guess I'm reluctant to say, you know, to

4    the plaintiffs, from the jump, "one attorney," "two attorneys,"

5    when it really is going to be a question of reasonableness.

6    Perhaps, later on in the litigation, if the plaintiffs are ever

7    in a position to state their fees.

8              That's -- that's my --

9              ATTORNEY COLEMAN:  Well, we thought it might be wiser

10   to raise it now.  And, also, we had suggested doing some of

11   these by Zoom, and limiting the amount of time for each one.

12   Because all of the plaintiffs' attorneys, except for one, are,

13   you know, in Northern California.

14             THE COURT:  Well, and -- okay.  Fair enough.

15             Let's talk about Zoom and timing.

16             But I will tell you this.  For purposes of regulating

17   how many attorneys may participate, I'm not inclined to do

18   that.  That certainly is something -- you've raised it on the

19   record.  The plaintiffs are aware of your position that there

20   is a point at which there are too many attorneys for purposes

21   of making a -- you know, a reasonable fee demand at some

22   prospective point in the future.  Fair enough.

23             And I -- Ms. Kaul and Mr. Anderson hear you on that

24   one, and they'll proceed as they deem fit.

25             But with respect to whether the deposition should

1   take place in person or via Zoom, I generally rely on the

2   parties to figure that one out for themselves based on the

3   needs of the case.  Same for timing.  But if that's something

4   that would be -- is necessary for me to be involved in, I will.

5   I just need more information.

6          So let me ask this, Ms. Kaul.  Leaving aside how many

7   attorneys are going to attend a deposition -- whether in person

8   or via Zoom, or some combination -- is there a dispute over

9   whether the depositions should take place via Zoom or in

10  person; at all?

11         ATTORNEY KAUL:  I think there is.

12         ATTORNEY ANDERSON:  Yes.

13         ATTORNEY KAUL:  And, your Honor, I'm sorry.

14  Mr. Anderson and I are splitting up argument on different

15  issues.  So I'll defer to him on this point.

16         THE COURT:  That's fine.

17         Go ahead, Mr. Anderson.

18         ATTORNEY KAUL:  Thank you.

19         ATTORNEY ANDERSON:  Yes, your Honor.

20         Our position is that the depositions should be in

21  person.  They can be at San Diego, in co-counsel's office,

22  which is about 14 miles from central jail or ten miles from the

23  sheriff's headquarters.  There's -- we don't see a burden on

24  all of the employees, who are presumably in the county, to go

25  do those in person.  And there's a lot of benefits especially

1   for the deposition of a party like this, to having in-person

2   assessments of credibility.

3           These are probably likely to be pretty

4   document-intensive depositions.  And it's just easier to show a

5   witness in person than over an online platform.  So I think we

6   are at an impasse on that issue, your Honor.

7           THE COURT:  All right.  Ms. Coleman, again, leaving

8   aside how many attorneys from plaintiffs' side are going to

9   attend the deposition, and that will be figured out at some

10  point in the future, perhaps.  What -- I tend to defer to the

11  parties and their judgment.  Again, as I said, about whether

12  the deposition should be in person or via Zoom.

13          Is there an objection to taking the 30(b)(6)

14  depositions in person, here in San Diego?

15          ATTORNEY COLEMAN:  Well, just for attorney's fee

16  purposes and for the cost of airfare and lodging, and all of

17  that, we had proposed Zoom.  There's really no reason to have

18  to be in person versus on Zoom and showing documents via Zoom

19  or providing them in advance to the parties.  But we will be --

20  we'll leave it to the Court's discretion.

21          And I had also suggested our office, if it's in

22  person, so that it's walking distance for -- for the people

23  coming from central jail.

24          THE COURT:  Okay.  Well, that -- you've now made that

25  offer on the record to Ms. Kaul and Mr. Anderson.  That you are

1   making accommodations to take the depositions via Zoom and to

2   have a more convenient location; even here, within San Diego,

3   if they're in person.  That all would be in the mix, in terms

4   of any later fee request and your view that documents can be

5   shown easily through the screen share function of Zoom.

6           So I would say this.  I -- I'm not going to bar you

7   from taking that position that the depositions should be via

8   Zoom, Ms. Coleman.  I can tell you that I would be inclined,

9   for -- based on my knowledge of the case and the nature of the

10  topics under consideration, to -- if this were the subject of a

11  motion to compel, to allow the plaintiffs to take the

12  depositions in person if they so choose to do so.  But the

13  record is also pretty clear that you're offering everybody via

14  Zoom as a way to conserve fees and costs.  And that may be a

15  factor; again, if fees and costs are ever again before Judge

16  Battaglia.

17          ATTORNEY COLEMAN:  Thank you.

18          THE COURT:  Sure.

19          Now, what about -- do we need to resolve a dispute --

20  or is there a dispute -- and you're welcome to tell me "no," if

21  there's not -- with respect to the timing of the depositions?

22  It sounds like the duration of the depositions -- there's a lot

23  of Rule 30(b)(6) designees.  I think -- I would hope the

24  parties are working on reasonable limits and the plaintiffs

25  aren't planning to depose everyone for seven hours apiece.

36

1          So let me just start with Ms. -- Mr. Anderson.  Is

2     this your issue?

3          ATTORNEY ANDERSON:  Yes, it is.

4          THE COURT:  Okay.  Great.

5          Have you all had any discussions with Ms. Coleman and

6     Ms. Pappy about timing for the 30(b)(6) depositions and how

7     you're going to work together to figure this out in a way that

8     works for everyone?

9          ATTORNEY ANDERSON:  Yes.  I -- we've been discussing

10    the issues.  And I think they're not set for IDC yet.  We're

11    hoping to continue to discuss and reach an agreement.  But I

12    know that our colleague has been discussing with Ms. Pappy on

13    that issue.

14         THE COURT:  Is that something you think would benefit

15    from additional discussion between the parties?

16         ATTORNEY ANDERSON:  I think there is additional

17    discussion ongoing.

18         I'm understanding Ms. Pappy has a trial right now.  I

19    think she said she would pick it up when she's able.  But I do

20    think, yes, additional discussion between the parties is

21    necessary and would be helpful.

22         THE COURT:  What do you think, Ms. Coleman?

23         ATTORNEY COLEMAN:  I'm happy to try to work with them

24    on this.

25         Ms. Pappy is in a state court employment trial.  So

1    it's likely to be about a month before we hear from her again.

2            So -- but I'm --

3            THE COURT:  Gotcha.

4            Well, hopefully she comes up for air in less than a

5    month.  That sounds like quite a long trial, but figuring it

6    out.

7            Let me just say this, Ms. Coleman.  Thank you for

8    picking up the ball and moving it forward.

9            I have got to think you all will figure out how to

10   resolve the issue of deposition and timing.  If you can't, I

11   will.  But you all know the case better than I do.  And I will

12   do my best to give you thoughtful rulings on this.  But, in my

13   experience, it is almost always better for you all to figure

14   this out on your own before I jump in and start making

15   decisions that are based on a knowledge basis that is

16   necessarily less robust than any of you all.

17           So with that -- with that being said, here's what I

18   would like to do.  There's a lot for you all to talk about.

19   And then I walk to talk about the timeline that Ms. Kaul

20   mentioned.

21           But on these issues, I -- I want to give you time to

22   talk but I also want to keep this moving forward.  I realize

23   that you -- (indiscernible) something real quick.

24           I mean, you -- right now, you don't have any dates

25   beyond the deadline for motion for class certification, which

38

1    is hopefully going to be moot if you file your joint motions.

2    I expect you will.

3              So with that being said, let me -- how much time do

4    you think would be helpful for you to meet and confer on the

5    issues we discussed, and then come to a definite conclusion as

6    to which issues require a motion to compel, Ms. Kaul?

7              ATTORNEY KAUL:  You mean as to all of the issues

8    discussed today?

9              THE COURT:  Yes.

10             ATTORNEY KAUL:  You know, we want to move as quickly

11   as possible as well.  So, you know, on our side, I think, you

12   know, looking ahead to -- to next -- next week, you know --

13   which is what we talked about on -- on the privacy and HIPAA

14   issues -- I would think that we can do -- you know, over the

15   next week, week and a half, make some progress on all of these

16   issues.  And then, you know, come back to the Court with --

17   with where we are on all of them and which ones need additional

18   briefing.

19             THE COURT:  That would be ideal, if the parties can

20   do that.  Because I really -- I don't want to have piecemeal

21   discussions of the issues.

22             Ms. Coleman, are you in a position to engage in some

23   meaningful meet-and-confers with Ms. Kaul and Mr. Anderson over

24   the next week?

25             THE WITNESS:  Yes.  That's fine, your Honor.

1          THE COURT:  Okay.  Great.  I appreciate that from all

2     of you.  And I will look forward to making final decisions as

3     to what issues are truly at an impasse on September 29th.

4          And then just be aware that I will provide -- if

5     there are disputes that need resolution, I'll give you dates on

6     a motion to compel in -- in very short order.

7          Two other issues that we should address.  One is the

8     other discovery conferences that I deferred, that Ms. Kaul

9     mentioned.  And the second is I wanted to ask about the motion

10    for a protective order with NaphCare.

11         Let's -- let's take the first issue about the other

12    discovery conferences.

13         What other issues are in -- are lingering, Ms. Kaul,

14    that we did not address today?

15         ATTORNEY KAUL:  So I think -- I think my colleague

16    can help me with this.  But I know, you know, one significant

17    issue is as it relates to ESI.

18         I think that's, arguably, maybe the biggest issue

19    that we still have, which is -- you know, our requests that are

20    seeking communications, we are still working and meeting and

21    conferring on -- on search terms, on narrowing those.  You

22    know, we want to make them reasonable but we need some

23    information from the County in order to -- to -- to figure out

24    what's -- you know, what they have.  And that's still, you

25    know, ongoing.

```
 1              THE COURT:  Okay.

 2              ATTORNEY KAUL:  As to the other RFPs, you know -- for

 3   example, we have one request for other incident reports.  We're

 4   waiting for more information about the nature of the records

 5   that they found in their search to, again, try to figure out

 6   what's -- what's responsive, what's necessary, if there are any

 7   ways to narrow.

 8              We provided more information to them about what we're

 9   seeking on certain quality improvement documents that we've

10   sought.  So there are just a number of different kinds of

11   issues that we're working on, where we're working on making

12   progress; with ESI being one that jumps out as the significant

13   one.

14              THE COURT:  Let me ask you all this.  I --

15              ATTORNEY COLEMAN:  And one other issue that we're

16   working on, your Honor -- sorry to jump in.

17              THE COURT:  That's okay.

18              ATTORNEY COLEMAN:  They want every single person's

19   custody and medical file.  So that's -- that's an issue.

20              THE COURT:  Every -- okay.  Well, I'll tell you

21   what --

22              ATTORNEY COLEMAN:  In terms of -- I mean, they're

23   starting with the people who have disabilities, that are

24   already certified.  But they, you know --

25              THE COURT:  Then here's what I think we should do.
```

41

1          I want to be in a position to resolve all of your

2   discovery disputes.  And, if necessary, do so at an in-person

3   hearing so that we can really dig in together.

4          So here's what I think would make sense, and I would

5   like your thoughts on this.

6          I want to keep September 29th, at 9:00 a.m.  I'm

7   going to block out a full hour for you all, so that we can

8   address anything that needs to be addressed, including these

9   issues that you all have raised that we did not fully flush out

10  today.

11         I will rely on you all to meet and confer and really

12  figure this all out.  You've made remarkably good progress in

13  your discussion of other issues, and I have no doubt that

14  everyone's acting to try and -- in good faith to try to figure

15  this out.  And if there are any other disputes left, I can

16  resolve them.

17         Would it be possible to give me a joint status report

18  as to the issues that remain in dispute by, say, the 27th?  It

19  doesn't have to be, you know, really long.  I just want to know

20  what the issues are so we can tick through them at the further

21  discovery conference on the 29th.

22         I'm talking about like just -- again, no argument.

23  Just like, here's the issue.  We need to talk about it more.

24         Would that be doable, Mr. Anderson, Ms. Kaul?

25         ATTORNEY KAUL:  I think that's doable.  I'll just

1  flag, I think there are some -- we served some subsequent

2  discovery requests that are still out -- outstanding.  Requests

3  that, I think -- maybe five on our thesis.  So they're smaller,

4  and I anticipate resolving these -- a lot of these issues on

5  our RFPs (indiscernible).  For example, we'll implicate the

6  other ones where the HIPAA objections are coming up again.

7        So I just wanted to note that I think we can do that

8  with all of the outstanding issues.  I think that will tackle a

9  lot of it.  It just -- just wanted to put that -- that on the

10  Court's radar.  But the 27th seems fine to outline the issues

11  that are outstanding at that point.

12        THE COURT:  Would that work for you, Ms. Coleman?

13        ATTORNEY COLEMAN:  Yes, your Honor.  Although these

14  should only be the issues that are ripe for the Court's

15  intervention.  Right?  Not things that haven't been met and

16  conferred about?

17        THE COURT:  No, it would only be things that you've

18  met and conferred about.  If there's dispute over what's ripe,

19  you know, that would be a shame.  I don't expect this group of

20  counsel not being able to agree on at least what you've talked

21  about.

22        So -- but if there's a -- like Ms. Kaul said, if

23  there's something brand-new, subject of discovery that was just

24  served on, you know, August 18th, and for which responses are

25  going to be due on September 18th, I would -- you could -- if

43

1    you're really ready to talk about some of that, sure.  But if

2    you're not, I understand.

3            Okay.  So I'll look for that status report by the

4    27th, and then we'll have the hearing on the 29th.  And those

5    are the only dates that I'll set right now.

6            But I will intend to set -- if there are disputes for

7    which a written motion is necessary, I will set those for

8    briefing and a hearing in person.

9            Let me ask this.  I think this really pertains to

10   Mr. Anderson and Ms. Kaul.

11           The motion for a protective order with NaphCare, is

12   that identical to the protective order that's already been

13   entered between the plaintiffs and the defendants?

14           ATTORNEY KAUL:  It is substantively identical, just

15   with -- with minor changes to account for the fact that

16   NaphCare is -- is, you know, not a party to the case.

17           So we reference them and --

18           THE COURT:  Is there -- is there a reason to have a

19   separate protective order as to NaphCare, or just an agreement

20   that NaphCare will abide by the existing protective order?

21           And I am not trying to be difficult.  I just don't

22   want to to create confusion and have multiple orders floating

23   around, if it's really as simple as NaphCare agrees to be bound

24   by the -- by the existing protective order.

25           ATTORNEY KAUL:  Sure.  We -- we thought about the

1   same thing, and wondered if it would be adequate to have them

2   sign the acknowledgment that we already have under the

3   protective order.

4          We read the protective order as -- the existing one

5   as being between the parties, and then extending to our

6   experts, our consultants, our staff; things like that.

7          THE COURT:  Um-hmm.

8          ATTORNEY KAUL:  So -- so we didn't -- the way we

9   write it, it didn't really allow for NaphCare to be added onto

10  it.  But I think with an order from your Honor, kind of along

11  those lines, I think that would be sufficient.

12         I can't -- I can't speak to NaphCare, obviously --

13         THE COURT:  Sure.

14         ATTORNEY KAUL:  -- what their position would be.  But

15  I think that would probably be adequate for our purposes.

16         THE COURT:  Hang on -- hang on real quick.

17         (Pause.)

18         THE COURT:  What about this, Ms. Kaul, Ms. Coleman?

19  I think a joint motion to amend the existing protective order

20  to include NaphCare and its counsel -- and you can list out the

21  counsel from everybody -- would do the trick really easily and

22  not have multiple protective orders in place.

23         Again, I don't like to make -- ask you to go through

24  and redo something that you've already spent time doing.  But I

25  do think it would be cleaner than having multiple protective

 1   orders in the case.

 2          Do you think that would be a problem from NaphCare's

 3   perspective?  Understanding they're not here to address it.

 4          ATTORNEY COLEMAN:  I think that if they had an order

 5   that sufficiently protected their interests, which I think that

 6   this would, I think that would probably be okay.

 7          THE COURT:  I would ask you to meet and confer with

 8   NaphCare on that.

 9          And then assuming everyone's on board, which I think

10   everybody will be, just a joint motion to extend the protective

11   order to cover NaphCare in this litigation, I think, would do

12   the trick.  And that would -- I would sign off on that quickly.

13          ATTORNEY KAUL:  Okay.  We're happy to talk that over

14   with all of the rest of the parties.

15          THE COURT:  Thank you.  Okay.

16          Ms. Coleman, do you wish to be heard on that one?

17          ATTORNEY COLEMAN:  No, your Honor.  That sounds fine.

18          THE COURT:  Okay.  All right.  Well, I thank everyone

19   for your time.  I really do appreciate it.  And I look forward

20   to hearing from you on the 27th, and just seeing you all on the

21   29th about any issues that we need to discuss if the parties

22   are at impasse.

23          ATTORNEY COLEMAN:  All right.  Thanks for your help.

24          THE COURT:  Thanks very much.  Have a good day,

25   everyone.

46

1          ATTORNEY KAUL:  Thank you, your Honor.

2          ATTORNEY ANDERSON:  Thank you, your Honor.

3          (Conclusion of proceedings.)

4

5

6                    --oOo--

7    I certify, by signing below, that the foregoing is a correct
     stenographic transcript, to the best of my ability, of the
8    digital recording of the audio proceedings had in the
     above-entitled matter this 19th day of September, 2023.  A
9    transcript without an original signature or conformed signature
     is not certified.  I further certify that the transcript fees
10   and format comply with those prescribed by the Court and the
     Judicial Conference of the United States.

11
          /S/ Amanda M. LeGore
12        _____

13        AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

14

15

16

17

18

19

20

21

22

23

24

25