```
 1              UNITED STATES DISTRICT COURT

 2           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3   DARRYL DUNSMORE, ERNEST         )
     ARCHULETA, ANTHONY EDWARDS, REANNA)
 4   LEVY, JOSUE LOPEZ, CHRISTOPHER   )
     NELSON, CHRISTOPHER NORWOOD, and )
 5   LAURA ZOERNER, on behalf of      )
     themselves and all others        )
 6   similarly situated,              )
                                      )   No. 20-CV-00406-AJB-DDL
 7           Plaintiffs,              )
                                      )
 8   v.                               )   September 29, 2023
                                      )
 9   SAN DIEGO COUNTY SHERIFF'S       )
     DEPARTMENT; COUNTY OF SAN DIEGO; )
10   CORRECTIONAL HEALTCARE PARTNERS, )
     INC.; LIBERTY HEALTHCARE, INC.;  )
11   MID-AMERICA HEALTH, INC.; LOGAN  )
     HAAK, M.D., INC.; SAN DIEGO COUNTY)
12   PROBATION DEPARTMENT, and DOES 1 )
     to 20 inclusive,                 )
13                                    )
             Defendants.              )
14   _____)   San Diego, California

15
     TRANSCRIPT OF DIGITALLY RECORDED VIDEOCONFERENCED PROCEEDINGS
16                  (Discovery Conference)

17

18      BEFORE THE HONORABLE DAVID D. LESHNER, MAGISTRATE JUDGE

19

20

21

22

23   COURT REPORTER:        AMANDA M. LeGORE
                            RDR, CRR, CRC, FCRR, CACSR
24                          U.S. District Court
                            333 West Broadway, Suite 420
25                          San Diego, CA 92101
                            amanda_legore@casd.uscourts.gov
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:        RICHARD VAN SWEARINGEN
                                ERIC MONEK ANDERSON
 3                              Rosen Bien Galvan & Grunfeld LLP
                                101 Mission Street, Sixth Floor
 4                              San Francisco, CA  94105-1738
                                (415)433-6830
 5                              vswearingen@rbgg.com
                                eanderson@rbgg.com
 6

 7
     FOR DEFENDANT COUNTY OF
 8   SAN DIEGO:                 SUSAN COLEMAN
                                ELIZABETH PAPPY
 9                              Burke Williams & Sorenson LLP
                                501 W. Broadway, Suite 1600
10                              San Diego, CA  92101
                                (619)814-5800
11                              scoleman@bwslaw.com
                                epappy@bwslaw.com
12

13

14                                   -0-

15

16

17

18

19

20

21

22

23

24

25
```

1              (Friday, September 29, 2023)

2

3                    P R O C E E D I N G S

4

5         THE COURT:  All right.  Good afternoon, everyone.

6         This is Dunsmore versus San Diego County Sheriff's

7    Department, Case Number 20-CV-406.

8         We are on calendar for a discovery conference.  And

9    in advance of that conference, I did receive the parties' joint

10   status report, filed on September 27th, which is docket number

11   402.  And I really do appreciate the parties' time and effort

12   in preparing that and focusing on the issues that I may need to

13   address.

14        It does appear to me that the parties have been

15   working together in good faith to try to figure out as much of

16   this as they can.  And, again, that's apparent from here, and I

17   really do appreciate that.  I am, of course, certainly willing

18   to resolve any issues that the parties are unable to resolve on

19   their own.

20        So I think what I would like to do is just go through

21   the -- the status report.

22        Before I do that, Mr. Swearingen, Mr. Anderson,

23   anything that we should talk about before diving in?

24        ATTORNEY VAN SWEARINGEN:  No, your Honor.

25        THE COURT:  And Ms. Coleman, Ms. Pappy, from your

1    perspective?

2              ATTORNEY PAPPY:  No.

3              ATTORNEY COLEMAN:  No, your Honor.

4              THE COURT:  All right.  Ms. Pappy, I know you need to

5    be out of here in 20 minutes.

6              So I -- are all of these issues yours?  Or are there

7    certain issues you would prefer to address first, before you

8    need to leave?

9              ATTORNEY PAPPY:  They're all mine.

10             THE COURT:  All right.  Well, then let's make as much

11   progress as we can.  And if we need to set a further discovery

12   conference for when you're available, Ms. Pappy, we can do

13   that.

14             I -- I know you're in trial until -- through next

15   week.  And we'll figure it out with your schedule.  So why

16   don't you give us a one-minute heads up before you have to go.

17   And depending on where we are, we'll decide if we just need to

18   stop at 3:30, or if we want to keep going, or what we want to

19   do.

20             ATTORNEY PAPPY:  Okay.

21             THE COURT:  Okay.  So let's -- let's talk about

22   page -- well, it's page 1 of your joint status report, on

23   disputes requiring the Court's involvement.  The HIPAA and

24   privacy objections.

25             It looks like the parties anticipate filing a joint

1    motion requesting the Court to order production of documents

2    pursuant to the protective order in this case.

3            I understand, and I understand why the County would

4    want an order directing the production, if we're talking about

5    HIPAA.  But it would be a joint motion, it sounds like.

6            Is there any -- is there any dispute as to that issue

7    that we need to talk about this afternoon?

8            ATTORNEY PAPPY:  Not that I'm aware of.  I -- I spoke

9    with Ms. Kaul and Ms. Chartoff last Friday, and -- and

10   Ms. Coleman was on the call.  And they were going to -- the

11   discussion was to do some sort of stipulation identifying the

12   specific requests for production as for interrogatories.  And

13   then submit it as -- as a joint application.

14           I -- we -- I don't even think we need a formal motion

15   date, do we?

16           THE COURT:  I don't care what you call it.

17   (Indiscernible).

18           ATTORNEY PAPPY:  Okay.

19           THE COURT:  I mean, it's going to come to me,

20   regardless.

21           ATTORNEY PAPPY:  Okay.

22           THE COURT:  What are your thoughts, Mr. Swearingen?

23           Do we -- is that all accurate?

24           ATTORNEY VAN SWEARINGEN:  I think it is accurate, but

25   there are things I would like to add, your Honor.

1          I understand the discussions.  And I was not a part

2     of them.  But I understand the discussion between defense

3     counsel and my colleagues included kind of a discussion both on

4     the HIPAA grounds and the burden grounds, and that they were

5     somewhat intertwined.  And I would like to see if we can talk a

6     little bit more about the burden.

7          I think that the primary burden, as I understood it,

8     was related to the sub-class members' medical records and

9     custody records.  And defense counsel had asked that they be

10    cabined to say only one year back in time, as opposed to the

11    totality of the records.

12         And I would like to understand a little bit more

13    about that because I would -- I would anticipate that in the

14    course of keeping the records, a custody record or a medical

15    record would all be together.  So I understand that if they go

16    back beyond a year, they would be voluminous.  But I don't

17    understand how it would be burdensome to -- to -- to get the

18    extra records.  I think it would actually be more burdensome to

19    have to go back and look to a certain cutoff date and -- and

20    cut those records off.

21         So I want more clarity there.

22         ATTORNEY PAPPY:  They're all computerized.

23         THE COURT:  Hang on real quick.  Hang on real quick.

24         I'm all for facilitating.  But this really is a topic

25    that I think should have been addressed before you came to me

1    on this issue.  I mean, I --

2            And, Mr. Swearingen, I know you weren't involved in

3    that discussion.  But this is precisely what I would expect the

4    parties to be discussing on your own.

5            I mean, I -- so if there's a dispute, I'm here to

6    help you resolve a dispute.  And if -- but if there's not a

7    dispute, this is -- or if it hasn't crystallized yet -- I mean,

8    why -- why was this not discussed before you came in today?

9            I mean, I -- this is --

10           ATTORNEY PAPPY:  Well, in fairness -- in fairness to

11   Mr. Swearingen, we did actually talk about this.  And where I

12   left things with Ms. Kaul and Ms. Chartoff was they were going

13   to talk to their team.  We said, look, can you -- it wasn't a

14   year.  I think I was greedy and said six months, or something

15   like that.

16           THE COURT:  Right.

17           ATTORNEY PAPPY:  But can you -- can we make some

18   agreement, was -- our proposal was to get six months.  It

19   limits it in scope.  We -- our folks don't have as much to

20   produce.  We don't have as much to look at.  And then, if there

21   are people where you think -- and this was really specific to

22   medical records, custody records.  I want to be fair, in that

23   we didn't deep-dive into it as much.

24           But we said, If your doctor or your experts or you

25   look at these records and say, "Oh, no, this person is

8

1   particularly sick or has particularly complicated medical

2   issues," -- that -- that then we would talk about it on a

3   case-by-case basis.  They could come back to us.  Because I

4   think there's only about 86 people in the mobility issues and

5   maybe a handful of hearing impaired.

6           That they then would come back to us and say, okay,

7   let's -- let's -- can we get six more months or two years for

8   these ten people; as opposed to the 86 people.  So that's the

9   proposal that was on the table.

10          And, again, I'm going to apologize.  I don't know

11  that I have seen an email response to that.  I don't know if

12  Ms. Coleman can tell us if -- if Ms. Chartoff or Ms. Kaul

13  responded to that proposal.  They said they would roundtable it

14  with their folks.

15          ATTORNEY COLEMAN:  I haven't seen a response to that.

16  But, also, are we talking about the 86 people as of a certain

17  date and time?  Because they -- that --

18          ATTORNEY PAPPY:  That was the question.  Yeah.  That

19  was the question.

20          ATTORNEY COLEMAN:  (Indiscernible) daily.  So we

21  wanted some limitations on what we needed to produce because,

22  you know, every day there's new people --

23          THE COURT:  (Indiscernible.)

24          ATTORNEY COLEMAN:  -- at the jails.  And we just --

25  you know --

1          THE COURT:  And, look, what do you -- what do you

2     need from me today on this?  Because I want to be efficient,

3     particularly, with Ms. Pappy's time.

4          Mr. Swearingen, if you -- if there's -- we're here.

5     So if there's -- I'm not trying to foreclose you from asking a

6     question.  And so if -- to the extent this is beneficial for

7     the parties, I am willing to give you the time, even though I'm

8     hopeful that this will be something that you all will talk

9     offline about.  But --

10          Go ahead.

11          I just thought this was an issue that really -- I

12     didn't even see -- there's no mention of burden in here, in the

13     joint report.  It just says you're going to file a joint

14     motion.  And that's what I was expecting to hear.  So that was

15     why I am questioning why we're talking about the time periods.

16          ATTORNEY VAN SWEARINGEN:  I appreciate the Court's

17     concerns.  I expect that the parties can resolve this and get

18     the joint motion on file shortly.

19          THE COURT:  Okay.  And, look, I'm not trying to cut

20     you off.  I just -- but if you think -- if there's a question

21     you want to ask Ms. Pappy, Ms. Coleman, while we're on and we

22     can do it and then move on, no problem, Mr. Swearingen.  Go

23     ahead.

24          ATTORNEY VAN SWEARINGEN:  I think the primary

25     question is if we did go -- agree to a date cutoff, would we

1   still be able to get the initial intake and booking

2   information?

3          I think that is a very consequential set of

4   information for anyone's medical file.  And it would seem to me

5   that if we were to cut off the date and say one year for

6   somebody who's been incarcerated for 1.5 years, that we may

7   lose that very important and consequential intake and booking

8   information.

9          ATTORNEY PAPPY:  You know, I don't -- I hear what

10  Mr. Swearingen is saying, but I'm not -- I'm not prepared to

11  respond to it because we didn't go into that -- that particular

12  issue.

13         Our conversation was solely focused on the medical

14  records.

15         THE COURT:  And that's fair.  And so now you know,

16  and you all can try and figure out if that's something the

17  County is willing to do or able to do based on time

18  limitations.

19         I understand why Mr. Swearingen would want the

20  booking information.  But how that works in the context of

21  other agreed-upon time limitations, I just --

22         ATTORNEY PAPPY:  Right.

23         THE COURT:  -- you know, don't know.

24         ATTORNEY PAPPY:  Right.

25         THE COURT:  Okay.  Got it.

1              Let's look at issue number 2, CIRB documents.

2              Also, you know, Counsel, I don't think the discovery

3    requests were actually attached to your joint report.

4              So, you know, I don't have request 81 in front of me.

5              Does it -- but just tell me.  What -- what's it

6    seeking?  I am pretty familiar with this issue.  So what

7    exactly are you seeking, Mr. Swearingen?

8              ATTORNEY VAN SWEARINGEN:  And I -- I believe it's

9    the -- the CIRB reports since January 1, 2021.  But my

10   colleague, Mr. Anderson, can -- can correct me if I'm wrong.

11             THE COURT:  Go ahead, Mr. Anderson.

12             ATTORNEY ANDERSON:  Yeah, that's correct.  With the

13   limitation that it's related to in-custody deaths only.  So not

14   every CIRB report, dating back to January 1.

15             THE COURT:  Okay.  And is the issue attorney-client

16   privilege, Ms. Pappy?

17             ATTORNEY PAPPY:  Yes.  And we -- we have fleshed this

18   out.  I mean, Mr. Anderson and I have talked about it several

19   times.  And we both get that it's an impasse, and we really

20   need to put it up to the Court.

21             I did get -- get to the part of the transcript, last

22   time, about whether it's ripe.  And I would say that at this

23   point there's no reason to stop briefing on it, and setting

24   briefing on that issue at the Court's pleasure; or however you

25   want to handle it.  Because it's -- it's just -- there's no

 1 | reason.

 2 |         We can't wait forever if writs are going to be taken

 3 | or if appeals are going to be taken, and how long those will

 4 | take.  This may go the same path, maybe not.  But I don't see

 5 | any reason to hold off.

 6 |         THE COURT:  I agree.

 7 |         Mr. Swearingen, Mr. Anderson, how much time do you

 8 | need to get a motion on file?

 9 |         ATTORNEY VAN SWEARINGEN:  I think seven to ten days,

10 | your Honor.

11 |         THE COURT:  Okay.  So motion by October 9th?  Would

12 | that work for you?

13 |         ATTORNEY VAN SWEARINGEN:  Yes, your Honor.

14 |         THE COURT:  How many pages do you need?

15 |         ATTORNEY VAN SWEARINGEN:  I think we can cap it at

16 | seven or less.

17 |         THE COURT:  Okay.  I'll give you ten, just to make it

18 | easy, and make sure.  But, you know, less may be more.

19 |         ATTORNEY PAPPY:  (Nods head.)

20 |         THE COURT:  And it -- okay.  And then how about for

21 | your opposition, Ms. Coleman and Ms. Pappy?

22 |         ATTORNEY PAPPY:  I -- I don't know.

23 |         Susan, what do you think?

24 |         It's going to be me doing it.  I will not be in

25 | trial.  So I am good with --

1          ATTORNEY COLEMAN:  Do you want two weeks and ten

2     pages?

3          ATTORNEY PAPPY:  Sure, Ms. Coleman.  I'll take that,

4     Judge.  Two weeks and ten pages.

5          THE COURT:  Is this going to -- and, well, look,

6     you're aware of my rulings in the *Morton* case and the *Serna*

7     case on this.  And you're aware of Judge Anello's order on Rule

8     72.  You are probably aware of Judge Burns's order on the

9     County's motion to stay in the *Serna* case.  And I, in the

10    meantime, will be issuing an order on additional redactions, as

11    directed by Judge Burns in that other case.

12         And I'm just making sure that everyone's up to speed,

13    so that you know what's coming and what has already been

14    issued.

15         I'm happy to give you two weeks, if that would be

16    helpful to you, Ms. Pappy, as get back into things.

17         ATTORNEY PAPPY:  That would be great.

18         THE COURT:  So that would be a motion on or before

19    October 9th.  Response on or before October 23rd.  Ten pages,

20    or less for both, exclusive of exhibits.

21         And no reply unless I ask for one, please,

22    Mr. Swearingen and Mr. Anderson.

23         And I will endeavor to get you a ruling as quickly as

24    I can.

25         ATTORNEY VAN SWEARINGEN:  Thank you, your Honor.

1                    THE COURT:  Sure.

2                    All right.  Interrogatories.  The HIPAA and privacy.

3                    Is that going to be -- are there really going to be

4     interrogatory responses that are going to be referring to

5     documents already produced?

6                    I mean, is this -- is this all the same as the

7     documents?  Is what I'm trying to get at.

8                    ATTORNEY PAPPY:  Yes.

9                    THE COURT:  All right.  Now, there's a number of

10    issues still in dispute regarding plaintiffs' third and fourth

11    requests for production.

12                   And you just -- plaintiffs have served a fifth set of

13    requests for production.

14                   How many RFPs have the plaintiffs propounded in

15    total, Mr. Swearingen?

16                   ATTORNEY VAN SWEARINGEN:  I believe between 250 and

17    300.

18                   THE COURT:  Okay.  Do you have any plans to propound

19    more?

20                   ATTORNEY VAN SWEARINGEN:  No, your Honor.  I believe

21    the discovery -- written discovery cutoff date has -- has

22    expired.

23                   THE COURT:  But I'm saying, do you have any plans to

24    seek leave to propound more, at this point?

25                   ATTORNEY VAN SWEARINGEN:  Not at this point, your

1    Honor.

2            THE COURT:  All right.  I just want to understand the

3    universe of where we are.

4            All right.  Then I -- I guess I -- I see that there

5    are a number of items that are currently the subject of ongoing

6    discussions, and I don't want to foreclose those discussions.

7    But I also want to get you prompt rulings on them, if there's

8    going to be a dispute.

9            So what's -- what's your proposal, Mr. Swearingen?

10           ATTORNEY VAN SWEARINGEN:  I appreciate the

11   meet-and-confers that have occurred, and I think they may

12   continue to be productive.

13           I think it makes sense to -- to -- to move out the

14   IDC deadline for those sets of requests that have already

15   expired to, say, October 23rd.  And that way it -- it keeps

16   pressure on the parties to continue to meet and confer, and has

17   a drop-dead deadline in about three weeks from now by which we

18   need to bring disputes to you.

19           THE COURT:  And that would be disputes only with

20   respect to Items 1 through 16?

21           ATTORNEY VAN SWEARINGEN:  I think --

22           THE COURT:  Go ahead.

23           ATTORNEY VAN SWEARINGEN:  I think that it would cover

24   all disputes regarding RFP set 3 and 4, as well as the

25   interrogatories that have been propounded.  But I anticipate

16

1    that the vast majority, if not all of the disputes, would

2    likely comprise those listed as 1 through 17 in the joint

3    report.

4              THE COURT:  Ms. Pappy, Ms. Coleman, what are your

5    thoughts on that?

6              ATTORNEY PAPPY:  Yeah, I agree with that.  And --

7    well, just so that you don't think that we have 17 different

8    disputes, some of this is -- is discrete issues within -- you

9    know, one issue will -- you know, will agree or disagree; or

10   you'll rule on it, and it will resolve five.  So it's not

11   necessarily 17 different issues.  But I agree with what

12   Mr. Swearingen said.

13             And the 23rd is fine, by the way.  That -- that will

14   give me time to get through this.  And I have a lot of client

15   emails in my in box that may provide me with this stuff.

16             THE COURT:  Well, I -- I understand.  And I -- again,

17   I -- I want to strike the right balance for you all between

18   giving you the time that you need to resolve the issues and

19   making sure that we don't have issues lingering that will

20   affect your ability to move forward with the case.

21             I am going to be almost entirely unavailable the week

22   of the 23rd.  I'm out of town that whole week.

23             I set an ENE with you all for 2:00 p.m. on the 26th.

24   And I get the question is whether we should just block out that

25   time as -- if I'm already going to be meeting with you on

1    settlement, to hold a -- just a further discovery conference

2    on -- on any issues that require resolution.

3                What do you think about that, Mr. Swearingen?

4                ATTORNEY VAN SWEARINGEN:  We think that's a really

5    good idea.

6                THE COURT:  Ms. Pappy, Ms. Coleman, does that work

7    for you?

8                ATTORNEY PAPPY:  Well, it works for me.  I mean, I

9    think it's a really bad idea for the Court.  I mean, I -- we

10   could do to it like Monday morning at nine o'clock on the 30th,

11   when you're back.  But if it's okay with you, that's fine with

12   me.  The date is fine.

13               It just -- you know, you're -- you're -- it's five

14   o'clock on the East Coast, and you're going to be in the middle

15   of a conference.  So it's up to the Court.

16               THE COURT:  How much -- it's really going to depend

17   on --

18               ATTORNEY COLEMAN:  Yeah.  It can wait a few days

19   after that.  I mean --

20               ATTORNEY VAN SWEARINGEN:  We agree.

21               THE COURT:  Yeah.  No -- well, my issue is that the

22   following week I have -- I have criminal duty, and that's going

23   to be --

24               ATTORNEY PAPPY:  (Indiscernible.)

25               THE COURT:  -- challenging for me.

1          So with that being said, let me -- let me check my

2    calendar and see if I can make something else work.  Because I

3    want to resolve this but -- (pause.)

4          (Off-the-record discussion.)

5          THE COURT:  Okay.  Thanks for your time.  And I'm

6    looking at the clock.  It's -- it's 3:28.

7          So, Ms. Pappy, you need to go in literally one

8    minute.

9          Here's what I can do.  I can either do that Thursday.

10   Or the next week, I have criminal duty.  I'm available, but

11   it's going to have to be at 8:00 a.m.  Because starting by 9:00

12   a.m., I have got a bunch of new complaints that are going to be

13   coming in, and other stuff.

14         So I'm happy to set it for the following week, to

15   give you even more time to really flesh this out.  But it would

16   just have to be at 8:00 a.m.

17         ATTORNEY PAPPY:  8:00 a.m. is fine (indiscernible).

18         THE COURT:  Mr. Swearingen, what are your thoughts?

19         ATTORNEY VAN SWEARINGEN:  It really is at the Court's

20   convenience, your Honor.  Both times work for us.

21         THE COURT:  Okay.  Well, then I tell you what.  It

22   will actually give me a little bit more time, then, if we can

23   set it at 8:00 a.m.

24         Why don't we set it for -- I appreciate everyone's

25   flexibility.  And why don't we set it for Tuesday, the 31st, at

```
1    8:00 a.m.

2              ATTORNEY PAPPY:  Sure.

3              THE COURT:  And then I -- I'll have a hard stop by

4    about 9:00, when things start rolling in.  But I think that

5    will give us time to work through whatever we need to.

6              ATTORNEY PAPPY:  Thank you.

7              THE COURT:  Yeah, no problem.

8              ATTORNEY PAPPY:  All right.  I am going to jump.

9    Thank you, all.

10              THE COURT:  Take care, Ms. Pappy.  Good to see you.

11              ATTORNEY PAPPY:  Yeah, you all, too.  Thank you.

12              ATTORNEY VAN SWEARINGEN:  Bye, Ms. Pappy.

13              UNIDENTIFIED SPEAKER:  Judge.

14              (Pause.)

15              THE COURT:  All right, everyone.  So we're set for

16    the 31st at 8:00 a.m. for a further discovery conference.  And

17    that's going to include -- and that's going to be with respect

18    to everything.

19              Are we in agreement on that?  All RFPs and

20    interrogatories?

21              I want to help you resolve whatever disputes that you

22    have.

23              (No audible response.)

24              THE COURT:  Okay.  No problem.

25              Depositions, there's a dispute about the Rule
```

1    30(b)(6) deposition that the plaintiffs have noticed with

2    respect to time limits for each witness.

3           Can you fill me in on that, Mr. Swearingen?

4           ATTORNEY VAN SWEARINGEN:  I believe that the --

5    the -- the defendants would like to set time limits for each of

6    the 30(b)(6) deponents.

7           Before doing so, it will be helpful for plaintiffs to

8    know who the County has designated for each of the topics.

9    Because we are unwilling to agree to a time limit for, say, one

10   person who has been designated on 18 topics.  Instead, we need

11   to know which individuals have been designated for which

12   topics, and we'll be in a better position to discuss that issue

13   with defendants.

14          We're waiting for defendants to let us know who --

15   who has been assigned to each topic.

16          THE COURT:  Ms. Coleman, conceptually, do you

17   agree --

18          ATTORNEY COLEMAN:  That's sounds like something we

19   would need to flesh out further, yeah.

20          THE COURT:  Okay.  But --

21          ATTORNEY COLEMAN:  I think we had envisioned it more

22   in times of her -- more in terms of a limitation per topic.

23   But I'm not sure.  Maybe Ms. Pappy said something different.

24   So let's see if we can work this out, and then --

25          THE COURT:  When are the depositions noticed?

1              ATTORNEY COLEMAN:  November.

2              ATTORNEY VAN SWEARINGEN:  The depositions are set to

3     currently take place at, per party agreement, I think around

4     November 12th.

5              THE COURT:  Okay.  Well, then let's do this.  I think

6     if we're -- my understanding is ordinarily it would be, you

7     know, seven hours per deponent.  But it would be helpful, in

8     understanding this, to know who the County intends to designate

9     on the issues.  And I think -- you know, Ms. Coleman, I'm not

10    telling you that you need to tell the plaintiffs in advance.

11    But I think that would make a lot of sense, so that you all can

12    try to figure it out.  And if the plaintiffs know who the

13    County intends to designate, I think you will be able to

14    resolve this one.  And if you can't, at least I'll know,

15    then -- like Mr. Swearingen said -- person A is going to

16    testify on only one topic or 18 topics.  And that could then

17    allow us to be thoughtful --

18             ATTORNEY COLEMAN:  Um-hmm.

19             THE COURT:  -- and rather than me just making a

20    blanket ruling that may not be helpful to you all.

21             ATTORNEY COLEMAN:  No, I agree.  That sounds helpful.

22    I think we had figured out the deponents and the topics.  And

23    it was going to be -- if it was seven hours each, like 80 hours

24    of depos.  So that's why we had raised that issue.  But we will

25    talk more specifics with plaintiff and see if we can work that

22

1   out.  There are quite a few topics.

2           THE COURT:  I got it.

3           And I don't -- and, again, I -- I don't think it's --

4   I don't hear Mr. Swearingen as being that inflexible or rigid.

5   I think he just wants to know, practically, who's going to talk

6   about what and then what makes sense.  It may make sense for

7   somebody to be deposed for more than seven hours or much less,

8   just depending on what it is.

9           ATTORNEY COLEMAN:  Um-hmm.  (Nods head.)

10          THE COURT:  So let's do this.

11          With -- the depositions begin in mid-November?

12          ATTORNEY VAN SWEARINGEN:  On November 13th, your

13  Honor, is the day that the parties agreed for the depositions

14  to begin taking place.

15          THE COURT:  Okay.  Well, here's what we'll say.

16  Let's do this.  You're going to notify me of any discovery

17  disputes by October 23rd.  Correct?

18          ATTORNEY VAN SWEARINGEN:  Yes, your Honor.

19          Would -- I imagine it would be helpful to have a

20  joint status report on that date.

21          THE COURT:  That's what I'm thinking now.  I think --

22  because that way you could tell me if there are any

23  disagreements on -- I may be giving you a briefing schedule on

24  some of that discovery.  But I'm going to tell you, now, that

25  on -- when we get together on the 31st, I'm going to resolve

1    the issue of deposition times.  And I'm going to do my best to

2    be thoughtful about it.  But you all know the topics and the

3    people better than I do.  So despite my best efforts, it's

4    almost certainly going to be better for you all to figure that

5    one out.  But I don't want to have further motion and delay

6    the -- the 30(b)(6) deposition.

7          So I'm going to rule, on -- on the 31st, on the

8    deposition issue; if there is a disagreement.  So I would ask

9    that your joint status report on the 23rd include, you know,

10   any disagreements on -- or anything the parties are disagreeing

11   on with respect to interrogatories and RFPs.  And then on the

12   depositions, if there's a disagreement, tell me what each

13   side's position is with respect to the topics and the

14   witnesses.  And then we're going to flesh it out on the 31st,

15   and I will make decisions.

16         ATTORNEY COLEMAN:  Sounds good.

17         THE COURT:  Okay.  Great.  All right.

18         I think that takes us through the issues in your

19   joint report, Mr. Swearingen.

20         Was there anything that I missed inadvertently?

21         ATTORNEY VAN SWEARINGEN:  No, your Honor.

22         THE COURT:  Okay.  Ms. Coleman, how about you, ma'am?

23         ATTORNEY COLEMAN:  No.  Thank you, your Honor.

24         THE COURT:  Okay.  Great.

25         Well, I -- I appreciate your time today, and I really

1    do appreciate the manner in which you all are trying to resolve

2    these issues.  And to the extent you can't -- like for the CIRB

3    documents -- I'm certainly willing to resolve them.  But I know

4    you all are working hard to -- to figure many of these out, and

5    I really do appreciate it.

6              ATTORNEY COLEMAN:  Thank you for your help.

7              THE COURT:  You bet.  My pleasure.  I hope you all

8    have a great weekend, and enjoy -- enjoy some time away from

9    work.

10             Take care, everyone.

11             ATTORNEY COLEMAN:  Thanks, you too.

12             ATTORNEY VAN SWEARINGEN:  Yeah.  Thanks, your Honor.

13             (Conclusion of proceedings.)

14                         --oOo--

15   I certify, by signing below, that the foregoing is a correct
     stenographic transcript, to the best of my ability, of the
16   digital recording of the audio proceedings had in the
     above-entitled matter this 5th day of October, 2023.  A
17   transcript without an original signature or conformed signature
     is not certified.  I further certify that the transcript fees
18   and format comply with those prescribed by the Court and the
     Judicial Conference of the United States.

19
               /S/ Amanda M. LeGore
20             _____

21             AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

22

23

24

25