GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Subclass

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>    Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF CIRB DOCUMENTS [RFP NO. 81]**<br><br>Mag. Judge: Hon. David D. Leshner<br><br>**NO HEARING DATE PER DKT. 404** |

## I. INTRODUCTION

Nearly 50 people have died in San Diego County jails since January 1, 2021. Plaintiffs allege that some of these deaths stem from deficiencies in Defendants' policies, procedures, and practices relating to the health and safekeeping of incarcerated people. After each death, Sheriff's Department staff investigate the circumstances and present the case to the Critical Incident Review Board ("CIRB"), a board consisting of department leaders empowered to make findings about policy violations in connection with the death, request further investigation, and recommend changes to policy, training, and practices. Plaintiffs seek the CIRB Reports since January 1, 2021 for each in-custody death at the Jail. These reports are highly relevant to Plaintiffs' claims that some deaths are attributable at least in part to Defendants' actions and omissions—and that Defendants have failed to prevent future deaths. Courts in this district, including this Court, have repeatedly rejected Defendants' claims that CIRB Reports are privileged. Nevertheless, Defendants persist in asserting the same blanket claims of privilege, despite an unchanged factual record. The Court should order production of the CIRB Reports.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Section 4.23 of the Sheriff's Department's policies and procedures manual states that a review board, like CIRB, is "an organized body of investigators who review specific incidents and report their findings to a higher authority." Swearingen Decl., Ex. A ("Section 4.23") at 3. CIRB reviews all "critical incidents," including in-custody deaths. *Id.* at 6. CIRB's review "addresses initial areas of the appropriateness of clinical care; assesses whether changes to policies, procedures, or practices are warranted; and identifies issues that require further study." Swearingen Decl., Ex. B ("State Audit Progress Report") at 17; *see also* Section 4.23 at 5 (stating that CIRB reviews each critical incident for potential problems with "training, tactics, policies, and procedures").

1    CIRB includes five members, three of whom are Sheriff's Department
2 commanders with voting rights. Section 4.23 at 5. The two non-voting members
3 are a human resources commander (the Chair of CIRB) and a legal adviser. *Id.*
4 Before CIRB meets to discuss an in-custody death, the Sheriff's Homicide Unit
5 investigates the circumstances of the death. Swearingen Decl., Ex. C ("Baranic
6 Tr.") at 28:7-9. Personnel from the Sheriff's Division of Inspectional Services
7 ("DIS") then prepare a PowerPoint presentation summarizing the investigation,
8 which is presented to CIRB. Section 4.23 at 6; Baranic Tr. at 26:23-27:2, 95:22-23,
9 108:20-23. At the CIRB meeting, the investigators also present "facts and
10 circumstances to the members of the CIRB," who may ask questions about the
11 investigation. Section 4.23 at 6; Baranic Tr. at 95:16-20. CIRB presentations may
12 include "affected facility command, [DIS], Homicide, and Department Command
13 Staff." State Audit Progress Report at 17.

14    CIRB's three voting members decide whether staff violated departmental
15 policy in connection with the death. Section 4.23 at 7. CIRB may recommend
16 remedial changes, including regarding "response, training, and policies and
17 practices." State Audit Progress Report at 17; *see also* Swearingen Decl., Ex. G at
18 58 (Sheriff's Department statement, in response to State Audit Report, that CIRB
19 can make recommendations about "any best practices or changes not previously
20 identified and implemented by the change [sic] of command"). Within 45 days of
21 the CIRB meeting, a DIS lieutenant writes a report "summarizing the actions and
22 conclusions of the board," which "shall contain specific findings regarding whether
23 the review board found any policy violations, and training or policy issues, as well
24 as what actions were taken by the department." Section 4.23 at 7.

25    **B.    Procedural History**

26    On June 15, 2023, Plaintiffs propounded requests for production ("RFPs"),
27 including the instant request for "ALL reports generated by the Critical Incident
28 Review Board RELATING TO in-custody DEATHS at the JAIL from January 1,

2021 to the present." Swearingen Decl., Ex. D. Plaintiffs' RFPs included an instruction that Defendants provide a privilege log for all documents withheld on the basis of privilege. *Id.* at 32-33. On August 14, 2023, Defendants responded and objected to the request on the grounds of the attorney-client, work product, and official information privileges. Swearingen Decl., Ex. E. At a meet and confer call on August 21, 2023, Plaintiffs requested a privilege log for the CIRB records and Defendants stated that they would provide such a log, which Defendants later confirmed in an August 29, 2023 email. Swearingen Decl. ¶ 7 & Ex. F. Defendants again stated on a meet and confer call September 22, 2023 that they would provide a privilege log. *Id.* ¶ 7. To date, Defendants have not provided Plaintiffs with a privilege log identifying the documents withheld or the asserted privilege grounds. *Id.* After meet and confer efforts proved unsuccessful, the parties asked the Court to resolve the dispute. Dkt. 402 at 1; Sept. 29, 2023 IDC Transcript at 11:1-12:6.

### III.     ARGUMENT

The CIRB Reports at issue in this Motion are highly relevant to the question whether Defendants' policies, procedures, training, and practices contributed to deaths at the Jail since 2021, as Plaintiffs allege. The CIRB Reports also bear on Defendants' knowledge of deficiencies in their policies, procedures, training, and practices, as well as whether Defendants have or are taking steps to remedy such deficiencies. The State Audit Report found that CIRB "has not always taken meaningful action to prevent deaths, even when it identifies problems with its policies and practices." Swearingen Decl., Ex. G at 55. Defendants' written responses do not contest the relevance of the CIRB Reports; rather, they only object on the grounds of privilege. Swearingen Decl., Ex. E. However, under the Ninth Circuit's primary purpose test, Defendants' privilege objections are without any basis in law or fact, as this Court and others in this district have repeatedly found after careful review of the record. The factual record in this case—which is unchanged—compels the same result.

### A. Defendants Have Failed Even to Attempt to Make a Prima Facie Showing that the CIRB Reports are Privileged

As an initial matter, Defendants waived the asserted privileges by failing to make a prima facie showing that the documents are privileged. *See City of Roseville Emps.' Retirement Sys. v. Apple Inc.*, No. 19-cv-2033-YGR (JCS), 2022 WL 3083000, at *4 (N.D. Cal. Aug. 3, 2022) (citing *In re Grand Jury Invest.*, 974 F.2d 1068, 1071 (9th Cir. 1992)) (stating that the "party asserting the privilege must make a *prima facie* showing that the privilege protects the material the party intends to withhold," including via a privilege log). Such proof is necessary to make a prima facie showing, meaning the failure to provide a privilege log or similar proof constitutes waiver of the privilege. *LD v. United Behav. Health*, No. 20-cv-2254-YGR (JCS), 2022 WL 17408010, at *6 (N.D. Cal. Dec. 2, 2022) (finding that party waived privilege log objections by failing to timely produce an adequate privilege log). Here, Defendants have failed to provide a privilege log or other similar proof identifying the CIRB Reports withheld and the specific bases for withholding them, despite repeated promises to do so. *See* Swearingen Decl., ¶ 7 & Ex. F. Defendants have thus waived their privilege objections.

### B. CIRB Reports are Not Protected by the Attorney-Client Privilege Because Their Primary Purpose is Investigative and Remedial

On the merits, Defendants have not met their burden to show the attorney-client privilege applies and that the primary purpose of CIRB Reports is providing and receiving legal advice. Rather, the record demonstrates that the primary purpose of the CIRB Reports is to memorialize CIRB's investigative and remedial actions at the CIRB meeting.

To show that the attorney-client privilege applies, the Sheriff's Department must meet eight elements: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the

client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). The burden is on Defendants to establish each element. *Id.* at 999-1000. If necessary, the Court "may conduct an in camera inspection of alleged confidential communications to determine whether the attorney-client privilege applies." *Clarke v. Am. Com. Nat'l Bk.*, 974 F.2d 127, 129 (9th Cir. 1992). Even if the privilege applies, "a blanket claim of privilege is unacceptable," and the privilege should be "strictly confined within the narrowest possible limits." *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) (citation omitted).

The Ninth Circuit's "primary purpose" test provides that a document is privileged only if the party asserting the privilege shows that its primary purpose was to give or receive legal advice—and not some other business purpose. *In re Grand Jury*, 23 F. 4th 1088, 1091-92 (9th Cir. 2021).[1] A document "can only have a single 'primary' purpose." *Id.* at 1091. Thus, for example, a presentation for a corporate board that "is clearly a business presentation" is not privileged under the primary purpose test. *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-2450-WHO (DMR), 2023 WL 2699971, at *5-6 (N.D. Cal. Mar. 29, 2023) (stating that "no privilege can attach to any communication as to which a business purpose would have served as a sufficient cause" (internal citation omitted)). Since *In re Grand Jury* became controlling authority, courts in this District have universally applied its primary purpose test to disputes over the CIRB records and all of those courts have concluded that CIRB Reports are not privileged communications.

---

[1] Defendants may attempt to rely on pre-*In Re Grand Jury* decisions regarding CIRB documents, but they are irrelevant and not persuasive because they did not apply the now-controlling test from *In re Grand Jury* and rest on a less-developed factual record. *See* Swearingen Decl., Ex. I at 91 (Judge Burns order in *Serna v. Cty. of San Diego*, 20-cv-02096-LAB-DDL (S.D. Cal.) rejecting County's argument that pre-*In re Grand Jury* cases apply because they predate *In re Grand Jury* and therefore fail to "shed light of the application of the primary purpose test to the CIRB documents at issue here").

For example, in *Greer v. County of San Diego*, the plaintiff sought CIRB documents, including CIRB Reports, related to twelve deaths preceding the plaintiff's serious injury after being assigned to and falling from an upper bunk. 634 F. Supp. 3d 911, 916 (S.D. Cal. 2022). Magistrate Judge Butcher examined the factual record, including the policies and procedures discussed herein, and found that CIRB had at least seven purposes unrelated to obtaining legal advice, including identifying policy violations and "recommend[ing] remedial action when necessary and ensure that recommended action is actually completed." *Id.* at 919 (citing and quoting Section 4.23). Applying the primary purpose test, Judge Butcher found that the Sheriff's Department's own public statements about the purpose of CIRB and the policies and procedures demonstrate that CIRB's primary purpose is "investigative and remedial." *Id.* at 920-21. Indeed, the Sheriff's chief legal adviser made written statements showing that CIRB's purpose is "to investigate critical incidents and recommend remedial measures. . . ." *Id.* at 920. Judge Butcher ordered production, and Judge Ohta overruled Defendants' objections to that order. *Greer*, Dkt. 267 at 2. After later in camera review of the documents, Judge Ohta confirmed that CIRB's "primary purpose is to determine training issues and recommend remedial measures in response to serious incidents that occur within the County jails, as opposed to giving or seeking confidential legal advice from or by the chief legal officer." *Greer*, Dkt. 341 at 56:15-23; *see* Swearingen Decl., Ex. J. Defendants filed a petition for writ of mandamus to appeal Judge Ohta's order, which the Ninth Circuit denied that same day. *Greer*, Dkts. 286, 287.

Despite the clear rulings in *Greer*, Defendants continue to withhold CIRB Reports in their entirety. In *Morton v. County of San Diego*, the plaintiffs filed a lawsuit after their family member committed suicide in the Jail, allegedly due to deficiencies in Jail suicide prevention procedures, policies, and practices. No. 21-cv-1428-MMA-DDL, 2023 WL 4243239 (S.D. Cal. June 27, 2023). Plaintiffs sought to compel production of numerous CIRB-related documents, including the

CIRB Report related to Mr. Morton's death. After conducting an evidentiary hearing and applying the primary purpose test, this Court ordered production of the CIRB Report and related CIRB documents. *Id.* at *5-6. In assessing the "primary purpose" of the CIRB Report, this Court concluded that CIRB makes findings regarding policy violations or policy issues connected to a death that are "independent of any legal advice." *Id.* at *5. Legal advice is not necessary for CIRB to fulfill its primary purposes of finding policy violations (which in any event are determined only by the voting members, to the exclusion of the legal adviser) and recommending remedial changes. This Court's in camera review confirmed that the Morton CIRB Report memorialized the CIRB meeting and "does not describe any legal advice." *Id.* at *5-6.

Like Judge Ohta, Judge Anello overruled the County's objection to this Court's order requiring production of the CIRB documents. *Morton v. Cnty. of San Diego*, No. 21-cv-1428-MMA-DDL, 2023 WL 5746921 (S.D. Cal. Sept. 6, 2023) ("*Morton II*"). Upon in camera review, Judge Anello found "no evidence that [the Sheriff's legal adviser] actually provided legal advice" during the CIRB meeting. *Id.* at *6. Later, the *Morton* plaintiffs moved to compel production of additional CIRB Reports regarding 19 other suicides at the Jail. *Morton v. Cnty. of San Diego*, No. 21-cv-1428-MMA-DDL, 2023 WL 6150402 (S.D. Cal. Sept. 20, 2023) ("*Morton III*"). This Court granted the motion and compelled production of the CIRB reports in their entirety, finding that its analysis of attorney-client privilege "applies with equal force to the instant motion." *Id.* at *1.

Similarly, this Court ordered production of 33 CIRB Reports in *Serna v. County of San Diego*, No. 20-cv-02096-LAB-DDL (S.D. Cal.), a case concerning the death of Elisa Serna in the Jail, allegedly because staff neglected Ms. Serna's serious health needs. *Id.*, Dkt. 220 (Aug. 30, 2023); *see* Swearingen Decl., Ex. H. Plaintiffs moved to compel production of 35 CIRB reports about in-custody deaths preceding Ms. Serna's death and the Sheriff's Department asserted the same

privileges at issue here. *Id.* at 1-2. This Court reviewed the reports in camera and applied a similar analysis as in *Morton* to conclude that the primary purpose of all 35 CIRB Reports was not the giving or receiving of legal advice, and thus ordered production of documents.[2] *Id.* at 10-12. Judge Burns denied the County's request to stay production after finding the County had not made a "better than negligible" showing on the merits. *Morton*, Dkt. 236 at 3-4; *see* Swearingen Decl., Ex. I.

The factual record in this case is no different than the record in *Greer*, *Morton*, and *Serna*, which compels the same analysis and application of *In re Grand Jury*. CIRB is plainly an investigative body. *See* Section 4.23 at 3. CIRB also has remedial functions, as voting members of CIRB—none of whom is an attorney—decide whether staff violated any Sheriff's Department policies. *Id.* at 7. CIRB may recommend remedial measures related to a death, including "items related to response, training, and current policies and practices." State Audit Progress Report at 17. A Sheriff's Department lieutenant produces a report summarizing each CIRB, including the investigation and any actions taken, such as findings of policy violations by the voting members. Section 4.23 at 7. These investigative and remedial functions undertaken by non-lawyers "exist independent of any legal advice" the Sheriff's legal adviser might or might not provide at the meetings. *Morton I*, 2023 WL 4243239, at *5. The simple presence of a non-voting attorney member at CIRB meetings "does not make all communications with that person privileged."[3] *Martin*, 278 F.3d at 999; *see also Ortho. Hosp. v. DJO Global, Inc.*, No. 3:19-cv-970-JLS-AHG, 2020 WL 7625123, at *2 (S.D. Cal. Dec. 22, 2020)

---

[2] The Court declined to compel production of only two reports not related to the issues in *Serna*. *Id.* at 24. Defendants here have made no relevance objection to the CIRB Reports at issue in this Motion, and the Reports are plainly relevant for the reasons stated herein. *Supra* at 1, 3.

[3] In *Greer*, Judge Butcher cited evidence in the record suggesting that the Sheriff's legal adviser is present at CIRB meetings in an attempt "to cloak the CIRB's investigation, findings, and recommendations in privilege." 634 F. Supp. 3d at 920.

(rejecting blanket claim of privilege over board meeting minutes because even some confidential communications "do[] not by default cloak all board meeting minutes in a shroud of secrecy"). This Court and Judge Anello both found that the Morton CIRB Report reflected no legal advice. *See, e.g., Morton II*, 2023 WL 5746921, at *6 (noting that CIRB Report "reveals, frankly, no such communication").

Here, Defendants have not even attempted to satisfy their burden to articulate why specific communications are privileged. Defendants' blanket assertions of privilege are also illogical because any factual information underlying the CIRB Reports—such as the facts of the investigation—cannot be privileged and must be produced. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (the privilege "does not protect disclosure of the underlying facts").

**C.   The CIRB Reports are Not Attorney Work Product Because They Are Prepared for All Critical Incidents, Not Solely for Those Involving Litigation**

"[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "The work product doctrine does not protect materials assembled in the ordinary course of business. Rather, the *primary* motivating purpose behind the creation of the materials must be as an aid in possible future litigation." *Griffith v. Davis*, 161 F.R.D. 687, 698 (C.D. Cal. 1995) (emphasis in original). Thus, work product protection applies only to material "that would not have been generated **but for** the pendency or imminence of litigation." *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987) (emphasis added).

Here, CIRB reports would not be generated "but for the pendency or imminence of litigation." Rather, by policy and practice, CIRB reviews all critical incidents and all in-custody deaths, regardless of the prospect of litigation, *see* Section 4.23 at 6, which means that work product protection does not apply. *Accord Greer*, 634 F. Supp. 3d at 915-16; *Morton I*, 2023 WL 4243239, at *7; *Morton II*,

2023 WL 5746921, at *8; *Serna*, Dkt. 220 at 14.

### D. The Official Information Privilege Does Not Apply

Defendants' written response to RFP No. 81 asserts that the official information privilege applies, but Defendants have failed to "submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit."[4] *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995). Regardless, the official information privilege is a qualified privilege "in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege," with the balancing test "pre-weighted in favor of disclosure." *Id.* The balance here favors disclosure, because the CIRB Reports are not available to Plaintiffs from other sources, the reports are critical to assessing Plaintiffs' claims about deaths at the Jail, and the protective order in this case ensures that information will not be disclosed outside of this litigation. *Accord Morton I*, 2023 WL 4243239, at *8-9; *Serna*, Dkt. 220 at 15-17.

### IV. CONCLUSION

Plaintiffs respectfully ask the Court to order production of all CIRB Reports relating to in-custody deaths at the Jail since January 1, 2021.

DATED: October 9, 2023               Respectfully submitted,

                                     ROSEN BIEN GALVAN & GRUNFELD LLP

                                     By: */s/ Van Swearingen*
                                          Van Swearingen

                                     Attorneys for Plaintiffs and the
                                     Certified Subclass

---

[4] If Defendants submit such a declaration in opposition, Plaintiffs respectfully request an opportunity to respond.