GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California  94709
Telephone:  (510) 806-7366
Facsimile:   (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Subclass

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,

Defendants.

Case No. 3:20-cv-00406-AJB-DDL

**PLAINTIFFS' OBJECTIONS TO DEFENDANTS' ADA PLAN**

Judge:        Hon. Anthony J. Battaglia
Magistrate: Hon. David D. Leshner

Trial Date: None Set

## INTRODUCTION

The County of San Diego and San Diego County Sheriff's Department ("Defendants") regularly violate the Americans with Disabilities Act ("ADA") and related federal and state antidiscrimination laws at their jail facilities.[1]  Defendants do not have in place the mechanisms to provide sign language interpretation ("SLI") to deaf people who communicate in sign language, subjecting them to significant harm.  Defendants have not ensured that all wheelchair riders housed at their Central Jail have safe beds, toileting, and showers.

To protect people with disabilities from these harms and indignities and end this unlawful discrimination, Plaintiffs brought motions pursuant to their Third Claim for Relief, Dkt. No. 231 at ¶¶ 209-15, and Federal Rule of Civil Procedure 65(a), asking the Court to enter an injunction to address two of the most glaring ADA violations:  (1) the failure to provide SLI to people with hearing disabilities; and (2) the failure to ensure that people with mobility disabilities have safe and accessible places to sleep, toilet, and shower.

With the assistance of Magistrate Judge Leshner, the parties and their experts met and conferred repeatedly in May and June 2023 to resolve the issues raised by the motions.  Ultimately, Defendants agreed to an order, later entered by this Court, that requires, *inter alia*, that Defendants draft an ADA plan.  As discussed below, in its current form, Defendants' plan fails to improve access to effective communication for people with hearing disabilities or to provide adequate safe housing to incarcerated people with mobility disabilities at Central Jail.  Plaintiffs hereby object and respectfully request that the Court enter an order directing Defendants to submit a revised plan forthwith.  The order Plaintiffs seek is attached to the Declaration of Eric Monek Anderson ("Anderson Decl."), filed herewith, as

---

[1] The federal Rehabilitation Act and state Government Code Section 11135 require public entities receiving public funding to comply with the ADA.  Here we refer to all three statutes cited in Plaintiffs' Third Amended Complaint collectively as the "ADA."

**Exhibit A**.

## PROCEDURAL BACKGROUND

Plaintiffs' Third Amended Complaint alleges disability-related claims, including under the ADA and California state law. *See* Dkt. 231, ¶¶ 230-294, 454-468. On April 25, 2023, Plaintiffs filed Motions for Preliminary Injunction and Provisional Class Certification ("Plaintiffs' Motions"). *See* Dkt. 281-1 at 1. On May 18, 2023, Defendants filed an opposition to the Motions. Dkt. 311. On May 30, 2023, Plaintiffs filed reply pleadings. Dkt. 320.

In June 2023, after multiple conferences before Magistrate Judge Leshner, the parties reached a settlement of the issues at stake in Plaintiffs' Motions. Dkt. 349. On June 21, 2023, the Court approved the parties' Joint Motion and Order Re: Accessibility at Central Jail, Effective Communication Policy and Practice, and Provisional Class Certification ("ADA Order"). *See* Dkt. 355, attached hereto as **Appendix A**.

As part of the ADA Order, the Court certified a subclass, represented by Plaintiffs' counsel, of "all qualified individuals with a hearing and/or mobility disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in the Jail." *Id.* at ¶ 1. The ADA Order requires that Defendants "develop and provide to Plaintiffs a plan to remedy the accessibility and effective communication issues identified in Plaintiffs' Motions." *Id.* at ¶ 7. In addition to requiring that the plan remedy the issues identified in Plaintiffs' Motions, the ADA Order outlines specific elements that Defendants' plan must include and allows Plaintiffs to object if they are missing. *See id.* at ¶¶ 7, 9.

On August 22, 2023, Defendants sent Plaintiffs their proposed ADA plan. Anderson Decl. ¶ 3. On September 5, 2023, Plaintiffs sent Defendants a letter outlining Plaintiffs' concerns with the draft ADA plan and requesting a meet and confer call with Defendants and the parties' respective experts, in accordance with

the ADA Order.  *Id.*, Ex. B; *see also* ADA Order at ¶ 8 (requiring "the parties and the Parties' Experts" to confer about "any concerns or disputes" related to the proposed plan).  Defendants sent a brief letter response on September 18, 2023. Anderson Decl., Ex. C.  Defendants refused to allow the parties' experts to participate in the meet and confer, contrary to the ADA Order.  *Id.*, Ex. D.

The parties' attorneys met via Zoom to discuss the proposed plan on September 19, 2023.  *Id.* ¶ 6.  The next day, September 20, 2023, Plaintiffs sent a letter providing information that Defendants requested on the call and memorializing Plaintiffs' requests for more information and documentation about proposed or ongoing changes at the Jail.  *Id.*, Ex. D.  On October 3, 2023, Defendants responded by email to some but not all questions in the letter.  *Id.*, Ex. E.

Defendants filed their proposed ADA plan with the Court on October 5, 2023, making few of Plaintiffs' requested revisions to their Plan.  *See* Dkt. 409 ("ADA Plan").

## ARGUMENT

Plaintiffs object to the Sheriff's Department's ADA Plan.  As currently drafted, the Plan is contrary to the Court's ADA Order and insufficient to ensure that Defendants in fact accommodate incarcerated people with mobility and hearing disabilities in their care.  Defendants' plan falls short by (1) proposing to implement updated ADA policies and train staff on accommodating people with mobility and hearing disabilities by July 1, 2024, **more than one year after entry of the ADA Order**; (2) failing to commit to provide accessible housing for all people with mobility disabilities, contrary to the ADA Order; and (3) failing to provide sign language interpretation in accordance with the ADA Order.  These shortcomings perpetuate the status quo and significantly harm the subclass.

## I.    DEFENDANTS' TIMELINE FOR UPDATING POLICY AND TRAINING STAFF IS INSUFFICIENT AND ILLOGICAL

The ADA Plan's timelines for implementing ADA policy revisions and training staff are much too slow, particularly in light of the serious and blatant ADA violations that the ADA Order seeks to address.  The Court should reject the Plan's proposed timelines and require Defendants instead to issue revised ADA policies and train staff on the new policies and processes no later than January 1, 2024.

Defendants' ADA Plan states that they will update their policies and train staff by July 1, 2024, **over a year** from entry of the ADA Order.  *See* ADA Plan at 3-4 (hearing disabilities); 7-9 (mobility disabilities).  These timelines are much too long and will prolong the harm that subclass members have been experiencing at the Jail for years, as established in Plaintiffs' motions.  *See* Dkt. 281-1 at 4-10, 14-15, 18, 20-21; Dkt. 320 at 3-4 (discussing the serious "ongoing harm" faced by the subclass as a result of Defendants' ADA violations).  The Sheriff's Department's proposed July 1, 2024 deadline to implement policy updates is also illogical because the ADA Plan requires that Defendants will develop new processes for accommodating people with hearing and mobility disabilities by January 1, 2024.  New processes should be enshrined in policy and staff trained on the processes by the same date, not six months later.

The ADA Order requires Defendants to provide sign language interpretation for all people with hearing disabilities who use sign language interpretation as their primary method of communication, for a number of specified encounters.  *See* ADA Order at ¶ 7.a.i.  Defendants also must evaluate every incarcerated person being booked to evaluate "whether they have a hearing or speaking disability and, if so, the person's primary method of communication."  *Id.* at ¶ 7.a.ii.  Consistent with these requirements, the ADA Plan states that the Sheriff's Department "will provide access to American Sign Language Interpretation services at all San Diego County jail facilities that house persons with hearing disabilities."  ADA Plan at 3.  The

1  ADA Plan also states that each jail facility will have communication assistive

2  devices that can provide ASL interpretation, and that the Sheriff's Department may

3  provide in-person sign language interpretation.  *Id.*

4    Yet the ADA Plan then says that the Sheriff's Department will **not** update its

5  policy to state that it will provide sign language interpretation to all people who use

6  it as their primary form of communication until **July 1, 2024**, *id.* at 3-4, nor train

7  staff on the process until **July 1, 2024**.  *Id.* at 4.  As Plaintiffs' ADA expert opines, a

8  process is toothless if not written in policy, or if staff are not yet trained on the

9  process.  Sanossian Decl., ¶ 8.  According to Ms. Sanossian:

10    In my experience working with government entities, a process will only
occur once it is memorialized in policy and staff are trained.  The
11    training process is an important part of the policy development process,
as it allows staff to provide vital feedback on the feasibility of new
12    policies and practices.  Holding the training so late in this process may
force further delays in implementation, in a jail setting that is already
13    complex and fast-moving.  This means that incarcerated people with
mobility and hearing disabilities will not have the benefit of these new
14    processes until July 1, 2024….  In my experience, the implementation
of high-tech systems—such as those Defendants plan to implement to
15    provide sign language interpretation—is challenging in many ways,
including user proficiency.  The addition of internet service alone is
16    going to require a significant effort in troubleshooting before
technology dependent on that system can be brought up and running.
17    Our clients have experienced struggles when implementing similar
technologies.  It is unclear whether Defendants have adequately
18    thought through this process considering the late date for staff training
and what appears to be immediate implementation of these high-tech
19    solutions….

20  *Id.*

21    The need for clear policy directives and training is especially important in the

22  complex and harried atmosphere of Defendants' jail facilities.  *Id.*  If the process is

23  final as of January 1, 2024, the policy should be too—and staff should be trained on

24  the policy by then.  If not, Defendants will continue to deny sign language

25  interpretation to those who need it, causing continuing harm to subclass members.

26  *See* Dkt. 281-1 at 4-5 (demonstrating harm to subclass members due to failure to

27  provide sign language interpretation during medical and mental health encounters).

28    The ADA Plan includes the same illogical timelines for new policies and

1   training to accommodate and house people with mobility disabilities.  A new
2   process and training will supposedly be finalized by January 1, 2024, but the
3   Sheriff's Department will not memorialize that process in policy or training until
4   **July 1, 2024**.  ADA Plan at 7-9.  Again, absent policies and training, Defendants
5   will continue to harm subclass members with mobility disabilities, including by
6   housing them without appropriate accommodations.  *See* Dkt. 281-1 at 5-10
7   (demonstrating ongoing harm to subclass members with mobility disabilities).

8   　　　Defendants' delayed timeline for implementing policy and training staff should
9   be rejected especially in light of Defendants' claim in their opposition to the Motions
10  (in May 2023) that "additional policies and procedures have been and are being
11  implemented to provide even better communication with the possibility of 24-hour
12  communication in process right now."  Dkt. 311 at 2-3.  Defendants also claimed to
13  have prepared a draft effective communication policy on May 3, 2023.  *Id.* at 3.
14  Defendants stated that they already had a "clear plan" to make sign language
15  interpretation available in all facilities via iPad.  *Id.* at 5-6.  With respect to mobility
16  disabilities, the Sheriff's Department stated that it was "diligently working on
17  revisions to its policies," with the help of an expert as of **February 2023**.  Dkt. 311
18  at 11; *see also* Dkt. 311-16 at ¶ 3.  If that were true, an additional year and half as
19  Defendants now request is not necessary and should not be allowed.

20  　　　The ADA Order does not require a wholesale overhaul of Defendants' ADA
21  policies;[2] it simply concerns certain accommodations for people with hearing and
22  mobility disabilities that should have been implemented years ago.  If Defendants
23  were working on revising their policies well before the ADA Order, they should be
24  able to implement new policies and train staff by January 1, 2024.  Indeed,
25  Defendants attached three policies to their ADA Plan, *see* Ex. B to ADA Plan, that
26  were updated earlier in 2023 (although they fail to make the requisite changes).

27

28  _____
    [2] Plaintiffs' other ADA claims in this case remain unresolved and will be tried.  The
    ADA Order is limited to the issues in Plaintiffs' Motions.

As Plaintiffs' expert opines, it should not take over a year to draft the relevant policies or train on them.  According to Ms. Sanossian:

> In general, revised ADA policies can be implemented within a matter of months, or even days, when warranted.  This is true even accounting for several layers of approval processes within a government agency. In fact, clients that we have worked with have acted quickly when confronted with the need for sign language interpretation when they realized they had no policy in place.  They immediately contacted a provider and brought interpreters into their facilities within days of having recognized the need even before the policy was finalized.

Sanossian Decl., ¶ 10.  Subclass members will experience unnecessary harm and Defendants will fail to attain compliance with the ADA Order unless they are required to update their ADA policies and train their staff on a timely basis, i.e. by January 1, 2024.

## II.    DEFENDANTS' PHYSICAL PLANT CHANGES AND INTERIM ACCOMMODATION PLANS ARE INSUFFICIENT

Defendants' ADA Plan includes insufficient information about the structural changes that Defendants are making at Central Jail and the Sheriff's Department's plan for accommodating subclass members in the interim.

First, the ADA Order requires that Defendants complete renovations to make available "at least 25 accessible beds and toileting … no later than 90 days" from entry of the June 21, 2023 ADA Order (mandating compliance by September 19, 2023).  *Id.* at ¶ 7.b.ii.  The ADA Plan states that Defendants completed renovations for accessible beds, but acknowledges that the current toilet clearance space is not compliant with the ADA and will not be complete until **December 2024**, over a year from now.  ADA Plan at 5 (Module 8C), 6 (Module 8D).  Defendants thus they failed to comply with the ADA Order's requirement to provide access to accessible toileting by September 19, 2023.  *See* ADA Order at ¶ 7.b.ii (requiring accessible toileting by September 19, 2023).  Defendants are already in violation of the ADA Order's remedial deadline, and must immediately provide appropriate toilet clearance space in the units with accessible beds.  As set forth in Plaintiffs' Motions,

1  subclass members have fallen while attempting to transfer to toilets, and increased

2  toilet clearance space is necessary to ensure safe transfer.  *See* Dkt. 281-1 at 6; *see*

3  *also* Sanossian Decl., ¶ 6.

4        Second, Defendants' plan for housing people with mobility disabilities dilutes

5  the ADA Order by promising to house people accessibly only when "feasible" or

6  when accessible housing is "available."  The ADA Plan provides no definition or

7  explanation of what is meant by "feasible" or "available."  The ADA Order allows

8  for no such limitation; rather, it requires that Defendants "***will*** ensure that

9  incarcerated people are housed in accessible facilities, based on their accessibility

10 needs."  *Id.* at ¶ 7.b.i. (emphasis added).  The ADA Order further states that the

11 remedies must "make accessible housing available to all incarcerated people with

12 mobility disabilities."  *Id.* at ¶ 7.b.ii.  The point of the Order is to ensure that all

13 people with mobility disabilities in Central Jail are housed accessibly and resolve

14 the problems of inaccessible housing identified in Plaintiffs' Motions.  Yet

15 Defendants' ADA Plan states that incarcerated people "will be housed accessibly

16 with their accommodations when feasible" and that they will be housed "based on

17 their accessibility needs as feasible or available."  ADA Plan at 7; *see also id.* at 8

18 (repeatedly stating that people with mobility disabilities will only be provided

19 accessible housing "as available").  Defendants' proposed loopholes will maintain

20 the unacceptable status quo and make it inevitable that people with mobility

21 disabilities continue to be housed inaccessibly at Central Jail.  Defendants must

22 revise the ADA Plan to conform with the ADA Order and to state that all

23 incarcerated people with mobility disabilities ***will*** be housed accessibly.

24       Third, the ADA Plan fails to "include interim measures that mitigate

25 significant safety issues for incarcerated people with disabilities as related to beds,

26 showers, and toilets/lavatories…."  ADA Order at ¶ 7.c.  Interim accommodations

27 are important because, under the ADA Order, many of the physical plant changes

28 will take more than six months.  The ADA Plan refers to interim measures, *see*

1    ADA Plan at 11-12, but does not explain how the interim measures are sufficient or

2    how they will "mitigate significant safety issues."  The Plan's language vaguely

3    states only that people will be assigned "to housing within SDCJ or another

4    facility"—in other words, Defendants may move people with disabilities from

5    Central Jail to anywhere in the Jail system, without any stated regard to whether

6    those individuals can safely access beds, showers, and toilets (and without regard to

7    the person's classification or acuity of needs).

8         The ADA Plan must identify where Defendants will house people during

9    construction and/or retrofits, and explain how that housing solution mitigates

10   significant safety issues for incarcerated people.  Elsewhere, the ADA Plan

11   discusses only five wheelchair accessible beds at Rock Mountain Detention Facility,

12   without explicitly stating that Defendants will move people from Central to Rock

13   Mountain.  ADA Plan at 11.  If any unit at Central has more than five people who

14   use wheelchairs, the Rock Mountain cells will be insufficient to accommodate those

15   people when Defendants are renovating cells in those units at Central.

16        Fourth, the ADA Order requires Defendants to identify the maximum number

17   of people with mobility disabilities that can be housed in each unit.  *See* ADA Order

18   at ¶ 7.b.ii.  The ADA Plan indicates that by the end of 2024, Central Jail will have

19   38 beds available for wheelchair users and 24 additional beds for "non-wheelchair

20   persons with mobility disabilities."  *See* ADA Plan at 15.[3]  However, those 24

21   additional beds are in 12 cells with double bunks, which means that Defendants

22   intend to house at least some "non-wheelchair persons with mobility disabilities" on

23   top bunks.  That is a dangerous proposition and inconsistent with requirements of

24   the ADA Order and disability law more generally.  Plaintiffs' Motions identified

25   individuals, including Plaintiff Andrade, who do not use wheelchairs but who have

26

27   _____
     [3] The ADA Plan appears inconsistent on the deadlines and number of beds planned,
28   as elsewhere the ADA Plan states that Central Jail will have "at least 35 wheelchair
     accessible beds" by the end of 2026.  ADA Plan at 4.

mobility disabilities and who fell from upper bunks.  Dkt. 281-1 at 7-8; *see also* Dkt. 282-2 at Ex. AA-430-433 (describing serious brain injury suffered by person assigned to top bunk despite seizure disorder); *see also* Sanossian Decl., ¶ 7.

The ADA Plan also does not comply with the ADA Order's requirement that "[n]o person with a mobility disability using a wheelchair will be assigned to any bed in a triple bunk."  ADA Order at ¶ 7.b.i.(1).  Instead, the ADA Plan states that incarcerated people designated as "intermittent wheelchair" users may be housed in a triple bunk.  This is noncompliant with the clear language of the ADA Order and creates an unacceptable risk of harm.  *See also* Dkt. 281-1 at 7 (discussing Board of State and Community Corrections criticism of triple bunks in the Jail).

Finally, Plaintiffs' expert provided Defendants with a list of concerns about the proposed ADA Plan's dimensions for accessibility renovations in an appendix to Plaintiffs' September 5, 2023 letter.  Yet the stated dimensions remain insufficient and confusing.  Sanossian Decl., ¶ 5.  Defendants have refused to produce any plans or specifications at this time, essentially stating that a post-hoc inspection will reveal what has been done.  Anderson Decl., Ex. E.  It is wasteful and inefficient for Defendants to make modifications that may be inconsistent with the ADA Order and ADA, and then later have to spend taxpayer dollars to fix their flawed renovations.

## III.    THE PLAN FOR PROVIDING SIGN LANGUAGE INTERPRETATION DOES NOT COMPLY WITH THE ADA ORDER

The ADA Order requires Defendants to provide sign language interpretation, whether in-person or virtually, for people who use sign language as their primary form of communication.  *See id.* at ¶¶ 6-7.  Yet the ADA Plan fails to comply with the ADA Order.

First, the ADA Plan is vague about whether the sign language assistive devices at the Jail facilities will actually be functioning as of January 1, 2024.  The Sheriff's Department has acknowledged that providing virtual sign language services depends on Internet connectivity and that the Sheriff's Department has

faced challenges in this regard. *See* Dkt. 311-16 at ¶ 4 (commander declaration stating that the Sheriff's Department has had trouble implementing virtual sign language services "as connectivity issues related to WIFI have been challenging"). Plaintiffs asked Defendants about the status of Internet connectivity at the Jail, *see* Anderson Decl., Ex. C, but Defendants' counsel failed to provide any confirmation that the Wi-Fi problems at the Jail have been rectified. Accordingly, the Court should require Defendants' plan to include the provision of in-person sign language interpretation not only if "virtual interpretation services are insufficient," *see* ADA Plan at 3, but also if such interpretation services are unavailable.

Second, the ADA Plan falls short by referring only to providing "American Sign Language Interpretation," *see id.* at 3-4, when the ADA Order requires Defendants to provide **sign language interpretation** (without limitation to ASL). ADA Order at ¶¶ 6-7. Sign language interpretation may encompass sign languages other than ASL, such as Mexican Sign Language. A Certified Deaf Interpreter may also be necessary. Sanossian Decl. ¶ 9. Plaintiffs provided information about other sign language interpretation services to Defendants in the meet and confer process, Anderson Decl. at Ex. D, but Defendants failed to change the ADA Plan's reference to only "American Sign Language Interpretation." ADA Plan at 3-4. This does not comply with the ADA Order or the ADA, and fails to ensure that incarcerated people who use other sign languages will be accommodated.

Third, the ADA Plan states only that the Sheriff's Department "intends" to track the use of communication devices. *Id.* at 3. The ADA Plan should commit the Sheriff's Department to tracking use of sign language communication devices and the plan to do so, not solely state an "intent" to do so. The Sheriff's Department commits to tracking the effective communication needs of incarcerated people with hearing disabilities; it only makes sense for the Sheriff's Department to also track use of communication devices intended to meet those communication needs. Such tracking is routinely done in other ADA class actions to ensure there is no dispute

that incarcerated people are receiving effective communication.  Anderson Decl., ¶ 9.  Defendants' counsel has stated that Defendants "will be logging requests/use of SLI devices,"  *See* Anderson Decl., Ex. E.  The ADA Plan should enshrine this commitment.

## IV.    THE NEW POLICIES ATTACHED TO THE ADA PLAN REMAIN DEFICIENT

Defendants attached three policies to the ADA Plan, all of which are flawed, as articulated by Plaintiffs' expert.  *See* Sanossian Decl., ¶¶ 11-13.   For example, despite the ADA Order requiring Defendants to ensure that medical staff's lower bunk determination is a requirement, not a recommendation, revised policy I.22, *see* Ex. B, still includes the faulty "recommendation" language, which will place subclass members at risk.  Sanossian Decl., ¶ 11.   Even if this was a simple mistake, given that the policy otherwise includes "requirement" language, it is cause for concern that Defendants could not properly revise their policy even after Plaintiffs' Motions were filed.  Plaintiffs respectfully request that the Court require the ADA Plan be revised to require production of draft policies with Plaintiffs' counsel, so that Plaintiffs can offer comments to ensure policies are properly drafted prior to implementation and so that the parties can avoid unnecessary disputes later in the process.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully ask the Court to enter the Order submitted herewith, requiring Defendants promptly to prepare a revised ADA Plan that complies with the ADA Order.

DATED:  October 20, 2023          Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Gay Crosthwait Grunfeld*

Gay Crosthwait Grunfeld

Attorneys for Plaintiffs and the
Certified Subclass

# APPENDIX A

1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                  SOUTHERN DISTRICT OF CALIFORNIA

9   DARRYL DUNSMORE, ANDREE              Case No. 3:20-cv-00406-AJB-DDL
    ANDRADE, ERNEST ARCHULETA,
10  JAMES CLARK, ANTHONY EDWARDS,        **JOINT MOTION AND ORDER**
    LISA LANDERS, REANNA LEVY,           **RE ACCESSIBILITY AT**
11  JOSUE LOPEZ, CHRISTOPHER             **CENTRAL JAIL, EFFECTIVE**
    NELSON, CHRISTOPHER NORWOOD,         **COMMUNICATION POLICY**
12  JESSE OLIVARES, GUSTAVO              **AND PRACTICE, AND**
    SEPULVEDA, MICHAEL TAYLOR, and       **PROVISIONAL CLASS**
13  LAURA ZOERNER, on behalf of          **CERTIFICATION**
    themselves and all others similarly situated,
14
                Plaintiffs,
15
          v.                             (Doc. No. 349)
16
    SAN DIEGO COUNTY SHERIFF'S
17  DEPARTMENT, COUNTY OF SAN
    DIEGO, SAN DIEGO COUNTY
18  PROBATION DEPARTMENT, and DOES
    1 to 20, inclusive,
19
                Defendants.
20

21

22

23

24

25

26

27

28

On April 25, 2023, Plaintiffs filed Motions for Preliminary Injunction and Provisional Class Certification ("the Motions") seeking to ensure that Defendants County of San Diego and the San Diego County Sheriff's Department ("Defendants") :  (1) provide incarcerated people with hearing disabilities effective communication through sign language interpretation; and (2) house incarcerated people with mobility disabilities in accessible locations, where they can safely access sleeping, toileting, and showering facilities, in compliance with the Americans with Disabilities Act, the Rehabilitation Act, and California Government Code Section 11135 ("ADA").  On May 17, 2023, the County of San Diego opposed the motions, on the grounds that many of the factual allegations were incorrect and because the County was already in the process of renovating its policies and facilities.

On May 22, 2023, the parties and their experts (hereinafter the "Parties' Experts") met and conferred via Zoom for two hours.  On May 24, 2023, the parties and their experts conducted an Early Neutral Evaluation before the Honorable David Leshner at the United States District Court for the Southern District of California in San Diego.  On June 5, 8, 15, and 16, 2023, the parties conducted further settlement discussions via Zoom with Judge Leshner.

As a result of these discussions, the parties have reached the following agreements:

1.  Plaintiffs' motion for provisional class certification should be granted for settlement purposes only, per the terms of this Stipulation and [Proposed] Order, with certification of the Incarcerated People with Hearing and/or Mobility Disabilities subclass defined as "all qualified individuals with a hearing and/or mobility disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in the Jail."

2.  Showers:  The parties agree that some of the showers at Central Jail need

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

to be modified to comply with the ADA. The Parties' Experts agree that compliant showers must be constructed within some of the housing modules.  Defendants have agreed to continue to explore an interim solution of portable accessible showers, but Plaintiffs acknowledge there may be no viable portable shower solution and that shower chairs may be the best interim solution.

3.     Toilets:  The Parties' Experts agree that some of the existing cells in *celled* housing units at Central Jail are too small to accommodate the required clear floor spaces required for turning, bed transfer and/or toilet transfer required by the ADA.  The Parties' Experts agree that the toilets in the *dormitory* housing units require relatively minor modifications to comply with the ADA.

4.     Beds:  The Parties' Experts agree that triple bunks should not be used for housing of individuals with mobility disabilities.  Plaintiffs acknowledge that Defendants' policy for bed assignments for people with mobility disabilities will be amended such that an existing middle bunk does not qualify as a lower bunk and clarifying that lower bunk/lower tier placement is required rather than recommended in certain situations.  The parties have agreed that more information from the Sheriff's Department about the population of incarcerated people will be needed to determine the correct number of accessible cells and dorm beds needed for the population with mobility disabilities.

5.     Intake:  The parties agree that remedial measures are necessary to ensure accessibility for incarcerated people with mobility disabilities during intake screening and other intake processes, consistent with the ADA.  The parties have agreed that more information from the Sheriff's Department about the use of holding cells, intake and Jail population data, and intake/housing procedures would inform consideration of appropriate remedial measures for intake.

6.     Sign Language Interpreters:  The Parties' Experts agree that Defendants must revise and are in the process of revising their disability policies, and develop and implement processes to evaluate, document, and track incarcerated people with

3

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

1  disabilities' primary method of communication as well as to provide effective

2  communication to incarcerated people whose primary method of communication is

3  Sign Language, consistent with the requirements of the ADA.

4      7.    Within sixty days of the Court approving this Stipulation and [Proposed]

5  Order, Defendants shall develop and provide to Plaintiffs a plan to remedy the

6  accessibility and effective communication issues identified in Plaintiffs' Motions,

7  which shall include, at a minimum, the following elements:

8      a.    For incarcerated people with hearing disabilities at San Diego

9  County jail facilities:

10         i.    Defendants will provide Sign Language Interpretation via

11  in person (or remote technology as appropriate) to all incarcerated people with

12  hearing disabilities who use Sign Language Interpretation as their primary means of

13  communication for all medical and mental health encounters, booking, classification

14  proceedings, available structured programming (e.g., classes, religious services,

15  etc.), investigative purposes, and disciplinary proceedings.

16         ii.    During booking, Defendants will evaluate every person to

17  determine whether they have a hearing or speaking disability and, if so, the person's

18  primary method of communication (*e.g.*, sign language, written notes, hearing aids,

19  etc.).  In determining a person's primary method of communication, Defendants

20  must ensure that the incarcerated person is assessed by a nurse and must give

21  deference to the preference of the incarcerated person.  Defendants will then

22  document that method of communication and require that their staff and contractors

23  use that method as appropriate when interacting with the incarcerated person during

24  all medical and mental health encounters, booking, classification proceedings,

25  available structured programming (e.g., classes, religious services, etc.),

26  investigative processes, and disciplinary proceedings.

27         iii.    Defendants will provide access to Sign Language

28  Interpretation services at all San Diego County jail facilities that house people with

4

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION
POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

1 hearing disabilities who use Sign Language Interpretation as their primary means of

2 communication, including with a telecommunication service provider, videophones,

3 VRS technology, and in-person Sign Language Interpretation, as appropriate to

4 ensure effective communication;

5                 iv.    Defendants will track disability-related effective

6 communication needs, including as to Sign Language Interpretation, through its San

7 Diego County jail management systems; and

8                 v.    These changes will be incorporated into policy and

9 Defendants will train all deputies, health care staff, and other relevant staff to follow

10 the policy.

11        b.    For incarcerated people with mobility disabilities at San Diego

12 Central Jail:

13                 i.    Defendants will ensure that incarcerated people with

14 mobility disabilities are housed in accessible facilities, based on their accessibility

15 needs, including:

16                         (1)    No person with a mobility disability using a wheelchair

17                                 will be assigned to any bed in a triple bunk;

18                         (2)    No person with a mobility disability will be assigned to

19                                 the top bed of a triple bunk;

20                         (3)    Anyone assigned by medical to a lower bunk/lower tier

21                                 will be assigned to a single or bottom bunk;

22                         (4)    People with mobility disabilities will be assigned to

23                                 accessible housing, based on their accessibility needs,

24                               which may include accessible beds and clearance space;

25                         (5)    People with mobility disabilities will be provided

26                               accessible toileting, based on their accessibility needs,

27                               which if appropriate shall have 2010 ADAS-compliant

28                             grab bars and other features; and

5

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION
POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

(6)    People with mobility disabilities will be provided accessible showers, based on their accessibility needs which if appropriate shall have 2010 ADAS-compliant grab bars and shower chairs.

ii.    Defendants' remedial plan will identify each element in each housing unit that they will renovate and any other remedial measures to be taken, as well as the maximum number of incarcerated people with disabilities that can be safely housed in each unit. This portion of Defendants' plan will include staged deadlines for completion of renovations, with at least 25 accessible beds and toileting, which may be located in dormitory housing, becoming available as soon as possible and no later than 90 days from the date of this Stipulation and [Proposed] Order. As noted above, shower chairs will be provided as an interim solution. All renovations and changes required to make accessible housing available to all incarcerated people with mobility disabilities that require ADA compliant housing shall be completed within eighteen (18) months of the date of this Stipulation and [Proposed] Order. This does not include modifications to MOB, PSU, OP Step Down and JBCT as identified below.

iii.    Defendants' plan must include accessible and safe housing for people with mobility disabilities throughout their incarceration, including accessible cells during the intake and booking process within eighteen (18) months of the date of this Stipulation and [Proposed] Order.  The plan to achieve compliance in PSU, OP Step Down and JBCT must include sufficient accessible and safe housing for people with mobility disabilities throughout their incarceration as soon as possible and not later than three years of the date of this Stipulation and [Proposed] Order.  Defendants' plan must include interim accommodations made as accessible as feasible for those in these specialized units. The 3% Defendants plan to provide will be determined at the time that construction begins on this second phase.

iv.    Defendants' plan will ensure that during booking, and at

the request of any incarcerated person, Defendants will evaluate every person to determine whether they have a mobility disability and, if so, what accessibility features and accommodations each person requires. Defendants must then document those accommodations and ensure that the incarcerated person is housed accessibly with their accommodations.

                v.     These changes will be incorporated into policy and Defendants will train all deputies, health care staff, and other relevant staff to follow the policy.

                c.     To the extent that any necessary remedial measures regarding physical plant changes will require an extended period of time (e.g., more than 6 months), Defendants' plan will include interim measures that mitigate significant safety issues for incarcerated people with disabilities as related to beds, showers, and toilets/lavatories, along with the plan for achieving full compliance.

        8.     Within fifteen (15) days of Plaintiffs' receipt of Defendants' proposed plan, Plaintiffs will provide feedback (if any) to the proposed plan as to necessary modifications. Within fifteen (15) days of Defendants' receipt of Plaintiffs' feedback, the parties and the Parties' Experts will confer to address any concerns or disputes.

        9.     Within fifteen (15) days of the above-mentioned meet and confer, Defendants will submit their plan (with any modifications) to the Court. Plaintiffs will submit to the Court objections (if any) to the proposed plan as to necessary modifications within fifteen (15) days of Defendants' submission.

        10.    The Court thereafter shall enter an Order adopting the plan, as revised (if at all) by the Court, in consideration of Plaintiffs' objections.

        11.    Within fifteen (15) days after the Court issues the Order adopting the plan, the parties will agree on a qualified independent expert (or experts). The independent expert(s) will work with Defendants to ensure timely and appropriate implementation of the plan. The independent expert(s) will issue a quarterly report

7

Case No. 3:20-cv-00406-AJB-DDL

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

to counsel for Plaintiffs and Defendants addressing Defendants' progress toward implementation of the plan.  Defendants will pay reasonable fees for work performed by the independent expert(s) at Defendants' request and as required to confirm compliance.  If Plaintiffs expect to require the independent expert to expend time that would be in excess of $1000 per quarter they shall first meet and confer with defendants and the issue may be brought to Judge Leshner.

12.     After the Court issues the Order adopting the plan, Plaintiffs shall be allowed access to relevant documents and records in Defendants' custody and control relevant to the provision of Sign Language Interpretation to incarcerated people with hearing disabilities.

13.     Within ninety (90) days of this Order, and for the twelve months following entry of the Order adopting Defendants' plan, Defendants must, on a monthly basis, provide daily housing rosters for the preceding month to the Court and Plaintiffs and marked as Attorney's Eyes Only, reflecting the disability needs of every person incarcerated at Central Jail who have been identified as having a mobility or hearing disability, including information sufficient to describe their mobility disability (if any), hearing disability (if any), effective communication needs (if any), housing unit, bed assignment (including top, middle, or lower bunk), and whether the person's cell or housing unit has 2010 ADAS-compliant toilet grab bars, shower grab bars, and shower seat. Housing does not include intake and holding.

14.     Four months after the Court issues the Order adopting the plan, Plaintiffs shall be allowed to inspect with their experts any renovations completed by Defendants at the Central Jail to ascertain whether Defendants have adequately modified their housing for people with mobility disabilities per this order.  Plaintiffs may conduct a second inspection of the Central Jail eighteen (18) months after the Court issues the Order adopting the plan.

15.     Eighteen (18) months after the Court issues the Order adopting the

8

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

plan, the independent expert(s) will assess whether Defendants have implemented their plan adequately to address the deficiencies identified by the Parties' Experts as part of the eighteen (18) month plan.  All components of Defendants' plan determined to be adequately implemented will not be subject to further inspection by Plaintiffs or the independent expert(s).  Inspections may, however, continue if and as necessary for determining whether Defendants have adequately implemented any other components of this or any other Court-ordered remedial plan.

16.     If, following a finding by the independent expert(s) that one or more components of Defendants' plan has been adequately implemented, Plaintiffs form the good faith belief that Defendants are no longer adequately implementing the component(s) of the plan, Plaintiffs will promptly so notify Defendants in writing and present a summary of the evidence upon which such a belief is based.  Within 30 days thereafter, Defendants shall serve a written response stating whether they agree or disagree with Plaintiffs' position.  In the event that Defendants agree, monitoring by the qualified independent expert(s) and Plaintiffs shall resume until adequate implementation is again established.  In the event Defendants disagree, the parties shall present their positions in writing to the qualified independent expert(s). The qualified independent expert(s) will, within 30 days, issue a written decision regarding whether to resume monitoring of the remedial plan component(s) at issue.

### Dispute Resolution

17.     Any party may initiate the dispute resolution process with respect to any matter covered by this Stipulation and [Proposed] Order by providing written notice of a dispute ("Dispute Notice").

18.     Following service of the Dispute Notice, the parties shall undertake good faith negotiations at such times and places as they deem sufficient in an effort to resolve the dispute informally between them.  If, within 30 days after service of the Dispute Notice, the parties have failed to resolve the dispute, either party may request that the qualified independent expert(s) most knowledgeable in the subject

9

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

matter of the dispute be permitted to evaluate the issue in dispute and prepare a report. The qualified independent expert(s) must provide the report regarding the area of disagreement to the parties within 30 days of the request.

19. In the event the parties' good faith attempt to resolve the dispute informally proves unsuccessful, the parties shall next seek the assistance, advice, and/or guidance of Magistrate Judge David Leshner. Any party may request that a settlement conference be scheduled within 30 days of the Dispute Notice, unless the parties mutually agree upon an alternative schedule.

20. With the exception of any report prepared by the expert(s), as described above, and any notice that negotiations are concluded, nothing said and no document prepared in connection with the Dispute Resolution proceedings shall be offered in evidence in any subsequent judicial proceeding in this case.

21. This Stipulation and [Proposed] Order will resolve only the issues raised in Plaintiffs' Motions. Plaintiffs expressly reserve all rights to pursue the legal claims and any necessary relief as to all other issues in the operative complaint.

IT IS SO STIPULATED.

Respectfully submitted,

DATED: June 20, 2023          ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Gay C. Grunfeld*
_____
Gay C. Grunfeld

Attorneys for Plaintiffs

DATED: June 20, 2023          BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ Elizabeth M. Pappy*
_____
Elizabeth M. Pappy

Attorneys for Defendants

10

The Court, having reviewed the above Stipulation of the parties, as well as the pleadings in support and opposition to Plaintiffs' Motions, and good cause appearing, hereby issues the following Order:

1.     Defendants shall take the actions described above in the timeframes listed above.  The Court further adopts the findings above and directs the parties to follow the procedures and timelines set forth above.

2.     These remedies are all consistent with the Prison Litigation Reform Act's requirement that the Court's orders be narrowly drawn, extend no further than necessary to correct the violation of a federal right, and be the least intrusive means necessary to correct the violation.  *See* 18 U.S.C. § 3626(a)(1)(A).

3.     The Court provisionally certifies a Subclass of all qualified individuals with a hearing and/or mobility disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (i), and who are now, or will be in the future, incarcerated in all San Diego County Jail facilities.  The Court appoints Plaintiffs as the provisional class representatives for the Subclass.  The Court appoints Plaintiffs' counsel—Gay Grunfeld and Van Swearingen of Rosen Bien Galvan & Grunfeld LLP, Aaron Fischer of Law Office of Aaron J. Fischer, and Christopher Young of DLA Piper LLP—as provisional class counsel.  Fed. R. Civ. P. 23(g)(1) and (4).

4.     This Order shall apply to Defendants, their agents, contractors, employees, successors in office, and all persons with knowledge of it.  No person who has notice of this injunction shall fail to comply with it, nor shall any person subvert the injunction by any sham, indirection, or other artifice.

/ / /

/ / /

/ / /

/ / /

/ / /

11

Case No. 3:20-cv-00406-AJB-DDL

1      5.     The bond requirement is waived.

2      6.     The Court shall retain jurisdiction to enforce the terms of this Order.

3    IT IS SO ORDERED.

4

5 Dated: June 21, 2023

6                                   Hon. Anthony J. Battaglia

7                                   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:20-cv-00406-AJB-DDL

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION
POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION