GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone:  (510) 806-7366
Facsimile:   (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Subclass

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No. 3:20-cv-00406-AJB-DDL <br><br> **DECLARATION OF ERIC MONEK ANDERSON IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO DEFENDANTS' ADA PLAN** <br><br> Judge:       Hon. Anthony J. Battaglia <br> Magistrate: Hon. David D. Leshner <br><br> Trial Date: None Set |

[4371810.3]

I, Eric Monek Anderson, declare:

1.     I am an attorney duly admitted to practice before this Court.  I am an associate in the law firm of Rosen Bien Galvan & Grunfeld LLP, counsel of record for Plaintiffs.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could competently so testify.  I make this declaration in support of Plaintiffs' Objections to Defendants' ADA Plan.

2.     Plaintiffs' proposed Order Granting Plaintiffs' Objections to Defendants' ADA Plan is attached hereto as **Exhibit A**.

3.     On August 22, 2023, Defendants served Plaintiffs with the Sheriff's Department's proposed ADA remedial plan.

4.     On September 5, 2023, Plaintiffs sent Defendants a letter stating Plaintiffs' concerns with the proposed ADA plan and requesting further information from Defendants.  A true and correct copy of that letter, without Appendix A, which references information from a confidential ENE, is attached hereto as **Exhibit B**.

5.     On September 18, 2023, Defendants sent Plaintiffs a response to the September 5, 2023 letter.  A true and correct copy of that response is attached hereto as **Exhibit C**.

6.     On September 19, 2023, counsel for Plaintiffs and counsel for Defendants met and conferred over Zoom regarding the proposed ADA plan, Plaintiffs' concerns about the plan, and Defendants' responses to Plaintiffs' concerns.

7.     On September 20, 2023, Plaintiffs sent a letter to Defendants providing additional information requested on the September 19 call, and memorializing Plaintiffs' requests for information on the September 19 call.  A true and correct copy of that letter is attached hereto as **Exhibit D**.

8.     On October 4, 2023, Defendants' counsel responded by email to certain questions in the letter.  A true and correct copy of the email is attached hereto as **Exhibit E**.

9.      My firm is class counsel in *Armstrong v. Newsom*, No. 94-cv 2307-CW (N.D. Cal.), a disability rights class action lawsuit against the California Department of Corrections and Rehabilitation ("CDCR").  I am assigned to that case and, along with my colleagues, monitor CDCR's compliance with the ADA and other disability statutes.  In *Armstrong*, we routinely request from CDCR and review logs and other indicia tracking provision of sign language interpretation and other forms of effective communication.  My firm monitors other jails that also track and log provision of sign language interpretation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at San Francisco, California this _20th_ day of October, 2023.



_____
Eric Monek Anderson

# EXHIBIT A

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, | Case No. 3:20-cv-00406-AJB-DDL  **ORDER REQUIRING REVISIONS TO DEFENDANTS' ADA PLAN**  Judge:       Hon. Anthony J. Battaglia Magistrate: Hon. David D. Leshner  Trial Date: None Set |
|                        Plaintiffs, | |
|          v. | |
| SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, | |
|          Defendants. | |

20

21

22

23

24

25

26

27

28

The Court, having considered Defendant San Diego County Sheriff's Department's ADA Action Plan for the County Jails, Dkt. 409 ("ADA Plan") and Plaintiffs' Objections thereto, and good cause appearing, hereby finds and orders as follows:

1.     The ADA Plan fails to comply with the Joint Motion and Order re Accessibility at Central Jail Effective Communication Policy and Practice, and Provisional Class Certification ("ADA Order") in multiple respects.

2.     Defendants' Plan excessively delays for over a year implementation of needed improvements to accessibility for incarcerated people who use sign language and have mobility disabilities; fails to provide accessible toileting, adequate detail about renovations, or adequate detail about interim accommodations; fails to provide for sign language interpretation; and attaches deficient and inadequate draft policies and procedures.

3.     In order to correct these deficiencies and comply with the ADA Order, Defendants' Plan must be revised as follows within 30 days of entry of this Order:

- Page 3 lines 2, 4 and 11, strike "American"
- Page 3 line 15, change "July 1" to "January 1"
- Page 4 lines 1, 3, and 5, strike "American"
- Page 4 line 9, change "July 1" to "January 1"
- Page 4 line 12, change "July 1" to "January 1"
- Page 7 line 4, change "July 1" to "January 1"
- Page 7 line 11, strike "feasible"
- Page 7 line 15, strike "as feasible or available"
- Page 8 lines 2, 5 and 9, strike "as available"
- Page 8 line 25, change "July 1" to "January 1"
- Page 8 line 28, change "July 1" to "January 1"

4.     Defendants must immediately take steps to provide accessible toileting for at least 25 individuals, as required by the ADA Order.

5.      Within 30 days of this Order, Defendants must revise their Plan to identify specific interim accommodation measures for incarcerated people with mobility disabilities during physical plant changes at Central Jail, and to ensure that no person using a wheelchair is assigned to a triple bunk.

6.      Within 30 days of this Order, Defendants must revise their Plan to include specific provisions for providing in-person sign language interpretation, including but limited to when virtual interpretation services are insufficient or unavailable, and specific provisions for logging use of sign language communication devices.

7.      In addition, in order to avoid duplication of effort at taxpayer's expense, Defendants should provide to Plaintiffs' counsel all draft policies and procedures, and all specifications and plans of renovations, contemplated by their Plan, sufficiently in advance to allow Plaintiffs' counsel to comment on the same.

8.      Revising the Plan in this manner is consistent with the Prison Litigation Reform Act's requirement that the Court's orders be narrowly drawn, extend no further than necessary to correct the violation of a federal right, and be the least intrusive means necessary to correct the violation.  *See* 18 U.S.C. § 3626(a)(1)(A).

IT IS SO ORDERED.


DATED: _____, 2023      _____

                                 Honorable Anthony J. Battaglia

# EXHIBIT B

Ex. B-5



**ROSEN BIEN**
**GALVAN & GRUNFELD LLP**

101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Gay Crosthwait Grunfeld
Email: ggrunfeld@rbgg.com

September 5, 2023

<u>VIA ELECTRONIC MAIL ONLY</u>

Susan E. Coleman                          Elizabeth M. Pappy
Burke Williams & Sorensen, LLP            Burke, Williams & Sorensen, LLP
501 West Broadway, Suite 1600             60 South Market Street, Suite 1000
San Diego, California 92101-8474          San Jose, California 95113-2336
scoleman@bwslaw.com                       epappy@bwslaw.com

  Re: *Dunsmore et al. v. San Diego County Sheriff's Department et al.*,
    S.D. Cal. No. 3:20-cv-00406-AJB-DDL
    Plaintiffs' Response to Proposed ADA Action Plan
    <u>Our File No. 1730-01</u>

Dear Susan and Beth:

  Pursuant to Paragraph 8 of the June 21, 2023 Joint Motion and Order Regarding Accessibility at Central Jail, Effective Communication Policy and Practice, and Provisional Class Certification, Docket No. 355 ("ADA Order"), we write to provide Plaintiffs' response to Defendants' August 21, 2023 "ADA Action Plan" ("Plan"), as supplemented with additional exhibits on August 22, 2023.

  Plaintiffs have identified the following issues and questions with regard to the proposed Plan,[1] to be discussed at our forthcoming court-ordered conference:

  1. **Policy Revision Deadline.** The Plan indicates that the new policies will not be "update[d]" or "memorialize[d]" until July 1, 2024 (pp. 5, 8-9). Plaintiffs object to this time frame as excessive, particularly in light of Defendants' prior representations (including in the Bavencoff Declaration filed in opposition to Plaintiffs' preliminary injunction motion, Dkt. 311-16, as well as the stipulation leading to the ADA Order) that draft policies were already in the works. In addition, Plaintiffs seek clarification

---

[1] Plaintiffs are still reviewing the Plan and reserve the right to raise additional concerns at the conference or through objections, especially after receiving additional information including construction documents and specifications.

[4345936.1]

**Ex. B-6**

Susan Coleman
Elizabeth Pappy
September 5, 2023
Page 2

regarding whether the policies attached as exhibits to the Plan are final, and if so, how they are different from prior policies (*i.e.*, through a redline). Plaintiffs also seek information about how those policies intersect with the proposed policies to be memorialized on July 1, 2024, and the specific new ADA-related policies will ultimately be issued.

Plaintiffs have identified several gaps and deficiencies in the policies appended to the Plan.[2] It would be sensible for Defendants to engage Plaintiffs' counsel and relevant experts in the policy revision process in order to avoid disputes and potential litigation on these matters down the road.

2.    **Training Content and Schedule.** Plaintiffs seek to review and comment on all training materials as soon as possible and well in advance of training being administered. Training should occur in the near term—not in the summer of 2024, as the Plan states—and must occur prior to implementation of the new policies and practices. Training should be mandatory for all custody and medical staff and attendance should be documented.

3.    **Provision of In-Person Sign Language Interpretation.** The Plan includes details regarding what technological or virtual sign language services Defendants intend to employ, but provides no explanation of what in-person sign language interpretation ("SLI") service will be used. The in-person SLI service provider and contract should be specified in the Plan. Please provide a copy of all contracts with providers who are used to provide effective communication, including the SLI in-person contract.

The Plan should also state that some individuals will require and must receive in-person SLI, including those who are low vision or who have cognitive or other communicative disabilities that make video SLI ineffective. Like the ADA Order, the Plan should provide for Sign Language Interpretation, and not be limited to American Sign Language Interpretation (p. 5)—there are other versions of SLI and those must be made available to those who need it. See https://www.interpretcloud.com/blog/a-guide-to-different-types-of-sign-language/. Relatedly, some Deaf individuals require a Sign Language Interpreter and Certified Deaf Interpreter in order to ensure effective communication. More information at: Use of Certified Deaf Interpreter, https://www.courts.ca.gov/partners/documents/2011SRL4aDeaf.pdf.

---

[2] For example, as we have previously informed you, California's definition of "disability" controls and is broader than the "substantially limits" language used under the ADA.

**Ex. B-7**

Susan Coleman
Elizabeth Pappy
September 5, 2023
Page 3

     4.    **Wi-Fi at all facilities to allow Video Relay Services, Video Remote Interpreting, tablets, and other devices.**  The Plan lists various remote communication assistive devices that will be deployed by January 1, 2024 (pp. 3-5).  At the time the ADA depositions were taken earlier this year, there was no Wi-Fi or other Internet connectivity at any San Diego County jail facility except the first and second floors of Central.  Please provide detailed information about the current status of Internet connectivity on each floor of each of the jail facilities, now and as planned for the future, with timetables, contracts, and information about whether Internet connectivity will affect implementation of the ADA Order.

     5.    **Tracking Systems.**  Defendants are committing to track effective communication and mobility needs and accommodations in JIMS and TechCare (pp. 3, 7).  Plaintiffs request that the training of custody and medical staff include training on identification and tracking and that Plaintiffs be allowed a demonstration of how the tracking will be accomplished in these systems.

     6.    **Limitations on Effective Communication Devices.**  The Plan states that "[e]ach facility will have at least one type of communication assistive device for due process interactions and at least one type of communication device for visits[.]" (*Id.* at 3). There is no indication as to why this number of devices will be sufficient (i.e., how many people with hearing disabilities are housed at each facility on a given day), how Defendants will ensure that the incarcerated person's method of communication is used, and what will be used for other encounters, such as medical and mental health encounters, booking, and available structured programming.  The Plan and relevant policies must make clear all services, programs and activities for which effective communication devices must be available for those who use them.

     Plaintiffs request that each use of each device be logged and that we have the opportunity to review those logs periodically.  *See* Dkt. 355 at ECF 8.

     Plaintiffs also request additional information about how the new technological systems are being chosen and tested.  We request the opportunity to observe training and how the systems work in practice.

     7.    **Housing of Incarcerated People with Hearing Disabilities.**  On page 5, the Plan references "all San Diego County jail facilities that house people with hearing disabilities …."  Plaintiffs seek clarification on whether Defendants intend to house people with hearing disabilities at only a subset of the Jail facilities, or whether all seven facilities will house people with hearing disabilities.  Clustering of people with hearing disabilities is prohibited by the 2010 ADAS.  *See generally* 28 C.F.R. § 35.151(c) Appendix (k); 28 C.F.R. § 35.152(b)(2).  The Plan states Plaintiffs will

[4345936.1]

**Ex. B-8**

Susan Coleman
Elizabeth Pappy
September 5, 2023
Page 4

receive rosters of people with a hearing disability only for Central Jail; Plaintiffs need
such rosters for all facilities where people with hearing disabilities are housed.

8. **Construction Plans and Specifications.**  Plaintiffs request that Defendants
provide drawings of construction plans and specifications in advance of the court-ordered
conference.  Construction documents should be approved by the County and State Fire
Marshal prior to the commencement of construction.  A list of concerns from Plaintiffs'
expert about the description of the work promised by September 19, 2023 (pp. 6-7) is
attached hereto as Appendix A.  Similar construction documents and specifications
should be produced prior to each phase of remediation.  (pp. 9-13).

9. **"Feasibility" Standard in Housing Policy.**  The proposed policy changes
related to people with mobility disabilities introduce a "feasibility" or "availability"
standard.  (p. 8).  Plaintiffs object to any "feasibility" or "availability" standard as
inconsistent with the ADA Order and governing law.

10. **Housing of Intermittent Wheelchair Users.**  Plaintiffs object to the
limitation allowing people who use wheelchairs intermittently to be housed in triple
bunks.  (p. 8).  There is no such limitation in Judge Battaglia's June 21, 2023 Order.  *See*
Dkt. 355.  And because of the current lack of accessible housing at Central, there may be
incentives to classify people with disabilities as "intermittent" wheelchair users when in
fact they need them full-time.

11. **Inadequate Accessible Housing.**  If the average daily housing population
is 720 at Central, do Defendants intend to continue using triple bunks, contrary to the
BSCC's recommendation?  Do Defendants intend to house all incarcerated people who
need wheelchairs at Central Jail and Rock Mountain?  If so, the planned 48 wheelchair
accessible beds at Central and 42 at Rock Mountain (p. 13) may not be sufficient,
including for those in MOB, PSU, OP Stepdown and JBCT (pp. 14-15).  Under the ADA,
people who qualify for dorm housing (i.e., low-security classifications) cannot be placed
at Rock Mountain which is only celled housing.  And when will the 12 somewhat
modified but not ADA accessible cells planned for Central be available?  (p. 13).

Thirty-five accessible beds now and 48 over the longer term may not be sufficient
even for Central.  The Mobility-Related Population Statistics attached to the Plan suggest
that there have been days with 50 wheelchair users at Central.  The data do not disclose
how many times that has happened in the first half of 2023.  More information is needed.

The Plan fails to identify "the maximum number of incarcerated people with
disabilities that can be safely housed in each unit."  *See* Dkt. 355 at ECF 6.  This should
be added.

[4345936.1]

**Ex. B-9**

Susan Coleman
Elizabeth Pappy
September 5, 2023
Page 5

12.     **Incomplete Rosters.**  Defendants' Plan indicates that it will not provide rosters of "intake, release or temporary holding."  (p. 2).  Plaintiffs request information about individuals who come into the jail needing mobility assistive devices be included on the rosters, as it will help guide the construction remediation in those areas (pp. 9-10), as well as planning for meeting ADA-related needs.

13.     **Inappropriate Scope.**  The Plan fails to address accessible routes, slopes and signage.  Since you are altering the facility, barriers such as these—described in detail in SZS's report on Central—must be addressed.

14.     **Inadequate Plan for Interim Accommodations.**  The Interim Accommodation Plan is inadequate.  The Plan admits there are only five wheelchair accessible beds at Rock Mountain (p. 11), and they are in cells, which may be a higher security level.  The Plan is vague as to what will happen to people who are displaced during construction.  The five beds at Rock Mountain will not be enough for the potentially 50 wheelchair users who are admitted to Central.  Nor is it enough to say these individuals "will be provided with a compliant bed and a portable shower chair."  Where will the compliant beds be?  How will these individuals use the toilet?  Do the portable shower chairs fit in the current showers at Central?

We look forward to discussing revisions to the Plan.  Please let us know when you and your experts are available for a conference regarding these issues.  Pursuant to Paragraph 8 of the ADA Order, the conference must occur no later than September 20.  We can make ourselves available from September 13-20.

As always, thank you for your courtesy and cooperation in this matter.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s Gay Crosthwait Grunfeld*

By:   Gay Crosthwait Grunfeld

GCG:kc
Enclosure
cc:   Fernando Kish
      Steven Inman
      Co-counsel

[4345936.1]

**Ex. B-10**

# EXHIBIT C

| From: | Coleman, Susan E. |
|---|---|
| To: | Mehra, Terri; Aaron Fischer; Priyah Kaul; Gay C. Grunfeld; Van Swearingen; Isabella.Neal@us.dlapiper.com; Oliver.Kiefer@us.dlapiper.com; Christopher.Young@us.dlapiper.com; Hannah Chartoff; Eric Monek Anderson |
| Cc: | Pappy, Elizabeth M.; Favela, Diana; Gonzalez, Lucy |
| Subject: | RE: Dunsmore v. San Diego County Sheriff's Department |
| Date: | Monday, September 18, 2023 3:18:51 PM |
| Attachments: | Dunsmore_reply to ADA Plan objections.pdf |

---

<mark>[EXTERNAL MESSAGE NOTICE]</mark>

Counsel – attached are our responses to your objections/comments about the ADA Plan.

Best,

Susan

**Susan E. Coleman** | Partner

501 West Broadway, Suite 1600 | San Diego, CA 92101

d - 619.814.5803 | t - 619.814.5800 | f - 619.814.6799

scoleman@bwslaw.com | vCard | bwslaw.com

Burke, Williams & Sorensen, LLP



The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

1.  **Policy Revision Deadline.** The Plan indicates that the new policies will not be "update[d]" or "memorialize[d]" until July 1, 2024 (pp. 5, 8-9). Plaintiffs object to this time frame as excessive, particularly in light of Defendants' prior representations (including in the Bavencoff Declaration filed in opposition to Plaintiffs' preliminary injunction motion, Dkt. 311-16, as well as the stipulation leading to the ADA Order) that draft policies were already in the works.

Your letter does not indicate a timeline that would be acceptable. Please provide a date that Plaintiffs would accept, and we will evaluate for feasibility.

The policies are a work in progress and will continue to evolve as more processes are put in place and more changes are made in the facility. There is no deadline written into the order, and we believe July 1st is a reasonable option given the scope of changes being made. Further, even after that date, policies will continue to evolve as the law and state/BSCC standards change and processes update.

In addition, Plaintiffs seek clarification regarding whether the policies attached as exhibits to the Plan are final, and if so, how they are different from prior policies (i.e., through a redline).

The policies attached have been implemented but may be modified as other policies are amended and changes are needed/desired. You have the policies that were in place previously, as well as those attached to the Plan, for purposes of comparison.

Plaintiffs also seek information about how those policies intersect with the proposed policies to be memorialized on July 1, 2024, and the specific new ADA-related policies will ultimately be issued.

It is not clear what you are requesting. As noted above, the current policies will likely need revision as the County continues to implement additional processes and changes to improve accessibility. The ADA Order does not require final policies to be in the Plan itself but rather to come up with a roadmap and timeline for provision of modified policies, which is what our Plan does.

Plaintiffs have identified several gaps and deficiencies in the policies appended to the Plan. It would be sensible for Defendants to engage Plaintiffs' counsel and relevant experts in the policy revision process in order to avoid disputes and potential litigation on these matters down the road.

It would be most helpful if you could inform us of the gaps and deficiencies you have identified and what you would like to see in terms of revisions so we can work together to address them. For example, you identify a definition that you disagree with but you do not offer a preferred definition. Further, as you know, we have engaged Julian Martinez to assist with policy revision. We are also happy to consider your input.

**Ex. C-13**

2.     **Training Content and Schedule.** Plaintiffs seek to review and comment on all training materials as soon as possible and well in advance of training being administered. Training should occur in the near term—not in the summer of 2024, as the Plan states—and must occur prior to implementation of the new policies and practices. Training should be mandatory for all custody and medical staff and attendance should be documented.

<span style="color:red">Review and pre-approval of training materials was not part of the settlement terms, which focused on policies and procedures to ensure accessibility and proper accommodations. However, if you have suggested materials, please send them to us for review and consideration. As you know, training materials evolve as the law, standards, and processes change, and the County must be in compliance with many different rules, including but not limited to the settlement and terms of the ADA Order.</span>

3.     **Provision of In-Person Sign Language Interpretation.** The Plan includes details regarding what technological or virtual sign language services Defendants intend to employ but provides no explanation of what in-person sign language interpretation ("SLI") service will be used. The in-person SLI service provider and contract should be specified in the Plan. Please provide a copy of all contracts with providers who are used to provide effective communication, including the SLI in-person contract.

<span style="color:red">There is no requirement that the Plan list the providers so long as they are certified in SLI. Further, you do not identify a suggested solution. Is there a provider you suggest?</span>

The Plan should also state that some individuals will require and must receive in-person SLI, including those who are low vision or who have cognitive or other communicative disabilities that make video SLI ineffective. Like the ADA Order, the Plan should provide for Sign Language Interpretation, and not be limited to American Sign Language Interpretation (p. 5)—there are other versions of SLI and those must be made available to those who need it.

See https://www.interpretcloud.com/blog/a-guide-to-different-types-of-sign-language/

<span style="color:red">The County is interested in learning about any providers you have used that can provide sign language interpretation in all languages. Please provide that information so that we may look into it. In addition, the Plan specifically states that individuals will be provided with effective communication, which the ADA requires to be based on an individualized assessment.</span>

Relatedly, some Deaf individuals require a Sign Language Interpreter and Certified Deaf Interpreter in order to ensure effective communication. More information at: Use of Certified Deaf Interpreter,

https://www.courts.ca.gov/partners/documents/2011SRL4aDeaf.pdf.

Ex. C-14

Again, the Plan envisions an individualized assessment. If you have specific recommendations, please tell us the name of the providers you have used. The links you provided do not identify suggested providers.

4.   **Wi-Fi at all facilities to allow Video Relay Services, Video Remote Interpreting, tablets, and other devices.** The Plan lists various remote communication assistive devices that will be deployed by January 1, 2024 (pp. 3-5). At the time the ADA depositions were taken earlier this year, there was no Wi-Fi or other Internet connectivity at any San Diego County jail facility except the first and second floors of Central. Please provide detailed information about the current status of Internet connectivity on each floor of each of the jail facilities, now and as planned for the future, with timetables, contracts, and information about whether Internet connectivity will affect implementation of the ADA Order.

We are aware of the historical Wi-Fi limitations, and for that reason have allowed some time in order to have internet connectivity to permit use of remote communication assistive devices by January 1, 2024.

5.   **Tracking Systems.** Defendants are committing to track effective communication and mobility needs and accommodations in JIMS and TechCare (pp. 3, 7). Plaintiffs request that the training of custody and medical staff include training on identification and tracking and that Plaintiffs be allowed a demonstration of how the tracking will be accomplished in these systems.

Per the requirements of the Plan, the written materials will be provided once they have been formulated and implemented. Further, review and pre-approval of training materials was not part of the settlement terms, nor was any software demonstration.

6.   **Limitations on Effective Communication Devices.** The Plan states that "[e]ach facility will have at least one type of communication assistive device for due process interactions and at least one type of communication device for visits[.]" (Id. at 3). There is no indication as to why this number of devices will be sufficient (i.e., how many people with hearing disabilities are housed at each facility on a given day), how Defendants will ensure that the incarcerated person's method of communication is used, and what will be used for other encounters, such as medical and mental health encounters, booking, and available structured programming. The Plan and relevant policies must make clear all services, programs and activities for which effective communication devices must be available for those who use them.

Plaintiffs request that each use of each device be logged and that we have the opportunity to review those logs periodically. See Dkt. 355 at ECF 8.

The ADA Order does not require a log or periodic review of such logs. If you find down the road that the County is not in compliance with the ADA Order, you have available recourse through the court. The County is committed to providing effective

communication and will continue to assess the needs of its population, including whether additional devices may be needed.

Plaintiffs also request additional information about how the new technological systems are being chosen and tested. We request the opportunity to observe training and how the systems work in practice.

Once implemented, the County will provide written copies of any documents required by the ADA Order; however, it does not anticipate observation of training or demonstration of systems in situ.

7. **Housing of Incarcerated People with Hearing Disabilities.** On page 5, the Plan references "all San Diego County jail facilities that house people with hearing disabilities …." Plaintiffs seek clarification on whether Defendants intend to house people with hearing disabilities at only a subset of the Jail facilities, or whether all seven facilities will house people with hearing disabilities. Clustering of people with hearing disabilities is prohibited by the 2010 ADAS. See generally 28 C.F.R. § 35.151(c) Appendix (k); 28 C.F.R. § 35.152(b)(2). The Plan states Plaintiffs will receive rosters of people with a hearing disability only for Central Jail; Plaintiffs need such rosters for all facilities where people with hearing disabilities are housed.

While we appreciate your concerns, the Plan says nothing about clustering.  Rosters are being provided for mobility impaired at SDCJ and hearing impaired at all facilities, as agreed upon.

8. **Construction Plans and Specifications.** Plaintiffs request that Defendants provide drawings of construction plans and specifications in advance of the court-ordered conference. Construction documents should be approved by the County and State Fire Marshal prior to the commencement of construction. A list of concerns from Plaintiffs' expert about the description of the work promised by September 19, 2023 (pp. 6-7) is attached hereto as Appendix A. Similar construction documents and specifications should be produced prior to each phase of remediation. (pp. 9-13).

The County declines to provide construction plans and drawings at this point, and it is cognizant of required permits and governmental approvals.  Plaintiffs' counsel and their expert(s) have the right to come inspect at various benchmarks per the ADA Order.  If there are any issues identified during those inspections, you will have the opportunity to raise issues as set forth in the ADA Order.

9. **"Feasibility" Standard in Housing Policy.** The proposed policy changes related to people with mobility disabilities introduce a "feasibility" or "availability" standard. (p. 8). Plaintiffs object to any "feasibility" or "availability" standard as inconsistent with the ADA Order and governing law.

The word "feasible" is included in the ADA.  This permits the County to adjust as needed, for example if a supporting wall cannot be removed.

**Ex. C-16**

10. **Housing of Intermittent Wheelchair Users.** Plaintiffs object to the limitation allowing people who use wheelchairs intermittently to be housed in triple bunks. (p. 8). There is no such limitation in Judge Battaglia's June 21, 2023 Order. See Dkt. 355. And because of the current lack of accessible housing at Central, there may be incentives to classify people with disabilities as "intermittent" wheelchair users when in fact they need them full-time.

An intermittent user refers to someone who does not have a wheelchair in housing and only uses a wheelchair for transport out of the facility or long distances within the facility. If the person doesn't have the wheelchair in housing, the triple bunk issue has no application.

11. **Inadequate Accessible Housing.** If the average daily housing population is 720 at Central, do Defendants intend to continue using triple bunks, contrary to the BSCC's recommendation? Do Defendants intend to house all incarcerated people who need wheelchairs at Central Jail and Rock Mountain? If so, the planned 48 wheelchair accessible beds at Central and 42 at Rock Mountain (p. 13) may not be sufficient, including for those in MOB, PSU, OP Stepdown and JBCT (pp. 14-15). Under the ADA, people who qualify for dorm housing (i.e., low-security classifications) cannot be placed at Rock Mountain which is only celled housing. And when will the 12 somewhat modified but not ADA accessible cells planned for Central be available? (p. 13).

The law requires 3% of housing be accessible. What the County is proposing is more than 3% even though it's not legally required. The number of beds was determined based upon historical and current statistics. If you have some legal authority that more than 3% (plus the additional beds we have included based upon the statistics) is required, please provide it.

Thirty-five accessible beds now and 48 over the longer term may not be sufficient even for Central. The Mobility-Related Population Statistics attached to the Plan suggest that there have been days with 50 wheelchair users at Central. The data do not disclose how many times that has happened in the first half of 2023. More information is needed.

See the above comment.

The Plan fails to identify "the maximum number of incarcerated people with disabilities that can be safely housed in each unit." See Dkt. 355 at ECF 6. This should be added.

The Plan identifies the number of wheelchair users that each modified cell can accommodate. Disability accommodations are individualized and the maximum number of incarcerated people with disabilities that can be safely housed in each unit will depend on the person, their disability, and their accommodation. The Plan must be flexible with shifting populations. If someone is not safely housed, you have recourse.

**Ex. C-17**

12.    **Incomplete Rosters.** Defendants' Plan indicates that it will not provide rosters of "intake, release or temporary holding." (p. 2). Plaintiffs request information about individuals who come into the jail needing mobility assistive devices be included on the rosters, as it will help guide the construction remediation in those areas (pp. 9-10), as well as planning for meeting ADA-related needs.

The ADA Order does not contain a requirement to provide rosters for individuals in intake, release, or temporary holding.  The ADA Order specifically states that Defendants will "provide daily housing rosters" and that "Housing does not include intake and holding."

13.    **Inappropriate Scope.** The Plan fails to address accessible routes, slopes and signage. Since you are altering the facility, barriers such as these—described in detail in SZS's report on Central—must be addressed.

Although you characterize the scope as  "inappropriate," these items were not called out in the settlement in any manner and were never raised as a separate issue.  Please identify which items in the SZS report by page and line number that you believe need to be addressed and we will consider them.

14.    **Inadequate Plan for Interim Accommodations.** The Interim Accommodation Plan is inadequate. The Plan admits there are only five wheelchair accessible beds at Rock Mountain (p. 11), and they are in cells, which may be a higher security level. The Plan is vague as to what will happen to people who are displaced during construction. The five beds at Rock Mountain will not be enough for the potentially 50 wheelchair users who are admitted to Central. Nor is it enough to say these individuals "will be provided with a compliant bed and a portable shower chair." Where will the compliant beds be? How will these individuals use the toilet? Do the portable shower chairs fit in the current showers at Central?

Please tell us specifically what additions you believe need to be made to the interim accommodation Plan.  We look forward to receiving your suggestions; however, we anticipate renovating one module of SDCJ at a time and not entire floors.  As for any other items, they may be reviewed during your first benchmark inspection.

<u>Other:</u>

Defendants identified an error in the ADA Plan that was provided to Plaintiffs. Page 8 around lines 18-20 erroneously says "of a double bunk".  The line should read as follows: "Anyone assigned by medical to a lower bunk/lower tier will be assigned to a single bunk or a bottom bunk."

**Ex. C-18**

# EXHIBIT D



ROSEN BIEN
GALVAN & GRUNFELD LLP

101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Gay Crosthwait Grunfeld
Email:  ggrunfeld@rbgg.com

September 20, 2023

<u>VIA ELECTRONIC MAIL ONLY</u>

Susan E. Coleman                    Elizabeth M. Pappy
Burke Williams & Sorensen, LLP      Burke, Williams & Sorensen, LLP
501 West Broadway, Suite 1600       60 South Market Street, Suite 1000
San Diego, California 92101-8474    San Jose, California 95113-2336
scoleman@bwslaw.com                 epappy@bwslaw.com

  Re: *Dunsmore et al. v. San Diego County Sheriff's Department et al.*,
    S.D. Cal. No. 3:20-cv-00406-AJB-DDL
    Meet and Confer on Proposed ADA Action Plan
    <u>Our File No. 1730-01</u>

Dear Ms. Coleman and Ms. Pappy:

  On September 19, 2023, pursuant to the ADA Order (Dkt. 355), Plaintiffs' counsel met via Zoom with Ms. Coleman for approximately one hour, regarding Defendants' August 21, 2023 "ADA Action Plan" ("Plan"), as supplemented with additional exhibits on August 22, 2023.  This letter follows from that meet and confer call.

  We were disappointed that Defendants declined our proposal for them to meet with our ADA expert.  The Order contemplates robust coordination between the experts as the policies and procedures are drafted and the remediation occurs.  As Mr. Fischer said yesterday, measure twice, cut once.  An early exchange of views will avoid costly mistakes and time-consuming disputes later on.

  On the call, we discussed Plaintiffs' written response to the Plan served September 5, 2023 and Defendants' reply served September 19, 2023.  Both parties committed to following up and looking into gathering certain information.  Below, we provide additional information responsive to Defendants' questions in their reply and set forth our understanding of the items Ms. Coleman will be addressing with your clients.

  Please let us know by September 27, 2023, whether Defendants will be revising the ADA Action Plan to provide more detail and address the concerns identified in our response and on the call yesterday.  Plaintiffs' deadline to object to the Plan is 15 days

**Ex. D-20**

Susan Coleman
Elizabeth Pappy
September 20, 2023
Page 2

from the date that Defendants file the Plan.

We understand that Ms. Coleman committed to looking into the following questions and issues:

- Any checklist or list of ADA policies and procedures that the Sheriff's Department plans to change to comply with the ADA Order, and the timeline for finalizing these policies and procedure, which we request occur as soon as possible and long before July 1, 2024. Plaintiffs' position is that November 1, 2023 is an appropriate deadline.

- Whether Defendants will provide interim and/or draft policies and procedures to Plaintiffs' counsel. As discussed on the call, the parties share an interest in ensuring the policies and procedures are implemented correctly at the outset. Permitting Plaintiffs to review and provide feedback on draft policies and procedures at an earlier juncture will help the parties avoid costly disputes and adjustments down the road.

- Whether Defendants will provide draft training materials for Plaintiffs to review and comment on and allow Plaintiffs' counsel to observe training.

- Whether custody staff and medical/mental health staff are jointly trained on the ADA, and what separate trainings are provided to them.

- The status of the Wi-Fi rollout at each facility and where remote sign language interpretation is currently functional (including at George Bailey).

- Additional detail to be included in the Plan about options for in-person sign language interpretation (SLI) and the SLI providers available (including current contracts, etc.).

- Whether Defendants are logging and tracking requests for and use of devices utilized for remote sign language interpretation.

- The standard used to differentiate an intermittent wheelchair user from a permanent wheelchair user (such as, for example, based on the person being able to walk a certain number of steps) and the plan for intermittent wheelchair users' housing in triple bunks. (Plaintiffs' counsel respectfully requests that the ADA Action Plan and jail policy reflect that this group will *not* be placed in a triple bunk.)

[4362905.3]

**Ex. D-21**

Susan Coleman
Elizabeth Pappy
September 20, 2023
Page 3

- How JIMS and TechCare have been (or will be) modified to facilitate implementation of the ADA Order.

- The Jail's intended policy requirements with respect to the maximum number of wheelchair users and/or people with mobility disabilities requiring accessible housing who may be housed in particular units.

- Whether and in what form the Sheriff's Department keeps data on admissions of people who use wheelchairs and their stays in intake and holding areas, so as to inform the discussions around remediation to intake and holding areas.

- Whether the Sheriff's Department will agree to provide construction documents and plans in advance of alterations, rather than waiting until the time for inspections. Allowing for Plaintiffs' input in advance of alterations will be more efficient and cost-effective than potentially having to later *redo* physical plant remediation to comply with the ADA and the Court's order.

- The number of full-time wheelchair users in each housing unit who will move to Rock Mountain during the renovations of their respective housing units at Central Jail. We request notification when people in a given housing unit are moved to Rock Mountain. We also request information on whether Rock Mountain has been renovated beyond the alterations on the exterior pathways between housing units that Ms. Coleman discussed.

We also agreed to provide more information on certain issues related to the Plan:

Our expert's positions on gaps and issues in the Sheriff's Department's ADA policies and procedures, as they existed at the time, are set forth in her declarations filed at Dkts. 119-9, ¶¶ 15-29; 281-3, ¶¶ 16-18, 26-28, 33-34, 36; and 320-2, ¶¶ 27-33. We again request that Defendants consider and integrate Ms. Sanossian's feedback as they amend policies and procedures in compliance with the ADA Order. As noted, allowing us to review and provide feedback on draft revisions to policy will help to ensure an efficient and successful implementation process.

Potential providers of in-person sign language interpretation for people at the Jail are Deaf Community Services of San Diego, https://deafcommunityservices.org/, and Network Interpreting Service, https://networkinterpretingservice.com/.

Our expert's Central Jail report identifies numerous issues with slope, signage, and accessible routes. *See* Dkt. 281-3, Ex. C. Please bear in mind that our expert was not permitted to inspect and assess every area in Central Jail, so the report and barriers identified are not comprehensive. Other slope, signage, and accessible route issues

[4362905.3]

**Ex. D-22**

Susan Coleman
Elizabeth Pappy
September 20, 2023
Page 4

likely also exist.

When the Sheriff's Department fixes an element (such as a toilet), it should ensure that all elements of the accessible route to that toilet are also compliant. Plaintiffs' position is that the ADA and California law require the Sheriff's Department to remedy all barriers at Central Jail, including those identified in our expert's report. Defendants should ensure that people with mobility disabilities can access all programs, services, and activities at the Jail. Without waiving that position, at your request, we list certain barriers (as identified in the expert report) that are especially harmful to our clients and that merit priority: 13O, 38H, 41A, 44B, 49A, 55K, 58A, 58G, 64A, 66M, 67A, 67F, 68E, 71F.

On the September 19 call, we pointed out that the ADA Order requires Defendants to produce rosters beginning within 90 days of the ADA Order and ending 12 months from the date the Court issues an order adopting the Plan. *See id.* at ¶ 13. The current version of the Plan states that Defendants will stop producing rosters to Plaintiffs on September 2, 2024. *See* Plan at 2:11-15. That does not comply with the ADA Order. No order adopting the Plan has issued, so the end date of Defendants' obligation to produce rosters is not yet determined. Defendants must revise the Plan to state that Defendants will produce rosters to Plaintiffs continuously through 12 months from the date the Court issues an order approving the Plan.

Finally, the ADA Order requires Defendants to provide "at least 25 accessible beds and toileting . . . as soon as possible and no later than 90 days from the date" of the Order. *See id.* at ¶ 7.b.ii. The Plan indicates that Defendants intended to have 30 such beds ready by September 19, 2023, in two dormitory housing units. Plan at 6:14-15. Please confirm that Defendants have completed this requirement of the ADA Order and provide us with as-built plans so our expert can review.

As always, thank you for your courtesy and cooperation in this matter.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Gay Crosthwait Grunfeld*

By:   Gay Crosthwait Grunfeld

GCC:kc
cc:   Fernando Kish
       Steven Inman
       Co-counsel

[4362905.3]

**Ex. D-23**

# EXHIBIT E

| | |
|---|---|
| **From:** | Coleman, Susan E. |
| **To:** | Gay C. Grunfeld; Eric Monek Anderson; Mehra, Terri; Aaron Fischer; Priyah Kaul; Van Swearingen; Isabella.Neal@us.dlapiper.com; Oliver.Kiefer@us.dlapiper.com; Christopher.Young@us.dlapiper.com; Hannah Chartoff |
| **Cc:** | Pappy, Elizabeth M.; Favela, Diana; Gonzalez, Lucy |
| **Subject:** | RE: Dunsmore v. San Diego County Sheriff's Department [IMAN-DMS.FID55015] |
| **Date:** | Tuesday, October 3, 2023 2:22:42 PM |
| **Attachments:** | image001.jpg |
| | image002.jpg |

---

**[EXTERNAL MESSAGE NOTICE]**

Gay – so despite asking specific questions in your email, you now want me to go through your letter and provide additional comments?

We will not be providing interim or draft policies.  We will provide policies, green sheets, and written training materials <u>once completed</u>.

We will be logging requests/use of SLI devices, however it has not yet been decided if this will be logs or in JIMS or both.

Intermittent wheelchair users – these are people who do not use the wheelchair at all within the housing unit.  (only for longer travel outside the HU)

We will provide you a status on the specific items (wifi, tablets, beds/toilets) after filing the plan on 10/5.  Additional details have been added to the Plan and are pending SDSD approval. We have completed the 30 accessible beds and toileting at SDCJ.

No, we aren't going to provide interim construction documents and plans.  You can inspect on the benchmark dates agreed upon.

We agree the rosters will continue until 12 months after the Plan is court ordered.

Susan

---

**From:** Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Sent:** Tuesday, October 3, 2023 2:14 PM
**To:** Coleman, Susan E. <SColeman@bwslaw.com>; Eric Monek Anderson <EMonekAnderson@rbgg.com>; Mehra, Terri <TMehra@bwslaw.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Priyah Kaul <pkaul@rbgg.com>; Van Swearingen <VSwearingen@rbgg.com>; Isabella.Neal@us.dlapiper.com; Oliver.Kiefer@us.dlapiper.com; Christopher.Young@us.dlapiper.com; Hannah Chartoff <HChartoff@rbgg.com>
**Cc:** Pappy, Elizabeth M. <EPappy@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>; Gonzalez, Lucy <LGonzalez@bwslaw.com>
**Subject:** RE: Dunsmore v. San Diego County Sheriff's Department [IMAN-DMS.FID55015]

---

**[EXTERNAL]**

---

**Ex. E-25**

Dear Susan,

Your comments below are noted. There are a number of additional information requests in the attached letter that we discussed at the meet and confer.

We look forward to your response.

Best, Gay

Gay Crosthwait Grunfeld
Managing Partner
She/her
**ROSEN BIEN GALVAN & GRUNFELD LLP**
**101 Mission Street, Sixth Floor**
**San Francisco, CA 94105**
(415) 433-6830 telephone
(415) 433-7104 facsimile

---

**From:** Coleman, Susan E. <SColeman@bwslaw.com>
**Sent:** Tuesday, October 3, 2023 11:25 AM
**To:** Gay C. Grunfeld <GGrunfeld@rbgg.com>; Eric Monek Anderson <EMonekAnderson@rbgg.com>; Mehra, Terri <TMehra@bwslaw.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Priyah Kaul <pkaul@rbgg.com>; Van Swearingen <VSwearingen@rbgg.com>; Isabella.Neal@us.dlapiper.com; Oliver.Kiefer@us.dlapiper.com; Christopher.Young@us.dlapiper.com; Hannah Chartoff <HChartoff@rbgg.com>
**Cc:** Pappy, Elizabeth M. <EPappy@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>; Gonzalez, Lucy <LGonzalez@bwslaw.com>
**Subject:** RE: Dunsmore v. San Diego County Sheriff's Department [IMAN-DMS.FID55015]

[EXTERNAL MESSAGE NOTICE]

Counsel – we have met and conferred on these issues already. We anticipate making some changes to the ADA Plan before it is filed. It is currently being reviewed by decision makers in order to finalize it for filing on 10/05.

I will inquire about the posters.

Confirmed, we have completed 25+ accessible beds and toileting at SDCJ. We do not plan to provide as-built plans, but you and your expert may inspect these beds in person at the scheduled benchmark inspection date.

Best,

Susan

**From:** Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Sent:** Tuesday, October 3, 2023 11:15 AM
**To:** Eric Monek Anderson <EMonekAnderson@rbgg.com>; Coleman, Susan E.
<SColeman@bwslaw.com>; Mehra, Terri <TMehra@bwslaw.com>; Aaron Fischer
<ajf@aaronfischerlaw.com>; Priyah Kaul <pkaul@rbgg.com>; Van Swearingen
<VSwearingen@rbgg.com>; Isabella.Neal@us.dlapiper.com; Oliver.Kiefer@us.dlapiper.com;
Christopher.Young@us.dlapiper.com; Hannah Chartoff <HChartoff@rbgg.com>
**Cc:** Pappy, Elizabeth M. <EPappy@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>; Gonzalez,
Lucy <LGonzalez@bwslaw.com>
**Subject:** RE: Dunsmore v. San Diego County Sheriff's Department [IMAN-DMS.FID55015]

[EXTERNAL]

Dear Susan,

We are following up on the attached letter dated September 20, 2023.  First,
do you anticipate making any changes to Defendants' ADA Plan before filing it
with the Court?  Second, we are getting reports that there are ADA posters at
Central Jail.  May we have a copy of the poster and information about whether
it is posted at other facilities? Third, as requested in our letter, please confirm
that Defendants have completed 25 accessible beds and toileting at Central as
required by the ADA Order and provide us with as-built plans so our expert can
review.

Thank you, Gay

Gay Crosthwait Grunfeld
Managing Partner
She/her
**ROSEN BIEN GALVAN & GRUNFELD LLP**
**101 Mission Street, Sixth Floor**
**San Francisco, CA 94105**
(415) 433-6830 telephone
(415) 433-7104 facsimile

**From:** Eric Monek Anderson <EMonekAnderson@rbgg.com>
**Sent:** Wednesday, September 20, 2023 5:46 PM
**To:** Coleman, Susan E. <SColeman@bwslaw.com>; Mehra, Terri <TMehra@bwslaw.com>; Aaron

Fischer <ajf@aaronfischerlaw.com>; Priyah Kaul <pkaul@rbgg.com>; Gay C. Grunfeld
<GGrunfeld@rbgg.com>; Van Swearingen <VSwearingen@rbgg.com>;
Isabella.Neal@us.dlapiper.com; Oliver.Kiefer@us.dlapiper.com;
Christopher.Young@us.dlapiper.com; Hannah Chartoff <HChartoff@rbgg.com>
**Cc:** Pappy, Elizabeth M. <EPappy@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>; Gonzalez,
Lucy <LGonzalez@bwslaw.com>
**Subject:** RE: Dunsmore v. San Diego County Sheriff's Department [IMAN-DMS.FID55015]

Dear Susan,

Please see the attached letter following up on our meet and confer call yesterday regarding the ADA
Action Plan.

Eric

**Eric Monek Anderson** (he/him)
Associate Attorney



**Rosen Bien Galvan & Grunfeld LLP**
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
T: (415) 433-6830  •  F: (415) 433-7104
eanderson@rbgg.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If
you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that
you have received this e-mail message in error, please e-mail the sender at eanderson@rbgg.com.

**From:** Coleman, Susan E. <SColeman@bwslaw.com>
**Sent:** Monday, September 18, 2023 3:18 PM
**To:** Mehra, Terri <TMehra@bwslaw.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Priyah Kaul
<pkaul@rbgg.com>; Gay C. Grunfeld <GGrunfeld@rbgg.com>; Van Swearingen
<VSwearingen@rbgg.com>; Isabella.Neal@us.dlapiper.com; Oliver.Kiefer@us.dlapiper.com;
Christopher.Young@us.dlapiper.com; Hannah Chartoff <HChartoff@rbgg.com>; Eric Monek
Anderson <EMonekAnderson@rbgg.com>
**Cc:** Pappy, Elizabeth M. <EPappy@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>; Gonzalez,
Lucy <LGonzalez@bwslaw.com>
**Subject:** RE: Dunsmore v. San Diego County Sheriff's Department

<span style="background-color:#F5D97A">[EXTERNAL MESSAGE NOTICE]</span>

Counsel – attached are our responses to your objections/comments about the ADA Plan.

Best,

Susan

**Susan E. Coleman** | Partner
501 West Broadway, Suite 1600 | San Diego, CA  92101
d - 619.814.5803 | t - 619.814.5800 | f - 619.814.6799
scoleman@bwslaw.com | vCard | bwslaw.com



The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

**Ex. E-29**