GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California  94709
Telephone:  (510) 806-7366
Facsimile:    (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Subclass

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,

Defendants.

Case No. 3:20-cv-00406-AJB-DDL

**DECLARATION OF VAN SWEARINGEN IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING SB 519 AND PRODUCTION OF CIRB DOCUMENTS**

Judge:      Hon. Anthony J. Battaglia
Magistrate: Hon. David D. Leshner

Trial Date: None Set

[4382272.1]

1

2      I, Van Swearingen, declare:

3      1.      I am an attorney duly admitted to practice before this Court.  I am a

4  partner in the law firm of Rosen Bien Galvan & Grunfeld LLP, counsel of record for

5  Plaintiffs.  I have personal knowledge of the facts set forth herein, and if called as a

6  witness, I could competently so testify.  I make this declaration in support of

7  Plaintiffs' Supplemental Brief Regarding SB 519 and Production of CIRB

8  Documents.

9      2.      Attached hereto as **Exhibit A** is a true and correct copy of Senate Bill

10  No. 519, "An act to amend Section 6024 of, and to add Sections 832.10 and 6034 to,

11  the Penal Code, relating to corrections," as approved by the Governor and filed with

12  the Secretary of State on October 4, 2023.

13      3.      Attached hereto as **Exhibit B** is a true and correct copy of a September

14  13, 2023 news release issued by California Senate President Pro Tempore Toni G.

15  Atkins, titled "Senate Leader Atkins' Bill to Increase Transparency, Accountability

16  for In-Custody Deaths Passes Legislature."

17      4.      Attached hereto as **Exhibit C** is a true and correct copy of an October

18  5, 2023 article in the *San Diego Union-Tribune*, titled "As People Keep Dying in

19  San Diego Jails, Newsom Signs Local Lawmakers' Oversight Bills into Law."

20      I declare under penalty of perjury under the laws of the United States of

21  America that the foregoing is true and correct, and that this declaration is executed

22  at San Francisco, California this 30th day of October, 2023.

23

24                                              */s/ Van Swearingen*
                                                Van Swearingen

25

26

27

28

# TABLE OF CONTENTS

DECLARATION OF VAN SWEARINGEN IN SUPPORT OF PLAINTIFFS'
SUPPLEMENTAL BRIEF REGARDING SB 519 AND PRODUCTION OF
CIRB DOCUMENTS

| EXHIBIT | DESCRIPTION | PAGE NO. |
|---------|-------------|----------|
| A | Senate Bill No. 519, "An act to amend Section 6024 of, and to add Sections 832.10 and 6034 to, the Penal Code, relating to corrections" as approved by the Governor and filed with the Secretary of State on October 4, 2023 | A-1 |
| B | Senator Tori Atkins, September 13, 2023, *Senate Leader Atkins' Bill to Increase Transparency, Accountability for In-Custody Deaths Passes Legislature*, [Press Release] https://sd39.senate.ca.gov/news/20230913-senate-leader-atkins%E2%80%99-bill-increase-transparency-accountability-custody-deaths-passes | B-10 |
| C | McDonald, Jeff, *As people keep dying in San Diego jails, Newsom signs local lawmakers' oversight bills into law*, San Diego Union-Tribune, Oct. 5, 2023 | C-13 |

# EXHIBIT A

## Senate Bill No. 519

### CHAPTER 306

An act to amend Section 6024 of, and to add Sections 832.10 and 6034 to, the Penal Code, relating to corrections.

[Approved by Governor October 4, 2023. Filed with Secretary of State October 4, 2023.]

LEGISLATIVE COUNSEL'S DIGEST

SB 519, Atkins. Corrections.

Existing law, the California Public Records Act, generally requires public records to be open for inspection by the public. Existing law provides numerous exceptions to this requirement. Under existing law, the personnel records of peace officers and custodial officers are confidential and not subject to public inspection. Existing law provides certain exemptions to this confidentiality, including the reports, investigations, and findings of certain incidents involving the use of force by a peace officer.

This bill would, beginning on July 1, 2024, make records relating to an investigation conducted by a local detention facility into a death incident, as defined, available to public inspection, as specified. By increasing duties on local governments, this bill would create a state-mandated local program.

Existing law establishes the Board of State and Community Corrections, with the mission of providing statewide leadership, coordination, and technical assistance to promote effective state and local efforts and partnerships in California's adult and juvenile criminal justice system.

This bill would expand the board's mission to include the promotion of legal and safe conditions for youth, inmates, and staff in local detention facilities. The bill would create the position of Director of In-Custody Death Review (director) within the Board of State and Community Corrections. The bill would require the Governor to appoint, subject to confirmation by the Senate, the director to a 6-year term. The bill, beginning on July 1, 2024, would require the director to review investigations of any death incident occurring within a local detention facility, as specified. The bill would require, upon that review, the director to make specific recommendations to the sheriff or administrator of the local detention facility who operates the local detention facility regarding those incidents, including, among other things, changes to policies, procedures, and practices, as specified. The bill, within 90 days of receipt of the recommendations of the director, would require the sheriff or administrator of the local detention facility to identify the recommendations that will be implemented and provide a timeline for implementation and the anticipated cost of implementing those recommendations. The bill would require these recommendations and responses to be made available to the public, and would give the director

93

and the sheriff or administrator of the local detention facility the discretion to redact these disclosures, as specified. The bill, beginning on July 1, 2024, would require the Board of State and Community Corrections to employ a sufficient number of licensed medical professionals and licensed behavioral health professionals to participate in the reviews, assist with establishing and implementing health and behavioral health standards for local detention facilities, and review the delivery of medical and behavioral health services within local detention facilities.

Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public officials and agencies be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

This bill would make legislative findings to that effect.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that, if the Commission on State Mandates determines that the bill contains costs mandated by the state, reimbursement for those costs shall be made pursuant to the statutory provisions noted above.

*The people of the State of California do enact as follows:*

SECTION 1.   Section 832.10 is added to the Penal Code, to read:

832.10.   (a)  For purposes of this section, the following definitions shall apply:

(1)  "Death incident" means an event where a person has died in the custody or supervision of the local detention facility.

(2)  "Local detention facility" means any city, county, city and county, or regional jail, camp, court holding facility, private detention facility, or other facility in which persons are incarcerated.

(3)  "Private detention facility" has the same meaning as in Section 7320 of the Government Code.

(4)  "Person" includes, but is not limited to, a custodial officer or health care staff.

(5)  "Custodial officer" means those officers with the rank of deputy, correctional officer, patrol person, or another equivalent sworn or civilian rank whose duties include the supervision of incarcerated or detained persons at a local detention facility.

(6)  "Health care staff" means the health authority, individual, or agency that is designated with responsibility for providing health care in the local detention facility.

(b)  Notwithstanding subdivision (a) of Section 832.7, or any other law, any record relating to an investigation conducted by the local detention facility involving a death incident maintained by a local detention facility shall not be confidential and shall be made available for public inspection

Ex. A-3

pursuant to the California Public Records Act (Division 10 (commencing with Section 7920.000) of Title 1 of the Government Code).

(c)  Records disclosed under subdivision (b) shall be subject to all of the following:

(1)  The record shall include all investigative reports; photographic, audio, and video evidence; transcripts or recordings of interviews; autopsy reports; all materials compiled and presented for review to the district attorney or to any person or body charged with determining whether to file criminal charges against a person, whether the person's action was consistent with law and agency policy for purposes of discipline or administrative action, or what discipline to impose or corrective action to take; documents setting forth findings or recommended findings; and copies of disciplinary records relating to the death incident, including any letters of intent to impose discipline, any documents reflecting modifications of discipline due to the Skelly or grievance process, and letters indicating final imposition of discipline or other documentation reflecting implementation of corrective action.

(2)  An agency shall redact a record disclosed pursuant to this section only for any of the following purposes:

(A)  To remove personal data or information, such as a home address, telephone number, or identities of family members, other than the people's names and work-related information.

(B)  To preserve the anonymity of whistleblowers, complainants, victims, and witnesses.

(C)  To protect confidential medical, financial, or other information of which disclosure is specifically prohibited by federal law or would cause an unwarranted invasion of personal privacy that clearly outweighs the strong public interest in records about possible misconduct.

(D)  Where there is a specific, articulable, and particularized reason to believe that disclosure of the record would pose a significant danger to the physical safety of any person.

(3)  Notwithstanding paragraph (2), an agency may redact a record disclosed pursuant to this section, including personal identifying information, where, on the facts of the particular case, the public interest served by not disclosing the information clearly outweighs the public interest served by disclosure of the information.

(4)  A local detention facility may withhold a record of a death incident described in subdivision (b) that is the subject of an active criminal or administrative investigation, in accordance with any of the following:

(A)  (i)  During an active criminal investigation, disclosure may be delayed for up to 60 days from the date the death incident occurred or until the district attorney determines whether to file criminal charges related to the death incident, whichever occurs sooner. If a local detention facility delays disclosure pursuant to this clause, the local detention facility shall provide, in writing, the specific basis for the facility's determination that the interest in delaying disclosure clearly outweighs the public interest in disclosure.

This writing shall include the estimated date for disclosure of the withheld information.

(ii) After 60 days from the death incident, the local detention facility may continue to delay the disclosure of records or information if the disclosure could reasonably be expected to interfere with a criminal enforcement proceeding against any person. If an agency delays disclosure pursuant to this clause, the agency shall, at 180-day intervals as necessary, provide, in writing, the specific basis for the agency's determination that disclosure could reasonably be expected to interfere with a criminal enforcement proceeding. The writing shall include the estimated date for the disclosure of the withheld information. Information withheld by the agency shall be disclosed when the specific basis for withholding is resolved, when the investigation or proceeding is no longer active, or by no later than 18 months after the date of the death incident, whichever occurs sooner.

(iii) In an action to compel disclosure brought pursuant to Section 7923.000 of the Government Code, a local detention facility may justify delay by filing an application to seal the basis for withholding, in accordance with Rule 2.550 of the California Rules of Court, or any successor rule, if disclosure of the written basis itself would impact a privilege or compromise a pending investigation. This clause does not prohibit a court from conducting in camera review to determine whether privilege exists.

(B) If criminal charges are filed related to the death incident, the local detention facility may delay the disclosure of records or information until a verdict on those charges is returned at trial or, if a plea of guilty or no contest is entered, the time to withdraw the plea pursuant to Section 1018.

(C) During an administrative investigation into an incident described in subdivision (b), the local detention facility may delay the disclosure of records or information until the facility determines whether the death incident violated a law or agency policy.

(5) The cost of copies of records subject to disclosure pursuant to this subdivision that are made available upon the payment of fees covering direct costs of duplication pursuant to subdivision (a) of Section 7922.530 of the Government Code shall not include the costs of searching for, editing, or redacting the records.

(6) Except to the extent temporary withholding for a longer period is permitted pursuant to paragraph (4), records subject to disclosure under this section shall be provided at the earliest possible time and no later than 45 days from the date of a request for their disclosure.

(7) (A) For purposes of releasing records pursuant to this subdivision, the attorney-client privilege does not prohibit the disclosure of either of the following:

(i) Factual information provided by the local detention facility to its attorney or factual information discovered in any investigation conducted by, or on behalf of, the local detention facility's attorney.

(ii) Billing records related to the work done by the attorney so long as the records do not relate to active and ongoing litigation and do not disclose

93

information for the purpose of legal consultation between the local detention facility and its attorney.

(B) This paragraph does not prohibit the local detention facility from asserting that a record or information within the record is exempted or prohibited from disclosure pursuant to any other federal or state law. However, to the extent that the local detention facility asserts attorney-client privilege or any other prohibitive disclosure provided by federal or state law, the court may conduct in camera review unless prohibited by law.

(d) This section does not affect the discovery or disclosure of information contained in a subject officer's personnel file pursuant to Section 1043 of the Evidence Code.

(e) This section does not affect the disclosure of other records provided under this chapter or any other law.

(f) This section does not supersede or affect the criminal discovery process outlined in Chapter 10 (commencing with Section 1054) of Title 6 of Part 2, or the admissibility of personnel records pursuant to Section 832.7, which codifies the court decision in Pitchess v. Superior Court (1974) 11 Cal.3d 531.

(g) Nothing in this chapter is intended to limit the public's right of access as provided for in Long Beach Police Officers Association v. City of Long Beach (2014) 59 Cal.4th 59.

(h) This section shall become operative on July 1, 2024.

SEC. 2.   Section 6024 of the Penal Code is amended to read:

6024.   (a) Commencing July 1, 2012, there is hereby established the Board of State and Community Corrections. The Board of State and Community Corrections shall be an entity independent of the Department of Corrections and Rehabilitation. The Governor may appoint an executive officer of the board, subject to Senate confirmation, who shall hold the office at the pleasure of the Governor. The executive officer shall be the administrative head of the board and shall exercise all duties and functions necessary to ensure that the responsibilities of the board are successfully discharged. As of July 1, 2012, any references to the Board of Corrections or the Corrections Standards Authority shall refer to the Board of State and Community Corrections. As of that date, the Corrections Standards Authority is abolished.

(b) The mission of the board shall include providing statewide leadership, coordination, and technical assistance to promote effective state and local efforts and partnerships in California's adult and juvenile criminal justice system, including addressing gang problems, and to promote legal and safe conditions for youth, inmates, and staff in local detention facilities. This mission shall reflect the principle of aligning fiscal policy and correctional practices, including, but not limited to prevention, intervention, suppression, supervision, and incapacitation, to promote a justice investment strategy that fits each county and is consistent with the integrated statewide goal of improved public safety through cost-effective, promising, and evidence-based strategies for managing criminal justice populations.

(c) The board shall regularly seek advice from a balanced range of stakeholders and subject matter experts on issues pertaining to adult corrections, juvenile justice, and gang problems relevant to its mission. Toward this end, the board shall seek to ensure that its efforts (1) are systematically informed by experts and stakeholders with the most specific knowledge concerning the subject matter, (2) include the participation of those who must implement a board decision and are impacted by a board decision, and (3) promote collaboration and innovative problem solving consistent with the mission of the board. The board may create special committees, with the authority to establish working subgroups as necessary, in furtherance of this subdivision to carry out specified tasks and to submit its findings and recommendations from that effort to the board.

(d) The board shall act as the supervisory board of the state planning agency pursuant to federal acts. It shall annually review and approve, or review, revise, and approve, the comprehensive state plan for the improvement of criminal justice and delinquency and gang prevention activities throughout the state, shall establish priorities for the use of funds as are available pursuant to federal acts, and shall approve the expenditure of all funds pursuant to such plans or federal acts, provided that the approval of those expenditures may be granted to single projects or to groups of projects.

(e) It is the intent of the Legislature that any statutory authority conferred on the Corrections Standards Authority or the previously abolished Board of Corrections shall apply to the Board of State and Community Corrections on and after July 1, 2012, unless expressly repealed by the act that added this section. The Board of State and Community Corrections is the successor to the Corrections Standards Authority, and as of July 1, 2012, is vested with all of the authority's rights, powers, authority, and duties, unless specifically repealed by this act.

(f) For purposes of this chapter, "federal acts" means Subchapter V of Chapter 46 of the federal Omnibus Crime Control and Safe Streets Act of 1968 (Public Law 90-351, 82 Stat. 197; 42 U.S.C. Sec. 3750 et seq.), the federal Juvenile Justice and Delinquency Prevention Act of 1974 (42 U.S.C. Sec. 5601 et seq.), and any act or acts amendatory or supplemental thereto.

SEC. 3.  Section 6034 is added to the Penal Code, to read:

6034.  (a)  There is hereby created the position of Director of In-Custody Death Review within the Board of State and Community Corrections. Subject to Senate confirmation, the Governor shall appoint the director to a six-year term.

(b)  Commencing July 1, 2024, the director shall review investigations of any death incident, as defined in paragraph (1) of subdivision (a) of Section 832.10, occurring within a local detention facility, as defined in paragraph (2) of subdivision (a) of Section 832.10, and may, upon determination by the board that it is necessary and appropriate, conduct further review of a death incident. Upon that review, the director shall make specific and customized recommendations to the sheriff or administrator of the local detention facility who operates the local detention facility regarding

those incidents, including changes to policies, procedures, and practices, facility upgrades, staffing considerations, the delivery of medical and behavioral health services within local detention facilities, and operational and capital funding requirements to address the director's recommendations.

(c)  Within 90 days of receipt of the director's recommendations, the sheriff or administrator who operates the local detention facility shall identify the director's recommendations that will be implemented and shall provide a timeline for implementation and the anticipated cost of implementing those recommendations. The sheriff or administrator who operates the local detention facility shall also identify the director's recommendations that will not or cannot be implemented, accompanied by an explanation of why the recommendations will not or cannot be implemented. The Board of State and Community Corrections may call upon the sheriff or administrator who operates the local detention facility to respond to the Board of State and Community Corrections at a regularly scheduled meeting to discuss the recommendations and responses.

(d)  The recommendations and responses shall be available to the public. The director and the sheriff or administrator of the local detention facility may, in their discretion, redact these disclosures or otherwise protect the names of individuals, specific locations, or other facts that, if not redacted, might hinder litigation related to the review, compromise the safety and security of staff, inmates, or members of the public, or where disclosure of the information is otherwise prohibited by law. Copies of public reports shall be posted on the Board of State and Community Corrections's internet website.

(e)  Commencing July 1, 2024, and upon appropriation by the Legislature for this purpose, the Board of State and Community Corrections shall employ a sufficient number of licensed medical professionals and licensed behavioral health professionals to participate in the reviews described in this section, assist with establishing and implementing health and behavioral health standards for local detention facilities, and review the delivery of medical and behavioral health services within local detention facilities.

SEC. 4.  The Legislature finds and declares that Section 3 of this act, which adds Section 6034 to the Penal Code, imposes a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

This section balances the public's right to access information with the need to protect sensitive and confidential information, particularly during a potential ongoing investigation, and to maintain robust oversight over local detention facilities relating to in-custody deaths and the delivery of health care to individuals in custody.

SEC. 5.  If the Commission on State Mandates determines that this act contains costs mandated by the state, reimbursement to local agencies and

school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code.

O

# EXHIBIT B

**SENATE PRESIDENT PRO TEM**

# Senator Toni G. Atkins

**REPRESENTING SENATE DISTRICT 39**

Published on *Senator Toni Atkins* (https://sd39.senate.ca.gov (https://sd39.senate.ca.gov))

Home (/) > Senate Leader Atkins' Bill to Increase Transparency, Accountability for In-Custody Deaths Passes Legislature

(https://www.addthis.com/bookmark.php?v=300) [1] (https://www.addthis.com/bookmark.php?v=300) [1] (https://www.addthis.com/bookmark.php?v=300) [1]

September 13, 2023

**SACRAMENTO, CA** - Senate Bill 519 by Pro Tem Toni G. Atkins passed the Senate floor today on a 31-4 vote. The bill would increase transparency and accountability for local detention facilities as it relates to in-custody deaths. SB 519 will help improve conditions in county jails statewide and increase transparency for the families of victims.

"Local detention centers have unfortunately been slow to address internal issues and in many cases unresponsive, as it relates to the alarming increase in deaths of persons in-custody. This is a growing problem not only here in San Diego County, but at other detention facilities around the state," **Pro Tem Atkins** said. "It's critical for our communities and for families to have more transparency and accountability. SB 519 would give families the transparency they deserve and provide enough oversight so that the county can work to reduce further deaths."

An alarming increase in death incidents has occurred in San Diego County in the last three years, with 18 in custody deaths in 2021 and 20 deaths in 2022. This year already 11 inmates have died in-custody in San Diego County facilities. San Diego County is not alone in this alarming statistic. In 2022, 18 people died in-custody in Riverside County jails. As of August 2023, 23 people have died in Los Angeles County jails. In 2021 and 2022, there were 19 in-custody deaths in Sacramento County jails.

SB 519 includes multiple actions intended to help increase oversight, transparency, and accountability regarding in-custody deaths:

- The bill would make investigatory reports of an in-custody death conducted by a sheriff's department public in an effort to reduce future deaths.
- It would also increase oversight by creating the position of Director of In-Custody Death Review within the Board of State and Community Corrections (BSCC). The Director, appointed by the Governor and confirmed by the Senate to a six-year term, would review investigations of deaths, and make recommendations as it relates to policies, procedures, staffing, and other factors, to the Sheriff or detention facility administrator. Sheriffs or administrators would have 90 days to respond. Recommendations and responses will be made public.
- The bill also directs the BSCC to employ a sufficient number of licensed medical professionals and behavioral health professionals to participate in the reviews described in the oversight requirements, help establish and implement health and behavioral health standards for local detention facilities, and review delivery of medical and behavioral health services within local detention facilities.

Pro Tem Atkins is also a principal co-author on AB 268 by Assemblymember Akilah Weber (D-San Diego). Responding to State Auditors recommendations, AB 268 would change the composition of the Board of State and Community Corrections (BSCC) to include both a medical professional and mental health professional. The bill would also require the Board to adopt standards of care pertaining to incarcerated persons with mental health issues.

Senate Bill 519 now heads to Governor Newsom's desk for his signature.

### 

Ex. B-11

10/27/23, 3:19 PM    Senate Leader Atkins' Bill to Increase Transparency, Accountability in Custody Deaths Passes Legislature

Page 15 of 23

Case 3:20-cv-06406-LB-DDL   Document 431-1   Filed 10/30/23   PageID.16733

*Toni G. Atkins is President pro Tempore of the California Senate. Having previously served as Speaker of the California Assembly, she began her tenure in the Senate in 2016. As Senator for District 39, she represents the cities of San Diego, Coronado, Del Mar and Solana Beach. Website of President pro Tempore Toni G. Atkins: www.senate.ca.gov/Atkins* (http://www.senate.ca.gov/Atkins) [2]

**Source URL:** https://sd39.senate.ca.gov/news/20230913-senate-leader-atkins%E2%80%99-bill-increase-transparency-accountability-custody-deaths-passes

**Links**

[1] https://www.addthis.com/bookmark.php?v=300

[2] http://www.senate.ca.gov/Atkins

# EXHIBIT C



The San Diego Union-Tribune

WATCHDOG

# As people keep dying in San Diego jails, Newsom signs local lawmakers' oversight bills into law



San Diego Central Jail in downtown San Diego.   (Nelvin C. Cepeda / San Diego Union-Tribune)

The legislation from Sen. Toni Atkins and Assemblymember Akilah Weber expands state oversight of county jails

BY JEFF MCDONALD

OCT. 5, 2023 5 AM PT

Ex. C-14

Two bills introduced by a pair of San Diego-area lawmakers that seek to better protect men and women in California jails have been signed into law by Gov. Gavin Newsom.

Newsom announced without comment Wednesday that he had approved Senate Bill 519 and Assembly Bill 268, legislation put forward by Sen. Toni Atkins and Assemblymember Akilah Weber, respectively, in the wake of repeated and continuing deaths in San Diego County jails.

"I appreciate all of the work by stakeholders and the partnership of Gov. Newsom's administration on this legislation," Atkins said.

"It is also encouraging to see that the Governor signed Assemblymember Dr. Akilah Weber's AB 268 — a bill she worked incredibly hard on and that complements the goals of SB 519 and our efforts to improve standards of care in our local detention facilities," she added.

SB 519 calls for creating the position of state director of in-custody death review, a job with a six-year term appointed by the governor and subject to Senate confirmation.

The director would be in charge of reviewing sheriff's department investigations into jail deaths and making recommendations to improve conditions inside county jails. Those reports would be available for public inspection, although sheriffs could redact some or all of those findings.

The new law also calls for sheriffs to respond to the director's findings within 90 days of any jail death.

Perhaps most important, SB 519 provides that sheriff's records related to internal jail-death investigations will be subject to public disclosure.

Ex. C-15

In San Diego County, those reports are written by the sheriff's critical incident review board.

Sheriff Kelly Martinez promised to release the so-called CIRB reports during the 2022 campaign but changed her mind after winning the election. Instead, she releases brief summaries of the review board findings.

"The bottom line behind SB 519 is simple — we have to do everything we can to ensure that people do not continue to die in our local jails and detention facilities," Atkins said. "That was the intent behind this bill, and the actions it will take to improve transparency, oversight and accountability will help ensure that intent becomes reality."

Initially, the Atkins legislation provided that county supervisors could assume control of local jails if they determined that an elected sheriff was not doing enough to protect people in custody.

That proposal was stricken from the bill over the summer amid opposition from sheriffs and other law enforcement.

AB 268, introduced by La Mesa Democrat Weber, adds two seats to the Board of State and Community Corrections, the body that oversees California jails.

The Weber law, a version of which Newsom vetoed last year, adds a mental-health and medical professional to the 13-member board.

Weber said the idea was to broaden the board beyond its current seating, which is heavy on law enforcement.

"This bill takes a common sense approach to update the standards of the Board of State and Community Corrections to ensure the health and safety of persons in custody and adds both a medical and mental health professional to its board," Weber said.

Ex. C-16

"Thank you to my bill sponsors, coauthors, and Gov. Newsom for getting AB 268 across the finish line."



Paloma Serna, left, speaks to the media about the death of her daughter, Elisa Serna, as Yusef Miller, executive director of the North County Equity and Justice Coalition, holds a sign during a rally and vigil outside the El Cajon Courthouse on Monday, March 27, 2023. (Kristian Carreon/For The San Diego Union-Tribune)

Both laws were designed to reduce the numbers of people who die in California jails, and followed a spate of deaths of people incarcerated in Los Angeles, Riverside and San Diego county jails.

So far this year, 35 people have died in Los Angeles County jails, according to the Los Angeles Sheriff's Department. Eighteen people died in Riverside County jails last year, records show.

San Diego County has seen 12 in-custody deaths so far this year, including one man who died just last week, the sheriff's department said. The county has recorded the highest

mortality rate among California's latest counties for more than 10 years.

The ratio of people who were dying in the San Diego sheriff's custody was so high that lawmakers two years ago directed the California State Auditor to examine what was happening in San Diego County jails.

The findings — released last year on the same day then-Sheriff Bill Gore resigned in mid-term — documented 185 deaths in San Diego County jails between 2006 and 2020. Reviewers said the conditions in San Diego were so deficient that state legislation was needed to force the department to improve its practices.

Nonetheless, a record 20 people died in San Diego County jails last year, including one man who passed away hours after receiving a compassionate release.

The deaths are not only traumatic for the family members of people who die in jail. They often lead to lawsuits against San Diego County and its sheriff department, which have paid more $60 million to plaintiffs in the past five or so years as a result of negligence and misconduct by deputies.

Both the Atkins and Weber bills received strong support from civilian oversight advocates and community activists.

Paul Parker, executive officer of the county's Citizens' Law Enforcement Review Board, traveled to Sacramento twice to lobby lawmakers to pass the Atkins bill.

Yusef Miller of the North County Equity and Justice Coalition has led more than a dozen rallies in recent years with familiy members of people who died in San Diego County jails. He said the new laws could save lives.

"The passing of these two bills has been hard-fought by impacted families and advocates in a campaign rooted in San Diego that reached the entire state of California," said

Ex. C-18

Miller, who singled out Atkins and Weber for sponsoring the bills and seeing them into law.

"These wins are only two steps of many needed in jail reform, so after the celebrations we are back to work," Miller said.

Paloma Serna, whose daughter died in the Las Colinas women's jail in 2019, is now suing San Diego County for the death.

Serna said the county has repeatedly refused to turn over records related to the case — documents that would now presumably be subject to disclosure under the new laws.

"We need transparency right now," she said. "We find it very troubling that the county would continue to drag their heels in all of this."

Serna noted that the district attorney filed involuntary manslaughter charges against the doctor and nurse who treated her daughter, 24-year-old Elisa Serna.

"They've repeatedly harassed us, treated us as if we were the criminals, when their employees are facing criminal charges," she said.

"They continue to refuse to do what is right, and all while continually telling us how sorry they are."

 Jeff McDonald

Ex. C-19

10/30/23, 4:20 PM

Case 3:20-cv-00406-AJB-DDL Newsom signs Welch bills to curb jail deaths - The San Diego Union-Tribune Document 431-1 Filed 10/30/23 PageID.16741

Page 23 of 23

Copyright © 2023, The San Diego Union-Tribune | CA Notice of Collection | Do Not Sell or Share My Personal Information

**Ex. C-20**