1              UNITED STATES DISTRICT COURT

2           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3   DARRYL DUNSMORE, ERNEST          )
    ARCHULETA, ANTHONY EDWARDS, REANNA)
4   LEVY, JOSUE LOPEZ, CHRISTOPHER    )
    NELSON, CHRISTOPHER NORWOOD, and  )
5   LAURA ZOERNER, on behalf of       )
    themselves and all others         )
6   similarly situated,               )
                                      )   No. 20-CV-00406-AJB-DDL
7            Plaintiffs,              )
                                      )
8   v.                                )   October 30, 2023
                                      )
9   SAN DIEGO COUNTY SHERIFF'S        )
    DEPARTMENT; COUNTY OF SAN DIEGO;  )
10  CORRECTIONAL HEALTHCARE PARTNERS, )
    INC.; LIBERTY HEALTHCARE, INC.;   )
11  MID-AMERICA HEALTH, INC.; LOGAN   )
    HAAK, M.D., INC.; SAN DIEGO COUNTY)
12  PROBATION DEPARTMENT, and DOES 1  )
    to 20 inclusive,                  )
13                                    )
             Defendants.              )
14  _____  )   San Diego, California

15

    TRANSCRIPT OF DIGITALLY RECORDED VIDEOCONFERENCED PROCEEDINGS
16                   (Discovery Conference)

17

18      BEFORE THE HONORABLE DAVID D. LESHNER, MAGISTRATE JUDGE

19

20

21

22

23  COURT REPORTER:         AMANDA M. LeGORE
                            RDR, CRR, CRC, FCRR, CACSR
24                          U.S. District Court
                            333 West Broadway, Suite 420
25                          San Diego, CA 92101
                            amanda_legore@casd.uscourts.gov

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:        RICHARD VAN SWEARINGEN
                                Rosen Bien Galvan & Grunfeld LLP
 3                              101 Mission Street, Sixth Floor
                                San Francisco, CA  94105-1738
 4                              (415)433-6830
                                vswearingen@rbgg.com
 5
                                AARON FISCHER
 6                              Law Offices of Aaron Fischer
                                1400 Shattuck Avenue, Suite 12 - #344
 7                              Berkeley, CA  94709
                                (510)806-7366
 8                              ajf@aaronfischerlaw.com

 9

10   FOR DEFENDANT COUNTY OF
11   SAN DIEGO:                 ELIZABETH PAPPY
                                Burke Williams & Sorenson LLP
12                              501 W. Broadway, Suite 1600
                                San Diego, CA  92101
13                              (619)814-5800
                                epappy@@bwslaw.com
14

15

16

17                                        -0-

18

19

20

21

22

23

24

25
```

3

1       (Monday, October 30, 2023)

2

3                P R O C E E D I N G S

4

5       THE COURT:  All right.  Good morning, everyone.  This

6  is Dunsmore versus County of San Diego, et al., Case Number

7  20-CV-406.

8       May I have appearances from counsel, beginning with

9  the plaintiffs.

10       ATTORNEY FISCHER:  Aaron Fischer for plaintiffs.

11  Good morning.

12       THE COURT:  Thank you.  Good morning.

13       ATTORNEY SWEARINGEN:  Good morning.  Van Swearingen

14  for plaintiffs.

15       THE COURT:  Okay.  Thank you.

16       ATTORNEY PAPPY:  And good morning.  Elizabeth Pappy

17  appearing on behalf of defendants.

18       THE COURT:  Okay.  Give me just one sec, Counsel.

19       (Pause.)

20       THE COURT:  Okay.  Thank you.

21       All right.  I have Mr. Swearingen's email in front of

22  me, and I'm looking through it.

23       Do I understand correctly that you all are still

24  planning to do the inspection of the Central jail on Wednesday,

25  Mr. Swearingen?

1          ATTORNEY SWEARINGEN:  Unfortunately, we are not.  We

2     took those off calendar because we could not come to agreement

3     on a lot of issues that were important to pin down before the

4     inspections took place.

5          I also want to let you know that -- that my

6     colleague, Mr. Fischer, plans to -- you know, he's been in

7     communication with Ms. Pappy on all of these issues, along with

8     me.  And he plans to lead this discussion today.

9          THE COURT:  Okay.  No problem.

10          All right.  So what -- well, why don't we do this.

11     Why don't -- Mr. Fischer, tell me what's going on, big picture.

12     Then I want to hear from Ms. Pappy.  And then I want to know

13     what you all need me to help you resolve.

14          ATTORNEY FISCHER:  That sounds great.  Thanks very

15     much, Judge.

16          Yeah.  So, unfortunately, because of the uncertainty

17     with a few core and critical pieces to these inspections, we

18     had to take these off calendar.  It was -- we did it -- we did

19     not take that issue -- doing so lightly, because it took a lot

20     of doing.  This is the second time we've scheduled these

21     inspections.  The first inspections were first noticed for

22     August, with a few of our experts.

23          At that point we had a -- in July, we had some meet

24     and confer.  Just -- this is just some quick background, so you

25     kind of have -- I'll try and keep this kind of neutral, but

1  just so you have the landscape.

2          There are -- there were a few disputes, including

3  whether -- because we have multiple experts in this case with

4  very, very busy schedules, we -- we were going to do them in --

5  have groups.  And have one or two experts at a time.  That's

6  pretty standard, in my experience.  Makes it kind of -- the

7  inspections more efficient.

8          Defendants took the position that all experts -- we

9  only had one -- one inspection to go, which was -- which we

10  didn't agree with.  But we said, let's do our best to work with

11  it in the time that we had in 2023, where we could get all of

12  our experts in San Diego at the same time.  Was starting this

13  week.  And we're already hard at work on trying to find an

14  alternative period.

15          It is unlikely to happen in this calendar year

16  with -- based on expert schedules.  Which is frustrating, but

17  also an opportunity for us to resolve these things, and maybe

18  make for the inspections to be a bit more productive and even

19  efficient, I'll daresay.  So --

20          THE COURT:  I like your optimism, Mr. Fischer.

21          ATTORNEY FISCHER:  Right.

22          So that's kind of -- that's kind of where we are.

23  It's going to -- I will say I can't tell you, right now, that

24  we have found a date where all of our experts can come out;

25  which is going to complicate, further, the demand that we only

```
 1   get one -- or the position of the County that we only get one
 2   inspection with our experts.  We had jumped through hoops to
 3   make that happen.  And I don't know if we'll be able to -- to
 4   align those stars again.  But we're trying.  I will say we are
 5   trying.
 6           Our hope, here, is to maybe just crystallize some of
 7   the issues.  And then our suggestion is to brief -- brief the
 8   issues for you.  If there's an opportunity for further
 9   meet-and-confer to narrow them, we'll certainly do that.
10   And -- but I do think there are a handful, both with respect to
11   documents and then also in terms of process and timing,
12   logistics of the inspections that we have to sort through.  So
13   that -- that's kind of the high level.
14           I'm happy to jump into any of it, but I want to
15   let -- I want to let Ms. Pappy sort of weigh in.
16           THE COURT:  No, I appreciate that, Mr. Fischer.
17   Thank you for the high level.
18           Go ahead, Ms. Pappy.
19           ATTORNEY PAPPY:  Sure.  Thank you, your Honor.
20           I think that was a pretty fair assessment.  I mean,
21   there's obviously some insinuation it's the County's fault that
22   these didn't go forward, which I always seem to disagree with.
23           But I would say that the high-level issues and why we
24   all agreed that today would be helpful is that it's sort of
25   like if you resolve one issue in plaintiffs' favor or defense
```

1   favor, it leads to us a certain outcome.  And then if you

2   resolve the next issue, it leads us to a certain outcome.  And

3   it may help us.

4            THE COURT:  Okay.

5            ATTORNEY PAPPY:  But the question -- the major issue,

6   I think, that we need help with first is interviewing employees

7   and incarcerated people during the inspections.

8            And the defense has always objected to that.  We

9   objected to it in the expedited.  I've been provided no case

10  law or legal authority for that concept.  The one case that's

11  been provided to me is a -- is a COVID case, where millions of

12  people were dying, you know, every ten minutes across the

13  world.  And so I think that case isn't quite this situation.

14           If we get rid of the question -- the interviews

15  issue, however your Honor decides it, it certainly weighs into

16  how we're going to get these all done in one day.  My client is

17  currently taking the position that you get one shot at this.

18           The second issue is number of people.  The plaintiffs

19  want to bring nine people, including three attorneys and a

20  whole bunch of experts.

21           The three attorneys is problematic.  The client

22  wanted a max of three.  Their internal counsel said that's

23  unreasonable.  We need to let more than that in.  They came up

24  with six.  That was still not acceptable to the plaintiffs

25  because of these three attorneys, which I have issue with and

1   have taken issue with this particular issue before.

2           And then, recently, my client just made a decision --

3   which I emailed counsel but we haven't talked about it yet --

4   is that the department has made a decision that it is not going

5   to house anyone in a wheelchair at Vista, at George Bailey, and

6   there's one other one.

7           So we -- as part of our meet-and-confer, we have not

8   talked about that.  But it's sort of like we need to take this

9   stepped.  Are you interviewing people?  What's the number of

10  people that can come in?

11          The other thing that I had asked for, and I have thus

12  far been refused by plaintiffs' counsel, I said, can you

13  please -- by expert -- just give me a sentence or two about

14  what they want to look at, so that I can push the client to say

15  more than one day is appropriate.  Let's put this group of

16  people together, so that we can do it on this track.  And let's

17  put this group of people -- like Ms. Sanossian, she needs to

18  measure.  She's going to take a long time.  And she needs time

19  to do that, and she needs to be able to have access to do that.

20  Whereas the rest of the folks don't need to be there the length

21  of time that Ms. Sanossian's there.  But I have thus far not

22  been given that information

23          And, with that, I'll be quiet.

24          THE COURT:  Mr. Fischer, do you really object to

25  giving Ms. Pappy a brief description of the names of the

```
 1    experts, their field, their expertise, and what they're going
 2    to be inspecting?
 3              ATTORNEY FISCHER:  So let me respond.
 4              So she does have all of the names.  She does have the
 5    field of the experts.  And we have given, in writing and
 6    verbally, a statement as to what -- what needs -- what we would
 7    like to be inspected.
 8              Just to get -- just to finish the timeline, part of
 9    the frustration that we've had and all of the work that --
10    expense that -- we had plane tickets that were lost because of
11    this snafu.  Experts had already booked plane tickets and those
12    are lost.  I had booked plane tickets.
13              The notices went out back at the end of August, and
14    the objections came in more than a week -- week late.  We got
15    written objections.  Some of the objections we knew were
16    coming.  Some were surprises, were new to us.  And then in
17    meet-and-confer, after that -- which just happened in the last
18    week or so -- is when we heard we're not going to let everybody
19    in.  So that means --
20              THE COURT:  Okay.
21              ATTORNEY FISCHER:  The goalposts seem to be shifting.
22    I understand it's coming from the client.  Ms. Pappy is
23    managing it.  But these are shifting goalposts.  And --
24              THE COURT:  Okay.
25              ATTORNEY FISCHER:  -- the response for the more
```

1    detail -- expert by expert -- that just came a few days ago.

2    That wasn't something that we've --

3             THE COURT:  All right.

4             ATTORNEY FISCHER:  That's new.

5             We're happy to do that.  What we requested was, can

6    you give us an overview -- can you give us the floor plans of

7    each facility and where things are?  And then once we have

8    that, we can sit down and come up with -- we can sort of come

9    up with an itinerary for each.  But the -- the high level, sort

10   of like what we want -- what we want to see -- the order of

11   what -- how we want to see things, we -- I mean, that was in

12   the notice, and we provided -- we have provided that.  So this

13   is kind of like an extra demand which we're willing to work

14   with, but it's not something that we've stonewalled at all.

15            THE COURT:  Well, I'm glad to hear that.  There would

16   seem to be no purpose in that.  That would be contrary to the

17   way that I've seen you all working together over the course of

18   this case.  But --

19            ATTORNEY FISCHER:  Okay.

20            THE COURT:  -- look, here's what -- I understand why

21   you requested this.  I'm really -- it is, I'm sure,

22   disappointing for everyone that these inspections did not go

23   forward as planned.  But, look, I'm going to come at this from

24   Mr. Fischer's sense of optimism.  That we can use this as an

25   opportunity to -- to reset and for me to provide you with

1  the -- the guidance that you -- you want as to the ground rules

2  for the inspection, so that you all can go ahead and go forward

3  with them.

4          Look, I really want to save you all additional

5  briefing where I can, and I don't know that this needs like a

6  full -- you know, full motion and an opposition, as opposed to

7  maybe a joint filing where each party provides their positions.

8  But I -- I -- I'm not sure how I do this without at least

9  something in writing from the parties.

10          Mr. Fischer, you had suggested that.

11          So, Ms. Pappy, look, I -- I want to give you the

12  guidance that I think would be helpful to move forward.

13          Is there a way for me to do it, saving you the -- the

14  time of putting something in writing?

15          ATTORNEY PAPPY:  Well, I -- two things.  Is if

16  they're not entitled to question or interview people, then that

17  resolves a lot.

18          And I still need -- I understand that -- that

19  plaintiffs believe they have sent me a -- a sufficient enough

20  explanation of what these folks are going to look at, but I

21  don't.  And so maybe it's me not being smart enough, but I

22  don't think that I have that.  And so I think that those two

23  things would be very important.  And I just want to note that I

24  told them about the limit on the number of people two weeks

25  ago, not last week.

 1          THE COURT:  Okay.  Well, look, got it.  Focusing on

 2  moving forward.

 3          Let me ask you this, Mr. Fischer.  When I issued the

 4  order on expedited discovery on January 17th, I -- I did note

 5  that the inspections for the ADA issues would not include

 6  interviews of detainees or employees.  However, I directed that

 7  defendants' counsel would facilitate providing information to

 8  plaintiffs' counsel and Ms. Sanossian during the inspections.

 9  That's Document Number 258.

10          Do you have authority for the proposition that the

11  plaintiffs should be allowed to conduct informal -- or just

12  interviews of employees and detainees during these visits,

13  Mr. Fischer?

14          ATTORNEY FISCHER:  Yeah, so the answer is yes.

15  But --

16          THE COURT:  Okay.

17          ATTORNEY FISCHER:  -- but just to be -- just to be

18  clear, we're not asking for long interviews or even structured

19  interviews.  What we've been -- what the notice has said, and

20  what I've been asking for is to -- from the experts, that

21  the -- the weight of the case law says that these firsthand

22  inspections are the best way for a -- evidence; for a court to

23  get the information it needs to make an informed decision

24  about --

25          THE COURT:  Um-hmm.

13

1          ATTORNEY FISCHER:  -- whatever the issue is.  And

2     there is a place for depositions.  This does not replace

3     depositions at all.

4          What the -- the basic language is -- for example,

5     I'll still go with mental health.  I know it very well.  The

6     mental health expert comes through as what -- who's in this

7     unit?  Who gets housed in this unit?

8          Oh, this is the outpatient step-down unit.  These are

9     people who come from -- wherever it is.  It's orientation-type

10    information.  Oh, there's 40 people in here.  Everyone's single

11    cell.

12         It's the very basic, like, logistical.  It's not --

13    it's not deposition-type information.  It's orientation

14    information:  Who's in here?  What happens in here?  That sort

15    of thing.  My experience is it's very brief --

16         I have no doubt that Ms. Pappy or Ms. Coleman -- or

17    both -- if the experts start asking more questions, will say,

18    "Naw, that's not for here.  That's for depositions."

19         THE COURT:  But how is that basic information about

20    orientation outside the scope of what I directed back in

21    January by saying that defendants' counsel will facilitate the

22    provision of information to plaintiffs' counsel and expert

23    during inspections?

24         I mean, it sounds like that is -- you're not talking

25    about depositions.  Who's here?  How many people are here?

 1              I mean, let me ask questions of Ms. Pappy.

 2              If that question were posed during the inspection,

 3      to -- you know, would -- would defense counsel, you know,

 4      object, necessarily, to providing that information to the

 5      plaintiffs' expert during the inspection, so they know what

 6      they're looking at and who's there?

 7              ATTORNEY PAPPY:  No.  That's something that we spoke

 8      about in meet-and-confer.  And I said same as last time.  Just

 9      if they have a question about where are we, what is this, how

10      many.  That all went very smoothly with both -- I think it was

11      Ms. Coleman at both of those inspections.  No issues were

12      reported back to us.

13              THE COURT:  Yeah, and that's why I'm a little bit, I

14      mean, candidly surprised to get this dispute.  Because it

15      seemed to me that the ADA inspections went so smoothly.  And I

16      didn't hear anything afterward, and it seemed like they went

17      well.  So, you know, it is what it is.  And I'm not, I guess --

18      in legal terms -- throwing shade at anybody for that.

19              But I -- this seems to me like issues that can be --

20      that can be figured out.

21              ATTORNEY FISCHER:  I think that's right.  I think we

22      sent over another -- another California district court case

23      that had an order that had language that said, essentially,

24      what you just stated.  And Ms. Pappy said that case -- that

25      case holds no weight, and we're not going to follow it.  So I'm

15

```
 1   not quite sure where we're going to land.
 2          I think some clarity from -- with the assistance of
 3   the Court -- maybe we can just move forward.  But when we sent
 4   that case over, that has the same language that's in our
 5   inspection, that they objected to, Ms. Pappy said, "No, that is
 6   not going to happen here."
 7          So I'm just -- you know, trust but verify, trust but
 8   confirm.  I just want to -- maybe we can figure -- I'm hopeful
 9   we can figure it out.
10          THE COURT:  I think you can.  But my initial
11   inclination is to provide you with the benefit of my tentative
12   thinking, without having reviewed any of the authorities that
13   may be provided to me, is that docket number -- it's 258, you
14   know, would seem to apply here.  And I'm looking specifically
15   at the language on page -- page 6 of that.
16          So, you know, that -- I think that worked before, and
17   I think -- if -- I can't imagine why it wouldn't work now, so
18   that, Mr. Fischer, you and your colleagues can get the
19   information.  You know, the big picture that you need.  But
20   you're not -- you're not taking -- you're not disposing or
21   sitting down and doing interviews with folks in the mental
22   health -- I really think that that's -- I would encourage you
23   to look at that specific language.
24          And if you agree with it, great.  And it sounds like
25   it worked just fine for the last inspection.
```

1          Obviously, I'm going to -- I'm going to give you time

2     to file a joint motion, if you need it.  And I'll read any

3     briefing you submit and look at the cases.  But that seems to

4     make sense to me.

5          Here's what I think -- well, number two.  Look, I'm

6     not sure what -- what's the disconnect with respect to the --

7     who's going to be going to the facilities and what their areas

8     of expertise are?  I'm going to chalk that up to sometimes

9     there's a miscommunication.

10         But, look, Mr. Fischer, just whatever you sent

11    before, send it to Ms. Pappy again, please.  And hopefully

12    that's going to give her what she needs to really make a

13    considered recommendation to the County as to whether these

14    inspections truly can happen within one day.

15         I want to hear who all of the experts are.  But,

16    Ms. Pappy, I can tell you if it's -- if you've got five experts

17    that are going to jails, that could be really hard to do an

18    entire inspection of the Central jail in one day.  Again, I'm

19    not prejudging it.  I really want to look and be thoughtful

20    about it.  But I want -- I want to understand it.  And --

21         ATTORNEY PAPPY:  And what I'm looking for, Judge, is

22    I need to be able to articulate to the client, "This is why you

23    should allow this to happen in two days."

24         Counsel and I were working on ideas of having some

25    experts come in for a couple of hours, and then shoveling them

1   out the door and bringing the others in.

2            I mean, and -- and if I were plaintiffs, I would be

3   concerned about this.  Is Ms. Sanossian takes -- it takes a

4   while to do her work.

5            THE COURT:  Yeah.

6            ATTORNEY PAPPY:  I mean, we have an expert, too.  It

7   takes a while to do her work.

8            And -- and having her and maybe -- I'm just -- off

9   the top of my head, the environmental person who wants to see

10  if the place is clean -- you know, something like that, with

11  information about what these people want to look at, gives me

12  ammunition to go back to the client and say, "This is

13  reasonable.  And it's reasonable to me, and the judge just

14  might order it."  That's what I'm looking for.

15           THE COURT:  Right.  Look, that makes sense to me, and

16  I get it.

17           Mr. Fischer, understanding that your -- plaintiffs'

18  frustration in having to reschedule this, I would ask you to

19  dig in with Ms. Pappy on that.  And give her --

20           What would be the most helpful for you, Ms. Pappy?

21  Would it be to have a proposal for who's coming when?  Like,

22  you know, and how -- how they should fit together?  Like,

23  who's --

24           ATTORNEY PAPPY:  Yes.

25           THE COURT:  Which experts should be --

1          ATTORNEY PAPPY:  And I'm happy to get -- I'm happy to

2   get them the floor plan.  You know, hopefully I can get them by

3   the end of this week, and get them to them.  Because they've

4   indicated, now, that they would like to see those, to be able

5   to figure out -- that's fine.

6          THE COURT:  Yeah.

7          ATTORNEY FISCHER:  So could I just get some clari --

8   sorry, Judge.

9          THE COURT:  No.  Go ahead, Mr. Fischer.

10         ATTORNEY FISCHER:  I'm very pleased to hear

11  Ms. Pappy's, like, approach to trying to take -- to navigate

12  this with her client.  Which, I'm sure, is -- can be

13  challenging with any client and not specific to this county,

14  you know.

15         But the logistic -- the language of the objections

16  were, if our experts spoke with anyone, we would be thrown out

17  of the facility.  So we do need some clarity and some, like,

18  certainty that when we get there, there's -- there's sufficient

19  guidance and mutual understanding that we're going to have a

20  successful, productive visit.

21         So I -- I just -- you know, I don't want to -- I want

22  to move -- be forward-looking.  I think you know me to be

23  forward-looking.  But that -- that type of language gives us

24  great concern about moving forward, just with kind of a "let's

25  hope it works out."

1          In terms of this process that you're suggesting, I

2    think that sounds great.  It would be helpful to have some --

3    for our working with the experts, I can -- gears are just

4    turning right now.  We could come up with kind of a healthcare

5    team; and then, like Ms. Pappy was saying, like an other-group

6    team.  But I'm not going to -- it's hard for us to do that if

7    we're told there's just no way that we're letting groups of --

8    different groups of people; you get one shot, and that's it.

9          We still don't know if we're going to be allowed into

10   Central again.  The response was, "You can't come back to

11   Central."  So --

12              THE COURT:  On the -- ultimately, that's my call.

13   Right?

14              ATTORNEY FISCHER:  That's right.  But it's just going

15   to be hard for us to come up with a coherent plan without some

16   idea of where -- of what's possible, in terms of the County.

17              If -- you know, of course, we can brief it, and we're

18   happy to do that.  We encourage it but --

19              THE COURT:  But I think -- I think what I hear

20   Ms. Pappy saying is there's a bit of a chicken-and-an-egg

21   issue, right now.

22              ATTORNEY FISCHER:  Yeah.

23              THE COURT:  I think if you can come up -- what I

24   would ask you to do is this, Mr. Fischer.

25              ATTORNEY FISCHER:  Yeah.

1          THE COURT:  It sounds to me -- like, would it be the

2     plaintiffs' preference to try -- to do, like, the Central jail

3     inspection, would you prefer not to have to do the entire

4     inspection with all of your experts in one day?

5          ATTORNEY FISCHER:  I think it would be great if we

6     could split them up into two -- two days.  And we can be

7     strategic about -- for example, if -- if it's the healthcare

8     experts together -- if we're lucky enough to get those folks

9     together again -- that could be -- that could be an efficiency,

10    as opposed to, like, Ms. Sanossian, an environment-of-care

11    person, who's going to be looking -- they're not looking at

12    healthcare services and how it's delivered, or anything like

13    that, and the process.  They're looking at cleanliness and more

14    of physical plan type of stuff.

15         ATTORNEY PAPPY:  But, remember, Ms. Sanossian is not

16    coming.  Right?

17         ATTORNEY FISCHER:  (Indiscernible.)

18         ATTORNEY PAPPY:  Yeah.  Yeah.  She's not coming

19    back --

20         ATTORNEY FISCHER:  She's not coming back to Central.

21    But the other ones, we can --

22         THE COURT:  Okay.  Well, and I think what I hear

23    Ms. Pappy asking is for you to give her what -- you know, the

24    proposal that you think makes sense, to allow you to be as

25    efficient as possible.  And she can provide it to the County,

1   and they'll give her an answer.  And then if there's not an

2   agreement, I'll decide.

3           ATTORNEY FISCHER:  Yeah, okay.  I think that's a good

4   process.

5           THE COURT:  And let's -- we can -- you know, I want

6   to help you do this in a way that moves things along.  You

7   know, rel -- you know, with efficiency but not jamming anyone

8   up too badly.

9           And I think that would then resolve the issue of, you

10  know, the number of people who are -- who are coming.

11          Go ahead, Mr. Swearingen.

12          ATTORNEY SWEARINGEN:  Thank you, your Honor.

13          I just want to point out that our notices served on

14  September 1st do identify each expert we want at each facility

15  on each day.  So the County already has that information.  The

16  notice says that we want to inspect all areas of the jail.

17          With respect, for example, to -- so I think it's

18  important to understand what Ms. Pappy is missing because she's

19  not missing which individuals we want at the jail each day.  We

20  provided that to her more than two months in advance.

21          THE COURT:  Yeah.  Okay.

22          ATTORNEY SWEARINGEN:  What she's saying, I

23  understand.  She wants to know what areas of the jail each

24  expert wants to -- to review.

25          From our perspective, some of that is legitimate.  We

1   need the floor plans, to better understand which areas the

2   mental health experts really want to go into.  It depends on

3   which areas of the jail people with mental illness are housed.

4   Both -- with respect, for example, to our environmental expert,

5   we know that the jail cleans up the facility before we go in.

6   So we don't want to, you know, inform the jail of every single

7   cell or which particular area we want to go because we don't

8   want them to just clean that up right before we go because that

9   won't be particularly helpful for us.

10          So I think that there should be some balance.  And I

11  think that the balance that we originally arrived on is

12  informing the -- at Ms. Pappy's request, that we can only go to

13  one facility one time.  So we schedule all of our experts, for

14  example, to go to George Bailey on November 2nd.  When we said

15  each of our experts wants access to all areas of the facility

16  where people are housed and receive care, et cetera.

17          So it was identified to the County.  It's not clear

18  to me what more is necessary for us to provide at this stage.

19  And I think it would be helpful, your Honor, if you could chime

20  in on that.

21          THE COURT:  Well, it's kind of hard for me to chime

22  in on it right now, Mr. Swearingen, when I don't have all of

23  the notices in front of me.  I don't know who's scheduled for

24  what day.  But I hear you're saying not right now, but for

25  later.

1          Look, here's what I think we should do.  And, again,

2    I would really like to help you all avoid extensive motion

3    practice.  Because, ultimately, these inspections are -- I

4    think everyone agrees they're going to happen, so it's a

5    question of how do we make it as efficient as possible.

6          Look, let me ask this.  You all are -- you all are

7    going to be meeting with me on November 6th.  Correct?

8          ATTORNEY PAPPY:  Um-hmm.  Yes.

9          THE COURT:  Do you need more than a week to at least

10   figure out where -- where you can agree and where you disagree?

11         ATTORNEY PAPPY:  I will try to get the floor plans to

12   them ASAP because I understand that that's a part of the

13   additional explanation about where the experts want.  I will

14   tell them tomorrow.  And what else can I give?  Tomorrow.  And

15   then let me -- I will try to work on the County for two

16   separate dates.  You know, like if you were to be -- if it were

17   to be two dates, when would be best for you?  Because maybe

18   that's a better way I can present it to them, to convince them

19   to do it.

20         THE COURT:  Look, I understand that the -- the

21   inspection notices laid out who -- who you want, when,

22   Mr. Swearingen.

23         I think for purposes of just trying to move this

24   forward, what I would ask you to do is send Ms. Pappy an email

25   with your proposal for the facilities.

1          And maybe -- maybe it's just summarizing the Rule 34

2    notices.  Regardless, I don't think it's a big lift and -- in

3    terms of what you think makes sense for how you can accomplish

4    this most efficiently.  I would ask you to give that to

5    Ms. Pappy.

6          I mean, if you can get it to her by -- by tomorrow --

7          Ms. Pappy, I would ask you to consult with the

8    County, and tell them I may resolve all of this on Monday, the

9    6th.

10          ATTORNEY PAPPY:  I will do that.

11          THE COURT:  And I will -- you know, I -- I want to be

12    thoughtful about it, but I really want to give you all the

13    guidance that you are seeking, going forward.  And if you can

14    agree on everything, great.  We can do a stipulation about how

15    the inspection should happen, if you would like to have that.

16    But I want to help you resolve this quickly.

17          What I would -- if we were going to do this, what I

18    would like to know is by -- by Friday, whether there are any --

19    any outstanding disputes as to how the inspections should take

20    place.  Because we're going to -- I have blocked out the day

21    for you all next Monday.  And I want to make good use of it.  I

22    want to resolve this.  I want -- and I really want to help you

23    all move forward with, you know, settlement discussions that

24    we, you know, were planning to have, and keep our momentum

25    going with that.

1    So let me ask this.  We're starting with Mr. Fischer

2  and Mr. Swearingen.  Is -- is that too ambitious?  For you to

3  get Ms. Pappy sort of your proposal by tomorrow?  And for the

4  parties to meet and confer and tell me, by Friday, whether

5  there are any disagreements that I need to resolve on Monday?

6    ATTORNEY FISCHER:  Van, please feel free to jump in.

7    I think what would be helpful is if we could get

8  those floor plans as soon as possible.  We're not going to wait

9  to start working.  I think we want to see them and see if

10  there's anything we missed, because we know this is our one

11  shot.

12    THE COURT:  Well, maybe --

13    ATTORNEY FISCHER:  Maybe.  Yeah.  Okay.  Fair.  I'll

14  take that.

15    But I think we can commit to, say, by mid-week --

16  maybe tomorrow -- getting something over.  I think it will be

17  some -- it will be something like be an itinerary.  And I can't

18  guarantee that we'll have the groupings down by then, with our

19  experts.  So that might be a bit up in the air.  But maybe it's

20  not necessary.  Maybe it's just two days, and we can make it

21  work.

22    THE COURT:  Look, what I'm looking to understand

23  is -- is just, you know, sort of some thoughtful reasons behind

24  positions.

25    I mean, it -- and I'm not suggesting that one -- the

1    one day for each facility is unreasonable.

2              But if it turns out it's arbitrary, then that is

3    going to be a little bit harder to justify, for me, if there

4    really is a thoughtful reason and a considered reason why, you

5    know, the experts should be grouped the way they are.  And it

6    would be -- take place on -- gets back-to-back days; maybe not.

7    And I realize that there are some scheduling issues.  And I

8    think, you know, that's going to be a challenge, Mr. Fischer.

9    But I --

10             ATTORNEY FISCHER:  It's our problem.

11             THE COURT:  We're going to have to work through that.

12             ATTORNEY FISHER:  Yeah, I agree.

13             I guess the one request I would make is in terms of

14   resolving things, we -- before you make decisions on some of

15   the sort of core disputes around speaking with incarcerated

16   persons, observing processes, that sort of thing, we would like

17   an opportunity to present the case law; because we do think it

18   supports our position.  So I would just like to leave space for

19   that.  I don't think we have had the opportunity to present

20   that full-throatedly in this context.  ADA ruler -- somewhat of

21   a ruler -- very important.  It is different than a doctor.

22             THE COURT:  Understood.

23             ATTORNEY FISCHER:  So (indiscernible) space for that.

24             THE COURT:  If there are any -- what I want to

25   understand, by Friday, is if there are any disagreements.  And,

1    if so, what they are.  And then I will give some thought,

2    before we meet next Monday, to the best way to address it.

3         And if you believe there's authority to support your

4    position, Mr. Fischer, or if Ms. Pappy believes there's

5    authority that supports hers, I will be -- you know, I'll --

6    I'll give thought to having a briefing schedule.  Whether it's

7    going to be -- what -- what that briefing schedule is, I'm not

8    sure yet; if it's necessary.  But, yeah, I understand.

9         Just let me know if you think there's a disagreement;

10   we think the law supports our position.  I got it.  I'm not

11   going to prevent you from providing with authority.

12        ATTORNEY FISCHER:  Thank you.  Appreciate that.

13        ATTORNEY PAPPY:  (Indiscernible.)

14        THE COURT:  And I -- I am hopeful that you all can

15   figure much of this out, if not all of it.

16        Ms. Pappy, were you going to say something?

17        ATTORNEY PAPPY:  Yes.  One question -- or suggestion,

18   rather.  Is that the defendants are not going to agree to allow

19   the incarcerateds to be interviewed for the same reasons you've

20   ruled in the previous motion; because of their right to

21   representation, their right to privacy, and in addition to the

22   fact these sessions will take hours.  And they're not proper

23   depos.

24        So what I would suggest that we do, as a part of our

25   meet-and-confer, is have -- almost work on two proposals.

1          If your Honor -- because a lot of the timing of this

2     and the scheduling of these is going to be -- is easy if

3     there's none of these interviews going on.  It becomes more

4     difficult and longer if these interviews are taking place.

5          I think we can do it.  I think we can work on two

6     tracks and report to the Court on Friday:  If this, then that;

7     and if this, then this.

8          THE COURT:  Mr. Fischer, is it correct that -- that

9     the plaintiffs seek the ability to interview or speak with

10    incarcerated individuals?

11         ATTORNEY FISCHER:  Yeah.  So that -- let me speak to

12    that.

13         And, Mr. Swearingen, feel free to chime in.

14         So the way this -- in every tour that I've been on,

15    in cases where there were -- that were structured negotiations

16    (indiscernible) and where there were notice inspections --

17    both -- is that the experts come through and walk into a mental

18    health unit and want to see how it works.  They want their --

19    and they want to see what the processes are that happen.

20    Not -- not -- nothing gets observed without people having an

21    informed consent, knowing what's being -- knowing who's there,

22    knowing what the purpose of it is.

23         By the time we have these tours, now, I expect that

24    we will be class counsel, so we will be their representatives.

25    So at least we'll be kind of over that gray zone hurdle, which

 1  is helpful, I hope; I think.

 2          But then what happens is they walk through, and

 3  there's someone who says, "Hey, I -- I've been in the safety

 4  cell for" -- just making this up, because I've seen it

 5  elsewhere -- "I've been here for two days, and I don't know

 6  why.  And I'm not" -- or whatever it is.

 7          And then the expert says, "Okay.  Well, where were

 8  you before?"

 9          "I was here.  I came in through intake," whatever it

10  is.

11          "What's your name?  What's your number?  We make take

12  you out for a professional visit later."

13          And so they're not these, like, full-throated sort of

14  long group interviews.  But it's a way for us to identify

15  people.  Because it's not like other cases where we can --

16  where we had access to them.

17          So that is kind of how it works.  They're brief

18  interactions.  It's also fair for people who -- when people

19  walk into the facility, and we represent them, for them just to

20  know who we are.  So I might go up and say, "Here's who we are,

21  here's why we're here.  And this is what's going on."  So

22  that's -- that's just part of the kind of the class -- the

23  nature of these sort of class cases.

24          THE COURT:  Ms. Pappy, does the County's position

25  depend -- or change at all if their motion for class

1   certification has been granted?

2          ATTORNEY PAPPY:  No.

3          THE COURT:  With -- okay.  Then I think what I --

4   look, I -- you've got -- I understand why this is a -- a key

5   issue, then.

6          What I will probably end up doing, when we talk on

7   Monday, is requesting that you all provide me with your

8   authorities on this.

9          Because I do want to make a considered decision on

10  it, and I don't want to just give you a ruling that -- without

11  the benefit of whatever cases you want me to read.

12         ATTORNEY FISCHER:  Great.  Thank you.

13         THE COURT:  All right.  So what we'll do is this.

14  I'll be seeing you all in person on next Monday.  We will -- we

15  will deal with this issue.

16         And then I have received the -- you know, the topics

17  for the parties to -- that we're hoping to address with respect

18  to, you know, settlement discussions.

19         Are we in a position, next Monday, to -- to dig in on

20  some of these issues and make some meaningful progress?

21         Because I realize I'm asking you all to come to San

22  Diego, and that's, you know, time and expense for you all.  And

23  I want to make sure that it's worth everyone's time.  I figure

24  I would just ask while I've got you all.

25         ATTORNEY SWEARINGEN:  Your Honor, if I could start,

 1   your Honor.

 2            THE COURT:   Sure.

 3            ATTORNEY SWEARINGEN:   We've sent over to defendants,

 4   with respect to substance use issues, a -- a very, very

 5   high-level roadmap of areas where we want more information on

 6   and to discuss about; with my colleagues' understanding that

 7   you wanted to be privy to what we wanted to discuss with

 8   substance use issues.

 9            The County asked strongly that we not present those

10   to you, and that we not send the email that we sent to

11   defendants on those issues to you.

12            We think that it would -- it would benefit everyone

13   to have those issues out in the open and to discuss, in part,

14   to -- to set the stage.  And, in part, to let everyone know

15   that we still need some information, before digging in more

16   deep to the substance use issues.

17            My colleague, Aaron Fischer, can talk more about the

18   ADA issues that were previously discussed, and where we are

19   with respect to those.

20            THE COURT:   Before we get to Mr. Fischer, Ms. Pappy,

21   look, I -- I want to help you where I can, but I don't want to

22   dive in prematurely.

23            Are there issues that the parties need to discuss

24   further before we talk more about a settlement conference

25   regarding, for example, substantive -- substance use issues?

1    Excuse me.

2              ATTORNEY PAPPY:  Yeah, there are.  We had requested

3    things from the plaintiffs' that we haven't gotten yet.

4              So I think ADA is ripe for discussion.

5              And so I think that -- that absolutely -- and I can

6    bring -- probably have a discussion maker with me about some of

7    the ADA issues, if you want.

8              But the drug issue, we -- we'll talk about it, but

9    we're still waiting for information from the plaintiffs.  So

10   I'm not sure now is the time to talk about that.

11             THE COURT:  Okay.  Well --

12             ATTORNEY FISCHER:  One thing that would be very

13   helpful, Judge -- sorry to interrupt.  But on the substance use

14   issues, a major issue is the withdrawal observation space and

15   protocols.  We had expected to have had the benefit of having

16   had that as part of the inspection before embarking on

17   discussions.

18             One thought that we had would be to have an extremely

19   targeted, far-less-than-full-day visit to -- I guess we could

20   probably do a couple of the facilities, that would just focus

21   on that particular issue.  Which I think would give, like, a

22   lot of momentum to -- to conversations.  We identify what the

23   issues are, what issues there are not.

24             But so looking at kind of intake withdrawal protocols

25   and space, medical housing for those types of things, I think

1    that would be like a very useful exercise.  And as Ms. Grunfeld

2    suggested last time, we would welcome for you to come to that,

3    even if it's just to Central, down the street from where you

4    are.  We would probably like to see the women's -- for example,

5    the women's withdrawal observation space and protocol, as well.

6    But that might be one suggestion to try and sort of kickstart,

7    with a common understanding of those issues.

8              THE COURT:  Okay.  Give me just a second.

9              (Pause.)

10             THE COURT:  All right.  Here's what I have on my list

11   of things that we are going to cover on Monday.  Because I

12   really do want to be respectful of your time and the fact that

13   all three of you are traveling, if you can be attending.

14             It will be to discuss and hopefully resolve the

15   protocols for inspections of the facilities.  And if there are

16   any outstanding disputes after the additional meet-and-confers

17   that will happen this week, I will set a -- a briefing schedule

18   on those.

19             And I will issue a ruling as quickly as possible.

20             I -- we will deal with the -- whatever remaining

21   discovery disputes there are that you all outlined for me in

22   Docket Number 419, which were the plaintiffs' requests for

23   production.

24             It looked like there were a number of RFPs as to

25   which the parties were still meeting and conferring, so it

 1  may -- there may not be -- there may be less to resolve than is

 2  listed in there.

 3          ATTORNEY PAPPY:  And, Judge --

 4          THE COURT:  Yeah.

 5          ATTORNEY PAPPY:  -- Ms. Chartoff and I will be

 6  updating you.  We're meeting tomorrow morning.  And we agreed

 7  that we would get you something tomorrow afternoon, to take off

 8  and that we've resolved.

 9          THE COURT:  Okay.  Great.  That will help me to

10  understand what we need to talk about.

11          And then, look, in terms of -- look, are there any

12  other -- aside from the motion to compel on the CIRB reports,

13  which is pending with me, are there any other discovery-related

14  issues that we need to talk about on Monday?

15          ATTORNEY PAPPY:  Depositions.

16          THE COURT:  Is that the 30(b)(6) that you mentioned

17  in the report?

18          ATTORNEY PAPPY:  Yes.

19          THE COURT:  Okay.  Can you -- can you include that in

20  what you provide me?

21          ATTORNEY PAPPY:  We will.

22          ATTORNEY SWEARINGEN:  Your Honor, in addition, the

23  parties' written responses to the final sets of written

24  discovery are due for both sides tomorrow.  After tomorrow,

25  both parties will have an understanding of the parties'

1    responses and objections to those discoveries, including

2    plaintiffs' discovery RFPs sets 4 and 5.

3           I think that we will have more information about

4    where the parties stand as to that remaining discovery, and we

5    can discuss those in real time on November 6th.

6           THE COURT:  All right.  That's fine.

7           And what -- all I would ask is that you all talk

8    before you raise an issue with me, just to make good use of our

9    time.

10          ATTORNEY FISCHER:  Yeah.

11          THE COURT:  But I am -- I am going to resolve the

12   discovery disputes as much as I possibly can with you, next

13   Monday, to get you aligned and move forward.

14          ATTORNEY PAPPY:  Can I ask you a question?

15          THE COURT:  Sure.

16          ATTORNEY PAPPY:  What -- Mr. Swearingen, what

17   requests (indiscernible) that are due tomorrow that we'll be

18   talking about Monday?

19          ATTORNEY SWEARINGEN:  Tomorrow, it -- plaintiffs have

20   the obligation to serve responses to County's written

21   discovery.  And County has the obligation to respond to

22   plaintiffs' written discovery.

23          ATTORNEY PAPPY:  Oh, you mean, the discovery that

24   had -- the responses haven't even been served yet?

25          ATTORNEY SWEARINGEN:  That is correct.

```
1          ATTORNEY PAPPY:  I mean, responses.

2          Judge, I did not agree to discuss those on Monday.  I

3  mean, how are we going to have meet-and-confer between now and

4  Monday on responses that are due tomorrow?  So -- I don't

5  understand why we're talking about it on Monday.

6          THE COURT:  Well, I -- I don't know what's

7  outstanding.  And I have no idea of the topics that are at

8  issue.  But if we're going to be -- look, if you're going to be

9  coming to San Diego and there are objections to discovery --

10 whether your objections to the plaintiffs' or the plaintiffs'

11 objections to the County's -- at the very least, I want to be

12 able to provide you with my tentative thoughts on the

13 discovery.  If we need to have a -- if we need to have, you

14 know, formal motions to compel, so be it.  But my goal is to

15 avoid formal motion practice for you all wherever we can.

16         ATTORNEY PAPPY:  Oh, sure.  But this is new

17 discovery.  This isn't anything that's had any meet-and-confer

18 IDC.  God forbid we need meet-and-confer.  We haven't even --

19 this is new discovery.

20         THE COURT:  No, I get it.

21         ATTORNEY PAPPY:  Okay.  Okay.

22         THE COURT:  And I'm not asking you -- if there are

23 disputes, talk about them.  And, look, if we all need to come

24 back again the following week, we will.

25         ATTORNEY PAPPY:  Okay.  Sounds good.
```

1      THE COURT:  But I do want to understand if there

2   are -- look, I -- again, I don't know how many disputes are --

3   there are going to be.  Maybe there are going to be none.  Who

4   knows?

5      But -- okay.  I don't -- again, I'm trying to -- I'm

6   trying to strike a balance, everyone, between requiring you all

7   to file a bunch of stuff with me before next Monday and also

8   having me come in, sort of without a sense of where things are

9   and do stuff on the fly, which also isn't helpful.

10      So I think -- let's just do this.  I think --

11   here's -- here's what I would like to do.  I know that you're

12   going to meet and confer with Ms. Chartoff on a number of

13   issues, Ms. Pappy.  I think what I would ask you all to do is

14   this.

15      By Friday, file a -- a joint filing from the parties

16   with respect to the -- the issue that you all agree should be

17   raised at -- and determined at the discovery hearing on Monday.

18   I would like to work through those with you all, and then

19   really dig in on the settlement stuff, to the extent we can.

20      But I am going to resolve your discovery matters

21   first, to the extent I can, so that you will have some guidance

22   from me moving forward.

23      And that would include -- just for the Docket Number

24   419 that you're going to update, Ms. Pappy, you can just do

25   that on Friday.  You don't need to rush and do it right after

1  you meet with Ms. Chartoff tomorrow.

2          But I think it would be more helpful to have a joint

3  filing.  If you have different positions, look, just --

4  Ms. Pappy will provide your position to Mr. Swearingen and

5  Mr. Fischer.  They'll include it in a filing.  And then I'll at

6  least know what we want to try to cover.  And that would be

7  both for discovery disputes, as well as for settlement.

8          Let's make -- I want to make good use of your time.

9          ATTORNEY PAPPY:  That's fine.  I'm just -- I'm a

10  little concerned because there are 151 document requests to the

11  defendants included in this latest round and --

12          THE COURT:  How many total document requests have you

13  had?

14          ATTORNEY PAPPY:  They have served on us 89, plus 151;

15  whatever that is.

16          THE COURT:  Hmm.  Okay.

17          ATTORNEY PAPPY:  So I'll do my best.  Be prepared to

18  discuss them all.

19          THE COURT:  All right.  So does that sound about

20  right, Mr. Fischer?  About 240 RFPs from the plaintiffs?

21          ATTORNEY SWEARINGEN:  I think in the -- between 250

22  and 300 sounds right to me, your Honor.

23          THE COURT:  Do you intend to serve any more?

24          ATTORNEY SWEARINGEN:  The -- I anticipate that we

25  would like to but we haven't asked leave for Court to.  And

39

```
 1   the -- the time -- the deadline for written discovery has
 2   passed, so we would need to seek leave from the Court to do so.
 3           THE COURT:  Okay.  No, I -- understood.  And I'm not
 4   foreclosing that.  I just want to make sure I know where things
 5   stand now.
 6           ATTORNEY FISCHER:  A couple of questions about
 7   Monday, when we're ready, just so I understand what we should
 8   expect.
 9           I understand teeing things up as best we can, pre --
10   pre-motion practice, so we have something to talk about on
11   discovery issues.
12           With respect to the ENEs, would it be helpful for the
13   Court to see something about the -- the topics to be covered?
14   Or some further -- that's what we had discussed at the last
15   ENE, that we would be providing something to you.  I want --
16           THE COURT:  Yeah, I -- no, I think it would be.
17           Look, let me ask you all this.  I -- I set this
18   because I saw the number of discovery disputes that were coming
19   up, and I just thought it would be more efficient for us to
20   resolve them --
21           ATTORNEY FISCHER:  Right.
22           THE COURT:  -- in person.  And I do still.
23           But, frankly, if -- if we're going to be spending the
24   majority of our time on discovery issues -- which was not -- my
25   hope was to spend more time on -- on settlement-related topics,
```

1  which I do believe are much more effective in person.

2  Discovery issues, not necessarily as much.

3          I want to give some thought as to whether this should

4  be in person or -- or remote, given the time and expense for

5  you all.  Do -- it just -- I've blocked out the day.  And I

6  don't love spending all morning on Zoom.  It's just -- when we

7  can really sit down and get in a room and talk.  And my

8  preference is still oftentimes to do things in person.  But

9  I -- I want -- I want to give some additional thoughts to this.

10 So --

11          ATTORNEY PAPPY:  Judge, if you want me to have

12 decision makers, I just need to know sooner, than later, what

13 time and on what issues.

14          THE COURT:  Yeah.  And that's -- that's where I'm --

15 you know, honestly, Ms. Pappy, I don't like the idea that --

16 we're -- you know, we're still talking about what issues we're

17 even going to be talking about.  And having decision makers --

18 decision makers present -- because I do think, for example,

19 from the ADA ENE that we did, it was really helpful to have

20 representatives from the County there who knew what was going

21 on.  And I think that facilitated the discussion.  Having

22 Ms. Sanossian there was helpful.

23          I guess I'm -- I'm -- there are more discovery

24 disputes that we need to take time to resolve than I think I

25 appreciated at the time.  And I -- I don't have a good enough

1    sense, candidly, right now where we can best be spending our

2    time on settlement.

3        And the last thing I want is for you all to make a

4    trip to San Diego, and then have an unproductive discussion

5    about settlement because it's too -- it's too vague.

6        So I think -- I'm inclined to keep this in person

7    because I think we'll get more done.

8        Let me ask -- but let me ask this.

9        Mr. Fischer, do you think that we are ripe to talk

10   about the specific settlement discussions that are -- the

11   settlement issues, I should say, that were addressed in -- in

12   what you -- I think it was from September 25th, that you sent

13   to me?

14       I'm looking at what you -- your proposed topics for

15   ENE discussion --

16       ATTORNEY FISCHER:  (Indiscernible.)  Uhm, I'll say

17   less than I had hoped because I thought we would have had

18   inspected the facilities at that point.  And I think it would

19   be great for us to have that, even -- even if it's something

20   that's under a settlement privilege type of inspection;

21   limited, so we can just be talking about the same thing.

22       I'm certain that that would make things more

23   productive, both from the substance use -- on the substance use

24   topic and on the ADA topic.

25       We are more hamstrung because Ms. Sanossian hasn't

1    visited the other facilities.  So that -- that slows us down a

2    bit as well.

3                THE COURT:  Okay.

4                ATTORNEY FISCHER:  So I just -- I would like to do a

5    little bit of thinking and conferring with my co-counsel about

6    it.

7                I think getting these -- these discovery issues

8    resolved, so we kind of have a sense of where -- where things

9    are, I think, would be very useful.

10               And, Ms. Pappy, I think we could also -- if you're

11   willing, we can talk a little more about how to order the ENE,

12   just in terms of process, to make the -- the actual ENE as

13   productive as possible.  If you wanted to meet and confer, just

14   among counsel, I think we would be able to do that, too.

15               THE COURT:  Let me ask this.  Right now we are

16   starting, I think, at 9:00 a.m.

17               Would it be helpful to have a later start time, so

18   you all can fly down in the morning and not have to spend the

19   night on Sunday.

20               ATTORNEY PAPPY:  It doesn't matter to me.

21               I'm having dinner with Ms. Coleman, so (laughing) --

22               THE COURT:  Okay.

23               ATTORNEY FISCHER:  My -- if it's -- if you'll allow

24   me, I'm supposed to be back in the Bay Area that evening to

25   coach my son's first basketball practice.  So that's the

1    only --

2            ATTORNEY PAPPY:  Very important.

3            ATTORNEY FISCHER:  I can see -- I don't -- if we have

4    momentum, I do not want to -- I'll adjust.

5            THE COURT:  Okay.  So you would want to start at 9:00

6    a.m., to finish earlier?

7            ATTORNEY FISCHER:  Yeah.  And -- I don't know.  I

8    also -- let's see what progress we make this week, I guess.

9            ATTORNEY PAPPY:  And basketball is far more important

10   than baseball, Judge.  So I vote with Mr. Fischer.

11           THE COURT:  Okay.  Fair enough.

12           ATTORNEY FISCHER:  I'm sorry to do that.  I didn't

13   realize --

14           THE COURT:  No, I --

15           ATTORNEY FISCHER:  I love -- I am so appreciative

16   that you give us all day.  But I need to (indiscernible).

17           THE COURT:   I think, at the end of the day,

18   Mr. Fischer, if you're the coach and it's your team's first

19   practice, it is really important that you are there to do it.

20   And so it is no problem with me, if we are still going, if you

21   need to take off to make that practice.  That is the stuff that

22   matters.  So don't worry about that.  You'll be there for the

23   practice.

24           ATTORNEY FISCHER:  My co-counsel can certainly

25   (inaudible) as well.

1              THE COURT:  Yeah, absolutely.

2              All right.  Well, look, let's -- as I think through

3        this now, let's do keep it in person.  I think we're going to

4        make some progress.

5              What I would ask for you to do is just file something

6        with -- give me a joint status report by Friday, letting me

7        know where you want to focus for Monday.  And specifically with

8        respect to the remaining -- any discovery disputes.  Other than

9        the CIRB report, which is fully briefed.  And then where you

10       all think we can at least start talking about settlement.

11             I don't know that it makes sense for me to have

12       decision makers present, Ms. Pappy.  If you talk to Mr. Fischer

13       and you think there's some progress we can make -- I also want

14       to figure out how we're going to do that because I am going to

15       address discovery issues first, and I don't want them sitting

16       through that.

17             So I think we're probably going to be best served

18       with counsel, and having decision makers -- people with

19       knowledge -- on standby, perhaps.  But I'm going to defer to

20       you on that.

21             I don't want to order people to be there when

22       they're -- you know, we -- I don't have a good sense, as of

23       yet, how much progress we're going to make.

24             ATTORNEY PAPPY:  Okay.  Sounds good.

25             THE COURT:  All right.  And I will ask you all to

1    work off of the September 25th proposed topics, as to where you

2    think we can -- we can start talking.

3            I mean, I -- what I would like to do is figure out if

4    there is -- you know, frankly, reduced topics.  If they're --

5    if the County has implemented procedures that deal with some of

6    these topics, let's start -- let's start going through those.

7    And if we can scratch them out, like this is already good to

8    go; or how you can get to a place where the plaintiffs

9    understand that it's good to go.  If it is, great.  Then figure

10   out where do we really need to spend the time talking.  I think

11   that will actually be a good use of our time.  Because the --

12   the substance abuse issues are a big one.

13           ATTORNEY FISCHER:  We -- plaintiffs absolutely

14   welcome that, Ms. Pappy.  If there -- ENEs are -- all

15   settlement privilege.  If there's someone who can speak to, you

16   know, here's where we are on the NARCAN, and here's what it is.

17   Then we can say, all right.  We can ask a couple of questions.

18   All under settlement privilege.  And understand what can be --

19   what we still have concerns about, what can be taken off -- we

20   would welcome that.

21           ATTORNEY PAPPY:  Yeah.  I mean, some of this I have

22   communicated to you.  So let's -- let's talk through that more

23   because I -- we have given you some of this information.  So

24   maybe we can cross some of those off the list.

25           THE COURT:  I will defer to you, Ms. Pappy, when you

1    talk to Mr. Fischer and Mr. Swearingen and their colleagues.

2    If you all decide, look, the plaintiffs would like to, you

3    know, hear it directly from somebody at the County, do you

4    think there's somebody that could be there on Monday -- I'm not

5    going to order it right now because I don't know enough, and I

6    don't want to do that.  But to the extent that would be

7    helpful, you think, in really narrowing the topics that we need

8    to talk about, they're welcome to be there.  Or be available by

9    phone.

10              ATTORNEY PAPPY:  Okay.  Sounds good.

11              THE COURT:  All right.  Well, look, thank you all for

12   the time.  I look forward to speaking with you in person on

13   Monday.  We'll keep it as set for 9:00 a.m.

14              And I -- as I am looking at the calendar, I think

15   we're -- let's -- we're going to start, I believe, in -- in

16   Courtroom 3D.  And we'll decide there if we want to stay there.

17   I'll be there for the discovery issues, on the record.  And

18   then we can decide if we want to stay there for the settlement

19   issues; or if we want to go to a conference room, like we did

20   before.

21              ATTORNEY PAPPY:  Okay.  Thank you.

22              THE COURT:  You bet.  Anything else we should

23   discuss, Mr. Fischer, Mr. Swearingen?

24              ATTORNEY SWEARINGEN:  No, your Honor.

25              ATTORNEY FISCHER:  Thank you, Judge.

1              THE COURT:  You bet.  My pleasure.

2              Ms. Pappy, how about you?

3              ATTORNEY PAPPY:  No.  Thank you, your Honor.

4              THE COURT:  Okay.  Hope you all have a great weekend.

5    Look forward to seeing you next Monday.  See you soon.

6              ATTORNEY PAPPY:  Thank you.

7              ATTORNEY FISCHER:  Okay.  Take care.  Bye.

8              (Conclusion of proceedings.)

9

10                         --oOo--

11   I certify, by signing below, that the foregoing is a correct
     stenographic transcript, to the best of my ability, of the
12   digital recording of the audio proceedings had in the
     above-entitled matter this 1st day of November, 2023.  A
13   transcript without an original signature or conformed signature
     is not certified.  I further certify that the transcript fees
14   and format comply with those prescribed by the Court and the
     Judicial Conference of the United States.

15             /S/ Amanda M. LeGore

16             _____

17        AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

18

19

20

21

22

23

24

25