GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone:  (510) 806-7366
Facsimile:   (510) 694-6314
ajf@aaronfischerlaw.com

(*additional counsel on following page*)

Attorneys for Plaintiffs and the Certified Subclass

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No. 3:20-cv-00406-AJB-DDL <br><br> **JOINT STATUS REPORT** <br><br> Judge: Hon. Anthony J. Battaglia <br> Mag. Judge: Hon. David D. Leshner <br><br> Trial Date:  None Set |

1  (*counsel continued from preceding page*)

2  CHRISTOPHER M. YOUNG – 163319
   ISABELLA NEAL – 328323
3  OLIVER KIEFER – 332830
   DLA PIPER LLP (US)
4  401 B Street, Suite 1700
   San Diego, California  92101-4297
5  Telephone:   (619) 699-2700
   Facsimile:   (619) 699-2701
6  Email:       christopher.young@dlapiper.com
                isabella.neal@dlapiper.com
7                oliver.kiefer@dlapiper.com

8  Attorneys for Plaintiffs and the Certified Subclass

9  SUSAN E. COLEMAN (SBN 171832)
   E-mail: scoleman@bwslaw.com
10 BURKE, WILLIAMS & SORENSEN, LLP
   501 West Broadway, Suite 1600
11 San Diego, California 92101-8474
   Tel: 619.814.5800 Fax: 619.814.6799

12
   ELIZABETH M. PAPPY (SBN 157069)
13 E-mail: epappy@bwslaw.com
   BURKE, WILLIAMS & SORENSEN, LLP
14 60 South Market Street, Suite 1000
   San Jose, California 95113-2336
15 Tel: 408.606.6300 Fax: 408.606.6333

16 Attorneys for Defendants

17

18

19

20

21

22

23

24

25

26

27

28

# JOINT STATUS REPORT

Plaintiffs Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner (collectively "Plaintiffs") and Defendants San Diego County Sheriff's Department, County of San Diego, and San Diego County Probation Department (collectively "Defendants") submit this joint status report to update the Court regarding the parties' disputes with respect to unresolved discovery issues in the above-referenced case.

## I.    REQUESTS FOR PRODUCTION OF DOCUMENTS

### A.    ESI Search Terms and Document Review

**Plaintiffs' Position**:  Plaintiffs believe the parties are at an impasse on the ESI issue and require further Court intervention.  Following the November 6, 2023 discovery conference, Defendants would not agree to participate in a meet and confer call on ESI (or any other discovery issues) until yesterday, November 16, 2023.  Defendants still have not provided a hit report containing any de-duped information, either by custodian or by search term—a necessary precursor to the iterative narrowing process to identify the set of documents that will be manually reviewed.  Although Defendants assert below that there are 7,000,000 items for review, that number is not de-deduped (and therefore not instructive), as Defendants have conceded during meet and confer calls.  Despite representing on July 10, 2023 that they would collect all data and provide a search term report—including by using defense counsel's document management system if necessary—Defendants are now refusing to use such an e-discovery vendor and claim that it will take between 4 and 5 months even to send the relevant data to a vendor.  Plaintiffs wish to bring a motion to compel the ESI process and production.

**Defendants' Position**:

The parties are at an impasse.  The search of the 77 identified custodian

emails applying all 86 search terms generated 7,000,000 items.  If one assumes 30 seconds to open and review each item, it would take 20 years to review them all if someone spent 8 hours every day of the year reviewing them.  Using a 15 second time for review, it would only take 10 years. There was no "ESI" search of JIMS, Techcare or Offender 360, or the PCMS system at Probation.  Searches of the scope requested of will take months to run, months to upload to an outside processor and at a cost of $1,025,000 (from defense counsel's outside ESI service) at least (this is only for the 100 Terabytes in U:\ and V:\ drives only.  Plaintiffs have refused to pare down the custodian or search term list in any way.

### B.    Plaintiffs' Requests for Production Sets 3 and 4

Plaintiffs served their third set of RFPs on June 15, 2023.  Plaintiffs served their fourth set of RFPs on August 16, 2023.  Defendants assert that they have produced the majority of responsive documents with a few categories remaining to be produced pursuant to agreement; Plaintiffs disagree, in part based on the ESI concerns raised above. Plaintiffs seek to reserve their right to challenge the completeness of the above-referenced document productions.  The parties have agreed that Defendants will amend their written responses to Plaintiffs' requests as required following completed productions.  Plaintiffs seek to reserve their rights to raise with the Court any issues that arise with respect to amendment.

The parties are continuing to meet and confer on the following document requests in RFP Sets 3 and 4:

### 1.    RFP No. 28 (Sheriff's memoranda):

Plaintiffs' Position:   On August 24, 2023, Plaintiffs requested that Defendants search for "memoranda," defined as "correspondence from Command Staff at the Sheriff's Department to all Detention Services Bureau staff, supervisors, and/or managers, or to all staff, supervisors, and/or managers of a particular division, as well as captain's directives."  Defendants have not yet provided an update regarding the number of documents that hit on those parameters.  On November 1, 2023,

Defendants agreed to search for "captain's directives," as described in Plaintiffs' August 24 letter.

<u>Defendants' Position</u>:   Plaintiffs did not agree to a specific narrowing of the search terms until a few weeks ago.  Based upon the specific narrowing ("memo" and "Captain's directive" only for each of the subcategories in the request).  The search using "memo" and "captains directive" is being rerun.  The overbroad narrowing provided by Plaintiffs in August was objected to almost immediately and there was never an agreement that the alleged narrowing was in fact narrow.

**2.    RFP Nos. 86 and 87 (certified subclass custody and medical records):**  The parties are working on a compromise as to these records as well as other custody and medical records requested by RFP Set No. 5.

## C.    Plaintiffs' Requests for Production Set 5

<u>Plaintiffs' Position</u>

In addition to ESI, as discussed above, the parties have agreed that some quantity of individual class member medical records and custody files, as well as database reports (*e.g.*, from the JIMS database) will be produced.  The parties are still negotiating the parameters of that production.

The parties agreed that additional standalone documents, *e.g.*, reports, audits, logs, related to various topics will be searched for and responsive documents produced.  In particular, Plaintiffs understood from the November 16, 2023 meet and confer that Defendants had agreed to conducting additional searches for documents responsive to the following Request Nos.:  97, 99, 101, 104, 105, 106, 109, 111, 113, 114, 119, 120, 121, 122, 125, 127, 128, 129, 130, 131, 138, 141, 146, 150, 151, 153, 157, 158, 159, 161, 162, 164, 165, 172, 173, 174, 175, 176, 182, 183, 191, 192, 196, 222, 223, 224, 225, 226, 227, 233, and 236.

Plaintiffs also understood that the parties would continue to meet and confer regarding the following Request Nos.:  98, 100, 143, 149, 156, 166, 167, 171, 180, 185, 203, 204, 205, 206, 207, 208, 213, 214, 215, 216, 217, 218, 221, 238, 239, 240,

241, 242, 244, 245, 246, and 247.

The parties are at an impasse regarding the following Request Nos.:  102, 103, 139, 197, 200, 201, 202, 211, 212, and 243.  Plaintiffs wish to bring a motion to compel regarding these requests.

Plaintiffs seek to reserve their right to challenge the completeness of the above-referenced document productions.  Plaintiffs understand that Defendants will amend their written responses to Plaintiffs' requests as required following completed productions.  Plaintiffs reserve their rights to raise with the Court any issues that arise with respect to amendment.

**Defendants' Position:**

Defendants did not make the agreements represented above. Defendants' objected and refused to produce documents in response to many of the 159 document requests in the 5th Set of Requests for Production served by Plaintiffs because they were duplicative of prior requests, asked for documents spanning the entire history of the jail facilities in San Diego County, and sought items like medical records and custody files for every incarcerated person at the facilities since they were built.

Throughout the 3.5 hours of meet and confer phone call, Plaintiffs went through various requests where Defendants had objected and refused to produce and Defendants agreed to see if there was a very narrow subset of the requested documents with the narrow subset being identified by Plaintiffs in the phone call. Defendants agreed that *if and only if* it would resolve all disputes as to the entire overbroad and harassing request, the requested narrow subset of documents or a document would be produced.  There was no wholesale agreement as Plaintiffs represent to search and produce and allow Plaintiffs to continue pressing for more documents far in excess of what is appropriate, necessary and proportionate to the case.

Plaintiffs' counsel agreed to send an email listing each request discussed the

narrowed category discussed.  That was not provided and the list of items at issue as alleged above is incorrect based upon Defendants' counsel's notes.

In addition, Defendants do not agree to the filing of a motion to compel at this stage.  The request to produce in total included 159 requests in addition to the prior 88 requests and the separate 56 document requests in Inspection notices.  Resolution of other of the 159 requests may lead to resolution of the ones the parties are at an impasse on.  In addition, no documents have yet been produced in response to the request and they will begin being produced in a rolling production shortly.

### D.    Privilege Logs

**Plaintiffs' Position**:  Plaintiffs maintain that a privilege log is required for all responsive documents for which Defendants assert privilege.  Defendants have refused to produce a privilege log for documents withheld on the basis of privilege that were created during this litigation by non-lawyers who are not seeking legal advice—including documents referenced in Defendants' filings in this litigation. Plaintiffs believe the parties are at an impasse, and seek an opportunity for briefing on this issue.

### Defendants' Position:

Plaintiffs seek a privilege log for documents created in response to attorney requests and the inter-department communications sending those attorney requests. Plaintiffs are not entitled to any such information and not offered any legal authority to support the claim.

## II.    INTERROGATORIES

### A.    Plaintiffs' Interrogatories Set 1

Plaintiffs served their First Set of Interrogatories on June 15, 2023. Defendants served responses on August 14, 2023 and served amended responses on August 30, 2023.  On November 9, 2023, the Court entered the Amended Joint Motion for Order Regarding Production of Documents and Responses to Interrogatories Subject to Protective Order (Dkt. 443).  Defendants have agreed to

further amend their responses to Plaintiffs' First Set of Interrogatories by November 30, 2023 as necessary.  Plaintiffs seek to reserve their rights to raise with the Court any issues that arise with respect to amendment.

**B.    Plaintiffs' Interrogatories Set 2**

Plaintiffs served their Second Set of Interrogatories on September 1, 2023.  Defendants served responses on November 9, 2023.  The parties are at an impasse as to the following interrogatory:

**1.    Interrogatory No. 24 (custody and health care audits)**

Plaintiffs' Position:  Interrogatory No. 24 asks Defendants to "[i]dentify all audits relating to custody operations and HEALTH CARE services at the JAIL, from January 1, 2020 to the present."  Defendants refused to respond, asserting that the "Third Amended Complaint addresses current conditions and not what audits or findings were made almost four years ago."  Defendants also later objected to the scope of the issues covered by the interrogatory.  Plaintiffs are amenable to limiting the interrogatory to audits relating to issues raised in the Third Amended Complaint.  Plaintiffs are entitled to a response identifying such audits during the requested time period because their findings, and Defendants' responses to any such findings, are directly relevant to the claims in this case.

Defendants' Position:
The interrogatory seeks audits without reference to the specific claims being made in the Third Amended Complaint.  When asked to limit the request to specific issues in the complaint, Plaintiffs refused.  The request also seeks documents going back 4 years.  The issue in this case is current conditions and while Defendants advised Plaintiffs that going back 6 months to a year would have been agreeable with the narrowing and identification of audits specific to the issues in the case, Plaintiffs refused.

The parties are continuing to meet and confer on Interrogatories No. 23 and 25.  Interrogatory No. 23 seeks information about Defendants' quality assurance and/or quality improvement processes.  Defendants' response lists the specific bates numbers of the documents produced in response to RFP #41.  Plaintiffs seek a

response to the interrogatory identifying the relevant quality assurance and/or quality improvement processes.  Plaintiffs agreed to provide Defendants with a list of the documents produced in response to RFP #41 and Defendants have agreed to amend the response by inserting that list into the interrogatory.

Interrogatory No. 25 seeks custody and classification information for persons who are and recently have been incarcerated in the Jail.  Plaintiffs are amenable to narrowing the time period for which they seek information.  Defendants have agreed to look into whether they can generate a report with the requested information.  The parties reserve their rights to raise with the Court any issues that arise with respect to these interrogatories.

## III.    INSPECTIONS

Plaintiffs' Experts Speaking with Staff about Orientation Issues and Basic Operations.  The parties agree that the issue should be briefed and decided by the Court.

Plaintiffs' Experts Speaking with Incarcerated People Briefly During Inspection.  The parties agree that the issue should be briefed and decided by the Court.

Plaintiffs' Experts Observing Intake and General Delivery of Health Care (with Class Members' Consent), and Routine Programs/Activities within Jail Facilities.  The parties agree that the issue should be briefed and decided by the Court.

Documents Requested in Plaintiffs' Inspection Notices.  The parties agree that the issue should be briefed and decided by the Court, and that most of the document requests will likely turn on whether the Court permits experts to speak with staff and incarcerated people.

Photos to be Taken During the Inspections.  The parties are discussing an approach to this topic proposed by Plaintiffs on November 16 and being considered by Defendants. *See* Exhibit A.  The parties request that this issue be briefed if not

resolved by the November 21, 2023 discovery conference.

Timing and Logistics of Inspections.

**Plaintiffs' Position**: Defendants have agreed to allow for two full-day inspections of each jail facility to be inspected as to all facilities except SDCJ and Rock Mountain, and to produce floor plans of the facilities in advance of the inspections (Plaintiffs' understood from counsel's representations at the October 30, 2023 discovery conference that they would already have been produced by now). Defendants have also agreed that Central Jail can be inspected except by Plaintiffs' ADA expert who will do so later in accordance with the ADA Order. The parties agree that Plaintiffs' ADA expert will tour facilities in the near-term, with dates to be determined soon. One or two other Plaintiffs' experts may join the inspection if schedules allow. Plaintiffs' counsel is working diligently to determine their experts' availability and will endeavor to work within the two-inspections-per-facility framework but may require additional inspection dates based on any imposed cap on the number of participants, experts' availability, etc. Further meet-and-confer will be needed on the issues of dates, number of participants, and other logistical matters.

**Defendants' Position**:

Inspection of Tablets and JIMS. Plaintiffs request the opportunity to inspect and observe these crucial means of communication and tracking. Defendants have offered to provide screen shots instead. The parties request Court intervention.

## IV.   DEPOSITIONS

On July 20, 2023, Plaintiffs served notices of 30(b)(6) depositions of the Sheriff's Department, to commence on September 25, 2023. Pursuant to party agreement, the commencement date has been extended twice, to November 13, 2023, then to December 4, 2023, and the parties have discussed pushing them to a later date after the substantial completion of document productions. The parties

1  have agreed in principle to designate a certain number of hours for all 30(b)(6)

2  depositions, with Plaintiffs choosing how to allocate the time among witnesses.  The

3  parties request an opportunity to brief the Court on the following issues:

4      1.  The list of subject matter topics for the depositions.

5      2.  The total number of hours for the depositions.

6      3.  Whether the definitions for "DOCUMENTS" and

7  "COMMUNICATIONS" may remain in the definitions.

8  **<u>Plaintiffs' Position</u>**:  Plaintiffs do not agree to Defendants' re-rewriting of the

9  noticed deposition topics and instead propose the attached list of topics that are

10  based on the break-downs in "Defendants' list" and correspond to the Third

11  Amended Complaint ("TAC").  *See* Exhibit B.  Given the number of claims and the

12  complexity of this case (8 constitutional and statutory claims in the TAC with at

13  least 48 remaining sub-claims (*see* TAC's Table of Contents), spread across 7

14  different Jail facilities), Plaintiffs believe a total of 93 hours is reasonably necessary

15  to cover all topics in the 30(b)(6) depositions.  Plaintiffs' definitions for

16  "DOCUMENTS" and "COMMUNICATIONS" are referential for how Plaintiffs'

17  counsel will refer to the definition of those words at the depositions; Plaintiffs'

18  noticed deposition topics do not include "DOCUMENTS" and only one topic

19  includes "COMMUNICATIONS" — and as topic 8 of Exhibit A shows, Plaintiffs

20  use that definition to indicate what types of communication methods Defendants

21  utilize in relation to in-custody deaths.  Plaintiffs are extremely concerned that they

22  will be prejudiced by 1) Defendants not producing all responsive ESI and

23  documents by the cutoff-date of December 22, 2023, and 2) not having sufficient

24  time to review documents and prepare for depositions in advance of the February

25  16, 2024 fact-discovery deadline.  Plaintiffs intend to conduct the 30(b)(6)

26  depositions before the fact-discovery deadline and request keeping open the

27  depositions to address relevant documents produced by Defendants if and to the

28  extent that such documents are produced after the December 22, 2023 cut-off date.

1    **Defendants' Position**:

2        Defendants' rewritten list of concise topics are attached hereto as Exhibit C.

3    Included at the bottom of the list is an identification of witnesses and the topics they

4    will be testifying about.  Given the number of witnesses who will cover multiple

5    topics and the topics themselves, in terms of complexity or simplicity, Defendants

6    request a limit of 40 hours of deposition time to be allocated as Plaintiffs deem fit

7    across the categories.  A demonstration of Plaintiffs unreasonable time estimate is

8    the time allotted to health care and in custody deaths, totaling 19 hours, 5 hours as to

9    access to professionals in visits, mail, and conveyance of phone messages (more

10   likely 1 hour or less).  Defendants do not agree to extend the fact discovery

11   deadline.  The issue of proportionality in this case is looming large.  Plaintiffs have

12   repeatedly represented that their experts need finite information to render opinions

13   which contradicts requests such as a demand that Defendants search 7,000,000

14   documents for possibly responsive documents and 93 hours of deposition.

15   Defendants maintain the position that the definitions "COMMUNICATIONS" and

16   "DOCUMENTS" be removed from the notices.  They are applicable to document

17   production requests and not depositions and will lead to disputes about what exactly

18   the witnesses are supposed to know as it relates to the definitions and placed

19   Defendants in an unfair position because they are not "categories" and have nothing

20   to do with the categories.

21

22                                      Respectfully submitted,

23   DATED:  November 17, 2023     ROSEN BIEN GALVAN & GRUNFELD LLP

24

25                                   By: */s/ Van Swearingen*

26                                     Van Swearingen

27                                   Attorneys for Plaintiffs and the
     Certified Subclass

28

1  DATED:  November 17, 2023         BURKE, WILLIAMS & SORENSEN, LLP

2                                    By:  */s/ Elizabeth M. Pappy*

3                                         Elizabeth M. Pappy

4                                    Attorneys for Defendants

5

6                          **SIGNATURE CERTIFICATION**

7          Pursuant to the Court's Electronic Case Filings Procedures Manual

8  Section 2(f)(4), I certify that I have obtained consent of all signatories to the

9  electronic filings of the foregoing document.

10

11

12

13  DATED:  November 17, 2023         */s/ Van Swearingen*

14                                    Van Swearingen

# Exhibit A

**From:** Aaron Fischer <ajf@aaronfischerlaw.com>
**Sent:** Thursday, November 16, 2023 6:24 PM
**To:** Pappy, Elizabeth M. <EPappy@bwslaw.com>
**Cc:** Coleman, Susan E. <SColeman@bwslaw.com>; Gay C. Grunfeld <GGrunfeld@rbgg.com>; Van Swearingen <VSwearingen@rbgg.com>; Priyah Kaul <pkaul@rbgg.com>; Hannah Chartoff <HChartoff@rbgg.com>
**Subject:** Dunsmore inspections - photos and other inspection/JSR matters

[EXTERNAL MESSAGE NOTICE]

Beth,

Thanks for the conversation today.

We've spent some time trying to write up some language consistent with our discussion on the inspection photos piece, to see if we can reach agreement there. We estimate the process we are proposing will take 10 to 20 minutes at the end of each inspection day. Give it a read and let us know if this works for Defendants. If so, we will include this passage in the joint status report due tomorrow and remove the item from the Dispute column:

> **Photos to be Taken During the Inspections.** One person from Plaintiffs' group will be permitted to take photos during each inspection day, on a digital camera to be brought by Plaintiffs. Plaintiffs will endeavor to avoid any photos with people's faces or other identifying features. If such photos are taken, they will be redacted or blurred. Immediately at the end of the inspection (i.e., same day), the photos will be uploaded to a computer with both parties present. The parties will confirm the number and integrity of the photos taken, and note the range of photos (by number) for each location within the facility. The photos will then be transferred to an external drive (e.g., USB thumb drive) (the "Backup Drive"), which will be stored in a sealed envelope to be held by the County or its legal counsel. Within three (3) calendar days of the inspection, Defendants will review the photos, remove any photos with content that compromises facility security, and transmit the remaining photos (in same order and with same numbering) to Plaintiffs' counsel via secure electronic file-share. Plaintiffs will review those photos and inform Defendants of any corrupted files and/or any concerns as to removed photos. The parties will meet and confer and work to resolve any issues. Defendants will not open or dispose of the Backup Drive until all issues regarding the photos are confirmed to be resolved by the parties, except consistent with post-tour meet and confer or court order.

An issue that we didn't cover today and still needs to get resolved is our request to inspect the Jail Inmate Management System (JIMS) and the Tablets provided to class members. In previous discussions, Defendants' counsel has rejected this request and offered to provide some "screenshots." We expect that this approach will not provide sufficient functionality/information but are willing to take a look. When can we expect to see those? We

need to include this issue in the Joint Status Report, and want to make sure that we are
presenting the current state of things to the court.

We have one other issue that has not been discussed regarding inspections:  We would like to
confirm your agreement not to speak with our clients during any site visits by Defendants'
expert(s).  Please confirm.

It would be helpful to have your feedback on the above Friday morning, so that we can get the
Joint Status Report prepared. We expect to circulate a full draft report for your review.

Sincerely,
Aaron


Aaron J. Fischer
(he/him)




**Law Office of Aaron J. Fischer**
1400 Shattuck Avenue, Ste. 12, #344
Berkeley CA 94709
www.aaronfischerlaw.com
Phone: (510) 806-7366
Fax:    (510) 694-6314
*Email: ajf@aaronfischerlaw.com*

PRIVILEGE AND CONFIDENTIALITY NOTICE
This electronic mail message, and any documents, files, or previous e-mail transmissions
attached to or forwarded with it, may contain information that is privileged, confidential,
and/or otherwise legally protected and exempt from disclosure.  Unless this message is
addressed to you or you are authorized to receive it for the person to whom it is addressed, any
disclosure, copying, distribution, or other use of the information contained herein is strictly
prohibited. If you have received this electronic mail message in error, please destroy the
message and any attachments immediately and notify the sender by reply e-mail to
ajf@aaronfischerlaw.com.

# Exhibit B

| SECOND PMK DEPOSITION MEET AND CONFER CATEGORY LIST | | |
|---|---|---|
| Noticed Issue Number(s) | Subject | Hours |
| 1.a. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO HEALTH CARE AT THE JAIL, including RELATING TO custody staff decisions affecting the delivery of HEALTH CARE; screening and intake processes; HEALTH CARE for people entering the JAIL under the influence of alcohol and drugs; continuing HEALTH CARE medications and treatment for people arriving at the JAIL; provision of ways to alert HEALTH CARE staff about medical needs; maintenance of medical records; contracts with community HEALTH CARE providers; confidential settings for the provision of HEALTH CARE; diagnostic care and referrals to outside specialists; the provision of eyeglasses; follow-up medical treatment; discharge planning services and medication; quality assurance/quality improvement processes; and dental care (TAC § I. B-O & § VI). | 13 |
| 1.b. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO hiring and vacancy levels of HEALTH CARE STAFF (TAC § I. A). | 2 |
| 2 a. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO MENTAL HEALTH CARE AT THE JAIL, including RELATING TO identification and tracking of people in need of MENTAL HEALTH CARE; custody staff decisions affecting the delivery of MENTAL HEATH CARE; continuing MENTAL HEATH CARE medications and treatment for people arriving at the Jail; provision of timely access to MENTAL HEATH CARE; providing Mental Health Treatment to people with ongoing mental illness; provision of MENTAL HEATH CARE to people with acute MENTAL HEATH CARE needs; housing placements; MENTAL HEATH CARE discharge planning and resources (TAC § II. A, C-F, L) | 7 |

1

| SECOND PMK DEPOSITION MEET AND CONFER CATEGORY LIST | | |
|---|---|---|
| **Noticed Issue Number(s)** | **Subject** | **Hours** |
| 2 b. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO MENTAL HEALTH CARE AT THE JAIL for people at risk of suicide, including as to their housing identification, treatment, tracking, supervision, and monitoring; and the provision of follow-up care to people at risk of suicide (TAC § II. H & I). | 3 |
| 2 c. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO the placement of INCARCERATED PERSONS in EOH, PSU, SAFETY CELLS, or other restrictive housing (TAC § II. C, H,  J, K). | 2 |
| 2 d. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO confidential settings for the provision of MENTAL HEALTH CARE (TAC § II. G). | 1 |
| 2 e. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO hiring and vacancy levels of MENTAL HEALTH CARE STAFF (TAC § II. B). | 2 |
| 3 a. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO accessibility of facilities, housing, programs, services, activities, effective communication, reasonable accommodations and assistive devices by facility for INCARCERATED PERSONS with DISABILITIES (other than accessibility of facilities and housing for people with mobility DISABILITIES at SDCJ), including as to the identification and tracking of people DISABILITIES; the accommodation of people with substance use disorders; the provision of assistive devices; accessibility of programs, services, and facilities; requesting disability accommodations; and provision of accommodations for DISABILITY-related needs (TAC § III. A-G). | 4 |
| 3 b. | Physical, structural, and design plans RELATING TO the accessibility of facilities, housing, programs, services, and | 4 |

2

| SECOND PMK DEPOSITION MEET AND CONFER CATEGORY LIST | | |
|---|---|---|
| Noticed Issue Number(s) | Subject | Hours |
| | activities for all facilities for INCARCERATED PERSONS with DISABILITIES other than hearing DISABILITIES (TAC § III. E). | |
| 3 c. | Programs, services, and activities for INCARCERATED PERSONS with DISABILITIES except as to SDCJ. | 2 |
| 3 d. | Effective communication (except as to hearing impairments), reasonable accommodations, and assistive devices for INCARCERATED PERSONS with DISABILITIES other than hearing DISABILITIES (TAC § III. B, D, F-G). | 2 |
| 4 a. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO drug overdoses, including overdose prevention, treatments for substance use disorders, medication assisted treatment ("MAT"), and Narcan accessibility (TAC § I. D, E & § V. B). | 4 |
| 4 b. | All POLICIES, PROCEDURES AND PRACTICES, RELATING TO drug overdose DEATHS (TAC § I. D, E & § V. B). | 1 |
| 4 c. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO the functionality and use of body scanners, and drug and contraband interdiction at the JAIL (TAC § V. B). | 3 |
| 5 a. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO fights and other violence, including those related to classification and housing assignment policies (TAC § V. A). | 3 |
| 5 b. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO fights and other violence, including those related to video and audio surveillance and body-worn cameras and footage from the cameras and the locations, | 3 |

| SECOND PMK DEPOSITION MEET AND CONFER CATEGORY LIST | | |
|---|---|---|
| Noticed Issue Number(s) | Subject | Hours |
| | functionality, testing, and repair/replacement of such video and audio surveillance systems (TAC § C). | |
| 6 a. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO safety checks and staff response to emergencies (TAC § C, D). | 3 |
| 6 b. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO the locations, functionality, testing, and repair/replacement of emergency intercom systems, including buttons or systems used by INCARCERATED PERSONS to notify EMPLOYEES of emergencies, at the JAIL (TAC § C, D). | 3 |
| 7. | All POLICIES, PROCEDURES AND PRACTICES, RELATING TO DEATHS at the JAIL, including prevention attempts and mortality reviews (TAC § I. O ). | 3 |
| 8. | All DEATHS of INCARCERATED PERSONS since January 1, 2021 and how JAIL EMPLOYEES use COMMUNICATIONS RELATING TO DEATHS of INCARCERATED PERSONS since January 1, 2021 (TAC). | 6 |
| 9. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO the safety and security of INCARCERATED PERSONS (TAC § V). | 1 |
| 10. | All POLICIES, PROCEDURES AND PRACTICES and physical, structural, and design plans RELATING TO cleanliness and environmental conditions at the JAIL, including vermin and other infestations, mold, sewage backups and spread, cleaning and laundry schedules and protocols, and plumbing and electrical hazards (TAC § IV. A-C). | 4 |

| SECOND PMK DEPOSITION MEET AND CONFER CATEGORY LIST | | |
|---|---|---|
| Noticed Issue Number(s) | Subject | Hours |
| 11. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO the INCARCERATED PERSONS' access to their counsel and to the courts, including legal mail, confidential phone calls and attorney call backs, professional visiting spaces, legal forms, and library access (TAC § VIII. A-B). | 5 |
| 12. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO alternatives to incarceration and reentry programming at the JAIL (TAC § VII. B, C, D). | 5 |
| 13. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO racial classification and allegations of racial discrimination at the JAIL (TAC § VII. D). | 3 |
| 14. | All POLICIES, PROCEDURES AND PRACTICES RELATING TO record retention and document systems and databases at the JAIL (TAC). | 4 |

# Exhibit C

## <u>EXHIBIT B – DEFENDANTS' PROPOSED CATEGORIES</u>

### <u>SECOND PMK DEPOSITION</u>

1.a.   POLICIES, PROCEDURES AND PRACTICES, RELATING TO HEALTH CARE AT THE JAIL.

1.b.   POLICIES, PROCEDURES AND PRACTICES, RELATING TO hiring and vacancy levels of HEALTH CARE STAFF.

2 a.   POLICIES, PROCEDURES AND PRACTICES, RELATING TO MENTAL HEALTH CARE AT THE JAIL

2 b.   POLICIES, PROCEDURES AND PRACTICES, RELATING TO MENTAL HEALTH CARE AT THE JAIL limited to suicide prevention.

2 c.   POLICIES, PROCEDURES AND PRACTICES, RELATING TO the placement of INCARCERATED PERSONS in EOH, PSU, SAFETY CELLS, or other restrictive housing.

2 d.   POLICIES, PROCEDURES AND PRACTICES, RELATING TO confidential settings for the provision of MENTAL HEALTH CARE.

2 e.   POLICIES, PROCEDURES AND PRACTICES, RELATING TO hiring and vacancy levels of MENTAL HEALTH CARE STAFF.

3 a.   Green Sheets RELATING TO accessibility of facilities, housing, programs, services, activities, effective communication, reasonable accommodations and assistive devices by facility other than SDCJ.

3 b.   Physical, structural, and design plans RELATING TO the accessibility of facilities and housing for all facilities except SDCJ for INCARCERATED PERSONS with DISABILITIES other than hearing impairments.

3 c.   Programs, services, and activities, for INCARCERATED PERSONS with DISABILITIES except as to SDCJ.

3 d.   Effective communication (except as to hearing impairments), reasonable accommodations, and assistive devices for INCARCERATED PERSONS with DISABILITIES other than hearing impairments.

4 a.   POLICIES, PROCEDURES AND PRACTICES, RELATING TO prevention of drug overdoses, including overdose prevention treatments for substance use disorders, medication assisted treatment ("MAT"), and Narcan accessibility.

4 b.   POLICIES, PROCEDURES AND PRACTICES, RELATING TO drug overdose DEATHS.

4 c.   POLICIES, PROCEDURES AND PRACTICES, RELATING TO the functionality and use of body scanners, and drug and contraband interdiction at the JAIL.

5 a.   POLICIES, PROCEDURES AND PRACTICES, to prevent fights and violence

5 b.   A separate category/witness if appropriate, as to witness identification in fights and violence situations, the use of video and audio surveillance and body-worn cameras, as a means to prevent said violence and/or as a way to capture said violence.

6 a.   POLICIES, PROCEDURES AND PRACTICES, RELATING TO safety checks and staff response to emergencies.

6 b.   POLICIES, PROCEDURES AND PRACTICES, RELATING TO the locations, functionality, testing, and repair/replacement of emergency intercom systems, including buttons or systems used by INCARCERATED PERSONS to notify EMPLOYEES of emergencies, at the JAIL

7.   POLICIES, PROCEDURES AND PRACTICES, RELATING TO investigations and mortality reviews after the death of an INCARCERATED PERSON.

8.   DEATHS of INCARCERATED PERSONS since January 1, 2021 from the medical department only because it is unclear what other information other than medical information is being sought.  The claims made in the Third Amended Complaint (TAC) relate to alleged inadequate medical care resulting in deaths.

9. All POLICIES, PROCEDURES AND PRACTICES, RELATING TO the safety and security of INCARCERATED PERSONS.

10. POLICIES, PROCEDURES AND PRACTICES, RELATING TO cleanliness and environmental conditions at the JAIL, including vermin and other infestations, mold, sewage backups and spread, cleaning and laundry schedules and protocols, and plumbing and electrical hazards.

11. All POLICIES, PROCEDURES AND PRACTICES, RELATING TO the INCARCERATED PERSONS' access to their counsel and to the courts, including legal mail, confidential phone calls and attorney call backs, professional visiting spaces, legal forms, and library access.

12. All POLICIES, PROCEDURES AND PRACTICES, RELATING TO alternatives to incarceration and reentry programming at the JAIL.

13. All POLICIES, PROCEDURES AND PRACTICES, RELATING TO racial classification and allegations of racial discrimination at the JAIL.

14. All POLICIES, PROCEDURES AND PRACTICES, RELATING TO record retention and document systems and databases at the JAIL.

Category breakdown by witness:

Jon Montgomery:  1.a., 8

Michael Alvarado: 1b, 2e

Melissa Quiroz:  2a, 2b, 2c, 2d

One witness for all; as yet to be identified: 3a, 4a, 5b, 10, 11

Scott Bennett: 3b, 6b, 10

Livian Cole: 3b, 3c, 3d

Shane or Stefan: 4b

Stefan:  7

Brenden Bourgeois: 4c

Ofelia Rodriguez: 5a, 9, 13

Michelle Aguinaldo: 10

Chris Buchanan: 12

Patricia Ceballos: 12

Ruben Medina: 13

David Blackwell: 14

Christopher Hodgkins: 14