1          UNITED STATES DISTRICT COURT

2        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3   DARRYL DUNSMORE, ERNEST          )
    ARCHULETA, ANTHONY EDWARDS, REANNA)
4   LEVY, JOSUE LOPEZ, CHRISTOPHER    )
    NELSON, CHRISTOPHER NORWOOD, and  )
5   LAURA ZOERNER, on behalf of       )
    themselves and all others         )
6   similarly situated,               )
                                      )   No. 20-CV-00406-AJB-DDL
7            Plaintiffs,              )
                                      )
8   v.                                )   November 21, 2023.
                                      )
9   SAN DIEGO COUNTY SHERIFF'S        )
    DEPARTMENT; COUNTY OF SAN DIEGO;  )
10  CORRECTIONAL HEALTHCARE PARTNERS, )
    INC.; LIBERTY HEALTHCARE, INC.;   )
11  MID-AMERICA HEALTH, INC.; LOGAN   )
    HAAK, M.D., INC.; SAN DIEGO COUNTY)
12  PROBATION DEPARTMENT, and DOES 1  )
    to 20 inclusive,                  )
13                                    )
             Defendants.              )
14  _____)   San Diego, California

15

    TRANSCRIPT OF DIGITALLY RECORDED VIDEOCONFERENCED PROCEEDINGS
16                  (Discovery Conference)

17

18      BEFORE THE HONORABLE DAVID D. LESHNER, MAGISTRATE JUDGE

19

20

21

22

23  COURT REPORTER:          AMANDA M. LeGORE
                             RDR, CRR, CRC, FCRR, CACSR
24                           U.S. District Court
                             333 West Broadway, Suite 420
25                           San Diego, CA 92101
                             amanda_legore@casd.uscourts.gov

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:        RICHARD VAN SWEARINGEN
                                HANNAH CHARTOFF
 3                              Rosen Bien Galvan & Grunfeld LLP
                                101 Mission Street, Sixth Floor
 4                              San Francisco, CA  94105-1738
                                (415)433-6830
 5                              vswearingen@rbgg.com
                                hchartoff@rbgg.com
 6
                                AARON FISCHER
 7                              Law Offices of Aaron Fischer
                                1400 Shattuck Avenue, Suite 12 - #344
 8                              Berkeley, CA  94709
                                (510)806-7366
 9                              ajf@aaronfischerlaw.com

10

11
     FOR DEFENDANT COUNTY OF
12   SAN DIEGO:                 ELIZABETH PAPPY
                                Burke Williams & Sorenson LLP
13                              501 W. Broadway, Suite 1600
                                San Diego, CA  92101
14                              (619)814-5800
                                epappy@@bwslaw.com
15

16

17

18                                    -0-

19

20

21

22

23

24

25
```

1              (Tuesday, November 21, 2023)

2

3                    P R O C E E D I N G S

4

5         THE COURT:  All right.  Good afternoon, everyone.

6         This is Dunsmore, et al., versus San Diego County

7    Sheriff's Department, et al., Case Number 20-CV-406.

8         We are on calendar for a discovery conference.

9         May I have appearances from counsel, beginning with

10   the plaintiffs.

11        ATTORNEY SWEARINGEN:  Van Swearingen for plaintiffs.

12        ATTORNEY CHARTOFF:  -- Chartoff for plaintiffs.

13        ATTORNEY FISCHER:  Aaron Fischer for plaintiffs.

14   Good afternoon.

15        THE COURT:  All right.  Good afternoon to you all.

16        ATTORNEY PAPPY:  Elizabeth Pappy for defendants.

17        THE COURT:  Thanks, Ms. Pappy.  Good afternoon to you

18   as well.

19        In preparation for today's hearing, I reviewed the

20   order that I issued on November 8th, following our last

21   discovery conference.  That's docket 441.  And I also reviewed

22   the parties' joint status report.  That's docket 450.

23        I am prepared to give you all some directives for how

24   we're going to resolve your discovery issues.  Let -- let me

25   ask this, though.

1            I guess, starting with Ms. Pappy -- hang on real

2  quick.

3            (Pause.)

4            THE COURT:  Okay.  Beginning with Ms. Pappy, I'm

5  looking at my order, which is docket number 441.  Were all

6  responses to the written discovery, RFPs, interrogatories, and

7  requests for admission served in a timely manner by November

8  10th?

9            ATTORNEY PAPPY:  Yes.

10            THE COURT:  Okay.  And you all did timely file your

11  joint status report.

12            Here's my question.  Since -- between our November

13  6th discovery conference and the filing of your joint status

14  report, did the parties reach any agreements?

15            (Pause.)

16            ATTORNEY PAPPY:  We're close to reaching an agreement

17  about photographs in the -- at the inspections.

18            THE COURT:  Okay.

19            ATTORNEY PAPPY:  And not -- I think there's a couple

20  of other open issues with respect to the inspections.  But we

21  were able to -- I think we're very close to it.  I think we'll

22  be able to resolve it, as to the photos.

23            THE COURT:  Anything else?

24            ATTORNEY SWEARINGEN:  I think with respect to

25  inspections, my understanding, the parties reached an agreement

1    that there would be at least two rounds of inspections.   One

2    with the ADA expert and other experts, and another with a

3    different set of experts.

4              THE COURT:   Okay.   Good.

5              What about with respect to written discovery?   Any

6    agreements?

7              ATTORNEY FISCHER:   As it relates to the document

8    requests, I think that we have sort of agreed on one issue.

9    Although, we are still working it out.   Which is that there

10   will be some subset of incarcerated person, class member

11   medical records and custody files that will be produced at some

12   point.   And that's something that plaintiffs are working on

13   with their experts, to come up with the parameters of how many,

14   what kind of -- you know, from which jails, what kinds of

15   characteristics.   We're going to make that proposal to

16   defendants.   And we're still working with our experts on that.

17             Ms. Pappy will correct me if I'm overstating as to

18   this part.   I also think that that discussion will include some

19   kind of report or download from JIMS, or other databases, about

20   kind of -- data about class members and various characteristics

21   on that.

22             So that's -- that -- it's not a complete agreement

23   because we're still working on the parameters.   But I believe

24   we at least know in principle that that is something that will

25   happen at some point.

1          THE COURT:  Okay.  Do you agree with all of that,

2   Ms. Pappy?

3          ATTORNEY PAPPY:  Yes.

4          THE COURT:  Well -- got it.

5          There are, however, a number of rather intractable --

6   seemingly intractable disputes between the parties.  And you

7   all have a deadline to produce all documents by December 22nd.

8          I have a question for you, Ms. Pappy.  As I think

9   through the issues relating to document production and

10  specifically ESI, I think you noted that the plaintiffs'

11  requested search terms -- I guess 86 search terms and 77

12  custodians generated 7 zillion items.  Did you provide a hit

13  report to the plaintiffs for those search terms?

14         ATTORNEY PAPPY:  Yes, we did.

15         THE COURT:  And was that duplicated as the plaintiffs

16  had requested?

17         ATTORNEY PAPPY:  The cut -- probation and the County

18  are able to de-duplicate.  The sheriffs don't have the

19  software.

20         THE COURT:  Okay.  So it was de-duplicated for

21  probation and the county but not for the sheriffs?

22         ATTORNEY PAPPY:  Correct.

23         THE COURT:  I see.

24         All right.  Then here's what -- I want to address

25  these issues one at a time.  Let's start with document

```
 1   production and ESI.  Then, second, we'll go to jail
 2   inspections.  Third is the privilege log issue.  Fourth are the
 3   written discovery disputes.  And fifth is the Rule 30(b)(6)
 4   issue.
 5        So I've got some information to share with you all
 6   about each of these.  So here we go.
 7        First, with respect to document production, the
 8   deadline for production of all documents in this case remains
 9   December 22nd, 2023, as set forth in docket number 441.
10        I realize that there is an ongoing dispute between
11   the parties with respect to the production of ESI and, in this
12   case, specifically relates to emails.
13        The deadline to raise issues regarding ESI search
14   term issues was July 10th, 2023.  That deadline passed without
15   any indication from the parties at the time that there were any
16   ongoing disputes.  But I am told, you know, prior to November
17   6th, that again in this status report that disputes remain.
18        So here is what we are going to do.  On or before --
19   well, you all have the hit report -- the plaintiffs have the
20   hit report?  Correct, Ms. Pappy?
21        ATTORNEY PAPPY:  Yes.
22        THE COURT:  On or before November 30th -- well, let
23   me take that back.
24        By not later than November 30th, the parties are to
25   complete any meet-and-confer efforts regarding which search
```

1    terms and which custodians will be used by the defendants in

2    producing responsive documents.

3            By not later than November 30th, the defendants will

4    provide to the plaintiffs the list of custodians and search

5    terms that the defendants have elected to use.

6            The parties are to meet and confer again on or before

7    December 7th, 2023, regarding the list of custodians and search

8    terms that the defendants intend to use.

9            Ultimately, it's going to be the defendants'

10   responsibility to identify and produce responsive documents,

11   and that's going to be my order on that.  The defendants will

12   produce those documents by December 22nd.

13           To the extent the plaintiffs believe that the

14   production is insufficient, we will address that thereafter,

15   and I will assess appropriate remedies; understanding that the

16   parties will have met and conferred regarding search terms.

17   But I'm not going to rule on briefing for -- on motions to

18   compel regarding search terms in advance because, under Rule

19   34, it's the defendants' responsibility to identify responsive

20   documents.

21           The plaintiffs should have input.  They will know the

22   search terms that are going to be used.  And if the plaintiffs

23   believe that certain search terms should have been used but

24   were not and that it resulted in the defendants failing to meet

25   their obligations under Rule 34, I will consider that in a

1   separate motion, and I will consider appropriate relief under

2   Rule 37 if I determine that the defendants did not comply with

3   their obligations under Rule 34.   But all responsive documents

4   identified by the defendants are to be produced by December

5   22nd.

6           Next.

7           ATTORNEY PAPPY:   Question?   Can I ask a question

8   about that, so I'm sure what I'm doing?

9           THE COURT:   Yes.

10          ATTORNEY PAPPY:   By the 30th, we're supposed to meet

11  and confer about the 86 search terms and custodians.

12          So the -- so the -- are you telling me that I can

13  decide which custodians to produce, based -- and -- and --

14  well, search terms aside, which custodians' emails -- search

15  terms aside -- that I think are responsive to requests for

16  production of documents, and ignore the -- the 77 custodians

17  and 86 search terms?

18          THE COURT:   What I am saying is that as the

19  responding party, it is your obligation to identify responsive

20  documents.

21          ATTORNEY PAPPY:   Okay.   Got it.

22          THE COURT:   And that the parties should, consistent

23  with the *Sedona* principles and my ESI checklist, meet and

24  confer regarding appropriate search terms and custodians.

25          But I am not going to, as of now, compel the

1    defendants to utilize specific search terms or specific

2    custodians.  That is the obligation of the party responding to

3    discovery to determine.

4          But I am further directing, Ms. Pappy, that you

5    provide the custodians and search terms you intend to use to

6    the plaintiffs on or before November 30th.  And that you all

7    further meet and confer.  And hopefully, with that in mind, you

8    all can reach agreement.  The plaintiffs may have additional

9    custodians, additional search terms that they want you to

10   consider.

11         Ultimately, it's your responsibility to determine how

12   you are going to comply with your obligations under Rule 34,

13   Ms. Pappy.  Understanding that the plaintiffs will know which

14   custodians and search terms that you've used.  And if there is

15   a dispute about that, I'll need to resolve it.  And it's going

16   to probably come with additional forms of relief for the party

17   who prevails on any motion.

18         ATTORNEY PAPPY:  Thank you.

19         THE COURT:  Next, jail inspections.

20         I agree with the parties that a motion to compel and

21   briefing is warranted.

22         The plaintiffs will file a motion to compel on any

23   disputed issues regarding the jail inspections by November

24   30th.  The motion will not exceed ten pages, exclusive of

25   exhibits.

1          The defendants will file any opposition to that

2   motion by December 8th.  It will not exceed ten pages,

3   exclusive of exhibits.

4          I am going to hold a hearing on this issue and other

5   issues, as further described, on December 20th, at 9:00 a.m.

6   That hearing will be in person.  If any counsel wishes to

7   appear remotely, they will notify the Court of their request to

8   appear remotely.

9          I'm going to block out the entire morning for you all

10  to resolve all outstanding written discovery disputes.  There

11  will be no lingering disputes at the end of that hearing.

12         So just to be clear, with respect to the parties --

13  you know, I saw several statements in the joint report about

14  reserving rights on different -- different RFPs and written

15  discovery.  Every dispute is going to be resolved by me on

16  December 20th, with the exception of if there are disputes

17  regarding the document production that you don't have yet.

18  But, otherwise, they're all resolved.

19         ATTORNEY PAPPY:  Oppositions due the 12th?  I'm

20  sorry.  Oppositions due the 12th?

21         THE COURT:  8th.

22         ATTORNEY PAPPY:  8th.  Thank you.

23         THE COURT:  If we are unable to resolve all of the

24  issues during the hearing that's going to begin at 9:00 a.m.,

25  I'm going to need to break at 1:00 p.m. because I have a

1    veterans court calendar.

2            I will either resume the hearing following the

3    conclusion of that calendar, most likely about 3:30 p.m., or we

4    will continue the hearing on December 22nd, at 9:00 a.m.; one

5    or the other.

6            I'm optimistic we're going to resolve any issues on

7    the morning of December 20th, but I want everyone to be

8    prepared for what we're going to need to do if we cannot.

9            The third issue, the privilege log.  I appreciate the

10    parties' description of this.  And based on my review of the

11    case law, there is a presumption that, you know, documents

12    generated during the course of the litigation need not be

13    included on the privilege log.  But I'm going to provide the

14    plaintiffs an opportunity to brief this.  I'm giving you a

15    tentative ruling on that.  But I want -- everyone an

16    opportunity to be heard.

17            If the plaintiffs choose to file a motion to compel

18    on the issue of whether the privilege log must contain

19    communications following the initiation of this litigation, the

20    plaintiffs will file a motion to compel by not later than

21    November 30th.  It shall not exceed five pages.

22            Any opposition by the defendants, December 8th, not

23    to exceed five pages.  And we'll hear the motion on December

24    20th, at 9:00 a.m.

25            Number 4 --

1              ATTORNEY CHARTOFF:  Your Honor?

2              THE COURT:  Yes, go ahead.

3              ATTORNEY CHARTOFF:  My --

4              THE COURT:  Sure.

5              ATTORNEY CHARTOFF:  I want to make sure I'm

6    understanding on the issue of the RFPs, aside from ESI issues.

7              THE COURT:  Um-hmm.

8              ATTORNEY CHARTOFF:  Is that similar -- is that on the

9    same time frame?  I know you mentioned resolving it by the

10   December 20th conference.

11             THE COURT:  Sit tight for 30th seconds, and you'll

12   have your answer.

13             ATTORNEY CHARTOFF:  Thank you.

14             THE COURT:  No problem.

15             All right.  With respect to any disputes concerning

16   interrogatories, requests for production, or requests for

17   admission.  By not later than November 30th, the plaintiffs

18   shall provide to defendants a list, in chart format, of all

19   unresolved disputes concerning requests for production,

20   interrogatories, and requests for admission.

21             The list -- it shall be in chart format and shall

22   identify the specific discovery requests to which the dispute

23   pertains, and shall state in one or two sentences plaintiffs'

24   position on that issue.

25             By not later than December 8th, defense counsel shall

1    provide plaintiffs' counsel with their respective positions on

2    each of the issues identified in plaintiffs' list.  Again, in

3    one to two sentences.  And defense counsel may add any disputed

4    written discovery requests not included in plaintiffs' list.

5         By not later than December 11th, the defendants --

6    excuse me -- the plaintiffs shall file the list of unresolved

7    discovery disputes on CM/ECF, and email a copy to my chambers.

8    We will address each of the disputes in the chart on December

9    20th, at 9:00 a.m.

10        I believe you all provided me hard copies of all of

11   the propounded discovery.  So all I would ask is that -- well,

12   that was not filed.  So to give you all an appropriate record

13   on this, any discovery that is the subject of the chart should

14   be included as an exhibit to the chart.  That way there's a

15   record on CM/ECF of exactly what is at issue in the motion.

16   But you don't need to give me a courtesy copy of that.  You

17   already did that, which I appreciate.

18        And I think that takes us through the written

19   discovery disputes.

20        I am prepared to talk to you all about the Rule

21   30(b)(6) depositions.  And I do actually want to hear from the

22   parties on that.

23        But before we go forward, does anybody have any

24   questions or wish to be heard on our plan for resolving your

25   written discovery disputes?

1              Start with plaintiff.

2              ATTORNEY PAPPY:  Yes --

3              THE COURT:  Go ahead, Ms. Pappy.

4              ATTORNEY PAPPY:  Sorry.  You didn't mention our

5   disputes with plaintiffs' responses.  I'm assuming it's just

6   the reverse of -- that we have to file our list -- or serve our

7   list by the 30th?

8              THE COURT:  No.  I -- I thought I had.  But to the

9   extent -- and this will be in a written order that I'm going to

10  issue by tomorrow.

11             But, Ms. Pappy, when you return plaintiffs' list by

12  December 8th, you can add to it any of yours.

13             ATTORNEY PAPPY:  Right.

14             THE COURT:  And plaintiffs will file it by December

15  11th, with their additions to your responses.  To your

16  additions, excuse me.

17             ATTORNEY PAPPY:  Thank you.

18             THE COURT:  Their responses to your additions.  Sorry

19  about that.

20             ATTORNEY PAPPY:  (Laughing.)  I got it.

21             ATTORNEY SWEARINGEN:  Just for clarification on that.

22             THE COURT:  Sure.

23             ATTORNEY SWEARINGEN:  Ms. Pappy, could you help us

24  understand what those are?  Those weren't included in the JSR.

25  We didn't see any --

```
 1            THE COURT:  Not now.  You can all meet and confer
 2   about that.  If there are issues that you believe are not
 3   timely raised, you can tell me.  But, honestly, Counsel, if
 4   you -- you all need to talk about that offline.
 5            All right.  Anything else from plaintiffs' side?
 6   Mr. Swearingen?  Mr. Fischer?  Ms. Chartoff?
 7            ATTORNEY SWEARINGEN:  No, your Honor.
 8            ATTORNEY CHARTOFF:  No, your Honor.
 9            THE COURT:  All right.  Very well.
10            Then let's turn to Rule 30(b)(6).
11            And let me grab your -- the notice that Ms. Chartoff
12   gave me at our last hearing.
13            All right.  As I understand it, there are three
14   issues that may need resolution.  The first is the -- the
15   topics that are the subject of the Rule 30(b)(6).  The second
16   is the total time for the 30(b)(6) depositions.  And the third
17   relates to the inclusion in the definitions of the words
18   "communications" and "documents."
19            So let's take these -- I guess, well, starting with
20   the topics.
21            I understand that the plaintiffs -- I'm looking at
22   ECF page 11 of your joint status report, docket 450.  The
23   plaintiffs do not agree to defendants rewriting the 30(b)(6)
24   topics, and propose the list of topics that are based on the
25   breakdowns and defendants' list that is Exhibit B.
```

 1                 And as I'm looking at Exhibit B, I see it contains

 2     the 14 requests.  And at least several of those, one through

 3     six, are broken down into subparts.

 4                 So let me begin with this.

 5                 And do you have Exhibit B in front of you, Ms. Pappy?

 6                 ATTORNEY PAPPY:  I do.

 7                 THE COURT:  Okay.  So as I'm looking at Exhibit B,

 8     which is ECF page numbers 18 through 22, do you object to any

 9     of those categories?

10                 ATTORNEY PAPPY:  I'm sorry.  Do I -- repeat.  Which

11     ones do I object to?

12                 THE COURT:  Sure.  Any of the categories that are

13     contained in Exhibit B.

14                 ATTORNEY PAPPY:  Uhm, Exhibit B --

15                 THE COURT:  They're the ones that the plaintiffs are

16     proposing to use?

17                 ATTORNEY PAPPY:  Oh, you mean Exhibit A?

18                 THE COURT:  Well, for me it is Exhibit B.  Exhibit A

19     is Mr. Fischer's letter.

20                 ATTORNEY PAPPY:  Got it.  Exhibit C is me.

21                 Yes, I object to one, two --

22                 THE COURT:  Well, which --

23                 ATTORNEY PAPPY:  -- A --

24                 THE COURT:  One is broken into -- yeah, A and B.  And

25     two is broken up into A through E.

```
 1              ATTORNEY PAPPY:  1A.

 2              THE COURT:  Okay.

 3              ATTORNEY PAPPY:  2A.

 4              THE COURT:  Okay.

 5              ATTORNEY PAPPY:  3A.

 6              THE COURT:  Okay.

 7              ATTORNEY PAPPY:  And (pause) I think that's it.

 8              I don't think I have ten broken out into a-- let

 9   me -- yeah, no, that's it.

10              THE COURT:  Okay.  And then I also have from you,

11   Ms. Pappy, your -- oh, that's why it's confusing.  Because

12   although it's Exhibit C, it's -- your header says Exhibit B.

13   Gotch ya.

14              ATTORNEY PAPPY:  Yes.

15              THE COURT:  All right.  So let me just ask you this.

16              What is your objection to Category 1A, as set forth

17   in plaintiffs' proposal?  Again, ECF page 18.

18              ATTORNEY PAPPY:  Sure.  If you look at -- if you look

19   at plaintiffs' proposal, you've got --

20              THE COURT:  Yes.

21              ATTORNEY PAPPY:  -- policies, procedures and

22   practices relating to healthcare, including relating to custody

23   staff decisions affecting the delivery.  That is -- the general

24   topic of healthcare is Dr. Jon Montgomery.

25              THE COURT:  Okay.
```

1          ATTORNEY PAPPY:  He's the head of medical.

2          Custody staff decisions, there are -- there are no

3     such thing.  There is no custody staff decision about health

4     care.  Jon Montgomery can testify to that.

5          Screening and intake processes, that's not

6     Dr. Montgomery's -- he's not the person most knowledgeable.  He

7     would certainly have the intake and screening materials in the

8     medical file, but he's not the one who deals with that process.

9     That's not specific to health care.  It's just intake and

10    booking.  So that would be a different person.

11         THE COURT:  Can I ask you a question?

12         ATTORNEY PAPPY:  Yeah.

13         THE COURT:  It doesn't have to be the person most

14    knowledgeable.  He needs to be an appropriate designee.  So, I

15    mean, is he in a position to testify to it?

16         ATTORNEY PAPPY:  Yeah.  I think that he could be.

17    He's just not going to be the person most knowledgeable about

18    screening and intake processes with -- which is, really, set

19    forth in here as a separate -- it could be interpreted as he

20    needs to know the exact process they go through.

21         THE COURT:  Where -- where is -- where is the

22    screening and intake process separately located in the

23    plaintiffs' categories?

24         ATTORNEY PAPPY:  One, two, three -- where is it in

25    the -- in the --

1          THE COURT:  In the plaintiffs'?

2          ATTORNEY PAPPY:  -- categories?

3          THE COURT:  Yeah.

4          ATTORNEY PAPPY:  Oh, I don't know that it is.  It's

5    not in this one.

6          THE COURT:  Okay.

7          ATTORNEY PAPPY:  I think that it might have been

8    included in Captain Libel's (phonetic) deposition that already

9    took place.

10          THE COURT:  Okay.  Give me just a moment, and then I

11    want to hear from the plaintiffs on this, after we go through

12    this.

13          (Pause.)

14          THE COURT:  All right.  So your objection to 1A is

15    that it's overbroad, Ms. Pappy?

16          ATTORNEY PAPPY:  Yeah.  I'm concerned -- Jon

17    Montgomery knows all things medical, and I'm concerned about

18    the designation of him as the person most knowledgeable about

19    all of these small topics.  If -- if that's not going to be an

20    issue, then he is the right guy for all of these because he

21    relates -- he's the most knowledgeable about health care.

22          THE COURT:  Okay.  What's your objection to 2A?

23          ATTORNEY PAPPY:  Okay.  2A is -- is the same thing

24    with regard to Melissa Perales.  She's the head of mental

25    health.

1          I -- she is the person most knowledgeable, she is the

2    head of the mental health at the jail.  And -- and she will

3    have some knowledge of -- of things like -- (indiscernible)

4    people (indiscernible).  She'll know all of that.  Housing

5    placement.  She'll know where people are kept, but she may not

6    know the nitty-gritty detail of day-to-day operations, custody

7    staff operations with regard to those housing placements.  Like

8    what happens in housing placements.  Where they're placed?

9    Yeah, she would have the knowledge.  And why is someone placed

10   in a particular housing unit, EOH, OSPD, or OPSD -- whatever it

11   is.  Again, same concern.

12         But she is the person, I think, appropriate to

13   testify to this category.  I just (indiscernible) that she's

14   not the person most knowledgeable about what I consider to be

15   tangential things to the category.

16         THE COURT:  I don't mean to pick at language.  But I

17   do want to hear from plaintiffs.

18         I mean, I -- my understanding is that Rule 30(b)(6)

19   does not require the person most knowledgeable.  It requires an

20   appropriately prepared representative of an entity.

21         ATTORNEY SWEARINGEN:  (Indiscernible.)

22         THE COURT:  Go ahead, Mr. Swearingen.  I was going to

23   get to you in a moment.  But if you want to go ahead and jump

24   in, that's fine.

25         ATTORNEY SWEARINGEN:  Sorry.  I didn't mean to cut

1    you off, your Honor.

2               THE COURT:  No, that's okay.  Go ahead.

3               ATTORNEY SWEARINGEN:  I believe it requires somebody

4    who is knowledgeable to discuss from the organization's

5    perspective --

6               THE COURT:  Sure.

7               ATTORNEY SWEARINGEN:  -- all of the pertinent

8    information about that topic.

9               THE COURT:  You and I are saying the same thing,

10   aren't we?  I mean, I --

11              ATTORNEY SWEARINGEN:  I like to think so.

12              THE COURT:  Yeah.  No, I think -- but -- but we --

13   the -- right?  There's the -- in Superior Court, we talk about

14   PMKs.  If there's -- where it's got to be the person most

15   knowledgeable on a specific sub issue.

16              And I hear what Ms. Pappy is saying.  That there are

17   these -- the broader category, where the County has designated

18   the appropriate individual.  And there are these subcategories.

19   And as long as the -- the person who is designated is --

20   doesn't have to be the person most knowledgeable in every

21   single subcategory, so long as they're adequately prepared to

22   testify.  And, you know -- so we're saying the same thing, I

23   think.

24              Let me -- and now I want to hear from you,

25   Mr. Swearingen.  Let me just find out Ms. Pappy's position on

1    3A.   And then we can -- we can talk about it.

2              What about 3A, Ms. Pappy?

3              ATTORNEY PAPPY:   Sure.   3A, accessibility of

4    facility.   I mean -- what?   The physical accessibility of a

5    facility?   The programmatic accessibility of a facility?   We

6    talked about this last time.   And Title II requires

7    programmatic accessibility.

8              What aspect of it are we talking about?   Are we

9    talking about, again, the measuring?   The one and a half inch?

10   Or are we talking about programs and services?

11             Scott Bennett is the person.   He is the head of

12   facilities.   He will know about the one and a half inch and

13   what's being done at facilities.   But he is not necessarily

14   going to know about whether they have a religious service for

15   various religions in the -- in the facility.   He is not going

16   to know whether there are -- whether there are GED courses.

17   That is not something that he will know.

18             If -- if you look at tracking of people with

19   disabilities, that is not something that either the programs

20   and services person is going to know or that the -- that Scott

21   Bennett is going to know.   That is somebody that would be --

22   you know, I guess it could be a lot of people.   It could be

23   reentry.   It could be medical.

24             It could be the person most knowledgeable about gyms,

25   about the operation gyms, and how they track people with

1  disabilities; whether it relates to lower bunk, lower tier;

2  whether it relates to a prosthetic.  There may be different

3  flags on gyms.  So actually this category alone -- actually,

4  this one worries me the most -- could be ten people.  And I

5  don't think I could properly educate one person to testify on

6  this category.  It has too much nuance in it.

7           THE COURT:  Does -- is there a requirement -- let's

8  say there's a category that is -- like this 3A, that you think

9  is broad and may best be served by having two different

10 designees or three different designees for that.

11          Again, we're going to talk about time limits in a

12 minute.  But just say that.  To give the plaintiffs the

13 information to which they're entitled.  I -- I don't hear the

14 plaintiffs to be saying, "No, no, it's one designee per topic."

15          Let me stop right there.

16          Mr. Swearingen, what's your position with respect to

17 whether -- given the specificity in topic 3A, for example -- if

18 the County believes there are two different people who should

19 properly testify as to 2A -- or 3A, excuse me, do you object to

20 that?

21          ATTORNEY SWEARINGEN:  No, your Honor.  We think it

22 would be wonderful to have the person who has the knowledge

23 about that, from the organization's perspective, to testify

24 about that particular subissue.

25          THE COURT:  And here -- here's where I'm coming from,

25

1    Ms. Pappy.  The initial 30(b)(6) notice was broader.  And what

2    I -- what I don't want to have happen is going back to a broad

3    notice -- and I'm looking specifically at the one that was

4    dated July 20th.  Where, for example -- for here, it's all --

5    number three:

6              "All policies and procedures, practices, and

7              physical, structural, and design plans relating to

8              accessibility of the facilities, programs,

9              services, activities, effective communication,

10             reasonable accommodation, and so forth."

11             Then I look at yours.  I'm looking at your yellow

12    piece of paper -- well, I guess I should look in docket 450,

13    Exhibit C.  And you have it laid out:

14             "Physical, structural, and design plans."

15             In 3B, "Program services and activities for

16             individuals with disabilities."

17             And 3C.

18             I mean, I think the more detail that's in the notice

19    probably the better, so that you can designate the appropriate

20    people, Ms. Pappy.  And if it's going to be more than one

21    person per topic that's appropriately designated -- leaving

22    aside whether that's the person most knowledgeable within the

23    entire county system, I think that would be appropriate.  And

24    the plaintiffs certainly aren't going to object to it.  Then it

25    comes down to reasonableness.

1          The deponent needs to be prepared reasonably and

2    that, of course, can lead to disputes.  But I think that's

3    probably the best way to go about this.  And my --

4          ATTORNEY PAPPY:  Here's --

5          THE COURT:  Go ahead, Ms. Pappy.

6          ATTORNEY PAPPY:  Here's my problem.

7          THE COURT:  Sure.

8          ATTORNEY PAPPY:  If you look at their 3A, 3B, 3C and

9    3D, they duplicate each other; which is why I wanted them all

10   broken out.  I broke them out.

11         B, physical structure -- physical, structural, and

12   design plans relating to the accessibility of facilities,

13   housing, programs, services, and --

14         THE COURT:  Yeah.

15         ATTORNEY PAPPY:  -- activities for all facilities.

16         So 3A is now a duplicate of that.  So my -- am I

17   supposed to produce the same person twice because they now have

18   this duplicated category?

19         I mean, what I was trying to do was break it down in

20   meet and confer.  To say, okay, I get what you want.  Are these

21   the categories that you want?  Because it is going to be

22   somebody -- I think I've got two people designated for 3B.

23   I've got one -- one person designated for 3C.  And the same

24   person designated for 3D.

25         Now, 3A, the way it has now been rewritten, includes

1    the person for 3A, the person -- the two people for 3B, and the

2    person for 3D, and more people.  So which do they want?  Do

3    they want 3A?  Or are we getting rid of 3B, C, and D?  And then

4    I may need to add more people because the one person that I

5    don't have broken out is -- is tracking.

6              Now look at substance abuse.  Now look at 4A, 4B, 4C.

7    Drug abuse.  All of those cover drug abuse.  How is 3A not

8    duplicative of that?

9              So I was trying to make it easier.  And now we've got

10   a 3A catch-all everything category, which is exactly what my

11   objection was in the first place.

12             THE COURT:  Okay.  Mr. Swearingen, what's your

13   position?

14             ATTORNEY SWEARINGEN:  I want to defer to my

15   colleague, Mr. Fischer, first.  I see his hand is up.

16             THE COURT:  Oh.  Oh, I didn't see his hand up.

17             Go ahead, Mr. Fischer.

18             ATTORNEY FISCHER:  Yeah, let me just try.

19             So I -- there's a few pieces there.  I -- the one

20   thing I just want to underscore -- I think you said, Judge --

21   is that more specificity, I think, should be helpful in keeping

22   the -- the deposition narrow, specific.  So I -- I'm a little

23   surprised that that's being used against us.

24             The -- the -- I'll just say how this has worked in

25   many other scenarios, is there's a disability accommodation

1    system.  There's two pieces.  We talked about this, actually,

2    the last time we were all together.  There's physical plant

3    things.  The tape measure guys.  I think Ms. Pappy and I agreed

4    to use that term when they're not around, at least.  The tape

5    measure folks, that's physical accessibility.  And then there's

6    policies and procedures around accommodations, and so forth.

7            And that's essentially what 3A, along with 3C and

8    3D -- breaking out two very critical categories of that --

9    entail; the -- the policies, programs, procedures.

10           3B is the physical, structural, and design plans.  So

11   those are -- that's the -- that's a lot of the stuff that we

12   talked about a few months ago around Central jail.

13           So it's not surprising to me to have two potential

14   people who have some different areas of focus.  And maybe

15   Mr. Ferguson is one of them Ms. Pappy is referencing.  That

16   makes sense.

17           But it's -- it's actually a little troubling that

18   there isn't somebody -- even though we're seeing that there's

19   ADA coordinators that can't speak to policies and procedures

20   around accommodating people with disabilities, that's -- that's

21   what we're trying to get at with this.

22           The last thing I just want to point out is that the

23   drug overdoses and MAP (phonetic) program and stuff like that,

24   those are -- a lot of those are -- well, I'll leave aside the

25   body scanners and other interdiction.

29

1          But those are custody and medical policies.  When --
2    when we refer to substance use disorders, it's clarifying our
3    intent that that is -- under DOJ guidance now -- a qualifying
4    disability that may require some accommodations.  And that's
5    what we reference there in 3A.

6          So I just want to clarify a few of those things.  I
7    don't want to muddy waters (indiscernible).

8          THE COURT:  No, I appreciate that.

9          Give me 30 seconds, everyone.

10          ATTORNEY FISCHER:  Sure.

11          (Pause.)

12          THE COURT:  All right.  Thanks for your patience.

13          Here's how I -- let me ask you this, Mr. Fischer.
14    The initial 30(b)(6) deposition notice that was dated July 20th
15    and contains 14 broader categories without the specific
16    subcategories that the plaintiffs are now proposing, do I
17    understand correctly that if the deposition had gone forward
18    with the topics as stated in the initial 30(b)(6) notice, that
19    the plaintiffs would be intending or -- intended to cover all
20    of the subtopics that are now listed in the plaintiffs'
21    proposed 30(b)(6) notice?

22          ATTORNEY FISCHER:  Yes.

23          THE COURT:  Okay.  All right.

24          ATTORNEY FISCHER:  If you're asking if anything was
25    added, nothing -- in our conception of what we wanted to

1   cover --

2           THE COURT:  Right.  That's what I want to know.

3           ATTORNEY FISCHER:  By providing the specificity,

4   that's correct.  (Indiscernible.)

5           THE COURT:  Go ahead, Ms. Pappy.

6           ATTORNEY FISCHER:  All right.

7           ATTORNEY PAPPY:  Yeah, just one point.

8           THE COURT:  Sure.

9           ATTORNEY PAPPY:  The -- you know, in sitting here

10  while you were gone, reading 3A, as long as that category is

11  exclusively covering policies, procedures, and, you know, I --

12  we say there is nothing called a practice but they wanted it in

13  there.

14          Then I think I can put up -- there's really only one

15  person that's going to talk about policies, procedures, and

16  practices versus -- and it wouldn't be Scott Bennett.  I'm not

17  sure who Ferguson is.  But it wouldn't be Scott Bennett to talk

18  about policies and procedures.  It would be somebody in command

19  staff who would talk about policies and procedures.

20          So -- so what I'm -- a long-winded way of saying if

21  that's what this category is limited to -- so just talking

22  about your policies, procedures, and practices -- which there

23  are none -- that's just one person.

24          So -- and -- and I'm okay with it, if that's what

25  it's limited to.  I just want to make sure that that's what

1   it's limited to.

2              THE COURT:  Well, that's what it says.

3              ATTORNEY PAPPY:  That's what I think -- and that's

4   what I think.  Is -- is in looking at it again, it's just the

5   policies and procedures as distinguished from B, C, and D;

6   which make absolutely no reference to policies and procedures.

7              So with that, how about I'll withdraw my objection?

8              THE COURT:  (Inaudible) to that.

9              ATTORNEY PAPPY:  (Laughing.)

10             THE COURT:  Okay.  Well, let me ask one final

11  question on this

12             I am still not sure I understand the dispute over --

13  or why there are all of these definitions in the plaintiffs'

14  30(b)(6) notice, including defining terms of document and

15  communication.

16             It doesn't -- I saw what the plaintiffs said.  That

17  it refers to the way in which the questioning attorney is going

18  to frame questions about communications and documents.

19             I -- it -- Mr. Swearingen, Mr. Fischer, you both are

20  unmuted.  I'm just not tracking you, as to why that's in there,

21  and I think it engenders confusion.  I'm not inclined to direct

22  you to strike that from a 30(b)(6).  But I will tell you that

23  if you all contact me in the middle of a 30(b)(6) deposition

24  because the deponent is being asked about -- I mean, take your

25  pick:  Notes, memoranda, records, reports, papers, facsimiles,

1    electronic mail.  I mean, that dispute is probably not going to

2    get a whole lot of traction with me.  It just strikes me as

3    unnecessary.

4            And the same is true for documents, given that it's a

5    deposition.  And you're going to be asking straight-forward

6    questions to which the witness should be prepared to answer on

7    the designated topics.

8            But if there's something that I'm missing, that you

9    want to tell me about, I would be happy to hear from you.

10            ATTORNEY SWEARINGEN:  Sure.  Your Honor, we included

11    the -- the -- the definitions for documents and communications,

12    as we -- in the 30(b)(6) deposition notice, as we did in all of

13    our written discovery.  We tried to create the same terms and

14    usage of terms as -- as -- as the definitions in each.

15            As you see, there -- there is no reference to

16    documents in any of the categories.  I think there's one

17    reference to -- to -- to communications in one.  And it's only

18    the methods of communication once somebody dies.

19            We don't intend -- we've already communicated to

20    Ms. Pappy that we don't intend to -- to grill the -- the

21    witness on knowledge about every single document or voicemail

22    or facsimile that could have been issued by the sheriff's

23    department over the course of years.  That's not our intent.

24            I really don't understand the -- the scope of this

25    dispute.

1          THE COURT:  Well, she's saying she doesn't understand

2   why you have it in there in the first place.

3          And, frankly, I'm sort of -- I understand where

4   Ms. Pappy is coming from.

5          So go ahead.

6          ATTORNEY SWEARINGEN:  Sure.

7          And if there's a dispute about what a document is, if

8   we use the term "documents," we can refer back to the

9   deposition notice.  This is what we mean by "documents."

10          This isn't a -- a dispute -- I'm going to go to the

11   mat on.  I don't think it's that big of a dispute because,

12   again, we don't anticipate that this is actually going to be an

13   impediment to our depositions.

14          THE COURT:  Computer diskettes.

15          ATTORNEY SWEARINGEN:  I missed your comment, your

16   Honor.

17          THE COURT:  Computer diskettes is one of the -- let

18   me ask you something, Mr. Swearingen.  And I don't mean this in

19   a smart aleck way at all.  I'm really serious.

20          Have you ever had a 30(b)(6) deposition where you

21   have included these depositions of communications and

22   documents; where you've referred to this during the deposition

23   as to what constitutes a communication and what constitutes a

24   document, with a deponent?

25          ATTORNEY SWEARINGEN:  No, your Honor.

1          THE COURT:  Okay.  I think that answers everything

2    for everybody.  This really is a nonissue.  It goes back to

3    what we talked about, with -- the deponent needs to be

4    reasonably prepared.

5          And to the extent that there really is grilling of a

6    deponent on these precise deposition -- definitions of

7    communications and documents, I -- you can see, if I'm

8    contacted during the deposition to resolve that dispute, it --

9    you're going to be hard-pressed to convince me that it matters.

10          Ms. Pappy, you raised your head.  Go ahead, ma'am.

11          ATTORNEY PAPPY:  Yeah.  The only thing -- Judge, you

12    do whatever you want to do.  I've made my record.

13          The reason why this became such a big issue is that

14    after the first round of depositions, there were -- I got

15    meet-and-confer emails that witnesses didn't know about the

16    definition of communications and documents.  And I did not want

17    to have that again.

18          THE COURT:  Understood.

19          You all know my take on this, going forward.  I'm not

20    going to direct the plaintiffs on how to serve this, but it

21    strikes me that this is really going to be a nonissue.  I would

22    be very surprised if it comes up again.

23          Here's what we're going to do for the Rule 30(b)(6)

24    depositions.  I appreciate the briefing on this and the -- the

25    argument of counsel.  I don't think I need further briefing to

1   resolve this.

2        I am going to authorize the plaintiffs to serve a

3   Rule 30(b)(6) deposition notice that contains the topics that

4   are set forth in docket number 450, Exhibit B, ECF page numbers

5   18 through 22.  Those are plaintiffs' proposed categories.

6   With the understanding that the deposition will proceed in the

7   manner that we've discussed over the course of this hearing.

8        I am not going to direct the plaintiffs to strike

9   the -- the definitions of communications and documents from the

10  Rule 30(b)(6) notice, understanding that it does seem to me

11  that it is un -- unnecessary, and leave it at that.

12       With respect to the number of hours, I have looked

13  carefully at the plaintiffs' estimates in Exhibit B.  And I

14  conclude that the defendants' time estimate is appropriate

15  under all of the circumstances.  And I am limiting the Rule

16  30(b)(6) deposition to a total of 40 hours of record time.

17       And with any other -- and as with any other time

18  limit, including depositions, I expect the parties will conduct

19  themselves appropriately.  There will not be excessive speaking

20  objections during the depositions, and that the depositions

21  will move forward appropriately.

22       Obviously, if there are issues with that, you can

23  reach out to me during the deposition.  But I have every

24  expectation that's not going to be necessary.

25       ATTORNEY FISCHER:  (Indiscernible.)

```
 1              THE COURT:  Yes.  Go ahead, Mr. Fischer.

 2              ATTORNEY FISCHER:  Excuse me.  I'm sorry.  That's 40

 3    hours -- it's hard, on Zoom.

 4              THE COURT:  That's okay.

 5              ATTORNEY FISCHER:  That's 40 hours cumulative?

 6              THE COURT:  That's correct.

 7              ATTORNEY FISCHER:  Okay.  So we have one number that

 8    we're working with, for clarity.

 9              THE COURT:  That's correct.

10              All right.  Thank you.

11              ATTORNEY SWEARINGEN:  Your Honor, if we -- if I may,

12    if we get to a point where we're working as efficiently as we

13    can through depositions and we can see that we're -- we

14    estimate that we're going to need more time, in good faith, may

15    we make a motion for leave to extend the depositions in the --

16    the total time amount in the depositions?  And -- and -- and

17    give you reason -- you know, our reasons for making such a

18    motion?

19              THE COURT:  I'm not going to preclude you from

20    seeking additional time, Mr. Swearingen.  But I do want the

21    parties going into the 30(b)(6) deposition with the expectation

22    that it's going to be 40 hours.  And I just -- so keeping that

23    in mind, no, I'm not going to preclude you from filing

24    anything, Mr. Swearingen.  But please do be prepared to make

25    every effort to conclude the questioning within the time
```

1  allotment.

2          And, look, if -- in the very unlikely event that

3  defense counsel is making numerous speaking objections and

4  eating up your time, yeah, that is something that would be of

5  concern to me, that I would take into account.  If it really is

6  because there has been, in my view, overly repetitive or overly

7  detailed questioning of the witnesses, then that would factor

8  in favor of maintaining the current time limits.  So short

9  answer to that is, yes, I would entertain that.  But please do

10 be prepared to complete the depositions within 40 hours.

11         All right.  I think we have a plan, going forward.

12 Those are the issues that I had wished to address with the

13 parties.  But I want to give you all an opportunity to raise

14 any additional issues that you wish to with me.

15         Let me begin with the plaintiffs.  Mr. Swearingen,

16 Ms. Chartoff, Mr. Fischer, anything else we should discuss?

17         Okay.  Seeing no -- no hands.

18         Ms. Pappy, how about from the defense perspective?

19         ATTORNEY PAPPY:  No, your Honor.  None.

20         THE COURT:  All right.  Let's stop the recording.

21 Going off the record.

22              (Conclusion of proceedings.)

23

24

25

38

1

2

3                                    --oOo--

4    I certify, by signing below, that the foregoing is a correct
     stenographic transcript, to the best of my ability, of the
5    digital recording of the audio proceedings had in the
     above-entitled matter this 24th day of November, 2023.  A
6    transcript without an original signature or conformed signature
     is not certified.  I further certify that the transcript fees
7    and format comply with those prescribed by the Court and the
     Judicial Conference of the United States.

8
             /S/ Amanda M. LeGore
9    _____

10        AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25