GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No. 3:20-cv-00406-AJB-DDL <br><br> **DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL INSPECTIONS** <br><br> Judge: Hon. Anthony J. Battaglia <br> Magistrate: Hon. David D. Leshner <br><br> Trial Date: None Set <br><br> **NO HEARING DATE PER DKT 454** |

I, Gay Crosthwait Grunfeld, declare:

1.    I am an attorney duly admitted to practice before this Court.  I am a partner in the law firm of Rosen Bien Galvan & Grunfeld LLP, counsel of record for Plaintiffs and the certified class and subclasses.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could competently so testify.  I make this declaration in support of Plaintiffs' Motion to Compel Inspections.

2.    On July 7, 2023, Plaintiffs served requests for our mental health expert to inspect three facilities of the San Diego County Jail (the "Jail") and for our Americans with Disabilities Act (ADA) expert to inspect one Jail facility in mid-August 2023.  After Defendants raised numerous issues with the protocols for the inspections, including that Defendants would not permit any facility to be inspected on more than one single date, we agreed to take the inspections off calendar.  Attached as **Exhibit A** is a true and correct copy of correspondence dated July 12 & 19, 2023 between Plaintiffs' and Defendants' counsel regarding these inspections.  Exhibit A has been redacted to remove privileged settlement communications.

3.    On September 1, 2023, Plaintiffs served notices indicating that their experts and attorneys would inspect the majority of Jail facilities as well as the Jail Information Management System (JIMS) and tablets made available to incarcerated people, to take place November 1-9, 2023.  Attached as **Exhibits B-I** are true and correct copies of the inspection notices.

4.    Given Defendants' advisement that all expert inspections of a facility would have to be performed on the same day, Plaintiffs' counsel spent substantial effort and resources planning for the inspections with their experts.  It took many phone calls and emails, working with each of the six experts, to find common dates that would work for all of the experts' schedules.

5.    On October 10, 2023, Defendants served untimely objections to the inspection notices.  Attached as **Exhibits J-Q** are true and correct copies of Defendants' objections.  Attached as **Exhibit R** is a true and correct copy of an

1  email from Defendants' counsel acknowledging that they "missed the deadline" to

2  respond.

3        6.     On October 15, 2023—only about two weeks before the inspections

4  were to take place—Defendants informed Plaintiffs that the Sheriff's Department

5  would not allow all experts and counsel to inspect the facilities at the same time due

6  to understaffing, and would instead force the experts to inspect separately and have

7  less time at the Jail.  Defendants' counsel wrote that Plaintiffs' experts could "make

8  whatever arrangements they want but they may not be let in."  Attached as

9  **Exhibit S** is a true and correct copy of Defendants' counsel's email.  Due to these

10  and other untimely objections in which Defendants threatened to preclude inspec-

11  tions from going forward as noticed, on October 20, 2023, we were forced to cancel

12  the inspections.  The cancellation of the inspections was felt particularly by the

13  experts, who had set aside those dates in their busy schedules.  We were required to

14  inform six experts that they would not be permitted to perform their work as

15  planned.  These experts could have scheduled fee-paying work during that time if

16  they had not reserved those dates for the inspections.  In order to prepare for trial,

17  Plaintiffs have determined that we need six of our experts to inspect the majority of

18  Jail facilities.  These inspections must be planned well in advance given the experts'

19  schedules.  At this time, most of our experts can inspect the facilities in January or

20  February 5-8, 2024.  One of our experts can only inspect February 5-8, 2024.  We

21  are doing everything we can to coordinate our experts' schedules with Defendants,

22  but Plaintiffs may need to spread out the inspections.

23        7.     Plaintiffs have sought to continue to meet and confer diligently in an

24  effort to resolve the remaining disputes and reschedule the inspections, but we have

25  so far been unsuccessful.  We raised these issues at the October 30 and November 6

26  and 21, 2023 discovery hearings.  Plaintiffs have incurred substantial, avoidable

27  expenses as a result of Defendants' obstruction and delay with respect to the noticed

28  inspections.  Attached as **Exhibit T** is a meet-and-confer letter sent by my colleague

1  to Defendants' counsel on October 17, 2023, describing the history of the parties'

2  discussions on inspections and noting the impact on Plaintiffs' case.

3       8.    I have been representing incarcerated people seeking to reform prisons

4  and jails and the governmental entities that run them for over 18 years.  In this

5  capacity, I and my colleagues at our law firm have gone inside prisons and jails

6  scores of times to interview our clients, inspect the facilities, and speak with staff.

7  Neither I nor anyone I work with has ever been harmed.  To my knowledge, no

8  incarcerated people or staff have been harmed from our tours and inspections.  No

9  one from my office has ever been reported for their behavior or created any

10  disruption during any of the many tours and inspections we have conducted in jail

11  and prison settings.  Rather, my colleagues and I conduct tours and inspections in a

12  professional manner with minimal intrusion into jail operations, and we are mindful

13  of addressing reasonable security concerns, protecting patient privacy, including by

14  seeking patient consent before observing treatment activities, and minimizing our

15  impact on facility operations.

16       9.    I was present at the inspections of Rock Mountain and Central Jail

17  ordered by the Court earlier this year.  *See* Dkt. 258.  Under the Court's order, we

18  were not allowed to speak with staff or incarcerated people.  As discussed in the

19  Declaration of Syroun Sanossian, Dkt. No. 281-3, these restrictions had a negative

20  impact on our ability to fully inspect the facility.  For example, as Ms. Sanossian

21  notes, *id.* at Ex. C-261, on the seventh floor of the jail, in module 7C we observed a

22  cell that Ms. Sanossian wished to inspect.  A man was standing in the doorway

23  looking out.  I attempted to ask the man if he would let us inspect the cell but

24  Defendants' counsel informed me that I could not speak with him.  Similarly, at

25  Rock Mountain, questions to Defendants' staff and expert could only go through

26  Defendants' counsel.  This arrangement made communication about what we were

27  seeing less productive.

28       10.    In the cases my law firm litigates, one of the key components of

1  determining whether the carceral system at issue is constitutional and complies with

2  the ADA and related statutes is understanding the systems that are in place.  To be

3  effective, typically these systems rely on electronic databases, where information is

4  stored, searched, and used to carry out the goals of the system.

5       11.    For example, the California Department of Corrections and

6  Rehabilitation (CDCR) stores custody records regarding incarcerated people,

7  including their disability codes, housing placement (e.g., lower bunk), and durable

8  medical equipment (e.g., canes, wheelchairs, etc.) in a database called SOMS.  Prior

9  to that, CDCR had a system called the Disability and Effective Communication

10 System (DECS).  CDCR, the Yuba County Jail, and other facilities use a searchable

11 electronic health record.

12      12.    On several occasions, my colleagues and I have participated in

13 demonstrations of these systems.  The demonstrations usually last an hour or two.  A

14 person who is knowledgeable about the system in question sits in front of the

15 computer or projects the computer screen.  The person then navigates the

16 functionality of the system, using a keyboard and a mouse to demonstrate the

17 system's functionality.  Some of the questions that are answered in the

18 demonstration are:  What kind of data is collected?  Can the data be flagged or

19 coded?  How long is the information stored?  Can the data be searched by name or

20 incarcerated person number or disability or medical or mental health condition?  Is

21 effective communication documented for medical and due process encounters?  Can

22 you run reports?  Is the system regularly updated?  Who has access to the system

23 and who can put data in?  This information is critical to understanding whether

24 constitutional and statutory norms are being met in a jail system.

25      13.    Once the demonstration is complete, I am typically provided with

26 screenshots that enhance my understanding of the system's functionality.  The

27 screenshots are useful, but cannot provide a full picture of what the electronic

28 system can do—that is only possible with a live demonstration of the type I have

1    described.

2        14.    The Jail uses the Jail Information Management System (JIMS).  I was

3    informed that Defendants used JIMS to pull the rosters of people with disabilities

4    provided to Plaintiffs prior to the inspection of Central Jail.  Defendants are

5    providing rosters to Plaintiffs pursuant to the ADA Order, which I presume are also

6    pulled via JIMS.

7        15.    I am informed that some individuals incarcerated in the Jail may at

8    some point be issued electronic tablets.  The County of San Diego issued a request

9    for proposal for tablets on August 31, 2022, in hopes the tablets could be used to

10   provide phone and video services, as well as application-based resources for email

11   communication, entertainment, educational and legal research, and reentry services

12   created content, to incarcerated people.  A true and correct copy of the Request for

13   Proposal is attached hereto as **Exhibit U**.

14       16.    The tablet concept was discussed in the deposition of Derek

15   Williamson taken by Plaintiffs on March 14, 2023.  A true and correct copy of

16   excerpts of this deposition is attached hereto as **Exhibit V.**  Lt. Williamson testified

17   that the Sheriff's Department selection committee required tablet providers to

18   demonstrate functionality as part of the process.  *Id*. at 48, 53-54.  As of mid-

19   March of this year, no contractor had been chosen.  *Id*. at 49.  It is unclear whether

20   and the extent to which the tablet system has now been rolled out.

21       17.    Defendants indicate in their ADA Plan that they may use tablets to

22   provide sign language to deaf signers.  *See* Dkt. 409 at 4 (referring to

23   "communication assistive devices" used to provide ASL interpretation).  Here again,

24   we have not received confirmation that the tablets have been issued or that the

25   facilities have internet, both of which would be pre-conditions to their use for people

26   with disabilities.

27       18.    Issuance of tablets is a recent trend in correctional facilities.  While

28   often touted as a panacea, tablets are reported to be problematic.  Often the font

DECLARATION OF GAY CROSTHWAIT GRUNFELD ISO PLAINTIFFS' MOTION TO COMPEL INSPECTIONS

cannot be enlarged, the tablets time out, they cost money to use, they do not have speech to text capacity, they lack WiFi connectivity, they are broken or otherwise unavailable to incarcerated persons, and they do not contain legal or other materials. Like an iPad, the only way to know how a tablet functions is by observing it being used in practice.

19. The professional visiting process in the Jail places extreme limits on counsel's ability to meet with class members due to lack of visiting rooms, understaffing, and other factors. My colleagues and I often wait lengthy times— sometimes hours—to meet with our clients, and in some cases, we are not permitted access to them at all. Often, after meeting with our clients, we are detained for up to thirty minutes or more to be permitted to leave the professional visiting room due to a lack of staff to first remove the incarcerated person from the visiting room before we are allowed to leave. Attached as **Exhibit W** is a true and correct copy of correspondence sent by my firm to Defendants' counsel on February 8, 2023 requesting a streamlined process for Plaintiffs' counsel to speak with incarcerated people in the Jail in light of numerous delays and obstacles. Defendants declined to engage on this issue and we continue to encounter delays.

20. Attached as **Exhibit X** is a true and correct copy of the Court's opinion in *Bock v. County of Sutter*, E.D. Cal. Case No. 2:11-cv-00536-MCE-KJN, Dkt. 82, May 13, 2023.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1    21.    On March 14, 2023, Plaintiffs took the deposition of Matthew Jensen,
2    one of Defendants' persons most knowledgeable.  Attached as **Exhibit Y** is a true
3    and correct copy of excerpts from the transcript of this deposition.

4    I declare under penalty of perjury under the laws of the United States of
5    America that the foregoing is true and correct, and that this declaration is executed
6    at San Francisco, California this 30th day of November, 2023.

Gay Crosthwait Grunfeld

# TABLE OF CONTENTS

## DECLARATION OF GAY GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

| EXHIBIT | DESCRIPTION | PAGE NO. |
|---------|-------------|----------|
| A. | Pappy-Fischer Email RE: Dunsmore v. San Diego County et al - E-Service: Plaintiffs' Requests for Inspection dated July 12, 2023 at 2:41PM<br>Grunfeld-Pappy Email RE: Privilege and Confidential; Follow-up to July 12 Status Conference [REDACTED] dated July 19, 2023 at 8:22PM | 1 |
| B. | Plaintiffs' Request for Inspection of George Bailey Detention Facility and Production of Documents | 11 |
| C. | Plaintiffs' Request for Inspection of East Mesa Reentry Facility and Production of Documents | 25 |
| D. | Plaintiffs' Request for Inspection of Las Colinas Detention and Reentry Facility and Production of Documents | 39 |
| E. | Plaintiffs' Request for Inspection of San Diego Central Jail and Production of Documents | 53 |
| F. | Plaintiffs' Request for Inspection of South Bay Detention Facility and Production of Documents | 67 |
| G. | Plaintiffs' Request for Inspection of Vista Detention Facility and Production of Documents | 81 |
| H. | Plaintiffs' Request for Inspection of Jail Information Management Systems (JIMS)and Production of Documents | 95 |
| I. | Plaintiffs' Request for Inspection of Tablets and Production of Documents | 107 |
| J. | Objections to Plaintiffs' Request for Inspection of George Bailey Detention Facility | 119 |
| K. | Objections to Plaintiffs' Request for Inspection of East Mesa Detention Facility | 128 |
| L. | Objections to Plaintiffs' Request for Inspection of Las Colinas Detention and Reentry Facility | 136 |
| M. | Objections to Plaintiffs' Request for Inspection of San Diego Central Jail | 145 |
| N. | Objections to Plaintiffs' Request for Inspection of South Bay Detention Facility | 148 |
| O. | Objections to Plaintiffs' Request for Inspection of Vista Detention Facility | 156 |
| P. | Objections to Plaintiffs' Request for Inspection of Jail Information Management System (JIMS) | 164 |
| Q. | Objections to Plaintiffs' Request for Inspection of Tablets | 167 |

# TABLE OF CONTENTS

## DECLARATION OF GAY GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

| EXHIBIT | DESCRIPTION | PAGE NO. |
|---------|------------|----------|
| R. | Pappy-Swearingen Email re: Dunsmore v. San Diego County Sheriff's Department, et al.: E-SERVICE - Requests for Inspection dated October 9, 2023 at 4:48 PM | 170 |
| S. | Pappy-Swearingen Email re: Dunsmore v. San Diego County Sheriff's Department, et al.: E-SERVICE - Requests for Inspection dated October 9, 2023 at 4:31 PM | 177 |
| T. | Swearingen-Coleman, Pappy Letter Re Plaintiffs' Inspection Notice dated October 17, 2023 | 183 |
| U. | County of San Diego – Request for Proposals dated August 31, 2022 | 195 |
| V. | Excerpts from Deposition of Lieutenant Derek Williamson taken on March 14, 2023 | 254 |
| W. | Swearingen-Coleman Letter dated February 8, 2023 | 261 |
| X. | Order, *Bock v. County of Sutter, et al.* E.D. 2:11-cv-0536 MCE KJN filed 05/13/13 | 265 |
| Y. | Excerpts from Deposition of Sergeant Matthew Jensen on taken March 14, 2023 | 271 |

# Exhibit A

| | |
|---|---|
| **From:** | Pappy, Elizabeth M. |
| **To:** | Aaron Fischer |
| **Cc:** | Coleman, Susan E.; Mehra, Terri; Favela, Diana; Gonzalez, Lucy; Fernando Kish; Inman, Steven; Gay C. Grunfeld; Van Swearingen; Priyah Kaul; Hannah Chartoff; Christopher Young; Kedra Chan |
| **Subject:** | RE: Dunsmore v. San Diego County et al - E-Service: Plaintiffs" Requests for Inspection |
| **Date:** | Wednesday, July 12, 2023 2:41:20 PM |
| **Attachments:** | image001.png |

---

<span style="background-color:#f5d76e">[EXTERNAL MESSAGE NOTICE]</span>

Responding to the below in advance of our call to help focus our discussions, please see my comments in red.

---

**From:** Aaron Fischer <ajf@aaronfischerlaw.com>
**Sent:** Monday, July 10, 2023 5:15 PM
**To:** Pappy, Elizabeth M. <EPappy@bwslaw.com>
**Cc:** Coleman, Susan E. <SColeman@bwslaw.com>; Mehra, Terri <TMehra@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>; Gonzalez, Lucy <LGonzalez@bwslaw.com>; Fernando Kish <Fernando.Kish@sdcounty.ca.gov>; Inman, Steven <Steven.Inman@sdcounty.ca.gov>; Gay C. Grunfeld <GGrunfeld@rbgg.com>; Van Swearingen <VSwearingen@rbgg.com>; Priyah Kaul <pkaul@rbgg.com>; Hannah Chartoff <HChartoff@rbgg.com>; Christopher Young <christopher.young@dlapiper.com>; Kedra Chan <KChan@rbgg.com>
**Subject:** RE: Dunsmore v. San Diego County et al - E-Service: Plaintiffs' Requests for Inspection
<span style="background-color:#b8d43f">[EXTERNAL]</span>

---

Dear Beth,

As requested, we have endeavored to identify Defendants' objections and concerns regarding the Rule 34 inspection notices, and to provide our responses. ***We are available for meet and confer Wednesday at 9 a.m. before the joint status conference. Would that work for you?***

1. **Request for documents (ADA and MH inspection notices)** – Defendants noted an objection to produce documents "previously disallowed." It is not entirely clear which document requests you are objecting to, but to the extent Judge Leshner limited the expedited discovery on discrete ADA/Disability issues, we do not see how that would serve as a limitation for the current stage of discovery for class certification and the merits. Please identify the specific requests in each notice to which you have a complete or partial objection. <span style="color:red">Judge Leschner's restrictions were not related to the expedited nature of the inspection. They were related to the necessity of the documents for the inspection itself. At least one of the document requests is also duplicative of what you have requested be produced on August 14th in RFPOD#3. The duplicate requests are inappropriate.</span>

Defendants also objected that the document requests "provide for less than 30 days for compliance." We served the notice on July 7, for inspections on August 16, 17, and 18. The notices request production at least 10 days prior to the tour, which would be by August 6 (*i.e.*, 30 days from the July 7 notice). To the extent the County is concerned that August 6 is a Sunday, we would be fine with production of the documents by Monday, August 7.

<span style="color:red">We will not be producing documents other than as previously ordered by the Court in connection</span>

EX. A - 2

with SDCJ prior to the inspections, particularly given the Court's prior restriction on the requests as being unrelated to the inspection itself and unnecessary to the inspection, and any other documents will be produced after the August 14th production to the extent not duplicative, when we have time given that you have us producing thousands of documents on August 14th, doing written objections to these inspection requests on August 7th and attending an inspection on August 17th.

And this is, of course, all while we are supposed to be meeting and conferring on your class certification request.

2. **"During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may engage in COMMUNICATIONS RELATED TO TOUR MANAGEMENT with EMPLOYEES at the JAIL, including but not limited to custody staff, administrative staff, and medical and mental health staff. These questions will be limited to routine questions concerning the general operations of the facility to be INSPECTED and the practical aspects of the INSPECTION." (ADA and MH inspection notices)** – Defendants object on the ground that this "amounts to depositions" and state this component "will not be permitted under any circumstances." We have provided you with a federal court order directing another county to "make a person(s) available to answer any routine questions regarding the general operations of the jail to assist plaintiffs' experts with understanding their observations during the inspection." Notably, that case was not a class action seeking injunctive relief as to current practices and conditions. Under the circumstances of the *Dunsmore* case, this requested component is even more relevant and necessary.

Other courts have issued similar rulings and allowed inspections to include these communications. *See United States v. Erie Cnty.*, No. 09-CV-849S, 2010 WL 986505, at *3 (W.D.N.Y. Mar. 17, 2010) ("Reasonable access to employees is necessary for the consultants to form an understanding and opinion about the suicide practices and protocols at the [detention center].)"; *Alvarez v. LaRose*, 2020 WL 5594908, at *12 (S.D. Cal. Sept. 18, 2020) (ruling that "Petitioners' expert will also be permitted to speak to [facility] staff members, but these conversations shall not be confidential"); *Coleman v. Schwarzenegger*, 2007 WL 3231706, at *1 (E.D. Cal., N.D. Cal. Oct. 30, 2007) (for inspection notice regarding "access to medical and mental health care and as to issues of housing, programming, exercise and activities for class members . . . questions by the experts directed to prison employees and to class members concerning those matters identified in plaintiffs' inspection request are properly included as part of an inspection of 'any operation' on the prison facilities to be inspected"); *K.L. v. Edgar*, 945 F. Supp. 167, 168-169 (N.D. Ill. 1996 (allowing plaintiffs' experts to interview staff in a mental hospital in the presence of defense counsel over defendants' objections).

Judge Leshner's prior discussions regarding expedited discovery on physical plant inaccessibility issues (rather than, e.g., mental health care operations and program access for people) did not address the present circumstances and discovery needs. And as we read the transcript of the January 9, 2023 hearing, Judge Leshner left open the possibility of further discussion of this issue if warranted. At the Central Jail inspection, we were not allowed in certain areas, including the area housing individuals with mental health needs, and we were not allowed to speak to our own potential clients about their circumstances. These limitations hampered that inspection and will make Dr. Stewart's inspection less than fruitful.

I read the two California cases and neither apply here. First, the one involving COVID-19 called for immediate action given the pandemic and its wildfire nature. The second case involved a request by Plaintiffs to be notified of and including in Defense expert inspections and not inspections noticed by Plaintiffs. The Court in the second case (Coleman) talked about the niceties of establishing "baseline" facts to avoid deposition time. That is obviously not the purpose here. You are looking for quick and easy access to witnesses without going through the same procedures everyone else does through to see IP's. You are also suggesting talking to represented individuals who likely have defense counsel as identified in the second case you cited. And interviewing staff is an improper way around depositions. These are inspections you noticed. Not defendants as in the case you cited. We will not have our expert present and there will be no "baseline" facts from these unilateral inspections.

You are free to notice depositions as you have already suggested and ask the appropriate staff questions in that manner. These inspections are not free depositions. However, just as with the prior inspections, we will have a staff person present that can answered general questions about process through myself or Ms. Coleman just as we successfully did in the first two inspections. We had no problems in those instances.

3. **During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may observe the booking and intake screening of INCARCERATED PERSONS as well as the delivery of medical and/or mental health care to INCARCERATED PERSONS, including clinical contacts, evaluation and treatment programming, and medication administration. Plaintiffs' counsel and Plaintiffs' expert will obtain permission from patients prior to engaging in such observations, as necessary to address patient privacy concerns. (ADA and MH inspection notices, with minor subject-related differences)** – Defendants object on the ground that "you are talking about violating third party privacy rights that could seriously harm the individuals involved. Many IP's are reticent enough to obtain mental health services and allowing complete strangers to 'examine or observe' them like a science experiment is completely unacceptable." Defendants state this component "will not be permitted under any circumstances."

As we have indicated, we have no intention of violating privacy rights. (We note the irony that mental health patients' care at the jail customarily takes place in non-confidential settings and in the presence of custody staff and others.)

Experts in these sorts of cases customarily observe health care delivery during Rule 34 inspections, with appropriate steps taken to gain informed consent from the patient(s) and to minimize disruption. The court order we provided specifically directed the jail in that case to "continue normal operations of the jail as much as is reasonably possible during the inspection, allowing plaintiffs' counsel and experts to observe jail operations in the ordinary course of business, but making allowance for any appropriate restrictions or modifications necessitated by good faith security concerns of the jail and jail staff." Other courts have ruled similarly. *See Coleman v. Schwarzenegger*, 2007 WL 3231706, at *1 (E.D. Cal., N.D. Cal. Oct. 30, 2007) (finding that the benefit of an inspection outweighed the burden where request focused on "access to medical and mental health care" and "issues of housing, programming, exercise and activities for class members."); United States v. Erie Cnty., No. 09-CV-849S, 2010 WL 986505, at *3 (W.D.N.Y. Mar. 17, 2010) (finding that the benefit of an inspection outweighed the burden where inspection would be focused "on the issues of suicide prevention and mental health processes and procedures.").

You do not need to see a person being spoken to by a mental health care professional to understand that a) they talk, b) they talk in certain visiting rooms or at jail cell doors, c) they are screened for mental health issues in a certain area. A deposition will net your expert the information she claims to need about mental health intake, interviews and sessions. Seeing it happen adds nothing except violating privacy rights and scaring people into not wanting mental health services because they are being observed by strangers. As I distinguished it above, Coleman has no application to this situation.

4. **During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may interview INCARCERATED PEOPLE on the JAIL's Mental Health Caseload, in the housing units or in a separate confidential setting, regarding their experiences while in custody at the facility to be INSPECTED. (ADA and MH inspection notices)** – Defendants state that this component "will not be permitted under any circumstances" but we do not see an asserted basis for the objection. Federal courts have repeatedly allowed this component in detention facility inspections. *See Alvarez v. LaRose*, 2020 WL 5594908, at *10-11 (S.D. Cal. Sept. 18, 2020) (ruling, over Defendants' objections, that the petitioners' experts could interview the detainees "who are willing to speak to Petitioners' expert in confidence"); *Ruiz v. Johnson*, 154 F. Supp. 2d 975, 993 (S.D. Tex. 2001) (describing practices, including interviews, of several experts); *K.L. v. Edgar*, 945 F. Supp. 167, 168-169 (N.D. Ill. 1996) (permitting plaintiffs' experts to confidentially interview patients in a mental hospital during their inspection, over defendants' objections); see also *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) (noting it is well settled law that plaintiffs' counsel can communicate with potential class members prior to class certification).

See my comments above.

5. **During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may take photographs of the facility to be INSPECTED. After each INSPECTION, Defendants will have an opportunity to review the photographs taken. Plaintiffs will accommodate reasonable requests to delete photographs that may compromise JAIL security. Plaintiffs will also blur the faces and any other identifying marks of individuals in any photographs that are filed on the public docket or otherwise made publicly available through the course of the litigation. (ADA and MH inspection notices)** – Defendants state that areas inspected "can be photographed without IP's present if it is available to do so." Permitting photographs is required by the plain language of Rule 34. *See also DuPonte v. Coyne-Fague*, 384 F. Supp. 3d 225, 227 (D.R.I. 2019) (A party "has a right to inspect and record the areas of [a prison] that may be relevant to [its] claims."). We share an interest in protecting individuals' privacy. We suggest a protocol similar to what the County agreed to in the course of the DRC investigation, of which your client is aware.

We worked through these issues relatively well in the Central and Rock Mountain ADA inspections. We were surprised when, after Defendants insisted on a protective order for those photographs, the Sheriff recently released photographs of Rock Mountain to a reporter, undermining Defendants' claims of security concerns.

Please send me each and every photograph provided to a reporter that reveals an item of security concern. You are mistaken about the purpose and focus of the need for the protective order and security issues and given that you were not there or a part of that process, you might want to talk to

those that were involved.

With respect to the need for multiple experts to inspect different aspects of the jail facilities, we will endeavor to coordinate expert and counsel schedules to combine inspections where possible, as we have proposed with Dr. Stewart and Ms. Sanossian and the August 17 date. We reserve the right to seek inspections of the facilities for other experts addressing discrete issues in the case.

There will never be an agreement to repeated inspections of any facility. You get one shot so whoever you want to bring for inspections best be there on August 17th.

I'm unclear as to whether you believe August 18th is going forward at George Bailey because I recall something that you might not being pursuing that now, but if it is, Ms. Sanossian will not be permitted to come a different day. Accordingly, I suggest you move the inspection for ADA and mental health to the same day when Ms. Sanossian is available.

I have also confirmed that there a few mental health locations that were not inspected at Central Jail and thus agree to allow inspection of those areas not previously inspected at Central Jail as an accommodation. A complete re-inspection will not be permitted as it is unnecessary and there is no basis for multiple inspections of the same physical location under Rule 34.

Thank you for your kind attention and professional courtesy as we proceed with this meet and confer.

-Aaron



**From:** Pappy, Elizabeth M. <EPappy@bwslaw.com>
**Sent:** Saturday, July 8, 2023 12:05 PM
**To:** Aaron Fischer <ajf@aaronfischerlaw.com>
**Cc:** Coleman, Susan E. <SColeman@bwslaw.com>; Mehra, Terri <TMehra@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>; Gonzalez, Lucy <LGonzalez@bwslaw.com>; Fernando Kish <Fernando.Kish@sdcounty.ca.gov>; Inman, Steven <Steven.Inman@sdcounty.ca.gov>; Gay C. Grunfeld <GGrunfeld@rbgg.com>; Van Swearingen <VSwearingen@rbgg.com>; Priyah Kaul <pkaul@rbgg.com>; Hannah Chartoff <HChartoff@rbgg.com>; Christopher Young <christopher.young@dlapiper.com>; Kedra Chan <KChan@rbgg.com>
**Subject:** Re: Dunsmore v. San Diego County et al - E-Service: Plaintiffs' Requests for Inspection [IMAN-DMS.FID55015]
I need to see your positions in writing.
To help guide you, if there really is a legal basis to conduct what amount to depositions during a physical inspection, I'm happy to look at it.
If you have no authority, I would expect you to simply say that.
Your written response does not need to be lengthy or formal. Bullet points responding to our objections is fine.

Thank you.

Sent from my iPhone

EX. A - 7

| From: | Gay C. Grunfeld |
|---|---|
| To: | Pappy, Elizabeth M.; Coleman, Susan E. |
| Cc: | Inman, Steven; Fernando Kish; Young, Christopher; Aaron Fischer; Van Swearingen |
| Subject: | RE: Privileged and Confidential; Follow up to July 12 Status Conference [IMAN-DMS.FID55015] |
| Date: | Wednesday, July 19, 2023 8:22:51 PM |

█████████████████████████████████████

Dear Beth,

████████████████████████████████████████
███████████████████████████████████
██████████████████████████████████
████████████████████████

████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████
█████████████████████

In the meantime, we are willing to take the August 16-18 inspection dates off calendar. We request that the County agree to hold certain dates, including November 1-3, for Plaintiffs' inspections. Defendants of course reserve their rights to argue their "only one inspection" position, but we request that certain dates be held in the meantime, should there be an agreement or court order for inspections to go forward consistent with the proposal in our July 14 letter. We will be back in touch shortly with our additional requested "hold" dates.

█████████████████████████████████

█████████████████████████████████████████
█████████████████████████████████████████
███████████████████████████████████
████████████████████████

EX. A - 8



EX. A - 9

.

Thank you for your ongoing courtesy and continued discussion of these important matters, Gay

Gay Crosthwait Grunfeld
Managing Partner
She/her
**ROSEN BIEN GALVAN & GRUNFELD LLP**
**101 Mission Street, Sixth Floor**
**San Francisco, CA 94105**
(415) 433-6830 telephone
(415) 433-7104 facsimile

# Exhibit B

GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:  (415) 433-6830
Facsimile:  (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:  (858) 677-1400
Facsimile:  (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California  94709
Telephone:  (510) 806-7366
Facsimile:  (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Subclass

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**PLAINTIFFS' REQUEST FOR INSPECTION OF GEORGE BAILEY DETENTION FACILITY AND PRODUCTION OF DOCUMENTS**<br><br>Judge:      Hon. Anthony J. Battaglia<br>Magistrate: Hon. David D. Leshner |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule 34, Plaintiffs Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner ("Plaintiffs"), on behalf of themselves, all persons similarly situated, and the certified subclass of all qualified individuals with a hearing and/or mobility disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, be incarcerated in the Jail, by and through their attorneys, submit the following Request for Inspection of George Bailey Detention Facility ("George Bailey") and Production of Documents to Defendants San Diego County Sheriff's Department and the County of San Diego ("Defendants"). Plaintiffs request that Plaintiffs' counsel and Plaintiffs' experts specified herein inspect George Bailey on November 2, 2023 from 9:00 a.m. to 5:00 p.m. Plaintiffs reserve the right to schedule additional inspections if necessary.

## DEFINITIONS

Unless otherwise indicated, the following definitions and terms shall apply to this Request for Inspection:

1.     The terms "ANY" and "ALL," as used herein, shall include "each" and "every" and are not to be construed to limit a request.

2.     The term "ADA" means the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* as well as related federal and state laws that require accommodation of disabilities and prohibit discrimination on the basis of disability.

3.     The term "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a

hand held personal device including an Android or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, text messages, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X, Zoom, and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

4.      The term "COMMUNICATIONS RELATED TO TOUR MANAGEMENT" means ALL communications arising from routine questions concerning the general operations of the JAIL and the practical aspects of the JAIL INSPECTION, including the locations in which activities, services, and operations take place in the JAIL; the schedule on which activities, services, and operations will occur on the days of the JAIL INSPECTION; the manner in which activities, services, and operations are conducted both when a JAIL INSPECTION is taking place and is not taking place; the location of records, files, and logbooks; the content of custodial and other records; the name and job title of EMPLOYEES; and the routine procedures for recording and retrieving information in records, files and logbooks.

5.      The term "CONTRACTOR" includes any individual or entity, or an EMPLOYEE of the same, who is hired, retained, or otherwise authorized by YOU to undertake any task, service, role, or job on YOUR behalf.  The term includes but is not limited to NaphCare, Inc. and NaphCare of San Diego, LLC.

6.      The term "COUNTY" means Defendant San Diego County and anyone acting on its behalf.

7.      The term "CURRENT" means in effect and not superseded and/or issued on or after January 1, 2022.

8.      The term "DEATH(S)" means the action or fact of dying or being killed, including by suicide.

9.      The terms "DEFENDANTS," "YOU," or "YOUR" means the San Diego County Sheriff's Department, San Diego County, and the San Diego County Probation Department, and anyone acting on their behalf.

10.     The terms "DISABILITY" and "DISABILITIES" mean any physical, cognitive, developmental, intellectual, mental, or sensory impairment that limits one or more major life activities, including but not limited to, eating, sleeping, speaking, breathing, walking, standing, lifting, bending, thinking, concentrating, seeing, hearing, working, reading, learning, communicating, reading, caring for oneself, and performing manual tasks, as well as the operation of major bodily functions such as circulation, reproduction, and the functioning of individual organs.  The terms also include having a history or record of such impairment or being perceived by others as having such an impairment.

11.     The term "DOCUMENT" means any writing, however produced or reproduced, of every kind and regardless of where located, which is in YOUR possession, custody, or control, including drafts; or in the possession, custody or control of any servant or agent of YOU or of YOUR attorneys.  The terms include the following: electronically recorded information such as electronic mail, html files, databases, data processing cards or tapes, computerized data, computer diskettes, or information otherwise contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes, view-graphs, or any information maintained on digital, electronic, magnetic or other media; and any other summary, schedule, memorandum, note, statement, letter, telegram, interoffice communication, report, diary, worksheet, list, graph, chart, or index, tape record, partial or complete report of telephone or oral conversation, transcript or minutes, compilation, tabulation, study, analysis, or other such writing or recording.  The terms "DOCUMENT" and "DOCUMENTS" include any originals, all file copies, all other copies, no matter

how prepared, and all drafts prepared in connection with such DOCUMENTS, whether or not used, as well as the file in which the DOCUMENTS are maintained. A draft or non-identical copy of a DOCUMENT, including a copy or duplicate of a DOCUMENT which has any nonconforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing, is a separate DOCUMENT within the meaning of these terms. The term "DOCUMENT" does not include any writing that constitutes a privileged or otherwise protected communication between YOU and YOUR attorneys.

12.     The term "EMPLOYEE" means any employee, director, officer, owner, CONTRACTOR, agent, or any other person working for or on behalf of an entity, such as the COUNTY, the SHERIFF'S DEPARTMENT, or the PROBATION DEPARTMENT.

13.     The term "EOH" means Enhanced Observation Housing, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure J.4.

14.     The term "GRIEVANCE" means a written complaint completed by or on behalf of an INCARCERATED PERSON.

15.     The term "HEALTH CARE" means the provision of care or services, to identify and/or address health needs of an INCARCERATED PERSON in the JAIL (including medical, mental health, dental care, and vision care needs), whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

16.     The term "HEALTH CARE STAFF" means any person or entity providing HEALTH CARE services, or providing administrative and/or support services related to HEALTH CARE at the JAIL.

17.     "IDENTIFY," with respect to an INCARCERATED PERSON or formerly INCARCERATED PERSON, means to state the INCARCERATED PERSON's full name, booking number, date of birth, booking date, and CURRENT housing location (if still in custody) or date of release (if no longer in custody).

18.     "IDENTIFY," with respect to a non-INCARCERATED PERSON,
means to state the person's name, professional title, credentials and licensing
information if applicable, and professional address.

19.     The terms "INCARCERATED PERSON(S)" or "INCARCERATED
PEOPLE" mean any person incarcerated, detained, or in the custody of the
SHERIFF'S DEPARTMENT.

20.     The terms "INSPECT" or "INSPECTION(S)" mean to walk around
and observe ALL JAIL facilities, including but not limited to ALL areas in which
staff interact with INCARCERATED PERSONS; ALL areas in which
INCARCERATED PERSONS are housed, bathe, use the toilets, or spend out-of-
cell time; and ALL walkways, staircases, elevators, and other areas of the JAIL used
by INCARCERATED PERSONS.  These terms further mean to ask questions
informally of EMPLOYEES who Plaintiffs' expert and/or Plaintiffs' counsel meet
and/or encounter during the course of the INSPECTIONS.  The terms further mean
to review records at the JAIL, including but not limited to observing where and how
records are maintained.

21.     The term "JAIL" means the San Diego County Jail, including all of its
facilities.

22.     The term "MENTAL HEALTH CARE" means the provision of care or
services, to identify and/or address the mental health needs of an INCARCERATED
PERSON in the JAIL, whether those needs arise as a result of injury, illness,
disease, age, or trauma, or care or services provided for diagnostic or preventive
purposes.

23.     The term "MOB" means Medical Observation Bed, as defined in
SHERIFF'S DEPARTMENT Medical Services Division Policy & Procedure M-13.

24.     The term "OPSD" means Outpatient Step-Down units for people with
mental health conditions and/or mental health care needs.

25.     The term "PLAINTIFFS" means Plaintiffs Darryl Dunsmore, Andree

Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna
Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares,
Gustavo Sepulveda, Michael Taylor, and Laura Zoerner.

26.    The term "POLICIES AND PROCEDURES" means policies,
procedures, handbooks, advice, directives, training materials, forms, instructions,
and guidelines that comprise established standards, regardless of the author.

27.    The term "PROBATION DEPARTMENT" means Defendant San
Diego County Probation Department and anyone acting on its behalf.

28.    The term "PSU" means Psychiatric Stabilization Unit or Psychiatric
Security Unit, as defined in SHERIFF'S DEPARTMENT Detention Policy
& Procedure M.25.

29.    The terms "RELATED TO," "RELATING TO," or "REGARDING"
means, without limitation, anything that, in whole or in part, analyzes, comments
upon, comprises, concerns, constitutes, contains, describes, discusses, embodies,
evidences, explains, identifies, manifests, mentions, pertains to directly or indirectly
to, reflects, refers to, regards, relates to, responds to, states, summarizes, or in any
way relevant to the particular subject matter identified.

30.    The term "SAFETY CELL" means a temporary housing cell with a
padded surface, as defined in SHERIFF'S DEPARTMENT Detention Policy
& Procedure J.1.

31.    The term "SHERIFF'S DEPARTMENT" means Defendant San Diego
County Sheriff's Department and anyone acting on its behalf.

32.    The term "SOBERING CELL" means JAIL cells used to house
INCARCERATED PERSONS away from other INCARCERATED PERSONS for
the specific purposes of detoxification or sobering up; the term includes sobering
cells and detoxification cells.

33.    The term "STAFFING PLAN" means any DOCUMENT showing the
minimum number and types of EMPLOYEES DEFENDANTS intend to work in the

JAIL and the minimum number of hours DEFENDANTS intend those
EMPLOYEES to work to staff the JAIL, including EMPLOYEES of
CONTRACTORS.

34.     The words "and" and "or" should be construed disjunctively or
conjunctively as necessary to make the Request inclusive rather than exclusive.

## INSTRUCTIONS

1.     Prior to the commencement of the INSPECTION, PLAINTIFFS
request that DEFENDANTS provide PLAINTIFFS' counsel with the following
information and DOCUMENTS.  PLAINTIFFS further request that DEFENDANTS
produce this information at least two days before the INSPECTION:

     a.     A map and floor plans of George Bailey, including identifying
ALL housing units, ALL spaces used for HEALTH CARE, ALL spaces used for
MENTAL HEALTH CARE, and ALL dental clinic spaces (including those used for
taking dental x-rays).

     b.     An organizational chart identifying supervisory staff at George
Bailey.

     c.     A complete roster of INCARCERATED PEOPLE at George
Bailey as of the date of production, including their housing placements (unit and bed
assignment, type of housing (SAFETY CELL, SOBERING CELL, EOH, MOB,
PSU, OPSD, etc.), if applicable).  For each INCARCERATED PERSON, please
include their name, date of birth, booking number, booking date, classification
status, and estimated date of release, if available.  Identify on the roster each
INCARCERATED PERSON who is on the Medical Care caseload, the Mental
Health caseload, and/or the Dental Care caseload as of the date of production.
Identify on the roster each INCARCERATED PERSON with a DISABILITY in
George Bailey as of the date of production, and for each INCARCERATED
PERSON with a DISABILITY, include their DISABILITY or DISABILITIES and
ALL information about ANY accommodations (including housing accommodations

and assistive devices) that YOU provide to the individual.

       d.    Logs, rosters, or other tracking systems, as specified herein:

         i.    ALL logs, rosters, or other tracking system of ANY kind used by Defendants to track which INCARCERATED PERSONS are on the JAIL's Medical Care caseload, Mental Health caseload, Dental Care caseload, and/or sick call list, for the six months preceding the INSPECTION.

         ii.    ANY logs, rosters, or other tracking system of ANY kind used by Defendants to track antibiotic prescriptions provided to INCARCERATED PERSONS to treat or manage dental pain or dental care concerns.

         iii.    ALL logs, rosters, or other tracking system of ANY kind used by DEFENDANTS to track which INCARCERATED PERSONS have a DISABILITY or DISABILITIES, and the DISABILITY accommodations the INCARCERATED PERSONS require, for the six months preceding the INSPECTION.

         iv.    ALL logs, rosters, or other tracking system of ANY kind used by DEFENDANTS related to DISABILITY accommodations offered or provided to INCARCERATED PERSONS at George Bailey (with specific accommodations identified) during the six months preceding the date of INSPECTION, including but not limited to EFFECTIVE COMMUNICATION, REASONABLE ACCOMMODATIONS, ADA-accessible housing placement, wheelchairs, canes, and program modifications.

       e.    Documentation sufficient to show which programs, services and activities, including but not limited to, education, exercise, vocation, religious, substance abuse, library, and rehabilitative programs, are offered to INCARCERATED PERSONS with DISABILITIES, INCARCERATED PERSONS on the JAIL's Medical Care caseload, INCARCERATED PERSONS on the JAIL's Mental Health caseload, and INCARCERATED PERSONS on the JAIL's Dental Care caseload; the locations in which the programs are offered; the schedule on

which the programs are supposed to be offered; and the actual dates and times the programs have been offered in the 90 days preceding the INSPECTION.

f.    ALL documentation related to ANY temporary or permanent modification made to ANY physical structure, program, service, or activity at the facility to be INSPECTED for the purpose of providing a DISABILITY accommodation during the 12 months preceding the date of INSPECTION, including any schematic, design, or construction DOCUMENTS.

g.    A list of ALL housing placements to which DEFENDANTS assign INCARCERATED PERSONS with MOBILITY DISABILITIES, including those who (1) are wheelchair users, (2) use a cane for stability or mobility, (3) cannot climb stairs, (4) cannot climb into an upper bunk, (5) use crutches, (6) use walkers or similar mobility assistance devices; and/or (7) have a prosthetic limb.

2.    During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may engage in COMMUNICATIONS RELATED TO TOUR MANAGEMENT with EMPLOYEES at the Jail, including but not limited to correctional staff, administrative staff, and medical and mental health staff.  These questions will be limited to routine questions concerning the general operations of the facility to be INSPECTED and the practical aspects of the INSPECTION.

3.    During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may observe the booking and intake screening of INCARCERATED PERSONS as well as the delivery of medical, dental, and/or mental health care to INCARCERATED PERSONS, including clinical contacts, evaluation and treatment programming, and medication administration.  Plaintiffs' counsel and Plaintiffs' expert will obtain permission from patients prior to engaging in such observations, as necessary to address patient privacy concerns.

4.    During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may interview, in the housing units or in a separate confidential setting, INCARCERATED PEOPLE, including but not limited to INCARCERATED

PEOPLE with DISABILITIES, INCARCERATED PEOPLE on the JAIL's Medical Care caseload, INCARCERATED PEOPLE on the JAIL's Mental Health caseload, and INCARCERATED PEOPLE on the JAIL's Dental Care caseload, regarding their experiences while in custody at the JAIL.

5.      During the INSPECTION, Plaintiffs' counsel and Plaintiffs' experts may take photographs of George Bailey.  After the INSPECTION, Defendants will have an opportunity to review the photographs taken.  Plaintiffs will accommodate reasonable requests to delete photographs that may compromise JAIL security. Plaintiffs will also blur the faces of individuals in any photographs that are filed on the public docket or otherwise made publicly available through the course of the litigation.

**REQUEST FOR INSPECTION**

PLAINTIFFS' counsel and PLAINTIFFS' experts Robert Cohen, M.D.; Pablo Stewart, M.D.; James Austin, Ph.D.; Jay Shulman, DMD; Syroun Sanossian and SZS Engineering, Inc.; and Debbie Graham will INSPECT George Bailey Detention Facility on November 2, 2023 from 9:00 a.m. to 5:00 p.m.

DATED:  September 1, 2023          ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Gay Crosthwait Grunfeld*
      Gay Crosthwait Grunfeld

Attorneys for Plaintiffs and the
Certified Subclass

## PROOF OF SERVICE

***Dunsmore et al. v. San Diego County Sheriff's Dept., et al.***
**Case No. 20-cv-00406 AJB DDL**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 101 Mission Street, Sixth Floor, San Francisco, CA 94105-1738.

On September 1, 2023, I served true copies of the following document(s) described as:

**PLAINTIFFS' REQUEST FOR INSPECTION OF GEORGE BAILEY DETENTION FACILITY AND PRODUCTION OF DOCUMENTS**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address kchan@rbgg.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 1, 2023, at San Francisco, California.

I. Kedra Chan

EX. B - 23

**SERVICE LIST**
*Dunsmore et al. v. San Diego County Sheriff's Dept., et al.*
**Case No. 20-cv-00406 AJB DDL**

BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600
San Diego, CA 92101

Susan E. Coleman
   (SColeman@bwslaw.com)
Terri Mehra
   (TMehra@bwslaw.com)
Diana Favela
   (DFavela@bwslaw.com)

OFFICE OF COUNTY COUNSEL,
COUNTY OF SAN DIEGO
1600 Pacific Highway, Room 355
San Diego, CA 92101-2469

Fernando Kish
   (Fernando.Kish@sdcounty.ca.gov)
Steven Inman
   (Steven.Inman@sdcounty.ca.gov)

BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Suite 1000
San Jose, CA 95113-2336

Elizabeth M. Pappy
   (EPappy@bwslaw.com)
Lucy Gonzalez
   (LGonzalez@bwslaw.com)

Attorneys for Defendants County of San Diego, San Diego County Sheriff's Department, and San Diego County Probation Department

EX. B - 24

# Exhibit C

GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone:  (510) 806-7366
Facsimile:   (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Subclass

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No. 3:20-cv-00406-AJB-DDL <br><br> **PLAINTIFFS' REQUEST FOR INSPECTION OF EAST MESA REENTRY FACILITY AND PRODUCTION OF DOCUMENTS** <br><br> Judge:      Hon. Anthony J. Battaglia <br> Magistrate: Hon. David D. Leshner |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule 34, Plaintiffs Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner ("Plaintiffs"), on behalf of themselves, all persons similarly situated, and the certified subclass of all qualified individuals with a hearing and/or mobility disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, be incarcerated in the Jail, by and through their attorneys, submit the following Request for Inspection of East Mesa Reentry Facility ("East Mesa") and Production of Documents to Defendants San Diego County Sheriff's Department and the County of San Diego ("Defendants"). Plaintiffs request that Plaintiffs' counsel and Plaintiffs' experts specified herein inspect East Mesa on November 7, 2023 from 9:00 a.m. to 5:00 p.m. Plaintiffs reserve the right to schedule additional inspections if necessary.

## DEFINITIONS

Unless otherwise indicated, the following definitions and terms shall apply to this Request for Inspection:

1. The terms "ANY" and "ALL," as used herein, shall include "each" and "every" and are not to be construed to limit a request.

2. The term "ADA" means the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* as well as related federal and state laws that require accommodation of disabilities and prohibit discrimination on the basis of disability.

3. The term "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a

hand held personal device including an Android or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, text messages, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X, Zoom, and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

4.      The term "COMMUNICATIONS RELATED TO TOUR MANAGEMENT" means ALL communications arising from routine questions concerning the general operations of the JAIL and the practical aspects of the JAIL INSPECTION, including the locations in which activities, services, and operations take place in the JAIL; the schedule on which activities, services, and operations will occur on the days of the JAIL INSPECTION; the manner in which activities, services, and operations are conducted both when a JAIL INSPECTION is taking place and is not taking place; the location of records, files, and logbooks; the content of custodial and other records; the name and job title of EMPLOYEES; and the routine procedures for recording and retrieving information in records, files and logbooks.

5.      The term "CONTRACTOR" includes any individual or entity, or an EMPLOYEE of the same, who is hired, retained, or otherwise authorized by YOU to undertake any task, service, role, or job on YOUR behalf.  The term includes but is not limited to NaphCare, Inc. and NaphCare of San Diego, LLC.

6.      The term "COUNTY" means Defendant San Diego County and anyone acting on its behalf.

7.      The term "CURRENT" means in effect and not superseded and/or issued on or after January 1, 2022.

8.     The term "DEATH(S)" means the action or fact of dying or being killed, including by suicide.

9.     The terms "DEFENDANTS," "YOU," or "YOUR" means the San Diego County Sheriff's Department, San Diego County, and the San Diego County Probation Department, and anyone acting on their behalf.

10.    The terms "DISABILITY" and "DISABILITIES" mean any physical, cognitive, developmental, intellectual, mental, or sensory impairment that limits one or more major life activities, including but not limited to, eating, sleeping, speaking, breathing, walking, standing, lifting, bending, thinking, concentrating, seeing, hearing, working, reading, learning, communicating, reading, caring for oneself, and performing manual tasks, as well as the operation of major bodily functions such as circulation, reproduction, and the functioning of individual organs.  The terms also include having a history or record of such impairment or being perceived by others as having such an impairment.

11.    The term "DOCUMENT" means any writing, however produced or reproduced, of every kind and regardless of where located, which is in YOUR possession, custody, or control, including drafts; or in the possession, custody or control of any servant or agent of YOU or of YOUR attorneys.  The terms include the following: electronically recorded information such as electronic mail, html files, databases, data processing cards or tapes, computerized data, computer diskettes, or information otherwise contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes, view-graphs, or any information maintained on digital, electronic, magnetic or other media; and any other summary, schedule, memorandum, note, statement, letter, telegram, interoffice communication, report, diary, worksheet, list, graph, chart, or index, tape record, partial or complete report of telephone or oral conversation, transcript or minutes, compilation, tabulation, study, analysis, or other such writing or recording.  The terms "DOCUMENT" and "DOCUMENTS" include any originals, all file copies, all other copies, no matter

how prepared, and all drafts prepared in connection with such DOCUMENTS, whether or not used, as well as the file in which the DOCUMENTS are maintained. A draft or non-identical copy of a DOCUMENT, including a copy or duplicate of a DOCUMENT which has any nonconforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing, is a separate DOCUMENT within the meaning of these terms. The term "DOCUMENT" does not include any writing that constitutes a privileged or otherwise protected communication between YOU and YOUR attorneys.

12.     The term "EMPLOYEE" means any employee, director, officer, owner, CONTRACTOR, agent, or any other person working for or on behalf of an entity, such as the COUNTY, the SHERIFF'S DEPARTMENT, or the PROBATION DEPARTMENT.

13.     The term "EOH" means Enhanced Observation Housing, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure J.4.

14.     The term "GRIEVANCE" means a written complaint completed by or on behalf of an INCARCERATED PERSON.

15.     The term "HEALTH CARE" means the provision of care or services, to identify and/or address health needs of an INCARCERATED PERSON in the JAIL (including medical, mental health, dental care, and vision care needs), whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

16.     The term "HEALTH CARE STAFF" means any person or entity providing HEALTH CARE services, or providing administrative and/or support services related to HEALTH CARE at the JAIL.

17.     "IDENTIFY," with respect to an INCARCERATED PERSON or formerly INCARCERATED PERSON, means to state the INCARCERATED PERSON's full name, booking number, date of birth, booking date, and CURRENT housing location (if still in custody) or date of release (if no longer in custody).

18.     "IDENTIFY," with respect to a non-INCARCERATED PERSON, means to state the person's name, professional title, credentials and licensing information if applicable, and professional address.

19.     The terms "INCARCERATED PERSON(S)" or "INCARCERATED PEOPLE" mean any person incarcerated, detained, or in the custody of the SHERIFF'S DEPARTMENT.

20.     The terms "INSPECT" or "INSPECTION(S)" mean to walk around and observe ALL JAIL facilities, including but not limited to ALL areas in which staff interact with INCARCERATED PERSONS; ALL areas in which INCARCERATED PERSONS are housed, bathe, use the toilets, or spend out-of-cell time; and ALL walkways, staircases, elevators, and other areas of the JAIL used by INCARCERATED PERSONS.  These terms further mean to ask questions informally of EMPLOYEES who Plaintiffs' expert and/or Plaintiffs' counsel meet and/or encounter during the course of the INSPECTIONS.  The terms further mean to review records at the JAIL, including but not limited to observing where and how records are maintained.

21.     The term "JAIL" means the San Diego County Jail, including all of its facilities.

22.     The term "MENTAL HEALTH CARE" means the provision of care or services, to identify and/or address the mental health needs of an INCARCERATED PERSON in the JAIL, whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

23.     The term "MOB" means Medical Observation Bed, as defined in SHERIFF'S DEPARTMENT Medical Services Division Policy & Procedure M-13.

24.     The term "OPSD" means Outpatient Step-Down units for people with mental health conditions and/or mental health care needs.

25.     The term "PLAINTIFFS" means Plaintiffs Darryl Dunsmore, Andree

Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner.

26.    The term "POLICIES AND PROCEDURES" means policies, procedures, handbooks, advice, directives, training materials, forms, instructions, and guidelines that comprise established standards, regardless of the author.

27.    The term "PROBATION DEPARTMENT" means Defendant San Diego County Probation Department and anyone acting on its behalf.

28.    The term "PSU" means Psychiatric Stabilization Unit or Psychiatric Security Unit, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure M.25.

29.    The terms "RELATED TO," "RELATING TO," or "REGARDING" means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains to directly or indirectly to, reflects, refers to, regards, relates to, responds to, states, summarizes, or in any way relevant to the particular subject matter identified.

30.    The term "SAFETY CELL" means a temporary housing cell with a padded surface, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure J.1.

31.    The term "SHERIFF'S DEPARTMENT" means Defendant San Diego County Sheriff's Department and anyone acting on its behalf.

32.    The term "SOBERING CELL" means JAIL cells used to house INCARCERATED PERSONS away from other INCARCERATED PERSONS for the specific purposes of detoxification or sobering up; the term includes sobering cells and detoxification cells.

33.    The term "STAFFING PLAN" means any DOCUMENT showing the minimum number and types of EMPLOYEES DEFENDANTS intend to work in the

JAIL and the minimum number of hours DEFENDANTS intend those
EMPLOYEES to work to staff the JAIL, including EMPLOYEES of
CONTRACTORS.

34.    The words "and" and "or" should be construed disjunctively or
conjunctively as necessary to make the Request inclusive rather than exclusive.

**INSTRUCTIONS**

1.    Prior to the commencement of the INSPECTION, PLAINTIFFS
request that DEFENDANTS provide PLAINTIFFS' counsel with the following
information and DOCUMENTS.  PLAINTIFFS further request that DEFENDANTS
produce this information at least two days before the INSPECTION:

a.    A map and floor plans of East Mesa, including identifying ALL
housing units.

b.    An organizational chart identifying supervisory staff at East
Mesa.

c.    A complete roster of INCARCERATED PEOPLE at East Mesa
as of the date of production, including their housing placements (unit and bed
assignment, type of housing (SAFETY CELL, SOBERING CELL, EOH, MOB,
PSU, OPSD, etc.), if applicable).  For each INCARCERATED PERSON, please
include their name, date of birth, booking number, booking date, classification
status, and estimated date of release, if available.  Identify on the roster each
INCARCERATED PERSON with a DISABILITY in East Mesa as of the date of
production, and for each INCARCERATED PERSON with a DISABILITY, include
their DISABILITY or DISABILITIES and ALL information about ANY
accommodations (including housing accommodations and assistive devices) that
YOU provide to the individual.

d.    Logs, rosters, or other tracking systems, as specified herein:

i.    ALL logs, rosters, or other tracking system of ANY kind
used by DEFENDANTS to track which INCARCERATED PERSONS have a

EX. C - 33

DISABILITY or DISABILITIES, and the DISABILITY accommodations the INCARCERATED PERSONS require, for the six months preceding the INSPECTION.

        ii.    ALL logs, rosters, or other tracking system of ANY kind used by DEFENDANTS related to DISABILITY accommodations offered or provided to INCARCERATED PERSONS at East Mesa (with specific accommodations identified) during the six months preceding the date of INSPECTION, including but not limited to EFFECTIVE COMMUNICATION, REASONABLE ACCOMMODATIONS, ADA-accessible housing placement, wheelchairs, canes, and program modifications.

        e.    Documentation sufficient to show which programs, services and activities, including but not limited to, education, exercise, vocation, religious, substance abuse, library, and rehabilitative programs, are offered to INCARCERATED PERSONS with DISABILITIES; the locations in which the programs are offered; the schedule on which the programs are supposed to be offered; and the actual dates and times the programs have been offered in the 90 days preceding the INSPECTION.

        f.    ALL documentation related to ANY temporary or permanent modification made to ANY physical structure, program, service, or activity at the facility to be INSPECTED for the purpose of providing a DISABILITY accommodation during the 12 months preceding the date of INSPECTION, including any schematic, design, or construction DOCUMENTS.

        g.    A list of ALL housing placements to which DEFENDANTS assign INCARCERATED PERSONS with MOBILITY DISABILITIES, including those who (1) are wheelchair users, (2) use a cane for stability or mobility, (3) cannot climb stairs, (4) cannot climb into an upper bunk, (5) use crutches, (6) use walkers or similar mobility assistance devices; and/or (7) have a prosthetic limb.

        2.    During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert

may engage in COMMUNICATIONS RELATED TO TOUR MANAGEMENT with EMPLOYEES at the Jail, including but not limited to correctional staff, administrative staff, and medical and mental health staff.  These questions will be limited to routine questions concerning the general operations of the facility to be INSPECTED and the practical aspects of the INSPECTION.

3.      During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may observe the booking and intake screening of INCARCERATED PERSONS. Plaintiffs' counsel and Plaintiffs' expert will obtain permission from patients prior to engaging in such observations, as necessary to address patient privacy concerns.

4.      During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may interview, in the housing units or in a separate confidential setting, INCARCERATED PEOPLE, including but not limited to INCARCERATED PEOPLE with DISABILITIES, regarding their experiences while in custody at the JAIL.

5.      During the INSPECTION, Plaintiffs' counsel and Plaintiffs' experts may take photographs of East Mesa.  After the INSPECTION, Defendants will have an opportunity to review the photographs taken.  Plaintiffs will accommodate reasonable requests to delete photographs that may compromise JAIL security. Plaintiffs will also blur the faces of individuals in any photographs that are filed on the public docket or otherwise made publicly available through the course of the litigation.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

EX. C - 35

# REQUEST FOR INSPECTION

PLAINTIFFS' counsel and PLAINTIFFS' experts Syroun Sanossian and SZS Engineering, Inc.; and Debbie Graham will INSPECT East Mesa Reentry Facility on November 7, 2023 from 9:00 a.m. to 5:00 p.m.


DATED:  September 1, 2023          ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Gay Crosthwait Grunfeld*
    Gay Crosthwait Grunfeld

Attorneys for Plaintiffs and the
Certified Subclass

EX. C - 36

## PROOF OF SERVICE

***Dunsmore et al. v. San Diego County Sheriff's Dept., et al.***
**Case No. 20-cv-00406 AJB DDL**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 101 Mission Street, Sixth Floor, San Francisco, CA 94105-1738.

On September 1, 2023, I served true copies of the following document(s) described as:

**PLAINTIFFS' REQUEST FOR INSPECTION OF EAST MESA REENTRY FACILITY AND PRODUCTION OF DOCUMENTS**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address kchan@rbgg.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 1, 2023, at San Francisco, California.

I. Kedra Chan

PROOF OF SERVICE

EX. C - 37

**SERVICE LIST**
***Dunsmore et al. v. San Diego County Sheriff's Dept., et al.***
**Case No. 20-cv-00406 AJB DDL**

BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600
San Diego, CA 92101

Susan E. Coleman
   (SColeman@bwslaw.com)
Terri Mehra
   (TMehra@bwslaw.com)
Diana Favela
   (DFavela@bwslaw.com)

OFFICE OF COUNTY COUNSEL,
COUNTY OF SAN DIEGO
1600 Pacific Highway, Room 355
San Diego, CA 92101-2469

Fernando Kish
   (Fernando.Kish@sdcounty.ca.gov)
Steven Inman
   (Steven.Inman@sdcounty.ca.gov)

BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Suite 1000
San Jose, CA 95113-2336

Elizabeth M. Pappy
   (EPappy@bwslaw.com)
Lucy Gonzalez
   (LGonzalez@bwslaw.com)

Attorneys for Defendants County of San Diego, San Diego County Sheriff's Department, and San Diego County Probation Department

EX. C - 38

# Exhibit D

GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California  94709
Telephone:  (510) 806-7366
Facsimile:   (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Subclass

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No. 3:20-cv-00406-AJB-DDL <br><br> **PLAINTIFFS' REQUEST FOR INSPECTION OF LAS COLINAS DETENTION AND REENTRY FACILITY AND PRODUCTION OF DOCUMENTS** <br><br> Judge:      Hon. Anthony J. Battaglia <br> Magistrate: Hon. David D. Leshner |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule 34, Plaintiffs Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner ("Plaintiffs"), on behalf of themselves, all persons similarly situated, and the certified subclass of all qualified individuals with a hearing and/or mobility disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, be incarcerated in the Jail, by and through their attorneys, submit the following Request for Inspection of Las Colinas Detention and Reentry Facility ("Las Colinas") and Production of Documents to Defendants San Diego County Sheriff's Department and the County of San Diego ("Defendants"). Plaintiffs request that Plaintiffs' counsel and Plaintiffs' experts specified herein inspect Las Colinas on November 3, 2023 from 9:00 a.m. to 5:00 p.m. Plaintiffs reserve the right to schedule additional inspections if necessary.

## DEFINITIONS

Unless otherwise indicated, the following definitions and terms shall apply to this Request for Inspection:

1.      The terms "ANY" and "ALL," as used herein, shall include "each" and "every" and are not to be construed to limit a request.

2.      The term "ADA" means the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* as well as related federal and state laws that require accommodation of disabilities and prohibit discrimination on the basis of disability.

3.      The term "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a

hand held personal device including an Android or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, text messages, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X, Zoom, and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

    4.    The term "COMMUNICATIONS RELATED TO TOUR MANAGEMENT" means ALL communications arising from routine questions concerning the general operations of the JAIL and the practical aspects of the JAIL INSPECTION, including the locations in which activities, services, and operations take place in the JAIL; the schedule on which activities, services, and operations will occur on the days of the JAIL INSPECTION; the manner in which activities, services, and operations are conducted both when a JAIL INSPECTION is taking place and is not taking place; the location of records, files, and logbooks; the content of custodial and other records; the name and job title of EMPLOYEES; and the routine procedures for recording and retrieving information in records, files and logbooks.

    5.    The term "CONTRACTOR" includes any individual or entity, or an EMPLOYEE of the same, who is hired, retained, or otherwise authorized by YOU to undertake any task, service, role, or job on YOUR behalf. The term includes but is not limited to NaphCare, Inc. and NaphCare of San Diego, LLC.

    6.    The term "COUNTY" means Defendant San Diego County and anyone acting on its behalf.

    7.    The term "CURRENT" means in effect and not superseded and/or issued on or after January 1, 2022.

8.      The term "DEATH(S)" means the action or fact of dying or being killed, including by suicide.

9.      The terms "DEFENDANTS," "YOU," or "YOUR" means the San Diego County Sheriff's Department, San Diego County, and the San Diego County Probation Department, and anyone acting on their behalf.

10.     The terms "DISABILITY" and "DISABILITIES" mean any physical, cognitive, developmental, intellectual, mental, or sensory impairment that limits one or more major life activities, including but not limited to, eating, sleeping, speaking, breathing, walking, standing, lifting, bending, thinking, concentrating, seeing, hearing, working, reading, learning, communicating, reading, caring for oneself, and performing manual tasks, as well as the operation of major bodily functions such as circulation, reproduction, and the functioning of individual organs.  The terms also include having a history or record of such impairment or being perceived by others as having such an impairment.

11.     The term "DOCUMENT" means any writing, however produced or reproduced, of every kind and regardless of where located, which is in YOUR possession, custody, or control, including drafts; or in the possession, custody or control of any servant or agent of YOU or of YOUR attorneys.  The terms include the following: electronically recorded information such as electronic mail, html files, databases, data processing cards or tapes, computerized data, computer diskettes, or information otherwise contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes, view-graphs, or any information maintained on digital, electronic, magnetic or other media; and any other summary, schedule, memorandum, note, statement, letter, telegram, interoffice communication, report, diary, worksheet, list, graph, chart, or index, tape record, partial or complete report of telephone or oral conversation, transcript or minutes, compilation, tabulation, study, analysis, or other such writing or recording.  The terms "DOCUMENT" and "DOCUMENTS" include any originals, all file copies, all other copies, no matter

how prepared, and all drafts prepared in connection with such DOCUMENTS, whether or not used, as well as the file in which the DOCUMENTS are maintained. A draft or non-identical copy of a DOCUMENT, including a copy or duplicate of a DOCUMENT which has any nonconforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing, is a separate DOCUMENT within the meaning of these terms. The term "DOCUMENT" does not include any writing that constitutes a privileged or otherwise protected communication between YOU and YOUR attorneys.

12.    The term "EMPLOYEE" means any employee, director, officer, owner, CONTRACTOR, agent, or any other person working for or on behalf of an entity, such as the COUNTY, the SHERIFF'S DEPARTMENT, or the PROBATION DEPARTMENT.

13.    The term "EOH" means Enhanced Observation Housing, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure J.4.

14.    The term "GRIEVANCE" means a written complaint completed by or on behalf of an INCARCERATED PERSON.

15.    The term "HEALTH CARE" means the provision of care or services, to identify and/or address health needs of an INCARCERATED PERSON in the JAIL (including medical, mental health, dental care, and vision care needs), whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

16.    The term "HEALTH CARE STAFF" means any person or entity providing HEALTH CARE services, or providing administrative and/or support services related to HEALTH CARE at the JAIL.

17.    "IDENTIFY," with respect to an INCARCERATED PERSON or formerly INCARCERATED PERSON, means to state the INCARCERATED PERSON's full name, booking number, date of birth, booking date, and CURRENT housing location (if still in custody) or date of release (if no longer in custody).

18.    "IDENTIFY," with respect to a non-INCARCERATED PERSON, means to state the person's name, professional title, credentials and licensing information if applicable, and professional address.

19.    The terms "INCARCERATED PERSON(S)" or "INCARCERATED PEOPLE" mean any person incarcerated, detained, or in the custody of the SHERIFF'S DEPARTMENT.

20.    The terms "INSPECT" or "INSPECTION(S)" mean to walk around and observe ALL JAIL facilities, including but not limited to ALL areas in which staff interact with INCARCERATED PERSONS; ALL areas in which INCARCERATED PERSONS are housed, bathe, use the toilets, or spend out-of-cell time; and ALL walkways, staircases, elevators, and other areas of the JAIL used by INCARCERATED PERSONS.  These terms further mean to ask questions informally of EMPLOYEES who Plaintiffs' expert and/or Plaintiffs' counsel meet and/or encounter during the course of the INSPECTIONS.  The terms further mean to review records at the JAIL, including but not limited to observing where and how records are maintained.

21.    The term "JAIL" means the San Diego County Jail, including all of its facilities.

22.    The term "MENTAL HEALTH CARE" means the provision of care or services, to identify and/or address the mental health needs of an INCARCERATED PERSON in the JAIL, whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

23.    The term "MOB" means Medical Observation Bed, as defined in SHERIFF'S DEPARTMENT Medical Services Division Policy & Procedure M-13.

24.    The term "OPSD" means Outpatient Step-Down units for people with mental health conditions and/or mental health care needs.

25.    The term "PLAINTIFFS" means Plaintiffs Darryl Dunsmore, Andree

Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner.

26.     The term "POLICIES AND PROCEDURES" means policies, procedures, handbooks, advice, directives, training materials, forms, instructions, and guidelines that comprise established standards, regardless of the author.

27.     The term "PROBATION DEPARTMENT" means Defendant San Diego County Probation Department and anyone acting on its behalf.

28.     The term "PSU" means Psychiatric Stabilization Unit or Psychiatric Security Unit, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure M.25.

29.     The terms "RELATED TO," "RELATING TO," or "REGARDING" means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains to directly or indirectly to, reflects, refers to, regards, relates to, responds to, states, summarizes, or in any way relevant to the particular subject matter identified.

30.     The term "SAFETY CELL" means a temporary housing cell with a padded surface, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure J.1.

31.     The term "SHERIFF'S DEPARTMENT" means Defendant San Diego County Sheriff's Department and anyone acting on its behalf.

32.     The term "SOBERING CELL" means JAIL cells used to house INCARCERATED PERSONS away from other INCARCERATED PERSONS for the specific purposes of detoxification or sobering up; the term includes sobering cells and detoxification cells.

33.     The term "STAFFING PLAN" means any DOCUMENT showing the minimum number and types of EMPLOYEES DEFENDANTS intend to work in the

JAIL and the minimum number of hours DEFENDANTS intend those
EMPLOYEES to work to staff the JAIL, including EMPLOYEES of
CONTRACTORS.

34.    The words "and" and "or" should be construed disjunctively or
conjunctively as necessary to make the Request inclusive rather than exclusive.

## INSTRUCTIONS

1.    Prior to the commencement of the INSPECTION, PLAINTIFFS
request that DEFENDANTS provide PLAINTIFFS' counsel with the following
information and DOCUMENTS.  PLAINTIFFS further request that DEFENDANTS
produce this information at least two days before the INSPECTION:

a.    A map and floor plans of Las Colinas, including identifying ALL
housing units, ALL spaces used for HEALTH CARE, ALL spaces used for
MENTAL HEALTH CARE, and ALL dental clinic spaces (including those used for
taking dental x-rays).

b.    An organizational chart identifying supervisory staff at
Las Colinas.

c.    A complete roster of INCARCERATED PEOPLE at Las Colinas
as of the date of production, including their housing placements (unit and bed
assignment, type of housing (SAFETY CELL, SOBERING CELL, EOH, MOB,
PSU, OPSD, etc.), if applicable).  For each INCARCERATED PERSON, please
include their name, date of birth, booking number, booking date, classification
status, and estimated date of release, if available.  Identify on the roster each
INCARCERATED PERSON who is on the Medical Care caseload, the Mental
Health caseload, and/or the Dental Care caseload as of the date of production.
Identify on the roster each INCARCERATED PERSON with a DISABILITY in
Las Colinas as of the date of production, and for each INCARCERATED PERSON
with a DISABILITY, include their DISABILITY or DISABILITIES and ALL
information about ANY accommodations (including housing accommodations and

assistive devices) that YOU provide to the individual.

       d.    Logs, rosters, or other tracking systems, as specified herein:

       i.    ALL logs, rosters, or other tracking system of ANY kind used by Defendants to track which INCARCERATED PERSONS are on the JAIL's Medical Care caseload, Mental Health caseload, Dental Care caseload, and/or sick call list, for the six months preceding the INSPECTION.

       ii.    ANY logs, rosters, or other tracking system of ANY kind used by Defendants to track antibiotic prescriptions provided to INCARCERATED PERSONS to treat or manage dental pain or dental care concerns.

       iii.    ALL logs, rosters, or other tracking system of ANY kind used by DEFENDANTS to track which INCARCERATED PERSONS have a DISABILITY or DISABILITIES, and the DISABILITY accommodations the INCARCERATED PERSONS require, for the six months preceding the INSPECTION.

       iv.    ALL logs, rosters, or other tracking system of ANY kind used by DEFENDANTS related to DISABILITY accommodations offered or provided to INCARCERATED PERSONS at Las Colinas (with specific accommodations identified) during the six months preceding the date of INSPECTION, including but not limited to EFFECTIVE COMMUNICATION, REASONABLE ACCOMMODATIONS, ADA-accessible housing placement, wheelchairs, canes, and program modifications.

       e.    Documentation sufficient to show which programs, services and activities, including but not limited to, education, exercise, vocation, religious, substance abuse, library, and rehabilitative programs, are offered to INCARCERATED PERSONS with DISABILITIES, INCARCERATED PERSONS on the JAIL's Medical Care caseload, INCARCERATED PERSONS on the JAIL's Mental Health caseload, and INCARCERATED PERSONS on the JAIL's Dental Care caseload; the locations in which the programs are offered; the schedule on

which the programs are supposed to be offered; and the actual dates and times the programs have been offered in the 90 days preceding the INSPECTION.

       f.     ALL documentation related to ANY temporary or permanent modification made to ANY physical structure, program, service, or activity at the facility to be INSPECTED for the purpose of providing a DISABILITY accommodation during the 12 months preceding the date of INSPECTION, including any schematic, design, or construction DOCUMENTS.

       g.     A list of ALL housing placements to which DEFENDANTS assign INCARCERATED PERSONS with MOBILITY DISABILITIES, including those who (1) are wheelchair users, (2) use a cane for stability or mobility, (3) cannot climb stairs, (4) cannot climb into an upper bunk, (5) use crutches, (6) use walkers or similar mobility assistance devices; and/or (7) have a prosthetic limb.

      2.     During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may engage in COMMUNICATIONS RELATED TO TOUR MANAGEMENT with EMPLOYEES at the Jail, including but not limited to correctional staff, administrative staff, and medical and mental health staff. These questions will be limited to routine questions concerning the general operations of the facility to be INSPECTED and the practical aspects of the INSPECTION.

      3.     During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may observe the booking and intake screening of INCARCERATED PERSONS as well as the delivery of medical, dental, and/or mental health care to INCARCERATED PERSONS, including clinical contacts, evaluation and treatment programming, and medication administration. Plaintiffs' counsel and Plaintiffs' expert will obtain permission from patients prior to engaging in such observations, as necessary to address patient privacy concerns.

      4.     During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may interview, in the housing units or in a separate confidential setting, INCARCERATED PEOPLE, including but not limited to INCARCERATED

PEOPLE with DISABILITIES, INCARCERATED PEOPLE on the JAIL's Medical Care caseload, INCARCERATED PEOPLE on the JAIL's Mental Health caseload, and INCARCERATED PEOPLE on the JAIL's Dental Care caseload, regarding their experiences while in custody at the JAIL.

5.      During the INSPECTION, Plaintiffs' counsel and Plaintiffs' experts may take photographs of Las Colinas.  After the INSPECTION, Defendants will have an opportunity to review the photographs taken.  Plaintiffs will accommodate reasonable requests to delete photographs that may compromise JAIL security. Plaintiffs will also blur the faces of individuals in any photographs that are filed on the public docket or otherwise made publicly available through the course of the litigation.

<b>REQUEST FOR INSPECTION</b>

PLAINTIFFS' counsel and PLAINTIFFS' experts Robert Cohen, M.D.; Pablo Stewart, M.D.; James Austin, Ph.D.; Jay Shulman, DMD; Syroun Sanossian and SZS Engineering, Inc.; and Debbie Graham will INSPECT Las Colinas Detention and Reentry Facility on November 3, 2023 from 9:00 a.m. to 5:00 p.m.


DATED:  September 1, 2023          ROSEN BIEN GALVAN & GRUNFELD LLP

                                  By: */s/ Gay Crosthwait Grunfeld*
                                      Gay Crosthwait Grunfeld

                                  Attorneys for Plaintiffs and the
                                  Certified Subclass

## PROOF OF SERVICE

***Dunsmore et al. v. San Diego County Sheriff's Dept., et al.***
**Case No. 20-cv-00406 AJB DDL**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 101 Mission Street, Sixth Floor, San Francisco, CA 94105-1738.

On September 1, 2023, I served true copies of the following document(s) described as:

**PLAINTIFFS' REQUEST FOR INSPECTION OF LAS COLINAS DETENTION AND REENTRY FACILITY AND PRODUCTION OF DOCUMENTS**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address kchan@rbgg.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 1, 2023, at San Francisco, California.

I. Kedra Chan

EX. D - 51

**SERVICE LIST**
*Dunsmore et al. v. San Diego County Sheriff's Dept., et al.*
**Case No. 20-cv-00406 AJB DDL**

| | |
|---|---|
| BURKE, WILLIAMS & SORENSEN, LLP | BURKE, WILLIAMS & SORENSEN, LLP |
| 501 West Broadway, Suite 1600 | 60 South Market Street, Suite 1000 |
| San Diego, CA 92101 | San Jose, CA 95113-2336 |
| Susan E. Coleman | Elizabeth M. Pappy |
| (SColeman@bwslaw.com) | (EPappy@bwslaw.com) |
| Terri Mehra | Lucy Gonzalez |
| (TMehra@bwslaw.com) | (LGonzalez@bwslaw.com) |
| Diana Favela | |
| (DFavela@bwslaw.com) | |

OFFICE OF COUNTY COUNSEL,
COUNTY OF SAN DIEGO
1600 Pacific Highway, Room 355
San Diego, CA 92101-2469

Fernando Kish
(Fernando.Kish@sdcounty.ca.gov)
Steven Inman
(Steven.Inman@sdcounty.ca.gov)

Attorneys for Defendants County of San Diego, San Diego County Sheriff's Department, and San Diego County Probation Department

EX. D - 52

# Exhibit E

GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California  94709
Telephone:  (510) 806-7366
Facsimile:   (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Subclass

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>　　　　　　Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**PLAINTIFFS' REQUEST FOR INSPECTION OF SAN DIEGO CENTRAL JAIL AND PRODUCTION OF DOCUMENTS**<br><br>Judge:　　　Hon. Anthony J. Battaglia<br>Magistrate:Hon. David D. Leshner |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule 34, Plaintiffs Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner ("Plaintiffs"), on behalf of themselves, all persons similarly situated, and the certified subclass of all qualified individuals with a hearing and/or mobility disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, be incarcerated in the Jail, by and through their attorneys, submit the following Request for Inspection of San Diego Central Jail ("Central Jail") and Production of Documents to Defendants San Diego County Sheriff's Department and the County of San Diego ("Defendants"). Plaintiffs request that Plaintiffs' counsel and Plaintiffs' experts specified herein inspect Central Jail on November 1, 2023 from 9:00 a.m. to 5:00 p.m. Plaintiffs reserve the right to schedule additional inspections if necessary.

## DEFINITIONS

Unless otherwise indicated, the following definitions and terms shall apply to this Request for Inspection:

1. The terms "ANY" and "ALL," as used herein, shall include "each" and "every" and are not to be construed to limit a request.

2. The term "ADA" means the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* as well as related federal and state laws that require accommodation of disabilities and prohibit discrimination on the basis of disability.

3. The term "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a

hand held personal device including an Android or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, text messages, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X, Zoom, and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

4.      The term "COMMUNICATIONS RELATED TO TOUR MANAGEMENT" means ALL communications arising from routine questions concerning the general operations of the JAIL and the practical aspects of the JAIL INSPECTION, including the locations in which activities, services, and operations take place in the JAIL; the schedule on which activities, services, and operations will occur on the days of the JAIL INSPECTION; the manner in which activities, services, and operations are conducted both when a JAIL INSPECTION is taking place and is not taking place; the location of records, files, and logbooks; the content of custodial and other records; the name and job title of EMPLOYEES; and the routine procedures for recording and retrieving information in records, files and logbooks.

5.      The term "CONTRACTOR" includes any individual or entity, or an EMPLOYEE of the same, who is hired, retained, or otherwise authorized by YOU to undertake any task, service, role, or job on YOUR behalf.  The term includes but is not limited to NaphCare, Inc. and NaphCare of San Diego, LLC.

6.      The term "COUNTY" means Defendant San Diego County and anyone acting on its behalf.

7.      The term "CURRENT" means in effect and not superseded and/or issued on or after January 1, 2022.

8.      The term "DEATH(S)" means the action or fact of dying or being killed, including by suicide.

9.      The terms "DEFENDANTS," "YOU," or "YOUR" means the San Diego County Sheriff's Department, San Diego County, and the San Diego County Probation Department, and anyone acting on their behalf.

10.     The terms "DISABILITY" and "DISABILITIES" mean any physical, cognitive, developmental, intellectual, mental, or sensory impairment that limits one or more major life activities, including but not limited to, eating, sleeping, speaking, breathing, walking, standing, lifting, bending, thinking, concentrating, seeing, hearing, working, reading, learning, communicating, reading, caring for oneself, and performing manual tasks, as well as the operation of major bodily functions such as circulation, reproduction, and the functioning of individual organs.  The terms also include having a history or record of such impairment or being perceived by others as having such an impairment.

11.     The term "DOCUMENT" means any writing, however produced or reproduced, of every kind and regardless of where located, which is in YOUR possession, custody, or control, including drafts; or in the possession, custody or control of any servant or agent of YOU or of YOUR attorneys.  The terms include the following: electronically recorded information such as electronic mail, html files, databases, data processing cards or tapes, computerized data, computer diskettes, or information otherwise contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes, view-graphs, or any information maintained on digital, electronic, magnetic or other media; and any other summary, schedule, memorandum, note, statement, letter, telegram, interoffice communication, report, diary, worksheet, list, graph, chart, or index, tape record, partial or complete report of telephone or oral conversation, transcript or minutes, compilation, tabulation, study, analysis, or other such writing or recording.  The terms "DOCUMENT" and "DOCUMENTS" include any originals, all file copies, all other copies, no matter

how prepared, and all drafts prepared in connection with such DOCUMENTS, whether or not used, as well as the file in which the DOCUMENTS are maintained. A draft or non-identical copy of a DOCUMENT, including a copy or duplicate of a DOCUMENT which has any nonconforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing, is a separate DOCUMENT within the meaning of these terms. The term "DOCUMENT" does not include any writing that constitutes a privileged or otherwise protected communication between YOU and YOUR attorneys.

12. The term "EMPLOYEE" means any employee, director, officer, owner, CONTRACTOR, agent, or any other person working for or on behalf of an entity, such as the COUNTY, the SHERIFF'S DEPARTMENT, or the PROBATION DEPARTMENT.

13. The term "EOH" means Enhanced Observation Housing, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure J.4.

14. The term "GRIEVANCE" means a written complaint completed by or on behalf of an INCARCERATED PERSON.

15. The term "HEALTH CARE" means the provision of care or services, to identify and/or address health needs of an INCARCERATED PERSON in the JAIL (including medical, mental health, dental care, and vision care needs), whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

16. The term "HEALTH CARE STAFF" means any person or entity providing HEALTH CARE services, or providing administrative and/or support services related to HEALTH CARE at the JAIL.

17. "IDENTIFY," with respect to an INCARCERATED PERSON or formerly INCARCERATED PERSON, means to state the INCARCERATED PERSON's full name, booking number, date of birth, booking date, and CURRENT housing location (if still in custody) or date of release (if no longer in custody).

18.     "IDENTIFY," with respect to a non-INCARCERATED PERSON, means to state the person's name, professional title, credentials and licensing information if applicable, and professional address.

19.     The terms "INCARCERATED PERSON(S)" or "INCARCERATED PEOPLE" mean any person incarcerated, detained, or in the custody of the SHERIFF'S DEPARTMENT.

20.     The terms "INSPECT" or "INSPECTION(S)" mean to walk around and observe ALL JAIL facilities, including but not limited to ALL areas in which staff interact with INCARCERATED PERSONS; ALL areas in which INCARCERATED PERSONS are housed, bathe, use the toilets, or spend out-of-cell time; and ALL walkways, staircases, elevators, and other areas of the JAIL used by INCARCERATED PERSONS.  These terms further mean to ask questions informally of EMPLOYEES who Plaintiffs' expert and/or Plaintiffs' counsel meet and/or encounter during the course of the INSPECTIONS.  The terms further mean to review records at the JAIL, including but not limited to observing where and how records are maintained.

21.     The term "JAIL" means the San Diego County Jail, including all of its facilities.

22.     The term "MENTAL HEALTH CARE" means the provision of care or services, to identify and/or address the mental health needs of an INCARCERATED PERSON in the JAIL, whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

23.     The term "MOB" means Medical Observation Bed, as defined in SHERIFF'S DEPARTMENT Medical Services Division Policy & Procedure M-13.

24.     The term "OPSD" means Outpatient Step-Down units for people with mental health conditions and/or mental health care needs.

25.     The term "PLAINTIFFS" means Plaintiffs Darryl Dunsmore, Andree

Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner.

26. The term "POLICIES AND PROCEDURES" means policies, procedures, handbooks, advice, directives, training materials, forms, instructions, and guidelines that comprise established standards, regardless of the author.

27. The term "PROBATION DEPARTMENT" means Defendant San Diego County Probation Department and anyone acting on its behalf.

28. The term "PSU" means Psychiatric Stabilization Unit or Psychiatric Security Unit, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure M.25.

29. The terms "RELATED TO," "RELATING TO," or "REGARDING" means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains to directly or indirectly to, reflects, refers to, regards, relates to, responds to, states, summarizes, or in any way relevant to the particular subject matter identified.

30. The term "SAFETY CELL" means a temporary housing cell with a padded surface, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure J.1.

31. The term "SHERIFF'S DEPARTMENT" means Defendant San Diego County Sheriff's Department and anyone acting on its behalf.

32. The term "SOBERING CELL" means JAIL cells used to house INCARCERATED PERSONS away from other INCARCERATED PERSONS for the specific purposes of detoxification or sobering up; the term includes sobering cells and detoxification cells.

33. The term "STAFFING PLAN" means any DOCUMENT showing the minimum number and types of EMPLOYEES DEFENDANTS intend to work in the

JAIL and the minimum number of hours DEFENDANTS intend those
EMPLOYEES to work to staff the JAIL, including EMPLOYEES of
CONTRACTORS.

34. The words "and" and "or" should be construed disjunctively or
conjunctively as necessary to make the Request inclusive rather than exclusive.

## INSTRUCTIONS

1. Prior to the commencement of the INSPECTION, PLAINTIFFS
request that DEFENDANTS provide PLAINTIFFS' counsel with the following
information and DOCUMENTS. PLAINTIFFS further request that DEFENDANTS
produce this information at least two days before the INSPECTION:

    a. A map and floor plans of Central Jail, including identifying ALL
housing units, ALL spaces used for HEALTH CARE, ALL spaces used for
MENTAL HEALTH CARE, and ALL dental clinic spaces (including those used for
taking dental x-rays).

    b. An organizational chart identifying supervisory staff at Central
Jail.

    c. A complete roster of INCARCERATED PEOPLE at Central Jail
as of the date of production, including their housing placements (unit and bed
assignment, type of housing (SAFETY CELL, SOBERING CELL, EOH, MOB,
PSU, OPSD, etc.), if applicable). For each INCARCERATED PERSON, please
include their name, date of birth, booking number, booking date, classification
status, and estimated date of release, if available. Identify on the roster each
INCARCERATED PERSON who is on the Medical Care caseload, the Mental
Health caseload, and/or the Dental Care caseload as of the date of production.

    d. Logs, rosters, or other tracking systems, as specified herein:

        i. ALL logs, rosters, or other tracking system of ANY kind
used by Defendants to track which INCARCERATED PERSONS are on the JAIL's
Medical Care caseload, Mental Health caseload, Dental Care caseload, and/or sick

call list, for the six months preceding the INSPECTION.

   ii. ANY logs, rosters, or other tracking system of ANY kind used by Defendants to track antibiotic prescriptions provided to INCARCERATED PERSONS to treat or manage dental pain or dental care concerns.

   e. Documentation sufficient to show which programs, services and activities, including but not limited to, education, exercise, vocation, religious, substance abuse, library, and rehabilitative programs, are offered to INCARCERATED PERSONS on the JAIL's Medical Care caseload, INCARCERATED PERSONS on the JAIL's Mental Health caseload, and INCARCERATED PERSONS on the Jail's Dental Care caseload; the locations in which the programs are offered; the schedule on which the programs are supposed to be offered; and the actual dates and times the programs have been offered in the 90 days preceding the INSPECTION.

  2. During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may engage in COMMUNICATIONS RELATED TO TOUR MANAGEMENT with EMPLOYEES at the Jail, including but not limited to correctional staff, administrative staff, and medical and mental health staff.  These questions will be limited to routine questions concerning the general operations of the facility to be INSPECTED and the practical aspects of the INSPECTION.

  3. During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may observe the booking and intake screening of INCARCERATED PERSONS as well as the delivery of medical, dental, and/or mental health care to INCARCERATED PERSONS, including clinical contacts, evaluation and treatment programming, and medication administration.  Plaintiffs' counsel and Plaintiffs' expert will obtain permission from patients prior to engaging in such observations, as necessary to address patient privacy concerns.

  4. During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may interview, in the housing units or in a separate confidential setting,

INCARCERATED PEOPLE, including but not limited to INCARCERATED PEOPLE on the JAIL's Medical Care caseload, INCARCERATED PEOPLE on the JAIL's Mental Health caseload, and INCARCERATED PEOPLE on the JAIL's Dental Care caseload, regarding their experiences while in custody at the JAIL.

5.      During the INSPECTION, Plaintiffs' counsel and Plaintiffs' experts may take photographs of Central Jail.  After the INSPECTION, Defendants will have an opportunity to review the photographs taken.  Plaintiffs will accommodate reasonable requests to delete photographs that may compromise JAIL security. Plaintiffs will also blur the faces of individuals in any photographs that are filed on the public docket or otherwise made publicly available through the course of the litigation.

<b>REQUEST FOR INSPECTION</b>

PLAINTIFFS' counsel and PLAINTIFFS' experts Robert Cohen, M.D.; Pablo Stewart, M.D.; James Austin, Ph.D.; Jay Shulman, DMD; and Debbie Graham will INSPECT Central Jail on November 1, 2023 from 9:00 a.m. to 5:00 p.m.

DATED:  September 1, 2023          ROSEN BIEN GALVAN & GRUNFELD LLP

                                  By:  */s/ Gay Crosthwait Grunfeld*
                                       Gay Crosthwait Grunfeld

                                  Attorneys for Plaintiffs and the
                                  Certified Subclass

**PROOF OF SERVICE**

***Dunsmore et al. v. San Diego County Sheriff's Dept., et al.***
**Case No. 20-cv-00406 AJB DDL**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 101 Mission Street, Sixth Floor, San Francisco, CA 94105-1738.

On September 1, 2023, I served true copies of the following document(s) described as:

**PLAINTIFFS' REQUEST FOR INSPECTION OF SAN DIEGO CENTRAL JAIL AND PRODUCTION OF DOCUMENTS**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address kchan@rbgg.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 1, 2023, at San Francisco, California.

I. Kedra Chan

EX. E - 64

# PROOF OF SERVICE

***Dunsmore et al. v. San Diego County Sheriff's Dept., et al.***
**Case No. 20-cv-00406 AJB DDL**

## STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 101 Mission Street, Sixth Floor, San Francisco, CA 94105-1738.

On September 1, 2023, I served true copies of the following document(s) described as:

**PLAINTIFFS' REQUEST FOR INSPECTION OF SAN DIEGO CENTRAL JAIL AND PRODUCTION OF DOCUMENTS**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address kchan@rbgg.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 1, 2023, at San Francisco, California.

_____
I. Kedra Chan

**SERVICE LIST**
***Dunsmore et al. v. San Diego County Sheriff's Dept., et al.***
**Case No. 20-cv-00406 AJB DDL**

BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600
San Diego, CA 92101

Susan E. Coleman
  (SColeman@bwslaw.com)
Terri Mehra
  (TMehra@bwslaw.com)
Diana Favela
  (DFavela@bwslaw.com)

OFFICE OF COUNTY COUNSEL,
COUNTY OF SAN DIEGO
1600 Pacific Highway, Room 355
San Diego, CA 92101-2469

Fernando Kish
  (Fernando.Kish@sdcounty.ca.gov)
Steven Inman
  (Steven.Inman@sdcounty.ca.gov)

BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Suite 1000
San Jose, CA 95113-2336

Elizabeth M. Pappy
  (EPappy@bwslaw.com)
Lucy Gonzalez
  (LGonzalez@bwslaw.com)

Attorneys for Defendants County of San Diego, San Diego County Sheriff's Department, and San Diego County Probation Department

EX. E - 66

# Exhibit F

GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830
Facsimile:    (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California  94709
Telephone:   (510) 806-7366
Facsimile:    (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:   (858) 677-1400
Facsimile:    (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Subclass

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**PLAINTIFFS' REQUEST FOR INSPECTION OF SOUTH BAY DETENTION FACILITY AND PRODUCTION OF DOCUMENTS**<br><br>Judge:        Hon. Anthony J. Battaglia<br>Magistrate: Hon. David D. Leshner |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule 34, Plaintiffs Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner ("Plaintiffs"), on behalf of themselves, all persons similarly situated, and the certified subclass of all qualified individuals with a hearing and/or mobility disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, be incarcerated in the Jail, by and through their attorneys, submit the following Request for Inspection of South Bay Detention Facility ("South Bay") and Production of Documents to Defendants San Diego County Sheriff's Department and the County of San Diego ("Defendants"). Plaintiffs request that Plaintiffs' counsel and Plaintiffs' experts specified herein inspect South Bay on November 8, 2023 from 9:00 a.m. to 5:00 p.m.  Plaintiffs reserve the right to schedule additional inspections if necessary.

## DEFINITIONS

Unless otherwise indicated, the following definitions and terms shall apply to this Request for Inspection:

1.     The terms "ANY" and "ALL," as used herein, shall include "each" and "every" and are not to be construed to limit a request.

2.     The term "ADA" means the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* as well as related federal and state laws that require accommodation of disabilities and prohibit discrimination on the basis of disability.

3.     The term "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a

hand held personal device including an Android or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, text messages, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X, Zoom, and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

4.    The term "COMMUNICATIONS RELATED TO TOUR MANAGEMENT" means ALL communications arising from routine questions concerning the general operations of the JAIL and the practical aspects of the JAIL INSPECTION, including the locations in which activities, services, and operations take place in the JAIL; the schedule on which activities, services, and operations will occur on the days of the JAIL INSPECTION; the manner in which activities, services, and operations are conducted both when a JAIL INSPECTION is taking place and is not taking place; the location of records, files, and logbooks; the content of custodial and other records; the name and job title of EMPLOYEES; and the routine procedures for recording and retrieving information in records, files and logbooks.

5.    The term "CONTRACTOR" includes any individual or entity, or an EMPLOYEE of the same, who is hired, retained, or otherwise authorized by YOU to undertake any task, service, role, or job on YOUR behalf.  The term includes but is not limited to NaphCare, Inc. and NaphCare of San Diego, LLC.

6.    The term "COUNTY" means Defendant San Diego County and anyone acting on its behalf.

7.    The term "CURRENT" means in effect and not superseded and/or issued on or after January 1, 2022.

8.    The term "DEATH(S)" means the action or fact of dying or being killed, including by suicide.

9.    The terms "DEFENDANTS," "YOU," or "YOUR" means the San Diego County Sheriff's Department, San Diego County, and the San Diego County Probation Department, and anyone acting on their behalf.

10.    The terms "DISABILITY" and "DISABILITIES" mean any physical, cognitive, developmental, intellectual, mental, or sensory impairment that limits one or more major life activities, including but not limited to, eating, sleeping, speaking, breathing, walking, standing, lifting, bending, thinking, concentrating, seeing, hearing, working, reading, learning, communicating, reading, caring for oneself, and performing manual tasks, as well as the operation of major bodily functions such as circulation, reproduction, and the functioning of individual organs.  The terms also include having a history or record of such impairment or being perceived by others as having such an impairment.

11.    The term "DOCUMENT" means any writing, however produced or reproduced, of every kind and regardless of where located, which is in YOUR possession, custody, or control, including drafts; or in the possession, custody or control of any servant or agent of YOU or of YOUR attorneys.  The terms include the following: electronically recorded information such as electronic mail, html files, databases, data processing cards or tapes, computerized data, computer diskettes, or information otherwise contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes, view-graphs, or any information maintained on digital, electronic, magnetic or other media; and any other summary, schedule, memorandum, note, statement, letter, telegram, interoffice communication, report, diary, worksheet, list, graph, chart, or index, tape record, partial or complete report of telephone or oral conversation, transcript or minutes, compilation, tabulation, study, analysis, or other such writing or recording.  The terms "DOCUMENT" and "DOCUMENTS" include any originals, all file copies, all other copies, no matter

how prepared, and all drafts prepared in connection with such DOCUMENTS, whether or not used, as well as the file in which the DOCUMENTS are maintained. A draft or non-identical copy of a DOCUMENT, including a copy or duplicate of a DOCUMENT which has any nonconforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing, is a separate DOCUMENT within the meaning of these terms. The term "DOCUMENT" does not include any writing that constitutes a privileged or otherwise protected communication between YOU and YOUR attorneys.

12.    The term "EMPLOYEE" means any employee, director, officer, owner, CONTRACTOR, agent, or any other person working for or on behalf of an entity, such as the COUNTY, the SHERIFF'S DEPARTMENT, or the PROBATION DEPARTMENT.

13.    The term "EOH" means Enhanced Observation Housing, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure J.4.

14.    The term "GRIEVANCE" means a written complaint completed by or on behalf of an INCARCERATED PERSON.

15.    The term "HEALTH CARE" means the provision of care or services, to identify and/or address health needs of an INCARCERATED PERSON in the JAIL (including medical, mental health, dental care, and vision care needs), whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

16.    The term "HEALTH CARE STAFF" means any person or entity providing HEALTH CARE services, or providing administrative and/or support services related to HEALTH CARE at the JAIL.

17.    "IDENTIFY," with respect to an INCARCERATED PERSON or formerly INCARCERATED PERSON, means to state the INCARCERATED PERSON's full name, booking number, date of birth, booking date, and CURRENT housing location (if still in custody) or date of release (if no longer in custody).

18.    "IDENTIFY," with respect to a non-INCARCERATED PERSON, means to state the person's name, professional title, credentials and licensing information if applicable, and professional address.

19.    The terms "INCARCERATED PERSON(S)" or "INCARCERATED PEOPLE" mean any person incarcerated, detained, or in the custody of the SHERIFF'S DEPARTMENT.

20.    The terms "INSPECT" or "INSPECTION(S)" mean to walk around and observe ALL JAIL facilities, including but not limited to ALL areas in which staff interact with INCARCERATED PERSONS; ALL areas in which INCARCERATED PERSONS are housed, bathe, use the toilets, or spend out-of-cell time; and ALL walkways, staircases, elevators, and other areas of the JAIL used by INCARCERATED PERSONS.  These terms further mean to ask questions informally of EMPLOYEES who Plaintiffs' expert and/or Plaintiffs' counsel meet and/or encounter during the course of the INSPECTIONS.  The terms further mean to review records at the JAIL, including but not limited to observing where and how records are maintained.

21.    The term "JAIL" means the San Diego County Jail, including all of its facilities.

22.    The term "MENTAL HEALTH CARE" means the provision of care or services, to identify and/or address the mental health needs of an INCARCERATED PERSON in the JAIL, whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

23.    The term "MOB" means Medical Observation Bed, as defined in SHERIFF'S DEPARTMENT Medical Services Division Policy & Procedure M-13.

24.    The term "OPSD" means Outpatient Step-Down units for people with mental health conditions and/or mental health care needs.

25.    The term "PLAINTIFFS" means Plaintiffs Darryl Dunsmore, Andree

Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner.

26.    The term "POLICIES AND PROCEDURES" means policies, procedures, handbooks, advice, directives, training materials, forms, instructions, and guidelines that comprise established standards, regardless of the author.

27.    The term "PROBATION DEPARTMENT" means Defendant San Diego County Probation Department and anyone acting on its behalf.

28.    The term "PSU" means Psychiatric Stabilization Unit or Psychiatric Security Unit, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure M.25.

29.    The terms "RELATED TO," "RELATING TO," or "REGARDING" means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains to directly or indirectly to, reflects, refers to, regards, relates to, responds to, states, summarizes, or in any way relevant to the particular subject matter identified.

30.    The term "SAFETY CELL" means a temporary housing cell with a padded surface, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure J.1.

31.    The term "SHERIFF'S DEPARTMENT" means Defendant San Diego County Sheriff's Department and anyone acting on its behalf.

32.    The term "SOBERING CELL" means JAIL cells used to house INCARCERATED PERSONS away from other INCARCERATED PERSONS for the specific purposes of detoxification or sobering up; the term includes sobering cells and detoxification cells.

33.    The term "STAFFING PLAN" means any DOCUMENT showing the minimum number and types of EMPLOYEES DEFENDANTS intend to work in the

JAIL and the minimum number of hours DEFENDANTS intend those
EMPLOYEES to work to staff the JAIL, including EMPLOYEES of
CONTRACTORS.

34.    The words "and" and "or" should be construed disjunctively or
conjunctively as necessary to make the Request inclusive rather than exclusive.

## INSTRUCTIONS

1.    Prior to the commencement of the INSPECTION, PLAINTIFFS
request that DEFENDANTS provide PLAINTIFFS' counsel with the following
information and DOCUMENTS.  PLAINTIFFS further request that DEFENDANTS
produce this information at least two days before the INSPECTION:

a.    A map and floor plans of South Bay, including identifying ALL
housing units.

b.    An organizational chart identifying supervisory staff at South
Bay.

c.    A complete roster of INCARCERATED PEOPLE at South Bay
as of the date of production, including their housing placements (unit and bed
assignment, type of housing (SAFETY CELL, SOBERING CELL, EOH, MOB,
PSU, OPSD, etc.), if applicable).  For each INCARCERATED PERSON, please
include their name, date of birth, booking number, booking date, classification
status, and estimated date of release, if available.  Identify on the roster each
INCARCERATED PERSON with a DISABILITY in South Bay as of the date of
production, and for each INCARCERATED PERSON with a DISABILITY, include
their DISABILITY or DISABILITIES and ALL information about ANY
accommodations (including housing accommodations and assistive devices) that
YOU provide to the individual.

d.    Logs, rosters, or other tracking systems, as specified herein:

i.    ALL logs, rosters, or other tracking system of ANY kind
used by DEFENDANTS to track which INCARCERATED PERSONS have a

DISABILITY or DISABILITIES, and the DISABILITY accommodations the INCARCERATED PERSONS require, for the six months preceding the INSPECTION.

        ii.    ALL logs, rosters, or other tracking system of ANY kind used by DEFENDANTS related to DISABILITY accommodations offered or provided to INCARCERATED PERSONS at South Bay (with specific accommodations identified) during the six months preceding the date of INSPECTION, including but not limited to EFFECTIVE COMMUNICATION, REASONABLE ACCOMMODATIONS, ADA-accessible housing placement, wheelchairs, canes, and program modifications.

        e.    Documentation sufficient to show which programs, services and activities, including but not limited to, education, exercise, vocation, religious, substance abuse, library, and rehabilitative programs, are offered to INCARCERATED PERSONS with DISABILITIES; the locations in which the programs are offered; the schedule on which the programs are supposed to be offered; and the actual dates and times the programs have been offered in the 90 days preceding the INSPECTION.

        f.    ALL documentation related to ANY temporary or permanent modification made to ANY physical structure, program, service, or activity at the facility to be INSPECTED for the purpose of providing a DISABILITY accommodation during the 12 months preceding the date of INSPECTION, including any schematic, design, or construction DOCUMENTS.

        g.    A list of ALL housing placements to which DEFENDANTS assign INCARCERATED PERSONS with MOBILITY DISABILITIES, including those who (1) are wheelchair users, (2) use a cane for stability or mobility, (3) cannot climb stairs, (4) cannot climb into an upper bunk, (5) use crutches, (6) use walkers or similar mobility assistance devices; and/or (7) have a prosthetic limb.

        2.    During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert

may engage in COMMUNICATIONS RELATED TO TOUR MANAGEMENT with EMPLOYEES at the Jail, including but not limited to correctional staff, administrative staff, and medical and mental health staff. These questions will be limited to routine questions concerning the general operations of the facility to be INSPECTED and the practical aspects of the INSPECTION.

3.      During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may observe the booking and intake screening of INCARCERATED PERSONS. Plaintiffs' counsel and Plaintiffs' expert will obtain permission from patients prior to engaging in such observations, as necessary to address patient privacy concerns.

4.      During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may interview, in the housing units or in a separate confidential setting, INCARCERATED PEOPLE, including but not limited to INCARCERATED PEOPLE with DISABILITIES, regarding their experiences while in custody at the JAIL.

5.      During the INSPECTION, Plaintiffs' counsel and Plaintiffs' experts may take photographs of South Bay. After the INSPECTION, Defendants will have an opportunity to review the photographs taken. Plaintiffs will accommodate reasonable requests to delete photographs that may compromise JAIL security. Plaintiffs will also blur the faces of individuals in any photographs that are filed on the public docket or otherwise made publicly available through the course of the litigation.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## REQUEST FOR INSPECTION

PLAINTIFFS' counsel and PLAINTIFFS' experts Syroun Sanossian and SZS Engineering, Inc.; and Debbie Graham will INSPECT South Bay Detention Facility on November 8, 2023 from 9:00 a.m. to 5:00 p.m.


DATED:  September 1, 2023          ROSEN BIEN GALVAN & GRUNFELD LLP

                                  By: */s/ Gay Crosthwait Grunfeld*
                                       Gay Crosthwait Grunfeld

                                  Attorneys for Plaintiffs and the
                                  Certified Subclass

**PROOF OF SERVICE**

***Dunsmore et al. v. San Diego County Sheriff's Dept., et al.***
**Case No. 20-cv-00406 AJB DDL**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of San Francisco, State of California.  My business address is 101 Mission Street, Sixth Floor, San Francisco, CA 94105-1738.

On September 1, 2023, I served true copies of the following document(s) described as:

**PLAINTIFFS' REQUEST FOR INSPECTION OF SOUTH BAY DETENTION FACILITY AND PRODUCTION OF DOCUMENTS**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address kchan@rbgg.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 1, 2023, at San Francisco, California.

_I. Kedra Chan_

I. Kedra Chan

**SERVICE LIST**
*Dunsmore et al. v. San Diego County Sheriff's Dept., et al.*
**Case No. 20-cv-00406 AJB DDL**

| | |
|---|---|
| BURKE, WILLIAMS & SORENSEN, LLP<br>501 West Broadway, Suite 1600<br>San Diego, CA 92101 | BURKE, WILLIAMS & SORENSEN, LLP<br>60 South Market Street, Suite 1000<br>San Jose, CA 95113-2336 |
| Susan E. Coleman<br>   (SColeman@bwslaw.com)<br>Terri Mehra<br>   (TMehra@bwslaw.com)<br>Diana Favela<br>   (DFavela@bwslaw.com) | Elizabeth M. Pappy<br>   (EPappy@bwslaw.com)<br>Lucy Gonzalez<br>   (LGonzalez@bwslaw.com) |

OFFICE OF COUNTY COUNSEL,
COUNTY OF SAN DIEGO
1600 Pacific Highway, Room 355
San Diego, CA 92101-2469

Fernando Kish
   (Fernando.Kish@sdcounty.ca.gov)
Steven Inman
   (Steven.Inman@sdcounty.ca.gov)

Attorneys for Defendants County of San Diego, San Diego County Sheriff's Department, and San Diego County Probation Department

EX. F - 80

# Exhibit G

GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California  94709
Telephone:  (510) 806-7366
Facsimile:   (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Subclass

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No. 3:20-cv-00406-AJB-DDL <br><br> **PLAINTIFFS' REQUEST FOR INSPECTION OF VISTA DETENTION FACILITY AND PRODUCTION OF DOCUMENTS** <br><br> Judge:       Hon. Anthony J. Battaglia <br> Magistrate: Hon. David D. Leshner |

EX. G - 82

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule 34, Plaintiffs Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner ("Plaintiffs"), on behalf of themselves, all persons similarly situated, and the certified subclass of all qualified individuals with a hearing and/or mobility disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, be incarcerated in the Jail, by and through their attorneys, submit the following Request for Inspection of Vista Detention Facility ("Vista") and Production of Documents to Defendants San Diego County Sheriff's Department and the County of San Diego ("Defendants"). Plaintiffs request that Plaintiffs' counsel and Plaintiffs' experts specified herein inspect Vista on November 6, 2023 from 9:00 a.m. to 5:00 p.m. Plaintiffs reserve the right to schedule additional inspections if necessary.

## DEFINITIONS

Unless otherwise indicated, the following definitions and terms shall apply to this Request for Inspection:

1. The terms "ANY" and "ALL," as used herein, shall include "each" and "every" and are not to be construed to limit a request.

2. The term "ADA" means the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* as well as related federal and state laws that require accommodation of disabilities and prohibit discrimination on the basis of disability.

3. The term "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a

hand held personal device including an Android or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, text messages, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X, Zoom, and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

4.      The term "COMMUNICATIONS RELATED TO TOUR MANAGEMENT" means ALL communications arising from routine questions concerning the general operations of the JAIL and the practical aspects of the JAIL INSPECTION, including the locations in which activities, services, and operations take place in the JAIL; the schedule on which activities, services, and operations will occur on the days of the JAIL INSPECTION; the manner in which activities, services, and operations are conducted both when a JAIL INSPECTION is taking place and is not taking place; the location of records, files, and logbooks; the content of custodial and other records; the name and job title of EMPLOYEES; and the routine procedures for recording and retrieving information in records, files and logbooks.

5.      The term "CONTRACTOR" includes any individual or entity, or an EMPLOYEE of the same, who is hired, retained, or otherwise authorized by YOU to undertake any task, service, role, or job on YOUR behalf.  The term includes but is not limited to NaphCare, Inc. and NaphCare of San Diego, LLC.

6.      The term "COUNTY" means Defendant San Diego County and anyone acting on its behalf.

7.      The term "CURRENT" means in effect and not superseded and/or issued on or after January 1, 2022.

8.     The term "DEATH(S)" means the action or fact of dying or being killed, including by suicide.

9.     The terms "DEFENDANTS," "YOU," or "YOUR" means the San Diego County Sheriff's Department, San Diego County, and the San Diego County Probation Department, and anyone acting on their behalf.

10.     The terms "DISABILITY" and "DISABILITIES" mean any physical, cognitive, developmental, intellectual, mental, or sensory impairment that limits one or more major life activities, including but not limited to, eating, sleeping, speaking, breathing, walking, standing, lifting, bending, thinking, concentrating, seeing, hearing, working, reading, learning, communicating, reading, caring for oneself, and performing manual tasks, as well as the operation of major bodily functions such as circulation, reproduction, and the functioning of individual organs.  The terms also include having a history or record of such impairment or being perceived by others as having such an impairment.

11.     The term "DOCUMENT" means any writing, however produced or reproduced, of every kind and regardless of where located, which is in YOUR possession, custody, or control, including drafts; or in the possession, custody or control of any servant or agent of YOU or of YOUR attorneys.  The terms include the following: electronically recorded information such as electronic mail, html files, databases, data processing cards or tapes, computerized data, computer diskettes, or information otherwise contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes, view-graphs, or any information maintained on digital, electronic, magnetic or other media; and any other summary, schedule, memorandum, note, statement, letter, telegram, interoffice communication, report, diary, worksheet, list, graph, chart, or index, tape record, partial or complete report of telephone or oral conversation, transcript or minutes, compilation, tabulation, study, analysis, or other such writing or recording.  The terms "DOCUMENT" and "DOCUMENTS" include any originals, all file copies, all other copies, no matter

how prepared, and all drafts prepared in connection with such DOCUMENTS, whether or not used, as well as the file in which the DOCUMENTS are maintained. A draft or non-identical copy of a DOCUMENT, including a copy or duplicate of a DOCUMENT which has any nonconforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing, is a separate DOCUMENT within the meaning of these terms. The term "DOCUMENT" does not include any writing that constitutes a privileged or otherwise protected communication between YOU and YOUR attorneys.

12. The term "EMPLOYEE" means any employee, director, officer, owner, CONTRACTOR, agent, or any other person working for or on behalf of an entity, such as the COUNTY, the SHERIFF'S DEPARTMENT, or the PROBATION DEPARTMENT.

13. The term "EOH" means Enhanced Observation Housing, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure J.4.

14. The term "GRIEVANCE" means a written complaint completed by or on behalf of an INCARCERATED PERSON.

15. The term "HEALTH CARE" means the provision of care or services, to identify and/or address health needs of an INCARCERATED PERSON in the JAIL (including medical, mental health, dental care, and vision care needs), whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

16. The term "HEALTH CARE STAFF" means any person or entity providing HEALTH CARE services, or providing administrative and/or support services related to HEALTH CARE at the JAIL.

17. "IDENTIFY," with respect to an INCARCERATED PERSON or formerly INCARCERATED PERSON, means to state the INCARCERATED PERSON's full name, booking number, date of birth, booking date, and CURRENT housing location (if still in custody) or date of release (if no longer in custody).

18.    "IDENTIFY," with respect to a non-INCARCERATED PERSON, means to state the person's name, professional title, credentials and licensing information if applicable, and professional address.

19.    The terms "INCARCERATED PERSON(S)" or "INCARCERATED PEOPLE" mean any person incarcerated, detained, or in the custody of the SHERIFF'S DEPARTMENT.

20.    The terms "INSPECT" or "INSPECTION(S)" mean to walk around and observe ALL JAIL facilities, including but not limited to ALL areas in which staff interact with INCARCERATED PERSONS; ALL areas in which INCARCERATED PERSONS are housed, bathe, use the toilets, or spend out-of-cell time; and ALL walkways, staircases, elevators, and other areas of the JAIL used by INCARCERATED PERSONS.  These terms further mean to ask questions informally of EMPLOYEES who Plaintiffs' expert and/or Plaintiffs' counsel meet and/or encounter during the course of the INSPECTIONS.  The terms further mean to review records at the JAIL, including but not limited to observing where and how records are maintained.

21.    The term "JAIL" means the San Diego County Jail, including all of its facilities.

22.    The term "MENTAL HEALTH CARE" means the provision of care or services, to identify and/or address the mental health needs of an INCARCERATED PERSON in the JAIL, whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

23.    The term "MOB" means Medical Observation Bed, as defined in SHERIFF'S DEPARTMENT Medical Services Division Policy & Procedure M-13.

24.    The term "OPSD" means Outpatient Step-Down units for people with mental health conditions and/or mental health care needs.

25.    The term "PLAINTIFFS" means Plaintiffs Darryl Dunsmore, Andree

Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner.

26.     The term "POLICIES AND PROCEDURES" means policies, procedures, handbooks, advice, directives, training materials, forms, instructions, and guidelines that comprise established standards, regardless of the author.

27.     The term "PROBATION DEPARTMENT" means Defendant San Diego County Probation Department and anyone acting on its behalf.

28.     The term "PSU" means Psychiatric Stabilization Unit or Psychiatric Security Unit, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure M.25.

29.     The terms "RELATED TO," "RELATING TO," or "REGARDING" means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains to directly or indirectly to, reflects, refers to, regards, relates to, responds to, states, summarizes, or in any way relevant to the particular subject matter identified.

30.     The term "SAFETY CELL" means a temporary housing cell with a padded surface, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure J.1.

31.     The term "SHERIFF'S DEPARTMENT" means Defendant San Diego County Sheriff's Department and anyone acting on its behalf.

32.     The term "SOBERING CELL" means JAIL cells used to house INCARCERATED PERSONS away from other INCARCERATED PERSONS for the specific purposes of detoxification or sobering up; the term includes sobering cells and detoxification cells.

33.     The term "STAFFING PLAN" means any DOCUMENT showing the minimum number and types of EMPLOYEES DEFENDANTS intend to work in the

JAIL and the minimum number of hours DEFENDANTS intend those
EMPLOYEES to work to staff the JAIL, including EMPLOYEES of
CONTRACTORS.

34.    The words "and" and "or" should be construed disjunctively or
conjunctively as necessary to make the Request inclusive rather than exclusive.

**INSTRUCTIONS**

1.    Prior to the commencement of the INSPECTION, PLAINTIFFS
request that DEFENDANTS provide PLAINTIFFS' counsel with the following
information and DOCUMENTS.  PLAINTIFFS further request that DEFENDANTS
produce this information at least two days before the INSPECTION:

a.    A map and floor plans of Vista, including identifying ALL
housing units.

b.    An organizational chart identifying supervisory staff at Vista.

c.    A complete roster of INCARCERATED PEOPLE at Vista as of
the date of production, including their housing placements (unit and bed assignment,
type of housing (SAFETY CELL, SOBERING CELL, EOH, MOB, PSU, OPSD,
etc.), if applicable).  For each INCARCERATED PERSON, please include their
name, date of birth, booking number, booking date, classification status, and
estimated date of release, if available.  Identify on the roster each
INCARCERATED PERSON with a DISABILITY in Vista as of the date of
production, and for each INCARCERATED PERSON with a DISABILITY, include
their DISABILITY or DISABILITIES and ALL information about ANY
accommodations (including housing accommodations and assistive devices) that
YOU provide to the individual.

d.    Logs, rosters, or other tracking systems, as specified herein:

i.    ALL logs, rosters, or other tracking system of ANY kind
used by DEFENDANTS to track which INCARCERATED PERSONS have a
DISABILITY or DISABILITIES, and the DISABILITY accommodations the

INCARCERATED PERSONS require, for the six months preceding the INSPECTION.

ii.    ALL logs, rosters, or other tracking system of ANY kind used by DEFENDANTS related to DISABILITY accommodations offered or provided to INCARCERATED PERSONS at Vista (with specific accommodations identified) during the six months preceding the date of INSPECTION, including but not limited to EFFECTIVE COMMUNICATION, REASONABLE ACCOMMODATIONS, ADA-accessible housing placement, wheelchairs, canes, and program modifications.

e.    Documentation sufficient to show which programs, services and activities, including but not limited to, education, exercise, vocation, religious, substance abuse, library, and rehabilitative programs, are offered to INCARCERATED PERSONS with DISABILITIES; the locations in which the programs are offered; the schedule on which the programs are supposed to be offered; and the actual dates and times the programs have been offered in the 90 days preceding the INSPECTION.

f.    ALL documentation related to ANY temporary or permanent modification made to ANY physical structure, program, service, or activity at the facility to be INSPECTED for the purpose of providing a DISABILITY accommodation during the 12 months preceding the date of INSPECTION, including any schematic, design, or construction DOCUMENTS.

g.    A list of ALL housing placements to which DEFENDANTS assign INCARCERATED PERSONS with MOBILITY DISABILITIES, including those who (1) are wheelchair users, (2) use a cane for stability or mobility, (3) cannot climb stairs, (4) cannot climb into an upper bunk, (5) use crutches, (6) use walkers or similar mobility assistance devices; and/or (7) have a prosthetic limb.

2.    During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may engage in COMMUNICATIONS RELATED TO TOUR MANAGEMENT

with EMPLOYEES at the Jail, including but not limited to correctional staff, administrative staff, and medical and mental health staff. These questions will be limited to routine questions concerning the general operations of the facility to be INSPECTED and the practical aspects of the INSPECTION.

3.      During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may observe the booking and intake screening of INCARCERATED PERSONS. Plaintiffs' counsel and Plaintiffs' expert will obtain permission from patients prior to engaging in such observations, as necessary to address patient privacy concerns.

4.      During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may interview, in the housing units or in a separate confidential setting, INCARCERATED PEOPLE, including but not limited to INCARCERATED PEOPLE with DISABILITIES, regarding their experiences while in custody at the JAIL.

5.      During the INSPECTION, Plaintiffs' counsel and Plaintiffs' experts may take photographs of Vista. After the INSPECTION, Defendants will have an opportunity to review the photographs taken. Plaintiffs will accommodate reasonable requests to delete photographs that may compromise JAIL security. Plaintiffs will also blur the faces of individuals in any photographs that are filed on the public docket or otherwise made publicly available through the course of the litigation.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# REQUEST FOR INSPECTION

PLAINTIFFS' counsel and PLAINTIFFS' experts Syroun Sanossian and SZS Engineering, Inc.; and Debbie Graham will INSPECT Vista Detention Facility on November 6, 2023 from 9:00 a.m. to 5:00 p.m.

DATED:  September 1, 2023          ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Gay Crosthwait Grunfeld*
     Gay Crosthwait Grunfeld

Attorneys for Plaintiffs and the
Certified Subclass

## PROOF OF SERVICE

### *Dunsmore et al. v. San Diego County Sheriff's Dept., et al.*
### Case No. 20-cv-00406 AJB DDL

### STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 101 Mission Street, Sixth Floor, San Francisco, CA 94105-1738.

On September 1, 2023, I served true copies of the following document(s) described as:

### PLAINTIFFS' REQUEST FOR INSPECTION OF VISTA DETENTION FACILITY AND PRODUCTION OF DOCUMENTS

on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address kchan@rbgg.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 1, 2023, at San Francisco, California.

*I Kedra C*
_____
I. Kedra Chan

EX. G - 93

**SERVICE LIST**
*Dunsmore et al. v. San Diego County Sheriff's Dept., et al.*
**Case No. 20-cv-00406 AJB DDL**

BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600
San Diego, CA 92101

Susan E. Coleman
  (SColeman@bwslaw.com)
Terri Mehra
  (TMehra@bwslaw.com)
Diana Favela
  (DFavela@bwslaw.com)

OFFICE OF COUNTY COUNSEL,
COUNTY OF SAN DIEGO
1600 Pacific Highway, Room 355
San Diego, CA 92101-2469

Fernando Kish
  (Fernando.Kish@sdcounty.ca.gov)
Steven Inman
  (Steven.Inman@sdcounty.ca.gov)

BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Suite 1000
San Jose, CA 95113-2336

Elizabeth M. Pappy
  (EPappy@bwslaw.com)
Lucy Gonzalez
  (LGonzalez@bwslaw.com)

Attorneys for Defendants County of San Diego, San Diego County Sheriff's Department, and San Diego County Probation Department

EX. G - 94

# Exhibit H

GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Subclass

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No. 3:20-cv-00406-AJB-DDL <br><br> **PLAINTIFFS' REQUEST FOR INSPECTION OF JAIL INFORMATION MANAGEMENT SYSTEM (JIMS) AND PRODUCTION OF DOCUMENTS** <br><br> Judge: Hon. Anthony J. Battaglia <br> Magistrate: Hon. David D. Leshner |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure

3  Rule 34, Plaintiffs Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James

4  Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher

5  Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor,

6  and Laura Zoerner ("Plaintiffs"), on behalf of themselves, all persons similarly

7  situated, and the certified subclass of all qualified individuals with a hearing and/or

8  mobility disability, as that term is defined in 42 U.S.C. § 12102, 29

9  U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who

10  are now, or will be in the future, be incarcerated in the Jail, by and through their

11  attorneys, submit the following Request for Inspection of the Jail Information

12  Management System (JIMS) and Request for the Production of Documents by

13  Defendants San Diego County Sheriff's Department and the County of San Diego

14  ("Defendants").  Plaintiffs request that Plaintiffs' counsel inspect JIMS at the San

15  Diego Central Jail on November 9, 2023 from 9:00 a.m. to 1:00 p.m.  Plaintiffs

16  reserve the right to schedule additional inspections if necessary.

17                          **DEFINITIONS**

18      Unless otherwise indicated, the following definitions and terms shall apply to

19  this Request for Inspection:

20      1.      The terms "ANY" and "ALL," as used herein, shall include "each" and

21  "every" and are not to be construed to limit a request.

22      2.      The term "ADA" means the Americans with Disabilities Act, 42 U.S.C.

23  §§ 12101 *et seq.* as well as related federal and state laws that require accommoda-

24  tion of disabilities and prohibit discrimination on the basis of disability.

25      3.      The term "COMMUNICATIONS" means any transmittal of

26  information from one person or entity to another by any means, including letters,

27  correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic

28  mail (whether to, from, copied or blind copied), electronic mail generated from a

1   hand held personal device including an Android or iPhone, instant messaging,

2   electronic mail generated from business or personal email accounts, internet relay

3   chat, news group, group or collaboration servers, electronic bulletin boards,

4   electronic discussion boards, text messages, dictation tapes, video recordings, audio

5   recordings, digital recordings, memoranda, telegrams, telecopies and telexes,

6   teleconference, collaboration servers (including share point servers), web-based or

7   software virtual meetings including Web-X, Zoom, and any other meeting software

8   and share point servers, and oral contact such as face-to-face discussions or

9   meetings, telephone conversations, and voice mail messages.

10       4.    The term "COMMUNICATIONS RELATED TO TOUR

11  MANAGEMENT" means ALL communications arising from questions concerning

12  the INSPECTION and the general operations of the JAIL related to JIMS, including

13  the screens, tabs, folders, functions, and capabilities of JIMS; the manner in JIMS is

14  used when an INSPECTION is taking place and is not taking place; the routine

15  procedures for recording, tracking, and retrieving information in JIMS; the content

16  of any information recorded in or reports generated by JIMS; and the name and job

17  title of EMPLOYEES.

18       5.    The term "CONTRACTOR" includes any individual or entity, or an

19  EMPLOYEE of the same, who is hired, retained, or otherwise authorized by YOU

20  to undertake any task, service, role, or job on YOUR behalf.  The term includes but

21  is not limited to NaphCare, Inc. and NaphCare of San Diego, LLC.

22       6.    The term "COUNTY" means Defendant San Diego County and anyone

23  acting on its behalf.

24       7.    The term "CURRENT" means in effect and not superseded and/or

25  issued on or after January 1, 2022.

26       8.    The term "DEATH(S)" means the action or fact of dying or being

27  killed, including by suicide.

28       9.    The terms "DEFENDANTS," "YOU," or "YOUR" means the San

1  Diego County Sheriff's Department, San Diego County, and the San Diego County

2  Probation Department, and anyone acting on their behalf.

3      10.     The terms "DISABILITY" and "DISABILITIES" mean any physical,

4  cognitive, developmental, intellectual, mental, or sensory impairment that limits one

5  or more major life activities, including but not limited to, eating, sleeping, speaking,

6  breathing, walking, standing, lifting, bending, thinking, concentrating, seeing,

7  hearing, working, reading, learning, communicating, reading, caring for oneself, and

8  performing manual tasks, as well as the operation of major bodily functions such as

9  circulation, reproduction, and the functioning of individual organs.  The terms also

10  include having a history or record of such impairment or being perceived by others

11  as having such an impairment.

12      11.     The term "DOCUMENT" means any writing, however produced or

13  reproduced, of every kind and regardless of where located, which is in YOUR

14  possession, custody, or control, including drafts; or in the possession, custody or

15  control of any servant or agent of YOU or of YOUR attorneys.  The terms include

16  the following: electronically recorded information such as electronic mail, html

17  files, databases, data processing cards or tapes, computerized data, computer

18  diskettes, or information otherwise contained on a computer's hard drive, disks or

19  backup tapes; video tapes, audio tapes, view-graphs, or any information maintained

20  on digital, electronic, magnetic or other media; and any other summary, schedule,

21  memorandum, note, statement, letter, telegram, interoffice communication, report,

22  diary, worksheet, list, graph, chart, or index, tape record, partial or complete report

23  of telephone or oral conversation, transcript or minutes, compilation, tabulation,

24  study, analysis, or other such writing or recording.  The terms "DOCUMENT" and

25  "DOCUMENTS" include any originals, all file copies, all other copies, no matter

26  how prepared, and all drafts prepared in connection with such DOCUMENTS,

27  whether or not used, as well as the file in which the DOCUMENTS are maintained.

28  A draft or non-identical copy of a DOCUMENT, including a copy or duplicate of a

1  DOCUMENT which has any nonconforming notes, marginal annotations or other

2  markings, and any preliminary version, draft or revision of the foregoing, is a

3  separate DOCUMENT within the meaning of these terms.  The term

4  "DOCUMENT" does not include any writing that constitutes a privileged or

5  otherwise protected communication between YOU and YOUR attorneys.

6      12.    The term "EMPLOYEE" means any employee, director, officer, owner,

7  CONTRACTOR, agent, or any other person working for or on behalf of an entity,

8  such as the COUNTY, the SHERIFF'S DEPARTMENT, or the PROBATION

9  DEPARTMENT.

10     13.    The term "EOH" means Enhanced Observation Housing, as defined in

11 SHERIFF'S DEPARTMENT Detention Policy & Procedure J.4.

12     14.    The term "GRIEVANCE" means a written complaint completed by or

13 on behalf of an INCARCERATED PERSON.

14     15.    The term "HEALTH CARE" means the provision of care or services,

15 to identify and/or address health needs of an INCARCERATED PERSON in the

16 JAIL (including medical, mental health, dental care, and vision care needs), whether

17 those needs arise as a result of injury, illness, disease, age, or trauma, or care or

18 services provided for diagnostic or preventive purposes.

19     16.    The term "HEALTH CARE STAFF" means any person or entity

20 providing HEALTH CARE services, or providing administrative and/or support

21 services related to HEALTH CARE at the JAIL.

22     17.    "IDENTIFY," with respect to an INCARCERATED PERSON or

23 formerly INCARCERATED PERSON, means to state the INCARCERATED

24 PERSON's full name, booking number, date of birth, booking date, and CURRENT

25 housing location (if still in custody) or date of release (if no longer in custody).

26     18.    "IDENTIFY," with respect to a non-INCARCERATED PERSON,

27 means to state the person's name, professional title, credentials and licensing

28 information if applicable, and professional address.

19.    The terms "INCARCERATED PERSON(S)" or "INCARCERATED PEOPLE" mean any person incarcerated, detained, or in the custody of the SHERIFF'S DEPARTMENT.

20.    The terms "INSPECT" or "INSPECTION(S)" mean to log into and electronically navigate between various screens, tabs, folders, functions, and capabilities of JIMS. These terms further mean to ask questions of EMPLOYEES who Plaintiffs' counsel meet and/or encounter during the course of the INSPECTIONS. The terms further mean to review records in JIMS, including but not limited to observing where and how records are maintained. The terms further mean to run searches and reports in JIMS. The terms further mean to observe how Defendants track the disabilities and medical and/or mental health needs and appointments of INCARCERATED PEOPLE. The terms further mean to observe how Defendants track the classification, housing, and custodial needs of INCARCERATED PEOPLE.

21.    The term "JAIL" means the San Diego County Jail, including all of its facilities.

22.    The term "MENTAL HEALTH CARE" means the provision of care or services, to identify and/or address the mental health needs of an INCARCERATED PERSON in the JAIL, whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

23.    The term "MOB" means Medical Observation Bed, as defined in SHERIFF'S DEPARTMENT Medical Services Division Policy & Procedure M-13.

24.    The term "OPSD" means Outpatient Step-Down units for people with mental health conditions and/or mental health care needs.

25.    The term "PLAINTIFFS" means Plaintiffs Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares,

1   Gustavo Sepulveda, Michael Taylor, and Laura Zoerner.

2       26.    The term "POLICIES AND PROCEDURES" means policies,

3   procedures, handbooks, advice, directives, training materials, forms, instructions,

4   and guidelines that comprise established standards, regardless of the author.

5       27.    The term "PROBATION DEPARTMENT" means Defendant San

6   Diego County Probation Department and anyone acting on its behalf.

7       28.    The term "PSU" means Psychiatric Stabilization Unit or Psychiatric

8   Security Unit, as defined in SHERIFF'S DEPARTMENT Detention Policy &

9   Procedure M.25.

10      29.    The terms "RELATED TO," "RELATING TO," or "REGARDING"

11  means, without limitation, anything that, in whole or in part, analyzes, comments

12  upon, comprises, concerns, constitutes, contains, describes, discusses, embodies,

13  evidences, explains, identifies, manifests, mentions, pertains to directly or indirectly

14  to, reflects, refers to, regards, relates to, responds to, states, summarizes, or in any

15  way relevant to the particular subject matter identified.

16      30.    The term "SAFETY CELL" means a temporary housing cell with a

17  padded surface, as defined in SHERIFF'S DEPARTMENT Detention Policy &

18  Procedure J.1.

19      31.    The term "SHERIFF'S DEPARTMENT" means Defendant San Diego

20  County Sheriff's Department and anyone acting on its behalf.

21      32.    The term "SOBERING CELL" means JAIL cells used to house

22  INCARCERATED PERSONS away from other INCARCERATED PERSONS for

23  the specific purposes of detoxification or sobering up; the term includes sobering

24  cells and detoxification cells.

25      33.    The term "STAFFING PLAN" means any DOCUMENT showing the

26  minimum number and types of EMPLOYEES DEFENDANTS intend to work in the

27  JAIL and the minimum number of hours DEFENDANTS intend those

28  EMPLOYEES to work to staff the JAIL, including EMPLOYEES of

1   CONTRACTORS.

2       34.    The words "and" and "or" should be construed disjunctively or

3   conjunctively as necessary to make the Request inclusive rather than exclusive.

4                      **INSTRUCTIONS**

5       1.    Prior to the commencement of the INSPECTION, PLAINTIFFS

6   request that DEFENDANTS provide PLAINTIFFS' counsel with the following

7   information and DOCUMENTS.  PLAINTIFFS further request that DEFENDANTS

8   produce this information at least two days before the INSPECTION:

9           a.    All POLICIES AND PROCEDURES REGARDING the Jail

10  Information Management System (JIMS).

11      2.    During the INSPECTIONS, Plaintiffs' counsel may engage in

12  COMMUNICATIONS RELATED TO TOUR MANAGEMENT with

13  EMPLOYEES at the Jail, including but not limited to correctional staff,

14  administrative staff, and medical and mental health staff.  These questions relate to

15  the INSPECTION as well as the general operations of the JAIL related to JIMS.

16      3.    During the INSPECTIONS, Plaintiffs' counsel may observe

17  EMPLOYEES utilizing JIMS in the course of their duties, including in the delivery

18  of medical, dental, and/or mental health care to INCARCERATED PERSONS,

19  including clinical contacts, evaluation and treatment programming, and medication

20  administration.  Plaintiffs' counsel will obtain permission from patients prior to

21  engaging in such observations, as necessary to address patient privacy concerns.

22      4.    During the INSPECTION, Plaintiffs' counsel may take photographs of

23  screens from JIMS.  After the INSPECTION, Defendants will have an opportunity

24  to review the photographs taken.  Plaintiffs will accommodate reasonable requests to

25  delete photographs that may compromise JAIL security.  Plaintiffs will also redact

26  the personally identifiable information in any photographs that are filed on the

27  public docket or otherwise made publicly available through the course of the

28  litigation.

[4351259.2]                      8              Case No. 3:20-cv-00406-AJB-DDL
PLAINTIFFS' REQUEST FOR INSPECTION OF JAIL INFORMATION MANAGEMENT SYSTEM (JIMS) AND
PRODUCTION OF DOCUMENTS       EX. H - 103

**REQUEST FOR INSPECTION**

PLAINTIFFS' counsel will INSPECT the Jail Information Management System (JIMS) at the San Diego Central Jail on November 9, 2023 from 9:00 a.m. to 1:00 p.m.


DATED:  September 1, 2023          ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Gay Crosthwait Grunfeld*
     Gay Crosthwait Grunfeld

Attorneys for Plaintiffs and the
Certified Subclass

# PROOF OF SERVICE

*Dunsmore et al. v. San Diego County Sheriff's Dept., et al.*
**Case No. 20-cv-00406 AJB DDL**

## STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 101 Mission Street, Sixth Floor, San Francisco, CA 94105-1738.

On September 1, 2023, I served true copies of the following document(s) described as:

**PLAINTIFFS' REQUEST FOR INSPECTION OF JAIL INFORMATION MANAGEMENT SYSTEM (JIMS) AND PRODUCTION OF DOCUMENTS**

on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address kchan@rbgg.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 1, 2023, at San Francisco, California.

I. Kedra Chan

**SERVICE LIST**
*Dunsmore et al. v. San Diego County Sheriff's Dept., et al.*
**Case No. 20-cv-00406 AJB DDL**

| | |
|---|---|
| BURKE, WILLIAMS & SORENSEN, LLP<br>501 West Broadway, Suite 1600<br>San Diego, CA 92101 | BURKE, WILLIAMS & SORENSEN, LLP<br>60 South Market Street, Suite 1000<br>San Jose, CA 95113-2336 |
| Susan E. Coleman<br>(SColeman@bwslaw.com)<br>Terri Mehra<br>(TMehra@bwslaw.com)<br>Diana Favela<br>(DFavela@bwslaw.com) | Elizabeth M. Pappy<br>(EPappy@bwslaw.com)<br>Lucy Gonzalez<br>(LGonzalez@bwslaw.com) |

OFFICE OF COUNTY COUNSEL,
COUNTY OF SAN DIEGO
1600 Pacific Highway, Room 355
San Diego, CA 92101-2469

Fernando Kish
(Fernando.Kish@sdcounty.ca.gov)
Steven Inman
(Steven.Inman@sdcounty.ca.gov)

Attorneys for Defendants County of San Diego, San Diego County Sheriff's Department, and San Diego County Probation Department

EX. H - 106

# Exhibit I

GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Subclass

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No. 3:20-cv-00406-AJB-DDL <br><br> **PLAINTIFFS' REQUEST FOR INSPECTION OF TABLETS AND PRODUCTION OF DOCUMENTS** <br><br> Judge: Hon. Anthony J. Battaglia <br> Magistrate: Hon. David D. Leshner |

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure

3    Rule 34, Plaintiffs Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James

4    Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher

5    Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor,

6    and Laura Zoerner ("Plaintiffs"), on behalf of themselves, all persons similarly

7    situated, and the certified subclass of all qualified individuals with a hearing and/or

8    mobility disability, as that term is defined in 42 U.S.C. § 12102, 29

9    U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who

10   are now, or will be in the future, be incarcerated in the Jail, by and through their

11   attorneys, submit the following Request for Inspection of tablets made available to

12   persons incarcerated in San Diego County Jail and Request for the Production of

13   Documents by Defendants San Diego County Sheriff's Department and the County

14   of San Diego ("Defendants").  Plaintiffs request that Plaintiffs' counsel inspect the

15   tablets at the San Diego Central Jail on November 9, 2023 from 1:00 p.m. to 5:00

16   p.m.  Plaintiffs reserve the right to schedule additional inspections if necessary.

**DEFINITIONS**

18       Unless otherwise indicated, the following definitions and terms shall apply to

19   this Request for Inspection:

20       1.    The terms "ANY" and "ALL," as used herein, shall include "each" and

21   "every" and are not to be construed to limit a request.

22       2.    The term "ADA" means the Americans with Disabilities Act, 42 U.S.C.

23   §§ 12101 *et seq.* as well as related federal and state laws that require

24   accommodation of disabilities and prohibit discrimination on the basis of disability.

25       3.    The term "COMMUNICATIONS" means any transmittal of

26   information from one person or entity to another by any means, including letters,

27   correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic

28   mail (whether to, from, copied or blind copied), electronic mail generated from a

1   hand held personal device including an Android or iPhone, instant messaging,

2   electronic mail generated from business or personal email accounts, internet relay

3   chat, news group, group or collaboration servers, electronic bulletin boards,

4   electronic discussion boards, text messages, dictation tapes, video recordings, audio

5   recordings, digital recordings, memoranda, telegrams, telecopies and telexes,

6   teleconference, collaboration servers (including share point servers), web-based or

7   software virtual meetings including Web-X, Zoom, and any other meeting software

8   and share point servers, and oral contact such as face-to-face discussions or

9   meetings, telephone conversations, and voice mail messages.

10         4.     The term "COMMUNICATIONS RELATED TO TOUR

11   MANAGEMENT" means ALL communications arising from questions concerning

12   the INSPECTION and the general operations of the JAIL related to the tablets

13   provided by Defendants to INCARCERATED PERSONS for use in the JAIL,

14   including the screens, tabs, folders, functions, and capabilities of the tablets; the

15   time, location, and order in which tablets are used by INCARCERATED PERSONS

16   when an INSPECTION is taking place and is not taking place; and the name and job

17   title of EMPLOYEES.

18         5.     The term "CONTRACTOR" includes any individual or entity, or an

19   EMPLOYEE of the same, who is hired, retained, or otherwise authorized by YOU

20   to undertake any task, service, role, or job on YOUR behalf.  The term includes but

21   is not limited to NaphCare, Inc. and NaphCare of San Diego, LLC.

22         6.     The term "COUNTY" means Defendant San Diego County and anyone

23   acting on its behalf.

24         7.     The term "CURRENT" means in effect and not superseded and/or

25   issued on or after January 1, 2022.

26         8.     The term "DEATH(S)" means the action or fact of dying or being

27   killed, including by suicide.

28         9.     The terms "DEFENDANTS," "YOU," or "YOUR" means the San

1  Diego County Sheriff's Department, San Diego County, and the San Diego County

2  Probation Department, and anyone acting on their behalf.

3      10.    The terms "DISABILITY" and "DISABILITIES" mean any physical,

4  cognitive, developmental, intellectual, mental, or sensory impairment that limits one

5  or more major life activities, including but not limited to, eating, sleeping, speaking,

6  breathing, walking, standing, lifting, bending, thinking, concentrating, seeing,

7  hearing, working, reading, learning, communicating, reading, caring for oneself, and

8  performing manual tasks, as well as the operation of major bodily functions such as

9  circulation, reproduction, and the functioning of individual organs.  The terms also

10  include having a history or record of such impairment or being perceived by others

11  as having such an impairment.

12      11.    The term "DOCUMENT" means any writing, however produced or

13  reproduced, of every kind and regardless of where located, which is in YOUR

14  possession, custody, or control, including drafts; or in the possession, custody or

15  control of any servant or agent of YOU or of YOUR attorneys.  The terms include

16  the following: electronically recorded information such as electronic mail, html

17  files, databases, data processing cards or tapes, computerized data, computer

18  diskettes, or information otherwise contained on a computer's hard drive, disks or

19  backup tapes; video tapes, audio tapes, view-graphs, or any information maintained

20  on digital, electronic, magnetic or other media; and any other summary, schedule,

21  memorandum, note, statement, letter, telegram, interoffice communication, report,

22  diary, worksheet, list, graph, chart, or index, tape record, partial or complete report

23  of telephone or oral conversation, transcript or minutes, compilation, tabulation,

24  study, analysis, or other such writing or recording.  The terms "DOCUMENT" and

25  "DOCUMENTS" include any originals, all file copies, all other copies, no matter

26  how prepared, and all drafts prepared in connection with such DOCUMENTS,

27  whether or not used, as well as the file in which the DOCUMENTS are maintained.

28  A draft or non-identical copy of a DOCUMENT, including a copy or duplicate of a

1  DOCUMENT which has any nonconforming notes, marginal annotations or other

2  markings, and any preliminary version, draft or revision of the foregoing, is a

3  separate DOCUMENT within the meaning of these terms.  The term

4  "DOCUMENT" does not include any writing that constitutes a privileged or

5  otherwise protected communication between YOU and YOUR attorneys.

6      12.    The term "EMPLOYEE" means any employee, director, officer, owner,

7  CONTRACTOR, agent, or any other person working for or on behalf of an entity,

8  such as the COUNTY, the SHERIFF'S DEPARTMENT, or the PROBATION

9  DEPARTMENT.

10     13.    The term "EOH" means Enhanced Observation Housing, as defined in

11  SHERIFF'S DEPARTMENT Detention Policy & Procedure J.4.

12     14.    The term "GRIEVANCE" means a written complaint completed by or

13  on behalf of an INCARCERATED PERSON.

14     15.    The term "HEALTH CARE" means the provision of care or services,

15  to identify and/or address health needs of an INCARCERATED PERSON in the

16  JAIL (including medical, mental health, dental care, and vision care needs), whether

17  those needs arise as a result of injury, illness, disease, age, or trauma, or care or

18  services provided for diagnostic or preventive purposes.

19     16.    The term "HEALTH CARE STAFF" means any person or entity

20  providing HEALTH CARE services, or providing administrative and/or support

21  services related to HEALTH CARE at the JAIL.

22     17.    "IDENTIFY," with respect to an INCARCERATED PERSON or

23  formerly INCARCERATED PERSON, means to state the INCARCERATED

24  PERSON's full name, booking number, date of birth, booking date, and CURRENT

25  housing location (if still in custody) or date of release (if no longer in custody).

26     18.    "IDENTIFY," with respect to a non-INCARCERATED PERSON,

27  means to state the person's name, professional title, credentials and licensing

28  information if applicable, and professional address.

19.    The terms "INCARCERATED PERSON(S)" or "INCARCERATED PEOPLE" mean any person incarcerated, detained, or in the custody of the SHERIFF'S DEPARTMENT.

20.    The terms "INSPECT" or "INSPECTION(S)" mean to log into and navigate the tablets provided by Defendants to INCARCERATED PERSONS for use in the JAIL, including but not limited to moving between and exploring the screens, tabs, folders, functions, and capabilities of the tablets.  These terms further mean to ask questions of EMPLOYEES who Plaintiffs' counsel meet and/or encounter during the course of the INSPECTIONS.  The terms further mean to test the functionality of the tablets, including but not limited to sending electronic messages and/or making telephone calls.  The terms further mean to observe how Defendants respond to INCARCERATED PEOPLE's requests made that are made through the tablets.

21.    The term "JAIL" means the San Diego County Jail, including all of its facilities.

22.    The term "MENTAL HEALTH CARE" means the provision of care or services, to identify and/or address the mental health needs of an INCARCERATED PERSON in the JAIL, whether those needs arise as a result of injury, illness, disease, age, or trauma, or care or services provided for diagnostic or preventive purposes.

23.    The term "MOB" means Medical Observation Bed, as defined in SHERIFF'S DEPARTMENT Medical Services Division Policy & Procedure M-13.

24.    The term "OPSD" means Outpatient Step-Down units for people with mental health conditions and/or mental health care needs.

25.    The term "PLAINTIFFS" means Plaintiffs Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner.

26.   The term "POLICIES AND PROCEDURES" means policies, procedures, handbooks, advice, directives, training materials, forms, instructions, and guidelines that comprise established standards, regardless of the author.

27.   The term "PROBATION DEPARTMENT" means Defendant San Diego County Probation Department and anyone acting on its behalf.

28.   The term "PSU" means Psychiatric Stabilization Unit or Psychiatric Security Unit, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure M.25.

29.   The terms "RELATED TO," "RELATING TO," or "REGARDING" means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains to directly or indirectly to, reflects, refers to, regards, relates to, responds to, states, summarizes, or in any way relevant to the particular subject matter identified.

30.   The term "SAFETY CELL" means a temporary housing cell with a padded surface, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure J.1.

31.   The term "SHERIFF'S DEPARTMENT" means Defendant San Diego County Sheriff's Department and anyone acting on its behalf.

32.   The term "SOBERING CELL" means JAIL cells used to house INCARCERATED PERSONS away from other INCARCERATED PERSONS for the specific purposes of detoxification or sobering up; the term includes sobering cells and detoxification cells.

33.   The term "STAFFING PLAN" means any DOCUMENT showing the minimum number and types of EMPLOYEES DEFENDANTS intend to work in the JAIL and the minimum number of hours DEFENDANTS intend those EMPLOYEES to work to staff the JAIL, including EMPLOYEES of CONTRACTORS.

34.     The words "and" and "or" should be construed disjunctively or conjunctively as necessary to make the Request inclusive rather than exclusive.

### INSTRUCTIONS

1.     Prior to the commencement of the INSPECTION, PLAINTIFFS request that DEFENDANTS provide PLAINTIFFS' counsel with the following information and DOCUMENTS.  PLAINTIFFS further request that DEFENDANTS produce this information at least two days before the INSPECTION:

a.     All POLICIES AND PROCEDURES REGARDING the tablets made available to INCARCERATED PEOPLE by Defendants for use in the JAIL.

2.     During the INSPECTIONS, Plaintiffs' counsel may engage in COMMUNICATIONS RELATED TO TOUR MANAGEMENT with EMPLOYEES at the Jail, including but not limited to correctional staff, administrative staff, and medical and mental health staff.  These questions relate to the INSPECTION as well as the general operations of the JAIL related to the tablets.

3.     During the INSPECTIONS, Plaintiffs' counsel may observe INCARCERATED PERSONS utilizing the tablets.  Plaintiffs' counsel will obtain permission from patients prior to engaging in such observations, as necessary to address privacy concerns.

4.     During the INSPECTION, Plaintiffs' counsel may take photographs of screens from the tablets.  After the INSPECTION, Defendants will have an opportunity to review the photographs taken.  Plaintiffs will accommodate reasonable requests to delete photographs that may compromise JAIL security.  Plaintiffs will also redact the personally identifiable information in any photographs that are filed on the public docket or otherwise made publicly available through the course of the litigation.

/ / /

/ / /

# REQUEST FOR INSPECTION

PLAINTIFFS' counsel will INSPECT the tablets made available to INCARCERATED PERSONS by Defendants for use in the JAIL on November 9, 2023 from 1:00 p.m. to 5:00 p.m.


DATED:  September 1, 2023          ROSEN BIEN GALVAN & GRUNFELD LLP

                                  By: */s/ Gay Crosthwait Grunfeld*
                                      Gay Crosthwait Grunfeld

                                  Attorneys for Plaintiffs and the
                                  Certified Subclass

## PROOF OF SERVICE

*Dunsmore et al. v. San Diego County Sheriff's Dept., et al.*
**Case No. 20-cv-00406 AJB DDL**

### STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 101 Mission Street, Sixth Floor, San Francisco, CA 94105-1738.

On September 1, 2023, I served true copies of the following document(s) described as:

### PLAINTIFFS' REQUEST FOR INSPECTION OF TABLETS AND PRODUCTION OF DOCUMENTS

on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address kchan@rbgg.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 1, 2023, at San Francisco, California.

I. Kedra Chan

PROOF OF SERVICE

EX. I - 117

**SERVICE LIST**
*Dunsmore et al. v. San Diego County Sheriff's Dept., et al.*
**Case No. 20-cv-00406 AJB DDL**

BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600
San Diego, CA 92101

Susan E. Coleman
    (SColeman@bwslaw.com)
Terri Mehra
    (TMehra@bwslaw.com)
Diana Favela
    (DFavela@bwslaw.com)

OFFICE OF COUNTY COUNSEL,
COUNTY OF SAN DIEGO
1600 Pacific Highway, Room 355
San Diego, CA 92101-2469

Fernando Kish
    (Fernando.Kish@sdcounty.ca.gov)
Steven Inman
    (Steven.Inman@sdcounty.ca.gov)

BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Suite 1000
San Jose, CA 95113-2336

Elizabeth M. Pappy
    (EPappy@bwslaw.com)
Lucy Gonzalez
    (LGonzalez@bwslaw.com)

Attorneys for Defendants County of San Diego, San Diego County Sheriff's Department, and San Diego County Probation Department

EX. I - 118

# Exhibit J

Susan E. Coleman (SBN 171832)
E-mail:  scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600,
San Diego, CA  92101-8474
Tel:  619.814.5800 Fax:  619.814.6799

Elizabeth M. Pappy (SBN 157069)
E-mail:  epappy@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Ste. 1000
San Jose, CA  95113-2336
Tel:  408.606.6300 Fax:  408.606.6333

Attorneys for Defendants
COUNTY OF SAN DIEGO, SAN DIEGO
COUNTY SHERIFF'S DEPARTMENT and
SAN DIEGO COUNTY PROBATION
DEPARTMENT

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**OBJECTIONS TO PLAINTIFFS' REQUEST FOR INSPECTION OF GEORGE BAILEY DETENTION FACILITY**<br><br>Judge:   Anthony J. Battaglia<br><br>Magistrate Judge David D. Leshner |

Plaintiffs must clear the number of individuals participating in the inspection

and there may be limits imposed on the number of individuals permitted given

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. J - 120

1  facility circumstances at the time of the inspection.  All individuals will have to

2  provide information for security clearance in advance of the inspection and in

3  enough time to allow processing.  Individuals will not be permitted to access any

4  area of the facilities unless specifically authorized by staff and they will not be

5  permitted to leave the inspection group for any reason other than to leave the facility

6  and will do so only with staff escort.

7          The only areas of the facility that may be inspected are those that relate to the

8  subject matter of the litigation as set forth in the complaint and as specifically

9  appliable to the facility in question.  Not all facilities will house mobility disabled

10  individuals other than on a temporary basis in limited areas and thus full facility

11  inspections will not be permitted.

12          No records inspections will be permitted at any facility for any reason.  Not

13  all areas of the facility may be inspected.  To the extent areas are inaccessible

14  because of Incarcerated Person use, no inspection may take place. To the extent

15  areas are identical to other floors/areas, inspection will only be allowed of one of the

16  identical locations.

17          Plaintiffs' counsel and their experts may not speak to anyone in the facilities

18  other than Defense counsel.  They may not speak to staff, Incarcerated Persons or

19  anyone else at the facility.  There will be no inspection permitted of computer

20  systems, file systems, paper documents, or any other written or electronic

21  information during the inspection.  No photographs may be taken of any such areas

22  of the facility.

23          Plaintiffs' counsel and their experts will not be permitted to touch or

24  otherwise interact with any communication or other electronic systems at the

25  facility.

26          The inspection will take place in a single day.  There will be no continuing

27  right to inspect and no further inspections will be allowed at the facility.

28  ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

2

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. J - 131

1    **REQUEST NO. 1a:**

2        Prior to the commencement of the INSPECTION, PLAINTIFFS request that

3    DEFENDANTS provide PLAINTIFFS' counsel with the following information and

4    DOCUMENTS. PLAINTIFFS further request that DEFENDANTS produce this

5    information at least two days before the INSPECTION:

6        A map and floor plans of George Bailey, including identifying ALL housing

7    units, ALL spaces used for HEALTH CARE, ALL spaces used for MENTAL

8    HEALTH CARE, and ALL dental clinic spaces (including those used for taking

9    dental x-rays).

10   **OBJECTION:**

11       Responding party will produce any available map and/or floor plan of the

12   facility.

13   **REQUEST NO. 1b:**

14       An organizational chart identifying supervisory staff at George Bailey.

15   **OBJECTION:**

16       An organizational chart is irrelevant to any issue in the case and specifically

17   to any inspection and is harassing.  No chart will be produced.

18   **REQUEST NO. 1c:**

19       A complete roster of INCARCERATED PEOPLE at George Bailey as of the

20   date of production, including their housing placements (unit and bed assignment,

21   type of housing (SAFETY CELL, SOBERING CELL, EOH, MOB, PSU, OPSD,

22   etc.), if applicable). For each INCARCERATED PERSON, please include their

23   name, date of birth, booking number, booking date, classification status, and

24   estimated date of release, if available. Identify on the roster each INCARCERATED

25   PERSON who is on the Medical Care caseload, the Mental Health caseload, and/or

26   the Dental Care caseload as of the date of production. Identify on the roster each

27   INCARCERATED PERSON with a DISABILITY in George Bailey as of the date

28   of production, and for each INCARCERATED PERSON with a DISABILITY,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

3          Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. J - 122

1  include their DISABILITY or DISABILITIES and ALL information about ANY

2  accommodations (including housing accommodations and assistive devices) that

3  YOU provide to the individual.

4  **OBJECTION:**

5      Objection.  The requested information will not be provided as it invades the

6  privacy rights of Incarcerated Persons and Responding Party is not required by

7  FRCP 34 to create documents in response to a Request for Production.

8  **REQUEST NO. 1di:**

9      Logs, rosters, or other tracking systems, as specified herein:

10      ALL logs, rosters, or other tracking system of ANY kind used by Defendants

11  to track which INCARCERATED PERSONS are on the JAIL's Medical Care

12  caseload, Mental Health caseload, Dental Care caseload, and/or sick call list, for the

13  six months preceding the INSPECTION.

14  **OBJECTION:**

15      Objection.  The requested information will not be provided as it invades the

16  privacy rights of Incarcerated Persons.

17  **REQUEST NO. 1dii:**

18      ANY logs, rosters, or other tracking system of ANY kind used by Defendants

19  to track antibiotic prescriptions provided to INCARCERATED PERSONS to treat

20  or manage dental pain or dental care concerns.

21  **OBJECTION:**

22      Objection.  The requested information will not be provided as it invades the

23  privacy rights of Incarcerated Persons.

24  **REQUEST NO. 1diii:**

25      ALL logs, rosters, or other tracking system of ANY kind used by

26  DEFENDANTS to track which INCARCERATED PERSONS have a DISABILITY

27  or DISABILITIES, and the DISABILITY accommodations the INCARCERATED

28  PERSONS require, for the six months preceding the INSPECTION.

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. J - 123

1 **OBJECTION:**

2      Objection.  The requested information will not be provided as it invades the

3 privacy rights of Incarcerated Persons.

4 **REQUEST NO. 1v:**

5      ALL logs, rosters, or other tracking system of ANY kind used by

6 DEFENDANTS related to DISABILITY accommodations offered or provided to

7 INCARCERATED PERSONS at George Bailey (with specific accommodations

8 identified) during the six months preceding the date of INSPECTION, including but

9 not limited to EFFECTIVE COMMUNICATION, REASONABLE

10 ACCOMMODATIONS, ADA-accessible housing placement, wheelchairs, canes,

11 and program modifications.

12 **OBJECTION:**

13      Objection.  The requested information will not be provided as it invades the

14 privacy rights of Incarcerated Persons.

15 **REQUEST NO. 1e:**

16      Documentation sufficient to show which programs, services and activities,

17 including but not limited to, education, exercise, vocation, religious, substance

18 abuse, library, and rehabilitative programs, are offered to INCARCERATED

19 PERSONS with DISABILITIES, INCARCERATED PERSONS on the JAIL's

20 Medical Care caseload, INCARCERATED PERSONS on the JAIL's Mental Health

21 caseload, and INCARCERATED PERSONS on the JAIL's Dental Care caseload;

22 the locations in which the programs are offered; the schedule on which the programs

23 are supposed to be offered; and the actual dates and times the programs have been

24 offered in the 90 days preceding the INSPECTION.

25 **OBJECTION:**

26      Objection.  The request is vague, ambiguous, and overbroad.  All programs,

27 services and activities are offered to Incarcerated Persons regardless of disability

28 and there are none specific to individuals with disabilities.  In addition, the request

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

5

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. J - 124

1  duplicates RFPOD#5, No. 167.

2  **REQUEST NO. 1f:**

3  ALL documentation related to ANY temporary or permanent modification

4  made to ANY physical structure, program, service, or activity at the facility to be

5  INSPECTED for the purpose of providing a DISABILITY accommodation during

6  the 12 months preceding the date of INSPECTION, including any schematic,

7  design, or construction DOCUMENTS.

8  **OBJECTION:**

9  Objection.  The request is overbroad, harassing, vague and ambiguous.

10  Responding party will not be allowing the inspections as noticed and thus what is

11  "to be inspected" is ambiguous.  In addition, the request duplicates RFPOD#5, No.

12  168.

13  **REQUEST NO. 1g:**

14  A list of ALL housing placements to which DEFENDANTS assign

15  INCARCERATED PERSONS with MOBILITY DISABILITIES, including those

16  who (1) are wheelchair users, (2) use a cane for stability or mobility, (3) cannot

17  climb stairs, (4) cannot climb into an upper bunk, (5) use crutches, (6) use walkers

18  or similar mobility assistance devices; and/or (7) have a prosthetic limb.

19  **OBJECTION:**

20  Any such documents that exist will be produced.

21  **REQUEST NO. 2:**

22  During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may

23  engage in COMMUNICATIONS RELATED TO TOUR MANAGEMENT with

24  EMPLOYEES at the Jail, including but not limited to correctional staff,

25  administrative staff, and medical and mental health staff. These questions will be

26  limited to routine questions concerning the general operations of the facility to be

27  INSPECTED and the practical aspects of the INSPECTION.

28  ///

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

6

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. J - 125

1  **OBJECTION:**

2      Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

3  not be permitted to speak to anyone in the facility.  All communication with staff

4  will take place through Defense counsel only.  Any violation of this rule will result

5  in the individual(s) being removed from the facility.

6  **REQUEST NO. 3:**

7      During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may

8  observe the booking and intake screening of INCARCERATED PERSONS as well

9  as the delivery of medical, dental, and/or mental health care to INCARCERATED

10  PERSONS, including clinical contacts, evaluation and treatment programming, and

11  medication administration. Plaintiffs' counsel and Plaintiffs' expert will obtain

12  permission from patients prior to engaging in such observations, as necessary to

13  address patient privacy concerns.

14  **OBJECTION:**

15      Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

16  not be permitted to observe the booking or intake screening process and will not be

17  permitted to speak to anyone in the facility.  All communication with staff will take

18  place through Defense counsel only.  Any violation of this rule will result in the

19  individual(s) being removed from the facility.

20  **REQUEST NO. 4:**

21      During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may

22  interview, in the housing units or in a separate confidential setting,

23  INCARCERATED PEOPLE, including but not limited to INCARCERATED

24  PEOPLE with DISABILITIES, INCARCERATED PEOPLE on the JAIL's Medical

25  Care caseload, INCARCERATED PEOPLE on the JAIL's Mental Health caseload,

26  and INCARCERATED PEOPLE on the JAIL's Dental Care caseload, regarding

27  their experiences while in custody at the JAIL.

28  ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

7

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. J - 126

1  **OBJECTION:**

2      Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

3  not be permitted to interview anyone in the facility in any location.  All

4  communication with staff will take place through Defense counsel only.  Any

5  violation of this rule will result in the individual(s) being removed from the facility.

6  **REQUEST NO. 5:**

7      During the INSPECTION, Plaintiffs' counsel and Plaintiffs' experts may take

8  photographs of George Bailey. After the INSPECTION, Defendants will have an

9  opportunity to review the photographs taken. Plaintiffs will accommodate

10  reasonable requests to delete photographs that may compromise JAIL security.

11  Plaintiffs will also blur the faces of individuals in any photographs that are filed on

12  the public docket or otherwise made publicly available through the course of the

13  litigation.

14  **OBJECTION:**

15      Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

16  not be permitted to take any photographs of the facility except Ms. Sanossian or her

17  assistant.  The memory card used to take photographs will be left with Defense

18  counsel before exiting the facility, no copies will be sent wirelessly, and no backup

19  copies will be removed from the facility.  Staff will review the memory card and

20  delete any photos which pose a security risk.  The deleted photographs will be

21  identified to Plaintiffs' counsel.  No photographs will be allowed of any

22  Incarcerated Person or staff person in the facility.  Any such photos will be deleted.

23  Dated:  October 10, 2023                    BURKE, WILLIAMS & SORENSEN, LLP

24

25

26                                        By: _____

27                                        Susan E. Coleman/Elizabeth M. Pappy
                                          Attorneys for Defendants
28                                        COUNTY OF SAN DIEGO

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

8                    Case No. 3:20-cv-00406-AJB-DDL
                     OBJECTIONS TO PLAINTIFFS' REQUEST FOR
                     INSPECTION

EX. J - 127

# Exhibit K

1  Susan E. Coleman (SBN 171832)
   E-mail:  scoleman@bwslaw.com
2  BURKE, WILLIAMS & SORENSEN, LLP
   501 West Broadway, Suite 1600,
3  San Diego, CA  92101-8474
   Tel:  619.814.5800 Fax:  619.814.6799
4
   Elizabeth M. Pappy (SBN 157069)
5  E-mail:  epappy@bwslaw.com
   BURKE, WILLIAMS & SORENSEN, LLP
6  60 South Market Street, Ste. 1000
   San Jose, CA  95113-2336
7  Tel:  408.606.6300 Fax:  408.606.6333

8  Attorneys for Defendants
   COUNTY OF SAN DIEGO, SAN DIEGO
9  COUNTY SHERIFF'S DEPARTMENT and
   SAN DIEGO COUNTY PROBATION
10 DEPARTMENT

11              UNITED STATES DISTRICT COURT

12           SOUTHERN DISTRICT OF CALIFORNIA

13

14 | DARRYL DUNSMORE, ANDREE | Case No. 3:20-cv-00406-AJB-DDL
   | ANDRADE, ERNEST ARCHULETA, |
15 | JAMES CLARK, ANTHONY | **OBJECTIONS TO PLAINTIFFS'**
   | EDWARDS, LISA LANDERS, | **REQUEST FOR INSPECTION OF**
16 | REANNA LEVY, JOSUE LOPEZ, | **EAST MESA REENTRY FACILITY**
   | CHRISTOPHER NELSON, |
17 | CHRISTOPHER NORWOOD, JESSE | Judge:   Anthony J. Battaglia
   | OLIVARES, GUSTAVO |
18 | SEPULVEDA, MICHAEL TAYLOR, | Magistrate Judge David D. Leshner
   | and LAURA ZOERNER, on behalf of |
19 | themselves and all others similarly |
   | situated, |
20 |  |
   |         Plaintiffs, |
21 |  |
   |         v. |
22 |  |
   | SAN DIEGO COUNTY SHERIFF'S |
23 | DEPARTMENT, COUNTY OF SAN |
   | DIEGO, SAN DIEGO COUNTY |
24 | PROBATION DEPARTMENT, and |
   | DOES 1 to 20, inclusive, |
25 |  |
   |         Defendants. |
26

27        Plaintiffs must clear the number of individuals participating in the inspection

28 and there may be limits imposed on the number of individuals permitted given

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4886-0728-2814 v1                    1              Case No. 3:20-cv-00406-AJB-DDL
                                                    OBJECTIONS TO PLAINTIFFS' REQUEST FOR
                                                    EX. K - 129 INSPECTION

1  facility circumstances at the time of the inspection.  All individuals will have to

2  provide information for security clearance in advance of the inspection and in

3  enough time to allow processing.  Individuals will not be permitted to access any

4  area of the facilities unless specifically authorized by staff and they will not be

5  permitted to leave the inspection group for any reason other than to leave the facility

6  and will do so only with staff escort.

7          The only areas of the facility that may be inspected are those that relate to the

8  subject matter of the litigation as set forth in the complaint and as specifically

9  appliable to the facility in question.  Not all facilities will house mobility disabled

10  individuals other than on a temporary basis in limited areas and thus full facility

11  inspections will not be permitted.

12          No records inspections will be permitted at any facility for any reason.  Not

13  all areas of the facility may be inspected.  To the extent areas are inaccessible

14  because of Incarcerated Person use, no inspection may take place. To the extent

15  areas are identical to other floors/areas, inspection will only be allowed of one of the

16  identical locations.

17          Plaintiffs' counsel and their experts may not speak to anyone in the facilities

18  other than Defense counsel.  They may not speak to staff, Incarcerated Persons or

19  anyone else at the facility.  There will be no inspection permitted of computer

20  systems, file systems, paper documents, or any other written or electronic

21  information during the inspection.  No photographs may be taken of any such areas

22  of the facility.

23          Plaintiffs' counsel and their experts will not be permitted to touch or

24  otherwise interact with any communication or other electronic systems at the

25  facility.

26  The inspection will take place in a single day.  There will be no continuing right to

27  inspect and no further inspections will be allowed at the facility.

28  ///

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4886-0728-2814 v1                          2                Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. K - 130

**REQUEST NO. 1a:**

Prior to the commencement of the INSPECTION, PLAINTIFFS request that DEFENDANTS provide PLAINTIFFS' counsel with the following information and DOCUMENTS. PLAINTIFFS further request that DEFENDANTS produce this information at least two days before the INSPECTION:

A map and floor plans of East Mesa, including identifying ALL housing units.

**OBJECTION:**

Responding party will produce any available map and/or floor plan of the facility.

**REQUEST NO. 1b:**

An organizational chart identifying supervisory staff at East Mesa.

**OBJECTION:**

An organizational chart is irrelevant to any issue in the case and specifically to any inspection and is harassing.  No chart will be produced.

**REQUEST NO. 1c:**

A complete roster of INCARCERATED PEOPLE at East Mesa as of the date of production, including their housing placements (unit and bed assignment, type of housing (SAFETY CELL, SOBERING CELL, EOH, MOB, PSU, OPSD, etc.), if applicable). For each INCARCERATED PERSON, please include their name, date of birth, booking number, booking date, classification status, and estimated date of release, if available. Identify on the roster each INCARCERATED PERSON with a DISABILITY in East Mesa as of the date of production, and for each INCARCERATED PERSON with a DISABILITY, include their DISABILITY or DISABILITIES and ALL information about ANY accommodations (including housing accommodations and assistive devices) that YOU provide to the individual.

**OBJECTION:**

Objection.  The requested information will not be provided as it invades the

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4886-0728-2814 v1                3                Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. K - 131

1  privacy rights of Incarcerated Persons and Responding Party is not required by

2  FRCP 34 to create documents in response to a Request for Production.

3  **REQUEST NO. di:**

4      Logs, rosters, or other tracking systems, as specified herein:

5      ALL logs, rosters, or other tracking system of ANY kind used by

6  DEFENDANTS to track which INCARCERATED PERSONS have a DISABILITY

7  or DISABILITIES, and the DISABILITY accommodations the INCARCERATED

8  PERSONS require, for the six months preceding the INSPECTION.

9  **OBJECTION:**

10      Objection.  The requested information will not be provided as it invades the

11  privacy rights of Incarcerated Persons.

12  **REQUEST NO. dii:**

13      ALL logs, rosters, or other tracking system of ANY kind used by

14  DEFENDANTS related to DISABILITY accommodations offered or provided to

15  INCARCERATED PERSONS at East Mesa (with specific accommodations

16  identified) during the six months preceding the date of INSPECTION, including but

17  not limited to EFFECTIVE COMMUNICATION, REASONABLE

18  ACCOMMODATIONS, ADA-accessible housing placement, wheelchairs, canes,

19  and program modifications.

20  **OBJECTION:**

21      Objection.  The requested information will not be provided as it invades the

22  privacy rights of Incarcerated Persons.

23  **REQUEST NO. 1e**

24      Documentation sufficient to show which programs, services and activities,

25  including but not limited to, education, exercise, vocation, religious, substance

26  abuse, library, and rehabilitative programs, are offered to INCARCERATED

27  PERSONS with DISABILITIES; the locations in which the programs are offered;

28  the schedule on which the programs are supposed to be offered; and the actual dates

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4886-0728-2814 v1

4

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. K - 132

1  and times the programs have been offered in the 90 days preceding the

2  INSPECTION.

3  **OBJECTION:**

4      Objection.  The request is vague, ambiguous, and overbroad.  All programs,

5  services and activities are offered to Incarcerated Persons regardless of disability

6  and there are none specific to individuals with disabilities.  In addition, the request

7  duplicates RFPOD#5, No. 167.

8  **REQUEST NO. 1f:**

9      ALL documentation related to ANY temporary or permanent modification

10 made to ANY physical structure, program, service, or activity at the facility to be

11 INSPECTED for the purpose of providing a DISABILITY accommodation during

12 the 12 months preceding the date of INSPECTION, including any schematic,

13 design, or construction DOCUMENTS.

14 **OBJECTION:**

15     Objection.  The request is overbroad, harassing, vague and ambiguous.

16 Responding party will not be allowing the inspections as noticed and thus what is

17 "to be inspected" is ambiguous.  In addition, the request duplicates RFPOD#5, No.

18 168.

19 **REQUEST NO. 1g:**

20     A list of ALL housing placements to which DEFENDANTS assign

21 INCARCERATED PERSONS with MOBILITY DISABILITIES, including those

22 who (1) are wheelchair users, (2) use a cane for stability or mobility, (3) cannot

23 climb stairs, (4) cannot climb into an upper bunk, (5) use crutches, (6) use walkers

24 or similar mobility assistance devices; and/or (7) have a prosthetic limb.

25 **OBJECTION:**

26     Any such documents that exist will be produced.

27 **REQUEST NO. 2:**

28     During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4886-0728-2814 v1                                    5                            Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION
EX. K - 133

1  engage in COMMUNICATIONS RELATED TO TOUR MANAGEMENT with

2  EMPLOYEES at the Jail, including but not limited to correctional staff,

3  administrative staff, and medical and mental health staff. These questions will be

4  limited to routine questions concerning the general operations of the facility to be

5  INSPECTED and the practical aspects of the INSPECTION.

6  **OBJECTION:**

7      Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

8      not be permitted to speak to anyone in the facility. All communication with

9  staff will take place through Defense counsel only. Any violation of this rule will

10  result in the individual(s) being removed from the facility.

11  **REQUEST NO. 3:**

12      During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may

13  observe the booking and intake screening of INCARCERATED PERSONS.

14  Plaintiffs' counsel and Plaintiffs' expert will obtain permission from patients prior

15  to engaging in such observations, as necessary to address patient privacy concerns.

16  **OBJECTION:**

17      Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

18  not be permitted to speak to anyone in the facility.  All communication with staff

19  will take place through Defense counsel only.  Any violation of this rule will result

20  in the individual(s) being removed from the facility.

21  **REQUEST NO. 4:**

22      During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may

23  interview, in the housing units or in a separate confidential setting,

24  INCARCERATED PEOPLE, including but not limited to INCARCERATED

25  PEOPLE with DISABILITIES, regarding their experiences while in custody at the

26  JAIL.

27  **OBJECTION:**

28      Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4886-0728-2814 v1                6                Case No. 3:20-cv-00406-AJB-DDL
                                                  OBJECTIONS TO PLAINTIFFS' REQUEST FOR
                                                  INSPECTION
                                                  EX. K - 134

1    not be permitted to interview anyone in the facility in any location.  All

2    communication with staff will take place through Defense counsel only.  Any

3    violation of this rule will result in the individual(s) being removed from the facility.

4    **REQUEST NO. 5:**

5         During the INSPECTION, Plaintiffs' counsel and Plaintiffs' experts may take

6    photographs of East Mesa. After the INSPECTION, Defendants will have an

7    opportunity to review the photographs taken. Plaintiffs will accommodate

8    reasonable requests to delete photographs that may compromise JAIL security.

9    Plaintiffs will also blur the faces of individuals in any photographs that are filed on

10   the public docket or otherwise made publicly available through the course of the

11   litigation.

12   **OBJECTION:**

13        Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

14   not be permitted to take any photographs of the facility except Ms. Sanossian or her

15   assistant.  The memory card used to take photographs will be left with Defense

16   counsel before exiting the facility, no copies will be sent wirelessly, and no backup

17   copies will be removed from the facility.  Staff will review the memory card and

18   delete any photos which pose a security risk.  The deleted photographs will be

19   identified to Plaintiffs' counsel.  No photographs will be allowed of any

20   Incarcerated Person or staff person in the facility.  Any such photos will be deleted.

21

22   Dated:  October 10, 2023              BURKE, WILLIAMS & SORENSEN, LLP

23

24

25                                         By: _____

26                                         Susan E. Coleman
                                           Elizabeth M. Pappy
27                                         Attorneys for Defendants
                                           COUNTY OF SAN DIEGO
28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4886-0728-2814 v1                         7                Case No. 3:20-cv-00406-AJB-DDL
                                                     OBJECTIONS TO PLAINTIFFS' REQUEST FOR
                                                                    INSPECTION
EX. K - 135

# Exhibit L

Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600,
San Diego, CA 92101-8474
Tel: 619.814.5800 Fax: 619.814.6799

Elizabeth M. Pappy (SBN 157069)
E-mail: epappy@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Ste. 1000
San Jose, CA 95113-2336
Tel: 408.606.6300 Fax: 408.606.6333

Attorneys for Defendants
COUNTY OF SAN DIEGO, SAN DIEGO
COUNTY SHERIFF'S DEPARTMENT and
SAN DIEGO COUNTY PROBATION
DEPARTMENT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DARRYL DUNSMORE, ANDREE
ANDRADE, ERNEST ARCHULETA,
JAMES CLARK, ANTHONY
EDWARDS, LISA LANDERS,
REANNA LEVY, JOSUE LOPEZ,
CHRISTOPHER NELSON,
CHRISTOPHER NORWOOD, JESSE
OLIVARES, GUSTAVO
SEPULVEDA, MICHAEL TAYLOR,
and LAURA ZOERNER, on behalf of
themselves and all others similarly
situated,

　　　　　Plaintiffs,

　　　v.

SAN DIEGO COUNTY SHERIFF'S
DEPARTMENT, COUNTY OF SAN
DIEGO, SAN DIEGO COUNTY
PROBATION DEPARTMENT, and
DOES 1 to 20, inclusive,

　　　　　Defendants.

Case No. 3:20-cv-00406-AJB-DDL

**OBJECTIONS TO PLAINTIFFS'
REQUEST FOR INSPECTION OF
LAS COLINAS DETENTION AND
REENTRY FACILITY**

Judge:  Anthony J. Battaglia

Magistrate Judge David D. Leshner

Plaintiffs must clear the number of individuals participating in the inspection

and there may be limits imposed on the number of individuals permitted given

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

1   facility circumstances at the time of the inspection.  All individuals will have to

2   provide information for security clearance in advance of the inspection and in

3   enough time to allow processing.  Individuals will not be permitted to access any

4   area of the facilities unless specifically authorized by staff and they will not be

5   permitted to leave the inspection group for any reason other than to leave the facility

6   and will do so only with staff escort.

7        The only areas of the facility that may be inspected are those that relate to the

8   subject matter of the litigation as set forth in the complaint and as specifically

9   appliable to the facility in question.  Not all facilities will house mobility disabled

10  individuals other than on a temporary basis in limited areas and thus full facility

11  inspections will not be permitted.

12       No records inspections will be permitted at any facility for any reason.  Not

13  all areas of the facility may be inspected.  To the extent areas are inaccessible

14  because of Incarcerated Person use, no inspection may take place. To the extent

15  areas are identical to other floors/areas, inspection will only be allowed of one of the

16  identical locations.

17       Plaintiffs' counsel and their experts may not speak to anyone in the facilities

18  other than Defense counsel.  They may not speak to staff, Incarcerated Persons or

19  anyone else at the facility.  There will be no inspection permitted of computer

20  systems, file systems, paper documents, or any other written or electronic

21  information during the inspection.  No photographs may be taken of any such areas

22  of the facility.

23       Plaintiffs' counsel and their experts will not be permitted to touch or

24  otherwise interact with any communication or other electronic systems at the

25  facility.

26       The inspection will take place in a single day.  There will be no continuing

27  right to inspect and no further inspections will be allowed at the facility.

28  ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

2

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. L - 138

**REQUEST NO. 1a:**

Prior to the commencement of the INSPECTION, PLAINTIFFS request that DEFENDANTS provide PLAINTIFFS' counsel with the following information and DOCUMENTS. PLAINTIFFS further request that DEFENDANTS produce this information at least two days before the INSPECTION:

A map and floor plans of Las Colinas, including identifying ALL housing units, ALL spaces used for HEALTH CARE, ALL spaces used for MENTAL HEALTH CARE, and ALL dental clinic spaces (including those used for taking dental x-rays).

**OBJECTION:**

Responding party will produce any available map and/or floor plan of the facility.

**REQUEST NO. 1b:**

An organizational chart identifying supervisory staff at Las Colinas.

**OBJECTION:**

An organizational chart is irrelevant to any issue in the case and specifically to any inspection and is harassing. No chart will be produced.

**REQUEST NO. 1c:**

A complete roster of INCARCERATED PEOPLE at Las Colinas as of the date of production, including their housing placements (unit and bed assignment, type of housing (SAFETY CELL, SOBERING CELL, EOH, MOB, PSU, OPSD, etc.), if applicable). For each INCARCERATED PERSON, please include their name, date of birth, booking number, booking date, classification status, and estimated date of release, if available. Identify on the roster each INCARCERATED PERSON who is on the Medical Care caseload, the Mental Health caseload, and/or the Dental Care caseload as of the date of production. Identify on the roster each INCARCERATED PERSON with a DISABILITY in Las Colinas as of the date of production, and for each INCARCERATED PERSON with a DISABILITY, include

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

3

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. L - 139

1  their DISABILITY or DISABILITIES and ALL information about ANY

2  accommodations (including housing accommodations and assistive devices) that

3  YOU provide to the individual.

4  **OBJECTION:**

5      Objection.  The requested information will not be provided as it invades the

6  privacy rights of Incarcerated Persons and Responding Party is not required by

7  FRCP 34 to create documents in response to a Request for Production.

8  **REQUEST NO. 1di:**

9      Logs, rosters, or other tracking systems, as specified herein:

10     ALL logs, rosters, or other tracking system of ANY kind used by Defendants

11 to track which INCARCERATED PERSONS are on the JAIL's Medical Care

12 caseload, Mental Health caseload, Dental Care caseload, and/or sick call list, for the

13 six months preceding the INSPECTION.

14 **OBJECTION:**

15     Objection.  The requested information will not be provided as it invades the

16 privacy rights of Incarcerated Persons.

17 **REQUEST NO. 1dii:**

18     ANY logs, rosters, or other tracking system of ANY kind used by Defendants

19 to track antibiotic prescriptions provided to INCARCERATED PERSONS to treat

20 or manage dental pain or dental care concerns.

21 **OBJECTION:**

22     Objection.  The requested information will not be provided as it invades the

23 privacy rights of Incarcerated Persons.

24 **REQUEST NO. 1diii:**

25     ALL logs, rosters, or other tracking system of ANY kind used by

26 DEFENDANTS to track which INCARCERATED PERSONS have a DISABILITY

27 or DISABILITIES, and the DISABILITY accommodations the INCARCERATED

28 PERSONS require, for the six months preceding the INSPECTION.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. L - 140

1  **OBJECTION:**

2      Objection.  The requested information will not be provided as it invades the

3  privacy rights of Incarcerated Persons.

4  **REQUEST NO. 1div:**

5      ALL logs, rosters, or other tracking system of ANY kind used by

6  DEFENDANTS related to DISABILITY accommodations offered or provided to

7  INCARCERATED PERSONS at Las Colinas (with specific accommodations

8  identified) during the six months preceding the date of INSPECTION, including but

9  not limited to EFFECTIVE COMMUNICATION, REASONABLE

10  ACCOMMODATIONS, ADA-accessible housing placement, wheelchairs, canes,

11  and program modifications.

12  **OBJECTION:**

13      Objection.  The requested information will not be provided as it invades the

14  privacy rights of Incarcerated Persons.

15  **REQUEST NO. 1e:**

16      Documentation sufficient to show which programs, services and activities,

17  including but not limited to, education, exercise, vocation, religious, substance

18  abuse, library, and rehabilitative programs, are offered to INCARCERATED

19  PERSONS with DISABILITIES, INCARCERATED PERSONS on the JAIL's

20  Medical Care caseload, INCARCERATED PERSONS on the JAIL's Mental Health

21  caseload, and INCARCERATED PERSONS on the JAIL's Dental Care caseload;

22  the locations in which the programs are offered; the schedule on which the programs

23  are supposed to be offered; and the actual dates and times the programs have been

24  offered in the 90 days preceding the INSPECTION.

25  **OBJECTION:**

26      Objection.  The request is vague, ambiguous, and overbroad.  All programs,

27  services and activities are offered to Incarcerated Persons regardless of disability

28  and there are none specific to individuals with disabilities.  In addition, the request

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

5

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. L - 145

1  duplicates RFPOD#5, No. 167.

2  **REQUEST NO. 1f:**

3      ALL documentation related to ANY temporary or permanent modification

4  made to ANY physical structure, program, service, or activity at the facility to be

5  INSPECTED for the purpose of providing a DISABILITY accommodation during

6  the 12 months preceding the date of INSPECTION, including any schematic,

7  design, or construction DOCUMENTS.

8  **OBJECTION:**

9      Objection.  The request is overbroad, harassing, vague and ambiguous.

10 Responding party will not be allowing the inspections as noticed and thus what is

11 "to be inspected" is ambiguous.  In addition, the request duplicates RFPOD#5, No.

12 168.

13 **REQUEST NO. 1g:**

14     A list of ALL housing placements to which DEFENDANTS assign

15 INCARCERATED PERSONS with MOBILITY DISABILITIES, including those

16 who (1) are wheelchair users, (2) use a cane for stability or mobility, (3) cannot

17 climb stairs, (4) cannot climb into an upper bunk, (5) use crutches, (6) use walkers

18 or similar mobility assistance devices; and/or (7) have a prosthetic limb.

19 **OBJECTION:**

20     Any such documents that exist will be produced.

21 **REQUEST NO. 2:**

22     During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may

23 engage in COMMUNICATIONS RELATED TO TOUR MANAGEMENT with

24 EMPLOYEES at the Jail, including but not limited to correctional staff,

25 administrative staff, and medical and mental health staff. These questions will be

26 limited to routine questions concerning the general operations of the facility to be

27 INSPECTED and the practical aspects of the INSPECTION.

28 ///

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

6

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. L - 142

1  **OBJECTION:**

2      Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

3  not be permitted to speak to anyone in the facility.  All communication with staff

4  will take place through Defense counsel only.  Any violation of this rule will result

5  in the individual(s) being removed from the facility.

6  **REQUEST NO. 3:**

7      During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may

8  observe the booking and intake screening of INCARCERATED PERSONS as well

9  as the delivery of medical, dental, and/or mental health care to INCARCERATED

10 PERSONS, including clinical contacts, evaluation and treatment programming, and

11 medication administration. Plaintiffs' counsel and Plaintiffs' expert will obtain

12 permission from patients prior to engaging in such observations, as necessary to

13 address patient privacy concerns.

14 **OBJECTION:**

15     Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

16 not be permitted to observe the booking or intake screening process and will not be

17 permitted to speak to anyone in the facility.  All communication with staff will take

18 place through Defense counsel only.  Any violation of this rule will result in the

19 individual(s) being removed from the facility.

20 **REQUEST NO. 4:**

21     During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may

22 interview, in the housing units or in a separate confidential setting,

23 INCARCERATED PEOPLE, including but not limited to INCARCERATED

24 PEOPLE with DISABILITIES, INCARCERATED PEOPLE on the JAIL's Medical

25 Care caseload, INCARCERATED PEOPLE on the JAIL's Mental Health caseload,

26 and INCARCERATED PEOPLE on the JAIL's Dental Care caseload, regarding

27 their experiences while in custody at the JAIL.

28 ///

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

7

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. L - 143

1  **OBJECTION:**

2       Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

3  not be permitted to interview anyone in the facility in any location.  All

4  communication with staff will take place through Defense counsel only.  Any

5  violation of this rule will result in the individual(s) being removed from the facility.

6  **REQUEST NO. 5:**

7       During the INSPECTION, Plaintiffs' counsel and Plaintiffs' experts may take

8  photographs of Las Colinas. After the INSPECTION, Defendants will have an

9  opportunity to review the photographs taken. Plaintiffs will accommodate

10  reasonable requests to delete photographs that may compromise JAIL security.

11  Plaintiffs will also blur the faces of individuals in any photographs that are filed on

12  the public docket or otherwise made publicly available through the course of the

13  litigation.

14  **OBJECTION:**

15       Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

16  not be permitted to take any photographs of the facility except Ms. Sanossian or her

17  assistant.  The memory card used to take photographs will be left with Defense

18  counsel before exiting the facility, no copies will be sent wirelessly, and no backup

19  copies will be removed from the facility.  Staff will review the memory card and

20  delete any photos which pose a security risk.  The deleted photographs will be

21  identified to Plaintiffs' counsel.  No photographs will be allowed of any

22  Incarcerated Person or staff person in the facility.  Any such photos will be deleted.

23  Dated:  October 10, 2023                    BURKE, WILLIAMS & SORENSEN, LLP

24

25

26                                            By: _____

27                                            Susan E. Coleman/Elizabeth M. Pappy
                                              Attorneys for Defendants
28                                            COUNTY OF SAN DIEGO

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

8                 Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. L - 144

# Exhibit M

Susan E. Coleman (SBN 171832)
E-mail:  scoleman@bwslaw.com
Elizabeth M. Pappy (SBN 157069)
E-mail:  epappy@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
2310 East Ponderosa Drive, Suite 25
Camarillo, California 93010-4747
Tel:  805.987.3468 Fax:  805.482.9834

Attorneys for Defendants
COUNTY OF SAN DIEGO, SAN DIEGO
COUNTY SHERIFF'S DEPARTMENT and
SAN DIEGO COUNTY PROBATION
DEPARTMENT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**OBJECTION TO PLAINTIFFS' REQUEST FOR INSPECTION OF SAN DIEGO CENTRAL JAIL**<br><br>District Judge: Anthony J. Battaglia<br><br>Magistrate Judge: David D. Leshner |

///

///

///

///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

1

Case No. 3:20-cv-00406-AJB-DDL
OBJECTION TO PLAINTIFFS' REQUEST FOR
INSPECTION OF SAN DIEGO CENTRAL JAIL
EXEM. 146

1    No inspection will be permitted and none of the documents will be produced.

2  Plaintiffs inspected San Diego Central Jail and are not permitted to inspect the

3  facility more than one time.

4

5  Dated:  October 10, 2023                    BURKE, WILLIAMS & SORENSEN, LLP

6

7

8                                             By: _____

9                                                  Susan E. Coleman
                                                   Elizabeth M. Pappy
10                                                 Attorneys for Defendants
                                                   COUNTY OF SAN DIEGO, SAN
11                                                 DIEGO COUNTY SHERIFF'S
                                                   DEPARTMENT and SAN DIEGO
12                                                 COUNTY PROBATION
                                                   DEPARTMENT
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

2

Case No. 3:20-cv-00406-AJB-DDL
OBJECTION TO PLAINTIFFS' REQUEST FOR
INSPECTION OF SAN DIEGO CENTRAL JAIL
EXEM-1147

# Exhibit N

1  Susan E. Coleman (SBN 171832)
   E-mail:  scoleman@bwslaw.com
2  BURKE, WILLIAMS & SORENSEN, LLP
   501 West Broadway, Suite 1600,
3  San Diego, CA  92101-8474
   Tel:  619.814.5800 Fax:  619.814.6799
4
   Elizabeth M. Pappy (SBN 157069)
5  E-mail:  epappy@bwslaw.com
   BURKE, WILLIAMS & SORENSEN, LLP
6  60 South Market Street, Ste. 1000
   San Jose, CA  95113-2336
7  Tel:  408.606.6300 Fax:  408.606.6333

8  Attorneys for Defendants
   COUNTY OF SAN DIEGO, SAN DIEGO
9  COUNTY SHERIFF'S DEPARTMENT and
   SAN DIEGO COUNTY PROBATION
10 DEPARTMENT

11               UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13

14 | DARRYL DUNSMORE, ANDREE | Case No. 3:20-cv-00406-AJB-DDL
   ANDRADE, ERNEST ARCHULETA, |
15 JAMES CLARK, ANTHONY | **OBJECTIONS TO PLAINTIFFS'**
   EDWARDS, LISA LANDERS, | **REQUEST FOR INSPECTION OF**
16 REANNA LEVY, JOSUE LOPEZ, | **SOUTH BAY DETENTION**
   CHRISTOPHER NELSON, | **FACILITY**
17 CHRISTOPHER NORWOOD, JESSE |
   OLIVARES, GUSTAVO | Judge:   Anthony J. Battaglia
18 SEPULVEDA, MICHAEL TAYLOR, |
   and LAURA ZOERNER, on behalf of | Magistrate Judge David D. Leshner
19 themselves and all others similarly
   situated,
20
                Plaintiffs,
21
          v.
22
   SAN DIEGO COUNTY SHERIFF'S
23 DEPARTMENT, COUNTY OF SAN
   DIEGO, SAN DIEGO COUNTY
24 PROBATION DEPARTMENT, and
   DOES 1 to 20, inclusive,
25
                Defendants.
26

27      Plaintiffs must clear the number of individuals participating in the inspection

28 and there may be limits imposed on the number of individuals permitted given

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. N - 149

1   facility circumstances at the time of the inspection.  All individuals will have to

2   provide information for security clearance in advance of the inspection and in

3   enough time to allow processing.  Individuals will not be permitted to access any

4   area of the facilities unless specifically authorized by staff and they will not be

5   permitted to leave the inspection group for any reason other than to leave the facility

6   and will do so only with staff escort.

7   The only areas of the facility that may be inspected are those that relate to the

8   subject matter of the litigation as set forth in the complaint and as specifically

9   appliable to the facility in question.  Not all facilities will house mobility disabled

10  individuals other than on a temporary basis in limited areas and thus full facility

11  inspections will not be permitted.

12  No records inspections will be permitted at any facility for any reason.  Not

13  all areas of the facility may be inspected.  To the extent areas are inaccessible

14  because of Incarcerated Person use, no inspection may take place. To the extent

15  areas are identical to other floors/areas, inspection will only be allowed of one of the

16  identical locations.

17  Plaintiffs' counsel and their experts may not speak to anyone in the facilities

18  other than Defense counsel.  They may not speak to staff, Incarcerated Persons or

19  anyone else at the facility.  There will be no inspection permitted of computer

20  systems, file systems, paper documents, or any other written or electronic

21  information during the inspection.  No photographs may be taken of any such areas

22  of the facility.

23  Plaintiffs' counsel and their experts will not be permitted to touch or

24  otherwise interact with any communication or other electronic systems at the

25  facility.

26  The inspection will take place in a single day.  There will be no continuing

27  right to inspect and no further inspections will be allowed at the facility.

28  ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

2

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. N - 150

1  **REQUEST NO. 1a:**

2      Prior to the commencement of the INSPECTION, PLAINTIFFS request that

3  DEFENDANTS provide PLAINTIFFS' counsel with the following information and

4  DOCUMENTS. PLAINTIFFS further request that DEFENDANTS produce this

5  information at least two days before the INSPECTION:

6      A map and floor plans of South Bay, including identifying ALL housing

7  units.

8  **OBJECTION:**

9      Responding party will produce any available map and/or floor plan of the

10  facility.

11  **REQUEST NO. 1b:**

12      An organizational chart identifying supervisory staff at South Bay.

13  **OBJECTION:**

14      An organizational chart is irrelevant to any issue in the case and specifically

15  to any inspection and is harassing.  No chart will be produced.

16  **REQUEST NO. 1c:**

17      A complete roster of INCARCERATED PEOPLE at South Bay as of the date

18  of production, including their housing placements (unit and bed assignment, type of

19  housing (SAFETY CELL, SOBERING CELL, EOH, MOB, PSU, OPSD, etc.), if

20  applicable). For each INCARCERATED PERSON, please include their name, date

21  of birth, booking number, booking date, classification status, and estimated date of

22  release, if available. Identify on the roster each INCARCERATED PERSON with a

23  DISABILITY in South Bay as of the date of production, and for each

24  INCARCERATED PERSON with a DISABILITY, include their DISABILITY or

25  DISABILITIES and ALL information about ANY accommodations (including

26  housing accommodations and assistive devices) that YOU provide to the individual.

27  **OBJECTION:**

28      Objection.  The requested information will not be provided as it invades the

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

3

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. N - 151

1  privacy rights of Incarcerated Persons and Responding Party is not required by

2  FRCP 34 to create documents in response to a Request for Production.

3  **REQUEST NO. 1di:**

4       ALL logs, rosters, or other tracking system of ANY kind used by

5  DEFENDANTS to track which INCARCERATED PERSONS have a DISABILITY

6  or DISABILITIES, and the DISABILITY accommodations the INCARCERATED

7  PERSONS require, for the six months preceding the INSPECTION.

8  **OBJECTION:**

9       Objection.  The requested information will not be provided as it invades the

10  privacy rights of Incarcerated Persons.

11  **REQUEST NO. 1dii:**

12       ALL logs, rosters, or other tracking system of ANY kind used by

13  DEFENDANTS related to DISABILITY accommodations offered or provided to

14  INCARCERATED PERSONS at South Bay (with specific accommodations

15  identified) during the six months preceding the date of INSPECTION, including but

16  not limited to EFFECTIVE COMMUNICATION, REASONABLE

17  ACCOMMODATIONS, ADA-accessible housing placement, wheelchairs, canes,

18  and program modifications.

19  **OBJECTION:**

20       Objection.  The requested information will not be provided as it invades the

21  privacy rights of Incarcerated Persons.

22  **REQUEST NO. 1e:**

23       Documentation sufficient to show which programs, services and activities,

24  including but not limited to, education, exercise, vocation, religious, substance

25  abuse, library, and rehabilitative programs, are offered to INCARCERATED

26  PERSONS with DISABILITIES; the locations in which the programs are offered;

27  the schedule on which the programs are supposed to be offered; and the actual dates

28  and times the programs have been offered in the 90 days preceding the

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. N - 152

1  INSPECTION.

2  **OBJECTION:**

3       Objection.  The request is vague, ambiguous, and overbroad.  All programs,

4  services and activities are offered to Incarcerated Persons regardless of disability

5  and there are none specific to individuals with disabilities.  In addition, the request

6  duplicates RFPOD#5, No. 167.

7  **REQUEST NO. 1f:**

8       ALL documentation related to ANY temporary or permanent modification

9  made to ANY physical structure, program, service, or activity at the facility to be

10  INSPECTED for the purpose of providing a DISABILITY accommodation during

11  the 12 months preceding the date of INSPECTION, including any schematic,

12  design, or construction DOCUMENTS.

13  **OBJECTION:**

14       Objection.  The request is overbroad, harassing, vague and ambiguous.

15  Responding party will not be allowing the inspections as noticed and thus what is

16  "to be inspected" is ambiguous.  In addition, the request duplicates RFPOD#5, No.

17  168.

18  **REQUEST NO. 1g:**

19       A list of ALL housing placements to which DEFENDANTS assign

20  INCARCERATED PERSONS with MOBILITY DISABILITIES, including those

21  who (1) are wheelchair users, (2) use a cane for stability or mobility, (3) cannot

22  climb stairs, (4) cannot climb into an upper bunk, (5) use crutches, (6) use walkers

23  or similar mobility assistance devices; and/or (7) have a prosthetic limb.

24  **OBJECTION:**

25       Any such documents that exist will be produced.

26  **REQUEST NO. 2:**

27       During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may

28  engage in COMMUNICATIONS RELATED TO TOUR MANAGEMENT with

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

5                     Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. N - 153

1  EMPLOYEES at the Jail, including but not limited to correctional staff,

2  administrative staff, and medical and mental health staff. These questions will be

3  limited to routine questions concerning the general operations of the facility to be

4  INSPECTED and the practical aspects of the INSPECTION.

5  **OBJECTION:**

6      Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

7  not be permitted to speak to anyone in the facility.  All communication with staff

8  will take place through Defense counsel only.  Any violation of this rule will result

9  in the individual(s) being removed from the facility.

10  **REQUEST NO. 3:**

11     During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may

12  observe the booking and intake screening of INCARCERATED PERSONS.

13  Plaintiffs' counsel and Plaintiffs' expert will obtain permission from patients prior

14  to engaging in such observations, as necessary to address patient privacy concerns.

15  **OBJECTION:**

16     Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

17  not be permitted to observe the booking or intake screening process and will not be

18  permitted to speak to anyone in the facility.  All communication with staff will take

19  place through Defense counsel only.  Any violation of this rule will result in the

20  individual(s) being removed from the facility.

21  **REQUEST NO. 4:**

22     During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may

23  interview, in the housing units or in a separate confidential setting,

24  INCARCERATED PEOPLE, including but not limited to INCARCERATED

25  PEOPLE with DISABILITIES, regarding their experiences while in custody at the

26  JAIL.

27  **OBJECTION:**

28     Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

6

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. N - 154

1  not be permitted to interview anyone in the facility in any location.  All

2  communication with staff will take place through Defense counsel only.  Any

3  violation of this rule will result in the individual(s) being removed from the facility.

4  **REQUEST NO. 5:**

5       During the INSPECTION, Plaintiffs' counsel and Plaintiffs' experts may take

6  photographs of South Bay. After the INSPECTION, Defendants will have an

7  opportunity to review the photographs taken. Plaintiffs will accommodate

8  reasonable requests to delete photographs that may compromise JAIL security.

9       Plaintiffs will also blur the faces of individuals in any photographs that are

10  filed on the public docket or otherwise made publicly available through the course

11  of the litigation.

12  **OBJECTION:**

13       Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

14  not be permitted to take any photographs of the facility except Ms. Sanossian or her

15  assistant.  The memory card used to take photographs will be left with Defense

16  counsel before exiting the facility, no copies will be sent wirelessly, and no backup

17  copies will be removed from the facility.  Staff will review the memory card and

18  delete any photos which pose a security risk.  The deleted photographs will be

19  identified to Plaintiffs' counsel.  No photographs will be allowed of any

20  Incarcerated Person or staff person in the facility.  Any such photos will be deleted.

21

22  Dated:  October 10, 2023          BURKE, WILLIAMS & SORENSEN, LLP

23

24

25  By: _____

26         Susan E. Coleman

       Elizabeth M. Pappy

27         Attorneys for Defendants

       COUNTY OF SAN DIEGO

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

7

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. N - 155

# Exhibit O

1  Susan E. Coleman (SBN 171832)
   E-mail:  scoleman@bwslaw.com
2  BURKE, WILLIAMS & SORENSEN, LLP
   501 West Broadway, Suite 1600,
3  San Diego, CA  92101-8474
   Tel:  619.814.5800 Fax:  619.814.6799
4
   Elizabeth M. Pappy (SBN 157069)
5  E-mail:  epappy@bwslaw.com
   BURKE, WILLIAMS & SORENSEN, LLP
6  60 South Market Street, Ste. 1000
   San Jose, CA  95113-2336
7  Tel:  408.606.6300 Fax:  408.606.6333

8  Attorneys for Defendants
   COUNTY OF SAN DIEGO, SAN DIEGO
9  COUNTY SHERIFF'S DEPARTMENT and
   SAN DIEGO COUNTY PROBATION
10 DEPARTMENT

11             UNITED STATES DISTRICT COURT

12             SOUTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, | Case No. 3:20-cv-00406-AJB-DDL **OBJECTIONS TO PLAINTIFFS' REQUEST FOR INSPECTION OF VISTA DETENTION FACILITY** Judge:  Anthony J. Battaglia Magistrate Judge David D. Leshner |

15
16
17
18
19
20
                    Plaintiffs,
21
          v.
22
   SAN DIEGO COUNTY SHERIFF'S
23 DEPARTMENT, COUNTY OF SAN
   DIEGO, SAN DIEGO COUNTY
24 PROBATION DEPARTMENT, and
   DOES 1 to 20, inclusive,
25
                    Defendants.
26

27      Plaintiffs must clear the number of individuals participating in the inspection

28 and there may be limits imposed on the number of individuals permitted given

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

1          Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. O - 157

1  facility circumstances at the time of the inspection.  All individuals will have to

2  provide information for security clearance in advance of the inspection and in

3  enough time to allow processing.  Individuals will not be permitted to access any

4  area of the facilities unless specifically authorized by staff and they will not be

5  permitted to leave the inspection group for any reason other than to leave the facility

6  and will do so only with staff escort.

7       The only areas of the facility that may be inspected are those that relate to the

8  subject matter of the litigation as set forth in the complaint and as specifically

9  appliable to the facility in question.  Not all facilities will house mobility disabled

10  individuals other than on a temporary basis in limited areas and thus full facility

11  inspections will not be permitted.

12       No records inspections will be permitted at any facility for any reason.  Not

13  all areas of the facility may be inspected.  To the extent areas are inaccessible

14  because of Incarcerated Person use, no inspection may take place. To the extent

15  areas are identical to other floors/areas, inspection will only be allowed of one of the

16  identical locations.

17       Plaintiffs' counsel and their experts may not speak to anyone in the facilities

18  other than Defense counsel.  They may not speak to staff, Incarcerated Persons or

19  anyone else at the facility.  There will be no inspection permitted of computer

20  systems, file systems, paper documents, or any other written or electronic

21  information during the inspection.  No photographs may be taken of any such areas

22  of the facility.

23       Plaintiffs' counsel and their experts will not be permitted to touch or

24  otherwise interact with any communication or other electronic systems at the

25  facility.

26       The inspection will take place in a single day.  There will be no continuing

27  right to inspect and no further inspections will be allowed at the facility.

28  ///

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

2

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. O - 158

**REQUEST NO. 1a:**

Prior to the commencement of the INSPECTION, PLAINTIFFS request that DEFENDANTS provide PLAINTIFFS' counsel with the following information and DOCUMENTS. PLAINTIFFS further request that DEFENDANTS produce this information at least two days before the INSPECTION:

A map and floor plans of Vista, including identifying ALL housing units.

**OBJECTION:**

Responding party will produce any available map and/or floor plan of the facility.

**REQUEST NO. 1b:**

An organizational chart identifying supervisory staff at Vista.

**OBJECTION:**

An organizational chart is irrelevant to any issue in the case and specifically to any inspection and is harassing. No chart will be produced.

**REQUEST NO. 1c:**

A complete roster of INCARCERATED PEOPLE at Vista as of the date of production, including their housing placements (unit and bed assignment, type of housing (SAFETY CELL, SOBERING CELL, EOH, MOB, PSU, OPSD, etc.), if applicable). For each INCARCERATED PERSON, please include their name, date of birth, booking number, booking date, classification status, and estimated date of release, if available. Identify on the roster each INCARCERATED PERSON with a DISABILITY in Vista as of the date of production, and for each INCARCERATED PERSON with a DISABILITY, include their DISABILITY or DISABILITIES and ALL information about ANY accommodations (including housing accommodations and assistive devices) that YOU provide to the individual.

**OBJECTION:**

Objection. The requested information will not be provided as it invades the privacy rights of Incarcerated Persons and Responding Party is not required by

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

3

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. O - 159

1  FRCP 34 to create documents in response to a Request for Production.

2  **REQUEST NO. 1di:**

3       Logs, rosters, or other tracking systems, as specified herein:

4       ALL logs, rosters, or other tracking system of ANY kind used by

5  DEFENDANTS to track which INCARCERATED PERSONS have a DISABILITY

6  or DISABILITIES, and the DISABILITY accommodations the INCARCERATED

7  PERSONS require, for the six months preceding the INSPECTION.

8  **OBJECTION:**

9       Objection.  The requested information will not be provided as it invades the

10 privacy rights of Incarcerated Persons.

11 **REQUEST NO. 1dii:**

12      ALL logs, rosters, or other tracking system of ANY kind used by

13 DEFENDANTS related to DISABILITY accommodations offered or provided to

14 INCARCERATED PERSONS at Vista (with specific accommodations identified)

15 during the six months preceding the date of INSPECTION, including but not limited

16 to EFFECTIVE COMMUNICATION, REASONABLE ACCOMMODATIONS,

17 ADA-accessible housing placement, wheelchairs, canes, and program modifications.

18 **OBJECTION:**

19      Objection.  The requested information will not be provided as it invades the

20 privacy rights of Incarcerated Persons.

21 **REQUEST NO. 1e:**

22      Documentation sufficient to show which programs, services and activities,

23 including but not limited to, education, exercise, vocation, religious, substance

24 abuse, library, and rehabilitative programs, are offered to INCARCERATED

25 PERSONS with DISABILITIES; the locations in which the programs are offered;

26 the schedule on which the programs are supposed to be offered; and the actual dates

27 and times the programs have been offered in the 90 days preceding the

28 INSPECTION.

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. O - 160

**OBJECTION:**

Objection.  The request is vague, ambiguous, and overbroad.  All programs, services and activities are offered to Incarcerated Persons regardless of disability and there are none specific to individuals with disabilities.  In addition, the request duplicates RFPOD#5, No. 167.

**REQUEST NO. 1f:**

ALL documentation related to ANY temporary or permanent modification made to ANY physical structure, program, service, or activity at the facility to be INSPECTED for the purpose of providing a DISABILITY accommodation during the 12 months preceding the date of INSPECTION, including any schematic, design, or construction DOCUMENTS.

**OBJECTION:**

Objection.  The request is overbroad, harassing, vague and ambiguous. Responding party will not be allowing the inspections as noticed and thus what is "to be inspected" is ambiguous.  In addition, the request duplicates RFPOD#5, No. 168.

**REQUEST NO. 1g:**

A list of ALL housing placements to which DEFENDANTS assign INCARCERATED PERSONS with MOBILITY DISABILITIES, including those who (1) are wheelchair users, (2) use a cane for stability or mobility, (3) cannot climb stairs, (4) cannot climb into an upper bunk, (5) use crutches, (6) use walkers or similar mobility assistance devices; and/or (7) have a prosthetic limb.

**OBJECTION:**

Any such documents that exist will be produced.

**REQUEST NO. 2:**

During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may engage in COMMUNICATIONS RELATED TO TOUR MANAGEMENT with EMPLOYEES at the Jail, including but not limited to correctional staff,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

5

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR INSPECTION

EX. O - 161

1  administrative staff, and medical and mental health staff. These questions will be

2  limited to routine questions concerning the general operations of the facility to be

3  INSPECTED and the practical aspects of the INSPECTION.

4  **OBJECTION:**

5      Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

6  not be permitted to speak to anyone in the facility.  All communication with staff

7  will take place through Defense counsel only.  Any violation of this rule will result

8  in the individual(s) being removed from the facility.

9  **REQUEST NO. 3:**

10      During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may

11  observe the booking and intake screening of INCARCERATED PERSONS.

12  Plaintiffs' counsel and Plaintiffs' expert will obtain permission from patients prior

13  to engaging in such observations, as necessary to address patient privacy concerns.

14  **OBJECTION:**

15      Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

16  not be permitted to observe the booking or intake screening process and will not be

17  permitted to speak to anyone in the facility.  All communication with staff will take

18  place through Defense counsel only.  Any violation of this rule will result in the

19  individual(s) being removed from the facility.

20  **REQUEST NO. 4:**

21      During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' expert may

22  interview, in the housing units or in a separate confidential setting,

23  INCARCERATED PEOPLE, including but not limited to INCARCERATED

24  PEOPLE with DISABILITIES, regarding their experiences while in custody at the

25  JAIL.

26  **OBJECTION:**

27      Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

28  not be permitted to interview anyone in the facility in any location.  All

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

6

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. O - 162

1  communication with staff will take place through Defense counsel only.  Any

2  violation of this rule will result in the individual(s) being removed from the facility.

3  **REQUEST NO. 5:**

4        During the INSPECTIONS, Plaintiffs' counsel and Plaintiffs' experts may

5  take photographs of Vista.  After the INSPECTION, Defendants will have an

6  opportunity to review the photographs taken.  Plaintiffs will accommodate

7  reasonable requests to delete photographs that may compromise JAIL security.

8  Plaintiffs will also blur the facts of individuals in any photographs that are filed on

9  the public docket or otherwise made publicly available through the course of the

10  litigation.

11  **OBJECTION:**

12        Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will

13  not be permitted to take any photographs of the facility except Ms. Sanossian or her

14  assistant.  The memory card used to take photographs will be left with Defense

15  counsel before exiting the facility, no copies will be sent wirelessly, and no backup

16  copies will be removed from the facility.  Staff will review the memory card and

17  delete any photos which pose a security risk.  The deleted photographs will be

18  identified to Plaintiffs' counsel.  No photographs will be allowed of any

19  Incarcerated Person or staff person in the facility.  Any such photos will be deleted.

20

21  Dated:  October 10, 2023                    BURKE, WILLIAMS & SORENSEN, LLP

22

23

24                                             By: _____

25                                                  Susan E. Coleman
                                                   Elizabeth M. Pappy
26                                                 Attorneys for Defendants

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

7

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. O - 163

# Exhibit P

1  Susan E. Coleman (SBN 171832)
   E-mail:  scoleman@bwslaw.com
2  BURKE, WILLIAMS & SORENSEN, LLP
   501 West Broadway, Suite 1600,
3  San Diego, CA  92101-8474
   Tel:  619.814.5800 Fax:  619.814.6799
4
   Elizabeth M. Pappy (SBN 157069)
5  E-mail:  epappy@bwslaw.com
   BURKE, WILLIAMS & SORENSEN, LLP
6  60 South Market Street, Ste. 1000
   San Jose, CA  95113-2336
7  Tel:  408.606.6300 Fax:  408.606.6333

8  Attorneys for Defendants
   COUNTY OF SAN DIEGO, SAN DIEGO
9  COUNTY SHERIFF'S DEPARTMENT and
   SAN DIEGO COUNTY PROBATION
10 DEPARTMENT

11                 UNITED STATES DISTRICT COURT

12               SOUTHERN DISTRICT OF CALIFORNIA

13

14 DARRYL DUNSMORE, ANDREE           Case No. 3:20-cv-00406-AJB-DDL
   ANDRADE, ERNEST ARCHULETA,
15 JAMES CLARK, ANTHONY              **OBJECTIONS TO PLAINTIFFS'**
   EDWARDS, LISA LANDERS,            **REQUEST FOR INSPECTION OF**
16 REANNA LEVY, JOSUE LOPEZ,         **JAIL INFORMATION**
   CHRISTOPHER NELSON,               **MANAGEMENT SYSTEM (JIMS)**
17 CHRISTOPHER NORWOOD, JESSE
   OLIVARES, GUSTAVO                 Judge:   Anthony J. Battaglia
18 SEPULVEDA, MICHAEL TAYLOR,
   and LAURA ZOERNER, on behalf of   Magistrate Judge David D. Leshner
19 themselves and all others similarly
   situated,
20
                Plaintiffs,
21
          v.
22
   SAN DIEGO COUNTY SHERIFF'S
23 DEPARTMENT, COUNTY OF SAN
   DIEGO, SAN DIEGO COUNTY
24 PROBATION DEPARTMENT, and
   DOES 1 to 20, inclusive,
25
                Defendants.
26

27      An inspection of JIMS will not be permitted.  Plaintiffs' counsel will need to

28 meet and confer with Defendants' counsel for a time, place, and method of

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

                                    1                Case No. 3:20-cv-00406-AJB-DDL
                                        OBJECTIONS TO PLAINTIFFS' REQUEST FOR
                                                                      INSPECTION
EX. P - 165

1  inspection which may be limited to Defendants' provision of screen shots of the

2  functionality of JIMS without any Incarcerated Person information included.  There

3  will no interview of any employee or Incarcerated Person as part of any such

4  process.

5

6  Dated:  October 10, 2023                    BURKE, WILLIAMS & SORENSEN, LLP

7

8

9  By: _____

10         Susan E. Coleman
          Elizabeth M. Pappy
11         Attorneys for Defendants
          COUNTY OF SAN DIEGO

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

2

Case No. 3:20-cv-00406-AJB-DDL
OBJECTIONS TO PLAINTIFFS' REQUEST FOR
INSPECTION

EX. P - 166

# Exhibit Q

1  Susan E. Coleman (SBN 171832)
   E-mail:  scoleman@bwslaw.com
2  BURKE, WILLIAMS & SORENSEN, LLP
   501 West Broadway, Suite 1600,
3  San Diego, CA  92101-8474
   Tel:  619.814.5800 Fax:  619.814.6799
4
   Elizabeth M. Pappy (SBN 157069)
5  E-mail:  epappy@bwslaw.com
   BURKE, WILLIAMS & SORENSEN, LLP
6  60 South Market Street, Ste. 1000
   San Jose, CA  95113-2336
7  Tel:  408.606.6300 Fax:  408.606.6333
8  Attorneys for Defendants
   COUNTY OF SAN DIEGO, SAN DIEGO
9  COUNTY SHERIFF'S DEPARTMENT and
   SAN DIEGO COUNTY PROBATION
10 DEPARTMENT

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13

14 DARRYL DUNSMORE, ANDREE          | Case No. 3:20-cv-00406-AJB-DDL
   ANDRADE, ERNEST ARCHULETA,       |
15 JAMES CLARK, ANTHONY             | **OBJECTIONS TO PLAINTIFFS'**
   EDWARDS, LISA LANDERS,           | **REQUEST FOR INSPECTION OF**
16 REANNA LEVY, JOSUE LOPEZ,        | **TABLETS**
   CHRISTOPHER NELSON,              |
17 CHRISTOPHER NORWOOD, JESSE       | Judge:   Anthony J. Battaglia
   OLIVARES, GUSTAVO                |
18 SEPULVEDA, MICHAEL TAYLOR,       | Magistrate Judge David D. Leshner
   and LAURA ZOERNER, on behalf of  |
19 themselves and all others similarly |
   situated,                        |
20                                  |
                   Plaintiffs,      |
21                                  |
           v.                       |
22                                  |
   SAN DIEGO COUNTY SHERIFF'S       |
23 DEPARTMENT, COUNTY OF SAN        |
   DIEGO, SAN DIEGO COUNTY          |
24 PROBATION DEPARTMENT, and        |
   DOES 1 to 20, inclusive,         |
25                                  |
                   Defendants.      |
26

27        An inspection of tablets inside any facility will not be permitted.  Plaintiffs

28 counsel will need to meet and confer with Defendants' counsel for a time, place, and

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

                              1                    Case No. 3:20-cv-00406-AJB-DDL
                                        OBJECTIONS TO PLAINTIFFS' REQUEST FOR
                                                        INSPECTION
EX. Q - 168

1  method of inspection which may be limited to Defendants' provision of screen shots

2  of the functionality of tablets without any Incarcerated Person information included.

3  There will no interview of any employee or Incarcerated Person as part of any such

4  process.

5

6  Dated:  October 10, 2023                    BURKE, WILLIAMS & SORENSEN, LLP

7

8

9                                              By: _____

10                                                 Susan E. Coleman
                                                   Elizabeth M. Pappy
11                                                 Attorneys for Defendants
                                                   COUNTY OF SAN DIEGO
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

2                    Case No. 3:20-cv-00406-AJB-DDL
                     OBJECTIONS TO PLAINTIFFS' REQUEST FOR
                     INSPECTION
EX. Q - 169

# Exhibit R

| | |
|---|---|
| **From:** | Pappy, Elizabeth M. |
| **To:** | Van Swearingen |
| **Cc:** | Kedra Chan; Coleman, Susan E.; Fernando Kish; Inman, Steven; Mehra, Terri; Favela, Diana; Gonzalez, Lucy; Gay C. Grunfeld; Eric Monek Anderson; Aaron Fischer; Christopher Young; Hannah Chartoff; Priyah Kaul |
| **Subject:** | RE: Dunsmore v. San Diego County Sheriff"s Department, et al.: E-SERVICE - Requests for Inspection [IMAN-DMS.FID55015] |
| **Date:** | Monday, October 9, 2023 4:48:15 PM |

> **[EXTERNAL MESSAGE NOTICE]**

I see that we missed the deadline last week.  Please let me know if you require me to seek leave of Court regarding my inadvertent failure to serve the objections last week while I was in trial.

I will do that tomorrow if you need me to do it.  Can you please tell me what the prejudice is to your client given that I was in trial so that I may put it in any necessary motion?  Again, there is no objection to the dates and we have been talking to the Court about the request to inspect the JIMS system and tablets so the objection is already before the Court.  We haven't formally raised the issue about your folks thinking they can ask anyone questions (which they cannot) so if you can focus your explanation of prejudice as to that issue.

Thank you.


**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA  95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com
Burke, Williams & Sorensen, LLP


The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

**From:** Pappy, Elizabeth M.
**Sent:** Monday, October 9, 2023 4:31 PM
**To:** Van Swearingen <VSwearingen@rbgg.com>
**Cc:** Kedra Chan <KChan@rbgg.com>; Coleman, Susan E. <SColeman@bwslaw.com>; Fernando Kish <Fernando.Kish@sdcounty.ca.gov>; Inman, Steven <Steven.Inman@sdcounty.ca.gov>; Mehra, Terri <TMehra@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>; Gonzalez, Lucy <LGonzalez@bwslaw.com>; Gay C. Grunfeld <GGrunfeld@rbgg.com>; Eric Monek Anderson <EMonekAnderson@rbgg.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Christopher Young <christopher.young@dlapiper.com>; Hannah Chartoff <HChartoff@rbgg.com>; Priyah Kaul

\<pkaul@rbgg.com\>
**Subject:** RE: Dunsmore v. San Diego County Sheriff's Department, et al.: E-SERVICE - Requests for
Inspection [IMAN-DMS.FID55015]

We seem to be two ships passing in the night.  We had lengthy meet and confer about the issues
with Gay and Aaron. Are you suggesting that never happened?

Can you tell me when the objections were due since the inspections are next month and have been
continued once if not twice that I recall?

You can have your experts make whatever arrangements they want but they may not be let in.


**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA  95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com
Burke, Williams & Sorensen, LLP


The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee
named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney
work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated
addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this
document through inadvertent error and any further review, dissemination, distribution or copying of this communication by
you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US
IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.


**From:** Van Swearingen \<VSwearingen@rbgg.com\>
**Sent:** Monday, October 9, 2023 4:27 PM
**To:** Pappy, Elizabeth M. \<EPappy@bwslaw.com\>
**Cc:** Kedra Chan \<KChan@rbgg.com\>; Coleman, Susan E. \<SColeman@bwslaw.com\>; Fernando Kish
\<Fernando.Kish@sdcounty.ca.gov\>; Inman, Steven \<Steven.Inman@sdcounty.ca.gov\>; Mehra, Terri
\<TMehra@bwslaw.com\>; Favela, Diana \<dfavela@bwslaw.com\>; Gonzalez, Lucy
\<LGonzalez@bwslaw.com\>; Gay C. Grunfeld \<GGrunfeld@rbgg.com\>; Eric Monek Anderson
\<EMonekAnderson@rbgg.com\>; Aaron Fischer \<ajf@aaronfischerlaw.com\>; Christopher Young
\<christopher.young@dlapiper.com\>; Hannah Chartoff \<HChartoff@rbgg.com\>; Priyah Kaul
\<pkaul@rbgg.com\>
**Subject:** RE: Dunsmore v. San Diego County Sheriff's Department, et al.: E-SERVICE - Requests for
Inspection [IMAN-DMS.FID55015]

[EXTERNAL]

Hi Beth,

We will have our attorneys and experts make their travel arrangements for the inspections noticed on November 1 through 9.

For past inspections, you asked visitors to complete the attached form and send it to Michael.Binsfield@sdsheriff.org with a copy to Christina.Bavencoff@sdsheriff.org.  Should we follow the same procedure for these inspections?

Defendants did not timely respond to the inspection notices (the notices were served September 1; Plaintiffs never received a written response).  When do you plan to send the untimely written objections?

Thank you,
Van

---

**From:** Pappy, Elizabeth M. <EPappy@bwslaw.com>
**Sent:** Monday, October 9, 2023 2:19 PM
**To:** Van Swearingen <VSwearingen@rbgg.com>
**Cc:** Kedra Chan <KChan@rbgg.com>; Coleman, Susan E. <SColeman@bwslaw.com>; Fernando Kish <Fernando.Kish@sdcounty.ca.gov>; Inman, Steven <Steven.Inman@sdcounty.ca.gov>; Mehra, Terri <TMehra@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>; Gonzalez, Lucy <LGonzalez@bwslaw.com>; Gay C. Grunfeld <GGrunfeld@rbgg.com>; Eric Monek Anderson <EMonekAnderson@rbgg.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Christopher Young <christopher.young@dlapiper.com>; Hannah Chartoff <HChartoff@rbgg.com>; Priyah Kaul <pkaul@rbgg.com>
**Subject:** RE: Dunsmore v. San Diego County Sheriff's Department, et al.: E-SERVICE - Requests for Inspection

[EXTERNAL MESSAGE NOTICE]

Following up on the below, as you know there will be objections to the inspection of JIMS (it will not occur as noticed), and possibly tablets depending upon what it is you think you are entitled to do with a tablet.

There are numerous objections already articulated about the scope of all the inspections and they will not be permitted as previously outlined in correspondence.

The dates are not a problem, but they will obviously not go forward as noticed in any other respect based upon the objections.

I will be serving formal written objections in line with our previously communicated objections because you have not resolved any of the objections through the informal meet and confer process, I attempted with your offices a few months ago.

I hope this answers your question.

**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA  95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com
Burke, Williams & Sorensen, LLP


The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

**From:** Pappy, Elizabeth M.
**Sent:** Thursday, October 5, 2023 8:34 PM
**To:** Van Swearingen <VSwearingen@rbgg.com>
**Cc:** Kedra Chan <KChan@rbgg.com>; Coleman, Susan E. <SColeman@bwslaw.com>; Fernando Kish <Fernando.Kish@sdcounty.ca.gov>; Inman, Steven <Steven.Inman@sdcounty.ca.gov>; Mehra, Terri <TMehra@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>; Gonzalez, Lucy <LGonzalez@bwslaw.com>; Gay C. Grunfeld <GGrunfeld@rbgg.com>; Eric Monek Anderson <EMonekAnderson@rbgg.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Christopher Young <christopher.young@dlapiper.com>; Hannah Chartoff <HChartoff@rbgg.com>; Priyah Kaul <pkaul@rbgg.com>
**Subject:** Re: Dunsmore v. San Diego County Sheriff's Department, et al.: E-SERVICE - Requests for Inspection

We will let you know Monday.  Thank you.
Sent from my iPhone


On Oct 5, 2023, at 6:12 PM, Van Swearingen <VSwearingen@rbgg.com> wrote:


[EXTERNAL]

Susan and Beth,

We write to confirm that Defendants will be ready for our inspections November 1-9. Beginning tomorrow, we will ask our attorneys and experts to make necessary travel arrangements.  Please let us know ASAP if you anticipate any challenges with respect to our noticed inspections.  Thank you,
Van

**From:** Kedra Chan <KChan@rbgg.com>
**Sent:** Friday, September 1, 2023 4:25 PM
**To:** Susan E. Coleman (scoleman@bwslaw.com) <scoleman@bwslaw.com>; Pappy,
Elizabeth M. <EPappy@bwslaw.com>; Fernando Kish
<Fernando.Kish@sdcounty.ca.gov>; Inman, Steven <Steven.Inman@sdcounty.ca.gov>;
Mehra, Terri <TMehra@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>;
Gonzalez, Lucy <LGonzalez@bwslaw.com>
**Cc:** Gay C. Grunfeld <GGrunfeld@rbgg.com>; Van Swearingen
<VSwearingen@rbgg.com>; Eric Monek Anderson <EMonekAnderson@rbgg.com>;
Aaron Fischer <ajf@aaronfischerlaw.com>; Christopher Young
<christopher.young@dlapiper.com>; Hannah Chartoff <HChartoff@rbgg.com>
**Subject:** Dunsmore v. San Diego County Sheriff's Department, et al.: E-SERVICE -
Requests for Inspection [IMAN-DMS.FID55015]

Dear Counsel,

Please see attached the below listed documents regarding the referenced matter.

1. **PLAINTIFFS' REQUEST FOR INSPECTION OF LAS COLINAS DETENTION AND
   REENTRY FACILITY AND PRODUCTION OF DOCUMENTS**
2. **PLAINTIFFS' REQUEST FOR INSPECTION OF EAST MESA REENTRY FACILITY AND
   PRODUCTION OF DOCUMENTS**
3. **PLAINTIFFS' REQUEST FOR INSPECTION OF GEORGE BAILEY DETENTION
   FACILITY AND PRODUCTION OF DOCUMENTS**
4. **PLAINTIFFS' REQUEST FOR INSPECTION OF JAIL INFORMATION MANAGEMENT
   SYSTEM (JIMS) AND PRODUCTION OF DOCUMENTS**
5. **PLAINTIFFS' REQUEST FOR INSPECTION OF SAN DIEGO CENTRAL JAIL AND
   PRODUCTION OF DOCUMENTS**
6. **PLAINTIFFS' REQUEST FOR INSPECTION OF SOUTH BAY DETENTION FACILITY
   AND PRODUCTION OF DOCUMENTS**
7. **PLAINTIFFS' REQUEST FOR INSPECTION OF TABLETS AND PRODUCTION OF
   DOCUMENTS**
8. **PLAINTIFFS' REQUEST FOR INSPECTION OF VISTA DETENTION FACILITY AND
   PRODUCTION OF DOCUMENTS**

Thank you.

**Kedra Chan** [she/her]
Practice Assistant

<image001.jpg>
**Rosen Bien Galvan & Grunfeld LLP**
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
T: (415) 433-6830  •  F: (415) 433-7104
kchan@rbgg.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at kchan@rbgg.com.

# Exhibit S

| | |
|---|---|
| **From:** | Pappy, Elizabeth M. |
| **To:** | Van Swearingen |
| **Cc:** | Kedra Chan; Coleman, Susan E.; Fernando Kish; Inman, Steven; Mehra, Terri; Favela, Diana; Gonzalez, Lucy; Gay C. Grunfeld; Eric Monek Anderson; Aaron Fischer; Christopher Young; Hannah Chartoff; Priyah Kaul |
| **Subject:** | RE: Dunsmore v. San Diego County Sheriff"s Department, et al.: E-SERVICE - Requests for Inspection [IMAN-DMS.FID55015] |
| **Date:** | Monday, October 9, 2023 4:31:36 PM |

---

[EXTERNAL MESSAGE NOTICE]

We seem to be two ships passing in the night.  We had lengthy meet and confer about the issues with Gay and Aaron. Are you suggesting that never happened?

Can you tell me when the objections were due since the inspections are next month and have been continued once if not twice that I recall?

You can have your experts make whatever arrangements they want but they may not be let in.

**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA  95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com
Burke, Williams & Sorensen, LLP


The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

---

**From:** Van Swearingen <VSwearingen@rbgg.com>
**Sent:** Monday, October 9, 2023 4:27 PM
**To:** Pappy, Elizabeth M. <EPappy@bwslaw.com>
**Cc:** Kedra Chan <KChan@rbgg.com>; Coleman, Susan E. <SColeman@bwslaw.com>; Fernando Kish <Fernando.Kish@sdcounty.ca.gov>; Inman, Steven <Steven.Inman@sdcounty.ca.gov>; Mehra, Terri <TMehra@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>; Gonzalez, Lucy <LGonzalez@bwslaw.com>; Gay C. Grunfeld <GGrunfeld@rbgg.com>; Eric Monek Anderson <EMonekAnderson@rbgg.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Christopher Young <christopher.young@dlapiper.com>; Hannah Chartoff <HChartoff@rbgg.com>; Priyah Kaul <pkaul@rbgg.com>
**Subject:** RE: Dunsmore v. San Diego County Sheriff's Department, et al.: E-SERVICE - Requests for Inspection [IMAN-DMS.FID55015]

[EXTERNAL]

Hi Beth,

We will have our attorneys and experts make their travel arrangements for the inspections noticed on November 1 through 9.

For past inspections, you asked visitors to complete the attached form and send it to Michael.Binsfield@sdsheriff.org with a copy to Christina.Bavencoff@sdsheriff.org.  Should we follow the same procedure for these inspections?

Defendants did not timely respond to the inspection notices (the notices were served September 1; Plaintiffs never received a written response).  When do you plan to send the untimely written objections?

Thank you,
Van

---

**From:** Pappy, Elizabeth M. <EPappy@bwslaw.com>
**Sent:** Monday, October 9, 2023 2:19 PM
**To:** Van Swearingen <VSwearingen@rbgg.com>
**Cc:** Kedra Chan <KChan@rbgg.com>; Coleman, Susan E. <SColeman@bwslaw.com>; Fernando Kish <Fernando.Kish@sdcounty.ca.gov>; Inman, Steven <Steven.Inman@sdcounty.ca.gov>; Mehra, Terri <TMehra@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>; Gonzalez, Lucy <LGonzalez@bwslaw.com>; Gay C. Grunfeld <GGrunfeld@rbgg.com>; Eric Monek Anderson <EMonekAnderson@rbgg.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Christopher Young <christopher.young@dlapiper.com>; Hannah Chartoff <HChartoff@rbgg.com>; Priyah Kaul <pkaul@rbgg.com>
**Subject:** RE: Dunsmore v. San Diego County Sheriff's Department, et al.: E-SERVICE - Requests for Inspection

[EXTERNAL MESSAGE NOTICE]

Following up on the below, as you know there will be objections to the inspection of JIMS (it will not occur as noticed), and possibly tablets depending upon what it is you think you are entitled to do with a tablet.

There are numerous objections already articulated about the scope of all the inspections and they will not be permitted as previously outlined in correspondence.

The dates are not a problem, but they will obviously not go forward as noticed in any other respect based upon the objections.

I will be serving formal written objections in line with our previously communicated objections because you have not resolved any of the objections through the informal meet and confer process,

I attempted with your offices a few months ago.

I hope this answers your question.


**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA  95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com
Burke, Williams & Sorensen, LLP



The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

---

**From:** Pappy, Elizabeth M.
**Sent:** Thursday, October 5, 2023 8:34 PM
**To:** Van Swearingen <VSwearingen@rbgg.com>
**Cc:** Kedra Chan <KChan@rbgg.com>; Coleman, Susan E. <SColeman@bwslaw.com>; Fernando Kish <Fernando.Kish@sdcounty.ca.gov>; Inman, Steven <Steven.Inman@sdcounty.ca.gov>; Mehra, Terri <TMehra@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>; Gonzalez, Lucy <LGonzalez@rbgg.com>; Gay C. Grunfeld <GGrunfeld@rbgg.com>; Eric Monek Anderson <EMonekAnderson@rbgg.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Christopher Young <christopher.young@dlapiper.com>; Hannah Chartoff <HChartoff@rbgg.com>; Priyah Kaul <pkaul@rbgg.com>
**Subject:** Re: Dunsmore v. San Diego County Sheriff's Department, et al.: E-SERVICE - Requests for Inspection

We will let you know Monday.  Thank you.
Sent from my iPhone


On Oct 5, 2023, at 6:12 PM, Van Swearingen <VSwearingen@rbgg.com> wrote:


[EXTERNAL]

Susan and Beth,

We write to confirm that Defendants will be ready for our inspections November 1-9.
Beginning tomorrow, we will ask our attorneys and experts to make necessary travel

arrangements.  Please let us know ASAP if you anticipate any challenges with respect to our noticed inspections.  Thank you,
Van

---

**From:** Kedra Chan <KChan@rbgg.com>
**Sent:** Friday, September 1, 2023 4:25 PM
**To:** Susan E. Coleman (scoleman@bwslaw.com) <scoleman@bwslaw.com>; Pappy, Elizabeth M. <EPappy@bwslaw.com>; Fernando Kish <Fernando.Kish@sdcounty.ca.gov>; Inman, Steven <Steven.Inman@sdcounty.ca.gov>; Mehra, Terri <TMehra@bwslaw.com>; Favela, Diana <dfavela@bwslaw.com>; Gonzalez, Lucy <LGonzalez@bwslaw.com>
**Cc:** Gay C. Grunfeld <GGrunfeld@rbgg.com>; Van Swearingen <VSwearingen@rbgg.com>; Eric Monek Anderson <EMonekAnderson@rbgg.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Christopher Young <christopher.young@dlapiper.com>; Hannah Chartoff <HChartoff@rbgg.com>
**Subject:** Dunsmore v. San Diego County Sheriff's Department, et al.: E-SERVICE - Requests for Inspection [IMAN-DMS.FID55015]

Dear Counsel,

Please see attached the below listed documents regarding the referenced matter.

1. **PLAINTIFFS' REQUEST FOR INSPECTION OF LAS COLINAS DETENTION AND REENTRY FACILITY AND PRODUCTION OF DOCUMENTS**
2. **PLAINTIFFS' REQUEST FOR INSPECTION OF EAST MESA REENTRY FACILITY AND PRODUCTION OF DOCUMENTS**
3. **PLAINTIFFS' REQUEST FOR INSPECTION OF GEORGE BAILEY DETENTION FACILITY AND PRODUCTION OF DOCUMENTS**
4. **PLAINTIFFS' REQUEST FOR INSPECTION OF JAIL INFORMATION MANAGEMENT SYSTEM (JIMS) AND PRODUCTION OF DOCUMENTS**
5. **PLAINTIFFS' REQUEST FOR INSPECTION OF SAN DIEGO CENTRAL JAIL AND PRODUCTION OF DOCUMENTS**
6. **PLAINTIFFS' REQUEST FOR INSPECTION OF SOUTH BAY DETENTION FACILITY AND PRODUCTION OF DOCUMENTS**
7. **PLAINTIFFS' REQUEST FOR INSPECTION OF TABLETS AND PRODUCTION OF DOCUMENTS**
8. **PLAINTIFFS' REQUEST FOR INSPECTION OF VISTA DETENTION FACILITY AND PRODUCTION OF DOCUMENTS**

Thank you.

**Kedra Chan** [she/her]
Practice Assistant

**Rosen Bien Galvan & Grunfeld LLP**
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
T: (415) 433-6830  •  F: (415) 433-7104
kchan@rbgg.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at kchan@rbgg.com.

# Exhibit T



**ROSEN BIEN
GALVAN & GRUNFELD LLP**

101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Van Swearingen
Email:  vswearingen@rbgg.com

October 17, 2023

<u>VIA ELECTRONIC MAIL ONLY</u>

Susan E. Coleman                          Elizabeth M. Pappy
Burke Williams & Sorensen, LLP            Burke, Williams & Sorensen, LLP
501 West Broadway, Suite 1600             60 South Market Street, Suite 1000
San Diego, California 92101-8474          San Jose, California 95113-2336
scoleman@bwslaw.com                       epappy@bwslaw.com

  Re: *Dunsmore et al. v. San Diego County Sheriff's Department et al.*,
    S.D. Cal. No. 3:20-cv-00406-AJB-DDL
    Plaintiffs' Inspection Notices
    <u>Our File No. 1730-01</u>

Dear Ms. Coleman and Ms. Pappy:

  Plaintiffs write regarding the status of Plaintiffs' upcoming inspections.

  On September 1, 2023, Plaintiffs served notices indicating that their experts and attorneys will inspect all San Diego County Jail detention facilities as well as JIMS and tablets, to take place November 1-9, 2023.  Defendants did not timely serve objections. On October 5, 2023, I sent you an email asking to confirm that Defendants will be ready for our inspections noticed for November 1-9.  In the same email, I informed you that Plaintiffs' counsel and our experts are beginning to make necessary travel arrangements and asked you to inform us "ASAP" if you anticipated any challenges with respect to our noticed inspections.

  On October 9, 2023, Ms. Pappy acknowledged that Defendants "missed the deadline last week" to respond and also noted that the parties had meet and confer talks about inspections prior to service of Plaintiffs' inspection notices.  The same day, Ms. Pappy informed us that "You can have your experts make whatever arrangements they want but they may not be let in."  I responded by explaining that the experts have reserved these dates and that by threatening to not let the experts into the Jail, Defendants creates unnecessary uncertainty and prejudices Plaintiffs.

1



101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Van Swearingen
Email:  vswearingen@rbgg.com

On October 10, 2023, Defendants served untimely objections to Plaintiffs' inspection notices.  Many of the objections had never been raised by Defendants in meet and confer discussions preceding service of Plaintiffs' inspection notices.  On October 11, 2023, Ms. Pappy asked to switch the dates for the East Mesa and South Bay facilities, and I agreed to do so.  I asked Ms. Pappy to meet and confer about inspections on October 13, 2023, and she refused to do so until October 18, 2023.

On October 15, 2023, Ms. Pappy informed me by email that "The number of experts plus we assumed 2 attorneys is too many people at one time in any facility.  I am awaiting a response back from my client about splitting the group into two time slots on the designated day."  This is another example of Defendants moving the goal posts.  Previously, Ms. Pappy informed Plaintiffs' counsel that all experts must come on the same day because Defendants will not allow more than one inspection of any facility.  Now that Plaintiffs have spent substantial time coordinating expert schedules and noticing all expert inspections of facilities on the same day, Defendants complain that there are too many people to accommodate on an inspection.  Plaintiffs' counsel note that jail inspections are often attended by numerous people, and have participated in inspections of more than 15 people.

Below are the disputes with respect to Plaintiffs' inspection notices and Defendants objections thereto.

**I.  All issues re all inspections**:  Defendants' objections are untimely and have been waived.

**II.  Document Requests** (all of Defendants' untimely objections as to documents are "new" in the sense that defense counsel did not raise them in any meet and confer discussion prior to service of the notices):

**Request for organizational chart**; Defendants' objection:  An organizational chart is irrelevant to any issue in the case and specifically to any inspection and is harassing. No chart will be produced.

Plaintiffs' response:  An organizational chart is relevant to understand processes and procedures that experts will be observing during the inspection.  Defendants provide no explanation how an organizational chart is harassing.

EX. T - 185

**R B**
**G G**
**ROSEN BIEN**
**GALVAN & GRUNFELD LLP**

101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Van Swearingen
Email: vswearingen@rbgg.com

**Request for rosters of incarcerated people**; <u>Defendants' objection</u>:  The requested information will not be provided as it invades the privacy rights of Incarcerated Persons and Responding Party is not required by FRCP 34 to create documents in response to a Request for Production.

<u>Plaintiffs' response</u>:  Records identifying incarcerated people as incarcerated do not implicate privacy concerns.  For example, in *Paul v. Davis*, 424 U.S. 693 (1976), the Supreme Court declined to extend privacy protection to arrest records, distinguishing interest in such records from legitimate privacy interests, including those pertaining to marriage, family relationships, procreation, and child rearing.  Defendants have provided no case law to the contrary.  Jails and prisons make this information public, as does the San Diego Sheriff's Department (*see, e.g.*, publication that Abraham Luniow was booked at Central Jail on October 6, 2023, available at: https://www.sdsheriff.gov/Home/Components/News/News/2284/16).

Defendants maintain daily rosters as a matter of course; no documents need be created.

**Request for logs/rosters of medical/mental health/dental care/sick call records**; <u>Defendants' objection</u>:  The requested information will not be provided as it invades the privacy rights of Incarcerated Persons.

<u>Plaintiffs' response</u>:  Judge Leshner already ordered production of documents specific to ADA inspections (including floor plans + rosters) in advance of expedited inspection (Dkt. 258 at 6).  These requests are similar, but tailored to the other experts who will be in attendance for the next inspections and not confined to expedited discovery.  The joint class certification motion will already be on file by the time these inspections take place; Defendants have already agreed that every incarcerated person a class member.  To the extent privacy rights are at issue, the parties just filed a joint motion ordering production pursuant to HIPAA and California right to privacy.

**Request for logs/rosters of people on antibiotic prescriptions**; <u>Defendants' objection</u>:  The requested information will not be provided as it invades the privacy rights of Incarcerated Persons.

<u>Plaintiffs' response</u>:  Judge Leshner already ordered production of documents specific to ADA inspections in advance of expedited inspection (Dkt. 258 at 6).  These

3

EX. T - 186



**ROSEN BIEN
GALVAN & GRUNFELD LLP**

101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Van Swearingen
Email:  vswearingen@rbgg.com

requests are similar, but tailored to the other experts who will be in attendance for the next inspections and not confined to expedited discovery.  The joint class certification motion will already be on file by the time these inspections take place; Defendants have already agreed that every incarcerated person a class member.  To the extent privacy rights are at issue, the parties just filed a joint motion ordering production pursuant to HIPAA and California right to privacy.

**Request for logs/rosters of people with disabilities and requested disability accommodations**; <u>Defendants' objection</u>:  The requested information will not be provided as it invades the privacy rights of Incarcerated Persons.

<u>Plaintiffs' response</u>:  We are their appointed counsel.  Judge Leshner already ordered production of documents specific to ADA inspections in advance of expedited inspection (Dkt. 258 at 6).  These requests are similar, but tailored to the other experts who will be in attendance for the next inspections and not confined to expedited discovery.  The joint class certification motion will already be on file by the time these inspections take place; Defendants have already agreed that every incarcerated person a class member.  To the extent privacy rights are at issue, the parties just filed a joint motion ordering production pursuant to HIPAA and California right to privacy.

**Request for logs/rosters of disability accommodations provided to incarcerated people**; <u>Defendants' objection</u>:  The requested information will not be provided as it invades the privacy rights of Incarcerated Persons.

<u>Plaintiffs' response</u>:  We are their appointed counsel.  Judge Leshner already ordered production of documents specific to ADA inspections in advance of expedited inspection (Dkt. 258 at 6).  These requests are similar, but tailored to the other experts who will be in attendance for the next inspections and not confined to expedited discovery.  The joint class certification motion will already be on file by the time these inspections take place; Defendants have already agreed that every incarcerated person a class member.  To the extent privacy rights are at issue, the parties just filed a joint motion ordering production pursuant to HIPAA and California right to privacy.

**Request for lists of programs, services and activities offered to people with disabilities and/or those on medical/mental health/dental caseloads**; <u>Defendants' objection</u>:  The request is vague, ambiguous, and overbroad. All programs, services and activities are offered to Incarcerated Persons regardless of disability and there are none

EX. T - 187



101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Van Swearingen
Email:  vswearingen@rbgg.com

specific to individuals with disabilities. In addition, the request duplicates RFPOD#5, No. 167.

Plaintiffs' response:  The request specifically calls for "Documentation sufficient to show which programs, services and activities, including but not limited to, education, exercise, vocation, religious, substance abuse, library, and rehabilitative programs, are offered to INCARCERATED PERSONS with DISABILITIES; the locations in which the programs are offered; the schedule on which the programs are supposed to be offered; and the actual dates and times the programs have been offered in the 90 days preceding the INSPECTION."

Defendants do not explain how the request is vague, ambiguous, and overbroad. The Sheriff's Department is readily familiar with these terms and uses them regularly. The request is not duplicative of RFP 167, which calls for "ALL DOCUMENTS, including but not limited to logs, audits, lists, training materials, and summaries, RELATING TO programs and services for INCARCERATED PEOPLE with DISABILITIES."  Moreover, Defendants have not produced any documents responsive to RFP 167.

**Request for documentation of modifications of physical structure, program, service, or activity for purpose of providing disability accommodation**; Defendants' objection:  The request is overbroad, harassing, vague and ambiguous. Responding party will not be allowing the inspections as noticed and thus what is "to be inspected" is ambiguous. In addition, the request duplicates RFPOD#5, No. 168.

Plaintiffs' response:   The request specifically calls for: "ALL documentation related to ANY temporary or permanent modification made to ANY physical structure, program, service, or activity at the facility to be INSPECTED for the purpose of providing a DISABILITY accommodation during the 12 months preceding the date of INSPECTION, including any schematic, design, or construction DOCUMENTS."

Defendants fail to articulate how the request is overbroad, harassing, vague, and ambiguous.  Defendants do not explain why the inspections will not be allowed as noticed, nor what Defendants will permit.  The request is not duplicative of RFP 168, which calls for "ALL DOCUMENTS and COMMUNICATIONS, including but not limited to logs, audits, lists, training materials, and summaries, RELATING TO the accessibility of physical spaces at the JAIL for INCARCERATED PEOPLE with

5



101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Van Swearingen
Email: vswearingen@rbgg.com

DISABILITIES."  Moreover, Defendants have not produced any documents responsive
to RFP 168.

### III.  Other Requests

**Request 2 (speaking with jail staff)**; <u>Defendants' objection</u>:  Plaintiffs' counsel
and any person(s) accompanying Plaintiffs' counsel will not be permitted to speak to
anyone in the facility. All communication with staff will take place through Defense
counsel only. Any violation of this rule will result in the individual(s) being removed
from the facility.

Plaintiffs' response:  Plaintiffs' experts' questions regarding the operation of the
facility and issues related to inspection are necessary and proper for the inspection of the
operations of the jail.  Precluding such questions makes the inspection more difficult and
inefficient.  Other courts have allowed inspections to include such communications.  *See,
e.g., Alvarez v. LaRose*, 2020 WL 5594908, at *12 (S.D. Cal. Sept. 18, 2020) (ruling that
"Petitioners' expert will also be permitted to speak to [facility] staff members, but these
conversations shall not be confidential"); *Coleman v. Schwarzenegger*, 2007 WL
3231706, at *1 (E.D. Cal., N.D. Cal. Oct. 30, 2007) (for inspection notice regarding
"access to medical and mental health care and as to issues of housing, programming,
exercise and activities for class members . . . questions by the experts directed to prison
employees and to class members concerning those matters identified in plaintiffs'
inspection request are properly included as part of an inspection of 'any operation' on the
prison facilities to be inspected") *K.L. v. Edgar*, 945 F. Supp. 167, 168-169 (N.D. Ill.
1996 (allowing plaintiffs' experts to interview staff in a mental hospital in the presence of
defense counsel over defendants' objections); *United States v. Erie Cnty.*, No. 09-CV-
849S, 2010 WL 986505, at *3 (W.D.N.Y. Mar. 17, 2010) ("Reasonable access to
employees is necessary for the consultants to form an understanding and opinion about
the suicide practices and protocols at the [detention center].)"; *Hinzo v. N.M. Corr. Dep't*,
2016 WL 3156071, at *3-4 (D.N.M. May 19, 2016) (rejecting argument that requested
conversations were a way around depositions and allowing Plaintiffs' expert to speak to
prison staff so long as the conversations are "non-compulsory" and in the presence of
defense counsel).  Defendants have not provided case law to the contrary.

**Request 3 (observing booking and intake screening)**:  <u>Defendants' objection</u>:
Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will not be

6



101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Van Swearingen
Email: vswearingen@rbgg.com

permitted to speak to anyone in the facility. All communication with staff will take place through Defense counsel only. Any violation of this rule will result in the individual(s) being removed from the facility.

Plaintiffs' response:   Experts in these sorts of cases customarily observe health care delivery during Rule 34 inspections, with appropriate steps taken to gain informed consent from the patient(s) and to minimize disruption.  We previously sent you the order in *Bock v. Sutter*, Case No. 2:11-cv-0536 (E.D. Cal.), in which the court directed the jail in that case to "continue normal operations of the jail as much as is reasonably possible during the inspection, allowing plaintiffs' counsel and experts to observe jail operations in the ordinary course of business, but making allowance for any appropriate restrictions or modifications necessitated by good faith security concerns of the jail and jail staff." Other courts have ruled similarly.  *See Coleman v. Schwarzenegger*, 2007 WL 3231706, at *1 (E.D. Cal., N.D. Cal. Oct. 30, 2007) (finding that the benefit of an inspection outweighed the burden where request focused on "access to medical and mental health care" and "issues of housing, programming, exercise and activities for class members."); *United States v. Erie Cnty.*, No. 09-CV-849S, 2010 WL 986505, at *3  (W.D.N.Y. Mar. 17, 2010) (finding that the benefit of an inspection outweighed the burden where inspection would be focused "on the issues of suicide prevention and mental health processes and procedures.").  Defendants have not provided case law to the contrary.

We note that Defendants previously stated that "Coleman has no application to this situation," but failed to provide any explanation as to why.

**Request 4 (speaking with incarcerated people)**:  Defendants' objection: Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will not be permitted to speak to anyone in the facility. All communication with staff will take place through Defense counsel only. Any violation of this rule will result in the individual(s) being removed from the facility.

Plaintiffs' response:   The joint class certification motion will already be on file by the time these inspections take place; Defendants have already agreed that every incarcerated person a class member.  To the extent that Defendants' objection is because Plaintiffs' counsel should be forced to "go[] through the same procedures everyone else does" to speak to incarcerated people, that will add unnecessary delay and expense – as we have previously pointed out.

EX. T - 190



101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Van Swearingen
Email:  vswearingen@rbgg.com

**Request 5 (photos of jail)**; <u>Defendants' objection</u>: Plaintiffs' counsel and any person(s) accompanying Plaintiffs' counsel will not be permitted to take any photographs of the facility except Ms. Sanossian or her assistant. The memory card used to take photographs will be left with Defense counsel before exiting the facility, no copies will be sent wirelessly, and no backup copies will be removed from the facility. Staff will review the memory card and delete any photos which pose a security risk. The deleted photographs will be identified to Plaintiffs' counsel. No photographs will be allowed of any Incarcerated Person or staff person in the facility. Any such photos will be deleted.

<u>Plaintiffs' response</u>:  Defendants fail to provide any reason why Ms. Sanossian or her assistant may take photos but not any other expert.  During Ms. Sannossian's expedited discovery inspection of Rock Mountain, Defendants permitted Plaintiffs' expert to retain photos, and no rationale is provided why experts cannot follow the same protocol.

During our previous inspection of Central jail, Defendants retained Plaintiffs' photo SD card; when it was returned numerous photos were corrupted and irretrievably lost.  This is unacceptable.  Plaintiffs are amenable to providing copies of photos to Defendants and then agree upon any that must be deleted.  Defendants have provided no rationale why original photos should be kept by Defendants and deleted at their discretion.  Other detention facilities permit photos during inspections without asking for copies and/or agree to request that plaintiffs delete particular photos at a later date.  To the extent the photos taken during these inspections involve security concerns, they can be covered under the protective order already in place.

## IV.  Central Jail

<u>Defendants objection</u>:  No inspection will be permitted and none of the documents will be produced.  Plaintiffs inspected San Diego Central Jail and are not permitted to inspect the facility more than one time.

<u>Plaintiffs' response</u>:  The earlier inspection of Central Jail was in connection with expedited discovery and limited to one ADA expert inspecting only issues related to the ADA claim.  Plaintiffs' inspection notice of Central Jail does not include any inspection by their ADA expert.  Expedited inspections do not preclude ordinary inspections.  *See, e.g.,  McDonald Apiary LLC v. Starrh Bees, Inc*., 2015 WL 11108872 (D. Neb. Apr. 8, 2015) (stating that "further inspections" would be appropriate in "formal discovery,"

8



101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Van Swearingen
Email: vswearingen@rbgg.com

even after "limited" inspections during expedited discovery).  An inspection by one expert as to one claim does not preclude further inspection by other experts as to other claims.  *See, e.g., Manclark v. Oceans Marine Electronics, Inc.*, 2020 WL 7265412 (C.D. Cal. Oct. 16, 2020) (granting motion to compel second inspection of ship with different experts, because the new experts' "expertise is neither duplicative … nor needly cumulative" of the first expert's); *Soria v. Terex Corp.*, 2022 WL 467005 (W.D. Tex. Jan. 28, 2022) (allowing second inspection).

Defendants' current position is inconsistent with the previous position articulated in an email from Ms. Pappy on July 17, 2023:  "The anticipated inspections of Central for Mental health as limited in scope by my previous correspondence and our meet and confer (no observations at any point of IP's at intake, mental health care, no interviews of IP's, process questions of staff only through counsel), is fine with the understanding that it is the last inspection that will be taking place at Central by any litigation expert."

## V.  Inspections of JIMS/Tablets

**Jims**:  Defendants' objection: An inspection of JIMS inside any facility will not be permitted. Plaintiffs counsel will need to meet and confer with Defendants' counsel for a time, place, and method of inspection which may be limited to Defendants' provision of screen shots of the functionality of JIMS without any Incarcerated Person information included.  There will no interview of any employee or Incarcerated Person as part of any such process.

Plaintiffs' response:  Plaintiffs are amenable to meeting and conferring regarding this inspection, but no cognizable grounds have been asserted for the objection.

Plaintiffs' questions to staff regarding the operation of JIMS are necessarily and properly included in the inspection.  Precluding such questions makes the inspection more difficult and inefficient.  Other courts have allowed inspections to include such communications.  See cases cited above for Request 2 (speaking with jail staff). Defendants have not provided case law to the contrary.

**Tablets**; Defendants' objection:  An inspection of tablets inside any facility will not be permitted. Plaintiffs counsel will need to meet and confer with Defendants' counsel for a time, place, and method of inspection which may be limited to Defendants' provision of screen shots of the functionality of tablets without any Incarcerated Person



101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Van Swearingen
Email: vswearingen@rbgg.com

information included.  There will no interview of any employee or Incarcerated Person as part of any such process.

Plaintiffs' response:   Plaintiffs are amenable to meeting and conferring regarding this inspection, but no cognizable grounds have been asserted for the objection.

Plaintiffs' questions to staff regarding the operation of JIMS are necessarily and properly included in the inspection.  Precluding such questions makes the inspection more difficult and inefficient.  Other courts have allowed inspections to include such communications.  See cases cited above for Request 2 (speaking with jail staff).  Defendants have not provided case law to the contrary.

Please let us know if you believe the above is inaccurate.

_____

Plaintiffs' have spent substantial effort and resources planning for the inspections with their experts.  Travel plans have been made and flights have been purchased.  Defendants' untimely threats to not let Plaintiffs' counsel into the facilities, not inspect the facilities as noticed, to limit photography as indicated, to withhold documents, and to remove experts and counsel in the event that they speak to any staff or incarcerated person jeopardizes Plaintiffs' ability to inspect as provided by the Federal Rules of Civil Procedure as well as relevant case law.  In the event that we cannot resolve the above disputes at tomorrow's meet and confer call, Plaintiffs will immediately notify Judge Leshner of the disputes and will request his assistance.

Furthermore, Plaintiffs have the following logistical questions:

• Will Plaintiffs' experts and counsel be able to inspect all areas of the jails?  If not, please identify each and every area that Defendants deem off limits.

• What is the itinerary for each institution?  May each expert and counsel be permitted to inspect separately or will everyone have to go in one group to each and every area (which seems inefficient if the experts need to wait around to look at something they don't need to see).

• Please confirm that documents produced by Defendants in connection with the inspection requests will be made at least two days before the inspection.

10

EX. T - 193



101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Van Swearingen
Email:  vswearingen@rbgg.com

- What can we bring into the facility?  Phone?  Tablet/computer? Meal/snack?  Please identify what items are specifically prohibited.

- Will there be an admin room or conference room where the experts and counsel can use at each facility?

- Ms. Sannosian intends to bring her assistant (as on previous inspections and as anticipated by Defendants' objections re photographs).  Please let us know if there are any specific concerns or procedures for the assistant to consider.

- For past inspections, you asked visitors to complete the attached form and send it to Michael.Binsfield@sdsheriff.org with a copy to Christina.Bavencoff@sdsheriff.org.  Should we follow the same procedure for these inspections?

- Do all experts have to stay at each facility for the whole time?  Can they leave when they are done?

As always, thank you for your courtesy and cooperation in this matter.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Van Swearingen*

By:  Van Swearingen

cc:    Co-counsel

11

# Exhibit U



# County of San Diego

**JOHN M. PELLEGRINO**
DIRECTOR

DEPARTMENT OF PURCHASING AND CONTRACTING
5560 OVERLAND AVENUE, SUITE 270, SAN DIEGO, CALIFORNIA 92123-1204
Phone (858) 505-6367          Fax (858) 715-6452

**ALLEN R. HUNSBERGER**
ASSISTANT DIRECTOR

August 31, 2022

### COUNTY OF SAN DIEGO - REQUEST FOR PROPOSALS (RFP 11906)
### SHERIFF'S DEPARTMENT
### PHONE SERVICES FOR INCARCERATED PERSONS

The County of San Diego is seeking proposals from firms interested in providing phone services for incarcerated persons ("Offerors").

The contract term is anticipated to be an initial (base) period of three (3) with seven (7) one-year options.

The Contracting Officer for this solicitation is Jaclyn Smith, Sr. Procurement Contracting Officer (Jaclyn.Smith@sdcounty.ca.gov)

This RFP package includes:
    This Cover Letter to the RFP
    RFP Instructions and Rules
    Evaluation Criteria
    Submittal Items
    Proposal Cover Page (PC 600 Form)
    Representations and Certifications Form
    Nondisclosure Indemnification Agreement
    DVB Requirements and Forms
    Draft Agreement, which includes drafts of the following:
    Exhibit A - Statement of Work
    Exhibit B - Insurance Requirements
    Exhibit C - Payment Schedule

### SCHEDULE

Below is the County's timeline for this RFP, and is subject to change at any time. The County will issue an addendum for changes to the Pre-Proposal Conference date, Questions due date, or Proposal due date. The actual timing and sequence of events resulting from this RFP shall ultimately be determined by the County.

| Event Description | Date and Time (San Diego Time) |
|---|---|
| Pre-Proposal Conference | September 8, 2022, at 9:00 a.m. |
| Job Walks / Site Visits | September 13 and 14, 2022 – available with RSVP |
| Questions due | September 16, 2022, prior to 5:00 p.m. |
| Proposals due | October 6, 2022, prior to 3:00 p.m. |

**PRE-PROPOSAL CONFERENCE**

A pre-proposal conference will be held by Video/Teleconference using the Microsoft Teams platform on the Date and Time listed in Schedule. **To participate, please email your intent to attend** to Jaclyn.Smith@sdcounty.ca.gov, include your name, title, email address and company/organization name by **3:00PM, WEDNESDAY, SEPTEMBER 7, 2022.** The County will provide an overview of the RFP process and may provide a program/technical overview and other information. Requests for clarification related to definition or interpretation of this RFP shall be submitted in writing as Questions in accordance with Section 8 (Duty to Inquire, Questions, and Explanation to Offerors). Attendance at the pre-proposal conference is encouraged but not mandatory.

Site visits are planned for the dates listed in the Schedule. This site visits will provide Offerors the opportunity to see various Sheriff facilities. Attendance at the site visits is encouraged but not required. Additional information for the job walks/site inspections will be provided in a subsequent Addendum and posted on BuyNet.

**PROPOSAL SUBMITTAL**

The County has temporarily changed procurement processes due to the social distancing and other requirements put in place in response to the COVID-19 pandemic. Unless otherwise modified by the County's COVID-19 Updates for County Contracts and Contractors, found at https://www.sandiegocounty.gov/content/sdc/purchasing/COVID-19_Updates.html, the following procedures shall apply to this RFP:

- Offeror must submit a complete original proposal in accordance with the format provided in this solicitation to the County of San Diego, Department of Purchasing and Contracting through electronic upload to BuyNet by the Date and Time listed in Schedule.
- If Offeror is unable to submit via BuyNet for any reason, Offeror may submit via electronic files on CD/DVD or a printed proposal at the Purchasing and Contracting front desk. Please use this method only if unable to submit through BuyNet. When submitting via BuyNet, allow extra time to submit by an alternate method in the event of technical difficulties.
- When submitting electronic files, Offeror may optionally submit in original format (e.g. Microsoft Word) with clear pictures (.jpg, .jpeg, .gif, or ".png") of signature pages containing original signatures. Electronic or digital signatures will not be accepted. Please use this method only if unable to submit in PDF form.

The County's decision about the timeliness or responsiveness of any submitted document shall be final, and the County has the discretion to waive or not waive any defect or nonconformance.

Additional COVID-19 procurement information is available at:
https://www.sandiegocounty.gov/content/sdc/purchasing/COVID-19_Updates.html

**QUESTIONS**

Questions regarding this RFP shall be submitted in writing to the Contracting Officer by the Date and Time listed in Schedule, in accordance with Section 8 (Duty to Inquire, Questions, and Explanation to Offerors). Oral explanations or responses to Questions will not be binding upon the County.

Concerns or comments regarding this solicitation should be directed to the Contracting Officer.

## RFP INSTRUCTIONS AND RULES

### 1. RFP PROCESS

1.1. RFPs shall normally be made available on the County of San Diego's BuyNet Website at https://buynet.sdcounty.ca.gov/. If you are unable to download this document, you may request a hard copy from Purchasing and Contracting's front desk or contact clerical support at (858) 505-6367.

1.2. The County reserves the right to host pre-proposal conference(s). If scheduled, the date, time, and location for the pre-proposal conference(s) will be as set forth in this RFP or as otherwise provided on BuyNet.

1.3. Offerors should submit all Questions by due date and time specified in the cover letter to this RFP.

1.4. Proposals received, including any additions, revisions, and clarifications, will be evaluated by a Source Selection Committee (SSC) appointed by a Source Selection Authority(s) (SSA).

1.5. If, at any point in the selection process, the County determines that a proposal will no longer be considered for award, the Contracting Officer will attempt to notify the Offeror.

1.6. During the selection process, the SSA may determine that an Offeror's proposal is no longer in the competitive range and that it will no longer be considered for award

1.7. The County reserves the right to request clarification of and/or additional information ("Clarification") from Offerors. The Contracting Officer will determine the appropriate means of Clarification, which may include telephonic, email, letter, presentations, oral interviews, or as an addendum or revision to the proposal. The County may invite Offerors to make a presentation to, or participate in interviews with, the County at a date, time and location determined by the County. The County is not obligated to seek Clarification, so Offerors are advised to submit complete and accurate information in the proposal.

1.8. At any point in the selection process, the SSA may authorize discussions to be held with one or more Offerors in the competitive range. Discussions may include requests for revised proposals, Best and Final Offers (BAFOs), or addenda to the proposal and may contain additional selection factors.

1.9. The SSC may recommend to the SSA that award be made to one or more Offerors.

1.10. After receipt and approval of the SSA's decision, the Contracting Officer will post a Notice of Intent to Award.

1.11. Upon Posting of the Notice of Intent to Award (NOI) a contract to the Offeror(s) whose proposal(s) has been ranked highest by the County on the basis of best value to the County, the Contracting Officer will enter into contract finalization negotiations and, upon the successful completion, award a contract(s).

1.12. The County may rescind or modify the NOI at any time due to unsuccessful negotiations or if the County otherwise determines that it is in its best interest to do so.

1.13. RESERVED.

1.14. The County may, at any time, restart evaluations, modify or replace the membership of the SSC, or correct any deficiencies in the procurement process or evaluation.

1.15. The timing and sequence of events resulting from this RFP shall ultimately be determined by the County.

1.16. In the event that an Offeror is involved in a merger, acquisition, or other change in control, the County reserves the right to award a contract to a resulting entity.

### 2. INSTRUCTIONS FOR SUBMITTING A PROPOSAL

2.1. It is the Offeror's responsibility to submit a proposal based on the most current RFP, addenda thereto, responses to Questions, any diligence material made available by the County, and any other information posted on BuyNet. Offerors must consistently check BuyNet for information and are responsible to comply with anything posted on BuyNet relating to this RFP. The County has no obligation to contact Offerors directly with any such RFP related information.

2.2. Offerors shall submit one original proposal prior to the date and time specified and through the means specified in the cover letter to this RFP.

2.2.1. When requested, Offeror shall submit additional copies of the proposal in the manner requested. Copies should be clearly marked as copies and numbered.

2.2.2. For proposals submitted electronically through BuyNet, the time on the BuyNet server shall be considered the official time for purposes of determining timely submittal.

SD 000354


2.2.3. For proposals submitted at the Purchasing and Contracting front desk, the time stamp at the front desk shall be considered official time for purposes of determining timely submittal.

2.2.4. In the event of multiple submittals of an original proposal by an Offeror, the County will only consider the most recent submittal submitted by the due date and time. The County will not review or consider previous submittals, whether submitted at the front desk or through BuyNet. Offerors are strongly encouraged to submit only one original proposal and withdraw or replace any previous submittals in the event they choose to update their proposal. Proposals may be found non-conforming if the County is unable to determine which is the most recent, timely submittal.

2.3. All proposals shall be signed by an authorized officer or employee of the Offeror. The name, title, mailing address, email address, and phone number of the authorized officer or employee shall be included. Scanned images of pages containing original signatures are acceptable for submission of an electronic file. Electronic or digital signatures will not be accepted.

2.4. The proposal must be submitted in compliance with the following format, unless otherwise specified in this RFP:

2.4.1. Submit electronic proposals as files in .pdf format. Separate each exhibit into one or more files. Clearly name files as to the exhibit and order. Pages requiring signatures must be scanned from an original signature. Other pages may be scanned, or converted to .pdf from other file formats. Converted and searchable formats are preferred.

2.4.2. Proposals shall be formatted to print on 8-1/2" x 11" page size with no less than ½" margins and eleven (11) point font.

2.4.3. Proposals shall be formatted as black ink on white background/paper with no shading, or otherwise suitable for black and white reproduction.

2.4.4. Pages shall be consecutively numbered within the bottom or top margin of each page, including attachments.

2.4.5. Each proposal shall be typed and be concise but comprehensive. Proposals shall not include unnecessarily elaborate brochures, visual or other presentations, or artwork beyond what is sufficient to present a complete and effective proposal.

2.5. Your proposal must be organized in accordance with this RFP. Unless otherwise specified, the proposal shall conform to the following organization:

2.5.1. A completed and signed PC 600 Form shall be submitted as the cover of Offeror's proposal.

2.5.2. Completed and signed Representations and Certifications form.

2.5.3. Completed and signed Nondisclosure Indemnification Agreement (if applicable).

2.5.4. Completed and signed DVB forms.

2.5.5. Any other required forms.

2.5.6. A table of contents listing, by page number, the contents of the proposal.

2.5.7. Program/Technical exhibit.

2.5.8. Cost/Price exhibit.

2.5.9. Confidential/Proprietary exhibit (if applicable).

2.6. Offerors shall submit separate exhibits in separate files for the Program/Technical; Cost/Price; and (if applicable) Confidential/Proprietary exhibit components of their proposal.

2.6.1. Submit a Program/Technical exhibit

2.6.1.1. Content shall be organized to correspond to the applicable question or item within Submittal Items. All forms, responses and attachments shall be sequentially numbered to correspond to the applicable question or item.

2.6.1.2. No price data are to be included in the Program/Technical exhibit.

2.6.1.3. No confidential/proprietary information, including PI (Personal Information), PII (Personally Identifiable Information) or PHI (Protected Health Information), is to be included in the technical exhibit. Responses that include the confidential/proprietary information shall refer to the response contained within the Confidential/Proprietary exhibit (for example: If Submittal Item #1 requires staff Social Security Numbers, the response to Submittal Item #1 shall reflect "see response #1 contained within Confidential/Proprietary exhibit).



2.6.1.4. If price or confidential/proprietary information is included in the Program/Technical exhibit, the County may, at its sole discretion, remove such information or declare the proposal non-conforming.

2.6.2. Submit a separate Cost/Price exhibit.

2.6.2.1. All cost and pricing information must be contained within Cost/Price exhibit.

2.6.2.2. If performance or payment bonds are required, the cost of providing the bond shall be included in the proposed pricing, and no additional compensation will be allowed.

2.6.3. Submit a separate Confidential/Proprietary exhibit (if applicable). The County is a public agency subject to the disclosure requirements of the Public Records Act, California Government Code Section 6250 and following. The County of San Diego intends to publish contracts, which may contain some or all of the successful proposal(s), to its public web site. If confidential/proprietary information is contained within the submission:

2.6.3.1. It must be submitted in a separate clearly labeled exhibit with all pages marked as "CONFIDENTIAL/PROPRIETARY EXHIBIT".

2.6.3.2. Offeror must provide a signed Nondisclosure Indemnification Agreement.

2.6.3.3. In accordance with the California Public Records Act, the County will not treat pricing or terms and conditions as confidential. Confidential/Proprietary exhibits will be examined prior to review, and price or terms and conditions may be removed or the County may declare a proposal non-conforming because of the inclusion of price or terms and conditions in the Confidential/Proprietary exhibit.

2.7. All proposals become the property of the County. An Offeror may request the return of its proposal upon withdrawal as specified in Paragraph 6, which return County may grant or deny in its sole discretion.

2.8. The County has the right to withhold all information regarding this procurement until after contract award, including but not limited to: the number of proposals received; identity of Offeror(s), content of proposals; the County evaluation and results; and the identity of the members of the SSC. Information releasable after award is subject to the disclosure requirements of the Public Records Act, California Government Code Section 6250 and following.

2.9. Prevailing Wage. County public works projects are subject to compliance monitoring and enforcement by the California Department of Industrial Relations (DIR) in accordance with Labor Code §1771.4(a)(1). A contractor or subcontractor shall not be qualified to bid on, be listed in a bid proposal, subject to the requirements of Section 4104 of the Public Contract Code, or engage in the performance of any contract for public work, as defined in Labor Code Section 1720 et seq., unless currently registered and qualified to perform public work pursuant to Labor Code Section 1725.5, all as more particularly described in Labor Code §1771.1(a). The Selected Bidder(s) shall be required to post the job site with all notices required by regulations per Labor Code §1771.4(a)(2), whether or not the County also posts.

# 3. EVALUATION AND SELECTION

3.1. The County shall have the discretion, but not the obligation, to construe any submission as non-conforming and ineligible for consideration if it does not conform to the requirements of the Request for Proposals. The County shall also have the discretion to waive any irregularities or deviations from the requirements of the Request for Proposals in any submission.

3.2. Evaluations shall be based on the list of criteria contained in the Evaluation Criteria and Submittal Items.

3.3. The County may consider information known to the County in addition to the information provided in response to the RFP.

3.4. At any point in the evaluation process, the County may determine that a proposal is unacceptable in any area and no longer consider it for award.

3.5. When evaluating Offeror's program/technical response, County may appropriately consider the Environmental Impact of the proposed products and delivery of services in accordance with Board of Supervisors Policy B-67 Environmentally Preferable Procurement. Offerors are encouraged to include such information in the proposal.

3.6. When evaluating an Offeror's pricing, the County may also consider the effect of the proposal on the overall total cost to the County.

3.7.   Local preference: In accordance with Section 405 of the San Diego County Code of Administrative Ordinances, when evaluating competing proposals, the County of San Diego will give a 5% price preference to Preferred Vendors (a Local Business that is also a Veteran Owned Business, Disabled Veteran Business, or Small Business). A Veteran Owned Business and Disabled Veteran Business is defined in County of San Diego, Board of Supervisors Policy B-39a.  A Small Business is defined in County of San Diego, Board of Supervisors Policy B-53.

The price preference will be applied to the proposed price portion of the evaluation only. Five percent (5%) or fifty thousand dollars ($50,000), whichever is less ("Price Adjustment"), shall be subtracted from any Preferred Vendor's proposed price being evaluated for award ("Adjusted Price"). A Preferred Vendor's Adjusted Price shall be the basis for evaluating the proposal's price. Contract award will be made to the proposer(s) providing the best value to the County after consideration of the price preference and will be made at the unadjusted price. For example, a Preferred Vendor submitting a proposal for $100,000 would be evaluated as if the proposed price was $95,000. If based on the Adjusted Price, the Preferred Vendor is evaluated to be the best value, the Preferred Vendor would be awarded a contract at the unadjusted price of $100,000.

3.8.   RESERVED.

## 4.   DETERMINATION OF ECONOMY AND EFFICIENCY

Pursuant to County Charter Sections 703.10 and 916, award of a contract resulting from this RFP may be subject to the County's requirement to determine that the services can be provided more economically and efficiently by an independent contractor than by persons employed in the Classified Service.

## 5.   COUNTY COMMITMENT

5.1.   This RFP does not commit the County to award, nor does it commit the County to pay any cost incurred in the submission of the proposal, or in making necessary studies or designs for the preparation thereof, nor procure or contract for services or supplies.  Further, no reimbursable cost may be incurred in anticipation of a contract award.

5.2.   The County reserves the right to accept or reject any or all proposals received as a result of this RFP or to separately procure the same or similar goods or services.

5.3.   The County reserves the right to terminate this RFP in part or in its entirety at any time prior to contract execution.

5.4.   No prior, current, or post award communication with any officer, agent, or employee of the County shall affect or modify any terms or obligations of this RFP except as explicitly provided for in this RFP.

## 6.   LATE, MODIFIED, OR WITHDRAWN PROPOSAL

6.1.   A proposal that is received, but that is not received at the office or by the electronic means designated in the solicitation by the exact time specified for receipt will not be considered unless: it is received before award is made; the County determines that it is in its best interest to accept the proposal; and

6.1.1.   It was sent by mail or personal delivery, and it is determined by the County that the late receipt was due solely to mishandling by the County after receipt by the County; or

6.1.2.   No timely and conforming proposal was submitted.

6.2.   Proposals may not be modified after the due date, except a modification resulting from the Contracting Officer's request for a revised proposal, Best and Final Offer (BAFO), or an addendum to the proposal.

6.3.   Proposals may be withdrawn by written notice signed by a duly authorized representative of Offeror if received prior to Notice of Intent to Award. Thereafter, all proposals constitute firm offers, subject to negotiation, that will remain open and cannot be revoked, withdrawn, or modified for a period of six (6) months thereafter.

## 7.   DILIGENCE

7.1.   County, its agents, advisors, and representatives make no representation or warranty, express or implied, as to the accuracy or completeness of any provided diligence material. Without limiting the generality of the foregoing, the diligence material may include certain statements, estimates, and projections provided by or with respect to the County.  Such statements, estimates, and projections reflect various assumptions made by the County, which may

SD_000357

or may not prove to be correct. No representations are made by the County as to the accuracy of such statements, estimates, projections, or assumptions.

7.2. Offerors are expected to perform reasonable due diligence with regard to the work required. The selected Offeror(s) shall not be entitled to any price adjustment or other relief based upon information that was discovered or should have been discovered through due diligence. Such due diligence shall include but not be limited to, information that can be obtained during a site visit, if applicable (including verification of measurements, conditions, and other attributes of the site), or independently to the extent that information about the work required or the site is otherwise available for inspection or review.

## 8. DUTY TO INQUIRE, QUESTIONS, AND EXPLANATION TO OFFERORS

8.1. Offerors' Inquiries and County Responses – All communications from the Offeror (including its employees, agents, and representatives) to the County or its officers and employees (including consultants working on or assisting with this procurement), related to this RFP or the Offeror's proposal, must be directed in writing exclusively to the Contracting Officer, unless otherwise authorized in writing by the Contracting Officer. Any improper contact may, at County's sole discretion, cause the Offeror to be removed from consideration for contract award.

8.2. Should an Offeror find discrepancies in or omissions from, or be in doubt as to the meaning of, the RFP or related documents, Offeror shall have a duty to at once notify the County. Such notifications, or other requests for explanation regarding the RFP or related documents, shall be directed to the Contracting Officer in writing as a question ("Question"). Offeror is responsible for ensuring that Questions are received by the County. The County may choose not to respond to Questions received after the date stated in the Cover Letter. Offerors should not communicate with or attempt to contact any other County personnel about this solicitation, except as otherwise allowed for in this RFP

## 9. PROTEST PROCEDURE

County Board of Supervisors Policy A-97 sets forth the procedures for filing and resolution of protests related to this RFP. Board Policy A-97 is available from the Clerk of the Board, 1600 Pacific Highway, San Diego, CA 92101, or on the County's Web site at http://www.SanDiegoCounty.gov/ under the Clerk of the Board's page.

All protests must be filed in accordance with Board Policy A-97, which requires among other things that a protest must be filed timely, be submitted in writing to the Contracting Officer identified in the solicitation package, and be based on a protestable action and established grounds for protest.

## 10. DEBRIEF AND REVIEW OF CONTRACT FILES

Offeror may request a "debriefing" from the Contracting Officer on the findings about Offeror's proposal (with no comparative information about proposals submitted by others) after Offeror has been notified by the Contracting Officer that the Offeror's proposal is no longer being considered for award.

After contract execution, the proposals, the Source Selection Committee Report, and any other releasable documents may be reviewed. Copies of any documents desired by the reviewer will be prepared at the requestor's expense in accordance with current County rates for such copies.

## 11. OFFEROR COMMUNICATIONS

11.1. If Offeror issues any public announcement or otherwise engages in communication that, in the County's sole determination, compromises the integrity of this RFP process or attempts to restrain competition, Offeror may be removed from consideration for award.

11.2. Audio and/or video recording of pre-proposal conferences, presentations, discussions, negotiations, debriefings, or other communications with the County regarding this RFP are prohibited, unless specifically authorized in writing by the Contracting Officer.

## 12. CLAIMS AGAINST THE COUNTY

Neither Offeror nor any of its representatives shall have any claims whatsoever against the County or any of its respective officials, agents, or employees arising out of or relating to this RFP or these procedures (other than those arising under a definitive contract with Offeror in accordance with the terms thereof).

## 13. SOLICITING EMPLOYEES

Until contract award, Offerors shall not, directly or indirectly, solicit any employee of the County to leave the County's employ in order to accept employment with the Offeror, its affiliates, actual or prospective contractors, or any person acting in concert with the Offeror, without prior written approval of the County's Contracting Officer. This paragraph does not prevent the employment by an Offeror of a County employee who has initiated contact with the Offeror.

## 14. PROHIBITED CONTRACTS

14.1. In accordance with Section 67 of the San Diego County Administrative Code, the County shall not contract with, and shall reject any bid or proposal submitted by the person or entities specified below, unless the Board of Supervisors finds that special circumstances exist which justify the approval of such contract:

    (a) Persons employed by the County or of public agencies for which the Board of Supervisors is the governing body;

    (b) Profit making firms or businesses in which employees described in subsection (a) serve as officers, principals, partners or major shareholders;

    (c) Persons who, within the immediately preceding twelve (12) months, came within the provisions of subsection (a), and who (1) were employed in positions of substantial responsibility in the area of service to be performed by the contract, or (2) participated in any way in developing the contract or its service specifications; and

    (d) Profit making firms or businesses in which the former employees described in subsection (c) serve as officers, principals, partners or major shareholders.

14.2. Offeror certifies it is not a person or entity specified above and that it will promptly notify the County in the event it becomes a person or entity specified above .

## 15. CALIFORNIA REVENUE AND TAXATION CODE SECTION 18662

In compliance with California Revenue and Taxation code section 18662, if Offeror is a non-resident of California (out-of-state invoices) that receives California source income and has not completed FTB Form 590, there may be a backup withholding on all payments. Fifteen (15) business days prior to the first payment, new suppliers or suppliers with expired forms or forms with incorrect information must submit new forms to the County (forms are available from the Franchise Tax Board website listed below).

Under certain circumstances, Offerors may be eligible for reduced or waived nonresident withholding. If Offeror has already received a waiver or a reduced withholding response from the State of California and the response is still valid, Offeror should submit the response to the County in lieu of the forms. Failure to submit the required forms will result in withholding of payments. Offerors should to the Franchise Tax Board websites (listed below) for tax forms and information on non-resident withholding, including waivers or reductions. The County will not give Offerors any tax advice. It is recommended that Offerors speak with their tax advisers and/or the State of California for guidance. Franchise Tax Board Websites:

    https://www.ftb.ca.gov
    https://www.ftb.ca.gov/forms/Search/Home/FormRequest/1619
    https://www.ftb.ca.gov/forms/search/

If selected for award, the Offeror is to submit forms to the Auditor & Controller via fax at (858) 694-2060 or mail originals to: County of San Diego, 5530 Overland Avenue, Suite 410, San Diego, CA 92123. The P.O. Number or Contract Number (if available) and "California Revenue and Taxation Code Section 18662" must appear on fax cover sheet and/or the outside of the mailing envelope.

SD_000359
EX. U - 203

**16. W-9 FORM**

If selected for award, the Offeror must complete and submit a W-9 form if a current form is not on file with the County.

(Remainder of this page left blank)

# EVALUATION CRITERIA

**Proposal Evaluation Criteria**

The evaluation criteria listed below are in descending order of importance by paragraph, not subparagraphs, and will be considered in the evaluation of the Offeror's written and oral proposals accordingly. Proposals should give clear, concise information in sufficient detail to allow an evaluation based on these criteria.

Mandatory minimum requirements for eligibility are included in the evaluation criteria. Failure to satisfy these mandatory minimum requirements will be considered disqualifying, and the proposal will not be considered for award.

Section 1        Mandatory Minimum Requirements – Pass/Fail
Section 2        System Function and Approach
Section 3        Experience/Qualifications and Personnel
Section 4        Pricing
Section 5        Insurance Requirements and Agreement Acceptance

## SUBMITTAL ITEMS

Proposals should give clear, concise information in sufficient detail and in the order presented below to allow for a comprehensive evaluation. The County shall have the discretion, but not the obligation, to construe any submission as non-conforming and ineligible for consideration if it does not conform to the Submittal Requirements described by these Submittal Items.   The County shall also have the discretion to waive any irregularities or variances from these Submittal Items and/or seek Clarification.

## 1.  SECTION 1 - MINIMUM REQUIREMENTS

RESPONDENTS ARE RQUIRED TO PROVIDE AN ANSWER TO ALL QUESTIONS IN THIS SECTION.  IF ANY OFFEROR IS UNABLE TO ANSWER YES TO ANY OF THE SPECIFIED YES OR NO QUESTONS WITHIN THIS SECTION THEY WILL NOT BE ELIGIBLE TO PARTIICPATE IN THIS RFP.

1.1. Confirm that your company accepts in its entirety Article 10, Indemnity and Insurance, of the County Agreement
☐ YES        ☐ NO

1.2. Confirm that your company understands that the County will not limit your liability under this contract.
☐ YES        ☐ NO

1.3. The County of San Diego intends to continue a "No Cost Communication" model as described in Exhibit A – Statement of Work.  Confirm that the proposed approach will continue the "No Cost Communication" model.
☐ YES        ☐ NO

## 2.  SECTION 2 - SYSTEM FUNCTION AND APPROACH

### 2.1.  Understanding the Statement of Work

2.1.1. Provide a statement describing the Statement of Work (SOW) as you understand it and describe the approach, means, methods and procedures to be employed to gather the data, analyze findings and develop recommendation as requested.

2.1.2. Describe in detail how your firm will provide the Incarcerated Persons Phone System software, services, equipment and training included in the Statement of Work Sections 2.1 through 2.7.2 Be specific to SOW paragraph. Descriptions should be in the same sequential order corresponding with how each work component is listed in the Statement of Work; label each description with the appropriate paragraph number from the Statement of Work.

### 2.2.  Warranty, Maintenance and Support

2.2.1. The Offeror shall provide proposed warranty, maintenance and support package that contains the following items:

2.2.1.1. Describe System, subsystem, and equipment warranty and include a copy of all applicable standard support agreements (i.e., warranty, maintenance, software licensing, etc.).

2.2.1.2. Explain how the Offeror intends to provide support 24 hours a day, 7 days a week, 365 days a year and their 24-hour call center capabilities.

2.2.1.3. If applicable, Identify the Offeror's qualified service organization(s) that will provide warranty service and repair.

2.2.2. Describe how the Offeror will meet the following warranty requirements:

2.2.2.1. Service and repair to be performed 24 hours a day, 7 days a week, 365 days a year.

2.2.2.2. Hardware repair and replacement.

2.2.2.3. Software and firmware upgrades and back up.



2.2.3. Describe procedures to handle System level failures and defects during the warranty period.

2.2.4. Describe the software and firmware upgrade support to be provided during the warranty period

## 2.3. Training

2.3.1. Provide a catalog of training courses, including web-based, on-site (hands-on with equipment such as computers, mobile devices, etc.), and train-the-trainee available.

## 2.4. Project Implementation Plan

2.4.1. Confirm Yes/No that you will provide support 24 hours a day during the first 14 calendar days of productive use:

2.4.2. Provide an Implementation Plan

    2.4.2.1. The implementation plan shall include start and end dates for each phase, milestone, deliverable, timeframe, and detailed task. The following major project components shall be addressed:

        2.4.2.1.1.  Hardware installation

        2.4.2.1.2.  Software configuration Modifications

        2.4.2.1.3.  Software provisioning

        2.4.2.1.4.  Integration with other internal SDSD systems

2.4.3. Provide a detailed project implementation which includes the following:

    2.4.3.1.  Phases:

        2.4.3.1.1.  Phase One – Hardware Installation

        2.4.3.1.2.  Phase Two -Application Software and Interface Integration

        2.4.3.1.3.  Phase Three – Testing Cycle

        2.4.3.1.4.  Phase Four Training

        2.4.3.1.5.  Phase Five- Start Up (including on-site staffing during first 14 days)

        2.4.3.1.6.  Phase Six – Cut-Over to New System

        2.4.3.1.7.  Phase Seven - System Maintenance Services

    2.4.3.2.  The following project deliverables and acceptances as milestones in the implementation plan

        2.4.3.2.1.  Monthly project implementation plan updates

        2.4.3.2.2.  Bi-weekly project status reports

        2.4.3.2.3.  Successful hardware installation if applicable

        2.4.3.2.4.  Software customization and configuration to meet all SDSD requirements

        2.4.3.2.5.  Data conversion in accordance with contract if applicable

        2.4.3.2.6.  Fully functional integration with internal SDSD systems

        2.4.3.2.7.  Fully functional integration with systems external to SDSD

        2.4.3.2.8.  Testing cycle completed and approved by SDSD

        2.4.3.2.9.  Training that results in acceptable use of the phone system by all key personnel groups and individuals

        2.4.3.2.10.  Evaluation and acceptance testing of all phone system elements and reporting functionalities

        2.4.3.2.11.  User training manual and other documentation

        2.4.3.2.12.  Tested and accepted disaster recovery plan

2.4.4. Confirm yes/no your agreement to a plan update will be issued to the Contracting Officer's Representative (COR) on a monthly basis.

2.5.  **Data Migration (If applicable)**
    2.5.1.Provide a detailed description of the data conversion methodology, implementation timetables and tasks associated with the conversion process, and cost for data conversion.

2.6.  **Business Continuity and Disaster Recovery Plan**
    2.6.1.Describe your organizations contingency plan and/or business continuity plan for unexpected events. Unexpected events can include, but are not limited to, natural disasters, emergencies, or employee job actions.

3.  **SECTION 3 - EXPERIENCE/QUALIFICATIONS AND PERSONNEL**
The proposal will be evaluated as to its completeness and clarity in demonstrating the experience and technical competence of the Offeror and assigned personnel with providing similar services to the requirements outlined in the RFP. The breadth and depth of the Offeror's experience in the performance of comparable services will be evaluated with regard to stability and ability to support the commitments set forth in response to the RFP

3.1.  **Executive Summary.** Provide a brief description of the Offeror's history including number of years providing and maintaining phone systems for incarcerated persons including the relevant standards adhered to and notable achievements.
    3.1.1.List any and all additional names Offeror has operated under in the last ten (10) years.

    3.1.2.List other public entity agreements including law enforcement agencies that your proposed system has been awarded in the last five (5) years. Include dates of award and implementation, if applicable.

3.2.  **Live Demonstration**. Confirm Yes/No that upon notification, you agree to perform a demonstration (up to eight hours in length) of the proposed system to include by not be limited to all functionality. This demonstration can be onsite or virtual at the county's decision. Attendance shall be provided without any cost to the County.

3.3.  **References.**  Provide at least three (3) business references for current customers, that are using the system proposed in your RFP response in a large law enforcement department. Each reference should not exceed one (1) page and should include:
    3.3.1.Reference name and type of business

    3.3.2.Reference address, telephone number and email address

    3.3.3.Information for a Public Safety contact person representing the reference (name, title, telephone number and email address). The reference contact person should be familiar with the Offeror and the Offeror's experience and performance.

    3.3.4.Brief statement of the reference's relationship to the Offeror and the period of the relationship.

    3.3.5.A summary of the project or work performed including:
        3.3.5.1.    Project schedule
        3.3.5.2.    Actual timeline of completed project
        3.3.5.3.    Quality of work completed

The County will make reasonable attempts to contact any reference and the inability to contact a reference may be treated as an unfavorable reference for evaluation purposes. An unfavorable response is a response from a listed

reference stating that they would not enlist the company to perform services again in the future, or comments provided that the County deems to be substantially negative or reflective of substandard service.

The County reserves the right to contact County departments or any other agency for which a company has previously performed under contract. The County also reserves the right to make its own inquiries to other sources for which services have been performed but are not listed. The County may, at its sole discretion, disqualify a vendor if responses are considered unfavorable.

3.4.  **Other Government Agency Contracts.** List any relevant contracts for the same or similar type of services in size and scope. Information should include type of contracted services, length of contract, performance outcomes, and compliance issues.

3.5.  **Management and Organizational Structure.** Provide a project organizational chart, with proposed contractor and subcontractor staff that will be assigned to this project. In addition, provide a high-level narrative description of the project team organization, teams and roles, and a description of how contractor staff will integrate with County staff. Provide a short summary of your firm's planned working relationship with the County with regard to providing the services, including the proposed lines of authority, communication, and responsibility within your proposed project group (including any subcontractors) and how it relates to your firm's organizational structure. In this narrative, clearly document the Offeror's resource plan, denoting the percentage of time that each of the proposed staff (whether key role or not) will be on-site and dedicated to the project.

3.5.1. Narrative shall also include the location of performance of all services provided by the contractor and subcontractor(s).

3.5.2. Provide an overview of your project management process.

3.6.  **Subcontractors.** Does your firm anticipate using the services of a subcontractor in fulfilling this contract? The County intends to deal with subcontractors only through the prime Offeror which will be considered responsible to the County for meeting all contracted requirements.

3.6.1. If you do not intend to use subcontractors, please indicate Not Applicable (N/A) in your answer to this sub-section and provide a description explaining how services can be performed using in-house resources.

3.6.2. If using subcontractors or other organizational partnerships to meet specific program requirements through subcontracts or other formal or informal agreements (including volunteer services); provide the following information for each subcontractor/partnership:

3.6.2.1.  The subcontractor(s) or other organizational partner(s) name and address.

3.6.2.2.  A description of the specific programming requirements to be met by the subcontractor(s)/partner.

3.6.2.3.  Whether or not the subcontractor(s) or other organizational partnerships have committed to the contract or agreement.

3.6.2.4.  Description of the experience and qualifications of the subcontractor(s) or other organizational partnerships in meeting specific programming requirements. This should include resumes, references, County, State and/or other government contracts.

3.6.2.5.  Description of your performance monitoring procedures to ensure that performance standards and outcomes are achieved by each subcontractor or partner.

3.7.  **Staff Resumes.** All resumes should provide sufficient information to determine that the person is qualified for his/her assigned position, including history of relevant education and experience. **DO NOT include social security numbers or home addresses and phone numbers, etc.** Indicate for each, any positions that are yet to be filled. Provide resumes for all the proposed staffing who will be assigned to the project including the:

3.7.1. Project Manager

3.7.2. Project Sponsor

3.7.3. IT Manager

3.7.4. System Administrator

3.7.5. Security Manager

3.7.6. Privacy Manager

3.7.7. Training Manager

3.7.8. Key Subcontractor personnel

3.7.9. Additional personnel assigned to this project

3.8.  **Fiscal Stability**. The Proposal shall provide the following financial information:

3.8.1. Provide documentation to support your organization's financial stability and ability to maintain the program throughout the contract period including installation, testing, production, and maintenance. Documentation may include cash and/or credit reserves. In addition, provide the following information for the last three (3) fiscal years:

3.8.1.1.    Audited financial statements with the applicable notes;

3.8.1.2.    Independent Auditor's Report on Compliance and Internal Control over Financial Reporting based on an Audit of the Financial Statements in Accordance with Government Accounting Standards; and

3.8.1.3.    Independent Auditor's Statement of Findings and Questioned costs.

3.8.2. If offeror has not had an audit conducted within the past three (3) fiscal years, offeror shall provide the following unaudited financial statements for the last three (3) fiscal years:

3.8.2.1.    Statement of Financial Position (Balance Sheet)

3.8.2.2.    Statement of Activities (Income Statement) and;

3.8.2.3.    Statement of Cash Flows

3.8.3. Submit documentation that demonstrates financial stability and states your organization's intention to meet those standards throughout the contract period

3.8.4. The County may at its sole discretion, disqualify a offeror if the requested financial information is not provided or is determined to fail to demonstrate sufficient reserves to maintain the contract.

3.9. **Litigation.** Provide a copy of a letter from the Offeror's attorney and/or in-house legal counsel concerning the status of lawsuits and pending litigation for the most recent year. Provide a description of any active litigation (i.e. lawsuits, mediations, contract disputes, regulatory actions) and their resolution status in the past five (5) years related to the contractor's performance. Provide information regarding status. Resolutions and if any penalties, fines, contract terminations or other actions were required.

3.9.1. If there are none, state "None" in your submittal response

The County may at its sole discretion, disqualify an offeror if current or pending litigation is considered severe enough as to negatively impact the County, or the contractor's ability to maintain the contract

## 4. **SECTION 4 – PRICING**

4.1. See Exhibit C – Pricing / Payment Schedule.

## 5. **SECTION 5 – INSURANCE REQUIREMENTS AND AGREEMENT ACCEPTANCE**

5.1. Offeror shall submit a statement to indicate its acceptance or rejection of the insurance requirements, including insurance terms and the proposed agreement.

The Acceptance/Clause Exception(s) statements can be listed on the Table of Contents and submitted as an attachment to the technical proposal.

Offeror shall submit a statement to indicate its acceptance or rejection of the proposed Agreement. Offeror must accept the terms listed in Section 1, Minimum Requirements. If you do not accept the terms of any clause as written, propose the specific language changes (deletions and insertions) that would make the term acceptable to your organization; if you need clarification, indicate specific wording that you find unclear, and why you consider it unclear. Statements that you find the contract/agreement "generally acceptable" or that you "reserve the right to negotiate particular Provisions," or that certain terms need "to be discussed" may be deemed non-conforming. If you intend to propose terms that are more favorable to the County than the terms of the contract, do so and propose the specific language changes that would make the terms more favorable. Submit a marked draft in electronic form indicating any changes to the contract.

The County may elect not to negotiate any exceptions taken as part of its pre-selection or post-selection process. Should you take exception(s) to the contract, you understand that the County may, as part of its evaluation process, conclude that exceptions are so numerous and/or material as to make Offeror's response to the solicitation unacceptable.

## PROPOSAL COVER PAGE (PC-600)

| SUBMITTAL INFORMATION |
|---|
| Submit this Completed Form as the Cover Page of Your Proposal |

| DESCRIPTION | |
|---|---|
| Request for Proposals (RFP) 11906 | **Sheriff's Phone Services for Incarcerated Persons** |

| OFFEROR INFORMATION (TO BE COMPLETED BY OFFEROR) |
|---|
| Please Type or Print Clearly |

| BUSINESS INFORMATION | REPRESENTATIVE AUTHORIZED TO SIGN OFFER |
|---|---|
| Company/Organization Name | Authorized Representative Name |
| | Authorized Representative Title |
| Address<br>( ) | Authorized Representative Email Address<br>( ) |
| Telephone Number | Authorized Representative Telephone Number |
| Website Address<br>( ) | |
| Fax Number (optional) | Authorized Representative Mailing Address |
| | **AUTHORIZED POINT OF CONTACT (POC)**<br>(if different from Authorized Representative) |
| | POC Name |
| | POC Title |
| | POC Email Address<br>( ) |
| | POC Telephone Number |
| County communications to Offeror regarding this RFP will be sent to the POC. If no POC is provided, such communications will be sent to the Authorized Representative. | |
| | POC Mailing Address |

| SIGNATURE |
|---|
| I certify under penalty of perjury under the laws of the State of California, that I am authorized to execute and submit this proposal on behalf of the Offeror listed above; that all of the RFP instructions and rules, exhibits, addenda, explanations, and any other information provided by the County, including but not limited to, the diligence material, has been reviewed, understood and complied with; and that all information in this submission is true, correct, and in compliance with the terms of the RFP. |

Authorized Representative Signature          Date

PC 600 Form (PC-600p)   Rev. 03-16-2021

County of San Diego
Department of Purchasing and Contracting
**REPRESENTATIONS AND CERTIFICATIONS**

The following representations and certifications are to be completed, signed and returned with the offer (the term "offer" includes a bid, proposal, quote, statement of qualifications, or any other submission to provide goods and/or services).

1. **BUSINESS TYPE**
   ☐ For-profit    ☐ Non-profit    ☐ Government

2. **INTERLOCKING DIRECTORATE**
   In accordance with Board of Supervisors Policy A-79, if Offeror is a non-profit and will be subcontracting with a related for-profit entity where an interlocking directorate, management or ownership relationship exists, Offeror must list all such entity(ies) on an attached separate sheet, and authorization must be sought from Board of Supervisors. If Offeror is a non-profit and does not submit such a list, Offeror certifies it has not entered into a subcontract relationship with a related for-profit entity.
   List Attached? Yes ☐

3. **BUSINESS REPRESENTATION**
   Offeror represents as a part of this offer the following information regarding the ownership, operation, and control of its business:
   3.1. Are you a local business with a physical address within the County of San Diego?    ☐ Yes ☐ No
   3.2. Are you certified by the State of California as a:
       ☐ Disabled Veteran Business Enterprise(DVBE)
       Certification #: _____
       ☐ Small Business Enterprise (SBE)
       Certification #: _____
   3.3. Are you certified by the U.S. Dept Of Veterans' Affairs as:
       ☐ Veteran Owned Small Business (VOSB)
       Certification # _____
       ☐ Service Disabled Veteran Owned Small Business (SDVOSB)
       Certification # _____
   3.4. Estimated percentage of work in this offer to be performed or fulfilled locally (within the geographic boundaries of the County of San Diego): _____%

4. **DEBARMENT, SUSPENSION, AND RELATED MATTERS**
   4.1. Offeror certifies to the best of its knowledge that neither it nor any of its officers:
       4.1.1. Are presently debarred, suspended, declared ineligible, or voluntarily excluded from covered transactions by any state, local, or federal department or agency.
       4.1.2. Have within a three (3) year period preceding this agreement been convicted of or had a civil judgment rendered against them for commission of fraud or criminal offense in connection with obtaining, attempting to obtain, or performing a public (federal, state, or local) transaction or contract under a public transaction; violation of federal or state antitrust statutes; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;
   4.2. Except as allowed for in Section 4.2.5, Offeror hereby certifies to the best of its knowledge that neither it nor any of its officers:
       4.2.1 Are presently indicted for or otherwise criminally or civilly charged by a government entity (federal, state, or local) with the commission of any of the offenses enumerated in paragraph 4.1.2 of this certification;
       4.2.2 Have within a three (3) year period preceding this agreement had one or more public transactions (federal, state or local) terminated for cause or default;

   4.2.3 Are presently the target or subject of any investigation, accusation or charges by any federal, state or local agency or law enforcement, licensing, certification, ethics, or compliance body;
   4.2.4 Are proposed for debarment by any state, local, or federal department or agency.
   4.2.5 If Offeror is unable to certify Sections 4.2.1, 4.2.2, 4.2.3, or 4.2.4, it certifies that it has disclosed and attached to this Representations and Certifications the reason(s) it cannot do so. The disclosure must include the Section(s), specific relevant facts including dates, contracts, individuals involved, status of actions, and any other relevant information that prevent it from making the requested certification(s). The County reserves the right to disqualify an Offeror based upon information disclosed.
       Disclosure Attached? Yes ☐

5. **RELATED WORK**
   Offeror certifies to the best of its knowledge that, other than as disclosed in an attached separate sheet, it and its proposed subcontractors, agents, and consultants have not previously contracted with the County to perform work on or related to this project (e.g. preparing related studies or recommendations, components of the statement of work, or plans and specifications).
   Disclosure Attached? Yes ☐

6. **CURRENT COST OR PRICING**
   Offeror certifies to the best of its knowledge that cost and/or pricing data submitted with this offer, or specifically identified by reference if actual submission of the data is impracticable, are accurate, complete, and current as of the date signed below.

7. **INDEPENDENT PRICING**
   Offeror certifies that in relation to this offer:
   7.1. The prices in this offer have been arrived at independently, without consultation, communication, or agreement, for the purpose of restricting competition, as to any matter relating to such prices with other offerors, with any competitors, or with any County employee(s) or consultant(s) involved in this or related procurements;
   7.2. Unless otherwise required by law, the prices that have been quoted in this offer have not been knowingly disclosed by the Offeror and will not knowingly be disclosed by the Offeror prior to opening, in the case of a bid, or prior to award, in the case of a proposal, directly or indirectly to any other Offeror or to any competitor or with any County employee(s) or consultant(s) involved in this or related procurements; and
   7.3. No attempt has been made or will be made by the Offeror to induce any other person or firm to submit or not to submit an offer for the purpose of restricting competition.

8. **ADDITIONAL DISCLOSURES**
   Offeror shall report in writing to the County Department of Purchasing and Contracting within five business days of discovering or having any reason to suspect any change in status as certified in the preceding paragraphs. Upon County's request, Offeror shall provide additional information supporting Offeror's Representations and Certifications. Offeror's obligations under this Section 8 shall continue until Offeror is no longer under consideration for award of a contract, or until termination or expiration of any resulting contract(s).

**CERTIFICATION**

The information furnished in Paragraphs 1 through 8 and in the accompanying offer is certified to be factual and correct as of the date submitted and this certification is made under penalty of perjury under the laws of the State of California.

Name: _____    Signature: _____

Title: _____    Date: _____

Company/Organization: _____

**SUBMIT THIS FORM AS DIRECTED IN THE REQUEST FOR SOLICITATION DOCUMENTS OR WITH THE OFFER**
Revised 05-02-17

## NONDISCLOSURE INDEMNIFICATION AGREEMENT

IF OFFEROR SUBMITS EXHIBIT CONFIDENTIAL/PROPRIETARY, THE FOLLOWING NONDISCLOSURE INDEMNIFICATION AGREEMENT MUST BE COMPLETED, SIGNED AND RETURNED WITH THE OFFER

This indemnification agreement is made and entered into by and between the County of San Diego ("County") and Offeror Company/Organization Name: _____
("Offeror") with reference to the following facts:

WHEREAS the County may receive a request for disclosure of Offeror's submission under the California Public Records Act, Government Code Section 6250, et seq.; and

WHEREAS, Offeror has included in its submission an exhibit entitled "*EXHIBIT – CONFIDENTIAL/PROPRIETARY*" containing records that Offeror has determined to constitute trade secrets or other proprietary information exempt from disclosure under the California Public Records Act; and

WHEREAS the County requires defense and indemnity from Offeror for the County's ongoing non-disclosure of Offeror's *EXHIBIT-CONFIDENTIAL/PROPRIETARY*;

NOW, THEREFORE, for good and valuable consideration and the mutual promises contained herein, the parties agree to the following:

1.  The above recitals are incorporated herein by this reference.

2.  Except as otherwise provided herein, the County will not release Offeror's *EXHIBIT-CONFIDENTIAL/PROPRIETARY* based on Offeror's representation that the records contained therein are proprietary and exempt from disclosure under the California Public Records Act and/or are trade secrets as that term is defined in Government Code Section 6250, et seq. Notwithstanding the foregoing, however, the County may release Offeror's *EXHIBIT-CONFIDENTIAL/PROPRIETARY* in the event of any of the following:

    a.  Offeror fails to comply with the terms and conditions of this indemnification agreement; or
    b.  Offeror provides the County with written notice that some or all of the records may be released; or
    c.  A court of competent jurisdiction orders the County to release the records and the County has exhausted or waived its appeal rights.

3.  To the fullest extent allowed by law, the County shall not be liable for, and Offeror shall defend and indemnify County and its Board of Supervisors, officers, directors, employees and agents of County (collectively "County Parties"), against any and all claims, demands, liability, judgments, awards, fines, mechanics' liens or other liens, labor disputes, losses, damages, expenses, charges or costs of any kind or character, including attorneys' fees (whether incurred by County attorneys or attorneys employed by County) and court costs (hereinafter collectively referred to as "Claims"), related to Offeror's *EXHIBIT-CONFIDENTIAL/PROPRIETARY*.

4.  Offeror waives any and all claims in law or equity and hereby releases the County Parties from any and all claims, deductibles, self-insured retentions, demands, liability, judgments, awards, fines, mechanics' liens or other liens, labor disputes, losses, damages, expenses, charges or costs of any kind or character, including attorneys' fees and court costs, which arise out of or are in any way connected to Offeror's *EXHIBIT-CONFIDENTIAL/PROPRIETARY*.

| TO BE COMPLETED BY AN AUTHORIZED REPRESENTATIVE OF THE OFFEROR |
|---|

Offeror Company/Organization Name: _____

Authorized Representative Name: _____

Authorized Representative Title: _____

Signature: _____    Date: _____

## DVB REQUIREMENTS AND FORMS

The County, as a matter of policy, encourages the participation of Disabled Veterans Businesses (DVB) through DVB Subcontractor Participation goals.  County of San Diego, Board of Supervisors Policy B-39a Veteran Owned Business (VOB) and Disabled Veterans Business Enterprise (DVBE) Program is found at http://www.sdcounty.ca.gov/cob/policy/index.html#.  The County DVB program recognizes the State of California DVBE certification, which may be found at http://www.dgs.ca.gov/PD and the federal SDVOSB certification, which may be found at https://www.va.gov/osdbu/verification/ .

For this solicitation:

Bidder/Offeror (Offeror) must meet or exceed a 3% DVB Subcontractor Participation goal or show a good faith effort to do so. Offeror must submit a DVB Subcontractor Participation Summary and DVB Subcontractor Participation Plan based on total pricing/payment schedule of its submittal. Only contractors that will perform a commercially useful function as defined by California Military and Veterans Code Section 999 or successor statute shall be used in the calculation of DVB Subcontractor Participation.

If the DVB Subcontractor Participation Plan does not show that Offeror has met or exceeded the 3% DVB Subcontractor Participation goal, Offeror must provide Documentation of a Good Faith Effort.  Offerors are encouraged to submit the Documentation of Good Faith Effort even if they have met or exceeded the 3% DVB Subcontractor Participation goal in the event that all or part of the DVB Subcontractor Participation Plan is determined to be ineligible. County reserves the right to request a Documentation of Good Faith Effort from any Offeror regardless of utilization calculated on the DVB Subcontractor Participation Plan. Offeror's failure to provide adequate evidence of meeting or exceeding the 3% DVB Subcontractor Participation goal or adequate evidence of showing a good effort to do so, either in submitting this DVB form or if the County makes a subsequent request for evidence, may be grounds for disqualification from Contract award.

## DVB SUBCONTRACTOR PARTICIPATION SUMMARY

This DVB Subcontractor Participation Summary is required to document Bidder's/Offeror's (Offeror) compliance with the DVB participation goals set forth in Board Policy B-39a.

| All Offerors must complete this section |
|---|
| Offeror: |
| Offeror's Representative: |

| Exemptions (complete only if Offeror qualifies for one of the exemptions below) |
|---|

Offeror is exempt from DVB Subcontractor Participation Requirements in accordance with Board Policy B-39a because Offeror is a:

☐    Government agency

☐    Nonprofit organization

☐    Small Business Enterprise (SBE), pursuant to Board Policy B-53

     State of California small/micro business certification #: _____

☐    Veteran Owned Business (VOB), pursuant to Board Policy B-39a

     VOB status due to certification as a:

     ☐    DVBE - State of California certification #: _____

     ☐    VOSB - U.S. VA certification #: _____

     ☐    SDVOSB - U.S. VA certification #: _____

| DVB Compliance (complete if Offeror claimed no exemption above) |
|---|

☐   Offeror will self-perform 100% of the services.

☐   Complete and attach DVB Subcontractor Participation Plan

☐   Complete and attach Documentation of Good Faith Effort (Optional if Offeror has met or exceeded the 3% DVB Subcontractor Participation goal)

Offeror must provide additional supporting documentation upon request.

**THIS FORM SHALL BE SUBMITTED WITH PROPOSAL ON THE DUE DATE**

# DVB SUBCONTRACTOR PARTICIPATION PLAN

Offeror: _____     Offeror Representative: _____

Project Title: _____

| ITEM NO. | DESCRIPTION OF WORK, SERVICE OR MATERIAL | NAME, ADDRESS, TELEPHONE NUMBER, CERTIFICATION, AND CERTIFICATION NUMBER OF DVB TO BE USED | DOLLAR AMOUNT TO BE PAID THIS DVB |
|---|---|---|---|
| | | Name: | |
| | | Address: | |
| | | Telephone #: | |
| | | Certification:          Certification #: | |
| | | Name: | |
| | | Address: | |
| | | Telephone #: | |
| | | Certification:          Certification #: | |
| | | Name: | |
| | | Address: | |
| | | Telephone #: | |
| | | Certification:          Certification #: | |
| | | Name: | |
| | | Address: | |
| | | Telephone #: | |
| | | Certification:          Certification #: | |
| | | Name: | |
| | | Address: | |
| | | Telephone #: | |
| | | Certification:          Certification #: | |
| | | TOTAL AMOUNT TO CERTIFIED DVB | $ |

Use additional sheets if necessary.  Compute utilization on last sheet.

Sheet _____ of _____ (complete if submitting more than one sheet)

| COMPUTATION OF UTILIZATION AND COMPARISON WITH THE SUBCONTRACTOR PARTICIPATION GOAL | | |
|---|---|---|
| <u>Total Amount to Certified DVB</u>     x  100  =  Percent of Utilization<br>Total Bid/Proposal | | Goal = 3% |
| _____     x     100     =_____% | | Submit Documentation of Good Faith Effort if goal is not met. |

## THIS FORM SHALL BE SUBMITTED WITH PROPOSAL ON THE DUE DATE

## DOCUMENTATION OF GOOD FAITH EFFORT- Page 1 of 2

**A.**   **List potential DVBs** that the Offeror <u>solicited</u> for participation in this contract along with dates. Use additional sheets if necessary.

| | Certified DVB Firm | Certificate (DVBE/SDVOSB) | Date of Contact (Mail, Fax, Telephone, etc.) | Responded (Yes/No) |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |

Sheet _____ of _____ (complete if submitting more than one sheet)

**B.**   **<u>DVB Solicitations</u>**

Solicitation Sample:
Offeror must attach a sample of the solicitation sent to certified DVB firms. If phone contact was made, document conversation:  date, time, contact person, and business opportunities discussed.

**THIS FORM SHALL BE SUBMITTED WITH PROPOSAL ON THE DUE DATE**

SD 000374
EX. U - 218

**DOCUMENTATION OF GOOD FAITH EFFORT- Page 2 of 2**

Identification of: (1) All DVBs that underlined submitted bids/proposals, (2) The qualifying certification (DVBE or SDVOSB), (3) Nature of work/supplies/services offered that are not accepted, (4) Dollar amounts of the DVBs bids/proposals not accepted, (5) Subcontractors and/or suppliers that will be used instead of the DVBs, (6) Dollar amounts of these subcontractors and/or suppliers' bids/proposals, and (7) The reason for the bidder/offeror not accepting the DVB's bid/proposal. Use additional sheets if necessary.

| Name of DVB (1) | Certification (DVBE/SDVOSB) (2) | Nature of Work (3) | DVB Bids/Offer($) (4) | Subcontractor/ Supplier to be used (5) | Bid/Proposal Amount Accepted (6) | Reason Not Accepted (7) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Sheet _____ of _____ (complete if submitting more than one sheet)
**THIS FORM SHALL BE SUBMITTED WITH PROPOSAL ON THE DUE DATE**

**DRAFT AGREEMENT**

# RFP 11906

# SHERIFF'S DEPARTMENT
# PHONE SERVICES FOR INCARCERATED PERSONS

# DRAFT
# AGREEMENT

# INCLUDES:

Exhibit A – Statement of Work

Exhibit B – Insurance Requirements

Exhibit C – Payment Schedule

SD_000376

# DRAFT AGREEMENT

This agreement ("Agreement") is made and entered into effective as of the date of the last signature on the signature page by and between the County of San Diego, a political subdivision of the State of California ("County") and *[# enter full corporate title, describe company, located at (complete address)]* ("Contractor"), with reference to the following facts:

## RECITALS

A.    The County, by action of the Board of Supervisors March 2, 2021, Minute Order No. 03 authorized the Director of Purchasing and Contracting , to award a contract for incarcerated person communication services.

B.    Contractor is specially trained and possesses certain skills, experience, education, and competency to perform these services.

C.    The Chief Administrative Officer made a determination that Contractor can perform the services more economically and efficiently than the County, pursuant to section 703.10 of the County Charter.

D.    The Agreement shall consist of this document, Exhibit A Statement of Work, Exhibit A-1 Contractor's Offer Including Final Revisions*,* Exhibit B Insurance Requirements, and Exhibit C Payment Schedule*.* In the event of a conflict between any provisions of this Agreement, the following order of precedence shall govern: First (1st) this document; Second (2nd) Exhibit B; Third (3rd) Exhibit A; Fourth (4th) Exhibit C; and fifth (5th) Exhibit A-1.

NOW THEREFORE, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## ARTICLE 1
## PERFORMANCE OF WORK

1.1    <u>Standard of Performance</u>. Contractor shall, in good and workmanlike manner and in accordance with the highest professional standards, at its own cost and expense, furnish all of the labor, technical, administrative, professional and all other personnel, all supplies and materials, equipment, printing, transportation, training, facilities, and all other means whatsoever, except as herein otherwise expressly specified to be furnished by County, necessary or proper to perform and complete the work and provide the services required of Contractor by this Agreement.

1.2    <u>Contractor's Representative</u>. The person identified on the signature page ("Contractor's Representative") shall ensure that Contractor's duties under this Agreement shall be performed on behalf of the Contractor by qualified personnel; Contractor represents and warrants that (1) Contractor has fulfilled all applicable requirements of the laws of the State of California to perform the services under this Agreement and (2) Contractor's Representative has full authority to act for Contractor hereunder. Contractor and County recognize that the services to be provided by Contractor's Representative pursuant to this Agreement are unique: accordingly, Contractor's Representative shall not be changed during the Term of the Agreement without County's written consent. County reserves the right to terminate this Agreement pursuant to section 7.1 "Termination for Default" if Contractor's Representative should leave Contractor's employ, or if, in County's judgment, the work hereunder is not being performed by Contractor's Representative.

1.3    <u>Contractor as Independent Contractor</u>. Contractor is, for all purposes of this Agreement, an independent contractor, and neither Contractor nor Contractor's employees or subcontractors shall be deemed to be employees of the County. Contractor shall perform its obligations under this Agreement according to the Contractor's own means and methods of work, which shall be in the exclusive charge and under the control of the Contractor, and which shall not be subject to control or supervision by County except as to the results of the work. County hereby delegates to Contractor any and all responsibility for the safety of Contractor's employees, which shall include inspection of property to identify potential hazards. Neither Contractor nor Contractor's employees or subcontractors shall be entitled to any benefits to which County employees are entitled, including without limitation, overtime, retirement benefits, workers' compensation benefits and injury leave.

1.4    <u>Contractor's Agents and Employees or Subcontractors</u>. Contractor shall obtain, at Contractor's expense, all agents, employees, subcontractors, and consultants required for Contractor to perform its duties under this Agreement, and all such services shall be performed by Contractor's Representative, or under Contractor's Representatives' supervision, by persons authorized by law to perform such services.  Retention by Contractor of any agent, employee, subcontractor, or consultant shall be at Contractor's sole cost and expense, and County shall have no obligation to pay Contractor's agents, employees subcontractors, or consultants; to support any such person's or entity's claim against the Contractor; or to defend Contractor against any such claim.

In the event any subcontractor or consultant is utilized by Contractor for any portion of the project, Contractor retains the prime responsibility for carrying out all the terms of this Agreement, including the responsibility for performance and ensuring the availability and retention of records of subcontractors and consultants in accordance with this Agreement.

    1.4.1    "Related Subcontract" means an agreement to furnish, or the furnishing of, supplies, materials, equipment, or services of any kind to Contractor or any higher tier subcontractor in the performance of some or all of the work in

SD_000377



this Agreement. Related Subcontracts includes consultant agreements, which are defined as agreements for services rendered, or the rendering of services, by persons who are members of a particular profession or possess as special skill and who are not officers or employees of the Contractor. Examples include those services acquired by Contractor or a subcontractor in order to enhance their legal, economic, financial, or technical positions. Professional and consultant services are generally acquired to obtain information, advice, opinions, alternatives, conclusions, recommendations, training, or direct assistance, such as studies, analyses, evaluations, liaison with government officials, or other forms or representation. Related Subcontracts shall not include agreements for ancillary goods or services, or consulting services intended to support Contractor in a general manner not specific to the work performed under this Agreement. "Related Subcontractor" means an individual or entity holding or performing a Related Subcontract.

1.4.2    Required Subcontract Provisions:  Contractor shall notify all Related Subcontractors of Contractor's relationship to County. Contractor shall include in its Related Subcontracts and require Related Subcontractors' compliance with the provisions of Articles 3, 7, 8, 9, 10, 11, 13, 14 and 16, and section 4.6.1 of Article 4, hereunder except altered as necessary for proper identification of the contracting parties.

1.4.3    Contractor shall provide COR with copies of all Related Subcontracts entered into by Contractor within thirty (30) days after the effective date of the Related Subcontract, or within thirty (30) days of the effective date of this Agreement if such Related Subcontract is already in existence at that time.

1.4.4    County Approval:  Any Related Subcontract that is in excess of fifty thousand dollars ($50,000) or twenty five percent (25%) of the value of this Agreement, whichever is less; or a combination of Related Subcontracts to the same individual or firm for the Agreement period, the aggregate of which exceeds fifty thousand dollars ($50,000) or twenty five percent (25%) of the value of this Agreement, whichever is less; or any Related Subcontract for professional medical or mental health services, regardless of value, must have prior concurrence of the COR.

1.5    Offshore Prohibition. Except where Contractor obtains the County's prior written approval, Contractor shall perform the work of this Agreement only from or at locations within the United States. Any County approval for the performance of work outside of the United States shall be limited to the specific instance and scope of such written approval, including the types of work and locations involved. Notwithstanding the foregoing, this section shall not restrict the country or countries of origin of any assets purchased to provide the work hereunder; provided that when such assets are used to provide the work, such assets shall be used only from or at locations within the geographic boundaries of the United States.

1.6    DVB Participation. If this Agreement resulted from a solicitation containing Disabled Veteran Business ("DVB") requirements and forms, such requirements and Contractor's submitted forms are incorporated herein by reference to the extent not included as an Exhibit to this Agreement. Contractor shall make all commercially reasonable efforts to comply with all such DVB requirements, including meeting the DVB Percent of Utilization on Contractor's DVB Subcontractor Participation Plan. Contractor shall maintain a rate of DVB utilization throughout the term of this Agreement that is reasonably in alignment with the progress of the Agreement (e.g., term, utilization, deliverables). Contractor shall provide to County, upon request, documentation sufficient to verify Contractor's compliance with such requirements.

If in County's determination, Contractor is not in compliance with all DVB requirements, County may take corrective action, which may include (i) requiring Contractor to submit a corrective action plan acceptable to County detailing actions the Contractor will take to fulfill its DVB requirements and/or (ii) withholding of payments to Contractor equivalent to the amount of DVB underutilization. Such corrective actions shall be in addition to any other remedies the County may have under this Agreement or at law or equity.

1.7    Preferred Vendor. If this Agreement resulted from a solicitation where Contractor claimed Preferred Vendor status in its response per section 405 of the San Diego County Administrative Code, Contractor shall perform a commercially useful function (as that term is defined in California Military and Veterans Code § 999 or successor statute) throughout the term of this Agreement.

## ARTICLE 2
## SCOPE OF WORK

2.1    Statement of Work. Contractor shall perform the work described in the "Statement of Work" attached as Exhibit A to this Agreement, and by this reference incorporated herein, except for any work therein designated to be performed by County.

2.1.1    Evaluation Studies. Contractor shall participate as requested by the County in research and/or evaluative studies designed to show the effectiveness and/or efficiency of Contractor services or to provide information about Contractor's project.

2.2    Right to Acquire Equipment and Services. Nothing in this Agreement shall prohibit the County from acquiring the same type or equivalent equipment and/or service from other sources, when deemed by the County to be in its best interest.

2.3  Responsibility for Equipment. County shall not be responsible nor be held liable for any damage to persons or property consequent upon the use, misuse, or failure of any equipment used by Contractor or any of Contractor's employees, even though such equipment may be furnished, rented, or loaned to Contractor by County. The acceptance or use of any such equipment by Contractor or Contractor's employees shall be construed to mean that Contractor accepts full responsibility for and agrees to exonerate, indemnify, and hold harmless County from and against any and all claims for any damage whatsoever resulting from the use, misuse, or failure of such equipment, whether such damage be to the employee or property of Contractor, other Contractors, County, or other persons. Equipment includes, but is not limited to material, computer hardware and software, tools, or other things.

2.3.1  Contractor shall repair or replace, at Contractor's expense, all County equipment or fixed assets that are damaged or lost as a result of Contractor negligence.

2.4  Non-Expendable Property Acquisition. County retains title to all non-expendable property provided to Contractor by County, or which Contractor may acquire with funds from this Agreement if payment is on a cost reimbursement basis, including property acquired by lease purchase Agreement. Contractor may not expend funds under this Agreement for the acquisition of non-expendable property having a unit cost of $5,000 or more and a normal life expectancy of more than one year without the prior written approval of COR. Contractor shall maintain an inventory of non-expendable equipment, including dates of purchase and disposition of the property. Inventory records on non-expendable equipment shall be retained, and shall be made available to the County upon request, for at least three years following date of disposition. Non-expendable property that has value at the end of the Agreement (e.g. has not been depreciated so that its value is zero), and to which the County may retain title under this paragraph, shall be disposed of at the end of the Agreement as follows: At County's option, it may: 1) have Contractor deliver to another County contractor or have another County contractor pick up the non-expendable property; 2) allow Contractor to retain the non-expendable property provided that Contractor submits to the County a written statement in the format directed by the County of how the non-expendable property will be used for the public good; or 3) direct the Contractor to return to the County the non-expendable property.

**ARTICLE 3**
**DISENTANGLEMENT**

3.1  General Obligations.

Upon the expiration or termination of all or a portion of the services provided hereunder ("Transitioning Services,"), the County may elect to have such services, substantially similar services, or follow-on services ("Disentangled Services") performed by County or one or more separate contractors ("Replacement Provider"). Contractor shall take all actions necessary to accomplish a complete and timely transition of the Disentangled Services ("Disentanglement") without any material impact on the services. Contractor shall cooperate with County and otherwise take all steps reasonably required to assist County in effecting a complete and timely Disentanglement. Contractor shall provide Replacement Provider with all information regarding the services and any other information needed for Disentanglement.

Contractor shall provide for the prompt and orderly conclusion of all work required under this Agreement, as County may direct, including completion or partial completion of projects, documentation of work in process, and other measures to assure an orderly Disentanglement.

3.2  Disentanglement Process.

Contractor and County shall discuss in good faith a plan for Contractor's Disentanglement that shall not lessen in any respect Contractor's Disentanglement obligations.

If County requires the provision of Transitioning Services after expiration or termination of the Agreement or Disentanglement work not otherwise required under this Agreement, for which additional compensation will be due, such services shall be compensated at: (i) the applicable rates in Agreement or a reasonable pro-rata of those prices, or (ii) if no applicable rates apply, no more than Contractor's costs. Such work must be approved in writing by County approval of a written Disentanglement plan or separately in writing and is subject to the Compensation clause on the signature page.

Contractor's obligation to provide Disentanglement services shall not cease until all Disentanglement obligations are completed to County's reasonable satisfaction, including the performance by Contractor of all Specific Obligations of Contractor. County shall not require Contractor to perform Transitioning Services beyond 12 months after expiration or termination, provided that Contractor meets all Disentanglement obligations and other obligations under Agreement.

3.3  Specific Obligations.

The Disentanglement shall include the performance of the following specific obligations ("Specific Obligations"):

3.3.1  No Interruption or Adverse Impact

Contractor shall cooperate with County and Replacement Provider to ensure a smooth Disentanglement, with no interruption of or adverse impact to Disentangled Services, Transitioning Services, other work required under the Agreement, or services provided by third parties.

### 3.3.2 Client Authorizations.

Contractor shall obtain from clients served by Contractor all client consents or authorizations legally necessary to transfer client data to Replacement Provider.

### 3.3.3 Leases, Licenses, and Third-Party Agreements.

Contractor shall procure at no charge to County all authorizations necessary to grant Replacement Provider the use and benefit of any third-party agreements pending their conveyance or assignment to Replacement Provider.

Contractor, at its expense, shall convey or assign to Replacement Provider leases, licenses, and other third-party agreements procured under this Agreement, subject to written approval of the Replacement Provider (and County, if Replacement Provider is other than County).

Without limiting any other provision of this Agreement, Contractor shall reimburse County for any losses resulting from Contractor's failure to comply with any terms of any third-party agreements prior to the date of conveyance or assignment.

### 3.3.4 Return, Transfer, and Removal of Assets.

Contractor shall return to County all County assets in Contractor's possession, pursuant to section 2.4 of this Agreement.

County shall be entitled to purchase at net book value Contractor assets used primarily for the provision of Disentangled Services to or for County, other than those assets expressly identified as not being subject to this provision. Contractor shall promptly remove from County's site any Contractor assets that County, or its designee, chooses not to purchase under this provision.

### 3.3.5 Delivery of Documentation.

Notwithstanding section 13.5 of this Agreement, and without limiting Contractor's obligations thereunder, Contractor shall deliver to Replacement Provider (and/or County, if Replacement Provider is other than County), all documentation and data necessary for Disentanglement.

### 3.3.6 Licenses to Proprietary Software.

For any software programs developed for use under this Agreement, Contractor shall provide a nonexclusive, nontransferable, fully-paid, perpetual, irrevocable, royalty-free worldwide license to the Replacement Provider (and to County, if Replacement Provider is other than County), at no charge to County, to use, copy, and modify, all software, including software not specifically developed for County under this Agreement, that would be needed in order to allow Replacement Provider to continue to perform the Disentangled Services. Contractor shall also provide Replacement Provider (and County, if Replacement Provider is other than County) with a copy of all such software, in such media as requested by County, together with object code, source code, and appropriate documentation. Contractor shall also offer to County, as appropriate, the right to receive maintenance (including all enhancements and upgrades) and support with respect to such software for so long as County requires, at the best rates Contractor is offering to other major customers for services of a similar nature and scope.

## ARTICLE 4
## COMPENSATION

County will pay Contractor in accordance with Exhibit C Payment Schedule and this Article 4, for the work specified in Exhibit A Statement of Work (SOW), not to exceed the maximum compensation as set forth on signature page. Contractor shall employ and maintain an accounting and financial system to effectively monitor and control costs and assure accurate invoicing and performance under this Agreement.

4.1 General Principles. Contractor shall comply with generally accepted accounting principles, good business practices, San Diego County Code of Administrative Ordinances section 472, and the cost principles published by the federal Office of Management and Budget (OMB), including 2 CFR 200 - UNIFORM ADMINISTRATIVE REQUIREMENTS, COST PRINCIPLES, AND AUDIT REQUIREMENTS FOR FEDERAL AWARDS "The Uniform Guidance," which can be viewed at https://www.ecfr.gov/cgi-bin/text-idx?tpl=/ecfrbrowse/Title02/2cfr200_main_02.tpl. Contractor shall comply with all applicable federal, State, and other funding source requirements, Contractor shall, at its own expense, furnish all cost items associated with this Agreement except as specifically stated herein to be furnished by County.

4.1.1 Fiscal Year. The County's fiscal year runs from July 1 through June 30 ("County Fiscal Year").


EX. U - 224

4.2 <u>Compensation</u>.

   4.2.1   Contractor shall be entitled to compensation only upon completion and acceptance of a deliverable or portion of work as described in the Payment Schedule ("Services"). Services shall include any additional or as-needed services specified in the SOW and Pricing Schedule and pre-approved in writing by COR or authorized by County task order issued in accordance with this Agreement ("As-Needed Services").

      4.2.1.1  Contractor shall be entitled to reimbursement for incidental expenses associated with any such portions of the work only when specifically allowed for in the SOW and Pricing Schedule ("Reimbursable Expenses"), and only upon completion and acceptance of the Services for which they were incurred unless earlier reimbursement is otherwise authorized under this Agreement. Compensation for Reimbursable Expenses shall be at cost.

      4.2.1.2  Where travel, lodging, or meal expenses ("Travel Expenses") are allowable Reimbursable Expenses, rates must not exceed County-authorized rates set forth in San Diego County Administrative Code section 472. Should Contractor incur Travel Expenses greater than the County-authorized rates, Contractor shall not be entitled to reimbursement for the difference between the County-authorized rate for each category and the actual cost.

4.3 <u>Invoices</u>.

   4.3.1   Contractor shall invoice monthly for completed and accepted Services performed in the prior month. Completed fixed-price deliverables may be invoiced upon acceptance where authorized in writing by COR.

   4.3.2   Contractor shall submit invoices to the COR that are completed and submitted in accordance with written COR instructions and are in compliance with all Agreement terms.

      4.3.2.1  Contractor shall provide accurate invoices with sufficient detail and supporting documentation for County verification. Invoices must reference the Agreement number (and task order, if applicable), contain a detailed listing of each deliverable or portion of work, including the pay point, target, accomplishment, unit price, percentage completion, and appropriate calculations where applicable. Invoices must include a progress report documenting the status and accomplishments of Contractor.

      4.3.2.2  Contractor invoices shall include the following language:

        I certify, under penalty of perjury under the laws of the State of California, that the deliverables and/or services invoiced were delivered and/or performed specifically for this Agreement in accordance with and compliance to all terms and conditions set forth therein.

   4.3.3   Contractor requests for payment of authorized Reimbursable Expenses must be included in the invoice for the associated Services, unless previously invoiced in accordance with this Agreement.

4.4 <u>Payments</u>. Contractor shall be entitled to payment only upon County approval of a correct and substantiated invoice. Payment terms are, unless otherwise specified by County, thirty (30) days from the later of: (i) performance of work under the Agreement entitling Contractor to payment, (ii) County receipt of a correct and substantiated invoice, and (iii) County receipt of all substantiating information. The County at its sole discretion may issue partial payment where only a portion of an invoice is correct and substantiated. Payment shall be deemed to have been made on the date that County submits electronic payment or mails a warrant or check. The County is precluded from making payments prior to receipt of services (advance payments).

4.5 <u>Full Compensation</u>. The compensation set forth in this Agreement shall constitute the full and complete payment for Contractor's performance of the services set forth herein. Contractor shall not be entitled to any additional payment for services rendered. Contractor shall not be entitled to any compensation, reimbursement, ancillary benefits, or other consideration for services rendered beyond that specified in Agreement.

4.6 <u>Prompt Payment for Vendors and Subcontractors</u>

   4.6.1   Unless otherwise set forth in this section 4.6, Contractor shall promptly pay Related Subcontractors for satisfactory performance of work required by this Agreement. Such prompt payment shall be no later than thirty (30) days after Contractor receives payment for such services from County, and Contractor shall apply such payments to the payment of the Related Subcontractor(s) that performed the work.

   4.6.2   If Contractor determines that any payment otherwise due such Related Subcontractor is subject to withholding in accordance with a Related Subcontract, Contractor shall:

      4.6.2.1  Provide written notice to the Related Subcontractor and COR within three (3) business days of such withholding stating the amount to be withheld, the basis for the withholding, and, if applicable, the cure required of the Related Subcontractor in order to receive payment of the amounts withheld; and

      4.6.2.2  Reduce the Related Subcontractor's payment by an amount not to exceed the amount specified in the notice furnished under paragraph 4.6.3.1 above.

SD 000381



4.6.3    Contractor shall not include in any invoice to the County amounts that the Contractor has withheld or intends to withhold from a Related Subcontractor for failure to satisfactorily perform work in a manner required by this Agreement. If such withholding determination is made after submitting an invoice to the County, Contractor shall submit to County a revised invoice omitting or crediting such amount. Contractor shall not include such amounts in any subsequent invoices unless the Related Subcontractor has cured the basis for withholding.

4.7    Partial Payment. Contractor shall be paid only for work performed in accordance with this Agreement. If Contractor fails to perform a portion of the work or fails to perform some or all of the work in accordance with this Agreement, County, at its sole discretion, may provide partial payment to Contractor to reflect the reasonable value of work properly performed.

4.8    Withholding of Payment. Without limiting any other provision of this Agreement, County may withhold payment, in whole or in part, if any of the following exist:

4.8.1    Missing Information. Contractor has not provided to County any reports, data, audits, or other information required for Agreement administration, for reporting or auditing purposes, or by State, federal, or other funding source.

4.8.2    Misrepresentation. Contractor, with or without knowledge, made any misrepresentation of a substantial and material nature with respect to any information furnished to County

4.8.3    Unauthorized Actions by Contractor. Contractor took any action under this Agreement that required County approval without having first received such approval.

4.8.4    Breach. In the County's determination, Contractor is, or at the time of performance was, in breach of any of the terms of this Agreement.

4.9    Disallowance. County may disallow payment at any time if it determines that the basis for the payment is or was not eligible for compensation under this Agreement. If County makes payment to Contractor that is later disallowed by the County, State or federal government, or other funding source, County shall be entitled to prompt recovery of funds in accordance with Article 12.

4.10    Maximum Price. During the performance period of this Agreement, the maximum price for the same or similar items and/or services shall not exceed the lowest price at which Contractor then offers the items and/or services to its most favored customer.

4.11    Overpayments. If Contractor becomes aware of a duplicate contract financing or invoice payment or that County has otherwise overpaid on a contract financing or invoice payment, Contractor shall immediately notify the COR and County shall be entitled to prompt recovery of funds in accordance with Article 12.

4.12    Availability of Funding. The County's obligation for payment under this Agreement is contingent upon the availability of funding from which payment can be made. No legal liability on the part of the County shall arise for payment beyond the end of the County Fiscal Year for which funds are designated by the County. In the event that federal, State, or County funding ceases or is reduced, the County shall, in its sole discretion and without limiting any other provision of this Agreement, have the right to terminate or suspend this Agreement, or to reduce compensation and service levels proportionately.

4.13    Rate of Expense. Contractor shall control its rate of expense throughout the term of this Agreement such that it is reasonably in alignment with the progress of the Agreement, inclusive of term, achievement towards objectives, anticipated revenue, deliverables, and other applicable factors. Contractor shall provide to County, upon request, documentation sufficient to verify Contractor's compliance with such requirements.

4.13.1    Contractor shall promptly inform the COR if its rate of expense exceeds, or is anticipated to exceed, the progress of this Agreement or would result in expenses that exceed the maximum Agreement amount or budget. In no event, however, shall Contractor's invoiced amounts exceed the maximum Agreement amount or budget.

4.13.2    If the Agreement term, Initial Term, or any Option Period originates in one County Fiscal Year and ends in another County Fiscal Year, Contractor shall not exceed the amounts reasonably allocated to each of the County Fiscal Years based on the monthly budget or other rate of expense.

## ARTICLE 5
## AGREEMENT ADMINISTRATION

5.1    The Director of the Department of Purchasing and Contracting or designated Department of Purchasing and Contracting official is the contracting officer for this Agreement ("Contracting Officer").

5.2    County's Agreement Administrator. The County has designated the individual identified on the signature page as the Contracting Officer's Representative ("COR"), The COR will coordinate the County's administration of this Agreement.

5.2.1    The COR is designated to receive and approve Contractor invoices for payment, audit and inspect records, inspect Contractor services, and provide other technical guidance as required.



5.2.2    The COR is not authorized to make Changes to this Agreement, except for administrative adjustments, such as line-item budget changes or adjustments to the service requirements. that do not change the purpose or intent of the Statement of Work, the Terms and Conditions, the Agreement Term, or the total Agreement price ("Administrative Adjustments"). Each Administrative Adjustment shall be in writing and signed by COR and Contractor.

5.3    Agreement Progress Meeting. The COR and other County personnel, as appropriate, will meet periodically with the Contractor to review the Agreement performance, with the COR serving as meeting chair. At these meetings the COR will apprise the Contractor of how the County views the Contractor's performance and the Contractor will apprise the County of problems, if any, being experienced. The Contractor shall also notify the Contracting Officer (in writing) of any work being performed, if any, that the Contractor considers being over and above the requirements of the Agreement. Appropriate action shall be taken to resolve outstanding issues. The minutes of these meetings will be reduced to writing and signed by the COR and the Contractor. Should the Contractor not concur with the minutes, the Contractor shall set out in writing any area of disagreement within 10 days. Appropriate action will be taken to resolve any areas of disagreement.

**ARTICLE 6**
**CHANGES**

6.1    Changes. Changes to this Agreement may only be made by Administrative Adjustment, Change Order, or amendment, in accordance with this Article 6. No other modification of this Agreement shall be valid.

6.1.1    Administrative Adjustment. Changes that do not change the purpose or intent of the Statement of Work, the Terms and Conditions, the Agreement Term, or the total Agreement price of the Agreement, such as line-item budget changes or adjustments to the service requirements, ("Administrative Adjustments") may be made if in writing and signed by COR and Contractor

6.1.2    Change Order. The County may at any time, by written order, make Changes within the general scope of this Agreement ("Change Order"). If any Change Order causes an increase or decrease in the cost or time required for the performance of the work under this Agreement, an equitable adjustment shall be made to the price, delivery schedule, or both.

6.1.2.1    Contractor must assert any claim for equitable adjustment within thirty (30) days from the date of receipt by the Contractor of the Change Order; however, the Contracting Officer may receive and act upon any such claim asserted at any time prior to final payment under this Agreement where the facts justify such action. Where the cost of property made obsolete or excess as a result of a Change Order is included in the Contractor's claim for equitable adjustment, the Contracting Officer shall have the right to prescribe the manner of disposition of such property. Failure to agree to any equitable adjustment shall be a dispute concerning a question of fact within the meaning of Article 15 "Disputes". However, nothing in this section shall excuse the Contractor from proceeding with this Agreement as changed.

6.1.3    Amendment. The County and Contractor may modify this Agreement by written amendment signed by the Contracting Officer and Contractor.

**ARTICLE 7**
**SUSPENSION, DELAY, AND TERMINATION**

7.1    Termination for Default. In the event of Contractor's breach of this Agreement, County shall have the right to terminate this Agreement, in whole or part. Prior to termination for default, County will send Contractor written notice specifying the cause. The notice will give Contractor ten (10) days from the date the notice is issued to cure the default or make progress satisfactory to County in curing the default, unless a different time is given in the notice. If County determines that the default contributes to the curtailment of an essential service or poses an immediate threat to life, health, or property, County may terminate this Agreement immediately upon issuing oral or written notice to the Contractor without any prior notice or opportunity to cure. In the event of termination under this Article, all finished or unfinished documents, and other materials, prepared by Contractor under this Agreement shall become the sole and exclusive property of County.

If, after notice of termination of this Agreement under the provisions of this section, it is determined for any reason that the Contractor was not in default under this Agreement, the rights and obligations of the parties shall, be the same as if the notice of termination had been issued pursuant to section 7.5 "Termination for Convenience."

7.2    RESERVED

7.3    Failure to Perform. Contractor shall immediately notify the COR upon learning that it has, or that it is reasonably foreseeable that it will, fail to perform or timely perform its obligations under this Agreement for any reason, including, but not limited to, a labor dispute, emergency, epidemic, pandemic, or supply chain shortage. In such event, Contractor shall, upon request, prepare and deliver to the COR a written mitigation plan. Nothing in this section relieves the Contractor of its obligations under this Agreement.

7.4 <u>Reduction in Funding</u>. In the event there is a reduction of funds made available by County to Contractor under this or subsequent agreements, the County of San Diego and its departments, officers and employees shall incur no liability to Contractor and shall be held harmless from any and all claims, demands, losses, damages, injuries, or liabilities arising directly or from such action.

7.5 <u>Termination for Convenience</u>. The County may, by written notice, terminate this Agreement for convenience, in whole or in part, at any time. Upon receipt of such notice, Contractor shall promptly report to County all undelivered or unaccepted work performed in accordance with this Agreement prior to termination ("Incomplete Work"). Contractor may, at County's option, be required to complete some or all Incomplete Work during Disentanglement.

7.5.1 The County shall pay Contractor as full compensation for work performed and costs of termination:

7.5.1.1 The unit or pro rata price for any delivered and accepted portion of the work.

7.5.1.2 Actual and reasonable Contractor costs for Incomplete Work not mitigable or otherwise recoverable by Contractor. Such compensation shall not exceed the unit or pro rata price due to Contractor had the work been completed.

7.5.2 In no event shall the County be liable for any loss of profits or any other consequential damages.

7.5.3 County's termination of this Agreement for convenience shall not preclude it from changing the termination to a default, as set forth in section 7.1 of this Agreement, nor from taking any action in law or equity against Contractor for:

7.5.3.1 Fraud, waste, or abuse of Agreement funds, or

7.5.3.2 Improperly submitted claims, or

7.5.3.3 Any failure to perform the work in accordance with the Statement of Work, or

7.5.3.4 Any breach of any term or condition of the Agreement, or

7.5.3.5 Any actions under any warranty, express or implied, or

7.5.3.6 Any claim of professional negligence, or

7.5.3.7 Any other matter arising from or related to this Agreement, whether known, knowable, or unknown before, during, or after the date of termination.

7.5 <u>Suspension of Work</u>. The Contracting Officer may order Contractor, in writing, to suspend, delay, or interrupt all or part of the work of this Agreement for the period of time that Contracting Officer determines appropriate. County reserves the right to prohibit, without prior notice, Contractor or Contractor's employees, directors, officers, agents, subcontractors, vendors, consultants, or volunteers from 1) accessing County data systems and County owned software applications, including websites, domain names, platforms, physical files, 2) treating County's patients, clients, or facility residents, or 3) providing any other services under this Agreement.

**ARTICLE 8**
**COMPLIANCE WITH LAWS AND REGULATIONS**

8.1 <u>Compliance with Laws and Regulations</u>. Contractor shall at all times perform its obligations hereunder in compliance with all applicable federal, State, County, and local laws, rules, and regulations, current and hereinafter enacted, including facility and professional licensing and/or certification laws and keep in effect any and all licenses, permits, notices and certificates as are required. Contractor shall further comply with all laws applicable to wages and hours of employment, occupational safety, and to fire safety, health, and sanitation.

8.2 <u>Contractor Permits and License</u>. Contractor certifies that it possesses and shall continue to maintain or shall cause to be obtained and maintained, at no cost to the County, all approvals, permissions, permits, licenses, and other forms of documentation required for it and its employees to comply with all existing foreign or domestic statutes, ordinances, and regulations, or other laws, that may be applicable to performance of services hereunder. The County reserves the right to reasonably request and review all such applications, permits, and licenses prior to the commencement of any services hereunder.

8.3 <u>Equal Opportunity</u>. Contractor shall comply with federal and State equal employment opportunity laws, including, but not limited to, the provisions of Title VII of the Civil Rights Act of 1964 in that it will not discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment nor shall Contractor discriminate in any way that would deprive or intend to deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee because of such individual's race, color, religion, sex, national origin, age, handicap, medical condition, sexual orientation or marital status.

8.4   <u>Affirmative Action</u>. Each Contractor of services and supplies employing fifteen (15) or more full-time permanent employees, shall comply with the Affirmative Action Program for Vendors as set forth in Article IIIk (commencing at section 84) of the San Diego County Administrative Code, which program is incorporated herein by reference. A copy of this Affirmative Action Program will be furnished upon request by COR or from the County of San Diego Internet website (www.sandiegocounty.gov).

8.5   <u>Non-Discrimination</u>. Contractor shall ensure that services and facilities are provided without regard to ethnic group identification, race, color, nation origin, creed, religion, age, sex, physical or mental disability, political affiliation or marital status in accordance with applicable laws, including, but not limited to, Title VI of the Civil Rights Act of 1964 (42 U.S.C 2000d), section 162 (a) of the Federal-Aid Highway Act of 1973 (23 U.S.C 324), section 504 of the Rehabilitation Act of 1973, The Civil Rights Restoration Act of 1987 (P.L. 100-209), Executive Order 12898 (February 11, 1994), Executive Order 13166 (August 16, 2000), Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000-e), the Age Discrimination Act of 1975 (42 U.S.C. 6101), Article 9.5, Chapter 1, Part 1, Division 2, Title 2 (section 11135, et seq.) of the California Government Code, Title 9, Division 4, Chapter 6 (section 10800, et seq.) of the CCR and California Dept of Social Services Manual of Policies and Procedures (CDSS MPP) Division 21.

8.6   <u>AIDS Discrimination</u>. Contractor shall not deny any person the full and equal enjoyment of, or impose less advantageous terms, or restrict the availability of, the use of any County facility or participation in any County funded or supported service or program on the grounds that such person has Human Immunodeficiency Virus (HIV) or Acquired Immune Deficiency Syndrome (AIDS) as those terms are defined in Title 3, Division 2, Chapter 8, section 32.803, of the San Diego County Code of Regulatory Ordinances.

8.7   <u>American with Disabilities Act (ADA) 1990</u>. Contractor shall not discriminate against qualified people with disabilities in employment, public services, transportation, public accommodations, and telecommunications services in compliance with the Americans with Disabilities Act (ADA), the California Fair Employment and Housing Act (FEHA), and California Administrative Code Title 24.

8.8   <u>Political Activities Prohibited</u>. None of the funds, provided directly or indirectly, under this Agreement shall be used for any political activities or to further the election or defeat of any candidate for public office. Contractor shall not utilize or allow its name to be utilized in any endorsement of any candidate for elected office. Neither this Agreement nor any funds provided hereunder shall be utilized in support of any partisan political activities, or activities for or against the election of a candidate for an elected office.

8.9   <u>Lobbying</u>. Contractor agrees to comply with the lobbying ordinances of the County and to assure that its officers and employees comply before any appearance before the County Board of Supervisors. Except as required by this Agreement, none of the funds provided under this Agreement shall be used for publicity or propaganda purposes designed to support or defeat any legislation pending before State and federal Legislatures, the Board of Supervisors of the County, or before any other local governmental entity. This provision shall not preclude Contractor from seeking necessary permits, licenses and the like necessary for it to comply with the terms of this Agreement.

8.10  <u>Religious Activity Prohibited</u>. There shall be no religious worship, instructions or proselytization as part of or in connection with the performance of this Agreement.

8.11  <u>Audit Requirement</u>.

    8.11.1  Contractor shall annually engage a Licensed Certified Public Accountant licensed to perform audits and attests in the State of California to conduct an annual financial audit of the organization. Contractors that expend $750,000 or more of federal grant funds per year shall also have an audit conducted in compliance with Government Auditing Standards, which includes Single Audit Act Amendments and the Compliance Supplement (2 CFR part 200 App. XI). Contractors that are commercial organizations (for-profit) are required to have a non-federal audit if, during its fiscal year, it expended a total of $750,000 or more under one or more HHS awards. 45 CFR part 74.26(d) incorporates the threshold and deadlines of the Compliance Supplement but provides for-profit organizations two options regarding the type of audit that will satisfy the audit requirements. Contractor shall include a clause in any agreement entered into with an audit firm, or notify the audit firm in writing prior to the audit firm commencing its work for Contractor, that the audit firm shall, pursuant to 31 U.S.C. 7503, and to the extent otherwise required by law, provide access to the federal government or other legally required entity to the independent auditor's working papers that were part of the independent auditor's audit of Contractor. Contractor shall submit two (2) copies of the annual audit report, the audit performed in accordance with the Compliance Supplement, and the management letter to the County fifteen (15) days after receipt from the independent Certified Public Accountant but no later than nine (9) months after the Contractor's fiscal year end.

    8.11.2  Contractor shall immediately notify County upon learning that Contractor's independent Certified Public Accountant may or will issue a disclaimer of opinion due to substantial doubt of Contractor's ability to continue as a going concern.

8.12 <u>Board of Supervisors' Policies</u>. Contractor represents that it is familiar, and shall use its best efforts to comply, with the following policies of the Board of Supervisors, available on the County of San Diego website:

8.12.1 Board Policy B-67, which encourages the County's Contractors to offer products made with recycled materials, reusable products, and products designed to be recycled to the County in response to the County's requirements; and

8.12.2 Board Policies B-53 and B-39a, which encourage the participation of small and veteran owned businesses in County procurements; and

8.12.3 <u>Zero Tolerance for Fraudulent Conduct in County Services</u>. Contractor shall comply with County of San Diego Board of Supervisors Policy A-120 "Zero Tolerance for Fraudulent Conduct in County Services." There shall be "Zero Tolerance" for fraud committed by contractors in the administration of County programs and the provision of County services. Upon proven instances of fraud committed by contractors in connection with their performance under the Agreement, said contractor shall be subject to corrective action up to and including termination of the Agreement; and

8.12.4 <u>Interlocking Directorate</u>. In recognition of Board Policy A-79, available on the County of San Diego Website, not-for-profit Contractors shall not subcontract with related for-profit subcontractors for which an interlocking relationship exist unless specifically authorized in writing by the Board of Supervisors; and

8.12.5 <u>Drug and Alcohol-Free Work Environment</u>. The County of San Diego, in recognition of its responsibility to provide a safe, healthy, and productive work environment and perform services as safely, effectively, and efficiently as possible, has adopted a requirement for a work environment not adversely affected or impaired in any way by the use or presence of alcohol or drugs in Board Policy C-25 County of San Diego Drug and Alcohol Use Policy.

8.12.5.1 As a material condition of this Agreement, the Contractor agrees that Contractor and Contractor's employees, while performing services or using County equipment pursuant to Agreement:

8.12.5.1.1 Shall not be in any way impaired because of being under the influence of alcohol or a drug.

8.12.5.1.2 Shall not possess, consume, or be under the influence of alcohol and/or an illegal drug.

8.12.5.1.3 Shall not sell, offer, or provide alcohol or an illegal drug to another person; provided, however, that the foregoing restriction shall not be applicable to a Contractor or Contractor employee who as part of the performance of normal job duties and responsibilities prescribes or administers medically prescribed drugs.

8.12.5.2 Contractor shall inform all employees who are performing applicable services of the County's Board Policy C-25 and the above prohibitions.

8.13 <u>Cartwright Act</u>. Following receipt of final payment under the Agreement, Contractor assigns to the County all rights, title, and interest in and to all causes of action it may have under section 4 of the Clayton Act (15 U.S.C. Sec. 15) or under the Cartwright act (Chapter 2) (commencing with section 16700) of Part 2 of Division 7 of the Business and Professions Code), arising from purchases of goods, materials, or services by the Contractor for sale to the County under this Agreement.

8.14 <u>Hazardous Materials</u>. Contractor shall comply with all Environmental Laws and all other laws, rules, regulations, and requirements regarding Hazardous Materials, health and safety, notices, and training. Contractor agrees that it will not store any Hazardous Materials at any County facility for periods in excess of ninety (90) days or in violation of the applicable site storage limitations imposed by Environmental Law. Contractor agrees to take, at its expense, all actions necessary to protect third parties, including, without limitation, employees, and agents of the County, from any exposure to Hazardous Materials generated or utilized in its performance under this Agreement. Contractor agrees to report to the appropriate governmental agencies all discharges, releases, and spills of Hazardous Materials that are required to be reported by any Environmental Law and to immediately notify the County of it. Contractor shall not be liable to the County for the County's failure to comply with, or violation of, any Environmental Law. As used in this section, the term "Environmental Laws" means any and all federal, state, or local laws or ordinances, rules, decrees, orders, regulations, or court decisions (including the so-called "common law"), including, but not limited to, the Resource Conservation and Recovery Act, relating to hazardous substances, hazardous materials, hazardous waste, toxic substances, environmental conditions or other similar substances or conditions. As used in this section the term "Hazardous Materials" means any chemical, compound, material, substance or other matter that: (a) is a flammable, explosive, asbestos, radioactive nuclear medicine, vaccine, bacteria, virus, hazardous waste, toxic, overtly injurious or potentially injurious material, whether injurious or potentially injurious by itself or in combination with other materials; (b) is controlled, referred to, designated in or governed by any Environmental Laws; (c) gives rise to any reporting, notice or publication requirements under any Environmental Laws, or (d) is any other material or substance giving rise to any liability, responsibility or duty upon the County or Contractor with respect to any third person under any Environmental Laws.

8.15 <u>Clean Air Act and Federal Water Pollution Control Act</u>.

8.15.1 Contractor shall comply with all applicable standards, orders, or regulations issued pursuant to the Clean Air Act, as amended, (42 U.S.C. §§ 7401 et seq.) and the Federal Water Pollution Control Act, as amended, (33 U.S.C. §§ 1251 et seq.). Contractor shall report each violation to the USDA and the appropriate EPA Regional Office as required.

8.16 Debarment, Exclusion, Suspension, and Ineligibility.

8.16.1 Contractor certifies that, to the best of its knowledge, and except as disclosed to County and acknowledged in writing by County prior to the execution of this Agreement, Contractor, its employees, directors, officers, agents, subcontractors, vendors, consultants, and volunteers:

8.16.1.1 Are not presently debarred, excluded, suspended, declared ineligible, voluntarily excluded, or proposed for debarment, exclusion, suspension, or ineligibility by any federal, state, or local department or agency; and

8.16.1.2 Have not within a 3-year period preceding this Agreement been convicted of, or had a civil or administrative judgment rendered against them for, the commission of fraud or a criminal offense or civil action in connection with obtaining, attempting to obtain, or performing a public (federal, State, or local) transaction; violation of federal or State anti-trust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, receiving stolen property; physical, financial or sexual abuse or misconduct with a patient or client, or medical negligence or malpractice;

8.16.1.3 Are not presently indicted or otherwise criminally, civilly, or administratively charged by a government entity (federal, State, or local) with commission of any of the offenses enumerated in the paragraph above; and

8.16.1.4 Have not within a 3-year period preceding this Agreement had one or more public transaction (federal, State, or local) terminated for cause or default.

8.16.2 Contractor shall have an ongoing duty during the term of this Agreement to disclose to the County any occurrence that would prevent Contractor from making the certifications contained in this section 8.16 on an ongoing basis. Such disclosure shall be made in writing to the COR and the County Office of Ethics and Compliance within five (5) business days of when Contractor discovers or reasonably believes there is a likelihood of such occurrence.

8.17 Display of Fraud Hotline Poster(s). As a material term and condition of this Agreement, Contractor shall:

8.17.1 Prominently display in common work areas within all business segments performing work under this Agreement County of San Diego Office of Ethics and Compliance Ethics Hotline posters;

8.17.2 Posters may be downloaded from the County Office of Ethics and Compliance website at: http://www.sandiegocounty.gov/content/sdc/cao/oec.html. Additionally, if Contractor maintains a company website as a method of providing information to employees, the Contractor shall display an electronic version of the poster(s) at the website;

8.17.3 If Contractor has implemented a business ethics and conduct awareness program, including a reporting mechanism, the Contractor need not display the County poster.

8.18 False Claims Act Training. Contractor shall, not less than annually, provide training on the Federal False Claims Act (31 USC 3729, et seq. or successor statutes) and State False Claims Act (California Government Code 12650, et seq. or successor statutes) to all employees, directors, officers, agents, Related Subcontractors, or volunteers providing services under this Agreement. Contractor shall maintain verification of this training. Contractor shall retain verifications in accordance with the Agreement requirement for retention of records

8.19 Code of Ethics. As a material term and condition of this Agreement, Contractor shall develop and implement a Code of Ethics or similar document and maintain it during the term of this Agreement. Additionally, Contractor shall train all employees and volunteers on the Code of Ethics, and all employees, volunteers, directors, officers, and agents shall certify that they have received training and have been provided an opportunity to ask questions of their employer regarding the Code of Ethics. Contractor shall retain these certifications in accordance with the Agreement's provision regarding retention of records

8.20 Compliance Program. Contractors with an agreement that exceeds more than $250,000 in value annually shall establish, and maintain for the duration of this Agreement, a compliance program that meets the standards of Federal Sentencing Guidelines section 8B2.1 and 42 CFR 438.608, regardless of funding source or services.

8.21 Investigations. Unless prohibited by an investigating government authority, Contractor shall cooperate and participate fully in any investigation initiated by County relative to this Agreement. Upon County's request, Contractor shall promptly provide to County any and all documents, including any and all communications or information stored digitally, and make available for interviews any employee(s) of Contractor identified by County. Contractor further agrees to immediately notify County if any employee, director, officer, agent, subcontractor, vendor, consultant, or volunteer of Contractor comes under

EX. U - 231

investigation by any federal, State, or local government entity with law enforcement or oversight authority over the Agreement or its funding for conduct arising out of, or related to, performance under this Agreement.

Contractor shall promptly make available to County all internal investigative results, findings, conclusions, recommendations, and corrective action plans pertaining to the investigation in its possession as requested by the County, unless otherwise protected by applicable law or privilege.

8.22    Prevailing Wage. Work to be performed by Contractor in accordance with this Agreement is a "public work" under Labor Code section 1720, et seq. and is subject to compliance monitoring and enforcement by the California Department of Industrial Relations. If Contractor will receive federal funds, this Agreement may also be subject to the payment of prevailing wages pursuant to the Davis-Bacon Act, 40 USC § 3141 et seq., and other federal laws. It is the sole responsibility of Contractor to ensure that all workers who perform work pursuant to this Agreement are paid the correct rate of prevailing wages. Contractor waives and releases any rights it may have under Labor Code section 1726 and 1781 to seek recovery of costs from the County. When working on a federally funded project, Contractor shall ensure that all workers entitled to the payment of prevailing wages receive the higher of the applicable State or federal prevailing wage.

County has obtained from the Director of the California Department of Industrial Relations general prevailing wage determinations for the locality in which work is being performed. These determinations are on file and available in the Department of Purchasing and Contracting, 5560 Overland Avenue, Suite 270, San Diego, CA 92123, and are available from the Department of Industrial Relations on the internet at www.dir.ca.gov. Federal prevailing wage rates are available from the U.S. Department of Labor on the internet at www.access.gpo.gov.

Contractor acknowledges that because portions of the work to be performed by Contractor may be subject to the payment of State and federal prevailing wages, certain requirements must be included in this Agreement. Contractor certifies that it is generally aware of State and federal prevailing wage requirements and shall be bound by these requirements to the extent applicable to the work performed, including, but not limited to, the following:

8.22.1    If a worker is paid less than the prevailing wage rate owed for a day or portion of a day, Contractor shall pay the worker the difference between the prevailing wage rate and the amount actually paid as specified in Labor Code section 1775;

8.22.2    Contractor shall maintain and make available payroll and worker records in accordance with Labor Code sections 1771.4(a)(3), 1776 and 1812;

8.22.3    If apprentices are employed on the project, Contractor shall ensure compliance with Labor Code section 1777.5;

8.22.4    Contractor is aware of the limitations imposed on overtime work by Labor Code section 1810, et seq. and shall be responsible for any penalties levied in accordance with Labor Code section 1813 for failing to pay required overtime wages;

8.22.5    Contractor shall be bound by each of the stipulations set forth at 40 USC § 3142(c), including the obligations to a) pay all laborers or mechanics employed directly on the site of the work, unconditionally and at least once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at the time of payment, computed at the required wage rate; b) post the applicable prevailing wage scale in a prominent and accessible place at the work site; and c) agree that there may be withheld from accrued payments funds necessary to ensure workers are paid the required wage rate;

8.22.6    In accordance with 40 USC § 3143, all or part of this Agreement may be terminated for failure to pay the required prevailing rate of wages;

8.22.7    In accordance with 8 Cal. Code Reg. section 16451(d), the applicable prevailing wage determinations shall be posted at each job site and Contractor will be responsible for posting the notice required by 8 Cal. Code Reg. section 16451(d) at each job site. Posters are available on the CMU website, at the Division of Labor Standards Enforcement District Offices or by emailing a request to CMU@dir.ca.gov; and

8.22.8    Contractor and all subcontractors must comply with the requirements of Labor Code section 1771.1 pertaining to the registration of contractors pursuant to Labor Code section 1725.5. Registration and all related requirements of those sections must be maintained throughout the term of this Agreement. This project is a "public work" in accordance with Labor Code §1720, et seq. It is the sole responsibility of the Contractor to ensure that all workers employed in the execution of the Agreement are paid the correct prevailing rate of wages. The County has obtained from the director of the Department of Industrial Relations general prevailing wage determinations for the locality in which the work is to be performed. The determinations are on file and available in the County of San Diego Department of Purchasing and Contracting; 5560 Overland Ave., Ste. 270, San Diego, CA 92123-1204 and are available from the Department of Industrial Relations on the internet at http://www.dir.ca.gov/DLSR/PWD/index.htm.

**ARTICLE 9**
**CONFLICTS OF INTEREST; CONTRACTOR'S CONDUCT**

9.1 <u>Conflicts of Interest</u>. Contractor presently has no interest, including but not limited to other projects or independent agreements, and shall not acquire any such interest, direct or indirect, which would conflict in any manner or degree with the performance of services required to be performed under this Agreement. The Contractor shall not employ any person having any such interest in the performance of this Agreement. Contractor shall not hire County's employees to perform any portion of the work or services provided for herein including secretarial, clerical, and similar incidental services except upon the written approval of County. Without such written approval, performance of services under this Agreement by associates or employees of County shall not relieve Contractor from any responsibility under this Agreement.

9.1.1 <u>California Political Reform Act and Government Code Section 1090 Et Seq</u>. Contractor acknowledges that the California Political Reform Act ("Act"), Government Code section 81000 et seq., provides that Contractors hired by a public agency, such as County, may be deemed to be a "public official" subject to the Act if the Contractor advises the agency on decisions or actions to be taken by the agency. The Act requires such public officials to disqualify themselves from participating in any way in such decisions if they have any one of several specified "conflicts of interest" relating to the decision. To the extent the Act applies to Contractor, Contractor shall abide by the Act. In addition, Contractor acknowledges and shall abide by the conflict-of-interest restrictions imposed on public officials by Government Code section 1090 et seq.

9.2 <u>Conduct of Contractor</u>.

9.2.1 Contractor shall inform the County of all Contractor's interests, if any, that are, or that Contractor believes to be, incompatible with any interests of the County.

9.2.2 Contractor shall not, under circumstances that might reasonably be interpreted as an attempt to influence the recipient in the conduct of his duties, accept any gratuity or special favor from individuals or organizations with whom the Contractor is doing business or proposing to do business, in accomplishing the work under this Agreement.

9.2.3 Contractor shall not use for personal gain or make other improper use of confidential information acquired in connection with this Agreement. In this connection, the term "confidential information" includes, but is not limited to, unpublished information relating to technological and scientific development; medical, personnel, or security records of individuals; anticipated materials requirements or pricing actions; and knowledge of selections of Contractors or subcontractors in advance of official announcement.

9.2.4 Contractor, its employees, directors, officers, agents, subcontractors, vendors, consultants, and volunteers shall not offer, directly or indirectly, any unlawful gift, gratuity, favor, entertainment, or other item(s) of monetary value to an employee or official of the County.

9.2.5 <u>Referrals</u>. Contractor further covenants that no referrals of clients through Contractor's intake or referral process shall be made to the private practice of any person(s) employed by the Contractor.

9.3 <u>Prohibited Agreements</u>. As required by section 67 of the San Diego County Administrative Code, Contractor certifies that it is not in violation of the provisions of section 67, and that Contractor is not, and will not subcontract with, any of the following:

9.3.1. Persons employed by County or of public agencies for which the Board of Supervisors is the governing body;

9.3.2. Profit-making firms or businesses in which employees described in sub-section 9.3.1, above, serve as officers, principals, partners, or major shareholders;

9.3.3. Persons who, within the immediately preceding twelve (12) months came within the provisions of the above sub-sections and who (1) were employed in positions of substantial responsibility in the area of service to be performed by the Agreement, or (2) participated in any way in developing the Agreement or its service specifications; and

9.3.4. Profit-making firms or businesses, in which the former employees described in sub-section 9.3.3 above, serve as officers, principals, partners, or major shareholders.

9.4 <u>Limitation of Future Agreements or Grants</u>. It is agreed by the parties to the Agreement that Contractor shall be restricted in its future contracting with the County to the manner described below. Except as specifically provided in this section, Contractor shall be free to compete for business on an equal basis with other companies.

9.4.1 If Contractor, under the terms of the Agreement, or through the performance of tasks pursuant to this Agreement, is required to develop specifications or statements of work and such specifications or statements of work are to be incorporated into a solicitation, Contractor shall be ineligible to perform the work described within that solicitation as a prime or subcontractor under an ensuing County agreement. It is further agreed, however, that County will not, as additional work, unilaterally require Contractor to prepare such specifications or statements of work under this Agreement.



9.4.2   Contractor may not apply for nor accept additional payments for the same services contained in the Statement of Work.

## ARTICLE 10
## INDEMNITY AND INSURANCE

10.1   Indemnity. County shall not be liable for, and Contractor shall defend and indemnify County and the employees and agents of County (collectively "County Parties"), against any and all claims, demands, liability, judgments, awards, fines, mechanics' liens or other liens, labor disputes, losses, damages, expenses, charges or costs of any kind or character, including attorneys' fees and court costs (hereinafter collectively referred to as "Claims"), related to this Agreement or the work covered by this Agreement and arising either directly or indirectly from any act, error, omission or negligence of Contractor or its Contractors, licensees, agents, servants or employees, including, without limitation, Claims caused by the sole passive negligent act or the concurrent negligent act, error or omission, whether active or passive, of County Parties. Contractor shall have no obligation, however, to defend or indemnify County Parties from a Claim if it is determined by a court of competent jurisdiction that such Claim was caused by the sole negligence or willful misconduct of County Parties.

Without limiting the foregoing, Contractor's defense and indemnity obligations under this section shall specifically apply to any claim, suit, proceeding, demand, liability, loss, damage, or expense (including but not limited to attorneys' fees) arising from or relating to a claim that any work performed pursuant to this Agreement infringes a patent, copyright, moral right, trademark, trade secret, or other intellectual property right of a third party. Without limiting the generality of the foregoing, if any portion of any of the same or County's use of the same is, or in Contractor's or County's opinion is likely to be, held to infringe the rights of any third party, Contractor shall at its expense either (i) procure the right for County to use the infringing item free of any liability or expense to County to the full extent contemplated by this Agreement; or (ii) replace it with a non-infringing equivalent reasonably satisfactory to County. Without limiting the County's other rights and Contractor's obligations under this section, County shall have the right to employ counsel at its own expense for, and participate in the defense of, any claim.

10.2   Insurance. Contractor shall, at its own cost and expense, obtain and keep in force and effect during the term of this Agreement, including all extensions, the insurance specified in Exhibit B Insurance Requirements. Evidence of insurance and any other documents or notices required to be provided to County pursuant to Exhibit B shall be submitted to the COR or as instructed by the COR. The provisions of section 10.1 are independent of, and shall in no way limit, Contractor's and its insurer's requirements under this section 10.2 and Exhibit B.

## ARTICLE 11
## AUDIT AND INSPECTION

11.1   Audit and Inspection.

   11.1.1   Authorized federal, State and County representatives and their designated inspectors shall each have the following rights ("Audit and Inspection"):

      11.1.1.1   to monitor, assess, and evaluate Contractor's performance under this Agreement;

      11.1.1.2   to conduct audits, inspections, reviews of reports, and interviews of staff and participants involved with the services provided under this Agreement; and

      11.1.1.3   to inspect the premises, services, materials, supplies, and equipment furnished or utilized in the performance of this Agreement and the workmanship of the work performed under this Agreement.

   11.1.2   Contractor shall fully cooperate with any Audit and Inspection. County shall perform Audits and Inspections in a manner so as not to unduly interfere with Contractor's performance.

   11.1.3   At any time during normal business hours and as often as County may deem necessary, Contractor shall make available to County, State or federal officials for examination all of its records with respect to all matters covered by this Agreement and will permit County, State or federal officials to examine and make excerpts or transcripts from such records, and to make audits of all invoices, materials, payrolls, records of personnel, information regarding clients receiving services, and other data relating to all matters covered by this Agreement.

   11.1.4   If an audit is conducted, it will be done in accordance with generally accepted government auditing standards as described in "Government Auditing Standards," published for the United States General Accountability Office or the institute of Internal Auditors International Standards for the Professional Practice of Internal Auditing.

11.2   External Audits. Contractor shall provide the following to the COR:

   11.2.1   a copy of all notifications of audits or pending audits by federal or State representatives regarding contracted services identified in this Agreement within three (3) business days of Contractor receiving notice of the audit.

11.2.2 a copy of the draft and final State or federal audit reports within twenty-four (24) hours of receiving them.

11.2.3 a copy of Contractor's response to the draft and final State or federal audit reports at the same time the response is provided to the State or federal representatives.

11.2.4 a copy of all responses made by a federal or State representative to a Contractor's audit response no later than three (3) business days after receiving it, unless prohibited by the government agency conducting the audit. This shall continue until the federal or State auditors have accepted and closed the audit.

11.3 <u>Availability of Records</u>. Contractor shall maintain and/or make available within San Diego County accurate books, accounting records, and other records related to Contractor's performance under this Agreement, including all records of costs charged to this Agreement during the term of this agreement and for the longer of: (i) a period of five (5) years after the date of final payment under this Agreement, (ii) for records that relate to appeals under Article 15 "Disputes," or litigation or the settlement of claims arising out of the performance of this Agreement, three (3) years after such appeals, litigation, or claims have been disposed of, and (iii) any retention period required by the funding source(s) of this Agreement. Contractor shall provide any requested records to County within two (2) business days of request. Contractor assertions of confidentiality shall not be a bar to full access to the records. County shall keep the materials described above confidential unless otherwise required by law.

11.3.1 Contractor shall maintain, and the records referred to in section 11.3 shall include, records sufficient to establish the reasonableness accuracy, completeness and currency of all cost or pricing data submitted to County in connection with this Agreement, including records of adequate price competition, negotiations, and cost or price analysis.

11.4 <u>Outcome-Based Measures</u>. Where outcome-based measures are set forth in the Statement of Work, Contractor shall maintain, and provide to County upon County's request as often as County deems necessary, complete, and accurate data documenting such outcome measures under this Agreement. Such data may include, but is not limited to, statistics on outcomes, rates of success, and completion rate of deliverables.

11.5 <u>Full Cost Recovery</u>. Contractor shall reimburse County for all direct and indirect expenditures incurred in conducting an audit, investigation, or inspection when Contractor is subsequently found to have violated terms of this Agreement.

11.6 <u>Corrective Actions</u>. If any services performed hereunder are found to have not been in conformity with the specifications and requirements of this Agreement, County shall have the right to (1) require the Contractor to perform the services in conformity with said specifications and requirements at no additional increase in total Agreement amount, (2) require Contractor immediately to take all necessary steps to ensure future performance of the services in conformity with requirements of the Agreement, (3) reduce payment to Contractor in accordance with Article 4, (4) have the services performed, by agreement or otherwise, in conformance with the specifications of this Agreement and recover from Contractor any costs incurred by County that are directly related to the performance of such services, and/or (5) pursue any other rights or remedies available to County under this Agreement.

## ARTICLE 12
## RECOVERY OF FUNDS

Where Contractor is required to reimburse County under any provision of this Agreement, or where County is otherwise owed funds from Contractor under this Agreement, County may, at its sole discretion and subject to funding source restrictions and State and federal law: (1) withhold such amounts from any amounts due to Contractor pursuant to the payment terms of this Agreement, (2) withhold such amounts from any other amounts due to Contractor from County, and/or (3) require Contractor to make payment to County for the total amount due (or a lesser amount specified by County) within thirty (30) days of request by County. Notwithstanding the foregoing, County may allow Contractor to repay any such amounts owed in installments pursuant to a written repayment plan.

## ARTICLE 13
## USE OF DOCUMENTS AND REPORTS

13.1 <u>Findings Confidential</u>. Any reports, records, data, or other information given to or prepared or assembled by Contractor under this Agreement that the County requests to be kept confidential shall not be made available to any individual or organization by the Contractor without the prior written approval of the County except as may be required by law. Contractor shall not disclose to any individual or organization any reports, records, data, or other information received, prepared, or assembled by Contractor under this Agreement

13.2 <u>Ownership, Publication, Reproduction and Use of Material</u>. All reports, studies, information, data, statistics, forms, designs, plans, procedures, systems, and any other material or properties produced under this Agreement shall be the sole and exclusive property of County. No such materials or properties produced in whole or in part under this Agreement shall be subject to private use, copyright, or patent right by Contractor in the United States or in any other country without the express written consent of County. County shall have unrestricted authority to publish, disclose, distribute and otherwise use, copyright or

patent, in whole or in part, any such reports, studies, data, statistics, forms or other materials or properties produced under this Agreement.

13.3 <u>Confidentiality</u>. Contractor agrees to maintain the confidentiality of and take industry appropriate and legally required measures to prevent the unlawful disclosure of any information that is legally required to be kept confidential. Except as otherwise allowed by local, State, or federal law or regulation and pursuant to this section 13.3, Contractor agrees to only disclose confidential records where the holder of the privilege, whether the County, or a third party, provides written permission authorizing the disclosure.

13.4 <u>Public Records Act</u>. The California Public Records Act ("CPRA") requires County to disclose "public records" in its actual or constructive possession unless a statutory exemption applies. This generally includes contracts and related documents. If County receives a CPRA request for records relating to the Agreement, County may, at its sole discretion, either determine its response to the request without notifying Contractor or notify Contractor of the request. If County determines its response to the request without notifying Contractor, Contractor shall hold County harmless for such determination. If County notifies Contractor of the request, Contractor may request that County withhold or redact records responsive to the request by submitting to County a written request within five (5) business days after receipt of the County's notice. Contractor's request must identify specific records to be withheld or redacted and applicable exemptions. Upon timely receipt of Contractor's request, County will review the request and at its sole discretion withhold and/or redact the records identified by Contractor. Contractor shall hold County harmless for County's decision whether to withhold and/or redact pursuant to Contractor's written request. Contractor further agrees that its defense and indemnification obligations set forth in section 10.1 of this Agreement extend to any Claim (as defined in section 10.1) against the County Parties (as defined in section 10.1) arising out of County's withholding and/or redacting of records pursuant to Contractor's request. Nothing in this section shall preclude Contractor from bringing a "reverse CPRA action" to prevent disclosure of records. Nothing in this section shall prevent the County or its agents or any other governmental entity from accessing any records for the purpose of audits or program reviews if that access is legally permissible under the applicable local, State, or federal laws or regulations. Similarly, County or its agent or designee may take possession of the record(s) where legally authorized to do so.

13.5 <u>Custody of Records</u>. Contractor shall deliver to County or its designee, at County's request, all documentation and data related to Contractor's work under this Agreement, including, but not limited to, County data and client files held by Contractor, at no charge to County. County, at its option, may take custody of Contractor's client records upon Agreement termination, expiration, or at such other time as County may deem necessary. County agrees that such custody will conform to applicable confidentiality provisions of State and federal law and that retained records shall be available to Contractor for examination and inspection in accordance with applicable law. Contractor shall destroy records not turned over to County in accordance with applicable retention requirements and this Agreement. Notwithstanding the foregoing, Contractor may retain one (1) copy of the documentation and data for archival purposes or warranty support, and Contractor may maintain records that it is legally required to maintain.

13.6 <u>Reports</u>. Contractor shall submit reports required in Exhibit A and additional reports as may be requested by the COR and agreed to by the Contractor. Format for the content of such reports may be developed by County. The timely submission of these reports is a necessary and material term and condition of this Agreement and Contractor agrees that failure to meet specified deadlines will be sufficient cause to withhold payment. Contractor shall submit to County within thirty (30) days of the termination of this Agreement a report detailing all work done pursuant to this Agreement by Contractor.

## ARTICLE 14
## INFORMATION PRIVACY AND SECURITY PROVISIONS

14.1 <u>Recitals</u>. This Article is intended to protect the privacy and security of County information that Contractor may create, receive, access, store, transmit, and/or destroy under this Agreement. In addition to the below Responsibilities, contractor shall be in compliance with the following rules, regulations, and agreements, *as applicable*:

 14.1.1 Health Insurance Portability and Accountability Act, specifically, Public Law 104-191, the Health Information Technology for Economic and Clinical Health Act, Public Law 111-005, 42USC section 17921 et seq., and 45CFR Parts 160 and 164, collectively referred to as "HIPAA;"

 14.1.2 County agreements with the State of California, collectively referred to as "State Agreements" and posted on the County's website at: <u>www.cosdcompliance.org</u>, including:

  14.1.2.1 The Medi-Cal Privacy and Security Agreement Between the California Department of Health Care Services (DHCS) and the County;

  14.1.2.2 The Medi-Cal Behavioral Health Services Performance Agreement between DHCS and the County;

  14.1.2.3 The San Diego County Alcohol and Drug Program Administrator Agreement between DHCS and the County

SD_000392



14.1.2.4   The Refugee Health Agreement between the California Department of Public Health (CDPH) and the County;

14.1.2.5   The HIV/AIDS Case Reporting System Data Use Agreement between CDPH and the County;

14.1.2.6   The Childhood Lead Poisoning Prevention Program between CDPH and the County;

14.1.2.7   The Standard Agreement between the County and the California Department of Aging; and

14.1.2.8   The Agreement for Whole Person Care Pilot Program for San Diego County with DHCS.

14.1.3   Title 42 Code of Federal Regulations, Chapter 1, Subchapter A, Part 2.

14.1.4   California Civil Code 1798;

14.1.5   California Senate Bill 1386.

14.2   <u>Definitions</u>.  Terms used, but not otherwise defined, in this Article shall have the same meaning as defined by HIPAA.

14.2.1   "Breach" of Protected Health Information (PHI) shall have the same meaning given to the term "breach" under HIPAA and "breach" of Personal Information (PI)/Personally Identifiable Information (PII) shall have the same meaning as given to it under the State Agreements.

14.2.2   "Business Associate," when applicable, shall mean the Contractor.

14.2.3   "County PHI" shall have the same meaning as PHI under HIPAA, specific to PHI under this Agreement.

14.2.4   "County PI/PII" shall have the same meaning as PI/PII under the State Agreements, specific to PI/PII under this Agreement.

14.2.5   "Covered Entity," when applicable, shall mean the County.

14.2.6   "Security incident" shall have the same meaning as defined by the State Agreements.

14.3   <u>Responsibilities of Contractor</u>.

14.3.1   <u>Use and Disclosure of County PHI/PI/PII</u>. Contractor shall use the minimum County PHI/PI/PII required to accomplish the requirements of this Agreement or as required by Law.  Contractor may not use or disclose County PHI/PI/PII in a manner that would violate HIPAA or the State Agreements if done by the County.

14.3.2   <u>Safeguards</u>. Contractor shall develop and maintain a HIPAA-compliant information privacy and security program to prevent use or disclosure of County PHI/PI/PII, other than as required by this Agreement.

14.3.3   <u>Mitigation</u>. Contractor shall mitigate, to the extent practicable, any harmful effects caused by violation of the requirements of this Article, as directed by the County.

14.3.4   <u>Subcontractors</u>. Contractor shall ensure that any agent, including a subcontractor, to whom it provides County PHI/PI/PII, imposes the same conditions on such agents that apply to Contractor under this Article.

14.3.5   <u>Cooperation with County</u>.

14.3.5.1   Contractor shall provide access to County PHI/PI/PII, as well as internal practices and records related to County PHI/PI/PII, at the written request of County within ten (10) calendar days.

14.3.5.2   Contractor will assist County regarding individual's access, copy, amendment, accounting of disclosure, and other such requests for County PHI/PI/PII in the time and manner designated by County.

14.3.6   <u>Breach Reporting</u>. Contractor shall report breaches and suspected security incidents to County, to include:

14.3.6.1   <u>Initial Report</u>.

14.3.6.1.1   Contractor shall email County Contracting Officer's Representative (COR) and County Chief Compliance and Privacy Officer (CCPO) immediately upon the discovery of a suspected security incident that involves data provided to County by the Social Security Administration, as per the State Agreements.

14.3.6.1.2   Contractor shall email COR and CCPO  immediately of breaches and suspected privacy incidents involving 500 or more individuals.

14.3.6.2   <u>Investigation Report</u>. Contractor shall immediately investigate such suspected security incident or breach and provide the County a complete report of the investigation within seven (7) working days.

14.3.6.3   <u>Notification</u>. Contractor will comply with County's request to notify individuals and/or media and shall pay any costs of such notifications, as well as any costs associated with the breach. County shall approve the time, manner and content of any such notifications before notifications are made.

14.3.7   <u>Designation of Individuals</u>. Contractor shall designate a Privacy Official and a Security Official to oversee its privacy and security requirements herein.



14.3.8 <u>Data Security</u>. Contractor shall comply with, as applicable, data privacy and security requirements specified by HIPAA and the State Agreements, which may include, but are not limited to:

    14.3.8.1 Workforce members, including employees, interns, volunteers, subcontractors, etc., with access to applicable County PHI/PI/PII shall:

        14.3.8.1.1 Complete privacy and security training to include a signed certification within thirty (30) days of hire, and at least annually thereafter; and

        14.3.8.1.2 Sign a confidentiality statement, prior to access to such PHI/PI/PII; and

    14.3.8.2 Computer warning banners for all systems containing applicable County PHI/PI/PII

    14.3.8.3 Comprehensive, annual security risk assessments

    14.3.8.4 Policies and internal controls to ensure secure transport and storage of County PHI/PI/PII in cars, airplanes, trains, and buses.

    14.3.8.5 Sufficient administrative, physical, and technical controls in place to protect County PHI/PI/PII

14.3.9 <u>Termination</u>. Upon termination of the Agreement for any reason, Contractor shall return or destroy all County PHI/PII/PI, except County PHI/PII/PI necessary for Contractor to continue its proper management and administration or to carry out its legal responsibilities, as mutually agreed upon by the Parties. If the Parties mutually agree that return or destruction of County PHI/PII/PI is infeasible, Contractor shall extend the protections of this Article to such County PHI/PII/PI for so long as Contractor maintains such County PHI/PII/PI.

**ARTICLE 15**
**DISPUTES**

Notwithstanding any provision of this Agreement to the contrary, the Contracting Officer shall decide any dispute concerning a question of fact arising out of this Agreement that is not otherwise disposed of by the parties within a reasonable period of time. The decision of the Contracting Officer shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, capricious, arbitrary, or so grossly erroneous as necessarily to imply bad faith. Contractor shall proceed diligently with its performance hereunder pending resolution by the Contracting Officer of any such dispute. Nothing herein shall be construed as granting the Contracting Officer or any other administrative official, representative or board authority to decide questions of law, or issues regarding the medical necessity of treatment or to pre-empt any medical practitioners' judgment regarding the medical necessity of treatment of patients in their care. The foregoing does not change the County's ability to refuse to pay for services rendered if County disputes the medical necessity of care.

**ARTICLE 16**
**GENERAL PROVISIONS**

16.1 <u>Change of Control</u>. Contractor shall notify County in writing of any change in majority ownership of Contractor (or all or substantially all of Contractor's assets) through a transaction or series of transactions including, without limitation, an acquisition, sale, reorganization, merger, or consolidation ("Change of Control") at least one hundred eighty (180) days prior to the effective date of a Change of Control or as soon as practicable thereafter if notice cannot legally be provided to County within such timeframe.

    16.1.1 Without limiting any other rights or remedies of County, in the event of a pending or actual Change of Control, County may terminate this Agreement in accordance with section 7.5, Termination for Convenience, except that Contractor shall not be entitled to costs of termination set forth in section 7.5.2.

16.2 <u>Assignment and Delegation</u>. Contractor shall not assign any of its rights or delegate any of its obligations hereunder without the prior written consent of County, which shall not be unreasonably withheld; provided, however, that Contractor may assign or delegate its rights or obligations under this Agreement to the entity becoming a majority owner of Contractor's assets during a Change of Control, provided that notice is given in accordance with section 16.1 above. Any purported assignment or delegation in violation of this section shall be null and void

16.3 <u>Entire Agreement</u>. This Agreement, together with all Exhibits attached hereto and other agreements expressly referred to herein, constitute the entire agreement between the parties with respect to the subject matter contained herein. All prior or contemporaneous agreements, understandings, representations, warranties, and statements, oral or written, including any proposals from Contractor and requests for proposals from County, are superseded.

16.4 <u>Remedies Not Exclusive</u>. The rights and remedies of County provided in this Agreement shall not be exclusive and are in addition to any other rights and remedies provided by law, equity, or under resulting order.

16.5 <u>Sections and Exhibits</u>. All recitals, sections, and exhibits referred to in this Agreement are incorporated herein by reference.



16.6    Further Assurances. Parties agree to perform such further acts and to execute and deliver such additional documents and instruments as may be reasonably required in order to carry out the provisions of this Agreement and the intentions of the parties.

16.7    Governing Law. This Agreement shall be governed, interpreted, construed, and enforced in accordance with the laws of the State of California.

16.8    Headings. The article and section headings used in this Agreement are inserted for convenience of reference only and are not intended to define, limit, or affect the construction or interpretation of any term or provision hereof.

16.9    Neither Party Considered Drafter. Despite the possibility that one party may have prepared the initial draft of this Agreement or played the greater role in the physical preparation of subsequent drafts, neither party shall be deemed the drafter of this Agreement and that, in construing this Agreement in case of any claim that any provision hereof may be ambiguous, no such provision shall be construed in favor of one party on the ground that such provision was drafted by the other.

16.10   No Other Inducement. The making, execution, and delivery of this Agreement by the parties hereto has been induced by no representations, statements, warranties, or agreements other than those expressed herein.

16.11   Notices. Notice to either party shall be in writing and personally delivered; sent by certified mail, postage prepaid, return receipt requested; or emailed to the County's or Contractor's designated representative (or such party's authorized representative). Any such notice shall be deemed received by the party (or such party's authorized representative) on the earliest of the date of personal delivery, three (3) business days after deposit in the U.S. Mail, or upon sending of an email from which an acknowledgement of receipt has been received other than an out of office, unavailable, or undeliverable reply.

16.12   Severability. If any term, provision, covenant, or condition of this Agreement is held to be invalid, void or otherwise unenforceable, to any extent, by any court of competent jurisdiction, the remainder of this Agreement shall not be affected thereby, and each term, provision, covenant, or condition of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

16.13   Successors. Subject to the limitations set forth in sections 16.1 and 16.2 above, all terms of this Agreement shall be binding upon, inure to the benefit of, and be enforceable by the parties hereto and their respective heirs, legal representatives, successors, and assigns.

16.14   Time. Time is of the essence for each provision of this Agreement.

16.15   Time Period Computation. All periods of time referred to in this Agreement shall be calendar days, unless the period of time specifies business days. Calendar days shall include all days of the week, including holidays. Business days shall be Monday through Friday, excluding County observed holidays.

16.16   Waiver. The waiver by one party of the performance of any term, provision, covenant, or condition shall not invalidate this Agreement, nor shall it be considered as a waiver by such party of any other term, provision, covenant, or condition. Delay by any party in pursuing any remedy or in insisting upon full performance for any breach or failure of any term, provision, covenant, or condition shall not prevent such party from later pursuing remedies or insisting upon full performance for the same or any similar breach or failure.

16.17   Third Party Beneficiaries Excluded. This Agreement is intended solely for the benefit of the County and its Contractor. Any benefit to any third party is incidental and does not confer on any third party to this Agreement any rights whatsoever regarding the performance of this Agreement. Any attempt to enforce provisions of this Agreement by third parties is specifically prohibited.

16.18   Publicity Announcements and Materials. All public announcements, including those issued on Contractor letterhead, and materials distributed to the community shall identify the County of San Diego as the funding source for contracted programs identified in this Agreement. Copies of publicity materials related to contracted programs identified in this Agreement shall be filed with the COR. County shall be advised at least twenty-four (24) hours in advance of all locally generated press releases and media events regarding contracted services identified in this Agreement. Alcohol and Drug Prevention Services Contractors shall notify COR or designee at least five (5) business days in advance of all Contractor generated media releases and media events regarding contracted services identified in this Agreement.

16.19   Critical Incidents. Contractor shall have written plans or protocols and provide employee training for handling critical incidents involving: external or internal instances of violence or threat of violence directed toward staff or clients; loss, theft or unlawful accessing of confidential client, patient or facility resident Personal Information (PI), Personally Identifiable Information (PII) and/or Personal Health Information (PHI); fraud, waste and/or abuse of Agreement funds; unethical conduct; or violation of any portion of San Diego County Board of Supervisors Policy C-25 "Drug and Alcohol Use Policy" while performing under this Agreement. Contractor shall report all such incidents to the COR within one business day of their occurrence. However, if this Agreement includes Article 14, Contractor must adhere to the timelines and processes contained in Article 14.



16.20 <u>Responsiveness to Community Concerns</u>.  Contractor shall notify County within one business day of receipt of any material complaints submitted to Contractor orally or in writing related to Contractor's performance of work under this Agreement ("Complaints"), unless prohibited by applicable State, federal, or local law. Complaints include, but are not limited to, issues of abuse or quality of care, or issues regarding a program or facility applicable to this Agreement. Contractor shall take appropriate steps to acknowledge receipt of Complaint(s) from individuals or organizations and to address or resolve all Complaints. Contractor shall promptly notify the County of the status and disposition of all complaints and provide additional information or documentation upon request. Nothing in this provision shall be interpreted to preclude Contractor from engaging in any legally authorized use of its facility, property, or business as approved, permitted or licensed by the applicable authority.

16.21 <u>Criminal Background Check Requirements</u>. Contractor shall ensure that criminal background checks are required and completed prior to employment or placement of any employee, director, officer, agent, subcontractor, consultant, or volunteer who will be providing any services, accessing County or client data, or receiving compensation under this Agreement. Background checks shall be in compliance with any licensing, certification, funding, or Agreement requirements, including the Statement of Work, which may be higher than the minimum standards described herein. Furthermore, for any individuals identified above who will be assigned to sensitive positions funded by this Agreement, background checks shall be in compliance with Board of Supervisors Policy C-28, available on the County of San Diego website. Sensitive positions are those that: (1) physically supervise minors or vulnerable adults; (2) have unsupervised physical contact with minors or vulnerable adults; and/or (3) have a fiduciary responsibility to any County client, or direct access to, or control over, bank accounts or accounts with financial institutions of any client. If this Agreement includes Article 14, Contractor must also adhere to requirements contained in Article 14.

Contractor shall have a documented process for reviewing the information and determine if criminal history demonstrates behavior that could create an increased risk of harm to clients or risk to services to be performed under Agreement. Contractor shall document review of criminal background findings and consideration of criminal history in the selection of such persons listed above in this section.

16.21.1 Contractor shall utilize a subsequent arrest notification service or perform a criminal background check annually during the term of this Agreement for any employee, director, officer, agent, subcontractor, consultant, or volunteer who will be providing any services under this Agreement. Contractor shall keep the documentation of their review and consideration of the individual's criminal history on file in accordance with paragraph 11.4 "Maintenance of Records."

16.21.2 <u>Definitions</u>

16.21.2.1 <u>Minor</u>:  Individuals under the age of eighteen (18) years old.

16.21.2.2 <u>Vulnerable Adult</u>:  (1) Individuals age eighteen (18) years or older, who require assistance with activities of daily living and who may be put at risk of abuse during service provision; (2) Individuals age eighteen (18) years or older who have a permanent or temporary limited physical and/or mental capacity that may put them at risk of abuse during service provision because it renders them: unable to make decisions for themselves, unable to physically defend themselves, or unaware of physical abuse or other harm that could be perpetrated against them.   Activities of daily living are defined as the basic tasks of everyday life, such as eating, bathing, dressing, toileting, and transferring.

16.21.2.3 <u>Volunteer</u>:  A person who performs a service willingly and without pay.

16.22 <u>Survival</u>. The provisions of this Agreement necessary to carry out the intention of the parties as expressed herein shall survive the termination or expiration of this Agreement. Without limiting the foregoing, the following sections and articles of this Agreement shall survive the expiration or earlier termination of this Agreement: sections 8.1, 8.21, 10.1, 16.4, 16.7, and Articles 3, 4, 7, 11, 12, and 13.

/
/
/

# SIGNATURE PAGE

**AGREEMENT TERM.** The initial term of this Agreement shall begin on _____ __, 20__ and end on _____ __, 20__ ("Initial Term").

**OPTION TO EXTEND.** The County shall have the option to extend the term of this Agreement for ____ increments of ___ year(s) (each an "Option Period"), for a total of ___ years beyond the expiration of the Initial Term, not to exceed _____ __, 20__. This option shall be automatically exercised unless County notifies Contractor in writing not less than thirty (30) days prior to an Option Period that the County does not intend to extend the Agreement.

    <u>Options to Extend for One to Six Additional Months at End of Agreement</u>. County shall also have the option to extend the term of this Agreement, in one or more increments, for a total of no less than one (1) and no more than six (6) calendar months ("Incremental Options"). The County may exercise each Incremental Option by providing written notice to Contractor no fewer than fifteen (15) calendar days prior to expiration of this Agreement. The rates in effect at the time an Incremental Option is exercised shall apply during the term of the Incremental Option.

**COMPENSATION**: Pursuant to Exhibit C, Article 4, and other applicable provisions of this Agreement, County agrees to pay Contractor a sum not to exceed *[# write out amount] ($######)* ("Maximum Agreement Amount").  Furthermore, compensation for the Initial Term and any Option Periods shall not exceed the amounts shown for the Initial Term or that Option Period shown below.

| | | |
|---|---|---|
| *Initial Term (Year 1)* | ##/##/#### - ##/##/#### | $_____ |
| *Initial Term (Year 2)* | ##/##/#### - ##/##/#### | $_____ |
| *Initial Term (Year 3)* | ##/##/#### - ##/##/#### | $_____ |
| *First Option Period* | ##/##/#### - ##/##/#### | $_____ |
| *Second Option Period* | ##/##/#### - ##/##/#### | $_____ |
| *Third Option Period* | ##/##/#### - ##/##/#### | $_____ |
| *Fourth Option Period* | ##/##/#### - ##/##/#### | $_____ |
| *Fifth Option Period* | ##/##/#### - ##/##/#### | $_____ |
| *Sixth Option Period* | ##/##/#### - ##/##/#### | $_____ |
| *Seventh Option Period* | ##/##/#### - ##/##/#### | $_____ |

**COR.** The County designates the following individual as the Contracting Officer's Representative ("COR")

#Name and Title
#Address
#Address
#Phone and email

**CONTRACTOR'S REPRESENTATIVE.** Contractor designates the following individual as the Contractor's Representative.

#Name and Title
#Address
#Address
#Phone and email

IN WITNESS WHEREOF, County and Contractor execute this Agreement effective as of the date of the last signature below. The person(s) signing this Agreement for Contractor represent(s) and warrant(s) that they are duly authorized to bind Contractor and have the legal capacity to execute and deliver this Agreement.

**CONTRACTOR:**                                  **COUNTY OF SAN DIEGO:**

                                                                               JOHN M. PELLEGRINO, Director
                                                                                Department of Purchasing and Contracting

By: _____        By: _____
      #NAME                                            #NAME
      #TITLE                                           #TITLE
      #DATE                                            #DATE

**EXHIBIT A – STATEMENT OF WORK**

## 1. BACKGROUND INFORMATION

1.1.  The San Diego Sheriff's Department (SDSD) operates seven separate detention facilities throughout San Diego County.  The California Board of State and Community Corrections (BSCC) rated capacity of SDSD's facilities is 5,695 incarcerated persons.  An average of 300 daily arrestees are processed at San Diego Central Jail (SDCJ), Vista Detention Facility (VDF), and Las Colinas Detention and Reentry Facility (LCDRF).

1.2.  Incarcerated persons are transferred and housed in all facilities.  Specialized housing needs vary from facility to facility, including but not limited to those administrative separated from the rest of the population, those suffering from mental illness and cognitive disabilities, those with physical, vision, or hearing impairments, incentive and program based housing, and specialized veteran programs.

1.3.  The SDSD requires a contractor to provide automated operator platform phone and video calling services, to include visitation area phones, equipment, installation, and maintenance for all associated equipment located throughout the SDSD detention facilities.  Facility names and locations are listed in Attachment A-1. The Sheriff reserves the right to add or delete facilities.  There are currently 785 wall mounted phones and 148 video terminals in our facilities.  All stated equipment is owned by the legacy contractor.

1.4.  The past five years of population and call volume is as follows:

|      | Population | Calls     | Minutes    |
|------|------------|-----------|------------|
| 2017 | 5,687      | 1,668,885 | 15,663,906 |
| 2018 | 5,535      | 1,651,811 | 15,974,645 |
| 2019 | 5,630      | 1,673,864 | 16,234,130 |
| 2020 | 4,197      | 1,393,376 | 14,699,024 |
| 2021 | 3,927      | 2,047,700 | 18,646,243 |

*Call numbers reported by legacy contractor*

1.5.  During 2020 and 2021, much of our population was subject to reduced access to phones and visits due to protective measures in place for the COVID-19 pandemic.  Therefore, the numbers stated above for these two years is not an accurate depiction of the expected call volume.

1.6.  Beginning July 1, 2021, SDSD moved to a "No Cost Communication" model for our incarcerated population.  Those in our custody are now allowed calls and video visits at no cost to them.  Each incarcerated individual is allowed an unlimited number of 15-minute calls, and two 30-minute video visits per week.  The County of San Diego absorbs the cost associated with this call model.

1.7.  All contract proposals must include the intent to continue the "No Cost Communication" model currently in practice.

## 2. SCOPE OF PROJECT

2.1.  Contractor shall provide a turnkey project for an automated operator platform phone and video calling service to include equipment and maintenance to provide visitation phones, local, long distance, and international telephone service to incarcerated persons in SDSD's detention facilities, and a tablet-based device platform for incarcerated persons.  This includes the necessary labor, circuits, interconnecting with the local exchange carrier and/or inter-exchange carrier, and any WiFi upgrades necessary for proper device connectivity.

2.1.1.  The system must be of an open architecture to allow ease of integration with existing or future systems that operate on either PC based networks, mainframes, or other platforms, and capable of over-the-air software updates.

2.1.2.  The system hardware must be durable and designed for use within detention facilities. Wall mounted telephone sets shall be constructed of high-security steel that provides a level of security against vandalism, and the handset should be secured to the housing with a reinforced steel cable. Tablet-based devices shall be constructed of shatter-proof materials resistant to vandalism and tamper, and the software shall be incapable of accessing outside WiFi or mobile connectivity.

2.1.3.  The desired system shall include a flexible call accounting system and blocked number capabilities. This shall include interaction allowing for the privatization of legally confidential communication.

2.1.4.  The system must meet Americans with Disability Act (ADA) requirements and Title 24 of the California Code of Regulations, provide access to English, Spanish, and three other most commonly used languages, provide communications options for the hearing impaired, and have extensive administrative communications controls as deemed necessary by the Sheriff.

2.2.  Video calling terminals and tablet-based devices shall be capable of phone and video calling services, as well as allow integration into SDSD incarcerated individuals requests, grievances process, and commissary ordering. Tablet software must be of a flexible platform capable of system integration.

2.3.  Tablet devices should be capable of optional services through application-based resources for email communication, entertainment, educational and legal research, and SDSD reentry services created content.

2.4.  Contractor shall be capable of offering pay-to-play entertainment programming, games, and services for use on tablet-based devices to the incarcerated population. All entertainment content would be subject to SDSD administrator approval.

2.4.1.  The County shall require the contractor disclose revenue gained from pay-to-play services.

2.5.  The SDSD is also interested in exploring other options available through first party ownership of the contractor, any systems capable of delivering mail and outside communication that would assist with moving SDSD's detention facilities toward a more sustainable and environmentally friendly "paper free" environment.

2.6.  Current legacy contractor is also the provider of kiosks in the intake process at each of our booking facilities for the placement of money on the incarcerated person's account in their possession at the time of arrest, and in the public information lobbies at each facility for the public/visitors to place funds on the incarcerated persons' accounts.

2.6.1.  The contractor shall provide kiosks in the intake area the public lobby area of each detention facility

2.6.2.  This service can be managed as either a first party provider of the service by the contractor, or through a third-party subcontract managed by the contractor.

2.6.3.  This service will be provided at no cost to the individual placing money on the account, or the incarcerated person receiving the money.

2.7.    Current legacy contractor is also the provider of a debit card system in which incarcerated persons being released from custody are provided a card loaded with their funds balance. Use of funds is available without an activation fee or any account handling fees maintaining an account balance.

    2.7.1.    The SDSD requires contractors agree to also provide this service.

    2.7.2.    This service can be managed as either a first party provider of the service by the contractor, or through a third-party subcontract managed by the contractor.

    2.7.3    No charges shall be assessed or passed on to the incarcerated persons

## 3. DATA CONVERSION AND SYSTEM TRANSITION

3.1.    Contractor shall provide SDSD a detailed plan for database conversion and migration procedures necessary to transfer data from the legacy contractor database to the new system.

    3.1.1.    Data conversion shall include the migration of all privatized and blocked numbers from the existing legacy contractor's platform.

    3.1.2.    Data conversion shall also include call data and audio going back from the "go-live" date for a time period agreed upon prior to the finalizing of a contract.

3.2.    Contractor shall develop a system transition plan with a "go-live" date for the installation of hardware to replace the existing phone and video terminals at SDSD's seven detention facilities for a seamless transition of service with the least impact on our incarcerated population.

## 4. SYSTEM ACCESS AND INTERFACING

4.1.    System monitoring, recording, archiving and administration must be accessible by SDSD via secure internet connection and individual user login.

    4.1.1.    SDSD and any partnering law enforcement entities shall be capable of accessing all call/video content for review and all associated user account data necessary.

    4.1.2.    All system resources must be accessible through Single Sign-On (SSO) that is Fast Identity Online (FIDO) Universal Second Factor (U2F) certified. SDSD prefers SSO implementation using Security Assertion Markup Language (SAML) 2.0 or OpenID Connect (OIDC) 1.0/OAuth 2.0. Further, SDSD requires Azure AD Provisioning Service to provision users via SCIM (System for Cross-Domain Identity Management) 2.0.

    4.1.3.    Offeror shall clearly document all SSO capabilities in detail. SDSD's integration shall be capable of User and Entity Based Analytics (UEBA).

4.2.    SDSD shall have the administrator capabilities necessary to create and activate user accounts, the capability to modify and create access level profiles, audit user access, program and assign forwarding numbers and privatize numbers for confidential communication.

    4.2.1.    Contractor shall import privatized numbers from the legacy call platform.

    4.2.2.    SDSD shall vet and enter new numbers for privatized or confidential communication.

4.3.    SDSD system administrators shall have the direct means through the call platform and user interface to active and deactivate individual phones or entire phone groups, as well as turn on/off recording features for

visitation phones and terminals should visitation areas need to be repurposed due to unforeseen circumstances.

4.4. Phone and video calling data must be retained and accessible by SDSD and any third-party companies or partnering law enforcement agencies deemed necessary by SDSD.

4.4.1 SDSD retains the rights to all data and metadata, and self-service access to export data in bulk.

4.4.2. Audio from phone and video communications shall be accessible in real time via an Application Programming Interface (API) by SDSD for integration into visualization tools that deliver a real-time dashboard (ex. Microsoft Power BI) and/or any other third-party services for the purpose of machine learning or working in conjunction with SDSD through a Data Sharing Agreement.

4.5. Although it is understandable there are data storage limitations associated with the retention of video communications, the audio of video calls shall be retained and accessible in the call monitoring platform for the same retention period as call audio.

# 5. REQUIREMENTS OF INCARCERATED VISIT, PHONE, AND VIDEO CALL SYSTEM

5.1. The system shall process calls and data in real-time without delays.

5.2. The system shall network multiple locations and services in one congruent platform.

5.3. The system shall be supported by remote maintenance and system self-diagnostics on a routine basis to self-create "trouble tickets" when a system problem is discovered.

5.4. The phone call system shall provide automated voice prompts in English, Spanish, and three other most commonly used languages. Automated voice prompt scripts shall be approved by SDSD, and SDSD must be able to request unlimited changes to the prompt script.

5.5. The visit, phone, and video calling systems shall require incarcerated persons to login through a PIN or other logon process.

5.6. The phone call system shall include, at minimum, automated call instructions and call acceptance verification alerting the called party that the call is being made from a SDSD detention facility, announcement of caller name, time limited alerts prior to call termination, and prompts at the end of the call indication which party terminated the call.

5.7. The phone and visitation mechanism shall have a means of immediate disconnection of up to 16 voice/video telephones via dry contact input for each housing module and visit area.

5.8. The phone system shall not allow any incoming calls.

5.9. The phone system shall be capable of detecting call forwarding, three-way calling, and conference calling.

5.10. The phone system shall be capable of restricting incarcerated persons from being capable of utilizing the keypad to input and manipulate call prompts after the initial call connection.

5.11. Investigative tools, including call monitoring and recording, shall be available for every visit, phone, and video call made among the incarcerated population.

5.11.1. Call record time and recording time data in the platform must be synchronized and match to fulfill evidence authentication standards.

5.11.2. Call platform must allow for searching of recorded visit, phone, and video calls by facility, housing unit, phone, incarcerated individual, and called party number or other identifiers (example: IP addresses for video calls).

5.11.3. The system shall have the capability to end/disconnect a visit, phone, or video call being live monitored.

5.11.4. System platform must incorporate technology to highlight recordings with notes, batch recordings for download, and allow investigators to share recordings through a time limited expiring link for download with a two-step verification feature.

5.11.5. Contractor shall retain all audio recordings from visit, phone, and video calls for three (3) years. Associated call records shall be retained for five (5) years. SDSD must be capable of "tagging" specific recordings and records for the life of the contract.

5.12. System shall have management reports showing call volume searchable by specified periods, summary of call types, call volume by total number of calls and total minutes utilized, and other reports capable of contributing to a needs analysis for additional resources.

5.13. The phone and video call system shall be compatible with the County of San Diego and SDSD's "No Cost Communication" call model for local and international phone calls.

# 6. SERVICE LEVEL AGREEMENT

6.1. Contractor shall provide Service Level Agreement (SLA) that supports 24/365 operational days for all cloud services used and overall composite SLA of the proposed application architecture. Requirement is at least 99.99% uptime. Provide history of instances when SLA was not met.

6.2. Security breach notification should occur as soon as detected and followed up with a detailed after-action report that includes root cause analysis, mitigation, and remediation information within seventy-two (72) hours of incident.

6.3. Contractor shall disclose any third-party services, partners, or vendors with direct or indirect access to data and/or metadata generated by the system, users, or both. Contractor shall disclose the relationship, nature, and purpose of any information shared, and any functional impact on the system.

6.4. System outage (& other technical incidents that impact system performance and/or availability) notifications should occur as soon as detected followed up with incident report including summary of impact, root cause analysis, mitigation, and remediation within seventy-two (72) hours of incident.

# 7. SYSTEM MAINTENANCE

7.1. Contractor shall be responsible for the full cost of maintenance, repair, installation, and replacement of all equipment necessary to provide the full service agreed upon.

7.1.1. Contractor shall have a 24/7/365 support number for system emergencies.

7.1.2. Contractor shall provide at least two full-time technicians within such proximity and equipped with enough inventory that minimal downtime be experienced before full service is restored.

7.1.2.1    Repairs shall commence within two hours of urgent calls.

7.1.2.2.    Contractor shall, in the event of emergencies, have the capability of bringing in additional technicians to restore the system to full service under this contract at no cost to the SDSD.

7.1.2.2.    Non-Emergency repairs shall be completed within two weeks from the time the request is made, unless otherwise specified by the primary SDSD contact.

7.2.    Contractor shall maintain a detailed register of all equipment breakdowns, including machine number/location, time breakdown discovered or reported, nature of failure, date/time of repair, and contractor cost of repair. This register shall be available to SDSD on request.

7.2.1.    A less detailed "maintenance ticket" tracking system shall be available, either within the administrative side of the platform or through shared document, for facility administrators to submit and track progress of maintenance and repair requests.

7.3.    All on-site technicians shall comply with SDSD background clearance requirements.

**Requirements:**
- Full background (Limited Security Clearance)
- NCIC records check
- Fingerprint/Livescan
- Complete CLETS/CORI training
- Pass CLETS first-level exam
- Sheriff visitor ID issued and escorted when on-site

7.4.    All on-site technicians performing install/maintenance/repair under this contract shall be trained technicians or licensed personnel, and shall be in compliance with all applicable local, state, and federal laws regulating service of process. All personnel must possess either a California Contractors C-7 or C-10 Contractors license, or a possess a California Voice Data Video Technician Certificate.

## 8. TRAINING & REPORTS

8.1.    Contractor agrees to provide SDSD with all training necessary to competently operate the system user interface.

8.2.    Contractor shall train SDSD to assist the incarcerated population with troubleshooting basic use of their phone and video calling terminals, as well as use of the tablet platforms.

8.3.    Contractor shall develop a system transition plan that incorporates all training mentioned above prior to the "go-live" date. Contractor shall provide on-site technical support and administrator training for a period of thirty (30) days after system activation. All such training shall be sufficient for SDSD personnel to train new users to the system.

8.4 An Implementation plan update will be issued to the Contracting Officer's Representative (COR) on a monthly basis.

# EXHIBIT 1 – STATEMENT OF WORK
## ATTACHMENT A-1:  FACILITY NAMES AND LOCATIONS

- San Diego Central Jail (SDCJ) (Booking Facility)

  1173 Front Street,
  San Diego, CA 92101
  Phone: (619) 615-2454        Fax: (619) 615-2450

- Las Colinas Detention & Reentry Facility (LCDRF) (Booking Facility)

  451 Riverview Parkway,
  Santee, CA 92071
  Phone: (619) 258-3200        Fax: (619) 258-3100

- Vista Detention Facility (VDF) (Booking Facility)

  325 S. Melrose Drive,
  Vista, CA 92081
  Phone: (760) 940-4473        Fax: (760) 940-4842

- George Bailey Detention Facility (GBDF)

  446 Alta Road, Ste. 5300
  San Diego, CA 92158
  Phone: (619) 661-2620        Fax: (619) 661-2611

- East Mesa Reentry Facility (EMRF)

  446 Alta Rd, Ste. 5200
  San Diego, CA  92158
  Phone: (619) 661-2608        Fax: (619) 661-2722

- Rock Mountain Detention Facility (not open yet)

  446 Alta Road, Suite 5400
  San Diego, CA 92158
  Phone: (619) 671-2299

- South Bay Detention Facility (SBDF)

  500 Third Avenue,
  Chula Vista, CA 91910
  Phone: (619) 591-4810        Fax: (619) 691-4445

SD_000404

# EXHIBIT B – INSURANCE REQUIREMENTS

**INSURANCE REQUIREMENTS FOR CONTRACTORS**

Without limiting Contractor's indemnification obligations to County, Contractor shall provide at its sole expense and maintain for the duration of this contract, or as may be further required herein, insurance against claims for injuries to persons or damages to property which may arise from or in connection with the performance of the work hereunder and the results of the work by the Contractor, his agents, representatives, employees or subcontractors.

**1. Minimum Scope of Insurance**

Coverage shall be at least as broad as:

A. Commercial General Liability, Occurrence form, Insurance Services Office form CG0001.

B. Automobile Liability covering all owned, non owned, hired auto Insurance Services Office form CA0001.

C. Workers' Compensation, as required by State of California and Employer's Liability Insurance.

D. Professional Liability (Errors & Omissions)

E. Cyber/Information Security Liability shall cover all of Contractor's employees, officials and agents. Coverage shall be sufficiently broad to respond to the duties and obligations as is undertaken by Contractor in this agreement and shall apply to any dishonest, fraudulent, malicious or criminal activities that affect, alter, copy, corrupt, delete, disrupt or destroy a computer system or to obtain financial benefit for any party; to steal, take or provide unauthorized access of either electronic or non-electronic data, including publicizing confidential electronic or non-electronic data; causing electronic or non-electronic confidential electronic data to be accessible to unauthorized persons; transfer of computer virus, Trojan horse, worms or any other type of malicious or damaging code; and for Third-Party Liability encompassing  judgments or settlement and defense costs arising out of litigation due to a data breach and data breach response costs for customer notification and credit monitoring service fees.

F. Fidelity coverage providing Employee Dishonesty, Forgery or Alteration, Theft, Disappearance, Destruction and Computer Fraud coverage covering Contractor's employees, officials and agents.

G. Property Insurance against all risk or special form perils, including Replacement Cost coverage, without deduction for depreciation, for Contractor's merchandise, fixtures owned by Contractor, any items identified in the Contract as improvements to the Premises constructed and owned by Contractor, and the personal property of Contractor, its agents and employees.

**2. Minimum Limits of Insurance**

Contractor shall maintain limits no less than:

A. Commercial General Liability including Premises, Operations, Products and Completed Operations, Contractual Liability, and Independent Contractors Liability: $2,000,000 per occurrence for bodily injury, personal injury and property damage. The General Aggregate limit shall be $4,000,000.

B. Automobile Liability: $1,000,000 each accident for bodily injury and property damage.

C. Employer's Liability: $1,000,000 each accident for bodily injury or disease. Coverage shall include waiver of subrogation endorsement in favor of County of San Diego.

D. Professional Liability (Errors & Omissions): $2,000,000 per claim with an aggregate limit of not less than $2,000,000. Coverage shall include contractual liability. This coverage shall be maintained for a minimum of three years following termination or completion of Contractor's work pursuant to the Contract.

E. Cyber Security Liability. $2,000,000 per claim with an aggregate limit of not less than $2,000,000.

F. Fidelity: $1,000,000.

G. Property: Full replacement cost of all real and personal property with no coinsurance penalty provision.

If the contractor maintains broader coverage and/or higher limits than the minimums shown above, the County requires and shall be entitled to the broader coverage and/or higher limits maintained by the Contractor. As a requirement of this contract, any available insurance proceeds in excess of the specified minimum limits and coverage stated above, shall also be available to the County of San Diego.

**3. Self-Insured Retentions**

Any self-insured retention must be declared to and approved by County Risk Management. At the option of the County, either: the insurer shall reduce or eliminate such self-insured retentions as respects the County, the members of the Board of Supervisors of the County and the officers, agents, employees and volunteers; or the Contractor shall provide a financial guarantee satisfactory to the County guaranteeing payment of losses and related investigations, claim administration, and defense expenses.

**4. Other Insurance Provisions**

The insurance policies are to contain, or be endorsed to contain, the following provisions:

    A.   Additional Insured Endorsement

          The County of San Diego, the members of the Board of Supervisors of the County and the officers, agents, employees and volunteers of the County, individually and collectively are to be covered as additional insureds on the General Liability policy with respect to liability arising out of work or operations performed by or on behalf of the Contractor including materials, parts, or equipment furnished in connection with such work or operations and automobiles owned, leased, hired or borrowed by or on behalf of the Contractor. General Liability coverage can be provided in the form of an endorsement to the Contractor's insurance (at least as broad as ISO from CG 2010 11 85 or **both** CG 2010, CG 2026, CG 2033, or CG 2038; **and** CG 2037 forms if later revisions used).

    B.   Primary Insurance Endorsement

          For any claims related to this Contract, Contractor's insurance coverage, including any excess liability policies, shall be primary insurance at least as broad as ISO CG 20 01 04 13 as respects the County, the members of the Board of Supervisors of the County and the officers, agents, employees and volunteers of the County, individually and collectively. Any insurance or self-insurance maintained by the County, its officers, employees, or volunteers shall be excess of the Contractor's insurance and shall not contribute with it.

    C.   Notice of Cancellation

          Each insurance policy required above shall state that coverage shall not be canceled, except with notice to the County.

    D.   Severability of Interest Clause

          Coverage applies separately to each insured, except with respect to the limits of liability, and that an act or omission by one of the named insureds shall not reduce or avoid coverage to the other named insureds.

## General Provisions

**5. Qualifying Insurers**

All required policies of insurance shall be issued by companies which have been approved to do business in the State of California by the State Department of Insurance, and which hold a current policy holder's alphabetic and financial size category rating of not less than A, VII according to the current Best's Key Rating guide, or a company of equal financial stability that is approved in writing by County Risk Management.

**6. Evidence of Insurance**

Prior to commencement of this Contract, but in no event later than the effective date of the Contract, Contractor shall furnish the County with a copy of the policy declaration and endorsement pages along with the certificates of insurance and amendatory endorsements effecting coverage required by this clause. Policy declaration and endorsement pages shall be included with renewal certificates and amendatory endorsements submissions and shall be furnished to County within thirty days of the expiration of the term of any required policy. Contractor shall permit County at all reasonable times to inspect any required policies of insurance.

**7. Failure to Obtain or Maintain Insurance; County's Remedies**

Contractor's failure to provide insurance specified or failure to furnish certificates of insurance and amendatory endorsements or failure to make premium payments required by such insurance shall constitute a material breach of the Contract, and County may, at its option, terminate the Contract for any such default by Contractor.

**8. No Limitation of Obligations**

The foregoing insurance requirements as to the types and limits of insurance coverage to be maintained by Contractor, and any approval of said insurance by the County are not intended to and shall not in any manner limit or qualify the liabilities and obligations otherwise assumed by Contractor pursuant to the Contract, including, but not limited to, the provisions concerning indemnification.

**9. Review of Coverage**

County retains the right at any time to review the coverage, form and amount of insurance required herein and may require Contractor to obtain insurance reasonably sufficient in coverage, form and amount to provide adequate protection against the kind and extent of risk which exists at the time a change in insurance is required.

**10. Self-Insurance**

Contractor may, with the prior <u>written</u> consent of County Risk Management, fulfill some or all of the insurance requirements contained in this Contract under a plan of self-insurance. Contractor shall only be permitted to utilize such self-insurance if in the opinion of County Risk Management, Contractor's (i) net worth, and (ii) reserves for payment of claims of liability against Contractor, are sufficient to adequately compensate for the lack of other insurance coverage required by this Contract. Contractor's utilization of self-insurance shall not in any way limit liabilities assumed by Contractor under the Contract.

**11. Claims Made Coverage**

If coverage is written on a "claims made" basis, the Certificate of Insurance shall clearly so state. In addition to the coverage requirements specified above, such policy shall provide that:

A.  The policy retroactive date coincides with or precedes Contractor's commencement of work under the Contract (including subsequent policies purchased as renewals or replacements).

B.  Contractor will make every effort to maintain similar insurance during the required extended period of coverage following expiration of the Contact.

C.  If insurance is terminated for any reason, Contractor shall purchase an extended reporting provision of at least three years to report claims arising in connection with the Contract.

D.  The policy allows for reporting of circumstances or incidents that might give rise to future claims.

**12. Subcontractors' Insurance**

Contractor shall require and verify that all subcontractors maintain insurance meeting all the requirements stated herein, and Contractor shall ensure that County is an additional insured on insurance required from subcontractors. Such Additional Insured endorsement shall be attached to the certificate of insurance in order to be valid and on a form at least as broad as ISO from CG 2010 11 85 or both CG 2010, CG 2026, CG 2033, or CG 2038; and CG 2037 forms if later revisions used. If any sub contractor's coverage does not comply with the foregoing provisions, Contractor shall defend and indemnify the County from any damage, loss, cost, or expense, including attorneys' fees, incurred by County as a result of subcontractor's failure to maintain required coverage.

**13. Waiver of Subrogation**

Contractor hereby grants to County a waiver of their rights of subrogation which any insurer of Contractor may acquire against County by virtue of the payment of any loss. Contractor agrees to obtain any endorsement that may be necessary to affect this waiver of subrogation. The Workers' Compensation policy shall be endorsed with a waiver of subrogation in favor of the County for all work performed by the Contractor, its employees, agents and subcontractors.

**Pricing and Local Preference Submittal Instructions**

<u>SECTION 1</u>

- Prices shall be fixed and inclusive of all taxes.
- There can be no charges of any kind to the Incarcerated Persons or their families
- Provide detailed pricing for all services and equipment that are required as part of the solution that you have proposed. This includes any fees charged to the county for release cards.
- Indicate where applicable if a cost is a one-time cost or a continuous cost.
- Provide pricing detail that clearly shows how you reached your final price.
- All first year start up costs shall be listed separately
- For all continuous costs, provide prices for the initial term of the contract and nine option years.
- All items listed and priced, need to be clearly identifiable and described or cross referenced with the RFP Evaluation and Submittal responses.


<u>SECTION 2</u>

**LOCAL PREFERENCE PRICING SCHEDULE**

☐ Offeror qualifies as a Preferred Vendor* (if checked, complete information below)

*By selecting Yes and submitting a Preferred Vendor Adjusted Price, Offeror represents that it qualifies as a Preferred Vendor as described in Section 405 of the San Diego Code of Administrative Ordinances and Section 3.7 of the RFP Instructions and Rules. To qualify as a Preferred Vendor, Offeror must be a Local Business that is also a Veteran Owned Business, Disabled Veteran Owned Business or Small Business. Offeror must document eligibility by satisfying both 1. and 2. below. Offeror must provide supporting documentation upon request of the County.

1. Local Business: Offeror maintains a headquarters or provides the same or similar services to those proposed from the following address(es) located within the geographic boundaries of San Diego County.
   ☐ Headquarters    ☐ Other location providing the same or similar services

   Address _____

   City_____ State_____ Zip _____

   <u>AND</u>

2. Offeror holds a current certification that qualifies it as a Veteran Owned Business, Disabled Veteran Owned Business or Small Business. Indicate certification(s) below.
   State of California Certifications:
   ☐ Small Business (SB) – Certificate # _____
   ☐ Micro Business (MB) – Certificate # _____
   ☐ Small Business for the Purpose of Public Works (SB-PW) – Certificate # _____
   ☐ Disabled Veteran Business Enterprise (DVBE) – Certificate # _____

   U.S. Department of Veterans Affairs Certifications:
   ☐ Veteran-Owned Small Business (VOSB) – Certificate # _____
   ☐ Service-Disabled Veteran-Owned Small Business (SDVOSB) – Certificate # _____

**Preferred Vendor Adjusted Price:**

| GRAND TOTAL (from Pricing Schedule): | PRICE ADJUSTMENT multiply Box 1 by 0.05 (if greater than $50,000, enter $50,000) | ADJUSTED PRICE subtract Box 2 from Box 1 |
|---|---|---|
| Box 1<br>$ _____ | Box 2<br>$ _____ | $ _____ |

County maintains the right to verify the calculation of the Adjusted Price. In the event of a mathematical error, the Grand Total from the pricing schedule shall prevail, and a corrected Price Adjustment shall be used.

# Exhibit V

Case 3:20-cv-00406-AJB-DDL    Document 458-2    Filed 11/30/23    PageID.17344
Page 265 of 285

Lieutenant Derek Williamson

Dunsmore vs.
San Diego County Sheriff's Office

1              UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF CALIFORNIA

3

   DARRYL DUNSMORE, ANDREE ANDRADE,
4  ERNEST ARCHULETA, JAMES CLARK,
   ANTHONY EDWARDS, LISA LANDERS,
5  REANNA LEVY, JOSUE LOPEZ,        Case No.:
   CHRISTOPHER NELSON, CHRISTOPHER 3:20-cv-00406-AJB-DDL
6  NORWOOD, JESSE OLIVARES, GUSTAVO
   SEPULVEDA, MICHAEL TAYLOR, and
7  LAURA ZOERNER, on behalf of
   themselves and all others
8  similarly situated,

9                   Plaintiffs,

10        vs.

11 SAN DIEGO COUNTY SHERIFF'S
   DEPARTMENT, COUNTY OF SAN DIEGO,
12 SAN DIEGO COUNTY PROBATION
   DEPARTMENT, and DOES 1 to
13 inclusive,

14                 Defendants.
   _____
15

16

17                 DEPOSITION OF

18          LIEUTENANT DEREK WILLIAMSON

19             SAN DIEGO, CALIFORNIA

20              MARCH 14, 2023

21

22

23

24 REPORTED BY:
   A. DESIREE TIPPER, CSR NO. 13806
25 JOB NO: 10116776

EX. V - 255

Dunsmore vs.
San Diego County Sheriff's Office

Lieutenant Derek Williamson

1    sign a contract with them.

2         Q    And when will you select a provider?

3         A    We have received input from a few providers on

4    some follow-up questions that we had.  Just to go back on

5    it, we received the six proposals.  We ended up going

6    through a demonstration process where we asked them to

7    show their ability to fulfill certain needs.  And then we

8    have issued them questions, received the feedback from

9    them, and the selection committee is in the last parts of

10   selecting who we believe would be the best option for us.

11   It's a county -- it's a government procurement process.

12            So what we try to do to them is to argue that

13   what we are selecting is the best value for the county.

14   While it might not be the cheapest of the proposals,

15   because that's just the bid, our goal is to select the

16   phone system that will give us the best adaptability and

17   room for growth over the next ten years for all of the

18   end users involved whether that be our staff members who

19   have to -- who we want to have more access to make the

20   schedules, modify the schedules, or are incarcerated

21   persons who are the end users on the communication side,

22   you know, communicating with their families, their loved

23   ones, or with the addition of tablets to our system

24   provide them, you know, other entertainment options, you

25   know, whether it be -- okay.

1    Go ahead.

2    Q    Totally understood.  There's multiple selection

3    criteria.  My question is when will you select a

4    provider?

5    A    Like I said, we issue questions, we get the

6    feedback, we've drafted what we would want to be our

7    final report, but county's department of purchasing and

8    contracts gets to review that, not -- I can't say for

9    certain when we will sign a contract with a new provider.

10   Q    So it could be this month?

11   A    It could be this month.

12   Q    Could be in June?

13   A    Could be in June.

14   Q    Could be next March?

15   A    Hopefully not.  So we are currently under a

16   contract extension with Securus that runs through August

17   of this year -- go ahead.

18   Q    But that's the not the first contract extension

19   with Securus, correct?

20   A    It is not the first contract extension with

21   Securus.

22   Q    What number is this?

23   A    I know there have been contract modifications

24   over the years, but I believe -- I believe this might be

25   the second extension.  I believe we did a one-year

EX. V - 257

Lieutenant Derek Williamson

Dunsmore vs.
San Diego County Sheriff's Office

1        A    Yes.

2        Q    Okay.  Can you describe those for us, please?

3        A    You know, we have demonstration criteria that we

4    ask them to adhere to.

5        Q    What were those?

6        A    I can't tell you 100 percent off the top of my

7    head what those were.  I believe those are posted on the

8    public website as part of follow-up to this RFP on -- by

9    net is where the RFPs got posted, but there were

10   questions that our data services, our IT personnel had

11   that they wanted contractors to either state or show that

12   they could fulfill.

13        You know, different members of the selection

14   committee had questions or other things that they wanted

15   them to demonstrate.

16        Q    Where did these live demonstrations take place?

17        A    On Microsoft Teams.

18        Q    Okay.  So you were on a Teams call with a

19   provider or a company that has submitted a proposal, and

20   they are showing you through Teams call how things are

21   going to work?

22        A    Yes.

23        Q    Okay.  What did any of those demonstrations show

24   you with respect to people with mobility disabilities?

25        A    Not certain whether it was, you know, one of

EX. V - 258

Lieutenant Derek Williamson

1    their earlier industry-day ones or during that product

2    demonstration.  Because everybody had certain things that

3    they were asked to show, and then some just showed that

4    plus a whole bunch of additional things.

5           But the advent of tablets is one of the things

6    that will greatly enhance our ability to provide to

7    people with mobility disabilities, vision impairments --

8    and communication options for those with hearing

9    impairments.

10   **Q     So with respect to people with mobility**

11   **disabilities and hearing disabilities, the solution is**

12   **tablets?**

13   A    It is just part of the solution.

14   **Q     What else was shown -- aside from tablets, what**

15   **else was shown during these live demonstrations?**

16   A    Some of the companies do have a -- I want to

17   call it a speech-to-text or a communication translator

18   that they have as -- that they partner with as part of

19   their service provider for hearing impairments, who could

20   translate the sign language similar to -- like a video

21   relay service.

22   **Q     Are those video relay services or speech-to-text**

23   **services that were offered in some of these proposals --**

24   **are those compliant with the ADA, to your knowledge?**

25   A    I would say yes.

1                    REPORTER'S CERTIFICATE

2

3              I, A. Desiree Tipper, a Certified Shorthand

4    Reporter No. 13806 in the State of California, do hereby

5    certify:

6                    That the foregoing proceedings were taken

7    before me at the time and place herein set forth; that

8    any witnesses in the foregoing proceedings, prior to

9    testifying, were placed under oath; that a verbatim

10   record of the proceedings was made by me using machine

11   shorthand which was thereafter transcribed under my

12   direction; further, that the foregoing is an accurate

13   transcription thereof.

14                   I further certify that I am neither

15   financially interested in the action nor a relative or

16   employee of any attorney of any of the parties.

17                   IN WITNESS WHEREOF, I have hereunto

18   subscribed my name this 23rd day of March, 2023.

19

20

21

22   _____

23                             A. Desiree Tipper
                               CSR No. 13806

24

25

Page 94

EX. V - 260

# Exhibit W



February 8, 2023

<u>VIA ELECTRONIC MAIL ONLY</u>

Susan E. Coleman
Elizabeth M. Pappy
BURKE, WILLIAMS & SORENSEN, LLP
scoleman@bwslaw.com
epappy@bwslaw.com

      Re:    *Dunsmore et al. v. San Diego County Sheriff's Department et al.*, S.D. Cal.
           No. 3:20-cv-00406-AJB-WVG
           <u>Our File No. 1730-01</u>

Dear Susan and Beth:

We write to request a streamlined process for Plaintiffs' counsel to speak with incarcerated people at the San Diego County Jail, as well as to ensure that Jail staff do not retaliate against people for filing grievances and/or participating in this lawsuit.

<u>Streamlining Jail Visits</u>

Plaintiffs' counsel have experienced numerous delays and obstacles to meeting with incarcerated people at the Jail. These include, but are not limited to:

- Having to wait multiple hours to visit with an incarcerated person, in part due to the Jail's practice of allowing only one professional visit at time per housing unit. Especially lengthy delays occur when another attorney is presently visiting a client from that housing unit and other attorneys are already waiting in line for the opportunity to meet with their clients from the same housing unit. Defendants must make available adequate confidential space for attorney-client and other professional meetings.

- Being told that Plaintiffs' counsel could not visit with an incarcerated person on the day counsel showed up because the backup in the visiting area was too long.

- Having to wait approximately eighty minutes to be released from a professional visit after the visit was completed, due to various delays asserted by custody staff.

- Being trapped for almost a half hour in the locked vestibule between the professional visiting area and the hallway leading to the elevators in Central Jail.

- Waiting approximately an hour to be let into the visiting room, while waiting in the hallway leading to the elevators in Central Jail.

- Jail staff refusing to permit Plaintiffs' counsel to visit with incarcerated people on the grounds that Plaintiffs' counsel is not the attorney of record in the incarcerated person's criminal case.

- Jail staff not communicating call back requests to incarcerated people or otherwise not allowing incarcerated people to call back during business hours.

These delays interfere with Plaintiffs' right to effective assistance of counsel under the United States and California constitutions. *See, generally*, Third Amended Complaint, Section VIII. Plaintiffs' counsel ask that Defendants remedy the above-identified obstacles to ensuring timely attorney visits.

The delays also waste party resources. At times, Plaintiffs' counsel travels from the Bay Area to meet with incarcerated people. When we experience substantial delays and cannot meet with everyone on our itinerary, we are forced to reschedule another costly trip to San Diego to complete our meetings. Even when travelling from other areas within San Diego, delays caused by Defendants' visiting policies and practices necessarily mean that counsel must bill time to waiting or returning another day. This is inefficient, and may ultimately result in a greater financial cost to Defendants than if there was a streamlined process.

We understand that attorneys from the San Diego County Public Defender Office can schedule meetings with incarcerated people using MS Teams, and that the Jail provides confidential meeting spaces for incarcerated people to attend these meetings. We request a similar process for this case, which will save considerable party resources. We also ask that we create a process whereby we can schedule in-person visits at the Jail to avoid lengthy delays. We are interested in other cost-saving ideas that you may have.

<u>Preventing Unlawful Retaliation</u>

It is unfortunately common in jail/prison litigation for incarcerated people to be retaliated against for complaining about something that happened in the jail or participating in a lawsuit challenging the institution's policies and practices.  *See Armstrong v. Newsom*, 475 F.Supp.3d 1038 (2020).

In this case, at least one individual has already experienced unlawful retaliation. In December 2022, we informed you by email about an incarcerated person's urgent need for a seizure helmet due to a progressive seizure disorder.  We understand that a nurse subsequently told this person that his appointment with an outside neurologist, originally scheduled for early January 2023, was postponed and/or cancelled because he had both filed grievances and spoken with attorneys who were "messing with" the Jail. Defendants in this case have an obligation to ensure such retaliation does not occur. Please ensure that all Jail staff are properly informed that it is illegal to retaliate against incarcerated people for filing a grievance and/or participating in the legal process.

Thank you for your attention to these matters.  We look forward to your response.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Van Swearingen*

By:   Van Swearingen

# Exhibit X

1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CYNDIE DENNY BOCK, as
     Administrator of the Estate of
11   Rodney Louis Bock, et al.,

12          Plaintiffs,              No. 2:11-cv-0536 MCE KJN

13          v.

14   COUNTY OF SUTTER, et al.,

15          Defendants.             ORDER
     _____/

16

17          Presently pending before the court are plaintiffs' motion to compel production of

18   documents and motion to compel an inspection of the Sutter County Jail.  (Dkt. Nos. 70, 72.)

19   The parties timely filed their joint statements regarding the motions to compel on April 25, 2013,

20   and May 2, 2013.  (Dkt. Nos. 73, 76.)[1]  At the hearing on the motions conducted on May 9, 2013,

21   Aaron Fischer and Lori Rifkin appeared on behalf of plaintiffs, and John Whitefleet appeared on

22

23          [1] However, the court notes that defendants filed several declarations after the respective
     deadlines for filing of the joint statements and supporting materials pursuant to Local Rule 251.
24   Although the court has considered all the materials submitted, the parties are advised that any
     supporting documentation, such as declarations, are required to be submitted at the same time as
25   the joint statement.  The parties are cautioned that future tardy submission of declarations or
     other supporting documentation may result in the striking of such materials or the imposition of
26   sanctions.

1

EX. X - 266

1   behalf of defendants.

2           After considering the parties' joint statements, supporting documentation, and oral

3   arguments, and for the reasons stated at the hearing, IT IS HEREBY ORDERED that:

4           1.  Plaintiffs' motions to compel (dkt. nos. 70, 72) are GRANTED IN PART

5   along the terms outlined in this order, and as stated in greater detail on the record at the hearing.

6           2.  Within fourteen (14) days of this order, defendant County of Sutter shall

7   produce all personnel and staff development files for defendants McElfresh, Crane, and Rai

8   pursuant to the parties' stipulated protective order.

9           3.  Within fourteen (14) days of this order, defendant County of Sutter shall

10  produce, pursuant to the terms of the parties' stipulated protective order, certain specific

11  personnel file documents for defendants officer Calapini and Dr. Barnett previously withheld by

12  the County of Sutter, in particular (a) for defendant Calapini, the Notice of Hearing and Notice of

13  Termination documents, dated April 4, April 23, May 3, May 21, and June 21, 2012, and (b) for

14  defendant Barnett, the written reprimand dated November 17, 2011.[2]

15

16          [2] For the reasons stated at the hearing, the court finds that these documents fall within the
    scope of discovery and are at least reasonably calculated to lead to the discovery of admissible
17  evidence.  Defendant Calapini's documented failure to follow policies or procedures regarding
    safety, such as conducting a fire drill, and then purportedly lying about it, are relevant, because it
18  at least arguably makes it more likely that Calapini also failed to follow the jail's safety policies
    regarding mentally ill inmates when he was supervising Mr. Bock.  Even though the fire drill
19  incident may not have occurred at the same time as Mr. Bock's death, it bears on the question of
    defendant Calapini's performance of safety-related duties.  Similarly, given that plaintiffs have
20  alleged that defendant Dr. Barnett had improperly discharged Mr. Bock and authorized his
    transfer to Sutter County Jail where he later died (Fourth Amended Complaint, Dkt. No. 56, ¶¶
21  84-90), Dr. Barnett's written reprimand regarding deficiencies in completing admission and
    discharge documentation may bear on whether Dr. Barnett had a pattern of failing to timely
22  and/or properly complete such documentation, with potential consequences to his patients.
            The court also overrules defendants' objections as to confidentiality and privacy, because
23  such concerns are adequately addressed by the parties' stipulated protective order.
            Finally, the court rejects defendants' claim that the Calapini documents may be withheld
24  pursuant to California Penal Code section 832.7(a).  This court is not bound by a California state
    law privilege, because in a federal action "[w]here there are federal question claims and pendent
25  state law claims present, the federal law of privilege applies."  Agster v. Maricopa County, 422
    F.3d 836, 839 (9th Cir. 2005); see also Jackson v. County of Sacramento, 175 F.R.D. 653, 654
26  (E.D. Cal. 1997) (referencing Cal. Penal Code §§ 832 et seq. and stating that "[d]espite

2

EX. X - 267

4.  Within fourteen (14) days of this order, defendant County of Sutter shall conduct a reasonable and diligent search, in appropriate county departments or divisions, for documents that the County of Sutter submitted to or received from the Department of Justice and/or the Sutter County District Attorney related to the death of Rodney Bock, to the extent that such documents are in the possession, custody, or control of the County of Sutter.  Within fourteen (14) days of this order, defendant County of Sutter shall also serve on plaintiffs an appropriate declaration stating that such a search was conducted, and produce any responsive documents, along with a privilege log for any withheld documents.

5.  Within fourteen (14) days of this order, defendant County of Sutter shall conduct a reasonable and diligent search for, and produce, certain documents identified during deposition testimony and outlined in the parties' joint statement, in particular the "progress note" prepared by Sutter County Jail nurse Nikole Perian and the "training book" identified by Sutter County Jail correctional officer Khushwant Randhawa.  If defendant County of Sutter is unable to locate these documents, it shall make a reasonable and diligent inquiry regarding the timing and circumstances of the documents' loss or destruction, and serve on plaintiffs a declaration setting forth the timing and circumstances of the documents' loss or destruction, to the extent it can be ascertained in good faith, within fourteen (14) days of this order.

6.  Within 45 days of this order, defendant County of Sutter shall produce all responsive electronic documents (including e-mails and other electronic files), identified by conducting a search with the term "Bock," located on the County of Sutter's system-wide servers, as well as the local hard drives and other County-issued devices of the named defendants

---

defendant's repeated assertions to the contrary, the law of California, the forum state, does not inform federal privilege law."); Herring v. Clark, 2011 WL 2433672, at *5 (E.D. Cal. Jun. 14, 2011) (unpublished) ("In federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege...Accordingly, arguments that rely on application of California state law [referring *inter alia* to Cal. Penal Code § 832.7] are disregarded.").  Defendants have not claimed or argued that production of the requested documents is prohibited by a specific federal privilege.

EX. X - 268

1   and other custodians listed on page 2 of plaintiffs' counsel's March 22, 2013 meet-and-confer

2   letter.  (See Dkt. No. 73-1, Ex. P.)  Along with the production, defendants' counsel shall provide

3   a privilege log for any withheld privileged documents, except that defendants' counsel need not

4   identify any withheld privileged documents where defendants' counsel is the sender or direct

5   recipient of the communication (as opposed to merely being copied on the correspondence).

6   Along with the production, defendants' counsel shall also provide a short description of the

7   electronic search process conducted, identifying custodians, servers or devices searched, and any

8   special categories of documents that were excluded from the search or production.

9          7.  Plaintiffs' counsel and their experts shall be permitted to conduct an inspection

10  of the Sutter County Jail on May 30, 2013, or any other date agreed to by the parties, for a

11  reasonable period of time along the principles discussed on the record at the hearing.  Defendant

12  County of Sutter shall make a person(s) available to answer any routine questions regarding the

13  general operations of the jail to assist plaintiffs' experts with understanding their observations

14  during the inspection.  Defendant County of Sutter shall also endeavor to continue normal

15  operations of the jail as much as is reasonably possible during the inspection, allowing plaintiffs'

16  counsel and experts to observe jail operations in the ordinary course of business, but making

17  allowance for any appropriate restrictions or modifications necessitated by good faith security

18  concerns of the jail and jail staff.  Defendant County of Sutter may require plaintiffs' counsel and

19  experts to sign standard releases ordinarily required to be executed by other visitors touring the

20  jail.

21         8.  Plaintiffs' request for sanctions is denied without prejudice.  The parties are

22  cautioned that future failure to reasonably meet and confer regarding discovery, dilatory conduct,

23  or other discovery abuse by any party may result in the imposition of appropriate sanctions.

24  ////

25  ////

26  ////

4

EX. X - 269

1          9.  The parties remain free to stipulate to extensions of the above deadlines, as

2  appropriate, or to agree to a stay of all or some discovery pending the settlement conference.

3          IT IS SO ORDERED.

4  DATED:  May 13, 2013

5

6                                    _____

7                                    KENDALL J. NEWMAN
                                     UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EX. X - 270

# Exhibit Y

Sergeant Matthew Jensen

Dunsmore vs.
San Dirgo County Sheriff's Office

```
 1              UNITED STATES DISTRICT COURT

 2            SOUTHERN DISTRICT OF CALIFORNIA

 3
      DARRYL DUNSMORE, ANDREE ANDRADE,
 4    ERNEST ARCHULETA, JAMES CLARK,
      ANTHONY EDWARDS, LISA LANDERS,
 5    REANNA LEVY, JOSUE LOPEZ,        Case No.:
      CHRISTOPHER NELSON, CHRISTOPHER 3:20-cv-00406-AJB-DDL
 6    NORWOOD, JESSE OLIVARES, GUSTAVO
      SEPULVEDA, MICHAEL TAYLOR, and
 7    LAURA ZOERNER, on behalf of
      themselves and all others
 8    similarly situated,

 9                     Plaintiffs,

10         vs.

11    SAN DIEGO COUNTY SHERIFF'S
      DEPARTMENT, COUNTY OF SAN DIEGO,
12    SAN DIEGO COUNTY PROBATION
      DEPARTMENT, and DOES 1 to
13    inclusive,

14                   Defendants.
      _____
15

16

17                  DEPOSITION OF

18             SERGEANT MATTHEW JENSEN

19               SAN DIEGO, CALIFORNIA

20                 MARCH 14, 2023

21

22

23

24    REPORTED BY:
      A. DESIREE TIPPER, CSR NO. 13806
25    JOB NO: 10116488
```

EX. Y - 272

1    A    Not like a timeline requirement, no, not that

2  says, like, "now."  It's just like, I'll take you down

3  when other tasks are completed.  Or if I can take you

4  down, then, cool.

5    **Q    So if a person -- first, you talk to the person,**

6  **figure out that they maybe can't speak or can't hear, and**

7  **then you search in JIMS to see if they have the deaf or**

8  **hard-of-hearing flag; is that right?**

9    A    Yeah, I'll take a look inside of there.

10 Sometimes it's just known because I know you from before.

11   **Q    How do you access JIMS to do that?  Is it**

12 **printed out or --**

13   A    No.  You just log into the computer in JIMS.

14   **Q    So you'll go to the computer.  And what do you**

15 **search to figure out if a person --**

16   A    We have an operation status board with the

17 individuals' names.  And you just click on their name and

18 it pops up a with, like, a snapshot of hazards and

19 instructions and some other click-downs.

20   **Q    So you click on the person's name?**

21   A    You can click on the person's name.

22   **Q    Could you search "deaf"?**

23   A    Not inside, like, the JIMS system.  You can't be

24 like "deaf" and everything pops up.  It would be on the

25 person's -- so if you're in JIMS, it would pop up in

EX. Y - 273

Sergeant Matthew Jensen

1   there.  I would click your name, and then your hazards

2   are there.

3       Q    I see.  So you can't run a report?  If you're a

4   deputy who is new to a floor and you want to know who is

5   deaf, could you run a report to see who that is?

6       A    There is a hazard report you can run in JIMS.

7   But if when you're on my floor, you're in my floor.

8   There's no point.  Because I can just click your name and

9   it will tell me the hazard right there.

10      Q    You can run a hazards report?

11      A    There is a hazard report.  But, like I said, if

12  you're coming up to me and you say "John Smith," well, I

13  have John Smith in my operation status board.  I can

14  click your name, and it will give me the hazards and

15  instructions for it.

16      Q    And how does that instruction appear?

17      A    It's a drop-down.  It says "hazard instruction."

18  You click a button, and it pops up with any hazards you

19  have or instructions.

20      Q    So when a deputy or -- who enters the hazard

21  instruction?

22      A    The classification, medical can add stuff in

23  there.

24      Q    And is it from a drop-down that they're

25  selecting?

EX. Y - 274

```
 1                    REPORTER'S CERTIFICATE

 2

 3            I, A. Desiree Tipper, a Certified Shorthand

 4   Reporter No. 13806 in the State of California, do hereby

 5   certify:

 6                 That the foregoing proceedings were taken

 7   before me at the time and place herein set forth; that

 8   any witnesses in the foregoing proceedings, prior to

 9   testifying, were placed under oath; that a verbatim

10   record of the proceedings was made by me using machine

11   shorthand which was thereafter transcribed under my

12   direction; further, that the foregoing is an accurate

13   transcription thereof.

14                 I further certify that I am neither

15   financially interested in the action nor a relative or

16   employee of any attorney of any of the parties.

17                 IN WITNESS WHEREOF, I have hereunto

18   subscribed my name this 19th day of March, 2023.

19

20

21

22         _____

23                      A. Desiree Tipper
                         CSR No. 13806

24

25
```

EX. Y - 275