UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, et al.,<br><br>　　　　　　　Defendants. | Case No.:  20-cv-406-AJB-DDL<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF CIRB REPORTS**<br><br>**[Dkt. No. 412]** |

**I.**

**INTRODUCTION**

Plaintiffs move to compel production of 25 reports of the San Diego Sheriff's Department's Critical Incident Review Board (the "CIRB") pertaining to inmates who died in Sheriff's Department custody between January 1, 2021 and the present.  The County of San Diego ("County") argues the CIRB Reports are protected from disclosure by the attorney-client privilege, the work product doctrine and the official information privilege.

Having considered the parties arguments and conducted an *in camera* review of the CIRB Reports, the Court finds the County has not met its burden to establish the privileges it invokes apply to the CIRB Reports in their entirety.

However, the Court will allow the County to submit proposed redactions to the portions of the CIRB Reports that reflect communications with the County's Chief Legal Advisor consistent with the Court's prior rulings on this issue in other cases.

## II.
## FACTUAL BACKGROUND

### A. Plaintiffs' Allegations

Plaintiffs are a certified class of individuals "who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities." Dkt. No. 435 at 10. Their Third Amended Complaint asserts multiple causes of action under 42 U.S.C. § 1983 against the County of San Diego and other defendants seeking declaratory and injunctive relief to "remedy the dangerous, discriminatory, and unconstitutional conditions in the Jail." Dkt. No. 231, ¶ 4.

### B. Critical Incident Review Board

San Diego Sheriff's Department Policy and Procedure Manual Section 4.23 ("Section 4.23") describes the CIRB's purpose and procedures:

> The purpose of [the CIRB] is to consult with department legal counsel when an incident occurs which may give rise to litigation. The focus of the CIRB will be to assess the department's civil exposure because of a given incident. The CIRB will carefully review those incidents from multiple perspectives, including training, tactics, policies, and procedures with the goal of identifying problem areas and recommending remedial actions so that potential liability can be avoided in the future.

Dkt. No. 420-1 at 15.[1] Section 4.23 requires the CIRB to review all "critical

---

[1] The Court draws the facts regarding the CIRB process from the declaration of Sheriff's Department Director of Legal Affairs and Chief Legal Advisor Michael Baranic, which includes Section 4.23. Dkt No. 420-1. The Court also draws from Baranic's testimony on April 24, 2023, in *Morton v. Cnty. of San Diego, et al.*, 21-

incidents," which include "[i]n custody death[s]." *Id.* at 16.

The CIRB consists of three voting members and two non-voting members. *Id*. at 15. The three voting members include Sheriff's Department Commanders from the Law Enforcement, Court Services, and Detention Services Divisions. *Id*. The two non-voting members are the Sheriff's Department Chief Legal Advisor and a Commander from Human Resources. *Id*.

Following an in-custody death, the Sheriff's Department's Homicide Unit conducts an investigation. Baranic Trans. at 28:7-9. In preparation for the CIRB meeting, Sheriff's Department personnel prepare a PowerPoint presentation summarizing the incident and the investigation. Baranic Trans. at 26:23-27:2; 108:20-23.

The CIRB's review consists of both a "presentation session" and a "closed session." Dkt. No. 420-1 at 6-7; Baranic Trans. at 16:19-17:4. At the presentation session, "the investigators involved in the investigation of the critical incident will present facts and circumstances to the members of the CIRB." Dkt. No. 420-1 at 16. CIRB members may question the investigators "regarding the specific facts and circumstances surrounding the critical incident." *Id*. Baranic testified the presentation session "is where the information is presented to the board members, and we have the opportunity to ask questions of either the affected command or

---

cv-1428-MMA-DDL, Dkt. No. 79 ("Baranic Trans."), regarding the CIRB process and functions. Baranic states the version of Section 4.23 attached to his declaration in this case "was in effect in 2020 and 2021." Dkt. No. 420-1 at 4. In *Morton*, Baranic submitted a different version of Section 4.23 as the policy in effect in 2020 and 2021. *Morton*, Dkt. No. 58-1 at 3 and 13-24. The two versions are similar in structure and substance but are not identical. *Compare* Dkt. No. 420-1 at 16 (CIRB reviews each "[i]n custody death") *with Morton*, Dkt. No. 58-1 at 15 (CIRB reviews each "[i]n custody death, other than natural causes"). It appears the version of Section 4.23 submitted in this case is the version currently in effect and accessible on the Sheriff's Department website. Regardless, the differences between these two versions of Section 4.23 do not affect the Court's analysis.

subject matter experts." Baranic Trans. at 16:25-17:3.[2]

Following the presentation session, the CIRB meets in closed session. Only the five CIRB members and a Division of Inspectional Services Lieutenant acting as the "scribe" are present at the closed session. *Id.* at 78:14. As stated in Section 4.23, "[a]fter hearing from all necessary parties, the three voting Commanders will vote to make a determination as to whether or not a policy violation may exist." Dkt. No. 420-1 at 17. If a majority of the three voting Commanders determine a policy violation may have occurred, the case is referred to Internal Affairs for further investigation. *Id*. If the majority does not find a potential policy violation, "the CIRB case will be forwarded to the DIS Lieutenant for the generation of a report, consistent with the Board's findings, at the conclusion of the CIRB." *Id*.

Section 4.23 identifies two post-CIRB meeting requirements. First, for critical incidents involving a Sheriff's Department employee, the employee's Facility or Unit Commander must "meet with the employee and provide them with any feedback generated as a result of the CIRB presentation" review within seven days of the CIRB meeting. *Id*. Second, within 45 days of the CIRB review, the Department of Inspectional Services must "prepare a report summarizing the actions and conclusions of the board." *Id*. The report "shall contain specific findings regarding whether the review board found any policy violations, and training or policy issues, as well as what actions were taken by the department." *Id*. The Lieutenant who served as the "scribe" prepares the CIRB Report. Baranic Trans. at 78:14. Baranic testified the CIRB Report may contain action items. *Id.* at 112:4-13. Under Section 4.23, the CIRB may also make "recommendations for

---

[2] *Greer v. Cnty. of San Diego*, 634 F. Supp. 3d 911 (S.D. Cal. 2022), describes the CIRB meeting as occurring in three stages, with a second stage involving a discussion between the CIRB members and Sheriff's Department subject matter experts. *Id*. at 915. The record in this case does not include information about that second stage, but that does not affect the Court's analysis.

training based on the analysis of critical incidents" as well as "proposed policy recommendations" if it identifies "policy issues of concern while reviewing a critical incident." Dkt. No. 420-1 at 17.  In addition to these requirements, Baranic testified that, in the days following the CIRB review, he "tend[s] to have a standing meeting with the Sheriff and Undersheriff, and I will brief them on the CIRBs."  Baranic Trans. at 112:1-3.

In February 2022, the California State Auditor issued a report regarding inmate deaths in San Diego County Jails.  *See* https://www.auditor.ca.gov/pdfs/reports/2021-109.pdf (last accessed December 10, 2023).  The report included a response from the San Diego County Sheriff's Department that includes the following regarding the CIRB:

> As items of concern are identified during a critical incident, such as an in-custody death, the CIRB reviews focus with an eye toward what changes have already been implemented by the chain of command to remedy any deficiencies before the matter admitted to the CIRB for review, as well as any changes the chain of command may not have already identified and/or implemented to minimize the risk of a reoccurrence.
>
> If the CIRB identifies any best practices or changes not previously identified and implemented by the change [sic] of command prior to this review, the CIRB is empowered to make such recommendations.

*Id.* at 103.  Baranic testified this is "a purpose of CIRB but not the primary purpose of CIRB."  Baranic Trans. at 76:1-2.

/ / /
/ / /
/ / /
/ / /
/ / /

## III.

## DISCUSSION

Plaintiffs seek disclosure of 25 CIRB Reports pertaining to in-custody deaths at San Diego County jails from January 1, 2021 to the present in response to their Request for Production No. 81. Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The County does not contest that the CIRB Reports are relevant but contends they are protected from discovery by the attorney-client privilege, the work product doctrine and the official information privilege. The Court addresses each contention in turn.

### A.  Attorney-Client Privilege

#### 1.  General Principles

Federal law applies to assertions of privilege in this federal civil rights action. *See United States v. Zolin*, 491 U.S. 554, 562 (1989). "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id*. "However, since the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose" and "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).[3]

---

[3]  All citations are omitted unless otherwise noted.

The privilege "protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021). The elements of the privilege are:

> (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.

*Martin*, 278 F.3d at 999. "The burden is on the party asserting the privilege to establish all the elements of the privilege." *Id*. at 999-1000.

There is no dispute the County may invoke the attorney-client privilege for confidential communications between Sheriff's Department counsel and Sheriff's Department personnel so long as the County establishes that the communications meet the foregoing elements for privileged communications. *See In re Cnty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) ("In civil suits between private litigants and government agencies, the attorney-client privilege protects most confidential communications between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance."). This is because "[a]ccess to legal advice by officials responsible for formulating, implementing and monitoring governmental policy is fundamental to promot[ing] broader public interests in the observance of law and administration of justice." *Id*. at 419.[4]

### 2. Prior Rulings

At the outset, the Court acknowledges that multiple judges in this District (including the undersigned) have considered the application of the attorney-client

---

[4] Having reviewed the parties' supplemental briefing on the application of Senate Bill 519 (Dkt. Nos. 428, 431), the Court concludes this new law does not affect the County's ability to assert the attorney-client privilege with respect to the CIRB Reports.

to CIRB Reports. In *Bush v. Cnty. of San Diego*, No. 15-cv-686-L-JMA, Dkt. No. 22 (S.D. Cal. Nov. 24, 2015), the court declined to compel production of a CIRB Report based on a declaration from then-Sheriff's Department Chief Legal Advisor Robert Faigin stating the Report "is a confidential communication involving the County's employees and Faigin, in his capacity as a legal advisor, and was prepared for the purpose of obtaining legal advice related to the subject incident." *Id*. at 8. Similarly, in *Estate of Ruben Nunez v. Cnty. of San Diego*, No. 16-cv-1412-BEN-MDD, Dkt. No. 186 (S.D. Cal. Sept. 11, 2017), the court declined to compel production of a CIRB Report based on a declaration from Faigin stating that "the purpose of the [CIRB] meeting was to obtain legal advice in advance of potential litigation." *Id*. at 3.

More recently, the *Greer* court applied the "primary purpose" test adopted by the Ninth Circuit in *In re Grand Jury* to CIRB investigations. *See Greer*, 634 F. Supp. 3d. at 919-21. The *Greer* court conducted a detailed analysis of Section 4.23 and concluded "the objective evidence before the Court establishes the CIRB's primary purpose is investigative and remedial (activities generally not protected by the attorney-client privilege), and the County has not carried its burden of establishing the primary purpose of the twelve CIRB investigations at issue was obtaining legal advice." *Id*. at 921. The District Judge affirmed that ruling and thereafter conducted an *in camera* review of the CIRB Reports at issue. Following the *in camera* review, the District Judge affirmed the prior ruling that the CIRB Reports were not privileged. *See* Dkt. No. 61-1 at 59 (transcript of February 8, 2023 hearing in *Greer* in which the District Judge concluded "the CIRB memoranda reports and documents are not privileged because their primary purpose is to determine training issues and recommend remedial measures in response to serious incidents that occur within the County jails, as opposed to giving or seeking legal advice from or by the chief legal officer").

/ / /

In *Morton*, this Court concluded that the County had not carried its burden to establish that the primary purpose of all the communications at the CIRB meeting pertaining to the decedent was to seek or provide legal advice so as to render the entire CIRB Report privileged but that limited portions of the CIRB Report were properly redacted prior to the Report's disclosure to the plaintiffs. *Morton v. Cnty. of San Diego*, 21-cv-1428-MMA-DDL, 2023 WL 4243239, at *6 (S.D. Cal. June 27, 2023). Thereafter, the Court ordered the County to produce 19 CIRB Reports pertaining to in-custody suicides. *Id.*, Dkt. No. 144. The District Judge overruled the County's objections to both orders. *Id.*, Dkt. Nos. 131, 169.

Finally, in *Estate of Serna v. Cnty. of San Diego*, No. 20-cv-2096-LAB-DDL, 2023 WL 7477321 (S.D. Cal. Aug. 30, 2023), the Court granted the plaintiffs' motion to compel production of 33 CIRB Reports for in-custody deaths from 2015 to 2019. The District Judge denied the County's application to stay this Court's order, and the County's objection to that order is pending.

### 3. Application to the Present Dispute

Against this backdrop, the Court turns to the CIRB Reports at issue in this case. To justify its assertion of the attorney-client privilege as to the entirety of all 25 CIRB Reports, the County bears the burden to establish that each Report memorializes confidential communications between attorney and client that were "made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th at 1091; *see also Chrimar Sys. Inc. v. Cisco Sys. Inc.*, No. 13-CV-01300-JSW(MEJ), 2016 WL 1595785, at *3 (N.D. Cal. Apr. 21, 2016) (attorney-client privilege extends to document that "memorializes and reflects legal advice rendered in a privileged conversation"). Given that the County asserts the privilege as to the entirety of each Report, the County must show that the primary purpose of the communications in each Report was to seek or give legal advice. *In re Grand Jury*, 23 F.4th at 1094. The County has not met its burden.

///

The County points out the stated purpose of the CIRB is to "consult with department legal counsel when an incident occurs which may give rise to litigation" and "assess the department's civil exposure because of a given incident." Dkt. No. 420-1 at 15.  At the evidentiary hearing, Baranic testified the "sole purpose" of the CIRB is to examine critical incidents "from a liability standpoint." Baranic Trans. at 83:24-25.  He further testified that he CIRB Report is generated "to memorialize the discussions and [] any legal advice that was given during the CIRB process." *Id.* at 90:8-9.

"Where the communication was made for dual-purposes, courts must determine 'whether the primary purpose of the communication is to give or receive legal advice, as opposed to business . . . advice.'" *Greer,* 634 F. Supp. 3d at 917-18 (citing *In re Grand Jury*, 23 F.4th at 1091). In determining whether the CIRB Reports memorialize communications "made for the purpose of giving legal advice," *In re Grand Jury*, 23 F.4th at 1091, the Court begins with the provisions of Section 4.23 that govern the CIRB process.  As noted above, at the presentation session, "the investigators involved in the investigation of the critical incident will present facts and circumstances to the members of the CIRB."  Dkt. No. 420-1 at 16.  Thereafter, the five CIRB members meet in closed session where "the three voting Commanders will vote to make a determination as to whether or not a policy violation may exist."  *Id.* at 17.  In addition, the CIRB may make training recommendations and "proposed policy recommendations."  *Id.*  Finally, Section 4.23 requires the preparation of a CIRB Report that "shall contain specific findings regarding whether the review board found any policy violations, and training or policy issues, as well as what actions were taken by the department."  *Id*.

The requirements established by Section 4.23 – that the CIRB vote on the existence of policy violations, make findings as to any policy violations and "training or policy issues" and describe actions taken – exist independent of any legal advice that may be provided by the Chief Legal Advisor, who serves as a non-voting CIRB

member. Stated another way, the CIRB could fulfill its duties under Section 4.23 to vote on policy violations and address training or policy issues absent any legal advice from the Chief Legal Advisor. *See Fisher*, 425 U.S. at 403 (privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege"); *Wisk Aero LLC v. Archer Aviation, Inc.*, No. 21-cv-2450-WHO (DMR), 2023 WL 2699971, at *4 (N.D. Cal. March 29, 2023) ("no privilege can attach to any communication as to which a business purpose would have served as a sufficient cause, *i.e.*, any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice"). That legal advice from the Chief Legal Advisor is not necessary for the CIRB to fulfill these duties significantly undermines the County's position that the Reports *in toto* are privileged, and weighs against a finding that the primary purpose of the CIRB meetings is to "give or receive legal advice." *In re Grand Jury*, 23 F.4th at 1091.[5]

The Court's *in camera* review of the 25 CIRB Reports further supports the conclusion that the primary purpose of the communications at the CIRB meetings was not to seek or receive legal advice such that the attorney-client privilege protects the entirety of each Report from disclosure. *See United States v. Chevron Corp.*, No. C 94-1885 SBA, 1996 WL 444597, at *2 (N.D. Cal. May 30, 1996) ("The

---

[5] The County, relying on D.C. Circuit authority, asserts the Court should consider whether giving or receiving legal advice was "*a* primary purpose" of the CIRB meetings, rather than "*the* primary purpose." *See* Dkt. No. 420 at 8 (citing *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014)) (emphasis added). As the County acknowledges, the Ninth Circuit considered the *Kellogg* standard, but has thus far declined to adopt it. *See In re Grand Jury*, 23 F.4th at 1094 (finding the adoption of *Kellogg*'s reasoning "unnecessary" on the facts of the case and noting that no other circuit "ha[s] openly embraced" it). Regardless, even if "a primary purpose" were the applicable standard here, the Court's conclusion that the CIRB Reports are not exempt from disclosure in their entirety and must be produced with targeted redactions would remain unchanged.

court may conduct an *in camera* review of withheld documents to allow the client to demonstrate to the court that the attorney-client privilege applies to segregable portions of the withheld documents."). Certain of the CIRB Reports contain questions and statements by then-Chief Legal Advisor Robert Faigin. However, it is not apparent from the CIRB Reports themselves that these questions or statements constitute legal advice, and the County has not asserted that specific portions of the CIRB Reports contain legal advice. To be sure, the privilege applies to confidential "communications relating to" the seeking of legal advice, *Martin*, 278 F.3d at 999, which may include communications made by the client and communications made by the attorney that do not constitute legal advice *per se*. But the absence of readily identifiable legal advice contained in the CIRB Reports is nevertheless relevant to the Court's assessment of whether the primary purpose of the communications was to give or receive legal advice.

  The Court credits Baranic's testimony that, from his perspective as the Chief Legal Advisor, his role in the CIRB is to provide legal advice. But the issue presented is whether the *primary* purpose of the communications at the CIRB meetings was to provide legal advice such that the 25 CIRB Reports are protected in their entirety by the attorney-client privilege. *In re Grand Jury*, 23 F.4th at 1091. As the Second Circuit explained, "[t]he predominant purpose of a communication cannot be ascertained by quantification or classification of one passage or another," but "should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer." *In re Cnty. of Erie*, 473 F.3d at 420-21. Here, the rendering of legal advice is not necessary for the CIRB to fulfill the requirements of Section 4.23, and the CIRB Reports do not, on their face, contain legal advice provided by the Chief Legal Advisor. On this record, the County has not carried its burden to establish that the primary purpose of the communications at the CIRB meetings was to seek

or provide legal advice. As such, the Court concludes the attorney-client privilege does not apply to the entirety of each CIRB Report at issue.

"[R]edaction is available for documents which contain legal advice that is incidental to the nonlegal advice that is the predominant purpose of the communication." *Id*. at 421; *see also Chevron Corp.*, 1996 WL 444597, at *2 ("[D]espite the overall nature of the document, the client may assert the attorney-client privilege over isolated sentences or paragraphs within a document."). The County asserts that redactions to the CIRB Report are appropriate if the Court were to conclude the attorney-client privilege does not apply to the Reports in their entirety. Dkt. No. 420 at 11. As set forth below, the Court will provide the County with an opportunity to propose redactions to the CIRB Reports consistent with this Order.

### B. Work Product Doctrine

#### 1. General Principles

"The work-product doctrine is a qualified privilege that protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case, and protects both material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* The doctrine "upholds the fairness of the adversarial process by allowing litigators to creatively develop legal theories and strategies – without their adversaries invoking the discovery process to pry into the litigators' minds and free-ride off them." *In re Grand Jury*, 23 F.4th at 1093; *see also* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . ."). / / /

"In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the 'because of' test is used." *United States v. Richey*, 632 F.3d 559, 567–68 (9th Cir. 2011). "In applying the 'because of' standard, courts must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *Id*. "The party asserting work product protection has the burden to demonstrate it applies to the information in question." *Greer*, 634 F. Supp. 3d at 918.

## 2. Application to the Present Dispute

The work product doctrine applies if the County establishes that each of the 25 CIRB Reports "would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 568. Here, however, Section 4.23 requires the CIRB to review all "critical incidents," which include "[i]n custody deaths." Dkt. No. 420-1 at 16. Section 4.23 applies to all "critical incidents" regardless of whether the County has received notice of litigation arising from the incident at issue. Baranic Trans. at 22:25-23:15. The Court therefore concludes the County has not met this burden because Section 4.23 mandates the CIRB review process for all critical incidents whether or not litigation is anticipated. *See Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987) ("Since police departments are under an affirmative duty, in the normal course of serving their public function, to generate the kind of information at issue here, the policies that inspire the work product doctrine are wholly inapplicable."); *Martin v. Evans*, No. C 08-4067 JW MEJ, 2012 WL 1894219, at *5 (N.D. Cal. May 23, 2012) (overruling work-product objection to production of prison internal affairs reports where prison "fails to demonstrate how the reports were generated primarily for use in litigation or collected outside the regular course of business"); *Greer*, 634 F. Supp. 3d at

/ / /

921-22 (finding County did not establish work product doctrine applied to CIRB reports).

C.  **Official Information Privilege**

"Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir.1990). "In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995). This balancing approach is "moderately pre-weighted in favor of disclosure." *Id.* The County bears the burden of establishing the official information privilege applies. *Shiflett by and through Davenport v. City of San Leandro*, No. 21-cv-7802-LB, 2023 WL 4551077, at *2 (N. D. Cal. July 13, 2023).

The party asserting the privilege must make a "substantial threshold showing." *Soto*, 162 F.R.D. at 613. "[T]o fulfill the threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." *Id.* The affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

*Id.* "If the nondisclosing party does not meet this initial burden, the court will order disclosure of the documents; if the party meets this burden, the court generally

conducts an *in camera* review of the material and balances each party's interests." *Rogers v. Giurbino*, 288 F.R.D. 469, 481 (S.D. Cal. 2012) (overruling privilege claim where defendant did not submit appropriate declaration).

The County asserts that Baranic's declaration makes the requisite "substantial threshold showing." Dkt. No. 420 at 11. Baranic states he has reviewed all the CIRB Reports at issue and that the Reports are maintained in confidence. Dkt. No. 420-1 at ¶¶ 7, 24. However, Baranic does not sufficiently address the third, fourth or fifth factors. Baranic focuses on the County's position that the CIRB Reports are subject to the attorney-client privilege, but that is a separate inquiry from "the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer." *Soto*, 162 F.R.D. at 613. Baranic asserts "[t]he release of CIRB reports, without any privilege protection or order limiting admissibility, could chill the frank deliberations that occur to render advice and formulate a strategy as part of the CIRB process to address concerns related to potential or anticipated civil litigation regarding an incident." Dkt. No. 420-1 at ¶ 27. This generalized statement is insufficient to satisfy the County's burden to make a substantial threshold showing the official information privilege applies. *See Soto*, 162 F.R.D. at 614 ("[A] general assertion that a police department's internal investigatory system would be harmed by disclosure of the documents is insufficient to meet the threshold test for invoking the official information privilege.")

Even assuming the requisite showing were made, the County does not address the non-exhaustive factors used in balancing the parties' respective interests.[6] *See Shiflett*, 2023 WL 4551077, at **2-3 (citing *Frankenhauser v. Rizzo*,

---

[6] Those factors include: "(1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government

59 F.R.D. 339, 344 (E.D. Pa. 1973)). The Court has reviewed the 25 CIRB Reports *in camera* and concludes these factors weigh in favor of disclosure under the Protective Order. There is no showing that disclosure will discourage citizens from giving the government information, the party seeking the information is not an actual or potential defendant in a criminal proceeding, there is no indication that the CIRB Reports entail ongoing disciplinary proceedings, Plaintiffs' suit is non-frivolous, there is no showing that this information is available to Plaintiffs from other sources and the information regarding other deaths is relevant to Plaintiffs' claims. Other factors arguably weigh against disclosure, including the potential for disclosure of identities of individuals who died in the jails and the potential that "government self-evaluation and consequent program improvement will be chilled by disclosure." *Kelly*, 114 F.R.D. at 663. However, the absence of evidence from the County precludes a finding of any chilling effect beyond the generalized assertions that courts have found insufficient to deny disclosure under the official information privilege. *Shiflett*, 2023 WL 4551077, at *3 (collecting cases). And the operative Protective Order assuages any concern that information about nonparties would be disclosed outside of the litigation. The Court concludes the

/ / /

---

information; (2) The impact upon persons who have given information of having their identities disclosed; (3) The degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) Whether the information sought is factual data or evaluative summary; (5) Whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) Whether the police investigation has been completed; (7) Whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) Whether the plaintiff's suit is non-frivolous and brought in good faith; (9) Whether the information sought is available through other discovery or from other sources; [and] (10) The importance of the information sought to the plaintiff's case." *Kelly*, 114 F.R.D. at 663.

balancing analysis weighs in favor of disclosure of the CIRB Reports to Plaintiffs under the Protective Order.

## V.
## **CONCLUSION**

For all the foregoing reasons, Plaintiffs' motion to compel is **GRANTED.** The Court further orders as follows:

1. By not later than **December 20, 2023**, the County must submit for *in camera* review any proposed redactions to the CIRB Reports. The County must highlight the proposed redacted text for each Report.

2. Also by not later than **December 20, 2023**, the County must publicly file a notice of its *in camera* submission and state whether all of its proposed redactions to the CIRB Reports are consistent with the redactions authorized by the Court in *Morton* and *Serna*.

**IT IS SO ORDERED.**

Dated: December 13, 2023

_____
Hon. David D. Leshner
United States Magistrate Judge