GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DEPOSITION BY NAPHCARE OF SAN DIEGO LLC**<br><br>Judge: Hon. Anthony J. Battaglia<br>Magistrate: Hon. David D. Leshner<br><br>Trial Date: None Set |

[4417646.5]

Case No. 3:20-cv-00406-AJB-DDL

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 1

LEGAL STANDARD .................................................................................................. 4

ARGUMENT ................................................................................................................ 5

I.  NaphCare Has Failed to Produce All Documents Responsive to RFPs 2, 5-6, 8-9, 16-27, 30-31, 33-42, 44, 56-58, 63, 66, 68, 70, 74, 76, and 84-85 ................................................................................................................ 5

    A.  NaphCare's Production is Deficient, Prejudicing Plaintiffs' Pursuit of their Claims ........................................................................... 5

    B.  Plaintiffs' Requests Are Proportionate to the Needs of the Case and Not Burdensome ........................................................................... 9

II. In-Custody Death Records Responsive to RFPs 28 and 77 Are Not Protected by the Attorney-Client or Work Product Privilege ........................ 11

    A.  The Attorney-Client Privilege Does Not Apply .................................. 12

    B.  The Attorney Work Product Privilege Does Not Apply ..................... 13

III. NaphCare Should be Ordered to Comply with the Deposition Subpoena ...... 14

CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

Page

**CASES**

*Clarke v. Am. Com. Nat'l Bk.*,
　974 F.2d 127 (9th Cir. 1992) ........................................................................... 12

*Griffith v. Davis*,
　161 F.R.D. 687 (C.D. Cal. 1995) .................................................................... 14

*In re Grand Jury*,
　23 F.4th 1088 (9th Cir. 2021) .................................................................... 12, 13

*Kelly v. City of San Jose*,
　114 F.R.D. 653 (N.D. Cal. 1987) .................................................................... 14

*McKeon v. Cent. Valley Cmty. Sports Found.*,
　No. 1:18-CV-00358, 2019 WL 1208986 (E.D. Cal. Mar. 14, 2019) ............... 4

*Moon v. SCP Pool Corp.*,
　232 F.R.D. 633 (C.D. Cal. 2005) ...................................................................... 5

*United States v. Christensen*,
　828 F.3d 763 (9th Cir. 2015) ........................................................................... 12

*United States v. Martin*,
　278 F.3d 988 (9th Cir. 2002) ........................................................................... 12

*Wisk Aero LLC v. Archer Aviation Inc.*,
　No. 21-cv-2450, 2023 WL 2699971 (N.D. Cal. Mar. 29, 2023) .................... 13

**RULES**

Fed. R. Civ. P. 26 ................................................................................................ 5, 13

Fed. R. Civ. P. 45 .................................................................................................. 2, 4

# INTRODUCTION

For approximately four months since its initial production of documents, NaphCare of San Diego LLC ("NaphCare") has represented that it intends to comply with Plaintiffs' subpoenas for the production of documents and deposition, but has fallen far short. In light of the large scope of NaphCare's important responsibilities for administering medical, mental health, and dental care to the thousands of people incarcerated in the Jail, and the importance of these claims to Plaintiffs' case, NaphCare's production of approximately 122 documents is severely lacking. Discovery has established that NaphCare possesses many responsive documents that it has not produced. Without any apparent justification, NaphCare has failed to fulfill its discovery obligations under the subpoena.

Exhibit A to the Declaration of Priyah Kaul in Support of Motion to Compel Production of Documents and Deposition by NaphCare of San Diego LLC ("Kaul Decl.") is a table summarizing the status of outstanding document requests in this case—including the few documents produced to date as well as the many that are missing. *Id.* ¶ 2, Ex. A.

The documents subpoenaed by Plaintiffs are necessary and proportional to the needs of this case. Absent their production, Plaintiffs will be prejudiced in their ability to establish constitutional violations in the Jail's provision of medical, mental health, and dental care. Plaintiffs ask this Court to compel NaphCare to produce documents in response to the requests identified below, or in the alternative, to further amend their written responses to state with specificity that no such documents are in NaphCare's possession, custody, or control. Further, Plaintiffs seek an order compelling the deposition of NaphCare's Rule 45 subpoena witness.

# BACKGROUND

Defendant County of San Diego contracted with NaphCare Inc. and NaphCare of San Diego LLC, effective June 1, 2022, for the provision of certain medical, mental health, and dental care services in the Jail. Kaul Decl. ¶ 3, Ex. B.

Among other contractual requirements, NaphCare must fill dozens of staff positions, provide policies and procedures that meet national standards for correctional health care, implement several new health care programs, and submit reports on various aspects of health care in the Jail. *See, e.g., id*. at SD_122580–SD_122585, SD_122484, SD_122512, SD_122528. The contract also requires NaphCare staff to be directly involved in the provision of care to incarcerated people, including by collaborating with Sheriff's Department staff to "closely monitor patients diagnosed with chronic and complex illness"; "coordinate with sworn staff the need for emergency department (ED) services for incarcerated individuals"; "manage[] [] comprehensive pharmaceutical operations" to ensure "[i]mmediate access to prescription medications for incarcerated individuals"; "ensure the continuity of medication after release"; "provide mental health screening, care, and related services"; "operate and manage onsite face-to-face health care clinics"; and be the "prime provider for oral care services." *Id*. at SD_122488–SD_122489, SD_122497, SD_122505–SD_122506, SD_122519, SD_122525.

On August 10, 2023, Plaintiffs served NaphCare with a subpoena for the production of documents related to NaphCare's provision of health care services in the Jail, as well as a deposition subpoena noticing a deposition for September 20, 2023. *Id*. ¶ 4, Exs. C, D. On August 30, 2023, after the 14-day deadline to serve objections had passed, *see* Fed. R. Civ. P. 45(d)(2)(B), NaphCare's counsel contacted Plaintiffs' counsel for the first time, requesting additional time to respond. *Id*. ¶ 5, Ex. E. Plaintiffs agreed to extend the time for NaphCare to produce documents to September 22, 2023, and agreed to push back the deposition to a mutually-agreeable date in late September or early October. *Id*. Plaintiffs also agreed to several limitations to reduce any potential burden on NaphCare, including agreeing to forego use of a formal ESI protocol with search terms and custodians as well as production of individual patient medical files. *Id*. ¶ 6, Ex. F. Plaintiffs further agreed that NaphCare did not need to produce all requested training

1  materials at the outset, and instead, could provide Plaintiffs with a list of training
2  courses attended by NaphCare employees, which Plaintiffs could use to request a
3  more narrow set of materials. *Id*.
4        To facilitate the production, on September 21, 2023, the parties and NaphCare
5  filed a joint motion seeking to amend the protective order in the case to incorporate
6  NaphCare. Dkt. 397. Plaintiffs also agreed to provide NaphCare with another one-
7  week extension on the production, based in part on its representation that the
8  production would be "voluminous." Kaul Decl. ¶ 7, Ex. F. The Court entered the
9  amended stipulated protective order on September 27, 2023. Dkt. 400.
10       On September 29, 2023, in response to Plaintiffs' 88 document requests,
11 NaphCare produced a mere 67 documents. Kaul Decl. ¶ 8. On October 2, 2023,
12 NaphCare served untimely written responses and objections to the document
13 subpoena *Id*. ¶ 8, Ex. G. For several months thereafter, and in light of NaphCare's
14 repeated representations that it intended to comply fully with the subpoena,
15 Plaintiffs' counsel met and conferred extensively with NaphCare's counsel in an
16 effort to resolve the many deficiencies in NaphCare's production. *Id*. ¶¶ 9-10, Exs.
17 H-I. Plaintiffs identified specific requests for which no or an insufficient number of
18 documents had been produced, providing descriptions of the types of documents
19 anticipated to exist that would be responsive and identifying specific documents
20 referenced in the County's contract with NaphCare that Plaintiffs expected to be
21 produced. *Id*. ¶ 10, Ex. I. Plaintiffs also repeatedly requested native versions of
22 documents produced in unusable formats, requested unredacted versions of
23 documents that could be produced pursuant to the amended stipulated protective
24 order, and sought additional information about documents withheld as privileged,
25 including in-custody death reviews. *Id*. ¶¶ 10, 12, Exs. I, K. Over the course of
26 more than three months, NaphCare supplemented its initial production with only 33
27 documents, several of which were exact or near duplicates or re-productions of
28 documents previously produced with redactions or in an unusable format. *Id*. ¶ 15.

Following the December 20, 2023 discovery conference, at which NaphCare's counsel indicated that his client believed the first production of 67 documents "was [] complete," NaphCare made two productions. *Id*. ¶¶ 11, 15, Ex. J. First, it produced 21 documents and provided Plaintiffs with a privilege log and declaration addressing withheld in-custody death records. *Id*. ¶¶ 13, 15, Ex. L. After Plaintiffs' counsel indicated that it intended to move to compel, NaphCare produced 122 documents, 121 of which were re-productions, with identical Bates numbers, of documents already produced. *Id*. ¶¶ 12, 14, 15, Exs. K, M. NaphCare also served amended written responses and objections that were substantially similar to the ones already produced. *Id*. ¶ 14, Ex. M. Plaintiffs' counsel and NaphCare's counsel met and conferred again per the Court's order, *see* Dkt. 478. *Id*. ¶ 25.

To date, NaphCare has produced only 122 documents, comprising approximately 31,000 pages. *Id*. ¶ 15. Of that, approximately 740 pages are exact or near duplicates of other documents, and approximately 28,000 pages were produced in a unusable, non-native and/or redacted format. *Id*.

## LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure governs the service of subpoenas for deposition testimony and documents to nonparties. *See* Fed. R. Civ. P. 45(c)(1) (deposition), (c)(2) (documents). A valid subpoena must "command each person to whom it is directed to ... attend and testify," or "produce designated documents" at "a specified time and place." Fed. R. Civ. P. 45(a)(1)(A)(iii). "Proper subpoenas issued by attorneys on behalf of the court are treated as orders of the Court." *McKeon v. Cent. Valley Cmty. Sports Found.*, No. 1:18-CV-00358, 2019 WL 1208986, at *2 (E.D. Cal. Mar. 14, 2019) (collecting cases).

Under Rule 45, a non-party is subject to the same scope of discovery as a party, as defined under Rule 26(b). *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (citation omitted). Under Rule 26(b), a party generally must respond to discovery regarding "any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## ARGUMENT

### I. NaphCare Has Failed to Produce All Documents Responsive to RFPs 2, 5-6, 8-9, 16-27, 30-31, 33-42, 44, 56-58, 63, 66, 68, 70, 74, 76, and 84-85

#### A. NaphCare's Production is Deficient, Prejudicing Plaintiffs' Pursuit of their Claims

NaphCare's responsibility for medical, mental health, and dental care at the Jail is directly related to at least three of the important constitutional claims in this class action. *See* Third Amended Complaint, Dkt. 231, ¶¶ 38-294. Along with County personnel, NaphCare provides medical, mental health and dental care at all seven Jail facilities, affecting approximately 50,000 incarcerated people per year. *See* Kaul Decl. ¶ 3, Ex. B; Joint Notice of Motion for Class Certification, Dkt. 423 at 5. Plaintiffs contend that NaphCare's inadequate care is creating a substantial risk of serious harm for all members of the certified class.

Plaintiffs' subpoena seeks a targeted set of highly relevant documents, including, at issue here, documents regarding (i) policies and procedures for various health care processes (*see* RFPs 8, 16-28, 31, 34-35, 44, 56-57); (ii) monitoring, auditing, review, analysis, and inspections of health care operations and facilities (*see* RFPs 6, 9, 58, 63, 68, 74, 76, 85); (iii) housing of incarcerated people with particular health needs in specialty units or cells (*see* RFPs 33, 36-42); and (iv) health care administration, including documents reflecting contract negotiations between the County and NaphCare, draft policies and procedures, documents reflecting access to foreign language interpretation during health care encounters, staffing plans, training materials, and licensing credentials of providers (*see* RFPs 2,

5, 30, 66, 70, 84).  Kaul Decl. ¶ 4, Ex. C.

NaphCare has been providing health care services in the Jail for more than a year and a half.  Assuming no termination of the contract, Naphcare will continue to provide these services for at least another three and a half years, including at the time of trial in this action.  *Id*. ¶ 3, Ex. B at SD_122483.  The scope of its work is expansive, as evidenced by the 79-page "Statement of Work" contained in its contract with the County that describes its involvement in "provid[ing] [nationally]-compliant policies and procedures," "coordinat[ing] with [Sheriff's Department] nursing staff to create a seamless centralized system of care," and providing "on-site services" for receiving screening and assessment, ongoing medical and mental health assessments, discharge planning, oral care, chronic care, substance use treatment, women's health, and emergency care, among other things.  *Id*. at SD_122484–SD_122563.  Despite this, NaphCare has produced a mere 122 documents to date, approximately 16 of which are duplicates, and claims that its production is complete.  *Id*. ¶ 15.  This assertion strains credulity.  *Id*. ¶¶ 11, 15, Ex. J.

Defendants' productions in this case make clear that NaphCare has not conducted a diligent search or made an adequate production of responsive documents.  For example, Defendants produced in discovery several "Corrective Action Notices" issued to NaphCare that describe NaphCare's wide-ranging non-compliance with its contract.  These documented failures include not paying outside providers **$9.3 million for specialty care** (resulting in cancelled contracts and fewer provider options), not providing policies and practices that meet national standards, not initiating timely medication assisted treatment (MAT), not conducting quarterly meetings for infection control issues and for its continuous quality improvement program, failing to perform peer reviews, not tracking key metrics and performance indicators, and lacking adequate staffing, among other issues.  *Id*. ¶ 19, Ex. N.  NaphCare did not produce any Corrective Action Notices, nor its letter responses to

or internal communications regarding such notices, despite these documents falling squarely within the scope of Plaintiffs' requests. *Id*. ¶ 20, Ex. O.

NaphCare further wrote in response to RFPs 6 and 74, which sought relevant meeting minutes, that it "does not maintain meeting minutes," and has not produced any minutes, agendas, notes, or presentations from any meetings. *Id*. ¶¶ 8, 21, Ex. G. Defendants, however, have produced minutes from a "Pharmacy & Therapeutics Committee Meeting" attended by at least one NaphCare employee, Michael Farrier, which include relevant information regarding formulary changes and drug shortages and which bear NaphCare's logo at the top. *Id*. ¶ 21, Ex. P. The former Commander of the Sheriff's Department's Medical Services Division recently testified that the Sheriff's Department regularly met with NaphCare to discuss the Corrective Action Notices as well as other issues related to the provision of health care in the Jail. *Id*. ¶ 22. NaphCare's contract with the County also references numerous meetings that must occur—including meetings of the "infection control committee," which occur "quarterly … or whenever an infection control issue requires immediate or continuing attention"; monthly meetings for the continuous quality improvement program, where a committee discusses "various topics related to the improvement of health care delivery"; monthly meetings of a "Medical Audit Committee"; and monthly meetings between NaphCare's onsite Mental Health Director and the Sheriff's Department's Mental Health Director "to discuss clinical issues mental health processes and systems, exchange valuable information, and discuss the latest mental health trends…." *Id*. ¶ 3, Ex. B at SD_122490, SD_122511–SD_122513. Some or all of these meetings must require or result in documentation that should have been produced in response to the subpoena—they were not.

Defendants' productions show that NaphCare employees frequently email with Sheriff's Department staff. Yet NaphCare failed to produce any internal communications other than approximately 16 non-substantive cover emails with

policies and procedures attached.  *See id*. ¶ 16.  For example, an email attachment that appears to have been written by the Sheriff's Department's Chief Medical Director to other Sheriff's Department staff states that "many [Sheriff's Department] staff have direct communications/interactions with many NaphCare employees/staff through phone, email, text, instant message, and other means."  *Id.* ¶ 23, Ex. Q at SD_227523.  Defendants have also produced emails between Sheriff's Department and NaphCare staff regarding health care issues.  *See, e.g. id*. ¶ 24, Ex. R.  Further, NaphCare's contract with the County is replete with references to matters about which NaphCare must collaborate and communicate with the Sheriff's Department, requiring NaphCare to "establish a daily communication protocol with [Sheriff's Department] administrative staff and coordinate closely with the administrative and sworn staff in the facilities."  *Id.* ¶ 3, Ex. B at SD_122530.  NaphCare's failure to produce any substantive emails falls far short of its obligations pursuant to the subpoena.

As a further example of its many shortcomings, in response to RFP 85's request for documents related to monitoring or auditing of health care provided to incarcerated people, NaphCare produced fewer than 20 pharmacist inspection reports and mental health staff peer reviews.  *Id.* ¶ 16.  It has not produced any of the other dozens of reports it is contractually-obligated to provide to the County, such as "Quality Assurance studies [] to monitor the efficacy and consistency of the drug and alcohol withdrawal program" or "chart reviews."  *Id*. ¶ 3, Ex. B at SD_122501, SD_122513.

In addition to these gaping holes in its productions, NaphCare has produced tens of thousands of pages of documents in non-native format, rendering them essentially useless.  *See id*. ¶ 15.  For example, it produced a 396-page document that appeared to show a chart listing trainings assigned to and completed to each of its staff members, but the chart was converted into a PDF that made it impossible to sort and nearly impossible to interpret given that the many columns associated with

a single row spilled over to other PDF pages not consecutively numbered. *Id.* ¶ 17. NaphCare has not produced the document in a native, sortable format despite repeated requests, which has resulted in Plaintiffs being unable to create a more specific list of trainings for which they seek production of materials. *Id.*

Plaintiffs will be severely prejudiced absent an order from the Court requiring NaphCare to produce these and all other responsive documents. As discussed above, the missing documents touch on nearly every aspect of health care in the Jail, from staffing issues, to specific incidents affecting the health care of incarcerated people, to high-level decision-making regarding the Jail's policies, procedures, and protocols for provision of health care. Without these documents, Plaintiffs will be unable to determine how NaphCare, a critical provider in the Jail's health care system, actually works with Defendants to provide medical, mental health, and dental care to incarcerated people—and whether that care is constitutionally adequate. These issues are of great consequence, going to constitutional claims that are essential to a safe and fair community. Plaintiffs further request that if NaphCare does not have any additional responsive documents in its possession, custody, and control, including the specific ones identified by Plaintiffs, NaphCare should be required to further amend its written responses accordingly.

### B. Plaintiffs' Requests Are Proportionate to the Needs of the Case and Not Burdensome

NaphCare never indicated that it would not search for or produce responsive documents, other than those for which Plaintiffs and NaphCare reached an agreement to forego production, on burden grounds. Kaul Decl. ¶ 18. To the extent NaphCare nevertheless relies on its untimely burden objections as a basis for refusing to produce additional responsive documents, the objection is unfounded.

"[A]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party," and requires the court's consideration of "such factors as relevance, the need of the party

for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed." *Moon*, 232 F.R.D. at 637 (internal citation and quotation marks omitted). Here, NaphCare has not even attempted to substantiate its burden objection, nor could it, given that the requests are narrowly tailored to seek documents that are highly relevant to this litigation.

Plaintiffs' requests are tailored to seek information that is directly relevant to Plaintiffs' claims of inadequate medical, mental health, and dental care in the Jail. The requests are limited in time, going back no further than January 1, 2022, and in some cases, only going back to January 1, 2023. Kaul Decl. ¶ 4, Ex. C. Through the meet and confer process, Plaintiffs' counsel also narrowed and defined its already targeted requests. *Id*. ¶ 6, 10, 12, Exs. F, I, K. For example, Plaintiffs' counsel identified with specificity the types of documents it sought in response to certain requests (e.g., in response to requests for documents relating to the housing of incarcerated people in specialty mental health units, Plaintiffs sought, among other documents, "logs or summaries (daily, weekly, etc.) of people newly housed in mental health care settings" and "caseload task lists"). *Id*. Plaintiffs' counsel also named specific documents from NaphCare's contract with the County that should have been produced (e.g. Plaintiffs' counsel requested that NaphCare produce the "quarterly medical audits" referenced at NAPHCARE594). *Id*. Plaintiffs additionally agreed to forgo the use of a formal ESI protocol with search terms and custodians, as well as production of individual medical files, in light of NaphCare's representations that such collections would be too burdensome. *Id*. Any remaining burden, particularly with respect to ESI, is minimal. The County contracted with NaphCare to staff approximately 59 full-time employee positions for providers across the seven facilities, and to have three "onsite leadership positions." *Id*. ¶ 3, Ex. B at SD_122531, SD_122580–SD_12258. The custodians from whom documents and communications, including emails, texts, and Teams messages, must

be collected is well-defined and limited in number.

NaphCare is a large, national for-profit health care provider with resources to respond to Plaintiffs' subpoena in an adequate and timely manner. *Id.* ¶ 3. Nonetheless, NaphCare's supplemental productions have been sparse, and NaphCare continues to evade Plaintiffs' questions regarding additional responsive documents. Plaintiffs cannot obtain documents like NaphCare's internal communications and memoranda, meeting notes, tracking documents, or communications from any other source, including Defendants. Absent production of all responsive documents, Plaintiffs will be prejudiced without information about critical operations, programs, and people who run the Jail's health care. NaphCare's hypothetical burden objection should be rejected.

## II. In-Custody Death Records Responsive to RFPs 28 and 77 Are Not Protected by the Attorney-Client or Work Product Privilege

According to its privilege log produced January 5, 2024, NaphCare has withheld production of 82 documents relating to in-custody deaths on the grounds that each one is protected from disclosure by the attorney-client and work product privileges. Kaul Decl. ¶ 13, Ex. L. The withheld documents fall into two categories. First, NaphCare has withheld agendas, presentations, and meeting minutes purportedly prepared by a "Paralegal" or "Legal Nurse" for its Corporate Morbidity and Mortality Review Committee meetings, which are attended by members of NaphCare's "corporate clinical team, legal department[,] and management team," as well as, in some cases, "corporate providers and other in-house attorneys," who "provid[e] legal advice related to anticipated litigation." *Id.* Second, NaphCare has withheld "death summaries" and "psychological autopsies" purportedly prepared by physicians, health services administrators, and mental health directors, and "sent to NaphCare's corporate office and legal department for notification of death and in preparation for" the Corporate Morbidity and Mortality Review Committee meetings. *Id.* NaphCare has not met its burden to show the

attorney-client or attorney work product privileges apply to either category of document.

### A. The Attorney-Client Privilege Does Not Apply

To show that the attorney-client privilege applies, NaphCare must satisfy eight factors: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). The burden is on NaphCare to satisfy each factor. *Id.* at 999-1000. If necessary, the Court "may conduct an in camera inspection of alleged confidential communications to determine whether the attorney-client privilege applies." *Clarke v. Am. Com. Nat'l Bk.*, 974 F.2d 127, 129 (9th Cir. 1992). Even if the privilege applies, "a blanket claim of privilege is unacceptable," and the privilege should be "strictly confined within the narrowest possible limits." *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) (citation omitted).

The Ninth Circuit's "primary purpose" test provides that a document is privileged only if the party asserting the privilege shows that its primary purpose was to give or receive legal advice—and not some other business purpose. Order Granting Plaintiffs' Motion to Compel Production of CIRB Reports, Dkt. 468, at 9 (citing *In re Grand Jury*, 23 F.4th 1088, 1091-92 (9th Cir. 2021)). A document "can only have a single 'primary' purpose." *In re Grand Jury*, 23 F.4th at 1091. Thus, for example, a presentation for a corporate board that "is clearly a business presentation" is not privileged under the primary purpose test. *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-2450, 2023 WL 2699971, at *5-6 (N.D. Cal. Mar. 29, 2023) (stating that "no privilege can attach to any communication as to which a business purpose would have served as a sufficient cause" (internal citation omitted)).

Despite NaphCare's assertion that the withheld documents are prepared for use at meetings where attorneys provide legal advice related to anticipated litigation, NaphCare's own contract with the County states that the goal of the morbidity and mortality review is "to identify, evaluate, and improve the quality and efficiency of health care; ensure accurate and timely reporting; and reduce morbidity and mortality." Kaul Decl. ¶ 3, Ex. B at SD_122536. The review also must "determine compliance with [NaphCare]'s standard of care to identify any training, and/or policies that may have contributed to the patient death." *Id*. The contract further makes clear that these are **clinical**—not **legal**—reviews, as "all relevant clinical aspects and treatment are reviewed by the site and corporate committees." *Id*. at SD_122535. Legal advice is not necessary for the committee to fulfill its primary purpose. NaphCare's use of attorneys at the meetings to attempt to shield the documents from disclosure must fail.

### B.    The Attorney Work Product Privilege Does Not Apply

"[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "The work product doctrine does not protect materials assembled in the ordinary course of business. Rather, the *primary motivating purpose* behind the creation of the materials must be as an aid in possible future litigation." *Griffith v. Davis*, 161 F.R.D. 687, 698 (C.D. Cal. 1995) (emphasis in original). Thus, work product protection applies only to material "that would not have been generated **but for** the pendency or imminence of litigation." *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987) (emphasis added).

As a threshold matter, the death summaries and psychological autopsies are prepared by physicians, health services administrators, and mental health directors, not members of NaphCare's legal department. *See* Kaul Decl. ¶ 13, Ex. L. Moreover, the withheld documents would still be generated even without "the

pendency or imminence of litigation." This is because, *pursuant to contract*, NaphCare must review all patient deaths and "sentinel events," regardless of the prospect of litigation. *Id*. ¶ 3, Ex. B at SD_122536.

### III. NaphCare Should be Ordered to Comply with the Deposition Subpoena

NaphCare has indicated that it will comply with the deposition subpoena, however, the parties have not agreed on a date yet. Kaul Decl. ¶ 26. The deposition has been postponed repeatedly due to NaphCare's failure to produce all responsive documents. *Id*. Accordingly, Plaintiffs request that the Court order NaphCare to begin producing documents and complete rolling productions as soon as possible, and produce a witness for deposition on a mutually-agreed upon date within two weeks of its complete production of documents.

### CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be GRANTED.

DATED: January 17, 2024    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Priyah Kaul*
Priyah Kaul

Attorneys for Plaintiffs and the Certified Class and Subclasses