1  GAY C. GRUNFELD – 121944
   VAN SWEARINGEN – 259809
2  PRIYAH KAUL – 307956
   ERIC MONEK ANDERSON – 320934
3  HANNAH M. CHARTOFF – 324529
   ROSEN BIEN
4  GALVAN & GRUNFELD LLP
   101 Mission Street, Sixth Floor
5  San Francisco, California  94105-1738
   Telephone:  (415) 433-6830
6  Facsimile:   (415) 433-7104
   ggrunfeld@rbgg.com
7  vswearingen@rbgg.com
   pkaul@rbgg.com
8  eanderson@rbgg.com
   hchartoff@rbgg.com
9
   AARON J. FISCHER – 247391
10 LAW OFFICE OF
   AARON J. FISCHER
11 1400 Shattuck Square Suite 12 - #344
   Berkeley, California  94709
12 Telephone:  (510) 806-7366
   Facsimile:   (510) 694-6314
13 ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

14 Attorneys for Plaintiffs and the
   Certified Class and Subclasses

15

16                    UNITED STATES DISTRICT COURT

17                 SOUTHERN DISTRICT OF CALIFORNIA

18 DARRYL DUNSMORE, ANDREE          Case No. 3:20-cv-00406-AJB-DDL
   ANDRADE, ERNEST ARCHULETA,
19 JAMES CLARK, ANTHONY EDWARDS,    **MEMORANDUM OF POINTS**
   LISA LANDERS, REANNA LEVY,       **AND AUTHORITIES IN**
20 JOSUE LOPEZ, CHRISTOPHER         **SUPPORT OF PLAINTIFFS'**
   NELSON, CHRISTOPHER NORWOOD,     **NOTICE OF MOTION AND**
21 JESSE OLIVARES, GUSTAVO          **MOTION TO COMPEL**
   SEPULVEDA, MICHAEL TAYLOR, and   **PRODUCTION OF**
22 LAURA ZOERNER, on behalf of      **DOCUMENTS AND**
   themselves and all others similarly situated,   **INTERROGATORY RESPONSE**
23
                    Plaintiffs,       Judge:      Hon. Anthony J. Battaglia
24                                     Magistrate: Hon. David D. Leshner
          v.
25                                     Trial Date: None Set
   SAN DIEGO COUNTY SHERIFF'S
26 DEPARTMENT, COUNTY OF SAN
   DIEGO, SAN DIEGO COUNTY
27 PROBATION DEPARTMENT, and DOES
   1 to 20, inclusive,
28
                    Defendants.

[4414090.6]                                    Case No. 3:20-cv-00406-AJB-DDL

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 1

ARGUMENT ............................................................................................................... 3

I.     Defendants Failed to Produce Audits and Quality Assurance
       Documents Responsive to Request Nos. 32, 33, 98, 99, 104, 106, 109-
       111, 118, 121, 125-129, 138, 143-148, 150, 153, 155, 157-159, 161,
       162, 164-167, 171, 172, 179, 180, 182, 184, 193, 195, 211, 220, 221,
       225, 230, 232, & 236. ....................................................................................... 4

II.    Defendants Failed to Produce Training Materials Responsive to
       Request Nos. 32, 33, 98-100, 110, 111, 114, 118, 121, 129, 138, 143-
       148, 150, 155-159, 161, 162, 164-167, 171, 175, 180, 182, 184, 198,
       211, 217-221, 225, 230, 232-234, 236, 240, & 246. ........................................ 6

III.   Defendants Failed to Produce Documents Evidencing Practice in
       Response to Request Nos. 32, 49, 82, 97, 99, 100, 105, 106, 109-111,
       113, 114, 119, 121, 125-130, 138, 141, 146-148, 150, 152, 155-159,
       161, 162, 164, 165, 167, 172, 175, 176, 179, 180, 182, 179, 193, 195,
       221, 231, & 232-236 ......................................................................................... 7

IV.    The Parties Continue to Negotiate Regarding Production of a Subset of
       Individual Custody and Medical Records, Which Defendants Have Not
       Yet Produced. .................................................................................................... 8

V.     Defendants Failed to Produce Contractor Activity Reports Responsive
       to Plaintiffs' Request No. 78. ............................................................................ 9

VI.    Defendants Failed to Produce Staffing Plans Responsive to Plaintiffs'
       Request No. 191. .............................................................................................. 10

VII.   Defendants Failed to Produce Text Message or Instant Message ESI,
       Despite Evidence that Responsive Communications Exist............................... 10

VIII.  The Email ESI Defendants Produced Is Incomplete........................................ 12

IX.    Defendants Refused to Produce Data Responsive to Interrogatory
       No. 25. .............................................................................................................. 13

CONCLUSION........................................................................................................... 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION
AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSE

# TABLE OF AUTHORITIES

**Page**

## CASES

*Blankenship v. Hearst Corp.*,
    519 F.2d 418 (9th Cir. 1975).................................................................4

*Bryant v. Ochoa*,
    No. 07-cv-200, 2009 WL 1390794 (S.D. Cal. May 14, 2009) ........................4

*Vega v. Mgmt. & Training Corp.*,
    No. 21-cv-1770, 2022 WL 17407984 (S.D. Cal. Dec. 1, 2022) ....................3

## RULES

Fed. R. Civ. P. 26..........................................................................................4

Fed. R. Civ. P. 37..........................................................................................3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION
AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSE

**INTRODUCTION**

Plaintiffs substantially limited most discovery requests at issue in this Motion to January 1, 2021 to the present and only four categories of documents:  1) policies and procedures; 2) training; 3) evidence of practice; and 4) quality assurance/audits. Despite producing over 700,000 pages of documents to date (including many duplicates as well as non-responsive ESI), Defendants' document production is severely lacking.  In particular, the production lacks training materials, documents evidencing practice, and quality assurance documents in response to numerous Requests for Production; large categories of electronically stored information ("ESI"); and a subset of individual incarcerated person medical and custody records, among other things.  This Memorandum broadly describes the categories of missing documents, and a Request-by-Request summary of documents outstanding is attached as Exhibit A to the Declaration of Van Swearingen ("Swearingen Decl.") filed herewith.

The documents Plaintiffs seek are necessary and proportional to the needs of this important civil rights case that seeks injunctive relief on behalf of tens of thousands of people incarcerated in the San Diego County Jail each year.  Absent production of the documents sought through this Motion, Plaintiffs will be prejudiced by not being able to obtain evidence of actual practice, training, and audits for many of the issues that outside agencies such as the State Auditor and CLERB have found Defendants deficient.  Plaintiffs ask this Court to compel Defendants to produce the categories of documents outlined below.

**BACKGROUND**

As relevant to this Motion, Plaintiffs served document requests on June 15, 2023 (Plaintiffs' Third Set of Requests) and September 1, 2023 (Plaintiffs' Fifth Set of Requests).  Swearingen Decl. ¶¶ 3-4, Exs. B & C.  The parties met and conferred on numerous occasions regarding Plaintiffs' Third Set of Requests for Production. *Id*. ¶ 19, Exs. U, V, & W.  However, progress was slow, and Defendants often

1  delayed or never provided responses to Plaintiffs' queries about how documents are

2  maintained. *E.g.*, *id.* ¶ 19. The parties met and conferred only once regarding

3  Plaintiffs' Fifth Set of Requests, before Defendants cut off further meet and confer

4  efforts and refused to respond to further meet and confer attempts by Plaintiffs. *Id.*

5  ¶¶ 22-23, Ex. Y. Through the meet and confer process, Plaintiffs largely limited the

6  documents they sought in Sets 3 and 5 to four categories of records since January 1,

7  2021: policies and procedures; training (presentations and handouts as well as

8  whether all, some, or no staff have been trained); evidence of practice

9  (documentation of what happened, including logs and lists); and quality assurance

10 (including audits, peer reviews, and corrective actions). *Id*. ¶¶ 24-25, Ex. Y.

11 Plaintiffs also repeatedly attempted to obtain information regarding ESI for the

12 purpose of negotiating a proportional ESI production, but Defendants never

13 provided meaningful information, *i.e.*, a hit report with unique hit information for

14 the proposed search terms and custodians. *Id*. ¶¶ 10, 15, 17. Defendants decided

15 which terms and custodians would be searched over Plaintiffs' objections that

16 Defendants' choice was not designed to likely yield responsive information. *Id*.

17 ¶¶ 12-16.

18      Plaintiffs' meet and confer attempts were stymied by Defendants' delays and

19 conflicting statements about the existence of various documents. For example,

20 Defendants represented to this Court on December 12, 2023 that safety checks are

21 not audited, despite other evidence—including a declaration filed by Defendants—

22 indicating that such audits do occur. *Compare* Joint List of Disputes, Dkt. 466 at 42

23 *with* Dkt. 153-6 at ¶¶ 15-16. Defendants represented to Plaintiffs that Defendants'

24 staff "don't use" text messages and "[i]t would be impossible to use text since there

25 is terrible wifi in the jails"—both of which counsel "verified … personally with the

26 client before making that representation," *see* Swearingen Decl. ¶ 48, Ex. RR,

27 despite documents stating that "many SDSD staff have direct communications/

28 interactions with many of Naphcare employees/staff through … text," *id.* ¶ 33, Ex.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION
AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSE

1    DD, and deposition testimony confirming the same, *id.* ¶ 45, Ex. PP at 705:13-25.

2    And Defendants represented to this Court that they would produce a subset of class

3    member medical and custody records, *see* Nov. 21, 2023 Hearing Transcript at 5:7–

4    6:3, but have not done so.

5        Rather than make rolling productions that would facilitate Plaintiffs' review,

6    Defendants waited until the last minute to produce the vast majority of their

7    document production on December 20 to 22, 2023.[1]  Those productions failed to

8    include numerous documents Plaintiffs anticipate are kept in the normal course of

9    business or can be generated through database reports.  Notably, in the case of

10   several types of documents that appear to be regularly maintained, *e.g.*, quarterly

11   Division of Inspection Services audits, that are responsive to Plaintiffs' requests,

12   Defendants did not produce a complete set of those documents since January 1,

13   2021, but rather produced sporadic examples.  Plaintiffs seek production of all

14   responsive documents dating back to January 1, 2021, as they are relevant to show

15   Defendants' actual practices, trends, and knowledge of problems.

16                            **ARGUMENT**

17       Federal Rule of Civil Procedure 37(a) authorizes a party to move to compel

18   documents requested under Rule 34 but not produced.  Once the moving party

19   establishes that the requested documents are relevant under Rule 26(b)(1), "the party

20   opposing discovery has the burden of showing that the discovery should be

21   prohibited, and the burden of clarifying, explaining[,] or supporting its objections."

22   *Vega v. Mgmt. & Training Corp.*, No. 21-cv-1770, 2022 WL 17407984, at *2 (S.D.

23   Cal. Dec. 1, 2022) (quoting *Bryant v. Ochoa*, No. 07-cv-200, 2009 WL 1390794, at

24   *1 (S.D. Cal. May 14, 2009) (internal citations omitted)).  "The party opposing

25   discovery is 'required to carry a heavy burden of showing' why discovery should be

26

27   _____

28   [1] Defendants produced some additional documents, including most audit documents
     on January 6 and 8, 2024.

1  denied." *Vega*, 2022 WL 17407984, at *2 (quoting *Blankenship v. Hearst Corp.*,

2  519 F.2d 418, 429 (9th Cir. 1975)).

3      Each of the categories of documents identified below is relevant and

4  proportional to the needs of this case.  To determine whether discovery is

5  proportional, courts should "consider[] the importance of the issues at stake in the

6  action, the amount in controversy, the parties' relative access to relevant

7  information, the parties' resources, the importance of the discovery in resolving the

8  issues, and whether the burden or expense of the proposed discovery outweighs its

9  likely benefit."  Fed. R. Civ. P. 26(b)(1).  Those factors weigh in favor of production

10  here.  As Plaintiffs have explained, the issues at stake in this action—Defendants'

11  constitutional obligations to provide medical care and protect people in the Jail—are

12  of paramount importance to a safe and fair community.  *See* Dec. 20, 2023 Hearing

13  Tr. at 94:12-95:8.  The documents Plaintiffs have requested are undeniably in the

14  hands of Defendants, multiple billion-dollar government entities with far superior

15  resources to Plaintiffs, who are indigent.  *See id*. at 95:9-96:1.  And, as explained in

16  more detail below, these documents are directly relevant to resolving the issues in

17  this case.  *See id*. at 96:8-12.  Defendants have never attempted to explain, under

18  these factors, why Plaintiffs' requested discovery is not proportional.  *See id*. at

19  93:6-9.

20  **I.   Defendants Failed to Produce Audits and Quality Assurance Documents**

21  **Responsive to Request Nos. 32, 33, 98, 99, 104, 106, 109-111, 118, 121,
125-129, 138, 143-148, 150, 153, 155, 157-159, 161, 162, 164-167, 171, 172,
179, 180, 182, 184, 193, 195, 211, 220, 221, 225, 230, 232, & 236.**

22

23      According to Defendants as of the December 20, 2023 hearing, "[e]verything

24  that [they] have that has been requested" on the topic of "[a]udits and quality

25  control" has been produced.  *See* Dec. 20, 2023 Hearing Tr. at 127:9-11.  However,

26  Defendants' productions do not include complete audit or quality assurance

27  documents, including but not limited to the following topics:  timeliness of referrals

28  to outside medical providers (Request No. 121); provision of medication to people

1   upon discharge from the Jail (Request No. 138); treatment of mental health issues

2   (Request No. 147); placement of people with mental health disorders in

3   administrative segregation (Request No. 164); inclusion of people with disabilities

4   in Jail programming (Request No. 167); interdiction of contraband narcotics

5   (Request No. 179); timeliness and adequacy of safety checks (Request No. 180);

6   efficacy of body scanners (Request No. 193); timeliness and quality of dental care

7   (Request No. 225); and destruction or loss of incarcerated person legal documents

8   (Request No. 230).  *See* Swearingen Decl. ¶ 2, Ex. A.

9        In some cases, Defendants produced examples of audit reports that happened

10  to be attached to emails produced as part of Defendants' ESI search; however, they

11  have not produced all such audits since January 1, 2021, as called for by Plaintiffs'

12  Requests.  For example, a Division of Inspection Services ("DIS") Report dated

13  June 1, 2023, includes audits of the use of administrative separation; logging of

14  incarcerated person property while housed in separation (likely including legal

15  papers); hygiene and sanitation; and audio monitors, among other topics.  *Id.* ¶ 34,

16  Ex. EE.  Indeed, the Sheriff's Department Commander of Operations, Christina

17  Ralph, testified about these DIS reports at her recent deposition.  *Id.* Ex. PP at

18  706:17-708:8.

19       Some of the documents produced indicate that additional audits are occurring,

20  but no audits have been produced.  For example, the DIS Report also references

21  additional "internal audit[s]" at "each facilit[y]," *id.* Ex. EE, which do not appear to

22  have been produced.  Mental health team meeting minutes produced by Defendants

23  indicate that a "full-time auditor" for mental health issues was hired in

24  December 2022.  *Id.* ¶ 35, Ex. FF.  However, no reports authored by that "full-time

25  auditor" appear to have been produced.  A presentation about mental health quality

26  assurance statistics indicates that 21 peer reviews were conducted, but it does not

27  appear that all documents were produced.  *Id.* ¶ 36, Ex. GG.

28       Plaintiffs are prejudiced by Defendants' failure to produce these documents.

1   Understanding what steps, if any, Defendants take to understand and correct

2   deficiencies within the Jail is critical to Plaintiffs' claims.  Evidence of Defendants'

3   quality assurance practices—to the extent they exist—will reveal not only the results

4   of Defendants' self-evaluation but also whether Defendants are currently engaging

5   in monitoring and correcting the many problems Plaintiffs have alleged.

6   **II.    Defendants Failed to Produce Training Materials Responsive to Request
        Nos. 32, 33, 98-100, 110, 111, 114, 118, 121, 129, 138, 143-148, 150, 155-
7        159, 161, 162, 164-167, 171, 175, 180, 182, 184, 198, 211, 217-221, 225,
        230, 232-234, 236, 240, & 246.**

8

9          According to Defendants as of the December 20, 2023 hearing, "[e]very

10  single training that we have has been produced, except for what [Defendants are] in

11  the process of producing in response" to Plaintiffs' Fifth Set of Requests for

12  Production.  Dec. 20, 2023 Hearing Tr. at 127:6-8.  However, Defendants'

13  productions do not include complete training documents (including

14  presentations/materials provided as well as evidence whether some, all, or no staff

15  completed the trainings) on numerous topics, including:  transfer of incarcerated

16  people with pending sick call requests (Request No. 99); confidentiality of health

17  care appointments (Request No. 110); discharge planning (Request No. 114);

18  provision of medication to people upon discharge from the Jail (Request No. 138);

19  treatment of mental health issues (Request No. 147); housing of suicidal people in

20  insolation (Request No. 159); providing people with mental health disorders with

21  mental health care while in such housing (Request No. 165); responding to

22  intercoms pressed by incarcerated people (Request No. 182); propriety of dental

23  extractions (Request No. 220).  *See* Swearingen Decl. ¶ 2, Ex. A.

24         Plaintiffs are prejudiced without these documents.  For example, a "Training

25  Bulletin" produced by Defendants—describing "a new referral process" for the

26  Outpatient Stepdown Program ("OPSD," "a specialized mental health housing unit")

27  implemented on August 9, 2023—is not reflected in Defendants' policy on mental

28  health housing.  *See id.* ¶¶ 37-38, Exs. HH & II.  Absent production of this training

document, Plaintiffs would be unable to evaluate the procedures relating to OPSD referrals that staff are trained on. Defendants should be required to produce all responsive training materials (including all Training Bulletins) as well as any tracking documents showing the dates and attendance of staff.

### III. Defendants Failed to Produce Documents Evidencing Practice in Response to Request Nos. 32, 49, 82, 97, 99, 100, 105, 106, 109-111, 113, 114, 119, 121, 125-130, 138, 141, 146-148, 150, 152, 155-159, 161, 162, 164, 165, 167, 172, 175, 176, 179, 180, 182, 179, 193, 195, 221, 231, & 232-236.

Defendants' productions do not include complete documents or logs, going back to January 1, 2021[2] as requested, including for the following topics: use of tactical teams (Request No. 82); discharge planning (Request No. 114); provision of medication to people upon discharge from the Jail (Request No. 138); treatment for people housed in the Outpatient Stepdown Unit (Request No. 141); treatment of mental health issues (Request No. 147); placement of people with mental health disorders in administrative segregation (Request No. 164); trash collection and removal (Request No. 175); sanitization of cells (Request No. 176); responding to intercoms pressed by incarcerated people (Request No. 182); interdiction of contraband narcotics (Request No. 179); safety checks (Request No. 180); use of body scanners (Request No. 193); use of body-worn cameras (Request No. 195); access to the law library (Request No. 234); distribution of legal materials to pro se incarcerated people (Request No. 235); distribution and collection of legal mail (Request No. 236). *See* Swearingen Decl. ¶ 2, Ex. A.

Defendants previously stated that, for at least some of these processes, no log or document is created. For example, Defendants explained that "[t]hey do not maintain logs or debriefing reports/writing" on "tactical teams," but rather "the only way to search is by involved IP name." *Id.* ¶ 19, Ex. W. However, a document

---

[2] For some of the above Requests, Defendants produced only sporadic evidence of practice, but not documents covering the entire time period of the request.

produced by Defendants described as a "Watch Commander Log" *does* provide such documentation about the activation of a tactical response team. *Id.* ¶ 39, Ex. JJ at 482. The Watch Commander Log also describes medical emergencies and documents when a housing unit is placed in "Restricted Movement," when intercoms are not working, and other events relevant to Plaintiffs' claims. *Id.* Despite the responsiveness of these Watch Commander Logs, not all such logs have been produced.

Plaintiffs are prejudiced without the production of these documents. Plaintiffs have alleged that Defendants do not consistently operate according to policy, and those allegations have already been borne out as part of this litigation. For example, despite Defendants' policies requiring people with disabilities to be assigned lower bunks, Plaintiffs' inspection and Defendants' document productions early in this case revealed that Defendants do house people in wheelchairs on top bunks. Dkt. 281-3 at ECF 267, 271. Similarly, despite policies requiring safety checks to be documented, Defendants' deponents have explained that the Sheriff's Department has opened disciplinary investigations into some employees who repeatedly failed to conduct such checks. Swearingen Decl. ¶ 45, Ex. PP at 710:17-711:20. Defendants should be required to produce all documents since January 1, 2021 that document actual practices responsive to the above document requests.

## IV. The Parties Continue to Negotiate Regarding Production of a Subset of Individual Custody and Medical Records, Which Defendants Have Not Yet Produced.

Many of Plaintiffs' Requests call for evidence that are maintained in an incarcerated person's medical and custody records, as Defendants' Responses acknowledge. *See, e.g.*, *id.* Ex. X (Request No. 138, relating to "medication provided to INCARCERATED PEOPLE at discharge from the JAIL"; Request No. 148, relating to "provision of a comprehensive MENTAL HEALTH assessment for INCARCERATED PERSONS"). During the Parties' November 16, 2023 meet and confer regarding Plaintiffs' Fifth Set of Requests for Production, the Parties

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION
AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSE

discussed Defendants' producing a subset of medical and custody records (as opposed to all class member records), based on criteria provided by Plaintiffs' counsel. *Id.* ¶ 28. Plaintiffs provided a proposal on December 7, 2023. *Id.* ¶ 29, Ex. BB. During the November 21, 2023 discovery conference, Defendants committed to producing a "subset of incarcerated person, class member medical records and custody files," meeting certain parameters proposed by Plaintiffs. *See* Nov. 21, 2023 Hearing Tr. at 5:7-6:3.

Plaintiffs will be prejudiced without production of these individual records. Plaintiffs' experts—particularly those focusing on medical, mental health, and dental care—intend to review those documents as part of their analysis about the quality of care provided in the Jail. *Id.* ¶ 29. The documents Defendants have produced to date are no substitute for individual medical and custody records. For example, Defendants produced a spreadsheet of dental sick call requests, reflecting, among other information, the "Reason" for each request. *Id.* ¶ 40, Ex. KK. However, the spreadsheet does not contain any information regarding what treatment was provided. *See id.* Rather, the "Action Taken" column for each dental sick call is full of notes indicating that the pertinent information is in the patient's medical chart. *Id.* Without the information in individuals' records, Plaintiffs' expert is unable to determine the adequacy of care, if any, that was provided to those class members.

While no such individual records have been produced yet, the Parties are continuing to meet and confer regarding this production and jointly seek to extend the deadline for Plaintiffs to move to compel on this issue. *See* Dkt. 487.

## V. Defendants Failed to Produce Contractor Activity Reports Responsive to Plaintiffs' Request No. 78.

Defendants did not produce "DOCUMENTS RELATING TO workload, productivity, or daily services provided by CONTRACTORS at the JAIL from January 1, 2021 to the present." *See* Swearingen Decl. ¶ 3, Ex. B at 54 (Request

No. 78), Ex. QQ.  Yet, other documents produced by Defendants indicate that such reports should exist.  For example, Defendants' contract with NaphCare requires various types of reports to be provided to Defendants, *e.g.*, "Statistical Daily Reports pertaining to medical services rendered," *id*. Ex. LL, § 2.3.29.5, "Daily Hospitalization Report," *id.* § 2.3.16.11.1  On December 1, 2023, the Sheriff's Department sent NaphCare a Corrective Action Notice requesting reports on numerous issues, for example, "Dental report[s]," in order to analyze NaphCare's failure to "effectively respond to annual/period cleanings" and refusal to "authoriz[e] Root Canals."  *Id.* ¶ 42, Ex. MM at 677-678.  Absent production of such productivity reports, Plaintiffs will be deprived of critical information relating to Defendants' provision of health care to incarcerated people.

## VI.    Defendants Failed to Produce Staffing Plans Responsive to Plaintiffs' Request No. 191.

Plaintiffs requested that Defendants produce "STAFFING PLANS RELATING TO each position at the JAIL from January 1, 2021 to present."  *Id.* ¶ 4, Ex. C at 83.  Documents produced by Defendants confirm that such staffing plans exist.  For example, an August 20, 2022 email describes an emergency staffing plan was completed.  *Id.* ¶ 43, Ex. NN.  Yet, no such documents have been produced.

Plaintiffs will be prejudiced absent production of staffing plans.  Staffing plans and minimum staffing requirements provide basic information about how jails function, including whether they have sufficient staff for tasks like safety checks, medical escorts, and responding to emergencies.  Understaffing is an admitted problem in the Jail, which creates risks to class members, for example, delayed care when mental health positions are not filled.  *Id*.  Defendants should be required to produce all staffing plans.

## VII.   Defendants Failed to Produce Text Message or Instant Message ESI, Despite Evidence that Responsive Communications Exist.

Plaintiffs requested that Defendants produce, among other things, "instant

1  messaging" communications and "text messages," regarding the issues raised in the

2  Third Amended Complaint.  *See id.* ¶ 3, Ex. B at 43; *see, e.g.*, *id.* at 47 (Request

3  No. 34 seeking communications with NaphCare, Inc; Request Nos. 136 and 137

4  seeking communications with any contractor).  Defendants' document production

5  confirms that responsive text and instant messages exist:  The Jail's Chief Medical

6  Officer confirmed that Sheriff's Department staff have direct communications with

7  Naphcare staff by text and instant message.  *Id.* Ex. DD; Ex. PP at 705:13-25.

8  However, no such text or instant messages have been produced.

9      Despite Plaintiffs' repeated requests that Defendants preserve, collect, and

10  produce text and instant messages, Defendants provided conflicting information

11  about whether responsive text messages existed, before ultimately producing no

12  such messages.  *See id.* ¶¶ 15, 48 & Ex. RR.  As to instant messages, Defendants

13  have stated that "Teams chats are not retained."  *Id.* ¶ 15, Ex. Q at 208.[3]  On

14  January 11, 2024, Defendants agreed to look into whether responsive text or instant

15  messages exist.  *Id.* ¶ 48.

16      Plaintiffs will be prejudiced absent production of any responsive text or

17  instant messages.  According to the Jail's Chief Medical Officer, many of those

18  communications are between Sheriff's Department staff and NaphCare, Inc., the

19  Jail's medical, mental health, and dental contractor.  *Id.* ¶ 33, Ex. DD.  As noted

20  above, the Sheriff's Department has formally expressed grave concerns about

21  NaphCare's performance in the Jail, including its failure to maintain relationships

22  with outside specialists, resulting in providers refusing to accept patients from the

23  Jail, *id.* Ex. MM at 674, 676-677; its hiring of unlicensed mental health

24  professionals, *id.* at 677; its failure to initiate MAT induction in the time frame

25  required by the contract, *id.* at 678; and its failure to document dental care requests,

26

27  _____

[3] If it is ultimately confirmed that Defendants have deleted responsive documents,
such as instant messages via Microsoft Teams, Plaintiffs request the opportunity to

28  file a motion for sanctions for spoliation.

1  resulting in patients being dropped from sick call lists, *id.* at 677-678  Text and

2  instant messages internal to Sheriffs' Department staff as well as between Sheriffs'

3  Department and NaphCare staff are likely to provide further details regarding those

4  failures and the harm to individual class members, as well as reflect what efforts, if

5  any, Defendants have made to address those harms as they arise.  And, unlike

6  formal memoranda or even email correspondence, text and instant messages are

7  likely to reflect an author's immediate reaction to problems as they arise.

8  **VIII.  The Email ESI Defendants Produced Is Incomplete.**

9       For months, Plaintiffs attempted to negotiate search terms with Defendants,

10  repeatedly asking for unique hit reports so that Plaintiffs could use that critical

11  information to negotiate with Defendants to narrow the initial set of proposed search

12  terms.  *Id.* ¶¶ 5-16.  However, Defendants refused to produce that information,

13  therefore depriving Plaintiffs the opportunity to engage in the typical iterative

14  process of narrowing terms and custodians.  Defendants instead chose their own

15  search terms, ignoring Plaintiffs' concern that doing so would result in an ESI

16  production less likely to yield responsive documents.  *Id.* ¶ 16, Exs. R & S.  The

17  result is that Defendants withheld responsive ESI and produced a substantial amount

18  of non-responsive ESI.

19       In many instances, Defendants completely refused to search for relevant ESI.

20  For example, Defendants declined to include *any* search terms designed to search

21  for ESI on the issue of "bypass," a punitive practice (not written in official policy)

22  of placing someone on lockdown without out-of-cell time.  *See* TAC, Dkt. 231 at

23  ¶ 348.  Plaintiffs had proposed the term <bypass~ OR (by /3 pass~)>, which

24  Defendants unilaterally deleted from their search.  *Id.* ¶ 12.  *Compare id.* ¶ 6, Ex. F

25  *with id.* ¶ 15, Ex. R.  Defendants refused to search for communications about missed

26  or delayed safety checks, despite Plaintiffs' proposed search terms for that issue.  *Id.*

27  ¶¶ 12-15, Ex. Q at 209.

28       Defendants also revised ESI search terms to be less likely to yield relevant

information.  For example, Defendants revised Plaintiffs' proposed search term #35 <pocket OR thunderdome> to <thunderdome AND jail>.  *Compare id.* ¶ 6, Ex. F *with id.* ¶ 15, Ex. R.  Plaintiffs' proposed term was designed to gather correspondence among Jail staff regarding violence in the Jail in "the pocket," areas where fights regularly occur because there is no camera coverage.  *See* TAC, Dkt. 231 at ¶ 328.  Similarly, Plaintiffs have explained that Jail staff and class members refer to George Bailey Detention Facility as "the Thunderdome," because of the amount of fights that happen there.  Defendants' revised search term—which omits *any* reference to the "pocket" and requires that the term "jail" also appear in any returned document—resulted in only fifteen documents, none of which are internal correspondence among staff related to fights in the Jail.

Given Defendants' refusal to provide a unique hit list that would assist the parties in narrowing the ESI, Defendants' refusal to search for terms and custodians proposed by Plaintiffs, and the resulting large number of non-responsive documents produced through ESI, Defendants should be required to produce documents responsive to the narrowed set of search terms that Plaintiffs provided on November 29, 2023.  This narrowed set includes only half (43 of 86) of the original search terms proposed by Plaintiffs, and limited those searches to only certain agencies or custodians.  *See* Swearingen Decl. ¶ 13, Ex. O.  Alternatively, Defendants should be required to provide a unique, de-duped hit list of Plaintiffs' original search terms and custodians and then further meet and confer with Plaintiffs to narrow those terms and custodians to result in likely responsive ESI.

## IX.    Defendants Refused to Produce Data Responsive to Interrogatory No. 25.

Plaintiffs' Interrogatory No. 25 seeks "snapshot data," which reflects the Jail population at a moment in time, for use by Plaintiffs' safety and security expert to analyze the Jail's classification process.  After weeks of meeting and conferring, Defendants on January 11, 2024 produced an amended response refusing to provide Plaintiffs' requested data.  *Id.* ¶ 31, Ex. CC.  Plaintiffs will be prejudiced without

this data, which dozens of county jails across the country have routinely provided to Plaintiffs' expert in the course of his work.  Declaration of James Austin, filed herewith, ¶ 10.  Indeed, Defendants in this case provided the same information to Plaintiffs' expert a decade ago as part of a separate report.  *Id.* ¶ 11.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be GRANTED. Defendants should be required to produce all responsive training, evidence of practice, and quality assurance documents since January 1, 2021.  To the extent that responsive documents do not exist for a particular Request, Defendants should be required to amend their responses to say so.

DATED:  January 17, 2024          Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP


By: */s/ Van Swearingen*
    Van Swearingen

Attorneys for Plaintiffs and the Certified Class and Subclasses