1   GAY C. GRUNFELD – 121944          CHRISTOPHER M. YOUNG – 163319
    VAN SWEARINGEN – 259809           ISABELLA NEAL – 328323
2   PRIYAH KAUL – 307956              OLIVER KIEFER – 332830
    ERIC MONEK ANDERSON – 320934      DLA PIPER LLP (US)
3   HANNAH M. CHARTOFF – 324529       4365 Executive Drive, Suite 1100
    ROSEN BIEN                        San Diego, California  92121-2133
4   GALVAN & GRUNFELD LLP             Telephone:  (858) 677-1400
    101 Mission Street, Sixth Floor   Facsimile:  (858) 677-1401
5   San Francisco, California  94105-1738   christopher.young@dlapiper.com
    Telephone:  (415) 433-6830        isabella.neal@dlapiper.com
6   Facsimile:   (415) 433-7104       oliver.kiefer@dlapiper.com
    ggrunfeld@rbgg.com
7   vswearingen@rbgg.com
    pkaul@rbgg.com
8   eanderson@rbgg.com
    hchartoff@rbgg.com
9
    AARON J. FISCHER – 247391
10  LAW OFFICE OF
    AARON J. FISCHER
11  1400 Shattuck Square Suite 12 - #344
    Berkeley, California  94709
12  Telephone:  (510) 806-7366
    Facsimile:   (510) 694-6314
13  ajf@aaronfischerlaw.com

14  Attorneys for Plaintiffs and the
    Certified Class and Subclasses

15

16                 UNITED STATES DISTRICT COURT

17               SOUTHERN DISTRICT OF CALIFORNIA

18  DARRYL DUNSMORE, ANDREE          Case No. 3:20-cv-00406-AJB-DDL
    ANDRADE, ERNEST ARCHULETA,
19  JAMES CLARK, ANTHONY EDWARDS,    **DECLARATION OF VAN**
    LISA LANDERS, REANNA LEVY,       **SWEARINGEN IN SUPPORT**
20  JOSUE LOPEZ, CHRISTOPHER         **OF PLAINTIFFS' NOTICE OF**
    NELSON, CHRISTOPHER NORWOOD,     **MOTION AND MOTION TO**
21  JESSE OLIVARES, GUSTAVO          **COMPEL PRODUCTION OF**
    SEPULVEDA, MICHAEL TAYLOR, and   **DOCUMENTS AND**
22  LAURA ZOERNER, on behalf of      **INTERROGATORY RESPONSE**
    themselves and all others similarly situated,
23                                   Judge:     Hon. Anthony J. Battaglia
                Plaintiffs,          Magistrate: Hon. David D. Leshner
24
          v.                         Trial Date: None Set
25  SAN DIEGO COUNTY SHERIFF'S
    DEPARTMENT, COUNTY OF SAN
26  DIEGO, SAN DIEGO COUNTY
    PROBATION DEPARTMENT, and DOES
27  1 to 20, inclusive,
                Defendants.
28

[4414118.3]                                    Case No. 3:20-cv-00406-AJB-DDL

I, Van Swearingen, declare:

1.     I am an attorney duly admitted to practice before this Court.  I am a partner in the law firm of Rosen Bien Galvan & Grunfeld LLP, counsel of record for Plaintiffs.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could competently so testify.  I make this declaration in support of Plaintiffs' Notice of Motion and Motion to Compel Production of Documents and Interrogatory Response.

2.     Attached hereto as **Exhibit A** is a table summarizing the status of outstanding document requests in this case, identifying the Request Number, the documents that have been produced by Defendants, and the documents Plaintiffs anticipate are responsive but have not been produced.

3.     On June 15, 2023, Plaintiffs served their Third Set of Requests for Production, a true and correct copy of which is attached hereto as **Exhibit B**.

4.     On September 1, 2023, Plaintiffs served their Fifth Set of Requests for Production, a true and correct copy of which is attached hereto as **Exhibit C**, and their Second Set of Interrogatories, a true and correct copy of which is attached hereto as **Exhibit D**.

I.     **Plaintiffs' Attempts to Meet and Confer with Defendants Regarding ESI**

5.     On June 2, 2023, I sent a letter to counsel for Defendants, asking to schedule a conversation regarding this Court's ESI checklist.  A true and correct copy of that letter is attached hereto as **Exhibit E**.  The letter asks, among other things, whether any sources of custodial documents—including but not limited to "text messages"—were "not reasonably accessible, such that they will not be collected and reviewed."  Ex. E at 114-115.  The letter also asks about document destruction policies and whether Defendants "will ensure that all original metadata is included with produced materials."  *Id.* at 115.  The June 2, 2023 letter referenced and enclosed my January 26, 2022 letter requesting that Defendants preserve documents "which may be subject to discovery in this case."  That January 26, 2022

1  litigation hold letter is included as an enclosure to the June 2, 2023 letter attached as

2  Exhibit E.  *Id.* at 118-119.

3      6.    On June 22, 2023, Plaintiffs proposed search terms and custodians for

4  ESI discovery, consistent with the Court's scheduling order requiring such

5  negotiations to take place early in the discovery process.  True and correct copies of

6  Plaintiffs' proposed search terms and custodian list are attached hereto as **Exhibits**

7  **F and G**, respectively.

8      7.    Over a period of several months, the parties met and conferred about

9  Plaintiffs' proposed search terms and custodians by phone and email, as described in

10  Plaintiffs' November 16, 2023 letter, a true and correct copy of which is attached

11  hereto as **Exhibit H**.  (Unless otherwise noted, the email correspondence described

12  in Paragraphs 7-11 below is included as attachments to Exhibit H.)

13      8.    On June 22, 2023, Plaintiffs requested "that Defendants run a hit report

14  across all custodians using [Plaintiffs' proposed] terms, and the parties can then

15  discuss adjusting the terms to the extent any particular term results in an

16  overwhelming number of hits."  Ex. H at 148.  Defendants repeatedly delayed or

17  refused, initially stating that Defendants would not agree to search either Plaintiffs'

18  proposed terms or custodians and suggested that ESI must be limited to "a targeted

19  discovery request."  *Id*.  On June 28, 2023, Plaintiffs' counsel again explained that

20  they anticipated that Defendants would collect all documents from custodians hitting

21  on the proposed search term and asked for "a hit report for the proposed search

22  terms for the agreed upon set of custodians."  *Id.* at 147.  In the same email,

23  Plaintiffs' counsel also asked Defendants to confirm that "all the various types of

24  communications outlined in Plaintiffs' Third Set of Requests for Production"—*e.g.*,

25  text and instant messages—would be collected for all custodians, searched, and

26  produced.  *Id.* 146.

27      9.    After further meet and confer via email, Defendants' counsel asserted

28  on July 3, 2023 that they "agreed on [Plaintiffs'] list of custodians and [Plaintiffs']

list of search terms." *Id.* at 143.  After Plaintiffs' counsel requested clarification on what exactly had been agreed to, Defendants' counsel confirmed that Defendants would conduct a search of all custodians using Plaintiffs' proposed search terms and that they would supply the number of hits per search term. *Id.* at 137-138.  In particular, Defendants' counsel stated that "if the client does not have the capability to run analytics reports as to number of documents by search term … we can do it through our document management system." *Id.* at 138.  In light of Defendants' confirmation that all documents would be collected and the search would be conducted, as well as repeated statements that Defendants would only meet and confer about ESI based on specific requests for production, Plaintiffs understood that Defendants had in fact collected documents and would manually search those responsive documents for responsiveness to Plaintiffs' Requests for Production.

10.    Once Defendants responded to Plaintiffs' Third Set of Requests for Production on August 14, 2023, Plaintiffs again raised the issue of ESI and asked for Defendants' progress on the promised hit report.  Plaintiffs repeatedly requested this information throughout meet and confer meetings in August, September, October, and November.  Although Defendants provided some documents they described as hit reports, *none* of those documents provided unique hits, and many were "partial" reports, making it impossible to determine if a hit count result of "100" represented 100 unique documents or represented a single document sent to 100 people.  Despite providing some information regarding non-unique hits on October 30, 2023, Defendants confirmed on November 5, 2023 that the search for documents from the Sheriff's Department using the June 22 search terms had not been completed.  A true and correct copy of the parties' correspondence from November 5, 2023 is attached hereto as **Exhibit I**.

11.    Defendants also confirmed on October 31, 2023 that the data had not been imported to counsel's document management system, Ex. H at 155—despite counsel's July 10, 2023 representation that that the data transfer to counsel's

document management system would be completed if necessary, *id.* at 138.  On

November 9, 2023, Defendants' counsel claimed that using a document

management system or e-discovery vendor to generate a unique hit list would cause

"months of work" and millions of dollars.  *Id.* at 166.  Plaintiffs' counsel responded

that, based on experience, generation of a unique hit report should take hours, not

months, in the November 16, 2023 letter referenced in Paragraph 8.  *Id.* at 134.

12.    Following this Court's November 22, 2023 order requiring the parties

to "meet and confer in good faith regarding ESI search terms and custodians," Dkt.

454 at 2-3, Plaintiffs reached out to Defendants on November 28, 2023 to continue

their attempts to meet and confer regarding Plaintiffs' proposed search terms and

custodians.  Defendants' counsel responded the same day by sending a "pared down

custodian list and the revised search term list."  A true and correct copy of this email

chain is attached hereto as **Exhibit J**.  Defendants' custodian list deleted half of

Plaintiffs' proposed 76 custodians, including all of the 13 custodians from the

County of San Diego.  A true and correct copy of Defendants' "pared down

custodian list" is attached hereto as **Exhibit K**.  Defendants' search term list deleted

57 of Plaintiffs' 86 proposed search terms (leaving only 29), and significantly

changed the majority of the remaining search terms—including for many by adding

the limiting phrase "and jail," *i.e.*, requiring any document collected as a result of

the search term to include the word "jail" and excluding any email that, for example,

might refer only to a specific jail facility like "GBDF" or "Bailey."  Defendants

deleted important search terms such as <((safety /5 check~) OR "11-53") /20 (wait~

OR delay~ OR slow~ OR miss~ OR skip~ OR (back~ /3 up) OR backup~ OR

backlog~ OR (back~ /3 log~))> and <bypass~ OR (by /3 pass~)>, which was

designed to search for communications about missed or delayed safety checks.  A

true and correct copy of Defendants' "revised search term list" is attached hereto as

**Exhibit L**.

13.    On November 29, 2023, Defendants' counsel sent Plaintiffs' counsel a

further "refined" set of search terms, which further limited many of the search terms to an even more narrow subset of custodians. A true and correct copy of Defendants' even more narrow set of search terms is attached hereto as **Exhibit M**. Plaintiffs' counsel responded by sending their own proposal of a narrowed set of search terms, which would have limited Defendants' searches to half (43 of 86) of the original search terms proposed by Plaintiffs, and limited those searches to only certain agencies or custodians. True and correct copies of this email and Plaintiffs' revised proposed search terms are attached hereto as **Exhibits N and O**, respectively.

14.     Following a meet and confer phone call, Defendants sent Plaintiffs a further revised set of search terms by email on December 4, 2023. While agreeing to some of Plaintiffs' narrowed search terms, Defendants unilaterally deleted or substantially revised more than half of them. For example, Defendants deleted Plaintiffs' search terms related to mandatory overtime, murders, violence against cellmates, suicides, safety checks, snitches, and the recording of confidential calls. Defendants substantially changed search terms by replacing searches for delays in the provision of care with <Prescrip~ /5 glass> and by routinely adding the term "jail" to searches where it is unlikely that the term would be included in day-to-day communications (e.g., the term "jail" was added to searches for retaliation, misclassification, and offensive slang words for people with disabilities). A true and copy of Defendants' revised proposed search terms is attached hereto as **Exhibit P**.

15.     On December 5, 2023, Plaintiffs' counsel sent an email to Defendants' counsel explaining that "Plaintiffs do not agree that the revised terms and custodian lists are appropriate. You have substantially deleted or changed searches in Plaintiffs' proposal—including by deleting some terms and adding others—without meeting and conferring or providing a unique hit count." Plaintiffs' counsel provided numerous examples of why search terms that Plaintiffs proposed and that Defendants deleted would have plausibly yielded more relevant ESI, and therefore

should be included in Defendants' search. Plaintiffs' counsel explained that Defendants revised search terms in ways that would result in less relevant ESI being produced. Plaintiffs also disagreed with Defendants' decision to limit the custodians to just one or a few custodians. Plaintiffs explained how all of these actions by Defendants would likely yield less relevant ESI than Plaintiffs' proposal. Defendants' counsel responded the same day stating that Defendants chose their search terms and custodians to "cut down the number of hits." Plaintiffs' counsel responded on December 6, 2023, reiterating that a meaningful conversation about the number of hits cannot take place without Defendants providing a unique hit list and that such a list has never been provided. Plaintiffs' counsel explained that Defendants' narrowing of the search terms and custodians was done in a one-sided manner that shields important information from Plaintiffs. A true and correct copy of the parties' email correspondence on this topic from December 4 to 6, 2023 is attached hereto as **Exhibit Q**. During those meet and confer exchanges, Plaintiffs also sought clarity regarding whether Defendants used text or instant messages. According to counsel for Defendants, "Teams chats are not retained. Text may be used, as I said, but the example you game me was a text or Teams message sent in an emergency, to which I responded that no deputy who ever send a text or log into Team to communicate about an emergency!" Ex. Q at 208.

16. On December 7, 2023, Defendants produced a final search term list, which was identical to the search term list Defendants provided on December 4, 2023—but for revisions to two search terms (numbers 3 and 41) which further narrowed Plaintiffs' proposed search terms. True and correct copies of Defendants' applied list of search terms and custodians are attached hereto as **Exhibits R and S**, respectively.

17. Defendants' search terms did not yield sufficient responsive documents. For example, Defendants' revised search term "<thunderdome and jail> resulted in only fifteen documents, all of which are news articles, bulletins,

Plaintiffs' complaint, duplicates of autopsy reports, or similar—none of which are internal correspondence among staff related to fights in the Jail. Defendants never provided Plaintiffs with a unique hit count for Plaintiffs' narrowed proposal for search terms and custodians.

**II.    Plaintiffs' Attempts to Meet and Confer with Defendants Regarding Other Documents**

18.    Defendants responded to Plaintiffs' Third Set of Requests for Production on August 14, 2023. A true and correct copy of that response is attached hereto as **Exhibit T**.

19.    Plaintiffs reached out to meet and confer regarding Defendants' responses on August 15, 2023, and the parties continued to meet and confer over the next several weeks. True and correct copies of the parties' email correspondence on this issue from August 15 to September 14 are attached hereto as **Exhibits U and V**, respectively. As documented in those emails, the parties' meet and confer conversations were marked by repeated delays on the part of Defendants, as Plaintiffs repeatedly noted that they were "look[ing] forward to a response" on September 6, 2023, and still "look[ing] forward to an update" on September 14, 2023, Ex. U at 255, 260, to a question that had been asked on August 24, 2023, Ex. V at 272. For example, despite the fact that Plaintiffs requested production of post orders in their June 15, 2023 requests, counsel for Defendants was still unable to confirm that such documents even existed until after September 14, 2023. *See* Ex. U at 255 (Plaintiffs "look forward to an update ASAP" regarding Request No. 29). Similarly, Plaintiffs' requested production of logs related to use of tactical teams in the June 15, 2023 requests. Counsel for Defendants in their August 14, 2023 response stated that they were not aware of the definition of tactical teams, *see* Ex. T at 251 (response to Request No. 28), despite the term "tactical teams" appearing in Sheriff's Department Policy I.70. *See* Ex. U at 258 (Plaintiffs "look forward to an update ASAP" regarding Request No. 82). Defendants did not

1  provide any update regarding this issue until November 1, 2023 (a true and correct

2  copy of that email is attached hereto as **Exhibit W**).

3          20.     Defendants responded to Plaintiffs' Fifth Set of Requests for

4  Production on November 10, 2023.  A true and correct copy of the response is

5  attached hereto as **Exhibit X**.

6          21.     At the November 6, 2023 discovery conference, the Court ordered the

7  parties to "meet and confer regarding any outstanding discovery issues and will file

8  a joint status report with respect to any outstanding discovery issues by

9  November 17th."  Transcript at 24:9-12; *see also* Order Following Discovery

10 Conference, Dkt. 441 at 1.  Starting on November 8, 2023, Plaintiffs repeatedly

11 attempted to meet and confer with Defendants about the discovery that would be at

12 issue in the November 17, 2023 joint status report, but Defendants' counsel refused

13 to meet and confer before November 16, 2023—the day before the parties' joint

14 status report was due.

15         22.     The parties met and conferred for several hours on November 16, 2023

16 regarding Plaintiffs' Fifth Set of Requests for Production.  Throughout that

17 conference, counsel for Defendants stated that Defendants were "following up" on a

18 substantial number of Plaintiffs' requests, which Plaintiffs understood to mean that

19 Defendants intended to ultimately produce documents in response to those requests.

20 For the vast majority of those requests on which Defendants indicated they were

21 "following up," Defendants did not provide any additional information regarding

22 what documents they anticipated might be responsive or might be produced as a

23 result of those "follow ups."

24         23.     On November 17, 2023 counsel for Plaintiffs emailed counsel for

25 Defendants a summary of the November 16, 2023 call and provided additional

26 information as requested by Defendants, and expected Defendants would then

27 "follow up" by providing additional information about what documents were

28 available, before ultimately producing those documents.  On November 20, 2023,

1  counsel for Defendants responded that they "are not conducting searching for

2  anything more … until [Defendants] have agreement *in writing* from Plaintiffs that

3  the search and any resulting documents will resolve the entire dispute as to the entire

4  RFP."  (Emphasis in the original.)  Plaintiffs responded again asking for additional

5  information, which Defendants declined to provide.  A true and correct copy of that

6  correspondence from November 16-20 is attached hereto as **Exhibit Y**.

7      24.    Throughout the meet and confer meetings and emails, as well as in the

8  following weeks during which the parties exchanged drafts of the discovery dispute

9  chart ultimately filed with the Court, Plaintiffs revised and substantially narrowed

10  the documents sought by Request for Product Set 5.  In particular, Plaintiffs limited

11  the time frame for almost all requests to January 1, 2021 to present.  Ex. Y at 340.

12  Plaintiffs are aware of no court limiting document productions in a jail conditions

13  case to less than three years.

14      25.    In addition, Plaintiffs made clear that their Requests seeking "All

15  DOCUMENTS" were narrowed to four categories of documents: policies and

16  procedures; training materials (presentations and handouts as well as whether all,

17  some, or no staff have been trained); evidence of practice (documentation of what

18  happened, including logs and lists); and quality assurance (including audits, peer

19  reviews, and corrective actions).

20      26.    In a letter I sent to counsel for Defendants on December 8, 2023,

21  Plaintiffs also noted their concerns that Defendants' document productions to date

22  were lacking critical information.  Plaintiffs' noted again that they requested

23  production of non-email ESI communications, in particular text messages and

24  instant messages through Microsoft Teams.  A true and correct copy of my

25  December 8, 2023 letter is attached hereto as **Exhibit Z**.

26      27.    Plaintiffs attempted to continue meeting and conferring regarding their

27  Fifth Set of Document Requests, culminating in a letter sent to Defendants on

28  December 18, 2023, a true and correct copy of which is attached hereto as

**Exhibit AA**.  For each Request for Production at issue in the parties' Joint List of Disputes, Plaintiffs responded to Defendants' positions in the Joint List and further identified the types of documents anticipated to be kept by Defendants that would be responsive Plaintiffs' Requests for Production.  The letter closed by asking Defendants to inform Plaintiffs of their availability to further meet and confer.  On December 21, 2023, I sent a follow-up email to Defendants' counsel asking if they were available to meet and confer about the disputed RFPs that Plaintiffs had substantially narrowed.  Defendants' counsel responded that they were not available until after the holidays and that Plaintiffs would have to review what Defendants produced first.

28.    Plaintiffs have also attempted to meet and confer with Defendants regarding production of a subset of individual incarcerated person medical and custody records, which Plaintiffs understood Defendants had agreed to produce.  *See* Transcript of November 21, 2023 Hearing at 5:7-6:3.  During the Parties' November 16, 2023 meet and confer regarding Plaintiffs' Fifth Set of Requests for Production, the Parties discussed Defendants' producing a subset of medical and custody records (as opposed to all class member records), based on criteria provided by Plaintiffs' counsel.

29.    On December 7, 2023, after coordinating with their medical, mental health, and dental experts, who intend to analyze those documents, Plaintiffs sent a proposal to Defendants for selecting 570 of individual medical and custody records (e.g. 10 records each of people diagnosed with the following illnesses:  1) HIV/AIDS, 2) Hepatitis C, 3) Type 2 Diabetes, 4) Hypertension, 5) Cancer; 10 records of people who received gynecological care; 10 records of people sent to the emergency room for a medical reason after being booked into the jail).  Defendants first indicated that they were unable to search for medical records meeting the criteria that Plaintiffs identified.  A true and correct copy of the parties' email correspondence from December 13 to 15, 2023 on this issue is attached hereto as

**Exhibit BB**.  On December 13, 2023, Defendants responded that "We need to hold off on this for now….  In addition, none of this can happen by December 22nd," because identifying records in Plaintiffs' criteria would require "hand search[ing] thousands of medical records."  Ex. BB at 408.  On December 15, 2023, Defendants' counsel indicated that "there is a way to run lists of individuals taking certain medications that would only or most likely only be taken by individuals with certain conditions."  *Id.* at 401.  Plaintiffs asked for further clarification about what records could be searched for what criteria, *e.g.*, what "types of reports can be generated that would help with identifying the records [Plaintiffs] requested," and maintained that they expected all such records to be produced by the December 22 deadline.  *Id.* at 402, 404.  Defendants refused to continue meeting and conferring at that time, instead stating:  "Let's just leave this aside for the judge to decide at the hearing.  It's clear no amount of effort on my part is going to satisfy."  *Id.* at 399.  Plaintiffs explained that they "remain open to meeting and conferring on this topic, but we cannot do so without additional information."  *Id.*

30.    On January 11, 2024, the parties met and conferred on this issue again and agreed to continue working together on a proposal for document productions.

31.    Plaintiffs' counsel have also met and conferred with Defendants' counsel regarding Interrogatory No. 25.  On November 16, 2023, Plaintiffs stated that they were amenable to narrowing the time frame of the request, and Defendants' counsel agreed to find out whether Defendants were able to generate a report or reports with the information requested in the interrogatory.  The issue was raised in the parties' joint status report filed November 17, 2023, and Plaintiffs followed up on the request on November 21, 2023 and again in a December 8, 2023 letter to Defendants, *see* Ex. Z at 349.  On January 11, 2024, Defendants served an amended response stating that Defendants have "provided several spreadsheets identifying certain of the information requested," and although not all information has been provided, Defendants "will not search the records of 4000+ individuals for

the remaining information." A true and correct copy of Defendants' Amended Response is attached hereto as **Exhibit CC**.

## III.    Defendants' Incomplete Document Productions

32.    The documents Defendants have produced to date are incomplete. We know this for at least two reasons. First, some documents produced by Defendants or otherwise available to Plaintiffs, *e.g.*, Sheriff's Department policies, refer to documents which were not produced but are responsive to Plaintiffs' requests. Second, some of the documents produced by Defendants are clearly reports or audits generated on a regular basis, but not all such documents were produced for the responsive time frame.

33.    Attached hereto as **Exhibit DD** is a true and correct copy of the document produced as Bates numbers SD_2275222 to SD_227523, which is a May 26, 2023 email and first page of its apparent attachment from Jon Montgomery, the Jail's Chief Medical Officer, to other Sheriff's Department Staff. The attachment states that: "many SDSD staff have direct communications/interactions with many of Naphcare employees/staff through phone, email, text, instant message, and other means." This contradicts Defendants' counsel's prior statements that text messages are not used by Jail staff. Counsel for Defendants and counsel for Naphcare confirmed by emails of 4:34 p.m. that this document is not confidential.

34.    Attached hereto as **Exhibit EE** is a true and correct copy of the document produced as Bates numbers SD_590200 to SD_590210, which is a June 1, 2023 memorandum authored by the Division of Inspectional Services ("DIS"), titled "Detention Services Bureau Biennial Inspection 23/24 Cycle – 1st Quarter Inspection." The DIS report analyzes compliance of a variety of different Jail policies. Plaintiffs anticipate that some such DIS reports from the requested period have not been produced. This DIS report also refers to "each facilities' internal audit," Ex. EE; Plaintiffs anticipate that some such internal audits for the requested period have not been produced. Counsel for Defendants confirmed by email at 3:34

1  p.m. that this document is neither privileged nor confidential.

2      35.    Attached hereto as **Exhibit FF** is a true and correct copy of the

3  document produced as Bates number SD_733314, which is titled "SDCJ Mental

4  Health Team Meeting Sign in Sheet" and dated December 14, 2022.  The document

5  includes an agenda, of which item 8 states "Full-time auditor has ramped up and is

6  auditing."  Plaintiffs have not received reports or documents that appear to have

7  been drafted by a "full-time auditor."

8      36.    Attached hereto as **Exhibit GG** is a true and correct copy of the

9  document produced as Bates numbers SD_114530 to SD_114542, which is titled

10  "QA/QI FY 2022-2023 QTR 4 Mental Health Encounters Report."  The report

11  refers to a "peer review process" and indicates that 21 people are "eligible … for

12  review," with the reviews to be completed by September 15, 2023.  Plaintiffs

13  anticipate that some such peer reviews have not been produced.

14     37.    Attached hereto as **Exhibit HH** is a true and correct copy of the

15  document produced as Bates numbers SD_115721 to SD_115724, which is an

16  August 9, 2023 Medical Services Division Training Unit Training Bulletin titled

17  "SDCJ Outpatient Stepdown Program (OPSD)."  This Training Bulleting describes

18  "a new referral process" for the Outpatient Stepdown Program.  Plaintiffs anticipate

19  that some such Training Bulletins from the requested period were not produced.

20     38.    Attached hereto as **Exhibit II** is a true and correct copy of the

21  document produces as Bates numbers SD_065369 to SD_065371, which is Sheriff's

22  Department Medical Services Division Policy MSD.D.4, governing Outpatient

23  Psychiatric Services, including the Outpatient Stepdown Program.  The policy is

24  dated November 4, 2022, and therefore does not appear to reflect the "new referral

25  process" described in Exhibit HH.

26     39.    Attached hereto as **Exhibit JJ** is a true and correct copy of the

27  document produced as Bates numbers SD_704672 to SD_704735, which is titled

28  "San Diego Central Jail Watch Commanders Log," with dates May 1, 2022 to May

1  21, 2022.  Among many other logged activities, the Watch Commander Log

2  describes medical emergencies and documents when a housing unit is placed in

3  "Restricted Movement."  Ex. JJ at 467.

4      40.    Attached hereto as **Exhibit KK** is a true and correct excerpt of the

5  document produced as Bates number SD_727540, which is as spreadsheet reflecting

6  dental sick calls.  The excerpt reflects all available columns, but excludes many of

7  the row of the chart (for ease of review).  Under the column "Action Taken" (second

8  from right), each row includes the phrase "SEE NOTE IN CHART."

9      41.    Attached hereto as **Exhibit LL** is a true and correct copy of the

10  document produced as Bates numbers SD_122461 to SD_122597, which is the

11  Sheriff's Department's contract with NaphCare.  Counsel for Defendants confirmed

12  by email at 3:34 p.m. that this document is not confidential.

13      42.    Attached hereto as **Exhibit MM** is a true and correct copy of the

14  document produced as Bates numbers SD_120686 to SD_120708, which is titled

15  "County of San Diego Sheriff's Department Corrective Action Notice (CAN)" and

16  dated December 1, 2023.  Counsel for Defendants confirmed by email at 3:34 p.m.

17  that this document is not confidential.

18      43.    Attached hereto as **Exhibit NN** is a true and correct copy of the

19  document produced as Bates numbers SD_704307 to SD_704308, which is an

20  August 20, 2022 email thread among Sheriff's Department staff.  The August 20,

21  2022, 9:12 a.m. email from Sonia Manning to Christina Bavencoff refers to "an

22  emergency staffing plan," which Plaintiffs believe has not been produced.

23      44.    Attached hereto as **Exhibit OO** is a true and correct copy of the

24  document produced as Bates numbers SD_655456 to SD_655457, which is an email

25  exchange dated November 2, 2023 at 6:34 a.m.  The first email on the thread does

26  not state who the email is from, nor is there any metadata providing that

27  information.  Counsel for Defendants confirmed by email at 3:34 p.m. that this

28  document is not confidential.

45.     Attached hereto as **Exhibit PP** is a true and correct copy of excerpts from the rough transcript of the January 12, 2024 deposition of Christina Ralph.

46.     Attached hereto as **Exhibit QQ** is a true and correct copy of email correspondence between the parties, and the associated attachment, dated December 29, 2023 reflecting the bates ranges of documents produced in this litigation.

47.     A very large portion of the documents that were produced by Defendants were stamped "CONFIDENTIAL" as part of Defendants' production process; however, most of these documents do not qualify for the "CONFIDENTIAL" designation under the parties' protective order (Dkt. 400).  On January 9, 2024, Plaintiffs' counsel informed Defendants' counsel that many of the produced documents are designated "CONFIDENTIAL" despite not meeting the requirements under the Protective Order.  The parties met and conferred by Zoom on January 11, 2024, at which time counsel for Defendants did not know the extent to which documents produced by Defendants were mis-designated as "CONFIDENTIAL."  Defendants' counsel asked that Plaintiffs' counsel send any incorrectly designated documents that Plaintiffs plan to file to Defendants first, so that Defendants can confirm whether or not they are confidential.  This process has proved costly and inefficient, requiring Plaintiffs' counsel to ask Defendants' counsel to confirm, waiting for them to do so, and having Defendants' counsel ask Plaintiffs' counsel to send individual documents for their review and confirmation.

48.     Attached hereto as **Exhibit RR** is a true and correct copy of January 9, 2024 email correspondence between the parties regarding Defendants' document productions.  In response to Plaintiffs' inquiry about text and instant messages, counsel for Defendants stated:  "There are none because they don't use those forms of communication.  It would be impossible to use text since there is terrible wifi in the jails as you know.  If I'm not mistaken, I specifically advised the Court of this at the hearing (or maybe it was you folks in a call) and I also verified it personally with

1    the client before making that representation." On January 11, 2024, the parties met

2    and conferred on this issue again, and Defendants agreed to look into whether

3    responsive text or instant messages exist.

4        49.    Plaintiffs are in the process of reviewing Defendants' document

5    productions, but have not had a chance to review all of those documents. Plaintiffs

6    estimate the review will be complete by March 2024 and will notify the court if they

7    anticipate seeking leave to further compel additional documents after the review is

8    complete.

9        I declare under penalty of perjury under the laws of the United States of

10   America that the foregoing is true and correct, and that this declaration is executed

11   at San Anselmo, California this 17th day of January, 2024.

12

13

14                                    */s/ Van Swearingen*
                                      Van Swearingen
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:20-cv-00406-AJB-DDL
DECLARATION OF VAN SWEARINGEN IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND
MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSE