Eugene P. Ramirez (State Bar No. 134865)
*eugene.ramirez@manningkass.com*
G. Craig Smith (State Bar No. 265676)
*craig.smith@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Non-Defendant Third-Party,
NAPHCARE OF SAN DIEGO, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>　　　　　Defendants. | Case No. 3:20-CV-00406-AJB-DDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NAPHCARE OF SAN DIEGO, LLC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DEPOSITION**<br><br>Judge:　　　Hon. Anthony Battaglia<br>Magistrate:　Hon. David D. Leshner<br><br>Hrg Date:　　February 2, 2024<br><br>Trial Date:　　None Set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

　　Non-Defendant Third-Party NAPHCARE OF SAN DIEGO, LLC. ("NaphCare") hereby presents its Opposition to Plaintiffs' Motion to Compel Production of Documents and Deposition by NaphCare.

4873-2654-7233.1
1

## I. INTRODUCTION

Plaintiffs' motion should be denied because the record reflects that NaphCare, a non-defendant third-party, has exercised due diligence to produce responsive records in its possession, custody and control. Despite Plaintiffs propounding vague requests for production and stipulating to limits in NaphCare's production, NaphCare has produced over 31,000 pages of documents consistent with the requests.

Plaintiffs' motion seeks to compel morbidity and mortality records that are protected from disclosure by attorney-client and work-product privileges. NaphCare's privilege log and declaration from its Chief Legal Officer clearly establishes the privileged nature of these records. Plaintiffs' allegation that NaphCare has failed to produce responsive documents is speculative, vague, and seeks documents never addressed in the initial request for production or subsequent meet and confer communications. Within stipulated limits on production, NaphCare has produced all responsive documents within its possession and control.

## II. FACTUAL AND PROCEDURAL HISTORY

Effective June 1, 2022, NaphCare is contracted with the Defendants to provide certain medical, mental health, and dental services in the San Diego County Jail. Plaintiffs filed a class action matter against Defendants claiming they have violated inmates' constitutional and statutory rights by failing to provide adequate medical or mental health care and disability accommodations. On August 10, 2023, Plaintiffs served NaphCare with a subpoena consisting of 88 vague requests for production ("request for production" or "RFP"). (Smith Decl., ¶ 2.)

In September of 2023, the parties met and conferred regarding NaphCare's efforts to comply with the request for production. (Smith Decl., ¶ 3.) NaphCare agreed to produce a Person Most Knowledgeable/Rule 20(b)(6) designee for a deposition. Plaintiffs also agreed to several limitations in NaphCare's production, three of which are pertinent. First, they agreed the requests for production do not

seek individual medical records. Second, they agreed that initially, NaphCare need not produce individual training materials for each training course. Rather, NaphCare would produce a list of training courses from which the parties would further meet and confer regarding specific areas for production. Third, Plaintiffs agreed to accept a privilege log. (Smith Decl., ¶ 4.) Plaintiffs agreed NaphCare could forego the use of formal ESI protocol as the same would be too burdensome. (Smith Decl., ¶ 4; Declaration of Priyah Kaul in Support of Plaintiffs' Motion to Compel.) On September 29, 2023, NaphCare produced 60 documents totaling 15,428 pages. (Smith Decl., ¶ 5.) On October 2, 2023, NaphCare served written responses to the request for production. (Smith Decl., ¶ 6.)

In October 2023 communications, Plaintiff objected to NaphCare withholding documents related to in-custody death reviews under attorney client-privilege. Plaintiff also agreed to continue discussing limitations on the training materials and proposed redaction of non-healthcare disciplinary records. (Smith Decl., ¶ 7.)

Throughout October 2023 and November of 2023, meet and confer efforts continued. (Smith Decl., ¶ 8.) Plaintiffs sought additional production. First, they raised the provision of an excel version of sick call chart and specific formatting of this information. NaphCare provided this. (Smith Decl., ¶ 8.) Second, under RFP No. 33, they sought additional production of documents related to the housing of people with mental disorders. NaphCare elaborated it is unable to respond due to a lack of documents reflecting the number of patients treated in each unit. (Smith Decl., ¶ 8.) Third, Plaintiffs requested documentation of tooth extractions under RFP No. 45. NaphCare indicated this is recorded in patient charts, but that a list would be produced. NaphCare produced this list in supplemental production. (Smith Decl., ¶ 8.)

Fourth, Plaintiffs sought additional responses under RFP Nos. 52, 53, 54, 67, and 71 regarding subset categories of employee time details. NaphCare responded it would look into whether more responsive records exist. (Smith Decl., ¶ 9.) Fifth,

1  Plaintiffs sought additional production under RFP No. 66 regarding the employee
2  roster, including vacancies, understaffing, and hiring plans.  NaphCare indicated it
3  produced time logs and the roster. (Smith Decl., ¶ 9.)   Sixth, Plaintiff's sought an
4  organizational chart or job descriptions under RFP No. 72.  NaphCare informed
5  Plaintiffs it does not have an organizational chart for its San Diego staffing.  (Smith
6  Decl., ¶ 9.)
7      Seventh and Eighth, under RFP No. 85, Plaintiffs sought auditing of health
8  care records related to incarcerated persons on grounds that serious incidents and
9  death are reviewed by health care providers.  NaphCare responded that it only has
10 privileged records from in-house death reviews.  Plaintiffs objected to withholding
11 these documents on grounds that morbidity and mortality reviews should be
12 conducted pursuant to NaphCare's contract.  Plaintiff's requested a privilege log.
13 NaphCare later provided a privilege log and declaration from its Chief Legal
14 Officer.  (Smith Decl., ¶ 10.)  Ninth, Plaintiffs continued to breach the training logs
15 issue and indicated they needed to submit a proposal for limitations on this request
16 but needed a usable format. (Smith Decl., ¶, Ex. 10.)  Tenth, Plaintiff's sought
17 redacted staff disciplinary logs, which NaphCare produced. (Smith Decl., ¶, Ex. 10.)
18     In addition to the foregoing ten issues, Plaintiff informally requested
19 production of many additional documents, all of which were vaguely described,
20 including "automated processes and protocols," "annual health assessments,"
21 "Medical Audit Committee Meeting" minutes, "evaluations," and "management" or
22 "statistical" reports.  (Smith Decl., ¶ 11.)
23     NaphCare continued to meet and confer with Plaintiffs.  (Smith Decl., ¶ 12.)
24 Consistent therewith, the informal discovery conference, and the Court's order
25 regarding protected health information, NaphCare has continued to produce
26 responsive documents in its possession. On November 16, 2023, NaphCare provided
27 supplemental production.  (Smith Decl., ¶ 13, 16.)  On December 29, 2023,
28 NaphCare provided supplemental production.  (Smith Decl., ¶ 14, 16.)  On January

1  5, 2024, and January 12, 2024, NaphCare served responses consisting of privilege
2  logs related to corporate morbidity and mortality reviews, as well as a declaration
3  from NaphCare's Chief Legal Officer.  (Smith Decl., ¶ 15.)  In total, NaphCare has
4  produced over 115 documents totaling over 31,000 pages in response to Plaintiffs'
5  requests.  (Smith Decl., ¶ 16.)  As to requested documents that have not been
6  produced, NaphCare has made reasonable and diligent efforts to gather all
7  responsive documents.  (See Declaration of Seetal Tejura in Support of NaphCare's
8  Opposition to Plaintiffs' Motion to Compel.)  NaphCare has continued to
9  collaborate regarding deposition of its Person Most Knowledgeable/Rule 20(b)(6)
10 designee.  (Smith Decl., ¶ 12.)

**III.   PLAINTIFFS' MOTION TO COMPEL SHOULD BE DENIED**

12      In their motion, Plaintiffs present two central arguments as to why non-
13 defendant third-party NaphCare should be compelled to produce additional
14 documents.  First, they argue NaphCare has failed to produce all documents
15 responsive to RFP's 2, 5-6, 8-9, 16-27, 30-31, 33-42, 44, 56-58, 63, 66, 68, 70, 74,
16 76, and 84-84.  Second, they contend in-custody death records responsive to RFP's
17 28 and 77 are not protected by attorney-client or work product privilege.  The latter
18 issue appears to be their primary focus.

19      As to the in-custody death records, Plaintiffs assert privilege is inapplicable
20 since such documents are prepared by health care providers pursuant to NaphCare's
21 contract with Defendants.  In support of this, Plaintiffs quote various portions of
22 NaphCare's contract with Defendants. However, the privilege logs and declaration
23 of NaphCare's Chief Legal Counsel establish these documents are prepared for
24 NaphCare's corporate clinical and legal teams in anticipation of litigation.

25      Regarding NaphCare's alleged failure to adequately respond to various
26 requests for production, Plaintiffs' arguments are vague, conclusory and speculative.
27 Plaintiffs raise several specific requests that were never addressed in the scope of
28 the request for production or in subsequent meet and confers.  Furthermore,

4873-2654-7233.1                                5
**NAPHCARE'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND DEPOSITION**

1 Plaintiffs stipulated and conceded to limits in NaphCare's burden to produce. The
2 record reflects that NaphCare exercised due diligence to produce 31,000 pages of
3 records consistent with the requests for production.  NaphCare has provided
4 supplemental production consistent with meet and confer efforts.  For these reasons,
5 NaphCare respectfully requests that the Court deny Plaintiffs' motion.

### A. LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure allows for the service of subpoenas for deposition testimony and documents to nonparties.  See Fed. R. Civ. P. 45 (c)(1) (deposition), (c)(2) (documents).  Under Rule 45, non-parties are subject to the same discovery as a party, as defined under Rule 26(b).  *Moon v. SCP Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (citation omitted).  Rule 26 allows a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

A party seeking to compel discovery under Rule 37(a)(3)(4) bears the burden of informing the court why the responses are deficient and establishing its requests fall within the purview of Rule 26(b)(1).  *United States v. Baisden,* 881 F.Supp.2d 1203, 1205 *(E.D. Cal. 2012).*  The opposing party bears the burden of showing further discovery should not be compelled with competent evidence. (*DirectTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2012).

### B. THE DEATH RECORDS ARE PRIVILEGED

Plaintiffs contend that NaphCare has wrongly failed to produce 82 documents related to in-custody deaths and dispute that each is protected from disclosure by attorney-client and work-product doctrines.  Indeed, as stipulated, NaphCare

produced a privilege log. Some of the documents were prepared in-house by or at the direction of NaphCare's legal team in anticipation of litigation. Death summaries were prepared by physicians or health services administrators and were sent to NaphCare's legal department for the "Morbidity and Mortality Review Committee" meetings.

Attorney-client privilege exists upon a showing of eight factors: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).

In circumstances in which a document serves a "dual purpose" and was not prepared exclusively for litigation, the "because of" test applies. *United States v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011). In applying this test, courts "must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect." *Id*.

Plaintiffs contend that none of NaphCare's morbidity and death records are privileged because the contract with Defendants requires NaphCare to conduct morbidity and mortality reviews. However, NaphCare has established that the documents set forth in the privilege logs provided by NaphCare on January 12, 2024, are protected from disclosure by attorney-client and work-product doctrines. The declaration of NaphCare's Chief Legal Officer establishes that "Morbidity and Mortality Review Committee" agendas, presentations, and minutes, were prepared at the direction of the Chief Legal Officer or the legal department. Death summaries prepared by health services administrators or physicians are also prepared and sent to NaphCare's corporate office and legal department in preparation for "Morbidity and Mortality Committee" meetings.

1  The purpose of such meetings is to assess litigation risk from medical
2 incidents, including incidents at other facilities outside of San Diego for which
3 NaphCare is contracted, and to provide legal advice in anticipation of litigation. All
4 of these documents are necessary for forming legal opinions regarding legal risk and
5 are compiled based on attorney impressions and analyses as to relevance at the
6 meetings. No individuals from Defendants' agencies are included in these meetings.
7 Moreover, irrespective of the contract language between NaphCare and Defendants,
8 NaphCare has not conducted site morbidity reviews at the San Diego County Jail.
9 As such, the documents set forth in the privilege log are clearly protected from
10 disclosure under attorney-client and work-product doctrines and Plaintiffs' motion to
11 compel these records should be denied.

## C. NAPHCARE HAS PROVIDED COMPLETE PRODUCTION

13  Plaintiffs assert that NaphCare has failed to produce all documents responsive
14 to RFP's 2, 5-6, 8-9, 16-27, 30-31, 33-42, 44, 56-58, 63, 66, 68, 70, 74, 76, and 84-
15 84. As a preliminary matter, all of Plaintiffs' requests for production were vague.
16 Nevertheless, NaphCare has conducted a diligent search of its records and produced
17 over 31,000 pages of documents in response to their requests. Plaintiffs' motion
18 fails to specify how NaphCare's production is insufficient as to each individual
19 request. Plaintiffs' position that NaphCare has failed to produce all responsive
20 documents is highly speculative and appears to rest on the rationale that since a
21 contract exists between Defendants and NaphCare, there simply *must* be more
22 documents available.
23  Prime examples of Plaintiffs' assumption is their reference to specific
24 documents that were never set forth in the original requests for production to
25 NaphCare, were produced by the *Defendants* in this matter, or were never within the
26 scope of the extensive meet and confer communications between Plaintiffs and
27 NaphCare. Specifically, Plaintiffs argue that since *Defendants* have produced
28 "Corrective Action Notices" detailing issues with payments, policies, procedures,

1  and tracking of metrics, NaphCare must have these documents and have failed to
2  comply with its requests for production. Similarly, Plaintiffs argue that since
3  Defendants have produced meeting minutes from a meeting at which a NaphCare
4  employee was present, NaphCare has failed to produce meeting minutes consistent
5  with the request for production. Lastly, Plaintiffs complain that NaphCare has failed
6  to produce emails between its staff and members of Defendants' staff, and argue
7  such exchanges must exist because of the nature and scope of the contract between
8  NaphCare and Defendants.

9       A party responding to requests for production to make "a reasonable inquiry
10 to determine whether responsive documents exist, and if they do not, the 'party
11 should so state with sufficient specificity to allow the Court to determine whether
12 the party made a reasonable inquiry and exercised due diligence.'" *Rogers v.*
13 *Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012)

14      In good faith and after a diligent search, NaphCare initially provided more
15 than 15,000 pages of documents in response to Plaintiffs' request for production.
16 After extensive meet and confer communications, NaphCare has served
17 supplemental responses. In total, NaphCare has provided approximately 31,000
18 pages of records. Corrective action notices, meeting minutes, and emails exchanges
19 were never raised by Plaintiffs in meet and confer discussions. As with additional
20 informal requests that were first raised in meet and confer communications,
21 Plaintiffs now raise these issues for the first time. Their position is that NaphCare
22 has failed to produce all documents is speculative and unfounded. NaphCare has
23 conducted a diligent search and produced responsive records. That *Defendants*
24 possess certain documents does not mean NaphCare does.

25      Moreover, Plaintiffs' motion ignores their stipulations to the limits of
26 NaphCare's production. For example, Plaintiffs seek to compel the training logs.
27 However, the record indicates Plaintiffs conceded that for the first production,
28 NaphCare need not produce individual and training materials for each training

course. Rather, NaphCare would produce a list of training courses from which the parties would further meet and confer regarding specific topic areas for production. Plaintiffs have failed to meet and confer regarding specific areas for further production and blames the table of trainings provided by Plaintiff as being unusable.

Furthermore, Plaintiffs concede they agreed that production from NaphCare would forego ESI search terms or the production of individual medical files. Yet, much of the statistical information Plaintiff seeks only exists in individual medical files, and NaphCare cannot produce emails, minutes, or other records absent ESI search terms.

As such, Plaintiffs fail to meet their burden of informing the Court why NaphCare's initial and supplemental productions are insufficient. Their allegations are speculative and vague. To the extent they reference specific documents they now seek to compel, such production was never encompassed in the original request or was limited in the meet and confer discussions. The production record and declaration of NaphCare's General Counsel in support of this opposition reflects that NaphCare has made a reasonable inquiry and exercised due diligence to comply with the request for production. Therefore, Plaintiffs' motion should be denied.

## IV.   CONCLUSION

For the reasons stated herein, NaphCare respectfully requests that the Court deny Plaintiffs' Motion in its entirety.

DATED: January 24, 2024        **MANNING & KASS**
                                **ELLROD, RAMIREZ, TRESTER LLP**


By: _____*/s/ G. Craig Smith*_____
    G. Craig Smith
    Attorneys for Non-Defendant Third-Party,
    NAPHCARE OF SAN DIEGO, LLC.

4873-2654-7233.1

10

**NAPHCARE'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DEPOSITION**