Susan E. Coleman (SBN 171832)
E-mail:  scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600,
San Diego, CA  92101-8474
Tel:  619.814.5800 Fax:  619.814.6799

Elizabeth M. Pappy (SBN 157069)
E-mail:  epappy@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Ste. 1000
San Jose, CA  95113-2336
Tel:  408.606.6300 Fax:  408.606.6333

Attorneys for Defendants
COUNTY OF SAN DIEGO, SAN DIEGO
COUNTY SHERIFF'S DEPARTMENT and
SAN DIEGO COUNTY PROBATION
DEPARTMENT

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DARRYL DUNSMORE, ANDREE
ANDRADE, ERNEST ARCHULETA,
JAMES CLARK, ANTHONY
EDWARDS, LISA LANDERS,
REANNA LEVY, JOSUE LOPEZ,
CHRISTOPHER NELSON,
CHRISTOPHER NORWOOD, JESSE
OLIVARES, GUSTAVO
SEPULVEDA, MICHAEL TAYLOR,
and LAURA ZOERNER, on behalf of
themselves and all others similarly
situated,

Plaintiffs,

v.

SAN DIEGO COUNTY SHERIFF'S
DEPARTMENT, COUNTY OF SAN
DIEGO, SAN DIEGO COUNTY
PROBATION DEPARTMENT, and
DOES 1 to 20, inclusive,

Defendants.

Case No. 3:20-cv-00406-AJB-DDL

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Judge:   Anthony J. Battaglia

Magistrate Judge David D. Leshner

**Date:      February 1, 2024**
**Time:      1:00 p.m.**
**Judge:     Magistrate David Leshner**

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

## **INTRODUCTION**

Plaintiffs assert they are exempt from all legal constraints on discovery because this case is important. Every case is important to every litigant in equal measure and the legal limits on discovery are not dictated by whether a party believes their case is important. Document discovery in this matter has been difficult and unwieldy. Meet and confer has been a one way street as to those items still at issue. The motion to compel should be denied in its entirety because the requests at issue are overbroad and burdensome, all responsive documents have been produced where appropriate, and Plaintiffs have failed to meet and confer in good faith to narrow the scope of the requests.

There is no dispute that, "[b]oth broadly written and expansively construed, Rule 26(b)(1) allows the discovery of "[r]elevant information," even if inadmissible at trial, "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1).  (*U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 236 (S.D. Cal. 2015))  However, the right to discovery is not without limitation.  'Even if evidence is discoverable and relevant under Rules 34 and 26, the Rules contain some express constraints, boundaries both "ultimate and necessary," *Hickman v. Taylor*, 329 U.S. 495, 506, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947), on discovery's otherwise sprawling reach.' (Id, at 237)

Plaintiffs discovery and moving papers ignore the express constraints on discovery and forge ahead with the notion that because they asked, they are entitled to the documents. The examples provided in the moving papers as to how productions are allegedly deficient highlight the lack of any evidence that full and complete responses have been provided, and ignore the overbreadth of the requests and Plaintiffs' failures in meet and confer. The motion should be denied in its entirety.

## **RELEVANT FACTS.**

Plaintiffs served 6 sets for Requests for Production of Documents with 252 categories of documents, and 12 Requests for Inspection containing 68 Requests for

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Jose

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO  MOTION TO
COMPEL FURTHER RESPONSES TO RFP

Production of Documents. In total, Plaintiffs have propounded 320 document requests.

Plaintiffs served Request for Production of Documents, Set Three, on June 15, 2023. The request contains 58 separate requests for documents. Request for Production of Documents, Set Four, was served by Plaintiffs on August 16, 2023 and contains 4 separate requests for documents. Request for Production of Documents, Set Five, was served by Plaintiffs on September 1, 2023 and contains 159 separate requests for documents. Request for Production of Documents, Set Six, was served by Plaintiffs on December 21, 2023, and contains 5 separate requests for production of documents.

Defendants provided written responses and objections, and responsive documents to the extent agreed to, in response to each of the requests. (Dkt.489-3, p.226 [RFPOD#3] and p.280 [RFPOD#5].

Meet and confer was difficult, extremely contentious at times, and largely driven by Plaintiffs inability or refusal to compromise. (See, Pappy Declaration in Opposition to Motion to Compel). The meet and confer efforts illustrated by Plaintiffs' submissions demonstrate the efforts of Defendants attempting to cooperate (e.g., Dkt. 489-3, p.137), and convince Plaintiffs to pare down the requests (e.g., Dkt. 489-3, p. 132), all to no avail.

The first docket reference above is an exchange between counsel working out the ESI protocols in an amicable manner with clarification by Defendants that they were not agreeing to produce the results of the ESI search but rather to preserve it, which was done as confirmed in the email exchange between June and July of 2023. Four months later, Plaintiffs wrote an out of the blue letter about ESI discovery efforts being "rebuffed" and Defendants "failing" to provide information. (DKT 489-3, p.133 of 462) This sort of behavior was standard fare for Plaintiffs while meeting and conferring, and all of a sudden sending a letter written as if the parties were not talking. An email from defense counsel dated two weeks before the "rebuffed" letter,

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

3

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO MOTION TO
COMPEL FURTHER RESPONSES TO RFP

evidences an ongoing discussion between counsel regarding the hit list provided by Defendants following a back and forth with Plaintiffs' counsel about the ESI process---not being rebuffed or Defendants refusing to do anything. (DKT. 489-3, p.156) The one sided narrative by Plaintiffs about meet and confer stems from the viewpoint that it is their way or the highway and if a document was requested, it is legally required to be produced regardless of cost, burden, relevance, and/or proportionality. Throughout meet and confer as to every discovery issue, Defendants offered suggestions to narrow requests in order to come to a final, compromise solution. In almost every instance, Plaintiffs refused any attempt to narrow the requests and demanded that such offers to compromise where a "step in the right direction" but that every document requested was to be produced. This approach was flatly rejected by Defendants and led to substantial motion practice as the Court as experienced.

## ARGUMENT

## THE MOTION TO COMPEL SHOULD BE DENIED BECAUSE THE REQUESTS ARE OVERBROAD AND NOT PROPORTIONAL TO THE NEEDS OF THE CASE.

Plaintiffs approach this motion with the same viewpoint as has existed since the requests were served, throughout meet and confer, and a Court hearing where the Court made clear to no avail that the requests were extremely overbroad. "[P]er Rule 26(b)(2)(C), on its own initiative or at a party's request, for example, a court may limit discovery for any one of three reasons: "the discovery sought is unreasonably cumulative or duplicative"; it is "obtainable from some other source that is more convenient, less burdensome, or less expensive"; or "the burden or expense of the proposed discovery outweighs the likely benefit." FED.R.CIV.P. 26(b)(2)(C)(i)—(iii); [Citations omitted]" (*U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, *supra,* 305 F.R.D. at 237) "'Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir.2010).' (Id, at 237)

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

4

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO MOTION TO
COMPEL FURTHER RESPONSES TO RFP

Plaintiffs were obligated by Rule 26 to determine how to most efficiently go about seeking documents necessary to their case in chief at trial. They failed to do so and should not be rewarded in violation of Rule 26 and the prohibition against fishing expeditions. Throughout discovery, Plaintiffs have spoken out of both sides of their mouth claiming on the one hand that they don't know the names of documents or correct terminology of Defendants' records necessitating that document requests be broad. On the other hand, Plaintiffs claim to "know" that certain documents exist and are being hidden by Defendants. An example came up in the December 20th hearing where Plaintiffs read a lengthy press release about a Naphcare report that was reported to be available as part of the Naphcare contract. The reading of the news article into the record was intended as conclusive proof that the report and information in it is being hidden by Defendants. Plaintiffs have no evidence that the reports were ever used, are accurate, are used by the County whether generated by Naphcare or not because they have not deposed a single witness to determine the facts. Plaintiffs get their information about what documents Defendants allegedly have and are able to generate from news articles and what they claim to have received in other cases for other County's. A 30(b)(6) deposition would have been a more prudent use of time and resources given the anticipated volume of documents and nature of Defendants' operations.

Rather than rely on news articles and experiences in different Consent Decree cases, Rule 26 dictated that Plaintiffs notice a simply 30(b)(6) deposition asking for the persons most qualified to testify about what types of documents are maintained to understand lingo, locations, and other detail information to enable them to narrowly craft requests for what they want and, more importantly, need to litigate the case. The fact that Plaintiffs chose the most arcane, unwieldy and cost prohibitive method is not a justification to grant the motion.

A party may obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case.

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Jose

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO MOTION TO
COMPEL FURTHER RESPONSES TO RFP

FED. R. CIV. P. 26(b)(1). "When determining if the proportionality requirement has been met, courts are to consider six factors, namely, the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Id. Relevant information need not be admissible to be discoverable. *Id.*" (*Terpin v. A T & T Inc.*, No. CV 18-6975-ODW (KSX), 2022 WL 3013153, at *3 (C.D. Cal. June 13, 2022)) Plaintiffs fail to meet the proportionality test.

## I.    Audits and quality assurance documents.

Plaintiffs assert that audit and quality assurance documents have not been produced in response to RFP #'s 32, 33, 98, 99, 104, 106, 109-111, 118, 121, 125-129, 138, 143-148, 150, 153, 155, 157-159, 161, 162, 164-167, 171, 172, 179, 180, 182, 184, 193, 195, 211, 220, 221, 225, 230, 232 and 236. The claim is meritless.

Plaintiffs use the words/phrases "inspection", "audit", and "quality assurance" synonymously in the 252 requests served. For example, RFP#41 seeks all "DOCUMENTS" relating to "auditing" of health care including quality improvement and audits.  Request No. 115 seeks all "DOCUMENTS" including audits relating to any and every quality assurance/quality control process in the jails. Request No. 123 seeks all "DOCUMENTS" relating to inspections conducted by any entity other than you relating to any facility, practice at a facility or healthcare. Defendants produced every audit, inspection and quality assurance document it could locate whether prepared internally or by other parties in response to Nos. 41, 115 and 123.  There is nothing more to produce.

The fact that the documents produced are also responsive to numerous other requests is indicative of the abusive nature of the discovery.  Plaintiffs threw together requests that seek duplicate documents and instead of focusing on, for example, all inspections, audit and quality control processes regardless of topic, they included general requests seeking all such documents and separate requests seeking

the same documents over and over again.

The reference to Commander Ralph's deposition testimony about DIS reports is directly on point to the discovery abuses of Plaintiffs, and an excellent example of the issues created by the overbroad requests, the thoughtless manner in which the requests were drafted, and the continuing refusal to compromise based upon the overbreadth.  The Court will recall that Defendants agreed to amend the response to Special Interrogatory No. 24 as part of meet and confer efforts with Plaintiffs. Special Interrogatory No. 24 and the recently amended (and served) response are as follows:

**<u>INTERROGATORY NO. 1</u>:**

Identify all audits relating to custody operations and HEALTH CARE services at the JAIL, from January 1, 2020 to the present.

**<u>AMENDED RESPONSE TO INTERROGATORY NO. 24</u>:**

. . .

• Board of State and Community Corrections Pre-Opening Inspection of House 1 at the Rock Mountain Detention Facility

• Board of State and Community Corrections – Comprehensive Inspection

    o 9/6/23 George Bailey Detention Facility

    o 9/7/23 San Diego Central Jail

    o 9/8/23 Vista Detention Facility

    o 9/11/23 Las Colinas Detention and Reentry Facility

    o 9/13/23 East Mesa Reentry Facility

    o 9/13/23 South Bay Detention Facility

• Title 15 Nutritional Evaluations:  In Process

• Title 15 Medical / Mental Health Inspection – Completed by National Commission on Correctional Health

    o 1/10/23 East Mesa Reentry Facility

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO  MOTION TO
COMPEL FURTHER RESPONSES TO RFP

1    o    1/10/23 George Bailey Detention Facility

2    o    1/19/23 San Diego Central Jail

3    o    2/2/23 Vista Detention Facility

4    o    3/23/23 Las Colinas Detention and Reentry Facility

5    o    12/13/23 South Bay Detention Facility

6    •    Title 15 Environmental Health Evaluation – Completed by County of

7    San Diego Department of Environmental Health

8    o    2/28/23 South Bay Detention Facility

9    o    3/20/23 Las Colinas Detention and Reentry Facility

10    o    3/23/23 East Mesa Reentry Facility

11    o    11/7/23 Mobile Food Inspection Report

12    o    11/7/23 George Bailey Detention Facility

13    o    11/7/23 Central Production Center

14    o    11/14/23 Vista Detention Facility

15    o    11/15/23 San Diego Central Jail

16    •    Grand Jury Inspections

17    o    9/20/23 Opening Introduction/Orientation (LCDRF)

18    o    9/22/23 Las Colinas Detention and Reentry Facility (Presentation

19    from Sheriff's Transportation Unit)

20    o    10/6/23 San Diego Central Jail

21    o    10/20/23 East Mesa Reentry Facility and Central Processing

22    Center

23    o    11/3/23 George Bailey Detention Facility and Rock Mountain

24    Detention Facility

25    o    11/8/23 South Bay Detention Facility (Presentations from K-9,

26    DIU and CPAC)

27    o    11/17/23 Vista Detention Facility

28    •    https://justicenavigator.org/report/sandiego-county-ca-2021/summary

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Jose

8    Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO  MOTION TO
COMPEL FURTHER RESPONSES TO RFP

- Auditor of State of California; San Diego County Sheriff's Department, February 2022, Report 2021-109

Each and every audit report identified in the request was produced on January 23, 2024 and Ms. Pappy notified Plaintiffs' counsel that they would be grouped together as responsive to RFP No. 123[1]. Which other requests they may be responsive to is indecipherable and thus Defendants produced them as responsive to No. 123, which broadly requests audits and inspections. The reports include the Board of State and Community Corrections inspection reports, referenced by Commander Bavencoff in her deposition.

The document requests as prepared make it burdensome, if not impossible, to segregate all the responsive documents into the dozens of duplicative requests.  By way of example only, one of the inspection reports referenced by Commander Bavencoff and identified in response to Special Interrogatory No. 24, was prepared by the Board of State and Community Corrections and addresses safety checks, number of personnel, professional training, and Corrections Officer Core Course (COCC), among other topics. Which of the 155 requests which include the word "audit" is the single report responsive to? COCC training covers booking and intake, transport, record keeping, supervising inmates, communication with inmates, inmate hygiene, and handling emergencies, among a litany of other training topics. The Board of State and Community Corrections audit report could cover each and every request for audits relating to health care, communication of any kind with an Incarcerated Person including as it relates to health and mental health needs, hygiene, etc.  It could relate to safety and security in terms of supervision of inmates and emergencies.

Drafting streamlined categories in the form of one or two requests for

---

[1] All audits, inspections and quality assurance process reports specific to health care were previously produced in response to RFP#41.

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Jose

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO  MOTION TO COMPEL FURTHER RESPONSES TO RFP

production that sought "all audits conducted internally and/or by third parties for any aspect of jail operations and services", and maybe another for "health/mental health services" would have sufficed. Ensuring complete production could easily have been accomplished through a 30(b)(6) deposition of someone knowledgeable about internal and external auditing, inspections and quality control. The speculation and supposition contained in the moving papers about a "full-time auditor" for mental health issues is irrelevant and does not support the granting of the motion. It certainly begs the question of why this speculation and supposition was never raised in meet and confer as "proof" that audit reports are missing but it never was. There is no evidence submitted in support of the motion that any such information was provided to Defendants asking if any such audits had been completed. The reference to ¶36 of the Swearingen declaration is a copy of a quality control report (of the type Plaintiffs claim was not produced) but nothing about meeting and conferring to inquire whether the audit was done, in process, etc.  Again, this case involves a potential universe of hundreds of thousands of documents and hundreds of detentions and medical personnel and it is incumbent upon Plaintiffs to participate in meet and confer in good faith to get the information they believe the need and not to play a game of "gotcha".

Plaintiffs have not identified any instance where they provided an email or other document which suggested the existence of more documentation during meet and confer and Defendants refused to follow up. To the contrary, in every instance where Defendants were presented with such information, follow up was made and explanations provided to Plaintiffs as to why there were no documents or additional documents were produced.

The motion should be denied based upon a claim that audits and quality assurance documents were withheld.

## II.    Training materials.

Plaintiffs contend that no training materials were provided. The claim is

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

10

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO  MOTION TO
COMPEL FURTHER RESPONSES TO RFP

meritless. All training materials were provided no matter the form. Because Plaintiffs never conducted a simply 30(b)(6) deposition to determine what types of training materials there may be and what format those training materials may take, Plaintiffs have no idea what training materials do or do not exist. What plaintiffs fail to recognize and never bothered to investigate, is whether there are traditional "training materials", whether those training materials take the form of green sheets, policies and/or procedures, or whether there are non-policy documents on a particular subject versus "on the job" training. And yet, Plaintiffs assert that all training documents were not produced. Based upon what evidence?

The only alleged evidence of a lack of "training materials" is a reference to a training bulletin (which is curiously a responsive document) which relates to OPSD Incarcerated Persons. (Dkt. 489-1, p.9:24-28) Plaintiffs complain that the training bulletin is not reflected in the mental health housing policy. Are Plaintiffs complaining that the policy is deficient? This has nothing to with whether a training document exists or was produced.

The "failure to produce training materials" section of the brief identifies 28 requests (32, 33, 98, 99, 100, 110, 118, 121, 143, 144, 145, 146, 166, 175, 181, 198, 211, 217-221, 230, 232-234, 240 and 246 ) that make no reference to "training", and another 23 requests (111, 114, 129, 138, 147, 148, 150, 155-159, 161, 162, 164, 165, 167, 171, 180, 182, 184, 225, 236) which include the word "training". Why is the word "training" included in some and not others? Why would Defendants believe that the ones without the word "training" include "training" documents when others specifically include the word? This is yet another example of the overbreadth and thoughtless nature of the requests.

Where there were "training materials" in Defendants' possession, which mostly consist of green sheets, policies and procedures, they were produced. All policies, procedures and green sheets were produced in response to RFP #25 which requested all polices, and RFP#25 is specifically referenced in the appropriate written responses

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Jose

11

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO MOTION TO
COMPEL FURTHER RESPONSES TO RFP

to Request for Production of Documents, Set Five, where trainings were requested and the request was not otherwise objected to by Defendants. (*See,* 114, 129, 138, 147 [which refers to RFP#25 and #41], 148, 155-158, 164, 165, 180, 182, 184, 225 and 236 [which references policies already having been produced but not #25 specifically]). Plaintiffs have a belief based upon no evidence of what a "training" document is supposed to look like. This is not the basis to compel a further production of that which does not exist.

The Court should deny each and every request for further training documents in response to Request Nos. 32, 33, 98-100, 110, 111, 114, 118, 121, 129, 138, 143-148, 150, 155-159, 161, 162, 164-167, 171, 175, 180, 182, 184, 198, 211, 217-221, 225, 230, 232-234, 236, 240 and 246.

## III. Plaintiffs' attempt to recast overbroad requests as seeking "practices" must be disregarded.

Apparently recognizing the significant overbreadth of the requests identified in Section III of the Moving Mpa's, Plaintiffs attempt recast 52 overbroad requests as seeking "practices". A review of each of the 52 demonstrates that the word "practice" is nowhere to be found in any of the requests and the requests have nothing to do with "practices". This newly hatched theory is simply a way around otherwise inappropriate requests.

Had the requests been phrased as Plaintiffs attempt to suggest to the Court, this motion may not have been necessary. For example, RFP #97 states, "All DOCUMENTS showing the time between a person arriv[ing] at the JAIL and the time the person receives intake screening." The word "practice" is not in the request and yet Plaintiffs attempt to mislead the Court by suggesting that the request seeks practices in general about timing of intake. The request does not seek "practice".

"DOCUMENTS", as plaintiffs define it, includes every custody file and every medical record of every person ever incarcerated at any San Diego County jail facility for 3 years which will amount to 12,000+ individuals given that the average daily

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

12

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO MOTION TO
COMPEL FURTHER RESPONSES TO RFP

population is 4000 and the level of turnover. The request is not limited to documents showing practice in any manner. Each one would include arrival dates and processing times (but not arrival times).

RFP #141 states, "ALL logs RELATING TO INCARCERATED PERSONS placed in the Outpatient Step Down Unit from January 1, 2021 to the present." There is no reference to practices, and logs of individuals in Step Down do not demonstrate "practices". It provides names. The inclusion of No. 141 in the motion is inconsistent with the fact that Defendants produced logs with names of individuals in Step Down which is all that was requested. This motion is simply more evidence of the haphazard and thoughtless manner in which the requests were drafted without any thought as to what was necessary to prove Plaintiffs' case at trial and proportional to the issues. Including No. 141 in the motion is evidence of bad faith. "Logs relating to OSDU" individuals provides Plaintiffs with nothing more than potential witnesses—not practices.

If the requests had been limited to documents sufficient to show practice, it is unlikely there would be a dispute. That is not what the requests ask literally or impliedly as Plaintiffs assert. Further response to the requests identified in Section III (32, 49, 82, 97, 99, 100, 105, 106, 109-111, 113, 114, 119, 121, 125-130, 138, 141, 146-148, 150, 152, 155-159, 161, 162, 164, 165, 167, 172, 175, 176, 179, 180, 182, 179, 193, 195, 221, 231, & 232-236), should be denied.

## IV.    Medical records and custody files.

The Court issued Dkt. 495 [Order] on January 19, 2024 regarding selection and production of medical and custody files. Defendants are complying with the Court's order. The Joint Status Report to be filed with the Court on January 31st, 2024 will provide the current status and Defendants' position.

## V.    Contractor productivity reports (RFP#78).

Defendants agreed in meet and confer to produce productivity reports and inadvertently failed to produce the document. On January 11, 2024, in meet and

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Jose

13

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO  MOTION TO
COMPEL FURTHER RESPONSES TO RFP

confer, Plaintiffs' counsel advised that the document had yet to be produced and upon investigation, Defendants counsel realized that the document was in her possession but had been overlooked in prior productions. It was produced on January 23, 2024.

**VI.   Staffing Plan (RFP#191).**

Defendants previously agreed to produce staffing plans to the extent they exist. As of the time of filing this opposition, Defendants are conducting a search and should be able to produce any responsive documents by the time of the hearing on February 1st or advise of no responsive documents.

**VII.   Text messaging or instant messages.**

The use of text messages or instant messages is not a standard method of communication between correctional staff inside facilities. Correctional officers communicate via radios/walkie talkies for instant communications and safety.  The issue of communications by text or instant messaging arose during meet and confer with Plaintiffs as to Correctional Officers *only* in 2023. The conversation during meet and confer is specifically referenced in Dkt.489-3, p.209 and carrying over to p.208, confirming that the discussion was limited to Teams chat and text messaging between custody staff---not health care staff. Defendants never provided conflicting information as Plaintiffs claim. As usual, Plaintiffs take one piece of a conversation about Correctional Officers not using texts or instant messaging to communicate during emergencies and turn it into a broad based and meritless accusation of lying or hiding information.  The email exchange attached to Mr. Swearingen's declaration proves otherwise.

Weeks after first discussing the matter, Plaintiffs sent an email on January 9, 2024 to "meet and confer" about text messages between unidentified types of staff communicating about "medical care".  Defendants responded the same day, with the same  information previously provided that Correctional Officers do not communicate via text. In their usual manner of hiding information that may suggest there may be responsive documents, Plaintiffs' counsel then forwarded a document authored by Dr.

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Jose

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO  MOTION TO COMPEL FURTHER RESPONSES TO RFP

Jon Montgomery regarding Naphcare medical staff communicating by text and/or instant messaging with jail medical staff. According to the moving papers, a conversation that started with Plaintiffs demanding non-existent texts between Correctional Officer staff about emergencies, is now another way for Plaintiffs to claim that Defendants are providing "conflicting information". As with every single other instance where Plaintiffs play these games of hiding information that may help in finding additional responsive documents, they initially withheld the Dr. Montgomery note, provided it, Ms. Pappy then agreed to investigate and now Defendants are providing "conflicting information". Ms. Pappy sent an email to Plaintiffs' counsel on January 16, 2024 following up on the text and instant messaging issue *confirming* that Defendants were looking into it. (Pappy Decl., Ex. A) The email was omitted from Plaintiffs papers.

As to the three specifically referenced document production requests, RFP #136 seeks communications with any contractor of Defendants regarding "policies and procedures". An objection was interposed and Defendants refused to produce. RFP#137 duplicates No. 34 in that it seeks communications with Naphcare as the health care provider and Defendants refused to produce.

RFP#34 sought communications with Naphcare and Defendants objected based upon overbreadth and burden and agreed to produce only information that involved non-HIPPA protected information. The parties subsequently entered into an agreement, and an order was issued regarding HIPPA and Defendants produced email communications.

Plaintiffs' withholding of information that would help the Defendants, an organization that employs hundreds of people and generates/stores hundreds of thousands of documents, find specific information Plaintiffs seek has been a consistent practice throughout discovery and meet and confer. Plaintiffs are more interested in disparaging Defendants than obtaining the relief for their clients they claim to want. Had Plaintiffs approached any aspect of discovery with any sense of

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

15

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO MOTION TO
COMPEL FURTHER RESPONSES TO RFP

the cooperation dictated by Rule 26, none of the disputes before the Court would exist.

## VIII. ESI.

Plaintiffs assert that productions of ESI are incomplete because every document requested was not produced. There is no explanation provided about what information is allegedly missing. Plaintiffs reference the search including the word "Thunderdome". The search conducted using the term resulted in only 15 documents making it is obvious that employees do not routinely use the term "Thunderdome" in written communication. Plaintiffs' assertions in the moving papers presume that there must be certain words in written communications without a single example of a document containing the term to prove otherwise.

Because of the overbreadth of the 86 ESI terms and 76 person custodian list first proposed by Plaintiffs, the searches resulted in millions of hits. (Dkt.489-3, p121, and p127) Plaintiffs' position is that all of those documents should have been reviewed and produced. Defendants produced 586,729 pages of emails resulting from the significantly pared down custodian list and ESI search term list. (Dkt.489-3, p.213 and p.221) Defendants attempted to focus in on the most likely candidates for various of the overbroad search terms such as management medical staff who would almost always be copied on communications containing certain search terms, command staff for facilities who would almost always be copied on communications containing certain search terms, etc.

Plaintiffs' lengthy "explanation" of what occurred during meet and confer entirely misses the point. Plaintiffs fixated on minutia that did nothing to reduce the number of hits with the single goal of requiring production of all documents regardless of number, cost and time. As previously reported to the Court by Defendants in a Joint status report (Dkt.450), Plaintiffs' lists generated 7,000,000 (for 58 custodians) and Defendants' estimated it would take 20 years to review the results to determine responsiveness and produce. The Court rejected Plaintiffs' position and repeatedly pointed out that ESI disputes were untimely because of the July 2023 deadline as

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Jose

1  noted in this Court's order dated November 22, 2023 (Dkt.454).

2      The Court provided a procedure for addressing the disputes in the November

3  22nd order (Dkt.454) and Defendants fully complied with the order. As the Court noted

4  in the order, Plaintiffs were required to be specific and explain why specific

5  custodians and specific search terms were necessary and would "plausibly yield

6  responsive ESI", citing to *Emerson v. Iron Mountain Info. Mgmt. Servs., Inc.,* No.

7  20CV08607YGRAGT, 2021 WL 8085488, at *1 (N.D. Cal. Sept. 2, 2021) On

8  November 29, 2023, Plaintiffs sent a revised ESI Search Term list that <u>omitted the</u>

9  <u>Thunderdome/pocket search term in its entirety</u>. (Dkt.489-3, p.197-Search Term 35)

10  Defendants *added it back in* as part of the proposed search terms on December 4, 2023

11  (Dkt.489-3, p.203, Search Term 35). It remained in Defendants' final version on

12  December 7, 2023.  (Dkt.489-3, p.215) After removing it altogether and Defendants

13  putting it back in, Plaintiffs may not now complain about the search.

14      The moving papers offer no specificity about search terms other than "pocket"

15  and make only a passing reference to unidentified custodians. As to "pocket", the

16  explanation provided as to why this particular word is important is nonsensical.

17  Plaintiffs want to know about fights which occur in areas of the facilities that are not

18  covered by cameras which cause staff to refer to George Bailey as the

19  "Thunderdome". Plaintiffs' original search term was "pocket OR Thunderdome".

20  (Dkt.489-3, p.124) There was never any narrowing language limiting it to George

21  Bailey.  There was no limiting language including the word "fight". The first hit list

22  provided to Plaintiffs resulted in 10,705 hits on the words "pocket OR Thunderdome".

23  After removing 28 custodians with Plaintiffs' agreement, the number of hits reduced

24  to 2894.  Removing the word "pocket" and adding "jail", the search results came up

25  with 33 hits and they were all produced. A common word like "pocket" in an

26  organization that has uniform standards, concerns itself with "pocket" contents of

27  visitors and Incarcerated Persons and employees, is not a narrowly tailored ESI search

28  term targeted to the alleged issue.  The alleged issue is fighting that occurs in these so

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

17

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO  MOTION TO
COMPEL FURTHER RESPONSES TO RFP

called "pocket areas". Why didn't the search term start out with "pocket" and include "fight"?

Search term 43 in the November 29th version of Plaintiffs' desired search term list relates to "bypass". The original search of all terms and all custodians resulted in 22,341 hits. Plaintiffs never offered a narrowed search term. Defendants accordingly deleted it from the final list/search.

Plaintiffs' assert that because they pared down to half the number of ESI terms, and limited the custodians misses the mark as to the genesis of the dispute. Only after being forced by the Court to pare down the requests were Plaintiffs willing to make any concessions. The notion that a reduction of terms from 43 to 86 and an alleged refusal to provide a "unique" hit list justifies the Court compelling further searches and production lacks any causal connection. The total number of hits with all terms and all custodians was 7,679,096. The total produced based upon the significantly pared down list Defendants used was 586,000. There is no explanation by Plaintiffs how the "unique hit list" or their reduction of search terms was of any help at all. Under no circumstances was 586,000 pages of emails proportionate to any issue in this case. The claimed need for even more emails must be weighed against Plaintiffs 40 hours of depositions of 30(b)(6) witnesses that have yet to take place and the additional 63 hours of individual witness depositions, most of which have not taken place. The Court must look at the overall discovery in the case in deciding proportionality in discovery and Plaintiffs' ability to obtain information from other sources that would be less burdensome and more productive. The fact that Plaintiffs have chosen one method over another does not dictate the Court's ability to put limitations on discovery. The Plaintiffs almost complete unwillingness to compromise even with Court intervention is good evidence of where the problem lay.

The motion requesting additional ESI searches should be denied.

## IX.    "Data" responsive to Special Interrogatory No. 25.

Special Interrogatory No. 25 seeks information that would require thousands of

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

18

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO MOTION TO
COMPEL FURTHER RESPONSES TO RFP

hours over months and months to compile the information requested. There are approximately 4000 Incarcerated Persons housed at the jails every day. There is turnover every day. The interrogatory was intentionally not highlighted to the Court in the moving papers.  It provides:

**INTERROGATORY NO. 2:**

For each INCARCERATED PERSON at the Jail since January 1, 2022, provide their: (a) booking number; (b) name; (c) date of birth; (d) gender; (e) race/ethnicity; (f) booking date and time; (g) primary offense/charge; (h) if multiple offenses or charges are listed, up to 5 other charges or offenses; (i) current bail amount (total or by charge); (j) current classification record (initial or reclassification); (k) current housing unit and bed assignment; (l) all special management flags (e.g., protective custody, gang, juvenile, etc.); (m) whether the person is currently on lockdown status; (n) if currently on lockdown status, when the lockdown began; (o) if sentenced, sentence length; (p) if sentenced, current release date; (q) risk level determined by pretrial risk assessment; (r) mental health care level; and (s) medical care level.

Plaintiffs have never offered any explanation as to why they need any of the information and Defendants were not served with an "Allen declaration" which supposedly supports the claim that Plaintiffs "get the information all the time". This oft repeated phrase by Plaintiffs is not supported by any evidence and has no relevance to whether the information is discoverable in this case or whether the interrogatory is proper.  It is not.

In an attempt to provide as much of the information as could be coalesced into a responsive format, versus preparing an interrogatory response that would take months if not years to answer, Defendants produced spreadsheets Bates Numbered SD 723737-724114 which contain much of the information requested including JIMS numbers, booking numbers, name, date of birth, gender, ethnicity, booking date, release date (anticipated), facility location, facility location (housing location floor

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN JOSE

19

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO  MOTION TO
COMPEL FURTHER RESPONSES TO RFP

and cell), Penal code section violation, description of violation.  There are 27390 entries on one of the spreadsheets. Another of the spreadsheets was run for November 3, 2024, the date of class certification and it shows booking numbers, JIMS numbers, arrest type, number of charges, types of charges by Penal code, description of charges, severity (Felony or Misdemeanor), and bail information.

Defendants interposed objections to the interrogatory as follows:

**AMENDED RESPONSE TO INTERROGATORY NO. 2:**

Objection.  The requested information in the form of an interrogatory is made in bad faith, burdensome, oppressive and overbroad.  The Department is unable to extract the data as requested.  Some of the data is not tracked at all or is transient in nature and does not exist historically.  In addition, the information being requested is irrelevant to any issue raised in the Third Amended Complaint and requested for no apparent reason other than harassment.  Without waiving said objections and subject thereto, responding parties have provided several spreadsheets identifying certain of the information requested in the overbroad interrogatory for class members in both the certified subclass and the subsequent broader class and the information will not be repeated herein to the extent it is contained in the spreadsheets and responding party will not search the records of 4000+ individuals for the remaining information because of the overbreadth, burdensome and harassing nature of the interrogatory.

Plaintiffs ignore the spreadsheets provided and attempt mislead the Court about what was provided. The written response is sufficient and the documents produced are sufficient to provide the information requested given the overbroad and harassing nature of the request.

///
///
///

1  **X.**  <u>**CONCLUSION**</u>

2      Based upon the foregoing, Defendants request that the Motion to Compel be

3  denied in its entirety.

4

5  Dated: January 24, 2024                BURKE, WILLIAMS & SORENSEN, LLP

6

7

8                                         By: _____*/s/ Elizabeth M. Pappy*_____

9                                              Susan E. Coleman
                                               Elizabeth M. Pappy
10                                             Attorneys for Defendants
                                               COUNTY OF SAN DIEGO, SAN
11                                             DIEGO COUNTY SHERIFF'S
                                               DEPARTMENT and SAN DIEGO
12                                             COUNTY PROBATION
                                               DEPARTMENT
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Jose

21

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPPOSITION TO  MOTION TO
COMPEL FURTHER RESPONSES TO RFP