Court of Appeals No. _____

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, ET AL.**

*Petitioner,*

v.

**DARRYL DUNSMORE, ET.AL.,**

*Respondent.*

**PETITION FOR WRIT OF MANDAMUS**

**[EMERGENCY STAY MOTION FILED SEPARATELY]**

On Appeal From the United States District Court,
for the Central District of California
HONORABLE Anthony J. Battaglia
U.S.D.C. Case No. 20-cv-00406-AJB-DDL

**Jeffrey P. Michalowski (SBN 248073)**
**jeff.michalowski@quarles.com**
QUARLES & BRADY LLP
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: 619-237-5200
Facsimile: 619-615-0700

*Attorneys for Petitioner*

## CERTIFICATE OF INTERESTED PARTIES

### Affected Court Action

The District Court action from which this Petition arises is entitled *Dunsmore et al. v. San Diego County Sheriff's Department,* pending in the United States District Court for the Southern District of California, District Court No. 20-cv-406-AJB-DDL, the Honorable Anthony J. Battaglia presiding.

### Petitioner

Petitioner is the County of San Diego. Petitioner is represented by:

Jeffrey P. Michalowski (SBN 248073)
jeff.michalowski@quarles.com
QUARLES & BRADY LLP
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: 619-237-5200
Facsimile: 619-615-0700

### Respondent

United States District Court for the Southern District of California.

Real Party in Interest

The Real Parties in Interest are Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James Clark, Anthong Edwards, Lisa Landers , Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner, on behalf of themselves and all others similarly situated:

GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)

4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Dated: February 20, 2024              s/Jeffrey P. Michalowski
                                      Jeffrey P. Michalowski
                                      QUARLES & BRADY
                                      **_Counsel for Petitioner_**

# INTRODUCTION

Plaintiffs in the action below are a certified class of individuals "who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities." (AA 439.) They allege "dangerous, discriminatory, and unconstitutional conditions in the Jail[s]," and pursue claims for alleged civil rights violations. (AA 11-12.)

In discovery, plaintiffs sought production of interdepartmental correspondence from the San Diego County Sheriff's Department to its Chief Legal Advisor regarding incidents in County jails. The documents are attorney-client privileged reports written to legal counsel by the Division of Inspectional Services ("DIS") summarizing legal assessments presented during San Diego County Sheriff's Department's Critical Incident Review Board ("CIRB") meetings. The District Court ordered petitioner to produce the documents with only limited redactions. After overruling objections by the County, the District Court, on February 16, 2024, ordered production by February 20, 2024.

The CIRB materials contain confidential statements and communications to legal counsel in anticipation of civil litigation. The documents are attorney-client privileged and work-product and were

1

generated at the direction of the San Diego Sheriff Department's Chief Legal Advisor.

The District Court ruling mis-applies the attorney-client privilege and work product doctrines. It is in direct conflict with multiple prior rulings in the Southern District of California, which have held that CIRB confidential reports are protected from disclosure under the attorney-client privilege.

Moreover, an order to produce similar CIRB reports is under review by this Court in *Greer v. County of San Diego*, Ninth Circuit Case No. 23-55607, and a motions panel of this Court stayed District Court activity in *Greer* pending disposition of the appeal. In *Greer*, intervenors from the news media sought an order to unseal CIRB reports that had been filed under seal. The District Court ordered the documents unsealed, and the District Court declined to stay its order pending review by this Court. On an emergency motion by the County, a motions panel of this Court stayed the District Court's order. That appeal— ***which encompasses the same questions of privilege and work product that are at issue he***re—is well underway, and briefing is

scheduled to be completed within a matter of weeks (*i.e.*, by March 8, 2024).

Mandamus review is needed to avert the release of protected confidential information and to prevent irreparable harm. At a minimum, this Court should stay the District Court's order to produce the documents below until this Court reaches a decision in *Greer*.

## RELIEF SOUGHT

Petitioner seeks a writ of mandamus directing (i) the Magistrate Judge to vacate its December 13, 2023 Order compelling production of CIRB reports (AA 441-458); and/or (ii) directing the District Court below to vacate its February 16, 2024 order (AA 441-458) overruling petitioner's objections to the Magistrate Judge's Order compelling production of CIRB reports. Via the accompanying Emergency Motion for Stay, petitioner further asks this Court for a stay of the Orders below pending resolution of this petition.

## STATEMENT OF ISSUES PRESENTED

1.    Whether the privilege logs and declarations establish that the CIRB reports are protected from disclosure because the attorney-client and attorney work product privileges apply.

2.      Whether the production order below should be stayed pending disposition of the related appeal in *Greer*, in which briefing will be completed within a matter of weeks.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.      Background on the Privilege Dispute.

Plaintiffs are a certified class of individuals "who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities." AA 439-440.  Their Third Amended Complaint asserts multiple causes of action under 42 U.S.C. § 1983 against the County of San Diego and other defendants seeking declaratory and injunctive relief to "remedy the dangerous, discriminatory, and unconstitutional conditions in the Jail." AA 11-12.

On June 15, 2023, Plaintiffs propounded Requests for Production, including Request 81, which sought "ALL Reports generated by the Critical Incident Review Board RELATING TO in-custody DEATHS at the JAIL from January 1, 2021 to the present." AA 233-234, AA 248-255.

On August 14, 2023, Defendants responded and objected to Request for Production No. 81 on the grounds of attorney-client, work

product, and official information privileges.  No documents were
produced in response to this request (AA 234, AA 256-260).

The CIRB files in dispute are prepared at the direction of counsel
and in anticipation of litigation.  The CIRB confidential reports are
addressed to the department's chief legal advisor.  All CIRB reports,
including those listed on the privilege log, are confidential
communications with the department's chief legal advisor.  AA 353 -354
¶ 9–11.

The reports include summaries of legal counsel's thoughts and
impressions as chief legal advisor.  The reports are marked "privileged
attorney-client" on every page, and are intended to solicit legal advice
from legal counsel.  The reports summarize attorney-client privileged
communications that occur during the CIRB meetings.  The reports are
maintained in the Legal Affairs Office of the Sheriff.  Exh. 353-354,355,
358 ¶¶ 10–11, 17, 26.

The CIRB Board consists of the chief legal advisor and four
commanders.  The chief legal advisor provides legal advice with the
expectation that communications are made in confidence and shall
remain so.  AA 365.

The CIRB investigation process and reports are not routinely generated. They are intended for key Sheriff's department personnel to consult with legal counsel to assess the Sheriff's department's potential civil exposure as a result of a given critical incident. Exh. 354-355 ¶ 14.

The format of the CIRB is structured to allow for candid communications between key Sheriff's department staff that possess the relevant knowledge of an incident, department policies, procedures and practices, and the Sheriff's department chief legal advisor. Exh. 356 ¶ 19-20.

Disclosure of the confidential CIRB report would violate the attorney-client privilege and work product privilege inhibiting legal counsel's ability to provide sound and informed legal advice as to matters that are likely to result in civil litigation.

Multiple Courts have upheld the application of the attorney-client privilege to CIRB related documents because the meetings are attended by legal counsel to obtain legal advice in advance of potential litigation, and the reports are confidential communications between County employees and legal. AA539-550.

**B.    The Proceedings Below.**

Plaintiffs brought a motion to compel production of the CIRB
Reports (ECF No. 412), which defendant opposed (ECF No. 420).
Defendants provided an amended privilege log with their response to
Plaintiffs' motion to compel.  *Id.*

On December 13, 2023, Magistrate Judge Leshner granted
Plaintiffs' motion to compel.  AA 441-458.  It permitted submission of
the CIRB reports in camera for review of any proposed redactions of
attorney-client privileged communications made during the meetings.
The Court later approved the County's proposed redactions, and ordered
the documents produced by January 31, 2024.  (AA 459-460.)

On January 29, 2024, Defendants requested a Stay of Production
of the CIRB Reports pending objections to the district court.  ECF No.
510.  On the same date, Magistrate Judge Leshner ordered Defendants
to file a supplemental brief in support of the requested stay by January
31, 2024, with Plaintiffs' opposition (if any) due by February 2, 2024.
The court also vacated the production deadline for the reports.  ECF No.
511.

On February 8, 2024, Magistrate Judge Leshner issued an order ordering production by February 16, 2024 (AA 461-462).  On February 12, 2024, Magistrate Judge Leshner issued an Order denying the request for a stay on production of CIRB Reports.  AA 463-467.

On February 15, 2024, Defendants filed an Ex Parte Motion to stay the Magistrate Judge's Orders denying a stay and for production of the CIRB Reports.  ECF No. 541.  Defendants also filed Objections to the Discovery Order and requested reconsideration of the order granting the motion to compel.  ECF No. 542.

On February 16, 2024, Judge Battaglia issued an Order denying the ex parte request for a stay and overruling the objections and/or reconsideration motion, and ordering production of the CIRB Reports by February 20, 2024.  A 468-472.

## C. The Pending Appeal in *Greer*.

The County's pending appeal in the Ninth Circuit addresses the District Court's decision to order the production and unsealing of CIRB reports and its order granting media intervenors' motion to intervene and unseal those CIRB reports. Public release of the CIRB reports has been stayed pending the appeal before the Ninth Circuit.  AA 538.

8

The *Greer* appeal directly addresses the County's ongoing claim of privilege and work product protection as CIRB reports.  Specifically, the issues presented in the *Greer* appeal include:

> Did the District Court err in finding that the CIRB materials are not privileged and are not protected by the attorney work product doctrine?  Specifically: (a) Did the District Court err by finding that the County failed to prove that "*the* primary purpose" of CIRB is legal advice? (b) Did the District Court err by declining to analyze whether legal advice is "one of the significant purposes" of CIRB?  Did the District Court err by finding that the CIRB materials are not protected from disclosure by the attorney work product?

*See* AA 473-537 – County of San Diego's Opening Brief ("AOB"), p. 4.  *See also id.* at p. 54 ("The County respectfully asks this Court to reverse the District Court's order compelling production of the CIRB records . . .").

In *Greer*, a motions panel of this Court stayed the District Court's Order authorizing public release of CIRB records pending the appeal.  AA 538.

**ARGUMENT**

## I.    THIS COURT SHOULD ISSUE A WRIT TO PROTECT PETITIONER'S ATTORNEY-CLIENT COMMUNICATIONS AND ATTORNEY WORK-PRODUCT

### A.    THE STANDARD OF REVIEW ON A WRIT OF MANDAMUS

The exceptional circumstances presented by this case warrant this Court exercising jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a).  *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004); *City of Las Vegas v. Foley*, 747 F.2d 1294, 1296–97 (9th Cir.1984).  This Court looks at five factors in determining whether to grant extraordinary relief in a petition for writ of mandamus:

> (1) whether the petitioner has no other means, such as a direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems or issues of first impression.

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir.2010); see also *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir.1977).

"The factors serve as guidelines . . . not every factor need be present at once.'" *Perry*, 591 F.3d at 1156 (internal citation omitted); see also *Hernandez v. Tanninen*, 604 F.3d 1095, 1101-02 (9th Cir. 2010) (granting mandamus in attorney-client privilege dispute with three factors); *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1491-92 (9th Cir.1989) (granting mandamus in attorney-client dispute with four factors and acknowledging that the fourth and fifth factors are rarely both present.)

"Mandamus is appropriate to review discovery orders when particularly important interests are at stake. . . .  [W]e may rely on mandamus to resolve new questions that otherwise might elude appellate review or to protect important or clear claims of privilege." *Perry*, 591 F.3d at 1157 (internal citation omitted).

Supervisory or advisory mandamus is appropriate "to review a discovery question that raises a novel and important question of power to compel discovery, or that reflects substantial uncertainty and confusion in the district courts." *Id*.

As explained below, this petition meets all five of the *Bauman* factors warranting review by mandamus.

11

B.    PETITIONER WILL BE IRREPARABLY HARMED IN A

WAY NOT CORRECTABLE ON APPEAL IF RELIEF IS

NOT GRANTED

This factor is satisfied, if as in the present case, Petitioner can

show it will suffer severe prejudice or that the remedy on appeal would

be inadequate. *Washington Pub. Util. Group v. United States District*

*Ct. for Western Dist. Of Washington*, 843 F.2d 319, 325 (9th Cir. 1987).

Mandamus relief is appropriate where compliance with a

discovery order would undermine a subsequent challenge, harming

Petitioner in a manner not fully correctable on appeal.  *SG Cowen*

*Security Corp. v. United States District Court for Northern District of*

*California*, 189 F.3d 909, 913 (9th Cir. 1999).

The appellate courts have long acknowledged the importance of

the attorney-client privilege, which "is one of the oldest recognized

privileges for confidential communications."  *Swidler & Berlin v. United*

*States*, 524 U.S. 399, 403 (1998). By assuring confidentiality, the

privilege encourages clients to make "full and frank" disclosures to their

attorneys, who are then better able to provide candid advice and

effective representation. *Upjohn Co. v. United States*, 449 U.S. 383, 389

12

(1981). This, in turn, serves "broader public interests in the observance of law and administration of justice." *Id*.

In extraordinary circumstances—for example, when a disclosure order "amount[s] to a judicial usurpation of power or a clear abuse of discretion," or otherwise works a manifest injustice—a party may petition the court of appeals for a writ of mandamus. *Cheney*, 542 U.S. at 390 (internal quotation omitted); see also *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 268, at 378–379, n. 13 (1981). While these discretionary review mechanisms do not provide relief in every case, they serve as useful "safety valve[s]" for promptly correcting serious errors. *Digital Equipment*, 511 U.S. at 883; *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 108 (2009).

Here, the Order to produce the documents, over the County's objection, is a serious error, and will have serious consequences. As an initial matter, a disclosure to plaintiff's counsel cannot be undone; once the documents are produced, the bell cannot be unrung.

Moreover, the practical consequences are significant. It is undisputed that CIRB reports were prepared with the understanding that the communications were confidential and would not be disclosed.

That understanding was shared not just by the commanders who sat on the CIRB, but also by the line deputies who were called upon to present information to legal counsel, and who were assured that they could speak freely and openly, without fear of disclosure. That understanding and expectation was fair and reasonable. Line deputies trusted what they were told by their supervisors and commanders, and believed they could speak with complete candor. Both the supervisors and Legal Counsel, too, sincerely believed the communications were privileged and confidential.

Given the understanding of the participants in the CIRB process, the release of CIRB reports to plaintiff's counsel will have a chilling effect on such communications. Law enforcement officials, from commanders to line deputies, will be on notice that their communications to legal counsel are not protected, that trust cannot be assured, and that anything they say may well be featured in a news article or on the nightly news. Where communications had been candid and open, they will become hesitant. Where debate about lessons learned and future mitigation had been robust, it will become guarded. These harms are irreparable, and the better approach is to defer

decision until this Court has had an opportunity to address the issues.

C.      PETITIONER HAS NO OTHER MEANS TO OBTAIN THE
        DESIRED RELIEF

Defendant has exhausted its options in the Court below.  It has

asserted objections and requested reconsideration.  The Court has

denied these requests, and has ordered production.  Waiting until the

conclusion of the case, and then appealing, would be too late – the

documents would already have been disclosed to plaintiffs' counsel, and

the bell could not be unrung.  Relief is warranted now to prevent

irreparable harm.

D.      THE ORDERS BELOW REST ON ERROR AND CONFLICT
        WITH OTHER DISTRICT COURT DECISIONS

**1.      The purpose of CIRB reports is legal advice.**

The express purpose of CIRB is to provide a forum for law

enforcement to consult with and obtain advice from legal counsel

regarding critical incidents that present a heightened risk of liability.

CIRB exists for the purpose of assessing the Department's civil

exposure and managing future liability.  As the Manual explains, the

"ultimate goal" of CIRB is "identifying problem areas and

recommending remedial actions so that potential liability can be avoided in the future." AA 286. CIRB meetings fall squarely within the attorney-client privilege.

The attorney-client privilege is "one of the oldest recognized privileges for confidential communications." *Swindler & Berlin v. United States*, 524 U.S. 399, 403 (1998). By assuring confidentiality, the privilege encourages clients to make "full and frank" disclosures to their attorneys, who are then better able to provide candid advice and effective representation. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *United States v. Richey, supra*, 632 F.3d at 566 (9th Cir. 2011). This, in turn, serves "broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389. "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id*. The attorney-client privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt v.*

16

*Blackburn*, 128 U.S. 464, 470 (1888); *Fisher v. United States,* 425 U.S.
391 403 (1976).

Courts apply the protection to attorney-client communications so
long as the communication is made for the purpose of obtaining or
providing legal advice. *See* 1 RESTATEMENT (THIRD) OF THE LAW
GOVERNING LAWYERS §§ 68-72 (2000); *United States v. Ruehle,* 583 F.3d
600, 607 (9th Cir. 2009). It is also settled that the privilege is "a two-
way street" – it "protects confidential disclosures made by a client to an
attorney in order to obtain legal advice, . . . as well as an attorney's
advice in response to such disclosures.'" *United States v. Bauer*, 132
F.3d 504, 507 (9th Cir. 1997) (quoting *United States v. Chen*, 99 F.3d
1495, 1501 (9th Cir. 1996)); *see also Fisher v. United States, supra,* 425
U.S. 391, 403 ("Confidential disclosures by a client to an attorney made
in order to obtain legal assistance are privileged."); *Upjohn*, 449 U.S. at
390 (privilege protects "the giving of information to the lawyer to enable
him to give sound and informed advice"). *U.S. v. Rowe*, 96 F.3d 1294,
1296-1297 (9th Cir. 1996) (same).

A public entity, of course, can assert the attorney-client privilege.
*United States v. Jicarilla Apache Nation*, 564 U.S. 162, 170 (2011) ("the

17

Government may invoke the attorney-client privilege"); *In re Grand Jury Subpoena, JK-15-209* (9th Cir. 2016) 828 F.3d 1083, 1092 (same); *In re Lindsey*, 148 F.3d 1100, 1107 (D.C. Cir. 1998) (per curiam) (noting existence of "a government attorney-client privilege that is rather absolute in civil litigation").  Indeed, the privilege plays an especially critical role for public entities:

> [T]he traditional rationale for the privilege applies with special force in the government context. It is crucial that government officials, who are expected to uphold and execute the law and who may face criminal prosecution for failing to do so, be encouraged to seek out and receive fully informed legal advice.  Upholding the privilege furthers a culture in which consultation with government lawyers is accepted as a normal, desirable, and even indispensable part of conducting public business. Abrogating the privilege undermines that culture and thereby impairs the public interest.

*In re Grand Jury Investigation*, 399 F.3d 527, 535 (2d Cir. 2005).  This culture of openness and candor is especially crucial in internal investigations:

> If the government attorney is required to disclose [internal communications with counsel] . . . it is sheer fantasy to suggest that it will not make internal governmental investigations more difficult, to the point of being impossible . . . . To the extent that the protection of the privilege is justified in any corporate context, the need within the government is equal, if not greater.

PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 4:28,

at 4 (2d ed. 1999)

In the specific context of law enforcement, the public's interest in protecting frank and candid communications during investigations is at its apex. Law enforcement officials must navigate constitutional waters that are uncertain, shifting, and difficult to distill into simple rules. Their need for sound legal advice, based on full and candid disclosures of relevant information, could not be any more profound.

Here, the CIRB reports are plainly for the purpose of seeking and obtaining legal advice. Indeed, other decisions from the Southern District of California—based on the same facts as those present here—have held that CIRB reports are privileged and need not be produced. In *Bush v. County of San Diego*, S.D. Cal. Case No. 15-cv-00686-L-JMA), Judge Adler found that a CIRB report was protected by the attorney-client privilege. The Court held: "[The Chief Legal Officer's] declaration sufficiently establishes the SDSO Critical Incident Review Board Report is a confidential communication involving the County's employees and [the Chief Legal Officer], in his capacity as a legal advisor, and that it was prepared for the purpose of obtaining legal advice related to the subject." AA 539-547. Likewise, in *Estate of*

19

*Nunez v. County of San Diego*, Case No. 16-cv-1412-BENMDD, Judge

Dembin found a CIRB report was protected by the attorney-client

privilege.  As is true here, "[The Chief Legal Officer] attended the

meeting memorialized in the report and both the procedural manual

and [the Chief Legal Officer] assert that the purpose of the meeting was

to obtain legal advice in advance of potential litigation."  Based on

counsel's declaration, "[t]he Court [was] satisfied that attorney-client

privilege properly [was] asserted to protect the CIRB report."  AA 548-

550.

In an earlier case, Judge Brooks found that the County had not

met its burden of establishing privilege for a CIRB report, but there, the

County had not provided a declaration to explain the CIRB process.  *See*

*Medina v. County of San Diego*, 2014 WL 4793026 *16 (S.D. Cal. Sept.

25, 2014) ("defendant has not submitted any evidence that an attorney-

client relationship existed . . . [n]or has the Defendant shown that the

communications were made in confidence and for the purpose of seeking

legal advice").  That defect is not present here.  The evidentiary record

is clear that (i) an attorney-client relationship exists; and (ii) that CIRB

meetings are convened only for critical incidents in which litigation is

anticipated.

Notably, in *Bush* (which found that CIRB reports are privileged), Judge Adler distinguished *Medina* (which found that they were not). *Bush* noted that the County had not presented evidence in *Medina*, but that its evidence in *Bush*—the same factual averments supplied here via the Chief Legal Officer's Declaration—was sufficient to establish privilege.  AA 539-547.[1]

## 2. **At a minimum, <u>*a*</u> primary purpose of CIRB is legal advice.**

If this Court does not agree that ***the*** *primary purpose* of CIRB is to provide for consultation with legal counsel, the inquiry should not have ended there.  Instead, the Court should have assessed whether "one of the significant purposes" of CIRB is to provide for consultation with

---

[1] In two recent decisions, Magistrate Judge Leshner found that CIRB reports were not privileged.  *See Estate of Serna v. County of San Diego* 2023 WL 7477321 (S.D. Cal. Aug. 30, 2023); *Morton v. County of San Diego*, 2023 WL 5746921 (S.D. Cal. Sept. 6, 2023).  But Magistrate Judge Leshner appears to have been persuaded by the *Greer* decision below.  *See id.* at fn. 7 ("Judge Leshner found *Greer* persuasive, although not binding.").  The County contends that the production orders in *Morton* and *Serna*, like the decision in *Greer* that they cited, were in error.

legal counsel.  As the D.C. Circuit explained in *In re Kellogg Brown &
Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014), in an opinion authored by
then-Circuit Judge Brett M. Kavanaugh, identifying a singular primary
purpose of a communication is an artificial and unnecessary exercise.
Instead, the "primary purpose" test only requires the party claiming
privilege to show that obtaining legal advice was "one of the significant
purposes" of the communication:

> [I]t is important to underscore that the primary purpose test,
> sensibly and properly applied, cannot and does not draw a
> rigid distinction between a legal purpose on the one hand
> and a business purpose on the other.  After all, trying to find
> *the* one primary purpose for a communication motivated by
> two sometimes overlapping purposes (one legal and one
> business, for example) can be an inherently impossible task.
> It is often not useful or even feasible to try to determine
> whether the purpose was A or B when the purpose was A
> and B.  It is thus not correct for a court to presume that a
> communication can have only one primary purpose.  It is
> likewise not correct for a court to try to find *the* one primary
> purpose in cases where a given communication plainly has
> multiple purposes.  Rather, it is clearer, more precise, and
> more predictable to articulate the test as follows: Was
> obtaining or providing legal advice *a* primary purpose of the
> communication, meaning one of the significant purposes of
> the communication?

*Kellogg Brown & Root, Inc., supra,* 756 F.3d at 759.

All told, the D.C. Circuit concluded that a party claiming attorney-
client privilege meets its burden under the "primary purpose test" if it

shows that "one of the significant purposes" of the communication was legal advice.  *Id.* at 760, quoting 1 RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 72, Reporter's Note, at 554 ("In general, American decisions agree that the privilege applies if one of the significant purposes of a client in communicating with a lawyer is that of obtaining legal assistance.").

This Court has not yet adopted *Kellogg*, but it has left that door wide open, and cited *Kellogg* with approval.  *In re Grand Jury*, 23 F.4th 1088, 1094–95 ("We see the merits of the reasoning in *Kellogg*.").  In particular, this Court found that *Kellogg*'s reasoning fits best in the context of internal investigations, and that it could be useful in "truly close cases."  *Id.* at 195.  Numerous district courts, too, have followed *Kellogg* and fortified its reasoning.  The Southern District of New York, for example, opines that *Kellogg*'s "a primary purpose" test may be a necessary consequence of the Supreme Court's seminal decision in *Upjohn*:

> [T]he D.C. Circuit's holding is consistent with—if not compelled by—the Supreme Court's logic in *Upjohn*.  Rare is the case that a troubled corporation will initiate an internal investigation solely for legal, rather than business, purposes; indeed, the very prospect of legal action against a company necessarily implicates larger concerns about the company's

23

internal procedures and controls, not to mention its bottom line. Accordingly, an attorney-client privilege that fails to account for the multiple and often-overlapping purposes of internal investigations would "threaten[] to limit the valuable efforts of corporate counsel to ensure their client's compliance with the law." *Upjohn*, 449 U.S. at 393, 101 S.Ct. 677.

*In re Gen. Motors LLC Ignition Switch Litig.*, 80 F.Supp.3d 521, 530 (S.D.N.Y. 2015).  *See also In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prod. Liab. Litig.*, No. 1:17-MD-2775, 2019 WL 2330863, at *2 (D. Md. May 31, 2019) (adopting "one of the significant purposes" test); *Edwards v. Scripps Media, Inc.*, No. 18-10735, 2019 WL 2448654, at *1 (E.D. Mich. June 10, 2019) (same).

Moreover, *Kellogg* complements this Court's decision in *United States v. Chen*, 99 F.3d 1495 (9th Cir. 1996).  There, the government sought to compel production of attorney-client communications, and argued that the attorney was "involved in business decision making [] or as spokespersons" and were therefore not acting as "professional legal advisors."  *Id.* at 1500.  This Court responded: "Calling the lawyer's advice 'legal' or 'business' advice does not help in reaching a conclusion; it *is* the conclusion.  That the lawyers were 'involved in business decision-making,' as the government puts it, is irrelevant.

What matters is whether the lawyer was employed with or without 'reference to his knowledge and discretion in the law,' [] to give the advice." *Id.* at 1502.  In other words, the *subject matter* of a communication does not determine whether the attorney-client privilege applies.  Rather, the relevant question is the *purpose* for which the attorney is engaged.  As relevant here, the mere fact that a meeting addresses operational issues like policy or training does not mean that it cannot be privileged.  Instead, if the attorney is engaged for the purpose of providing legal guidance with respect to such issues, for legal issue-spotting, or for other purposes related to legal advice, then the privilege will attach.  Here, it is undisputed that CIRB meetings include legal counsel for precisely these legal purposes.

Here, the Magistrate Judge did not conduct any analysis of whether *a* primary purpose of CIRB is legal advice.  Instead, it summarily concluded, in a footnote with no analysis, that its conclusion would "remain unchanged" if the *Kellogg* test governed.  AA 451.  The conclusion is inconsistent with the undisputed evidence – plainly at least *a* purpose of CIRB was legal advice, and that alone warrants application of the privilege.

### E.   THE DECISION BELOW MANIFESTS A PERSISTENT DISREGARD OF THE RULES

By its very nature, the attorney-client relationship affords a distinct, invaluable right to have communications protected from compelled disclosure.  Undermining the longstanding protection afforded to the CIRB documents will have very real practical consequences. With the protection of the privilege, Sheriff's department personnel can speak frankly and openly to counsel.

The magistrate judge and district court judge disregarded the rules by ignoring the undisputed evidence that CIRB documents are generated at the direction of legal counsel and for the purpose of obtaining and providing legal advice.  For each incident, the CIRB records were created for the purpose of minimizing the department's exposure in the event of future liability lawsuits.

Plaintiff is not entitled to the CIRB materials, and the rulings below disregard the undisputed facts and the law of privilege.

## CONCLUSION

For the reasons set forth above, this Court should grant the petition for writ of mandamus to protect the attorney-client and attorney work product privileges.


Dated: February 20, 2024          Dated: February 20, 2024
                                  s/Jeffrey P. Michalowski
                                  Jeffrey P. Michalowski
                                  QUARLES & BRADY
                                  ***Counsel for Petitioner***

27

## STATEMENT OF RELATED CASES

This case addresses the same issues pending before this Court in *Greer v. County of San Diego*, Ninth Circuit Case No. 23-55607, which addresses, *inter alia*, whether CIRB reports are protected by attorney-client privilege or the attorney work product doctrine.

Dated: February 20, 2024                    Dated: February 20, 2024
                                            s/Jeffrey P. Michalowski
                                            Jeffrey P. Michalowski
                                            QUARLES & BRADY
                                            ***Counsel for Petitioner***

## CERTIFICATE OF COMPLIANCE

Pursuant to Ninth Circuit Local Rule 32(a), I do hereby certify that this brief was produced using Word and that the brief contains 5,625 words based on Microsoft Word's word count.

Dated: February 20, 2024          Dated: February 20, 2024

s/Jeffrey P. Michalowski
Jeffrey P. Michalowski
QUARLES & BRADY
**_Counsel for Petitioner_**