GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830
Facsimile:    (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:   (858) 677-1400
Facsimile:    (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California  94709
Telephone:   (510) 806-7366
Facsimile:    (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No. 3:20-cv-00406-AJB-DDL <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER REGARDING DEFENDANTS' SUBPOENAS TO CDCR** <br><br> Date:      March 6, 2024 <br> Time:      2:15 p.m. <br> Crtrm.:   14A <br><br> Judge:       Hon. Anthony J. Battaglia <br> Magistrate:Hon. David D. Leshner <br><br> Trial Date: None Set |

[4439991.9]

Case No. 3:20-cv-00406-AJB-DDL

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND....................................................................................... 1

LEGAL STANDARD ................................................................................................. 3

ARGUMENT............................................................................................................. 4

I.  A PROTECTIVE ORDER IS NECESSARY TO PROTECT THE
NAMED PLAINTIFFS' PRIVATE INFORMATION, DISCOVERY
OF WHICH WOULD CAUSE ANNOYANCE, EMBARRASSMENT,
OPPRESSION, AND UNDUE BURDEN ON NAMED PLAINTIFFS.......... 4

II.  THE SUBPOENAS ARE NEITHER RELEVANT NOR
PROPORTIONATE TO THE CLAIMS AND DEFENSES AT ISSUE.......... 5

CONCLUSION......................................................................................................... 10

[4439991.9]                                            i                    Case No. 3:20-cv-00406-AJB-DDL

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A
PROTECTIVE ORDER REGARDING DEFENDANTS' SUBPOENAS TO CDCR

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Armstrong v. Newsom*,
475 F. Supp. 3d 1038 (N.D. Cal. 2020) ........................................................ 10

*Arredondo v. Univ. of La Verne*,
2021 WL 6104410 (C.D. Cal. Nov. 22, 2021) ................................................ 8

*Ashker v. Newsom*,
2019 WL 330461 (N.D. Cal. Jan. 25, 2019) .................................................. 10

*Cones v. Parexel Int'l Corp.*,
2018 WL 3046424 (S.D. Cal. June 20, 2018) ................................................. 5

*Dubin v. Miller*,
132 F.R.D. 269 (D. Colo. 1990) .................................................................... 7

*Gutierrez v. Mora*,
2019 WL 8953125 (C.D.Cal., Dec. 18, 2019) ................................... 5, 7, 8, 9

*Hilsley v. Ocean Spray Cranberries, Inc.*,
2018 WL 6300479 (S.D. Cal. Nov. 29, 2018) ................................................ 7

*Hooks v. Target Corp.*,
2022 WL 18142528 (C.D. Cal. Dec. 29, 2022) .............................................. 5

*In re Banks*,
97 Cal. App. 5th 463 (2023)......................................................................... 10

*Kovalenko v. Kirkland & Ellis*,
2024 WL 664691 (N.D. Cal., Feb. 16, 2024)............................................. 7, 9

*Lyzer v. Caruso Produce, Inc.*,
2018 WL 11489791 (D. Or. Oct. 4, 2018) ..................................................... 7

*Moon v. SCP Pool Corp.*,
232 F.R.D. 633 (C.D. Cal. 2005) ................................................................... 4

*Pate v. Pac. Harbor Line, Inc.*,
2023 WL 2629867 (C.D. Cal. Feb. 6, 2023)................................................ 3, 5

*Sanchez v. Am. Media, Inc.*,
2023 WL 4681602 (C.D. Cal. May 8, 2023) ................................................... 4

*Tierno v. Rite Aid Corp.*,
2008 WL 3287035  (N.D. Cal. July 31, 2008)................................................ 4

*Tucson Woman's Clinic v. Eden*,
379 F.3d 531 (9th Cir. 2004)......................................................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A
PROTECTIVE ORDER REGARDING DEFENDANTS' SUBPOENAS TO CDCR

*Vena v. Moore, Schulman & Moore, APC*,
    2023 WL 6194315 (S.D. Cal. Mar. 24, 2023)....................................................4

*Weigele v. FedEx Ground Package Sys., Inc.*,
    267 F.R.D. 614 (S.D. Cal. 2010)......................................................................6

**STATUTES**

Cal. Code Regs. tit. 15, § 2240(a) ......................................................................8

Cal. Const. Art. I § 1 .........................................................................................4

**RULES**

Fed. R. Civ. P. 26.......................................................................................3, 4, 5

**OTHER AUTHORITIES**

1 Newberg and Rubenstein on Class Actions § 3:68 (6th ed. 2023)..........................6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A
PROTECTIVE ORDER REGARDING DEFENDANTS' SUBPOENAS TO CDCR

## INTRODUCTION

1    In this certified class action alleging unconstitutional and illegal conditions

2    within the San Diego County Jail System, Defendants served subpoenas on a non-

3    party, the California Department of Corrections and Rehabilitation ("CDCR"),

4    seeking records related to 13 of the 14 named plaintiffs.  The subpoenas seek

5    extensive records going back decades, generated within a different carceral system

6    than the one at issue here.  Through extensive meet and confer efforts, the parties

7    have reached agreement on the scope of the subpoenas as to three of four categories

8    of information sought, with the only remaining dispute relating to requests for the

9    named plaintiffs' CDCR C-Files.  As demonstrated below, the named plaintiffs have

10   a right to privacy in the information that Defendants seek from their California state

11   prison C-Files that they have not sacrificed by bringing this lawsuit.  And

12   Defendants seek information in those C-Files that is irrelevant and disproportionate

13   to the needs of the case.  Rather than shedding light on the named plaintiffs'

14   credibility or adequacy to serve as class representatives, as Defendants claim,

15   release of the C-Files would do nothing more than ignite protracted ancillary motion

16   practice and argument over the validity and meaning of disciplinary and Board of

17   Parole Hearings documents that may be located in the files.  Plaintiffs respectfully

18   request that this Court issue a protective order barring Defendants from accessing

19   the private information in the CDCR C-Files.

## FACTUAL BACKGROUND

20   On January 31, 2024, Defendants served subpoenas on non-party CDCR for

21   records related to 13 of the 14 named plaintiffs.  *See* Declaration of Gay Crosthwait

22   Grunfeld ISO Motion for Protective Order ("Grunfeld Decl."), Exhibits A–M.  The

23   subpoenas seek four categories of information related to the named plaintiffs:

24   (i) "Case Summary" records, consisting of "chronological history," "legal status

25   summary," "movement print out," and "probation report" for the commitment

26   offense; (ii) "Legal Documents" consisting of the "abstract of judgment" for the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A
PROTECTIVE ORDER REGARDING DEFENDANTS' SUBPOENAS TO CDCR

1  commitment offense; (iii) the "Entire ERMS" and "Entire SOMS" files (together,

2  the "Central File" or "C-File"[1]), and (iv) medical records.  *Id.*  Many of the

3  subpoenas seek records going back decades.  All seek information post-dating time

4  spent at the San Diego County Jail System.

5  　　On February 12, 2024, Plaintiffs objected to the subpoenas on privacy

6  grounds.  *Id.* ¶ 20.  Over the course of multiple meet-and-confers, the parties

7  reached a compromise as to the production of three of the four categories of

8  information:  the named plaintiffs' case summary, legal documents, and medical

9  records, provided that the medical records were narrowed to March 2, 2017 through

10 the present.  *Id.* ¶ 22.  The parties filed a stipulation consistent with that agreement.

11 *See* Dkt. 561.  The Parties' agreement and outstanding dispute regarding the

12 subpoenas were discussed further during a March 1, 2024 hearing with the Court.

13 Following that hearing, the Court ordered Plaintiffs to file the present motion for a

14 protective order regarding the Defendants' subpoenas to CDCR.  *See* Dkt. 569.[2]

15 　　Under the Parties' agreement, Defendants are seeking information from three

16 of eleven sections in the C-File.  *See* Grunfeld Decl., Exhibit N.  Defendants are

17

18 [1] ERMS stands for CDCR's "Electronic Record Management System" and SOMS
   stands for CDCR's "Strategic Offender Management System."  Grunfeld Decl.,
19 Exhibit N.  Those systems contain the entirety of each named plaintiff's "C-File"
   maintained by CDCR.  *See* Grunfeld Decl., Exhibit R.  "The C-File is the central
20 depository for copies of all documents, correspondence, and reports pertaining to
   each inmate."  Grunfeld Decl., Exhibit N, Art. 5 § 72030.3.  The C-File contains
21 wide swaths of private information, including disciplinary records, housing
   information, work reports, correspondence, psychiatric reports generated in
22 connection with evaluations of readiness for parole, and numerous other types of
   documents.  *Id.* § 72030.4.

23
   [2] Plaintiffs planned to file a motion to quash or modify the subpoenas under Rule 45.
24 But Defendants chose the place of compliance for the subpoenas as Torrance, which
   means jurisdiction to hear that motion lies in the C.D. Cal.  During hearings on
25 February 23 and March 1, 2024, the Parties and Judge Leshner agreed that they
   would prefer that Judge Leshner resolve the dispute.  but Defendants declined to re-
26 issue the subpoenas with a place of compliance in S.D. Cal., so Plaintiffs cannot
   bring a motion to quash or modify in S.D. Cal.  Instead, the Court directed Plaintiffs
27 to file a motion for a Rule 26 protective order.  In so doing, Plaintiffs do not waive
   any rights to move to quash or modify the subpoenas should Defendants' opposition
28 to the motion for a protective order seek information beyond the Parties' agreement.

1    seeking records from the "Disciplinary Section," the "Abstract of Judgment" from

2    the "Legal Documents Section," and records related to Board of Parole Hearings

3    ("BPH") generated psychiatric reports in the "BPT and NAEA Section." *Id.*

4    § 72030.4.  Plaintiffs agreed to the production of abstracts of judgment, but

5    Plaintiffs object to Defendants' requests for the named Plaintiffs' private

6    information in the Disciplinary Section and the BPH psychiatric reports.  Grunfeld

7    Decl. ¶ 22.  Defendants have indicated they intend to use this information at the

8    upcoming depositions of the named Plaintiffs which are scheduled to begin

9    March 11, 2024.  Grunfeld Decl., Exhibit S (Transcript of February 23, 2024

10   Hearing) at 27:21–24.

11         Plaintiffs now move for a protective order barring Defendants from obtaining

12   any information in the named Plaintiffs' "Entire ERMS File" and "Entire SOMS

13   File" (collectively, the "C-File"), other than the "Abstract of Judgment" from the

14   "Legal Documents" section of the C-File.  Plaintiffs request that Defendants be

15   explicitly barred from using C-file information in any depositions of the named

16   Plaintiffs or in any other manner throughout the litigation.   Plaintiffs request that

17   the Court bar Defendants from obtaining or using any medical records from CDCR

18   unless the record has a date indicating the record concerns medical treatment that

19   was initiated on or after March 2, 2017.  *See* Dkt. 561.

20                          **LEGAL STANDARD**

21         Under Rule 26, the Court "may, for good cause, issue an order to protect a

22   party or person from annoyance, embarrassment, oppression, or undue burden or

23   expense."  Fed. R. Civ. P. 26(c)(1).  "[T]he Court may issue a protective order

24   preventing discovery that would subject a person to undue burden, considering

25   factors such as … the movant's reasonable privacy interests."  *Pate v. Pac. Harbor*

26   *Line, Inc.*, 2023 WL 2629867, at *10 (C.D. Cal. Feb. 6, 2023).  "To evaluate privacy

27   objections under either federal or state law, the Court must balance the party's need

28   for the information against the individual's privacy right."  *Tierno v. Rite Aid Corp.*,

1  2008 WL 3287035, at *3 (N.D. Cal. July 31, 2008).  Evaluating the undue burden of

2  subpoena "requests [that] seek to invade [a person's] privacy rights" requires

3  consideration of "'such factors as relevance, the need of the party for the documents,

4  the breadth of the document request, the time period covered by it, the particularity

5  with which the documents are described and the burden imposed.'"  *Vena v. Moore,*

6  *Schulman & Moore, APC*, 2023 WL 6194315, at *5 (S.D. Cal. Mar. 24, 2023)

7  (quoting *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)).

8       The factors for the Court to consider under Rule 26(b)(2)(C) are similar.

9  "[T]he right to discovery, even plainly relevant discovery, is not limitless.  Rule

10  26(b)(2)(C) provides: 'On motion or on its own, the court must limit the frequency

11  or extent of discovery otherwise allowed by these rules or by local rule if it

12  determines that … the proposed discovery is outside the scope permitted by Rule

13  26(b)(1).'"  *Sanchez v. Am. Media, Inc.*, 2023 WL 4681602, at 12 (C.D. Cal. May 8,

14  2023).  Rule 26(b)(1) limits discovery to "nonprivileged matter that is relevant to

15  any party's claim or defense and proportional to the needs of the case, considering

16  the importance of the issues at stake in the action, the amount in controversy, the

17  parties' relative access to relevant information, the parties' resources, the

18  importance of the discovery in resolving the issues, and whether the burden or

19  expense of the proposed discovery outweighs its likely benefit."  *Id.*

**ARGUMENT**

**I.    A PROTECTIVE ORDER IS NECESSARY TO PROTECT THE NAMED PLAINTIFFS' PRIVATE INFORMATION, DISCOVERY OF WHICH WOULD CAUSE ANNOYANCE, EMBARRASSMENT, OPPRESSION, AND UNDUE BURDEN ON NAMED PLAINTIFFS.**

24       A protective order is necessary because Defendants seek records in the

25  Plaintiffs' C-File in which the named plaintiffs have a constitutional right to

26  privacy.  *See Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004)

27  ("Individuals have a constitutionally protected interest in avoiding disclosure of

28  personal matters.").  *see also* Cal. Const. Art. I § 1.  The named plaintiffs "have a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A
PROTECTIVE ORDER REGARDING DEFENDANTS' SUBPOENAS TO CDCR

1    privacy interest in the disclosure of information contained in the C-File." *Gutierrez*

2    *v. Mora*, 2019 WL 8953125, at *4 (C.D.Cal., Dec. 18, 2019).  Allowing Defendants

3    to use private information from the C-file would subject the named Plaintiffs to

4    annoyance, embarrassment, oppression, and undue burden. *See Pate*, 2023 WL

5    2629867, at *10.

6    　　　None of the named Plaintiffs have waived their right to privacy in regards to

7    the private information contained in their CDCR C-Files.  Waiver only "occurs

8    when a plaintiff asserts a claim" that puts otherwise private information at issue in

9    the case.  *Cones v. Parexel Int'l Corp.*, 2018 WL 3046424, at *3 (S.D. Cal. June 20,

10   2018).  The named plaintiffs have <u>not</u> made any assertions regarding their time in

11   CDCR facilities.  *See* Third Amended Complaint, Dkt. No. 321.  Even if the Court

12   disagrees and finds "there is a waiver, the scope is limited to what is at issue in the

13   case or directly relevant to the litigation," and any "waiver should be construed

14   narrowly."  *Cones*, 2018 WL 3046424, at *3.  Further, "just because [a] plaintiff

15   initiated [a] lawsuit does not mean she sacrifices all privacy rights in" those records,

16   "rather, her privacy must be balanced against defendant's need for the information

17   sought."  *Hooks v. Target Corp.*, 2022 WL 18142528, at *3 (C.D. Cal. Dec. 29,

18   2022).  Defendants have not met their "burden of establishing that the information is

19   directly relevant to the claims at issue."  *Cones*, 2018 WL 3046424 , at *3.

20   **II.    THE SUBPOENAS ARE NEITHER RELEVANT NOR**
     **PROPORTIONATE TO THE CLAIMS AND DEFENSES AT ISSUE**

21

22   　　　"[U]nder Rule 26(c)(1), the Court may issue a protective order preventing

23   discovery that would subject a person to undue burden," including the burden

24   associated with violating a party's privacy rights, "considering factors such as the

25   relevance of the requested materials [and] breadth of the requests."  *Pate*, 2023 WL

26   26929867, at *10.  Discovery must be "relevant to any party's claim or defense and

27   proportional to the needs of the case."  *Gutierrez*, 2019 WL 8953125, at *4.

28   　　　Defendants have indicated that they are seeking the information in the C-Files

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A
PROTECTIVE ORDER REGARDING DEFENDANTS' SUBPOENAS TO CDCR

1    to attack "the adequacy of these individuals as class representatives" and "to attack

2    credibility… ."  Grunfeld Decl., Exhibit S, 39:2–21, 50:15–51:16.  But Defendants

3    stipulated to the adequacy of these class representatives, and the Court agreed.  The

4    Court certified a class consisting of "[a]ll adults who are now, or will be in the

5    future, incarcerated in any of the San Diego County jail facilities" along with three

6    subclasses,  Dkt. 435 at 10, based on a joint motion for class certification in which

7    "the parties stipulate[d] that the proposed Incarcerated People Class and each of

8    three Subclasses listed above satisfy each of the Rule 23(a) requirements" including

9    that "the representative parties will fairly and adequately protect the interests of the

10    class."  Dkt. 423 at 14.

11           Defendants' counsel have now indicated they may use the depositions to seek

12    to remove the class representatives and try to decertify the class.  The reasons for

13    this are unclear since Plaintiffs could easily find other class representatives among

14    the approximately 50,000 individuals San Diego incarcerates annually.  *See* S.D.

15    County Sheriff's Dep't., Jail Data / Reports, https://sdsheriff.gov/resources/jail-

16    population-data (last visited Mar. 4, 2024).  And Defendants would bear the "burden

17    of demonstrating that class certification is no longer proper."  *Weigele v. FedEx*

18    *Ground Package Sys., Inc.*, 267 F.R.D. 614, 617 (S.D. Cal. 2010).  Defendants'

19    theory that an alleged misstatement leading to a CDCR disciplinary charge would

20    somehow justify removal of the class representative is far-fetched.  "[M]any courts

21    have rejected the contention that a proposed representative is inadequate because of

22    prior unrelated unsavory, unethical, or even illegal conduct."  1 Newberg and

23    Rubenstein on Class Actions § 3:68 (6th ed. 2023) (collecting cases).  And the

24    standard to attack credibility is extraordinarily high, as one court "explained, '[f]or

25    an assault on the class representative's credibility to succeed, the party mounting the

26    assault must demonstrate that there exists admissible evidence so severely

27    undermining plaintiff's credibility that a factfinder might reasonably focus on

28    plaintiff's credibility, to the detriment of the absent class members' claims.'"

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A
PROTECTIVE ORDER REGARDING DEFENDANTS' SUBPOENAS TO CDCR

1    *Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6300479, at *9 (S.D. Cal. Nov.

2    29, 2018) (quoting *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990)).

3         **A.    The Subpoenas Seek Irrelevant Information**

4         The subpoenas do not seek relevant information because they are focused

5    entirely on records regarding named plaintiffs' incarceration in CDCR prisons.

6    What happened to the named plaintiffs outside of the San Diego County jails is

7    irrelevant.  Defendants cannot "ma[k]e a persuasive case for [the] relevance" of the

8    information at issue in these subpoenas.  *Gutierrez*, 2019 WL 8953125, at *6.

9         One recent case, *Kovalenko v. Kirkland & Ellis*, 2024 WL 664691 (N.D. Cal.,

10   Feb. 16, 2024), illustrates this point.  In that employment discrimination case,

11   defendants issued third-party subpoenas to plaintiff's prior employers for private

12   information in her personnel, medical, and grievance files.  *Id.* at *1, 3.  The court

13   rejected defendants' arguments that the subpoenas sought relevant information,

14   explaining "[t]he proper focus of discovery should be on [plaintiff's] performance

15   at" the defendant law firm, and that "[p]ersonnel records from other law firms . . .

16   are not evidence of what happened during her time at" defendant law firm.  *Id.* at *4.

17   The court held that defendant's argument that they needed the records "because they

18   would bear on Plaintiff's credibility if they contained information that contradicts

19   representations Plaintiff made to" Defendants amounted to "'the type of fishing

20   expedition discovery that courts consistently deny.'"  *Id.* at *6 (quoting *Lyzer v.*

21   *Caruso Produce, Inc.*, 2018 WL 11489791, at *3 (D. Or. Oct. 4, 2018)).  Indeed, "a

22   vague assertion that Plaintiff must be lying" about conduct that might appear in the

23   private records "is a far cry from specific allegations of untruthfulness" required to

24   permit subpoenas that seek private information from a non-party.  *Kovalenko*, 2024

25   WL 664691, at *6.  Here too, Defendants' purported need for Plaintiffs' private

26   information to attack adequacy and credibility lacks specificity and is a fishing

27   expedition that should be rejected.

28        *Gutierrez* is also instructive:  in that case—involving a civil rights claim by a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A
PROTECTIVE ORDER REGARDING DEFENDANTS' SUBPOENAS TO CDCR

1  plaintiff injured during an arrest—the court refused to allow discovery of private

2  information contained in plaintiff's prison disciplinary records.  2019 WL 8953125

3  at *1, 6.  The defendants issued four subpoenas to jails and prisons where the

4  plaintiff had been incarcerated since the incident for "any and all records, including

5  but not limited to, disciplinary records" from the plaintiff's C-File.  *Id.* at *2.  The

6  court held that those requests implicated the plaintiff's privacy rights and concluded

7  that the "claims and defense at issue here do not implicate any disciplinary conduct

8  by Plaintiff in the years after" the incident in question.  *Id.* at *6.  Here, as in

9  *Gutierrez*, none of the claims or defenses have anything to do with the named

10  plaintiffs' disciplinary history in CDCR institutions.  *See* Second Amended Answer,

11  Dkt. No. 364 at 37–41.

12       The psychological reports prepared for the BPH, called Comprehensive Risk

13  Assessments ("CRA"), are even more attenuated.  These reports are prepared by

14  "psychologists employed by the Board of Parole Hearings" prior to an incarcerated

15  person's appearance before State Commissioners seeking parole.  Cal. Code Regs.

16  tit. 15, § 2240(a).  They are based on an evaluation of "factors impacting an

17  inmate's risk of violence" to assess whether the person might commit an act of

18  violence in the future if they were released.  *Id.*  CDCR's evaluation of the risk that

19  a named plaintiff might commit violence in the future has nothing to do with the

20  conditions these plaintiffs experienced in San Diego County jails in the past.

21  Defendants cannot explain what relevance these reports might have to the conditions

22  of confinement in the San Diego County jails.

23       **B.    The Subpoenas Are Disproportionate to the Needs of the Case**

24       These subpoenas are not proportionate to the needs of the case.  Relevant

25  factors regarding proportionality include "the parties' relative access to relevant

26  information," and "the importance of the discovery in resolving the issues" at stake

27  in the litigation.  *Arredondo v. Univ. of La Verne*, 2021 WL 6104410, at *2 (C.D.

28  Cal. Nov. 22, 2021).  Defendants have access to all the information they need about

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A
PROTECTIVE ORDER REGARDING DEFENDANTS' SUBPOENAS TO CDCR

the named plaintiffs' experiences in Defendants' own jails.  A fishing expedition for discovery about the named plaintiffs' time in other institutions will not "have any value in resolving the civil rights liability issues in this case." *Gutierrez*, 2019 WL 8953125, at *6.

Again, *Kovalenko* is instructive.  There, at the time defendants issued the subpoenas, "[n]obody ha[d] been deposed," which meant defendants had "no idea" whether the records they sought might contain relevant evidence.  2024 WL 66469, at *4, 6.  The court explained that the fishing expedition defendants sought to engage in "raise[d] a significant trial within a trial concern," because even if the subpoenas revealed evidence that touched on credibility, "to figure out what inference could be drawn from" that evidence, the court "would have to adjudicate the merits of some other dispute." *Id.* at *7.  The court held that "[g]oing down this rabbit hole is not proportional to the needs of the case." *Id.*  Here, as in *Kovalenko*, Defendants have not deposed any of the named plaintiffs yet and have no idea whether their CDCR records contain any allegations of false statements.  Defendants' claim that they would only use disciplinary records involving allegations of false statements, Grunfeld Decl. ¶ 22, does not mitigate this issue.  Defendants have informed the court that CDCR has stated it is "too burdensome" to sift through medical records by date. *Id.*, Exhibit S at 30:18–31:16.  Presumably, it will also be too burdensome for CDCR to sift through disciplinary files to identify which involve false allegations.  So, if Defendants are permitted to use any of these files during depositions, Plaintiffs will be forced to evaluate in real time whether the file actually contains an allegation of a false statement.  This will no doubt lead to disputes during the depositions as to whether a file really is relevant to Defendants' purported need for evidence of false statements in CDCR prisons.

This "trial within a trial" concern is present for another reason—the veracity of CDCR's disciplinary records and CRAs is dubious at best.  If Defendants are permitted access to these records, secondary litigation challenging the assertions in

1   those records about the named plaintiffs' conduct in CDCR prisons will ensue.  Both

2   California state and federal courts have recognized that CDCR staff issue false and

3   factually unsupported disciplinary Rules Violation Reports ("RVRs") to

4   incarcerated people.  *See, e.g., In re Banks*, 97 Cal. App. 5th 463, 465 (2023)

5   (vacating an RVR because the record contained "*no* evidence" for one element of

6   the offense); *Ashker v. Newsom*, 2019 WL 330461, at *8–9 (N.D. Cal. Jan. 25,

7   2019) (summarizing unrebutted evidence of fabrication of information in CDCR

8   disciplinary files, including instances of "CDCR officials portraying their own

9   investigatory conclusions as the statements of informants"); *Armstrong v. Newsom*,

10  475 F. Supp. 3d 1038, 1048–49 (N.D. Cal. 2020) (describing staff assault on

11  incarcerated class action declarant, after which CDCR issued RVRs claiming that

12  the incarcerated person had been drunk and initiated an assault on staff—claims

13  which the district court found "lacks credibility").  Indeed, undersigned counsel, as

14  part of their representation of the *Armstrong* class, have repeatedly alerted CDCR to

15  examples of staff issuing false, discriminatory, and retaliatory RVRs to incarcerated

16  people.  *See* Grunfeld Decl. ¶ 23, Exhibit T.  Plaintiffs' counsel have also repeatedly

17  attacked the validity and usefulness of CRAs.  *See id.* ¶ 23.

18         Plaintiffs will challenge the use of these CDCR records.  Whether or not a

19  named plaintiff actually engaged in the conduct alleged in an unreliable RVR or a

20  biased risk assessment from a CDCR prison will consume unnecessary time in an

21  already complex and protracted litigation.  Because this information is neither

22  relevant nor proportionate to the needs of the case, Defendants' claimed need for the

23  information does not outweigh the Plaintiffs' privacy interests.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

[4439991.9]                                10                        Case No. 3:20-cv-00406-AJB-DDL

1

# CONCLUSION

2    For the above reasons, Plaintiffs respectfully seek a protective order barring

3 Defendants from using any information obtained from CDCR in response to their

4 requests for Plaintiffs' "entire ERMS" and "entire SOMS" files, with the exception

5 of the "Abstract of Judgment" from the "Legal Documents" section of the C-File.

6

7 DATED:  March 5, 2024          Respectfully submitted,

8                                ROSEN BIEN GALVAN & GRUNFELD LLP

9

10                               By: */s/ Gay Crosthwait Grunfeld*
                                     Gay Crosthwait Grunfeld

11
                                 Attorneys for Plaintiffs and the Certified Class
12                               and Subclasses

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28