```
 1                    UNITED STATES DISTRICT COURT

 2                 FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3   DARRYL DUNSMORE, ERNEST          )
     ARCHULETA, ANTHONY EDWARDS, REANNA)
 4   LEVY, JOSUE LOPEZ, CHRISTOPHER    )
     NELSON, CHRISTOPHER NORWOOD, and  )
 5   LAURA ZOERNER, on behalf of       )
     themselves and all others         )
 6   similarly situated,               )
                                       )   No. 20-CV-00406-AJB-DDL
 7             Plaintiffs,             )
                                       )
 8   V.                               )   March 1, 2024
                                       )
 9   SAN DIEGO COUNTY SHERIFF'S        )
     DEPARTMENT; COUNTY OF SAN DIEGO;  )
10   CORRECTIONAL HEALTHCARE PARTNERS, )
     INC.; LIBERTY HEALTHCARE, INC.;   )
11   MID-AMERICA HEALTH, INC.; LOGAN   )
     HAAK, M.D., INC.; SAN DIEGO COUNTY)
12   PROBATION DEPARTMENT, and DOES 1  )
     to 20 inclusive,                  )
13                                     )
               Defendants.            )
14   _____)   San Diego, California

15
     TRANSCRIPT OF DIGITALLY RECORDED VIDEOCONFERENCED PROCEEDINGS
16                     (Discovery Conference)

17

18      BEFORE THE HONORABLE DAVID D. LESHNER, MAGISTRATE JUDGE

19

20

21

22

23   COURT REPORTER:        AMANDA M. LeGORE
                            RDR, CRR, CRC, FCRR, CACSR
24                          U.S. District Court
                            333 West Broadway, Suite 420
25                          San Diego, CA 92101
                            amanda_legore@casd.uscourts.gov
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:        GAY GRUNFELD
                                Rosen Bien Galvan & Grunfeld LLP
 3                              101 Mission Street, Sixth Floor
                                San Francisco, CA  94105-1738
 4                              (415)433-6830
                                ggrunfeld@rbgg.com
 5

 6

 7   FOR DEFENDANT COUNTY OF
     SAN DIEGO:                 ELIZABETH PAPPY
 8                              Burke Williams & Sorenson LLP
                                501 W. Broadway, Suite 1600
 9                              San Diego, CA  92101
                                (619)814-5800
10                              epappy@@bwslaw.com

11

12

13                                   -0-

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Friday, March 1, 2024)

2

3                    P R O C E E D I N G S

4

5          THE COURT:  All right.  Good morning, everyone.

6          We are on the record in Dunsmore, et al, versus

7    County of San Diego, et al.  I guess -- well, San Diego

8    Sheriff's Department, et al., Case Number 23-CR-406.

9          May I have appearances with counsel, beginning with

10   plaintiffs' counsel.

11         ATTORNEY GRUNFELD:  Good morning, your Honor.  This

12   is Gay Grunfeld for plaintiffs and the certified class.

13         THE COURT:  Thanks, Ms. Grunfeld.

14         ATTORNEY PAPPY:  Elizabeth Pappy appearing on behalf

15   of the defendants.

16         THE COURT:  All right.  Good morning to you,

17   Ms. Pappy.

18         What I would like to do is move through the items in

19   the order in which I had them on the email that I sent to

20   everyone this morning.  And then, at the end, we can see if

21   there are issues that we need to discuss, that -- that I

22   missed.

23         First, beginning with the County's subpoenas, I'm

24   just going to say regarding the plaintiffs' custody and medical

25   records generally, I received your proposed stipulation whereby

1    it appears that the parties have resolved issues with respect

2    to the subpoenas directed to California Correctional Healthcare

3    Services.

4              Does that -- is that accurate, Ms. Grunfeld?

5              ATTORNEY GRUNFELD:  Yes, your Honor.

6              THE COURT:  Okay.  Then the issue, it sounds like,

7    relates to the subpoenas to CDCR.  And I saw that the parties

8    did stipulate to the changing the place of compliance in the

9    subpoenas, and I spent a fair amount of time looking at Rule

10   45.

11             Here's the bottom line, Counsel.  I don't -- given

12   that this is all designed to protect nonparties, I'm not

13   convinced that Rule 45 allows the parties to stipulate around

14   the place of the compliance.

15             However, I am convinced that under Rule 26(c) a

16   motion for a protective order would be an appropriate mechanism

17   in this district if the plaintiffs chose to bring that.

18   Because what we are talking about is not a dispute involving

19   the nonparty but, really, the plaintiffs raising an issue with

20   respect to the subpoenas that jeopardize its -- their own

21   interests.

22             So I do think, for those reasons -- not to get

23   hypertechnical on you.  But I do think it's correct to say

24   that, under Rule 45, you would need to move to quash in the

25   Central District of California.  But I do have jurisdiction, I

1    believe, to consider a motion for a protective order by the

2    plaintiffs with respect to this subpoena.  And let's -- let's

3    talk about it.

4           Here's my question.  Do the -- does the dispute with

5    respect to this subpoena, which I have in my -- sorry.  I

6    thought I was so well organized when I had every -- here we go.

7    Had all of the documents to go through.

8           I'm looking at the subpoena to CDCR's archives unit

9    that was provided to me by Ms. Pappy.  And it seeks the three

10   category -- three big categories of documents:  Case summary,

11   legal documents, and E.R.M.S. or S.O.M.S. file.

12          Are you all -- and I'm looking at the one for

13   Mr. Archuleta.

14          I understood --

15          ATTORNEY GRUNFELD:  (Indiscernible.)

16          THE COURT:  I understood the dispute to be

17   specifically with respect to the E.R.M.S or the -- and S.O.M.S.

18   file request.  Is that correct, Ms. Grunfeld?

19          ATTORNEY GRUNFELD:  Yes, your Honor.

20          THE COURT:  All right.  Here, I want to provide you

21   the benefit of my thinking on this issue, and then I would be

22   happy to hear from you.

23          I will tell you that, to the extent there are any

24   disputes about this, I will allow you each an opportunity to

25   give me your positions in writing.  And I am going to rule on

1    it on Wednesday, after the settlement conference.

2         My tentative view is that a motion for a protective

3    order would be appropriate with respect to these requests and

4    that the motion would have merit for the following reasons.

5         I did review the authorities that Ms. Grunfeld

6    provided and mentioned in our last hearing.  And here's where

7    I'm coming from, Ms. Pappy.  You have requested for each of the

8    named plaintiffs two very broad categories of documents:  An

9    entire E.R.M.S. file and an entire S.O.M.S. file.

10         I'm not even sure exactly what those documents -- or

11   what those files contain, but I'm told they contain -- among

12   other things -- psychiatric records, disciplinary records, and

13   other materials.

14         So I do think there is a real issue with respect to

15   the rest of the subpoenas, in that they seek these entire

16   files -- this entire E.R.M.S. file and the entire S.O.M.S.

17   file -- for each of the named plaintiffs.

18         And as everyone is aware, I have been focused on

19   issues of overbreadth with respect to certain of the

20   plaintiffs' discovery requests.  And, you know, I respectfully,

21   you know, tentatively conclude that seeking an entire E.R.M.S.

22   file and an entire S.O.M.S. file seeks, arguably, a host of

23   documents that are not relevant to the case and would not be --

24   not just not admissible -- which isn't my consideration in

25   ruling on the discovery motion -- but seek documents that

1    really go far beyond what would otherwise be allowed.

2            And I was thinking about it, candidly, in the context

3    of an employment case.  Where, if Mr. Archuleta was suing his

4    employer prior -- and alleging wrongful termination, would the

5    employer be allowed to subpoena a bunch of records from other

6    prior employers to look for information with which to impeach

7    Mr. Archuleta?  And the answer probably is not really.

8            And that was the issue before Judge Hixson in the

9    case that Ms. Grunfeld cited.  And for all of those reasons,

10   absent a specific request for a particular type of document

11   based on, perhaps, a belief that there's a disciplinary

12   incident involving Mr. Archuleta that is properly the subject

13   of a subpoena, I would be inclined to grant a motion for a

14   protective order with respect to the broad categories of

15   E.R.M.S. and S.O.M.S. files.

16           So with all of that, Ms. Pappy, I'm not asking you to

17   provide argument today.  I'm going to give you a chance to

18   provide whatever you wish to in writing on the issue.  But I at

19   least want to let you know what I'm thinking, so that you can

20   take that into account.

21           ATTORNEY PAPPY:  That -- if you don't want hear -- I

22   mean, I don't want to give you argument.  But we've actually

23   agreed to limit it -- plaintiffs don't agree with our

24   limitation, but we've agreed to limit it.

25           THE COURT:  To what?

1          ATTORNEY PAPPY:  To -- to the discipline files.  But

2    to the extent that they relate to anything that would -- the

3    credibility, really.

4          I mean, as strange as it may sound, like, you know,

5    discipline for killing their cellmate or attacking somebody is

6    probably not credibility related.

7          And Parole Board psychiatric only to the extent that

8    they claim that they have a mental health issue that they are

9    claiming they were provided inadequate care for in this

10   situation.

11         And I'm going to respectfully disagree with you about

12   subpoenaing prior employer records in employment cases because

13   I do it on occasion for very limited information.

14         THE COURT:  And that may be, for limited information.

15   Right.  No, that's fair enough.  And it may be that that's

16   appropriate in certain circumstances.

17         But I'm looking, here, at a very broad two categories

18   of documents:  The E.R.M.S. and the S.O.M.S. files.

19         So, fair enough.  And you are always welcome to

20   disagree with me.  That is not a problem.

21         ATTORNEY PAPPY:   (Laughing.)

22         THE COURT:  Ms. Grunfeld, what is the plaintiffs'

23   position with respect to the proposed compromise that the

24   County has offered with respect to the E.R.M.S. and the

25   S.O.M.S. files?

1          ATTORNEY GRUNFELD:  We appreciate the compromise, and

2    we didn't discuss it at this past Wednesday's meet-and-confer.

3    But we would still seek a protective order, and the reasons --

4    which I can put in writing -- principally involve along the

5    lines of what Judge Hixson did, but it's opening up collateral

6    litigation.

7          So, for example, CDCR has told -- apparently --

8    Ms. Pappy that they cannot divide the medical records before

9    March 1, 2017.  And so some will be produced, and then we've

10   agreed that we won't use those.

11         RVRs can be written for a number of reasons.  As

12   Ms. Pappy said, obviously, harming a cellmate, crossing a line,

13   seeking medication.  There's a hundred reasons an RVR can be

14   written.

15         We respectfully disagree that they are valid, for

16   most of them.  But, even so, how is CDCR or how are the parties

17   to determine if these alleged incidents that are occurring

18   before and after time in San Diego County jail have anything to

19   do with a person's credibility?  So it opens up this sort of

20   fishing expedition and ancillary litigation.

21         As for the Border Patrol hearing's psychological

22   evaluations, we also believe those are biased.  And we are

23   giving the medical records.  And my understanding is that there

24   will be information about psychiatric treatment in those

25   records.

1        We don't believe they're relevant to the San Diego

2   jail litigation, but we have agreed that those may be produced

3   under a protective order to the defendants for a restricted

4   amount of time.

5        So we don't see the need for these RVRs and these

6   psychological evaluations for these depositions.  Defendants

7   have access to everything that happened in their jail,

8   everything that was said, every complaint that might have been

9   made about our clients about their behavior at the jail.  And

10  they can cross-examine our clients, starting with the first

11  deposition on March 11th, about those incidents.  But we don't

12  think we need to get into these before-and-after scenarios,

13  which none of us -- as we sit here -- knows what's even in all

14  of these documents.  So that's what we would argue.

15       I noted that the Court did not sign the stipulation

16  regarding Rule 45.  I understand why.  So I think what we would

17  have to do is perhaps come up with a different compliance date

18  and then litigate the protective order, if we're not going to

19  do the stipulated, you know, amendment of the subpoenas that we

20  had originally contemplated to be in San Diego.

21       THE COURT:  To be clear, my -- my proposal would be

22  to actually save you the time of doing anything more, and it's

23  to give you an opportunity to brief the issue by Tuesday.  And

24  I'm going to rule on a Wednesday.  So I -- I don't think we

25  need to change any compliance dates for anything.

1             And, in fact, I really want to work hard to help you

2    avoid, you know, any -- any delays.  If you've got depositions

3    scheduled, you said, Ms. Grunfeld, for the following week, I

4    want to help you keep those on track.

5             To the extent you all want to work with CDCR on a

6    different compliance date, that's certainly entirely within

7    your purview to do so.  And I don't -- unless you think I need

8    to be involved in that --

9             ATTORNEY PAPPY:  They've been -- they've been very --

10   whatever Ms. Grunfeld and I have sort of agreed to, we then

11   communicate to CDCR.  Their -- they'll do what Ms. Grunfeld and

12   I ask them to do.

13            I think that, right now, we've pushed the disclosure

14   date out to March 8th, so you ruling by next Wednesday --

15            THE COURT:  Okay.

16            ATTORNEY PAPPY:  -- finally on this -- and I do

17   appreciate the fact that -- and thank you for the fact that

18   plaintiffs can just file this motion -- file it -- do this

19   briefing in front of you, and you'll make a ruling on it.  I

20   don't -- it's not complicated.

21            And when we talked about it on Wednesday, we had

22   outlined these -- these suggestions.  That's all we're really

23   going to put in the brief.  And --

24            THE COURT:  Okay.

25            ATTORNEY PAPPY:  -- yeah, I appreciate your truncated

1   method of handling this.

2          THE COURT:  Sure.

3          So what I think I want to do with you all on

4   Wednesday, then, is I have blocked out the morning for our

5   settlement discussions, and I'm looking forward to that.  I

6   really am.

7          I actually -- and then we're going to do the status

8   conference.  I actually have, now, availability in the

9   afternoon.  So what I'm going to do -- because people travel

10  and you are devoting a lot of time and effort to this -- is

11  just continue on with you all, with perhaps a short lunch

12  break.  And then we're going to resolve this discovery issue

13  and perhaps other discovery issues in the afternoon so we can

14  really make good use of everyone's time.

15         ATTORNEY PAPPY:  Great.  That works.

16         ATTORNEY GRUNFELD:  So what is the plan for these

17  briefs?  May we file on Monday or --

18         THE COURT:  You may file on Tuesday.

19         ATTORNEY GRUNFELD:  Tuesday.

20         And should it be limited to the issue of whether the

21  narrowed proposal -- in other words, the BPH and disciplinary

22  sections of the C file --

23         THE COURT:  I think that makes sense, Ms. Grunfeld.

24  I -- if that's really where the parties are on this one narrow

25  issue, in terms of this is the -- the County's offered to limit

1    it, I think that would be appropriate.  And then you can tell

2    me why you agree or disagree with that, Ms. Grunfeld.

3           But before I do that, what -- what is your position?

4    Should it be -- is that the best way to brief this,

5    Ms. Grunfeld?

6           ATTORNEY GRUNFELD:  We'll -- yes, if that's the --

7    you know, in other words, what we don't want is to brief that,

8    and then a change in position.

9           But I understand the defendants' position to be clear

10   now.  That their -- or I will, as soon as Ms. Pappy speaks.

11   That they are only seeking the BPH and disciplinary sections of

12   the C file for our clients.  Or perhaps it's narrower; only the

13   disciplinary sections as they relate to false statements.  I --

14   that's where I'm a little confused.

15          THE COURT:  Okay.  Here's what I would like to do.

16          Ms. Pappy, having -- after we finish today, you give

17   some thought to what we discussed and provide Ms. Grunfeld,

18   before noon today with, like, what's your position; your --

19   your final position on what documents should be produced.  And

20   that will be what the parties can brief for me on Tuesday.

21   Would that be okay?

22          ATTORNEY PAPPY:  Sure, sure.

23          THE COURT:  Okay.

24          ATTORNEY GRUNFELD:  And should it be styled a motion

25   for protective order?

```
 1              THE COURT:  Yes, that would be fine.  I -- I'm
 2   understanding you to be making a motion for a protective order
 3   right now.  And we're going to have briefing on that, and we're
 4   going to resolve this.
 5              ATTORNEY GRUNFELD:  Great.  Thank you.
 6              THE COURT:  Is ten pages enough?
 7              ATTORNEY GRUNFELD:  Yes.
 8              ATTORNEY PAPPY:  I was thinking one.  (Laughing.)
 9              THE COURT:  Hey, you're welcome to do one page.
10   That's fine, if you wish.
11              ATTORNEY PAPPY:  (Laughing.)
12              THE COURT:  Right.
13              Okay.  That's issue one.  Thank you both for the
14   update, and I think that sounds like a good plan.
15              Issue Number 2, texts and -- let's not -- text
16   messages.  I know this is separate from Microsoft Teams.
17              What, if anything, were you all able to hash out on
18   Wednesday?
19              Why don't you start, Ms. Grunfeld.
20              ATTORNEY GRUNFELD:  Thank you, your Honor.  We did
21   make progress.  We've made a lot of progress, but we're not in
22   agreement.  So I don't want to hide the headline.
23              THE COURT:  Okay.
24              ATTORNEY GRUNFELD:  But we agree on a time frame, as
25   I understand it:  March 1, 2023, to February 29, 2024.  So
```

1    that's one year.  That is one-third of the other ESI that we

2    requested.  So it's a narrower time frame.

3                THE COURT:  Okay.

4                ATTORNEY GRUNFELD:  We've agreed to 25 custodians:

5    15 deputy lieutenant custodians, plus ten custodians from

6    defendants' December 7th custodian list.

7                THE COURT:  Okay.

8                ATTORNEY GRUNFELD:  What we're having trouble with is

9    what should be produced once you've got that -- those

10   parameters in place.

11               THE COURT:  Okay.

12               ATTORNEY GRUNFELD:  So we've had some back and forth

13   on this, and we would propose that these texts that we've just

14   described for the 25 custodians, for the one-year period -- and

15   bear in mind that for some of that period these folks didn't

16   even have San Diego phones.  So it's probably not going to be a

17   full year's worth of texts.  We would propose that those be

18   turned over without any search terms, and let us search them.

19   And these are the reasons for that.

20               THE COURT:  Yeah.

21               ATTORNEY GRUNFELD:  First of all, we've narrowed the

22   custodians.  We've narrowed the time frame.  And unlike emails,

23   which tend to have back and forth in a more linear fashion,

24   texts are very organic.  I mean, we all do it.  We are

25   concerned about having hits with no context.

1          And as the Court knows, we don't agree on the search

2   lists.  The Court ruled for defendants' search lists.  I

3   understand that.  I'm not trying to argue that.  But this is a

4   very specific thing, these texts.  And having defendants --

5   they have proposed that they would use their search list, as I

6   understand it, and then determine which ones were relevant.

7          And here's why we're concerned about that.

8          We're already behind on discovery.  The Court ordered

9   all documents produced by December 22nd.  And as we'll talk

10  about in a little while, I count 21 follow-ups from the

11  February 14th order and only a handful of those have even begun

12  to be produced.

13         So if we were to get into a situation where

14  defendants were reviewing all of these texts for relevance to

15  the search list, we are afraid that it would be weeks before we

16  received them.

17         And we have been extremely good -- I hope Ms. Pappy

18  will agree -- about returning any privileged material to

19  defendants.  I believe we've done that at least five times, if

20  not more.

21         And deleting those documents -- there shouldn't be

22  privileged materials in these custodians' emails -- or texts,

23  by the way.  But if there were, we would claw them back or

24  return them.

25         But we are concerned about having a situation where

1    weeks are going by, where people are deciding if they've hit on

2    the search terms.  And, again, we feel the search terms are too

3    narrow.  But they've hit on the search terms.  And are they

4    relevant?  Going back and forth with these, you know, strings

5    of texts.

6              If there's something personal in there, obviously

7    it's irrelevant.  We're not going to use that kind of, you

8    know -- and, again, people shouldn't be texting about personal

9    things on San Diego phones.  But if they are, you know, we're

10   not going to make ill use of that.

11             So that's our proposal.  I know that defendants have

12   a different one, but that's our proposal.

13             And I hope that the Court will be able to decide this

14   because we do need, as the Court knows, to complete our

15   discovery.

16             THE COURT:  Understood.  Thank you, Ms. Grunfeld.

17             Ms. Pappy, first and foremost, I want to make sure I

18   understand where there is agreement.

19             It sounds like what we were talking about are text

20   messages limited to phones issued by San Diego County and not

21   personal devices.  Correct?

22             ATTORNEY PAPPY:  Correct.

23             THE COURT:  And we're talking about a one-year time

24   period?  Is that also correct?

25             ATTORNEY PAPPY:  Yes.

1          THE COURT:  And with respect to the 25 custodians

2    that Ms. Grunfeld mentioned, what I recall from our prior

3    status conference was that the plaintiffs were talking about

4    using search terms and to look through text messages, while you

5    had proposed sort of an incident-based approach to text message

6    searches.

7          ATTORNEY PAPPY:  Sort of.

8          THE COURT:  Sort of.  Right.  Give us five incidents,

9    and then we're going to look for text messages --

10          ATTORNEY PAPPY:  Names.  Well, relating to names.

11    They were going to do the search for the names, not for the

12    terms.

13          THE COURT:  Okay.  Right.

14          But your -- it was a -- sort of -- I called it an

15    incident-based approach versus a search-term based approach.

16          ATTORNEY PAPPY:  Yeah, yeah.

17          THE COURT:  And that was what you had expressed to

18    me, was, well, I thought we were proceeding down this path of

19    incident-based approach.  And you went back to talk again on

20    Wednesday.

21          Is everyone on board that the search-term-based

22    approach is what we are -- the parties are now talking about?

23          ATTORNEY PAPPY:  No.  I think there's a little bit of

24    confusion.

25          So -- so Mr. Swearingen and I were emailing about

1   this about six o'clock last night, kind of winding up what each

2   parties' proposal was.

3           THE COURT:  Okay.  Okay.

4           ATTORNEY PAPPY:  And the last proposal that

5   Mr. Swearingen sent me was we have agreement on 25 names.

6           THE COURT:  Okay.

7           ATTORNEY PAPPY:  We have agreement on the one-year

8   time period.  We have agreement on the December -- I call it

9   the December 7th list of ESI terms.

10          And what we don't have agreement on is the

11  plaintiffs' -- what Mr. Swearingen communicated to me last

12  night.  And I haven't -- I didn't hear different until here,

13  this hearing, is he wanted where the search term shows up.  So

14  March 1st, at nine o'clock, a text is sent.  And it has a

15  search term in it.  But he wanted 20 back and 20 forward.

16          And I said, well, wait a minute.  If somewhere in

17  those 20 back and 20 forward there's something personal,

18  there's some personnel issue that is private to these people or

19  to some other person, then you're not entitled to get that.

20          So what I said was don't put a "20 back and a 20

21  forward."  Just put "and all related texts."  So -- and the

22  example that I gave Mr. Swearingen in the email was, if there's

23  three texts back and five forward, great.  Then that's what

24  we'll give you.  If there's 30 texts back and 30 forward,

25  that's what I'll give you.

1          I am hearing for the first time today -- and will not

2     agree to -- this sort of open-ended where there's a hit.  I

3     don't even understand what it is that we would produce.  Just

4     because there's a hit, we get this entire person's phone?

5          That's why I liked Mr. Swearingen's approach a little

6     better, which was 20 forward, 20 back.

7          But I said, "I'm not going to agree with that because

8     we should be able to go through these texts."

9          And, by the way, there's not going to be very many

10    hits.  I will tell you that the teams hit list, which we just

11    got -- and they're sending me the teams messages today -- came

12    up with about 175 hits.  So we're not talking about a huge

13    volume of stuff.  And I suspect that texts is going to be even

14    less.

15         So in terms of time, I'm not concerned about it.  I'm

16    not under the December 22nd deadline of getting 750,000

17    documents produced.  This is -- you know, we're at a much

18    better pace, from my perspective.  So timing, not worried about

19    it.

20         But the proposal that I would like to adopt is what I

21    had sent to Mr. Swearingen last night, which is we decide how

22    many texts relate to this message, including this term; and we

23    will produce those too.  I do not agree to the notion that the

24    plaintiffs get to violate people's privacy rights -- just as we

25    just argued in the subpoena to CDCR -- and decide what they

1  want.

2          I would be -- the County would be violating

3  employees' privacy rights and the law by doing that.

4          THE COURT:  Ms. Grunfeld, I want to make sure I

5  understand your suggestion.

6          Was your suggestion that for this one-year time

7  period and these 25 custodians, that the County produce to the

8  plaintiffs every text message sent or received by those 25

9  people during that one-year period?

10          ATTORNEY GRUNFELD:  Yes, your Honor.  And they don't

11  have privacy rights in their work phone.  I think --

12          THE COURT:  Hang on.  I have another question for

13  you.

14          Was this proposal discussed with Ms. Pappy on

15  Wednesday or yesterday?

16          ATTORNEY GRUNFELD:  No, your Honor, because we just

17  got the rejection of our other proposal last night.

18          THE COURT:  All right.  Here's what we're going to

19  do.  I -- I am going to -- I'm going to resolve this by -- on

20  Wednesday.  And you're each welcome to submit to me your

21  proposal by March 5th.  And I will -- I also do want to see

22  the -- I don't want reams of emails, but I do want to see the

23  correspondence between Ms. Pappy and Ms. Swearingen on this

24  issue.

25          Ms. Pappy, just attach that to your -- yours.

1    Ms. Grunfeld, as long as it's in one, I don't need it from both

2    parties.  But I do want to see what was happening between the

3    parties between Wednesday -- just Wednesday and yesterday.   I

4    don't need weeks' worth of texts.  And I'm going to resolve it

5    on March 6th.

6              ATTORNEY PAPPY:  I will do that.

7              THE COURT:  Great.

8              ATTORNEY PAPPY:  I can -- I can short-circuit the

9    next one.

10             THE COURT:  That would be great.

11             ATTORNEY PAPPY:  County's interrogatories.

12             THE COURT:  Okay.  Go ahead.

13             ATTORNEY PAPPY:  Yeah, sure.  I thought about it.

14   And looked -- read them carefully and decided we have a full

15   day with just plaintiff.  And the most efficient way to do this

16   is just to ask them questions in their depositions.  I do not

17   like drafting discovery motions.  So issue resolved.

18             THE COURT:  All right.  Number 3, the plaintiffs'

19   responses to the County's interrogatories is moot.  Thank you.

20             ATTORNEY PAPPY:  Yes.

21             THE COURT:  Number 4, the County's response to

22   plaintiff's interrogatory 25.  You told me in the joint report,

23   and then again in our status conference, Ms. Pappy, that the

24   defendants were investigating whether the information in

25   Subsection (n) could be added.  What's the update?

1              ATTORNEY PAPPY:  The answer is that it can't.  And

2    what plaintiffs requested, then, is would the County be willing

3    to produce that report for today.  Because, remember, it was

4    a -- it was a time-sensitive --

5              THE COURT:  Sure.

6              ATTORNEY PAPPY:  -- piece -- can -- can the County

7    produce that report for today, including (n)?

8              I have not had a chance to communicate with the

9    client about that, but it would be my recommendation that they

10   do that.

11             THE COURT:  Is that just -- hang on real quick.

12             So -- so this -- this information that is at issue is

13   solely the date of placement in administrative segregation for

14   the people who are housed in administrative segregation -- or

15   separation, excuse me.  And the plaintiffs are simply asking

16   for a -- a list current as of a specific appointment time?

17             ATTORNEY PAPPY:  Yes.  And I don't want to speak for

18   plaintiffs.

19             But they want -- the spreadsheet that we produced,

20   that did not include that piece of information, they want the

21   spreadsheet with all of the data as of that day with that

22   Subsection (n), the lockdown -- lockdown at administrative

23   segregation piece included.  And so I think I'm characterizing

24   that correctly.

25             THE COURT:  And -- okay.  And I certainly want to

1    hear from Ms. Grunfeld.

2         Ms. Grunfeld, I see that we're talking about possibly

3    four spreadsheets with the Bates numbers that are set forth in

4    your February 20th joint status report.

5         Are we still talking about getting the dates of

6    placement in administrative separation for the -- each of those

7    spreadsheets, even if it can't be added?  Just to produce it

8    separately?

9         ATTORNEY GRUNFELD:  I'm not sure, your Honor.  What

10   we're trying to know, is do they track how long people are

11   placed in Ad-Sep.  And our understanding is they don't track.

12        So there was a proposal made to give us a list of

13   people who are in there right now --

14        THE COURT:  Okay.

15        ATTORNEY GRUNFELD:  -- which would be better than

16   nothing.  But I think this might be something where a short

17   writing could be helpful, just to understand what we need.

18        THE COURT:  When you say "a short writing," you mean

19   briefing on it?

20        ATTORNEY GRUNFELD:  Just a status report.  If we

21   could submit something with the others.  But I, you know --

22        THE COURT:  Okay.  I got you.  We have a lot of stuff

23   swirling around.  Understood.  I --

24        ATTORNEY GRUNFELD:  I mean, we just heard Wednesday

25   morning that they don't have the data.

1        Right?  You all don't have the data?  So --

2        ATTORNEY PAPPY:  No, no, no.  No.  We have -- we know

3   when people go into lockdown.  We have a list, and we produced

4   a list.

5        It's the plaintiffs' request -- to me -- was that

6   that spreadsheet -- they wanted included in that form of that

7   spreadsheet.  Because I did offer -- and I think Ms. Grunfeld

8   just said that -- a separate list of people in Ad-Seg, which

9   they also got in response to a different request.

10       But -- but I thought I understood that they wanted it

11  as a part of that spreadsheet.  That there was some meaning to

12  it to them.  Which I don't -- I don't need to know what it is,

13  but they wanted it as part of the spreadsheet.

14       THE COURT:  So it sounds like this is not going to be

15  ultimately a disputed issue.

16       But -- as I understood the joint report that you all

17  filed on February 20th, the plaintiffs wanted to know, for each

18  of the individuals in administrative separation -- like on

19  today, March 1st, 2024, how long have they been there?  And

20  that would then --

21       Is that correct, Ms. Grunfeld?

22       ATTORNEY GRUNFELD:  Yes, your Honor.

23       THE COURT:  And, Ms. Pappy, does the County have the

24  ability to run a separate spreadsheet as of a specific day?  As

25  of March 1st, 2024, these are the people in administrative

1    separation, and showing how long they've been there?

2               ATTORNEY PAPPY:  No.

3               THE COURT:  Okay.

4               ATTORNEY PAPPY:  However, a thought occurs to me that

5    one way to get at it is we pick a two-week time period.

6    Starting, probably not today, but maybe Monday.  And we print

7    out the Ad-Seg population for each day for two weeks, and then

8    they would be able to see who's in and who's out.  Because

9    people -- they just don't -- there's not one place where they

10   track this person went in, and this person went out, except in

11   their -- in their personal file.

12              THE COURT:  I understand.

13        So the short answer is that with respect to your

14   joint report from February 20th -- and I'm looking at ECF page

15   5 -- the date of placement in administrative separation is not

16   something that can be simply run in a spreadsheet.  The County

17   could run, currently, the people who are in administrative

18   separation as of today.  But that is not going to show the date

19   that each of those individuals was placed in administrative

20   separation?  Am I understanding you correctly, Ms. Pappy?

21              ATTORNEY PAPPY:  Yes.  Because even if I run this

22   report today, it will show someone in Ad-Sep as of today.  They

23   could have gone in yesterday, or they could have gone in the

24   day before.

25              THE COURT:  With that -- I'm sorry.  Go ahead.  Go

1   ahead.

2          ATTORNEY PAPPY:  So -- so that's -- yeah.

3          THE COURT:  Ms. Grunfeld, if that is the case, then

4   here's what I would suggest that you all do.

5          It sounds to me like perhaps -- if that information

6   is not available from the County's perspective, the date people

7   enter into administrative separation, that the proposal to give

8   the plaintiffs a list of the individuals in administrative

9   separation on a day-to-day basis for a period of time is the

10  best way to get you that information so you can see it.  Mr. --

11  Mr. Archuleta shows up in administrative separation, each day,

12  for the two-week period, whatever it may be.

13         And, Ms. Pappy, you can run a spreadsheet going back

14  in time?

15         If I asked you, "Who was in administrative separation

16  on February 1st," you could do that?

17         ATTORNEY PAPPY:  I'm pretty sure that we did.  So I

18  think the answer is yes.  I don't -- I -- I don't see why not.

19  I'm pretty --

20         Ms. Grunfeld, did you see something like that from

21  me?

22         ATTORNEY GRUNFELD:  I can look.

23         ATTORNEY PAPPY:  All right.  (Laughing.)

24         ATTORNEY GRUNFELD:  And, your Honor, I would also

25  like to speak with my expert about the parameters, if I might,

1    before we ultimately agree on what -- what would be a

2    compromise or -- or alternative way to get at these questions.

3         You know, in other words, is three months, six weeks,

4    two weeks -- I don't know, as I sit here, what -- what the

5    parameters would be if we were to run this kind of a

6    backward-and-forward look, perhaps.  But I --

7         THE COURT:  Hang on real quick.

8         ATTORNEY GRUNFELD:  Okay.

9         THE COURT:  I guess it -- look, I'm not trying to

10   prevent you from resolving this and -- but I'm a little bit

11   perplexed, I guess.  Because this was the subject of -- of the

12   motion to compel.  And I -- I thought it -- we had crystallized

13   it in your joint report.  But let me just see --

14        (Pause, referring.)

15        THE COURT:  I'm looking at Mr. Austin's declaration

16   submitted in support of the motion to compel, which was asking

17   about snapshot data.

18        I really -- I thought we were going to be able to

19   resolve this today -- and I'm not faulting anyone right now.

20   But if we need to resolve this on the 6th, we can do that.  I

21   just -- I -- I want to have you either reach an agreement or

22   make a ruling; which I'll do on the 6th.

23        So, again, your respective proposals on this issue

24   will add to our list for the 6th.  And in your -- and I'll

25   resolve it, if there's not an agreement.  If there's an

1    agreement, just tell me, "agreed."

2              ATTORNEY PAPPY:  Sure.  And if we can just --

3              Ms. Grunfeld, as soon as you hear from your expert, I

4    will simultaneously, today, ask the person who ran the Ad-Sep

5    population, how hard is it to just, every day, save this report

6    into a drive; and then get it to me in however many days.

7              ATTORNEY GRUNFELD:  Thank you.

8              ATTORNEY PAPPY:  Yeah.

9              THE COURT:  Okay.  Moving on to issue 5.

10             Ms. Pappy, what is the status regarding your search

11   for documents pertaining to alternatives to incarceration?

12             ATTORNEY PAPPY:  I got all of the sheriff's stuff on

13   Wednesday.  I got all of Probation's stuff yesterday.  And they

14   are with my paralegal for processing; for stamping and

15   producing.

16             THE COURT:  I know that your paralegal is probably

17   working very hard.

18             What is your best estimate for production?  Because I

19   really don't want to show up on Wednesday and have uncertainty.

20             ATTORNEY PAPPY:  I'm going to say Monday.  Probably

21   get it out today.  She's Superwoman.  But I'll say Monday, just

22   in case.

23             THE COURT:  Ms. Grunfeld, do you wish to be heard on

24   that?

25             ATTORNEY GRUNFELD:  No, thank you.  I'm pleased to

1    hear that they're coming.

2            THE COURT:  Sure.  Okay.  So, Ms. Pappy, just Monday.

3            ATTORNEY PAPPY:  Yeah.  No, that's fine.

4            THE COURT:  All right.  We did not talk about the

5    next two issues at our last status conference, but they were

6    issues that were addressed in my order from February 14th.

7            So hopefully you're prepared to discuss them,

8    Ms. Pappy, but I do recognize that it's not what we talked

9    about last week.

10           Can you give me an update on RFP 137, communications

11   with contractors.

12           ATTORNEY PAPPY:  Give me -- I -- we got a bunch of

13   documents from a client yesterday that took forever to upload.

14   So let me look here.

15           (Pause, referring.)

16           ATTORNEY PAPPY:  So I see Number 174.  Man.

17           (Pause, referring.)

18           ATTORNEY PAPPY:  I do not have an update on that.  I

19   don't see anything that was added to where we keep all of this

20   stuff, as to 137.

21           I see only the probation -- or the -- alternatives to

22   incarceration.  And then I see some stuff about 174.  But it

23   also may be, your Honor, that it's taking a long time to

24   upload.

25           THE COURT:  These are communications with contractors

1    relating to healthcare of incarcerated persons for the relevant

2    time period?

3              Is that noted on -- in addition to NaphCare,

4    Ms. Grunfeld?

5              ATTORNEY GRUNFELD:  I believe there are some in

6    addition.

7              ATTORNEY PAPPY:  Yeah.  It was limited to notices --

8    based on your order, notices of corrective action.  And so

9    we're looking -- I think one or two was produced as to

10   NaphCare.  I'm not sure there are more than one or two as to

11   NaphCare.  And so what you were looking for -- or what your

12   Honor ordered, I should say -- you weren't looking for it -- is

13   as to any other contractors.

14             THE COURT:  Hang on.

15             ATTORNEY PAPPY:  Um-hmm.

16             ATTORNEY GRUNFELD:  Yeah, I didn't know it was

17   limited.

18             THE COURT:  I'm trying to refresh my --

19             ATTORNEY PAPPY:  I'm sorry.  We're searching through

20   NaphCare as well, for basically all contractors; including

21   NaphCare.  But --

22             THE COURT:  Okay.  So I'm looking at page 126 of the

23   transcript, and that's the actual transcript page number, not

24   the ECF page number.

25             And (pause) Mr. Swearingen says:

```
1              "For RFP 137, we've discussed corrective action

2         notices today.  We would respectfully request the

3         defendants produce only the corrective action

4         notices and communications about those notices in

5         response to RFP 137."

6         And then there was a discussion about whether the

7    corrective action notices are specific to NaphCare or refer to

8    any contractor that Mr. Swearingen did not know.

9         And that's I think where we are -- I think that's

10   where Ms. Pappy -- what Ms. Pappy was talking about.  Which,

11   frankly, the hearing was very long, and I did not recall that

12   myself.

13        So it sounded -- you're -- we're talking about the

14   corrective action notices from your perspective, Ms. Pappy?

15             ATTORNEY PAPPY:  Yes.

16             THE COURT:  All right.  I --

17             ATTORNEY GRUNFELD:  And communications about them.

18   Right?

19             ATTORNEY PAPPY:  Yes.

20             THE COURT:  Okay.  Then it sounds like we're on track

21   with that.

22        But, Ms. Pappy, I want to get you your rulings on

23   March 6th.

24        Can you -- is it your understanding that you have

25   received the corrective action notices and communications about
```

```
 1   them from your client yet?

 2             ATTORNEY PAPPY:  Not yet.

 3             THE COURT:  When?

 4             Do you need an order from me?  Which is --

 5             ATTORNEY PAPPY:  Well, you know, if you were to say

 6   something in the hearing today, like, the judge is going to

 7   issue an order on Wednesday about, you know --

 8             THE COURT:  I am.

 9             ATTORNEY PAPPY:  -- nonproduction, I'll certainly

10   tell my client that.

11             THE COURT:  Well, no, and I don't mean to --

12             ATTORNEY PAPPY:  (Laughing.)

13             THE COURT:  But, you know, in fairness to the

14   plaintiffs -- I mean, this -- look, in fair notice to you both,

15   I should say, this was an issue that I don't -- that -- that we

16   were resolving in the context of the February 6th hearing,

17   because it was a somewhat dynamic hearing, in terms of what we

18   were trying to do.

19             And I was just looking at that one -- pages 126

20   through -- through 128.  I mean, this was not the subject of

21   meet-and-confer between the parties prior to the hearing.  And

22   that's why I asked Ms. Pappy to go back and look at the notices

23   of corrective action.

24             Look, Ms. Pappy, I --

25             ATTORNEY PAPPY:  Can I make a suggestion?
```

```
 1              THE COURT:  Yes, please.
 2              ATTORNEY PAPPY:  Why don't I provide you with the
 3     defendants' will -- I'll try to keep everything to one
 4     submission.  But submit an update on where I am on these things
 5     that you have on the list that I don't have answers for.
 6              I've been -- I sent an email -- I sent little
 7     sporadic emails to plaintiffs' counsel about when I get
 8     information.
 9              But so that -- you know, I'm just going to suggest I
10     can go back to the client and say, listen, I have to report to
11     the Court on Tuesday as to where we are on these documents.
12     And he's going to make some rulings on Wednesday, so take that
13     as it -- take that as you will.
14              THE COURT:  Ms. Grunfeld, do you wish to be heard on
15     that suggestion?
16              ATTORNEY GRUNFELD:  I think anything that moves us
17     along is great.
18              THE COURT:  I agree.
19              All right.  You'll do that, Ms. Pappy, on Number six?
20              ATTORNEY PAPPY:  Yes.
21              THE COURT:  And then on Number 7, RFP 185, seeking
22     blank forms, I believe pertaining to classification.  What's
23     the update on that?
24              ATTORNEY PAPPY:  The same as 137.
25              THE COURT:  Okay.  You will provide me an update on
```

1   Tuesday, and I will issue a ruling on it on Wednesday.

2           ATTORNEY PAPPY:  Yes, I will.

3           THE COURT:  All right.  That takes us to -- I'm

4   sorry, Ms. Grunfeld.  Did you wish to be heard on Number 7, RFP

5   185?

6           ATTORNEY GRUNFELD:  No, your Honor.  But I did want

7   to point out that we have 21 total.  I've made a chart of the

8   follow-ups from the February 14th ruling.  And I know Ms. Pappy

9   has a separate list of those rulings.

10          And I am hoping that we can expedite.  I know the

11  Court chose these two to discuss with us today.  But we've

12  really only received a few updates.  And --

13          THE COURT:  Okay.

14          ATTORNEY GRUNFELD:  -- I understand how difficult

15  this is.  But we really want to find out the answers on these

16  21 follow-ups.  I think we have responses to, maybe, four now.

17          THE COURT:  All right.  We'll go through them --

18  let's finish my list, and then we'll go through your list,

19  Ms. Grunfeld.

20          ATTORNEY GRUNFELD:  Thank you, your Honor.

21          THE COURT:  We'll do it today.  Sure.

22          All right.  With respect to 185, Ms. Grunfeld,

23  nothing further?

24          ATTORNEY GRUNFELD:  Nothing further.

25          THE COURT:  Got it.

1            All right.  This takes us to the Request for

2   Production Numbers 250, 251, and 252.

3            We addressed these on February 9th, and the parties

4   were going to try to work together to see what they could do.

5            I did not ask you all about them last week, which I

6   just -- I realized as I was preparing for this.

7            What's the status?

8            ATTORNEY GRUNFELD:  Your Honor, from our perspective,

9   we feel we are at an impasse, and we would like the Court's

10  permission to move to compel.

11           The -- we're having a continual conversation.  It's

12  not that we're not trying.  I -- I think we would both agree on

13  that.  But we have a -- a disagreement about whether the data

14  that we're seeking is available.  And we say it is because we

15  have a publicly available report that says that the County

16  keeps this data and that says that they're required to.

17           We also seek the data dictionary and schema for the

18  D.I.A. and C.A.D. data sets.  We want the use-of-force data,

19  and we want the criminal incident data.  And I think that these

20  issues are complex enough that this is something we -- we would

21  like to -- if we may -- write about in a brief motion to the

22  Court.

23           THE COURT:  Okay.  Hang on.

24           (Pause.)

25           THE COURT:  Ms. Pappy, what's your position?

1          ATTORNEY PAPPY:  Thank you.

2          So we actually talked about this.  We talked about it

3     a lot, in a positive way, since the very first meet-and-confer.

4          There were -- I am just estimating -- 15 points of

5     information that plaintiffs' expert provided that they wanted.

6     And gave that to my client.  Reported back at that first

7     meet-and-confer about which points are contained in the system

8     and which points are not contained in the system.

9          We have had some other conversations about it.  And

10    the last request of plaintiffs was because I -- you know, I am

11    making this up.  But, like, 11 through 15 isn't available in

12    the system.  Can you give us the criminal incident reports?

13    And that was a request made at Wednesday's meet-and-confer, and

14    that is something that I need to communicate to the client.

15    But I -- and I don't know whether that's (indiscernible) or

16    not, but that was requested by plaintiffs.

17         What I am committed to do -- and what I have already

18    instructed the client to do -- is start gathering the data.

19    Put it all together for -- again, just by way of example, one

20    through ten.  Let's just get that data out the door because we

21    don't have a dispute with it.  Let's just get it out there.

22         We -- the publication -- we have a disagreement about

23    what the purpose of it is, but there's no need to argue about

24    that here.  And plaintiffs are claiming that we have data that

25    we are saying we don't have.

1          So that, to me, is kind of the only issue.  Is that

2    they say we have data that we don't have.  But there is one

3    through ten, in my example, that we don't have a dispute about;

4    and that we're producing it and in process.

5          THE COURT:  When do you think that is going to

6    happen, Ms. Pappy?

7          ATTORNEY PAPPY:  Um, you know, I think that my folks

8    in that department gave me about a week time estimate to run

9    all of that data and get it into whatever form -- transfer or

10   form that it needs to be.  So I made that request.  It was

11   either yesterday or Wednesday, following our meet-and-confer.

12         So I am going to say end of next week, beginning of

13   the week after.

14         THE COURT:  And is that -- but are there going to be

15   categories of documents that the plaintiffs' expert believes --

16   I think you said he needs, to perform his analysis, that the

17   County is either unable to provide because it doesn't have the

18   data or unwilling to provide for whatever other reason?

19         ATTORNEY PAPPY:  My answer to that is that -- that

20   the criminal incident reports -- at least that's why I had

21   assumed plaintiffs' counsel was asking for them -- would

22   provide -- it's racial demographics that they're looking for.

23   And I just need clients' agreement to provide those.

24         And -- and if they do that -- I can't answer that

25   question.  Ms. Grunfeld will have to answer if that -- that

1  would satisfy the need.

2          THE COURT:  Are you able to answer that question

3  without your expert sitting here, Ms. Grunfeld?

4          ATTORNEY GRUNFELD:  I'll try, your Honor.

5          That would address RFP 251, which asks for electronic

6  data state -- sets of criminal incident reports.  And that's

7  great.  I'm hopeful that can be resolved.

8          But as I understand it, they are saying -- defendants

9  are saying that the databases for the officer initiated stops

10 and calls for services do not contain demographic data.  And we

11 believe they're required, by law, to keep that data.

12         So we -- and we have a document that says they keep

13 that data.  So we're very confused by that issue.  And we want

14 the use of force data, that's RFP 250.  And we want the data

15 dictionary or schema for these data sets -- the D.I.A., and

16 C.A.D. data sets -- so we can see what they are keeping and how

17 it's organized.

18         THE COURT:  All right.  What I'm considering doing is

19 ordering your expert to be present on Wednesday and ordering

20 the County to be present on Wednesday; and have them talk

21 directly.

22         Is that going to be productive?

23         ATTORNEY PAPPY:  The County IT person that --

24         THE COURT:  This is -- this is not productive.  Not

25 because of -- anybody's acting in bad faith but because we're

1    not experts in this.  And what's maintained and what's not

2    maintained is not -- I just don't think this process, despite

3    everyone's efforts, is as efficient as it could be.

4              I just want to know what -- what the County has and

5    what it doesn't have.  And, frankly, I would consider --

6    probably the best use of your time is for the plaintiffs'

7    expert to speak directly with the County IT person.

8              Why -- I mean, I'm not trying to cut you out but --

9              ATTORNEY PAPPY:  I'm -- I'm amenable.  I mean, what I

10    would ask is -- I don't know that -- that Ms. Grunfeld's --

11    where this person is and whether they want to come to court on

12    Wednesday.

13             But what I would suggest is you can either order

14    us -- but I will volunteer -- let's have a Zoom call.

15    Ms. Grunfeld and I can sit on the wings, and let the two of

16    them talk.

17             THE COURT:  What do you think, Ms. Grunfeld?  Is that

18    a way to cut through this?

19             ATTORNEY GRUNFELD:  I think that could be very

20    productive, your Honor.  And I would prefer that it be by Zoom

21    and possibly not necessarily on Wednesday, since we don't know

22    about these third parties' schedules at this moment.

23             THE COURT:  And I want to be respectful of that, and

24    I agree.

25             So if you think -- I want to give you the ability to

1    do this.  I -- this would have been a great thing to do between

2    December and now, but you've been busy.  And I -- but I think,

3    look, let's do it as soon as possible.  And then -- look --

4         ATTORNEY PAPPY:  I would ask you to give us a little

5    more time than next week.

6         THE COURT:  I will.  I will.  No, you're busy, and I

7    get that.  And your experts are busy.  But I -- I -- you're

8    telling me that you have depositions coming up the following

9    week, which is why I try to put other stuff aside to -- in

10   other matters, to give you rulings on -- on these issues, so

11   that you can move forward with your depositions.

12        If it's not something that's going to affect the

13   schedule of your depositions that's set for -- I guess -- it

14   sounds like the second week of March, then fine.

15        ATTORNEY PAPPY:  Not from my perspective.

16        ATTORNEY GRUNFELD:  I think from our perspective, we

17   would like to have it before the 18th, when the PMK depositions

18   start.

19        THE COURT:  Oh, sure.  I think Ms. Pappy just wants

20   some breathing room for next week.

21        ATTORNEY PAPPY:  Yeah.  Just Wednesday.  From next

22   Wednesday.  I mean, if we have this meeting on Thursday, that's

23   fine.  It works for everybody.

24        ATTORNEY GRUNFELD:  Yeah.  So we'll coordinate

25   offline to set up some time after the 6th, before the 18th,

1   that works for the individuals who would need to be on the

2   Zoom.  And we'll have them speak directly about what does and

3   does not exist.

4           THE COURT:  Could I show you the respect to not issue

5   an order on that?

6           ATTORNEY GRUNFELD:  Yes, your Honor.

7           ATTORNEY PAPPY:  (Laughing.)  Yes, please.

8           THE COURT:  Let's talk about the MSC.  And then I do

9   want to go through your list, Ms. Grunfeld, and make sure that

10  if there's something missing, that we're going to be prepared

11  to cover it on the 6th.

12          So with respect to the MSC -- well, on Wednesday, we

13  have, currently, the settlement conference.  We've got a status

14  conference following the one that we held with all counsel of

15  record.  And now we're going to address some discovery matters.

16          I have given this some thought, and I am not inclined

17  to require counsel who are not otherwise planning to be present

18  for the settlement conference or the discovery issues to be

19  present in court on the 6th.

20          I think that -- I think we are all on the same page

21  in terms of what needs to happen with the case moving forward,

22  and I would be satisfied with the counsel who are otherwise --

23  would not otherwise intend to appear in court via Zoom for that

24  portion of the -- of the proceedings.

25          Do you wish to be heard on that, Ms. Grunfeld?

1              ATTORNEY GRUNFELD:  No.  Thank you, your Honor.

2              THE COURT:  All right.  Do you anticipate that

3    certain of your -- the counsel who are for plaintiffs would

4    want to appear by Zoom?

5              ATTORNEY GRUNFELD:  Probably.

6              THE COURT:  All right.  We'll get a Zoom link, and

7    we'll do that.

8              Ms. Pappy, for you and Ms. Coleman, I'm not sure

9    who's planning.  But same to you.

10             ATTORNEY PAPPY:  Thank you.

11             THE COURT:  And also counsel for the County as

12   well --

13             ATTORNEY PAPPY:  Mr. Eamon (phonetic), yeah.

14             THE COURT:  Right.

15             ATTORNEY PAPPY:  Thank you.

16             THE COURT:  That being said, anyone who wishes to

17   participate, obviously, in the MSC but also in the discovery

18   issues, who's going to be addressing the discovery issues we're

19   dealing with, I would like them in person.  It's just a whole

20   lot more effective to have them there.

21             All right.  So let's talk about the MSC because I

22   think we can start on Wednesday morning at 9:00 a.m.  I have on

23   my list that we are going to be talking about issues related to

24   ADA compliance and overdoses.

25             And I would like to know from you all, given

1   everything else that's on your plate, what is going to be the

2   most effective way to proceed and to start making progress, who

3   should be there, and how can I help you?

4          And, again, speak in very broad terms because we're

5   on the record.

6          What are your thoughts, Ms. Grunfeld?  Who should be

7   present?

8          ATTORNEY GRUNFELD:  Well, let's start with overdoses

9   and substance use disorder.  I would like to see the person

10  from the sheriff's department who is most involved in that

11  issue, in interdiction, and sort of coming-in issues.  And then

12  the medical people, maybe one or two of them who are involved

13  in the withdrawal and the medication-assisted treatment.

14         If they're available, I would imagine that those are

15  the types of people who would be most helpful.  Because, as I

16  think about this issue, it's multipronged.  It's the presence

17  of illegal substances in the jail.  It's how people can be

18  treated when they need to withdraw from substances that they

19  are -- come into the jail on.  And then how to continue or

20  initiate medication-assisted treatment, and how that program

21  can be run.

22         And then I guess the final issue is emergency

23  response.

24         We know that the County has made progress with the

25  Narcan in the units.  I think there's more that can and should

1    be done.  But the person who is leading that effort would be

2    great to have there.  I will say I'm a little worried about

3    three hours for both topics.

4              THE COURT:  Okay.

5              ATTORNEY GRUNFELD:  Maybe we can start the

6    conversation -- we really haven't had a conversation about that

7    issue yet, as I recall.  So if -- we could certainly start the

8    conversation, as we did with the ADA settlement, and see where

9    it goes.

10              THE COURT:  What do you think, Ms. Pappy?

11              ATTORNEY PAPPY:  I -- I think we should do the

12    reverse.  I think that we should start with ADA.  And -- and I

13    would be fine with putting a -- really, setting a -- a

14    relatively firm time on it.  Let's talk about ADA for an hour,

15    for an hour and a half; and let's spend the other half talking

16    about drug interdiction.

17              Because I think the ADA -- I'm an optimist.  And, you

18    know, I just -- just on the comments and conversations that

19    I've had with plaintiffs' counsel and -- and the -- you know, I

20    know it took a lot -- a while.  And I know there was a lot of

21    back and forth.  But we were successful in the first

22    stipulation.  I just feel like we can get a framework going.

23    I'm not sure we can agree to every nut and bolt about the other

24    facilities.  But I just think that that's just not go to be as

25    big a lift in terms of the conversation that we have.

```
 1            And what my hope is for Monday -- Monday --
 2   Wednesday, is that we walk out of there with a framework on the
 3   ADA stuff that counsel can maybe work out; and maybe, you know,
 4   some Zoom time in the future.
 5            But the drug thing, I do agree that we need to devote
 6   some time to that because we've never talked about it before.
 7            We are bringing Commander Bavencoff.  We are bringing
 8   Captain Soto Mesa (phonetic).  And we are bringing the -- the
 9   sergeant -- and I can't -- I think his first name is Aaron.
10   And I want to say "Rogers," but that's not right because he is
11   a football player.  But he is the head of D.I.U., of the drug
12   interdiction unit.
13            I had not planned on bringing a medical person
14   because I didn't realize that we were going to talk about
15   withdrawal protocols.  I would suggest that I'm not sure we
16   have time to get to that.  I could try to get somebody there
17   from medical.  But that's going to be a harder lift because
18   they work in medical.
19            THE COURT:  Here's a thought.  I do think it makes
20   sense, given the number of issues we have to address, to -- to
21   really put it on time limits, so that -- and that will allow
22   the relevant people to come and not be sitting and waiting.
23            So here's a thought.  I'm going to give you all day
24   on Wednesday.  And what we are going to do is this.  Here's a
25   thought.
```

1           We begin promptly at 9:00 a.m.  From 9:00 to 11:00

2   a.m., we are going to work through concerns regarding ADA.

3           At -- we'll take a short break.  Take a five-minute

4   break, or something.  And then, at 11:00 a.m., let's start

5   talking about overdoses.

6           And I'll just ask you all to talk between yourselves.

7   What do you -- what do you think is best?  Who should be there?

8   I'm going to defer to you.

9           And, Ms. Pappy, if you say, hey, look, it's too much

10  to cover for -- in two hours on overdoses, to get -- bring

11  medical personnel.  Okay, fine.  And we'll come up with a plan

12  for how to tackle that one in the next round.

13          But 11:00 a.m. to 1:00 p.m., dealing with overdoses.

14          I will give you one hour to catch your breath, and

15  get a bite to eat.  We'll come back at 2:00 p.m.

16          From 2:00 to maybe just -- hopefully 2:15, I will

17  have a status conference with everybody there.  You can tell me

18  generally how the follow-up is going.

19          And then at 2:15, we turn to our remaining discovery

20  issues that are going to be set forth in what you're briefing

21  on the 5th, and we'll handle that.

22          ATTORNEY PAPPY:  For flight purposes, how late do you

23  go in the day?

24          THE COURT:  Depends on how many issues you've got.

25          ATTORNEY PAPPY:  So you'll stay?  Okay.  Great.

1          THE COURT:  Well, I will stay, but we do have court
2   staff who we need to accommodate.
3          ATTORNEY PAPPY:  Um-hmm, yeah.
4          THE COURT:  Look.  How about this?  If there is
5   something where we need to stay later, I will stay with you.
6   We can go off the record in the courtroom, and we will start a
7   recorded Zoom to complete it, if necessary.  I think that we
8   are going to be -- if we start by even 2:30 on the discovery --
9   again, Ms. Pappy, I'm -- I'm sorry.  Ms. Grunfeld, you
10  mentioned that you have more issues to raise.  But I'm going to
11  read everything you submit on the 5th, and I'm going to be
12  ready to give you rulings.
13         So I don't -- I don't know it's going to require
14  extended back and forth.
15         ATTORNEY PAPPY:  I was actually -- I was actually
16  looking for you to say, "Oh, no, we have to stop at 4:00," so I
17  can get on a six o'clock flight.
18         That's what I was asking.  Not that I want to stay
19  long.
20         THE COURT:  I understand.
21         ATTORNEY PAPPY:  (Laughing.)
22         THE COURT:  I understand.  But I'm going to give you
23  rulings.  So it depends on how many issues there are.
24         Ms. Grunfeld, what are your thoughts?  Do you want to
25  have a -- put a stop on this, so that you all can make flight

1    plans that will hold for getting back home on Wednesday

2    evening?

3              ATTORNEY GRUNFELD:  I don't want you to stop if we're

4    being productive.  But based on everything I'm hearing, I think

5    we will be done by 4:00 or 4:30.

6              THE COURT:  Look, I think you're safe to make a

7    flight at six o'clock or so.

8              ATTORNEY PAPPY:  I have to be home for a court

9    appearance in -- in Solano County at eight o'clock the next

10   morning.  So --

11             THE COURT:  Oh, my.

12             ATTORNEY PAPPY:  Yeah, that's life.

13             THE COURT:  No, I want to give you time.

14             I actually had counsel in another matter who told me

15   that he was comfortable leaving the courtroom 45 minutes before

16   his flight, for which I found to be interesting and not

17   something that I would be willing to do.  So I will -- I will

18   endeavor to finish no later than four o'clock, and if we need

19   to go a couple minutes after that, but to get you to flights

20   home.

21             If you need to be in court the next morning,

22   Ms. Pappy, that's -- that's not going to work, otherwise.

23             What -- Ms. Grunfeld, what do you think about that as

24   a plan, so that we can focus on -- again, 9:00 to 11:00, ADA;

25   11:00 to 1:00 overdoses.  And at least start the ball rolling

1  on overdoses, and then come up with our plan for the next

2  session?

3             ATTORNEY GRUNFELD:  I think that's wonderful.  I'm

4  very pleased to hear that.

5             I am not currently planning to bring any experts.

6  This has come up pretty quickly.  But I am consulting with

7  experts, and I will do my best to be as prepared as -- as I can

8  to address both topics.

9             THE COURT:  And given the number of issues we are

10  dealing with, I'm not going to order you to show up with one

11  person or another.  You are here to be productive.  If that

12  means that you have an expert on telephonic standby or someone

13  you want to put on the phone, that's all fine with me.

14             ATTORNEY GRUNFELD:  Great.

15             THE COURT:  I think when we were talking about some

16  of the ADA issues last year, it really was helpful to have the

17  County representatives in person.  It was helpful, to some

18  extent, to have your respective ADA experts in person.  But

19  you -- you all know where you stand better than I do, and I

20  will defer to you on that.

21             ATTORNEY GRUNFELD:  Thank you, your Honor.

22             THE COURT:  What -- what should we do to prepare for

23  the settlement proceedings?

24             I mean, I can show up, and you could just tell me

25  what you want to do.  I am also certainly willing to prepare

1    for that.  But I don't want to put more work on your respective

2    plates to provide, you know, briefing for settlement where

3    you're working really hard on other issues.

4           What's going to allow us to make the most progress,

5    Ms. Grunfeld?

6           ATTORNEY GRUNFELD:  I think we sent some letters

7    about this before, and I think the Court was privy to them.  I

8    could resend them.  Although, our thinking has evolved

9    somewhat, since we've now done the ADA inspections and we've

10   received more discovery on substance use issues.  So that might

11   be useful, though, just to refresh all our memories on where we

12   were in November.

13          And I'm also hopeful and working on some possible

14   stipulations, similar to what we did with the ADA, that I will

15   do my best to send out.  And I could share with the Court or

16   just share with Ms. Pappy.

17          THE COURT:  So I am looking at a letter dated

18   November 1st, 2023.

19          Was that what you're referring to Ms. Grunfeld?

20          ATTORNEY GRUNFELD:  Probably.

21          THE COURT:  All right.

22          ATTORNEY GRUNFELD:  I don't have my entire file open

23   right now, but I know we -- we did do some submissions last

24   fall.

25          THE COURT:  No, I think that's what you're talking

1   about, and I do have it.  So no need to resend that.  I will

2   certainly review that in preparation for Wednesday.

3          It's -- apart from Mr. Swearingen, to Ms. Coleman and

4   to Ms. Pappy, addressing -- you know, issues to address for

5   our -- the settlement conference we had on November 6th.  So

6   that's -- if that's a good starting point, great.  I'll be

7   prepared to look at that for ADA and overdoses.

8          And then we will -- anything you want to send me

9   otherwise, fine.  I'll do my best to review it.

10          ATTORNEY PAPPY:  That works.  I don't -- you know me.

11  I'm not going to submit anything.  I'm just going to show up

12  and be ready to talk.

13          THE COURT:  Okay.  Hang on real quick, please.  Give

14  me just a moment, if you could.

15          Tell you what.  Actually, I'm going to -- how about a

16  30-second break.  Would that be okay with you all?

17          ATTORNEY GRUNFELD:  Yes.  Thank you, your Honor.

18          THE COURT:  Okay.  Thank you.

19          (Pause.)

20          THE COURT:  All right.  Thank you, both.  I really

21  appreciate it.

22          I -- I have a further thought for you all about

23  proceeding on Wednesday, in terms of personal appearance versus

24  Zoom versus phone.

25          Look, I -- I want to be as flexible as I can with

1    everyone's ability to be here.  Obviously, I want -- I'm -- I'm

2    going to defer to you all in terms of who should be present in

3    person for both the settlement conference as well as the

4    discovery conference.

5         I was reminded during the break that at certain

6    points during our February 6th hearing, you know, I -- there

7    were times when I asked Mr. Swearingen a question, for example,

8    and he just told me fairly he didn't know because someone else

9    had been involved in a specific meet-and-confer.

10        And so I -- and I respect that, and there's a lot

11   happening in the case.  So that's not casting any aspersions on

12   Mr. Swearingen or Ms. Pappy, if Ms. Coleman is handling

13   something and Ms. Pappy -- whatever it may be.

14        Here's the bottom line.  For the -- both the

15   settlement conference, as well as the discovery conference that

16   we'll have later in the afternoon, if people wish to appear by

17   Zoom or for the settlement even by phone, not a problem.  And

18   they can be heard on the discovery conference, even if they're

19   on Zoom.

20        I think I said something about, hey, you've got to

21   have the people who are going to be speaking in court present,

22   in person.  I just want to make sure that I'm not going to hold

23   you to that in case there's a meet-and-confer issue that we

24   need to talk about and someone on the Zoom participated in it

25   from the plaintiffs' side.

1          So, Ms. Grunfeld, a long way of saying I'm going to

2   defer to you as to who should best be there for that hearing.

3          ATTORNEY GRUNFELD:  Thank you, your Honor.

4          THE COURT:  Ms. Pappy, same for you.  You and

5   Ms. Coleman, either/or; present or on Zoom.

6          ATTORNEY PAPPY:  It will be me.  I'll be there in

7   person.  So that's fine.

8          THE COURT:  Okay.  Sounds good.

9          All right.  With that behind us, I am looking forward

10  to working with you all on settlement, and then on resolving

11  the issues that you had.

12          I have 13 minutes remaining.

13          ATTORNEY PAPPY:  I do, too.

14          THE COURT:  And so what I would like to do,

15  Ms. Grunfeld, is you had mentioned the other outstanding items

16  from the February 14th order.  I've got it in front of me.

17          Why don't you just -- just please go.  And that will

18  help -- I think help both Ms. Pappy and myself to make sure

19  we're all on the same page.

20          ATTORNEY GRUNFELD:  Great.  Well, thank you, your

21  Honor.  I would be very respectful of the 13 minutes.

22          I don't know -- I mean, there's the list from the

23  order.  And then there's two other issues that are sort of

24  dragging us down.  And one is NaphCare, and the other is the

25  medical records.  And there's still things to resolve with

```
 1   those.
 2           But I -- I get the feeling the Court would like me to
 3   start with the February 14th outstanding issues.
 4           THE COURT:  Well, when you say "NaphCare," I did
 5   receive the February 27th joint discovery status report.
 6   It's -- and I'm preparing to issue a further order on that
 7   today.
 8           ATTORNEY GRUNFELD:  Thank you, your Honor.
 9           I think the best thing we could have there is a
10   deadline to produce.  Mr. Swearingen is speaking with Mr. Smith
11   right this minute, and meet-and-confer is continuing.  But we
12   definitely need production of documents in that aspect of the
13   case.
14           THE COURT:  Understood.
15           I don't want to speak it without Mr. Smith on.  I
16   would note that the chart that you provided has about 150
17   bullet points.  And it's not clear to me what documents
18   NaphCare has agreed to produce from each of those bullet points
19   and what they have not.  So I'm going to get some clarity on
20   that.
21           ATTORNEY GRUNFELD:  Thank you, your Honor.
22           ATTORNEY PAPPY:  Can I make a quick suggestion,
23   Ms. Grunfeld?
24           Is -- is -- my list and her list agree.  She has sent
25   me her list, and I'm using it as my guide.
```

1          Is why don't I provide the Court with updates in that

2     March 5th -- it's going to be question -- you know, request for

3     production number, blank; coming.  Coming by this day.  I mean,

4     I'm not going to send you some big, long thing.

5          And then Ms. Grunfeld doesn't have to read them off

6     today.  Because that's what I'm going to say, is I'll provide

7     you an update on -- I'm looking at the same exact thing.

8          ATTORNEY GRUNFELD:  Great.

9          ATTORNEY PAPPY:  So -- so then if there's anything

10    else -- because I know there were some things that weren't

11    necessarily in the Court's chart, that I have additional items.

12    But I think we have talked about those.

13         It's like 250, 251, teens, 191.  And I think 39 is

14    not on your list.  Is not in the chart.

15         ATTORNEY GRUNFELD:  Right.  Well, I really appreciate

16    the idea of just updates in this chart.  But I agree with you,

17    there's a couple of things that were not in the chart, and I'm

18    not sure why.

19         And did you just mention them?

20         ATTORNEY PAPPY:  Yeah.  And I think the reason why

21    was that the Court ruled based on the chart, and then there

22    were miscellany.  And he -- and his order addressed the

23    miscellany in a different section.  So I just sort of made them

24    and appended -- an appendum to -- or an addendum, I'm sorry, to

25    the charts.  But --

1          THE COURT:  How can I help you?

2          I mean, it's interesting to be discussed in the third

3    person during the hearing -- which I really don't mind.  We're

4    trying to make progress.

5          But what's going to be most efficient, Ms. Pappy?

6          ATTORNEY PAPPY:  I don't -- I mean, unless

7    Ms. Grunfeld -- because I want to make sure she and I are on

8    the same page.  We're on the same page about the chart.  We've

9    talked about 251 and 252.  They -- we -- in meet-and-confer, we

10   talked about 191, which is sort of on the appended list.  39, I

11   don't think we've talked about, but I'll just include that in

12   the update to the Court.

13          You have the text and the Teams updates.  But I'll

14   provide additional update on that.

15          And I think that was -- that's all I have on the --

16   the appended list.

17          I don't know if Ms. Grunfeld has anything else.

18          ATTORNEY GRUNFELD:  Well, what I understand we're

19   going to do is that on Tuesday we are going to submit a --

20   another joint status report with the text -- the text

21   proposals, the correspondence about that, the chart with

22   updates from Ms. Pappy.

23          Is there something else -- I mean, we're going to do

24   a motion for protective order.  Is there something else that's

25   going in the joint statement?

1          THE COURT:  No.  And it -- I did not actually ask you

2     to submit your proposals on the text messages in the joint

3     statement.

4          Frankly, if you're able to do that, great.  That

5     helps me reduce the number of docket entries and things to

6     print out.  But you are welcome to proceed as you see fit.  I

7     don't want any issues with people trying to get someone else's

8     portion of the joint status report.

9          So if you wish to -- we had talked about a motion for

10    protective order on Item Number 1 and your respective proposals

11    for the text message, searching and production on Item Number

12    2.  An update on Item Number 4, and 5, and 6, and 7.

13         Number 8, I am not expecting, necessarily, an update

14    from you all on in your chart because you're going to need to

15    coordinate with your respective IT and experts.

16         And then Item Number 9 -- I mean, there's nothing --

17    you'll get me whatever you want to get me.  I've got the

18    November 1st letter.

19         And then -- I -- why don't we do this.  You -- you

20    all will talk about the status of the issues -- or the status

21    of the discovery, excuse me, that was ordered by me on

22    February 14th, utilizing the chart.  I'll bring that with me.

23         And to the extent that there are issues with any of

24    it, you can -- I want to talk about it, and I'm going to

25    resolve it.

1          ATTORNEY PAPPY:  Okay.  So I understand, the motion

2     for protective order, I should submit something the same day?

3     Just on the 5th?  Okay.  Yes?

4          THE COURT:  By close of business, please.  Yes.

5          ATTORNEY PAPPY:  Yeah.  Sure.  Okay.

6          ATTORNEY GRUNFELD:  So there's one more issue --

7          THE COURT:  Okay.  Go ahead.

8          ATTORNEY GRUNFELD:  -- if I may.  And that is the

9     individual medical records issue that we've discussed among

10    ourselves extensively; by email, mostly; and that has been

11    discussed in -- in hearings before the Court.

12         We continue to be concerned about the raw number that

13    was produced.  We requested 570.  They have produced between

14    150 and 200.  We don't think we've received the custody

15    records, only the medical records.  We're not entirely sure

16    that the entire medical record has been produced.

17         And, most importantly, we've had an exchange of

18    emails, but we don't understand the methodology that was used

19    to select the records that were produced.  And we're concerned

20    about how that's going to play out with our expert reports.

21         So what we're really seeking is some kind of

22    declaration or statement about how those medical records were

23    chosen and by whom.  And, also, why the numbers we asked for

24    were so dramatically reduced.

25         But that's -- and I know that was not on the Court's

1    list and --

2            THE COURT:  Okay.

3            ATTORNEY GRUNFELD:  -- and I'm not trying to argue it

4    today or to get it resolved.  I just feel I have to bring it

5    up, so that we can continue to address it.

6            THE COURT:  No, I -- that's fine, Ms. Grunfeld, and I

7    appreciate that.  And we do have a couple of minutes left.

8            I thought we had resolved this on February 6th, in

9    terms of the methodology.  That the County was using first --

10   the first ten -- or, let's say, the ten records -- just the

11   first ten that come up, so that there's no allegations of

12   cherry-picking specific records and not others.

13           I can look at the transcript from February 6th, but I

14   thought we had resolved that.

15           Am I wrong, Ms. Pappy?

16           ATTORNEY PAPPY:  You've resolved aspects of it.

17           What I would request is this is -- this is far too

18   complicated to accomplish everything we need to accomplish in

19   four minutes today and on Wednesday.

20           What I would ask is we have our normal

21   meet-and-confer Wednesday mornings.  And what I would suggest

22   is we actually move that to Thursday or Friday of next week, so

23   that we have the benefit of the hearing.

24           But I don't feel like we are done meeting and

25   conferring on this because I think there's more progress that

61

1    can be made.

2            I disagree with some of the information that is --

3    that is said has not been provided.  But I think that's

4    something that we should further meet and confer about.  And

5    whether we have a short leash on -- you know, we talk to the

6    Court the week after, that's fine with me.  But I just -- I

7    want to have a -- a meeting where we're all talking about it in

8    specific because we have held a lot on our meet-and-confer

9    lists; a lot of which will come off, I think, as of Wednesday.

10            THE COURT:  Right.  I would respectfully ask you all

11   to add that to the agenda for your next weekly meeting, and

12   whether that's going to happen next Thursday or Friday, up to

13   you all, of course.  And then you can raise that with me.  But

14   I agree with you both.

15            I appreciate you raising the issue, Ms. Grunfeld, so

16   you all can be prepared to address it amongst yourselves.  And

17   if there is an issue, I would just ask that you promptly raise

18   it to me, and I will resolve it.

19            ATTORNEY GRUNFELD:  Thank you, your Honor.

20            THE COURT:  Of course.

21            Thank you both for your time today.  I'm looking

22   forward to seeing you on Wednesday and to working on these

23   issues with you.  And I hope that you all enjoy your weekend.

24            ATTORNEY PAPPY:  Thank you.  You as well, and

25   Ms. Grunfeld.

1          THE COURT:  Take care.  Bye-bye.

2          ATTORNEY GRUNFELD:  Thank you.  Bye-bye.

3          (Conclusion of proceedings.)

4

5                        --oOo--

6   I certify, by signing below, that the foregoing is a correct
    stenographic transcript, to the best of my ability, of the
7   digital recording of the audio proceedings had in the
    above-entitled matter this 11th day of March, 2024.  A
8   transcript without an original signature or conformed signature
    is not certified.  I further certify that the transcript fees
9   and format comply with those prescribed by the Court and the
    Judicial Conference of the United States.

10

11          /S/ Amanda M. LeGore
        _____

12      AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

13

14

15

16

17

18

19

20

21

22

23

24

25