GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**PLAINTIFFS' POST-HEARING BRIEF REGARDING MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY NAPHCARE OF SAN DIEGO LLC**<br><br>Judge: Hon. Anthony J. Battaglia<br>Magistrate: Hon. David D. Leshner<br><br>Trial Date: None Set |

[4457232.5]  Case No. 3:20-cv-00406-AJB-DDL

On March 12, 2024, the Court held an evidentiary hearing on the portion of Plaintiffs' Motion to Compel Production of Documents and Deposition by NaphCare of San Diego LLC, Dkt. 488, pertaining to NaphCare withholding documents on attorney-client privilege and attorney work product grounds. The 82 withheld documents fall into six categories: (i) agendas, (ii) presentations, and (iii) minutes from NaphCare's corporate morbidity and mortality committee review meetings ("M&M meetings"), and (iv) HSA death summaries, (v) physician death summaries, and (vi) psychological autopsies sent to notify NaphCare leadership of in-custody deaths and in preparation for the M&M meetings.

NaphCare has not met its burden of establishing that the primary purpose of the withheld documents was to give or receive legal advice. *See In re Grand Jury*, 23 F.4th 1088, 1091-92 (9th Cir. 2021). A document "can only have a single 'primary' purpose." *Id*. at 1091. Here, the evidence presented, including the testimony of NaphCare's Chief Legal Officer, Justin Barkley, fails to demonstrate that the primary purpose of the withheld documents is to facilitate the provision of legal—as opposed to clinical, operational, or business—advice.

Nor does the work product protection, which applies only to material "that would not have been generated but for the pendency or imminence of litigation," *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987), have any application here. NaphCare's corporate morbidity and mortality review committee reviews every in-custody death, regardless of litigation risk. Moreover, the withheld summary and autopsy documents are prepared whether or not NaphCare is aware of actual or potential litigation related to a death.

This Court previously found that Critical Incident Review Board ("CIRB") reports regarding in-custody deaths were not protected in their entirety by asserted privileges. Dkt. 468. The CIRB reports bear similarity to the documents withheld here: in both cases, the documents are prepared for or from meetings at which non-lawyers opine on policy violations and make training and policy recommendations;

these recommendations are communicated to on-site providers for implementation; and the death reviews occur whether or not the relevant entity anticipates litigation. *See id*. at 4, 10-11, 14.  NaphCare has not sufficiently distinguished the withheld documents from the CIRB reports.  Consistent with that decision, and because NaphCare has not carried its burden to establish the privileges it invokes apply to the withheld records, Plaintiffs' motion to compel should be granted.

### A. The Primary Purpose of the M&M Meetings Is to Improve Care, Not Provide Legal Advice

Mr. Barkley's repeated assertion that the primary purpose of the M&M meetings is to provide legal advice does not make it so, particularly given his testimony that the corporate morbidity and mortality review committee reviews every in-custody death regardless of any litigation risk, and uses these reviews to "identify issues that are opportunities for improvement."[1]  Declaration of Priyah Kaul in Support of Plaintiffs' Post-Hearing Brief Regarding Motion to Compel Production of Documents by NaphCare of San Diego LLC ("Kaul Decl."), ¶ 2, Ex. A [9:15-20, 45:16-18; 55:14-18; 56:2-5].  NaphCare's clinical leadership attends the meetings to ask questions, make recommendations, provide their clinical opinions, and chair some meetings.  *Id*. [26:7-17; 46:1-3, 19-22; 47:2-6].  The committee's recommendations are memorialized in minutes and "referred down to the site level … to save lives and improve [patient] care …." *Id*. [9:15-24; 23:19-24:9].  Mr. Barkley further testified that the circumstances of deaths are discussed at the meetings to ascertain compliance with ***corporate*** standards of care and to identify deficiencies, trainings, and policies that may have contributed to a death.

---

[1] This purpose is consistent with National Commission on Correctional Health Care ("NCCHC") Standard A-09 (Procedure in the Event of an Inmate Death) which requires "a thorough review of all deaths in custody in an effort to improve care and prevent future deaths." *See* https://www.ncchc.org/spotlight-on-the-standards/procedure-in-the-event-of-an-inmate-death/ (explaining that the clinical mortality review can a be completed by "a central office or corporate physician").

*Id.* [43:19-44:3]. These purposes exist independent of any legal advice that may be provided by members of the legal department.

NaphCare claims that the primary purpose of the M&M meetings is legal because the clinical, operational, and business recommendations that come out of the meetings, once implemented, may reduce NaphCare's litigation exposure. By extension, NaphCare contends, every document prepared for or from the M&M meetings is privileged in its entirety. This type of sweeping assertion of privilege is in direct contravention of the Ninth Circuit's holding that "a blanket claim of privilege is unacceptable." *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) (citation omitted). Moreover, it ignores the central, clinical focus of the meetings. Indeed, the meetings are attended by NaphCare's Chief Medical Officer, and physicians, nurses, and pharmacists whose primary concern is ensuring proper care of patients in the Jail—not providing legal advice. Kaul Decl. ¶ 2, Ex. A [6:15-7:2; 46:1-9]. Because NaphCare does not perform site-level reviews, this is its **only** formal process for reviewing deaths for patient safety purposes. *See Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-2450, 2023 WL 2699971, at *5-6 (N.D. Cal. Mar. 29, 2023) ("no privilege can attach to any communication as to which a business purpose would have served as a sufficient cause" (internal citation omitted)).

No NaphCare policy states that the purpose of M&M meetings is to reduce litigation exposure or provide legal advice. Kaul Decl. ¶ 2, Ex. A [54:23-55:5]. Yet Mr. Barkley admitted that the M&M meetings fulfill in part section 2.3.47 of NaphCare's contract with the County, which requires NaphCare to perform death reviews at the corporate level, "wherein all relevant clinical aspects and treatment are reviewed" to "improve the quality and efficiency of health care; ensure accurate and timely reporting; and reduce morbidity and mortality," but not for any legal purpose. *Id.* [51:8-:52:5; 52:16-53:7]; *see also id.* ¶ 3, Ex. B. The withheld documents are generated pursuant to contract regardless of the prospect of litigation, further establishing their primary purpose is not legal.

### B. The Contents of the Withheld Documents and Manner in Which They Are Prepared Shows Their Primary Purpose is Not Legal

The withheld documents themselves do not support a finding that their primary purpose is to facilitate the provision of legal advice. The HSA death summaries are prepared by NaphCare's health services administrator, a non-lawyer who oversees the provision of health care in the Jail. Kaul Decl. ¶ 2, Ex. A [28:16-29:19]. These fact-driven summaries contain non-privileged information about the circumstances of patient deaths. *Id*. [29:20-25]. The physician death summaries are prepared by a NaphCare physician at the direction of the facility's medical director. *Id*. [30:18-22; 31:6-10]. They contain non-privileged information about the patient's clinical history, the drafting physician's opinions and assessments, and notes about what could have been done differently to prevent the death. *Id*. [31:11-22; 32:13-33:3]. Similarly, the psychological autopsies are prepared by NaphCare's San Diego mental health director, a non-lawyer who oversees the provision of mental health care in the Jail and treats patients, and contain non-privileged information about the patient's clinical and sociological background, and the circumstances of their death, as well as the opinions and assessments of the mental health director. *Id*. [33:10-22; 34:3-15]. Mr. Barkley admitted that NaphCare prepares the HSA death summaries, physician death summaries, and psychological autopsies regardless of whether NaphCare is aware of any actual or potential litigation arising out of a patient death. *Id*. [30:6-9; 32:13-16; 34:16-21].[2]

---

[2] NaphCare's policies and procedures also require preparation of these documents. Even crediting Mr. Barkley's testimony that the "Procedure in the Event of a Patient Death" governs site-level reviews, which are not being done, Mr. Barkley testified that the summaries and autopsies discussed in that procedure were the same as those withheld here. Per procedure, these summaries and autopsies are to be used for site-level reviews to ascertain compliance with corporate standards of care and identify opportunities for improvement, but not for any legal purpose. Kaul Decl. ¶ 4, Ex. C [NAPHCARE31104]. Mr. Barkley testified that site-level reviews may involve custody, classification, clinicians, and other non-legal staff. *Id*. ¶ 2, Ex. A [59:13-16]. That NaphCare's procedures contemplate these documents will be prepared for multiple non-legal purposes, and shared with non-lawyers at NaphCare and the

The meeting agendas, presentations, and minutes likewise do not reflect the giving or receiving of legal advice. The agendas contain basic information about cases under review, including the patient's name, date of incarceration, date of death, and potential cause of death—none of which is privileged. *Id*. [16:1-17:16]. The presentations draw from the HSA death summary, physician death summary, and psychological autopsies, along with non-privileged medical records and medical examiner reports. *Id*. [17:22-18:12; 19:7-10]. Despite NaphCare's insistence that the presentations are prepared at the direction of legal,[3] Mr. Barkley conceded that NaphCare's Chief Medical Officer, in consultation with on-site providers, may identify issues to include in the presentation for purposes of discussion at the meeting. *Id*. [19:12-22; 27:4-11]. These discussions are aimed at "[e]valuating [NaphCare's] systems, [] processes, and improvements," including if "something that happened in this case is not the NaphCare way, and it needs to be changed or addressed …." *Id*. [20:1-21]. The minutes reflect this operational objective—rather than describing discussions by the meeting's attendees or conclusions about litigation risk, they memorialize the committee's recommendations for quality improvement and staff accountability to try to ensure that "going forward, [NaphCare] [is] providing the best care [it] can." *Id*. [23:19-24:9; 76:10-77:9]. The minutes also may reflect the opinions of clinical staff regarding changes to be made to on-site policies and procedures. *Id*. [25:7-13]. The minutes, like the agendas and presentations, primarily serve a clinical, operational, and business—not legal— purpose. NaphCare has not carried its burden to establish that any privilege applies.

---

Sheriff's Department, further weighs against a finding of privilege.

[3] Mr. Barkley had no personal knowledge of who directed preparation of the meeting agendas, presentations, and minutes prior to him joining NaphCare in July 2023. Kaul Decl. ¶ 2, Ex. A [26:25-27:3]. The first 52 documents listed on NaphCare's privilege log are dated prior to July 2023. *See* Declaration of Priyah Kaul in Support of Motion to Compel Production of Documents and Deposition by NaphCare of San Diego LLC, Dkt. 488-2, ¶ 13, Ex. L.

DATED: March 22, 2024

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Priyah Kaul*
    Priyah Kaul

Attorneys for Plaintiffs and the Certified Class and Subclasses