Eugene P. Ramirez (State Bar No. 134865)
  *eugene.ramirez@manningkass.com*
Craig Smith (State Bar No. 265676)
  *craig.smith@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Non-Defendant Third-Party
NaphCare of San Diego, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendant. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NAPHCARE OF SAN DIEGO LLC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DEPOSITION**<br><br>Judge:      Hon. Anthony Battaglia<br>Magistrate: Hon. David D. Leshner<br><br>Hrg Date:<br><br>Trial Date: None Set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

Pursuant to the order of the above-entitled court at the March 12, 2024, evidentiary hearing, Non-Defendant Third-Party NAPHCARE OF SAN DIEGO, LLC. ("NaphCare") hereby presents supplemental briefing in opposition to

Case No.3:20-cv-00406-AJB-DDL

**NAPHCARE'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Plaintiffs' Motion to Compel Production of Documents by NaphCare.

## I. INTRODUCTION

NaphCare is contracted with the Defendants to provide certain medical, mental health, and dental services in the San Diego County Jail. Plaintiffs filed a class action matter against Defendants claiming they have violated inmates' constitutional and statutory rights by failing to provide adequate medical care. Discovery disclosures included a privilege log and declaration from NaphCare's Chief Legal Officer, Justin Barkley, regarding documents pertaining to in-house morbidity and mortality reviews. Plaintiffs filed a motion to compel seeking disclosure of these records, alleging 82 documents related to in-custody deaths are not privileged. However, the privilege log and declaration, as well as testimony from Mr. Barkley clearly establish the privileged nature of these records.

## II. SUMMARY OF PRIVILEGE LOG AND TESTIMONY

NaphCare's morbidity and mortality reviews are done at the direction of Mr. Barkley for the primary purpose of the legal team giving legal advice to the company. *Evidentiary Hrg. Trans.* at 6:3-6; 9:5-13 (Dkt. 599). These meetings are not conducted pursuant to any contract with San Diego County, and are attended by members of NaphCare's legal department, as well as corporate and clinical department leadership. *Id*. at 6:17, 24-25; 7:5-6. The presence of any clinical leadership members is to assist the legal team in evaluating the deaths so that the legal staff can make strategic decisions, such as evaluating the applicable legal standards and the necessity of experts. *Id*. at 7:17-23; 8:5-10. These meetings are not shared with San Diego County. *Id*. at 57:14-20.

Agendas for the meetings include discussion topics and deaths to be reviewed. *Id*. at 16:16-23. Power point presentations related to the meetings are prepared by the legal department, and may contain information from medical charts, records, HSA summaries, electronic health records, and autopsy reports; although the selection itself represents privileged attorney work-product because the

information in the presentations is specifically selected from the abundance of information contained within these sources. *Id*. at 17:24-25; 18:1-12; 74:10-21. NaphCare staff preparing the presentations may speak with clinicians or providers "for the purpose of identifying issues that could present exposure" and litigation risk. *Id*. at 19:5-25; 20:1-4. Meeting minutes are taken by nurse paralegals, revised by the litigation attorneys on the in-house legal department, and reflect advice from lawyers in the meeting. *Id*. at 23:16-22; 24:13-16; 76:1-4.

In the meeting, information from HSA summaries, NaphCare physician death summaries, and psychological autopsies are reviewed. Such documents are prepared regardless of whether NaphCare is aware of potential litigation arising from a death. *Id*. at 30:6-9; 32:13-16; 34:16-19. These documents are prepared by non-legal team members "for notification of death and preparation for corporate mortality review committee meetings." *Id*. at 28:16-24; 30:18-24; 33:10-17; 35:15-23. The physician death summaries and psychological autopsies are provided only to nurse paralegals and clinical leadership involved in the morbidity and mortality meetings. *Id*. at 36:21-22; 37:5-10. HSA summaries are sent to clinical executive leadership and the CEO, who attend the morbidity and mortality meetings. *Id*. at 38:9-14. Information from these meetings is not shared outside the meeting. *Id*. at 44:4-7. While the contract between NaphCare and the County states that contractor shall conduct mortality reviews at the site and corporate levels, the subject corporate morbidity and mortality committee meetings are not conducted *pursuant* to NaphCare's contract for San Diego County[1]; and the site-level reviews described in the contract are not currently conducted to Mr. Barkley's knowledge. *Id*. at 39-44. While there are discussions in the morbidity and mortality committee review meetings about opportunities for improvement, these discussions are from the

---

[1] As discussed below, there is no provision in the contract that states that no privilege can attach to the corporate level mortality reviews.

3  Case No.3:20-cv-00406-AJB-DDL
**NAPHCARE'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

1 perspective of the legal department to improve care and posture a case for defense.
2 *Id*. at 9:21-25.

### III. THE RECORDS IN THE LOGS ARE PRIVILEGED

Attorney-client privilege "protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *In re Grand Jury 23 F.4th 1088*, 1091 (9th Cir. 2021). Attorney-client privilege exists upon a showing of eight factors: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). The party asserting privilege bears the burden of establishing that documents memorialize communications made for the purpose of giving legal advice. *In re Grand Jury*, 23 F.4th at 1091.

Where a document serves a "dual purpose" and was not prepared exclusively for litigation, courts "must determine 'whether the primary purpose of the communication is to give or receive legal advice, as opposed to business…advice." *Greer v. Cnty. of San Diego*, 634 F.Supp.3d 911, 917-918 (S.D. Cal. 2022) (citing *In re Grand Jury*, 23 F.4th at 1091.)

Another privilege is the work-product doctrine, which "protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020). The purpose of the work-product doctrine is to "[shelter] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare [a] case, and protects both material prepared by agents of the attorney as well as those prepared by the attorney himself." *Id*. Where a document is not prepared exclusively for litigation, courts apply the "because of test," which, under the totality of the circumstances, examines whether the document was created for

litigation or would not have been but for the prospect of litigation. *Id*.

Here, both attorney-client privilege and the work-product doctrine are applicable to the documents set forth in the privilege log. First, the record establishes that the primary purpose of these documents is to provide or seek legal advice as to liability for in-custody deaths. Second, the work-product doctrine applies because the record establishes that the subject meeting agenda, power point slides, and the minutes would not have been created in substantially similar form but for the prospect of litigation.

Mr. Barkley's testimony indicates that NaphCare's corporate morbidity and mortality reviews are done for the purpose of the legal team providing legal advice. To the extent clinical leadership are present and clinical information is used, the purpose is to enable the legal department to render legal advice and make strategic decisions. Agendas, power point presentations, and meeting minutes are prepared by legal department staff; the agendas may contain updates on whether certain recommended actions discussed at the prior meetings where completed, powerpoint presentations reflect the legal department's mental impressions through the specific selections of records chosen, and meeting minutes contain legal advice provided at the meeting. These documents are privileged under the work-product doctrine.

As to the HSA summaries, physician death summaries, and psychological autopsies set forth in the privilege log, the record establishes the primary purpose of these records is for use in NaphCare's corporate morbidity and mortality reviews. While NaphCare's contract with the county references such reports in conjunction with site-level reviews required by the contract, these reviews are not currently done. Mr. Barkley's testimony establishes that these documents are prepared by non-legal team members "for notification of death and preparation for corporate mortality review committee meetings." *Ev. Hrg. Trans*. at 28:16-24; 30:18-24; 33:10-17; 35:15-23. The subject physician summaries and psychological reports are provided only to NaphCare's legal department staff. HSA summaries are sent to

members of the morbidity and mortality meetings. As such, the primary purpose of these documents is for provision of legal advice.

Finally, despite the fact that the contract between NaphCare and the County provides that the shall conduct mortality reviews at the site and corporate levels, there is no provision in the contract that precludes the maintenance of privilege for these reviews. *See* Plaintiff's Exhibit 3. In other words, while the subject corporate reviews may satisfy the provision of the contract, these corporate legal meetings are not done pursuant to the contract or with any intent that the applicable privileges be waived. Moreover, the corporate level reviews have been occurring long before the contract with County of San Diego, established for the primary purpose of facilitating legal advice and not for the purpose of satisfying contractual obligations with the County of San Diego. The contract does not require and NaphCare has no intention of ever sharing the privileged documents with the County of San Diego or any other entity.

## IV. CONCLUSION

For the reasons stated herein, NaphCare respectfully requests that the Court deny Plaintiffs' request to compel documents listed in NaphCare's privilege log.

DATED: March 22, 2024

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: _/s/ G. Craig Smith_
G. Craig Smith
Attorneys for Non-Defendant Third-Party NaphCare, LLC