GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**JOINT DISCOVERY STATUS REPORT REGARDING PLAINTIFFS' REQUESTS FOR PRODUCTION NOS. 250-252**<br><br>Judge: Hon. Anthony J. Battaglia<br>Magistrate: Hon. David D. Leshner<br><br>Trial Date: None Set |

Pursuant to the Court's March 25, 2024 Order, the parties submit this Joint Discovery Status Report as to the results of their meet and confer efforts regarding Plaintiffs' RFPs No. 250-252.

## I.     PLAINTIFFS' POSITION

During the December 20, 2023 discovery conference, the Court granted Plaintiffs' request for leave to serve five additional RFPs (RFP Set 6) and declined to sustain Defendants' objection on relevance grounds. Dec. 20, 2023 Tr. at 116:1-5; 117:2-6; 118:12-16; 121:1015; *see also* Dkt. 478 at p. 5.

Relevant to this Joint Status Report, Plaintiffs' RFP Set 6 requests the following information:

**REQUEST FOR PRODUCTION NO. 250:**

ALL electronic datasets of officer-initiated field contacts (i.e. traffic and pedestrian stops), searches, arrests, use of force, and criminal charges, from January 1, 2021 to the present.

**REQUEST FOR PRODUCTION NO. 251:**

ALL electronic datasets of criminal incident reports, from January 1, 2021 to the present.

**REQUEST FOR PRODUCTION NO. 252:**

ALL electronic datasets of calls for service (i.e., 911 calls) and associated dispatch logs, from January 1, 2021 to the present.

### A.     Meeting Between Plaintiffs' Expert and Defendants' IT Person

As directed by the Court, counsel for the parties held a Zoom call on March 13, 2024, between Plaintiffs' expert Matthew B. Ross and Brent Jordan, a Crime and Intelligence Manager with the County. *See* Declaration of Matthew B. Ross ("Ross Decl.") ¶ 5, filed herewith. Counsel for the parties attended the meeting. *Id.* During the call, Mr. Ross and Mr. Jordan discussed the types of data that Defendants maintain as well as the anticipated time it may take to extract certain data. *Id.*

### B. Defendants Are Withholding and Refuse to Produce Data that Mr. Ross Requires for His Analysis

During the meeting between Mr. Ross and Mr. Jordan, the parties agreed that Plaintiffs would follow up with more specific information requests. Informed by his call with Mr. Jordan, Mr. Ross drafted a set of requests for data at issue in RFPs 250, 251, and 252 that Mr. Ross requires in order to perform statistical analysis related to Plaintiffs' Ninth Claim for Discriminatory Impact under California Government Code § 11135. *Id.* ¶ 6. This is information that Mr. Jordan indicated that Defendants maintain. *Id.* The information requested by Mr. Ross ("Ross Requests" 1-9), as sent by Plaintiffs' counsel to Defendants' counsel on March 14, 2024 is reprinted below [yellow highlighting indicates information that Defendants will not produce].

(1) Computer-Aided Dispatch (CAD, Intergraph software) data export in CSV format containing the following information:
   a. Event type (deputy-initiated event, call for service etc.)
   b. Dates/times associated with incident (occurrence, reported, assigned/dispatched, responded, cleared etc.)
   c. ==Badge number or unique ID of all officer(s) on scene==
   d. Location of event (e.g. approximate latitude/longitude or street address)
   e. Reason for the event (including principle statute motivating event, if available)
   f. Civil charges statute(s) resulting from event and disposition for each charge (for speeding tickets, include posted/actual speed if available)
   g. Criminal charge statute(s) resulting from event and disposition for each charge
   h. Unique IDs to link to additional requested datasets, i.e. criminal incident (RMS), arrest records, force, field sobriety, temporary detainment, and frisk/search.
   i. Priority of response
   j. Whether arrest was made
(2) Records Management System (RMS, Motorola) data export in CSV format containing the following information:
   a. Dates/times associated with incident (occurrence, reported, assigned/dispatched, responded, cleared etc.)
   b. Location of event (e.g. approximate latitude/longitude or street address)

    c.    Type of crime (including criminal charge statute(s) resulting from event and disposition for each charge)

    d.    Any/all available non-PII information associated with victims, suspects, witnesses, and perpetrators.

    e.    Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), arrest records, force, field sobriety, temporary detainment, and frisk/search.

(3)    Arrest Records data export in CSV format containing the following information:

    a.    Date/time of arrest

    b.    Location of arrest (e.g. approximate latitude/longitude or street address)

    c.    Badge number of arresting officer(s)

    d.    Criminal charge statute(s) resulting from event and disposition for each charge

    e.    Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(4)    Use of Force data export in CSV format containing the following information:

    a.    Any/all available records on use of force under the current force reporting policy

    b.    Date/time of incident

    c.    Location of arrest Location of event (e.g. approximate latitude/longitude or street address)

    d.    Badge number or unique ID of officer(s)

    e.    Type of force applied (response to resistance sequence if available)

    f.    All available demographics of citizens involved.

    g.    Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal

(5)    Human Resource Records data export in CSV format containing the following information:

    a.    Unique officer identifiers (e.g., badge number) that can be linked to the CAD and RMS

    b.    Any/all available non-PII demographic information for officer(s).

(6)    Field Sobriety Tests data export in CSV format containing the following information:

    a.    Any/all available records on field sobriety tests

    *If unavailable as a standalone dataset, a binary indicator variable based on a keyword search of the incident narratives.*

    b.    Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(7)    Search/Frisk data export in CSV format containing the following information:

    a.    Any/all available records on search and frisks performed in the field.

    *If unavailable as a standalone dataset, a binary indicator variable*

1  ==based on a keyword search of the incident narratives.==
     b. ==Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.==
2  (8) ==Temporary Detentions data export in CSV format containing the following information:==
     a. ==Any/all available records on temporary detentions of 849 codes. *If unavailable as a standalone dataset, a binary indicator variable based on a keyword search of the incident narratives.*==
     b. ==Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.==
   (9) RIPA data export in CSV format containing the following information:
     a. All data collected including any available linkages to CAD or RMS administrative data

Ross Decl. ¶ 6.

Following a meet-and-confer call on March 20, 2024 at which the parties discussed the Ross Requests, on March 22, 2024, counsel for Defendants indicated that they would not produce much of the requested information. Relevant to this Joint Status Report, Plaintiffs have highlighted in yellow the information that Mr. Ross requires for his analysis but that Defendants will not produce. Notably, for Ross Request 1, Defendants indicated that they will only produce pedestrian and vehicle stop information from the CAD dataset, and will not produce information relating to 911 calls. Mr. Ross understands from his call with Mr. Jordan that the highlighted information above exists. *Id.* ¶ 7.

Plaintiffs objected to Defendants' withholding of the requested information at the March 20, 2024 meet-and-confer call, and sought additional information about the bases for Defendants' withholding in emails as well as at the parties' March 27, 2024 meet-and-confer call. Despite Plaintiffs' objections and concerns, Defendants told Plaintiffs that they will not produce the highlighted information.

### C. Ross Request 1: 911 Call Data

Plaintiffs' RFP No. 252 specifically calls for electronic datasets of calls for service (i.e. 911 calls) and associated dispatch logs, from January 1, 2021 to the present. As indicated above, Defendants refuse to provide 911 call data. Plaintiffs

have asked for but not received an answer from Defendants as to why they will not produce this information.

Mr. Ross specifically discussed this data in his conference with Mr. Jordan, and understands that the information is kept in the CAD system at issue in Ross Request 1. *Id.* This information is relevant to Plaintiffs' Ninth Claim for Discriminatory Impact, which alleges that Defendant San Diego Sheriff's Department ("SDSD") disproportionately over-arrests and incarcerates Black and Latinx individuals compared to people of other races or ethnicities. Third Amended Complaint, Dkt. 231, at ¶¶ 401-02. Mr. Ross requires this information because law enforcement responses to 911 calls, similar to pedestrian and vehicle stops, can result in the arrest and incarceration of people. Ross Decl. ¶ 7. Mr. Ross intends to perform statistical analysis on the 911 call information to evaluate whether Black and Latinx people are more likely to be arrested and incarcerated than people of other races or ethnicities in connection with SDSD responses to 911 calls. *Id.*

**D.     Ross Request 4:  Use of Force Data**

Plaintiffs' RFP No. 250 specifically calls for electronic datasets of use of force data from January 1, 2021 to the present. Defendants refuse to produce the use of force data (Ross Request 4) claiming that the data is not relevant to Plaintiffs' claims.

In granting Plaintiffs' request for leave to serve the additional RFPs, this Court already found that the requested information is relevant. Dec. 20, 2023 Tr. at 116:1-5; 117:2-6; 118:12-16; 121:1015; *see also* Dkt. 478 at p. 5. The use-of-force data is relevant to Plaintiffs' claim for Discriminatory Impact because law enforcement officers are more likely to arrest and book into the jail people upon whom they have used force. Mr. Jordan confirmed to Mr. Ross that Defendants maintain a use-of-force dataset that can be linked by a unique event number to the CAD dataset that contains information about stops and responses to 911 calls. Ross Decl. ¶ 8. Mr. Ross' evaluation of similar data from other jurisdictions show that

use of force on a particular person is an indicator that the person is more likely to be arrested and incarcerated. *Id.* Mr. Ross plans to perform statistical analysis tests with this data to measure, among other things, whether (1) a stop or response to a 911 call leads to use of force; (2) whether Black and Latinx people are more likely to be the recipients of force than other individuals; and (3) whether individuals who are recipients of force are more likely to be arrested and incarcerated. *Id.*

      **E.**    **Ross Request 5 (and Ross Requests 1 and 3): Non-Personally Identifiable Information About Law Enforcement Officers**

Plaintiffs' RFP Nos. 250, 251, and 252 call for all datasets of officer-initiated field contacts, 911 calls, arrests, and criminal incident reports from January 1, 2021 to the present—all events involving SDSD law enforcement officers. Defendants refuse to produce badge numbers or other unique identifiers for officers involved in stops and 911 calls (Ross Requests 1(c) and 3(c)) as well as non-personally-identifying demographic information for these officers (Ross Request 5). Plaintiffs have asked for but not received an answer from Defendants as to why they will not produce this information.

Mr. Ross and Mr. Jordan specifically discussed how Defendants maintain datasets about the arresting officer. Ross Decl. ¶ 9. Mr. Jordan told Mr. Ross that Defendants maintain this information in a separate (Human Resources) dataset in a way that is supposed to keep the officer's name anonymized by including only a unique number for the officer. *Id.* Mr. Ross drafted his requests specifically to not seek the personally-identifiable information (like name and personal contact information) about the officer, but instead to seek (1) the badge number or other unique identifier for the officer, and (2) the demographic information about the officer. *Id.* Mr. Ross requested (1) the badge number or other unique identifier for the officer in order to perform statistical analysis tests to evaluate whether particular officers are more likely to use force against and/or arrest people who are Black and Latinx at higher rates than other people. *Id.* Mr. Ross requested (2) the

demographic information about the officer in order to perform statistical analysis tests to evaluate whether officers of a particular race or ethnicity are more likely to use force against and/or arrest people who are Black and Latinx at higher rates than other people. *Id.* In his evaluation of similar data from other jurisdictions, Mr. Ross has found statistically significant relationships between the officers' race and ethnicity and their likelihood to use force against and/or arrest people who are Black and Latinx at higher rates than other people. *Id.*

### F. Ross Requests 6, 7, and 8: Searches of the Narrative Field in the CAD System for Field Sobriety Tests (Ross Request 6), Searches or Frisks (Ross Request 7), or Temporary Detentions (Ross Request 8)

Plaintiffs' RFP Nos. 250, 251, and 252 call for all datasets of officer-initiated field contacts, 911 calls, arrests, and searches from January 1, 2021. Defendants refuse to apply search terms to the "narrative" field of the CAD and/or RMS data to identify whether an officer conducted a field sobriety test, a search or frisk, and/or a temporary detention on the grounds that doing so will produce inaccurate results. Defendants also claim that it will be burdensome to do.

Mr. Jordan told Mr. Ross that he was unsure whether there were specific datasets for whether an officer conducted a field sobriety test, a search or frisk, and/or a temporary detention; Mr. Jordan said that he would look into whether the datasets exist. Ross Decl. ¶ 10. Mr. Jordan indicated that if those datasets did not exist, that information can be captured in the "narrative" field related to the event. *Id.* Mr. Jordan stated that it would take a negligible amount of time to extract the "narrative" field, but that it could take substantial amounts of time to read through every narrative field to ascertain whether there was information that would have to be redacted, like a victim's name. *Id.* Mr. Jordan agreed with Mr. Ross that the burden concern could be addressed by using search terms to identify whether an officer conducted a field sobriety test, a search or frisk, and/or a temporary detention. *Id.* Defendants could then create a dummy variable with a value of "1" if there was such a hit or "0" if there was no such hit, and produce the dummy variable

indicating the presence of a field sobriety test, a search or frisk, and/or a temporary detention—obviating the need to review and produce the "narrative" field. *Id.*

Mr. Jordan indicated that the Department uses certain codes for certain events, and that he was willing to work with Mr. Ross to compile a set of search terms to use in the "narrative" field in order to identify whether a Field Sobriety Test (Ross Request 6), Search or Frisk (Ross Request 7), or a Temporary Detention (Ross Request 8) was conducted in any given event. *Id.* For example, Mr. Jordan explained that SDSD uses the code "849" for temporary detentions, and that the narrative field associated with an event may include this code if there was a temporary detention. *Id.* At the March 27, 2024 meet-and-confer call, the parties agreed that Plaintiffs would send Defendants search terms and evaluate whether Mr. Jordan and Mr. Ross should have a follow-up call to collaborate on the terms. Mr. Ross drafted a set of search terms that Plaintiffs provided to Defendants on March 27, 2024. *Id.* ¶ 11.

> Field Sobriety Tests- eleven separate binary indicator variables for the presence of the following keywords: "field sobriety" or "FST" or "SFST", "operating under the influence" or "OUI", "driving under the influence" or "DUI", "impaired operation" or "impaired driving", "B[l]ood Alcohol Content" or "BAC", "Horizontal Gaze" or "Nystagmus", "Walk-and-Turn" or "Walk and Turn", "heel-to-toe" or "heel to toe", "one-leg-stand" or "one leg stand", "breathalyzer" or "breath test" or "PBT", "alcohol screening" or "PAS".
>
> Search/Frisk- nine binary indicator variables for the presence of the following keywords: "search", "contraband", "inventory search", "search incident to arrest", "consent search", "probable cause search", "reasonable suspicion search", "frisk", "pat down" or "pat-down".
>
> Temporary Detentions: six binary indicator variables for the presence of the following keywords: "849", "detention", "handcuff", "vehicle exit" or "exit vehicle", "PlastiCuffs" or "FlexiCuffs" or "FlexCuffs" or "Plasti Cuffs" or "Flexi Cuffs" or "Flex Cuffs" or "Zip Cuffs", "Cuffs".

Mr. Ross also asked for a follow-up call with Mr. Jordan to ensure that Mr. Ross has all of the codes or other shorthand terms that SDSD may use to identify field sobriety tests, searches/frisks, and/or temporary detentions in the "narrative" field. *Id.*

1    On the call between Mr. Jordan and Mr. Ross, Mr. Jordan expressed concern
2 that Mr. Ross' statistical analyses may not be accurate with the use of search terms
3 because (1) search terms may not capture all instances of whether an officer
4 conducted a field sobriety test, a search or frisk, and/or a temporary detention, or
5 (2) the search terms would capture other actions. *Id.* ¶ 12. Mr. Ross assured
6 Mr. Jordan that he was not concerned about this issue (called "measurement error")
7 because there are ways to account for measurement error in variables when
8 performing statistical analysis. *Id.*

9    Defendants have no legitimate basis for withholding the data on grounds that
10 the data will result in inaccurate statistical analysis. To be sure, there are specific
11 statistical tools and tests that Mr. Ross can apply to ensure that the estimates are not
12 biased by measurement error in these variables. *Id.* To the extent that these
13 variables—indicators of sobriety tests, searches/frisks, and/or temporary
14 detentions—are used as outcomes (i.e. dependent variables in a regression analysis),
15 measurement error will not result in a biased estimate based on canonical
16 mathematical properties of linear regression. *Id.*

17    Defendants have no legitimate basis for withholding the data on burden
18 grounds given that Mr. Jordan confirmed that Defendants can create dummy
19 variables to identify the presence or absence of hits on field sobriety tests, searches/
20 frisks, and/or temporary detentions, and that time required for the extraction of this
21 information is negligible. As with the other RFPs, Plaintiffs need this information
22 for their Ninth Claim for Relief, and respectfully request that Defendants be ordered
23 to produce it

24   **G.    Plaintiffs Seek to Move to Compel the Withheld Information**

25    Plaintiffs seek to move to compel the information that Mr. Ross has requested
26 in connection with RFP Nos. 250, 251, and 252, and to compel another meeting
27 between Mr. Ross and Mr. Jordan to ascertain whether any of Mr. Ross' proposed
28 search terms should be modified to account for SDSD codes, shorthand, or

otherwise. The information requested by Mr. Ross is directly relevant to Plaintiffs' Plaintiffs' Ninth Claim for Discriminatory Impact. There is no dispute that the information is maintained by Defendants. The request is not burdensome; there is no dispute that so long as search terms are applied to the narrative field, a dummy variable can easily be created to indicate the presence or absence of field sobriety tests, searches/frisks, and/or temporary detentions. Whether or not Mr. Ross adequately accounts for measurement error is an issue for trial, not a basis for Defendants to withhold relevant data.

Plaintiffs served RFP Set 6 over three months ago, and have yet to receive any data responsive to RFP Nos. 250, 251, and 252. Plaintiffs have set forth their position in this Joint Status Report. In the even the Court requires briefing on this issue, Plaintiffs respectfully request that the Court to order briefing not to exceed ten pages, that each party file their briefs by April 4, 2024, and that the Court rule on the dispute as soon as practicable.

## II.    DEFENDANTS' POSITION

Defendants have the records responsive to these requests and are reviewing them for production. However, the parties do not agree on the scope, which goes beyond the allegations in the operative Complaint and seeks identifying information when the allegations are Department-wide and not specific to individuals. Further, while Plaintiffs' expert claims that additional, reliable information can be obtained by using search terms, these assertions are incorrect. Defendants did not anticipate the declaration of Plaintiffs' expert attached to this report, and request briefing occur by April 8, 2024, if requested by the Court. Defendants could also obtain a declaration of the County's data specialist, if helpful to the court.

Plaintiffs originally provided the following after Zoom meet and confer between Plaintiffs expert and staff at County. The County's staff went through and lined out what could not be produced, and defense Counsel lined out any requested identifying information of individual deputies, as follows:

(1) <u>Computer-Aided Dispatch</u> (CAD, Intergraph software) data export in CSV format containing the following information:
  a. Event type ~~(deputy-initiated event, call for service etc.)~~
  b. Dates/times associated with incident ~~(occurrence, reported, assigned/dispatched, responded, cleared etc.)~~
  ~~c. Badge number or unique ID of all officer(s) on scene~~
  d. Location of event (e.g. approximate latitude/longitude ~~or street address~~)
  e. Reason for the event (including principle statute motivating event, if available)
  ~~f. Civil charges statute(s) resulting from event and disposition for each charge (for speeding tickets, include posted/actual speed if available)~~
  ~~g. Criminal charge statute(s) resulting from event and disposition for each charge~~
  h. Unique IDs ~~to link to additional requested datasets, i.e. criminal incident (RMS), arrest records, force, field sobriety, temporary detainment, and frisk/search.~~ <span style="color:red">(E#)</span>
  i. Priority of response
  ~~j. Whether arrest was made~~
- <span style="color:red">Providing Deputy Initiated Activity (pedestrian and vehicle stop) CAD only</span>

(2) <u>Records Management System</u> (RMS, Motorola) data export in CSV format containing the following information:
  a. Dates/times associated with incident ~~(occurrence, reported, assigned/dispatched, responded, cleared etc.)~~
  b. Location of event (e.g. approximate latitude/longitude ~~or street address~~)
  c. Type of crime (including criminal charge statute(s) ~~resulting from event and disposition for each charge~~)
  d. Any/all available non-PII information associated with victims, suspects, ~~witnesses, and perpetrators~~.
  e. Unique IDs ~~to link to additional requested datasets, i.e. computer-aided dispatch (CAD), arrest records, force, field sobriety, temporary detainment, and frisk/search.~~ <span style="color:red">(CN and E#)</span>
- <span style="color:red">The provided RMS cases will be linked to the E#'s provided in #1.</span>

(3) <u>Arrest Records</u> data export in CSV format containing the following information:
  a. Date/time of arrest

      b.      Location of arrest (e.g. approximate latitude/longitude ~~or street address~~)
      ~~c.      Badge number of arresting officer(s)~~
      d.      Criminal charge statute(s) ~~resulting from event and disposition for each charge~~
      e.      Unique IDs ~~to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records~~ (CN, E#, and arrest #).

- The provided arrest records will be linked to the E#'s provided in #1.

Further meet and confer occurred, and the County declined the request to apply search terms to the following fields and applying the terms provided by Plaintiffs' experts because they would be inaccurate and incomplete. Deputy abbreviations and use of varying words to describe actions/events will never be captured by a word or term search. The data will be inaccurate without a hand review of narratives for every incident, which would take weeks of fulltime work reading each narrative. Even using search terms, the data would have to be hand-searched to remove non-responsive information because of the limitations of the system against free text narratives with no set terminology used.

The request for HR information is irrelevant to any issue because specific deputy identities aren't necessary to determine the alleged policing practices of the Department. The claim alleged is Department-wide practice and not individual-based.

Finally, the request for use of force data is inappropriate. The cause of action itself makes no reference to the use of force, and when applying a "word" search to the operative Complaint for "force", there are no allegations of use of force in connection with general policing practices for patrol or outside the jails. The information is this outside the scope of discovery and should be prohibited.

/ / /

/ / /

/ / /

Respectfully submitted,

DATED: April 1, 2024    ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Van Swearingen*
Van Swearingen

Attorneys for Plaintiffs and the Certified Class and Subclasses

DATED: April 1, 2024    BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ Susan E. Coleman*
Susan E. Coleman

Attorneys for Defendants
COUNTY OF SAN DIEGO, SAN DIEGO COUNTY SHERIFF'S DEPARTMENT and SAN DIEGO COUNTY PROBATION DEPARTMENT

## SIGNATURE CERTIFICATION

Pursuant to the Court's Electronic Case Filing Procedures Manual Section 2(f)(4), I certify that I have obtained the consent of all signatories to the electronic filing of the foregoing document.

DATED: April 1, 2024    ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Van Swearingen*
Van Swearingen

Attorneys for Plaintiffs and the Certified Class and Subclasses