GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**DECLARATION OF MATTHEW B. ROSS IN SUPPORT OF JOINT DISCOVERY STATUS REPORT REGARDING PLAINTIFFS' REQUESTS FOR PRODUCTION NOS. 250-252**<br><br>Judge: Hon. Anthony J. Battaglia<br>Magistrate: Hon. David D. Leshner<br><br>Trial Date: None Set |

[4463231.1]

I Matthew B. Ross, declare:

1. I have a PhD in Economics from the University of Connecticut which I received in 2016. I am an Associate Professor at Northeastern University where I hold joint appointments in the School of Public Policy & Urban Affairs and the Department of Economics. I have personal knowledge of the facts set forth herein, and if called as a witness, I could competently so testify. I make this declaration in support of the Joint Discovery Status Report Regarding Plaintiffs' Request for Production Nos. 25-252.

2. I am originally trained as an applied microeconomist. My research predominantly centers on empirically testing for disparate treatment and evaluating skills acquisition/training programs across various sectors. The majority of my work has a particular focus on these topics as they relate to policing and the criminal justice system. I am the lead investigator of a lab at Northeastern University that actively files hundreds of public information requests per year. These public information requests ask major municipal and state police agencies for administrative data on police enforcement pertaining to arrests, use of force, calls for service, stops, searches, and criminal investigations. In my scholarly research and through my lab, I have worked with incident level administrative data from several hundred policing agencies across the country.

3. In 2013, I developed a methodological framework for evaluating statewide policing data and intervening in departments with observed disparities. My approach has since been coined the "Connecticut Model" and is widely viewed as a national model of best practice for analyzing policing data for evidence of disparate treatment. To date, myself and my collaborators have provided varying levels of technical assistance to thirteen states seeking to implement similar analyses and data collection systems as Connecticut (Alabama, California, Colorado, DC Metro, Maine, Maryland, Minnesota, Nevada, New Jersey, New York, Oregon, Ohio, and Rhode Island). My approach has been promoted as a potential model for

state reforms by two of the major national traffic safety organizations: Mothers Against Drunk Driving (MADD) (Hawkins 2021; MADD 2021) and Governors Highway Safety Association (Sprattler and Statz 2021), as well as the Justice Center at the Council of State Governments.

4. I have served as an advisor and subject matter expert for the U.S. Department of Justice as well as the State of Connecticut, Rhode Island, District of Columbia, and the New Jersey Attorney General. I have authored over a dozen statewide studies on racial and ethnic disparities. The vast majority of my policy work helps the public sector to develop and evaluate programs aimed at identifying and alleviating disparities within social and economic institutions, particularly in policing. A true and correct copy of my CV is attached to this declaration.

5. I attended a Zoom call on March 13, 2024, with Brent Jordan, a Crime and Intelligence Manager with the County. Counsel for the parties attended the meeting. During the call, Mr. Jordan and I discussed the types of data that Defendants maintain as well as the anticipated time it may take to extract certain data.

6. Informed by my call with Mr. Jordan, I drafted a set of requests for data at issue in RFPs 250, 251, and 252 that I understood Defendants maintain. I require this data in order to perform statistical analysis related to Plaintiffs' Ninth Claim for Discriminatory Impact under California Government Code § 11135. The requested information ("Ross Requests" 1-9) is reprinted below [yellow highlighting indicates information that Defendants will not produce]:

> (1) Computer-Aided Dispatch (CAD, Intergraph software) data export in CSV format containing the following information:
>     a. Event type (deputy-initiated event, call for service etc.)
>     b. Dates/times associated with incident (occurrence, reported, assigned/dispatched, responded, cleared etc.)
>     c. Badge number or unique ID of all officer(s) on scene
>     d. Location of event (e.g. approximate latitude/longitude or street address)
>     e. Reason for the event (including principle statute motivating event, if available)
>     f. Civil charges statute(s) resulting from event and disposition for each charge (for speeding tickets, include posted/actual speed if available)

      g. Criminal charge statute(s) resulting from event and disposition for each charge
      h. Unique IDs to link to additional requested datasets, i.e. criminal incident (RMS), arrest records, force, field sobriety, temporary detainment, and frisk/search.
      i. Priority of response
      j. Whether arrest was made

(2) <u>Records Management System</u> (RMS, Motorola) data export in CSV format containing the following information:
      a. Dates/times associated with incident (occurrence, reported, assigned/dispatched, responded, cleared etc.)
      b. Location of event (e.g. approximate latitude/longitude or street address)
      c. Type of crime (including criminal charge statute(s) resulting from event and disposition for each charge)
      d. Any/all available non-PII information associated with victims, suspects, witnesses, and perpetrators.
      e. Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), arrest records, force, field sobriety, temporary detainment, and frisk/search.

(3) <u>Arrest Records</u> data export in CSV format containing the following information:
      a. Date/time of arrest
      b. Location of arrest (e.g. approximate latitude/longitude or street address)
      c. Badge number of arresting officer(s)
      d. Criminal charge statute(s) resulting from event and disposition for each charge
      e. Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(4) <u>Use of Force</u> data export in CSV format containing the following information:
      a. Any/all available records on use of force under the current force reporting policy
      b. Date/time of incident
      c. Location of arrest Location of event (e.g. approximate latitude/longitude or street address)
      d. Badge number or unique ID of officer(s)
      e. Type of force applied (response to resistance sequence if available)
      f. All available demographics of citizens involved.
      g. Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(5) <u>Human Resource Records</u> data export in CSV format containing the following information:
      a. Unique officer identifiers (e.g., badge number) that can be linked to the CAD and RMS
      b. Any/all available non-PII demographic information for officer(s).

(6) <u>Field Sobriety Tests</u> data export in CSV format containing the following information:
      a. Any/all available records on field sobriety tests
      *If unavailable as a standalone dataset, a binary indicator variable based on a keyword search of the incident narratives.*
      b. Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(7) <u>Search/Frisk</u> data export in CSV format containing the following information:
      a. Any/all available records on search and frisks performed in the field.
      *If unavailable as a standalone dataset, a binary indicator variable based on a keyword search of the incident narratives.*

   b. ==Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.==

 (8) ==**Temporary Detentions** data export in CSV format containing the following information:==
   a. ==Any/all available records on temporary detentions of 849 codes.==
   ==*If unavailable as a standalone dataset, a binary indicator variable based on a keyword search of the incident narratives.*==
   b. ==Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.==

 (9) **RIPA** data export in CSV format containing the following information:
   a. All data collected including any available linkages to CAD or RMS administrative data

I understand from my call with Mr. Jordan that the highlighted information above exists.

  7. <u>Ross Request 1: 911 Call Data</u>. I specifically discussed 911 call data with Mr. Jordan, and understand that the information I require to perform statistical analysis on calls for service (911 call) data is kept in the CAD system. I require this information because law enforcement responses to 911 calls, similar to pedestrian and vehicle stops, can result in the arrest and incarceration of people. I intend to perform statistical analysis on the requested information to evaluate whether Black and Latinx are more likely to be arrested and incarcerated than people of other races or ethnicities in connection with SDSD responses to 911 calls.

  8. <u>Ross Request 4: Use of Force Data</u>. Mr. Jordan confirmed to me that Defendants maintain a use of force dataset that can be linked by a unique event number to the CAD dataset that contains information about stops and responses to 911 calls. My evaluation of data from other jurisdictions show that use of force on a particular person is an indicator that the person is more likely to be arrested and incarcerated. I plan to perform statistical analysis tests with this use of force data to measure, among other things, whether (1) a stop or response to a 911 call leads to use of force; (2) whether Black and Latinx people are more likely to receive force than other individuals, holding constant other factors and (3) whether individuals who receive force are more likely to be arrested and incarcerated.

  9. <u>Ross Request 5 (and Ross Requests 1 and 3): Non-Personally</u>

1 <u>Identifiable Information About Arresting Officers</u>.  I specifically discussed with Mr. Jordan how Defendants maintain datasets about the arresting officer.  It is my recollection that Mr. Jordan told me that Defendants maintain this information in a way that is supposed to keep the officer's name anonymized by including only a unique number for the officer.  I drafted the above requests to specifically not seek the personally-identifiable information (like name and personal contact information) about the officer, but instead to seek (1) the badge number or other unique identifier for the officer, and (2) the demographic information about the officer.  I requested (1) the badge number or other unique identifier for the officer in order to perform statistical analysis tests to evaluate whether particular officers are more likely to engage in use force against and/or arrest people who are Black and Latinx at higher rates than other people.  I requested (2) the demographic information about the officer in order to perform statistical analysis tests to evaluate whether officers of a particular race or ethnicity are more likely to engage in use force against and/or arrest people who are Black and Latinx at higher rates than other people.  In my evaluation of similar data from other jurisdictions, I have found statistically significant relationships between officers' race and ethnicity and their likelihood to use force against and/or arrest people who are Black and Latinx at higher rates than other people.

10. <u>Ross Requests 6, 7, and 8:  Searches of the Narrative Field in the CAD System for Field Sobriety Tests (Ross Request 6), Searches or Frisks (Ross Request 7), or Temporary Detentions (Ross Request 8)</u>.  Mr. Jordan told me that he was unsure whether there were specific datasets for whether an officer conducted a field sobriety test, a search or frisk, and/or a temporary detention; Mr. Jordan said that he would look into whether the datasets exist.  I have not heard back from Mr. Jordan about this issue.  Mr. Jordan indicated that, even if those specific datasets did not exist, that information is documented in the "narrative" field related to the event.  Mr. Jordan stated that it would take a negligible amount of time to extract the

"narrative" field, but that it could take a lot of time to read through every narrative field to ascertain whether there was information that would have to be redacted, like a victim's name. Mr. Jordan agreed with me that the burden concern could be addressed by creating search terms to indicate whether an officer conducted a field sobriety test, a search or frisk, and/or a temporary detention. Defendants could then create a dummy variable with a value of "1" if there was such a hit or "0" if there was no such hit, and produce the dummy variable indicating the presence of a field sobriety test, a search or frisk, and/or a temporary detention—obviating the need to review and produce the "narrative" field. Mr. Jordan indicated that the Department uses certain codes for certain events, and that he was willing to work with me to compile a set of search terms to use in the "narrative" field of the CAD dataset at issue in Request 1 in order to identify whether a Field Sobriety Test (Ross Request 6), Search or Frisk (Ross Request 7), or a Temporary Detention (Ross Request 8) was conducted in any given event. For example, Mr. Jordan explained that SDSD uses the code "849" that may be related to temporary detentions, and that the narrative field associated with an event may include this code.

11. I drafted the following set of search terms that Plaintiffs provided to Defendants on March 27, 2024.

> Field Sobriety Tests- eleven separate binary indicator variables for the presence of the following keywords: "field sobriety" or "FST" or "SFST", "operating under the influence" or "OUI", "driving under the influence" or "DUI", "impaired operation" or "impaired driving", "Bood Alcohol Content" or "BAC", "Horizontal Gaze" or "Nystagmus", "Walk-and-Turn" or "Walk and Turn", "heel-to-toe" or "heel to toe", "one-leg-stand" or "one leg stand", "breathalyzer" or "breath test" or "PBT", "alcohol screening" or "PAS".
>
> Search/Frisk- nine binary indicator variables for the presence of the following keywords: "search", "contraband", "inventory search", "search incident to arrest", "consent search", "probable cause search", "reasonable suspicion search", "frisk", "pat down" or "pat-down".
>
> Temporary Detentions: six binary indicator variables for the presence of the following keywords: "849", "detention", "handcuff", "vehicle exit" or "exit vehicle", "PlastiCuffs" or "FlexiCuffs" or "FlexCuffs" or "Plasti Cuffs" or "Flexi Cuffs" or "Flex Cuffs" or "Zip Cuffs", "Cuffs"

I also asked for a follow-up call with Mr. Jordan to ensure that Mr. Ross has all of the codes or other shorthand that SDSD may use to identify field sobriety tests, searches/frisks, and/or temporary detentions.

12. Mr. Jordan expressed concern that my statistical analyses may not be accurate with the use of search terms because (1) search terms may not capture all instances of whether an officer conducted a field sobriety test, a search or frisk, and/or a temporary detention, or (2) the search terms would capture other actions. I assured Mr. Jordan that I was not concerned about this issue because there are ways to account for measurement error in variables when performing statistical analysis. There are specific statistical tools and tests that I can apply to ensure that the estimates are not biased by measurement error in these variables. To the extent that these variables—indicators of sobriety tests, searches/frisks, and/or temporary detentions—are used as outcomes (i.e. dependent variables in a regression analysis), measurement error will not result in a biased estimate based on canonical mathematical properties of linear regression.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at Boston, Massachusetts this 1st day of April, 2024.

Apr 1, 2024

Matthew B. Ross

# ATTACHMENT

Updated: March, 2024

# Matthew B. Ross

978.888.8517                                    School of Public Policy & Urban Affairs
mbross.econ@gmail.com                                      Department of Economics
ma.ross@northeastern.edu                                    Northeastern University
www.mbross-econ.com                                                    Boston, MA

## Current Employment

| | |
|---|---|
| 2022- Pres | Associate Professor (Untenured, Tenure-Track), School of Public Policy & Urban Affairs and Department of Economics, Northeastern University |
| 2023-24 | Community-to-Community Policy Fellow (Provost's Initiative), Northeastern University |

## Other Appointments

| | |
|---|---|
| 2024-Pres | Research Advisor to Justice Center at Council of State Governments |
| 2023-Pres | Invited Research to J-PAL North American and the Science for Progress Initiative |
| 2022-24 | Visiting Scholar, Department of Public Policy, University of Connecticut |

## Education

| | |
|---|---|
| 2016 | Ph.D. in Economics, University of Connecticut |
| 2013 | M.A. in Economics, University of Connecticut |
| 2011 | M.A. in Regional Economic & Community Development, University of Massachusetts Lowell |
| 2010 | B.A. in Economics, University of Massachusetts Lowell |

## Research Interests

Primary: Labor economics, urban economics, and public policy

Secondary: Discrimination, economics of crime, labor market dynamics, training, skills and tasks, knowledge transfer, labor demand

## Previous Employment

| | |
|---|---|
| 2020-22 | Assistant Professor, Department of Economic Sciences, Claremont Graduate University |
| 2020-22 | Visiting Scholar, Wagner School of Public Service, New York University |
| 2018-20 | Assistant Research Professor, Wagner School of Public Service and Center for Urban Science and Progress (CUSP), New York University |
| 2016-18 | Post-Doc, Ohio State University and National Bureau of Economic Research (NBER) |

## Scholarly Research

### Refereed Publications

Yu, H., Marschke, G., Ross, M.B. et al. Publish or Perish: Selective Attrition as a Unifying Explanation for Patterns in Innovation over the Career. *Journal of Human Resources* 59-1 (2024).

Kalinowski, J.J., Ross, S.L., Ross, M.B. Endogenous Driving Behavior in Tests of Racial Profiling. *Journal of Human Resources* 59-2 (2023).

Ross, M.B., Glennon, B.M., Murciano-Goroff, R. et al. Women are credited less in science than men. *Nature* 608, 135–145 (2022).

Ross, M.B., Kalinowski, J.J., Barone, K. Testing for Disparities in Traffic Stops: Best Practices from the Connecticut Model. *Criminology & Public Policy* 19-4 (2020).

Chevalier, G. Chomienne, C. Jeanrenaud, N.G., Lane, J.I., Ross, M.B. A New Approach for Estimating Research Impact: An Application to French Cancer Research. *Quantitative Science Studies* 1-4 (2020).

Ross, M.B. The Effect of Intensive Margin Changes to Task Content on Employment Dynamics over the Business Cycle. *Industrial and Labor Relations Review* 74-4 (2020).

Couch, K.A., Ross, M.B., Vavrek, J. Career Pathways and Integrated Instruction: A National program Review of I-Best Implementations. *Journal of Labor Research* 39 (2018).

Ross, M.B. Routine-Biased Technical Change: Panel Evidence of Task Orientation and Wage Effects. *Labour Economics* 48 (2017).

Published Conference Proceedings

Kehoe, A.K., Vetle, T.I., Ross, M.B., Smalheiser, N.R. Predicting MeSH Beyond MEDLINE. Association of Computing Machinery (ACM): *Proceedings of Workshop on Scholarly Web Mining* (2018).

Kalinowski, J.J., Ross, S.L., Ross, M.B. Now You See Me, Now You Don't: The Geography of Police Stops. *American Economic Review Papers and* Proceedings 109 (2019).

Book Chapters

Ross, M.B. Ikudo, A., Lane, J.I. The Food Safety Research Workforce and Economic Outcomes. *Measuring the Economic Value of Research: The Case of Food Safety*, c. 6 pp. 100- 112, Cambridge University Press (2017)

King, J.L. Johnson, S.R., Ross, M.B. Assessing the Effects of Food Safety Research on Early Career Outcomes. *Measuring the Economic Value of Research: The Case of Food Safety*, c. 8 pp. 100- 112, Cambridge University Press (2017)

Working Papers

Adger, C. Ross, M.B., Sloan, C.W. The Effect of Field Training Officers on Police Use of Force. 2024. (Submitted).

Mello, S., Ross, M.B., Ross, S.L., Johnson, H. Diversity Training and Employee Behavior: Evidence from the Police. 2024. (Submitted).

Ross, M.B., Parker, S., Ross, S.L. The Impact of Prohibiting Pretextual Enforcement on Traffic Stops, Accidents, and Crime. 2024 (Submitted).

Kalinowski, J.J., Ross, S.L., Ross, M.B. Addressing Seasonality in Veil of Darkness Tests for Discrimination: A Regression Discontinuity Approach. (Resting)

Selected Works in Progress

Ross, M.B., Ross, S.L., Parker, S. Testing for Discrimination in Police Traffic Stops using Telemetric Mobility Data: New Methods and Findings. (Manuscript in Preparation).

Murciano-Goroff, R.M. Ross, M.B. Robots and Science: The Impact of Automation on the Scientific Research Teams. (Manuscript in Preparation).

Funk, R. Glennon, B., Murciano-Goroff, R.M. Ross, M.B. Connections and Credit: How Social Networks Shape the Gender Gap in Research Output. (Manuscript in Preparation).

Bollman, K.M., Gomez, A. Ross, M.B., Sloan, C.W. More with Less: The Impact of Excessive Overtime on Police Wellness, Productivity, and Bias. (Ongoing Analysis).

Ross, M.B. and Sloan, C.W. Estimating Police Value-Added Impacts on Criminal Investigations, Clearance Rates, Revictimization, and Recidivism. (Ongoing Analysis).

Ross, M.B., Ross, S.L., Parker, S. A Machine Learning Approach to Estimating Roadway Populations using Telemetric Mobility Data. (Preliminary Analysis).

Ross, M.B. Sloan, C.W. Understanding the Dynamics of Police Corruption: Evidence from Connecticut's Fake Ticket Scandal. (Preliminary Analysis)

## Grants, Awards, and Honors

Grants and Contracts

Total of $2,809,111 in extramural research funding and $88,766 in internal research funding from 2016 to present.

| | |
|---|---|
| 2023-24 | PI for Qualitative Evaluation of the "Connecticut Model". Arnold Ventures via Council of State Governments. Subaward of $39,987 from $600,000. |
| 2023-24 | PI for CT Traffic Stop Evaluation. U.S. DOT. Total of $170,626. |
| 2023-25 | PI for RI Traffic Stop Evaluation. U.S. DOT. Total of $246,400. |
| 2023-24 | PI for DC Metro Traffic Stop Evaluation and Officer Analysis. U.S. DOT. Total of $40,123. |
| 2023 | Winner of Northeastern University Community-to-Community Policy Fellowship. Post-Doc equivalent to approx. $43,200. |
| 2023 | Winner of College of Social Sciences & Humanities' Multi-Generational Research Team Award: "Criminal Investigations in Communities of Color" with Ermus St. Louis (Northeastern University). SGA time equivalent to approx. $26,666. |
| 2022-23 | PI for CT Traffic Stop Evaluation and Officer Analysis. U.S. DOT. Total of $168,430. |
| 2023 | Consultant to the Commonwealth of Virginia's Attorney General's Office. |
| 2021-23 | Consultant on NOPD Consent Decree to the U.S. Department of Justice Civil Rights Division. Total of $29,640. |
| 2021 | Consultant to the New Jersey Attorney General's Office of Public Integrity & Accountability. Total of $6,968 |
| 2021-22 | Winner of Blais Challenge Award: "Does More Training Mitigate Disparities in Police Use of Force? Quasi-Experimental Evidence from New Linked Data" with CarlyWill Sloan (Claremont) and David Bjerk (Claremont McKenna). Total of $18,900. |
| 2021-22 | Co-PI for Russell Sage Foundation Presidential Grant: "Does More Training Mitigate Disparities in Police Use of Force? Quasi-Experimental Evidence from New Linked Data" with CarlyWill Sloan (Claremont). Total of $29,178 |
| 2021-23 | PI for CT Traffic Stop Evaluation and Officer Analysis. U.S. DOT. Total of $251,085 from 2021-23. |
| 2020-21 | Contractor for the National Science Foundation- National Center for Science and Engineering Statistics (via Coleridge Initiative): "Integrate Data Analytics Training, Data |

|      |      |
|------|------|
|      | Linkage Research and Secure Data Access to Promote Evidence-based Science Policy Research". Total of $12,750. |
| 2019-21 | Co-PI for National Science Foundation (NSF) Research Award (SciSIP #1932689): "Research funding, organizational context, and transformative research: New insights from new methods and data" with Raviv Murciano-Goroff (BU), Julia Lane (NYU), and Russel Funk (UMN). Collaborative award for a total of $600,000 w/ $320,000 to NYU. |
| 2019-21 | Fellowship at Collaborative Archive Data Research Environment (CADRE) at Indiana University. Team granted clustered computing access to Web of Science (WoS) and Microsoft Academic Graph (MAG) data. |
| 2016-19 | PI for RI Traffic Stop Evaluation and Officer Analysis. U.S. DOT. Total of $222,690. |
| 2013-19 | PI for CT Traffic Stop Evaluation and Officer Analysis. U.S. DOT. Total of $571,140. |
| 2012-16 | Racial Disparities in State Contracting Phases 1-3 (sub-award) via CT Economic Resource Center and CT Academy of Science as part of a CT General Assembly award. Total of $22,400. |

Smaller Awards and Honors

Fellowship w/ Cuebiq (Spectus Data for Good Initiative), Connecticut's Alvin W. Penn Award for Excellence in Civil Rights Leadership (w/ coauthors), UConn Dissertation Award (2016), IZA/CEDEFOP Travel Award (Fall 2015), Quinnipiac CAS Research Award (2015), UConn Summer Research Fellowship (Summer 2012, 2014, 2015), UConn Third Year Paper Award (2014), National Association of Business Economist's Policy Scholarship (2013), UConn Economics Fellowship (2011), UMass Alan D. Solomon Scholarship (2011), UMass Campus Catalyst Award (2011), UMass Honors (2009-11)

Policy Reports

| | |
|---|---|
| 2023 | Massachusetts Traffic Stops Analysis, 2009-22<br> - Partners: USA Today and Cape Cod Times<br>MA_Traffic-Stop-Analysis-2014-22-1.pdf |
| 2023 | Connecticut State Police Traffic Stop Audit<br> - Partners: CT General Assembly and Office of Policy & Management<br>CTSP_Fake-Ticket-Audit.pdf |
| 2022 | New Orleans Police Department Bias-Free Analysis.<br> - Partners: US Department of Justice.<br>NOPD_Bias-Free.pdf |
| 2022 | Internal Analysis of New Jersey State Police Traffic Stops.<br> - Partners: New Jersey Attorney General.<br>NJSP_Traffic-Stop.pdf |
| 2013-21 | State of Connecticut, Analysis of Racial Profiling in Police Traffic Stops- 16 reports.<br> - Partners: CT General Assembly and Office of Policy & Management (via Institute for Municipal and Regional Policy, University of Connecticut)<br> - Public Department-Level Reports: 2021, 2020, 2019, 2018, 2017, 2015-16, 2014-15, and 2013-14<br> - Public Officer-Level Reports: 2021, 2020, 2019, 2018, 2017, 2015-16, 2014-15, and 2013-14<br>https://www.ctrp3.org/analysis-reports/reports |
| 2016-19 | State of Rhode Island, Analysis of Racial Profiling in Police Traffic Stops- 4 reports.<br> - Partners: RI Department of Transportation (via Institute for Municipal and Regional Policy, University of Connecticut)<br> - Public Department-Level Reports: 2019, 2018, 2017, and 2016<br> - Internal Officer-Level Reports: 2016 |

| | |
|---|---|
| 2013-19 | Racial Disparities in CT's State Contracting Process (Disparity Study Phase 1, 2, & 3). |
| | - Partners: CT General Assembly and CT Academy of Science and Engineering |
| 2013 | Connecticut's Economic Development Strategy. |
| | - Partners: CT Department of Economic and Community Development |
| 2012 | […] Connecticut's Skilled Workforce […]. |
| | - Partners: CT General Assembly and CT Academy of Science and Engineering |
| 2011 | U.S. Skills for Green Jobs. |
| | - Partners: International Labour Organization and CEDEFOP |

Conferences and Seminars

| | |
|---|---|
| 2023-24 | Boston Federal Reserve, Global Action for Policy Conference, Western Economic Association. |
| 2022-23 | Association for Public Policy Analysis & Management and Urban Economics Association |
| 2021-22 | NBER Summer Institute- Law & Economics 2022, USPTO PatentsView Symposium, Claremont McKenna, Ohio State University- UMETRICS Action Series (Coauthor), Association of Policy Analysis and Management, Scripps College, University of Hawaii at Manoa, Northeastern University, RAND Corporation, California State University at Fullerton, University of New Hampshire, Texas A&M VICE Seminar |
| 2019-20 | Boston University School of Law, American Economic Association (2019 & 2020), Georgia Institute of Technology (Policy), NBER Productivity Seminar, University of Michigan (IRIS), University of Connecticut, NYU Crime & Policing Workshop, Society of Labor Economists, APPAM Research Conference, Conference on Empirical Legal Studies (Claremont McKenna)*, Connecticut Racial Profiling Prohibition Advisory Board, Ohio State University (x2), San Diego State University, Simon Fraser University (Policy), Naval Postgraduate School, Claremont Graduate University |
| Pre-2017 | Society of Labor Economists, Urban Economics Association, University at Albany, Ohio State University, APPAM Research Conference, Society of Labor Economists, NBER Summer Institute- Law & Economics 2018, APPAM Research Conference, North American Regional Science Conference, Society of Labor Economists, Western Economic Association, Syracuse University, Urban Economics Association, Southern Economic Association, Ohio State University, Miami University Ohio, Western Economic Association, Boston Federal Reserve Bank, Atlanta Federal Reserve Bank. IZA/CEDEFOP Workshop on Skills and Skill Mismatch, Southern Economic Association, University of Massachusetts Lowell, CT Data Collaborative Conference, CT Racial Profile Advisory Board, CT General Assembly: Methods for an Analysis of Policing Data, Census Bureau: LEHD: Benchmarking Competitiveness in STEM, Boston Foundation, National Neighborhood Indicators Partnership, Urban Institute, NE Sociological Association, CT General Assembly: Econometric Methods for Examining Racial Disparities in CT's State Contracting Process, CT General Assembly: The Connecticut STEM Workforce Pipeline |

External Professional Service

Peer Reviews in Economics: Quarterly Journal of Economics; Journal of Policy Analysis & Management; European Economic Review; Labour Economics; Journal of Human Resources; Journal of Public Economics; Journal of Urban Economics; Journal of Empirical Legal Studies; Research Policy; IZA World of Labour; International Journal of Manpower; PLoS One.

Peer Reviews in Criminology: Criminology & Public Policy; Crime & Delinquency; Journal of Race, Ethnicity, & Politics; American Journal of Criminal Justice.

Grant & Other Reviews: Public Policy Institute of California; Russell Sage Foundation; Sloan Foundation; Criminal Justice Expert Panel.

Program Committee: APPAM Fall Research Conference, 2017, 2021, 2022 (Chair, Science and Technology), 2023 (Chair, Science and Technology); NYU Policing and Crime Workshop 2018 (Organized w/ Ingrid Gould Ellen and Morgan Williams); Eastern Economic Association 2016; University of Massachusetts Lowell Master of Science in Economics Advisory Board.

Memberships: American Economic Association; Association for Public Policy Analysis and Management; Urban Economics Association; Society of Labor Economists; American Association for the Advancement of Science.

Internal Professional Service

Northeastern University: Master of Public Administration Admission Committee (Public Policy, 23-24) Graduate Program Committee (Economics, 23-24); Undergraduate Program Committee (Economics, 22-23); AEFIS Graduate Program Evaluation (Economics); Digital Economies Search Committee (Public Policy); Interdisciplinary Crime Lunch (Public Policy).

Claremont Graduate University: Admissions Committee; PhD/MA Curriculum Program Committee