GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:   (415) 433-6830
Facsimile:    (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone:   (858) 677-1400
Facsimile:    (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone:   (510) 806-7366
Facsimile:    (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br>　　v.<br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br>　　　　Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION NOS. 250-252**<br><br>Date:　April 26, 2024<br>Time:　10:00 a.m.<br>Crtrm.:　Zoom<br><br>Judge:　　　Hon. Anthony J. Battaglia<br>Magistrate:Hon. David D. Leshner<br><br>Trial Date: None Set |

## INTRODUCTION

Plaintiffs' Third Amended Complaint ("TAC") alleges that Defendant San Diego Sheriff's Department ("SDSD") stops, arrests, and incarcerates Black and Latinx individuals at disproportionately high rates. TAC ¶¶ 401-02. For example, in 2020, Black residents made up 5% of the County population but accounted for 16% of all arrestees. *Id.* ¶ 401. Analyzing data provided by the SDSD, the Center for Policing Equity found that Black people were stopped by law enforcement 3.5 times as often as White people. *Id.* Although Black individuals constituted 16% of arrestees in the region, Black individuals accounted for 22% of people incarcerated at the Jail. *Id.* ¶ 402. And although Latinx individuals constituted 35% of arrestees in 2020 in the San Diego region, Latinx individuals accounted for 41% of incarcerated people in September 2022. *Id.* By contrast, White individuals constituted 41% of arrestees in 2020, but accounted for only 31% of people in the Jail—even though 46% of the County's population is White. *Id.*

Plaintiffs retained expert Matthew B. Ross to perform statistical analysis to evaluate whether the known disparities are due to chance or due to factors under SDSD's control. As directed by the Court, and consistent with its December 22, 2023 Order allowing Plaintiffs to serve five RFPs related to the above allegations, Mr. Ross met with the County's Crime and Intelligence Manager, Brent Jordan, for the purpose of identifying and obtaining specific information in Defendants' possession, custody or control. *See* Declaration of Matthew B. Ross ("Ross Decl."), Dkt. 605-1 ¶ 5. Plaintiffs seek data responsive to Requests for Production ("RFPs") 250, 251, and 252 including as identified in the requests drafted by Mr. Ross ("Ross Requests" 1-9). *See* Joint Disc. Status Report ("JSR"), Dkt. 605 at ECF pp. 3-5.

Defendants maintain the data in the Ross Requests, as confirmed by Mr. Ross in his call with Mr. Jordan. *See* Ross Decl., Dkt. 605-1 ¶¶ 6-7; *see also* JSR at ECF p. 11 ("Defendants have the records responsive to these requests"). Yet with only seven weeks left for Mr. Ross to perform his statistical analyses and draft his expert

report in advance of the May 31, 2024 deadline, Defendants have not produced *any* data responsive to Requests for Production ("RFPs") 250, 251, and 252.

## PRESENT DISPUTE

In addition to the data Defendants have already agreed to produce, Plaintiffs seek the following information that is in dispute:

- 911 Call Data [Ross Request 1];
- Badge Number or Unique ID of AI Officer(s) on Scene [Ross Requests 1(c) and 3(c)];
- Use of Force Data [Ross Request 4];
- Non-Personally Identifiable Information About Law Enforcement Officers [Ross Request 5]; and
- Searches of the Narrative Field in the CAD System for Field Sobriety Tests [Ross Request 6], Searches or Frisks [Ross Request 7], or Temporary Detentions [Ross Request 8].

Defendants withhold this data on the grounds that the information is irrelevant and/or will result in inaccurate statistical analyses. Neither objection has merit. The withheld data is plainly relevant to whether SDSD disproportionately arrests and incarcerates Black and Latinx individuals, as alleged in Plaintiffs' Ninth Claim for Discriminatory Impact under California Government Code § 11135. TAC ¶¶ 401-02; **Exhibit A**. And whether incomplete or inaccurate data will affect the statistical results is an issue for the experts to address. Defendants will have an opportunity prior to trial to argue that Mr. Ross' statistical analysis is unreliable and inadmissible —but speculative argument about the potential unreliability of Mr. Ross' yet-to-be-performed tests is not a basis to withhold relevant data.

## ARGUMENT

### I.   LEGAL STANDARD

Federal Rule of Civil Procedure 37(a) authorizes a party to move to compel documents requested under Rule 34 but not produced. Once the moving party establishes that the requested documents are relevant under Rule 26(b)(1), "the party opposing discovery has the burden of showing that the discovery should be

prohibited, and the burden of clarifying, explaining[,] or supporting its objections." *Vega v. Mgmt. & Training Corp.*, No. 21-cv-1770, 2022 WL 17407984, at *2 (S.D. Cal. Dec. 1, 2022) (quoting *Bryant v. Ochoa*, No. 07-cv-200, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal citations omitted)). "The party opposing discovery is 'required to carry a heavy burden of showing' why discovery should be denied." *Vega*, 2022 WL 17407984, at *2 (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

## II. THE DATA IS RELEVANT TO PLAINTIFFS' NINTH CLAIM

The TAC alleges that SDSD officers stop, arrest, and incarcerate Black and Latinx at disproportionately high rates. Dkt. 231 ¶¶ 401-02. Mr. Ross requires the requested data to conduct statistical analysis sufficient for Plaintiffs to make a prima facie showing of disparate impact, as required under California Government Code Section 11135. To make a prima facie showing under this statute, the plaintiff must establish that "the defendant's facially neutral practice causes a disproportionate adverse impact on a protected class." *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 519 (9th Cir. 2011). "The basis for a successful disparate impact claim involves a comparison between two groups—those affected and those unaffected by the facially neutral policy." *Id.* at 519-20 (citation omitted). "An appropriate statistical measure must therefore take into account the correct population base and its racial makeup." *Id.* at 520 citing *Robinson v. Adams*, 847 F.2d 1315, 1318 (9th Cir. 1987).

### A. 911 Call Data [Ross Request 1]

Law enforcement responses to 911 calls, similar to pedestrian and vehicle stops, can result in the arrest and incarceration of people. Ross Decl. ¶ 7. Mr. Ross intends to perform statistical analysis on the 911 call data to evaluate whether Black and Latinx people are more likely to be arrested and incarcerated than people of other races or ethnicities in connection with SDSD responses to 911 calls. *Id.*

### B. Badge Number or Unique ID of All Officer(s) on Scene [Ross Requests 1(c) and 3(c)]

Mr. Ross requests the badge number or other unique identifier for the officer in order to perform statistical analysis tests to evaluate whether particular officers are more likely to use force against and/or arrest people who are Black and Latinx at higher rates than other people. Ross Decl. ¶ 9. As explained in Exhibit A, the data is necessary for Mr. Ross to perform apples-to-apples comparisons by controlling for idiosyncratic variation and to correct standard errors, which will increase precision in testing department-level disparities in outcomes.

### C. Use of Force Data [Ross Request 4]

Mr. Ross' research shows that use of force on a person is an indicator that the person is more likely to be arrested and incarcerated. Ross Decl. ¶ 8. Mr. Ross requires this data to measure, among other things, whether (1) a stop or response to a 911 call leads to use of force; (2) whether Black and Latinx people are more likely to resist or receive force than other individuals; and (3) whether individuals who resist or receive force are more likely to be arrested and incarcerated. *Id.* This will allow Mr. Ross to evaluate whether officers disproportionately use force against and arrest Black and Latinx individuals when controlling for other factors.

### D. Non-Personally Identifiable Information About Law Enforcement Officers [Ross Request 5]

Non-personally identifying demographic information (like race, ethnicity, sex, age, seniority, and LGBTQ+ status) about the officer is necessary to perform statistical analysis tests to evaluate whether officers with particular characteristics are more likely arrest and incarcerate people who are Black and Latinx at higher rates than other people, when controlling for all factors. Ross Decl. ¶ 9. In his evaluation of similar data from other jurisdictions, Mr. Ross has found statistically significant relationships between the officers' race and ethnicity and their likelihood to use force against and/or arrest and incarcerate people who are Black and Latinx at higher rates than other people. *Id.* While this data will not be used to identify any individual

officer's identity, it will allow Mr. Ross to control for heterogeneity, or variations, across different officers, which will increase precision in testing department-level disparities in outcomes.

### E. Searches of the Narrative Field in the CAD System for Field Sobriety Tests [Ross Request 6], Searches or Frisks [Ross Request 7], or Temporary Detentions [Ross Request 8]

Indicators of sobriety tests, searches/frisks, and/or temporary detentions are all discretionary (or at least semi-discretionary) acts by officers that can contribute to an arrest. Mr. Ross requires this data to test whether race or ethnicity is a factor in these officer-initiated actions that can lead to arrest and incarceration. In addition to requesting searches of the CAD system's narrative field for this information, Plaintiffs request another meeting between Mr. Ross and Mr. Jordan to ensure that the search terms contain the codes or shorthand regularly used by SDSD officers.

## III.  DEFENDANTS' OBJECTIONS HAVE NO MERIT

Plaintiffs do not seek officers' "identifying information" or "specific deputy identities." JSR at ECF p. 11, 13; *see also supra* Section II(D). Individual-level data is necessary to increase the precision of Mr. Ross' statistical tests. *See supra* Section II(B), (D). Use of force data is highly relevant to arrests. *See supra* Section II(C). The only other objection Defendants make is that search terms for sobriety tests, searches, frisks, and/or temporary detentions will result in "inaccurate and incomplete" results. JSR at ECF p. 13. Even if true, Mr. Ross' statistical analysis will account for any measurement error. Ross Decl. ¶ 12. The potential impact of inaccurate or incomplete data on the expert's statistical analysis is not a basis to deny discovery; rather, the Court can determine the admissibility of Mr. Ross' analyses at a later time. *Cf.* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Nor will use of search terms require hand-searches to remove non-responsive information; Mr. Jordan confirmed that Defendants can create a dummy variable to indicate a "hit," thereby obviating the need to produce the "narrative" field. Ross Decl. ¶ 10.

| | | |
|---|---|---|
| 1 | DATED: April 12, 2024 | Respectfully submitted, |
| 2 | | |
| 3 | | ROSEN BIEN GALVAN & GRUNFELD LLP |
| 4 | | By: */s/ Van Swearingen* |
| 5 | | Van Swearingen |
| 6 | | Attorneys for Plaintiffs and the Certified Class and Subclasses |

# EXHIBIT A

**One-Sentence Description of the Relevance of Each Disputed Item**

| Disputed Item | Description of Relevance |
|---|---|
| 911 Call Data [Ross Request 1] | Because officer responses to 911 calls often lead to arrests and these arrests make up a meaningful proportion of all SDSD arrests, the 911 call data included in the CAD system is necessary for Mr. Ross to evaluate whether there are disparities by race in these arrests after controlling for factors regarding the circumstances that led to the arrest. |
| Badge Number or Unique ID of All Officer(s) on Scene [Ross Requests 1(c) and 3(c)] | Non-personal officer identifiers (like a badge number or unique ID) are necessary for Mr. Ross to perform apples-to-apples comparisons and increase precision in testing department-level disparities; specifically, the data is necessary to 1) control for the heterogeneity of events involving officers due to idiosyncratic variations across officers (e.g., different shifts, patrol areas, and enforcement behaviors) when evaluating departmental-level disparities, and 2) correct the standard errors and potential violations of assumptions in the hypotheses tests given that there may be a correlation in outcomes between stops involving the same officer. |
| Use of Force Data [Ross Request 4] | Because law enforcement officers are more likely to arrest and book into the jail people who have resisted arrest and/or upon whom they have used force, this data is necessary for Mr. Ross to test whether officers use force disproportionately against Black and Latinx individuals when controlling for other factors. |
| Non-Personally Identifiable Information About Law Enforcement Officers [Ross Request 5] | Non-personally identifying demographic information (like race, ethnicity, sex, age, seniority, and LGBTQ+ status) is necessary for Mr. Ross to evaluate whether there are disparities in arrests by race that are attributable to specific characteristics of types of officers (e.g., Black officers who treat Black subjects more severely than subjects of other races or more junior officers who require more training). |

| Disputed Item | Description of Relevance |
|---|---|
| Searches of the Narrative Field in the CAD System for Field Sobriety Tests [Ross Request 6], Searches or Frisks [Ross Request 7], or Temporary Detentions [Ross Request 8] | Because field sobriety tests, searches/frisks, and/or temporary detentions often increase the likelihood of arrest, Mr. Ross requires this information to test whether an officer is more or less likely to conduct these actions depending on the race/ethnicity of the subject. |