EXHIBIT 1

Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600,
San Diego, CA 92101-8474
Tel: 619.814.5800 Fax: 619.814.6799

Elizabeth M. Pappy (SBN 157069)
E-mail: epappy@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Ste. 1000
San Jose, CA 95113-2336
Tel: 408.606.6300 Fax: 408.606.6333

Attorneys for Defendants
COUNTY OF SAN DIEGO, SAN DIEGO
COUNTY SHERIFF'S DEPARTMENT and
SAN DIEGO COUNTY PROBATION
DEPARTMENT

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**DECLARATION OF BRENT JORDAN IN SUPPORT OF DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION 250-250**<br><br>Judge: Anthony J. Battaglia<br><br>Magistrate Judge David D. Leshner |

///

///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF BRENT JORDAN

I, BRENT JORDAN, declare as follows:

1.      I am a Crime and Intelligence Manager employed by DEFENDANT COUNTY OF SAN DIEGO SHERIFF'S DEPARTMENT.  I have personal knowledge of the facts set forth herein.  If called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration in support of DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION 250-252.

2.      One of my duties is to conduct searches of databases (Computer-Aided Dispatch ("CAD"), Intergraph software, Motorola Report Management System (Net RMS")) that were created and are maintained by the County of San Diego Sheriff's Department ("SDSD") related to both deputy-initiated contacts with members of the public, and contacts with members of the public that occur as a result of private individuals and/or other law enforcement agency initiation (e.g., 9-1-1 calls, citizen flag-downs, non-emergency calls for service, and/or requests for assistance by other law enforcement agencies/personnel).  Database searches are possible using certain parameters.  NetRMS and CAD contain information that relates to all SDSD calls for service, deputy initiated activity, field interviews, use of force, and crime cases.

3.      Personal identifying information of victims, witnesses, and suspects are interspersed within these searchable records. I am informed that privacy protections apply to victims, witnesses, and suspects who are not part of this litigation.

4.      I have reviewed Plaintiffs' Requests for Production ("RFP") Nos. 250-252 which are attached to this Declaration as Attachment 1.

5.      On March 13, 2024, I met with Plaintiffs' expert Matthew B. Ross in a Zoom conference which was also attended by counsels for Plaintiffs and Defendants.  During the conference I explained database search processes and protocols to Mr. Ross.  I also explained that Plaintiffs' RFP Nos. 250-252 were

2

1  overly broad and encompassed largely the entirety of the database materials.  I asked
2  Mr. Ross to provide more detailed information that would have the effect of
3  narrowing the scope of Plaintiffs' overly-generalized requests, such that compliance
4  would be possible.  Mr. Ross described some search criteria he would be requesting,
5  regarding which I informed him that a search based on that criteria would be
6  possible.  I informed Mr. Ross about the limitations and time requirements for
7  keyword searches. Mr. Ross advised that a more particularized search parameters
8  request would be forthcoming.

9       6.     On or about March 14, 2024, I received Mr. Ross's more detailed set of
10  sub-part requests related to RFP Nos. 250-252 from counsel for Defendants which is
11  attached as Attachment 2 to this Declaration.

12      7.     I reviewed Mr. Ross's more detailed set of requests and observed that
13  some of the requested search parameters are beyond the search capabilities of the
14  SDSD databases.  I identified those search requests that are not possible within the
15  searchable database parameters.  Attachment 3 to this Declaration identifies a lined-
16  out list of items that were not provided to Plaintiffs.

17      8.     On or about March 28, 2024, I received and reviewed search terms
18  created by Mr. Ross, which I have attached to this Declaration as Attachment 4.

19      9.     Mr. Ross's search terms are not necessarily those used by law
20  enforcement personnel.  Deputies could use multiple terms for one sort of action
21  (e.g. shorthand, variations of a phrase, or variations of spelling).  Alternatively, they
22  could use the same term for multiple types of actions (e.g. "search" can be used in a
23  number of ways outside of searching an individual such as searching for a person,
24  searching a database, searching a piece of evidence, etc.).  As such, the database
25  search(es) would not yield the records sought, and could result in an over-
26  production of records not relevant to this litigation.  Furthermore, Mr. Ross's search
27  terms would require an inordinate number of person-hours by multiple personnel
28  over a period of weeks/months to hand-search records to cull-out non-requested

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

3

DECLARATION OF BRENT JORDAN IN SUPPORT OF DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION 250-250

1  materials. This request would take 3-5 analysts working approximately 4 to 8 weeks

2  depending on how many cases the search parameters would return.

3      10.    Mr. Ross's search parameter requests would also result in the capture

4  of citizen or other agency-requested calls for service that are not SDSD deputy-

5  initiated.  Deputies under some of those circumstances by-and-large do not have

6  discretion as to whether to make a contact or an arrest, such as in domestic violence

7  situations applicable under California Penal Code section 836(c), or where an

8  individual has an outstanding warrant for their arrest.

9      11.    I am informed that the items that Plaintiffs seek to compel are Ross

10  Request 1(c), 3(c), 4, 5, 6, 7, and 8.

11      12.    Ross Requests 1(c), 3(c), and 5 seek individual deputy identifying

12  information.  The identities of deputies on scene and arresting deputies is

13  maintained by the Sheriff's Department. Identifying information was not provided. I

14  was advised that actions of individual deputies are not at issue in this litigation that

15  only involves San Diego County entities as Defendants.  Mr. Ross's declaration

16  states that he seeks this information to evaluate whether particular officers are more

17  likely to engage in specific actions.

18      13.    Deputy demographic information is maintained in a separate database

19  that is maintained by personnel.

20      14.    Ross Request 4 seeks use of force data.  Certain use of force data is

21  maintained by the Sheriff's Department. Use of force data was not provided. I was

22  advised that use of force in the field is not at issue in this litigation.

23      15.    Ross Request 6 seeks field sobriety test data. The Sheriff's Department

24  does not maintain this data in the manner requested.  Burdens discussed in

25  paragraphs 9 and 10 above identify the concerns of conducting a keyword search to

26  identify this data.

27      16.    Ross Request 7 seeks search and frisk data. The Sheriff's Department

28  does not maintain this data in the manner requested.  Burdens discussed in

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4
DECLARATION OF BRENT JORDAN IN SUPPORT OF DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION 250-250

paragraphs 9 and 10 above identify the concerns of conducting a keyword search to identify this data.

17.    Ross Request 8 seeks temporary detention data. The Sheriff's Department does not maintain this data in the manner requested.  Burdens discussed in paragraphs 9 and 10 above identify the concerns of conducting a keyword search to identify this data.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed on this 19th day of April, 2024, at San Diego, California.


BRENT JORDAN


BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

5
DECLARATION OF BRENT JORDAN IN SUPPORT OF DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION 250-250

# ATTACHMENT 1

GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California  94709
Telephone:  (510) 806-7366
Facsimile:   (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Subclass

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, Plaintiffs, v. SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, Defendants. | Case No. 3:20-cv-00406-AJB-DDL **PLAINTIFFS' SIXTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT** Judge:      Hon. Anthony J. Battaglia Magistrate: Hon. David D. Leshner Trial Date: None Set |

[4409334.1]

PROPOUNDING PARTY:  PLAINTIFFS

RESPONDING PARTY:    DEFENDANTS SAN DIEGO COUNTY SHERIFF'S
DEPARTMENT, COUNTY OF SAN DIEGO, SAN
DIEGO COUNTY PROBATION DEPARTMENT

SET NO.:             SIX (6)

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule 34, Plaintiffs Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner ("Plaintiffs"), on behalf of themselves and all persons similarly situated and the Certified Subclass, by their attorneys, hereby demand that Defendants San Diego County Sheriff's Department, County of San Diego, and San Diego County Probation Department respond under oath to the following document requests, and produce and permit inspection or copying of the original documents and materials described below at Rosen Bien Galvan & Grunfeld LLP, 30 days after service of this demand.

**INSTRUCTIONS**

1.      In responding to this Request for Production of Documents, you are requested to furnish all documents which are in your possession, custody, or control, including information in the possession of your attorneys, or other persons directly or indirectly employed or retained by you, or connected with you or your attorneys, or anyone else acting on your behalf or otherwise subject to your control.

2.      In responding to this Request for Production of Documents, if any responsive document is maintained electronically, the document shall be produced on disc in native format and with metadata intact.  You are also requested to furnish print-outs of documents which may not currently exist in "hard copy" paper form but which exist in electronic form as electronic mail or as a document or file

generated by word processing, data base, or spreadsheet software, and which are stored electronically on a "floppy" disc, a compact disc, a zip drive, a personal computer hard drive, a network server, a back-up tape or disc, text message, or any other electronic medium.

3.    If an electronically-generated document does not currently exist as a "hard copy" and if it has been deleted from the hard drives of personal computers, you are requested to retrieve it from any other electronic medium (e.g., a network server or a backup tape disc) from which it is retrievable.

4.    If you cannot respond to any document request in full, respond to the fullest extent possible, explain why you cannot respond to the remainder, and describe the nature of the documents which you cannot furnish.

5.    If you object to part of a request and refuse to answer that part, state your objection and respond to the remaining portion of that request. If you object to the scope or time period of a request and refuse to respond for that scope or time period, state your objection and respond to the request for the scope or time period you believe is appropriate.

6.    With respect to any requested document that you refuse to produce in response to these Requests for Production on the basis of any asserted privilege, please state:

    a.    the full identity of the document including:

        i.    the nature of the document (e.g., letter, memorandum, etc.);

        ii.    date of the document;

        iii.    its title (if any);

        iv.    its authors, addressees, recipients, or parties;

        v.    the identity of any other individuals to whom the document was disseminated and their relationship to Defendants;

vi.    whether the document includes any attachments and, if so, a description of the attachments; and

vii.    its present location and identity of its custodian;

b.    whether your objection or refusal is directed to the entire document or part thereof;

i.    if your objection or refusal goes to part of the document, specify the specific part(s) of the document to which your objection or refusal is directed; and

ii.    the specific factual basis which gives rise to the objection or refusal and the specific legal ground on which the objection or refusal is based.

7.    If any of the following requested documents cannot be located or produced after exercising due diligence to secure the information, please so state and respond to the extent possible, specifying your inability to respond fully, and stating whatever information you have relating to the non-produced documents. If your response is qualified in any particular manner, please set forth the details of such qualification.

## DEFINITIONS

Unless otherwise indicated, the following definitions and terms shall apply to these requests for production:

1.    The terms "ANY" and "ALL," as used herein, shall include "each" and "every" and are not to be construed to limit a request.

2.    The term "ADA" means the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* as well as related federal and state laws that require accommodation of disabilities and prohibit discrimination on the basis of disability.

3.    The term "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic

mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including an Android or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, text messages, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X, Zoom, and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

4.    The term "CONTRACTOR" includes any individual or entity, or an EMPLOYEE of the same, who is hired, retained, or otherwise authorized by YOU to undertake any task, service, role, or job on YOUR behalf.  The term includes but is not limited to NaphCare, Inc. and NaphCare of San Diego, LLC.

5.    The term "COUNTY" means Defendant San Diego County and anyone acting on its behalf.

6.    The term "CURRENT" means in effect and not superseded and/or issued on or after January 1, 2022.

7.    The term "DEATH(S)" means the action or fact of dying or being killed, including by suicide.

8.    The terms "DEFENDANTS," "YOU," or "YOUR" means the San Diego County Sheriff's Department, San Diego County, and the San Diego County Probation Department, and anyone acting on their behalf.

9.    The terms "DISABILITY" and "DISABILITIES" mean any physical, cognitive, developmental, intellectual, mental, or sensory impairment that limits one or more major life activities, including but not limited to, eating, sleeping, speaking, breathing, walking, standing, lifting, bending, thinking, concentrating, seeing, hearing, working, reading, learning, communicating, caring for oneself, and

1  performing manual tasks, as well as the operation of major bodily functions such as

2  circulation, reproduction, and the functioning of individual organs.  The terms also

3  include having a history or record of such impairment or being perceived by others

4  as having such an impairment.

5       10.    The term "DOCUMENT" means any writing, however produced or

6  reproduced, of every kind and regardless of where located, which is in YOUR

7  possession, custody, or control, including drafts; or in the possession, custody, or

8  control of any servant or agent of YOU or of YOUR attorneys.  The terms include

9  the following: electronically recorded information such as electronic mail, html

10  files, databases, data processing cards or tapes, computerized data, computer

11  diskettes, or information otherwise contained on a computer's hard drive, disks or

12  backup tapes; video tapes, audio tapes, view-graphs, or any information maintained

13  on digital, electronic, magnetic or other media; and any other summary, schedule,

14  memorandum, note, statement, letter, telegram, interoffice communication, report,

15  diary, worksheet, list, graph, chart, or index, tape record, partial or complete report

16  of telephone or oral conversation, transcript or minutes, compilation, tabulation,

17  study, analysis, or other such writing or recording.  The terms "DOCUMENT" and

18  "DOCUMENTS" include any originals, all file copies, all other copies, no matter

19  how prepared, and all drafts prepared in connection with such DOCUMENTS,

20  whether or not used, as well as the file in which the DOCUMENTS are maintained.

21  A draft or non-identical copy of a DOCUMENT, including a copy or duplicate of a

22  DOCUMENT which has any nonconforming notes, marginal annotations or other

23  markings, and any preliminary version, draft or revision of the foregoing, is a

24  separate DOCUMENT within the meaning of these terms.  The term

25  "DOCUMENT" does not include any writing that constitutes a privileged or

26  otherwise protected communication between YOU and YOUR attorneys.

27       11.    The term "EMPLOYEE" means any employee, director, officer, owner,

28  CONTRACTOR, agent, or any other person working for or on behalf of an entity,

such as the COUNTY, the SHERIFF'S DEPARTMENT, or the PROBATION DEPARTMENT.

12.    The term "EOH" means Enhanced Observation Housing, as defined in SHERIFF'S DEPARTMENT Detention Policy & Procedure J.4.

13.    The term "GRIEVANCE" means a written complaint completed by or on behalf of an INCARCERATED PERSON.

14.    The term "HEALTH CARE" means the provision of care or services, to identify and/or address health needs of an INCARCERATED PERSON in the JAIL (including medical, mental health, dental care, and vision care needs), whether those needs arise as a result of injury, illness, disease, age, trauma, care or services provided for diagnostic or preventive purposes.

15.    The term "HEALTH CARE STAFF" means any person or entity providing HEALTH CARE services, or providing administrative and/or support services related to HEALTH CARE at the JAIL.

16.    The terms "INCARCERATED PERSON(S)" or "INCARCERATED PEOPLE" mean any person incarcerated, detained, or in the custody of the SHERIFF'S DEPARTMENT.

17.    "IDENTIFY," with respect to an INCARCERATED PERSON or formerly INCARCERATED PERSON, means to state the INCARCERATED PERSON's full name, booking number, date of birth, booking date, and CURRENT housing location (if still in custody) or date of release (if no longer in custody).

18.    "IDENTIFY," with respect to a non-INCARCERATED PERSON, means to state the person's name, professional title, credentials and licensing information if applicable, and professional address.

19.    The term "JAIL" means the San Diego County Jail, including all of its facilities.

20.    The term "MENTAL DISORDER" means any condition diagnosable on Axis I or Axis II per the *Diagnostic and Statistical Manual of Mental Disorders*

1   (5th ed.) or that substantially impairs cognitive functioning or psychological

2   wellbeing.

3       21.    The term "MENTAL HEALTH CARE" means the provision of care or

4   services, to identify and/or address the mental health needs of an INCARCERATED

5   PERSON in the JAIL, whether those needs arise as a result of injury, illness,

6   disease, age, or trauma, or care or services provided for diagnostic or preventive

7   purposes.

8       22.    The term "MOB" means Medical Observation Bed, as defined in

9   SHERIFF'S DEPARTMENT Medical Services Division Policy & Procedure M-13.

10      23.    The term "PLAINTIFFS" means Plaintiffs Darryl Dunsmore, Andree

11  Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna

12  Levy, Josue Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares,

13  Gustavo Sepulveda, Michael Taylor, and Laura Zoerner.

14      24.    The term "POLICIES AND PROCEDURES" means policies,

15  procedures, handbooks, advice, directives, training materials, forms, instructions,

16  and guidelines that comprise established standards, regardless of the author.

17      25.    The term "PROBATION DEPARTMENT" means Defendant San

18  Diego County Probation Department and anyone acting on its behalf.

19      26.    The term "PSU" means Psychiatric Stabilization Unit or Psychiatric

20  Security Unit, as defined in SHERIFF'S DEPARTMENT Detention Policy

21  & Procedure M.25.

22      27.    The terms "RELATED TO," "RELATING TO," or "REGARDING"

23  means, without limitation, anything that, in whole or in part, analyzes, comments

24  upon, comprises, concerns, constitutes, contains, describes, discusses, embodies,

25  evidences, explains, identifies, manifests, mentions, pertains to directly or indirectly

26  to, reflects, refers to, regards, relates to, responds to, states, summarizes, or in any

27  way relevant to the particular subject matter identified.

28      28.    The term "SAFETY CELL" means a temporary housing cell with a

1  padded surface, as defined in SHERIFF'S DEPARTMENT Detention Policy

2  & Procedure J.1.

3    29. The term "SHERIFF'S DEPARTMENT" means Defendant San Diego

4  County Sheriff's Department and anyone acting on its behalf.

5    30. The term "SOBERING CELL" means JAIL cells used to house

6  INCARCERATED PERSONS away from other INCARCERATED PERSONS for

7  the specific purposes of detoxification or sobering up; the term includes sobering

8  cells and detoxification cells.

9    31. The term "STAFFING PLAN" means any DOCUMENT showing the

10  minimum number and types of EMPLOYEES DEFENDANTS intend to work in the

11  JAIL and the minimum number of hours DEFENDANTS intend those

12  EMPLOYEES to work to staff the JAIL, including EMPLOYEES of

13  CONTRACTORS.

14    32. The words "and" and "or" should be construed disjunctively or

15  conjunctively as necessary to make the Request inclusive rather than exclusive.

16    33. Unless otherwise indicated, the time period for each one of these

17  requests is January 1, 2021 to present.

18          **REQUESTS FOR PRODUCTION**

19  **REQUEST FOR PRODUCTION NO. 248:**

20    ALL POLICIES AND PROCEDURES RELATING TO patrol locations,

21  documentation and reporting requirements of staff on patrol, electronic records used

22  by patrol staff including criminal history records, calls for service (i.e. 911 calls),

23  and consideration of a person's race or ethnicity, including POLICIES AND

24  PROCEDURES RELATING TO discrimination or antidiscrimination.

25  **REQUEST FOR PRODUCTION NO. 249:**

26    ALL POLICIES AND PROCEDURES RELATING TO officer-initiated field

27  contacts, searches, stops, questioning of individuals, arrests, releasing arrestees,

28  taking a person into custody, bringing an arrestee to a jail, and bookings by the

1 | Sheriff's Department.

2 | **REQUEST FOR PRODUCTION NO. 250:**

3 | ALL electronic datasets of officer-initiated field contacts (i.e. traffic and

4 | pedestrian stops), searches, arrests, use of force, and criminal charges, from

5 | January 1, 2021 to the present.

6 | **REQUEST FOR PRODUCTION NO. 251:**

7 | ALL electronic datasets of criminal incident reports, from January 1, 2021 to

8 | the present.

9 | **REQUEST FOR PRODUCTION NO. 252:**

10 | ALL electronic datasets of calls for service (i.e. 911 calls) and associated

11 | dispatch logs, from January 1, 2021 to the present.

12 |

13 | DATED:  December 21, 2023        ROSEN BIEN GALVAN & GRUNFELD LLP

14 |

15 | By: */s/ Van Swearingen*
      Van Swearingen

16 | Attorneys for Plaintiffs and the

17 | Certified Subclass

[4409334.1]

10

Case No. 3:20-cv-00406-AJB-DDL

PLS' SIXTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFS. SAN DIEGO COUNTY
SHERIFF'S DEP'T, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEP T

# PROOF OF SERVICE

***Dunsmore et al. v. San Diego County Sheriff's Dept., et al.***
**Case No. 20-cv-00406 AJB DDL**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 101 Mission Street, Sixth Floor, San Francisco, CA 94105-1738.

On December 21, 2023, I served true copies of the following document(s) described as:

**PLAINTIFFS' SIXTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address lnewfeld@rbgg.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 21, 2023, at San Francisco, California.

_____
I. Lindsay Newfeld

[4409349.1]

1

1

**SERVICE LIST**
*Dunsmore et al. v. San Diego County Sheriff's Dept., et al.*
**Case No. 20-cv-00406 AJB DDL**

2

3  BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600
4  San Diego, CA 92101

5  Susan E. Coleman
(SColeman@bwslaw.com)
6  Terri Mehra
(TMehra@bwslaw.com)
7  Diana Favela
(DFavela@bwslaw.com)

8

BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Suite 1000
San Jose, CA 95113-2336

Elizabeth M. Pappy
(EPappy@bwslaw.com)
Lucy Gonzalez
(LGonzalez@bwslaw.com)

9  BURKE, WILLIAMS & SORENSEN, LLP
1 California Street, Suite 3050
10  San Francisco, CA 94111-5432

11  Salayha K. Ghoury
(SGhoury@bwslaw.com)

12

OFFICE OF COUNTY COUNSEL,
COUNTY OF SAN DIEGO
1600 Pacific Highway, Room 355
San Diego, CA 92101-2469

Fernando Kish
(Fernando.Kish@sdcounty.ca.gov)
Steven Inman
(Steven.Inman@sdcounty.ca.gov)

13

14  Attorneys for Defendants County of San Diego, San Diego County Sheriff's
Department, and San Diego County Probation Department

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[4409349.1]

# ATTACHMENT 2

(1) <u>Computer-Aided Dispatch</u> (CAD, Intergraph software) data export in CSV format containing the following information:
    a.  Event type (deputy-initiated event, call for service etc.)
    b.  Dates/times associated with incident (occurrence, reported, assigned/dispatched, responded, cleared etc.)
    c.  Badge number or unique ID of all officer(s) on scene
    d.  Location of event (e.g. approximate latitude/longitude or street address)
    e.  Reason for the event (including principle statute motivating event, if available)
    f.  Civil charges statute(s) resulting from event and disposition for each charge (for speeding tickets, include posted/actual speed if available)
    g.  Criminal charge statute(s) resulting from event and disposition for each charge
    h.  Unique IDs to link to additional requested datasets, i.e. criminal incident (RMS), arrest records, force, field sobriety, temporary detainment, and frisk/search.
     i.  Priority of response
    j.  Whether arrest was made

(2) <u>Records Management System</u> (RMS, Motorola) data export in CSV format containing the following information:
    a.  Dates/times associated with incident (occurrence, reported, assigned/dispatched, responded, cleared etc.)
    b.  Location of event (e.g. approximate latitude/longitude or street address)
    c.  Type of crime (including criminal charge statute(s) resulting from event and disposition for each charge)
    d.  Any/all available non-PII information associated with victims, suspects, witnesses, and perpetrators.
    e.  Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), arrest records, force, field sobriety, temporary detainment, and frisk/search.

(3) <u>Arrest Records</u> data export in CSV format containing the following information:
    a.  Date/time of arrest
    b.  Location of arrest (e.g. approximate latitude/longitude or street address)
    c.  Badge number of arresting officer(s)
    d.  Criminal charge statute(s) resulting from event and disposition for each charge
    e.  Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(4) <u>Use of Force</u> data export in CSV format containing the following information:
    a.  Any/all available records on use of force under the current force reporting policy
    b.  Date/time of incident
    c.  Location of arrest Location of event (e.g. approximate latitude/longitude or street address)
    d.  Badge number or unique ID of officer(s)
    e.  Type of force applied (response to resistance sequence if available)
    f.  All available demographics of citizens involved.
    g.  Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(5) <u>Human Resource Records</u> data export in CSV format containing the following information:
    a.  Unique officer identifiers (e.g., badge number) that can be linked to the CAD and RMS
    b.  Any/all available non-PII demographic information for officer(s).

(6) <u>Field Sobriety Tests</u> data export in CSV format containing the following information:
    a.  Any/all available records on field sobriety tests
    *If unavailable as a standalone dataset, a binary indicator variable based on a keyword search of the incident narratives.*
    b.  Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(7) <u>Search/Frisk</u> data export in CSV format containing the following information:
    a.  Any/all available records on search and frisks performed in the field.
    *If unavailable as a standalone dataset, a binary indicator variable based on a keyword search of the incident narratives.*
    b.  Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(8) <u>Temporary Detentions</u> data export in CSV format containing the following information:
    a.  Any/all available records on temporary detentions of 849 codes.
    *If unavailable as a standalone dataset, a binary indicator variable based on a keyword search of the incident narratives.*
    b.  Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(9) <u>RIPA</u> data export in CSV format containing the following information:
    a.  All data collected including any available linkages to CAD or RMS administrative data

# ATTACHMENT 3

The following is what will be provided in response to Nos. 250, 251 and 252:

(1) <u>Computer-Aided Dispatch</u> (CAD, Intergraph software) data export in CSV format containing the following information:

    a. Event type ~~(deputy-initiated event, call for service etc.)~~

    b. Dates/times associated with incident ~~(occurrence, reported, assigned/dispatched, responded, cleared etc.)~~

    ~~c. Badge number or unique ID of all officer(s) on scene~~

    d. Location of event (e.g. approximate latitude/longitude ~~or street address~~)

    e. Reason for the event (including principle statute motivating event, if available)

    ~~f. Civil charges statute(s) resulting from event and disposition for each charge (for speeding tickets, include posted/actual speed if available)~~

    ~~g. Criminal charge statute(s) resulting from event and disposition for each charge~~

    h. Unique IDs ~~to link to additional requested datasets, i.e. criminal incident (RMS), arrest records, force, field sobriety, temporary detainment, and frisk/search.~~ <span style="color:red">(E#)</span>

    i. Priority of response

    ~~j. Whether arrest was made~~

    • <span style="color:red">Providing Deputy Initiated Activity (pedestrian and vehicle stop) CAD only</span>

(2) <u>Records Management System</u> (RMS, Motorola) data export in CSV format containing the following information:

    a. Dates/times associated with incident ~~(occurrence, reported, assigned/dispatched, responded, cleared etc.)~~

    b. Location of event (e.g. approximate latitude/longitude ~~or street address~~)

    c. Type of crime (including criminal charge statute(s) ~~resulting from event and disposition for each charge~~)

    d. Any/all available non-PII information associated with victims, suspects, ~~witnesses, and perpetrators.~~

    e. Unique IDs ~~to link to additional requested datasets, i.e. computer-aided dispatch (CAD), arrest records, force, field sobriety, temporary detainment, and frisk/search.~~ <span style="color:red">(CN and E#)</span>

    • <span style="color:red">The provided RMS cases will be linked to the E#'s provided in #1.</span>

(3) <u>Arrest Records</u> data export in CSV format containing the following information:

    a. Date/time of arrest

    b. Location of arrest (e.g. approximate latitude/longitude ~~or street address~~)

    ~~c. Badge number of arresting officer(s)~~

    d. Criminal charge statute(s) ~~resulting from event and disposition for each charge~~

    e. Unique IDs ~~to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records~~ <span style="color:red">(CN, E#, and arrest #).</span>

    • <span style="color:red">The provided arrest records will be linked to the E#'s provided in #1.</span>

4 – 8 either will not be provided (HR and Use of Force), don't exist or will generate inaccurate results (searching narratives with search terms).

9 is being provided through your PRA request.

We are running the results as of today and it will take 2 weeks.

# ATTACHMENT 4

1.  Field Sobriety Tests- eleven separate binary indicator variables for the presence of the following keywords: "field sobriety" or "FST" or "SFST", "operating under the influence" or "OUI", "driving under the influence" or "DUI", "impaired operation" or "impaired driving", "Bood Alcohol Content" or "BAC", "Horizontal Gaze" or "Nystagmus", "Walk-and-Turn" or "Walk and Turn", "heel-to-toe" or "heel to toe", "one-leg-stand" or "one leg stand", "breathalyzer" or "breath test" or "PBT", "alcohol screening" or "PAS".

2.  Search/Frisk- nine binary indicator variables for the presence of the following keywords: "search", "contraband", "inventory search", "search incident to arrest", "consent search", "probable cause search", "reasonable suspicion search", "frisk", "pat down" or "pat-down".

3.  Temporary Detentions: six binary indicator variables for the presence of the following keywords: "849", "detention", "handcuff", "vehicle exit" or "exit vehicle", "PlastiCuffs" or "FlexiCuffs" or "FlexCuffs" or "Plasti Cuffs" or "Flexi Cuffs" or "Flex Cuffs" or "Zip Cuffs", "Cuffs"

EXHIBIT 2

1  Deann R. Rivard (SBN 177482)
   E-mail:  drivard@bwslaw.com
2  BURKE, WILLIAMS & SORENSEN, LLP
   444 South Flower Street, Ste. 2400
3  Los Angeles, CA  90071-2953
   Tel:  213.236.0600 Fax:  213.236.2700
4
   Attorneys for Defendants
5  COUNTY OF SAN DIEGO, SAN DIEGO
   COUNTY SHERIFF'S DEPARTMENT and SAN DIEGO COUNTY
6  PROBATION DEPARTMENT

7

8                 UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10

11  DARRYL DUNSMORE, ANDREE            Case No. 3:20-cv-00406-AJB-DDL
    ANDRADE, ERNEST ARCHULETA,
12  JAMES CLARK, ANTHONY              **DECLARATION OF DEANN R.**
    EDWARDS, LISA LANDERS,           **RIVARD IN SUPPORT OF**
13  REANNA LEVY, JOSUE LOPEZ,        **DEFENDANTS' RESPONSE IN**
    CHRISTOPHER NELSON,              **OPPOSITION TO PLAINTIFFS'**
14  CHRISTOPHER NORWOOD, JESSE       **MOTION TO COMPEL FURTHER**
    OLIVARES, GUSTAVO                **DISCOVERY RESPONSES RE**
15  SEPULVEDA, MICHAEL TAYLOR,       **PLAINTIFFS' REQUESTS FOR**
    and LAURA ZOERNER, on behalf of  **PRODUCTION NOS. 250-252**
16  themselves and all others similarly
    situated,                         Judge:  Anthony J. Battaglia
17                                    Magistrate Judge David D. Leshner
18  Plaintiffs,

19  v.

20  SAN DIEGO COUNTY SHERIFF'S
         DEPARTMENT,
21       COUNTY OF SAN
         DIEGO, SAN DIEGO
22       COUNTY PROBATION
         DEPARTMENT, and
23       DOES 1 to 20, inclusive,

24

25       I, DEANN R. RIVARD, declare as follows:

26       1.    I have personal knowledge of the information set forth below, except

27  those things set forth on information and belief, and as to those things, I believe

28  them to be true.

2.    I have reviewed Plaintiffs' discovery Request for Production of Records ("RFP") (Set Six).

3.    I have reviewed emails sent between the parties' counsels in this litigation that were sent in reference to RFP Set Six meet and confers regarding database searches relative to potential for document production compliance. Included in those records of correspondence are a list of sub-parts to RFP Nos. 250-252 compiled by Plaintiffs' expert Mr. Matthew B. Ross, line item responses to Mr. Ross's sub-parts list created by San Diego County Defendants' expert Mr. Brent Jordan and counsel, and a search terms list compiled by Mr. Ross and sent to counsel for County Defendants.

4.    Attached hereto as Attachment 1 to this Declaration is a PDF copy of the emails exchanged that are referenced in ¶ 3.

5.    As part of my work on this case, I conducted a search of the Third Amended [Operative] Complaint ("TAC") in the instant matter, using the term "force."  The paragraphs which used the word "force" were as follows:  ¶¶ 249, 289, 292, 293, 349, and 351, which refer to either *Jail policy* regarding force options, or force alleged to have been used against *incarcerated persons within San Diego County jails*.

6.    I have to-date deposed the following Plaintiffs in the instant matter: ERNEST ARCHULETA, JAMES CLARK, REANNA LEVY, LAURA ZOERNER, JOSUE LOPEZ, AND MICHAEL TAYLOR.  None were arrested by SDSD deputies working patrol in the field preceding the relevant incarceration(s) in SDSD jail facilities.  Rather, each was arrested by municipal agencies who thereafter took the Plaintiff-arrestee to the SDSD jail facility for booking/incarceration pending resolution of the basis for the arrest.  The only potential exception thus far is Plaintiff Zoerner, who is identified as White in official records, turned herself in to San Diego County Probation on one occasion for an outstanding bench warrant.

1   ///

2   ///

3          I declare under penalty of perjury under the laws of the United States that the

4   foregoing is true and correct.

5          Executed this 19th day of April, 2024.

6                                          ___/s/ *Deann R. Rivard*___

7                                          DEANN R. RIVARD

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**From:** Van Swearingen <VSwearingen@rbgg.com>
**Sent:** Wednesday, March 27, 2024 8:53 PM
**To:** Pappy, Elizabeth M. <EPappy@bwslaw.com>; Coleman, Susan E. <SColeman@bwslaw.com>
**Cc:** Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Subject:** RE: Datasets requested for RFPs 250, 251, and 252 [IMAN-DMS.FID55015]

[EXTERNAL]

Hi Beth,

Plaintiffs' expert disagrees with your contention that the use of search terms will result in "completely inaccurate information." Below are the search terms Plaintiffs' expert asks to be applied to incident narratives and CAD notes:

1. Field Sobriety Tests- eleven separate binary indicator variables for the presence of the following keywords: "field sobriety" or "FST" or "SFST", "operating under the influence" or "OUI", "driving under the influence" or "DUI", "impaired operation" or "impaired driving", "Bood Alcohol Content" or "BAC", "Horizontal Gaze" or "Nystagmus", "Walk-and-Turn" or "Walk and Turn", "heel-to-toe" or "heel to toe", "one-leg-stand" or "one leg stand", "breathalyzer" or "breath test" or "PBT", "alcohol screening" or "PAS".

2. Search/Frisk- nine binary indicator variables for the presence of the following keywords: "search", "contraband", "inventory search", "search incident to arrest", "consent search", "probable cause search", "reasonable suspicion search", "frisk", "pat down" or "pat-down".

3. Temporary Detentions: six binary indicator variables for the presence of the following keywords: "849", "detention", "handcuff", "vehicle exit" or "exit vehicle", "PlastiCuffs" or "FlexiCuffs" or "FlexCuffs" or "Plasti Cuffs" or "Flexi Cuffs" or "Flex Cuffs" or "Zip Cuffs", "Cuffs"

Our expert also asked for another conference with Mr. Jordan to identify whether there are any special department specific codes used by Deputies as short hand for field sobriety tests, search/frisk, and temporary detentions. For instance, Plaintiffs' expert understands from the call with Mr. Jordan that the department keeps data on temporary detentions under the code "849." Understanding whether there are any other such codes would improve the accuracy of the search terms.

Thank you,
Van


**From:** Van Swearingen
**Sent:** Friday, March 22, 2024 5:05 PM
**To:** Pappy, Elizabeth M. <EPappy@bwslaw.com>; Coleman, Susan E. <SColeman@bwslaw.com>
**Cc:** Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Subject:** RE: Datasets requested for RFPs 250, 251, and 252

My last email did not reference agreements by or with Mr. Jordan; the last three bullets are statements from Wednesday's meet and confer among counsel. We will add this to the M&C agenda for this upcoming Wednesday. If we cannot reach agreement, we will ask for Judge Leshner's help. Thanks.

**From:** Pappy, Elizabeth M. <EPappy@bwslaw.com>
**Sent:** Friday, March 22, 2024 3:06 PM

**To:** Van Swearingen <VSwearingen@rbgg.com>; Coleman, Susan E. <SColeman@bwslaw.com>
**Cc:** Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Subject:** RE: Datasets requested for RFPs 250, 251, and 252

[EXTERNAL MESSAGE NOTICE]
You keep referencing agreements made by an employee of the Sheriff's Department in a meet and confer. There were no such agreements. The employee and Ms. Coleman will state otherwise.

Deputy identifies are private and unnecessary and that includes HR information. Your claim is as to department policing and not an individual officer's policing.

You need to re-read your specific document requests. Regardless of what your expert wants or what Mr. Jordan said might be available, you are still bound by your requests and the pleadings. As I have repeatedly told you, there is no basis for use of force information based upon your complaint.

No need to draft search terms because we have determined that it will not work well and result in completely inaccurate information. I doubt your expert would want what we know will be inaccurate information. You can never capture all the word's deputies use. It would require a review of every single narrative which is not proportional to the needs of the case.

We will be producing what I have indicated, and I suggest you review it to see what you think you are still missing once you get it. My client and I have spent weeks meeting to figure out what can and will be produced, taken into consideration the requests by your experts and our agreement is what I have outlined below.

Thank you.

Elizabeth M. Pappy | Partner
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA  95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com


BURKE, WILLIAMS & SORENSEN, LLP

The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

**From:** Van Swearingen <VSwearingen@rbgg.com>
**Sent:** Friday, March 22, 2024 2:39 PM
**To:** Pappy, Elizabeth M. <EPappy@bwslaw.com>; Coleman, Susan E. <SColeman@bwslaw.com>

**Cc:** Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Subject:** RE: Datasets requested for RFPs 250, 251, and 252

[EXTERNAL]

Hi Beth,

We understand from the conversation with Mr. Jordan that the below information exists.  Please let us know the specific bases for withholding the following each of the following:

- 1(c) Badge number or unique ID of all officer(s) on scene
- 1(f) Civil charges statute(s) resulting from event and disposition for each charge (for speeding tickets, include posted/actual speed if available)
- 1 (generally) - all data other than pedestrian and vehicle stops
- 3(c) Badge number of arresting officer(s)
- 4 Use of Force data
- 5 Human Resource Records
- 6-8: searches of the narratives

We understand from Wednesday's call that Defendants:

- would produce dataset 4 (Use of Force Data)
- would see whether non-identifiable demographic information for officers is available re dataset 5
- asked Plaintiffs to confer with their expert to see if he can propose search terms for the narratives called for in datasets 6-8 without the benefit of a follow-up meeting with Mr. Jordan, and if not possible, the parties would schedule a follow-up meeting.

On the last bullet point, Plaintiffs' expert is drafting search terms and has asked for a follow-up conversation with Mr. Jordan in order to, at minimum, discuss whether there are codes and/or shorthand used by SDSD for certain events described in the narratives.

Thank you,
Van

**From:** Pappy, Elizabeth M. <EPappy@bwslaw.com>
**Sent:** Friday, March 22, 2024 10:16 AM
**To:** Van Swearingen <VSwearingen@rbgg.com>; Coleman, Susan E. <SColeman@bwslaw.com>
**Cc:** Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Subject:** RE: Datasets requested for RFPs 250, 251, and 252 [IMAN-DMS.FID55015]

[EXTERNAL MESSAGE NOTICE]

The following is what will be provided in response to Nos. 250, 251 and 252:

    (1) <u>Computer-Aided Dispatch</u> (CAD, Intergraph software) data export in CSV format containing the following information:

        a.   Event type ~~(deputy- initiated event, call for service etc.)~~

        b.   Dates/times associated with incident ~~(occurrence, reported, assigned/dispatched, responded, cleared etc.)~~

        ~~c.   Badge number or unique ID of all officer(s) on scene~~

    d.   Location of event (e.g. approximate latitude/longitude ~~or street address~~)
    e.   Reason for the event (including principle statute motivating event, if available)
    ~~f.   Civil charges statute(s) resulting from event and disposition for each charge (for speeding tickets, include posted/actual speed if available)~~
    ~~g.   Criminal charge statute(s) resulting from event and disposition for each charge~~
    h.   Unique IDs ~~to link to additional requested datasets, i.e. criminal incident (RMS), arrest records, force, field sobriety, temporary detainment, and frisk/search.~~ <span style="color:red">(E#)</span>
      i.   Priority of response
    ~~j.   Whether arrest was made~~
    • <span style="color:red">Providing Deputy Initiated Activity (pedestrian and vehicle stop) CAD only</span>

(2) <u>Records Management System</u> (RMS, Motorola) data export in CSV format containing the following information:
    a.   Dates/times associated with incident (~~occurrence, reported, assigned/dispatched, responded, cleared etc.~~)
    b.   Location of event (e.g. approximate latitude/longitude ~~or street address~~)
    c.   Type of crime (including criminal charge statute(s) ~~resulting from event and disposition for each charge~~)
    d.   Any/all available non-PII information associated with victims, suspects, ~~witnesses, and perpetrators.~~
    e.   Unique IDs ~~to link to additional requested datasets, i.e. computer-aided dispatch (CAD), arrest records, force, field sobriety, temporary detainment, and frisk/search.~~ <span style="color:red">(CN and E#)</span>
    • <span style="color:red">The provided RMS cases will be linked to the E#'s provided in #1.</span>

(3) <u>Arrest Records</u> data export in CSV format containing the following information:
    a.   Date/time of arrest
    b.   Location of arrest (e.g. approximate latitude/longitude ~~or street address~~)
    ~~c.   Badge number of arresting officer(s)~~
    d.   Criminal charge statute(s) ~~resulting from event and disposition for each charge~~
    e.   Unique IDs ~~to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records~~ <span style="color:red">(CN, E#, and arrest #).</span>
    • <span style="color:red">The provided arrest records will be linked to the E#'s provided in #1.</span>

4 – 8 either will not be provided (HR and Use of Force), don't exist or will generate inaccurate results (searching narratives with search terms).

9 is being provided through your PRA request.

We are running the results as of today and it will take 2 weeks.

Thank you.

**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA 95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333

epappy@bwslaw.com | vCard | bwslaw.com



The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

**From:** Van Swearingen <VSwearingen@rbgg.com>
**Sent:** Thursday, March 14, 2024 12:47 PM
**To:** Pappy, Elizabeth M. <EPappy@bwslaw.com>; Coleman, Susan E. <SColeman@bwslaw.com>
**Cc:** Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Subject:** Datasets requested for RFPs 250, 251, and 252 [IMAN-DMS.FID55015]

[EXTERNAL]

Hi Beth and Susan,

Thanks again for helping arrange yesterday's meeting between Crime Intelligence Manager Brent Jordan and Mr. Ross.  It was great to get the experts to talk to each other.  The conversation identified which databases contain information responsive to RFPs 250-252 as well as how the databases have fields for unique IDs that link to other databases that contain responsive information.  As discussed with Mr. Jordan, if data does not exist for numbers 6-8 below, we understand that Mr. Jordan and our expert can compile a search terms list for the narrative portion that could indicate whether a search, frisk, detention, or field sobriety test was involved in a given event.  Mr. Ross drafted the below requests based on the conversation with Mr. Jordan, although Plaintiffs have not been provided a list of all variables associated with each dataset.  Mr. Ross also drafted the below with the intention to not require production of personally identifiable information that would require redaction, which Mr. Jordan said would be a time consuming task.  Please let us know if you have any questions about the below.  If not, please confirm whether Defendants will produce the below data, and if so, when.  Thank you,
Van


   (1) <u>Computer-Aided Dispatch</u> (CAD, Intergraph software) data export in CSV format containing the following information:
      a.  Event type (deputy-initiated event, call for service etc.)
      b.  Dates/times associated with incident (occurrence, reported, assigned/dispatched, responded, cleared etc.)
      c.  Badge number or unique ID of all officer(s) on scene
      d.  Location of event (e.g. approximate latitude/longitude or street address)
      e.  Reason for the event (including principle statute motivating event, if available)
      f.  Civil charges statute(s) resulting from event and disposition for each charge (for speeding tickets, include posted/actual speed if available)
      g.  Criminal charge statute(s) resulting from event and disposition for each charge

h.  Unique IDs to link to additional requested datasets, i.e. criminal incident (RMS), arrest records, force, field sobriety, temporary detainment, and frisk/search.
  i.   Priority of response
j.   Whether arrest was made

(2)  Records Management System (RMS, Motorola) data export in CSV format containing the following information:
      a.  Dates/times associated with incident (occurrence, reported, assigned/dispatched, responded, cleared etc.)
      b.  Location of event (e.g. approximate latitude/longitude or street address)
      c.  Type of crime (including criminal charge statute(s) resulting from event and disposition for each charge)
      d.  Any/all available non-PII information associated with victims, suspects, witnesses, and perpetrators.
      e.  Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), arrest records, force, field sobriety, temporary detainment, and frisk/search.

(3)  Arrest Records data export in CSV format containing the following information:
      a.  Date/time of arrest
      b.  Location of arrest (e.g. approximate latitude/longitude or street address)
      c.  Badge number of arresting officer(s)
      d.  Criminal charge statute(s) resulting from event and disposition for each charge
      e.  Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(4)  Use of Force data export in CSV format containing the following information:
      a.  Any/all available records on use of force under the current force reporting policy
      b.  Date/time of incident
      c.  Location of arrest Location of event (e.g. approximate latitude/longitude or street address)
      d.  Badge number or unique ID of officer(s)
      e.  Type of force applied (response to resistance sequence if available)
      f.  All available demographics of citizens involved.
      g.  Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(5)  Human Resource Records data export in CSV format containing the following information:
      a.  Unique officer identifiers (e.g., badge number) that can be linked to the CAD and RMS
      b.  Any/all available non-PII demographic information for officer(s).

(6)  Field Sobriety Tests data export in CSV format containing the following information:
      a.  Any/all available records on field sobriety tests
      *If unavailable as a standalone dataset, a binary indicator variable based on a keyword search of the incident narratives.*
      b.  Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(7)  Search/Frisk data export in CSV format containing the following information:
      a.  Any/all available records on search and frisks performed in the field.

*If unavailable as a standalone dataset, a binary indicator variable based on a keyword search of the incident narratives.*

    b.   Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(8) <u>Temporary Detentions</u> data export in CSV format containing the following information:

    a.   Any/all available records on temporary detentions of 849 codes.

*If unavailable as a standalone dataset, a binary indicator variable based on a keyword search of the incident narratives.*

    b.   Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(9) <u>RIPA</u> data export in CSV format containing the following information:

a.   All data collected including any available linkages to CAD or RMS adminis

EXHIBIT 3

GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830
Facsimile:    (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California  94709
Telephone:  (510) 806-7366
Facsimile:   (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**DECLARATION OF MATTHEW B. ROSS IN SUPPORT OF JOINT DISCOVERY STATUS REPORT REGARDING PLAINTIFFS' REQUESTS FOR PRODUCTION NOS. 250-252**<br><br>Judge:      Hon. Anthony J. Battaglia<br>Magistrate: Hon. David D. Leshner<br><br>Trial Date: None Set |

[4463231.1]

I Matthew B. Ross, declare:

1.      I have a PhD in Economics from the University of Connecticut which I received in 2016.  I am an Associate Professor at Northeastern University where I hold joint appointments in the School of Public Policy & Urban Affairs and the Department of Economics.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could competently so testify.  I make this declaration in support of the Joint Discovery Status Report Regarding Plaintiffs' Request for Production Nos. 25-252.

2.      I am originally trained as an applied microeconomist.  My research predominantly centers on empirically testing for disparate treatment and evaluating skills acquisition/training programs across various sectors.  The majority of my work has a particular focus on these topics as they relate to policing and the criminal justice system. I am the lead investigator of a lab at Northeastern University that actively files hundreds of public information requests per year. These public information requests ask major municipal and state police agencies for administrative data on police enforcement pertaining to arrests, use of force, calls for service, stops, searches, and criminal investigations. In my scholarly research and through my lab, I have worked with incident level administrative data from several hundred policing agencies across the country.

3.      In 2013, I developed a methodological framework for evaluating statewide policing data and intervening in departments with observed disparities. My approach has since been coined the "Connecticut Model" and is widely viewed as a national model of best practice for analyzing policing data for evidence of disparate treatment. To date, myself and my collaborators have provided varying levels of technical assistance to thirteen states seeking to implement similar analyses and data collection systems as Connecticut (Alabama, California, Colorado, DC Metro, Maine, Maryland, Minnesota, Nevada, New Jersey, New York, Oregon, Ohio, and Rhode Island). My approach has been promoted as a potential model for

DECLARATION OF MATTHEW B. ROSS IN SUPPORT OF JOINT DISCOVERY STATUS REPORT
REGARDING PLAINTIFFS' REQUESTS FOR PRODUCTION NOS. 250-252

1   state reforms by two of the major national traffic safety organizations:  Mothers

2   Against Drunk Driving (MADD) (Hawkins 2021; MADD 2021) and Governors

3   Highway Safety Association (Sprattler and Statz 2021), as well as the Justice Center

4   at the Council of State Governments.

5          4.     I have served as an advisor and subject matter expert for the U.S.

6   Department of Justice as well as the State of Connecticut, Rhode Island, District of

7   Columbia, and the New Jersey Attorney General.  I have authored over a dozen

8   statewide studies on racial and ethnic disparities.  The vast majority of my policy

9   work helps the public sector to develop and evaluate programs aimed at identifying

10  and alleviating disparities within social and economic institutions, particularly in

11  policing.  A true and correct copy of my CV is attached to this declaration.

12         5.     I attended a Zoom call on March 13, 2024, with Brent Jordan, a Crime

13  and Intelligence Manager with the County.  Counsel for the parties attended the

14  meeting.  During the call, Mr. Jordan and I discussed the types of data that

15  Defendants maintain as well as the anticipated time it may take to extract certain

16  data.

17         6.     Informed by my call with Mr. Jordan, I drafted a set of requests for data

18  at issue in RFPs 250, 251, and 252 that I understood Defendants maintain.  I require

19  this data in order to perform statistical analysis related to Plaintiffs' Ninth Claim for

20  Discriminatory Impact under California Government Code § 11135.  The requested

21  information ("Ross Requests" 1-9) is reprinted below [yellow highlighting indicates

22  information that Defendants will not produce]:

23      (1)  Computer-Aided Dispatch (CAD, Intergraph software) data export in CSV format containing

24      the following information:
              a.   Event type (deputy-initiated event, call for service etc.)

25            b.   Dates/times associated with incident (occurrence, reported, assigned/dispatched,
              responded, cleared etc.)

26            c.   Badge number or unique ID of all officer(s) on scene

27            d.   Location of event (e.g. approximate latitude/longitude or street address)
              e.   Reason for the event (including principle statute motivating event, if available)

28            f.   Civil charges statute(s) resulting from event and disposition for each charge (for
              speeding tickets, include posted/actual speed if available)

g. Criminal charge statute(s) resulting from event and disposition for each charge
h. Unique IDs to link to additional requested datasets, i.e. criminal incident (RMS), arrest records, force, field sobriety, temporary detainment, and frisk/search.
   i. Priority of response
j. Whether arrest was made

(2) Records Management System (RMS, Motorola) data export in CSV format containing the following information:
a. Dates/times associated with incident (occurrence, reported, assigned/dispatched, responded, cleared etc.)
b. Location of event (e.g. approximate latitude/longitude or street address)
c. Type of crime (including criminal charge statute(s) resulting from event and disposition for each charge)
d. Any/all available non-PII information associated with victims, suspects, witnesses, and perpetrators.
e. Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), arrest records, force, field sobriety, temporary detainment, and frisk/search.

(3) Arrest Records data export in CSV format containing the following information:
a. Date/time of arrest
b. Location of arrest (e.g. approximate latitude/longitude or street address)
c. Badge number of arresting officer(s)
d. Criminal charge statute(s) resulting from event and disposition for each charge
e. Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(4) Use of Force data export in CSV format containing the following information:
a. Any/all available records on use of force under the current force reporting policy
b. Date/time of incident
c. Location of arrest Location of event (e.g. approximate latitude/longitude or street address)
d. Badge number or unique ID of officer(s)
e. Type of force applied (response to resistance sequence if available)
f. All available demographics of citizens involved.
g. Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(5) Human Resource Records data export in CSV format containing the following information:
a. Unique officer identifiers (e.g., badge number) that can be linked to the CAD and RMS
b. Any/all available non-PII demographic information for officer(s).

(6) Field Sobriety Tests data export in CSV format containing the following information:
a. Any/all available records on field sobriety tests
*If unavailable as a standalone dataset, a binary indicator variable based on a keyword search of the incident narratives.*
b. Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(7) Search/Frisk data export in CSV format containing the following information:
a. Any/all available records on search and frisks performed in the field.
*If unavailable as a standalone dataset, a binary indicator variable based on a keyword search of the incident narratives.*

b.   Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(8)  Temporary Detentions data export in CSV format containing the following information:
a.   Any/all available records on temporary detentions of 849 codes.
*If unavailable as a standalone dataset, a binary indicator variable based on a keyword search of the incident narratives.*
b.   Unique IDs to link to additional requested datasets, i.e. computer-aided dispatch (CAD), criminal incident (RMS), and arrest records.

(9)  RIPA data export in CSV format containing the following information:
a.   All data collected including any available linkages to CAD or RMS administrative data

I understand from my call with Mr. Jordan that the highlighted information above exists.

7.     Ross Request 1:  911 Call Data.   I specifically discussed 911 call data with Mr. Jordan, and understand that the information I require to perform statistical analysis on calls for service (911 call) data is kept in the CAD system.  I require this information because law enforcement responses to 911 calls, similar to pedestrian and vehicle stops, can result in the arrest and incarceration of people.  I intend to perform statistical analysis on the requested information to evaluate whether Black and Latinx are more likely to be arrested and incarcerated than people of other races or ethnicities in connection with SDSD responses to 911 calls.

8.     Ross Request 4:  Use of Force Data.  Mr. Jordan confirmed to me that Defendants maintain a use of force dataset that can be linked by a unique event number to the CAD dataset that contains information about stops and responses to 911 calls.  My evaluation of data from other jurisdictions show that use of force on a particular person is an indicator that the person is more likely to be arrested and incarcerated.  I plan to perform statistical analysis tests with this use of force data to measure, among other things, whether (1) a stop or response to a 911 call leads to use of force; (2) whether Black and Latinx people are more likely to receive force than other individuals, holding constant other factors and (3) whether individuals who receive force are more likely to be arrested and incarcerated.

9.     Ross Request 5 (and Ross Requests 1 and 3):  Non-Personally

DECLARATION OF MATTHEW B. ROSS IN SUPPORT OF JOINT DISCOVERY STATUS REPORT
REGARDING PLAINTIFFS' REQUESTS FOR PRODUCTION NOS. 250-252

1    Identifiable Information About Arresting Officers.  I specifically discussed with Mr.
2    Jordan how Defendants maintain datasets about the arresting officer.  It is my
3    recollection that Mr. Jordan told me that Defendants maintain this information in a
4    way that is supposed to keep the officer's name anonymized by including only a
5    unique number for the officer.  I drafted the above requests to specifically not seek
6    the personally-identifiable information (like name and personal contact information)
7    about the officer, but instead to seek (1) the badge number or other unique identifier
8    for the officer, and (2) the demographic information about the officer.  I requested
9    (1) the badge number or other unique identifier for the officer in order to perform
10   statistical analysis tests to evaluate whether particular officers are more likely to
11   engage in use force against and/or arrest people who are Black and Latinx at higher
12   rates than other people.  I requested (2) the demographic information about the
13   officer in order to perform statistical analysis tests to evaluate whether officers of a
14   particular race or ethnicity are more likely to engage in use force against and/or
15   arrest people who are Black and Latinx at higher rates than other people.  In my
16   evaluation of similar data from other jurisdictions, I have found statistically
17   significant relationships between officers' race and ethnicity and their likelihood to
18   use force against and/or arrest people who are Black and Latinx at higher rates than
19   other people.

20       10.    Ross Requests 6, 7, and 8:  Searches of the Narrative Field in the CAD
21   System for Field Sobriety Tests (Ross Request 6), Searches or Frisks (Ross Request
22   7), or Temporary Detentions (Ross Request 8).  Mr. Jordan told me that he was
23   unsure whether there were specific datasets for whether an officer conducted a field
24   sobriety test, a search or frisk, and/or a temporary detention; Mr. Jordan said that he
25   would look into whether the datasets exist.  I have not heard back from Mr. Jordan
26   about this issue.  Mr. Jordan indicated that, even if those specific datasets did not
27   exist, that information is documented in the "narrative" field related to the event.
28   Mr. Jordan stated that it would take a negligible amount of time to extract the

"narrative" field, but that it could take a lot of time to read through every narrative field to ascertain whether there was information that would have to be redacted, like a victim's name.  Mr. Jordan agreed with me that the burden concern could be addressed by creating search terms to indicate whether an officer conducted a field sobriety test, a search or frisk, and/or a temporary detention.  Defendants could then create a dummy variable with a value of "1" if there was such a hit or "0" if there was no such hit, and produce the dummy variable indicating the presence of a field sobriety test, a search or frisk, and/or a temporary detention—obviating the need to review and produce the "narrative" field.  Mr. Jordan indicated that the Department uses certain codes for certain events, and that he was willing to work with me to compile a set of search terms to use in the "narrative" field of the CAD dataset at issue in Request 1 in order to identify whether a Field Sobriety Test (Ross Request 6), Search or Frisk (Ross Request 7), or a Temporary Detention (Ross Request 8) was conducted in any given event.  For example, Mr. Jordan explained that SDSD uses the code "849" that may be related to temporary detentions, and that the narrative field associated with an event may include this code.

11.    I drafted the following set of search terms that Plaintiffs provided to Defendants on March 27, 2024.

Field Sobriety Tests- eleven separate binary indicator variables for the presence of the following keywords: "field sobriety" or "FST" or "SFST", "operating under the influence" or "OUI", "driving under the influence" or "DUI", "impaired operation" or "impaired driving", "Bood Alcohol Content" or "BAC", "Horizontal Gaze" or "Nystagmus", "Walk-and-Turn" or "Walk and Turn", "heel-to-toe" or "heel to toe", "one-leg-stand" or "one leg stand", "breathalyzer" or "breath test" or "PBT", "alcohol screening" or "PAS".

Search/Frisk- nine binary indicator variables for the presence of the following keywords: "search", "contraband", "inventory search", "search incident to arrest", "consent search", "probable cause search", "reasonable suspicion search", "frisk", "pat down" or "pat-down".

Temporary Detentions: six binary indicator variables for the presence of the following keywords: "849", "detention", "handcuff", "vehicle exit" or "exit vehicle", "PlastiCuffs" or "FlexiCuffs" or "FlexCuffs" or "Plasti Cuffs" or "Flexi Cuffs" or "Flex Cuffs" or "Zip Cuffs", "Cuffs"

I also asked for a follow-up call with Mr. Jordan to ensure that Mr. Ross has all of the codes or other shorthand that SDSD may use to identify field sobriety tests, searches/frisks, and/or temporary detentions.

12.     Mr. Jordan expressed concern that my statistical analyses may not be accurate with the use of search terms because (1) search terms may not capture all instances of whether an officer conducted a field sobriety test, a search or frisk, and/or a temporary detention, or (2) the search terms would capture other actions.  I assured Mr. Jordan that I was not concerned about this issue because there are ways to account for measurement error in variables when performing statistical analysis. There are specific statistical tools and tests that I can apply to ensure that the estimates are not biased by measurement error in these variables.  To the extent that these variables—indicators of sobriety tests, searches/frisks, and/or temporary detentions—are used as outcomes (i.e. dependent variables in a regression analysis), measurement error will not result in a biased estimate based on canonical mathematical properties of linear regression.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at Boston, Massachusetts this 1st day of April, 2024.

Apr 1, 2024

Matthew B. Ross

DECLARATION OF MATTHEW B. ROSS IN SUPPORT OF JOINT DISCOVERY STATUS REPORT
REGARDING PLAINTIFFS' REQUESTS FOR PRODUCTION NOS. 250-252

# ATTACHMENT

Updated: March, 2024

# Matthew B. Ross

978.888.8517                                      School of Public Policy & Urban Affairs
mbross.econ@gmail.com                                      Department of Economics
ma.ross@northeastern.edu                                      Northeastern University
www.mbross-econ.com                                      Boston, MA

## Current Employment

| | |
|---|---|
| 2022- Pres | Associate Professor (Untenured, Tenure-Track), School of Public Policy & Urban Affairs and Department of Economics, Northeastern University |
| 2023-24 | Community-to-Community Policy Fellow (Provost's Initiative), Northeastern University |

## Other Appointments

| | |
|---|---|
| 2024-Pres | Research Advisor to Justice Center at Council of State Governments |
| 2023-Pres | Invited Research to J-PAL North American and the Science for Progress Initiative |
| 2022-24 | Visiting Scholar, Department of Public Policy, University of Connecticut |

## Education

| | |
|---|---|
| 2016 | Ph.D. in Economics, University of Connecticut |
| 2013 | M.A. in Economics, University of Connecticut |
| 2011 | M.A. in Regional Economic & Community Development, University of Massachusetts Lowell |
| 2010 | B.A. in Economics, University of Massachusetts Lowell |

## Research Interests

Primary: Labor economics, urban economics, and public policy
Secondary: Discrimination, economics of crime, labor market dynamics, training, skills and tasks, knowledge transfer, labor demand

## Previous Employment

| | |
|---|---|
| 2020-22 | Assistant Professor, Department of Economic Sciences, Claremont Graduate University |
| 2020-22 | Visiting Scholar, Wagner School of Public Service, New York University |
| 2018-20 | Assistant Research Professor, Wagner School of Public Service and Center for Urban Science and Progress (CUSP), New York University |
| 2016-18 | Post-Doc, Ohio State University and National Bureau of Economic Research (NBER) |

## Scholarly Research

Refereed Publications

Yu, H., Marschke, G., Ross, M.B. et al. Publish or Perish: Selective Attrition as a Unifying Explanation for Patterns in Innovation over the Career. *Journal of Human Resources* 59-1 (2024).

Kalinowski, J.J., Ross, S.L., Ross, M.B. Endogenous Driving Behavior in Tests of Racial Profiling. *Journal of Human Resources* 59-2 (2023).

Ross, M.B., Glennon, B.M., Murciano-Goroff, R. et al. Women are credited less in science than men. *Nature* 608, 135–145 (2022).

Ross, M.B., Kalinowski, J.J., Barone, K. Testing for Disparities in Traffic Stops: Best Practices from the Connecticut Model. *Criminology & Public Policy* 19-4 (2020).

Chevalier, G. Chomienne, C. Jeanrenaud, N.G., Lane, J.I., Ross, M.B. A New Approach for Estimating Research Impact: An Application to French Cancer Research. *Quantitative Science Studies* 1-4 (2020).

Ross, M.B. The Effect of Intensive Margin Changes to Task Content on Employment Dynamics over the Business Cycle. *Industrial and Labor Relations Review* 74-4 (2020).

Couch, K.A., Ross, M.B., Vavrek, J. Career Pathways and Integrated Instruction: A National program Review of I-Best Implementations. *Journal of Labor Research* 39 (2018).

Ross, M.B. Routine-Biased Technical Change: Panel Evidence of Task Orientation and Wage Effects. *Labour Economics* 48 (2017).

Published Conference Proceedings

Kehoe, A.K., Vetle, T.I., Ross, M.B., Smalheiser, N.R. Predicting MeSH Beyond MEDLINE. Association of Computing Machinery (ACM): *Proceedings of Workshop on Scholarly Web Mining* (2018).

Kalinowski, J.J., Ross, S.L., Ross, M.B. Now You See Me, Now You Don't: The Geography of Police Stops. *American Economic Review Papers and* Proceedings 109 (2019).

Book Chapters

Ross, M.B. Ikudo, A., Lane, J.I. The Food Safety Research Workforce and Economic Outcomes. *Measuring the Economic Value of Research: The Case of Food Safety*, c. 6 pp. 100- 112, Cambridge University Press (2017)

King, J.L. Johnson, S.R., Ross, M.B. Assessing the Effects of Food Safety Research on Early Career Outcomes. *Measuring the Economic Value of Research: The Case of Food Safety*, c. 8 pp. 100- 112, Cambridge University Press (2017)

Working Papers

Adger, C. Ross, M.B., Sloan, C.W. The Effect of Field Training Officers on Police Use of Force. 2024. (Submitted).

Mello, S., Ross, M.B., Ross, S.L., Johnson, H. Diversity Training and Employee Behavior: Evidence from the Police. 2024. (Submitted).

Ross, M.B., Parker, S., Ross, S.L. The Impact of Prohibiting Pretextual Enforcement on Traffic Stops, Accidents, and Crime. 2024 (Submitted).

Kalinowski, J.J., Ross, S.L., Ross, M.B. Addressing Seasonality in Veil of Darkness Tests for Discrimination: A Regression Discontinuity Approach. (Resting)

Selected Works in Progress

Ross, M.B., Ross, S.L., Parker, S. Testing for Discrimination in Police Traffic Stops using Telemetric Mobility Data: New Methods and Findings. (Manuscript in Preparation).

Murciano-Goroff, R.M. Ross, M.B. Robots and Science: The Impact of Automation on the Scientific Research Teams. (Manuscript in Preparation).

Funk, R. Glennon, B., Murciano-Goroff, R.M. Ross, M.B. Connections and Credit: How Social Networks Shape the Gender Gap in Research Output. (Manuscript in Preparation).

Bollman, K.M., Gomez, A. Ross, M.B., Sloan, C.W. More with Less: The Impact of Excessive Overtime on Police Wellness, Productivity, and Bias. (Ongoing Analysis).

Ross, M.B. and Sloan, C.W. Estimating Police Value-Added Impacts on Criminal Investigations, Clearance Rates, Revictimization, and Recidivism. (Ongoing Analysis).

Ross, M.B., Ross, S.L., Parker, S. A Machine Learning Approach to Estimating Roadway Populations using Telemetric Mobility Data. (Preliminary Analysis).

Ross, M.B. Sloan, C.W. Understanding the Dynamics of Police Corruption: Evidence from Connecticut's Fake Ticket Scandal. (Preliminary Analysis)

Grants, Awards, and Honors

Grants and Contracts

Total of $2,809,111 in extramural research funding and $88,766 in internal research funding from 2016 to present.

| | |
|---|---|
| 2023-24 | PI for Qualitative Evaluation of the "Connecticut Model". Arnold Ventures via Council of State Governments. Subaward of $39,987 from $600,000. |
| 2023-24 | PI for CT Traffic Stop Evaluation. U.S. DOT. Total of $170,626. |
| 2023-25 | PI for RI Traffic Stop Evaluation. U.S. DOT. Total of $246,400. |
| 2023-24 | PI for DC Metro Traffic Stop Evaluation and Officer Analysis. U.S. DOT. Total of $40,123. |
| 2023 | Winner of Northeastern University Community-to-Community Policy Fellowship. Post-Doc equivalent to approx. $43,200. |
| 2023 | Winner of College of Social Sciences & Humanities' Multi-Generational Research Team Award: "Criminal Investigations in Communities of Color" with Ermus St. Louis (Northeastern University). SGA time equivalent to approx. $26,666. |
| 2022-23 | PI for CT Traffic Stop Evaluation and Officer Analysis. U.S. DOT. Total of $168,430. |
| 2023 | Consultant to the Commonwealth of Virginia's Attorney General's Office. |
| 2021-23 | Consultant on NOPD Consent Decree to the U.S. Department of Justice Civil Rights Division. Total of $29,640. |
| 2021 | Consultant to the New Jersey Attorney General's Office of Public Integrity & Accountability. Total of $6,968 |
| 2021-22 | Winner of Blais Challenge Award: "Does More Training Mitigate Disparities in Police Use of Force? Quasi-Experimental Evidence from New Linked Data" with CarlyWill Sloan (Claremont) and David Bjerk (Claremont McKenna). Total of $18,900. |
| 2021-22 | Co-PI for Russell Sage Foundation Presidential Grant: "Does More Training Mitigate Disparities in Police Use of Force? Quasi-Experimental Evidence from New Linked Data" with CarlyWill Sloan (Claremont). Total of $29,178 |
| 2021-23 | PI for CT Traffic Stop Evaluation and Officer Analysis. U.S. DOT. Total of $251,085 from 2021-23. |
| 2020-21 | Contractor for the National Science Foundation- National Center for Science and Engineering Statistics (via Coleridge Initiative): "Integrate Data Analytics Training, Data |

Linkage Research and Secure Data Access to Promote Evidence-based Science Policy Research". Total of $12,750.

2019-21    Co-PI for National Science Foundation (NSF) Research Award (SciSIP #1932689): "Research funding, organizational context, and transformative research: New insights from new methods and data" with Raviv Murciano-Goroff (BU), Julia Lane (NYU), and Russel Funk (UMN). Collaborative award for a total of $600,000 w/ $320,000 to NYU.

2019-21    Fellowship at Collaborative Archive Data Research Environment (CADRE) at Indiana University. Team granted clustered computing access to Web of Science (WoS) and Microsoft Academic Graph (MAG) data.

2016-19    PI for RI Traffic Stop Evaluation and Officer Analysis. U.S. DOT. Total of $222,690.

2013-19    PI for CT Traffic Stop Evaluation and Officer Analysis. U.S. DOT. Total of $571,140.

2012-16    Racial Disparities in State Contracting Phases 1-3 (sub-award) via CT Economic Resource Center and CT Academy of Science as part of a CT General Assembly award. Total of $22,400.

Smaller Awards and Honors

Fellowship w/ Cuebiq (Spectus Data for Good Initiative), Connecticut's Alvin W. Penn Award for Excellence in Civil Rights Leadership (w/ coauthors), UConn Dissertation Award (2016), IZA/CEDEFOP Travel Award (Fall 2015), Quinnipiac CAS Research Award (2015), UConn Summer Research Fellowship (Summer 2012, 2014, 2015), UConn Third Year Paper Award (2014), National Association of Business Economist's Policy Scholarship (2013), UConn Economics Fellowship (2011), UMass Alan D. Solomon Scholarship (2011), UMass Campus Catalyst Award (2011), UMass Honors (2009-11)

Policy Reports

2023    Massachusetts Traffic Stops Analysis, 2009-22
        - Partners: USA Today and Cape Cod Times
        MA_Traffic-Stop-Analysis-2014-22-1.pdf

2023    Connecticut State Police Traffic Stop Audit
        - Partners: CT General Assembly and Office of Policy & Management
        CTSP_Fake-Ticket-Audit.pdf

2022    New Orleans Police Department Bias-Free Analysis.
        - Partners: US Department of Justice.
        NOPD_Bias-Free.pdf

2022    Internal Analysis of New Jersey State Police Traffic Stops.
        - Partners: New Jersey Attorney General.
        NJSP_Traffic-Stop.pdf

2013-21  State of Connecticut, Analysis of Racial Profiling in Police Traffic Stops- 16 reports.
        - Partners: CT General Assembly and Office of Policy & Management (via Institute for Municipal and Regional Policy, University of Connecticut)
        - Public Department-Level Reports: 2021, 2020, 2019, 2018, 2017, 2015-16, 2014-15, and 2013-14
        - Public Officer-Level Reports:  2021, 2020, 2019, 2018, 2017, 2015-16, 2014-15, and 2013-14
        https://www.ctrp3.org/analysis-reports/reports

2016-19  State of Rhode Island, Analysis of Racial Profiling in Police Traffic Stops- 4 reports.
        - Partners: RI Department of Transportation (via Institute for Municipal and Regional Policy, University of Connecticut)
        - Public Department-Level Reports: 2019, 2018, 2017, and 2016
        - Internal Officer-Level Reports: 2016

| | |
|---|---|
| 2013-19 | Racial Disparities in CT's State Contracting Process (Disparity Study Phase 1, 2, & 3). |
| | - Partners: CT General Assembly and CT Academy of Science and Engineering |
| 2013 | Connecticut's Economic Development Strategy. |
| | - Partners: CT Department of Economic and Community Development |
| 2012 | [...] Connecticut's Skilled Workforce [...]. |
| | - Partners: CT General Assembly and CT Academy of Science and Engineering |
| 2011 | U.S. Skills for Green Jobs. |
| | - Partners: International Labour Organization and CEDEFOP |

## Conferences and Seminars

| | |
|---|---|
| 2023-24 | Boston Federal Reserve, Global Action for Policy Conference, Western Economic Association. |
| 2022-23 | Association for Public Policy Analysis & Management and Urban Economics Association |
| 2021-22 | NBER Summer Institute- Law & Economics 2022, USPTO PatentsView Symposium, Claremont McKenna, Ohio State University- UMETRICS Action Series (Coauthor), Association of Policy Analysis and Management, Scripps College, University of Hawaii at Manoa, Northeastern University, RAND Corporation, California State University at Fullerton, University of New Hampshire, Texas A&M VICE Seminar |
| 2019-20 | Boston University School of Law, American Economic Association (2019 & 2020), Georgia Institute of Technology (Policy), NBER Productivity Seminar, University of Michigan (IRIS), University of Connecticut, NYU Crime & Policing Workshop, Society of Labor Economists, APPAM Research Conference, Conference on Empirical Legal Studies (Claremont McKenna)*, Connecticut Racial Profiling Prohibition Advisory Board, Ohio State University (x2), San Diego State University, Simon Fraser University (Policy), Naval Postgraduate School, Claremont Graduate University |
| Pre-2017 | Society of Labor Economists, Urban Economics Association, University at Albany, Ohio State University, APPAM Research Conference, Society of Labor Economists, NBER Summer Institute- Law & Economics 2018, APPAM Research Conference, North American Regional Science Conference, Society of Labor Economists, Western Economic Association, Syracuse University, Urban Economics Association, Southern Economic Association, Ohio State University, Miami University Ohio, Western Economic Association, Boston Federal Reserve Bank, Atlanta Federal Reserve Bank. IZA/CEDEFOP Workshop on Skills and Skill Mismatch, Southern Economic Association, University of Massachusetts Lowell, CT Data Collaborative Conference, CT Racial Profile Advisory Board, CT General Assembly: Methods for an Analysis of Policing Data, Census Bureau: LEHD: Benchmarking Competitiveness in STEM, Boston Foundation, National Neighborhood Indicators Partnership, Urban Institute, NE Sociological Association, CT General Assembly: Econometric Methods for Examining Racial Disparities in CT's State Contracting Process, CT General Assembly: The Connecticut STEM Workforce Pipeline |

## External Professional Service

<u>Peer Reviews in Economics:</u> Quarterly Journal of Economics; Journal of Policy Analysis & Management; European Economic Review; Labour Economics; Journal of Human Resources; Journal of Public Economics; Journal of Urban Economics; Journal of Empirical Legal Studies; Research Policy; IZA World of Labour; International Journal of Manpower; PLoS One.

<u>Peer Reviews in Criminology:</u> Criminology & Public Policy; Crime & Delinquency; Journal of Race, Ethnicity, & Politics; American Journal of Criminal Justice.

Grant & Other Reviews: Public Policy Institute of California; Russell Sage Foundation; Sloan Foundation; Criminal Justice Expert Panel.

Program Committee: APPAM Fall Research Conference, 2017, 2021, 2022 (Chair, Science and Technology), 2023 (Chair, Science and Technology); NYU Policing and Crime Workshop 2018 (Organized w/ Ingrid Gould Ellen and Morgan Williams); Eastern Economic Association 2016; University of Massachusetts Lowell Master of Science in Economics Advisory Board.

Memberships: American Economic Association; Association for Public Policy Analysis and Management; Urban Economics Association; Society of Labor Economists; American Association for the Advancement of Science.

## Internal Professional Service

Northeastern University: Master of Public Administration Admission Committee (Public Policy, 23-24) Graduate Program Committee (Economics, 23-24); Undergraduate Program Committee (Economics, 22-23); AEFIS Graduate Program Evaluation (Economics); Digital Economies Search Committee (Public Policy); Interdisciplinary Crime Lunch (Public Policy).

Claremont Graduate University: Admissions Committee; PhD/MA Curriculum Program Committee

EXHIBIT 4

| Disputed Item | Description of Relevance | Defense Argument in Opposition |
|---|---|---|
| 911 Call Data [Ross Request 1] | Because officer responses to 911 calls often lead to arrests and these arrests make up a meaningful proportion of all SDSD arrests, the 911 call data included in the CAD system is necessary for Mr. Ross to evaluate whether there are disparities by race in these arrests after controlling for factors regarding the circumstances that led to the arrest | Plaintiffs' Third Amended Complaint does not detail any instance where any Plaintiff was arrested by SDSD, let alone was arrested by SDSD after SDSD responded to a 911 call, such that 911 call data could be credibly evaluated as to whether there are disparities by race in arrests regarding 911 calls that have no bearing on the named plaintiffs in this case who were not arrested by SDSD such as to justify the violation of privacy rights of victims, witnesses and suspects not related to this case even remotely. |
| Badge Number or Unique ID of All Officer(s) on Scene [Ross Requests 1(c) and 3(c)] | Non-personal officer identifiers (like a badge number or unique ID) are necessary for Mr. Ross to perform apples-to-apples comparisons and increase precision in testing department-level disparities; specifically, the data is necessary to 1) control for the heterogeneity of events involving officers due to idiosyncratic variations across officers (e.g., different shifts, patrol areas, and enforcement behaviors) when evaluating departmental-level disparities, and 2) correct the standard errors and potential violations of assumptions in the hypotheses tests given that there may be a correlation in outcomes between stops involving the same officer. | Plaintiffs are seeking injunctive relief based on allegations that the SDSD's policies, procedures, and/or practices are unconstitutional *during the incarceration of persons arrested and booked into San Diego County Jails;* as such, there can be no apples-to-apples comparison regarding stops involving officers in the field, because the factual allegations contained within the TAC against the SDSD are related to claims of unconstitutional treatment of pre-trial detainees and sentenced prisoners, *not* claims against deputies working patrol assignments out in the field, and unique name identifiers of individual deputies working patrol assignments does not assist in a determination of whether incarcerated persons are treated disparately based on race or disability status. |

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

| | | |
|---|---|---|
| Use of Force Data [Ross Request 4] | Because law enforcement officers are more likely to arrest and book into the jail people who have resisted arrest and/or upon whom they have used force, this data is necessary for Mr. Ross to test whether officers use force disproportionately against Black and Latinx individuals when controlling for other factors. | Nowhere in the TAC do Plaintiffs either allege that SDSD law enforcement personnel either *arrested* any Plaintiff, or *used force* against any Plaintiff *in the field* during an arrest, such that deputy use of force data compiled from SDSD patrol records would be relevant to any claim or defense in this case. |
| Non-Personally Identifiable Information About Law Enforcement Officers [Ross Request 5] | Non-personally identifying demographic information (like race, ethnicity, sex, age, seniority, and LGBTQ+ status) is necessary for Mr. Ross to evaluate whether there are disparities in arrests by race that are attributable to specific characteristics of types of officers (e.g., Black officers who treat Black subjects more severely than subjects of other races or more junior officers who require more training). | Plaintiffs, by the form of the search parameters request, are seeking individual deputy-identifying information which, while maintained by SDSD databases, are being requested to speculate as to whether particular officers are more likely to engage in specific actions based on the race of the officers—the race of which officers is maintained in a database at Personnel, not at SDSD, and is violative of patrol deputy privacy rights as to their racial/ethnic make-up and does not go to the claims/defenses in this case of carceral racial discrimination by corrections deputies. |
| Searches of the Narrative Field in the CAD System for Field Sobriety Tests [Ross Request 6], Searches or Frisks [Ross Request 7], or Temporary Detentions [Ross Request 8] | Because field sobriety tests, searches/frisks, and/or temporary detentions often increase the likelihood of arrest, Mr. Ross requires this information to test whether an officer is more or less likely to conduct these actions depending on the race/ethnicity of the subject. | The data is not maintained within the SDSD databases in the manner requested, thus any attempt to obtain responsive records would require an inordinate number of person-hours by an estimated number of three-to-five analysts working approximately four-to-eight weeks depending on how many cases the search parameters would return. |