1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11
12
13
14
15
16

DARRYL DUNSMORE, ANDREE
ANDRADE, ERNEST
ARCHULETA, JAMES CLARK,
ANTHONY EDWARDS, LISA
LANDERS, REANNA LEVY, JOSUE
LOPEZ, CHRISTOPHER NELSON,
CHRISTOPHER NORWOOD, JESSE
OLIVARES, GUSTAVO
SEPULVEDA, MICHAEL TAYLOR,
and LAURA ZOERNER, on behalf of
themselves and all others similarly
situated,

17

Plaintiffs,

18

v.

19
20
21
22

SAN DIEGO COUNTY SHERIFF'S
DEPARTMENT, COUNTY OF SAN
DIEGO, SAN DIEGO COUNTY
PROBATION DEPARTMENT, and
DOES 1 to 20, inclusive,

Defendants.

Case No.:  20-cv-00406-AJB-DDL

**ORDER RE: PLAINTIFFS'
OBJECTIONS TO DEFENDANTS'
ADA PLAN**

**(Doc. No. 416)**

23
24
25
26
27
28

Presently before the Court is Plaintiffs' objections to Defendants County of San
Diego and San Diego County Sheriff's Department's (collectively, "Defendants")
Americans with Disabilities Act Plan ("ADA Plan"). (Doc. No. 416.) Pursuant to Civil
Local Rule 7.1.d.1, the Court finds the motion suitable for determination on the papers

1

submitted and without oral argument. For the reasons set forth below, the Court **OVERRULES IN PART AND SUSTAINS IN PART** Plaintiffs' objections.

## I. BACKGROUND

On April 25, 2023, Plaintiffs filed motions for preliminary injunction and provisional class certification ("Plaintiffs' Motions"). (Doc. No. 281.) After the parties briefed these motions and after multiple conferences before Magistrate Judge David D. Leshner, the parties reached a settlement of the issues at stake in Plaintiffs' Motions. (Doc. No. 349.) On June 21, 2023, the Court approved the parties' Joint Motion and Order Re: Accessibility at Central Jail, Effective Communication Policy and Practice, and Provisional Class Certification ("ADA Order"). (ADA Order, Doc. No. 355.)

As part of the ADA Order, the Court certified a subclass, represented by Plaintiffs' counsel, of "all qualified individuals with a hearing and/or mobility disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in the Jail." (*Id.* ¶ 1.) The ADA Order requires Defendants to "develop and provide to Plaintiffs a plan to remedy the accessibility and effective communication issues identified in Plaintiffs' Motions . . . ." (*Id.* ¶ 7.) Moreover, the ADA Order stated: "the parties and the Parties' Experts will confer to address any concerns or disputes." (*Id.* ¶ 8.) After the parties' meet and confer, Defendants were directed to submit their plan to the Court, and Plaintiffs could then submit any objections to the proposed plan to the Court. (*Id.* ¶ 9.)

On August 22, 2023, Defendants sent Plaintiffs their proposed ADA plan. (Doc. No. 416 at 3.) On September 5, 2023, Plaintiffs sent Defendants a letter outlining their concerns with the draft ADA plan and requested a meet and confer call with Defendants and the parties' respective experts, as outlined in the ADA Order. (*Id.* at 3–4.) Defendants sent Plaintiffs a letter response on September 18, 2023, but did not allow the parties' experts to participate in the meet and confer as required. (*Id.* at 4.)

///

///

After several communications, Defendants filed their proposed ADA plan ("ADA Plan") with the Court on October 5, 2023, making few of Plaintiffs' requested revisions to their plan. (Doc. No. 409.) The instant objection follows. (Doc. No. 416.)

## II.   DISCUSSION

Plaintiffs object to several portions of Defendants' ADA Plan. The Court will address each in turn below.

### A.   Defendants' Timeline for Updating Policy and Training Staff

First, Plaintiffs object to the ADA Plan's proposed timelines and asks the Court to require Defendants to issue revised ADA policies and train staff on the new policies and processes no later than January 1, 2024. (Doc. No. 416 at 5.) Because Plaintiffs' requested date has passed, the Court **OVERRULES** Plaintiffs' objection.

However, the Court agrees that because the ADA Plan requires Defendants to develop new processes for accommodating people with hearing and mobility disabilities by January 1, 2024, updating their policies and training staff by July 1, 2024, is unreasonable. (*See* ADA Plan, Doc. No. 409 at 3–4, 7–9.) The Court **ORDERS** Defendants to issue revised ADA policies and train their staff on the new policies and processes by **June 1, 2024**.

### B.   Defendants' Physical Plant Changes and Interim Accommodation Plan

Next, the ADA Order requires Defendants to create a remedial plan which identifies "each element in each housing unit that they will renovate and any other remedial measures to be taken, as well as the maximum number of incarcerated people with disabilities that can be safely housed in each unit." (ADA Order ¶ 7.b.ii.) This section also requires "at least 25 accessible beds and toileting . . . becoming available as soon as possible and no later than 90 days from the date of this Stipulation and . . . Order." (*Id.*) Because the ADA Order was entered June 21, 2023, compliance was required by September 19, 2023.

Here, the ADA Plan states the Sheriff's Department implemented 30 wheelchair accessible beds and toileting at San Diego Central Jail by September 19, 2023. (ADA Plan at 5.) However, for Modules 8 C and 8 D, the Sheriff's Department states: "The current

3

toilet clearance space is under 60" x 60". Full 60" x 60" clear floor space will be complete with shower remodel by **December 23, 2024**." (*Id.* at 5–6 (emphasis added).) Thus, the Court **SUSTAINS** Plaintiffs' objection and **ORDERS** Defendants to file a status report by **June 1, 2024**, as to why they failed to comply with the ADA Order here and to provide updates on these remodels.

Additionally, Plaintiffs object to the ADA Plan to the extent it fails to provide definition or explanation of what is meant by "feasible" or "available." (Doc. No. 416 at 9.) Specifically, Plaintiffs assert "Defendants' plan for housing people with mobility disabilities dilutes the ADA Order by promising to house people accessibly only when 'feasible' or when accessible housing is 'available.'" (*Id.*) The ADA Order required that "Defendants **will ensure** that incarcerated people with mobility disabilities are housed in accessible facilities, based on their accessibility needs . . . ." (ADA Order ¶ 7.b.i (emphasis added).) However, Defendants' ADA Plan states, "Incarcerated persons with identified mobility disabilities will be assigned to accessible housing, based on their accessibility needs *as feasible or available* . . . ." (ADA Plan at 7.) The ADA Plan further repeats that people with mobility disabilities will be assigned to accessible housing, toileting, and showers "as available." (*Id.* at 8.) Thus, the Court **SUSTAINS** Plaintiffs' objection and **ORDERS** Defendants to comply with the ADA Order. Defendants are further **ORDERED** to include in the June 1, 2024 status report the affirmative steps they will take to comply with the ADA Order.

The ADA Order further required: "To the extent that any necessary remedial measures regarding physical plant changes will require an extended period of time (e.g., more than 6 months), Defendants' plan will include interim measures that mitigate significant safety issues for incarcerated people with disabilities as related to beds, showers, and toilets/lavatories, along with the plan for achieving full compliance." (ADA Order ¶ 7.c.) Plaintiffs object to the ADA Plan and assert it "does not explain how the interim measures are sufficient or how they will 'mitigate significant safety issues.'" (Doc. No. 416 at 10.) Defendants' ADA Plan states that during construction, "[Incarcerated

persons] with identified mobility disabilities will be assigned to housing within [San Diego Central Jail] or another facility." However, the ADA Plan fails to provide specific interim measures that mitigate significant safety issues for incarcerated people with disabilities, as required by the ADA Order. As such, the Court **SUSTAINS** Plaintiffs' objection and **ORDERS** Defendants to address *specific* interim measures in the June 1, 2024 status report, including where Defendants will house people during construction and/or retrofits, and explain how that housing solution mitigates significant safety issues for incarcerated people.

Next, the ADA Order requires Defendants to identify "the maximum number of incarcerated people with disabilities that can be safely housed in each unit." (ADA Order ¶ 7.b.ii.) Defendants' ADA Plan states by December 23, 2024, San Diego Central Jail will have 38 beds available for wheelchair users, (ADA Plan at 11), and 24 beds in 12 cells to accommodate non-wheelchair persons with mobility disabilities, (*id.* at 15). Plaintiffs object to this portion of the ADA Plan, asserting the "24 additional beds are in 12 cells with double bunks, which means that Defendants intend to house at least some 'non-wheelchair persons with mobility disabilities' on top bunks." (Doc. No. 416 at 10.) Plaintiffs also note a discrepancy in Defendants' ADA Plan, as Defendants also state that "[b]y the end of construction in 2026, [Sheriff's Department] intends to have at least 35 wheelchair accessible beds with accessible toileting and shower access at [San Diego Central Jail]." (*Id.* n.3 (citing ADA Plan at 4).) Attached to the ADA Plan, Defendants offer the Sheriff's Department's Mobility-Related Population Statistics, which state that within a roughly 6-month period between January 1, 2023, and July 18, 2023, there were 116 bookings with a wheelchair and/or intermittent wheelchair medical instruction added within 2 days of book date. (Ex. A, Doc. No. 409 at 21.) Regarding the average daily facility population during this period, there was an average of 38 individuals with an active wheelchair and/or intermittent wheelchair medical instruction. (*Id.*) However, these statistics fail to include the number of non-wheelchair persons with mobility disabilities who may still experience barriers in accessing a top bunk.

Thus, the Court **ORDERS** Defendants to submit statistics on the median number of incarcerated non-wheelchair persons with mobility disabilities in its June 1, 2024 status report, so the Court may better ascertain how many bottom-bunk and/or wheelchair-accessible beds are reasonably necessary for Defendants' ADA Plan. Moreover, Defendants must address whether these beds will be available by December 23, 2024, or 2026 to clarify the inconsistency noted above.

Moreover, the ADA Order requires that "[n]o person with a mobility disability using a wheelchair will be assigned to any bed in a triple bunk." (ADA Order ¶ 7.b.i(1).) However, Defendants' ADA Plan states that "[i]f a person only uses a wheelchair for transport outside the housing unit and does not have a wheelchair inside the housing unit, they will be identified as an 'intermittent wheelchair' user and this rule [not to assign a person who uses a wheelchair to any bed in a triple bunk] does not apply." (ADA Plan at 7.) The Court finds this does not comply with the ADA Order, which made no such qualification. As such, the Court **SUSTAINS** Plaintiffs' objection and **ORDERS** Defendants to amend its ADA Plan to ensure that no person with a mobility disability using a wheelchair be assigned to any bed in a triple bunk.

Finally, Plaintiffs assert Defendants have refused to produce any plans or specifications regarding the proposed ADA Plan's dimensions for accessibility renovations, stating that a "post-hoc inspection will reveal what has been done." (Doc. No. 416 at 11.) The Court agrees with Plaintiffs that it is wasteful and inefficient for Defendants to make modifications that may be inconsistent with the ADA Order and the ADA, and to later spend taxpayer dollars to fix any flawed renovations. The Court **ORDERS** the parties to meet and confer as to the ADA Plans' dimensions for accessibility renovations. The meet and confer must include party representatives, counsel and each sides experts. The Court recommends the parties utilize the services of Magistrate Judge David Leshner to better facilitate the meet and confer.

///

///

### C.     Sign Language Interpretation

Regarding sign language interpretation, the ADA Order recognized that the parties' experts agreed that Defendants must provide effective communication to incarcerated people whose primary method of communication is Sign Language, consistent with the ADA's requirements. (ADA Order ¶ 6.) Moreover, the ADA Order requires Defendants to "develop and provide to Plaintiffs a plan to remedy the accessibility and effective communication issues identified in Plaintiffs' Motions . . . ." (*Id.* ¶ 7.) Defendants' ADA Plan states the Sheriff's Department will provide access to American Sign Language interpretation services "including with a telecommunication service provider, videophones, VRS technology, and in-person American Sign Language Interpretation, as appropriate to ensure effective communication." (ADA Plan at 3–4.) In Plaintiffs' objection, they assert the ADA Plan is vague as to whether the sign language assistive devices at the Jail facilities will actually be functional as of January 2024, as the Sheriff's Department has acknowledged that providing these services depends on internet connectivity. (Doc. No. 416 at 11.) Specifically at issue, the Sheriff's Department has had difficulty implementing these services, "as connectivity issues related to WIFI have been challenging." (*Id.* at 12 (citing Doc. No. 311-16 ¶ 4).) Plaintiffs assert Defendants fail to provide any confirmation that the Wi-Fi problems at the Jail have been rectified, and ask the Court to "require Defendants' plan to include the provision of in-person sign language interpretation not only if 'virtual interpretation services are insufficient,' but also if such interpretation services are unavailable." (*Id.*) Based on the foregoing, the Court **ORDERS** Defendants to address whether the Wi-Fi issues have been rectified in its June 1, 2024 status report, and to amend its ADA Plan to require in-person sign language interpretation if virtual interpretation services are insufficient and/or unavailable.

Next, the ADA Order generally required Defendants to provide Sign Language Interpretation services at all San Diego County jail facilities. (*See generally* ADA Order.) However, Defendants' ADA Plan refers to only providing American Sign Language Interpretation ("ASL"), to which Plaintiffs object. (ADA Plan at 3–4; Doc. No. 416 at 12.)

7

The Court thus **ORDERS** the parties to meet and confer as to the inclusion of sign languages in addition to ASL.

Finally, Plaintiffs object to Defendants' statement that it "intends" to track the use of communication devices, and asserts the ADA Plan should commit the Sheriff's Department to tracking the use of sign language communication devices and the plan to do so, not solely state an "intent" to do so. (Doc. No. 416 at 12.) The Court agrees, and thus **SUSTAINS** Plaintiffs' objection. Defendants are **ORDERED** to amend the ADA Plan to require the Sheriff's Department to track the use of communication devices.

### D.     The New Policies Attached to the ADA Plan

Attached to its ADA Plan, Defendants offer three policies to be implemented beginning 2023. (Doc. No. 409 at 22–28.) Plaintiffs object to these policies and request the Court require the ADA Plan be revised "to require production of draft policies with Plaintiffs' counsel, so that Plaintiffs can offer comments to ensure policies are properly drafted prior to implementation and so that the parties can avoid unnecessary disputes later in the process." (Doc. No. 416 at 13.) For example, one policy on lower bunk/lower tier assignment states: "The recommendation for a lower bunk and/or lower tier will be determined by health staff and entered into the medical instructions." (Doc. No. 409 at 23.) Plaintiffs assert this policy's "recommendation" language places subclass members at risk, and should be replaced with "requirement." (Doc. No. 416 at 13.) The Court agrees. Plaintiffs' objection is **SUSTAINED**, and Defendants are **ORDERED** to revise the ADA Plan to require production of draft policies with Plaintiffs' counsel.

///
///
///
///
///
///
///

**III.    CONCLUSION**

Based on the foregoing, the Court **SUSTAINS IN PART AND OVERRULES IN PART** Plaintiffs' objections to Defendants' ADA Plan. (Doc. No. 416.) As part of the parties' ordered meet and confer efforts, the parties are **ORDERED** to allow the parties' experts to participate in the meet and confer, as required in the ADA Order. (*See* ADA Order ¶ 8.)


**IT IS SO ORDERED.**

Dated:  April 24, 2024

Hon. Anthony J. Battaglia
United States District Judge

9