GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
PRIYAH KAUL – 307956
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
pkaul@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone:  (510) 806-7366
Facsimile:   (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br>v.<br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO TAKE ADDITIONAL DEPOSITIONS AND TO COMPEL DEPOSITIONS**<br>Date:  May 15, 2024<br>Time:  9:00 a.m.<br>Crtrm.: Via Remote Technology<br><br>Magistrate: Hon. David D. Leshner |

[4475113.6]

Case No. 3:20-cv-00406-AJB-DDL

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO
TAKE ADDITIONAL DEPOSITIONS AND TO COMPEL DEPOSITIONS

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................. 1

ARGUMENT ......................................................................................................... 1

I.  PLAINTIFFS SHOULD BE ALLOWED TO DEPOSE SHERIFF KELLY MARTINEZ TO ELICIT RELEVANT TESTIMONY THAT IS APPROPRIATE UNDER APEX WITNESS STANDARDS ...................... 1

   A.  Sheriff Martinez Has Unique, First-Hand, Non-Repetitive Knowledge of Facts At Issue in the Case ............................................. 2

       1.  The Sheriff Has Unique, First-Hand, Non-Repetitive Knowledge ..................................................................................... 2

       2.  The Sheriff's Relevant Knowledge Includes Key Facts At Issue ........................................................................................ 5

   B.  Plaintiffs Have Exhausted Other Less Intrusive Discovery Methods ............................................................................................ 6

II. MORE THAN 10 DEPOSITIONS ARE NECESSARY IN THIS COMPLEX CLASS ACTION ........................................................................ 7

   A.  Plaintiffs Have Noticed 10 Depositions and Will Complete Nine Prior to the Discovery Cut-Off ............................................... 7

   B.  These Deponents Are Insufficient to Fully Address Plaintiffs' Constitutional and ADA Claims ............................................ 8

III. DEPOSITIONS OF NAPHCARE ON-SITE LEADERSHIP MAY BE NECESSARY BECAUSE NAPHCARE'S 30(b)(6) WITNESS COULD NOT ANSWER CRITICAL QUESTIONS ABOUT NAPHCARE OPERATIONS IN SAN DIEGO JAILS ................................... 8

IV. THE DEPOSITION OF DR. FREEDLAND IS NECESSARY TO UNDERSTAND AN APPARENT SIGNIFICANT AND ONGOING CHANGE IN THE PROVISION OF HEALTH CARE IN THE JAIL ............ 9

CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ahlman v. Barnes*,
    2021 WL 1570838 (C.D. Cal. March 9, 2021) ......................................... 2, 3, 6

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    282 F.R.D. 259 (N.D. Cal. 2012) .................................................................... 2

*Del Campo v. American Corrective Counseling Services, Inc.*,
    2007 WL 3306496 (N.D. Cal. Nov. 6, 2007) .................................................. 7

*Green v. Baca*,
    226 F.R.D. 624 (C.D. Cal. Jan. 24, 2005) ....................................................... 2

*Nosrati v. Provident Life and Accident Insurance Co.*,
    2020 WL 1181497 (C.D. Cal. Mar. 10, 2020) ............................................ 7, 8

*Odom v. Roberts*,
    337 F.R.D. 359 (N.D. Fla. 2020) ..................................................................... 1

*Oracle America, Inc. v. Google Inc.*,
    2011 WL 12675492 (N.D. Cal. July 21, 2011) ............................................... 7

*WebSideStory, Inc. v. NetRatings, Inc.*,
    2007 WL 1120567 (S.D. Cal. Apr. 6, 2007) .................................................... 1

**RULES**

Fed R. Civ. P. 30 ........................................................................................... 1, 7

Fed. R. Civ. P. 26 ............................................................................................... 7

# INTRODUCTION

Plaintiffs have diligently pursued fact discovery in this complex class action. But despite Plaintiffs' best efforts, several depositions were delayed until the final weeks of fact discovery. As a result, Plaintiffs have only recently learned which depositions are needed in order to complete their fact discovery.

One of those depositions—the tenth deposition that Plaintiffs noticed—is of Sheriff Kelly Martinez, who has unique and first-hand knowledge of facts that are essential to resolution of this class action seeking injunctive relief. Given the Sheriff's hands-on approach and extensive turnover in her command staff, Sheriff Martinez is the only witness who can testify as to the San Diego County Sheriff's Department's prioritization and implementation of policies aimed at reform.

As permitted by Rule 30(a)(2)(A)(i) and the applicable caselaw, Plaintiffs also seek additional depositions beyond the 10 permitted by Rule 30(a)(2)(A)(i) because NaphCare produced an unprepared "person most knowledgeable" ("PMK") from Alabama in response to Plaintiffs' 30(b)(6) deposition subpoena. In addition, Plaintiffs seek leave to depose Dr. Peter Freedland, who runs Correctional Healthcare Partners ("CHP"), because NaphCare's PMK revealed on April 16, 2024 that CHP recently won a bid to take over a portion of medical care in the San Diego County jails from NaphCare.

# ARGUMENT

## I. PLAINTIFFS SHOULD BE ALLOWED TO DEPOSE SHERIFF KELLY MARTINEZ TO ELICIT RELEVANT TESTIMONY THAT IS APPROPRIATE UNDER APEX WITNESS STANDARDS

Even when a Plaintiff seeks to depose an apex witness, it "is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances." *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007) (permitting apex deposition) (Battaglia, J.); *see also Odom v. Roberts*, 337 F.R.D. 359, 365-66 (N.D. Fla. 2020). When "determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-

hand, non-repetitive knowledge of facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (citation omitted).  The party seeking to depose an apex witness need not "prove conclusively in advance that the deponent definitely has unique, non-repetitive information …." *Ahlman v. Barnes*, 2021 WL 1570838, at *4 (C.D. Cal. March 9, 2021) (citation and quotation marks omitted).  In fact, the party opposing the deposition bears the burden to prevent the deposition.  *Id.* at *5.

Plaintiffs' proposed deposition of Sheriff Martinez meets these criteria.  No one in the Sheriff's Department can provide testimony that is as probative regarding the prioritization and implementation of relevant policies as Sheriff Martinez.

### A. Sheriff Martinez Has Unique, First-Hand, Non-Repetitive Knowledge of Facts At Issue in the Case

Sheriff Martinez is directly responsible for and intimately involved in determining what the Sheriff's Department has done, can do, and plans to do in order to address the constitutional and ADA violations alleged in Plaintiffs' Third Amended Complaint.

#### 1. The Sheriff Has Unique, First-Hand, Non-Repetitive Knowledge

The Sheriff's unique role as "final policymaker for the County in setting and implementing jail" policies lends significant weight to any testimony she gives about the Department's current and future priorities regarding the jail.  *Green v. Baca*, 226 F.R.D. 624, 649 (C.D. Cal. Jan. 24, 2005) (denying Sheriff's motion to preclude him being called as a witness).  As Defendants' own counsel admitted, "[t]here is no dispute that the buck stops with the Sheriff …."  *See* Declaration of Gay Crosthwait Grunfeld in Support of Plaintiffs' Motion for Leave to Take Additional Depositions and Compel Depositions ("Grunfeld Decl.") ¶ 13.

Under similar circumstances, Magistrate Judge Kewalramani of the Central

1  District allowed the Orange County Sheriff to be deposed.  *Ahlman v. Barnes*, like
2  this case, was "not a typical civil rights case against a local sheriff's department."
3  2021 WL 1570838, at *5.  Instead, the Plaintiffs in that case sought class certifica-
4  tion and injunctive relief regarding the Orange County Sheriff's Department's
5  policies on COVID-19 in the jail.  The court ultimately held that the Sheriff could be
6  deposed because "Plaintiffs appear to seek factual information surrounding the
7  existing COVID-19 related policies at the Orange County Jail, and the best person to
8  provide such information is the final policymaker," the Sheriff.  *Id.*  Further,
9  Plaintiffs "provided evidence that Sheriff Barnes is personally involved in and
10 ultimately sets COVID-19 related policies."  *Id.* at *6.

11         The same reasoning favors deposing Sheriff Martinez here.  In a recent
12 deposition, retired Assistant Sheriff Theresa Adams-Hydar confirmed that Sheriff
13 Martinez "has the final say on policy and procedure."  *See* Declaration of Van
14 Swearingen in Support of Plaintiffs' Motion for Leave to Take Additional
15 Depositions and Compel Depositions ("Swearingen Decl."), Ex. A-12.  Because
16 Plaintiffs are pursuing injunctive relief, the outcome of the case will depend both on
17 what Plaintiffs can prove occurred in the Jail in the past, and what the parties can
18 demonstrate is likely to occur again in the future, including policies the Sheriff plans
19 to implement.  Sheriff Martinez's testimony regarding the policies she plans to
20 prioritize and the resources that are available to her is the most relevant evidence
21 available in assessing whether and to what degree judicial oversight is needed.

22         Sheriff Martinez was appointed Undersheriff in early 2021, a position that
23 gave her direct responsibility over the day-to-day operations of the Department,
24 including the jails.  *See* Grunfeld Decl. ¶ 17, Ex. B.; ¶ 18, Ex. C.  When then-Sheriff
25 Bill Gore retired, Martinez took over as Acting Sheriff from February 3, 2022 until
26 March 23, 2022.  *Id.* ¶ 19, Ex. D.

27         The day she became Acting Sheriff, the California State Auditor released an
28 audit that found the Sheriff's Department had failed to adequately prevent and

respond to in-custody deaths from 2006 to 2020. That same day, Sheriff Martinez emailed all Sheriff's Department staff regarding the audit and stated "[m]any of the recommendations by the auditors were provided by us. Some have already been implemented. For those that we are moving to implement, we stand by our commitment to see them through." *Id.* ¶ 20, Ex. E. Soon thereafter, Sheriff Martinez issued a press release announcing specific recommendations from the audit, including "[b]etter security checks by deputies," "Making sure inmates are healthy, proof of life checks," and "Medical and mental health assessment [of] inmates during the time of intake." *Id.* ¶ 21, Ex. F. Retired Assistant Sheriff Theresa Adams-Hydar, during her April 17, 2024 deposition, testified that Sheriff Martinez wanted staff to focus on the issues in the audit. Swearingen Decl., Ex. A-4, 5.

Sheriff Martinez returned to being Undersheriff while running for office between March 23, 2022 until she was elected Sheriff and sworn in on January 5, 2023. *See* Grunfeld Decl., ¶ 25, Ex. J. During that time, she was involved in the response to critical incidents in the jails that are subjects of this case, including directly reviewing and approving press releases about in-custody overdoses and deaths. *Id.*, ¶ 22, Ex. G; ¶ 23, Ex. H. Sheriff Martinez was also involved in costing out estimates for the Department to purchase scanners while Undersheriff. *Id.* ¶ 24, Ex. I.

Since assuming office in January 2023, Sheriff Martinez has routinely taken personal responsibility and credit for the Department's policies that are directly at issue in this case. After being sworn in, Sheriff Martinez emailed her entire staff, stating: "I am committed to continuing to improve the jails, support our staff, and provide everyone working in our facilities the tools they need to keep our environments safe." Grunfeld Decl., ¶ 26, Ex. K. She remained involved with press releases after becoming Sheriff, and "approves everything that goes out." Swearingen Decl. at A-7. Moments after the ADA settlement in this case was

finalized, Dkt. 355, the Sheriff issued a press release stating that "Sheriff Martinez and her team are committed to compliance with all the terms" in the Order. Grunfeld Decl., ¶ 27, Ex. L.  Shortly after that, the Sheriff organized a tour of Rock Mountain, inviting members of the press to walk-through the newly-renovated facility.  *Id.*, ¶ 28, Ex. M.  Last Fall, the Sheriff personally appeared before the Board of Supervisors seeking support for her infrastructure plan, which she characterized as part of her response to the State Auditor's report.  *Id.*, ¶¶ 29-30, Ex. N, Ex. O.  Following this month's public release of video footage regarding the death of Elisa Serna, Sheriff Martinez issued a statement that "I have made substantial changes improving the conditions in our county's jails.  Those changes are ongoing, and I am committed to seeing them through."  *Id.*, ¶ 31, Ex. P.  In that same article, Martinez asserted that "[w]e have increased the Medication-Assisted Treatment Program" and that "[o]ther significant improvements have been made."  *Id.*

### 2. The Sheriff's Relevant Knowledge Includes Key Facts At Issue

Sheriff Martinez's involvement in and responsibility for the alleged policy changes discussed above are highly relevant.  When Defendants moved to dismiss the Third Amended Complaint, they argued that the injunctive relief Plaintiffs sought was irrelevant because the department had since made changes, and "an injunction cannot lie on outdated facts."  Dkt. 247 at 16, n.3.  In Defendants' opposition to Plaintiffs' motion for preliminary injunction, they argued that the "request for injunctive relief is moot given recent and ongoing changes" in the jail. Dkt. 311 at p. 15.

Plaintiffs anticipate that Defendants will take the same approach on the merits.  Given Sheriff Martinez's own statements about "significant improvements" and "ongoing" changes, deposing her is necessary to assess Defendants' potential defenses.  In particular, the Sheriff is best-situated to testify to Defendants' alleged plans for further changes, including how Defendants are prioritizing policy changes

in response to the State Audit and potentially in response to this lawsuit.

### B. Plaintiffs Have Exhausted Other Less Intrusive Discovery Methods.

Plaintiffs made a good faith effort during Ms. Adams-Hydar's deposition to learn about the Sheriff's current plans on a number of key issues, but because she is retired, Ms. Adams-Hydar testified repeatedly that she did not know what the Department's current priorities or plans for reform are. Swearingen Decl., Ex. A-8-9 (body scanners); Ex. A-10 (cargo scanners); A-13 (staff recruitment); A-14-15 (NCCHC compliance); A-16 (delays in mental healthcare); A-17 (retention of NaphCare); A-18 (technology). Following Ms. Adams-Hydar's retirement, no one in Sheriff Martinez's Command Staff has anywhere near the experience she has in executive, decision-making roles at the Sheriff's Department. Only one Assistant Sheriff oversees the jails. The Assistant Sheriff who replaced Ms. Adams-Hydar has been in office for only a few weeks, and lacks any detention experience. *See* Grunfeld Decl. ¶ 33, Ex. S. There is no current member of command staff that can speak to the plans and priorities Sheriff Martinez has referred to in her public statements, and how those priorities are currently being implemented, other than Sheriff Martinez herself.

Further, in order to minimize any burden on the Sheriff, Plaintiffs are amenable to deposing Sheriff Martinez at any location that is convenient for her, including her office. Plaintiffs have already offered to limit the deposition to four hours. *See* Grunfeld Decl., ¶ 13. This approach is in line with *Ahlman*, where the court permitted Plaintiffs to depose the Orange County sheriff, but "limit[ed] the Plaintiffs' deposition to half a day …." *Ahlman*, 2021 WL 1570838, at *10. A similar limitation here will not interfere with Sheriff Martinez's ability to perform her duties.

## II. MORE THAN 10 DEPOSITIONS ARE NECESSARY IN THIS COMPLEX CLASS ACTION

Under Rule 30(a)(2)(A)(i), a party may be granted leave to take more than 10 depositions so long as "the discovery sought is 'relevant to the party's claims or defenses' and not unreasonably cumulative, duplicative, or burdensome." *Oracle America, Inc. v. Google Inc.*, 2011 WL 12675492, at *1 (N.D. Cal. July 21, 2011) (quoting Fed. R. Civ. P. 26(b)(2)); *see also Nosrati v. Provident Life and Accident Insurance Co.*, 2020 WL 1181497, at *3 (C.D. Cal. Mar. 10, 2020) (citation and quotation marks omitted). Courts routinely permit parties to take more than ten depositions in class actions when their "complexity clearly warrants more than ten depositions." *Del Campo v. American Corrective Counseling Services, Inc.*, 2007 WL 3306496, at *6 (N.D. Cal. Nov. 6, 2007).

### A. Plaintiffs Have Noticed 10 Depositions and Will Complete Nine Prior to the Discovery Cut-Off

To date, Plaintiffs have noticed ten and will have completed nine depositions prior to the discovery cut-off date. Three were 30(b)(6) depositions and seven were individual depositions. The first 30(b)(6) deposition of the Sheriff's Department was in early, expedited discovery and focused on mobility disabilities and effective communication for people incarcerated at Central Jail and Rock Mountain only, *see* Dkt. 258, Ex. B; *see also* Grunfeld Decl., ¶ 3. Plaintiffs are also conducting a 30(b)(6) deposition of the Sheriff's Department regarding the remainder of the disability claim and the other seven claims in the case, with the Sheriff's Department designating 16 people to testify about portions of the claims in the case. *See* Grunfeld Decl. ¶ 4. And Plaintiffs conducted one 30(b)(6) deposition of NaphCare of San Diego, LLC, which is the subject of a separate Motion. *See* Declaration of Priyah Kaul in Support of Plaintiffs' Motion for Leave to Take Additional Depositions and Compel Depositions ("Kaul Decl.") ¶¶ 5-6, 11. The individual depositions have been of Kenneth Jones, Christina Ralph (aka

Bavencoff), Aseel Ross, Serina Rognlien-Hood, Theresa Adams-Hydar, Abigail Torres, and Sheriff Kelly Martinez, who Defendants have declined to produce. See Grunfeld Decl., ¶¶ 5–11 for further detail on each deponent.

### B. These Deponents Are Insufficient to Fully Address Plaintiffs' Constitutional and ADA Claims

Within the context of this class action, which includes eight existing and significant claims, granting Plaintiffs leave to take at most four additional depositions is reasonable and proportional to the needs of the case. Plaintiffs have narrowly tailored their additional depositions to only address critical—and newly discovered—gaps in the evidence from the existing deponents that Plaintiffs could not have known about until April 16, 2024. *See Nosrati*, 2020 WL 1181497, at *4.

## III. DEPOSITIONS OF NAPHCARE ON-SITE LEADERSHIP MAY BE NECESSARY BECAUSE NAPHCARE'S 30(b)(6) WITNESS COULD NOT ANSWER CRITICAL QUESTIONS ABOUT NAPHCARE OPERATIONS IN SAN DIEGO JAILS

On April 16, 2024, NaphCare's designated 30(b)(6) deponent failed to provide information on the noticed topics. This Court has held an IDC hearing on that issue and ordered further meet-and-confer and briefing. Dkt. 619. However, should Plaintiffs' Motion to Compel an adequate 30(b)(6) deponent fail, in the alternative, Plaintiffs seek to depose three on-site NaphCare health care personnel *See* Kaul Decl., ¶¶ 5-7. At the PMK deposition, NaphCare did not produce its Health Services Administrator/Program Director ("HSA"), Medical Director, or Mental Health Director, all of whom are on-site professionals in San Diego. Pursuant to NaphCare's contract with the Sheriff's Department, NaphCare must staff an on-site Medical Director. The Medical Director's duties include, but are not limited to participating in the continuous quality improvement program, sitting on a medical audit committee, reviewing patient charts, and medication administration. *See, e.g.*, Dkt. 488-3, Ex. B (NaphCare contract) at 52-54, 60-61. NaphCare must also provide an on-site Mental Health Director, *id.* at 71, who is "responsible for the

1  overall delivery of mental health care by Contractor staff" and works with the
2  Sheriff's Department's mental health director. *Id.* at 84. NaphCare's on-site
3  Program Director/Health Services Administrator ("HSA"), Dr. Farrier, was
4  previously designated to be the 30(b)(6) witness. Kaul Decl., ¶ 5. As the Court
5  noted in the April 23, 2024 Order granting Plaintiffs' motion to compel, these three
6  on-site leaders are involved in NaphCare's reviews into deaths at the jail. *See* Dkt.
7  617 at 4.

8      Instead of producing one of those individuals , NaphCare produced Angela
9  Nix, who is based in Alabama. Kaul Decl., ¶ 5. As will be demonstrated in
10 Plaintiff's Motion to Compel due May 13, 2024, Ms. Nix was not able to answer
11 many critical questions about medical and mental health care at the Jail. *See* Kaul
12 Decl. Ex. A at 25, 29-30, 109, 127-29, 165-66. NaphCare's San Diego on-site
13 leadership should be equipped to testify about this information. Indeed, Ms. Nix
14 herself testified that the has is the "primary contact" for operational issues at the Jail
15 facilities, *id.* at 225, and is better equipped to testify about issues like medical
16 discharge planning, *id.* at 35-36, outside care, *id.* at 75-76, staffing, *id.* at 225, and
17 the provision of medically necessary supplies, *id.* at 241. Moreover, each of these
18 individuals can testify about the death reviews that they are involved in and that
19 NaphCare is now obligated to produce by May 3, 2024. Dkt. 617.

20     If the Court denies Plaintiffs' Motion to Compel, Plaintiffs respectfully seek
21 in the alternative to depose the HSA, Medical Director, and Mental Health Director
22 for their personal knowledge about how NaphCare provides health care in the Jail—
23 a core issue in this case. The burden on NaphCare is minimal, as all three witnesses
24 are in San Diego and Plaintiffs will limit the depositions to four hours each.

25 **IV.  THE DEPOSITION OF DR. FREEDLAND IS NECESSARY TO
       UNDERSTAND AN APPARENT SIGNIFICANT AND ONGOING
26     CHANGE IN THE PROVISION OF HEALTH CARE IN THE JAIL**

27     Plaintiffs also seek to depose Dr. Peter Freedland, who is the chief executive
28 of Correctional Healthcare Partners, Inc. ("CHP"), a private medical group. On

April 16, 2024, Plaintiffs learned for the first time that the Sheriff's Department has awarded CHP a contract to replace NaphCare in part and directly supply medical providers at the Jail to the Sheriff's Department. Kaul Decl., ¶ 9 & Ex. A at 55-56. This is an important and very recent development affecting the constitutionality of the medical care provided at the Jail. Yet NaphCare's witness could not testify about any details of the care that CHP will provide, or the timeline for any transition. *See* Ex. A at 57. Nor have Defendants responded substantively to Plaintiffs' requests for further information on this transition from NaphCare to CHP. Grunfeld Decl., ¶ 15. It is possible that a pending 30(b)(6) deposition, in which Dr. Jon Montgomery will testify about health care at the Jail, could address this issue. But at the time of this Motion, Plaintiffs do not know whether Dr. Montgomery will be able to answer questions about the transition from NaphCare to CHP. As such, deposing Dr. Freedland is necessary to understand the scope of the services CHP will now be providing in the Jail, and whether that will result in any change to health care policies, procedures, and practices. Plaintiffs could not have known about this development until April 16, 2024, and promptly initiated an informal discovery conference upon learning of Defendants' decision to change providers. *See* Kaul Decl., ¶ 11. This deposition is not burdensome to Dr. Freedland, as the deposition would be limited to four hours and occur in San Diego, where he is located. Moreover, if Defendants' 30(b)(6) witness can testify about the transition and the care CHP will be providing, Plaintiffs will withdraw the request to depose Dr. Freedland.

## CONCLUSION

Plaintiffs respectfully request that the Court permit the deposition of Sheriff Kelly Martinez and grant leave to take at most four additional depositions beyond the ten noticed.

DATED: April 24, 2024                Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Gay Crosthwait Grunfeld*
Gay Crosthwait Grunfeld

Attorneys for Plaintiffs and the Certified Class and Subclasses