Pages 1 - 24

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Before The Honorable David D. Leshner, Magistrate Judge

```
DARRYL DUNSMORE, et al.,       )
                               )
          Plaintiffs,          )
                               )
  VS.                          )        NO. 20-CV-00406-AJB-DDL
                               )
STATE OF CALIFORNIA, et al.,   )
                               )
          Defendants.          )
_____)
```

San Diego, California
Tuesday, April 23, 2024

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiffs:
ROSEN BIEN GALVAN & GRUNFELD, LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105
BY: **GAY CROSTHWAIT GRUNFELD, ESQ.**

For Defendants:
BURKE, WILLIAMS & SORENSEN LLP
60 South Market Street, Suite 1000
San Jose, California 95113
BY: **ELIZABETH MARIE PAPPY, ESQ.**

Transcribed By:  James C. Pence-Aviles, RMR, CRR, CSR No. 13059
Official Court Reporter

| | |
|---|---|
| 1 | **Tuesday - April 23, 2024** <span style="float:right">**11:30 a.m.**</span> |

1    **Tuesday - April 23, 2024**                                    **11:30 a.m.**

2                   **P R O C E E D I N G S**

3                       ---oOo---

4        **THE COURT:**  All right.  We are on the record for a

5 discovery conference in Dunsmore, et al., versus San Diego

6 County Sheriff's Department, et al., Case Number 20-CV-406.

7        May I have appearances from counsel, beginning with

8 plaintiffs' counsel.

9        **MS. GRUNFELD:**  Good morning, Your Honor.  Gay Grunfeld

10 for plaintiffs and the certified class.

11          **THE COURT:**  Thank you.  Good morning.

12        **MS. PAPPY:**  Good morning, Your Honor.  Elizabeth Pappy

13 on behalf of defendants.

14         **THE COURT:**  Okay.  And good morning to you as well.

15        I have before me Mr. Swearingen's email from April 19th

16 requesting a discovery conference.

17        I have, in preparation for this hearing, reviewed the

18 interrogatory at issue.  That is Interrogatory 25.  I have

19 reviewed my February 14th order on plaintiffs' motion to

20 compel -- that was Docket Number 536 -- the parties' joint

21 status reports from February 20th and March 5th, and the

22 transcript of our discussion of this issue on March 6th as well

23 as my order following that hearing, which is Docket Number 586.

24 And I have some very specific questions for Counsel.

25        First, Ms. Grunfeld, was the issue regarding compliance

1    with Interrogatory Number 25 discussed between the parties at

2    one of the court-required weekly conferences?

3            **MS. GRUNFELD:** Yes, Your Honor.

4            **THE COURT:** And you-all were unable to resolve it at

5    that time?

6            **MS. GRUNFELD:** It was on several agendas.  I'm happy

7    to go through my recollection of the agendas.  I reviewed them.

8            **THE COURT:** I just want to make sure that it was

9    discussed between the parties at one of these weekly meetings.

10           **MS. GRUNFELD:** Yes.

11           **THE COURT:** All right.  When did the County produce

12    the updated -- or records showing the dates of disciplinary

13    segregation or separation?

14           **MS. GRUNFELD:** My understanding is that was produced

15    around March 14th, but we did not know that was produced until

16    March 27th, at which point we were informed about that at a

17    meet-and-confer, and we placed the issue on the following

18    April 3rd agenda.  But Ms. Pappy was not at that agenda -- at

19    that meeting.  Ms. Coleman was.

20        We sent a follow-up email about it, and it was discussed

21    in detail on April 10th, at that Wednesday meet-and-confer.

22    And we made a proposal on April 14th.  We put it on the agenda

23    again on April 14th.  We sent an email about it on April 16th

24    with the compromise that we've asked for at this time.

25           **THE COURT:** My understanding of this issue is that the

1   plaintiffs seek dates individuals were held in administrative

2   separation because the concern or the assertion is that

3   individuals may be placed in administrative separation without

4   a -- a formal hearing being scheduled and thus remain there

5   perhaps longer than they should.

6        Is that a fair, very rough summary, Ms. Grunfeld?

7            **MS. GRUNFELD:**  Your Honor, that's a partial summary of

8   what Dr. Austin is trying to opine upon.  You may recall that

9   he filed a declaration in January saying this was the snapshot

10  data that he gets from many counties.

11       He is analyzing whether administrative separation is

12  overused; that is to say, used for people who are mentally or

13  cognitively disabled instead of for disciplinary separation

14  only.  He's also analyzing how long people are held in that

15  status.

16       So I don't -- I can't give the full scope of his opinions,

17  but I can tell you that he has filed a declaration saying he

18  needs this information about the date of placement in the

19  status, and we've proposed a compromise.  We proposed it

20  earlier.  Then we discussed it at the March 6th hearing.

21       And we -- we were told that we didn't need to have the

22  compromise of 50 people because there was a spreadsheet.  But

23  as the Court and Ms. Pappy are aware, the spreadsheet only

24  deals with administrative separation, which is a subset.

25            **THE COURT:**  You meant disciplinary.

 1          **MS. GRUNFELD:**  Yes.  I'm so sorry.  Disciplinary.

 2          **THE COURT:**  That's okay.  All right.

 3          **MS. GRUNFELD:**  Yes.

 4          **THE COURT:**  Got it.

 5      All right.

 6          **MS. GRUNFELD:**  It only -- only deals with that, and

 7  that is why we are here today.

 8          **THE COURT:**  All right.  So let me turn to Ms. Pappy.

 9      In reviewing the transcript from the March 6th hearing,

10  everybody thought that we had resolved this issue because the

11  records to be produced would cover all four of the spreadsheets

12  at issue.

13      And I'm looking at ECF Page Number 34, and my summary of

14  that is that if there is an issue with respect to individuals

15  who are on one of these four spreadsheets but for whom you do

16  not receive a date they were initially placed in administrative

17  separation, you may request, meaning the plaintiffs, an

18  immediate discovery conference with me, and I will most likely

19  direct the County to provide the administrative separation date

20  for those individuals.

21      So I guess, Ms. Pappy, I -- the reason I asked about the

22  weekly meet-and-confers is it seemed to me that if this data

23  that the County provided, acting in good faith, did not contain

24  the dates of placement in and out of administrative

25  separation -- that that's something that you-all could have

1   figured out amongst yourselves.

2       We obviously have a number of issues that we're dealing

3   with.  The pace of discovery conferences seems to have

4   quickened, not slowed, and maybe there's a good reason for

5   that.  We'll talk about that further later this week.

6       But I do want to know, Ms. Pappy, what -- what's the

7   dispute?  If the information is only disciplinary separation

8   for which there are hearings, but there's -- the issue really

9   is placement in administrative separation for which there may

10  not be hearings, and the disciplinary data wouldn't catch that,

11  why is there a dispute?

12      **MS. PAPPY:**  Well, let's go back to what -- what the

13  plaintiffs originally asked for, and you ordered, was the date

14  they were initially placed.

15      They have the date that everybody was initially placed in

16  administrative separation, everybody.  What they don't have,

17  and what the meet-and-confer has focused on, is how long they

18  were there.  So you have to have the date that they were taken

19  out of administrative separation.

20      And so initially has already been produced -- produced

21  months ago.  The release date is what the issue was.  The --

22  the system does not track -- the system that the original

23  spreadsheet came from does not track the discharge date or the

24  date they were transferred out of it.  However, if they are in

25  there for a disciplinary reason, then -- then they do track

1   that in a different database.

2       And so we gave them a spreadsheet with 11,000-plus entries

3   on it that I think I mentioned -- dating back to 1/1/2021

4   through the end of 2023.  So they have 11,000 in and out,

5   people, people's names, in and out dates.  Now, does that

6   include somebody that was not put in for a disciplinary reason?

7   No, because they don't track that.

8       And if you will recall -- or I'm not sure if you were

9   involved in these conversations, but the meet-and-confer with

10  plaintiffs -- this has been going on for a while, since

11  March 6th -- is -- is that the PDFs that -- that the County

12  would have to hand-search PDFs, custody files, to figure out

13  when somebody was taken out of ad sep unless they were

14  disciplined -- they were there for disciplinary reasons.

15      So what we had originally talked about was, "Well, we can

16  probably produce the PDFs for all these folks in disciplinary,"

17  but then my client was able to say, "No.  No.  Wait.  We don't

18  have to do that.  We can come up with the spreadsheet."  So we

19  produced the spreadsheet.

20      But plaintiffs have always known that we would have to

21  individually search custody files to -- for anybody not on the

22  disciplinary list but in there for other than a disciplinary

23  reason.  So plaintiffs saying to us -- and we thought we had

24  resolved this.

25      While I was on vacation, plaintiff renewed this issue,

1    knowing that I was out of town and knowing that Ms. Coleman

2    would be at the hearing.  She wisely punted it to my return,

3    and I was surprised that we still had an issue, given that I

4    gave them the disciplinary record, which had 11,000 names on

5    it.

6        That said, what they then said to me is really a

7    non sequitur.  "Well, we will" -- "we will limit our search to

8    50 custody files."

9        And my question back was, "But I gave you 11,000 in and

10   out dates.  So what is it that you are looking for?" because

11   what the plaintiffs just said is, "No hearing's scheduled."

12   That actually -- you actually said that.

13       That wasn't the issue.  It was -- that wasn't the issue

14   articulated by plaintiffs when they originally scheduled it.

15           **THE COURT:**  Okay.

16           **MS. PAPPY:**  It was -- it was ad sep in, and then they

17   raised this issue of out, and then we went down this, "Well,

18   let me see what I can figure out about 'out.'  Can't get 'out,'

19   but we can get the length of stay for those in there for a

20   disciplinary record."

21       What I have offered to plaintiff is, "If you want to give

22   me a very limited number of names of people that are not on the

23   disciplinary list" -- because we would have to search people's

24   custody and mental health care records to figure out who has a

25   mental health care issue.  And is that mild depression?  Is

1  that major depression?  Is that schizophrenia?  What is that?

2       They never did that.  They never gave me that list.  I

3  just got this sort of generic, "How about 50 names?"  How about

4  50 names for what?  They already have a disciplinary list.

5  That's my perspective on both where we are and how we got here.

6            **MS. GRUNFELD:**  May I respond, Your Honor?

7            **THE COURT:**  No, not yet.  I'm reading the transcript,

8  and I want to hear what you're saying when you do respond.

9                      (Pause in the proceedings.)

10           **THE COURT:**  So I have a few more questions for you

11  before I hear from Ms. Grunfeld.

12       It -- I'm looking at Page 31 of the transcript, where

13  Mr. Swearingen is telling me that the reason they -- he said,

14  "People are placed in lockdown -- or administrative separation

15  for too long without a hearing process," and the County's

16  proposal would not capture those individuals.

17       That's -- that's why I referenced the argument about a

18  hearing date, Ms. -- Ms. Pappy.  But let me ask this, just to

19  cut to it, because I continue to believe that this is something

20  that is not a good use of our collective time, candidly, in

21  terms of, like, the ability to talk to one another.

22       Ms. Pappy, the spreadsheet with 11,000 entries does --

23  that includes the dates in and out of disciplinary separation

24  or segregation; is that correct?

25           **MS. PAPPY:**  Yes.

1          **THE COURT:**  Does that same spreadsheet include the

2    dates for anyone in and out of administrative separation, with

3    my understanding being that administrative separation and

4    disciplinary separation are two different things?  But you are

5    welcome to correct me if that's wrong.

6          **MS. PAPPY:**  Sure.

7       They are -- administrative separation is a location in the

8    jail, and the disciplinary folks go into ad sep -- into ad sep

9    cells.

10      And it's the stay in these cells and how long they stay in

11   these cells that the plaintiffs complain about, whether they

12   are for disciplinary reasons, as Ms. Grunfeld said -- that's

13   one of the things her expert is looking at -- or not.

14         **THE COURT:**  So administrative separation is a location

15   and not a status, is what you are saying?

16         **MS. PAPPY:**  That's right.

17         **THE COURT:**  So if somebody were placed in the

18   administrative separation cell that was not facing disciplinary

19   proceedings, would they -- would they be captured on the

20   11,000-entry spreadsheet as their dates in and out of an

21   administrative separation cell?

22         **MS. PAPPY:**  No.

23         **THE COURT:**  Okay.

24         **MS. PAPPY:**  It would be in their custody file.

25         **THE COURT:**  Understood.

 1      And I don't know that I truly appreciated that distinction

 2   on March 6th.

 3          **MS. PAPPY:**  Well -- and in fairness, Judge, you

 4   wouldn't have appreciated it, and -- and plaintiffs' counsel

 5   wouldn't have appreciated it, because this was all information

 6   that I -- got explained to me after the fact --

 7          **THE COURT:**  Okay.

 8          **MS. PAPPY:**  -- and, I think, produced that

 9   disciplinary spreadsheet after the hearing.

10          **THE COURT:**  Right.

11      No.  I think that's right, and I invited the plaintiff

12   to -- plaintiffs to reach back out if, in my words, the

13   spreadsheets don't include the date the individuals were placed

14   in administrative separation.  Again, I think you -- based on

15   the erroneous understanding that administrative separation and

16   disciplinary separation were two different things.

17      Understanding that they are -- administrative separation

18   is an area of the jail, Ms. Pappy, and that the records you

19   produced show the dates that individuals were placed in

20   administrative separation cells for disciplinary reasons, there

21   does seem to be an information gap, as you had described,

22   where, if an individual is placed in an administrative

23   separation cell but without a disciplinary hearing, they would

24   not -- that information would not be available or ascertainable

25   by the plaintiffs, based on what you've provided.

1      What is the -- what is the County's objection to producing

2  some limited number of -- well, searching some limited number

3  of custody files for an identified individual and giving the

4  plaintiffs the -- the dates these individuals were placed in

5  and out of the administrative separation area?

6          **MS. PAPPY:**  In that broad term, none.

7          **THE COURT:**  So with that being said, if Ms. Grunfeld

8  were to send you the name -- the names of -- I'm just -- I'm

9  making this up --

10         **MS. PAPPY:**  Uh-huh.

11         **THE COURT:**  -- 25 individuals and say, "We would like

12 you" --

13         **MS. PAPPY:**  Uh-huh.

14         **THE COURT:**  -- "to search the custody file for these

15 individuals and tell us the dates that they were placed in

16 administrative separation and the dates they were returned to

17 general population," does the County have any objection to

18 that?

19         **MS. PAPPY:**  No.

20         **THE COURT:**  My next question is for Ms. Grunfeld.

21     Based on the information that the plaintiffs have

22 received, are you able to generate names of incarcerated

23 individuals who were placed in an administrative separation

24 cell but were not pending disciplinary proceedings with

25 scheduled hearing dates?

1        **MS. GRUNFELD:**  Yes, Your Honor.  We sent those last

2   week.  We sent 50 names that Dr. Austin picked from the

3   original list, and we sent them to defendants, and we said,

4   "This was the original concept when we thought you didn't have

5   the information.  Could you please do that?"

6        And we were told, "No."  So that's why we're here today,

7   and I also would just like to clarify a couple of things.  I

8   have the four spreadsheets the defendants produced.  I am told

9   that these do not reflect the date of placement in

10  administrative separation.

11       So other than -- and, also, administrative separation is

12  both a place and a status.  It's not -- when one is housed

13  there, we say they are in administrative separation, that their

14  status is administrative separation.  And there are more than

15  11,000 people who have been placed in that status at this jail

16  over the past three years.

17       So I'm -- I'm hearing for the first time that we already

18  have the dates of placement in administrative separation, and I

19  have before me four spreadsheets with Bates numbers.  So I'm

20  hoping that Ms. Pappy can tell me which spreadsheet contains

21  the date of placement in administrative separation because I

22  don't believe I have that information.

23       **THE COURT:**  Candidly, Ms. Grunfeld, I appreciate your

24  comments.  This is exactly why I instructed you-all to meet and

25  confer on a weekly basis so that, respectfully, you're not

1    doing it on the fly in front of me.

2        I mean, this is -- I'm -- I'm really disappointed that

3    this is the nature of the communications that we are having in

4    this conference.

5        And I -- I'm frankly struggling, Counsel, to understand

6    why you have these questions for Ms. Pappy, Ms. Grunfeld, that

7    really should have been addressed by you-all between yourselves

8    in this -- in this weekly meeting and to have an honest and

9    open conversation about what's happening without me being on a

10   Zoom with you-all trying to figure this out on the fly.

11       And I am -- who attended the weekly meet-and-confer on

12   April 10th?

13           **MS. GRUNFELD:**  I did, Your Honor.

14           **THE COURT:**  Who else?

15       **MS. PAPPY:**  I did.

16       **MS. GRUNFELD:**  Let's see.

17       April 10th -- Mr. Anderson was there and took notes,

18   Mr. Swearingen, and -- I can't remember the other plaintiffs'

19   counsel, but I can provide that to the Court, if -- if you

20   would like me to look right now.

21           **MS. PAPPY:**  I think Mr. Young was there.

22       Wasn't he there?

23           **THE COURT:**  Well, I -- okay.  That's all I need to

24   know for now.

25       I -- let me back up.

1       Are we sliding backward, Ms. Pappy?

2               **MS. PAPPY:**  No, I don't think so.

3               **THE COURT:**  Okay.  Good.

4               **MS. PAPPY:**  I don't think so.

5               **THE COURT:**  Ms. Grunfeld, are we sliding backward?

6               **MS. GRUNFELD:**  I don't know, Your Honor.  We did

7       discuss these -- this issue has been on the meet-and-confer on

8       March 27th, April 3rd, April 10th, and April 19th.

9           So we have attempted to resolve this issue without

10      bothering the Court.

11              **THE COURT:**  I -- it's not bothering the Court.  It's

12      not that.  I -- and -- it's my job, and I'm happy to help you

13      resolve disputes that you really can't on your own.

14          But when we're sitting here in a meet- -- in a discovery

15      conference on the record and there are, you know, questions

16      that you want to pose to Ms. Pappy and to interpret what

17      they -- the spreadsheet data -- I mean, that's where -- where

18      my antenna goes up, Ms. Grunfeld, is why -- why this wasn't

19      discussed between the parties during one of the

20      meet-and-confers.

21          I'm glad to hear, from Ms. Pappy's perspective, things

22      aren't going backward.  I am trying to figure out, you know,

23      how I can best help you-all continue to move the case forward,

24      and I'm just going to -- I'll leave it at that for now.

25          I understand that administrative separation is both a -- a

1    location and can be a status.  And when you say it's a status,

2    Ms. Grunfeld, are you referring to people who are in the -- in

3    a -- in a separation cell but are not facing disciplinary

4    proceedings with a hearing?  Is that correct?

5              **MS. GRUNFELD:**  Yes, Your Honor.  It's colloquially

6    "lockdown."

7              **THE COURT:**  But -- but -- but -- but lockdown for

8    reasons other than a scheduled disciplinary proceeding with a

9    hearing?

10             **MS. GRUNFELD:**  Yes.  There -- I -- when you are in a

11   unit, no one's saying, "Oh, you're here for that, and you're

12   here for that"; right?  But yes.

13             **THE COURT:**  Well, I understand that.

14        But I am trying to understand the -- drill down on the

15   distinction that you are drawing between the data showing

16   individuals in and out of a separation cell for disciplinary

17   reasons, where the data is going to be captured according to

18   Ms. Pappy, and individuals who are in and out of a separation

19   cell for a nondisciplinary reason for which there -- there may

20   not be those dates in and out reflected in the data that the

21   defendant -- the County provided.

22        So here's my question, Ms. Pappy:  Do you have the

23   50 names that Ms. Grunfeld proposed?

24             **MS. PAPPY:**  I do.  In fact, I was looking that up

25   while you were talking.  I -- I'm assuming I do.  I have an

```
 1   email from Mr. Swearingen dated April 16th --
 2            THE COURT:  All right.  And does it have --
 3            MS. PAPPY:  -- with that information.
 4            THE COURT:  It has 50 names?
 5            MS. PAPPY:  Hang on.  Let me -- yes, it does.
 6            THE COURT:  What is the burden to the County of
 7   determining whether the date on which each of those individuals
 8   was in separation, whether we're calling it administrative or
 9   disciplinary, in and out?
10            MS. PAPPY:  Well, if these people are on the
11   disciplinary list, which I'll cross-check in a couple of
12   minutes --
13            THE COURT:  If -- assuming they're not because
14   we're -- presumably --
15            MS. PAPPY:  Yes.
16            THE COURT:  -- these are individuals who are in
17   separation for some reason other than disciplinary.
18            MS. PAPPY:  Yeah.
19        Assuming they're not, we're going to have to pull 50
20   custody records, and --
21            THE COURT:  Right.
22            MS. PAPPY:  -- we'll get them.  So I would say that
23   will probably take somebody, you know, four or five hours,
24   setting aside, like, "This is all I'm going to do for four or
25   five hours."
```

1       **THE COURT:**  Right.

2       All right.  Okay.  I want to look at the documents again.

3  Give me just a moment, Counsel.

4       **MS. PAPPY:**  Uh-huh.

5                    (Pause in proceedings.)

6       **THE COURT:**  All right, Counsel.  Thank you for your

7  patience.

8       Here is what we are going to do.  The defendants are going

9  to take the 50 names proposed by the plaintiffs on April 16th

10  and will search the custody files for those individuals to

11  produce documents sufficient to show the dates that each of

12  those individuals was in and out of separation, whether that be

13  administrative or disciplinary.

14       **MS. PAPPY:**  Your Honor, one request.

15       Can we --

16       **THE COURT:**  Sure.

17       **MS. PAPPY:**  -- remove the three people on the list who

18  are from 2019 and 2020?

19       **THE COURT:**  Just as long as you tell Ms. Grunfeld that

20  those people are from 2019 and 2020 so she knows, yes.

21       **MS. PAPPY:**  Yeah.

22       They're on her -- they -- they have the list of dates.

23       **THE COURT:**  All right.

24       **MS. GRUNFELD:**  I'm sorry.  I couldn't understand what

25  was just said.

1          **MS. PAPPY:**  There are three people -- actually, you

2    know what?  I take it back.  These are book dates, and so they

3    were put -- most of them were booked in 2023 and a few in 2022,

4    and then there's some bookings in '19 and '20.

5          Judge, I don't -- it's fine.  I'm not --

6          **THE COURT:**  All right.

7          **MS. PAPPY:**  -- going to squabble about that.

8          **THE COURT:**  All right.  That request is withdrawn.

9          So you'll get the -- the separate -- the dates in and out

10   of separation for all 50 names, Ms. Grunfeld.

11          **MS. GRUNFELD:**  Thank you, Your Honor.

12          **THE COURT:**  Sure.

13          As I was preparing for this hearing, I was looking at

14   Docket Number 586.

15          Do you-all have that handy?  It's my order.

16          **MS. GRUNFELD:**  I can pull it up, Your Honor.

17          **MS. PAPPY:**  I do.

18          **THE COURT:**  Well --

19          **MS. GRUNFELD:**  Is that the March -- March 11th order?

20          **THE COURT:**  Yes, ma'am.

21          **MS. PAPPY:**  March 6th -- oh, yeah.

22          **THE COURT:**  Following the March 6th hearing.

23          **MS. PAPPY:**  Yes.

24          **THE COURT:**  So if you look at -- yeah.

25          Take a minute, Ms. Grunfeld.  Let me know when you have it

1    up.

2             **MS. GRUNFELD:**  Yes, I have it up.

3             **THE COURT:**  Great.

4        Take a look at Page 2 and Paragraph Number 3.  I just

5    noticed this when I was reviewing Paragraph 2 in preparation

6    for this hearing.

7        The sentence filed in Paragraph 3 is -- is incomplete and,

8    as a result, somewhat nonsensical.  I own that one.  So that --

9    maybe I ran out of steam or just missed it.  I apologize to

10   you-all for that mistake.

11       But as I -- I reviewed this, and given my desire not to

12   have any misunderstandings, the intended language was that the

13   number of medical and custody records that the defendants

14   proposed to produce for the categories contained in plaintiffs'

15   request dated December 7th, 2023, was proportional to the needs

16   of the case.

17       I figured you-all were operating under that assumption,

18   but I just wanted --

19            **MS. PAPPY:**  Yes.

20            **THE COURT:**  -- to point it out.  And, again, I -- my

21   mistake.

22                          (Laughter.)

23            **MS. PAPPY:**  You're forgiven.

24            **THE COURT:**  Thank you.  That makes me feel better once

25   again.

1        All right.  Look, I don't mean to question anybody's good

2   faith, and I am not.  I just -- I just really felt as though

3   this -- and I do feel as though this is something that could

4   have been figured out amongst yourselves.  And given the time

5   that went into the emails back and forth and the time we spent

6   together, you could have been working on other aspects of the

7   case.

8        I am here for you to help you out, and I know we've got

9   other disputes to raise.  I am trusting that you-all and your

10  colleagues are working in good faith to -- in these weekly

11  meetings, and I'm glad to hear that they have been helpful.

12  We'll discuss them more later this week.  We've got more

13  discovery issues to resolve, I realize, but there we are.

14       Go ahead, Ms. Grunfeld.

15       **MS. GRUNFELD:**  Two quick housekeeping matters,

16  Your Honor.

17       The first is will there be a date by which we receive the

18  placement dates for the 50 names?

19       **THE COURT:**  How much time do you need, Ms. Pappy?

20       **MS. PAPPY:**  Couple of weeks.

21       **THE COURT:**  Is that okay, Ms. Grunfeld?

22       **MS. GRUNFELD:**  As the Court knows, March 31st is our

23  expert disclosure deadline.

24       So is there any way we could do it in a week or ten days?

25       **MS. PAPPY:**  No.

 1              THE COURT:  May 30 -- May 31st; right?

 2              MS. PAPPY:  Yes.

 3              THE COURT:  All right.  No.  I understand.  No.

 4    That's a fair -- that's a fair point by Ms. Grunfeld.

 5         Ms. Pappy, can you produce them a week from Friday, which

 6    would be May 3rd?

 7              MS. PAPPY:  Yeah.

 8         A week from this Friday?

 9              THE COURT:  Yes, ma'am.

10              MS. PAPPY:  We will -- I will tell the Court that --

11    or the client that it has been ordered --

12              THE COURT:  That's fine.

13              MS. PAPPY:  -- and we will do our very best.

14              THE COURT:  I think that is enough time to perform

15    this task.

16         Obviously, if it proves insurmountable for reasons that

17    are not apparent to the three of us, talk to Ms. Grunfeld,

18    figure it out together.  And if you can't, we've got some

19    things scheduled already that we'll figure out.

20              MS. PAPPY:  Thank you.

21              THE COURT:  What was your other housekeeping matter,

22    Ms. Grunfeld?

23              MS. GRUNFELD:  Thank you, Your Honor, just two quick

24    other things.

25         First, the person most knowledgeable depositions have

1   begun.  They will be conducted every day from now -- every day,

2   on and off, from now until May 3rd.  So we will do our best,

3   again, to resolve issues among ourselves, but there may be a

4   need to come to the Court about those.

5        And, finally, we don't have Zooms for either -- I'm told

6   we don't have Zooms for either Friday conference.  So I guess

7   we'll get those tomorrow or --

8        **THE COURT:**  You'll get them before the Friday

9   conference.

10        **MS. GRUNFELD:**  Great, because I will be --

11  Mr. Swearingen will be doing the 10:00 o'clock, and I will be

12  calling in from out of state at 11:00.

13        So --

14        **THE COURT:**  Okay.  No problem.

15  You'll get them.

16        **MS. GRUNFELD:**  Okay.  Thank you so much.

17        **THE COURT:**  You're welcome.

18        Ms. Pappy, anything else we should chat about this

19  morning?

20        **MS. PAPPY:**  No, Your Honor.

21  Thank you for the time this morning.

22        **THE COURT:**  My pleasure.

23  Have a good day, both of you.

24        **MS. GRUNFELD:**  Thank you.

25        **MS. PAPPY:**  Thank you.

1          MS. GRUNFELD:  Bye-bye.

2                    (Proceedings adjourned.)

1

2

3                    **CERTIFICATE OF TRANSCRIBER**

4          I certify that the foregoing is a true and correct

5    transcript, to the best of my ability, of the above pages of

6    the official electronic sound recording provided to me by the

7    U.S. District Court, Southern District of California, of the

8    proceedings taken on the date and time previously stated in the

9    above matter.

10         I further certify that I am neither counsel for,

11   related to, nor employed by any of the parties to the action in

12   which this hearing was taken, and further that I am not

13   financially nor otherwise interested in the outcome of the

14   action.

15

16   DATE:  Tuesday, April 30, 2024

17

18

19

20             /S/ James C. Pence-Aviles

21       James C. Pence-Aviles, RMR, CRR, CSR No. 13059
                    U.S. Court Reporter

22

23

24

25