Pages 1 - 21

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Before The Honorable David D. Leshner, Magistrate Judge

```
DARRYL DUNSMORE, et al.,        )
                                )
          Plaintiffs,           )
                                )
   VS.                          )    NO. 20-CV-00406-AJB-DDL
                                )
STATE OF CALIFORNIA, et al.,    )
                                )
          Defendants.           )
_____ )
```

San Diego, California
Wednesday, April 24, 2024

**<u>TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS</u>**

**<u>APPEARANCES:</u>**

For Plaintiffs:
        ROSEN BIEN GALVAN & GRUNFELD, LLP
        101 Mission Street, Sixth Floor
        San Francisco, California 94105
    **BY:  PRIYAH KAUL, ESQ.**
          **GAY CROSTHWAIT GRUNFELD, ESQ.**

For Defendants:
        OFFICE OF COUNTY COUNSEL
        1600 Pacific Highway, Room 355
        San Diego, California 92101
    **BY:  STEVEN PAUL INMAN, II, ESQ.**

For Third Party NaphCare of San Diego, LLC:
        MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP
        801 South Figueroa Street, 15th Floor
        Los Angeles, California 90017-3012
    **BY:  G. CRAIG SMITH, ESQ.**

Transcribed By:  James C. Pence-Aviles, RMR, CRR, CSR No. 13059
Official Court Reporter

 1  <u>**Wednesday - April 24, 2024**</u>                          <u>**12:00 p.m.**</u>

 2                          <u>**P R O C E E D I N G S**</u>

 3                               ---o0o---

 4          **THE COURT:**  All right.  Good afternoon, everyone.

 5      We're on the record for a discovery conference in

 6  Dunsmore, et al., versus the San Diego County Sheriff's

 7  Department, et al., Case Number 20-CV-406.

 8      May I have appearances from counsel, beginning with

 9  plaintiffs' counsel.

10          **MS. KAUL:**  Good afternoon, Your Honor.  Priyah Kaul

11  for the plaintiffs.

12          **THE COURT:**  Good afternoon.

13          **MS. GRUNFELD:**  Good afternoon, Your Honor.

14  Gay Grunfeld for the plaintiffs.

15          **THE COURT:**  Good afternoon.

16          **MR. SMITH:**  Good afternoon.  Craig Smith for

17  Third Party NaphCare San Diego, LLC.

18          **THE COURT:**  Okay.  Thank you, Mr. Smith.

19      We're here for a discovery conference following Ms. Kaul's

20  email from April 22nd advising of a dispute regarding the

21  deposition of NaphCare of San Diego under Rule 30(b)(6) and

22  specifically whether the designated witness, Ms. Nix, was

23  adequately prepared.

24      In preparation for this hearing, I reviewed the parties'

25  statement of the dispute, and I have reviewed the categories

1    contained in the subpoena to -- or the deposition subpoena to

2    NaphCare.  So let me ask a couple of big-picture questions and

3    decide how best to proceed.

4       Ms. Kaul, are there specific categories as to which the

5    plaintiffs contend that Ms. Nix was not properly prepared to

6    testify?

7        **MS. KAUL:**  There are, Your Honor, and -- and we

8    could -- we received a rough of the transcript over the weekend

9    and, I think, with that, could provide a more specific list of

10    the topics for which we believe the witness was not adequately

11    testified [sic].

12       We don't intend to retread that ground with -- with any

13    additional witnesses, and I have provided -- you know, in the

14    course of meeting and conferring, provided Mr. Smith with a

15    preliminary list of -- of topics based on my memory and an

16    initial list -- or initial review of that rough transcript.

17       But in order to provide a comprehensive list, I would need

18    a little bit of time to go back through and compare that to

19    the -- to the topics.

20        **THE COURT:**  Okay.  So how can I help you try to

21    resolve this today?

22       It can be challenging without the deposition transcript in

23    front of us.  There are, obviously, a number of discovery

24    issues that we're dealing with in the case, and I would like to

25    save you-all the time and expense of further briefing, if I

```
 1   could.
 2        But -- so let me ask you this, Ms. Kaul:  Is there a way
 3   for us to work together to try to resolve this this afternoon,
 4   or do you just need a briefing schedule?
 5             MS. KAUL:  So I have two thoughts on that.
 6        The first is we attempted to meet and confer, and we're
 7   open to a proposal, you know, from NaphCare about additional
 8   witnesses and -- and talking about potential time limits or
 9   other compromises to make that happen, and we weren't -- my
10   understanding is there's -- there won't be -- NaphCare is not
11   willing to stipulate to producing any additional witnesses.
12        So I think that that puts us, I think, at a -- at a --
13   maybe a point where we -- I don't know that we can resolve this
14   today.
15        The second thing I would say is this issue does dovetail
16   with the briefing that we're -- we're doing current- -- working
17   on currently with respect to seeking additional deposition --
18   fact witnesses.  So we will be filing our motion today -- later
19   today with regards to that.
20        And, you know, what I would say is I don't think there is
21   a whole lot to -- that we would want to add that -- that is
22   different in this process versus the additional fact witness
23   process.  In both ways, they're just two alternative mechanisms
24   for us having an opportunity to depose additional NaphCare
25   witnesses to understand what we have not received yet from --
```

1    from the witness who was produced.

2        So -- so what I would say is, you know, with maybe a

3    little additional time and a few additional pages, I think we

4    could even loop this into our briefing that we're working on

5    now.  So that's one proposal for the Court.  And then, of

6    course, you know, NaphCare would have an opportunity to

7    respond.

8        So -- so that's one -- one possible way to go about

9    approaching this dispute.

10           **THE COURT:**  Okay.  Thank you, Ms. Kaul.

11       Mr. Smith, how can I help you-all today?  I'd like to, if

12   I could.

13           **MR. SMITH:**  Yes.  I -- I understand that.

14       The witness was well-prepared for the deposition and on

15   the record for over six hours.  The times in which she didn't

16   have direct answers were essentially statistical questions in

17   which she referred plaintiffs' counsel to records that would

18   contain that information and that she would need to review

19   particular records, unwilling to guess as to, for example --

20   just taking staffing, for example, the exact number of

21   vacancies there would be.

22       She doesn't have -- she didn't have it memorized.  I don't

23   think there's a requirement for her to memorize statistical

24   information of that nature.  She did know where the information

25   could be obtained for Ms. Kaul to examine the witness regarding

1    and present that as an exhibit.  She was adequately prepared.

2         Our position is there's no need for any other witnesses to

3    testify with respect to the Rule 30(b)(6) subpoena.  We do

4    recognize that the morbidity review issue was outstanding, and

5    we have offered that, once that issue is resolved by the

6    Court -- that we would produce Ms. Nix again, hopefully via

7    Zoom because of her location in Alabama, to go over, for the

8    last hour of time on the record, the morbidity review category.

9         So that is something that, you know, we're being

10   reasonable about.  It wasn't holding plaintiffs' to -- feet to

11   the fire because there was no order as to compelling those

12   records yet.

13        So I -- you know, our position is -- is that the

14   deposition's essentially completed as to all categories other

15   than that one.

16        **THE COURT:**  Give me just a moment, Counsel.

17        Stand by.  Mr. Inman just entered the waiting room.

18        Good afternoon, Mr. Inman.

19        **MR. INMAN:**  Good morning, Your Honor.

20        I just came to listen in, if I could, on behalf of the

21   County.

22        **THE COURT:**  Absolutely.  It's a public hearing.

23   You're welcome to listen in.

24        **MR. INMAN:**  Okay.  Thank you.

25        **THE COURT:**  Sure.

1    Ms. Kaul, have you provided Mr. Smith with, well, a list

2  of the specific portions of the deposition transcript as to

3  which you believe Ms. Nix was not adequately prepared to

4  testify?

5          **MS. KAUL:**  Again, Your Honor, I've provided about a

6  dozen or so examples.  I would not say that was comprehensive,

7  as the review of the rough was ongoing at that point still.

8          **THE COURT:**  Right.

9          **MS. KAUL:**  It was intended to -- to -- to be -- to

10  provide examples.

11    So it included -- you know, Mr. Smith referred to staff

12  vacancies.  We disagree on that point, and, you know, there

13  were a number of sort of even high-level questions about staff

14  vacancies that -- for which Ms. Nix could not testify

15  adequately and respond to my questions.

16    And so I think, you know, that was one of about a dozen

17  examples that I provided, but that's where we left things.

18          **MR. SMITH:**  And I would say this:

19    What was provided wasn't citations to the deposition

20  transcript.  They were areas of categories in which Ms. Kaul

21  felt the witness wasn't adequately prepared.  And a majority of

22  those categories, our contention is, were simply not within

23  the -- the subpoena-designated issues.  They were outside of

24  the topics, on one hand.

25    And on the other hand, when they do fall within the

1    topics, the witness was adequately prepared.  And when she

2    didn't know the answer, she knew where to reference documents

3    that would contain the answer.

4        So that's -- that's what our response was.

5            **MS. KAUL:**  It is accurate that it did not include

6    citations at that time.

7            **THE COURT:**  No.  I get it, and I understand you were

8    trying to provide Mr. Smith with examples, but you were still

9    reviewing the deposition transcript.  So fair enough.

10        With the benefit of the deposition transcript now, I

11   just -- can you ballpark for me, Ms. Kaul, roughly how many

12   questions were asked that you believe Ms. Nix should have been

13   prepared to answer, but she was not?

14        And I'm not holding you to this.  I just want to get a

15   sense of the scope of the dispute.

16            **MS. KAUL:**  Oh, gosh.

17                        (Laughter.)

18            **MS. KAUL:**  Number of questions is -- is a tough one to

19   answer, Your Honor.  And in some cases, I would say a question

20   was asked, and the response indicated a lack of knowledge such

21   that I didn't pursue the topic further.  So I'll give you one

22   example.

23        NaphCare is responsible for providing psychiatry

24   services -- my understanding is they're responsible for

25   providing psychiatry services in the jail and other mental

1    health services.  I asked Ms. Nix about three different mental

2    health units in the jail.

3        It was not -- these were not intended -- I know there are

4    a lot of acronyms that we all deal with, but these were not

5    intended to be trick questions.  All of us who are -- who have

6    seen the jail, who are familiar with -- with what goes on in

7    the jail, know EOH, PSU, OPSD.  She didn't know what those

8    were.

9        And so, you know, to some extent, there were some

10    questions not asked which would -- I would have expected a

11    prepared witness to be able to respond to.  So that is a

12    challenging -- you know, that's part of the challenge with

13    responding to this.

14        I think, in looking at the deposition subpoena, I would

15    say there were a number of issues with respect to mental

16    health.  I think that was an area of -- where there was a lack

17    of knowledge.  I think medical -- you know, I would say a

18    handful of categories and -- and sort of other

19    policy-and-procedure questions.

20        I mean, it may be -- I don't know.  It may be several --

21    you know, several dozen in terms of -- if you really think

22    about breaking down a deposition into -- into subparts and

23    questions, but that's a -- I don't know if that's a helpful

24    breakdown, but -- but that's -- that's my best guesstimate.

25            MR. SMITH:  And as -- as a matter of response, I mean,

1    if you look at the categories, I -- there's no reference to

2    those acronyms in the -- in the categories there.  It's related

3    to policies.  It asks about policies and procedures of NaphCare

4    related to mental health care in the facility.  She knew that

5    inside and out.

6        You know, I don't know what specifics that Ms. Kaul is

7    referencing with respect to those categories that would be --

8    be related to this deposition subpoena that Ms. Nix was unable

9    to respond to.  I'd have to go look back at the -- at the

10   transcript.  I don't recall that particular question, but -- I

11   mean, there is -- there is a disagreement as to whether these

12   were even within the scope.

13       I mean, it feels more like plaintiffs would like to take

14   further depositions.  They have proposed three individuals from

15   NaphCare for whom they would like to take depositions of, and

16   they're trying to argue that that's within the PMK deposition

17   notice and subpoena and essentially, like, bootstrapping it to

18   that subpoena to try to get those depositions.

19       So we have a fundamental disagreement about a lot of the

20   questions that were asked being just simply outside the scope.

21           **THE COURT:**  Okay.  Stand by.

22                    (Pause in proceedings.)

23           **THE COURT:**  All right, Counsel.  Thanks for your

24   patience.

25       I was looking at my calendar and trying to figure out the

1    best way to help you-all in resolving this issue, and this is

2    how I am inclined to proceed, and I would welcome your thoughts

3    after I explain my proposed plan.

4        I do think, as an initial matter, it would be beneficial

5    to have the parties engage in a further discussion about the

6    deposition preparation, with the benefit of the transcript, and

7    to have that discussion provide specifics, particularly for the

8    benefit of NaphCare, as to what plaintiffs contend Ms. Nix was

9    not prepared to testify to that she should have been.

10        So on or before May 1st, the plaintiffs will provide

11    NaphCare with a chart containing the specific questions that

12    the plaintiffs contend Ms. Nix should have been prepared to

13    answer and referencing the specific Rule 30(b)(6) category that

14    each question falls within, with a one-sentence explanation as

15    to why.

16        On or before May 6th, the parties will meet and confer

17    regarding plaintiffs' chart to see if you can narrow your

18    issues that I need to resolve.  If the parties are not able to

19    resolve all of the issues, the plaintiffs may file a motion to

20    compel by not later than May 13th.

21        How many pages do you think you'd need, Ms. Kaul, keeping

22    in mind that this chart is going to be an exhibit?

23        **MS. KAUL:**  I'm just -- maybe -- no more than ten,

24    certainly.  I -- but I say that only because I think that's

25    been the limit imposed on our prior meet-and-confers, and it's

1    been adequate for those.

2         **THE COURT:**  Okay.  If you think ten pages is adequate,

3    that's fine.

4         When you -- when you file your motion, you can -- you can

5    include your chart as an exhibit, and what I'm going to do --

6    I'm going to step back and give you an interim deadline to make

7    this more effective.  Give me one moment.

8         Mr. Smith, if the parties are unable to resolve their

9    disagreements at a meet-and-confer, NaphCare must provide the

10   chart back to the plaintiffs on or before May 9th, and what

11   that should simply have is Naph- -- one -- one sentence,

12   NaphCare's position, as to why either the witness was prepared

13   or the question seeks information outside the scope of the

14   Rule 30(b)(6) or whatever your response is going to be.

15        So, Ms. Kaul, when you file your motion on May 13th, you

16   can include the chart as an exhibit or an attachment, and it

17   will have the parties' positions because that's, I think, what

18   we're going to be using at a hearing on the motion to walk

19   through.

20        If the plaintiffs file their motion on May 13th, I would

21   direct NaphCare to file an opposition by May 20th, ten pages or

22   less, exclusive of exhibits.  You don't need to reattach that

23   same chart, Mr. Smith.

24        And then I will set this matter for an in-person hearing

25   before me on June 3rd at 9:00 a.m.  We have settlement

1    proceedings scheduled for 10:00 a.m., and so I will hear this

2    in the courtroom, and then we'll proceed to the settlement

3    discussions that we had already planned on.

4        Any thoughts on that, Ms. Kaul?

5        **MS. KAUL:** If -- if that's the direction Your Honor is

6    inclined to go, you know, we can make that work.

7        I -- I do have a couple of thoughts, which is just -- with

8    the close of fact discovery, you know, set and expert deadlines

9    set for next month, I am wondering how this factors into those

10   deadlines as well as how -- you know, given that we'll be

11   filing a motion today that overlaps in some ways with this, you

12   know, maybe it means that we just -- we get the testimony when

13   we get it, if we get it, and -- and we go from there.

14       But that is a thought in my mind and maybe a suggestion to

15   see if there is a way that we could -- I don't want to condense

16   these deadlines too much, but speed up this process for -- for

17   the benefit of keeping us on track in the case generally.  So

18   that is one concern I have, but --

19       **THE COURT:**  What's your suggestion?

20       **MS. KAUL:**  I'm sorry?

21       **THE COURT:**  What's your -- I'm trying to accommodate

22   you as well.  What's your suggestion?  You want less time?

23       **MS. KAUL:**  Well, Your Honor, I wonder if -- I think,

24   you know, we're happy to continue -- to try and meet and confer

25   and -- and go through that process with the chart.

```
 1        But I wonder about my initial suggestion of -- of putting
 2   this in our motion to be filed and including this issue there
 3   and putting it to the Court in that way just because the issues
 4   overlap in terms of seeking the witnesses as 30(b)(6) witnesses
 5   or additional fact witnesses.
 6        THE COURT:  Do you think you can brief all of this in
 7   a pleading to be filed today?
 8        MS. KAUL:  No.  That would be -- that would be the
 9   catch, would be I think we would need a few additional pages
10   and -- and a couple of extra days at least.  But I understand
11   we're -- it's a rock and a hard place, you know, pushing out
12   those deadlines or changing the briefing schedule already set
13   versus this one.
14        So --
15        THE COURT:  Well, don't I need to get the County on
16   that?
17        MS. KAUL:  Yes.
18        THE COURT:  Look, I understand your point, Ms. Kaul.
19   I'm not -- I'm not trying to be at all dismissive of your
20   suggestions.  I appreciate them.
21        It's just the deposition subpoena was issued on
22   March 27th.  The deposition -- it looks like it did go forward
23   as scheduled on April 16th.
24        MS. KAUL:  What I sent chambers was the amended one
25   once we had settled on -- finalized the date and the deponent.
```

1  The initial deposition subpoena was last -- we served it last

2  fall in September.

3          THE COURT:  No.  I understand that this has been an

4  ongoing process, but we are where we are, toward the end of

5  fact discovery, and that's an unfortunate reality in terms of

6  the timing of all of these issues.

7          And to the extent that I grant any motion to compel

8  further testimony from NaphCare, I'm going to have to take that

9  into account, and I am keenly aware of the current pretrial

10  scheduling order and how we fit this and the other issues that

11  we need to address within it.

12          I would only note that you have an August 16th deadline to

13  file dispositive motions, including your *Daubert* motions.  I'm

14  not suggesting we're going to move any other deadlines, but

15  it -- we can work in that.

16          And so we're --

17          MS. KAUL:  I --

18          THE COURT:  -- going to -- I think this is the best

19  way to go, Ms. Kaul.

20          MS. KAUL:  I --

21          THE COURT:  I don't think there's any other way to do

22  it.

23          MS. KAUL:  Okay.  I understand, and I appreciate

24  Your Honor's consideration of that concern.

25          So that -- that will be -- that should be fine.  We'll --

```
 1    we'll take that.
 2            THE COURT:  All right.  Mr. Smith, any thoughts on
 3    your end as to my proposed plan?
 4            MR. SMITH:  No.  I think it's a great proposed plan,
 5    and it -- it will be productive, and it will allow for a
 6    briefing that's brief in nature and kind of gets straight to
 7    the points with the chart.
 8        So --
 9            THE COURT:  Is it really a great plan?
10            MR. SMITH:  Yeah.  Well, because I like the chart
11    idea.  It's a great plan because it will keep the issues
12    narrow, and we can go over --
13                            (Laughter.)
14            THE COURT:  I'm just giving you a hard time.  You
15    don't have to -- all right.
16        Well --
17            MR. SMITH:  It's decent.  It's decent.
18            THE COURT:  It's okay.
19        Yeah.  Ms. Grunfeld, go ahead, ma'am.
20            MS. GRUNFELD:  Your Honor, could you please repeat
21    what you said about what the chart should look like --
22            THE COURT:  Yeah.  No, I will, and I think --
23            MS. GRUNFELD:  -- because we're not good on that.
24            THE COURT:  No.  That's fine, and I will include it in
25    a minute order because I -- I sometimes have ideas that I'm
```

1    trying to take notes on as we're coming up with them, and I

2    want to make sure it's accurately reflected.

3        I think that the chart should include the specific -- you

4    know, each specific question that was asked as to which the

5    plaintiffs contend the witness was not prepared to answer and

6    the 30(b)(6) topic as to which that question pertains and one

7    sentence as to why.

8        And you can -- that -- this question -- and you can

9    elaborate on that in your motion to compel, but I do think

10   that's going to be most helpful for me.

11       And I understand Ms. Kaul's point that there may have been

12   questions that she intended to ask as follow-up questions that

13   were not asked if the witness did not answer a threshold

14   question.  You can address that in your memorandum, if you

15   wish, and then Mr. -- that chart will be provided to Mr. Smith.

16       And, Mr. Smith, all I am seeking from NaphCare is -- you

17   know, is a chart -- a one-sentence response, as to each of

18   those, as your position, not within the scope of the 30(b)(6),

19   not a proper question, whatever -- whatever it may be.

20       You mentioned that, Mr. Smith -- that the parties have an

21   hour left to handle the issue of the morbidity and mortality

22   review committee documents.

23       In -- in light of the order that was issued yesterday, is

24   there anything that we need to discuss on that?

25           **MR. SMITH:**  Not particularly.

1    I'm consulting with my client as to any redactions, if

2    any, that will be submitted to the Court by the deadline.  And

3    then, you know, when the production happens, we'll pick a

4    mutually agreeable date for the deposition to continue.

5         **THE COURT:**  All right.  No.  I'm glad to hear that

6    this can be on a separate track and that you're not waiting on

7    that.

8         All right.  Fair enough.

9         Ms. Kaul, Ms. Grunfeld, anything further we should discuss

10   from plaintiffs' perspective?

11        **MS. GRUNFELD:**  Only that we will be filing our brief

12   for additional depositions later today, Your Honor, and we will

13   be seeking these individuals only in the alternative.

14        Our preference is, and our belief is, that these on-site

15   individuals should be produced as PMKs for NaphCare, but we're

16   arguing in the alternative that they should be additional

17   depositions, just for clarity.

18        **THE COURT:**  Is -- well, does this pertain to witnesses

19   from the County of San Diego and the Sheriff's Department or as

20   to NaphCare, the filing today?

21        **MS. GRUNFELD:**  Both, Your Honor.

22        In other words, today, we're seeking more than

23   ten depositions, and one of those to be the sheriff, and

24   we're -- three of the ones that we're going to ask for are the

25   individuals that we actually believe should be the PMKs for

1    NaphCare.

2        But in the alternative, if the Court disagrees after

3    reviewing the chart and the transcript and the briefing, we

4    would like an opportunity to take their deposition, limited to

5    four hours each.

6            **THE COURT:**  Stand by.

7                    (Pause in proceedings.)

8            **THE COURT:**  All right.  Thank you for your patience.

9        Mr. Smith, does NaphCare intend to respond to the motion

10   that's being filed today, given that it seeks depositions of

11   NaphCare deponents?

12           **MR. SMITH:**  I was unaware of the context that that

13   motion was going to contain NaphCare deponents in it.  If

14   NaphCare can be given an opportunity to respond, that would be

15   helpful.

16       One of our objections is -- is that plaintiff's not

17   permitted to pick and choose who the designees are going to be

18   for a Rule 30(b)(6) deposition, and it does -- it does appear

19   that they're attempting to use the Rule 30(b)(6) notice as a

20   way to obtain depositions of several of NaphCare's on-site

21   staff and individuals when Ms. Nix was appropriately

22   designated.

23           **THE COURT:**  The reason I took a short break,

24   Ms. Grunfeld, was when you raised the issue of the excess

25   depositions, I had not caught that the email that was sent

```
 1   seeking a discovery conference with my chambers did not include

 2   Mr. Smith on it.  And given that it does relate to NaphCare, I

 3   thought he might not be aware of the context in which this

 4   was -- this was raised.

 5       So with that being said, Mr. Smith, if you wish to

 6   respond -- or if NaphCare wishes to respond to the plaintiffs'

 7   motion to be filed today, pursuant to the briefing schedule

 8   that I previously set, you are welcome to do so, sir.

 9       Do you have any objection to that, Ms. Grunfeld?

10           MS. GRUNFELD:  Not at all, Your Honor, and I'm kicking

11   myself that we didn't include Mr. Smith in our IDC email.  We

12   did inform him by email that we were -- we wanted to know the

13   names of these individuals, but we should have included him on

14   the IDC.

15           THE COURT:  No.  I understand it was an oversight, and

16   I know it wasn't intentional.

17       So, Mr. Smith, if NaphCare wishes to respond on the same

18   date that I gave the County, you're welcome to do so, sir.

19           MR. SMITH:  Thank you, Your Honor.

20           THE COURT:  Okay.  Sure thing.

21       Ms. Grunfeld, Ms. Kaul, anything else we should address

22   this afternoon?

23           MS. GRUNFELD:  No, Your Honor.

24           MS. KAUL:  No, Your Honor.

25           THE COURT:  Mr. Smith, anything else?
```

1          **MR. SMITH:**  Yeah.  Just one thing of housekeeping

2    is -- is that I am leaving Manning & Kass, effective May 1st.

3    I'm going with a -- going to another firm.

4          I believe Eugene Ramirez is already on the pleadings here.

5    He's the supervising equity partner on this matter.  I know

6    another associate from San Diego will be appearing as well and

7    likely another partner from our San Diego office, but I may not

8    be on another hearing on this matter with you.

9          So I want to inform you of that, so it's not a surprise

10   when you see the notice of withdrawal, and also that it's been

11   a pleasure and an honor to work on this case with all of you.

12          **THE COURT:**  Thank you, Mr. Smith.

13          And on behalf of everyone, you know, best wishes and good

14   luck in your next endeavor.

15          **MR. SMITH:**  Thank you.

16          **THE COURT:**  Okay.  Take care, everyone.  Have a good

17   rest of your day.

18          **MS. GRUNFELD:**  Thank you.  You, too.

19                    (Proceedings adjourned.)

20

21

22

23

24

25

## CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Southern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

DATE:  Friday, May 3, 2024


                    /S/ James C. Pence-Aviles

        James C. Pence-Aviles, RMR, CRR, CSR No. 13059
                    U.S. Court Reporter