Pages 1 - 19

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Before The Honorable David D. Leshner, Magistrate Judge

```
DARRYL DUNSMORE, et al.,        )
                                )
            Plaintiffs,         )
                                )
  VS.                           )       NO. 20-CV-00406-AJB-DDL
                                )
STATE OF CALIFORNIA, et al.,    )
                                )
            Defendants.         )
_____)
```

San Diego, California
Monday, May 6, 2024

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiffs:
                  ROSEN BIEN GALVAN & GRUNFELD, LLP
                  101 Mission Street, Sixth Floor
                  San Francisco, California 94105
         **BY: RICHARD VAN SWEARINGEN, ESQ.**

For Defendants:
                  BURKE, WILLIAMS & SORENSEN LLP
                  60 South Market Street, Suite 1000
                  San Jose, California 95113
         **BY: ELIZABETH MARIE PAPPY, ESQ.**

Transcribed By: James C. Pence-Aviles, RMR, CRR, CSR No. 13059
Official Court Reporter

1   **<u>Monday - May 6, 2024</u>**                                    **<u>10:00 a.m.</u>**

2                        **P R O C E E D I N G S**

3                           ---oOo---

4        **THE COURT:**  All right.  Good morning, everyone.

5        We are on the record in Dunsmore, et al., versus the

6   San Diego County Sheriff's Department, et al., Case Number

7   20-CV-406.

8        May I have appearances from counsel, beginning with

9   plaintiffs' counsel?

10       **MR. SWEARINGEN:**  Van Swearingen on behalf of

11  plaintiffs.  I'm joined by expert Dr. Matthew Ross.

12       **THE COURT:**  All right.  Thank you.

13       **MS. PAPPY:**  Good morning, Your Honor.  Elizabeth Pappy

14  appearing on behalf of defendants, and with me is Brent Jordan

15  from the Sheriff's Department.

16       **THE COURT:**  All right.  Thank you, and good morning to

17  you both.

18       All right.  I have reviewed the parties' joint status

19  report, which is Docket Number 638.  I was very heartened to

20  see that you-all made substantial progress working together on

21  the issues that were identified (Inaudible) April 30th order.

22  So that -- you know, credit to you-all for that.

23       It looks like there are two issues for us to discuss

24  today.  Number 1 is whether the County should provide suspect

25  and witness data, and second is the timing of the County

1  providing this information and whether that should affect the

2  expert disclosure dates.

3      Am I correct that those are the two outstanding issues,

4  Mr. Swearingen?

5          **MR. SWEARINGEN:**  They are in the JSR.  We have one

6  more very, very minor issue with the JSR.

7      I was in deposition on Friday when this was filed.  But my

8  understanding, after talking with Dr. Ross, is that for the --

9  each of the search terms identified in the -- in the JSR, the

10 hits are not for whether or not the narrative contains one of

11 each of the terms but one of any of the terms.

12     And I think that that's consistent with what Dr. Ross and

13 Mr. Jordan discussed, and I just wanted to clarify that for the

14 record.  It is not looking for each of those strings of terms

15 together conjunctively but instead looking for any hit among

16 those search terms.

17         **THE COURT:**  Did you discuss that with Ms. Pappy before

18 this hearing?

19         **MR. SWEARINGEN:**  I just had the opportunity to talk

20 with Dr. Ross this morning, immediately before the hearing.  So

21 no, Your Honor.

22         **THE COURT:**  All right.  Let's -- let's table that

23 toward the end, then.  I want to deal with the other issues,

24 and then -- maybe there's no dispute on this one that you

25 raised, Mr. Swearingen, but let's table it for now.

1    The first question -- or the first issue we have to

2 discuss is suspect and witness data.  It looks like you're

3 right.  I did not address that in the April 30th order, and it

4 looks like that was responsive to Category 2D of Dr. Ross's

5 topics.

6    And I'm at Docket Number 612-1, Page 21.  It's the

7 documents submitted in connection with the County's opposition

8 to the motion to compel.  2D seeks any and all available

9 non-PII information associated with victims, suspects,

10 witnesses, and perpetrators.

11    Is that what we're talking about, Mr. Swearingen?

12    **MR. SWEARINGEN:**  It is, Your Honor, yes.

13    **THE COURT:**  All right.  So let me understand the basis

14 for that request.  We -- obviously, we may have discussed this

15 last time, Dr. Ross.  So indulge me if we did.

16    What is the relevance of obtaining that non-PII

17 information?

18    **DR. ROSS:**  So in my analysis, what we'll be attempting

19 to do is separate disparate treatment from disparate outcomes.

20 And in order to do that, we need to try to hold as much

21 constant about the circumstances leading up to an arrest as

22 possible.

23    And information about whether there were witnesses present

24 or whether an individual is identified as a sub- -- suspect

25 associated with the case prior to an arrest is some of that

1  information that we need in order to do an apples-to-apples

2  comparison.

3       THE COURT:  That's sort of the same "hold constant"

4  idea that we talked about with respect to other categories of

5  information at the prior hearing, Dr. Ross?

6       DR. ROSS:  That's right.

7       THE COURT:  Let me ask this, then:  Understanding that

8  that's the request, have you discussed with Mr. Jordan

9  (Inaudible) information maintained, whether that includes PII

10  or not?

11      DR. ROSS:  I have.  They -- my understanding -- and he

12  can jump in if I'm incorrect in this.  My understanding is that

13  the same database that holds the victims' information also

14  holds suspect and witness information, and there is PII in

15  there.

16      But when he provided the victim information, he just

17  simply removed it out, and we don't need any of the -- the PII.

18  We basically just need the same information we received for

19  victims but for these other categories of people attached to a

20  case.

21      THE COURT:  Okay.  Thanks, Dr. Ross.

22      Mr. Jordan, good to see you, sir.  Thanks for being here

23  today.

24      Can you speak to the -- the questions I was just asking of

25  Dr. Ross?

1    **MR. JORDAN:**  Yeah.

2    And just to be sure -- so we're looking at whether the

3    victim, witness, and suspect information is withheld in the

4    system, and can it be pulled and the PII removed; correct?

5    **THE COURT:**  I'd like to know what information is

6    maintained in the system.  And to the extent that it contains

7    PII, which I understand that it does, can that be removed, and

8    what is the burden on the Sheriff's Department to do that?

9    **MR. JORDAN:**  Yeah.

10   The -- similar to the victims, like Mr. Ross discussed,

11   the suspect and victims can be pulled down.  It is not always

12   there, but when it is, we can remove the columns that have the

13   information of PII on it pretty -- pretty -- I mean, just by

14   deleting the column.

15   **THE COURT:**  Ms. Pappy, with that in mind, again,

16   understanding that this is not necessarily -- this information

17   that's being provided is not, in and of itself, necessarily

18   relevant to a claim or defense but is relevant to hold constant

19   for Dr. Ross's analysis and is relevant in that different

20   context, I'm inclined to grant the request to provide

21   information regarding victims and witnesses that is redacted to

22   eliminate PII.

23   But I'd be happy to hear from you, if you wish to be

24   heard.

25   **MS. PAPPY:**  Yeah.

1    Your Honor, the only -- as long as the witness being

2    present -- I -- I may not agree with it, but I understand it.

3    And as long as we're not disclosing any PII about these people,

4    you know, to have any sort of chilling effect on their

5    willingness to be witnesses in matters, I'm fine with that.

6        The victim, I'm a little confused about.  I don't -- I

7    mean, a witness watching -- you know, I guess the claim is

8    going to be that there's a use of force -- more use of force

9    without a witness than there is with witnesses.

10    Why does the victim information have anything to do with

11    anything?  I'm assuming that the fact of the presence of a

12    witness is someplace else -- or I may be mistaken about that --

13    that there may be a victim at the scene.

14        **THE COURT:**  I think I injected confusion into this,

15    Ms. Pappy, and that was my mistake, as I was -- I was mixing up

16    the different categories in my mind, and I apologize.  We're

17    talking about suspect and witness data.

18        So -- and, Mr. Jordan, did you -- did the -- did the

19    Sheriff's Department already provide victim data, redacted to

20    remove PII?

21        **MR. JORDAN:**  I believe so.  I believe Mr. Ross already

22    received that.

23        **THE COURT:**  So not --

24        **MR. JORDAN:**  I -- I believe that was in the -- in

25    the -- in the group.

1      **THE COURT:**  Is that correct, Dr. Ross?

2   Dr. Ross is nodding, for the record.

3      **DR. ROSS:**  Yes.

4      **THE COURT:**  Okay.  No problem.

5   Ms. Pappy, my mistake.  I said "victim," and I meant to

6   say "suspect and witness data."

7      Given that victim data is not at issue -- and we are

8   talking about removing PII for any suspect and witness data --

9   and given the proffered relevance of that data to Dr. Ross's

10  analysis and without, you know, making any findings, of course,

11  as to whether that analysis would be admissible at trial, I'm

12  inclined to grant the request to provide that data.

13     But I'd be happy to hear from you.

14     **MS. PAPPY:**  No, Your Honor.  I understand the Court's

15  position on this, and -- and we don't have any objection to

16  that.

17     **THE COURT:**  All right.  So, Mr. Jordan, I am

18  respectfully directing the Sheriff (Inaudible) to provide the

19  suspect and witness data.

20     And I just lost you on video.  Did you hear what I said?

21     **MR. JORDAN:**  Are you speaking to me?  I just

22  disconnected for -- it looks like --

23     **THE COURT:**  Yeah.  No problem.

24     **MR. JORDAN:**  So sorry.

25     **THE COURT:**  No apology necessary, and no problem.

1    I am respectfully directing the Sheriff's Department to

2    provide the suspect and witness data.  That can be redacted to

3    remove PII, and I -- look, it sounds like you and Dr. Ross have

4    had an open line of communication and, from my understanding

5    from the status report, are speaking directly.

6        To the extent there's any confusion in that, I would

7    expect that you-all can -- or any questions -- you can clear

8    those up, but I do think that that data is relevant to

9    Dr. Ross's analysis and proportional to the needs of the case.

10        **MR. JORDAN:**  Yeah.

11        We can -- the suspect, yes, we can definitely do.  The

12    witness -- everything should be there.  I just -- we have never

13    really pulled that.

14        So it should be there a hundred percent, and we can do

15    that.  If there's any issues, I can reach out to Dr. --

16    Dr. Ross or -- or -- or Elizabeth.

17        **THE COURT:**  All right.  And to be clear, I am

18    directing the Sheriff's Department to produce the information

19    that is contained in this database.

20        I -- hopefully, it's complete, but I'm not directing the

21    Sheriff's Department to search additional sources of

22    information.  It's what -- what is there, and that's what

23    Dr. Ross is -- is looking for.

24        **MR. JORDAN:**  Okay.

25        **THE COURT:**  Mr. Swearingen, do you wish to be heard

1    further on this issue?

2           **MR. SWEARINGEN:**  No.  Thank you.

3           **THE COURT:**  All right.  Let's talk about timing.

4       Mr. Jordan, how long is it going to take you to pull the

5    remaining information contained in my April 30th order and the

6    additional suspect and witness data that we discussed this

7    morning?

8           **MR. JORDAN:**  The -- just the additional suspect and

9    witness data or -- or --

10          **THE COURT:**  Everything.  I want to know how long it's

11   going to take you to provide the data that I've directed be

12   produced and that the Sheriff's Department has agreed to

13   produce.

14          **MR. JORDAN:**  Yeah.

15      The -- that should probably take about -- I'm going to say

16   about two to three weeks, with no errors, given that it is what

17   we agreed upon with Dr. Ross recently in our one-on-one

18   meeting.

19      With no issues -- or unforeseen issues, two to three

20   weeks, given that the search terms -- really, everything should

21   be fairly quick, other than the search terms.  Those are the

22   ones that will take a little longer because we have to search

23   them individually, bring them back and clean it up and send it

24   off.

25      And it will take probably two to three analysts to do

1  that, several days and -- each, with -- given scheduling and

2  everything else, to get that done.

3      **THE COURT:**  All right.  And, Counsel, just so you

4  know, I -- I'm not inclined to go back and forth on how much

5  time the Sheriff's Department needs.  If Mr. Jordan tells me

6  that's what they need, I'm going to give him that time.

7      So what I think I'd like to understand from Dr. Ross is if

8  you receive the data on or before -- let's say two weeks,

9  May 20th, how much time do you need to ingest that data and

10 prepare your report?

11     **DR. ROSS:**  So I have a cross-country family move

12 that's going to be going on at the end of the month, which

13 makes scheduling a little bit tricky.  Taking that out of the

14 equation, I -- I would think eight weeks is -- is sufficient

15 time.

16     **THE COURT:**  All right.  Give me one second.

17     Mr. Swearingen, I'm inclined to give Mr. Jordan the time

18 that he needs to pull the data, and I'm inclined to give

19 Dr. Ross the time that he needs to prepare his report based on

20 that data.

21     That would necessitate a continuance of the expert

22 deadlines as it pertains to Dr. Ross's report and the County's

23 rebuttal and, perhaps, as to the deadline for -- well, as -- in

24 addition to the deadline for pretrial motions.

25     Do the -- are the parties able to complete the remaining

1   expert discovery within the currently set deadlines?  It seems

2   that these are -- that's separate from Dr. Ross's analysis, but

3   I'd like to know what you think about that.

4          **MR. SWEARINGEN:**  I think that, for a variety of

5   reasons, plaintiffs could use a couple more weeks on the expert

6   deadlines, and that includes, I think, many issues:

7          1.  We -- we received so much discovery past court-ordered

8   deadlines.

9          2.  We haven't completed the PMK deadline -- the

10  depositions.  We've completed most of them as of Friday, but we

11  still have a few more, as the Court is aware of, through the

12  parties' joint motion to extend that deadline.

13         The -- the transcripts from the PMK depositions, to date,

14  have still not been produced.  We are entertaining the

15  possibility of, you know, ordering them on an expedited basis

16  so that we could have them immediately to start working on

17  those expert reports.

18         But I do think two to three weeks would be very

19  appreciated.  I do understand that the County is -- has

20  signaled that they may want some more time, but I would

21  certainly leave that up to Ms. Pappy to discuss from the

22  County's perspective.

23         But from the plaintiffs' perspective, I think two to three

24  weeks, given how intense the schedule has been over the past

25  four or five months, would certainly help us synthesize the

1  information that remains outstanding to be in a position to

2  produce good reports by the end of the expert deadline.

3       **THE COURT:**  You're talking about a couple of weeks for

4  the experts, not including Dr. Ross, who's going to need a

5  couple of months to produce his report after getting --

6       **MR. SWEARINGEN:**  That's correct, Your Honor.

7       **THE COURT:**  All right.  Ms. Pappy, what's your

8  position, ma'am?

9       **MS. PAPPY:**  Your Honor, I -- I'm going to go a little

10  farther than Mr. Swearingen and say that -- that I think that

11  it would be helpful to get 60 days for everybody.

12     We have the issue that we're here about today.  We have

13  the issue of PMK depositions that were scheduled at the very

14  end of the deadline, and we don't have those transcripts,

15  through nobody's fault.  We are still waiting for some

16  transcripts that even took place before that.

17     The -- we have the two competing motions which I'm trying

18  to meet and confer with plaintiffs about, the NaphCare versus

19  the motion for additional depositions.  If those happen -- you

20  know, it's already May 6th.  We're looking at probably dates

21  someplace in the middle of May.

22     With all of these different moving pieces, I'm concerned

23  that we are not going to get the expert reports done on -- on

24  any of these fronts.  That includes mental health, medical,

25  safety/security -- I mean, just because of all the moving

1    pieces.

2        So I would say 60 days for everybody, which would include

3    Dr. Ross's and our competing expert's report, in addition to

4    the environmental people that -- the Court will recall that we

5    have an environmental inspection on May 15th and a pushed

6    deadline for that expert.

7        **THE COURT:**  Okay.  Got it.

8        Mr. Swearingen, what -- do you object to Ms. Pappy's

9    request for a 60-day extension of all of the deadlines,

10   beginning with the expert designation deadline that's currently

11   set at May 31st, and not including the fact discovery cutoff?

12       **MR. SWEARINGEN:**  Thank you, Your Honor.

13       I -- my initial reaction is that is a bit too long.  I

14   would appreciate the opportunity to talk with my team about

15   that before making a commitment.

16       **THE COURT:**  So you want eight weeks for Dr. Ross but

17   to keep the schedule -- to amend the schedule only two to three

18   weeks for everybody else?

19       **MR. SWEARINGEN:**  That's my initial position, but with

20   this new information -- I didn't recognize that the County

21   wanted 60 extra days.  I would like the opportunity to take

22   that back to my team and discuss.

23       **THE COURT:**  All right.  Here's what I'm going to do

24   for now:

25       You-all have my ruling on the suspect and witness data.  I

1    will respectfully direct the Sheriff's Department to provide

2    that on or before May 20th.

3        Mr. Jordan, to the extent that there are unexpected delays

4    in providing that information, the County may submit a motion

5    to extend the deadline for that.  I'm confident you'll be able

6    to pull it, but, you know, I understand that that's your best

7    estimate for right now.

8        Mr. Swearingen, I will give you time to speak with your

9    team and to consult with Ms. Pappy, and I would ask the parties

10   to file a joint motion with your -- hopefully your agreement,

11   but if not, your differing proposals for how we should amend

12   the pretrial schedule as a result.

13       I think -- keeping in mind, Mr. Swearingen, that, you

14   know, everyone is trying to work within the deadlines, we are

15   here in part because of the delays in the serving of RFPs 250

16   to 252, which was just an oversight, you know, late last year

17   and the motion practice that has ensued.

18       It would strike me initially that keeping everything on

19   the same track would make things cleaner and more manageable

20   for the parties, but I do want to hear your positions.  And if

21   you disagree with each other, you can let me know, and I'll

22   make a call as to the pretrial schedule.

23       Can you file that by Friday?

24           **MR. SWEARINGEN:**  We can, Your Honor.

25           **THE COURT:**  Does that sound like a plan, Ms. Pappy?

1          **MS. PAPPY:**  Yes, it does.

2          **THE COURT:**  Okay.  All right.

3          **MS. PAPPY:**  I have one question before we conclude.

4          **THE COURT:**  Sure.  Well, we've got to talk about

5   Mr. Swearingen's new issue, too, but go ahead.

6          **MS. PAPPY:**  Oh, yes.  That's what I wanted to make

7   sure that I understood, the issue about the search terms.

8          **THE COURT:**  Well, let me just ask.

9      Mr. Jordan, did you understand what Mr. Swearingen was

10  saying?

11          **MR. JORDAN:**  Just -- just to be clear, can we repeat

12  it?

13          **THE COURT:**  Go ahead, Mr. Swearingen.

14          **MR. SWEARINGEN:**  Sure thing.

15      For the joint status report that was filed on Friday,

16  Section 2 lists search terms.  And after the search term, each

17  sentence begins a list of all cases where the narrative

18  contains one of each of the following X number of terms.

19      We request to replace the -- the word "one" with the word

20  "any," so any of the each -- any of each of the following terms

21  as opposed to making sure that one of each of all those listed

22  terms is present.

23          **MR. JORDAN:**  So the -- the database -- we'll search

24  whatever is put into the search bar exactly as it's -- it's

25  presented.  So if there's a space, it's going to take that

1    space into effect, that word.

2         So each one of the search terms that are provided -- we

3    are planning to search those exactly as they are, also with a

4    space before them and after them, per Dr. Ross's request, to

5    ensure that if there is -- like, "PAS" is one of them, to

6    ensure that that is not a misspelling of "pass," so if an S or

7    something else is on the end of it.

8         So that is the search parameters, as we -- we discussed

9    this.  Is that what we're good with?

10            **MR. SWEARINGEN:**  That's perfect.

11        And what we're asking for is if any of those search terms

12   in the list appear, then the dummy variable is coded as "one."

13            **MR. JORDAN:**  As "one" -- well, it will be attached to

14   a case number.

15        So you just want a row that has "one" on it?

16            **THE COURT:**  Dr. Ross, go ahead.

17        Sorry, Mr. Swearingen.  Not that we don't want to hear

18   you, but it will be help- -- it will be helpful to hear

19   Dr. Ross.

20            **MR. SWEARINGEN:**  Thank you.

21        **DR. ROSS:**  Yeah.

22        Brent and I just discussed providing a list -- just a list

23   of all the case numbers --

24            **THE COURT:**  Yes.

25            **DR. ROSS:**  -- for each of -- come up for each of those

1    search terms.

2        So I think his understanding is correct that the sentence

3    in the joint status report left a little bit of ambiguity, and

4    I -- and I think Van is just trying to clarify that.

5        So I think Brent is on the same page with what was

6    intended.

7            **THE COURT:**  Well, I think you are as well.

8        I appreciate you raising the issue, Mr. Swearingen, but

9    Dr. Ross and Mr. Jordan have this covered; I am confident.

10       And I really do, gentlemen.  I appreciate your efforts to

11   work with each other.  It makes things move -- proceed much

12   more smoothly, and thank you both for that.

13       All right.  With that in mind, I -- it sounds like there's

14   no issue to resolve with respect to the search terms and the

15   agreement the parties have memorialized in the joint status

16   report.

17       The County is -- I'll issue a further order with respect

18   to this hearing, and it will direct the County to provide the

19   suspect and witness data by May 20th, and I will look for the

20   parties' joint motion as to the pretrial dates on or before

21   May 10th.

22           **MS. PAPPY:**  Thank you, Your Honor.

23           **THE COURT:**  All right.  Ms. Pappy, I hope you feel

24   better.

25       Dr. Ross, good luck with your move.

```
 1              MS. PAPPY:  Thank you.

 2              THE COURT:  Anything further, Mr. Swearingen?

 3              MR. SWEARINGEN:  No.  Thank you, Your Honor.

 4              THE COURT:  You bet.

 5         Ms. Pappy?

 6              MS. PAPPY:  Nothing further.

 7              THE COURT:  Okay.  Take care, everyone.

 8         Have a good day.

 9              MS. PAPPY:  Thank you.

10              MR. JORDAN:  Thank you.  You, too.

11                        (Proceedings adjourned.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3                   **CERTIFICATE OF TRANSCRIBER**

4          I certify that the foregoing is a true and correct

5   transcript, to the best of my ability, of the above pages of

6   the official electronic sound recording provided to me by the

7   U.S. District Court, Southern District of California, of the

8   proceedings taken on the date and time previously stated in the

9   above matter.

10         I further certify that I am neither counsel for,

11  related to, nor employed by any of the parties to the action in

12  which this hearing was taken, and further that I am not

13  financially nor otherwise interested in the outcome of the

14  action.

15

16  DATE:  Friday, May 17, 2024

17

18

19

20          _____/S/ James C. Pence-Aviles_____

21      James C. Pence-Aviles, RMR, CRR, CSR No. 13059
                 U.S. Court Reporter

22

23

24

25