1          UNITED STATES DISTRICT COURT

2        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3   DARRYL DUNSMORE, ERNEST          )
    ARCHULETA, ANTHONY EDWARDS, REANNA)
4   LEVY, JOSUE LOPEZ, CHRISTOPHER    )
    NELSON, CHRISTOPHER NORWOOD, and  )
5   LAURA ZOERNER, on behalf of       )
    themselves and all others         )
6   similarly situated,               )
                                      )    No. 20-CV-0406-AJB-DDL
7            Plaintiffs,              )
                                      )
8   V.                                )    May 15, 2024
                                      )
9   SAN DIEGO COUNTY SHERIFF'S        )
    DEPARTMENT; COUNTY OF SAN DIEGO;  )
10  CORRECTIONAL HEALTHCARE PARTNERS, )
    INC.; LIBERTY HEALTHCARE, INC.;   )
11  MID-AMERICA HEALTH, INC.; LOGAN   )
    HAAK, M.D., INC.; SAN DIEGO COUNTY)
12  PROBATION DEPARTMENT, and DOES 1  )
    to 20 inclusive,                  )
13                                    )    Courtroom 3A
             Defendants.              )
14  _____ )    San Diego, California

15

    TRANSCRIPT OF DIGITALLY RECORDED VIDEOCONFERENCED PROCEEDINGS
16                    (Discovery Conference)

17

18    BEFORE THE HONORABLE DAVID D. LESHNER, MAGISTRATE JUDGE

19

20

21

22

23  COURT REPORTER:          AMANDA M. LeGORE
                             RDR, CRR, CRC, FCRR, CACSR
24                           U.S. District Court
                             333 West Broadway, Suite 420
25                           San Diego, CA 92101
                             amanda_legore@casd.uscourts.gov

1    APPEARANCES:

2    FOR THE PLAINTIFFS:       GAY GRUNFELD
                               Rosen Bien Galvan & Grunfeld LLP
3                              101 Mission Street, Sixth Floor
                               San Francisco, CA  94105-1738
4                              (415)433-6830
                               ggrunfeld@rbgg.com
5

6

7    FOR DEFENDANT COUNTY OF
     SAN DIEGO:                ELIZABETH PAPPY
8                              Burke Williams & Sorenson LLP
                               501 W. Broadway, Suite 1600
9                              San Diego, CA  92101
                               (619)814-5800
10                             epappy@@bwslaw.com

11

12
                               STEVEN INMAN II
13                             County Counsel, County of San Diego
                               1600 Pacific Highway
14                             Room 355
                               San Diego, CA  92101-2469
15                             (619)884-2931
                               steven.inman@sdcounty.ca.gov
16

17   FOR NAPHCARE:             NATALIE ORTIZ
                               Manning Kass
18                             225 Broadway, Suite 1200
                               San Diego, CA  92101
19                             (619)515-0269
                               natalie.ortiz@manningkass.com

20

21

22

23                                    -0-

24

25

1              (Wednesday, May 15, 2024)

2

3                    P R O C E E D I N G S

4

5          THE COURT:  All right.  Good morning, everyone.  We

6    are on the record for a motion hearing in Dunsmore, et al.,

7    versus the San Diego Sheriff's Department, et al.  Case Number

8    20-CV-406.

9          May I have appearances from counsel, beginning with

10   plaintiffs' counsel.

11         ATTORNEY GRUNFELD:  Morning, your Honor.  Gay Grunfeld

12   for the plaintiff class and certified sub-classes.

13         ATTORNEY PAPPY:  Good morning, your Honor.  Elizabeth

14   Pappy on behalf of the defendants.

15         ATTORNEY INMAN:  Good morning, your Honor.  Steve

16   Inman, also present on behalf of defendants.

17         THE COURT:  Go ahead, Ms. Ortiz.

18         ATTORNEY ORTIZ:  Good morning, your Honor.  Natalie

19   Ortiz on behalf of a nonparty, NaphCare of San Diego.

20         THE COURT:  Great.

21         Good morning to you.  And I don't know that we've

22   actually met before.  I don't recall.  But if we have not, it's

23   nice to meet you.

24         ATTORNEY ORTIZ:  You as well.  Thank you.

25         THE COURT:  Well, let's start with NaphCare.  And I

1    want to talk about that first, and then the other issues that

2    are raised in the plaintiffs' motion for additional

3    depositions.  That's Docket number 621.

4         I realize that the plaintiffs' motion raises the issue

5    of NaphCare's Rule 30(b)(6) deposition; however, there's also a

6    separate briefing schedule for that motion.

7         It would seem to me that the best way to proceed is to

8    handle the NaphCare issues separately with the briefing that

9    has come in, and that will come in.  But I don't want to

10   shortcut that if there's something else that we should discuss

11   with respect to NaphCare this morning.  So let me just ask that

12   for starters.

13        Ms. Grunfeld, is there anything that we should talk

14   about with respect to NaphCare this morning?

15        ATTORNEY GRUNFELD:  Your Honor, plaintiffs do want to

16   take two on-site NaphCare employees.  We would like to take

17   those depositions regardless of the findings on the PMK issues.

18        Originally, our papers said three.  But we have since

19   learned that there is no on-site medical director other than

20   potentially Dr. Freedland, which is the third deposition

21   plaintiffs seek to take in excess of the ten that are normally

22   allotted.

23        So we are -- so to answer your question, I think there

24   are NaphCare issues today, in the sense that we believe that --

25   of course, we -- we stand by what we wrote, Monday, about the

1  PMK.  But these two on-site individuals, the medical -- excuse

2  me, the HSA is Jessica Heitz, and the mental health director is

3  Dr. Payes, P-A-Y-E-S.  And those two individuals are needed so

4  that we can fully understand what is happening on the ground in

5  the jails with regard to NaphCare and its provision of medical

6  and mental healthcare to our clients.

7          THE COURT:  I understand, Ms. Grunfeld, that the

8  plaintiffs want to take these two depositions separately from

9  resolution of the Rule 30(b)(6) issue.

10         It would seem to me -- just at first blush -- that

11 those issues probably would be best addressed together.  And my

12 question is whether it would make sense to talk about all of

13 the NaphCare depositions.  I believe we have a hearing on

14 June 3rd, if my memory is correct, and to do that together.

15         So what are your thoughts on that, Ms. Grunfeld?

16 Understanding that, obviously, if I grant leave with respect to

17 either the Rule 30(b)(6) deposition or with respect to these

18 two other individuals, that there would need to be some, you

19 know, limited time period for those depositions to take place.

20         ATTORNEY GRUNFELD:  Well, that's right, your Honor.

21 The case schedule is a separate motion.  And we are concerned

22 about obtaining the information we need as soon as possible.

23         THE COURT:  Understood.

24         ATTORNEY GRUNFELD:  And we believe that, again,

25 regardless of the ruling on the PMK, that these deponents will

1   have relevant important information for the case.

2           But, of course, if it makes more sense to the Court to

3   defer that question until June 3rd, we will go in that

4   direction.

5           THE COURT:  Ms. Ortiz, what's your position on the

6   timing, leaving aside the merits of the arguments for a moment?

7           ATTORNEY ORTIZ:  Our position would be the same as the

8   Court, so far, your Honor.  Is that it would be more

9   appropriate to discuss all of the NaphCare issues on the

10  June 3rd hearing date and -- and in -- within that briefing

11  schedule.

12          So some of those points, I believe, are addressed in

13  the motion and can also be addressed in our opposition, which

14  is forthcoming.  And then it -- they're all sort of related.

15  So I do think that we should just kind of push all of the

16  NaphCare issues to the 3rd.

17          THE COURT:  Well, let me ask you this, Ms. Grunfeld.

18          With respect to NaphCare, my understanding of your

19  motion at docket 621, and specifically page 11, was that the

20  plaintiffs were seeking to depose individuals at NaphCare only

21  if your motion to compel -- you know, further Rule 30(b)(6)

22  deposition -- was denied.  I mean, that's how I read it.  It

23  says:

24          "Depositions of NaphCare on-site leadership may be

25          necessary because NaphCare's 30(b)(6) witness could

1          not answer questions about NaphCare operations in

2          the jails."

3          But I'm understanding your position now to be slightly

4    different.

5          What is your position specifically, Ms. Grunfeld?

6          ATTORNEY GRUNFELD:  Yes, your Honor.  Our position has

7    evolved since we wrote this brief because we're learning, every

8    day, more and more about the situation.  And in reading the

9    transcript -- we have the rough.  We now even have the

10   transcript.  We believe that even if NaphCare produces a new

11   person, we need to understand how these different health care

12   providers are interacting at the jail.  And who is doing what.

13         It's very confusing, even when you read everything

14   that we have so far, in terms of how health care is set up at

15   the jail; with CHP playing some role, which we're trying to

16   find out what that is; NaphCare playing a role; and the County

17   having a role with certain employees.  So there's this very

18   hybrid system that exists.

19         And we believe that it would be important to take

20   these two persons -- the mental health and the so-called HSA,

21   health services administrator -- even if we win on the PMK

22   points.

23         THE COURT:  Okay.  I understand that that's the

24   plaintiffs' position now.  But in fairness to NaphCare, that

25   was not the plaintiffs' position in the motion.  And NaphCare

1   hasn't had a chance to respond to this new argument.

2        And the motion was pretty clear that if the Court

3   denied the motion to compel a further Rule 30(b)(6) deposition,

4   then the plaintiffs would seek -- in the alternative -- to

5   depose the HSA medical director and mental health director.

6        So this is a new argument that was not raised in the

7   plaintiffs' motion, that NaphCare has not had a chance to

8   respond to.  And I think -- I -- I haven't had -- you're

9   raising individuals who are not familiar to me, Ms. Grunfeld,

10  and I need to better understand that.

11       So given that this is new relief that the plaintiffs

12  are seeking, it would seem to me that it would be best

13  addressed with additional briefing by the plaintiffs, that

14  NaphCare could respond to.  Because as it is now, the relief

15  that you're requesting, Ms. Grunfeld, was not what was

16  requested in the motion.

17       And I understand that things are fluid and that you're

18  learning more information, as you said.  But I do think it

19  would be appropriate for me to be able to give you a thoughtful

20  ruling based on a complete record.

21       So I think for all of those reasons, Ms. Grunfeld, I

22  do think it is appropriate to defer this issue until we have

23  the hearing with NaphCare on June 3rd.  And then I think it

24  would further be helpful to me to have a short, you know -- it

25  would be -- it's really a new motion.  That you want -- you

1  want these two depositions, irrespective of the ruling on the

2  30(b)(6), and I want to understand why.  And I think Ms. Ortiz

3  needs an opportunity to respond on behalf of NaphCare.

4        So if -- what I would request is that the plaintiffs

5  file any motion for leave to take these two depositions.

6        Can you do it by Friday, Ms. Grunfeld, if it's five

7  pages or less?

8        ATTORNEY GRUNFELD:  Yes, your Honor.

9        THE COURT:  All right.

10        ATTORNEY GRUNFELD:  And I --

11        THE COURT:  I'm sorry.  No, not Friday.  It's already

12  Wednesday.  That's too tight.

13        Can you do it -- let's do it by Monday?  How about

14  that?

15        ATTORNEY GRUNFELD:  Yes, your Honor.

16        ATTORNEY PAPPY:  Your Honor, when appropriate, if I

17  may make a comment on this.

18        THE COURT:  Sure thing.  Let me just come up with the

19  dates, and then I'll be happy to hear from you, Ms. Pappy.

20        Ms. Ortiz, can you file a response by -- on this issue

21  of the two additional depositions by May 27th, which would give

22  you a week?

23        ATTORNEY ORTIZ:  The -- oh, yes.

24        THE COURT:  How many pages do you need, Ms. Grunfeld?

25        ATTORNEY GRUNFELD:  I think three, your Honor.

1    Because the concept is already briefed, in terms of more than

2    ten.  So I wouldn't repeat our arguments there.  In other

3    words, the standard and the law is -- is already -- that's the

4    motion we're hearing today.  It's just why do we think these

5    two people should be in the more than ten.  Right?

6              THE COURT:  Understood.  So --

7              ATTORNEY GRUNFELD:  -- three pages.

8              THE COURT:  Go ahead, Ms. Ortiz.

9              ATTORNEY ORTIZ:  I'm sorry, your Honor.  I -- and this

10   can be the subject of further discussion between counsel.  But

11   my understanding is that Jessica Heitz is no longer with the

12   company.  So if that's going to be a big part of the briefing,

13   we might need to have additional conversations about that

14   beforehand.  I --

15             THE COURT:  Well, you're hearing this for the first

16   time today, and I would expect you to meet and confer with

17   Ms. Grunfeld about exactly who the plaintiffs wish to depose,

18   and that discussion can take place.  If someone's no longer

19   with NaphCare, I realize that's a different situation.  But I

20   do appreciate your raising that, Ms. Ortiz.

21             ATTORNEY GRUNFELD:  And I would be moving to take the

22   mental health director and HSA, whoever they are.

23             THE COURT:  All right.  And that's what you all will

24   discuss in your meet-and-confer before the plaintiffs file

25   their motion on or before May 20th.  It will be five pages or

1   less, exclusive of exhibits.

2         NaphCare's response will be due on May 27th, five

3   pages or less, exclusive of exhibits.   No reply brief unless I

4   request one, and I will be prepared to address this on

5   June 3rd.

6         Ms. Pappy, before we go further, you had asked to be

7   heard on this issue.  Go ahead, ma'am.

8         ATTORNEY PAPPY:  Yeah, your Honor, briefly.

9         We had asked -- I specifically, in our weekly

10  meet-and-confers, asked the plaintiff to meet and confer with

11  the County and with NaphCare, so that the three of us could

12  discuss these issues.  Because it certainly seems to me that --

13  you know, I know that you ruled that they could only have ten

14  depositions.  But it also seems to me that these two NaphCare

15  individuals may need to be deposed.  They're helpful to the

16  County.

17        And so I have an opposition and I don't have an

18  opposition in the sense that this all should have been met and

19  conferred about before these two separate motions were filed.

20  And so I would ask that you include in your order that the

21  County, NaphCare, and plaintiffs meet and confer.

22        Because if -- I don't know.  I'm not putting words

23  into NaphCare's mouth.  But maybe they don't have an opposition

24  to these two individuals being deposed.  It resolves the PMK

25  deposition.

1       Because I, like your Honor, saw the statement in the

2  plaintiffs' papers here that said, should plaintiffs' motion to

3  compel an adequate 30(b)(6) deponent fail against NaphCare,

4  that's the only reason we need these extra depositions.

5       Why not kill two birds with one stone?  They weren't

6  willing to meet and confer about it before.  And I think that

7  should be a part of your order because it seems to me that we

8  should be able to resolve this.

9       THE COURT:  Ms. Grunfeld, was this issue of the

10  plaintiffs' desire to depose these two NaphCare employees --

11  irrespective of the Rule 30(b)(6) deposition -- raised between

12  the parties during your weekly meet-and-confers?

13       ATTORNEY GRUNFELD:  My understanding is yes, your

14  Honor.  But I was not present at that meet and confer.  And I

15  don't believe a resolution was reached.

16       But I don't agree that we weren't willing to meet and

17  confer about it.  We have had an extensive meet-and-confer with

18  NaphCare.  I don't think the County can grant us the right to

19  take NaphCare depositions, although I'm interested in their

20  position on that but --

21       THE COURT:  But that's not what Ms. Pappy is saying.

22  She's saying that -- as you all are well aware from all of our

23  dealings over the course of the case, that this would be

24  something that the parties would meet and confer on, regardless

25  whether it involves NaphCare or not, given that it's a

 1    discovery issue that affects everyone.

 2           And, look, I do want to get to the other issues that

 3    are raised in the motion.

 4           Here's the bottom line.  I am directing the parties to

 5    meet and confer on this issue.  And that includes the

 6    plaintiffs, the defendants, and NaphCare.

 7           And maybe there isn't an objection.  Maybe everyone

 8    agrees that -- or at least the plaintiffs and the County agree

 9    that these two NaphCare individuals should be deposed in their

10    individual capacities, irrespective of the Rule 30(b)(6)

11    deposition.  And maybe that resolves some of the Rule 30(b)(6)

12    issues.

13           I don't know, and I'm certainly not trying to speak

14    for you, Ms. Ortiz, or what your position is going to be on

15    behalf of NaphCare.

16           But I do agree with you all that it is essential that

17    you meet and confer on this and try to see if you can reach a

18    resolution.

19           And if you can't, Ms. Grunfeld, you're authorized to

20    filed a motion to take those two depositions with the briefing

21    schedule that I set.

22           And, Ms. Pappy, I don't think that I specifically said

23    this.  But if the County has a position on that motion, I would

24    appreciate you letting me know that by May 27th, the same date

25    that NaphCare is responding.

1          ATTORNEY PAPPY:  Can I ask you a question?

2          Are you -- are you moving the motion against the --

3    against the County today as to those -- I think it was two or

4    three NaphCare individuals, to June 3rd?

5          THE COURT:  I'm not going to address -- I'm going to

6    address everything relating to depositions of NaphCare on

7    June 3rd.  Both the 30(b)(6) and the two individuals that

8    Ms. Grunfeld raised today.  Because I do think they go

9    hand-in-hand.  And I'm more convinced of that, understanding

10   that the parties may not have had an opportunity to really

11   flesh this out together.

12         But I do want to talk with you all today about the

13   plaintiffs' request to take the deposition of Sheriff Martinez,

14   as well as the deposition of Dr. Freedland.

15         ATTORNEY PAPPY:  Thank you.

16         THE COURT:  Hang on just a moment.  We've got some

17   more people entering the waiting room.  Give me just a moment.

18         (Pause.)

19         THE COURT:  All right.  Let's turn now to the issue

20   raised in plaintiffs' motion, specifically plaintiffs' request

21   for leave to depose Sheriff Martinez.

22         I do have a number of questions for the parties on

23   this issue.  And my first question is for you, Ms. Grunfeld.

24         Under the Apex doctrine, and specifically under the

25   case law applicable to depositions of high-level government

1    officials, the party seeking the deposition of a sheriff, for

2    example, must show that the official's testimony is necessary

3    to obtain relevant information that is not available from any

4    other source; that the official has firsthand information --

5    again, that cannot reasonably be obtained from other sources.

6    But the testimony is essential to the case at hand.  That the

7    deposition would not significantly interfere with the ability

8    of the official to perform his or her government duties.  And

9    that the evidence is not available through less burdensome

10   means or alternative sources.

11         And the citation for that, among other cases, is *Greer*

12   *versus County of San Diego*, 2022 Westlaw 2134601.

13         And I would like to hear from you on those factors,

14   Ms. Grunfeld.  What specific information is in the record

15   before me that demonstrates Sheriff Martinez has firsthand

16   information that is not available from other sources?

17         And I should say that I did read your declaration, as

18   well as Mr. Swearingen's declaration.  Ms. Kaul's declaration

19   dealt with NaphCare, I realize.  But I did look at the -- and

20   review the attachments to those.

21         And I would like to better understand plaintiffs'

22   position as to what the record shows me as to what information

23   Sheriff Martinez possesses that others don't possess, that

24   would justify her deposition.

25         ATTORNEY GRUNFELD:  Thank you, your Honor.

16

1        And, yes, I was going to direct the Court to the

2   exhibits to my declaration, which are examples of the sheriff's

3   deep involvement in the policy issues that are presented by

4   this constitutional and ADA case, in which we have had so many

5   deaths in the community.

6        I want to mention that we've only had five this year,

7   which is an improvement.  But for those five families, that's

8   five too many.

9        The sheriff has, on multiple occasions, commented on

10  the issues that are directly involved in this litigation.  And,

11  in that sense, this case is on all fours with *Ahlman versus*

12  *Barnes*.

13       Many of the cases cited in the opposition are

14  single-incident brutality, use-of-force cases in which the

15  sheriff was nowhere near the incident.  This is a completely

16  different situation.

17       We've had a state audit.  We've had a Disability

18  Rights California report.  We've had grand jury reports.  We've

19  had a number of very significant outside entities commenting on

20  the situation here in San Diego.  And we've had the sheriff

21  deeply involved.

22       She approves all of the press releases, as far as we

23  can tell.  We have sent -- provided emails to that effect.

24  Press releases about Narcan.  About deaths in the jail.  We --

25  and, by the way, none of the evidence presented in my

1    declaration was contested in the opposition.

2        She has -- you know, the minute we signed the ADA

3    settlement, she went out on the public record saying it was not

4    a consent decree but she would abide by it; which, of course, I

5    appreciate.

6        And so we believe that only the sheriff knows how the

7    department will set the priorities over the next year and over

8    the next five years to change the situation in the jails, or

9    not.  So she is going to decide how the money is spent.  She

10   went to the board of supervisors in November and made a

11   presentation about that.  And only she can answer our questions

12   about what reform efforts are being made, if any.  And how the

13   department will set the priorities to address the eight causes

14   of action at issue in this lawsuit.

15       Now, there's been discussion of the burden.  We have

16   limited it to four hours.  We will do it on any day the

17   sheriff -- within reason, in the next few weeks, that the

18   sheriff is available.  We will go to her office.

19       And I will add another item that I think would reduce

20   the burden as mentioned in the opposition.  We will provide a

21   list of topics, to reduce the burden of preparation.  As long

22   as we could ask reasonable follow-up questions, we can provide

23   a pretty good outline of what we would be asking over the

24   course of those four hours.

25       There will be no gotchas.  These are all issues that

1    are being litigated in this courtroom, in this courthouse,

2    regularly over the last year, that involve very serious

3    constitutional and ADA claims about which the sheriff has

4    direct knowledge.

5            Now, could we get this information in another way?

6    No, we cannot.

7            The top two people involved in this litigation and in

8    the issues at stake here have now retired.  And I did not seek

9    this deposition lightly.  I did not ask for it until it became

10   clear to me that Assistant Sheriff Theresa Adams-Hydar had

11   retired.  Commander Bavencoff, who took the lead on the ADA

12   issues, retired.  And they cannot answer questions about what's

13   going to happen to our clients, to the class going forward.

14           Dustin Lopez, who was just appointed assistant sheriff

15   for detention services has spent his entire career patrolling,

16   running patrol stations.  He does not have deep knowledge about

17   the jail system.

18           So we would submit that we have no other means to get

19   information about what the County is planning to do, if

20   anything, to address the claims in our complaint.  And we have

21   offered multiple ways in which this deposition can be conducted

22   with the least possible impact on the sheriff's schedule; which

23   we understand to be extremely busy.  And those, I believe,

24   answer the factors in *Greer*.  But if there's one I missed,

25   please let me know.

1      THE COURT:  Well, I do have -- thank you,
2  Ms. Grunfeld.  I appreciate understanding the plaintiffs'
3  position.

4      With respect to the record before me, I reviewed the
5  deposition excerpts of Theresa Adams-Hydar, who was deposed in
6  her individual capacity and who had recently retired, I think
7  as of March of 2024, and her deposition happened approximately
8  two weeks or so thereafter.

9      But as I was reviewing the motion and your declaration
10  and its exhibits, it was not clear to me, Ms. Grunfeld, that
11  the record before me supports a conclusion that other
12  individuals were asked these questions about policies and plans
13  going forward and were unable to provide the answers.

14      If I missed that, I would appreciate you pointing me
15  in the record to where that information is, so that I can
16  consider it in -- in making my ruling.

17      ATTORNEY GRUNFELD:  Thank you, your Honor.

18      We are asking those questions in the PMK depositions,
19  which are underway at this time and have not been completed in
20  part due to not having the right people at the right time and
21  also not having documents.  We were not able to schedule those
22  sooner.  And we don't have the transcripts of those depositions
23  yet.  So perhaps we could supplement with that.

24      THE COURT:  But is -- I appreciate that.

25      Am I correct in understanding that that is not in the

1    record before me, though?  These specific questions about

2    plan -- future plans for the sheriff's department and -- and an

3    inability or unwillingness behalf of the Rule 30(b)(6) designee

4    to answer this question?  Because I did not see them attached

5    to your declaration or to Mr. Swearingen's declaration.

6              ATTORNEY GRUNFELD:  That is correct, your Honor.

7              THE COURT:  All right.  Okay.  Ms. Pappy, would you

8    like to be heard on this?

9              ATTORNEY PAPPY:  Yes, your Honor.  Thank you.

10             THE COURT:  Go ahead.

11             ATTORNEY PAPPY:  I would like to start with counsel's

12   statement that the County did not object to or comment on the

13   exhibits attached to Ms. Grunfeld and Mr. Swearingen's

14   declarations.  And the reason is they support the fact that the

15   sheriff is an Apex witness.  Strongly support.

16             If you read those e-mails, which I'm sure that the

17   Court did, they are people who wrote press releases for the

18   sheriff, sending them to the sheriff saying, "This is

19   acceptable."  Just as an Apex witness would do, she approved

20   them.

21             The sheriff is no different than the C.E.O. of a large

22   corporation; than, you know, the head of any other type of

23   large law enforcement agency.  Sheriff Martinez does not go to

24   the jail every day and spend hours on end figuring out exactly

25   what people are doing every single day.  That is not her job.

1   That is why she oversees a department of 4500 people.  She

2   delegates responsibilities to not just one level of people but

3   multiple levels.  From undersheriff, assistant sheriff,

4   commanders, captains, lieutenants, sergeants, deputies.

5   We have spent, I think, at this point, 38 hours in PMK

6   depositions that took place late because the plaintiffs

7   scheduled them late.  It had nothing to do with documents.  It

8   had everything to do with the plaintiffs' control and desire to

9   delay them to the end.  And not a single witness said, "I don't

10  know what the plans are."

11  They were not asked what are the future plans of the

12  jail.  They were not asked what -- what -- not all of them were

13  asked what changes were made.  Some of them were.  In fact,

14  Theresa Adams-Hydar and Christina Bavencoff -- who was deposed

15  before she retired -- both testified about the significant

16  changes that has been made both in the spirit of the settlement

17  and independent of the already-inked settlement regarding SDCJ

18  and hearing-impaired individuals.

19  So the notion that somebody else -- the sheriff -- is

20  going to be able to provide this deep level of knowledge is

21  simply untrue.  Nothing the plaintiffs have submitted suggests

22  that Sheriff Martinez is involved in this case to any extent,

23  different than the Apex -- you know, the -- the *Greer* case Apex

24  factors.  She has no personal knowledge of anything.

25  I understand that the plaintiffs talk about repeatedly

1    the deaths in the jails.  One death is too much.  Too much.

2    But the reality is that the jail has made significant strides

3    and significantly reduced the influx of fentanyl, a national

4    crisis, into these jails.  And significantly improved the detox

5    protocols to save people's lives.  One death is too much.

6         The reason that this deposition was noticed is

7    evidenced by the fact that the minute that this motion was

8    filed, it somehow got to the press.  And it was reported that

9    the sheriff, herself, refused to appear.  The sheriff did not

10   refuse to appear.  You can blame that on me.  I made the legal

11   decision because the sheriff is an Apex witness, and we have an

12   Apex doctrine for a reason.

13        The approval of press releases is nothing more than a

14   ministerial act.  And the press release is not written by the

15   sheriff, suggesting that she has personal knowledge.  She

16   relies on those 4500 people to give her accurate information

17   and to write those press releases.

18        She is not the only person that could answer

19   questions.  And the reality is if these questions were asked of

20   Sheriff Martinez, her answer would be:  "I expect my 4500

21   people to make sure that things are done right and legally."

22        She is not going to be able to tell you how much

23   turning space is being installed in certain jail cells.  She is

24   not going to be able to tell you what the current plan that we

25   have coming up, that is due in a couple of weeks, regarding all

1    of the facilities and the ADA issues that the County

2    volunteered to provide to get the settlement discussions going.

3    She's not going to know what's in that because she counts on

4    those 4500 people.

5           The notion that retired -- now-retired Commander

6    Bavencoff and Assistant Sheriff Adams are -- because they

7    retired, only Sheriff Martinez can answer those questions --

8    what about the people who replaced them?

9           Those people don't walk into those positions green,

10   with no knowledge of what's going on.  To get to that level in

11   their careers and to transfer into those positions, they are

12   the people that could be deposed.

13          I'm not suggesting they should be deposed because

14   counsel -- plaintiffs have already used up more than their

15   allotment of depositions.

16          But the Apex factors set forth in *Greer*, not a single

17   one of them have been met here.  Not a single one.

18          I am least concerned about the time because if Sheriff

19   Martinez had personal knowledge of something, I wouldn't be

20   arguing with you.  And she would need to be deposed, and she

21   would find the time.  Like -- she doesn't.  This is a political

22   play.  This has no place in this case.  And there is not a

23   single piece of evidence before the Court as to why the sheriff

24   should be deposed.

25          THE COURT:  Ms. Grunfeld, I will give you an

1   opportunity to share any thoughts you wish on this issue.   Then

2   I do wish to turn to the plaintiffs' request to depose

3   Dr. Freedland.   And I want to understand that a little bit

4   better.

5          But if you would like to take a moment, Ms. Grunfeld,

6   given it's your motion, I'll give you an opportunity to reply.

7          ATTORNEY GRUNFELD:   Thank you, your Honor.

8          It is not accurate to say that plaintiffs have used

9   more than their allotment of depositions.   We have taken nine

10  depositions.   We have one left.   And so that is not accurate.

11         If the Court feels the record is not sufficient, we

12  would like the opportunity to submit additional deposition

13  transcripts as soon as they are available -- or the roughs, if

14  we need to order them -- that discuss situations where people

15  couldn't answer questions.

16         Also, of course, asking questions of someone who's

17  relatively low level does not really answer what we're seeking

18  here.   We're not seeking to ask the sheriff how many inches

19  apart the beds are going to be in 8C, at Central, when it's

20  finished.   We want to know the overall priorities for reform,

21  and what's going to be done to ensure that the death rate goes

22  down; that the ADA is met; that a whole host of other important

23  issues are firmly within the priorities of this department.

24         So we would like that opportunity.   If the Court feels

25  the record is lacking, we are also -- as I said earlier --

1    willing to provide a list of general topics or question areas

2    that we believe the sheriff does have knowledge about based on

3    her testimony before the board of supervisors, based on her

4    emails, and based on her press releases.

5          I think the only other thing is that I respectfully

6    disagree that we scheduled the PMKs late for no reason.  The

7    PMKs did come late.  I acknowledge that.  But it was because of

8    the documents and then desire to review the documents prior to

9    the depositions.  And as the Court is aware, many of the

10   productions have taken longer than any -- anyone expected or

11   wanted in this case.

12         Your Honor is on mute.

13         THE COURT:  Thank you.

14         Look, I understand the parties' positions on the legal

15   issue.  I think one thing that is clear to me, in having spent

16   a great deal of time with you all over the past two years now,

17   is the amount of work that has gone into this and the efforts

18   with respect to discovery.  And the timing of the Rule 30(b)(6)

19   depositions is not something that I -- I feel a need to

20   resolve.

21         The County has been working very hard to produce the

22   documents in compliance with my rulings.  I understand why the

23   plaintiffs want to review those documents before taking the

24   Rule 30(b)(6) depositions.  But I do appreciate everyone's

25   positions on the issue of the deposition of Sheriff Martinez.

1          I would like to turn to the issue of deposing

2   Dr. Freedland now because I understand the plaintiffs' motion

3   to ask to depose Dr. Freedland if the plaintiffs believe that

4   one or more of the County's Rule 30(b)(6) designees was unable

5   to sufficiently describe the reasons why the County is moving

6   to contract with -- I believe it's Correctional Healthcare

7   Partners.

8          So let me ask this for starters, Ms. Grunfeld.  Did

9   you obtain the information that the plaintiffs believe they

10  needed through the Rule 30(b)(6) depositions?

11         ATTORNEY GRUNFELD:  No, your Honor.

12         THE COURT:  Which Rule 30(b)(6) depositions included

13  an inquiry about Correctional Healthcare Partners?  And in the

14  plaintiffs' view, at least, insufficient responses?

15         ATTORNEY GRUNFELD:  Dr. Montgomery was asked about

16  that.  And, your Honor, I was not present at that deposition,

17  and I don't believe we have the transcript.  Or, if we do, I

18  haven't got it right here with me.  But my understanding is

19  that he was only able to answer very vaguely about what is

20  happening with CHP.

21         The Court will recall that we originally sued CHP.  We

22  were then told that CHP was not going to be involved in

23  healthcare at the jail.

24         We then learned that they were a subcontractor of

25  NaphCare, which was going to be providing healthcare at the

1    jail.  We started our efforts to depose NaphCare, in September

2    of 2023.  The Court's well aware of the history with that.  And

3    there's been briefing about whether that has been addressed.

4        But the bottom line is we've been getting hints that

5    there's going to be a major change in terms of CHP's role in

6    providing medical care to our clients.  And we believe that a

7    deposition of Dr. Freedland would supply the information that

8    we're seeking about what is CHP going to do, going forward, at

9    this jail as a provider of physicians; how many physicians;

10   what level of other providers, if any; what is the scope of

11   this new arrangement?

12       And we don't know, and we've asked opposing counsel.

13   And we have not been told.  And we've asked Dr. Montgomery, and

14   received nothing that's answering these questions I'm raising

15   here.  And so we believe that a short four-hour deposition of

16   CHP, or Dr. Freedland, is in order in the case.

17       THE COURT:  In reviewing your motion, Ms. Grunfeld,

18   you indicated that Dr. Montgomery would be deposed as a Rule

19   30(b)(6) designee.  I think it was on April 26th.  And I

20   realize that that was after the plaintiffs filed their motion

21   on April 24th.

22       But do you have a transcript of Dr. Montgomery's Rule

23   30(b)(6) deposition?  Because the record before me does not

24   indicate any inability or unwillingness to answer questions

25   about the County's decision to contract with Correctional

1 Healthcare Partners.

2   And it does seem to me that the reasons why the County

3 has chosen to do that would be uniquely within the County's

4 knowledge and not fully necessarily at all in Dr. Freedland's

5 knowledge.  Which I think is what you are seeking,

6 Ms. Grunfeld.

7   So do you have that deposition transcript?  Because I

8 don't believe it's in the record before me.

9   ATTORNEY GRUNFELD:  It's not in the record, your

10 Honor.  And I would be happy to submit the pages.  I believe we

11 just got it in, in the last couple of days.  Again, I don't

12 have it with me at this moment, but I would be happy to submit

13 the pages for the Court's review on that topic.

14   But just to clarify, the record does show that I asked

15 this question of opposing counsel, and I was not provided

16 information about the scope of this new contract, if any.  And

17 I don't just seek the reasons the County decided to do it.  I

18 seek information about what CHP is going to be doing with

19 respect to medical care being provided to the class going

20 forward.  What is -- what is their job here?  That's what I

21 would like to know.  What are they going to do?

22   THE COURT:  I understand.  And all of that information

23 should be within the possession of the -- the County.  Both the

24 reasons why, as well as the scope of what Correctional

25 Healthcare Partners is going to be doing; it would seem to me

1    Ms. Grunfeld.  So that's why I inquired.

2          Ms. Pappy, do you wish to be heard on this issue?

3          ATTORNEY PAPPY:  I do.  Thank you, your Honor.  As

4    with most things, it's not quite as advertised.

5          The -- the -- NaphCare is not being replaced.  I don't

6    know where plaintiffs came up with that.  This isn't a secret.

7    There was actually a public bid put out.  So the County's not

8    real good at keeping secrets, if it's putting bids out for

9    public healthcare services.

10          The only facet of NaphCare's work that is being

11    supplemented is doctors, medical doctors.  And CHP is going to

12    be providing those.  And my understanding is that Dr. Freedland

13    is going to be the head of that.

14          That contract is being inked on January [sic] 1st.

15    The problem -- like I said, with a lot of things that the

16    plaintiff does and the way they write things and advertise them

17    to the Court, this first came up in Serena Hood's deposition.

18    She's one of the head nurses, and she was asked questions.  It

19    was very early on in the negotiations.  It was subject to

20    confidentiality of a public agency's ability to negotiate a

21    contract without undue influence.  They were negotiating.

22    They're ready, now, to sign the contract June 1st.  The

23    parameters -- I would assume -- as of May 15th, are probably in

24    place.  But it will not become an official contract with all of

25    the terms negotiated until June 1st.

1    Had counsel talked to me about this and said, "Hey,

2    we -- we want to -- you know, we want to understand what CHP's

3    contract is going to be.  Will you agree to let us depose

4    somebody, once that contract is done?" the answer would have

5    been yes.

6    I don't -- if they want it to be Dr. Freedland -- I'm

7    assuming he's going to be the guy because I've been advised

8    that he is -- I don't actually have a problem with that.

9    Because, again, that is something that helps the County.

10    The problem is timing.  He -- we need to get that

11    contract done, and -- and then set his deposition for -- I

12    don't know.  June -- mid-June, or something, or the first week

13    of June.  I don't know if the man is going to appreciate that.

14    But get his deposition set once the -- again, the parameters of

15    that contract and exactly what's in it and what CHP is going to

16    be doing at the County, has set.

17    Happy to have it.  Because, of course, we're going to

18    use it as trial.  And I would look a little bad if I didn't

19    allow him to be deposed.  So I don't have an objection to

20    Dr. Freedland being deposed for that purpose to understand the

21    contract, what's it going to be about.  I think enough said.

22    THE COURT:  We spent a lot of time talking about the

23    parties' efforts to meet and confer with one another.  This was

24    part of the plaintiffs' motion to depose Dr. Freedland.  I

25    spent time, you know, thinking about it and reviewing the

1    motion.

2            Did you all meet and confer on this issue?  Because it

3    sounds to me like there really isn't a dispute between the

4    parties that this is a new development; in terms of, at least,

5    the forthcoming contract.  And that everyone is in agreement

6    that a, you know, deposition of Dr. Freedland is appropriate.

7            So, you know, I don't want more argument on it because

8    it's not going to be helpful to me in resolving this issue.  I

9    understand the plaintiffs wish to depose Dr. Freedland.  I

10   understand the County does not oppose that request.  And I will

11   proceed accordingly, when I issue my ruling.

12           I believe that answers all of the questions that I had

13   with respect to the plaintiffs' motion, understanding that

14   issues pertaining to NaphCare will be resolved at the upcoming

15   hearing.

16           Is there anything else that we need to discuss with

17   respect to this motion, Ms. Grunfeld and Ms. Pappy, before we

18   turn to the parties' joint motion to continue the pretrial

19   deadlines?

20           ATTORNEY GRUNFELD:  No, your Honor.

21           ATTORNEY PAPPY:  No, your Honor.

22           THE COURT:  Ms. Pappy?

23           And, Ms. Ortiz, I'm -- you're welcome to stay.  This

24   is a public hearing.  But given that we have finished talking

25   about the issues that are raised in the plaintiffs' motion, if

1   you wish to leave, ma'am, you are free to do so.

2           ATTORNEY ORTIZ:  Thank you very much, your Honor.

3           THE COURT:  You're welcome.

4           All right.  Let's turn, now, to the parties' joint

5   motion, which is Docket number 642.

6           This came up when we had the hearing two weeks ago on

7   plaintiffs' request for production numbers 250 through 252 and

8   the amount of time that Mr. Ross would need to prepare his

9   expert report following the production of additional

10  information.

11          And it seems as though -- well, at the hearing, it was

12  clear that all parties wanted a continuance of the pretrial

13  dates and that I have two proposed schedules that are very

14  similar.  It's just that the defendants are requesting a little

15  bit of additional time.

16          Let me just cut right to it.  I was a little bit

17  surprised to see that there are competing schedules that are in

18  fact so close to one another.

19          Is there really a dispute between the parties as to

20  the requested extensions of time, Ms. Grunfeld?

21          ATTORNEY GRUNFELD:  There -- they're very close, your

22  Honor.  We do -- the parties agree more time is needed for all

23  of the reasons in the joint motion.

24          We just worry about losing momentum.  And because it's

25  an injunctive relief case, we would like to keep as close to

```
1    the original schedule as we can.  So it's very close.

2              THE COURT:  And I understand that.  And we are

3    ultimately talking about a difference of the plaintiffs

4    requesting for the final pretrial conference before Judge

5    Battaglia to be on March 13th of 2025, and the defendants are

6    requesting April 24th.  So it is approximately a five-week

7    difference, at the end of the day.

8              I -- other than that issue of timing that I will

9    resolve, are there any other issues with respect to the

10   parties' joint motion that we need to talk about this morning,

11   Ms. Grunfeld?

12             ATTORNEY GRUNFELD:  No, your Honor.

13             THE COURT:  All right.  Ms. Pappy, how about you,

14   ma'am?

15             ATTORNEY PAPPY:  The only thing I would like to add is

16   that -- that -- you know, it sounds like we're going to agree

17   to Dr. Freedland.  And we're pushing the two potential -- two,

18   potential three, NaphCare deposition questions to June.  Can I

19   have my extra two weeks?

20             I'm concerned about having to run back to the Court

21   repeatedly.  And even that extra two weeks, given that it

22   sounds like -- I don't want to shoot myself in the foot.  But

23   we'll be doing at least three depositions in June.

24             THE COURT:  No, I understand.  And to the extent that

25   there are going to be any additional fact witness depositions,
```

1    it does appear to me that the proposed new deadlines for expert

2    disclosures -- whether it's July 15th or July 31st -- would

3    allow the parties time to complete those additional fact

4    witness depositions and take them into account, if necessary,

5    in the expert disclosures.  So I do appreciate that.

6            All right.  I will take this under submission.  I will

7    also look at -- or consult with Judge Battaglia's chambers,

8    given that the amended schedule affects pretrial dates for

9    hearings before him.  And I will take all of that into account.

10           I believe those are all of the issues that I needed to

11   address with you all this morning.

12           Anything further that we should discuss, Ms. Grunfeld?

13           ATTORNEY GRUNFELD:  Yes, your Honor.

14           On June 3rd, the Court has scheduled -- as I -- as I

15   recall -- a hearing on the NaphCare motion.  And I believe

16   that's in person.

17           And then there's a Zoom settlement conference.  And

18   then the parties have been trying to set an -- I think --

19   in-person meet-and-confer with our experts under Judge

20   Battaglia's April 24 order.  And in that order, the -- the

21   Court suggested that you could help us with that

22   meet-and-confer.

23           So I believe Ms. Coleman emailed me yesterday,

24   suggesting could we do everything that day, June 3rd.  In other

25   words, would you be available.

1        And I believe Ms. Pappy and Ms. Coleman are available.

2   But they'll tell us, if not, to --

3        ATTORNEY PAPPY:  Yeah.

4        ATTORNEY GRUNFELD:  -- start the day with NaphCare.

5   Then move to either the meet-and-confer or the settlement

6   conference.  And I -- you know, I believe I can get our expert

7   there on that date.  I have to double-check, but I'm pretty

8   sure.

9        ATTORNEY PAPPY:  And that's agreed, your Honor.

10  That's -- that was actually me that suggested it would make

11  sense to combine those two things.  If it's not the 3rd, the

12  4th, the 5th, myself and my expert are available that whole

13  week.

14       THE COURT:  I do agree with you both that it makes

15  sense to combine all of those into a single day.

16       And as it is, I had blocked out from 9:00 a.m. to

17  11:00 a.m. for the NaphCare motion hearing and then further

18  settlement discussion revolving -- revolving around ADA issues.

19  And I think it also makes sense to address the issues that were

20  raised by Judge Battaglia on June 3rd as well.

21       Let me ask you all this.  I do think it makes sense

22  for the motion hearing to be in person.  I would ask you all to

23  meet and confer about whether any participants should be

24  allowed to attend by Zoom.

25       If you -- we do that for the ADA portion of this -- I

1  mean, look, we've made good progress in person.  But I realize

2  that there are costs associated with that.  If anyone believes

3  it would be helpful to -- to have a hybrid proceeding following

4  the motion hearing on the record, I would certainly be willing

5  to consider that.  Understanding that if anyone would be

6  appearing by Zoom for the settlement portion of our

7  discussions, you all are aware of the conference rooms where

8  we'll be located.  There's -- you would have to provide a

9  hotspot and your own Internet connection.  But talk to each

10  other and see if that's something that makes sense to you all.

11  Otherwise, I'll expect to see everyone in person that wants to

12  be here.

13          ATTORNEY PAPPY:  Yeah, we'll be there in person.  I

14  think it's important enough.  And if the Court's schedule is

15  such that you can only give us an afternoon and a morning, or

16  something like that, happy to stay over.  It's not a problem.

17  I think it's worth the time.

18          THE COURT:  How much time would we need to devote to

19  this, Ms. Pappy?

20          And then I'll hear from Ms. Grunfeld on this, as well.

21          ATTORNEY PAPPY:  You know, I would -- I would love you

22  to give us a whole day.  Am I stretching a bit?  (Laughing.)

23          THE COURT:  I have another hearing that's currently

24  set for 2:00 p.m.

25          But I -- I understand that we've got a number of

 1   things to discuss.

 2           Ms. Grunfeld, what's the plaintiffs' position?

 3           ATTORNEY GRUNFELD:  Whatever the Court can provide, we

 4   would love.  We appreciate.

 5           I wanted to just clarify, since I see Ms. Ortiz is

 6   still listening, that the nine o'clock would be hybrid; the --

 7   the hearing on -- on NaphCare.

 8           In other words, we're going to be in San Diego,

 9   Ms. Pappy and I.  And we would start with the oral argument on

10   that.  Right?

11           THE COURT:  That's right.

12           ATTORNEY GRUNFELD:  I mean, of course, if Ms. Ortiz

13   wants to come, that's fine.  But I just want to get clarity

14   while we're all here.

15           THE COURT:  Ms. Ortiz, to the extent that NaphCare

16   wishes to appear remotely, we'll be in the courtroom, and

17   that's not a problem for us to have a Zoom link (indiscernible)

18   for you.

19           ATTORNEY ORTIZ:  Thank you for that clarification.

20           THE COURT:  Sure.  Just let my chambers know at least

21   a week before the hearing, if you are going to be requesting to

22   appear remotely, so we can make those arrangements.

23           Then, Ms. Grunfeld and Ms. Pappy, let me give some

24   further thought to the rest of the day on June 3rd.  But I

25   understand that you all will be (indiscernible).

1          ATTORNEY PAPPY:  Thank you.

2          ATTORNEY ORTIZ:  Understood.  Thank you.

3          THE COURT:  Okay.  Anything else that we should

4   discuss this morning, Ms. Grunfeld?

5          ATTORNEY GRUNFELD:  No.  Thank you, your Honor.

6          THE COURT:  Sure thing.

7          Ms. Pappy?

8          ATTORNEY PAPPY:  No.  Thank you, your Honor.

9          THE COURT:  Okay.  Thank you all.

10          Have a good day, everyone.

11          ATTORNEY GRUNFELD:  Thank you.

12          (Conclusion of proceedings.)

13

14                          --oOo--

15   I certify, by signing below, that the foregoing is a correct
    stenographic transcript, to the best of my ability, of the
16   digital recording of the audio proceedings had in the
    above-entitled matter this 23rd day of May, 2024.  A transcript
17   without an original signature or conformed signature is not
    certified.  I further certify that the transcript fees and
18   format comply with those prescribed by the Court and the
    Judicial Conference of the United States.

19
          /S/ Amanda M. LeGore
20        _____

21        AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

22

23

24

25