1                   UNITED STATES DISTRICT COURT

2               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3   DARRYL DUNSMORE, ERNEST          )
    ARCHULETA, ANTHONY EDWARDS, REANNA)
4   LEVY, JOSUE LOPEZ, CHRISTOPHER    )
    NELSON, CHRISTOPHER NORWOOD, and  )
5   LAURA ZOERNER, on behalf of       )
    themselves and all others         )
6   similarly situated,               )
                                      )   No. 20-CV-0406-AJB-DDL
7              Plaintiffs,            )
                                      )
8   V.                                )   July 29, 2024
                                      )
9   SAN DIEGO COUNTY SHERIFF'S        )
    DEPARTMENT; COUNTY OF SAN DIEGO;  )
10  CORRECTIONAL HEALTHCARE PARTNERS, )
    INC.; LIBERTY HEALTHCARE, INC.;   )
11  MID-AMERICA HEALTH, INC.; LOGAN   )
    HAAK, M.D., INC.; SAN DIEGO COUNTY)
12  PROBATION DEPARTMENT, and DOES 1  )
    to 20 inclusive,                  )
13                                    )   Courtroom 3A
               Defendants.            )
14  _____  )   San Diego, California


15

    TRANSCRIPT OF DIGITALLY RECORDED VIDEOCONFERENCED PROCEEDINGS
16                    (Discovery Conference)

17

18      BEFORE THE HONORABLE DAVID D. LESHNER, MAGISTRATE JUDGE

19

20

21

22

23  COURT REPORTER:          AMANDA M. LeGORE
                             RDR, CRR, CRC, FCRR, CACSR
24                           U.S. District Court
                             333 West Broadway, Suite 420
25                           San Diego, CA 92101
                             amanda_legore@casd.uscourts.gov

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:      GAY GRUNFELD
                             ERIC MONEK ANDERSON
 3                           Rosen Bien Galvan & Grunfeld LLP
                             101 Mission Street, Sixth Floor
 4                           San Francisco, CA  94105-1738
                             (415)433-6830
 5                           ggrunfeld@rbgg.com
                             eanderson@rbgg.com
 6

 7
     FOR DEFENDANT COUNTY OF
 8   SAN DIEGO:               SUSAN COLEMAN
                             Burke, Williams & Sorenson LLP
 9                           444 South Flower Street, Suite 2400
                             Los Angeles, CA  91351
10                           (213)236-0600
                             scoleman@bwslaw.com
11

12
     FOR DR. FREEDLAND:       MICHAEL DAILEY
13                           Gordon Rees Scully Mansukhani, LLP
                             633 W 5th Street, 52nd Floor
14                           Los Angeles, CA 90071
                             (213)929-2418
15                           mdailey@grsm.com

16

17                                  -0-

18

19

20

21

22

23

24

25
```

1                    (Monday, July 29, 2024)

2

3                 P R O C E E D I N G S

4

5        THE COURT:  All right.  Good afternoon.  We're on the

6   record for a discovery conference in Dunsmore versus the County

7   of San Diego, et al., Case Number 20-CV-406.

8        May I have appearances from counsel, beginning with

9   plaintiffs' counsel.

10       ATTORNEY ANDERSON:  Good afternoon.  This is Eric

11  Monek Anderson for the plaintiffs in the certified class.  And

12  with me is my colleague, Gay Grunfeld.

13       THE COURT:  Thank you.

14       ATTORNEY COLEMAN:  Good afternoon, your Honor.  Susan

15  Coleman for the County of San Diego defendants.

16       THE COURT:  Thank you.

17       ATTORNEY DAILEY:  Good afternoon, your Honor.  Mike

18  Dailey on behalf of the deponent, Michael J. Freedland.

19       THE COURT:  All right.  Thank you.

20       All right.  So we are here for a discovery conference

21  following Dr. Freedland's deposition, and specifically the

22  plaintiffs' challenge to the confidentiality of certain

23  excerpts from the deposition.

24       First, I do appreciate what appears to be the parties

25  meeting and conferring and narrowing the scope of the disputes

1    to specific items within the transcript.

2          I also appreciate you all sending the deposition

3    transcript, which I have reviewed for the relevant portions at

4    issue.

5          By way of background, Mr. Dailey, since you have not

6    appeared before me in this case, I hold these informal

7    discovery conferences -- although they're on the record -- in

8    an effort to try to help the parties resolve discovery disputes

9    without the need for further briefing.

10          But if I do determine that further briefing is

11    necessary, I will discuss that with you all.

12          I have reviewed, as I said, the deposition excerpts.

13    I have reviewed them in light of the standard applicable in the

14    Ninth Circuit, in that the presumption is that the public is

15    permitted access to litigation documents and other information

16    produced during discovery.

17          And that where a party -- here, it is the plaintiff --

18    challenges designation pursuant to a protective order, the

19    inquiry is whether there is a showing by the party seeking

20    confidentiality that particularized harm will result from

21    disclosure of that specific information to the public.  If

22    there's a finding of particularized harm, then the Court would

23    proceed to balance the public and private interests at stake.

24          And, third, even where the public and the private

25    interests at stake favor nondisclosure, the Court is obligated

1  to consider redactions to that information to see if the

2  information can be made available, consistent with the general

3  presumption that discovery materials are available to the

4  public.

5        In reviewing the deposition excerpts, it does appear

6  to me that the specific dollar amounts referenced on pages 124

7  through 125 and page 127 are properly redacted.  And I'm

8  speaking about specifically redactions to page 125, lines --

9  well, line 6.  And then page 127, lines 17 and 20.

10        Besides that, it is not apparent to me that the

11  testimony of Dr. Freedland -- or the disclosure of that

12  testimony, I should say, would result in any particularized

13  harm to Dr. Freedland, CHP, or the County.  But I'm approaching

14  this with an open mind, and I am happy to hear from the

15  parties.

16        Ms. Coleman and Mr. Dailey, do you want to begin?

17        ATTORNEY COLEMAN:  Your Honor, we had also proposed

18  redaction of numbers at page -- pages 118 to 120, the contract

19  bid.

20        THE COURT:  Where, specifically?

21        ATTORNEY COLEMAN:  Let me see.

22        THE COURT:  I didn't see any numbers in that.  It was

23  a general discussion about NaphCare not compensating

24  Dr. Freedland.

25        And, by the way, I realize we're on the record.  And

1    so I'm going to speak generally, as best we can, so we don't

2    have to seal any part of this.

3           If I missed it, feel free to point it out to me,

4    Ms. Coleman.

5           ATTORNEY COLEMAN:  You're correct.  There are no

6    numbers noted in there.

7           THE COURT:  All right.  Well, do you and Mr. Dailey

8    wish to address my tentative, generally?  And that is

9    specifically to, you know, authorize the redaction of those

10   specific dollar amounts?  Otherwise, I understand that trade

11   secrets, in certain aspects of confidentiality -- or contract

12   negotiations, could be subject to a protective order and meet

13   the particularized harm standard.

14          I just don't see it in the context of this deposition

15   and the information testified to by Dr. Freedland, but you're

16   welcome to convince me otherwise.

17          ATTORNEY COLEMAN:  Well, one more thing, your Honor --

18          THE COURT:  Sure.

19          ATTORNEY COLEMAN:  -- for the County.

20          On page 191 --

21          THE COURT:  Okay.

22          ATTORNEY COLEMAN:  There is mention of a person's name

23   who was terminated from the County.

24          THE COURT:  Isn't that information already public from

25   the criminal trial?

1          ATTORNEY COLEMAN:  I don't know if her -- I mean,

2    obviously she was no longer at the County at the time she was

3    prosecuted.  I don't know that there was a discussion of her

4    personnel decision that preceded the criminal prosecutions in

5    that I was not party to the criminal proceedings.

6          I mean, it's probably evident that she no longer works

7    there.  But the specifics of how she left, I don't know that

8    that's private.  If we redacted the name, it would help the

9    privacy issue with the personnel decision.

10          THE COURT:  Okay.  I understand.

11          Any other comments that you would like to make on this

12    issue, Ms. Coleman, before I turn to Mr. Dailey?

13          ATTORNEY COLEMAN:  No, your Honor.

14          THE COURT:  Mr. Dailey, go ahead, sir.

15          ATTORNEY DAILEY:  Thank you, your Honor.

16          With respect to the contract negotiation, I think your

17    Honor is spot on with respect to the concerns.

18          That being said, with respect to the nondollar

19    amounts, our concern is that the contract negotiations

20    generally, as to what was requested and provided, absent the

21    completed-as-finalized contract, those confidential

22    negotiations, to my knowledge, were not provided to plaintiffs

23    in a publicly disclosed format.

24          So, for instance, my understanding is that certain

25    RFPs, once the negotiations have concluded, are publicly

1    available.

2         My understanding is that in addition to the dollar

3    amounts, those other contract negotiation points that

4    Dr. Freedland referenced were not disclosed.  And our main

5    concern is just with respect to the RFP process and how CHP and

6    Dr. Freedland approached that.

7         It would be a trade secret, in the sense that to the

8    extent there's an exception on that ground, for purposes of a

9    later contract with the County, we want to make sure that those

10   sorts of communications aren't disclosed.  Understanding what

11   element, of course, is the price itself.  But also just

12   generally speaking, those nonpublic things.  Which we don't --

13   we haven't been able to see as being publicly available.  And

14   we've asked plaintiffs for that.

15        THE COURT:  And I appreciate that, Mr. Dailey.  And

16   the fact that information is not publicly available is

17   certainly part of the analysis in determining a particularized

18   harm.  But even if it's not publicly available, I need to

19   ascertain whether there's a showing of particularized harm.

20        And I think you were talking about pages 118 through

21   120, as best I could tell.  And that appeared to me to be -- a

22   response by Dr. Freedland, pertaining to discussions between

23   himself and NaphCare.

24        Am I reading that correctly?

25        ATTORNEY DAILEY:  With respect to 118 through 120,

1  yes.  Those are the current sort of issue -- issues related to

2  the ongoing (indiscernible) --

3          THE COURT:  So what is the part that you're talking

4  about that relates to the RFP between Dr. Freedland and the

5  County?

6          ATTORNEY DAILEY:  Well, my reference was to include --

7  not wanting to seal the additional contract negotiation

8  provisions.

9          THE COURT:  Which part -- which page of the

10  deposition?

11          ATTORNEY DAILEY:  So 124, 9 through 125 at line 12.

12          THE COURT:  I see.  Okay.  Thank you.  Let me take

13  another look at that.

14          (Pause.)

15          THE COURT:  Was the fact of the -- of the length of

16  the plan requested by the County, is that publicly available

17  information?

18          ATTORNEY DAILEY:  I'm not aware of it, but I

19  haven't -- like I said, I haven't seen it.  And I have asked

20  plaintiffs to sort of point me in the direction of the publicly

21  disclosed information that they have.

22          Because plaintiffs have indicated that their challenge

23  is based on this information in part being publicly available.

24  Which, obviously, pursuant to the terms of the protective order

25  that the parties entered into, that's one way, for purposes of

1   de-designating confidential information, if it's publicly
2   available elsewhere.
3        I haven't seen this level of granularity or the
4   approach to the plan and the RFP process articulated in such a
5   way from the drafter that, to me, it is (indiscernible) to the
6   extent, you know, again, moving forward, those issues arise.
7        And I haven't heard anything from the plaintiffs that
8   there would be any harm in any respect to make this small
9   section confidential.
10       THE COURT:  Okay.  I understand your position.
11       Do you wish to be heard with respect to any of the
12   other deposition excerpts at issue, Mr. Dailey?
13       ATTORNEY DAILEY:  The only other one that I -- we do
14   have an issue with is the -- we appreciate the Court's
15   tentative with respect to line 17, on page 127.  But also, with
16   respect to the name of the individual, I think it's one -- it's
17   one thing to have the name of the individual in the public
18   domain.  And I'm referencing the topic that Ms. Coleman
19   referenced earlier, as it relates to the terminated individual.
20       I think in this case, though, given the privacy of the
21   individual, the setting, and -- and to the fact that
22   Mr. Freeland was speaking, I think, warrants this being
23   redacted.  Again, as a compromise, we would be willing to
24   consider just the name.  But I do see that it is something that
25   is a historical issue, that isn't really of relevance.  And the

1    harm that it could have with respect to CHP, of being publicly

2    disclosed, as well as potential other employment-type issues, I

3    think, warrants it being designated as confidential.

4           THE COURT:  So the specific information you are

5    requesting be redacted, Mr. Dailey, is page 125, line 6, the

6    dollar figure; the dollar figures on page 127, lines 17 and 20;

7    and the name of the individual on page 191, line 2?  Without

8    waiving your positions to the other portions, but if I were to

9    find that limited redactions were appropriate, are there any

10   other dollar-figure redactions?

11          ATTORNEY DAILEY:  From a dollar-figure perspective, I

12   think you hit the nail on the head there, your Honor.

13          I think again, you know, I see that the harm is being

14   encompassed with respect to the dollar figures, as well as the

15   other discussions concerning contract negotiations that were

16   not made public.

17          But I think -- and I think those are all along the

18   same lines as the dollar figure, with respect to the rationale

19   for sealing the dollar figures.

20          THE COURT:  Okay.  All right.  Thank you, Mr. Dailey.

21          Mr. Anderson and Ms. Grunfeld, let's say I agree that

22   there's not a basis to redact in the discussion about

23   communications between Dr. Freedland and NaphCare on pages 118

24   through 120.

25          But then we get to page 124 and 125, and there's a

1   discussion of the CHP proposal.

2          Do the plaintiffs object to redacting the dollar

3   amount on page 1.5, line 6?

4          ATTORNEY ANDERSON:  We do, your Honor.

5          THE COURT:  Why?

6          ATTORNEY ANDERSON:  So the -- that is the dollar

7   amount during the RFP process.  They're the dollar amount that

8   is -- that is in -- the signed and final contract is public.

9   Because that contract is posted on the County's public website.

10  Produced to us nonconfidential.

11         THE COURT:  Okay.

12         ATTORNEY ANDERSON:  Now that the RFP process is

13  closed -- I can understand that number being secret during the

14  RFP process.  But it's closed, and it's the contract.  So --

15         THE COURT:  You said the contract is publicly

16  available?

17         ATTORNEY ANDERSON:  Yes.

18         MS. COLEMAN:  Your Honor, the contract was not --

19  (indiscernible).

20         THE COURT:  Ms. Coleman, you've got to let him finish.

21         ATTORNEY COLEMAN:  Sorry.

22         THE COURT:  Go ahead, Mr. Anderson.

23         ATTORNEY ANDERSON:  Thank you.

24         Just saying, it's available on the County's public

25  website, and it was also produced to us.  The contract was,

13

1   with a portion of the RFP, the -- by defendants.  And that

2   includes the final amount.

3        So to this argument that, well, a competitor could use

4   that -- this information that's here in 124 and 125 in a future

5   bidding process -- well, they have the final result, and they

6   could use that.  Which, honestly, seems like more useful

7   competitive information than a different amount during the RFP

8   process.

9        THE COURT:  Your -- your main point, Mr. Anderson, as

10  I understand you, is that the contract is publicly available,

11  including the dollar amount?

12       ATTORNEY ANDERSON:  Yes.  And we haven't received any

13  authority suggesting how this particular number could be a

14  trade secret, which is the pending assertion.

15       THE COURT:  What's the plaintiffs' position with

16  respect to redacting the individual identified on page 191,

17  line 2?

18       ATTORNEY ANDERSON:  Your Honor, we agree with your

19  tentative.  This individual, her name has been made public

20  quite often, in connection with a very notorious jail death

21  that your Honor is very familiar with.  And the actual

22  information here doesn't describe a reason for -- the reason

23  she's no longer employed by the County -- by the -- I should

24  not say "by the County."  She's not a public employee.  She was

25  a contractor.

1              And so even if there was some privacy interest in this

2    limited information here, there's a very strong public interest

3    in people knowing, again, this person who was involved.  Not

4    making any comment on her criminal case.  But she was

5    indisputably involved in a notorious jail death; and knowing

6    what her status is in terms of the County.

7              THE COURT:  Okay.

8              ATTORNEY GRUNFELD:  Your Honor?

9              THE COURT:  Oh, go ahead, Ms. Grunfeld.

10             ATTORNEY GRUNFELD:  If I may, as far as the number

11   goes, this -- this issue earlier on page 124, the number, that

12   is a very high public interest, what number someone thought

13   should be this -- what -- what number someone thought that the

14   bid should be and what number was accepted.  That goes directly

15   to the deliberate indifference theory of plaintiffs' complaint.

16             So it is of high public interest in a balancing test.

17             THE COURT:  Okay.  No, I appreciate that,

18   Ms. Grunfeld.

19             ATTORNEY GRUNFELD:  And there's no harm from CHP, from

20   that being made public, that I'm aware of.

21             THE COURT:  Mr. Anderson, Ms. Grunfeld, did you wish

22   to make any additional documents before I hear from

23   Ms. Coleman?

24             ATTORNEY ANDERSON:  No, your Honor.

25             THE COURT:  All right.  Go ahead, Ms. Coleman.

1    ATTORNEY COLEMAN:  Your Honor, thank you.  The -- the

2    amount on page 125, line 6, is not part of the final contract.

3    A different amount was negotiated.  That is part of the

4    final -- that is in the final signed contract.

5    And so that amount is not out there in the public, and

6    just those two numbers should be redacted.  And it -- it in no

7    way --

8    THE COURT:  Why?

9    ATTORNEY COLEMAN:  Why?

10    THE COURT:  Why?  So if CHP proposed the contract

11    should have value number one, but ultimately the contract has

12    value number two, what -- and value number two is publicly

13    available, what is the particularized harm to CHP,

14    Dr. Freedland, or the County from disclosing that he initially

15    said, "Hey, we're willing to do this for value number one"?

16    ATTORNEY COLEMAN:  Well, it seems like potentially a

17    trade secret.  And what they put forth -- what they ultimately

18    accept and what becomes part of the public contract is a

19    different situation.

20    And then in no way should it be able to be used to

21    show deliberate indifference.  Because people could put forth

22    any number that they want, a wish list of things.  And it

23    doesn't mean if the County does less than that -- which, by the

24    way, is more than four times what they've been spending on

25    medical, what they agreed to spend with CHP recently.  There's

1    a huge increase in the payment for medical care.

2            So the fact that they didn't agree to spend five times

3    that amount, or -- or something like that, should -- should not

4    be able to be used as reflective of the County's indifference

5    to medical care.

6            THE COURT:  And that would be an argument before Judge

7    Battaglia regarding admissibility at trial, would it not?

8            ATTORNEY COLEMAN:  Sure.

9            THE COURT:  Mr. Dailey, do you wish to address my

10   question?

11           ATTORNEY DAILEY:  Yeah.  And I appreciate the

12   question.  Because I just want to make a couple of things

13   clear.  And I think Ms. Coleman indicated, one, on the contrary

14   to plaintiffs' position, our understanding is that this figure,

15   the RFP figure is not publicly available.

16           Plaintiffs have provided to us -- and I believe

17   plaintiffs' counsel sort of indicated -- but in a vague

18   manner -- the fact that the RFP materials did not include this

19   number in the publicly available document that plaintiffs have.

20           So as of today, this is still not a public -- a public

21   dollar amount that's known.

22           THE COURT:  I think I -- that's what I understood

23   Mr. Anderson to be saying, is that the proposal was not public,

24   but the final contract was public.

25           Did I hear you correctly, Mr. Anderson?

1          ATTORNEY ANDERSON:  Yes.  We never represented that

2     this other figure is publicly available; the final figure is

3     publicly available.

4          THE COURT:  I may have done so inadvertently.

5          ATTORNEY DAILEY:  Okay.  So --

6          THE COURT:  We're proceeding with that.  Everyone

7     agrees that the proposed figure, not publicly available.  But

8     then the agreed-upon contract is public.  And -- and that

9     figure is available.

10         So what's the particularized harm?

11         ATTORNEY DAILEY:  So based on -- sorry --

12         THE COURT:  That's okay.  Go ahead.

13         ATTORNEY DAILEY:  With respect to the authority that

14    we provided, we provided to plaintiffs' counsel *Masonite Corp.*,

15    *v. County of Mendocino Air Quality Management*, 42 Cal.App. 4 --

16    436, which indicates that trade secret information is

17    information that derives independent economic value from not

18    being known to the public.

19         And the issue here is that folks can obtain economic

20    value from its disclosure for use.  And, here, the concern is

21    that down the road, when the RFP process opens again, to the

22    extent these figures are not publicly disclosed -- and they

23    haven't, thus far, been publicly disclosed -- it would allow

24    competitors of CHP to get greater insight than they otherwise

25    would be allowed into the RFP negotiation between the County

1    and CHP.  And that's the harm that CHP would incur as a result.

2          Now, plaintiffs are just speaking in sort of general

3    absolutes, like they don't see the harm.  But the harm is real,

4    and it would occur to the extent a competitor would get

5    information to nonpublic confidential data disclosed during the

6    RFP process that otherwise wasn't made public.

7          THE COURT:  But help me understand that, Mr. Dailey.

8    Because I'm having trouble tracking why, knowing the initial

9    proposal --

10         ATTORNEY DAILEY:  Sure.

11         THE COURT:  -- from CHP -- let's leave aside whether

12   it's a trade secret.  I think that's a different inquiry, and

13   I'm not seeing it as a trade secret.  It may be confidential,

14   proprietary business information.

15         But Dr. Freedland said, "Look, we made a proposal at

16   figure 1.  And the County didn't go for it, and so we agreed on

17   figure 2."  Why is the existence of figure 1 something that

18   could cause particularized harm to CHP in the future?

19         It seems (indiscernible) to me.

20         ATTORNEY DAILEY:  Well, it would be speculative until

21   it's actually realized.  I agree with you there.  But I think

22   there is actual harm in the sense that if you are a competitor,

23   you would now know what the initial bid was that was not

24   publically disclosed previously.  And now you would be able to

25   undercut.

19

1          So while now I know what your initial -- if you are

2     asking -- hypothetically, you know -- 10 million, well, now I

3     know I'll undercut.  So it will make my RFP that much more

4     attractive.

5          THE COURT:  But that may be true if the RFP process

6     were still ongoing.  But now that it's completed and there's a

7     finalized contract, I'm not following you.

8          ATTORNEY DAILEY:  No, my point is down the road.  So

9     the RFP process, once this contract is -- to the extent

10    there -- this contract gets bid out again, at its conclusion,

11    the information that was -- one could glean from this contract

12    negotiation period, you could then use for future negotiations.

13    That's my point.

14         My point is down the road -- as anyone would do,

15    you're diligencing a deal.  They -- you know, I want --

16    hypothetically, I want to bid out this work.  I'm going to

17    diligence the deal.  And I'm going to see if there's any public

18    information in any respects related to what transpired during

19    those prior conversations that the County had with its prior

20    contract.

21         So that nonpublic information, from this deposition,

22    to the extent it's publicly disclosed -- and based on my

23    understanding, I've seen, you know -- the press report on a

24    variety of issues concerning this case.

25         You know, how they get that information, I don't know.

1    I'm not even a party to this litigation.  But the concern here

2    is that someone could potentially use that information to

3    better inform their bid, and it would be at the competitive

4    harm of CHP.

5            THE COURT:  How long is the contract between CHP and

6    the County?

7            ATTORNEY DAILEY:  I think it's -- oh --

8            ATTORNEY COLEMAN:  Five years.

9            ATTORNEY DAILEY:  Yeah, I think it's a five-year

10   contract.

11           THE COURT:  So the idea would be when this contract is

12   up for renewal in five years from now, somebody's knowledge --

13   a competitor -- from CHP's knowledge -- that CHP originally bid

14   out this contract at figure 1 could harm CHP, if it's trying to

15   renew the contract?

16           ATTORNEY DAILEY:  To the extent -- yes, to the extent

17   that it's not public.  And also would harm the County, frankly.

18   Because to the extent this was not public information and the

19   CH -- the bid process does not include those figures.  You

20   know, now -- now you're -- folks are in a greater position to

21   negotiate, because they know what the differential was; what

22   the bid looks like versus what the actual amount agreed to was.

23           THE COURT:  Okay.

24           ATTORNEY DAILEY:  And you know, quite frankly this

25   transcript will also yield positive economic results from that

1  bidding process.

2         I mean, we're speaking in vague generalities.  But the

3  fact is that, you know, we're discussing different numbers,

4  negotiated amounts.  I mean -- you know, that's why I'm sort of

5  using hypotheticals.  But I do see the harm.  I do see the

6  competitive harm.  And to the extent it's not public, it should

7  remain confidential.

8         THE COURT:  All right.

9         Mr. Anderson, I'll give you, Ms. Grunfeld, one more

10 opportunity to address specifically the RFP figure one; as I've

11 been calling it.

12        ATTORNEY ANDERSON:  Sure.  I think our -- our point,

13 your Honor, is to the extent there's a competitive advantage to

14 be gained against CHP, it seems like the greatest competitive

15 advantage in trying to outbid them would be looking at the

16 number that's in the final contract; revisions to the final

17 contract, and trying to beat that.

18        Understanding what was bid earlier -- doesn't seem to

19 necessarily provide the -- the same competitive advantage.  So

20 that's -- that's our point there, is that -- especially we're

21 talking five years down the road, when these amounts will

22 necessarily differ.  This is all projection that would be going

23 on.  It's difficult to see how one year of medical care in a

24 jail could cost any similar amount in five years than it would

25 now.

1          THE COURT:  I see.

2          All right.  Give me just a moment, please.

3          (Pause.)

4          THE COURT:  All right.  Counsel, thanks for your

5     patience.  I wanted to have a chance to read through each of

6     the deposition excerpts and think about the arguments that were

7     raised.

8          Having heard from the parties, my tentative ruling is

9     that there should not be any redactions.  I understand CHP and

10    Dr. Freedland and the County's position that the proposal

11    amount might possibly give a competitive disadvantage at some

12    point in the future.  However, I -- that appears to me to be

13    speculative.  And the important number is the already public

14    contract amount.

15         That being said, Mr. Dailey and Ms. Coleman, I'm not

16    going to preclude you from filing a motion to maintain the

17    confidentiality of any of the information at issue.  You've got

18    my tentative views, and you're free to do with it as you see

19    fit.

20         What I am going to do is give you a briefing schedule

21    to file any motion and give you an opportunity to think about

22    my tentative ruling, and decide how you wish to proceed.

23         So given that it is the County's and CHP's burden to

24    establish a particularized harm from the public disclosure of

25    any of this information, I will give you until -- how long do

1   you need to get a motion on file, if you decide to file one,

2   Mr. Dailey?

3              ATTORNEY DAILEY:  Would two weeks be reasonable?

4          I admittedly don't know what the schedule is in this

5   matter, not being a party.  So --

6              THE COURT:  That's -- that's fine.  Two weeks is fine.

7   So motion to be filed by Monday, August 12th.

8          How many pages do you need, Mr. Dailey, if you choose

9   to file a motion?

10             ATTORNEY DAILEY:  If we choose to file, ten?

11             THE COURT:  I'll give you ten.  I expect you'll get it

12  done in less than that.  Ten pages or less.

13             ATTORNEY DAILEY:  Yeah.

14             THE COURT:  With the plaintiffs' opposition due, how

15  much time would you need to oppose it, Ms. Grunfeld,

16  Mr. Anderson?

17             ATTORNEY ANDERSON:  No more than a week.

18             THE COURT:  Plaintiffs' opposition due on August 19th,

19  also ten pages or less.

20             (Pause.)

21             THE COURT:  And what I'll do, I will set -- if I

22  determine a hearing is appropriate, I'll set it for a hearing

23  after receiving the plaintiffs' opposition.  No reply unless I

24  direct one be filed.

25             So that should give you enough time, Mr. Dailey and

24

1  Ms. Coleman, to decide if you want to file a motion to maintain

2  the confidentiality of any of this information.  And if so,

3  which information.  And then file your motion by the 12th and

4  the plaintiffs' response by the 19th.  Ten pages or less for

5  both, exclusive of exhibits.

6          And if you choose to file the contract as an exhibit,

7  if it's a huge document, Mr. Anderson, I -- just the relevant

8  portions is fine, too; if you want to do that.

9          ATTORNEY ANDERSON:  Understood.

10          THE COURT:  All right.  Anything further we should

11  discuss this afternoon, Mr. Anderson?

12          ATTORNEY ANDERSON:  Not from us, your Honor.  Thank

13  you.

14          THE COURT:  Mr. Dailey?

15          ATTORNEY DAILEY:  No, your Honor.  Thank you.

16          THE COURT:  Ms. Coleman?

17          ATTORNEY COLEMAN:  No, your Honor.  Thank you.

18          THE COURT:  You bet.

19          Ms. Grunfeld?

20          ATTORNEY GRUNFELD:  No.  Thanks, your Honor.

21          THE COURT:  Great.  Have a good day, everyone.

22          ATTORNEY GRUNFELD:  You too.  Bye.

23          (Conclusion of proceedings.)

24                                  -0-

25

1

2                                    --oOo--

3    I certify, by signing below, that the foregoing is a correct
     stenographic transcript, to the best of my ability, of the
4    digital recording of the audio proceedings had in the
     above-entitled matter this 2nd day of August, 2024.  A
5    transcript without an original signature or conformed signature
     is not certified.  I further certify that the transcript fees
6    and format comply with those prescribed by the Court and the
     Judicial Conference of the United States.

7
             /S/ Amanda M. LeGore
8    _____

9        AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25