GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**PLAINTIFFS' OPPOSITION TO NAPHCARE, INC.'S MOTION FOR APPROVAL OF CONFIDENTIALITY**<br><br>Magistrate: Hon. David D. Leshner<br><br>Date: September 3, 2024<br>Time: 11:00 a.m.<br>Crtrm: 3A |

[4541410.7]

**INTRODUCTION**

NaphCare has not met its burden to justify its sweeping confidentiality assertions over testimony and documents related to the San Diego County Jail. Broadly, the information falls into three categories: (1) general information about how NaphCare conducts its corporate mortality reviews after deaths at the Jail, such as questions asked to collect pertinent information; (2) general remedial measures, such as changes to Jail practices; and (3) information specific to individual people who died at the Jail. Regarding the first two categories, NaphCare and others have already made that information public, so it cannot be "proprietary" as NaphCare contends. The information is also so generic that NaphCare's vague claims of competitive harm if the information is disclosed are speculative and not credible.

Regarding the third category, NaphCare contends that HIPAA means even the names of decedents cannot be made public—even though their names, other identifying information, and details about their deaths are already made public by the Sheriff's Department. The families of some decedents have filed lawsuits against NaphCare and the Sheriff's Department that publicly disclose details of their medical history and deaths. Any information already made public cannot be confidential. Even for decedent-specific information that is not already public, there is a strong public interest in transparency about the care that people who died did or did not receive in the Jail and what, if any, changes NaphCare and the Sheriff's Department are making after deaths.

As indicated in Plaintiffs' proposed redactions, filed herewith, the only information at issue in NaphCare's motion that should be confidential is a decedent's personal or medical information that is not material to the care leading to a person's death. For all other information, NaphCare has not met its burden to show the information must be shielded from the public.

**FACTUAL AND PROCEDURAL BACKGROUND**

In February 2022, the California State Auditor issued a public report finding

an inordinately high death rate in the jail facilities run by Defendant San Diego County Sheriff's Department, with "significant deficiencies" in the care provided by the Sheriff's Department likely contributing to those deaths.  *See* Declaration of Eric Monek Anderson ("Anderson Decl."), Ex. A at 1.  In April 2022, the Sheriff's Department contracted with NaphCare to provide certain medical and mental health services at the San Diego Jail.  Dkt. 488, Ex. B ("NaphCare Contract").[1]  Under the contract, NaphCare receives more than $50 million in public funds each year—up to more than $70 million—to provide care in the Jail.  *Id.* at 114-116 (payment schedule).  The Sheriff's Department has claimed that they contracted with NaphCare "to provide for a robust, comprehensive and integrated health care delivery system with the best interest of patients at its core."  Dkt. 153 at 6.

Under the NaphCare Contract, the County requires NaphCare to "conduct a formal mortality review process at both the site and corporate level" whenever a patient dies, which shall include "recommendations for corrective action."  NaphCare Contract at 75-76 (sections 2.3.47.5, 2.3.47.7).  The review procedure was "developed and written in compliance with NCCHC [National Commission on Correctional Healthcare] Standard J-A-09."  *Id.*  NaphCare has agreed that its review procedure, A-09, is not confidential.  Anderson Decl., ¶ 7 & Ex. D.  NaphCare's A-09 procedure similarly refers to a "Morbidity and Morality Review," which occurs at the corporate level "to ascertain compliance with corporate standard of care and to identify any deficiencies/training/policies that may have contributed to the patient death or emergency response."  *Id.* at 7.  NCCHC's website discusses the standard on which NaphCare's A-09 procedure is based, including discussing the contents of a psychological autopsy and the need for quality improvement recommendations in mortality reviews.  Anderson Decl., Ex. F.

---

[1] The contract is available to the public on the County's website at https://preprod.sandiegocounty.gov/bin/documents.document/COSDGEN/0900c9e580dc7aef.

In January 2024, Plaintiffs moved to compel production of records related to the corporate mortality reviews, which NaphCare claimed were protected by the attorney-client and work product privileges. Dkt. 488 at 11. On March 12, 2024, the Court held a public evidentiary hearing at which Justin Barkley of NaphCare's corporate office testified about the corporate mortality review process. Anderson Decl., Ex. C (Barkley Evid. Tr.). For example, Mr. Barkley testified that the Health Services Administrator death summary is "a summary of – of information related to the patient death." Barkley Evid. Tr. at 28:16-30:5. He also testified that the physician death summary contains information about the facts and circumstances of a person's death, including the "tentative cause of death." *Id.* at 30:18-31:22. He also testified about the quality improvement recommendations that can result from the mortality review. *Id.* at 24:1-14. On March 20, 2024, the transcript of Mr. Barkley's testimony became available and NaphCare did not seek any redactions despite having an opportunity to do so within seven days. Dkt. 599.

On April 23, 2024, the Court granted Plaintiffs' motion to compel production of the mortality review documents because they are not privileged. Dkt. 617. The Court discussed Mr. Barkley's testimony about the mortality review process and the contents of documents prepared for it. *Id.* at 3-4. The Court stated that the corporate mortality review committee prepares presentations on the cases, with an "identical six questions to guide the Committee's review of each in-custody death." *Id.* at 5. The Court also noted that documents prepared after the corporate review contain quality improvement recommendations. *Id.* at 11.

On June 7, 2024, Plaintiffs took the 30(b)(6) deposition of Mr. Barkley, who was designated to discuss NaphCare's mortality review process. After the deposition, NaphCare designated the entire transcript of Mr. Barkley's deposition and all exhibits as confidential under the protective order, and Plaintiffs objected to the designations. Anderson Decl., ¶¶ 5-6. After unsuccessful meet and confer efforts, the Court held an informal discovery conference on July 18, 2024, at which

1    it ordered NaphCare to prepare a chart identifying targeted redactions to the Barkley

2    transcript and exhibits and "the basis for any such designation." Dkt. 683. Plaintiffs

3    also provided their written position, as reflected in the chart attached to NaphCare's

4    motion. Dkt. 693-1. During the subsequent meet and confer process, Plaintiffs

5    proposed redactions to several exhibits, but NaphCare did not agree on the scope of

6    redactions. Anderson Decl., ¶ 8.

## ARGUMENT

8       NaphCare has not met its burden under Rule 26 to show good cause for

9    keeping confidential exhibits and testimony from Mr. Barkley's 30(b)(6) deposition,

10   including a chart compiled by Plaintiffs (Exhibit 16), two PowerPoint presentations

11   from the corporate review committee meeting (Exhibits 17, 19), two psychological

12   autopsies (Exhibits 18, 22), two "death summaries" (Exhibits 20-21), and the

13   minutes from a corporate review committee meeting (Exhibit 23). NaphCare also

14   seeks to shield 26 different excerpts from the deposition transcript.

15       Documents produced in litigation are "presumptively public." *San Jose*

16   *Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999); *accord*

17   *Estate of Serna v. Cnty. of San Diego*, No. 20-cv-2096-BAS-DDL, 2024 WL

18   3564460, at *2 (S.D. Cal. May 13, 2024). To rebut that presumption, NaphCare

19   bears the burden "for each particular document it seeks to protect, of showing that

20   specific prejudice or harm will result in no protective order is granted." *Foltz v.*

21   *State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). Thus, "broad

22   allegations of harm, unsubstantiated by specific examples or articulated reasoning,

23   do not satisfy the Rule 26(c) test." *In re Roman Catholic Archbishop of Portland in*

24   *Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (internal citation and quotations

25   omitted). NaphCare does not meet this burden. NaphCare makes the conclusory

26   argument that the way it conducts its corporate mortality reviews is proprietary,

27   without (1) offering any discussion or specific examples of harm that could result

28   from disclosure of the information, (2) citing any supporting law, or (3) even

1  initially attaching the disputed documents for the Court to assess NaphCare's

2  claims.  As Plaintiffs show below, the information NaphCare seeks to keep

3  confidential is public, generic, and not "proprietary."  Likewise, nearly all of the

4  decedent-specific information is either already public, or the public interest merits

5  de-designation with minimal redactions.

6  Even if NaphCare had made a showing of "particularized harm" for any of the

7  information at issue, the Court would still engage in a balancing test, weighing the

8  public interest in disclosure against any privacy interest.  *See In Re Roman Catholic*,

9  661 F.3d at 424 & n.5.  The public interest favors disclosure here, as the public has a

10  strong interest in knowing how NaphCare—which receives tens of millions each

11  year from the County to provide care in the jails—reviews deaths and takes action

12  (if at all) after those deaths.  To protect the privacy of third parties, Plaintiffs agree

13  that some medical information in the NaphCare documents that is not related to their

14  deaths or their care in relation to their deaths should be redacted.  *Cf. In re Roman*

15  *Catholic*, 661 F.3d at 425 (noting a court must consider redaction to protect

16  sensitive material while allowing disclosure of non-protectable information).

17  **I.    THE INFORMATION NAPHCARE CLAIMS IS "PROPRIETARY"**

18  **AND PRIVATE HAS ALREADY BEEN PUBLICLY DISCLOSED, INCLUDING BY NAPHCARE**

19  NaphCare first alleges that information about its mortality review process and

20  broad recommendations for improvement is "proprietary" or a "trade secret."  Mot.

21  at 5-6.  NaphCare provides no legal authority supporting its contention that the most

22  basic information about in-custody death review processes is a "trade secret" or

23  "proprietary."  To the contrary, applying the good cause standard, the district court

24  in *Johnson v. Coos County* rejected an argument by a jail medical contractor,

25  Wellpath, that documents[2] "prepared by Wellpath personnel for use by Wellpath"

26  were proprietary or trade secrets.  No. 6:19-cv-01883-AA, 2023 WL 3994287, at *3

27

28  _____

[2] The *Johnson* court's order does not specify the nature of the documents.

(D. Or. June 14, 2023) (unsealing documents under the good cause standard). Moreover, public documents already discuss NaphCare's mortality review process. For example, the public knows: the general contents of documents prepared for the review, Barkley Evid. Tr. at 28-35, the fact that NaphCare generates recommendations for improvement, NaphCare Contract at 76, Barkley Evid. Tr. at 24-25, and specific recommendations for improvement, *see* Anderson Decl., Ex. B at 6. The recommendation at p. 38 of Mr. Barkley's deposition and in Exhibit 18 is also an NCCHC Standard, *see* Anderson Decl., Ex. B at 6, so it cannot be proprietary. The chart attached to NaphCare's motion identifies specific sources publicly discussing the type of information NaphCare now claims is confidential. *See* Dkt. 693-1.

The *sine qua non* of information constituting a trade secret is that it is not publicly known. The prior public disclosure of this information should defeat NaphCare's motion. *See Harmon v. City of Santa Clara*, 323 F.R.D. 617, 625 (N.D. Cal. 2018) (noting that prior release of information at issue makes "privacy concerns a moot point"); *accord Serna*, 2024 WL 3564460, at *3 (finding that public availability of similar documents "weighs against a finding that particularized harm will result from de-designation"). Business information only merits protection if it provides the entity "an opportunity to obtain an advantage over competitors ***who do not know or use it***." *DNA Genotek, Inc. v. Spectrum Sols. L.L.C.*, No. 21-CV-516-RSH-DDL, 2023 WL 6373125, at *1 (S.D. Cal. Feb. 27, 2023) (emphasis added) (quoting *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972)). Where information is available to the public or set forth as an industry standard by NCCHC, competitors know the information and it cannot be "proprietary."

It also bears emphasis that NaphCare seeks to keep confidential information that is so generic and common-sense that it offers no apparent competitive advantage to anyone who knows it. For example, the Court's order discusses "six questions" that "guide the Committee's review of each in-custody death," without identifying the questions. Dkt. 617 at 5. Those questions appear in Mr. Barkley's

testimony at p. 27 and in Exhibits 17 and 19 to his deposition.  The thrust of the questions is evident from the requirements for the mortality review in the NaphCare contract and NaphCare's procedure A-09, as well as Mr. Barkley's evidentiary hearing testimony about the process.  Moreover, any medical contractor conducting a mortality review to develop recommendations for improvement would ask these generic questions.  As another example, the testimony on page 42 of the deposition simply describes a type of document that is familiar to any person.  NaphCare cannot possibly contend that the information is a "trade secret."  Thus, NaphCare's conclusory claim claims fail to meet the "particularized harm" standard.  *In re Roman Catholic*, 661 F.3d at 424.[3]

Even if NaphCare had met its burden to show a privacy interest in any of the specific excerpts, the Court would still balance the public interest in disclosure.  *Id.* at 425.  As the court in *Johnson* noted in making public the documents of a jail medical contractor, a medical contractor is "contracted to perform medical services for the County Jail" such that the "documents implicate issues important to the public."  2023 WL 3994287, at *3.  The same is true in this case.  Information on how NaphCare addresses deaths at the Jail is of critical public importance.  That public interest outweighs the speculative privacy interest alleged by NaphCare.

## II.  NAPHCARE CANNOT USE HIPAA TO SHIELD ITS DECISIONMAKING FROM PUBLIC VIEW

NaphCare has not met its burden to show that its invocation of HIPAA justifies NaphCare's sweeping confidentiality designations.  The documents and testimony in question are not medical records, but are NaphCare corporate

---

[3] NaphCare for the first time references California Evidence Code section 1157, but acknowledges it does not apply to NaphCare.  Mot. at 6.  Further, this state law code section refers to a state privilege not applicable in federal court and is a prohibition on discovery (not public disclosure), where it applies.  *See* Cal. Evid. Code § 1157(a).  NaphCare failed to object to the Court's order compelling production, despite having that right under Federal Rule of Civil Procedure 72.  Moreover, as Mr. Barkley testified publicly, the documents relate to a corporate review and not the peer reviews discussed in Section 1157.  *See* Barkley Evid. Tr. 6:1-14.

documents that include limited medical information, as well as testimony about those documents. Critically, HIPAA does not preclude disclosure pursuant to a Court order. 45 C.F.R. § 164.512(e). Here, much of the information NaphCare designated confidential is also already public, which NaphCare does not deny, and which means that disclosure is appropriate. *See Serna*, 2024 WL 3564460, at *4. For example, the information on pages 48, 49, and 57 concerns two individuals whose families have filed lawsuits against the Sheriff's Department and NaphCare related to their care at the Jail, as stated in the chart. In those complaints,[4] the families disclosed detailed information about their loved ones' mental health and medical conditions. For example, the medication discussed on pages 48-49 is taken to treat a condition discussed at length in that decedent's family's lawsuit.

In addition, the Sheriff's Department publicly announces information about each death at the Jail and maintains it on the website. *See* Anderson Decl., ¶ 10 & Ex. F; *see also Serna*, 2024 WL 3564460, at *4 (noting that the Sheriff's Department's release of information about in-custody deaths "weighs against a finding of particularized harm for releasing that same information" in the documents at issue in that case). The only objection to Exhibit 16 is "HIPAA," for example, but the exhibit includes only the names of decedents listed on the Sheriff's Department's website. Anderson Decl., ¶ 10. There is no particularized harm in releasing information already known to the public. *Cf. Harmon*, 323 F.R.D. at 625.

As to most of the decedent-specific information that is not public, the public interest in knowing about the quality of NaphCare's and the Sheriff's Department's care at the Jail in relation to deaths outweighs any potential privacy interest. Courts have recognized that "an individual's privacy rights with regard to medical records is diminished after death." *Marsh v. Cnty. of San Diego*, No. 05-CV-1568-JLS-

---

[4] Plaintiffs are not attaching the publicly-filed complaints to avoid revealing the names of decedents, information that NaphCare has currently designated confidential.

1  AJB, 2007 WL 3023478, at *3 (S.D. Cal. Oct. 15, 2007) (citing *Powell v. U.S. Dep't*

2  *of Justice*, 584 F. Supp. 1508, 1526 (N.D. Cal. 1984)).  In *Marsh*, although the

3  question was whether to order production, Judge Battaglia found that "a significant

4  public interest exists that outweighs the individual privacy rights of the three

5  deceased children and their families."  *Id.*  As here, the public interest in that case

6  was knowledge about whether "responsible officials acted negligently or otherwise

7  improperly."  *Id.*; *see also Am. C.L. Union Found. of S. Cal. v. U.S. Immigr. &*

8  *Customs. Enf't*, No. 2:22-cv-04760-SHK, 2024 WL 3370532, at *13 (C.D. Cal.

9  July 8, 2024) (ordering public release of information about decedents' medical

10 condition in ICE custody because it was "sufficiently important to the public's

11 understanding of how Defendants handle the care of sick detainees").

12      Further, the County and the Sheriff's Department make public medical

13 examiner reports of people who died in custody.[5]  In March 2023, the Sheriff's

14 Department published the medical examiner report of Lonnie Rupard, which

15 concluded that his death from negligent care was homicide.  Anderson Decl., Ex. H.

16 The 22-page medical examiner report includes details about Mr. Rupard's medical

17 history, medical records, incarceration, and the circumstances of his death, with

18 minimal redactions.  *Id.*  The report includes much more detail about Mr. Rupard's

19 medical care than any of the NaphCare documents include about the decedents at

20 issue.  NaphCare cannot show "specific prejudice or harm" from release of the

21 information in its documents, *see Foltz*, 331 F.3d at 1330, where the County makes

22 public much more extensive information about decedents.  Moreover, the public

23 interest in knowing about the quality of the care decedents received in the Jail from

24 NaphCare or the Sheriff's Department outweighs any privacy interest.  *See Am. C.L.*

25 *Union Found. of S. Cal.*, 2024 WL 3370532, at *12-13 (noting reduced privacy

26 interest after death).  Accordingly, any decedent-specific information that relates to

27

28 [5] *See* https://www.sandiegocounty.gov/content/sdc/me/copies.html.

1  that person's death and the care they received in the Jail should be publicly

2  disclosed.

3      Finally, Plaintiffs agree with redacting third-party medical information or care

4  unrelated to a person's death, as there is not a strong public interest in such

5  information.  *See In re Roman Catholic*, 661 F.3d at 425 (noting that a court must

6  "consider whether redacting portions of the discovery material will nevertheless

7  allow disclosure.").  Plaintiffs' proposed redactions are filed herewith.[6]  Anderson

8  Decl., Ex. E.  Plaintiffs also propose redacting 33:22-25 of Mr. Barkley's testimony.

9  For all other information, NaphCare has not met its burden to show particularized

10  harm from disclosure.

11                              **CONCLUSION**

12      For the foregoing reasons, Plaintiffs respectfully request that the Court deny

13  NaphCare's motion, with limited redactions as Plaintiffs propose.

14

15  DATED:  August 23, 2024        Respectfully submitted,

16                                ROSEN BIEN GALVAN & GRUNFELD LLP

17                                By:  */s/ Eric Monek Anderson*

18                                     Eric Monek Anderson

19
                                  Attorneys for Plaintiffs and the Certified Class
20                                and Subclasses

21

22

23

24

25

26

27

28  ----

[6] Upon further review of the documents, these redactions are slightly different in scope from those Plaintiffs proposed during meet and confer with NaphCare.