1                UNITED STATES DISTRICT COURT

2            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3   DARRYL DUNSMORE, ERNEST           )
    ARCHULETA, ANTHONY EDWARDS, REANNA)
4   LEVY, JOSUE LOPEZ, CHRISTOPHER    )
    NELSON, CHRISTOPHER NORWOOD, and  )
5   LAURA ZOERNER, on behalf of       )
    themselves and all others         )
6   similarly situated,               )
                                      )   No. 20-CV-0406-AJB-DDL
7            Plaintiffs,              )
                                      )
8   V.                                )   September 3, 2024
                                      )
9   SAN DIEGO COUNTY SHERIFF'S        )
    DEPARTMENT; COUNTY OF SAN DIEGO;  )
10  CORRECTIONAL HEALTHCARE PARTNERS, )
    INC.; LIBERTY HEALTHCARE, INC.;   )
11  MID-AMERICA HEALTH, INC.; LOGAN   )
    HAAK, M.D., INC.; SAN DIEGO COUNTY)
12  PROBATION DEPARTMENT, and DOES 1  )
    to 20 inclusive,                  )
13                                    )
             Defendants.              )
14  _____ )   San Diego, California

15
            TRANSCRIPT OF DIGITALLY RECORDED PROCEEDINGS
16                    (Discovery Conference)

17

18      BEFORE THE HONORABLE DAVID D. LESHNER, MAGISTRATE JUDGE

19

20

21

22

23  COURT REPORTER:        AMANDA M. LeGORE
                           RDR, CRR, CRC, FCRR, CACSR
24                         U.S. District Court
                           333 West Broadway, Suite 420
25                         San Diego, CA 92101
                           amanda_legore@casd.uscourts.gov

```
1    APPEARANCES:

2    FOR THE PLAINTIFFS:        GAY GRUNFELD
                                ERIC MONEK ANDERSON
3                               Rosen Bien Galvan & Grunfeld LLP
                                101 Mission Street, Sixth Floor
4                               San Francisco, CA  94105-1738
                                (415)433-6830
5                               ggrunfeld@rbgg.com
                                eanderson@rbgg.com
6

7    FOR THIRD PARTY
     NAPHCARE:                  NATALIE ORTIZ
8                               Manning Kass
                                225 Broadway, Suite 1200
9                               San Diego, CA 92101-5028
                                619-515-0269
10                              natalie.ortiz@manningkass.com

11

12                                   -0-

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Tuesday, September 3, 2024; 11:59 a.m.)

2

3                    P R O C E E D I N G S

4

5          THE CLERK:  Calling matter 15, 20-CV-0406, Dunsmore

6    versus State of California, et al.  For a discovery hearing.

7          THE COURT:  Good morning, Counsel.  May I have

8    appearances, beginning with plaintiffs' counsel.

9          ATTORNEY ANDERSON:  Good morning, your Honor.  Eric

10   Monek Anderson from Rosen Bien Galvan & Grunfeld for the

11   plaintiffs in the certified class and sub-classes.

12         THE COURT:  Thank you.  Good morning.

13         ATTORNEY ORTIZ:  Good morning, your Honor.  Natalie

14   Ortiz appearing for third party NaphCare.

15         THE COURT:  Okay.  Good morning.

16         Go ahead, Ms. Grunfeld.  Are you making an appearance?

17   Or are you just watching as a member of the public?

18         ATTORNEY GRUNFELD:  I'm just watching, your Honor.

19   Thank you.

20         THE COURT:  All right.  Good morning to you as well.

21         And, again --

22         ATTORNEY GRUNFELD:  Good morning.

23         THE COURT:  -- on the record, thank you all for your

24   patience this morning.

25         Before me today are two motions filed by third party

4

```
 1    NaphCare of San Diego, LLC.

 2              There is a motion for approval of the designation of

 3    materials as confidential.  That's docket number 693.  And then

 4    a motion to seal.  That is docket number 697.

 5              As an initial matter, I -- my tentative on the motion

 6    to seal is to grant that motion.  This is separate from the

 7    merits of the motion.  But based on the procedural history,

 8    where the motion was filed, and I then requested that the

 9    materials be filed or submitted to me, they were in fact filed.

10    And particularly also in light of the discussion that we're

11    going to have about redactions, I do find it appropriate to

12    grant the motion to file under seal.

13              And then, obviously, that -- we'll then have a

14    discussion regarding what should happen with respect to the

15    confidentiality designations.

16              Do you wish to be heard on that motion to seal,

17    Mr. Anderson?

18              ATTORNEY ANDERSON:  No, your Honor.

19              THE COURT:  All right.  Ms. Ortiz?

20              ATTORNEY ORTIZ:  No, your Honor.

21              THE COURT:  All right.  Then I will adopt my tentative

22    ruling and grant the motion to seal docket number 697.

23              Let's now turn to NaphCare's motion to approve its

24    confidentiality designations.

25              As a general rule, the public is permitted access to
```

1    litigation documents and information produced during discovery.

2    If a party takes steps to release documents that are subject to

3    a stipulated protective order, the party opposing disclosure

4    has the burden of establishing that there is good cause to

5    continue the protection of the discovery material.

6            As this case is postured, it is the plaintiffs who

7    wish to release documents or have the ability to release

8    documents subject to the stipulated protective order.  So the

9    burden is on NaphCare to establish that there's good cause to

10   continue the -- keeping the documents as confidential under the

11   protective order.

12           And the Ninth Circuit case -- there's several on

13   point.  One is *In Re:  Roman Catholic Archbishop of Portland in*

14   *Oregon*, 661 F.3d 417, at 424.

15           So what I need to do is first determine if NaphCare

16   has shown a particularized harm will result from disclosure of

17   information to the public.  If such harm will result from

18   disclosure of the discovery materials, I must balance the

19   public and private interests to decide whether maintaining a

20   protective order is necessary.

21           And then where both factors weigh in favor of

22   protecting the discovery material, I still must consider

23   whether redacting portions of the material will nevertheless

24   allow for disclosure.

25           With those considerations in mind, I have reviewed the

1    parties' briefing.  I have also reviewed the chart that is

2    attached as Exhibit 1 to NaphCare's motion.

3            And, Ms. Ortiz, thank you very much for taking the

4    lead in creating that chart.  It's docket number 693-1,

5    specifically pages 2 through 5.

6            I am also cognizant, as NaphCare notes in its motion,

7    that it is a third party in this case.  It has produced a

8    number of documents.  And it has -- it is trying to comply with

9    its obligation as a third party pursuant to a subpoena but

10   wishes to maintain these documents under the protective order.

11           That being said, in light of the requirement that

12   NaphCare show a particularized harm that will result from

13   disclosure of information to the public, I would like to

14   proceed in two phases.

15           The first would be with respect to the deposition

16   testimony at issue, from Mr. Barkley, as the Rule 30(b)(6)

17   designee.  And then the exhibits.

18           As to the deposition testimony of Mr. Barkley -- and

19   those are the chart entries at docket number of 693-1, pages 2,

20   3, and the first three entries on page 4, I find that based on

21   the record before me, NaphCare has not shown a specific

22   prejudice or harm that would result if the testimony is

23   disclosed to the public.  This is my tentative ruling.  I'll

24   give counsel time to address it, but I want to focus your

25   arguments.

1          The information or the testimony does not disclose

2    trade secrets.  It concerns general measures that NaphCare

3    takes to investigate in-custody deaths at facilities where it

4    provides medical and mental healthcare services.

5          This information was discussed at the evidentiary

6    hearing on March 12th, 2024, and that is all in the public

7    record.  And I would also note that the names of individuals

8    who have died in the custody of the San Diego Sheriff's

9    Department are publicly available.

10          It does appear to me that there are two limited

11    instances for the testimony of Mr. Barkley where redaction

12    would be appropriate, and that would be at page 33, line 24.

13    There are specific reference to diagnoses and treatment.  As

14    well as page 57, line 17, where there is a specific reference

15    to a type of treatment a patient was receiving.

16          But other than that, I -- there has not been a showing

17    by NaphCare of particularized harm that would result from the

18    disclosure of this information.  And, again, limiting this to

19    just the testimony for starters, I would like to hear from the

20    parties on that.  I do have some separate questions about the

21    exhibits.

22          Ms. Ortiz, I realize that that ruling is largely not

23    in the manner that you requested, and I would be happy to hear

24    from you, ma'am.

25          ATTORNEY ORTIZ:  Thank you, your Honor.  I'm going to

```
1    just pull up the specific line.
2              THE COURT:  Sure.
3              And while you're looking, Mr. Anderson, let me ask you
4    this question.  Do you object to the proposed redactions that I
5    have referenced on pages 33 and 57?
6              ATTORNEY ANDERSON:  Your Honor, we don't object on
7    page 33.
8              On page 57, we do -- as we noted in the chart, there's
9    a specific person being referenced there.  And their family has
10   filed a lawsuit against the sheriff's department and NaphCare
11   about their treatment and disclosed the nature of their
12   treatment in that lawsuit.  So we think that information is
13   already public about that particular person's medical issues.
14   So, for that reason, we don't think that that information needs
15   to be redacted.
16             We do agree that -- with the limited redaction at 33
17   and 24.
18             THE COURT:  Okay.  Go ahead, Ms. Ortiz.
19             ATTORNEY ORTIZ:  Thank you, your Honor.
20             With regard to the -- the patient confidentiality
21   issue first, there are a couple of other references to specific
22   patients and parts of their records.
23             There are also references to psychological autopsies,
24   which I note are only created in the event of suicide.  So it
25   does speak to the manner of death.  And all of these things
```

1    make those references what NaphCare considers individually

2    identifiable healthcare information, which falls under that

3    HIPAA regulation.  And so we would, you know, respectfully

4    argue that the redactions should be a little bit broader, at

5    least to cover specific patient references and references

6    from -- from their records, which were part of those death

7    reviews that are being discussed.

8             In the March testimony, there was some discussion

9    about the process of the meetings and the types of information

10   that's reviewed.

11            But there isn't testimony about specific records or

12   any specific patients or treatments that they received; or, you

13   know, manner of death, or things like that.  So I would ask the

14   Court to consider broadening those redactions.

15            THE COURT:  Okay.  No, I understand that.

16            And this sort of spills into the second topic, which

17   is the -- the exhibits that are attached to Mr. Barkley's

18   deposition.  And I do have some HIPAA-specific questions for

19   you.  So why don't we go to that, and then we can circle back

20   to this.

21            I understand NaphCare's argument that it has

22   obligations under HIPAA, and it wants to be careful to comply

23   with those obligations.

24            And I understand that HIPAA governs the ability of a

25   healthcare provider, such as NaphCare, to disclose certain

1    types of protected health information.

2          My question initially, Ms. Ortiz, is does HIPAA

3    restrict the Court's ability to order disclosure?  Or do I look

4    solely to other principles, such as an individual's right to

5    privacy, when considering this issue?  Does that make sense?

6          ATTORNEY ORTIZ:  I think so.

7          THE COURT:  I -- I know HIPAA restricts you.  My

8    question is, does HIPAA restrict me?  Or is it -- do I -- am I

9    looking at a right of privacy separate and apart from HIPAA?

10          ATTORNEY ORTIZ:  I don't know that there's a specific

11    restriction on what the Court can do in HIPAA.  But there are

12    provisions that say if the organization is ordered to disclose

13    material or if they are going to do so pursuant to an

14    agreement, it should be subject to a protective order in the

15    case.

16          And so that's kind of where NaphCare has tried to

17    strike this balance.  And, you know, we're giving over the

18    information.  We're not arguing that it shouldn't be disclosed.

19          THE COURT:  Okay.

20          ATTORNEY ORTIZ:  But that it should fall under the

21    protective order.  And that's specifically spelled out, that

22    process, in the HIPAA statutes.

23          THE COURT:  I understand.

24          And that also is relevant to the discussion of whether

25    redactions are appropriate.  I know that there has been back

1   and forth between the party -- between NaphCare and the

2   plaintiffs on redactions.

3       I don't know that I understand precisely the contours

4   of NaphCare's proposed redactions.  But I understood that the

5   plaintiffs' proposed redactions are to an individual's vitals,

6   medication history, and mental health treatment history

7   generally.

8       Is that about right, Mr. Anderson?

9       ATTORNEY ANDERSON:  Yes.  That's right, your Honor.

10       The line we drew is if the information is not related

11   to a person's death or the care that they received, then

12   there's not a public interest.

13       THE COURT:  Would you also agree that an individual's

14   date of birth and Social Security number should be redacted?

15       ATTORNEY ANDERSON:  I think to the extent there's a

16   Social Security number, yes.  But the date of birth is

17   typically disclosed as part of the sheriff's department's

18   announcement of a death, and the summaries that they post on

19   their public website about the person's death -- cause of

20   death, and other information.

21       So I -- I don't think it's a necessarily material

22   information, but it is already disclosed by the sheriff's

23   department.

24       THE COURT:  I understand that the plaintiffs are --

25   agree that certain redactions about an individual's vitals, the

1   specific medication that they're taking should be redacted.

2   But do you agree that I should consider more generally a right

3   of privacy for the individual's -- the decedents' -- and their

4   families, who -- whose records are at issue in this case?

5           And, if so, how should I consider that?

6           ATTORNEY ANDERSON:  Yes, your Honor.

7           I think it's necessarily a part of the good cause

8   standard.  We -- so HIPAA does expressly allow the Court to

9   disclose this information, or to order disclosure.

10          So NaphCare, under 45 CFR 164512(E), and then (i),

11  they can disclose this information in response to an order of a

12  court or administrative tribunal, provided that the covered

13  entity discloses only the protected health information

14  expressly authorized by such order.

15          So HIPAA is not a bar.  And I think the other cases we

16  cited demonstrate that.  But I -- I think the line we've drawn

17  is there -- we certainly understand there is a privacy interest

18  in some of this protected health information.  But the public

19  interest is very strong in learning about that information in

20  connection with a person's death in San Diego County's jails

21  and in connection with the care that they received; what

22  NaphCare and the sheriff's are or are not doing to address

23  those.

24          So that's where we've drawn the line, is where the

25  public interest is strong.  We certainly concede that there is

1    a privacy interest, although it is minimized once a person

2    dies.  So that's -- our line is based on where the public

3    interest lies.

4         THE COURT:  I understand.

5         Turning to Exhibit 16, which is page -- again, page --

6    ECF page 80 of docket number 698, that is sealed.  I -- I

7    should say this is, I believe, deposition Exhibit 16.  That

8    contains the -- each of the individuals for whom NaphCare

9    was -- or conducted death reviews for in-custody deaths.

10        Is that correct, Mr. Anderson?

11        ATTORNEY ANDERSON:  Yes.  This -- this is a document

12   that plaintiffs created for the deposition, based on the

13   underlying documents.

14        THE COURT:  With -- and then Exhibits 17 through 23

15   include information specific to individuals who are also listed

16   in Exhibit 16.  Is that right?

17        ATTORNEY ANDERSON:  That's correct.

18        THE COURT:  There is evidence before me that the San

19   Diego sheriff's office releases information related to

20   in-custody deaths.

21        Are you able to tell me, Mr. Anderson, whether the San

22   Diego sheriff's office has released information regarding the

23   deaths, including the cause of deaths, for the individuals who

24   are at issue in Exhibits 17 through 23?

25        That would be a factor --

1          ATTORNEY ANDERSON:  Yeah.

2          THE COURT:  -- in evaluating the privacy rights, I

3     believe.

4          ATTORNEY ANDERSON:  Certainly with respect to 17

5     through 22.  The -- the -- concerns two different individuals.

6          And on the sheriff's department public website, they

7     post summaries of the Critical Incident Review Board meeting

8     about a death.  And in that, they disclose the -- the name of

9     the person and the cause of death.  And, more specifically, the

10    nature of the death.  So even the manner of suicide in these

11    particular tragic cases.

12         For Exhibit 23, I am not sure, your Honor.  Some of

13    those deaths are more recent.  So they may not have had a

14    Critical Incident Review Board meeting yet.

15         But I don't believe that Exhibit 23 refers to the

16    manner of death.  And it would -- so all of the information in

17    Exhibit 23 -- from my understanding -- would already have been

18    made public by the sheriff's department, about those particular

19    decedents.

20         THE COURT:  So -- right.  So Exhibits -- for Exhibits

21    17 through 22, those two individuals, their identities have

22    been publicly disclosed as individuals who died in the custody

23    of the sheriff's office.  Is that right?

24         ATTORNEY ANDERSON:  Yes.  In addition, also, their

25    cause of death and manner.  So --

15

```
 1              THE COURT:  With that in mind, I think for the record
 2    it makes sense to refer to these individuals -- I mean, it's
 3    all out there in the public record.  It's Mr. Ornejas and
 4    Mr. McDowell.  Is that correct?
 5              ATTORNEY ANDERSON:  That's correct.
 6              THE COURT:  And then help me -- let's turn to Exhibit
 7    23 then, which includes two individuals and their date of
 8    birth; where they were -- where they were held in custody,
 9    their booking date, and the event date, which --
10              Is that the date of the death, Mr. Anderson?
11              ATTORNEY ANDERSON:  That's my understanding, yes.
12              THE COURT:  But there's no other information about
13    them.
14              Are you able to tell me whether these two individuals'
15    deaths have been publicly disclosed by the sheriff's
16    department?  Sheriff's office?
17              ATTORNEY ANDERSON:  Yes.  Sorry, your Honor.
18              Yes, sheriff's office.  Yes, they are both listed on
19    the sheriff's department page where they include the Critical
20    Incident Review Board summaries.  Both of their names have been
21    disclosed on that page.
22              And I would also add, the sheriff's department
23    announces when a person dies.  So there's multiple ways that
24    this information is public.
25              THE COURT:  So the only information that you all are
```

1    seeking to disclose about these two individuals is their

2    name -- really, the name, the facility, and the booking date,

3    and the date of their -- I mean, the only information about

4    these individuals that is disclosed in Exhibit 23 -- I should

5    say -- is the patient's name, date of birth, the facility where

6    they were held, their booking date and the event date.  Is that

7    correct?

8               ATTORNEY ANDERSON:  Well, also, for the person on the

9    last page of Exhibit 23, there's a quality improvement plan

10   listed.  And I think this overlaps a little bit with the

11   testimony because the testimony discusses this.  And to the

12   extent this implies information about that person, that

13   particular person's family has filed a lawsuit that discloses

14   the condition that requires treatment with this particular

15   medication.

16             So we -- we'd also believe that the quality

17   improvement plan information should be made public.  Not just

18   the more demographic date information that's listed above

19   there.

20             THE COURT:  Do you -- so you're saying this

21   individual's family has filed a lawsuit.

22             Does it include -- the lawsuit publicly allege

23   medication that this individual is receiving, consistent with

24   what I see on docket number 698 -- I'm not even sure what the

25   page number -- ECF page number is.  It's NaphCare 417, 18.

1      ATTORNEY ANDERSON:  Your Honor, it does not mention

2  the specific medication.  It does mention the underlying

3  condition that is associated with this medication.  So we think

4  that -- that they've essentially put -- whatever information a

5  person would learn based on reading this medication here about

6  whatever the person's underlying condition is, that's already

7  in their complaint.

8      THE COURT:  Do you object to -- if I do grant the --

9  your request to remove this -- the confidentiality designation

10  for Exhibit 23, would you object to a redaction of the specific

11  type of medication the individual is receiving?  Which would

12  seem to me consistent with your other redactions.

13      ATTORNEY ANDERSON:  Well, in this case, your Honor, we

14  believe that the medication is, in some ways, related to the

15  person's death.  And so we think that the treatment that they

16  received -- whatever the medication is -- is sufficiently

17  material that it should be public.  Particularly -- so,

18  particularly given that they've disclosed the person's

19  condition and filed a lawsuit about their death.  That

20  indicates an interest in the public knowing about this person's

21  care.

22      THE COURT:  I see.

23      Ms. Ortiz, I -- I would be happy to hear from you.

24      My tentative ruling is to authorize -- require

25  redactions to the deposition testimony, page 33, line 24, with

18

1   respect to the specific diagnoses and treatment; and page 57,

2   line 17, with respect to treatment.

3       And then in Exhibit 23, on page 4 of that document,

4   page NaphCare 41718, to the -- in the fourth line of the

5   quality improvement plan, the specific medication being

6   received by that individual.

7       But, otherwise, to de-designate these documents under

8   the protective order, finding that there has not been a

9   particularized harm -- a showing of a particularized harm to

10  NaphCare resulting from the disclosure of this information.

11  And further finding -- upon considering the privacy rights and

12  the interests of the individuals who died in custody, as well

13  as their family members -- that that private interest does

14  weigh against disclosure, but that this case also presents

15  strong public interest in disclosure.

16      And I have reviewed *Johnson v. Coos County*, 2023

17  Westlaw 399, 4287, at star 3.  That these documents are, again,

18  possessed by a private entity.  But that entity is contracted

19  to perform medical services for San Diego County and the jail.

20  The information contained therein is relevant to public safety,

21  and the documents implicate issues important to the public.

22      So my tentative, again, is to authorize those

23  additional redactions in -- those are in addition to the

24  redactions proposed by the plaintiffs to individuals' vitals,

25  medication history, and mental health treatment history.  As

19

```
 1    well as I would require that PII -- including date of birth and
 2    Social Security number -- be redacted.
 3              That information may be disclosed elsewhere,
 4    Mr. Anderson.  If it is, then so be it.  But of -- I don't have
 5    that before me on the individual-by-individual basis.  So that
 6    would be my tentative ruling, based on the information that you
 7    all have provided.
 8              And I would be happy to hear from either of you.
 9              Ms. Ortiz, do you wish to begin?  Or would you like to
10    hear from Mr. Anderson first?
11              ATTORNEY ORTIZ:  Mr. Anderson can go ahead.
12              THE COURT:  Go ahead, Mr. Anderson.
13              ATTORNEY ANDERSON:  So just to understand your Honor,
14    so for the transcript -- those two excerpts, I think we made
15    our point on -- our argument on line 57.
16              THE COURT:  You did.  You did.  I just don't agree
17    with you.
18              ATTORNEY ANDERSON:  No.  Understood.
19              And then for the exhibits, it's the redactions we
20    proposed, plus the date of birth, plus Social Security.  And
21    then plus line 4 of the quality improvement plan for Exhibit
22    23.  Is that correct?
23              THE COURT:  That's right.
24              ATTORNEY ANDERSON:  I think we've made our arguments
25    on the points.  And I understand your Honor disagrees with us
```

1    on line 57 and on the quality improvement plan.

2         But, otherwise, we agree that there's a strong public

3    interest in the -- in the public knowing the information that's

4    in these documents, regardless of whether NaphCare is a

5    contractor or a government entity itself.

6         And we -- we don't think that they've made the

7    particularized showing of harm for any of the other provisions

8    that they're intending to keep confidential; whether under the

9    trade secrets argument or HIPAA.  Because HIPAA isn't a bar to

10   disclosure, so --

11        THE COURT:  And I should add, I don't think I

12   mentioned this explicitly in providing the basis for my ruling.

13   That with respect to the four individuals whose healthcare is

14   discussed in Exhibits 17 through 23, that the information

15   regarding those individuals' deaths in custody has been

16   publicly disclosed by the sheriff's office.

17        Did I understand you correctly in that regard,

18   Mr. Anderson?

19        ATTORNEY ANDERSON:  Yes, your Honor.

20        THE COURT:  That would be an additional consideration

21   that I am taking into account in weighing the rights of privacy

22   of their family members, including an interest in not reading

23   about the death of their loved ones in a document when they,

24   for example, did not know of the manner of death of their loved

25   one.  At least that information, I'm told, is available

1    publicly from the San Diego Sheriff's Office.

2            And so without discounting the right of privacy of

3    the -- these four individuals or their family members, I do

4    find that that public disclosure of information by the

5    sheriff's office is a relevant consideration in my analysis.

6    And in consideration with a strong public interest in these

7    matters, weighs in favor of disclosure of the -- or the ability

8    to disclose the information with the redactions I have

9    indicated.

10            Ms. Ortiz, I would be happy to hear from you, ma'am.

11            ATTORNEY ORTIZ:  Thank you, your Honor.

12            With regard to the testimony, I think we've -- we've

13    stated our position there.

14            I would like to go into the exhibits in a little bit

15    more depth because there are references in, for example, the

16    PowerPoint in Exhibit 17, on -- the pages aren't individually

17    numbered, of course.  But as an example --

18            THE COURT:  You can use the -- you can use the docket

19    number and the ECF page number.  Why don't we do that?

20            Or you can use the NaphCare Bates number.  Whatever

21    you prefer.

22            ATTORNEY ORTIZ:  Yeah, so the NaphCare Bates number,

23    41747 --

24            THE COURT:  Okay.

25            ATTORNEY ORTIZ:  -- in that Exhibit 17 PowerPoint.

1    And this is just one example.

2            But during the review, the clinical staff is going

3    through these health records.  And oftentimes in past records,

4    as well.  So here -- in the fourth little arrow -- it says,

5    "past medications," (indiscernible) officer.

6            So we're talking about, you know, past medications.

7    Similar to the one that was redacted in the one we just talked

8    about, the other exhibit.  And so there are still references in

9    here to specific information which, you know, even if these

10   become part of a lawsuit, those representatives of the

11   decedent's estates should be the ones to kind of have this

12   discussion with regard to those records.

13           There could still be a protective order agreed to in

14   those cases.  And so it's -- you know, it's a little bit of a

15   strange position because it's not -- that part really isn't a

16   particularized harm for NaphCare.  But it does go to the

17   privacy and the availability by other means of getting these

18   records.  You know, if they're going to be authorized to

19   disclose publicly, then maybe that should be done by the

20   representative of those estates.

21           And so we would argue, again, that the redactions

22   should be broader in these exhibits, to include these

23   references to the medical records and to the, you know,

24   diagnosis and the treatment and the medications of these

25   individuals.

23

1          THE COURT:  Okay.  Let me ask -- that's a fair point,

2     Ms. Ortiz, and I appreciate you raising it.

3          Let me ask you this, Mr. Anderson.  On NaphCare,

4     41747, do you agree -- well, would it be consistent with my

5     ruling to redact -- I think that's a typo -- past medications

6     and prior diagnoses?

7          ATTORNEY ANDERSON:  Yes.  And I think that they -- we

8     proposed those redactions.

9          THE COURT:  I'm looking only at the unredacted.  And

10    let me -- let me look at your --

11         ATTORNEY ANDERSON:  Yeah, our -- our redaction was to

12    delete the past medications.  And then the specific medications

13    after that, we did propose redacting those.

14         THE COURT:  Which exhibit was that to your brief,

15    Mr. Anderson?

16         I did see your redactions, but I'm looking for that

17    now.

18         ATTORNEY ANDERSON:  It's Exhibit E.  Sealed Exhibit E.

19         THE COURT:  Ah.  Got it.  Thanks.

20         Okay.  I agree.  Those -- the plaintiffs' proposed

21    redactions are appropriate, and those are to the prior

22    diagnoses and treatment, past medications, and prior conduct.

23         So, Ms. Ortiz, I believe that your concern, which I --

24    which are legitimate, are taken care of by the plaintiffs'

25    proposed redactions; which I agree are appropriate.

1          Are there any additional records that -- where you

2    don't think the plaintiffs' proposed redactions are sufficient,

3    Ms. Ortiz?

4          ATTORNEY ORTIZ:  Yes.

5          THE COURT:  Go ahead.

6          ATTORNEY ORTIZ:  The Exhibit 18, I was looking at

7    NaphCare 41777.  Because I think we're going to have a

8    similar -- I don't know if the Court wants to go exhibit, one

9    by one.  But just as a general observation, the conclusions and

10   recommendations and the quality improvement measures that come

11   out of these meetings are -- I guess we're going outside of the

12   HIPAA argument now.  So I'm not sure if -- if we're there or --

13         THE COURT:  Give me specifically what you're talking

14   about.

15         ATTORNEY ORTIZ:  So on page -- on NaphCare 41777, in

16   the Exhibit 18, I think it was, conclusions and

17   recommendations.  So this is a document that's prepared by

18   NaphCare for use in these meetings.

19         And there is some discussion in the pleadings about

20   the information being general and actually required by contract

21   and by MCCHC guidelines, which are guidelines for the industry.

22         But those don't -- those guidelines don't specify

23   necessarily the manner in which these reviews are to occur, the

24   information that is to be considered, the people who are

25   involved in those discussions, the manner in which -- the

1    quality improvement measures that are communicated to the

2    client.  Those types of things are -- in NaphCare's view -- you

3    know, akin to the recipe for their product, or the formula.

4    Right?  These are how NaphCare develops and delivers its

5    product to the client.  So our argument is that they should

6    also be subject to the protective order.

7         Again, understanding that there is some interest in

8    the plaintiff having the information, which they have.  They

9    can use it for -- you know, in furtherance of their litigation.

10   But that it shouldn't be made public because some of these

11   records are subject -- are the subject of other ongoing

12   litigation, which we've already kind of seen in some of the

13   records.  And, you know, it -- it gives NaphCare the

14   opportunity to compete in the market when it gets to develop

15   its own processes and procedures.

16        THE COURT:  I appreciate that, Ms. Ortiz.

17        I -- I'm not aware of any authority that would weigh

18   in favor of a particularized harm finding, based on documents

19   being rel -- relevant to other litigation -- to the extent that

20   NaphCare considers specific information to be if not a trade

21   secret then proprietary, I think that would be, I think, a

22   valid basis for, you know, NaphCare's request to maintain the

23   confidentiality designation.

24        But as I'm looking, for example, at NaphCare 41777,

25   I -- just honestly, Ms. Ortiz, I'm not seeing any -- it's not a

1   trade secret, I don't think, legally.  But, also, I don't

2   know -- this is just a summary of facts.

3           I mean, I -- are you talking about the second

4   paragraph?  Is that the proprietary information that you're

5   talking about?  The three lines?  The two sentences?

6           ATTORNEY ORTIZ:  It could -- I -- I could see it being

7   narrowed to that.  Our -- you know, my view is that this whole

8   process -- right? -- falls under the --

9           THE COURT:  What whole process?

10          ATTORNEY ORTIZ:  The death review process.

11          THE COURT:  But that's all disclosed publicly, isn't

12  it?

13          Even -- even if you were right -- and, respectfully, I

14  don't -- I -- I am not leaning your way.  But isn't that all

15  disclosed publicly already in the evidentiary hearing testimony

16  of Mr. Barkley?  And, frankly, in my order denying or granting

17  the plaintiffs' motion to compel?

18          ATTORNEY ORTIZ:  Well, again, those -- so there were a

19  lot of redactions in the documents that NaphCare previously

20  produced.

21          THE COURT:  Right.

22          ATTORNEY ORTIZ:  But also the testimony of

23  Mr. Barkley, in March, doesn't really go into details about the

24  people who are at the meeting and what's being considered, and

25  things like that.

1          So that's where it kind of mirrors the MCC guidelines

2     or the contract language, where it says this review must happen

3     and, generally, these are the questions that should be asked in

4     order to, you know, make sure that that is happening.  But

5     the -- the discussions in the meetings and who was present and

6     who's evaluating what is kind of getting a little bit more into

7     how the sausage is made.  And that's not publicly disclosed.

8          THE COURT:  Well, it was publicly disclosed in part in

9     Mr. Barkley's testimony.

10          But even leaving that aside, what I'm look at in

11     NaphCare 41777 doesn't deal with that.  It's a summary of the

12     events involving this particular individual.

13          And it's -- I'm not -- I'm just not seeing how that

14     type of summary information is proprietary in the sense that

15     NaphCare has met its burden to show a particularized harm.

16          So I -- I respect your argument, Ms. Ortiz.  I just

17     respectfully disagree with it.  And if there's other specific

18     portions of these exhibits you would like me to consider, I'm

19     happy to do so.

20          ATTORNEY ORTIZ:  I'm just going to take a look, real

21     quick, at the latest proposed redactions and the other

22     PowerPoint.

23          THE COURT:  Mr. Anderson, while Ms. Ortiz is reviewing

24     the documents, what I am considering is, rather than have me

25     issue an order that kicks through every proposed redaction if I

1   stick with my tentative ruling, it would be to have the

2   plaintiffs provide the redactions that they understand to be

3   consistent with my order to NaphCare within two weeks.  And

4   give NaphCare, you know, two weeks to review those and confirm

5   that those redactions are consistent with my order, and give

6   the parties an opportunity to the extent there are any disputes

7   -- I can't imagine there would be.  But if there are, you could

8   raise those with me.  I think that would probably be the most

9   efficient way to proceed.

10          Do you see this any differently?

11          ATTORNEY ANDERSON:  No, agreed, your Honor.

12          ATTORNEY ORTIZ:  I think that's fine, your Honor.

13          I think we're probably just going to run into the same

14   conclusions.

15          I would just like to clarify the Court's prior

16   comments.  So dates of birth and to the extent that their

17   Social Security numbers would be permissible for redaction?

18          THE COURT:  Will be redacted, yes.

19          And what I was discussing with Mr. Anderson,

20   Ms. Ortiz, is I don't -- there are a number of redactions that

21   are contained in Plaintiffs' Exhibit E.

22          And I want to provide NaphCare with an opportunity to

23   review the redacted materials and just make sure that you agree

24   that they are -- they are consistent with my ruling at this

25   hearing.

1          So what I will do is I am -- will issue an order

2    granting in part and denying in part the motion by NaphCare to

3    maintain the designation of materials as confidential.  I am

4    granting it in part, to the extent that there are going to be

5    redactions to those documents before their designation.

6          What I will do is direct plaintiffs' counsel to

7    provide those redactions to NaphCare within two weeks, which

8    would be September 17th.  And I would provide NaphCare with two

9    weeks to review the redactions and confirm that they are

10   consistent with my ruling.  That would be 9-31, I believe.  And

11   then if there is any disagreement, you can seek a discovery

12   conference with me.

13         I think hopefully my ruling has been clear as to what

14   should be redacted and what won't be redacted.  And if you

15   agree that the redactions proposed by the plaintiffs are

16   consistent with my ruling, Ms. Ortiz, you don't need a further

17   discovery conference with me, you can just confirm that with

18   Mr. Anderson and his colleagues.

19         ATTORNEY ORTIZ:  Understood, your Honor.

20         I think that date -- that last date would be

21   October 1st

22         THE COURT:  Oh, you did the whole "September has 30

23   days" thing on me, didn't you?

24         Okay.  That's fine.  I'm corrected.  Thank you.

25   October 1st.  I stand corrected.  Thank you.

30

1           All right.  Counsel, I appreciate your arguments.  I

2  appreciate the chart.  It was helpful, as I was reviewing all

3  of the materials.  And I appreciate the advocacy on both sides.

4           Ms. Ortiz, is there anything else that we should

5  address -- well, now, this afternoon?

6           ATTORNEY ORTIZ:  No, your Honor.  I don't believe so.

7           THE COURT:  Okay.  Mr. Anderson?

8           ATTORNEY ANDERSON:  No, your Honor.  Thank you.

9           THE COURT:  Okay.  I hope you have a good day,

10  Counsel.  Thank you for being here.

11           Thank you, Ms. Grunfeld.

12           THE CLERK:  That concludes our calendar.  We're now in

13  recess.

14           (Conclusion of proceedings at 12:40 p.m.)

15                        --oOo--

16  I certify, by signing below, that the foregoing is a correct
   stenographic transcript of the oral proceedings had in the
17  above-entitled matter this 13th day of September, 2024.  A
   transcript without an original signature or conformed signature
18  is not certified.  I further certify that the transcript fees
   and format comply with those prescribed by the Court and the
19  Judicial Conference of the United States.

20          /S/ Amanda M. LeGore

21      AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

22

23

24

25