```
                    UNITED STATES DISTRICT COURT

                FOR THE SOUTHERN DISTRICT OF CALIFORNIA

DARRYL DUNSMORE, ERNEST           )
ARCHULETA, ANTHONY EDWARDS, REANNA)
LEVY, JOSUE LOPEZ, CHRISTOPHER    )
NELSON, CHRISTOPHER NORWOOD, and  )
LAURA ZOERNER, on behalf of       )
themselves and all others         )
similarly situated,               )
                                  )  No. 20-CV-0406-AJB-DDL
           Plaintiffs,            )
                                  )
V.                                )  October 10, 2024
                                  )
SAN DIEGO COUNTY SHERIFF'S        )
DEPARTMENT; COUNTY OF SAN DIEGO;  )
CORRECTIONAL HEALTHCARE PARTNERS, )
INC.; LIBERTY HEALTHCARE, INC.;   )
MID-AMERICA HEALTH, INC.; LOGAN   )
HAAK, M.D., INC.; SAN DIEGO COUNTY)
PROBATION DEPARTMENT, and DOES 1  )
to 20 inclusive,                  )
                                  )
           Defendants.            )
_____)  San Diego, California


          TRANSCRIPT OF DIGITALLY RECORDED PROCEEDINGS
                       (Motion Hearing)


     BEFORE THE HONORABLE DAVID D. LESHNER, MAGISTRATE JUDGE




COURT REPORTER:         AMANDA M. LeGORE
                        RDR, CRR, CRC, FCRR, CACSR
                        U.S. District Court
                        333 West Broadway, Suite 420
                        San Diego, CA 92101
                        amanda_legore@casd.uscourts.gov
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:        GAY GRUNFELD
                                ERIC MONEK ANDERSON
 3                              Rosen Bien Galvan & Grunfeld LLP
                                101 Mission Street, Sixth Floor
 4                              San Francisco, CA  94105-1738
                                (415)433-6830
 5                              ggrunfeld@rbgg.com
                                eanderson@rbgg.com
 6

 7

 8   FOR DEFENDANT COUNTY OF
     SAN DIEGO:                 ELIZABETH PAPPY
 9                              Burke, Williams & Sorenson LLP
                                444 South Flower Street, Suite 2400
10                              Los Angeles, CA   91351
                                (213)236-0600
11                              epappy@bwslaw.com

12

13

14

15                              -0-

16

17

18

19

20

21

22

23

24

25
```

1                    (Thursday, October 10, 2024)

2

3                    P R O C E E D I N G S

4

5         THE COURT: All right. Good afternoon, everyone. We
6    are on the record in Dunsmore, et al., versus the San Diego
7    County Sheriff's Department, et al., Case number 20-CV-406.
8         May I have appearances from counsel, beginning with
9    plaintiffs' counsel.
10        ATTORNEY ANDERSON: Good morning, your Honor. This is
11   Eric Anderson on behalf of plaintiffs and the certified class
12   and sub-classes.
13        THE COURT: Thank you.
14        ATTORNEY GRUNFELD: Good morning, your Honor. Gay
15   Grunfeld also on behalf of plaintiffs and the certified class
16   and sub-classes.
17        THE COURT: Okay. Thank you.
18        ATTORNEY PAPPY: Elizabeth Pappy appearing on behalf
19   of defendant.
20        THE COURT: Great. Thank you.
21        And, Ms. Pappy, you cut out just at the outset. If
22   you could crank up your volume just a little bit, if that's
23   possible, or just pull the mic up a little closer. I want to
24   be sure everyone can hear you.
25        Good morning to you all. We are here for a hearing on

1   the defendants' motion to maintain the confidentiality of
2   certain documents designated pursuant to the protective order
3   in this case.
4           I have reviewed the motion, which is Docket number
5   724; and the plaintiffs' opposition, which is Docket number
6   728. And I understand the parties' positions. I appreciate
7   the time and attention that went into creating the chart of the
8   documents that is attached to the defendants' motion, with the
9   general categories of documents.
10          And what I would like to talk to counsel about
11  initially this morning is what -- what is the most effective
12  and efficient way for this motion to be resolved?
13          My understanding is that there are a large number of
14  documents that are covered by this motion but that the parties
15  believe the documents can be -- at least most of them can be
16  designated into specified categories such that my ruling on --
17  as to one category of documents would allow the parties to
18  apply that to all documents in the category. Again, for
19  example, you know, employee names. I'm just picking one
20  category.
21          And it would seem to me that would probably be the
22  most efficient way to proceed. And in making that
23  determination, it would be, I believe, particularly helpful to
24  me to have copies of each type of document so that I can
25  actually see the document. And I think that would allow me to

1  make a more informed and thoughtful ruling.

2          So I know that this is something that the parties have
3  been discussing.  And I would welcome input from Ms. Pappy and
4  Mr. Anderson and Ms. Grunfeld as to how you think we should
5  best resolve this.

6          And the other option would be for us to sit down in a
7  room with however many thousands of pages of documents and go
8  by them individually.  If that's what we need to do, that's
9  what we'll do.  But it seems to me that there -- it's worth a
10 discussion as to whether there's a more efficient way to
11 resolve this issue.

12         So let me begin with you, Ms. Pappy, if I could,
13 because this is your motion.  What are your thoughts with
14 respect to how we should make these determinations, or present
15 the information to me, so that I can make the determination
16 more accurately?

17         ATTORNEY PAPPY:  Certainly, your Honor.  I think that
18 the first thing that the parties should do is pare down the
19 chart.  Because a lot of things have been resolved, and there
20 are really -- I want to say like a handful of discrete issues;
21 and -- and those include medical records.

22         The plaintiffs, for example, are seeking to make
23 medical records not confidential.  They were produced by the
24 County.  Confidential, obviously.  And, you know, there are
25 hundreds of them.

1          And so providing you -- making that a class in -- or
2   updated section in an updated spreadsheet and providing you one
3   person's medical record may be -- you know, give you something
4   to look at to see what we're talking about.
5          There are homicide investigation files -- one homicide
6   investigation file.  There are medical records of decedents.
7   One of those -- so that we truncate the list that you have, we
8   focus in on and try to reorganize this list by Bates numbers to
9   the specific categories that we're talking about, and let you
10  rule on -- I'm -- Mr. Anderson may disagree with me.  But I'm
11  saying probably five or six discrete issues.
12         THE COURT:  All right.  Mr. Anderson, what are your
13  thoughts?
14         ATTORNEY ANDERSON:  Your Honor, first, I just want to
15  correct the record on one item.
16         We're not seeking to release medical records.  As our
17  position in the chart makes clear, we want to be able -- our
18  expert reports discuss the medical care of individuals.  And we
19  want that discussion to be available to be disclosed with
20  identifying information redacted.  It's not that we are seeking
21  to have to deal with hundreds of individual medical records.
22  It's discussions of medical information in other documents.
23         But, in general, we agree with Ms. Pappy's proposal.
24  I think the chart that we provided included areas where we
25  agreed.  But to narrow it and make it more clear for the Court

1   about what remains in dispute, we should remove anything where
2   we agree something should be de-designated or where we have
3   agreed that it should remain confidential; and provide
4   representative documents for the Court, so that the Court may
5   consider what these documents include.
6            We did do that in some cases in our opposition.  But I
7   agree that the Court needs them to make the decision.
8            We also think that -- I mean, I think a joint status
9   report of some sort, so that if we log these documents for the
10  Court, we can explain here is some areas of agreement.
11  Ms. Pappy just sent an email this morning, saying there's
12  additional agreement.
13           We need to look in the details.  But I think that
14  there is -- as Ms. Pappy is saying, I do agree that there ought
15  to be five or six categories, and we should make it clear for
16  the Court what's been resolved of it, and what remains for a
17  decision.
18           THE COURT:  Got it.
19           With respect to the -- what the plaintiffs' intent
20  would be with respect to, you know, medical records or the
21  expert reports themselves, I -- I'm fine with anybody
22  clarifying the record in any way they wish.
23           But just so we're clear, if -- if a document produced
24  in discovery pursuant to the protective order is de-designated,
25  that would mean that either party could disseminate that

 1  document as it sees fit.  And that -- the parties may or may
 2  not choose to do that.  That's not an issue before me.  But it
 3  would allow the parties to, again, disseminate the document
 4  freely or disseminate portions of an expert report that
 5  contained that information.  But I -- I want to make sure that
 6  we're clear on, you know, what the effects of the ruling would
 7  be.
 8          I am glad to hear that there is general agreement
 9  between the parties that approximately five to six categories
10  of documents really are at issue.
11          What would be those categories in your view,
12  Mr. Anderson?  I heard Ms. Pappy say medical records, homicide
13  investigation files -- and I'm not trying to hold you to this.
14  I just want to get a better understanding.
15          ATTORNEY ANDERSON:  Yeah.  So I think it would be
16  medical information, homicide decedent records.  There's some
17  disputes, I believe, over documents that discuss staffing, that
18  discuss JIMS information.  I think there's a category of
19  intelligence information that may be resolved based on
20  Ms. Pappy's email this morning.  And then there may be a few
21  miscellaneous documents remaining.
22          But the main categories are medical information,
23  employee information, employee names, decedent information, and
24  then staffing, I believe.
25          THE COURT:  Does that sound about right, Ms. Pappy?  I

1   mean, there may be other categories.  If there are, that's

2   okay.  But I just want to get a general sense.

3            ATTORNEY PAPPY:  Yeah, I just want to be -- add one

4   more, is draft policies and procedures.  And then with regard

5   to staffing levels, it's not generic staffing levels.  It's

6   staffing levels in specific areas of the jail at the present

7   time and specific locations of incarcerated people; so that the

8   public would know where specific incarcerated folks are housed.

9            THE COURT:  All right.  Do you both agree that it

10  would be possible to provide me with one or a couple of

11  examples for each category that would allow you all to apply my

12  ruling more broadly across the category?

13           Understanding that there may be some individual

14  documents that don't fit neatly within a particular category,

15  and I would need to rule on the County's motion -- or the

16  defendants' motion, I should say, separately as to those

17  documents?

18           ATTORNEY PAPPY:  The defense does.  I feel we can

19  compile it broadly.

20           ATTORNEY ANDERSON:  I think so, yes.

21           THE COURT:  All right.  Well, I do think that would be

22  helpful and provide me with a basis to make an informed ruling

23  and create a -- an appropriate record on this issue.

24           One more question.  With respect to the Critical

25  Incident Review Board reports that are one of the categories,

1    that issue is -- I understand -- pending with the Ninth Circuit
2    Court of Appeals.  And I believe I saw an entry -- or a
3    notation in the plaintiffs' response that there would not be an
4    objection to maintaining the confidentiality designation of the
5    CIRB reports, pending the Ninth Circuit's ruling on this
6    specific issue.
7             Did I read that correctly, Mr. Anderson?
8             ATTORNEY ANDERSON:  Yes, your Honor.
9             We -- we think it could also be decided because
10   whether the documents contain confidential information is
11   something the Court is well equipped to rule on.  But
12   understand there may be reason -- judicial efficiency -- to
13   wait until that decision.  So we are obviously okay with
14   whatever route the Court may choose.
15            THE COURT:  I'll give it some further thought.  But --
16   so we're on the same page, my intent with the critical incident
17   review reports would be to either defer or deny the motion --
18   or grant the motion, I should say, without prejudice to
19   revisiting the issue following the Ninth Circuit's ruling
20   whenever that comes.
21            But I do understand that there are other discrete
22   categories of documents as to which a decision needs to be
23   made, and I am certainly willing to decide as to those.
24            I agree with Mr. Anderson that it would be helpful to
25   me to have a status report from the parties with an updated

1    chart explaining that -- the agreed-upon categories of
2    documents and any individual additional documents that remain
3    at issue with the parties to provide me one or more exemplars
4    for each of those categories.
5           I -- I think everyone is, you know, in agreement on
6    the general legal principles that apply.  And that is that, as
7    a general rule, the public is permitted access to litigation
8    documents and materials that are produced in discovery.  Where
9    a party wishes to release documents that are subject to a
10   stipulated protective order, as we have in this case, the
11   burden is on the party opposing disclosure to demonstrate good
12   cause for maintaining the documents pursuant to the protective
13   order.
14          That inquiry requires me to first consider whether the
15   party seeking to maintain the designation of confidentiality
16   has shown that a particularized harm will result in releasing
17   that information to the public.
18          Second, if there is a particularized harm, then I must
19   balance the private and public interests at issue to decide
20   whether maintaining the protective order is necessary.  And,
21   third, even where both factors weigh in favor of maintaining a
22   protective order, I must consider whether redactions will allow
23   disclosure.
24          With that being said, I would very much appreciate and
25   do appreciate the parties' continued efforts to try to narrow

1    the scope of the dispute.  And it would be helpful to me to
2    have a status report with each party's position as to the
3    respective categories of documents that remain at issue.
4            I don't need you to repeat everything that's in the
5    briefing.  I am familiar with the legal standards, and I'm
6    familiar with the briefing that you've already submitted.  So
7    it can be short.  I'm not going to put a page limit on you all
8    now, but I think a joint status report would be helpful.
9            Do you think you need more than five pages per side to
10   tell me what your positions are on these five categories or six
11   categories, whatever they may be?
12           Mr. Anderson?
13           ATTORNEY ANDERSON:  No, your Honor.  I think we're
14   providing you a lot -- plenty to read already, so we can keep
15   it brief.
16           THE COURT:  Okay.  Do you a disagree, Ms. Pappy?
17           ATTORNEY PAPPY:  I do.  But can you clarify for me, is
18   this five pages in the joint status report or a separate
19   filing?
20           THE COURT:  I think a joint status report would be
21   ideal, where -- and I'll leave it to you, where somebody sends
22   their portion of the joint status report with the agreed-upon
23   categories of documents and then any discussion of additional
24   documents that don't fall within the categories.
25           And then you can file that with your agreed-upon --

1    just -- it can be a chart with the categories.  Maybe it's
2    going to be down to one page.  I don't know.  And it would help
3    me just to make sure I know the Bates numbers of documents, the
4    exemplar document that corresponds to each category.
5            I'm not trying to make additional work for you.  I'm
6    really just trying to understand what -- what exactly requires
7    a ruling by me, so that I can provide that to you.
8            What do you think in terms of timing for providing me
9    with the status report and chart?
10           And this is something where I may want to conduct a
11   further hearing.  If I do, I would like to set that hearing
12   now, so that we can not have to pick dates later.
13           So let's start -- first, how long do you think it
14   would take the parties to continue their very diligent efforts
15   to figure out exactly what's in dispute and then prepare the
16   status report and the chart that will go with it?
17           ATTORNEY PAPPY:  I think, your Honor -- I am going to
18   say that, based upon my own schedule, I have time -- I mean,
19   I'm hoping Mr. Anderson and I can meet to talk about this and
20   get our chart out sometime next week, and maybe file a joint
21   status report by -- I don't know -- Monday the 21st or 22nd.
22           THE COURT:  What are your thoughts, Mr. Anderson?
23           ATTORNEY ANDERSON:  I think we can do earlier than
24   that.  I think, you know, mostly this will involve updating the
25   chart to reflect agreements that have already been reached.

 1            There's maybe not much more meet-and-confer to occur,
 2    other than to identify the documents.  And we know what those
 3    documents are.
 4            We've given -- as we pointed out in our brief, there's
 5    a strong public interest in this case and these issues, and so
 6    we think -- at least on our end -- we can move quickly to
 7    provide you the material needed to make your decision.
 8            So we can -- I would say we could submit a joint
 9    status report next week; understanding Ms. -- Ms. Pappy may
10    want more time.  But we think next week is possible.
11            THE COURT:  I understand.  And I do appreciate both
12    sides' positions.
13            Look, I'm going to set a deadline to provide the
14    status report and chart of October 21st.
15            And then let me talk to you, now, about the further
16    hearing on the motion in case I need it.
17            (Pause, referring.)
18            THE COURT:  I could hear the matter on October 28th,
19    in the afternoon, if that would work for you all.  I could do
20    it at 2:00 p.m. on the 28th.
21            ATTORNEY PAPPY:  That -- we -- we both have expert
22    depositions that day.  But I -- I mean, if this is important
23    enough to plaintiffs, I'm fine pausing the depositions to
24    attend the hearing and then go back to the depositions.
25            THE COURT:  I could also do it over the noon hour,

```
 1   if -- during your lunch break in the deposition, if that would
 2   be helpful.
 3              What are your thoughts, Mr. Anderson?
 4              ATTORNEY ANDERSON:  Either works.  We agree we can be
 5   flexible.
 6              THE COURT:  Do you have a preference between over the
 7   lunch hour versus 2:00 p.m.?
 8              ATTORNEY PAPPY:  Lunch hour.
 9              ATTORNEY ANDERSON:  Lunch hour.  Yeah.  That's --
10              THE COURT:  Okay.  We'll set the hearing for
11   October 28th at 12:00 p.m.  It will be by Zoom, given that
12   you'll both be engaged in depositions that day.
13              So deadlines for the parties to submit their joint
14   status report and chart is October 21st, with a hearing to be
15   held via Zoom on October 28th at 12:00 p.m.
16              Is -- I appreciate the parties providing this
17   additional information.  I think it is appropriate and
18   important to facilitate a resolution of this issue.
19              Is there anything else that we should discuss this
20   morning, Mr. Anderson?
21              ATTORNEY ANDERSON:  No, your Honor.  Thank you.
22              ATTORNEY GRUNFELD:  I have one thing.
23              THE COURT:  Is it on this motion?
24              ATTORNEY GRUNFELD:  Yes.
25              THE COURT:  Go ahead, Ms. Grunfeld.
```

```
 1        ATTORNEY GRUNFELD:  I just want -- if the Court would
 2   allow clarification on how the representative documents are to
 3   be submitted; lodged or under seal?
 4        THE COURT:  Good point, Ms. Grunfeld.
 5        I think what I -- what I suggest -- what is going to
 6   be the volume of documents, do you believe?
 7        ATTORNEY ANDERSON:  Let's say 20 to 30, without having
 8   the details in front of me.  But I would say there's several
 9   types of decedent records, given there could be disputes about
10   whether documents are representative or not.  It's a somewhat
11   large volume.
12        THE COURT:  Okay.  So then here's what I would
13   request, is if you could lodge the documents, and that way --
14   and -- with a motion to seal.  And that will mean there's a
15   record of it.
16        I'm also willing to consider setting an in camera
17   review, if you think that would facilitate resolution of the
18   issue.
19        The concern I would have with an in camera review is
20   that those documents are not necessarily a part of the court
21   record, if there are further proceedings related to this issue.
22        So do you have a preference in that regard, then,
23   Ms. Grunfeld and Mr. Anderson?
24        ATTORNEY GRUNFELD:  I would recommend we file a motion
25   to seal.
```

```
 1            THE COURT:  Ms. Pappy, do you have any preference in
 2   that regard?
 3            ATTORNEY PAPPY:  Preference for use of the Court in
 4   camera.  But if they were to file a motion to seal, I think
 5   that should be respected.
 6            THE COURT:  I agree.  And so I think we'll proceed
 7   with the -- the unredacted documents at issue being lodged
 8   under seal.  They'll be lodged, and they'll remain lodged under
 9   seal.  And they will -- we'll decide what to do with that
10   lodging at the time of the hearing.
11            The documents at issue -- well, how do -- you say that
12   there are going to be proposed redactions.  And as I'm thinking
13   through this, it might be helpful to me to see what the
14   proposed redactions are.  So I know there are some categories
15   for which the plaintiffs were proposing redactions.
16            Would it be possible in the documents that are lodged
17   under seal, Mr. Anderson, to highlight the information in those
18   representative documents that the plaintiffs propose to redact,
19   just so everyone's on the same page?
20            ATTORNEY ANDERSON:  Certainly, your Honor.  Yes.
21            THE COURT:  So what I would envision happening -- just
22   for clarity of everyone -- is that the documents that are
23   lodged under seal will be unredacted in all respects with, you
24   know, yellow highlights for any redactions that are proposed.
25            Are you proposing any additional redactions,
```

1  Ms. Pappy?
2           ATTORNEY PAPPY:  Yes.
3           THE COURT:  Just figure out and give me two different
4  colors, and let me know.  That way I can know who's proposing
5  what redactions.
6           And then if I decide that redactions are appropriate,
7  the documents that are unredacted, that are lodged under seal,
8  my intention would be to leave them under seal and then for any
9  documents as to which the requested de-designate is granted,
10 the parties could then make sure that the appropriate
11 redactions are on them before there's any dissemination to the
12 public.
13          So, again, just a -- so we're on the same page, the
14 documents that are lodged under seal will probably remain that
15 way because they're unredacted.  But that's without prejudice
16 to the parties disseminating any documents as to which the
17 de-designation request is granted for the County -- the
18 defendants' motion is denied to maintain, as the case may be.
19          So I would appreciate that.  And thank you for that
20 clarification, Ms. Grunfeld.
21          Anything else that we should discuss, Ms. Grunfeld?
22          ATTORNEY GRUNFELD:  No.  Thank you, your Honor.
23          THE COURT:  Sure.  How about you, Ms. Pappy?
24          ATTORNEY PAPPY:  No.  Thank you, your Honor.  I think
25 that covers everything.

```
 1            THE COURT:  Okay.  Very well.
 2            I -- I appreciate your efforts to narrow the disputes
 3  as best you can, and I will look forward to the joint status
 4  report and chart and the documents being lodged on the 21st.
 5  And we'll set that further hearing on the 28th, at 12:00 p.m.
 6            And I hope you all have a great rest of your day.
 7            ATTORNEY PAPPY:  Great.
 8            ATTORNEY GRUNFELD:  Thank you.  You too.
 9            ATTORNEY ANDERSON:  Thank you, your Honor.
10            THE COURT:  Take care.  Goodbye.
11            (Conclusion of proceedings.)
12
13                            --oOo--
14  I certify, by signing below, that the foregoing is a correct
    stenographic transcript, to the best of my ability, of the
15  digital recording of the audio proceedings had in the
    above-entitled matter this 20th day of October, 2024.  A
16  transcript without an original signature or conformed signature
    is not certified.  I further certify that the transcript fees
17  and format comply with those prescribed by the Court and the
    Judicial Conference of the United States.
18
              /S/ Amanda M. LeGore
19            _____
20       AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290
21
22
23
24
25
```