Pages 1 - 35

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Before The Honorable David D. Leshner, Magistrate Judge

```
DARRYL DUNSMORE, et al.        )
                               )
          Plaintiffs,          )
                               )
  VS.                          )        NO. 20-CV-00406-AJB-DDL
                               )
STATE OF CALIFORNIA, et al.,   )
                               )
          Defendants.          )
_____)
```

San Diego, California
Tuesday, September 17, 2024

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
                    ROSEN BIEN GALVAN & GRUNFELD, LLP
                    101 Mission Street, Sixth Floor
                    San Francisco, California 94105
               **BY: GAY CROSTHWAIT GRUNFELD, ESQ.**

                    LAW OFFICE OF AARON J. FISCHER
                    1400 Shattuck Avenue, Suite 12, Number 344
                    Berkeley, California 94709
               **BY: AARON J. FISCHER, ESQ.**

For Defendants:
                    BURKE, WILLIAMS & SORENSEN LLP
                    60 South Market Street, Suite 1000
                    San Jose, California 95113
               **BY: ELIZABETH MARIE PAPPY, ESQ.**

Transcribed By: James C. Pence-Aviles, RMR, CRR, CSR No. 13059
                Official Court Reporter

| | |
|---|---|
| 1 | <u>**Tuesday - September 17, 2024**</u>                                    <u>**4:00 p.m.**</u> |
| 2 | <u>**P R O C E E D I N G S**</u> |
| 3 | ---oOo--- |
| 4 | **THE COURT:**  All right.  Good afternoon, everyone. |
| 5 | We are on the record in Dunsmore, et al., versus the |
| 6 | San Diego County Sheriff's Department, et al., Case |
| 7 | Number 20-CV-406. |
| 8 | May I have appearances from counsel, beginning with |
| 9 | plaintiffs' counsel? |
| 10 | **MS. GRUNFELD:**  Good afternoon, Your Honor. |
| 11 | Gay Grunfeld for plaintiffs and the certified class and |
| 12 | subclasses. |
| 13 | **MR. FISCHER:**  Aaron Fischer for plaintiffs and the |
| 14 | class and subclass. |
| 15 | **THE COURT:**  Great.  Thanks. |
| 16 | Good afternoon to you both. |
| 17 | **MS. PAPPY:**  Elizabeth Pappy on behalf of defendants. |
| 18 | **THE COURT:**  Ms. Grunfeld, didn't Mr. Freedman just |
| 19 | enter an appearance on behalf of the plaintiffs in this case? |
| 20 | **MS. GRUNFELD:**  He did, Your Honor, but he's not making |
| 21 | an appearance right now. |
| 22 | **THE COURT:**  No.  I think Ms. Pappy were [sic] asking |
| 23 | if they were associated with who the people that are on the |
| 24 | Zoom are, if they're associated with you-all in any way.  I |
| 25 | think that's all she was asking. |

```
 1        It's -- it's fine.  They don't -- any member of the
 2   public --
 3            MS. GRUNFELD:  Oh.
 4            THE COURT:  -- is welcome to join.  I think that was
 5   Ms. Pappy's question, though.
 6            MS. GRUNFELD:  No.  No.  I think that -- there's two
 7   people with "Law Clerk" written, and I thought that was who
 8   Ms. Pappy was referring to, and I -- maybe those are your law
 9   clerks, but Mr. Ho --
10            THE COURT:  They are.
11            MS. GRUNFELD:  -- and Mr. Freedman both work for the
12   plaintiffs' counsel, and I apologize for any confusion.
13            THE COURT:  No.  No.  It's fine.  It's a public
14   hearing, but I -- I just realized that may have been the
15   confusion.  So --
16            MS. GRUNFELD:  Okay.
17            THE COURT:  -- no -- no problem at all.
18        And welcome to the case, Mr. Ho and Mr. Freedman.
19        All right.  Let's move forward with the issue that was
20   raised in Ms. Pappy's email.  I do have a few questions for the
21   parties.
22        I understand that expert disclosures were made on
23   August 21st.  Does this dispute relate solely to the medical,
24   dental, and mental health experts, Ms. Pappy?
25            MS. PAPPY:  No.
```

1          **THE COURT:**  All right.  Then we're going to go back a

2     little bit further.

3          I'd like you to tell me the names of each expert who was

4     disclosed by the defendants, and I'm going to ask the

5     plaintiffs for the same.

6          **MS. PAPPY:**  Okay.  I can do that.

7          Paul Joelson, Julian Martinez, Dr. Owen Murray,

8     Dr. Penn --

9          **THE COURT:**  How do you spell that?

10         **MS. PAPPY:**  P-e-n-n.

11         **THE COURT:**  Okay.

12         **MS. PAPPY:**  -- Dr. Reinecke, Henrietta Peters,

13    Brian Withrow, -t-h-r-o-w, and Leonard Vare.

14         **THE COURT:**  I'll need that last spelling, please.

15         **MS. PAPPY:**  V-a-r-e.

16         **THE COURT:**  Okay.  Mr. Joelson is an ADA expert; is

17    that right?

18         **MS. PAPPY:**  Yes.

19         **THE COURT:**  Same for Mr. Martinez?

20         **MS. PAPPY:**  Policies and procedures, but yes.

21         **THE COURT:**  All right.  Dr. Murray is an expert in

22    what?

23         **MS. PAPPY:**  Medical, mental health, or dental.  I

24    think Dr. Reinecke is the dentist, and either Dr. Murray or

25    Dr. Penn is the mental and medical.  Ms. -- I apologize.

1    Ms. Coleman worked on those.

2              **THE COURT:**  How about Ms. Peters?

3              **MS. PAPPY:**  She is an environmentalist.

4              **THE COURT:**  Okay.  How about Mr. Withrow?

5              **MS. PAPPY:**  Mr. Withrow is -- is regarding the

6    allegation of overpolicing of minority populations.

7              **THE COURT:**  Okay.  And I'm sorry.  The last expert

8    was -- is it --

9              **MS. PAPPY:**  Leonard Vare, V as in "Victor" -a-r-e.

10             **THE COURT:**  Okay.  And what's his subject matter?

11             **MS. PAPPY:**  Excessive force in the jails.

12             **THE COURT:**  Okay.  All right.  And then to you,

13   Ms. Grunfeld, who are the plaintiffs' experts?

14             **MS. GRUNFELD:**  For the ADA, we have Syroun Sanossian

15   and her company SZS.  For alternatives to incarceration, we

16   have Christine Scott-Hayward.  Dental is Jay Shulman.  And

17   please let me know if you need me to spell any names.

18   Environmental, Debbie Graham, G-r-a-h-a-m.  Medical is

19   Jeffrey Keller.  Medical substance use is Kelly Ramsey.  Mental

20   health is Pablo Stewart.

21        Racial discrimination and disparity is Matthew Ross, whom

22   you've met.  Safety and security, we have two individuals,

23   James Austin and Gary Raney.  And for the Sixth Amendment, we

24   have Karen Snell, a total of 12 disclosed -- or retained

25   experts.

 1      And then we also disclosed Paul Parker, the former head of

 2   the CLERB, C-L-E-R-B, as a non-retained expert on

 3   accountability and jail deaths.

 4          THE COURT:  So I had 10 -- or 11 retained experts and

 5   Mr. Parker?

 6          MS. GRUNFELD:  Yes.

 7          THE COURT:  Got it.

 8      All right.  Without getting into the details, from your

 9   perspective, Ms. Grunfeld, the dispute before me today pertains

10   to which of the defendants' experts?

11          MS. GRUNFELD:  All of them, Your Honor, but most

12   particularly the medical, where we're seeking the immediate

13   relief, but we do not have complete disclosures for any of the

14   eight defense experts.

15          THE COURT:  Well, without getting into one-by-one,

16   when you say "complete disclosure," in your view, what does

17   that include, Ms. Grunfeld?

18          MS. GRUNFELD:  A list of the documents reviewed with

19   the Bates numbers, access to the documents they reviewed such

20   as the 287 new medical records that we have only a handful of,

21   and notes that they took when they toured or interviewed

22   people.

23          THE COURT:  And have you produced all of those

24   materials with respect to your experts?

25          MS. GRUNFELD:  Yes, Your Honor.

1          **THE COURT:**  You've produced all their notes?

2          **MS. GRUNFELD:**  Yes.

3          **THE COURT:**  And you produced all materials that your

4    experts have relied upon?

5          **MS. GRUNFELD:**  We produced it via indices.  You may

6    recall, Your Honor, how busy I was in August, and I had to

7    cancel the -- the settlement conference on the 19th of August.

8       Our team put together complete indices for all 12 of the

9    expert -- well, the 11 retained -- of the documents they

10   reviewed with Bates numbers and, in some situations, links to

11   the public site for the documents, but the Bates number and the

12   name so that defendants could access these documents through

13   the discovery that we have all had and been working on for well

14   over a year.

15      And so ours [sic] indices -- I would be happy to show the

16   Court -- are complete, as far as I can tell, and I have not

17   heard from defendants of anything that they can't find or don't

18   have through these indices and notes.

19      And, of course, they have the medical records that were

20   produced in discovery.  And in those reports, they are laid out

21   by the name, the Bates number, et cetera, and whether it's

22   NaphCare or San Diego Bates numbers.

23         **THE COURT:**  Ms. Grunfeld, just one more question for

24   you before I turn to Ms. Pappy.

25      You said you produced the notes and indices for your

1  experts, which contain the documents reviewed by the expert, by

2  Bates number as well as links to publicly available documents.

3      Were there any additional documents that were reviewed or

4  relied upon by any of your experts that had not been produced

5  in this litigation that you then produced in connection with

6  your expert disclosures?

7          **MS. GRUNFELD:**  No, Your Honor.

8          **THE COURT:**  All right.  All right.  Ms. Pappy, then,

9  turning to you, ma'am, have the materials that your disclosed

10 experts relied upon all been produced to the plaintiffs?

11         **MS. PAPPY:**  No.

12         **THE COURT:**  Do you plan to make that production?

13         **MS. PAPPY:**  Following, hopefully, an order from this

14 hearing, absolutely.

15         **THE COURT:**  Well, what order would you be seeking

16 that -- to make that production as opposed to making it as a

17 matter of course after the August 21st disclosure deadline?

18         **MS. PAPPY:**  That's interesting that you say that.

19     We had proposed -- proposed a matter of course, agreed to

20 a mutual date, and plaintiffs refused.  So I have been trying

21 to get them to agree to this since August 29th, and I could get

22 no traction.

23         **THE COURT:**  All right.  Well, let me ask you this:

24 Do -- do the defendants agree that documents relied upon by a

25 disclosed expert must be produced pursuant to Rule 26?

1      **MS. PAPPY:**  Absolutely.

2      And -- I mean, I would, Your Honor, at some point, like to

3   make an argument about why we're here and why I requested this

4   IDC.

5      **THE COURT:**  Oh, I understand.  And I'm not trying to

6   shortcut you, Ms. Pappy, but I do have some questions so I

7   understand the lay of the land.  And I do have one more

8   question for you, Ms. Pappy, and then I'll certainly provide

9   you that opportunity.

10     Do you have any reason to believe that there are

11  additional documents that should be disclosed by the

12  plaintiffs, pursuant to Rule 26, relating to their experts that

13  have not been disclosed?

14     **MS. PAPPY:**  Yes.

15     **THE COURT:**  All right.  And, again, I'll let you

16  explain everything to give me more context, but what do those

17  undisclosed documents consist of, in your belief?

18     **MS. PAPPY:**  Well, we're not sure.  I mean, all we've

19  gotten is notes from one doctor, you know, after this whole

20  fight started.  And they did not produce any of the medical

21  records that their experts reviewed, that they received from

22  PRA requests, and basically told us, "You go hunt through the

23  PRAs to find them."

24     **THE COURT:**  Okay.  Well, I'll be happy to hear from

25  you both.  I am inclined to order that all parties produce all

1    materials relied upon by their experts by not later than

2    September 20th, and I'll give you an opportunity to be heard on

3    that.

4         Go ahead, Ms. Pappy.  You requested this conference.  I'd

5    be happy to hear from you about your response to my tentative

6    ruling on this issue, but go ahead.

7              **MS. PAPPY:**  Yeah, and I'll shortcut it because that is

8    exactly what we wanted, was -- was an order requiring both

9    parties to produce.  And I don't just mean indices.  I mean

10   actually produce.

11        We -- we each exchanged our reports on the 21st.  On

12   August 29th, subpoenas for records were issued by plaintiffs'

13   counsel to every single one of our experts, and we were asked

14   to accept service of these subpoenas.  They weren't for

15   depositions.  They were just for records.

16        Ms. Coleman and I both responded.  Ms. Coleman said, in

17   her email that same day, "Why are we doing this by subpoena?

18   It's a waste of money.  Let's just pick a date and exchange."

19   That request was ignored.

20        On September 5th and September 11th, we had two

21   meet-and-confer conferences.  We initially were able to some --

22   come to some agreements, but then everything fell apart, and

23   defendants withdrew its agreements because we were expecting

24   mutual agreements.  We didn't get those.

25        September 12th, we got additional subpoena requests for

1    Dr. Penn, Dr. Reinecke, and Dr. Murray to -- separate and apart

2    from deposition notices, to produce those documents on

3    September 27th.

4         On September 13th, after this IDC had already been

5    requested and set by the Court, we got regular-rolled

6    deposition -- what I would expect to see, after 32 years,

7    deposition notices and requests for production of documents in

8    association with those for the experts.  They were done by

9    subpoenas.

10        And, apparently, they've been running around, incurring

11   fees, and giving experts $40 for a witness fee.  So that's not

12   proper service.  They asked me to accept service, and I said,

13   "Hold on.  Let's just have the IDC on Tuesday."  At this point,

14   we're having a lot of disputes, and I don't -- I just want the

15   judge to -- to hear this and tell us what to do.

16        They have noticed -- I will note that they have noticed

17   the depositions that are requesting records for -- for three of

18   our experts' employees, which is improper percipient witness

19   discovery, after the cutoff.

20        I will admit that we haven't done any discovery on that

21   because I just got these on Friday.  I was a little surprised,

22   never seen anybody try to depose an expert's employee, but --

23   and I will meet and confer properly with plaintiffs about that

24   and serve proper objections.

25        The -- the dispute was -- the genesis of all of this was

1  plaintiffs felt that we were supposed to give them Bates

2  numbers and give them the documents the day of the disclosure.

3  I have researched it.  I have asked my 175 colleagues.  I have

4  said, "Has anybody seen it done this way?"  I can't find a

5  thing, Your Honor.  I have seen courts issue scheduling orders,

6  just picking a day.  That is what we proposed.

7      The -- I want to point out that FRCP 45(d), protecting a

8  person subject to subpoena from harassment -- we've -- we've

9  agreed, "Let's just exchange the stuff with each other.  Let's

10 just accept service of everything."  All of those requests have

11 been ignored, and -- and it's like we want to spend as much

12 money as we possibly can fighting about this stuff.

13     So I'm actually looking for not just that order that --

14 that you've tentatively indicated that you're going to -- going

15 to grant for September 20th, but I would like -- I'd like an

16 agreement that everybody just accept their expert witness

17 subpoenas and -- and deposition notices without the need for

18 serving anybody because I'm willing to do that if I get that

19 mutual agreement.

20     And I'd request that all of the subpoenas for records be

21 withdrawn.

22     **THE COURT:**  Okay.  All right.  Do you have any

23 objection to producing all documents relied upon by each of

24 the -- I think it is eight experts that you have disclosed --

25 on or before September 20th, Ms. Pappy?

1          **MS. PAPPY:**  No objection at all.

2          **THE COURT:**  Would that include the 287 TechCare

3    records or medical records that are the subject -- or at least

4    disclosed in the email?

5          **MS. PAPPY:**  Absolutely.

6       Everything our expert has was provided to them

7    electronically.  This is a matter of, you know, have a

8    paralegal press some buttons and get it off to Counsel, same

9    for plaintiffs.

10         **THE COURT:**  Does that include any notes that were

11   taken by your expert?

12         **MS. PAPPY:**  Absolutely, billing records, notes taken,

13   everything that would normally be producible.  I think the only

14   thing that's not producible, pursuant to the Federal Rules of

15   Civil Procedure, is your emails about preparations and draft

16   reports.

17         **THE COURT:**  To the extent you have received an index

18   of documents reviewed by the plaintiffs' expert that describes

19   those documents by Bates number, is it your position that the

20   plaintiff should reproduce those documents to you, or is that

21   something -- is the index good enough for you?

22         **MS. PAPPY:**  It's not good enough.  I am then tasked

23   with having my office incur a bunch of fees to go through --

24   gather all those documents and send them to my experts when the

25   only way that the plaintiffs' experts got them was through

1   electronic transfer to their experts.

2       So there's never been an explanation given to me as to why

3   those same documents, same links cannot just be sent to my

4   experts through my office to save all of us a lot of time and

5   effort.

6           **THE COURT:**  All right.  Any additional comments you'd

7   like to make, Ms. Pappy, before I turn to Ms. Grunfeld?

8           **MS. PAPPY:**  No, Your Honor.

9           **THE COURT:**  All right.  Ms. Grunfeld, what's the

10  plaintiffs' position on the production of all materials relied

11  upon by the experts on or before September 20th?

12          **MS. GRUNFELD:**  Your Honor, we fully complied with

13  Rule 26 on August 21st, and I don't think Ms. Pappy may have

14  opened the folders that we served.  There is more than one

15  expert's notes in those folders.  We worked so hard to give

16  complete information, notes, full indices.  Some of these

17  indices are 50 pages long.

18      And, sure, we can go back through and take the ShareFiles

19  and change the folder structure so that no work product is

20  disclosed and reproduce everything that they already have in

21  discovery, but that is not really the issue right now.  The

22  issue is the delay that has been imposed through this process

23  and, quite frankly, these medical records.

24      The Court will recall how much time the parties spent

25  identifying the medical records that would be produced in this

1    litigation.  There was multiple hearings and briefings about

2    this, and the understanding was that the experts would look at

3    a shared set of documents, the medical records that were chosen

4    by defendants, and the categories.  I know the Court remembers

5    this well, and here we are.

6        Our experts -- I represent a class of indigent persons,

7    and my experts spent many hours reviewing the 200 or so

8    produced documents, produced medical records, as well as the

9    200 or so individual class member medical records, which -- we

10   copied the defendants on the requests, at their request,

11   because they said, "It's not fair for your experts to have

12   those.  We don't have those.  We want your letters asking for

13   the medical records."

14       So as of February 2024, they received our letters,

15   which -- we had to pay for those records, and we had to get

16   releases for those records.  They have all of that.  They own

17   that.  That's their medical records.

18       Also, all the ones they produced in discovery -- the Bates

19   numbers are all in the indices.  They have those documents.  So

20   this is the -- what we paid our experts to analyze, and they

21   issued their reports.  Now we have 280-something new records

22   for our experts to look at.

23       So what we need -- I have asked -- and I don't think the

24   defendants are willing to do this, but I would ask the Court to

25   order that we be allowed to look at the records in their

1    electronic format on TechCare.  I have spoken to a number of

2    people about this, and this is the quickest, most efficient way

3    to review a medical record.

4         There are tabs, and there are ways for a physician who is

5    used to medical records, which ours are, to navigate through

6    and look, "Okay.  Dr. Murray says this patient got adequate

7    care.  Let me see what I think, and I'm going to look at it in

8    the native format."

9         Now, all of these experts are subject to our protective

10   order.  We are class counsel.  And so I would ask the Court to

11   order that the 287 records that defendants' experts looked at

12   be provided to us in the native format so that our experts can

13   look at them quickly because, as the Court knows, we've moved

14   the case schedule multiple times to accommodate discovery

15   issues.

16        We spent many, many hours dealing with the medical record

17   question, and now here we are.  Our experts are working on

18   their rebuttal reports, but they don't have the key information

19   that their experts relied upon, and so I think there's a number

20   of things that need to happen.

21        We need to get access to those immediately.  And for our

22   four medical experts, we would ask the Court to give us 60

23   extra days unless we have TechCare.  Maybe we could do it

24   quicker, but if we're getting the PDFs -- and by the way,

25   Your Honor, these records are sometimes 500 to a thousand pages

1    long, each record.

2         So this is not a trivial review.  This is a big deal,

3    expensive, difficult review, 287 documents.  Our experts will

4    need 60 days, if they're going to be reading them in the PDF

5    format, to write rebuttals that are responsive to what

6    defendants' experts did.

7         So I would like access to TechCare.  I would like those

8    medical records immediately, and I would like the opportunity

9    to brief separately for the Court the -- our view that there

10   should be consequences -- financial consequences to having

11   sandbagged us in this way.

12        And I don't expect the Court to rule on or discuss that

13   today, but I would like the opportunity to set a briefing

14   schedule on that issue.

15        **THE COURT:**  I want to focus -- thank you.

16        I want to focus right now on the production of the

17   documents, and I am not making any finding about somebody --

18   anybody sandbagging anyone else.

19        I realize you feel strongly about this, Ms. Grunfeld.  I

20   am sure that that is not appreciated by Ms. Pappy, either,

21   given what she has told me.  I want to move forward right now,

22   though, given the time that we have.

23        Ms. Pappy, help me understand something.  These 287

24   records that I have heard about -- are these individual

25   documents, or are these files for incarcerated individuals?

1          **MS. PAPPY:**  Files for -- they're PDF files for

2    incarcerated individuals.

3          **THE COURT:**  270 separate PDF files for incarcerated

4    individuals?

5          **MS. GRUNFELD:**  287.

6          **MS. PAPPY:**  I don't know that it's the complete

7    medical records, but there are 280- -- -87, I think Gay just

8    said, about -- additional records that our experts asked for

9    and that we provided to them and that we offered to produce on

10   August 29th.

11         **THE COURT:**  So where -- help me understand the source

12   of these records, Ms. Pappy, in relation to the very lengthy

13   discussions that we had some time ago about the medical records

14   to be produced during fact discovery.

15         **MS. PAPPY:**  Sure.

16      Your Honor will remember the excessively overbroad

17   requests made by plaintiff for medical records, and you will

18   remember that we spent months trying to get them to pare down

19   their list, and they wanted certain medical conditions.

20      And so, after unsuccessfully meeting and conferring,

21   Your Honor ordered us to produce this many of this condition,

22   this many of this condition, this many of this condition, and

23   we did.

24      So that is an isolated issue.  I know that plaintiffs want

25   to tie them, but they're completely unrelated.  They

1   cherry-picked, essentially, from our experts' perspective, the
2   worst cases, the worst medical conditions.

3        Our experts took a more holistic and fair approach by
4   looking at a random selection of medical records that we knew
5   that the experts have, that we provided to them, that we knew
6   would be produced, in the normal course, in normal exchanges,
7   where you just give each other your experts' files.

8        So there was no sandbagging, no intent to hide.  We knew
9   that they would get them.  We had every intent of them getting
10  them.  And what Counsel sort of leaves out is we don't have any
11  of those PRA records.  We don't know what specifically their
12  experts produced because we don't have them, and what you just
13  heard again is, "Go figure it out."

14       So I don't -- absolutely, they're entitled to the medical
15  records -- medical records, no problem.  Had they called us up
16  the day after the disclosures and said, "Hey, you know, let's
17  just pick a date and exchange," I -- we offered it eight days
18  later, and here we are.

19       **THE COURT:**  What is the volume of pages of those 287
20  medical records or medical bills?

21       **MS. PAPPY:**  You know what?  I don't know.  I wasn't
22  the one producing them.  We have them all electronically, and
23  they could easily be produced.

24       I do want to mention this issue about getting access to
25  TechCare.  Our experts didn't have access to TechCare.  They

1    were given them in hard copy, and thus there is no reason for

2    plaintiffs' experts to get access to TechCare in addition to

3    the -- the massive security and privacy issues that that

4    involves.

5         And I also want to mention this threat of a motion against

6    the defendants.  It is completely nonsensical to say that, "If

7    you had given us these records before our experts would have

8    prepared these reports, we would have incurred" -- I don't

9    know -- "20- or $30,000 reviewing them and included our" --

10   "them in our report.  But now you're giving them to us late,

11   and so we want that same 20- or $30,000."

12        So I'm befuddled, honestly, by this whole thing.  I don't

13   understand it.

14        **THE COURT:**  I realize that there is an intense level

15   of frustration going on.  It is apparent.  What I would ask

16   everyone to do, for purposes of this hearing, is cut out

17   anything extraneous.

18        I don't need to hear about nonsensical or anything about

19   the other side or any accusations of anything.  I really want

20   to know the facts so that I can figure out the best way to

21   proceed going forward, and I am making that global statement

22   and don't need to dwell on it with you-all.

23        Here is what I am inclined to do.  I am inclined to direct

24   that all parties produce all materials relied upon by their

25   experts by not later than September 20th.  It is not

1  immediately clear to me why this issue was not raised before me

2  for over three weeks following the August 21st disclosure

3  deadline, but here we are on September 17th, and this needs to

4  move forward.

5      Given that the defendants' experts did not themselves have

6  access to TechCare, I am not at this point directing that the

7  plaintiffs' experts be provided to -- with the native files in

8  TechCare.  But I am told that all of the materials that were

9  reviewed by the defendants' experts will be produced by not

10  later than September 20th, and we will proceed with that.

11      I realize that that gives you approximately less than two

12  weeks to serve rebuttal expert reports.  Again, it is not at

13  all clear to me why this issue is raised with me three weeks

14  after the disclosures were served on each other at a point

15  where I could have worked with you-all to make this happen more

16  quickly, but we are where we are.

17      To the extent that the parties jointly believe that some

18  limited extension of the October 2nd deadline would be

19  appropriate, you're welcome to file a joint motion, but I am

20  not at this point making any finding of good cause to continue

21  the current expert discovery cutoff of November 1st.  So it

22  would have to be with that in mind.

23          **MS. PAPPY:**  Thank you.

24          **THE COURT:**  Do you wish to be heard, Ms. Grunfeld?

25          **MS. GRUNFELD:**  Just briefly, Your Honor.

1    **THE COURT:**  Go ahead.

2    **MS. GRUNFELD:**  We -- we -- we -- defendants' expert

3    Dr. Murray does opine on the functionality of TechCare.  So I

4    believe he was allowed some access to it, and I -- and Dr. Penn

5    may have as well.

6    And, again, given that currently we have an October 2nd

7    deadline for rebuttal reports, I am concerned that that is

8    insufficient time for our experts, particularly working with

9    PDFs, to do the kind of review that would be appropriate.

10    So I -- I understand I can now seek, through a joint

11    motion, additional time.  I only feel it is appropriate to have

12    the additional time for the four medical rebuttals.  That would

13    be Ramsey, Shulman, Stewart, and Keller.  The others, we can

14    make do, and we do not want to delay the case schedule in any

15    way.

16    I would appreciate if the Court would allow me to file a

17    motion about this issue.  I understand that -- that it might

18    have been, in some ways, resolved earlier, but I still do not

19    think that having these medical records produced, given all the

20    discussion of how they were picked in discovery -- we did not

21    cherry-pick the documents.

22    The ultimate order of the Court was defendants can produce

23    what they choose, and they did, and we reviewed those.  And we

24    also did have -- copied Ms. Pappy on every request for a

25    medical record, and those are all listed in the indices, and

1    they are all part of TechCare, which is in the exclusive

2    control of the defendants, not the plaintiffs.

3         And we do not have these 280-something records that the

4    experts -- it is not a mutual thing.  We do not have those on

5    this date, and I would like to file a motion about that.

6         **THE COURT:**  When you say "file a motion,"

7    Ms. Grunfeld, are you talking about a motion seeking allocation

8    of costs incurred with respect to your review of these

9    materials?

10        **MS. GRUNFELD:**  Yes, Your Honor, and I've researched

11   the law, and I believe it would be supported.

12        **THE COURT:**  No.  I understand that, and I'm not making

13   any finding that you're bringing it for any improper purpose.

14        But given that the motion would be directed toward

15   allocation of costs, what I am inclined to do, Ms. Grunfeld,

16   is -- I am not barring you from filing a motion, but I would

17   like to defer this issue, pending a further discovery

18   conference for me at the conclusion of expert discovery, to

19   provide the parties with an opportunity to finish the expert

20   discovery.

21        And then, again, if you believe, Ms. Grunfeld, that a

22   reallocation of costs is appropriate for any reason, I would

23   set a further discovery conference for that to understand that

24   issue and then provide you, if we can't resolve it, an

25   opportunity to move forward.

1    But I do believe that the appropriate course at this point

2    would be to set that out, at least some ways, in the future.

3    I'm not talking a matter of months.  I'm talking at the

4    conclusion of the expert discovery period.

5        **MS. GRUNFELD:**  Thank you, Your Honor.

6        **THE COURT:**  All right.  So do you wish to be heard on

7    that, just on the schedule that -- of that, Ms. Pappy, to put

8    that issue after the conclusion of expert discovery?

9        **MS. PAPPY:**  Yeah.  No, just two -- two comments on the

10   last two topics -- subjects.

11       Yes, that -- I agree.  We will be filing -- if the

12   plaintiffs file one, we will file a cross-motion for allocation

13   of costs for the withholding of the PRA records.

14       And you had talked about a joint motion to extend the

15   time.  I had actually offered to agree to 60 more days.  So I'm

16   confident we can resolve that with the -- we were never able to

17   resolve the underlying issues.  So we could never redo the

18   extension for those medical experts.

19       But a joint extension is fine with me, and I'm sure we can

20   work out an agreeable date.

21       **THE COURT:**  Just to be clear, Ms. Pappy, I am not at

22   this point finding good cause to continue the dispositive

23   motion deadline of December 9th, which is -- includes your

24   *Daubert* motions --

25       **MS. PAPPY:**  I agree.

1          **THE COURT:** -- because I do think --

2          **MS. PAPPY:** I agree.

3          **THE COURT:** -- for everyone's benefit, you need to

4     move forward, and I think -- I see everyone nodding in

5     agreement.

6          **MS. PAPPY:** Yep.

7          **THE COURT:** Look, let me ask you one more thing.

8        Ms. -- Ms. Pappy, you had requested that you be provided

9     with the actual files that were sent to the plaintiffs' experts

10    rather than the Bates numbers. What -- what I -- you have the

11    indices. So, yes, one could go through the discovery and pull

12    those into individual folders for the -- the experts.

13       But let me ask you this, Ms. Grunfeld. In the interest of

14    moving the case forward, it would be helpful for me to

15    understand if it is as easy as just giving Ms. Pappy already

16    collected sets of documents that were provided to your experts,

17    or would that require you to go through every one of those

18    files for your 11 experts and pull out information that was

19    provided to them in addition to the materials upon they relied

20    that are subject to discovery?

21       When I say "relied upon," I should have said, you know,

22    anything privileged that you -- may not be subject to

23    disclosure.

24         **MS. GRUNFELD:** It has taken extra work. We -- we

25    started the process. We're -- we're -- we're -- we -- we're in

1   the -- in the midst of it.  Yes, it's taking extra work, but if

2   the Court wants us to do it, we'll do it.

3          **THE COURT:**  Well, what I want to understand -- I mean,

4   it's not just a question of me wanting you to do it.  I want --

5   I want to understand the burden involved in all of this.  And

6   if it's really as simple as you have a file with the materials

7   that were provided to Dr. Ross or Mr. [sic] Snell -- pick one

8   of the experts -- that you could just give to Ms. Pappy, great.

9          If it's really not that simple, if it is truly something

10  that is going to present, in your view, an undue burden to the

11  plaintiffs, I want to know that because you did provide an

12  index, and that is something that could be used by somebody to

13  go through and pull the documents.  And everyone's had three

14  weeks to do it.

15         So help me understand a little bit more, Ms. Grunfeld.  If

16  you are not willing to provide the files based on burden, I

17  want to have -- understand why.

18         **MS. GRUNFELD:**  Thank you, Your Honor.

19         So we've been providing our experts with materials for

20  approximately nine months or longer, and they have gone in

21  different ways on different days, by email, by ShareFile, from

22  Relativity, from people in my office.

23         And the one constant I've said over and over is they must

24  be on an index.  What we send, you must keep track of, and it

25  must be complete and thorough, and the -- the actual name of

1   the document must be there and the actual Bates number.

2          THE COURT:  Okay.

3          MS. GRUNFELD:  And that -- so now we're going to go

4   back, and we're going to have to make sure that -- and we'll do

5   the best we can -- that every email is reviewed, the different

6   ShareFiles are combined into one document, and then we will

7   have to make sure that it's sent over in a ShareFile.

8          So for --

9          THE COURT:  I'm not ordering you to do that, though.

10  So I guess that's why, when you say you're going to have to,

11  I -- I'm trying to understand -- and I don't mean to interrupt

12  you.

13         But I'm trying to understand the burden involved because

14  if it is an undue burden, and you've provided an index, and all

15  the materials have already been induced -- been produced in

16  discovery, then that -- that may be a different matter for me.

17         So I -- that's what I'm trying to get to the bottom of.

18         MS. GRUNFELD:  Yes.

19         It's not as much work as it was to do the indices going

20  along and ending -- culminating on August 21st, when we

21  uploaded the reports, the indices, and the notes.  So it's not

22  as big a burden as that was, but there is some burden on the

23  paralegals and my colleagues here.

24         THE COURT:  I am not at this point ordering the

25  plaintiffs to reproduce documents that were relied upon by

1   their experts that have already been produced in discovery and

2   are specifically identified on the indices the plaintiffs

3   provided as having been relied upon by these specific experts.

4           **MS. PAPPY:**  Understood, Your Honor.

5        Can we -- they are required to produce the PRA records,

6   though, that they sent to their expert groups?

7           **THE COURT:**  And these are documents as to which you've

8   received an index with the links, Ms. Pappy?

9           **MS. PAPPY:**  No.  No.  These are just PRA -- they --

10  they submitted PRA requests to the County that go to the

11  County, not to me --

12          **THE COURT:**  I see.

13          **MS. PAPPY:**  -- and then they get records in response

14  to that that go to them and not me, and I don't know what of

15  those were sent to their experts.  So the only way I would know

16  what was sent to their experts is by plaintiffs sending them to

17  me.

18          **THE COURT:**  I understand.

19       When I heard Ms. Pappy to say "links to public documents,"

20  perhaps I, in my own mind, did not appreciate that public

21  documents and the PRA records are two different things.

22       Let me ask you this, Ms. Pappy.  With respect to -- well,

23  are there any Public Records Act request documents that were

24  relied upon by any of your experts, and if so, have they been

25  produced?

```
 1              MS. GRUNFELD:  I think you're --

 2              MS. PAPPY:  For mine?  You meant Ms. Grunfeld.

 3              THE COURT:  No.  That's to Ms. -- I'm sorry --

 4    Ms. Grunfeld.

 5              MS. GRUNFELD:  Yeah.

 6              THE COURT:  I apologize, Ms. Pappy.

 7              MS. PAPPY:  No.  That's all right.

 8                         (Laughter.)

 9              THE COURT:  Go ahead, Ms. Grunfeld.

10              MS. GRUNFELD:  Sure.  Thank you, Your Honor.

11         So I think we're -- we're actually talking about two

12    different things.  So I really --

13              THE COURT:  Okay.

14              MS. GRUNFELD:  -- am glad for the opportunity to

15    clarify.

16         I think Ms. Pappy means the medical records of our

17    clients.  So we walked around in these inspections, and we met

18    people, and we got releases.  And sometime -- you know, medical

19    releases.

20         And the way you get one of those is, first, the person

21    signs it.  Then you pay a certain amount of money, and you mail

22    it to the County of San Diego, and they process it, and they

23    send it to us.

24              THE COURT:  Okay.

25              MS. GRUNFELD:  And so I think that's what Ms. Pappy is
```

1    referencing.  They're not public records, of course.  They're

2    medical records.  Those we did put on the index with the

3    medical record number and the name, and those are in TechCare.

4        So -- but we can provide them, if that would be helpful.

5            THE COURT:  I think it would, Ms. Grunfeld, just to

6    make sure that you-all have precisely the same documents.  I --

7    yes.

8        So let me ask you this, Ms. Grunfeld.  That would be with

9    respect to the medical records that you obtained for your

10   clients through the releases that you just mentioned.  Is that

11   something that is doable by September 20th?

12           MS. GRUNFELD:  Yes, Your Honor.

13           THE COURT:  All right.  Ms. Pappy, does that satisfy

14   you?

15           MS. PAPPY:  Yes.

16       I didn't -- I didn't understand that -- that they were --

17   that they didn't rely on information from PRA requests.  If

18   there is something in a PRA request that their experts relied

19   on, I would, of course, expect to get that, but it doesn't

20   sound like they did.

21           MS. GRUNFELD:  Well, I would like to clarify that as

22   well.

23           THE COURT:  All right.

24           MS. GRUNFELD:  We have -- we have served many PRA

25   requests, but we have also produced those in discovery.  And if

1    they were relied upon by the experts, they're Bates-stamped and

2    referenced in the indices.

3         So -- and -- and let me also say if there is anything on

4    those indices that defendants are having any difficulty finding

5    or locating, all they have to do is email us, and we will look

6    in our file.

7              **THE COURT:**  Thank you.

8         All right.  I will issue a brief written order following

9    up on what we have discussed today.

10        Is there anything further that we should discuss on the

11   record, Ms. Grunfeld?

12             **MS. GRUNFELD:**  Not from my perspective, Your Honor.

13             **THE COURT:**  Mr. Fischer, how about you, sir?

14             **MR. FISCHER:**  No.  Thank you for the thoughtful

15   navigation through these things.  I -- it's appreciated,

16   including by the experts.

17             **THE COURT:**  Yeah.  No problem.

18        How about you, Ms. Pappy?

19             **MS. PAPPY:**  Are the plaintiffs going to withdraw these

20   records-only subpoenas?

21             **THE COURT:**  Why don't we do this.  Why -- have -- make

22   your productions on September 20th, and then -- when is the

23   first subpoena return date, Ms. Grunfeld?

24             **MS. GRUNFELD:**  Well, we haven't been able to serve

25   them because the -- the addresses provided -- we've served only

1    some of them, not all, because some of the addresses provided

2    were not valid for subpoena service.

3         **MS. PAPPY:**  The 27th.

4         **THE COURT:**  Great point.  Great point, but let's talk

5    about this, too, then.

6         Is there any objection to you -- to you-all accepting

7    service on behalf of your designated experts and figuring out a

8    deposition schedule that will allow you to complete this expert

9    discovery?

10        **MS. PAPPY:**  We've agreed on a -- on a schedule.  These

11   are three independent records-only subpoenas to Dr. Penn,

12   Dr. Reinecke, and Dr. Murray with --

13        **THE COURT:**  Right.

14        **MS. PAPPY:**  -- due dates of September 27th.  They

15   separately noticed their depositions, I think.

16        **THE COURT:**  Okay.  Well, then let's do this.  What I

17   would say -- I'm not going to direct Ms. Pappy -- or excuse

18   me -- Ms. Grunfeld -- sorry -- to withdraw anything right now.

19        But, Ms. Grunfeld, I would ask you to do this.  You're

20   going to get everything on or before Friday, and as you take a

21   look at it, what I -- what I would ask you and your team to do

22   is meet and confer with Ms. Pappy as soon as possible to decide

23   if you believe that there are materials to which you are

24   entitled that are included in the document subpoenas that you

25   did not receive.

1    And, Ms. Pappy, I would expect you to quickly jump on a

2    Zoom or a call with Ms. Grunfeld to figure that out.  And I

3    would expect that if the materials have been produced by the

4    defendants, as I am told they will be, that there won't be any

5    need for the subpoenas.

6        And I would expect that, Ms. Grunfeld, if you don't need

7    to issue a subpoena, you -- you won't.  Is that a fair

8    statement?  I'm not trying to put words in your mouth.

9        **MS. GRUNFELD:**  That's fair, Your Honor.

10        **THE COURT:**  All right.  I'm not going to direct that

11    the subpoenas be withdrawn or that they be quashed at this

12    point because I don't know what -- the documents that are being

13    sought, and I want to give you-all time to look at them.

14        **MS. GRUNFELD:**  Thank you, Your Honor.

15        **MS. PAPPY:**  Your Honor -- Your Honor, I have a

16    deadline to serve objections to them.  I don't -- I really

17    don't want to do that.

18        **THE COURT:**  Well, look --

19        **MS. PAPPY:**  Should I -- should I serve the objections?

20        **THE COURT:**  Well, can you not meet and confer and talk

21    about whether the documents that are contained in the subpoena

22    are going to be produced by you, Ms. Pappy?

23        **MS. PAPPY:**  Oh, absolutely, but I have to serve

24    objections.

25        **THE COURT:**  By -- by when?

1        **MS. GRUNFELD:**  The subpoenas have not even been served

2   because the address provided for the experts was invalid.

3        **THE COURT:**  All right.

4        **MS. GRUNFELD:**  So there is no deadline right now for

5   objections, but I'm happy to meet and confer about what the

6   subpoenas sought, which included the medical records and other

7   materials, which we are likely to get on Friday.

8        **THE COURT:**  This is going to be -- this is going to be

9   a moot issue by the time you get --

10       **MS. PAPPY:**  I hope so, as long as --

11       **THE COURT:**  Let me finish.  Let me finish.

12       **MS. PAPPY:**  Yeah.  Yeah.

13       **THE COURT:**  This issue is going to be moot.  Subpoenas

14   haven't been served.

15        And, Ms. Grunfeld, what I would ask you to do is meet and

16   confer with Ms. Pappy before you undertake any efforts to serve

17   the subpoenas.

18        I -- this is going to be moot because it is beyond my

19   imagination that there are going to be additional documents

20   that you are entitled to that are not included in what

21   Ms. Pappy is producing to you, and if there is any dispute

22   about that, you may seek an immediate discovery conference with

23   me.

24        Please know that I am starting a trial on Monday, and so

25   if you want a discovery conference, it's going to be before

```
 1   8:00 a.m. or after 5:00 p.m.

 2           MS. PAPPY:  No problem.

 3           THE COURT:  All right.

 4           MS. GRUNFELD:  Your Honor, there is one thing I would

 5   like to discuss off the record, if -- if -- if the Court has

 6   time.

 7           THE COURT:  Is it settlement-related?

 8           MS. GRUNFELD:  Yes.

 9           THE COURT:  Okay.  Sure.

10       Before we do that, Ms. Pappy, anything else we should

11   discuss on the record?

12           MS. PAPPY:  No, Your Honor.

13           THE COURT:  Okay.  Stand by.

14                   (Proceedings adjourned.)

15

16

17

18

19

20

21

22

23

24

25
```

<u>**CERTIFICATE OF TRANSCRIBER**</u>

        I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Southern District of California, of the proceedings taken on the date and time previously stated in the above matter.

        I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.


DATE:  Friday, October 25, 2024



            /S/ James C. Pence-Aviles

        James C. Pence-Aviles, RMR, CRR, CSR No. 13059
                    U.S. Court Reporter