GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:   (415) 433-6830
Facsimile:   (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
mfreedman@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile:  (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone:  (858) 677-1400
Facsimile:  (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

(*defense counsel on following page*)

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>          Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**JOINT MOTION AND ORDER RE: REMAINING ADA ISSUES AND RESOLVING THIRD CLAIM FOR RELIEF**<br><br>Judge:       Hon. Anthony J. Battaglia<br>Magistrate: Hon. David D. Leshner |

[4618672.1]

(*counsel continued from preceding page*)

Susan E. Coleman (SBN 171832)
E-mail:  scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600,
San Diego, CA  92101-8474
Tel:  619.814.5800 Fax:  619.814.6799

Elizabeth M. Pappy (SBN 157069)
E-mail:  epappy@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Ste. 1000
San Jose, CA  95113-2336
Tel:  408.606.6300 Fax:  408.606.6333

Attorneys for Defendants
COUNTY OF SAN DIEGO, SAN DIEGO
COUNTY SHERIFF'S OFFICE and SAN DIEGO COUNTY PROBATION
DEPARTMENT

# TABLE OF CONTENTS

I.    PROCEDURAL HISTORY ................................................................ 1

II.   FINDINGS ..................................................................................... 2

III.  ADA REMEDIAL ACTIONS ......................................................... 4

    A.    ADA Unit ............................................................................ 4

    B.    ADA Notices and Orientation ............................................. 6

    C.    ADA Policies, Procedures, and Training ............................ 7

    D.    Identification and Tracking of Incarcerated Persons with Disabilities ........................................................................ 8

    E.    Housing Assignments for People with Disabilities ............ 11

    F.    Facility Alterations ............................................................ 13

        1.    Las Colinas Detention and Reentry Facility ("Las Colinas") ........................................................... 14

        2.    George Bailey Detention Facility ("George Bailey") ............... 18

        3.    East Mesa Reentry Facility ......................................... 19

        4.    Vista Detention Facility ("Vista") ............................. 19

        5.    Rock Mountain Detention Facility ("Rock Mountain") ............ 20

        6.    South Bay Detention Facility ("South Bay") ........................... 20

    G.    Transition Plan .................................................................. 20

    H.    Program Access .................................................................. 21

    I.    Requests for Disability Accommodations and Grievances ............ 22

    J.    Effective Communication ................................................. 24

    K.    Assistive Devices, Health Care Appliances, and Durable Medical Equipment ....................................................... 25

    L.    Emergency Situations and Use of Force ............................ 27

    M.    People with Learning, Intellectual, and Developmental Disabilities ........................................................................ 28

    N.    Searches and Restraints ..................................................... 29

    O.    Transportation ................................................................... 30

JOINT MOTION AND ORDER RE: REMAINING ADA ISSUES AND RESOLVING
THIRD CLAIM FOR RELIEF

|  | P. | Accommodations for People with Substance Use Disorder | 31 |
|  | Q. | People with Mental Health Disabilities | 31 |
|  | R. | Quality Assurance and Auditing | 32 |
|  | S. | Non-Retaliation and Non-Interference | 32 |
| IV. | | COMPLIANCE | 33 |
|  | A. | Neutral Experts | 33 |
|  | B. | Dispute Resolution | 37 |
| V. | | MISCELLANEOUS RELIEF | 38 |
| VI. | | DURATION AND TERMINATION | 38 |
| VII. | | AMENDMENTS | 39 |
| VIII. | | JURISDICTION AND ENFORCEMENT | 40 |
|  | A. | Court Approval | 40 |
|  | B. | Court Jurisdiction | 40 |
| IX. | | ATTORNEYS' FEES AND COSTS | 41 |
| | | [PROPOSED] ORDER | 43 |

1.      Plaintiffs Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Reanna Levy, Josue Lopez, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner (collectively, "Plaintiffs"), on behalf of themselves and the Certified Disabilities Subclass, and Defendants San Diego County and San Diego County Sheriff's Office (formerly known as "Sheriff's Department") (collectively, "the County") jointly seek entry of an Order approving the parties' settlement of all remaining issues regarding Plaintiffs' Third Claim for Relief, as set forth in detail below.

## I.      PROCEDURAL HISTORY

2.      On June 21, 2023, the District Court entered the parties' Joint Motion Re Accessibility at Central Jail, Effective Communication Policy and Practice, and Provisional Class Certification ("2023 ADA Order"), Dkt. No. 355, a copy of which is attached hereto as **Exhibit A** and incorporated herein by reference.  The 2023 ADA Order resolved portions of Plaintiffs' Third Claim for Relief under the Americans with Disabilities Act, Rehabilitation Act, and California Government Code § 11135 (collectively, "ADA").

3.      On November 3, 2023, the District Court entered an Order Granting Joint Motion for Class Certification and Approval of Proposed Class Action Notice Plan, Dkt. No. 435, a copy of which is attached hereto as **Exhibit B** and incorporated herein by reference.  This Order certified a subclass of "All adults who have a disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities ('Incarcerated People with Disabilities Subclass')."  Ex. B at 10.  The Order approved Rosen Bien Galvan & Grunfeld LLP, Law Office of Aaron Fischer, and DLA Piper LLP (US) as Class Counsel.  *Id.* at 10-11.

4.      On August 25, 2023, September 1, 2023, September 29, 2023, November 6, 2023, March 6, 2024, April 19, 2024, June 3, 2024, July 3, 2024,

1

July 10, 2024, July 29, 2024, October 9, 2024, October 18, 2024, October 28, 2024, November 4, 2024, November 6, 2024, November 13, 2024, and November 20, 2024, the parties conducted settlement conferences under the supervision of the Honorable David Leshner, Magistrate Judge of the United States District Court for the Southern District of California.  The parties also conducted settlement discussions without the involvement of Judge Leshner.  As a result of these discussions, the parties have reached the following agreements regarding the remainder of the ADA claim.

## II.    FINDINGS

5.    The parties agree that Title II of the Americans with Disabilities Act, as well as the Rehabilitation Act and California Government Code § 11135, require the County to provide reasonable accommodations and equal access to jail programs, services, and activities to incarcerated people with disabilities, and prohibit the County from discriminating against incarcerated people with disabilities.

6.    On March 2, 2020, Plaintiff Darryl Dunsmore filed this case as an individual action, including claims for disability accommodations.  Dkt. 1.  On February 9, 2022, Plaintiff Dunsmore, joined by additional named plaintiffs, filed the Second Amended Complaint raising class claims.  Dkt. 81.  On May 2, 2022, Plaintiffs filed a motion for preliminary injunction seeking, among other things, changes to jail facilities and to ADA policies and procedures to remedy program access issues for people with mobility disabilities.  Dkt. 119-1 at 16.  The Court denied that motion.  Dkt. 203.  Plaintiffs filed their Third Amended Complaint, Dkt. 231, on November 18, 2022.

7.    The parties started discussing the potential for settlement of issues related to the ADA in January of 2023.  On April 25, 2023, after obtaining expedited discovery specific to ADA issues, *see* Dkt. 258, Plaintiffs filed renewed motions for preliminary injunction and provisional class certification.  Dkt. 281.  The preliminary injunction motion sought to ensure the provision of sign language

interpretation to people with hearing disabilities and to ensure the provision of safe, accessible housing to people with mobility disabilities. *Id.* at 1. The County opposed the motion while the parties continued settlement discussions. Dkt. 311. After settlement discussions with the assistance of Judge Leshner, the parties reached the 2023 ADA Order discussed above. *See* Dkt. 355. Pursuant to that Order, the County filed a proposed ADA Plan on October 5, 2023. Dkt. 409. Plaintiffs filed objections to the ADA Plan, Dkt. 416, which the Court addressed on April 24, 2024. Dkt. 620. The parties resolved their disputes regarding the ADA Plan, filed a joint motion, and the Court approved the final Amended ADA Plan on August 23, 2024. Dkt. 696.

8.    Discovery has taken place, including six on-site facility inspections by Plaintiffs' qualified ADA expert, several Rule 30(b)(6) depositions, document production, and exchange of expert reports. The parties are fully informed regarding the ADA issues raised by Plaintiffs' Third Amended Complaint.

9.    The County has taken significant and consequential steps to better serve incarcerated persons with disabilities, including development of an ADA Unit, issuance of new ADA policies, and issuance of training on those new policies, procedures, and implementation thereof, with further training continuing to occur. *See* Defendants' Amended Court-Ordered Status Report, Dkt. 667 at 2. All jail staff, including custody staff, professional staff, health care staff, and contractors, are required to follow the new policies and procedures. The ADA Unit has developed a process for interviewing incarcerated persons with certain disabilities within seven days of them being identified as having a disability, and at particular intervals thereafter.

10.    These changes represent important steps toward full compliance with the ADA, but the parties agree that additional changes to the County's policies, procedures, and implementation thereof, are necessary to ensure that incarcerated persons with disabilities are accommodated at the jail facilities and have equal

access to programs, services, and activities at the jail facilities.

11.    The Sheriff's Office and County are committed to improving the physical accessibility of their jail facilities and to ensuring meaningful access to jail facility programs, services, and activities for incarcerated people with disabilities. As part of the 2023 ADA Order, the County has made ADA modifications to San Diego Central Jail and continues to make further ADA modifications at that facility, which are scheduled to be complete in 2026.

12.    The parties agree that it is necessary to provide additional accessible housing for incarcerated people with disabilities in the jail facilities.  As part of this agreement, the County has agreed to make modifications to jail facilities to provide additional accessible housing in order to meet the disability-related needs of the incarcerated population.

## III.    ADA REMEDIAL ACTIONS

13.    The Sheriff's Office and County agree to implement additional remedial measures, as specified below in this Joint Motion and Order (henceforth, "ADA Settlement Agreement and Order"):

### A.    ADA Unit

14.    The County created an ADA Unit, effective June 2023.  The County shall develop and implement policies, procedures, and training regarding the ADA Unit to ensure its effectiveness in facilitating the jail system's compliance with ADA requirements and the provisions set forth herein.  The County shall ensure the ADA Unit has staffing, resources, and authority sufficient to carry out its duties, which include but are not limited to: coordinating and ensuring staff training related to ADA policies and requirements; ensuring provision of reasonable accommodations to incarcerated persons with identified disabilities; assisting staff, including facilities and health care staff, with identifying and accommodating incarcerated persons with disabilities; ensuring all complaints of alleged discrimination on the basis of disability in the San Diego County jail facilities that

1    are received by the County are investigated and properly resolved in a timely

2    manner; reviewing ADA-related requests and ensuring they are properly resolved in

3    a timely manner; and reviewing and responding to ADA-related grievances in a

4    timely fashion.

5          15.    The ADA Unit shall conduct face-to-face interviews of people with

6    "ADA Mobility," "ADA Hearing," or "ADA Vision" flags within seven (7) days of

7    the initial flag placement, sixty (60) days after the first ADA interview, and every

8    six (6) months thereafter.  The ADA Unit shall also conduct a face-to-face meeting

9    with an incarcerated person with an identified disability upon the incarcerated

10   person's request.  As part of the ADA Unit interview, the ADA Unit shall

11   effectively communicate to the incarcerated person information about the auxiliary

12   aids and accommodations at the jail facilities that may meet that person's needs, as

13   well as the process for requesting reasonable accommodations.  The ADA Unit shall

14   document this interview, including what was communicated and the provision of

15   effective communication.

16         16.    The ADA Unit currently consists of three deputies, one sergeant, one

17   lieutenant, and one nurse.  The Unit reports to a Captain, who reports to a

18   Commander.  Additionally, the Unit is supported by an attorney and a supervisory

19   nurse.  A designated mental health clinician supports the ADA Unit for individuals

20   with mental health or intellectual disabilities to ensure that reasonable accommoda-

21   tions and equal, meaningful program access are provided.  The custody, medical,

22   and mental health staff members within and supporting the ADA Unit shall have

23   staffing, resources, and authority necessary to ensure that incarcerated people with

24   disabilities timely receive reasonable accommodation and equal, meaningful access

25   to programs, services, and activities.  The designated ADA deputies currently

26   function as liaisons for each facility with their primary office located with the ADA

27   Unit.  Each facility shall also have at least one staff member who is designated to

28   liaison with the ADA Unit as needed along with their other assigned duties.  The

5

County shall maintain an ADA Unit and ensure that the contact information for the ADA Unit and the name and contact information for the ADA Coordinator are clearly posted and accessible in the intake area, in every jail facility housing unit, and in the public lobby of each facility.

### B.    ADA Notices and Orientation

17.    The Sheriff's Office shall ensure that people with disabilities are informed of their rights under the ADA via the ADA Notice, IP Handbook and/or ADA/Disability information brochures.  This includes the process for requesting a reasonable accommodation and how and where to file grievances.  This ADA Settlement Agreement and Order and the 2023 ADA Order shall be made available to incarcerated people through video kiosks and in hard copy upon request.

18.    The County shall ensure that any orientation materials it provides (including written and video materials) are accessible to all people with disabilities, including but not limited to individuals with vision disabilities, intellectual or cognitive disabilities, hearing disabilities, or any other disabilities that may affect communication.  The orientation materials shall include information on ADA rights; the process for requesting a reasonable accommodation; the ADA request and grievance processes, including the location of forms, how to submit them, and how to obtain assistance completing them; and information about the ADA Unit and how to contact them.  The orientation video shall be available in closed captioning and Spanish.  The video shall be provided in sign language consistent with effective communication requirements, including as set forth in the 2023 ADA Order.

19.    At all stages of the booking and orientation process, the County shall continue to provide reasonable accommodations and support to incarcerated persons with disabilities affecting communication, such as those who have developmental or intellectual disabilities, are blind, low-vision, or hard of hearing, as necessary to ensure effective communication of booking or orientation information that is being shared.  Incarcerated persons with hearing disabilities who use sign language are

covered in the 2023 ADA Order and shall receive effective communication as previously agreed to and as required by current Detentions Services Bureau Policy P.11.

### C.   ADA Policies, Procedures, and Training

20.     The County shall revise and implement systemwide Detention Services Bureau policies and procedures and facility specific-policies and procedures, and training as necessary to ensure compliance with the ADA, related federal and state disability laws, the ADA's implementing regulations, and the requirements set forth herein.

21.     The County shall revise and implement Medical Services Division policies as necessary to ensure compliance with the ADA, related federal and state disability laws, the ADA's implementing regulations, and the requirements set forth herein.

22.     The County shall ensure that all current and future jail staff receive annual ADA training appropriate to their position.  This requirement includes County and contracted staff (custody, health care, programs, administrative, etc.), who must follow the Sheriff's Office's Detention Services Bureau's and/or Medical Services Division's policies and procedures.  The ADA training may include, but is not limited to, training bulletin, in-classroom, real-time virtual, and/or interactive virtual training for staff.  Trainers will have subject matter expertise or be provided training-for-trainers instruction by the ADA Unit.  All new jail staff shall also receive ADA training appropriate to their position.  The initial training provided to staff and contractors will cover all topics addressed in section III, ADA Remedial Actions, of this ADA Settlement Agreement and Order, as relevant to their respective positions and job duties.

23.     The County shall provide draft revisions of the aforementioned policies, procedures, and trainings to the neutral expert for prompt review and comment.  Any documents, including draft revisions of the aforementioned policies,

procedures, and trainings, that either side provides to the neutral expert shall be shared with counsel for the other side as noted in paragraph 137 of this ADA Settlement Agreement and Order.

### D. Identification and Tracking of Incarcerated Persons with Disabilities

24.    The County shall develop and implement policies, procedures, and training to ensure that the jail system, including all relevant custody, health care, administrative, and program staff, identifies and tracks all incarcerated persons with disabilities who report and/or have been identified to require accommodations throughout a person's time in custody.

25.    The County shall ensure that the jail facility ADA screening process includes, at minimum, consideration of the individual's own claim to have a disability, documentation of a disability in the County's health record, staff observation that the person may have a disability, communications regarding a person's disabilities provided by the California Department of Corrections and Rehabilitation or other law enforcement agencies, and any information from a third party, such as a friend or family, about a person's disability-related conditions and needs.

26.    All incarcerated persons shall be screened by health care staff who have received the training specified in Paragraph 22 during the intake process to identify disabilities and reasonable accommodations.  If an incarcerated person is identified to have a disability that requires accommodation, health care staff will update the person's health record and collaborate with sworn staff as needed to ensure the person is appropriately accommodated through the booking and classification process.  For incarcerated persons who health care staff have preliminarily screened and identified to have a disability, health care staff shall conduct an effective ADA Functional Performance assessment during the booking process.  Health care staff shall document any housing accessibility features and accommodations required by

an incarcerated person during their time in custody in the person's health record, and that information will be reflected in the disability tracking system. Health care staff conducting the intake shall be responsible for documenting the person's disability and any accommodations the person requires in the person's health record, and that information will be reflected in the disability tracking system.

27.     The intake screening shall assess all incarcerated persons for whether they have a disability that affects communication. Health care staff shall identify the accommodations necessary to achieve effective communication with an incarcerated person determined to have a communication-related disability, and document them in the person's health record. That information will be reflected in the disability tracking system. Health care staff shall give primary consideration to the preference of the person with a disability as to the method of communication and accommodation.

28.     "Disability tracking system" refers to the manner by which ADA disability and accommodation needs information is maintained and utilized across disciplines (custody, health care, reentry services, etc.). The County shall track individuals who have disabilities that require accommodations, other than medical or mental health treatment only, using 6 medical flags: ADA Vision, ADA Hearing, ADA Medical, ADA Mobility, ADA Cognitive/Learning, and ADA Speech. If health care staff add one of these flags into a person's health record, that flag and the accompanying accommodation notes populate into other systems and reports that can be accessed without seeing the rest of the health record. The information cannot be modified outside of the health system.

29.     The County shall maintain a process for conducting disability evaluations for persons after the medical intake screening, when warranted by individual circumstances. The identification of disabilities or requests for reasonable accommodations may occur at any time during an individual's incarceration (e.g., staff observation, incarcerated person request, reported by third

parties such as family, etc.).  Health care staff shall then conduct an ADA Functional Performance assessment.  Health care staff conducting the assessment shall be responsible for documenting the person's disability and any new or modified accommodation needs in the person's health record, and that information will be reflected in the disability tracking system.  Health care staff shall notify the Jail Population Management Unit ("JPMU") immediately of any impact to the person's housing needs.

30.    During the booking and intake process, persons with mobility disabilities who require accessible accommodations, including but not limited to those who use a wheelchair in housing, shall be placed in accessible holding cells. Such persons shall be permitted to retain and have access to the assistive device(s) they need to accommodate their disability unless there is a specific safety risk (see Assistive Devices section, below).

31.    The County shall maintain an electronic disability tracking system to identify, based on an individualized assessment, all incarcerated persons with disabilities who require accommodations and the accommodations they require.

32.    The disability tracking system shall identify any barriers to communication, including but not limited to whether the person has a speech, hearing, vision, learning, intellectual, or developmental disability.  The disability tracking system shall adequately identify, based on an individualized assessment, the specific accommodations required to achieve effective communication with that person.

33.    The disability tracking system shall identify any other accommodations a person needs, including but not limited to housing, classification, transportation, health care appliances, durable medical equipment, and assistive devices.  Staff shall utilize the disability tracking system as necessary to ensure timely provision of accommodations.

### E.    Housing Assignments for People with Disabilities

34.    The County shall ensure that incarcerated persons with disabilities are properly placed in housing that is safe and appropriate for their disability, and consistent with their security classification and the requirements set forth in 28 C.F.R. § 35.152.  Such housing must also allow for an incarcerated person's ADA reasonable accommodations to be provided/accessible, e.g., auxiliary aids/services, effective communication as otherwise required by this ADA Settlement Agreement and Order or the 2023 ADA Order, and required adaptive supports.

35.    The County shall not house incarcerated persons with identified disabilities in different security classifications simply because no ADA-accessible placements are available.  The County shall not place incarcerated persons with identified disabilities in medical cells or medical dorms unless the person is currently receiving medical care or treatment that necessitates housing in a medical setting.  The parties acknowledge that full compliance with the previous sentence will not be achieved until completion of ADA-related construction.  The County shall inform the neutral expert and copy Class Counsel on the communication when ADA-related construction is occurring, what housing units are affected, and what interim accommodations are being provided.

36.    Any health-related or disability-related housing requirements shall be determined by health care staff based on individualized assessment and notated in the person's health record.  Disability-related housing accommodations shall also be notated in the disability tracking system.

37.    Incarcerated people who are assigned wheelchairs in housing shall in all cases be assigned to a lower tier and an accessible lower bunk.  The parties acknowledge that full compliance with an accessible lower bunk will not be achieved until completion of ADA-related construction.

38.    No incarcerated person with a mobility disability shall be assigned to the top of a triple bunk.  Health staff shall specifically evaluate an incarcerated

person with an identified mobility disability to determine if they require a lower bunk and/or lower tier and whether the person can access the bottom or middle bunk of a triple bunk. In addition, health staff shall specifically evaluate such persons to determine if they require access to an accessible shower, including a fold-down shower seat, shower chair, reduced shower curb or lip, high/low shower heads, and grab bars in the shower.

      a.    The County agrees that any provided shower chair will have at least 350 pounds of weight capacity and non-slip feet.

      b.    The County agrees that ADA Showers will comply with 2010 ADA Standards and California Building Code, including high/low shower heads with horizontal and vertical swivel adjustments, as long as the shower heads also meet BSCC anti-ligature requirements.

39.    Sworn staff shall document incidents where disability-related housing accessibility accommodations cannot be provided, and shall promptly notify an appropriate supervisor about the issue. The Sheriff's Office shall expeditiously move people who are inappropriately housed in an inaccessible placement to an accessible placement. The ADA Unit shall conduct a quality assurance audit process to assess whether incarcerated persons with documented reasonable accommodations are appropriately housed. The ADA Unit shall assess, as part of the audit process, whether additional training and/or policy changes are necessary.

40.    The Sheriff's Office shall conduct a check during night hard count to ensure that incarcerated persons with mobility disabilities are occupying their assigned beds in accordance with Detentions Services Bureau Policy I.43.

41.    The Sheriff's Office shall train sworn staff to address incarcerated persons with mobility disabilities who are found sleeping on the floor, and confirm that they have an assigned bed and are aware of their assignment.

42.    At each facility, during ADA-related construction at the facilities as described below, the County shall maintain interim measures to ensure that

1  incarcerated persons with mobility disabilities are accommodated to the greatest

2  extent possible during the booking and intake process, and to the greatest extent

3  possible placed in safe and accessible housing locations throughout the process.

4        **F.    Facility Alterations**

5        43.    The 2023 ADA Order requires modifications to San Diego Central Jail,

6  some of which have been completed and some of which are ongoing.

7        44.    The County agrees to the following to remedy physical plant features

8  and ensure ADA accessibility elsewhere in the jail system.  As part of these

9  modifications, the County shall ensure sufficient accessible bed space for

10 individuals in different housing classifications (e.g., mainline, protective custody,

11 and administrative separation).

12       45.    Within four years of the signing of this ADA Settlement Agreement

13 and Order, the County shall ensure that every person with a mobility disability who

14 uses a wheelchair in housing is housed in a bed that accommodates their

15 accommodation needs and that every person with a disability is housed with access

16 to any appropriate accessibility features related to their bed, toilet, and shower, as

17 individually determined by health care staff.  A person's disability-related housing

18 accommodation needs shall be documented in their health record and the disability

19 tracking system.

20       46.    Within 18 months of this Order, the County will complete a

21 comprehensive assessment of the accessible housing needs of the disability subclass

22 member population (the "Accessibility Bed Needs Assessment") in consultation

23 with both neutral experts, as appropriate.  The Accessibility Bed Needs Assessment

24 will be informed by relevant jail population data regarding incarcerated people with

25 a disability requiring housing accessibility accommodation needs and if the

26 assessment determines that additional housing or other measures are necessary, it

27 will include identification of the additional construction or other measures that will

28 occur and a reasonable timeline for implementation.  The Accessibility Bed Needs

Assessment will consider population data based on sex and classification levels, including at a minimum security level and health/mental health care housing needs. The neutral experts will review and approve the Accessibility Bed Needs Assessment.

1. **Las Colinas Detention and Reentry Facility ("Las Colinas")**

47.     Las Colinas is the primary booking and housing facility for women incarcerated in the County.  The Sheriff's Office shall make the following changes at Las Colinas to bring the facility into compliance with the 2010 ADA Standards and California Building Code ("CBC"):

48.     *Intake/Booking*:

- Incarcerated person bathroom in Pre-Screening Processing: modify bathroom to 2010 ADA Standards and CBC requirements.
- Counter in Open Booking (1 of 5 windows):  provide forward approach, including 19" deep countertop free of obstructions.
- Incarcerated person bathroom in Open Booking: remove privacy wall; add window film; lower soap dispenser to 40" AFF to push button.
- Holding Cell 1: remove current bench and add 48"x24" bench; relocate grab bar; modify toilet to 2010 ADA Standards requirements; lower soap dispenser to 40" AFF to push button.
- Sobering Cell 2: modify toilet and sink to 2010 ADA Standards requirements.  Modify threshold to comply.
- Holding Cell 5: modify grab bar to 2010 ADA Standards requirements; relocate privacy wall; lower soap dispenser to 40" AFF to push button.
- Change out/Search room shower: modify shower to 2010 ADA Standards and CBC requirements.
- Add accessible bench to change out/search room.
- Add wheelchair-accessible weighing scale.

49.     *Housing*: The County currently houses incarcerated persons in housing modules 1A-B, 3B-H, 4A-B, 5A-B, PSU, and Medical.  The County agrees to alter 3% of beds in these modules to comply with the 2010 ADA Standards.  This includes modifying the bed and the bed's associated toilet, sink, desk, drinking fountain, and shower.  The County will modify additional housing modules if

1  additional housing modules are repopulated.  The specific changes to the existing

2  housing units are as follows:

3  - 1A-B (IP workers) (dormitory)

4    - A: 48 beds

5    - B: 48 beds

6    - Will modify 3 beds (A1, A15, B15)

7  - 3A (currently unoccupied) (cells with 2 beds)

8    - 28 cells, 56 beds

9    - Will modify 2 beds (A14)

10   - Dayroom:  provide dayroom table that complies with 2010 ADA Standards and provides minimum two wheelchair-accessible seats. Provide detectable warning for drop boxes, utility sink counter, and medical (Narcan) cabinet.

11

12 - 3B (PC Level 1-5; no ADSEP or Green band) (cells with 2 beds)

13   - 28 cells, 56 beds

14   - Will modify 2 beds (B14)

15   - Dayroom:  provide dayroom table that complies with 2010 ADA Standards and provides minimum two wheelchair-accessible seats. Provide detectable warning for drop boxes, utility sink counter, and medical (Narcan) cabinet.

16

17

18 - 3C-D (mainline low level 1-3) (cells with 2 beds)

19   - C: 28 cells, 56 beds

20   - D: 28 cells, 56 beds

21   - Will modify 4 beds (C14, D14)

22   - Dayroom:  provide dayroom table that complies with 2010 ADA Standards and provides minimum two wheelchair-accessible seats. Provide detectable warning for drop boxes, utility sink counter, and medical (Narcan) cabinet.

23

24 - 3E-F (mainline high level 4) (cells with 2 beds)

25   - E: 28 cells, 56 beds

26   - F: 28 cells, 56 beds

27   - Will modify 4 beds (E14, F14)

28

15

- Dayroom:  provide dayroom table that complies with 2010 ADA Standards and provides minimum two wheelchair-accessible seats. Provide detectable warning for drop boxes, utility sink counter, and medical (Narcan) cabinet.

- 3G (mainline low level 1-3; can't roam) (cells with 2 beds)

  - 28 cells, 56 beds

  - Will modify 2 beds (G14)

  - Dayroom:  provide dayroom table that complies with 2010 ADA Standards and provides minimum two wheelchair-accessible seats. Provide detectable warning for drop boxes, utility sink counter, and medical (Narcan) cabinet.

- 3H (mainline low level 1-3; can't roam; COWS/CIWA) (cells with 2 beds)

  - 28 cells, 56 beds

  - Will modify 2 beds (H14)

  - Dayroom:  provide dayroom table that complies with 2010 ADA Standards and provides minimum two wheelchair-accessible seats. Provide detectable warning for drop boxes, utility sink counter, and medical (Narcan) cabinet.

- 4A-B (mainline high levels 4-5; can't roam) (cells with 1 bed)

  - A: 64 cells

  - B: 64 cells

  - Will modify 4 beds (A1, A30, B1, B30)

  - Dayroom (4B):  remove and replace minimum four seats for wheelchair clear floor space and knee clearance.  Provide detectable warning for drop boxes and medical (Narcan) cabinet.

- 5A (Administrative Separation) (cells with 1 bed)

  - 32 cells

  - Will modify 1 bed (A32)

  - Dayroom:  remove and replace one seat for wheelchair clear floor space and knee clearance.  Provide detectable warning for drop boxes and medical (Narcan) cabinet.

- 5B (OP Stepdown) (cells with 1 bed)

  - 32 cells

  - Will modify 1 bed (B32)

16

- Dayroom: remove one seat for wheelchair clear floor space and knee clearance. Provide detectable warning for drop boxes and medical (Narcan) cabinet.
- PSU
  - A: 11 cells, single beds
  - B: 11 cells, single beds
  - Close Watch: 2 cells with single beds, 2 cells with double beds
  - Will modify 3 beds (11, 14, 23)
  - Dayroom: remove at least three seats. Provide detectable warning for drop boxes and medical (Narcan) cabinet.
  - Video phone: remove fixed stool to comply with 2010 ADA Standards for wheelchair clear floor space and knee clearance.
- Medical
  - 3 Wards with 6 beds each (Ward 1 is EOH)
  - 10 cells with 1 bed each (1 positive pressure, 5 negative pressure)
  - Will modify 4 beds (1 bed in Ward 1, 1 bed in Ward 3, 1 positive pressure cell (Cell 1), and 1 negative pressure cell (Cell 2)

50. *Medical Clinics*:

- Clinic waiting area bathroom: modify bathroom to 2010 ADA Standards
- Clinic bathroom: modify bathroom to 2010 ADA Standards
- Add adjustable exam table to one medical exam room.

51. *Visitation*:

- Visits Search: modify privacy partitions to 86.5" from wall; modify floor slope to ¼" max slope
- Non-Contact Visit: modify 1 of the 6 non-contact visitation rooms to have a 19" deep countertop and 40" phone.

52. *Release*:

- Release bathroom: modify bathroom to 2010 ADA Standards and CBC.

53. *Classrooms*:

- At least one compliant work space in each classroom.

17

1    • Modify classroom bathroom to 2010 ADA Standards and CBC.

2    54.    The foregoing housing alterations shall occur no later than three years

3    from the signing of this ADA Settlement Agreement and Order.

4    **2.    George Bailey Detention Facility ("George Bailey")**

5    55.    George Bailey is the largest jail facility in the County by population.  It

6    houses only men and is not a booking facility.  The County houses people with

7    mobility disabilities at George Bailey, although the County does not currently house

8    any individuals who use wheelchairs in housing at George Bailey.  George Bailey is

9    currently undergoing construction to remove all triple bunks.

10    56.    The County shall make the following changes at George Bailey to

11    provide access to individuals with disabilities housed there:

12    57.    The County shall modify one holding cell to have toilet grab bars.  The

13    side grab bar will be as close to 42 inches long and 33-36 inches above the floor as

14    possible based on wall length.  The rear grab bar will be as close to 36 inches long

15    and 33-36 inches above the floor as possible based on wall length and toilet height.

16    58.    As part of the County's obligation to provide accessible housing to all

17    individuals requiring such housing, the County shall modify at least 3 dormitory

18    bathrooms (in three different dormitories) to have a toilet with grab bars and a

19    shower with grab bars.  The toilet side grab bar will be as close to 42 inches long

20    and 33-36 inches above the floor as possible based on wall length.  The toilet rear

21    grab bar will be as close to 36 inches long and 33-36 inches above the floor as

22    possible based on wall length and toilet height.  The accompanying shower for these

23    beds will have grab bars.  The shower grab bars will be as close to 16 inches long

24    and 48 inches long as possible based on wall length.  The County will provide

25    portable shower chairs in these units.

26    59.    The County will prioritize, subject to classification and security needs,

27    housing people with mobility disabilities who require lower bunk and lower tier

28    housing in the dormitory units that have been modified.

18

60.     Dayrooms:  detectable warnings at drop boxes, counters, drinking fountains, stairways, and video phones.

61.     Medical Unit:

    a.     Adjustable exam table.

    b.     Remove saloon-style shower door and provide curtain for shower serving medical observation dorms.

62.     These modifications shall be complete within 2 years of all counsel signing this ADA Settlement Agreement and Order.

### 3.     East Mesa Reentry Facility

63.     East Mesa is a jail facility that consists of dorm housing for men.  East Mesa is currently home to vocational programming not available to incarcerated men at any other facilities.  The County does not currently house any individuals who use wheelchairs in housing at East Mesa.

### 4.     Vista Detention Facility ("Vista")

64.     Vista serves North County and is the oldest jail facility in the County.  Vista is a booking facility for men and women and houses only men.

65.     No individual requiring a wheelchair in a housing module will be booked or housed at Vista.

66.     The County are studying whether to renovate Vista or to replace it with a new jail facility.  Any new facility to replace Vista shall be constructed in accordance with all applicable construction requirements under the ADA, Rehabilitation Act, and California Government Code 11135 in effect at the time of construction.

67.     In the interim, the County shall modify one holding cell to have toilet grab bars.  The side grab bar will be as close to 42 inches long and 33-36 inches above the floor as possible based on wall length.  The rear grab bar will be as close to 36 inches long and 33-36 inches above the floor as possible based on wall length and toilet height.

19

68.     These modifications shall be complete within 1 year of all counsel signing this ADA Settlement Agreement and Order.

### 5.     Rock Mountain Detention Facility ("Rock Mountain")

69.     Rock Mountain is a jail facility adjacent to George Bailey.  It houses only men and is not a booking facility.  The County has been altering Rock Mountain to comply with the 2010 ADA Standards.  Any additional housing brought online shall provide for at least 3% of housing beds complying with the 2010 ADA Standards for physical accessibility.

70.     For any additional housing brought online, the County shall make renovations to comply with the 2010 ADA Standards to any new housing (including beds, toilets, and showers) brought online.  The County shall also modify other spaces for programs, services, and activities, including holding areas, program spaces, dayrooms, exercise yards, and medical areas.

71.     The County shall bring online 10 additional beds that comply with the 2010 ADA Standards within three years of all counsel signing this ADA Settlement Agreement and Order.

72.     The County shall ensure that the sallyport ramp at Rock Mountain is accessible.

### 6.     South Bay Detention Facility ("South Bay")

73.     South Bay is a jail facility in Chula Vista.  It houses only men and is not a booking facility.  The facility is not and will not be used to house individuals who use wheelchairs in housing.

74.     The County shall make the following changes:  Alteration of Holding Cell LD 1 to meet the 2010 ADA Standards.  This cell will only be used to hold 2 incarcerated persons in wheelchairs for Court appearances.  This alteration will be complete by June 1, 2026.

### G.     Transition Plan

75.     If the County creates an ADA transition plan, it will reflect the relevant

20

1    portions of this ADA Settlement Agreement and Order.

2        **H.    Program Access**

3        76.    The County shall ensure that no qualified incarcerated person with a

4    disability, who meets all essential eligibility requirements, shall be excluded from

5    participation in or denied the benefits of any in-custody program, service, or activity

6    based upon their disability.  The County shall provide the reasonable

7    accommodations needed for incarcerated persons with an identified disability to

8    have an equal opportunity to participate in and benefit from the County's programs,

9    services, and activities.

10        77.    The programs, services, and activities at the facilities, which must be

11    provided on an equivalent basis to incarcerated persons with identified disabilities to

12    the extent they meet all essential eligibility requirements, include dayroom, out-of-

13    cell time, outdoor recreation and exercise equipment, showers, telephones,

14    videophones, television, tablets (when available), reading materials, library, writing

15    materials, religious services, substance use programs, reentry services, clinical

16    services, family and public visiting, and attorney visiting.

17        78.    Incarcerated persons with an identified disability shall have equal,

18    meaningful access to educational programs, vocational programs, and job

19    assignments at the jail facilities.  The County shall provide reasonable

20    accommodations as necessary for qualified individuals with an identified disability

21    to participate in and have meaningful access to educational programs.  For

22    vocational programs and job assignments, the County will provide equal

23    opportunities and reasonable accommodations to qualified individuals with an

24    identified disability who can perform the essential functions with or without

25    reasonable accommodations.

26        79.    All incarcerated persons with disabilities shall be housed in a manner

27    which allows for access to programs, services, and activities that they are qualified

28    to participate in, with or without reasonable accommodation, in accordance with

1   their security/custody level.

2      80.    Within six months of the signing of this ADA Settlement Agreement

3   and Order, the County shall ensure that any otherwise qualified individual with a

4   mobility disability who cannot be housed at Vista due to housing accommodations

5   for their disability is able to access the programs and services available in the

6   Veterans Moving Forward module, through individual and/or virtual means.  The

7   County is committed to providing access to the Veterans Moving Forward module

8   to ensure full participation of qualified individuals with mobility disabilities in this

9   program in the future, including housing in the program, to the extent possible based

10  upon future construction, other than as identified in Paragraphs 45 and 46 above,

11  and programmatic constraints.

12     81.    Within six months of the signing of this ADA Settlement Agreement

13  and Order, the County shall develop a plan to provide access to the vocational

14  programs available at East Mesa to all qualified individuals with mobility

15  disabilities who can perform the essential functions with or without accommodation

16  and who must be housed at other facilities due to their disabilities.

17  **I.    Requests for Disability Accommodations and Grievances**

18     82.    The County shall maintain policies, procedures, and training regarding

19  incarcerated person requests for disability accommodations and grievances

20  regarding disability accommodations.

21     83.    Incarcerated persons can submit requests for new reasonable

22  accommodations via the Healthcare Request form and process.  The County shall

23  timely respond to Healthcare Request forms requesting reasonable accommodations

24  and shall track all such Healthcare Request forms and their resolutions.

25     84.    An incarcerated person with a disability may contact the ADA Unit

26  regarding the provision of their reasonable accommodations to access programs,

27  services, and activities by using the Incarcerated Person Request form.  The ADA

28  Unit shall timely respond to Incarcerated Person Requests regarding reasonable

1  accommodations and shall track all such Incarcerated Person Requests and their

2  resolutions.

3      85.    An incarcerated person with a disability may grieve alleged

4  discrimination due to a disability or dispute decisions related to accommodations by

5  using the Incarcerated Person Grievance form.

6      86.    Within 6 months of all counsel signing this ADA Settlement

7  Agreement and Order, the County will amend the Grievance form to include a clear

8  means for a person to identify that their grievance is an "ADA" grievance.  The

9  County shall track all such "ADA" grievances and their resolutions.

10     87.    Blank grievance forms shall be available in every housing unit and in

11 health care areas, and shall be provided to incarcerated persons upon request at any

12 time.

13     88.    The County shall provide assistance completing grievances,

14 Incarcerated Person Requests, and Healthcare Request forms to those incarcerated

15 persons with disabilities who require reasonable accommodations to complete the

16 forms.

17     89.    ADA grievances shall receive a response to the grievance within seven

18 (7) calendar days or sooner based upon the nature of the request and well-being of

19 the grievant.  In response to an ADA grievance alleging the incarcerated person's

20 health or safety is being threatened by a condition of their confinement or that the

21 conditions of confinement prevent their effective communication or participation in

22 a court or administrative proceeding, the ADA Unit will respond within four (4)

23 calendar days.  The ADA Unit or their designee in collaboration with health staff

24 will provide an interim accommodation when warranted, pending a final response to

25 the grievance.

26     90.    As part of the ADA Unit's quality assurance processes, the ADA Unit

27 shall track all ADA grievances for quality assurance and take corrective action as

28 necessary to address issues.

### J.    Effective Communication

91.    The County shall ensure that incarcerated persons with identified disabilities receive accommodations and services necessary for effective communication, and are able to equally and fully access jail facility programs, services, and activities, including as part of the 2023 ADA Order.  Staff shall give primary consideration to a person's preferred method of communication.

92.    Staff shall use the incarcerated person's documented preferred method of communication for all due process events, health care encounters, and structured programming.  The provision of effective communication shall be documented for health care encounters and structured programming.  The provision of effective communication shall be documented for due process events when an auxiliary aid or contracted service is used.  The neutral expert for policies, procedures, and implementation thereof shall conduct audits of compliance with the effective communication requirements in this section, including through documentation review, body worn camera footage review, and in-person observations, as the neutral deems appropriate, and include their findings in their twice-yearly reports.

93.    "Due process" refers to requirements for judicial, non-judicial, and administrative proceedings that protect an incarcerated person's life, liberty, or property interests.  This includes, but is not limited to, notices of new charges, notice to appear, booking, discipline, grievance, classification, investigative, probation, and release processes.

94.    "Health care encounter" refers to an interaction between a patient and health care staff (to include medical, mental health, dental, and vision care) that involves an assessment, examination, treatment, counseling, and/or exchange of protected health information.  This includes, but is not limited to, health screenings, sick calls, informed consent or refusal of health care, explanation of medication, treatment, or discharge instructions.

95.    "Structured programming" refers to in-custody and reentry programs

and services that are managed by the Sheriff's Office Reentry Services Division ("RSD") (e.g., education, self-help, AA/NA, vocational, work positions, or religious programs, discharge planning, services, or activities).  This includes communications between incarcerated workers and their supervisors that are outside general day-to-day communication (e.g., training, performance evaluations, discipline).

96.    Providing effective communication may require the use of auxiliary aids and services, such as qualified sign language interpreters, certified deaf interpreters, sound amplification devices, hearing aids, captioned telephones, captioned televisions, video relay services ("VRS"), video relay interpretation ("VRI"), electronic and other magnifiers, Braille materials, screen reading software, large-print materials, audio recordings, writing materials, and written notes.

97.    For individuals who use sign language to communicate, they shall not be cuffed or shackled by their hands while signing or when using any auxiliary aid (such as VRI or VRS) to communicate with their hands, unless there is a safety and security concern.  If this occurs, staff will document the specific individualized safety and security concern, which will be reviewed by a supervisor to ensure it meets criteria for the action.

98.    For individuals who use sign language to communicate and/or who are Deaf, the County shall ensure that deputies promptly respond in-person when those individuals push the intercom button in their cell and/or housing unit.

**K.    Assistive Devices, Health Care Appliances, and Durable Medical Equipment**

99.    The County shall ensure that incarcerated persons with a disability requiring an assistive device, health care appliance, or durable medical equipment (including prosthetics) (henceforth, "HCA/AD/DME") will have access to such a reasonable accommodation(s).  Incarcerated persons with personal assistive devices shall be permitted to keep their devices during the booking process and throughout

their time in custody unless the device poses a direct threat or safety and security risk, as determined based on an individualized assessment with supervisory review and approval.  If such a risk is identified, an equivalent County device will be issued instead of the personal assistive device if there is an alternative that does not pose a direct threat or safety and security risk.  Any HCA/AD/DME provided by the County to replace an individual's personal HCA/AD/DME shall be sufficient to provide the person with safe access to the jail facility's programs, services, and activities.  The County will store the personal HCA/AD/DME and return it upon release from custody.

100.   If an incarcerated person with a disability needs a reasonable accommodation in the form of an assistive device but does not have one, the County will provide it.  An incarcerated person's insurance if applicable may be billed for personal devices; billing will not delay the provision of the assistive device.  The County shall maintain a sufficient supply, as determined by the County health staff, of all HCA/AD/DME that is regularly used to assist persons with disabilities at each jail facility, in working order, to ensure timely provision of such items to incarcerated persons with disabilities.

101.   If an assistive device is removed for safety or security reasons, after supervisory review, the decision and reasons for removal shall be documented, receive supervisory review, and be reviewed with medical staff within 24 hours to determine an appropriate alternative device and/or accommodation.  The ADA Unit will be promptly notified and shall assist as necessary to appropriately resolve the issue.

102.   If an individual's personal HCA/AD/DME becomes unusable, the County will provide the person with a replacement HCA/AD/DME.  An incarcerated person's insurance if applicable may be billed for personal devices; billing will not delay the provision of the assistive device.

103.   The County shall not automatically remove HCA/AD/DME when

incarcerated persons are placed in temporary holding, sobering, or observation cells, and shall remove HCA/AD/DME only based on individualized security factors and for the minimum time necessary.

104.    Upon release, if an incarcerated person does not have personal HCA/AD/DME or came to the jail with HCA/AD/DME that is not adequate for the person's needs, the County shall permit the person to retain any HCA/AD/DME provided to the person while in custody, or the County shall provide a comparable device.  An incarcerated person's insurance if applicable may be billed for personal devices; billing will not delay the provision of the assistive device upon release from the jail.  The County may alternatively coordinate with the incarcerated person, the person's family or friends, and/or other County agencies to secure HCA/AD/DME for the person prior to release so long as the incarcerated person has the device at the time of release.  The provision of HCA/AD/DME, return of personal devices, and/or coordination with external parties shall be documented in a manner that can be audited for quality assurance.

**L.    Emergency Situations and Use of Force**

105.    The County shall develop and implement policies, procedures, and training to ensure that incarcerated persons with disabilities are accommodated during evacuations and other emergencies at the jail.  The Sheriff's Office's "green sheets" (facility-specific policies and procedures) for each facility shall include specific information about evacuation procedures for incarcerated persons with disabilities to be accommodated during an emergency, identifying the devices on hand to carry people with mobility disabilities downstairs when necessary, and identifying the specific ways that staff at that facility must accommodate people with disabilities in a facility emergency, given the unique characteristics of each jail facility.  The County shall revise these green sheets by no later than six months from the date of the signing of this ADA Settlement Agreement and Order by all counsel. The County shall provide drafts of the green sheets to the neutral expert for review

and prompt comment.  The County shall ensure that they have sufficient devices to carry people with mobility disabilities downstairs for emergencies when elevators do not work or cannot be used.

106.   The County shall conduct training on disability awareness and de-escalation related to use of force on incarcerated persons with identified disabilities. The County shall comply with its use of force policies and take into account an incarcerated person's documented physical disability, mental health disability, or intellectual disability (including relevant accommodation and adaptive support needs), before pre-planned cell extractions and coordinated tactical responses to incidents involving multiple incarcerated persons and incarcerated persons not participating in the incident.

**M.    People with Learning, Intellectual, and Developmental Disabilities**

107.   The County shall ensure that health care staff who have received the training specified in Paragraph 22 conduct a screening of incarcerated persons for intellectual, learning, and developmental disabilities.  For any person suspected of having a learning, intellectual, or developmental disability, the County shall provide a secondary screening by a qualified mental health professional ("QMHP") within seven (7) business days.  The QMHP shall be responsible for documenting any identified learning, intellectual, or developmental disabilities and necessary accommodations in the person's health record.  This includes identifying and documenting 1) adaptive support needs, 2) safety, vulnerability, and victimization concerns; and 3) programming, housing, and accommodation needs.

108.   If the person has been a client of a Regional Center through the California Office of Developmental Services, the County shall contact the Regional Center to obtain the person's Individualized Program Plan, subject to the person's authorization.

109.   The County shall ensure provision of adequate supports for any person with a learning, intellectual, or developmental disability as determined by medical

28

and mental health care staff as appropriate.  Incarcerated persons with a learning, intellectual, or developmental disability may not be housed in Administrative Separation or any similarly restrictive setting (which does not include protective custody) based on victimization or safety concerns arising from their disabilities.

110.   The County shall provide identified accommodations and adaptive supports to people with learning, intellectual, or developmental disabilities, including but not limited to effective communication, such as providing more time to respond to and act in accordance with directions (except when there is an immediate safety and security issue), assistance completing forms, and supports as necessary with activities of daily living.

111.   Mental Health Services will take appropriate steps to ensure implementation of each person's individualized plan, in coordination with the ADA Unit as appropriate.

112.   The County shall implement training for staff, including contractors, on learning, intellectual, and developmental disabilities, including on the needs of incarcerated persons with such disabilities and staff's responsibilities to provide for such needs and to monitor for and address any safety, vulnerability, or victimization concerns.

113.   People with learning, intellectual, and developmental disabilities shall have equal access to books, magazines, and any future electronic tablet programs, consistent with their reading and cognitive abilities.

114.   The County shall provide discharge planning tailored to the needs of people with learning, intellectual, or developmental disabilities, including appropriate and effective linkages to housing assistance and community-based service providers.

**N.    Searches and Restraints**

115.   The County shall ensure that incarcerated persons with disabilities receive reasonable accommodations with respect to searches and during counts.

(For example, search procedures may require modification for a person with a mobility disability affecting their ability to stand or maintain a certain body position.)

116.   The County shall ensure that incarcerated persons with disabilities receive appropriate reasonable accommodations with respect to application of restraint equipment.

### O.    Transportation

117.   The County shall ensure that incarcerated persons with disabilities are reasonably accommodated when in transit, such as between facilities, out to court, or to and from outside health care services.  The County shall ensure that they maintain an adequate fleet of functional wheelchair accessible vehicles and shall ensure appropriate compliance for safe transport of wheelchair riders.

118.   The County shall ensure that whether a person requires accessible transportation is documented in the disability tracking system, and that staff have access to this information as necessary to ensure provision of appropriate accommodations during transportation.

119.   The County shall ensure that prescribed assistive devices for people with disabilities are available to them at all times during the transport process, when the incarcerated person is moving, boarding on and off the vehicle and moving to their seat within the vehicle, absent a safety concern.  If this occurs, staff will document the specific individualized safety and security concern which will be reviewed by a supervisor to ensure it meets criteria for the action.  This includes in temporary holding cells.

120.   The County shall ensure that staff provide assistance to people with mobility or other disabilities where necessary to ensure safe access on and off of transport vehicles.  The County shall provide restraint-related accommodations to ensure that people with mobility disabilities are restrained in ways that maintain their safety during transport.

121.   The County shall develop and implement processes to inspect the accessible transportation vehicles on a regular basis to ensure that they are in safe working condition, and take prompt steps to address vehicle maintenance issues.

**P.     Accommodations for People with Substance Use Disorder**

122.   The County shall ensure that people with substance use disorders are not subject to discrimination on the basis of disability.

123.    Plaintiffs do not waive any claims regarding the provision of medical care, including medication assisted treatment, for incarcerated people with substance use disorders, as set forth in the first claim for relief of the Third Amended Complaint, and those claims are explicitly reserved.

**Q.     People with Mental Health Disabilities**

124.   The Sheriff's Office shall ensure that people with mental health disabilities are not subject to discrimination on the basis of disability and have equal and meaningful access to programs, services, and activities while incarcerated, unless there is a specific clinical or valid safety reason based on individualized assessment.  This provision covers access to, for example, worker opportunities, classes, vocations and rehabilitation programs, and religious programs.

125.   The County shall ensure that incarcerated persons with (a) mental health disabilities or (b) intellectual disabilities (as identified through the process set forth in Section III.M) will not face discrimination in the use of disciplinary procedures or sanctions. The procedures set forth in Paragraph 126 will apply in cases where:

(1) the incarcerated person:

(a) has been identified as having an intellectual disability through the process set forth in Section III.M; or

(b) meets clinical criteria for placement in PSU, OPSD, EASS, or JBCT; or

(c) is housed in OPSD, PSU, JBCT, EASS, or is PC 1368/1370, or is

conserved;

and

(2) the incarcerated person faces placement in restrictive housing or lockdown or a denial of property or privileges as a potential disciplinary sanction.

126.    A Qualified Mental Health Professional shall assess the person and provide written findings as to (a) whether or not the reported behavior was related to mental illness, adaptive functioning deficits, or other mental health or intellectual disability; and (b) whether certain sanctions should be avoided in light of the person's mental health or intellectual disability, treatment plan, or adaptive support needs.  Custody staff shall meaningfully consider the Qualified Mental Health Professional's findings when deciding what, if any, disciplinary action should be imposed.  If custody staff do not follow the mental health input, staff shall document why it was not followed.

127.    Incarcerated persons shall not be subjected to discipline in any manner that prevents the delivery of mental health treatment or adaptive support needs.

128.    Incarcerated persons shall not be subject to discipline for refusing treatment or medications, or for engaging in self-injurious behavior or threats of self-injurious behavior.

129.    The County shall provide the individual's reasonable accommodations during the disciplinary process.

**R.    Quality Assurance and Auditing**

130.    The Sheriff's Office's ADA Unit shall develop a quality assurance and auditing program to ensure ADA compliance within one year of all counsel signing this ADA Settlement Agreement and Order.

**S.    Non-Retaliation and Non-Interference**

131.    The County shall not retaliate, discriminate against, coerce, intimidate, threaten, or interfere with any incarcerated person in the exercise or enjoyment of, or an account of his or her having exercised or enjoyed, or on account of his or her

having aided or encouraged any other incarcerated person in the exercise or enjoyment of any ADA right while incarcerated.

## IV.    COMPLIANCE

### A.    Neutral Experts

132.    The parties agree that there will be a CASp neutral expert retained to ensure compliance with this ADA Settlement Agreement and Order who shall be the same individual agreed upon regarding the 2023 ADA Order.  The parties agree that there will be an additional neutral expert retained regarding policies, practices, procedures, and training relating to this ADA Settlement Agreement and Order.

133.    The parties shall meet and confer on the process for selecting the ADA neutral expert for policies, procedures and practices relating to this ADA Settlement Agreement and Order.  If the expert is not selected within 30 days of Court approval of this ADA Settlement Agreement and Order, the parties shall submit names to the Magistrate Judge for selection.  The County shall sign a contract with the chosen neutral expert within 30 days of their selection.

134.    If any of the neutral experts become unavailable, the parties will meet and confer, and assign a new expert.  The parties may agree at any time to remove and replace a neutral expert.  If the parties do not agree on removal, either party may refer the matter to the Magistrate Judge, and, if necessary, to the Court to determine whether the neutral expert should be retained or removed.

135.    The neutral experts will work with the County to ensure timely and appropriate implementation of this ADA Settlement Agreement and Order.

136.    Plaintiffs' expert accompanied by Class Counsel may inspect each altered facility (other than San Diego Central Jail, which shall be inspected according to the 2023 ADA Order) one time within two months of completion of all the alterations at the specific facility.  No more than one class counsel shall join Plaintiffs' expert on their inspections.  One month prior to such inspections, Class Counsel shall receive copies of any architectural plans and specifications for the

1    alterations.

2    137. The neutral experts may engage in *ex parte* communications with the

3    parties. All of the neutral experts' findings and recommendations shall be set forth

4    in writing in their reports.

5    138. The neutral experts, accompanied by Class Counsel and the County's

6    counsel, shall have access to all jail facilities upon reasonable notice. All site visits

7    shall take place on consecutive days. There shall be two (2) site visits, per expert, in

8    each year that the ADA Settlement Agreement and Order is in effect, unless

9    otherwise agreed by the parties. No more than one class counsel shall join the

10    neutral expert on their site visits.

11        a.    The neutral experts shall have reasonable access to meet and

12    interview personnel whose duties pertain to the provision of services and/or who

13    work with incarcerated persons in the area of the expert's expertise.

14        b.    The neutral experts shall have a reasonable opportunity to

15    conduct interviews of incarcerated persons to assess whether the County is in

16    compliance with the terms of this ADA Settlement Agreement and Order. Class

17    Counsel shall be able to advise these class members at the time of the proposed

18    interviews to ensure informed consent to participate.

19        c.    With the informed consent of class members, the neutral experts

20    shall have reasonable access to observe the evaluation and assessment of ADA

21    needs and services, including at ADA verifications and functional assessment

22    meetings.

23        d.    The neutral experts shall have access to the County's disability

24    tracking system during site visits.

25    139. The neutral experts may request to review County documents, except

26    those documents protected by attorney-client or work product privileges, or by state

27    or federal law, to assess the County's compliance with the terms of this ADA

28    Settlement Agreement and Order as the neutral deems appropriate. If these

34                                    Case No. 3:20-cv-00406-AJB-DDL

documents are requested in conjunction with a site visit, the County will provide these documents to the extent feasible within ten (10) days prior to the visit.  All materials produced to the neutral expert must be shared with counsel for Plaintiffs and the County.  At a minimum, the County must, on a monthly basis, produce to the neutral expert and Class Counsel a housing roster from the first day of the month, identifying and reflecting the disability needs of every person incarcerated in a County jail facility who has been identified as having a mobility, hearing, vision, speech, or developmental disability, including information regarding the category or categories of disabilities, any disability-related housing restrictions, and whether the person's cell or housing unit has 2010 ADA Standards-compliant bed, toilet, or shower, or non-compliant shower or toilet grab bars.  Housing does not include intake and holding.  These rosters will be provided monthly for the twelve months following all counsel signing this ADA Settlement Agreement and Order, and quarterly thereafter until Substantial Compliance with this ADA Settlement Agreement and Order is achieved.

140.    The neutral experts shall each issue a report following the inspection(s) which take place as provided in Paragraph 136 addressing the County's progress toward implementation of the requirements set forth in this ADA Settlement Agreement and Order.  Draft reports shall be provided to the Parties within 30 days of the later of the expert's site inspection and the expert's receipt of all requested documents and information, and in no case later than 45 days after the inspection.  Each report shall contain a determination of whether the County is "substantially complying" with each provision of the ADA Settlement Agreement and Order.  If a neutral expert concludes that the County is not substantially in compliance with the terms of any provision or provisions of this ADA Settlement Agreement and Order, the neutral expert shall make recommendations as to actions the County should take to comply with the terms of the provision or provisions.  Either party may submit comments within 15 days for review by the neutral expert,

who shall thereafter issue the report in final form. The neutral experts shall ensure that individual incarcerated person or staff names are not included (or are properly redacted) in the reports. Counsel for both sides will review to determine and implement any additional necessary redactions, including for safety and security reasons. With such proper redactions, the final reports will be public documents. Reports will not be filed with the district court unless attached to a motion seeking relief under this Settlement Agreement and Order or the 2023 ADA Order, or by order of the court. The County will pay reasonable fees for work performed by the neutral experts to fulfill his or her obligations under this agreement. If the County believes that Class Counsel is requiring the neutral experts to expend excessive and unwarranted time on the matter, the parties shall first meet and confer; if there remain disputes, the issue may be brought to Judge Leshner pursuant to the Dispute Resolution process below.

141. The neutral experts shall also issue respective reports upon determining the County has achieved substantial compliance with the terms of this ADA Settlement Agreement and Order as substantial compliance with respect to each provision of this ADA Settlement Agreement and Order is achieved.

142. The neutral expert for policies, procedures, and implementation therefor shall be permitted to attend trainings as the neutral expert deems appropriate. If the neutral expert attends, the training will be videotaped and made available to Class Counsel. The faces and/or names of attendees will be redacted as necessary to protect employee anonymity.

143. The neutral experts shall be provided with and agree to be bound by any protective or Court orders entered in this case to protect the confidentiality of incarcerated persons' records and security-sensitive information.

144. To facilitate Class Counsel's ability to communicate with their clients, the County agrees to facilitate one day of interviews at a single facility every four months between Class Counsel and the disability subclass members. Class Counsel

shall, at least 10 days before the interview, identify the facility and provide the County a list of no more than 20 subclass members housed at that facility to interview so that the County can facilitate the interviews.  The County shall provide a confidential room at the requested jail facility where Class Counsel can interview the subclass members.  The County will produce the previously identified subclass members who are housed at the facility in an expeditious manner, as reasonably possible.  The County also agrees to explore options to facilitate the above interviews over Microsoft Teams or a similar platform.  This provision terminates once the County has achieved Substantial Compliance.

## B.    Dispute Resolution

145.    Any disputes between the parties about a matter governed by this ADA Settlement Agreement and Order shall be subject to these dispute resolution procedures and those set forth above regarding neutral experts.  This provision along with Paragraphs 147-148 are the sole and exclusive means to address disputes, and shall cover any dispute prior to issuance of a Substantial Compliance report, and any dispute regarding alleged failure of the County to maintain compliance with the terms of this ADA Settlement Agreement and Order following a finding of Substantial Compliance, other than seeking relief from the District Court.  A party may initiate the dispute resolution process with respect to any matter covered by this ADA Settlement Agreement and Order by providing written notice of a dispute ("Dispute Notice") to the other party within 10 days of becoming aware of any such dispute.  Following service of the Dispute Notice, the parties shall undertake good faith negotiations in person or via video conference at such times and places as they deem sufficient in an effort to resolve the dispute informally between them.

146.    If, within 30 days after service of the Dispute Notice, the parties have failed to resolve the dispute, the parties shall next seek the assistance of Magistrate Judge David Leshner.  Any party may request that a settlement conference be scheduled within 30 days of requesting the Magistrate Judge's assistance, unless the

parties mutually agree upon an alternative schedule or the Court schedule does not allow for presentation of the issue to Magistrate Judge Leshner within 30 days. The content of the settlement conference discussions shall not be offered in evidence in any subsequent judicial proceeding in this case.

147.  If a dispute cannot be resolved after conducting a settlement conference with Magistrate Judge Leshner or his designee, either party may seek the assistance of the District Court through the filing of a motion for relief.

148.  In cases of particular urgency or irreparable harm related to provisions in this ADA Settlement Agreement and Order, a party may opt to bring disputes directly to the District Court, or both parties may consent to bypass the Magistrate Judge if the parties agree the issue should be briefed to the Court, with prior notice to the Magistrate Judge.

## V.    MISCELLANEOUS RELIEF

149.  Class counsel may bring concerns in writing about individual incarcerated persons with disability accommodation or access concerns to the attention of the ADA Unit. The ADA Unit will investigate and respond to Class counsel within 10 business days of receipt. This process is not meant to replace or circumvent the existing processes for requesting disability-related accommodations or assistance, or following the existing request and grievance processes in the Jail. Incarcerated persons in the Jail will be encouraged to make use of those processes.

150.  Before contacting the ADA Unit, Class Counsel will attempt to verify that the concerns of individual class members are accurate, substantive, and not frivolous.

## VI.    DURATION AND TERMINATION

151.  The duration of this ADA Settlement Agreement and Order is until such time that the County have achieved Substantial Compliance as to any Facility Alterations provisions set forth herein (Section F) and have demonstrated Substantial Compliance for a period of at least twelve months for any other

1    provision set forth herein.

2        152.    Consistent with the foregoing paragraph, the County may move for

3    termination of any portion of this ADA Settlement Agreement and Order pursuant to

4    18 U.S.C. section 3626(b)(1)(A)(i) after a finding of Substantial Compliance at any

5    point after the Court's approval of this ADA Settlement Agreement and Order, after

6    conferring with Plaintiffs' counsel to attempt to reach agreement on whether

7    substantial compliance has been achieved up to and including full and complete

8    compliance of the entire Settlement Agreement and Order.  Unless otherwise

9    ordered by the Court, such a finding will result in a termination of the relevant

10   neutral's work as to the particular area of Substantial Compliance or, upon full

11   compliance, as to the entire scope of the relevant neutral's work and retention of that

12   neutral.

13       153.    If Plaintiffs form the good faith belief prior to final termination of the

14   entire Settlement Agreement and Order, that the County is no longer in substantial

15   compliance with any component(s) of this ADA Settlement Agreement and Order

16   previously found to be in substantial compliance and as to which the neutral's work

17   has concluded as set forth in Paragraph 150, Plaintiffs shall promptly so notify the

18   County in writing.  Within 30 days, the County shall serve a written response stating

19   whether they agree or disagree.  In the event the County disagrees, the parties will

20   proceed with the Dispute Resolution process set forth in Section IV.B.

21       154.    Nothing in this ADA Settlement Agreement and Order shall limit the

22   parties' rights to challenge or appeal any finding as to whether the County is or is

23   not in substantial compliance with this ADA Settlement Agreement and Order or

24   consequent orders entered by the District Court.

25   **VII.   AMENDMENTS**

26       155.    By mutual agreement, the parties may change the terms of this ADA

27   Settlement Agreement and Order, including, but not limited to, the timetables for

28   taking specific actions, provided that such mutual agreement is memorialized in

1  writing, signed by the parties, and approved by the Court.

2  **VIII. JURISDICTION AND ENFORCEMENT**

3      **A.**    **Court Approval**

4      156.   This Joint Motion will be subject to approval by the District Court,

5  pursuant to Federal Rule of Civil Procedure 23, with notice to the Disability

6  Subclass and a Fairness Hearing; the parties shall file a joint motion for preliminary

7  approval within 30 days of all counsel signing this ADA Settlement Agreement and

8  Order.

9      **B.**    **Court Jurisdiction**

10      157.   For the purposes of jurisdiction and enforcement of this ADA

11  Settlement Agreement and Order only, the parties jointly request that the Court find

12  this ADA Settlement Agreement and Order satisfies the requirements of 18 U.S.C.

13  § 3626(a)(1)(A) in that it is narrowly drawn, extends no further than necessary to

14  correct the violation of the Federal right, and is the least intrusive means to correct

15  the violation of the Federal right of the Plaintiffs and the Disability Subclass.  In the

16  event the Court finds that the County has not substantially complied with the ADA

17  Settlement Agreement and Order, it shall in the first instance require the County to

18  submit a plan for approval by the Court to remedy the deficiencies identified by the

19  Court.  In the event the Court subsequently determines that the County's plan did

20  not remedy the deficiencies, the Court shall retain the power to enforce this ADA

21  Settlement Agreement and Order through all remedies provided by law and equity.

22      158.   The Court retains jurisdiction to enforce the terms of this ADA

23  Settlement Agreement and Order during the duration of the ADA Settlement

24  Agreement and Order, as set forth in Paragraphs 151-154.

25      159.   The Court shall be the sole forum for enforcement of this ADA

26  Settlement Agreement and Order.  Any order to achieve substantial compliance with

27  the provisions of this ADA Settlement Agreement and Order shall be subject to the

28  applicable provisions of the Prison Litigation Reform Act, 18 U.S.C. Section 3626.

Case No. 3:20-cv-00406-AJB-DDL

1  ## IX.    ATTORNEYS' FEES AND COSTS

2  160.    The parties agree that Plaintiffs and the disability subclass are entitled

3  to reasonable attorneys' fees and costs on all issues covered by the Third Claim for

4  Relief in Plaintiffs' Third Amended Complaint, including the 2023 ADA Order and

5  this ADA Settlement and Order.  Class Counsel may move for an award of

6  reasonable attorneys' fees, litigation expenses, and costs for obtaining relief for the

7  Plaintiff subclass pursuant to the ADA, 42 U.S.C. § 12205, the Rehabilitation Act,

8  Gov't Code § 11135, Cal. Code. Civ. Proc. § 1021.5 or any other applicable law.

9  161.    The parties further agree that Class Counsel are entitled to reasonable

10  attorneys' fees, litigation expenses, and costs for post-settlement date work

11  performed in conjunction with the Third Claim for Relief in Plaintiffs' Third

12  Amended Complaint including the 2023 ADA Order and this ADA Settlement and

13  Order.  Class Counsel's bills shall be reviewed and approved by the County on a

14  quarterly basis.

15  162.    Class Counsel agrees to reduce their hourly rates by 10% for all post-

16  settlement date work.  The benchmark for Class Counsel's post-settlement date

17  work (other than work preparing for and filing enforcement motions or otherwise

18  engaging in litigation) shall be $75,000.00 per quarter (including fees and costs).

19  For any quarter in which attorneys' fees and costs exceed the benchmark, either

20  party may request a settlement conference before Magistrate Judge Leshner.  If the

21  parties are unable to resolve any such dispute before Judge Leshner, Class Counsel

22  may apply to the Court for the additional reasonable attorneys' fees, litigation

23  expenses, and the County may oppose such a request.  Class Counsel's work

24  preparing for and filing enforcement motions or otherwise engaging in litigation

25  shall not be subject to the above-referenced benchmark, nor to the rate reduction in

26  the paragraph above.

27  163.    For all travel costs in connection with post-settlement date work, Class

28  Counsel shall be limited to the California State travel reimbursement rates in effect

1  on the date of travel. The current rates are described here:

2  https://www.calhr.ca.gov/employees/pages/travel-reimbursements.aspx.

3

4        IT IS SO STIPULATED.

5

6                                    Respectfully submitted,

7  DATED:  November 22, 2024        ROSEN BIEN GALVAN & GRUNFELD LLP

8                                    By:  /s/ Gay Crosthwait Grunfeld

9                                         Gay Crosthwait Grunfeld

10                                   Attorneys for Plaintiffs and the

11                                   Certified Subclass

12

13  DATED:  December 11, 2024        BURKE, WILLIAMS & SORENSEN, LLP

14                                   By:  /s/ Susan E. Coleman

15                                        Susan E. Coleman

16                                        Elizabeth M. Pappy
                                          Attorneys for Defendants

17

18

19                      **SIGNATURE CERTIFICATION**

20        Pursuant to the Court's Electronic Case Filing Procedures Manual Section

21  2(f)(4), I certify that I have obtained the consent of all signatories to the electronic

22  filing of the foregoing document.

23  DATED:  December 12, 2024        ROSEN BIEN GALVAN & GRUNFELD LLP

24                                   By:  /s/ Gay Crosthwait Grunfeld

25                                        Gay Crosthwait Grunfeld

26                                   Attorneys for Plaintiffs and the

27                                   Certified Subclass

28

# [PROPOSED] ORDER

The Court, having reviewed the above Joint Motion of the parties, as well as the record in this case, and good cause appearing, hereby issues the following order:

1.     The remedies and actions described above are all consistent with the Prison Litigation Reform Act's requirement that the Court's orders be narrowly drawn, extend no further than necessary to correct the violation of a federal right, and be the least intrusive means necessary to correct the violation. *See* 18 U.S.C. § 3626(a)(1)(A).

2.     The Court certified a Subclass of all qualified individuals with disabilities, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (i), and who are now, or will be in the future, incarcerated in all San Diego County Jail facilities. The Court appointed Plaintiffs as the class representatives for the Subclass. The Court appointed Plaintiffs' counsel—Gay Crosthwait Grunfeld and Van Swearingen of Rosen Bien Galvan & Grunfeld LLP, Aaron J. Fischer of the Law Office of Aaron J. Fischer, and Christopher M. Young of DLA Piper LLP (US)—as class counsel. Fed. R. Civ. P. 23(g)(1) and (4). *See* Order, Dkt. No. 435.

3.     This Order shall apply to the County, their agents, contractors, employees, successors in office, and all persons with knowledge of it. No person who has notice of this order shall fail to comply with it, nor shall any person subvert the order by any sham, indirection, or other artifice.

4.     The bond requirement is waived.

5.     The Court shall retain jurisdiction to enforce the terms of this ADA Settlement Agreement and Order, including through specific performance and all other remedies permitted by law or equity.

6.     Within 30 days of entry of this order, the parties shall jointly move for preliminary approval of the ADA Settlement Agreement and Order and Notice to the Subclass. A fairness hearing shall occur within 30 days of the Subclass being

43

Case No. 3:20-cv-00406-AJB-DDL

1  notified of the terms of the ADA Settlement Agreement and Order.

2

3  DATED: _____, 2024        _____

4                                   Honorable Anthony J. Battaglia

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, | Case No. 3:20-cv-00406-AJB-DDL **JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION** |
| Plaintiffs, | |
| v. | (Doc. No. 349) |
| SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, | |
| Defendants. | |

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

On April 25, 2023, Plaintiffs filed Motions for Preliminary Injunction and Provisional Class Certification ("the Motions") seeking to ensure that Defendants County of San Diego and the San Diego County Sheriff's Department ("Defendants") : (1) provide incarcerated people with hearing disabilities effective communication through sign language interpretation; and (2) house incarcerated people with mobility disabilities in accessible locations, where they can safely access sleeping, toileting, and showering facilities, in compliance with the Americans with Disabilities Act, the Rehabilitation Act, and California Government Code Section 11135 ("ADA"). On May 17, 2023, the County of San Diego opposed the motions, on the grounds that many of the factual allegations were incorrect and because the County was already in the process of renovating its policies and facilities.

On May 22, 2023, the parties and their experts (hereinafter the "Parties' Experts") met and conferred via Zoom for two hours. On May 24, 2023, the parties and their experts conducted an Early Neutral Evaluation before the Honorable David Leshner at the United States District Court for the Southern District of California in San Diego. On June 5, 8, 15, and 16, 2023, the parties conducted further settlement discussions via Zoom with Judge Leshner.

As a result of these discussions, the parties have reached the following agreements:

1.      Plaintiffs' motion for provisional class certification should be granted for settlement purposes only, per the terms of this Stipulation and [Proposed] Order, with certification of the Incarcerated People with Hearing and/or Mobility Disabilities subclass defined as "all qualified individuals with a hearing and/or mobility disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in the Jail."

2.      Showers:  The parties agree that some of the showers at Central Jail need

2

Case No. 3:20-cv-00406-AJB-DDL

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION
POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

to be modified to comply with the ADA. The Parties' Experts agree that compliant showers must be constructed within some of the housing modules. Defendants have agreed to continue to explore an interim solution of portable accessible showers, but Plaintiffs acknowledge there may be no viable portable shower solution and that shower chairs may be the best interim solution.

3. **Toilets:** The Parties' Experts agree that some of the existing cells in *celled* housing units at Central Jail are too small to accommodate the required clear floor spaces required for turning, bed transfer and/or toilet transfer required by the ADA. The Parties' Experts agree that the toilets in the *dormitory* housing units require relatively minor modifications to comply with the ADA.

4. **Beds:** The Parties' Experts agree that triple bunks should not be used for housing of individuals with mobility disabilities. Plaintiffs acknowledge that Defendants' policy for bed assignments for people with mobility disabilities will be amended such that an existing middle bunk does not qualify as a lower bunk and clarifying that lower bunk/lower tier placement is required rather than recommended in certain situations. The parties have agreed that more information from the Sheriff's Department about the population of incarcerated people will be needed to determine the correct number of accessible cells and dorm beds needed for the population with mobility disabilities.

5. **Intake:** The parties agree that remedial measures are necessary to ensure accessibility for incarcerated people with mobility disabilities during intake screening and other intake processes, consistent with the ADA. The parties have agreed that more information from the Sheriff's Department about the use of holding cells, intake and Jail population data, and intake/housing procedures would inform consideration of appropriate remedial measures for intake.

6. **Sign Language Interpreters:** The Parties' Experts agree that Defendants must revise and are in the process of revising their disability policies, and develop and implement processes to evaluate, document, and track incarcerated people with

3

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

disabilities' primary method of communication as well as to provide effective
communication to incarcerated people whose primary method of communication is
Sign Language, consistent with the requirements of the ADA.

       7.     Within sixty days of the Court approving this Stipulation and [Proposed]
Order, Defendants shall develop and provide to Plaintiffs a plan to remedy the
accessibility and effective communication issues identified in Plaintiffs' Motions,
which shall include, at a minimum, the following elements:

       a.     For incarcerated people with hearing disabilities at San Diego
County jail facilities:

       i.     Defendants will provide Sign Language Interpretation via
in person (or remote technology as appropriate) to all incarcerated people with
hearing disabilities who use Sign Language Interpretation as their primary means of
communication for all medical and mental health encounters, booking, classification
proceedings, available structured programming (e.g., classes, religious services,
etc.), investigative purposes, and disciplinary proceedings.

       ii.     During booking, Defendants will evaluate every person to
determine whether they have a hearing or speaking disability and, if so, the person's
primary method of communication (*e.g.*, sign language, written notes, hearing aids,
etc.).  In determining a person's primary method of communication, Defendants
must ensure that the incarcerated person is assessed by a nurse and must give
deference to the preference of the incarcerated person.  Defendants will then
document that method of communication and require that their staff and contractors
use that method as appropriate when interacting with the incarcerated person during
all medical and mental health encounters, booking, classification proceedings,
available structured programming (e.g., classes, religious services, etc.),
investigative processes, and disciplinary proceedings.

       iii.     Defendants will provide access to Sign Language
Interpretation services at all San Diego County jail facilities that house people with

1 hearing disabilities who use Sign Language Interpretation as their primary means of

2 communication, including with a telecommunication service provider, videophones,

3 VRS technology, and in-person Sign Language Interpretation, as appropriate to

4 ensure effective communication;

5        iv. Defendants will track disability-related effective

6 communication needs, including as to Sign Language Interpretation, through its San

7 Diego County jail management systems; and

8        v. These changes will be incorporated into policy and

9 Defendants will train all deputies, health care staff, and other relevant staff to follow

10 the policy.

11    b. For incarcerated people with mobility disabilities at San Diego

12 Central Jail:

13       i. Defendants will ensure that incarcerated people with

14 mobility disabilities are housed in accessible facilities, based on their accessibility

15 needs, including:

16        (1) No person with a mobility disability using a wheelchair

17          will be assigned to any bed in a triple bunk;

18        (2) No person with a mobility disability will be assigned to

19          the top bed of a triple bunk;

20        (3) Anyone assigned by medical to a lower bunk/lower tier

21          will be assigned to a single or bottom bunk;

22        (4) People with mobility disabilities will be assigned to

23          accessible housing, based on their accessibility needs,

24          which may include accessible beds and clearance space;

25        (5) People with mobility disabilities will be provided

26          accessible toileting, based on their accessibility needs,

27          which if appropriate shall have 2010 ADAS-compliant

28          grab bars and other features; and

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION
POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

(6)     People with mobility disabilities will be provided accessible showers, based on their accessibility needs which if appropriate shall have 2010 ADAS-compliant grab bars and shower chairs.

ii.     Defendants' remedial plan will identify each element in each housing unit that they will renovate and any other remedial measures to be taken, as well as the maximum number of incarcerated people with disabilities that can be safely housed in each unit. This portion of Defendants' plan will include staged deadlines for completion of renovations, with at least 25 accessible beds and toileting, which may be located in dormitory housing, becoming available as soon as possible and no later than 90 days from the date of this Stipulation and [Proposed] Order. As noted above, shower chairs will be provided as an interim solution. All renovations and changes required to make accessible housing available to all incarcerated people with mobility disabilities that require ADA compliant housing shall be completed within eighteen (18) months of the date of this Stipulation and [Proposed] Order. This does not include modifications to MOB, PSU, OP Step Down and JBCT as identified below.

iii.     Defendants' plan must include accessible and safe housing for people with mobility disabilities throughout their incarceration, including accessible cells during the intake and booking process within eighteen (18) months of the date of this Stipulation and [Proposed] Order. The plan to achieve compliance in PSU, OP Step Down and JBCT must include sufficient accessible and safe housing for people with mobility disabilities throughout their incarceration as soon as possible and not later than three years of the date of this Stipulation and [Proposed] Order. Defendants' plan must include interim accommodations made as accessible as feasible for those in these specialized units. The 3% Defendants plan to provide will be determined at the time that construction begins on this second phase.

iv.     Defendants' plan will ensure that during booking, and at

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION
POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

the request of any incarcerated person, Defendants will evaluate every person to determine whether they have a mobility disability and, if so, what accessibility features and accommodations each person requires. Defendants must then document those accommodations and ensure that the incarcerated person is housed accessibly with their accommodations.

v. These changes will be incorporated into policy and Defendants will train all deputies, health care staff, and other relevant staff to follow the policy.

c. To the extent that any necessary remedial measures regarding physical plant changes will require an extended period of time (e.g., more than 6 months), Defendants' plan will include interim measures that mitigate significant safety issues for incarcerated people with disabilities as related to beds, showers, and toilets/lavatories, along with the plan for achieving full compliance.

8. Within fifteen (15) days of Plaintiffs' receipt of Defendants' proposed plan, Plaintiffs will provide feedback (if any) to the proposed plan as to necessary modifications. Within fifteen (15) days of Defendants' receipt of Plaintiffs' feedback, the parties and the Parties' Experts will confer to address any concerns or disputes.

9. Within fifteen (15) days of the above-mentioned meet and confer, Defendants will submit their plan (with any modifications) to the Court. Plaintiffs will submit to the Court objections (if any) to the proposed plan as to necessary modifications within fifteen (15) days of Defendants' submission.

10. The Court thereafter shall enter an Order adopting the plan, as revised (if at all) by the Court, in consideration of Plaintiffs' objections.

11. Within fifteen (15) days after the Court issues the Order adopting the plan, the parties will agree on a qualified independent expert (or experts). The independent expert(s) will work with Defendants to ensure timely and appropriate implementation of the plan. The independent expert(s) will issue a quarterly report

7

to counsel for Plaintiffs and Defendants addressing Defendants' progress toward implementation of the plan. Defendants will pay reasonable fees for work performed by the independent expert(s) at Defendants' request and as required to confirm compliance. If Plaintiffs expect to require the independent expert to expend time that would be in excess of $1000 per quarter they shall first meet and confer with defendants and the issue may be brought to Judge Leshner.

12. After the Court issues the Order adopting the plan, Plaintiffs shall be allowed access to relevant documents and records in Defendants' custody and control relevant to the provision of Sign Language Interpretation to incarcerated people with hearing disabilities.

13. Within ninety (90) days of this Order, and for the twelve months following entry of the Order adopting Defendants' plan, Defendants must, on a monthly basis, provide daily housing rosters for the preceding month to the Court and Plaintiffs and marked as Attorney's Eyes Only, reflecting the disability needs of every person incarcerated at Central Jail who have been identified as having a mobility or hearing disability, including information sufficient to describe their mobility disability (if any), hearing disability (if any), effective communication needs (if any), housing unit, bed assignment (including top, middle, or lower bunk), and whether the person's cell or housing unit has 2010 ADAS-compliant toilet grab bars, shower grab bars, and shower seat. Housing does not include intake and holding.

14. Four months after the Court issues the Order adopting the plan, Plaintiffs shall be allowed to inspect with their experts any renovations completed by Defendants at the Central Jail to ascertain whether Defendants have adequately modified their housing for people with mobility disabilities per this order. Plaintiffs may conduct a second inspection of the Central Jail eighteen (18) months after the Court issues the Order adopting the plan.

15. Eighteen (18) months after the Court issues the Order adopting the

8

Case No. 3:20-cv-00406-AJB-DDL

plan, the independent expert(s) will assess whether Defendants have implemented their plan adequately to address the deficiencies identified by the Parties' Experts as part of the eighteen (18) month plan.  All components of Defendants' plan determined to be adequately implemented will not be subject to further inspection by Plaintiffs or the independent expert(s).  Inspections may, however, continue if and as necessary for determining whether Defendants have adequately implemented any other components of this or any other Court-ordered remedial plan.

16.     If, following a finding by the independent expert(s) that one or more components of Defendants' plan has been adequately implemented, Plaintiffs form the good faith belief that Defendants are no longer adequately implementing the component(s) of the plan, Plaintiffs will promptly so notify Defendants in writing and present a summary of the evidence upon which such a belief is based.  Within 30 days thereafter, Defendants shall serve a written response stating whether they agree or disagree with Plaintiffs' position.  In the event that Defendants agree, monitoring by the qualified independent expert(s) and Plaintiffs shall resume until adequate implementation is again established.  In the event Defendants disagree, the parties shall present their positions in writing to the qualified independent expert(s).  The qualified independent expert(s) will, within 30 days, issue a written decision regarding whether to resume monitoring of the remedial plan component(s) at issue.

### Dispute Resolution

17.     Any party may initiate the dispute resolution process with respect to any matter covered by this Stipulation and [Proposed] Order by providing written notice of a dispute ("Dispute Notice").

18.     Following service of the Dispute Notice, the parties shall undertake good faith negotiations at such times and places as they deem sufficient in an effort to resolve the dispute informally between them.  If, within 30 days after service of the Dispute Notice, the parties have failed to resolve the dispute, either party may request that the qualified independent expert(s) most knowledgeable in the subject

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

matter of the dispute be permitted to evaluate the issue in dispute and prepare a report. The qualified independent expert(s) must provide the report regarding the area of disagreement to the parties within 30 days of the request.

19. In the event the parties' good faith attempt to resolve the dispute informally proves unsuccessful, the parties shall next seek the assistance, advice, and/or guidance of Magistrate Judge David Leshner. Any party may request that a settlement conference be scheduled within 30 days of the Dispute Notice, unless the parties mutually agree upon an alternative schedule.

20. With the exception of any report prepared by the expert(s), as described above, and any notice that negotiations are concluded, nothing said and no document prepared in connection with the Dispute Resolution proceedings shall be offered in evidence in any subsequent judicial proceeding in this case.

21. This Stipulation and [Proposed] Order will resolve only the issues raised in Plaintiffs' Motions. Plaintiffs expressly reserve all rights to pursue the legal claims and any necessary relief as to all other issues in the operative complaint.

IT IS SO STIPULATED.

Respectfully submitted,

DATED: June 20, 2023     ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Gay C. Grunfeld*
    Gay C. Grunfeld

Attorneys for Plaintiffs

DATED: June 20, 2023     BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ Elizabeth M. Pappy*
    Elizabeth M. Pappy

Attorneys for Defendants

The Court, having reviewed the above Stipulation of the parties, as well as the pleadings in support and opposition to Plaintiffs' Motions, and good cause appearing, hereby issues the following Order:

1.     Defendants shall take the actions described above in the timeframes listed above.  The Court further adopts the findings above and directs the parties to follow the procedures and timelines set forth above.

2.     These remedies are all consistent with the Prison Litigation Reform Act's requirement that the Court's orders be narrowly drawn, extend no further than necessary to correct the violation of a federal right, and be the least intrusive means necessary to correct the violation.  *See* 18 U.S.C. § 3626(a)(1)(A).

3.     The Court provisionally certifies a Subclass of all qualified individuals with a hearing and/or mobility disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (i), and who are now, or will be in the future, incarcerated in all San Diego County Jail facilities.  The Court appoints Plaintiffs as the provisional class representatives for the Subclass.  The Court appoints Plaintiffs' counsel—Gay Grunfeld and Van Swearingen of Rosen Bien Galvan & Grunfeld LLP, Aaron Fischer of Law Office of Aaron J. Fischer, and Christopher Young of DLA Piper LLP—as provisional class counsel.  Fed. R. Civ. P. 23(g)(1) and (4).

4.     This Order shall apply to Defendants, their agents, contractors, employees, successors in office, and all persons with knowledge of it.  No person who has notice of this injunction shall fail to comply with it, nor shall any person subvert the injunction by any sham, indirection, or other artifice.

/ / /

/ / /

/ / /

/ / /

/ / /

11

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

5.    The bond requirement is waived.

6.    The Court shall retain jurisdiction to enforce the terms of this Order.

IT IS SO ORDERED.

Dated:  June 21, 2023

Hon. Anthony J. Battaglia
United States District Judge

JOINT MOTION AND ORDER RE ACCESSIBILITY AT CENTRAL JAIL, EFFECTIVE COMMUNICATION
POLICY AND PRACTICE, AND PROVISIONAL CLASS CERTIFICATION

# EXHIBIT B

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                 SOUTHERN DISTRICT OF CALIFORNIA
10
11   DARRYL DUNSMORE, ANDREE            Case No.:  20-cv-00406-AJB-DDL
     ANDRADE, ERNEST
12   ARCHULETA, JAMES CLARK,            **ORDER GRANTING JOINT MOTION**
13   ANTHONY EDWARDS, LISA              **FOR CLASS CERTIFICATION AND**
     LANDERS, REANNA LEVY, JOSUE        **APPROVAL OF PROPOSED CLASS**
14   LOPEZ, CHRISTOPHER NELSON,         **ACTION NOTICE PLAN**
     CHRISTOPHER NORWOOD, JESSE
15   OLIVARES, GUSTAVO SEPULVEDA,
16   MICHAEL TAYLOR, and LAURA          **(Doc. No. 423)**
     ZOERNER, on behalf of themselves and
17   all others similarly situated,
18                         Plaintiffs,
19   v.
20   SAN DIEGO COUNTY SHERIFF'S
21   DEPARTMENT, COUNTY OF SAN
     DIEGO, SAN DIEGO COUNTY
22   PROBATION DEPARTMENT, and
     DOES 1 to 20, inclusive,
23                         Defendants.
24
25
26       Presently pending before the Court is Plaintiffs Darryl Dunsmore, Andree Andrade,
27   Ernest Archuleta, James Clark, Anthony Edwards, Lisa Landers, Reanna Levy, Josue
28   Lopez, Christopher Nelson, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda,

1

1  Michael Taylor, and Laura Zoerner (collectively, "Plaintiffs") and Defendants San Diego

2  County Sheriff's Department, County of San Diego, and San Diego County Probation

3  Department (collectively, "Defendants") joint motion for class certification and for

4  approval of their proposed class notice plan. (Doc. No. 423.) For the reasons set forth

5  below, the motion is **GRANTED**.

6  **I.    BACKGROUND**

7         The facts of this case have been recited in previous orders. (*See* Doc. No. 219.)

8  Plaintiffs are current or former inmates of San Diego County Jail facilities (the "Jail"),

9  operated by Defendants San Diego County Sheriff's Department and the County of San

10  Diego. Plaintiffs bring this action on behalf of "themselves and the approximately 4,000

11  incarcerated people who are similarly situated on any given day" to "remedy the dangerous,

12  discriminatory, and unconstitutional conditions in the Jail." (Third Amended Complaint

13  ("TAC"), Doc. No. 231, ¶ 4.) Specifically, Plaintiffs contend Defendants' policies and

14  practices contribute to the high death rates in the Jail, which "has for years exceeded the

15  rates nationally and in other large California jails, [and] it reached chilling heights in 2021

16  when 18 people died, amounting to a death rate of 458 incarcerated people per 100,000."

17  (*Id.* ¶ 1.)

18         The Parties now jointly seek class certification pursuant to Rule 23(a) and (b)(2) of

19  the Federal Rules of Civil Procedure. (Doc. No. 423.) In particular, the parties seek to

20  certify the following class of individuals pursuant to Federal Rule of Civil Procedure

21  23(b)(2):

22         All adults who are now, or will be in the future, incarcerated in any of the San
       Diego County Jail facilities ("Incarcerated People Class").
23

24  (*Id.* at 9.)  The Parties also seek certification of three subclasses under Federal Rule of Civil

25  Procedure 23(b)(2), specifically:

26         All adults who have a disability, as that term is defined in 42 U.S.C. § 12102,
       29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m),
27       and who are now, or will be in the future, incarcerated in any of the San Diego
       County Jail facilities ("Incarcerated People with Disabilities Subclass");
28

2

All adults who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities and have private counsel or are pursuing state or federal claims on a pro per basis ("Incarcerated People with Private Counsel or Pro Per Claims Subclass"); and

All Black and Latinx adults who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities ("Incarcerated Black and Latinx Persons Subclass").

(*Id.*)

The Parties also propose a class notice plan to ensure that all members of the class and subclasses are individually identified. (*Id.* at 24.) The Parties have agreed to the form and substance of the notice, and request the Court to order copies of the notice to be posted throughout the Jails in English and Spanish, and that Defendant Sheriff's Department read the Class Notice to individuals who are illiterate or have a disability that may affect their ability to read the Notice. (*Id.*) In addition, the Parties stipulate and ask the Court to order that copies of the TAC be provided by Defendant Sheriff's Department to class members upon request. (*Id.*)

## II.    LEGAL STANDARD

Class actions are the "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To depart from this rule, the "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (citation and internal quotation marks omitted). The proponent of class treatment, usually the plaintiff, bears the burden of demonstrating the propriety of class certification. *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014). This burden requires the plaintiff to provide sufficient facts to satisfy the four requirements of Rule 23(a) and at least one subsection of Rule 23(b) of the Federal Rules of Civil Procedure. *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

3

Under Rule 23(a), a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy. "If the court finds the action meets the requirements of Rule 23(a), the court then considers whether the class is maintainable under Rule 23(b)." *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 451 (S.D. Cal. 2014).

In the instant matter, Plaintiffs seek certification pursuant to Rule 23(b)(2) for injunctive and declaratory relief classes. Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

When entertaining a class certification motion, the court is obligated to conduct a rigorous analysis of whether the requirements of Rule 23 are satisfied. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). While the court must not go on a freewheeling inquiry into the merits of the plaintiff's claims, "[t]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (quoting *Falcon*, 457 U.S. at 160). Accordingly, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). The court must therefore limit its inquiry "to those aspects relevant to making the certification decision on an informed basis." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 499 (S.D. Cal. 2013).

## III.   DISCUSSION

### A.   Rule 23(a) Requirements

The Court will first start with an analysis of whether the Parties have satisfied the Rule 23(a) elements of numerosity, commonality, typicality, and adequacy.

### 1. Numerosity

Under Rule 23(a)(1), a lawsuit may only proceed via a class if the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Parties stipulate that between October 1, 2022 and September 30, 2023, the average daily population of the Jails was 3,946 individuals. (Joint Stipulation of Facts ("Stip."), Doc. No. 423-1, ¶ 1.) During this timeframe, an average of 1,363 of those individuals received psychotropic medication for mental health disabilities. (*Id.*) Additionally, over 60% of the incarcerated individuals at the Jails were Black or Latinx. (*Id.*) Accordingly, the Court finds this requirement has been satisfied. *See Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-0964-GPC-DHB, 2013 WL 4774763, at *6 (S.D. Cal. Sept. 5, 2013) (finding the numerosity requirement satisfied where the class was "indisputably in the thousands" and the defendants stipulated to the numerosity requirement).

### 2. Commonality

The commonality factor "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 350 (quoting *Falcon*, 457 U.S. at 157). The "claims must depend upon a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution . . . ." *Id.* For purposes of Rule 23(a)(2), even a single common question will suffice. *Id.* at 359.

In a civil-rights suit, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005). "In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Id.*

The Parties assert commonality is satisfied because all putative class members are

5

subject to the same policies and practices and suffered the same injuries. (Doc. No. 423 at 17–18.) Specifically, the Parties contend the proposed class and subclasses share, at minimum, the following common questions:

- Whether Defendants fail to provide minimally adequate medical care to incarcerated people in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 7 and 17, of the California Constitution;

- Whether Defendants fail to provide minimally adequate mental health care to incarcerated people in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 7 and 17, of the California Constitution;

- Whether Defendants fail to make their programs, services, and activities available to persons with disabilities, and otherwise discriminating against persons with disabilities, in violation of the ADA, 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and California Government Code Section 11135;

- Whether Defendants impose filthy, unhealthy, and dangerous conditions of confinement on incarcerated people in violation of the Article 1, Sections 7 and 17, of the California Constitution;

- Whether Defendants fail to protect incarcerated people from violence and injury in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 7 and 17, of the California Constitution;

- Whether Defendants fail to provide minimally adequate dental care to incarcerated people in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 7 and 17, of the California Constitution;

- Whether Defendants fail to ensure incarcerated people have access to counsel and the courts in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 7 and 15 of the California Constitution; and

- Whether Defendants disproportionately incarcerate people based on race, ethnicity,

6

and/or national original in violation of California Government Code Section 11135. (*Id.*)

The Court agrees with the Parties that there are questions of law and fact common to the proposed class members. Accordingly, the Court finds Rule 23(a)(2) satisfied.

### 3.  Typicality

Rule 23(a)(3)'s typicality requirement provides that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (quoting *E. Tex. Motor Freight Sys.*, 431 U.S. at 403) (internal quotation marks omitted). The purpose of the requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[T]he typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal citations omitted). However, a court should not certify a class if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon*, 976 F.2d at 508 (internal quotation marks and citation omitted).

The Court finds that Plaintiffs' claims are typical of the class and subclasses. Plaintiffs each allege they have experienced the same or similar harm, rely on the same legal theories, and seek the same injunctive relief that is broadly applicable to all members of the proposed class and subclasses. (*See* Doc. No. 423 at 19–21.) All of the Named Plaintiffs have been or are currently incarcerated in the Jails. As to the Plaintiffs who have been transferred or released from the Jails, the record contains compelling evidence they likely will be reincarcerated at the Jails, particularly through being rearrested, or, if they are currently incarcerated in state prison, housed at the Jails while out-to-court from prison for resentencing, habeas petitions, or to testify in another case. (*Id.* at 19.) Accordingly, the Court finds the Parties have satisfied typicality.

### 4.  Adequacy

Rule 23(a)(4) requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing this requirement, courts within the Ninth Circuit apply a two-part test, asking the following questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members? and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

The Parties assert Plaintiffs and their counsel do not have any conflicts with the class or subclasses, and agree to protect the rights of all proposed class members. (Doc. No. 423 at 22.) Additionally, Plaintiffs' counsel ensure they will fairly and adequately protect the interests of the class and subclasses, as they have performed extensive work investigating the claims in this action and are well-versed in prisoners' rights, disability law, and class actions. (*Id.* at 22–23.) Based on the foregoing, the Court finds Plaintiffs and their counsel are adequate class representatives.

### B.     Rule 23(b)(2) Requirements

If a proposed class satisfies Rule 23(a)'s requirements, then the proposed class must also qualify as one of the types of class actions Rule 23(b) identifies. Fed. R. Civ. P. 23(b); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). Plaintiffs seek certification of the class and subclasses pursuant to Rule 23(b)(2). (Doc. No. 423 at 23.)

Rule 23(b)(2) permits class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Ninth Circuit has held that "'it is sufficient' to meet the requirements of Rule 23(b)(2) [when] 'class members complain of a pattern or practice that is generally applicable to the class as a whole.'" *Rodriguez*, 591 F.3d at 1125 (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)). "The rule does not require [the Court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Id.*; *see also Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is the indivisible

nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.") (internal quotation marks omitted).

The Court finds that Rule 23(b)(2)'s requirements are plainly met. Plaintiffs seek broad declaratory and injunctive relief—system-wide improvements in Defendants' policies, procedures, and programs in the Jails—on behalf of a large class and subclasses of incarcerated individuals. (TAC ¶¶ 425, 433.) All members of the classes are allegedly exposed to a substantial risk of harm due to Defendants' alleged policies and practices. The requested relief would benefit the Named Plaintiffs as well as all members of the proposed class and subclasses in the same manner in a single stroke. *See Parsons v. Ryan*, 754 F.3d 657, 689 (9th Cir. 2014) ("[E]very inmate in the proposed class is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in . . . policy and practice.").

## C. Approval of Proposed Class Notice Plan

"[I]n a Rule 23(b)(2) class action, notice may be given but is not required, and there is no requirement that a class member be given an opportunity to exclude himself or herself from the lawsuit." *Lyon v. U.S. Immigr. & Customs Enf't*, 300 F.R.D. 628, 635 (N.D. Cal. 2014). When certifying a class under Rule 23(b)(2), "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). Notice should be given to class members in the "best" form "that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the Parties have agreed to the form and substance of the notice to all members of the class and subclass, attached as Exhibit F to the Grunfeld Declaration, (Doc. No. 423-2 at 41–42). To ensure that all members of the class be individually identified, the Parties ask the Court to order that copies of the notice be posted throughout the Jails in English and Spanish, and that Defendant Sheriff's Department shall read the Class Notice to individuals who are illiterate or have a disability that may affect their ability to read the

9

Notice. In addition, the Parties ask the Court to order that copies of the TAC shall be provided by Defendant Sheriff's Department to class members upon request.

Because 23(b)(2) classes are being certified, notice to the classes are not required but is appropriate here. *See* Fed. R. Civ. P. 23(c)(2) (providing that, "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class"). The Parties have reached an agreement that notice should be given, what the terms of that notice should be, and how the notice should be distributed to the classes. As such, the Parties' request for approval of proposed class notice plan is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby:

1. **GRANTS** the Parties' joint motion for class certification. The Court certifies a class consisting of:

> All adults who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities ("Incarcerated People Class").

The Court also certifies the following three subclasses:

> All adults who have a disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities ("Incarcerated People with Disabilities Subclass");

> All adults who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities and have private counsel or are pursuing state or federal claims on a pro per basis ("Incarcerated People with Private Counsel or Pro Per Claims Subclass"); and

> All Black and Latinx adults who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities ("Incarcerated Black and Latinx Persons Subclass").

2. **GRANTS** the Parties' request to appoint Named Plaintiffs as class representatives;

3. **GRANTS** the Parties' request to appoint Rosen Bien Galvan & Grunfeld

20-cv-00406-AJB-DDL

LLP, the Law Office of Aaron J. Fischer, and DLA Piper LLP (US) as class counsel; and

4.   **GRANTS** the Parties' request for approval of the proposed class notice plan. The Court **ORDERS** the following:

- Copies of the notice shall be posted throughout the Jails in English and Spanish;
- Defendant Sheriff's Department shall read the Class Notice to individuals who are illiterate or have a disability that may affect their ability to read the Notice
- Copies of the Third Amended Complaint shall be provided by Defendant Sheriff's Department to class members upon request.

**IT IS SO ORDERED.**

Dated:  November 3, 2023

Hon. Anthony J. Battaglia
United States District Judge

20-cv-00406-AJB-DDL