1              UNITED STATES DISTRICT COURT

2           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3   DARRYL DUNSMORE, ERNEST          )
    ARCHULETA, ANTHONY EDWARDS, REANNA)
4   LEVY, JOSUE LOPEZ, CHRISTOPHER   )
    NELSON, CHRISTOPHER NORWOOD, and )
5   LAURA ZOERNER, on behalf of      )
    themselves and all others        )
6   similarly situated,              )
                                     )   No. 20-CV-0406-AJB-DDL
7            Plaintiffs,             )
                                     )
8   V.                               )   December 5, 2024
                                     )
9   SAN DIEGO COUNTY SHERIFF'S       )
    DEPARTMENT; COUNTY OF SAN DIEGO; )
10  CORRECTIONAL HEALTHCARE PARTNERS,)
    INC.; LIBERTY HEALTHCARE, INC.;  )
11  MID-AMERICA HEALTH, INC.; LOGAN  )
    HAAK, M.D., INC.; SAN DIEGO COUNTY)
12  PROBATION DEPARTMENT, and DOES 1 )
    to 20 inclusive,                 )
13                                   )   Courtroom 14A
             Defendants.             )
14  _____)    San Diego, California

15

    TRANSCRIPT OF DIGITALLY RECORDED VIDEOCONFERENCED PROCEEDINGS
16                   (Discovery Conference)

17

18      BEFORE THE HONORABLE DAVID D. LESHNER, MAGISTRATE JUDGE

19

20

21

22

23  COURT REPORTER:        AMANDA M. LeGORE
                           RDR, CRR, CRC, FCRR, CACSR
24                         U.S. District Court
                           333 West Broadway, Suite 420
25                         San Diego, CA 92101
                           amanda_legore@casd.uscourts.gov

2

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:        ERIC MONEK ANDERSON
                                Rosen Bien Galvan & Grunfeld LLP
 3                              101 Mission Street, Sixth Floor
                                San Francisco, CA  94105-1738
 4                              (415)433-6830
                                emonekanderson@rbgg.com
 5

 6                              AARON FISCHER
                                Law Offices of Aaron Fischer
 7                              1400 Shattuck Avenue, Suite 12 - #344
                                Berkeley, CA  94709
 8                              (510)806-7366
                                ajf@aaronfischerlaw.com
 9

10   FOR DEFENDANT COUNTY OF
     SAN DIEGO:                 ELIZABETH PAPPY
11                              Burke Williams & Sorenson LLP
                                501 W. Broadway, Suite 1600
12                              San Diego, CA  92101
                                (619)814-5800
13                              epappy@@bwslaw.com

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Thursday, December 5, 2024; 11:00 a.m.)

2

3                    P R O C E E D I N G S

4

5          THE COURT:  All right.  Good morning, folks.  We're on

6    the record in Dunsmore, et al., versus San Diego County

7    Sheriff's Department, et al.  Case Number 20-CV-406, for a

8    motion hearing.

9          May I have appearances with counsel, beginning with

10   plaintiffs' counsel.

11         ATTORNEY ANDERSON:  Good morning, your Honor.  Eric

12   Anderson from Rosen, Bien, Galvan & Grunfeld, for plaintiffs in

13   the certified classes and subclasses.  And with me is my

14   co-counsel, Aaron Fisher.  I'll be arguing today.

15         THE COURT:  Great.  Thank you.  Good morning to you

16   both.

17         ATTORNEY PAPPY:  Good morning, your Honor.  Elizabeth

18   Pappy arguing on behalf of the defendants in this matter.

19         THE COURT:  Okay.  Good morning to you as well,

20   Ms. Pappy.

21         Good to see everyone.  I hope everyone had a good

22   Thanksgiving.  And I have a couple of questions, at the outset.

23         Just for the record, we are here for a hearing on the

24   defendants' motion to maintain confidentiality, which is Docket

25   Number 724.  I've received the motion, the plaintiffs'

1    opposition, and the parties' joint status report, which

2    contains a revised chart of the disputed categories of

3    documents.  I did review the chart, as well as the disputed

4    categories or exemplars of documents, I should say.  And that

5    was all helpful.  So I appreciate the parties' time and effort

6    in putting that together.

7        I know there are a number of different items that are

8    disputed, Ms. Pappy.  But it does strike me that one of the key

9    items that appears repeatedly in the parties' chart is

10   redaction of county employees' names.  And I understand the

11   reason why the county would want to redact the names.

12       It is -- as you probably could tell from the minute

13   order I issued yesterday -- challenging for me to square that

14   desire and understanding the individual interests with the test

15   that the Ninth Circuit applied in the *Roman Catholic Archbishop*

16   case.  And specifically, you know, the precise analysis as

17   to -- is it Father D and Father M, and whether particularized

18   harm had been shown by those two individuals.

19       So I would welcome you to tell me why your request to

20   redact the county names, you know, fits within the framework of

21   that case and other Ninth Circuit cases talking about the need

22   for a showing of particularized harm.

23       ATTORNEY PAPPY:  Of course, your Honor.

24       So, first of all, I read that case.  I saw your order,

25   and I read that case.  And -- and I want to present argument

1    going in line with the analysis under *Archbishop*.

2        First of all*, Archbishop* dealt with one priest who was

3    the accused, and the other who was -- from what I could glean

4    from the case, a -- somebody who was a witness or may have

5    known about but wasn't actually the participant in the alleged

6    sexual abuse.  And the case makes clear that you have to

7    analyze it based upon the privacy right that's implicated, if

8    there is a privacy right implicated.  And so the -- while

9    *Archbishop* provides the standard, it doesn't discuss what the

10   issue is in this case.

11       And so I want to make clear to the Court -- and I

12   think the Court knows and plaintiffs' counsel certainly

13   knows -- that the defendants have long expressed concerns about

14   disparaging and harassing employees who were just doing their

15   jobs.  They're not named as parties.  They're not subject to

16   allegations of any personal wrongdoing.  And the disclosure of

17   their names has nothing to do with the need for public

18   knowledge or -- or -- or need for transparency that the

19   plaintiffs are advocating.  It's the substance of those emails.

20       The Ninth Circuit actually specifically recognizes a

21   privacy right in the mere disclosure of their names.  And --

22   and it's not a general rule.  It is specific to situations

23   where -- where they're going to be subject to embarrassment,

24   harassment, and risk of mistreatment.

25       I refer to the -- the Court to the case of *Cameranesi*.

6

1    It is 856 -- and I'm happy to send these in an email

2    afterwards.  But it's 856 F.3d 626.  And that case actually

3    relied on another case cited therein called *Kelly*.  And it

4    talked about the fact in this -- in an analogous situation,

5    where the employees names were not -- it wasn't -- the

6    employees weren't being accused of wrongdoing.  They weren't

7    directing witnesses to anything.  They were employees of a very

8    large -- of a very large employer.  In this case, the United

9    States Department of Defense.

10         And the Court described their rights as nontrivial

11   privacy rights.  And they were -- they were analyzing a FOIA

12   request.

13         And I know that the plaintiffs want to argue that --

14   that, well, this isn't a FOIA request.  But it is, really, the

15   same analysis.  Because these documents were -- were permitted

16   to be -- and I think appropriately, as you'll see in these

17   cases -- produced under the protective order.

18         The question, then, is whether they should be made

19   known to the public as in a FOIA request or as in a California

20   Public Records Act request.

21         And the Court, in that case, found the disclosure

22   implicates personal privacy if it affects either the

23   individual's control of information concerning his or her

24   person, or constitutes public intrusion long deemed

25   impermissible under the common law and in our cultural

1   traditions.  And the Court requires only a de minimis showing.

2        I would have a different position if these folks were

3   individually being accused of wrongdoing.  Betty Jones, John

4   Smith did something wrong.  This supports our case.  This

5   specific email that John Smith sent supports our case.  But

6   that's not what you've got here.  You've got John Smith and

7   Betty Jones sending emails in the course of their daily work.

8        Now, the plaintiffs clearly have an issue with the way

9   the county conducts its worth -- its work with the way that

10  John and Betty are -- are -- you know, the policies that

11  they're following, the procedures that they're following.  But

12  there is no criticism or attack on my fake employees john and

13  Betty.

14       I -- I mention to you -- and it's a direct quote --

15  the disclosures that would subject individuals to possible

16  embarrassment, harassment, or the risk of miss -- mistreatment

17  constitute that nontrivial intrusion into privacy.  And the

18  Court in Camera -- *Cameranesi* specifically referenced the fact

19  that employees have a privacy interest in avoiding

20  embarrassing -- embarrassment, shame, stigma, and harassment

21  that would arise from their public association with an incident

22  that includes media publication.  Which we all know that's

23  where this information is going.

24       The -- the -- I know it -- it's really a side note.

25  But, you know, the PRA is -- California Public Records Act is

1   analyzed under FOIA standards.  So the *Cameranesi* case was --

2   was analyzing FOIA.  But *Times Mirror Company*, which is at 53

3   Cal.3d 1325, says we in California, in analyzing California

4   Public Records Act in what should and should not be disclosed,

5   are going to rely on FOIA cases.

6          The second prong of the *Archbishop* -- the *Archbishop*

7   analysis is, okay, great.  Let's assume there is this privacy

8   right.  And the Court -- and that harm will result from the

9   disclosure.  Then it has to be balanced -- the Court has to

10  balance the public and private interest to decide whether

11  maintaining a protective order is necessary.

12         And the defendants advocate that remaining a

13  protective -- remaining the -- keeping the protective order in

14  place as to those names is what should be -- should happen

15  here.  Again, the substance of these emails is what's

16  important; not these individuals simply doing their jobs.

17         The balancing between employee names with reference to

18  particular emails and other documents plaintiffs want to make

19  public, which are entitled to privacy -- obviously -- under

20  federal law, as I pointed out; whether they're sworn

21  individuals or nonsworn -- I want to make a comment at the end

22  about sworn individuals.  And the balance should be in favor of

23  redaction.  Because the plaintiffs are not -- and the public is

24  not losing any transparency by not seeing the names of utterly

25  uninvolved individuals.  Yet those individuals potentially

1    subject themselves to harassment.

2         We know how a -- I'm not sure what the right word is.

3    But how the media has gone after the county, free speech.  Get

4    that.  But these people should not be subjected to that kind of

5    harassment, and there's no guarantees that people won't contact

6    them, that their neighbors won't see these things.  How these

7    things are going to be portrayed in the media, we have no idea.

8         If -- if what we've seen so far is any -- any

9    illustration or example of what we're going to foresee, then I

10   am concerned that these people are going to be harassed.

11        The -- whenever the plaintiffs have been asked about

12   whether it's their intent to provide the information in

13   newspapers, they won't answer the question.

14        They sidestep it -- sidestep it by simply referring to

15   the public in general.  And, thus, there is a very strong

16   indication that they will be giving this information to the

17   press.

18        There's also a strong indication that they will be

19   providing this information to other attorneys in other cases

20   that have been filed against the county for, significantly,

21   wrongful death.

22        And we have emails between the plaintiffs' counsel and

23   Julia Yoo, who was the attorney for Ms. Serna -- and it's clear

24   that that information is going to simply get filed in court

25   documents, less -- to me -- harmful than newspaper disclosure.

 1    But, nonetheless, it is out there.  And we know that the county

 2    and the jails are particularly being scrutinized at the current

 3    time.  And -- and I worry about these people.

 4          My final point is -- is -- is about sworn personnel

 5    specifically.  I have outlined in these moving papers -- and

 6    the Court has seen arguments in other papers -- about the

 7    overwhelming weight of authority in the Ninth Circuit that

 8    protects officer files and related documents.  And we've talked

 9    about personnel files.

10          These aren't personnel files, and I'm not suggesting

11    that they are.  But there is a clear indication -- both in the

12    state of California and federally -- to -- even if there are

13    investigations going on under Penal Code 832.7, there are still

14    things that -- that have to be redacted.  Personal contact

15    information.  Any family information.  It is not just a

16    wholesale, we're going to take their personnel file and we're

17    going to send it off for use however and whenever when somebody

18    wants to use it.

19          I point the Court to the case of *Macias versus City of

20    Clovis*.  It is an Eastern District case, which was actually

21    cited by *Greer*, by Magistrate Butcher.  And the cite for that

22    is 2015 Westlaw 7282841.  That is the *Macias* case.  The *Greer*

23    case, however, cites it.

24          And -- and the point of that *Macias* case and the

25    citation in the *Greer* case is that the point of protective

1    orders is to give plaintiffs discovery -- which is appropriate

2    for all of these documents, without these redactions -- but

3    recognizing the fact that not everything should be given to the

4    public.  And that there are good reasons to protect not only

5    nonsworn but sworn.  And with sworn, you have the additional --

6    you have the additional safety factor that, unfortunately, in

7    today's world, police officers, corrections officers get

8    attacked for no reason.

9         And -- and so with the sworn personnel names being in

10   these emails, again, not individually being accused of doing

11   anything wrong.  Just sending an email to someone and saying,

12   hey, please take note of this.  Or -- or -- there's been no

13   pointing, at least to me, in any meet-and-confer, that any of

14   these names are of names of people that are under suspicion of

15   doing wrongdoing.  They're just generic doing their job,

16   everyday type of emails.

17        And so, your Honor, what I -- what I finally want to

18   conclude with is just that you have to consider not only

19   when -- whether the party seeking protection has shown

20   particular -- particular -- particularized harm, which I

21   believe that the defendants have, but whether (inaudible due to

22   technical difficulties) interests.  And that's directly from,

23   obviously, *Archbishop*.

24        And taking the names out doesn't change what the

25   public gets to see.  And, really, the point of these

1   disclosures is what is the county talking about?  Not who's

2   saying it in doing their particular jobs.

3        THE COURT:  I appreciate your argument, Ms. Pappy.

4   Let me ask you a couple of questions.

5        *Cameranesi* involves a FOIA request, as you noted.  And

6   at issue there was one of the statutory exemptions for

7   providing information under FOIA of Title V United States Code

8   Section 552(b)(6).  Which, again, is a statutory exemption that

9   protects the disclosure of information where there would be a

10  clearly unwarranted invasion of personal privacy.

11       Do you have any authority for the proposition that

12  that statutory provision under FOIA -- or statutory exemption

13  under FOIA applies at all to the good cause analysis under Rule

14  26(c) that I am applying here; in that particularized harm

15  equates to an unwarranted invasion of personal privacy?

16       ATTORNEY PAPPY:  Yes.  I think you can look at the

17  *Archbishop* case.

18       First of all, the California Public Rights Act has the

19  same exemption.  Again, the California cases interpret based on

20  FOIA case law.  And the point of Camer -- *Cameranesi* is that

21  there is a recognized right of privacy.  It's not just a

22  recognized right of privacy under exemption 6.  They were

23  looking at FOIA exemption number 6 in that case.  But it is a

24  recognized right to privacy in the mere disclosure of their

25  name, describing them as nontrivial privacy interests.

1        That, to me, is the same and needs to be considered in

2    the good cause analysis under the *Archbishop* case.  And note --

3    if I'm not mistaken, because I was doing this all yesterday

4    afternoon.  The one priest -- the court overturned the trial

5    court's decision about the one priest who was -- I -- I sort of

6    took it that he was a witness and not necessarily somebody who

7    was being accused of sexual misconduct.

8        And it -- it -- the analysis, I think, of *Cameranesi*

9    applies equally.  And *Archbishop* shows us that not every person

10   that is tangentially involved -- in fact, I think that priest

11   was more involved, if you will, in the facts of that case than

12   these employees that we're talking about in the day-to-day

13   emails of the sheriff's department.

14       THE COURT:  No, I understand your point, Ms. Pappy.

15       As I read and do read the *Roman Catholic Archbishop*

16   case, the particularized harm in that case came from

17   declarations submitted by each of those two -- we'll call them

18   third-party briefs about the effect on their lives that release

19   of the case materials would have.

20       And that the Ninth Circuit found, based on that

21   particularized showing as to each of those two individuals,

22   that the bankruptcy court did not abuse its discretion in

23   finding that there was a sufficient showing of particularized

24   harm.  And then there -- thereafter -- because one of the

25   priests was retired, the Ninth Circuit held that his name could

14

1    be redacted because he wasn't interacting with the public.

2         But as to the other priest who was still actively

3    practicing, the public interests outweighed the private

4    interests and redactions were not appropriate.

5         And that's -- but I -- I appreciate your argument,

6    Ms. Pappy, but that's where I'm -- as you can tell, that's

7    where I'm struggling with this; understanding your point.  But

8    the need, under Ninth Circuit case law, to have a

9    particularized showing with respect to every document and

10   whether or not there is case law in this context that considers

11   a generalized right to privacy.  But I will read *Macias*.  And

12   I -- one more question for you.

13        How do I square your argument about Penal Code Section

14   832.7 with Penal Code Section 832.10, which, as the plaintiffs

15   point out -- I believe it is correctly -- that, you know, any

16   record essentially conduct -- relating to investigations

17   involving deaths in custodial settings shall not be

18   confidential.  That includes -- if you look at 832.10(c)(1).

19        Basically everything, with the exception of allowing

20   redactions for nonname PII -- you know, address, Social

21   Security numbers, telephone numbers.  Which I don't -- I don't

22   understand the plaintiffs to be requesting here.  They're

23   talking about the names.  Names that would be disclosed under a

24   Public Records Act request with respect to any investigation

25   involving a death in a custodial facility.

1          How do I -- how do I square that with your argument?

2          ATTORNEY PAPPY:  Well, first of all, it -- it -- I'm

3    talking about emails.  And what -- what they're talking

4    about -- I'm largely talking about emails.  Is -- because I

5    think that's the biggest category of things that -- that we're

6    arguing about in it terms of redacting employee's names.  But

7    you have to look back at 832.7 because there is a -- an

8    exclusion for disclosing where there's -- where multiple

9    officers are being investigated.  There is an exclusion that

10   you cannot disclose -- I thought I understand.  It's like one

11   of those things that you read, and you think you understand;

12   and then you don't understand it the second time you read it.

13         But it is (b)(5) that specifically excludes disclosure

14   where there is an investigation going on, to protect uninvolved

15   sworn personnel.  Meaning just witnesses.  That any aspect of

16   the investigation unrelated to anyone other than the officer

17   whose records are sought.  So just because my records are

18   sought doesn't mean that somebody else's records that may be

19   involved in the investigation -- because they were a witness --

20   that then you can't produce that person's records.

21         If somebody is a witness to an investigation, I

22   don't -- I mean, I -- they're -- or a witness not to an

23   investigation.  A witness to an event.  There is, I think, a

24   heightened -- I don't want to concede anything to the

25   plaintiffs.  But I'm not talking about hiding names, witnesses

16

1   in investigation reports.  I'm talking about, first of all,

2   witnesses who come forward as a part of an investigation.

3   There is a strong -- and if you look at 832.7(b)(5) -- need to

4   protect officers who come forward and provide investigative

5   information because they don't want their identifies disclosed

6   or nobody's ever going to come forward with information.

7        I mean, you essentially -- the plaintiffs shoot

8   themselves and their clients in the foot by trying to undermine

9   that confidentiality of officers that come forward with

10  information about investigations.

11       So I would have to know the specific document that

12  we're talking about.  But that, in my opinion, is one of the

13  problems with the meet-and-confer.  Was that there were so many

14  documents and no real effort to narrow it down to, look, in

15  this specific document, we just want to disclose this, this,

16  and this.

17       And so with many things in this case, it's hard for

18  the defendants to just take a huge pile of documents and then

19  pick one out and say, oh, yeah, well, this one is -- I agree

20  that this one should or shouldn't be.

21       So I -- I know I'm being a little vague but that's

22  because if we're talking about, again, people's names

23  associated that came forward with information in the

24  investigation but they're not the subject of the investigation,

25  I -- I don't -- those people should not -- names should not be

1    disclosed as they are contained in those documents.  That's

2    what we're talking about here.  Is whether they should be

3    disclosed, as contained in those documents, to the public.  Not

4    to plaintiffs' counsel.  To the public.  Because --

5              THE COURT:  I understand.

6              ATTORNEY PAPPY:  Because -- yeah.  If you left those

7    names out, officers aren't going to come forward.

8              THE COURT:  And what -- on the flip side is what the

9    plaintiffs say, and that is that -- the inability to

10   distinguish between someone who is just copied on an email and

11   someone who is coming forward with information in an

12   investigation where there may be particularized harm is caused

13   by the fact that all of the documents were designated as

14   confidential in the -- the first instance; and trying to sift

15   through them.

16             So I hear what you're saying, Ms. Pappy.

17             Let me turn to Mr. Anderson.

18             Let's begin with that last point.  Would you agree,

19   Mr. Anderson, that if they're -- if the materials at issue

20   contain a document where a deputy is -- hypothetical, of

21   course.  But a deputy is coming forward with information to

22   assist in an investigation, that -- that may -- that the

23   disclosure of that deputy's name may result in -- or support a

24   finding, I should say, of particularized harm sufficient to

25   justify -- not wholesale, including the document under the

18

1    protective order but, at the very least, redact that

2    individual's name?

3         ATTORNEY ANDERSON:  I think so, your Honor.  I -- and

4    we haven't taken a blanket position that all employee names

5    should be public.  As we pointed out in the chart, we agree

6    that under 832.7, the officer's name -- if they're involved in

7    disciplinary proceedings -- would be redacted.

8         If there's a showing of particularized harm in

9    specific instances, we're certainly open to understanding

10   those; to agreeing to redact or -- those names, if there is a

11   showing of harm.  But there's not been that showing.

12        And I want to respond to one point that Ms. Pappy made

13   about the -- this notion of speculation about people's names

14   being in the press.

15        So as we pointed out in our opposition brief and to

16   the attached examples, the sheriff's office, in response to

17   Public Records Act requests, requests release of many emails,

18   with employee names and work-related information, consistent

19   with the PRA statute.

20        Those documents were not only provided to us but

21   they're also available on the public PRA portal.  They've been

22   there for years.  To Ms. Pappy's point about the reporting by

23   the -- they've been reporting on issues at the jail for years.

24   And I'm not sure if there are any specific instances.  They're

25   certainly not extensive, as pointed out in the brief, of an

19

1    employee being dragged through the mud in this embarrassing

2    way.

3            So I don't -- it seems entirely speculative to me.    I

4    respect the concern, certainly.    But there's no evidence that

5    it is actually a concern in this instance.

6            And particularly given the fact that these public

7    documents have been in the record -- in the public record from

8    the PRA portal for years and years.    No evidence of harm.    That

9    makes it more speculative in this case.

10           THE COURT:    You propose to remove the confidentiality

11   designation from sheriff's department employee names.

12           Leaving aside email addresses and Social Security

13   numbers.    But employee names are -- are -- are fair game,

14   according -- as I understand the plaintiffs' position.    But you

15   take a contrary position with respect to the names of

16   incarcerated persons.

17           I'm not sure I understand the legal distinction,

18   unless you're simply saying none of it -- there's no showing as

19   a particularized harm as to anybody's name.    But we, the

20   plaintiffs, are willing to -- on our own -- redact incarcerated

21   person names from the materials before they're released to the

22   public.

23           ATTORNEY ANDERSON:    Certainly.    Well, there's case

24   law, as we cited in our brief, specifically saying that

25   employee -- public employee names are public.

1          THE COURT:  That's not really the question, is it?  I

2     mean, the question here is whether there's a showing of

3     particularized harm to an incarcerated person if they're --

4     I -- name is released.  I think that's -- I saw the cases you

5     talk about.  I hear you.  But it seems like it's a different

6     analogy.

7          Why is it -- if it's good for -- good enough for one,

8     why is it not good enough for the other?  Why do you draw that

9     distinction?

10          ATTORNEY ANDERSON:  Sure, your Honor.

11          Well, there is, unfortunately, a stigma associated

12     with being incarcerated in a jail or prison.  It could harm a

13     person's employment prospects.  They may not -- they may have

14     family or friends who don't know that they've been

15     incarcerated.  So -- and, also, many of these instances, these

16     are sheriff's department documents characterizing a person's

17     conduct, and they may disagree with the characterization.

18          So I think that there is an important public interest

19     in protecting these -- these names of people -- our class

20     members.  They're not -- you can't pull up a list online.  You

21     can, if you know a person's name.  If you want to find your

22     loved one, see if they're incarcerated, you can find that on

23     the website.  But I'm not aware of any cases -- and, you know,

24     defendants didn't argue that they want to keep confidential --

25     they don't want to keep confidential incarcerated persons'

21

1    names.

2           So it's consistent with protecting our class members'

3    interests and the potential for stigma, whether that should

4    exist or not with being incarcerated.

5           THE COURT:  My difficulty with your argument in that

6    regard, Mr. Anderson -- and it -- it may be moot, I should say,

7    if you're not asking me to order that incarcerated person's

8    name be redacted.  But your argument about the stigma of being

9    in jail -- which I am not disagreeing with as a general

10   proposition but may not jibe with the Ninth Circuit's

11   requirement that there be a showing of particularized harm as

12   to specific individuals.  Father D and Father M, for example.

13          And so I guess -- let me just ask this question.  Are

14   you asking me to order that the incarcerated person names be

15   released without redactions?  Or are you simply indicating that

16   to the extent you release these materials -- if I deny the

17   motion in part and you release these materials, you would not

18   release the names of your clients?  Because it would seem to me

19   if you were -- you're trying to prevent the County from

20   releasing the names of your clients, then you're going to have

21   to make that showing of particularized harm; just as the County

22   does for their witnesses.  And I -- that's where I'm trying to

23   understand two sides of the same coin, and why this is

24   challenging.

25          ATTORNEY ANDERSON:  Understood, your Honor.

1          We would not release the documents with our clients'

2    names.  We would redact them, unless it was a person who was a

3    class representative; their name was already out there.

4          I don't think that we're asking you to order

5    redaction.  I think we would -- we believe that you can.  We

6    believe that there's no -- that there is -- yes, it is a

7    blanket argument but the same argument applies to all

8    individuals in this -- this stigma that -- that is involved

9    with being incarcerated.  And particularly in the -- the

10   discussion of their medical care.  It's sufficient and

11   consistent with what courts have done in other instances to

12   redact their names, so that the discussion can be otherwise

13   public.

14         But understanding if the Court wouldn't order that,

15   that's still the protection we're going to give to our clients.

16         THE COURT:  I'm not saying I'm not going to order it,

17   but I'm trying to understand if there's a legal basis for me to

18   order it.  Because, I mean, can't I go online to

19   whoisinjail.com, and look up a person's name and whether

20   they're in custody?

21         Medical records may be a different issue.  And that --

22   you know, that's -- redacting names from medical records, I

23   totally hear you on that.

24         But that's -- if you want to present more argument as

25   to why I should order that incarcerated person names be --

1   remain redacted, I am happy to hear from you.  But it does not

2   seem to me, at this point, based on the record before me, that

3   there is a showing of particularized harm as to specific

4   incarcerated persons, unrelated to medical records, that would

5   justify an order from me directing that those redactions be

6   made and consistent with the Ninth Circuit standards that we're

7   discussing.  And so it's sort of a statement -- it's sort of a

8   question for you, Mr. Anderson.

9           But if I'm missing the point, you're free to tell me.

10          ATTORNEY ANDERSON:  No, I understand.  I understand

11  your point, your Honor.

12          ATTORNEY PAPPY:  Your Honor, may I be heard on this

13  particular issue?

14          THE COURT:  Sure.

15          ATTORNEY PAPPY:  I mean, what -- sort of what's good

16  for the goose is good for the gander.  If these documents are

17  ordered un -- you know, not confidential, they're not

18  confidential.  And if they're going to be released to the

19  public, they're going to be released to the public with

20  incarcerated persons' names.  The plaintiffs may not send them

21  out, but my office will.

22          I mean, this is -- this is the hypocrisy of this

23  situation; is, yes, I can go online, and I can find out who's

24  in jail.  I can look up through a website who's in jail.

25          The issue, here, is context.  The plaintiffs want to

1    rely on, well, we've gotten all sorts of emails through Public

2    Records Act requests.  But those emails are a big pile of

3    emails.  And they -- what we're talking about here is specific

4    information.  Specific emails.  Specific IP records or

5    information that the plaintiffs want de-designated, except for

6    their client's names, attached to expert reports.

7         I agree with the plaintiffs that there is no

8    mechanism -- nor really should there be -- to, you know, go

9    through the PRA requests and pluck out things and people's

10   names come up.  Because they're huge piles of documents.

11   Plaintiffs are targeting what they're trying to get, but

12   they're asking for lots of stuff.

13        What's significant here -- and I would think it's to

14   the plaintiffs' counsel as well as to the defendants -- is the

15   specific items that are being requested to be de-designated --

16   didn't ask for everything to be de-designated.  They just asked

17   for this material because it is attached to expert reports,

18   which gives it a special significance.  It gives these

19   particular emails a special significance.  And -- and, thereby,

20   particularized harm to my clients is you're going to get -- you

21   know, everything is speculation.  I agree with counsel about

22   that.  But it has been recognized by a federal court that the

23   possibility of harassment, stigma, embarrassment constitutes --

24   you know, is an invasion of privacy.  And they're talking about

25   stigma for their clients.  Forget the County employees.  They

1    don't get any stigma.  But our clients do.  I mean, that's --

2    talk about a hypocrisy.  But what's good for the goose is good

3    for the gander.

4         I mean, if they're -- if these employees, in its

5    contextual situation -- which is all the Court can look at --

6    is these expert reports, with these exhibits attached to them,

7    it's either all or nothing.

8         And I also want to procedurally point out, there's no

9    motion before you asking that those IP names be redacted.

10   There is a motion before you, by me, asking for -- by the

11   County, asking that those documents remain confidential --

12   confidential in their entirety.  There is no request before the

13   Court by the plaintiffs that those documents only be

14   de-designated or be de-designated as confidential except for

15   their client's names.  So I don't think it's properly before

16   the Court, and the Court can't issue that order.

17        THE COURT:  Do I have before me the -- you gave me the

18   (indiscernible) -- you gave me the examples, which were very

19   helpful, and I appreciate it.  But as I am thinking through

20   this, is there currently in the record before me, Mr. Anderson,

21   all of the documents at issue?

22        ATTORNEY ANDERSON:  No.

23        THE COURT:  All right.  And are we talking about

24   dozens of pages?

25        ATTORNEY ANDERSON:  Yes.

1          THE COURT:  And what I am wondering is that if that is

2     really -- you know, I -- I appreciate you all trying to help me

3     rule in categories of documents or rule on issues, which was a

4     good suggestion and I appreciate it because I think it helps to

5     crystallize this.

6          But what I understand is really what is at issue is

7     the documents that are attached or referenced in expert

8     reports.  Is that correct?

9          ATTORNEY ANDERSON:  Yes.  They're not -- generally not

10    attached to expert reports.  They're -- they were considered by

11    the experts, and sometimes discussed therein.

12         THE COURT:  Well, let me ask you this.

13         Again, are you seeking to de-designate all documents

14    considered by the experts?  Or the documents that are

15    referenced in the expert reports?  My understanding was that

16    it's the latter.

17         And it's not -- it -- it -- because you want to be

18    able to release your expert reports to whomever you wish to

19    release them, but they're so heavily redacted that you believe

20    you can't.  This isn't necessarily a legal distinction, but it

21    is one that I am now considering.  Because as I am thinking

22    this through with the benefit of your additional argument, I'm

23    not at all sure that I am going to be willing to make a blanket

24    ruling as to employee names.  And what I am considering doing

25    is having you all come to San Diego with the expert reports,

1    and go through them page-by-page, over how long it takes.  And

2    where there is a disagreement on a specific item, I will rule

3    on it with the appropriate standards in mind.

4         But it now occurs to me that making blanket rulings in

5    a vacuum, even with the benefit of the exemplars, is probably

6    not -- well, it may not be an advisable approach.

7         So I would like to know your thoughts on that because

8    I -- you know, simply saying employee names are fair game to be

9    released, I -- is -- I'm just not sure I'm there yet,

10   Mr. Anderson.

11        What should I do?

12        ATTORNEY ANDERSON:  Your Honor, defendants have looked

13   through every one of these documents, both before they produced

14   them to us and also when we presented this chart to them.  So

15   they looked at every single one.  They didn't identify any

16   specific harm that -- understanding that not all of the

17   examples are before the Court, I think you could set a very

18   quick schedule.  Ask defendants to identify any harm to us by

19   tomorrow -- or by Monday.  They've looked at these documents

20   already.  And -- and then we can evaluate those and come back

21   to the Court.

22        I -- go ahead.  Sorry.

23        THE COURT:  No, no.  I'm thinking out loud.  I mean,

24   I'm ready to rule.  I was ready to rule rather quickly on this

25   but I -- I am now reconsidering that.

1          Do you think that it would make -- and I understand

2     your position that the County made blanket confidentiality

3     designations and didn't try to re -- redact.  But -- okay.

4     What -- what should the County do?  Should they go through your

5     expert reports?  And how -- how -- how does this happen?

6          I'm actually thinking it's going to be -- as much as I

7     don't relish having you all come here, I think it's going to be

8     more effective than having you sitting in a room, across the

9     table, going through the documents next to you.

10         ATTORNEY ANDERSON:  Your Honor, we -- it's not just

11    about -- it's -- the underlying documents are those that

12    include the employee names.  We can go through the expert

13    reports.  But, again, defendants have had the opportunity to

14    identify specific harms.  They've -- so as part of this

15    meet-and-confer over these confidential documents, they've

16    agreed that some emails are not confidential.  So I don't

17    understand the argument, now, that all emails are -- somehow

18    are confidential.  It's inconsistent with their position in

19    terms of releasing PRA documents.  It's inconsistent with their

20    position in this litigation.

21         They've -- they've had the opportunity to articulate

22    reasons, and they haven't.  So I think that they can come

23    forward with identifying any specific documents.  We'll

24    certainly consider their arguments for particularized harm as

25    to this employee, in this context.  And if there are disputes

1  remaining, we'll bring them to the Court.

2          THE COURT:  Okay.

3          ATTORNEY FISCHER:  Can I offer one observation?

4          THE COURT:  Sure, Mr. Fischer.  Go ahead.

5          ATTORNEY FISCHER:  This is just my -- based on my

6  experience elsewhere, is that the thumb on the scale on all of

7  these cases is it's public.  Right?

8          We all know -- and then there's a burden, a

9  particularized harm.  All of the things we're talking about as

10  to certain things that should be -- should remain under seal,

11  redacted, et cetera.

12          Some things are obvious.  You mentioned one, like the

13  medical records and personal identifying medical information,

14  et cetera.  And then some require this analysis by the Court.

15          But in every case you start with everything being

16  public.  And then the -- the party that wants -- that says this

17  needs to being redacted identifies this and highlights them and

18  says why.  And then you have anywhere between one and 25 -- I

19  don't know -- examples.  And then the other side says we agree,

20  we disagree.  And then you decide.  To sit down and go through

21  it page-by-page is like -- that's -- that's not -- it's not

22  like a this (indicating with hands).  It's -- someone -- one

23  party has to come forward and say this -- this should be

24  redacted and here's why.

25          On -- on the plaintiff -- on the class member issues,

1    when we review documents, we are aware of the same -- the same

2    privacy interests because we represent those people.

3              And so if there's one in there that's going to become

4    public or get filed, we have an eye towards that.  Is it going

5    to have something that identifies their HIV status?

6    Whatever -- and identifies a person's HIV?  Whatever it is.

7    And then we would bring that to defense counsel.  Have that

8    conversation.  We disagree, we bring it to you.

9              So just -- I just think that it really is on the

10   respective parties to identify:  This thing, right here, here's

11   why we should keep it out.  And then maybe we can meet and

12   confer in person, or otherwise, makes sense.

13             THE COURT:  No, I understand.

14             Let me ask you this then, Mr. Fischer --

15             ATTORNEY FISCHER:  (Indiscernible) precise.

16             THE COURT:  And then how does it get more precise?

17   Because it's not to go back to, you know, all of the tens of

18   thousands of pages that have been produced.

19             Is there a universe of documents that are currently

20   designated as confidential under the protective order, as to

21   which -- where -- that are referenced in the plaintiffs' expert

22   reports, such that that information would have to be redacted?

23             ATTORNEY FISCHER:  I -- I think that's what we're

24   talking about.  Sorry.

25             THE COURT:  And my question is -- yes, I agree.  And

31

1   so my question is, is that stack of documents somewhere?

2   Electronically or in hard copy?

3              ATTORNEY PAPPY:  Um-hmm.  Yes.

4              THE COURT:  You have it?  You know exactly which

5   documents are at issue in this?

6              ATTORNEY PAPPY:  Yes.

7              ATTORNEY FISCHER:  -- tell us which ones you're

8   concerned about?

9              THE COURT:  Well, hang on.  I'm asking the questions.

10             All right.  All right.

11             ATTORNEY PAPPY:  Can I be heard?

12             THE COURT:  And my last question is that -- that

13  universe of documents -- the limited universe, I should say, of

14  documents that are referenced in the expert reports are not all

15  before me, as you indicated, Mr. Anderson.  You just gave me

16  exemplars, which I appreciate.  That was trying not to

17  overwhelm me.

18             Okay.  Yes, you may be heard, Ms. Pappy.  And then I

19  will take this under submission.

20             ATTORNEY PAPPY:  Thank you.  I do appreciate the

21  attempts to dump this all in the defendants' lap, but we've

22  already done this.  I mean, what -- what do I want protected?

23  Everything that's in Exhibit A, Docket Number 237 -- I mean,

24  737.  You know, I have to come forward and tell them.  I have

25  told them.  Through repeated meet and confer, we were actually

1    able to -- to reduce it down significantly, which was terrific.

2    But it is Exhibit A to 737.  I say this is what I want

3    redacted.  They say no.  And, by the way, we're going to redact

4    our IP names.  And that's where the disconnect is.

5           So my giving them something by Monday, I'm going to

6    give them Exhibit A.  I -- what else is it that I'm supposed to

7    do?  I -- the employee names issue -- and it's not every

8    category.  I mean, you've got entire -- when you say thousands

9    of documents, class member medical records is included in

10   thousands of documents.  That is not what we're talking about.

11          So the universe of what we're actually talking about

12   is -- is -- is a much smaller number.  And I want to clarify

13   something.  These documents in this chart are not just the

14   documents referenced in the written portion of the report.

15   They are all of the documents that the experts relied upon.

16   All of the documents that the experts relied upon.

17          So I -- I don't think anybody ever answered that for

18   you, but -- but they are much broader than what's -- only

19   what's referenced in the reports.

20          So I agree with you that the only logistical way to do

21   this is to sit in a room with these documents, which we both

22   have electronically.  Can sit there with them and go through

23   them one by one.  Because we've -- I've already given them my

24   position on employee names.

25          THE COURT:  No, your position is -- I understand.  And

1    your position is that all of the employee names should be

2    redacted.  If that's what you choose to stand on, so be it.

3            I have more questions about -- I'm done with argument

4    on this issue.  I've heard enough.  Thank you.

5            ATTORNEY PAPPY:  Okay.

6            THE COURT:  And I wanted to ask you about the motions

7    to seal.

8            Are there any oppositions to the motions to seal?

9            ATTORNEY PAPPY:  No.

10           ATTORNEY ANDERSON:  No.

11           THE COURT:  And is it the parties' position that the

12   motions to seal should be granted because they contain the --

13   the unredacted documents in their entirety?

14           ATTORNEY PAPPY:  Yes.

15           THE COURT:  Do you agree, Mr. Anderson?

16           ATTORNEY ANDERSON:  Yes.

17           THE COURT:  All right.  I am going to grant the

18   parties' motions to seal, finding good cause to do so because

19   they -- the documents at issue are the unredacted versions of

20   documents that are currently the subject of the ongoing

21   litigation as to whether they should be released in their

22   entirety.  And, obviously, if the motion to maintain

23   confidentiality is denied, then the documents would be -- be

24   able to be disseminated by either party.

25           But if the motion is granted in whole or in part, then

1    my -- certainly -- at least redacted versions of the documents

2    would be the only versions that are available.

3              All right.  I'm going to take this under submission,

4    and you will have my ruling as soon as I can.

5              Is there anything else we should discuss this morning,

6    Mr. Anderson, Mr. Fischer?

7              ATTORNEY ANDERSON:  No, your Honor.  Thank you.

8              THE COURT:  Ms. Pappy?

9              ATTORNEY PAPPY:  No, your Honor.  Thank you for the

10   time.

11             THE COURT:  Okay.  My pleasure.  Have a great day,

12   everyone.

13             ATTORNEY FISCHER:  Thank you, your Honor.  Have a good

14   day.

15             (Conclusion of proceedings.)

16

17                       --oOo--

18   I certify, by signing below, that the foregoing is a correct
     stenographic transcript, to the best of my ability, of the
19   digital recording of the audio proceedings had in the
     above-entitled matter this 13th day of December, 2024.  A
20   transcript without an original signature or conformed signature
     is not certified.  I further certify that the transcript fees
21   and format comply with those prescribed by the Court and the
     Judicial Conference of the United States.

22             /S/ Amanda M. LeGore

23        _____

24        AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

25