1  Susan E. Coleman (SBN 171832)
   E-mail:  scoleman@bwslaw.com
2  Martin Kosla (SBN 247224)
   E-mail:  mkosla@bwslaw.com
3  Deann R. Rivard (SBN 177482)
   E-mail:  drivard@bwslaw.com
4  BURKE, WILLIAMS & SORENSEN, LLP
   501 West Broadway, Suite 1600,
5  San Diego, CA  92101-8474
   Tel:  619.814.5800 Fax:  619.814.6799
6
   Elizabeth M. Pappy (SBN 157069)
7  E-mail:  epappy@bwslaw.com
   BURKE, WILLIAMS & SORENSEN, LLP
8  60 South Market Street, Ste. 1000
   San Jose, CA  95113-2336
9  Tel:  408.606.6300 Fax:  408.606.6333

10 Attorneys for Defendants
   COUNTY OF SAN DIEGO, SAN DIEGO
11 COUNTY SHERIFF'S DEPARTMENT and
   SAN DIEGO COUNTY PROBATION
12 DEPARTMENT

13            UNITED STATES DISTRICT COURT

14          SOUTHERN DISTRICT OF CALIFORNIA

15

16 DARRYL DUNSMORE, ANDREE          Case No. 3:20-cv-00406-AJB-DDL
   ANDRADE, ERNEST ARCHULETA,
17 JAMES CLARK, ANTHONY             **DEFENDANTS' OPPOSITION TO**
   EDWARDS, LISA LANDERS,           **PLAINTIFFS' MOTION TO**
18 REANNA LEVY, JOSUE LOPEZ,        **EXCLUDE EXPERTS**
   CHRISTOPHER NELSON,
19 CHRISTOPHER NORWOOD, JESSE       Judge:  Hon. Anthony J. Battaglia
   OLIVARES, GUSTAVO                Date:   March 6, 2025
20 SEPULVEDA, MICHAEL TAYLOR,       Time:   2:00 P.M.
   and LAURA ZOERNER, on behalf of  Crtrm.: 4A
21 themselves and all others similarly
   situated,
22
              Plaintiffs,           Magistrate Judge: David D. Leshner
23
         v.
24
   SAN DIEGO COUNTY SHERIFF'S
25 DEPARTMENT, COUNTY OF SAN
   DIEGO, SAN DIEGO COUNTY
26 PROBATION DEPARTMENT, and
   DOES 1 to 20, inclusive,
27
              Defendants.
28

1    Defendants SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY

2  OF SAN DIEGO, and SAN DIEGO COUNTY PROBATION DEPARTMENT

3  (hereinafter "Defendants") hereby submit their opposition to Plaintiffs' motion to

4  exclude certain opinions offered by Dr. Owen J. Murray; Dr. Joseph Penn; Dr. Scott

5  Reinecke; Brian Withrow; Lenard Vare; and Henrietta Peters. The arguments for

6  exclusion within Plaintiffs' consolidated Motion to Exclude vary; as such,

7  Defendants' Opposition will address each expert separately. Plaintiffs' request to

8  artificially limit the opinions of Defendants' experts is improper and should be

9  denied.

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Burke, Williams & Sorensen, LLP
Attorneys at Law
Camarillo

4913-9303-4769 v1

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................................... 1

II.     DR. OWEN J. MURRAY – Defendants' Medical Expert .................... 1

        A.      Review of In-Custody Death Records .................................. 2

        B.      Medical Records Review ...................................................... 4

        C.      Definable Methodology ........................................................ 8

        D.      Jail Compliance With NCCHC Standards ........................... 9

        E.      Dr. Murray's Opinions Regarding The Fact That The Provision Of Medication Assisted Treatment (MAT) To Incarcerated Persons Is Admissible .................................... 10

III.    DR. JOSEPH PENN – Defendants' Mental Health Expert .............. 10

IV.     DR. SCOTT REINECKE ................................................................... 12

        A.      Articulable Methodology ................................................... 13

        B.      Dr. Reinecke's Opinions Based on Sufficient Facts or Data ............... 14

V.      BRIAN WITHROW ........................................................................... 16

VI.     LENARD VARE ................................................................................ 17

VII.    HENRIETTA PETERS ...................................................................... 21

IX.     CONCLUSION ................................................................................. 23

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4913-9303-4769 v1

i

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Federal Cases

*Cholokyan v. Mercedes-Benz, USA, LLC,*
   281 F.R.D. 534 (C.D. Cal. 2012)..........................................................................1

*Coleman v. Brown,*
   938 F. Supp.2d 955 ...........................................................................................22

*In re ConAgra Foods, Inc.,*
   302 F.R.D. 537 (C.D. Cal. 2014)....................................................................5, 23

*Darensburg v. Metropolitan Transp. Com'n,*
   636 F.3d 511 (2011) .........................................................................................17

*Daubert v. Merrell Down Pharm, Inc.,*
   509 U.S. 579 (1993) ............................................................................1, 16, 17

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.,*
   285 F.3d 609 (7th Cir.2002) .........................................................................7, 10

*Gen. Elec. Co. v. Joiner,*
   522 U.S. 136 (1997) .........................................................................................21

*In re Imperial Credit Indus., Inc. Sec. Litig.,*
   252 F.Supp.2d 1005 (C.D.Cal.2003) ..................................................................7

*In re Incretin-Based Therapies Prods. Liab. Litig.,*
   524 F. Supp.3d 1007 (S.D. Cal. 2021) ...............................................................3

*Jensen v. Shinn,*
   609 F.Supp.3d 789 (D. Ariz. 2022) ..................................................................11

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137 (1999) ......................................................................................3, 14

*McCoy v. DePuy Orthopaedics, Inc.,*
   2024 WL 1705952 (S.D. Cal. Apr. 19, 2024) ....................................................5

*Nationwide Tranp. Fin. V. Cass Info. Sys., Inc.,*
   523 F.3d 1051 (9th Cir.2008) ...........................................................................23

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4913-9303-4769 v1

ii

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

*Plata v. Brown*,
   Case No. 4:01-cv-01351-JST (N.D. Cal.) ........................................................... 8

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ....................................................................... 5

*Robinson v. Adams*,
   847 F.2d 1315 (9th Cir.1987) ..................................................................... 17

*United States v. Sandoval-Mendoza*,
   472 F.3d 645 (9th Cir. 2006) ....................................................................... 5

*Sementilli v. Trinidad Corp.*,
   155 F.3d 1130 (9th Cir. 1998) .................................................................. 13

*Townsend v. Monster Beverage Corporation*,
   303 F.Supp.3d 1010 (9th Cir. 2018) .......................................................... 13

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs.,*
   *& Prods. Liab. Litig.*,
   978 F. Supp. 2d 1053 (C.D. Cal. 2013) ...................................................... 1

*United States v. Valencia-Lopez*,
   971 F.3d 891 (9th Cir. 2020) ....................................................................... 8

*Walker v. Conagra Brands, Inc.*,
   2023 WL 8885148 (C.D. Cal 2023) ............................................................ 7

**Federal Statutes**

18 U.S.C. §3626(a) .......................................................................................... 22

**State Statutes**

Govt. Code §11135 .................................................................................. 16, 17

**Rules**

Fed. R. Evid.
   702 .................................................................................................... *passim*
   702(b) ...................................................................................................... 3
   703 ................................................................................................... 5, 15

FRCP 702(b) .................................................................................................... 18

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4913-9303-4769 v1

iii

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

1

**Other Authorities**

2

*Araujo v. Coachella Valley Water District,*
3
    2022 WL 4181004 .................................................................................. 18

4
*In re Novatel,*
5
    2011 WL 5827198 .................................................................................... 8

6
*San Diego Comic Convention v. Dan Farr Productions,* 217 WL
    4227000 ................................................................................ 3, 8, 14
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4913-9303-4769 v1

iv

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' Motion to Exclude the Findings and Opinions of Defendants' Experts Dr. Owen J. Murray, Dr. Joseph Penn, Dr. Scott Reinecke, Brian Withrow, Lenard Vare, and Henrietta Peters ("Motion") fails to show that the opinions at issue are unreliable or otherwise inadmissible. Plaintiffs' contentions go to weight, not admissibility, and boil down to disagreements with Defendants' expert opinions, which is not an appropriate basis to exclude them. *See Daubert v. Merrell Down Pharm, Inc.,* 509 U.S. 579, 595 (1993) ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."); *Cholokyan v. Mercedes-Benz, USA, LLC,* 281 F.R.D. 534, 543 (C.D. Cal. 2012) ("[Defendant's objections] go less to the reliability of Waters's opinions than to defendant's disagreement with his conclusions and attack on his credibility as a witness. These types of objections are not relevant to the Rule 702 analysis.") (citing cases). "Importantly, the Court's gatekeeper role under *Daubert* is "not intended to supplant the adversary system or the role of the jury."" *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.,* 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013), citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333, 1341 (11th Cir. 2003)(internal quotation marks and citation omitted). For these reasons, the Court should deny Plaintiffs' Motion (ECF 779) in its entirety.

## II.    DR. OWEN J. MURRAY – Defendants' Medical Expert

Plaintiffs move to exclude Dr. Murray's opinions in their entirety under varying theories. Dr. Murray's expert report and opinions focused on Plaintiffs' claim of deficient medical care. (ECF 231 at ¶¶ 444-445.)  Dr. Murray outlined his methodology, which included personal review of the medical records of the named Plaintiffs, personal inspection of each of the Jail facilities—accompanied by subject matter experts in the areas of nursing services (Mr. Kirk Abbott), pharmacy and medical records (Dr. Melanie Roberts), and administration (Mr. Kelly Coates).  Dr.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO
4913-9303-4769 v1                    1                    Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

Murray attached each's curriculum vitae to his report. Dr. Murray personally
interviewed medical personnel at each facility. Additionally, Dr. Murray ordered
and reviewed an audit of randomly selected medical records of incarcerated persons
by medical experts with whom he had previously worked as a consultant (Dr.
Stephen Boone, M.D., Erin Freeman, PA-C, Jennifer Humphreys, FNP, Jane
Leonardson, M.D., John Pulvino, P.A.), with a focus on intake, nurse sick call,
initial health assessment, intake medications, non-formulary medications, chronic
care, laboratory, radiology, and sub-specialty clinics. The purpose for that review
was to validate the efficiency, effectiveness, and quality of a particular healthcare
activity such as chronic care management. Patient files were selected utilizing a
blind random-selection software tool methodology to ensure representation of the
population, eliminate bias, facilitate inference, and enhance credibility The medical
records were copied in their entirety and provided in PDF format. The scope of
assessment included compliance with the National Commission on Correctional
Health Care (NCCHC) standards compliance assessment as well as relevant
mortality data. (See ECF 780 - Exhibits Vol I - Exhibits A-D (Under Seal) ISO
Declaration of Van Swearington ISO Pltfs' Motion to Exclude Opinions of Defs'
Experts, Exhibit A-3-7).

### A.   Review of In-Custody Death Records

Plaintiffs seek to exclude Dr. Murray offered opinions that the Jail provides
adequate medical care as unreliable, asserting unreliability based on his not
reviewing in-custody death records, and make the unsupported statement that the
records are "critically relevant to the provision of medical care at the Jail." (ECF
779-1 at 8:17-18[1]) There is no factual or legal support for this assertion. Plaintiffs
offer their world view that the existence of in-custody deaths means that in-custody

---

[1] To avoid confusion, pages numbers cited in this Opposition are to the page
numbers assigned by the CM/ECF system.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4913-9303-4769 v1

2

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

medical care is per-se inadequate, citing to dated reports and audits but failing to explain how a review or non-review of these records scientifically informs their own medical expert's opinion, or alternatively, leaves Dr. Murray's analysis lacking.

Plaintiffs cite to two inapplicable cases to support the notion that a lack of review of death records makes Dr. Murray's opinions scientifically unreliable. Plaintiffs cite to *San Diego Comic Convention v. Dan Farr Productions,* 217 WL 4227000, *7-8. The case is irrelevant to the inquiry here. The Court's finding that a defense expert opinion that the term "Comic-Con" was generic at the time the lawsuit was filed, and was generic currently, was unreliable. The issue in that case was whether the term "Comic-Con" was generic before 1970, and this Court found the experts opinion of questionable relevance.  In addition, the Court focused on the fact that Defendants gave the expert 1,800 **hand-selected** documents, and only 400 of those records were from the expert's own research.  This Court concluded that— because of the nature of the inquiry to decide if the term was generic or not—and the limited scope of document review dictated by the defendants, the expert's conclusion was not reliable because it was based upon a "constricted and somewhat biased world view."  The Court cited to FRE 702(b) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 143 (1999), to support holding that a Court has broad discretion to determine reliability and not that review or non-review of materials by one expert v. a competing expert makes the opinion of the expert who reviewed less materials, ipso facto 'unreliable.' Whether a term is generic or not is not an issue in this case. Moreover, the holding is inapplicable and Dr. Murray selected the criteria for which records he wanted to consider as discussed infra.

Plaintiffs also include five pages of factual reasons why two expert doctors were excluded from testifying by a court in *In re Incretin-Based Therapies Prods. Liab. Litig.*, 524 F. Supp.3d 1007, 1035-40 (S.D. Cal. 2021). The Court found that one doctor did not apply consistent criteria for counting pancreatic cancer events in clinical studies in his analysis, resulting in inflated counts of certain events and

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4913-9303-4769 v1

3

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

deflated counts of other events, and looked at what was a small subset of clinical study data in that case. That expert was excluded. Another expert (Dr. Wells) was excluded because he too looked at a small subset of clinical study results and applied inconsistent standards to the study results. Neither scenario has any application to the case at hand. Clinical studies are not at issue in this case. Further, Defendants did not decide what records to provide to Dr. Murray for review. The case has no application here.

The focus of each of the above cases cited by Plaintiffs is to suggest that if there is a theory in the case that in-custody deaths are the result of inadequate medical care, the failure to review the in-custody deaths makes all of Dr. Murray's testimony unreliable. The problem with this novel proposition is that as Plaintiffs themselves state, "Dr. Murray did not offer any opinions regarding the medical care related to *any* in custody death." (ECF 779-1 at 13:11-12) The purpose of a *Daubert* motion is to test the reliability of the scientific method underpinning an opinion—not a determination that an expert should have rendered an opinion but did not. If Plaintiffs take issue with the lack of any opinion, they are free to challenge that issue through cross-examination and/or their own expert, Dr. Keller. The issue is nothing more than an attempt to "cherry-pick" the methodology of their own expert over Defendants' expert—not the scientific validity of either.

## B.    Medical Records Review

Plaintiffs claim that Dr. Murray did not review any patient records himself and therefore improperly "parrot[ed] the opinions of other experts without independently investigating the underlying evidence," citing *McCoy v. DePuy Orthopaedics, Inc.*, 2024 WL 1705952, at *16 (S.D. Cal. Apr. 19, 2024). (ECF 779-1 at 12:7-12)

Plaintiffs distorted the facts and have come up with the novel theory that experts must review medical records personally in order to opine based upon the contents of the medical records. The claim is without merit. An expert may base an

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4913-9303-4769 v1

4

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION TO EXCLUDE EXPERTS

opinion on information, such as hearsay evidence, that would not be admissible on its own. Fed. R. Evid. 703. An expert's opinion is "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of [the relevant] discipline." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (quotation marks and citation omitted). The analysis of whether an opinion is admissible "is not the correctness of the expert's conclusions but the soundness of his methodology." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quotation marks and citation omitted).

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 702. Experts "can rely on the opinions of others if "other evidence supports his opinion," and "the record demonstrates that the expert conducted an independent evaluation of that evidence." *McCoy v. DePuy Orthopaedics, Inc.*, No. 22-CV-2075 JLS (SBC), 2024 WL 1705952, at *12 (S.D. Cal. Apr. 19, 2024), citing to *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014). Plaintiffs must establish that: 1) there is no evidence that supports Dr. Murray's opinions; and 2) that Dr. Murray did not conduct an independent evaluation of the evidence. Plaintiffs cannot establish either element.

First, Plaintiffs do not address the first prong, conceding that the underlying evidence, to wit, the medical records of 89 patients, supports the opinion that the randomly selected medical records of 81 incarcerated person patients evidenced care meeting the standard of care, two incarcerated persons' care met the standard of care with reservations, and six incarcerated persons' care did not meet the standard of

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4913-9303-4769 v1                                          5                    Case No. 3:20-cv-00406-AJB-DDL
                                                                    DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
                                                                              TO EXCLUDE EXPERTS

care. *See* ECF 779-2, Swearingen Decl., ECF 779-3, Exhibits to Swearingen Decl., Exhibit A-Appendix J to Dr. Murray's Report, p.60, et seq., which sets forth a summary of the relevant portions of the incarcerated person medical records and the specific condition being evaluated (i.e., incarcerated persons with Chronic Care Conditions. (*Id*, p.60).

Plaintiffs focus solely on the second prong in claiming that Dr. Murray did not conduct his own evaluation of the records. However, the report specifically describes the methodology employed detailing interviews that Dr. Murray conducted himself, Dr. Murray's personal review of named-Plaintiff medical records, and the five additional experts with whom he had previously worked that he personally engaged to assist him.

Dr. Murray's report goes on to identify his on-site inspection and describes the record review process as, "randomly selected medical records were audited to validate various critical processes and performance. These audits included the following: intake, nurse sick call, initial health assessment, intake medications, non-formulary medications, chronic care, laboratory, radiology, and sub-specialty clinics." (ECF 779-3, Exhibits to ECF 779-2, Swearingen Decl., Ex. A, p.3.)

The purpose of the medical records review is described by Dr. Murray as "required in multiple areas to validate the efficiency, effectiveness, and quality of a particular healthcare activity such as chronic care management". He states that "...[a] random selection methodology was employed to best represent the population, eliminate bias, facilitate inference, and enhance credibility," and covered nursing sick call, intake process, nursing initial health assessment, non-formulary requests, laboratory order timeliness, provider quality of care, and Plaintiffs' medical care. (*Id*, p.6). Dr. Murray's report discusses Chronic Care starting at page 14 (Swearingen Decl., Ex. A-15), and references Appendix J which contains a summary of the relevant medical information and the finding of the reviewer which Plaintiffs seek to exclude. (*Id*.).

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4913-9303-4769 v1

6

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

More specifically, expert opinions may find a basis in part "on what a different expert believes on the basis of expert knowledge not possessed by the first expert." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.,* 285 F.3d 609, 613 (7th Cir.2002). Indeed, this is common in technical fields. *Id.* For example, a physician may rely for a diagnosis on an x-ray taken by a radiologist, even though the physician is not an expert in radiology. *Id.* "[T]here is no general requirement that the [underlying] expert testify as well." *Id.* There are limits to this general rule, however. Where the "soundness of the underlying expert judgment is in issue," the testifying expert cannot merely act as a conduit for the underlying expert's opinion. *Id.* at 613–14. Moreover, more scrutiny will be given to an expert's reliance on the information or analysis of another expert where the other expert opinions were developed for the purpose of litigation. *See, e.g., In re Imperial Credit Indus., Inc. Sec. Litig.,* 252 F.Supp.2d 1005, 1012 (C.D.Cal.2003).  However, an expert in general may "appropriately rely on the opinions of others if other evidence supports [their] opinion and the record demonstrates that the expert conducted an independent evaluation of that evidence." *Walker v. Conagra Brands, Inc.,* 2023 WL 8885148 *10 (C.D. Cal 2023), citing *In re ConAgra Foods, Inc.,* 302 F.R.D. 537, 556 (C.D. Cal. 2014) (collecting cases).

Plaintiffs assert that Dr. Murray "did nothing to "independently investigate" whether the summaries were accurate or whether he agreed with the reviewers' opinion regarding the standard of care…." (ECF 779-1 at 12:18-20.)  However, Dr. Murray *did* independently review the summary of medical treatment and independently formed his own opinion as to whether the standard of care was met. (*See* Decl. of Dr. Owen J. Murray In Support of Opposition to Motion, ¶¶ 6-7). Plaintiffs interestingly did not even attempt to elicit testimony from Dr. Murray regarding whether or not he independently reviewed the *medical records summaries* and/or came to his own opinion as to whether the standard of care was met in those instances. (ECF 779-4, Owen J. Murray, D.O., MBA, Deposition excerpts Ex. W, at

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4913-9303-4769 v1

7

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

461.)

## C.    Definable Methodology

None of Plaintiffs' criticisms of Dr. Murray's methodology, already set forth herein (*supra* at 7-8), are persuasive. First, Plaintiffs fault Dr. Murray because his medical records reviewers failed to apply a definable standard. Plaintiffs reliance on *United States v. Valencia-Lopez,* 971 F.3d 891 (9th Cir. 2020) (a criminal narcotics trafficking case in which the trial court did not conduct a *Daubert* hearing to make a reliability assessment of and foundation for proposed testimony of a prosecution narcotics expert prior to his actual testimony—without proper foundation—of a near zero probability of a drug trafficking organization using a coerced courier), quoting *United States v. Hermanek,* 289 F.3d 1076, 1093 (9th Cir. 2002) (a criminal case relying on wiretaps where the expert's interpretations of particular code words were not vetted for reliable methodology and should have been excluded), for such an assertion appears misplaced and entirely inapplicable. Moreover, Plaintiffs' citation to this Court's previous rulings excluding expert opinions "that "contain[] no professional standards or principles," on the basis that those opinions are not reliable." *See In re Novatel,* 2011 WL 5827198, at *5 (where an expert cited no professional standards or principles and utilized no specialized knowledge in his narrative), and *San Diego Comic,* 2017 WL 4227000, at *7 (where the expert reviewed records largely provided by Defendants' counsel). Plaintiffs are fully aware that Dr. Murray's opinions were based on medical records selected randomly utilizing random-selection electronic software.

Dr. Murray clearly defined his methodology, which has already been detailed. (*supra* at 7-8). Plaintiffs claim that Dr. Murray's opinion that there is no applicable *overall* standard of care for the totality of services provided in a corrections setting is not reliable is disingenuous at best. Plaintiffs cite to a Declaration by Dr. Murray in *Plata v. Brown*, Case No. 4:01-cv-01351-JST (N.D. Cal.), at Dkt. 3059-5, a case in which Dr. Murray opined that the methodology

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4913-9303-4769 v1

8

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

1   employed by opposing experts of hand-selecting "records of "medium to high-risk

2   patients with chronic diseases and other serious medical conditions…is not

3   consistent with…most state correctional health systems' quality assurance

4   indicators." (ECF 779-4 at p. 12 ¶ 11).  In his Declaration, Dr. Murray further

5   declared, just as he did so in the instant matter, that "there is no "adequate" standard

6   or generally known "standard of care" for all forms of medical care provided in a

7   correctional setting." (ECF 779-4 at p. 13 ¶ 15).  Dr. Murray opined that opposing

8   experts' "subjective review of care provided to a **particular patient**" was "not a

9   statistically valid or sound method of evaluating the overall quality of correctional

10  healthcare that is delivered at a specific institution or system." (emphasis added) (*Id.*

11  at p. 14). Plaintiffs failed to alert the Court to Dr. Murray's final opinion, that

12  reliance on a subjective approach…identifies a difference of opinion with another

13  care provider."  (ECF 779-4 at p. 14 ¶ 16).  Plaintiffs have the ability to seek

14  impeachment of Dr. Murray through cross-examination and/or via their expert, Dr.

15  Keller, which is the appropriate resolution.

16      **D.    Jail Compliance With NCCHC Standards**

17          Plaintiffs again offer their worldview citing to a dated 2017 report but fail to

18  explain how Dr. Murray's methodology is lacking. Plaintiffs refer the Court in part

19  to page 32 of Dr. Murray's report as support for their request that the Court exclude

20  Dr. Murray's opinion on NCCHC accreditation compliance progress, but do not

21  inform the Court of the fact that the NCCHC revised their Jail Standards. (See Dr.

22  Murray's report, p. 31). Of additional note is that Dr. Murray's report denotes the

23  basis for his opinion on compliance levels was determined through self-review of

24  "information obtained on facility inspections, medical record reviews, interviews

25  with SDSO healthcare and sworn staff, review of healthcare policy procedure,

26  institutional directives, training bulletins, and observation of health care delivery"

27  with a reference to the self-review document (See Dr. Murray's report, p. 31; see

28  also Appendix P, attached to Dr. Murray's report).

Burke, Williams & Sorensen, LLP
Attorneys at Law
Camarillo

4913-9303-4769 v1                              9                Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

**E.    Dr. Murray's Opinions Regarding The Fact That The Provision Of Medication Assisted Treatment (MAT) To Incarcerated Persons Is Admissible**

Plaintiffs' narrow read of Fed. R. Evid. 702 in their assertion that Dr. Murray needs to be an expert in all areas of medicine and medical treatment in order to opine that the provision of such medicine and medical treatment occurs in the Jail as part of 'adequate medical care' is incorrect. Dr. Murray's report clearly states that he was made aware of the existence of and efficacy of the Jail's MAT program during his interview of Dr. Rafi, a Jail physician with whom he personally spoke about in-custody deaths and the MAT program, which is a tool used to prevent substance abuse-related in-custody deaths, to gain her perspective. (See Exhibit A-41). Dr. Murray could reasonably rely on information he obtained from another doctor's discussion with him about the existence of the MAT program as part of his overall review of the adequacy of provision of medical evaluation and treatment of incarcerated persons. *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.,* 285 F.3d 609, at 613. Therefore Dr. Murray's inclusion of the existence of and general understanding of the MAT program at the Jail does not require that he be a substance use expert and is therefore admissible.

## III.    DR. JOSEPH PENN – Defendants' Mental Health Expert

Plaintiffs are seeking to exclude the entirety of Dr. Penn's expert report and opinions contained therein. Dr. Penn's expert report and opinions focused on Plaintiffs' claim of deficient mental health care. (ECF 231 at ¶¶ 444-445.)

Just as with Plaintiffs' attempt to exclude Dr. Murray's opinions (see *supra*), there is no factual or legal support for this assertion. Plaintiffs offer their world view that the existence of in-custody deaths means that in-custody mental health care is per-se inadequate, citing to dated reports and audits but failing to explain how a review or non-review of these records scientifically informs their own mental health expert's opinion, or alternatively, leaves Dr. Penn's analysis lacking.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4913-9303-4769 v1

10

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION TO EXCLUDE EXPERTS

Again, Plaintiffs state, "[Dr. Penn] failed to consider essential information about people who died at the Jail as a result of their mental illness…Dr. Penn's failure to consider evidence from this and other suicide deaths makes his methodology unreliable and his opinions deficient." (ECF 779-1 at 16:15-16, 17:2-4). Plaintiffs cite to *Jensen v. Shinn*[2], 609 F.Supp.3d 789, 843, 851, 853, 856-57, 862 (D. Ariz. 2022) (where Dr. Penn had testified at an earlier civil trial regarding the adequacy of the mental health care system in the State of Arizona's prisons on its behalf and the Court found fault with Dr. Penn's opinions and methodology but noted that any *Daubert* challenges would have failed). Defendants urge this Court to deny Plaintiffs' motion to exclude the opinions of Dr. Penn. Plaintiffs again, just as with Dr. Murray, seek to exclude Dr. Penn's opinions because he utilized psychiatric expert assistance to review a randomized sampling of incarcerated person mental health records. Additionally, Dr. Penn's opinions on staffing levels are subject to cross examination.

Dr. Penn's methodology in this case produced records review and opinions, with which Dr. Penn agreed, that were not all favorable to the County, which tends to support that his methodology—and instruction to the assisting records reviewers—were clear, sound and unbiased. Moreover, this is a topic for cross-examination. Dr. Penn's report was extremely detailed as to the extensive scope of Plaintiffs' claims, the scope of his work, and the basis for his opinions, documents reviewed, information obtained, and methodology that he imparted to his reviewers which is reflected in the consistency of the detail fields documented by each reviewer. (See ECF 780 - Exhibits Vol I - Exhibits A-D (Under Seal) ISO Declaration of Van Swearington ISO Pltfs' Motion to Exclude Opinions of Defs' Experts, Exhibit B-160-172). Dr. Penn personally observed examples of access to

---

[2] Dr. Pablo Stewart was the Plaintiffs' mental health expert in that case; he is coincidentally Plaintiffs' mental health expert in the instant action.

Burke, Williams & Sorensen, LLP
ATTORNEYS AT LAW
CAMARILLO

4913-9303-4769 v1

11

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

care and continuity of care throughout the on-site tours, verified practices, policies, and procedures with staff with whom he interacted and interviewed at the Jail facilities. (*Id.*, Ex. B-166)

If there is some case that holds that his methodology is not an accepted method, there would be a problem. The question is not what happened in the Arizona case, because we do not know the scope of assignment or whether there were tactical decisions that drove what Dr. Penn was given to review; this Court cannot take the *Jensen* opinion and apply it to this case without knowledge of all of the underlying facts of that case.  Moreover, the opinion followed a court trial where cross examination and competing expert testimony was presented to the reviewing judge. *This* is a motion to decide whether the expert meets the *Daubert* standard. Plaintiffs do not take issue with Dr. Penn's qualifications as an expert in the field of correctional mental health provision of care. As to methodology differences between the *Jensen* case and this case, Dr. Penn clearly conducted site visits, interviewed mental health staff, and was not permitted to interview individuals, so his entire testimony has to be based in a class action case like this on a records review. Dr. Penn conducted a review of the summaries that were compiled by three board-certified correctional forensic psychiatrists (Natasha Cervantes, M.D., Joseph Baskin, M.D., and Ariana Nesbit Huselid, M.D.) clearly identified within his report and standard of care opinions upon which his own opinions were based. Of note is that the Plaintiffs do not dispute the information or conclusions contained within the patient summaries, which are detailed and thorough. (*Id.,* Ex. B-162, 309-358).  Dr. Penn additionally notated in his report that he was not permitted to interview any individual incarcerated persons, due to their [criminal case] representation. (*Id.,* Ex. B-166).

Plaintiffs' motion to exclude Dr. Penn's opinions should be denied.

## IV.    DR. SCOTT REINECKE

Plaintiffs are moving to exclude Dr. Reinecke's entirety of opinions, claiming

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4913-9303-4769 v1                    12                    Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

that Dr. Reinecke failed to apply an articulable methodology which renders his opinions unreliable, and that some of Dr. Reinecke's opinions do not rest on case-specific facts.

"Disputes as to the strength of an expert's credentials, faults in his use of a particular methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *Townsend v. Monster Beverage Corporation,* 303 F.Supp.3d 1010, 1019 (9th Cir. 2018), citing *Kennedy v. Collagen Corp.,* 161 F.3d 1226, 1230 (9th Cir. 1998). "In determining the reliability of a proffered expert, courts 'scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case.'" *Id.,* citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997), quoting *Claudia Morales, et al. v. Kraft Foods Group, Inc., et al.,* No. CV-14-04287-JAK (PJWx), 2017 WL 2598556, at *10 (C.D. Cal. June 9, 2017) (quoting Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendment)). "[T]he district court must keep in mind Rule 702's broad parameters of reliability, relevancy, and assistance to the trier of fact." *Sementilli v. Trinidad Corp.,* 155 F.3d 1130, 1134 (9th Cir. 1998). Plaintiffs are inappropriately seeking to exclude Dr. Reinecke's opinions.

## A. Articulable Methodology

In his expert report, Dr. Reinecke clearly identified his methodology employed to evaluate whether the overall delivery of dental care to incarcerated persons in the custody of the Jails is constitutionally adequate and meets the standard of care. Dr. Reinecke documented having personally conducted site visits to all of the Jail facilities, interview of staff, conference calls with local dentists and the Dental Care Director of Naphcare, the Jail dental care provider, and having personally reviewed the chart entries and associated documents of a random selection of incarcerated person dental charts so that he could asses treatment for various conditions, appropriate referrals, episodic care, and documentation of such,

Burke, Williams & Sorensen, LLP
Attorneys at Law
Camarillo

4913-9303-4769 v1

13

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

for his analysis of all of that data to evaluate the systemic delivery of healthcare, including outcome measures found useful for comparing across populations. Dr. Reinecke documented his scope of assessment for the timeframe spanning March 29, 2024, through May 31, 2024, for all aspects of the dental program and a pool of charts he reviewed, including staffing, access to care, dental services provided, physical space, quality monitoring, records management and records review to determine the adequacy of dental care both from a system perspective and at the facility level. Dr. Reinecke additionally personally reviewed and analyzed the deposition transcripts of Plaintiffs' deposition of Assistant Sheriff Theresa Adams, which specifically referenced the timing for treatment, preventive measures (cleanings), and root canals (endodontics), and Dr. Jon Montgomery, M.D., the Jail Medical Director, specific to the fact that arbitrary delays in care, as demonstrated by root canal therapy, had been resolved, as well as his testimony that Naphcare is reviewing staffing levels, utilization, charting, documentation, and hygiene services. (See ECF 780 - Exhibits Vol I - Exhibits A-D (Under Seal) ISO Declaration of Van Swearington ISO Pltfs' Motion to Exclude Opinions of Defs' Experts, Exhibit C-380-81). Dr. Reinecke's dental chart review documentation, regarding which he noted he evaluated for quality of documentation, quality and continuity of care, and timeliness of care, were attached to his expert report as Appendix C. (*Id.* Ex. C-383). Plaintiffs did not attach any of Dr. Reinecke's appendices, stating that expert report appendices were not relevant to their motion. (ECF 779-2 at 2, ¶¶ 2-5).

## B.    Dr. Reinecke's Opinions Based on Sufficient Facts or Data

A district court has broad latitude "when it decides *how* to determine reliability…." *Kumho Tire Co.,* 526 U.S. at 142. "[T]he expert must obtain the *right* kind of data to support the conclusions drawn." *San Diego Comic,* 2017 WL 4227000 at *7, citing *In re Canvas Specialty, Inc.* 261 B.R. 12, 20 (C.D. Cal 2001) (emphasis added). Defendants do not dispute that Dr. Reinecke did not receive Defendants' dental care policies and procedures in advance of his deposition.

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4913-9303-4769 v1

14

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

However, Dr. Reinecke *did* review the in-place procedures at each Jail facility that had dental care facilities, by speaking with dental staff, reviewing the transcripts 59:of deposition of Assistant Sheriff Theresa Adams, referenced *supra,* and Dr. Jon Montgomery, M.D., the Jail Medical Director, *supra,* and chart review, all of which document the Jail procedures in real-world practice. As such, his opinion regarding Jail procedures is reliable and admissible.

Dr. Reinecke testified at deposition that he was provided staffing levels by one of the dentists with whom he spoke, as well as a dental schedule. Ex. Y-58:21-25. Plaintiffs cut-off Dr. Reinecke's testimony on the subject, which continued onto the next transcript page. See Declaration of Elizabeth Pappy In Support of Opposition Attachment A, Excerpts of Deposition of Scott Reinecke, D.D.S., at 59:1-4). Plaintiffs also provided Ex. Y-154, but did not include the preceding page which provides further illumination on Dr. Reinecke's testimony of his knowledge of staffing levels not included in the Exhibit being shown him by Plaintiffs at deposition, which results in this Court not receiving all of the information known to Dr. Reinecke regarding staffing levels. (*Id.,* at 149:7-153:25). There *was* a basis for his expert report opinion on staffing levels that Plaintiffs are seeking to exclude; Plaintiffs motion should be denied.

Plaintiffs' argument that Dr. Reinecke's opinions regarding quality assurance are inadmissible is without merit. An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703. Dr. Reinecke personally spoke with a Jail dentist regarding quality assurance and based his opinion thereon; his opinions on quality assurance are

Burke, Williams & Sorensen, LLP
Attorneys at Law
Camarillo
4913-9303-4769 v1
15
Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION TO EXCLUDE EXPERTS

1  therefore admissible.

2  **V.    BRIAN WITHROW**

3       Plaintiffs assert that Dr. Withrow's testimony that Defendants did not racially

4  profile or discriminate against racial minority should be excluded because his

5  opinion is irrelevant to Plaintiffs claim under Govt. Code §11135.  The claim is

6  meritless.

7       First, the motion is inappropriate at this stage because it is not a *Daubert*

8  motion and does not challenge whether Dr. Withrow's testimony 'reflects "scientific

9  knowledge," whether their findings are "derived by the scientific method," and

10  whether their work product amounts to "good science."' (*Daubert*, 509 U.S. at 595).

11  A *Daubert* motion is not the appropriate method to challenge relevance only.

12       Plaintiffs' Ninth Cause of Action alleges that defendants "administer State-

13  funded programs that cause Black and Latinx person to be disproportionately

14  incarcerated in the jail" (Third Amended Complaint ("TAC"), ¶ 504), and in

15  "carrying out their policing programs . . .", they violate Section 11135 by causing a

16  disproportionate adverse effect on the basis of race, color, national origin, or ethnic

17  group identification" (TAC, ¶ 505) In other words, the Sheriff's Office stop and

18  arrest practices racially discriminate with the result that more Black and Latinx

19  individuals are incarcerated. Dr. Withrow's testimony about the basis for arrests is

20  directly relevant to the issue pled in the TAC.

21       Dr. Withrow does not opine in a vacuum about racial profiling or

22  discrimination in arrests and incarceration. As his report states,

23       "The primary purpose of this expert opinion is to determine whether a pattern

24       or practice of racial discrimination might exist within the routine enforcement

25       activities of the San Diego County Sheriff's Office. This report contains a

26       statistical analysis of the data describing these activities from the same data

27       sets provided to the plaintiffs in this case. More importantly, this opinion

28       focuses on the generally accepted methodological processes and procedures

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4913-9303-4769 v1                    16                    Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

that are the bases for statistical analysis."

Plaintiffs must establish that the facially neutral policy for stops and arrests (i.e. "policing") causes a disproportionate adverse impact on a protected class. (Govt. Code §11135; *Darensburg v. Metropolitan Transp. Com'n*, 636 F.3d 511, 519 (2011)) Statistics showing that more Black and Latinx individuals is not enough unless the statistic is a reliable indicator of disparate impact. (*Id*.) Defendants are entitled to challenge the notion that the number of individuals stopped and arrested on its face is enough through evidence including expert testimony. Plaintiffs assert that the statistic alone is enough regardless of how the statistic arose as if discrimination exists based upon a statistic per se. (ECF 779-1, 34:24-27) There is no such element in the cause of action.

Dr. Withrow's testimony challenges the meritless assertion and provides an evidence based explanation as to why the statistic alone is inappropriate to determine if the stop and arrest policies are discriminatory. "An appropriate statistical measure must [ ] take into account the correct population base and its racial makeup. See *Robinson v. Adams*, 847 F.2d 1315, 1318 (9th Cir.1987)" (*Darensburg v. Metro. Transp. Comm'n*, supra, 636 F.3d at 520) Dr. Withrow addresses the bald statistic offered by Plaintiffs by ruling out racial profiling and by attacking the reliability of Plaintiffs' analysis which fails to take into account whether the police officer knew the race or ethnicity of the individual being stopped and arrested, among other criticisms of Plaintiffs' methodology.

## VI.    **LENARD VARE**

First, the motion is inappropriate at this stage because it is not a Daubert motion and does not challenge whether Mr. Vare's testimony 'reflects "scientific knowledge," whether their findings are "derived by the scientific method," and whether their work product amounts to "good science."' (*Daubert v. Merrell Down Pharm, Inc.,* supra, 509 U.S. 579). A Daubert motion is not the appropriate method to challenge Mr. Vare's opinions.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4913-9303-4769 v1

17

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

Plaintiffs first assertion is that Mr. Vare's opinion is not based upon "sufficient facts" because he did not review written staffing reports.  The claim is meritless. Written reports about numbers do nothing to educate the opinion of an expert who is testifying about what actually happens in the jails, in specific areas, how emergencies are handled, and the impacts of national shortages in law enforcement personnel. Plaintiffs assert that an expert can simply look at a document that shows "levels" throughout a jail and determine what happens in real time. The notion is meritless.

Mr. Vare based his opinion regarding staffing on a review of the named Plaintiffs' deposition testimony, Sheriff's Office Policy C.1 – Minimum Staffing, the testimony of Form Assistant Sheriff Adams-Hydar, interviews with staff on his tours of the jails, a review of Former Commander Christina Bavencoff's deposition testimony, and the deposition of Sheriff's Human Resources Administrator Michael Alvarado. (Ex. D-506-510) Federal Rule of Evidence 702 allows testimony from a qualified expert witness if it is more likely than not that the testimony is based on sufficient facts or data. (FRCP 702(b)) Plaintiffs cite to no legal authority to support their assertion that none of the evidence reviewed by Mr. Vare is sufficient because he did not review paper reports that show numbers and not staffing in real time on the floor of the jails.

Plaintiffs cite to one inapplicable case to support the assertion.  *Araujo v. Coachella Valley Water District*, 2022 WL 4181004, does not stand for the proposition that an expert who does not review paper staffing reports is disqualified. Plaintiffs offer none of the facts as to why the Araujo Court excluded an expert because it is unfavorable to their position here. The Court in Araujo was considering whether to exclude the testimony of an expert who claimed that "stop controls" were required in at a street intersection when the applicable standards did not require any such controls, the expert never went to the scene of an accident, did not conduct any

Burke, Williams & Sorensen, LLP
Attorneys at Law
Camarillo

4913-9303-4769 v1

18

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION TO EXCLUDE EXPERTS

measurements of the physical dimensions of the intersection where the accident occurred, and did not rely on anyone else's measurements. It is entirely unclear who plaintiffs believe this fact pattern is analogous to the case at hand and offer no explanation. To the contrary, Mr. Vare has a full set of relevant facts that he determined from review of deposition testimony of top Sheriff's Office personnel, human resources, staff interviews, policies and a tour of the jails he opines about with regard to staffing. The motion is meritless.

Plaintiffs assert that Mr. Vare is rendering an opinion about the adequacy of substance use treatment at the jails.  The claim is false. Plaintiffs allege that the Sheriff's Office only provides MAT (medication assisted treatment) to a "small fraction" of IP's and that the "vast majority" are not provided with MAT care. (TAC, ¶¶62-64, 66, 247, 393, and 445(d), all incorporated by reference into the Fifth Cause of Action for Failure to Ensure the Safety and Security of Incarcerated People) Mr. Vare's opinion that the facilities provide MAT counters the false allegation in the Third Amended Complaint and not the adequacy or quality of the care being provided. The opinion he renders is as follows:

"Plaintiffs' claims that the Sheriff's Office failed to provide adequate medical care including medicated assisted treatment for incarcerated persons with substance abuse disorders is inaccurate."  (Ex.D-459)

He specifically states:

"My review of the evidence shows that the County is engaged in providing substance abuse treatment options to individuals suffering from addiction. The Medication-Assisted Treatment (MAT) provides screening of individuals at the time of booking and then provides them with resources through medical providers to alleviate withdrawal symptoms and provide ongoing treatment. My opinion in this section is not focused on the treatment itself and I have not considered whether MAT is medically necessary or appropriate as I am not a medical expert. This opinion only considers the existence of treatment programs and whether

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4913-9303-4769 v1

19

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

1  incarcerated persons have access to such services."

2  (Ex.D-459)

3      The references to Mr. Vare's report where he states that the data provided to

4  him suggests a proactive [MAT] program, and the five letters from participants

5  proves there is in fact a program about which at least five people have positive

6  things to say. His only opinion is that there is in fact a program and he cites to

7  evidence to support the fact that the program exists and evidence of "its

8  accomplishments". Plaintiffs assert that the opinions address the adequacy but offer

9  no proof. The notion that his testimony should be excluded as to the five positive

10  letters from participants is ridiculous. There is no dispute that the letters harm

11  Plaintiffs' case but their existence is evidence of a program and that at least five

12  folks had positive experiences.

13      Finally, Plaintiff seek to exclude Mr. Vare's opinion that "857 individuals in

14  the care and custody of the San Diego County jails were prevented from further

15  harming themselves or completing their suicidal intent over the three-year period."

16  (Ex.D-423) Plaintiffs assert that their expert's interpretation of data should be

17  accepted over that of Mr. Vare in a Motion to Exclude Expert testimony. It is not the

18  Court responsibility to determine whose conclusion is correct at this stage.

19      There is no dispute by Plaintiffs that there were 857 individuals who were

20  identified as considering self-harm and contemplating suicide but did not engage in

21  either conduct. Mr. Vare's statement that those individuals were prevented from

22  further harming themselves or completing their suicidal intent is correct. It is not an

23  opinion as such. There is nothing in Dr. Stewart's cited testimony contradicting it or

24  offering contradictory evidence. Dr. Stewart chose to misinterpret the statement and

25  the basis therefor, to further his own views of the care overall and not what Mr.

26  Vare's report states.

27      Dr. Stewart's testimony cited by Plaintiffs is intentionally misleading by

28  refusing to include the reference in Mr. Vare's report acknowledging the 5 deaths by

1  suicide in the jails in the three year time period separate and apart from the 857

2  figure, suggesting that Mr. Vare was lying.  Dr. Stewart's intentional deception in

3  his declaration does not warrant exclusion of Mr. Vare's accurate statement that 5

4  individuals did commit suicide but 857 others did not either engage in self-harm or

5  follow through on suicidal thoughts. It is for the trier of fact to decide who is telling

6  the truth based upon cross-examination of Dr. Stewarts false statements.

7       The citation to *General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512,

8  519, 139 L. Ed. 2d 508 (1997), is irrelevant. The "data" is correct. 5 individuals

9  committed suicide and 857 did not commit suicide or engage in self-harm.

10  **VII.  <u>HENRIETTA PETERS</u>**

11      Plaintiffs assert that Ms. Peters' testimony should be excluded because of

12  questions she asked of four Incarcerated Person workers while touring the seven

13  facilities. The claim is meritless.

14      Ms. Peters' deposition testimony makes clear that she and she alone asked

15  very brief  questions about what the four individuals were doing and the process

16  used to clean.  (Ex. V, p.132:5-9) They were not targeted or planned. They were

17  doing their jobs in the normal course of facility operations.  (Id, p.121:11-22) There

18  is no evidence whatsoever to suggest that the only attorney present for the County

19  was anywhere near the conversations or that any attorney for the defense knew they

20  were happening.

21      Ms. Peters asked "what are you doing" and "what are the procedures". (Ex. V,

22  p.121:13-22) She asked barbers what they were doing.  (Id, pp.122:20-123:7) She

23  asked them about their procedures only. (Id, p.127:7-13) She asked an HSAT

24  worker a question and she specifically testified that the answer did not influence her

25  opinion, and all it did was identify a program called "HSAT". (Id, p.123:14-124:20)

26  She asked who puts the cleaning cart together, operation of the cart, stocking and

27  storing. (Id, p.127:14-129:5) It was based upon the IP identifying "HSAT" to her. It

28  was based upon her conversation with staff that she determined HSAT was not

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4913-9303-4769 v1

21

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

being practiced at all 7 facilities and concluding that it should be at all facilities. (Id, p.129:2-19) Finally, she spoke to an IP worker and asked if there was proper PPE on the cart and there was not, bolstering her opinion that HSAT should be at all facilities. (Id., p.130:8-132:7)  The only word the IP spoke was "no".  (Id)

Plaintiffs rely exclusively on *Coleman v. Brown*, 938 F. Supp.2d 955, to support the motion to exclude Ms. Peters' report in its entirety. The case does not support the request made here.

First, the defendant in *Coleman* filed a motion to terminate the entire case filed by Plaintiffs under the Prison Litigation Reform Act [18 U.S.C. §3626(a)], against the CDCR for constitutional violations of the needs of mentally disabled incarcerated persons. The motion required a showing that there were no further constitutional violations as of the time of the motion. In support of the motion, the defense counsel and its experts arranged individual interviews with "random" seriously mentally disabled class members at each of 13 prisons. Defense attorneys admitted to the arranging of the interviews. The Defendants were simultaneously opposing attempts by the plaintiffs to conduct discovery to oppose the motion.

The *Coleman* Court concluded, based upon all of the evidence before it, that the expert reports should be excluded thus making the evidence "inadmissible", and denied the motion for termination. The Court specifically looked at the question of whether the offending interviews and opinions based thereon could be excluded without excluding the entire reports, and concluded it could not because the interviews were the crux of the case for termination. (*Coleman,* supra, 938 F. Supp.2d at 968)

There is no evidence that any defense attorney in this case knew about, was involved in or was aware of the few and generic questions Ms. Peters asked 4 IP workers at three of seven facilities. The main focus of the *Coleman* Court was the conduct of the attorneys and the severe prejudice to Plaintiffs because of the nature of the specific conduct and its impact in that case. Neither factor exists here.

Burke, Williams & Sorensen, LLP
Attorneys at Law
Camarillo

4913-9303-4769 v1

22

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION TO EXCLUDE EXPERTS

There is no dispute that substantive interviews with represented parties are not permitted by lawyers or experts. Ms. Peters should not have asked the questions to the IP's but rather to staff who were standing there to explain what the individuals were doing. The question for this Court to determine is the prejudice to Plaintiffs and whether Ms. Peters' opinions are dependent upon the answers to the questions. Each of the opinions, i.e. that every facility should use the HSAT program, that barbers know procedures well, and a cart was missing PPE, are in Plaintiffs' favor in two instances, and are supported by policies, procedures and training documented in the information Ms. Peters relied upon in her report. Plaintiffs oddly do not attach Ms. Peters' report so it is unclear what specific opinions they seek to exclude and the Court cannot rule in a vacuum without reference to specific opinions.

The Motion should be denied as to Ms. Peters because there is no prejudice and there is no specific identification of what opinions are allegedly improper. The failure to identify any specific opinion is evidence that Plaintiffs have not been prejudiced.

## VIII.  EXPERT TESTIMONY AS TO LEGAL CONCLUSIONS.

Plaintiffs final argument is that experts should not be allowed to testify to a legal conclusion.  There is no dispute. (*Nationwide Tranp. Fin. V. Cass Info. Sys., Inc.,* 523 F.3d 1051, 1058 (9th Cir.2008)  However, experts are allowed to testify to an ultimate issues of fact. *In re ConAgra Food, Inc.*, 302 F.R.D. 537, 557 (C.D. Cal. 2014))  The issue is not a *Daubert* analysis and should be decided on a Motion in Limine. Any order disallowing testimony by experts about legal conclusions must be as to both defense experts and Plaintiffs' expert who also testified to legal conclusions in their depositions and declarations.

## IX.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

Burke, Williams & Sorensen, LLP
Attorneys at Law
Camarillo

4913-9303-4769 v1

23

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
TO EXCLUDE EXPERTS

1  Dated:  January 21, 2025                  Respectfully submitted,

2                                            BURKE, WILLIAMS & SORENSEN, LLP

3

4

5                                            By:    /s/ Susan E. Coleman

6                                                   Susan E. Coleman
                                                    Elizabeth M. Pappy
7                                                   Deann R. Rivard
                                                    Attorneys for Defendants
8                                                   COUNTY OF SAN DIEGO, SAN
                                                    DIEGO
9                                                   COUNTY SHERIFF'S
                                                    DEPARTMENT and SAN DIEGO
10                                                  COUNTY PROBATION
                                                    DEPARTMENT
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4913-9303-4769 v1                    24              Case No. 3:20-cv-00406-AJB-DDL
                                                     DEFENDANTS' OPP. TO PLAINTIFFS' MOTION
                                                     TO EXCLUDE EXPERTS