GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830
Facsimile:    (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
mfreedman@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California  94709
Telephone:  (510) 806-7366
Facsimile:   (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>     v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>       Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**DECLARATION OF JAY D. SHULMAN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge:    Hon. Anthony J. Battaglia<br><br>Date:     March 6, 2025<br>Time:    2:00 p.m.<br>Crtrm.:   4A |

[4621609.1]

# DECLARATION OF JAY D. SHULMAN

I, Jay D. Shulman, declare that if called upon I could and would testify competently to the information contained below, including in my expert reports, which is based on my own personal knowledge:

1.    I am a dentist experienced in the field of correctional dentistry.  I make this declaration in support of Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment.

2.    Attached as **Exhibit 1** is a true and correct copy of my August 20, 2024 report, which accurately represents my opinions in this case.  This does not include the index of documents I reviewed.

3.    Attached as **Exhibit 2** is a true and correct copy of my October 31, 2024 rebuttal report, which accurately represents my opinions with respect to the report of Scott Reinecke in this case.  This does not include the index of additional documents I reviewed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, and that this declaration is executed at Dallas, Texas this 15th day of January, 2025.

_____
Jay D. Shulman

# EXHIBIT 1

GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California  94709
Telephone:  (510) 806-7366
Facsimile:   (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No. 3:20-cv-00406-AJB-DDL <br><br> **EXPERT REPORT OF JAY D. SHULMAN** <br><br> Judge:      Hon. Anthony J. Battaglia <br> Magistrate: Hon. David D. Leshner |

[4472186.19]

# TABLE OF CONTENTS

**Page**

EDUCATION AND QUALIFICATIONS ..................................................... 1

    A.    Clinical, Management, and Academic Experience ................................. 1

    B.    Correctional Dentistry Experience .................................................. 2

BACKGROUND & SUMMARY OF OPINIONS ......................................... 3

    A.    Inadequate Urgent Care ............................................................... 4

    B.    Inadequate Routine Care ............................................................. 5

    C.    Inadequate Dentist Staffing .......................................................... 5

    D.    Inadequate Program Monitoring ..................................................... 5

STANDARDS FOR CORRECTIONAL DENTAL CARE ............................... 6

    A.    Correctional Organizations ........................................................... 6

    B.    Dental Organizations .................................................................. 8

    C.    Regulatory Organizations / Institutions ........................................... 9

    D.    United States Department of Justice ("DOJ") ................................... 10

    E.    California Department of Corrections and Rehabilitation ("CDCR") ........................................................................... 11

    F.    Scientific and Correctional Literature .............................................. 12

METHODOLOGY ............................................................................ 12

    A.    Site Visits ................................................................................ 13

    B.    Chart Reviews .......................................................................... 14

          1.    Selection of Dental Records ............................................... 15

          2.    Calculation of Wait Times ................................................. 16

    C.    San Diego County Jail Population .................................................. 21

OPINIONS .................................................................................... 23

    A.    Untimely Urgent Care ................................................................ 24

          1.    Untimely Onsite Treatment for Painful Conditions .................. 26

          2.    Untimely and Denied Offsite Treatment for Painful Conditions .................................................................... 35

B.    Inadequate Routine Care ............................................................... 39

    1.    Inadequate Initial and Annual Examinations ............................ 41

    2.    Inadequate Diagnosis and Treatment of Dental Caries ............. 47

    3.    Inadequate Diagnosis and Treatment of Periodontal
       Disease ....................................................................................... 51

    4.    Inadequate Preventative Care .................................................... 53

    5.    Inadequate Endodontic Treatment ............................................. 54

C.    Inadequate Dentist Staffing .......................................................... 56

D.    Inadequate Program Monitoring and Oversight ........................... 61

    1.    Dental Charting .......................................................................... 62

    2.    Peer Review ............................................................................... 66

    3.    Dental Director ........................................................................... 69

    4.    Continuous Quality Improvement ("CQI") ............................... 69

CONCLUSION ............................................................................................ 74

I, Jay D. Shulman, declare:

1.    I am Jay D. Shulman, a dentist experienced in the field of Correctional Dentistry.  I have been retained by Plaintiffs' counsel in the above-captioned case as an expert in dental care in correctional institutions.  In particular, I have been asked to render my opinion with respect to whether there are current systemic deficiencies in the dental care provided to people incarcerated at the San Diego County Jail (the "Jail").  My background and experiences relevant to my expert testimony in this proceeding are set forth below.  A true and correct copy of my *curriculum vitae* is attached hereto as **Exhibit A**.

## EDUCATION AND QUALIFICATIONS

### A.    Clinical, Management, and Academic Experience

2.    I have been a dentist for 53 years and have had careers in the military, dental education, and correctional dentistry consulting.  I am certified by the American Board of Dental Public Health, one of the 12 specialties recognized by the American Dental Association.  Moreover, I have extensive experience auditing and monitoring educational, military, and correctional dental programs.

3.    During my 22-year military career, I had clinical, research, administrative, and command assignments in the United States, Okinawa, and Germany.  Among my assignments, I served as the Army Surgeon General's Dental Public Health Consultant and wrote dental public health policy, procedures, and technical guidance.  As Commander of the 86th Medical Detachment, I directed dental care delivery for the Army in North Central Germany, operated six clinics with 20 dentists and 60 ancillary personnel, and was responsible for the dental health of 25,000 soldiers and family members.

4.    I have written 60 peer-reviewed articles and six book chapters, served as a reviewer for national and international dental journals, and served on the editorial board of the *Journal of Public Health Dentistry*, the official journal of my specialty.  Many of the papers I wrote during my academic career related to the

epidemiology of oral disease, such as dental caries, periodontal disease, and oral lesions. Ten publications relate to correctional dentistry. A complete list of my publications is included in my *curriculum vitae*.

### B. Correctional Dentistry Experience

5. I have served as a correctional dentistry consultant, court expert/representative, and expert witness several times since 2005. As a court expert in two major class action settlements involving incarcerated person dental care, I developed an audit process based on reviewing clinical dental records[1] and performed system-wide audits of correctional dental programs in California (at the time, roughly 170,000 people incarcerated in 33 institutions) and Ohio (at the time, roughly 50,000 people incarcerated in 30 institutions) over a five-year period. In 2014, I was retained as a dental expert by the U.S. Department of Justice in an investigation of a prison's dental care under the *Civil Rights of Institutionalized Persons Act* and served as a consultant to the Santa Clara County Counsel in a pre-litigation assessment of jail dental care. I was recently a member of a Rule 706 expert medical team in class action litigation involving health care in the Illinois prison system.[2]

6. I have performed clinical dentistry and supervised dental and dental hygiene students at the Dallas County Juvenile Detention Center. My work in the military and correctional dentistry, as well as my training in Dental Public Health focusing on population-based care, have given me unique expertise to discuss not only specific incidences of dental care, but system-wide deficiencies in dental care and the effects those deficiencies are likely to have on incarcerated populations. A complete list of the cases for which I served as an expert is in the Consultant

---

[1] Throughout this declaration, I use the terms "dental chart" and "dental record" interchangeably.

[2] *Don Lippert et al. v. John Baldwin, et al.*, Case No. 10-cv-4603 (N.D. Ill.); Document #: 767 Filed: November 14, 2018.

Activities section of my *curriculum vitae*.

## BACKGROUND & SUMMARY OF OPINIONS

7.     I have been asked to render my opinion with respect to whether people incarcerated in Jail facilities are subjected to a substantial risk of serious dental injury caused by systemic deficiencies and whether the deficiencies are amenable to a common remedy that will reduce the risk of harm.

8.     In their Third Amended Complaint, Plaintiffs allege that dental care at the Jail is inadequate and places incarcerated people a risk of harm.  Dkt. 231 at ¶¶ 356-365.  In particular, Plaintiffs allege that incarcerated people who require dental care wait an unreasonable amount of time to see a dentist, *id.* at ¶ 358, and that care at the Jail "is almost exclusively limited to extracting teeth," *id.* at ¶ 360. As explained in more detail below, I agree.

9.     My opinions are based on a review of dental records of incarcerated persons as well as documents, reports, and depositions available at this time, as listed in **Exhibit B** to this declaration; my inspection of the Jail; and the scientific literature.  In addition, the opinions are based on my 53 years of professional experience in dentistry and are made to a reasonable degree of certainty.  My understanding is that San Diego County Jail officials are aware of the dental treatment delays and deficiencies outlined in this report and the ensuing suffering caused to *Dunsmore* class members.

10.     It is my opinion as outlined below that the consistently inadequate dental care documented in the records I reviewed is attributable to systemic problems caused by inadequate dentist staffing and inadequate policies and procedures in San Diego County's dental care program as administered by NaphCare.  Specifically, San Diego County's and NaphCare's policies and practices show lack of routine care and inadequate diagnosis and treatment of dental conditions, all of which combine into a system that fails to adequately identify, or properly and timely treat, dental issues experienced by incarcerated people.  San

Diego's and NaphCare's policies on these issues are in many cases themselves below the standard of care. These failures place all incarcerated people at risk not only of preventable pain, but also of advanced tooth decay, advanced periodontal disease, and unnecessary loss of teeth. The inadequacies in dental care experienced by the plaintiffs are typical of the risk of inadequate dental care for all incarcerated people. Consequently, all people incarcerated in San Diego are at risk for preventable pain and tooth morbidity. In my experience as Court Expert/Monitor in *Fussell v. Wilkinson* and *Perez v. Tilton*, both large class actions, I have seen systemic problems of this type addressed successfully by mandated changes in the dental care system.

11.    The information and opinions contained in this report are based on evidence, documentation and observations available to me. I reserve the right to modify or expand these opinions should additional information become available to me.

12.    I am being compensated for my work at a rate of $350 per hour for general work including document review, $175 per hour for travel, and $500 per hour for depositions and testimony, in addition to travel expenses.

**A.    Inadequate Urgent Care**

13.    In my opinion, based on a reasonable degree of certainty, the Jail's treatment of incarcerated people with painful conditions is untimely and inadequate—both onsite and via offsite referrals.

14.    In my opinion, based on a reasonable degree of certainty, the Jail's assessment and onsite treatment of incarcerated people who complain of painful dental conditions is inadequate because it is untimely.

15.    In my opinion, based on a reasonable degree of certainty, the Jail's referral process for providing incarcerated people with oral surgery treatment is inadequate and results in untimely care.

**B.    Inadequate Routine Care**

16.    In my opinion, based on a reasonable degree of certainty, the initial and annual examinations provided in the Jail are inadequate because they are not informed by periodontal probing and bitewing x-rays.  Consequently, caries (known colloquially as "cavities") and periodontal disease are underdiagnosed, allowing these conditions to progress to the point there is preventable pain, loss of tooth structure or tooth loss.

17.    In my opinion, based on a reasonable degree of certainty, the diagnosis of caries is inadequate because it is not informed by intraoral (primarily bitewing) x-rays.  In addition, it is my opinion, based on a reasonable degree of certainty, that the Jail fails to provide permanent restorations on a regular basis and, in fact, has a *de facto* extraction only policy.

18.    In my opinion, based on a reasonable degree of certainty, the diagnosis and treatment of periodontal disease in the Jail is inadequate and below accepted professional standards, resulting in delayed (or no) diagnosis, gratuitous pain, and tooth loss.

19.    In my opinion, based on a reasonable degree of certainty, the preventative care provided to incarcerated people in the Jail—in particular cleanings—does not happen routinely in practice and is therefore inadequate.

20.    In my opinion, based on a reasonable degree of certainty, the Jail's provisions of endodontic treatment, *i.e.*, root canals, is inadequate.

**C.    Inadequate Dentist Staffing**

21.    In my opinion, based on a reasonable degree of certainty, the Jail does not have enough dentists to treat painful dental conditions and provide routine care to longer-term incarcerated people given the average daily population.

**D.    Inadequate Program Monitoring**

22.    In my opinion, based on a reasonable degree of certainty, the Jail's dental program is inadequately monitored.  Consequently, program deficiencies are

1  not identified and remedied timely.

2  **STANDARDS FOR CORRECTIONAL DENTAL CARE**

3      23.    In stating the standards for correctional dental care throughout this

4  report, I rely on several sources, as explained below, as well as my experience in the

5  field.  These sources and their key points are listed below.  In my opinion, the

6  standard articulated throughout this report is the level of practice necessary to ensure

7  that incarcerated people are not at unreasonable risk of gratuitous pain, tooth

8  morbidity, and tooth loss from untreated dental conditions.

9      **A.**    **Correctional Organizations**

10      24.    The major correctional organizations that address jail and prison dental

11  care are the National Commission on Correctional Health Care ("NCCHC") and the

12  American Correctional Association ("ACA").  While the ACA deals with all aspects

13  of corrections, the NCCHC focuses on health care.  Both the ACA and NCCHC

14  publish standards that are updated periodically and offer to evaluate jails and prisons

15  based on those standards.  Both organizations publish dental (oral care) standards

16  for jails and prisons.

17      25.    The NCCHC Jail Standard[3] requires that "[i]nmates' dental needs are

18  addressed."  In particular, the NCCHC compliance indicators are that:  care is

19  timely[4] and includes immediate access for urgent conditions; includes an initial oral

20  examination; oral treatment, not limited to extractions, is provided according to a

21  treatment plan that includes a system of established priorities for care when, in the

22  dentist's judgment, the patient's health would otherwise be adversely affected; and

23  x-rays are used in the development of the treatment plan.  Standard J-E-06.  I focus

24  on NCCHC Oral Care Standard J-E-06 because it is incorporated into Section 2.3.10

25

26

27  [3] Standards for Health Services in Jails (2018) National Commission on
Correctional Health Care Oral Care Standard J-E-06 (essential).

28  [4] A further discussion of the standard for "timeliness" is addressed *infra*.

(Oral Care Services) of the NaphCare contract.  As that document states, "Contractor shall be the prime provider for oral care services and shall provide dental staffing.  Contractor oral care services shall comply with NCCHC standards by which patients receive dental treatment, not limited to extractions." (2.3.10.2) and "[…] Contractor shall ensure that patients' serious dental needs are met in compliance with NCCHC, and other applicable standards." (2.3.10.3).  County Contract No. 566117, SD 122497.

26.    The ACA Oral Care Standard 5-6A-4360 is like the NCCHC's Oral Care Standard, except that the ACA also specifies that a periodontal assessment using either Periodontal Screening and Recording ("PSR") or the Community Periodontal Index of Treatment Needs ("CPITN") should be part of a dental examination.[5]

27.    Notably, while both the NCCHC and ACA oral care standards provide useful guidance and baselines for what a correctional institution's dental policy must include, they are insufficiently detailed to constitute the entirety of an institution's dental policy.  Critically, neither set of standards include specific timeframes for specific dental care and instead state only that care must be "timely."  Timeliness standards for providing care have therefore been refined on an *ad hoc* basis through litigation.  The amount of pain reported by the offender is a critical component in assessing timeliness.[6]  This report sets out minimum time frames for certain components of care, *e.g.*, dental examinations, but notes that other time frames may be based on the reasonable exercise of a dentist's clinical judgment.

28.    Furthermore, the standards developed for jails are insufficient for

---

[5] Performance-Based Expected Practices for Adult Correctional Institutions, 5th ed. American Correctional Association, August 2018; p. 176-177.

[6] Shulman JD, Makrides NS, Lockhart A (2017). The Organization of a Correctional Dental Program. In Cohen F., ed. Correctional Health Care: Practice, Administration, and Law (Chapter 8, pp. 1-23). Kingston, NJ: Civic Research Institute, p.8-3 (*hereinafter* "Shulman et al.").

1   institutions housing both pre-trial and sentenced individuals.  Notably, the NCCHC

2   standards for jails is identical to the standard for prisons, except that the jail standard

3   requires that a dentist perform an initial oral examination within 12 months of

4   admission while the prison standard requires that the dentist's initial examination be

5   performed within 30 days of admission.  This means that a person in California who

6   receives a sentence to be served in county Jail will have to wait 12 months for an

7   initial examination, while someone sentenced to prison will receive an initial

8   examination within 30 days, resulting in an unfair disparity.  As explained in more

9   detail below, because the Jail at issue in this case houses people serving sentences,

10  those individuals should not be required to wait a full year for initial examinations.

11          **B.     Dental Organizations**

12          29.     While the American Dental Association does not define any standards

13  of care specific to correctional dentistry,[7] it does establish standards that relate to

14  clinical dental practice.  The ADA also publishes the accepted professional standard

15  for procedure definitions, the Code on Dental Procedures and Nomenclature

16  ("CDT").  These codes and their definitions are the standard in dentistry.  Similarly,

17  the American Academy of Periodontology ("AAP") focuses on the diagnosis and

18  treatment of periodontal disease.

19          30.     The American Dental Hygienist's Association ("ADHA") defines

20  standards for dental hygiene practice.[8]  Among the elements of a periodontal

21  assessment are periodontal charting including documenting probing depths, bleeding

22  points, suppuration, gingival recession, and loss of clinical attachment.  *Id*. p. 7.

---

[7] Graskemper, JP (2004).  The standard of care in dentistry.  Where did it come from?  How has it evolved?  *Journal of the American Dental Association*; 135(10), 1449-1455.

[8] American Dental Hygienist's Association.  Standards for Clinical Dental Hygiene Practice chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.adha.org/wp-content/uploads/2022/11/2016-Revised-Standards-for-Clinical-Dental-Hygiene-Practice.pdf. Viewed May 13, 2024.

## C.    Regulatory Organizations / Institutions

31.    State boards of dentistry define the scope of practice for dentists, dental hygienists, and dental assistants based on the states' dental practice acts.  With respect to dental hygienists and dental assistants, the boards set forth what each category may do and the level of dentist supervision that is required for the procedures they perform.  The California Dental Practice Act defines the scope of practice for dentists, dental hygienists, and dental assistants, as well as what level of a dentist's supervision[9] (either "general" or "direct") is required for each activity.

32.    In California, most of a dental assistant's activities must be performed under direct supervision of a dentist.  However, a dental assistant may, *inter alia*, operate x-ray equipment and apply topical fluorides under the more permissive "general" supervision of a dentist.[10]

33.    In addition to performing all duties assigned to dental assistants, registered dental hygienists under general supervision may, *inter alia*, (1) perform scaling and root planing; (2) polish and contour restorations; (3) apply pit and fissure sealants; (4) perform a preliminary examination, including but not limited to: periodontal charting, intra and extra-oral examination of soft tissue, charting of lesions, existing restorations and missing teeth; and (5) provide direct supervision of dental assistants.[11]  A registered dental hygienist may treat patients of record in a dental practice; that is, patients who have been examined, have had a medical and dental history completed and evaluated, and have had oral conditions diagnosed and

---

[9] The supervision of dental procedures based on instructions given by a licensed dentist who is required to be physically present in the treatment facility during the performance of those procedures.  Source: California Business and Professions Code, Division 2, Article 9

[10] California Dental Board.  Dental Assisting Table of permitted Duties. chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.dbc.ca.gov/formspubs/pub_permitted_duties.pdf. Viewed May 30, 2024.

[11] California Code Regulations, Title 16 § 1088. RDH Duties and Settings.

a written plan developed by the licensed dentist.  Also, if a dentist has already conducted a preliminary oral exam, the dentist can direct a dental hygienist to perform some procedures necessary for diagnostic purposes.[12]

34.    Critically, the roles of both dental assistants and dental hygienists are very limited in comparison to a dentist's scope of practice.  Because, in this Jail, a dentist does not perform a preliminary examination at booking, a dental hygienist or a dental assistant may not take x-rays on a dental sick call patient in the absence of a dentist.[13]

35.    The Food and Drug Administration ("FDA") provides guidance on the use of x-rays in dental practice.  The recommendations published in conjunction with the ADA are a professional standard.[14]

### D.    United States Department of Justice ("DOJ")

36.    The Civil Rights Division of the U.S. Department of Justice ("DOJ") administers the *Civil Rights of Institutionalized Persons Act* ("*CRIPA*"), which authorizes the Attorney General to enforce the constitutional rights of incarcerated persons who are subject to unconstitutional conditions.  The DOJ sends teams to

---

[12] Dental Hygiene Board of California. Required and Prohibited Conduct. https://www.dhbc.ca.gov/licensees/conduct.shtml#duties. Viewed May 30, 2024.

[13] "Section 1684.5 of the Business and Professions Code, which specifies that it is unprofessional conduct for a dentist to allow any treatment to be performed on a patient who is not a patient of record of that dentist, which is defined as a patient who has been examined, has had a medical and dental history completed and evaluated, and has had oral conditions diagnosed and a written plan developed by the licensed dentist. Section 1684.5 provides several exceptions, which are that a dentist may, after conducting a preliminary oral exam, permit a dental hygienist to perform allowable procedures necessary for diagnostic purposes, or to perform the following prior to the dentist's examination: (1) Expose emergency radiographs upon direction of the dentist. (2) Perform extra-oral duties or functions specified by the dentist. (3) Perform mouth-mirror inspections of the oral cavity, to include charting of obvious lesions, malocclusions, existing restorations, and missing teeth."

[14] American Dental Association and Food and Drug Administration (2012). Dental Radiographic Examinations: Recommendations for Patient Selection and Limiting Radiation Exposure.

1  correctional institutions[15] and based on the team's report, may: issue formal

2  findings, send a compliance letter, file a statement of interest in lawsuit, or initiate a

3  lawsuit themselves. The findings and decisions in litigation that the DOJ initiates

4  and participates in help to define the contours of adequate dental care.

5      37.    According to the DOJ, incarcerated persons' dental care must be

6  consistent with generally accepted professional standards, and enough treatment

7  capacity must be provided to ensure care is provided in a timely manner.[16] *See also*

8  Lake County Letter, p. 89 (setting forth DOJ recommendations for Lake County Jail

9  in Indiana, including "ensure that inmates receive adequate dental care in

10 accordance with generally accepted professional standards of care. Such care

11 should be provided in a timely manner").[17]  Its position is that offenders' dental care

12 should be consistent with generally accepted professional standards and sufficient

13 treatment capacity must be provided to ensure care is provided in a timely manner.[18]

14     **E.    California Department of Corrections and Rehabilitation ("CDCR")[19]**

15

16     38.    The California Department of Corrections and Rehabilitation

17 ("CDCR") dental policies and procedures ("Dental P&P") are also a source of

18

19

---

20 [15] I was a member of such a team.

21 [16] *U.S. v. Lupe Valdez, Sheriff of Dallas County, Texas*. Civil No. 307 CV 1559-N (N.D. Texas 11/06/07), R.8, Agreed [Consent] Order, p. 12, ¶ 13.

22 [17] Lake County Jail Settlement Findings Letter. Re: Investigation of the Lake
23 County Jail. December 7, 2009. Accessed at:
   http://www.justice.gov/crt/about/spl/documents/Lake_County_Jail_findlet_12-07-
24 09.pdf February 4, 2021.

25 [18] *See, e.g.*, United States v. Dallas County, Texas; Lupe Valdez, Sheriff of Dallas County, Texas (in her official capacity), Civil No. 307 CV 1559-N (N.D. Tex.),
26 2007 U.S. Dist. LEXIS 98386, ¶ 13 (injunction related to conditions of confinement in the Dallas County and Cook County jails); United States v. Cook County, Illinois,
27 et al., Case 1:10-cv-02946, Document 3-1 (filed May 13, 2010), ¶ 58.

28 [19] The CDCR dental policies and procedures ("P&P") are set forth in the Health Care Operations Manual, Chapter 3, Article 3 ("Dental P&P").

guidance for the standard of care.  These Dental P&P, which emerged from the 2005 *Perez* settlement agreement and more than 5 years of federally supervised monitoring, have been in effect for almost 20 years.  While the Dental P&P governs dental treatment of people incarcerated in prison, it is a useful point of reference for the treatment of those incarcerated in the Jail with sentences of a year or more[20] as well as clinical issues common to jails and prisons.

39.    CDCR's dental treatment priorities are based on a Dental Priority Classification System.  The Dental Priority Classification System includes two levels of routine care:  interceptive and rehabilitative care.  Interceptive care is primarily for treating conditions that—absent prompt treatment—would likely worsen.  Examples are advanced decay, and non-surgical periodontal treatment (specifically, scaling and root planing).  Rehabilitative care comprises chewing difficulty due to an insufficient number of posterior teeth, gingivitis and slight (early) periodontal disease, decay or tooth fractures that require definitive restorative materials, and root canal treatment for anterior teeth, which are restorable with available restorative materials.

**F.    Scientific and Correctional Literature**

40.    The scientific literature, specifically the dental literature, sets forth the foundation that underlies the standard of care with respect to the diagnosis and treatment of conditions such as dental caries and periodontal disease.  *See* **Exhibit D**.  The correctional literature applies the scientific literature to the correctional environment.

**METHODOLOGY**

41.    As explained *supra*, the purpose of this report is to analyze the policies and practices of the Jail's dental system and the way those policies and practices

---

[20] In fact, before the passage of AB 109, many people incarcerated in jails would have been CDCR prisoners.

create risk for the incarcerated population.

42.    The report is based on my inspection of three of the Jail facilities and my review of documents, in particular:  (1) incarcerated person dental charts,[21] including and sick call requests and grievances related to dental care; (2) Sheriff's Department and NaphCare dental policies and procedures, including nursing protocols for dental pain; (3) the deposition transcripts of Sheriff's Department and NaphCare employees; and (4) other documents produced to Plaintiffs' counsel regarding dental care, including but not limited to email correspondence and sick call request lists.  (As noted above, a detailed description of the materials I reviewed is Exhibit B).

43.    A summary of the site inspections and additional explanation on my review of incarcerated dental charts are below.  Additional detail on the charts I reviewed is set forth in **Exhibit C**.

**A.    Site Visits**

44.    On February 6 to 8, 2024, I visited three facilities along with Plaintiffs' counsel and physician and psychiatrist experts to inspect the dental clinics of the three facilities.  Only one facility (Las Colinas) had a dentist present.

45.    Each jail I visited had a dental clinic.  I visited Central on February 6, 2024.  The clinic has two treatment rooms (operatories), neither of which was being used at the time.  Both treatment rooms are adequate from a dental perspective.

46.    I visited George Bailey on February 7, 2024.  The clinic has one treatment room.  A dentist was not present; however, I spoke with a dental hygienist (Claudia, last name unknown) who had recently started working at the jail.  She told me that she does cleanings (prophys) but does not provide periodontal treatment (i.e., scaling and root planing).  She told me that she does not document periodontal

---

[21] Many of the charts produced by Defendants were difficult to review, as they are missing the letters "l" and "i," making them nearly impossible to search electronically.

probing but does "spot probing" (see discussion of periodontal disease *infra*).

47.     I visited Las Colinas on February 8, 2024.  The clinic has two treatment rooms.  A dentist, who I believe to be Dr. Patel, was present; however, she told me that she had been directed not to speak to me.  Counsel for the Sheriff's Department, who was present for the inspection, stated that her office had not issued any such instruction.  It is therefore my understanding that the direction not to speak to me was issued by NaphCare.  There were no patients in the clinic at the time I was there.  I returned to the clinic later in the day and was told that Dr. Patel was examining patients in the housing units since the dental assistant was out sick.

48.     While all the treatment rooms were adequate from a dental perspective for current staffing, any clinic with only one treatment room (such as George Bailey) is limited because a dentist and dental hygienist cannot work at the same time.  When dentist staffing is increased substantially (as I believe it must be), it is likely that clinics will have to be expanded or an additional shift added.[22]

**B.     Chart Reviews**

49.     Although my opinion is based in part on my review of the individual treatment records of a subset of the *Dunsmore* class, as explained in more detail below, my review of those records was not an end in itself; rather, it was a means to illuminate systemic problems.

50.     All people need dental care at some point during their life, and such a need may arise during any person's incarceration.  However, not every person incarcerated in the Jail has requested dental care.  As a result, selecting a random sample of the incarcerated population to review their medical records is not an efficient way to analyze the Jail's dental care system.  Rather, any analysis of medical records should focus on those individuals who requested either routine or urgent dental care during the period of interest.

---

[22] This was done in CDCR to accommodate increased staffing resulting from the *Perez* settlement. Shulman p. 30.

### 1.    Selection of Dental Records

51.    My preference is to select records randomly from a list of individuals who requested care.  From my experience performing epidemiologic and health services research in the military, academics, and monitoring correctional dental care, I am confident in stating that random sampling is the gold standard that inferences made from randomly sampled data are reliable.

52.    I was provided with such a list (SD 727540) and requested that I be allowed to select a random sample of those records for review.  Through counsel for the Plaintiff class, I identified a random sample of dental records from the list from Defendants.  To ensure that the sample of 1,773 entries was random, I first sorted the dataset by "Booking Number," then selected the first 40 names of individuals who were identified at booking as having a condition associated with urgent care such as infection, abscess, or pain; the first 80 names of individuals with urgent care complaints whose appointment was not made at booking; and the first 40 individuals who requested care for the treatment for cavities (*i.e.*, routine care).  However, I was informed by Plaintiffs' counsel that Defendants were not willing to provide the set of records I requested.

53.    Rather, Defendants provided 45 records that they had selected; 24 were categorized as "requests for dental services," and 21 were "outside dental referrals." According to correspondence from Defendants' counsel, the "requests for dental services" group were selected by "[r]eviewing actively pending dental sick calls" and were "[r]andomly selected"; the "outside dental referrals group" were selected by "[r]eviewing Utilization management queue to identify people who were approved for dental care."  I understand that Plaintiffs' counsel requested additional information about this selection process, including what randomization method was used to "randomly" select records from the dental sick call list, but no additional information was provided.  Since I did not select these records, I am forced to accept Defendants' representation that these records are truly a random sample of class

1    members who sought dental care during their incarceration in the Jail.

2    54.    I also reviewed ten charts of incarcerated people based on interviews I

3    performed in the housing areas during the inspections.  I introduced myself and

4    asked if they would like to talk to me about any dental issues.  I asked those who

5    had issues if they would consent to my reviewing their dental chart.

6    ## 2.    Calculation of Wait Times

7    55.    As explained in more detail below, the standard of care requires people

8    complaining of pain to be evaluated *by a dentist* within the following time frames:

9    a.    Incarcerated people complaining of a toothache should be **seen**

10   **by a dentist within 3 business days**, unless they have been started on antibiotics,

11   are experiencing severe pain, or their pain cannot be managed by analgesics, in

12   which case they should be **seen by a dentist the next business day**.

13   b.    Incarcerated people referred to an oral surgeon for the extraction

14   of infected teeth should have the teeth extracted **within three weeks**.

15   56.    For each dental record I reviewed, I calculated the number of days

16   between a person requesting dental care and being seen by the dentist.  My focus in

17   reviewing the records was therefore on sick call request slips regarding dental

18   issues, forms memorializing the outcome of dental examinations, progress notes and

19   sick call summary entries related to dental issues, and offsite consultants' treatment

20   plans and operative notes.  I assume that I have been provided with the complete set

21   of records for each individual, *i.e.*, that I was able to see all records that the

22   examining dentist had at the time of treatment.  I also reviewed all x-rays that were

23   present.[23]

24

25

26   [23] Only panoramic x-rays were present in the charts I reviewed.  The panoramic x-rays taken at the Jail did not have the dates on which they were taken.  Notably, Defendants in this litigation represented that all x-rays taken had been produced to Plaintiffs' counsel.  Email from E. Pappy to H. Chartoff, May 17, 2024.  However, in at least one instance, there is reference to a bitewing x-ray taken by Dr. Patel, which is not present in the chart I reviewed.  SD 842916 – 842921.

57.     In assessing timeliness, I started the "clock" on the date recorded by the incarcerated person on the sick call request slip describing the painful condition.  If that date was not legible, I used the date stamped by the Sheriff's Department as the day the sick call request was received.  If another part of the medical record, *e.g.*, the sick call summary or progress notes, indicated that the incarcerated person had a dental complaint related to pain and the sick call request was not in the chart, I used that date on the other record as the start date.

58.     I stopped the clock when the incarcerated person was seen by a dentist to assess the problem—irrespective of the treatment provided (if any)—the date on which the person was documented as having refused the dentist appointment, the date the incarcerated person was discharged, or the date on which the chart was pulled for production.[24]

59.     Notably, based on the documents I have reviewed, I have some skepticism that the Sheriff's Department is appropriately documenting refusals, *i.e.*, that incarcerated people are not refusing dental appointments, but are merely not being told that they had the appointment.  As noted throughout Exhibit C, nearly all the refusal forms I saw were not signed by the incarcerated person, or even signed by healthcare staff.  Rather, they were signed by deputies only.  In addition, Plaintiff Ernest Archuleta reported in his deposition that several of the "refusals" in his own medical record were not correct, and he had not actually refused medical care or treatment as his record reflected.  *See* Archuleta Tr. at 187:9-18.  It should go without saying that failing to alert incarcerated persons with a painful dental condition that they have an appointment with a dentist and therefore denying that person the opportunity for treatment falls below the standard of care.

---

[24] Most of the incarcerated persons who submitted sick call requests stating pain were triaged by nurses and provided with analgesics or referred to a nurse practitioner to evaluate a possible infection.  In many cases, the nurses did not make a referral to dental sick call.  However, a nurse appointment is not a substitute for evaluation by a *dentist*.

60.    However, for purposes of calculating the timeliness of the Jail's dental care, this report assumes that each of these refusals was valid.  As explained below and in Exhibit C, even with that assumption, urgent dental care appointments in the Jail are rarely timely.  To the extent that "refused" appointments were not truly refused by the patient, this report is therefore an **understatement** of the true wait time for dental care in the Jail.  Similarly, when an incarcerated individual was discharged with an open urgent care request, I used the individual's discharge date as the endpoint of the timeliness calculation.  As with refused appointments, these discharge dates **understate** the true wait time—had the person remained in the Jail's custody, the clock would have kept running until they received treatment.  Notably, 22 percent of all endpoints were calculated based on a discharge date, rather than a treatment date (*see* Table 1, Col. E).  In other words, a significant portion of the requests for urgent care made in these records were simply never answered by a dentist; the patient complaining of pain was simply released, after waiting in pain for far longer than the standard of care would dictate.

61.    To determine timeliness of offsite consultations, I calculated the time between when the referral was initiated and the surgery was completed.  However, when relevant, I also note the time when, in my opinion (based on reviewing the chart and x-rays), the referral should have been initiated.

62.    I report the median wait time because the median (rather than the mean) is a robust and resistant estimate of the population and is particularly useful when a distribution is not symmetrical as is this one, since there are more long wait times than short wait times.  The median is less influenced by these outliers than the mean.[25]

63.    I reviewed 55 charts; 45 selected by the Defendants' counsel, and 10

---

[25] Reigleman RK and Hirsch RP, 2nd ed. Studying a study and testing a test. How to read the medical literature. Little Brown & Company, 1989.

1  selected based on cellside interviews with incarcerated persons.

2      64.    The Table below summarizes my findings.

| Table 1. Summary of Chart Review - Urgent Care Provided Onsite | | | | |
|---|---|---|---|---|
| **Defendants' Selections** | | | **My Selections** | **All Charts** |
| | **Offsite Referrals** | **Requested Services** | **All Defendants' Selections** | | |
| | A | B | C | D | E |
| Number of Charts | 21 | 24 | 45 | 10 | 55 |
| Number of Urgent Care Wait Times Calculated | 85 | 74 | 159 | 21 | 199 |
| Median Wait Time (Days) | 22 | 25 | 24 | 23 | 24 |
| Number of Documented Refusals | 4 | 12 | 16 | 6 | 22 |
| Number of Imputed Endpoints | 13 | 23 | 36 | 8 | 44 |
| Imputed Endpoints (%) | 15.3 | 31.1 | 22.6 | 20.0 | 22.0 |
| Untimely (>3 Business Days) Wait Times | 71 | 67 | 138 | 38 | 176 |
| Untimely (> 3 Business Days Wait Times (%) | 83.5 | 90.5 | 86.8 | 95.0 | 88.4 |

| Table 1. Summary of Chart Review - Urgent Care Provided Onsite | | | | | |
|---|---|---|---|---|---|
| **Defendants' Selections** | | | | **Mv Selections** | **All Charts** |
| | **Offsite Referrals** | **Requested Services** | **All Defendants' Selections** | | |
| Untimely (>7 Days) | 69 | 65 | 134 | 36 | 170 |
| Untimely (>7 Days) (%) | 81.2 | 87.8 | 84.3 | 90.0 | 85.4 |

65.    The 45 charts provided by the Defendants represent 159 dental visits for urgent care or open treatment requests that were pending when the incarcerated person was discharged or the chart was pulled,[26] of which 85 were from the referral group and 74 were from the requested dental services group.[27]  The median wait time for these urgent care dental visits was 24 days.  The median wait time for dental visits in the outside referral group was 22 days, while that of the patients who requested dental care was 25 days.  The 10 charts I selected represent 21 urgent dental visits, for which the median wait time was 23 days.  The median urgent care wait time for all 55 charts reviewed was 24 days, for 199 total appointments.

66.    Of the 199 onsite urgent care appointments (across all 55 charts) for which wait times were calculated, 176 (88.4%) were untimely; that is, outside the 3 business day window.  Even using the 7-day "standard" suggested by NaphCare, *see*

---

[26] There were 36 (22.6%) such occurrences where the computed wait time represented underestimates.

[27] Several of the wait times were calculated using the date the chart was copied as the endpoint.

1  SD 1572589, 170 (85.4%) would be untimely.[28]

2      67.    Of the 21 charts in the offsite referral group, 15 documented completed

3  surgery, and 6 endpoints were imputed.  While most of the referrals were made by

4  dentists, four were made by physicians.  The median time to completion of surgery

5  was 94 days.[29]

6      **C.    San Diego County Jail Population**

7      68.    The *Criminal Justice Realignment Act of 2011* made significant

8  changes to the sentencing and supervision of persons convicted of felony offenses;

9  one the most significant changes being the place where the sentence for certain

10  crimes is to be served.  Couzens and Bigelow, p. 6.[30]  As a result, the populations of

11  county jails and the median sentence lengths have increased, turning transitory jails

12  into hybrid jail/prison facilities.  For example, I am aware of at least one individual

13  serving a fifteen-year sentence in the San Diego County Jail.[31]  The provision of

14  dental care in county jails has been substantially impacted since 2011 since the

15  longer sentences carry with them a responsibility for providing more comprehensive

16  care.

17      69.    Prior to realignment, it was not unusual for dental care provided to

18  people incarcerated in jails to be restricted to treating conditions associated with

19  pain (*i.e.*, urgent care), while treatment for non-painful conditions (*i.e.*, routine care)

20  was not provided.  However, people incarcerated for a longer stays require a larger

21  array of dental services.  Consequently, jails must be prepared to provide longer-

22

23  ───────────────

24  [28] It is notable that there is only a 3 percentage point difference in untimely urgent care appointments between categories.

25  [29] It is notable that referrals made by the medical department led to more timely surgery because these referrals were generally to hospital emergency departments

26  which bypassed the cumbersome NaphCare utilization management process.

27  [30] Couzens, J. R., & Bigelow, T. A. (2017). *Felony sentencing after realignment.* Retrieved August 13, 2024 from *www.courts.ca.gov/partners/documents/felony_sentencing.pdf.*

28  [31] *See* San Diego Who's In Jail search of ███████████.

term incarcerated people with the dental services that would have been provided if

they were incarcerated in CDCR.  Since California jails have evolved into a jail-

prison hybrid, the scope of services provided and standard of care for San Diego

County Jail should consider both jail and prison standards.  Indeed, the Sheriff's

Department's Chief Medical Officer, Jon Montgomery, agrees.  As he explained in

an email:

> In the California detentions / corrections system,
> individuals could potentially serve their prison time in a
> jail setting.  A generalized "blanket" refusal of services (in
> this case, a root canal) … just because they are in jail … is
> discrimination by geographic location, and would be
> considered "deliberate indifference."

SD 227525.

70.    To illustrate, the table below shows that in 2022 1,541 incarcerated

people (2.9%) were in custody for more than six months, and 897 incarcerated

people (1.6% of releases) were in custody for a year or more.  So, while it is true

that the vast majority are transients for whom only urgent care need be provided,

there is a significant population for whom urgent care alone is insufficient.

| Table 2. San Diego Sheriff's Department Releases from Custody by Length of Stay (LOS), 2022[32] | | | |
|---|---|---|---|
| LOS Group | Number of Releases | Percent of Releases | Cumulative Percent |
| 0 to 7 Days | 39,857 | 73.9 | 73.9 |
| 8 to 14 Days | 2,413 | 4.5 | 78.4 |
| 15 to 30 Days | 2,309 | 4.3 | 82.7 |
| 31 to 90 Days | 4,521 | 8.4 | 91.1 |
| 91 to 180 Days | 2,362 | 4.4 | 95.5 |
| 181 to 365 Days | 1,541 | 2.9 | 98.4 |
| 366 to 730 Days | 602 | 1.1 | 99.5 |
| 731 or More Days | 295 | 0.5 | 100.0 |
| Total Releases | 53,900 | | |

_____

[32] Data from "San Diego County Sheriff's Department Releases from Custody by

71.    The demographics shown above have implications for dental staffing. First, jail admissions, as a class, have a substantial need for urgent care since many people bring with them the result of years of dental neglect.  It is often not until they are incarcerated and are deprived of the drugs and alcohol that modified their threshold for pain that they become aware of their dental problems.[33]  On the other hand, while people incarcerated in prison may have substantial urgent care needs when they are admitted, once they are stabilized, there will be less demand for urgent care.  For that reason and the volume of admissions, jails require more dentists than prisons to provide timely care.  Makrides et al., p. 557.  Second, there should be sufficient staffing at the Jail to provide routine care to longer-term incarcerated people.

## OPINIONS

72.    My opinions and basis for them are as follows.

73.    Dentists in a correctional setting should be prepared to treat at least the following dental conditions: odontogenic pain, dental caries, periodontal disease, gingivitis, pulpitis, lost fillings or crowns, fractured teeth, and chewing difficulty. Failure to diagnose and treat these conditions in a timely manner can have a serious effect on incarcerated people's overall health and wellbeing.  Critically, dental conditions when untreated can result in gratuitous pain and tooth morbidity and mortality (*i.e.*, tooth loss).  Each of these conditions and their means of diagnosis is explained in more detail in **Exhibit D** to this report.

74.    In addition, nearly all dental conditions are progressive, *i.e.*, they get worse over time.  For that reason, timely care is critical to ensure that dental conditions do not progress, resulting in otherwise preventable tooth loss.  As part of

---

Length of Stay (LOS) and Release Year January 1, 2021, to July 31, 2023."  Note 2022 is the last year for which complete data are available.  SD 105822.

[33] Shulman JD, Sauter DT. Treatment of odontogenic pain in a correctional setting. *Journal of Correctional Health Care* (2012) 18:1, 62-63 (*hereinafter* "Shulman and Sauter").

the standard of care, this report lays out specific timeframes for certain examinations and treatment, which are necessary to ensure that dental conditions do not progress.

75.    Under the terms of the June 2022 NaphCare contract for provision of health care services at the Jail, NaphCare is "the prime provider for oral care services" at the Jail.  County Contract No. 566117, SD 125534.  NaphCare was instructed to "establish dental services in accordance with guidelines for dental evaluation and treatment," including with a "priority system," and include the following services:  "[e]mergency and routine dental care," "[t]emporary fillings," "[i]ncision and drainge," "[c]ontrol of bleeding," "[n]ecessary emergency surgery," "[c]linically indicated extractions," "[r]eferral to dental specialist if needed," and "[m]edically necessary dental-related prescriptions."  SD 125535.

76.    As explained in more detail below, it is my opinion that the Sheriff's Department—through its contract with NaphCare and its failure to conduct appropriate direction and oversight of that contract—fails to provide adequate dental care to incarcerated people at the Jail.  As a result of those failures, incarcerated people at the Jail face a risk of substantial harm, including gratuitous pain and loss of tooth structure and teeth in the long term.

**A.    Untimely Urgent Care**

77.    In my opinion, based on a reasonable degree of certainty, the Jail's treatment of incarcerated people with painful conditions is untimely—and therefore inadequate—as to both onsite care and offsite referrals.

78.    Urgent care is treatment for painful conditions such as a toothache, a common complaint of incarcerated people.  Because dental conditions can progress absent timely treatment, it is important that a dental program have appropriate policies, procedures, protocols, and enough treatment capacity to ensure that the treatment of painful conditions is sufficiently timely to prevent gratuitous pain.  All incarcerated people should be provided timely urgent care.

79.    As explained in more detail below, incarcerated people complaining of

a toothache should be **seen by a dentist within 3 business days**, unless they have been started on antibiotics, are experiencing severe pain, or their pain cannot be managed by analgesics, in which case they should be **seen by a dentist the next business day**. The dentist must then devise a treatment plan to remove the infection and manage the incarcerated person's pain and schedule the incarcerated person for treatment by date certain, as determined by reasonable exercise of the dentist's clinical judgment. Incarcerated people referred to an oral surgeon for the extraction of infected teeth should have the teeth extracted **within three weeks**.

80.    Failure to meet these timelines for urgent care can negatively affect the health of incarcerated people in multiple ways. First and foremost, it results in gratuitous pain. Second, it can lead to the progression of dental conditions, possibly resulting in unnecessary tooth loss. And finally, it generally results in several otherwise unnecessary courses of antibiotics. Prescribing antibiotics unnecessarily is not a benign practice. Bacterial resistance to antibiotics has been clearly associated with exposure to antibiotics, the inappropriate and the increased volume of which has elevated bacterial resistance to a major public health concern and has made an increasing number of infectious diseases difficult to treat. Shulman and Sauter at p. 67.

81.    Sheriff's Department's Policy MSD.D.2 purportedly lays out a priority system for dental care, with timeframes for different types of emergent and urgent care.[34] However, none of the charts I reviewed used the classification system to indicate the level of within the "urgent" category. In fact, there is no place on the dental chart for these levels to be recorded. Based on my chart reviews, the system

---

[34] San Diego Sheriff/s Department, Medical Services Division, Operations Manual. Dental Services: Emergency & Routine. Policy MSD.D., 11/4/2002. While the definition of Emergency care is standard among correctional institutions, the Jail's classification of Urgent Care parallels the Dental Priority Classifications ("DPC") used in CDCR. CDCR Health Care Operations Manual, 3.3.5.4 (Dental Priority Classifications), Appendix 1. Specifically, DPC 1A (treatment within 1 calendar day), DPC 1B (treatment within 30 days), and DPC 1C (treatment within 60 days).

described in MSD.D.D2 is at best theoretical. Indeed, the Sheriff's Department appears to be unaware of what the appropriate timeframe for dental care is. The March 4, 2024 Corrective Action Notice ("CAN") response includes this question: "What is the (correctional) industry standard for dental sick call wait times? What are NCCHC standards? NaphCare stated there are no standards or thresholds." SD 1572589.

82.    As explained below, it is my opinion that, in practice, the Sheriff's Department fails to provide urgent care to incarcerated people in a timely fashion, both in its onsite dental clinics and via offsite referrals.

### 1.    Untimely Onsite Treatment for Painful Conditions

83.    In my opinion, based on a reasonable degree of certainty, the Jail's onsite treatment of incarcerated people who complain of painful dental conditions is inadequate because it is untimely.

84.    Incarcerated people experiencing painful dental conditions should be examined by a nurse practitioner ("NP"), physician assistant ("PA"), or physician ("MD" or "DO") within 24 hours of the complaint being received by the facility staff. The NP, PA, or physician may prescribe antibiotics for dental abscesses at that preliminary examination, as appropriate. However, all incarcerated people complaining of dental pain must be scheduled to see a dentist, since only a dentist is qualified to make a definitive diagnosis on dental issues and determine the clinically appropriate sequence of care. Shulman and Sauter at p. 56.

85.    Incarcerated people who (a) complain of severe dental pain (*i.e.*, pain that interferes with normal daily activities, such as eating and sleeping), (b) are prescribed antibiotics for dental pain, or (c) whose pain is not relieved by analgesics such as Tylenol should be seen by a dentist within one business day of their preliminary examination by a non-dentist.[35] Incarcerated people complaining of

---

[35] I use the term "business days" as opposed to "clinic days" because correctional

1  pain that is not severe, who have no signs of infection, and whose pain can be

2  managed by analgesics such as Tylenol should be seen by a dentist within three

3  business days.

4      86.    At the dental appointment, the dentist should:  diagnose the source of

5  the problem; determine the appropriate course of treatment; and, if treatment cannot

6  be provided the same day, schedule the incarcerated patient for follow-up treatment

7  on a date certain, as dictated by a reasonable exercise of the dentist's clinical

8  judgment.  In the case of odontogenic infections where an antibiotic has been

9  prescribed, the dentist should remove the source of the infection, *i.e.*, establishing

10  drainage through the tooth or extracting the non-restorable tooth, while the patient

11  has a therapeutic blood level of the effective antibiotic:  typically, between seven

12  and ten days after the patient began taking antibiotics.  Shulman and Sauter, p. 66.

13  Failing to schedule an appointment for treatment, or simply adding the incarcerated

14  person to a waitlist for a follow-up appointment without reference to a specific

15  follow-up date, does not meet the standard of care.

16      87.    More detail on the appropriate treatment for various dental conditions

17  is included in the section on Routine Care, *infra*.  The same standards of care for

18  those conditions apply regardless of whether the condition was diagnosed at an

19  urgent care appointment or a routine care appointment.  However, the need for

20  dental care remains urgent—as opposed to routine—until the source of infection is

21  removed or the pain is mitigated.

22      88.    Under Sheriff's Department Policy M.17, incarcerated people

23  complaining of dental pain are generally directed to write their request for dental

24

25  institutions may not circumvent these timeliness requirements by limiting the
   number of days that the dental clinic is open.  However, in institutions that have a

26  dental clinic—staffed by a dentist—open at least four days per week, it may be
   appropriate to state this standard as "the next clinic day" as opposed to "within one

27  business day."  Note that the "three business day" timeliness standard for
   incarcerated people with pain that is not severe, who do not show signs of infection,

28  and whose pain can be managed by Tylenol or other analgesics remains the same.

care on a sick call slip.  SD 0115784.  Those sick call slips are triaged, and incarcerated people are seen initially by "health staff."  *Id*.  If health staff determine that "a need exists, the incarcerated person will be scheduled for the earliest possible dental appointment."  *Id.*  In particular, based on my review of documents and conversations with staff during the inspection, I understand that the initial interactions, triage, and dental sick call scheduling are completed by nurses.

89.    My review of the charts showed that timely treatment for urgent conditions was a rarity.  Rather, in most instances documented in the dental records, both those provided by Defendants and those that I selected from interviews on the inspections, incarcerated people waited weeks—if not months—to be evaluated and treated by a dentist after complaining of pain, as described in more detail in Exhibit C.  This falls well below the standard of care.  And, because of the Jail's untimely treatment, incarcerated people experience gratuitous pain, tooth morbidity, preventable courses of antibiotics, and tooth mortality.

90.    According to my review of the records, delays affected incarcerated people's access to dental care in two stages of the process:  (1) the time between an incarcerated person's complaint of dental pain and their evaluation by a dentist, and (2) the time between being evaluated by a dentist and provided with treatment for that pain.

91.    First, my review of the medical records provided shows that untimely dental evaluations—*i.e.*, evaluations *by a dentist*—of people reporting tooth pain to determine the source of that pain are the norm in the Jail.  For example, ███████ ███████notified the Jail about "a painful tooth" that "need[ed] to be pulled" via sick call slip on ███████, 2023, but had not seen a dentist as of ███████, 2024—**75 days later**.  SD 1008641.  ███████████ again requested "teeth extractions" via sick call slip on ███████, 2023, SD 1013567, but was not scheduled to see a dentist until ███████, 2024—**38 days later**, SD 1013610- 14.  These examples (and the many others documented in Exhibit C) fall far short of the three-day

waiting period that is the standard of care.  Of the 199 urgent care appointments I reviewed, 176 (88.4%) fell **outside** the three-day standard of care.[36]  As noted above, these calculations **understate** the extent of untimely care in the Jail, given that I stopped the clock as of the date a person awaiting care was released from the Jail, even if they did not receive any treatment, and that I have assumed for purposes of this report that all documented "refusals" are accurate.

92.    Other documents produced by Defendants confirm that patients complaining of dental pain frequently wait far longer than three days to see a dentist.  NaphCare's "Completed Dental Sick Calls Report" for December 2023, NAPHCARE034741, provides an example.  Angela Nix, on behalf of NaphCare, explained that the "Appt Created" notation is the date that a dental appointment for a particular individual was "generated," *e.g.*, requested by a nurse after a sick call request was reviewed.  Nix I Tr. 214:1-12.[37]  The "Completed Date" notation is the date the patient was seen at the dental clinic.  *Id.* at 214:22-24.  Ms. Nix later testified that "Completed Date" could also be the date the appointment was cancelled automatically in TechCare if the patient was released from the jail.  *Id.* at 218:12-219:4.

93.    The December 2023 Completed Dental Sick Calls Report reveals numerous instances in which the "Appt Created" date is well over a week prior to the "Completed Date," for visits related to urgent care.  For example:

- ████████████████████████████████████████████

---

[36] According to the March 4, 2024 response to the CAN, the Sheriff's Department and NaphCare have been applying a seven-day waiting period.  SD 1572589.  Even under that waiting period—which in my opinion is too long and requires incarcerated people to suffer gratuitous pain—the charts I reviewed show that most urgent dental care is untimely.

[37] Several of the entries indicate that dental sick call appointments were generated when a person is booked at the Jail, for a potential routine care appointment.  Those entries are not relevant to my analysis of urgent care.  The flaws with the Jail's routine care program are discussed *infra*.



NAPHCARE034741.  The list goes on.  *See id.*  Critically, the Completed Dental

Sick Calls Report represents only part of the delay incarcerated people experience

while waiting to receive urgent dental care.  It does not reflect any delays between

an incarcerated person first requesting care, *e.g.*, in a sick call request form, and a

Jail staff member generating the appointment request in the system.  For example, as

explained above, ████████ again submitted a sick call slip for a toothache dated

████████ 2023, SD 1006882, but was not seen by a dentist until ████████,

2023.  The Dental Sick Calls Report for ████████ 2023 reflects ████████

"Completed" appointment on ████████, but it reflects an "Appt Created"

date of ████████, 2023—16 days after ████████ initially requested to see the

dentist.  In other words, the delays incarcerated people experienced in receiving care

are likely even longer than the delays reflected in this spreadsheet.

94.    Notably, the Sheriff's Department also relies on nurses (RNs) to "treat"

dental pain without seeing a dentist every time—a practice that falls below the

standard of care.  Indeed, Ms. Nix, testifying on behalf of NaphCare, stated that

some complaints of dental pain are not reviewed by a dentist.  Nix II Tr. at 57:20-

58:2 ("If it's just a general toothache, and Tylenol would help, that may not require

a dentist.").  Based on my review of the records, it appears that nurses in the Jail are

instructed to conduct a preliminary evaluation of incarcerated people complaining of

dental pain, which is documented on a Dental Complaint form in TechCare.  *E.g.*,

Dental Complaint form for ████████, ████████ 2023, SD 824889-91.  The

Dental Complaint form itself lists multiple options for the nurse's course of action after the evaluation, one of which is "Refer to Dentist or Advanced Clinical Practitioner (ACP) for sick call if infection or severe pain present." *Id.* at SD 824890. That instruction suggests that nurses should *not* refer a patient to dental sick call *unless* there is an infection or "severe" pain. Several of the charts I reviewed contained Dental Complaint forms in which the "Refer to Dentist" option is not selected. **However, an evaluation by a nurse is not a substitute for one by a dentist, nor does it restart the three-day waiting period dictated by the standard of care.**

95.     In the records I reviewed, there were numerous examples of incarcerated people complaining of dental pain, then being seen by a nurse following that complaint, but still not seeing a dentist in timely manner. For example, ▮▮▮▮▮ notified the Jail that he had a toothache causing him pain when eating on ▮▮▮▮▮ 2023. SD 825184. Nursing staff filled out two dental complaint forms for ▮▮▮▮▮: on ▮▮▮▮▮ 2023, SD 824889-91, and on ▮▮▮▮▮ 2023, SD 824892-93. However, ▮▮▮▮▮ still had not been evaluated by a dentist as of ▮▮▮▮▮ 2024—**82 days after** he initially notified the Jail of his toothache. Similarly, ▮▮▮▮▮ notified the Jail that she was experiencing tooth pain via sick call request on ▮▮▮▮▮, 2023. SD 1006583. A nurse filled out a dental complaint form regarding ▮▮▮▮▮ on ▮▮▮▮▮ 2023, SD 1006538-40, but there is no indication that ▮▮▮▮▮ was seen by a dentist by the time she was released on ▮▮▮▮▮ 2023 release—**32 days after** she notified the Jail of her toothache.

96.     Relatedly, I found multiple instances of dental assistants filling out examination forms at dental sick call, without any indication that a dentist was present. *E.g.*, ▮▮▮▮▮, SD 826071 – 826076. Completing an examination of a patient—or interpreting x-rays or diagnosing dental conditions—is beyond the scope of a dental assistant's practice. A dental assistant is not a replacement for a

1    dentist.  Therefore, if dental assistants attempt to complete such an examination,

2    they only succeed in further delaying an individual's care, because the person still

3    needs to be seen by a dentist.  To the extent that the Sheriff's Department is

4    attempting to have dental assistants provide care to incarcerated people *instead of*

5    dentists, that falls below the standard of care.

6        97.    Second, even after a patient complaining of dental pain is evaluated by

7    a dentist, the Jail routinely fails to timely provide the treatment recommended by the

8    dentist and agreed to by the patient.  Multiple examples in the records I reviewed

9    show dentists (finally) seeing a patient in pain, diagnosing caries, marking the

10   decayed tooth for extraction, noting that the patient agreed to the extraction, but

11   neither extracting the tooth during that examination nor scheduling the patient for a

12   timely follow up appointment.

13       98.    The case of ███████████ decayed tooth #3 is illustrative.  ███████

14   reported a dental problem to the Jail via sick call slip on ███████████ 2021, SD

15   1005835, and was not seen by a dentist for 22 days, SD 1005874.  During her

16   ███████████ 2021 dental appointment, Dr. Polanco determined that tooth #3 was

17   decayed, and ███████ elected to have it extracted.  SD 1005874-77.  However,

18   Dr. Polanco did not extract the tooth that day, nor did he schedule ███████ for a

19   follow-up appointment.  SD 1005875-77.  Despite ███████████ submission of

20   additional sick call slips, she was not seen by a dentist, nor was tooth #3 extracted as

21   of her ███████████ 2021 release—**80 days after Dr. Polanco determined that it**

22   **should be extracted**.  ███████████ was rebooked into the Jail in 2022 and submitted

23   sick call request asking to "see dentist" for a "tooth pull[]" on ███████ 2022.  SD

24   1006227.  On ███████ 2022, Dr. Patel examined ███████, prescribed antibiotics

25   and analgesics, and marked tooth #3 for extraction.[38]  SD 1006266-70.  Because

26   Dr. Patel diagnosed an abscess and prescribed an antibiotic, she should have

27

28   ─────────────────────
     [38] Dr. Patel marked tooth #13 as being decayed and restorable.  SD 1006267.

1    scheduled an extraction appointment within the therapeutic window of the

2    antibiotic, *i.e.*, before ███████ 2022.  However, no such appointment was scheduled.

3    *Id.* ███████ submitted another sick call slip asking to have the tooth pulled on

4    ███████ 2022, SD 1006234, but was not seen by Dr. Patel again until ███████

5    2022, when she is documented as having declined an extraction of tooth #3.  SD

6    1006305-09.  Three days later, ███████ asked via sick call request "[t]o see the

7    Dentist" because she "need[ed] a tooth pulled."  SD 1006243.  However, there is no

8    indication that ███████ was seen by the dentist prior to her ███████ 2022

9    release.  *See* SD 1575334.  ███████ was rebooked in the Jail on ███████

10   2022 and again asked to see a dentist via sick request on ███████ 2022.  SD

11   1006440.  ███████ was seen by Dr. Polanco on ███████ 2022, who finally

12   extracted tooth #3 that day—**one year and 20 days after he first determined it**

13   **should have been extracted**.  SD 1006460-64.  Had Dr. Polanco scheduled an

14   appropriate follow-up appointed following his ███████ 2021 evaluation

15   determining that ███████ tooth #3 should be extracted, it would have saved

16   ███████ from months of pain while incarcerated and unnecessary courses of

17   antibiotics.

18        99.    In my opinion, a principal cause of this consistent untimeliness is

19   inadequate dentist staffing.  Defendants' persistent staffing failures, including

20   Defendants' failure to remedy these issues despite multiple contract amendments,

21   are described in more detail *infra*.  In short, having only two dentists (or the full

22   time equivalent of at most two dentists) to support an average daily population of

23   approximately 4,000 is woefully deficient.  Director of Nursing Serina Rognlien-

24   Hood testified that "there a lot of dental complaints" and that the Sheriff's

25   Department recognizes there is a long wait list to see the dentist, in part due to

26   insufficient dental staffing.  Rognlien-Hood Tr. 35:11-37:25.

27        100.   In addition, it is my opinion that Defendants' system requiring custody

28   staff to escort patients to the dental clinic and limitations on the availability of

1  custody staff to do so attributes to the consistent untimeliness of urgent dental care.

2  Ms. Nix, who testified on behalf of NaphCare, explained that, in order for

3  incarcerated people to be seen in the dental clinic, NaphCare first "provide[s] the

4  command staff [with] a list of patients" to be seen on a given day, then

5  "coordinate[s] with [command staff] whether those patients can be brought to a

6  clinic, [or] whether those patients have to be seen in a housing unit."  Nix I Tr.

7  231:5-11.  If "a patient is needed to be seen urgently that wasn't on the list when it

8  was produced, then … we would communicate that with the custody staff."  *Id.* at

9  231:14-17.

10      101.   According to NaphCare, the coordination with custody staff is not

11  always seamless.  On May 24, 2023, NaphCare informed the Jail that they "continue

12  to receive reports from our dental staff that they are unable to access the patients as

13  needed."  Response to Corrective Action Notice, May 24, 2023,

14  NAPHCARE034658.  An email from Dr. Patel provides an example of one such

15  report on June 6, 2023 at George Bailey.  Email from D. Patel to M. Farrier, June 6,

16  2023, SD 556249.  Dr. Patel documented multiple attempts to obtain custody staff

17  coverage, which would enable her to see patients on June 6, 2023, but was told that

18  the facility was "short staffed."  *Id.*  As a result, she reported that she only had

19  custody staff coverage for 2 hours and 15 minutes that day, limiting her ability to

20  see any dental patients.  *Id.*

21      102.   Indeed, former Assistant Sheriff Theresa Adams-Hydar agreed that

22  inadequate custody staffing could prevent incarcerated persons from attending

23  dental appointments.  Adams-Hylar Tr. 137:9-139: 4.

24      103.   This coordination is even more critical for incarcerated people in a high

25  security status who must be escorted or require other special security arrangements.

26  Shulman et al., pp. 8-16, 8-17.  In my experience monitoring prison and jail

27  programs, incarcerated people in restricted housing have less access to care since

28  they are dependent on custody escorts and subject to movement constraints.

104.   The Jail needs to study how frequently custody staff unavailability leads to delayed access to dental care, including whether this is more common at certain facilities, and create a corrective action plan.

105.   Finally, the documents I reviewed and my inspection of the Jail suggest that equipment malfunctions also contribute to delays in the provision of urgent care.  On the day I visited Las Colinas on February 8, 2024, a handwritten sign indicated that the x-ray machine was broken.  The medical records of ███████ indicate that the x-ray machine at Las Colinas was similarly broken on January 25, 2024.  SD 837496-501.  Other records indicate equipment failures at other Jail facilities as well, *e.g.*, suction equipment broken on December 4, 2023, ███████ ████████████████, SD 841562; equipment broken on June 20, 2023, preventing completion of prophy, ████████ Medical Records, SD 825095-101. Each of these equipment failures contributed to delays in care for incarcerated people.  While I did not review enough charts to determine the extent to which equipment downtime contributes materially to untimely care, these examples are troubling.  This should be studied by the Sheriffs' Department and NaphCare and eventually be followed during monitoring.

## 2.    Untimely and Denied Offsite Treatment for Painful Conditions

106.   In my opinion, based on a reasonable degree of certainty, the Jail's referral process for providing incarcerated people with oral surgery treatment is inadequate and results in untimely care.  While the Jail sends incarcerated people for offsite oral surgery, that surgery is generally untimely.  This causes incarcerated people gratuitous pain and preventable courses of antibiotics.

107.   Offsite treatment by an oral and maxillofacial surgeon is required for some dental conditions such as maxillofacial fractures, removal of skeletal fixation

hardware, severe infections, and complicated extractions.[39]  Jails are responsible for arranging such referrals in a timely manner, as follows:

108.   Incarcerated people with oral infections or fractures that interfere with breathing and swallowing should be referred to a hospital emergency department **immediately** upon the physician or dentist's diagnosis of the condition.  These are potentially life-threatening conditions and must be treated by the emergency department's on-call surgeon.  Shulman and Sauter, p. 67.

109.   Incarcerated people with other maxillofacial fractures should be **referred** to an oral surgeon **the next business day**.

110.   Incarcerated people who are admitted with intermaxillary fixation and cannot open their mouths or have pain related to the skeletal fixation hardware, should be **seen by an oral surgeon** to have the hardware removed **within a week of diagnosis**.

111.   Incarcerated people with infections associated with teeth requiring extraction by an oral surgeon without such complications (progressing to cellulitis, spreading to facial spaces, difficulty breathing or swallowing) should be **seen** by a surgeon for the extraction **within three weeks**.[40]

112.   For a patient to be referred to an oral surgeon, NaphCare must approve the request for a referral.  According to Ms. Nix, who testified on behalf of NaphCare, the approval process for referrals to an oral surgeon is no different from the process for any other outside medical provider.  Nix I Tr. at 222:20-25. Dr. Montgomery, on behalf of the Sheriffs' Department, testified that NaphCare's utilization management ("UM") team evaluates the appropriateness of referrals requested by their contracted providers.  The UM team consists of nurses and is based in Birmingham, Alabama.  Nix II Tr. at 75:9-14.  If the UM team approves the

---

[39] I use the slightly abbreviated "oral surgeon" throughout this declaration.

[40] San Diego is a major metropolitan area, and there is no shortage of oral surgeons.

1  request, it is sent to the Sheriff's Department's for scheduling by its managed care

2  team that has points of contact at various hospitals.  The schedulers would

3  coordinate the appointment with the Sheriff's transportation unit.  Montgomery II

4  Tr. 215:11-216:16.

5       113.  In practice, my review of the records reflects that the Jail consistently

6  fails to meet the timeliness standards outlined *supra*.  Of the 21 charts produced by

7  Defendants in the offsite referral group that I reviewed, 15 charts documented that

8  the requested surgery was completed and 6 had an imputed endpoint (*i.e.*, when the

9  person was released before receiving surgery).  In those 15 completed surgeries, the

10  median time from initiating a referral to the completion of surgery was 89 days

11  compared to 94 days when the six patients with imputed endpoints were included.

12  This is untimely and resulted in gratuitous pain and preventable courses of

13  antibiotics.  It is noteworthy that three wait times less than 10 days were referrals to

14  a hospital emergency department, which I understand bypassed the typical

15  NaphCare utilization management process.

16       114.  It is my opinion that the outside referral approval process—which is

17  governed by NaphCare—contributes to this delay.  Director of Nursing Serina.

18  Rognlien-Hood acknowledged in her deposition testimony that there may be lags in

19  obtaining appointments for off-site services, and that the Sheriff's Department is

20  required to "get approval from NaphCare for the outside [] referral, and then we're

21  at the mercy of whoever NaphCare has contracted with to get that appointment."

22  Rognlien-Hood Tr. at 35:20-36:6.

23       115.  For example, ▮▮▮▮▮▮▮▮ was evaluated in the Jail by Dr. Patel on

24  ▮▮▮▮▮▮▮ 2023, at which point Dr. Patel noted that she would refer ▮▮▮▮▮▮ to

25  see an oral surgeon.  SD 863387.  ▮▮▮▮▮▮▮ was seen by an outside oral surgeon,

26  Brian Mudd, on ▮▮▮▮▮▮▮ 2023, at which point Dr. Mudd completed an "oral

27  surgery evaluation/treatment plan," on which he indicated that ▮▮▮▮▮▮▮

28  wisdom teeth should be extracted under sedation.  SD 863598-600.  Dr. Mudd also

1  noted that ███████ had periodontal disease. *Id.* However, as of ████████

2  2024, ████████ had yet to return to Dr. Mudd to receive the treatment he

3  proposed—**113 days after Dr. Patel initiated the referral**.

4      116.   In addition to the delays imposed by NaphCare's referral process, it is

5  my opinion that incarcerated people are denied access to oral surgeons to treat

6  painful conditions because the Jail's dentists fail to initiate appropriate referrals.

7  The medical records I reviewed contain multiple examples of dentists evaluating a

8  patient complaining of pain, determining that an extraction should be done by an

9  oral surgeon, and merely informing the patient that they would need to seek an oral

10 surgeon in the community.  Unless an individual's discharge is imminent, a dentist's

11 failure to refer the patient to an oral surgeon to treat a painful condition that is

12 beyond the dentist's skill set is below accepted professional standards.

13     117.   For example, ████████████ was evaluated by Dr. Patel in the Jail on

14 ██████ 2022.  SD 860735-39.  During that appointment, Dr. Patel noted that he

15 requested that his painful third molar be extracted under IV sedation, but she

16 informed him that the Jail does not administer IV sedation.  SD 860739.  She

17 prescribed an antibiotic and analgesic but did not schedule a follow-up appointment,

18 nor did she request an oral surgery referral.  *Id*.  Her failure to make an oral surgery

19 referral was below accepted professional standards.

20     118.   As another example, ████████████ appears to have been advised that

21 he should wait until he got to "state prison" to see an oral surgeon for extractions of

22 four teeth.  SD 853274.  As with the preceding exemplars, a dentist's sloughing the

23 patient to the "next" facility in this manner violated the standard of care.

24     119.   Unless the dentist knew that the patient was scheduled to be discharged

25 soon, it is a professional responsibility to make an appropriate referral—and not

26 kick the can down the road by advising the patient to see an oral  surgeon in the

27 community.  This behavior violates the standard of care.

28

### B.    Inadequate Routine Care

120.    Routine dental care comprises the diagnosis and treatment of asymptomatic or non-painful dental conditions.  Timely diagnosis and treatment of such conditions is important because it allows for treatment before the condition progresses to the point that it causes pain and preventable loss of tooth structure or results in a previously restorable tooth becoming non-restorable.  As the NCCHC has explained:

> ***Delaying or deferring restorative care in a correctional setting simply leads to an increase of oral pain, infection, or tooth loss***.  As a result, dental services become inundated with emergency dental sick-call requests and more procedures to replace lost teeth with removable prosthetics.

Adu-Tutu and Shields, p. 4 (emphasis added).[41]

121.    In particular, routine care includes initial and annual dental examinations (a periodontal screening is performed, intraoral radiographs are taken as clinically appropriate, and a treatment plan is made); restoration of caries; diagnosis and treatment of periodontal diseases; oral prophylaxis (cleaning or prophy); and endodontic treatment.

122.    Unlike urgent care, in a correctional setting, routine care may be limited to only the small proportion of admissions who will be incarcerated long enough to be examined and scheduled for such appointments, *i.e.*, incarcerated people who have been sentenced to local custody and those detainees awaiting trial for serious offenses and who have been denied or are unable to make bail.[42]

---

[41] Adu-Tutu M, Shields TE (2008). Guidelines for a Correctional Dental Health Care System. National Commission on Correctional Health Care Guidelines.  Note: this document was in Appendix G (at 167).  It is not in the most recent (2018) Standards but is available on-line at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.ncchc.org/wp-content/uploads/Dental-Health-Care-2014.pdf

[42] For example, less than 5 percent of those placed in the Jail will be in custody after 6 months.  Moreover, incarcerated people who are awaiting trial for serious felonies and are unable to make bail are expected to have long stays until they go to trial.

123.   It is my opinion that the Jail fails to provide routine care to people who are incarcerated in the Jail for an extended period.

124.   Neither NaphCare nor the Sheriff's Department policy appears to specifically outline the scope of routine care services that are offered by the Jail.  In fact, Sheriff's Department Policy MSD.D.2, which purports to describe "Emergency and Routine Dental Services," speaks at length about emergency and urgent care, but consigns routine care to "all other dental care."  Section F.  In particular:  "All other dental care will be provided on a case by case basis.  It will be determined based on the patient's symptoms, oral pathology, and treatment required to restore the patient's ability to function including but not limited to the patient's ability to chew and maintain adequate nutrition."  *Id*.  Similarly, the NaphCare Policy generally defines "Oral Care" as "[i]nclud[ing] instruction in oral hygiene (plaque control, proper brushing of teeth) and examination, and treatment of dental problems."  NAPHCARE001023.  It defines "Oral Treatment" as "[t]reatment provided according to a treatment plan based upon a system of established priorities for care, including a full range of services that in the supervising dentist's judgment are necessary for proper mastication and maintaining the inmate's health state, not limited to extractions."  *Id*.  Both policies are overly general.

125.   In considering the Jail's provision of routine care, it is critical to note the distinction between scope of care—that is, the array of services provided—and quality of care.  While the scope of care at the Jail is limited compared to a private practice and may be based on length of incarceration, it should include (at a minimum) *timely* examinations, extractions, pulpectomies, temporary and permanent restorations, limited endodontics, limited periodontal therapy, and removable prosthetics.  Makrides et al., 2006 at p. 557.  Yet, regardless of any limitation on the scope of care, ***the quality of the care provided is the community standard***.

126.   In my opinion, based on a reasonable degree of certainty, the routine

care provided to incarcerated people is inadequate for the following reasons, and as explained in more detail below: (1) initial and annual examinations are not in conformance with accepted professional standards; (2) the Jail does not adequately diagnose or treat dental caries as required by accepted professional standards, including by failing to provide permanent restorations; (3) the Jail does not adequately diagnose or treat periodontal disease as required by accepted professional standards; (4) the Jail does not provide adequate preventative care, *i.e.*, cleanings; and (5) the Jail does not provide adequate endodontic treatment.

### 1.    Inadequate Initial and Annual Examinations

127.    In my opinion, based on a reasonable degree of certainty, the initial and annual examinations are inadequate both because they rarely occur within the required timeframe—if at all—and they are not informed by documented periodontal probing and bitewing x-rays. Consequently, caries and periodontal disease are underdiagnosed, allowing these conditions to progress to the point of gratuitous pain, loss of tooth structure, or tooth loss.

128.    At the heart of routine care is an examination and treatment plan. Both in correctional facilities and in the community, new patients to a practice should receive an initial examination and follow-up examinations every year ("annual examinations"). The scope of the initial and annual examinations is the same. Such examinations include "taking or reviewing the patient's oral history, an extraoral head and neck examination, charting of teeth, periodontal assessment, and examination of the hard and soft tissues of the oral cavity with a mouth mirror and explorer." NCCHC, J-E-06, p. 98.[43] In addition, both initial and annual examinations must be informed by x-rays. For example, in CDCR, an initial examination includes adequate x-rays; a visual examination and charting to include

---

[43] *See also* Shulman et al, p.8-16; Information Gathering and Diagnosis Development Stefanac, p. 3 ("Accurate diagnostic information forms the foundation of any treatment plan. This information comes from the patient history, radiographs, and the clinical examination.").

existing restorations, missing teeth, and dental decay; oral cancer screening; recording the plaque index; a comprehensive periodontal examination; a health history; and formulation of a sequenced treatment plan.  Similarly, in the Federal Bureau of Prisons, an examination includes, among other things, a complete periodontal examination and necessary radiographs.  Notably, these initial and annual examinations are different in scope from what a dentist would do at an urgent or sick call appointment, which is typically a more limited, problem-focused examination.

129.   Two elements of the initial and annual examinations bear slightly more description: periodontal probing and x-rays.  First, periodontal probing is the measurement of pocket depths to evaluate gum health.  The screening standards for periodontal probing are described in the section on periodontal disease in **Exhibit D**.

130.   Second, x-rays taken at initial and annual[44] examinations should include both panoramic and intraoral (either bitewing or periapical) x-rays.  These different types of x-rays are important because they allow for different types of diagnoses.  In particular, a panoramic x-ray (Fig. 4) displays a wide area of the jaws and helps detect developmental anomalies, pathologic lesions of the teeth and jaws, or other bone fractures.

---

[44] The frequency of different kinds of x-rays in follow-up annual examinations can vary based on a dentist's reasonable clinical judgment, considering the patient's risk of caries.

**Figure 4. Panoramic X-Ray**



131.   But, because of the lower resolution and superimposition of structures on the film in a panoramic x-ray, it does not have the fine detail necessary to document periodontal bone loss or smaller lesions in between the teeth.  Instead, intraoral x-rays more effectively show those conditions.  There are two types of intraoral x-rays:  periapical (Fig. 5) and bitewing (Fig. 6).

**Figure 5. Periapical Radiograph**     **Figure 6. Bitewing Radiograph**

   

132.   Periapical x-rays show the entire tooth (including the root, see arrow in Fig. 5) and the surrounding bone, and bitewing x-rays show the crowns of the teeth in both arches and the alveolar crestal bone (the bone in between the teeth, see red

1    arrow in Fig. 6).  These x-rays, unlike a panoramic x-ray, can show early caries in

2    between the teeth and document signs of periodontal and periapical disease.

3        133.   Correctional institutions have a responsibility to provide initial

4    examinations consistent with these professional standards—*i.e.*, including both

5    periodontal probing and both panoramic and intraoral (likely bitewing) x-rays—to

6    incarcerated people.  The NCCHC requires that jails provide an initial examination

7    within 12 months of admission, though the timeframe for prisons is 30 days.  J-E-

8    06, Compliance Indicator 6, p. 98.  However, that standard alone is insufficient for

9    the Jail's population, which includes 1.6 percent of incarcerated persons whose Jail

10   stays are 12 months or more, and incarcerated people who serving a prison sentence

11   in the Jail.  *See supra*.  Therefore, waiting 12 months for an examination is

12   inappropriate for both sentenced incarcerated persons in the Jail and those awaiting

13   trial for serious felonies who cannot post bail.  These incarcerated people should be

14   examined within 30 days of admission and should be appointed for routine care if

15   they request it.

16       134.   Both in policy and in practice, the Sheriff's Department fails to meet

17   these standards.  Initial and annual examinations do not consistently occur in the

18   required timeframes and, to the extent there are any such examinations, the

19   examinations themselves are not consistent with professional standards.

20       135.   By policy, NaphCare's Policy Manual defines "Oral Examination" as

21   being "[p]erformed only by a licensed dental staff and completed within twelve

22   (12) months of admission, including taking or reviewing the patient's oral history,

23   an extraoral head and neck examination, charting of teeth, and examination of the

24   hard and soft tissue of the oral cavity with a mouth mirror, explorer, and adequate

25   illumination."  NAPHCARE001023.  However, I have seen no policy documents

26   describing the scheduling process for initial or annual oral examinations are

27   scheduled in the Jail.  However, deponents stated that the initial examination should

28   be automatically scheduled after an incarcerated person completes the receiving

1  screening process, for some time within the first twelve months of their

2  incarceration.  Nix I Tr. 220-221.

3      136.   In practice, it is not clear whether—and if so, how—incarcerated

4  people are informed that they have been scheduled for an initial dental appointment.

5  In fact, one of the issues raised by the Sheriff's Department in its Corrective Action

6  Notices was that NaphCare did not have a process in place to effectively respond to

7  annual/periodic cleanings.  According to the Corrective Action Notices, many

8  incarcerated patients have missed appointments and have been forgotten due to the

9  inability of dental staff to schedule referrals or follow-up.

10     137.   My review of the medical records produced indicates that initial and

11 annual examinations are untimely if they occur at all.  Several of the individuals

12 whose records I reviewed had been incarcerated for over a year, but had not had an

13 initial examination performed, nor any annual examinations.  *E.g.*, ███████████

14 and ███████████, as discussed in **Exhibit C**.

15     138.   Other people who were incarcerated in the Jail for over a year received

16 untimely initial examinations.  For example, ███████████████ was first scheduled

17 to see the dentist on ████████ 2021—nearly fourteen months after he was booked

18 into the Jail on ███████████ 2020.  SD 825202 (sick call summary).  He is

19 documented as having refused the appointment.  SD 825650; 826285.  However,

20 given the Jail's apparent lack of a system to notify incarcerated people that they can

21 receive an initial dental examination, it is possible that ███████████ did not know

22 what he was refusing (if he did in fact refuse—neither refusal form is signed by

23 him).  Dr. Montgomery testified that annual examinations should be scheduled as a

24 matter of course during the booking process.  Montgomery II Tr. 282:17-283:12;

25 Nix I Tr. 220:3-221:6.  However, Ms. Nix—testifying on behalf of NaphCare—did

26 not know whether the annual exam date was communicated to the incarcerated

27 person but instead said that Dr. Pandit, the NaphCare Dental Director "has oversight

28 into compliance of the dental program in general."  Nix I Tr.  221:3-22.

139.   Notably, any initial "screening" conducted by a nurse does not satisfy the initial examination requirement.  According to the Rule 30(b)(6) testimony of Dr. Montgomery, the Jail has recently begun conducting a "brief dental examination … for purposes of triage" of all incarcerated people within 14 days of each person's booking.  *See* Montgomery II Tr. 145:15-23.  The NaphCare Policy Manual similarly describes an "oral screening," to be "[c]ompleted within fourteen (14) days of admission to the facility," which "include[es] visual observation of the teeth and gums, and notation of any obvious or gross abnormalities requiring immediate referral to a dentist."  NAPHCARE001023.  I assume, based on the 30(b)(6) deponent's description of this examination and the NaphCare Policy Manual's description, that this examination is conducted by a nurse or physician—not a dentist.  As a result, this "brief dental examination" does not constitute an initial dental exam.[45]

140.   Finally, based on my review of the records, it is my opinion that any examinations that do occur in the Jail are inadequate.  The 55 charts I reviewed reported 25 initial[46] and two annual examinations.[47]  My chart reviews found no documented, appropriate periodontal probing and use of intraoral x-rays to inform initial and annual examinations.  Consequently, the examinations are below accepted professional standards.

---

[45] This is important because until a dentist has (at a minimum) screened a patient, a dental hygienist or dental assistant may not take x-rays or perform an oral assessment under general supervision. (see discussion of dental hygienist scope of practice *infra*).

[46] SD 1005874, SD 827533, SD 829569, SD 832824, SD 842992, SD 843292, SD 846437, SD 853238, SD 858511, SD 860735, SD 863525, SD 865976, SD 873506, SD 913909, SD 937227, SD 941139, SD 992967, SD 1016654, ███████ Records at pp. 74 – 78, ███████ Records at pp. 274 – 279, ███████ Records at pp. 341 – 345, J███ Records at pp. 398 – 402, ███s Records at pp. 366 – 371, SD 1009055, SD 828761.

[47] One chart checked both the initial and sick call boxes. SD 1006266. The two annual examinations were documented for ██████████ (SD 864177) and ██████ ██████ (pdf 427).

## 2.    Inadequate Diagnosis and Treatment of Dental Caries

141.   In my opinion, based on a reasonable degree of certainty, the diagnosis of caries is inadequate because it is not informed by intraoral (primarily bitewing) x-rays.  In addition, the Jail's treatment of caries is inadequate because permanent fillings are not routinely provided, instead, the Jail provides temporary fillings or, more likely, extractions only.

142.   To appropriately identify and diagnose dental caries (*i.e.*, tooth decay or cavity), intraoral (bitewing) x-rays are required; a dentists should not rely exclusively on panoramic x-rays, as smaller lesions between teeth will likely be missed.

143.   Once diagnosed, caries can generally be treated through either a restoration, *i.e.*, a filling, or—if the tooth is not restorable—an extraction. Correctional facilities may not limit their care to extractions and instead should restore incarcerated people's teeth to the extent possible.  In other words, if an incarcerated person's tooth can be restored by providing a permanent filling, prisons and jails must provide a permanent filling.   (Some teeth may be restorable only with endodontic care, *i.e.*, a root canal, which is discussed *infra*).

144.    In some circumstances, a dentist may examine a tooth and, even using a reasonable exercise of their clinical judgment, be unsure whether the tooth can be restored or if it instead requires extraction.  In that case, it is appropriate for the dentist to provide a temporary filling, then examine the tooth again after several weeks if the tooth is still causing problems.  And, when a temporary filling has been placed, the dentist should evaluate that filling—along with the patient's other teeth and overall oral health—at an initial or annual examination, as part of standard routine care.  Applying a temporary filling when the dentist is certain that a permanent filling is appropriate falls below the standard of care.  Similarly, failing to document a treatment plan for a tooth that has received a temporary filling as part of an initial or annual examination also falls below the standard of care.

145.   In the alternative, if a dentist is not sure based on an examination whether a tooth is vital, the dentist can "pulp test" the tooth, *i.e.*, determine whether the pulp within the tooth is alive, and either apply a permanent filling, begin endodontic treatment if appropriate, or extract the tooth on the same day as the examination.

146.   The standard of care not only requires that restorations be provided when appropriate, but it also requires that treatment be timely and treatment plans be generated, so that teeth that could be filled will not deteriorate to the point that extraction is necessary.  Systematic untimeliness in providing routine care is, in effect, a *de facto* extraction only policy and thus below the standard of care. Shulman and Sauter at p. 56.

147.   In both policy and practice, it is my opinion that the Jail does not adequately diagnose or treat caries.  Regarding diagnosis, as explained above, my review of the records shows that bitewing x-rays are not occurring.  Neither the 25 initial examinations nor the two annual examinations I reviewed were informed by bitewing x-rays.  In addition, my review of the dental charts suggests that the graphics used in the Jail's dental chart do not allow early decayed teeth to be recorded and followed.  In other words, this inadequacy contributes to delayed diagnosis and treatment of decay.  (This flaw in the Jail's dental charting tool is described in more detail *infra*).

148.   The lack of appropriate diagnosis of dental caries (*i.e.*, failure to take bitewing x-rays) means that the Jail fails to identify decayed teeth that could be restored in the appropriate timeframe.  As explained above, this delayed routine care resulting in extractions being required means that the Jail has a *de facto* extraction only policy.

149.   The experience of ▮▮▮▮▮▮▮ is a case in point.  Mr. ▮▮▮▮ was booked on ▮▮▮▮▮▮▮ 2020, and was incarcerated until at least ▮▮▮▮▮▮ 2024, when his medical records were pulled for production in this case.  Mr. ▮▮▮▮

1    requested and received (untimely) urgent care in both 2021 and 2022.  SD 1016654

2    – 1016657, SD 1016775-79.  At each of those appointments, Dr. Polanco recorded

3    that he had conducted an "initial" examination, but did not document a treatment

4    plan, periodontal probing, or intraoral x-rays.  *Id.*  In addition, Dr. Polanco placed a

5    temporary filling in one of Mr. ████████'s teeth at the first of those appointments on

6    █████ 2021, but did not follow-up on that filling at Mr.████████ next so-called

7    initial examination on █████████ 2022.  *Id.*  Then, on ██████████ 2023, ██████████

8    was seen by a dentist (Dr. Farid) as part of an outside referral, who reported "active

9    decay on teeth #20, #28, #29 close to the nerve that needs root canal, build[up] +

10    crowns."  SD 1016536.  It is my opinion that the decay progression on those three

11    teeth was due to the Jail's repeated inadequate examinations—even on tooth #20,

12    which the Jail knew was decaying as of two years prior.  Even more troublingly, the

13    medical records suggest that no one at the Jail had even reviewed Dr. Farid's report

14    as of ██████████ 2024, *see* SD 1015822-33, nor had Mr. ████████received any

15    additional dental care.  In my opinion, his is a textbook case of a *de facto* extraction

16    only policy—and substandard care.

17         150.   Similarly, Plaintiff Jesse Olivares, who was incarcerated at the Jail

18    from 2021 to 2023, testified that, after he was transferred from the Jail's custody to

19    CDCR, the CDCR dentists treated not only the broken tooth he complained of at the

20    Jail, but also treated "cavities and gave [him] fillings."  Olivares Tr. at 168:14-23.

21    Notably, Mr. Olivares testified that CDCR ultimately extracted his broken tooth

22    after determining that it could no longer be saved "because it just broke more from

23    when I was in the county [Jail]."  *Id.* at 169:18-22.

24         151.   In my opinion, when the Jail does succeed in identifying dental caries,

25    the treatment provided for caries falls below the professional standard.  As

26    explained above, to operate within accepted professional standards, correctional

27    institutions may not limit their dental care to extractions, but must also provide

28    fillings (temporary or permanent, as determined by the dentist's reasonable

1    judgment).  It is my opinion that the Jail fails to meet this standard, and therefore

2    has a *de facto* extraction only policy.

3        152.   As an initial matter, the Jail does not appear to have any clear policy

4    instructing dentists when or in what circumstances to provide fillings.  Rather, the

5    policy states only that dental care is "not limited to extractions."  As of

6    December 27, 2023, NaphCare's proposed additional guidance on this policy stated

7    merely:  "Remember that although the extraction may be warranted in most cases,

8    there are opportunities for restorative dentistry such as fillings."

9    NAPHCARE034731.  That policy does not provide sufficient guidance to healthcare

10   staff (both nurses and dental staff) and may lead to confusion.

11       153.   For example, in response to an October 9, 2023 sick call request for a

12   cleaning, the Jail responded:  "No.  Dental only does extractions."  SD 843106.

13   Similarly, Plaintiff Jesse Olivares, who was incarcerated at the Jail from 2021 to

14   2023, testified that he was told by people on the Jail's medical staff that "they don't

15   do fillings."  Olivares Tr. 167:14-24.  In particular, he testified:  "I informed [the

16   Jail] that I had a broken tooth and they said all they do is pull them out."  *Id.* at

17   168:4-5.

18       154.   The Jail's policy also appears to be limited to temporary fillings—not

19   permanent ones.  The Sheriff's Department's contract with NaphCare lists a variety

20   of services to be offered, which includes "Temporary fillings" but omits reference to

21   permanent fillings.  San Diego County Contract No. 566117, SD 122498.  Similarly,

22   the Jail's dental chart does not include an option for the dentist to select "permanent

23   filling" as treatment, though there is an option for "temporary filling."

24       155.   In my review of records, it was rare for a dentist to place a restoration

25   (filling) and most of them were described as temporary.  Furthermore, as indicated

26   above, an initial examination (with intraoral x-rays) is not scheduled timely (or at

27   all) so the dentist can follow-up on any temporary fillings that were placed.  In

28   addition to the case of Mr. ███████ described *supra*, the example of ███████████,

1    who received multiple temporary fillings, is instructive.  Dr. Polanco's decision to

2    place a temporary filling rather than a permanent filling on tooth #11 on

3    ███████ 2023 and ███████ 2023 more likely than not resulted in tooth #11

4    becoming abscessed and requiring extraction.  *See* SD 828792-94 (dental sick call

5    visit ███████ 2024).

###    3.    Inadequate Diagnosis and Treatment of Periodontal Disease

7    156.    The diagnosis and treatment of periodontal disease, *i.e.*, gum disease, is

8    an integral part of routine care.    Untreated, periodontal disease can progress,

9    possibly leading to the loss of teeth.

10    157.    The standard of care requires both bitewing x-rays and periodontal

11    probing to diagnose periodontal disease.  Critically, the periodontal probing must be

12    performed consistent with one of two professionally acceptable screening standards:

13    the Community Periodontal Index of Treatment Needs ("CPITN"), which is used by

14    the federal Bureau of Prisons, or the Periodontal Screening and Recording ("PSR"),

15    which is used by many state departments of corrections, private practices, and the

16    military.

17    158.    "Spot" periodontal probing, also known as selective probing or partial

18    probing, is insufficient.  These terms refer to the practice of only probing specific

19    areas of the gingiva rather than probing the entire mouth.  While this approach may

20    seem more efficient, it can miss pockets of infection or inflammation in other areas

21    of the mouth, leading to an incomplete assessment of the patient's periodontal

22    health.  This can result in underdiagnosis of periodontal disease and inappropriate

23    treatment planning.  Substituting "spot" periodontal probing for a periodontal

24    examination guided by the PSR or CPITN therefore falls below the standard of care.

25    159.    Moreover, when periodontal screening indicates the presence of

26    periodontal disease, the standard of care dictates that further diagnostic modalities

27    should be used to identify the specific disease sites.  This is especially important

28    since periodontal disease is typically painless.  Failure to diagnose dental conditions

1  timely is likely to result in tooth morbidity and tooth mortality.

2      160.   In my opinion, based on a reasonable degree of certainty, the diagnosis

3  of periodontal disease in the Jail is inadequate and below accepted professional

4  standards, resulting in delayed (or no) diagnosis, gratuitous pain, and tooth loss.

5      161.   As explained above, my review of the records suggests that bitewing x-

6  rays are rare.  In addition, my review of the documents suggests that periodontal

7  probing is not happening.

8      162.   As an initial matter, I am not aware of any Jail policy directing or

9  outlining the procedure for diagnosis or treatment of periodontal disease.  None of

10 the Rule 30(b)(6) deponents could recall such a policy or confirm whether it was

11 happening.  Dr. Montgomery, testifying on behalf of the Sheriff's Department,

12 testified that a periodontal assessment would be part of a regular dental evaluation

13 but could not say whether it was happening in practice.  Montgomery II Tr. 284:7-

14 285:5.  Similarly, while Ms. Nix, testifying on behalf of NaphCare, knew that

15 NaphCare had an Oral Care Policy, she did not know whether it addressed

16 periodontal disease.  Nix I Tr. 221:23-222:4.  A dental hygienist I spoke with at

17 George Bailey during my tour informed me that she conducts only "spot" probing

18 and does not document teeth that have clinically significant periodontal pockets.

19     163.   My review of the records suggests that, in practice, periodontal disease

20 is not screened for, diagnosed, or treated at the Jail.  Of the charts I reviewed that

21 were marked as having an initial or annual examination completed, none contained a

22 documented periodontal assessment.

23     164.   Moreover, none of the charts I reviewed had a diagnosis of

24 periodontitis.  This is surprising since the prevalence of periodontitis in the general

25 population is high, and that of the incarcerated population is even higher.  As an

26 example, Dr. Patel examined ▓▓▓▓▓▓ at a scheduled sick call appointment.  She

27 noted that he had 1) moderate generalized calculus, 2) moderate generalized

28 bleeding, 3) moderate gingival inflammation, and 4) "spot probing 2-8mm." ▓▓▓

Dental Records, SD 825095-96.  Her note did not identify which teeth had deep periodontal pockets so there was no baseline to assess disease progression.  This failure to document periodontal probing is below accepted professional standards.

165.   Finally, there was no periodontal treatment.  My chart review did not find any instance of a treatment plan from an initial or annual examination that included a scaling and root planing procedure[48]—the standard non-surgical treatment for moderate to advanced periodontal disease.

166.   Simply put, periodontal disease was ignored.  Such a practice falls below accepted professional standards and places people incarcerated at the Jail at an unreasonable risk of harm.

### 4.     Inadequate Preventative Care

167.   Preventative care, which includes both making a treatment plan and providing treatment *e.g.*, dental cleanings, according to that plan is a standard part of routine dental care.  Yet, there is a consistent lack of treatment planning and annual periodic dental prophylaxes across the Jail.  It is my opinion that the Jail fails to provide adequate preventative care.

168.   Sheriff's Department medical staff appear to agree.  For example, Ms. Rognlien-Hood, Deputy Director of Inpatient Care Facilities (previously the Director of Nursing), testified that dental care was "one big thing" that the Jail can improve on, especially now that sentences are longer as the result of AB 109. Rognlien-Hood Tr. 24:8-25:7.

169.   In addition, the Sheriff's Department raised the issue of inadequate cleanings in an April 28, 2023 Corrective Action Notice ("CAN") sent NaphCare. NAPHCARE034826.  The Sheriff's Department amended its contract with NaphCare to add two dental hygienists in February 2024, who, according to

---

[48] See earlier discussion of periodontal treatment.  Scaling and root planning can be performed by a dentist or dental hygienist.  However, a dental hygienist may not perform it *sua sponte* – it must be prescribed by a dentist in a treatment plan.

NaphCare's March 4, 2024 response to the CAN, NaphCare estimates will complete 2,500 cleanings annually.  SD 1572608.  However, the March 4, 2024 CAN response does not include any further plan outlining how NaphCare and the Sheriff's Department will facilitate those cleanings—*e.g.*, how will the Sheriff's Department ensure sufficient custody staff are available to escort patients to those cleanings.

170.    Despite the Sheriff's Department and NaphCare's awareness of this problem, my review of the records suggests that neither treatment plans nor dental cleanings are happening on a regular basis.  My review of records included several individuals who had been incarcerated in the Jail for over a year as of the date their dental records were pulled for production to Plaintiffs.  None of those individuals had received a treatment plan for routine care.  In addition, multiple individuals who requested cleanings were told that the Jail does not provide that service.  *E.g.*, ▮▮▮▮ ▮▮▮▮ (SD 843106); ▮▮▮▮▮▮▮ (SD 914307).

### 5.    Inadequate Endodontic Treatment

171.    Endodontic (root canal) therapy is an element of routine care, and it should be provided in the correctional setting for at least certain teeth.  For example, in the Federal Bureau of Prisons, endodontic treatment may be completed when the dentist deems it clinically indicated, so long as the tooth is not a third molar, periodontally compromised, or requires extensive restoration such as a cast crown.[49]

172.    CDCR allows endodontic treatment to be performed only on the maxillary (upper) and mandibular (lower) anterior teeth when (1) retention of the tooth is necessary to maintain the integrity of the dentition, (2) the tooth is not periodontally compromised, (3) the tooth does not require extensive restoration, and

---

[49] US Department of Justice, Federal Bureau of Prisons. Program Statement 6400.03, June 10, 2016, p. 15. Viewed at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.bop.gov/policy/progstat/6400_003.pdf. May 8, 2024.

(4) there is an adequate posterior occlusion, either from natural dentition or a dental prosthesis, to provide protection against traumatic occlusal forces.[50]  Furthermore, posterior root canal therapy may be considered if the tooth in question is vital to the patient's masticatory ability and it is essential as an abutment for an existing removable cast partial denture or is necessary as an abutment on a proposed removable cast partial denture for that arch.  *Id*.

173.   In my opinion, the Jail's provision of endodontic treatment is inadequate.  Given the amount of time people spend at the Jail post-realignment and the potential for severe negative consequences to their health, the Sheriff's Department should offer endodontic treatment to incarcerated people subject to CDCR's policy.

174.   The Sheriff's Department appears to agree that root canals should be provided.   On April 28, 2023, the Sheriff's Department sent a Corrective Action Notice ("CAN") to NaphCare identifying deficiencies in its health care program, including that there had been a failure to authorize root canals. NAPHCARE034826.  Similarly, Theresa Adams-Hydar, until recently the Assistant Sheriff responsible for overseeing the entirety of the Detention Services Bureau testified that "[r]oot canals should be provided."  Adams-Hydar Tr. 225:19-226:1.[51] A May 26, 2023 email from Dr. Montgomery makes the same point.  He explained that NaphCare's repeated conclusion that root canals are "cosmetic services" was "unfortunate," given that "many Community insurance agencies actually cover root

---

[50] California Department of Corrections and Rehabilitation Correctional Healthcare Services. Health Care Operations Manual.Article 3. Dental Care ¶3.3.2.9 c. Viewed at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://cchcs.ca.gov/wp-content/uploads/sites/60/HC/HCDOM-ch03-art3.2.9.pdf. 5/8/2024.

[51] As the Assistant Sheriff (now retired) explained: "If there was any work that needed to be done such as a root canal, rather than an extraction, we really pushed with NaphCare that we want them to be provided root canals, when appropriate, rather than an extraction, because we wanted them to have their teeth." Adams-Hylar Tr. 187:22-188:1.

canals." SD 227525.  In addition, he explained:

> In the California detentions / corrections system, individuals could potentially serve their prison time in a jail setting.  A generalized "blanket" refusal of services (in this case, a root canal) … just because they are in jail … is discrimination by geographic location, and would be considered "deliberate indifference."

*Id.* (ellipses in original).  I agree with Dr. Montgomery in this regard.

175.   In a December 18, 2023 letter to the Sheriff's Department, NaphCare proposed to ██████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████  based on CDCR guidelines.  NAPHCARE034725.

176.   However, I have seen no indication that such a policy has been implemented.  In the March 4, 2024 CAN—the most recent that I have reviewed—there does not appear to be any update in response to the Sheriff's Department's December 8, 2023 question:  "Has there been a directive to Naphcare's dental staff of Dr. Pandit's improvement plan and root canal guidelines?"  SD 1572589.

177.   That this problem—which Dr. Montgomery himself stated "would be considered 'deliberate indifference'"—was still not resolved after nearly a year is concerning and means that the Jail's dental program falls below the standard of care. In addition, as explained in more detail above, the Sheriff's Department's outside referral system is woefully deficient.  Absent substantial improvements to that system, it does not seem feasible that referrals to endodontists could occur in a timely fashion, as would be required to facilitate root canals.

## C.   Inadequate Dentist Staffing

178.   In my opinion, based on a reasonable degree of certainty, the Jail has does not have enough dentists to treat painful dental conditions and provide routine care to longer-term incarcerated people.  This subjects incarcerated people to gratuitous pain, tooth morbidity, and tooth mortality.

1    179.   Inadequate dental staffing is typically a primary reason for untimely

2 care in a correctional setting.  The DOJ has recognized as much.  A letter from the

3 DOJ summarizing the findings of its investigation of the Lake County, Indiana Jail

4 identified that "[i]nsufficient dentist time inappropriately limits dental care to

5 prescription for antibiotics and extractions."  Note 22, Lake County Letter, p. 15.

6 With respect to waiting time for dental care, the letter stated: "[c]onsequently, this

7 wait for medical care violates constitutional minimums, leaving significant inmate

8 medical needs inadequately addressed or completely unmet."  *Id*.  Among the

9 minimum remedial measures was "[e]nsure dental hours accommodate the need for

10 dental care."  *Id.*, p. 29.

11    180.   The literature generally suggests that a ratio of 1,000 incarcerated

12 people per dentists is appropriate for prisons, and an 850:1 ratio is appropriate for

13 jails.  Makrides et al., p. 557.[52]  Notably, however, some correctional facilities have

14 found that even lower ratios are appropriate.  For example, in CDCR, the *Perez*

15 settlement agreement mandated an incarcerated-person-to-dentist ratio of 515:1.[53]

16    181.   In addition, it is important to note that, as a rule, jails require more

17 dentists than prisons.  This is because, unlike prisons, most of the jail population

18 comes to the facility from the street/community, where they may not have been

19 receiving any dental care and are therefore more likely to have a painful condition in

20 need of urgent dentist attention.  In contrast, the prison population is more likely to

21 be transferred in from another institution, where they would have been receiving

22

---

[52] The Makrides et al. study reported that, based on data from 1996, prisons in
various jurisdictions had incarcerated-person-to-dentist ratios varying from 428:1 to
2,375:1.  Makrides et al., p. 557.  However, the prison health care environment has
changed in the past 28 years, partly due to litigation or the threat of litigation
resulting in an expansion of health care services.  In addition, the study noted that
the prisons at issue likely varied in the scope of services provided, which would
account for much of the variation.

[53] Shulman JD. Structural Reform Litigation in Prison Dental Care: The Perez Case.
Correctional Law Reporter August/September 2013, p. 28.  During the monitoring
process, the ratio was changed to 600:1 with the addition of dental hygienists.  The
current ratio is 600:1.

dental care already.

182.  Based on my review of documents, the Jail appears to fall woefully short of the recommended incarcerated-person-to-dentist ratio.  Table 3 below shows the Jail's dental staffing as currently specified in the NaphCare contract, which amended in February 2024.  "DDS" refers to dentists, "DA" refers to dental assistants, and "RDH" refers to registered dental hygienists.

| Table 3.  Contract Dental Staffing Levels | | | | | | |
|---|---|---|---|---|---|---|
| | Mon | Tues | Wed | Thurs | Fri | Total |
| Central | | | | | | |
| DDS | | | 4 | | | 4 |
| DA | | | 4 | | | 4 |
| RDH | | | | | | 0 |
| Las Colinas | | | | | | |
| DDS | | 8 | | | | 8 |
| DA | | 8 | | | | 8 |
| RDH | | | | | | 0 |
| George Bailey | | | | | | |
| DDS | 8 | | | 8 | | 16 |
| DA | 8 | | | 8 | | 16 |
| RDH | 16 | 16 | 16 | 16 | 16 | 80 |
| East Mesa | | | | | | |
| DDS | | | | | 8 | 8 |
| DA | | | | | 8 | 8 |
| RDH | | | | | | 0 |
| Vista | | | | | | |
| DDS | | | 4 | | | 4 |
| DA | | | 4 | | | 4 |
| RDH | | | | | | 0 |

The contract does not provide for any dental staff at either the Rock Mountain Detention Facility or the South Bay Detention Facility, though there is a note that "[s]taff may float between facilities based on operational needs."  County of San Diego Contract 566117, Modification 01, February 5, 2024, NAPHCARE040852-62.

183.  Under this contract, the Jail is staffed with dentists 40 hours per week,

1   or 1.0 full-time equivalent ("FTE").  This staffing plan results in an incarcerated

2   person-to-dentist ratio 3,936:1, using the most recently available statistics for the

3   Jail's average daily population.[54]  This is approximately 25 percent of the optimal

4   staffing estimates for a prison and 21 percent of the optimal staffing estimate for a

5   jail.

6          184.   In practice, documents suggest that the Jail is staffed by somewhere

7   between 1.0 FTE and 2.0 FTE dentists, though that number is still well below

8   optimal staffing estimates.  Angela Nix, testifying on behalf of NaphCare, explained

9   that NaphCare employs two dentists for the San Diego Jail:  Dr. Polanco, who is

10  full-time, and Dr. Patel, who is part-time.  Nix II Tr. at 52:5-17.  Ms. Nix also

11  explained that NaphCare has "been providing more dental hours above the contract"

12  in order to accommodate "the volume of patients within San Diego County."  *Id.* at

13  58:17-21.  Given that Dr. Patel, according to Ms. Nix's testimony, works at the Jail

14  only part-time, the Jail in practice has fewer than 2.0 FTE dentists working there.

15  However, even if the Jail were staffed by two FTE dentists, that would result in an

16  incarcerated person-to-dentist ratio of 1,968:1, which is approximately half of the

17  optimal prison staffing estimate discussed *supra*.  And, even setting aside the

18  recommendations for what level of staffing is appropriate, it is clear from the

19  untimely urgent care and the almost complete absence of routine care described

20  *supra* that dentist staffing is grossly inadequate.

21         185.   Ms. Nix also testified that NaphCare is still in discussion with the

22  County and Sheriff's Department to increase the number of dentist FTEs at the Jail

23  in a future contract amendment.  *Id.* at 58:18-59:3.  However, no such additions

24  were made when the contract was amended in February 2024.

25         186.   The dental staffing plan is also notable in that it indicates that both

26

27  [54] The June 2024 population statistics are the most recently available on the
    County's website, available at:

28  https://www.sdsheriff.gov/home/showpublisheddocument/8306/6385603080630700
    00.

Central Jail and the Vista Detention Facility—which in June 2024 housed 838 and 711 incarcerated people, respectively—are scheduled to have only 4 hours per week of dental clinic.  In practice, my review suggests that each of these facilities is visited by a dentist only once every other week.  During my February 2024 inspection of the Central Jail, a sign hanging in the medical clinic stated:  "Effective February 1st Dental SC [sick call] for SDCJ [Central Jail] will be held on the **1st** and **3rd Wednesday** of every month.  Please schedule patients for these dates only."  SD 983516.  Additionally, one person incarcerated at Vista, who submitted over a dozen requests to see a dentist for "agonizing" and "excruciating" pain in January 2024, wrote in one such sick call request:  "i'm told time and time again the dentist comes every two weeks."  SD 833482.

187.   Notably, the Sheriff's Department has so far declined the opportunity to increase dentist staffing at the Jail, despite its awareness of this problem.  When NaphCare's contract was amended in February 2024, the Sheriff's Department added only two FTE *hygienists* to its dental roster.  *See* County of San Diego Contract 566117, Modification 01, February 5, 2024, NAPHCARE040852-62.  It did not add any dentists, despite apparently discussing the need for additional dentist staffing.  Nix II Tr. 58-59.  When I was at George Bailey, I met Claudia Last Name Unknown, a dental hygienist who told me that she was a recent hire at the Jail.  Although the February 2024 staffing plan suggests that dental hygienists are staffed only at George Bailey, Claudia informed me that she worked a total of 16 hours per week, each day at a different Jail facility.

188.   The addition of hygienists will not materially improve incarcerated people's access to urgent care, because dental hygienists primarily provide oral prophylaxes (cleanings) that support a routine care program.  The acute need in this system is for *dentist* FTEs, as they are the only professionals who can provide urgent care, which is sorely needed.  Simply put, a staffing plan that has twice as many dental hygienists as dentists makes no sense.  With an average daily

1    population of approximately 4,000 people, the Jail needs, at minimum, four full time

2    dentists.

3        189.   While inadequate dentist staffing is the primary reason for untimely

4    care, the availability of other staff can also negatively impact the provision of care.

5    In particular, the availability of dental assistants is an important factor because

6    dentists working without an assistant are limited in the scope of treatment that they

7    can provide and how productive they can be.  For example, the day I visited Las

8    Colinas, I was informed that the dental assistant was out sick.  I viewed the clinic

9    three times during the day and not see a patient in the dental chair.  I was told that

10   Dr. Patel was "doing examinations in the housing units."  Any evaluation completed

11   away from the dental clinic cannot be considered a full examination, as described

12   above.  While a dentist can interview a patient and look into the mouth with ambient

13   light or a headlamp, that would only be triage.[55]

14       **D.    Inadequate Program Monitoring and Oversight**

15       190.   In my opinion, based on a reasonable degree of  certainty, the Jail's

16   dental program is inadequately monitored.  Consequently, critical program

17   deficiencies are not identified and remedied timely, redounding to the detriment of

18   incarcerated persons, who continue to be at risk of gratuitous pain and harm.

19       191.   An adequate dental program must have: a dental chart that facilitates

20   consistent recording of patient diagnosis, treatment planning, and productivity; a

21   peer-review program; a dental director; and a continuous quality improvement

22   ("CQI") process.  As explained below, the Sheriff's Department is inadequate in

23   each of these respects.  As a result, the many areas of substandard care identified

24   above have been allowed to persist.

25

26   [55] While adequate dental staffing is necessary for timely dental care, it is not
     sufficient since even an adequately staffed dental program (which the Jail is not) has
     inadequate access to care if patients are unable to get to the clinic.  As explained

27   *supra*, there is some documentary evidence that the insufficient custody staff to
     escort patients to the dental clinic contributes to the delays in provision of care—a

28   problem the Jail should also study.

### 1.    Dental Charting

192.    Since incarcerated people are likely to be treated at several institutions or facilities during the course of their confinement, it is important that entries in the dental chart be legible and the terminology be standardized so dentists and dental hygienists will know what treatment has been provided.[56]  Where procedure definitions are inadequate or there is insufficient oversight to ensure that clinical entries are unambiguous, dentists and dental hygienists may obtain an inadequate understanding of past treatment which can redound to a patient's detriment.  The accepted professional standard for procedure definitions is the Code on Dental Procedures and Nomenclature published by the ADA.[57]

193.    In my opinion, dental charting at the Jail is inadequate because the dental chart tool is itself flawed, staff do not receive sufficient guidance to complete the chart, and, in practice, staff do not fill out the chart consistently.

194.    As an initial matter, the electronic dental chart tool used throughout the records I reviewed lacks places for critical information to be documented.  For example, the image below is a screenshot of the "Appointment Type" menu in one of the Jail's dental chart:



---

[56] "The format, basic content of the dental records, and charting in the dental records should be standardized across the correctional system." NCCHC Guidelines at 6.

[57] The purpose of the CDT Code is to achieve *uniformity, consistency, and specificity in accurately documenting dental treatment*.  One use of the CDT Code is to provide for the efficient processing of dental claims, and another is to populate an Electronic Health [Dental] Record.

On August 17, 2000, the CDT Code was named as a HIPAA standard code set. Any claim submitted on a HIPAA standard electronic dental claim must use dental procedure codes from the version of the CDT Code in effect on the date of service. The CDT Code is also used on paper dental claims, and the ADA's paper claim form data content reflects the HIPAA electronic standard.  American Dental Association: http://www.ada.org/en/publications/cdt/  (visited  January  23,  2021)  (emphasis added.).

1    195.   A dentist filling out the chart may select any (including multiple or

2    none) of the following options:  "initial," "emergent," "scheduled sick call,"

3    "refused," and "annual."  Critically, as indicated *supra*, there is no box to indicate

4    the level of urgent care, *i.e.*, treatment within one or 30 calendar days—despite the

5    nominal inclusion of those priority levels in the Jail's policies.

6    196.   The diagnosis section of the Jail's dental chart (screenshot below) is

7    also flawed.



8
9
10

11    197.   A dentist filling out the chart may select any (including multiple or

12    none) of the following options:  "restorable," "non-restorable," "gingivitis,"

13    "periodontitis", "perio[dontitis] hopeless," "pericoronitis," and "other."

14    Problematically, the chart does not allow dentists to record information on more

15    than one tooth.  For example, if a patient has two teeth with caries, one of which is

16    restorable and one of which is not, this "diagnosis" tool cannot capture the dentist's

17    notes on both teeth.  Even if a dentist also used the notes function to describe both

18    teeth, this checklist would be a confusing summary of the visit.  This a major

19    limitation which limits the usefulness of the chart and suggests that the menu is

20    designed for a sick call, *i.e.*, limited focus, examination rather than for routine care.

21    198.   In addition, there is no definition of the diagnosis "restorable" versus

22    "non-restorable" in any of the policy guidance I have reviewed.  It could mean, for

23    example, that a tooth requiring advanced endodontic treatment available in the

24    community is marked "non-restorable" on this chart because the dentist understands

25    that the Jail's policy/practice is to deny such advanced treatment.  Alternatively,

26    such teeth might be marked "restorable" on the Jail's charts, leaving the "non-

27    restorable" diagnosis only for teeth that cannot be restored under any circumstance.

28    However, if Jail dentists are using that private practice standard to determine

1  whether a tooth is restorable, I anticipate the records would reflect fewer extractions

2  and more fillings.  Absent any policy setting out the usage of these terms, it may be

3  that the Jail's dentists are not using these terms consistently, leading to confusion a

4  patient's records are reviewed by a new dentist for the first time.

5      199.  The Jail's dental chart then contains a standard tooth diagram

6  (screenshot below), like those used in other large institutions, *e.g.*, in the military.



18      200.  The charts I reviewed suggest that a dentist can color-code individual

19  teeth to indicate, *e.g.*, whether the tooth is impacted or designated for extraction.

20  However, I have not seen any indication that a dentist can color-code only *part* of a

21  tooth, *e.g.*, to indicate where on a tooth the decay is or where an existing restoration

22  was placed; a standard electronic dental chart would have this partial color-coding

23  feature.  Because it lacks the ability to mark locations on an individual tooth, the

24  Jail's chart is insufficient for routine care.

25      201.  The next section of the Jail's chart (screenshot below) allows the dentist

26  to input a line-by-line description of individual teeth, including a description of the

27  existing conditions, the date of the exam, the planned treatment, the date treatment

28  was completed, and the periodontal probing depth ("Perio B" and "Perio L").

| Tooth # | Existing Conditions | Surface | Perio B | Perio L | Exam Date | Treatment Plan | Treatment Date Completed |
|---------|--------------------|---------|---------|---------|-----------|----------------|--------------------------|
| 14 | Decay, Root | | | | 3/18/2024 | extraction | 3/18/2024 |

202.   Again, this portion of the chart is overly limited.  Like the tooth diagram, it does not allow a dentist to denote any detail about what portion of a tooth was affected.  In addition, none of the charts I reviewed had probing depth recorded for an individual tooth.  (In any event, as noted above, a proper dental examination would include periodontal probing of more than just an individual tooth, and there is no location anywhere in the Jail's chart for a dentist to record such probing).

203.   The Plan and Treatment section of the Jail's dental chart (screenshot below) is similarly flawed.

**PLAN AND TREATMENT:**

_____      .

**Treatment Options:**

| | | |
|---|---|---|
| ☑ No Treatment | ☐ Antibiotics | ☑ Analgesics |
| ☐ Temporary Filling | ☑ Extraction | ☐ Private Dentist or Surgeon |
| ☐ Other | | |

204.   A dentist filling out the chart may select any (including multiple or none) of the following options:  "no treatment," "antibiotics," "analgesics," "temporary filling", "extraction," "private dentist or surgeon," and "other."  As noted above, there is no option for a permanent filling.  Like the sections described above, this menu—which again does not have options to distinguish between different teeth—does not support a dental program that provides routine care.

205.   Not only is the dental charting tool overly limited, but the guidance provided to dentists about how to fill out the chart is insufficient.  In particular, I reviewed a December 2023 document prepared by Dr. Pandit, the NaphCare Corporate Dental Director, which describes guidelines to assist dental providers in standardizing the documentation of dental encounters in charts.  Though the guidelines provide some useful information, they do not address all issues related to

the dental chart.  NAPHCARE034729.  For example, the guidelines do not discuss or define the elements of an initial or annual examination, nor do they provide guidance as to when a tooth should be diagnosed as "restorable".

206.    Additional guidance is clearly necessary.  Over the course of this assignment, I reviewed 55 dental charts as identified in Exhibit C.   Some of these charts were part of a selection from Defendants; others were requested based on interviews with incarcerated people during the inspections.  The charting throughout that sample was inconsistent.  For example, several charts I reviewed had the initial examination box checked, but lacked any information indicating that the examinations did not comport with NCCHC J-E-06 or accepted professional standards (*e.g.*, documented periodontal probing or intraoral x-rays).  It is therefore my opinion that the Jail's dental charting is inadequate.

207.    To summarize, the Jails' dental chart as currently configured is inadequate to enable a dentist to follow a patient's dental health.  While the chart tool might be useful for patients that receive only urgent care on a single tooth at a time, it is below the accepted professional standard for providing routine care.  It is also difficult to use for patients who require urgent care on multiple teeth at the same time.  I strongly recommend that the Jail adopt the electronic dental chart used by CDCR which is based on a commercial dental system.[58]

## 2.    Peer Review

208.    Peer review is an important element of a quality management program. This entails having dentists assess and provide feedback to each other, as well as to program management.  Feedback from a peer review will include an assessment of clinical competency to include adequacy of documentation, adequacy of the clinical examination and treatment plan, and treatment outcome.  A peer review can range

---

[58] Several years ago, the CDCR Dental Director told me that he would be willing to assist any California jail with implementing the system since this would provide a near seamless transfer of dental records between jails and CDCR.

1  from a random chart review to an examination of patient care by examining patients.

2  In all instances, reviews are performed by a dentist (peer) and not by a non-dentist

3  member of the staff.  All peer reviews should be forwarded to the privileging

4  authority for review prior to the (re) issuance of privileges.[59]

5      209.   Peer review is part of NCCHC[60] and ACA standards,[61] and it is an

6  essential component of institutional health care programs in corrections, the

7  military, and large civilian organizations.  The NCCHC guidelines state:

> Correctional systems should develop clinical performance
> review policies with the goal of enhancing patient care.  *A
> clinical performance review should be performed
> annually on all dentists who provide clinical care to
> inmates*.  The review should be performed by a dentist
> who can be objective in the review.  When only one
> dentist is practicing in the correctional system or the
> number of dentists could lead to biases in the process, the
> correctional system should seek the services of an outside
> dentist, preferably one with correctional experience.

14  NCCHC Guidelines at 6-7 (emphasis added).

15      210.   For example, CDCR requires that all dentists evaluate the dental care

16  provided by peers "using generic screening criteria and methodologies such as

17  health record reviews and patient outcome data as well as other logs and reports"[62]

18  to determine for example, appropriateness of care (timeliness and appropriateness of

---

[59] Shulman *et al*. at 8-22.

[60] *See also* National Commission on Correctional Health Care Standards for Health Services in Jails, 2018. Standard J-C-02 (Clinical Performance Enhancement), p. 52; NCCHC Standards for Health Services in Prisons, 2018. Standard P-C-02 (Clinical Performance Enhancement) at 53.

[61] ACA (2018) Standard 5-6D-4411 (Peer Review) at 208 ("[a] documented peer review program for all health care practitioners/providers and a documented external peer review program will be utilized for all physicians, psychologists, and dentists every two years.").

[62] California Department of Corrections and Rehabilitation. California Correctional Health Care Services. Health Care Operations Manual. Chapter 3, Article 3, §3.3.4.3 (Dental Peer Review) at 2, ¶C. See for example, dental peer review audit tool evaluation criteria matrix (California Department of Corrections "Evaluation Criteria for Determining a Rating during a Dental Peer Review).

1  diagnosis, accuracy, and legibility of documentation; whether diagnoses and

2  treatment plans were supported by clinical data. *Id*.

3  211.  Based on my review of the documents, it is my opinion that the Jail's

4  dentists are not subject to adequate peer review.  The documents I reviewed

5  contained one peer review form for Dr. Patel and Dr. Polanco, filled out by each

6  other in October 2022.  NAPHCARE034851-52; NAPHCARE034853-54.  I have

7  not seen any peer reviews from 2023, suggesting these reviews may not in fact be

8  completed annually.

9  212.  Even if these forms were completed annually, there are several

10  inadequacies in the peer review form.  First, it is unclear how the charts to be

11  reviewed are selected and how many charts reflecting a certain type of examination

12  should be reviewed.  For example, are only scheduled sick call appointments

13  reviewed, or are initial examinations also supposed to be reviewed?

14  213.  Second, the criteria for evaluation are overly vague, *e.g.*, "Ordered

15  diagnostics, procedures and/or referrals are appropriate based on national standards

16  of care." *Id.*  There is no indication of which "national standards" are used, nor do

17  the evaluation criteria include any specifics, *e.g.*, whether periodontal probing was

18  conducted and documented.  It is therefore no surprise that these peer reviews did

19  not identify the consistent problems noted in this report, *e.g.*, failure to document

20  periodontal probing and failure to use intraoral x-rays to diagnose caries.

21  214.  Critically, neither of the peer reviews I did review for Dr. Patel and

22  Dr. Polanco identified that the other dentist's failure to document periodontal

23  probing and use intraoral x-rays at initial examinations were below accepted

24  professional standards.  Clearly, it is implicit in the peer review concept that the

25  reviewers were familiar with accepted professional standards.[63]

26

27  ───────────────
[63] It is striking that, in the case of ▮▮▮▮▮▮ discussed *supra*, an outside dentist

28  appears to have noted the failure in routine care by the Jail's dentists.  In some ways,
this might be considered a peer review—which found the Jail's dental care lacking.

215.   I have been subject to peer review, been a peer reviewer, and have written peer review policies as part of settlement agreements in Ohio and California prison systems.  In my opinion, this form is simply inadequate.  It is not a true peer review program, but a fig leaf.

### 3.    Dental Director

216.   The Dental Director should be a part-time or full-time dentist working for the Sheriff—not NaphCare.  The Dental Director's job is to ensure that care within the institution is consistent with the standard of care, representing the dental program within the facility and coordinating with other departments such as custody and medical.  Moreover, the Dental Director should be responsible for evaluating the productivity of the dentists and dental hygienists employed by NaphCare.

217.   While a non-dentist can assess dentist productivity such as the number of patients seen each day, specific clinical issues such as excessive use of antibiotics for urgent care patients, inadequate periodontal diagnosis and treatment, failing to provide permanent restorations when clinically appropriate, inadequate x-rays for routine examinations, extracting teeth that are salvageable, failing to schedule follow-up appointments for patients for whom they prescribed an antibiotic for a dental infection, require an experienced (**and disinterested**) dentist.

218.   As far as I am aware, the Sheriff's Department does not have its own Dental Director.  Indeed, the person identified by the Sheriff's Department as the person most knowledgeable with respect to dental care in this case is Dr. Montgomery, an MD and the Sheriff's Department's chief medical officer, who is not a dentist.  This is inadequate.

### 4.    Continuous Quality Improvement ("CQI")

219.   Health care delivery systems, including prison health care systems, must have a program for evaluating the delivery of services and monitoring the quality of care for patients.  The elements of such a program include the assessment or evaluation of the quality of care; identification of problems or shortcomings in

1   the delivery of care; designing activities to overcome these deficiencies; and follow-

2   up monitoring to ensure effectiveness of corrective steps.  Essential to the

3   monitoring process is internal auditing (self-inspection) and external reviews.[64]

4   220.   According to the NCCHC, a continuous quality assurance ("CQI")

5   program identifies health care elements to be monitored, implements, and monitors

6   corrective action when necessary, and studies the effectiveness of the corrective

7   action plan.  NCCHC 2018 at J-A-06 ¶ 1.  Similarly, "a system of documented

8   internal review will be developed and implemented by the health authority."  ACA

9   2018 at 5-6D-4410.  The review should include, *inter alia*, evaluating defined data,

10  onsite monitoring of health service outcomes on a regular basis through chart

11  reviews, review of prescribing practices, systematic investigation of complaints and

12  grievances.  *Id*.

13  221.   Based on my review of the documents, I understand that the Sheriff's

14  Department has essentially outsourced its CQI of the dental program to NaphCare,

15  yet—to the extent that NaphCare does any auditing of dental care—those audits are

16  inadequate.

17  222.   The Sheriff's Department's internal medical Quality Improvement

18  Committee Meeting Minutes indicate that dental care is not substantively discussed

19  as part of the Sheriff's Department's own CQI process.  In some of the Committee's

20  minutes, the word "dental" does not appear at all.  *E.g.*, Quality Improvement

21  Committee (QIC) Meeting Minutes, January 25, 2023, SD 108227-28; *see also*

22  Quality Improvement Committee (QIC) Meeting Minutes July 18, 2023, SD 114398

23  (stating that dental would be part of NaphCare quarterly report).

24  223.   Instead, "actual administrative oversight" of the dental program is

25  "conducted by NaphCare," according to Dr. Montgomery's testimony on behalf of

26

27

28  _____

[64] American Public Health Association. Standards for Health Services in Correctional
Institutions. Washington, DC 2003 at 153. ("APHA Standards").

1    the Sheriff's Department.  Montgomery II Tr. at 115:18-21.  Ms. Nix, testifying on

2    behalf of NaphCare, similarly stated that Dr. Pandit, the NaphCare Dental

3    Director, "has oversight into compliance of the dental program in general."  Nix I

4    Tr. 221:16-20.

5        224.   Yet, Sheriff's Department staff seem unclear about what—if any—

6    oversight NaphCare is even doing of the dental program.  In a May 26, 2023, email

7    about NaphCare's performance, Dr. Montgomery stated that, with respect to the

8    dental program, there had been "[n]o mention about how oversight will occur."

9    Email & Attachment from J. Montgomery to C. Miedico et al., May 26, 2023, SD

10   227524.  And, in response to the Sheriff's Department's questions about dental

11   program monitoring, NaphCare had "denie[d] any form of responsibility"—

12   "guidelines are not presented/discussed or established."  *Id.*  This uncertainty

13   apparently remained as of Dr. Montgomery's deposition in this case nearly a year

14   later.  When asked about the Department's oversight of the dental program, he

15   stated that he was "[u]nclear about the processes for dental," though he described

16   some non-substantive issues he thought were covered by NaphCare's audits,

17   including dentist productivity.  Montgomery II Tr. at 115:7-116:18.

18       225.   Although NaphCare has purportedly conducted some auditing of the

19   Jail's dental care, that oversight program is deficient.  For one thing, the quarterly

20   presentations regarding quality assurance and quality improvement run by

21   NaphCare do not appear to contain any information or analysis about the *quality* of

22   dental care provided, or even about the type of issues being diagnosed and treated.

23   *See, e.g.*, NaphCare 3rd Quarter 2023, QA/QI Statistics Presentation, SD 114363-

24   74.  Rather, these presentations include only the numbers of prophys, fillings,

25   extractions, and "exam/meds" conducted—without specifying what kind of

26   examination; the number of x-rays taken; and the number of dental sick call

27   appointments.  SD 114369-70.  There is, again, no discussion of periodontal

28   diagnosis and treatment.  Nor is there any discussion of outside referrals for serious

1  dental conditions.  And, most damningly, there are no statistics regarding the

2  average wait times for dental care.

3      226.    In its various responses to the CANs, NaphCare stated that it conducted

4  some analysis and peer review of its dentists' work at the Jail.  However, those

5  reviews, conducted in March 2023 and December 2023, are still inadequate, because

6  they again miss critical issues with dental care at the Jail.

7      227.    In March 2023, a NaphCare corporate dental consultant, Dr. Scott

8  Kane, conducted a review of dental provider encounters for the month of March

9  2023.  NAPHCARE034657.  Dr. Kane identified two areas for improvement:

10 (1) "documentation" in patients' medical records and (2) "sick call management and

11 triaging," including, "providing treatment on day of exam."  *Id.*  While those points

12 of improvement may be important, Dr. Kane's analysis omits obvious inadequacies

13 in routine examinations, treatment plans, and periodontal diagnosis and treatment.

14 The failure to mention those problems—and instead to conclude that overall

15 treatment provided to patients was within established NaphCare guidelines[65]—is

16 inexplicable.  *See id*.

17     228.    In December 2023, NaphCare reported the results of a purported

18 "audit" performed by Dr. Kuntal Pandit, its Corporate Dental Director.

19 NAPHCARE034729.  However, this audit again appears to focus only on

20 documentation.  The result of the audit was a set of guidelines about documentation,

21 *e.g.*, ████████████████████████████████████████

22 ████████████████████████████████████████████

23 NAPHCARE034730.  While the guidelines are unexceptionable, it is again striking

24 that NaphCare's "audit" of dental care fails to mention key flaws in the Jail's dental

25

26 [65] Similarly, NaphCare stated that it follows community standards and NCCHC
   policies for general dentistry.  NCCHC standards notwithstanding,
27 NAPHCARE034658**. However, the community standard for general dentistry
   requires documented periodontal probing and treatment, adequate x-rays for
28 routine examinations, and timely urgent and routine care**.

1    program, including periodontal probing.

2    229.   Given that the Sheriff's Department does not appear to conduct its own

3    substantive auditing of the dental program, it is unsurprising that it failed to raise

4    several critical issues with the dental program to NaphCare as part of its April 28,

5    2023 Corrective Action Notice.  NAPHCARE034826.  Though the Sheriff's

6    Department did identify some problematic issues with the dental program—*e.g.*,

7    timely responses to requests for annual cleanings, an inability of staff to schedule

8    referrals or follow-up appointments, and not authorizing root canals and additional

9    services in accordance with the NCCHC Standards—the CAN failed to identify

10   critical issues related to the quality of care.  *Id.*  For example, the CAN does not

11   mention many of the issues raised in this report, such as inadequate examinations,

12   inadequate periodontal diagnosis and treatment, and inadequate treatment for dental

13   caries.

14   230.   Due to this lackluster program monitoring, the quality of dental care at

15   the Jail remains substandard.  Despite almost a year of attempting to comply with

16   the findings reported in the April 28, 2023, CAN letter and several iterations of

17   responses, a March 4, 2024 letter to NaphCare, SD 1572585, identifies deficiencies

18   in compliance with the Oral Care Services portion of the contract.  Specifically,

19   establishing productivity milestones for dentists and hygienists, documenting

20   referrals in TechCare, and providing a written plan to ensure appropriate follow-up

21   appointments with the appropriate professional.  However, the monitoring overlooks

22   the most important deficiency, systemwide inadequate care that places all

23   incarcerated persons at risk of serious dental harm.

24   231.   To summarize, the Jail's dental program is poorly managed by both the

25   SDSD and NaphCare due to inadequate policies and procedures and management

26   that is either ignorant of or indifferent to the dental program's clinical deficiencies.

27   Since the Sheriff's Department does not have a Dental Director or even a dental

28   consultant, it is not surprising that serious systemwide deficiencies in clinical care

1   went unnoticed. NaphCare, on the other hand, has two dentists in its employ—a

2   Corporate Dental Director (Dr. Pandit) and a Corporate Dental Consultant

3   (Dr. Kane), neither of whom identified the systemwide inadequate clinical care at

4   the Jail. It appears that the foxes are guarding the henhouse, and as a result systemic

5   deficiencies remain, placing incarcerated people at risk of gratuitous pain and

6   preventable tooth loss.

7                          **CONCLUSION**

8       232.  In summary, the Jail's dental program is woefully inadequate in both

9   urgent and routine care. The systemwide deficiencies explained in this report place

10  incarcerated people at a substantial risk of harm in the form of gratuitous pain and

11  preventable tooth loss.

12      The information and opinions contained in this report are based on evidence,

13  documentation, and/or observations available to me. I reserve the right to modify or

14  expand these opinions should additional information become available to me. The

15  information contained in this report and the accompanying exhibits are a fair and

16  accurate representation of the subject of my anticipated testimony in this case.

17  Dated: August , 2024

18

19

20                                              Jay D. Shulman

21

22

23

24

25

26

27

28

[4472186.19]                           74                    Case No. 3:20-cv-00406-AJB-DDL

# Exhibit A

*Curriculum Vitae* Jay D. Shulman - Prepared August 7, 2024

# CURRICULUM VITAE - JAY D. SHULMAN

## PERSONAL INFORMATION

Address:      ███████████████
              Dallas, Texas 75231
E-mail:      ███████████████

## EDUCATION

| | |
|---|---|
| 1982 | Master of Science in Public Health<br>University of North Carolina |
| 1979 | Master of Arts (Education and Human Development)<br>George Washington University |
| 1971 | Doctor of Dental Medicine<br>University of Pennsylvania |
| 1967 | Bachelor of Arts (Biology)<br>New York University |

## POSITIONS HELD

### Academic

| | |
|---|---|
| 2007 – | Adjunct Professor, Department of Periodontics<br>Baylor College of Dentistry (Texas A&M College of Dentistry) |
| 2003 - 07 | Professor (Tenure), Department of Public Health Sciences<br>Baylor College of Dentistry (retired October 2007) |
| 1993 - 03 | Associate Professor, Department of Public Health Sciences<br>Baylor College of Dentistry |

### Military

| | |
|---|---|
| 1971 - 93 | Active duty, U.S. Army. Retired July 1993 in grade of Colonel. |
| 1990 - 93 | Chief, Dental Studies Division & Interim Commander (1993),<br>US Army Health Care Studies and Clinical Investigation Activity<br><br>Directed Army Dental Corps' oral epidemiologic and health services research. Supervised a team of public health dentists, statisticians, and management analysts. Designed and conducted research in oral epidemiology, healthcare management and policy. |
| 1987 - 90 | Director, Dental Services Giessen (Germany) Military Community and Commander, 86th Medical Detachment. Dental Public Health Consultant, US Army 7th Medical Command. |

*Curriculum Vitae* Jay D. Shulman - Prepared August 7, 2024

Directed dental care for Army in North Central Germany. Operated 6 clinics with 20 dentists and 60 ancillary personnel. Responsible for the dental health of 25,000 soldiers and family members and for providing dental services during wartime using portable equipment. Provided technical supervision of dental public health and oral disease prevention programs for the Army in Europe.

1984 - 87    Chief, Dental Studies Division US Army Health Care Studies & Clinical Investigation Activity. Public Health & Dental Public Health Consultant to Army Surgeon General.

Directed Army Corps' oral epidemiologic and health services research. Supervised a multi-disciplinary team of public health dentists, statisticians, and management analysts. Designed and conducted research in oral epidemiology, healthcare management and policy. Exercised technical supervision of all Army public health and preventive dentistry programs worldwide.

1982 - 84    Assistant Director for Research, US Army Institute of Dental Research. Responsible for management of extramural research program, performing epidemiologic research, and teaching biostatistics and epidemiology to dental residents.

1980 - 82    Full-time graduate student (Army Dental Public Health Training Fellowship) at the School for Public Health, University of North Carolina at Chapel Hill.

1976 - 80    Director, Dental Automation
US Army Tri-Service Medical Information Systems Agency
Walter Reed Army Medical Center, Washington, DC
Directed a team of computer scientists in the development of an automated management system for the Army dental clinics and upper management.

1975 - 76    Clinical Dentist, Pentagon Dental Clinic, Washington, DC

1974 - 75    Clinical Dentist, US Army Hospital Okinawa, Japan

1971 - 74    Clinical Dentist, US Army Dental Clinic Fort McPherson, Georgia

## BOARD CERTIFICATION AND STATE LICENSE

**Dental Licensure.**

Texas #17518 (retired in good standing).

**Board Certification.**

Certified by the American Board of Dental Public Health since 1984 (active).

*Curriculum Vitae* Jay D. Shulman - Prepared August 7, 2024

## RESEARCH - AREAS OF INTEREST

Oral epidemiology, health services research, health policy, military, and correctional health.

## CURRENT SOCIETY AND ORGANIZATION MEMBERSHIPS

1982 –     American Association of Public Health Dentistry

## PROFESSIONAL ACTIVITIES

### Invited Presentations.

Jun 2017   Oral Health of the Incarcerated Population: The Known Unknown. Texas Oral Health Metrics Summit. Austin, Texas, June 29, 2017.

Sep 2016   Exploring Oral Cancer Epidemiology Using the Surveillance, Epidemiology, and End Results Database. University of Iowa, College of Dentistry. September 20, 2016.

Sep 2016   Public Health, Public Policy, and Legal Issues Associated with Health Care in Prisons: A Dental Perspective. University of Iowa, College of Dentistry. September 20, 2016

Nov 2015   Panelist, "Challenges of Medical, Mental Health and Dental Care Delivery in Prisons". Ninth Circuit Corrections Summit. Sacramento, California, November 4, 2015.

Oct 2015   Public Health, Public Policy, And Legal Issues Associated with Health Care in Prisons: A Dental Perspective. National Commission on Correctional Health Care Annual Conference. October 20, 2015.

Apr 2012   Public Health, Public Policy, And Legal Issues Associated with Health Care in Prisons: A Dental Perspective. Presented at the University of Texas Health Science Center, San Antonio, Texas.

Apr 2009   Public Health, Public Policy, And Legal Issues Associated with Health Care in Prisons: A Dental Perspective. Presented at the University of Iowa.

Mar 2008   Public Health and Public Policy Issues Related to Dental Care in Prisons. Presented at University of North Carolina School of Public Health, Chapel Hill, North Carolina.

Jun 2007   Characteristics of Dental Care Systems of State Departments of Corrections. Presented to annual meeting of Federal Bureau of Prisons dentists, Norman, Oklahoma.

Oct 2006   Opportunities for Dental Research Using the National Health and Nutrition Examination Survey. Indiana University School of Dentistry.

Aug 2006   Dental Public Health and Legal Issues Associated with Correctional Dentistry. Annual meeting of Federal Bureau of Prisons dentists, Fort Worth, Texas.

*Curriculum Vitae* Jay D. Shulman - Prepared August 7, 2024

Dec 2005   Opportunities for Faculty Research Using Secondary Data. Frontiers in Dentistry Lecture. University of the Pacific School of Dentistry.

Feb 2005   Advanced Education in Dental Public Health. University of Missouri, Kansas City, School of Dentistry.

## Consultant Activities.

2023 –   Consultant: *Alcorn v. Unknown Grey*, 2: cv-19-04531 (D. Ariz.). Prison dental care (retained by plaintiff's counsel).

2023 –   Expert witness: *Jamall Baker v. Laura Lee Hale, et al.* C22-1672 (W.D. Washington). Prison dental care (retained by plaintiff's counsel). Deposed 6/27/2024.

2023 –   Expert witness: *Dunsmore, et. al. v. Gore, et. al.* 3:20-cv-00406 (S.D. California). Jail dental care (retained by plaintiffs' counsel).

2022 – 24   Expert witness: *Dante Brown v. Wexford Health Sources*, *et al*. 18-cv-5955 (N.D. Illinois). Prison dental care (retained by plaintiff's counsel). Deposed 3/21/2022. Settled February 2024.

2021 – 24   Expert witness: *Montez Artis v. Wexford Health Sources, Inc. and Sangita Garg*. 18-cv-4476 (N.D. Illinois). Prison dental care (retained by plaintiff's counsel). Deposed 7/12/2022. Settled 6/16/2024.

2021 – 23   Expert witness: *Milton Ross v. Dr. Olatunji Awe and Cynthia Rivers*. 4:19-cv-00201 (S.D. Georgia). Prison dental care (retained by plaintiff's counsel).

2019   Expert witness: *Edward Brooks v. L. Stout*. 1:16-cv-01336 (W.D. Michigan). Prison dental care (retained by plaintiff's counsel). Settled 12/11/2019.

2018 - 19   Expert witness: *Mark Collins v. State of Washington*. Thurston County Superior Court Cause No. 18-2-00124-14. Prison dental care (retained by Attorney General's Office). Settled 7/1/2019.

2018 - 19   Rule 706 Expert Team Member. *Don Lippert. et al. v. John Baldwin, et al*. 10-cv-4603 (N.D. Illinois). Prison medical and dental care class action.

2018 - 21   Expert witness: *McFields v. Sheriff*. 17-cv-7424 (N. D. Illinois). Jail dental care class action (retained by plaintiff's counsel). Dismissed 2/1/2021.

2017 - 20   Expert witness: *Sabata, et. al. v. Nebraska Dep't of Correctional Services, et. al*. 4:17-cv-03107 (D. Nebraska). Prison conditions class action (retained by plaintiffs' counsel). Deposed 4/11/2019. Case dismissed without prejudice 12/1/2020.

2016 - 17   Expert witness: *Steven Kurt Baughman v. Sheriff Adrian Garcia, et al*. 4:14-cv-3164 (S.D. Texas). Jail conditions (retained by plaintiff's counsel). Settled June 13, 2017.

*Curriculum Vitae* Jay D. Shulman - Prepared August 7, 2024

2015 – 24    Expert witness: *Robert Johannes v. Daniel Heyns et al.* (*Joey Dearduff et al. v. Heidi Washington; Melvin Bownes, et al. v. Washington*) 14-cv-1169 (E.D. Michigan). Prison conditions class action (retained by plaintiffs' counsel). Deposed 5/6/2021. Settled February 2024.

2015 –    Expert witness: *Joshua Dunn et al. v. Kim Thomas et al.* (*Edward Braggs, et al. v. Jefferson Dunn, et al.*) 2:14-cv-00601. (M.D. Alabama). Prison conditions class action (retained by plaintiffs' counsel). Deposed August 8, 2016.

2015 - 17    Expert witness: *Aaron Marshal v. Wexford Health Sources, Inc*. 14-722-SMY-SCW (S.D. Illinois). Prison dental care (retained by plaintiff's counsel). Deposed March 4, 2016. Settled February 21, 2017.

2015 - 16    Consultant: Santa Clara County (California) Counsel. Pre-litigation assessment of jail dental care. Retained by County Counsel's Office.

2015 - 16    Expert witness: *Henry Leonard et al. v. James LeBlanc, et al.* 5:13-cv-02717 (W.D. Louisiana). Prison conditions class action (retained by plaintiffs' counsel). Settled April 2016.

2014 -15    Consultant to U.S. Department of Justice, Civil Rights Division in an investigation of prison health care under the *Civil Rights of Institutionalized Persons Act*.

2014 - 15    Expert witness: *Richard M. Smego v. Jacqueline Mitchell*. 08 CV 03142. (C. D. Illinois). Deposed January 30, 2015. Testified at jury trial February 27, 2015. Civil detainee dental care (retained by plaintiff's counsel).

2012 - 17    Expert witness: *John Smentek et al. v. Thomas Dart, Sheriff of Cook County et al.* 1:09-cv-00529 (N.D. Illinois). Testified at injunction trial June 2-3, 2014. Jail conditions class action (retained by plaintiffs' counsel).

2012 - 15    Consultant: *Quentin Hall et al. v. Margaret Mimms, Sheriff of Fresno County et al.* 1:11-cv-02047-LJO-BAM (E.D. California). Jail conditions class action (retained by plaintiffs' counsel).

2012 – 14    Expert witness. *Parsons et al. v. Ryan et al*. 2:12-cv-00601-NVW (D. Arizona). Deposed March 20, 2014, and September 23, 2014. Settled October 14, 2014. Prison conditions class action (retained by plaintiffs' counsel).

2012 - 14    Expert witness: *Daryl Farmer v. Gwendolyn Miles, et al.* 10-cv-05055 (N.D. Illinois), Eastern Division. Deposed February 1, 2013. Settled November 25, 2014. Prison dental care (retained by plaintiff's counsel).

2009 - 11    Expert witness: Inmates of the *Northumberland County Prison, et al. v. Ralph Reish, et al.* 08-CV-345 (M.D. Pennsylvania). Settled February 18, 2011. Jail conditions class action (retained by plaintiffs' counsel).

*Curriculum Vitae* Jay D. Shulman - Prepared August 7, 2024

2007 - 09   Expert witness: *Flynn v. Doyle* 06-C-537-RTR (E.D. Wisconsin) Deposed June 5, 2008. Settled August 16, 2010. Prison conditions class action (retained by defendant's counsel).

2006 - 12   Rule 706 Expert (monitor) and Court Representative: *Perez v. Tilton* (*Perez v. Cate*) federal class action lawsuit settlement. C05-5241 JSW (N.D. California). Prison conditions class action.

Responsible to *Perez* Court for coordinating remedies between dental (*Perez v. Tilton / Cate*), medical (*Plata v. Schwarzenegger*), *Americans with Disabilities Act* (*Armstrong* v. *Schwarzenegger*) and mental health (*Coleman v. Schwarzenegger*) cases. Monitored compliance with *Perez* stipulated injunction. Monitoring completed June 2012.

2006        National Institute for Dental and Craniofacial Research Special Emphasis Panel – PAR 04-091 "NIDCR Small Research Grants for Data Analysis and Statistical Methodology".

2005 - 10   Rule 706 Expert (monitor): *Fussell v. Wilkinson* federal class action lawsuit settlement. 1:03-cv-00704-SSB (S.D. Ohio). Prison conditions class action.

Performed initial fact finding, provided dental input to stipulated injunction, wrote policies and procedures, and monitored compliance. Monitoring completed October 2010.

2000 - 06   Predoctoral Consultant (site visitor) to American Dental Association Commission on Dental Accreditation

2000 - 06   Postdoctoral Consultant (site visitor) to Advanced Education (Dental Public Health) American Dental Association Commission on Dental Accreditation

1999 - 03   Editorial Board *Journal of Public Health Dentistry*

1997        Reviewer (primary), Total Fluoride Intake, Centers for Disease Control Fluoride Recommendations Workshop

1996 - 05   Editorial Board, Mosby's Dental Drug Reference

1995 - 97   Consultant, Fluoride Steering Subcommittee, Oral Health Coordinating Committee, US    Department of Health and Human Services

1993 –      *Ad hoc* reviewer (51): British Dental Journal (5); Caries Research (4); Cleft Palate Craniofacial Journal (3); Community Dentistry and Oral Epidemiology (3); International Journal of Prisoner Health (1);Journal of American Dental Association (8); Journal of Correctional Health Care (5); Journal of Dental Education (3); Journal of Dental Research (2); Journal of Oral Rehabilitation (2); Journal of Public Health Dentistry (10); Oral Diseases (2); Pediatrics (1); Pediatrics International (3).

*Curriculum Vitae* Jay D. Shulman - Prepared August 7, 2024

### Teaching

<u>Predoctoral</u>

| | |
|---|---|
| 1993 - 2007 | Director, Principles of Biostatistics |
| 1993 - 2007 | Lecturer, Applied Preventive Dentistry |
| 1993 - 2007 | Clinical Supervisor, Preventive Dentistry |
| 2006 - 2007 | Clinical Supervisor and Care Provider, Dallas County Juvenile Detention Center Dental Clinic |
| 1993 - 2005 | Director, Epidemiology & Prevention |
| 1995 - 2003 | Director, Dental Public Health |

<u>Postdoctoral</u>

| | |
|---|---|
| 2007 – | Research mentor, Department of Periodontics, Baylor College of Dentistry (Texas A&M College of Dentistry) |
| 1994 - 2007 | Director, Dental Public Health Residency |
| 1994 - 2007 | Lecturer, Research Methods |
| 2001 - 2006 | Director, Applied Biostatistics |

## PUBLICATIONS

### Peer-Reviewed (60)

1. Shulman JD, Makrides NS. Civil rights litigation involving the dental care of incarcerated persons. *Journal of Correctional Health Care* 2021; 27:4 (December); 253-258. DOI: 10.1089/jchc.19.11.0086.

2. Makrides NS, Shulman JD. The oral health needs of the incarcerated population: Steps toward equal access. *American Journal of Public Health* Supplement 1, 2017, Vol 107, No. S1; S56-57.

3. Harrel SK, Nunn ME, Abraham CM, Rivera-Hidalgo F, Shulman JD, Tunnell JC. Videoscope assisted minimally invasive periodontal surgery (VMIS): 36-Month results. *Journal of Periodontology* 2017;88:528-535.

4. Harrel SK, Abraham CM, Rivera-Hidalgo F, Shulman JD, Nunn ME. Videoscope-assisted minimally invasive periodontal surgery: One-year outcome and patient morbidity. *International Journal of Periodontics & Restorative Dentistry* 36 (3); 2016.

5. Harrel SK, Abraham CM, Rivera-Hidalgo F, Shulman JD, Nunn ME. Videoscope-assisted minimally invasive periodontal surgery (V-MIS). *Journal of Clinical Periodontology* 2014; 41 (9):900-7.

6. Bansal R, Bolin KA, Abdellatif HM, Shulman JD. Knowledge, attitude, and use of fluorides among dentists in Texas. *Journal of Contemporary Dental Practice* 2012;13(3):371-375.

*Curriculum Vitae* Jay D. Shulman - Prepared August 7, 2024

7.   Shulman JD, Sauter DT. Treatment of odontogenic pain in a correctional setting. *Journal of Correctional Health Care* (2012) 18:1, 58 - 65.

8.   Barker TS, Cueva MA, Rivera-Hidalgo F, Beach MM, Rossman JA, Kerns DG, Crump TB, Shulman JD. A comparative study of root coverage using two different acellular dermal matrix products. *Journal of Periodontology* (2010) 81:11, 1596-1603.

9.   Maupomé G, Shulman JD, Medina-Solis CE, Ladeinde O. Is there a relationship between asthma and dental caries? A critical review of the literature. *Journal of the American Dental Association* 2010;141(9):1061-1074.

10.  Puttaiah R, Shulman JD, Youngblood D, Bedi R, Tse E, Shetty S, Almas K, Du M. Sample infection control needs assessment survey data from eight countries. *Indian Dental Journal* 2009; 59, 271-276.

11.  Fransen JN, He J, Glickman GN, Rios A, Shulman JD, Honeyman A. Comparative assessment of ActiV GP/glass ionomer sealer, Resilon/Epiphany, and Gutta-Percha/AH Plus obturation: A bacterial leakage study. *Journal of Endodontics* 2008; 34(6), 725-27.

12.  Beach MM, Shulman JD, Johns G, Paas J. Assessing the viability of the independent practice of dental hygiene. *Journal of Public Health Dentistry 2007*;67(4):250-4.

13.  Blackwelder A, Shulman JD. Texas dentists' attitudes towards the dental Medicaid program. *Pediatric Dentistry* 2007; 29:40-4.

14.  Massey CC, Shulman JD. Acute ethanol toxicity from ingesting mouthwash in children younger than 6 years of age, 1989-2003. *Pediatric Dentistry* 2006; 28:405-409.

15.  Shulman JD, Carpenter WM. Prevalence and risk factors associated with geographic tongue among US adults. *Oral Dis*eases 2006;12:381-386.

16.  Clark DC, Shulman JD, Maupomé G, Levy SM. Changes in dental fluorosis following cessation of water fluoridation. *Community Dent & Oral Epidemiology* 2006;34: 197-204.

17.  Shulman JD, Sutherland JN. Reports to the National Practitioner Data Bank involving dentists, 1990-2004. *Journal of the American Dental Association* 2006;137:523-528.

18.  Holyfield LJ, Bolin KA, Rankin KV, Shulman JD, Jones DL, Eden BD. Use of computer technology to modify objective structured clinical examinations. *Journal of Dental Education* 2005;10:1133-1136.

19.  Benson BW, Shulman JD. Inclusion of tobacco exposure as a predictive factor for decreased bone mineral content. *Nicotine & Tobacco Research* 2005;719-724.

20.  Shulman JD, Rivera-Hidalgo F, Beach MM. Risk factors associated with denture stomatitis in the United States. *Journal of Oral Pathology & Medicine* 2005;340-346.

21.  Shulman JD. Is there an association between low birth weight and caries in the primary dentition? *Caries Research* 2005;39:161-167.

*Curriculum Vitae* Jay D. Shulman - Prepared August 7, 2024

22. Shulman JD. The prevalence of oral mucosal lesions in U.S. children and youth. *International Journal of Pediatric Dentistry* 2005;15:89-97.

23. Bolin KA, Shulman JD. Nationwide dentist survey of salaries, retention issues, and work environment perceptions in community health centers. *Journal of the American Dental Association* 2005;136 (2): 214-220.

24. Shulman JD. Recurrent herpes labialis in US children and youth. *Community Dentistry & Oral Epidemiology* 2004; 32: 402-9.

25. Shulman JD. An exploration of point, annual, and lifetime prevalence in characterizing recurrent aphthous stomatitis in USA children and youth. *Journal of Oral Pathology & Medicine* 2004;33: 558.66.

26. Shulman JD, Beach MM, Rivera-Hidalgo F. The prevalence of oral mucosal lesions in U.S. Adults: Data from the Third National Health and Nutrition Examination Survey. *Journal of the American Dental Association* 2004;135:1279-86.

27. Bolin KA, Shulman JD. Nationwide survey of dentist recruitment and salaries in community health centers. *Journal of Health Care for the Poor and Underserved* 2004; 15:161-9.

28. Shulman JD, Maupomé G, Clark DC, Levy SM. Perceptions of tooth color and dental fluorosis among parents, dentists, and children. *Journal of the American Dental Association* 2004;135(5):595-604.

29. Rivera-Hidalgo F, Shulman JD, Beach MM. The association of tobacco and other factors with recurrent aphthous stomatitis. *Oral Diseases* 2004;10:335-345.

30. Shulman JD, Peterson J. The association between occlusal characteristics and incisal trauma in individuals 8 - 50 years of age. *Dental Traumatology* 2004; 20: 67-74.

31. Buschang PH, Shulman JD. Crowding in treated and untreated subjects 17-50 years of age. *The Angle Orthodontist* 2003; 73(5):502-8.

32. Maupomé G, Shulman JD, Clark DC, Levy SM. Socio-demographic features and fluoride technologies contributing to higher TFI scores in permanent teeth of Canadian children. *Caries Research* 2003; 37(5):327-34.

33. Shulman JD, Nunn ME, Taylor SE, Rivera-Hidalgo F. The prevalence of periodontal-related changes in adolescents with asthma: Results of the Third Annual National Health and Nutrition Examination Survey. *Pediatric Dentistry* 2003; 25(3):279-84.

34. Makrides NS, Shulman JD. Dental health care of prison populations. *Journal of Correctional Health Care* 2002; 9(3):291-306.

35. Shulman JD, Ezemobi EE, Sutherland JN. Louisiana dentists' attitudes toward the Dental Medicaid program. *Pediatric Dentistry* 2001; 23(5):395-400.

36. Shulman JD, Taylor SE, Nunn ME. The association between asthma and dental caries in children and adolescents: A population-based case-control study. *Caries Research* 2001; 35:4:240-246.

*Curriculum Vitae* Jay D. Shulman - Prepared August 7, 2024

37.  Maupomé G, Shulman JD, Clark DC, Levy SM, Berkowitz J. Tooth-surface progression, and reversal changes in fluoridated and no-longer-fluoridated communities over a 3-year period. *Caries Research* 2001; 35:2:95-105.

38.  Trautmann G, Gutmann JL, Nunn ME, Witherspoon DE, Shulman JD. Restoring teeth that are endodontically treated through existing crowns. Part I: Survey of pulpal status on access. *Quintessence International* 2000; 31(10):713-18.

39.  Trautmann G, Gutmann JL, Nunn ME, Witherspoon DE, Shulman JD. Restoring teeth that are endodontically treated through existing crowns. Part II: Survey of restorative materials commonly used. *Quintessence International* 2000; 31(10):719-28.

40.  Lalumandier JA, McPhee SD, Riddle S, Shulman JD, Daigle WW. Carpal tunnel syndrome: Effect on Army dental personnel. *Military Medicine* 165:372-78, May 2000.

41.  McFadyen JA, Shulman JD**.** Orofacial injuries in youth soccer. *Pediatric Dentistry* 1999; 21:192-96.

42.  Cederberg RA, Fredricksen NL, Benson BW, Shulman JD. Influence of the digital image display monitor quality on observer performance. *Dentomaxillofacial Radiology* 1999; 28:203-7.

43.  Shulman JD, Niessen LC, Kress GC, DeSpain B, Duffy R. Dental public health for the 21st century: Implications for specialty education and practice. *Journal of Public Health Dentistry* 1998; 58 (Suppl 1):75-83.

44.  Cederberg RA, Fredricksen NL, Benson BW, Shulman JD. Effect of different lighting conditions on diagnostic performance of digital film images. *Dentomaxillofacial Radiology* 1998; 27:293-97.

45.  Shulman JD, Lewis DL, Carpenter WM. The prevalence of chapped lips during an Army hot weather exercise. *Military Medicine* 1997; 162:817-19.

46.  Shulman JD, Wells LM. Acute toxicity due to ethanol ingestion from mouthrinses in children less than six years of age. *Pediatric Dentistry* 1997; 19(6):404-8.

47.  Kress G, Shulman JD. Consumer satisfaction with dental care: where have we been, where are we going? *Journal of the American College of Dentistry* 1997; 64 (1):9-15**.**

48.  Shulman JD, Wells LM. Acute toxicity in children under the age of six from ingesting home fluoride products: an update. *Journal of Public Health Dentistry* 1995; 57(3):150-8.

49.  McFadyen JA, Seidler KL, Shulman JD, Wells, LM. Provision of free and discounted dental services to selected populations: A survey of attitudes and practices of dentists attending the 1996 Dallas Midwinter Meeting. *Texas Dental Journal* 1996; 113 (12):10-18.

50.  Shulman JD**.** Potential effects of patient opportunity cost on dental school patients. *Journal of Dental Education* 1996; 60 (8):693-700.

*Curriculum Vitae* Jay D. Shulman - Prepared August 7, 2024

51. Shulman JD, Lalumandier JA, Grabenstein JD. The average daily dose of fluoride: a model based on fluid consumption. *Pediatric Dentistry* 1995; 17 (1):13-18.

52. Solomon ES, Hasegawa TK, Shulman JD, Walker PO. An application: the cost of clinic care by dental students and its relationship to clinic fees. *Journal of Dental Education* 1994; 58 (11-12):832-5.

53. Shulman JD, Williams TR, Lalumandier JA. Treatment needs and treatment time for soldiers in Dental Fitness Class 2. *Military Medicine* 159, 2:135-138, 1994.

54. Shulman JD, Williams TR, Tupa JE, Lalumandier JA, Richter NW, Olexa BJ. A comparison of dental fitness classification using different class 3 criteria. *Military Medicine* 1994; 159 (1):5-7.

55. Amstutz RD, Shulman JD. Perceived needs for dental continuing education within the Army Dental Care System. *Military Medicine* 1994; 159 (1):1-4.

56. Shulman JD, Carpenter WM, Lewis DL. The prevalence of recurrent herpes labialis during an Army hot weather exercise. *Journal of Public Health Dentistry* 1992; 52 (4):198-203.

57. Brusch WA, Shulman JD, Chandler HT. Survey of Army dental practice. *Journal of the American College of Dentistry* 1987; 54 (1):54-63.

58. Lewis DM, Shulman JD, Carpenter WM. The prevalence of acute lip damage during a US Army cold weather exercise. *Military Medicine* 1985; 150 (2):87-90.

59. Freund DA, Shulman JD. Regulation of the professions, results from dentistry. In Scheffler, Richard (ed.). *Advances in Health Economics and Health Services Research IV* 1984; 5(1):161-180.

60. Baumgartner JC, Brown CM, Mader CL, Peters DD, Shulman JD. Scanning electron microscopic evaluation of root canal irrigation with saline, sodium hypochlorite, and citric acid. *Journal of Endodontics.* 1984; 10 (11):525-531.

**Non-Peer Reviewed Publications**

Book Chapters (6)

1. Makrides NS, Shulman JD. The Oral Health Needs of the Incarcerated Population: Steps toward Equal Access. In Treadwell HM and Evans CA (Eds.), Oral Health in America. Removing the Stain of Disparity (Chapter 6). Washington DC, APHA Press, 2019.

2. Shulman JD, Makrides NS, Lockhart A (2017). The Organization of a Correctional Dental Program. In Cohen F., ed. Correctional Health Care: Practice, Administration, and Law (Chapter 8, pp. 1-23). Kingston, NJ: Civic Research Institute.

3. Shulman JD, Cappelli DP. Epidemiology of Dental Caries. In Cappelli DP, Mosley C, eds. Prevention in Clinical Oral Health Care. Elsevier (2008), 2-13.

4. Shulman JD, Gonzales CK. Epidemiology of Oral Cancer. In Cappelli DP, Mosley C, eds. Prevention in Clinical Oral Health Care. Elsevier (2008), 27-43.

*Curriculum Vitae* Jay D. Shulman - Prepared August 7, 2024

5. Cappelli DP, Shulman JD. Epidemiology of Periodontal Diseases. In Cappelli DP, Mosley C, eds. <u>Prevention in Clinical Oral Health Care</u>. Elsevier (2008), 14-26.

6. Puttaiah R, Bedi R, Youngblood D, Shulman JD, Kohli A (2007). The Rationale for Dental Infection Control and Occupational Safety. In Kohli A and Puttaiah R, eds. Infection Control and Occupational Safety Recommendations for Oral Health Professionals. Chapter 1, pp. 2-9.

### Other Publications (15)

1. Rosenberg MK and Shulman JD. Correctional Dentistry in a Time of a Pandemic. *Correctional Health Care Reporter* 23(1) Winter 2021; pp. 3-5. Reprinted from *Correctional Law Reporter* 33(4) December/January 2022.

2. Rosenberg MK and Shulman JD. Correctional Dentistry in a Time of A Pandemic. *Correctional Law Reporter* 33(4) December/January 2022; pp. 49-55.

3. Shulman JD. Is chewing difficulty a serious medical need? *Correctional Law Reporter* 29(1) June-July 2017; pp. 7-14.

4. Shulman JD, Makrides NS, Lockhart A (2016). The Organization of a Correctional Dental Program. *Correctional Health Care Reporter* 16(4) May-June 2015.

5. Shulman JD. Structural Reform Litigation in Prison Dental Care: The *Perez* Case. *Correctional Law Reporter* 25(2) August-September 2013.

6. Shulman JD, Heng C. Meth Mouth: What We Know and What We Don't Know. *Fortune News* 2006;52(1):12-13.

7. Amstutz RD, Shulman JD. Development and Evaluation of a Success Index for Professionals in Postgraduate Training Programs. US Army Directorate of Health Care Studies and Clinical Investigation. DR-93-002. February 26, 1993.

8. Shulman JD, Guerin RD, Bolay BA, Williams TR. The Dental Needs of Reserve Component Soldiers. Volume I: Introduction, Methods, and Characteristics of Study Sample. US Army Medical Department Center and School, Directorate of Health Care Studies and Clinical Investigation (DR 92-002). Defense Technical Information Center, AD-A261541, November 1992.

9. Shulman JD, Lalumandier JA, Amstutz, RD, Williams TR, Truesdell P. The Impact of Recent Federal Administrative Rules on Army Dental Care. Volume 1. A Cost Analysis of Bloodborne Pathogens: A Report of Consultation. US Army Directorate of Health Care Studies and Clinical Investigation. #CR-93-001. December 1992.

10. Shulman JD. Linear Programming: A Resource Allocation Methodology for Dental Managers. US Army Institute of Dental Research. Defense Technical Information Center # ADA118100; June 1992.

11. Shulman JD, Williams TR, Tupa JE, Lalumandier JA, Richter NW, Olexa BJ. A Comparison of Dental Fitness Classification Using Different Class 3 Criteria: A Report of Consultation. US Army Directorate of Health Care Studies and Clinical Investigation. DR-92-001. September 1992.

*Curriculum Vitae* Jay D. Shulman - Prepared August 7, 2024

12. Lalumandier JA, Shulman JD. Applying the Department of Health and Human Services Underserved Area Criteria to Army Dental Facilities. US Army Directorate of Health Care Studies and Clinical Investigation. #CR-93-001. January 1993.

13. Shulman JD, Williams TR, Olexa BJ, Lalumandier JA. Treatment Needs of Soldiers in Dental Fitness Class 2: A Report of Consultation. US Army Health Care Studies and Clinical Investigation Activity. Report #CR91-005. July 1, 1991.

14. Shulman JD, Berky Z, Luciano WP, Williams T. Glove Use in Army Dental Clinics: A Report of Consultation. US Army Health Services Command, Health Care Studies and Clinical Investigation Activity (90-006). Defense Technical Information Center, AD-A233 336; November 1990.

15. Brusch WA, Shulman JD. Time Utilization in the Army Dental Corps. US Army Health Services Command, Health Care Studies and Clinical Investigation Activity (85-003). Defense Technical Information Center, AD-A163687; September 1985.

**Abstracts Presented (25)**

1. Yanus M, Rivera-Hidalgo F, Solomon E, Roshan S, Shulman J, Rees TD, Hummel S, Boluri A. Relationship of Candida to Oral Factors in Complete Denture Wearers. *J Dent Res 89* (Special Issue): #4445, 2010.

2. Abraham C, Rivera-Hidalgo F, Kessler H, Rees T, SL Cheng, Y, Shulman J, Solomon E. Inter-Examiner Evaluation of Fluorescence in Oral Lesions. *J Dent Res 89* (Special Issue): #4404, 2010.

3. He J, Solomon E, Shulman J, Rivera-Hidalgo F. Treatment Outcome of Endodontic Therapy with or without Patency Filing. *J Dent Res 89* (Special Issue): #1277, 2010.

4. Harrel SK, Rivera-Hidalgo F, Hamilton K, Shulman JD. Comparison of Ultrasonic Scaling Wear and Roughness Produced In Vitro. *J Dent Res* 87 (Special Issue): # 1018, 2008.

5. Harrel SK, Rivera-Hidalgo F,· Shulman JD. Comparison of Surgical Instrumentation Systems for Minimally Invasive Periodontal Surgery. *J Dent Res* 87 (Special Issue): # 1020, 2008.

6. Shulman JD, Bolin KA. Characterizing Disparities in Root Surface Caries in the US. *J Dent Res* 85 (Special Issue): # 476, 2006.

7. Shulman JD, Bolin KA. Is Root Surface Caries Associated with Xerogenic Medications? *J Dent Res* 85 (Special Issue): # 477, 2006.

8. Shulman JD, Carpenter WM. Risk Factors Associated with Geographic Tongue among US Children. *J Dent Res* 85 (Special Issue): # 1205, 2006.

9. Shulman JD, Bolin KA, Eden BD. Socio-demographic Factors Associated with Root Surface Caries Prevalence. *J Dent Res* 84 (Special Issue): # 3279, 2005.

10. Shulman JD, Carpenter WM, Rivera-Hidalgo F. Prevalence of Hairy Tongue among US Adults. *J Dent Res* 84 (Special Issue): # 1396, 2005.

11. Eden BD, Shulman JD. Root Caries in the US by Tooth Type and Surface. *J Dent Res* 84 (Special Issue): # 2622, 2005.

*Curriculum Vitae* Jay D. Shulman - Prepared August 7, 2024

12. Mobley CC, Shulman JD. Birth Weight and Caries in the Permanent Dentition of Children. *J Dent Res* 84 (Special Issue): # 86, 2005.

13. Puttaiah R, Shulman JD, Bedi R, Youngblood D, Tse E. Infection Control Profile Scores of Practitioners from Eight Countries. *J Dent Res* 84 (Special Issue): # 1026, 2005.

14. Puttaiah R, Youngblood D, Shulman JD, Bedi R, Tse E. Infection Control Practice Comparisons between Practitioners from Eight Countries. *J Dent Res* 84 (Special Issue): # 3207, 2005.

15. Foyle DM, Rivera-Hidalgo F, Shulman JD, Williams F, Hallmon W, Taylor S. Effect of Selected Therapies on Healing in Rat Calvarial Defects. *J Dent Res* 84 (Special Issue): # 1172, 2005.

16. Puttaiah R, Lin SM, Svoboda KKH, Cederberg R, Shulman JD. Quantitative Comparison of Scanning Electron and Laser Confocal Microscopy Techniques. *J Dent Res* 84 (Special Issue): # 3425, 2005.

17. Holyfield LJ, Bolin KA, Rankin KV, Shulman JD, Jones DL, Eden BD. Use of computer technology to modify objective structured clinical examinations. *J Dent Educ* 69 (1):147 # 113, 2005.

18. Benson BW, Shulman JD. Effect of antepartum natural background radiation on infant low birth weight: a pilot study. American Academy of Oral & Maxillofacial Radiology; Denver, CO. 11/6/04.

19. Shulman JD, Beach MM, Rivera-Hidalgo F. Risk factors associated with denture stomatitis in U.S. adults. *J Dent Res* 83 (Special Issue): # 422, 2004.

20. Puttaiah R, Shulman JD, Bedi R. A multi-country survey data on dental infection control KAP. *J Dent Res*; 82 (Spec Issue):# 3394, 2003.

21. Eden BD, Shulman JD. Perceived need for denture care and professional assessment of dentures. *J of Dent Res* 83 (Special Issue): # 1604.

22. Benson BW, Shulman JD. Inclusion of tobacco exposure as a predictive factor for decreased bone mineral content. *Oral Surg, Oral Med, Oral Pathol, Oral Radiol & Endo* 97(2): 266-267.

23. Eden BD, Shulman JD. Factors influencing self-perceived need for periodontal therapy: Data from the Third National Health and Nutrition Survey (NHANES III). *J Dent Res* 2003; 82(Spec Issue):#0481.

24. Shulman JD, Beach MM, Rivera-Hidalgo F. The Prevalence of oral mucosal lesions among US adults: Results from the Third National Health and Nutrition Survey. *J Dent Res* 82 (Special Issue A): # 1472, 2003.

25. Rivera-Hidalgo F, Shulman JD, Beach MM. Recurrence of aphthous ulcerations in adult tobacco smokers. *J Dent Res* 82 (Special Issue A): # 0759, 2003.

# Exhibit C

# EXHIBIT C:  SUMMARY OF PATIENT RECORDS

1.      As explained in my report, the standard of care requires people complaining of pain to be evaluated *by a dentist* within the following time frames:

    a.      Incarcerated people complaining of a toothache should be **seen by a dentist within 3 business days**, unless they have been started on antibiotics, are experiencing severe pain, or their pain cannot be managed by analgesics, in which case they should be **seen by a dentist the next business day**.

    b.      Incarcerated people referred to an oral surgeon for the extraction of infected teeth should have the teeth extracted **within three weeks**.

2.      This Exhibit summarizes the 55 charts I reviewed, of which 45 were selected by Defendants and 10 were selected by me, based on my interviews with incarcerated people during my inspection of the Jails.

3.      Of all 25 initial examinations I reviewed in charts,[1] all but four visits[2] related to complaints of pain.  Since it is possible to perform an initial examination in conjunction with an urgent care request, I assume that was the dentist's intention.  However, none of the initial examinations comported with the NCCHC Oral Care Standard J-E-06 in that 1) there was no periodontal assessment, and 2) there was not charting of all the teeth (just the teeth related to the chief complaint ware charted).  Moreover, none of the examinations was informed by bitewing x-rays which is the professional standard.  Consequently, these exams were below accepted professional standards for an initial for annual exam.

4.      I take "PAx" to mean periapical x-rays although I have yet to see the

---

[1] SD 1005874, SD 827533, SD 829569, SD 832824, SD 842992, SD 843292, SD 846437, SD 853238, SD 858511, SD 860735, SD 863525, SD 8 ██ SD 913909, SD ██████████ 139, SD 992967, S ██████████ at pp ████ 345, █████████████ 402, ████████████████ , SD 1009055, SD 8 ██

[2] SD 829569 (wants check-up), SD 842922 (wants fillings replaced), SD 1016654 (cavity), SD 1016775 (cavity).

instructions for filling out the chart.  Since I saw several charts with "Panorex" entered and one chart that with "BWX" (bitewing x-rays), I assume dentists can record other x-rays.  Dentists also have the option of checking the "review previous" box if they reviewed previously taken x-rays.  If that box is not checked, I assumed that previously taken x-rays were not reviewed.  Very few of the initial examinations are documented as having been informed by a periapical or bitewing x-ray.  As a result, it is more likely than not that caries between the teeth (interproximal caries) was underdiagnosed.

## I.    RECORDS SELECTED BY DEFENDANTS

5.    As explained in my Report, of the 45 charts provided by Defendants, 24 were categorized as "requests for dental services," and 21 were categorized as "outside dental referrals."

### A.    Requests for Dental Services

6.    ███████████ complained of dental pain from a loose tooth during the medical screening conducted during her booking on ████ 2021.  SD 1012458-1012459 (Receiving Screening form); SD 1012670 (RN progress note).  She was again seen by a nurse at her cell on ████ 2021, who noted that ███████ had exhibited "aggressive behavior" and stated "'I am fine'" before "la[ying] down in her bed," "cover[ing] herself with blanket," and "refus[ing] to talk further."  SD 1012674 (RN progress note).  She was appointed to see the dentist, Dr. Polanco, on ████ 2021 (**after 8 days**), but the chart states she refused the appointment.  SD 1012501, SD 1012541.  However, neither of the refusal forms dated ████ 2021 are signed by ████████.

7.    ██████████ requested a tooth extraction via sick call slip on ████ 2021, which was marked as received by the Jail on ████ 2021.  SD

---

3 ████████████████████████████████████████████████████
████████████████████████████████████████████████

1  1012503.  The sick call summary page of ███████████ medical records

2  indicates that an extraction was requested on ███████ 2021, and that a dental

3  appointment was allegedly refused on ███████ 2021 (**after 34 days**).  SD

4  1012398.  However, there is no refusal form (signed by ███████████ or filled out

5  by staff), nor are there any dental visit notes indicating a refusal on █████████ 2021.

6      8.      ███████████ again requested a tooth extraction via sick call slip on

7  ███████████ 2021, which was marked as received by the Jail on █████████████

8  2021.  SD 1012531.  She was appointed to see Dr. Polanco on ███████████ 2021

9  (**after 6 days**) but is documented as having refused the appointment.  SD 1012531,

10  SD 1012578.  Neither of the refusal forms dated █████████ 2021 are signed by

11  ███████████ .

12      9.      The sick call summary page of ███████████ medical records

13  indicates that she submitted a sick call slip on ████████████ 2021 stating that she

14  "ha[d] a tooth that needs to be taking [sic] out."[4]  SD 1012767.  She again requested

15  to have a tooth extracted by sick call slip dated ████████████ 2022, which was marked

16  as received by the Jail on █████████ 2022.  SD 1013019.  She is documented as

17  having refused the appointment on ██████████ 2022 (**after 14 days**).  SD 1013093.

18  The refusal form dated ████████ 2022 is not signed by ███████████ .

19      10.     The sick call summary page of ███████████ medical records

20  indicates that she submitted a sick call slip requesting a tooth extraction on

21  ███████████ 2022.[5]  SD 1012768.  She again requested a tooth extraction by sick call

22  slip dated ████████ 2022, SD 1013020, and requested to see the dentist in an

23  undated sick call slip that is marked received by the Jail on █████████ 2022, SD

24  1013023.  According to the sick call summary page, she is documented as having

25

26  [4] The original ███████████ 2021 sick call request slip appears to be missing from
    the medical re

27  [5] The original ███████████ 2022 sick call request slip appears to be missing from the
28  medical record

1  refused the appointment on ███████ 2022 (**after 14 days**).  SD 1012768.

2  However, there is no refusal form (signed by ███████ or filled out by staff),

3  nor are there any dental visit notes indicating a refusal on ███████ 2022.

4      11.  ███████ requested pain medication for dental pain in a sick call

5  slip that is marked as received by staff on ███████ 2022.  SD 1013025.  She

6  again requested a tooth extraction in a sick call slip that is marked received by the

7  Jail on ███████ 2022.  SD 1013036.  She is documented as having refused the

8  appointment on ███████ 2022 (**after 55 days**).  SD 1013064, SD 1013110.

9  Neither of the refusal forms dated ███████ 2022 are signed by ███████.

10      12.  ███████ again requested "teeth extractions" by sick call slip

11  dated ███████ 2023, which was marked received by the Jail on ███████

12  2023.  SD 1013567.  According to the sick call summary page of ███████

13  medical record, she complained of a toothache on ███████ 2023.  SD

14  1013438.  In an undated sick call slip that is marked received by the Jail on

15  ███████ 2023, ███████ reported that she "need[ed] to get [her] teeth

16  pulled [a]s soon as possible."  SD 1013565.  According to the sick call summary

17  page, she again requested an extraction on ███████ 2024.  SD 1013437.  A dental

18  visit summary appears in ███████ medical record for January 23, 2024

19  (**after 38 days**), although it is unclear whether an examination or evaluation

20  occurred.  SD 1013610 - 1013614.

21      13.  In summary, none of ███████ seven appointments was timely.

22      14.  ███████, who has also been booked under the name ███████

23  ██ requested "Emergency!!" treatment for a painful tooth via a sick call slip

24  dated ███████ 2021, which was marked as received by the Jail on ███████ 2021.  SD

25

26  ───────────────

27  [6] This report refers to this individual by the name "███████," because t███ is the
   Defendants provided in p███████

28     was incarcerated from ███████
   d not been released as o███

1008997.  She was examined by Dr. Polanco on ██████ 2021 (after 2 days), who recommended an extraction of tooth #4 because it was non-restorable (decayed root), prescribed an antibiotic, and scheduled a follow-up appointment.[7]  She saw Dr. Polanco again on ██████ 2021, and he extracted tooth #13. SD 1009055 - SD 1009075.[8]

15.     ██████ submitted a sick call request dated ██████ 2021, received by Jail staff on ██████ 2021, again asking to see the dentist so her teeth could be checked. SD 1009025.  She was seen by Dr. Polanco on ██████ 2021 (**after 33 days**). SD 1009117.[9]

16.     ██████ requested treatment for a cracked, infected tooth on a sick call slip dated ██████ 2023, which is marked received by the Jail on ██████ 2023. SD 1009300.  As of ██████ 2024 (**after 38 days**)—the day that the medical records were pulled for production to Plaintiffs in this case— she had not been seen by a dentist.  Notably, there is a dental examination form that appears to have been completed by a non-dentist; the first page reads: "completed by claudia *DO NOT USE* pascua do not use on ██████ 2024." SD 1009314.

17.     In summary, ██████ access to dental treatment for painful conditions was untimely in one of two cases.

18.     ██████ complained of a "painful infected tooth" via sick call

---

[7] While Dr. Polanco documented an initial examination, he did not document having taken bitewing x-rays or performing periodontal probing. Consequently, the examination was below accepted professional standards.

[8] While tooth #13 was documented as having been extr█████ on ██████ 2021, SD 1009072, tooth #4 (that wa██████ r extraction on ██████ 20██ 1009056) had not been extracted by ██████ 2021, SD 1009█

[9] Dr. Polanco marked #13 but did not indicate a diagnosis on the chart. Nor did he indicate whether the tooth was restorable.



1   slip dated ███████ 2021, which was marked received by the Jail on ███████ 2021.

2   SD 1007448.  He was scheduled for a dental sick call appointment on █████ 2021

3   (**after 24 days**), which he is documented as having refused.  SD 1007461; SD

4   1007454.

5        19.    According to the sick call summary page of ████████ medical

6   record, he submitted a sick call request about "a painful tooth" that "need[ed] to be

7   pulled" on ██████████ 2023.  SD 1008641.[11]  According to the same summary

8   page and the progress notes in ██████████ medical record, he again submitted a

9   sick call request reporting a tooth that "needs [to be] pulled very painful" on

10  ██████████ 2023.  SD 1008766 (RN Progress Notes); SD 1008642 (sick call

11  summary).  As of January 30, 2024 (**after 75 days**)—the day ██████████ medical

12  records were pulled for production to Plaintiffs in this case—█████████ had not

13  been seen by a dentist.

14       20.    In summary, █████████ access to a dentist for painful conditions

15  was untimely.

16       21.    █████████ submitted a sick call slip regarding a dental problem

17  that was received by the Jail on ████████ 2021.  SD 1005835.[13]  In a nursing

18  encounter on ██████████ 2021, ████████ reported: "I just want to see the

19  dent[i]st to pu[ll] out my teeth.  I am [i]n pa[i]n."  SD 1005908 (RN Progress Note).

20  _____

21  [11] The original ██████████ 2023 sick call request appears to be missing from the
    medical record.

22

23  [12] ██████████ was incarcerated from: ████████████████████████████████

24  █████████████████████████████████████████████████████████████

25  █████████████████████████████████████████████████████████████ nd had

26  [13] The sick call slip is da██████ g been filled out on ████████ 2021 and

27  received b██████ f on ████████, 2021 ████ er, a ████████ the prior
    footnote, ████ was ████ dy on ████████ 2021.  I therefore assume that

28  date is a c██████ or.

1  She again asked a nurse if she could see a dentist on ████████ 2021.  SD

2  1005909 (RN Progress Note).  The sick call summary page of ████████ medical

3  records also notes "Tooth decay denta[l] pa[i]n" on ████████, 2021.  SD

4  1005781.  She again submitted a sick call slip dated ████████ 2021, received

5  by the Jail on ████████ 2021, stating that she "need[s] tooth pulled out.  SD

6  1005837.  She submitted another undated sick call request, received by the Jail on

7  ████████ 2021, asking "to see dentist to have my tooth pulled out!"  SD

8  1005838.  ████████ was seen by Dr. Polanco on ████████ 2021 (**after 22**

9  **days**).  SD 1005874.[14]  During that appointment, Dr. Polanco determined that tooth

10  #3 was decayed but restorable.  SD 1005874 – 1005875.  Although ████████ is

11  documented as having elected to have an extraction, Dr. Polanco did not extract the

12  tooth that day, nor did he schedule ████████ for a follow-up appointment.  SD

13  1005875 – SD 1005877.

14      22.  ████████ submitted a sick call slip dated October 9, 2021, received by

15  the Jail on ████████ 2021, reporting that she "need[s] Dental / tooth pulled /

16  emergency."[15]  She submitted a sick call slip dated ████████ 2021, received by

17  the Jail on ████████ 2021, again stating that she "need[s] tooth pulled."  SD

18  1005841.  There was no documented dental appointment as of her ████████

19  2021 release (**69 days after her ████████ 2021 sick call slip**).  There is also no

20  indication that ████████ tooth #3 had been extracted as of that day, despite

21  Dr. Polanco's notation that one was necessary and ████████ agreement to the

22  extraction on ████████ 2021—80 days earlier.

23  _____

24  [14] While Dr. Polanco documented an initial examination, he did not document
    having taken bitewing x-rays or performing periodontal probing. Consequently, the

25  examination was below accepted professional standards.

26  [15] The sick call summary page of ████████ medical records notes a sick call
    request form with the same tex                    SD 1005782.  Because the

27  text is the same, I assum ████████ ████████ 2021 sick call slip, which the
                      received on ████████         tered into Techcare until

28  ████████ 2021.

23.    ███████ submitted sick call request slip dated ██████ 2022, received by the Jail on ██████ 2022, asking to "see dentist" for a "tooth pull[]." SD 1006227.  She again submitted a sick call request dated ██████ 2022, received by the Jail on ██████ 2022, asking to see a dentist to have a tooth pulled.  SD 1006226.   According to the sick call summary log, ██████ reported during nursing sick call on ██████ 2022 that she needed a "tooth pu[ll]ed."  SD 1006127.  On ██████ 2022, she was seen by a nurse, who noted that ██████ had "tooth pain," "mu[l]t[i]p[l]e cav[i]t[i]es and ch[i]pped tooth."  SD 1006352.  ██████ again submitted a sick call request on ██████ 2022, received by the Jail on ██████ 2022, asking to see a dentist to have a tooth pulled.  SD 1006231.  Dr. Patel examined ██████ on ██████ 2022 (**after 27 days**) and marked tooth #3 for extraction.  SD 1006266.  Notably, that is the same tooth that Dr. Polanco had marked for extraction on ██████ 2021, *see supra*.  On ██████ 2022, Dr. Patel prescribed antibiotics and analgesics, but did not schedule a follow up appointment.  SD 1006266 – SD 1006270.

24.    ██████ submitted another sick call slip dated ██████ 2022 asking to see a dentist to have a tooth pulled; the Jail's response date on the sick call slip is ██████ 2022.  SD 1006234.  ██████ was scheduled to see Dr. Patel on ██████ 2022 (**after 3 days**).  SD 1006280.  However, the chart reports "pat[i]ent had bad behav[i]or and was not a[ll]owed to come to denta[l] v[i]s[i]t today."  SD 1006280.

25.    ██████ submitted a sick call slip dated ██████ 2022, received by the Jail on ██████ 2022, stating:  "Have to check out tooth to be pulled (possibly)?  Also have an abscess or gum problem."  SD 1006235.  She was seen by a nurse on ██████ 2022, who reported that ██████ "c[l]a[i]ms she has denta[l] abscess," though the nurse asserted that there was no decay.  SD 1006255 – 1006356.  ██████ was seen by Dr. Patel on ██████ 2022 (**after 16 days**), who again noted that tooth #3 was decayed and required extraction.  SD 1006305 – 1006309.  ██████ declined an extraction and was prescribed antibiotics and an

1  analgesic.  SD 1006305 – 1006309.

2      26.  ██████ submitted a sick call request dated ██████ 2022,

3  received by the Jail on ██████ 2022, asking "[t]o see the Dentist" because she

4  "need[ed] a tooth pulled."  SD 1006243.  A Dental Complaint form filled out by an

5  RN on ██████ 2022 states that ██████ has a toothache and that she now

6  wants an extraction, despite refusing the extraction during her ██████ 2022

7  appointment.  SD 1006216 – 1006218.[16]  She again submitted a sick call request

8  dated ██████ 2022, received by the Jail on ██████ 2022, asking "to

9  see the dentist" because she had "a tooth that needs to be pulled."  SD 1006249.

10 There is no indication that ██████ was seen by the dentist prior to her

11 ██████ 2022 release (**after 20 days**).  *See* SD 1575334.

12     27.  ██████ again submitted an undated sick call request, received by the

13 Jail on ██████ 2022, asking to see the dentist.  SD 1006440.  She again

14 requested to see the dentist via sick call slip dated ██████ 2022, which is marked

15 as received by the Jail on ██████ 2022.  SD 1006444.  She was seen by a nurse

16 on ██████ 2022, when ██████ also reported that she needed to "see dent[i]st"

17 to have a "tooth pu[ll]ed."  SD 1006467.  The sick call summary of ██████

18 medical records notes her request to see a dentist on ██████ 2022, which states

19 that ██████ is a "MUST SEE" patient.  SD 1006383.  She again requested to see

20 the dentist via sick call slip dated ██████ 2022.  SD 1006445.[17]  She again

21 requested to see the dentist via sick call slip dated ██████ 2022, which is marked

22 as received by the Jail on ██████ 2022.  SD 1006448.  She again requested to

23

24 _____

[16] The Dent██████ form is noted as "signed" by Dr. Peter Freedland, a non-

25 dentist, on ██████ 2022.  It is not clear what th██████re—dated nearly a
   month after ██████ completed and a week after ██████ was released from

26 custody—indicates.

27 [17] The Jail's response to the sick call request states:  "Pt. refused to come out and
   discuss sick call reques██████ed 'no need, I'm okay.'"  There is no corresponding

28 refusal form signed by ██████.

1  see the dentist via sick call slip dated ███████ 2022, which is marked as received

2  by the Jail on ███████ 2022. SD 1006447. On ███████ 2022, a nurse filled

3  out a Dental Complaint form, noting that ███████ had a toothache with pain at a

4  10 out of 10 "on and off." SD 1006422 – 1006424.[18] ███████ was seen by

5  Dr. Polanco on ███████, 2022 (**after 23 days**) and extracted tooth #3 on that day.

6  SD 1006460 – 1006464. Notably, this is the same tooth that Dr. Polanco had

7  marked for extraction over a year and over a dozen sick call requests earlier.

8      28.    ███████ again submitted a sick call slip reporting tooth pain on

9  ███████ 2023, marked received by the Jail on ███████ 2023. SD 1006583.

10  She submitted another request reporting tooth pain dated ███████ 2023. SD

11  1006585. The sick call summary portion of ███████ medical records also

12  indicates a complaint of dental pain dated ███████ 2023. SD 1006476. A nurse

13  filled out a Dental Complaint form on ███████ 2023, documenting that ███

14  ███ had a toothache. SD 1006538 – 1006540.[19] There is no indication that ███

15  ███ was seen by a dentist before her ███████ 2023 release (**after 32 days**).[20]

16      29.    ███████ again submitted a sick call slip dated ███████ 2023,

17  received by the Jail on ███████ 2023, reporting that she "need[ed] a tooth

18  pulled" due to a "toothache." SD 1006882; *see also* SD 1006717 (sick call

19  summary). She again submitted a sick call slip dated ███████ 2023, received by

20  the Jail on ███████ 2023, requesting "to see the Dentist." SD 1006881. She

21  again submitted a sick call slip dated ███████ 2023, received by the Jail on

22

23  ───────────────────

24  [18] The Dental Complaint form is noted as "signed" by Dr. Freedland on ███████ 2022.

25  [19] The Dental Complaint form is noted as "signed" by Dr. Freedland on ███████ 2023.

26  [20] The Dental Complaint form completed on ███████ 2023 d███████cument

27  that a dental appointment was scheduled, rath██ ██ed that ███████ was

    "[i]nstructed to submit [a] sick ca[ll] request [i]f symptoms are n███████ed or [i]f

28  cond[i]t[i]on worsens." *Id.*

1    ████████ 2023, reporting that she "need[ed] a tooth pulled."  SD 1006877.  She

2    again submitted a sick call slip dated ████████ 2023, marked as received by the

3    Jail on ████████ 2023, reporting that her "tooth needs to be pulled."  SD

4    1006878.  A nurse filled out a Dental Complaint form on ████████ 2023,

5    documenting that ██████ had a toothache and prescribing acetaminophen.  SD

6    1006841 – 1006843.  The sick call summary in ██████ medical records

7    includes a note dated ████████ 2023, stating "Request[i]ng tooth to be pu[ll]ed

8    out – MUST SEE."  SD 1006717.  She again submitted a sick call slip dated

9    ████████ 2023, received by the Jail by at least ████████ 2023, requesting

10   "to have a tooth pulled."  SD 1006907.[21]  She again submitted a sick call slip dated

11   ████████ 2023, received by the Jail on ████████ 2023, requesting "tylenol"

12   for "tooth pain."  SD 1006908.  She again submitted an undated sick call slip,

13   received by the Jail on ████████ 2023, reporting "major tooth pain" that "needs

14   to be pulled."  SD 1006910.  She again submitted a sick call slip dated ████████

15   2023, received by the Jail on ████████ 2023, reporting "extreme tooth pain" and

16   stating that she "need[s] a tooth pulled."  SD 1006911.  She was seen by

17   Dr. Polanco on ████████ 2023 (**after 42 days**), who noted swelling in the soft

18   tissue around tooth #17 but that he had "No ava[il]ab[l]e denta[l] assistant."  SD

19   1006940.  He therefore requested a follow-up exam for "r/s for panorex and denta[l]

20   exam #17 area."  SD 1006941.  I understand from this notation that Dr. Polanco was

21   unable to complete a dental exam on ████████ 2023 due to a staffing issue.

22        30.    ██████ was again seen by Dr. Polanco on ████████ 2023.  SD

23   1006942.  Dr. Polanco conducted a dental exam—two weeks after he had been

24   unable to examine ██████ due to lack of a dental assistant and 56 days after

25   ██████ began complaining of tooth pain—and noted decay, a radiolucency, and

26

27   ────────────
     [21] This ████████ does not have a "received" stamp, but the Jail's response is

28   dated ████████ 2023.

that tooth #18 was not restorable.  SD 1006943.  ███████ declined an extraction

on that day, and Dr. Polanco prescribed antibiotics and analgesics.  SD 1006947.

31.  ███████ again submitted a sick call slip dated December 22, 2023,

received by the Jail on ███████ 2023, requesting "to have [her] tooth pulled."

SD 1006916.   The sick call summary in ███████ medical records includes a

note dated ███████ 2024, stating "MUST SEE.  Patient [i]s request[i]ng, ' I need a

tooth pu[ll]ed back mo[l]ar extreme tooth pa[i]n.'"  SD 1006718.  She was

examined by Dr. Polanco on ███████ 2024 (**after 11 days**).   SD 1006950 –

1006955.  ███████ again declined an extraction, and Dr. Polanco prescribed

antibiotics and analgesics.  *Id.*

32.  In summary, ███████ wait time to see a dentist after alerting the

Jail of a painful dental condition is unacceptably long.  Moreover, in multiple cases,

follow-up appointments were not scheduled for the dental infections for which ███

███ had been described antibiotics.

33.  ███████ reported that he was hit in the face while in the Jail

on ███████ 2023, for which he was sent to the emergency room.  SD 1003910

– 1003911 (RN Progress Notes); SD 1003827 (ER Referral Form).  He was

discharged from the hospital on ███████ 2023, where he was diagnosed with,

among other things "Tooth avulsion" and "Maxillary sinus fracture."  SD 1003821

(After Visit Summary); SD 1003912 (RN Progress Note).  On the day he was

discharged to the Jail, a Sheriff's Department nurse noted that he was requesting to

see a dentist.  SD 1003912 (RN Progress Note).  ███████ also submitted a sick

call slip dated ███████ 2023, received by the Jail on ███████ 2023,

stating:  "Teeth damaged, emergency for dentist."  SD 1003832.  He also reported

his dental pain to a nurse, who saw him "at ce[ll] door" on ███████ 2023.  SD

---



22 ███████ was booked on ███████ and had not been released as of April 2024.
SD

1003916.  In particular, the progress note states:  "C[l]a[i]ms when he eats or chews [i]t hurts."  *Id.*  According to the sick call summary page of ████████ medical records, he again complained of a "broken tooth" on ████████ 2024.[23]  SD 1003727.  As of ████████, 2024 (**after 32 days**)—the day ████████ medical records were pulled for production to Plaintiffs in this case—████████ had not been seen by a dentist.

34.    In summary, a delay of 32 days to treat dental pain is untimely.

35.    ████████ submitted a sick call request dated ████████ 2023, received by the Jail on ████████, 2023, requesting to see the dentist due to pain resulting from a chipped tooth.  SD 997452.  ████████ was seen by Dr. Patel on ████████ 2023 (**after 28 days**).  SD 997454.  Dr. Patel diagnosed teeth #18 and #19 with decay and pulpitis and determined that both teeth were restorable only with "rct/crown," which refers to a root canal and crown.  SD 997456.  ████████ declined an extraction and ordered antibiotics and analgesics.  SD 997456 – 997459.

36.    ████████ submitted a sick call request dated ████████ 2023, received by the Jail on ████████ 2023, stating that he was experiencing pain in his wisdom teeth.  SD 997451.  There is an additional note in the sick call summary section of ████████ medical records dated ████████ 2023, stating:  "[l]ower w[i]sdom teeth caus[i]ng a [l]ot of pa[i]n, request[i]ng to extract."  SD 997423.  As of ████████ 2024 (**after 65 days**)—the day ████████ medical records were pulled for production to Plaintiffs in this case—████████ had not been seen by a dentist.

37.    In summary, his urgent care appointments were untimely.

---

[23] ████████ w████████zed for a follow-up with ENT at UCSD for a maxillary sin████████ on ████████ 2024, and was scheduled for a January 17, 2024 appointment.  SD ████████  However, there is no record in the chart that the appointment was kept.

[24] ████████████████████████

38. ███████████ submitted a sick call requested dated ████████ 2023, received by Jail staff on ████████ 2023, asking to see the dentist for "a bad tooth ache." SD 938896. On ████████ 2023, a nurse filled out a Dental Complaint form, on which she documented that ████████ was experiencing tooth pain and prescribed ibuprofen. SD 938831 – 938833. ████████ again submitted a sick call request dated ████████ 2023, received by the Jail on ████████ 2023, stating: "Back molar Hurts in Pain from 1-10 a 10." SD 938899. On ████████ 2023, a nurse again filled out a Dental Complaint form, on which she documented that ████████ was experiencing tooth pain and prescribed both acetaminophen and ibuprofen. SD 938834 – 938836. ████████ again submitted a sick call request dated ████████ 2023, received by the Jail on ████████ 2023, reporting that his "tooth still hurts." SD 938906. He again submitted a sick call request dated ████████ 2023, received by the Jail on ████████ 2023, reporting that his tooth still hurts and that he has "been told over and over that [he's] waiting to see a dentist[,] it's been over 2 months almost." SD 938907.  He again submitted an undated sick call request, received by the Jail on ████████ 2024, asking for a follow up on his dental request. SD 938912.  He again submitted a sick call request dated ████████ 2024, received by the Jail on ████████ 2024, reporting:  "My Tooth is Hurting bad and been Bleeding.  my face is swollen also. Please can I see the dentist." SD 938913. As of ████████ 2024 (**after 116 days**)—the day ████████ medical records were pulled for production to Plaintiffs in this case—████████ had not been seen by a dentist.

39. ████████ reported to a nurse practitioner in the Jail on ████████

25 ████████████████████████████████████████

26 ████████ rcerated from ████████████████████ and had not b

1  2023 that that he was experiencing pain in his jaw and that he was missing several

2  lower teeth.  SD 825017 (Progress Notes).  The nurse practitioner determined that

3  ████████ was suffering from "[p]oor dent[i]t[i]on" due to his missing teeth and

4  ordered a dental consult "ASAP."  SD 825018 (Progress Notes).  A ████ 2023

5  note on the sick call summary page of ████████ medical records states: "Jaw

6  pa[i]n and m[i]ss[i]ng severa[l] [l]ower front teeth."  SD 8244861.  ████████

7  submitted a sick call request dated ████ 2023, received by the Jail on ████

8  2023, requesting an oral prosthetic considering his missing teeth.  SD 825181.  On

9  ████ 2023, ████████ was seen by a nurse who noted that ████████ was

10 "request[i]ng to see dent[i]st for m[i]ss[i]ng [l]ower front teeth."  SD 825020.

11      40.  ████████ was seen by Dr. Patel on ████ 2023 (**after 31 days**).  SD

12 825095.  Although ████████ denied any pain, Dr. Patel noted caries, swelling, a

13 fistula, a radiolucency, and bone loss.  SD 825095 – 825086.  She also

14 recommended a prophylaxis (prophy or cleaning) as well as extractions and an

15 antibiotic for an abscess around tooth #8 and 9.  SD 825097.  She did not schedule a

16 follow-up appointment to evaluate the abscess.  A prophy was attempted but was

17 terminated due to equipment failure.  SD 825101.  ████████ declined the

18 recommended extractions.  SD 825100.  While Dr. Patel noted that she conducted

19 "spot probing" of ████████ gums, resulting in pocket depths measuring "2-

20 8mm," she did not note which teeth had deep periodontal pockets, nor was there

21 proper periodontal screening (*i.e.*, PSR or CPITN).[27]  SD 825096.

22      41.  ████████ submitted a sick call request dated ████████ 2023,

23 received by the Jail on ████████ 2023, reporting a toothache and that it hurts

24 when he eats.  SD 825184.  A nurse completed a Dental Complaint form on

25 ████████ 2023, documenting that ████████ had a toothache rating 10/10 on

26 the pain scale, prescribing acetaminophen and ibuprofen, and referring him to the

---

[27] See discussion of periodontal diagnosis, *supra*.

dentist.  SD 824889 – 824890.  A nurse again completed a Dental Complaint form on ███████ 2023, documenting that ███████ had a toothache rating 8/10 on the pain scale, prescribing acetaminophen, noting that no signs of infection were present, and referring him to the dentist.  SD 824892 – 824893.  A ███████ 2023 note on the sick call summary page of ███████ medical records states: "Denta[l] pa[i]n.  Pat[i]ent c[l]a[i]ms h[i]s upper front tooth cap [i]s 'rotten.'"  SD 824862.  As of ███████ 2024 (**after 82 days**)—the day ███████ medical records were pulled for production to Plaintiffs in this case—███████ had not been seen by a dentist.

   42.    In summary, ███████ access to a dentist for a painful condition was untimely.  In addition, the dental evaluation performed by Dr. Patel was inadequate, due to the lack of documented periodontal probing.

   43.    ███████ reported to dental pain to a Sheriff's Department nurse on ███████, 2024.  SD 822376 – 822377 (Progress Notes).  The nurse noted that there were no signs of infection and scheduled ███████ for dental sick call.  *Id.*  During ███████ ███████ 2024 health assessment, a nurse noted that he had a broken tooth and was experiencing mouth pain.  SD 822393.  A ███████ 2024 note on the sick call summary in ███████ medical record states:  "R [l]ower mo[l]ar eva[l].  Pt c/o broken upper tooth dur[i]ng hea[l]th assessment."  SD 822342.  A nurse completed a Dental Complaint form on ███████ 2024, documenting that ███████ has a toothache rating 9/10 on the pain scale with no signs of infection present and prescribing acetaminophen.  SD 822372 – 822373.  A StatCare note in ███████ medical record states:  "DDS schedu[l[ed.  Looks as though f[illi]ng e[i]ther fe[ll] off or tooth ch[i]pped."  SD 822379.  As of ███████ 2024 (**after 27 days**)—the day ███████ medical records were pulled for

----

[28] ███████ was incarcerated on ███████ and had not been released as of April 20 ███████ 75334.

1  production to Plaintiffs in this case—███████ had not been seen by a dentist.

2     44.   In summary, ███████ 27-day wait to see a dentist for a painful

3  condition is untimely.

4     45.   ██████████ was first scheduled to see the dentist on

5  ███████ 2021—nearly fourteen months after he was booked into the Jail on

6  ███████ 2020.  SD 825202 (sick call summary).  He is documented as having

7  refused the appointment, though neither of the refusal forms are signed by

8  ███████.  SD 825650; 826285.

9     46.   ███████ submitted a sick call request dated ███████ 2022,

10  received by the Jail on ███████ 2022, complaining of dental pain.  SD

11  826885.  A nurse completed a Dental Complaint form on ███████ 2022,

12  noting that ███████ was experiencing a toothache in his left upper molar, rated

13  a 9/10 on the pain scale, with no signs of infection.  SD 825419 – 825421.[30]   A

14  nurse again completed a Dental Complaint form on ███████ 2022, noting that

15  Mr. ███████ was experiencing a toothache in his left upper molar, rated 6/10 on the

16  pain scale, with no signs of infection, which was resulting in a foul taste in his

17  mouth.  SD 825422 – 825424.[31]  The nurse prescribed and analgesic and referred

18  him to dental sick call.  SD 825423.  ███████ was seen by Dr. Patel on

19  ███████ 2022 (**after 24 days**), who diagnosed caries, pulpitis, and swelling on

20  tooth #13, which she recommended for extraction.  She also noted that teeth #8 and

21  #9 had periapical radiolucency (suggestive of an abscess) and should be monitored.

22  SD 825972.  ███████ declined to have tooth # 13 extracted and was prescribed

23  _____

24  [29] According to a July 9, 2024 18:34:05 ███████ San Diego County Sheriff's
    's "Who Is In Jail" website, ███████ has been at the Jail since

25  ███████ 2020.

26  [30] The Dental Complaint form is noted as "signed" by Dr. Freedland on ███████
    2023.

27  [31] The Dental Complaint form is noted as "signed" by Dr. Freedland on ███████

28  2023.

1  an antibiotic.  SD 825972 – 825973.

2      47.  ███████████ submitted a sick call request dated ██████████ 2022

3  stating:  "I would like the dentist to pull my tooth.  It is to[o] damaged and

4  painful[]."  SD 826892.  A nurse completed a Dental Complaint form on

5  ██████████ 2022, noting that ████████████ was experiencing tooth pain in his left

6  upper molar, rated a 10/10 on the pain scale, with no signs of infection.  SD 825428

7  – 825430.[32]  The nurse prescribed ibuprofen and referred ███████████ to dental

8  sick call.  *Id.*  He again submitted a sick call request dated ███████████ 2022,

9  received by the Jail on ███████████ 2022, regarding his "bad tooth pain."  SD

10 826895.  A nurse again completed a Dental Complaint form on ██████████ 2023,

11 noting that ██████████ was experiencing toothache, rated a 6/10 on the pain scale,

12 with no signs of infection, the nurse prescribed ibuprofen.  SD 825431 – 825433.[33]

13 ██████████ again submitted a sick call request dated ██████████ 2023, received

14 by the Jail on ██████████ 2023, stating:  "I have a tooth that needs to be pulled and I

15 need to be seen by the dentist."  SD 826901.  He was seen by Dr. Polanco on

16 ██████████ 2023 (**after 26 days**), who extracted tooth #13.  SD 825977 – 825982.

17     48.  A nurse completed a Dental Complaint form for ██████████ on

18 ██████████ 2023, noting that ██████████ was experiencing a toothache rated a 10/10

19 on the pain scale, with no signs of infection, but was causing a "swollen face/jaw."

20 SD 825439 – 825441.[34]  ██████████ submitted a sick call request dated June 5,

21 2023, received by the Jail on ████████ 2023, stating:  "I have a tooth that need[s] to be

22 pulled and [I] need to be seen by the dentist!"  SD 826912.  The nurse prescribed

---

[32] The Dental Complaint form is noted as "signed" by Dr. Freedland on ██████████ 2023.

[33] The Dental Complaint form is noted as "signed" by Dr. Freedland on ██████████ 2023.

[34] The Dental Complaint form is noted as "signed" by Dr. Freedland on ██████ 2023.

ibuprofen and referred ████████ to dental sick call.  *Id.*  A dental sick call form was filled out by a dental assistant on █████ 2023, who noted: "Patient to have exam and diagnosis with Dental provider for treatment options."  SD 826071 – 826076.  According to the dental sick call form, the dental assistant took a medical/dental history, took a panoramic x-ray, read the x-ray (#12 distal caries), indicated a diagnosis of caries and deemed the tooth to be restorable *id.*—all of which is beyond the purview of a dental assistant's position and should instead have been completed by a dentist.  ████████ again submitted a sick call request dated ██████ 2023, received by the Jail on ██████ 2023, stating:  "I have a tooth that needs to be pulled and [I] need to be seen by the Dentist!"  SD 826913.  He again submitted a sick call request dated █████ 2023, received by the Jail on █████ 2023, stating:  "I have a tooth that need[s] to be pulled and [I] need to be seen by the dentist!"  SD 826919.  He again submitted a sick call request dated █████ 2023, received by the Jail on █████ 2023, stating:  "[I] need to be seen by the dentist for my tooth pain!"  SD 826920.  A nurse completed a Dental Complaint form on ██████ 2023, noting that ████████ was experiencing a toothache rated a 7/10 on the pain scale, with no signs of infection.  SD 825442 – 825444.  The nurse prescribed acetaminophen and ibuprofen.  *Id.*  ████████ was seen by Dr. Polanco on ██████ 2023 (**after 64 days—and 59 days after a dental assistant stated that he should see a dental provider**), who diagnosed tooth #12 with decay and pulpal involvement, but restorable.  SD 826255 – 826260.  ████████ declined the extraction and was prescribed analgesics.  *Id.*

49.    A nurse completed a Dental Complaint form for ████████ on ██████ 2023, noting that ████████ was experiencing a toothache rated a 10/10 on the pain scale, with no signs of infection.  SD 825445 – 825447.  The nurse prescribed ibuprofen and referred ████████ to dental sick call.  *Id.*  An ██████ 2023 note on the sick call summary of ████████ medical records documents "Dental Pain."  SD 825208.  He was seen by Dr. Polanco on ██████

1  2023 (**after 48 days**), who extracted tooth #12 (that he indicated was decayed and

2  non-restorable).  SD 826481 – 826486.

3       50.  ██████████ reported tooth pain to a nurse on ██████ 2023.  SD

4  826690 (medication refusal form).  He again reported tooth pain on ██████

5  2023.  SD 825208.  A nurse completed a Dental Complaint form for ██████

6  on ██████ 2024, noting that ██████ was experiencing a toothache rated a

7  5/10 on the pain scale, with no signs of infection.  SD 825450 – 825452.  The nurse

8  prescribed acetaminophen and ibuprofen.  *Id.*  A nurse again completed a Dental

9  Complaint form for ██████ on ██████ 2024, noting that ██████

10  was experiencing pain in his "front upper gums" rated a 10/10 on the pain scale,

11  with no signs of infection.  SD 825453 – 825455.  The nurse prescribed

12  acetaminophen.  *Id.*  He was seen in the medical clinic and a nurse practitioner

13  assessed him as having an abscess and initiated antibiotic therapy.  SD 825455.  On

14  ██████ 2024, a physician's assistant through Statcare determined that

15  ██████ "appears to [have] gingivitis" and prescribed mouthwash.  SD 825580.

16  ██████ was seen by a nurse practitioner on ██████ 2024, "reporting

17  tasting pus after a 'pus pocket' erupted in his right upper frontal tooth.'"  *Id.*  The

18  nurse practitioner diagnosed a dental abscess.  SD 825581.  A nurse indicated that

19  she would schedule him for "Priority" dental sick call.  SD 825584.  As of ██████

20  ██ 2024 (**after 40 days**)—the day ██████ medical records were pulled for

21  production to Plaintiffs in this case— ██████ had not been seen by a dentist.

22       51.  To summarize, ██████ submitted several requests stating

23  dental pain.  While he was generally seen timely by nursing staff and provided with

24  analgesics, he was not seen timely by a dentist.  In addition, ██████ was not

25  provided adequate routine care, despite being a resident of the Jail for over four

26  years.  During his incarceration, ██████ was examined by a dentist on

27  ██████ 2022, ██████ 2023, ██████, 2023, and ██████ 2023.  All

28  the examinations were for urgent care.  None of the dentists scheduled him for an

1  initial examination and treatment plan.  As a result, despite his lengthy

2  incarceration, he had no documented periodontal probing or bitewing x-rays.

3  Consequently, it is more likely than not that his dental health worsened due to the

4  lack of routine care.  His care was below accepted professional standards.

5      52.      ██████████ reported a toothache to a nurse at the Jail, who noted that

6  ████████ had a broken right molar, on ██████ 2021.  SD 827464 (RN Progress

7  Notes).  An █████ 2021 note on the sick call summary in █████ medical

8  record that he had requested a tooth extraction.  SD 827436.  He submitted a sick

9  call request dated ██████ 2021, received by the Jail on ████████ 2021,

10  reporting that he had an injury in the mouth and requesting dental services.  SD

11  827552.  █████ was seen by Dr. Polanco on ████████ 2021 (**after 39**

12  **days**).  SD 827533.  Dr. Polanco documented that he performed an initial exam,[36]

13  and he noted that tooth #29 was decayed and non-restorable and should be extracted.

14  SD 827533 – 827537.  He prescribed an antibiotic and an analgesic.  *Id.*  Although

15  he noted that ████████ should be scheduled for a follow up exam, Dr. Polanco did

16  not indicate a date by which that exam should occur, nor is there any indication that

17  a follow-up appointment to extract tooth # 29 was in fact scheduled.  *Id.*

18      53.      █████ again submitted a sick call request dated ████████

19  2021, received by the Jail on ████████ 2021, reporting a "cavity" and

20  requesting a root canal.  SD 827565.  On ██████ 2021, he reported "denta[l]

21  pa[i]n, cav[i]ty, and abscess" to a nurse at the Jail.  SD 827485 – 827486.  He was

22  seen by Dr. Polanco on ████████ 2021 (**after 15 days**), who noted swelling,

23  radiolucency, and bone loss and extracted tooth #29.  SD 827542 – 827546.

24

25  [35] ██████████     ████████████████████

26  ███████████████████████

27  [36] While Dr. Polanco documented an initial examination, he did not document
having taken bitewing x-rays or performing periodontal probing. Consequently, the

28  examination was below accepted professional standards.



1    54.    ███████ submitted a sick call request dated █████████ 2023,

2  received by the Jail on ████████ 2024, reporting "tooth loss" and "mouth in much

3  pain."  SD 827815.  He reported jaw pain and tooth decay to a nurse at the Jail on

4  ████████████.  SD 827791 (RN Progress Notes).  He submitted a sick call

5  request slip dated █████████ 2024, received by the Jail on █████████ 2024,

6  reporting an "extremely painful" tooth and requesting to see the dentist.  SD

7  827819.  A █████████ 2024 note on the sick call summary page of ██████████

8  medical records states:  "request[i]ng denta[l] to treat decay[i]ng tooth that has the

9  root exposed.  Causes 'severe' pa[i]n."  SD 827749.  As of █████████ 2024 (**after**

10 **38 days**)—the day █████████ medical records were pulled for production to

11 Plaintiffs in this case—█████████ had not been seen by a dentist.

12    55.    In summary, the wait time for a dentist appointment was consistently

13 untimely for a patient, like █████████, who was complaining of pain.  Moreover,

14 had Dr. Polanco scheduled an appointment to extract #29 by date certain as he

15 should have, the █████████ 2021 toothache would have been prevented.

16    56.    ██████████████ submitted a sick call request dated █████████ 2022,

17 received by the Jail on █████████ 2022, reporting "dental pain when chewing."  SD

18 828920.  He again submitted a sick call request dated █████████ 2022, received by

19 the Jail on █████████ 2022, reporting:  "emergency—now broken tooth (pain) can't

20 eat!"  SD 828921.  A nurse completed a Dental Complaint form on █████████ 2022,

21 noting that █████████ was experiencing a toothache rated a 7/10 on the pain scale,

22 with no signs of infection].  SD 828800 – 828802.[38]  He was seen by Dr. Polanco

23 █████████ 2022 (**after 5 days**).[39]  Dr. Polanco noted that tooth #5 was fractured and

24 _____

25 [37] █████████ has been incarcerated since █████ and had not been released as of
Ap      SD 1575334.
26 [38] The Dental Complaint form is noted as "signed" by Dr. Freedland on ██████████
27 ██, 2022.
28 [39] While Dr. Polanco documented conducting an "initial examination," he did not

1  placed a temporary composite filling.  SD 828761 – 828763.

2        57.    An ██████ 2022 note on the sick call summary page of

3  ██████  medical records states:  "ch[i]pped tooth, stated 'tooth w[i]th sharp

4  edges and [i]ts cutt[i]ng my tongue.'"  SD 828274.  A nurse completed a Dental

5  Complaint form for ██████ on ██████ 2022, noting that ██████ was

6  experiencing a toothache rated a 7/10 on the pain scale, with no signs of infection,

7  but was causing a "swollen face/jaw."  SD 828803 – 828805.[40]  A ██████

8  2022 note on the sick call summary page of ██████ medical records states:

9  "Tooth f[illi]ngs are pa[i]nfu[l] when chew[i]ng.'"  SD 828274.  He was seen by

10  Dr. Polanco on ██████ 2022 (**after 25 days**).  Dr. Polanco diagnosed a

11  fractured filling on the mesial and occlusal surfaces and restored tooth #5 with a

12  composite filling.  SD 828767 – SD 828771.

13        58.    ██████ submitted a sick call request dated ██████ 2022,

14  received by the Jail on ██████ 2022, stating:  "Filling repair (cracked tooth)

15  has rebroken.  Could I please see dentist as soon as possible?  Sharp, hard to eat

16  (chew), pain with hot or cold."  SD 828931.  He again submitted a sick call request

17  dated ██████ 2022 regarding tooth pain.  SD 828932.  A nurse completed a

18  Dental Complaint form on ██████ 2022, noting that ██████ was

19  experiencing a toothache rated a 5/10 on the pain scale, with no signs of infection.

20  SD 828806 – 828808.[41]  He is documented as having refused to attend a dental

21  appointment on ██████ 2023 (**after 39 days**).  SD 828933.  The refusal form is

22  not signed by ██████.

23

24  _____

25  document having taken bitewing x-rays or performing periodontal probing.
    Consequently, the examination was below accepted professional standards.

26  [40] The Dental Complaint form is noted as "signed" by Dr. Freedland on ██████
    ██, 2022.

27  [41] The Dental Complaint form is noted as "signed" by Dr. Freedland on ██████
28  2023.

59.     ████████     submitted a sick call slip dated ████████ 2023 regarding pain from his broken tooth and stating that he had been waiting "over a month."  SD 828934.  A nurse completed a Dental Complaint form on ████████ 2023, noting that ████████ was experiencing a toothache rated a 5/10 on the pain scale, with no signs of infection.  SD 828809 – 8288011.[42]  He again submitted a sick call request dated ████████ 2023, received by the Jail on ████████ 2023, stating:  "Again.. my tooth broke in half.  Upper right (pain) now from using opposite side (over use). I'm having pain problems upper left … third request for some help! (crazy)."  SD 828935.  A nurse completed a Dental Complaint form on ████████ 2023, noting that ████████ was experiencing a toothache rated a 8/10 on the pain scale, with no signs of infection.  SD 828812 – 828814.[43]  He was seen by Dr. Polanco on ████████ 2023 (**after 48 days**), who placed a temporary composite filling in tooth #11.  SD 828772.

60.     ████████     submitted a sick call request dated ████████ 2023, received by the Jail on ████████ 2023, stating:  "Upper top left tooth – dentist repaired it less a week ago.  Filling <u>fell out</u>.  Pain Chewing, tough to eat.  Could you please re-schedule me to see dentist.  Yes it's all temporary work, I know."  SD 828936 (emphasis in original).[44]  He submitted another sick call request dated ████████ 2023, received by the Jail on ████████ 2023, stating:  "Two temporary fillings recently put in by this dentist here (GBDF) have fell out.  I get it that they aren't me[a]nt to last.  Could I please see a dentist.  Pain to eat!"  SD 828937.  He

---

[42] The Dental Complaint form is noted as "signed" by Dr. Freedland on ████████ 2023.

[43] The Dental Complaint form is noted as "signed" by Dr. Freedland on ████████ 2023.

[44] A ████████ 2023 notation ████████ call summary page of ████████ medi███ s suggests that ████████ refused an appointme████ his ██ D 828275.  Howeve████ al form—which is not signed by ████████—indicates that the refusal was for a nursing appointment, not a dental ████████ht.  SD 828778 – 828779.

1  submitted another sick call request dated ■■■■ 2023, received by the Jail on

2  ■■■■ 2023, stating: "Can't chew due to major pain. Two temporary filling done

3  here (GBDF) recently have <u>fallen out</u>. I need to see dentist ASAP. I've put in

4  several request[s] with NO reply. It['s] bad now. <u>Emergency please</u>." SD 828938

5  (emphasis in original). A nurse completed a Dental Complaint form on ■■■■

6  2023, noting that ■■■■ was experiencing a toothache with no signs of

7  infection, prescribing acetaminophen, and referring him to a dentist. SD 828815 –

8  828817.[45] He submitted another sick call request dated ■■■■ 2023, received by

9  the Jail on ■■■■ 2023, stating: "I've wrote in for weeks already about pain to

10  chew and eat—two temporary filling[s] (done here) have fell out. I've asked to see

11  dentist (again) but instead I got 3 days aspirin and two days tray diet??! Now back

12  to pain and can't chew food …. I've still 6 mo[nths] till my trial …." SD 828939.

13  He submitted another sick call request dated ■■■■ 2023, received by the Jail on

14  ■■■■ 2023, stating: "<u>I've problems chewing some of the food due to lack of</u>

15  <u>dentistry</u>—I've still 6 mo[nths] till trial … need to see dentist ASAP." SD 828940.

16  He submitted another sick call request dated ■■■■ 2023, received by the Jail on

17  ■■■■ 2023, stating: "Two temporary fillings (done here) have fell out (pain)

18  chewing … A little help please!" SD 828941. He was seen by Dr. Polanco ■■■■

19  2023 (**after 84 days**), and Dr. Polanco placed a temporary filling in tooth #5 to

20  replace the temporary filling he placed on ■■■■ 2022. SD 828780 – 828785.

21  Dr. Polanco saw him again on ■■■■ 2023 and replaced the temporary filling on

22  tooth #11 (originally done on ■■■■ 2023 with another temporary filling. SD

23  828786 – 828791.

24      61. ■■■■ submitted a sick call request dated ■■■■ 2023,

25  noted as having been received by the Jail on ■■■■ 2023, stating: "Tooth

26

27  _____

    [45] The Dental Complaint form is noted as "signed" by Dr. Freedland on ■■■■

28  2023.

pain is now [abscessed[ ober left bicusbid tooth.  Bad toothache need antibiotics ASAP.  To see dentist <u>ASAP</u>.  Talked to nurse today but no help still!!"  SD 828953 (emphasis in original).[46]  A nurse completed a Dental Complaint form on ████████ ██████, noting that ████████ was experiencing a toothache with pain rated 10/10, with no signs of infection, prescribing acetaminophen, and referring him to a dentist.  SD 828824 – 828826.  On ████████ 2023, a nurse who saw ████████ through his cell door noted that ████████ was complaining of a toothache at level 9/10 and that there was an abscess, though the nurse was "[u]nab[l]e to pa[l]pate."  SD 828370 (RN Progress Note).  The nurse noted that ████████ would be placed on the "DDs must show.  Pr[i]or[i]ty" list."  <em>Id.</em>  ████████ submitted another sick call request dated ████████ 2023, received by the Jail on ████████ 2023, stating:  "<u>Still</u> toothache daily!  Abs[c]ess on top left bicusbid tooth.  Pain … asking for over a month.  Need to see dentist."  SD 828954 (emphasis in original).  On ████████ 2023, a physician reviewed ████████ chart and noted that he should be seen at "next ava[il]ab[l]e denta[l] s[i]ck ca[ll] [i]f poss[i]b[l]e."  SD 828370 (MD Progress Note).  ████████ submitted another undated sick call request, received by the Jail on ████████ 2023, stating:  "These request[s] are useless.  Still toothaches, major pain, broken filling <u>done here</u>.  It keeps getting worse yet medical or dental do nothing!  I need … to see a doctor or dentist not no fake RN."  SD 828955.  He submitted another sick call request dated ████████ 2023, received by the Jail on ████████ 2023, stating:  "Sam complaint for 3 mo[nths].  2 broken fillings right & left side now abs[c]ess over one of the teeth daily pain … tough to eat!  Toothaches <u>very painful</u>.  Still have not seen Dr. or dentist!  Pain <u>is now</u>!"  SD

---

[46] The ████████ 2023 sick call request also indicates that ████████ had submit ████ uests on this topic: "Multi request, no help ████ nd "This should <u>not</u> take a month to see someone." SD 828953.  Although the me ████████ rd ██ es no ████ ontain any sick call requ ████ y topic) between ████████ ████ and ████████ 2023, it is possible that ████████ submitted such r ████ ut ████ y we ████ ed or otherwise documen ████ riff's Department staff.

828957 (emphasis in original).  He submitted another sick call request dated ███████ 2023, received by the Jail on ███████ 2023, stating:  "I need to see a _real_ dentist or doctor to prescribe antibiotics for painful abs[c]ess on tooth that I've complained about now for several months … What's the problem?  Why no help?"  SD 828958 (emphasis in original).  He submitted another sick call request dated ███████ 2023, received by the Jail on ███████ 2023, stating: "Why must a person beg for help with tooth pain … now toothaches I've been putting _request_ for over two months asks for help.  I've now a[n] abs[c]ess up in top gums causing intense pain."  SD 828961.  He submitted another request dated ███████ 2023, received by the Jail on ███████ 2023, stating:  "3 months to see dentist (still waiting) – 2 month now with abs[c]ess.  All I'm asking for is antibiotics.  Never seen doctor or dentist still in daily pain."  SD 828959 – 828960.  He submitted another sick call request dated ███████ 2023, received by the Jail on ███████ 2023, stating:  "Two broken temporary fillings done here (GBDF) have fallen out … causing _pain_ when chewing!  … I've needed help now for over 3 mo[nths].  _Now_ I have a[n] abs[c]ess top of one of the broken teeth …."  SD 828956 (emphasis added).  A nurse completed a Dental Complaint form on ███████ 2023, noting that ███████ was experiencing a toothache rated a 10/10 on the pain scale, with signs of infection and an abscess "approx[i]mate[l]y 1cm [i]n d[i]ameter," prescribing acetaminophen, and referring him to a dentist.  SD 828827 – 828829.  A nurse completed a Dental Complaint form on ███████ 2024, noting that ███████ was experiencing a toothache rated a 10/10 on the pain scale, with signs of infection and prescribing acetaminophen.  SD 828830 – 828832.  ███████ was seen by Dr. Polanco on ███████ 2024 (**after 51 days**), who placed a composite filling in tooth #5[47] (replacing the temporary fillings placed on ███████ 2022 and ███████ 2023) and marked tooth #11 for extraction.  SD

---

[47] The record does not indicate whether this was a temporary or permanent filling.

828792 – 828797.  He is noted as having declined the extraction for tooth #11.  *Id.*

62.    In summary, ███████████ access to urgent and routine dental care was untimely.  First, he was incarcerated for over two years as of the day the chart was pulled and did not have an initial examination that included intraoral x-rays and documented periodontal probing.  Moreover, there was no treatment plan.  Second, placing temporary fillings rather than permanent fillings on tooth #11 on ██████████ 2023 and ███████ 2023 more likely than not resulted in tooth #11 becoming abscessed and requiring extraction.

63.    ████████████ submitted a sick call request dated ███████████ 2023, received by the Jail on ██████████ 2023 stating:  "I have fractured part[ial] bits of teeth on both left and right bottom jaw that needs pulling."  SD 828169.  A ███████████ 2023 note in the sick call summary portion of ███████████ medical record notes that ████████ complained of "Denta[l] pa[i]n."  SD 828075.  As of ██████████ 2024 (**after 75 days**)—the day ███████████ medical records were pulled for production to Plaintiffs in this case—███████████ had not been seen by a dentist.

64.    In summary, this is untimely care.

65.    ███████████ submitted a sick call request dated ██████████ 2021, received by the Jail on ██████████ 2021, reporting a toothache.  SD 830050.  He was seen by Dr. Polanco on ██████████ 2021 (**after 54 days**).  SD 829569 – 829573.  While the ██████████ 2021 appointment was categorized as an "initial" exam in the records, intraoral x-rays were not taken, a charting was not made, periodontal probing was not documented, and a diagnosis was not recorded.  *Id.*  In fact, neither the tooth number, diagnosis, or treatment were documented.  *Id.*

66.    ███████████ submitted a sick call request dated ████████ 2022, received

---

[48] ████████ was incarcerated from ███████████.  SD 1575334.

[49] ████████ has been incarcerated since ████████ and had not been released as of Ap      SD 1575334.

1   by the Jail on ████ 2022, requesting a minor denture repair on his partial

2   denture.[50]  SD 830058.   Dr. Polanco re-cemented the denture tooth during a

3   scheduled sick call visit on ████ 2022 (**after 10 days**).  SD 829582 – 829586.

4        67.    On ████ 2022, ████ reported "denta[l] pa[i]n and [i]nab[ili]ty

5   to eat for 2 days" to a nurse during a clinical appointment.  SD 829210 (RN

6   Progress Note).  He was seen by Dr. Patel on ████ 2022 (**after 20 days**).  SD

7   829588 – 829592.  She indicated that ████ teeth #3 and #5 were decayed and

8   abscessed, with pulpitis noted on tooth #3.  SD 829589.  She noted that tooth #3

9   needed to be extracted, and that tooth #5 could be extracted or possibly subject to a

10  root canal and crown.  *Id.*  She prescribed antibiotics and analgesics and noted that

11  #3 would be extracted at the next visit and that ████ should return to have #3

12  extracted "after [antibiotics are] done," *i.e.*, within the therapeutic window of the

13  antibiotic (between 7 to 10 days).  SD 829592.  However, it appears that no follow-

14  up visit was scheduled.  *See id.*  Tooth #5 also was not extracted.  *See id.*

15       68.    ████ again submitted a sick call request regarding treatment for a

16  broken denture tooth on ████ 2022, received by the Jail on ████

17  2022.  SD 830074.  He was seen by Dr. Polanco on ████ 2022 (**after 23

18  days**), who noted:  "adjusted/smooth [l]ower anter[i]or root t[i]p."  SD 829608 –

19  829613.[51]  Despite the preexisting documentation in ████ chart indicating the

20  need for treatment to teeth #3 and #5, no treatment to those teeth was provided.  *See*

21  *id.*

22       69.    ████ again submitted a sick call requested dated ████

23  2023, received by the Jail on ████ 2023, stating:  "3rd req[uest].  Need partial

24  [denture] fixed.  Tooth came out.  Previous 2 times I was told they needed to order

25  the materials."  SD 830082.  He was seen by Dr. Patel on ████ 2023, who

----

[50] This is not an urgent care issue.

[51] This is not an urgent care issue.

1    noted:  "there [i]s no denture repa[i]r mater[ia]a[l] at th[i]s t[i]me.  Pat[i]ent was to[l]

2    to put [i]n another s[i]ck ca[ll] request.  On[l]y schedu[l]e pat[i]ent when denture

3    repa[i]r mater[i]a[l] has been received."  SD 829618.  Despite the preexisting

4    documentation in ███████ chart indicating the need for treatment to teeth #3 and

5    #5, no treatment to those teeth was provided.  *See id.*

6        70.  ██████ was seen by Dr. Patel on ██████ 2023 for denture

7    repair.  SD 829619 – 829624.  She repaired the denture but did not provide any

8    treatment to teeth #3 or #5, despite her ██████ 2022 treatment plan.  *See id.*

9        71.  According to the sick call summary portion of ██████ medical

10    record, he complained that his "top r[i]ght tooth broke off" on ██████ 2023,

11    which the Jail received that day.  SD 829150.  The sick call summary also includes a

12    note dated ██████ 2023, stating:  "top r[i]ght tooth broken, request[i]ng denta[l]

13    appnt."  SD 829151.  He was seen by Dr. Polanco on ██████ 2023 (**after 55**

14    **days**), who noted that tooth #3 was "[u]nrestorab[l]e"—which Dr. Patel had

15    diagnosed as decayed and slated for extraction on ██████ 2022.  SD 829625 –

16    829630.  ██████ is noted as having declined the extraction, and Dr. Polanco

17    smoothed the tooth, so that it would no longer hurt ██████ tongue.  *Id.*

18        72.  According to the sick call summary portion of ██████ medical

19    record, he again complained of "[b]roken teeth" and asked to see the dentist for a

20    root canal on November 14, 2023.  SD 829151.  ██████ submitted a sick call

21    request dated ██████ 2024, received by the Jail on ██████ 2024, stating:

22    "2nd request bad toothache."  SD 830033.  As of ██████ 2024 (**after 76**

23    **days**)—the day ██████ medical records were pulled for production to Plaintiffs

24    in this case—██████ had not been seen by a dentist.

25        73.  In summary, ██████ dental care was untimely.  Although a Jail

26    dentist diagnosed tooth #3 as abscessed and requiring extraction following an

27    antibiotic on ██████ 2022, no follow-up appointment was scheduled.  As a result,

28    ██████ was not offered an extraction for tooth #3 until ██████ 2023—**one**

1  **year and 19 days after the original diagnosis**.  Nor was any follow-up plan

2  documented for tooth #5, which was also diagnosed as requiring extraction or root

3  canal on ████ 2022.  In addition, while Dr. Polanco indicated that he gave

4  ████ an initial examination on ████ 2021 there was no charting,

5  intraoral x-rays, documented periodontal probing or treatment plan, which

6  constitutes grossly inadequate diagnosis and treatment.  As a result, ████ has

7  been denied these foundational elements of routine care (except for denture repair)

8  from at least ████ 2021, when he was booked, until ████ 2024.

9      74.  ████ reported to a nurse on ████ 2023 that he was

10  experiencing dental pain rated 8 on the pain scale and that he had a "loose tooth."

11  *See* SD 830748 (RN Progress Note); SD 831103 (MD Psychiatric Progress Note).

12  A nurse filled out a Dental Complaint form on ████ 2023, noting that

13  ████ was experiencing a toothache rated 8/10 on the pain scale, prescribing

14  acetaminophen, and noting that "This visit does not require a sick call."  SD 831717

15  – 831719.  A ████ 2023 note in the sick call summary portion of ████

16  medical records refers ████ to dental sick call and states:  "Pls. eval loose

17  tooth."  SD 830545.  He was scheduled for a dental appointment on ████ 2023

18  (**after 8 days**) but could not attend because he was in court.  SD 831678.  He was

19  seen by Dr. Patel ████ 2023 (**20 days after his complaint of pain**), who

20  diagnosed teeth #11, #12, and #13 as being non-restorable and recommended

21  extractions, which ████ declined.  SD 831693 – 831698.

22      75.  To summarize, ████ dental care would have been untimely

23  even if he had been seen by a dentist on ████ 2023, when he was in court.  The

24  further 12-day delay to see a dentist—after he missed an appointment due to being

25  in Court—is also unacceptable, considering ████ complaints of pain.

26

27  ───────────────

   52 ████ incarcerated on ████████

28  ████ SD 1575334.

76.    ████████████ submitted a sick call request on ████ 2022, received by the Jail on ████ 2022, reporting "severe pain" from an "exposed nerve (broken tooth)." SD 832885.  He again submitted a sick call request reporting a "broken tooth" on ████ 2022, received by the Jail on ████ 2022.  SD 832886.   He was examined by Dr. Polanco on ████ 2022 (**after 25 days**), who marked tooth #31 for extraction, prescribed an analgesic, and indicated that a follow-up appointment should be scheduled.  SD 832824 – 832828.  Although Dr. Polanco noted that this appointment was for an "initial" exam, there is no documentation of periodontal probing, nor were intraoral x-rays taken.  *Id.* ████████████ was scheduled for a ████ 2022 follow-up appointment—which would have been within the therapeutic window of the antibiotic prescribed—but ████████████ is documented as having refused.  SD 832829 – 832833 (dental visit notes); SD 832890 (refusal form).  Neither refusal form is signed by ████████████.  *Id.*

77.    An ████ 2023 note on the sick call summary of ████████████ medical records states that he had a "[b]roken upper rt mo[la]r—decayed."  SD 832914.  He was scheduled to see the dentist on ████ 2023 (**after 17 days**) but was unable to attend because he was "at work."  SD 833031 – 833035 (dental visit notes).  He is documented as having refused a dental appointment on ████ 2023 (**20 days after the dental issue was noted**).  SD 833036 – 833045; SD 833076 (refusal form).  Neither refusal form is signed by ████████████.  *Id.*

78.    When ████████████ was booked on ████████████ 2023, a nurse noted in his receiving screening form that he was complaining of a dental abscess,

---

53 ████████████████████████████████████████████████████████████████████████

1    but had been "med[i]ca[ll]y c[l]eared @ Sharp Coronado [hospital]." SD 833081.[54]

2    The discharge instructions from Sharp Coronado state that ███████████ should

3    be seen for a follow-up appointment "within 3-5 days." SD 833227 – 833228.

4    Despite the noted dental abscess and instructions that he should receive follow-up

5    care, the receiving screening nurse did not refer ███████████ to dental sick call

6    on the receiving screening form. SD 833083 ("Denta[l] [i]ssues requ[i]r[i]ng

7    Denta[l] S[i]ck Ca[ll] appo[i]ntment" not checked). On ███████████ 2023, a

8    nurse filled out a Dental Complaint form, noting that ███████████ had a

9    toothache with pain at a 10 out of 10, prescribing ibuprofen, and referring him to the

10   dentist. SD 833215 – 833217. He submitted a sick call request received by the Jail

11   on ███████████ 2023 stating: "I need to see the dentist asap. I have excru[c]iating

12   pain. I was scheduled for 4 emergency e[x]tractions on the 15th of this month." SD

13   833235. He submitted a sick call request dated ███████████ 2023, received by the Jail

14   on ███████████ 2023, again requesting extractions and stating that "at times [he] can

15   barely eat." SD 833243. He was seen by Dr. Patel on ███████████ 2023 (**after 25**

16   **days**), who noted an abscess, marked three non-restorable teeth for extraction, and

17   prescribed antibiotics and analgesics. SD 833209 – 833214. Dr. Patel documented

18   that ███████████ claimed he was in "too much pa[i]n for any treatment today,"

19   but that she "encouraged" him "to p[l]ace s[i]ck call for [extractions] [i]f he

20   w[i]shes to proceed w[i]th treatment." SD 833214. She did not schedule a follow-

21   up appointment. *See id.*

22       79.    ███████████ submitted a sick call request dated ███████████ 2023,

23   received by the Jail on ███████████ 2023, requesting something "to numb [his] teeth

24   … getting e[x]tracted next month." SD 833244. The Jail responded: "The dentist

25   will do that prior to [] your tooth extraction." *Id.* He again submitted a sick call

26

27   ───────────────────
     [54] The Receiving Screening form is marked as having been signed by a "Corporate
28   Clinical Auditor" 8 minutes after the nurse completed it. SD 833080.

1  request dated ██████ 2023, received by the Jail on ██████ 2023, stating:

2  "I need something for my teeth pain.  At times the pain is unbearable.  Also I need

3  some oragell to numb the tooth because the nerve is fully e[x]posed."  SD 833238.

4  He submitted a sick call request dated ██████ 2023, received by the Jail on

5  ██████ 2023, reporting that he "[could]n't eat anything on [his] right side"

6  and that he was "in constant pain (excruciating pain) and need [the teeth] pulled

7  immediately."  SD 833239.  On ██████ 2023, a nurse filled out a Dental

8  Complaint form, noting that ██████ was experiencing pain at a 6 out of 10

9  and prescribing ibuprofen and acetaminophen.  SD 833215 – 833217.  A ██████

10  ██ 2023 note on the sick call summary page of ██████ medical records

11  indicates that he was on the waiting list to see the dentist, but the appointment was

12  canceled upon his ██████ 2023 release (**55 days after he complained of**

13  **dental pain**).

14      80.  ██████ was again booked on ██████ 2023, and he

15  reported to a nurse during receiving screening that he was scheduled to have a tooth

16  extracted on ██████ 2024.  SD 833253 (receiving screening form).  However, the

17  nurse did not refer ██████ to dental sick call at that time.  SD 833252

18  ("Denta[l] [i]ssues requ[i]r[i]ng Denta[l] S[i]ck Ca[ll] appo[i]ntment" not checked).

19  He submitted a sick call request dated ██████ 2024, received by the Jail on

20  ██████ 2024, stating:  "I got out of here on ██████ with dental issues.  The

21  dentist is f[a]miliar.  I need 4 emergency e[x]tractions.  I'm in constant pain."  SD

22  833483.  He again submitted sick call requests on ██████ 2024, reporting that he

23  can "hardly eat" because of the pain, SD 833484; on ██████ 2024, reporting

24  tooth "pain all the time," SD 833488; on ██████ 2024, reporting that "[e]very

25  day [his] teeth hurt to the point where [he] feel[s] like going man down," SD

26  833461; and on ██████ 2024, requesting extractions and reporting "the worst

27  pain I've ever had," SD 833489.  He again submitted a sick call slip dated

28  ██████ 2024, received by the Jail on ██████ 2024, stating:  "last night I

tried to go man down due to the unbearable pain I was going through." SD 833490.
The Jail responded:  "IP has swollen gums to left lower … pain 8/10, blood clot in
the socket."  *Id.*  On ██████████ 2024, a nurse filled out a Dental Complaint form,
noting that ████████████ was experiencing pain at a 6 out of 10 and prescribing
ibuprofen and acetaminophen, but not referring him to the dentist.  SD 833352 –
833354.  He also submitted sick call requests on ██████████ 2024, requesting an
extraction because he was "in constant pain," SD 833640; on ██████████ 2024,
requesting "to get [his] teeth pulled as soon as [the dentist] comes in," SD 833462;
on ██████████ 2024, requesting extractions and reporting pain, SD 833467 –
833468; on ██████████ 2024, reporting that he is still experiencing pain, SD
833471; on ██████████ 2024, reporting tooth pain, SD 833472; and on ██████████
2024, stating:  "I need to get my teeth pulled imm[ediate]ly … I still wake up with
agonizing pain.  LONG OVERDUE FOR E[X]TRACTIONS.  HELP ME!!!"  SD
833474.  He again submitted sick call requests on ██████████ 2024, requesting to
see the dentist and stating that it was "urgent!!!!" SD 833493, reporting an
"unbearable amount of pain" in his teeth, SD 833494, and stating that "[u]ntil I get
my dental issue resolved I can't chew any food," SD 833499.  He was seen by
Dr. Patel on ██████████ 2024 (**after 25 days**) who ordered injectable ceftriaxone
(an antibiotic).  SD 833336 – 833342.

81.     He submitted sick call requests on ██████████ 2024 requesting
extractions, SD 833475 – 833476; on ██████████ 2024, reporting "excruciating
pain," SD 833496; and on ██████████ 2024, reporting "excruciating pain," SD
833497.  The Jail responded that the antibiotic course was scheduled to finish
██████████ 2024, and that he was "scheduled for Priority Dental SC."  *Id.*  He
submitted a sick call request dated ██████████ 2024, received by the Jail on ██████████
██████████, reporting "severe," "e[x]cruciating" pain and stating:  "I'm told time and
time again the dentist comes every two weeks."  SD 833482.  He submitted a sick
call request dated ██████████ 2024, received by the Jail on ██████████ 2024,

requesting an immediate extraction and stating: "My teeth are no longer infected … I'm still experiencing lots of pain … I can't sleep through[] the night because of the pain …. Help me." SD 833480.  He submitted a sick call request dated ████████ 2024, received by the Jail on ████████ 2024, stating: "I'm still having trouble eating.  I haven't gotten any response stating whether the dentist will be coming … I'm long overdue to get my teeth worked on … I'm still experiencing lots of pain." SD 833481.  He also submitted sick call requests on ████████ 2024, requesting extractions, SD 833500 – 833501; and on ████████ 2024, reporting that he "wake[s] up in e[x]cruciating pain every single night" because of his teeth, SD 833502.  He again submitted a sick call request asking to see the dentist on ████████ 2024, received by the Jail on ████████ 2024, to which the Jail responded:  "You are still scheduled to see the dentist … medical does not have control over dental schedule." SD 833504.  As of ████████ 2024 (**after 8 days**)—the day ████████ medical records were pulled for production to Plaintiffs in this case—████████ had not been seen by a dentist.

82.    To summarize, the ████████ dental care was repeatedly untimely—even when Jail dentists noted that his teeth needed to be extracted and after he had been discharged from the emergency room for dental pain.

83.    ████████ submitted an undated sick call request, received by the Jail on ████████ 2022, requesting treatment for abscessed teeth.  SD 834066.  On ████████ 2022, a nurse filled out a Dental Complaint form, noting that ████████ was experiencing a toothache with "intermittent" pain at a 7-9 out of 10 and prescribing acetaminophen, but not referring him to the dentist.  SD 833966 – 833968.[56]  He submitted a sick call request dated ████████ 2022, received by

---

[55] ████████████████████

[56] ████████ l Complaint form is noted as "signed" by Joseph Molina MD on ████████ 2022.  It is not clear what that signature indicates.

the Jail on ████████ 2022, stating that he had "5 or more cavities" and that it "hurts to he eat or drink anything." SD 834065. On ████████ 2022, a nurse noted decay on ████████ bilateral upper and lower molars and indicating he would refer ████████ to sick call. SD 833892 (RN Progress Note). On ████████ 2023, a nurse filled out a Dental Complaint form, noting that ████████ was experiencing a toothache with pain at a 7 out of 10, and prescribing ibuprofen, and referring him to the dentist. SD 833978 – 833980.[57] According to the sick call summary page of ████████ medical records, he was scheduled for a dental sick call appointment on ████████ 2023 (**after 90 days**), but he was released on ████████ 2023. SD 833875.

84.     To summarize, ████████ dental care was untimely. Despite his complaint of having painful teeth on ████████ 2022, a dental sick call appointment was not scheduled.

85.     ████████ was admitted to Alvarado Hospital for left facial cellulitis on ████████ 2023. SD 837023.[59] Facial cellulitis is serious and without prompt treatment can progress to a life-threatening fascial plane infection. Failure to diagnose and intervene promptly can result in a fatal outcome.

86.     ████████ submitted a sick call request dated ████████ 2023, received by the Jail on ████████ 2023, requesting to see the dentist "ASAP" and reporting it was "very painful level 10 can't sleep." SD 837124. A ████████ 2023 sick call triage note reports that ████████ was experiencing "wisdom tooth

_____

[57] ████████ l Complaint form is noted as "signed" by "Peter Freedland Medical" on ████████ 2023. It is not clear what that signature indicates.

[58] ████████ was booked on ████████ and had not been released as of the April 2024. SD ████████ .

[59] "████████ […] who was brought to the emergency room com ████████ cellulitis. This was started 40 [days] prior to admission. Patient seen the prime physician at the jail which time or antibiotics. However, despite taking 2 days of antibiotics the symptom has not improved. The swelling and redness have gotten bigger […]." *Id.*

1  pain=10 and can't sleep." SD 835819. He again submitted a sick call request dated

2  ██████████ 2023, received by the Jail on ██████████ 2023, reporting: "I still

3  have not been seen. My toothache and pain is even worse than before … pain level

4  solid '10.'" SD 837120. ██████████ was seen at dental sick call by a dental assistant

5  on ██████████ 2023, who recorded that ██████████ had a "toothache, pain=10)," and

6  took a panoramic x-ray , which showed caries and a radiolucency. SD 836007 –

7  836012 (sick call form); SD 837121(x-ray). The dental assistant noted that tooth #3

8  (maxillary right first molar) and #30 (mandibular right first molar) were problematic

9  and needed to be examined by a dentist. SD 836008. The dental assistant also

10  noted that ██████████ had requested antibiotics and pain medications. *Id.* There is

11  no indication that a dentist was present during the dental assistant's evaluation of

12  ██████████. Dr. Patel saw him on ██████████ 2023 (**48 days after his request**) and

13  recommended that tooth #3 be extracted. SD 836013 – 836018. The records do not

14  indicate that Dr. Patel examined or diagnosed the issue with tooth #30 noted by the

15  dental assistant the week prior. *Id.* ██████████ declined the extraction and was

16  prescribed an antibiotic and an analgesic. *Id.* A follow-up appointment was not

17  scheduled. *Id.*

18       87.    According to the sick call summary page of ██████████ medical

19  records, he submitted a heath care request on ██████████ 2023 stating: "I have a

20  bad toot[h]ache rea[ll]y pa[i]nfu[l] need to see dent[i]st." SD 835820.[60] The sick

21  call summary page also includes a ██████████ 2024 note stating: "R[l]ower

22  toothache and tooth decay." *Id.* As of ██████████ 2024 (**after 44 days**)—the day

23  ██████████ medical records were pulled for production to Plaintiffs in this case—

24  ██████████ had not been seen by a dentist.

25       88.    In summary, ██████████ dental care for painful conditions was

26

27  ───────────────
[60] There ██████████pear to be a copy of the ██████████ 2023 health care request

28  form in ██████████ medical record.

untimely.  In addition, the work completed by a dental assistant—including taking

x-rays and entering an interpretation into ██████ chart—is troubling, given that

those tasks are outside the scope of a dental assistant's practice (if no dentist is

present) and should have been done instead by a dentist.  It is also concerning that,

having documented that ██████ was in severe pain and indicated that antibiotics

were a treatment option, the dental assistant failed to ensure that ██████ was seen

by a dentist promptly.

89.    ██████████ was examined by a nurse for a Dental Complaint form

on ██████ 2024.  SD 837502 – 837504.  The nurse noted that ██████ was

experiencing a toothache rated a 10 on the pain scale with signs of infection and a

swollen "face/jaw," prescribed acetaminophen, and referred her to the dentist.  *Id.*

██████ was scheduled to see Dr. Polanco on ██████ 2024 (**after 9 days**), but

the appointment was canceled because she had "active lice."  SD 837480 – 837484

(dental visit note).  She was scheduled to see Dr. Patel on ██████ 2024, but the

appointment was canceled because she was in court.  SD 837845 – 837849 (dental

visit note).  On ██████ 2024, she was seen by Dr. Patel in her housing unit due

to the lice infestation.  SD 837496 – 837501 (dental visit note).  Because of the

location of the visit and the fact that the dental x-ray machine was broken, Dr. Patel

decided to postpone diagnosis and treatment planning until x-rays could be

completed.  *Id.*  Sometime during this period, a provider documented that ██████

was experiencing 10/10 pain and facial swelling.  SD 837425 (sick call summary).

As of ██████ 2024—the day ██████ medical records were pulled for

production to Plaintiffs in this case—██████ had not been seen by a dentist.

90.    In summary, ██████ dental care was untimely.[62]

---

[61] ██████ was incarcerated from 1/██████████████████████████
██████ D 1575334.

[62] Plaintiffs' other experts will no doubt opine on the troubling fact that ██████
lice infestation was not resolved 18 days into her incarcerations—despit

91.    ███████████ submitted sick call requests to see a dentist on ███████ 2023, received by the Jail on ████████ 2023, SD 840248; and on ███████ 2023, received by the Jail on ████████ 2023, SD 840249. On ██████████ 2023—at which point ████████ had been incarcerated at the Jail for over four years—a nurse spoke with ████████ cell side and recorded that ████████ "den[i]ed denta[l] [i]ssues." SD 840003 (RN Progress Notes).

████████ again submitted a sick request for a dental appointment on ████████ 2023, received by the Jail on ████████ 2023. SD 840246. On ████████ 2023, a nurse completed a Dental Complaint form, on which she recorded that ████████ was requesting a dental cleaning. SD 839517 – 839519. She also noted: "Den[i]ed any dent[l] [i]ssues at th[i]s t[i]me. IP had DSC appt – moved to next ava[il]ab[l]e." *Id.* A ████████ 2023 note in the sick call summary of ████████ medical records states: "wou[l]d [li]ke to see the dentist. Req for denta[l] c[l]ean[i]ng." SD 829060. As of ████████ 2024—the day ████████ medical records were pulled for production to Plaintiffs in this case—████████ had not been seen by a dentist.

92.    In summary, as of ████████ 2024—**nearly four and a half years into his incarceration**—there is no record that ████████ ever saw a dentist. This is inadequate routine dental care.

93.    ███████████ submitted a sick call request dated ██████ 2023, received by the Jail on ██████ 2023, stating: "I got a real bad infection on my wisdom tooth. I get fever … in severe pain. Pls help ASAP. EMERGENCY." SD

---

il was aware of the infestation at booking—and that that delay caused ████████ to be further deprived of urgent dental care.

[63] According to a ██████ 2024 23:04:23 ████████ he San Diego County Sher___ ___partment's "W_____n Jail" web _____ has been at the Jail since ██ ____ 2019 and was still in Jail as of ████████

[64] ████████ incarcerated from 10/_____ SD 1575334.

841231.  A nurse completed a Dental Complaint form for ▮▮▮▮ on ▮▮▮▮ 2023, noting that he was experiencing pain in his left lower molar rated 8/10 on the pain scale with no signs of infection.  SD 840964 – 840966.[65]  As of his ▮▮▮ 2023 release (**25 days later**), ▮▮▮▮ had not been seen by a dentist.

94.    ▮▮▮▮ was booked again and submitted a sick call slip dated ▮▮▮▮ 2023, received by the Jail on ▮▮▮▮ 2023 (a Thursday), reporting a possible gum infection and that "all [his] teeth hurt."  SD 842090.  He was referred to the dentist.  *Id*.  A nurse completed a Dental Complaint form for ▮▮▮▮ on ▮▮▮▮ 2023, noting that ▮▮▮▮ had a toothache from a tooth that had "ch[i]pped off," rated 10/10 on the pain scale, with swollen gums and blood drainage.  SD 841601 – 841603.  ▮▮▮▮ was seen by Dr. Polanco on ▮▮▮▮ 2023 (**after 4 days**[66]), who noted decay on tooth #31 and swelling in the "tooth #3/4 area."  SD 841557 – 841562.  There was no dental assistant and the suction was not working, so Dr. Polanco prescribed an antibiotic and an analgesic and scheduled a follow-up exam.  *Id*.  ▮▮▮▮ returned to the dental clinic on ▮▮▮▮ 2023, at which time Dr. Patel took a panoramic x-ray and noted that he already was taking an antibiotic and analgesic.  SD 841541 – 841551.

95.    A ▮▮▮▮ 2024 note in the sick call summary of ▮▮▮▮ medical records states:  "my teeth hurts when I chew food."  SD 841326.  ▮▮▮▮ submitted a sick call slip dated ▮▮▮▮ 2024, received by the Jail on ▮▮▮▮ 2024, requesting to see the dentist and reporting that "it's very painful[] to chew."  SD 842047.  As of ▮▮▮▮ 2024 (**after 28 days**)—the day ▮▮▮▮ medical records were pulled for production to Plaintiffs in this case— ▮▮▮▮ had not been seen by a dentist.

---

[65] The Dental Complaint form is noted as "signed" by Dr. Freedland on ▮▮▮▮ 2023.

[66] Considering the intervening weekend, I will consider this appointment to be timely.

96.     To summarize, only one of his three urgent dental appointments was timely.

97.     ████████ was requesting treatment for a broken tooth as of ████████ 2024, according to the sick call summary of ████████ medical records.  SD 842293.  As of ████████ 2024 (**after 18 days**)—the day ████████ medical records were pulled for production to Plaintiffs in this case—████████ had not been seen by a dentist.

98.     In summary, this is untimely urgent care.

99.     ████████ submitted a sick call slip dated ████████ 2023, received by the Jail on ████████ 2023, reporting:  "I have teeth issue meaning I need the dentist to check out my cavities filling please."  SD 843108.  Dr. Polanco examined him on ████████ 2023, and noted that he found no decay; no treatment was provided.  SD 842992 – 842926.  Although the record reported that this was an "initial examination," there was no charting, intraoral x-rays, or documented periodontal probing.  *Id.*

100.     ████████ again submitted a sick call request dated ████████ 2023, received by the Jail on ████████ 2023, requesting a dental cleaning.  SD 843106. The Jail responded on ████████ 2023:  "No. Dental only does extractions."  SD 843106.  ████████ was seen by Dr. Patel on ████████ 2023, who documented that she completed a "prophy on[l]y" because the "sca[l]er was [i]n ster[ili]zat[i]on." SD 842916 – 842921.  She also noted that she took one bitewing x-ray[69] and conducted "Spot Probing: 1-3mm."  *Id.*  She also noted that ████████ should be scheduled for a follow-up appointment for scaling.  *Id.*

---

[67] ████████ was incarcerated from ████████ until at least April 2024.  SD 15

[68] ████████ was incarcerated from ████████ SD 1575334.

[69] The x-ray was not in the chart I was provided.

101.    ████████ again submitted sick call requests for a dental cleaning on ████████ 2023, received by the Jail on ████████ 2023, SD 843104; and on ████████ 2023, received by the Jail on ████████ 2023, SD 843103.  As of ████████ 2024—the day ████████ medical records were pulled for production to Plaintiffs in this case—he had not been seen by a dentist to complete the scaling Dr. Patel was unable to complete on ████████ 2023.

102.    To summarize, ████████ did not receive adequate routine care.  Neither the ████ 2023 "initial examination" conducted by Dr. Polanco nor the ████████ 2023 examination conducted by Dr. Patel met the standard of care, as neither involved documented periodontal screening.   No proper initial examination or cleaning had been conducted by ████████ 2024—**14 months after ████████  was booked**.  Moreover, it is a matter of concern that the Jail advised ████████ that extractions were the only dental care provided.

103.    ████████ submitted a sick call request dated ████████ 2022, reporting "an infection in [his] mouth that is very painful."  SD 843378.  A nurse filled out a Dental Complaint form on ████████ 2022, noting that ████████ was experiencing a toothache and prescribing acetaminophen.  SD 843291 – 843293.[71]  He was seen by Dr. Polanco on ████████ 2022 (**after 10 days**), who noted decay and swelling around tooth #10, marked that tooth for extraction, and prescribed antibiotics and analgesics.  SD 843292 – 843279.  ████████ is documented as having denied the extraction, instead option to wait until he got "upstate," *i.e.*, to prison, for treatment.  *Id.*  In addition, although Dr. Polanco reported that he completed an "initial" examination on ████████ 2022, there is no indication that he completed periodontal screening.  *Id.*

---

[70] ████████ was incarcerated from ████ until at least April 2024.  SD 1575334.
[71] The Dental Complaint form is noted as "signed" by Dr. Freedland on ████████ 2022.  It is not clear what that signature indicates.

104.  ████████ submitted a sick call request dated ████████ 2022, received by the Jail ████████ 2022, reporting an "[e]xtreme toothache."  SD 843376.  A nurse filled out a Dental Complaint form on ████████ 2022, noting that ████████ was experiencing a toothache rated 10/10 on the pain scale, with swollen gums and signs of infection, prescribing acetaminophen and ibuprofen, and referring him to a dentist.  SD 843288 – 843290.[72]  He was scheduled to see Dr. Polanco on ████████ 2023 (**after 20 days**), but he is documented as having refused.  SD 843270 – 843274 (dental visit notes); SD 843375 (refusal form).  Neither refusal form is signed by ████████.

105.  ████████ submitted a sick call request dated ████████ 2024, received by the Jail on ████████ 2024, stating: "tooth hurts need antibiotics for infection."  SD 843363.  A nurse filled out a Dental Complaint form on ████████ 2024, noting that ████████ was experiencing a toothache and prescribing acetaminophen and ibuprofen.  SD 843282 – 843284.  He was seen by Dr. Polanco on ████████ 2024 (**after 3 days**).  SD 843262 – 843267.  He identified #27 being periodontally involved and indicated it for extraction, prescribed antibiotics and analgesics, and extracted the tooth.  *Id.*

106.  According to a ████████ 2024 note on the sick call summary page of ████████ medical records, he was again experiencing dental pain and required motion.  SD 843241.  A ████████ 2024 note (**after 12 days**) indicates that ████████ refused a tooth extraction.  There does not appear to be any refusal form signed by ████████.

107.  In summary, two of ████████ dental appointments were untimely; only one was timely.  In addition, there is no indication that ████████ received routine care, despite being incarcerated for well over a year.  The so-called initial

---

[72] The Dental Complaint form is noted as "signed" by Dr. Freedland on ████████ 2023.

1  examination Dr. Polanco completed on ███████ 2022, did not meet the

2  standard of care.

3  **B.    Outside referrals**

4      108.    ███████ submitted a sick call request on ███████ 2023,

5  received by the Jail on ███████ 2023, asking to see the dentist "ASAP" for

6  "excru[c]iating pain."  SD 846018.  He again submitted sick call requests to see the

7  dentist for an extraction on ███████ 2023, received by the Jail on ███████

8  2023, SD 846023,  and on ███████ 2023, received by the Jail on ███████

9  2023, SD 846024.  A nurse filled out a Dental Complaint form on ███████,2023,

10  noting that ███████ had a toothache and swollen gums, with signs of infection, and

11  prescribing acetaminophen and referring him to a dentist.  SD 845381 – 845383.[74]

12  She was seen by Dr. Patel on ███████ 2023 (**after 55 days**), who noted that

13  teeth #1, #17, #18, #31, and #32 should be extracted—in particular, two teeth (#17

14  and #32) needed to be extracted by an oral surgeon.  SD 845633 – 845638.  While

15  Dr. Patel prescribed an antibiotic, there is no indication that she requested a referral

16  for an oral surgeon.  *Id.*

17      109.    ███████ again submitted a sick call request on ███████ 2023, received

18  by the Jail on ███████ 2023, reporting:  "I am in ex[c]ruciating pain.  My tooth is

19  cracked open and my nerv[e] is exposed.  Can I plz see dentist."  SD 846038.  He

20  was seen by Dr. Patel on ███████ 2023 (**after 1 day**), who noted that even more of

21  ███████ teeth needed to be extracted.  SD 845699 – 845705.  While previously

22  only teeth #17 and #32 had been marked as requiring extraction by an oral surgeon,

23  now teeth #1 and #18 were marked as requiring an oral surgeon for extraction.  *Id.*

24  In addition, teeth #3 and #15 were marked as requiring root canal/crown or

25

26  ---

[73] ███████ was incarcerated from ███████ 2022 until at least April 2024.  SD 15

27  [74] The Dental Complaint form is noted as "signed" by Dr. Freedland on ███████

28  2023.

1  extraction, and tooth #16 was marked as requiring extraction by an oral surgeon;

2  none of those teeth were marked as requiring extraction at ████████ last

3  appointment. *Id.* Dr. Patel extracted tooth #18 that and initiated an oral surgery

4  referral. *Id.* ████████ was seen by an oral surgeon on ████████ 2023, who submitted

5  a treatment plan for surgical removal of teeth #1, #16, #17, #18, #31, and #32 under

6  IV anesthesia. SD 846043.   The oral surgeon performed the procedure on

7  August 14, 2023 (**69 days after Dr. Patel requested the referral and 170 days**

8  **after she noted on ████████ 2023 that teeth #17 and #32 should be**

9  **extracted by an oral surgeon**). SD 846049.

10 To summarize, from ████████ received untimely urgent care inside the Jail.  In

11 addition, a 69-day wait for the extractions is untimely; moreover, Dr. Patel's failure

12 to make the referral when she first identified the need for one was the cause of the

13 more than 3-month delay.  Finally, the chart reports that no routine care was

14 provided during his incarceration.

15     110. ████████ submitted a sick call request on ████████ 2021,

16 received by the Jail on ████████ 2021, reporting:  "several toothaches hurts a lot."

17 SD 846525.  He was seen by Dr. Polanco on ████████ 2021 (**after 9 days**), who

18 diagnosed tooth #16 as decayed and extracted it.  SD 846437 – 846441.  Although

19 Dr. Polanco indicated on the chart he was performing an initial examination, he did

20 not take intraoral x-rays, record a periodontal assessment or treatment plan.  The

21 examination was below accepted professional standards.

22     111. ████████ again submitted sick call requests for toothaches on

23 ████████ 2021, received by the Jail on ████████ 2021, SD 846527; on

24 ████████ 2021, received by the Jail on ████████ 2021, SD 846529; on

25 ████████ 2021, ████████ 2021, SD 846531; on ████████ 2021,

26

27 75 ████████████████████████████████████████████████████

28

1  received by the Jail on ███████ 2021, SD 846537; on ███████ 2021,

2  received by the Jail on ███████ 2021, SD 846538; on ███████ 2021,

3  received by the Jail on ███████ 2021, SD 846539; on ███████ 2021,

4  received by the Jail on ███████ 2021, SD 846540; on ███████ 2021,

5  received by the Jail on ███████ 2021, SD 846541; on ███████ 2021,

6  received by the Jail on ███████ 2021, SD 846543; on ███████ 2022,

7  received by the Jail on ███████ 2022, SD 846600; on ███████ 2022, received

8  by the Jail on ███████ 2022, SD 846546; on ███████, 2022, received by the

9  Jail on ███████ 2022, SD 846554; and on ███████ 2022, received by the Jail

10 on ███████ 2022, SD 846556.  He was seen by Dr. Polanco on ███████

11 2022 (**after 97 days**), who extracted tooth #1.  SD 846462 – SD 846466.

12     112.  ███████ again submitted a sick call request on ███████ 2022,

13 received by the Jail on ███████ 2022, reporting that he "need[ed] tooth pulled."

14 SD 846559.  He submitted a sick call request on ███████ 2022, received by the

15 Jail on ███████ 2022, reporting:  "Tooth hurts badly."  SD 846599.  He again

16 submitted a sick call request on ███████ 2022, received by the Jail on ███████

17 █, 2022, reporting a "tooth [that] needs to be pulled."  SD 846564.  He was seen by

18 Dr. Patel on ███████ 2022 (**after 36 days**), who marked tooth #2 as decayed and

19 fractured and indicated it for extraction.  SD846469 – 846474.  Dr. Patel noted that

20 ███████ declined the extraction, and she prescribed an antibiotic and analgesic

21 instead.  *Id.*

22     113.  ███████ again submitted a sick call request treatment for a

23 "[t]ooth [that] need[s] to be pulled" on ███████ 2022, received by the Jail on ███████

24 2022.  SD 846576.  He is documented as having refused a dental appointment on

25 ███████ 2022 (**after 23 days**), though the refusal form is not signed by

26 ███████.  SD 846477 – 846481; SD 846477.

27     114.  He again submitted a sick call request on ███████ 2022, received by

28 the Jail on ███████ 2022, stating:  "Tooth needs to be pulled!"  SD 846578.  He again

1   submitted a sick call request for an extraction on ██████ 2022, received by the Jail

2   on ██████ 2022.  SD 846585.  He was seen by Dr. Polanco on ██████ 2022,

3   (**after 48 days**).  SD 846488 – SD 846492.  Although the record indicates that

4   ██████ agreed to the extraction, it does not appear that the extraction

5   happened that day. *Id.*

6        115.  ██████ again submitted a sick call request on ██████ 2022,

7   received by the Jail on ██████ 2022, stating:  "Tooth needs to be pulled." SD

8   846595.  As of his ██████ 2022 release (**9 days later**), there is no indication

9   ██████ had been seen by a dentist.

10        116.  ██████ was booked again in ██████ 2022, and he

11   submitted a sick call request on ██████, 2022, received by the Jail on

12   ██████ 2023, stating:  "A few teeth need to be pulled.  Pain is

13   exc[ruc]iating."  SD 846739.   He again submitted a sick call request on ██████

14   2023, received by the Jail on ██████ 2023, stating:  "My top right tooth broke

15   and I'm in a[n] extreme amount of pain."   SD 846743.  He again submitted sick call

16   requests regarding a painful broken tooth on ██████ 2023, received by the Jail on

17   ██████ 2023, SD 846745; and on ██████ 2023, received by the Jail on

18   ██████ 2023, SD 846749.  He was seen by Dr. Patel on ██████ 2023 (**after

19   22 days**), who diagnosed tooth #15 as decayed and fractured with pulpitis and

20   attempted an extraction of that tooth.  SD 846707 – 846712.  She referred him to an

21   oral surgeon at UCSD to assess and repair a possible sinus perforation incident to

22   the attempt to extract tooth #15, dispatching ██████ to the hospital that day.

23   *Id.*  He was again seen by Dr. Polanco on ██████ 2023 as a follow-up on the

24   oral surgery referral.  SD 846713 – SD 846718.  ██████ again submitted a

25   sick call request for a painful broken tooth on ██████ 2023, received by the Jail

26   on ██████ 2023.  SD 846757.  ██████ was evaluated by an oral surgeon

27   on ██████ 2023 (**23 days after Dr. Patel requested the referral**), who

28   submitted a treatment plan for the removal of teeth #2, #4, #17, #31, and #32 with

IV anesthesia.  SD 846761.

117.  ███████████ submitted a sick call request on █████ 2023, received by the Jail on May 15, 2023, stating:  "I need 5 of my teeth pulled in a lot of pain."  SD 846816.  He again submitted a sick call request for extractions on █████ 2023, received by the Jail on █████ 2023.  SD 846820.  As of his █████ 2023 release (**17 days later**), there is no indication ███████ had been seen by a dentist.  Similarly, there is no indication that ███████ received the recommended extractions to teeth #2, #4, #17, #31, and #32 as of his █████ 2023 release (**137 days after Dr. Patel initially requested an oral surgery referral**).

118.  In summary, access to treatment for painful dental conditions was untimely for all his requests, as was a 23-day wait for an oral surgeon examination and a 137-day wait to receive oral surgery.  Moreover, although Dr. Polanco reported that he performed an initial examination (albeit an inadequate one) on ███████ 2021, no appointments for routine care were made.

119.  ███████████ was booked in █████ 2019.  A ███████, 2020 note in the sick call summary portion of ███████ medical records states:  "c/o on and off r[i]ght lower gum pain.  C[l]a[i]med [l]ast xray showed w[i]sdom tooth crowd[i[ng affected area.  Please eval."  SD 852712.  He was seen by Dr. Polanco on █████ 2021 (**after 35 days**), who documented that he performed an initial exam.  SD 853238 - SD 853232.  Tooth #17 was diagnosed as being partially erupted, and tooth #32 was diagnosed as being partially impacted.  *Id.*  Neither tooth was marked for extraction.  *Id.*  The chart reports a diagnosis of pericoronitis; however, it is uncertain whether it applies to one or both teeth.  *Id.*  ███████ was prescribed antibiotics and analgesics was "Gave pat[i]ent [i]nstructions for refera[l] to private dent[i]st or surgeon".  *Id.*  While Dr. Polanco

---

[76] ███████ was incarcerated in the Jail from █████████████ 978.

documented an initial examination, he did not document having taken bitewing x-rays or performing periodontal probing. *Id.* Consequently, the examination was below accepted professional standards.

120. ███████ submitted a sick call request on ███████ 2021, received by the Jail on ███████, 2021, reporting: "I'm having sharp pains on my teeth. My wisdom teeth are pushing all my teeth forward causing pain." SD 853378. He again submitted a sick call request on ███████ 2021, received by the Jail on ███████ 2021, SD 853379 ("I want to get my teeth checked. I am having sharp pains"); on ███████ 2021, received by the Jail on ███████ 2021, SD 853382 ("pain in my mouth due to wisdom teeth"); and again, on ███████ 2021, received by the Jail on ███████ 2021, SD 853353 ("My wisdom teeth are exposed and are causing pain"). He was seen by Dr. Polanco on ███████ 2021 (**after 83 days**), who noted that ███████ stated that his teeth "hurt but [are] doing better," and provided the treatment options of "No Treatment," "Private Dentist or Surgeon," and "Ana[l]gesics." SD 853237-853234. No treatment was provided at that time. *Id*.

121. ███████ submitted a sick call request on ███████, 2021, received by the Jail on ███████ 2021, stating: "my wisdom teeth are exposed and are pushing my other teeth. I'm having sharp pains!" SD 853395. He also submitted a grievance on ███████, 2021, received by the Jail on ███████ 2021:

> It has been about 8 months that my wisdom teeth have been causing sharp pains. I've put over 20 sick calls about getting my wisdom teeth removed. I went to see the dentist 2 times here at GBDF and they said my wisdom teeth are exposed but can not do anything about it. Medical is refusing me medical attention!

SD 853396. The Sheriff's Department responded to this grievance by selecting the "this is not a grievance" box. *Id.* ███████ was examined by Dr. Shapira on ███████ 2021 (**after 16 days**), who noted that teeth #1 and #16 were fully

impacted, and that tooth #17 had partly erupted.  SD 853269 – 853274.  Dr. Shapira noted that "discussed seeing a surgeon once at state prison for removal of #1, #16, #17, #32."  *Id.*  There is no indication that Dr. Shapira placed a referral for an oral surgeon.

122.   He submitted a sick call request on ████████ 2021 that was received by the Jail that day ("I am growing an infection in my wisdom teeth.  I want to get seen ASAP").  SD 853433.[77]  He submitted a grievance on ████████ 2021, received by the Jail on ████████ 2021, stating:

> For more than 6 months I have filed medical slips and grievances because medical is refusing to give me medical treatment.  I am having sharp pains in my mouth due to wisdom teeth.  I think I am getting an infection!  My whole left side of my face is hot and swollen.  I am going to be in county jail for a while.  I need to get my wisdom teeth removed.  I have had this problem for mostly a year now!  And medical does not want to treat me!!

SD 853402.  The Sheriff's Department responded by checking the "This submission is not a grievance" box.  *Id.*  and was scheduled for physician sick call.  SD 853402.

123.   ████████ was evaluated by an oral surgeon on ████████, 2022 (**152 days after Dr. Shipra noted that ████████ impacted teeth should be extracted by an oral surgeon**), who submitted a treatment plan for extraction of teeth #1, #16, #17, and #32 under IV anesthesia.  SD 853409 – 853410.  There is no indication that the referral was initiated by the dental service.

124.   ████████ was scheduled to see Dr. Polanco on ████████, 2022, but he could not attend because he was at court.  SD 853288 - SD 853292.   He was examined by Dr. Patel on ████████ 2022; according to the chart:  "Patient told us that he is going to be sent somewhere to get these EXT."  SD 853293 - SD853297.

125.   A ████████ 2022 note in ████████ medical record explains

---

[77] The record reports that a nurse practitioner ordered Acetaminophen-Codeine #3 (narcotic analgesic).  SD 853487.

1  that ███████████ refused an oral surgery appointment because "nobody [i]nformed

2  h[i]m where [i]s was go[i]ng so he d[i]dn't go.  Pt request[i]ng to have

3  appo[i]ntment reschedu[l]ed."  SD 853195.  If ███████████ had seen the oral

4  surgeon for the extractions on ███████████ 2022, the appointment would have

5  taken place **352 days after Dr. Shapira indicated that the extractions were**

6  **necessary**.

7       126.   ███████████ submitted a sick call request on ███████████ 2022, received

8  by the Jail on ███████████ 2022, stating:  "I am growing an infection in my wisdom

9  teeth.  I want to get seen ASAP!"  SD 853433.  An oral surgeon completed the

10 extraction on ███████████ 2022 (**278 days after the initial referral was made**).  SD

11 853435.

12       127.   In summary, there are two issues worth noting.  First, despite his

13 continual complaints, ███████████ dental appointments for urgent care inside the

14 Jail were untimely.  Second, while not all partially erupted wisdom teeth require

15 extraction by an oral surgeon, Dr. Shapira's notes from his ███████████ 2021

16 exam acknowledged that the extractions should be performed by an oral surgeon,

17 but Dr. Shapira did not request an outside referral.  He instead indicated that

18 ███████████ should wait until he is in the state prison system.  This is kicking the

19 can down the road and caused ███████████ gratuitous pain.  While the teeth were

20 eventually extracted, ███████████ had to wait more than 9 months.  Finally, despite

21 being incarcerated for over four years, there is no indication that he received any

22 routine care.

23       128.   ███████████ is missing all digits on his hands, SD 858299 (ADA

24 Functional Assessment), meaning that he cannot brush his teeth.  According to the

25 sick call summary page of ███████████ medical records, a dental sick call

26

27  ⁷⁸ ███████████ was incarcerated in the Jail from ███████████████████

28  ███████ 334.

request made on ████ 2023 reported "Patient is having trouble/difficulty cleaning his teeth d/t Bilateral hand deformities and requesting to be seen by a dentist, he feels he had root decay that needed an extraction." SD 853572. He was seen by Dr. Polanco the same day and reported that "my teeth on the right and left side have been hurting. Usually hurts when I'm chewing. It's been like this []". SD 858511 – 858516. Dr. Polanco indicated that he performed an initial examination and diagnosed periodontitis and placed a temporary filling in tooth #31.[79]

129. He was seen by Dr. Patel on ████ 2023, who noted that teeth #1 and #32 should be extracted by an oral surgeon, and that tooth #31 required either a root canal and crown or extraction. SD 858761 – 858766. Dr. Patel noted that she requested a referral for oral surgery. *Id.* ████ saw an oral surgeon on ████ 2024, who submitted a treatment plan for the surgical removal of teeth #1, #31, and #32. SD 860080 – 860081. As of ████ 2024 (**44 days after Dr. Patel recommended the referral**)—the day ████ medical records were pulled for production to Plaintiffs' counsel—there is no indication that the extractions had occurred.[80]

130. In summary, the initial dental examination was untimely and the offsite referral would have been untimely if the extractions were not done within a week.

131. ████ submitted a sick call request on ████ 2022, received by the Jail on ████ 2022, reporting: "Gums near tooth are swollen."

---

[79] The chart reports that Dr. Polanco took periapical x-rays (PAx) of "Ur and Ul" (upper right and upper left. However, the x-rays were not produced with the chart. The teeth were not charted. Despite the diagnosis of periodontitis there was no documented periodontal probing. Furthermore, the reason Dr. Polanco placed a filling in #31 is unclear since the chart does not mention decay of a defective existing filling. The examination was below accepted professional standards.

[80] A ████/24 R\_ note reports: "Pt is reporting th\_\_\_\_ransfer to prison next Wed\_ day\_\_\_\_24". SD 857866. However, ████ was not released from the Jail until\_\_\_/24. SD 1575334.

[81] ████ was incarcerated in the Jail from ████ until at least April 20\_\_\_\_34.

SD 860962.  He submitted another sick call request on ▇▇▇▇ 2022, received by the Jail on ▇▇▇▇ 2022, reporting:  "now there is a <u>cist</u> welling, major pain" and asking to see the dentist.  SD 860963.  He was seen by Dr. Patel on ▇▇▇▇ 2022 (**after 14 days**) who recorded that she performed an initial examination although no charting, intraoral x-rays, periodontal probing, or treatment plan were documented.  SD 860735 – 860739.  Dr. Patel noted that he requested that his painful third molar be extracted under IV sedation, but she informed him that the Jail does not administer IV sedation.  *Id.*  She prescribed an antibiotic and analgesic but did not schedule a follow-up appointment, nor did she request an oral surgery referral.  *Id.*

132.    ▇▇▇▇    was again seen by Dr. Polanco on ▇▇▇▇ 2023, for an initial examination (as scheduled from booking).  SD 860805 – 860809.  Dr. Polanco identified teeth #15 and #31 with decay and prescribed analgesics and an antibiotic.  *Id.*  While Dr. Polanco prescribed an antibiotic and indicated in a note (but not on the treatment plan) that the teeth should be extracted, he did not explicitly make a diagnosis, nor is there any indication that he conducted periodontal probing.  *Id.*  Dr. Polanco noted that ▇▇▇▇ declined the extraction.  *Id.*  He did not schedule a follow-up appointment and noted, "[g]ave patient instructions for referral to private dentist or surgeon."  *Id.*

133.    ▇▇▇▇    submitted a sick call request on ▇▇▇▇, 2023, received by the Jail on ▇▇▇▇ 2023, reporting:

> I need to see the dentist again.  Where my tooth is broken and meets the gums it feels swollen and the pain is about 9 of 10 with 10 being super painful.  I am not eating/chewing food, hurts too much.  Thank you.

SD 861014.  He submitted a sick call request on ▇▇▇▇, 2023, received by the Jail on ▇▇▇▇ 2023, reporting a broken and missing tooth and that his "gums got swollen/pain."  SD 861013.  He submitted a sick call request on ▇▇▇▇, received by the Jail on ▇▇▇▇, 2023, stating:

> My tooth is infected and there is constant pain and some

> puss or spit coming out of my mouth. I feel the pain in 2 places in my mouth and it hurts much more when I chew food.

SD 861010. A nurse completed a Dental Complaint form on ███████ 2023, reporting that ███████████ was experiencing dental pain at 5 out of 10 on the pain scale, prescribing acetaminophen, and referring him to the dentist. SD 860554 – 860556.[82] He again submitted a sick call request on ███████ 2023, received by the Jail on ███████ 2023, stating:

> Please help I need a pain med for my bad tooth. I had a prescription and renew but now I have court tomorrow but I can't eat or sleep due to pain. Please it's getting worse.

SD 861015. He was seen by Dr. Polanco on ███████ 2023 (**after 40 days**), who noted that ███████████ did not want an extraction. SD 860816 – 860820. Dr. Polanco again prescribed antibiotics and noted, "patient given instructions for referral to a private oral surgeon." *Id.*

134. ███████████ again submitted a sick call request on ███████ 2023, received by the Jail on ███████ 2023, requesting ibuprofen and stating:

> Please help me with my toothache, I am already getting tylenol for pain but it doesn't remove the pain/swelling/infection…. I didn't sleep for 2 days now. Thank you.

SD 861023. A nurse filled out a Dental Complaint form on ███████, 2023, reporting that ███████████ was experiencing dental pain at a 7 out of 10 on the pain scale, with swollen gums and signs of infection, prescribing ibuprofen, and referring him to the dentist. SD 860564 – 860566. He again submitted a sick call request on ███████ 2023, received by the Jail on ███████ 2023, reporting dental pain and requesting an analgesic. SD 861024. A nurse again filled out a Dental Complaint form on ███████ 2023, prescribing acetaminophen. SD 860567 – 860569. He was

---

[82] The Dental Complaint form is noted as "signed" by Dr. Freedland on ███████ 2023.

1  seen by Dr. Polanco on ████ 2023 (**after 13 days**), who noted that tooth #15 was

2  decayed with pulpal involvement and restorable.  SD 860853 – 860858.

3  Dr. Polanco noted that ████████ treatment options were pain medication,

4  extraction, and/or seeing a dentist after he was released.  *Id*.  There was no mention

5  of the possibility that ████████ could see an oral surgeon referral.

6  ████████ is documented as having declined the extraction.  However,

7  Dr. Polanco should have made a priority referral to an oral surgeon since the

8  panoramic x-ray that was taken at the ████████ 2023[83] initial examination shows

9  a diffuse radiolucency around the roots of #31 and below the crown of an impacted

10  #32 that might be osteomyelitis.

11      135.  ████████ was seen by Dr. Patel on ████, 2023, who noted

12  acute infections around teeth #12 and #31.  SD 860861 – 860866.  She noted that

13  tooth #12 required extraction and that teeth #17, #31, and #32 should be extracted

14  by an oral surgeon.  *Id*.  Dr. Patel noted "spot [periodontal] probing 2-5 mm," but

15  did not indicate which areas were problematic.  *Id*.  She prescribed an antibiotic and

16  an analgesic, but there is no indication that she requested an oral surgery referral.

17  *Id*.

18      136.  An ████████, 2023 note in the sick call summary portion of

19  ████████ medical records notes "s[i]gn[i]f[i]cant denta[l] pa[i]n."  SD

20  860384.  He submitted a sick call request on ████, 2023, received by the Jail

21  on ████ 2023, reporting "constant daily pain" and that his "face has swollen."

22  SD 861025.  In addition, there were "Medical Doctor Sick Call" referrals.  SD

23  860384 (patient continues to report significant dental pain and pain medications are

24  not working).  He submitted a sick call request on ████████ 2023, received by

25  the Jail on ████████ 2023, reporting:  "My teeth are shifting and I have a lot of

26

27

28  ───────────────
[83] There are several undated panoramic x-rays in the chart that were taken at the Jail;
all of which have the same radiographic finding.

1  pain chewing." SD 861028. On ████████ 2023, the Superior Court of San

2  Diego issued an order requesting ████████ to be evaluated for "dental" issues.

3  SD 861035. He was examined by Dr. Polanco on ████████ 2023 (**after 50**

4  **days**), who noted tooth #17 full bony impaction, #32 partially erupted, #12

5  abscessed to be extracted. SD 860873 – 860878.

6  137. ████████ again submitted a sick call request on November 16,

7  2023 requesting to see the dentist and reporting that, since his "last x-ray and

8  infection, I have had major movement & pain in my teeth." SD 861036. On

9  ████████ 2023, the Superior Court of San Diego again ordered that

10  ████████ "be seen by Dentist." SD 861038. He was examined by Dr. Polanco

11  on ████████ 2023 (**after 21 days**), who noted that tooth #15 was decayed and

12  unrestorable and attempted to perform an extraction. SD 860911 – 860916. In the

13  process of extracting #15, Dr. Polanco could not remove the palatal root and

14  referred ████████ to an oral surgeon to remove the root. *Id*. He was seen by

15  an oral surgeon on ████████ 2023 (**after 15 days**), who submitted a treatment

16  plan that day for "removal of carious and impacted teeth," alveolplasty, and

17  "grafting of implants" on teeth #12, #14, #17, #31, and #32. SD 861067 – 861068.

18  138. ████████ was seen by Dr. Polanco on ████████ 2024, who

19  noted that teeth #12, #14, #15, #17, #31, and #32 required extraction, but did not

20  indicate that those extractions have been completed. SD 860935 – 860939. It

21  appears that ████████ was scheduled to return to the oral surgeon on

22  ████████ 2024, SD 861066, but there is no indication that that appointment

23  occurred. A ████████ 2024 note (**55 days after Dr. Polanco indicated a**

24  **referral was necessary**) in the sick call summary portion of ████████

25  medical records indicates that he was referred for oral surgery, but the appointment

26  was "deferred, 'Per Dr. Pand[i]t p[l]ease c[l]ar[i]fy wh[i]ch teeth need

27  extract[i]on/treatment and a[l]so need denta[l] xrays attached." SD 860385.

28  139. To summarize, there are two issues here. First, treatment of toothaches

is untimely.  Second, while ████████ was examined by an oral surgeon, it appears that the surgery was not performed.  My primary concern is the delay in making a referral when the first panoramic x-ray was read.  Had a panoramic x-ray been taken ████ 2022, given ██████████ recurring pain and infection from #17, an oral surgery referral should have been made at that time.  Had the referral been made by Dr. Patel on ████ 2022, ████████████ would have been spared more than 18 months of continual pain.  Moreover, since ████████████ was incarcerated from ██████, 2022 until at least April 2024, he should have received an initial examination, a treatment plan, and a routine care appointment.

140.  ████████████ requested to see a dentist for a toothache on ████████ 2023, according to the sick call summary page of her medical records.  SD 863047. She submitted a sick call request on ████████ 2023, received by the Jail on ████████ 2023, reporting "teeth pain" and asking to see the dentist.  SD 863487.  She again submitted a sick call request on ████████ 2023, received by the Jail on ██████, 2023, requesting to see a dentist.  SD 863516.  She again submitted a sick call request on ████████ 2023, received by the Jail on ████████ 2023, reporting:  "teeth pain getting worse … need to get them removed.  Trouble eating."  SD 863525.  She was seen by Dr. Polanco on ████████ 2023 (**after 41 days**), who documented that he was performing an initial exam and noted pericoronitis around teeth #17 and #32 (lower wisdom teeth).   SD 863314 – 863319.  He reported that he gave ████████ the options of "ant[i]b[i]otics, pa[i]n meds, and/or f/u w[i]th dent[i]st upon re[l]ease." *Id.*  Dr. Polanco noted the presence of pericoronitis (swelling) around teeth #17 and #32 but did not mark them for extraction.  *Id.*  There is no indication that Dr. Polanco considered referring ████████ to an oral surgeon for her painful condition.  *See id.*  In addition, although this is recorded as an "initial examination,"

---

84 ████████ was incarcerated in the Jail from ████████ 2023 until at least April 20██ ████ 5334.

1   there is no documented periodontal probing.  *See id.*

2       141.  ███████ submitted a sick call request on ██████ 2023, received by

3   the Jail on ██████ 2023, reporting pain preventing her from eating and sleeping and

4   asking to see an oral surgeon.  SD 863533.  She was seen by Dr. Patel on ████████

5   2023 (**after 23 days**), who noted that teeth #1, #16, #17, and #32 were fully

6   impacted and that there was swelling around teeth #17 and #32.  SD 863347 –

7   863352.  Dr. Patel indicated that teeth #1 and #16 should be extracted by an oral

8   surgeon, but there is no indication that Dr. Patel requested a referral for an oral

9   surgeon.  *Id.*  Instead, she wrote:  "Pat[i]ent was not[i]f[i]ed that she w[ill] need to

10  see an ora[l] surgeon when she [i]s re[l]eased for EXT of a[ll] 3rd mo[l]ars."  *Id.*

11      142.  ███████ submitted sick call requests on ████████ 2023 and

12  ███████ 2023 requesting a dental cleaning.  SD 863544, SD 863548.[85]  She

13  submitted a sick call request on ██████ 2023, received by the Jail on

14  ███████ 2023, stating:

15          I am in a lot of pain can you please reconsider making me
    an appointment to the oral surgeon.  The pain is only
16          worsening by the day.

17  SD 863554.  She was seen by Dr. Borquez on ██████, 2023 (**25 days after

18  her request for a cleaning, and 11 days after her request for urgent care**), who

19  performed an ultrasonic cleaning.  SD 863381 – 863386.  Dr. Borquez diagnosed

20  gingivitis and performed a prophy but did not identify bleeding points or document

21  periodontal probing.  *Id*.  Furthermore, he did not mention the teeth diagnosed with

22  pericoronitis that were causing ████████ pain.  *See id.*

23      143.  A nurse filled out a Dental Complaint form for ████████ on

24  ███████ 2023, reporting that she had a toothache, prescribing acetaminophen and

25  ibuprofen, and noting ███████ request to see an oral surgeon.  SD 863113 –

26  863115.  She was seen by Dr. Patel on ██████ 2023 (**7 days after her ████**

27

28  _____
    [85] This is not an urgent care issue.

1    ██ **2023 complaint and 32 days after her request for urgent care**), who noted that

2    teeth #1, #16, #17, and #32 all could not "be seen c[li]n[i]ca[ll]y" and required

3    extraction by an oral surgeon.  SD 863387 – 863392.  Dr. Patel also noted that she

4    would make an oral surgery referral for the extractions.  *Id.*  She was again seen by

5    Dr. Patel on ██████ 2023, for a discussion about pain medications to manage

6    her dental pain while she was breastfeeding.  SD 863449 – 863453.  ████████

7    was seen by an oral surgeon on ████████ 2023 (**84 days after Dr. Patel**

8    **indicated that extraction by an oral surgeon was necessary**), who submitted a

9    treatment plan for extraction of ████████ "painful impacted wisdom teeth"

10   under IV sedation.  SD 863599 – 863601.

11        144.  ████████ submitted sick call requests reporting continuing dental

12   pain and wanting to know when the teeth would be extracted on ████████

13   2023, received by the Jail on ████████ 2023, SD 863635; and on ████████

14   2023, received by the Jail on ████████ 2023, SD 863643.  She was seen by

15   Dr. Patel on ████████ 2023 (**after 14 days**), who noted that, even though an

16   oral surgeon had submitted a treatment plan for the extraction of four of

17   ████████ teeth under IV sedation approximately six weeks earlier, no outside

18   referral request for ████████ to receive that treatment had yet been placed.  SD

19   863460 – 863465.  Dr. Patel indicated that she would request an outside referral for

20   that treatment that day.  *Id.*

21        145.  ████████ again submitted a sick call request on ████████ 2024,

22   received by the Jail on ████████ 2024, again requesting an update on her oral

23   surgery referral and stating that she was still in pain.  SD 863649.  As of ████████

24   2024 (**175 days after Dr. Patel indicated that extractions were necessary, and 91**

25   **days after the oral surgeon submitted a treatment plan**)—the date ████████

26   medical records were pulled for production to Plaintiffs' counsel—there is no

27   indication that the extractions had been performed.

28        146.  In summary, ████████ was subjected to untimely access to dental

care.  First, despite consistently submitting sick call requests describing painful wisdom teeth, she experienced long waits to see dentists inside the Jail.  Second, despite the Jail's dentists indicating that ███████ needed to see an oral surgeon for the extractions to be completed, they did not promptly initiate referrals, instead suggesting that ███████ would need to wait until her release to obtain care.  Finally, even when Dr. Patel requested an oral surgery referral on ███████ 2023, the teeth had not been extracted **after 112 days**.

147.  ███████████ submitted a sick call request dated███████████, 2022, received by the Jail on ███████ 2022, reporting a hole in his tooth.  SD 864525, SD 864895.   He was seen by Dr. Patel in his housing unit on ███████ 2022 (**after 10 days**).  SD 863865 – 863869.  She prescribed antibiotics and analgesics and told him to submit a request for an appointment for x-rays and a treatment plan.  *Id.*

148.  ███████ again submitted a sick call request on ███████ 2022, received by the Jail on ███████ 2022, stating:  "Done taking antibiotics!  I need x-rays done for teeth to get pulled."  SD 864899.  He again submitted a sick call request on ███████ 2022, received by the Jail on ███████ 2022, reporting: "right side mouth hurts, hole in tooth."  SD 864972.  He was seen by Dr. Patel on ███████ 2022 (**after 16 days**), who noted a decayed, partially impacted tooth #32 that should be extracted by an oral surgeon.  SD 863883 – SD 863889.  Dr. Patel prescribed an antibiotic and analgesic.  *Id.*  There is no indication that Dr. Patel requested a referral to an oral surgeon; instead, she noted that ███████ would "take med[i]cat[i]on unt[il] he goes to pr[i]son." *Id.*[87]

___

[86] ███████ was incarcerated in the Jail from ███████ 2022 to at least April 20 ███████ 75334.

[87] A ███████ 2 Medical Doctor Sick Call Note in the sick call summary porti███████ medical records appears to take issue with this deferral of treatment u ███████ It states:  "Pt has [i]rrevers[i]b[l]e pu[l]p[i]t[i]s [i]n c[l]ose prox[i]m[i]ty to [i]nfer[i]or a[l]veo[l]ar nerve that proh[i]b[i]ts denta[l] extract[i]on.

149.    ███████ again submitted a sick call request on ███████, 2022, received by the Jail on ███████ 2022, stating that he "ran out of anti-biotics, pain killer ... Dental said when I run out put another request for more." SD 864900. He was examined by an oral surgeon on ███████, 2022, who recommended extraction of tooth #32. SD 864902. He was seen by Dr. Patel on ███████ 2023 (**29 days after his request**), who noted that ███████ was scheduled to have tooth #32 extracted by an oral surgeon the following month and prescribed antibiotics, an analgesic, and an antibacterial mouth rinse in the meantime. SD 863910 – 863914.

150.    ███████ again submitted a sick call request on ███████ 2023, received by the Jail on ███████ 2023, stating:

> My wisdom teeth hurt really bad, it's hard to eat food, need them pulled. I'm supposed to get 1 pulled soon, but the other 3 are hurting now.

SD 864917. He again submitted a sick call request on ███████, 2023, received by the Jail on ███████ 2023, reporting: "Tooth is at a 10 in pain." SD 864976. He again submitted a sick call request on ███████ 2023, received by the Jail on ███████ 2023, reporting:

> I keep putting in requests … to hurry & get these teeth pulled … I'm struggling to sleep, I'm in horrible pain, my face gets swollen & red & it causes me to get headaches …. I need something done ASAP Please!

SD 864977. He again submitted a sick call request dated ███████ 2023, received by the Jail on ███████ 2023, requesting additional mouthwash to "help[] with the hole in [his] tooth." SD 864918. He was seen by Dr. Patel on ███████ 2023 (**after 13 days**), who noted that, "[p]er nurs[i]ng staff, when pat[i]ent was seen by outside [oral surgeon], on[l]y an exam was done and Pat[i]ent needs a new

_____

Denta[l] deferred fo[ll]ow-up to pr[i]son, but pat[i]ent has not been sentence yet. P[l]ease cons[i]der referra[l] for ora[l] max[il]ofac[i]a[l] surgery." SD 863767. However, as noted *infra*, the oral surgery appointment did not occur for another three months.

referra[ll] for treatment of #32," which had "recurr[i]ng, constant pa[i]n." SD 863921 –863926. Dr. Patel noted that she referred ████████ for the surgical procedure that day. *Id*.

151.  ████████ again submitted a sick call request dated ████████, 2023, stating:

> I'm trying to find out when my appointment is to get my tooth removed. I've been waiting 5 months, it hurts & it's starting to come out of the gum.

SD 864919. He again submitted a sick call request on ████████ 2023, received by the Jail on ████████ 2023, stating:  I have cavities that are hurting & wisdom teeth that hurt. Need fillings for cavities." SD 864985. He again submitted a sick call request dated ████████, 2023, received by the Jail on ████████, 2023, reporting: "Tooth pain is excruciating. I can't sleep." SD 864921. He again submitted a sick call request for dental services on ████████ 2023, stating: "they said I refused to come see dental, but I didn't. No one ever came & called me out, I would've went." SD 864924. He was seen by the oral surgeon on ████████ 2023 (**121 days after Dr. Patel indicated the extraction was necessary**), who completed the extraction of tooth #32. SD 864928.

152.  He again submitted a sick call request on ████████ 2023, received by the Jail on ████████ 2023, asking to see the dentist about pain in his wisdom teeth. He was seen by Dr. Patel on ████████ 2023 (**after 43 days**), who noted decay on teeth #1, #16, and #17, which would need to be extracted by an oral surgeon. SD 863951 – 863956. She also noted "poss[i]b[l]e MO decay" to tooth #14, but that the x-ray was not clear. *Id.* She stated that ████████ would "need to come back when new pano can be taken and rev[i]ewed." *Id.* Finally, she noted that an off-site oral surgeon referral would "be requested." *Id.*

153.  ████████ was again seen by Dr. Patel on ████████ 2023. SD 863993 - 863998. She also noted that tooth #32 had previously been extracted by an oral surgeon. He was again seen by Dr. Patel on ████████ 2023, who did a prophy

1  around his third molars.  SD 864063 – 864068.

2      154.  █████████ again submitted a sick call request on ██████ 2023, received

3  by the Jail on ██████ 2023, reporting that his "tooth is hurting."  SD 864992.  A

4  nurse filled out a Dental Complaint form for ██████████ on ██████ 2023, noting that

5  he was experiencing pain rated a 3 out of 10 and prescribing ibuprofen.  SD 863808

6  – 863810.  He again submitted a request on ██████████ 2023, received by the Jail on

7  August 21, 2023, reporting:

8          waiting to get teeth pulled, they hurt bad, I don't want to
   have to keep taking Ibuprofen.  It's not good to take it
9          every day.

10  SD 865001.  He was seen by Dr. Polanco on ██████████ 2023 (**after 47 days**), who

11  reported that he was completing an annual exam but that ██████████ did not "want

12  anyth[i]ng done."  SD 864176 – 864182.[88]  He is documented as having refused to

13  attend an ██████████ 2023 dental sick call, though neither refusal form is signed by

14  ██████████.  SD 864263 – 864268, SD 864955.  Dr. Patel noted that, considering his

15  refusal and his apparent denial of pain at prior dental appointments, she

16  "cance[ll]ed" his then pending request to see an oral surgeon.  SD 864268.  She

17  indicated she would evaluate and submit a new referral "[w]hen pat[i]ent

18  schedu[l]es a denta[l] s[i]ck ca[ll]."  *Id.*

19      155.  █████████ again submitted a sick call request on ██████████, 2023,

20  received by the Jail on ██████████ 2023, reporting that his "tooth still hurts

21  waiting to be pulled."  SD 864967.  As of ██████████ 2024 (**after 33 days**)—the

22  date ██████████ medical records were pulled for production to Plaintiffs'

23  counsel—there is no indication he had been seen by the dentist.

24      156.  In summary, there are two areas of concern.  First, the delays in getting

25

26          _____

27  [88] This is difficult to understand since ██████████ submitted a sick call request two
   days earlier describing painful teeth th██████████ "waiting to get … pulled."  SD
28  █████████ wever, for purposes of evaluating timeliness, I assume that this report of
   ██████████ requests is accurate.

1   a dental sick call appointment for a patient with a painful condition.  Even more

2   serious is Dr. Patel's failure to ensure that a patient for whom she prescribed

3   antibiotics for a dental infection had a timely extraction appointment.[89]  Second, **121**

4   **days** passed from Dr. Patel identified #32 as needing extraction by an oral surgeon

5   (███████ 2022) to the day the tooth was extracted (███████ 2023).

6   157.    ███████████ was scheduled for a dental sick call appointment

7   from Receiving Screening and was seen by  Dr. Polanco on ███ 2023.  SD

8   865976 – 865985; *see also* SD 865157 (sick call summary).  Dr. Polanco did what

9   he described as an initial examination, during which time he noted that tooth #3 had

10  decay and retained roots and recommended that ██████████ should be seen by an

11  oral surgeon.  SD 865976 – 865985.  Although Dr. Polanco stated that this was an

12  "initial" examination, there was no documented periodontal probing, nor any

13  charting of teeth other than #3.

14  158.    ████████ was seen again by Dr. Polanco on ████████, 2023, who

15  noted swelling and pain associated with tooth #3.  SD 866156 – 866161.

16  Dr. Polanco also documented that he "[p]laced UM recommendation for [oral

17  surgeon] extraction #3."  *Id.*  ██████████ was examined by an oral surgeon on

18  ██████ 2023.  SD 866511.  The same oral surgeon extracted tooth #3 on ██████████

19  2023 (**154 days after Dr. Polanco initially indicated it was required**).  SD 866554

20  – 866555.

21  159.    ████████ submitted a grievance on ███████ 2023, received by

22  the Jail on ████████, 2023, complaining of post-surgical pain.  SD 866583.  He

23  was seen by Dr. Polanco on ██████ 2023 (**after 2 days**).  SD 866268 – 866273.

24  Dr. Polanco took a Panorex x-ray and confirmed that the tooth was completely

25

26  _____

    [89] The standard of care is to extract an infected tooth within the therapeutic window
    of the antibiotic (typically 7-10 days).

27  [90] ██████████ was incarcerated in the Jail from ████, 2022 until at least April

28  20████      ████ 334.

1    extracted. *Id.*

2        160.  A nurse filled out a Dental Complaint form on behalf of ██████████

3    on ████████████ 2023, who noted that ██████████ was experiencing dental pain

4    rated a 5/10. SD 865329 – 865331.  A ██████████ 2024 note in the sick call

5    summary page of ██████████ medical records indicates that he asked to see a

6    dentist for the pain. SD 865161.  As of ██████████, 2024 (**after 34 days**)—the date

7    ██████████ medical records were pulled for production to Plaintiffs' counsel—

8    there is no indication he had been seen by the dentist.

9        161.  In summary, the extraction by the oral surgeon was untimely, as was

10   any response to ██████████ request for urgent care.

11       162.  ██████████ submitted a sick call request dated ██████████

12   2022, received by the Jail on ██████████ 2022, stating:  "I am having tooth pain."

13   SD 867183.  A nurse completed a Dental Complaint form for ██████████ on

14   ██████████ 2022, noting that she had a toothache and prescribing ibuprofen.  SD

15   867037 – 867039.  She again submitted a sick call requestion on ██████████,

16   2022, reporting pain in her wisdom tooth.  SD 867186.  She was seen by Dr. Patel

17   on ██████████ 2022 (**after 23 days**), who noted that tooth #1 was fully impacted

18   and tooth #2 was decayed with swelling in the area.  SD 866982 – 866986.

19   Dr. Patel noted that the extractions would need to be performed by an oral surgeon.

20   *Id.*  She prescribed antibiotics, antimicrobial mouth rinse, and analgesics.

21       163.  ██████████ submitted a sick call request on ██████████, 2023

22   reporting:

23           I have an abscess[] on my right lower jaw.  I went to the
             dentist close to a month ago and was told the tooth was
24           okay.  It's gotten worse is very painful and swollen.

25   SD 867190.  She was seen by Dr. Patel on ██████████ 2023 (**after 20 days**), who

26

27   ───────────────
     [91] Accord ██████████ ust 4, 2024, 23:08:12 search of the San Diego Who Is in Jail
     ██████████ has been incarcerated at the Jail since she was booked on
28   ██████████

noted that tooth #32 was fully impacted and should be extracted by an oral surgeon (in addition to teeth #1 and #2, which also required an oral surgeon for extraction). SD 866987 – 866992.  She referred ███████ to an oral surgeon for treatment of all three teeth on ███████ 2023.  SD 867207.

164.  ███████ was seen by an oral surgeon on ███████ 2023, who examined ███████ and submitted a treatment plan for the extraction of tooth #32 under IV sedation, but the Jail did not complete the treatment.  SD 867200.  It does not appear that the Jail scheduled the extraction.

165.  ███████ submitted a sick call request on ███████ 2023, received by the Jail on ███████ 2023, saying "my tooth broke I'm in pain."  SD 867222.  A nurse completed a Dental Complaint form for ███████ on ███, 2023, noting that he had a toothache at 6/10 on the pain scale, prescribing acetaminophen, and noting that she was scheduled for dental sick call.  SD 867040 – 867042.  ███████ is documented as having refused a dentist appointment on ███████ 2023 (**after 32 days**).  SD 867003 – 867007.  The refusal form is not signed by ███████.

166.  ███████ submitted a request on ███████ 2023, received by the Jail on ███████ 2023, stating:

> I really need to see the Dentist my wisdom tooth is really giving me problems there's some mornings I can barely open my mouth my right bottom wisdom to[oth] needs to come out, but for the meantime I need to keep the pain at bay.

SD 867248.  A nurse filled out a Dental Complaint form for ███████ on ███████ 2023, noting that she had a toothache and prescribing acetaminophen.  SD 867046 – 867048.  She was seen by Dr. Polanco on ███████ 2024 (**after 29 days**), who designated tooth #32 for extraction and prescribed antibiotics and analgesics.  SD 867011 – 867016.  She again saw Dr. Polanco on ███████ 2024, at which time he extracted tooth #32 (**232 days after Dr. Patel diagnosed it as requiring extraction**).  SD 867019 – 867024.

167.    ███████████ reported continuing dental pain to a nurse on ██████ 2024, including having a dry socket.  SD 866786 (Progress Notes).  She was seen by Dr. Polanco on ██████ 2024 (**after 4 days**), who noted that the tooth #32 area was healing well.  SD 867031 – 867036.

168.    In summary, while Dr. Patel indicated that the extraction should be performed by an oral surgeon and made a referral, and the oral surgeon examined ███████████, he did not extract the tooth.  If the extraction were performed within a month of the examination (say, by ██████ 2023) she would have been saved six months of pain.  In addition, the time it took to get dental sick call appointments was too long.  It is also noteworthy that ███████████ did not receive any treatment for teeth #1 and #2, which Dr. Patel noted as requiring extraction over a year earlier.  In addition to untimely urgent care, ███████████ was not scheduled for an initial examination and treatment plan for routine care.

169.    ███████████ was assaulted with metal pipe, and he reported dental fractures, pain, and difficulty chewing and swallowing to Jail staff on ███████, ███████ ███████, and ███████, 2023.  SD 873256 – SD 873260, SD 873281 (Progress Notes).  The ██████ 2023 Progress Note states: "f/u emergent[l]y w/ DDS. ([oral surgeon] consu[l]t requested)."  SD 873258.  He submitted a sick call request on ██████ 2023, marked received by the Jail on ██████ 2023, stating "I have a mouth injury.  I am currently awaiting dental surgery."  SD 873926.  On ██████, 2023,  he was evaluated by UCSD plastic surgery as having a displaced alveolar fracture requiring dental treatment.  SD 873958.

170.    An ██████ 2023 note in the sick call summary portion of ███████████ medical records states: "MUST SEE, URGENT DENTAL

---

[92] Accord ███████████ st 4, 2024, 21:48:05 search of the San Diego Who Is in Jail ███████████ has been incarcerated at the Jail since he was booked on

1    EVAL" for severe pain and significant issues eating.  SD 873251.  ██████████

2    was seen by Dr. Polanco on ██████ 2023 (**after 28 days**) and noted that an oral

3    surgery referral was pending.  SD 873506 – 873510.  Although Dr. Polanco

4    described this as an "initial" examination, there is no documented periodontal

5    probing, nor is there teeth charting.  *See id.*

6       171.  ██████████ saw an oral surgeon[93] on ██████ 2023 (**103 days after**

7    **the Jail indicated that a referral was necessary**), who noted "multiple loose teeth,

8    needs 8 extractions, bone graft, upper partial denture."  SD 873922 – 873923, SD

9    873962.  The surgeon noted that ██████████ would need to return for two

10   additional appointments for an upper partial denture.  *Id.*

11       172.  ██████████ submitted a sick call request dated ██████ 2023,

12   received by the Jail on ██████, 2023, reporting that he was still experiencing mouth

13   sensitivity and difficulty brushing.  SD 873946.

14       173.  ██████████ again saw the oral surgeon on ██████ 2023, who took

15   alginate impressions for an upper partial denture.  SD 873956.

16       174.  ██████████ was seen by Dr. Patel on ██████ 2023, who noted

17   that he had extractions offsite and was in the process of having a denture fabricated.

18   SD 873515 – 873520.  Dr. Patel also noted that ██████████ had not returned to

19   the oral surgeon since ██████ 2023.  *Id.*  Finally, she noted a problem with tooth

20   #8, which she stated required extraction by an oral surgeon.  *Id.*

21       175.  It is not clear the date that ██████████ denture was delivered, but

22   a sick call request dated ██████ 2023 (in which ██████████ requested a

23   case for the denture), suggests that it was received at some time before then.  SD

24   873991.

25       176.  Dr. Patel saw him at a scheduled sick call visit on ██████, 2023 and

26

27   ─────────────────
   [93] ██████████ treatment plan involved extractions performed by an oral

28   su████████ es fitted by a general practitioner dentist.

1  noted that he had extractions offsite and was in the process of having a denture

2  fabricated.  SD 873515.

3        177.   In summary, a 21-day delay in being seen by a dentist is untimely, as is

4  a 74-day delay in surgery.

5        178.   ██████████ had intermaxillary fixation hardware as of early 2022.

6  On ██████ 2022, a San Diego Superior Court Judge ordered that ████████

7  should be seen by "Jail medical relating to dental issues."  SD 881994.  ██████████

8  submitted a sick call request dated ██████ 2022, received by the Jail on ██████,

9  2022, stating: "wired jaw remove judge request."  SD 881992.  He again submitted

10  similar sick call requests on ██████ 2022, received by the Jail on ██████, 2022,

11  SD 881990; on ██████, 2022, SD 881989; and on ██████, 2022, received by the

12  Jail on ██████ 2022, SD 881986.  He was seen by Dr. Polanco on ██████ 2022

13  (**after 13 days**), who made an oral surgery referral to have the hardware removed.

14  SD 881859 – 881864.

15        179.   ██████████ again submitted a sick call request asking to jaw hardware

16  removed on ██████, 2022, received by the Jail on ██████, 2022, SD 881987; and

17  on ██████ 2022, received by the Jail on ██████, 2022, SD 881982.  He was seen by

18  an oral surgeon on ██████, 2022, who conducted an examination and submitted a

19  treatment plan to remove the hardware.  SD 881985.  He was seen by Dr. Polanco

20  on ██████ 2022, who noted that he had a pending oral surgery appointment.  SD

21  881851 – 881856.

22        180.   ██████████ was seen by an oral surgeon to have the hardware removed

23  on ██████ 2022 (**74 days after Dr. Polanco initiated the referral, and 87 days**

24  **after a court ordered ██████████ to receive care**).  SD 881976 – 881977.

25        181.   In summary, the 13-day wait to see a dentist for removal of

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   94 ██████████ was incarcerated in the Jail from ████████████████████████.

28  SD

1    intermaxillary fixation hardware—even after a court order requiring such a visit—

2    was untimely, because delayed removal of intermaxillary fixation hardware results

3    in gratuitous pain and adverse effects on the soft tissue. Furthermore, a 74-day wait

4    for an oral surgeon to remove the hardware was excessive.

5        182.    ████████████ was admitted to Tri-City Medical Center for repair

6    of a nasal and mandibular fracture on ███████, 2021. SD 887848 (Discharge

7    Summary).

8        183.    ████████ submitted a sick call request to see a dentist on ████████

9    2022, received by the Jail on ████████ 2022. SD 888386. According to the sick

10   call summary page of ████████████ medical records, he also submitted a sick call

11   request on ████████ 2022, stating: "need to see doctor to remove braces." SD

12   887450. He again submitted a sick call request dated ████████ 2022, received by

13   the Jail on ████████, 2022, stating: "Need braces removed past due." SD 887825.

14   He again submitted a sick call request on ████████ 2022, received by the Jail on

15   ████████ 2022, stating: "Hurts to eat. Remove braces were don in here,

16   should've been removed since November. Please." SD 887823. He was seen by

17   Dr. Polanco on ████████, 2022 (**after 34 days**). Dr. Polanco noted the presence

18   of intermaxillary fixation hardware, which he explained was placed in

19   ████████ 2021, and made a referral to oral surgery. SD 887518 – 887522.

20       184.    ████████ was seen by an oral surgeon on ████████ 2022 (**63 days**

21   **after Dr. Polanco made the referral, and 120 days after he initially requested**

22   **treatment**), who removed the hardware. SD 887794.

23       185.    In summary, given his complaint of pain, he should have been seen by

24   the dentist sooner and a 120 day wait to have intermaxillary fixation hardware

25   removed is excessive. Furthermore, ████████████ should not have had to request to

26

27   95 ████████████████ was incarcerated from ████████████████████. SD

28   15

[4534519.9]

have his skeletal fixation hardware removed since it was obvious that it was placed while he was in the Sheriff's custody.

186. ███████████ submitted a sick call request dated ███████, 2021, received by the Jail on ███████ 2021, requesting "deep cleaning on my teeth." SD 914307. The Jail's response states: "We do not offer deep cleaning at VDF." *Id.*[97]

187. ███████████ submitted a sick call request on ███████, 2022, received by the Jail on ███████, 2022, reporting dental pain. SD 914296. He again submitted a request on ███████, 2022, received by the Jail on ███████, 2022 asking to be seen by the dentist. SD 914297. He was seen by Dr. Patel on ███████ 2022 (**after 39 days**), who noted that tooth #32 was abscessed and should be extracted by an oral surgeon since it was a complicated extraction. SD 913909 – 913913. There is no indication that Dr. Patel placed the referral request. *See id.*[98] And, although Dr. Patel indicated that she was conducting an "initial" examination, no periodontal probing was documented, there is no indication that x-rays were taken, and no charting was completed aside for tooth #32. *Id.*

188. ███████████ submitted a sick call request on ███████ 2022, received by

---

[96] ███████████ was incarcerated fro ███████████ TechCare form dated ███████████ 2019).

[97] This is a request for routine care, which ███████████ should already have received, given that he had already been in the Jail fo ███████ years at the time of the request.

[98] Although it does not appear that Dr. Patel placed a referral request, a ███████████ 2022 Medical Doctor Sick Call note on the sick call summary page of ███████████ medical records states: "J-21 5/13 'I went to the dent[i]st yesterday... The Dent[i]st say they cou[l]dnt take my w[i]sdom tooth out because I have nerves on the way of the tooth...a[ll]ows me to go to a outs[i]de dent[i]st to do the surg[i]ca[l] treatment. Can you p[l]ease he[l]p me w[i]th the process.'" SD 913897. It therefore appears that the referral was made by the medical department, not by a dentist.

the Jail on ▮▮▮ 2022, requesting to see an oral surgeon and explaining: "I have 3 years here in the County left." SD 914298. He was examined by an oral surgeon on ▮▮▮ 2022 (**39 days after Dr. Patel indicated a referral was necessary**), who sent a treatment plan to the Jail for the extractions. SD 914301 – 914302.

189. He was again seen by Dr. Patel on ▮▮▮ 2022, who noted that the oral surgeon had recommended that three molars be extracted a month earlier, and that she "today" filled out the "offs[i]te/consu[l]t form … so that the pat[i]ent can go back to [the oral surgeon] for treatment." SD 913918 – 913923. It also noted that ▮▮▮ was still experiencing pain at a 7/10 on the pain scale. *Id.* ▮▮▮ was seen by the oral surgeon on ▮▮▮ 2022 (**113 days after Dr. Patel said the extractions were necessary**), who extracted four of ▮▮▮ teeth.

190. In summary, a 39-day wait for a dental appointment for a patient complaining of a painful condition is excessive. A wait of 113 days to have an oral surgery procedure is untimely.

191. ▮▮▮ was seen by a nurse on ▮▮▮, 2023, who completed a Dental Complaint form stating that ▮▮▮ was experiencing a toothache with foul taste, pain rated 10/10, and signs of infection present; prescribing ibuprofen and acetaminophen; and referring him to a dentist. SD 930617 – 930619. He submitted a sick call request on ▮▮▮ 2023, received by the Jail on ▮▮▮ 2023, stating: "I have a bad tooth pain." SD 930848. He again submitted a sick call request on ▮▮▮ 2023, received by the Jail on ▮▮▮ 2023, stating: "my molar that had been infected before has been killing me." SD 930899. A nurse again filled out a Dental Complaint form for ▮▮▮ on ▮▮▮, 2023, noting that he had a toothache, prescribing acetaminophen, and referring ▮▮▮ to the dentist. SD 930636 – 930638. He

---

99 ▮▮▮ was incarcerated from ▮▮▮, 2023 until at least April 2024. SD 15

was seen by Dr. Patel on , 2023 (**after 57 days**), who noted that teeth #31 and #32 should be extracted by an oral surgeon and initiated a referral request. SD 930941 – 930946. ▇▇▇▇▇ was examined by an oral surgeon on September 26, 2023 (after 8 days), who submitted a treatment plan.  SD 930864.

192.   ▇▇▇▇▇ was again seen by Dr. Polanco on ▇▇▇▇▇ 2024, who noted that his next appointment would be extraction by the oral surgeon.  SD 930957 – 930962.  As of ▇▇▇▇▇ 2024 (**136 days after Dr. Polanco indicated he should be seen by an oral surgeon, and 193 days after ▇▇▇▇▇ complained of pain**)—the date ▇▇▇▇▇ medical records were pulled for production to Plaintiffs' counsel—there is no indication the procedure had been performed.

193.   In summary, a 57-day wait for a patient complaining of a toothache to see a dentist is excessive.  Similarly, a wait time of more than 157 days to have an oral surgeon extract the tooth is excessive.

194.  **Laura Grubbs**[100] submitted a sick call request on  May 18, 2021, reporting a "bad tooth!  Cutting me & hurts."  SD 936443.  She again submitted a sick call request on May 20, 2021, reporting an "abscessed tooth *pain,*"  SD 936449.  She submitted a sick call request on May 26, 2021, marked received by the Jail on May 24, 2021, reporting:  "My tooth is killing me!!!"  SD 936450.  She again submitted a sick call request on June 2, 2021, reporting:  "tooth is killing me, abscessed, need to come out."  SD 936456.  She again submitted a sick call request on June 5, 2021, received by the Jail on June 5, 2021, stating :  "pull my tooth!!! Ouch."  SD 936459.  She was seen by Dr. Polanco on June 8, 2021 (**after 21 days**), who extracted decayed tooth #19.  SD 937227 – 937232.  Although Dr. Polanco

---

[100] Ms. Grubbs, also known as Laura Zoerner, is a class representative.  She was incarcerated in the Jail from May 4, 2021 to November 2, 2021; June 15, 2022 to September 28, 2022; February 18, 2023 to August 3, 2023; and August 15, 2023 to August 21, 2023.  SD 1575334.

1  noted that he was completing an "initial" examination, no periodontal probing is

2  documented, nor is there charting of any teeth other than tooth #19. *Id.*

3      195.  Ms. Grubbs submitted a sick call request on June 11, 2021, reporting:

4  "tooth that was pulled on Tuesday 8th is swollen & abscessed.  2x bigger and

5  hurts!!!"  SD 936462.  She submitted another sick call request on June 12, 2021,

6  stating:  "Dentist!!! Ouch!  Pain…. Please help!"  SD 936462.   An "MD

7  EMERGENCY" note from a doctor dated June 12, 2021, states: "Seen in housing,

8  c/o severe pain in mouth s/p molar extraction from L lower jaw 4 days ago …

9  Assessment: … Infection s/p tooth extraction … f/u with DS next clinic (MUST

10 SEE)."  SD 937614.  The doctor also prescribed an antibiotic.  *Id.*  She was seen by

11 Dr. Shapira on June 15, 2021 (**after 4 days**) for an "emergent" appointment.  SD

12 937233 – 937238.  He noted that Ms. Grubbs had also been seen by a physician,

13 who had requested that Ms. Grubbs be referred to oral surgery.  *Id.*  Ms. Grubbs was

14 sent to the emergency room at the Tri-City Medical Center on June 15, 2021, where

15 she was diagnosed with osteomyelitis of mandible.  SD 936490; *see also* SD

16 936369, SD 937154 – 937163.  She was discharged from the hospital on June 20,

17 2021.  SD 937165 – 937167.  She was seen by Dr. Polanco on June 22, 2021, who

18 adjusted tooth #29 and removed 2 sutures.  SD 937241 – 937245.

19     196.  Ms. Grubbs submitted a grievance on July 15, 2021 regarding dental

20 care, to which the Jail responded by noting that it was "not a grievance" and

21 informing Ms. Grubbs that she had a pending dental sick call appointment."  SD

22 936679.  There is no indication that she was seen by a dentist again before her

23 November 2, 2021 release (**after 110 days**).

24     197.  Ms. Grubbs was booked again in June 2022.  She submitted a sick call

25 request on July 27, 2022, reporting:  "Help!  Tooth broke!  Hurts bad."  SD 936818.

26 She was seen by Dr. Patel on July 27, 2022, who marked tooth #3 for extraction and

27 ordered an antibiotic.  SD 937341 – 937346.  She also noted that Ms. Grubbs had

28 "[p]ain to percussion" at tooth #5 but did not make a diagnosis.  *Id.*

198.   Ms. Grubbs submitted a sick call request on July 30, 2022, received by the Jail on August 2, 2022, reporting pain in her molar.  SD 936828.  She also submitted a grievance on July 30, 2022, requesting dental care and reporting: "Exposed nerve … every second feels like an hour.  Meds not touching pain!!! … Torture!!!  Ouch!!!  Please help!!"  SD 936825.  She was seen by Dr. Polanco on August 2, 2022 (**after 3 days**), who marked tooth #2 as "decay[ed]" and "perio involved" and extracted it.  SD 937347 – 937351.

199.   Ms. Grubbs again submitted a sick call request reporting dental pain on August 9, 2022, received by the Jail on August 10, 2022.  SD 936831.  She again submitted a sick call request on August 13, 2022, received by the Jail on August 14, 2022, reporting:  "Please my extraction site of the right upper molar is still excru[c]iatingly painful.  I've put in numerous request[s] for pain Rx."  SD 936832.  A nurse filled out a Dental Complaint form for Ms. Grubbs on August 21, 2022, noting that she had a toothache rated a 6 out of 10 on the pain scale and had a pending "Must See" appointment with the dentist.  SD 936394 – 936396.[101]  She submitted another sick call request on August 22, 2022, received by the Jail on August 22, 2022, reporting:  "Need to see dentist please.  Extraction site not healing … metallic taste.  3rd week still sore.  Hole open."  SD 936847.  She was seen by Dr. Patel on August, 24, 2022 (**after 15 days**).  SD 937357 – 937362.  Dr. Patel informed her that the #2 extraction site was healing normally.  *Id.*

200.   Ms. Grubbs submitted another sick call request on September 2, 2022, reporting that the extraction "still hurts."  SD 936853.  She was seen by Dr. Polanco on September 6, 2022 (**after 4 days**),[102] who examined her, ordered an analgesic, and provided oral hygiene instruction.  SD 937367 – 937372.

---

[101] The Dental Complaint form is noted as "signed" by Dr. Freedland on September 23, 2022.

[102] Considering the intervening weekend, I count this appointment as timely.

1       201.   Ms. Grubbs submitted another sick call request reporting tooth pain on

2  September 8, 2022.  SD 936855.  She submitted another sick call request on

3  September 27, 2022, reporting "left bottom bicuspid tooth pain.  Out please?"  SD

4  936868.  A nurse filled out a Dental Complaint form for Ms. Grubbs on

5  September 27, 2022, noting that she had a toothache rated a 6 out of 10 on the pain

6  scale and that she was scheduled for dental sick call.  SD 936403 – 936405.[103]  As

7  of her September 28, 2022 release (**after 20 days**), she had not been seen by a

8  dentist.

9       202.   Ms. Grubbs was booked again in February 2023.[104]   She was evaluated

10 by an oral surgeon on July 28, 2023, who submitted a treatment plan for extraction

11 of tooth #20.  SD 1575184 – 1575185.  She submitted a sick call request on July 28,

12 2023, received by the Jail on July 29, 2023, asking to see the oral surgeon "for tooth

13 extraction ASAPlease."  SD 1575187.  She submitted another sick call request on

14 July 29, 2023, marked received by the Jail on July 30, 2023, stating: "Can you

15 please schedule me ASAP doe Dr. Mudd oral surgeon this week.  As I MA

16 sentenced 8/3/?? I'm really eager to get this done-I can't afford or get there???"  SD

17 1575190.  Again, on July 31, 2023 she wrote: "Can you please schedule me for an

18 appointment with Dr. Mudd ASAP* Tooth surgery extraction-outside clinic- time

19 sensitive 8/3/23 Please?  Thank you."  SD 1575192.  She again submitted a request

20 on July 31, 2023, received by the Jail on August 1, 2023, requesting treatment for

21 "Jaw and ear & head pain tooth!!!  Please need to get it out.  Feel lousy.  **911**"

22 SD 1575191.

23      203.   She was seen by Dr. Polanco on August 1, 2023 (**after 4 days**) and he

24

25 _____

26 [103] The Dental Complaint form is noted as "signed" by Dr. Freedland on December
   7, 2022.

27 [104] There do not appear to be any treatment records for Ms. Grubbs on any issue
   between her booking and late July 2023.  It is therefore not possible for me to
28 calculate the wait time that preceded this appointment with an oral surgeon.

1  indicated that tooth #20 should be extracted by an oral surgeon and placed a referral.

2  SD 1575241 – SD 15756246.  However, the offsite appointment was cancelled upon

3  her release.  SD 1575044.

4     204. In summary, Ms. Grubbs's 21-day wait for a tooth extraction in 2021

5  was untimely as her 4-day wait to see a dentist after she was prescribed antibiotics.

6  That 21-day delay in extracting the tooth more likely than not allowed the infection

7  to progress to osteomyelitis, which required Ms. Grubbs's hospitalization.

8     205. ██████████ submitted a sick call request on ██████ 2022,

9  received by the Jail on ██████ 2022, "about some teeth issues."  SD 941212.  He

10 was seen by Dr Polanco on ██████ 2022 (**after 24 days**), who noted partially

11 erupted teeth #17 and #32.  He provided antibiotics and analgesics.  SD 941139 –

12 941141.  Although Dr. Polanco documented that he was completing an initial

13 examination, there was no documented periodontal probing, no charting of any teeth

14 other than #17 and #32, and no indication that intraoral x-rays were taken.  *See id.*

15    206. ██████████ submitted a sick call request dated ██████ 2023,

16 received by the Jail on ██████ 2023, requesting to have his wisdom tooth

17 removed and noting it was "overdue," since he was supposed to have it removed

18 prior to his incarceration.  SD 942973.  A nurse filled out a Dental Complaint form

19 for ██████ on ██████ 2023, noting that he had a toothache rated 10/10 on

20 the pain scale and prescribing ibuprofen.  SD 941489 – 941491.[106]  He was seen by

21 Dr. Polanco on ██████, 2023 (**after 11 days**).  SD 941859 – 941863.

22    207. According to a ██████ 2023 note in the sick call summary portion of

23 ██████████ medical records, he reported:  "right lower molar pain requesting

24

25

---

26 [105] ██████████carcerated from ██████████████
    ██████████ until at least Ap

27 [106] The Dental Complaint form is "signed" by Dr. Peter Freedland on ██████,
28 2023.

tooth extraction." SD 941251.[107]  He submitted a sick call request on █████,

2023, received by the Jail on █████ 2023, stating:

> Need to see dentist ASAP, swollen/infection pain on my
> tooth, wisdom teeth need to be removed spoke with
> Doctor she told me to request to see a specialist outside of
> jail.

SD 943009.  He again submitted a sick call request dated █████ 2023, received

by the Jail on █████, 2023, reporting "unbearable" dental pain.  SD 943011.  He

submitted a grievance on █████ 2023, received by the Jail on █████ 2023,

complaining of pain and that his requests to see the dentist had not been "tak[en] …

serious[ly]."  SD 943002.[108]  He was seen by Dr. Polanco on █████ 2023 (**after 52

days**), who noted that he would submit a request for an oral surgeon referral for

teeth #17 and #32.  SD 942206 – 942210.

208.   He submitted a sick call request on █████ 2023, received by the Jail

on █████ 2023, asking for the status of his request to see a dental specialist

offsite.  SD 943005.  He was seen by Dr. Polanco on █████ 2023 (**after 34 days**),

who noted that the oral surgeon referral was "defer[red]" and explained that

█████ wisdom teeth could be managed with scaling and antimicrobial

mouth rinse, which Dr. Polanco provided.[109]  SD 942432 – 942437, SD 942440 –

942444.  Dr. Polanco also noted that tooth #1 was decayed.  *Id.*  █████ again

saw Dr. Polanco on █████ 2023, who extracted tooth #1.  SD 942453 – 942458.

209.   █████ was next seen by a dental assistant on █████, 2023,

---

[107] The sick call summary portion of █████ medical records indicates that
he refused a dental appointment on █████ SD 941251.

[108] In the return portion of the grievance form, the Sheriff's Department checked the
box stating that this "not a grievance," but "an Incarcerated Person Request," for
which "No JIMS Grievance entry" is necessary.

[109] █████ had asked on several occasions to have these teeth extracted by an
off █████ because he was told that the extractions would be too complicated
to do at the Jail.

for his "annual examination," which is noted as having been scheduled at Receiving Screening, and I therefore understand to be ███████ first routine care appointment. SD 942631 – 942635; *see also* SD 941256 (sick call summary). Even though this was classified as an "annual examination," this does not meet the standard of care for a routine care appointment. A dental assistant is not a clinician and performing an examination or assessment is beyond the scope of her training. In addition, no periodontal probing was conducted. *See id.* The dental assistant noted that he should be referred to a dental provider to deal with inflammation around #17 and #32. *See id.* He was seen by Dr. Patel examined him ████████ 2023 (**after 75 days**), who indicated that teeth #17 and #32 should be extracted and initiated a referral for an oral surgeon. SD 942823 – 942828. She also ordered an analgesic. *Id.*

210. He again submitted a sick call request on ███████ 2024, reporting "extreme pain on wisdom teeth." SD 943095. As of the ███████ 2024 (**27 days after his request, and 45 days after Dr. Patel requested a referral for an oral surgeon**)—the day ██████████ records were pulled for production to Plaintiffs' counsel—there is no indication that ███████ had been seen by a dentist or an oral surgeon.

211. In summary, the wait time for a dentist to assess complaints of a painful condition is excessive. I reviewed the Panorex and agree that extracting #17 and #32 should be done by an oral surgeon; however, it is not unreasonable to see (as Dr. Polanco did) whether extraction could be avoided by local soft tissue management. Once it became clear from ███████ persistent complaints of pain that local management was not working, he should have been referred to an oral surgeon for the extractions. For this reason, the decision to refer was untimely.

212. ██████████████ reported a toothache to a nurse practitioner on

---

[110] ███████ was incarcerated from ███████████████. SD

1   ███████ 2023.  SD 956107 (Progress Notes).   He was seen by Dr. Patel on

2   ███████ 2023 (**after 16 days**), who noted that ███████ was

3   experiencing some facial paralysis, identified eight decayed teeth that should be

4   extracted, and requested an offsite oral surgery referral.  SD 956238 – 956243.

5          213.  ███████ submitted a sick call request dated ███████, 2023,

6   received by the Jail on ███████, 2023, reporting:  "my teeth hurt worse than

7   before.  Please help ASAP.  The pain is terrible."   SD 956299.  Progress notes

8   entered by a nurse practitioner and physician on ███████ and ███████,

9   2023, also note that ███████ is experiencing dental pain, which is not

10  improved by antibiotics.  SD 956118 – 956119.  Specifically, a note from Dr. Rafi

11  states:  "p[l]s ensure pt [i]s seen by denta[l] th[i]s Wednesday, ███/23."  There is no

12  indication that ███████ saw a dentist in that timeframe.  He again submitted a

13  sick call request on ███████ 2023, received by the Jail on ███████ 2023 for

14  infected teeth.  SD 956355.

15         214.  ███████ was examined by an oral surgeon on ███████ 2023

16  (**31 days after Dr. Patel requested the referral, and 47 days after** ███████

17  **complained of pain**), who completed a treatment plan for extraction of eight teeth

18  but did not perform any extractions that day.  SD 956361 – 956362.

19         215.  He was again seen by Dr. Patel on ███████ 2023 (**after 20 days**),

20  who noted that she had conducted "spot probing," but did not perform any

21  extractions.  SD 956244 – 956250.  According to Dr. Patel's notes, ███████

22  indicated that he was scheduled to be released the following week and was

23  requesting pain medications until then.  *Id.*

24         216.  In summary, the wait time for a dentist to assess complaints of a painful

25  condition is excessive.  Similarly, waiting 47 days for an examination by the oral

26  surgeon is excessive since the extractions would have been done even later, further

27  _____

28  1575334.

1   lengthening the wait time.

2        217.   ██████████████ complained to a nurse practitioner of a painful cracked

3   tooth on ██████ 2021.  SD 992484 (Progress Notes).  He is marked as having

4   "refused" a dental appointment on ████████ 2023, though the notes indicate that

5   ██████ was quarantined at the time.  SD 992424 – 992433.  ██████ submitted

6   a sick call request regarding dental pain on ████████ 2021, received by the Jail on

7   ██████████ 2021.  SD 992115.  He submitted another sick call request on ██████

8   2021, received by the Jail on ████████ 2021, for "ongoing dental pain" with "signs

9   of infection."  SD 992126.  He submitted another sick call request on █████████

10  2023, received by the Jail on ██████████ 2021, reporting:

11           Cracked back tooth exposed nerve…front tooth
             chipped…Please tell me how this matter can get resolved.
12           Respectfully, I been in custody w[ith] these ongoing issues
             over long period of time.  It is very frustrating and being
13           overlooked.

14  SD 992138.  He submitted another sick call request dated ██████████ 2023,

15  received by the Jail on ████████ 2021, reporting:

16           Dental pain emergency mouth swollen back upper cracked
             tooth large hole nerve is exposed sensitive to food
17           particles getting inside the hole hurts so bad mouth
             swollen needs to be abstracted immediate attention or
18           temporary filling please. Need to be seen soon 10 pain
             scale.
19

20  SD 992143.  He was seen by Dr. Polanco on ██████████ 2021 (**after 52 days**)

21  and he extracted tooth #16.  SD 992438 – 992442.

22        218.   He again submitted requests regarding dental pain on to have a

23  toothache treated on ██████████ 2021, received by the Jail on ██████████

24  2021, SD 992258;  on ██████████ 2021, received by the Jail on ██████████

25

26  ¹¹¹ ████████████████

27

28



1  2021, SD 992260; on ██████████ 2021, received by the Jail on ████████████

2  2021, SD 992266; on ████████ 2021, received by the Jail on ████████ 2021, SD

3  992272;  on ██████████ 2021, received by the Jail on ██████████ 2021, SD

4  992170; and on ████████ 2022, received by the Jail on ██████████ 2022, SD

5  992403 ("[f]ront right tooth is cracked in back swelling infected sensitive to hot &

6  cold in pain 10").  There was no documented dental appointment as of his

7  ████████ 2022 release (**151 days later**).

8       219.   Mr. ██████ was booked again in ████████ 2022 and  submitted sick call

9  requests regarding dental pain on ██████████ 2022, received by the Jail on

10  ████████ 2022, SD 992866; and on ██████████ 2022, SD 992867.  A nurse filled

11  out a Dental Complaint form for ████████ on ██████████ 2022, reporting that he

12  was experiencing a toothache rated 10/10 on the pain scale, prescribing ibuprofen,

13  and stating that ████████ was scheduled to see the dentist.  SD 992806 – 992808.[112]

14  He was seen by Dr. Polanco on ██████████ 2022 (**after 15 days**), who ordered

15  antibiotics and analgesics.  SD 992967 – 992971.  Although Dr. Polanco recorded

16  that he was completing an "initial examination," there was no documented

17  periodontal probing, and no teeth charting was added.  *Id.*

18       220.   ████████ submitted a sick call request on ██████████ 2022, received

19  by the Jail on ████████ 2022, stating "top right pain tooth infected."  SD 993164.

20  He again submitted a sick call request dated ██████████ 2022, received by the

21  Jail on ████████ 2022, reporting an "infected very painful[]" tooth.  SD

22  993179.  A nurse completed a Dental Complaint form for ████████ on

23  ██████████ 2022, stating that he had a toothache, prescribing ibuprofen, and

24  noting that "[d]enta[l] s[i]ck ca[ll] a[l]ready schedu[l]ed."  SD 993135 – 993137.[113]

25

26  [112] The Dental Complaint form is "signed" by Dr. Peter Freedland on ████████,
    2022.

27  [113] The Dental Complaint form is "signed" by Dr. Peter Freedland on ████████
28  2022.

1  There was no documented dental appointment as of his ▮▮▮▮ 2022 release
2  (**58 days later**).

3      221.    According to the sick call summary page of ▮▮▮▮ medical
4  records, he again reported tooth pain on ▮▮▮▮ 2023, and on ▮▮▮▮ 2023.  SD
5  993777.  A nurse completed a Dental Complaint form for ▮▮▮▮ on ▮▮▮▮
6  2023, noting that he had a toothache rated 8/10 on the pain scale with swollen gums
7  and signs of infection, and prescribing acetaminophen.  SD 993834 – 993836.[114]  He
8  again submitted sick call requests dated ▮▮▮▮ 2023, received by the Jail on ▮▮▮▮
9  2023, reporting "tooth decays," SD 993948; and dated June 3, 2023, received by the
10 Jail on ▮▮▮▮ 2023, reporting "major dental pain," SD 994000.  He was seen by a
11 dental assistant on ▮▮▮▮ 2023, who noted that he had a chipped tooth and "gross
12 decay tooth #8" and indicated that he was scheduled to see a dental provider.  SD
13 994138 – 994144.  He again submitted  a sick call request dated ▮▮▮▮ 2023,
14 received by the Jail on ▮▮▮▮ 2023, reporting dental pain.  SD 994105.  There was
15 no documented dental appointment as of his ▮▮▮▮ 2023 release (**46 days later**).

16     222.    ▮▮▮▮ was booked again on ▮▮▮▮ 2023.  A nurse filled out a
17 Dental Complaint form on ▮▮▮▮ 2023, noting that he had a toothache and
18 prescribing acetaminophen.  SD 994322 – 994324.  He reported having a dental
19 abscess to a nurse practitioner on ▮▮▮▮ 2023.  SD 994609 (Progress Notes).  The
20 sick call summary portion of ▮▮▮▮ medical records suggests that he was
21 added to the dental sick call list on ▮▮▮▮ 2023.  SD 994229.  He was seen by
22 Dr. Patel on ▮▮▮▮ 2023 (**after 40 days**), who diagnosed teeth #8 and #20 as
23 decayed, fractured, and having pulpitis; tooth #20 is also marked as being abscessed.
24 SD 994532 – 994537.  She noted that both teeth were restorable only with root
25 canals and crowns.  *Id.*  She also noted:  "offsite referral placed, but patient was
26 notified that it is for upper management to determine who can go offsite".  *Id.*

27

28 _____

[114] The Dental Complaint form is "signed" by Dr. Peter Freedland on ▮▮▮▮ 2023.

223.    ████████ was scheduled to see Dr. Patel again on ████████ 2023, but was in court and could not attend.  SD 994541.

224.    ████████ medical records include information about multiple outside dental appointments were discussed, but there is no indication that a treatment plan was ever documented or any surgery performed.  In particular, according to a ████████, 2023 note on the sick call summary portion of ████████ medical records, he was scheduled for an evaluation with an oral surgeon on ████████ 2023.  SD 994229.  And, notes in ████████ medical record reflect information about appointments with oral surgeons on ████████ 2023, SD 994372; ████████ 2023, SD 994443[115]; ████████ 2023, SD 994451; and ████████ 2023, SD 994455.  There is a signed refusal form for an off-site surgery appointment, with the reason "resc[ch]edule," on ████████ 2023 (**67 days after Dr. Patel requested the referral**).  SD 994454.

225.    There is also information about an off-site appointment on ████████ 2023, SD 004467.  However, a treatment plan from the ████████ 2023 appointment states:  "Order is for root canal treatment which we do not perform.  See endodontist ASAP."  SD 994474.  And, according to a ████████ 6, 2023 note on the sick call summary portion of ████████ medical records:  "Off-S[i]te/Cons[l]t Deferra[l]."  SD 994232.  There is no indication ████████ received the surgery recommended by Dr. Patel as of his ████████ 2023 release.

226.    In summary, the wait time for a dentist to assess complaints of a painful condition is excessive.  Similarly, a wait of at least 67 days for oral surgery on a painful tooth is excessive.

---

[115] According to the sick call summary portion of ████████ medical records, he was refused ████████ intment with an oral surgeon ████████, 2023.  SD 994230.  Assuming ████████ did refuse this appointment, it w ████████ have taken place **after 39 da** ████████ h is untimely.

227.    ████████████ was admitted to the Jail with intermaxillary fixation hardware from a recent jaw fracture.  He submitted sick call requests dated ████ 2021, received by the Jail on ████ 2021; an undated request, received by the Jail on ████ 2021; an undated request, received by the Jail on ████ 2021; and dated ████ 2021, received by the Jail on ████ 2021, complaining of jaw numbness and tingling.  SD 1004907, SD 1004910.  SD 1004915, SD 1004920 – 1004921.  He was referred to the emergency room by a nurse practitioner on ████ 2021 (**after 28 days**).  SD 1004741 – 1004743.  He was admitted to the Tri-City Medical Center that day, and a surgeon removed the skeletal fixation hardware on ████ 2021.  SD 1004992, SD 1005179.  He was discharged ████ 2021.  SD 1004992.

228.    He submitted sick call requests dated ████ 2021, received by the Jail on ████ 2021 ("tingling & burning sensation on my bottom (jaw) cheeks & chin & lips"); dated ████ 2021, received by the Jail on ████ 2021 ("Imagine a toothache this is … more painful and serious"); and complaining of pain and problems after the surgery.  SD 1005212 – SD 1005214.  He was seen by the same oral surgeon for suture removal on ████ 2021.  SD 1005218.

229.    ████████ reportedly complained that he was not receiving adequate aftercare following his surgery on ████ 2021.  SD 1005434 (Progress Notes).  According to a psychologist progress note, nursing was scheduling ████ to be seen by a dentist.  *Id.*  There is no indication that he had been seen by a dentist as of his ████ 2021 release (**after waiting 141 days**).

230.    In summary, ████████ onsite urgent care was not timely; while his two episodes of off-site care were timely, that is because he was referred directly to a hospital emergency department and avoided the NaphCare UM process.

----

[116] ████████ was incarcerated from ████████████████████.  SD 157

231.  ████████████ submitted a sick call request on ████████ 2022, received by the Jail on ████████ 2022, reporting tooth pain.  SD 1020203.  A nurse filled out a Dental Complaint form for ████████ on ████████ 2022, noting that he was experiencing a toothache with pain rated 8/10, stating that ████████ "[c]laim[ed] he will take care of it when released," and prescribing acetaminophen and ibuprofen.  SD 1020188 – 1020190.[118]  He again submitted a request received by the Jail on ████████ 2022 reporting:  "I have a broken tooth causing me a lot of pain/bad toothache."  SD 1020204.  A nurse filled out a Dental Complaint form for ████████ on ████████ 2022, noting that he was experiencing a toothache with pain rated 9/10, prescribing acetaminophen and ibuprofen, and referring ████████ to a dentist.  SD 1020191 – 1020193.[119]  He was seen by Dr. Patel in his housing unit on ████████ 2022 (**after 32 days**[120]), who provided analgesics and antibiotics noted:  "Patient was told to fill out another sick call request and return for radiographs and possible treatment."  SD 1020209 – 1020214.  ████████ was not seen again by a dentist as of his ████████ 2022 release.

232.  A nurse filled out a Dental Complaint form for ████████ on ████████ 2023, noting that ████████ had pain in his left upper molar and

---

[117] ████████████████████████████████████████████

[118] The Dental Complaint form is "signed" by Dr. Peter Freedland on ████████ 2022.

[119] The Dental Complaint form is "signed" by Dr. Peter Freedland on ████████ 2022.

[120] ████████ear what is meant by the nurse's ████████ 2022 note that ████████ asserted that he would "take care ████ n released."  However, even ████at stat████████u████t appointment and ca████████t time starting from ████████████ 2022 requests, the ████████ 2022 appointment

prescribing ibuprofen.  SD 1020300 – 1020302.[121]  He submitted a sick call request

on ■■■■ 2023, received by the Jail on ■■■■ 2023, saying "[t]oothache very

painful abs[c]ess need pain medicine."  SD 1020324.  A nurse filled out a Dental

Complaint form for ■■■■■■■ on ■■■■ 2023, noting that he was experiencing

pain at a 9/10 and prescribing acetaminophen and ibuprofen.  SD 1020303 –

1020305.[122]  He was seen by Dr. Patel on ■■■■ 2023 (**after 23 days**[123]).  Dr. Patel

diagnosed six non-restorable abscessed teeth.  She attempted to extracted tooth #15;

however, she was unable to extract the apical third of the mesial root and noted,

"Significant purulent and bloody discharge."  *Id*.  It is notable that she did not

request an immediate referral to an oral surgeon to extract the remainder of tooth,

consistent with the standard of care.[124]  She prescribed antibiotics and analgesics.

SD 1020369 – 1020374.  She he also recommended that he get "maxillary RPD

upon release."  SD 1020369 – 1020374.

233.   He submitted a sick call request dated ■■■■ 2023, stating "[t]ooth

hurting real bad need help!!"  SD 1020325.  He submitted another sick call request

received by the Jail on ■■■■ 2023, stating that he had a "[b]ad toothache and

swollen jaw."  SD 1020326.  A nurse filled out a Dental Complaint form for

■■■■■■■ on ■■■■ 2023, noting that ■■■■■■■ had pain in his right and left

molar rated 7/10 on the pain scale with swollen gums, prescribing ibuprofen, and

---

[121] The Dental Complaint form is "signed" by Dr. Peter Freedland on ■■■■ 2023.

[122] The Dental Complaint form is "signed" by Dr. Peter Freedland on ■■■■ 2023.

[123] I assume tha■■■■■■■■sit to complete the Dental Complaint form was precipitated by ■■■■■■ submitting a sick call request; h■■■■■■did not see any earlier sick ■■■■■ in the record.  I therefore count ■■■■■ 2023, as the day of the request.

[124] Despite failing to extract tooth #15 successfully and her inability to extract tooth #16, she "[r]ecommended patient see other provider to determine if #16 can be EXT.  *Id*.  Based on my review of the panoramic film in the chart, SD 1020327, it is my opinion that these extractions s■■■■e performed by an oral surgeon.  Dr Patel should have made a referral at the ■■■■ 2023 examination.

referring him to a dentist. SD 1020309 – 1020311.[125] He was seen by Dr. Patel on ███ 2023 (**after 11 days**), who extracted tooth #15 but was unable to complete the procedure or extract tooth #16, as she had planned. SD 1020375 – 1020380. She recommended that ███████ "see other provider," *i.e.*, Dr. Polanco, to determine if tooth #16 could be extracted. *Id.* Still no oral surgery referral was made. *See id.* ███████ was examined by Dr. Polanco on ████ 2023, who noted that "Dr. Patel will refer to" an oral surgeon." SD 1020381 – 1020386.

234. ███████ submitted a sick call request received by the Jail on ████ 2023, saying "[m]y cheek is swelling up and I'm in pain from a[n] abs[c]ess." SD 1020331. A nurse filled out a Dental Complaint form on ██████ 2023, stating that he had pain in his right upper molar area rated 8/10 on the pain scale, with signs of infection, "no clot in socket," and "swollen face/jaw," and that he had had an extraction over two days ago. SD 1020312 – 1020314.[126] Dr. Polanco again saw ███████ on ████ 2023, who again indicated that ███████ should be referred to an oral surgeon. SD 1020387 – 1020388. ███████ was finally referred for oral surgery on ██████ 2023 (**11 days after Dr. Patel's attempt at extraction, and 10 days after Dr. Polanco initially indicated that the referral should be requested**). SD 1020343.

235. Although the oral surgery appointment was requested and approved on ████ 2023, it was scheduled to take place on ████ 2023. SD 1020343. He was seen by the oral surgeon for the extraction of eight teeth on ██████ 2023 (**70 days after Dr. Polanco initially indicated that the referral should be requested**). SD 1020342. He was seen again by Dr. Polanco on ██████ 2023, for suture removal. SD 1020423 – 1020435.

236. In summary, ███████ urgent care—both inside the Jail and

---

[125] The Dental Complaint form is "signed" by Dr. Peter Freedland on ████ 2023.

[126] The Dental Complaint form is "signed" by Dr. Peter Freedland on ████ 2023.

1    through outside referrals—was untimely.

2        237.    ████████████    submitted a sick call request dated ██████, 2021,

3    received by the Jail on ██████ 2021, reporting that his "back tooth [wa]s hurting."

4    SD 1016379.  He was seen by Dr. Polanco on ██████ 2021 (**after 32 days**), who

5    placed temporary filling on tooth #20 that was decayed.  SD 1016654 – 1016657.

6    Dr. Polanco also noted that ████████ should be scheduled for a follow-up

7    examination, though no date for that examination is indicated.  *Id.*  Although

8    Dr. Polanco described this as an initial examination, no teeth other than #20 were

9    charted, periodontal probing was not documented, and bitewing x-rays were not

10   taken.

11       238.    ████████    is next documented as having refused an appointment with

12   Dr. Polanco on ████████ 2021.  SD 1016712 – 1016716.  However, there is no

13   refusal form signed by ████████.  *See id.*  There is also no indication what the

14   purpose of this visit was if ████████ was informed of the purpose of the visit.

15       239.    ████████    submitted a sick call request dated ██████ 2022, received

16   by the jail on ██████ 2022, reporting "a bad toothache on [his] left side," SD

17   1016428; and again, on ██████ 2022, received by the Jail on ██████ 2022.  SD

18   1016432.  He was seen by Dr. Polanco on ██████ 2022 (**after 13 days**), who noted

19   that tooth # 18 was decayed (and restorable) and could be extracted.[128]  SD 1016775

20   – SD 1016779.  ████████ appears to have declined the extraction.  *See id.*

21   Although Dr. Polanco referred to the appointment as an initial examination, he did

22   not document a treatment plan—including for the temporary restoration he had

23   placed over 9 months earlier—or bitewing x-rays and periodontal probing.  *Id.*

24

25   _____

[127] According to a July 30, 2024 18:09:0 ████████ the San Diego County Sheriff's

26       "Who Is In Jail" website, ████████ has been at the Jail since

27   ████████ 2020.

28   [128] The note did not explain why Dr. Polanco marked a restorable tooth for
     extraction.

240.     ██████ submitted a sick call request on ██████ 2023, received by the Jail on ██████ 2023, requesting a dental cleaning. SD 1016560. Notably, ██████ had been incarcerated at the Jail for well over two years when he requested the cleaning. He then submitted two sick call requests that were received by the Jail on ██████ 2023, asking to see a dentist after his front tooth had broken off. SD 1016565 – SD 1016566. He was seen by Dr. Patel on ██████ 2023 (**after 5 days**), who placed a composite restoration on tooth #9 (which had broken). SD 1016958 – 1016963. Dr. Patel also noted that there was a "likelihood of this restoration falling out, just like the previous one did…. [H]e will need a crown on #9 to prevent future fractures. Patient understands and will get a crown when he goes to prison." SD 1016963.

241.     On ██████ 2023, ██████ submitted a request stating that his "tooth broke off again because it wasn't done right the first time"—just as Dr. Patel had predicted. SD 1016527. He was seen by Dr. Patel on ██████ 2023 (**after 8 days**), who placed another filling. SD 1016992 – 1016997. Dr. Patel again noted that this filling was likely to fall out again and explained to ██████ that he would need a crown. *Id.* She placed a request for an offsite referral to have the crown placed on tooth # 9. SD 1016997.

242.     ██████ was seen offsite ██████ 2023 by Dr. Farid (Harmony Dental Group) for the crown on tooth #9. SD 1016536. Dr. Farid reported that ██████ has "active decay on teeth #20, #28, #29 close to the nerve that needs root canal, build[up] + crowns." *Id.* It is interesting that Dr. Farid reported the presence of active decay on three teeth—with all three teeth requiring endodontic treatment and crowns—including on a tooth (#20) that had been marked as decayed by Dr. Patel on ██████, 2021, when a temporary filling was placed. SD 1016960. A ██████ 2023 entry on the sick call summary page of ██████ medical records, which states "Review OMFS clinic notes," was **not** marked as having been "completed" as of ██████ 2024. SD 1015832. This suggests that the crown and

other treatment identified by Dr. Farid had not been approved, **over three months after it was recommended**.

243.    In summary, ███████ urgent and routine dental treatment violated the standard of care.  As an initial matter, the majority of ███████ urgent care appointments were untimely.  Moreover, the Jail essentially denied ███████ *any* meaningful routine care, even though he had been incarcerated for well over three years as of the date his records were pulled for production to Plaintiffs.  It is more likely than not that the failure to treat tooth #20 timely was responsible for the decay progression over a more than 2-year period.  Even more concerning is the fact that Dr. Farid diagnosed decay in teeth #28 and #29—teeth that were unmentioned in Dr Polanco's ███████ 2021 initial examination, SD 1016654 – 1016658; ███████ 2022 initial examination, SD 1016775 –SD 1016779; and Dr. Patel's ███████ 2023 examination, SD 1016958 – SD 1016963.  In my opinion, that decay progression was due to the inadequate examinations due to failure to inform the examinations with bitewing x-rays and failure to treat timely.  Moreover, despite being on notice that ███████ was experiencing advanced tooth decay in those teeth from Dr. Farid's report on ███████ 2023, the Jail has apparently not taken any action to treat those teeth as of ███████ 2024.

## II.    Charts I Selected Based on Interviews During the Inspections

244.    ███████ submitted a sick call request on ███████ 2023, marked as received by the Jail on ███████, 2023, reporting:  "cavities … painful … need to be checked."  Medical Records, rec'd by Plaintiffs' counsel on ███████ 2024, at p. 2648 of 2798.  ███████ also reported a toothache to a nurse during a ███████ 2024 face-to-face.  *Id*. at p. 763 (Progress Notes).  The nurse indicated that she had been scheduled for dental sick call.  *Id.*  A ███████ 2024

---

[129] According to a July 29, 2024 22:17:3███████ of the San Diego County Sheriff's "Who Is In Jail" website, ███████ has been at the Jail since ███████ 2022.

1  note in the sick call summary portion of ███████ medical records states: "MUST

2  SEE … Pt claims the crowns to her left and right lower molars came off. Pt with

3  cavity to left and right lower pre-molars." *Id.* at p. 32. She submitted a sick call

4  request dated ███████, 2024, receiving by the Jail on ███████, 2024,

5  requesting Tylenol for tooth pain. *Id.* at p. 2650. She again submitted a sick call

6  request dated ███████ 2024, stating: "Pain hasn't stop on my tooth on left side

7  its bleeding more and the inside of gum is swollen. Need something for pain. 2nd

8  Req. 1st Req ███/24." *Id.* at p. 2653. A nurse completed a Dental Complaint form

9  for ███████ on ███████, 2024, noting that she was experiencing pain rated 7/10,

10  prescribing acetaminophen, and noting that she was scheduled for dental sick call.

11  *Id.* at pp. 195 – 197. ███████ submitted a sick call request for tooth pain on

12  ███████ 2024, received by the Jail on ███████ 2024. *Id.* at p. 2657. A nurse

13  again completed a Dental Complaint form for ███████ on ███████ 2024, noting

14  that she had a toothache, prescribing acetaminophen, and noting that she was

15  scheduled for dental sick call. *Id.* at pp. 198 – 200. A nurse again completed a

16  Dental Complaint form for ███████ on ███████ 2024, noting that she had a

17  toothache, prescribing acetaminophen, and noting that she was scheduled for dental

18  sick call. *Id.* at pp. 201 – 203. As of ███████ 2024 (**after 118 days**)—the day

19  ███████ medical records were pulled for production to Plaintiffs in this case—

20  ███████ had not been seen by a dentist.

21       245.  In summary, ███████ complained of dental pain repeatedly beginning

22  ███████ 2023 and was not seen by a dentist for 118 days. This is untimely

23  dental care. In addition, ███████ had been in the Jail for well over a year as of the

24  day her medical records were pulled, yet there is no indication that she received any

25  routine dental care either.

26       246.  ███████████████ submitted a sick call request regarding a

27

28  [130] ███████████ was incarcerated from ███████ 2020 (Medical Clearance form,

"toothache" on ████████ 2020, received by the Jail on ████████ 2020.  Medical Records, rec'd by Plaintiffs' counsel March 9, 2024, p. 233 of 2342.  She again submitted a sick call request dated ████████ 2021, received by the Jail on ████████ 2021, reporting a "[b]roken molar." *Id.* at p. 248.[131]  She was seen by Dr. Polanco on ████████ 2021 (**after 185 days**), who diagnosed tooth #19 as decayed and non-restorable and designated it for extraction.  *Id.* at pp. 74 – 78. Despite the notation that ████████ agreed to the extraction, there is no indication that Dr. Polanco performed the procedure that day, nor did he schedule ████████ for a follow-up appointment.  *Id.*  In addition, although Dr. Polanco indicated that he was performing an initial examination, there is no indication that bitewing x-rays were ordered or that periodontal probing was completed, and there is no charting of any teeth except for #19.  *Id.*

247.  ████████ submitted a sick call request received by the Jail on ████████ 2021, stating:  "need molar pulled." *Id.* at p. 258.  She was seen by Dr. Polanco, who extracted tooth #19 on ████████ 2021 (**17 days after her most recent request, 63 days after the tooth was designated for extraction, and 248 days after she first reported a toothache**).  *Id.* at pp. 81 – 85.

248.  She submitted sick call slips regarding dental issues on ████████ 2021 ("need a fil[l]ing asap" and "toothache"), received by the Jail on ████████ 2021.  *Id.* at p. 262 – 263.  A nurse who saw ████████ on May 19, 2021 "[n]oted tooth decay to L. upper molar."  *Id.* at p. 132 (Progress Notes).   She again submitted a sick call request  on ████████ 2021 ("toothache"), received by the Jail on ████████

rec'd by Plaintiffs' counsel March 9, 2024, p. 2 of 2342)

[131] ...tten date next to ████████ signature is dated 2020, but since ...was not in custo... ...20, I understand this to be a ...rror.

2021.  *Id.* at p. 265.  On  2021, she reported to a nurse that she had "a bad toothache."  *Id.* at p. 137.  She was seen by Dr. Polanco on ███ 2021, (**after 21 days**),  who placed a temporary restoration in tooth #29.  *Id.* at pp. 86 – 90.

249.  ████████ was booked again on ███████ 2022.  *See* Medical Clearance form, *id.* at p. 270.  She was seen by Dr. Polanco on ████████ 2022.  *Id.* at pp. 703 – 708.  Although Dr. Polanco noted that this appointment was for a "scheduled sick call," *see id.*, the sick call summary page of ██████████ medical records indicates that the ████████, 2022 appointment was "scheduled from Receiving Screening," which occurred ten months earlier, *id.* at p. 294—that suggests to me that the December 6 appointment was intended to be an initial examination.  Dr. Polanco ordered a panoramic x-ray and noted generalized gum recession, but did not order bitewing x-rays,  or document any periodontal probing.  Furthermore, despite his notation that ██████████ had "generalized gum recession," Dr. Polanco did not plan any periodontal treatment.  *Id.* at pp. 703 – 708.  He also did not create a treatment plan, including for any follow-up to tooth #29, which the chart shows had a temporary filling placed on ██████ 2021.  *Id.*  That Dr. Polanco did not schedule an appointment to place a permanent filling in the tooth is concerning.

250.  ████████ submitted a sick call request dated ███████ 2023, reporting:  "I have a pain in my back molar I think it's cracked!"  *Id.* at p. 1598.  A nurse completed a Dental Complaint form for ██████████ on ██████ 2023, noting that she had a toothache and that she had a pending appointment to see the dentist and prescribing acetaminophen.  *Id.* at pp. 522 – 524.[132]  ████████ submitted a request on April 4, 2023, received by the Jail on ██████ 2023, reporting that she had a "horrible tooth ache" and that she was told by a "dental assistant" that

---

[132] The Dental Complaint form is noted as "signed" by Dr. Freedland on ████████ 2023.

1  she needed to see the dentist. *Id.* at p. 1596. She was seen by Dr. Patel on ███
2  2023 (**after 10 days**). Dr. Patel reviewed a Panorex (taken on ███ 2022,
3  *id.* at p. 703) and diagnosed the problem as "bruxism and grinding" and told her that
4  she can get a nightguard appliance (for bruxing) when she gets out.[133] *Id.*

5      251.  According to an ███ 2023 note on the sick call summary back of
6  ███ medical records, she reported to health care staff that she
7  "need[ed] a liquid diet as tooth hurts. [N]eed to have pulled – can't eat – soft of
8  otherwise." *Id.* at p. 295. She was seen by Dr. Patel on ███ 2023 (**after 11**
9  **days**), at which point she reportedly "denie[d] pain." *Id.* at 719 – 723.

10     252.  ███ submitted a sick call request reporting that her "tooth
11  broke," which was received by the Jail on July 10, 2023. *Id.* at p. 1614. A nurse
12  completed a Dental Complaint form for ███ on ███ 2023, noting
13  that she was experiencing a toothache rated 6/10 on the pain scale and prescribing
14  acetaminophen. *Id.* at 548 – 550. She again submitted a sick call request dated
15  ███ 2023, received by the Jail on ███ 2023, requesting "tylenol and motrin
16  for a toothache." *Id.* at 1616. She was seen by Dr. Polanco on ███ 2023 (**after**
17  **8 days**), who noted that tooth #29—in which he had placed a temporary filling two
18  years earlier—was decayed "with pulpal involvement," which could be treated by
19  root canal or extraction. *Id.* at pp.727- 732. ███ agreed to an extraction,
20  which Dr. Polanco performed that day. *Id.*

21     253.  ███ submitted a sick call request on ███ 2023,
22  received by the Jail on ███ 2023, stating: "Pain in my jaw and teeth on my
23  left upper side. Need to see dentist ASAP. Please thank you." *Id.* at p. 1645. A
24  nurse filled out a Dental Complaint form for ███ on ███ 2023,
25  noting that she was experiencing a toothache and referring her to a dentist. *Id.* at

26

27  [133] Having diagnosed bruxism and recommend that she would benefit from a
    nightguard appliance, Dr. Patel sh███n an impression to have the
28  nightguard fabricated or referred ███ to a dentist capable of doing it.

pp. 551 – 553.  She was seen by Dr. Polanco on ██████ 2023 (**after 56 days**) who determined that tooth #3 was "[a]bscessed" and "decay[ed] with pulpal involvement."  *Id.* at ██████████████.  Dr. Polanco prescribed ████████ antibiotics, designated tooth #3 for extraction, and indicated that she should be scheduled for a follow-up appointment to complete the extraction "after antibiotics."  *Id.*  She was seen by Dr. Polanco again on ██████ 2023, at which point she declined to have tooth #3 extracted.  *Id.* at pp. 751 – 756.

254.  In summary, ████████ urgent dental care was untimely, and she did not receive any meaningful routine care, despite being incarcerated in the Jail for over two years at the time her records were pulled for production.  First, in her more than 2 years of incarceration and being examined by dentists on ██████, 2021, ██████, 2021, ██████ 2021, ██████ 2022, ██████ 2023, ██████, 2023, ██████, 2023, ██████, 2023, and ██████ 2023, none of her examinations (and treatment) were informed by intraoral x-rays and documented periodontal probing.  This is an exemplar of a systemwide deficiency that is the norm in the Jail. It is an appalling breach of the standard of care.

255.  Second, Dr. Polanco diagnosed tooth #29 with decay and placed a temporary filling on ████ 2021.  *Id*. at pp. 86 – 90.  However, there was no follow-up to replace it with a permanent filling.  At a sick call exam on ████ 2023, Dr. Polanco identified "tooth #29 decay with pulp involvement" and extracted it.  *Id*. at pp. 727-32.  The treatment of this tooth was supervised neglect.

256.  ████████ submitted a sick call request dated ██████ 2023, reporting:  "face is swelling, [I] have infected teeth on the left side, it's excruciating and hard to sleep and ignore my whole jaw hurts its spreading."

---

[134] According to ██████ edical records, she was booked on ████████████████ (when her pending appoin████████ y Plaintiffs, February 28, 2024, p. 164 of 900.

Medical Records rec'd by Plaintiffs, February 28, 2024, p. 314 of 900.  A nurse completed a Dental Complaint form for ███████████ on █████ 2023, noting that she was experiencing a toothache, rated 8/10 on the pain scale, with a foul odor and signs of infection.  *Id.* at pp. 176 – 178.[135]  The nurse noted that ███████████ was scheduled to see a dentist.  *Id.*  She was seen by Dr. Polanco on ██████ 2023 (**after 23 days**), who documented that he was completing an "initial" examination on the TechCare form, yet also noted that he conducted only a "limited exam" of two teeth. *Id.* at pp. 274 – 279.  Dr. Polanco noted that teeth #17 and #32 were decayed; ███ ████████ is noted as having denied an extraction.  *Id.*

257.   In summary, ███████████ dental care was untimely.

258.   ███████████ submitted a sick call request dated █████ 2023, received by the Jail on ██████ 2023, reporting a "really bad tooth infection," "swollen" mouth, and "gum disease really bad." Medical Records, rec'd by Plaintiffs on ██████ 2024, pp. 509 of 945.  He again submitted a sick call request dated ██████ 2023, received by the Jail on ██████, 2023, regarding a "tooth infection."  *Id.* at p. 561.  He is documented as having refused a nursing sick call appointment on █████ 2023, though the refusal form is not signed by ██████, nor is there any indication that ████████ was informed that the appointment was for dental care (if it was in fact for dental care).  *Id.* at pp. 216 – 217.  He had not been seen by a dentist as of his █████ 2023 release date (**29 days later**).

259.   ████████ was again admitted to the Jail on ███████ 2023.  *Id.* at p. 596.  He submitted a sick call request dated ███████ 2023, received by the Jail on

---

[135] The Dental Complaint form is noted as "signed" by Dr. Freedland on ████████ 2023., *id.* at p. 146

[136] ████████ was incarcerated from █████████, 2023, Medical Records, rec'd by Pla██████ March 13, 2024, p. 131 ████████ Medical Clearance) to ████████

██████████████████████████████████████████████████

1       ███████ 2023, reporting: "I have wisdom teeth that's half broken and infected

2 need to be pulled out as soon as possible I had surgery scheduled for this week

3 before I came into custody." *Id.* at p. 730. He then submitted a grievance dated

4 ███████ 2023, received by the Jail on ███████ 2023, stating: "I have

5 turned in multiple request regarding my health issues but mostly for dental

6 appointments and have not heard anything back. I have made it clear I have tooth

7 infections and need surgery to get teeth pulled." *Id.* at p. 732. A nurse filled out a

8 Dental Complaint form for ██████ on ███████ 2023, noting that he had a

9 toothache and swollen gums at a 6/10 on the pain scale, with signs of infection. *Id.*

10 at pp. 632 – 634. The nurse also prescribed acetaminophen and marked the box for

11 "Refer to Dentist or Advanced Clinical Practitioner"; however, the notes portion of

12 the form indicates that she notified only STATcare, not a dentist. *Id.* Also on

13 ███████ 2023, a STATcare PA—who I understand is not present onsite at the

14 Jail—prescribed Amoxicillin for ██████ dental infection, based on the nurse's

15 assessment that there was a cavity on ██████ back molar. *Id.* at 664. Although

16 the PA noted that ██████ should be seen by a dentist, *id.*, a ███████ 2023

17 note in the sick call summary portion of ██████ medical record states that the

18 sick call request was "[c]ancelled" because "care protocol for dental complaints was

19 initiated on ███████ 2023." *Id.* at p. 611. A nurse again filled out a Dental

20 Complaint form for ██████ on ██████ 2023, noting that he had a toothache

21 rated a 7/10 on the pain scale and had a pending dental appointment. *Id.* at pp. 638

22 – 640. ██████ again submitted a sick call request, received by the Jail on October

23 8, 2023, regarding tooth pain. *Id.* at p. 729. He had not been seen by a dentist as of

24 his ██████ 2023 release date (**36 days later**). ██████ was again admitted to

25 the Jail on ███████ 2023. *Id.* at p. 759. A progress note written by a

26 STATcare provider on ██████ 2024 states: "Has red swollen area on left side

27 of last molar that has been there for months per tech care." *Id.* at 802. A note dated

28 ███████ 2024 in the sick call summary portion of ██████ medical records

states that he was "[s]een by a provider" who had scheduled him for dental sick call on ▮▮▮ 2024. *Id.* at p. 779.[137]  A nurse filled out a Dental Complaint form, on ▮▮▮ 2024, reporting stating that ▮▮▮ had pain rated 7/10 in his lower left molar and had popped out a loose tooth. *Id.* at pp. 795 – 797.  He had not been seen by a dentist as of his ▮▮▮ 2024 release date (**49 days later**).

260.  In summary, in each of his three incarcerations, he requested treatment for a painful tooth and was not treated by a dentist for 29, 36, and 49 days.  His dental care would have been untimely—had he received any.

261.  ▮▮▮ submitted a sick call request dated ▮▮▮ 2021, received by the Jail on ▮▮▮ 2021, stating:  "I need to see the dentist because I have a[n] abs[c]es[sed] tooth and it's killing [me]."  Medical Records, rec'd by Plaintiffs' counsel on ▮▮▮ 2024, at p.1690 of 2482.  He was seen by Dr. Polanco on ▮▮▮ 2021 (**after 5 days**[139]), who diagnosed decay on tooth #32. *Id.* at pp. 341 – 345.  Although Dr. Polanco noted that he was completing an initial examination, there is no indication that he took bitewing x-rays or conducted any periodontal probing or charting of any teeth other than #32. *Id.*

262.  He submitted a sick call request on ▮▮▮ 2021, received by the Jail on ▮▮▮ 2021, reporting that his "tooth broke" and he was "in pain." *Id.* at p. 1693.  The sick call summary portion of ▮▮▮ medical records states that he refused to be seen by a nurse on ▮▮▮ 2021, *id.* at p. 134; however, the refusal form is not signed by ▮▮▮, nor is there any

---

[137] The date ▮▮▮ mplaint is unclear.  It states that the sick call triage was received on ▮▮▮ cheduled" on January 12, 2024; and the date of "[c ▮▮▮ on ▮▮▮ 2024 ▮▮▮ 2024.  Even assuming the first complaint was made care was untimely.

[138] ▮▮▮ was booked on ▮▮▮, 2021, Medical Records, rec'd by Pla ▮▮▮ l on ▮▮▮ be ▮▮▮ ed as of ▮▮▮.

[139] Because of the intervening weekend, this appointment was timely.

1  indication that ███████████ was informed that the appointment related to dental

2  care, *id.* at 1694. He again submitted a sick call request dated ███████████ 2021,

3  received by the Jail on ███████████ 2021, stating that his "tooth [was] broken &

4  infected and it hurts." *Id.* at p. 1697. He was seen by Dr. Polanco on ███████████,

5  2021 for an initial exam (**after 39 days**), who again noted caries on tooth #32. *Id.*

6  at pp. 361 – 365. Again, Dr. Polanco described this appointment as an initial

7  examination, there is no documented periodontal probing, bitewing x-rays, or

8  charting other than tooth #32. This is below accepted professional standards.

9  263.  ███████████ submitted a sick call request dated ███████████, 2022,

10  received by the Jail on February 25, 2022, stating: "Please reissue my Tylenol

11  because my toothache is killing me." *Id.* at p. 1702. He reported to tooth pain rated

12  7/10 to a nurse on ███████████ 2022, who noted that his "[r]ight lower molar [was]

13  broken and decayed." *Id.* at p. 568 (Progress Notes). A ███████ 2022 note in the

14  sick call summary portion of ███████████ medical records states: "Patient c/o

15  pain to right lower molar." *Id.* at p. 135. He again submitted a sick call request

16  dated ███████ 2022, received by the Jail on ███████ 2022, reporting "really bad

17  toothaches." *Id.* at p. 1703. He is documented as having refused an appointment

18  with Dr. Polanco on ███████ 2022 (**after 32 days**). *Id.* at pp. 384, 1705.

19  However, the refusal form is not signed by Mr. ███████. *Id.* at p. 1705.

20  264.  According to the sick call summary of ███████████ medical

21  records, he also refused a dental sick call appointment on ███████ 2022. *Id.* at p.

22  135; *see also id.* at pp. 391, 1714. Because this appointment is described as

23  "scheduled from Receiving Screening," I understand this to be a routine care

24  appointment for ███████████ initial examination. *See id.* There is no indication

25  that the purpose of this appointment was explained to ███████████.

26  265.  In summary, only one of ███████████ three dental appointments for

27  urgent care was timely.

28

266.  ████████████ submitted a sick call request dated ████████
2023, received by the Jail on ████ 2023, requesting "Dental Services."
Medical Records for Booking No. 22753112, p. 109 of 546.  A nurse completed a
Dental Complaint form for ████ on ████ 2023, noting that he had a
toothache rated 5/10 on the pain scale and prescribing "Tylenol/Ibuprofen."  *Id.* at
61 – 63.  He was seen by Dr. Polanco on ████ 2023 (**after 7 days**), who
noted that tooth #30 was decayed.  *Id.* at pp. 398 – 402.  Although Dr. Polanco noted
this was an initial examination, there is no charting of any teeth except for #30,
periodontal probing was not documented, bitewing x-rays were not taken, and there
was no treatment plan.  *Id.*

267.  ████ again submitted sick call requests on ████ 2023 for
"dental repair/work/extractions … please," *id.* at p. 117; and on ████ 2023,
for "dental appointment for extractions," *id.* at p. 215.  A nurse completed a Dental
Complaint form for ████ on ████ 2023, noting that he had a toothache
and indicating he should be referred to a dentist.  *Id.* at p. 72 – 74.[141]  He again
submitted a sick call request dated ████ 2023, received by the Jail on
████ 2023, requesting "dental extractions 2 bottom (left and right) molars
and top molar (right) and front fillings."  *Id.* at p. 378.  On ████ 2023, a nurse
completed a Dental Complaint form stating that ████ was experiencing a
toothache rated 7/10 on the pain scale and referring him to a dentist.  *Id.* at pp. 82 –
84.  He had not been seen by a dentist as of his ████ 2023 release date (**45 days
later**).

---

[140] ████████████████████████████████████████████████████████

[141] The Dental Complaint form is noted as "signed" by Dr. Freedland on ████
2023.

268.     ███████ was booked again in ██████ 2023 and submitted sick calls request dated ██████, 2023, and ██████, 2023 requesting extractions of two teeth.  Medical Records for ████████, pp. 29 – 30 of 48.  A nurse completed a Dental Complaint form on September 21, 2023, reporting that ██████ had a toothache rated 7/10 on the pain scale and prescribing acetaminophen and ibuprofen.  *Id.* at pp. 22 – 24.  He was seen by Dr. Polanco on ██████, 2023 (**after 9 days**), who determined that teeth #31 and #32 were decayed and required extraction.  *Id.* at pp. 42 – 47.  ██████ declined the extractions.  *Id.*

269.     ███████ was booked again in ██████ 2024.  He submitted a sick call request dated ██████, 2024, received by the Jail on ██████ 2024, asking for extractions.  Medical Records for ████████, p. 71 of 123.  He again submitted a sick call request dated ██████ 2024, received by the Jail on ██████ 2024, for "extractions 1 & 2, urgent, painful, infected, need attention please."  *Id.* at p. 75.  He was seen by Dr. Patel on ██████, 2024 (**10 days later**), who diagnosed teeth #30 and #31 with "distal decay approximating the nerve," as well as swelling, fistula, bone loss, and radiolucency.  *Id.* at pp. 81 – 86.  She noted that both teeth required extraction and prescribed analgesics and antibiotics in advance of the extraction.  *Id.*  She indicated that ██████ should be scheduled for a follow-up appointment.  *Id.*  ██████ was again seen by Dr. Patel on ██████ 2024, who on that date extracted #31.  *Id.* at pp. 87 – 92.

270.     ███████ again submitted sick call requests for extractions on ██████ 2024, and ██████, 2024.  *Id.* at pp. 73 – 74.  A nurse filled out a Dental Complaint form for ██████ on ██████, 2024, reporting that he had a toothache in tooth #30 rated 7/10 on the pain scale and noting that he had a pending dental sick call appointment.  *Id.* at pp. 46 – 48.  He was again seen by a nurse on ██████ 2024, at which time he again requested an extraction.  *Id.* at p. 121 (Progress Notes).  The nurse informed ██████ that he has a pending dental sick

call appointment. *Id.* A note on the sick call summary page of ▬▬▬▬ medical records indicates that his follow-up appointment for another extraction should be scheduled no earlier than February 20, 2024. *Id.* at 2. As of ▬▬▬▬ 2024 (the date of the last entry in the chart), there is no indication that ▬▬▬▬ had been seen by a dentist **after 18 days**.

271.   In summary, none of ▬▬▬▬ requests for urgent care were treated timely.

272.   ▬▬▬▬ submitted a sick call request on ▬▬▬▬ 2023, received by the Jail on ▬▬▬▬, 2023, reporting: "I believe I have an ab[s]ces[s] in my mouth. Want to see dental asap." Medical Records, rec'd by Plaintiffs' Counsel April 10, 2024, p. 623 of 771. He submitted a sick call request on ▬▬▬▬, 2024, received by the Jail on ▬▬▬▬ 2024, reporting: "I've complained about ab[s]cess in mouth already and nothing has transpired. I'm getting tired of tasting blood in my mouth all day. Please provide with medical attention." *Id.* at p. 613. A nurse completed a Dental Complaint form for ▬▬▬▬ on ▬▬▬▬, 2024, who noted that he had a toothache, dry socket, and swollen gums and that he was already scheduled for dental sick call. *Id.* at pp.375 – 377. He was again seen by a nurse on ▬▬▬▬ 2024, who again noted that he had already been scheduled for dental sick call. *Id.* at pp. 280 – 281. He was seen by a nurse practitioner on ▬▬▬▬, 2024, who prescribed an Amoxicillin and noted that a dental sick call appointment had been scheduled. *Id.* at p. 312. He was seen by a dental hygienist on ▬▬▬▬ 2024, who took an x-ray, noted Mr. ▬▬▬ stated that he "had abscess there [in his upper left] before but they gave me antibiotics a month ago and it swells on and off and when it does is painful," and suggested that teeth #5, #14, #30, and #31 needed to be evaluated for possible

---

142 ▬▬▬▬

cavities. *Id.* at pp. 339 – 344. She referred him to a dentist for an examination. *Id.* He was seen by Dr. Polanco on ██████ 2024 (**85 days after** ██████ **initial request**), who extracted tooth #14. *Id.* at pp. 347 – 352. There is no indication that Dr. Polanco examined any of ██████ other teeth, including the ones the hygienist indicated should be evaluated. *Id.*

273.  ██████ is documented as having refused an appointment with a dental hygienist on ██████, 2024, though the form is not signed by ██████ *Id.* at pp. 353 – 357, 622. In summary, while ██████ was seen several times by nursing staff, waiting 85 days to be examined by a dentist (and have the abscess treated) is simply unreasonable. That he was seen by a dental hygienist is irrelevant since the dental hygienist is unqualified to treat an abscess. In fact, all she could do was take an x-ray (which could have been done at ██████s appointment with a dentist).

274.  ██████ submitted a sick call requested to see a dentist on ██████, 2023, received by the Jail on ██████ 2023, stating: "my teeth front bridge is falling out." Medical Records, rec'd by Plaintiffs' counsel on April 9, 2024, at p. 315 of 840. He again submitted a sick call request on ██████ 2023, received by the Jail on ██████ 2023, stating: "Need my tooth pulled out. Right top side hurts bad, please help." *Id.* at p. 309. He was seen by Dr. Patel on ██████, 2023 (**after 23 days**), who identified teeth #12, #13, #14, and #32 for extraction. *Id.* at pp. 690 – 695. She noted that because ██████ was in so much pain, he should come back for the extractions on a different date and prescribed antibiotics and an analgesic. *Id.*

275.  A nurse filled out a Dental Complaint form for ██████ on ██████ 2023, noting that he had a toothache rated 10 out of 10 on the pain scale, and

referring him to a dentist.  *Id.* at pp. 202 – 204.  He was seen by a nurse practitioner on ████ 2023, who made an appointment for a dental follow-up.  *Id.* at p. 823. He was scheduled to see Dr. Polanco on ████ 2023 (**after 41 days**), which is he documented as having refused.  *Id.* at pp. 649 – 653.

276.   A nurse filled out a Dental Complaint form for ████ on ████ █, 2023, noting that he had a toothache, prescribing Ibuprofen, and scheduling a dental appointment.  *Id.* at pp. 192 – 194.  He was scheduled to see Dr. Polanco on ████ 2023 (**after 44 days**) but is documented as having refused.  *Id.* at pp. 261, 478 – 482.  However, the refusal form is not signed by ████.  *Id.*

277.   A nurse filled out a Dental Complaint form for ████ on ████ 2023, who noted that ████ had an abscess with signs of infection and referring him to see a dentist.  *Id.* at pp. 185 – 187.  A course of Clindamycin was prescribed.  *Id.* at p. 798.  A progress note dated ████ 2023 chart states that ████ complained:  "My jaw has been broken and my teeth are falling out and can't chew [] hurts my cap on teeth need ensure protine drinks losing weight." *Id.*  It was noted that a dental sick call appointment was pending.  *Id.*  He was seen by Dr. Patel on ████ 2024 (**after 28 days**), who marked teeth #6, #7, #8, #9, #10, and #11 for extraction and stated that she would place an offsite referral.  *Id.* at pp. 453 – 459.

278.   ████ submitted a sick call request on ████ 2024, received by the Jail on ████ 2024, reporting:  "I can't chew.  The infection on right side of mouth bottom back tooth has a bubble of pus[], it's getting bigger hurts bad can't eat.  Please help."  *Id.* at p. 253.  A nurse filled out a Dental Complaint form for ████ on ████, 2024, noting that he had swollen gums, prescribing acetaminophen, and referring him to dental sick call.  *Id.* at pp. 178 – 180.  He submitted a sick call request on ████ 2024, received by the Jail on ████ █, 2024, reporting:  "gums bleeding front cap still hanging off can't chew or swallow larg[e] food."  *Id.* at p. 247.

279.  He again submitted a sick call request on ████████, 2024, received by the Jail on ████████ 2024, stating:  "I can't chew … haven't eat[en] in 3 days.  Pleas it's to[o] hard and big for my mouth and teeth."  *Id.* at p. 245.  He had an outside dental appointment on ████████, 2024 (**45 days after Dr. Patel requested it**); the outside dentist submitted a treatment plan recommending a full maxillary denture.  *Id.* at pp. 240 – 244.

280.  ████████ was examined by Dr. Polanco on ████████ 2024 (**after 38 days**), who noted swelling around tooth #32 and noted that ████████ declined an extraction on that tooth.  *Id.* at pp. at 427 – 432.  Although Dr. Polanco noted that he was completing an "annual" examination, there is no documented periodontal probing.  *Id.* ████████ was seen by a dental hygienist on ████████ 2024, who performed a prophy on ████████ lower teeth.  *Id.* at pp. 411 – 416.  He was seen by Dr. Patel on ████████, 2024, who noted that she requested an offsite referral.  *Id.* at pp. 390 – 396.

281.  A nurse filled out a Dental Complaint form on behalf of ████████ on ████████ 2024, who noted that a denture adhesive problem was causing pain rated 10 out of 10 with swollen gums, bloody drainage, and signs of infection.  *Id.* at pp. 175 – 177.  He had an outside dentist appointment on ████████ 2024, who noted that ten of ████████ teeth required extraction and that he needed "upper immediate denture delivery."  *Id.* at pp. 219 – 220.

282.  He submitted a sick call request on ████████ 2024, received by the Jail on ████████ 2024, reporting that his "front cap" was "still hanging and infected."  *Id.* at p. 218.  He was seen by Dr. Patel on ████████ 2024 (**after 32 days**), who noted that she requested an offsite referral for the extractions recommended by the outside dentist.  *Id.* at pp. 344 – 349.  He returned to the outside dentist on ████████ 2024 for extractions and placement of the immediate denture.  *Id.* at p. 214.

283.  He submitted a sick call request on ████████ 2024, reporting:  "I'm in pain.  Need to see dentist my teeth [are] falling out.  The[y're] in pain.  Can't chew."

1    *Id.* at p. 211. He again submitted a sick call request on ████ 2024, received by

2    the Jail on ████ 6, 2024, stating: "Need to see dentist ASAP my front cap fall off.

3    Can't chew at all." *Id.* at p. 208. He was seen by a nurse on ████ 2024 who

4    prescribed an analgesic, requested a priority dental appointment, and took the photo

5    below. *Id.* at p. 786 (Progress Notes).



6

7

8

9

10

11

12

13

14

15

16

17    284.   As of ████ 2024—the day ████ records were pulled for

18    production to Plaintiffs—he had not received extractions or his dentures. A

19    progress note entered by a nurse that day states: "IP aware he already has expedited

20    denture order in[ ]place." *Id.*

21    285.   In summary, ████s seven appointments for urgent dental care

22    were consistently untimely. Dr. Patel placed an offsite referral on ████ 2024,

23    because ████ treatment was too complex for the Jail's dental service. It was

24    not until ████ 2024 (**after 72 days**) that an offsite provider's treatment plan for

25    an immediate denture was approved; however, there is no evidence in the chart that

26    the teeth were extracted and the denture inserted. From the date of referral to the

27    date ████ records were pulled, **98 days passed**—and ████ did not

28    have the extractions and denture.

286.  **11.**  ████████ submitted a sick call request on ████████ 2022, received by the Jail on ████████ 2022, stating that his filling came out and "[i]t hurts a lot!."  Medical Records at p. 499 of 575.  A nurse filled out a Dental Complaint form for ████████ on ████████ 2022, reporting that ████████ had a toothache and referring him to a dentist.  *Id.* at pp. 127 – 129.  He was examined by Dr. Polanco on ████████ 2022 (**after 17 days**), who identified swelling and pericoronitis around tooth #1.  *Id.* at pp. 366 – 371.  Although Dr. Polanco noted that he was conducting an initial examination, there is no documented periodontal probing or charting of teeth other than #1.  *Id.*

287.  He submitted a sick call request on ████, 2023, received by the Jail on ████ 2023, reporting:  "I have a[n] exposed tooth.  It cracked down the middle and broke off.  It hurts like hell.  I need it filled.  Thank you."  *Id.* at p. 464.  He submitted a sick call request on ████ 2023, received by the Jail on ████ 2023, reporting:  "I've been complaining about a broken tooth, this is my third request.  It broke off and the pup is exposed; it hurts like hell.  I need to be seen!"  *Id.* at p. 463.  He was examined by Dr. Polanco on ████ 2023 (**after 20 days**), who placed a temporary composite filling in tooth #27.  *Id.* at pp. 311 – 316.  He was scheduled to see Dr. Polanco on ████ 2023, but is documented as having refused.  *Id.* at pp. 306 – 310.

288.  In summary, urgent care appointments were untimely, nor is there any indication that Mr. ████ received adequate routine care.

289.  ████████ submitted a sick call request for "Dental treatment" on ████ 2022, received by the Jail on ████ 2022.  Medical Records for ████



144 ███████████████████████████████████████████

145 ███████████████████████████████████████████

1  ████████ at p. 415 of 961.  A nurse filled out a Dental Complaint form for

2  ████████ on ████████ 2022, noting that he had a toothache with a foul

3  odor, prescribing acetaminophen and ibuprofen, and referring him to a dentist.  *Id.* at

4  pp. 247 – 249.[146]  He submitted a sick call request on ████████ 2022, reporting

5  pain in his "broken teeth & nerve expose[d]."  *Id.* at p. 400.  A nurse filled out a

6  Dental Complaint form for Mr. ████████ on ████████ 2022, noting that he had a

7  toothache rated 10 out of 10 on the pain scale, and prescribing acetaminophen and

8  ibuprofen.  *Id.* at pp. 242 - 244.[147]  He was seen by Dr. Patel on ████████ 2022

9  (**after 158 days**), who diagnosed tooth #31 with decay, fracture, pulpitis, and

10  swelling and prescribed an antibiotic and analgesic in advance of an extraction.  *Id.*

11  at pp.  797 – 801.

12      290.   He submitted a sick call request on ████████ 2022, received by the

13  Jail on ████████ 2022, stating:  "in real pain with my dental."  *Id.* at p. 393.  A

14  nurse filled out a Dental Complaint form for ████████ on ████████ 2022,

15  noting that he had a toothache rated 8 out of 10 on the pain scale, and referring him

16  to a dentist.  *Id.* at pp. 237 - 239.[148]  He submitted another sick call request on

17  ████████ 2022, received by the Jail on ████████ 2022, asking to see a

18  dentist.  *Id.* at p. 378.  He was examined by Dr. Polanco on ████████ 2022

19  (**after 24 days**), who extracted tooth #31.  *Id.* at pp. 788 – 792.

20      291.   He submitted a grievance regarding "dental pain" on ████████ 2023,

21  received by the Jail on ████████ 2023; the Jail responded by checking "This

22  submission is not a grievance" box.  *Id.* at p. 332.  He was scheduled to see

23

24  _____

[146] The Dental Complaint form is noted as "signed" by Dr. Freedland on ████████

25  █, 2022.

26  [147] The Dental Complaint form is noted as "signed" by Dr. Molina on ████████
   2022.

27  [148] The Dental Complaint form is noted as "signed" by Dr. Molina on ████████
28  2022.

1  Dr. Polanco on ███████ 2023 (**after 12 days**) but declined the appointment. *Id.*

2  at p. 331; pp. 738 – 742.

3       292.  ███████ submitted a sick call request for dental care on ███████

4  2023, received by the Jail on ███████ 2023. *Id.* at p. 316. A nurse filled out a

5  Dental Complaint form for Mr. ███████ on ███████ 2023, noting that he had a

6  toothache rated 10 out of 10 on the pain scale. *Id.* at pp. 227 - 229. He was

7  scheduled to be seen by Dr. Polanco on ███████ 2023 (**after 113 days**) but

8  declined the appointment. *Id.* at pp. 546 – 550.

9       293.  ███████ submitted a sick call request for "dental work" on

10  November 18, 2023, received by the Jail on ███████ 2023. *Id.* at p. 264. A

11  nurse filled out a Dental Complaint form for ███████ on ███████ 2023,

12  noting that he had a toothache rated 10 out of 10 on the pain scale with "multiple

13  missing teeth and cavities 2/ some teeth broken to gumline," and prescribing

14  ibuprofen. *Id.* at pp. 224 - 226. He was seen by Dr. Polanco on ███████ 2024

15  (**after 72 days**), who noted that teeth #20 and #21 were decayed. *Id.* at pp. 431 –

16  436. ███████ is noted as having declined extractions of those teeth. *Id.*

17       294.  In summary, all five urgent care appointments were untimely, with a

18  median wait time of 72 days. In addition, there is no evidence of ███████

19  receiving any routine care.

20

21

22

23

24

25

26

27

28

# Exhibit D

# EXHIBIT D: COMMON DENTAL CONDITIONS

### A. Odontogenic Pain (Toothache)

1. Managing patients' pain is a standard part of dental practice.[1] Dentists treat odontogenic pain not only by managing it through the appropriate short-term use of analgesics, *i.e.*, pain relievers such as Tylenol, Ibuprofen, and Naproxen, but also by diagnosing the underlying cause of that pain and expediting its treatment.

2. Among the possible non-traumatic causes of tooth pain are (1) tooth fractures (often, a tooth that has been weakened splits during normal chewing); (2) pulpitis; (3) caries (decay) extending through the enamel into dentin; (4) dental (periapical or periodontal) abscess; and (5) cellulitis (a diffuse inflammation of the connective tissue caused by a spreading bacterial infection just below the skin surface). The most common of these underlying causes are discussed in more detail below.

### B. Dental Caries (Tooth Decay or Cavity)

3. Dental caries is an infectious disease characterized by progressive destruction of tooth substance, beginning on the outer (enamel) surface or the exposed root surface.

4. Because caries is a progressive disease, the timeliness of diagnosis and treatment is important. Left untreated, tooth decay can progress, causing pain and leading to tooth loss, localized infection (dental abscess), and, occasionally, systemic infection. The more time that passes before a tooth is treated (*i.e.*, filled), the greater the likelihood that decay will progress, destroying tooth structure, often resulting in a guarded prognosis[2] or resulting in an abscess that requires a root canal

---

[1] Shulman JD, Sauter DT (2012). Treatment of odontogenic pain in a correctional setting. *Journal of Correctional Health Care* 18:1, 58-65, p. 63 ("Shulman and Sauter").

[2] Such teeth may be asymptomatic or mildly symptomatic initially and several years later develop irreversible pulpitis and become symptomatic.

1  or extraction.  Even a tooth that is initially classified as requiring routine (as

2  opposed to urgent) treatment will typically not remain asymptomatic indefinitely.

3      5.     Caries is diagnosed visually and radiographically (*i.e.*, with an x-ray).

4  The visual appearance ranges from a "white spot" on the enamel (outer layer of the

5  tooth) to a gaping hole in the tooth with black staining characteristic of end-stage

6  caries.  Figure 1 is a representation of how different stages of caries may appear on

7  an intraoral radiograph.

8  **Figure 1.  Interproximal Decay as Seen on a Radiograph**

9  **A. Incipient**          **B. Moderate /**          **C. Severe**
                              **Advanced**



15     6.     An incipient lesion (Figure 1A) is a lesion that affects only the enamel.

16 Some incipient lesions—particularly those between the teeth, as opposed to those on

17 the biting (or "occlusal") surface of the tooth—may not be readily identified

18 clinically because there is no "cavity" in the tooth and too little tooth has been

19 affected to be seen on a radiograph.  If a lesion is not yet visible by radiograph, the

20 lesion has the potential to re-mineralize, reversing the decay process.  While such a

21 lesion may re-mineralize on its own, any such lesion that can be identified should be

22 monitored.  Treatment of incipient lesions is part of routine dental care.

23     7.     Once the lesion reaches the dentin—a tissue that is less resistant to

24 decay than enamel (early Figure 1B)—the patient should be scheduled for treatment.

25 Caries that has just reached the dentin is treated by filling the tooth.

26     8.     Figure 1C shows an advanced lesion that is through the dentin and near

27 the pulp.  When decay reaches the pulp, the tooth will require either endodontic

28 (root canal) treatment or extraction.  Caries that is radiographically in or beyond the

1  dentin—as opposed to caries that has only just reached the dentin from the

2  enamel—should receive prioritized treatment to prevent deterioration to the point

3  that the only alternatives will be extraction or endodontic treatment.

4      9.    The speed of caries progression—from an incipient lesion requiring

5  only routine treatment to an advanced lesion requiring urgent care—is a function of

6  the interaction of risk factors, including (1) the presence and virulence of cariogenic

7  bacteria in the dental plaque; (2) the susceptibility of the tooth; (3) the presence of

8  sugars and fermentable carbohydrates in the diet; and (4) time.[3]

9      10.   Of particular relevance to the incarcerated population, hyposalivation—

10 often described as "dry mouth" or xerostomia—is a risk factor for caries

11 progression.  *Id*.  Hyposalivation is a side-effect of many drug classes, such as

12 antidepressants, anticonvulsants, anxiolytics, antipsychotics, anticholinergics, and

13 alpha agonists.[4]  The risk of hyposalivation is even higher in patients who use

14 multiple of these medications; a phenomenon known as polypharmacy.  *Id*.

15 Because many incarcerated people are prescribed one or more of drugs in these

16 classes, the incarcerated population is particularly vulnerable to rapid caries

17 progression.  *Id*.

18     11.   To summarize, because decay through the dentin generally progresses

19 if untreated, untimely treatment—even of asymptomatic decayed teeth—could put

20 incarcerated people at risk of preventable pain, increased tooth morbidity (making it

21 more difficult to restore), or tooth mortality (tooth loss).  As a general matter, the

22 rate of decay progression is highly variable and is dependent on individual factors,

23

24 _____

25 [3] Shulman JD, Cappelli DP (2008). Epidemiology of Dental Caries. In Cappelli DP, Mosley C, eds. Prevention in Clinical Oral Health Care. Elsevier, p. 3-4 ("Shulman and Cappelli").

26

27 [4] Swager LWM and Morgen SK (2011). Psychotropic-induced dry mouth: Don't overlook this potentially serious side effect. *Current Psychiatry* 10:12 54-58, p. 54 ("The risk of salivary hypofunction increases with polypharmacy and may be especially likely when ≥3 drugs are taken per day").

28

1    some of which are described above.  From my experience, it is my opinion that, in a

2    large population such as that of the Jail, many individuals subjected to delayed

3    treatment for caries will suffer loss of tooth structure (tooth morbidity) as well as

4    tooth loss (tooth mortality).

5        **C.    Periodontal Disease[5]**

6        12.    Periodontal disease is an inflammatory disease of the supporting tissues

7    of the teeth, *i.e.*, the bone.  Periodontal disease is highly prevalent in the adult

8    population[6]; moderate to severe periodontal disease is even higher in the

9    incarcerated population than in the free population.[7]  Although periodontal disease

10   is typically painless, it can have serious consequences if untreated, including the

11   progressive destruction of the periodontal ligament and the alveolar bone with

12   pocket formation, gingival recession, or both, and resulting tooth loss.[8]  Moreover, a

13   periodontal abscess can spread and cause a systemic infection, which may ultimately

14   require emergency hospitalization.  Periodontal disease is the most common cause

15   of tooth loss among adults.[9]

16       13.    Recent studies have demonstrated links between periodontal disease

17

18   [5] While there are several periodontal diseases, in this Report I use it (as most
19   dentists do) as a synonym for periodontitis.

20   [6] Eke PI, Dye BA, Wei L, *et al.* Update on Prevalence of Periodontitis in Adults in
     the United States: NHANES 2009 – 2012. *J Periodontol*. 2015 May; 86(5): 611–
     622, 613 (44.7% of adults 30 years and older in the United States had periodontitis
21   during 2011 to 2012).

22   [7] Makrides *et al.*, p. 566 (Incarcerated populations present with more decay and
     missing teeth, and more periodontal disease, than do non-prison populations); Clare
23   JH (1998). Survey, Comparison, and Analysis of Caries, Periodontal Pocket Depth,
     and Urgent Treatment Needs in a Sample of Adult Felon Admissions, 1996
24   ("Clare").

25   [8] Cappelli DP, Shulman JD. Epidemiology of Periodontal Disease (2008). In
     Cappelli DP, Mosley C, eds. Prevention in Clinical Oral Health Care. Elsevier, p.
26   14. ("Cappelli and Shulman").

27   [9] National Institute of Dental and Craniofacial Research. Periodontal (Gum)
     Disease. https://www.nidcr.nih.gov/research/data-statistics/periodontal-disease.
28   Viewed May 13, 2024.

1  and systemic conditions such as Alzheimer's disease,[10] stroke,[11] atherosclerotic

2  cardiovascular disease,[12] type 2 diabetes, metabolic syndrome, rheumatoid arthritis,

3  adverse pregnancy outcomes, Alzheimer's disease, and respiratory diseases.[13]

4  These associations make diagnosis and treatment of periodontal disease important

5  not only for oral health but also for systemic health as well.

6       14.    Periodontal disease, including its extent and severity, is diagnosed by

7  periodontal probing. The probe measures the depth of the periodontal pocket or

8  probing depth in millimeters. These measurements are recorded by dentists and

9  dental hygienists to establish a baseline and to assess disease progression over time.

10  Figure 2 compares the normal periodontium to that which has been damaged by

11  periodontal disease. Note that periodontal probe is inserted in a space created where

12  the periodontal ligament and alveolar bone were destroyed.

13

14

15

16

17

18

___

19  [10] Karmer AR, Craig RG, Neiderman R et al. Periodontal disease as a possible cause
20  for Alzheimer's disease. Periodontology 2000, 2020; 83(1): 242-271.

21  [11] Baniulyte G, Piela K, Culshaw S. How strong is the link between periodontitis
    and stroke? Evidence Based Dentistry. 2021; 22(1):10-11.

22  [12] Friedewald VE, Kornman KS, Beck JD, Genco R, Goldfine,A, Libby P,
23  Offenbacher S, Ridker PM, Van Dyke TE, Roberts WC (2009). The American
    Journal of Cardiology and Journal of Periodontology Editors' Consensus:
    Periodontitis and Atherosclerotic Cardiovascular Disease. *Journal of*
24  *Periodontology*; 80:7, 2009, pp. 1021-1032; *see also* Genco RJ and Sanz M. Clinical
    and public health implications of periodontal and systemic diseases: An overview.
25  *Periodontology 2000*. 2020;83:7–13.

26  [13] Herrera D, Sanz M, Shapira L, Brotons C, Chapple I, Frese T, et al. Association
27  between periodontal diseases and cardiovascular diseases, diabetes, and respiratory
    diseases: Consensus report of the Joint Workshop by the European Federation of
    Periodontology (EFP) and the European arm of the World Organization of Family
28  Doctors (WONCA Europe). Journal of Clinical Periodontology. 2023;50819-841.

**Figure 2. Normal and Diseased Periodontium**



15.     In addition to measuring probing depth, the classification of periodontal disease is determined through a complete clinical examination and the measurement of the clinical attachment level around each tooth.  The clinical attachment level is calculated by measuring the probing pocket depth and the recession measurement from the cementoenamel junction ("CEJ") as a fixed reference point (Figure 3). Destructive periodontal disease is traditionally defined clinically by increased loss of attachment as measured from the CEJ to the base of the pocket.  The measure of loss of attachment is used because longitudinal comparison over time is more reliable than other methods.  Increasing probing depths and clinical attachment loss continue to be used to define periodontal disease.  Cappelli and Shulman, p. 14.

16.     **Figure 3. Measuring Clinical Attachment Level**



17.     Early and moderate stage periodontal disease can be treated by either a

dentist or a dental hygienist.  Treatment includes controlling dental plaque through scaling and root planing to remove calcified material (calculus or tartar from the root of the tooth).  The scaling and root planing (root smoothing) procedure required to remove calcified material from the root of the tooth can be painful and often requires a topical or local anesthetic, which not all dental hygienists provide.[14] However, later stages of periodontal disease may require surgical procedures, which would be performed by a general practitioner dentist or periodontist.

18.    To summarize, periodontal disease is the most common cause of tooth loss among adults.  If untreated, it can result in abscess formation that may not only result in tooth loss, but also jeopardize systemic health.  It is diagnosed primarily through periodontal probing in conjunction with intraoral radiographs.  At an early or moderate stage, periodontal disease can be treated by a dentist or dental hygienist, though later stage disease may require periodontal surgery.

**D.    Gingivitis**

19.    Gingivitis is a reversible inflammation of gum tissue that does not result in the loss of periodontal structures.  A gingivitis[15] case can be simply, objectively, and accurately diagnosed and graded using a bleeding on probing score, assessed as the proportion of bleeding sites (dichotomous yes/no evaluation).[16]

20.    Gingivitis can generally be treated by a dental hygienist with cleaning (oral prophylaxis) and by educating the patient on proper brushing and flossing technique.

---

[14] Hygienists may not administer local anesthetic because they have not been trained to do so, their licensure does not permit it, they are constrained by local policy, or they are not comfortable performing the procedure.

[15] This discussion is limited to plaque-biofilm induced gingivitis.

[16] Chapple ILC, Mealey BL, Van Dyke TE, Bartold PM, et al. Periodontal health and gingival diseases and conditions on an intact and a reduced periodontium: Consensus report of workgroup 1 of the 2017 World Workshop on the Classification of Periodontal and Peri-Implant Diseases and Conditions. J Clin Periodontology. 2018; 45(Suppl 20): S68–S77, p. S71.

### E.    Pulpitis

21.    Pulpitis is an inflammation of the living tissue within the tooth.  Left untreated, pulpitis can range from cause sensitivity to cold foods to severe throbbing pain that is characteristic of a toothache.

22.    Pulpitis can be diagnosed by the patient's symptoms such as sensitivity to cold or hot liquids, pain that persists after the hot or cold liquid is removed, pain on chewing, painful throbbing, and pain that prevents sleep or concentration.  In addition, a dentist can test tooth vitality (that is, whether the living tissue within the tooth has died) using electric current or a piece of ice.

23.    Some pulpitis cases are reversible with dental treatment.  In those cases, the pulpitis will resolve when the source of irritation is treated or removed.  Typically, reversible pulpitis is attributed to minor tooth fractures, caries (decay), defective or missing fillings, and occlusal (bite) discrepancies and can be treated with analgesics and a dental procedure.  The dental procedures may include removing decay and inserting a new or replacement filling, adjusting the bite, and applying desensitizing agents.  Shulman and Sauter, p. 63.  If those procedures are not timely, however, the inflamed living tissue inside the tooth (the pulp) may swell and circulation is compromised.  The tooth may exhibit thermal sensitivity and its prognosis may become guarded—that is, the pulpitis may become irreversible, making the tooth unsalvageable without endodontic (root canal) treatment.[17]

24.    A tooth with irreversible pulpitis has a partially vital pulp with inflammation and degeneration that is not expected to improve.  Once pulp death (necrosis) occurs, the tissue is vulnerable to attack by bacteria, leading to infection at the apex of the tooth.  Eventually this infection spreads by resorbing bone and supporting structures.  *Id*., pp. 63-64.

25.    To summarize, early pulpitis can generally be reversed with prompt

---

[17] This process may take several years.

treatment to remove decay, replace a filling, adjust the bite to reduce the biting force on the affected tooth.  If treatment is delayed, the pulpitis can become irreversible leading to a toothache.  In a case of irreversible pulpitis, the tooth will require extraction or endodontic (root canal) treatment.

### F.    Lost Fillings or Crowns

26.    It is not uncommon for fillings to fracture and fall out in whole or in part due to wear or underlying decay.  Any underlying decay should be removed expeditiously because it is generally within the dentin and close to the pulp.  Decay near the pulp may lead to irreversible pulpitis and can jeopardize the prognosis of the tooth.

27.    When a filling falls out or fractures, it must be replaced in a timely manner to protect the pulp of the tooth from the effects of dentinal sensitivity, which is pain brought on by such stimulating factors as cold and sweet.[18]  PDQ Endodontics, p. 1-2.  The longer dentinal sensitivity persists, the greater the likelihood that what initially may have been a reversible condition will develop into irreversible pulpitis requiring root canal or extraction.  The structural integrity of the tooth also may be impaired making it vulnerable to fracturing during normal chewing.  Consequently, even a tooth in which the pulp is not exposed may develop irreversible pulpitis if the filing is not timely replaced or repaired.

### G.    Fractured Teeth

28.    Fractures of the teeth are often the result of trauma and can be difficult to diagnose.  Non-vital teeth—*i.e.*, teeth that no longer receive blood flow[19]—are more susceptible to fracture than vital teeth due to the loss of their blood supply

---

[18] Ingle JI. PDQ Endodontics, 2d ed. (2009); People's Medical Publishing House-USA. Shelton CT  06484.

[19] This can happen when the nerves in the tooth's pulp are damaged or die, preventing blood from reaching the tooth and making the tooth susceptible to bacterial infection, which can result in an abscess.  Tooth decay and injury are both causes of non-vital teeth.

1  (pulp).  Moreover, because they are "dead," there is no pain associated with the

2  fracture.  The broken tooth, however, may become an irritant to the soft tissues.

3      29.    Fractured teeth[20] are generally classified into three categories:

4  (1) enamel only, (2) enamel into dentin, and (3) fractures involving the pulp.  While

5  most fractures can be diagnosed visually, an x-ray is generally required to identify a

6  root fracture.

7      30.    Fractures that extend only into the enamel are usually asymptomatic

8  and do not require immediate dental treatment unless the tooth is an irritant to the

9  lips, tongue, or cheeks.  In contrast, fractures that extend into the dentin are usually

10  symptomatic, causing tenderness, reaction to thermal changes, and pain.  While not

11  an emergency, they should be treated promptly to relieve the symptoms.  The

12  greater the area of exposed dentin, the more urgent the treatment need because the

13  pulp can become necrotic, resulting in infection.  Fractures that extend into vital

14  pulp often cause severe pain and are considered an emergency.  Bleeding from the

15  pulp can be seen in some cases, usually as a small pinpoint of red in the dentin.

16  These fractures should be treated as soon as possible.

17      31.    To summarize, the longer the pulp of the tooth is exposed to the oral

18  environment (from a lost filling, fractured tooth, or a crown that has fallen off), the

19  greater the likelihood that the pulpitis will become irreversible and absent

20  endodontic treatment, the tooth will require extraction.  This places a premium on

21  timely diagnosis and treatment.

22  **H.    Chewing Difficulty**

23      32.    Chewing difficulty can be caused by pain associated with decayed,

24  broken-down, or infected teeth.  This can be addressed by timely repair or extraction

25  of the problematic teeth.

26

27

28  [20] In my experience monitoring prison dental care, prisoners will often complain of "chipped teeth" when they have fractured teeth.

33.     Another type of chewing difficulty is the result of an inadequate number of opposing teeth.[21]  This can be addressed by fabricating prosthodontic appliances (*i.e.*, dentures).[22]  Tooth loss is not totally compensated for by removable prostheses since the masticatory efficiency of a denture wearer does not match that of a fully dentate person.[23]  However, without dentures, people with impaired mastication may attempt to cope with feeding by either adapting their food choices or swallowing coarse particles, which in turns create digestive problems.  The first type of behavior is known to induce imbalance in dietary intake, and the second may result in decreased bioavailability of nutrients and gastrointestinal disturbances.  In both situations, the impaired dietary or nutrient intake may increase nutrition-induced disease risks.[24]

34.     Tooth loss has been associated with changes in food preference and nutritional deficiency although the evidence that people whose mastication is impaired by tooth loss are more likely to be underweight is conflicting.[25]  Individuals with limited chewing ability are at risk for nutrition problems that have different physical manifestations.  First, chewing may be so painful that an individual has an inadequate caloric intake, as evidenced by weight loss and reduced

---

[21] Opposing teeth are teeth that are positioned so that they can crush or tear food between them. In the absence of opposing teeth, food is crushed against soft tissue – which can be a source of pain.

[22] While prescribing a soft diet may be a short-term solution until the denture is fabricated, edentulousness can be a serious problem since it reduces chewing performance and affects food choice.

[23] While the chewing efficiency of removable dentures is less than that of natural teeth, dentures 1) do improve chewing efficiency and 2) protect the soft tissue from abrasion from food during chewing.

[24] N'Gom PI, Woda A. Influence of impaired mastication on nutrition. *Journal of Prosthetic Dentistry*; 87:6; 2002; 667-673, p. 667 ("N'Gom and Woda").

[25] Sheiham A, Steele JG, Marcenes W, Finch S, Walla AWG (2002). The relationship between oral health status and Body Mass Index among older people: a national survey of older people in Great Britain. *British Dental Journal*; 192:12 703-706, p. 703 ("Sheiham et al. 2002").

1  Body Mass Index ("BMI").  Second, people with a compromised dental status

2  may—to the extent they have the option, which is likely to be limited while

3  incarcerated—avoid hard-to-chew foods and instead choose processed foods,

4  favoring the absorption of cholesterol and saturated fatty acids, or may prefer simple

5  carbohydrate-rich diets that are high in calories but low in dietary fiber, vitamins,

6  and protein, thus leading to weight gain.[26]  In this case, weight gain would be

7  ***pathologic*** and not dispositive of the absence of chewing difficulty.  While one

8  might naively assume that weight gain necessarily is evidence of an absence of

9  chewing problems, people generally gain weight during incarceration.[27]  Whether

10  this is due to lack of physical activity, the effects of medication, stress, or

11  commissary purchases[28] is unresolved.

12       35.     Many drugs commonly prescribed for chronic disease have weight gain

13  as an adverse effect[29] and many are prescribed to prisoners.  Weight gain can arise

14  due to differing mechanisms, such as increased appetite (*e.g.*, corticosteroids) or

15  reduced metabolic rate (*e.g.*, beta-adrenoceptor blockers).  *Id.* p. 396.  A systemic

16  review of drug clinical trials found that drug classes such as used to treat Type 2

17  diabetes (insulin, sulphonylureas, thyiazolinidiones), hypertension (beta-blockers),

---

[26] Sánchez-Ayala A, Campanha NH, Garcia RCMR (2013). Relationship between body fat and masticatory function. *Journal of Prosthodontics* 22: 120–125. p. 120 ("Sánchez-Ayala *et al.*")

[27] Gates ML and Bradford RK (2015). The Impact of Incarceration on Obesity: Are Prisoners with Chronic Diseases Becoming Overweight and Obese during Their Confinement? *Journal of Obesity*; Volume 2015, p. 4, Article ID 532468 ("Gates and Bradford").

[28] Food purchases from the commissary may be only an approximation of what offenders consume instead of, or in addition to, their institutional meals. Offenders sometimes engage in proxy purchases for other offenders or trade commissary goods as a form of currency. Generally, goods from the commissaries include food items, many of which are processed high sodium and high fat content foods.  Gates and Bradford, p. 6.

[29] Leslie WS, Hankey CR, Lean MEJ. Weight gain as an adverse effect of some commonly prescribed drugs: a systematic review. *Quarterly Journal of Medicine* 2007; 100:395–404, p. 395. ("Leslie *et al.*")

1   inflammatory disease (corticosteroids), psychosis (antipsychotics), epilepsy,

2   depression (tricyclic antidepressants), and bipolar disorder (bipolar disorder

3   (Valproate, Lithium) are associated with weight gain.  *Id*.

4          36.     To summarize, the association between chewing difficulty and weight

5   loss is not clearly established and there is a body of studies explained by plausible

6   scientific mechanisms that support the association between chewing difficulty and

7   (pathologic) weight loss or gain.  Moreover, the literature suggests that weight gain

8   may occur irrespective of chewing difficulties.  Consequently, that an incarcerated

9   person has not lost weight or, in fact, has gained weight does not necessarily rule out

10  chewing difficulties.  The fact that an incarcerated person is experiencing pain or

11  deprivation from their inability to chew is reason alone to provide dental care.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

1  GAY C. GRUNFELD – 121944
   VAN SWEARINGEN – 259809
2  MICHAEL FREEDMAN – 262850
   ERIC MONEK ANDERSON – 320934
3  HANNAH M. CHARTOFF – 324529
   BEN HOLSTON – 341439
4  ROSEN BIEN
   GALVAN & GRUNFELD LLP
5  101 Mission Street, Sixth Floor
   San Francisco, California  94105-1738
6  Telephone:  (415) 433-6830
   Facsimile:   (415) 433-7104
7  ggrunfeld@rbgg.com
   vswearingen@rbgg.com
8  mfreedman@rbgg.com
   eanderson@rbgg.com
9  hchartoff@rbgg.com
   bholston@rbgg.com
10
   AARON J. FISCHER – 247391
11 LAW OFFICE OF
   AARON J. FISCHER
12 1400 Shattuck Square Suite 12 - #344
   Berkeley, California  94709
13 Telephone:  (510) 806-7366
   Facsimile:   (510) 694-6314
14 ajf@aaronfischerlaw.com

15 Attorneys for Plaintiffs and the
   Certified Class and Subclasses

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

16

17                    UNITED STATES DISTRICT COURT

18                  SOUTHERN DISTRICT OF CALIFORNIA

19  DARRYL DUNSMORE, ANDREE
    ANDRADE, ERNEST ARCHULETA,
20  JAMES CLARK, ANTHONY EDWARDS,
    REANNA LEVY, JOSUE LOPEZ,
21  CHRISTOPHER NORWOOD, JESSE
    OLIVARES, GUSTAVO SEPULVEDA,
22  MICHAEL TAYLOR, and LAURA
    ZOERNER, on behalf of themselves and all
23  others similarly situated,
                        Plaintiffs,
24
             v.
25  SAN DIEGO COUNTY SHERIFF'S
    DEPARTMENT, COUNTY OF SAN
26  DIEGO, SAN DIEGO COUNTY
    PROBATION DEPARTMENT, and DOES
27  1 to 20, inclusive,
                        Defendants.
28

Case No. 3:20-cv-00406-AJB-DDL

**REBUTTAL EXPERT REPORT OF JAY SHULMAN**

Judge:       Hon. Anthony J. Battaglia
Magistrate: Hon. David D. Leshner

Trial Date: None Set

1

# TABLE OF CONTENTS

**Page**

2

3  I.  BACKGROUND ............................................................. 1

4  II.  METHODOLOGY ......................................................... 2

5  III.  STAFFING ................................................................... 4

6  IV.  CHART REVIEWS AND ACCESS TO CARE ............... 8

7  V.  DENTAL SERVICES PROVIDED ............................... 10

8  VI.  PHYSICAL SPACE ..................................................... 10

9  VII.  QUALITY MONITORING ........................................... 11

10  VIII.  RECORDS MANAGEMENT ........................................ 13

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    BACKGROUND

1.    I have been asked by Plaintiff's Counsel to prepare this Rebuttal Expert Report.  Specifically, I was asked to review and analyze the opinions and conclusions expressed in the August 21, 2024 Expert Report of Dr. Scott Reinecke (hereinafter, "Reinecke Report") to decide if the Reinecke Report caused a change in my opinions and conclusions and to provide a response to the Reinecke Report. A list of all documents that I reviewed and relied on to draft this Rebuttal Expert Report and that are not listed in my initial report is attached hereto as **Exhibit A**.

2.    I have reviewed and analyzed the Reinecke Report, and it does not change any of the opinions that I expressed in my initial report dated August 20, 2024 (hereinafter, "Shulman Report").  In the Shulman Report, I opined that the consistently inadequate dental care documented in the records I reviewed is attributable to systemic problems caused by inadequate dentist staffing and inadequate policies and procedures in San Diego County's dental care program as administered by NaphCare.  Specifically, San Diego County's and NaphCare's policies and practices show lack of routine care and inadequate diagnosis and treatment of dental conditions, all of which combine into a system that fails to adequately identify, or properly and timely treat, dental issues experienced by incarcerated people, the plaintiff class in this case.  San Diego's and NaphCare's policies on these issues are in many cases themselves below the standard of care. These failures place all incarcerated people at risk not only of preventable pain, but also of advanced tooth decay, advanced periodontal disease, and unnecessary loss of teeth.  The inadequacies in dental care experienced by the plaintiffs are typical of the risk of inadequate dental care for all incarcerated people.  Consequently, all people incarcerated in San Diego are at risk for preventable pain and tooth morbidity.

3.    As explained in more detail below, the Reinecke Report does not meaningfully rebut or alter my opinions.  In fact, the records reviewed by Dr.

Reinecke, summarized in Appendix C to the Reinecke Report and in Exhibit B to this Rebuttal Report, reinforce my opinions.

4.    The opinions expressed in this report are based on information that has been made available to me.  Should new information become available to me in the future, I reserve the right to analyze that information and revise my opinions and/or conclusions.

## II.    METHODOLOGY

5.    Dr. Reinecke stated that he selected for review "randomly selected dental records, taken from a pool of all relevant facilities …."  Reinecke Report at 3. He described his record selection process as follows:

> A random review of 10 dental patient records from a pool of 27 was performed across all SDSO facilities.  This sampling approach is likely to have yielded a reasonable representative sample, according to Dr. Jacques Baillargeon, the Director of Epidemiology and Outcomes Research in the Division of Correctional Managed Care and a Senior Epidemiologist in the Office of Biostatistics at UTMB.  Consultation with an epidemiologist regarding sampling methodology is relied upon by experts.

*Id*. at 4.

6.    As a general matter, I agree that a review of randomly selected records of incarcerated people who requested dental care across all jail facilities is an appropriate mechanism for analyzing a jail's dental program.  However, the set of records that Dr. Reinecke reviewed does not, in fact, appear to be randomly selected from across all jail facilities.

7.    Appendix C of the Reinecke Report lists and summarizes the 30 charts that Dr. Reinecke reviewed: 13 are from George Bailey Detention Facility; 2 are from Rock Mountain Detention Facility; 12 are from Central Jail; 2 are from Vista Detention Facility.  One of the charts is marked as being from an "unknown" facility.[1]  This chart selection is concerning for at least two reasons, both of which

---

[1] It is perplexing that he could not identify the facility from which the record was

1  call into doubt the quality of Dr. Reinecke's analysis.

2  　　　8.　　First, no charts from the Jail's women's facility, Las Colinas Detention
3  and Reentry Facility ("Las Colinas"), were reviewed.  Las Colinas comprises 511
4  (13%) of the 3,957 incarcerated persons in custody as of August 24, 2024.[2]  That
5  women were excluded from Dr. Reinecke's "random" sample calls into question the
6  validity of his sampling method and the reliability of any conclusions he makes
7  based on the sample.  It is hard to believe a sample that omits the one female
8  institution can be (according to Dr. Reinecke's epidemiology consultant) "a
9  reasonable representative sample."  *Id*. at 4.  I disagree that such a sample is
10 "representative."

11 　　　9.　　Second, Dr. Reinecke's report includes multiple inconsistent
12 descriptions of the sampling process.  In particular, the report states that "10 dental
13 patient records from a pool of 27 was performed across all SDSO facilities," *id.* at 4,
14 yet only 30 records are summarized in Appendix C.  Given that there are 7 facilities
15 in the Jail, it is not clear how only 30 records can represent 10 records from each
16 facility.  And, as noted above, Appendix C contains different numbers of records
17 from each Jail facility; it does not include exactly 10 records from any individual
18 facility.  As a further example, the report described the records as having been taken
19 from "a pool of all **relevant** facilities," *id*. at 3 (emphasis added), and, at a later
20 point, as being from "across **all** SDSO facilities," *id*. at 4 (emphasis added).
21 Moreover, the report uses the phrases, "random review" and "review of a random
22 selection of dental records" (*id*. at 4); however, it also states that, "A random
23 selection of IP [incarcerated person] charts was **requested** …."  *Id*. at 2 (emphasis
24 added).  In other words, it is not clear whether Dr. Reinecke himself specified the

25

26 ────────────────
   selected since he claimed to have selected the records from "pools."

27 [2] San Diego Sheriff's Office Daily Population Report, Date: Saturday, August 24,
28 2024.  Visited August 24, 2024 at San Diego County Sheriff's Office (sdsheriff.net).

1   randomization process for selecting charts, or whether he relied on others to do the
2   selection.

3       10.    As described in the Shulman Report (at ¶¶ 52-53), I was denied the
4   charts I selected and was instead forced to accept Defendants' representation that the
5   charts provided to me were in fact randomly selected.  In addition, I did not receive
6   access to the charts that Dr. Reinecke reviewed until September 20, 2024.  Since
7   receiving them, I have worked diligently to review all these charts to meet the
8   November 1 rebuttal report deadline.

9       11.    In summary, Dr. Reinecke's sample was inadequate because it omitted
10  women and because of inconsistencies in the description of the sampling process.
11  These methodological flaws make me skeptical of Dr. Reinecke's conclusions and
12  undermine the value of his opinions.

13  **III.    STAFFING**

14      12.    As I stated in my report, the February 2024 NaphCare staffing matrix
15  included 40 dentist hours per week which yields an approximate incarcerated
16  person-to-dentist ratio of 3,936:1.  Shulman Report at ¶¶ 182-183.  In addition, the
17  staffing matrix included 40 dental assistant hours and 80 dental hygienist hours per
18  week.  *Id*.  However, other "documents suggest that the Jail is staffed by somewhere
19  between 1.0 FTE and 2.0 FTE dentists, though that number is still well below
20  optimal staffing estimates," which would yield a ratio of 1,968:1—which is
21  approximately half the dentist optimal staffing discussed in my report.  *Id*. at ¶ 184.
22  So, even after the implementation of the February 2024 staffing matrix, the number
23  of dentists at the Jail is insufficient.

24      13.    Nothing in the Reinecke Report changes my conclusions regarding the
25  insufficiency of dentist staffing at the Jail.

26      14.    Although Dr. Reinecke opines that the Jail's dental staffing is adequate,
27  that opinion is unsupported because the Reinecke Report fails to address the number
28  of *full-time equivalent* dentists at the Jail.  Rather, the Reinecke Report discusses

only the number of individual dentists who work at the Jail. But it is immaterial whether there are four individual dentists working at the Jail if, for example, each of those four people only works one day per week. In that case, those four people would still constitute less than 1.0 FTE dentist.

15.     In addition, although Dr. Reinecke opines that "[t]he existing ratio of dentist to patients is not significantly different than what is common in the community at large," he neither states the current Jail ratio nor that of the community at large. Reinecke Report at 5. Further, he fails to explain why comparing these two ratios is relevant to this litigation since the SDSO is not responsible for providing dental care to the community at large.

16.     Finally, I have little faith in Dr. Reinecke's opinion about staffing because his tally of the number of dentists at the Jail is confusing and is contradicted by other evidence I reviewed. According to Dr. Reinecke, "[a]t the time of [his] visit" to the Jail on March 27 and 28, 2024, "there were four total dentists." *Id.* at 1. The Reinecke Report also states that, "[c]urrently"—which I assume to mean as of the August 21, 2024 date of the report—"there are four total dentist[s], including two new hires." *Id.* at 3. I assume that these "new hires" must therefore have been added to the roster before Dr. Reinecke's March 2024 visit. However, as of the June 7, 2024 Rule 30(b)(6) deposition of NaphCare, there were only two dentists employed at the Jail. Nix II Tr. at 52:5-17. These contradictions are concerning, and Dr. Reinecke does not identify any document or contract addendum indicating that more dentists have formally been added.

17.     Even taking the Reinecke Report's estimation of the number of dentists at face value (four dentists, two dental assistants, two dental hygienists), I am further concerned by its discussion of dental support staff. Dr. Reinecke reports that "[t]wo more hygienist positions are being added and NaphCare is evaluating the need for two additional assistants, as well." Reinecke Report at 3. If it is correct that there are more dentists than dental assistants working at the Jail, then the two new dentists

1    will be working without dental assistants.  A dentist working without an assistant

2    can accomplish little, as Dr. Reinecke's own chart summaries illustrate.  For

3    example, Dr. Reinecke noted:

4        [Patient 17] was seen on ██/24 by Dr. Polanco via intake
         ferral with a CC of "My fi▇ng came out."  Tooth #19 was
5        reported have a missing filling on the buccal surface.  The dental
         not report to work on this day, so Dr. Polanco s▇▇duled
6        ██ for a filling on tooth #19.  He was released on ██/24.

7    *Id*. at 100.  The Shulman Report similarly noted multiple examples of care being

8    delayed because a dentist was working without a dental assistant.  *See, e.g.*,

9    Exhibit C to Shulman Report at ¶¶ 30, 94, 189.

10        18.    Regarding dental hygienists:  As I stated in my report, having a staffing

11    matrix with one FTE dentist and two FTE dental hygienists is not reasonable

12    because the hygienists will not materially improve incarcerated people's access to

13    urgent care—the most critical deficiency of the Jail's dental program.  Shulman

14    Report at ¶ 188.  "Simply put, a staffing plan that has twice as many dental

15    hygienists as dentists makes no sense."  *Id*.  Even with two FTE dentists, the

16    addition of two dental hygienists does not materially improve access to **urgent**

17    **care**—the most glaring deficiency in the Jail's dental program.

18        19.    Critically, as explained in the Shulman Report, a dental hygienist's role

19    is much more limited than that of a dentist; a hygienist may, *e.g.*, take x-rays or treat

20    patients *only* if a patient has already been examined by a dentist in the practice; that

21    is, if the patient is a "patient of record."[3]  Exhibit D to Shulman Report at ¶¶ 33-34.

22    The Shulman Report identified at least one example of a dental hygienist operating

23    outside the scope of practice by ordering an x-ray and making a diagnosis, without

24    apparent supervision by a dentist.  *See* Exhibit C to Shulman Report at ¶ 272

25    (describing care of Freddy Tyson).  The Reinecke Report includes many more such

26

---

27    [3] A patient who has been examined, has had a medical and dental history completed
     and evaluated, and has had oral conditions diagnosed and a written plan developed
28    by the licensed dentist.

1  examples, leading me to believe that the Jail is using dental hygienists as cheap

2  substitutes for dentists; allowing them to take x-rays, perform examinations, and

3  treat patients **before the patients have been examined or screened by a dentist**.

4  This apparent practice of using dental hygienists in lieu of dentists falls gravely

5  below the standard of care and, in my opinion, would warrant reporting to the

6  California Dental Hygiene Board.

7      20.    Examples from the Reinecke Report of dental hygienists examining and

8  treating patients before they have been seen by a dentist—a practice upon which Dr.

9  Reinecke did not comment—include:

10     21.    ███████████ submitted several requests to have a toothache

11 treated starting on ██████, 2024 and was seen by a dental hygienist on ████

12 2024 who performed a gross scaling and took a panograph.  Reinecke Report at 97.

13     22.    ███████████ submitted a sick call request ("Broken tooth hurts")

14 ██████, 2024 and again on ██████, 2024.  *Id*. at 100-101.  He was scheduled

15 for a screening by the dental hygienist on ██████ 2024 which he is documented

16 as having refused.  *Id*.

17     23.    ███████████ submitted a sick call request for a painful tooth on

18 ██████, 2024 and was seen by a dental hygienist (date not provided) who took

19 a panograph x-ray.  *Id*. at 101-102.

20     24.    ███████████ submitted a health care request for a "[c]hipped

21 molar" on ██████ 2023 and was seen by nursing on the next day, was given an

22 analgesic, and had a dental appointment scheduled.  *Id*. at 102.  He submitted

23 another request on ██████, 2023 ("Back molar hurts") and was seen again by

24 nursing and was again provided with analgesics.  *Id*.  He submitted health care

25 requests stating the same problem on ██████, 2023, ██████, 2023 and

26 was scheduled to see the dentist.  *Id*.  He was seen by a dental hygienist on

27 ██████, 2024 who examined him, took a panograph, and began a debridement.

28 *Id*. at 102.

25.     These record reviews show that the Jail has a practice of allowing dental hygienists to practice outside their scope of practice as approved by the California Dental Hygiene Board, encouraging them engage in unprofessional conduct.  It is surprising that this egregious practice escaped Dr. Reinecke's comment.

26.     In sum, nothing in the Reinecke Report changes my opinion that dental staffing at the Jail is inadequate.  And, as explained in more detail below, the charts that Dr. Reinecke reviewed reveal extensive wait times for care, which is difficult to reconcile with Dr. Reinecke's opinion that staffing at the Jail is adequate.

## IV.    CHART REVIEWS AND ACCESS TO CARE

27.     While a staffing ratio is one metric to assess the adequacy of a dental program, the most important metric is access to and timeliness of care.  As explained in detail in the Shulman Report, the Jail's dental program fails to provide timely urgent care to incarcerated people, subjecting them to avoidable pain and tooth loss and morbidity.

28.     As I stated in my report, access to both urgent and routine care is inadequate.  Shulman Report at ¶ ¶ 77, 120.  Dr. Reinecke disagreed, stating:

> I reviewed the sick call process, timeframe to be seen for all priorities of need, emergency care, referral process and services, and patient education offered.  Dental needs identified that required referral to an off-site specialty provider were documented and scheduled in a timely manner.

Reinecke Report at 3.

29.     This opinion is unsupported and unpersuasive for multiple reasons. First, the Reinecke Report does not provide any definition of timely care as I do in the Shulman Report.[4]

30.     Second, the Reinecke Report does not explicitly compute wait times for urgent care of any of the charts reviewed, although it notes that, "[there were]

---

[4] See Shulman Report ¶¶ 79, 108-111.

1    inherent time gaps of approximately 5 to 65 days between triage/screening and

2    definitive diagnosis and/or treatment." Reinecke Report at 4. This statement, on its

3    own, highlights the scope of the urgent care problem at the Jail. A 65-day "time

4    gap[]" in providing treatment should be concerning to any dentist, not merely

5    written off as an "inherent" delay.

6        31.    Third, with respect to off-site specialty providers, the Reinecke Report

7    focuses only on whether referrals are "scheduled in a timely manner," not whether

8    treatment is actually provided in a timely manner. Indeed, the charts Dr. Reinecke

9    reviewed include multiple examples in which treatment was not given for an

10   extended period of time after the referral was placed. As just one example, █████

11   ████ did not receive extractions for 69 days after Dr. Patel initiated a request for an

12   offsite referral. *See* Exhibit B at ¶¶ 21-39.

13       32.    Finally, in determining timeliness, the Reinecke Report does not appear

14   to distinguish between evaluations by a nurse as opposed to a dentist. As explained

15   in the Shulman Report

16   > Incarcerated people experiencing painful dental conditions should be
17   > examined by a nurse practitioner ("NP"), physician assistant ("PA"), or
     > physician ("MD" or "DO") within 24 hours of the complaint being
     > received by the facility staff. The NP, PA, or physician may prescribe
18   > antibiotics for dental abscesses at that preliminary examination, as
     > appropriate. **However, all incarcerated people complaining of
19   > dental pain must be scheduled to see a dentist, since only a dentist
     > is qualified to make a definitive diagnosis on dental issues and
20   > determine the clinically appropriate sequence of care.**

21   Shulman Report at ¶ 84 (emphasis added).

22       33.    In contrast to Dr. Reinecke's apparent conclusion that the Jail provides

23   timely dental care, the records Dr. Reinecke reviewed also support my conclusion

24   that dental care at the Jail is untimely and therefore inadequate. A complete

25   summary of my reviews of the 30 records summarized in the Reinecke Report is

26   attached as **Exhibit B**. Notably, Dr. Reinecke's own summaries of these records do

27   not reach a specific conclusion regarding whether timely care was provided in each

28   case. However, the records reviewed by Dr. Reinecke reflect a median wait time of

1  35.5 days for urgent care.  By way of example only, ▮▮▮▮▮▮▮ waited 140 days

2  before he is documented as having refused a dentist appointment on ▮▮▮▮ 2024.

3  Exhibit B at ¶¶ 16-20.  ▮▮▮▮▮▮▮▮ waited 154 days before being seen by a

4  dentist on ▮▮▮▮▮, 2024.  *Id.* at ¶¶ 71-78.  These, and the many other examples

5  documented in Exhibit B, are clearly untimely.

6  **V.    DENTAL SERVICES PROVIDED**

7    34.    Dr. Reinecke states that the Jail provides:

8  General dentistry is provided to all IPs, to include oral healthcare
   instruction, preventive services (gross scales and prophies), restorative
9  services (fillings and crowns), endodontics (root canals, referred to off-
   site provider), prosthodontics (dentures), and oral surgery (completed
10  both on site and via off-site referral).

11  Reinecke Report at 3.

12    35.    Absent among the services listed by Dr. Reinecke is the treatment of

13  moderate periodontal disease which is a standard component of general dentistry.  In

14  fact, as I point out in my report, scaling and root planing can be performed by dental

15  hygienists when ordered by a dentist.[5]  Failure to include treatment of mild to

16  moderate periodontal disease within the scope care is inadequate and below

17  accepted professional standards.

18  **VI.    PHYSICAL SPACE**

19    36.    Dr. Reinecke assessed the physical space of each facility he visited to

20  determine if there was adequate space and equipment to deliver dental care.  *Id.* at

21  3.[6]  As I understand his report, the Jail now has four dentists.[7]  Is the space sufficient

22  to accommodate four dentists, two dental hygienists, and the two additional

23  hygienists that may be added to the staffing matrix?

24

25  _____

26  [5] *See* discussion of periodontal diagnosis and treatment in Shulman Report Exhibit
    D at ¶¶ 17.

27  [6] No notes from this inspection were produced.

28  [7] He did not specify how many full-time equivalent dentists are on staff.

37.    As I mention in my report

> While all the treatment rooms were adequate from a dental perspective for current staffing, any clinic with only one treatment room (such as George Bailey) is limited because a dentist and dental hygienist cannot work at the same time.  When dentist staffing is increased substantially (as I believe it must be), it is likely that clinics will have to be expanded or an additional shift added.

Shulman Report at ¶ 48.

38.    While Dr. Reinecke stated that the equipment was adequate to provide dental care (Reinecke Report at 3), an issue that bears mentioning that I noticed in the 85 charts I reviewed (the 55 described in the Shulman Report and the 30 selected by Dr. Reinecke) was equipment downtime.  For example, on ███████████, 2023, Dr. Borquez rescheduled a filling appointment for ███████████ because no suction was available.  Reinecke Report at 95.  Similarly, inoperative suction caused Dr. Polanco to reschedule the extraction of ███████████ painful tooth—a 21-day delay.  *Id*. at 95-96.

39.    My record review also found examples of treatment delays resulting from equipment malfunction.  As I noted in my report

> On the day I visited Las Colinas on February 8, 2024, a handwritten sig███████████ at the x-ray machine was broken.  The medical records of ███████████ ind████ the x-ray machine at Las Colinas was sim███ on ████████, 2024. SD 837496-501.  Other records indicate equipment ██ r Jail fa████ *e.g.*, suction equipment broken on ███████ 2023, ███████ Medical Records, SD 841562; ████ken o ████████ 3, preventing completion of prophy, ███████████ Medical ███ds, SD 825095-101.  Each of these equipme ████ ontributed to delays in care for incarcerated people.  While I did not review enough charts to determine the extent to which equipment downtime contributes materially to untimely care, these examples are troubling.  This should be studied by the Sheriffs' Department and NaphCare and eventually be followed during monitoring.

Shulman Report at ¶ 105.

## VII.  QUALITY MONITORING

40.    According to Dr. Reinecke:

> Quality assurance monitoring is a necessary process for every

1  healthcare system to ensure consistent and adequate delivery of care.
2  The quality monitoring for all providers who serve at the seven SDSO
   facilities is appropriate.  Dr. Pandit performs monthly chart reviews and
3  an annual quality review on each dental provider.

4  Reinecke Report at 3.

5      41.    Dr. Reinecke opined that the Jail's Quality Assurance Monitoring with

6  respect to dental care is "appropriate."  However, he provides no evidence on which

7  to base this opinion.  In my report I reviewed the Sheriff's Department internal

8  medical Quality Assurance Meeting and concluded that the Sheriff's Department

9  has essentially outsourced its continuous quality improvement ("CQI") of the dental

10 program to NaphCare, yet—to the extent that NaphCare does any auditing of dental

11 care—those audits are inadequate.  Shulman Report at ¶ 221.  Furthermore, my

12 review of the minutes indicates that dental care is not substantively discussed as part

13 of the Sheriff's Department's own CQI process.  In some of the Committee's

14 minutes, the word "dental" does not appear at all.  *Id*. at ¶ 222.

15     42.    Although NaphCare has purportedly conducted some auditing of the

16 Jail's dental care, that oversight program is deficient.  For one thing, the quarterly

17 presentations regarding quality assurance and quality improvement run by

18 NaphCare do not appear to contain any information or analysis about the *quality* of

19 dental care provided, or even about the type of issues being diagnosed and treated.

20 *Id*. at ¶ 225.

21     43.    There is, again, no discussion of inadequate periodontal diagnosis and

22 treatment and inadequate initial examinations and treatment plans I found in my

23 chart reviews.  Most damningly, there are no statistics regarding average wait times

24 for dental care.  *Id*. at ¶¶ 225-226.

25     44.    Dr. Reinecke cites the fact that "Dr. Pandit performs monthly chart

26 reviews and an annual quality review on each provider."  Reinecke Report at 3.

27 However, as I point out in my report, this audit again appears to focus only on

28 documentation.  Shulman Report at ¶ 228.  In fact, at least Dr. Pandit's

1   December 2023 audit—the only one I have seen—is mute on the Jail's inadequate

2   periodontal diagnosis and initial examinations that I document in my report.  *See id.*

3        45.    In summary, quality monitoring by both the SDSO and NaphCare are

4   inadequate.  First, there is no regular monitoring of the timeliness of care, which,

5   based on Dr. Reinecke's and my record reviews is grossly deficient.  Second, there

6   is no focus on the diagnosis and treatment of periodontal disease—a critical

7   component of general dentistry.  Third, the use of bitewing x-rays to diagnose caries

8   is not monitored.  Finally, hygienists are allowed to examine and treat patients who

9   have not been previously examined by a dentist—which, as explained above, is an

10  inappropriate practice.

11  **VIII.  RECORDS MANAGEMENT**

12       46.    Dr. Reinecke opines that "the current TechCare electronic health record

13  in use at SDSO is a suitable vehicle to record and track dental healthcare

14  encounters."  Reinecke Report at 3.  However, he later suggests that inadequate

15  documentation might be "the result of a charting system that is not full spectrum,

16  relies too much on "check the box" format or is not user friendly.  *Id*. at 4.  I make

17  this point *inter alia* in my report.

> The charts I reviewed suggest that a dentist can color-code individual
> teeth to indicate, *e.g.*, whether the tooth is impacted or designated for
> extraction.  However, I have not seen any indication that a dentist can
> color-code only *part* of a tooth, *e.g.*, to indicate where on a tooth the
> decay is or where an existing restoration was placed; a standard
> electronic dental chart would have this partial color-coding feature.
> Because it lacks the ability to mark locations on an individual tooth, the
> Jail's chart is insufficient for routine care.

23  Shulman Report at ¶ 200.

24       47.    While the chart allows for text entry of information about specific

25  teeth, this information should be visible on the chart to facilitate a dentist's

26  following the status of specific teeth.  Similarly, while the chart allows the entry of

27  periodontal pocket depth on the buccal and lingual surfaces (*id*. at ¶ 201), it does not

28

facilitate[8] the entry of PSR or CPITN scores[9]—a *sine qua non* for dental and dental hygiene practice.

48.    I noticed that minor changes were made to the dental treatment note form that were not present in the charts I reviewed.  I presume that these changes were made after the charts I reviewed were pulled for production.  First, the types of dental appointments a dentist (or hygienist) can select have been updated.  *Compare* Figure 1 (appointment types from February 13, 2024 chart) *with* Figure 2 ("Dental Type" from May 29, 2024 chart).

Figure 1:



Figure 2:



49.    As is clear in comparing Figures 1 and 2 above, the "Initial" box has been changed to "Dental Intake Assessment"; a "Dental Hygiene" box has been added; and the "Emergent" box has been removed and replaced by "Acute Unscheduled Visit."  These changes seemingly make clear that there is no "initial exam" equivalent to the ADA procedure code D0150 ("Comprehensive Oral Examination"), but rather an assessment, which I take to be less rigorous.

50.    Second, the revised form includes what appears to be a field that links to the "most recent completed health assessment."  I was not able to evaluate its functionality in my review.

---

[8] While the scores can be entered as free text, there is no separate block for the scores to be entered.

[9] *See* discussion of periodontal diagnosis in ¶¶ 156-159.

51.    Third, changes were made in the X-ray section to add fields for "Panoramic X-ray (PANO)," "Periapical X-ray (PA)," and "Bitewing X-ray." *Compare* Figure 3 (February 13, 2024 chart) *with* Figure 4 (May 29, 2024 chart).

Figure 3:



Figure 4:



52.    Fourth, changes were made in the "Exam/X-Ray Reveal section, again adding more boxes that a dentist may (or may not) check. *Compare* Figure 5 (February 13, 2024 chart) *with* Figure 6 (May 29, 2024 chart).

Figure 5:



Figure 6:

53.     Fifth, under "Diagnosis," the "Non-Restorable" option was updated to: "Non-Restorable – Needs extraction."  The addition of "– Needs extraction" does not change my opinion, as stated in the Shulman Report (pp. 63-64), that there is a lack of clarity about the difference between a "restorable" and "non-restorable" tooth.  The critical question is whether a tooth is not restorable under any circumstances, even with advanced treatment offered by an endodontist, for example.  That a dentist at the Jail diagnoses a tooth as "needing extraction" may— absent any explicit definition—mean that the Jail's policy is such that extraction is the only available treatment.  Further definition is still required.

54.     Sixth, the "Treatment Options" have been updated to include several additional choices.  *Compare* Figure 7 (February 13, 2024 chart) *with* Figure 8 (May 29, 2024 chart).

Figure 7:



Figure 8:

| Tooth Number(s): | |
|---|---|
| ☑ Offsite Dental Referral for Crown | |

Tooth Number(s):

27

Other:

☑ Patient advised of risk and benefits of above treatment options

55.    These minor revisions and the handful of other minor changes in the dental treatment form do not change any of my opinions.  Although the new categories have the potential to provide useful information, they do not produce a narrative flow that makes it easy for a dentist to grasp the clinical history quickly. In fact, these cumbersome additions magnify Dr. Reinecke's critique of the Jail's dental chart:

> Chart audits revealed that while documentation was present, it was typically not comprehensive in nature, nor did it represent a fluid sequence of assessment, diagnosis, and treatment.  This may be a result of a charting system that is not full-spectrum, **relies too much on a "check the box" format, or is not user-friendly.**

Reinecke Report at 4 (emphasis added).  I agree with Dr. Reinecke that this "check the box" format of a chart is not user-friendly.

56.    Finally, while minor changes were made, it remains difficult to follow a patient's clinical progress over time.  Unlike, for example, the "Progress Notes" section of a patient's medical record where clinical progress can be followed easily, a dentist wanting to understand a patient's history must look at separate records of examinations and treatments.  For example, following ████████ clinical history requires reviewing at least 12 separate clinical encounters—each of which comprises four or five pages.[10]  Looking at only the most recent clinical encounter

---



[10] Dr. P████co: ██ 22, ██/22, ██ 23, ██/24, ██ /24; ██ Patel ██ ██/23, ██ /24, ██ /24, ██ /24; ██ a de█ l hy█nist: ██ ██/24, ██ /24, ██ sumi █ hat th█ ocumentation for each encou█ is fo█ r five █ages long, a dentist would have to review between 48 and 60 pages to piece together a treatment chronology.

1  does not capture all the detail from every prior appointment.

2        57.    To summarize, the Jail's dental chart as currently configured is

3  inadequate to enable a dentist to follow a patient's dental health.  While the chart

4  tool might be useful for patients that receive only urgent care on a single tooth at a

5  time, it is below the accepted professional standard for providing routine care.  It is

6  also difficult to use for patients who require urgent care on multiple teeth at the

7  same time.  I have reviewed dental records in the military, academics, and

8  corrections and found the Jail's charts among the most difficult I have reviewed to

9  determine a patient's clinical history over time.

10       58.    The information and opinions contained in this report are based on

11  evidence, documentation, and/or observations available to me.  I reserve the right to

12  modify or expand these opinions should additional information become available to

13  me.  The information contained in this report and the accompanying exhibits are a

14  fair and accurate representation of the subject of my anticipated testimony in this

15  case.

16

17  DATED:  October  31 , 2024    _____

18                                              Jay Shulman

19

20

21

22

23

24

25

26

27

28

# Exhibit B

**EXHIBIT B:  CHART REVIEWS**

1.    ████████████ was seen by Dr. Borquez for an annual exam on ████████, 2023.  Pages 11-28 of 453.[1]  Dr. Borquez took a Panorex but neither took nor relied on bitewing x-rays in formulating his treatment plan for Mr. ████.  Nor did Dr. Borquez document periodontal probing.  *Id*.  Dr. Borquez noted that tooth #2 was restorable and scheduled a follow-up appointment to insert a temporary filling on tooth #2; however, since the suction was not working, the appointment was rescheduled.  Page 28.  The Sick Call Log in Mr. ████'s medical record reports that dental sick call appointments were "scheduled" on ████████, 2023 and again on ████████ 2023, but not completed until ████████ 2023.  Page 3.

2.    Dr. Patel saw Mr. ████ on ████████, 2023 (**54 days** after Dr. Borquez was not able to fill the tooth due to an equipment failure) and noted moderate gingival inflammation and moderate bleeding.  Pages 37-42.  Dr. Patel also noted "Spot probing:  2-6 mm," but she did not indicate which teeth had the deep periodontal pockets nor did she indicate periodontal treatment on the treatment plan. *Id.*  Mr. ████ is documented as having declined the filling.

3.    In summary, while Mr. ████'s ████████, 2023 routine care appointment was not untimely since Mr. ████ did not report pain, the annual examination conducted by Dr. Borquez was below professional standards because it was not informed by bitewing x-rays or documented periodontal probing.  Similarly, while Dr. Patel noted periodontal pockets as deep as 6 mm, she failed to indicate which teeth had the deep periodontal pockets or indicate treatment for Mr. ████'s periodontal issue.

4.    ████████████ suffered from a toothache, and, according to a ████████████ StatCare note, reported pain "10 out of 10 upper left molar

---

[1] Unless otherwise noted, citations throughout this Exhibit are to the PDF page number of each patient's medical record, produced on September 20, 2024.

1 toothache for past 2 weeks.  Minor swelling to left side of the face ….  Dentist not

2 come for another 2 weeks.  Please advise and start ABT [antibiotic treatment] if

3 indicated." Page 28 of 228.  A nurse filled out a Dental Complaint Form for

4 Mr. ███ on ████, 2024, reporting that Mr. ███ had severe pain from a

5 cracked upper left molar (pain 10/10) with a duration of 2 weeks, dispensing

6 analgesics, and checking a box to "Refer to Dentist or Advanced Clinical

7 Practitioner (ACP) for sick call if infection or severe pain present." Page 24-25.  It

8 appears that Mr. ███ was released without being seen by a dentist.

9     5.    Mr. ███ was booked at the Jail again on March 13, 2024.  *See* page

10 36 (Receiving Screening).  Mr. ███ is documented as having refused dental sick

11 call appointments on ███, 2024 with a dental hygienist, pages 73-77; and on

12 ███, 2024 with Dr. Polanco, pages 93-97.  However, there is no refusal form for

13 the ███, 2024 appointment, and the refusal form for the ███, 2024

14 appointment is not signed, but instead states: "deputy stated pt refused – no

15 paperwork." Page 209.

16     6.    In summary, Mr. ███'s records are notable because they show that,

17 in ███ 2024, dentists were not present at the Jail for at least a two week period,

18 and one dental sick call appointment in ███ 2024 appears to have been staffed by

19 a dental hygienist instead of a dentist.

20     7.    ████ submitted an undated sick call request that was

21 logged as received by the Jail on ███, 2023, reporting: "tooth needs to be

22 extracted." Page 362 of 447.  According to the sick call summary of Mr. ███'s

23 medical record, he had a face-to-face examination by a nurse on ███, 2023

24 regarding that sick call request, with "Disposition – Naphcare protocl initiated."

25 Page 23.  That sick call request was not marked "completed" until ███, 2023.

26 *Id.*  A nurse completed a Dental Complaint Form for ███ on ███, 2023

27 noting that he had a toothache (4/10) for "more than 1 month," and he was

28 instructed to "submit a sick call request if symptoms are not resolved or if condition

worsens." Page 98-100. Mr. ███ was seen by Dr. Polanco on ███, 2023 (**after 64 days**), who and noted that Mr. ███ wanted a painful (███) tooth extracted. Page 82-87. Although Dr. Polanco checked the box to indicate that this appointment was an "initial exam," a note on the chart describes the appointment as a "limited exam to tooth #16." Consistent with that note, there is no documentation of periodontal probing. Dr. Polanco also noted that the extraction of tooth #16 would need to be rescheduled because there was "no available dental suction." *Id*. Dr. Polanco extracted the tooth on ███, 2023 (**21 days after the previous dentist appointment**). Page 90-95.

8. In summary, Mr. ███'s urgent care was untimely, and the appointment was incorrectly marked as an "initial examination."

9. ███ submitted a sick call request on ███, 2023, received by the Jail on ███, 2023, requesting aspirin and wanting to see a dentist ("my tooth hurts very bad …"). Page 373 of 512. According to the sick call summary portion of Mr. ███'s medical record, this sick call request was not "completed" until ███, 2024, when "dental pain protocol started." Page 97.

10. Mr. ███ submitted another sick call request on ███, 2024, marked as received by the Jail on ███ 2024 requesting to see a dentist "…because my mouth is swelling and I can't eat. Please help me!" Page 375. According to the sick call summary portion of Mr. ███'s medical record, this sick call request was not "completed" until ███, 2024. Page 97.

11. A nurse completed a Dental Complaint Form for Mr. ███ on ███, 2024, noting that he had swollen gums and a toothache (pain 10/10) in his "left and right upper back molars" for "several weeks", and dispensed analgesics. Page 261-262. The nurse further instructed Mr. ███ to "submit a sick call request if symptoms are not resolved or if condition worsens." *Id*.

12. Mr. ███ submitted another sick call request on ███, 2024, marked received by the Jail ███, 2024, reporting: "My mouth is swelled and

I can not bite food.  I'm in a lot of pain.  My teeth or gums are all bad."  Page 377.
A note on the bottom of the sick call request form states:  "Duplicate.  Already
sched.  For Dental."  *Id.*

13.    Dr. Polanco saw Mr. ███ on a ██████ 2024 for scheduled sick
call exam **(after 39 days)**.  According to Dr. Polanco, Mr. ███ stated that "my
teeth are breaking into little pieces" and his pain level was 7/10.  Tooth #3 was
diagnosed as having non-restorable decay and it was marked for extraction.
Page 226.  Antibiotics and analgesics were prescribed, and a follow-up visit was
scheduled for the tooth to be extracted.  *Id.*

14.    Mr. ███ is documented as having refused an appointment with a
dental hygienist on ███ 2024.  Page 252-256.  The refusal form is not signed
by Mr. ███.  Page 380.  He is also documented as having refused a ███ 2024
dental appointment.  The refusal form is not signed by Mr. ███.  Page 383.

15.    In summary, Mr. ███'s treatment for a painful dental abscess was
untimely.  First, while Dr. Polanco prescribed an antibiotic on ██████, 2024 (**14
days after** Mr. ███'s complaint of pain), he did so without examining Mr. ███.
Second, while Dr. Polanco prescribed antibiotics again on ██████ 2024, he did
not schedule an appointment for the extraction within the therapeutic window of the
antibiotic.  Finally, the ██████ 2024 appointment with a dental hygienist was
unnecessary since treating his dental abscess was beyond a hygienist's training and
scope of practice.

16.    ██████ suffered from a toothache, for which a nurse completed a
Dental Complaint Form on ██████, 2023, noting that he had pain at a level of 8
out of 10.  Page 99-100 of 806.  The nurse indicated that she would refer Mr. ███
to the dentist.  *Id.*  The medication record in Mr. ███' medical record shows an
order for Benzocaine Mouth/Throat 20% Gel for 7 days dated ██████ 2023.
Page 489.  Notably, no sick call request form appears in Mr. ███' medical record,
which is the most likely way that Mr. ███ would have alerted a nurse about his

1  dental pain.

2      17.    A ███████ 2023 note on the sick call summary portion of

3  Mr. █████' medical record states: "IP STATES HE HAS ABSCESS AROUND

4  MOLARS." Page 6.

5      18.    Mr. ██████ was scheduled for an appointment with a dental hygienist

6  on ████████, 2024, but, according to the dental hygienist, he was not seen

7  because the clinic "ran out of time." Page 80-84.

8      19.    Mr. ██████ is documented as having refused an appointment with

9  Dr. Polanco on March 6, 2024 (**after 140 days**). Page 85-89. The refusal form is

10 not signed by Mr. ██████. *Id.*

11     20.    In summary, Mr. ██████' urgent care was untimely.

12     21.    ████████ submitted a sick call request on ████████, 2022,

13 received by the Jail on ████████, 2022, reporting: It's hard for me to chew every

14 bite hurts." Page 49 of 834. He was seen by Dr. Polanco on scheduled sick call on

15 ████████, 2022 (**after 14 days**), who diagnosed tooth #30 as having non-

16 restorable decay. Pages 141-145. Mr. ██████ is noted as having elected an extraction,

17 and Dr. Polanco prescribed an antibiotic and analgesics and requested a follow-up

18 appointment. *Id.* Mr. █████ is documented as having refused a dental appointment

19 with Dr. Polanco on ████████, 2022. Pages 174-178. No signed refusal form

20 appears in his medical records.

21     22.    A ████████, 2022 RN entry noted "Patient c/o tooth pain going on for

22 several weeks but worse today" and an "Alert sent to StatCare for further orders.

23 No DSC scheduled." Page 805. Mr. █████ was seen by Dr. Polanco on ████████,

24 2022 (**after 96 days**), who diagnosed tooth #31 (in addition to tooth #30) as having

25 non-restorable decay and marked for extraction. Pages 224-229. Mr. ██████ is

26 marked as having elected an extraction, and Dr. Polanco prescribed antibiotics and

27 analgesics and scheduled a follow-up appointment. *Id.* Mr. ██████ was seen by

28 Dr. Polanco on ██████, 2022, who extracted tooth #31. Pages 260-265. The

July 21, 2022 record does not include any indication regarding a treatment or treatment plan for tooth #30, which Dr. Polanco had marked as requiring extraction five months prior.

23.    Mr. ██ is documented as having refused a ██████ 2022 dental appointment, but the form is not signed by Mr. ██.  Pages 77, 337-341.

24.    Mr. ██ submitted a ████, 2023 sick call request, marked received by the Jail on ████, 2023, reporting: "urgent need to see the Dentist."  Page 87. A nurse completed a Dental Complaint Form for Mr. ██ on ████, 2023, noting that he had a toothache (pain 10/10), and dispensed analgesics.  Page 30-31. The nurse noted that Mr. ██ "was already scheduled for dental SC but is not updated to reflect no symptoms."  Page 31.  Dr. Polanco saw him at a scheduled sick call visit on ████, 2023 (**after 55 days**) and noted that teeth #29 and #30 had non-restorable decay and should be extracted.  Pages 467-472.  Notably, tooth #30 is the same tooth that Dr. Polanco had indicated as requiring extraction on ██████, 2022, over a year prior.  Mr. ██ declined the extractions and opted for antibiotics and analgesics, indicating he would follow up with an outside dentist upon release.  *Id*.  There is no indication that Dr. Polanco suggested referring Mr. ██ to an outside dentist for care.

25.    On ██████ 2023, Mr. ██ was seen by a nurse who completed a Dental Complaint Form, noting that Mr. ██ had a toothache rated 10 out of 10 on the pain scale, with swollen gums and a swollen face/jaw.  Pages 33-35.  The nurse noted:  "This visit does not require a sick call."  Page 35.

26.    Mr. ██ was examined by Dr. Patel on scheduled sick call on ██████, 2023 (**95 days after his ████, 2023 complaint of a toothache**), and he requested a cleaning and told her that he wanted to be sent offsite for treating a painful lower right tooth.  Pages 536-541.  Dr. Patel noted signs and symptoms of acute infection on the lower right.  She also noted that she conducted "spot probing" with depths of 2-6 mm, but did not indicate which teeth were affected.  Dr. Patel

indicated that teeth #20, #29, and #30 were restorable only with root canals and crowns, and that tooth #27 required a filling. *Id*. Dr. Patel placed an offsite referral request for teeth #20, #29, and #30.

27.    A nurse completed a Dental Complaint Form for Mr. ██ on ████████, 2023 reporting a toothache (pain 10/10) and a swollen face/jaw. Pages 40-41. The nurse dispensed an analgesic and instructed Mr. ██ to submit a sick call request if his symptoms are not resolved or if condition worsens; however, no mention was made of scheduling a dental appointment. *Id*. Mr. ██ was also seen by Dr. Patel on ████████, 2023, at which time Mr. ██ reported pain at a level 10 and asked for an update regarding whether he was going to be referred for care offsite. Pages 563-568.

28.    Mr. ██ was sent for an offsite appointment with an oral surgeon on ████████, 2023 with an oral surgeon. Page 102. However, the surgeon told the Jail that his practice does not do root canals, so they were unable to treat Mr. ██. Pages 101, 816 (NP Note regarding same).

29.    A nurse completed a Dental Complaint Form for Mr. ██ on ████████, 2024, reporting a toothache and swollen gums[2] and dispensed an analgesic; however, a dental appointment was not scheduled. Pages 43-44.

30.    Dr. Patel saw Mr. ██ on a scheduled sick call visit on ████████, 2024, during which he asked for an update about his offsite appointment. Pages 581-586. The chart does not reflect any update about Mr. ██'s offsite appointment for teeth #20, #29, and #30. *Id*. However, Dr. Patel noted that she would need to reschedule providing a filling on tooth #27 because a dental assistant was not present. *Id*.

31.    Mr. ██ was sent to a different offsite practitioner on ████████,

---

[2] Th██████ry Socket" box was checked; however, this was likely in error, since Mr. ██ did not have a recent extraction.

2024.  Pages 106-107.  The dentist at that practice noted that teeth #20, #29, and #30 were not salvageable and should be extracted and that a partial denture would be manufactured and sent to the Jail.  *Id.*  The dentist completed the extractions of teeth #29 and #30 that day (**69 days after Dr. Patel initiated the offsite referral**).  Page 599.  The Jail received Mr. ████'s lower partial denture for those teeth on April 27, 2024.  Page 117.

32.  Dr. Patel saw Mr. ████ ████████, 2024 on a scheduled sick call visit to check the healing of his offsite extractions.  Pages 599-604.  Dr. Patel saw Mr. ████ for scheduled sick call visit on ████████, 2024 and placed a permanent filling in tooth #27 (**94 days after Dr. Patel noted that a filling was necessary**).  Pages 614-619.  Dr. Patel also noted that, because of the extent of the decay, tooth #27 may require a root canal in the future.  *Id.*  She requested an offsite referral to evaluate that possibility.  *Id.*

33.  Mr. ████ was seen at an offsite dental practice on ████, 2024 and began his course of treatment that ended approximately in mid-June.  Page 127.

34.  Mr. ████ was scheduled for an appointment with the offsite provider on ████, 2024 for a crown on tooth #27.  Page 126.

35.  Mr. ████ was apparently scheduled to see a dental hygienist on ████, 2024, but the appointment was not completed because Mr. ████ had been transferred to a different facility.  Pages 665-671.

36.  Dr. Polanco saw Mr. ████ on a scheduled sick call visit on ████, 2024, during which Mr. ████ requested a cleaning and asked for an update about the potential root canal on tooth #27.  Pages 679-684.

37.  Mr. ████ was seen by a dental hygienist on ████, 2024, who performed a periodontal screening using the Community Periodontal Index and noted that several quadrants had areas of moderate or severe periodontal disease.  Pages 695-703.  The hygienist noted that Mr. ████ should receive a follow up appointment after a year, however, he should have been scheduled for full-mouth

1  periodontal probing, which is the standard of care.  *Id.*

2      38.    Dr. Polanco saw Mr. ██ for a scheduled sick call visit[3] on ██,

3  2024, but did not pursue the hygienist's finding of periodontal disease.  He neither

4  asked the hygienist to do a full-mouth probing or treatment planned Mr. ██ for

5  scaling and root planing.

6      39.    In summary, Mr. ██'s urgent dental care was untimely, both in terms

7  of his appointments with dentists at the Jail and offsite referrals.  Moreover, while

8  Dr. Polanco diagnosed tooth #30 as having non-restorable decay on ██,

9  2022, it was not extracted for nearly two years.  Page 680.  Finally, while the dental

10  hygienist identified teeth with periodontal disease, Dr. Polanco failed to pursue

11  diagnosis and treatment as dictated by the standard of care.

12      40.    ██ submitted a sick call request on ██, 2023,

13  requesting to see a dentist.  Page 465 of 727.  Although the request appears in

14  Mr. ██'s medical record, there is no stamp indicating the date it was received.

15  *Id.*  However, the sick call summary portion of Mr. ██'s medical records

16  includes a note indicating that a request with the same language was received on

17  ██, 2023.  Page 131.  A nurse completed a Dental Complaint Form for

18  Mr. ██ on ██, 2023, noting that he had a painful left lower molar

19  with pain at 10 out of 10 and dispensing analgesics.  Pages 239-240.  Mr. ██

20  submitted a sick call request on ██, 2023, received by the Jail on

21  ██, 2023, requesting pain medication for a toothache.  Page 448.  He

22  again submitted a sick call request on ██, 2023, received by the Jail on

23  ██, 2023, reporting:  "I have very bad tooth pain.  Needs extraction.

24  Asking for 1 month to see dentist!!"  Page 450.  He submitted multiple sick call

25  requests on ██, 2023,  received by the Jail on ██, 2023 and

26  ██, 2023, reporting, respectively:  "broken tooth plz!!!" and "I need to see

27

28  ───────────
[3] Mr. ██ wanted to know when his crown would be cemented.

1   a dentist in extreme pain!!!"  Pages 462-463.  A nurse completed a Dental

2   Complaint Form for Mr. ████ on ████, 2023, noting that he had a

3   toothache in a left upper molar with pain at a 10 out of 10 and that he was not seen

4   that day on dental sick call and would be rescheduled.  Pages 248-250.  He

5   submitted a sick call request on ████, 2023,  received by the Jail on

6   ████, 2023, stating: "I have been asking to see the dentist for 2 ½ months

7   and haven't gotten any response or an IA form which I asked for multiple times."

8   Page 478.  He submitted another sick call request on ████, 2024, received by

9   the Jail on ████ 2024, stating, "I been requesting to see a dentist for 3 months

10   now."  Page 479.  He was seen by Dr. Polanco on ████, 2024 (**after 76 days**),

11   who noted that teeth #17 and #18 had retained roots and required extraction.  Pages

12   192-196.  However, according to Dr. Polanco's notes, he was unable to perform the

13   extractions because there was no available dental assistant.  *Id.*  He therefore noted

14   that Mr. ████ would need to be scheduled for a follow-up appointment.  *Id.*

15       41.    Mr. ████ was then seen by Dr. Patel on ████, 2024, who noted

16   an abscess associated with the retained roots on teeth #17 and #18.  Pages 198-202.

17   Again, Dr. Patel noted that she could not complete the extractions due to the absence

18   of a dental assistant.  *Id.*  She prescribed an antibiotic and analgesic.  *Id*.

19       42.    Mr. ████ again saw Dr. Patel on ████, 2024, who noted decay

20   in six teeth (#3, #4, #5, #6, #12, and #20), in addition to teeth #17 and #18.  Pages

21   208-213.  Of the six newly identified teeth, Dr. Patel noted that teeth #3, #4, #12,

22   and #20 required extraction, and that teeth #5 and #6 could be filled.  *Id.*  Dr. Patel

23   performed extractions on teeth #3 and #4 only that day and noted that Mr. ████

24   should "return to dental appointment" for the fillings on teeth #5 and #6.  *Id.*

25   Dr. Patel's notes do not include any further plans for teeth #12, #17, #18, or #20.

26       43.    As of Mr. ████'s ████, 2024 release, *see* Page 207 ("Release:

27   █/2024"), he still had not received any treatment for teeth #17 and #18—**138 days**

28   **after he first complained of dental pain and 62 days after Dr. Polanco indicated**

1   **that extraction was required**.  He also had not received any treatment for teeth #5,

2   #6, #12, and # 20—**42 days after Dr. Patel diagnosed them as requiring**

3   **treatment**.

4       44.    In summary, Mr. ███████'s urgent care was untimely.  Not only were

5   there unacceptable delays in scheduling Mr. ██████ to be evaluated by a dentist, but

6   also, once the dental appointments were finally scheduled, the Jail's dentists were

7   unable to provide treatment because of the lack of dental assistants.

8       45.    ██████████ submitted a sick call request on ██████████, 2023,

9   marked received by the Jail ██████████, 2023, stating: "on my right side molar

10  crown fell off I need a fill or replace crown please it hurts."  Page 76 of 185.  He

11  submitted another sick call request on ██████████, 2023, marked received by the

12  Jail on ██████████, 2023, stating: "I have a cracked molar and severe pain from 1-

13  10 scale =10 ouch.  Please help me."  Page 77.  He submitted another sick call

14  request on ██████████, 2024, marked received by the Jail on ██████████, 2024,

15  stating: "my cap to my right molar fell off and my tooth cracked.  In pain because of

16  this and can't eat."  Page 79.  He submitted an undated sick call request, marked

17  received by the Jail on ██████████, 2024, stating: "The cap in my tooth fell out and

18  now I'm in pain and cannot chew food properly."  Page 80.  He was seen by

19  Dr. Polanco on ██████████, 2024 (**after 43 days**), who diagnosed tooth #31 as

20  abscessed and non-restorable.  Page 137-142.  Dr. Polanco extracted tooth #31 that

21  day.  *Id.*

22      46.    Mr. ████████ was seen by a dental hygienist on ██████████, 2024, for a

23  scheduled sick call appointment.  Pages 143-149.  The dental hygienist noted that

24  tooth #19 was fractured and referred Mr. ██████ to a dental appointment to evaluate

25  further.  *Id.*  The hygienist also noted that she conducted a "[l]imited periodontal

26  examination," which revealed generalized 4-5 mm clinical attachment loss, and that

27  she did a full mouth debridement.  *Id.*

28      47.    Mr. ████████ was seen by Dr. Polanco on ██████████, 2024, who placed a

composite filling on tooth #19.  Pages 150-155.  Dr. Polanco made no mention of the generalized periodontal disease noted by the dental hygienist and did not schedule him for either a full-mouth periodontal probing, which is the standard of care, or periodontal treatment.  *Id.*

48.     In summary, Mr. ███████'s urgent care was untimely, and while the dental hygienist noted the presence of periodontal disease, Dr. Polanco turned a blind eye to it and did not plan further diagnosis and treatment.

49.     ████████████ submitted a sick call request on ███████, 2024, marked received by the Jail on ███████, 2024, stating: "I would like to see the dentist.  I have a toothache since 2-13-24."  Page 48 of 129.  A nurse completed a Dental Complaint Form for Mr. ███████ on ███████ 2024, noting that he reported pain at a 6 out of 10, dispensing an analgesic, and scheduling a dental sick call appointment.  Pages 17-19.  Mr. ███████ was seen by a dental hygienist on ███████, 2024, who noted  "Diagnosis:  provider did not diagnose due to pt been first time in dental clinic.  Referred to DDS for exam and tx diagnosis.  NV [next visit] DDS exam."  Pages 89-94.  In other words, the dental hygienist appeared to acknowledge that diagnosing Mr. ███████ would be outside the scope of her practice, because he had not yet been examined by a dentist.  However, the hygienist nonetheless took a Panorex.  *Id.*  Mr. ███████ was seen by Dr. Polanco for a scheduled sick call on ███████, 2024 (**after 34 days**), who diagnosed generalized periodontal disease and scheduled Mr. ███████ for a debridement at a later date. Pages 101-106.

50.     Mr. ███████ is documented as having refused a ███████, 2024 appointment with the dental hygienist.  Page 109-113.  The refusal form is not signed by Mr. ███████.  Page 47.

51.     In summary, Mr. ███████'s urgent care was untimely.  Furthermore, Dr. Polanco failed to document a plan for further diagnosis and treatment of Mr. ███████'s periodontal disease.

52.    █████████████ submitted a sick call request on ████, 2023, marked received by the Jail on █████, 2023, requesting a teeth cleaning and reporting that he believed he had "more problems" with his teeth beyond being "dirty."  Page 231 of 615.  He submitted another sick call request  on ██████ 2023, received by the Jail on █████, 2023, requesting to see a dentist "for cleaning and other dental issues."  Page 221.  He was seen by Dr. Patel at a scheduled sick call visit on ██████ 2023 (after 23 days),[4] who diagnosed periodontitis ("spot probing: 2-6 mm") and several decayed teeth that will require endodontic treatment or extraction.  Pages 430-435.  Mr. ████████ is documented as having declined extractions.  *Id.*  There is no indication that Dr. Patel discussed the possibility of referring Mr. █████████ for endodontic treatment offsite.  *Id.*

53.    Mr. █████████ submitted another sick call request for a cleaning on █████, 2023 (after his appointment with Dr. Patel), marked received by the Jail on █████, 2023.  Page 225.  He submitted an undated sick call request, received by the Jail on █████, 2023, again asking for a dental cleaning.  Page 222.

54.    Mr. █████████ submitted a grievance on ██████████, 2023, marked received by Jail on █████████, 2023, stating:  "I have complained about pain in my gums and teeth.  I need them medically cleaned."  Page 183.  He was seen by Dr. Patel at a scheduled sick call visit on ██████████, 2023 (after 97 days),[5] who performed a "Cavitron prophy" and noted the presence of periodontitis ("spot probing:  2-6mm").  Pages 400-406.  However, Dr. Patel did not document which teeth had the deep probing scores.  Pages 400-406.  He is documented as having refused an appointment with Dr. Patel on █████████, 2023.  Pages 375-379.  The refusal form is not signed by Mr. ████████.  Page 175.

---

[4] Because Mr. █████████ did not report any dental pain in his █████, 2023 or █████████ 2023 sick call █████████, I consider this a request for routine

[5] Again, I consider this a request for routine care.

55.    In summary, while Mr. ████ did not request treatment of an urgent care issue, there were nonetheless problems with the routine care that he was provided.  In particular, Dr. Patel failed to document the specific teeth that had the deepest probing depths, which is below the standard of care.  Moreover, monitoring and treating his periodontal disease was not treatment planned.

56.    ████████ submitted a sick call request on ████ 2023, marked received by the Jail on ████, 2023, stating: "I would like to see the dentist please.  Have a bad toothache."  Page 113 of 335.[6]  A nurse completed a Dental Complaint Form for Mr. ████ on ████, 2023, noting that he had right upper molar pain rated a 4 out of 10, and dispensed an analgesic.  Pages 32-33.  Mr. ████ submitted a sick call request on ████, 2023, marked received by the Jail on ████, 2023, stating:  "Back molar hurts in pain from 1-10 a 10."  Page 116.  A nurse completed another Dental Complaint Form for Mr. ████ on ████, 2023, noting dental pain rated a 6 out of 10) in his left lower molar, and dispensed an analgesic.  Pages 35-36.  He submitted a sick call request on ████, 2023, received by the Jail on ████, 2023, stating:  "My tooth still hurts you guys looked at the wrong tooth Im not trying to be a pain and keep putting in sick call slips."  Page 123.  He submitted a sick call request on ████, 2023, marked received by the Jail on ████, 2023, stating: "Back lower tooth been hurting.  I been told over and over that I'm waiting to see a dentist it is been over 2 months almost."  Page 124.  He submitted a sick call request on ████, 2023, marked received by the Jail on ████, 2023, stating: "I put in for Dental several times my tooth hurts and you keep lying to me telling me I'm priority."  Page 100.  A response from the Sheriff's Department written on the lower part of the request form states: "Once scheduled for dental it is triaged by the

---

[6] ████████ions in this section are to the medical records associated with Booking No. ████.

1  dentist.  You are still on that list." *Id*.  He submitted an undated sick call request,

2  marked received by the Jail on ████, 2024, asking for an update regarding a

3  dental appointment.  Page 129.  The response on the bottom of the form states:

4  "informed pt. he's on the priority list." *Id*.  He submitted another sick call request

5  on ████, 2024, marked received by the Jail on ████, 2024, stating: "My

6  tooth is hurting bad and been bleeding.  My face is swollen also please can I see the

7  dentist." Page 130.  He submitted a sick call request on ████, 2024, marked

8  received by the Jail on ████, 2024, stating: "My tooth been hurting it's been

9  over 3 months." Page 101.  He was seen by a dental hygienist on ████,

10  2024, who took an x-ray and provided oral hygiene instruction.  Pages 231-236.

11  The hygienist also noted that Mr. ████ should be seen for an initial

12  examination and that the dentist should pay particular attention to teeth #1, #2, #17,

13  and #32. *Id*.  He submitted a sick call request on ████, 2024, marked

14  received by the Jail on ████, 2024, stating:  "I went to the dentist and I was

15  suppose to start antibiotics pills and mouthwash…" Page 133.  The response was

16  "dentist states you do not need antibiotics and mouthwash…" *Id*.[7]  He was seen

17  again by a dental hygienist on ████, 2024, who performed a debridement and

18  again referred Mr. ████ to a dentist for an exam.  Pages 237-241.  As of

19  Mr. ████'s ████, 2024 release, *see* Page 237 (Release: ████, 2024),

20  there is no documented dentist appointment (**after 187 days**).

21        57.    In summary, Mr. ████'s urgent care was untimely.  In fact,

22  Mr. ████ did not see a dentist for the six months between the time he first

23  complained of dental pain and his release from the Jail.  While a dental hygienist

24  saw him twice, the first visit was for an x-ray and the second visit was for a

---

[7] There is no documentation in the record that a dentist stated that Mr. ████
did not require antibiotics and mouthwash.  Although the sick call requ███ ████ hat
████ o the dentist," I understand that to refer to the dental hygienist Mr.
████ saw two days prior.

debridement—a procedure that had not been ordered by a dentist and was apparently unrelated to his toothache.  In my opinion, the dental hygienist was operating beyond the limits of his training.

58.     ███████ submitted a sick call request on ███████, 2024, marked received by the Jail on ███████, 2024, reporting:  "very bad toothache. Needs to be pulled out ASAP very bad pain."  Page 115 of 469.[8]  He submitted another sick call request on ███████, 2024, marked received by the Jail on ███████, 2024, stating:  "Need tooth pulled in very bad pain please help."  Page 116.  He was seen for a scheduled sick call exam with Dr. Polanco on ███████, 2024 (**after 27 days**), who extracted tooth #13 which he marked as having non-restorable decay.  Pages 323-328.

59.     Mr. ███████ submitted another sick call request on ███████, 2024, marked received by the Jail on ███████, 2024, stating:  "Once again I have a very bad toothache due to partial denture in mouth.  Please help."  Page 127.  He submitted another undated sick call request, marked received by the Jail on ███████, 2024, stating:  "Very bad toothache need to be pulled.  Please help. Thank you."  Page 128.  He was seen by Dr. Polanco for a scheduled sick call exam on ███████, 2024 (**after 7 days**), who extracted tooth #29, which he had diagnosed with non-restorable decay.  Pages 373-378.  Dr. Polanco also noted that Mr. ███████' next visit would be for a debridement.  *Id*.

60.     Mr. ███████ submitted a grievance on ███████, 2014, stating "emergency treatment" and reporting pain after a tooth removal.  Page 129. Although Mr. ███████ wrote:  "I AM EXHAUSTING MY IN CUSTODY REMEDIES WITH THIS GRIEVANCE FORM," the Sheriff's Department completed the "response" portion under "This submission is not a grievance or appeal: … It is an Incarcerated Person Request."  *Id*.  The response states:

---

[8] All citations are to the file named "███████medicalrecord.pdf"

1   "Additional pain meds requested from StatCare.  Ordered Naproxen & mouthwash."

2 *Id.*  There is no indication that Mr. ████ was seen by a dentist as of his ████,

3 2024 release (**31 days later**).  *See* Page 373 (Release: ████, 2024).

4        61.   In summary, Mr. ████'s urgent care was untimely.

5        62.   ████ submitted a sick call request on ████, 2024, marked as

6 received by the Jail on ████, 2024, reporting:  "I arrived w/ 6 screws in my jaw.

7 It's time for them to be removed."  Page 456 of 526.  He submitted another request

8 to have the screws removed on ████, 2024, which was marked received by the

9 Jail on ████, 2024.  Page 452.  He was examined by Dr. Patel on ████, 2024

10 (**after 16 days**), who made an offsite oral surgery referral.  Pages 65-73.

11        63.   Mr. ████ was seen by a dental hygienist on ████, 2024, performed a

12 full mouth debridement.  Page 74-82.

13        64.   Mr. ████ was seen by an outside oral surgeon, Dr. Mudd, on ████,

14 2024; Dr. Mudd submitted a treatment plan for removal of the screws in Mr. ████'s

15 jaw.  Pages 459-461.  Mr. ████ was again seen by Dr. Patel on ████, 2024, who

16 submitted another referral request, so that Mr. ████ could return to Dr. Mudd (the

17 outside surgeon) for the screw removal.  Pages 83-91.  Mr. ████ was scheduled for

18 a return appointment with the oral surgeon on ████, 2024.  Page 466.  As of

19 ████, 2024—the day these records were pulled for production—Mr. ████ had

20 not had the screws removed (**51 days after his initial sick call request**).

21        65.   In summary, Mr. ████'s onsite and offsite urgent care were untimely.

22 The fact that Dr. Patel was required to submit a second referral for the same

23 procedure was responsible for some of the delay.

24        66.   ████ is completely edentulous and has a projected

25 release date of ████, 2024 (Dental Sick Call Note).  Page 4.  According to the

26 sick call summary of his medical record, he asked to be seen for dentures on

27 ████, 2023 and ████, 2023.  Page 3.  On ████, 2023, he told

28 a physician that he wanted to see a dentist for new dentures.  Page 1626 (MD Note).

67. Mr. ███████ was seen by Dr. Polanco on ████████, 2024, and reported: "When I came in to jail. The deputy stepped on my dentures and threw them away." Page 528-532. Dr. Polanco noted that "I/p claims mild difficulty chewing. Declined dental soft diet. Claims can tolerate regular diet." *Id.*

68. According to the sick call summary portion of Mr. ███████'s medical record, he again asked to be seen for dentures on ████████, 2024. Page 4.

69. He was seen by Dr. Patel on ████████, 2024 who noted that "Patient reports he will follow up with private dentist for complete maxillary and mandibular dentures." Pages 635-639.

70. In summary, given that his dentures were thrown away by deputies at booking, he should have been referred to an outside dentist on an expedited basis to fabricate replacement dentures.

71. ███████████ reported tooth pain during his ██████, 2022 booking. Page 174 of 3244. He submitted a sick call request on ██████, 2022, marked received by the Jail on ██████, 2022, stating: "cracked teeth hurt." Page 812.[9] He submitted a sick call request on ██████, 2022, marked received by the Jail on ██████, 2022, stating: "teeth are hurting." Page 809.[10]

72. Dr. Patel saw him at an "In Housing Unit Exam" on ████████, 2022 (**after 32 days**). Pages 2702-2706. Dr. Patel noted, "Patient was unable to show which tooth hurts." *Id.* She prescribed an antibiotic and an analgesic and indicated that a sick call appointment should be scheduled after he "finish[ed] all medication" so an x-ray could be taken in the clinic. *Id.* However, it is not clear that Dr. Patel

---

[9] The date written by Mr. ███████ on this request is ██/21"; however, I assume this date—in particu███e ███is a typ███████ ██ror, and the req███████s actually written on ██████, 2022. Notably, M████████████ was booked on ██████, 2022 and this reque███ marked received on ███████.

[10] The date written by Mr. ███████ on this request is "██/21." As explained above, I assume this is a ty███████l error, and the requ███ was actually written on that day in 2022.

actually scheduled the follow-up appointment; her notes suggest that she put the onus on Mr. ▮▮▮ to "schedule a sick call." *Id.* A nurse completed another Dental Complaint Form for Mr. ▮▮▮ on ▮▮▮, 2022 noting a toothache in a left lower molar and swollen gums and referred him to a dentist. Pages 349-351. Mr. ▮▮▮ was seen by Dr. Polanco on ▮▮▮, 2022 (**107 days after Dr. Patel indicated an in-clinic appointment was necessary**). Pages 2496-2500. Dr. Polanco identified an abscess on tooth #18 and slated it for extraction, which Mr. ▮▮▮ apparently agreed to, followed by antibiotics and analgesics. *Id.* Dr. Polanco checked the box indicating a follow-up appointment would be necessary, presumably so that he could perform the extraction within the therapeutic window of the antibiotics. *Id.* Although Dr. Polanco described this appointment as an "initial" examination, no periodontal probing was documented, nor was a treatment plan documented for any tooth other than #18. *Id.*

73.     Mr. ▮▮▮ was seen by Dr. Polanco for a scheduled sick call appointment on ▮▮▮, 2022, who noted that teeth #14 and #15 were decayed but restorable. Pages 2380-2384. Mr. ▮▮▮ declined extraction of both teeth, and Dr. Polanco prescribed antibiotics and analgesics. *Id.* There is no indication that Dr. Polanco discussed the possibility of a filling or offsite treatment with Mr. ▮▮▮. *Id.*

74.     Mr. ▮▮▮ submitted a sick call request on ▮▮▮, 2023, marked received by the Jail on ▮▮▮, 2023, stating he had a "big ab[sc]ess," "gums swollen, can't eat, in serious pain." Page 613. He submitted two sick call requests on ▮▮▮, 2023, marked received by the Jail ▮▮▮, 2023, reporting: "Hard to sleep, eat mouth hurts bad. Have not ate for 2 days. Toothache" and "[cy]st on gums, got 3 infected teeth, can't eat or sleep." Pages 596-597. He submitted a sick call request on ▮▮▮, 2023, marked received by the Jail on ▮▮▮, 2023, reporting: "Been up all night crying in pain (3 infected teeth) … my face is swelling." Page 595. A nurse completed

1  another Dental Complaint Form for Mr. ████████ on ████████, 2023 noting a

2  toothache in a left upper molar rated a 6 out of 10) on the pain scale, starting 5 days

3  prior, dispensed an analgesic, and scheduled a dental sick call appointment.

4  Pages 332-334.  A nurse completed another Dental Complaint Form for

5  Mr. ████████ on ████████, 2023, noting a toothache in a left upper molar rated

6  5 out of 10 on the pain scale, and dispensed an analgesic.  Pages 329-330.

7  Mr. ████████ submitted a sick call request on ████████, 2023, reporting painful

8  infected teeth that were causing "trouble eating and sleeping."  Page 571.  He was

9  seen by Dr. Polanco on a scheduled sick call visit ████████, 2023 (**after 70 days**).

10  Pages 2081-2085.  Mr. ████████ declined extractions of teeth that Dr. Polanco

11  apparently noted were restorable.  *Id.*  There is no indication that Dr. Polanco

12  discussed the possibility of referring Mr. ████████ to an offsite specialist for

13  treatment.  *Id.*  Dr. Polanco prescribed antibiotics and analgesics.  *Id.*

14      75.    Mr. ████████ submitted a sick call request on ████████, 2023,

15  marked received by the Jail on ████████, 2023, stating: "Need antibiotics

16  ab[sc]ess on tooth difficult to eat lots of pain.  Also need crown replacement, "have

17  been in custody for 13 months."  Page 418.  He submitted another sick call request

18  on ████████, 2024, marked received by the Jail on ████████, 2024, reporting:

19  "Infection in tooth … in a lot of pain (swelling in gum area) trouble eating."

20  Page 389.  He submitted a sick call request on ████████, 2024, received by the Jail

21  on ████████, 2024, reporting:  "Bleeding (I'm in pain) I can't eat.  Teeth may

22  already be infect as we speak."  Page 379.  A nurse completed a Dental Complaint

23  Form for Mr. ████████ on ████████, 2024, noting a toothache with pain at a 10

24  out of 10, foul odor, swollen gums, and signs of infection, and dispended analgesics.

25  Pages 314-315.  According to the nurse, "[i]t was explained to [████████████]

26  that the dentist will be in tomorrow."  *Id.*  Mr. ████████ was seen by Dr. Polanco

27  for a scheduled sick call appointment on ████████, 2024 (**after 154 days**), who

28  extracted tooth #31.  Pages 1212-1217.

76.    Mr. ███████ submitted a sick call request on ████████, 2024, marked received by the Jail on ██████, 2024, reporting: "cracked tooth in pain, trouble eating … throbbing hard." Page 362. He again submitted a sick call request on ██████, 2024, which appears to report some kind of dental pain. Page 374.[11] A nurse completed a Dental Complaint Form for Mr. ██████████ on ██████████, 2024, noting that he reported having an extraction 2 weeks ago and had toothache in his right lower quadrant with pain at a 5 out of 10, as well as swollen gums with the presence of pus. Pages 310-311. I assume that the extraction referred to was the ██████████, 2024 extraction of tooth #31. The nurse noted that signs of infection were present and indicated that Mr. ████████ should be seen by a dentist. *Id.*

77.    A dental hygienist noted that Mr. ██████████ was not able to attend for a ████████, 2024 dental hygiene appointment for medical reasons. Pages 1011-1016. He was seen by a dental hygienist on ████████, 2024 at which time x-rays[12] were taken and a debridement was performed. Pages 976-981. The hygienist noted that he will schedule extraction appointment with the dentist. Mr. ████████████ submitted a sick call request on ████████, 2024, marked received by the Jail on ██████, 2024, stating: "Need to see dental, soreness in gum area right side where I had tooth [ex]tracted. 2 pointy bumps on gums hurts when I try to chew." Page 359. There is no indication that Mr. ██████████ had been seen by a dentist as of ██████, 2024 (**58 days later**)—when the chart was pulled for production.

78.    In summary, Mr. ██████████'s urgent care was untimely. The delay in urgent care appears to be due in part to Dr. Patel's failure to schedule a follow-up appointment for Mr. ██████████ after seeing him in his housing unit. Instead,

---

[11] The quality of the scan makes the text difficult to read. However, the first word is clearly "pain," and the response section states, "Antibiotics ordered patient is scheduled for dental." *Id.* For that reason, I assume this request includes a report of dental pain.

[12] 2 bitewings and 1 periapical x-ray.

1  Dr. Patel placed the burden on Mr. ████ to "schedule" his own appointment,

2  despite the fact that he has a known developmental disability. *See* Page 3072

3  (████, 2022 notification of developmental disability from CDCR). In addition,

4  there is no evidence that Mr. ████ received appropriate routine care

5  (including a full treatment plan), despite being incarcerated for nearly two years at

6  the time his records were pulled for production.

7       79. ████ was seen by a nurse on ████, 2024, who completed

8  a Dental Complaint Form, which noted that Mr. ████ was experiencing pain and

9  swelling to the right upper gum area. Pages 38-40. The nurse also noted that

10  Mr. ████ is edentulous (*i.e.*, he has no teeth) and has a congenital cleft palate. *Id.*

11  The nurse noted that Mr. ████ should be referred to a dentist or advanced clinical

12  practitioner. *Id.* Mr. ████ submitted a grievance on ████, 2024, stating: "I

13  went to the doctor … here at GBDF and … was told I would see the dentist in this

14  last week …. I'm out of pills for the pain and I would to get into the dentist as soon

15  as possible." Page 439 of 589. He submitted a sick call request on ████,

16  2024, marked received by the Jail on ████, 2024, reporting: "My top gum is

17  badly infected, I need antibodies as I'm in severe pain." Page 457. He was seen by

18  Dr. Patel on ████, 2024 (**after 32 days**), who noted that he had maxillary

19  hardware embedded in the bone and requested an offsite oral surgery referral for

20  evaluation and treatment of the hardware. Pages 227-232.

21       80. Mr. ████ was seen by an offsite oral surgeon on ████, 2024, who

22  noted that the infected hardware near teeth #5 and #6 (the right side) should be

23  removed. Page 464-466. The hardware was removed by the oral surgeon on

24  ████, 2024 (**76 days after Dr. Patel initiated the referral**). Pages 502, 504.

25       81. Mr. ████ submitted an undated sick call request, marked "completed"

26  on ████, 2024, reporting: "I went in for a remov[al] of a pi[e]ce of me[t]al that

27  got ben[t] and it's still there and they took out something else." Page 503. A nurse

28  completed a Dental Complaint Form for Mr. ████ on ████, 2024, noting:

1   "IP was seen for offsite dental procedure yesterday.  With noted mild swelling on

2   the right side of face."  Pages 50-52.  Mr. ███ was also seen by a nurse

3   practitioner on ████, 2024, who noted that Mr. ███ reported:  "I went in today

4   for a Procedure, and they took something out, and it feels like its still there, I have

5   more questions about what they did in my p[ro]cedure today."  Page 167.  He was

6   seen by Dr. Polanco on ████, 2024 (**after 7 days**), who noted that Mr. ███

7   stated that the oral surgeon had removed "the wrong stuff on the left side.  It was

8   supposed to be the right side.  It's still infected.  I don't want to see him again."

9   Pages 342-347.  Dr. Polanco further noted that the hardware near teeth #5 and #6,

10  which the offsite oral surgeon had noted should be removed on ████, 2024, was

11  still present, and that the hardware near teeth #13 and #14 (on the opposite side) had

12  been removed.  *Id.*  In other words, Dr. Polanco confirmed that the Mr. ███'s

13  report that the hardware on the wrong side had been removed was consistent with

14  the x-rays.  According to Dr. Polanco, Mr. ███ declined the opportunity to go

15  back to the oral surgeon for removal of the hardware near teeth #5 and #6.  *Id.*

16      82.    Mr. ███ submitted a grievance on ████, 2024, stating:  "During

17  my incarceration, I developed a small abscess on the right side of my pallet.  The

18  doctor said he was going to remove a small piece of metal on the right side to

19  release pressure.  Instead, [he] removed a large metal pallet piece on the opposite

20  side, causing s[evere] pain.  My quality of life is 0 now, and [it] took them a whole

21  week to provide antibiotics or a soft diet or pain reliever."  Page 510.  He was seen

22  by a nurse practitioner on ████, 2024, who reported that Mr. ███ was "still

23  hurting ever since the OMFS (Dr. Mudd) did a procedure on his mouth" and that he

24  "couldn't sleep due to pain."  Page 169.

25      83.    Dr. Polanco again saw Mr. ███ on ████ 2024.  Pages 364-369.

26  Dr. Polanco noted that the swelling near teeth #5 and #6 had gone down, and

27  Mr. ███ again refused a referral to go back to the oral surgeon for removal of the

28  hardware on that side.  *Id.*, Page 509.

84.     According to the sick call summary portion of Mr. ████ 's medical record, Mr. ████ submitted a sick call request received on ████, 2024, stating: "I am requesting Dental to replace my teeth with dentures." Page 28.  He is documented as having refused a dental sick call appointment to evaluate him for that issue on ████, 2024. *Id.*

85.     Mr. ████ submitted a sick call request for ibuprofen for pain on ████, 2024, marked received by the Jail on ████, 2024.  Page 515.  Mr. ████ was seen by a nurse practitioner in his housing unit on ████, 2024, who diagnosed  Mr. ████ with intraoral cellulitis and started him on antibiotics. Page 176.

86.     In summary, Mr. ████ 's onsite and offsite urgent care was untimely. A delay of 76 days to remove painful hardware is especially inordinate. Furthermore, the issue of the oral surgeon's removal of skeletal fixation hardware on the wrong side should be addressed by the CQI committee.

87.     ████ submitted a sick call request on ████, 2023, marked received by the Jail on ████, 2023, reporting: "My left bottom side of my teeth are in pain and hurt when I eat, my gums bleed when I brush.  Please help with my cavity I don't know if its only just one.  Thank you." Page 189 of 204. A nurse completed a Dental Complaint Form for Mr. ████ on ████, 2023, noting Mr. ████ was experiencing pain rated a 5 out of 10 in the lower left with a duration of 3 weeks, dispensed analgesics, and scheduled him for a dental sick call appointment.  Pages 75-77.  He was seen by a dental hygienist on ████, 2024, who took an x-ray, did an examination, provided oral hygiene instruction, and scheduled a dentist appointment to complete the initial exam.  Pages 144-149.  He was seen by Dr. Polanco for a scheduled sick call appointment on ████, 2024 (**after 91 days**), who noted two teeth to be restored.  Pages 150-155.  Dr. Polanco indicated that Mr. ████ should be scheduled for a follow-up appointment with a hygienist for a debridement.  *Id.*  However, there is no indication that a follow-up

appointment was scheduled for Dr. Polanco to fill the two teeth he had identified as decayed. *Id.*

88.    Mr. ███ was seen by a dental hygienist on ███, 2024, who performed a full mouth debridement.  Pages 156-161.  The hygienist did not document periodontal probing.  Pages 156-161.

89.    There is no indication that Mr. ███ was seen by a dentist again for treatment of his decayed teeth as of ███, 2024 (**21 days after Dr. Polanco diagnosed them as decayed**)—the date that the records were pulled for production.

90.    In summary, the urgent care provided to Mr. ███ was untimely and inadequate.  Mr. ███ was not seen by a dentist for 91 days after he complained of pain, and, even after a dentist diagnosed two teeth as decayed and requiring treatment, he had not received treatment for a further 21 days (at least), nor were any definite plans made to initiate treatment.  In addition, the dental hygienist who saw Mr. ███ on ███, 2024, acted outside his scope of practice by taking an x-ray since at this point, Mr. ███ was not a patient of record.

91.    As described in Exhibit C to the Shulman Report, ███ is missing all digits on his hands, meaning that he cannot brush his teeth.  He was seen by Dr. Patel on ███, 2023, who noted that teeth #1 and #32 should be extracted by an oral surgeon, and that tooth #31 required either a root canal and crown or extraction.  SD_858761-858766.  Mr. ███ saw an oral surgeon on ███, 2024, who submitted a treatment plan for the surgical removal of teeth #1, #31, and #32.  As noted in the Shulman Report, those extractions still had not been performed as of ███, 2024.

92.    Mr. ███ was seen by Dr. Patel on ███, 2024 and he told her that he needed another oral surgery referral and Dr. Patel placed another offsite referral at that time.  Pages 4429-4434 of 6052.

93.    As of ███, 2024 (**183 days after Dr. Patel recommended the referral**)—the day Mr. ███'s medical records were pulled for production to

1  Plaintiffs' counsel—there is no indication that the extractions had occurred.

2      94.    In summary, the initial dental examination was untimely and the offsite

3  referral would have been untimely if the extractions were not done within a week.

4      95.    ███████████ reported dental pain to a nurse in his housing unit

5  on ██████, 2023.  Page 528 of 1324.  The nurse completed a Dental Complaint

6  Form for Mr. ███████████ that day, noting that he had a toothache in a lower right

7  molar with pain rated 10 out of 10, dispensed an analgesic, and scheduled him for a

8  dental sick call appointment.  Pages 291-292.  Mr. ███████ submitted a sick call

9  request on ██████, 2023, marked received by the Jail on ██████, 2023, stating:  "I

10  have a cavity on my tooth lot of pain.  Thank you."  Page 863.  A nurse completed

11  another Dental Complaint Form for Mr. ███████ on ██████, 2023, noting that

12  he had a toothache rated a 20 out of 10 for pain and checking the box for "[n]o signs

13  of infection present.  Pages 285-287.  The nurse also noted that Mr. ███████

14  should be seen by a dentist.  *Id.*  He submitted another sick call request on ██████,

15  2023, reporting:  "I have a cavity on my tooth."  Page 879.  He submitted another

16  sick call request on ██████, 2023, marked received by the Jail on ██████, 2023,

17  stating:  "need tooth pulled."  Page 877.  He submitted another sick call request on

18  ██████, 2023, marked received by the Jail on ██████, 2023, requesting to follow

19  up with a dentist.  Page 873.  Mr. ███████ was seen by Dr. Polanco on ██████,

20  2023 (**after 36 days**), for what Dr. Polanco described as an "initial" examination.

21  Pages 662-667.  Although Dr. Polanco's notes indicate that Mr. ███████ stated,

22  "I think I need a tooth pulled," Dr. Polanco did not chart any teeth and instead

23  conducted only a "limited visual exam," likely because there was "[n]o available

24  dental assistant."  *Id.*  Dr. Polanco also noted generalized periodontitis (although

25  there was no documented probing) and indicated that Mr. ███████ should be

26  rescheduled for a Panroex and a "full dental exam."  *Id.*  Mr. ███████ was then

27  seen by a dental assistant on ██████, 2023, who noted that Mr. ███████ was

28  experiencing pain rated a 9 out of 10.  Pages 656-660.  The dental assistant also

1  noted that Mr. ███████ "needs dental eval with provider only seen with [dental

2  assistant]." *Id.* The dental assistant than diagnosed Mr. ███████ with non-

3  restorable decay on tooth #30, despite the fact that no dentist was available to make

4  a formal diagnosis. *Id.* Mr. ███████ was seen by Dr. Polanco again on █████,

5  2023 (**54 days after Dr. Polanco originally indicated his appointment should be**

6  **rescheduled for a time when he had a dental assistant, and 89 days after**

7  **Mr. ███████ originally complained of pain**). Pages 648-653. Dr. Polanco

8  diagnosed tooth #30 as decayed but restorable; however, he did not discuss the

9  possibility of an offsite referral with Mr. ███████, who declined to have it

10  extracted. *Id.* Dr. Polanco prescribed antibiotics and analgesics. *Id.*

11      96.    Mr. ███████ submitted a sick call request on █████, 2023, marked

12  received by the Jail on █████, 2023, stating: "Tooth hurts when cold hits it."

13  Page 861. He submitted another sick call request on █████, 2023, marked

14  received by the Jail on █████, 20923, stating: "Tooth Pain. Thank you."

15  Page 854. A nurse completed a Dental Complaint Form for Mr. ███████ on

16  █████, 2023, noting that he had a toothache in his right lower back molar lasting

17  one week and with pain rated 6 out of 10. Pages 267-269. Mr. ███████ was seen

18  by Dr. Patel on █████, 2023 (**after 35 days**), who confirmed that tooth #30 was

19  decayed but restorable. Pages 636-641. There is no indication that Dr. Patel

20  discussed the possibility of an outside referral with Mr. ███████. *Id.*

21  Mr. ███████ declined an extraction, and Dr. Patel prescribed antibiotics and

22  analgesics. *Id.*

23      97.    Mr. ███████ submitted a sick call request on █████, 2024,

24  marked received by the Jail on █████, 2024, stating: "Pain on my tooth, when I

25  eat, and when I drink cold water." Page 761. He submitted another request on

26  █████, 2024, marked received by the Jail on █████, 2024, stating: "Tooth

27  pain when I drink cold water and chew on that side." Page 758. He was seen by a

28  dental hygienist on █████, 2024, who performed a prophy and referred him to a

dentist to treat tooth #30. Pages 614-619. A nurse completed a Dental Complaint Form for Mr. ███████ on ██████, 2024, noting toothache with pain rated 10 out of 10. Pages 212-214. The nurse indicated she would refer Mr. ███████ to be seen by the dentist. *Id.* Mr. ███████ was seen by a dental hygienist for a scheduled sick call appointment on ██████, 2024, who took a Panorex and referred Mr. ███████ to a dentist for treatment of tooth #30. Pages 606-611. There is no indication that Mr. ███████ was seen by a dentist as of his ██████, 2024 release (**81 days later**). Page 34.

98.    In summary, Mr. ███████'s urgent care was untimely. The delays in Mr. ███████'s urgent care were caused in part by staffing issues, as he was scheduled to be seen first by a dentist without a dental assistant, then by a dental assistant without a dentist—neither of whom were able to provide treatment on their own.

99.    ███████ reported dental pain during his ██████, 2023 health assessment. Page 89 of 201. A nurse completed a Dental Complaint Form for him that day, noting that he had pain in his font teeth and a lower molar of several weeks' duration and at 6 out of 10 on the pain scale, dispensed an analgesic, and referred Mr. ███████ to be seen by a dentist. Page 39-40. Mr. ███████ submitted a sick call request on ██████, 2023, marked received by the Jail on November 23, 2023, stating that he has toothache, needs to take Tylenol. Page 142. A nurse completed a Dental Complaint Form for Mr. ███████ on ██████, 2023, noting that he had pain in his front teeth and left molars, rated 8 out of 10. Pages 42-43. Mr. ███████ was seen by Dr. Polanco on ██████, 2023 (**after 16 days**), who noted teeth #12, #14, and #29 had non-restorable decay and were indicated for extraction. Pages 94-99. Mr. ███████ agreed to the extractions, and Dr. Polanco prescribed antibiotics and analgesics. *Id.* A ██████, 2023 entry in the sick call summary of Mr. ███████'s medical record states: "MUST SHOW extract tooth #29," but that the appointment was cancelled upon Mr. ███████'s

1    ██████████, 2023 release.  Page 23.

2        100.   In summary, Mr. ████████'s urgent care was untimely; in part, because

3    while Dr. Polanco checked the "schedule follow up exam" box, a dental

4    appointment was not generated.

5        101.   ████████████ submitted a sick call request on ████████, 2024,

6    marked received by the Jail on ████████, 2024, stating:  "My tooth is killing me.

7    Please may I see [] dentist."  Page 80 of 109.  He submitted a sick call request on

8    ████████, 2024, marked received by the Jail on ████████ 2024, stating:  "I'm in

9    a lot of pain.  My mouth hurts my gums."  Page 81.  He submitted another sick call

10   request on ████████, 2024, marked received by the Jail on ████████, 2024,

11   stating:  "My teeth are killing me help!  Please I'm in huge pain I can't eat.  I need

12   wisdom teeth removed."  Page 82.  A nurse completed a Dental Complaint Form for

13   Mr. ████████ on ████████, 2024, noting a right lower molar toothache with pain

14   rated 10 out of 10, dispensed analgesics, and requested a dental sick call

15   appointment.  Page 29-30.  A nurse again completed a Dental Complaint Form for

16   Mr. ████████ on ████████, 2024, noting the toothache, and dispensed analgesics.

17   Page 32-33.  A ████████, 2024 entry in the sick call summary portion of

18   Mr. ████████'s medical record, states that a dental appointment had "already

19   rescheduled twice, kindly eval."  Page 24.  ████████████ was seen by a dental

20   hygienist on ████████, 2024, who performed a full mouth debridement, took an x-

21   ray, and noted that the next visit would be an appointment with a dentist for an

22   exam.  Pages 60-66.  The hygienist also documented a "[l]imited periodontal

23   examination reveal[ing] gen[eral] 3-5mm of clinical attachment loss," but did not

24   document the location of the problematic areas.  *Id.*  Mr. ████████ submitted a sick

25   call request on ████████, 2024, marked received by the Jail on ████████, 2024,

26   stating:  "My tooth is killing me.  Please help me."  Page 84.  He submitted another

27   sick call request on ████████, 2024, marked received by the Jail on ████████, 2024,

28   stating:  "My tooth is killing me.  I can't sleep my pain is much."  Page 90.  A nurse

1 completed a Dental Complaint Form for Mr. ███ on ███, 2024, noting a

2 lower molar toothache that began on ███, 2024 rating a 6 out of 10 on the pain

3 scale, and dispensed analgesics.  Page 37-39.  Mr. ███ was seen by Dr. Polanco

4 on ███, 2024 (**after 77 days**), who extracted tooth #30.  Page 67-73.

5 Dr. Polanco did not comment on any of the other notations in Mr. ███'s dental

6 chart, which appear to be from a prior incarceration, indicating that teeth #2, #15,

7 #16, and #19 were decayed and/or abscessed and also required extraction; that tooth

8 #29 required either a root canal or an extraction; and that Mr. ███ should be

9 referred to an outside dentist for teeth #8 and #9.  *Id.*

10     102.   In summary, Mr. ███'s urgent care was untimely.

11     103.   ███, who was booked on ███, 2021, was seen by

12 Dr. Patel for an initial examination on ███, 2022.  Pages 296-300 of 1328.

13 Dr. Patel noted that Mr. ███ "was automatically schedule for visit," "does not

14 have any concerns[,] and does not need treatment at this time."  *Id.*  Dr. Patel did not

15 chart any teeth, nor is there any indication that she conducted periodontal probing or

16 otherwise did any examination of Mr. ███'s teeth.  *Id.*  Based on the dental

17 record, it appears that Dr. Patel merely asked Mr. ███ if he had any dental

18 complaints.  *Id.*

19     104.   Mr. ███ was seen by a dental hygienist for a scheduled sick call visit

20 on ███, 2024.  Pages 920-925.  The hygienist noted that she conducted a

21 "[l]imited periodontal examination" showing "3-4 mm of clinical attachment loss,"

22 without reference to any specific teeth, took an x-ray, performed a full mouth

23 debridement, and instructed him to return to the clinic for a dental exam (by a

24 dentist) for evaluation of bite alignment near teeth #22 and #23.  *Id.*

25     105.   He is documented as having refused a dental appointment on ███,

26 2024, though the refusal form is not signed by Mr. ███.  Pages 987-991, 1260.

27 According to a note in the sick call summary portion of Mr. ███'s medical

28 records, the refusal on ███, 2024 was related to Mr. ███ being "told that tx"

1    for bite alignment "is not performed here."  Page 28.

2        106.   In summary, Mr. ██████'s routine care falls short of the standard of

3    care.  Dr. Patel did not conduct a complete initial examination, nor did she

4    document a treatment plan.  Even if Mr. ██████ had no complaint at the time of the

5    visit, Dr. Patel should have performed a standard examination and charting—unless

6    Mr. ██████ **refused** care (which the record does not document).  In addition, it is

7    unclear from the record why the dental hygienist performed a full mouth

8    debridement, when Mr. ██████ did not request care and a dentist did not order that

9    treatment.  If the procedure was not ordered by a dentist, and the dentist was not in

10   the clinic at the time to have issued an oral order, the standard of care was violated.

11       107.   ████████████ was seen by a nurse for a health assessment on

12   ████████, 2023, who noted "[m]ultiple dental carries [sic]" and scheduled

13   Mr. ██████ for dental sick call.  Page 52 of 111.  He was seen by Dr. Polanco on

14   ████████, 2024 (**after 91 days**), who noted that a filling on Mr. ██████'s tooth #19

15   had fallen out.  Pages 73-78.  Dr. Polanco planned a to place a composite restoration

16   for tooth #19, but rescheduled because there was no dental assistant at the clinic.  *Id.*

17   There is no documentation in the record that the filling was ever placed.  *Id.*  There

18   is no indication that Dr. Polanco conducted a further examination or made a

19   treatment plan regarding the problems the nurse had identified on ████████, 2023.

20   *Id.*

21       108.   In summary, while this is not an urgent care issue, it is noteworthy that

22   while Dr. Polanco was not able to fill tooth #19 on ████████, 2004 due to the

23   absence of an assistant, he failed to reschedule the appointment for a date certain.

24   Mr. ██████ therefore did not receive any treatment for his cavity before his

25   ████████, 2024 release.  In addition, although Mr. ██████ was referred to dental

26   sick call for "multiple" cavities, there is no indication that Dr. Polanco assessed or

27   evaluated any tooth other than #19.

28       109.   ████████████ submitted a sick call request on ████████, 2024,

marked received by the Jail on ▬▬▬, 2024, reporting: "Leg hurts a lot!  Need to see dental too!"  Page 299 of 377.  He was seen by a nurse on ▬▬▬, 2024, who noted that Mr. ▬▬▬'s "left lower molar [was] partially chipped and broken to gum line" and scheduled him to see a dentist.  Pages 36-37.  Mr. ▬▬▬ was seen by a dental hygienist on ▬▬▬, 2024, who took an x-ray, interviewed him, and referred him to a dentist for an exam and diagnosis.  Pages 114-119.  The hygienist also noted a "possible infection" with "pain level 8."  *Id.*  Mr. ▬▬▬ was seen by Dr. Polanco on ▬▬▬, 2024 (**after 44 days**), who identified tooth #19 as being non-restorable and marked it for extraction.  Pages 126-131.  Mr. ▬▬▬ is documented as having agreed to the extraction, and Dr. Polanco prescribed antibiotics and analgesics.  *Id.*  Mr. ▬▬▬ is documented as having refused dental hygienist appointments on ▬▬▬, 2024, Pages 132-136, 285; and ▬▬▬, 2024, Pages 137-141, 294.  Neither of those refusal forms are signed by Mr. ▬▬▬.  He refused an appointment with Dr. Polanco on ▬▬▬, 2024.  Page 142-146.  That refusal form was signed by Mr. ▬▬▬, who explained:  "Don't feel good leg is hurting."  Page 296.  He is documented as having refused an appointment with a dental hygienist on ▬▬▬ 2024, though that refusal form is not signed by Mr. ▬▬▬.  Pages 147-151, 305.

110.   In summary, Mr. ▬▬▬'s one urgent care appointment was untimely.

111.   ▬▬▬ submitted a sick call request on ▬▬▬, 2023, marked received by the Jail on ▬▬▬, 2023, stating:  "I am in pain and need the dentist to pull a tooth upper left, it's really loose and hurts."  Page 423 of 582.  He submitted another sick call request on ▬▬▬, 2023, marked received by the Jail on ▬▬▬, 2023, stating:  "I am in much pain need a tooth pulled.  Food and other etc are disturbing it's place.  Serious."  Page 428.  According to the sick call summary portion of Mr. ▬▬▬'s medical records, he refused an "imported sick call triage" appointment regarding this complaint on ▬▬▬, 2023; there is no indication this appointment was for dental sick call or otherwise was with a dentist.  Page 29.

112.    He submitted a sick call request on January 6, 2024, marked received buy the Jail on ███████, 2024, stating:  "My tooth upper quadrant is real loose need's to get it pulled it hurts."  Page 462.  He submitted a sick call request on ███████ 2024, stating: "I need to see the dentist, I have a real loose tooth that needs out."  Page 478.

113.    A nurse completed a Dental Complaint Form for Mr. ███████ on ███████, 2024, noting a toothache of one month's duration of the right upper molar upper molar with intermittent pain, and dispensed analgesics.  Pages 79-81.  He was seen by Dr. Patel on ███████, 2024 (**after 275 days**), who extracted tooth #19 which was non-restorable and periodontally involved.  Pages 379-384.

114.    Mr. ███████ was seen by a dental hygienist on ███████, 2024 and did a full mouth debridement.  Pages 385-390.  The hygienist referred Mr. ███████ to a dentist "regarding more extractions."  Mr. ███████ is documented as having refused an appointment with Dr. Polanco on ███████, 2024, but the refusal form is not signed by Mr. ███████.  Pages 395-399, 486.

115.    In summary, Mr. ███████'s urgent care was untimely.

116.    ███████ was seen by a nurse on ███████ 2023 for an initial health assessment, who noted "[m]ultiple broken/decayed teeth."  Page 191 of 593.  The nurse noted that she would schedule Mr. ███████ for dental sick call.  *Id.* Mr. ███████ is documented as having refused an appointment with Dr. Patel on ███████, 2023 (**after 60 days**), though the refusal form is not signed by Mr. ███████.  Pages 199-203, 331.

117.    In summary, Mr. ███████'s care was untimely.[13]

118.    ███████ submitted a sick call request on ███████, 2023, marked received by the Jail on ███████, 2023, stating:  "Teeth loose, need of

---

[13] Although Mr. ███████ is not documented as having complained of dental pain, the booking nurs███████ription of this as a serious medical issue leads me to consider this an urgent care problem.

1   seeing someone.  Thank you."  Page 577 of 869.  On the bottom portion of the form,

2   a staff member wrote, "dentures."  *Id.*  He was seen by Dr. Patel on ███████,

3   2023 (after 19 days), who took an x-ray, noted that the dentures did not fit well, and

4   recommended that he use denture adhesive to keep the dentures in place.  Page 430-

5   435.

6          119.   Mr. ██████ submitted a sick call request on ███████, 2023, marked

7   received by the Jail on ████████, 2023,  stating:  "Plates need relined teeth.  Thank

8   you."  Page 586.  On the bottom of the form, a staff member wrote "denture

9   adjustment."  *Id.*  He submitted another sick call request on █████████, 2023,

10  marked received by the Jail on ████████, 2023, stating:  "In need of teeth plate

11  repair'd."  Page 589.  He submitted another sick call request on █████████, 2023,

12  marked received by the Jail on ████████, 2023, stating:  "my teeth plate need fix

13  can you help please.  Thank you."  Page 683.  He submitted another sick call request

14  on ████████, 2024, marked received by the Jail on █████████, 2024, stating:  "plate

15  for teeth crack trouble eating needs relined."  Page 691.  He submitted another sick

16  call request on ████████, 2024, marked received by the Jail on ████████, 2024,

17  stating:  "In need of seeing dentist emergency can't eat plat needs relined thank

18  you."  Page 693.  He submitted another sick call request on ████████, 2024, marked

19  received by the Jail on █████████, 2024, stating:  "teeth plate is really loose.  Needs

20  relined.  Trouble eating if you can kindly help with this matter.  Thank you.  Been

21  waiting to see the dentist."  Page 708.  He submitted another sick call request on

22  ████████, 2024, marked received by the Jail on ████████, 2024, stating:  "In need

23  of teeth glue been over 1 week since I had some."  Page 710.  A nurse completed a

24  Dental Complaint Form for Mr. ██████ on ████████, 2024, noting a "denture

25  adhesive problem" and recommending that he apply 10 grams of denture adhesive to

26  denture daily for 30 days.  Pages 490-491.  Mr. ██████ was scheduled to see a dental

27  hygienist on ████████ 2024, but was unable to attend because he was at court.

28  Pages 472-476.  He submitted another sick call request dated ████████, 2024,

1  marked received by the Jail on ██████, 2024, stating: "denture plates are see

2  through soon be nothing there. Need filled in please help in this matter. It been a

3  long time waiting for suppl[ie]s." Page 711. There is no indication that Mr. ████

4  was seen by a dentist as of ██████ 2024 (**195 days later**)—the day his records were

5  pulled for production.

6        120.   In summary, his routine care was untimely.

7        121.   ████████████ was booked on ██████, 2023. *See* Pages 13, 25 of

8  500. He was scheduled for a dental sick call appointment at Receiving Screening,

9  which was added to the calendar on ██████, 2024. Page 25. He was seen for that

10 appointment, which was staffed by a dental hygienist, on ██████, 2024. Pages

11 124-129. The hygienist noted that Mr. ██████ was edentulous, had no dentures, and

12 complained of painful gums. *Id*. She referred him to a dentist for an examination.

13 *Id*. He was seen by Dr. Patel on ██████ 2024 (**after 29 days**), who placed an offsite

14 referral for Mr. ██████ to be fitted with dentures. Pages 132-138.

15        122.   Mr. ██████ was seen by an offsite provider on ██████, 2024 (**after 35**

16 **day**s), who took impressions for complete dentures and noted that the next

17 appointment would comprise a bite registration. Page 378. There is no indication

18 that Mr. ██████ was seen again by either an onsite or offsite dentist as of ██████,

19 2024, when the record was pulled for production.

20        123.   In summary, his denture fabrication was delayed because Dr. Patel's

21 examination was untimely.

22        124.   ████████████ submitted a sick call request on ████████, 2021,

23 marked received by the Jail on ████████, 2021, stating: "I need to see the dentist.

24 I am in severe pain, possibly infected." Page 1637 of 2206. He was seen by

25 Dr. Polanco on ████████, 2021 (**3 days later**), who diagnosed tooth #19 as non-

26 restorable and requiring an extraction. Pages 732-736. Mr. ██████ agreed to the

27 extraction, and Dr. Polanco prescribed antibiotics and analgesics and indicated that a

28 follow-up exam should be scheduled. *Id*. Although Dr. Polanco noted that this was

1  an "initial" examination, Dr. Polanco did not chart any teeth other than tooth #19,

2  make a treatment plan, or document periodontal probing.  *Id.*

3     125.   Mr. ██████ was seen again by Dr. Polanco on ████████, 2021, who

4  extracted tooth #19.  Pages 739-743.

5     126.   Mr. ██████ is documented as having refused a ████, 2022

6  appointment with Dr. Polanco.  Pages 756-760.  There is no refusal form for that

7  date, though there is a █████, 2022 refusal form, which is not signed by

8  Mr. █████.  Page 1717.

9     127.   Mr. ██████ submitted a sick call request on ██████, 2022, marked

10 received by the Jail on ███████, 2022, stating:  "try to get tooth pulled out plz

11 ASAP."  Page 1726.  He submitted another sick call request on ██████, 2022,

12 marked received by the Jail on ███████, 2022, stating: "My tooth hurts really bad."

13 Page 1725.  He saw Dr. Polanco on ██████, 2022 (**3 days later**), who diagnosed

14 tooth #2 as decayed and non-restorable.  Pages 761-765.  Mr. ██████ agreed to the

15 extraction, and Dr. Polanco scheduled a follow-up exam.  *Id.*  Although Dr. Polanco

16 noted that this was an "initial" examination, Dr. Polanco did not chart any teeth

17 other than tooth #2, make a treatment plan, or document periodontal probing.  *Id.*

18 Mr. █████ submitted an undated sick call request, marked received by the Jail on

19 ████████, 2022, stating: "need tooth pulled out A.S.A.P."  Page 1727.  He was seen

20 by Dr. Polanco on ███████, 2022 (**after 1 day**), who extracted tooth #2.  Pages

21 768-772.  There are no further dental appointments documented.

22     128.   In summary, although Mr. ██████'s urgent care appointments were all

23 timely, his routine care was inadequate.  Although Mr. ███████ has been

24 incarcerated in the Jail continuously from █████████, 2021 to at least ████████,

25 2024 (when his records were pulled for production), he has never had an adequate

26 initial examination, nor had any treatment plan made.

27     129.   ████████████ submitted a sick call request on ████████, 2023,

28 marked received by the Jail on ████████, 2023, stating:  "Tooth cracked need to

1  get it out." Page 48 of 50.  A nurse completed a Dental Complaint Form for

2  Mr. ███ on ██████, 2023, noting that he had a toothache due to a cracked

3  lower left molar, rated 3 out of 10 on the pain scale.  Page 39 to 41.  The nurse

4  dispensed an analgesic and scheduled a dental sick call appointment.  *Id.*  Mr. ███

5  refused a ██████, 2023 appointment (**after 14 days**) with a dentist, noting "feel

6  better."  Page 49.

7        130.   In summary, Mr. ███'s urgent care was untimely.