GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:  (415) 433-6830
Facsimile:  (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
mfreedman@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone:  (510) 806-7366
Facsimile:  (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone:  (858) 677-1400
Facsimile:  (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,

Defendants.

Case No. 3:20-cv-00406-AJB-DDL

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE OPINIONS OF DEFENDANTS' EXPERTS**

Judge:  Hon. Anthony J. Battaglia

Date:  March 27, 2025
Time:  2:00 p.m.
Crtrm.:  4A

[4637704.4]

**TABLE OF CONTENTS**

Page

I.     DEFENDANTS ADMIT THAT THEIR MEDICAL AND MENTAL HEALTH EXPERTS FAILED TO CONSIDER IN-CUSTODY DEATHS. ...................................................................................... 1

II.    DR. MURRAY'S OPINIONS ARE INADMISSIBLE. .................................. 3

       A.    Appendix J and Related Opinions Should Be Excluded. ...................... 3

       B.    Opinions Regarding NCCHC Compliance Should Be Excluded. .......... 6

       C.    Defendants Concede Plaintiffs' Argument That Dr. Murray's Opinions About Medical Screening and Sick Call Processes Are Unreliable. .......................................................................................... 6

       D.    Dr. Murray Is Not an Expert on Substance Use Disorder, and His Opinions on the Topic Should Therefore Be Excluded. ......................... 7

III.   DR. PENN'S OPINIONS ARE INADMISSIBLE. .......................................... 7

IV.    DR. REINECKE'S OPINIONS ARE INADMISSIBLE. ................................. 9

V.     DEFENDANTS PROVIDE NO CLEAR ARGUMENT FOR WHY DR. WITHROW'S OPINION SHOULD BE ADMITTED. .......................... 12

VI.    DEFENDANTS DO NOT EXPLAIN WHY MR. VARE'S OPINIONS ARE RELIABLE AND HELPFUL TO THE TRIER OF FACT. .................. 13

VII.   DEFENDANTS CONCEDE THAT MS. PETERS' INTERVIEWS WITH CLASS MEMBERS WERE IMPROPER. .......................................... 15

VIII.  DEFENDANTS MAKE NO ARGUMENT THAT THEIR EXPERTS' LEGAL CONCLUSIONS SHOULD NOT BE EXCLUDED. ...................... 16

CONCLUSION ................................................................................................. 16

**TABLE OF AUTHORITIES**

**Page**

<u>**CASES**</u>

*A.B. v. Cty. of San Diego,*
2020 WL 4431982 (S.D. Cal. July 31, 2020)...............................7, 13, 14, 16

*Am. Transp. Sys., Inc. v. Prevost Car US Inc.,*
2024 WL 5185314 (C.D. Cal. Oct. 9, 2024) .........................................9, 11, 14

*Araujo v. Coachella Valley Water Dist.,*
2022 WL 4181004 (S.D. Cal. Sept. 12, 2022) ...................................................10

*Cambridge Lane, LLC v. J-M Mfg. Co.,*
2024 WL 4101940 (C.D. Cal. Aug. 2, 2024) ......................................................3

*Coleman v. Brown,*
938 F. Supp. 2d 955 (E.D. Cal. 2013).................................................................15

*Darensburg v. Metropolitan Transportation Commission,*
636 F.3d 511 (9th Cir. 2011)...............................................................................13

*Docusign, Inc. v. Sertifi, Inc.,*
468 F. Supp. 2d 1305 (W.D. Wash. 2006)............................................................3

*Dura Automotive Systems of Indiana, Inc. v. CTS Corp.,*
285 F.3d 609 (7th Cir. 2002)............................................................................4, 7

*Gen. Elec. v. Joiner,*
522 U.S. 136 (1977) ........................................................................6, 9, 11, 15

*In re Incretin-Based Therapies Prods. Liab. Litig.,*
524 F. Supp. 3d 1007 (S.D. Cal. 2021)...................................................2, 6, 10, 12

*In re Novatel Wireless Secs. Litig.,*
2011 WL 5827198 (S.D. Cal. Nov. 17, 2011) ..................................................10

*Jensen v. Shinn,*
609 F. Supp. 3d 789 (D. Ariz. 2022)...........................................................1, 8, 9

*McCoy v. DePuy Orthopaedics, Inc.,*
2024 WL 1705952 (S.D. Cal. Apr. 19, 2024) .....................................................4

*San Diego Comic Convention v. Dan Farr Prods.,*
2017 WL 4227000  (S.D. Cal. Sept. 22, 2017) ...............................................5, 9

*Stiner v. Brookdale Senior Living, Inc.,*
665 F. Supp. 3d 1150m(N.D. Cal. 2023) ..........................................................16

*Townsend v. Monster Beverage Corp.,*
303 F. Supp. 3d 1010 (C.D. Cal. 2018).............................................................10

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE OPINIONS OF DEFENDANTS' EXPERTS

*United States v. Hermanek,*
    289 F.3d 1076 (9th Cir. 2002)............................................................................5

*United States v. Valencia-Lopez,*
    971 F.3d 891 (9th Cir. 2020)............................................................................5

*Walker v. Conagra Brands, Inc.,*
    2023 WL 8885148 (C.D. Cal. 2023)................................................................4

**STATUTES**

Cal. Gov't Code § 11135..................................................................................10

**RULES**

Fed. R. Evid. 702 ..............................................................................................9

1    Defendants oppose Plaintiffs' Motion to Exclude Opinions of Defendants'

2    Experts ("Motion"), Dkt. 779-1, largely by arguing that the Motion is "not a Daubert

3    motion," *see, e.g.*, Dkt. 795 ("Opp.") at 16–17, and urging the Court to wait to

4    address their experts' insufficient knowledge of the facts of this case, undefined

5    methodologies, and unexplained application of those methodologies to the facts.

6    But the arguments for exclusion raised by Plaintiffs are well supported, including by

7    decisions from this Court.  Defendants have not met their burden of establishing that

8    Federal Rule of Evidence 702 is satisfied.  Plaintiffs' Motion should be granted.

9    **I.    DEFENDANTS ADMIT THAT THEIR MEDICAL AND MENTAL**
     **HEALTH EXPERTS FAILED TO CONSIDER IN-CUSTODY**

10   **DEATHS.**

11   Plaintiffs seek to exclude the broad opinions of Defendants' medical expert,

12   Dr. Murray, and mental health expert, Dr. Penn, that the healthcare system at the

13   San Diego County Jail ("Jail") is adequate.  Mot. 2–25.  Plaintiffs challenged these

14   opinions because those experts did not analyze any in-custody deaths, which are at

15   the core of this case. *See id.* 3–6, 14–17.  In response, Defendants implicitly

16   concede that both experts did not review in-custody deaths. *See* Opp. 2–4, 10–11.

17   They nevertheless assert that Drs. Penn and Murray's opinions are admissible.

18   Failing to analyze in-custody deaths when such deaths are at issue and

19   exemplify adverse outcomes is a paradigmatic example of an expert cherry-picking

20   data.  Indeed, the district court in another correctional conditions case, *Jensen v.*

21   *Shinn*, discounted Dr. Penn's opinion for similar reasons.  There, as here, Dr. Penn

22   failed to offer any opinions about "specific" "adverse patient outcome[s]"—*e.g.*,

23   whether any suicides were preventable—and instead opined that the system

24   provided adequate care because the prison performed mortality reviews (without

25   examining the quality of those reviews).  609 F. Supp. 3d 789, 851 (D. Ariz. 2022).

26   As that court explained, "the existence of those [mortality] reviews and policies

27   does not establish the reviews or policies are effective, thorough, or competent." *Id.*

28   Drs. Penn and Murray have made the same mistake here.

1    Defendants' attempt to distinguish this Court's decisions regarding cherry-
2  picked data fail.  *See* Opp. 3–4.  Though neither *San Diego Comic* or *Incretin-Based*
3  *Therapies* are correctional healthcare cases, their underlying reasoning applies.
4  When an expert considers only "favorable data"—for example, by avoiding adverse
5  outcomes such as in-custody deaths—that expert's opinions are "unduly results-
6  driven, not good science, and therefore inadmissible."  *In re Incretin-Based*
7  *Therapies Prods. Liab. Litig.*, 524 F. Supp. 3d 1007, 1039 (S.D. Cal. 2021).

8    Defendants wrongly contend that Plaintiffs have adopted a "world view that
9  the existence of in-custody deaths means that in-custody medical care is per-se
10  inadequate[.]"  Opp. 2–3; *see also id.* 10.  To the contrary, Plaintiffs' experts formed
11  their opinions by reviewing numerous in-custody deaths and determined that
12  Defendants' systemic failures contributed to those deaths.  *See* Dkt. 796-3, Ex. 1 at
13  26–68, Ex. 2 at 4–28; Dkt. 796-4, Ex. 1 at 3, 19–20, 32–35, 47–49, 105–06, Ex. 2 at
14  24–27, 43–45; Dkt. 796-5, Ex. 1 at 44–48, 58, 90–101, 119–20, 126, Ex. 2 at 21, 36,
15  68.[1]  Defendants' own medical examiner concluded that two deaths since the filing
16  of this class action were "homicides" due to medical neglect.  Dkt. 796-2, Ex. E.
17  Drs. Murray and Penn's failure to even consider these deaths, despite their obvious
18  import, is cherry-picking, warranting exclusion of their opinions.

19  **II.    DR. MURRAY'S OPINIONS ARE INADMISSIBLE.**

20    **A.    Appendix J and Related Opinions Should Be Excluded.**

21    Plaintiffs seek to exclude the conclusions in Appendix J of Dr. Murray's
22  report regarding whether medical care for 81 chronic-care patients met the standard
23  of care, as well as numerous additional opinions that rest on those conclusions.
24  Mot. 6–10.  Those opinions are inadmissible because Dr. Murray did not review the
25  medical records himself, did not supervise the five assistants who conducted the
26

27  [1] Defendants did not oppose Plaintiffs' motion to seal documents filed in conjunction with Plaintiffs' *Daubert* motion.  Dkt. 780.  Plaintiffs respectfully
28  request that the Court grant the sealing motion.

1  review, and did not even provide the assistants with a definable standard of care to

2  apply.  *Id.*  In response, Defendants confirm that Dr. Murray did not review any of

3  those medical records.  Opp. 6.  Defendants do not dispute that Dr. Murray failed to

4  provide his assistants with a definable standard of care to apply, or that he admitted

5  that his assistants may have applied *different*, subjective standards of care when

6  analyzing those records.[2]  *See* Mot. 8–9 (quoting Dr. Murray's deposition

7  testimony).  Defendants further admit that a "testifying expert cannot merely act as a

8  conduit for the underlying expert's opinion" and that "more scrutiny will be given to

9  an expert's reliance on the … analysis of another expert where the other expert

10  opinions were"—as they were here—"developed for the purpose of litigation."

11  Opp. 7.  Nonetheless, Defendants claim that the conclusions in Appendix J that

12  individual patients received care meeting the undefined "standard of care," as well

13  as any conclusions resting on Appendix J, should be admitted.

14        Defendants are incorrect that the case law supports Dr. Murray's reliance on

15  his assistants' reviews.[3]  *McCoy v. DePuy Orthopaedics, Inc.*, 2024 WL 1705952

16  (S.D. Cal. Apr. 19, 2024), cuts in Plaintiffs' favor.  The testifying expert in that

17  case, who replaced an expert previously hired by the same party, reviewed the same

18

19  _____

[2] Defendants attempt to address some of these issues with a new declaration from Dr. Murray, in which he confirms he did not review the records, but states that he did review the summaries drafted by his assistants.  Dkt. 795-1 ¶¶ 6–7.  Plaintiffs object to and move to strike this improper declaration, which contains inadmissible legal arguments, *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 n.3 (W.D. Wash. 2006), and is untimely and inadmissible for the reasons explained in Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, Dkt. 796 at 3-7.  *See also Cambridge Lane, LLC v. J-M Mfg. Co.*, 2024 WL 4101940, at *6–12 (C.D. Cal. Aug. 2, 2024) (striking untimely expert declarations filed in support of opposition to *Daubert* motion seeking to exclude those experts' testimony).  And even if the declaration were admissible, it does not remedy any of the reliability and methodological problems with Appendix J.

[3] Defendants incorrectly contend that Plaintiffs conceded that the Appendix J conclusions about individual patient care are supported by other evidence.  *See* Opp. 5–6.  As noted in Plaintiffs' Motion, Plaintiffs' own medical expert disagreed with those conclusions.  Mot. 7 n.4.  And, Defendants have not pointed to any evidence regarding the standard of care provided to the 81 patients described in Appendix J, other than their medical records, which Dr. Murray did not review.

1  documents considered by the first expert and "started from ground zero" in making

2  her own conclusions. *Id.* at *12. Here, Defendants concede that Dr. Murray did *not*

3  review the medical records that his assistants reviewed. Opp. 6. *Walker v. Conagra*

4  *Brands, Inc.*, 2023 WL 8885148 (C.D. Cal. 2023), also supports Plaintiffs' position.

5  There, the court found that the testifying expert's reliance on another expert's report

6  was "fatal to her expert testimony" in part "because she did not conduct an

7  independent investigation of the underlying evidence relevant to [those]

8  conclusions." *Id.* at *10. *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*,

9  285 F.3d 609 (7th Cir. 2002), is similarly unavailing. The Seventh Circuit explained

10 that an expert may use assistants, but only if she "supervise[s] them carefully." *Id.*

11 at 612–13. Here, Dr. Murray did not supervise his assistants, define the standard of

12 care for them, or check their work against any of the records. *See* Mot. 8–9 (quoting

13 Dr. Murray's deposition testimony).

14         Defendants' arguments regarding Dr. Murray's "methodology" miss the

15 point. *See* Opp. 8. There is no dispute that Dr. Murray—and by extension his

16 assistants—did not use a definable "standard of care" when they offered opinions

17 that an individual patient's care "met the standard of care." *See* Mot. 8–9. Each of

18 those conclusions are therefore unreliable. *See San Diego Comic Convention v. Dan*

19 *Farr Prods.*, 2017 WL 4227000, at *7 (S.D. Cal. Sept. 22, 2017) (excluding opinion

20 when report "lacks an explanation as to what methodology [the expert] uses").

21 Defendants' contention that "Dr. Murray's opinions were based on medical records

22 selected randomly," Opp. 8, is unrelated to Plaintiffs' Motion. Plaintiffs are not

23 challenging the underlying data for these opinions (the medical records), but rather

24 the lack of any discernible methodology applied to the data.[4]

25

26 [4] Defendants attempt to distinguish *United States v. Valencia-Lopez*, 971 F.3d 891
   (9th Cir. 2020) and the case quoted therein (*United States v. Hermanek*, 289 F.3d
27 1076 (9th Cir. 2002)) by asserting that they are criminal cases with different
   procedural histories. But in both cases the Ninth Circuit explained that it was
28 conducting *Daubert* analyses, which require the court to "assure that the methods

1    Finally, notwithstanding Defendants' protestations to the contrary,

2  Dr. Murray's declaration in *Plata v. Brown* criticizes the approach he and his

3  assistants took in in this case.  *See* Opp. 8–9.  In *Plata*, Dr. Murray attested that

4  "subjective review of care provided to a *particular patient*" was "not a statistically

5  valid or sound method of evaluating the overall quality of correctional healthcare

6  that is delivered at a specific institution or system."  *Id.* 9 (emphasis Defendants').

7  Dr. Murray—through his assistants—performed the same type of "subjective review

8  of care provided to particular patient[s]" here.  *See generally* Dkt. 779-3, Ex. A-58–

9  118; Mot. 9–10.  Given that he rejected that methodology previously, he should not

10  be permitted to employ it in this case.

11    **B.    Opinions Regarding NCCHC Compliance Should Be Excluded.**

12    Defendants do not dispute that standards published by the National

13  Commission on Correctional Health Care ("NCCHC") have multiple compliance

14  indicators that a correctional facility must satisfy to demonstrate compliance[5] and

15  that Dr. Murray did not even list those indicators, let alone provide analysis for how

16  he determined that the Jail met the indicators.  Opp. 9; *see* Mot. 10–12.  Instead,

17  they point to one sentence in Dr. Murray's report, where he lists the information he

18  relied upon in offering his conclusions about the Jail's NCCHC compliance.  Opp.

19  9.  But the absence of any analytical explanation for how Dr. Murray determined

20  that the Jail meets each of the NCCHC compliance indicators and standards means

21  there is "simply too great an analytical gap between the data and the opinion

22  proffered."  *See Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1977).  When an expert

23  fails to "point[] to relevant evidence to support" his opinions, leaving the court only

24  with "his say so"—as Dr. Murray did here—the opinions are inadmissible.  *Incretin-*

25

26  _____

are adequately explained."  971 F.3d at 897–901; 289 F.3d at 1093–97.  Defendants
27  provide no explanation as to why that rule would not apply to Dr. Murray.

[5] Defendants' assertion that the NCCHC revised its standards in 2018 is irrelevant,
28  as there is no evidence that the process for determining compliance has changed.

1    *Based Therapies*, 524 F. Supp. 3d at 1045.

2    **C.    Defendants Concede Plaintiffs' Argument That Dr. Murray's Opinions About Medical Screening and Sick Call Processes Are**
3    **Unreliable.**

4    Plaintiffs seek exclusion of the charts contained in Appendices G, H, and I to

5    Dr. Murray's report, as well as any related opinions in the body of Dr. Murray's

6    report, because Dr. Murray lacked knowledge of the facts underlying those opinions

7    and was unable to explain the methodology for reaching those opinions.  Mot. 12–

8    13 (including examples of Dr. Murray being unable to explain errors in those

9    Appendices).  Defendants do not respond to these arguments at all.  *See* Opp. 1–10.

10   Plaintiffs' Motion on this issue is therefore unopposed and should be granted.

11   **D.    Dr. Murray Is Not an Expert on Substance Use Disorder, and His Opinions on the Topic Should Therefore Be Excluded.**

12

13   Defendants do not dispute that Dr. Murray is not an expert in substance use

14   disorder, nor could they, given his testimony.  *See* Opp. 10; Dkt. 779-4, Ex. W-

15   131:23–24 ("I'm not a substance use disorder expert[.]").  They nonetheless

16   wrongly claim that Dr. Murray's opinions on Medication Assisted Treatment

17   ("MAT") are admissible.  *First*, citing *Dura Automotive* (discussed *supra*),

18   Defendants contend Dr. Murray properly relied on information provided to him by a

19   doctor at the Jail.  Opp. 10.  But *Dura Automative* specifies that an expert may not

20   rely on "assistants" when those individuals "exercise professional judgment that is

21   beyond the expert's ken."  285 F.3d at 613.  Here, Dr. Murray admitted that

22   treatment of substance use disorder is beyond his "ken."  *See* Dkt. 779-4, Ex. W-

23   131:23–24.  *Second*, to the extent Defendants argue that Dr. Murray has offered only

24   an opinion that the Jail has a MAT program, that testimony is inadmissible because

25   it is not helpful to the trier of fact.  Testimony stating "facts that the average juror is

26   perfectly capable of understanding" should be excluded.  *A.B. v. Cty. of San Diego*,

27   2020 WL 4431982, at *15 (S.D. Cal. July 31, 2020).

28

1    **III.    DR. PENN'S OPINIONS ARE INADMISSIBLE.**

2         Plaintiffs seek to exclude all of Dr. Penn's opinions because he: (1) failed to

3    review in-custody deaths (*see* Section I, *supra*); (2) relied on standardless, unreliable

4    chart reviews conducted by assistants; (3) had no methodology for his opinion on

5    the adequacy of Defendants' mental health care staffing; (4) copied portions of his

6    report from another case, even though they were inapplicable to the Jail;

7    (5) contradicted himself; and is unqualified to offer opinions on (6) housing

8    placements and (7) substance use treatment.  Defendants offer no argument

9    regarding issues (4), (5), (6), and (7); the Court should therefore grant the Motion on

10   those grounds.[6]

11        On issue (2), Defendants do not dispute that Dr. Penn relied on standardless,

12   unreliable chart reviews conducted by assistants.  Defendants argue only that the

13   fact that the assistants' findings "were not all favorable to the County" "tends to

14   support [Dr. Penn's] methodology."  Opp. 11.  This argument is backwards.  The

15   assistants' findings *do* identify many deficient care practices, yet Dr. Penn repeatedly

16   dismisses each of those findings, instead stating that someone should conduct an

17   "analysis of how did [the Jail] do such a great job."  Declaration of Van Swearingen

18   ("Swearingen Decl."), filed herewith, Ex. A at 339:14–16.  Defendants' claim that

19

---

20   [6] Defendants concede that the district court in a class action regarding conditions in
     the Arizona prison system "found fault with Dr. Penn's opinions and methodology,"
21   but hang their hat on a general statement in that court's 200-page decision that, "the
     parties waived any *Daubert* challenges to the opposing party's expert witnesses.
22   But even if they had not, any such challenge would have failed."  Opp. 11; *see*
     *Jensen*, 609 F. Supp. 3d at 800.  Notably, after Dr. Penn testified at trial, the *Jensen*
23   court found that Dr. Penn's methodology and opinions were "deeply flawed," *id.* at
     857; "simplistic," *id.* at 843; "make[] no sense," *id.*; "reflect[] a profound lack of
24   concern," *id.* at 848; "ha[ve] no merit," *id.* at 853; showed "callous indifference," *id.*
     at 857 n.32; were defined by "obstinance—and indifference—[that] was devastating
25   to his credibility and renders his opinions unworthy of any weight," *id.* at 858; were
     "so flawed … that the court cannot credit any of his opinions," *id.* at 862; were
26   "meaningless," *id.*; "ma[de] no sense," *id.*; "defie[d] logic," *id.* at 862 n.34; were
     "nonsensical," *id.* at 862; were "absurd," *id.* at 863; "cannot withstand the slightest
27   scrutiny," *id.*; and were "unreliable and incredible," *id.*  The *Jensen* court concluded
     that "it is difficult to overstate Dr. Penn's lack of credibility."  *Id.* at 856 n.28.
28   Excluding such expert opinion is the very purpose of Rule 702 and *Daubert*.

---

1  Dr. Penn conducted tours and spoke to Jail staff cannot make up for those glaring

2  flaws identified by his assistants.  *See Am. Transp. Sys., Inc. v. Prevost Car US Inc.*,

3  2024 WL 5185314, at *3–4 (C.D. Cal. Oct. 9, 2024) (excluding opinion "based on a

4  conversation with [the offering party's CEO]" without "any other evidence to support

5  this opinion" as "based on unreliable, speculative, and incomplete data"); *San Diego*

6  *Comic*, 2017 WL 4227000, at *7–8.  Given that Dr. Penn's assistants identified

7  deficient care, there is "simply too great an analytical gap between the data and the

8  opinion proffered" by Dr. Penn.  *See Joiner*, 522 U.S. at 146.[7]

9      On issue (3), Defendants state only that Plaintiffs can cross-examine Dr. Penn

10  regarding staffing.  Opp. 11.  But that is no answer to Plaintiffs' argument that his

11  staffing opinions do not rest on any methodology.  Mot. 20–21.  Dr. Penn admitted

12  that he did not conduct a staffing analysis, review staffing levels at all facilities, or

13  evaluate any NaphCare staffing.  *Id.*  And Defendants have no response to the fact

14  that Dr. Penn's analysis here is identical to the analysis in *Jensen* that the court

15  described as "circular logic" and "nothing more than a number pulled out of thin

16  air."  609 F. Supp. 3d at 843.

17  **IV.   DR. REINECKE'S OPINIONS ARE INADMISSIBLE.**

18      All of Defendants' arguments regarding the admissibility of Dr. Reinecke's

19  opinions fail.  Defendants rely on a district court decision for their assertion that

20  "[d]isputes as to the strength of an expert's credentials, faults in his use of a

21  particular methodology, or lack of textual authority for his opinion, go to the weight,

22  not the admissibility, of his testimony."  Opp. 13 (quoting *Townsend v. Monster*

23  *Beverage Corp.*, 303 F. Supp. 3d 1010, 1019 (C.D. Cal. 2018)).  To the contrary,

24

25  [7] Defendants assert—for the first time—that Dr. Penn was prohibited from
    interviewing class members due to their *criminal* case representation.  Opp. 12.
26  This assertion is contradicted by the transcript of Dr. Penn's deposition, which
    makes clear that Defendants' counsel incorrectly told Dr. Penn that Plaintiffs'
27  counsel in this case *would not agree* to allow Dr. Penn to interview class members.
    Swearingen Decl., Ex. A at 110:14–111:8.  As explained in Plaintiffs' Motion,
28  Plaintiffs' counsel *agreed* to interviews of class members by Dr. Penn so long as
    Plaintiffs' counsel could be present.  Mot. 21 n.8.

1    consistent with Federal Rule of Evidence 702 and *Daubert*, this Court has excluded

2    experts based on their lack of specific expertise, *e.g.*, *Araujo v. Coachella Valley*

3    *Water Dist.*, 2022 WL 4181004 (S.D. Cal. Sept. 12, 2022); their failure to reliably

4    apply a methodology to the facts of the case, *e.g.*, *Incretin-Based Therapies*, 524 F.

5    Supp. 3d at 1046–47; and the lack of citations to professional standards, *e.g.*, *In re*

6    *Novatel Wireless Secs. Litig.*, 2011 WL 5827198, at *5 (S.D. Cal. Nov. 17, 2011).

7    　　　Defendants also do not dispute that Dr. Reinecke relied on his review of 30

8    patient charts in offering broad opinions regarding the adequacy of dental care at the

9    Jail, even though he did not apply any defined standard of care for the record

10   review.  *See* Opp. 13–14.[8]  They also do not explain how Dr. Reinecke was able to

11   conclude that dental care at the Jail "meets the standard of care" when he also

12   testified that, of the charts he reviewed, some patients did *not* receive dental care

13   that met his own standard of practice.  *See* Mot. 26–27.  There is therefore "simply

14   too great an analytical gap between the data and the opinion proffered" by

15   Dr. Reinecke.  *See Joiner*, 522 U.S. at 146.

16   　　　Defendants implicitly concede that Dr. Reinecke's opinion regarding the

17   adequacy of Jail policies is inadmissible because he did not review any Jail policies.

18   Opp. 15–16.  They nonetheless argue that he can offer an opinion regarding the

19   Jail's "in-place procedures," because he reviewed dental charts and the deposition

20   transcripts of two non-dentists and because he interviewed dental staff.  *Id*.

21   Defendants provide no explanation for how those reviews could support a

22   conclusion that the Jail's procedures are adequate, especially given the flaws in

23   Dr. Reinecke's method for reviewing charts, *see supra*, and his own statement in his

24   expert report that, in his opinion, the charts he reviewed were "difficult to follow"

25   and "would benefit from more detail."  Dkt. 779-3, Ex. C-383.  Nor can the

---

[8] Defendants incorrectly state that Dr. Reinecke's chart reviews were not attached as exhibits to Plaintiffs' Motion.  Opp. 14.  Dr. Reinecke's chart review appendix appears on pages Ex. C-379 to Ex. C-395 to the December 16, 2024 Swearingen Declaration (under seal).

1   testimony of two non-dentists support Dr. Reinecke's conclusion, particularly given

2   that, according to Dr. Reinecke's interview notes, Jail dentists believe that it is

3   necessary to have an expanded policy manual.  Dkt. 796-2, Ex. V.  And, mere

4   "conversations with [the party who hired the expert] do not provide 'sufficient facts

5   or data' for an expert opinion" without reference to any other documentary evidence

6   to substantiate the party's statements.  *Am. Transp. Sys.*, 2024 WL 5185314, at *3.

7          Finally, Defendants admit that Dr. Reinecke's opinions related to dental

8   staffing and quality assurance are based exclusively on conversations he had with

9   people employed or contracted by Defendants.  *See* Opp. 15; Dkt. 795-2, Ex. A at

10  59:2–4, 150:7–10 (Dr. Reinecke testifying that he was told by Jail dentists about

11  staffing levels).  He did not look at any underlying documents to confirm those

12  representations.  Mot. 27–28.  As explained above, such conversations, standing

13  alone, cannot support an expert opinion.  *Am. Transp. Sys.*, 2024 WL 5185314, at *3.

14  And Defendants have no response to Dr. Reinecke's testimony that, to offer an

15  opinion on staffing, he "would have to look at ... at least one month [of schedules],"

16  Dkt. 779-4, Ex. Y at 154:9–11, but that he did not do so, *see* Opp. 15.  By

17  Dr. Reinecke's own reasoning, his testimony regarding dentist staffing is not reliable.

18  **V.    DEFENDANTS PROVIDE NO CLEAR ARGUMENT FOR WHY
         DR. WITHROW'S OPINION SHOULD BE ADMITTED.**

19

20         Defendants concede that Dr. Withrow's analysis shows that the Sheriff's

21  Office arrested Black and Latinx people at a higher rate than their respective

22  percentages of the population in San Diego County.  *See* Opp. 16–17; *see also* Dkt.

23  796 at 33.  Defendants further concede that Dr. Withrow's opinion regarding racial

24  profiling and discrimination turns on whether officers had knowledge of arrestees'

25  race prior to stopping them (evincing intentional discrimination), but that the

26  standard under California Government Code § 11135 does not require a showing of

27  discriminatory intent, only a disparate impact.  *See* Opp. 16–17.  Nonetheless,

28  Defendants ask the Court to admit Dr. Withrow's testimony.  Defendants'

1    arguments are unavailing.

2        Defendants wrongly claim that Plaintiff's Motion as to Dr. Withrow's

3    testimony is "not a *Daubert* motion." Opp. 16. A motion to exclude irrelevant

4    expert testimony (*e.g.*, Dr. Withrow's irrelevant opinions regarding racial profiling)

5    because it is not helpful to the trier of fact is a *Daubert* motion. *E.g.*, *Incretin-Based*

6    *Therapies*, 524 F. Supp. 3d at 1035 ("Relevance requires opinions that would assist

7    the trier of fact in reaching a conclusion necessary to the case."). Moreover, this

8    Court's Civil Case Procedures require Plaintiffs to file this challenge to

9    Dr. Withrow's testimony by the dispositive motion deadline.

10        Defendants contend that Dr. Withrow's testimony is relevant to "rul[e] out

11    racial profiling" and to show that "Plaintiffs' analysis ... fails to take into account"

12    whether officers knew the race of arrestees before arresting them. Opp. 17. But

13    whether Defendants "racially profiled" arrestees under a legal definition not at issue

14    in this case is not relevant to Plaintiffs' claims under Section 11135. Accordingly,

15    Dr. Withrow's opinions on that subject are not be helpful to the trier of fact and

16    should be excluded. *A.B.*, 2020 WL 4431982, at *15.

17        Defendants' reliance on *Darensburg v. Metropolitan Transportation*

18    *Commission*, 636 F.3d 511 (9th Cir. 2011), is misplaced. There, plaintiffs

19    challenged the San Francisco Bay Area's municipal transit expansion plan as

20    racially discriminatory because the plan had allocated more money for rail projects

21    than it had for bus projects. *Id.* at 514. The court found that plaintiffs failed to

22    make a prima facie case of disparate impact, because their statistics looked only at

23    rail riders or bus riders as individual groups; they failed to consider the "entire

24    integrated transit system's users." *Id.* at 520. That group—*all* transit system

25    users—was the "correct population base" that the plaintiffs should have analyzed.

26    *Id.* Here, in contrast, Dr. Withrow's "prior knowledge" criterion is not relevant to

27

28

1  the population base in his analysis (residents of San Diego County).[9]

2  **VI.   DEFENDANTS DO NOT EXPLAIN WHY MR. VARE'S OPINIONS**

3  **ARE RELIABLE AND HELPFUL TO THE TRIER OF FACT.**

4       Plaintiffs seek to exclude Mr. Vare's opinions on Defendants' ability to

5  address custody staffing shortages with overtime because he failed to review

6  documents essential to that inquiry.  Mot. 30–31.  Plaintiffs also seek to exclude

7  Mr. Vare's opinions on the Jail's MAT program and its "prevent[ion]" of suicides

8  because he is not qualified to offer such opinions.  *Id.* 31–33.  Defendants fail to

9  adequately address these arguments.

10      As an initial matter, Defendants again claim that Plaintiffs' Motion as to

11  Mr. Vare's testimony is "inappropriate" and "not a Daubert motion."  Opp. 17.  As

12  explained above, this argument fails.

13      Defendants concede that Mr. Vare did not review staffing reports, Opp. 18,

14  which show the number of shifts for which Defendants failed to meet their defined

15  minimum staffing levels necessary for facility and incarcerated person safety.

16  Defendants have no response to Plaintiffs' argument that such reports showed

17  significant understaffed shifts and were essential to any opinion on staffing.  Mot. 30–

18  31.  Nevertheless, Defendants claim Mr. Vare's testimony is admissible because he

19  reviewed one written policy and relied on interviews with Defendants' employees that

20  shifts were staffed through mandatory overtime.  Opp. 18.[10]  However, mere

21

22

---

[9] Defendants also inaccurately assert that Dr. Withrow's report "address[es] the bald statistic offered by Plaintiffs," "attack[s] the reliability of Plaintiffs' analysis," and otherwise "critci[zes] Plaintiffs' methodology."  Opp. 17.  Indeed, Dr. Withrow did not provide any rebuttal report in this litigation.

[10] Defendants' assertion that Mr. Vare relied on a number of other sources, *e.g.,* the deposition testimony of the class representatives, is both contradicted by Mr. Vare's own testimony and also unavailing, since Defendants fail to point to any specific statements from the depositions transcripts Mr. Vare supposedly relied on or explain how those transcripts support his opinion.  Opp. 18.  In his deposition, Mr. Vare repeatedly stated that he relied on conversations with staff during his tours in formulating his opinions; he did not reference reviewing any deposition transcripts. Swearingen Decl., Ex. B at 217:4–19, 221:18–229:22; 230:22–231:5.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE OPINIONS OF DEFENDANTS' EXPERTS

1    "conversations with [the party who hired the expert] do not provide 'sufficient facts

2    or data' for an expert opinion." *Am. Transp. Sys.*, 2024 WL 5185314, at *3.

3        Defendants concede that Mr. Vare is not a medical expert and is *not* opining

4    on the adequacy of substance use treatment at the Jail.  Opp. 19.  They claim,

5    however, that Mr. Vare's opinions regarding substance use treatment (it "exist[s]"

6    and "incarcerated persons have access to" it) are admissible.  *Id.* 19–20.  In light of

7    Defendants' concessions, Mr. Vare's opinion is not helpful to the trier of fact and

8    should be excluded.  *See  A.B.*, 2020 WL 4431982, at *15; Section II.D, *supra*.

9        Defendants claim that Mr. Vare's opinion that 857 incarcerated people were

10   "prevented" from committing suicide or further harming themselves is "not an

11   opinion as such" and therefore should not be excluded.  Opp. 20.  Defendants

12   provide no assertion that Mr. Vare is a mental health expert, nor do they attempt to

13   explain how Mr. Vare came to the conclusion that Defendants "prevented" 857

14   people from further self-harm.  *See id.*  They simply state that his opinion is

15   "correct."  *Id.*  Absent some reasoned methodology explaining how Mr. Vare

16   arrived at this conclusion, "there is simply too great an analytical gap between the

17   data and the opinion proffered" by Mr. Vare.  *See Joiner*, 522 U.S. at 146.

18   **VII.   DEFENDANTS CONCEDE THAT MS. PETERS' INTERVIEWS
         WITH CLASS MEMBERS WERE IMPROPER.**

19

20       Defendants admit that "substantive interviews with represented parties are not

21   permitted by … experts," Opp. 23; that their expert Henrietta Peters questioned class

22   members about the Health Services Assistant Training ("HSAT") program without

23   Plaintiffs' counsel present, *id.* 21–22; that Ms. Peters was accompanied by an

24   attorney for the County when she did so, *id.* 21; and that "Ms. Peters should not

25   have asked [those] questions," *id.* 23.  They nonetheless argue, without citation to

26   any authority in support of their position, that Ms. Peters' opinions about the HSAT

27   program are admissible.  *See id.* 21–23.

28       Defendants make no meaningful argument why *Coleman v. Brown*, 938 F.

1  Supp. 2d 955 (E.D. Cal. 2013), does not support the exclusion of Ms. Peters' HSAT

2  program opinions.  The *Coleman* court explained that "plaintiffs were prejudiced" in

3  that case because defendants "use[d ]tainted interviews against the interviewees" in

4  expert reports.  *Id.* at 968.  Because the *Coleman* court was unable to determine

5  "what portions of the report[s] [we]re dependent upon the tainted inmate

6  interviews," the court excluded the entirety of those experts' reports.  *Id.*  Here, a

7  more narrow remedy is available:  to exclude the specific portions of Ms. Peters'

8  report that are dependent on the "tainted" interviews.[11]

9  **VIII.  DEFENDANTS MAKE NO ARGUMENT THAT THEIR EXPERTS'**
   **LEGAL CONCLUSIONS SHOULD NOT BE EXCLUDED.**

10

11         Defendants agree that experts are not permitted to offer testimony as to legal

12  conclusions and do not dispute that any of the specific statements Plaintiffs

13  identified, *see* Mot. 34 (citing pages of Defendants' expert reports), are legal

14  conclusions.  Opp. 23.  They instead claim, without citation, that this "issue is not a

15  *Daubert* analysis and should be decided on a Motion in Limine."  *Id.*  Not so.  This

16  Court's Civil Case Procedures require motions regarding expert qualifications or

17  testimony to be brought by the dispositive motion deadline and state that such

18  challenges "will not be entertained as motions in limine."  Battaglia Civ.

19  Procedures, Part II.H.  Indeed, district courts, including this one, routinely address

20  challenges to experts' testimony as legal conclusion in *Daubert* motions.  *E.g.*, *A.B.*,

21  2020 WL 4431982, at *5; *see also Stiner v. Brookdale Senior Living, Inc.*, 665 F.

22  Supp. 3d 1150, 1170–71 (N.D. Cal. 2023).

23  / / /

24  / / /

25  / / /

26

27  [11] Contrary to Defendants' representation, Plaintiffs' Motion includes Ms. Peters'
    report, *see* Dkt. 779-4, Ex. U, and specifically identifies the opinions of Ms. Peters
    regarding the HSAT program that are tainted by her inappropriate interviews with

28  class members, *id*. Ex. U-1584 to U-1586.  Mot. 33.

# CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant their Motion to Exclude the Opinions of Defendants' Experts.

DATED: February 3, 2025         Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Van Swearingen*
    Van Swearingen

Attorneys for Plaintiffs and the Certified Class and Subclasses