Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
Deann Rivard (SBN 177482)
drivard@bwslaw.com
Martin Kosla (SBN 247224)
E-mail: mkosla@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600,
San Diego, CA 92101-8474
Tel: 619.814.5800  Fax: 619.814.6799

Elizabeth M. Pappy (SBN 157069)
E-mail: epappy@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Ste. 1000
San Jose, CA 95113-2336
Tel: 408.606.6300  Fax: 408.606.6333

Attorneys for Defendants
COUNTY OF SAN DIEGO, SAN DIEGO
COUNTY SHERIFF'S DEPARTMENT and
SAN DIEGO COUNTY PROBATION
DEPARTMENT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR AN ORDER TREATING SPECIFIED FACTS AS ESTABLISHED**<br><br>[Fed. R. Civ. P. 56]<br><br>[Filed Concurrently with Reply Appendix of Evidence]<br><br>**Hearing**<br>Date:  March 27, 2025<br>Time:  2:00 p.m.<br>Ctrm:  4A<br>Judge: Anthony J. Battaglia |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4914-2812-0082 v1

Case No. 3:20-cv-00406-AJB-DDL
DEFENDANTS' REPLY ISO MPSJ

# TABLE OF CONTENTS

Page

I. DEFENDANTS EXPERT DECLARATIONS ARE PROPER........................ 1

II. JAIL MEDICAL CARE IS CONSTITUTIONALLY ADEQUATE ............... 1

III. DENTAL CARE IS CONSTITUTIONALLY ADEQUATE........................... 5

IV. THE JAILS DO NOT POSE A RISK TO HEALTH ......................................... 5

V. THE JAILS HAVE ADEQUATE SAFETY PROTOCOLS ............................ 8

VI. ACCESS TO COURTS AND COUNSEL IS CONSTITUTIONAL ............. 11

VII. THERE IS NO UNLAWFUL DISPARATE RACIAL IMPACT ................. 13

VIII. CONCLUSION ............................................................................................... 15

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4914-2812-0082 v1

i

Case No. 3:20-cv-00406-AJB-DDL
DEFS' REPLY ISO MPSJ

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Armstrong v. Newsom*,
  58 F.4th 1283 (9th Cir. 2023) ................................................................................. 4

*Benjamin v. Fraser*,
  264 F.3d 175 (2d Cir. 2001) ................................................................................ 12

*Criswell v. Boudreaux*,
  2020 WL 5235675 (E.D. Cal. Sept. 2, 2020) ...................................................... 13

*El Pollo Loco, Inc. v. Hashim*,
  316 F.3d 1032 (9th Cir. 2003) ............................................................................... 1

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) ................................................................................. 9

*Johnson-El v. Schoemehl*,
  878 F.2d 1043 (8th Cir. 1989) ............................................................................. 12

*Jones v. City & Cty. of San Francisco*,
  976 F.Supp. 896 (N.D. Cal. 1997) ...................................................................... 12

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) .............................................................................................. 6

*Kumho Tire Co. v. Carmichael*,
  supra, 526 U.S. .................................................................................................... 14

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) ................................................................................. 9

*McDade v. West*,
  223 F. 3d 1135 (9th Cir. 2000) ............................................................................. 4

*Moreno v. Beard*,
  2014 U.S. Dist. LEXIS 20692 (C.D.Cal. Jan. 13, 2014) ...................................... 1

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996) ............................................................................... 1

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4914-2812-0082 v1

ii

Case No. 3:20-cv-00406-AJB-DDL
DEFS' REPLY ISO MPSJ

*Rice v. Morehouse*,
   989 F.3d 1112 (9th Cir. 2021) ............................................................................. 12

*Robinson v. Adams*,
   847 F.2d 1315 (9th Cir. 1987) ............................................................................. 14

*Scott v. Harris*,
   550 U.S. 372 (2007) ............................................................................................. 12

*Silva v. Di Vittorio*,
   658 F.3d 1090 (9th Cir. 2011) ............................................................................. 13

*Taylor v. List*,
   880 F.2d 1040 (9th Cir. 1989) ............................................................................. 13

*Tsombanidis v. W. Haven Fire Dep't*,
   352 F.3d 565 (2d Cir. 2003) ................................................................................ 14

**State Cases**

*In re Alva*,
   33 Cal.4th 254 (2004) ............................................................................................ 1

*Inmates of Riverside Cnty. Jail v. Clark*,
   144 Cal.App.3d 850 (1983) ................................................................................... 2

*Ochoa v. Superior Ct.*,
   39 Cal.3d 149 (1985) ............................................................................................. 2

**State Statutes**

Government Code
   § 11135 ................................................................................................................ 14
   § 11135(a) ........................................................................................................... 13

**Rules**

Fed. R. Evid.
   Rule 602 .............................................................................................................. 12
   Rule 702 ................................................................................................................ 5
   Rule 702(b) ........................................................................................................... 5
   Rule 802 .............................................................................................................. 12

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4914-2812-0082 v1

iii

Case No. 3:20-cv-00406-AJB-DDL
DEFS' REPLY ISO MPSJ

## Constitutional Provisions

Sixth Amendment .................................................................................................11, 12

Eighth Amendment ......................................................................................................... 1

Fourteenth Amendment ................................................................................................ 11

California Constitution, art. I, § 17 ................................................................................. 1

## Other Authorities

https://apps.sdsheriff.net/PublicDocs/SB978/Detention%20Services%0
  Bureau/Detentions%20Policy%20and%20Procedure%20Sections/S
  ection%20I%20-%20SECURITY%20AND %20CONTROL/i50.pdf .............. 10

https://apps.sdsheriff.net/PublicDocs/SB978/Detention%20Services%2
  Bureau/Detentions%20Policy%20and%20Procedure%20Sections/S
  ection%20I%20-%20SECURITY%20AND%20CONTROL/i02.pdf ............... 10

https://www.sdsheriff.gov/home/showpubliccheddocument/8892/
  638721180593370000 ..................................................................................... 10

https://www.sdsheriff.gov/resources/transparency-reports ........................................ 9

# ARGUMENT

## I. DEFENDANTS EXPERT DECLARATIONS ARE PROPER

Plaintiffs contend the declarations submitted by experts in support of Defendants' Motion for Summary Adjudication are untimely as being after expert disclosures. Plaintiffs cite to no legal authority to support this novel proposition. The declarations are consistent with the experts' reports and their depositions. Plaintiffs fail to identify any new or different opinions or evidence. Plaintiffs' misunderstanding of when a rebuttal report is permitted and appropriate does not serve as a basis to ignore proper expert declarations. Rebuttal reports are not required for experts to merely express their disagreement with the opposing expert, which is what Plaintiffs' experts did in their "rebuttal" reports. The fact that Defendants' expert properly did not submit rebuttal declarations to disagree with Plaintiffs' expert is irrelevant to a determination of this motion.

In addition, it is not an abuse of discretion to consider new arguments or evidence if the opposing party had an opportunity to respond. See *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032 (9th Cir. 2003); *See also, Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) [a district court may consider new evidence presented in a reply brief if the district court gives the adverse party an opportunity to respond]. Plaintiffs submitted nine declarations from their own experts, while at the same time claiming that Defendants may not submit expert declarations, and given five weeks to prepare their opposition and gather several declarations from their clients. (ECF 798, 796.) The defense expert declarations are proper and admissible.

## II. JAIL MEDICAL CARE IS CONSTITUTIONALLY ADEQUATE

Plaintiffs claim that their California-specific claims have not been addressed in the summary judgment motion. (Opp. at 8, n.8.) As pointed out in the moving papers, the same standards apply to Plaintiffs' claims under both the Eighth Amendment and Art. I § 17 of the California Constitution. See, *Moreno v. Beard*, 2014 U.S. Dist. LEXIS 20692, *22 (C.D.Cal. Jan. 13, 2014); *In re Alva*, 33 Cal.4th

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4914-2812-0082 v1

1

Case No. 3:20-cv-00406-AJB-DDL
DEFS' REPLY ISO MPSJ

254, 294 (2004); *Ochoa v. Superior Ct.*, 39 Cal.3d 149 (1985); *Inmates of Riverside Cnty. Jail v. Clark*, 144 Cal.App.3d 850, 858–59 (1983).

Plaintiffs rely on stale evidence to support their assertion that the medical care at the jails is in adequate. They rely upon a 2017 NCCHC report, the California State Auditor's findings from 2022, and in-custody deaths that occurred in 2022 and 2023. (Opp. at 10-11.) The reports are clearly outdated and refer to conditions that existed prior to the numerous improvements that Defendants have recently made to the medical system at the Jail. There is no evidence to dispute any of the changes even if the outdated evidence is all true. The changes and improvements include: health care contracts which provide more direct accountability for on-site provider services at the Jail; a significant increase in the level of medical providers; more nursing positions at the Jail; an intake screening process utilizes new technology like the TEK 84 Intercept body scanner; a dedicated MAT program; a leadership-driven multidisciplinary team that makes weekly "Wellness Rounds" in the AdSep unit; revising and/or updating their P&Ps related to the provision of medical care at the Jail to improve quality management; having CHP develop a set of DMGs to help standardize chronic care management, and starting a triage pilot program. (See, MSJ P&A, Sect. II.A.1-12.)

Plaintiffs also offer declarations from several inmate patients. (Opp. at 10.) However, an actual review of the medical files of these inmate patients highlight the intentionally incomplete picture painted by the declarations even if they are all assumed to be true. For example, with regard to inmate patient James Clark's requested hydrocele surgery (i.e., removal of a fluid-filled sac surrounding the testicle), the continuity of care was repeatedly interrupted by the fact that Mr. Clark is a repeat criminal offender and has been in and out of custody on numerous occasions. Since 2023, Mr. Clark was in custody during the following periods: 3/27/23-6/16/23, 6/23/23-8/23/23, 10/02/23-12/22/23, 2/03/24-4/24/24, 4/26/24-5/31/24, 6/04/24-6/14/24, and 7/25/24-1/05/25. Mr. Clark's procedure required that

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4914-2812-0082 v1

2

Case No. 3:20-cv-00406-AJB-DDL
DEFS' REPLY ISO MPSJ

his care be re-established with the outside community urologist (who ultimately determines the appropriateness and timing of the surgery) after Mr. Clark returned to custody each time. Mr. Clark's repeated returns to custody require that appropriate visits, including an ultrasound appointment, urology referral and consult appointment, and surgery authorizations, had to be re-obtained to schedule the surgery. (See, Reply App. 2, ¶¶ 4-12.)

Similarly, while Ms. Stanley alleges that a 4-month delay in obtaining a biopsy led to growth of her cancer, the medical records demonstrate that her condition (a 30-year-old perineal skin tag) had not metastasized. In fact, the reason why the obstetrician/oncologist was recommending chemotherapy/radiation therapy was not because of a concern for spread but due to the anatomic location of the skin tag and the high likelihood of disrupting sphincter function. (See, Id., ¶¶ 21-25.) Again, Ms. Stanley's declaration can be assumed true but paints only part of the picture. Plaintiffs were careful to only say what was true while leaving out the relevant details.

Mr. Rosales was sent out via ambulance to the hospital on November 16, 2024 and the UCSD emergency department documented the fact that Mr. Rosales was asymptomatic, opted to decline further evaluation, and "just wanted documented that his blood pressure was elevated." Mr. Rosales routinely refuses to take his evening medication doses for hypertension. In particular, medication refusals have been documented in his chart on the following days: 11/14/24, 11/26/24, 11/28/24, 12/1-12/12/24, 12/15-12/19/24, 12/22/24, 12/27/24, 1/5/25, 1/08/25-1/10/25, and 1/12/25-1/30/25. (See, Id., ¶¶ 13-20.)

Because Plaintiffs seek injunctive relief (as opposed to damages), the majority of Defendants' evidence properly focuses on current conditions and changes that have been made over time to improve conditions wherever and whenever possible. To the contrary of "deliberate indifference", the Defendants demonstrate intentional and proactive steps to improve all conditions, including medical. Much of Plaintiffs'

expert evidence does not address the new changes, preferring to ignore their existence. (See, e.g., Ramsey Decl. [Doc. #796-4]; Shulman Decl. [Doc. #796-6].)

Plaintiffs focus on nursing vacancies on paper is grasping at straws. Plaintiffs offer no evidence to suggest that the nursing vacancies on paper have caused any below standard care and Plaintiffs chose to ignore the evidence in the moving papers of the various staffing tools being utilized to hire more nurses, including overtime and supplemental agency staffing resources. (See, MSJ App. 1, ¶¶ 29-34; MSJ App. 5, ¶¶ 15-18.) As with many aspects of the proactive changes made by the County to improve conditions, Plaintiffs find fault with the Naphcare and CHP contracts while directly employing nurses, without any explanation of how this has resulted in a 'deliberate indifference" to the health care needs of IPs. The shift of some services to CHP was the directly result of a proactive desire to have more accountability than was being provided by Naphcare who was, at the time, subcontracting with CHP. The change shows proactive steps and not deliberate indifference.

Plaintiffs reliance on isolated incidents where initial assessment screenings were not done within 14 days to demonstrate deliberate indifference. Isolated incidents do not amount to a constitutional violation under *Monell*. See, *McDade v. West*, 223 F. 3d 1135, 1141 (9th Cir. 2000) (proof of random acts or isolated incidents of unconstitutional action by non-policymaking employee are insufficient to establish existence of municipal policy or custom).

Plaintiffs attempt to liken the facts of this case to *Armstrong v. Newsom*, 58 F.4th 1283 (9th Cir. 2023), and assert that what changes have taken place at the County and current conditions show only "marginal improvement", is meritless. In *Armstrong*, the court noted that prior attempts to remedy deficiencies through "less intrusive means" had failed on several occasions. *Id*, at 1297. Unlike the CDCR, Defendants have been making substantial and significant improvements by making what can only be deemed "intrusive means". Spending additional millions of dollars on medical care can hardly be called "less intrusive" and no Court order was

required.

## III. DENTAL CARE IS CONSTITUTIONALLY ADEQUATE

The primary argument in Plaintiffs' opposition is that Defendants do not discuss or acknowledge any of the opinions made by their dental expert, Dr. Shulman. (Opp. at pp. 17-19.) It is unclear why Defendants would refer to Dr. Shulman's opinions in the moving papers. Because Defendants' summary judgment evidence focuses on the current conditions and improvements that have been made to the dental system at the Jail since the filing of this lawsuit, including improvements made after expert discovery, making Dr. Shulman's opinions irrelevant and inadmissible for purposes of this motion. (See, MSJ Stat. of Facts, Section II.B.1-4.)

## IV. THE JAILS DO NOT POSE A RISK TO HEALTH

Plaintiffs' assert that because the factual conclusions contained in the reports of their environmental expert asserts that there are "inhumane conditions" at the San Diego County jails, the motion must fail. The claim is meritless.

The Court must decide the case on facts and not the conclusions unsupported by sufficient evidence by Plaintiffs' expert, Debra Graham. Federal Rule of Evidence 702 requires that an expert opinion be based upon "sufficient facts or data". FRE 702(b) The question before the Court is not whose version of the facts is true. There is no material dispute about the facts as to the health and safety conditions in the jails. Plaintiffs' opposition is premised almost entirely on the factual conclusions of their expert which themselves are based upon insufficient evidence. The Court must make the determination of whether Ms. Graham's conclusions are admissible and can be considered to dispute any material fact. The answer is no. FRE 702. ' . . . "establishes a standard of evidentiary reliability." [Citation omitted] It "requires a valid ... connection to the pertinent inquiry as a precondition to admissibility." [Citation omitted] And where such testimony's factual basis . . . [is] called sufficiently into question, . . . the trial judge must

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4914-2812-0082 v1

5

Case No. 3:20-cv-00406-AJB-DDL
DEFS' REPLY ISO MPSJ

1  determine whether the testimony has "a reliable basis in the knowledge and
2  experience of [the relevant] discipline." [Citation omitted]' *Kumho Tire Co. v.*
3  *Carmichael*, 526 U.S. 137, 149 (1999)

4      The list of conclusions presented by the Opposition are not borne out by the
5  citations to evidence. For example, Plaintiffs claim that "showers across the jails"
6  are dirty.  (Opp'n, p.21:20-22) There is an evidentiary citation to pages of the
7  Graham report, which in turn references 4 photographs attached to her report
8  somewhere, as supporting the notion that showers "across the jails" are dirty. How
9  many showers across 7 facilities housing approximately 4000 people? There is no
10 evidence about how long the showers had been in the condition, how many total
11 were involved, how often the showers are cleaned, the last time the showers were
12 cleaned, how many people had used the shower since the cleaning, etc. There was
13 no attempt by Graham to investigate facts to support the sweeping conclusion. (*See*
14 App.14, Ex. J, pp.61:15-62:23) All she can say is that she saw the showers
15 represented by the four photos at the moment the pictures were taken. Graham refers
16 to "many" dirty toilets in the same evidentiary citation. She references 3 photos of
17 the hundreds of toilets in 7 different facilities and offers no evidence of how long
18 the condition(s) lasted, any evidence of testing to determine what the alleged "dirt"
19 consisted of, such as her unfounded statements that "mold" was present, or how
20 many unflushed toilets constitutes "many" to make conditions inhumane. She never
21 bothered to attempt to flush any single toilet to test operability and never asked
22 anyone when the last time a toilet had been cleaned. (App. 14, Ex. J, p. 51:14-52:3)
23 Graham cites to "birds flying around" and "bird feces". Graham spotted birds and
24 was told that the birds sometimes get in through opened doors. She shared her
25 "opinion" that the staff seemed "unconcerned". How does she know they were
26 "unconcerned"?  She did not ask them and she has no idea what the attitude of the
27 Sheriff's Office is to cleanliness issues. (App. 14, Ex. J, p.27:9-15). She never asked
28 anyone how long the birds had been there, what they do about it when birds get in,

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4914-2812-0082 v1

6

Case No. 3:20-cv-00406-AJB-DDL
DEFS' REPLY ISO MPSJ

1  or what they intended to do about the offending birds. Much like the stale evidence
2  offered in opposition to the motion, the intentionally incomplete and unsupported
3  statements of Graham cannot form the basis for denial of the motion because they
4  are inadmissible.

5  Plaintiffs further claim to "dispute" evidence because Graham reviewed 80
6  policies. Plaintiffs Opp'n, p.22:5-17, points to Graham's Report at pp.90-92. In the
7  report, Graham states that she reviewed 4 specific "policies" and opines that they are
8  deficient. She fails to identify how any of the alleged deficiencies caused any
9  specific inhumane condition. She did not and would not touch anything she saw per
10 her deposition testimony and for good reason. If she had determined that something
11 was not mold or that a toilet was merely unflushed, her conclusions would fail
12 which is why simple, available further investigative measures were not taken. In
13 order to sustain her conclusion, she must provide factual support for her assertions
14 and all she does is opine about a snapshot of time that suits Plaintiffs' narrative.

15 In ruling as to whether there are disputed issues of material fact, the Court
16 must examine the snapshot in time conclusions of Graham and compare it to the
17 overwhelming evidence presented by Defendants proving the unsupported
18 conclusions of Graham to be unreliable because there is insufficient evidence to
19 support them and inadmissible. Plaintiffs attempt to rehabilitate the Graham
20 deficiencies by complaining that the San Diego Sheriff's Office has made changes
21 where they were needed—an odd complaint for parties seeking to obtain corrections
22 to deficiencies. Is the point of the litigation to effect change or litigate on forever.
23 The standard to be applied is deliberate indifference. A lack of proper labeling of
24 cleaning supplies hardly rises to the level of deliberate indifference. Regardless, Ms.
25 Peters suggested and the Sheriff's Office followed her suggestion about labeling and
26 Ms. Peters found staff to be responsive and desirous of doing things the right way.
27 (App.10, ¶16; App.13, ¶3.) Plaintiffs offer no evidence to the contrary. The
28 Opposition correctly points out that the changes were made voluntarily (which is a

good thing), but asserts that there has been no showing that there is an expectation that Defendants will maintain the labeling. (Opposition, p.23:20-24) The assertion is false. Both the Peters declaration and the Binsfield declaration are an undisputed showing that the Office will maintain the changes to labeling. (App.10, ¶16; App.13, ¶3)

The only other evidence submitted to dispute the material facts in the moving papers is Mr. Dolan's declaration. The Court can assume Mr. Dolan's statement is true that at some point in time in some unidentified cell, he was provided with an unlabeled bottle to clean only the floor of his cell. He does not provide any evidence as to when he was provided this "floor cleaner", whether he was provided with any other cleaners, whether the unlabeled bottle was ever replaced, how long he had the unlabeled bottle and which facility he was in when he was provided with the "floor cleaner". The statement does not dispute the fact staff are responsive and receptive to the suggestions of Ms. Peters and that they followed her recommendation that labeled bottles be provided as evidenced in the Binsfield Declaration and as supported by the declaration of Lt. Lizarraga (Reply App. 1, ¶6).

The Court can accept all of Mr. Dolan's statements as true and the motion for summary adjudication must still be granted. Plaintiffs are the class representatives for almost 4000 presently incarcerated people and those previously incarcerated persons from Class Certification to the present. Yet the only evidence submitted in opposition to the motion is the inadmissible Graham report and declaration and one single Incarcerated Person declaration. Mr. Dolan is the only person out of thousands of IP's having any sanitation issues. This motion was filed December 16th. The opposition was filed January 21st. Mr. Dolan's single declaration cannot establish deliberate indifference alone or in conjunction with Ms. Grahams' unsupported factual conclusions.

## V. THE JAILS HAVE ADEQUATE SAFETY PROTOCOLS

Plaintiffs allege that the classification system, drug contraband practices,

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4914-2812-0082 v1

8

Case No. 3:20-cv-00406-AJB-DDL
DEFS' REPLY ISO MPSJ

video and intercom systems, safety checks and responses to emergencies, and training and oversight of staff place class members at risk. (Opp'n at 24.) The evidence relied upon in the form of expert reports and declarations rely upon stale evidence (assuming it is all true) and ignore the current conditions at the Jails.

In evaluating whether injunctive relief is appropriate, "the higher standard for issuance of [a] mandatory injunction" applies. See *Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017). "A mandatory injunction 'orders a responsible party to take action.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 879 (9th Cir. 2009). Because Plaintiffs seek mandatory relief – change beyond the status quo – plaintiffs must demonstrate "extreme or very serious damage." *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879.

Plaintiffs continue to assert the death rate is higher than other counties and states. (Opp'n at 25-26.) The claim is meritless. It does not address current conditions or take into account the turnover rate at the jails. There were 9 in-custody deaths in 2024 (including some at the hospital outside of custody) and there has been 1 death from natural causes in 2025.[1] Plaintiffs' experts rely upon evidence from 2020 to 2023 (*see* Opp'n at 26) and the bald number of deaths without tying the actions or inactions of Defendants to any of the deaths. Plaintiffs point to CLERB's 2022 report on the "risk of dying from overdose." (Opp'n at 26.) The report focused on past practices and pre-dates the host of changes in drug interdiction, including scanning of arrestees, K9 drug searches, use of intelligence, prosecution of smugglers, random screening of staff, hi-tech mail processing, and Narcan in every unit and on each deputy, to name a few. Plaintiffs conclude that the robust current measures are "inadequate" but fail to offer any evidence of what additional measures would make the system adequate. Plaintiffs cite the Miami-Dade Jails as having no overdoses in 2024 (*see id.*, citing Raney Decl. ¶ 4(d)) but

---

[1] https://www.sdsheriff.gov/resources/transparency-reports

the claim could not be verified and there is no identification of which particular interdiction measure or measures are used in that County that prevented any such deaths or whether there were overdose deaths before the implementation of the unidentified measures. Plaintiffs point to a "prediction" that the San Diego County Jails would have 34 overdoses (not deaths) in 2024 (*see id*.) and having no evidence to support the "prediction". The actual data is published on line.[2]

Plaintiffs cite "deficiencies in Defendants policies and practices" (*id*. at 26) without citing to any specific policies other than I.50 (Body Scanner and X-Rays), which they contend has not been updated since 2023 (*id*. at 27). Policy I.50 was updated on January 21, 2025[3], and when it was last updated does not in and of itself make it deficient. Plaintiffs contend that the existence of what they claim are outdated videos, intercoms and elevators is evidence of unconstitutional conditions. There no legal authority cited for the novel proposition and jails are not constitutionally required to have the most up to date equipment. The question is safety. Plaintiffs point to the 2016 suicide of Boulanger as evidence to support the proposition. Mr. Boulanger died 8 years ago at his own hands while his cellmate allegedly used the intercom to seek help but it had been muted by a deputy. Policy I.2 on intercom systems (updated in December 2024) does not permit intercoms to be silenced or muted.[4] Plaintiffs point to no current evidence even in the last 2 or 3 years that intercoms have been muted by deputies. Plaintiffs ignore the evidence that IPs are not put in cells where intercoms don't work. (App. 10, ¶ 20.)

---

[2] Online data shows 25 total suspected overdoses in 2024, though 12 were <u>not confirmed</u>. https://www.sdsheriff.gov/home/showpubisheddocument/8892/ 638721180593370000

[3] https://apps.sdsheriff.net/PublicDocs/SB978/Detention%20Services%20 Bureau/Detentions%20Policy%20and%20Procedure%20Sections/Section%20I%20-%20SECURITY%20AND %20CONTROL/i50.pdf

[4] https://apps.sdsheriff.net/PublicDocs/SB978/Detention%20Services%20 Bureau/Detentions%20Policy%20and%20Procedure%20Sections/Section%20I%20-%20SECURITY%20AND%20CONTROL/i02.pdf

1    Plaintiffs allege CLERB does not yet have power to investigate in-custody
2 deaths, though they acknowledge the Board took initial steps toward this oversight.
3 (Opp'n at 28.) However, there are many other aspects of Jail oversight, including
4 BSCC and Grand Jury inspections, State Audits, and internal reviews, audits and
5 disciplinary processes. Thus, it cannot be said that there is a lack of oversight of the
6 Jails tantamount to deliberate indifference. To the contrary, the extensive
7 improvements made at the Jails demonstrate a strong commitment to the safety of
8 IPs.

9 **VI.   ACCESS TO COURTS AND COUNSEL IS CONSTITUTIONAL**

10   Plaintiffs argument, "Defendants do not acknowledge, let alone address, any
11 of Plaintiffs' expert's opinions on this topic," relies on stale policies and procedures.
12 (See, e.g., Snell Decl. [ECF 796-13]; Opp'n at 29-31.) Plaintiffs did not mention *the*
13 *recent improvements and additions;* that failure does not create material disputes of
14 fact as to constitutional access to counsel and the courts under the Sixth and
15 Fourteenth Amendments.  Since the filing of this lawsuit, and *after* expert
16 discovery—the improvements that Defendants instituted amounts to constitutional
17 access to counsel and the courts. (*See*, ECF 782-2, App. 9, Cardenas Decl., App. 10,
18 Binsfield Decl., ¶¶ 2-3, 5-7, 9, 11)
19    Plaintiffs attempt to create disputes of material fact as to whether
20 constitutional access to courts/counsel is reflected by references to dated policies
21 and procedures from expert reports and deposition testimony. (Opp'n at 30.) For
22 example, Plaintiffs' access to courts/counsel expert Karen Snell opined that there is
23 no reliable and confidential method of communication, that in-person visits suffer
24 from extreme delays and are not confidential. (Opp'n at 30:18-25.)  However, Smart
25 Communications tablets are imminently being rolled out; that program will allow
26 attorney-client emailing and messages. (Binsfield Decl., ¶ 6.). Professional in-
27 person attorney visits are *timely* conducted in separate rooms with no cameras, for
28

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4914-2812-0082 v1

11

Case No. 3:20-cv-00406-AJB-DDL
DEFS' REPLY ISO MPSJ

privacy on a first come, first served basis (*Id.,* ¶ 3.)[1] Plaintiffs inappositely rely on a dissimilar case where lengthy delays for attorney visits were not based on security or administrative reasons which significantly compromised attorney-client visitation. *See Benjamin v. Fraser,* 264 F.3d 175, 179-181 (2d Cir. 2001).

      Plaintiffs also rely on outdated information regarding attorney callback requests. *See*, e.g., Declaration from 2022 claiming that attorney callback requests were sometimes not relayed to IPs charged with criminal offenses (Opp'n at 30-31:9, *referencing* ECF 119-26, Lopez Decl. ¶ 10.)  Unnamed source(s) are cited to show that nine separate callback requests were made to Plaintiff James Clark between November 26 to December 18, 2024. (*See* ECF 796-1, Swearingen Decl., ¶ 7; ECF 796-16, Clark Decl. ¶ 5.).[2] Plaintiffs' claim that legal mail is slow and not confidential relies on outdated policies, hearsay, speculation and opinion. (*See,* e.g., ECF 796-1, Snell Decl. ¶ 2; *see also* ECF 119-31 at ¶¶ 9-10.].[3] Plaintiffs also cite generally to factually dissimilar caselaw to insinuate similar violations of the Sixth Amendment exist.  (*See* e.g., *Jones v. City & Cty. of San Francisco,* 976 F.Supp. 896 (N.D. Cal. 1997) (in-person attorney-client visits required whispering); *Johnson-El v. Schoemehl,* 878 F.2d 1043 (8th Cir. 1989) (policy of only one call

---

[1] Plaintiffs rely on the Vartomian Declaration who averred that he and his colleague waited for 3.5 hours to see his client on January 7, 2025. The actual wait time was approximately 1 hour and 4 minutes per written logs and CCTV footage. (*See* Reply App. 5, Burkey Decl., ¶¶ 2-7; Reply App. 6, Gonzalez Decl., ¶¶ 2-4.) Objective video controls when it conflicts with testimony for purposes of ruling on a summary judgment motion. *Rice v. Morehouse*, 989 F.3d 1112, 1120 (9th Cir. 2021); *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[2] Defendants object to testimony from both Plaintiffs' counsel and Clark, for lack personal knowledge and hearsay without exception, as Mr. Swearingen did not call Mr. Clark, and Mr. Clark merely relayed those same hearsay statements as proof the calls to him were made. (*See,* Fed. R. Evid. Rules 602 and 802.)

[3] Defendants object to this speculative, hearsay and non-factual opinion evidence as improper for consideration at summary judgment.

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4914-2812-0082 v1

12

Case No. 3:20-cv-00406-AJB-DDL
DEFS' REPLY ISO MPSJ

during business hours every two weeks); *Criswell v. Boudreaux,* 2020 WL 5235675 (E.D. Cal. Sept. 2, 2020) (jail thwarted in-person legal visits through COVID restrictive policies); and *Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) (*pro per* murder defendant denied access to law clerks and law books during his trial while administratively segregated). Plaintiffs disparage Defendants' provision of a legal research service, criminal pro per law library access, and writing supplies as constitutionally inadequate, and noted that access to legal research through video monitors in dayrooms has not yet been implemented. (Opp'n at 31.) The right to legal assistance in conditions of confinement cases is limited to the tools prisoners need "…in order to challenge the conditions of their confinement," assistance for which is limited to the pleading stage. *Silva v. Di Vittorio,* 658 F.3d 1090, 1102 (9th Cir. 2011), *citing Lewis v. Casey*, 518 U.S. 343, 355, 384(1996). Defendants provide that assistance; moreover, Defendants are currently providing legal research access to **all IPs** through facility kiosks. (*See* Reply App. 7, Bernal Perales Decl., ¶¶ 2-4; App. 10, Binsfield Decl., ¶ 4.)

## VII. THERE IS NO UNLAWFUL DISPARATE RACIAL IMPACT

Plaintiffs assert that based solely on raw statistics showing that slightly more persons of color are stopped and arrested than the overall County population racial demographics, Defendants cannot prevail on the Ninth Claim for Relief. The claim is without merit.

Government Code 11135(a) provides in relevant part that, "No person in the State of California shall, on the basis of . . . race, color, . . . national origin, [or] ethnic group identification . . . be unlawfully subjected to discrimination under, any program or activity . . . is funded directly by the state, or receives any financial assistance from the state." The program, to wit, policing in stopping and arresting people, is not funded by and does not receive any financial assistance from the State. (Reply App., Ramos Decl. ¶¶ 2-4.) While SDSO receives reimbursements for RIPA

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4914-2812-0082 v1

13

Case No. 3:20-cv-00406-AJB-DDL
DEFS' REPLY ISO MPSJ

data reporting, RIPA data reporting is post-policing activity and the policing activity itself is the subject of Plaintiffs claim for relief—not the reporting of data.

Plaintiffs expert asserts that, "patrol practices result in disproportionately high stops and arrests of Black and Latinx people, leading to disproportionately high rates of incarceration." (ECF 796, Opp'n at 32.) He based his conclusion on nothing more than the raw data about stops and arrests and either or both may not lead to incarceration. People may be given a warning, a ticket, a citation, or booked and released making the basis for Dr. Ross' legal conclusion insufficient as lacking a reliable basis.  See, *Kumho Tire Co. v. Carmichael*, supra, 526 U.S. at 149. 74% of persons bookings at the County Jails are done by other agencies (*see* ECF 782, Binsfield Decl. ¶ 18), with only 26% of bookings into the Jails in the last 3 years were made by Defendants. Again, the Ross conclusion is unreliable because he failed to take into account factors undermining his simplistic cause and effect assertion. The Ross "evidence" is inadmissible.

Plaintiffs assert that Black and Latinx persons are denied equal access to alternative to custody programs but those programs are not state-funded and Govt. Code §11135 does not apply. (*See*, Reply App. Ramos Decl., Ex. A thereto.)

"The basis for a successful disparate impact claim involves a comparison between two groups — those affected and those unaffected by the facially neutral policy." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003). Dr. Ross does nothing more than compare the pool of "stop and arrest" individuals to the County population at large. This is inappropriate making his testimony unreliable and inadmissible. See, *Robinson v. Adams*, 847 F.2d 1315, 1318 (9th Cir. 1987). In *Robinson*, the plaintiff filed a disparate impact claim against Orange County for its alleged discriminatory hiring practices claiming that he demonstrated discriminatory impact by citing statistics showing that the percentage of Blacks in Orange County and in surrounding counties is higher than the percentage of Blacks employed by Orange County. *Id*, at 1318. The Court rejected the claim because the

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4914-2812-0082 v1

14

Case No. 3:20-cv-00406-AJB-DDL
DEFS' REPLY ISO MPSJ

general population statistics do not "represent a pool of prospective applicants qualified for the jobs for which he applied".

Just as in *Robinson*, Plaintiffs are comparing general population statistics of the County as a whole failing to take into account that a different number of deputies are assigned to different areas, the racial makeup of the areas with the most patrol resources allocated is not tracked by Defendants, and the physical boundaries of patrol beats and census statics are seldom synonymous. The result is that proportional representation of residents by race or ethnicity within a patrol beat (i.e. where the stops and/or arrests are made, are not definitively known. (App., Withrow Decl, ¶ 24.) An accurate analysis must compare apples to apples by looking at the level of allocation of policing resources (e.g. patrol officers) to a patrol beat and comparing it to the proportional representation of residents by race or ethnicity within that same patrol beat. (See *id*., ¶ 25.) That analysis was not and cannot be done by because that data does not exist.

## VIII. CONCLUSION

For the reasons listed above, this Court should grant Defendants' Motion for Partial Summary Judgment.

Dated:  February 3, 2024

BURKE, WILLIAMS & SORENSEN, LLP

By:  /s/ *Susan E. Coleman*
Susan E. Coleman, Elizabeth M. Pappy, Deann R. Rivard, Martin K. Kosla
Attorneys for Defendants
COUNTY OF SAN DIEGO, SAN DIEGO COUNTY SHERIFF'S DEPARTMENT and SAN DIEGO COUNTY PROBATION DEPARTMENT

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4914-2812-0082 v1

15

Case No. 3:20-cv-00406-AJB-DDL
DEFS' REPLY ISO MPSJ