GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
mfreedman@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DARRYL DUNSMORE, ANDREE
ANDRADE, ERNEST ARCHULETA,
JAMES CLARK, ANTHONY EDWARDS,
REANNA LEVY, JOSUE LOPEZ,
CHRISTOPHER NORWOOD, JESSE
OLIVARES, GUSTAVO SEPULVEDA,
MICHAEL TAYLOR, and LAURA
ZOERNER, on behalf of themselves and all
others similarly situated,

          Plaintiffs,

    v.

SAN DIEGO COUNTY SHERIFF'S
DEPARTMENT, COUNTY OF SAN
DIEGO, SAN DIEGO COUNTY
PROBATION DEPARTMENT, and DOES
1 to 20, inclusive,

          Defendants.

Case No. 3:20-cv-00406-AJB-DDL

**MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF PLAINTIFFS'
MOTION FOR INTERIM
ATTORNEYS' FEES AND
COSTS**

Judge:     Hon. Anthony J. Battaglia

Date:     March 27, 2025
Time:     2:00 p.m.
Crtrm.:   4A

[4574770.10]

1
2

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................. 2

I.    PLAINTIFFS' COUNSEL SPENT YEARS TO OBTAIN THE
      RELIEF SECURED ..................................................................................... 2

      A.    Defendants Have Been on Notice of Their Failure to Comply
            with the ADA and Related Law For Years .......................................... 2

      B.    Plaintiffs' Counsel Investigated Disability Access Barriers at the
            Jail and Filed the Class Action Complaint .......................................... 2

      C.    Plaintiffs' Counsel Moved for a Preliminary Injunction and
            Provisional Class Certification and Conducted Expedited
            Discovery ......................................................................................... 3

      D.    Plaintiffs' Second Motion for Preliminary Injunction and
            Provisional Class Certification .......................................................... 4

      E.    Plaintiffs' Counsel Obtained a Court-Enforceable Settlement for
            Issues in 2023 Preliminary Injunction Motion ................................... 5

      F.    Plaintiffs' Counsel Worked to Protect Plaintiffs' Rights Under
            the 2023 ADA Order and 2024 ADA Plan .......................................... 6

      G.    Plaintiffs' Monitoring Revealed Violations of the 2023 ADA
            Order ................................................................................................ 6

      H.    Plaintiffs Secured a Court-Ordered Amended ADA Plan ..................... 7

      I.    Plaintiffs Litigated and Obtained a Settlement of the Remaining
            Issues in Their Third Claim for Relief ............................................... 8

II.   THE SCOPE OF THE RELIEF SECURED BY PLAINTIFFS'
      COUNSEL IS SIGNIFICANT AND BENEFITS THE DISABILITY
      SUBCLASS PROFOUNDLY ......................................................................... 9

ARGUMENT .................................................................................................... 10

I.    PLAINTIFFS' COUNSEL SHOULD BE AWARDED THE FULL
      ATTORNEYS' FEES THEY SEEK FOR WORK ON PLAINTIFFS'
      FEDERAL AND STATE LAW DISABILITY CLAIMS ............................... 11

II.   THE REQUESTED MERITS LODESTAR IS REASONABLE AND
      APPROPRIATE IN THE CIRCUMSTANCES OF THIS CASE ................... 12

      A.    Plaintiffs' Counsel's 2025 Rates Are Consistent with Private
            Market Rates for Legal Services Performed by Comparable
            Attorneys in Comparable Cases ...................................................... 13

1       1.    Plaintiffs' Counsel's Rates Are Within the Range of Rates
              in the San Diego Market for Comparable Attorneys in
2             Comparable Cases ........................................................... 15

3       2.    Awarding Plaintiffs' Counsel Their Requested Rates Is
              Also Appropriate Given Their Expertise and
4             Unavailability of Local Lead Counsel ............................ 15

5       3.    Plaintiffs' Counsel's Many Consistent Prior Fee Awards
              Support an Award of Their Requested Rates .................. 17

6
     B.    Plaintiffs' Counsel's Detailed Time Records Transparently
7          Document Their Necessary and Appropriate Work as Well as
           Their Substantial Billing Judgment Reductions ..................... 18
8
        1.    Plaintiffs' Counsel Has Provided Well-Documented,
9             Detailed, Contemporaneous Billing Records ................ 20

10      2.    Plaintiffs Secured Total Victory Including Substantial
              Relief Due to Their Lawyers' Work .............................. 21
11
        3.    Plaintiffs' Lawyers Devoted the Time that Was Necessary ....... 21
12
III.  PLAINTIFFS' COUNSEL SHOULD BE AWARDED THEIR
13    REQUESTED FEES FOR THEIR FEE MOTION WORK ........................... 22

14 IV.  PLAINTIFFS' COUNSEL'S DOCUMENTED COSTS AND
       EXPENSES ARE REASONABLE AND APPROPRIATE ........................... 24
15
   CONCLUSION ............................................................................ 25

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Armstrong v. Brown*,
    805 F. Supp. 2d 918 (N.D. Cal. 2011) ........................................................... 17

*Barjon v. Dalton*,
    132 F.3d 496 (9th Cir. 1997) ...................................................................... 13

*Barrios v. Cal. Interscholastic Fed'n*,
    277 F.3d 1128 (9th Cir. 2002) .................................................................... 11

*Blackwell v. Foley*,
    724 F. Supp. 2d 1068, 1074 (N.D. Cal. 2010) ................................. 11, 13, 24

*Bouman v. Block*,
    940 F.2d 1211 (9th Cir. 1991) .................................................................... 13

*City of Burlington v. Dague*,
    505 U.S. 557 (1992) .................................................................................... 12

*Davis v. City and Cty. of San Francisco*,
    976 F.2d 1536 (9th Cir. 1992), *vacated in part on other grounds*, 984
    F.2d 345 (9th Cir. 1993) ............................................................................ 13

*DL v. Dist. of Columbia*,
    267 F. Supp. 3d 55 (D.D.C. 2017), *vacated on other grounds and
    remanded*, 924 F.3d 585 (D.C. Cir. 2019) ................................................ 24

*Gates v. Deukmejian*,
    987 F.2d 1392 (9th Cir. 1992) .................................................................... 16

*Gracie v. Gracie*,
    217 F.3d 1060 (9th Cir. 2000) .................................................................... 13

*Graham v. DaimlerChrysler Corp.*,
    34 Cal. 4th 553 (2004) .......................................................................... 14, 22

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
    100 F.3d 691 (9th Cir. 1996) ...................................................................... 16

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) .................................................................... 13, 24

*K.N. v. Passaic City Bd. of Educ.*,
    No. CIV.A. 11-399 JLL, 2011 WL 5157280 (D.N.J. Oct. 28, 2011) ............. 24

*La Mirada Ave. Neighborhood Assn. of Hollywood v. City of Los Angeles*,
    22 Cal. App. 5th 1149 (2018) ...................................................................... 12

*Lovell v. Chandler*,
  303 F.3d 1039 (9th Cir. 2002) .................................................................24

*M.M. v. Sch. Dist. of Phila.*,
  142 F. Supp. 3d 396 (E.D. Pa. 2015) .......................................................24

*Marks v. Clarke*,
  102 F.3d 1012 (9th Cir. 1996), *as amended on denial of reh'g* (Feb. 26,
  1997).........................................................................................................12

*Melendres v. Arpaio*,
  No. 13-16285 & 13-17238, 2017 WL 10808812 (9th Cir. Mar. 2, 2017) ......16

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) .................................................................................18

*Moore v. James H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) ...................................................................18

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) .....................................................................12

*Muniz v. United Parcel Serv., Inc.*,
  738 F.3d 214 (9th Cir. 2013) ...................................................................13

*Parsons v. Ryan*,
  949 F.3d 443 (9th Cir. 2020) ...................................................................16

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) .................................................................................12

*Perkins v. Mobile Housing Bd.*,
  847 F.2d 735 (11th Cir. 1988) .................................................................20

*Prison Legal News v. Schwarzenegger*,
  608 F.3d 446 (9th Cir. 2010)...............................................................13, 15

*Richard S. v. Dep't of Developmental Servs. of State of Cal.*,
  317 F.3d 1080 (9th Cir. 2003) .................................................................11

*Serrano v. Unruh*, 32 Cal. 3d 621, 638 (1982)....................................21, 22

*Stetson v. Grissom*,
  821 F.3d 1157 (9th Cir. 2016) .................................................................13

*Thompson v. Gomez*,
  45 F.3d 1365 (9th Cir. 1995)....................................................................22

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*,
  676 F.2d 1291 (9th Cir. 1982) .................................................................18

*Woods v. Carey*,
  722 F.3d 1177 (9th Cir. 2013) .................................................................24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR INTERIM ATTORNEYS' FEES AND COSTS

*Yenidunya Inv. Ltd. v. Magnum Seeds, Inc.*,
   No. CIV. 2:11-1787 WBS, 2012 WL 538263 (E.D. Cal. Feb. 17, 2012).......16

**STATUTES**

28 U.S.C. § 1920...............................................................................................24

29 U.S.C. § 794a................................................................................................11

42 U.S.C. § 12205........................................................................................11, 24

Cal. Code Civ. Proc. § 1021.5 ..........................................................................11

# INTRODUCTION

After over three years of intense and hard-fought litigation, Plaintiffs secured the class wide relief that they sought with respect to their disability law claims, Plaintiffs' Third Claim for Relief.  The Court-ordered Amended ADA Plan and the ADA Settlement Agreement mandate sweeping changes requiring Defendants to ensure that the San Diego County Jail system (the "Jail") is physically accessible to the incarcerated people with disabilities subclass and that subclass members receive the accommodations they need to access Jail programs and services.

To obtain these results, necessary and appropriate work performed by Rosen Bien Galvan & Grunfeld ("RBGG"), the Law Office of Aaron J. Fischer ("Mr. Fischer"), and DLA Piper US ("DLA Piper") (collectively, "Plaintiffs' counsel") included extensive factual investigation; two preliminary injunction motions supported by declarations from Plaintiffs' ADA expert and dozens of declarations from incarcerated people with disabilities; contentious discovery, including multiple on-site facility inspections, Rule 30(b)(6) interviews, e-discovery, and expert disclosures; extensive negotiations and litigation over the contents of remedial plans; monitoring of remedies; and over fifteen settlement conferences overseen by the Court.  Plaintiffs achieved these excellent results over Defendants' sustained opposition.  Defendants have agreed that Plaintiffs' counsel are entitled to recover reasonable attorneys' fees for their work.

Plaintiffs' counsel seek their fees using current 2025 rates.  After substantial billing judgment reductions and across-the-board discounts amounting to 13.2% of the value of their claimed time, they seek a merits lodestar of $2,111,562.63 for their work through January 20, 2025.  After extensive billing judgment reductions and across-the-board discounts amounting to 24.9% of the value of their recorded time for fees work, Plaintiffs' counsel seek $158,002.58 for their work through January 20, 2025 on this fees motion.  In addition, they seek $476,469.35 for recoverable costs and litigation expenses, mostly for the fees counsel have paid their

ADA expert.  In total, Plaintiffs' counsel seek in this Motion $2,746,034.56 for their reasonable fees and expenses through January 20, 2025.

<strong>FACTUAL AND PROCEDURAL BACKGROUND</strong>

## I.    PLAINTIFFS' COUNSEL SPENT YEARS TO OBTAIN THE RELIEF SECURED

### A.    Defendants Have Been on Notice of Their Failure to Comply with the ADA and Related Law For Years

Defendants have been aware of their responsibilities under the ADA since1998.  Declaration of Gay C. Grunfeld ("Grunfeld Decl.") ¶¶ 37-40.  In December 2016, the San Diego Sheriff's Office ("SDSO") issued a memo acknowledging that the Jail was out of compliance with the ADA in multiple respects.  *Id.* ¶ 39 & Ex. S.  Notably, throughout the course of this litigation, neither Defendants nor their experts claimed that the Jail facilities were in compliance with the ADA, and Defendants  acknowledged that their policies and procedures required revision.  Grunfeld Decl. ¶ 107.  Nevertheless, they fought Plaintiffs' Third Claim for Relief for over three years.  *See Id.* ¶¶ 41, 43, 104.

### B.    Plaintiffs' Counsel Investigated Disability Access Barriers at the Jail and Filed the Class Action Complaint

Plaintiffs' counsel began investigating conditions in the Jail in March 2021, after learning about the Jail's denial of disability accommodations to one of the named Plaintiffs.  Grunfeld Decl. ¶¶ 41-42.  After substantial investigation, Plaintiffs' counsel substituted into this case in December 2021 and amended the complaint to include class action allegations on February 9, 2022.  Dkt. No. 81; Grunfeld Decl. ¶ 43.  Both the Second Amended Complaint and the operative Third Amended Complaint, filed on November 18, 2022 (Dkt. 231), assert disability claims under the Americans with Disabilities Act, Rehabilitation Act, and California Government Code, Section 11135 (collectively, "ADA" laws).  *See* Grunfeld Decl. ¶¶ 43-44.

Approximately one month after filing the Second Amended Complaint,

1  Plaintiffs proposed that Defendants retain neutral, mutually agreed-upon experts to

2  identify systemic ADA and other issues in an effort to resolve this action

3  expeditiously. *Id.* ¶ 45 & Ex. U. Defendants declined to agree to the proposal. *Id.*

    **C.  Plaintiffs' Counsel Moved for a Preliminary Injunction and Provisional Class Certification and Conducted Expedited Discovery**

6      Plaintiffs' counsel prepared motions for preliminary injunction as to ADA

7  and other issues as well as provisional class certification, which they filed on May 2,

8  2022. Dkt. 119 ("2022 Preliminary Injunction Motion"); Grunfeld Decl. ¶ 46.

9  Plaintiffs' 2022 Preliminary Injunction Motion was supported by a declaration from

10  expert Syroun Sanossian of SZS Engineering, a highly-regarded, Certified Access

11  Specialist (CASp) with expertise in corrections disability access—*see* Grunfeld

12  Decl. ¶ 46; Declaration of Claudia Center ("Center Decl.") ¶ 10—as well as

13  declarations from eleven incarcerated people describing Defendants' failures to

14  provide disability accommodations and accessible housing. Grunfeld. Decl. ¶ 47.

15      Although the Court denied Plaintiffs' 2022 Preliminary Injunction Motion, its

16  August 15, 2022 Order stated that discovery would be helpful. *Id.* ¶ 48. Plaintiffs

17  thereafter filed a motion seeking an order permitting limited, expedited discovery

18  related to the issues in the 2022 Preliminary Injunction Motion. *Id.* ¶ 49. The

19  motion was not heard due to Plaintiffs' being required to amend their complaint. *Id.*

20  ¶¶ 50-51. On December 14, 2022, Plaintiffs moved for limited, expedited

21  discovery, this time only as to ADA issues. *Id.* ¶¶ 51-52.

22      On January 17, 2023, the Court ordered expedited discovery regarding

23  Defendants' policies and practices for accommodating incarcerated people with

24  hearing disabilities and mobility disabilities at two Jail facilities. Grunfeld Decl.

25  ¶ 52. In February and March 2023, Plaintiffs' counsel and their experts inspected

26  Rock Mountain and Central Jail facilities. *Id.* ¶¶ 53, 55. Plaintiffs' counsel worked

27  with Ms. Sanossian, who prepared two expert reports totaling almost six hundred

28  pages in length. *Id.* Plaintiffs' counsel reviewed numerous documents produced by

1   Defendants and conducted Fed. R. Civ. P. 30(b)(6) depositions of three designees
2   regarding disability-access at Rock Mountain and Central Jail. *Id.* ¶¶ 54, 56.
3   Because those deponents were unable to testify regarding critical portions of the
4   topic of sign language interpreting and physical disability access modifications to
5   Central Jail, Plaintiffs' counsel deposed two additional Rule 30(b)(6) designees on
6   April 20, 2023. *Id.* ¶ 56.

7        On April 4, 2023, Plaintiffs' counsel wrote to Defendants offering to forgo
8   filing another preliminary injunction motion if Defendants agreed to conduct an
9   Early Neutral Evaluation and to collaborate on development of a remedial plan as to
10  ADA issues. *Id.* ¶ 60 & Ex. X.  Defendants did not agree to this proposal. *Id.* ¶ 60.

11       **D.   Plaintiffs' Second Motion for Preliminary Injunction and
              Provisional Class Certification**
12

13       On April 25, 2023, Plaintiffs filed their second motion for preliminary
14  injunction and motion for provisional class certification. Dkt. 281 ("2023
15  Preliminary Injunction Motion"); Grunfeld Decl. ¶ 61.  Plaintiffs' 2023 Preliminary
16  Injunction Motion sought remedies for the lack of sign language interpretation for
17  hearing-impaired people and inaccessible physical features for people with mobility
18  disabilities throughout the Jail.  Grunfeld Decl. ¶ 61.  The motion was supported by
19  an expert declaration and fourteen declarations of people with disabilities, which
20  took considerable time to obtain because of lengthy delays in accessing attorney-
21  client visits. *Id.* ¶¶ 58-59, 61 & Ex. W.

22       In their opposition to Plaintiffs' 2023 Preliminary Injunction Motion, Defend-
23  ants argued that they were actively implementing changes. *Id.* ¶ 62.  Plaintiffs'
24  counsel visited the Jail to conduct additional interviews and prepare additional
25  declarations from incarcerated persons to support Plaintiffs' reply. *Id.* ¶ 63.  On
26  May 26, 2023, Plaintiffs filed their reply with seven declarations from incarcerated
27  people, a declaration from their ADA expert, and a declaration from a mental health
28  clinician formerly employed by the jail. *Id.* ¶ 65.

In early June 2023, responding to the Court's request, Plaintiffs filed a supplemental declaration confirming that Defendants' housing rosters showed that people with mobility disabilities were assigned to the middle and top bunks. *Id.* ¶ 66.  Shortly thereafter, Defendants became serious about settlement. *Id.* ¶ 67.

**E.    Plaintiffs' Counsel Obtained a Court-Enforceable Settlement for Issues in 2023 Preliminary Injunction Motion**

On June 16, 2023, after substantial meet and confer efforts, the parties reached a settlement whereby Defendants agreed to systemic changes sought in Plaintiffs' 2023 Preliminary Injunction Motion. *Id.* ¶ 67.  On June 20, 2023, the parties filed a stipulation providing for provisional certification of a Disability Subclass, and promising numerous remedies related to the provision of sign language interpretation for people with hearing disabilities as well as agreements that Defendants would remedy certain physical features at Central Jail to accommodate people with mobility disabilities. *Id.* ¶ 68.  The next day, the Court issued an order (Dkt. 355, the "2023 ADA Order") requiring Defendants to develop a plan (the "ADA Plan") to address the accessibility and effective communications barriers identified in Plaintiffs' 2023 Preliminary Injunction Motion, provide the ADA Plan for Plaintiffs' comments, and submit the ADA Plan to the Court for entry as an enforceable order. *Id.* ¶ 70.

On June 20, 2023, the San Diego Union Tribune published an article about the breadth of remedies included in the settlement, noting that "[t]he agreement comes days before a planned court hearing on a request by people now or once incarcerated in the county's jails seeking to force changes."  Grunfeld Decl. ¶ 71, Ex. Z.  The same day, the SDSO issued a press release announcing a summary of all of the changes that would be implemented at the Jail, and stating that "Sheriff Kelly A. Martinez is grateful for the work that went into this mutually agreed upon settlement" and that she "and her team are committed to compliance with all the terms." *Id.* ¶ 71.

**F.      Plaintiffs' Counsel Worked to Protect Plaintiffs' Rights Under the 2023 ADA Order and 2024 ADA Plan**

On August 22, 2023, Defendants provided Plaintiffs with their proposed ADA Plan. *Id.* ¶ 72.  After Plaintiffs informed Defendants of their objections, and after meeting and conferring, Defendants filed their proposed ADA Plan with the Court on October 5, 2023, incorporating just a few of Plaintiffs' requested revisions to their Plan. *Id.* ¶¶ 72-75.  On October 20, 2023, Plaintiffs filed Objections to Defendants' ADA Plan. *Id.* ¶ 76.  On April 24, 2024, the Court issued an order (1) agreeing with Plaintiffs' objections on all contested issues, (2) requiring Defendants to implement revised ADA policies and train their staff on them by June 1, 2024, (3) requiring Defendants to develop an Amended ADA Plan consistent with the Court's order, and (4) requiring the parties to meet and confer about the Amended ADA Plan. *Id.* ¶ 77.

**G.      Plaintiffs' Monitoring Revealed Violations of the 2023 ADA Order**

On May 15, 2024, Plaintiffs' counsel participated in an inspection of the Central Jail.  Grunfeld Decl. ¶ 83.  They learned that incarcerated individuals with disabilities were sleeping on mattresses on the floor of ADA units at Central Jail, which violated the Court's 2023 ADA Order. *Id.*  Plaintiffs' counsel repeatedly informed Defendants of these violations and requested video footage from the housing units where floor-sleeping was occurring. *Id.* ¶¶ 83, 84 & Exs. DD, EE. Defendants denied that anyone was sleeping on the floor, refused to provide video recordings, and claimed that named Plaintiff James Clark was recorded via body worn camera telling a Jail sergeant that Plaintiffs' counsel had instructed Mr. Clark not to inform Jail staff about inadequate bed space and people sleeping on the Jail floors. *Id.* ¶¶ 83-85 & Ex. FF.  Based on this false allegation, Defendants threatened to bring a restraining order against Plaintiffs' counsel for intentionally interfering with Jail processes. *Id.* ¶ 86 & Ex. GG.

From May to July, 2024, Plaintiffs attempted to obtain the video recording of

Mr. Clark and video recordings evidencing floor-sleeping, but Defendants would not provide the requested footage. *Id.* ¶¶ 85, 88. Plaintiffs provided Magistrate Judge David D. Leshner ("Judge Leshner") with six declarations from incarcerated people regarding floor sleeping and insufficient bed space, and after a July 1, 2024 discovery conference, Judge Leshner ordered production of housing unit video as well as the body worn camera footage of Mr. Clark as part of the dispute resolution process envisioned by the 2023 ADA Order. *Id.* ¶¶ 87-89. As a result of Plaintiffs' pursuit of the issue, Defendants changed their policy to ensure that Jail staff would verify that people in the affected housing units had assigned bunks and would not be required to sleep on the floor. *Id.* ¶ 90. The ADA Settlement ultimately reached includes broader protections. *Id.*

### H.    Plaintiffs Secured a Court-Ordered Amended ADA Plan

Following the Court's April 24, 2024 Order requiring Defendants to submit an Amended ADA Plan, the parties met and conferred including at a June 3, 2024 in-person meeting with their experts and overseen by Judge Leshner. Grunfeld Decl. ¶ 78. On June 26, 2024, Defendants provided Plaintiffs with their proposed Amended ADA Plan. *Id.* ¶ 79. Following negotiations, Defendants agreed to implement most of the changes that Plaintiffs requested. *Id.* The parties filed a joint motion to approve the Amended ADA Plan on August 23, 2024. *Id.* ¶ 79. The Court approved the Amended ADA Plan the same day. *Id.*

The parties then met and conferred and eventually agreed to have CASp-certified Eric McSwain serve as a neutral expert to oversee compliance with the 2023 ADA Order and Amended ADA Plan. Grunfeld Decl. ¶ 91. Mr. McSwain has now conducted three inspections of the ADA renovations at Central Jail and issued two reports. *Id.* ¶ 94. Plaintiffs have also inspected the Jail pursuant to the 2023 ADA Order. *Id.* ¶ 95.

I.    **Plaintiffs Litigated and Obtained a Settlement of the Remaining Issues in Their Third Claim for Relief**

As the parties worked to implement the 2023 ADA Order, they engaged in discovery and litigated the other components of Plaintiffs' Third Claim for Relief. *Id.* ¶ 96.  In January 2024, Plaintiffs' counsel and Plaintiffs' expert Ms. Sanossian conducted inspections of four additional Jail facilities.  *Id.* ¶ 97.  With Plaintiffs' counsel's assistance, Ms. Sanossian then prepared detailed site inspection reports for each Jail facility that documented every barrier she identified.  *Id.* ¶ 111.  Plaintiffs' counsel reviewed Defendants' ADA-related documents, produced in late 2023 and the first half of 2024.  *Id.* ¶ 98.  Plaintiffs took additional ADA-related Fed. R. Civ. P. Rule 30(b)(6) depositions prior to the close of discovery in May 2024.  *Id.*

In August 2023, Plaintiffs' counsel outlined the elements necessary to achieve settlement of the remaining issues in Plaintiffs' Third Claim for Relief for a disability subclass.  *Id.* ¶ 98.  In addition to parties-only negotiations, the parties conducted thirteen settlement conferences with Judge Leshner leading to the ADA Settlement, some with parties' experts present, on March 6, April 19, June 3, July 3, July 10, July 29, October 9, October 18, October 28, November 4, November 6, November 13, and November 20, 2024.  *Id.* ¶¶ 78, 98-101.  The parties exchanged information in writing, including detailed written settlement proposals, between the settlement meetings.  *Id.* ¶¶ 98-100, 102.  At Defendants' request, Plaintiffs' counsel regularly provided information to Defendants, such as legal authority supporting Plaintiffs' positions and information about practices in other jurisdictions' jails.  *Id.* ¶ 102.  Each round of revisions to the settlement proposals took considerable effort and coordination among Plaintiffs' counsel, including between RBGG and Mr. Fischer.  *Id.* ¶ 102.  Often, Plaintiffs' counsel necessarily consulted with their expert, Ms. Sanossian, about specific provisions of the draft settlement proposals or questions that arose during negotiations.  *Id.*

On November 22, 2024, the parties reached a settlement in principle.  *Id.*

1   ¶ 103.  On December 11, 2024, the San Diego County Board of Supervisors

2   approved the settlement.  *Id.*  Immediately thereafter, SDSO released a press release

3   acknowledging that modifications required by the settlement "will increase access

4   for incarcerated persons with disabilities."  *Id.*

5            On December 12, 2024, the parties filed the settlement with the Court, which

6   the Court approved.  Dkt. 776 ("ADA Settlement"), Dkt. 777; *Id.* ¶ 104.  The next

7   day, the San Diego Union Tribune published an article titled "Sheriff agrees to make

8   all jails safer for people with disabilities."  Grunfeld Decl. ¶ 103, Ex. JJ.  The article

9   observed that "[t]he agreement follows nearly 18 months of negotiations with a

10  group of civil rights attorneys who sued to force the sheriff to comply with the

11  Americans with Disabilities Act."  *Id.* Ex. JJ.

12           The parties filed their Joint Motion for Preliminary Approval of the

13  Settlement on January 10, 2025, Dkt. 792.  Grunfeld Decl. ¶ 105.

14  **II.    THE SCOPE OF THE RELIEF SECURED BY PLAINTIFFS'
         COUNSEL IS SIGNIFICANT AND BENEFITS THE DISABILITY**
15       **SUBCLASS PROFOUNDLY**

16           Plaintiffs obtained a total victory, securing all of the relief that they sought

17  with respect to their disability Third Claim for Relief.

18           The Amended ADA Plan requires that Defendants identify, document, and

19  accommodate the effective communication needs of class members with hearing

20  disabilities systemwide.  Dkt. 695-1 at 5-7.  It requires Defendants to identify,

21  document, and accommodate the accessible bed and other physical accessibility

22  needs of class members with mobility disabilities, as well as make renovations to the

23  physical facilities at Central Jail to remove physical access barriers and ensure that

24  additional accessible beds are available and ensure that the intake and booking

25  process is physically accessible.  *Id.* at 7-22.  The Amended ADA Plan also requires

26  that Defendants train staff regarding new policies and practices, and implement an

27  interim plan to accommodate class members with mobility disabilities until physical

28  accessibility renovations are complete.  *Id.* at 7, 11, 14-15.

The ADA Settlement is broader and addresses each of the elements in Plaintiffs' Third Claim for Relief, including the identification and tracking of people with disabilities, accommodations for people with hearing and speech disabilities, accommodations for people with mental illness and substance use disorders, provision of assistive devices to people with disabilities, safe housing and access to programs, requests for disability accommodations, and accommodations for people with disabilities in emergency situations. *See* Dkt. 231 ¶¶ 230-294. It requires Defendants to revise policies and practices to bring them into compliance with state and federal disability laws, and to provide jail staff across disciplines with ADA training. *Id.* ¶¶ 20-22. In addition to the physical modifications at Central Jail, the ADA Settlement requires Defendants to make accessibility modifications at five additional jail facilities and to assess whether additional housing accessibility modifications are necessary. *Id.* ¶¶ 46-62, 67-72, 74. It requires Defendants to retain two neutral experts to monitor and report on compliance with the settlement. *Id.* at ¶¶ 132-143. And it also provides that the Court will retain jurisdiction, including to enforce the ADA Settlement as warranted, until Defendants achieve substantial compliance with its requirements. *Id.* at ¶ 158.

## ARGUMENT

The Court should award Plaintiffs their full claimed lodestar. Defendants agreed that Plaintiffs are the prevailing party and are entitled to recover attorneys' fees for their work on the Third Claim for Relief. Plaintiffs have succeeded completely on the ADA claims. With this motion, Plaintiffs provide ample evidence demonstrating that Plaintiffs' counsel's requested billing 2025 rates are within the range of rates charged in the San Diego market. All the work to secure the relief for which Plaintiffs claim fees was reasonable and appropriate, as is demonstrated by counsel's contemporaneous time records. Plaintiffs' counsel have made more than sufficient billing judgment reductions to account for any duplication of work or non-compensable time.

In addition to their merits work fees, Plaintiffs are entitled to recover fees for preparing this motion and supporting papers.  Plaintiffs are also entitled to recover the expert fees and other costs that they incurred in litigating and resolving their Third Claim for Relief.

**I.    PLAINTIFFS' COUNSEL SHOULD BE AWARDED THE FULL ATTORNEYS' FEES THEY SEEK FOR WORK ON PLAINTIFFS' FEDERAL AND STATE LAW DISABILITY CLAIMS**

Plaintiffs are entitled to recover their attorneys' fees and costs under the ADA, Rehabilitation Act, and California's private attorney general statute.  42 U.S.C. § 12205 (ADA); 29 U.S.C. § 794a(b) (Rehabilitation Act); Cal. Code Civ. Proc. § 1021.5; *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1074, 1086 (N.D. Cal. 2010) (holding prevailing plaintiff was entitled to award of attorneys' fees under both ADA and Section 1021.5).  Plaintiffs are entitled to attorneys' fees by prevailing under the ADA "when he or she enters into a legally enforceable settlement agreement against the defendant." *Richard S. v. Dep't of Developmental Servs. of State of Cal.*, 317 F.3d 1080, 1088 (9th Cir. 2003); *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002).

Under Section 1021.5, Plaintiffs are entitled to attorneys' fees when:  (1) they successfully enforced an important right affecting the public interest, (2) a significant benefit is conferred on a large class of persons, (3) a fee award is appropriate given the need for and the financial burden of private enforcement, and (4) fees are not paid out of the recovery.  Cal. Code Civ. Proc. § 1021.5.  Plaintiffs satisfy these requirements.  First, the Amended ADA Plan and ADA Settlement protect the rights of incarcerated people with disabilities to access essential services in the Jail, which is important and in the public interest.  Second, the court-ordered relief ensures that people with disabilities who are or will be incarcerated in Defendants' jails, a large class of persons, will receive effective communication and physical access to jail facilities, services, and programs—a significant benefit.  Third, there was a need for private enforcement because, despite being aware of the

violations, Defendants failed to take action to remedy the disability discrimination in the Jail. Grunfeld Decl. ¶¶ 39-40, 45. The financial burden of private enforcement has been substantial because of the technical expertise needed and because the class lacks the ability to pay its counsel for their services. *See id.* ¶¶ 46, 110, 115. Moreover, there was no monetary recovery.

The Court-ordered Amended ADA Plan and ADA Settlement constitute a final resolution of Plaintiffs' federal and state disability claims. Even though Plaintiffs' other claims remain in litigation, and no final judgment can be entered, both federal and state laws provide that Plaintiffs may recover interim fees where they have secured relief resolving some of their claims while litigation of their other claims continues. *Marks v. Clarke*, 102 F.3d 1012, 1034 (9th Cir. 1996), *as amended on denial of reh'g* (Feb. 26, 1997); *La Mirada Ave. Neighborhood Assn. of Hollywood v. City of Los Angeles*, 22 Cal. App. 5th 1149, 1159-60 (2018) (upholding interim fee award under state law).

Indisputably, Plaintiffs are the prevailing party and are entitled to an award of fees and costs. ADA Settlement ¶ 160 ("The parties agree that Plaintiffs and the disability subclass are entitled to reasonable attorneys' fees and costs on all issues covered by the Third Claim for Relief in Plaintiffs' Third Amended Complaint, including the 2023 ADA Order and this ADA Settlement and Order.").

## II. THE REQUESTED MERITS LODESTAR IS REASONABLE AND APPROPRIATE IN THE CIRCUMSTANCES OF THIS CASE

Under federal law, the calculation of reasonable fees is determined through the lodestar method. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The "lodestar is the product of reasonable hours times a reasonable rate." *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992) (internal citation and quotation marks omitted). There is a strong presumption that the lodestar figure represents a reasonable fee award. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552-54 (2010); *Morales*, 96 F.3d at 363 n.8; *see also Harris v. Marhoefer*, 24 F.3d

16, 18 (9th Cir. 1994). In determining whether the amount of fees requested is reasonable, courts are directed to make "specific findings as to the rate and hours it has determined to be reasonable." *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) (internal citation and quotation marks omitted).

The lodestar method is also used initially to award fees under California law. *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 222 (9th Cir. 2013) ("In general, California courts … utilize the lodestar … approach to determine a proper fee award … in a civil rights law suit.").

### A. Plaintiffs' Counsel's 2025 Rates Are Consistent with Private Market Rates for Legal Services Performed by Comparable Attorneys in Comparable Cases

"Reasonable fees are … to be calculated according to the prevailing market rates in the relevant community." *Davis v. City and Cty. of San Francisco*, 976 F.2d 1536, 1545-46 (9th Cir. 1992) (internal quotations omitted), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993). The reasonableness of market rates is determined by reference to the rates of "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community. *Id.* Ordinarily, the "relevant community" is the forum district for the action in which fees are sought. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). There are, however, exceptions that apply in this case.

Under both federal and state law, when a prevailing plaintiff has incurred attorney's fees over a number of years without payment, the proper rate to use in calculating the lodestar is the current rate at the time of the award. *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 453-54 (9th Cir. 2010) (affirming award of 2008 rates for settlement compliance monitoring work performed in 2007); *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (approving district court award of "current hourly rates to compensate for the delay in receiving payment"); *Blackwell*, 724 F. Supp. 2d at 1078; *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 583-

84 (2004).

Plaintiffs' counsel's merits work and fees work lodestars are based on the following requested 2025 rates.

| Timekeeper | Position | Law School Class | 2025 Rate |
|---|---|---|---|
| **RBGG** | | | |
| Sanford Jay Rosen | Partner | 1962 | $1,625 |
| Gay Crosthwait Grunfeld | Partner | 1984 | $1,325 |
| Van Swearingen | Partner | 2008 | $975 |
| Michael Nunez | Senior Counsel | 2011 | $850 |
| Priyah Kaul | Senior Counsel | 2015 | $750 |
| Eric Monek Anderson | Associate | 2017 | $600 |
| Hannah Chartoff | Associate | 2018 | $575 |
| Benjamin Holston | Associate | 2021 | $500 |
| Ellinor Heywood | Paralegal | N/A | $350 |
| Kedra Chan | Paralegal | N/A | $350 |
| Lindsy Newfeld | Paralegal | N/A | $350 |
| **Law Office of Aaron J. Fischer** | | | |
| Aaron J. Fischer | Principal | 2006 | $900 |
| **DLA Piper** | | | |
| Christopher M. Young | Partner | 1992 | $1,670 |
| Oliver Kiefer | Associate | 2012 | $1,250 |
| Isabella Maria Neal | Associate | 2019 | $1,200 |
| Chelsea Rissmiller | Associate | 2020 | $1,145 |
| Alberto Julian Corona | Associate | 2021 | $1,085 |
| Mary Grace Braun | Associate | 2022 | $990 |
| Matt Danaher | Associate | 2023 | $895 |

| Timekeeper | Position | Law School Class | 2025 Rate |
|---|---|---|---|
| Joseph Jaein Kim | Associate | 2023 | $895 |

**1.    Plaintiffs' Counsel's Rates Are Within the Range of Rates in the San Diego Market for Comparable Attorneys in Comparable Cases**

Each of Plaintiffs' counsel's firms works at the cutting edge of complex class action litigation.  Grunfeld Decl. ¶ 3; Declaration of Christopher M. Young ("Young Decl.") ¶¶ 3, 5; Declaration of Aaron J. Fischer ("Fischer Decl.") ¶¶ 2, 4; Center Decl. ¶ 7.  The relevant comparable marketplace analysis for complex class action fee awards looks not to the specific subject matter area, such as civil rights law or disability law, but rather to the levels of skill and complexity required in the litigation.  *Prison Legal News*, 608 F.3d at 455.

DLA Piper's Christopher Young, an attorney who has practiced complex class action work in the San Diego market for decades, attests that the rates that Plaintiffs' counsel claim are within the range of rates charged by attorneys with comparable experience for work on highly complex class action cases in the San Diego market.  Young Decl. ¶¶ 10, 19.  DLA Piper's San Diego market rates demonstrate that the rates that RBGG and Mr. Fischer claim are also within the range of rates charged by attorneys of similar experience for similar work in the San Diego market.  Richard Pearl, the author of the leading book on attorneys' fees in California, attests that Plaintiffs' counsel's requested rates are within the range of rates for attorneys in the San Diego area of comparable skill, qualifications, reputation, and experience paid hourly in non-contingent cases.  Declaration of Richard Pearl ("Pearl Decl.") ¶¶ 24-36.

**2.    Awarding Plaintiffs' Counsel Their Requested Rates Is Also Appropriate Given Their Expertise and Unavailability of Local Lead Counsel**

Courts award plaintiffs' counsel from outside the litigation forum their home

office rates when plaintiffs' counsel has deep expertise relevant to the litigation and local counsel with the requisite expertise and experience are unavailable to litigate the case. *See Parsons v. Ryan*, 949 F.3d 443, 466 (9th Cir. 2020) (applying Bay Area and D.C. market rates instead of Phoenix market rates for work based on "evidence regarding the unavailability of local counsel"); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (San Francisco rates applied when "local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case"); *Melendres v. Arpaio*, No. 13-16285 & 13-17238, 2017 WL 10808812, at *3-4 (9th Cir. Mar. 2, 2017).

Despite widespread reporting concerning the unlawful conditions in the San Diego County jails, no other lawyers could or would bring the instant claims against Defendants. Young Decl. ¶ 7; Grunfeld Decl. ¶ 42. Mr. Young attests that he is not aware of any law firms in San Diego or the Southern District of California which have the necessary background and experience to have taken on the lead counsel role in this case. Young Decl. ¶ 7

Lead Plaintiffs' counsel RBGG and its lawyers have unquestionable expertise in prison law and cases, including cases specifically challenging the failure to effectively accommodate incarcerated people with disabilities and other discriminatory treatment of incarcerated people with disabilities. *See* Grunfeld Decl. ¶¶ 3, 5; Fischer Decl. ¶¶ 2-4; Center Decl. ¶ 7; Declaration of Shawna Parks ("Parks Decl.") ¶ 37. The Ninth Circuit has held that these factors necessitate home office rates. *See*, *e.g.*, *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 702 (9th Cir. 1996) (awarding ACLU attorneys prevailing market rates for lawyers of the same skill, reputation, and experience); *Gates*, 987 F.2d at 1405 (litigated by RBGG); *Yenidunya Inv. Ltd. v. Magnum Seeds, Inc.*, No. CIV. 2:11-1787 WBS, 2012 WL 538263, at *7 (E.D. Cal. Feb. 17, 2012).

RBGG's billing rates claimed in this motion are its regular San Francisco Bay

Area rates that have been awarded by numerous courts for their work in comparable cases litigated within and outside the San Francisco Bay area. Grunfeld Decl. ¶¶ 14, 17-19; Pearl Decl. ¶ 31. They are also the rates that RBGG lawyers charge and are paid by fee-paying clients. Grunfeld Decl. ¶¶ 14, 17-19. Mr. Fischer's billing is also Mr. Fischer's regular San Francisco Bay Area rate. Fischer Decl. ¶ 7.

Mr. Pearl attests that RBGG's and Mr. Fischer's rates are within the range of rates for attorneys in the San Francisco Bay Area of comparable skill, qualifications, reputation, and experience paid hourly in non-contingent cases. Pearl Decl. ¶ 39. Shawna Parks, Chief Litigation Officer at Disability Rights Advocates, confirms that these rates are within prevailing market rates in the San Francisco Bay Area. Parks Decl. ¶ 39. Ms. Grunfeld attests that she tracks rates as part of her regular responsibilities, and that the rates claimed here are well within the range of rates prevailing in the market. Grunfeld Decl. ¶¶ 15, 19.

### 3. Plaintiffs' Counsel's Many Consistent Prior Fee Awards Support an Award of Their Requested Rates

Prior fee awards also support the reasonableness of Plaintiffs' counsel's rates. Plaintiffs' counsel's 2025 rates are only modestly higher than RBGG's 2023 rates that both a Northern District of California court and a federal court in Arizona awarded last year. Grunfeld Decl. ¶ 19(a)-(c) & Exs. J & K. Courts have approved RBGG's annual rate increases to account for inflation, other legal market price factors, and the attorneys' increased experience levels. *See*, *e.g.*, *Armstrong v. Brown*, 805 F. Supp. 2d 918, 921 (N.D. Cal. 2011) (plaintiffs' counsel's request for fee increases in line with prevailing market rates were reasonable).

The Ninth Circuit and district courts within the Ninth Circuit have also approved RBGG's requested rates in earlier years, including its requested 2022, 2021, 2020, 2019, 2018, and 2016 rates. Grunfeld Decl. ¶ 19 (collecting cases, including Mr. Rosen at his 2023, 2022, 2021, and 2020 rates; Ms. Grunfeld at her 2024, 2020, 2015, and 2010 rates; Mr. Swearingen at his 2023 rate; Mr. Nunez at his

2024, 2019, and 2016 rates; and Mr. Anderson and Ms. Chartoff at their 2024 rates).

The rates that Plaintiffs' counsel seek for paralegal work are also reasonable, commensurate with prevailing market rates in San Diego and San Francisco, and in line with paralegal rates previously awarded. *See Missouri v. Jenkins*, 491 U.S. 274, 289 (1989) ("affirming "compensation of paralegals and law clerks at market rates"); Grunfeld Decl. ¶¶ 16, 17; Pearl Decl. ¶¶ 16, 17, 24, 33, 37-39, 43, Exs. B, C; Parks Decl. ¶¶ 38-29.  Courts have awarded RBGG its rates for paralegal work. Grunfeld Decl. ¶ 19(c), Ex. K (awarding RBGG's 2023 paralegal rates ranging from $325 to $435).

### B. Plaintiffs' Counsel's Detailed Time Records Transparently Document Their Necessary and Appropriate Work as Well as Their Substantial Billing Judgment Reductions

Plaintiffs' counsel is entitled to compensation for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (quoting *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir. 1982)).  Here, the time Plaintiffs' counsel expended in the past three and a half years was both necessary and appropriate, and indeed prudent and reasonable, to achieve this Court's orders and the settlement.

Given its extensive experience litigating jail and prison institutional reform cases, including class actions asserting ADA and related state law claims, RBGG serves as lead counsel and has performed the vast majority of work in the litigation. Grunfeld Decl. ¶¶ 2-3, 32-34; Young Decl. ¶ 7.  Plaintiffs' counsel efficiently staffed this matter, including by dividing up the labor on the case to minimize duplication of effort and to efficiently use each attorney's expertise.  Grunfeld Decl. ¶¶ 22-31, 121.  Wherever possible, RBGG delegated assignments to the lowest cost biller assigned to the case, and divided work between co-counsel to ensure that all aspects of this complex litigation were handled appropriately.  Grunfeld Decl. ¶¶ 22-

23, 29.

RBGG investigated Plaintiffs' claims; drafted the complaints; conducted numerous interviews of Plaintiffs and other class members to gather evidence; drafted the 2022 and 2023 Preliminary injunction motions; litigated discovery motions and conducted discovery, including Jail inspections and Rule 30(b)(6) depositions; worked extensively with Plaintiffs' ADA expert; represented Plaintiffs at hearings, settlement conferences, and meet and confers; prepared objections to Defendants' ADA plan; negotiated the 2023 ADA Order, Amended ADA Plan and ADA Settlement; and drafted this motion. Grunfeld Decl. ¶¶ 24-31, 43, 53, 55-56, 61, 63, 97, 102, 111, 119-122.

Given his expertise in the intersection of detention facilities conditions litigation and disability law, Mr. Fischer drafted legal and fact memoranda regarding disability access in the Jail, revised key documents and pleadings, and participated in settlement conferences that led to adoption of the 2023 ADA Order, Amended ADA Plan and ADA Settlement. Fischer Decl. ¶ 6.

Given their proximity to the Jail and Defendants' refusal to facilitate remote attorney visits, Grunfeld Decl. ¶¶ 2, 29, 59, DLA Piper primarily assisted with gathering evidence, including declarations, from incarcerated people regarding their needs for disability accommodations. Young Decl. ¶ 9.

Plaintiffs' counsel made significant and liberal billing judgment reductions to the time claimed for merits work, based on careful review of the time records. Declaration of Van Swearingen ("Swearingen Decl.") ¶¶ 9-12; Fischer Decl. ¶ 7; Young Decl. ¶ 20. RBGG's substantial reductions included, for example, writing off the time of all timekeepers who claimed fewer than 10 claimable hours to the case and writing off meetings between attorneys. Swearingen Decl. ¶¶ 9-10. In addition to these reductions, dozens of hours of time was not claimed because it was not recorded and Plaintiffs' counsel chose not to recreate this time. Swearingen Decl. ¶ 9. To further account for any time that might possibly be considered

duplicative, administrative, or excessive, Plaintiffs' counsel reduced their claim by an additional 5% across the board.  Swearingen Decl. ¶ 11; Fischer Decl. ¶ 7; Young Decl. ¶ 20.

In total, Plaintiffs' counsel made billing judgments that have reduced the merits work lodestar by $319,767.38, a 14% reduction.  After billing judgment reductions, Plaintiffs' counsel claim 2,687.1 hours for their work on the merits of this case through January 20, 2025, with a lodestar of $2,111,562.63.  Swearingen Decl. ¶¶ 12, 23 & Ex. A; Fischer Decl. ¶ 7 & Ex. B; Young Decl. ¶ 20 & Ex. I.

Notably, Plaintiffs are not claiming an award through this fees motion for a substantial number of time entries for which work related to the Third Claim for Relief was significantly intermingled with work related to other claims in this action (e.g., weekly team meetings discussing ADA-related and other necessary work on the case).  Grunfeld Decl. ¶ 21, 32; Swearingen Decl. ¶ 7.  Plaintiffs reserve their right to recover attorneys' fees for this work in the future.  Swearingen Decl. ¶ 7; Young Decl. ¶ 23; Fischer Decl. ¶ 10.

### 1. Plaintiffs' Counsel Has Provided Well-Documented, Detailed, Contemporaneous Billing Records

Plaintiffs' counsel maintained contemporaneous time records showing discrete entries describing each item of work performed and recorded by tenths of an hour.  *See* Grunfeld Decl. ¶ 20; Swearingen Decl. ¶¶ 5, 12, 15 & Exs. A & B; Young Decl. ¶¶ 20, 24 & Exs. I & J; Fischer Decl. ¶¶ 7, 8 & Exs. B & C.  These records reflect the complex issues involved, importance of the issues presented, risk of loss, and Plaintiffs' counsel's diligent efforts to secure relief for Plaintiffs.  Such time records, supported by sworn declarations, are the type of evidence relied upon by federal courts in countless fees decisions.  *See*, *e.g.*, *Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 738 (11th Cir. 1988) ("Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case[.]").

## 2.      Plaintiffs Secured Total Victory Including Substantial Relief Due to Their Lawyers' Work

As discussed on pages 9-10, *supra*, Plaintiffs' counsel obtained a total victory, securing for the Disability Subclass all the relief that they sought.

Claudia Center, the Legal Director at Disability Rights Education and Defense Fund, Inc., opines that the relief that Plaintiffs' counsel obtained in this case "is extraordinary in scope and will meaningfully improve the lives Disability Subclass members while incarcerated in San Diego Jails."  Center Decl. ¶ 14. Ms. Center also states that the settlement is "comparable to, if not greater than, other leading settlements and consent decrees secured in actions brought to secure the rights of incarcerated people with disabilities."  *Id.*  Given the intensity of the litigation and the results obtained, Plaintiffs' actions and the results achieved readily justify the time spent and recorded.  Pearl Decl. ¶¶ 18, 44, 46-53; Grunfeld Decl. ¶¶ 106-108.

## 3.      Plaintiffs' Lawyers Devoted the Time that Was Necessary

"A defendant 'cannot litigate tenaciously and then be heard to complain about the time spent by the plaintiff in response.'"  *Serrano v. Unruh*, 32 Cal. 3d 621, 638 (1982).

The hours are reasonable for the work that was necessary in this case due to Defendants litigation and settlement approaches.  Grunfeld Decl. ¶¶ 106-07; *see also* Fischer Decl. ¶ 7 & Ex. B; Young Decl. ¶ 20 & Ex. I; Pearl Decl. ¶ 51.

Defendants' practices made the litigation more time consuming and expanded the amount of time Plaintiffs' counsel had to spend on the matter.  Much of the work performed by Plaintiffs' counsel could have been avoided but for Defendants' rejection of Plaintiffs' proposal to resolve the Third Claim for Relief through the use of neutral experts.  Grunfeld Decl. ¶¶ 45, 60.  Defendants rejected Plaintiffs' proposal for scheduling streamlined interviews—as Defendants offered to County attorneys with the Public Defender's Office—thereby forcing Plaintiffs' counsel to

wait for hours at the jail to interview their clients. *Id.* ¶¶ 58-59. Even after the Court certified the class, Defendants would not provide unredacted versions of disability rosters identifying class members, forcing Plaintiffs' counsel to meet and confer and draft correspondence before finally obtaining rosters without redactions. *Id.* ¶ 92. Defendants denied floor sleeping in Central Jail housing units for people with mobility disabilities, which forced Plaintiffs' counsel to expend time investigating Defendants' contentions and seeking a solution. *Id.* ¶¶ 83-90. Defendants refused to permit the parties' experts to participate in meet-and-confer discussions regarding the Amended ADA Plan in Fall 2023, despite the Court's requirement for expert involvement; involving experts would have likely resolved some of the Amended ADA Plan's deficiencies early and therefore obviated or substantially reduced litigation surrounding its finalization. *Id.* ¶¶ 73, 76. Despite Plaintiffs' repeated requests that the parties use track changes, Defendants failed to consistently use track changes when exchanging draft documents, requiring Plaintiffs to hunt for the changes made by Defendants' counsel. *Id.* ¶ 102. And, despite knowing that neither their facilities nor their policies complied with the ADA, Defendants chose to litigate these issues all the way through expert discovery. *Id.* ¶¶ 37-39, 107.

## III.   PLAINTIFFS' COUNSEL SHOULD BE AWARDED THEIR REQUESTED FEES FOR THEIR FEE MOTION WORK

Plaintiffs are entitled to attorneys' fees for their work preparing and litigating this fees motion. *Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995); *Serrano*, 32 Cal. 3d at 639, 644; *Graham*, 34 Cal. 4th at 580 ("[I]t is well established that plaintiffs and their attorneys may recover attorney fees for fee-related matters").

To prepare this fee application, Plaintiffs' counsel compiled and carefully vetted their billing records for time spent preparing this fees application. Swearingen Decl. ¶¶ 13-14; Young Decl. ¶ 21 & Ex. J; Fischer Decl. ¶ 8 & Ex. C. RBGG, serving as lead fees counsel, reviewed and prepared each set of merits time,

fees time, and cost records; applied billing judgment reductions to all three sets of records; created the charts and other exhibits in support of this fees motion; and prepared the instant fee application and accompanying declarations. Swearingen Decl. ¶¶ 7-23. Plaintiffs' counsel have made extensive billing judgment reduction to the time preparing the fee application. Swearingen Decl. ¶¶ 13-15. To further account for any time that might possibly be considered duplicative, administrative, or excessive, Plaintiffs' counsel further reduced their claimed time by 5% across the board. Swearingen Decl. ¶ 14; Young Decl. ¶ 21; Fischer Decl. ¶ 8.

In total, Plaintiffs' counsel made billing judgments that have reduced the work on this fee application by $52,515.93, a 24.9% reduction. After all billing judgment reductions and the 5% across-the-board discount, Plaintiffs' counsel claim 173.1 hours for work through January 20, 2025 on this fee application, for a lodestar of $158,002.58.

Plaintiffs will submit documentation of additional merits time as well as fees time spent working on the fees motion since January 20, 2025 with their reply papers, or such other time as the Court directs. Swearingen Decl. ¶ 6.

In sum, Plaintiff's counsel's fees work lodestar and billing judgment reductions are reflected in the following two charts:

| Reductions to All Firms' Merits Work (through January 20, 2025) | | |
|---|---|---|
| **Category** | **Hours** | **Amount** |
| **Time Records** | | |
| Time Entries: Claimed | 2687.1 | $2,222,697.50 |
| Time Entries: Billing Judgments | 299.3 | $208,632.50 |
| Total (Claimed Entries + Billing Judgment Entries) | 2986.4 | $2,431,330.00 |
| **Additional Billing Judgments** | | |
| 5% Across-the-Board Reduction of Claimed Time | | $111,134.88 |
| **Total Reduction** | | $319,767.38 |
| **% Reduction** | | 13.2% |
| **All Firms' Merits Work Lodestar** | | **$2,111,562.63** |

| Reductions to All Firms' Fees Work (through January 20, 2025) | | |
|---|---|---|
| Category | Hours | Amount |
| Time Records | | |
| Time Entries: Claimed | 173.1 | $166,318.50 |
| Time Entries: Billing Judgments | 38.2 | $44,200.00 |
| Total (Claimed Entries + Billing Judgment Entries) | 211.3 | $210,518.50 |
| Additional Billing Judgments | | |
| 5% Across-the-Board Reduction of Claimed Time | | $8,315.93 |
| Total Reduction | | $52,515.93 |
| % Reduction | | 24.9% |
| All Firms' Fees Work Lodestar | | $158,002.58 |

## IV.    PLAINTIFFS' COUNSEL'S DOCUMENTED COSTS AND EXPENSES ARE REASONABLE AND APPROPRIATE

Plaintiffs may recover both the statutory costs enumerated in 28 U.S.C.

§ 1920 and all "out-of-pocket expenses that would normally be charged to a fee

paying client." *Harris*, 24 F.3d at 19 (internal quotation marks and citations

omitted); *Woods v. Carey*, 722 F.3d 1177, 1180 n.1 (9th Cir. 2013).  Cost awards in

ADA cases properly include expert witness fees.  *Lovell v. Chandler*, 303 F.3d

1039, 1058-59 (9th Cir. 2002); *Blackwell*, 724 F. Supp. 2d at 1084; *see also* 42

U.S.C. § 12205.  Prevailing plaintiffs may also recover expert costs under the

Rehabilitation Act.  *M.M. v. Sch. Dist. of Phila.*, 142 F. Supp. 3d 396, 413 (E.D. Pa.

2015); *K.N. v. Passaic City Bd. of Educ.*, No. CIV.A. 11-399 JLL, 2011 WL

5157280, at *15 (D.N.J. Oct. 28, 2011); *DL v. Dist. of Columbia*, 267 F. Supp. 3d

55, 80 (D.D.C. 2017), *vacated on other grounds and remanded*, 924 F.3d 585 (D.C.

Cir. 2019).

Plaintiffs necessarily relied heavily on their qualified ADA expert,

Ms. Sanossian, who is an experienced CASp inspector, and her colleagues.

Grunfeld Decl. ¶¶ 46, 53, 55, 61, 78, 94-95, 97, 102, 110-113.  Ms. Sanossian has

specific expertise with the disability access in correctional institutions, and is highly

regarded in the disability law community.  Grunfeld Decl. ¶ 46, Ex. V; Center Decl.

¶ 10.  Ms. Sanossian's inspections and detailed reports contributed significantly to the parties' ADA settlement discussions and actual settlement documents, as the ADA construction required in each Court-approved settlement reflects changes that will address many of the problems Ms. Sanossian identified in her reports.  Grunfeld Decl. ¶ 113.  Notably, Defendants' CASp expert's  review of the Jail's facilities, not shared with Plaintiffs until August 21, 2024, mostly agreed with Ms. Sanossian's findings that the facilities do not comply with accessibility standards.  *Id.* ¶¶ 107, 112.  Retaining Ms. Sanossian was necessary and reasonable given the detailed technical nature of identifying and evaluating physical access barriers at the jail and modifications necessary to remedy those barriers.  *Id.* ¶ 110.  All other expenses are recoverable costs and expenses.  *Id.* ¶ 115; Young Decl. ¶ 22 & Ex. K; Fischer Decl. ¶ 9 & Ex. D.

In total, Plaintiffs' counsel seek $476,469.35 for recoverable litigation costs and expenses, mostly for the fees counsel paid their expert.  *See* Swearingen Decl. ¶ 17 & Ex. C; Young Decl. ¶ 22 & Ex. K; Fischer Decl. ¶ 9 & Ex. D.

## CONCLUSION

For the reasons stated, Plaintiffs respectfully request that the Court award a total of $2,746,034.56 in attorneys' fees and costs for Plaintiffs' counsel's work on the Third Claim for Relief through January 20, 2025.

DATED:  February 3, 2025

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Gay Crosthwait Grunfeld*

Gay Crosthwait Grunfeld

Attorneys for Plaintiffs and the Certified Class and Subclasses