1   GAY C. GRUNFELD – 121944
    VAN SWEARINGEN – 259809
2   MICHAEL FREEDMAN – 262850
    ERIC MONEK ANDERSON – 320934
3   HANNAH M. CHARTOFF – 324529
    BEN HOLSTON – 341439
4   ROSEN BIEN
    GALVAN & GRUNFELD LLP
5   101 Mission Street, Sixth Floor
    San Francisco, California  94105-1738
6   Telephone:   (415) 433-6830
    Facsimile:    (415) 433-7104
7   ggrunfeld@rbgg.com
    vswearingen@rbgg.com
8   mfreedman@rbgg.com
    eanderson@rbgg.com
9   hchartoff@rbgg.com
    bholston@rbgg.com
10
    AARON J. FISCHER – 247391
11  LAW OFFICE OF
    AARON J. FISCHER
12  1400 Shattuck Square Suite 12 - #344
    Berkeley, California  94709
13  Telephone:  (510) 806-7366
    Facsimile:   (510) 694-6314
14  ajf@aaronfischerlaw.com

15  Attorneys for Plaintiffs and the
    Certified Class and Subclasses
16

    CHRISTOPHER M. YOUNG – 163319
    ISABELLA NEAL – 328323
    OLIVER KIEFER – 332830
    DLA PIPER LLP (US)
    4365 Executive Drive, Suite 1100
    San Diego, California  92121-2133
    Telephone:  (858) 677-1400
    Facsimile:   (858) 677-1401
    christopher.young@dlapiper.com
    isabella.neal@dlapiper.com
    oliver.kiefer@dlapiper.com

17                    UNITED STATES DISTRICT COURT

18                  SOUTHERN DISTRICT OF CALIFORNIA

19  DARRYL DUNSMORE, ANDREE              Case No. 3:20-cv-00406-AJB-DDL
    ANDRADE, ERNEST ARCHULETA,
20  JAMES CLARK, ANTHONY EDWARDS,       **DECLARATION OF CLAUDIA**
    REANNA LEVY, JOSUE LOPEZ,           **CENTER IN SUPPORT OF**
21  CHRISTOPHER NORWOOD, JESSE          **PLAINTIFFS' MOTION FOR**
    OLIVARES, GUSTAVO SEPÚLVEDA,        **INTERIM ATTORNEYS' FEES**
22  MICHAEL TAYLOR, and LAURA           **AND COSTS**
    ZOERNER, on behalf of themselves and all
23  others similarly situated,          Judge:   Hon. Anthony J. Battaglia

24              Plaintiffs,             Date:    March 27, 2025
                                        Time:    2:00 p.m.
        v.                              Crtrm.:  4A
25  SAN DIEGO COUNTY SHERIFF'S
    DEPARTMENT, COUNTY OF SAN
26  DIEGO, SAN DIEGO COUNTY
    PROBATION DEPARTMENT, and DOES
27  1 to 20, inclusive,

28              Defendants.

I, Claudia Center, declare:

1.     I am an attorney duly admitted to practice before this Court.  I am the Legal Director at Disability Rights Education and Defense Fund, Inc ("DREDF").  I have personal knowledge of the facts set forth herein, and if called as a witness, I could competently so testify.  I make this declaration in support of Plaintiffs' Motion for Interim Attorneys' Fees and Costs.

2.     I am generally familiar with this litigation, a challenge to the conditions of confinement in San Diego County jails that discriminated based on disability and fell far below the minimum requirements of the Constitution.  I understand that, following the filing of a motion for preliminary injunction, Plaintiffs achieved agreements to remedy and ultimately resolve their disability claims.  Among other provisions, the agreements require that the defendants remedy access and communication barriers, including by: ensuring that people with mobility disabilities are housed in accessible locations; completing specified renovations to remove physical barriers; providing sign language interpreters and other supports for people who are deaf and hard of hearing; and changing intake and other policies and procedures to better identify and accommodate people with disabilities.  Dkt Nos. 355 (June 21, 2023) (ADA Order), 695 (Aug. 23, 2024) (Amended ADA Plan), 776 (Dec. 12, 2024) (ADA Settlement and Order).  I understand that the parties are currently awaiting the Court's preliminary approval of the ADA Settlement and Order that resolved Plaintiffs' Third Claim for Relief.

### My Background and Professional Experience

3.     I graduated from Berkeley Law in December 1991 and joined the California Bar in June 1992.  I received a B.A. from Wesleyan University in 1987.

4.     I have been the Legal Director of DREDF since February 2020.  Prior to this position, I was a Senior Staff Attorney at the American Civil Liberties Union Foundation ("ACLU") Disability Rights Program for six years.  Prior to joining the ACLU, I worked at the Legal Aid Society – Employment Law Center for 19 years,

1   where I directed the disability rights program.  Before that, I worked as a staff

2   attorney at the National Abortion and Reproductive Rights Action League for two

3   and a half years.

4          5.     I have represented plaintiffs in disability rights cases, including

5   complex class actions, for more than 25 years.  Representative cases include:

6          a.     *Armstrong v. Newsom*, No. 94-cv-02307 CW (N.D. Cal.) (in

7   monitoring), an action challenging the failure to provide people with disabilities

8   incarcerated in California state prisons with accommodations required under the

9   Americans with Disabilities Act ("ADA") and the Rehabilitation Act;

10          b.     *Disability Rights Cal. v. Cty. of Alameda*, No. 20-cv-05256-CRB

11   (N.D. Cal.) (in monitoring), an action that challenged Alameda County's failure to

12   provide adequate mental health services to county residents that resulted in a

13   settlement agreement wherein the County agreed to expand the mental health

14   services that it offers;

15          c.     *E.E. v. California*, No. 21-cv-07585-SI, 2021 U.S. Dist. LEXIS

16   230296 (N.D. Cal. Dec. 1, 2021), an action that challenged the design of

17   independent study for students in California based on access barriers faced by

18   special education students, especially those with intellectual and developmental

19   disabilities, and that resulted in a settlement that adopted a framework for resolving

20   the barriers through the legislative process;

21          d.     *Student A v. Berkeley Unified Sch. Dist.*, No. 17-cv-02510-JST,

22   2021 U.S. Dist. LEXIS 250504 (N.D. Cal. Nov. 4, 2021), an action challenging

23   Berkeley Unified School District's systemic failure to timely identify, evaluate, and

24   provide appropriate interventions and accommodations to students with reading

25   disorders that resulted in a class settlement that required the District to develop and

26   implement a plan to improve reading and language arts achievement for all students,

27   especially those with or at risk for reading disabilities;

28          e.     *McCadden v. City of Flint*, No. 18-12377, 2019 U.S. Dist.

LEXIS 63244 (E.D. Mich. Apr. 12, 2019), an action challenging the unlawful restraint of a seven-year-old child with disabilities by a Flint Police Department School Resource Officer that resolved with a favorable settlement that included policy changes and training;

       f.    *Gray v. Cummings*, 917 F.3d 1 (1st Cir. 2019), an action challenging a police officer's use of force to detain a patient with a mental health disability who absconded from a hospital after being involuntarily committed;

       g.    *Saucedo v. Gardner*, 335 F. Supp. 3d 202 (D.N.H. 2018), a successful action on behalf of absentee voters, including a blind voter, challenging the signature match requirement under New Hampshire State law wherein the court held that the signature match requirement violated the Due Process Clause of the Fourteenth Amendment and enjoined the provision;

       h.    *Eason v. N.Y. State Bd. of Elections*, No. 16-cv-4292 (KBF), 2017 U.S. Dist. LEXIS 209249 (S.D.N.Y. Dec. 20, 2017), an action challenging digital access barriers for blind voters in the online voter registration process in New York that resulted in a settlement wherein the Board of Elections agreed to make online voter registration forms and related websites accessible to blind people using screen access software;

       i.    *S.R. v. Kenton Cty. Sheriff's Office*, No. 2:15-cv-143 (WOB-JGW), 2015 U.S. Dist. LEXIS 172043 (E.D. Ky. Dec. 28, 2015), an action challenging a deputy sheriff's unlawful shackling of two elementary school children that resulted in a favorable agreement with the U.S. Department of Justice to implement policies to ensure that disciplinary practices do not discriminate against children with disabilities;

       j.    *Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council, Inc.*, No. C-12-1830 EMC (N.D. Cal.), an action challenging the Law School Admission Counsel's ("LSAC") failure to provide adequate accommodations to test takers with disabilities and the LSAC's practice of flagging score reports of test

takers with disabilities who sat for the LSAT with disability accommodations. The case resolved with a favorable consent decree that comprehensively improved LSAC's accommodations practices and ended the flagging of score reports;

k.      *Ortiz v. Home Depot*, No. 5:09-cv-03485-LHK (N.D. Cal. Feb. 12, 2012), a class action brought on behalf of deaf employees in California Home Depot stores resulting in a class settlement that ensured sign language interpreters for class members at particular communication events, removed barriers to forklift training, and provided monetary relief to each class member;

l.      *McMillon v. Hawai'i*, No. CIV. 08-00578 LEK, 2011 WL 6749012 (D. Haw. Dec. 22, 2011), a class action challenging discriminatory obstacles, hazardous conditions, and the failure to grant reasonable accommodations in public housing resulting in a class settlement that included both monetary relief and funding of services to improve conditions for the class;

m.      *Goldman v. Standard Insurance Company*, 341 F.3d 1023 (9th Cir. 2003), an action challenging an insurance company's refusal to issue an attorney with a mental health diagnosis a disability income insurance policy; and

n.      *Nunes v. Wal-Mart Stores*, 164 F.3d 1243 (9th Cir. 1999), an action challenging Wal-Mart's termination of the employment of an employee who experienced syncopal fainting episodes while she was on a medical leave related to her disability.

6.      I have also served as amicus counsel in dozens of cases of importance to people with disabilities in the state and federal appellate courts including the California Supreme Court and the U.S. Supreme Court. In 2009, I received the Paul G. Hearne Award for Disability Rights from the American Bar Association Commission on Disability Rights. I have served as an adjunct professor of disability rights at University of California Law San Francisco and at Berkeley Law School. I have written articles and given trainings about disability rights on many occasions. A copy of my resume is attached as **Exhibit A**.

**My Familiarity with Class Counsel**

7.    I have long been familiar with Rosen Bien Galvan & Grunfeld LLP, lead counsel in the instant action.  RBGG is recognized throughout the disability rights law community for its excellent work and impressive results.  I have litigated several cases with RBGG, including *Smith v. California Health and Human Services Agency, 4:21-cv-07872-HSG* (N.D. Cal.), *Coleman v. Newsom*, 2:90-CV-00520-KJM-SCR (E.D. Cal.), *Hecker v. CDCR*, E.D. Cal. No. 2:05-CV-02441 LKK-DAD (E.D. Cal.), and *Armstrong v. Newsom*, 94-cv-02307 CW (N.D. Cal.).  Through these experiences, I know that the attorneys at RBGG possess a high degree of skill and expertise in advocating on behalf of persons with disabilities.  In addition, I have worked with Aaron Fischer as co-counsel, and I have observed that he also possesses a high degree of skill and expertise in advocating on behalf of persons with disabilities.  Consistently, RBGG's lawyers and Mr. Fischer have demonstrated that they are in the top tier of lawyers with whom I have worked.

**Plaintiffs Obtained an Impressive and Excellent Result
on Their Third Claim for Relief**

8.    Through my work on class actions such as *Coleman v. Newsom* and *Armstrong v. Newsom*, I am familiar with the types of disability access barriers that people with disabilities face when incarcerated in correctional institutions.  Many correctional institutions are old and were not built with the physical access needs of people with disabilities in mind.  Incarcerated people with disabilities also often face programmatic access barriers because correctional institutions often have policies and practices that fail to account for the needs of people with disabilities.

9.    Plaintiffs who bring disability claims about physical access under federal and state disability laws generally must work with a Certified Access Specialist (CASp) expert.   A CASp is a person who has been tested and certified by the state that governments, business owners, and litigants can hire to assess accessibility.  It is well known within the disability community that CASp experts

1    who have litigation experience are highly sought after and difficult to obtain.  This

2    is particularly true in litigation involving incarcerated people; indeed, there are very

3    few CASp experts in California who have corrections litigation experience.

4        10.    I am familiar with Syroun Sanossian of SZS Engineering through my

5    work with her on *Armstrong v. Newsom*.  Based on personal experience and her

6    reputation within the disability community, it is my opinion that Ms. Sanossian is a

7    well-regarded, highly qualified CASp-certified expert.

8        11.    I have reviewed the relief secured in this case, and I am impressed by

9    its scope and quality.  The Amended ADA Plan (Dkt No. 695) secured significant

10   relief for people who are deaf and hard of hearing across San Diego County jail

11   facilities and for people with mobility disabilities incarcerated in San Diego

12   County's primary intake facility, Central Jail.  The Amended ADA Plan requires

13   that Defendants identify, document, and accommodate the effective communication

14   needs of class members who are deaf and hard of hearing throughout the system.

15   *Id.* at 6-8.  It also requires Defendants to identify, document, and accommodate the

16   accessible bed and other physical accessibility needs of class members with mobility

17   disabilities as well as make renovations to the physical facilities at Central Jail to

18   remove physical access barriers and ensure that additional accessible beds are

19   available, that the intake and booking process is physically accessible, and that

20   certain other features of the Central Jail facilities are physically accessible to class

21   members with mobility disabilities.  *Id.* at 8-23.  The Plan also requires that

22   Defendants train relevant staff regarding the policies and practices that the Plan

23   adopts as well as implementation of an interim plan to accommodate class members

24   with mobility disabilities until physical accessibility renovations are complete.

25   *Id.* at 8, 12, 15-16.

26       12.    The ADA Settlement and Order (Dkt No. 776, Ex. A) comprehensively

27   addresses the other aspects of Plaintiffs' Third Claim for Relief, including by

28   requiring Defendants to:  (1) develop and implement policies, procedures, and

DECLARATION OF CLAUDIA CENTER IN SUPPORT OF PLAINTIFFS' MOTION FOR INTERIM
ATTORNEYS' FEES AND COSTS

1  training for an ADA Unit to ensure its effectiveness in facilitating the jail system's

2  compliance with federal and state disability laws; (2) revise and implement

3  systemwide policies and procedures and facility specific-policies and procedures,

4  and training as necessary to ensure compliance with the federal and state disability

5  laws; (3) ensure that people with disabilities are informed of their rights under the

6  federal and state disability laws by providing ADA Notices, jail Handbooks and/or

7  ADA/Disability information brochures to incarcerated people; (4) develop and

8  implement a system to identify and track people with disabilities; (5) ensure that

9  incarcerated persons are housed safely and appropriately for their disability;

10  (6) implement modifications including construction alterations throughout the Jail

11  system to ensure that facilities are accessible to individuals with disabilities;

12  (7) create an ADA transition plan; (8) provide changes to ensure that no qualified

13  incarcerated person with a disability, who meets all essential eligibility

14  requirements, shall be excluded from participation in or denied the benefits of any

15  in-custody program, service, or activity based upon their disability; (9) maintain

16  policies, procedures, and training regarding incarcerated person requests for

17  disability accommodations and grievances regarding disability accommodations;

18  (10) ensure that incarcerated persons with identified disabilities receive

19  accommodations and services necessary for effective communication, and are able

20  to equally and fully access jail facility programs, services, and activities; (11) ensure

21  that incarcerated disabled people who need an assistive device, health care

22  appliance, or durable medical equipment (including prosthetics) will have access to

23  them; (12) develop and implement policies, procedures, and training to ensure that

24  incarcerated persons with disabilities are accommodated during evacuations and

25  other emergencies at the jail; (13) ensure that trained health care staff conduct a

26  screening of incarcerated persons for intellectual, learning, and developmental

27  disabilities; (14) ensure that incarcerated persons with disabilities receive reasonable

28  accommodations with respect to searches and during counts; (15) ensure that

1    incarcerated persons with disabilities are reasonably accommodated when in transit,

2    such as between facilities, out to court, or to and from outside health care services;

3    (16) ensure that people with substance use disorders are not subject to

4    discrimination on the basis of disability; (17) ensure that people with mental health

5    disabilities are not subject to discrimination on the basis of disability and have equal

6    and meaningful access to programs, services, and activities; (18) develop and

7    provide quality assurance and auditing mechanisms; (19) within 18 months, evaluate

8    whether further measures are necessary to provide accessible housing; and

9    (20) provide monitoring of their compliance with the settlement.  Dkt. 776, Ex. A.

10       13.    Monitoring is an exceptionally important component of a remedial plan

11   to ensure that the relief promised on paper is actually realized, and the monitoring

12   provisions in this settlement are robust.  The ADA Settlement and Order provides

13   for appointment of two separate third party neutral experts—one regarding policies,

14   procedures, and practices, and the other regarding physical alterations—with

15   appropriate professional expertise.  *Id.* at ¶¶ 132-34.  These neutral experts will

16   provide twice-yearly reports on the County's progress in implementing the

17   Settlement Agreement.  *Id.* at ¶¶ 136-41.  Class Counsel will monitor enforcement

18   of these reforms.  *Id.* at ¶¶ 136-39, 142, 144.  Finally, the ADA Settlement and

19   Order also provides for court enforcement of the agreement.  *Id.* at ¶¶ 156- 59.

20       14.    The relief that Plaintiffs obtained in this case is extraordinary in its

21   scope and will meaningfully improve the lives of the disability Subclass members

22   while they are incarcerated in San Diego Jails.  In my view, the quality of relief that

23   Plaintiffs secured on their Third Claim for Relief is comparable to, if not greater

24   than, other leading settlements and consent decrees secured in actions brought to

25   secure the rights of incarcerated people with disabilities.

26       15.    Throughout, the ADA Settlement and Order contains detailed, concrete,

27   and specific provisions that reflect a high level of attention and care and will

28   materially benefit the disability subclass.  For example, the Settlement is specific

1  and granular about the housing assignments for people with mobility disabilities and

2  the barrier removal and remediation that must be completed at each facility. *Id.* at

3  ¶¶ 43-75. It lists with particularity the types of auxiliary aids and services that may

4  be needed for effective communication with deaf and hard of hearing incarcerated

5  people, including sign language interpreters, deaf interpreters, videophones, and

6  captioned telephones. *Id.* at ¶¶ 77, 96. As these examples illustrate, the Settlement

7  is built on Plaintiffs' thorough factual and expert development over years of

8  advocacy and provides exceptional and comprehensive relief.

9       I declare under penalty of perjury under the laws of the United States of

10  America that the foregoing is true and correct, and that this declaration is executed

11  at Berkeley, California this 29th day of January 2025.

12

13

14

15  _____
    Claudia Center

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CLAUDIA CENTER IN SUPPORT OF PLAINTIFFS' MOTION FOR INTERIM
ATTORNEYS' FEES AND COSTS

## TABLE OF CONTENTS

**EXHIBITS TO DECLARATION OF CLAUDIA CENTER IN SUPPORT OF PLAINTIFFS' MOTION FOR INTERIM ATTORNEYS' FEES AND COSTS**

| DESCRIPTION | EXHIBIT NO. | PAGE NO. |
|---|---|---|
| Resume of Claudia Center | A | 1 - 4 |

# Exhibit A

**Claudia Center**

<span style="color:red">Redacted</span>

**EDUCATION**

Berkeley Law, University of California at Berkeley, J.D. 1991
Wesleyan University, B.A. 1987

**EMPLOYMENT**

Disability Rights Education and Defense Fund, February 2020 to the present
*Legal Director*. Lead DREDF legal department response to emerging issues such as Supreme Court rulings and COVID-19 pandemic. Litigate and supervise litigation of cases. Draft and supervise drafting of amicus briefs, policy documents, and comments on legislative and agency materials.

National ACLU Foundation, Disability Rights Program, April 2014 to February 2020
*Senior Staff Attorney*. Worked to implement disability rights agenda into core ACLU issue areas, including voting, criminal justice reform, community and family life, reproductive freedom, and education. Advised affiliate counsel on matters of disability rights. Litigated cases. Drafted amicus briefs and comments on legislation and agency materials.

Legal Aid Society – Employment Law Center, San Francisco, March 1995 to April 2014
*Senior Staff Attorney*. Directed disability rights program. Supervised and conducted employment and disability rights litigation in state and federal courts. Drafted amicus briefs. Directed weekly Workers' Rights Disability Law Clinic for low-wage employees and job seekers with disabilities. Drafted policy statements on emerging issues and comments on proposed legislation and agency materials. Led successful coalition to enact comprehensive amendments to the FEHA to broaden protections for persons with disabilities in employment and housing. Worked with coalition to enact the ADA Amendments Act.

National Abortion & Reproductive Rights Action League, D.C., September 1992 to March 1995
*Staff Attorney*. Drafted legislation, amicus briefs, policy reports, factsheets and testimony regarding access to abortion and other reproductive health services. Provided legal support to state affiliate organizations.

Women's Law & Public Policy Fellowship Program, D.C., September 1992 to September 1993
*Fellow*. Participant in legal and public policy program devoted to the advancement of women's rights. Based at the Georgetown University Law Center.

**ADDITIONAL EXPERIENCE**

Consultant and Trainer, Mobility International USA, May 2017 to June 2018.
Guadalajara, Mexico (January and June 2018)
Islamabad, Pakistan (September 2017)
Guatemala City, Guatemala (May 2017)
Board Member, Board Chair Disability Rights Education and Defense Fund, 2007 to 2020.
Adjunct Professor, Disability Rights Law, Berkeley Law and Hastings College of the Law.

**AWARDS**

Paul G. Hearne Award for Disability Rights, ABA Commission on Mental and Physical Disability Law, 2009.

Certificate of Merit, Bar Association of San Francisco, 1998.

**Ex. A - 2**

**SELECTED CASES**

*Barnett v. U.S. Air*, 228 F.3d 1105 (9th Cir. 2000) (amicus counsel)

*Bates v. U.P.S.*, 511 F.3d 974 (9th Cir. 2007) (amicus counsel)

*California Advocates for Nursing Home Reform v. Chapman*, No. A147987 (Cal. App. filed Sept. 29, 2017) (amicus counsel)

*City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765 (2015) (amicus counsel)

*Colmenares v. Braemer Country Club, Inc.*, 29 Cal.4th 1019 (2003) (amicus counsel)

*CVS Pharmacy, Inc. v. Doe*, 142 S. Ct. 480 (2021) (amicus counsel)

*Fusco v. American Airlines*, 400 F.3d 702 (9th Cir. 2005) (amicus counsel)

*Gambini v. Total Renal Care, Inc.*, 480 F.3d 950 (9th Cir. 2007) (amicus counsel)

*Goldman v. Standard Insurance Company*, 341 F.3d 1023 (9th Cir. 2003) (party counsel)

*Green v. State*, 42 Cal.4th 254 (2007) (amicus counsel)

*Hogya v. U.P.S.*, 424 F.3d 1060 (9th Cir. 2005) (amicus counsel)

*Hwang v. Kansas State Univ.*, 753 F.3d 1159 (10th Cir. 2014) (amicus counsel)

*Lopez v. Pacific Maritime Assoc.*, 657 F.3d 762 (9th Cir. 2011) (amicus counsel)

*Marks v. Colorado Dep't of Corrections*, No. 19-1114 (10th Cir.) (amicus counsel)

*Nunes v. Wal-Mart Stores*, 164 F.3d 1243 (9th Cir. 1999) (party counsel)

*Raytheon Company v. Hernandez*, 540 U.S. 44 (2003) (amicus counsel)

*Reyazuddin v. Montgomery County, Maryland*, 789 F.3d 407 (4th Cir. 2015) (amicus counsel)

*Roby v. McKesson*, 57 Cal.Rptr.3d 541 (Cal. 2007) (amicus counsel)

*Smith v. Cal. Dep't of Managed Health Care*, No. 21-cv-07872-HSG, 2023 U.S. Dist. LEXIS 209492 (N.D. Cal. Nov. 22, 2023) (party counsel)

*Sutton v. United Airlines*, 527 U.S. 471 (1999) (amicus counsel)

*Tennessee v. Lane*, 541 U.S. 509 (2004) (amicus counsel)

*U.S. Airways v. Barnett*, 535 U.S. 391 (2002) (party counsel)

*Wills v. Orange Cty*, 195 Cal.App.4th 143 (2011) (amicus counsel)

**SELECTED WRITINGS**

Comments of ACLU in opposition to the U.S. Department of Homeland Security proposed regulations entitled "Inadmissibility on Public Charge Grounds" (Dec. 10, 2018)

Comments of ACLU to the U.S. Commission on Civil Rights, on behalf of organizations advocating for incarcerated and formerly incarcerated individuals with disabilities (July 19, 2017).

"Leaves of Absence as a Reasonable Accommodation for Workers with Disabilities," testimony before the Equal Employment Opportunity Commission, June 8, 2011.

Chapter, Lawyers, Lead On: Lawyers with Disabilities Share Their Insights (ABA Comm'n on Disability Rights, 2011).

Chapter, "Law and Job Accommodation in Mental Health Disability," in *Work Accommodation and Retention in Mental Health* (Izabela Z. Schultz and E. Sally Rogers, 2011).

"The ADA Amendments Act of 2008 and Employment: Practical Strategies," Journal of Poverty Law and Policy (Clearinghouse Review, July-August 2009) (with Brian East).

Keynote address, California Association of Mental Health Patient' Rights Advocates (Oct. 2008).

Manual, *Lifting Invisible Barriers: The Employment Rights of Persons with Psychiatric Disabilities* (2005).

**Ex. A - 3**

Paper/Lecture, "Paxil, Reasonable Accommodation, and "Professionals": Reconciling Medicine and Civil Rights for People with Mental Health Disabilities," UCSF Medical School (2005).

"Redefining "Disability" Discrimination: A Proposal to Restore Civil Rights Protections for All Workers," Stanford Law & Policy Review, vol. 14.2 (2003) (with Andrew J. Imparato).

Report, *Promoting Employment Opportunities for Californians with Psychiatric Disabilities Through Healthy and Integrated Workplaces* (Mar. 2003) (with Elizabeth Kristen, Lisa D. Sandberg, and Cathryn A. Harris).

Claudia Center, *et al*., "Confronting Depression and Suicide in Physicians: A Consensus Statement," 289 J. Am. Med. Ass'n 3161 (2003).

**Ex. A - 4**