# EXHIBIT B

MICHELLE IORIO – 298262
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California  94704
Telephone:   (510) 665-8644
Facsimile:   (510) 665-8511
TTY:   (510) 665-8716
Email:   miorio@dralegal.org

GAY CROSTHWAIT GRUNFELD – 121944
LISA ELLS – 243657
KARA J. JANSSEN – 274762
MARC J. SHINN-KRANTZ – 312968
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830
Facsimile:   (415) 433-7104
Email:   lells@rbgg.com

Attorneys for Plaintiffs

JAMES R. WILLIAMS – 271253
   County Counsel
DOUGLAS M. PRESS – 168740
   Assistant County Counsel
ARYN PAIGE HARRIS – 208590
   Deputy County Counsel
EMILY L. FELDMAN – 271200
   Deputy County Counsel
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street
East Wing, Ninth Floor
San Jose, California  95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

DAVID COLE, LEROY BENJAMIN, ERASMO FLORES, JR., ROBERT PHILLIPS and BRANDON WILLIAMS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

COUNTY OF SANTA CLARA, a public entity, COUNTY OF SANTA CLARA DEPARTMENT OF CORRECTION, a public entity under the control of the County of Santa Clara, the COUNTY OF SANTA CLARA OFFICE OF THE SHERIFF, a public entity under the control of the County of Santa Clara, and DOES 1 to 20, inclusive,

Defendants.

Case No. 5:16-cv-06594-LHK

**CLASS ACTION**

**[PROPOSED] CONSENT DECREE**

Judge:   Hon. Lucy H. Koh

This Consent Decree is made and entered into by and through Plaintiffs David Cole, Leroy Benjamin, Brandon Williams, Robert Phillips, and Erasmo Flores, Jr., individually and on behalf of the Plaintiff Class (as defined below) (collectively, "Plaintiffs"); and Defendant County of Santa Clara.[1]  Hereinafter, Plaintiffs and Defendant are referred to collectively as "the Parties."  This Consent Decree operates in conjunction with the related Mobility Disability Remedial Plan ("Remedial Plan"), attached hereto as **Exhibit A**, that is hereby fully incorporated into this Consent Decree by reference herein.

I.    **Recitals**

    A.    WHEREAS, after a series of arms-length settlement discussions, including significant exchanges of information and multiple proposals and counterproposals, as well as consideration of the risks, possible delays, and expense likely to result from prolonged litigation, the Parties have reached agreement on the terms of a proposed class settlement.

    B.    WHEREAS, this Consent Decree resolves the lawsuit filed on November 14, 2016, entitled, *Cole v. County of Santa Clara,* United States District Court, Northern District of California, Case Number 3:16-cv-06594 LHK (hereinafter, "Action") alleging that Defendant has discriminated against individuals with mobility disabilities incarcerated in Santa Clara County's ("the County") Main Jail North, Main Jail South, and Elmwood Correctional Facility (collectively, "the Jails") in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; Section 504 of the Rehabilitation Act ("Rehabilitation Act"); 29 U.S.C. § 794; and California Government Code Section 11135 ("Section 11135") (collectively, "State and Federal Disability Laws").  Defendant denies all of the allegations against it.

---

[1] Defendant here was erroneously sued as Defendant County of Santa Clara, the Santa Clara County Department of Correction, and the Santa Clara County Sheriff's Office.

**C.**   WHEREAS, Defendant reports that since the Parties began negotiations related to this lawsuit in January 2015, Defendant has already taken significant steps towards remediation, including but not limited to:

1. Budgetary allocation of over $100 million dollars to ADA jail improvements (not including the planned New Jail facility, which the County plans to build on the current Main Jail South location);

2. The completion of a number of other ADA improvements, including:

   a. Construction of a number of ADA-accessible cells, housing units, restrooms, showers, and countertops, among other improvements;

   b. Modification of the booking area and process to better accommodate ADA inmates;

   c. The use of a screening tool to identify and assess inmates' Mobility Disabilities upon intake;

3. The County's ongoing review and revision, as needed, of all Jail policies, procedures, Post Orders, and forms to address ADA compliance issues;

4. Establishment of an ADA Coordinator and ADA Unit at an ongoing annual cost of $1,083,000;

5. Procurement of an ADA electronic tracking system costing $283,000;

6. Establishment of an electronic ADA Grievance System.

Plaintiffs have not confirmed these representations and maintain that Defendant is not currently in compliance with the relevant disability access laws.

**D.**   WHEREAS, through this Consent Decree, Defendant agrees to implement the measures set forth in the Remedial Plan (**Exhibit A**), subject to monitoring and, if necessary, enforcement by this Court as set forth in this Consent Decree.

E.    WHEREAS, by entry into this Consent Decree, the Parties intend to, and hereby do, resolve all claims that were actually, or could have been, raised in the Action by Plaintiffs and the Plaintiff Class.  The Parties believe this Consent Decree is fair, reasonable, and adequate to protect the interests of all Parties.

F.    WHEREAS, the Parties stipulate that this Consent Decree complies in all respects with the provisions of 18 U.S.C. § 3626(a).  The Parties further stipulate and agree, and the Court finds, that the prospective relief in this Consent Decree is narrowly drawn, extends no further than necessary to correct the violations of federal rights agreed to by the parties, is the least intrusive means necessary to correct those violations, and will not have an adverse impact on public safety or the operation of a criminal justice system.

## II.    Definitions

The following definitions will apply to the terms of this Consent Decree and the Remedial Plan (**Exhibit A**). The following definitions are intended to be interpreted consistent with State and Federal Disability Laws.  Unless explicitly stated to the contrary, any term not expressly defined in this Section or elsewhere in this Consent Decree or Remedial Plan that has an expressly defined meaning under State and Federal Disability Laws, shall have the meaning ascribed to it by current statute.

This Remedial Plan uses the phrase, "Reasonable Modifications," pursuant to 28 C.F.R. § 35.130(b)(7), the Department of Justice regulations implementing Title II of the ADA; while the phrase, "reasonable accommodation," is primarily in Title I of the ADA, *see* 42 U.S.C § 12111.  The terms are frequently used interchangeably by the courts.

All other terms shall be interpreted according to their plain and ordinary meaning:

A.    "ADA Accessible" means and refers to a facility, or any portion thereof, which meets the following standards:  the current edition, as of the commencement of physical construction or alterations, of the California Building Code, Title 24, Part 3 of the California Code of Regulations; or, the

2010 Americans with Disabilities Act Standards for Accessible Design ("2010 ADA Standards"), which consist of the Title II regulations at 28 C.F.R. part 35.151 and the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 C.F.R. part 1191, appendices B and D (hereinafter collectively, "Accessibility Standards").  In the event of conflict between the standards, Defendant will use the standard which provides the greater level of access.

**B.** "ADA Tracking System" means a computerized, networked, real-time tracking system to enable Defendant to document and internally share information regarding inmates with a Mobility Disability.

**C.** "Jails or Jail" means the jails operated by the Santa Clara County Department of Correction/Sheriff's Office Custody Division during the Term of the Consent Decree; and shall include the Main Jail Facility (consisting of Main Jail North and Main Jail South, collectively, "Main Jail"); and the Elmwood Correctional Facility, which includes the Correctional Center for Women or CCW (collectively, "Elmwood"); and the proposed New Jail.

**D.** "The County" means Santa Clara County, the Santa Clara County Department of Correction, and the Santa Clara County Sheriff's Office, and the agents and employees of the Department of Correction, the Sheriff's Office, and the County agents and employees who provide health care to inmates.

**E.** The following terms govern monitoring:

1. "Substantial Compliance" shall be interpreted to be consistent with Ninth Circuit law defining "substantial compliance" in the context of implementing consent decrees and similar court-supervised settlements; as such, substantial compliance will mean compliance with the essential requirements of the Remedial Plan that satisfies the Remedial Plan's overall purposes and objectives and adherence to the provisions of the Remedial Plan in all material respects, recognizing

4

that perfection is not required.  Under Ninth Circuit law, non-systemic
or unintentional deviations that are so minor or trivial as to not
substantially defeat the object of the Remedial Plan shall not prevent a
finding of substantial compliance.

2.    "Unratable-In Progress" shall mean that Defendant has identified, and
the applicable monitor agrees, that remediation efforts concerning
certain material provisions of the Remedial Plan are not yet complete.

3.    "Non-Compliance" shall mean that Defendant has not met most of the
material components of the relevant provision of the Remedial Plan.

F.    "Adult Custody Health Services Staff" includes all County employees who
work in the Jails for Adult Custody Health Services and who have more than
incidental contact with inmates.

G.    "Custody Staff" includes all County employees who work in the Jails for the
Custody Bureau, including correctional officers/deputies, who have more
than incidental contact with inmates.  This does not include County
employees whose duties relate solely to facility maintenance (i.e.,
electricians, janitors, food service staff).

H.    "Days" refers to calendar days unless otherwise specified.

I.    "Describe" means to provide a clear and detailed description of something
done, experienced, seen, or heard.

J.    "Document," when used in this Consent Decree as a verb, means completing
a record of information either in hard copy or electronic format.

K.    "Effective Date" means the date the Court grants approval of this Consent
Decree.

L.    "Execution Date" means the date the Parties execute this Consent Decree.

M.    To "implement" a policy means that the policy has been drafted and
distributed to all staff responsible for following or applying the policy; and,
if expressly required under this Consent Decree, all relevant staff have been

trained on the policy; compliance with the policy is monitored and tracked, if practical, to assure the policy is consistently applied; and the County will adopt corrective action measures to address any lapses in application of the policy.

**N.** "Include" or "including" means "include, but not limited to" or "including, but not limited to."

**O.** "Levels" means an inmate's classification level.  The County assigns inmates security levels 1-4.  Level 1 is the lowest level of security and Level 4 is the highest.  The County may adopt a high, medium, minimum security classification model.  In the event this occurs, the Parties agree that Level 4 is high; Level 3 and Level 2 are medium, and Level 1 is minimum.

**P.** "Medical Provider"  means a County medical doctor, doctor of osteopathy, physician assistant, or nurse practitioner.

**Q.** "Mobility Device" means any non-motorized device designed for use by inmates with Mobility Disabilities such as wheelchairs, crutches, walkers, canes, braces, or other similar devices.  The limited circumstances for issuance of a motorized wheelchair are addressed in Section IV(B)(2), below.  There are three types of Mobility Devices referenced throughout the Remedial Plan:  (a) "Standard," which refers to wheelchairs, walkers, crutches, and canes that are owned and maintained by the County; (b) "Generic," which refers to Mobility Devices, excluding the devices listed in subsection (a), that the County may have readily available or that can be easily procured as an off-the-shelf generic durable medical good (including, but not limited to, a splint, boot, brace, sling, and/or wedge support); and (c) "Customized," which refers to a Mobility Device that requires custom specifications to meet the needs of an inmate (including, but not limited to, prosthetics, certain orthotics, and some wheelchairs).  "Personal" Mobility

1    Devices refers to a Mobility Device brought into the Jails by an inmate.  All

2    other devices referred to herein are owned and issued by the County.

3  **R.**    "Mobility Disability" and "Mobility Disabilities" means an impairment that

4    affects an inmate's ability to move physically and which substantially limits

5    the inmate's ability to perform one or more major life activities, including

6    but not limited to standing, lifting, stooping, and/or ambulating.

7  **S.**    "Plaintiffs" and "Plaintiff Class" mean all individuals with a Mobility

8    Disability who are now, or will be in the future, for the Term of this Consent

9    Decree incarcerated in the County Jails.

10  **T.**    "Plaintiffs' Counsel" means Disability Right Advocates ("DRA") and Rosen

11    Bien Galvan & Grunfeld, LLP ("RBGG").

12  **U.**    "Inmate(s)" shall be construed broadly to refer to one or more individuals

13    incarcerated at, detained at, or otherwise housed, held, in the custody of, or

14    confined at the Jails, including transportation.

15  **V.**    "Safety-Security Assessment" means an individualized safety-security

16    assessment that shall be based on reasonable judgment that relies on the best

17    available objective evidence, to ascertain (1) the nature, duration, and

18    severity of any risk, (2) the probability of potential injury, and (3) whether

19    providing an alternative Mobility Device and/or reasonable modification

20    would mitigate the risk.  In no case shall a Mobility Device be removed

21    based solely on the nature of the inmate's criminal charges or convictions.

22  **W.**    "Staff" includes all full-time, coded employees who are employed by the

23    County of Santa Clara and work in the Jails.

24  **X.**    "Train" means to instruct in the skills addressed to a level at which the

25    trainee has the demonstrated competency to implement those skills as, and

26    when called for, in the training.  "Trained" means a demonstration of staff

27    competency.

28    NOW, THEREFORE, FOR AND IN CONSIDERATION OF the mutual covenants

and conditions set forth herein, the Parties hereto agree as follows:

**III.    Injunctive Relief**

The Parties' Remedial Plan outlining the injunctive provisions is attached hereto as **Exhibit A** and fully incorporated by reference herein.

**IV.    Settlement Approval Process**

    **A.**    The Parties will agree on a joint motion and will jointly move the Court, by November 13, 2018, for an Order granting Preliminary Approval of this Consent Decree and setting a hearing for Final Approval of this Consent Decree.

    **B.**    The Parties will negotiate and draft a proposed notice to the Class, which shall include the terms of this Consent Decree and their right to object thereto. The Parties will make any edits or modifications to the draft notice should such edits or modifications be directed by the Court. The proposed notice shall be attached to and incorporated into this Consent Decree as **Exhibit B.**

    **C.**    The Parties shall develop a plan for posting the notice. At a minimum, the notice plan shall include the following: (1) posting notice in all intake, housing, and programming units of the Jails; (2) posting notice on Plaintiffs' Counsels' websites; and (3) posting notice on the television-notification system inside the Jails. All postings will be in accessible formats. The Parties will provide alternate format copies of the notice upon request. Notice will be posted/distributed by the Parties within twenty-one (21) days of the date of the Court's Order granting preliminary approval, and shall remain posted for no less than thirty (30) days. The Parties will submit declarations to the Court as part of the motion for final approval confirming that notice has been issued according to this paragraph.

    **D.**    Defendant shall provide notice as required by the Class Action Fairness Act (28 U.S.C. §§ 1711-1715) to appropriate officials as required by that Act.

E.  The Parties will take all procedural steps regarding the fairness hearings as may be requested by the Court and will otherwise use their respective best efforts to consummate the agreement set forth in this Consent Decree, and to obtain final Court approval of this Consent Decree and entry of Judgment.

F.  If, for any reason, the Court does not approve this Consent Decree, the executed Consent Decree shall be null and void.

G.  Upon final approval by the Court, this Consent Decree will be binding upon the Defendant, Plaintiffs, and all Class members and will constitute the final and complete resolution of all issues addressed herein.

## V.  Roles of Monitor and Plaintiffs' Counsel

A.  Role of Plaintiffs' Counsel

1.  Jail Facility Tours

a.  Defendant shall permit Plaintiffs' Counsel reasonable access to tour the jail facilities, interview staff and inmates, and observe practices related to Defendant's compliance with the provisions of this Consent Decree.  Plaintiffs' Counsel shall have reasonable access to interviews of staff and inmates to ensure a full evaluation.  Interviews with inmates shall be conducted confidentially.  Interviews with staff shall be conducted outside the presence of other jail staff or supervisors.  However, County Counsel shall be present during staff interviews and staff may decline to participate in any interview conducted by Plaintiffs' Counsel.

b.  Plaintiffs' Counsel's tours will not exceed more than three (3) tours annually.

c.  Each tour shall last no more than two (2) days and be conducted by no more than one (1) Plaintiffs' attorney or, alternatively, one (1) staff member.  Plaintiffs' representative

shall debrief with County Counsel at the end of each tour.
Plaintiffs' Counsel shall also write a report after each tour, to
which Defendant may respond within 21 days.  Plaintiffs'
Counsel will provide Defendant's counsel with 7 days advance
notice of tour.

2.    Requests for Documents and Individual Advocacy

a.    Defendant shall provide Plaintiffs' Counsel with access to
records, reports, and documents that the Parties agree and
identify are necessary to evaluate Defendant's ongoing
compliance with the Remedial Plan.  If the Parties cannot agree
on the necessary documents, the Parties will meet and confer to
address any disagreements.  The Parties shall cooperate so that
such access is provided without unduly burdening Defendant.
Defendant shall provide Plaintiffs' Counsel with such
information within 14 days of the request, unless a longer
period of time is necessary.

b.    Where Plaintiffs' Counsel has a good faith basis for doing so,
Plaintiffs' Counsel may bring individual inmates' disability
accommodation concerns to the attention of the County in
writing, who shall respond in writing within 14 days.  This
process is not meant to replace or circumvent the existing
processes for submitting grievances or ADA requests to jail
staff.  Plaintiffs' Counsel will encourage inmates to make use
of those existing processes except where exigent circumstances
or failures of those processes have occurred.

3.    Periodic Reporting

a.    Defendant will provide Plaintiffs' Counsel with the following
reports:  (a) a monthly report from the ADA Tracking System,

identifying all inmates with Mobility Disabilities and the accommodations received, where the inmates are housed, and to which programs the inmates are assigned; (b) on a triannual basis, copies of all ADA-related inmate grievances and the written responses to the inmate grievances; and (c) on a triannual basis, copies of all ADA-related Inmate Request Forms and the written responses to these requests.

    b.    Production of the reports identified in subpart (a) of this provision is derived from the current ADA Tracking System, and the Parties acknowledge that the current ADA Tracking System is not integrated with the electronic medical record or other custody-based electronic systems and, thus, there are information sharing challenges that will not be cured until Defendant implements the planned electronic jail management software.

    c.    Within 30 days of the Effective Date of the Consent Decree, the Parties shall meet and confer to determine a list of any additional documents necessary for Plaintiffs' Counsel to evaluate Defendant's compliance with the Remedial Plan that will be produced on a periodic basis as well as the frequency for such productions.

**B.    Monitoring by Operational Monitor**

    1.    Within three months of the execution date, the Parties shall jointly agree upon a Monitor ("Operational Monitor") who will monitor Defendant's compliance with the operational aspects of the Remedial Plan for the Term of this Consent Decree.

    2.    If, for any reason, the Operational Monitor can no longer serve or the Parties jointly wish to engage a different monitor, the Parties shall

attempt to agree on who shall be appointed to serve as the
replacement monitor.

3. If the Parties are unable to agree on the replacement monitor, the
Parties shall each submit a list of two (2) proposed new Operational
Monitor candidates, all of whom will have already agreed to be
subject to, and comply with, the Defendant's contracting
requirements, to the Honorable Magistrate Judge Nathaneal Cousins.
Prior to submitting their respective lists to Judge Cousins, the Parties
agree to meet and confer to ensure that each proffered candidate is
eligible to be considered.  If a proposed candidate is found to be
ineligible due to his or her inability or unwillingness to comply with
the County's contractual requirements or due to a conflict of interest,
the Party who proposed that candidate will be given an opportunity to
propose an alternative candidate for consideration.  The Parties will
submit written suggestions to Judge Cousins as to who to select from
the lists.  Judge Cousins shall then select the new Operational Monitor
from the lists.

4. Once the Operational Monitor is selected, the Operational Monitor
will conduct two tours within the first year of the Execution Date of
the Consent Decree and thereafter conduct biannual tours and
program reviews.  Plaintiffs' Counsel shall have the right to attend the
tours.  The Parties may jointly agree in writing to conduct operational
monitoring on a less frequent basis if the Parties agree such reduction
is appropriate based on the current circumstances.

5. Prior to the Operational Monitor's visit, Defendant shall advise the
Operational Monitor which subjects are Unratable-In Progress and
provide a brief reason why the subject(s) is not ready for evaluation of
Substantial Compliance/Non-Compliance.  The Operational Monitor

shall still have the right to review the status of subjects Defendant has

declared to be Unratable-In Progress.

6.    The Operational Monitor will prepare a written report within 45 days

after monitoring that will evaluate the extent to which Defendant has

successfully implemented substantive provisions of the Remedial Plan

and any plans to effectuate its terms, and recommend specific actions

the Operational Monitor believes Defendant must make to achieve

Substantial Compliance with the Remedial Plan.  The Operational

Monitor shall report on whether, as to each material provision, the

County is in Substantial Compliance, Unratable-In Progress, or Non-

Compliance as those terms are defined herein.

7.    The Parties will have twenty-one (21) days to make written comments

or objections to the Operational Monitor report.  The Operational

Monitor shall have twenty-one (21) days to respond to the Parties'

comments or objections by issuing a final report.

8.    The Operational Monitor will conduct three tours of the New Jail

unless the Parties agree that a third tour is unnecessary.  The

Operational Monitor will conduct the first tour of the New Jail within

thirty (30) days after the County begins occupancy of the New Jail.

The Operational Monitor will conduct the second tour of the New Jail

as soon as he or she determines that there are sufficient numbers of

inmates housed at the Jail to allow a meaningful evaluation of the

New Jail's compliance with this Consent Decree, to the extent that has

not occurred at the time of the first tour.  The Operational Monitor

will conduct a third tour unless the Parties agree that a third tour is

unnecessary.  The Operational Monitor will prepare a written report

within thirty (30) days after each tour that will evaluate the extent to

which Defendant has successfully implemented substantive provisions

of the Remedial Plan in the New Jail and any plans to effectuate its terms, and recommend specific actions that the Operational Monitor believes Defendant may need to make, if any, to achieve Substantial Compliance with the Remedial Plan.  The Operational Monitor shall report on whether, as to each material provision, the County is in Substantial Compliance, Unratable-In Progress, or Non-Compliance, as those terms are defined herein.  The Parties will have fourteen (14) days to make written comments or objections to this report.  The Operational Monitor shall have fourteen (14) days to respond to the Parties' comments or objections by issuing a final report.

**C.** **Monitoring of Physical Alterations to Current Jails**

1. Within three months of the Execution Date, the Parties shall jointly agree upon a Monitor with architectural accessibility expertise ("Architectural Monitor") who will monitor Defendant's compliance with the physical access portion of the Remedial Plan in the context of construction and/or alterations to the Jails for the duration of the Term of this Consent Decree.

2. If, for any reason, the Architectural Monitor can no longer serve or the Parties jointly wish to engage a different monitor, the Parties shall attempt to agree on who shall be appointed to serve as the replacement monitor.

3. If the Parties are unable to agree on the replacement monitor, the Parties shall each submit a list of two (2) proposed new Architectural Monitor candidates, all of whom will have already agreed to be subject to, and comply with, the Defendant's contracting requirements, to the Honorable Magistrate Judge Nathaneal Cousins.  Prior to submitting their respective lists to Judge Cousins, the Parties agree to meet and confer to ensure that each proffered candidate is

eligible to be considered. If a proposed candidate is found to be
ineligible due to his or her inability or unwillingness to comply with
the County's contractual requirements or due to a conflict of interest,
the Party who proposed that candidate will be given an opportunity to
propose an alternative candidate for consideration. The Parties will
submit written suggestions to Judge Cousins as to who to select from
the lists. Judge Cousins shall then select the new Architectural
Monitor from the lists.

4. Defendant has provided and continues to provide the Architectural
Monitor with copies of architectural drawings ("plans") for
construction and/or physical alterations within the Jails covered by the
Remedial Plan.

5. Defendant may consult directly with the Architectural Monitor
regarding the plans and/or alterations for the Jails. If Defendant and
the Architectural Monitor have a dispute regarding the plans and/or
alterations for the Jails, or reach a determination that technical
infeasibility exists, Defendant shall advise Plaintiffs of these
communications.

6. The Parties may agree to exclude specific projects from the plan
review requirements.

7. Defendant anticipates that the planned construction will be completed
in January 2022 at the earliest. The planned construction is highly
dependent on third-party contractors, and this time estimate is not
binding.

8. Defendant will request that the Architectural Monitor conduct
periodic site visits to review completed work as major projects or
groups of projects are completed. Plaintiffs' Counsel may accompany
the Architectural Monitor on these visits. The Architectural Monitor

shall confirm in a written report, provided to the Parties within 45
days, whether each part of the completed work is ADA Accessible.

9. The Parties will have twenty-one (21) days to provide written
comments or objections to the Architectural Monitor's report. The
Architectural Monitor shall have twenty-one (21) days to respond to
the Parties' comments or objections by issuing a final report.

10. Once the physical alteration projects are complete, the Architectural
Monitor determines compliance, and the Dispute Resolution Process,
if applicable, is complete, Defendant is no longer subject to
monitoring for physical alterations.

## D. Monitoring of Construction of the New Jail

1. Defendant anticipates that the New Jail will be completed in 2023.
Construction of the New Jail is highly dependent on third-party
contractors, and this time estimate is not binding.

2. After construction of the New Jail, the Architectural Monitor will
conduct a site visit within thirty (30) days of completion of
construction on the New Jail, and prepare a written report provided to
the Parties within forty-five (45) days, evaluating whether each part of
the completed work is ADA Accessible as required under the
Remedial Plan. Plaintiffs' Counsel may accompany the Architectural
Monitor on this site visit.

3. The Parties will have twenty-one (21) days to provide written
comments or objections to the Architectural Monitor reports. The
Architectural Monitor shall have twenty-one (21) days to respond to
the Parties' comments or objections by issuing a final report.

## VI. Attorney's Fees and Costs

A. No later than ninety (90) days after the Effective Date, the County agrees to
pay Plaintiffs' Counsel the fixed sum of $1 million to cover and fully resolve

1    any and all of Plaintiffs' and Plaintiffs' Counsels' claims against the County

2    for attorney's fees and costs incurred or attributable to any and all work from

3    any time prior to the filing of this Action (including any claims from the

4    structured negotiations phase), up through and including the Effective Date

5    of this Consent Decree (hereinafter, "past fees").

6    **B.**    No later than ninety (90) days after the Effective Date, the County shall pay

7    the fixed sum of $2.2 million to cover and fully resolve any and all of

8    Plaintiffs' and Plaintiffs' Counsels' claims against the County for attorney's

9    fees and costs incurred or attributable to any and all work performed by

10    anyone from the Effective Date of this Consent Decree up through and

11    including the end of the Term, as Term is defined in Section VIII

12    (hereinafter, "future fees"). These future fees shall be paid, using wire

13    instructions stated at Section VI.B.1, into the Cole Jail Monitoring Qualified

14    Settlement Fund ("QSF"), established by or on behalf of Plaintiffs' Counsel.

15    Plaintiffs' Counsel warrants and represents to the County that the QSF is a

16    duly constructed and authorized Internal Revenue Code Section 468B

17    Qualified Settlement Fund, as defined by Internal Revenue Code Section

18    468-B and the associated Treasury Reg. 1.468B-1 of the Internal Revenue

19    Code, and is qualified to receive this settlement payment for future fees.

20    Plaintiffs' Counsel shall defend and indemnify the County, and hold the

21    County harmless, with respect to any claims, demands, causes of action,

22    suits, debts, liabilities, fees, taxes, charges, losses, or costs, of any nature

23    whatsoever, relating to or arising from the formation, administration, or

24    existence of the QSF or the payment by the County into the QSF.

25    1.    The following, in combination with the complete account number

26    which shall be provided by Plaintiffs' Counsel to the County,

27    constitute the wire instructions for the QSF:

28

1      • Account Name:  EPTC Custodial Trust Settlement Trust
2         Contribution Account
3      • Account Number:  X8544
4      • Bank:  Union First Market Bank
5      • Routing Number:  051403164
6      • Further Credit Instructions:  EPTC FBO – Cole Jail Monitoring
7         Qualified Settlement Fund
8    2.  The only exceptions to this fixed sum for future fees that are not
9         included in the $2.2 million sum, above, are comprised of the
10        following two scenarios; and these are the only situations in which
11        Plaintiffs' Counsel or anyone else may file a motion with the court
12        seeking an award of additional reasonable attorney's fees and costs:
13     a.  The County brings an unsuccessful motion under the Consent
14         Decree against Plaintiffs or Plaintiffs' Counsel ("County's
15         Motion") (Scenario 1); or
16     b.  The Court has found the County to be in violation of provisions
17         of the Consent Decree, and based on that violation, has ordered
18         to County to comply with the Consent Decree ("order to
19         comply"); and then, the County refuses to follow that order to
20         comply (Scenario 2).
21     c.  Under Scenario 1, Plaintiffs' Counsel may only be awarded
22         those reasonable attorney's fees and costs for work performed
23         that both a) arises after the filing of the County's Motion and
24         b) directly pertains to Plaintiffs' Counsel preparing their filed
25         response and attending the hearing, if any, on the County's
26         Motion.
27     d.  Under Scenario 2, if the County refuses to follow the order to
28         comply, Plaintiffs' Counsel may file a motion to find the

18                                    Case No. 5:16-cv-06594-LHK

County in contempt of court.  If Plaintiffs' motion is successful, Plaintiffs' Counsel may then only be awarded those reasonable attorney's fees and costs for their work drafting and arguing the successful new contempt motion that is performed after both a) the Court enters the order to comply, and then b) the County fails to abide by that order to comply.

C.    With the exception of the scenarios set forth in Section VI.B.2, no other attorney's fees or costs award or payment of any sort is permitted to anyone under this Consent Decree.

## VII.   Dispute Resolution

A.    If either Party seeks to engage in the Dispute Resolution Process, as defined herein, that Party shall give notice to the other Party of the grounds for the dispute.  The Party receiving the demand to engage in the Dispute Resolution Process will provide a written response within fourteen (14) days.  The Parties shall then engage in good-faith negotiations to attempt to resolve the dispute for a minimum of thirty (30) days from the date of the response. Plaintiffs shall be permitted to bring their own expert into the Jails, at a time, scope, and for a duration mutually agreed upon by the Parties, as part of this thirty (30) day negotiation period in order to assist in resolving the dispute. The County agrees to not unduly delay Plaintiffs' expert's access to the Jails under these circumstances.

B.    If after meeting and conferring for at least thirty (30) days, the dispute has not been resolved, either Party may request that the Parties bring the dispute before Judge Cousins, or another mutually agreed upon neutral, for purposes of mediation.  If Judge Cousins is not available within forty-five days (45), the Parties will utilize the services of the Northern District of California's Alternative Dispute Resolution program or request that the Court appoint another Magistrate Judge.  If this mediation is unsuccessful, either Party may

apply to the Court for relief that is bounded by and subject to the limitations and terms of this Consent Decree. The Parties agree to work in good faith to avoid such applications wherever possible. Any disputes that cannot be resolved through the Dispute Resolution Process outlined above may be submitted to Judge Cousins, in his capacity as a Magistrate Judge rather than as a mediator as delineated in Section IX.B. below, for a resolution that is bounded by and subject to the limitations and terms of this Consent Decree.

C.    During the last nine (9) months of the Term of this Consent Decree, either Party may choose to immediately submit any disputes to Judge Cousins following completion of the thirty-day meet and confer process, in his capacity as a Magistrate Judge, for a resolution that is bounded by and subject to the limitations and terms of this Consent Decree.

In the case of an emergency that poses an immediate and significant threat to the health and safety of inmates, and as such, the nature of the emergency makes completion of the Dispute Resolution Process impracticable, a Party may seek relief from the Court that is bounded by and subject to the limitations and terms of this Consent Decree, with the exception of not having to complete the Dispute Resolution Process, provided that the moving Party has notified the nonmoving party of the issue at least seventy-two (72) hours before seeking such relief from the Court.

## VIII. Duration of the Consent Decree

A.    The Parties agree that this Consent Decree, and all of its terms, will expire, and will no longer be enforced or enforceable in any court, twelve (12) months after the certificate of occupancy for the New Jail has been issued and the County has begun placement of inmates in the New Jail (the "Term"). This Term is among the most material terms of this Consent Decree, such that absent this Term, the Parties would not have executed this Consent Decree. To effectuate this Term, the Parties further agree to waive

their rights under 18 U.S.C. §§ 3626 (b), (e), and (f), including as set forth in paragraphs VIII.B and C, below.

**B.** Defendant agrees not to seek, support, or assent to termination of the Consent Decree before the completion of the Term, under any circumstances, except as set forth in paragraph VIII.C, below; and Plaintiffs agree not to seek, support, or assent to any extension of the Term, under any circumstances, except as set forth in paragraph VIII.C, below.

**C.** The only circumstance by which the Term of this Consent Decree may be extended is that the Parties jointly agree that the Term should be extended because they perceive that ongoing violations remain at the end of the Term and the Parties jointly agree that extension of the Term is the most efficient means to address such violations.  In that circumstance, the Parties will jointly move, and can only jointly move, the Court to extend the Term.  If Plaintiffs contend, and Defendant disputes, that ongoing violations exist at the end of the Term, and/or if Defendants do not agree that the Term should be extended, Plaintiffs' sole remedy shall be to file a new lawsuit after the end of the Term of this Consent Decree.

**IX.  Reservation of Jurisdiction and Enforcement**

**A.** The District Court of the Northern District of California shall retain jurisdiction to enforce, but under no circumstances expand or alter, the terms of this Consent Decree and shall retain jurisdiction to resolve any dispute regarding compliance with this Consent Decree and that such resolution is bounded by and subject to the limitations and terms of this Consent Decree, including that in Section VIII, above, regarding the Term of this Consent Decree.  The Court shall have the power to enforce the Consent Decree through specific performance and all other remedies permitted by law and equity throughout the Term of this Consent Decree and that such enforcement is bounded by and subject to the limitations and terms of this

Consent Decree, including that in Section VIII, above, regarding the Term of this Consent Decree.

B.    The Parties consent to having all disputes between the Parties arising out of this Consent Decree, including those regarding compliance with this Consent Decree, heard and decided by Judge Nathanael Cousins, subject to the provisions of Federal Rule of Civil Procedure 72, and that any relief from such disputes is bounded by and subject to the limitations and terms of this Consent Decree.  Should Judge Cousins no longer be available to serve in this capacity for any reason, only this provision, IX.B, will be deemed to be severable from the remainder of this Consent Decree, unless the Parties jointly agree on a new decision-maker.

X.    **Release**

Subject to the entry of Judgment by the Court and in consideration of the relief set forth herein, Plaintiffs, for themselves, the Class, and their successors and assigns, hereby fully and finally release and discharge Defendant and its successors, assigns, officers, directors, and past and present agents and employees ("Released Parties") from any and all claims for declaratory or injunctive relief raised in the Action, or that could have been raised in the Action, relating to inmates with Mobility Disabilities ("Released Claims"). The Released Claims do not include any claims to enforce the terms of this Consent Decree.  Nothing in this Consent Decree releases any damages claims to which Plaintiffs or other individual members of the Plaintiff Class may be entitled.

XI.    **Miscellaneous**

A.    This Consent Decree, which incorporates by reference the Remedial Plan (**Exhibit A**) and the draft Notice to the Class (**Exhibit B**)**,** contains the entire agreement between the Parties.  This Consent Decree expresses the complete and final understanding with respect to the subject matter of this Consent Decree.  The Parties hereto understand and agree that the terms of this

1    Consent Decree supersede any prior discussions, understandings, or

2    agreements between them related to the subject matter hereof.

3    **B.**   The Parties each acknowledge that they are entering into this Consent Decree

4    freely, knowingly, voluntarily, and with a full understanding of its terms.

5    The Parties acknowledge that they have consulted with counsel of their own

6    choosing concerning this Consent Decree and that they were given

7    reasonable time to review and consider the terms of this Consent Decree.

8    **C.**   This Consent Decree shall be binding on all successors, assignees,

9    employees, agents, and all others working for or on behalf of Defendant and

10   Plaintiffs.

11   **D.**   The language of this Consent Decree shall be construed as a whole according

12   to its fair meaning, and not strictly for or against any of the Parties.  The

13   terms of this Consent Decree are the product of joint negotiations and shall

14   not be construed as having been authored by one party rather than another.

15   Any ambiguity shall not be construed against any Party.  Where required by

16   context, the plural includes the singular and the singular includes the plural.

17   The headings in this Consent Decree are solely for convenience and will not

18   be considered in its interpretation.

19   **E.**   If any provision or provisions of this Consent Decree, other than the Term,

20   shall be held invalid, illegal, or unenforceable, the validity, legality, and/or

21   enforceability of the remaining provisions shall not in any way be affected or

22   impaired thereby.

23   **F.**   This Consent Decree may be executed in counterparts, each of which will be

24   considered an original, but all of which, when taken together, will constitute

25   one and the same instrument.

26   **G.**   This Consent Decree shall be governed by and construed in accordance with

27   the laws of the State of California.

28

H.  To the extent any documents are required to be executed by any of the
Parties to effectuate this Consent Decree, each party hereto agrees to execute
and deliver such and further documents as may be required to carry out the
terms of this Consent Decree.

I.  Each signatory to this Consent Decree certifies that it, he, or she is fully
authorized by the party it, he, or she represents to enter into the Consent
Decree, to execute it on behalf of the party represented, and to legally bind
that party thereto.

Unless otherwise indicated in the Consent Decree, all notices or
communications required by this Consent Decree shall be in writing by email
addressed as stated below.  Should any Party's contact information change
from what is listed below, that Party shall promptly provide written notice of
the updated contact information to the other Parties.

To Named Plaintiffs, Plaintiffs' Counsel, or the Settlement Class:

Lisa Ells
Rosen Bien Galvan & Grunfeld LLP
101 Mission Street, Sixth Floor
San Francisco, CA  94105-1738
lells@rbgg.com

Michelle Iorio
Disability Rights Advocates
2001 Center Street, Fourth Floor
Berkeley, CA 94704
miorio@dralegal.org

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

Case 5:16-cv-06594-LHK   Document 42-2   Filed 12/07/18   Page 27 of 27

1        To Defendant:

2        Douglas M. Press, Assistant County Counsel
Aryn Harris, Deputy County Counsel

3        Emily Fedman, Deputy County Counsel
70 West Hedding St., 9th Floor, East Wing

4        San Jose, CA 95110
douglas.press@cco.sccgov.org

5        aryn.harris@cco.sccgov.org
emily.fedman@cco.sccgov.org

6

7 **IT IS AGREED AND SO STIPULATED.**

8 DATED:  November 12, 2018      ROSEN BIEN GALVAN & GRUNFELD LLP

9                        By:  */s/ Lisa Ells*
                           Lisa Ells

10

11 DATED:  November 12, 2018      DISABILITY RIGHTS ADVOCATES

12                        By:  */s/ Michelle Iorio*
                           Michelle Iorio

13

14        Attorneys for Plaintiffs and the Plaintiff Class

15

16 DATED:  November 13, 2018      JAMES R. WILLIAMS
                       County Counsel

17                        By:  */s/ Aryn Paige Harris*
18                            Aryn Paige Harris
                           Deputy County Counsel

19        Attorneys for Defendant

20

21

22

23

24

25

26

27

28

Case No. 5:16-cv-06594-LHK