1    From GAY C. GRUNFELD – 121944
   VAN SWEARINGEN – 259809
2    MICHAEL FREEDMAN – 262850
   ERIC MONEK ANDERSON – 320934
3    HANNAH M. CHARTOFF – 324529
   BEN HOLSTON – 341439
4    ROSEN BIEN
   GALVAN & GRUNFELD LLP
5    101 Mission Street, Sixth Floor
   San Francisco, California  94105-1738
6    Telephone:   (415) 433-6830
   Facsimile:    (415) 433-7104
7    ggrunfeld@rbgg.com
   vswearingen@rbgg.com
8    mfreedman@rbgg.com
   eanderson@rbgg.com
9    hchartoff@rbgg.com
   bholston@rbgg.com
10

11    AARON J. FISCHER – 247391
   LAW OFFICE OF
   AARON J. FISCHER
12    1400 Shattuck Square Suite 12 - #344
   Berkeley, California  94709
13    Telephone:  (510) 806-7366
   Facsimile:   (510) 694-6314
14    ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:  (858) 677-1400
Facsimile:   (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

15 Attorneys for Plaintiffs and the
Certified Class and Subclasses

16

17            UNITED STATES DISTRICT COURT

18          SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 19   DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, | Case No. 3:20-cv-00406-AJB-DDL |
| 20   JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, | **REPLY DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF** |
| 21   CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPÚLVEDA, | **PLAINTIFFS' PROPOSED NOTICE DISTRIBUTION PLAN** |
| 22   MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all | **FOR ADA SETTLEMENT** |
| 23   others similarly situated, | |
|           Plaintiffs, | Judge:    Hon. Anthony J. Battaglia |
| 24         v. | Date:       March 27, 2025 |
| 25   SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN | Time:      2:00 p.m. |
| 26   DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES | Crtrm:     4A |
| 27   1 to 20, inclusive, | |
|           Defendants. | |
| 28 | |

I, Gay Crosthwait Grunfeld, declare:

1.    I am an attorney duly admitted to practice before this Court.  I am a partner in the law firm of Rosen Bien Galvan & Grunfeld LLP, counsel of record for Plaintiffs and the Certified Class and Subclasses.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could competently so testify.  I make this reply declaration in support of Plaintiffs' Proposed Notice Distribution Plan for ADA Settlement.

2.    Attached hereto as **Exhibit A** is a revised proposed Notice of ADA Settlement Agreement ("Settlement Notice").  The revisions are shown in redline and serve to (1) correct a factual error regarding the number of claims in Plaintiffs' Third Amended Complaint; and (2) revise the language regarding Plaintiffs' attorneys' motion for attorney's fees to reflect that Plaintiffs filed such a motion on February 3, 2025.  I provided these redlined changes to counsel for Defendants Elizabeth Pappy on February 19, 2025 via email, and Ms. Pappy had no objections to the revisions.

3.    I reviewed both this Settlement Notice and the proposed notice the parties submitted on January 10, 2025 in Microsoft Word and confirmed that both are in 16-point font.

4.    I have been litigating and monitoring class action cases against the California Department of Corrections ("CDCR"), its Division of Adult Parole Operations, and California county jails for 19 years.  Never in those nineteen years, until now, has a defendant opposed a notice plan proposed by plaintiffs.  As part of monitoring those cases, I also monitor the notices that defendants post in prisons, parole offices, and jails.  Until this case, I have never seen a class certification or class settlement notice posted using transparent plastic.

5.    Attached hereto as **Exhibit B** is a true and correct copy of a declaration by Santa Clara County jail staff filed in *Cole v. County of Santa Clara*, No. 16-cv-06594-LHK (N.D. Cal.), regarding their compliance with the settlement notice

1  distribution plan ordered by the court in that case.  The declaration was filed

2  January 29, 2019 at ECF No. 77 in that case.

3      6.    Attached hereto as **Exhibit C** is a true and correct copy of a declaration

4  by Monterey County jail staff filed in *Hernandez v. County of Monterey*, No. 13-cv-

5  02354-BLF (N.D. Cal.), regarding their compliance with the settlement notice

6  distribution plan ordered by the court in that case.  The declaration was filed

7  May 27, 2015 as ECF No. 486.

8      7.    Attached hereto as **Exhibit D** is a true and correct copy of the Joint

9  Motion for Preliminary Approval of Consent Decree and Notice to Class in *Young v.*

10  *County of Contra Costa*, No. 20-cv-06848-NC (N.D. Cal.).  The motion was filed

11  October 1, 2020 as ECF No. 6.

12      8.    Attached hereto as **Exhibit E** is a true and correct copy of a declaration

13  by Contra Costa County jail staff filed in *Young*, regarding their compliance with the

14  settlement notice distribution plan ordered by the court in that case.  The declaration

15  was filed December 10, 2020 as ECF No. 24.

16      9.    As part of expert inspections in this litigation, Defendants provided

17  rosters of individuals incarcerated in the jail facilities.  I have reviewed those

18  rosters, which show more than 140 people in a single unit at George Bailey

19  Detention Facility.

20      10.    On March 10, 2023, I attended an inspection of Central Jail with

21  Plaintiffs' ADA expert, Syroun Sanossian.  We began in the intake area where

22  newly arrested individuals are fingerprinted.  The process was crowded and rushed,

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1  with approximately three men sitting on a bench awaiting fingerprinting and

2  processing with the intake nurse.  My understanding was that the goal at the intake

3  area is to move individuals out as expeditiously as possible.

4

5          I declare under penalty of perjury under the laws of the United States of

6  America that the foregoing is true and correct, and that this declaration is executed

7  at San Francisco, California this 20th day of February, 2025.

8

9                                          */s/ Gay Crosthwait Grunfeld*
                                          Gay Crosthwait Grunfeld
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF
PLAINTIFFS' PROPOSED NOTICE DISTRIBUTION PLAN FOR ADA SETTLEMENT

# TABLE OF CONTENTS
## EXHIBITS TO REPLY DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' PROPOSED NOTICE DISTRIBUTION PLAN FOR ADA SETTLEMENT

| DESCRIPTION | EXHIBIT NO. | PAGE NO. |
|---|---|---|
| Revised Proposed Notice of ADA Settlement Agreement | A | 1 |
| Declaration of Captain Amy Le Regarding Class Action Settlement Notice (Dkt. 77), *Cole v. County of Santa Clara*, Case No. 16-cv-06594-LHK (Jan. 29, 2019) | B | 4 |
| Declaration of Cmdr. James H. Bass Affirming Publication of Notice of Class Settlement (Dkt. 486), *Hernandez et al. v. County of Monterey*, Case No. 13-cv-02354-BLF (May 27, 2015) | C | 7 |
| Joint Motion for Preliminary Approval of Consent Decree and Notice to Class (Dkt. 6), *Young v. County of Contra Costa*, Case No. 3:20-cv-06848-NC (Oct. 1, 2020) | D | 47 |
| Declaration of Lieutenant Raymond Belcher Regarding Posting of the Class Notice and Associated Documents (Dkt. 24), *Young v. County of Contra Costa*, Case No. 3:20-cv-6848-NC (Dec. 10, 2020) | E | 57 |

# EXHIBIT A

## NOTICE OF ADA SETTLEMENT AGREEMENT

***Darryl Dunsmore et al. v. San Diego County Sheriff's Department, et al.*;
S.D. Cal. No. 3:20-cv-00406-AJB-DDL**

The *Dunsmore* case is a federal class action about the conditions in the San Diego County Jail.  This notice discusses the settlement of the ADA claim in that case ("**ADA Settlement Agreement**").

Plaintiffs filed this lawsuit seeking certain changes at the Jail related to ~~eight~~ 9 different claims for relief, including a claim under the Americans with Disabilities Act ("ADA").  In 2023, the district court certified a subclass called the Incarcerated People with Disabilities Subclass.  The Subclass includes anyone who is held at the Jail and has a disability.

Defendants are the County of San Diego and the Sheriff's Office.  They have agreed to settle Plaintiffs' ADA claim in the case.  The ADA Settlement Agreement relates only to this one claim about conditions for people with disabilities.  Plaintiffs' other seven claims in the case are still being litigated in court.

**This notice explains the ADA Settlement Agreement, where you can find the ADA Settlement Agreement, and how you can tell the Court whether you think the ADA Settlement Agreement is fair.**

The ADA Settlement Agreement requires the County and Sheriff's Office to make certain changes at the Jail, including:  (1) have an ADA Unit; (2) track people with disabilities and the accommodations they need; (3) provide reasonable accommodations to people with disabilities, including those with intellectual and mental health disabilities; (4) make physical changes to jail facilities to provide more accessible housing; (5) update ADA policies and training for staff; (6) provide equal access to programs and services for people with disabilities; (7) provide canes, walkers, wheelchairs, and other medical devices that people need; and (8) provide reasonable accommodations during transport.  The ADA Settlement Agreement also requires the County to hire two neutral experts who will confirm whether the County is complying with the ADA Settlement Agreement.

Copies of the ADA Settlement Agreement will be made available to you upon request to the ADA Unit, which can be contacted by using the

incarcerated person request form or calling (858) 974-5841.  You can also write to Plaintiffs' counsel at the address below to ask for a copy of the ADA Settlement Agreement.

The Court will have jurisdiction to enforce the ADA Settlement Agreement. The Court will hold a hearing on the fairness of the ADA Settlement Agreement at 2:00 p.m. on [**DATE**], at the United States Courthouse in San Diego, Courtroom 4A.

The ADA Settlement Agreement does not involve monetary damages and none will be awarded.

The ADA Settlement Agreement allows Plaintiffs' counsel to ask the Court to have Defendants pay for their attorneys' fees and costs in obtaining the ADA Settlement Agreement.  Plaintiffs' counsel ~~will~~ filed a motion on ~~January 24~~ February 3, 2025 that can be found on the Court's docket or requested from Plaintiffs' counsel.  The Court will decide the amount of the fees and expenses.

Any person in the Jail with a disability can write to the Court about whether the settlement is fair and whether they object to the settlement or to Class Counsel's request for reasonable attorneys' fees and costs.  Comments MUST include at the top of the page the case name and number:  *Dunsmore v. San Diego County Sheriff's Dept.*, No. 3:20-cv-00406-AJB-DDL. Comments MUST be postmarked no later than [***DATE***], and sent to:

Clerk of the Court
United States District Court - Southern District of California
333 West Broadway, Suite 420
San Diego, CA 92101

For more information about the ADA Settlement Agreement or the *Dunsmore case*, you may contact attorneys for the Plaintiff Class and the Subclass via LEGAL MAIL:

**Rosen Bien Galvan & Grunfeld LLP**
**Post Office Box 390**
**San Francisco, CA  94104-0390**

Or by phone at: **(415) 433-6830**

# EXHIBIT B

JAMES R. WILLIAMS, County Counsel (S.B. #271253)
ARYN PAIGE HARRIS, Deputy County Counsel (S.B. #208590)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San Jose, California  95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

Attorneys for Defendant
COUNTY OF SANTA CLARA (erroneously sued
herein as COUNTY OF SANTA CLARA
DEPARTMENT OF CORRECTION, A PUBLIC
ENTITY UNDER THE CONTROL OF THE
COUNTY OF SANTA CLARA, THE COUNTY
OF SANTA CLARA OFFICE OF THE SHERIFF,
A PUBLIC ENTITY UNDER THE CONTROL OF
THE COUNTY OF SANTA CLARA)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSÉ)

| | |
|---|---|
| DAVID COLE, et al., | No. 16CV06594 LHK |
| Plaintiffs, | **DECLARATION OF CAPTAIN AMY LE REGARDING CLASS ACTION SETTLEMENT NOTICE** |
| v. | |
| COUNTY OF SANTA CLARA, et al., | |
| Defendants. | |

I, Captain Amy Le, declare:

1.      I have personal knowledge of all matters stated herein, and if called upon to do so, I could and would testify competently thereto.

2.      I am employed by the County of Santa Clara, Sheriff's Office Custody Bureau.  My rank is Captain and my title is Division Commander, also known as Facility Captain.

3.      I am the Facility Captain of both Elmwood Correctional Facility and Elmwood Complex Women's Facility, both located at 701 S. Abel Street, Milpitas, CA 95035.

4.      On January 22, 2019, staff posted copies of a 14"x20" Class Notice of Settlement printed in English, Spanish, and Vietnamese.  Complete copies of the corrected consent decree were available on the units as of January 24, 2019 and the tri-lingual version of the notice was placed on the television monitors as of January 28, 2019.

5.      Since January 22, 2019, Elmwood and CCW has been prepared to provide a copy of the consent decree and remedial plan within three days of an inmate's request.  The packet includes a court-addressed, stamped envelope and a piece of paper.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed at San Jose, California on January 29, 2019.

 

 

CAPTAIN AMY LE

Declaration of Captain Amy Le

# EXHIBIT C

1   CHARLES J. McKEE, SBN 152458
    County Counsel
2   SUSAN K. BLITCH, SBN 187761
    Senior Deputy County Counsel
3   IRVEN L. GRANT, SBN 068950
    Deputy County Counsel
4   MICHAEL R. PHILIPPI, SBN 120967
    Deputy County Counsel
5   County of Monterey
    168 West Alisal Street, Third Floor
6   Salinas, California 93901-2653
    Telephone: (831) 755-5045
7   Facsimile: (831) 755-5283

8   Attorneys for Defendants COUNTY OF MONTEREY
    and MONTEREY COUNTY SHERIFF'S OFFICE
9

10

11                 UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                      San Jose Division

14

15  JESSE HERNANDEZ, CAIN AGUILAR, HA          Case No. CV 13 2354 PSG
    COBB, SUSAN DILLEY, CONNIE DOBBS,
16  SEAN ESQUIVEL, RAMONA GIST, MARTHA         **DECLARATION OF CMDR.**
    GOMEZ, GEORGE GREIM, DENNIS GUYOT,         **JAMES H. BASS AFFIRMING**
17  JASON HOBBS, GLENDA HUNTER, ALBERT         **PUBLICATION OF NOTICE OF**
    KEY, BRANDON MEFFORD, WESLEY               **CLASS SETTLEMENT**
18  MILLER, RICHARD MURPHY, JEFF
    NICHOLS, ANGEL PEREZ, SARAB SARABI,
19  CLYDE WHITFIELD, and ROBERT YANCEY,
    on behalf of themselves and all others similarly
20  situated,

21                                  Plaintiffs,

22              v.

23  COUNTY OF MONTEREY; MONTEREY
    COUNTY SHERIFF'S OFFICE; CALIFORNIA
24  FORENSIC MEDICAL GROUP,
    INCORPORATED, a California corporation; and
25  DOES 1 to 20, inclusive,

26                                  Defendants.

27  _____

28

                                          1

*Hernandez, et al. v. County of Monterey, et al.*                    Case No. CV 13-2354 PSG
Declaration of Cmdr. James H. Bass

**Ex. C - 8**

Case 3:05-cv-03006-JSW Document 486-1 Filed 05/22/15 Page 2 of 9
Case 5:13-cv-02354-BLF Document 489-1 Filed 05/27/15 Page 14 of 64
Page 14 of 64

I, **JAMES H. BASS,** declare:

1. I am employed by the Monterey County Sheriff's Department and I have personal knowledge of the facts set forth below, and if called upon would testify competently thereto.

2. On May 20, 2015, I caused copies of the notices of settlement attached hereto as Exhibit A to be posted at the following locations throughout the Monterey County jail:

    A.    Booking Intake Room

    B.    X-Ray Room Near ISO Cells

    C.    ISO Dayroom (outside of window facing in, near TV)

    D.    Booking Cell 1 outside of window facing in

    E.    Booking Cell 2 outside of window facing in

    F.    Booking Cell 3 outside of window facing in

    G.    Booking Cell 4 outside of window facing in

    H.    Men's Dress Out

    I.    E Dorm Dayroom

    J.    A Dorm

    K.    B Dorm

    L.    C Dorm

    M.    D Dorm

    N.    Men's Visiting 1

    O.    Men's Visiting 2

    P.    Men's Visiting 3

    Q.    Chapel

    R.    Dental Office

    S.    K-5

    T.    K-16

    U.    K-17

    V.    A-Pod

    W.    B-Pod

2

| | | |
|---|---|---|
| 1 | X. | C-Pod |
| 2 | Y. | D-Pod |
| 3 | Z. | E-Pod |
| 4 | AA. | F-Pod |
| 5 | BB. | G-Pod |
| 6 | CC. | H-Pod |
| 7 | DD. | I-Pod |
| 8 | EE. | J-Pod |
| 9 | FF. | Q-Pod |
| 10 | GG. | Q-Pod Outside yard |
| 11 | HH. | R-Pod |
| 12 | II. | S-Pod |
| 13 | JJ. | T-Pod |
| 14 | KK. | U-Pod |
| 15 | LL. | V-Pod lower Level |
| 16 | MM. | V-Pod Classroom |
| 17 | NN. | Women's Visiting |
| 18 | OO. | Rehab center Class Room 1 |
| 19 | PP. | Rehab center Class Room 2 |
| 20 | QQ. | Rehab center Class Room 3 |
| 21 | RR. | Rehab center Class Room 4 |
| 22 | SS. | A-Wing |
| 23 | TT. | B-Wing 1 |
| 24 | UU. | B-Wing 2 |
| 25 | VV. | B-Wing 3 |
| 26 | WW. | C-Wing |
| 27 | XX. | D-Wing |
| 28 | YY. | E-Wing |

3

*Hernandez, et al. v. County of Monterey, et al.*
Declaration of Cmdr. James H. Bass

Case No. CV 13-2354 PSG

**Ex. C - 10**

| | | |
|---|---|---|
| 1 | ZZ. | F-Wing |
| 2 | AAA. | G-Wing program area |
| 3 | BBB. | Rehab Clinic Room |
| 4 | CCC. | Infirmary Hallway |
| 5 | DDD. | Infirmary Exam Room 1 |
| 6 | EEE. | Infirmary Exam Room 2 |
| 7 | FFF. | Infirmary Exam Room 3 |
| 8 | GGG. | Library |

3.     Between May 19, 2015 and May 22, 2015, I caused the Notices Attached hereto as Exhibit A to be either personally delivered or delivered by First Class Mail to inmates under the custody of the Monterey County Sheriff's Office who currently reside at other locations, including Alameda County jail, Natividad Medical Center, and Atascadero State Mental Hospital.

4.     On May 20, 2015, I caused a copy of the Settlement Agreement in this case, attached hereto as Exhibit B, to be placed in the Monterey County jail library. Copies of the Settlement Agreement have been and will continue to be made available to inmates upon request.

5.     On May 22, 2015, the Notices attached hereto as Exhibit A and the Settlement Agreement attached hereto as Exhibit B were posted on the website of the Monterey County Sheriff's Office and are available for public review and downloading.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed this 26th day of May, 2015, at Salinas, California.

CMDR. JAMES H. BASS

*Hernandez, et al. v. County of Monterey, et al.*
Declaration of Cmdr. James H. Bass

Case No. CV 13-2354 PSG

**Ex. C - 11**

# *EXHIBIT A*

Case 5:13-cv-02354-BLF Document 889-1 Filed 07/24/25 Page 290 of 839
Case 5:13-cv-02354-PSG Document 403-1 Filed 05/22/15 Page 18 of 64
Page 18 of 64

## NOTICE: CLASS ACTION SETTLEMENT
### Monterey County Jail: Safety, Medical Care, Mental Health Care, Dental Care, Disabilities

*Hernandez v. County of Monterey*, N.D. Cal. No. 5:13-cv-02354-PSG, is a federal class action lawsuit challenging certain conditions at the Monterey County Jail (the "Jail"), including custody staffing, inmate classification, jail facilities, overcrowding, medical care, mental health care, dental care, and access to Jail programs for persons with disabilities. This action does not seek money damages and none will be awarded.

All adult men and women who are now, or will be in the future, incarcerated in the Jail are members of the class that has been certified in this lawsuit. You are a member of this class if you are an adult incarcerated in the Jail. The Court also certified a subclass of persons with disabilities who are incarcerated in the Jail. The Court certified this as a class action to address policies and practices that apply to the class as a whole, and because the lawsuit does not seek relief for any specific class member, there is no right to opt-out of the class.

**This notice explains the proposed settlement, where you can find it, and how you can tell the court whether you think it is fair.**

Under the Settlement Agreement, the Jail will be required to develop implementation plans to reform certain policies, procedures, and practices by which it provides security, medical care, mental health care, and disability accommodations to prisoners in the Jail, including: Intake Screening; Infection Control; Detoxification; Safety Cells; Medication Continuity; Custody Staffing; Clinical Staffing; Medical Care; Mental Health Care; Dental Care; Safety; and Prisoners with Disabilities. The Settlement Agreement also provides that expert monitors will be retained to monitor the Jail's compliance with this Settlement Agreement.

The Settlement Agreement addresses Jail policies, procedures, and practices. You can read about these changes in the Settlement Agreement. Copies of the Settlement Agreement are available in the Jail library, and will be made available to you upon request.

The Court will keep jurisdiction to enforce the requirements of this settlement. The Court will hold a hearing on the fairness of this settlement at 10:00 a.m. on August 4, 2015, at the United States District Court, Northern District of California, San Jose Courthouse, Courtroom 5 - 4th Floor, 280 South 1st Street, San Jose, CA 95113.

The attorneys who brought the class action will ask the Court to have Defendants pay for their attorneys' fees and expenses. The Settlement Agreement limits the attorneys' fees and expenses to $4.8 million for the work done so far and in the future to develop the implementation plans, and to no more than $250,000 per year for monitoring by plaintiffs' counsel. Attorneys' fees and costs for enforcement motions by plaintiffs are limited to $150,000 per year. The Court will decide the amount of these fees and expenses.

Persons incarcerated at or otherwise under the custody of the Monterey County Jail can write to the Court about whether the settlement is fair and whether he or she objects to the award of attorneys' fees. Comments MUST include at the top of the first page the case name (*Hernandez v. County of Monterey*) and case number (No. 5:13-cv-02354-PSG). Comments must be postmarked no later than July 11, 2015, and sent to the following address:

> Clerk of the Court
> United States District Court
> Northern District of California
> 280 South 1st Street
> San Jose, CA 95113

**If you would like more information about this case, or have any information that you wish to communicate to your attorneys, please contact:** Michael W. Bien, Rosen Bien Galvan & Grunfeld, LLP, P.O. Box 390, San Francisco, CA 94104.

# AVISO: CONCILIACIÓN DE DEMANDA COLECTIVA
## Cárcel del Condado de Monterey: Seguridad, Cuidado Médico, Cuidado de Salud Mental, Cuidado Dental, Discapacidades

El asunto de *Hernandez v. County of Monterey*, N.D. Cal. No. 5:13-cv-02354-PSG, es una demanda federal colectiva acerca de ciertas condiciones de la Cárcel del Condado de Monterey (la "Cárcel"), mismas que incluyen personal de custodia, clasificación de presos, comodidades, superpoblación, cuidado médico, cuidado de salud mental, cuidado dental, y acceso a programas para personas con discapacidades en la Cárcel. La demanda no busca daños monetarios, mismos que no se concederán.

Todo hombre o mujer adulto que se encuentre actualmente, o en el futuro, encarcelado en la Cárcel son miembros de la clase que fue certificada para demanda. Eres un miembro de la clase si eres un adulto encarcelado en la Cárcel. La Corte también certificó una subclase de personas con discapacidades actualmente encarceladas en la Cárcel. La Corte certificó esta demanda como una demanda colectiva para tratar políticas y prácticas aplicables a la clase, y porque la demanda no busca alivio para ningún miembro específico de la clase, no existe el derecho de optar por no pertenecer a la clase.

**Esta notificación explica el proceso de resolución, dónde lo puedes encontrar, y cómo puedes comunicarte con la Corte para expresar si crees que es justo.**

Bajo el Convenio de Resolución, se requerirá que la Cárcel desarrolle planes de implementación de reformas a ciertas políticas, procedimientos, y prácticas que utiliza para proveer de seguridad, cuidado médico, cuidado de salud mental, y acomodaciones para prisioneros con discapacidades, mismas que incluyen: Examen de Entrada; Control de Infecciones; Desintoxicación; Celdas de Seguridad; Continuidad de Medicamento; Personal de Custodia; Personal de Clínica; Cuidado Médico; Cuidado de Salud Mental; Cuidado Dental; Seguridad; y Prisioneros con Discapacidades. El Convenio de Resolución también requiere que expertos monitoreen que la Cárcel cumpla con este Convenio de Resolución.

El Convenio de Resolución habla acerca de políticas, procedimientos, y prácticas en la Cárcel. Puedes leer acerca de estos cambios en el Convenio de Resolución. Copias del Convenio de Resolución están disponibles en la biblioteca de la Cárcel, y están disponibles a petición tuya.

La Corte mantendrá su jurisdicción para hacer cumplir los requisitos de este Convenio. La Corte tendrá una audiencia para determinar si el Convenio es equitativo a las 10:00 a.m. del 4 de agosto de 2015, en el Juzgado de Distrito de los Estados Unidos, Distrito Norte de California, Juzgado de San José, Juzgado 5 – 4to. Piso, 280 South 1st Street, San Jose, CA 95113.

Los abogados que iniciaron la demanda colectiva pedirán a la Corte que los Demandados paguen sus gastos y honorarios. El Convenio de Resolución limita el pago de gastos y honorarios a $4.8 millones por el trabajo realizado y por el que sea necesario en el futuro para desarrollar planes de implementación, y a no más de $250,000 por año a los demandantes para monitorear el cumplimiento. Gastos y honorarios de abogados y gastos para mociones para hacer cumplir el Convenio presentadas por los demandantes se limitarán a $150,000 por año. La Corte decidirá la cantidad de estos gastos y honorarios.

Personas encarceladas o bajo la custodia de la Cárcel del Condado de Monterey pueden escribir a la Corte si creen que la resolución es justa y si objetan a la concesión de honorarios. Los comentarios DEBEN incluir al margen superior de la primera página el nombre del asunto (*Hernandez v. County of Monterey*) y el número de asunto (No. 5:13-cv-02354-PSG). Los comentarios deben ser matasellados a más tardar el 11 de julio de 2015, y deben ser enviados a la siguiente dirección:

> Clerk of the Court
> United States District Court
> Northern District of California
> 280 South 1st Street
> San Jose, CA 95113

**Si deseas más información acerca de este asunto, o tienes cualquier información que quieras comunicar a tus abogados, por favor contacta a:** Michael W. Bien, Rosen Bien Galvan & Grunfeld, LLP, P.O. Box 390, San Francisco, CA 94104.

# *EXHIBIT B*

Case 3:25-cv-00025-BAR-DC Document 18-1 Filed 05/22/25 Page 15 of 44
Case 5:13-cv-02354 PSG Document 488-2 Filed 05/14/25 Page 14 of 25
Page 23 of 64

**EXECUTION COPY**

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

11

12

| | |
|---|---|
| JESSE HERNANDEZ et al., on behalf of themselves and all others similarly situated, | Case No. CV 13 2354 PSG |
| Plaintiffs, | **SETTLEMENT AGREEMENT** |
| v. | Judge: Hon. Paul S. Grewal |
| COUNTY OF MONTEREY; MONTEREY COUNTY SHERIFF'S OFFICE; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California corporation; and DOES 1 to 20, inclusive, | Trial Date: September 8, 2015 |
| Defendants. | |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 5:13-cv-02354-PSG   Document 486-1   Filed 05/22/25   Page 25 of 84845
Case 5:13-cv-02354-PSG   Document 489-21   Filed 05/22/25   Page 24 of 25
Page 24 of 64

# I.    INTRODUCTION

1.    Plaintiffs are prisoners in the custody of the Monterey County Sheriff's Office ("MCSO").

2.    Defendants are the County of Monterey, Monterey County Sheriff's Office and, California Forensic Medical Group, Incorporated ("CFMG").

3.    The Court has certified this case as a class action.  The class is defined as "all adult men and women who are now, or will be in the future, incarcerated in the Monterey County Jail."  The Court has also certified a sub-class of "all qualified individuals with a disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in the Monterey County Jail."

4.    The Court on April 14, 2015, entered a Preliminary Injunction.

5.    The purpose of this Settlement Agreement is to settle the above-captioned case.  The parties believe this agreement is fair, reasonable, and adequate to protect the interests of all parties.

6.    Defendants deny every allegation in each of the Complaints filed in this case. This Settlement Agreement does not constitute, and shall not be construed, as an admission of or evidence of any act of deliberate indifference to any inmate's constitutional rights, violation of 42 U.S.C. § 1983, violation of the ADA, violation of the U.S. Constitution, or any other wrongdoing or liability by any party.  The Defendants expressly deny any liability.  Defendants deny that any of their policies, procedures and/or practices subject inmates to a risk of harm or result in any deliberate indifference to inmates' safety, medical, mental health, dental, or accessibility needs  in violation of their state or federal constitutional rights, state or federal law, or the ADA and Rehabilitation Act. The parties agree that nothing in this Settlement Agreement shall be used against any Defendant in any other litigation that has been or may be filed against any Defendant.

7.    The Defendants state that prior to and since the initiation of this litigation, the County of Monterey and Monterey County Sheriff's Office ("Monterey Defendants")

and California Forensic Medical Group ("CFMG") had commenced significant initiatives to enhance the delivery of mental health services and medical care, improve the safety of the MCJ and improve jail and program accessibility, and the process has been ongoing throughout the course of the litigation.

8.    The parties will jointly file this Settlement Agreement with the Court, and ask that the Court issue an order directing notice to the class, setting an objection period, and a fairness hearing ("Preliminary Approval"), and that the Court approve it as final after the fairness hearing ("Final Approval").  Final Approval is a condition precedent to the Agreement's effectiveness, except as to the specific steps that the parties herein agree to perform after Preliminary Approval.

## II.    PRELIMINARY AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT

9.    By May 29, 2015, the parties shall jointly submit this Settlement Agreement to the Court for Preliminary Approval and with a proposed order for Preliminary Approval providing a schedule for notice, proposed notices of Preliminary Approval, objection period, and fairness hearing, and proposed notice of the final remedy for posting upon Final Approval under Rule 23(e) of the Federal Rules of Civil Procedure.  Concurrent with this filing the parties shall file a request to modify the dates mandated by the preliminary injunction.

## III.    DEFINITIONS

10.    "Substantial compliance" shall mean adherence to the requirements of the Settlement Agreement and the Implementation Plans in all material respects, recognizing that 100% compliance is not required.  Non-systemic deviations from the requirements of the Settlement Agreement and the Implementation Plans shall not prevent a finding of substantial compliance, provided that the Defendants demonstrate that they have (a) implemented a system for tracking compliance, where appropriate and practical, and for taking corrective measures in response to instances of non-compliance, and (b) that Defendants have instituted policies, procedures, practices, and resources that are capable of

1   durable and sustained compliance.  Substantial compliance shall be assessed by the

2   subject-area monitors and shall govern all requirements for the Settlement Agreement and

3   Implementation Plans.

4        11.     "Administrative Segregation" shall be defined as a classification or program

5   in which prisoners are removed from the general population and confined in a designated

6   unit to separate them from other prisoners.

7        12.     "MC":  County of Monterey.

8        13.     "MCSO":  Monterey County Sheriff's Office.

9        14.     "CFMG":  California Forensic Medical Group.

10       15.     "Day(s)":  Calendar days unless otherwise specified.

11       16.     "Facility" or "Jail":  Monterey County Jail.

12       17.     "Disability" and "Disabilities" shall be defined in the same manner as to

13  include all persons considered to have a disability under the Americans with Disabilities

14  Act, and/or the Rehabilitation Act.

15       18.     "Mediator" shall refer to the Honorable Nathanael Cousins.  The parties

16  consent to the jurisdiction of the Honorable Nathanael Cousins to serve in this capacity.

17       19.     "Prisoner(s)" shall be construed broadly to refer to one or more individuals

18  detained at, or otherwise housed, held, in the custody of, or confined at the Jail, or under

19  the custody of MCSO at another location, such as a hospital or other treatment facility. The

20  term "prisoner" shall not include those individuals who are on parole or probation and not

21  physically in the custody of the MCSO.  The term "prisoner" shall not include those

22  individuals who are detained during the process of investigation or arrest prior to booking

23  into jail. It shall also not include individuals participating in various pretrial release

24  programs.

25       20.     To "implement" a policy means that the policy has been drafted and

26  distributed to all staff responsible for following or applying the policy; and, if appropriate,

27  all relevant staff have been trained on the policy; compliance with the policy is monitored

28

1   and tracked, if practical, to assure the policy is consistently applied; and there are

2   corrective action measures to address lapses in application of the policy.

3       21.   "Qualified Medical Professional" means a currently licensed physician,

4   physician assistant, nurse practitioner, or registered nurse qualified to deliver those health

5   care services he or she has undertaken to provide.

6       22.   "Qualified Mental Health Professional" refers to an individual with training

7   in psychology, social work, psychiatric nursing, or marriage and family therapy, who is

8   currently licensed by the State of California to deliver those mental health services he or

9   she has undertaken to provide.

10       23.   A Psychiatrist is a licensed Medical Doctor who has completed an approved

11   residency in psychiatry and is either certified by the American Board of Psychiatry and

12   Neurology or is eligible to take the exam for board certification.

13       24.   "Staff members" or "staffing" includes all employees of MC or CFMG,

14   including correctional officers, who have contact with prisoners.

15       25.   "Medical Clearance" is a clinical assessment of physical and mental status

16   before an individual is admitted into the facility.  The medical clearance may come from

17   on-site health staff or may require sending the individual to the hospital emergency room.

18   The medical clearance is to be documented in writing.

19       26.   "Face-to-face interview" refers to an encounter between a clinician and

20   patient.  The encounter is typically in-person, but this term does not preclude the use of

21   telemedicine and/or tele-psychiatry services.

22       27.   "Initial Health Screening" is a face-to-face interview conducted by nursing

23   staff with the arriving individual that identifies immediate medical, mental health and/or

24   dental needs and provides for medication continuity.

25       28.   "Initial Health Assessment" is a medical, mental health, dental and

26   communicable diseases screening which includes a history and physical examination by

27   appropriate clinical staff.

28

[2695914-1]

Case 3:15-cv-02354-PSG Document 869-1 Filed 05/24/25 Page 15 of 49
Case 3:15-cv-02354-PSG Document 486-2 Filed 05/24/25 Page 28 of 25
Page 28 of 64

1      29.    "Mental Health Screening" is a face-to-face interview conducted by

2 Qualified Mental Health Professional using a standardized Mental Health Screening

3 questionnaire.

4      30.    "Psychological Evaluation" is a confidential face-to-face interview and file

5 review conducted by a QUALIFIED MENTAL HEALTH PROFESSIONAL or

6 PSYCHIATRIST, primarily for purposes of determining diagnosis, level of functioning,

7 and recommended level of care and course of treatment.

8 **IV.    SUBSTANTIVE PROVISIONS**

9      31.    The parties shall develop Implementation Plans in the following subject

10 areas for improvement of care, services, programs, and activities at the Jail.  The plans are

11 intended to ensure that the class is not exposed to substantial risks of serious harm, and

12 that the subclass is not subject to discrimination on account of disability.  These

13 Implementation Plans will be adopted as part of the Settlement Agreement.  The recitation

14 of subject matters to be addressed by the Implementation Plans is for purposes of

15 describing the scope of the Settlement Agreement and does not constitute an admission by

16 Defendants that existing policies and procedures are inadequate.

17      a.    Intake Screening.  Defendants will develop and implement an Intake

18 Screening Implementation Plan that specifies standards and timelines to ensure  that

19 arriving prisoners are promptly screened for urgent medical, mental health and dental

20 needs, with prompt follow-up and disability accommodations.  The standards and timelines

21 shall include Medical Clearance on arrival at the jail to determine whether the prisoner

22 must be excluded on medical or mental health grounds, Intake Health Screening on arrival

23 at the jail, and Initial Health Assessment within time frames determined by the conditions

24 and acuity found in the Intake Health Screening.  The Implementation Plan shall include a

25 mental health assessment tool to be used with all prisoners at intake to determine which

26 prisoners need Psychological or Psychiatric Evaluation and on what time frame.  The

27 Implementation Plan shall also include standards and timelines for Dental Evaluation. The

28 Intake Screening Implementation Plan shall provide for appropriate infectious disease

Case 5:13-cv-02354-BLF  Document 881-2  Filed 05/24/23  Page 7 of 25
Case 5:13-cv-02354-PSG  Document 489-1  Filed 03/22/15  Page 29 of 64
Page 29 of 64

screening and follow-up, including but not limited to screening for tuberculosis and
methicillin resistant staphylococcus aureus (MRSA).  The Intake Screening
Implementation Plan shall also provide for standards and timelines for medication
continuity either through outside verification or on-site physician medication order, Initial
Health Assessment for all incoming prisoners with chronic illnesses, Psychological
Evaluation for persons with signs of development disability, Psychological Evaluation for
persons with signs and/or histories of mental illness that meet certain thresholds, clinical
evaluation of persons in need of detoxification with clinical determinations for any use of
sobering, safety or isolation cells, use of a suicide risk assessment tool, with Psychological
Evaluation for those with positive findings on the suicide assessment.

b.     Infection Control

i.     Defendants' tuberculosis identification, control and treatment
program shall comply with the standards laid out in Prevention and Control of
Tuberculosis in Correctional and Detention Facilities: Recommendations from CDC (June
2006).

ii.     All inmates newly booked into the jail shall receive a timely
tuberculosis symptom screening administered by adequately trained health care staff (nurse
or higher level staff).

iii.     Defendants shall have a reliable system to track whether all
newly booked inmates have received tuberculosis screening and appropriate follow-up
testing and treatment.

c.     Detoxification

i.     Medical staff shall timely conduct the initial evaluation to
determine if an inmate is intoxicated and/or suffering from withdrawal or at high risk for
withdrawal.

ii.     The Health Care and Mental Health Implementation Plans shall
provide for necessary coordination between medical staff and custody regarding placement
of prisoners in a sobering cell, addressing the prisoner's medical and mental health needs,

1  custody's overall responsibility for safety and security of prisoners, prompt reviews by

2  medical of all placements, and a process of resolving disagreements between medical and

3  custody.

4          iii.     Medical providers shall be timely involved in assessing and

5  treating inmates potentially undergoing withdrawal, and non-provider medical staff shall

6  timely refer to providers those inmates undergoing withdrawals when clinically indicated.

7         d.     Safety Cells.  The Health Care and Mental Health Implementation

8  Plans shall provide for necessary coordination between medical staff and custody

9  regarding placement of prisoners in a safety cell, addressing the prisoner's medical and

10  mental health needs, custody's overall responsibility for safety and security of prisoners,

11  prompt reviews by medical of all placements, and a process of resolving disagreements

12  between medical and custody.

13         e.     Medication Continuity

14          i.     All inmates newly booked into the jail, who at the time of

15  booking are prescribed medications in the community, shall be timely continued on those

16  medications, or prescribed comparable appropriate medication, unless a medical provider

17  makes an appropriate clinical determination that medications are not necessary for

18  treatment.

19          ii.     Inmates who, at the time of booking, report to Defendants that

20  they are taking community-prescribed medications, but whose medications cannot be

21  verified by Defendants, shall be timely assessed by a medical provider and timely

22  prescribed medications necessary to treat their health needs.

23         f.     Custody Staffing

24          i.     Defendants will develop and implement a Custody Staffing

25  Implementation Plan to address inmate and staff safety and to address medical, mental

26  health, disability-related, and other required programs and services.

27          ii.     The Staffing Implementation Plan will include necessary posts

28  and functions to increase prisoners' access to out-of-cell activity, yard, education and other

1  in-house jail programs, including using programs necessary for milestone credit earning

2  under Cal. Penal Code § 4019 or any other applicable law.

3       iii. The Staffing Implementation Plan will identify all needed posts

4  and positions for custody staff members based on current and projected Jail population,

5  and the number and qualification of correctional staff to cover each post and position, with

6  shift relief.

7       iv. The Staffing Implementation Plan will ensure adequate

8  coverage to supervise each housing and specialized housing area, to escort prisoners for

9  court, for visits and legal visits, medical and mental health appointments, yard and other

10  operations of the Jail, and to respond to medical, mental health, security, and natural

11  disaster emergencies.

12      g. Clinical Staffing.  Defendants will develop and implement a Clinical

13  Staffing Implementation Plan to establish and maintain Qualified Medical Professional and

14  Qualified Mental Health Professional staffing at the Jail to ensure adequate staffing to

15  provide all necessary medical and mental health care, including intake, sick call, chronic

16  and emergency care, psychiatric therapy, medication management, records management,

17  and suicide prevention.  The plan will identify all needed positions based on current and

18  projected Jail population, and the number and qualifications of medical and mental health

19  care staff to cover each position, with shift relief.

20      h. Medical Care

21       i. Defendants shall develop and implement a Health Care

22  Implementation Plan to expand the provision of care for inmates with serious medical

23  and/or mental health needs and to ensure they receive timely treatment appropriate to the

24  acuity of their conditions.

25       ii. Defendants shall ensure timely access to necessary treatment

26  by Qualified Medical Professionals for prisoners with medical issues, including

27  appropriate medication practices, appropriate treatment, adequate clinical and

28  administrative treatment space, access to specialists and hospitalization, appropriate

Case 3:35-cv-0025352BPPL Document 489-1 Filed 05/22/25 Page 32 of 29853
Cases 13-cv-02354PPSC Document 489-2 Filed 09/14/15 Page 32 of 29
Page 32 of 64

1  emergency response, appropriate means for requesting medical attention in all levels of

2  custody including segregation, appropriate chronic care, appropriate follow up medical

3  attention for prisoners discharged from the hospital, and appropriate supervision of all

4  medical staff.

5       iii. Defendants shall ensure that appropriate and complete medical

6  records are maintained to ensure adequate treatment of prisoners' serious medical and

7  mental health needs.  Medical records shall include all records, results, and orders received

8  from off-site consultations and treatment conducted while the prisoner is in the Jail

9  custody.

10     i. Mental Health Care

11       i. Defendants shall develop and implement a Mental Health Care

12  Implementation Plan to more thoroughly ensure timely access to necessary treatment by

13  Qualified Mental Health Professionals for prisoners with mental illness, including

14  appropriate screening, detoxification and medication practices, appropriate therapies,

15  adequate clinical and administrative treatment space, access to hospitalization and

16  inpatient care, appropriate suicide prevention practices and policies, appropriate use of

17  seclusion, and appropriate disciplinary policies and practices regarding the mentally ill,

18  and appropriate training of corrections and mental health staff to recognize and treat

19  prisoners' mental illness.

20       ii. Defendants shall develop policies and procedures for the safe

21  and appropriate use of restraint chairs and similar means of physical restraint, including

22  but not limited to prompt clinical consultations, and observations.

23       iii. The Mental Health Implementation Plan shall require

24  classification to assess a totality of factors when assigning prisoners to administrative

25  segregation units.  It is the understood that the goal of Defendants is to limit the use of

26  administrative segregation for prisoners with serious mental illness.  The Mental Health

27  Implementation Plan shall require placement screening of all prisoners for mental illness

28  and suicidality before or promptly after they are housed  in administrative segregation, and

Case 3:15-cv-00402-TBR-JPC Document 489-2 Filed 05/22/25 Page 26 of 39854
Case 3:13-cv-02354-PSC Document 489-2 Filed 09/14/15 Page 126 of 29
Page 33 of 64

1    require procedures to mitigate the impact of administrative segregation on persons with

2    mental illness, including but not limited to structured therapeutic activity outside the

3    segregation cell and where feasible assignment of cell mates.

4                          iv.    The Mental Health Implementation Plan shall address suicide

5    watch and suicide precaution procedures to ensure that prisoners in crisis are not placed in

6    punitive and/or unsanitary conditions.

7                          v.    Defendants shall remove hanging points and other hazards in

8    jail administrative segregation cells that pose an unreasonable risk of being used by

9    inmates to harm themselves or attempt suicide.  While it is recognized that it is impossible

10   to suicide proof a jail, Defendants will in good faith work with a consultant to develop and

11   implement a plan to reduce hanging points and other suicide hazards in the jail

12   administrative segregation cells.

13                         vi.    The Implementation Plans shall address standards for health

14   and safety checks of all inmates housed in segregation cells  at irregular intervals with the

15   specific frequency of checks to be addressed in the Plans to address the needs of particular

16   classifications of inmates.

17                         vii.    Nursing staff shall conduct daily mental health rounds in

18   segregation.

19              j.    Dental Care:  Defendants shall develop and implement a Dental Care

20   Implementation Plan to ensure timely access to necessary treatment for dental and oral

21   health conditions, including but not limited to Intake Screening, access to care other than

22   extractions, a safe and sanitary on or off-site facility for necessary dental care, periodic

23   dental care for long-term prisoners, and access to dental hygiene supplies.

24              k.    Safety

25                         i.    Defendants shall develop and implement a Violence Reduction

26   Implementation Plan to provide prisoners with a safe and secure environment and intended

27   to ensure reasonable safety from harm.  Defendants shall take all reasonable measures to

28   improve inmate and custodial staff safety.  The Implementation Plan shall ensure that

Case 5:13-cv-02354-BLF Document 489-1 Filed 05/22/23 Page 226 of 855
Case 5:13-cv-02354-PSG Document 489-2 Filed 09/14/15 Page 226 of 29
Page 34 of 64

1  during the course of incarceration, prisoners are not subjected to unnecessary or excessive

2  force by Staff and are reasonably protected from violence by other prisoners.

3        ii.    Defendants' plan shall include physical and structural issues to

4  improve safety and security, which may include camera installation.  Defendants' plan

5  shall, to the extent possible, prioritize the use of evidence-based policies, including but not

6  limited to increasing Work Alternative Program limits, Involuntary Home Detention, Pre-

7  trial Release though Probation, a revised Own Recognizance (OR) eligibility policy,

8  Choices/Liberty Pride (or equivalent programs) educational early release kickouts, Penal

9  Code 4018.1 and 4014.1 kickouts.  The parties recognize that pre-trial release, diversion,

10  split sentencing, the use of home and GPS monitoring are also available and beneficial,

11  and should be tracked, but are dependent on the discretion of the Monterey County

12  Superior Court and District Attorney.

13        l.    Prisoners with Disabilities

14        i.    Defendants shall develop and implement an ADA

15  Implementation Plan to improve accessibility to inmate programs and services.  The

16  Implementation Plan will ensure that prisoners with disabilities are not discriminated

17  against and are not denied the benefits of, or participation in, programs, services, and

18  activities at the Jail.

19        ii.    Defendants shall design and implement a system for

20  identifying and tracking all inmates who are qualified individuals with disabilities, as that

21  term is defined by the ADA and its implementing regulations, including but not limited to

22  inmates with mobility impairments or who are deaf, hard of hearing or unable to speak.

23  Defendants shall also design and implement a system for identifying and tracking the

24  reasonable accommodations necessary for qualified inmates with disabilities to participate

25  in programs, services and activities offered by Defendants at the Jail.

26        iii.    Prisoners' requests for a particular type of accommodation

27  shall be given primary consideration and shall be granted unless the request is

28

Case 8:25-cv-00825-TBPL Document 189-1 Filed 05/22/25 Page 36 of 39856
Case 5:13-cv-02354-PSG Document 489-2 Filed 09/14/15 Page 36 of 29
Page 35 of 64

1  unreasonable for specific articulated reasons allowable under Title II of the ADA or pose a

2  significant safety or security threat.

3          iv.    Defendants shall furnish qualified sign language interpreters to

4  any inmates for whom sign language is their only or primary method of communication, in

5  all circumstances where a qualified sign language interpreter is necessary to ensure an

6  inmate has an equal opportunity to participate in, and enjoy the benefits of, programs,

7  services and activities offered by Defendants. The interactions for which Defendants must

8  furnish qualified sign language interpreters include but are not limited to the intake

9  process, at classification hearings, disciplinary hearings, all medical, mental health and

10  dental treatment, religious services, educational classes such as Choices and Pride classes

11  or the equivalent, Narcotics and Alcoholics Anonymous meetings or the equivalent, and

12  any other interactions with staff that implicate an inmates' due process rights.  Defendants

13  may employ alternatives to a live sign language interpreter such as video remote

14  interpreting providing that Defendants demonstrate to the ADA monitor the efficacy of the

15  alternatives employed.  Defendants need not maintain a full-time staff sign language

16  interpreter, but may use on-call services.

17          v.    Defendants shall implement a system to document that

18  Defendants have provided qualified sign language interpreters or reasonable alternatives to

19  inmates who need them and that the inmates have understood the information conveyed by

20  the qualified sign language interpreter or alternative form of communication as outlined in

21  Paragraph iv above.

22          vi.    The County Defendants shall offer inmates with ambulatory

23  disabilities all programs, services and activities offered to other inmates, including but not

24  limited to outdoor exercise, religious services, education programs such as Choices and

25  Pride classes or the equivalent, and Narcotics and Alcoholics Anonymous meetings or the

26  equivalent, in locations that do not require them to climb stairs in order to access the

27  programs, services and activities, as long as those programs, services and activities are

28  offered to the general population.

Case 8:25-cv-00258-TBPP-DL   Document 489-1   Filed 05/22/25   Page 36 of 39857
Case 3:13-cv-02354-PSG   Document 489-2   Filed 09/14/15   Page 36 of 64
Page 36 of 64

32.     The Implementation Plans outlined in this Settlement Agreement shall not extend to subject areas beyond what is addressed in Section IV of this Agreement.

33.     The parties agree to begin work on development of the Implementation Plans immediately, without awaiting Final Approval of the class action settlement.  If the parties agree on all aspects of the Implementation Plans, the settlement agreement will be amended to incorporate the plans.

    a.     No later than July 30, 2015, Defendants shall submit to Plaintiffs the plans identified in the Order Granting Motion for Preliminary Injunction (Docket No. 460, at 42-43.)  No later than 10 days thereafter, Plaintiffs shall respond with specific comments or objections if any.  The parties shall meet and confer to resolve all disputed items within 30 days thereafter.  Any unresolved items shall be submitted to the agreed upon mediator.  If the parties are still unable to agree to the content of the plans, the parties shall seek redress with the Court.

    b.     No later than October 15, 2015, the parties shall have completed meeting and conferring concerning the Implementation Plans.  At that time, if there are any unresolved issues, the parties agree to submit the unresolved issues to the agreed upon mediator.  If the parties are still unable to agree to the content of the Implementation Plans, the parties shall seek redress with the Court.  The parties shall jointly file all Implementation Plans with the Court, requesting that the Court approve the plans as an amendment to the Settlement Agreement.

34.     All provisions of the Implementation Plans will be enforceable by the Court, as part of the Settlement Agreement.

## V.     MONITORING

35.     The parties agree that expert monitors will be retained to monitor Defendants' compliance with this Settlement Agreement and the Implementation Plans in the following subject areas:

    a.     ADA Compliance.

    b.     Mental health care.

Case 8:25-cv-00402-TBM DB Document 489-2 Filed 05/22/25 Page 36 of 39858
Case 5:19-cv-02354-PSG Document 489-2 Filed 09/14/15 Page 36 of 29
Page 37 of 64

     c.     Medical care.

     d.     General conditions of confinement and jail security.

     e.     Dental care.

36.     The parties shall meet and confer on the process for selecting monitors. If no monitors are selected by Oct. 1, 2015, the parties shall submit lists of names to the mediator for selection.

37.     If any of the monitors become unavailable to monitor their respective areas, the parties will meet and confer, and assign a new expert to monitor compliance with this Settlement Agreement and the Implementation Plans for their respective areas of expertise. The parties may agree at any time to remove and replace a monitor.

38.     Defendants shall pay the fees and costs incurred by the designated monitors and their staff. Invoices will be provided to all parties for their review before payment. There will be a yearly budget negotiated with each designated monitor. If any monitor exceeds the budget for fees or costs without prior approval, he or she may be removed and replaced through the process described in Paragraph 36 above. If the parties do not agree on removal, either party may refer the matter to the mediator, and if necessary to the Court to determine whether the monitor should be retained or removed.

39.     The designated monitors shall have access to all jail facilities upon reasonable notice, to assess substantial compliance with this Settlement Agreement, and the incorporated Implementation Plans. All site visits shall take place on consecutive days. There shall be no more than two (2) site visits in each year, per monitor, that the Settlement Agreement is in effect. These visits may take up to two (2) days each.

40.     The designated monitors shall have access to meet and interview personnel whose duties pertain to the provision of services and/or who work with inmates in the area of the expert's expertise.

     a.     The designated monitors shall have a reasonable opportunity to conduct confidential interviews of inmates to assess whether Defendants are in compliance with the terms of the Settlement Agreement and Implementation Plans.

Case 3:35-cv-36040025TBPSL Document 489 1 Filed 05/22/13/25 Page 26 of 39859
Cases:19-cv-02354-PSG Document489-2 Filed 09/14/15/25 Page 13 of 29
Page 38 of 64

1           b.      The designated monitors may request to review County or CFMG

2 documents, except those documents protected by attorney-client or work product

3 privileges, or by state or federal law, to monitor Defendants' compliance with the terms of

4 this Settlement Agreement and all Implementation Plans. If these documents are requested

5 in conjunction with a site visit, Defendants will provide these documents to the extent

6 feasible within ten (10) days prior to the visit.

7           c.      During the site visits, the designated medical, mental health and

8 dental monitors shall have reasonable access to current inmate health records, including

9 mental health records, consistent with Defendants' obligations under Federal and State

10 law, as those obligations have been modified by Court order.

11           d.      Monitors shall be provided with and agree to be bound by any

12 protective or Court orders entered in this case to protect the confidentiality of prisoner

13 records and security sensitive information.

14           e.      The designated monitor will prepare a draft written report on the

15 Defendants' efforts to meet the terms of this Settlement Agreement and all Implementation

16 Plans at least twice a year and within 30 days of the later of the monitor's site inspection

17 and the monitor's receipt of all requested documents and information, and in no case later

18 than 45 days after the inspection. Each report shall contain a determination of whether

19 Defendants are "substantially complying" with the applicable Implementation Plan. The

20 draft report will be delivered to all parties to this Agreement. If the designated monitor

21 concludes that Defendants have not substantially complied with the terms of any provision

22 or provisions of the Settlement Agreement and Implementation plans, the designated

23 monitor shall make recommendations as to actions they believe to be necessary to

24 substantially comply with the terms of the provision or provisions. The parties will have

25 30 days to provide written comments, objections or to cure issues and 7 days to reply. The

26 monitor may re-inspect before issuing a final report. Final reports shall be due 20 days

27 after the later of the monitor's receipt of any comments, objections or replies, or any re-

28 inspection.

Case 5:13-cv-02354-BLF Document 489-2 Filed 05/22/25 Page 27 of 39860
Case 5:13-cv-02354-BLF Document 489-1 Filed 09/14/15 Page 39 of 123
Page 39 of 64

41.     Plaintiffs are entitled to conduct reasonable monitoring of Defendants' compliance with this Agreement, including the right to inspect the jail, interview staff and inmates, review relevant records and observe practices related to Defendants' compliance with the provisions of this Agreement.  Plaintiffs' routine monitoring will not exceed four (4) inspections of not more than one day per inspection of Jail operations per year, limited to no more than one attorney and one expert per inspection.  Defense counsel reserves the right to be present for any inspections and/or staff interviews.  The parties shall develop a monthly report for the purposes of monitoring and tracking performance under the Implementation Plans.  Plaintiffs shall use the Office of the Public Defender for monitoring as appropriate.  The parties shall meet and confer regarding any disputes regarding the scope and extent of inspections or access to information, and if necessary, shall seek the involvement of the mediator.

42.     Defendants will notify Plaintiffs at least 30 days in advance of any scheduled training sessions related to substantial compliance with this Settlement Agreement and/or the Implementation Plans, and shall provide Plaintiffs with all training materials at least 10 days in advance of the training.

43.     The parties shall agree on a mechanism for promptly addressing concerns raised by Plaintiffs' counsel regarding individual class members and emergencies.  Before contacting Defendants, Plaintiffs' counsel will make every effort to verify that the concerns of individual class members are accurate, substantive and not frivolous, such as having the Office of the Public Defender meet with the individual class members. The parties agree that Defendants may appeal to the Court for modification of this paragraph should a significant number of concerns raised by Plaintiffs' counsel be found to be inaccurate, lacking substantive, or frivolous.

## VI.    RESERVATION OF JURISDICTION AND ENFORCEMENT

44.     The parties consent to the reservation and exercise of jurisdiction by the District Court over all disputes between and among the parties arising out of this

Case 3:25-cv-04339-PBL Document 469-1 Filed 05/22/25 Page 40 of 29861
Case 3:19-cv-02354-PBL Document 469-2 Filed 09/14/19 Page 40 of 29
Page 40 of 64

Settlement Agreement.  The parties agree this Settlement Agreement shall not be construed as a consent decree.

45.     For the purposes of jurisdiction and enforcement of this Settlement Agreement only, the parties jointly request the Court find that this Settlement Agreement satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that it is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right of the Plaintiffs. In the event the Court finds that Defendants have not substantially complied with the Agreement, it shall in the first instance require Defendants to submit a plan for approval by the Court to remedy the deficiencies identified by the Court. In the event the Court subsequently determines that the Defendants' plan did not remedy the deficiencies, the Court shall retain the power to enforce this Agreement through all remedies provided by law, excluding the imposition of a consent decree.

46.     The Court shall retain jurisdiction to enforce the terms of this Settlement Agreement and, once they are approved, the Implementation Plans for a period of five years, unless Plaintiffs' counsel can demonstrate to the Court through noticed motion that jurisdiction should be retained for a longer period.  The Court shall have the power to enforce the terms of this Settlement Agreement through specific performance and all other remedies permitted by law or equity, excluding the imposition of a Consent Decree.

47.     The Court shall be the sole forum for the enforcement of this Settlement Agreement.  Any order to achieve substantial compliance with the provisions of this Settlement Agreement shall be subject to the applicable provisions of the Prison Litigation Reform Act, 18 U.S.C. Section 3626.

48.     If Plaintiffs' counsel believes that Defendants are not substantially complying with any of the acts required by this Settlement Agreement or the Implementation Plans, they shall notify Defendants in writing of the facts supporting their belief.  Defendants shall investigate the allegations and respond in writing within 30 days. If Plaintiffs' counsel are not satisfied with Defendants' response, the parties shall conduct

Case 5:05-cv-02954-PSG   Document 489-1   Filed 05/22/15   Page 41 of 64
Case 3:05-cv-02954-PSG   Document 489-1   Filed 09/14/15   Page 41 of 64
Page 41 of 64

negotiations to resolve the issue(s).  If the parties are unable to resolve the issue(s) satisfactorily, the parties agree to present the issue(s) to the agreed upon mediator.  If the parties are still unable to resolve the issue(s), either party may move the Court for any relief permitted by law or equity.  In cases of particular urgency that are central to the purpose of the Settlement Agreement, a party may opt to bring disputes directly to the District Court, or both parties may consent to bypass the use of the mediator if the parties agree the issue should be briefed to the Court with prior notice to the mediator.

49.     This Settlement Agreement may be enforced only by the parties hereto. Nothing contained in this Settlement Agreement is intended or shall be construed to evidence of an intention to confer any rights or remedies upon any person other than the parties hereto.

## VII.   TERMINATION

50.     The parties or any party may agree or request a finding that Defendants are in substantial compliance with a particular Implementation Plan or any material part thereof and have maintained substantial compliance for a period of twelve months.  [*See* definitions and monitoring sections.]  Such a finding will result in a reduction or suspension of monitoring of that issue.  If Plaintiffs present evidence that Defendants are no longer in substantial compliance with requirements previously found in substantial compliance, the Court may order additional relief including but not limited to reinstating full monitoring.

51.     If at any time, the Court finds that Defendants are in substantial compliance with all requirements of this Settlement Agreement and all Implementation Plans, Defendants may move the Court for an order terminating the Settlement Agreement.

52.     The parties intend to work in good faith to achieve substantial compliance with all requirements of this Settlement Agreement and all Implementation Plans within five (5) years from Court approval of the Settlement Agreement and Implementation Plans. If Plaintiffs believe that the Defendants are not in substantial compliance at the end of five (5) years from Court approval of the Implementation Plans, Plaintiffs may move for an

Case 8:25-cv-00825-TPB-DL Document 489-1 Filed 05/22/25 Page 36 of 49863
Case 5:13-cv-02354-PSG Document 489-2 Filed 09/14/15 Page 42 of 29
Page 42 of 64

1 order extending jurisdiction over the Settlement Agreement. In order to extend

2 jurisdiction, the Plaintiffs must establish and the Court must determine that Defendants are

3 not in substantial compliance. Unless jurisdiction is extended by the Court, the Settlement

4 Agreement shall terminate five (5) years from Court approval of the Settlement Agreement

5 and Implementation Plans. Nothing in this paragraph shall limit the parties' rights to

6 challenge or appeal any finding as to whether Defendants are not in substantial compliance

7 with the Settlement Agreement and all Implementation Plans, or consequent order entered

8 by the Court.

9 **VIII. AMENDMENTS**

10    53.    By mutual agreement, the parties may change the terms of this Settlement

11 Agreement, including, but not limited to, the timetables for taking specific actions,

12 provided that such mutual agreement is memorialized in writing, signed by the parties and

13 approved by the Court.

14    54.    Defendants shall not make any changes to any policy provision

15 implementing the provisions of this Settlement Agreement and Implementation Plans

16 without providing Plaintiffs a written draft of such policy or policies, for their review and

17 comment.

18    55.    Without prior agreement of the parties, Defendants may not amend any

19 policy provision to conflict with the terms of this Settlement Agreement while the

20 Settlement Agreement remains in effect.

21    56.    Defendants shall not approve any changes to a policy maintained by its

22 health care provider that conflicts with the terms of this Settlement Agreement and

23 Implementation Plans.

24 **IX.    FUNDING**

25    57.    The parties acknowledge that implementation of this Settlement Agreement

26 and the Implementation Plans are subject to the availability and receipt of appropriated

27 funds.

28

Case 3:25-cv-02356-PSG   Document 489   Filed 05/22/25   Page 43 of 64
Case 3:13-cv-02354-PSG   Document 489-2   Filed 09/14/15   Page 43 of 64
Page 43 of 64

58.     The parties further acknowledge that the lack of funding does not preclude the Court from entering any order to achieve compliance with this Settlement Agreement that comports with the applicable provisions of the Prison Litigation Reform Act, 18 U.S.C. Section 3626 and with other applicable law, provided that Defendants reserve the right to assert that the lack of funding should be taken into account in any remedial order.

59.     Defendants agree to make all possible good faith efforts to seek all necessary funding to implement this Settlement Agreement and all Implementation Plans. In the event that the parties are unable to agree as to whether there is sufficient funding to implement fully this Settlement Agreement and Implementation Plans, the parties shall meet and confer, and if necessary, consult the Court.  In the event that the parties continue to be unable to agree, either Defendants or Plaintiffs may seek the assistance of the Court and if necessary consult the mediator.

## X.     ATTORNEY'S FEES AND EXPENSES

60.     Attorney's fees and expenses shall be addressed as follows.

61.     Plaintiffs shall provide the Court and Defendants with a fees application including the supporting materials provided by Civil L.R. 54-5.

62.     Fees and expenses through Final Approval of Settlement Agreement, including approval of all Implementation Plans:  Plaintiffs agree not to seek fees and expenses from the Court in an amount above $4.8 million, for fees and expenses incurred through Final Approval of the Settlement Agreement, including approval of all Implementation Plans. Defendants agree not to object to plaintiffs' petition for fees and expenses up that amount.  The parties acknowledge that Court approval of the fees and expenses is required.

63.     Fees and expenses after Final Approval of Settlement Agreement: Plaintiffs may petition the Court for an award of no more than $250,000 per year in fees and expenses arising from monitoring work, inspections, negotiations, meet and confer processes, mediation, review of documents, and correspondence with class members, until termination of Court enforcement.  The parties contemplate that Plaintiffs will use the

Case 8:25-cv-00402-TJH-PVC Document 48-2 Filed 05/22/25 Page 36 of 39 Page ID #:40865
Case 8:15-cv-02354-PSG Document 489-1 Filed 09/14/15 Page 236 of 29
Page 44 of 64

1   services of the Public Defender as part of this post-settlement monitoring and enforcement.

2   In any petition to the Court for fees and expenses, the Court should consider the efficiency

3   of the services rendered, including how Plaintiffs' counsel allocated services among the

4   different private counsel and the Public Defender.  The $250,000 annual cap does not

5   apply to (1) Plaintiffs' motions to enforce the Settlement Agreement and Implementation

6   Plans; and (2) Plaintiffs' opposition to any motions filed by defendant(s) arising out of the

7   Settlement Agreement and Implementation Plans.  The standard for Plaintiffs' eligibility

8   for fees and expenses arising from Plaintiffs' motions to the Court shall be that no fees and

9   expenses shall be awarded unless the Court finds (1) that the motion or opposition was

10  necessary to enforce substantial rights of the class under the Eighth Amendment and

11  Fourteenth Amendments to the United States Constitution, Article I,  Sections 7 and 17 of

12  California Constitution, the Americans with Disabilities Act, Rehabilitation Act, or

13  California Government Code § 11135; and, (2) that Plaintiffs attempted to resolve the

14  matter and/or narrow the issues as much as possible by meeting and conferring with

15  Defendants, taking full opportunity of recourse to the mediator before presenting the issues

16  to the Court.  Defendants shall be eligible for an award of fees and costs from plaintiffs'

17  private counsel, and Plaintiffs shall receive none, in the event that the Court finds that

18  Plaintiffs' motion was frivolous, unreasonable or groundless, or that Plaintiffs continued to

19  litigate it after it clearly became so.  Furthermore, Plaintiffs agree that they may not seek

20  more than $150,000 each year in fees and expenses on motions to enforce the Settlement

21  Agreement.

22      64.     If the Court determines that any enforcement motion is filed or opposed in

23  bad faith, it may award sanctions in the form of attorneys' fees and expenses, among other

24  remedies. The caps in Paragraph 63 do not apply to enforcement motions opposed in bad

25  faith by Defendants.

26      65.     The parties commit to work together in good faith to resolve any future

27  disputes over fees and expenses.  They agree to confer, and mediate, before presenting a

28  fee dispute motion to the Court.

Case 3:15-cv-09040-STBPBL Document 1869-1 Filed 05/22/21/25 Page 45 of 40866
Case 5:13-cv-02354-PSC Document 489-2 Filed 09/14/15 Page 236 of 23
Page 45 of 64

## XI.  MISCELLANEOUS PROVISIONS

66.     Plaintiffs agree that if the Court does not grant Final Approval of this Settlement Agreement, then Defendants reserve their right to appeal the preliminary injunction entered in this case.

67.     The parties agree to issue a joint press release announcing the settlement.

68.     This Agreement constitutes the entire agreement among the parties as to all claims raised by Plaintiffs in this action, and supersedes all prior agreements, representations, statements, promises, and understandings, whether oral or written, express or implied, with respect to this Agreement. Each Party represents, warranties and covenants that it has the full legal authority necessary to enter into this Agreement and to perform the duties and obligations arising under this Agreement.  The County Defendant shall be the last signatory to this agreement.  This agreement may be signed in counterparts and a copy shall be as good as an original and may be introduced as evidence.

69.     This is an integrated agreement and may not be altered or modified, except by a writing signed by all representatives of all parties at the time of modification.

70.     This Agreement shall be binding on all successors, assignees, employees, agents, and all others working for or on behalf of Defendants and Plaintiffs.

DATED:
May 7 2015

ROSEN BIEN GALVAN & GRUNFELD, LLP

By: _____

Michael W. Bien

DATED:

OFFICE OF THE PUBLIC DEFENDER
COUNTY OF MONTEREY

By: _____

James Egar, Public Defender
Donald Landis, Assistant Public Defender

## XI.   MISCELLANEOUS PROVISIONS

66.   Plaintiffs agree that if the Court does not grant Final Approval of this Settlement Agreement, then Defendants reserve their right to appeal the preliminary injunction entered in this case.

67.   The parties agree to issue a joint press release announcing the settlement.

68.   This Agreement constitutes the entire agreement among the parties as to all claims raised by Plaintiffs in this action, and supersedes all prior agreements, representations, statements, promises, and understandings, whether oral or written, express or implied, with respect to this Agreement. Each Party represents, warranties and covenants that it has the full legal authority necessary to enter into this Agreement and to perform the duties and obligations arising under this Agreement. The County Defendant shall be the last signatory to this agreement. This agreement may be signed in counterparts and a copy shall be as good as an original and may be introduced as evidence.

69.   This is an integrated agreement and may not be altered or modified, except by a writing signed by all representatives of all parties at the time of modification.

70.   This Agreement shall be binding on all successors, assignees, employees, agents, and all others working for or on behalf of Defendants and Plaintiffs.

DATED:                                                    ROSEN BIEN GALVAN & GRUNFELD LLP

By: _____
    Michael W. Bien

DATED: 5/7/15                                     OFFICE OF THE PUBLIC DEFENDER
                                                  COUNTY OF MONTEREY

By: _____
    James Egar, Public Defender
    Donald Landis, Assistant Public Defender

Case 3:05-cv-02354-PSG   Document 186-2   Filed 05/22/15   Page 36 of 49868
Case 3:13-cv-02354-PSG   Document 189-1   Filed 05/14/15   Page 36 of 49868
Page 47 of 64

1   DATED:                              AMERICAN CIVIL LIBERTIES UNION
2                                       FOUNDATION OF NORTHERN CALIFORNIA

3                                       By: _____
                                            Alan Schlosser
4

5   DATED:                              ACLU NATIONAL PRISON PROJECT

6                                       By: _____
                                            Eric Balaban
7
                                        Attorneys for Plaintiffs
8

9   DATED:                              COUNTY OF MONTEREY
10  5/7/15
                                        By: _____
11                                          Simon Salinas

12                                      Chair of the Board of Supervisors

13  DATED:                              CALIFORNIA FORENSIC MEDICAL GROUP
14
                                        By: _____
15

16

17  Approved as to Form:
18
    DATED: 5/7/15                       OFFICE OF THE COUNTY COUNSEL
19                                       COUNTY OF MONTEREY

20                                      By: _____
21                                          Charles J. McKee
                                            County Counsel
22
                                        Attorneys for Defendants
23                                      COUNTY OF MONTEREY and MONTEREY
                                        COUNTY SHERIFF'S OFFICE
24

25

26

27

28

Case 5:13-cv-02354-BLF   Document 489-2   Filed 05/22/25   Page 36 of 869
Case 5:13-cv-02354-PSG   Document 489-2   Filed 05/14/15   Page 49 of 23
Page 48 of 64

1 | DATED:                AMERICAN CIVIL LIBERTIES UNION
2 | 5/7/15                FOUNDATION OF NORTHERN CALIFORNIA
3 |                       By: _____
4 |                           Alan Schlosser
5 | DATED:                ACLU NATIONAL PRISON PROJECT
6 |                       By: _____
7 |                           Eric Balaban
8 |                       Attorneys for Plaintiffs
9 | DATED:                COUNTY OF MONTEREY
10 |                      By: _____
11 |                          Simon Salinas
12 |                      Chair of the Board of Supervisors
13 | DATED:               CALIFORNIA FORENSIC MEDICAL GROUP
14 |                      By: _____
15 |
16 |
17 | Approved as to Form:
18 | DATED:               OFFICE OF THE COUNTY COUNSEL
19 |                      COUNTY OF MONTEREY
20 |                      By: _____
21 |                          Susan K. Blitch
22 |                          Senior Deputy County Counsel
23 |                      Attorneys for Defendants
     |                      COUNTY OF MONTEREY and MONTEREY
24 |                      COUNTY SHERIFF'S OFFICE
25 |
26 |
27 |
28 |

Case 5:13-cv-02354-BLF Document 869-2 Filed 05/22/25 Page 37 of 39870
Case 5:13-cv-02354-PSG Document 489-2 Filed 09/14/15 Page 50 of 64
Page 49 of 64

1  DATED:                      AMERICAN CIVIL LIBERTIES UNION

2                                    FOUNDATION OF NORTHERN CALIFORNIA

3                                      By: _____

4                                           Alan Schlosser

5  DATED: May 7, 2015         ACLU NATIONAL PRISON PROJECT

6                                      By: _____

7                                           Eric Balaban

8                                           Attorneys for Plaintiffs

9  DATED:                      COUNTY OF MONTEREY

10                                      By: _____

11                                           Simon Salinas

12                                           Chair of the Board of Supervisors

13  DATED:                      CALIFORNIA FORENSIC MEDICAL GROUP

14                                      By: _____

15

16

17  Approved as to Form:

18  DATED:                      OFFICE OF THE COUNTY COUNSEL

19                                      COUNTY OF MONTEREY

20                                      By: _____

21                                           Susan K. Blitch

22                                           Senior Deputy County Counsel

23                                     Attorneys for Defendants

24                                     COUNTY OF MONTEREY and MONTEREY
                                   COUNTY SHERIFF'S OFFICE

25

26

27

28

May Case 5:13-cv-02354-BLF Document 489-2 Filed 05/22/25 Page 30 of 71   1/   1
Case 5:13-cv-02354-PSG Document 489-2 Filed 09/14/15 Page 50 of 64
Page 50 of 64

1  DATED:                          AMERICAN CIVIL LIBERTIES UNION
                                   FOUNDATION OF NORTHERN CALIFORNIA
2

3                                  By: _____
                                       Alan Schlosser
4

5  DATED:                          ACLU NATIONAL PRISON PROJECT

6                                  By: _____
                                       Eric Balaban
7
                                   Attorneys for Plaintiffs
8

9  DATED:                          COUNTY OF MONTEREY

10                                 By: _____
                                       Simon Salinas
11
                                   Chair of the Board of Supervisors
12

13 DATED:                          CALIFORNIA FORENSIC MEDICAL GROUP

14                                 By: _____
15                                     Raymond Herr, M.D.

16

17 Approved as to Form:

18 DATED:                          OFFICE OF THE COUNTY COUNSEL
                                   COUNTY OF MONTEREY
19

20                                 By: _____
                                       Charles J. McKee
21                                     County Counsel

22                                 Attorneys for Defendants
                                   COUNTY OF MONTEREY and MONTEREY
23                                 COUNTY SHERIFF'S OFFICE

24

25

26

27

28

Ex. C - 45

Case 3:05-cv-00400-TBPDL  Document 489-1  Filed 05/22/15  Page 30 of 30872
Case 3:13-cv-02354-PSG  Document 489-2  Filed 09/14/15  Page 236 of 23
Page 51 of 64

DATED: 5 · 11 · 2015          BERTLING & CLAUSEN, L.L.P.

By: *Peter G. Bertling*
_____
Peter G. Bertling

Attorneys for Defendant
CALIFORNIA FORENSIC MEDICAL GROUP,
INCORPORATED

13-2354 PSG

**Ex. C - 46**

[2695914-1]

# EXHIBIT D

1   DONALD SPECTER (SBN 83925)
    SARA NORMAN (SBN 189536)
2   CORENE T. KENDRICK (SBN 226642)
    PRISON LAW OFFICE
3   1917 Fifth Street
    Berkeley, California 94710
4   Telephone: (510) 280-2621
    Fax: (510) 280-2704
5   dspecter@prisonlaw.com
    snorman@prisonlaw.com
6   ckendrick@prisonlaw.com

7   Attorneys for Plaintiffs, *on behalf of*
    *themselves and others similarly situated*
8

9              UNITED STATES DISTRICT COURT

10        FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  GABRIEL YOUNG, EDDIE WILLIAMS,        Case No. 3:20-cv-6848-NC
    AND GALE YOUNG,
13                                        **CLASS ACTION**

14  on behalf of themselves and all others **JOINT MOTION FOR PRELIMINARY**
    similarly situated,                  **APPROVAL OF CONSENT DECREE**
15                                        **AND NOTICE TO CLASS**
           Plaintiffs,
16                                        Date:   Oct. 21, 2020
    v.                                    Time:   1:00 pm
17                                        Judge: Hon. Nathanael Cousins
    COUNTY OF CONTRA COSTA,
18                                        Complaint Filed: September 30, 2020
           Defendant.
19

20

21

22

23

24

25

26

27

28

## I.  INTRODUCTION

After engaging in more than three years of structured negotiations informed by the findings of four joint subject matter experts, the parties have entered into a Consent Decree to settle the claims for injunctive relief in this case concerning the conditions of confinement in Contra Costa County's detention facilities, specifically the Martinez Detention Facility and the West County Detention Facility as well as any future facility housing adult detainees.  The parties now jointly seek preliminary approval of the Consent Decree.  Additionally, the parties seek an order approving notice to the class of a fairness hearing concerning the Consent Decree, and setting a schedule for the fairness hearing.

The Court should grant preliminary approval of the Consent Decree because it is the product of arm's-length, serious, informed, and non-collusive negotiations between actively-engaged, experienced, and knowledgeable counsel.  Additionally, the parties' proposed notice and schedule for a fairness hearing will allow an adequate opportunity for class members to review and comment on the Consent Decree, and is consistent with the parties' desire for prompt implementation of the terms of the Consent Decree.

## II. BACKGROUND

In 2016, the Prison Law Office began a detailed investigation into the conditions in Contra Costa County jails.  In August 2016, the Prison Law Office sent the Contra Costa County ("the County") Sheriff's Office and County Counsel a demand letter outlining the deficiencies it had identified in the delivery of health care, accommodations for people with disabilities, and the overuse of, and conditions of, administrative segregation.  In March 2017, the parties entered into a structured negotiation agreement ("SNA") as an alternative to imminent litigation.  *See* Declaration of Donald Specter ("Specter Decl.") Ex. A.

The parties agreed in the SNA to work toward a settlement to address the conditions of confinement in the jails.  The parties further agreed that the County would retain independent subject matter experts to assess medical care, mental health care, and the classification system within the County's jail system.  The experts were asked to "identify

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CONSENT DECREE AND NOTICE TO CLASS**

**Ex. D - 49**

deficiencies, if any, that they believe pose a substantial risk of serious harm to inmates confined within the detention facilities," and where applicable, to "make recommendations for improvement." *Id.* Ex. A at 2. The four experts, and the subject matters of their respective assessments of the jails, were as follows: Dr. Roberta Stellman, M.D. (mental health care); Dr. Esmaeil Porsa, M.D. (medical care); Mr. Lindsay M. Hayes (suicide prevention practices); Dr. James Austin, Ph.D. (jail classification system). *See Id.* ¶ 5.

Using the experts' reports and following a thorough and sustained arm's-length negotiation process, the parties developed Remedial Plans addressing the concerns raised in the experts' reports and implementing the experts' recommendations. *See* Consent Decree, Ex. A and Ex. B. The proposed Consent Decree, which incorporates the Remedial Plans, was submitted to the County Board of Supervisors, which unanimously approved it on September 29, 2020.

The Consent Decree has been filed concurrently with this Motion.

### III.    SUMMARY OF KEY PROPOSED SETTLEMENT TERMS

The detailed Remedial Plans focus primarily on the provision of medical care and mental health care to detainees.[1] Among other things, the Remedial Plans address the County's medical, dental, and mental health care and include provisions relating to (1) adequate physical clinical space to support clinical operations and ensure patient privacy, (2) drug/alcohol withdrawal and Medication Assisted Treatment programs, (3) quality management / adverse event reviews, and (4) timeframes for intake medical and mental health screening and medical care, and for specialty care and medication.

As set forth in the Consent Decree, the parties have agreed and jointly request that Dr. Michael Rowe (medical care) and Dr. Roberta Stellman (mental health care) serve as Court Experts to (a) monitor the County's implementation of and compliance with the

---

[1] Defendant has already fully implemented Dr. Austin's recommendations regarding jail classification systems. The Parties will have future direct discussions regarding whether to include additional provisions in the Remedial Plan relating to the County's obligations under the ADA. Consent Decree ¶ 6.

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CONSENT DECREE AND NOTICE TO CLASS**

**Ex. D - 50**

1   Remedial Plans; (b) assist with dispute resolution matters; and (c) provide reports on the
2   County's compliance or noncompliance with the Remedial Plans.  Prison Law Office, as
3   Plaintiffs' counsel, will also monitor compliance with the Consent Decree and Remedial
4   Plans, as set forth in the Consent Decree.

5          In the event of a dispute, the parties have agreed on a dispute resolution process,
6   including involvement of the Court Experts and/or a mediator as appropriate.  The Court
7   will retain jurisdiction to enforce the terms of the Consent Decree, and shall have the
8   power to enforce the agreement through specific performance and all other remedies
9   available under law to the Court for the duration of the Consent Decree, as set forth
10  therein.

11         Subject to Court approval, the parties have reached a compromise and the County
12  agrees to pay Plaintiffs' counsel $396,543.00 for reasonable fees and expenses incurred
13  from the date that Plaintiffs' counsel commenced an investigation into conditions at the
14  Contra Costa County jails through final approval of the Consent Decree, including
15  approval of the Remedial Plans.  The parties also agree, as set forth in the Consent Decree,
16  that Plaintiffs' counsel shall be compensated for their reasonable time and expenses related
17  to monitoring the Consent Decree and Remedial Plans, which will be capped at $175,000
18  per calendar year.

19                            **IV. PROPOSED NOTICE**

20         The parties have agreed to a proposed notice to the class, which is filed as Exhibit 1
21  to the accompanying declaration of Corene T. Kendrick.  This form of notice is adequate
22  to provide the class with notice of the proposed Consent Decree and fairness hearing, and
23  complies with the due process requirements of Rule 23 of the Federal Rules of Civil
24  Procedure.   Plaintiffs' counsel have used a substantially similar notice in other jail
25  conditions class cases in which settlement was reached.  Kendrick Decl. ¶ 2.

26         Within fourteen (14) days of the Court granting preliminary approval of the
27  settlement and the notice to the class, the County will (1) post the notice to the class in
28

**Ex. D - 51**

1   English and Spanish in the Martinez Detention Facility intake area and in every housing
2   unit at the jails in such a manner to make the notice visible to all class members, and (2)
3   provide to class members upon request a copy of the Consent Decree that includes the
4   Remedial Plans.

5                                    **V. ARGUMENT**

6          **A. The Court Should Preliminarily Approve the Consent Decree.**

7          There is a "strong judicial policy" that favors the settlement of class actions. *In re*
8   *Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008). "[S]ettlement [is] the preferred
9   means of dispute resolution" and that "is especially true in complex class action litigation."
10  *Officers for Justice v. Civil Serv. Comm'n*, 688 F 2d 615, 625 (9th Cir. 1982). "The
11  claims, issues, or defenses of a certified class—or a class proposed to be certified for
12  purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ.
13  P. 23(e). When the parties to a putative class action reach a settlement agreement prior to
14  class certification, "courts must peruse the proposed compromise to ratify both the
15  propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co*., 327
16  F.3d 938, 952 (9th Cir. 2003).[2]

17         "Courts may preliminarily approve a settlement and direct notice to the class if the
18  proposed settlement: (1) appears to be the product of serious, informed, non-collusive
19  negotiations; (2) does not grant improper preferential treatment to class representatives or
20  other segments of the class; (3) falls within the range of possible approval; and (4) has no
21  obvious deficiencies." *Noroma v. Home Point Fin. Corp.*, Case No. 17-cv-07205-HSG,
22  2019 WL 1589980, at *7 (N.D. Cal. April 12, 2019) (citation omitted). Preliminary
23  approval entails an initial assessment of the fairness of the proposed settlement made by a
24  court "on the basis of information already known, supplemented as necessary by briefs,

25

26  _____

27         [2] Plaintiffs are concurrently filing an unopposed Motion for Class Certification with
    this Motion.

28

1    motions, or informal presentations by parties."  Manual for Complex Litigation (Fourth)

2    § 21.632 (2004).

3        "Although Rule 23 imposes strict procedural requirements on the approval of a

4    class settlement, a district court's only role in reviewing the substance of that settlement is

5    to ensure that it is 'fair, adequate, and free from collusion.'"  *Lane v. Facebook, Inc.*, 696

6    F.3d 811, 819 (9th Cir. 2012) (citation omitted).  Factors courts consider in assessing a

7    settlement proposal include: "[1] the strength of the plaintiffs' case; [2] the risk, expense,

8    complexity, and likely duration of further litigation; [3] the risk of maintaining class action

9    status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery

10   completed and the stage of the proceedings; [6] the experience and views of counsel; [7]

11   the presence of a governmental participant; and [8] the reaction of the class members to the

12   proposed settlement."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  To

13   determine if the settlement is fundamentally fair, adequate, and reasonable during the

14   preliminary approval review, the court may preview the *Hanlon* factors that ultimately

15   inform final approval.  *G.F. v. Contra Costa County*, Case No. 13-cv-03667-MEJ, 2015

16   WL 4606078, at *14 (N.D. Cal. July 30, 2015).

17       Courts must give "proper deference to the private consensual decision of the

18   parties."  *Hanlon*, 150 F.3d at 1027.  "[T]he court's intrusion upon what is otherwise a

19   private consensual agreement negotiated between the parties to a lawsuit must be limited

20   to the extent necessary to reach a reasoned judgment that the agreement is not the product

21   of fraud or overreaching by, or collusion between, the negotiating parties, and that the

22   settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Id.*

23   (quoting *Officers for Justice*, 688 F.2d at 625).

24       Additionally, "[i]t is the settlement taken as a whole, rather than the individual

25   component parts, that must be examined for overall fairness," and the district court cannot

26   "delete, modify, or substitute certain provisions.  The settlement must stand or fall in its

27   entirety."  *Id.* at 1026 (citations omitted); *see also Jeff D. v. Andrus*, 899 F.2d 753, 758 (9th

28

**Ex. D - 53**

Cir. 1989) ("[C]ourts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties.") Finally, the question of whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect . . ." *Lane*, 696 F.3d at 819 (citing *Hanlon*, 150 F.3d at 1027).[3]

Here, a preliminary review of the relevant considerations easily demonstrates a solid basis for granting conditional approval. The Consent Decree is fair and adequate in that the County has agreed to detailed terms that directly address the class claims in this case. The settlement was reached after years of serious negotiations between the parties, who were zealously represented by their experienced counsel throughout this litigation. The settlement provisions were informed by the detailed findings and recommendations of four subject matter experts, the experience and expertise of Plaintiffs' counsel and the County's Sheriff's Office and Health Services Department, as well as input gathered by Plaintiffs' counsel through communications with class members over the course of their investigation. Kendrick Decl. at ¶ 3.

Further, the outcome of the litigation and the extent of any relief that the class might be awarded if the case went to trial is uncertain. And proceeding through pre-trial motions, trial, and probable appeal would impose risks, costs, and a substantial delay in the implementation of any remedy in this matter. Given the relief achieved and the risks and costs involved in further litigation, the Consent Decree represents a fundamentally "fair, reasonable, and adequate" resolution of the disputed issues and should be preliminarily approved. Fed. R. Civ. P. 23(e)(2).

---

[3] Moreover, the Consent Decree does not foreclose a detained person's future right to seek individual monetary or non-duplicative injunctive relief for alleged violations of their constitutional right to adequate health care and/or any unconstitutional conditions of confinement they experience in the County's jails. *See, e.g.*, *Pride v. Correa*, 719 F.3d 1130, 1137 (9th Cir. 2013) (incarcerated person's suit under 42 U.S.C. § 1983 seeking injunctive relief to improve his individual medical care was not barred by the statewide class action regarding medical care in the California prison system) (citations omitted).

**Ex. D - 54**

**B. The Court Should Approve the Class Notice.**

Rule 23(e) also requires notice to the class before the court grants formal approval to any compromise of the case. The parties have agreed to the form and content of the notice to the class, which is attached as Exhibit 1 to the Kendrick Declaration, and that provides reasonable notice of the terms of the Consent Decree and Remedial Plans. The means of disseminating the notice will allow an adequate opportunity for the class to review and comment on the settlement. The parties respectfully request that the court approve the notice and order its dissemination to class members.

**C. The Court Should Approve the Proposed Scheduling Order and Set a Date for a Fairness Hearing Regarding the Consent Decree.**

The parties propose the following time schedule to provide for notice, comment, and final approval of the Consent Decree and for a proposed scheduling order. First, the parties request 14 days from the Order granting preliminary approval of the settlement and class certification to publish the notice in the jails. Second, the parties request 60 days, following the publications of notice, during which class members may file comments and objections. Third, the parties request 21 days from the end of the comment period for the parties to respond to any objections and move for final approval of the Consent Decree. Fourth, the parties request that the fairness hearing be set approximately 14 days after the deadline for responding to the objections and filing the motion for final approval.

**VI. CONCLUSION**

For the foregoing reasons, Plaintiffs and Defendant respectfully request that the Court issue preliminary approval of the Consent Decree, approve the form of the proposed notice and order its publication to the class, and issue the proposed scheduling order. A proposed order is filed herewith.

Dated: October 1, 2020                                  Respectfully submitted,

                                                         PRISON LAW OFFICE

                                                         */s/ Corene T. Kendrick*
                                                         Corene T. Kendrick
                                                         *Attorney for Plaintiffs*

7

Case No. 3:20-cv-6848-NC

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CONSENT DECREE AND NOTICE TO CLASS**

**Ex. D - 55**

Dated:  October 1, 2020                         SHARON ANDERSON
                                                COUNTY COUNSEL

                                                */s/ Monika L. Cooper*
                                                Monika L. Cooper
                                                *Attorneys for Defendant*


**ATTESTATION REGARDING SIGNATORIES**

        I, Corene Kendrick, hereby attest that Counsel for Defendant concur in the filing's

content and have authorized the filing.

        Executed on October 1, 2020 at San Francisco, California.


                                                */s/ Corene T. Kendrick*
                                                Corene T. Kendrick
                                                Prison Law Office

**Ex. D - 56**

# EXHIBIT E

1   SHARON L. ANDERSON (SBN 94814)
    County Counsel
2   MONIKA L. COOPER (SBN 193729)
    Assistant County Counsel
3   D. CAMERON BAKER (SBN 154432)
    Deputy County Counsel
4   COUNTY OF CONTRA COSTA
5   1025 Escobar Street, Third Floor
    Martinez, California 94553
6   Telephone:    (925) 655-2280
    Facsimile:    (925) 655-2267
7   Electronic Mail: monika.cooper@cc.cccounty.us
8                  cameron.baker@cc.cccounty.us
9
    Attorneys for Defendant
10  COUNTY OF CONTRA COSTA

11                  UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13

14  GABRIEL YOUNG, EDDIE WILLIAMS,          No. 5:20-cv-06848 NC
    AND GALE YOUNG,
15                                          DECLARATION OF LIEUTENANT
16  on behalf of themselves and all others  RAYMOND BECHLER REGARDING
    similarly situated,                     POSTING OF THE CLASS NOTICE AND
17                                          ASSOCIATED DOCUMENTS
                Plaintiffs,
18
                                            Judge: Hon. Nathanael Cousins, Presiding
19  v.                                      Date Action Filed:  September 30, 2020
                                            Trial Date:  None Assigned
20  COUNTY OF CONTRA COSTA,
21              Defendant.
22

23

24  I, Raymond Bechler, declare as follows:

25      1.    I am currently employed with the Contra Costa County Office of the Sheriff as a

26  Lieutenant with the Custody Services Bureau ("CSB").  In addition to my general

27  responsibilities as a Lieutenant with CSB, my main responsibility is as the Compliance Officer

28  monitoring and tracking the necessary changes under the Consent Decree and Remedial Plans.

Declaration of Lieutenant Raymond Bechler - Case No. 5:20-cv-06848 NC                1

                                                            Ex. E - 58

1    The following facts are within my personal knowledge.  If called as a witness, I could and

2    would competently testify to the matters set forth herein.

3         2.    This declaration is being submitted pursuant to the Court's Order Granting Joint

4    Motion for Preliminary Approval of Consent Decree and Notice to Class, dated October 21,

5    2020.  ECF 20.  In that Order, the Court approved the substance, form and manner of noticing

6    the class in this matter (the "Class Notice") and required the County to provide a declaration

7    affirming that the Class Notice was published as required in the Order.  *Id.* at ¶5.

8         3.    On October 27, 2020, jail staff posted the Class Notice, in both English and

9    Spanish, on the bulletin boards in all the housing areas at the West County Detention Facility

10   and the Marsh Creek Detention Facility.

11        4.    On October 28, 2020, jail staff posted the Class Notice, in both English and

12   Spanish, on the bulletin boards in all housing areas at the Martinez Detention Facility as well

13   as the intake area, which is the only intake area for the Sheriff's Office.

14        5.    The notices were required to be posted for 30 days and they remain posted to

15   date.

16        6.    On November 2, 2020, digital copies of the Court's October 21, 2020 Order, the

17   Consent Decree, and the Remedial Plans were entered into the kiosk system for inmates to

18   access whenever they are out on free time.  On the same date, a hard copy was posted on the

19   bulletin board on D Module, which does not have a kiosk.  Inmates are also able to obtain a

20   copy if they fill out an inmate request slip.

21

22        I declare under penalty of perjury, pursuant to the laws of the United States of America

23   and the State of California, that the foregoing is true and correct and that this declaration is

24   executed on the date indicated below, at Martinez, California.

25   Date: December 10, 2020

26                              RAYMOND BECHLER

27

28

Declaration of Lieutenant Raymond Bechler - Case No. 5:20-cv-06848 NC        2

Ex. E - 59