UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>　　　　　　　　　　　Defendants. | Case No.: 20-cv-00406-AJB-DDL<br><br>**ORDER GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF PARTIES' SETTLEMENT AGREEMENT AS TO PLAINTIFFS' THIRD CLAIM** |

　　　Presently pending before the Court is the parties' joint motion for preliminary approval of the parties' Settlement Agreement as to Plaintiffs' Third Claim. (Doc. No. 792.) Defendants filed an opposition to the motion as it pertains to the distribution method

for class notice, (Doc. No. 817), to which Plaintiffs replied, (Doc. No. 819). For the reasons set forth below, the Court **GRANTS** the parties' motion for preliminary approval of the parties' settlement regarding Plaintiffs' third claim and finds in favor of Plaintiffs' distribution method for class notice.

## I.     BACKGROUND

The facts of this case have been recited in previous orders. (*See* Doc. No. 219.) Plaintiffs are current or former inmates of San Diego County Jail facilities (the "Jail"), operated by Defendants San Diego County Sheriff's Department and the County of San Diego. Plaintiffs bring this action on behalf of "themselves and the approximately 4,000 incarcerated people who are similarly situated on any given day" to "remedy the dangerous, discriminatory, and unconstitutional conditions in the Jail." (Third Amended Complaint ("TAC"), Doc. No. 231, ¶ 4.) Specifically, Plaintiffs contend Defendants' policies and practices contribute to the high death rates in the Jail, which "has for years exceeded the rates nationally and in other large California jails, [and] it reached chilling heights in 2021 when 18 people died, amounting to a death rate of 458 incarcerated people per 100,000." (*Id.* ¶ 1.)

In the operative complaint, Plaintiffs' third claim alleges a failure to provide reasonable accommodations to incarcerated people with disabilities in violation of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and California Government Code § 11135. (*See* TAC ¶¶ 454–68.)

On November 3, 2023, the Court granted the parties' joint motion to certify three subclasses under Federal Rule of Civil Procedure 23(b)(2). (Doc. No. 435.) As relevant to this Order, the Court certified a subclass defined as:

> All adults who have a disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities ("Incarcerated People with Disabilities Subclass").

///

(*Id.* at 10.) The Court also granted the parties' request for approval of the proposed class notice plan, ordering that copies of the notice be posted throughout the Jails in English and Spanish ("Class Notice"); that Defendant Sheriff's Department read the Class Notice to individuals who are illiterate or have a disability that may affect their ability to read the Notice; and that copies of the TAC be provided by Defendant Sheriff's Department to class members upon request. (*Id.* at 11.)

Between August 25, 2023, and November 20, 2024, the parties participated in seventeen settlement conferences with Magistrate Judge David Leshner, including several all-day, in-person conferences. (Declaration of Gay Grunfeld ("Grunfeld Decl."), Doc. No. 792-2, ¶ 16.) Moreover, in coming to agreement on the Settlement Agreement terms, the parties exchanged numerous draft written proposals over six months. (*Id.*) The San Diego County Board of Supervisors approved the Settlement on December 11, 2024. (*Id.*) On December 12, 2024, the parties filed the Settlement Agreement as a joint motion, (Doc. No. 776), which the Court approved the same day, (Doc. No. 777).

## II.  SETTLEMENT AGREEMENT

The Parties have executed a proposed Settlement Agreement ("Settlement Agreement" or "Settlement"). The primary terms of Settlement are provided below:

### A.  Policies, Procedures, and Practices to Protect ADA Rights

To protect the ADA rights of Subclass Members, Defendants will take or will continue taking the following actions:

1. Maintaining the ADA Unit created in June 2023 to facilitate the County's compliance with the ADA;
2. Informing Subclass Members of their rights upon orientation at the Jail;
3. Revising custody and medical policies and procedures, and providing annual training to all relevant staff, including contracted staff;
4. Identifying and tracking all incarcerated people with disabilities and the accommodations they require;
5. Housing Subclass Members consistent with their disabilities;
6. Providing equal access to programs, services, and activities consistent with the ADA;

7. Providing a means for Subclass Members to request disability accommodations and grieve a denial;
8. Providing effective communication to incarcerated persons with communication disabilities;
9. Providing and maintaining assistive devices for incarcerated people who need them;
10. Providing accommodations in emergency situations;
11. Assessing, documenting, and providing accommodations for people with learning, intellectual, and developmental disabilities;
12. Identifying, tracking, and providing accommodations for people with mental health disabilities; and
13. Documenting and providing accommodations to Subclass Members in other aspects of incarceration in the Jail, including searches and transportation.

B.   **ADA Facility Modifications**

In addition to the ongoing ADA facility modifications at San Diego Central Jail pursuant to the 2023 ADA Order, the County agrees to make additional ADA facility modifications at multiple facilities, including at Las Colinas Detention and Reentry Facility, George Baily Detention Facility, Vista Detention Facility, Rock Mountain Detention Facility, and South Bay Detention Facility. Moreover, the County will, within eighteen (18) months of the Settlement Agreement, conduct a comprehensive assessment to determine whether additional housing or other measures are necessary. Within four (4) years of the Settlement Agreement, the County agrees to house every person with a disability with appropriate accessibility features consistent with their individual disability needs.

C.   **Neutral Experts to Issue Reports on Compliance**

To help ensure compliance with the Settlement Agreement, the County agrees to retain two neutral experts with relevant professional expertise. One neutral expert will be responsible for assessing the physical modifications to the facility, while the other will be responsible for evaluating compliance with policies, practices, procedures, and training under the Settlement Agreement. The parties expect to continue working with the same

neutral expert currently retained to assess compliance at Central Jail and will choose a second neutral expert for the policy, practice, procedure, and training issues. The neutral experts will conduct site visits of jail facilities twice per year, interview staff and Subclass Members, and have access to documents, which they will use to issue twice-yearly reports on compliance with the Settlement Agreement. The parties will accompany the neutral experts on their site visits and will have to opportunity to provide comments on the neutral experts' draft reports.

(Doc. No. 792-1 at 9–11; *see* Proposed Settlement Agreement, Doc. No. 792-2 at 12–60.)

## III. LEGAL STANDARD

A class action may not be settled without court approval. Fed. R. Civ. P. 23(e). At the preliminary stage, the Court must first assess whether a class exists.[1] *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the court must determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Rule 23(e)(1) requires the court to take certain steps to ensure proper administration of the settlement, including "direct[ing] notice in a reasonable manner to all class members who would be bound by the proposal."

"[P]reliminary approval and notice of the settlement terms to the proposed class are appropriate where '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with [sic] the range of possible approval . . . .'" *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST (RZx), 2013 WL 169895, *2 (C.D. Cal. Jan. 16, 2013) (quoting *In*

---

[1] As noted above, the Court granted the parties' Joint Motion for Class Certification, which, as relevant here, certified the Incarcerated People with Disabilities Subclass under Rule 23(b)(2), defined as "All adults who have a disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities[.]" (Doc. No. 435 at 10.)

*re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation and citation omitted)) and (citing *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("[t]o determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.")).

## IV.   DISCUSSION

### A.   A Product of Serious, Informed, Non-Collusive Negotiations

Federal Rule of Civil Procedure 23(e) requires a district court to determine whether a proposed class action settlement is fundamentally fair, adequate, and reasonable. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026; *see also Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982) (holding a settlement must stand or fall in its entirety because a district court cannot "delete, modify or substitute certain provisions"). A court must assess several factors to determine the overall fairness of a proposed class action settlement:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026.

Plaintiffs and Class Counsel have adequately represented the Class as required by Rule 23(e)(2)(A). Class Counsel have demonstrated their ability to vigorously prosecute this action on behalf of the Incarcerated People with Disabilities Subclass through conducting significant law-and-motion practice. The facts and the parties' respective legal positions have been extensively briefed in this Court. Class Counsel extensively

investigated Plaintiffs' claims and Defendants' defenses, and negotiated an exchange of information sufficient to enable them to fully evaluate the strengths and weaknesses of the claims and defenses raised by both sides. For example, Plaintiffs' Counsel largely overcame the County's motion to dismiss. (Doc. No. 287); *see In re Wireless Facilities, Inc. Secs. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

Second, that the settlement was reached with the assistance of an experienced mediator further suggests the settlement is fair and reasonable. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 620 (N.D. Cal. 2014) (noting that discovery and the use of a mediator "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement" (citation omitted)). Between August 25, 2023, and November 20, 2024, the parties participated in approximately seventeen settlement discussions with Magistrate Judge Leshner. The parties also conducted settlement discussions without the involvement of Judge Leshner. The Board of Supervisors approved the Settlement on December 11, 2024. (Declaration of Gay Grunfeld ("Grunfeld Decl."), Doc. No. 792-2, ¶ 16.) On December 12, 2024, the parties filed the Settlement Agreement as a joint motion, (Doc. No. 776), which the Court approved of the same day, (Doc. No. 777).

Third, courts generally afford great weight to the recommendation of counsel with respect to settlement because counsel "are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Secs. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, counsel found the strengths and risks of the case support the compromises reached by both sides. Given Plaintiffs' counsel's experience with similar class action litigation, the Court finds that affording deference to their decision to settle the third claim, as well as the terms of that settlement, is appropriate.

Taken together, these facts support finding the settlement to be fair, reasonable, and adequate.

///

### B. The Proposal Was Negotiated at Arm's Length

In reviewing the next Rule 23(e) factor, the Court must examine the Settlement for additional indicia of collusion that would undermine a prima facie arm's length negotiation. Signs of collusion may include (a) disproportionate distributions of settlement funds to counsel; (b) negotiation of attorney's fees separate from the class fund (a "clear sailing" provision); or (c) an arrangement for funds not awarded to revert to the defendants. *See Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). If multiple indicia of implicit collusion are present, the district court has a heightened obligation to assure that fees are not unreasonably high. *Id.*

Based on the intensive settlement process, the Court finds the Settlement was negotiated at arm's length and there is no evidence of collusion. That the Settlement was reached with the assistance of the magistrate judge further suggests that the settlement is fair and reasonable. *See Bellinghausen*, 303 F.R.D. at 620. As discussed above, the parties attended numerous settlement conferences with Judge Leshner between August 25, 2023, and November 20, 2024. Although this case is still ongoing, the parties were able to reach a class-wide settlement as to the third claim. The agreement has been reduced to writing and executed as of December 12, 2024. (*See* Proposed Settlement Agreement.) Moreover, as this case is one for injunctive relief, there is no risk of disproportionate distribution of settlement funds to counsel, a "clear sailing" provision, or of an arrangement for funds now awarded to revert to the defendants. Thus, this factor weighs in favor of approval.

### C. The Relief Provided for the Class Is Adequate

#### 1. The Costs, Risk, and Delay of Trial and Appeal

Moving on, in assessing "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial . . . ." *Hanlon*, 150 F.3d at 1026.

Here, this is a complex class action which has been litigated for years. Plaintiffs allege Defendants violated a number of constitutional and statutory rights. (*See generally*

TAC.) Given the complexity and age of the case, the Court concludes that the strength of Plaintiffs' claims against Defendants, and the risk, expense, complexity, and risk of maintaining class status throughout trial weighs in favor of approving the Settlement. The policies, procedures, and practices to protect ADA rights, the ADA facility modifications, and the neutral experts to issue reports on compliance all result in a substantial and tangible recovery, without the considerable risk, expense, and delay of summary judgment motions, trial, and post-trial litigation.

### 2.   Attorneys' Fees

This court has an "independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). At the fee-setting stage, the interests of the plaintiffs and their attorneys diverge and is described as "adversarial"; therefore, the district court assumes a fiduciary role for the class plaintiffs. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).

Class Counsel has set forth the exact amounts requested in a separate application, which has not yet been fully briefed. (*See* Doc. No. 807.) In connection with Plaintiffs' motion for interim attorney fees, the Court will cross check the requested amount with the lodestar amount based upon counsels' submission, and will determine whether the award is reasonable here.

### D.   Notice

Upon a settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." Fed. R. Civ. P. 23(e)(1)(B). Federal Rule of Civil Procedure 23(c)(2) states that for any class certified under Rule 23(b)(2), "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A).

Here, the parties have submitted to the Court a Notice of ADA Settlement Agreement ("Proposed Settlement Notice"). (*See* Doc. No. 792-2 at 87–88.) Having

reviewed the Proposed Settlement Notice, the Court concludes the notice complies with Federal Rule of Civil Procedure 23.

However, the parties disagree as to the method of distribution of the Proposed Settlement Notice. Plaintiffs request the Court order Defendants to:

1. Post the Proposed Settlement Notice in English and Spanish throughout the Jail on white paper and in 16-point font for the Subclass, including in housing units, intake areas, holding cells, and medical units;
2. Provide a hard copy of the Proposed Settlement Notice to every individual who enters the Jail for a period of four weeks;
3. Provide the Proposed Settlement Notice in English and Spanish on video kiosks in housing units; and
4. Read the Proposed Settlement Notice to incarcerated people who have a disability that may affect their ability to read the notice.

(Doc. No. 792-1 at 16–17.)

After the Court certified the class and subclasses in this case and ordered that Class Notice be distributed, Plaintiffs conducted facility inspections after the Class Notice was posted. (Doc. No. 792-1 at 16.) During those inspections, Plaintiffs observed "that the notice was posted in small print on transparencies that were often illegible and in unreasonable locations." (*Id.* (citing Grunfeld Decl. ¶¶ 19–24).) Thus, Plaintiffs assert the Class Notice was not effective. (*Id.*) Further, Plaintiffs assert that while Defendants agree to place the Proposed Settlement Notice on video kiosks in housing units, this alone is ineffective to provide notice to the entire subclass. (*Id.*)

Defendants do not contest Plaintiffs' method of distribution of notice as to requests 3 and 4 above. (*See generally* Doc. No. 817.) However, as to requests 1 and 2, Defendants assert Plaintiffs' distribution plan is unreasonable and unnecessary, and is inconsistent with the Court's order regarding Class Notice. (*Id.* at 2.) Defendants also contend Plaintiffs' distribution plan is "unprecedented in cases Plaintiffs' counsel have been involved in and in case law regarding what constitutes reasonable notice under various circumstances including the carceral setting." (*Id.*) Thus, Defendants ask the Court to deny Plaintiffs' distribution method and "order that the Notice of Settlement be posted in the same method

as the Class Notice and specifically that the notice may be posted on the video kiosk's [sic] available to every Incarcerated Person rather than hard copy postings." (*Id.*) Specifically, Defendants request that the Court order the Proposed Settlement Notice be distributed as follows:

1. The Proposed Settlement Notice be posted for 30 days from approval;
2. Posting the Proposed Settlement Notice in English and Spanish on white paper above the fingerprint machine in Intake;
3. Posting the Proposed Settlement Notice in English and Spanish in the video kiosks;
4. Posting the Proposed Settlement Notice on the poster board presently utilized for and in place of the Class Notice;
5. Providing a copy of the Proposed Settlement Notice upon request made to the ADA Unit;
6. Having staff read the notice to an incarcerated person with a disability which limits their ability to read the Proposed Settlement Notice; and
7. The Court further authorize Defendants to remove the Class Notice which has been posted since November of 2023.

(Doc. No. 817 at 5–6.)

As noted above, Plaintiffs first request that the Proposed Settlement Notice be posted in English and Spanish throughout the jail on white paper and in 16-point font for the Subclass to read the notice, including in housing units, intake areas, holding cells, and medical units. (Doc. No. 792-1 at 16.) In opposition, Defendants request the Court to instead order the Proposed Settlement Notice be distributed by posting the notice in English and Spanish on white paper solely above the fingerprint machine in Intake, "which is a location every Incarcerated Person passes through upon intake without exception[.]" (Doc. No. 817 at 5.) Defendants contend that the transparency paper on which the Class Notice was printed is legible "while standing in front of the notice looking at it with the naked eye." (*Id.* at 4–5.) Moreover, Defendants assert that posting the Proposed Settlement Notice on the video kiosks is sufficient to provide notice to incarcerated persons. (*Id.*)

///

|   |   |
|---|---|
| 1 | Plaintiffs respond that their settlement notice distribution plan requests specificity about the manner of posting notice throughout the jail in light of ongoing issues with the presentation and location of the Class Notices. (Doc. No. 819 at 3.) Specifically, the Sheriff's Office posted and currently posts the Class Notices on transparent plastic, which renders the text difficult to read—especially when subject to glare from housing unit lighting and posted low on the glass walls, often at foot level, and in a small font. (Grunfeld Decl. ¶¶ 19–25.) Moreover, Plaintiffs assert that notice in black ink on white paper is the typical practice throughout the jail and jail/prison class action cases, including in systems much larger than the San Diego County Jail. (Doc. No. 819 at 5.) Plaintiffs also point out that Defendants' own evidence shows that the Sheriff's Office posts numerous notices in the Jail on white paper. (*Id.* (citing Declaration of Sergeant Arturo Bernal Perales ("Perales Decl."), Doc. No. 817-7, ¶ 5; and Doc. No. 817-10).)[2] Indeed, Sergeant Perales states in his declaration that "[s]ome notices can and are posted in paper on walls and in bulletin boards depending upon the population of the module without any or minimal issues of destruction. Paper bail bonds lists tend not to be torn down because the Incarcerated Persons need them." (Perales Decl. ¶ 5.) |

Plaintiffs next request that the Court order Defendants to provide a hard copy of the Proposed Settlement Notice to every individual who enters the Jail for a period of four weeks. (Doc. No. 792-1 at 16.) In response, Defendants ask instead that the Proposed Settlement Notice be distributed by providing a copy of the notice solely upon request made to the ADA Unit. (Doc. No. 817 at 5.) Defendants also reiterate that the Proposed

---

[2] Plaintiffs objects Paragraph 6 of Sergeant Perales' declaration for lack of foundation under Federal Rule of Evidence 901, as Sergeant Perales states the photographs within Exhibit B were "taken at the detention facilities" but provides no information about which of the seven detention facilities the three photographs are from, or if they are from a single facility. (Doc. No. 819 at 5 n.1 (citing Perales Decl. ¶ 6).) Plaintiffs assert Sergeant Perales does not otherwise identify personal knowledge to support his claims about notices across the jail system. (*Id.*) However, the Court does not rely on these portions of Sergeant Perales' declaration in its ruling. Therefore, Plaintiffs' objections to Sergeant Perales' declaration are moot on those grounds.

1  Settlement Notice would be available on video kiosks. (*Id.* at 7.) Specifically, Defendants
2  contend "[t]he benefits of placing the proposed Settlement Notice on a Kiosk in the carceral
3  setting is a far superior option than distributing thousands of pieces of paper to every person
4  who is booked at the jail and handed a piece of paper that they are unlikely to read under
5  the circumstances surrounding their reason for being at the facilities and which may not be
6  taken into a holding cell and must therefore be thrown away becoming unnecessary trash
7  and waste." (*Id.*) Thus, Defendants assert that notice in housing units should be provided
8  solely through the video kiosks. (*Id.* at 5.) However, Defendants provide no evidence as to
9  how many video kiosks are in each housing unit, whether each housing unit contains a
10 video kiosk, and how long the wait times are to use such video kiosks.

11       Here, the Court finds Plaintiffs' proposed methods of disseminating the Proposed
12 Settlement Notice meet all due process and other legal requirements, and are the most
13 effective and appropriate ways to provide notice to incarcerated persons at the Jails.
14 Moreover, the Court disagrees with Defendants' request that the Proposed Settlement
15 Notice be posted for only 30 days from approval, and holds that the Proposed Settlement
16 Notice must be posted, at minimum, through close of the objections period of the settlement
17 proceeding. Finally, the Court does not authorize Defendants to remove the Class Notice,
18 and holds that the Class Notice must remain posted until the finality of this case.

19     **E.**    **Final Approval Hearing**
20       A court must hold a hearing before finally determining whether a class settlement is
21 fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). The Court thus **ORDERS** that
22 the final fairness hearing be set for **Thursday, July 31, 2025, at 2:00 PM**.
23 **V.**    **CONCLUSION**
24       Based on the foregoing, the Court **GRANTS** the parties' joint motion for
25 preliminary approval of settlement. As to distribution of notice, the Court **ORDERS**
26 Defendants to:
27 ///
28 ///

1. Post the Proposed Settlement Notice in English and Spanish throughout the Jail on white paper and in 16-point font for the Subclass, including in housing units, intake areas, holding cells, and medical units;
2. Provide a hard copy of the Proposed Settlement Notice to every individual who enters the Jail for a period of four weeks;
3. Provide the Proposed Settlement Notice in English and Spanish on video kiosks in housing units; and
4. Read the Proposed Settlement Notice to incarcerated people who have a disability that may affect their ability to read the notice.

The Court additionally:

1. **ORDERS** Defendants to distribute notice to Subclass Members within two (2) business days of entry of this Order;
2. Sets a deadline of 45 days from distribution of notice for objections by Subclass Members;
3. Sets a deadline of 15 days from the objection deadline for filing of Motion of Final Approval and for responses to any timely-filed Subclass Member Objections; and
4. Sets a hearing on fairness and final approval of settlement to be held on **Thursday, July 31, 2025, at 2:00 PM**.

**IT IS SO ORDERED.**

Dated: March 3, 2025

Hon. Anthony J. Battaglia
United States District Judge