1  Proof of Susan E. Coleman (SBN 171832)
   E-mail:  scoleman@bwslaw.com
2  Deann Rivard (SBN 177482)
   drivard@bwslaw.com
3  Martin Kosla (SBN 247224)
   E-mail:  mkosla@bwslaw.com
4  BURKE, WILLIAMS & SORENSEN, LLP
   501 West Broadway, Suite 1600,
5  San Diego, CA  92101-8474
   Tel:  619.814.5800 Fax:  619.814.6799
6
   Elizabeth M. Pappy (SBN 157069)
7  E-mail:  epappy@bwslaw.com
   BURKE, WILLIAMS & SORENSEN, LLP
8  60 South Market Street, Ste. 1000
   San Jose, CA  95113-2336
9  Tel:  408.606.6300 Fax:  408.606.6333

10 Attorneys for Defendants
   COUNTY OF SAN DIEGO, SAN DIEGO
11 COUNTY SHERIFF'S DEPARTMENT and
   SAN DIEGO COUNTY PROBATION
12 DEPARTMENT

13              UNITED STATES DISTRICT COURT

14             SOUTHERN DISTRICT OF CALIFORNIA

15

16 DARRYL DUNSMORE, ANDREE              Case No. 3:20-cv-00406-AJB-DDL
   ANDRADE, ERNEST ARCHULETA,
17 JAMES CLARK, ANTHONY                 **DEFENDANTS' OPPOSITION TO**
   EDWARDS, REANNA LEVY, JOSUE          **PLAINTIFFS' MOTION FOR**
18 LOPEZ, CHRISTOPHER NORWOOD,          **INTERIM ATTORNEYS' FEES**
   JESSE OLIVARES, GUSTAVO              **AND COSTS**
19 SEPULVEDA, MICHAEL TAYLOR,
   and LAURA ZOERNER, on behalf of      *Filed concurrently with Declaration of*
20 themselves and all others similarly  *Elizabeth Pappy and John O'Connor in*
   situated,                            *support of Defendants' Opposition*
21
            Plaintiffs,                 **DATE: March 27, 2025**
22                                      **TIME:  2:00 p.m.**
        v.                              **CTRM; 4A**
23
   SAN DIEGO COUNTY SHERIFF'S           Judge:   Anthony J. Battaglia
24 DEPARTMENT, COUNTY OF SAN
   DIEGO, SAN DIEGO COUNTY              Magistrate Judge David D. Leshner
25 PROBATION DEPARTMENT, and
   DOES 1 to 20, inclusive,
26
            Defendants.
27

28

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

2

3  I.    INTRODUCTION............................................................................ii

4  II.   RELEVANT PROCEDURAL AND FACTUAL HISTORY. ........................5

5  III.  ARGUMENT. ..............................................................................10

6        A.    Unreasonable Fees Are Not Permissible. ..............................10

7              1.    The Requested Rates Are Excessive. .........................11

8        B.    The Requested Number Of Hours Are Unreasonable. ........16

9              1.    It Was Excessive And Unnecessary For More Than One
                     Attorney To Attend Depositions, Meet and Confer
10                   Conferences,  and Most Hearings...............................17

11             2.    Fees Related To The Failed Attempt to Depose Sheriff
                     Martinez Were Unnecessarily Incurred For Unnecessary
12                   "Lawfare"...................................................................18

13             3.    Vague Time Entries Should Not Be Compensated. ....18

14             4.    Work On Unsuccessful Claims....................................19

15       C.    The Proper Lodestar Amount Is $1,017,385.45....................20

16       D.    The Court Should Exercise Its Discretion And Reduce Plaintiffs'
                Non-Expert Costs. .............................................................21

17  IV.   CONCLUSION. ...........................................................................22

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4905-3544-7062 v1                                    i                    Case No. 3:20-cv-00406-AJB-DDL
                                                                          OPP. TO ATTYS' FEES AND COSTS MTN

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Federal Cases

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................... 11

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir.2008) ................................................... 12

*Chalmers v. City of Los Angeles*,
  796 F.2d 1205 (9th Cir. 1986) ......................................... 17, 18

*Crawford Fitting Co. v. J. T. Gibbons, Inc.*,
  482 U.S. 437 (1987) ............................................................... 21

*Democratic Party of Wash. State v. Reed*,
  388 F.3d 1281 (9th Cir. 2004) ............................................... 17

*Farmer v. Arabian Am. Oil Co.*,
  379 U.S. 227 (1964) ............................................................... 21

*Ferland v. Conrad Credit Corp.*,
  244 F.3d 1145 (9th Cir. 2001) ............................................... 19

*Gates v. Deukmejian*,
  987 F.2d 1392 (9th Cir.1992) ........................................... 10, 17

*Guam Society of Obstetricians and Gynecologists v. Ada*,
  100 F.3d 691 (9th Cir.1996) ........................................... 10, 11

*H.J. Inc. v. Flygt Corp.*,
  925 F.2d 257 (8th Cir. 1991) ................................................. 18

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir.1994) ...................................................... 19

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ........................................................ *passim*

*Kochenderfer v. Reliance Standard Life Ins. Co.*,
  2010 WL 1912867 (S.D. Cal. Apr. 21, 2010) ...................... 12

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4905-3544-7062 v1      ii      Case No. 3:20-cv-00406-AJB-DDL
OPP. TO ATTYS' FEES AND COSTS MTN

1
2

*Loera v. Cty of Los Angeles*,
    2005 WL 1225982 (C.D. Cal. March 21, 2005)..................................................19

3
4

*Luna v. Fca US LLC*,
    2020 WL 491462 (C.D. Cal. January 30, 2020)..................................................17

5
6

*Montes v. Duran*,
    2021 WL 3623306 (C.D. Cal. Aug. 3, 2021) ......................................................11

7

*Morales v. City of San Rafael*,
    96 F.3d 359 (9th Cir.1996) .................................................................................10

8
9

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008)........................................................................12, 17

10
11

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010) ..................................................................................11, 12, 21

12
13

*Perrin v. Goodrich*,
    2012 WL 1698296 (C.D. Cal. May 14, 2012).....................................................12

14
15

*Sorenson v. Mink*,
    239 F.3d 1140 (9th Cir. 2001) ............................................................................17

16
17

*Thomas v. City of Tacoma*,
    410 F.3d 644 (9th Cir. 2005) ..............................................................................19

18

*Thorne v. City of El Segundo*,
    802 F.2d 1131 (9th Cir. 1986) ............................................................................20

19
20

*In re Washington Pub. Power Supply Sys. Secs. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ..............................................................................18

21
22

*Watson v. County of Santa Clara*,
    2013 WL 5303777 (N.D. Cal. Sept. 20, 2013)....................................................20

23
24

*Webb v. Sloan*,
    330 F.3d 1158 (9th Cir. 2003) ............................................................................19

25
26

*Welch v. Metropolitan Life Ins. Co.*,
    480 F.3d 942 (9th Cir.2007) ...........................................................................11, 12

27
28

*Wheeler v. Coss*,
    2010 WL 2628667 (D. Nev. June 28, 2010) .......................................................20

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4905-3544-7062 v1                            iii                    Case No. 3:20-cv-00406-AJB-DDL
                                                                OPP. TO ATTYS' FEES AND COSTS MTN

*Young v. Wolfe*,
    2017 WL 3184167 (C.D. Cal. July 26, 2017) .....................................................20

**State Cases**

*Harper v. City of Los Angeles*,
    2006 WL 8446990 (C.D. 14 Cal. May 16, 2006)................................................18

**Federal Statutes**

2010 ADA Standards for Accessible Design ...................................................*passim*

ADA Title II.................................................................................13, 20

**State Statutes**

California Building Code, Chapter 11B ....................................................13

California Government Code § 11135.........................................................1

**Other Authorities**

Wolters Kluwer's *Real Rate Report* .......................................................11

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4905-3544-7062 v1

iv

Case No. 3:20-cv-00406-AJB-DDL
OPP. TO ATTYS' FEES AND COSTS MTN

## I.    INTRODUCTION.

The Third Claim for Relief ("ADA Claim") alleges a failure to provide reasonable accommodations to disabled incarcerated persons under the ADA, Rehabilitation Act and California Govt. Code §11135. A settlement was achieved *in spite of* Plaintiffs' counsel—*not because of* Plaintiffs' counsel—as Plaintiffs assert. Plaintiffs spend considerable ink touting the settlement as being the sole and exclusive result of Plaintiffs' counsel's efforts. Plaintiffs' settlement attempts always included a provision allowing plaintiffs' counsel to monitor—and collect fees and costs related thereto—*after* the settlement was entered; their insistence significantly delayed relief to their clients and almost completely derailed any chance of settlement. Plaintiffs' counsel wanted full and complete control over what changes would be made at the jails, to look over the shoulder of neutral experts who are the only "experts" on ADA in this matter, while the County paid for both the experts *and* Plaintiffs' counsel to follow the experts around, and tell them how to do their jobs. To reiterate, the double costs for monitoring would have been entirely borne by the County, which translates to excessive taxpayer expense. Sheriff Martinez took the hard line that every dollar possible should be put toward actual improvements and repairs where required, as approved by the neutral expert, without unnecessary taxpayer funds being spent to enrich Plaintiffs' counsel beyond what they are reasonably entitled to receive as litigators in the instant action.

Plaintiffs were pushed to settle rather than try the case because the Sheriff's Office took the allegations very seriously, and immediately took the action of hiring its own experts to assess the facilities and the policies; the Sheriff's Office thereafter and at its own experts' recommendation, implemented a fully staffed ADA Unit in mid-2023. That Unit has been instrumental in effecting real and meaningful changes at the jails without any input or assistance from Plaintiffs' counsel.

The Sheriff's Office facilities personnel have worked consistently since the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4905-3544-7062 v1

1

Case No. 3:20-cv-00406-AJB-DDL
OPP. TO ATTYS' FEES AND COSTS MTN

start of the case,[1] including conducting remedial work themselves, hiring outside
contractors, and investigating resolutions to structural and elemental issues (such as
accessible showers that could be used in the interim period before structural changes
could be made). Plaintiffs' counsel refused to participate in any meaningful way to
help effect changes, and expressed outrage at every step that the Sheriff's Office
was proactive, instead of engaging in inaction and consulting with Plaintiffs'
counsel. One can only surmise that Plaintiffs' counsel outrage sprang from having
been denied a billing opportunity. Interestingly, while inspecting facilities,
Plaintiffs' counsel complained about the lack of accessible showers; however, when
Defendants requested the "expertise" of Plaintiffs' counsel for suggestions in other
matters they had previously handled, Plaintiffs' counsel dragged their feet in
providing information, and/or refused to provide information, and/or then provided
useless and impracticable solutions which revealed strong evidence of their lack of
actual experience in handling the type of ADA matters at issue in this action.

　　　Plaintiffs' counsel came into this litigation being used to dealing with
Defendants that ceded responsibility, then allowed Plaintiffs' counsel to take charge
of changes in ADA cases. Plaintiffs' counsel's 'monitoring' of the
agencies/facilities involved counsel relying on neutral experts while conducting
their 'monitoring' at exorbitant rates. It became clear early-on in this action that
Plaintiffs' counsel knew nothing about the actual work required to physically bring a
facility into compliance; they obviously relied heavily on their expert who was paid
almost $450,000 for her work.[2]

---

[1] Defendants use the term "start of the case" as meaning February of 2022, when
RBGG and 3 other lawyers became plaintiffs' counsel. The complaint was originally
filed pro per and was litigated as a single pro per case for almost 2 years.

[2] Plaintiffs' expert, SZS Engineering Access, charged a total of $438,170.65.
(Swearingen Dec, Ex. A,p.179-189) The defense engaged separate experts for
barriers and policies who charged a combined $268,582.17 for conducting the same
work except that the policy expert began consulting with the County early on to

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4905-3544-7062 v1                                    2                    Case No. 3:20-cv-00406-AJB-DDL
OPP. TO ATTYS' FEES AND COSTS MTN

Plaintiffs' counsel have no experience dealing with a County like San Diego, and a Sheriff like Sheriff Martinez, who *embraced* the need for the changes required under the ADA, and immediately proactively responded to the call to action to ensure incarcerated persons with disabilities received constitutional care. Not once has Plaintiffs' counsel acknowledged that the Sheriff's Office is committed to change, and proactively made meaningful changes well before the settlement was entered-into. Any such admission would have detracted from the false narrative that Plaintiffs' counsel alone are responsible for the settlement. The Sheriff's Office drafted all of the physical facility changes in the Settlement Agreement without Plaintiffs' assistance, and have met every single deadline therein. The Settlement Agreement belies Plaintiffs' counsel's claim on its face.

Additionally, plaintiffs have irresponsibly demonized the defendants in the media, presumably to prevail in this action. Plaintiffs have spent hours engaging with the press in San Diego County in an attempt to litigate this action through the media believing that this Court and/or Defendants will be influenced by the tactic.[3] The merits of this case have long taken a back seat to plaintiffs' counsel's desire for the limelight. Plaintiffs' counsel also regularly inflated billing by touting the "complexity" of the case as the reason for having multiple attorneys attend meetings, court appearances, and the first depositions.[4]

---

work toward revised policies that were only minimally revised once Plaintiffs final came to the bargaining table.

[3] At one point, Plaintiffs improperly reported to the press that Sheriff Martinez herself refused to comply with a deposition notice which was held by the Court to be improper under the Apex doctrine. Defense counsel refused to comply with the clearly illegal request. The point, of course, was never to depose the Sheriff but to create a media moment to disparage the Sheriff.

[4] This practice of multiple plaintiffs' attorneys attending a deposition ceased only when defense counsel loudly complained and made clear that any attempt to bill for more than one attorney at a deposition would be challenged.

*This is not a complex case*. The ADA and accessibility laws under the California Building Code are simple, basic and require very little lawyer expertise. All one really needs is a tape measure and the requisite construction experience. Defense counsel Elizabeth Pappy has been litigating ADA cases for 19 of her 33 years as an attorney. She and Ms. Coleman have handled 95% of the entire case on their own. Approximately 3 other attorneys helped on occasion for injunction briefing, summary judgment briefing and taking Plaintiffs' depositions. It was Ms. Pappy and Ms. Coleman who attended all meetings, took and defended all but the Plaintiffs' depositions, attended all Court appearances and participated in every single settlement discussion. They appeared together in Court when ordered to do so and approximately a few other times early on until they determined that they were not both necessary attendees. Otherwise, Ms. Pappy and Ms. Coleman were quite capable of handling defense of the action alone without a troop of attorneys to email, call, confer with, consult with, and otherwise bill an issue to death.

The Court should not sanction plaintiffs' counsel's deliberate, concerted and unnecessary practice of: 1) double and triple billing for the same work; 2) voluntarily having multiple attorneys attend meetings when all but one—sometimes two at most—actually participate; 3) having multiple attorneys attend depositions; 4) having multiple attorneys draft a single non-dispositive motion; 5) billing 10x the number of hours for drafting a motion that should have taken one 3rd year associate to draft; 6) engaging in constant interoffice conferences coupled with constant emails about the same subjects on the same days; and 7) filing a failed injunction motion and class certification motion; and filing an injunction motion for the sole purpose of billing despite repeated requests and attempts by Defendants to get Plaintiffs to engage in settlement talks.

The question and issue before the Court is determination of the *reasonableness* of plaintiffs' application for attorney fees and costs. The problem with the entire fee application and the amount requested is exemplified by lead

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4905-3544-7062 v1

4

Case No. 3:20-cv-00406-AJB-DDL
OPP. TO ATTYS' FEES AND COSTS MTN

1  counsel's use of $113 and $150 rides in Town Cars for transportation to the airport.

2  The sense of entitlement and obvious belief that 'the Court will require the County

3  to pay for it so who cares,' could not be more clear. Defendants respectfully request

4  that the Court exercise its inherent power to halt plaintiffs' clearly improper padding

5  of fees and costs billing contained within their application. It is important to review

6  the entirety of the course of litigation in this action to make that determination, as

7  'the devil is in the details.'

8  **II.    RELEVANT PROCEDURAL AND FACTUAL HISTORY.**

9         Mr. Dunsmore filed this action pro per on March 2, 2020. (Dkt. 1)  He

10  thereafter filed a First Amended Complaint ("FAC") and the County filed a Motion

11  to Dismiss the FAC on November 3, 2021. (Dkt. 64)  Nine attorneys—including

12  some of the current counsel—substituted into the case for Mr. Dunsmore on

13  December 13 and 14, 2021. (Dkt.66-72,76,78) A tenth lawyer joined the list of

14  Plaintiffs' counsel on April 14, 2022. (Dkt.115) Plaintiffs sought leave to file a

15  Second Amended Complaint ("SAC"). (Dkt. 74, 80) The 233 page SAC, filed

16  February 9, 2022, alleged claims against the County Defendants (Sheriff's Office,

17  Probation and the County), and added 5 detention facility medical contractors as

18  parties. (Dkt.81) *Prior to receipt of any responsive pleadings,* Plaintiffs filed a

19  Motion for Preliminary Injunction and Provisional Class Certification on May 2,

20  2022. (Dkt.119) All defendants but one filed Motions to Dismiss the Second

21  Amended Complaint (Dkt.109, 125, 133, 134), and one health care provider

22  defendant filed a Summary Judgment motion. (Dkt.156) Plaintiffs thereafter

23  dismissed the medical care contractor defendant who had filed the summary

24  judgment motion. (Dkt.188) Plaintiffs' Motion for Preliminary Injunction and

25  Provisional Class Certification was resultingly denied as moot. (Dkt.203) Two of

26  plaintiffs' ten lawyers then withdrew on August 30, 2022. (Dkt.210) Plaintiffs *again*

27

28

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4905-3544-7062 v1                                    5                    Case No. 3:20-cv-00406-AJB-DDL
                                                                          OPP. TO ATTYS' FEES AND COSTS MTN

added a 9th lawyer on February 22, 2024.[5] Plaintiffs presently have *sixteen* attorneys from three different law firms representing Plaintiffs.

Five of the fifteen attorneys have never made an appearance in the case; each of those five attorneys works at DLA Piper and the five *currently* have between 1 and 4 years of experience making two of the five law clerks during some of their work. (Dkt.807-4, P.10 of 67)  Only Chris Young from DLA Piper has any experience working on an ADA case, or Plaintiffs case for that matter. Mr. Young worked on exactly one previous ADA case, with lead counsel RBGG. There is no explanation of what work he performed. Each of the resumes attached to the Young declaration make it clear that DLA Piper represents the largest of the large American corporations on the defense side of litigation. As stated in Mr. Young's declaration, the five new law clerk/lawyers did nothing other than conduct Incarcerated Persons interviews, and yet DLA seeks hourly rates for *these brand new attorneys* in the amounts of $895, $990, $1085, and $1145. DLA Piper's function in the action appears to have been window dressing, and has served no legitimate purpose for any of its legal work other than Incarcerated Person interviews. Mr. Young touts the vast *defense* class action litigation experience of DLA Piper, presumably as the basis for inclusion in the action, *yet there is not a single billing entry from DLA Piper related to the class certification aspect of the case*. The only legitimate purpose of DLA Piper, a local firm, was to send local attorneys and law clerks to interview Incarcerated Persons. This begs the question of *why* attorneys from Northern California's RBGG needed to fly down and interview Incarcerated Persons—fees, costs and travel expenses for which they billed the County—when they had capable young local—albeit overpriced—attorneys  to do the interviews without the additional costs and fees.

The overbilling in the case by Plaintiffs" counsel was rampant. For example,

---

[5] Dkt. 552.

Plaintiffs filed a Motion to Expedite Discovery on September 7, 2022. (Dkt.212) the legal brief was ten (10) pages, and the accompanying declaration was two (2) pages, and sought expedited discovery as to 6 separate causes of action, including the Third Cause of Action for ADA violations. Billing entries for the motion started on August 15, 2022, and lasted through September 7, 2022. Five separate attorneys at RBGG billed on the matter, duplicating work and grossly overbilling for motion preparation. The ten-page motion, 2-page declaration, and limited meet and confer with defense counsel took a team of *five* (5) attorneys a total of 52.6 hours to complete *after applying the "billing judgment" reduction*. The actual time spent as documented was more. This motion was filed despite the pendency of multiple (four) Motions to Dismiss the SAC, rulings on which would materially affect the scope of discovery if granted.

The Court granted the four Motions to Dismiss the SAC Complaint on September 27, 2022. (Dkt.219) All of the medical contractor defendants were dismissed. Judge Leshner denied the motion for expedited discovery as moot the next day, on September 28, 2022. (Dkt.221)

Two months later, Plaintiffs submitted a Third Amended Complaint ("TAC"). (Dkt.231) Plaintiffs filed a *second* Motion for Expedited Discovery on December 14, 2022, *only* as to the Third Cause of Action. (Dkt. 243) The second time around, billing entries reflect work from September 12, 2022 through the filing date of December 14, 2022—*a full three months*. RBGG billed for having spent 43.1 hours for the motion preparation,[6] yet the brief is almost identical to the one filed in September 2022.

The Court held a discovery conference on December 7, 2022 and specifically raised the question of having an ENE to start settlement talks. Plaintiffs' counsel represented on the record that Plaintiffs were open to an ENE. Ms. Coleman, the

---

[6] Limited meet and confer conferences were included in the invoicing.

1  sole attorney appearing for Defendants (while Ms. Kaul and Mr. Swearingen

2  appeared for Plaintiffs; only Ms. Kaul spoke but for one question by Mr.

3  Swearingen), agreed with the Court and Plaintiffs that an ENE on discrete issues

4  would be worthwhile, and further that Ms. Coleman had mentioned it to Plaintiffs'

5  counsel prior to the hearing.  (Pappy Decl., Ex. C Hearing Transcript, p.13:25-14:14

6  (Kaul); p.14:16-22(Coleman)). Both parties represented to the Court in a Joint Case

7  Status Statement filed on December 28, 2022, that they agreed to an ENE on ADA

8  issues, but through different approaches. (Dkt.249:p.1:11-28)

9      As the above historical record makes clear, for plaintiffs to suggest that

10  Defendants did not take settlement seriously *until after Plaintiffs filed their second*

11  *Motion for Preliminary Injunction* is meritless. Plaintiffs *intentionally* failed to

12  provide the Court with any of the above historical background which led to the first

13  ENE in May of 2023, because the record does not support plaintiffs' version of the

14  story. Plaintiffs' counsel obviously delayed agreeing to an actual date for the ENE

15  that defendants agreed to in December 2022—until they had billed for and filed the

16  renewed injunction request in April of 2023; the ENE did not take place until May

17  2023.

18      Defendants filed a Motion to Dismiss the TAC on December 23, 2022. (Dkt.

19  247) County defendants, in an effort to facilitate the exchange of sensitive

20  confidential records during the pendency of the motion to dismiss and overall case,

21  agreed to a mutually-drafted protective order. (Dkt. 252) The plaintiffs' second

22  motion for expedited discovery was thereafter granted in part and denied in part.

23  (Dkt. 258) *Four months after Defendants began repeatedly requesting settlement*

24  *discussions for the ADA Claim*, the plaintiffs filed their second Motion for

25  Preliminary Injunction and Request for Provisional Class Certification.  (Dkt. 281)

26      Defendants' Motion to Dismiss the TAC was granted in part and denied in

27  part on April 27, 2023. (Dkt.287) The Court granted the motion as to the Seventh

28  Cause of Action for Overincarceration of Disabled People, knocking out one of the

two ADA claims. After finally obtaining Plaintiffs' agreement to a date for an ENE, Judge Leschner scheduled the first of many settlement conferences to address the ADA Claim. (Dkt.297) Defendants recognized the issues very early on, and started working on resolutions without plaintiffs as plaintiffs were clearly dragging their feet on resolution. (Pappy Decl., ¶¶3, 4)

Plaintiffs' counsel proposed expensive, unnecessary and unacceptable procedures clearly intended to impede settlement discussions until they could bill for and file the second injunction motion. Plaintiffs selected one letter to defense counsel as "evidence" that Defendants were unreasonable and would not participate in settlement discussions. Plaintiffs conveniently omit the response and earlier communications, including the exchange on the record in December of 2022, the jointly filed status statement and the original letter from Ms. Grunfeld dated April 4th, the defense response, and the defense response to the single letter Plaintiffs belief most favorably support their version of reality. (*See*, Grunfeld Decl., Ex. X) Defendants repeatedly attempted to engage Plaintiffs in settlement talks and a streamlined process to get a joint list of issues between the experts. (Pappy Decl., Exs. C-F) Physical barriers were going to the be the most time consuming and expensive part of the settlement process and at every turn Plaintiffs counsel wanted to make the process more expensive and more drawn out, refusing any kind of streamlined process, and insisting on having a troop of Plaintiffs' counsel in attendance at everything. (Pappy Decl., ¶16 )

The first ENE finally took place on May 24, 2023. (Dkt.317) Twenty-six days later, on June 20, 2023, the parties submitted a joint motion to approve a stipulation and proposed order resolving a portion of the ADA issues. (Dkt.349) It begs the question of how Defendants, a public entity requiring multiple levels of authority for any settlement, were able to make an agreement in 26 days if they walked into the negotiation having never taken the claims "seriously". The Stipulation and Order were approved the next day. (Dkt.355) The Court issued an Order finding the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4905-3544-7062 v1                                    9              Case No. 3:20-cv-00406-AJB-DDL
                                                                    OPP. TO ATTYS' FEES AND COSTS MTN

1    second Motion for Injunction moot on June 21, 2023, despite the fact that the partial
2    settlement did not address all of the ADA issues. Plaintiffs' counsel did not refile
3    the motion or contested the Order declaring the injunction motion moot, despite
4    their current claim that—but for the filing of the second injunction—settlement
5    never would have been achieved.

6        The parties engaged in further settlement discussions. The County stipulated
7    to Class Certification. (Dkt.423) The Court approved the joint motion submitted by
8    the parties on November 3, 2023. (Dkt.435)

9        The parties agreed to return to settlement discussions for the remainder of the
10   ADA Claim on March 6, 2024. (Dkt.560) The parties appeared in person and
11   subsequently met with the Court in person and via Zoom, and thereafter exchanged
12   correspondence and met via Zoom without the Court, to ultimately achieve a full
13   and complete settlement of the ADA Claim. (Grunfeld Decl., ¶¶98-103) The parties
14   filed a joint motion regarding the settlement on December 12, 2024. (Dkt.776)

15   **III.    ARGUMENT.**

16   **A.    <u>Unreasonable Fees Are Not Permissible.</u>**

17        The Court has discretion in determining what fees are "reasonable." *Hensley*
18   *v. Eckerhart*, 461 U.S. 424, 432-33, 437 (1983). "The burden is on the [applicant] to
19   demonstrate "that the requested rates are in line with those [rates] prevailing in the
20   community for similar services by lawyers of reasonably comparable skill,
21   experience, and reputation."" *Guam Society of Obstetricians and Gynecologists v.*
22   *Ada*, 100 F.3d 691, 696 (9th Cir.1996), quoting *Blum v. Stenson,* 465 U.S. 886, 895
23   n. 11 (1984); *see also Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir.1992).
24   When determining a reasonable fee award, the court must start by calculating the
25   lodestar amount, which is the "number of hours reasonably expended on the
26   litigation multiplied by a reasonable hourly rate." *Id,.* at 433; *Morales v. City of San*
27   *Rafael,* 96 F.3d 359, 363 (9th Cir.1996), *citing McGrath v. County of Nevada,* 67
28   F.3d 248, 252 (9th Cir.1995). "The legislative history [of § 1988] explains that "a

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4905-3544-7062 v1                                    10                    Case No. 3:20-cv-00406-AJB-DDL
                                                                           OPP. TO ATTYS' FEES AND COSTS MTN

1  reasonable attorney's fee" is one that is "adequate to attract competent counsel,

2  but…[that does] not produce windfalls to attorneys." *Blum,* at 896-97. "Cases may

3  be overstaffed, and the skill and experience of lawyers vary widely." *Hensley.,* at

4  434. "[T]he district court may exclude from the fee request hours that are

5  "excessive, redundant, or otherwise unnecessary."" *Welch v. Metropolitan Life Ins.*

6  *Co.,* 480 F.3d 942, 946 (9th Cir.2007), quoting *Hensley,* 461 U.S. at 434.

7  ### 1.    The Requested Rates Are Excessive.

8          There is no question that Ms. Grunfeld and Mr. Fisher are experts in litigation

9  against prisons and jails throughout California. However, the Supreme Court has

10 stated that a "reasonable fee" is a fee that is sufficient to induce a capable attorney to

11 undertake the representation of a meritorious civil rights case. *Perdue v. Kenny A. ex*

12 *rel. Winn*, 559 U.S. 542, 552 (2010).  Ms. Grunfeld's requested rate of $1325 is not

13 reasonable and far exceeds the rate sufficient to induce a capable attorney to

14 prosecute civil rights cases in San Diego County, as her requested rate is for the

15 much higher-rate area of San Francisco. (O'Connor Decl., Ex. D) Moreover,

16 Plaintiffs' counsel, including Ms. Grunfeld, could have used Wolters Kluwer's *Real*

17 *Rate Report,* which is recognized as valuable in evaluating attorney fee applications,

18 to determine reasonable attorney's fees based on San Diego market rates and

19 appropriate billing. *See Montes v. Duran,* 2021 WL 3623306, at *2 (C.D. Cal. Aug.

20 3, 2021) (citing *Kries v. City of San Diego,* 2021 WL 120830, at *3 (S.D. Cal. Jan.

21 13, 2021) (collecting cases approving use of *Real Rate Report*))

22         To ascertain a reasonable rate for the attorney's services, courts generally

23 consider: (1) the prevailing rate charged by attorneys of similar skill and experience

24 for comparable legal services in the community; (2) the nature of the work

25 performed; and (3) the attorney's customary fee. *See, Blum,* 465 U.S. at 895 n. 11;

26 *Guam*, 100 F.3d at 696. Fee applicants have the burden of producing evidence that

27 their requested fees are "in line with those prevailing in the community for similar

28 services by lawyers of reasonably comparable skill, experience and reputation."

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4905-3544-7062 v1                          11                    Case No. 3:20-cv-00406-AJB-DDL
                                                                 OPP. TO ATTYS' FEES AND COSTS MTN

1  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir.2008) (internal
2  quotations omitted).

3      Prevailing market rates are established by reference to the fees that competent
4  private attorneys would charge their paying clients for legal work of similar
5  complexity. *See, e.g.*, *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).
6  In *Perrin v. Goodrich*, 2012 WL 1698296 (C.D. Cal. May 14, 2012), the district
7  court explained that a "reasonable fee is one that is sufficient to induce a capable
8  attorney to undertake the representation of a meritorious civil rights case" and that
9  the legislative history of § 1988 explains that "'a reasonable attorney's fee' is one
10 that is 'adequate to attract competent counsel, but ... [that does] not produce
11 windfalls to attorneys.'" Id. at *2; *See also*, *Perdue*, 559 U.S. at 559 n.8 (rejecting
12 plaintiff's $4.5 million fee enhancement, "so that respondents' attorneys would earn
13 as much as the attorneys at some of the richest law firms in the country," reasoning
14 that "[s]ection 1988 was enacted to ensure that civil rights plaintiffs are adequately
15 represented, not to provide such a windfall"). Counsel should be compensated "at
16 the prevailing rate in the community for similar work; no more, no less." *Moreno v.*
17 *City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

18     "[D]eclarations [from applicant attorneys] "do not conclusively establish the
19 prevailing market rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th
20 Cir. 2008). This is particularly true where the "value of these declarations
21 [submitted are most accurately characterized as] both self-serving and self-
22 perpetuating.'" *Kochenderfer v. Reliance Standard Life Ins. Co.*, 2010 WL 1912867,
23 *4 (S.D. Cal. Apr. 21, 2010). The Declarations submitted in this case say nothing
24 regarding the rates in the "prevailing market"—i.e., the billing rates at San Diego
25 County law firms. The only San Diego County attorney rates submitted are those of
26 DLA Piper, rates of which have no relationship to *civil rights* law firms, plaintiffs or
27 defense. DLA Piper represents of some of the largest American corporations as
28 defendants only (e.g., Southwest Airlines, Clorox Company, Supercuts, Inc., Rite

1  Aid, Jamba Juice co., REI, The Cheesecake Factory and Dr. Seuss Enterprises).

2  (Young Decl., Ex. A)

3      Applicable rates are those of San Diego attorneys performing like work which

4  are below $760 per hour but several factors dictate a maximum rate for Mr. Fisher

5  and Ms. Grunfeld of $760 per hour, and progressively less based upon complexity

6  of work performed and experience level.  (O'Connor Decl., ¶¶27, 56-59) Mr.

7  O'Connor goes through a great deal of detail analyzing San Diego rates generally,

8  and those of a significant ADA rights firm in the San Diego County, Potter Handy.

9  (Id, ¶¶43-60) Plaintiffs "fee experts" do no such analysis and focus on Northern

10  California cases providing little detail about the actual work performed and whether

11  the cases were remotely similar to the trajectory of this case as Mr. O'Connor does

12  in his analysis.

13      The declarations submitted in support of the fees/costs motion by the

14  Northern California/Bay area attorneys speak exclusively about counsel experiences

15  and accomplishments within the Bay Area. Ms. Grunfeld's declaration reveals that

16  the venue of the vast majority of her cases was Northern California, with some in

17  the Eastern District of California. Plaintiffs fail to carry their burden of submitting

18  evidence to establish that their requested rates are within the prevailing market rates

19  for paying clients *in San Diego County* by attorneys of comparable skill, experience,

20  and reputation in civil rights class action lawsuits.

21      Plaintiffs' counsel also significantly overvalue their achievements in this case.

22  The ADA issues in this matter are neither novel nor difficult. The ADA Title II

23  physical barrier guidelines are set forth in the 2010 ADA Standards for Accessible

24  Design and in the California Building Code, Chapter 11B. (O'Connor Decl., ¶¶22-

25  26) There is no dispute that experts are required to inspect and investigate barriers in

26  an efficient manner, and review/provide advice on policy matters. The billing by

27  Ms. Sanossian is certainly high as compared to that of Defendants' physical barrier

28  expert, Paul Joelson, and Defendants' policy and procedure expert, Julian Martinez;

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4905-3544-7062 v1                                13                Case No. 3:20-cv-00406-AJB-DDL
OPP. TO ATTYS' FEES AND COSTS MTN

however, the need for the *expert* work is not in dispute. (Pappy Decl., ¶15).

This type of claim does not take "expertise" of the attorneys beyond a basic understanding. There were no complicated motions or briefing about the ADA issues. The only "disputed" litigation work that took place about the ADA claim outside of settlement discussions was discovery.

Contrary to the claims of Plaintiffs that there was a "need" for all of the discovery requests plaintiffs served, coupled with plaintiffs' accusations that defendants allegedly did not provide information/responsive records, the Court made specific findings that plaintiffs' requests were overbroad, wasteful, unnecessary and not calculated to lead to the discovery of admissible evidence. The theme of the litigation for Plaintiffs was to over-litigate, no matter the cost or actual need. Every informal discovery conference ("IDC"), with possibly two non-ADA related exceptions, was initiated by Plaintiffs pursuing unreasonable requests. Every time, either through Plaintiffs' capitulation or Court order, Plaintiffs were denied their overbroad original ask. (Pappy Decl., ¶19).

Plaintiffs deposed disability-related witnesses on March 14 and 15, 2023; there were three (3) Plaintiffs' attorneys present at each deposition with one taking the deposition. After defense counsel's complaints, Plaintiffs thereafter limited the depositions to only one of their attorneys with no loss of efficacy of representation of plaintiffs. Plaintiffs renewed their bloated over-attendance at depositions when expert discovery commenced, bringing two attorneys to each deposition despite only one attorney taking or defending the deposition. (Pappy Decl., ¶16)

Much as the settlement discussions were intentionally stalled by Plaintiffs to increase for billing, discovery was the same painful process as a result of the entrenched and unreasonable approach by Plaintiffs' counsel throughout discovery. Plaintiffs filed a Motion to Compel Production of Documents and Interrogatory Responses on January 17, 2024. (Dkt.489) Defendants filed opposition. (Dkt.504) Eight days later, Plaintiffs' counsel filed an *ex parte* request to file a reply brief

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Camarillo

4905-3544-7062 v1                                  14                    Case No. 3:20-cv-00406-AJB-DDL
OPP. TO ATTYS' FEES AND COSTS MTN

accusing defense counsel of lying in the opposition papers. (Dkt.516). In response, Judge Leshner ordered every attorney who had appeared in the case without exception to appear in person before the Court on February 6, 2024. (Dkt.518) Ms. Pappy was already scheduled to be in San Diego for the settlement conference, and Ms. Coleman and Mr. Inman (from County Counsel) live in San Diego. The attorneys from RBGG who were not attending the settlement conference on the same day had to make a special trip down for the hearing at which the judge expressed his extreme frustration with the contentiousness of the litigation. The Court denied the *ex parte* filed by Plaintiffs.  (Dkt.527)

The abuses of Plaintiffs' counsel in discovery were documented by Judge Leshner in his Order following hearing on the Motion to Compel. (Dkt.536) The Court stated:

> At the Case Management Conference on May 24, 2023, the Court granted Plaintiffs' counsel's request not to place limits on the number of document requests the parties could serve. The Court's expectation was that forgoing numerical limits would enable the parties to serve carefully crafted discovery requests, appropriately tailored to the needs of the case as required by Rule 26. Instead, many of the 252 RFPs propounded by Plaintiffs are "exceptionally broad." Transcript of December 20 Discovery Hearing ("12/20/23 Tr.," Dkt. No. 480) at 107. For example, Plaintiffs' RFP No. 28 requests "ALL memoranda issued by YOU RELATING to the JAIL from January 1, 2021 to the present." As drafted, this RFP requires Defendants to produce information "having no relation to the issues in this litigation," and is therefore overbroad and not proportional to the needs of the case. *See* 12/20/23 Tr. at 80. There are numerous other such requests seeking production of "all" documents relating to an array of topics that touch on nearly every aspect of jail operations for a three-year period, including laundry, legal mail, staffing, inmate discipline, drug and alcohol withdrawal, health care, dental care, demographics, and more . . .
>
> The Court finds this approach is inconsistent with the Plaintiffs' obligation to reasonably tailor their discovery and to endeavor in good faith to "control[] the expense and time demands of [this] litigation." *Roberts*, 312 F.R.D., at 603. The Court understands Plaintiffs may not have known what types of documents Defendants maintain, but Defendants' point that a Rule 30(b)(6)

deposition on those issues would have saved time and resources is well-taken. Plaintiffs' approach also unfairly shifts the burden to Defendants to define the universe of documents Plaintiffs Court and the parties alike by building delay into an already protracted course of discovery. Implicitly acknowledging the overbreadth of their document requests, Plaintiffs have now "substantially limited most discovery requests at issue in th[e] Motion to . . . only four categories of documents: 1) policies and procedures; 2) training; 3) evidence of practice; and 4) quality assurance/audits." Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Compel ("Mem.", Dkt. No. 489-1) at 4. Plaintiffs' proposed narrowing begs the question of why those four categories of documents – which do not appear to have necessitated any special insight into the existence of or nomenclature for Defendants' documents – were not the focus of the RFPs in the first instance.

(Dkt. 536, pp.4-5)

The Court denied the motion as to every disability-related request except No. 167, and narrowed it significantly to nothing more than a participation log and list of programs. (*Id.*, Pappy Decl., ¶18) Thereafter, Plaintiffs noticed the deposition of Sheriff Kelly Martinez as a publicity stunt and the motion to compel filed by Plaintiffs was denied under the Apex doctrine which such experienced Plaintiffs' counsel knew would happen from the outset. (Dkt. 669) The claim that Plaintiffs sole focus in the case justifying the amount of fees requested has been quick justice for the alleged failings of the Sheriff's Office is called into question, not only by the significant delays caused by Plaintiffs in discovery and the settlement process, but the fact that Ms. Grunfeld never missed an opportunity to try the case to the press for publicity. (Pappy Decl., ¶9) Some three 3 years into the case, RBGG has managed to settle only one claim and spent likely double if not triple the amount of fees being requested in this motion but has certainly gained lots of press coverage.

## B.   **The Requested Number Of Hours Are Unreasonable.**

The party seeking attorneys' fees must submit evidence sufficient to allow the Court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended. *See*

Burke, Williams & Sorensen, LLP
Attorneys at Law
Camarillo

4905-3544-7062 v1

16

Case No. 3:20-cv-00406-AJB-DDL
OPP. TO ATTYS' FEES AND COSTS MTN

1   *Hensley*, 433 U.S. at 437; *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210

2   (9th Cir. 1986). The Court may reduce requested compensation where the

3   documentation is inadequate. *Id.*; *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir.

4   2001). Time expended on work deemed "excessive, redundant, or otherwise

5   unnecessary" shall not be compensated. *See*, *Gates,* 987 F.2d at 1399 (quoting

6   *Hensley*, 461 U.S. at 433–34). A district court can reduce a lawyer's request for

7   duplicative or unnecessary work, and it can impose up to a 10 percent reduction

8   without any explanation at all. *See, Moreno*, 534 F.3d at 1112.

9          The Declaration of John O'Connor, submitted herewith, provides a detailed

10  analysis of the excessive hours spent and the excessive rates being requested given

11  the lack of complexity and the geographic market rates of other, like attorneys.

12  (O'Connor Decl., ¶¶22-26, 43-54, Ex. H)  Not one of Plaintiffs' declarants is a San

13  Diego attorney with the exception of Mr. Young who represents the biggest

14  American corporations in defense class action work.

15                    **1.      It Was Excessive And Unnecessary For More Than One**
                              **Attorney To Attend Depositions, Meet and Confer**
16                            **Conferences,  and Most Hearings.**

17         Appearances by multiple attorneys are unreasonable where only one

18  substantively participates, as was standard plaintiffs' counsel practice in this case.

19  Extra attorneys are duplicative and unnecessary; importantly, a fee-paying client

20  would not pay for three attorneys when one or, at most, two would have sufficed.

21  See *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004);

22  *see also, Luna v. Fca US LLC,* 2020 WL 491462 *4 (C.D. Cal. January 30, 2020)

23  ("[j]ust as there can be too many cooks in the kitchen, there can be too many

24  lawyers on a case") (internal citations omitted).

25         The billing records submitted by Plaintiffs demonstrate too many attorneys

26  attending depositions, court hearings, settlement conferences and at site inspections.

27  There were two attorneys present for the February 10th inspection of Rock Mountain

28  along with two experts, and two attorneys plus two experts at the inspection of

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4905-3544-7062 v1                              17                    Case No. 3:20-cv-00406-AJB-DDL
                                                                    OPP. TO ATTYS' FEES AND COSTS MTN

1    Central Jail. (Pappy Decl., ¶20 ) There were three attorneys present for almost every

2    settlement conference meeting whether by Zoom or in person. (Id.)

### 2. Fees Related To The Failed Attempt to Depose Sheriff Martinez Were Unnecessarily Incurred For Unnecessary "Lawfare".

5        Plaintiffs should not be allowed to recover attorney fees for motions that were

6    unnecessarily filed or opposed by their counsel, such as Plaintiffs' Notice of

7    Deposition of Sheriff Martinez, and resulting pursuit of obtaining her deposition via

8    Motion to Compel, and all related meeting and conferring involved therewith.

9    Defendants should not be forced to bear the burden of experienced counsel's willful

10    disregard of established law which resulted in more work than reasonably necessary.

11    All of these hours should be excluded.

### 3. Vague Time Entries Should Not Be Compensated.

13        "Counsel should, at the very least, identify the general subject matter of his

14    time expenditures." *Harper v. City of Los Angeles*, 2006 WL 8446990, at *6 (C.D.

15    Cal. May 16, 2006), aff'd, 533 F.3d 1010 (9th Cir. 2008) (internal quotations and

16    citations omitted). "Where the documentation of hours is inadequate, the district

17    court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. The District

18    Court may reduce the amount of attorney's fees for insufficient detail in the time

19    entries. See *In re Washington Pub. Power Supply Sys. Secs. Litig.,* 19 F.3d 1291,

20    1305-06 (9th Cir. 1994) (citing *Hensley, Id.*) (affirming district court's initial

21    reduction of fees due to "indefinite, non-specific, uninformative and generally

22    inadequate" records). "In determining reasonable hours, counsel bears the burden of

23    submitting detailed time records justifying the hours claimed to have been

24    expended." *Chalmers,* 796 F.2d at 1210. "Incomplete or imprecise billing records

25    preclude any meaningful review by the district court of the fee application for

26    "excessive, redundant, or otherwise unnecessary" hours and may make it impossible

27    to attribute a particular attorney's specific time to a distinct issue or claim." *H.J. Inc.*

28    *v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (citing *Hensley*, at 434, 437, & n.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4905-3544-7062 v1       18       Case No. 3:20-cv-00406-AJB-DDL
OPP. TO ATTYS' FEES AND COSTS MTN

12) (affirming 20% reduction of lodestar for inadequate documentation, including entries such as "legal research," "trial prep," and "met w/ client").

As Mr. O'Connor notes, Plaintiffs were largely unsuccessful in the "Stage 1 work" which Mr. O'Connor defines as the start of RBGG's work through denial of the original injunction and request for provisional class certification.  (O'Connor Decl., ¶¶64, 69)

### 4.    Work On Unsuccessful Claims.

"Fees awards pursuant to § 1988 must be reasonable both as to the number of hours spent in advancing the successful claim(s) and the billing rate per hour." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir.1994). In § 1983 cases where the plaintiff recovers on some, but not all claims, courts use a two-part test to determine an appropriate fee. *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir.2005). First, the court determines whether the plaintiff prevailed on claims that were related to the unsuccessful claims. Id. at 649 (citing *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003)). Claims are "related" if they "involve a common core of facts or are based on related legal theories." Id. (quoting *Webb,* 330 F.3d at 1168). Either a common core of facts or related legal theories are sufficient to give rise to relatedness; both are not required. Webb, 330 F.3d at 1168-69. Hours spent on unrelated, unsuccessful claims should be excluded from the fee award. *Thomas,* 410 F.3d at 649; *Hensley,* 461 U.S. at 435 ("congressional intent to limit awards to prevailing parties requires that ... no fee may be awarded for services on the unsuccessful claim."). Where successful and unsuccessful claims are unrelated, but it is impossible to parse the hours expended on each type of claim, the court may decline to do so. *Thomas*, 410 F.3d at 649.

In *Ferland v. Conrad Credit Corp.,* 244 F.3d 1145 (9th Cir. 2001), the Ninth Circuit approved of a reduction of time spent on an unsuccessful claim. *Id.* at 1148; see also *Loera v. Cty of Los Angeles*, 2005 WL 1225982 at *3 (C.D. Cal. March 21, 2005) (deducting "time expended by Plaintiff's counsel in pursuing a claim against

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4905-3544-7062 v1

19

Case No. 3:20-cv-00406-AJB-DDL
OPP. TO ATTYS' FEES AND COSTS MTN

[a separate municipal party defendant]"). Indeed, prevailing plaintiffs often voluntarily excise time spent on unsuccessful claims. See *Watson v. County of Santa Clara,* 2013 WL 5303777 at *4 (N.D. Cal. Sept. 20, 2013) (reducing the total lodestar amount by 5% for sloppy, vague, duplicative billing by two plaintiffs' attorneys); *Wheeler v. Coss*, 2010 WL 2628667 at *4 (D. Nev. June 28, 2010) ("Plaintiff states that all hours related to litigation of [a dismissed municipal liability claim] have been [appropriately] deleted from time records and that he does not seek attorneys' fees related to this claim").

Plaintiffs should not recover any fees related to their unsuccessful Seventh Claim for Overincarceration of Disabled People.  (*See*, Dkt. 287) Without any analysis, Plaintiffs summarily conclude that the dismissed Seventh Claim was related to their successful ADA claim. The Seventh Claim was based on a different set of facts and on a distinct legal theory, to wit, overincarceration and not what Title II barriers exist. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) (claims are "related" if they are based on the same common core of facts or theories or seek relief for the same course of conduct). Because the Seventh Claim is not sufficiently "related" to the Plaintiffs' successful claim, Plaintiffs' fees must be reduced to account for their limited success on their claims. See *Young v. Wolfe*, 2017 WL 3184167, at *8 (C.D. Cal. July 26, 2017).  ("[M]alicious prosecution claims are unrelated to the excessive force claim" and, therefore, "time spent advancing them need not be compensated"). Overincarceration of disabled persons hinges on whether County defendants had a choice in who was brought to the County jail and who was booked. The settled claim hinges on whether the County's jail facilities provided ADA-constitutionally compliant accommodations.

### C.    The Proper Lodestar Amount Is $1,017,385.45.

Having reduced Plaintiffs' counsel's attorney's fees in conformity with the deductions set forth above and in Mr. O'Connor's declaration, the proper lodestar calculation is $1,017,385. (O'Connor Decl., ¶88, Ex. H)

Burke, Williams & Sorensen, LLP
Attorneys at Law
Camarillo

4905-3544-7062 v1

20

Case No. 3:20-cv-00406-AJB-DDL
OPP. TO ATTYS' FEES AND COSTS MTN

As stated by the Supreme Court in *Perdue*, there is a strong presumption that the lodestar represents a "reasonable fee" but Plaintiffs have failed to carry their burden to prove that the claimed rate is "reasonable". *Perdue* identified "six important rules" governing the award of attorneys' fees to successful plaintiffs in § 1983 cases: (1) a reasonable fee is a fee sufficient to induce "capable attorneys" to undertake the representation of a meritorious civil rights case; (2) the lodestar method yields a fee that is presumptively sufficient to achieve this objective; (3) enhancements may be awarded in "rare" and "exceptional" circumstances; (4) most if not all of the relevant factors constituting a "reasonable" attorney's fee are included in the lodestar figure; (5) the burden of proving than an enhancement is necessary must be borne by the fee applicant; and (6) a fee applicant must produce "specific evidence" that supports an award of any fee enhancement as proof that an enhancement would provide "fair and reasonable compensation." *See Perdue*, 559 U.S. at 552-53 (citations and quotations omitted).

### D.  The Court Should Exercise Its Discretion And Reduce Plaintiffs' Non-Expert Costs.

"Items proposed by winning parties as costs should always be given careful scrutiny." *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235, 85 S. Ct. 411, 416, 13 L. Ed. 2d 248 (1964), *disapproved of by Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 107 S. Ct. 2494, 96 L. Ed. 2d 385 (1987). Plaintiffs' counsel's unreasonable billing for fees in this matter as outlined above, is carried over to the expenses incurred by attorneys travelling to and from San Diego. There is no legitimate reason why the County should have to pay for attorney travel to airports particularly where Ms. Grunfeld uses extremely expensive Town Car transportation at $113 and $153 dollars per ride. The other attorneys in her office do not use such expensive modes of transportation and Ms. Grunfeld fails to explain why she is entitled to use the most expensive form of transportation. The expenses for multiple attorneys traveling to San Diego for court hearings and settlement conferences, jail

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

4905-3544-7062 v1

21

Case No. 3:20-cv-00406-AJB-DDL
OPP. TO ATTYS' FEES AND COSTS MTN

1  inspections and to interview Incarcerated Persons should not be sanctioned. DLA

2  Piper is in San Diego, was brought into the case as local counsel and had 5 young

3  attorneys conducting interviews of Incarcerated Persons. There is no evidence

4  submitted by Plaintiffs as to why those same 5 attorneys, and likely more young

5  attorneys from DLA Piper if necessary, could have conducted the interviews without

6  need for more than parking if they were at SDCJ.  The Court should exercise it's

7  discretion and reduce the costs other than Ms. Sanossian's bills by 25% to 50% as

8  being unnecessary to the litigation. The total non-SZS costs total $438,170.65 and

9  thus the total remaining claimed costs total $31,250.22. It is irrelevant whether these

10  costs may appear small in comparison to the total costs requested or the fees. The

11  only inquiry is whether they were reasonably necessary to the litigation and they

12  were not. Defendants request a reduction of the non-SZS costs to 50% ($15,625.11)

13  of the total or 75% ($23,437.67) of the total.

14  **IV.    CONCLUSION.**

15          Accordingly, Defendants request that the Court award $1,017,385.45 in fees,

16  $438,170.65 for the SZS costs and a reduced number in the Courts discretion for the

17  remaining costs.

18

19  Dated:  March 6, 2025                    BURKE, WILLIAMS & SORENSEN, LLP

20

21

22                                          By: _____
                                                 Susan E. Coleman
23                                               Elizabeth M. Pappy
24                                               Attorneys for Defendants

25

26

27

28