# TABLE OF CONTENTS

**EXHIBITS TO DECLARATION OF ELIZABETH M. PAPPY IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR INTERIM ATTORNEYS' FEES AND COSTS**

| DESCRIPTION | EXHIBIT NO. | PAGE NO. |
|---|---|---|
| Paul A. Joelson Curriculum Vitae | A | 1 - 15 |
| Julian Martinez Curriculum Vitae | B | 16 - 26 |
| Hearing Transcript dated December 7, 2022 | C | 27 - 48 |
| RBGG letter dated April 4, 2023 and Response | D | 49 - 54 |
| RBGG letter dated April 4, 2023 | D-1 | 50 - 52 |
| Response to RBGG letter dated April 4, 2023 | D-2 | 53 - 54 |
| Exhibit X to Grunfeld Declaration Re Early Neutral Evaluation on ADA Non-Compliance dated April 11, 2023 and Response | E | 55 - 61 |
| Exhibit X to Grunfeld Declaration Re Early Neutral Evaluation on ADA Non-Compliance dated April 11, 2023 | E-1 | 56 - 57 |
| Response to Grunfeld letter dated April 11, 2023 | E-2 | 58 - 61 |
| Email exchange before ENE dated May 2023 | F | 62 - 64 |
| Email requesting shower information dated May 29, 2023 | G | 65 - 67 |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

4924-8739-8949 v1

7

Case No. 3:20-cv-00406-AJB-DDL
DECL. OF ELIZABETH M. PAPPY ISO OPP TO
ATTYS' FEES AND COSTS MOTION

# EXHIBIT A

# Joelson Vail Associates LLC

Architects · General Contractors · Forensic Consultants

## PAUL A. JOELSON AIA NCARB CASp ICC

### Architect, General Contractor, Certified Access Specialist & Building Inspector



Mr. Joelson, over the last 30 years, has specialized in the consulting, litigation support, expert witness and reconstruction design services on the following issues:

- CASp Inspections, Reports and Consulting
- ADA Compliance in Civil Rights Litigation over Denial of Access;
- Compliance with State and Federal Accessibility Standards;
- Building Code Compliance;
- Building Envelope and Water Intrusion Failures;
- Design and Construction Defects;
- Contract Disputes and Claims pertaining to Architect, Developer, Builder and Subcontractor Performance;
- Disclosure in Real Estate Transactions;
- Reconstruction Plans, Engineering, Cost Estimates and Construction Management to Implement Reconstruction Programs.

Mr. Joelson's expertise was gained first-hand as a designer and draftsman, construction supervisor and trade craftsman on school and educational projects, retail stores, office buildings, tenant improvements and custom homes in the 70's, 80's and early 90's. Clients included the University of California, San Diego; the State of California, Department of Parks and Recreation; the U.S. Navy; the City of San Diego; major national retailers; real estate developers; and condominium homeowners associations.

After the 1994 Northridge Earthquake, Mr. Joelson, as an architect and construction manager, directed damage assessments, engineering studies, reconstruction planning and cost estimates on behalf of insurance companies and owners of severely damaged properties. The scope of the program included the assessment and reconstruction design to over 150 projects including shopping centers, office buildings, multi-family, and single family projects on behalf of Farmers, Liberty Mutual, Continental, CNA, Prudential, TransAmerica, and AIG Insurance Companies between 1994 and 2003.

Between 1997 and 2000, Mr. Joelson, and partners, provided architectural, cost estimating and consulting services to the Fullerton Joint Union High School District. Projects included conversion of vocational classrooms and shops building into high-tech computer rooms and general classrooms at Troy High School; Remodel of two football stadium to provide disabled access, upgraded seating and press boxes at Fullerton Union High School and La Habra High School; and remodeling and replacement of the bleacher seating in the gymnasium at Sunny Hills High School.

Mr. Joelson has discussed his experience and practice on radio talk shows, during interviews with media representatives, in educational seminars and industry sponsored forums pertaining to numerous architectural and construction topics including building forensics, causes of building envelope failures and compliance with disabled access codes and standards.

330 Encinitas Blvd., Suite 202-G, Encinitas, CA 92024
(858) 836-3210 / Fax (760) 230-2507
www.joelsonvail.com / CSL No. 740477

2

![Joelson Vail Associates LLC logo]

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

In addition, as an AIA certified provider, Paul has provided Continuing Education seminars to licensed architects and construction professionals on ADA and state accessibility codes, design standards and issues of compliance raised in civil rights litigation over denial of access.

**PROFESSIONAL EXPERIENCE:**

Joelson Vail Associates LLC—Architects / General Contractors / Forensic Consultants.
Since 1996, a joint-venture member of combined architectural, construction management, and forensics consulting firm specializing in Building Forensics and ADA Compliance.

P.A. Joelson & Co., Inc.—Construction & Development.  President of continuously operating architectural design, consulting and construction firm since 1984. Company is a joint-venture member of Joelson Vail Associates LLC since 1996.  Projects included consulting on repairs of construction defects, building restoration, and construction of new shopping centers, retail stores, office buildings, multi-use complexes, public works, and single and multi-family residential projects between 1984 and 2001.

Archimatics - Planning and Architecture.  Project manager between 1983-84 provided client coordination, working drawings and specifications, administered project budgets and directed construction administration.  Projects included multi-family residential, restaurants, retail stores and office interiors.

Michael Paul Construction Inc.  Managing general partner between 1980-83, directed design/build and construction firm. Projects included retail stores, specialized military and educational projects including classrooms, university laboratories, medical and dental offices, hospital interiors, and computer rooms.

Paul W. McKim, AIA, Architect & Associates.  Project manager between 1978-80 providing design, document production, structural detailing, and construction administration on medical and health care facilities, city redevelopment projects, and office buildings.  Coordinated consultants and development teams during construction document production and construction administration.

C and C Services Inc., Cucamonga, CA.  Architectural and construction project manager with real estate developer and restaurant operations company between 1974-78.  Assisted in site selection, budgeting, planning, building design, cost estimating, and production of construction documents for commercial, retail and restaurant sites.  Scope included investigations and drawings for on and off-site improvements, buildings, restaurant interiors, and kitchen facilities.  Projects were located throughout southern California.

James Rodney Youngson AIA, Architect.  Draftsman/designer between 1973-74 on 2-custom residential projects and two ocean-front condominium projects in La Jolla, California.

John T. Sigurdson AIA and Associates.  Draftsman/designer between 1971-73 on new church sanctuary and multi-purpose building, professional office building and custom homes in San Diego County.

Brown and Zammitt Electrical Engineering.  Draftsman between 1970-71 on assorted US Navy projects and corporate office buildings in San Diego County.

330 Encinitas Blvd., Suite 202-G, Encinitas, CA 92024
(858) 836-3210  /  Fax  (760) 230-2507
www.joelsonvail.com  /  CSL No. 740477

3

## Joelson Vail Associates LLC

### PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

**EDUCATION:**

Mount San Antonio College—A.A. in Liberal Arts and Sciences, 1970
San Diego State University—A.B. in Liberal Arts, 1971,  Philosophy with Minor in English
Newschool  of Architecture and Design, San Diego—Bachelor of Architecture, 2001

**Additional Studies:**

| | |
|---|---|
| University of California, Berkeley – | Liberal Arts and Philosophy – 1970 |
| University of California, San Diego – | Extension Studies in Architecture and Construction  - 1973-74 |
| San Diego State University – | Extension Studies in Construction Practices and Technology - 1976-77 |
| San Diego Community Colleges— | Studies in Computers, Architecture, AutoCAD, and Commercial Photography – 1989-94 |

**CERTIFICATIONS AND MEMBERSHIPS:**

➢ *Licensed Architect - States of California (C-23998) and Arizona (27627)*
➢ *Member-American Institute of Architects (AIA)*
➢ *Certified by National Council of Architectural Registration Boards (NCARB)—69373*
➢ *Certified Access Specialist—CASp—061 by California Division of State Architect (CA-DSA)*
➢ *Founding Member—Certified Access Specialist Institute (CASI)*
➢ *Certified Accessibility Inspector and Plans Examiner-(0426540-21) by International Code Council (ICC)*
➢ *Certified Building Inspector-(0426540-01 & 10) by International Code Council (ICC)*
➢ *Licensed General Building Contractor – P.A. Joelson & Co., Inc. (B-454727-- California)*
➢ *Licensed General Building Contractor - Joelson/Vail Associates LLC (B-740477 – California)*
➢ *Member- Forensic Expert Witness Association (FEWA)—Orange County/San Diego County*

## Joelson Vail Associates LLC

### PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

**PAUL A. JOELSON AIA, NCARB, CASp and PETER C. VAIL** teamed up over 25 years ago to establish a forensic consulting and construction management firm that would offer a unique approach where each principal would combine their diverse experiences in real estate development, the construction industry and the architectural professions.  With over 90 years of combined experience managing projects throughout California and the southwest, the partners are each a recognized expert in his area of expertise with proven technical and leadership skills in managing forensic investigations.  Their solid experience, and investigative, analytic and skills in testifying have gained the respect of clients and peers.

The firm specializes in providing investigative and forensic services to attorneys, developers, contractors, architects,  insurance companies and property owners.  Services are provided during preconstruction in the form of consulting and plan reviews, quality control inspections during construction and the close-out / punch-list phase, and during litigation in such matters as construction defect claims, ADA compliance, errors and omissions, contract disputes, personal injury claims and real estate disclosure.  Project types include single family dwellings, industrial buildings, mid-rise/high-rise multi-family and mixed-use, public works and commercial projects.

The following is an overview of general services provided by the firm:

#### GENERAL CONSULTING AND FORENSIC SERVICES INCLUDE:

➢ Condition Assessments of Distressed Properties and Failed Building Systems
➢ During Real Estate Transactions—Due Diligence Investigations and ADA Assessments
➢ Building Code Analysis and Compliance Inspections
➢ CASp Certified / Accessibility Compliance Assessments per CBC, ADA & ICC/ANSI A117.1
➢ Cost Estimating and Value Analysis for Repairs and New Construction
➢ Architectural Design and Project Specifications for Reconstruction and Repairs
➢ Permit Coordination with Public Agencies, i.e., Planning, Coastal, Zoning, Building, etc.
➢ Delay Claims, Scheduling and Construction Management
➢ Personal Injury Claims Related to Architectural Components
➢ Quality Control—Peer Reviews of Construction Documents and Work in Progress
➢ Inspection and Assessment of Building Envelope Failures, i.e., curtain walls, roofs, sheet metal, windows, doors, exterior finishes, decks, waterproofing, drainage systems, foundations, retaining walls, etc.

330 Encinitas Blvd., Suite 202-G, Encinitas, CA 92024
(858) 836-3210  /  Fax  (760) 230-2507
www.joelsonvail.com  /  CSL No. 740477

5

 Joelson Vail Associates LLC

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

### Architect, General Contractor, Certified Access Specialist & Building Inspector

### CLIENT LAW FIRMS—Partial List

Yunker & Schneider
San Diego, CA.

Kring & Chung
San Diego and Irvine, CA

Morris, Polich, & Purdy
Los Angeles & Orange County, Ca

Prenovost, Normandin, Bergh & Dawe
Santa Ana, CA

Rockwood & Noziska LLP
San Diego, CA

Berger Kahn
Irvine & Los Angeles

Borton, Petrini & Conron
Los Angeles, Newport Beach & San Bernardino

Gordon & Rees
San Diego, CA

Balestreri, Pendleton & Potocki
San Diego, CA

Kolodny & Pressman
San Diego, CA

Law Office of D. Reid Garrey
Scottsdale, AZ

Schreck Brignon
Las Vegas, NV

Laskero and Associates
San Diego & Santa Ana, CA

Murchison & Cumming
Los Angeles, CA

Endeman, Lincoln Turek & Heater
San Diego, CA

Law Office of Richard Wianecki
Orange, CA

Law Office of James Greer
Del Mar, CA

Smith. Larson & Wixom
Las Vegas, NV

Lewis, D'Amato, Brisbois & Bisgaard
San Diego, Orange County & San Bernardino, CA

Gordon & Holmes
San Diego, CA

Law Office of James Zurawski
Orange, CA

Simpson, Delmore & Greene
San Diego, CA

DLA Piper US LLP
San Diego, CA

Hollins & Schechter
Santa Ana, CA

Neil, Dymott, Perkins, Brown & Frank
San Diego, CA

Wingert, Grebing, Brubaker & Ryan
San Diego, CA

330 Encinitas Blvd., Suite 202-G, Encinitas, CA 92024
(858) 836-3210  /  Fax  (760) 230-2507
www.joelsonvail.com  /  CSL No. 740477

6

# Joelson Vail Associates LLC

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector



### ADA, ANSI, IBC AND TITLE 24 (CBC)
### ACCESSIBILITY CONSULTANTS

### CALIFORNIA CASp CERTIFIED
### COMPLIANCE AUDITS

Under the direction of Paul A. Joelson AIA NCARB CASp, Joelson Vail Associates LLC consults on compliance with the accessibility design standards and code requirements as prescribed by the Americans with Disabilities Act of 1990 (ADA), the International Building Code (IBC), ICC/ANSI A117.1, and Title 24-California Building Code (CBC).

Mr. Joelson's expertise is demonstrated by his unique qualifications as a California and Arizona Licensed Architect, a Certified Access Specialist (CASp-061) regulated by the California Division of the State Architect, and a Certified Building Inspector and Accessibility Inspector / Plans Examiner regulated by the International Code Council (ICC).

Over the last twenty five years, Mr. Joelson has been an ADA design specialist, code compliance consultant and expert recognized by both state and federal courts. The scope of services has included consulting to architects, developers, public entities, retail businesses and property owners during the planning, construction document and construction phases. In addition, he has provided litigation support and expert witness services representing such clients in lawsuits over denied access for person with disabilities, design standards of care, design errors and/or omissions, construction defects, personal injury claims and/or contract disputes.

Mr. Joelson has provided design services to modify and construct personal home-care facilities employing universal design principles to accommodate quadriplegic and paraplegic clients injured in a variety of workplace or traffic accidents.

Under authority of Senate Bill 1608, as a CASp Inspector (#061), Mr. Joelson is authorized to provide CASp certified inspections and reports. Upon completion of an inspection and delivery of a report of findings and recommendations, he is authorized by the State of California, Division of the State Architect (DSA) to issue a watermarked and numbered certificate as evidence of

# Joelson Vail Associates LLC

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

such inspections.  The certificate is accompanied by a cover letter with one of two caveats:

1) The premises as inspected are in "Full- Compliance" with the code and standards and the certificate represents that fact;

2) The certificate represents evidence of an CASp inspection, however, "Compliance is Pending" and contingent upon repairs according to the  report.

The goal of the state sponsored program is to provide special benefits to property owners to discourage litigation, and/or streamline a disabled access lawsuit to contain costs and save time by mandating a 90 day stay and directing the parties to meet in an early evaluation conference.



Between 2009 and 2013, Mr. Joelson conducted over twenty (20) seminars and developed coursework on behalf of the American Institute of Architects (AIA) for over 1,500 architects to obtain Mandatory Continuing Education (MCE) units for license renewal as required by the California Board of Architects pursuant to SB 1608.  The courses are also approved to satisfy annual AIA requirements for continuing education on Health, Safety and Welfare (HSW) issues.  The courses cover the history and scope of accessibility laws and standards, differences between state and federal standards, practical applications in design and construction, Design Strategies for Compliance—Practical Applications of Code Requirements, Universal Design, Peer Review Techniques, and the typical "ADA Suspect" assemblies that are the basis for lawsuits claiming civil rights violations and denial of equal access to public accommodations.

In addition, Mr. Joelson has provided seminars and managed discussion groups with various business groups including various Chambers of Commerce in San Diego County, insurance adjusters, industry experts, manufacturer's of accessibility related products, property managers, etc.

330 Encinitas Blvd., Suite 202-G, Encinitas, CA 92024
(858) 836-3210  /  Fax  (760) 230-2507
www.joelsonvail.com  /  CSL No. 740477

8

## Joelson Vail Associates LLC

### PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

## OVERVIEW OF JOELSON VAIL ASSOCIATES ACCESSIBILITY COMPLIANCE CONSULTING , INSPECTION AND DESIGN SERVICES

➢ CASp Certified Accessibility Compliance Audits to Private and Public Clients;
➢ Property Inspections, Inspection Reports and Compliance Recommendations;
➢ Transition Plans for Public Entities Covered by Title II;
➢ Expert Witness to Attorneys on Behalf of Public Entities and Private Businesses;
➢ Peer Review of Architectural Plans—Consulting Strategies for Compliance;
➢ Barrier Removal Design, Plans, and Permit Services;
➢ Cost Estimating and Value Engineering for Compliance Strategies;
➢ Third Party Inspections of New Construction and Alterations;
➢ Coordination and Representation with Local Building and Planning Departments;
➢ Training Seminars to Architects, Engineers, Building Inspectors and the Property Management-Facilities Staff of Public  and Private Corporate Entities

## THE APPLICABLE CODES AND STANDARDS ON WHICH JVA CONSULTS

➢ California Building Code—Title 24, (CBC 95, 98, 2001, 2007, 2010, 2013, 2016);
➢ Uniform Building Code (UBC)—Legacy Codes through 1997;
➢ Americans with Disabilities Act Of 1990 (ADA) and the 1991 ADAAG Standards and Supplements (1998—2002);
➢ ADA/ABA Guidelines—2004 and ADAS—2010, FINAL VERSION;
➢ Federal Fair Housing Act (FHA);
➢ ICC/ANSI A-117.1-1998, 2003, 2009 and 2012;
➢ International Building Code (IBC)—2000, 2003, 2006, 2009 and 2012;
➢ California—Office of Statewide Health Planning and Development (PSHPD) Accessibility Regulations pertaining to Hospitals, Assistive Living, Licensed Care Facilities, etc.
➢ Principals of Universal Design as applied in Acute Care and Long Term Care Facilities, and Home Care Facilities.
➢ Principals of Universal Design as applied to Residential and Independent Living Arrangements for Seniors and/or Persons with Disabilities.

330 Encinitas Blvd., Suite 202-G, Encinitas, CA 92024
(858) 836-3210  /  Fax  (760) 230-2507
www.joelsonvail.com  /  CSL No. 740477

9

# Joelson Vail Associates LLC

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

### PARTIAL LIST—ADA CLIENTS, SCOPE OF SERVICES & FACILITY TYPE:

➢ Windsor Capital—ADA/ CASp compliance consultant to franchise operator upgrading Embassy Suites and Marriott Hotels in California, Georgia and Nevada.

➢ City of Imperial Beach—Consultant to City Attorney regarding compliance of restrooms, parking, paths of travel, and amenities at Veterans Park

➢ City of Solana Beach—Consultant to City Attorney regarding status of accessible parking in various public parking lots and Public Right of Way.

➢ Neiman Marcus Department and Outlet Stores—ADA/ CASp compliance consultant on upgrade of the company's California Stores.

➢ San Diego Trolley District / San Diego MTS  Expert witness and court testimony, accessibility consultant on train-trolley stations, site access and parking;

➢ Providence Tarzana Medical Center, Tarzana, CA  Expert witness, accessibility consultant regarding hospital facilities, multi-building campus/site facilities;

➢ State of California Employment Development Department  Inspection of branch offices and related sites in San Diego county;

➢ San Diego Work Force Partnership  Inspection of office building, training rooms and related sites in San Diego county;

➢ City of San Clemente, CA  Expert witness, accessibility consultant and inspection of city center administration building and site;

➢ San Diego Unified Port District  Expert witness—San Diego International Airport—Terminal 1—paths of travel and entrance doors;

➢ Helix Water District, La Mesa California  Conducted self audit and transition plan of 4 sites including, administration building, treatment facilities, operations center and Lake Jennings campground and boating-fishing facilities;

➢ Buca de Beppo Restaurants  Expert witness, accessibility code consultant and site compliance assessments at various southern California stores;

➢ Cost Plus / World Market  Self-audit and compliance assessment of retail stores throughout California—public and employee sides.  Scope included over 70 stores;

➢ Petco Stores  Conducted CASp inspection relative to entrances, public restrooms, aisles, checkout counters and POS devices;

➢ Levi Strauss Company  Expert witness, forensic consultants and site inspections of mall and outlet center stores (Docker and Levis) throughout California, New York, Florida, Georgia, Alabama, Illinois and Oregon—scope include both public and employee sides;

➢ Target Corporation / Target Stores  Expert witness, building code and accessibility codes consultant and site inspections and store audits in various southern California stores ;

330 Encinitas Blvd., Suite 202-G, Encinitas, CA 92024
(858) 836-3210  /  Fax  (760) 230-2507
www.joelsonvail.com  /  CSL No. 740477

# Joelson Vail Associates LLC

## PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

➢ Fullerton Joint Union High School District, Fullerton, CA  Architect of record and accessibility consultant on remodeling and upgrades at 7 high schools between 1996-2000—scope included football stadiums, gymnasiums, classroom and physical education facilities;

➢ San Diego Padres Baseball Club—Petco Park   Expert witness and consultant regarding stairs, ramps, circulation and paths of travel, etc.;

➢ Los Angeles Clippers—Los Angeles Sports Arena  Architect of record regarding upgrades to stairs, ramps, circulation and paths of travel, restrooms, administrative offices, locker rooms, etc.;

➢ City of San Diego, CA  Consulted on multiple public park facilities—expert witness and consultants regarding design of public rights of way elements (PROW), etc.);

➢ Mandalay Bay Hotel & Casino, Las Vegas   Expert witness and accessibility consultant regarding client rooms, public recreational areas, common area paths of travel, swimming pools, public restrooms, check-in desk, etc.;

➢ Monte Carlo Hotel & Casino, Las Vegas  Expert witness and accessibility consultant regarding client rooms and bathing facilities;

➢ Luxor Hotel and Casino  Expert witness and accessibility consultant regarding design of accessible guest rooms and supporting bathroom elements, fixtures, etc.

➢ Ralph's Supermarkets, Southern California  Expert witness and accessibility consultant regarding site and interior facilities—parking, paths of travel, restrooms, service counters, check-stands and POS devices, etc.—numerous locations in southern California);

➢ Party City Stores—Southern California   Expert witness and accessibility consultant regarding site and interior facilities—parking, paths of travel, restrooms, service counters, check-stands and POS devices, etc.—various locations in San Diego county;

➢ NewSchool of Architecture and Design—San Diego   Conducted CASp accessibility audit and developed transition plan for school, included 30+ classrooms, 19 restrooms, elevators, paths of travels, directional signage, administrative offices, etc.;

➢ Yoshinoya Beef Bowl Restaurants—Southern California  Expert witness and accessibility consultant regarding site and interior facilities including parking, sales counters, seating and restrooms—various locations;

➢ Del Taco Restaurants, Southern California  Expert witness and accessibility consultant regarding site and interior facilities including parking, sales counters, seating and restrooms—numerous locations throughout southern California;

➢ City of San Marcos, CA  Expert witness and accessibility consultant regarding major city park and facilities and public right of way improvements throughout city;

330 Encinitas Blvd., Suite 202-G, Encinitas, CA 92024
(858) 836-3210  /  Fax  (760) 230-2507
www.joelsonvail.com  /  CSL No. 740477

11

## Joelson Vail Associates LLC

### PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

- ➢ <u>City of Encinitas, CA</u>  Designed quality control program and inspection checklist for assessment of curb ramps and other PROW elements.  Conducted teaching seminars to public works and city engineering staff to implement inspection procedures for both public and private contracts;
- ➢ <u>Pizza Hut Restaurants, San Diego and Imperial Counties, CA</u>  Expert witness and accessibility consultant regarding site and interior facilities including parking, sales counters, seating and restrooms;
- ➢ <u>Subway Restaurants, Southern California</u>  Expert witness and accessibility consultant regarding site and interior facilities including parking, sales counters, seating and restrooms;
- ➢ <u>Frye's Electronics, Southern California</u>  Expert witness and accessibility consultant regarding site and interior display and sales facilities;
- ➢ <u>Grossmont Shopping Center, La Mesa, CA</u>  Expert witness and accessibility consultant regarding site accessibility and disabled access parking;
- ➢ <u>Honda Center—Anaheim, CA</u>  Consultant and expert to City of Anaheim regarding claims of non-compliant conditions pertaining to stadium seating, restrooms, ticket counters, food service and bar counters, amenities, and seating;
- ➢ <u>St. Mary's Hospital and Medical Center—Apple Valley, CA</u>  Consultant and expert on case filed pertaining to interior facilities at emergency room and accessible parking;
- ➢ <u>Grossmont High School District—La Mesa, CA</u>  Consultant and expert for school district on accessibility issues raised regarding accessibility parking, and access to and accessible seating at El Capitan High School football stadium in Lakeside, CA;
- ➢ <u>Sweetwater High School District—Chula Vista, CA</u>  Consultant and expert for school district on accessibility issues raised regarding accessibility parking, and access to and accessible seating at Rancho Bonita High School football stadium in Chula Vista, CA;
- ➢ Consultant to numerous owners and developers of "covered housing projects" – apartments, student housing and mixed-used projects subject to (Title 24-CBC—Chapter 11A—Accessible Housing Requirements);
- ➢ Consultants and Experts to Numerous Real Estate Investment Trusts (REIT's)— Consultant and expert to owners and managers of office buildings and parks, regional and neighborhood shopping centers and industrial parks.  Issues include site accessibility and parking, and interior facilities including circulation, restrooms, etc.;
- ➢ Consultants and Experts—Consultant and expert to numerous individually owned southern California retail outlets, office buildings, shopping centers, professional

330 Encinitas Blvd., Suite 202-G, Encinitas, CA 92024
(858) 836-3210  /  Fax  (760) 230-2507
www.joelsonvail.com  /  CSL No. 740477

12

## Joelson Vail Associates LLC

### PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

buildings, medical offices, etc.  Issues include site accessibility and parking, and interior facilities including circulation, restrooms, etc.;

### FACILITY OR BUILDING TYPES:

Joelson Vail Associates LLC provides ADA compliance assessments, accessibility-universal design, transition plans and reconstruction management services on the following building types and program uses:

➢ Public Buildings—Municipal and State
➢ Public Schools and Related Sites;
➢ City Parks and Recreation Facilities;
➢ Municipal and School Playgrounds;
➢ Public Campgrounds and Picnic Areas;
➢ Public and Private Parking Lots and Garages (Above and Below Grade)
➢ Municipal Rights of Way—Streets, Sidewalks, Bike Lanes, Paths of Travel, etc.;
➢ Swimming Pools and Spas;
➢ Health Clubs and Gyms;
➢ Lakes—Boating and Fishing Facilities;
➢ Shopping Centers—Retail Stores and Food Courts;
➢ Restaurants and Bars;
➢ General Retail—Food Stores, Clothing, General Merchandise, etc.;
➢ General Office Buildings and Interiors;
➢ Medical Buildings and Interiors;
➢ Motel and Hotel Guest Rooms;
➢ Hotel and Casino Facilities—Las Vegas;
➢ Multi-Family Projects—Apartment Buildings, Condominiums;
➢ Mixed-Use Projects—Residential, Office and Retail Combined;
➢ Hospital and Rehabilitation Facilities,
➢ Sports Arenas and Public Sports Stadiums;
➢ Single Family Residences—Universal Design Consulting and Retrofitting of Properties for Seniors, Quadriplegics and Paraplegics.

330 Encinitas Blvd., Suite 202-G, Encinitas, CA 92024
(858) 836-3210  /  Fax  (760) 230-2507
www.joelsonvail.com  /  CSL No. 740477

13

**Joelson Vail Associates**LLC

### PAUL A. JOELSON AIA  NCARB  CASp  ICC

Architect, General Contractor, Certified Access Specialist & Building Inspector

### HISTORY OF TESTIMONY PROVIDED—2010 TO DATE

KEY—Court/Deposition Testimony Provided with ADA Issues Highlighted

    A.  Depositions (D x Days-Full or Partial);
    B.  Trial (T x Days-Full or Partial);
    C.  ADA (Includes Federal ADA Compliance, FHA or State Housing Accessibility Code Compliance (Chapter 11A), California Building Code Accessibility Compliance (Chapter 11B), ANSI Standards,  International Building Code (Chapter 11), and/or Accessibility-Universal Design Issues)

PARTIAL LIST OF RECENT CASES WHERE TESTIMONY WAS PROVIDES SINCE 2012:

1.  Durant vs. Ramparts (Luxor Hotel and Casino) (Dx1) (ADA)

2.  Grande South HOA vs. Bosa Development of California (Dx1)

3.  Horizons vs. Bosa Development of California (Dx1)

4.  Jolon-Puac vs. Jefford, et al (D x 1) (ADA)

5.  JJM Resorts vs. J.W. Stratton (T x 1)

6.  Young vs. Zarians, et al (D x 1) (T x 1) (ADA)

7.  Miller vs. General Motors, et al (D x 1) (ADA)

8.  Beck vs. Providence Tarzana Medical Center (Tx1) (ADA)

9.  Hurtado vs. Century Housing, et al (D x 1) (ADA)

10. Romaine vs. San Diego MTS / San Diego Trolley (D x1) (T x 2) (ADA)

11. Seaton vs. City of San Marcos (D x1) (ADA)

12. Porto Siena HOA vs. InterCorp, et al (D x 7) (ADA)

13. Price Charities vs. Martinez and Cutri, et al (D x 6) (ADA)

14. Rodriquez vs. Cake Trust (T x 1) (ADA)

15. Elliman vs. Tourian (D x 1)

16. Sturgeon vs. Milcon Services (D x 4)

17. Smith vs. Byrnes ( D x 1)

18. Chait vs. Strauch (D x 4) (T x 2)

330 Encinitas Blvd., Suite 202-G, Encinitas, CA 92024
(858) 836-3210  /  Fax  (760) 230-2507
www.joelsonvail.com  /  CSL No. 740477

14

Joelson Vail Associates LLC

**PAUL A. JOELSON AIA  NCARB  CASp  ICC**

Architect, General Contractor, Certified Access Specialist & Building Inspector

19. San Diego Zoological Society vs. Nielsen Construction, Tucker Sadler Associates, et al (D x 4) (ADA)

20. Villa Bay HOA, et al vs. Luben Walchef, et al (D x 4) (T x 1) (ADA)

21. Michael York vs. Jacobson (D x 1) (T x 1)

22. Lehman vs. Bondy (D x 1)

23. Neighborhood Management Services vs. Island Dental, et al (D x 1) ( T x 1) (ADA)

24. Treehouse v. Eide (D x1) (Tx1) (ADA)

25. Winslow vs. Kingsbury (Dx1) (Tx1)

26. Tang vs. Arena Associates / Staples Center (Dx1) (Tx1)

27. Lammey vs. WGSL-2 (Church's Chicken) (Tx1 in Federal District Court / Los Angeles) (ADA)

28. Malave vs. City of Los Angeles (Third Party Complaint against General Contractor/Architect) (Dx1) (Tx1 in Federal District Court / Los Angeles) (ADA)

29. Montoya v City of San Diego – ADA Claim against City Regarding Scooters in PROW (Dx1)

330 Encinitas Blvd., Suite 202-G, Encinitas, CA 92024
(858) 836-3210  /  Fax  (760) 230-2507
www.joelsonvail.com  /  CSL No. 740477

15

# EXHIBIT B

# JULIAN MARTINEZ

(530) 383-0677
julian.martinezadaconsultant@gmail.com

## CURRICULUM VITAE

Served over 28 years in the California Department of Corrections and Rehabilitation (CDCR) before retiring as a Correctional Administrator. Worked at four adult institutions ranging from minimum to maximum security. 35 years of experience in correctional management and operations both in administrative and custodial positions.

Served as an institution investigator, academic, physical fitness, and tactical instructor as well as the Assistant Drill Commander at the Correctional Academy. Spent 17 years assigned to the CDCR's administration writing departmental policies and procedures, developing audit tools and methodologies, and conducting institutional audits of the incarcerated person discipline process, mailroom, institution security, escape prevention, use of force, conditions of confinement and administrative segregation bed utilization. Served as the assistant project manger for CDCR's drug reduction strategy and as the Chief of the Health Care Placement Unit. Served as the Chief of Court Compliance and managed the major litigation cases related to the Americans with Disabilities Act (Clark v California, and Armstrong v Brown), conditions of confinement for condemned incarcerated persons (Lancaster v Tilton), access to law library services, (Gilmore v State of California), parole revocation due process (Valdivia v Davis), and conditions of confinement in the juvenile facilities (Farrell v Cate). Reviewed and approved institutions American Correctional Association Standards & Accreditation reports that were conducted of CDCR institutions/facilities.

Served as an expert and provided testimony in disability related matters and has also provided expertise in developing curriculum for managers, supervisors, and correctional staff throughout the State of California.

Serve as Federal Court Monitor in ADA litigation cases ensuring defendants in ADA litigation cases comply with settlement agreements/consent decrees for ADA cases involving mobility disabilities and deaf and/or hard of hearing for incarcerated persons housed in county jails and state prisons. Cases include McBride v. Michigan Department of Corrections (Deaf and/or Hard of Hearing) Civil Action No. 2:15-cv-11222 (case terminated), Jewitt v. County of Shasta, et.al. Cole v. (Mobility Disabilities) Civil Action No. 2:13-cv-0882 (case terminated), Cole v. County of Santa Clara (Mobility

17

Disabilities) Civil Action N0. 5:16-cv-06594, Murray v. County of Santa Barbara Case No. 2:17-cv-08805-GW-JPR, Hernandez v. County of Monterey Case No.CV 13 2354 PSG, and Criswell v. Boudreaux Case No. 1:20-cv-01048-DAD-SAB (COVID-19) (case terminated), Babu v. Ahern (County of Alameda) Case No. 18-cv-07677-NC, and Orange County Pre-litigation agreement (All Disabilities, Restrictive Housing, and LGBTQI).

I am also currently serving as plaintiff's expert in the case of Harris et al. v. Georgia Department of Corrections, et al., 5:18-cv-00365-TES a case related to Deaf and/or Hard of Hearing incarcerated persons housed in the Georgia Department of Corrections, in the case of Faour Abdallah Fraihat v. U.S. Immigration and Customs Enforcement; U.S. Department of Homeland Security, Case No. 19-cv-01546 (C.D. Cal.), a case related to disabled detainees housed in the jurisdiction of the U.S. Immigration and Customs Enforcement; U.S. Department of Homeland Security and contracted facilities, Ernest Kevin Trivette. v. Tennessee Department of Corrections, Civil No. 3:20-cv-00276 (Deaf and/or Hard of Hearing and in the case of Estate of Linda Miller v. County of Sutter and County of Nevada, 20-cv-00577-KJM-DMC an in-custody suicide death. I am also currently serving as defendant's expert in the case of Dunsmore v. San Diego County Sheriff's Department Case No. 3:20-cv-00406-AJB-DDL a case related to the Americans with Disabilities Act.

I have prepared expert reports in the cases of Jeremy Jones v. Ballesteros et al., Case No. 2:10-cv-02661 (E.D. Cal.); Everett Joseph Jewett v. County of Shasta, et. al, 2:13-cv-0882 –MCE (E.D. Cal.); Leon Thomas v. Francisco Quintana, et al. CV-10-02671 JGB-CW (C.D. Cal.); Norbert v. San Francisco County Sheriff's Department, City and County of San Francisco, Case No. 3:19-cv-02724 SK (N.D. Cal.); Maxwell v. Outagamie County No.: 2:20-CV-0386-WED (E.D. Wis.), Harris v. Georgia Department of Corrections, et al. Case No. 5:18-cv-365-TES, and  Trivette v. Tennessee Department of Corrections Civil No. 3:20-cv-00276 (M.D. Ten. filed on Nov. 12, 2020). I have testified as an expert by deposition in the past four years in the cases of Norbert v. San Francisco County Sheriff's Department, City and County of San Francisco, Case No. 3:19-cv-02724 SK (N.D. Cal.), and Maxwell v. Outagamie County, No. 2:20-CV-0386-WED (E.D. Wis.). I have also testified in trial in the case of Norbert v. San Francisco County Sheriff's Department, City and County of San Francisco, Case No. 3:19-cv-02724 SK (N.D. Cal.).

Conducted Gap Analysis Assessments of the Jails for the County of

2

Orange (ADA, Restrictive Housing, Access to Medical/Dental and Mental Health Care, LGBTQI), Santa Clara County (ADA and Use of Force), Sacramento County (ADA), and Shasta County (ADA).

Conducted security audits of Mexican prisons in coordination with International Narcotics and Law Enforcement Section of the United States Embassy.

Conducted Prevention of Sexual Abuse audits of Office of Refugee Resettlement shelter facilities throughout the United States.

Conducted a COVID-19 review at the Shasta County Jail.

## EXPERIENCE

**April 2019 to Present**

Appointed as the Operational Monitor in the *Cole v. Santa Clara County* federal class-action lawsuit challenging access to programs, services, and activities at the Santa Clara County Jails (SCCJ) for Mobility Disabled incarcerated persons housed in the SCCJ.

**June 2015 to Present**

Served as Federal Court Monitor in ADA litigation cases ensuring defendants in ADA litigation cases comply with settlement agreements/consent decrees for ADA cases involving mobility disabilities and deaf and/or hard of hearing for incarcerated persons housed in county jails and state prisons. Cases include McBride v. Michigan Department of Corrections (Deaf and/or Hard of Hearing) Civil Action No. 2:15-cv-11222, Jewitt v. County of Shasta, et.al. Cole v. (Mobility Disabilities) Civil Action No. 2:13-cv-0882, Murray v. County of Santa Barbara Case No. 2:17-cv-08805-GW-JPR, Hernandez v. County of Monterey Case No.CV 13 2354 PSG, and Criswell v. Boudreaux Case No. 1:20-cv-01048-DAD-SAB (COVID-19). Babu v. Ahern (County of Alameda) Case No. 18-cv-07677-NC, and Orange County Pre-litigation agreement (All Disabilities, Restrictive Housing, and LGBTQI).

**June 2015 to Present, Sabot Consulting, Folsom, CA**

Provided consultant services to Santa Clara, Shasta, and Sacramento County Jails. Conducted ADA Assessments (program and policies) and Use-of Force review at Santa Clara County Jail and Sacramento County Jail. Conducted ADA and Use-of–Force training to managers, supervisors, correctional deputies, medical/mental health staff, and other non-peace officer staff at

3

Santa Clara County Jail.   Training included Americans with Disabilities Act disability awareness.

**March 2008 to May 2014, Chief of Court Compliance**
                    **Office of Audits and Court Compliance**

Responsible for the supervision of Facility Captains and 46 staff ensuring court-mandated compliance with the Department's Americans with Disabilities Act (ADA) programs for incarcerated persons and parolees with disabilities, the remedial policies approved by the courts in major class action lawsuits including, but not limited to, *Armstrong v. Schwarzenegger, Clark v. California, Valdivia v. Schwarzenegger*, *Lugo v. Schwarzenegger and Lancaster v. Schwarzenegger*.   Providing general oversight of Facility Captain and Correctional Counselor II staff located at California Department of Corrections and Rehabilitation's (CDCR) Headquarters and at institutions throughout the state.   Working collaboratively with staff from other CDCR divisions and offices impacted by the above listed court cases and with staff from other State agencies as necessary.   Reviewed and approved institutions American Correctional Association Standards & Accreditation reports that were conducted of CDCR institutions/facilities.

**August 2007 to March 2008, Facility Captain**
                    **Division of Addiction and Recovery Services**

Supervise and train DARS' Correctional Counselors II/III. Provide administrative and technical expertise in the development and implementation of new in-prison Substance Abuse Programs (SAPs), and SAP policies and procedures.   Perform in-prison SAP reviews for program effectiveness and make recommendations for improvement to the DARS Program Managers.   Plans, organize, and direct the development, implementation, and administration of SAPs statewide.   Provide management and supervision, to all Correctional Counselors II/III who have responsibility for statewide SAP monitoring, institution liaison, SAP program development and activation, and incarcerated person classification and custody issues. Investigate reports of incarcerated person, parolee, and contract staff misconduct and other regulation and rule infractions and recommend appropriate action.   Evaluate the effectiveness of existing incarcerated person placement criteria and provide technical expertise in development of new placement programs designed to increase bed capacity. Liaison with in-prison SAP Contractor staff, Parole Agents, Correctional Counselors,

4

incarcerated persons, incarcerated person families, the Legislature, the media, and the public on sensitive in-prison SAP issues. Liaisons with the Division of Adult Institutions, Division of Parole Operations, and other agencies, on SAP establishment and incarcerated person classification and placement issues. Liaison with key administrators at the University of California, San Diego, Pacific Southwest Addiction Transfer Center, concerning training and technical assistance issues for the statewide SAPs, and the University of California, Los Angeles, for program evaluation and continuous quality improvement issues. Serves as a member of the DARS Policy Advisory Committee and the DARS Continuous Quality Improvement Committee.

**April 2006 to August 2007 Chief, Health Care Placement Unit**
**Division of Correctional Health Care Services**

Managed and directed the Population Management Unit supervising a multi-disciplinary team of three Correctional Counselor III's, two AGPA's and one OT. Coordinated with Health Care Regional Administrators, Mental Health Headquarters staff as well as clinical and custody staff in the field, in the direction, placement, and transportation of incarcerated persons/patients who need medical or psychiatric care, consistent with custody requirements and the Department's need to protect public safety. Was responsible for coordinating the development and implementation of Unit policies and systems with managers with DCHCS, as well as managers in other organizations such as; Classification Services Unit, Transportation Services Unit, Division of Adult Institutions, Board of Parole Hearings, Offender Information Services, Community Correctional Facilities, Division of Adult Parole Operations, Parole Outpatient Clinics, Department of Mental Health, County Jails and Community Hospitals and Medical Transportation Contractors.

Supervised the development and implementation of policies and systems that enabled the DCHCS to classify, endorse, place, and move incarcerated persons/patients in a manner which best met the incarcerated persons/patients' health care needs and protected public safety. Managed the reporting system, which enables the institutions and regional staff to rapidly communicate information regarding needed transfers of incarcerated persons/patients. Managed in conjunction with regional clinicians and the Institutions Division's Classification and Transportation Units, appropriate health care classification criteria that was used to evaluate incarcerated person/patient health care needs in relation to security requirements

5

for placement and transportation of incarcerated persons/patients. Managed, in conjunction with the Division of Adult Institutions, Transportation Unit, policies and procedures, which promote the safe and timely transfer of incarcerated persons/patients, including the transport of difficult or exceptional cases. Supervised the analysis and evaluation of health care transport needs, including those which could be met by private contractors and coordinated with health care regional administrative staff, Chief Medical Officers and Classification and Transportation staff the scheduling of incarcerated person/patient movement to ensure incarcerated persons/patients were moved in a safe and timely manner consistent with both health care needs and custody and security requirements on an ongoing basis.   Provided the principal interface/liaison with Health Care Regional Administrators, Associate Director's, Chief Medical Officers, Wardens, DAPO Administrators, and others regarding the Population Management policies and systems to ensure the timely movement and continuity of care of incarcerated persons/patients requiring health services consistent with safety     and security requirements.   This included supervising the development and provision of training on Population Management issues.

**August 2005 to April 2006 Facility Captain**

**California Medical Facility**

Managed planed, organized, and directed a progressive program for the custody, discipline, classification, treatment, employment, and recreation of incarcerated persons in a program that housed 1000 incarcerated persons including, 600 EOP's 100 DDP, 200 CCCMS and 100 GP's.   Interpreted and carried out the policies of the Department of Corrections and Rehabilitation and the institution. Chaired the Unit Classification Committee, organized and conducted classification and other staff meetings for the proper placement of incarcerated persons in the academic and vocational education training and occupational programs. Interviewed and counseled incarcerated persons on their personal problems and selected incarcerated persons to be re-interviewed by members of the classification committee and treatment staff.   Reviewed pre-release and board reports for the qualitative improvement of case understanding and recording. Managed the Unit's Incarcerated person Disciplinary Process.  Established and maintained cooperative working relationships with the institution staff outside the unit; trained, supervised, and evaluated the work of assistants and took and/or recommended appropriate action. Supervised the maintenance of safety and sanitary living conditions within the unit.

6

**July 2003 to August 2005 Correctional Counselor II Specialist**
**Court Compliance Section**

Performed a variety of tasks ensuring the implementation of effective standards and ongoing compliance and monitoring of constitutional requirements applicable to incarcerated persons. Worked with staff from other units/branches, divisions, and agencies in the development and implementation of new and revised policy, including DOM and Title 15 revisions affecting institution and parole operations and processes such as: incarcerated person appeals, custody and classification, disciplinary process, program assignments, services, activities, physical plant, etc. Had lead responsibility for Americans with Disabilities Act (ADA) projects, which required review of field operations to resolve local, or system wide ADA compliance issues. Had led responsibility to develop specialized data needed for CDCR administrators to make necessary decisions pertaining to institution missions, and designated housing or specialized programs for incarcerated persons with disabilities. Prepared reports and presented findings to appropriate administrators. Investigated and prepared written responses to inquiries and correspondence from plaintiffs' attorneys, state, and local agencies, concerned citizens, incarcerated persons and members of their family, etc. Researched and responded to verbal inquiries. Served as a liaison on cases in litigation impacting the Court Compliance Team. Participated in meetings/task force with other CDCR Divisions and/or units to resolve issues relative to incarcerated persons/parolees with disabilities. Developed and provided training to field staff on established policy for incarcerated persons with disabilities. Prepared proposals to secure resources for the support of programs for incarcerated persons with disabilities. Participated in and managed the audits and monitoring tours of CDCR institutions with plaintiffs' attorneys in class action lawsuits. Provided expertise and functional guidance to field ADA coordinators. Served as ADA liaison and expert resource within the Department and representing the Department to federal, state, and local agencies and other persons and entities regarding incarcerated person and visitor accessibility issues and general ADA compliance. Provided staff support to the ADA Title II Warden's Advisory Group. Participated in compliance reviews, studies, projects, and task force groups regarding Title II of ADA.

**July 2001 to July 2003 Correctional Counselor II Specialist**
**Classification Services Unit**

- Health Care Section

7

23

Developed and implemented the Developmental Disability Program to identify DDP incarcerated persons for classification endorsement and transfer of difficult to place incarcerated persons with disabilities. Monitored and ensured conformity of the DDP plan in the impacted DDP facilities. Tracked and monitored DDP incarcerated person placements to ensure appropriate placement. Prepared reports and presented findings to Executive staff and administrators. Assisted in the preparation of Departmental Review Board cases. Responded to inquiries from the public and elected officials. Prepared and processed PC 1170 (d) compassionate release requests for the Directors review. Case conferenced complex classification cases (disciplinary, medical and disability) with CSR's, CDO's, Facility Captains. Conducted Institutional Audits and Compliance Reviews of the Administrative Segregation-Due Process and Administrative Segregation Unit Bed Utilization Reviews.

- Special Assignment – Institution Services Unit, Litigation Management Section.

Member of the Harrington-Wisely vs. State of California Liability Assessment Team. Conducted site visits at specific institutions to gather pertinent statistical data and specific information related to the following areas: 1) discovery of contraband in visiting areas, 2) institutional drug-related offenses, 3) serious/violent incidents, 4) drug-related investigations, and 5) institutional drug interdiction efforts. Worked in cooperation with the Deputy Attorney General's Office representing the Department in this litigation.

**1996–2000     Correctional Lieutenant Institution Services Unit**

- Policy Coordination Section

Developed and reviewed departmental policy. Drafted Regulations, DOM, Administrative Bulletins, Informational Bulletins, and Instructional Memorandums for the areas of Visiting, Property, Incarcerated person Disciplinary process. Responded to inquiries from the public and elected officials. Conducted Institutional Compliance Reviews of the Incarcerated person Disciplinary Process.

- Disciplinary Compliance Review Section

Developed departmental policy related to incarcerated person discipline. Drafted Regulations, DOM, Administrative Bulletins, Informational Bulletins, Instructional Memorandums. Developed and conducted Institutional Audits and Compliance Reviews of the Administrative Segregation-Conditions of Confinement, Incarcerated person Disciplinary Process, Escape Prevention, Institution Security, and Institution Mailroom. Provided training at the Lieutenants Academy in the Disciplinary process and Incident Reporting.

8

Conducted Incarcerated person Disciplinary training at institutional at Wardens request. Participated in numerous institutional Administrative Reviews for the Directorate. Responded to inquiries from the public and elected officials. Drafted Budget Change Proposals. Assigned as the Institutions Division Liaison for the Drug Reduction Strategy Pilot Project.

**August 2000 to June 2001 Correctional Counselor II Specialist Institution Services Unit**

- Disciplinary Compliance Review Section

Developed departmental policy related to incarcerated person discipline                                                                drugs and drug testing. Conducted Institutional Compliance Reviews of the Administrative Segregation-Conditions of Confinement and Incarcerated person Disciplinary Process. Provided training at the Lieutenants Academy in the Disciplinary process and Incident Reporting. Conducted Incarcerated person Disciplinary training at institutional at Wardens request. Participated in numerous institutional Administrative Reviews for the Directorate. Responded to inquiries from the public and elected officials. Drafted Budget Change Proposals. Assigned as the Institutions Division Liaison for the Drug Reduction Strategy Pilot Project. Assisting in the implementation of a Statewide Drug Interdiction Plan.

**1996–1996     Correctional Lieutenant   Valley State prison for Women**

**1994–1996     Correctional Sergeant Instructor   R. A. McGee Correctional Training Center**

Provided formal instruction to the Basic Correctional Officer Cadets attending the BCOA. Curriculum included Peace Officer Standards and Training core curriculum, Report Writing, Physical Training, Firearms Familiarization, Chemical Agents, and numerous other class instructions.

**1993–1994     Correctional Sergeant California Medical Facility**
**1992–1993     Correctional Sergeant Wasco State Prison**
**1986–1992     Correctional OfficerCalifornia State Prison-Solano**

## EDUCATION

**1986–Present**

9

- 12 Semester Units San Joaquin Delta College
- 4 Semester Units Sacramento City College
- 42 Semester Units Yuba College

10

# EXHIBIT C

1                    UNITED STATES DISTRICT COURT

2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3    DARRYL DUNSMORE, AD6237,           )
     California Health Care Facility,   )
4    Stockton 19777041, PO Box 32200,   )
     Stockton, CA  95213; JOSUE LOPEZ;  )
5    CHRISTOPHER NELSON; ET AL.         )
                                        )    No. 20-CV-0406-AJB-DDL
6              Plaintiffs,              )
                                        )
7    v.                                 )    December 7, 2022
                                        )
8    COUNTY OF SAN DIEGO, ET AL.,       )
                                        )
9              Defendants.              )
     _____)    San Diego, California
10

11          TRANSCRIPT OF DIGITALLY RECORDED PROCEEDINGS

12               (Discovery Zoom Conference)

13

14      BEFORE THE HONORABLE DAVID D. LESHNER, MAGISTRATE JUDGE

15

16

17

18

19

20   COURT REPORTER:          AMANDA M. LeGORE
                              RDR, CRR, CRC, FCRR, CACSR
21                            U.S. District Court
                              333 West Broadway, Suite 420
22                            San Diego, CA 92101
                              amanda_legore@casd.uscourts.gov
23

24

25

2

```
1    APPEARANCES:

2    FOR PLAINTIFFS:          PRIYAH KAUL
                              RICHARD VAN SWEARINGEN
3                             Rosen Bien Galvan & Grunfeld LLP
                              101 Mission Street, Sixth Floor
4                             San Francisco, CA  94105-1738
                              (415)433-6830
5                             pkaul@rbgg.com

6

7

8    FOR DEFENDANT COUNTY
     OF SAN DIEGO:            SUSAN COLEMAN
9                             Burke, Williams & Sorensen LLP
                              444 South Flower Street, Suite 2400
10                            Los Angeles, CA  90071
                              (213)236-0600
11                            scoleman@bwslaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Wednesday, December 7, 2022)

 2

 3                   P R O C E E D I N G S

 4

 5         THE COURT:  All right.  Good afternoon, everyone.

 6              This is Dunsmore, et al., versus County of

 7    California, et al., 20-CV-406.

 8              We're here for a discovery conference on a renewed

 9    request by the plaintiffs for expedited discovery.  And I

10    appreciate everyone's flexibility and working around my

11    schedule for today.  So thank you for that.

12              And, Ms. Kaul, thank you for the succinct email,

13    telling me what's going on.

14              So I guess, for starters, let me see if I understand

15    this, Ms. Kaul.  As I was thinking back to September, my

16    understanding was that the prior motion for expedited discovery

17    had approximately six different categories.  And it -- am I

18    understanding this issue now to be that the plaintiff seeks

19    expedited discovery only as to one of those six categories,

20    essentially related to disability access?

21         ATTORNEY KAUL:  That's correct, your Honor.

22         THE COURT:  So I guess my initial question would be

23    this, Ms. Kaul.

24              I -- in the parties' email to me, I see that

25    Ms. Coleman's position is that they object generally, but also
```

4

1    any expedited discovery should focus on issues which are more

2    urgent, such as drug overdoses or suicides.

3            What's the response to that?

4            ATTORNEY COLEMAN:  Well, let me just interject before

5    she responds.  They drafted that without any input from me.  So

6    I wasn't --

7            THE COURT:  Oh.

8            ATTORNEY COLEMAN:  The County wasn't agreeing to

9    discovery on, for example, suicides.  But I was asking why --

10   why are the ADA issues so urgent that we need to do them before

11   a scheduling order?  And I compare -- I compared them to those

12   issues.

13           But throughout the case, they've been saying, you

14   know, we can't wait another day for this response because

15   people are dying; for example.  So I may be -- I'm

16   paraphrasing.  But --

17           THE COURT:  Okay.

18           ATTORNEY COLEMAN:  -- given the focus on the urgency

19   in terms of deaths, this --

20           THE COURT:  Got it.

21           ATTORNEY COLEMAN:  -- this issue -- while ADA issues

22   are admittedly important, they seem --

23           THE COURT:  Hang on real quick, Ms. Coleman.  I

24   appreciate that.  So I guess first things first.  I guess I had

25   understood the email from Ms. Kaul to be -- to have language

31

5

1    that -- with respect to defendants' position that had been

2    vetted by both parties.  And I'm not saying that your email was

3    inaccurate Ms. Kaul.  It's just, in the future, for these

4    emails, I'm under the assumption -- when I get them -- that

5    everybody has seen everything, and that that's been agreed to.

6    So just please make sure that happens in the future.

7                 And secondarily, Ms. Coleman, I didn't read this as

8    you agreeing to expedite discovery at all.  And I get your

9    position on that.

10               So -- but I guess what I would like from the

11   plaintiffs' perspective -- help me understand a little bit the

12   narrowing, Ms. Kaul, and what your thinking is, to the extent

13   you can.

14               ATTORNEY KAUL:  Sure.  So, first off, we -- we were

15   not intending to misrepresent defendants.  We met and

16   conferred, and that was sort of our best attempt at

17   summarizing.

18               THE COURT:  Got it.

19               ATTORNEY KAUL:  But we, afterward, spoke to

20   Ms. Coleman.  And everything will be exchanged in advance of

21   submitting it to the Court.  So --

22               THE COURT:  No worries.  Got it.  I understand.

23               So go ahead, and let's talk about the merits a little

24   bit.

25               ATTORNEY KAUL:  Yes.

1          So, you know, we -- as we explained to Ms. Coleman,

2     we continue to be concerned about all of the issues that we

3     raised in our initially preliminary -- preliminary injunction

4     motion.

5          But we understood, you know, a message from the

6     Court -- well, from, you know, Judge Battaglia, to some extent

7     but also from your Honor, as we went through the expedited

8     discovery process last time, to be that we should, to some

9     extent, be attempting to narrow the scope of our request at

10    this stage.  And we thought that that made some -- some sense.

11         We sort of thought it made sense in terms of

12    potentially reaching agreement on some logistics with

13    defendant, as well as just sort of proceeding with what -- you

14    know, what might be -- what might work best for the parties, as

15    well as the Court.

16         We evaluated the various issues.  The six issues that

17    were originally there.  And there were a few reasons that the

18    ADA issue was the one we are pursuing now.

19         So, first of all, 13 out of 14 of our class

20    representatives are people with disabilities.  Our -- our work,

21    as their counsel, is -- is to, you know, move forward with the

22    issues that are perhaps most relevant or important to them.

23    And these ADA violations are the things that they've been --

24    that they've described -- that our declarants have described in

25    connection with our earlier motion -- constitute irreparable

1  harm.

2          The other thing is that, you know, in our initial

3  motion, the two issues that we focused on were making Narcan

4  more available within the jail, as well as MAT treatment; as

5  part of our discussion of deaths in the jail.

6          We heard, anecdotally, that there has been some

7  movement in the jail on those issues.  We don't know how

8  effective it's been.  We don't know how widespread, how

9  comprehensive, how effective.  But, you know, given that, as we

10  compared it in looking at the ADA issue, we had not heard

11  really anything even anecdotally about reforms or changes

12  coming in the jail after and, we think, because of our moving

13  on the preliminary injunction initially.

14          So given where we were with that, the -- you know,

15  that was why we elected to move forward with this, which is one

16  of -- in our view -- all six serious issues that we initially

17  raised.

18          THE COURT:  No.  And I appreciate that.  And I

19  certainly -- I'm not trying to pry into your, you know,

20  attorney-client communications or your internal work product.

21  And so I totally accept that answer, Ms. Kaul.

22          I guess, as -- as you probably gleaned from the email

23  that my chambers sent on September 27th, my tentative ruling --

24  prior to Judge Battaglia issuing the order granting the motion

25  to dismiss -- was to grant in part the motion for expedited

1  discovery.

2         As to the issues that I -- I'm comfortable telling

3  you, now, seem to me at the time to be the ones of the most

4  pressing urgency, including the overdoses and the safety checks

5  and the working video and audio monitors and that -- without --

6  as compared to the other three issues.

7         And so that's why I wanted to make sure I understood

8  that this is what you are seeking expedited discovery on, is

9  one of the -- the other three issues.

10         And I think where we're headed with this, Ms. Kaul,

11  is I do want more briefing from the parties.  I was -- I was

12  not inclined, at the time, to grant expedited discovery on this

13  issue.  But I welcome, you know, you -- you framing the issue

14  for me and helping me understand why it would be appropriate at

15  this time.

16         Ms. Coleman, I understand you oppose expedited

17  discovery, you know, at all.  And one of the reasons is because

18  you -- I understand you do anticipate filing a motion to

19  dismiss.  Is that correct?

20         ATTORNEY COLEMAN:  That's correct, your Honor.

21         THE COURT:  Without -- without holding you to it,

22  Ms. Coleman, do you anticipate that the motion to dismiss will

23  be directed to all causes of action or just some of them?

24         ATTORNEY COLEMAN:  Well -- well, we're working on the

25  grounds.  But I think one of them will be that -- you know,

9

1    the -- the complaint was dismissed by the judge because it was

2    so broad and convoluted, and he wanted a more simple, concise

3    statement of the facts for each cause of action and -- related

4    to those.  And, in response, plaintiffs filed a 230-page

5    complaint, which added headings under the facts but it is still

6    extremely broad.  So I would say, yes, one of the grounds would

7    be as to the entire complaint.

8           And then, also, some of the ADA services and

9    discrimination and individual causes of action.

10          THE COURT:  Okay.  And, obviously, that will be

11   before Judge Battaglia.  But I appreciate understanding sort of

12   at least preliminarily what your thinking is.

13          ATTORNEY COLEMAN:  So we're thinking the complaint is

14   not yet at issue, and we should hold off on some of this.  But

15   I understand if the Court wants to get briefing and see -- I

16   will also add that we have disclosed to plaintiffs previously

17   that, you know, the Rock Mountain facility is -- is going to be

18   done and operational in the first quarter of 2023.  And that is

19   in the process of being completely ADA compliant.  So the

20   thought is for inmates to move -- or arrestees to move into

21   that facility, and then they can begin retrofitting central

22   jail and some of the other facilities that need some updates.

23   But, you know, that is -- that is all planned.  There are not

24   plans to keep anything nonADA compliant.

25          THE COURT:  Right.  No.  And I remember, from the

 1   prior motion, that the -- one of the facilities that the

 2   disabilities expert was proposed to inspect was Rock Mountain,

 3   which was not open at the time.  You say it is -- the first

 4   quarter of next year, Ms. Coleman?

 5            ATTORNEY COLEMAN:  Yeah.  Sometime by March, they'll

 6   be able to move in inmates.  I don't know -- I don't have a

 7   final date.  I don't know that anyone does yet.  But that's

 8   what they're planning.

 9            THE COURT:  Okay.  All right.  Well, I think where we

10   are, Ms. Kaul --

11            Mr. Swearingen, did you want to be heard on this?  Or

12   is Ms. Kaul taking the laboring oar today?

13            ATTORNEY VAN SWEARINGEN:  Ms. Kaul's in charge.

14            THE COURT:  Well, I figured she might be otherwise,

15   as well.  But I didn't want you to feel left out,

16   Mr. Swearingen.  So, okay, gotcha.

17            So, Ms. Kaul, Ms. Coleman, I think what would be

18   helpful for me is to have further briefing on this.  Because,

19   you know, this call -- as you probably gleaned from my

20   tentative thoughts in the email that I had sent -- I -- it

21   seemed to me that expedited discovery might be appropriate as

22   to some of the other topics and not this one.  But I -- you

23   know, I want to come at it fresh, and want to hear what you

24   have to say on that.

25            How many -- given that this expedited discovery is --

 1  is more narrowly tailored than it was last time, how many pages

 2  do you need, Ms. Kaul?

 3          ATTORNEY KAUL:  I think last time we had ten.

 4          I don't anticipate -- you know, I don't know if we

 5  would need all of those.  But I think -- and we would endeavor

 6  not to retread any territory, in terms of covering elements

 7  that we already did.  But that would be kind of helpful not to

 8  have, I think.  Even with the narrower scope, going through all

 9  of the elements takes a little bit of space.

10          THE COURT:  All right.  So fair enough.

11          And then what I would like -- how much time do you

12  need to get that brief, Ms. Kaul?

13          ATTORNEY KAUL:  I think last time your Honor had put

14  it at a week for both sides.  I think somewhere in that time

15  frame would be sufficient for us and potentially -- I don't

16  know what everyone's schedule is -- but gets us in before the

17  holidays.  But, you know, give or take a few days, I think we

18  would be willing to work with both sides.

19          THE COURT:  No, I appreciate that.  And I'm not going

20  to jam up anyone with plans over the holidays.

21          Ms. Coleman, if I were to ask for briefing on this

22  issue and it would be listed to ten pages, how much time would

23  you want to respond, ma'am?

24          ATTORNEY COLEMAN:  Would the Court want simultaneous

25  briefing?  Or would the plaintiff provide a brief, and then we

1    have, you know, time to respond to the -- that brief?

2            THE COURT:  I think it would be most productive for

3    the plaintiff to file a brief and for you to respond, so you

4    can focus your arguments accordingly.

5            ATTORNEY COLEMAN:  Well, then I think if they get a

6    week, a week after is fine for us to respond.

7            THE COURT:  So that's okay?  So if we're going to do

8    that, that takes us to the 14th and the 21st.

9            I cannot make any promises that we're going to turn

10   it around before you all leave for the holidays.  So we are

11   looking at later in December or earlier in January before we

12   have a resolution.  I just always want to be up front with you

13   all about that.

14           So if that's something that works for you all and is

15   not going to disrupt holiday plans, then fine.  We'll have --

16   the plaintiff will file their motion by December 14th.

17   Defendants will respond by December 21st.

18           And we'll put this in the minute order.  But the

19   issues that I would ask you all to address is, obviously, first

20   why expedited discovery is or is not appropriate.

21           As specific as you can be, Ms. Kaul, as to the scope

22   of your proposal.  I have a fairly good sense of it but I want

23   to make sure that, you know, it's as targeted as possible so

24   that Ms. Coleman can respond accordingly.

25           And then I would also like to know how, if at all,

1    this should affect case management more generally.  And then

2    specifically -- one thing I'm going to want to talk to you

3    about now is -- is an ENE in this case and whether or not it

4    makes sense to start that now.

5            I -- I think, before, the idea was that the plaintiff

6    wanted to -- the plaintiffs wanted to conduct expedited

7    discovery and then set the matter for an ENE.

8            But as I'm hearing now, that there may be changes

9    that have been made that you are hearing about anecdotally,

10   Ms. Kaul.

11           I -- it seems to me that there may be some good

12   reasons to conduct an earlier ENE that may well not settle this

13   entire case in one or even two sessions but can at least help

14   start distilling the issues for the parties in terms of what is

15   actually happening in the jails.  And that may really

16   crystallize some of the issues that require judicial resolution

17   and some that may not.

18           So I know that I -- I've sort of thrown this at you,

19   and you haven't had a chance to actually think about it,

20   Ms. Kaul.  But do you have any initial thoughts as to whether

21   it would be productive to schedule an earlier ENE in this case?

22   And I would be thinking -- it probably -- I'm not going to try

23   to do it while you all are briefing this, but probably sometime

24   in January.

25           ATTORNEY KAUL:  You know, I think -- I think

1    plaintiffs are open to that.  The one thing that we had

2    discussed last time around was how -- you know, some potential

3    ways to break up the ENEs by topic or issue.  And I think we

4    hadn't really reached any type of agreement on what would go

5    first or what that would look like.  But if we broke it down in

6    some way -- you know, what we had proposed is we could maybe

7    try one or two topics to start.  If those don't go anywhere,

8    then maybe it doesn't make sense, or it's inefficient for us to

9    keep going without additional discovery.

10            I think -- you know, our view is that, you know, for

11    one -- I think you understand, your Honor.  But we wouldn't

12    want that to get in the way of us pursuing this discovery

13    fully.  And we think we probably will need something before we

14    are able to reach resolution.  But we're open to trying.

15            THE COURT:  What are your thoughts, Ms. Coleman?

16            ATTORNEY COLEMAN:  Well, it sort of depends.

17            I think -- you know, I had suggested before to the

18    plaintiffs that if they were willing to limit the issues that

19    it might be more productive.  For example, if they were only

20    pursuing ADA violation.  Because that's something we can go

21    through the building and we can -- you know, there's definite

22    standards about what is and what is not ADA accessible.

23            But there's a lot of other topics that are -- you

24    know, there's factual disputes.  So if they're going to pursue

25    basically every issue in the county jails, that makes it a lot

15

1  harder to resolve.  And it makes the County a lot less willing

2  to -- to look at resolution.

3          THE COURT:  Sure.  But I -- I understand that, and

4  that's a fair point.

5          But I think what I heard Ms. Kaul to be saying is

6  that the plaintiffs would be open to targeting specific issues

7  to be addressed at an ENE.  And whether that is starting with

8  issues relating to drug overdoses and safety checks, I -- or

9  just drug overdoses.  And then we can do a separate one on

10  safety checks and audio intercom and video surveillance.

11          I mean, in a way that, at the very least, there --

12  you know, part of the -- what I sort of saw, as I was reading

13  through the preliminary injunction hearing -- and then even

14  now, hearing Ms. Kaul talk about what they're being told

15  anecdotally -- is that there is a lot of anecdotal stuff flying

16  around.  And that is not going to be as productive for you all

17  to really figure out how to move forward with the case.  You

18  can certainly do it through formal discovery.

19          But that is going to be time consuming and expensive

20  and it -- not nearly as efficient as what I think we could try

21  to do, working together to at least have the information

22  exchanged that will allow the case to proceed more efficiently.

23  And so that -- that's how I would -- I would be inclined to do.

24          So here's what I would -- here's what I would --

25  here's what I would ask, is the parties meet and confer about

42

 1   how we would go about this.  How we would -- how we would start

 2   early ENEs, and then what topics they should cover.  And

 3   whether that's -- and I have an open mind to this, as to how we

 4   should proceed.

 5           But I do think it would be productive in this case.

 6   And I do intend to do it, and I want to do it in a way that

 7   makes sense to you, so I really want your input.

 8           Ms. Coleman -- again, not meaning to put you on the

 9   spot but I am.

10           With respect to Rock Mountain, that is scheduled to

11   open in the first quarter of 2023.  Have there been any

12   discussions by the parties as to an inspection of it?  Or --

13   what do you want to call it?  A tour of it with the plaintiffs,

14   perhaps with their expert, even before it opens.

15           If this is going to be the ADA compliant facility --

16   and if it's what it sounds like, it may -- it may resolve many

17   of the issues as to which the plaintiffs are seeking expedited

18   discovery.

19           Have you all had those discussions?

20           ATTORNEY COLEMAN:  Well, one of the proposals in

21   their current plan for expedited discovery is for production of

22   documents, and then a tour of the facilities, including Rock

23   Mountain.

24           THE COURT:  I know.  And including five of the seven.

25           But I'm talking specifically targeted to Rock

1   Mountain, which it sound -- I mean, it sounds like is going to

2   be your ADA-compliant facility, and then the others are going

3   to follow it.  But why not start now, informally?

4          And I can -- I'm not trying to put you on the spot.

5   You need to talk to your client about it.  In this call, I'm

6   not trying to suggest that's something that you all -- would

7   be, by itself, sufficient.  But it sounds like something that

8   is really going to help Ms. Kaul and Mr. Swearingen figure out

9   what the landscape is going to be in three months when -- when

10  it opens.  That that could be a path forward as well.

11         ATTORNEY COLEMAN:  Let me talk to my client about it,

12  and we'll confer with the plaintiffs.  I don't know -- I

13  haven't been -- I have been to all of the facilities except

14  that one, and I don't know if it's in a state for touring yet

15  or --

16         THE COURT:  It may not be.  But -- but that -- so I

17  would like that meet and confer to happen as well.  And -- and

18  so what I would ask is that the parties meet and confer.  And

19  the plaintiffs will file their brief on the expedited discovery

20  issue by the 14th.  The defendants will respond on the 21st.

21         And then, Ms. Kaul, what I would ask is that you take

22  the lead on preparing a joint sort of filing, for my benefit,

23  on the 21st as well.  It can be short.  As of the two, how you

24  plan -- how the parties jointly propose to proceed with the

25  ENEs and specifically with respect to Rock Mountain.

 1            ATTORNEY COLEMAN:  What -- your Honor, could we have

 2   that due a few days later?

 3            THE COURT:  That's fine.  Sure.  That -- again, I

 4   don't want to mess up anyone's holidays.  Does the 28th work?

 5   Or do you need more time after that?

 6            ATTORNEY COLEMAN:  Or the 27th.  Or the 27th.  I have

 7   a --

 8            THE COURT:  What do you want, Ms. Kaul?

 9            ATTORNEY KAUL:  That's fine.  That's okay with us.

10            THE COURT:  Okay.  Why don't we say it will be due

11   by -- the joint report by the 28th.  And then we'll memorialize

12   this in the order.

13            ATTORNEY COLEMAN:  Okay.  And in terms of the

14   briefing that's due this month, the ten pages, that's -- we're

15   not to attach declarations, and things like that, with it.

16   Right?  Just a ten-page brief?

17            THE COURT:  Is there any -- do you need a

18   declaration, Ms. Kaul?

19            ATTORNEY KAUL:  Uhm --

20            THE COURT:  I don't want to foreclose it, if you

21   think that is something that's important for expedited

22   discovery.  But I --

23            ATTORNEY KAUL:  The only thing -- one thing that

24   comes to mind is last time, I think, we submitted some of our

25   meet-and-confer exchanges, so that, you know --

```
 1   (indiscernible)-- understood that some of the logistical, you

 2   know, tentative agreements we had on logistical issues.  And I

 3   know in your -- your tentative you referenced whether there

 4   were outstanding disagreements on any of that.

 5           So it would be mostly for -- for those kinds of

 6   informational purposes that I foresee.  But I --

 7           THE COURT:  Even if it's just a brief -- not like I

 8   don't love reading your email exchanges.  But, I mean, it would

 9   be better if you could just tell me what you agree on and what

10   you don't.

11           ATTORNEY KAUL:  Okay.  We can try to consolidate that

12   into the brief.

13           THE COURT:  And if you can't, you just want to

14   include it as an exhibit, that's fine; if you think it's

15   necessary.  I don't want you to have to, you know, rewrite

16   everything.  But it is helpful for me to know, sort of, in the

17   brief where the parties stand on the issues.

18           And each of those -- the both -- the expedited

19   discovery motion, opposition, and the joint report, just please

20   make sure you file those, rather than lodging them or sending

21   us -- sending it directly to chambers.

22           ATTORNEY KAUL:  Okay.

23           ATTORNEY VAN SWEARINGEN:  One point of clarification.

24           THE COURT:  Sure.

25
```

1          ATTORNEY VAN SWEARINGEN:  Just to be sure, with

2     respect to the discovery briefing, that is only related to the

3     discovery issues.  And ENE issues do not need to appear in the

4     discovery motion papers.  Instead, that -- all of the

5     ENE-related discussion will appear in -- in the ENE joint brief

6     submitted the 28th?

7          THE COURT:  That's right.  The 28th should address

8     how we should structure -- understand that I think it would be

9     productive to hold early ENEs in this case.  How should we go

10    about it, that's going to be effective?  And I would

11    specifically like the parties to be considering what to do with

12    Rock Mountain.  Because I just -- I -- just from everything

13    you're telling me, that really may be a threshold issue to

14    figure out the ADA aspect of this.

15         ATTORNEY COLEMAN:  And the ENE document you want

16    filed as well?

17         THE COURT:  Yes.  I think that's right.  I mean --

18    and I don't need information about what your positions are.

19    It's just how -- what -- the issues on which we should proceed.

20    So, yes, please do file that.

21         ATTORNEY COLEMAN:  All right.

22         THE COURT:  And then, obviously, if there's briefing

23    prior to any ENE, that could be sent to chambers directly.

24         All right.  Well, I appreciate your willingness to

25    answer all of my questions.

1           Ms. Kaul, is there anything else that would be

2   helpful for us to discuss this afternoon?

3           ATTORNEY KAUL:  Not for plaintiffs.

4           THE COURT:  From you, Ms. Coleman?

5           ATTORNEY COLEMAN:  No, your Honor.  Thank you.

6           THE COURT:  Okay.  Thank you all.  I appreciate it.

7   We'll issue the minute order, and I look forward to seeing

8   briefing starting on the 14th.

9           ATTORNEY KAUL:  Thank you, your Honor.

10          THE COURT:  Thank you to everyone.  Thank you.

11          (Conclusion of proceedings.)

12

13                          --oOo--

14          I certify, by signing below, that the foregoing is a
    correct stenographic transcript, to the best of my ability, of
15  the digital recording of the audio proceedings had in the
    above-entitled matter this 9th day of December, 2022.  A
16  transcript without an original signature or conformed signature
    is not certified.  I further certify that the transcript fees
17  and format comply with those prescribed by the Court and the
    Judicial Conference of the United States.

18          /S/ Amanda M. LeGore

19  _____

20      AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

21

22

23

24

25

# EXHIBIT D



P.O. Box 390
San Francisco, California 94104-0390
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Gay Crosthwait Grunfeld
Email: ggrunfeld@rbgg.com

April 4, 2023

<u>VIA ELECTRONIC MAIL ONLY</u>

Elizabeth M. Pappy
Burke, Williams & Sorensen, LLP
60 South Market Street, Suite 1000
San Jose, CA  95113-2336
epappy@bwslaw.com

   Re: *Dunsmore et al. v. San Diego County Sheriff's Department et al.*,
     S.D. Cal. No. 3:20-cv-00406-AJB-DDL
     ADA Preliminary Injunction and Early Neutral Evaluation
     <u>Our File No. 1730-01</u>

Dear Beth:

   This letter seeks to respond to your representation to the Court during yesterday's informal discovery conference that you were unaware of Plaintiffs' intent to file a preliminary injunction motion under the Americans with Disabilities Act ("ADA") and related federal and state disability discrimination law.

   Contrary to your representation, Defendants have been on notice of Plaintiffs' intent to move again for a preliminary injunction since we moved for expedited ADA discovery on December 14, 2022.  That motion stated that Plaintiffs were seeking discovery "in anticipation of a renewed motion for preliminary injunctive relief." Dkt 243-1 at 1.  Moreover, in our March 20, 2023 letter we stated:  "we are preparing a motion for preliminary injunction."  Your email of the same date acknowledged that Plaintiffs' "stated reason" for document requests was "emergency or need for an injunction."

   Since the Court granted the motion for expedited discovery in January, we have repeatedly met and conferred with you about the scope of our discovery requests, the dates for the inspections and person-most-knowledgeable depositions, and the inadequacy of your response to our request for production of documents and PMK designations.  We have now spent four full days with you and your co-counsel, inspecting two jails and

Elizabeth M. Pappy
April 4, 2023
Page 2

taking three depositions.  During all of these interactions, we have repeatedly stressed the need for prompt and thorough discovery in support of our view that the County is failing to comply with the ADA and related statutes and must immediately take action to end the harm to our clients.  At no time during these interactions did you or your co-counsel acknowledge any ADA failings or offer to enter into negotiations to address our concerns with the County's ADA compliance.

Regarding the possibility of an early neutral evaluation on ADA issues, Plaintiffs have repeatedly attempted to engage and work with you towards ADA compliance.  For example, we reached out to Defendants over a year ago about possible neutral expert evaluations.  At that time, we proposed that Defendants "retain mutually agreed-upon experts with subject matter expertise on the relevant case issues," including "compliance with the Americans with Disabilities Act."  V. Swearingen Letter to F. Kish et al. (Mar. 15, 2022) at 4.  We tried again in a meeting with Susan Coleman on April 21, 2022.  Defendants failed to provide any substantive response, essentially rejecting our proposal.  We were rebuffed again shortly before the August 11, 2022 hearing on our motion for preliminary injunction.  In December 2022, we again encouraged Defendants to use mutually agreed-upon neutral experts with ADA subject matter expertise (Dkt. 249); again Defendants rejected our proposal.

We understand that Defendants have retained Paul Joelson and potentially others to evaluate their compliance with the ADA.  However, we have received no information regarding Defendants' position on ADA compliance.  You instructed Defendants' Rule 30(b)(6) witnesses not to answer questions about your experts' work, and you withheld all expert analysis from production, citing the work-product and attorney-client privileges.

Based on the serious and urgent nature of ADA violations established by discovery to date, Plaintiffs will be seeking a preliminary injunction focused on two of the most egregious areas of the County's noncompliance:  Defendants' failure to provide in-person sign language interpretation to deaf incarcerated people, and their lack of safe and accessible housing for people with mobility disabilities.

In order to avoid litigation on these important issues, please let us know no later than **April 10, 2023** if Defendants will agree to an ENE process that includes the simultaneous mutual exchange of expert reports, the filing of a joint statement identifying points of agreement to be included in a remedial plan and any points of disagreement, and the development of a plan to timely remedy, at minimum, all points of agreement that will result in a stipulated order to be submitted to the Court with Court oversight of the process.

Elizabeth M. Pappy
April 4, 2023
Page 3

Please do not hesitate to call me if you have questions about our proposal or the scope of the County's ongoing failures to comply with the ADA and related statutes.

As always, we appreciate your courtesy and cooperation in this matter.

Very truly yours,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Gay Crosthwait Grunfeld*

By:   Gay Crosthwait Grunfeld

GCG:cg
cc: Susan Coleman
    Co-counsel

**Pappy, Elizabeth M.**

| | |
|---|---|
| **From:** | Pappy, Elizabeth M. |
| **Sent:** | Tuesday, April 4, 2023 6:03 PM |
| **To:** | Gay C. Grunfeld |
| **Cc:** | Eric Monek Anderson; Coleman, Susan E. |
| **Subject:** | RE: Dunsmore v. San Diego County Sheriff's Dept., et al.:  Letter Regarding ADA Preliminary Injunction and ENE [IMAN-DMS.FID55015] |

I never made any such representation.  Quite to the contrary, I stated several times at the hearing and have written in some of our communications, my awareness of your intention to file for a preliminary injunction.  You were unfortunately given false information because you obviously were not at the hearing.

Why does your firm persist in trying to rewrite the facts in an attempt to litigate this case through letters?  To increase fees?

Plaintiffs have never attempted to engage and work with me towards ADA Compliance.  You have blamed, accused, disparaged, complained, assumed this case is a one way street, and refused to engage in any discussions about physical barrier compliance.  You consistently tell me you don't understand what I'm proposing.  I understand that you may be used to dealing with a different kind of attorney but I do exactly what I say and say exactly what I mean.

I will repeat again.  I would like our experts to talk about what they found at the facilities directly, and without attorney interference, under mediation privileged protection.  Their instructions will be to agree on what barriers exist to the extent they can, come up with proposed fixes (understanding that they cannot agree without our input), and coming up with a list of things they cannot agree upon.  We would then try ourselves (attorneys to attorneys) to narrow the list of disputed items and failing that, attend an ENE.

You are now raising the new issue of an alleged lack of ASL services, which is false and lacking factual basis, and lack of accessible housing without reference to whether you are talking about physical barriers or something else.  I have no problem adding these two discrete issues to an ENE if it will help you avoid an injunction application.  As with everything, I suggest we have the experts get the discussion scheduled ASAP so we can get going on the conversation and go to an ENE in short order.

We don't have a report.  All they need is a list to guide them.  Since you are the plaintiff, it would be useful to simply have a list from your expert to get them going.  Please try to make this less complicated and more streamlined to get to the conclusion rather than putting up these formalistic road blocks to resolution.  I find that the lawyers are more of an impediment when dealing with physical barriers.  Experts have the expertise, experience and creativity to solve barrier issues, or at least narrow the scope and leave it to us to resolve the disputed "readily achievable" items.

Thank you.

**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA  95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333

epappy@bwslaw.com | vCard | bwslaw.com



The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

**From:** Eric Monek Anderson [mailto:EMonekAnderson@rbgg.com]
**Sent:** Tuesday, April 4, 2023 1:32 PM
**To:** Pappy, Elizabeth M. <EPappy@bwslaw.com>; Coleman, Susan E. <SColeman@bwslaw.com>
**Cc:** Gay C. Grunfeld <GGrunfeld@rbgg.com>; Van Swearingen <VSwearingen@rbgg.com>; Priyah Kaul <pkaul@rbgg.com>; Hannah Chartoff <HChartoff@rbgg.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Young, Christopher <Christopher.Young@us.dlapiper.com>
**Subject:** Dunsmore v. San Diego County Sheriff's Dept., et al.: Letter Regarding ADA Preliminary Injunction and ENE [IMAN-DMS.FID55015]

[EXTERNAL]

Beth,

Please see the attached letter from Gay.

Regards,
Eric

**Eric Monek Anderson** (he/him)
Associate Attorney



**Rosen Bien Galvan & Grunfeld LLP**
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
eanderson@rbgg.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at eanderson@rbgg.com.

54

# EXHIBIT E



ROSEN BIEN
GALVAN & GRUNFELD LLP

101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Gay Crosthwait Grunfeld
Email:  ggrunfeld@rbgg.com

April 11, 2023

<u>VIA ELECTRONIC MAIL ONLY</u>

Elizabeth M. Pappy
Burke, Williams & Sorensen, LLP
60 South Market Street, Suite 1000
San Jose, CA  95113-2336
epappy@bwslaw.com

Re:     *Dunsmore et al. v. San Diego County Sheriff's Department et al.*,
S.D. Cal. No. 3:20-cv-00406-AJB-DDL
Early Neutral Evaluation on ADA Non-Compliance
<u>Our File No. 1730-01</u>

Dear Beth:

I write to respond to your email of April 4, 2023, a copy of which is enclosed.

The allegations that we are attempting to "litigate this case through letters" or "increase fees" or have "never attempted to engage and work … towards ADA compliance" are all inaccurate, as our prior correspondence and pleadings show.

Plaintiffs will participate in an ENE regarding Defendants' failure to comply with the ADA and related statutes.

As we informed you in December 2022 and more recently, for an ENE to be successful, there needs to be Court supervision of remedial efforts, and a stipulation that Defendants do not currently comply with regard to physical barriers and the provision of SLI.  We asked you to respond by April 11 if Defendants will agree to an ENE process that includes the simultaneous mutual exchange of expert reports, the filing of a joint statement identifying points of agreement to be included in a remedial plan and any points of disagreement, and the development of a plan to timely remedy, at minimum, all points of agreement that will result in a stipulated order to be submitted to the Court with Court oversight of the process.  You did not respond to this proposal to avoid motion practice.  We therefore understand that Defendants are not amenable to this proposal.

[4266739.1]

56

Elizabeth M. Pappy
April 11, 2023
Page 2

The concept of having our "experts … talk about what they found at the facilities, directly, and without attorney interference …" is unlikely to be productive in addressing multiple barriers at two large facilities in a timely manner.  Your expert took measurements during both inspections and presumably wrote down his findings.  It would be helpful to see those. It would also be useful to learn if your expert has concluded that both facilities are fully compliant with governing ADA standards.

Also, for your information, "readily achievable" is not applicable as a defense in a Title II action such as this.

As for your assertion that the lack of SLI services "is false and lacking factual basis," please provide us any documentation of provision of SLI to incarcerated persons within the past five years.  If promptly provided, we will be happy to look at that documentation prior to seeking injunctive relief on that issue.

As always, we appreciate your courtesy and cooperation in this matter.

Very truly yours,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Gay Crosthwait Grunfeld*

By:   Gay Crosthwait Grunfeld

GCG:cn
Enclosure
cc:     Susan Coleman
        Co-counsel

**Pappy, Elizabeth M.**

| | |
|---|---|
| **From:** | Pappy, Elizabeth M. |
| **Sent:** | Tuesday, April 11, 2023 12:39 PM |
| **To:** | Gay C. Grunfeld |
| **Cc:** | Eric Monek Anderson; Coleman, Susan E. |
| **Subject:** | RE: Dunsmore v. San Diego County Sheriff's Dept., et al.:  Letter Regarding ADA Preliminary Injunction and ENE [IMAN-DMS.FID55015] |

Another thought occurs to me.  Since you are using this dispute in an attempt to justify an injunction application as to barriers, why don't we submit our competing proposals to Magistrate Leschner and let him pick one or the other, or a combination of both.

Seems like the most streamlined and efficient way to resolution.

I'm on vacation but trying to monitor the email traffic from you and Mr. Swearington who both know I'm trying to vacation.

Thank you.

**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA  95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com



BURKE, WILLIAMS & SORENSEN, LLP

The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

**From:** Pappy, Elizabeth M.
**Sent:** Tuesday, April 11, 2023 11:57 AM
**To:** Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Cc:** Eric Monek Anderson <EMonekAnderson@rbgg.com>; Coleman, Susan E. <SColeman@bwslaw.com>
**Subject:** RE: Dunsmore v. San Diego County Sheriff's Dept., et al.: Letter Regarding ADA Preliminary Injunction and ENE [IMAN-DMS.FID55015]

Just as your proposal about ENE was rejected last December, it is once again rejected and I propose, for now the third time, having the experts work off a master list created by your expert to work through agreements and disagreements.  The unnecessarily expensive proposal you have made was not acceptable in December, it was not earlier this year, and it's still not acceptable.  We did respond to the proposal to avoid motion practice, three times now.  The fact that you don't like our proposal does not equate to a "non-response".

For your information, "readily achievable" is a factor.

If you don't know where to look for ASL services, please look in Cpt. Bibel's deposition transcript.  You were present.

Thank you.

**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA  95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com



BURKE, WILLIAMS & SORENSEN, LLP

The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

**From:** Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Sent:** Tuesday, April 11, 2023 10:21 AM
**To:** Pappy, Elizabeth M. <EPappy@bwslaw.com>
**Cc:** Eric Monek Anderson <EMonekAnderson@rbgg.com>; Coleman, Susan E. <SColeman@bwslaw.com>
**Subject:** RE: Dunsmore v. San Diego County Sheriff's Dept., et al.: Letter Regarding ADA Preliminary Injunction and ENE [IMAN-DMS.FID55015]

[EXTERNAL]

Please see attached.

Gay Crosthwait Grunfeld
Managing Partner
She/her
**ROSEN BIEN GALVAN & GRUNFELD LLP**
**101 Mission Street, Sixth Floor**
**San Francisco, CA 94105**
(415) 433-6830 telephone
(415) 433-7104 facsimile

**From:** Pappy, Elizabeth M. <EPappy@bwslaw.com>
**Sent:** Tuesday, April 4, 2023 6:03 PM
**To:** Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Cc:** Eric Monek Anderson <EMonekAnderson@rbgg.com>; Coleman, Susan E. <SColeman@bwslaw.com>

**Subject:** RE: Dunsmore v. San Diego County Sheriff's Dept., et al.: Letter Regarding ADA Preliminary Injunction and ENE [IMAN-DMS.FID55015]

[EXTERNAL MESSAGE NOTICE]

I never made any such representation. Quite to the contrary, I stated several times at the hearing and have written in some of our communications, my awareness of your intention to file for a preliminary injunction. You were unfortunately given false information because you obviously were not at the hearing.

Why does your firm persist in trying to rewrite the facts in an attempt to litigate this case through letters? To increase fees?

Plaintiffs have never attempted to engage and work with me towards ADA Compliance. You have blamed, accused, disparaged, complained, assumed this case is a one way street, and refused to engage in any discussions about physical barrier compliance. You consistently tell me you don't understand what I'm proposing. I understand that you may be used to dealing with a different kind of attorney but I do exactly what I say and say exactly what I mean.

I will repeat again. I would like our experts to talk about what they found at the facilities directly, and without attorney interference, under mediation privileged protection. Their instructions will be to agree on what barriers exist to the extent they can, come up with proposed fixes (understanding that they cannot agree without our input), and coming up with a list of things they cannot agree upon. We would then try ourselves (attorneys to attorneys) to narrow the list of disputed items and failing that, attend an ENE.

You are now raising the new issue of an alleged lack of ASL services, which is false and lacking factual basis, and lack of accessible housing without reference to whether you are talking about physical barriers or something else. I have no problem adding these two discrete issues to an ENE if it will help you avoid an injunction application. As with everything, I suggest we have the experts get the discussion scheduled ASAP so we can get going on the conversation and go to an ENE in short order.

We don't have a report. All they need is a list to guide them. Since you are the plaintiff, it would be useful to simply have a list from your expert to get them going. Please try to make this less complicated and more streamlined to get to the conclusion rather than putting up these formalistic road blocks to resolution. I find that the lawyers are more of an impediment when dealing with physical barriers. Experts have the expertise, experience and creativity to solve barrier issues, or at least narrow the scope and leave it to us to resolve the disputed "readily achievable" items.

Thank you.

**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA 95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com



BURKE, WILLIAMS & SORENSEN, LLP

The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

60

**From:** Eric Monek Anderson [mailto:EMonekAnderson@rbgg.com]
**Sent:** Tuesday, April 4, 2023 1:32 PM
**To:** Pappy, Elizabeth M. <EPappy@bwslaw.com>; Coleman, Susan E. <SColeman@bwslaw.com>
**Cc:** Gay C. Grunfeld <GGrunfeld@rbgg.com>; Van Swearingen <VSwearingen@rbgg.com>; Priyah Kaul
<pkaul@rbgg.com>; Hannah Chartoff <HChartoff@rbgg.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Young,
Christopher <Christopher.Young@us.dlapiper.com>
**Subject:** Dunsmore v. San Diego County Sheriff's Dept., et al.: Letter Regarding ADA Preliminary Injunction and ENE
[IMAN-DMS.FID55015]

[EXTERNAL]

Beth,

Please see the attached letter from Gay.

Regards,
Eric

**Eric Monek Anderson** (he/him)
Associate Attorney



**Rosen Bien Galvan & Grunfeld LLP**
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
T: (415) 433-6830  ▪  F: (415) 433-7104
eanderson@rbgg.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at eanderson@rbgg.com.

# EXHIBIT F

**Pappy, Elizabeth M.**

| | |
|---|---|
| **From:** | Pappy, Elizabeth M. |
| **Sent:** | Monday, May 15, 2023 4:57 PM |
| **To:** | Van Swearingen; Gay C. Grunfeld |
| **Cc:** | Coleman, Susan E. |
| **Subject:** | RE: Dunsmore v. County of San Diego:  Meet and Confer between experts [IMAN-DMS.FID55015] |

The list of topics is in Sanossian's declaration.  They (and not us) can start at the top and work their way down.  There will be no "time limit" or need for "parity".  This is a discussion between experts and not attorneys.  It is not a competition.  I trust it will be treated appropriately by as many lawyers as you invite.  I don't expect any attorney to speak.  It isn't necessary or appropriate.  Recall that I did not even want to be here because they don't need us but your office demanded that you be present to do what I have no idea.

Thank you.

**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA  95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com


BURKE, WILLIAMS & SORENSEN, LLP

The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

**From:** Van Swearingen <VSwearingen@rbgg.com>
**Sent:** Monday, May 15, 2023 4:32 PM
**To:** Pappy, Elizabeth M. <EPappy@bwslaw.com>; Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Cc:** Coleman, Susan E. <SColeman@bwslaw.com>
**Subject:** RE: Dunsmore v. County of San Diego: Meet and Confer between experts [IMAN-DMS.FID55015]

[EXTERNAL]

We will block off 10am to noon on the 22nd, and will send a Zoom link shortly.  Ms. Sannosian, Gay, and I will attend with an associate.  Please let us know the topics you anticipate the experts to discuss.  There must be parity in the amount of time for each expert to lead the discussion.  Of course, the conversation will take place under the mediation privilege.

**From:** Pappy, Elizabeth M. <EPappy@bwslaw.com>
**Sent:** Monday, May 15, 2023 3:55 PM
**To:** Van Swearingen <VSwearingen@rbgg.com>; Gay C. Grunfeld <GGrunfeld@rbgg.com>

**Cc:** Coleman, Susan E. <SColeman@bwslaw.com>
**Subject:** Dunsmore v. County of San Diego: Meet and Confer between experts

[EXTERNAL MESSAGE NOTICE]

Mr. Joelson and I are free for a Zoom conference from 10:00 a.m. for the rest of the day.

Please reserve two hours for the conference.  There is much for the experts to discuss.

Thank you.

**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA  95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com



The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

# EXHIBIT G

**Pappy, Elizabeth M.**

| | |
|---|---|
| **From:** | Pappy, Elizabeth M. |
| **Sent:** | Monday, May 29, 2023 10:41 AM |
| **To:** | Gay C. Grunfeld; Coleman, Susan E. |
| **Cc:** | Young, Christopher; Aaron Fischer; Van Swearingen |
| **Subject:** | RE: CONFIDENTIAL MEDIATION PRIVILEGE -- Draft Stipulation and Proposed Order [IMAN-DMS.FID55015] |

Can you please send us the facility names and contact information, for the Correctional Facilities that use the portable showers, and the specific models (literature or web links) for the portable showers that have been used in other Correctional Facilities as Ms. Sanossian indicated.

This would be very helpful and cut down on implementation time if the County can talk to other facilities to see how they manage these showers.

Thank you.


**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA  95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com



The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

**From:** Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Sent:** Friday, May 26, 2023 3:04 PM
**To:** Pappy, Elizabeth M. <EPappy@bwslaw.com>; Coleman, Susan E. <SColeman@bwslaw.com>
**Cc:** Young, Christopher <Christopher.Young@us.dlapiper.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Van Swearingen <VSwearingen@rbgg.com>
**Subject:** CONFIDENTIAL MEDIATION PRIVILEGE -- Draft Stipulation and Proposed Order [IMAN-DMS.FID55015]

[EXTERNAL]

Dear Susan and Beth,

As discussed at the May 24, 2023 ENE with Judge Leshner, attached is a proposed resolution to Plaintiffs' Motions for Preliminary Injunction and Provisional Class Certification, subject to the mediation and settlement privileges.

We are available to discuss and look forward to your response.

Have a pleasant Memorial Day Weekend.

Best, Gay

**Gay Crosthwait Grunfeld**
Managing Partner
Pronouns: she/her
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, CA 94105
(415) 433-6830 (telephone)
(415) 433-7104 (fax)
ggrunfeld@rbgg.com

CONFIDENTIALITY NOTICE
The information contained in this e-mail message may be privileged, confidential and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at ggrunfeld@rbgg.com.

67