GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830
Facsimile:    (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
mfreedman@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California  92121-2133
Telephone:   (858) 677-1400
Facsimile:    (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California  94709
Telephone:   (510) 806-7366
Facsimile:    (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>v.<br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br>        Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO SET A NOVEMBER 22, 2024 FACT CUTOFF DATE OR RE-OPEN DISCOVERY FOR A LIMITED PURPOSE**<br><br>Judge:     Hon. Anthony J. Battaglia<br>Magistrate: Hon. David D. Leshner<br><br>Trial Date: None Set |

# INTRODUCTION

As in other cases involving constitutional challenges to the conditions of confinement, Plaintiffs in this case must show that Defendants' policies and practices at the San Diego County Jail (the "Jail") violate the law.  And, like other defendants in these type of cases, Defendants here seek to avoid liability by showing that recent changes have improved conditions, eliminating the need for Court-ordered injunctive relief.  Jail policies and practices inevitably change over time due to various factors including executive leadership priorities, budget and funding considerations, legal and political directives, and most importantly, pending litigation—especially where officials attempt to implement last-minute reforms to avoid liability.  Trial courts in these kinds of cases routinely establish fact cutoff dates to allow the parties to rely upon and test the same factual evidence, to provide a fair hearing on the legitimacy and durability of governmental policies and practices, to avoid the problem of a factual moving target, and to ensure efficiency by avoiding endless discovery and hearings on constantly changing facts.

The parties agree on establishing a fact cutoff date, but disagree as to the date. Plaintiffs seek an order that trial will be conducted based on the facts as they existed and evidence disclosed as of the Court-ordered expert discovery cutoff of November 22, 2024.  *See* Dkt. 721.  The parties expended massive resources on fact and expert discovery.  After substantial work and at great cost, eighteen experts[1] evaluated the discovery produced in this litigation and submitted expert reports with their opinions as to the facts disclosed by the parties.  Paired with the beginning discovery date of January 1, 2021 (before which Plaintiffs could not seek discovery), a November 22, 2024 fact cutoff date would provide the parties with the same approximate four-year period to evaluate the patterns and practices related to Plaintiffs' claims.  It is

---

[1] This number of experts does not include the three ADA experts given that the parties resolved Plaintiffs' Third Claim for Relief.

impossible to assess the long-term impact from any changes to policies and practices after November 22, 2024, which by their very nature, are still in their infancy. Any analysis of changes at the Jail after November 22, 2024 would require reopening discovery, reviewing the parties' productions, conducting depositions, determining if additional Jail inspections are necessary, and potentially submitting supplemental expert reports as to the new information. Such actions would necessarily increase party costs and likely delay resolution of this case. Instead, the Court should order that evidence after the proposed fact cutoff of November 22, 2024 can be introduced only after trail to inform any remedial orders.

In the event that the Court chooses a later fact cutoff date, Plaintiffs request discovery be re-opened so that Plaintiffs can test Defendants' new information. After meeting and conferring, Plaintiffs and Defendants disagree as to the scope of permissible discovery in the event that fact cutoff is set after November 22, 2024. Plaintiffs' request for depositions and documents is narrowly tailored to the new information Defendants submitted in connection with their Motion for Partial Summary Judgment. In contrast, Defendants' more limited discovery proposal would preclude Plaintiffs from obtaining key information as to changes Defendants assert have occurred at the Jail since discovery cutoff.

## PROCEDURAL HISTORY

Fact discovery closed on May 31, 2024. *See* Dkts. 479, 635, 654. Expert discovery closed on November 22, 2024. *See* Dkt. 721. Subsequently, on December 17, 2024, Defendants submitted declarations in support of their Motion for Partial Summary Judgment that contained new factual information never disclosed during discovery, including as to current medical staffing levels, the development of disease management guidelines, a provider triage program, alleged changes to Defendants' quality assurance and mortality review programs, the number of in-custody deaths, the use of tablets for legal research, and practices regarding cleanliness, among other things. *See* Dkt. 782-2. On February 3, 2025,

Defendants submitted Reply declarations in support of their Motion for Partial Summary Judgment that contained new factual information never disclosed during discovery, including as to Class Member medical files, law library access via kiosks, and use of State funds for law enforcement programs, among other things. *See* Dkt. 806-1.

After meet and confer between the parties, the Court held a discovery conference on February 24, 2025. Dkt. 821. On February 26, 2025, the Court ordered the parties to "promptly" meet and confer regarding Plaintiffs' request to set a fact cutoff date limiting the presentation of evidence at trial, and for the parties to file a stipulation by March 7, 2025 as to a fact cutoff date, and if no agreement could be reached, for Plaintiffs to file a motion by that date. Dkt. 826. Defendants declined to meet and confer until a week later, on March 5, 2025. *See* Declaration of Van Swearingen ("Swearingen Decl.") ¶ 6 & Ex. D.

The parties have agreed to a fact cutoff date in principle, but disagree as to what date that should be. *Id.* ¶¶ 8-10 & Ex. F. Plaintiffs propose a fact cutoff date of November 22, 2024—the same date as expert discovery cutoff. *Id.* ¶ 5. Defendants propose a fact cutoff date of April 1, 2025. *Id.* ¶ 8 & Ex. F. The parties also disagree as to the scope of discovery in the event the Court sets fact cutoff after November 22, 2024. *Id.* ¶¶ 8-10 & Exs. F, H.

**I.     THE COURT SHOULD SET NOVEMBER 22, 2024 AS FACT CUTOFF**

    **A.     Courts Routinely Set Fact Cutoff Dates in Injunctive Relief Cases**

Trial courts regularly impose fact cutoff dates in injunctive relief cases, where the possibility of evolving facts and new information is endless, to allow the parties to reply upon, test, and present the same factual evidence and to avoid the problems of a factual "moving target." *See, e.g.*, *Brown v. Plata*, 131 S. Ct. 1910, 1935 (2011) (affirming appropriateness of fact cutoff date); *Connor B. ex rel. Vigurs v. Patrick*, 985 F. Supp. 2d 129, 133-34, n.1 (D. Mass. 2013) (setting fact cutoff date for liability purposes); *Graves v. Arpaio*, 2008 WL 4699770, at *3 (D. Ariz. Oct. 22,

2008) (imposing fact cutoff period to facilitate providing information to experts and trial planning); *Rolland v. Cellucci*, 138 F.Supp.2d 110, 114 (D. Mass. 2001) (applying a fact cutoff date and observing problems with constantly shifting fact information and efforts to introduce new evidence shortly prior to trial).

Trial courts regularly impose a fact cutoff date that is the same as discovery deadlines in order to effectively preclude the introduction of evidence not disclosed during the discovery period. Such evidence could not be tested through depositions nor considered by the opposing party's experts in formulating their opinions and preparing their expert and rebuttal reports. *See, e.g.*, *Rosie D. v. Romney*, 410 F. Supp. 2d 18, 30, n.4 (D. Mass. 2006) (imposing fact cutoff date as of the date discovery closed and noting that "[p]ermitting Defendants to offer evidence acquired after the close of discovery would leave Plaintiffs unprepared to challenge the newly-acquired material."); *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 95 (S.D.N.Y. 2002) (precluding use of additional facts obtained after close of discovery). A fact cutoff date prevents the party with the greatest information about jail conditions and operations from sandbagging the plaintiff class at trial with alleged improvements.

**B.    A November 22, 2024 Fact Cutoff Date Provides the Parties with Nearly Four Years of Evidence by Which to Evaluate Jail Policies and Procedures**

Throughout discovery, the Court permitted the parties to seek information about current conditions, dating from January 1, 2021. *See, e.g.*, Tr. of February 6, 2024 discovery conference at p. 51 (Judge Leshner stating that "given that the claims, under Section 1983, do allege a policy and practice, I do find it appropriate generally that the requests go back to January 1st, 2021"); January 17, 2023 Order Granting in Part and Denying in Part Motion for Expedited Discovery (Dkt. 258) (findings that written discovery seeking evidence on or after January 1, 2021 is "appropriately tailored to Plaintiffs' needs."); December 13, 2023 Order Granting Plaintiffs' Motion to Compel Production of CIRB Reports (granting production of

25 CIRB reports "pertaining to inmates who died in Sheriff's Department custody between January 1, 2021 and the present.").

Adopting a November 22, 2024 fact cutoff would provide the parties with an approximate four-year snapshot of the Jail's policies and practices, and how they affect the welfare of incarcerated people ("IPs").  Imposing a fact cutoff date that is the same as discovery deadlines allows the parties equal access to the same information developed over the history of the litigation, without the costly expense and potential delay of reopening fact or expert discovery.  The parties' experts relied upon and based their written opinions on evidence of the policies and practices illuminated during discovery.  This included tours of the Jail facilities, review of deposition transcripts, and evaluation of the record evidence produced in discovery, providing a substantial overview from which the parties' experts could evaluate the evidence and ascertain how the policies and practices at the Jail affect Class and Subclass Members.

Notably, while Defendants did produce some documents after the discovery fact cutoff date of May 31, 2024, Defendants have not supplemented any of their discovery responses since expert discovery closed on November 22, 2024. Swearingen Decl. ¶ 12.

### C. Plaintiffs Would Be Substantially Prejudiced and the Court Unduly Burdened by Defendants' Introduction of Post-Discovery Developments

To allow Defendants to introduce evidence or use information developed after the November 22, 2024 expert discovery cutoff date is especially prejudicial to the indigent Plaintiff Class.  Plaintiffs' counsel expended substantial time and costs working with their experts to review relevant evidence and prepare expert and rebuttal reports with opinions based upon the evidence that was exchanged during the Court-ordered discovery period.  Twenty-two hard-hitting reports are the result of this work.  See https://rbgg.com/san-diego-county-jails-suit-info/.

In this case, Defendants have almost exclusive control over the evidence

regarding the specific programs and services provided to Class and Subclass Members, and are aware of the particular facts on which the Plaintiffs and their experts will rely. If post-discovery cutoff facts are permitted, Defendants could create, at will, the appearance of change with regard to key issues or newly promulgated policies, materially prejudicing Plaintiffs who do not have equal access to such information or the ability to test its scope through depositions. Permitting the introduction of post-discovery facts would also result in considerable additional expenses to the parties. The parties will have to produce additional documents, schedule and conduct depositions of numerous witnesses, and party experts may need to issue supplemental reports or conduct additional Jail inspections to evaluate new processes, generate new reports, and be subject to a new round of depositions. The cost of additional discovery would continue to increase and be especially difficult for the Plaintiffs who are all indigent. Making time for additional fact and expert discovery could likely also delay trial proceedings. Any delay in trial causes irreparable harm tot the Plaintiff Class, which is being subjected to ongoing unconstitutional and unlawful policies and practices.

### D. Defendants' New Evidence Is Unlikely to Materially Change Defendants' Liability

Defendants introduced new evidence in support of their Motion for Partial Summary Judgment ("MSJ") in their moving papers and on reply, on December 17, 2024 and February 3, 2025, respectively. *See* Dkts. 782-2 and 806-1. Even if the Court considers this new information in connection with summary judgment, Defendants have failed to show that there are no disputed material facts as to any of Plaintiffs' claims at issue in Defendants' MSJ.

Conducting another round of fact and expert discovery would run up party costs and inevitably delay trial, with little or no benefit to understanding the principle issues in this case. Much of the "new" information submitted by Defendants in their MSJ has to do with future plans or partial implementation of

new programs and services at the Jail. For example, Dr. Freedland's MSJ declaration makes future-oriented claims, including that (1) Correctional Healthcare Partners ("CHP") is "in the process of developing a set of Disease Management Guidelines ('DMGs') to help standardize chronic care management at the Jail;" (2) CHP "started a provider triage pilot program at SDCJ (an intake facility) on November 1, 2024 and "intends to expand the pilot program" in the first quarter of 2025, and (3) "CHP intends to participate in any mortality reviews, which should further assist in decreasing the mortality rate at the Jail." Dkt. 782-2, App. 4. Likewise, Lieutenant Binsfield's MSJ declaration makes representations about what Defendants plan for the future, including (1) that "all incarcerated persons will soon have [legal research] access on the video monitors in the dayrooms of each unit and individually assigned tablets;" (2) the "system has been contracted for with the Smart Communications (using a proprietary research program) but it has not yet been activated;" and (3) tablets for use by IPs will be begin to be rolled out "as soon as the infrastructure is updated to permit WiFi and charging stations, and the plan is for each incarcerated person to be assigned a tablet." These plans are not actually in place.

In evaluating governmental entities' actions in injunctive relief cases, courts inquire whether changes in policy and practice lead to "durable" remedies capable of lasting over the long haul. *See, e.g.*, *Coleman v. Brown*, 952 F. Supp. 2d 901, 932–33 (E.D. Cal. 2013) ("what is necessary is a 'durable' solution to the problem of overcrowding if the underlying problem of the deprivation of prisoners' constitutional rights is to be resolved."); *Horne v. Flores*, 557 U.S. 433, 450, 129 S.Ct. 2579 (2009) (enforcement of court remedies is no longer necessary "once a durable remedy has been implemented"). Even if the most recent changes at the Jail have promise of being efficacious, not enough time has transpired to determine whether the changed policies and practices will or have had their desired effects.

Moreover, the benefit to Defendants of using evidence of recent changes is *de*

*minimus* given that such evidence is unlikely to moot Plaintiffs' claims because Defendants could easily revert to their old ways once litigation ends. *See, e.g., Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 (2017) ("voluntary cessation of a challenged practice does not moot a case unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur'") citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000). Defendants have regularly changed their policies and procedures throughout this litigation, and have switched their primary medical providers twice.

### E. Defendants Will Not Be Prejudiced by a November 22, 2024 Fact Cutoff Date

Defendants' stated reasons for proposing April 1, 2025 as the fact cutoff date are that "it seems like a good date," would provide fairness, and would allow Plaintiffs to use records obtained through Public Records Act and/or from Class Members since November 22, 2024. Swearingen Decl. ¶ 9. Defendants have not stated any prejudice by having a November 22, 2024 fact cutoff date. *Id.* As with Plaintiffs, Defendants will have to bear the extra expense and effort associated with discovery in the event that the Court imposes a fact cutoff date after November 22, 2024.

If the Court sets a November 22, 2024 fact cutoff date, Defendants will still be able to present new evidence that can be considered as to the appropriateness of any remedy. The *Plata* case is illustrative. After a three-judge court imposed a fact cutoff date in litigation involving California's overcrowded prison system and the Ninth Circuit upheld the fact cutoff date, the State appealed to the U.S. Supreme Court, contending that the fact cutoff date precluded it from providing the court with the most current evidence about its remedial efforts. Appellants Br. in *Schwarzenegger v. Plata*, 2010 WL 4688116 **27-30 (S. Ct. Aug. 27, 2010) (contending that the "three-judge court refused to hear evidence concerning the

current status of alleged Eighth Amendment violations"). The State reiterated its concerns about the fact cutoff date at oral argument to no avail, with Justice Sotomayor commenting that evidence concerning actions taken after the evidentiary cut-off may be presented on the issue of remedy. *See* Tr. of Oral Argument in *Schwarzenegger v. Plata*, 2010 WL 4859507 **33-35 (S. Ct. Nov. 30, 2010). The Supreme Court's affirmance concluded that the three-judge court appropriately imposed a fact cutoff date and that "[o]rderly trial management may require discovery deadlines and a clean distinction between litigation of the merits and the remedy." *Brown v. Plata,* 131 S. Ct. 1910, 1935 (2011).

## II. IN THE EVENT THE COURT SETS A FACT CUTOFF DATE AFTER NOVEMBER 22, 2024, PLAINTIFFS SEEK A FEBRUARY 3, 2025 CUTOFF AND TO RE-OPEN DISCOVERY AS TO ALL OF DEFENDANTS' NEW INFORMATION

### A. Plaintiffs Do Not Seek to Re-Open Discovery at This Time if the Court Sets a Fact Cutoff Date of November 22, 2024

As indicated in Plaintiffs' MSJ Opposition brief, if the Court is inclined to grant summary judgment based on Defendants' newly-introduced facts, Plaintiffs respectfully request that the Court permit Plaintiffs to conduct limited discovery as to Defendants' new information pursuant to Fed. R. Civ. P. 56(d). Dkt. 796 at ECF p. 12, n.3. If the Court is not inclined to grant summary judgment in part based on these facts, then Plaintiffs do not seek additional discovery so long as the Court imposes a fact cutoff date of November 22, 2024.

Judge Battaglia's Order on Plaintiffs' Ex Parte Motion required Defendants to produce the new evidence submitted in Defendants' MSJ reply briefing. Dkt. 824. Defendants produced this information to Plaintiffs on March 3, 2025. Swearingen Decl. ¶ 13. Having reviewed this information, Plaintiffs do not believe Defendants' additional evidence is capable of demonstrating the absence of any material facts. Accordingly, Plaintiffs do not seek additional discovery as to this information so long as the Court imposes a fact cutoff date of November 22, 2024.

### B. Plaintiffs Seek to Re-Open Discovery if the Court Sets a Fact Cutoff Date after November 22, 2024

In the event the Court imposes a fact cutoff date after November 22, 2024, Plaintiffs respectfully request that the Court select February 3, 2025. This is because February 3, 2025 is the date Defendants submitted their MSJ reply brief, citing to the evidence that Judge Battaglia ordered to be produced in Docket Number 824. If the Court selects February 3, 2025 as the fact cutoff, good cause would permit Plaintiffs to conduct discovery on the new facts Defendants submitted with their MSJ opening and reply briefs. Specifically, Plaintiffs would seek three hours for depositions of Dr. Peter Freedland Dr. Jon Montgomery, and Mike Binsfield; a ninety minute deposition of Sergio Sanchez; sixty minute depositions of Sgt. Perales and Eunice Ramos; medical records and non-CIRB death reviews regarding deaths in the Jail or at a hospital since January 1, 2024; and an agreed-upon set of 30 class member medical records for class members treated between June 1, 2024 and present. Swearingen Decl. ¶ 11 & Ex. H.

Under FRCP 16(b)(4), scheduling orders may be modified for good cause and with the judge's consent. Courts consider six factors when ruling on a Rule 16 motion to amend a scheduling order to reopen discovery: (1) "whether trial is imminent"; (2) "whether the request is opposed"; (3) "whether the non-moving party would be prejudiced"; (4) "whether the moving party was diligent in obtaining discovery within the guidelines established by the court"; (5) "the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court"; and (6) "the likelihood that the discovery will lead to relevant evidence." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017); *see also Innovative Health LLC v. Biosense Webster, Inc.*, 2024 WL 4405166, at *2-5 (C.D. Cal. Aug. 13, 2024) (reopening discovery for purpose of getting information about "current market conditions," as relevant to injunctive relief claim); *Nat'l Fire Protection Ass'n, Inc. v. UpCodes, Inc.*, 2023 WL 6194396,

at *2-5 (C.D. Cal. Apr. 5, 2023) (in injunctive relief case, reopening discovery related to "significant factual developments"); *Stephen C. v. Bureau of Indian Educ.*, 2020 WL 4464398, at *1-2 (D. Ariz. Aug. 4, 2020) (reopening discovery on evidence related to a "new policy" that was "relevant to any potential prospective relief" the court would need to grant at trial).

Here, Plaintiffs satisfy the good cause standard. First, the trial date has not yet been set.

Second, Defendants have already agreed to some of Plaintiffs' requested discovery. Defendants first proposed on February 19, 2025 that Plaintiffs could have a **three hour** deposition of either Dr. Freedland or Dr. Montgomery, and death records after June 1, 2024—on the condition that Plaintiffs' counsel agree that Plaintiffs are not entitled to any additional discovery at any point in time going forward. *See* Swearingen Decl., Ex. A (February 19, 2025 10:45 AM email from E. Pappy). However, at the March 5, 2025 meet and confer, Defendants reduced their offer to **an hour and a half** deposition of either Dr. Freedland or Dr. Montgomery, and death records after June 1, 2024. *Id.* ¶ 9 & Ex. G. Plaintiffs' counsel have explained to Defendants that it is necessary to depose both Dr. Freedland and Dr. Montgomery, especially given Plaintiffs' concern that each of them will testify that the other knows the information (this is what happened with the doctors' prior depositions). *Id.* ¶ 9 & Ex. G.

Third, Defendants have not identified any prejudice. *Id.* ¶ 8. The only foreseeable prejudice would be the time and expense of conducting discovery, which would prejudice both parties. In the course of negotiating the discovery that Plaintiffs seek, and in the spirit of compromise, Plaintiffs decreased the requested time for each deponent that submitted a MSJ declaration, offered to take the depositions by Zoom instead of in-person, and narrowed the scope of the document requests. *Id.* ¶ 2.

Fourth, Plaintiffs have been diligent in seeking discovery of Defendants' new

information. Plaintiffs included in their MSJ Opposition brief a request for discovery in the event that the Court is inclined to grant partial summary judgment based on the new evidence. Dkt. 796 at ECF p. 12, n.3. Five days after filing their Opposition brief, on January 27, 2025, Plaintiffs wrote Defendants asking to obtain discovery on Defendants' new information. Defendants repeatedly slowed bringing an IDC on this issue, stating on January 30, 2025 that "There is no rush here. There isn't even a trial date." Swearingen Decl. ¶ 4. After meeting and conferring by Zoom and exchanging numerous emails on the subject, Defendants informed Plaintiffs on February 19, 2025 that Plaintiffs' request for an IDC "is not pressing." *Id.*

Fifth, it is imminently foreseeable that additional discovery would be needed on Defendants' new evidence, as Plaintiffs should be entitled to test the information that Defendants plan to use at trial.

Sixth, Plaintiffs' request for additional discovery is limited to Defendants' new information, which is relevant to Plaintiffs' claims.

In the event the Court imposes a fact cutoff date after November 22, 2024, Plaintiffs respectfully ask that the Court order the parties to complete document productions by April 4, 2025 and depositions by April 30, 2025 to minimize the potential for trial delays. Plaintiffs would agree to limited discovery on any new evidence submitted by Plaintiffs up to the fact cutoff date set by the Court. *See id.*, Ex. G at 6. Plaintiffs will be seeking the earliest possible trial date due to the ongoing constitutional and statutory violations they encounter at the Jail.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

For the above reasons, Plaintiffs respectfully ask the Court to set a November 22, 2024 fact cutoff. In the event that the Court sets a later fact cutoff date, Plaintiffs respectfully ask that the Court permit Plaintiffs to obtain discovery as to Defendants' new information.

DATED: March 7, 2025         Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Van Swearingen*
    Van Swearingen

Attorneys for Plaintiffs and the Certified Class and Subclasses