GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
mfreedman@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**PLAINTIFFS' SUR-REPLY RE: DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge: Hon. Anthony J. Battaglia<br><br>Date: March 27, 2025<br>Time: 2:00 p.m.<br>Crtrm.: 4A |

[4657550.3]

Case No. 3:20-cv-00406-AJB-DDL

PLAINTIFFS' SUR-REPLY RE: DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to the Court's February 25, 2025 Order, Plaintiffs hereby submit this sur-reply responding to the new evidence and arguments in Defendants' reply brief in support of their Motion for Partial Summary Judgment ("MSJ"). As explained herein, the new evidence fails to justify granting summary judgment on any of Plaintiffs' claims; to the contrary, the new evidence demonstrates ongoing constitutional violations at the Jail or is otherwise disputed. Plaintiffs also object to the inadmissible declarations that Defendants submitted with their reply brief.

## BACKGROUND

On February 3, 2025, Defendants submitted their reply brief in support of their MSJ. *See* Dkt. 806 ("Reply"). The Reply contained new evidence and arguments, and also referenced evidence, such as class member medical records, that Defendants failed to attach to any pleading. Accordingly, on February 10, 2025, Plaintiffs filed an ex parte motion for leave to file limited objections and to strike the improper evidence and argument. Dkt. 815. On February 25, 2025, the Court issued an order on Plaintiffs' ex parte motion, in which the Court confirmed that Defendants' Reply included new evidence and arguments, ordered Defendants to produce the new evidence to Plaintiffs by March 3, 2025, and permitted Plaintiffs to file a sur-reply responding to the new evidence and objecting to any inadmissible evidence. Dkt. 824 at 3. The Court also stated that Defendants may file a response only to Plaintiffs' objections to evidence. *Id.* On March 3, 2025, Defendants produced to Plaintiffs a training bulletin, a policy, three excerpts from class member medical records, and surveillance video of the Vista Detention Facility public lobby from 2:10 p.m. to 3:50 p.m. on January 7, 2025. Declaration of Van Swearingen in Support of Plaintiffs' Sur-Reply ("Swearingen Decl."), ¶ 2.[1]

---

[1] Although the information produced on March 3, 2025 is Defendants' evidence and was never attached to any of Defendants' own pleadings, Plaintiffs nonetheless include the evidence in the interest of completing the record for the Court.

# ARGUMENT

## I. THE EVIDENCE UNDERLYING THE DR. MONTGOMERY DECLARATION SHOWS CONTINUING HARM FROM DEFENDANTS' INADEQUATE MEDICAL SYSTEM

Plaintiffs' opposition to Defendants' MSJ includes substantial evidence about deficiencies in Defendants' medical system and Defendants' deliberate indifference to the substantial risk of harm from that system. Dkt. 796 ("Opp.") at 7-17. Plaintiffs filed supporting declarations from class members that are illustrative of that harm. Opp. at 11; *see* Dkt. 796-16 (James Clark), Dkt. 796-17 (Amie Stanley), Dkt. 796-19 (Miguel Rosales). In their Reply, Defendants argue that an "actual review" of the three class members' medical files shows that the declarations are "incomplete," even though Defendants themselves failed to include any medical files with the Reply. *See* Reply at 2-3; Dkt. 806-1, App. 2 ("Montgomery Decl.").

The medical files produced by Defendants confirm Plaintiffs' contentions. For example, Plaintiffs noted that both Mr. Clark and Ms. Stanley suffered for several months due to Defendants' delays in providing necessary treatment. Opp. at 11, 15. Defendants claim the timing of Mr. Clark's surgery depended on an outside urologist, Reply at 2-3, but the records confirm that on October 22, 2024, the outside urologist requested "stat authorization" for surgery for Mr. Clark. Swearingen Decl., Ex. A-5. Mr. Clark never received surgery prior to being released on January 5, 2025. *See* Reply at 2. Defendants' Reply and Dr. Montgomery's declaration provide no explanation for Defendants' failure to authorize an urgently-needed surgery during the two and a half months after the urologist's "stat" request.

Similarly, Dr. Montgomery does not dispute that Ms. Stanley waited from August 2024 until December 2024 to receive a biopsy that confirmed a growth was cancerous. Dkt. 796-17, ¶¶ 4–6; *accord* Swearingen Decl., Ex. B-20. In January 2025, and only after Plaintiffs' counsel intervened, Ms. Stanley saw a specialist who recommended radiation treatment. Dkt. 796-17, ¶¶ 7–9; Swearingen Decl., Ex. B-8. Defendants dispute only the detail of whether Ms. Stanley's cancerous growth had

metastasized, not that the growth (regardless of any metastasis) required radiation treatment or that the Jail delayed in referring her to a biopsy and specialist—all of which contributed to her ongoing suffering.  *See* Reply at 3.  As for Mr. Rosales, Defendants claim that when he went to the hospital on November 16, 2024, Mr. Rosales "just wanted documented that his blood pressure was elevated."  Reply at 3.  However, there is no such indication in the 58 pages of medical records Defendants produced.  *See* Swearingen Decl., Ex. C.  Even if Mr. Rosales did refuse medication on a few instances, as Defendants claim, Defendants do not explain how such refusals excuse the Jail's delay in responding to Mr. Rosales's urgent request when he was short of breath and dizzy in November 2024.  *See* Dkt. 796-19, ¶¶ 5–6.  Further, Plaintiffs' medical expert concluded that the Sheriff's Office does not always offer care to class members before documenting refusals.  *See* Opp. at 9; Dkt. 796-3, Ex. A (Keller Report) at 113–124.

Dr. Montgomery's Reply declaration also claims that at one Jail facility, staff are performing assessments of class members within 14 days after intake.  Montgomery Decl., ¶ 26.  Defendants attached no evidence to support this claim, which appears intended to respond to Plaintiffs' evidence that Defendants often fail to meet the 14-day requirement.  *See* Opp. at 13–14 (citing Dkt. 796-3, Ex. A at 69–82 & Ex. B at 40–44).  On March 3, 2025, Defendants produced a training bulletin and a policy from the Sheriff's Office regarding a 14-day health assessment.  Swearingen Decl., Ex. D.  However, Plaintiffs' substantial evidence shows that *in practice*, Defendants frequently fail to meet the policy's timelines by not complying with the 14-day assessment policy.  Opp. at 13–14.

**II.  DEFENDANTS' EVIDENCE CONTINUES TO SHOW THAT AN ATTORNEY COULD NOT MEET WITH THEIR CLIENT FOR OVER THREE HOURS**

Plaintiffs' opposition brief cited extensive evidence that Defendants provide "no reliable and confidential method of attorney-client communication."  Opp. at 30.  In addition to the reports of Plaintiffs' expert Karen Snell, Plaintiffs also included a

declaration from Arameh Vartomian, an attorney for Plaintiffs who reported being unable to meet with a client for over three hours at the Jail on January 7, 2025.  *See* Dkt. 796-21.  In their Reply brief, Defendants misleadingly claim that video footage shows Mr. Vartomian waited only about one hour.  Reply at 12 n.1.  Sergeant Burkey's declaration states that video footage shows Mr. Vartomian enter the jail at 12:16 and leave at 12:25, and then return again at 2:11 before finally entering the secure part of the facility to meet with a client at 3:34 p.m.  Dkt. 806-1, App. 5 ("Burkey Decl."), ¶¶ 2–4.  But Sergeant Burkey and lobby staff explained that Mr. Vartomian left the lobby from 12:25 to 2:11 because "all of the professional visit rooms were occupied" and Jail staff told Mr. Vartomian to return at 2:30 when rooms might be available.  *Id.* at ¶ 7; Dkt. 806-1, App. 6, ¶ 3.  Sergeant Burkey's declaration thus confirms that Mr. Vartomian could not meet with his client for more than three hours, from 12:16 until 3:34 p.m.  The surveillance footage Defendants produced shows Mr. Vartomian not entering the secure part of the facility until 3:34 p.m.  Swearingen Decl., Ex. E.  Notably, the surveillance footage begins at 2:10 p.m. and ends at 3:50 p.m., and thus omits the earlier portion that Sergeant Burkey claimed to review.  Swearingen Decl., ¶ 7.  Nothing in Defendants' Reply or their new evidence rebuts the record regarding Defendants' inadequate system for confidential attorney communication.  Opp. at 30–31 (citing evidence).

### III. DEFENDANTS PRODUCED NO EVIDENCE TO SUPPORT THE CLAIMS IN THE PERALES DECLARATION

In the opposition, Plaintiffs showed that Defendants do not provide adequate access to legal research for incarcerated people who are litigating their civil cases on a pro per basis, such that it is "impossible for incarcerated people even to file and respond to pleadings."  *See* Opp. at 31.  Defendants contend that they are now "providing legal research access to all IPs through facility kiosks," Reply at 13 (emphasis removed), citing the declaration of Sergeant Arturo Bernal Perales.  *See* Dkt. 806-1, App. 7 ("Perales Decl.").  Sergeant Perales claims that video kiosks

available in the Jail facilities provide "electronic law library resources through Fastcase, Inc.," and attaches three photos of kiosk screens. *Id.*

However, nothing in Sergeant Perales's declaration demonstrates that the existence of some video kiosks with Fastcase access means that incarcerated people have access to legal research opportunities sufficient to satisfy the Constitution. In response to the Court's February 25, 2025 Order, Defendants produced no evidence related to Sergeant Perales's declaration or law library access. Sergeant Perales's declaration fails to explain how many video kiosks, if any, are in each housing unit; the process for an incarcerated person accessing the kiosks, including whether advance scheduling is required; the scope of services available through the kiosks; how long a person can spend at the kiosk; other uses of the kiosks, such as family video calls, which may limit their availability for legal research; whether a person can print material from the kiosks; or any other details necessary to understand whether the kiosks in fact provide meaningful access to legal research services.

## IV. THE EVIDENCE DOES NOT SUPPORT DEFENDANTS' NEW ARGUMENT RELATED TO THE SECTION 11135 CLAIM

Plaintiffs' Opposition included evidence that Defendants' policing and alternatives to incarceration programs have a disparate racial impact. Opp. at 32–35. In their Reply, Defendants for the first time argue that the Sheriff's Office does not receive any state funding for either program, Reply at 13–14, as California Government Code § 11135 requires a plaintiff to demonstrate that the program or activity at issue is "funded directly by the state, or receives any financial assistance from the state." Cal. Gov't Code § 11135(a). Defendants' new argument relies solely on a declaration from Eunice Ramos, the Sheriff's Office's Chief Financial Officer. Dkt. 806-1, App. 8 ("Ramos Decl."). As a threshold matter, Defendants could have raised this argument in their moving papers, but did not, and the Court retains the discretion to ignore arguments raised for the first time in a reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

If the Court considers the merits, denial of Defendants' motion remains appropriate because Ms. Ramos's declaration and the evidence do not support the claims in Defendants' Reply. Regarding the Sheriff's Office's policing program, Ms. Ramos attests that the Sheriff's Office receives state funding for "law enforcement," including a fentanyl task force, elder-fraud program, narcotics task force, and methamphetamine enforcement team, among others. Ramos Decl., ¶ 2. It stands to reason – even without taking all inferences in Plaintiffs' favor, as the Court must at this stage – that the various aforementioned programs like a narcotics task force involve enforcement activities that include stopping and arresting individuals. Ms. Ramos's declaration never says that patrol activities receive no state funding. Moreover, the Sheriff's Office's 30(b)(6) witness testified that their policing programs do receive state funding. Swearingen Decl., Ex. F at 10:12-11:3. The evidence thus contradicts Defendants' claim that their program of "policing in stopping and arresting people" receives no state funding. *See* Reply at 13.

As to alternatives to incarceration, the Sheriff's Office stated in a Public Records Act response that the Sheriff's County Parole and Alternative Custody program ("CPAC") – which encompasses several alternatives to incarceration programs – "was implemented as part of Public Safety Realignment and is funded by AB109-Community Corrections funding from the State…." Swearingen Decl., Ex. G-102. The Sheriff's Office also produced a budget for CPAC showing that it is funded by AB109. *Id.*, Ex. H. This evidence thus contradicts the argument in Defendants' brief that the Sheriff's Office's alternatives to incarceration programs receive no state funding. *See* Reply at 14.

## V.  OBJECTIONS TO DECLARATION OF DR. BRIAN WITHROW

Dr. Withrow, Defendants' expert related to Plaintiffs' claims under Section 11135, submitted an untimely and improper expert declaration in support of Defendants' MSJ, Dkt. 782-2, App. 11, that Plaintiffs have requested the Court strike. *See* Opp. at 3–7. Dr. Withrow's MSJ declaration focused almost exclusively

1  on rebutting the expert report of Plaintiffs' data expert, Dr. Matthew Ross. *See* Dkt.
2  782-2, App. 11.  Dr. Withrow's MSJ declaration was untimely, as Defendants had
3  an opportunity, but failed, to submit a rebuttal report to Dr. Ross's report by the
4  rebuttal report deadline set by the Court. *See* Opp. at 4–5; Swearingen Decl., Ex. I
5  at 255:5-8 (Dr. Withrow admitting that he did not submit a rebuttal report because
6  he "wasn't aware" of the deadline and "missed it").  Plaintiffs submitted a
7  declaration from Dr. Ross in support of their Opposition, Dkt. 796-14, for the sole
8  purposes of (1) laying a foundation for his timely-filed expert and rebuttal reports,
9  and (2) to rebut Dr. Withrow's improper summary judgment declaration and the
10 opinions contained therein.

11  With the Reply, Defendants further flout this Court's expert discovery
12 deadlines by submitting a second declaration from Dr. Withrow, Dkt. 806-1, App. 9,
13 intended to rebut Dr. Ross's rebuttal of Dr. Withrow's MSJ declaration (which, as
14 discussed above, was an untimely rebuttal to Dr. Ross's original report).  Plaintiffs
15 respectfully request that the Court put an end to Dr. Withrow's continued attempts
16 to submit untimely expert opinions.  For the reasons set forth in Plaintiffs'
17 Opposition, Plaintiffs request that the Court strike Dr. Withrow's MSJ declaration,
18 Dkt. 782-2, App. 11, and his Reply declaration, Dkt. 806-1, App. 9, as untimely and
19 unjustified expert reports. *See* Opp. at 6 (citing authority).  Plaintiffs further request
20 that the portions of Defendants' briefing that rests on those improper declarations
21 from Dr. Withrow be stricken as well. *See* Reply at 15:3–14; Dkt. 782-1 at 20:2–10,
22 30:27–31:13.  If the Court grants this request, Plaintiffs do not object to the Court
23 striking all paragraphs of Dr. Ross's Opposition declaration, with the exception of
24 the paragraphs necessary to authenticate and lay a foundation for his timely-served
25 expert report and rebuttal report.

## VI. OBJECTIONS TO DECLARATION OF SUSAN COLEMAN

27  Ms. Coleman, one of Defendants' attorneys, submitted a declaration in
28 support of Defendants' Reply, Dkt. 806-1, App. 10, then the following day

submitted an Amended Declaration, Dkt. 809.  Paragraphs 5 and 6 of her declaration contain argument about whether a party must file expert rebuttal reports and the importance of evidence regarding "the current status of the Jail conditions."  Dkt. 809 ¶¶ 5–6.  Both of these paragraphs are inadmissible because they consist of improper factual or legal argument that should have been included in Defendants' brief.  *Fuchs v. State Farm. Gen. Ins. Co.*, CV-16-01844-BRO-GJS, 2017 WL 4679272, at *2 (C.D. Cal. Mar. 6, 2017) ("[C]ourts in this Circuit have stricken portions of declarations, as well as entire declarations where these contained improper argument that should have been included in the memorandum of points and authorities, rather than a declaration.").

Paragraph 11 of the Coleman Declaration contains purported evidentiary objections to Exs. I, J, and X to the Declaration of Van Swearingen in support of Plaintiffs' opposition to Defendants' Motion.  Dkt. 809, ¶ 11 (citing Dkt. 796-2, Exs. I, J, and X).  This paragraph of Ms. Coleman's declaration should be stricken for the same reason the Court should strike Ms. Coleman's testimony discussed above and because it does not comply with this Court's Civil Case Procedures, which require that all objections to evidence be contained in a party's brief.  *See* Hon. Anthony Battaglia Civil Case Procedures, § II.A ("***Objections relating to the motion should be set forth in the parties' opposition or reply.  Separate statement of objections will NOT be allowed.  The inclusion of objections does not expand the page limits set.***") (emphases in original).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Partial Summary Judgment and strike the inadmissible evidence specified herein.

| | | |
|---|---|---|
| 1 | DATED: March 10, 2025 | Respectfully submitted, |
| 2 | | |
| 3 | | ROSEN BIEN GALVAN & GRUNFELD LLP |
| 4 | | By: */s/ Van Swearingen* |
| 5 | | Van Swearingen |
| 6 | | Attorneys for Plaintiffs and the Certified Class and Subclasses |