GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
mfreedman@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR INTERIM ATTORNEYS' FEES AND COSTS**<br><br>Judge: Hon. Anthony J. Battaglia<br><br>Date: May 8, 2025<br>Time: 2:00 p.m.<br>Crtrm.: 4A |

# TABLE OF CONTENTS

Page

I. Plaintiffs' Counsel's Requested Rates Are Appropriate ................................... 2

    A. Defendants' Claim that this Case Is Not Complex Is Meritless ............ 2

    B. Plaintiffs' Requested Rates Are Within the San Diego Market ............ 3

    C. RBGG and Fischer Are Entitled to Their Bay Area Rates ..................... 4

    D. Defendants' Proposed Rates Are Internally Inconsistent, Fail to Account for Experience, and Conflict with Past Court Awards ............. 5

II. Plaintiffs' Counsel's Hours Were Necessary for the Relief Obtained .............. 6

    A. Defendants Rejected an ENE on All ADA Issues Until After Plaintiffs Filed Their Motion for Preliminary Injunction ....................... 6

    B. Plaintiffs Prevailed on Discovery Disputes that Defendants Claim Were Unsuccessful ................................................................. 7

    C. Plaintiffs' Staffing and Conferencing Time Was Reasonable ................ 8

    D. Plaintiffs' Claimed Hours Are Neither Excessive Nor Unnecessary ................................................................................................. 9

III. Plaintiffs' Fees-for-Fees Work Is Compensable and Appropriate .................... 9

IV. Plaintiffs' Claimed Costs are Compensable and Appropriate ....................... 10

V. Plaintiffs Will Supplement Their Merits and Fees Claim at a Later Time ........................................................................................................................ 10

CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

Page

**CASES**

*Cruz ex rel. Cruz v. Alhambra Sch. Dist.*,
  601 F. Supp. 2d 1183 (C.D. Cal. 2009).................................................................6

*Democratic Party of Washington State v. Reed*,
  388 F.3d 1281 (9th Cir. 2004)...............................................................................8

*Gates v. Deukmejian*,
  987 F.2d 1392 (9th Cir. 1992)...............................................................................4

*Johnson v. Baird Lands, Inc.*,
  2020 WL 3833278 (N.D. Cal. July 8, 2020).........................................................2

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*,
  78 F. Supp. 3d 1289 (C.D. Cal. 2015)...................................................................1

*Luna v. FCA US LLC*,
  2020 WL 491462 (C.D. Cal. Jan. 30, 2020) .........................................................9

*Moreno v. City of Sacramento*,
  534 F. 3d 1106 (9th Cir. 2008)..............................................................................7

*Nadarajah v. Holder*,
  569 F.3d 906 (9th Cir. 2009)...............................................................................10

*Nat'l Fed'n of Blind of California v. Uber Techs., Inc.*,
  2016 WL 10920461 (N.D. Cal. Dec. 6, 2016) ......................................................7

*Parsons v. Ryan*,
  949 F.3d 443 (9th Cir. 2020).................................................................................4

*Perfect 10 v. Giganews*,
  2015 WL 1746484 (C.D. Cal. Mar. 24, 2017), *aff'd* 847 F.3d 657 (9th Cir. 2015).................................................................................................................2

*Prison Legal News v. Ryan*,
  2023 WL 9190364 (9th Cir. Mar. 21, 2023).........................................................4

**STATUTES**

42 U.S.C. § 12205.........................................................................................................1

The U.S. Congress enacted the fee shifting provisions under the ADA, 42 U.S.C. § 12205 "to ensure that nonaffluent plaintiffs would have 'effective access' to the Nation's courts to enforce" the ADA. *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 78 F. Supp. 3d 1289, 1299-1300 (C.D. Cal. 2015). After over three years of vigorous litigation, thanks to the unwavering support of this Court (overseeing more than 17 settlement conferences) and the diligence and skill of Plaintiffs' counsel, the indigent members of the disability subclass have achieved that access.

Without citation to record evidence, Defendants' Opposition seeks to rewrite history, incorrectly claiming that Plaintiffs' counsel put their own interest ahead of the disability sub-class, sought to enrich themselves, and refused to help effectuate changes. As demonstrated below and in the declarations filed in support and in reply, these allegations are inaccurate. They also fail to assist this Court in deciding this fee motion. The only issues before the Court are whether the claimed fees and costs are reasonable. They unquestionably are.

The unrebutted evidence shows that Defendants knew in 2016 that the Jail was out of compliance with the ADA and that no other law firms had the requisite experience or will to prosecute Plaintiffs' ADA claim against the San Diego jail system. Defendants concede that Plaintiffs' counsel are experts in jail ADA litigation and do not identify any other firm that would have litigated this action.

Defendants' contention that Plaintiffs' counsel's requested rates should be reduced because this is a "simple" ADA case is belied by testimony from prominent California disability access lawyers as well as the record in this case. This criticism that the underlying case is "not complex" is a routine playbook employed by Defendants' fees expert, John O'Connor, which has been soundly rejected by numerous courts. Many federal and state courts in California have strongly discredited Mr. O'Connor's hourly rates testimony, finding his opinion to have no support in the record. Defendants' proposed hourly rates are also internally inconsistent and based off entirely inapposite single-issue physical access ADA

cases by one firm that has been repeatedly sanctioned.

Defendants' contentions about Plaintiffs' counsel's staffing and litigation strategy are without merit. Simultaneously advancing litigation and settlement was necessary for Plaintiffs to obtain the remedies secured. Defendants' inaccurate complaints about unreasonable or excessive hours, even if true, total less than 1.2% of the claimed amount, and are already addressed by discrete billing judgment reductions as well as the 5% across-the-board cut included in Plaintiffs' fees motion that amount to over 13% of the lodestar value of the total time spent on the merits.

## I. Plaintiffs' Counsel's Requested Rates Are Appropriate

### A. Defendants' Claim that this Case Is Not Complex Is Meritless

Defendants' only evidence that this "is not a complex case" (Opp. at 4) is the declaration of their fees expert, John O'Connor, who wrongly claims that Defendants "did not oppose class treatment" (*see* oppositions to provisional class certification at Dkts. 153, 311) and that this ADA case was not as complex as *Bloom v. City of San Diego*. O'Connor Decl. ¶¶ 22-24. Mr. O'Connor has made the same unsupported arguments that he makes here in many cases, which have been rejected by numerous courts. Pearl Reply Decl. ¶¶ 11-15 & Ex. A; *see, e.g.*, *Perfect 10 v. Giganews*, 2015 WL 1746484, at *16-20 (C.D. Cal. Mar. 24, 2017), *aff'd* 847 F.3d 657 (9th Cir. 2015). At least one court has discredited Mr. O'Connor's opinion on rates in an ADA action, finding that "[h]e states that he has litigated (unsuccessfully) one ADA case in 2000," and explaining that his "own litigation career and experience with attorneys' fees … focuses primarily on non-disability, non-civil rights actions[.]" *Johnson v. Baird Lands, Inc.*, 2020 WL 3833278, at *3 (N.D. Cal. July 8, 2020) (concluding that "Mr. O'Connor's declaration is not helpful here."). Prominent disability access attorneys testify that this matter is complex, including the attorney whose firm litigated *Bloom*. Parks Reply Decl. ¶¶ 2-4; *see also* Grunfeld Decl. ¶¶ 40-105, 110-114; Mendelson Reply Decl. ¶¶ 5-11; Center Reply Decl. ¶¶ 3-5.

**B.  Plaintiffs' Requested Rates Are Within the San Diego Market**

Defendants incorrectly contend "[t]he [d]eclarations submitted in this case say nothing regarding the rates in the 'prevailing market'—i.e., the billing rates at San Diego County law firms." Opp. at 12. Plaintiffs provided ample evidence showing that the requested rates are consistent with prevailing rates in the San Diego market for work of similar complexity performed by counsel of similar skill, experience, and reputation, including rates awarded in numerous San Diego cases. Pearl Decl. ¶¶ 24, 33, 36; Young Decl. ¶¶ 10, 19; *see also* Pearl Reply Decl. ¶¶ 35-52.

Mr. O'Connor proposes that Plaintiffs' counsel's hourly rates be pegged to run-of-the-mill ADA access cases. O'Connor Decl. ¶¶ 22-35, 44-51. As explained above, his argument that this case was simple cannot be squared with the record, and this type of criticism is part of his playbook that courts have strongly rejected. *See* Pearl Reply Decl. ¶¶ 11-15, 37-48. Mr. O'Connor's only source of what he calls the applicable ADA access fees scale is his comparison to a single firm, Potter Handy LLP. O'Connor Decl. ¶¶ 45, 47, 49-50. The comparison to Potter Handy, a firm that has been repeatedly sanctioned, and that litigates small ADA cases on behalf of single individuals challenging only one or a handful of barriers at local establishments, is wholly inapposite. *See* Pearl Reply Decl. ¶¶ 33-47; Center Reply Decl. ¶ 5 ("[T]his area of practice is not comparable to litigating systemic challenges under Title II of the ADA and Section 504 of the Rehabilitation Act on a class-wide basis against large, complex, multi-facility systems of detention or incarceration"); Mendelson Reply Decl. ¶¶ 9-10 ("Bringing a prison or jail system into compliance with the ADA, Rehabilitation Act and related state law is entirely different from the kind of litigation undertaken by the law firm Potter Handy.").

Mr. O'Connor also relies on survey data from the National Association of Legal Fee Analysis ("NALFA"), an organization of which Mr. O'Connor is one of only four members, in support of his proposed rates. O'Connor Decl. ¶¶ 52-59 & Ex C; *see* Pearl Reply Decl. ¶49. However, this data in no way undermines

Plaintiffs' requested rates because, among other things, it improperly excludes rates charged by large law firms for complex civil litigation, and his assignment of percentiles to specific timekeepers appears to be plucked out of thin air. Pearl Reply Decl. ¶¶ 49-50, 60; *see also id.* ¶¶ 51-52 (similarly analyzing Real Rate Report).

Defendants also incorrectly assert that "[t]he only legitimate purpose of DLA Piper, a local firm, was to send local attorneys and law clerks to interview Incarcerated Persons." Opp. at 6. DLA Piper attorneys assisted with many case responsibilities, including assisting with FRCP Rule 30(b)(6) depositions, drafting declarations, and providing advice on litigation decisions (related to both the ADA claim and other claims) based upon DLA Piper's many years litigating class actions and its deep knowledge of the Southern District of California local rules and practices. Young Reply Decl. ¶¶ 2-5. Mr. O'Connor contends that "DLA has shown no expertise in the particular field" (O'Connor Decl. ¶ 60), neglecting to consider DLA Piper's accolades as one of the premier class action practices in the nation as well as its lengthy experience litigating class claims against the Nebraska prison system. Young Decl. ¶ 6; Young Reply Decl. ¶ 2; *see* Pearl Reply Decl. ¶ 61 (pro bono counsel awarded full market rates).

**C.    RBGG and Fischer Are Entitled to Their Bay Area Rates**

To be entitled to recover San Francisco rates, Plaintiffs must show that competent counsel in San Diego were unavailable. *Prison Legal News v. Ryan*, 2023 WL 9190364, at *1 (9th Cir. Mar. 21, 2023) (awarding RBGG its Bay Area rates for work in Arizona); *Parsons v. Ryan*, 949 F.3d 443, 466 (9th Cir. 2020); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

Mr. O'Connor incorrectly opines that Plaintiffs did not submit sufficient evidence to support their claims of unavailability of local counsel. O'Connor Decl. ¶ 43. However, Plaintiffs' Counsel submitted three declarations with their Motion that specifically addressed this issue, and an additional declaration from the Executive Director of the Prison Law Office with this Reply. Young Decl. ¶ 7;

Grunfeld Decl. ¶ 42; Pearl Decl. ¶ 17; *see also* Mendelson Reply Decl. ¶¶ 13-14.

Defendants agree that "Ms. Grunfeld and Mr. Fischer are experts in litigation against prisons and jails throughout California." Opp. at 11. Yet Defendants' Opposition and Mr. O'Connor's declaration are both silent as to the hourly rates that should apply if the Court determines that home office rates are appropriate for RBGG and Mr. Fischer. Plaintiffs' Motion provides substantial evidence that their requested 2025 rates are within the range of rates for attorneys in the San Francisco Bay Area of comparable skill, qualifications, reputation, and experience paid hourly in non-contingent cases, and that Courts routinely award their rates in comparable cases litigated within and outside the Bay Area. Mot. at 15-17; *see* Pearl Reply Decl. ¶¶ 33-34. Neither Defendants nor Mr. O'Connor disagrees that current 2025 rates should be awarded. *See generally* Opp. and O'Connor Decl.

### D. Defendants' Proposed Rates Are Internally Inconsistent, Fail to Account for Experience, and Conflict with Past Court Awards

Mr. O'Connor opines that "Mr. Fischer has great experience in various case issues," that "Ms. Grunfeld is obviously experienced in civil rights litigation," and that Mr. Rosen is "skilled … at civil rights litigation." O'Connor Decl. ¶¶ 55-56. But Defendants' proposed rates fail to account for the relative amount of experience of each. Defendants propose that Ms. Grunfeld and Mr. Fischer receive the same rate (O'Connor Decl. ¶ 55) despite the fact that Ms. Grunfeld has approximately twice as much experience as Mr. Fischer. *See* Grunfeld Decl., Ex. A; Fischer Decl., Ex. A. Defendants propose Mr. Rosen receive a rate lower than Ms. Grunfeld and Mr. Fischer's rate (O'Connor Decl. ¶¶ 55-56) despite the fact that Mr. Rosen has significantly more experience than both of them. *See* Grunfeld Decl., Ex. B; *see also* Rosen Reply Decl. ¶¶ 4-22. Defendants propose Mr. Young receive a rate lower than a sixth-year RBGG associate (O'Connor Decl. ¶¶ 58, 60) despite the fact that Mr. Young has over thirty years of experience, primarily in class action litigation. *See* Young Decl. ¶ 6 & Ex. A. Defendants propose that all DLA

1  associates receive the same rates regardless of experience.  O'Connor Decl. ¶ 60.
2  These proposals are internally inconsistent, and contrary to rates that have been
3  awarded to Plaintiffs' counsel by numerous courts.  Pearl Reply Decl. ¶¶ 53-62.

**II.     Plaintiffs' Counsel's Hours Were Necessary for the Relief Obtained**

After discrete billing judgment reductions of approximately 9% to Plaintiffs' claimed merits time, Plaintiffs applied an additional 5% across-the-board reduction to further account for any time that might possibly be considered duplicative, administrative, excessive, or otherwise incorrectly included.  Mot. at 19-20; Swearingen Decl. ¶ 9; *c.f. Cruz ex rel. Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1193 (C.D. Cal. 2009) (applying 5% reduction to account for hours that "are at least somewhat excessive").  In total, Plaintiffs' counsel made billing judgments that have reduced the merits work lodestar by $319,767.38, a 14% reduction.  Mot. at 20.  Defendants fail to take any of these reductions into account.  Pearl Reply Decl. ¶ 65.  Defendants' complaints about excessive time and overstaffing are meritless; however, even if they were all valid, such excess hours are already accounted for in Plaintiffs' unacknowledged reductions.  *Id.* ¶¶ 69-93.

**A.     Defendants Rejected an ENE on All ADA Issues Until After Plaintiffs Filed Their Motion for Preliminary Injunction**

Defendants' Opposition incorrectly asserts that Plaintiffs' refused Defendants' settlement overtures "until they had billed for and filed the renewed injunction request in April of 2023."  Opp. at 8; *see also* O'Connor Decl. ¶¶ 71, 79, 81 (recommending a 40% discount to claimed hours in this "stage" because Plaintiffs did not "immediately" settle).  In fact, in December 2022, Defendants rejected Plaintiffs' proposal to have an ENE as to the entirety of Plaintiffs' ADA claim (physical barriers <u>and</u> access to services/programs at all facilities), and instead proposed an ENE only as to physical barriers at only one of the seven jail facilities.  Swearingen Reply Decl. ¶ 16.  Three weeks prior to filing Plaintiffs' motion for preliminary injunction as to ADA issues, Defendants rejected Plaintiffs' offer to

have an ENE "with Court oversight of the process" in lieu of litigating the motion. *Id.* at ¶ 19. Defendants would only agree to discuss physical barriers at two jail facilities, and demanded that the parties' experts and attorneys try to resolve the issues first, without Court oversight. *Id.* at ¶¶ 20-21. After the motion was filed, the parties' experts and their attorneys met but were unable to resolve Plaintiffs' ADA claim without further assistance by the Court. *Id.* at ¶ 25. Over the course of the next year and a half, the parties participated in at least *seventeen* Court-supervised settlement conferences. *Id.* As the record shows, Court supervision of the process was necessary to settle the entirety of Plaintiffs' ADA claim. *Cf. Moreno v. City of Sacramento*, 534 F. 3d 1106, 1112 (9th Cir. 2008) (explaining that "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain."); *Nat'l Fed'n of Blind of California v. Uber Techs., Inc.*, 2016 WL 10920461, at *2 (N.D. Cal. Dec. 6, 2016) (finding RBGG's hours reasonable where they simultaneously pursued litigation and settlement).

### B. Plaintiffs Prevailed on Discovery Disputes that Defendants Claim Were Unsuccessful

Defendants suggest that there was no need for all the discovery served by Plaintiffs (Opp. at 14); however, they fail to identify a single unnecessary ADA discovery request. In fact, Plaintiffs obtained the majority of the discovery sought in relation to their ADA claim. Swearingen Reply Decl. ¶ 2. The Court even permitted ADA discovery requested on an expedited basis. *Id.*; *see also id.* ¶ 13 (establishing that Plaintiffs' two motions for expedited discovery were not "almost identical" as alleged in the Opposition at 7). The Court granted ADA-related discovery requests in other contested discovery motions as well. *Id.* ¶ 2.

Defendants contend that Plaintiffs "were denied their overbroad original ask" at "[e]very [ADA-related] informal discovery conference." Opp. at 14. This is incorrect. For example, over Defendants' objections, the Court granted Plaintiffs' requests to have their ADA expert speak with employees and incarcerated people

during inspections, and to receive floor plans and a roster of incarcerated persons with notes regarding their "type of disability." Swearingen Reply Decl. ¶ 3.

Defendants incorrectly argue that "[t]he Court denied [Plaintiffs' Motion to Compel (Dkt. 489-1)] as to every disability-related request except No. 167, and narrowed it significantly to nothing more than a participation log and list of programs." Opp. at 16. Plaintiffs' discovery motion was directed at over 50 individual Requests for Production ("RFPs"); however, only three of those 50 requests related to ADA issues. Swearingen Reply Decl. ¶ 4. For two of those three RFPs, the Court ordered Defendants to produce some responsive documents because Defendants had refused to produce any responsive documents. *Id.* The Court denied *further* discovery on those three requests because Defendants' counsel represented that key responsive documents had already been produced. *Id.* Mr. O'Connor proposes a 40% cut to a significant portion of Plaintiffs' lodestar in part because "discovery billings are particularly excessive, given the expansive discovery sought that was ultimately narrowed by the Court." O'Connor Decl. ¶ 79. However, Plaintiffs' counsel claimed no time in the instant fee motion for work on that discovery motion or attending the hearing. Swearingen Reply Decl. ¶ 4.

### C. Plaintiffs' Staffing and Conferencing Time Was Reasonable

Defendants charge Plaintiffs' counsel with overstaffing, and suggest that the defense of this case was handled by two lawyers. Opp. at 4, 5-6, 17-18. In fact, Plaintiffs have interacted with at least 25 lawyers for Defendants and/or their medical providers, and the number of defense attorneys and representatives at settlement conferences and jail inspections was typically the same (if not more) than the number from Plaintiffs' side. Swearingen Reply Decl. ¶¶ 9-11. In any event, multiple attorneys conferencing, attending important case events, and working together on significant projects is the norm in complex cases like this one and is commonly paid for by fee paying clients. Pearl Reply Decl. ¶¶ 81-82; *see also Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004)

("[P]articipation of more than one attorney does not necessarily amount to unnecessary duplication of effort"). *Luna v. FCA US LLC*, 2020 WL 491462 (C.D. Cal. Jan. 30, 2020) is inapposite; there, twelve time keepers claimed "egregious amounts of time" for work adapting "boilerplate pleadings and discovery" in a straightforward case about a defective vehicle purchase. *Id.* at *4.

Defendants criticize Plaintiffs' counsel's staffing at three of the five expedited Rule 30(b)(6) depositions that Plaintiffs conducted. Opp. at 22. While the number of attorneys present was proper under the circumstances, the 29 hours of time for two additional attorneys amounts to 1.08% of the total claimed merits time—and is subsumed under billing reductions already made. Grunfeld Reply Decl. ¶¶ 8-10.

**D.     Plaintiffs' Claimed Hours Are Neither Excessive Nor Unnecessary**

Defendants complain about fees related to Plaintiffs' attempt to depose Sheriff Martinez and for work on the "Seventh Claim for Overincarceration of Disabled People." Opp. at 18, 20. Plaintiffs inadvertently claimed 0.5 hours for work on Sheriff Martinez' deposition and 1.1 hours on Plaintiffs' Seventh Claim, totaling less than six one-hundredths of one percent (0.059%) of claimed time, much less than the billing reduction already taken. Swearingen Reply Decl. ¶¶ 6-7. Defendants criticize Plaintiffs' counsel for attending a hearing before Judge Leshner (Opp. at 14-15), but the instant fee motion claimed no time for that hearing. *Id.* ¶ 5. Mr. O'Connor proposes a 20% reduction for "Stage 1" work that "relates to matters other than ADA issues[,]" O'Connor Decl. ¶ 70; however, he fails to identify a single non-ADA entry and Plaintiffs are unaware of any. Swearingen Reply Decl. ¶ 8. Similarly, Defendants fail to identify any specific billing entries that they contend are "vague." Opp. at 18-19.

**III.   Plaintiffs' Fees-for-Fees Work Is Compensable and Appropriate**

Plaintiffs adequately documented the time incurred on this fee application. Mot. at 22-24. Defendants' Opposition does not challenge Plaintiffs' claimed fees-for-fees time. Mr. O'Connor criticizes the number of timekeepers who worked on

the fee application and describes 41.6 hours for communications among counsel and with Plaintiffs' fees expert as "excessive." O'Connor Decl. ¶ 84. Among other errors, he does not take into account Plaintiffs' 24.9% billing judgment reductions to the fees-for-fees lodestar. *See* Mot. at 23-24. Plaintiffs' counsel efficiently used attorneys in preparing the fees application, and communication was necessary given the need to coordinate the presentation of three firms' time entries and seven supporting declarations. Swearingen Reply Decl. ¶ 12; Pearl Reply Decl. ¶¶ 88-93; *see also Nadarajah v. Holder*, 569 F.3d 906, 924-25 (9th Cir. 2009).

## IV. Plaintiffs' Claimed Costs are Compensable and Appropriate

Defendants do not contest Plaintiffs' ADA expert costs. Opp. at 13-14. The only cost entries identified by Defendants as excessive are 4:00 a.m. Town Car rides (Opp. at 21), which were necessary to ensure Plaintiffs' counsel's on-time airport departure to arrive at settlement conferences in San Diego by 9:00 a.m. Grunfeld Reply Decl. ¶¶ 2-5. Defendants offer no support for their proposed 25 to 50% cut to Plaintiffs' other non-expert costs (Opp. at 22), and the Court should reject it. Plaintiffs inadvertently included $4,752.50 in costs that should not be included in the cost award. Grunfeld Reply Decl. ¶¶ 6-7.

## V. Plaintiffs Will Supplement Their Merits and Fees Claim at a Later Time

Plaintiffs intend to file a supplemental application for merits and fees work since January 20, 2025 after the Court issues its orders on the joint motion for final approval of the ADA Settlement Agreement and this motion. Swearingen Reply Decl. ¶¶ 26-29. Should the Court request, Plaintiffs will do so sooner. *Id.*

## CONCLUSION

The Court should reject Defendants' objections and award Plaintiffs $2,111,562.63 for merits work, $158,002.58 for fees work, and $471,716.85 in costs (the original cost award request minus $4,752.50, as discussed in Section IV, *supra*) through January 20, 2025.

///

DATED: March 20, 2025

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Gay Crosthwait Grunfeld*
Gay Crosthwait Grunfeld

Attorneys for Plaintiffs and the Certified Class and Subclasses