GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
mfreedman@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br>  v.<br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br>    Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**REPLY DECLARATION OF CLAUDIA CENTER IN SUPPORT OF PLAINTIFFS' MOTION FOR INTERIM ATTORNEYS' FEES AND COSTS**<br><br>Judge: Hon. Anthony J. Battaglia<br><br>Date: May 8, 2025<br>Time: 2:00 p.m.<br>Crtrm.: 4A |

[4663286.2]

Case No. 3:20-cv-00406-AJB-DDL

REPLY DECLARATION OF CLAUDIA CENTER IN SUPPORT OF
PLAINTIFFS' MOTION FOR INTERIM ATTORNEYS' FEES AND COSTS

I, Claudia Center, declare:

1. I am an attorney duly admitted to practice before this Court. I am the Legal Director at Disability Rights Education and Defense Fund, Inc ("DREDF"). I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently so testify. I make this Reply Declaration in support of Plaintiffs' Motion for Interim Fees and Costs.

2. As I stated in my February 3, 2025, declaration filed with Plaintiffs' Interim Motion for Attorneys' Fees and Costs, I am generally familiar with this litigation. Center Decl., Dkt. 807-7 ¶ 2. I also have experience representing incarcerated people with disabilities in actions challenging conditions of confinement under Title II of the ADA and Section 504 of the Rehabilitation Act. *Id.* ¶¶ 5, 7.

3. Litigating Title II and Section 504 claims in correctional settings requires an extensive commitment of time and expertise, especially in class action cases involving thousands of incarcerated people with different types of disabilities (e.g., hearing, mobility, cognitive, sight). Litigating these types of cases typically involves seeking remedies to both physical barriers as well as ensuring access to jail/prison programs and services. Achieving programmatic compliance requires an assessment of physical and programmatic barriers within programs and activities and implementation of a plan to eliminate these barriers. Typically, to ensure that incarcerated disabled people have equal access to the programs available to nondisabled incarcerated people, policies must be rewritten, training must be conducted, and practices must be monitored. New facilities must be built in compliance with access standards, and existing facilities must be physically remediated – or the programs that occur in these facilities must be moved to accessible spaces whenever necessary to include people with disabilities. Reaching effective remedies requires working with correctional authorities to implement appropriate identification and tracking of people with disabilities during the intake

process and throughout their incarceration to ensure that their access needs are met at each stage of their incarceration including by providing reasonable accommodations where necessary. It requires providing security staff, health care staff, administrative staff, facilities staff, and contractors with the direction, training, and tools they need to ensure compliance with disability nondiscrimination standards.

4.  It is often most efficient and strategically advantageous to file disability law claims alongside other claims challenging constitutionally and legally deficient conditions of confinement.  Including disability-specific claims alongside other claims can strengthen the overall litigation. Claims challenging conditions of confinement often reach circumstances that disproportionately harm incarcerated people with disabilities (such as isolation and segregation) even if not directly disability related on their face. It is often most efficient and effective to challenge the full range of legally deficient conditions of confinement in a single action rather than piecemeal in separate cases.  Further, comprehensive resolutions addressing disability claims alongside other claims benefit the greatest number of incarcerated people. A substantial portion of incarcerated people have disabilities or will acquire disabilities over the course of their incarceration.

5.  I am aware of cases cited by the defendants regarding disability access matters in the context of Title III of the ADA, which applies to public accommodations or private businesses open to the public. The cases I reviewed were about single plaintiffs who challenged discrete barriers at particular locations. *See*, *e.g.*, *Schutza v. Costco Wholesale Corp.*, No. 19-CV-00990 DMS (WVG), 2022 U.S. Dist. LEXIS 57745 (S.D. Cal. Mar. 29, 2022) (fees decision in case where individual plaintiff challenged barrier at membership service counter at particular Costco location); *Duarte v. Flores*, No. LA CV18-00484-JAK (PJWx), 2024 U.S. Dist. LEXIS 128234 (C.D. Cal. July 11, 2024) (fees decision in case where individual plaintiff challenged lack of access signage indicating dedicated accessible

1  parking in a parking lot at single location, C&A Auto Repair); *Langer v. Four Stars Enter. Inc.*, No. 19-cv-01058-AJB-LL, 2022 U.S. Dist. LEXIS 248739 (S.D. Cal. Aug. 22, 2022) (default judgment and award of fees in case where individual plaintiff challenged lack of designated parking spaces in particular "Pay Parking Lot"). In my opinion and experience, this area of practice is not comparable to litigating systemic challenges under Title II of the ADA and Section 504 of the Rehabilitation Act on a class-wide basis against large, complex, multi-facility systems of detention or incarceration which nearly invariably include court-supervised monitoring. Lawyers who successfully litigate multi-year complex class action cases challenging disability discrimination and unlawful conditions within systems of incarceration have specific and advanced training, experience, skills, professional development, managerial ability, commitment, and expertise. With their law firms, these lawyers commit enormous amounts of time and resources to cases which are both massive to manage and critically important – often life and death – to class members. In my view, the cited opinions are not relevant.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, and that this declaration is executed at Berkeley, California this 19th day of March 2025.

_____
Claudia Center