GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
mfreedman@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPÚLVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No. 3:20-cv-00406-AJB-DDL <br><br> **REPLY DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR INTERIM ATTORNEYS' FEES AND COSTS** <br><br> Judge: Hon. Anthony J. Battaglia <br><br> Date: May 8, 2025 <br> Time: 2:00 p.m. <br> Crtrm.: 4A |

[4668863.6]

1    I, Gay Crosthwait Grunfeld, declare:

2    1.    I am an attorney duly admitted to practice before this Court.  I am a

3 partner in the law firm of Rosen Bien Galvan & Grunfeld LLP, counsel of record for

4 Plaintiffs and the Certified Class and Subclasses.  I have personal knowledge of the

5 facts set forth herein, and if called as a witness, I could competently so testify.  I

6 make this reply declaration in support of Plaintiffs' Motion for Interim Attorneys'

7 Fees and Costs ("Motion").

8    **Class Counsels' Costs Are Reasonable**

9    2.    Upon receiving Defendants' opposition to our Motion, I understood

10 them to be objecting to my use of Pacific Town Car for travel from my home in San

11 Francisco to San Francisco Airport for 6 a.m. flights to San Diego.  *See* Exhibit C to

12 the Declaration of Van Swearingen, filed February 3, 2025, Dkt. 807-3

13 ("Swearingen Declaration") (listing claimed costs); *see also* Defendants' Opposition

14 to Plaintiffs' Motion for Interim Attorneys' Fees and Costs ("Opp.") at 5.  The chart

15 below shows the Pacific Town Car charges included as costs in Plaintiffs' Motion:

| Date | Bill Amount |
|---|---|
| 5/24/2023 | $ 113.45 |
| 7/3/2024 | $ 151.55 |
| 7/11/2024 | $ 151.55 |
| 10/10/2024 | $ 151.55 |
| 10/18/2024 | $ 151.55 |
| **TOTAL** | **$ 719.65** |

22    3.    I mostly used and only seek reimbursement for Pacific Town Car when

23 I needed to be picked up at my home at 4:15 a.m. to make the 6 a.m. flight from San

24 Francisco to San Diego.  The 6 a.m. flight was the only way to ensure my arrival by

25 9:00 a.m. for the settlement conferences.

26    4.    Defendants' concern about the cost of the town cars is misplaced.  They

27 are less expensive than spending the night in San Diego.  I asked my Paralegal

28 Kedra Chan to review the charges for hotels expended in this case since inception.

Using Excel, Ms. Chan concluded that the average cost we paid for a hotel room in San Diego over the time period ending December 2024 was $257.72. This is true even though we routinely asked for discounts on hotel rooms and tried to find ones that had the lowest price but were still relatively close to Central Jail and court.

5.    As I age—even with corrective lenses—my eyesight has deteriorated such that I cannot drive on the highway in the dark. The reason I chose to use Pacific Town Car, which is admittedly more expensive than an Uber, Lyft or taxi, is because I live in an area of San Francisco where it is not guaranteed that a taxi, Uber, or Lyft will arrive at around 4 a.m. Pacific Town Car guarantees that they will do so. This past year, my law partner, Van Swearingen, had a Lyft cancel his ride to the airport shortly before the scheduled pickup time.

6.    While auditing the charges for Pacific Town Car and the cost of the hotel rooms, Ms. Chan determined that nine of the hotel, airplane flights, and a car listed in Exhibit C to the Swearingen Declaration should not have been included as a cost to the County. That is because I used our firm's American Express card points to pay for those costs. This was an effort to reduce the expense of this case to my firm and potentially the County. In addition, we discovered four Town Car charges totaling $491.46 that were inadvertently charged to this matter. Having carefully reviewed our accounting ledger and the firm's American Express bills during the time period, the four Town Car charges and the following $4,261.04 in charges have been removed from the bill:

| Date | Description | Credit |
|---|---|---|
| 3/8/2023 | AMEX Flight to San Diego | $   482.81 |
| 3/8/2023 | AMEX Hotel - The Sophia Hotel | $   258.64 |
| 3/9/2023 | AMEX Travel Flight to San Diego Alaska | $   617.33 |
| 3/8/2023 | AMEX Hotel - San Diego Marriott | $   988.14 |
| 3/10/2023 | AMEX Travel Car | $   412.50 |
| 4/11/2023 | AMEX Travel Flight from San Diego to SFO | $   158.90 |
| 4/11/2023 | AMEX Travel - Hotel Republic | $   353.97 |
| 3/16/2023 | Hotel Republic | $   988.75 |
| | **Total Credits** | **$4,261.04** |

REPLY DECLARATION OF GAY CROSTHWAIT GRUNFELD IN SUPPORT OF
PLAINTIFFS' MOTION FOR INTERIM ATTORNEYS' FEES AND COSTS

7.      As a result of this review, Plaintiffs are asking for reimbursement of $471,716.85 in merits costs through January 20, 2025, not $476,469.35 as previously requested.

### Plaintiffs' Counsel's Staffing at Expedited Discovery 30(b)(6) Depositions Was Reasonable

8.      Defendants criticized Plaintiffs' counsel's staffing at three of the five expedited Rule 30(b)(6) depositions that Plaintiffs conducted.  Opp. at 22.  Plaintiffs staffed the depositions appropriately.  Plaintiffs' counsel believed they needed to use these depositions before the court reporters would produce the transcripts, in order to pursue the motion for preliminary injunction as rapidly as possible in light of the irreparable harm being suffered by our clients.  Having more than one attorney present at the first three 30(b)(6) depositions allowed us to review documents to use as exhibits by the deposition taker and to take detailed notes of the testimony.

9.      Specifically, Plaintiffs' counsel claimed time for three timekeepers—myself, Oliver Kiefer, and Eric Monek Anderson—for these depositions:

| Kiefer, Oliver Moody | 3/14/2023 | Take depositions of the persons most knowledgeable regarding ADA accessibility of new phone system | 9.1 |
| Kiefer, Oliver Moody | 3/15/2023 | Take deposition of Sheriff's Department's person most knowledgeable with respect to ADA mobility and hearing access at Central Jail | 7.4 |
| GCG | 3/14/2023 | Travel to and from PMK depositions | 0.6 |
| GCG | 3/14/2023 | Prepare for and participate in PMK depositions w/ OK and EMA | 7.5 |
| GCG | 3/15/2023 | Travel to, prepare for and participate in portion of PMK deposition on ADA topics. | 6 |
| EMA | 3/14/2023 | ADA PMK depositions of Jensen and Williamson, and conversations with co-counsel throughout | 7.5 |
| EMA | 3/15/2023 | Bibel ADA PMK deposition and discussions with co-counsel | 7.4 |
| | | **Total of GCG and EMA hours for these depositions** | **29** |

10.    Assuming the Court agrees with Defendants that there were too many attorneys at these three depositions, the above chart shows in the highlighted entries that the time Mr. Anderson and I spent on the depositions amounted to 29 hours (Mr. Anderson and I were already in San Diego for the ADA inspections of Jail facilities).  This 29 hours of claimed time amounts to 1.08% of the total claimed merits time requested in Plaintiffs' fees motion (based on 2,687.1 claimed hours).  As Mr. Swearingen stated in his initial declaration, Plaintiffs applied a 5% across-the-board reduction to account for any time that might possibly be considered duplicative, excessive, and/or incorrectly included.  *See* Swearingen Declaration, Dkt. 807-3 ¶ 11.

**Plaintiffs' Counsel Has Cooperated with
Defendants' Counsel in Pursuing ADA Reforms**

11.    Defendants' counsel asserts that:  "Each time a particularly unique issue arose such as portable showers as [sic] Plaintiffs' request following the March 13th, 2023 inspection of San Diego Central Jail, I have sought out help from Plaintiffs' counsel to point me to other facility contacts who may be able to give guidance of how they handled an issue, vendor information, etc.  Without fail, I was either ignored or stonewalled by Plaintiffs' counsel who I felt did not view it as their responsibility to actual [sic] help make the changes happen swiftly for their clients, but rather to simply bill and build their case against Defendants."  Declaration Of Elizabeth M. Pappy in Support of Defendants' Opposition to Plaintiffs' Motion for Interim Attorneys' Fees and Costs ("Pappy Decl."), Dkt. 831-1 ¶ 5.  Ms. Pappy provides no evidence for this claim.  Attached hereto as **Exhibit A** are true and correct copies of emails exchanged between Ms. Pappy and me in which I attempted to assist the County in locating portable showers for Central Jail.

12.    Defense counsel further states:  "Most recently, the parties were working on the final issues for the 2024 deadline physical barrier work, and there was discussion about the shower seat installed by Defendants.  I specifically asked

1   Mr. Anderson if he knew of any facilities that were using different fold down

2   shower chairs so my client could contact them and he refused to provide me any

3   information."  Pappy Decl. ¶ 8.  Attached hereto as **Exhibit B** is a true and correct

4   copy of a February 14, 2025 letter in which Mr. Anderson states:  "Following up on

5   the shower seats issue we discussed during the inspection, we are aware that CDCR

6   uses non-recessed fold-down shower seats.  We do not currently have images of the

7   CDCR shower seats that we can share.  We have reached out to CDCR's counsel to

8   ask about putting you in touch with them, so that they can provide more information

9   about the shower seats and see if those seats will be a suitable solution for the

10  County moving forward."

11         13.    The Introduction to Defendants' Opposition states that "Plaintiffs'

12  settlement attempts always included a provision allowing plaintiffs' counsel to

13  monitor—and collect fees and costs related thereto—*after* the settlement was

14  entered; their insistence significantly delayed relief to their clients and almost

15  completely derailed any chance of settlement."  Opp. at 1.  This sentence is

16  impossible to refute due to its use of privileged settlement information and violation

17  of that privilege.  *See* Federal Rule of Evidence 403.  I will not share such

18  information; however, it is my practice not to discuss attorneys' fees and costs until

19  injunctive relief has been resolved.

20         14.    The Opposition states that the "Sheriff's Office …implemented a fully

21  staffed ADA Unit in mid-2023.  That Unit has been instrumental in effecting real

22  and meaningful changes at the jails without any input or assistance from Plaintiffs'

23  counsel."  Opp. at 1.  Attached hereto as **Exhibit C** are true and correct copies of

24  excerpts of the deposition of Livian Cole, the County's ADA PMK and a senior

25  member of the ADA Unit, in which she acknowledges that the ADA Unit was not

26  founded in 2016 when it was internally recommended but instead in response to this

27  litigation.  Plaintiffs' counsel has repeatedly shared information about ongoing ADA

28  violations at the jails with Defendants' counsel.  *See, e.g.*, Declaration of Gay

Crosthwait Grunfeld in Support of Plaintiffs' Motion for Interim Fees and Costs, Dkt. 807-2 ¶ 93.

15.    The Opposition states:  "Not once has Plaintiffs' counsel acknowledged that the Sheriff's Office is committed to change, and proactively made meaningful changes well before the settlement was entered-into." Opp. at 3.  Here again, responding to this statement would require me to violate the confidentiality of settlement discussions, which I will not do.  But the ADA Settlement Agreement speaks for itself and includes discussion of positive action by the San Diego County Sheriff's Office. *See, e.g.*, Dkt. 776 ¶ 9 ("The County has taken significant and consequential steps to better serve incarcerated persons with disabilities, including development of an ADA Unit, issuance of new ADA policies, and issuance of training on those new policies, procedures, and implementation thereof, with further training continuing to occur."); *id.* ¶ 11("The Sheriff's Office and County are committed to improving the physical accessibility of their jail facilities and to ensuring meaningful access to jail facility programs, services, and activities for incarcerated people with disabilities.").

16.    The Opposition states that "plaintiffs have irresponsibly demonized the defendants in the media[]…The merits of this case have long taken a back seat to plaintiffs' counsel desire for the limelight." Opp. at 3.  Defendants offer no examples of "demoniz[ing]" other than the false and unsupported hearsay that "Plaintiffs improperly reported to the press that Sheriff Martinez herself refused to comply with a deposition notice…." Opp at 3 n. 3.  Neither I nor to my knowledge anyone else on our team said that to the Union Tribune newspaper or any other reporter.  The local press has a longstanding interest in the conditions in the San Diego County jail system, including the Union Tribune's award winning series Dying Behind Bars. *See*, *e.g.*, Jeff McDonald, Kelly Davis, and Lauryn Schroeder, *Rate of jail inmate deaths in San Diego County far exceeds other large California counties*, San Diego Union-Tribune, September 20, 2019.

17.     Early in the case, defense counsel Elizabeth Pappy informed me that she has experience in ADA litigation.  Ms. Pappy's office is in San Jose and she was also required to fly to San Diego to attend the in-person settlement conferences.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at San Francisco, California this 20th day of March, 2025.


*/s/ Gay Crosthwait Grunfeld*
Gay Crosthwait Grunfeld

# EXHIBIT A

| | |
|---|---|
| **From:** | Pappy, Elizabeth M. |
| **To:** | Gay C. Grunfeld; Coleman, Susan E. |
| **Cc:** | Young, Christopher; Aaron Fischer; Van Swearingen |
| **Subject:** | RE: CONFIDENTIAL MEDIATION PRIVILEGE -- Draft Stipulation and Proposed Order [IMAN-DMS.FID55015] |
| **Date:** | Monday, May 29, 2023 4:31:54 PM |

**[EXTERNAL MESSAGE NOTICE]**

The contact at CDCR and phone number would be appreciated as COVID was a unique situation in and of itself given limited movement so getting the details of how and where the showers were used is particularly important.

Thank you.

**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA 95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com
Burke, Williams & Sorensen, LLP


The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

**From:** Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Sent:** Monday, May 29, 2023 3:40 PM
**To:** Pappy, Elizabeth M. <EPappy@bwslaw.com>; Coleman, Susan E. <SColeman@bwslaw.com>
**Cc:** Young, Christopher <Christopher.Young@us.dlapiper.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Van Swearingen <VSwearingen@rbgg.com>
**Subject:** RE: CONFIDENTIAL MEDIATION PRIVILEGE -- Draft Stipulation and Proposed Order [IMAN-DMS.FID55015]

**[EXTERNAL]**

Dear Beth and Susan,

I would be happy to ask Ms. Sanossian about this. I will also see if I can find the

**Ex. A - 2**

contractor CDCR hired for portable, ADA compliant showers for use during Covid quarantines.

Warm regards, Gay

Gay Crosthwait Grunfeld
Managing Partner
She/her
**ROSEN BIEN GALVAN & GRUNFELD LLP**
**101 Mission Street, Sixth Floor**
**San Francisco, CA 94105**
(415) 433-6830 telephone
(415) 433-7104 facsimile

---

**From:** Pappy, Elizabeth M. <EPappy@bwslaw.com>
**Sent:** Monday, May 29, 2023 10:41 AM
**To:** Gay C. Grunfeld <GGrunfeld@rbgg.com>; Coleman, Susan E. <SColeman@bwslaw.com>
**Cc:** Young, Christopher <Christopher.Young@us.dlapiper.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Van Swearingen <VSwearingen@rbgg.com>
**Subject:** RE: CONFIDENTIAL MEDIATION PRIVILEGE -- Draft Stipulation and Proposed Order [IMAN-DMS.FID55015]

> [EXTERNAL MESSAGE NOTICE]

Can you please send us the facility names and contact information, for the Correctional Facilities that use the portable showers, and the specific models (literature or web links) for the portable showers that have been used in other Correctional Facilities as Ms. Sanossian indicated.

This would be very helpful and cut down on implementation time if the County can talk to other facilities to see how they manage these showers.

Thank you.

Elizabeth M. Pappy | Partner
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA  95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com
Burke, Williams & Sorensen, LLP



Ex. A - 3

| | |
|---|---|
| **From:** | Gay C. Grunfeld |
| **To:** | Pappy, Elizabeth M. |
| **Cc:** | Coleman, Susan E.; Aaron Fischer; Van Swearingen; Inman, Steven; Young, Christopher |
| **Subject:** | RE: Dunsmore v. County of San Diego: Portable Showers [IMAN-DMS.FID55015] |
| **Date:** | Thursday, June 8, 2023 4:34:00 PM |

Dear Beth et al.,

We suggest that the County consult their on-call list of contractors and ask for a proposal to build on site a temporary shower structure that resembles the models I previously sent and that can be connected to existing plumbing lines. In addition, the County should have a Mass Care Plan in place that would have vendors lined up to provide temporary showers for emergencies and drills.

Best, Gay

Gay Crosthwait Grunfeld
Managing Partner
She/her
**ROSEN BIEN GALVAN & GRUNFELD LLP**
**101 Mission Street, Sixth Floor**
**San Francisco, CA 94105**
(415) 433-6830 telephone
(415) 433-7104 facsimile

---

**From:** Pappy, Elizabeth M. <EPappy@bwslaw.com>
**Sent:** Wednesday, June 7, 2023 12:56 PM
**To:** Gay C. Grunfeld <GGrunfeld@rbgg.com>
**Cc:** Coleman, Susan E. <SColeman@bwslaw.com>; Aaron Fischer <ajf@aaronfischerlaw.com>; Van Swearingen <VSwearingen@rbgg.com>; Inman, Steven <Steven.Inman@sdcounty.ca.gov>
**Subject:** Dunsmore v. County of San Diego: Portable Showers
**Importance:** High

[EXTERNAL MESSAGE NOTICE]

I found the information about the showers sent today.

We seem to be crossing wires about these showers. The resources you sent are trailers that are pulled by trucks. The trailers have showers in them. I spoke with Ron Rezak and he told me that he never provided any mobile showers that can be put into housing units and doubts there is such a thing because of security concerns. His trailers were used in outdoor quarantine areas by CDCR, and as he stated, "literally taken apart" to remove any and every item that was a safety hazard.

**Ex. A - 4**

The San Mateo County emergency services website references the same mobile trailers as does the Red Cross.

Please ask Ms. Sanossian for better information because this cannot be what she was suggesting in front of Judge Leschner knowing that a trailer will not fit in Central Jail.

Thank you.

**Elizabeth M. Pappy | Partner**
Pronouns: she, her, hers
60 South Market Street, Suite 1000 | San Jose, CA  95113
d - 408.606.6305 | t - 408.606.6300 | f - 408.606.6333
epappy@bwslaw.com | vCard | bwslaw.com
Burke, Williams & Sorensen, LLP



The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

**Ex. A - 5**

# EXHIBIT B



**ROSEN BIEN
GALVAN & GRUNFELD LLP**

February 14, 2025

<u>VIA ELECTRONIC MAIL ONLY</u>

Elizabeth M. Pappy
Burke, Williams & Sorensen, LLP
60 South Market Street, Suite 1000
San Jose, CA 95113-2336
epappy@bws.com

Re:   *Dunsmore et al. v. San Diego County Sheriff's Department et al.*, S.D. Cal.
No. 3:20-cv-00406-AJB-DDL; Compliance with the August 2024
Amended ADA Plan
<u>Our File No. 1730-01</u>

Dear Beth:

As you know, Plaintiffs and their accessibility expert inspected San Diego Central
Jail on January 28, 2025, pursuant to the 2023 ADA Order, Dkt. 355.  Thank you to you
and your client for facilitating the inspection.

Based on observations during the inspection and our review of materials, Plaintiffs
provided our comments to Eric McSwain's January 23, 2025 draft report, in the
"Plaintiffs Comments" column of Mr. McSwain's report.  Because of the size of the
document we are uploading it via ShareFile today.  We look forward to receiving
Defendants' written comments on Mr. McSwain's report.

Following up on the shower seats issue we discussed during the inspection, we are
aware that CDCR uses non-recessed fold-down shower seats.  We do not currently have
images of the CDCR shower seats that we can share.  We have reached out to CDCR's
counsel to ask about putting you in touch with them, so that they can provide more
information about the shower seats and see if those seats will be a suitable solution for
the County moving forward.

**Ex. B - 7**

In this letter, Plaintiffs discuss other mobility disability/accessibility aspects of the Amended ADA Plan. We look forward to your response and are available to speak about these issues.

## I.    Housing of People With Mobility Disabilities in Accessible Cells

The 2023 ADA Order requires the County to "ensure that incarcerated people with mobility disabilities are housed in accessible facilities, based on their accessibility needs." Dkt. 355 at 5; *accord* Amended ADA Plan at 7.

The County is not consistently housing people with mobility disabilities in the jail's new accessible cells, based on review of the January 2025 roster of people with mobility disabilities. It is essential that the County utilize those cells to accommodate people with disabilities to the greatest extent possible during this implementation phase.

For example, Unit 5D contains a cell (cell 1) that the Sheriff's Office modified to be accessible for people who do not need a wheelchair in their cell. *See* Amended ADA Plan at 15 (referring to and listing cells "to accommodate non-wheelchair persons with mobility disabilities"). Our inspection confirmed those cells have been modified in compliance with the Plan, which we appreciate. The roster for January 28, the day of our inspection, shows two people with mobility disabilities in Unit 5D, but **neither** was housed in the modified cell. The roster of people with mobility disabilities does not include anyone in 5D1, which means that it was either unoccupied or occupied by a person without a mobility disability. This is inconsistent with the ADA Plan and also defeats the purpose of the ADA construction that the County has completed.

Similarly, the roster of people with mobility disabilities shows no person in 4B1, that unit's partially accessible cell. But there were people in 4B with mobility disabilities, including who use a cane and would benefit from the grab bars in 4B1; they are instead housed in non-accessible cells 4B5, 6, 7, and 8. The same is true in 5A, where no person with a mobility is housed in the accessible 5A10 cell, even as people with mobility disabilities are housed in the unit. *See also* 5B (no one with mobility disabilities in modified cell), 5C (no one with mobility disabilities on bottom bunk of modified cell); 7A (no one with mobility disabilities in modified cell, despite many other people with disabilities in that unit); 7C (no one with mobility disabilities in modified cell).

**It is essential that the County utilize its existing accessible cells to accommodate people with disabilities. We request a report on this issue, including the County's plans to ensure that people with mobility disabilities are housed appropriately, and that accessible cells are being fully utilized for this purpose.**

## II.    Telephone Cord Lengths are Not Consistent with the County's Representation During Meet and Confer

During the summer 2024 meet and confer regarding the construction drawings for ADA modifications at Central Jail under the ADA Plan, the County stated that the cords of telephones would be 16 inches long:  "There was an agreement from Command that the phone cords would be 16" [inches] after consultation with expert and what Orange County does."  County Response to Plaintiffs' List from Review of Central Jail Plans, 06-14-2024, at 7.

However, the County does not appear to have implemented that change.  On the January 28, 2025 inspection, Plaintiffs measured several telephone (as opposed to videophone) cords, all of which were shorter than 16 inches.  *See, e.g.*, Rows 60, 93, 118, 143, 169, 214, 324 in Plaintiffs' Response to Eric McSwain First Quarter 2025 Report.

**Please ensure that all telephone cords are 16" long, as agreed, and let us know the plan and timeline for completion.**

## III.    Shower Chair in 7C

Under the ADA Plan, the County must provide portable shower chairs as "an interim solution if an ADA compliant shower is not available."  Plan at 11.  Module 7C is a unit that does not contain an ADA compliant shower.  We observed the portable shower chair for that unit being used as a seat at a telephone.  That is not a problem on its own, but the Sheriff's Office should ensure that a shower chair is always available in the shower when a person with a mobility disability needs it.

## IV.    Rosters Demonstrate a Lack of Sufficient Accessible Housing

Finally, the January 2025 rosters confirm the need for the County to provide additional accessible housing in their system, as the parties agreed in the 2024 ADA Settlement.  Plaintiffs recognize that under the December 2024 ADA Settlement, the County will bring online 10 additional fully accessible beds at Rock Mountain Detention Facility, and will in 18 months assess whether additional accessible housing is necessary.

The rosters confirm that additional accessible beds are likely needed.  Our review suggests a current deficit of approximately 22 fully accessible beds at Central Jail, which means that the planned 10 beds at Rock Mountain and additional beds in specialized Central Jail units may not be sufficient.

Central Jail unit 4E contains only one fully accessible cell, cell 5.  That cell housed a man in a wheelchair, and there were two more people in wheelchairs housed in that unit as of January 28, 2025, in cells 1 and 2, which are not accessible.  Likewise, unit

**Ex. B - 9**

7E contains only one fully accessible cell.  On January 28, that cell housed a man in a wheelchair, with a second person with a wheelchair also housed in that unit, in an inaccessible cell.

The roster shows that in unit 7A, there were five people who use wheelchairs full-time and three other people with mobility disabilities; in 7B, there were six people who use wheelchairs full-time and two other people with mobility disabilities; and in 7D, there were eight people who use wheelchairs full-time.  None of those units has an accessible cell, which means all of these people are being housed without provision of necessary accessibility.

This data underscores the work that lies ahead to implement the requirements of the Amended ADA Plan and the 2024 ADA Settlement, such that all people are housed accessibly.  As ADA settlement implementation proceeds, we look forward to seeing this gap in accessible housing get remedied.  We would welcome any update on the progress and steps being taken to ensure that people with mobility disabilities are housed accessibly.

Thank you for your attention and cooperation through this implementation process.  We look forward to continuing the work ahead.

Sincerely,

ROSEN BIEN
GALVAN & GRUNFELD LLP

*/s/ Eric Monek Anderson*

By:  Eric Monek Anderson

EMA:cn
cc:     Eric McSwain
        Co-Counsel

**Ex. B - 10**

# EXHIBIT C

1              UNTIED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF CALIFORNIA

3              CASE NO. 3:20-CV-00406-AJB-DDL

4

5    DARRYL DUNSMORE, ANDREE ANDRADE,      )
     ERNEST ARCHULETA, JAMES CLARK,        )
6    ANTHONY EDWARDS, LISA LANDERS,        )
     REANNA LEVY, JOSUE LOPEZ,             )
7    CHRISTOPHER NELSON, CHRISTOPHER       )
     NORWOOD, JESSE OLIVARES, GUSTAVO      )
8    SEPULVEDA, MICHAEL TAYLOR, and        )
     LAURA ZOERNER, on behalf of           )
9    themselves and all others similarly   )
     situated,                             )
10                                         )
             Plaintiffs,                   )
11                                         )
                    vs.                    )
12                                         )
     SAN DIEGO COUNTY SHERIFF'S            )
13   DEPARTMENT, COUNTY OF SAN DIEGO,      )
     SAN DIEGO COUNTY PROBATION            )
14   DEPARTMENT, and DOES 1 to 20,         )
     inclusive,                            )
15                                         )
             Defendants.                   )
16                                         )
     _____)

17

18

19            DEPOSITION OF LIVIAN COLE

20      PERSON MOST KNOWLEDGEABLE FOR 30(B)(6)

21            San Diego, California
                   May 1, 2024
22
            Pages 1 through 132, inclusive
23

24      Reported by Adriana S. Angulo, CSR
             Certificate No. 13824
25

**Ex. C - 12**

```
 1              SAN DIEGO, CALIFORNIA; WEDNESDAY, MAY 1, 2024

 2                         9:03 A.M.

 3

 4                        LIVIAN COLE,

 5                        having been

 6          First duly sworn, testified as follows:

 7                        --o0o--

 8                  E X A M I N A T I O N

 9   BY MS. GRUNFELD:

10       Q.  Good morning.  Could you please state and spell

11   your name for the record.

12       A.  It's Livian Cole; L-i, v as in "Victor," i-a-n.

13   C-o-l-e.

14       Q.  And for this deposition -- we met before.  I'm

15   Gay Grunfeld.  I represent the plaintiff class in this

16   class action.

17          Would you like to be addressed as Ms. or

18   Lieutenant?

19       A.  Ms.

20       Q.  Okay.  Thank you.

21          Ms. Cole, have you ever provided testimony in

22   court or in a deposition?

23       A.  In court.

24       Q.  Court.

25          And when was that?
```

LIVIAN COLE - PMK - 30(B)(6)
MAY 01, 2024

JOB NO. 950097

```
1        Q.  And what were you before that?

2        A.  I was the administrative lieutenant at the

3   San Diego Central Jail.

4        Q.  How long have you been with the sheriff's

5   department?

6        A.  It will be 25 years in October.

7        Q.  Has your -- have your roles at the sheriff's

8   department principally been detentions or parole -- excuse

9   me, patrol?

10       A.  Detentions.

11       Q.  All in detentions?

12       A.  Yes.

13       Q.  Is that unusual, in your experience?

14       A.  No.

15           MS. COLEMAN:  Objection.  Relevance.

16   BY MS. GRUNFELD:

17       Q.  What are your current job duties?

18       A.  So currently, I am the lieutenant at the

19   San Diego Sheriff's ADA Unit.

20           And I supervise -- I have two deputies and a

21   sergeant.

22       Q.  And what are your duties other than supervising?

23       A.  And our duties are to present, train, pretty much

24   educate our staff on the ADA.

25       Q.  Now, when I use ADA in this deposition, would it
```

1        But I do know at that facility, we had certain

2    cells identified as, like, ADA.  But as far as policy, I'm

3    not sure.

4    BY MS. GRUNFELD:

5        Q.  What facility were you at at that time?

6        A.  I was at the Las Colinas Detention & Reentry

7    Facility.

8        Q.  Now, at the time you were a deputy at Las Colinas

9    in 2016, do you know if that those cells had been

10   inspected by anyone with ADA expertise?

11       A.  No.

12           MS. COLEMAN:  Calls for speculation.  Foundation.

13           THE WITNESS:  I'm not sure.

14   BY MS. GRUNFELD:

15       Q.  Lieutenant MacLyman also states at the time of

16   this memo, there was no ADA coordinator or unit.

17           Is that consistent with your understanding?

18       A.  Yes.

19       Q.  Now, I believe you testified that you -- you

20   clarified your testimony that you have not reviewed the

21   actual complaint in this case; is that correct?

22           MS. COLEMAN:  May call for speculation as to what

23   the complaint is.

24           MS. GRUNFELD:  I'm showing you the first page of

25   the third amended complaint in the plaintiff's case.

1         Have you seen this document before, to your

2   knowledge?

3         MS. COLEMAN:  For the record, the total pages is

4   230, I believe.

5         THE WITNESS:  Not to my knowledge.

6   BY MS. GRUNFELD:

7      Q.  When did you become aware that a class action

8   lawsuit had been filed against the County, that included

9   allegations of ADA noncompliance?

10     A.  I believe it was shortly before I joined the ADA

11  unit.

12     Q.  And how did you become aware of that?

13     A.  Just through conversations with my command at

14  that time.

15     Q.  Who was your command?

16     A.  My captain was Captain Bibel.

17     Q.  Any other conversations besides with Captain

18  Bibel?

19     A.  No.

20     Q.  Did Captain Bibel tell you that he was deposed as

21  part of ADA discovery in this case?

22     A.  I don't believe so.

23     Q.  What do you recall about your conversations with

24  Captain Bibel about the allegations in this case, if any?

25         MS. COLEMAN:  Objection.  Compound.  Overly

Ex. C - 16

1    broad.

2           THE WITNESS:  I believe him pretty much letting

3    us know that there was a lawsuit concerning the ADA, and

4    there were going to be changes implemented as a result of

5    this complaint at the San Diego Central Jail.

6    BY MS. GRUNFELD:

7        Q.  Can you recall anything else about that

8    discussion?

9        A.  No.

10       Q.  And you stated that you thought that was shortly

11   before June of 2023 that you had that discussion?

12       A.  Yes.

13       Q.  Can you estimate for me whether it was weeks

14   before, months before.

15           Can you place it any better in time?

16           MS. COLEMAN:  Objection.  Relevance.  Calls for

17   speculation.

18           MS. GRUNFELD:  Relevance is reserved for trial.

19           THE WITNESS:  I would -- if I had to guess, I

20   would probably say, I don't know, maybe two, three months

21   before.

22           MS. COLEMAN:  Counsel, I am going to put my

23   objections on the record.  And she can still answer the

24   questions unless I direct her not to.  So --

25   ////

1   BY MS. GRUNFELD:

2       Q.  Have you or anyone else in the ADA unit at the

3   sheriff's department taken any steps to investigate the

4   specific allegations of ADA violations that are in

5   plaintiff's complaint?

6           MS. COLEMAN:  Objection.  Compound.  Overly

7   broad.  Lack of foundation as to others.

8           THE WITNESS:  To investigate, I would say yes.

9   BY MS. GRUNFELD:

10      Q.  And what steps did you take to investigate?

11      A.  Just doing walks throughout the facility, making

12  sure, like, measurements of certain things were correct.

13          We have checked with medical staff making sure,

14  you know, medical appliances are available and enough on

15  hand.

16      Q.  But with regard to the specific claims of the

17  named plaintiffs, have you undertaken any effort to find

18  out if what they're saying in the third amended complaint

19  is accurate or not?

20          MS. COLEMAN:  Objection.  Lack of foundation.

21  Calls for speculation given that she's stated she hasn't

22  read the complaint.

23          THE WITNESS:  As far as investigation as what

24  they may have complained, I don't know if we went as far

25  as doing an internal investigation.

1    BY MS. GRUNFELD:

2        Q.   I'd like to return to this memo for just a

3    moment, the memo that's been marked as Exhibit 2.

4            If you could please turn to the fourth page of

5    this document.

6            And you'll see throughout the day there are small

7    numbers at the bottom.   You see those small numbers?

8            We don't necessarily have page numbers, but we

9    have what are called Bates numbers.

10           So if you look down at the one that's got 534.

11   And towards the bottom, I'd say it's the fourth full

12   paragraph, it states, quote:   The work group has

13   determined in order to effectively implement the

14   aforementioned subsection of ADA, we should also have an

15   ADA unit, closed quote.

16           Do you see that statement?

17       A.   Yes.

18       Q.   Now, when was the sheriff's ADA unit formed?

19       A.   June of 2023.

20       Q.   Do you have any understanding of why this

21   recommendation made in 2016 was not implemented until

22   2023?

23           MS. COLEMAN:   Calls for speculation.   Lack of

24   foundation.

25           THE WITNESS:   I have not.

```
 1                    REPORTER'S CERTIFICATE

 2         I, Adriana S. Angulo, Certified Shorthand Reporter in

 3    and for the State of California, do hereby certify:

 4         That the witness in the foregoing deposition was by

 5    me first duly sworn to tell the truth, the whole truth,

 6    and nothing but the truth in the foregoing cause; that the

 7    deposition was then taken before me at the time and place

 8    therein named; that said deposition was reported by me in

 9    shorthand and later transcribed under my direction, and

10    the preceding pages contain a true record of the testimony

11    of the witness; and I do further certify that I am a

12    disinterested person and am in no way interested in the

13    outcome of said action, or connected with or related to

14    any of the parties in said action, or to their respective

15    counsel.

16         The dismantling, unsealing, or unbinding of the

17    original transcript will render the Reporter's

18    Certification null and void.

19         IN WITNESS WHEREOF, I have hereunto set my hand

20    this 11th day of May 2024.

21

22

23    _____
      Adriana S. Angulo
24    Certificate No. 13824

25
```