GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
mfreedman@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**REPLY DECLARATION OF SANFORD JAY ROSEN IN SUPPORT OF PLAINTIFFS' MOTION FOR INTERIM ATTORNEYS' FEES AND COSTS**<br><br>Judge: Hon. Anthony J. Battaglia<br><br>Date: May 8, 2025<br>Time: 2:00 p.m.<br>Crtrm.: 4A |

[4665990.6]

Case No. 3:20-cv-00406-AJB-DDL

REPLY DECLARATION OF SANFORD JAY ROSEN IN SUPPORT OF PLAINTIFFS' MOTION FOR
INTERIM ATTORNEYS' FEES AND COSTS

I, Sanford Jay Rosen, declare:

1. I am an attorney duly admitted to practice before this Court. I am a partner in the law firm of Rosen Bien Galvan & Grunfeld LLP, counsel of record for Plaintiffs and the Certified Class and Subclasses. I have personal knowledge of the facts set forth herein, and if called as a witness, I could competently so testify.

2. I make this Reply Declaration in support of Plaintiffs' Motion for Interim Attorneys' Fees and Costs, responding to errors in Defendants' Opposition (ECF No. 831) and the Declaration of John O'Connor (ECF No. 831-3, hereinafter "O'Connor Decl.") that supports the Opposition.

3. Mr. O'Connor's statement that "there is no showing" that I have "expertise in drafting fee motions" is false. O'Connor Decl. ¶ 56. A copy of my resume was attached as Exhibit B to the Declaration of Gay Grunfeld in Support of Plaintiffs' Motion for Interim Attorneys' Fees and Costs. ECF No. 807-2 ¶ 6 & Ex. B. In her Declaration, Ms. Grunfeld discusses my role in this case and my background, including as to attorneys' fees motion work, and identifies recent attorneys' fees decisions in cases in which I was lead fees counsel. *Id.*, ¶¶ 6, 19, 117-18. In this declaration, I provide additional information about my background and work with respect to attorneys' fees matters.

4. Since the mid-1970's, representing lawyers and law firms has been a major part of my practice. Much of that work involves attorneys' fees applications and related matters. I have been drafting attorney's fees motions, declarations, exhibits, documentation and briefs, and arguing attorney's fees cases ever since. Over the last 50 years, I have been responsible for preparing attorneys' fees motions, and conducting evidentiary proceedings and oral argument in scores of attorneys' fees matters in federal and state trial courts, and I continue to do so.

5. I have represented many firms, including many "Big Law" firms in such cases, often as co-counsel and also often in matters in which my firm and I are not counsel on the merits, but serve only as special fees counsel.

6. I have presented scores of attorneys' fees applications to federal and state courts, and successfully argued appeals in more than 10 attorneys' fees cases. *See*, *e.g.*, *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1993); *Gates v. Rowland*, 39 F.3d 1439 (9th Cir. 1994); *Gates v. Gomez*, 60 F.3d 525 (9th Cir. 1995); *Gates v. Shinn*, Nos. 95-15402-15403 (unpublished Memorandum dated April 8, 1996); *Holland v. Roeser*, 37 F.3d 501 (9th Cir. 1994); *Rebney v. Wells Fargo Bank*, 232 Cal. App. 3d 1344 (1991); *Davis v. California Department of Corrections,* No. A076411 (Cal. Ct. App. 1st Dist. Oct. 31, 1997). I served as special fees counsel in *Finkelstein v. Bergna*, 805 F. Supp. 1235 (N.D. Cal. 1992), and in many other federal and state trial court cases resulting in fees awards that applied our full rates.

7. Mr. O'Connor also states that I should be awarded a rate far below my standard rate because my participation in this case is limited to the fees litigation motion. O'Connor Decl. ¶ 29. To the best of my recollection, I have always received my full rate for my attorney's fees recovery work, including in the many cases where I was retained as special fees counsel after the merits stage of a case.

8. Since 2020, I have been the lead fees counsel on several cases, resulting in substantial fees awards for work that extended over several years. In each case, my firm's rates have been approved and adopted by the courts. All but one of these fee awards included awards for substantial amounts for attorneys' fees work. In *United States ex rel. Thrower v. Academy Mortgage Corp.*, No. 16-CV-02120-EMC, 2024 WL 4194800 (N.D. Cal. Sept. 13, 2024), the district court adopted my firm's 2023 billing rates, including for my work ($1,475) on the fees motion, and that of my partner Van Swearingen ($875). *Id.* at *4; *see also* No. 16-CV-02120-EMC, ECF No. 508-1 ¶ 6 (Rosen Declaration providing rate). The Court also acknowledged that our 2023 billing rates were appropriate. *Id.* at *4. In *Prison Legal News v. Ryan*, No. CV-15-02245-PHX-ROS, 2024 WL 1195548 (D. Ariz. Mar. 20, 2024), the district court awarded my firm's 2023 rates including my rate of $1,475 for work on the fees motion. *Id.* at *2; *see also* No. CV-15-02245-PHX-

ROS, ECF No. 365-1 (Rosen declaration with rates). Earlier, I was lead fees counsel in the Ninth Circuit appellate fees proceedings in this case, in which the Ninth Circuit Commissioner awarded my full 2022 billing rate of $1,350 for work on the fees application. Ninth Circuit Case No. 19-17449, ECF No. 78. In *Andrews v. Equinox Holdings*, 570 F. Supp. 3d 803, 807-08 (N.D. Cal. 2021), the district court approved my firm's 2021 billing rates, including my rate of $1,250 per hour. *Id.* at 807-08. In *Human Rights Defense Center v. County of Napa*, No. 3:20-cv-01296-JCS, 2021 WL 1176640, at *11 (N.D. Cal. Mar. 28, 2021), the court awarded my firm's 2020 rates for work done that year. In all of these cases, except for the *Andrews* case, substantial fees for fees work was claimed and awarded.

9. As lead fees counsel in the recent matters described just above, I drafted many of the briefs, declarations, and exhibits. I also reviewed, edited, and revised all the other documents as appropriate. Two hearings were conducted in the *Thrower* case, at which only I spoke on behalf of our clients.

10. In addition to being fully active lead fees counsel in the matters discussed above, over the last several years I have been increasingly involved in assisting my partners and our associates in attorneys' fees matters as they prepare attorneys' fees applications. Often my role is to advise and guide at a high level. Where appropriate, as is the case here, I review, edit, and comment on drafts of documents. We consistently claim and are awarded fees for my work at my full customary rate.

11. I have served as a mediator and as an early neutral evaluator in resolving cases that have included substantial attorneys' fees components, and I have decided attorneys' fees issues as an arbitrator.

12. As referenced on my resume, I have published numerous articles and lectured frequently in Practicing Law Institute (PLI), California's Continuing Education of the Bar (CEB), Association of Trial Lawyers of America (ATLA), and State Bar of California Labor Section programs, and elsewhere on the subject of

statutory attorneys' fees. In the Spring of 2012, the CEB published its practice guide, "Employment Damages and Remedies," which includes a chapter on "Attorney Fees and Costs" that I coauthored with RBGG senior counsel Michael Freedman. We updated that chapter most recently for publication this year.

13. Frequently, I am consulted by attorneys from outside my firm concerning attorneys' fees matters. For example, Joaquin Avila and I had worked together at the Mexican American Legal Defense and Educational Fund (MALDEF) when I was its legal director and he was a new lawyer. After he left MALDEF having served as its head, and practiced voting rights law privately, my firm and I co-counseled a number of cases with him, and he retained me as his special fees counsel in several others. When the California Voting Rights Act was drafted, at his request, I drafted for him the attorneys' fees provision which is in the statute. *See* Cal. Elec. Code § 14030 ("In any action to enforce Section 14027 and Section 14028, the court shall allow the prevailing plaintiff party, other than the state or political subdivision thereof, a reasonable attorney's fee consistent with the standards established in *Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49, and litigation expenses including, but not limited to, expert witness fees and expenses as part of the costs. Prevailing defendant parties shall not recover any costs, unless the court finds the action to be frivolous, unreasonable, or without foundation.").

14. I am frequently retained as a paid expert in attorneys' fees matters to opine, for example, as to whether claimed rates and claimed time are appropriate. I have had several such assignments since 2020, including this year, paid at my full rate.

15. Federal and state courts have frequently recognized me as an expert on attorneys' fees matters, including at least one California Court of Appeal, several United States District Courts in California, Ohio, and Colorado, and several California Superior Courts. Several times I have testified through depositions as an attorneys' fees expert. I have testified in court three times—once in a bench trial in

the United States District Court in Colorado, once before a Los Angeles Superior Court jury, and once at a bench trial in Alameda County Superior Court—as an expert on attorneys' fees subjects, including reasonable rates, billing practices, and expenditures of time.

16.   I have been retained as an expert on attorneys' fees matters both by proponents and opponents of fees claims.  For example, on the plaintiffs' side, I testified by declarations in support of class counsel's attorneys' fees in a wage and hour case against Apple that had been litigated for more than seven years, including a jury trial. *Felczer, et al. v. Apple Inc.*, No. 37-2011-00102593-CU-OE-CTL (San Diego CA Superior Court).  I also testified by declaration before the EEOC in *Goel v. Robert Wilke Secretary, Dep't of Veterans' Affairs*, EEOC Case No. 560-2017-00302X

17.   On fees opponents' side, I was retained as an expert in a real estate dispute resulting in a Ninth Circuit decision in *Stonebrae, L.P. v. Toll Bros.,* No. 08-0221, 2011 WL 1334444, at *8 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521 F. App'x 592 (9th Cir. 2013).  I was retained as an expert in *Post Properties, LP v. Post Street Renaissance Partners*, No. 12-640048 (San Francisco Superior Court 2012), and testified by way of a declaration opposing a fee claim in that wrongful detainer case. I was retained and testified at deposition as an expert in support of a fee claim as damages in a tort case in California's Santa Clara Superior Court, *Gagnard v. Campi Properties Inc*., No. 10-167727.  I was retained to testify at a jury trial on behalf of defendants in San Francisco Superior Court as an expert on quantum meruit fees for a defendant in a legal malpractice matter arising from a law firm's False Claims Act representation.  *Packard, Packard & Johnson v. Hinshaw and Culbertson*, No. 16-55441 (San Francisco Superior Court).  After my deposition, the case settled before trial.

18.   In 2023, I testified as an expert by declaration in several matters, including in support of attorneys' fees claims for defendants who succeeded in anti-

1  SLAPP actions. *See, e.g., White v. Gabriel et al.*, Case No. 22CV408831 (Superior
2  Court County of Santa Clara, corrected order May 24, 2024). I am presently
3  working as a fees expert in an ERISA class action matter.

4      19. Mr. O'Connor's statement that drafting fee motions is "typically" for
5  "junior partners or senior associates" is surprising. O'Connor Decl. ¶ 29. In my
6  experience, it is relatively common for even senior partners and attorneys to draft
7  fees motions and related documents, particularly where the cases are complex and
8  the fees sought are substantial, as is the in this case. To be successful, each of the
9  fees motions discussed in paragraph 8 above required the hands-on work of senior
10 attorneys, who have mastered the intricacies of attorneys' fees law and marshalling
11 of the fees data and case facts to match the law.

12     20. In my experience, the work that is necessary to vet and prepare time
13 records that are submitted with contested fees motions requesting substantial fees is
14 very different and much more time intensive than work that is necessary to present a
15 bill that will be scrutinized by a paying client. Willing clients may well audit the
16 records, but a contested fee application like this one will be reviewed both by the
17 adverse parties and their attorneys as well as by the court applying a complex menu
18 of legal standards.

19     21. The interim fees motion in this matter is comparable to the fee
20 applications discussed in paragraph 8 above. Just as an example, the billing records
21 supporting this fees motion had to be reviewed with great care to ensure that they do
22 not disclose attorney-client and other privileged information. Moreover, as this case
23 is ongoing, special care had to be given to ensure that the billing records did not
24 disclose attorney work product. In addition, the fees claimed had to comply with
25 legal standards including those concerning excluding time that was not devoted to
26 the ADA claims directly or to the common core of facts and law that pertained to the
27 ADA claims.

28     22. My fees work in this matter was not as hands-on as the work I

1  performed in the cases discussed in Paragraph 8.  My partner Van Swearingen filled
2  that role.  As a "prominent and highly respected" litigator, O'Connor Decl. ¶ 29, I
3  used my experience with attorneys' fees motions to assist my colleagues to produce
4  a comprehensive and detailed interim fees application in this complicated matter as
5  efficiently as possible to provide the Court with the information it needs to evaluate
6  the fees request.  To that end, I provided high level guidance, and reviewed,
7  commented on, and edited drafts of the Memorandum of Points and Authorities, and
8  performed much less such work on several of the declarations in support of the
9  motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at San Francisco, California this 17th day of March, 2025.

_____
Sanford Jay Rosen