GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
ERIC MONEK ANDERSON – 320934
HANNAH M. CHARTOFF – 324529
BEN HOLSTON – 341439
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
mfreedman@rbgg.com
eanderson@rbgg.com
hchartoff@rbgg.com
bholston@rbgg.com

CHRISTOPHER M. YOUNG – 163319
ISABELLA NEAL – 328323
OLIVER KIEFER – 332830
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br>v.<br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br>Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**REPLY DECLARATION OF MARGOT MENDELSON IN SUPPORT OF PLAINTIFFS' MOTION FOR INTERIM ATTORNEYS' FEES AND COSTS**<br><br>Judge: Hon. Anthony J. Battaglia<br>Date: May 8, 2025<br>Time: 2:00 p.m.<br>Crtrm: 4A |

[4664082.3]

Case No. 3:20-cv-00406-AJB-DDL

I, Margot Mendelson, declare:

1. I am the Executive Director of the Prison Law Office, a nonprofit based in Berkeley, California, whose mission is to protect the constitutional and Americans with Disabilities Act ("ADA") rights of people behind bars. I make this reply declaration in support of Plaintiffs' Motion for Interim Attorneys' Fees and Costs. I have personal knowledge of the facts set forth herein, and if called as a witness, I could competently so testify.

2. I am a 2009 graduate of Yale Law School, where I served as Projects Editor for the Yale Law Journal. After graduating from Yale, I clerked for the honorable Diana Motz of the U.S. Court of Appeals for the Fourth Circuit, and for the honorable Catherine Blake of the U.S. District Court for the District of Maryland. At the end of my second clerkship, in or around fall 2012, I joined the law firm Rosen Bien Galvan & Grunfeld LLP ("RBGG") as an associate attorney.

3. While at RBGG, I worked extensively on two statewide class actions involving the ADA rights of people with disabilities: *Coleman v. Newsom*, E.D. Cal. No. 2:90-cv-00520-KJM-DB and *Armstrong v. Newsom*, N.D. Cal. No. 94-cv-02307-CW. *Armstrong* involves physical and cognitive disabilities, such as mobility, speech, hearing, kidney, developmental, and learning disabilities, whereas *Coleman* focuses on the rights of the mentally ill, both under the ADA and the Eighth Amendment. My work included active litigation and post-judgment monitoring. For example, I was involved in several motions and hearings following up on the Supreme Court's affirmance in *Plata v. Brown*, 563 U.S. 493 (2011) of a three-judge panel finding that California's prison system was unconstitutionally overcrowded.

4. In 2016, I joined the Prison Law Office, where I continue to work on both *Armstrong* and *Coleman*. While at the Prison Law Office, I have also pursued the ADA and constitutional rights of people incarcerated in California's county jails, including, most prominently, in the Sacramento County Jail, where I am class

counsel in *Mays v. Sacramento*, E.D. Cal. No. 2:18-at-01259.  In that capacity, I have spent countless hours—reviewing and providing input on policies and procedures, evaluating tracking and compliance systems, analyzing data, communicating with class members, navigating disputes, and litigating in court when necessary—to ensure that the jails meet constitutional and ADA standards.

5.   Disability rights work in jails and prisons is extremely complex and challenging.  These cases are typically class actions involving thousands of people with multiple types of disabilities.  Disability antidiscrimination laws and regulations look at both physical accessibility (that is, compliance with technical specifications for ramps, wheelchair clearance space, grab bars, and more) and program access (that is, providing meaningful access to programs, services, and activities with reasonable accommodations when warranted). These topics are discrete and distinctively complex.  Our work requires complex analysis of disability identification, tracking, and accommodation protocols, with interdisciplinary components given the necessary coordination among security staff, health care staff, and administrative staff.

6.   As Class Counsel, we must correspond regularly with class members and pursue their concerns through advocacy letters, records review, and engagement with experts and jail/prison leadership and, on occasion, litigation.  Many of the class member concerns are broad and complex, making it challenging to narrow the issues such that they fit within the applicable legal framework.  In addition, many of our clients are fearful of retaliation, making it difficult to gain their trust such that they share their stories with the court.

7.   Within a prison and/or jail system required to remediate barriers under Title II of the ADA and under the Rehabilitation Act, there are special challenges posed by security concerns and aging infrastructure. Changes to policies, procedures, and operating manuals have to be made on a regular basis to ensure meaningful access to the programs, services, and activities of a particular prison or

jail. For example, if a highly desired program is offered in a space accessible only via stairs, the prison or jail may have to issue a policy that allows persons with mobility disabilities access to that program in a manner different from the other incarcerated people.

8. Each prison or jail facility has its own population dynamics and needs. Significant work goes into determining classification factors and making sure that there are sufficient accessible beds at the correct level of classification/security needed for incarcerated people with disabilities. All this work requires intensive factual development and expert input, which are costly and time-consuming to develop.

9. Bringing a prison or jail system into compliance with the ADA, Rehabilitation Act and related state law is entirely different from the kind of litigation undertaken by the law firm Potter Handy. My understanding is that firm typically uses testers to visit a restaurant or other establishment one time and then files a lawsuit over one or several discrete ADA barriers that require clear-cut physical changes. For example, the challenge might be to a membership services counter that is too high for a person in a wheelchair or the lack of any wheelchair accessible van parking.

10. The kind of work we do in *Armstrong* and *Mays* is far more complex. In *Armstrong*, for example, together with a team of attorneys and experts, we have been reviewing CDCR's master planning construction documents to improve ADA accessibility in its prison system. This has taken several years due to the complexity of the work, which involves communication between architects, consultants, experts, and attorneys to ensure that the work complies with all federal and state standards and meets the evolving needs of the aging prison population and infrastructure while at the same time addressing the safety and other concerns identified by prison authorities. In the *Mays v. County of Sacramento* class case, our team of attorneys has had to evaluate and work closely with jail leadership to ensure

effective systems of disability screening, disability tracking, the provision of disability-related accommodations, the provision of assistive devices, access to jobs, classes, and programming, and provision of effective communication for people with disabilities.  Our team has further engaged in investigation and analysis regarding the need for safe and accessible housing, shower/bathroom, recreational, visiting, and other Jail facilities.  This work involves careful attention to both physical plant challenges and programmatic operations.

11. My understanding of the settlement agreements obtained by Class Counsel in this case is that they are similar to the kinds of work we do in *Armstrong* and *Mays*.

12. Due to the contingent risk of taking on multi-year class action cases, the Prison Law Office has to carefully safeguard its resources.  We thoroughly vet all cases before deciding to take them on; once we do, we litigate our cases aggressively to completion.  We have obtained countless victories on behalf of incarcerated people over the years, as described on our website.  *See* https://prisonlaw.com/major-cases/ (as of March 12, 2025).

13. I have been aware of community concerns with the operation of the San Diego County jails, including its high death rate, for years.  I toured multiple San Diego County Jail facilities with an investigation team, and observed the extensive physical plant and programmatic deficiencies on issues that specifically impacted incarcerated people with disabilities. After Disability Rights California published its groundbreaking report *Suicides in San Diego County Jail:  A System Failing People with Mental Illness* in 2018, advocates approached the Prison Law Office urging us to file a lawsuit similar to others we were handling.  We declined that opportunity based on the fact that we were handling a number of other jail and prison cases.  We knew that a challenging San Diego County Jail litigation would be an enormous drain on our resources.  It is one of the largest jail systems in California and would require extensive attorney and expert time.  We regretfully informed these advocates

that we could not pursue class action litigation against San Diego.

14. After *Plata v. Brown*, in 2012, the governor signed realignment legislation that increased the amount of time incarcerated people spend in county jails. Following that legislation, the Prison Law Office and RBGG filed ADA and Eighth Amendment lawsuits against several large county jail systems in California. We often partner with private law firms because these cases are so complex, challenging, and costly. But between my firm and RBGG, we handle the vast majority of county jail litigation in California. The only other significant player in this area is the ACLU, which I understand withdrew from this case early on. I am not aware of any law firm besides RBGG that could have mounted a successful constitutional and ADA challenge to San Diego County's jail system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at Berkeley, California this 18th day of March 2025.

Margot Mendelson