

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DARRYL DUNSMORE, et al.,

Plaintiffs,

v.

SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, et al.,

Defendants.

Case No.:  20-cv-406-AJB-DDL

**SUPPLEMENTAL ORDER RE PLAINTIFFS' MOTION TO FILE DOCUMENTS UNDER SEAL**

**Dkt. No. 797**

I.

**INTRODUCTION**

On February 25, 2025, District Judge Anthony J. Battaglia issued an Order [Dkt. No. 823] granting in part and denying in part Plaintiffs' motion to file under seal certain documents submitted with their opposition to the Defendants' ("County") motion for partial summary judgment.  In relevant part, Plaintiffs sought to file under seal four expert reports containing information taken from Critical Incident Review Board ("CIRB") Reports generated by the San Diego County Sheriff's Department.  Judge Battaglia directed the parties to submit the CIRB Reports at issue to the undersigned for an *in camera* review to determine whether the information taken from the CIRB Reports and included in the expert reports is

subject to the attorney-client privilege under *Greer v. Cnty. of San Diego*, 127 F.4th 1216 (9th Cir. 2025).  *See* Dkt. No. 823 at 5-6.

Plaintiffs submitted the portions of the four expert reports containing information from CIRB Reports.  Separately, Defendants provided the corresponding CIRB Reports.  Having reviewed the four expert reports and the CIRB Reports, the Court concludes that three of the expert reports contain information from CIRB Reports that is privileged under *Greer*.  However, the current record is insufficient for the Court to assess whether the fourth report contains information from a privileged CIRB Report.

## II.

## BACKGROUND

On December 13, 2023, the Court granted Plaintiffs' motion to compel the production of 25 CIRB Reports pertaining to inmates who died in Sheriff's Department custody.  Dkt. No. 468 (the "CIRB Order").  In relevant part, the Court found the County had not carried its burden to show the Reports were subject to the attorney-client privilege in their entirety.  After providing the County an opportunity to demonstrate that specific portions of the CIRB Reports should be redacted, the Court ordered the production of the CIRB Reports with redactions that were "limited to communications between Chief Legal Advisor Michael Faigin and other CIRB members."  Dkt. No. 507 at 2.

The County produced the redacted CIRB Reports subject to the operative Protective Order.  On December 18, 2024, the Court ordered that the CIRB Reports would remain subject to the Protective Order, and therefore not subject to public dissemination, pending the Ninth Circuit's decision in *Greer*.  Dkt. No. 785.

On December 16, 2024, Defendants moved for partial summary judgment on multiple causes of action.  Plaintiffs' opposition to the motion included four expert reports that contain information taken from five separate CIRB Reports.  As required by the Protective Order, Plaintiffs moved to seal "information in the expert

reports derived from the CIRB reports." Dkt. No. 797 at 6.

On February 10, 2025, the Ninth Circuit issued its opinion in *Greer*, holding the attorney-client privilege applied to certain CIRB Reports concerning in-custody deaths. *Greer*, 127 F.4th at 1227. The Ninth Circuit remanded "with instructions to require the return and/or destruction of the disputed documents, which are privileged." *Id.*

Thereafter, Judge Battaglia directed the undersigned to "conduct an *in camera* review of the CIRB reports at issue to determine whether the attorney-client privilege applies, following *Greer*." Dkt. No. 823 at 6.

### III.

### DISCUSSION

**A.     The CIRB Order**

The County has consistently maintained that the attorney-client privilege applies to the CIRB Reports in their entirety. In ordering the County to produce the CIRB Reports to Plaintiffs, this Court concluded the County had not met its burden to "show that the primary purpose of the communications in each Report was to seek or give legal advice." CIRB Order at 9. After considering the Sheriff's Department Policy and Procedure Manual, the CIRB Reports at issue and the testimony of Chief Legal Advisor Michael Baranic[1], the undersigned found "the CIRB could fulfill its duties under [the Policy and Procedure Manual] to vote on policy violations and address training or policy issues absent any legal advice from the Chief Legal Advisor." *Id.* at 11. Moreover, although the CIRB Reports need not contain legal advice for the attorney-client privilege to apply, the CIRB Reports at issue did not contain any readily identifiable legal advice provided by the Chief

---

[1]     Baranic testified regarding the CIRB process and functions in another case involving the production of CIRB Reports. *See Morton v. Cnty. of San Diego, et al.*, 21-cv-1428-MMA-DDL, Dkt. No. 79.

20-cv-406-AJB-DDL

Legal Advisor, which weighed against a finding that entirety of each CIRB Report was subject to the attorney-client privilege. *Id.* Thus, the Court "conclude[d] the attorney-client privilege does not apply to the entirety of each CIRB Report at issue" and ultimately ordered production of the Reports with redactions to specific communications with the Chief Legal Advisor. *Id.* at 13. The County complied with the CIRB Order.

**B.   *Greer***

In *Greer*, the district court ordered the County to produce in discovery redacted CIRB Reports pertaining to twelve in-custody deaths. *Greer*, 127 F.4th at 1221. The plaintiff filed portions of the CIRB Reports "conditionally under seal" in opposition to the County's motion for summary judgment. *Id.* After the case settled, the district court granted a motion by news organizations to "unseal the CIRB documents for 'public inspection.'" *Id.* at 1222.

On appeal, the Ninth Circuit reversed the order unsealing the CIRB documents. The Ninth Circuit noted the CIRB's stated purpose is "to consult with department legal counsel when an incident occurs which may give rise to litigation" and that "the County's current and former Chief Legal Advisors both averred that consulting with counsel is the primary purpose of the CIRB." *Id.* at 1226. The Ninth Circuit concluded:

> Here, the CIRB reports contained in the record meet the criteria for attorney-client privilege. Department Policy required the Chief Legal Advisor to be part of the CIRB, and there is no contention that the Chief Legal Advisor was absent from any of the meetings memorialized in the reports. In each instance, areas of potential liability for the inmate's death were discussed. In most instances, counsel participated actively by asking questions designed to understand and, where appropriate, by highlighting areas of potential liability.

/ / /

In short, both the participants in the CIRB and its critics consistently
viewed the primary purpose of the CIRB as assessing legal liability for
a past event and avoiding legal liability for future similar events. The
district court's ruling to the contrary was erroneous.

*Id.* Significantly, *Greer* concluded the attorney-client privilege applied to the twelve
CIRB reports in their entirety and directed "the return and/or destruction of the
disputed documents, which are privileged." *Id.* at 1227.

## C.   <u>Expert Reports</u>

The four expert reports at issue were prepared by Gary Raney, Kelly
Ramsey, Pablo Stewart and Jeffrey Keller.  Each report contains information from
one or more CIRB Reports pertaining to in-custody deaths:

- Gary Raney report – deaths of Louis Gomez and Robert Moniger
- Kelly Ramsey report – death of Lazaro Alvarez
- Pablo Stewart report – death of Joseph Morton
- Jeffrey Keller report – death of Raymond Dix

The CIRB documents reviewed *in camera* indicate the Sheriff's Department's
Chief Legal Advisor was present at the CIRB meetings pertaining to the deaths of
Louis Gomez, Robert Moniger, Lazaro Alvarez and Joseph Morton.  The Chief
Legal Advisor asked questions in the meetings pertaining to Gomez, Alvarez and
Morton.  In the meeting pertaining to Moniger, the Chief Legal Advisor did not ask
any questions but answered a question.  However, the Chief Legal Advisor's level
of participation in the meeting does not affect the analysis because the *Greer*
majority found the privilege applicable to the entirety of every CIRB Report at issue
in that case.  *Greer*, 127 F.4th at 1226.  The majority did not adopt the dissent's
position that "swaths of the CIRB reports are plainly not privileged," *id.* at 1238,
and that "the proper remedy was to redact, not withhold, the reports."  *Id.* at 1239.
Accordingly, the Court reads *Greer* to hold the Chief Legal Advisor's presence at
a CIRB meeting renders the ensuing CIRB Report privileged in its entirety

20-cv-406-AJB-DDL

regardless of whether the Chief Legal Advisor actively participates in the meeting.

The CIRB documents reflect that neither the Chief Legal Advisor nor the Deputy Chief Legal Advisor attended the CIRB meeting on September 20, 2023, pertaining to the death of Raymond Dix that is referenced in Jeffrey Keller's report. Rather, the attendance sheet indicates that Heidi Williams from "CIRB BOARD LEGAL" attended the CIRB meeting. The present record does not include information about Ms. Williams, including her job title, role or responsibilities. And the Court has no information about "CIRB BOARD LEGAL" or why Ms. Williams attended the CIRB meeting in the absence of the Chief Legal Advisor.

## IV.

## CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Under *Greer*, the attorney-client privilege applies to the CIRB Report information contained in the expert reports of Gary Raney, Kelly Ramsey and Pablo Stewart.

2. The present record is insufficient to determine whether the privilege applies to the CIRB Report information contained in the expert report of Jeffrey Keller. By not later than **May 21, 2025**, the County must file a supplemental brief not to exceed three pages explaining why the CIRB Report pertaining to the in-custody death of Raymond Dix is privileged.

**IT IS SO ORDERED.**

Dated: May 14, 2025

_____
Hon. David D. Leshner
United States Magistrate Judge

20-cv-406-AJB-DDL