UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>Defendants | Case No.: 20-cv-00406-AJB-DDL<br><br>**ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF ADA SETTLEMENT AGREEMENT**<br><br>**(Doc. No. 907)** |

Before the Court is a joint motion for final approval of the Americans with Disabilities Act ("ADA") Settlement as to Plaintiffs' Third Claim ("Motion for Final Approval"). (Doc. No. 907.) On July 31, 2025, the Court held a hearing on the Motion for

1

Final Approval. (Doc. No. 942.) For the reasons set forth below, the Court **GRANTS** the Motion for Final Approval. (*Id.*)

# I. BACKGROUND

The facts of this case have been recited in previous orders. (*See* Doc. No. 219.) Plaintiffs are current or former inmates of San Diego County Jail facilities (the "Jail"), operated by Defendants San Diego County Sheriff's Department and the County of San Diego. Plaintiffs bring this action on behalf of "themselves and the approximately 4,000 incarcerated people who are similarly situated on any given day" to "remedy the dangerous, discriminatory, and unconstitutional conditions in the Jail." (Third Amended Complaint ("TAC"), Doc. No. 231, ¶ 4.) Specifically, Plaintiffs contend Defendants' policies and practices contribute to the high death rates in the Jail, which "has for years exceeded the rates nationally and in other large California jails, [and] it reached chilling heights in 2021 when 18 people died, amounting to a death rate of 458 incarcerated people per 100,000." (*Id.* ¶ 1.)

In the operative complaint, Plaintiffs' Third Claim alleges a failure to provide reasonable accommodations to incarcerated people with disabilities in violation of the ADA, the Rehabilitation Act, and California Government Code § 11135. (*See* TAC ¶¶ 454–68.)

On November 3, 2023, the Court granted the parties' joint motion to certify three subclasses under Federal Rule of Civil Procedure 23(b)(2). (Doc. No. 435.) As relevant to this Order, the Court certified a subclass defined as:

> All adults who have a disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities ("Incarcerated People with Disabilities Subclass").

(*Id.* at 10.) The Court also granted the parties' request for approval of the proposed class notice ("Class Notice"), ordering that copies of the Class Notice be posted throughout the Jails in English and Spanish; that Defendant Sheriff's Department read the Class Notice to individuals who are illiterate or have a disability that may affect their ability to read the

Class Notice; and that copies of the TAC be provided by Defendant Sheriff's Department to class members upon request. (*Id.* at 11.)

Between August 25, 2023, and November 20, 2024, the parties participated in seventeen settlement conferences with Magistrate Judge David D. Leshner ("Judge Leshner"), including several all-day, in-person conferences. (Doc. No. 907-2, Declaration of Gay Grunfeld ("Grunfeld Decl."), ¶ 16.) Moreover, in coming to agreement on the ADA Settlement terms, the parties exchanged numerous draft written proposals over six months. (*Id.*) The San Diego County Board of Supervisors approved the ADA Settlement as to Plaintiffs' third claim on December 11, 2024. (*Id.*) On December 12, 2024, the parties filed the ADA Settlement Agreement as a joint motion (the "ADA Settlement" or "Settlement") (Doc. No. 776), which the Court approved the same day (Doc. No. 777).

The parties subsequently filed a joint motion for preliminary approval of the ADA Settlement. (Doc. No. 792.) The Court granted the joint motion and entered the order granting preliminary approval (the "Preliminary Approval Order"), which *inter alia* approved Plaintiffs' distribution method for class notice, set administrative notice and objection deadlines, and tentatively approved the Settlement. (Doc. No. 828.) The Court ordered Defendants to distribute notice to the Incarcerated People with Disabilities Subclass ("Subclass" or "Subclass Members") within two business days of the Preliminary Approval Order and set a deadline of 45 days from distribution of notice for objections by Subclass Members. (*Id.* at 14.) After notice was effectuated, the Court received five objections to the ADA Settlement. (*See* Doc. Nos. 851; 859-1; 895–897.)

On May 6, 2025, the parties filed the Motion for Final Approval. (Doc. No. 907.) In support, Plaintiffs filed the Grunfeld Declaration, (Doc. No. 907-2), including a copy of email correspondence between Defendants' counsel and Plaintiffs' counsel, confirming that Defendants distributed the Class Notice in accordance with this Court's Order Granting Preliminary Approval. (Doc. No. 907-2 ¶ 18, *see also* Doc. No. 828.)

On July 31, 2025, the Court held a fairness hearing on the Settlement and on the Motion for Final Approval. Gay C. Grunfeld and Christopher M. Young appeared on behalf

on the Subclass and confirmed receipt of five objections to the Settlement Agreement. Elizabeth M. Pappy appeared on behalf of Defendants. No other objectors appeared.

## II.   SETTLEMENT AGREEMENT

The parties have executed the ADA Settlement Agreement ("the "ADA Settlement" or "Settlement"). (*See* Doc. No. 907-2 at 10–83.) The primary terms of the Settlement are as follows.

### A.   Policies, Procedures, and Practices to Protect ADA Rights

To protect the ADA rights of Subclass Members, Defendants will take or will continue taking the following actions:

1. Maintaining the ADA Unit created in June 2023 to facilitate the County's compliance with the ADA;
2. Informing Subclass Members of their rights upon orientation at the Jail;
3. Revising custody and medical policies and procedures, and providing annual training to all relevant staff, including contracted staff;
4. Identifying and tracking all incarcerated people with disabilities and the accommodations they require;
5. Housing Subclass Members consistent with their disabilities;
6. Providing equal access to programs, services, and activities consistent with the ADA;
7. Providing a means for Subclass Members to request disability accommodations and grieve a denial;
8. Providing effective communication to incarcerated persons with communication disabilities;
9. Providing and maintaining assistive devices for incarcerated people who need them;
10. Providing accommodations in emergency situations;
11. Assessing, documenting, and providing accommodations for people with learning, intellectual, and developmental disabilities;
12. Identifying, tracking, and providing accommodations for people with mental health disabilities; and
13. Documenting and providing accommodations to Subclass Members in other aspects of incarceration in the Jail, including searches and transportation.

/ / /

**B.     ADA Facility Modifications**

In addition to the ongoing ADA facility modifications at San Diego Central Jail pursuant to the 2023 ADA Order (Doc. No. 355), the County agrees to make additional ADA facility modifications at multiple facilities, including at Las Colinas Detention and Reentry Facility, George Baily Detention Facility, Vista Detention Facility, Rock Mountain Detention Facility, and South Bay Detention Facility. Moreover, the County will, within eighteen (18) months of the Settlement Agreement, conduct a comprehensive assessment to determine whether additional housing or other measures are necessary. Within four (4) years of the Settlement Agreement, the County agrees to house every person with a disability with appropriate accessibility features consistent with their individual disability needs.

**C.     Neutral Experts to Issue Reports on Compliance**

To help ensure compliance with the Settlement Agreement, the County agrees to retain two neutral experts with relevant professional expertise. One neutral expert will be responsible for assessing the physical modifications to the facility, while the other will be responsible for evaluating compliance with policies, practices, procedures, and training under the ADA Settlement. The parties expect to continue working with the same neutral expert currently retained to assess compliance at Central Jail and will choose a second neutral expert for the policy, practice, procedure, and training issues. The neutral experts will conduct site visits of Jail facilities twice per year, interview staff and Subclass Members, and have access to documents, which they will use to issue twice-yearly reports on compliance with the Settlement. The parties will accompany the neutral experts on their site visits and will have the opportunity to provide comments on the neutral experts' draft reports. (Doc. No. 907-1 at 8–10; *see also* Doc. No. 907-2 at 11–85.)

**III.    MOTION FOR FINAL APPROVAL**

The Parties filed the instant Motion for Final Approval, seeking the Court to find

(1) the Settlement fair and reasonable and (2) the five objections to the Settlement do not warrant rejecting the Settlement. (Doc. No. 907-1 at 10; 13.) For the reasons set forth below, the Court **GRANTS** the Motion for Final Approval.

### A. Legal Standard

A class action may only be settled with court approval, "which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)). "Courts reviewing class action settlements must 'ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights,' while also accounting for 'the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556, 568 (9th Cir. 2019) (en banc)).

### B. Subclass Certification

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *See* Fed. R. Civ. P. 23(e)(1)(B). However, "[i]f the court has already certified a class [prior to the parties reaching settlement], the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment.

Here, the Court certified the Subclass after full briefing on the matter, prior to the parties reaching a settlement. (*See* Doc. No. 435.) Because the ADA Settlement does not call for any changes to the certified Subclass, the claims, defenses, or issues, the Court does not disturb its prior certification order and finds that no further analysis is necessary.

### C. Adequacy of Notice

Next, the Court must determine whether the Subclass received adequate notice. *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class

members who would be bound by the proposal[.]"). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

As mentioned *supra* § I, the Court approved the proposed Class Notice. (Doc. No. 828.) Filed in conjunction with the parties' Motion for Final Approval, the Grunfeld Declaration states Defendants' counsel confirmed with Plaintiffs' counsel that Defendants posted the Class Notice in accordance with the Court's Order. (Doc. No. 907-2 ¶ 18.) Specifically, pursuant to the notice plan, Defendants (1) posted the Proposed Settlement Notice in English and Spanish throughout the San Diego County Jail facilities (the "Jail") on white paper and in 16-point font for the Subclass, including in housing units, intake areas, holding cells, and medical units; (2) provided a hard copy of the Class Notice to every individual who entered the Jail for a period of four weeks; (3) provided the Class Notice in English and Spanish on video kiosks in housing units; and (4) read the Class Notice to incarcerated people who have a disability that may affect their ability to read the Class Notice. (*See id.* at 87–88*; see also* Doc. No. 828 at 13–14.)

Having reviewed the Grunfeld Declaration, the Court finds that Defendants duly effectuated the Court-approved Class Notice and that Subclass Members received adequate notice of the Settlement.

### D. Fairness, Reasonableness, and Adequacy of Settlement

Federal Rule of Civil Procedure 23(e) requires a district court to determine whether a proposed class action settlement is fundamentally fair, adequate, and reasonable. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026; *see also Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982) (holding a settlement must stand or fall in its entirety because a district court cannot "delete, modify or substitute certain provisions").

Traditionally, courts in this Circuit assess the fairness, reasonableness, and adequacy of a proposed settlement by balancing the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). "The district court's approval order must show not only that 'it has explored [these] factors comprehensively,' but also that the settlement is 'not[] the product of collusion among the negotiating parties.'" *In re Bluetooth*, 654 F.3d at 947 (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000) ("*In re Mego*")).

In 2018, Rule 23(e)(2) was amended to require courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (v) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### 1. Rule 23(e)(2) Factors

In its Preliminary Approval Order, the Court found that the applicable Rule 23(e)(2) factors weighed in favor of approving the Settlement. (*See* Doc. No. 828 at 6–9.) Among other criteria, the Court determined that Plaintiffs' counsel vigorously prosecuted this action on behalf of the entire Subclass, the Settlement was negotiated at arm's length with the assistance of an experienced mediator, Judge Leshner, and the Settlement's terms,

including policies, procedures, and practices to protect ADA rights, the ADA facility modifications, and the neutral experts to issue reports on compliance, provide adequate relief for the Subclass. (*Id.*)

Five Subclass Members filed objections to the Settlement. (*See* Doc. Nos. 851; 859-1; 895–97.) Three of the five objections contend that a damages award is necessary to include in the Settlement based on the members' treatment at the Jail. (*See* Doc. Nos. 859-1; 895; 896.) Two letters raise concerns about inadequate medical care. (*See* Doc. Nos. 895; 896.) One letter objects to the quality and nutritional value of food served at the Jail (Doc. No. 851); and one letter implies that Defendants have impeded Subclass Members' communications with Plaintiffs' Counsel (Doc. No. 897).

In response, Plaintiffs' Counsel states that the certified Subclass only seeks declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2), (*see* Doc. No. 907-1 at 13 (citing Doc. No. 231 at 225, 228–29)), and the Settlement does not bar Subclass Members from separately pursuing individual damage claims (*id.*). Furthermore, Plaintiffs' Counsel asserts that any medical concerns conveyed by Subclass Members are outside the scope of Plaintiffs' ADA claim and the instant Settlement, and could be addressed by remaining claims in the case. (*Id.*) Finally, Plaintiffs' Counsel represents that it "reached out to the Subclass [M]ember seeking more information" about how the Jail may have impeded the Member's communications with Plaintiffs' Counsel. (*Id.*) At the July 31, 2025, hearing, Plaintiffs' counsel, Ms. Grunfeld, indicated she had spoken to this individual on the phone and he does not oppose the Settlement. (Doc. No. 942.)

The Court finds that these objections do not merit rejecting the Settlement Agreement. Because "the general rule is that a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damages claims by class members, even if based on the same events," *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996), Subclass Members could pursue individual damages in separate proceedings. Additionally, the Court agrees with Plaintiffs' Counsel that allegations of inadequate medical care fall

outside of the scope of resolving Plaintiffs' Third Claim. Accordingly, the Court reaffirms and incorporates by reference its analysis of the Rule 23(e) requirements as set forth in its Preliminary Approval Order. (*See* Doc. No. 828 at 6–9); *see also Bloom v. City of San Diego*, No. 17-CV-02324-AJB-DEB, 2024 WL 4495512, at *6 (S.D. Cal. Oct. 15, 2024) (finding settlement to be "fair, reasonable, and adequate" where case only sought injunctive relief in part because class members were free to independently file suit for damages).

### 2. Additional Ninth Circuit Factors

As the amended Rule 23(e)(2) factors were not intended to replace the factors developed by circuits, the Court now turns to analyze the factors traditionally considered by this Circuit. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

#### i. Experience and Views of Counsel

In its Preliminary Approval Order, the Court found the experience and views of counsel weighed in favor of approval. (Doc. No. 828 at 7.) As no changes to Plaintiffs' Counsel have occurred, no relevant facts have changed, and no objections regarding Plaintiffs' Counsel have been brought to the Court, the Court reaffirms and incorporates by reference its analysis on this factor and finds this factor weighs in favor of Settlement approval.

#### ii. Presence of a Governmental Participant

"The presence of a governmental participant in the class action settlement generally weighs in favor of approving the settlement." *Fitzgerald v. Pollard*, No. 20CV848 JM(MSB), 2024 WL 4596401, at *7 (S.D. Cal. Oct. 28, 2024).

Here, Defendants include the County of San Diego, the San Diego County Sheriff's Department, and the San Diego County Probation Department. Accordingly, this factor weighs in favor of approving the Settlement. *See id.* ("Defendants are various agents of the State of California and its corrections department who support the Settlement. This factor, therefore, weighs in favor of settlement.")

/ / /

/ / /

### iii. Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)).

Here, the Court reviewed the five Subclass Members' objections to the Settlement. (*See* Doc. Nos. 851; 859-1; 895–897.) As found above, *see* Sec. III(D)(1), *supra*, the principal complaint was that the Settlement does not include damages. Yet, the certified Subclass only seeks declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2), (*see* Doc. No. 907-1 at 13 (citing Doc. No. 231 at 225, 228–29).) Because the Settlement does not bar Subclass Members from separately pursuing individual damage claims (*id.*), the Court finds the objections of Subclass Members, who can still pursue damages, weighs in favor of approving the Settlement.

## IV. CONCLUSION

Having analyzed the Rule 23(e)(2) factors and the Ninth Circuit's factors, and finding them weigh heavily in favor of approval, the Court finds the Settlement fundamentally fair, adequate, and reasonable. *See Officers for Just.*, 688 F.2d at 625 ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution[,] especially . . . in complex class action litigation . . . ."). Accordingly, based on the foregoing, the Court **GRANTS** the Motion for Final Approval. (Doc. No. 907.)

**IT IS SO ORDERED.**

Dated: August 4, 2025

Hon. Anthony J. Battaglia
United States District Judge