UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,

Defendants

Case No.:  20-cv-00406-AJB-DDL

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR INTERIM ATTORNEYS' FEES**

**(Doc. No. 807)**

Before the Court is Plaintiffs' Motion for Interim Attorneys' Fees and Costs pertaining to the ADA Settlement Agreement ("Motion for Attorneys' Fees") (Doc. No. 807). Defendants filed an opposition to Plaintiffs' Motion for Attorneys' Fees (Doc. No.

1

831), to which Plaintiffs replied (Doc. No. 867). On July 31, 2025, the Court held a hearing on Plaintiffs' Motion for Attorneys' Fees. (Doc. No. 942.) For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Attorneys' Fees. (Doc. No. 807.)

## I.    BACKGROUND

The facts of this case have been recited in previous orders. (*See* Doc. No. 219.) Plaintiffs are current or former inmates of San Diego County Jail facilities (the "Jail"), operated by Defendants San Diego County Sheriff's Department and the County of San Diego. Plaintiffs bring this action on behalf of "themselves and the approximately 4,000 incarcerated people who are similarly situated on any given day" to "remedy the dangerous, discriminatory, and unconstitutional conditions in the Jail." (Third Amended Complaint ("TAC"), Doc. No. 231, ¶ 4.) Specifically, Plaintiffs contend Defendants' policies and practices contribute to the high death rates in the Jail, which "has for years exceeded the rates nationally and in other large California jails, [and] it reached chilling heights in 2021 when 18 people died, amounting to a death rate of 458 incarcerated people per 100,000." (*Id.* ¶ 1.)

In the operative complaint, Plaintiffs' Third Claim alleges a failure to provide reasonable accommodations to incarcerated people with disabilities in violation of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and California Government Code § 11135. (*See* TAC ¶¶ 454–68.)

An abbreviated procedural history of this case is as follows. On November 3, 2023, the Court granted the parties' joint motion to certify three subclasses under Federal Rule of Civil Procedure 23(b)(2). (Doc. No. 435.) Fact discovery closed in May 2024, (*see* Doc. Nos. 470; 636; 654), and expert discovery closed in November 2024 (Doc. No. 721).

Between August 25, 2023, and November 20, 2024, the parties participated in at least seventeen settlement conferences with Magistrate Judge David D. Leshner ("Judge Leshner"), including several all-day, in-person conferences. (Doc. No. 867-8, Reply Declaration of Van Swearingen ("Swearingen Reply Decl."), ¶ 25.) The San Diego County

2

Board of Supervisors approved the ADA Settlement as to Plaintiffs' third claim on December 11, 2024. (*Id.*) On December 12, 2024, the parties filed the ADA Settlement Agreement as a joint motion (the "ADA Settlement" or "Settlement") (Doc. No. 776), which the Court approved the same day (Doc. No. 777).

The parties subsequently filed a joint motion for preliminary approval of the ADA Settlement. (Doc. No. 792.) The Court granted the joint motion and entered the order granting preliminary approval. (Doc. No. 828.)

On February 3, 2025, Plaintiffs filed the instant Motion for Attorneys' Fees (Doc. No. 807), which Defendants oppose (Doc. No. 831). In support of the motion, Plaintiffs filed seven declarations. (Doc. Nos. Nos. 807-2–807-8.) The first is by Gay C. Grunfeld, managing partner at Rosen Bien Galvan & Grunfeld LLP ("RBGG") (Doc. No. 807-2, "Grunfeld Decl."), which incorporates the resumes of Plaintiffs' counsel at RBGG and outlines the experience, skills, and reputation of each RBGG attorney and staff member. (Grunfeld Decl. ¶ 3.) The second is by RBGG partner, Van Swearingen (Doc. No. 807-3, "Swearingen Decl."), which incorporates RBGG's billing invoices, costs, and expenses for RBGG's merits and fees work through January 20, 2025, as well as the invoices from SZS Engineering Access Inc., Plaintiffs' ADA expert's vendor. The third declaration is by Christopher M. Young, partner at DLA Piper LLP (US) ("DLA Piper") (Doc. No. 807-4, "Young Decl."), which incorporates the resumes of Plaintiffs' counsel at DLA Piper, as well as DLA Piper's time entries, costs, and expenses for merits and fees work through January 20, 2025. The fourth declaration is by Aaron J. Fischer, solo practitioner in the Law Office of Aaron J. Fischer (Doc. No. 807-5, "Fischer Decl."), which incorporates Mr. Fischer's resume, time entries, costs, and expenses for his merits and fees work through January 20, 2025. The fifth declaration is by Plaintiffs' counsel's retained expert, Richard M. Pearl, to opine on the reasonableness of Plaintiffs' requested attorneys' fees. (Doc. No. 807-6, "Pearl Decl.") The sixth declaration is by Claudia Center, the Legal Director at Disability Rights Education and Defense Fund, Inc. (Doc. No. 807-7, "Center Decl."), which evaluates the relief provided to Subclass Members through the ADA Settlement.

3

The seventh declaration is by Shawna Parks, Chief Litigation Officer at Disability Rights Advocates (Doc. No. 807-8, "Parks Decl."), which attests to the reasonableness of RBGG's and Aaron Fischer's billing rates. RBGG, DLA Piper, and Aaron J. Fischer are collectively referred to as "Plaintiffs' Counsel."

In opposition, Defendants filed two declarations. (*See* Doc. Nos. 831-1; 831-3.) The first is by Elizabeth M. Pappy, partner at Burke, Williams & Sorenson, LLP, attorneys for Defendants. (Doc. No. 831-1.) The second declaration is by Defendants' retained fee expert, John O'Connor, principal of O'Connor and Associates, who opines on Plaintiffs' requested fees and hours. (Doc. No. 831-3.)

## II.     MOTION FOR ATTORNEYS' FEES

Plaintiffs filed the instant motion seeking an award of $2,111,562.63 in attorneys' fees in reaching the ADA settlement ("merits work"), $158,002.58 in fees for work on the instant motion ("fees work"), and $471,716.85 in costs.[1] (Doc. Nos. 807-1; 876.) Plaintiffs bring their motion for attorneys' fees and costs under the ADA, Rehabilitation Act, and California's private attorney general statute. (Doc. No. 807-1 at 17)(citing 42 U.S.C. § 12205 (ADA); 29 U.S.C. § 794a(b) (Rehabilitation Act); Cal. Code Civ. Proc. § 1021.5).) Defendants oppose Plaintiffs' motion, arguing that the requested amounts for attorneys' fees and expenses are "excessive." (Doc. No. 831 at 16.) For the reasons set forth below, the Court **GRANTS in part and DENIES in part** Plaintiffs' motion for attorneys' fees and litigation expenses.

### A.     Statutory Bases for Interim Attorneys' Fees Award

#### 1.     ADA Fee Shifting Provision

Section 12205 of the ADA stipulates:

In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party,

---

[1]     Plaintiffs originally sought $476,469.35 in costs (Doc. No. 807-1 at 7) but later reduced the amount after "Plaintiffs inadvertently included $4,751.50 in costs that should not be included in the cost award." (Doc. No. 867 at 13; *see also* Doc. No.867-7, "Grunfeld Reply Decl." ¶¶ 6–7.)

4

other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

42 U.S.C. § 12205. Under the ADA, "a plaintiff 'prevails' and thus is entitled to attorney's fees and costs, when he or she enters into a legally enforceable settlement agreement with the defendant." *Richard S. v. Dep't of Developmental Servs. of State of California*, 317 F.3d 1080, 1086 (9th Cir. 2003) (quoting *Barrios v. California Interscholastic Fed'n,* 277 F.3d 1128, 1134 (9th Cir.2002)).

### 2.    Rehabilitation Act

A prevailing party pursuant to the Rehabilitation Act (29 U.S.C. § 794(a)) is also entitled to reasonable attorneys' fees and costs. *See Doe by Gonzales v. Maher*, 793 F.2d 1470, 1499 (9th Cir. 1986), *aff'd as modified sub nom. Honig v. Doe*, 484 U.S. 305 (1988) ("Pursuant to 29 U.S.C. § 794a . . . , plaintiffs, as prevailing parties, are awarded reasonable attorneys' fees and costs in an amount to be determined upon the submission of appropriate affidavits by plaintiffs' counsel.")

### 3.    California Law

A party may recover fees under California Code of Civil Procedure Section 1021.5 for obtaining a public interest result when:

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Civ. Proc. Code § 1021.5; *see also Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1073 (N.D. Cal. 2010).

/ / /

/ / /

### 4. Interim Fee Award

Under federal law, "[a] party may be awarded attorney fees as a prevailing party at an interlocutory stage of the proceeding if the party 'prevails on the merits as to one or more of his or her claims.'" *Marks v. Clarke*, 102 F.3d 1012, 1034 (9th Cir. 1996), *as amended on denial of reh'g* (Feb. 26, 1997) (quoting *Ward v. County of San Diego,* 791 F.2d 1329 (9th Cir. 1986)). The same principle holds true under California state law. *See La Mirada Ave. Neighborhood Assn. of Hollywood v. City of Los Angeles*, 22 Cal. App. 5th 1149, 1160 (2018) ("[S]ection 1021.5 contemplates interim attorney fee awards for successes conferring a significant benefit before the matter is finally litigated.") (internal quotation marks and citation omitted).

### 5. Plaintiffs' Attorney Award

Plaintiffs assert, and Defendants do not dispute, that pursuant to the terms of the ADA Settlement, and in accordance with the ADA, Rehabilitation Act, and California Code of Civil Procedure Section 1021.5, Plaintiffs are the prevailing party and entitled to an interim award of attorneys' fees and costs. (*See* ADA Settlement ¶ 160 ("The parties agree that Plaintiffs and the disability subclass are entitled to reasonable attorneys' fees and costs on all issues covered by the Third Claim for Relief in Plaintiffs' Third Amended Complaint, including the 2023 ADA Order and this ADA Settlement and Order.").)

### B. Reasonable Attorneys' Fees

### 1. Legal Standard – Lodestar Method

Under both federal and California law, calculation of reasonable attorneys' fees is determined using the lodestar method. *See e.g.*, *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997) ("The customary method of determining fees . . . is known as the lodestar method."); *see also Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 222 (9th Cir. 2013) ("In general, California courts, like their federal counterparts, utilize the lodestar . . . approach to determine a proper fee award to a prevailing plaintiff in a civil rights law suit.")

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003)). The burden is on the party seeking fees to establish their reasonableness. *See Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007). "Though the lodestar figure is 'presumptively reasonable,' the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]'" *In re Bluetooth*, 654 F.3d at 941–42 (quoting first *Cunningham v. Cnty. of Los Angeles,* 879 F.2d 481, 488 (9th Cir. 1988) and then *Hanlon*, 150 F.3d at 1029). However, "adjustments to the lodestar 'are the exception rather than the rule.'" *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (quoting *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007).

### 2.    Reasonableness Analysis – Plaintiffs' Merits & Fees Work

Plaintiffs' Counsel seek a merits lodestar of $2,111,562.63 for their work securing the ADA Settlement through January 20, 2025. (Doc. No. 807-1.) They also seek $158,002.58 for their work through January 20, 2025, on the instant fees motion. (*Id.*) Defendants contest, arguing the requested rates are excessive (Doc. No. 831 at 15), and the requested number of hours are unreasonable (*id.* at 21).

The Court first analyzes the reasonableness of Plaintiffs' Counsels' requested hourly rates and then analyzes the reasonableness of the hours billed.

### 3.    Plaintiffs' Counsels' Rates

In determining a reasonable hourly rate, reasonable fees "are to be calculated according to the prevailing market rates in the relevant community[.]" *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996), *disapproved of on other grounds by Gaffney v. City of Allentown*, No. 97-4455, 1998 WL 32758 (E.D. Pa.

7

Jan. 7, 1998). Additionally, when a prevailing party has incurred fees over years without payment, the proper rate to use in calculating the lodestar is the current rate at the time of the award. *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016). Moreover, "a reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Determining the prevailing market rate requires "close attention . . . to the fees charged by lawyers of reasonably comparable skill, experience, and reputation." *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992*), opinion vacated in part on other grounds denial of reh'g,* 984 F.2d 345 (9th Cir. 1993) (internal quotation marks and citation omitted). Moreover, "the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). The exception is that "rates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Id.* (internal quotation marks and citations omitted.)

Here, Plaintiffs' Counsel is comprised of attorneys working at three different law firms: 1) RBGG, 2) Law Office of Aaron J. Fischer, and 3) DLA Piper. *See* Sec. I, *supra.* The Court considers the reasonableness of the hourly rates of each firm in turn.

RBGG's hourly rates range from $975 to $1,625 for partners, $750 to $850 for senior counsel, $500 to $600 for associates, and $350 for paralegals. (Doc. No. 807-1 at 20; *see also* Grunfeld Decl. In Support of Fees ¶ 18.) RBGG is lead counsel in this case (Young Decl. ¶ 7), and attests to spending 2,339 hours on its merits work (Grunfeld Decl. In Support of Fees ¶ 32). After applying a 5% across-the-board discount, RBGG requests $1,782,930.08 as its merits lodestar (*Id.* ¶ 33), and $144,910.63 as its fees lodestar (Swearingen Decl. ¶ 15).

Aaron Fischer's hourly rate is $900. (Fischer Decl. ¶ 7.) Plaintiffs seek an award of 216.7 hours of Mr. Fischer's merits time, amounting to $185,278.50. (*Id.*) Fischer also requests $4,617.00 for his fees work. (*Id.* ¶ 8.)

8

Finally, DLA Piper's hourly rates range from $1,670 for partner Christopher M. Young, and from $895 to $1,250 for associates. (Doc. No. 807-1 at 20–21.) Plaintiffs seek an award of 131.4 hours incurred by DLA Piper attorneys for merits work, amounting to $143,354.05. (Young Decl. ¶ 20.) DLA also seeks a fees work lodestar of $8,474. (*Id.* ¶ 21.)

In support of the reasonableness of RBGG's rates, Plaintiffs' Counsel submits three declarations from Counsel (*see generally* Grunfeld Decl.; Fischer Decl.; Young Decl.), as well as the declarations from their fee expert (*see* Pearl Decl.), and from two other disability rights attorneys (*see* Parks Decl; Center Decl). Because declarations from applicant attorneys "do not conclusively establish the prevailing market rate," *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 980 (9th Cir. 2008), especially where the "value of these declarations [can be] both self-serving and self-perpetuating," *Kochenderfer v. Reliance Standard Life Ins. Co*., 2010 WL 1912867, *4 (S.D. Cal. Apr. 21, 2010), the Court places greater weight on the declarations from outside counsel.

First, Plaintiffs' fee expert, Richard Pearl, finds Plaintiffs' Counsel's hourly rates reasonable "based on numerous findings of reasonable hourly rates made by San Diego courts." (Pearl Decl. ¶ 33.) In support, he cites to *Bloom v. City of San Diego*, No. 17-CV-02324-AJB-DEB, 2024 WL 4495512, at *6 (S.D. Cal. Oct. 15, 2024) ("*Bloom*") where this Court approved an unopposed motion for attorneys' fees including hourly rates ranging from $990 to $1,250 for 1999 law school graduates. (*Id.*) Pearl does not recognize, however, that the *Bloom* plaintiffs proactively incorporated a 53% across-the-board reduction in fees to enhance the reasonableness of their request, which this Court considered in approving their attorneys' fees. *See Bloom*, 2024 WL 4495512, at *6. Here, RBGG only proposes a 5% across-the-board cut. (Doc. No. 807-1 at 26.) Second, Pearl identifies a number of other courts that have approved RBGG's requested fees, yet none

are in this district, and none approved RBGG's increased 2025 rates.[2] Finally, in support of applying the San Francisco rates of RBGG and Aaron Fischer, Pearl finds based on his review of DLA Piper's Young Declaration, "that no other attorneys in the San Diego market were willing to take on the role of serving as lead counsel for Plaintiffs' Third Claim for Relief." (*Id.* ¶ 17 (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (upholding award of San Francisco rates in a Sacramento-based prison conditions case where counsel demonstrated "issues in prisoner civil rights cases are extremely complex" and "require experienced and sophisticated counsel")).) This claim is contested by Defendants' fee expert, which the Court considers below. (*See* O'Connor Decl. ¶ 44.)

Shawna Parks, Chief Litigation Officer at Disability Rights Advocates ("DRA"), states the hourly rates of RBGG and Aaron Fischer are "all in line with the rates [she] see[s] in the Bay Area and Los Angeles, and are comparable to DRA's rates." (*Id.* ¶ 39.) While well-intentioned, the Court does not find this persuasive given that this case is in San Diego, and "[a]s this Court has noted before, attorneys in the San Diego community charge different [lower] rates than 'attorneys who practice in our neighbor to the North.'" *Soler v. Cnty. of San Diego*, No. 14cv2470- MMA (RBB), 2021 WL 2515236, at *5 (S.D. Cal. June 18, 2021) (quoting *T.B. v. San Diego Unified Sch. Dist.*, 293 F. Supp. 3d 1177, 1189 (S.D. Cal. 2018)); *see also Erhart v. BofI Fed. Bank*, No. 15-CV-02287-BAS-NLS, 2023 WL 6382460, at *14 (S.D. Cal. Sept. 28, 2023) (court "assigned reduced weight" to declarations from "Los Angeles-based litigators" and "a partner at a Washington, D.C. firm" in

---

[2]    The cases where courts have approved RBGG's hourly rates and which are cited by Grunfeld and Pearl in their respective declarations (*see* Grunfeld Decl. In Support of Fees ¶ 19; Pearl Decl. ¶ 31), include: *U.S. v. Academy Mortgage Corporation*, No. 3:16-cv-02120-EMC, Dkt. 500 (N.D. Cal May 31, 2024) (awarding RBGG's requested 2023 rates for its fees work); *Prison Legal News v. Ryan*, No. CV-15-02245-PHX-ROS, 2024 WL 1195548, at *2 (D. Ariz. Mar. 20, 2024) (awarding RBGG's requested 2023 rates); *Prison Legal News v. Ryan*, No. 19-17449, 2023 WL 9190364, at *1 (9th Cir. Mar. 21, 2023) (awarding RBGG's requested 2022 rates plus multiplier); *Andrews v. Equinox Holdings, Inc.*, 570 F. Supp. 3d 803, 806 (N.D. Cal. 2021) (awarding RBGG's requested 2021 rates); *Hum. Rts. Def. Ctr. v. Cnty. of Napa*, No. 20-CV-01296-JCS, 2021 WL 1176640, at *11-12 (N.D. Cal. Mar. 28, 2021) (awarding RBGG's requested 2020 rates); *Nat'l Fed'n of the Blind v. Uber Techs. Inc.*, 14-cv-04083 (N.D. Cal. Nov. 8, 2019), Dkt. 203 at 5 (awarding RBGG its requested 2019 rates).

determining "the prevailing rate in the San Diego community"). Next, she states that her 2025 hourly rate is $1075 (Parks Decl. ¶ 29), and DRA's 2024 rates were approved by this Court in *Bloom*, 2024 WL 4495512, at *6. (*Id.* ¶ 36.) As previously noted, while Ms. Park's statement is factually accurate, Ms. Parks does not acknowledge that the attorneys' fees requested in *Bloom* were unopposed and Court considered the 53% reduction in attorneys' fees requested in its approval of the attorney hourly rates in *Bloom. See Bloom*, 2024 WL 4495512, at *6.

Finally, Claudia Center, Legal Director at Disability Rights Education and Defense Fund, Inc. evaluates the relief the ADA Settlement brings to the subclass by noting, "[t]he relief that Plaintiffs obtained . . . is extraordinary in its scope and will meaningfully improve the lives of the disability Subclass members while they are incarcerated in San Diego Jails." (Center Decl. ¶ 14.) While the result obtained for the class is one factor to consider in a lodestar analysis, *In re Bluetooth,* 654 F.3d at 942, Ms. Center does not directly opine on the reasonableness of Plaintiffs' Counsel's rates in this district.

Defendants proffer their own expert report. (*See generally* O'Connor Decl.) First, O'Connor claims that this case, "while styled a class action, did not have the complex issues involved in most class actions" including compared to the complex issues in *Bloom.* (*Id.* ¶¶ 22–23.) O'Connor opines, "[t]he rates here awarded should reflect those awarded in other ADA barrier/access cases, as opposed to complex civil rights actions. A failure to have a grab bar for a toilet in a private facility is the same issue as not having a grab bar for a toilet in a prison." (*Id.* ¶ 25.) Consistent with this proposal but acknowledging Mr. Fischer's and Ms. Grunfeld's experience in civil rights litigation, O'Connor recommends that lead counsel Ms. Grunfeld and Mr. Fischer be awarded $760 per hour. (*Id.* ¶ 27.)

In response, Plaintiffs characterize O'Connor statement that the underlying case is "not complex" as a "a routine playbook employed by . . . O'Connor, which has been soundly rejected by numerous courts." (Doc. No. 867 at 4 (citing *Perfect 10 v. Giganews*, CV 11-07098-AB SHX, 2015 WL 1746484, at *19 (C.D. Cal. Mar. 24, 2015), *aff'd* 847 F.3d 657 (9th Cir. 2015) (rejecting O'Connor's expert opinion that case was a

"straightforward copyright case" which the court found "is not supported by the record")).)
Plaintiffs also take issue with O'Connor's proposal to award Plaintiffs' Counsel hourly
rates based on "run-of-the-mill" ADA cases. (*Id.* at 6.) While the Court does not dispute
this case is a complex civil rights action, and its scope is wide ranging to multiple facilities
operated by the county, O'Connor's sentiment rings true with respect to the legal services
provided in settling Plaintiffs' ADA claim. The Jail's facilities had a myriad of ADA
violations, yet unlike some other complex class actions, the legal concepts at issue in
settling Plaintiffs' Third Claim are not complicated.

Second, O'Connor notes that generally, "the hourly rates for lawyers in the Southern
District of California are modestly below those of the Central and Northern District." (*Id.*
¶¶ 31, 57.) In support, he cites to the Real Rate Report stipulating the "median" litigation
partner rate in San Diego is $400 per hour, compared to $825 per hour in San Francisco;
the upper third quartile is $907 per hour in San Diego, compared to $1,208 per hour in San
Francisco; and the average litigation partner hourly rate is $568 in San Diego, compared to
$856 in San Francisco. (*Id.* ¶ 52; *see also* Doc. No. 831-4 at 13 ("Real Rate Report" for
San Diego and San Francisco).) The Court finds this data persuasive in demonstrating
litigation attorney rates in San Diego are lower than those in San Francisco as the Real Rate
Report is "a national publication that provides statistical data on attorneys' fees by location
and practice areas" that "has been cited with approval by courts inside and outside this
district." *Erhart*, 2023 WL 6382460, at *14 (collecting cases).

In response, Plaintiffs assert that their San Francisco rates should apply because
despite wide news coverage of deficiencies in the San Diego County Jail, no other lawyers
in San Diego brought the instant case against Defendants and no San Diego law firms have
the same prison litigation expertise as RBGG and Aaron Fischer. (*See* Young Decl.
¶ 7; Pearl Decl. ¶ 17.) Ms. Grunfeld also states that she reached out to a nonprofit that
specializes in jail litigation, who did not have the resources to bring the case, and to
"another prominent, large law firm in San Diego, which also declined." (Grunfeld Decl.
¶ 19.) O'Connor opines that Plaintiffs failed to submit sufficient evidence to support their

12

assertion of unavailability of local counsel. (*Id.* ¶ 43.) While the Court acknowledges the attorney declarations of Grunfeld, Young, and Pearl, the Court is not persuaded that the rejections of one nonprofit and one other law firm signify that no law firm or attorney in San Diego has the resources or capabilities to bring this case.

Confronted with conflicting expert opinions, the Court "may [also] rely on its own familiarity with the legal market to determine the reasonable rates of [counsel]." *Fitzgerald v. Pollard*, No. 20CV848 JM(MSB), 2024 WL 4596401, at \*11 (S.D. Cal. Oct. 28, 2024). Indeed, the "experienced trial judge is the best judge of the value of professional services rendered in his court[.]" *Serrano v. Priest*, 20 Cal.3d 25, 49 (1977).[3] As noted by Plaintiffs' fee expert, in *Bloom*, the Court approved rates "ranging from $990 to $1,250 for 1999 graduates, $1,200 for a 2006 graduate, $1,125 for a 2002 graduate, a $1,050 hour rate for a 1998 graduate, $585 for a 2017 graduate, $440 for a 2022 graduate, and $280 to $390 rates for paralegals" (Pearl Decl. ¶ 33), within the context of a 53% across-the-board reduction to the plaintiffs' lodestar. *See Bloom*, No. 2024 WL 4495512. Other courts in this district approved slightly lower attorney fees in civil rights cases. *See Fitzgerald* 2024 WL 4596401, at \*11 (in civil rights class action, approving hourly rates of $825 for partner with 31 years' experience, $775 for senior associate, and $525 for 4-year attorney as "within the range normally charged within this legal community"); *see also Soler v. Cnty. of San Diego*, No. 14cv2470- MMA (RBB), 2021 WL 2515236, at \*5 (S.D. Cal. June 18, 2021)

---

[3]    The Court notes that the California Supreme Court's 1895 statement still rings true today: "Attorneys are inclined to place a very high estimate upon the value of their services when rendered in important litigation; and, also, inclined to look with kindly eyes and sympathetic feelings upon the efforts of brother attorneys when engaged in establishing before the court the value of services performed . . . [W]hen upon the witness-stand as experts, they entertain most liberal views as to what should be the amount of a brother attorney's allowance and hold large ideas as to the importance of the litigation in which he has been engaged. It is well, and it is the law, that the court should temper this kind of evidence with its own calm judgment, based upon the amount and kind of labor performed, and to thereupon make its decree." *Freese v. Pennie*, 110 C. 467, 469 (1895).

(finding $650 per hour reasonable for experienced civil rights trial attorney with 25 years' experience and collecting cases).

Here, RBGG serves as lead counsel and has performed the vast majority of work in the litigation. (Grunfeld Decl. ¶¶ 2-3, 32-34; Young Decl. ¶ 7.) Based on Plaintiffs' evidence citing to approved attorney rates in this district, which Plaintiffs' expert describes as "highly probative," (Pearl Decl. ¶ 33), the Real Rate Report data, and the Court's own understanding of prevailing rates in this district, the Court finds it proper in its discretion to reduce RBGG's rates by 23% such that the highest approved hourly rate of an RBGG attorney mirrors the highest approved hourly rate in the *Bloom* civil rights case, which was $1,250. *See Bloom*, 2024 WL 4495512, at *6. Here, reducing RBGG's rates by 23% sets Sanford Jay Rosen's hourly rate at $1,251.25. To the Court's knowledge, without accounting for the 53% across-the-board reduction in fees that *Bloom* plaintiffs' counsel self-imposed to enhance the reasonableness of their request, the approved hourly rates in *Bloom* were the highest approved attorney rates in any civil rights case in the district. (*See* Pearl Decl. ¶ 33 (listing the approved attorney rates in S.D. Cal cases).) While Defendants' expert proposed assigning rates to RBGG's lead attorneys "topping out at $760 per hour" (*see* O'Connor Decl. ¶¶ 42, 55), based in part on a finding that *Bloom* "is far different from this case in terms of the complexity of the issues and skill needed to litigate them" (*id.* ¶ 24), the Court finds RBGG's expertise in prison class actions and the favorable outcome of the ADA Settlement merit a higher award.

Given Aaron Fischer's expertise in disability access and accommodations and prison litigation (*see* Fischer Decl. ¶¶ 2, 4–6; Pearl Decl. ¶ 29), the Court finds his hourly rate of $900 reasonable. *See Bloom*, 2024 WL 4495512, at *6 (approving rates ranging from $990 to $1,250 for 1999 graduates, $1,200 for a 2006 graduate, $1,125 for a 2002 graduate, $1,050 for a 1998 graduate).

By contrast, DLA Piper's rates are significantly higher than the rates of lead counsel and of those typically approved in the district. Defendants find DLA Piper's billing suggests that its lawyers primarily conducted interviews with incarcerated persons, yet

DLA Piper seeks "hourly rates for these brand-new attorneys in the amounts of $895, $990, $1085, and $1145." (Doc. No. 831 at 11.) In response, Young states, "DLA attorneys assisted with FRCP Rule 30(b)(6) depositions, contributed to the preliminary injunction motion as to ADA issues, drafted declarations filed in this action, interviewed class members, and provided comments on the settlement of the ADA claim." (Doc. No. 867-10 ¶ 3.) Young also declares his hourly rate "is within the range of reasonable and customary rates for an attorney in San Diego with my level of experience and expertise in handling very complex class action litigation such as that at issue here." (Young Decl. ¶ 10.)

For DLA Piper's legal services rendered in this case, the Court is not persuaded DLA Piper's requested fees are reasonable. As noted by Young himself, DLA Piper does not have the corrections litigation expertise possessed by lead counsel (*id.* ¶ 7), and despite DLA Piper's proclaimed experience in complex class actions, in this case, DLA Piper does not purport to have worked on Plaintiffs' class certification briefing. (*See generally id.*) Moreover, neither Young nor Pearl cite to any cases in this district awarding an hourly rate of $1,250 for an associate. (*See generally id.*; Pearl Decl.) Some securities cases, where prevailing market rates tend to be higher than civil rights cases, have found rates up to $875 for an associate to be reasonable. *See e.g.*, *In re Qualcomm Incorp. Sec. Litig.*, No. 3:17-cv-00121-JO-MSB, Doc. Nos. 441 (S.D. Cal. Aug. 23, 2024), 450 (S.D. Cal. Sept. 27, 2024) (approving hourly rates ranging from $425 to $875 for associates); *Ziegler v. GW Pharms.*, PLC, No. 21-CV-1019-BAS-MSB, 2024 WL 1470532, at *8 (S.D. Cal. Apr. 3, 2024) (finding hourly rates of $975 for a managing partner, $850 for a senior associate, $750 for of counsels, $475–575 for associates, $350 for staff attorneys, and $275 for support staff reasonable). Accordingly, based on prevailing market rates for the legal services DLA provided in this civil rights case, the Court reduces DLA Piper's hourly rates by 40% to more closely align with the hourly rates of RBGG's attorneys of similar seniority.

The approved hourly rates accounting for the 23% reduction to RBGG's rates and 40% reduction to DLA Piper's rates are reflected in the table below.

| Attorney | Position | 2025 Requested Rate | Approved Reduced Rate |
|---|---|---|---|
| **RBGG** | | | |
| Sanford Jay Rosen | Partner | $1,625 | $1,251.25 |
| Gay Crosthwait Grunfeld | Partner | $1,325 | $1,020.25 |
| Van Swearingen | Partner | $975 | $750.75 |
| Michael Nunez | Senior Counsel | $850 | $654.50 |
| Priyah Kaul | Senior Counsel | $750 | $577.50 |
| Eric Monek Anderson | Associate | $600 | $462.00 |
| Hannah Chartoff | Associate | $575 | $442.75 |
| Benjamin Holston | Associate | $500 | $385.00 |
| Ellinor Heywood | Paralegal | $350 | $269.50 |
| Kedra Chan | Paralegal | $350 | $269.50 |
| Lindsy Newfeld | Paralegal | $350 | $269.50 |
| **Law Office of Aaron J. Fischer** | | | |
| Aaron J. Fischer | Principal | $900 | $900 |
| **DLA Piper** | | | |
| Christopher M. Young | Partner | $1,670 | $1,002 |
| Oliver Kiefer | Associate | $1,250 | $750 |
| Isabella Maria Neal | Associate | $1,200 | $720 |
| Chelsea Rissmiller | Associate | $1,145 | $687 |
| Alberto Julian Corona | Associate | $1,085 | $651 |
| Mary Grace Braun | Associate | $990 | $594 |

| Matt Danaher | Associate | $895 | $537 |
| Joseph Jaein Kim | Associate | $895 | $537 |

Without yet considering the reasonableness of the claimed hours billed by Plaintiffs' Counsel, the revised lodestars which incorporate the above rates would be the following:

- **RBGG merits lodestar:** For 2,339 hours billed for merits work in connection with Plaintiffs' Third Claim through January 20, 2025, RBGG requests $1,782,930.08. (Grundfeld Decl. ¶¶ 32–33.) After applying a 23% reduction in attorney hourly rates to arrive at a reasonable rate in this case, the RBGG merits lodestar is $1,372,856.16.

- **RBGG fees lodestar:** For 160.8 hours billed for fees work in preparing Plaintiffs' instant motion, RBGG requests $144,910.63. (Swearingen Decl. ¶ 15.) After applying a 23% reduction in attorney hourly rates to arrive at a reasonable rate in this case, the RBGG fees lodestar is $111,581.181.

- **Aaron Fischer merits lodestar:** For 216.7 hours billed for merits work in connection with Plaintiffs' Third Claim through January 20, 2025, Aaron Fischer requests $185,278.50. (Fischer Decl. ¶ 7.) Because the Court finds his hourly rate of $900 reasonable, his merits lodestar is not decreased due to any reduction in rate.

- **Aaron Fischer fees lodestar:** For 5.4 hours billed for fees work, Mr. Fischer requests $4,617.00. Because the Court finds his hourly rate of $900 reasonable, his fees lodestar is not decreased due to any reduction in rate.

- **DLA Piper merits lodestar:** For 131.4 hours billed for merits work in connection with Plaintiffs' Third Claim through January 20, 2025, DLA Piper requests $143,354.05. (Young Decl. ¶ 20.) After applying a 40% reduction in attorney hourly rates to arrive at a reasonable rate in this case, the DLA merits lodestar is $86,012.43.

- **DLA Piper fees lodestar:** For 6.9 hours billed for fees work for fees work in preparing Plaintiffs' instant motion, DLA Piper requests $8,474.95. (Young Decl.

17

¶ 21.) After applying a 40% reduction in attorney hourly rates to arrive at a reasonable rate in this case, the DLA fee lodestar is $5,084.97.

The Court now considers the reasonableness of Plaintiffs' Counsels' hours and time entries.

### 4. Reasonable Hours

"In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987). "Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.* Furthermore, "[w]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." *Gonzalez v. City of Maywood*, 729 F.3d 11196, 1203 (9th Cir. 2013) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992)). If a percentage cut to claimed hours is warranted, the court "must 'set forth a concise but clear explanation of its reasons for choosing a given percentage reduction.'" *Id.* (quoting *Gates*, 987 F.2d at 1400). However, "[t]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Id.* (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

To enhance the reasonableness of Plaintiffs' Counsels' fee request, RBGG wrote off the time of all timekeepers who claimed fewer than 10 hours to the case and wrote off meetings between attorneys. (Swearingen Decl. ¶¶ 9–10.) Aaron Fischer applied 4.5 hours of discrete billing judgment reductions (Fischer Decl. ¶ 7), and DLA Piper applied 8.2 hours of discrete billing judgment reductions (Young Decl. ¶ 20). Moreover, Plaintiffs assert they are not claiming attorneys' fees "for a substantial number of time entries for which work related to the Third Claim for Relief was significantly intermingled with work

related to other claims in this action." (Doc. No. 807-1 at 26.) Finally, to further account for time that could be considered duplicative, administrative, or excessive, all Plaintiffs' Counsel reduced their claims by an additional 5% across the board. (*See id.* ¶ 11; Fischer Decl. ¶ 7; Young Decl. ¶ 20.) Plaintiffs' Counsel estimates in total, they have reduced the merits work lodestar by 14% and the fee motion lodestar by 24.9%. (Doc. No. 807-1 at 26, 29.)

In response, Defendants assert the requested number of hours are still unreasonable. (Doc. No. 831 at 21.) First, Defendants argue Plaintiffs engaged in overbroad discovery not calculated to lead to the discovery of admissible evidence. (Doc. No. 831 at 19 ("The theme of the litigation for Plaintiffs was to over-litigate . . ..").) Second, Defendants assert Plaintiffs overstaffed and that "it was excessive and unnecessary for more than one attorney to attend depositions, meet and confer conferences, and most hearings." (*Id.* at 22.) Third, Defendants posit that reimbursement for hours billed in preparation of unsuccessful claims is unwarranted. (*Id.* at 21, 23, 25.) The Court addresses Defendants' arguments in turn.

### i.    Overreaching Discovery

In support of Defendants' argument that Plaintiffs overbilled for excessive discovery, Defendants point to Judge Leshner's Order following a motion to compel hearing where he found Plaintiffs' approach in serving 252 requests for production of documents ("RFPs") "unfairly shifts the burden to Defendants to define the universe of documents Plaintiffs require and prejudices the Court and the parties alike by building delay into an already protracted course of discovery." (Doc. No. 831 at 20–21 (citing Doc. No. 536 at 4–5).) He further found that Plaintiffs' "approach is inconsistent with . . . Plaintiffs' obligation to reasonably tailor their discovery and to endeavor in good faith to 'control[] the expense and time demands of [this] litigation.'" (*Id.* (quoting *Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016)).) In response, Plaintiffs state they did not claim any time in the instant fee motion for work on their motion to compel discovery or for attending the hearing. (Doc. No. 867 at 11 (citing Doc. No. 867-8 "Swearingen Reply Decl." ¶ 4).) Upon a review of Plaintiffs' bills, it appears that 5.1 hours

19

are attributed to drafting RFPs. (Swearingen Decl. at 31, 54, 59, 61, 74, 111, 113.) However, there are far more, in fact, hundreds of generic entries regarding "discovery." (*See id.* at 27–229; *see also* O'Connor Decl. ¶ 79 ("Plaintiffs' discovery billings are particularly excessive, given the expansive discovery sought that was ultimately narrowed by the Court.").) Given Judge Leshner's concerns and frustration with the overbreadth of Plaintiffs' discovery, (*see* Doc. No. 536 at 4–5), the Court is hesitant to assume that Plaintiffs' billing reductions adequately account for all unreasonable hours billed to discovery that Judge Leshner characterized as "protracted" and which "prejudice[d] the Court." (*Id.*)

### ii. Overstaffing

Second, Defendants argue Plaintiffs overstaffed and that "it was excessive and unnecessary for more than one attorney to attend depositions, meet and confer conferences, and most hearings." (Doc. No. 831 at 22.) In support, Defendants' Counsel, Elizabeth Pappy states, "[t]here were two attorneys present for the February 10th inspection of Rock Mountain along with two experts, and two attorneys plus two experts at the inspection of Central Jail. There were three attorneys present for almost every settlement conference meeting whether by Zoom or in person." (Pappy Decl. ¶ 20; *see also* O'Connor Decl. ¶ 79 ("Three attorneys . . . attended the March 14 and 15 PMK depositions.").)

Plaintiffs respond, "multiple attorneys conferencing, attending important case events, and working together on significant projects is the norm in complex cases like this one and is commonly paid for by fee paying clients." (Doc. No. 867 at 11.) With the respect to the number of attorneys present at the expedited Rule 30(b)(6) depositions, Plaintiffs claim the total number of hours billed for three of the five depositions was 29 hours of time for two additional attorneys, which amount to 1.08% of the total claimed merits time "and is subsumed under billing reductions already made." (*Id.* at 12.)

Indeed, "courts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do."

*Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). While "[p]articipation of more than one attorney does not necessarily amount to unnecessary duplication of effort[,]" *see id.*, Plaintiffs' decision to have three attorneys billing at depositions or settlement conferences for this case is excessive.

### iii.    Unsuccessful Motions and Claims

Third, Defendants object to hours billed for preparing and drafting Plaintiffs' unsuccessful motions and claims. For example, Defendants protest reimbursement for fees related to Plaintiffs' noticing the deposition of Sheriff Kelly Martinez, which Defendants characterize as a "publicity stunt," as well as Plaintiffs' motion to compel her deposition, which was denied under the Apex doctrine. (Doc. No. 831 at 21, 23.) Defendants also challenge the number of hours billed in advancing Plaintiffs' Seventh Claim for Overincarceration of Disabled People, which the Court dismissed. (*Id.* at 25.) In response, Plaintiffs acknowledge they "inadvertently claimed 0.5 hours for work on Sheriff Martinez' deposition and 1.1 hours on Plaintiffs' Seventh Claim, totaling less than six one-hundredths of one percent (0.059 %) of claimed time, much less than the billing reduction already taken." (Doc. No. 867 at 12.) The Court notes while it is proper to reduce the number of hours billed related to unsuccessful claims, *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1150 (9th Cir. 2001), here, Defendants do not identify any additional entries that would fall within this category besides the two entries noted by Plaintiffs, which is a small enough portion of time to be encompassed in Plaintiffs' 5% across-the-board cut for duplicative or unnecessary billing.

### iv.    Hours Billed to Instant Fees Motion

Defendants' expert, O'Connor, critiques the number of timekeepers who worked on the fee application and finds the 41.6 hours for communications among counsel and with Plaintiffs' fees expert as "excessive." (O'Connor Decl. ¶ 84 ("The excessive fee motion communications are emblematic of the excessive co-counsel communications that permeated all three phases [of litigation].").) While Plaintiffs respond that the communications were necessary and O'Connor fails to account for Plaintiffs' 24.9% billing

judgment reductions related to preparing the fees motion (Doc. No. 867 at 13), Plaintiffs do not respond if the hours reduced in "billing judgments" reflect those 41.6 hours for communications among counsel or other extraneous hours. The Court agrees with Defendants that the sheer quantity of hours billed to these communications appears excessive.

### v.    Time Entries for Clerical Tasks

"In calculating the lodestar, courts typically exclude time spent on clerical or ministerial tasks because such tasks are properly considered part of an attorney's overhead and are reflected in his or her hourly rate." *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 461 (C.D. Cal. 2014).

The Court identifies eight (8) time entries totaling 2.5 hours billed by Plaintiffs' Counsel regarding "oversee[ing] e-filing" that are duplicative of RBGG's paralegals' time entries for e-filing. *See* Doc. No. 807-3 at 37 (GCG billing .1 hours with description, "Oversee e-filing"); *id.* at 42 (GCG billing .2 hours with description, "Oversee e-filing of statement"); *id.* at 94 (GCG billing .4 hours for "Oversee e-filing of motions for PI and provisional class cert"); *id.* at 108 (GCG billing .4 hours for "Oversee e-filing of same"); *id.* at 110 (GCG billing .3 hours for "Oversee e-filing of supple declaration ISO Pl."); *id.* at 113 (GCG billing .8 hours for "Oversee e-filing of stipulation and joint motion for approval"); *id.* at 120 (GCG billing .2 for "Oversee e-filing of objections"); *id.* at 189 (GCG billing .1 for "Oversee KC [paralegal] e-filing of motion"). While the Court appreciates that Plaintiffs proactively elected to reduce their lodestar by 5% to account for administrative time, the Court advises Plaintiffs' Counsel to not seek reimbursement for such clerical tasks.

### vi.    10% Reduction in Hours

While Defendants' expert recommends discounting 20% to 40% of Plaintiffs' hours (*see* O'Connor Decl. ¶¶ 70, 81, 85), the Court recognizes that Plaintiffs proactively cut 5% of their hours. However, based on evidence demonstrating Plaintiffs' overreaching discovery, overstaffing at depositions and settlement conferences, and hours spent

22

conferencing related to the instant fees motion, the Court in its discretion reduces Plaintiffs' hours by 10%. *See Gonzalez*, 729 F.3d at 1203. Accordingly, accounting for the rate and hours reductions, the new lodestar values are calculated as follows:

- **RBGG merits lodestar:** A 10% reduction to RBGG's merits lodestar equates to $1,235,570.54.[4]

- **RBGG fees lodestar:** A 10% reduction to RBGG's fees lodestar equates to $100,423.06.[5]

- **Aaron Fischer merits lodestar:** A 10% reduction to Mr. Fischer's merits lodestar equates to $166,750.65.[6]

- **Aaron Fischer fees lodestar:** A 10% reduction to Mr. Fischer's fees lodestar equates to $4,155.30.[7]

- **DLA Piper merits lodestar:** A 10% reduction to DLA Piper's merits lodestar equates to is $77,411.19.[8]

- **DLA Piper fees lodestar:** A 10% reduction to RBGG's fees lodestar equates to $4,576.47.[9]

### 5.    Whether a Multiplier is Warranted

Pursuant to both federal and California law, the court has discretion to apply a multiplier to the lodestar figure and adjust it upward or downward. *See In re Bluetooth*, 654 F.3d at 941–42; *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001). The

---

[4]    After applying the 23% reduction in RBGG's hourly rates, RBGG's merits lodestar was $1,372,856.16. A 10% reduction due to excessive hours equates to $1,235,570.54.

[5]    After applying the 23% reduction in RBGG's hourly rates, RBGG's fees lodestar was $111,581.18. A 10% reduction due to excessive hours equates to $100,423.06.

[6]    Mr. Fischer's merits lodestar was $185,278.50. A 10% reduction due to excessive hours equates to $166,750.65.

[7]    Mr. Fischer's fees lodestar was $4,617.00. A 10% reduction due to excessive hours equates to $4,155.30.

[8]    After applying the 40% reduction to DLA Piper's hourly rates, DLA Piper's merits lodestar was $86,012.43. A 10% reduction due to excessive hours equates to $77,411.19.

[9]    After applying the 40% reduction to DLA Piper's hourly rates, DLA Piper's fees lodestar was $5,084.97. A 10% reduction due to excessive hours equates to $4,576.47.

"reasonableness" factors a Court may consider under federal law include "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth,* 654 F.3d at 942 (internal quotation marks and citations omitted). Similarly, under California law, a court may adjust the lodestar based on factors including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Ketchum*, 24 Cal. 4th at 1132. However, the court "should not consider these factors to the extent that they are already encompassed within the lodestar." *Id.* at 1138. Under federal law, the lodestar is "presumptively reasonable," *Cunningham,* 879 F.2d at 488, and "adjustments to the lodestar 'are the exception rather than the rule.'" *Stanger*, 812 F.3d at 738 (quoting *Fischel*, 307 F.3d at 1007).

Here, Plaintiffs do not argue that the Court should apply a multiplier (*see generally* Doc. No. 807-1), and the Court already considered the novelty and difficulty of the legal questions at issue in Plaintiffs' ADA claim, the skill and expertise of Plaintiffs' Counsel, and the delay in receiving payments, in arriving at a reasonable lodestar, *see* Sec. II (B) and II (C), *supra*. Accordingly, the Court awards the adjusted lodestar values without applying an additional multiplier.

### 6. Conclusion

In independently reviewing Plaintiffs' Counsels' rates and billing records, the Court finds justification in reducing the rates of RBGG by 23% and of DLA Piper by 40% to align with prevailing market rates for civil rights work in this district. Due to excessive billing for inefficient and overbroad discovery as well as overstaffing, the Court in its discretion makes a 10% across-the-board reduction in the number of hours Plaintiffs billed to arrive at a reasonable lodestar figure. Accordingly, the Court **GRANTS in PART** Plaintiffs' motion for reasonable attorneys' fees in connection with Plaintiffs' merit work and fees work. Specifically, the Court makes the following awards:

- RBGG: $1,235,570.54 as its merits work lodestar, and $100,423.06 for its fees work lodestar, totaling **$1,335,993.60** in attorneys' fees.

- Aaron Fischer: $166,750.65 as his merits work lodestar, and $4,155.30 as his fees work lodestar, totaling **$170,905.95** in attorneys' fees.

- DLA Piper: $77,411.19 as its merits work lodestar and $4,576.47 as its fees work lodestar, totaling **$81,987.66** in attorneys' fees.[10]

In sum, the Court **AWARDS** $1,588,887.21 in attorneys' fees to Plaintiffs' Counsel.

### C.    Costs

Plaintiffs seek a total of $471,716.85 in costs, with $438,608.45 allocated to cover Plaintiffs' ADA expert, Syroun Sanossian, who worked at SZS Engineering, Inc. (Doc. Nos. 807-3 at 8, ¶ 18; 807-1 at 30–31; 867 at 13.) In support, Plaintiffs filed invoices and expense records to substantiate their request. (*See* Swearingen Decl. at 234–522; Young Decl. at 41–67; Fischer Decl. at 24–82.)

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). "In assessing the reasonableness of the reimbursement request, the Court is 'reminded that it is generally not the practice of an attorney to bill a client for every expense incurred in connection with the litigation in question,' and 'the attorney is expected to absorb some of the cost of doing business as an attorney.'" *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)).

---

[10]    A 20% reduction to DLA Piper's merits work lodestar ($143,354.05) equates to $114,683.24 ($143,354.05 - 28,670.81 = $114,683.24). A 20% reduction to DLA Piper's fees work lodestar ($8,474.95) equates to $6,779.96. ($8,474.95 - $1,694.99 = $6,779.96.)

### 1.    Expert Costs

Plaintiffs' Counsel requests reimbursement for $438,608.45 in expert costs incurred by Plaintiffs' ADA expert, Syroun Sanossian, a Certified Access Specialist ("CASp"), who works at SZS Engineering. Ms. Sanossian drafted one 237-page report identifying barriers to disability access at Rock Mountain. (Grunfeld Decl. ¶ 53.) She also drafted a 358-page report identifying barriers to disability access at Central Jail. (*Id.* ¶ 55.) Plaintiffs represent that "[f]inding and retaining Ms. Sanossian was no easy task. There are a few CASp-certified ADA experts in the state of California with expertise assessing correctional systems." (Grunfeld Decl. ¶ 46.) Plaintiffs continue:

> The ADA and the California Building Code both contain highly technical accessibility standards, about which Ms. Sanossian possesses vast expertise. Without Ms. Sanossian's expertise, Plaintiffs could not have identified or remedied the inaccessible facilities or revised the inadequate policies.

(*Id.* ¶ 110.) Plaintiffs contend that her "most time-consuming tasks pertained to inspecting six different [J]ail facilities . . . and drafting reports documenting the findings of those inspections." (*Id.*) Notably, Defendants comment that "[t]he billing by Ms. Sanossian is certainly high as compared to that of Defendants' physical barrier expert . . . and Defendants' policy and procedure expert, . . . however, the need for the *expert* work is not in dispute." (Doc. No. 831 at 18–19.)

Upon request by the Court (Doc. No. 941), following the July 31, 2025 hearing, Plaintiffs' Counsel submitted the final expert reports of Ms. Sanossian as well as Defendants' expert reports for the Court's review. (*See* Doc. Nos. 945-1–945-4.) While the Court also requested itemization of SZS Engineering invoices because the invoices Plaintiffs' Counsel provided to the Court provide no detail or description of work to allow the Court to determine the reasonableness of the charges incurred (Doc. No. 941 ¶ 6), at the July 31, 2025 hearing, Plaintiffs' Counsel represented that itemized invoices for SZS Engineering do not exist. (Doc. No. 942.)

While the Court is impressed by the detail and thoroughness of Ms. Sanossian's report that exceeds 1,700 pages (*see* Doc. No. 945-1), without greater itemization to see if

Ms. Sanoissian's billing reflects time traveling or performing administrative tasks, compared to investigating the Jail's conditions or drafting her expert report or declarations, the Court is unable to fully assess the reasonableness of the lofty charge. Therefore, in its discretion, the Court decreases the expert costs by 10%. *See Ali v. Franklin Wireless Corp.*, No. 21-CV-00687-AJB-MSB, 2024 WL 5179910, at *27 (S.D. Cal. Dec. 19, 2024) (declining to reimburse plaintiffs' counsel for investigator charges where "invoice lacks sufficient detail to allow the Court to determine the reasonableness of the charges incurred").

Accordingly, after applying a 10% reduction to the SZS Engineering costs, the Court awards Plaintiffs $394,747.61 for expert costs.

## 2. Remaining Costs

Plaintiffs' remaining costs are "routine litigation expenses" including "flights, hotels, meals, and transportation in connection with site inspections, a court hearing and settlement conferences, as well as sign language interpreter fees and court reporter and travel costs associated with taking depositions." (Grunfeld Decl. ¶ 115); *see also In re Immune Response*, 497 F. Supp. 2d at 1177 (approving reimbursement of "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees").

The single cost Defendants find particularly unreasonable is Plaintiffs' lead counsel's use of $113.45 and $151.55 Pacific Town Car rides for airport transportation in San Francisco. (Doc. No. 831 at 9–10, 26.) Defendants note "[t]he other attorneys in her office do not use such expensive modes of transportation . . . [.]" (*Id.* at 26.) Based on the receipts filed by Plaintiffs' Counsel, most attorneys used Uber for transportation to and from the airport in connection with their travel to San Diego with expenses ranging from $9.23 to $67.10. (*See* Swearingen Decl. at 195, 197.) The total amount Ms. Grunfeld seeks in reimbursement for use of Pacific Town Car charges is $719.65. (Grunfeld Reply Decl. ¶ 2.)

27

In response, Ms. Grunfeld states she "only seek[s] reimbursement for Pacific Town Car when [she] needed to be picked up at [her] home at 4:15 a.m. to make the 6 a.m. flight from San Francisco to San Diego. The 6 a.m. flight was the only way to ensure my arrival by 9:00 a.m. for the settlement conferences." (*Id.* ¶ 3.) Further, she states Defendants' concern of the cost "is misplaced" because Pacific Town Car is "less expensive than spending the night in San Diego." (*Id.* ¶ 4.) Finally, she states that "[t]he reason I chose to use Pacific Town Car, which is admittedly more expensive than an Uber, Lyft or taxi, is because I live in an area of San Francisco where it is not guaranteed that a taxi, Uber, or Lyft will arrive at around 4 a.m. Pacific Town Car guarantees that they will do so." (*Id.* ¶ 5.)

The Court is unpersuaded by Ms. Grunfeld's statements. More affordable ride sharing or taxi services can be reserved ahead of departure. In its discretion, the Court reduces the reimbursement of costs for the Pacific Town Cars by half, which more closely resembles Plaintiffs' other attorneys' transportation reimbursement requests. Accordingly, the Court reduces Plaintiffs' Counsels' award for costs by $359.82.

## V.    CONCLUSION

Based on the foregoing, the Court:

1. **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Attorneys' Fees. (Doc. No. 807.) Specifically, the Court:

   i.    Reduces RBGG's rates by 23% and the hours billed by RBGG by 10% and **AWARDS $1,335,993.60** in attorneys' fees for merits and fees work to RBGG;

   ii.   Reduces the hours billed by Aaron Fischer by 10% and **AWARDS $170,905.95** in attorneys' fees.

   iii.  Reduces DLA Piper's rates by 40% and the hours billed by DLA Piper by 10% and **AWARDS $81,987.66** in attorneys' fees for merits and fees work to DLA Piper; and

20-cv-00406-AJB-DDL

iv.    **GRANTS IN PART** Counsel's request for costs and **AWARDS** Counsel a reduced amount of **$427,496.18**.[11]

**IT IS SO ORDERED.**

Dated:  August 7, 2025

Hon. Anthony J. Battaglia
United States District Judge

---

[11]    $427,496.18 is the value of Plaintiffs' requested reimbursement for costs of $471,716.85, reduced by $43,860.85 (10% of Plaintiffs' expert costs) and $359.82 (Plaintiffs' Counsel use of Pacific Town Car for airport commuting). *See* Sec. IV(C)(2), *supra*.