Susan E. Coleman (SBN 171832)
E-mail:  scoleman@bwslaw.com
Martin Kosla (SBN 247224)
E-mail:  mkosla@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600
San Diego, CA  92101-8474
Tel:  619.814.5800 Fax:  619.814.6799

Elizabeth M. Pappy (SBN 157069)
E-mail:  epappy@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Ste. 1000
San Jose, CA  95113-2336
Tel:  408.606.6300 Fax:  408.606.6333

Attorneys for Defendants
COUNTY OF SAN DIEGO, SAN DIEGO
COUNTY SHERIFF'S DEPARTMENT and
SAN DIEGO COUNTY PROBATION
DEPARTMENT

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated, | Case No. 3:20-cv-00406-AJB-DDL |
| | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| Plaintiffs, | Date:   November 20, 2025 |
| v. | Time:   2:00 p.m. |
| | Ctrm:   4A |
| SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive, | Judge:   Anthony J. Battaglia |
| Defendants. | |

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4927-8994-9813 v1

Case No. 3:20-cv-00406-AJB-DDL
DEFTS' OPPO TO PL'S MPI

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................ 1

II.     LEGAL ARGUMENT ........................................................................ 2

        A.      Legal Standard for the Drastic Remedy of Injunctive Relief ................ 2

        B.      Plaintiffs Cannot Demonstrate A Likelihood Of Success On The
                Merits and/or A Substantial Threat Of Irreparable Future Harm .......... 4

                1.      Plaintiffs Failed To Exhaust Administrative Remedies ............... 4

                2.      Plaintiffs Fail to Establish *Monell* Liability ................................. 4

                3.      Plaintiffs Lack Standing .............................................................. 5

                4.      Plaintiffs' Request for Injunctive Relief is Premature and
                        Moot Given the Changes Made and In Process............................ 6

                5.      Plaintiffs Do Not Meet the Standard of Deliberate
                        Indifference .............................................................................. 12

                6.      Plaintiffs Do Not Face Irreparable Harm Without an Order ...... 14

        C.      Plaintiffs' Proposed Injunction Fails ..................................................... 16

        D.      If The Injunction Is Granted, The Court Should Require A Bond
                That Covers Defendants' Compliance Costs ........................................ 18

III.    CONCLUSION ................................................................................. 19

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4927-8994-9813 v1                                    i                    Case No. 3:20-cv-00406-AJB-DDL
                                                                         DEFTS' OPPO TO PL'S MPI

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Federal Cases

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) .................................................................... 3

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ...................................................................... 5

*Caribbean Marine Servs. Co. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988) ...................................................................... 3

*Castro v. Cnty. of Los Angeles*,
  833 F.3d 1060 (9th Cir. 1992) .................................................................... 5

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ............................................................................... 2, 4

*Coleman v. Wilson*,
  912 F.Supp. 1282 (E.D. Cal. 1995) ........................................................ 14

*Connick v. Thompson*,
  131 S.Ct. 1350 (2011) ................................................................................ 4

*Dahl v. HEM Pharm. Corp.*,
  7 F.3d 1399 (9th Cir. 1993) ........................................................................ 3

*Dougherty v. City of Covina*,
  654 F.3d 892 (9th Cir. 2011) ...................................................................... 4

*Earth Island Inst. v. Carlton*,
  626 F.3d 462 (9th Cir. 2010) ...................................................................... 3

*Frost v. Agnos*,
  152 F.3d 1124 (9th Cir. 1998) .................................................................. 13

*Hernandez v. City of San Jose*,
  No. 16-CV-03957-LHK, 2019 WL 4450930 (N.D. Cal. Sept. 17,
  2019) .......................................................................................................... 6

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) .................................................................... 6

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

4927-8994-9813 v1                                ii                      Case No. 3:20-cv-00406-AJB-DDL
                                                                          DEFTS' OPPO TO PL'S MPI

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
   174 F.3d 411 (4th Cir. 1999) ................................................................. 18

*Hutchinson v. United States*,
   838 F.2d 390 (9th Cir. 1987) ................................................................ 13

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003) ................................................................ 18

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009) ................................................................ 3

*Leer v. Murphy*,
   844 F.2d 628 (9th Cir.1988) ................................................................. 13

*Leiva—Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) .................................................................. 3

*Madrid v. Gomez*,
   889 F. Supp. 1146 (N.D. Cal. 1995) ...................................................... 14

*Mayfield v. United States*,
   599 F.3d 964 (9th Cir. 2010) .................................................................. 4

*Monell v. Department of Soc. Svcs.*,
   436 U.S. 658 (1978) ............................................................................... 4

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ............................................................................... 2

*Nintendo of Am. v. Lewis Galoob Toys*,
   16 F.3d 1032 (9th Cir. 1994) ................................................................ 18

*Oviatt By and Through Waugh v. Pearce*,
   954 F.2d 1470 (9th Cir. 1992) ................................................................ 5

*Perfect 10, Inc. v. Google, Inc.*,
   653 F.3d 976 (9th Cir. 2011) ............................................................ 1, 3

*Scalia v. Cty. of Kern*,
   308 F.Supp.3d 1064 (E.D. Cal. 2018) ................................................... 13

*Shapley v. Nevada Bd. of State Prison Comm'rs*,
   766 F.2d 404 (9th Cir. 1985) ................................................................ 13

Burke, Williams &
Sorensen, LLP
Attorneys at Law
San Diego

*Toguchi v. Chung*,
　391 F.3d 1041 (9th Cir. 2004) ................................................................. 13

*Van Ort v. Estate of Stanewich*,
　92 F.3d 831 (9th Cir. 1996) ...................................................................... 5

*Wetzel v. Williams*,
　No. 24-1067, 2025 WL 2823715 (U.S. Oct. 6, 2025) ........................... 13

*Williams v. Paramo*,
　775 F.3d 1182 (9th Cir. 2015) ................................................................. 4

*Williams v. Sec'y Pa. Dep't of Corr.*,
　117 F.4th 503 (3d Cir. 2024) ................................................................... 13

*Wilson v. Seiter*,
　501 U.S. 294 (1991) ................................................................................ 12

*Winter v. Nat. Res. Def. Council, Inc.*,
　555 U.S. 7 (2008) ...................................................................................... 3

*Wood v. Housewright*,
　900 F.2d 1332 (9th Cir. 1990) ................................................................ 13

**Federal Statutes**

18 U.S.C. § 3626(a)(1)(A) ............................................................................. 4

42 U.S.C. § 1983 .............................................................................. 4, 12, 13

42 U.S.C. § 1997e(a) ...................................................................................... 4

**State Statutes**

Prison Litigation Reform Act ("PLRA") ................................................. 4, 17

**Rules**

FRCP 65 ........................................................................................................ 17

**Regulations**

California Code of Regulations, Title 15 ................................ 7, 14, 15, 16

California Code of Regulations, Title 24 ....................................................... 7

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4927-8994-9813 v1                          iv                    Case No. 3:20-cv-00406-AJB-DDL
                                                                DEFTS' OPPO TO PL'S MPI

California Code of Regulations, Title 24, § 6B(2) ................................................ 14

**Other Authorities**

*Jesse Hernandez v. County of Monterey,*
    Case No. 13-cv-02354-BLF .......................................................... 14

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SAN DIEGO

4927-8994-9813 v1                           v                    Case No. 3:20-cv-00406-AJB-DDL
                                                                 DEFTS' OPPO TO PL'S MPI

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs seek the extraordinary relief of a preliminary injunction to stop the San Diego County Jails from housing people with serious mental illnesses (SMI) in Administrative Separation units except in exigent circumstances and no more than 72 hours, asserting immediate action must be taken due to the risk of psychiatric decompensation, suicide, and death. There is no evidence presented in the moving papers that any person with a serious mental illness died *because* they were housed in Administrative Separation. The elimination of Administrative Separation Units would not remove risks for people with severe mental illnesses. Moreover, the Sheriff's Office is in the process of increasing mental health bed space to transition incarcerated people with serious mental illness (SMI) out of Administrative Separation, and Plaintiffs were aware of these plans prior to filing this application. The request is mooted by the meritless claim that injunctive relief is necessary because of the plan that predates this motion. Plaintiffs thus cannot demonstrate a clear likelihood they will prevail on their mental health claim[1] or establish a sufficient causal connection between the alleged irreparable harm and the activity to be enjoined. *Perfect 10, Inc. v. Google, Inc*., 653 F.3d 976, 981-82 (9th Cir. 2011).

Plaintiffs fail to explain why they waited years after initiating this lawsuit to raise this particular issue, despite the fact that most of their cited sources[2] pre-date widespread changes at the Jails and the filing of the lawsuit itself. For example, Plaintiffs cite the following outdated sources: A 2017 NCCHC Report (solicited by

---

[1] Indeed, Plaintiffs could have moved for summary judgment on the mental health claim if they believed they would prevail.

[2] Plaintiffs cite the recent deaths of Corey Dean and Karim Talib without any evidence of a causal connection between their deaths and their placement in Ad Sep, and knowing their deaths are still under investigation so that the Sheriff's Office cannot comment on them.

the County to work on meeting its standards); a 2018 Review by Lindsay Hayes (hired by the County for advice on suicide prevention); and a 2018 Disability Rights California Investigation Report (whose investigatory team included Plaintiffs' litigation counsel Aaron Fischer) that looked at suicides from 2010 to 2018. Many of the recommendations of these external reports were implemented by the Sheriff's Office and resulted in significant improvements within the Jails but Plaintiffs intentionally omit this information to portray a false narrative. For example, Hayes' suggested questions about suicide risk were added to the Jail's intake screening. Past reports, reviews, and audits are of no value to the status quo today. "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).

Most importantly, many of the requested changes to mental health care are moot. The County is already planning to move incarcerated persons with serious mental illness flags from Administrative Separation to the Out-Patient Step-Down (OPSD) units, and has set into motion specific plans to significantly expand the Jails' OPSD capacity for those patients who qualify and would benefit from treatment, by transferring some to George Bailey first, and then opening additional modules at Rock Mountain solely for that purpose in several phases.

Finally, the declarations submitted in support of Plaintiffs' request for injunction are based upon hearsay, outdated evidence, conclusions lacking any factual foundation, and are directly contradicted by the opposition declarations submitted by defendants.

In sum, the request for injunctive relief should be denied.

## II.    LEGAL ARGUMENT

### A.    Legal Standard for the Drastic Remedy of Injunctive Relief

An injunction is "a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Plaintiffs seeking a preliminary injunction must establish: (1)

likelihood of success on the merits; (2) likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). The party seeking the injunction bears the burden of proving these elements.  *See Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.") To warrant an injunction, policies must be so deficient that there is a causal connection between those policies and a likelihood of irreparable harm. *Perfect 10, Inc.,* 653 F.3d at 981-82.

Injunctions that command a defendant to perform an affirmative act (*i.e.* a mandatory injunction to change policies), as opposed to refraining from action, are particularly disfavored, and are subject to a heightened standard. Mandatory injunctions "should not be issued unless the facts and law *clearly favor* the moving party."  *Dahl v. HEM Pharm. Corp*., 7 F.3d 1399, 1403 (9th Cir. 1993). Plaintiffs argue that an injunction can issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in Plaintiffs favor," provided that "plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1135 (9th Cir. 2011) This is an accurate statement of the law, but showing "serious questions going to the merits" requires more than establishing "success is more likely than not"; rather, it requires plaintiffs to demonstrate a "substantial case for relief on the merits." *Leiva—Perez v. Holder*, 640 F.3d 962, 967, 968 (9th Cir. 2011). Under either standard, Plaintiffs bear the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy.  *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010). *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4927-8994-9813 v1

3

Case No. 3:20-cv-00406-AJB-DDL
DEFTS' OPPO TO PL'S MPI

1  Cir. 2009).

2         Further, any award of equitable relief in the corrections setting is governed by

3  the Prison Litigation Reform Act, which requires that any prospective relief be

4  **narrowly drawn and extend no further than necessary** to correct the violation of

5  a Federal right **and is the least intrusive means necessary** to correct the violation.

6  18 U.S.C. §3626(a)(1)(A) [emphasis added]. Plaintiffs cannot make this showing.

7         B.    <u>**Plaintiffs Cannot Demonstrate A Likelihood Of Success On The**</u>

8              <u>**Merits and/or A Substantial Threat Of Irreparable Future Harm**</u>

9         Plaintiffs are not entitled to an injunction against past illegal conduct unless

10  they demonstrate "a sufficient likelihood that [they] will again be wronged in a

11  similar way." *City of Los Angeles v. Lyons*, 461 U.S. at 111; *see also Mayfield v.*

12  *United States*, 599 F.3d 964, 970 (9th Cir. 2010). They cannot do so here.

13              **1.    Plaintiffs Failed To Exhaust Administrative Remedies**

14         The Prison Litigation Reform Act ("PLRA") "requires a prisoner to exhaust

15  'available administrative remedies' before bringing an action with respect to prison

16  conditions." *Williams v. Paramo*, 775 F.3d 1182, 1190–91 (9th Cir. 2015) (quoting

17  42 U.S.C. § 1997e(a)); see 42 U.S.C. § 1997e(a). Plaintiffs failed to exhaust their

18  administrative remedies prior to filing suit -- and they do not even allege such.

19              **2.    Plaintiffs Fail to Establish *Monell* Liability**

20         A local government may only be liable under §1983 for its own action or

21  inaction, not that of its employees. *Monell v. Department of Soc. Svcs.*, 436 U.S. 658

22  (1978); *see also Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). A successful

23  *Monell* claim must prove that a government entity's policy, practice, or custom is the

24  "moving force behind a violation of constitutional rights." *Dougherty v. City of*

25  *Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  Deliberate indifference only exists

26  "when the need for more or different action 'is so obvious, and the inadequacy [of

27  the current procedure] so likely to result in the violation of constitutional rights, that

28  the policymakers...can reasonably be said to have been deliberately indifferent to the

Burke, Williams &
Sorensen, LLP
Attorneys at Law
san diego

4927-8994-9813 v1                    4                    Case No. 3:20-cv-00406-AJB-DDL
                                                          DEFTS' OPPO TO PL'S MPI

need.' " *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). The deliberate indifference standard for municipalities is objective. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 1992).

A municipal policy is the "moving force" behind a constitutional violation if it is the proximate cause of the constitutional injury. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996). Plaintiffs raise complaints about housing in Administrative Separation, mental health care, and out of cell time/ programming, but the standard to show deliberate indifference has not been met. The declarations of Mental Health Director Melissa Quiroz, Jacob Skelly-Brown, Sgt. Parent, Sgt. Huard, Sgt. Castorena, Sgt. Renner, Corporal Moore, Dr. Joseph Penn, Dr. Montgomery, and Commander Johns paint a very different picture than portrayed by the Plaintiffs, who seek renumeration in attorneys' fees for instigating change. In addition, the evidentiary objections submitted herewith demonstrate that much of the information put forth to support the claims of deliberate indifference are inadmissible.

### 3.    Plaintiffs Lack Standing

Plaintiffs must establish likelihood of success on the merits and they cannot meet the initial burden of establishing standing to pursue the requested relief. There is no evidence submitted in support of the motion to establish that any class representative suffers from a serious mental illness or has suffered harm being housed in Ad Sep because of that serious mental illness. Plaintiffs must demonstrate that they have individual standing to seek an equitable remedy. "In order to assert claims on behalf of a class, a named plaintiff must have personally sustained or be in immediate danger of sustaining 'some direct injury as a result of the challenged statute or official conduct.'" *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001) quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class

seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). "Allegations that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient to establish standing to seek an injunction on behalf of the class." *Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2019 WL 4450930, at *19 (N.D. Cal. Sept. 17, 2019).

In the present case, most of the named Plaintiffs are now in State Prison, and while they may return one day to a San Diego County Jail, the operative complaint contains no allegations that any of the named plaintiffs suffered an SMI and were housed in Administrative Separation and suffered harm *because of* their housing assignment. None of the declarations submitted herein are from any named plaintiff, and thus Plaintiffs fail to establish standing to pursue their injunctive relief.

### 4.    Plaintiffs' Request for Injunctive Relief is Premature and Moot Given the Changes Made and In Process

An injunction cannot be issued based on past conduct. Rather, there must be proof of an ongoing or future problem which will not be remedied absent an injunction. *Hodgers-Durgin v. De la Vina*, 199 F.3d at 1043 (9th Cir. 1999). Plaintiffs fail to meet the standard. Their request for injunctive relief is premature given the status of the case -- with an upcoming trial in early 2026. More importantly, it is moot given the changes that have been made already, those in process, and those already planned with defined timelines for implementation. The ongoing changes to the mental health system – including additional Out Patient Step-Down (OPSD) housing, treatment, and programming -- are substantial, as described in detail below. (*See* Declarations of Quiroz, Johns.)

First, the County has been working on increasing sworn staff in order to increase the ability to remove Incarcerated Persons from their cells for confidential mental health evaluations in the Jails by providing escorts and security for those contacts. (Johns Decl. ¶ 3.) The County has also been working on identifying additional spaces available for confidential mental health sessions. (*Id*. ¶ 4.)

Second, multi-disciplinary wellness checks are being done weekly and include nursing, mental health, reentry services and custody staff. The goal is to observe the patient in their environment to assess the condition of the environment, offer medical and mental health resources, and plan services for reintegration back into the community. These rounds are done as a supplementary program to increase the amount of interactions clinicians and nurses have with incarcerated persons, in order to proactively address any issues. (*Id.* ¶ 6.)

Third, the County has revised many of the Detention Services Bureau and Medical Services Division policies (including those applicable to medical and mental health) to meet NCCHC 2025 Jail standards, and is actively working toward accreditation.  The Jails also meet California Code of Regulations, Title 15 (corrections) and Title 24 (building code) provisions that apply to County Jails for adult offenders, including the hourly requirements for Administrative Separation out of cell time (10 hours per week). (*Id.* ¶ 10.) The County Jails are regularly found compliant by the Board of State and Community Corrections (BSCC). (*Id.* ¶ 11.)

Fourth, the County is in the midst of dramatically increasing the amount of beds in Out-Patient Step-Down (OPSD) units in order to move the Incarcerated Persons with serious mental illness (SMI) who are eligible to be housed in OPSD to those units. This will provide additional therapy and programming to an acute population that was not previously eligible for OPSD.  Mental Health Director Melissa Quiroz is conducting a bed study to identify the Incarcerated Persons who are referred to OPSD from those housed in Administrative Separation who meet the OPSD criteria and would benefit from additional mental health therapy and more programming. The expansion of OPSD beds to incorporate Protective Custody and Administrative Separation incarcerated people will begin on November 14, 2025. (*Id.* ¶ 12.)  By then, George Bailey will have one additional OPSD module in 4C to house half protective custody (34 Incarcerated Persons) and half administrative separation (17 Incarcerated Persons), for an effective population of 51 Incarcerated

1  Persons in unit 4C.  (*Id*. ¶ 15.)

2       By January 31, 2026, the County Jail will move all of OPSD from George

3  Bailey Detention Facility to Rock Mountain Detention Facility units 4A, 4B, 4C and

4  4D.  The capacity of these units will be as follows: (a) In 4A, there are 68 beds.

5  General population and Protective Custody Incarcerated Persons will be housed in

6  the unit, for an effective capacity of up to 68; (b) In 4B, there are 32 beds. This unit

7  will house Administrative Separation Incarcerated Persons who are single-celled, for

8  an effective capacity of 16 IPs.; (c) In 4C, there are 32 beds. This unit will house

9  Administrative Separation Incarcerated Persons who are single-celled, for an

10 effective capacity of 16 IPs; (d) In 4D, there are 68 beds. General population and

11 Protective Custody Incarcerated Persons will be housed in the unit, for an effective

12 capacity of up to 68. (*Id*. ¶ 16.)

13      By March 2027, with the expansion and opening of more housing at Rock

14 Mountain Detention Facility, the County will have one additional OPSD module for

15 male Incarcerated Persons with 68 additional beds (34 effective population if these

16 Incarcerated Persons need to be single-celled). In the event the County does not

17 have the capacity for housing all patients that require and qualify for OPSD services,

18 it will provide them treatment in place consistent with their level of acuity.  (*Id*. ¶

19 17.)  These plans envision an OPSD population of at least 200 incarcerated persons,

20 with accommodations for OPSD-level of care in place elsewhere if needed.

21      Female incarcerated persons are already fully utilizing the OPSD program.

22 There is no wait time for female Incarcerated Persons to be placed in OPSD if

23 eligible. As of October 24, 2025, there are 19 female Incarcerated Persons receiving

24 OPSD services at Las Colinas, including 1 Incarcerated Person who is at the

25 hospital, and 1 Incarcerated Person who qualifies for OPSD, but is being treated in

26 place in House 5B with OPSD level of care and out of cell time because she has

27 been assaultive to staff and other incarcerated persons. (*Id*. ¶ 18.) There are 6 female

28 Incarcerated Persons in Administrative Separation, House 5A, who would benefit

1    from OPSD, but cannot be placed into the OPSD module because they are assaultive

2    to staff or other Incarcerated Persons.  They receive weekly clinician contact and

3    additional clinician contacts as clinically indicated. There is also a recreational

4    therapist who visits Administrative Separation at LCDRF and provides structured

5    exercise groups three times a week for 30-45 minutes.  (*Id*.)

6        Fifth, staffing for mental health has been increased. The County currently has

7    42 mental health clinicians to cover the Jails, as follows: 6 pre-licensed clinicians[3]

8    and 34 licensed clinicians (LCSW, LPCC, or LMFT).  It also has 6 supervisor

9    positions – Chief Mental Health Clinicians.  One supervisor covers RMDF, EMRF,

10   and SBDF, and is onsite at RMDF and visits EMRF and SBDF as needed; one

11   supervisor is onsite at and covers Vista; one supervisor is onsite at and covers SDCJ;

12   one supervisor is onsite at and covers LCRDF; one supervisor is onsite at and covers

13   GBDF; and another supervisor focuses on OPSD units (GBDF & LCDRF and 1

14   incarcerated person at SDCJ with an OPSD flag who is treated in place).  The

15   County also has two licensed recreation therapists who work at SDCJ and LCRDF

16   (mostly in PSU). (Quiroz Decl. ¶ 3.)  The County Jails also have two (2) licensed

17   clinicians who do administrative work as utilization review quality improvement

18   specialists. (*Id*. ¶ 4.)

19       Pursuant to contracts with Naphcare and United Nursing International (UNI),

20   the County Jails also have the following additional mental health providers: (a) At

21   the San Diego Central Jail, there is 1 FTE Psychiatrist in PSU, 2 Psychiatric Nurse

22   Practitioners, .75 FTE Psychiatrist via Tele-Med, 1 FTE Psychologist, 1 full-time

23   MAT provider (Psychiatric N.P.), and 3 FTE pre-licensed mental health clinicians.

24   There are another 2 FTE mental health clinicians provided under contract with UNI;

25

26   _____

27   [3] In June 2023, the County added pre-licensure mental health clinician positions for
     those who have finished their coursework/degree but need clinical hours in order to

28   hire them at the earliest opportunity and to encourage retention.

Burke, Williams &
Sorensen, LLP
Attorneys at Law
san diego

4927-8994-9813 v1                          9                    Case No. 3:20-cv-00406-AJB-DDL
                                                               DEFTS' OPPO TO PL'S MPI

b) At Vista, there is a Psychiatrist 2 days per week, 2 FTE Psychiatric Nurse Practitioners, 1 FTE MAT provider, 1 Psych N.P. for MAT, 1 pre-licensed mental health clinician, 1 Psychologist, and 1 UNI licensed clinician; (c) At Las Colinas, there is 1 FTE psychiatrist in PSU, 2 FTE Psychiatric N.P.s, .75 MAT provider, 1 Psychologist, 1 pre-licensed clinician, and 1 discharge planner, in addition to 1 licensed clinician provided via UNI; (d) At George Bailey, there is 1 FTE Psychiatrist (who mostly handles OPSD), 2 FTE Psychiatric N.P.s, 1 Psychiatric N.P. who works as a   MAT provider; .6 FTE Psychiatrist (who works 3 days per week) via Telemed; 3 pre-licensed clinicians, and 1 discharge planner. Under by contract with UNI, there are another 3 FTE licensed clinicians who work solely in OPSD; (e) There is one Psychiatric N.P. who rotates between East Mesa, Rock Mountain, and the South Bay. With the planned expansion of OPSD at RMDF, there will be 5 clinicians placed there to meet anticipated needs.(Quiroz Decl. ¶ 6.)

Seventh, a County Registered Nurse does the initial receiving screening for medical and mental health issues including suicide risk assessment. The suicide screening consists of a symptom inventory (a series of yes/no questions), which is the standard protocol in the field to detect potential suicide risk. In 2019, three questions were added to the intake screening, in addition to the 6 questions in the Columbia-Suicide inventory which were already part of the screening, at the recommendation of Lindsay Hayes. (*Id*. ¶ 7, *see also* Ex. A.) If the incoming person answers yes to any of the suicide risk questions, then the intake practitioner calls for a mental health clinician or psychologist to perform a "gatekeeping" assessment, which is available 24/7. A gatekeeper is a qualified mental health practitioner (QMHP) who has additional training on suicide assessment; this position rotates among QMHP staff at each facility. (*Id*. ¶ 8.)

Eighth, after the initial screening during booking on the first floor at SDCJ, the incarcerated person is brought to the second floor and sees either a Nurse Practitioner (N.P.) or a Doctor (M.D.) from Correctional Health Partners (CHP),

Burke, Williams &
Sorensen, LLP
Attorneys at Law
san diego

4927-8994-9813 v1

10

Case No. 3:20-cv-00406-AJB-DDL
DEFTS' OPPO TO PL'S MPI

who performs the full 14-day medical screening during intake. This thorough medical screening is also performed by CHP on intake at the two other booking facilities, Vista (VDF) and Las Colinas (LCDRF). (*Id*. ¶ 9.)

Ninth, Mental Health staff performs weekly rounds in Administrative Separation. During these rounds to check on patients, mental health clinicians often do wellness checks at the cell front. This is a brief check in, to ask how the patient is doing, obtain information if appropriate, and for the patient to make any other request(s) including if s/he would like to speak confidentially. These rounds meet the NCCHC standard JG-02 for QMHP wellness checks as the incarcerated person has an opportunity to request care and the clinician ascertains the incarcerated person's general mental health status. (*Id*. ¶ 10, *see* Ex. B.) Additionally, everyone on the mental health caseload is scheduled for clinic appointments, which can occur in a confidential setting or cell side. (*Id*. ¶ 12.)

Tenth, Mental Health staff have been actively collaborating with custody staff to create more rooms/locations to use for confidential mental health sessions as well as to increase available custody staff to escort Incarcerated Persons to such sessions and to provide supervision from outside the room. There are already places available for confidential consultations with patients but the County is working on increasing the space and staff to facilitate these more often. (*Id*. ¶ 14.) George Bailey, Vista, and Las Colinas each have 3 clinic rooms. At the Central Jail, there is 1 clinic room in PSU, and there are 4 clinic rooms between JBCT, EOH on the 6th floor, and build-outs on the 2nd floor. If needed, a patient can also be put into a holding cell out of the way or into an empty cell with no neighboring patients, in order to talk more privately. (*Id*. ¶ 15.) The County is discussing the option of booths to be placed in the Administrative Separation dayrooms (about the size of two telephone booths) in order to allow more confidential mental health sessions in Administrative Separation.  It is the County's goal to change all clinic appointments to confidential mental health sessions and Mental Health staff is actively working with custody to

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4927-8994-9813 v1

11

Case No. 3:20-cv-00406-AJB-DDL
DEFTS' OPPO TO PL'S MPI

obtain a dedicated officer and/or a rover for 3-4 hours a day for escorts. (*Id.* ¶ 16.)

Eleventh, there is programming and clinical therapy provided in OPSD as follows: (a) weekly 1-to-1 clinical sessions (or twice per week if needed); (b) "Love on a leash" therapy dogs come to the OPSD unit once per month; the County is working on increasing visits to GBDF to twice per month in January and to also visit LCRDF and SDCJ Ad Sep, PSU, and OPSD units. (*Id.* ¶ 31.) Group sessions in OPSD are provided to less acute units (*ie.* GBDF 4B) with half a tier at a time on topics such as Cognitive Behavioral Therapy Skills, Behavioral Activation Groups, Cell/Self -Hygiene Skills, Goal Setting, Hopefulness, Emotional Wellness, Art Therapy, and Mindfulness Based in Art Therapy. These groups occur at the dayroom tables (without restraints). (*Id.* ¶ 32.)

Twelfth, the County is working on identifying patients who have been placed in Administrative Separation based on behavioral symptomology for reassessment by JPMU as to their classification status, which potentially could result in incarcerated persons being removed from Administrative Separation. Nineteen (19) persons have currently been identified who are pending review by JPMU. (*Id.* ¶ 33.) The County is also considering adding a requirement for incarcerated persons who are on the mental health caseload to be evaluated by a QMHP prior to being placed into Administrative Separation and a process for alternative placement if the QMHP indicates that placement in Administrative Separation is contraindicated. (*Id.* ¶ 34.)

### 5. Plaintiffs Do Not Meet the Standard of Deliberate Indifference

In order to establish a Section 1983 claim based on conditions of confinement, a plaintiff must establish that (1) the plaintiff has actually suffered an extreme deprivation or is placed at a substantial risk of suffering a significant injury (*e.g.*, a serious medical/mental health need) and (2) the defendants acted with a sufficiently culpable state of mind (deliberate indifference). *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Upon demonstration of a serious medical/psychiatric need, the

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4927-8994-9813 v1

12

Case No. 3:20-cv-00406-AJB-DDL
DEFTS' OPPO TO PL'S MPI

plaintiff must then show that the defendant's response was deliberately indifferent. Thus, "[a] § 1983 action premised on violation of the Fourteenth Amendment for inadequate medical care requires allegations that each defendant acted with deliberate indifference to the decedent's serious medical needs." *Scalia v. Cty. of Kern,* 308 F. Supp. 3d 1064, 1072 (E.D. Cal. 2018). "Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment," courts "apply the same standards." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *Scalia*, 308 F. Supp. 3d at 1072.

"Deliberate indifference is a high legal standard," *Toguchi v. Chung*, 391 F.3d 1041, 1060 (9th Cir. 2004). Deliberate indifference requires a purposeful act or a deliberate failure to act on the part of the defendant and resulting harm. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). However, "[m]ere negligence in diagnosing or treating a medical [or mental health] condition, without more, does not violate a prisoner's Eighth Amendment rights." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1987). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1134 (9th Cir. 1990); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir.1988).

Plaintiffs argue that Administrative Separation units are tantamount to solitary confinement and thus per se harmful, citing cases where solitary has been found harmful. Many of the cases they cite are not in the Ninth Circuit, or are factually distinguishable. *See, e.g., Williams v. Sec'y Pa. Dep't of Corr.*, 117 F.4th 503, 517 (3d Cir. 2024), cert. denied sub nom. *Wetzel v. Williams*, No. 24-1067, 2025 WL 2823715 (U.S. Oct. 6, 2025) Placement in Administrative Separation in San Diego County relies on assaultive/violent behavior and not the person's mental illness. (Penn Decl. ¶ 23.) Further, there is no accepted medical or psychiatric definition of "solitary confinement." (*Id.*, ¶ 26.) Organizations such as the American Correctional Association (ACA) use the term "restrictive housing."

Burke, Williams &
Sorensen, LLP
Attorneys at Law
san diego

4927-8994-9813 v1                                                     13                    Case No. 3:20-cv-00406-AJB-DDL
DEFTS' OPPO TO PL'S MPI

Plaintiffs cite cases involving the California Department of Corrections (CDCR), such as *Coleman v. Wilson* (a statewide mental health class action) and *Madrid v. Gomez*, 889 F. Supp. 1146 (N.D. Cal. 1995) (a class action involving SHU facilities at Pelican Bay). Both of these cases were initiated in 1990, and resulted in consent decrees. Plaintiffs' citations also illustrate the differences between those situations in state prison in the early 90s and the San Diego County Jails today. For example, Plaintiffs allege that in *Coleman,* a district court found the segregated housing policies unconstitutional where "mentally ill inmates are placed in administrative segregation . . without any evaluation of their mental status, . . and .. are denied access to necessary mental health care." (*See* MPI at 17, *citing Coleman*, 912 F.Supp. at 1320-21.) That finding is not comparable. People incarcerated in San Diego County Jails are evaluated and have regular access to mental health care. (*See* Quiroz Decl. and Skelly-Brown Decl.) Conditions of the State Prisons in earlier decades are not equivalent to the current state of the San Diego County Jails.

Plaintiffs also cite an injunction in *Jesse Hernandez v. County of Monterey*, Case No. 13-cv-02354-BLF where the court granted plaintiffs' request to order the sheriff's department to "remove all hanging points and other hazards from Ad-Seg units." (MPI at 18.)  Removal of ligature points has long been the standard in prisons and jails, in every unit. *Se*e Title 24, CA Building Code minimum standards, 1231 design criteria, § 6B(2). There is no contention by Plaintiffs that "hanging hazards" are present in the County jails. Nor would the County pass B.S.C.C., title 24, or title 15 inspections if ligature risks were present.

**6.    Plaintiffs Do Not Face Irreparable Harm Without an Order**

Plaintiffs contend that incarcerated persons continue to decompensate and die in Administrative Separation units, being held for months or years. (MPI at 21-23.) They contend the conditions are deplorable, filthy, that they rarely are allowed out of their cells, and they have no reading material or other entertainment. The

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4927-8994-9813 v1

14

Case No. 3:20-cv-00406-AJB-DDL
DEFTS' OPPO TO PL'S MPI

1   declarations submitted by Plaintiffs are inaccurate and misleading, as shown below.

2        Plaintiffs claim that people with mental illness are frequently held in

3   Administrative Separation for "months or years." (MPI at 21.) This is based on

4   Plaintiffs' retained expert Dr. Stewart's review of the 14 declarations obtained by

5   Plaintiffs' counsel, which purportedly show stays ranging from "over 1 month" to

6   "over 4 years and 2 months." (*Id.,* citing Stewart Decl. ¶ 5.) This is not a

7   representative sample. Citing outlier statistics – handpicked from a party's chosen

8   declarants – is not meaningful. Further, the length of stay ranges from 1 day on the

9   low end, as noted in Sgt. Parent's declaration, Thomas stayed in Ad-Sep from

10  February 3, 2025 to February 4, 2025 (one day) and returned for a stay a month

11  later, from March 4, 2025 to May 8, 2025 (2 months, 4 days). (Parent Decl., ¶ 3.) A

12  more significant statistic might be the average or median length of stay based on a

13  representative number of persons but Plaintiffs omit any such relevant information.

14       Corporal Moore compiled a list of all of the incarcerated persons who were in

15  George Bailey's House 5-B Administrative Separation unit on October 16, 2025, at

16  12:00 p.m., and then filtered for those with SMI flags before obtaining the length of

17  stay information for each of those 22 persons in the unit with SMI flags as of

18  October 22, 2025.  For these 22 persons, the average length of stay was 67 days and

19  the median length of stay was 72 days. (*See* Moore Decl., and Ex. A thereto.) Using

20  either number, the average or median stay is just over one month.

21       Plaintiffs allege that out of cell time is their only chance to shower, dispose of

22  trash, or use the phone (including to speak to attorneys), and that the out of cell time

23  is often provided late in the evening. (MPI at 21.) Plaintiffs claim the cells are filthy

24  and supplies are not provided to clean them. But this ignores declarations of sworn

25  staff, policies/green sheets, and the records for out of cell times (showing variation

26  in the release times). In Ad-Sep units, out of cell time is rotated daily, trash is picked

27  up daily, cells are inspected weekly, and incarcerated persons can request cleaning

28  supplies at times other than dayroom time. (Huard Decl. ¶¶ 20-23; Johns Decl. ¶ 9;

1  Parent Decl. ¶¶ 20; Castorena Decl. ¶¶ 20, 22-23; Renner Decl.) At the Central Jail,

2  the dayrooms and showers are cleaned daily if not more often. (Parent Decl. ¶ 21.)

3  If the incarcerated person at GBDF has an attorney callback outside of their

4  dayroom time, they may use the cordless phone. (*Id*., ¶ 26.)

5      Any reports of not having regular access to dayroom or recreation yard time

6  are false. The declarants have regular opportunities for both, though they sometimes

7  refuse. (Huard Decl. ¶¶ 7-8 (Sterling); *Id*. ¶ 12 (Serrano), *Id*. ¶ 16 (Betancourt);

8  Parent Decl. ¶ 5 (Thomas), *Id*. ¶¶ 11-12 (Kelley); *Id*. ¶¶ 18-19 (Hawkins);

9  Castorena Decl. ¶¶ 7-8 (Sekerke); *Id*. ¶ 14 (Millette); *Id*. ¶ 18 (Molina); Renner

10  Decl. ¶¶ 7 (Kearse); *Id*. ¶ 12 (Marodi); *Id*. ¶ 21 (Smith).)  The Las Colinas dayroom

11  logs reflect the start/end times, showing the varied dayroom times from 0700 to

12  1900, and many times during business hours. (*See* Exs. to Renner Decl, *e.g.* Ex D

13  (Smith dayroom logs).)  Audits are done weekly pursuant to SDSO Policy T.11, for

14  out of cell time in Administrative Separation units, to ensure title 15 compliance for

15  10 hours out of cell time weekly. (Renner Decl. ¶¶ 26-27.)

16      Administrative Separation units have books available in the dayroom and they

17  may be exchanged regularly. There is a large TV in the dayroom, and board games

18  are available. (Johns Decl. ¶ 19; Castorena Decl. ¶ 25.) Tablets have been purchased

19  for all incarcerated persons, and infrastructure for them is in the works. (Johns Decl.

20  ¶ 19.) In addition to a TV and books, newspapers are also available at SDCJ and Las

21  Colinas.  (Parent Decl. ¶ 23; Renner Decl. ¶ 25 )

22      **C.    <u>Plaintiffs' Proposed Injunction Fails</u>**

23      Plaintiffs' Proposed Order is an attachment to the Grunfeld Declaration

24  (Exhibit A). Plaintiffs propose a number of findings for the court, and then request

25  this Court to order that within 45 days, Defendants shall "develop a plan" . . . that

26  includes, at a minimum, the following elements:

27      (1) to revise the County Jail policies, procedures, practices, and training to

28  ensure that no incarcerated person with serious mental illness be placed into

Burke, Williams &
Sorensen, LLP
Attorneys at Law
san diego

4927-8994-9813 v1                16                Case No. 3:20-cv-00406-AJB-DDL
DEFTS' OPPO TO PL'S MPI

Administrative Separation unless for exigent circumstances, but then only up to 72 hours, and only if those circumstances are documented and reviewed, and during which time mental and medical care is provided, and the alternatives reviewed in order to provide a clinically therapeutic alternative;

(2) to require that if <u>any</u> person in Administrative Separation is physically or mentally deteriorating, or has "any other signs or reports of symptoms of failing health," they shall be moved out immediately to receive "clinically indicated care commensurate with the needs of the incarcerated person or to a hospital in the community."

This proposed injunction is overbroad, vague, and violates the specificity requirement of FRCP 65, the PLRA, and law governing injunctions. First, the San Diego County Board of Supervisors is not authorized to dictate Sheriff's Office policy and even if it were, it would be wholly inappropriate to have an elected body subject to public opinion and budget constraints dictate County Jail Policies, Procedures (Green Sheets for each Facility), and Training modules. The notion that the sweeping requests be fulfilled in 45 days is absurd and would lead to danger to both IP's and sworn staff through policies and procedures (forget time to train) that are not well thought out or take into consideration safety of all involved based upon the multiple risk factors existing in carceral settings. Second, Plaintiffs' proposal assumes that all serious mental illness has been identified prior to arrest and housing in Jail, that all individuals with serious mental illness are out of control and not managed at any point during incarceration, that serious mental illnesses can present for the first time while incarcerated or after long periods of dormancy, that individuals self-medicated on the outside and may not present with symptoms indicating a serious mental illness or people fail to disclose during intake. Third, "exigent" circumstances are not explained making any such injunctive request vague. It fails to take into account that there is a lack of alternate appropriate housing and that the person(s) can be treated in place and remain in Administrative

Burke, Williams &
Sorensen, LLP
Attorneys at Law
san diego

4927-8994-9813 v1                                    17                    Case No. 3:20-cv-00406-AJB-DDL
DEFTS' OPPO TO PL'S MPI

Separation for a short time until appropriate housing can be identified. Fourth, and most troubling is the blanket demand that anyone housed in Administrative Separation with failing health must be moved out immediately. What is "failing health"? Does it mean failing physical health or mental health? What does "failing" mean? If a person has cancer but is otherwise fine and a risk to others, do they have to be rehoused posing a risk to others? There is no basis whatsoever for such an undefined, vague and impossible to interpret provision.

### D.    If The Injunction Is Granted, The Court Should Require A Bond That Covers Defendants' Compliance Costs

The bond requirement is mandatory (*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999)), and although some courts have waived it, they do so only where there is no realistic likelihood of harm to the defendants or where the moving party shows an overwhelming likelihood of success. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Plaintiffs not only fail to demonstrate an overwhelming likelihood of success, they seek a mandatory injunction that would require Defendants to expend unidentified amounts of resources that may not be available before Plaintiffs' claims are adjudicated on the merits and subject Defendants to millions of dollars of possible liability for making rushed, unsafe changes demanded by individuals with no experience in running jails to make them safe for the incarcerated and the individuals who work there. *Nintendo of Am. v. Lewis Galoob Toys*, 16 F.3d 1032, 1037 (9th Cir. 1994). Those costs cannot be determined on the present record, which as noted above, are vague, overbroad and uncertain. Accordingly, if preliminary relief is granted, Defendants request permission to submit a cost estimate for funding and possible liability damages before the Court sets the bond amount.

///

///

///

Burke, Williams & Sorensen, LLP
Attorneys at Law
San Diego

4927-8994-9813 v1

18

Case No. 3:20-cv-00406-AJB-DDL
DEFTS' OPPO TO PL'S MPI

1  **III.**    <u>**CONCLUSION**</u>

2      For the foregoing reasons, Defendants request that this Court deny Plaintiffs'

3  Motion for Preliminary Injunction. The relief they request is moot, given the

4  County's substantial increase in mental health staffing and OPSD housing, which

5  will move the incarcerated persons with serious mental illness out of Administrative

6  Separation if they are eligible and can benefit from therapy. Further, Plaintiffs fail to

7  show the County acts with deliberate indifference to the mental health needs of the

8  incarcerated persons housed in its Jails. Rather, the County is making appreciable

9  and significant efforts to improve mental health care, housing, and programming for

10 its incarcerated population, which is the opposite of deliberate indifference. Further,

11 Plaintiffs' selection of 14 people out of their myriad class members to submit

12 declarations about their experiences - - with no evidence of any harm or impact to

13 any of the named Plaintiffs – demonstrates a fatal lack of standing for this motion.

14 Dated:  October 28, 2025              BURKE, WILLIAMS & SORENSEN, LLP

15

16                                      By:  /s/ Susan E. Coleman
17                                           Susan E. Coleman

18                                      Attorneys for Defendant
                                        COUNTY OF SAN DIEGO
19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys at Law
san diego

4927-8994-9813 v1                         19                    Case No. 3:20-cv-00406-AJB-DDL
                                                                DEFTS' OPPO TO PL'S MPI