GAY C. GRUNFELD – 121944
VAN SWEARINGEN – 259809
MICHAEL FREEDMAN – 262850
MARC J. SHINN-KRANTZ – 312968
ERIC MONEK ANDERSON – 320934
ERIC HO – 359738
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbgg.com
vswearingen@rbgg.com
mfreedman@rbgg.com
mshinn-krantz@rbgg.com
eanderson@rbgg.com
eho@rbgg.com

AARON J. FISCHER – 247391
LAW OFFICE OF
AARON J. FISCHER
1400 Shattuck Square Suite 12 - #344
Berkeley, California 94709
Telephone: (510) 806-7366
Facsimile: (510) 694-6314
ajf@aaronfischerlaw.com

CHRISTOPHER M. YOUNG – 163319
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Telephone: (858) 677-1400
Facsimile: (858) 677-1401
christopher.young@dlapiper.com
isabella.neal@dlapiper.com
oliver.kiefer@dlapiper.com

Attorneys for Plaintiffs and the
Certified Class and Subclasses

(*defense counsel on following page*)

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>SAN DIEGO COUNTY SHERIFF'S OFFICE, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>                Defendants. | Case No. 3:20-cv-00406-AJB-DDL<br><br>**JOINT MOTION AND ORDER RE: MEDICAL AND DENTAL ISSUES AND RESOLVING FIRST AND SIXTH CLAIMS FOR RELIEF**<br><br>Judge:       Hon. Anthony J. Battaglia<br>Magistrate: Hon. David D. Leshner |

[4874464.2]

*(counsel continued from preceding page)*

Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
501 West Broadway, Suite 1600,
San Diego, CA 92101-8474
Tel: 619.814.5800 Fax: 619.814.6799

Elizabeth M. Pappy (SBN 157069)
E-mail: epappy@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
60 South Market Street, Ste. 1000
San Jose, CA 95113-2336
Tel: 408.606.6300 Fax: 408.606.6333

Attorneys for Defendants
COUNTY OF SAN DIEGO, SAN DIEGO
COUNTY SHERIFF'S OFFICE and SAN DIEGO COUNTY PROBATION
DEPARTMENT

[4874464.2]

Case No. 3:20-cv-00406-AJB-DDL

JOINT MOTION AND ORDER RE MEDICAL AND DENTAL ISSUES AND RESOLVING FIRST AND SIXTH CLAIMS FOR RELIEF

**TABLE OF CONTENTS**

I.    PROCEDURAL HISTORY ............................................................................... 1

II.   DEFINITIONS ............................................................................................... 2

III.  FINDINGS .................................................................................................... 3

IV.   PROVISIONS APPLICABLE TO BOTH MEDICAL AND DENTAL CARE ............................................................................................... 4

    A.    County Oversight and Coordination of Contracted Private Providers ............................................................................................... 5

    B.    Licensure and Other Qualifications for Health Care Staff ..................... 5

    C.    Intake .................................................................................................... 6

    D.    Initial Health Assessments ..................................................................... 7

    E.    Continuity of Treatment ......................................................................... 7

    F.    Health Care Requests ............................................................................. 7

    G.    Health Care Grievances .......................................................................... 9

    H.    Procedures for and Documentation of Refusals of Medical Care .......... 9

    I.    Health Care Records ............................................................................. 11

    J.    Privacy in Medical and Dental Encounters........................................... 11

    K.    Continuous Quality Improvement Processes ........................................ 11

    L.    Peer Reviews and Chart Reviews ......................................................... 12

    M.    Release Planning .................................................................................. 12

    N.    Training ................................................................................................ 12

V.    PROVISIONS SPECIFIC TO MEDICAL CARE ....................................... 13

    A.    Chronic Condition/Disease Management .............................................. 13

    B.    Annual Health Assessment ................................................................... 14

    C.    Use of On-Call Contracted Provider..................................................... 14

    D.    Referrals to and Provision of Specialty and/or Offsite Care ................ 15

    E.    Checking of Vital Signs........................................................................ 15

    F.    Medical Care for Pregnant Incarcerated Persons.................................. 16

    G.    Medical Care for Substance Use Disorders .......................................... 16

H. Care for People in Withdrawal from Substances ................................... 17

I. Diagnostic Testing Procedures ........................................................ 17

VI. DENTAL CARE ................................................................................. 17

A. Dental Staffing ................................................................................ 17

B. Outside Referrals for Dental Care .................................................. 18

C. Access to Routine Dental Care ....................................................... 18

VII. COMPLIANCE .................................................................................. 19

A. Neutral Experts ............................................................................... 19

B. Dispute Resolution .......................................................................... 23

VIII. MISCELLANEOUS RELIEF ............................................................. 24

IX. DURATION AND TERMINATION ................................................... 25

X. AMENDMENTS ................................................................................ 26

XI. JURISDICTION AND ENFORCEMENT ........................................... 26

A. Court Approval ............................................................................... 26

B. Court Jurisdiction ........................................................................... 26

XII. ATTORNEYS' FEES AND COSTS .................................................... 27

[PROPOSED] ORDER ................................................................................ 29

JOINT MOTION AND ORDER RE MEDICAL AND DENTAL ISSUES AND RESOLVING FIRST AND SIXTH CLAIMS FOR RELIEF

1.    Plaintiffs Darryl Dunsmore, Andree Andrade, Ernest Archuleta, James Clark, Anthony Edwards, Reanna Levy, Josue Lopez, Christopher Norwood, Jesse Olivares, Gustavo Sepulveda, Michael Taylor, and Laura Zoerner (collectively, "Plaintiffs"), on behalf of themselves and the Certified Class, and Defendants San Diego County and San Diego County Sheriff's Office (formerly known as "Sheriff's Department") (collectively, "the County") jointly seek entry of an Order approving the parties' settlement of all issues regarding Plaintiffs' First and Sixth Claims for Relief, as set forth in detail below.

## I.    PROCEDURAL HISTORY

2.    On November 3, 2023, the District Court entered an Order Granting Joint Motion for Class Certification and Approval of Proposed Class Action Notice Plan, Dkt. 435. This Order certified a class of "All adults who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities ('Incarcerated People Class')." *Id.* at 10. The Order approved Rosen Bien Galvan & Grunfeld, Law Office of Aaron Fischer, and DLA Piper LLP (US) as Class Counsel. *Id.* at 10-11.

3.    On January 26, 2026, February 12, 2026, February 25, 2026, March 13, 2026, March 25, 2026,  April 9, 2026, and May 5, 2026, the parties conducted settlement conferences under the supervision of the Honorable David Leshner, Magistrate Judge of the United States District Court for the Southern District of California. The parties also conducted settlement discussions without the involvement of Judge Leshner. As a result of these discussions, the parties have reached the following agreements regarding Plaintiffs' medical and dental claims ("Medical and Dental Settlement Agreement" or "Agreement").

4.    On February 17, 2026, the parties entered into an agreement entitled "Joint Motion and Order re: Mental Health Issues and Resolving Second Claim for Relief" ("MH Settlement Agreement and Order"). The MH Settlement Agreement sets forth the parties' agreements to resolve Plaintiffs' second claim for relief, which

alleges that the mental health care system at the Jail violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 1, Sections 7 and 17 of the California Constitution.  The MH Settlement Agreement and Order provides, *inter alia*, that Defendants will make certain changes to the mental health care system at the Jail and that a neutral expert shall ensure the Defendants comply with the MH Settlement Agreement and Order.

## II.    DEFINITIONS

5.    "Jail" or "jails" mean any correctional facility operated by the County. As of the effective date of this Agreement, there are seven correctional facilities operated by the County: East Mesa Reentry Facility; George Bailey Detention Facility; Las Colinas Detention and Reentry Facility; Rock Mountain Detention Facility; San Diego Central Jail; South Bay Detention Facility; and Vista Detention Facility.  As of April 23, 2026, the daily population of the Jail is 4,176.

6.    "Qualified Health Care Professional" (QHCP) or "health care staff" mean physicians, physician assistants, nurses, nurse practitioners, dental professionals, licensed mental health professionals, and others who by their education, credentials, and experience are permitted by law to evaluate and care for patients.

7.    "Provider" means health care staff who is licensed to direct or provide care and treatment in accordance with state law and regulation, scope of practice, federal law and regulation, and facility policy.  Providers have prescriptive authority to prescribe medications.  Providers include physicians, nurse practitioners, physician assistants, and dentists.

8.    "Out-of-Cell Clinical Encounter" means any scheduled or unscheduled appointment or interaction between a QHCP and patient for the purpose of providing health care that involves an assessment, examination, treatment, and/or exchange of protected health information and that occurs within a Jail facility.  It does not include emergency situations, rounding, or medication distribution.

9. "Rounding" means a QHCP conducts an in-person encounter with the incarcerated individual to ascertain current health status, facilitate patient communication and adjust treatment plans as needed. Rounding can be done through a door, including but not limited to a cell or module door.

10. "On-Call" means a provider who is available for consultation, potentially via electronic information and telecommunication technologies, such as a telephone, video, or messaging, to remotely direct medical care about and enter orders for a patient. A provider directs care in an "on-call" capacity only when the provider does not interact with a patient, either in person or via telehealth.

11. "Telehealth" means the use of electronic information and telecommunication technologies, such as a telephone or video, to remotely interact with a patient in real time.

## III. FINDINGS

12. The parties agree that the Eighth and Fourteenth Amendments of the United States Constitution, as well as Article 1, Sections 7 and 17 of the California Constitution, require the County to provide adequate medical and dental care to incarcerated people.

13. On March 2, 2020, Plaintiff Darryl Dunsmore filed this case as an individual action. Dkt. 1. On February 9, 2022, Plaintiff Dunsmore, joined by additional named plaintiffs, filed the Second Amended Complaint raising class claims. Dkt. 81. Plaintiffs filed their Third Amended Complaint, Dkt. 231, on November 18, 2022.

14. Discovery has taken place, including on-site facility inspections by Plaintiffs' qualified medical and dental experts, several Rule 30(b)(6) depositions, document production, exchange of expert reports, and depositions of the parties' respective experts. The parties are fully informed regarding the medical and dental issues raised by Plaintiffs' Third Amended Complaint.

15. The County has taken significant and consequential steps over the last

[4874464.2]                                3                      Case No. 3:20-cv-00406-AJB-DDL

three years to better serve incarcerated persons with medical and dental issues, including hiring additional providers, implementing dedicated medication assisted treatment ("MAT") clinicians, implementing providers and MAT initiation and support at intake, utilizing SureScripts, implementing primary care model at all facilities, introducing continuous glucose monitoring, and opening a dedicated custodial wing at Paradise Valley hospital.  Additionally, the San Diego County Sheriff's Office ("SDSO") Detention Services Bureau has been in the process of revising its Manual of Policies and Procedures for Medical and Health Care Services, M.1—48, its Medical Services Division Operations Manual number A.1.1—W.2, and its Green Sheets regarding provision of medical and dental care. The County has also signed a contract with third party provider Correctional Healthcare Partners ("CHP") in addition to the existing contract with NaphCare.[1]

16.    These changes represent important steps in the improvement of medical and dental care for incarcerated persons.  The parties agree that additional changes will be beneficial to the jail medical and dental care delivery systems including expansion of services for incarcerated persons with medical and dental issues.

17.    The Sheriff's Office and County have been and continue to be committed to improving the medical and dental systems and committing the maximum amount of resources to more improvements rather than litigation.

IV.    **PROVISIONS APPLICABLE TO BOTH MEDICAL AND DENTAL CARE**

18.    The Sheriff's Office and County agree to implement changes to the medical and dental systems, as specified below in this Agreement.

---

[1] "Maintain, develop, and implement" is used throughout this Agreement, including but not limited to paragraphs 29, 31, 49, 57, 58, 64, and 72.  The phrase is intended to be neutral and shall not be interpreted to indicate that the County was or was not maintaining and/or had or had not developed or implemented the process or procedure being referenced, prior to negotiation of this Agreement.

### A. County Oversight and Coordination of Contracted Private Providers

19. The County is responsible for providing and shall provide incarcerated persons in the custody of the San Diego County Sheriff's Office with access to medical and dental care for their serious medical and dental needs. Access to care means that, within the timeframes articulated in this Agreement, a patient can be seen by health care staff and receive care that is ordered.

20. The Sheriff's Office's Medical Policies & Procedures Manual governs the provision of medical and dental care in the Jail.

21. All policies and procedures required to be in place by this Agreement shall apply to all medical and dental care staff who provide care to incarcerated people in the custody of the Sheriff's Office, including, but not limited to, County-employed staff and staff providing care pursuant to the County's contracts with third parties (*e.g.*, NaphCare, CHP, United Nursing International Healthcare Recruiters), regardless of whether the medical and dental care staff are physically located at a Jail facility when providing care or provide care remotely. This does not apply to non-contracted healthcare (i.e. emergency services), third party service coordination (not including NaphCare, CHP, or United Nursing International Healthcare Recruiters), or off-site specialty services.

### B. Licensure and Other Qualifications for Health Care Staff

22. All staff providing medical or dental care to incarcerated people in the custody of the Sheriff's Office shall be licensed to practice in the State of California.

23. All dentists providing dental care to incarcerated people in the custody of the Sheriff's Office shall have a California dental license. All dental hygienists and dental assistants providing dental care to incarcerated people in the custody of the Sheriff's Office shall practice within the scope of practice authorized by the California Dental Practice Act.

/ / /

### C.     Intake

24.     **Processing** – The County shall have Registered Nurses complete the Receiving Screenings.  An incarcerated person who presents with an asymptomatic chronic condition shall be seen by a provider within seven days.  For purposes of this Agreement, a chronic condition is defined as the conditions listed in paragraph 58.  An incarcerated person who presents with acute medical issues shall proceed to the Second Stage, performed by a Registered Nurse or an in-person or telehealth provider, within 10 hours; if the Second Stage for an incarcerated person who presents with acute medical issues was not conducted by a provider, referrals to a provider from the Second Stage shall be made as follows:

a.     Priority:  within 24 hours.

b.     Routine:  within 7 calendar days.

25.     **Inability or Refusal to Complete Receiving Screening** – The County shall ensure a process is in place such that if an incarcerated person refuses or is unable to complete the medical portion of the Receiving Screening, re-attempts shall be made daily until the incarcerated person's Initial Health Assessment.

26.     **Records Availability** – Available outside medical records shall be reviewed by health care staff to include available previous jail records and community records (i.e., County health care resources/record systems).

27.     **Medication Continuity** – The County shall have health care staff verify and bridge at intake medical and dental condition medications.  If the County verifies that the incarcerated person is on a prescription medication in the community, then the medication(s) will be prescribed for the incarcerated person.  If the identified medication(s) are not readily available for administration and the nature of the medication dictates an in-person encounter, the incarcerated person will be scheduled for a Priority (within 24 hours) or Routine (within 7 calendar days) in-person or telehealth provider appointment.  If an alternate treatment plan is ordered, the incarcerated person will be scheduled for a Priority (within 24 hours)

in-person or telehealth provider appointment.

28.   **Gate Refusal**– An in-person provider or Registered Nurse shall assess whether a person being booked into the Jail has a serious or urgent medical or dental care need requiring hospital assessment prior to acceptance into the Jail.  If this type of potential serious or urgent medical or dental care need is identified, the provider or Registered Nurse shall notify the arresting agency.  If the individual subsequently returns to the Jail from a resulting hospital encounter, an in-person provider shall evaluate them within 24 hours after returning to the Jail. The resulting healthcare records from the hospital shall be requested and, after receipt, reviewed by health care staff and included in the incarcerated person's medical record.

### D.   Initial Health Assessments

29.   The County shall maintain, develop, and implement policies, procedures, and training to ensure that all incarcerated people receive a comprehensive Initial Health Assessment by an in-person provider or Registered Nurse.  The Initial Health Assessment should occur as soon as possible and no later than 14 days from arrest.  The Initial Health Assessment shall include a physical exam and a history including dental concerns. All abnormal findings shall be reviewed by a provider.

30.   If an incarcerated person refuses an Initial Health Assessment, health care staff shall attempt to conduct the Initial Health Assessment, at least weekly, until it has been performed. Follow up attempts are only required 3 times.

### E.   Continuity of Treatment

31.   The County shall maintain, develop, and implement policies, procedures, and training to ensure that incarcerated people who were receiving treatment for acute and/or chronic conditions prior to their incarceration receive continuing access to treatment as clinically indicated for those conditions.

### F.   Health Care Requests

32.   The County has a health care request form process that incarcerated

JOINT MOTION AND ORDER RE MEDICAL AND DENTAL ISSUES AND RESOLVING FIRST AND SIXTH CLAIMS FOR RELIEF

people can utilize to request medical and dental care.

33. All health care requests shall be reviewed by an in-person or on-call provider or Registered Nurse within 24 hours of receipt.

34. A Registered Nurse shall, within 24 hours of triage of a health care request, conduct a private face-to-face interview with the incarcerated persons who submitted the health care request if the request reports clinical symptoms, includes a request to see a health care professional to receive health care, or is unclear. Not every oral or written request is a health care request requiring a face-to-face evaluation. For example, co-payment or financial questions, requests for extra blankets, related to job assignments, copies of health care records, or religious diets are not considered a health care request. The Registered Nurse shall determine whether further evaluation by a provider or other appropriate health care staff is necessary and, if yes, how quickly such an evaluation should occur.

35. For health care requests, if the nurse conducting the face-to-face determines that the incarcerated person has an emergent condition, the nurse shall immediately contact an in-person or on-call provider or send the person to a hospital. If the incarcerated person has a non-emergent condition and the nurse determines that further evaluation by a provider or other appropriate health care staff is necessary, the evaluation shall occur within the following timelines after the face-to-face evaluation:

   a. Priority: within 24-hours

   b. Routine: within 7 calendar days for provision of care.

36. For dental health care requests, if the Registered Nurse conducting the face-to-face evaluation determines that evaluation by dental staff is necessary, the evaluation shall occur within the following timelines:

   a. Priority: For a person with severe dental pain (*i.e.*, pain that interferes with normal daily activities, such as eating and sleeping that is not relieved by analgesics such as Tylenol);

       i.     Seen by a medical provider within 24 hours of referral for immediate management of symptoms, treatment of possible infections; and

       ii.    Scheduled for the next available dental clinic at the facility or at a facility nearby (for males only).

    b.    Routine: for individuals who have do not require a Priority referral.

       i.     7 calendar days

37.    Health care request forms shall be available to all incarcerated people. Health care request forms shall be available in every housing unit and in health care areas, and shall be provided to incarcerated persons upon request at any time.

**G.**    **Health Care Grievances**

38.    The County shall maintain its grievance process by having all medical and dental grievances forwarded to a health care staff.  An RN (or higher) shall triage all medical and dental grievances within one business day of receipt to determine whether the medical or dental grievance requires clinical intervention, to determine if the grievance warrants expedited processing because it raises urgent medical or dental concerns (within 5 days), and to determine whether the grievance is administrative or clinical.  Health care staff shall conduct an interview if necessary and requested by the patient.  All non-expedited medical or dental grievances shall be responded to in writing within 14 calendar days of receipt. Health care staff shall resolve incarcerated person grievances in compliance with CCR Title 15, section 1073 and the Prison Rape Elimination Act of 2003, Section 115-52.

**H.**    **Procedures for and Documentation of Refusals of Medical Care**

39.    All refusals of medication, not including over the counter medication, and/or treatment shall continue to be documented in an incarcerated person's health care record.  Staff observing the refusal shall continue to request that the

incarcerated person sign a refusal form which shall also be signed by health care staff.

40. All incarcerated persons who refuse medications or appointments will be counseled and educated by health care staff.

41. An incarcerated person who refuses a medication or treatment which exposes the incarcerated person to a substantial risk of harm or death (*e.g.*, insulin for a Type I diabetic or dialysis) will be immediately counseled and educated by health care staff.  An in-person or on-call provider will be notified of the refusal within 4 hours of the end of medication pass (for medications) or the refusal of the treatment.  If the reviewing provider determines that additional counseling is appropriate, the incarcerated person shall be scheduled for counseling with a provider, and this referral shall be documented in the incarcerated person's health record.

42. Within 24 hours, health care staff shall provide counseling to all incarcerated people who refuse offsite or specialty clinic appointments.

43. An in-person or on-call providers shall review refusals for medication, not including over the counter medication, or appointments that occur three times in a row or 5 times within a 30-day period.  If the reviewing provider determines that counseling is appropriate, the incarcerated person shall be scheduled for counseling with a provider, which shall be documented in the incarcerated person's health record.

44. Any counseling related to refusals of treatment, medication, or an appointment shall be documented in an incarcerated person's health record.

45. The County shall not treat an incarcerated person's refusal of a medication, treatment, or appointment as a permanent refusal of the medication, treatment, or appointment.  The incarcerated person can request continuation of the medication, treatment, or appointment; the request will be evaluated by an in-person or on-call provider who will determine if the medication, treatment, or appointment

JOINT MOTION AND ORDER RE MEDICAL AND DENTAL ISSUES AND RESOLVING FIRST AND SIXTH CLAIMS FOR RELIEF

is still clinically indicated.

### I.   Health Care Records

46.   Currently, the County uses TechCare, the electronic health record ("EHR") software provided by NaphCare.

47.   The County shall ensure that all health care requests and grievances related to medical and dental care are included in the incarcerated person's EHR.

### J.   Privacy in Medical and Dental Encounters

48.   Out-of-cell clinical encounters, including Receiving Screenings and the Second Stage, shall be conducted in a setting that affords privacy unless individualized clinical or security factors prevent it.  For physical exams and encounters, sworn staff can be immediately available for the safety and security of the clinicians.

### K.   Continuous Quality Improvement Processes

49.   The County shall maintain, develop, and implement a Continuous Quality Improvement system that collects and analyzes data on multiple jail processes and procedures for medical and dental services.  Based on regular review of this data, when necessary, corrective action plans shall be developed and monitored to ensure compliance with the identified issue.  These medical and dental processes include but are not limited to: access to care (including the timeliness of receiving screenings (including the Second Stage), the timeliness of appointments with providers following referrals from receiving screenings, the timeliness of initial health assessments, the timeliness of face-to-face assessments for health care requests, the timeliness of provider evaluations following face-to-face assessments for health care requests, and the time between approval of a referral for specialty appointments or appointments with outside providers and the occurrence of the appointments), infection control, grievances, and incarcerated worker surveillance program.

50.   **Sentinel Events** – The County shall review medical and dental related

sentinel events.  A sentinel event is an unexpected patient safety event that results in death or permanent harm.  Permanent harm is defined as a lasting injury or loss of normal bodily or mental function resulting from healthcare delivery that is not expected to substantially improve over time, even with appropriate treatment.  The sentinel event review process shall include a review of the incident and preceding treatment, a root cause analysis, review of relevant procedures and documentation, pertinent service reports, and recommendations for corrective action.  The County shall implement the recommendations for corrective action whenever feasible.

**L.     Peer Reviews and Chart Reviews**

51.     Providers shall receive clinical peer review on an annual basis.  RNs and LPNs/LVNs shall receive competency assessments on an annual basis.

**M.     Release Planning**

52.     All incarcerated individuals whom the Jail has identified as having a chronic condition or who are receiving MAT shall receive Release Planning services consistent with the incarcerated individual's needs, including proper linkages with community providers.

53.     All incarcerated persons receiving prescription medications shall receive a supply for up to 30 days, as clinically indicated and in accordance with DEA regulations.

**N.     Training**

54.     **Health Care Staff Training** – Health care staff, regardless of employer, shall receive a one-time orientation training appropriate to their position. Orientation shall include County health care policies, privacy, and withdrawal, appropriate to their position.  Orientation shall be in real time and facilitated by an instructor.  Real time training can be in person or virtual and implementation of real time training, as required by this section shall be achieved within 12 months of all parties signing this Agreement.  Regardless of employer, health care staff shall receive in-service County training.  In-service County training is clinically-oriented

training and skills refreshers, appropriate to their position.  There shall not be any distinction between a County employee and non-County employee in terms of orientation or training expectations.  The County is responsible for maintaining the County orientation and in-service training records of all health care staff, including contractors, working in the jails.  A method shall be implemented to ensure supervisors are made aware of health care staff who are non-compliant with County orientation and in-service training and remediation within 30 days of due date occurs.

55.    **Sworn Training** – All sworn staff shall receive annual training regarding medical and dental issues that shall cover when to refer incarcerated people to health care staff and privacy.  The training may include, but is not limited to, training bulletin, real-time virtual, and/or interactive virtual training for staff.

## V.    PROVISIONS SPECIFIC TO MEDICAL CARE

56.    The following provisions apply to the provision of medical care to incarcerated people in the jails. They do not apply to dental care.

### A.    Chronic Condition/Disease Management

57.    The County shall maintain, develop, and implement policies, procedures, and training for providing care to incarcerated people with chronic health conditions.  The County shall continue its practice of developing and modifying (as needed) an individualized treatment plan for all incarcerated persons with chronic health conditions that addresses, at a minimum, the type and frequency of diagnostics, medications, and other therapeutic measures, patient education, and the frequency of follow-up evaluations.  Any incarcerated person whose chronic condition cannot be managed at the Jail shall be referred offsite for appropriate treatment and care.

58.    The County shall maintain, develop, and implement disease management guidelines ("DMGs") for chronic care conditions experienced by incarcerated people in the Jail, including for:

     a.     Cardiovascular disease

     b.     Diabetes mellitus

     c.     HIV

     d.     Liver Disease

     e.     Lung Disease

     f.     Seizure disorder

59.     The DMGs shall be based on national practice guidelines for the conditions listed above.  The County shall update the DMGs at least annually, and more frequently if necessary for a DMG to be consistent with the evolving standard of care for a listed condition.  The DMGs shall be available and used by all health care staff providing chronic care management to incarcerated people in the Jail.  Health care staff shall provide a clinical justification, documented in the medical record, for any deviations from the DMGs.

60.     **Hepatitis C** – As part of the 14-day Health Assessment, the County shall notify incarcerated people that hepatitis C testing is available upon request.

61.     **Diabetes** – The County shall permit incarcerated people to maintain possession of their own insulin pumps whenever possible.  The County shall provide medically appropriate insulin to individuals who enter the Jail with insulin pumps.  The County shall make reasonable efforts to repair or replace insulin pumps that require repair or replacement and shall provide continuous medical care for any time period during which an incarcerated person does not have his or her insulin pump because it is being repaired or replaced.

**B.**     **Annual Health Assessment**

62.     All incarcerated people who remain in the Jail for more than one year shall be offered a Health Assessment from an in-person provider or nurse on at least an annual basis.

**C.**     **Use of On-Call Contracted Provider**

63.     When an on-call provider is contacted by on-site health care staff to

report an urgent or serious medical or dental issue, an in-person provider must subsequently evaluate the incarcerated person face to face within 48 hours of an order entered by the on-call provider, unless the on-call provider identifies a different follow up time.

**D.      Referrals to and Provision of Specialty and/or Offsite Care**

64.     The County shall maintain, develop, and implement policies, procedures, and training to ensure that incarcerated people are assessed for referrals to community care services, and to ensure that incarcerated people who require referrals to outside care are referred to a community provider.  Routine referrals will be evaluated for approval within 7 calendar days, and Priority referrals will be evaluated for approval within 1 business day.

65.     The County currently uses a utilization management process.  Providers and incarcerated people shall have the right to appeal denial of a requested service by the utilization management process.

66.     All incarcerated people returning to the Jail from a hospital shall be evaluated by a QHCP or provider prior to being placed into housing at the Jail.  If the evaluation was not conducted by a provider, the incarcerated person will be evaluated by a provider at the next available provider sick call unless the QHCP determines that it is necessary for a provider to evaluate the incarcerated person sooner.

67.     Incarcerated persons who return from an outside medical appointment will receive a provider chart review within 72 hours of receipt of the medical records from the outside appointment, document the review, and place any necessary orders for follow up treatment.

68.     The County shall request medical records from any outside facilities that provide off-site care to incarcerated people.

**E.      Checking of Vital Signs**

69.     Health care staff shall obtain weight, heart rate, temperature, blood

pressure, respiratory rate, and O2 saturation for screening encounters, including Receiving Screenings and Initial Health Assessments, and diagnostic encounters with care protocols that require the taking of vital signs, absent exigent circumstances that are documented in each case.  An in-person or on-call provider will be notified about abnormal findings within 2 hours.

**F.      Medical Care for Pregnant Incarcerated Persons**

70.      The County shall provide care to pregnant incarcerated persons, including care escalation standards for acute or emergent pregnancy care when warning signs (such as vaginal bleeding, contractions, decreased fetal movement, abdominal trauma) are reported; access to prenatal vitamins and diets; clinically appropriate housing; counseling; clinically appropriate diagnostic tests (e.g., laboratory tests and ultrasounds); vaccinations; abortion access; access to outside specialists; postpartum care and support; and care after pregnancy loss.

**G.      Medical Care for Substance Use Disorders**

71.      For opioid use disorder (OUD), the County shall (1) offer medication for opioid use disorder (MOUD), to incarcerated persons diagnosed with OUD; (2) ensure all incarcerated persons with OUD are eligible to receive MOUD once identified with OUD; (3) continue treatment for incarcerated people booked into custody who are confirmed to be receiving MOUD in the community or who request continuation of MOUD while in custody; (4) initiate MOUD within 48 hours of identification of need for treatment for patients with OUD who are medically eligible for and consent to such treatment, without regard to the expected duration of incarceration, and whether or not the Jail identifies a community entity willing to accept the patient upon release; (5) provide individualized dosing for MOUD; and (6) eliminate any policy, procedure, or practice that results in reduction or discontinuation of clinically indicated MOUD as a result of diversion.

72.      For other substance use disorders, including alcohol use disorders and stimulant use disorders, the County shall maintain, develop, and implement policies

and procedures specific to management of acute withdrawal.

73.    An in-person provider shall evaluate any incarcerated person who is pregnant and who is identified as having a substance use disorder within 24 hours of the identification of the substance use disorder.  The County shall provide counseling to such incarcerated persons regarding the risk of withdrawal in pregnancy and the benefits and risks of MOUD during pregnancy.

**H.    Care for People in Withdrawal from Substances**

74.    The County shall: (1) use a validated screening tool for substance use; (2) at clinically appropriate intervals, monitor incarcerated people at risk of withdrawal using COWS, CIWA-Ar, and CIWA-B, and provide clinically appropriate treatment; (3) create clinically appropriate withdrawal monitoring policies for stimulant withdrawal and overamping; and (4) as feasible, place incarcerated people being monitored for withdrawal in dedicated areas at each Jail facility.

**I.    Diagnostic Testing Procedures**

75.    The results from a diagnostic test shall be reviewed by an in-person or on-call provider, with the review documented in the patient's health record.  Based on the diagnostic test results, an in-person or on-call provider must timely determine and document what, if any, changes should be made to the incarcerated person's care plan.  The County must notify the incarcerated person of the results of the diagnostic test within 7 calendar days of the return of the result.

**VI.    DENTAL CARE**

76.    The following provisions apply to the provision of dental care to incarcerated people in the jails. They do not apply to medical care.

**A.    Dental Staffing**

77.    Within two years of the signing of this Agreement, the County shall provide for 1.0 full-time equivalent ("FTE") dentist, 1.0 FTE dental assistant, and 0.375 FTE dental hygienists per every 1000 incarcerated people housed at the Jail.

In determining the population of incarcerated people, the County shall round to the nearest 1000. The County shall provide a total of 3.0 FTE dentist within one year of the signing of this Agreement.

**B.      Outside Referrals for Dental Care**

78.      The County shall ensure that incarcerated persons requiring dental care not possible or practicable at the Jail facilities are referred to a community provider. Routine referrals will be evaluated for approval within 7 business days, and Priority referrals will be evaluated for approval within 1 business day.

**C.      Access to Routine Dental Care**

79.      All incarcerated people shall receive a dental screening during the Health Assessment from a QHCP who is specifically trained on such issues by a dentist. All incarcerated people shall receive an initial dental examination within twelve months of booking. The initial dental examination shall include reviewing the patient's oral history, an extraoral head and neck examination, charting of teeth, periodontal assessment, examination of the hard and soft tissues of the oral cavity with a mouth mirror, explorer, and illumination, radiographs, as clinically appropriate, and development of a treatment plan.

80.      Following the initial dental examination, every incarcerated person shall receive a dental exam and cleaning at least once every 12 months of their incarceration or more often as clinically indicated. All initial and annual examinations shall include a full treatment plan, as clinically indicated.

81.      The County shall provide clinically appropriate dental care not limited to extractions. Permanent fillings, root canals, and periodontal treatment (including periodontal scaling and root planing), should be provided when clinically indicated.

82.      The County shall track the provision of scheduled follow-up dental services (e.g., follow-up appointments following an examination).

/ / /

/ / /

## VII.   COMPLIANCE

### A.   Neutral Experts

83.   The parties agree that there shall be one dental neutral expert and one medical neutral expert retained to ensure compliance with this Medical and Dental Settlement Agreement and Order, including regarding policies, practices, procedures, and training relating to this Medical and Dental Settlement Agreement and Order.

84.   The parties shall meet and confer on the process for selecting the Medical and Dental neutral experts.  If the experts are not selected within 30 days of Court approval of this Medical and Dental Settlement Agreement and Order, the parties shall submit names to the Magistrate Judge for selection.  The County shall sign a contract with the chosen neutral experts within 30 days of their selection.

85.   If either neutral expert becomes unavailable, the parties shall meet and confer, and assign a new expert.  The parties may agree at any time to remove and replace a neutral expert.  If the parties do not agree on removal, either party may refer the matter to the Magistrate Judge, and, if necessary, to the Court to determine whether the neutral expert should be retained or removed.

86.   The neutral experts shall work with the County to ensure timely and appropriate implementation of this Medical and Dental Settlement Agreement and Order.

87.   The neutral experts may engage in ex parte communications with the parties.  All of the neutral experts' findings and recommendations shall be set forth in writing in reports.

88.   Each neutral expert, accompanied by one Class Counsel representative and the County's counsel, shall have access to all Jail facilities upon reasonable notice.  Each site visit shall take place on consecutive weekdays.  Site visits under this Agreement shall be limited to a total of 15 days for each year this Agreement is in effect, divided between the medical neutral and the dental neutral, unless

otherwise agreed by the parties. If either the medical or dental neutral expert determines that the County is in substantial compliance on all provisions relevant to their subject-matter, then the total annual number of tour days shall reduce to 10 days per year this Agreement is in effect. The remaining neutral expert shall be limited to two site visits per year, each of which shall take place on consecutive weekdays.

a.    The neutral experts shall have reasonable access to meet and interview personnel whose duties pertain to the provision of services and/or who work with incarcerated persons in the area of the expert's expertise.

b.    The neutral experts shall have a reasonable opportunity to conduct interviews of incarcerated persons to assess whether the County is in compliance with the terms of this Medical and Dental Settlement Agreement and Order. Class Counsel shall be able to advise these class members at the time of the proposed interviews to ensure informed consent to participate. Class Counsel may remain with the experts while they are conducting interviews of class members if Defense Counsel, limited to one lawyer, is also permitted to be present for the interviews. Whether Counsel may be present is subject to final decision by the neutral; however, any such decision to include Counsel shall include both Class and Defense Counsel.

c.    The neutral experts may request to review County documents, except those documents protected by attorney-client or work product privileges, or by state or federal law, to assess the County's compliance with the terms of this Medical and Dental Settlement Agreement and Order as the neutrals deem appropriate. If these documents are requested in conjunction with a site visit, the County shall provide these documents to the extent feasible within ten (10) days prior to the visit. All materials produced to the neutral expert(s) must be shared with counsel for Plaintiffs. The County must, on a monthly basis, produce to the neutral expert(s) and Class Counsel a roster from the first business day of the month, that

identifies each incarcerated person who is currently on the chronic care list.  The roster shall identify their name, booking number, booking date, housing location, age, and chronic care condition.  The County must, on a monthly basis, produce to the neutral expert(s) and Class Counsel a roster from the first business day of the month, that identifies each incarcerated person who received one of the following types of dental treatment in the previous month: extraction, off-site referral, or antibiotic. The roster shall identify their name, booking number, booking date, housing location, age, and qualifying dental treatment.  These rosters shall be provided monthly for the twelve months following all counsel signing this Medical and Dental Settlement Agreement and Order, and quarterly thereafter until Substantial Compliance with this Medical and Dental Settlement Agreement and Order is achieved.  All rosters and all documents provided to the neutral by either party are deemed to be confidential as follows: A document is not deemed confidential because it was provided to the neutral unless a party otherwise designates or previously designated it confidential pursuant to the Protective Order. The fact that any particular document(s) were provided to the neutral shall remain confidential unless the neutral refers to a document in a report.  All communications with the neutral shall remain confidential and may only be disclosed in Court filings as necessary to any motion practice to enforce the terms of this Agreement and including with respect to any reports issued by the neutral pursuant to Paragraph 89.

89.    The neutral experts shall issue a report following the inspection(s) which take place as provided in Paragraph 88 addressing the County's progress toward implementation of the requirements set forth in this Medical and Dental Settlement Agreement and Order.  Draft reports shall be provided to the Parties within 30 days of the later of the expert's site inspection and the expert(s)' receipt of all requested documents and information, and in no case later than 45 days after the inspection.  Each report shall contain a determination of whether the County is "substantially complying" with each provision of the Medical and Dental Settlement

Agreement and Order required at the time of the report. If a neutral expert concludes that the County is not substantially in compliance with the terms of any provision or provisions of this Medical and Dental Settlement Agreement and Order required as of the time of the report, that neutral expert shall make recommendations as to actions the County should take to comply with the terms of the provision or provisions or that additional time is warranted to achieve substantial compliance. Either party may submit comments within 15 days for review by the neutral expert(s), who shall thereafter issue the report in final form. The neutral experts shall ensure that individual incarcerated person or staff names are not included in the reports. Counsel for both sides shall review to determine and implement any additional necessary redactions, including for safety and security reasons. With such proper redactions, the final reports shall be public documents. Reports shall not be filed with the district court unless attached to a motion seeking relief under this Medical and Dental Settlement Agreement and Order, or by order of the Court. The County shall pay reasonable fees for work performed by the neutral experts to fulfill their obligations under this Agreement. If the County believes that Class Counsel is requiring the neutral expert(s) to expend excessive and unwarranted time on the matter, the parties shall first meet and confer; if there remain disputes, the issue may be brought to Judge Leshner pursuant to the Dispute Resolution process below.

90.    The neutral experts shall also issue reports in each instance where the neutral has determined that the County has achieved substantial compliance with specific provisions of this Medical and Dental Settlement Agreement and Order for 12 consecutive months, thereby terminating the neutral's work as to said area of substantial compliance.

91.    The neutral experts shall be permitted to attend trainings as the neutral experts deem appropriate. If the neutral experts attend, the training shall be videotaped and made available to Class Counsel. The faces and/or names of

attendees shall be redacted as necessary to protect employee anonymity.

92.     The neutral experts shall be provided with and agree to be bound by any protective or Court orders entered in this case to protect the confidentiality of incarcerated persons' records and security-sensitive information.

93.     To facilitate Class Counsel's ability to communicate with their clients, the County agrees to facilitate one day (8 hours) of confidential virtual client interviews at a single facility every four months.  Class Counsel shall, at least 10 days before the interviews, identify the facility and provide the County a list of no more than 20 class members housed at that facility to interview. The County shall provide one confidential room at the requested jail facility where the virtual interviews can take place and produce the previously identified class members in an expeditious manner, as reasonably possible.  This provision shall terminate upon substantial compliance as determined by the neutral experts.  Nothing in this provision shall prevent Class Counsel from interviewing their clients through the usual professional visit process.

**B.     Dispute Resolution**

94.     Any disputes between the parties about a matter governed by this Medical and Dental Settlement Agreement and Order shall be subject to these dispute resolution procedures and those set forth above regarding neutral experts. This provision along with Paragraphs 95-97 are the sole and exclusive means to address disputes, and shall cover any dispute prior to issuance of a Substantial Compliance report, and any dispute regarding alleged failure of the County to maintain compliance with the terms of this Medical and Dental Settlement Agreement and Order following a finding of Substantial Compliance, other than seeking relief from the District Court.  A party may initiate the dispute resolution process with respect to any matter covered by this Medical and Dental Settlement Agreement and Order by providing written notice of a dispute ("Dispute Notice") to the other party within 10 days of becoming aware of any such dispute.  Following

service of the Dispute Notice, the parties shall undertake good faith negotiations in person or via video conference at such times and places as they deem sufficient in an effort to resolve the dispute informally between them.

95.     If, within 30 days after service of the Dispute Notice, the parties have failed to resolve the dispute, the parties shall next seek the assistance of Magistrate Judge David Leshner.  Any party may request that a settlement conference be scheduled within 30 days of requesting the Magistrate Judge's assistance, unless the parties mutually agree upon an alternative schedule or the Court schedule does not allow for presentation of the issue to Magistrate Judge Leshner within 30 days.  The content of the settlement conference discussions shall not be offered in evidence in any subsequent judicial proceeding in this case.

96.     If a dispute cannot be resolved after conducting a settlement conference with Magistrate Judge Leshner or his designee, either party may seek the assistance of the District Court through the filing of a motion for relief.

97.     In cases of particular urgency or irreparable harm related to provisions in this Medical and Dental Settlement Agreement and Order, a party may opt to bring disputes directly to the District Court, or both parties may consent to bypass the Magistrate Judge if the parties agree the issue should be briefed to the Court, with prior notice to the Magistrate Judge.

## VIII.  MISCELLANEOUS RELIEF

98.     Class counsel may bring concerns in writing about individual incarcerated persons with medical and/or dental concerns exclusively to the attention of the Medical or Dental Liaison and/or Unit.  Any contacts made by Class Counsel to in-house or outside attorneys for the County with individual incarcerated person's grievances and/or concerns may not be included in any request for attorney fees related to post-settlement date work.  The Medical or Dental Liaison or Unit shall investigate and respond to Class Counsel within 10 business days of receipt. This process is not meant to replace or circumvent the existing processes for

requesting medical or dental assistance, or following the existing request and grievance processes in the Jail.  Incarcerated persons in the Jail shall be encouraged by Plaintiffs' counsel to make use of those processes.

99.    Before contacting the Medical or Dental Liaison and/or Unit, Class Counsel shall attempt to verify that the concerns of individual class members are accurate, substantive, and not frivolous through questioning of class members.

## IX.    DURATION AND TERMINATION

100.    The duration of this Medical and Dental Settlement Agreement and Order is until such time that the County has demonstrated Substantial Compliance for a period of at least twelve months for the provisions set forth herein.

101.    Consistent with the foregoing paragraph, the County may move for termination of any portion of this Medical and Dental Settlement Agreement and Order pursuant to 18 U.S.C. section 3626(b)(1)(A)(i) after a finding of Substantial Compliance at any point after the Court's approval of this Medical and Dental Settlement Agreement and Order, after conferring with Plaintiffs' counsel to attempt to reach agreement on whether substantial compliance has been achieved up to and including full and complete compliance of the entire Settlement Agreement and Order.  Unless otherwise ordered by the Court, such a finding shall result in a termination of the relevant neutral's work as to the particular area of Substantial Compliance or, upon full compliance, as to the entire scope of the neutral's work and retention of that neutral.

102.    If Plaintiffs form the good faith belief prior to final termination of the entire Settlement Agreement and Order, that the County is no longer in substantial compliance with any component(s) of this Medical and Dental Settlement Agreement and Order previously found to be in substantial compliance and as to which the neutral's work has concluded as set forth in Paragraph 90, Plaintiffs shall promptly so notify the County in writing.  Within 30 days, the County shall serve a written response stating whether they agree or disagree.  In the event the County

disagrees, the parties shall proceed with the Dispute Resolution process set forth in Section VI.D.

103.   Nothing in this Medical and Dental Settlement Agreement and Order shall limit the parties' rights to challenge or appeal any finding as to whether the County is or is not in substantial compliance with this Medical and Dental Settlement Agreement and Order or consequent orders entered by the District Court.

## X.   AMENDMENTS

104.   By mutual agreement, the parties may change the terms of this Medical and Dental Settlement Agreement and Order, including, but not limited to, the timetables for taking specific actions, provided that such mutual agreement is memorialized in writing, signed by the parties, and approved by the Court.

## XI.   JURISDICTION AND ENFORCEMENT

### A.   Court Approval

105.   This Joint Motion will be subject to approval by the District Court, pursuant to Federal Rule of Civil Procedure 23, with notice to the Class and a Fairness Hearing; the parties shall file a joint motion for preliminary approval within 30 days of all counsel signing this Medical and Dental Settlement Agreement and Order.

### B.   Court Jurisdiction

106.   For the purposes of jurisdiction and enforcement of this Medical and Dental Settlement Agreement and Order only, the parties jointly request that the Court find this Medical and Dental Settlement Agreement and Order satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that it is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means to correct the violation of the Federal right of the Plaintiffs and the Class.  In the event the Court finds that the County has not substantially complied with the Medical and Dental Settlement Agreement and Order, it shall in the first instance require the County to submit a plan for approval by the Court to remedy the

deficiencies identified by the Court. In the event the Court subsequently determines that the County's plan did not remedy the deficiencies, the Court shall retain the power to enforce this Medical and Dental Settlement Agreement and Order through all remedies provided by law and equity.

107. The Court retains jurisdiction to enforce the terms of this Medical and Dental Settlement Agreement and Order during the duration of the Medical and Dental Settlement Agreement and Order, as set forth in Paragraphs 100-103.

108. The Court shall be the sole forum for enforcement of this Medical and Dental Settlement Agreement and Order. Any order to achieve substantial compliance with the provisions of this Medical and Dental Settlement Agreement and Order shall be subject to the applicable provisions of the Prison Litigation Reform Act, 18 U.S.C. § 3626.

## XII. ATTORNEYS' FEES AND COSTS

109. The parties agree that Plaintiffs and the Class are entitled to reasonable attorneys' fees and costs on all issues covered by the First and Sixth Claims for Relief in Plaintiffs' Third Amended Complaint. Class Counsel may move for an award of reasonable attorneys' fees, litigation expenses, and costs for obtaining relief for the Plaintiff Class pursuant to the Eighth Amendment of the U.S. Constitution, the Fourteenth Amendment of the U.S. Constitution, Article I, Sections 7 and 17 of the California Constitution, 42 U.S.C. § 1988, Cal. Code. Civ. Proc. § 1021.5, or any other applicable law. Plaintiffs will seek reasonable attorneys' fees, litigation expenses, and costs after the Court issues final approval of this Medical-Dental Settlement Agreement and Order, or later in the ongoing case, at Class Counsel's discretion.

110. The parties further agree that Class Counsel is entitled to reasonable attorneys' fees, litigation expenses, and costs for post-settlement date work performed in conjunction with the First and Sixth Claims for Relief in Plaintiffs' Third Amended Complaint, including the Medical-Dental Settlement and Order.

Class Counsel's bills shall be reviewed and approved by the County on a quarterly basis; undisputed amounts shall be paid within 60 days of service.

111.   Class Counsel agrees to reduce their hourly rates by 10% for all work done after the settlement date and apply the rates set forth in Dkt. 959.  The benchmark for Class Counsel's post-settlement date work (other than work preparing for and filing enforcement motions or otherwise engaging in litigation) shall be $75,000.00 per quarter (including fees and costs).  The parties' agreement to a benchmark is without prejudice to Plaintiffs' right to seek a larger fee award in any quarter where the reasonable fees exceed the benchmark and Defendants' right to oppose any such fee request.  For any quarter in which attorneys' fees and costs exceed the benchmark, either party may request a settlement conference before Magistrate Judge Leshner.  If the parties are unable to resolve any such dispute before Judge Leshner, Class Counsel may apply to the Court for the additional reasonable attorneys' fees, litigation expenses, and costs, and the County may oppose such a request.  Class Counsel's work preparing for and filing enforcement motions or otherwise engaging in litigation shall not be subject to the above-referenced benchmark, nor to the 10% rate reduction referenced above.  In addition, either party may seek to modify the benchmark based on the actual fees incurred in the implementation of this Agreement.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

112.   For all travel costs in connection with post-settlement date work, Class Counsel shall be limited to the California State travel reimbursement rates in effect on the date of travel.  The current rates are described here: https://benefits.calhr.ca.gov/state-employees/work-resources/travel-reimbursements/.

IT IS SO STIPULATED.

Respectfully submitted,

DATED:  May 5, 2026              ROSEN BIEN GALVAN & GRUNFELD LLP

By: /s/ Gay Crosthwait Grunfeld
Gay Crosthwait Grunfeld

Attorneys for Plaintiffs and the Certified Class

DATED:  May 20, 2026            BURKE, WILLIAMS & SORENSEN, LLP

By: /s/ Elizabeth M. Pappy
Elizabeth M. Pappy

Attorneys for Defendants

### SIGNATURE CERTIFICATION

Pursuant to the Court's Electronic Case Filing Procedures Manual Section 2(f)(4), I certify that I have obtained the consent of all signatories to the electronic filing of the foregoing document.

DATED:  May 20, 2026            ROSEN BIEN GALVAN & GRUNFELD LLP

By: /s/ Gay Crosthwait Grunfeld
Gay Crosthwait Grunfeld

Attorneys for Plaintiffs and the Certified Class

[6005880.2] [4874464.2]                    29                    Case No. 3:20-cv-00406-AJB-DDL
JOINT MOTION RE: MEDICAL AND DENTAL ISSUES AND RESOLVING FIRST AND SIXTH CLAIMS FOR RELIEF

# [PROPOSED] ORDER

The Court, having reviewed the above Joint Motion of the parties, as well as the record in this case, and good cause appearing, hereby issues the following order:

1.     The remedies and actions described above are all consistent with the Prison Litigation Reform Act's requirement that the Court's orders be narrowly drawn, extend no further than necessary to correct the violation of a federal right, and be the least intrusive means necessary to correct the violation. *See* 18 U.S.C. § 3626(a)(1)(A).

2.     The Court certified a Class of all adults who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities. The Court appointed Plaintiffs as the class representatives for the Class. The Court appointed Plaintiffs' counsel—Gay Crosthwait Grunfeld and Van Swearingen of Rosen Bien Galvan & Grunfeld LLP, Aaron J. Fischer of the Law Office of Aaron J. Fischer, and Christopher M. Young of DLA Piper LLP (US)—as class counsel. Fed. R. Civ. P. 23(g)(1) and (4). *See* Order, Dkt. 435.

3.     This Order shall apply to the County, their agents, contractors, employees, successors in office, and all persons with knowledge of it. No person who has notice of this order shall fail to comply with it, nor shall any person subvert the order by any sham, indirection, or other artifice.

4.     The bond requirement is waived.

5.     The Court shall retain jurisdiction to enforce the terms of this Medical and Dental Settlement Agreement and Order, including through specific performance and all other remedies permitted by law or equity.

/ / /

/ / /

/ / /

/ / /

/ / /

JOINT MOTION AND ORDER RE MEDICAL AND DENTAL ISSUES AND  RESOLVING FIRST AND SIXTH CLAIMS FOR RELIEF

6.    Within 30 days of entry of this order, the parties shall jointly move for preliminary approval of the Medical and Dental Settlement Agreement and Order and Notice to the Class. A fairness hearing shall occur within 30 days of the Class being notified of the terms of the Medical and Dental Settlement Agreement and Order.

DATED: _____, 2026        _____
                                Honorable Anthony J. Battaglia