UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>                                    Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>                                    Defendants. | Case No.:  20-cv-00406-AJB-DDL<br><br>**ORDER GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' MEDICAL AND DENTAL SETTLEMENT AGREEMENT AS TO PLAINTIFFS' FIRST AND SIXTH CLAIMS FOR RELIEF**<br><br>**(Doc. No. 1093)** |

Before the Court is the parties' joint motion for preliminary approval of the parties' Medical and Dental Settlement Agreement. (Doc. No. 1093.) The Court finds the matter suitable for decision on the papers and without oral argument pursuant to Local Civil Rule 7.1.d.1. For the reasons set forth below, the Court **GRANTS** the joint motion for

1

preliminary approval of the parties' settlement regarding Plaintiffs' First and Sixth Claims for Relief.

## I.    BACKGROUND

The facts of this case have been recited in previous orders. (*See* Doc. No. 219.) Plaintiffs are current or former inmates of San Diego County Jail facilities (the "Jail"), operated by Defendants San Diego County Sheriff's Department and the County of San Diego. Plaintiffs bring this action on behalf of "themselves and the approximately 4,000 incarcerated people who are similarly situated on any given day" to "remedy the dangerous, discriminatory, and unconstitutional conditions in the Jail." (Third Amended Complaint ("TAC"), Doc. No. 231, ¶ 4.) Specifically, Plaintiffs contend Defendants' policies and practices contribute to the high death rates in the Jail, which "has for years exceeded the rates nationally and in other large California jails, [and] it reached chilling heights in 2021 when 18 people died, amounting to a death rate of 458 incarcerated people per 100,000." (*Id.* ¶ 1.)

In the operative complaint, Plaintiffs' First and Sixth Claims for Relief allege a failure to provide adequate medical and dental care to incarcerated people in violation of the of the United States and California Constitutions. (*See* TAC ¶¶ 442–47, 481–86.) On November 3, 2023, the Court granted the parties' joint motion to certify a class of individuals under Federal Rule of Civil Procedure 23(b)(2). (Doc. No. 435.) As relevant to this Order, the Court certified a class of individuals under Federal Rule of Civil Procedure 23(b)(2) defined as:

> All adults who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities ("Incarcerated People Class").

(*Id.* at 10.)  The Court also granted the parties' request for approval of the proposed class notice plan, ordering that copies of the notice be posted throughout the Jails in English and Spanish ("Class Notice"); that Defendant Sheriff's Department read the Class Notice to individuals who are illiterate or have a disability that may affect their ability to read the

2

Notice; and that copies of the TAC be provided by Defendant Sheriff's Department to class members upon request. (*Id.* at 11.)

The parties engaged in extensive fact and expert discovery related to the First and Sixth Claims for Relief, including three on-site facility inspections by Plaintiffs' medical experts (Dr. Jeffrey Keller and Dr. Kelly Ramsey) and dental expert (Dr. Jay Shulman), several Rule 30(b)(6) depositions, production of thousands of documents, exchanges of expert reports, and expert depositions. (Declaration of Gay Crosthwait Grunfeld ("Grunfeld Decl."), Doc. No. 1093-2, ¶ 5.)

Between January 2026 and May 2026, the parties exchanged multiple proposals to resolve the First and Sixth Claims for Relief. (Grunfeld Decl. ¶ 15.) The parties engaged in extensive, arms-length settlement discussions, overseen by Magistrate Judge David D. Leshner. (*Id.*) These discussions took place on January 26, 2026; February 12, 2026; February 25, 2026; March 13, 2026; March 25, 2026; and April 9, 2026. (Grunfeld Decl., Ex. A ¶ 3.) Magistrate Judge Leshner attended three of these settlement discussions. (Grunfeld Decl. ¶ 15.) The Board of Supervisors approved the Medical and Dental Settlement Agreement on May 19, 2026. (*Id.*) On May 20, 2026, the parties filed the Settlement Agreement as a joint motion. (Doc. No. 1070.) The Court approved the joint motion on May 26, 2026. (Doc. No. 1073.)

## II.   SETTLEMENT AGREEMENT

The Parties have executed a proposed Settlement Agreement ("Settlement Agreement" or "Settlement"). The primary terms of Settlement are provided below:

### A.   Improvements to access to care

The Settlement Agreement requires that a doctor or other provider evaluate all people with chronic or acute medical or dental issues at booking within one or seven days, depending on the presence or absence of symptoms, and that the County continue medications and treatments people were receiving in the community prior to their arrest. The Settlement Agreement also establishes timelines for health care staff to evaluate

20-cv-00406-AJB-DDL

people who submit requests for medical or dental care. (*See* Grunfeld Decl., Ex. A ¶¶ 24, 27, 31–37.)

**B.    Improvements to treatment for people with chronic conditions**

The Settlement Agreement requires the County to continue to develop and modify individual treatment plans for all people with chronic conditions, to develop disease management guidelines (DMGs) for many of the most common chronic conditions, and to treat patients consistent with the DMGs or document a clinical justification for deviation. (*Id.* ¶¶ 57–59.)

**C.    Improvements in the treatment of people with substance use disorders and who are experiencing withdrawal**

Since the filing of this lawsuit, the County has made substantial improvements for treatment for people with substance use disorders. The Settlement Agreement continues those improvements and requires others, including eliminating any policy where the County would discontinue treatment if someone is found to have diverted medication and requiring that the County monitor people experiencing withdrawal at clinically appropriate intervals. (*Id.* ¶¶ 71–74.)

**D.    Increases in dental staffing**

The Settlement Agreement mandates that the County have at least one dentist for every 1000 people in the Jail, which will likely lead to a significant improvement in dental staffing at the Jail. (*Id.* ¶ 77.)

**E.    Improvements in training for sworn and health care staff**

The Settlement Agreement mandates that the County provide health care staff with targeted training regarding withdrawal and provide sworn staff with training regarding when to refer incarcerated people to health care staff. (*Id.* ¶¶ 54–55.)

**F.    Improvements to continuous quality improvement and review of sentinel events, including deaths**

The Settlement Agreement requires that the County conduct its own review of the most important medical and dental processes at the Jail, including the intake process, the

health care request process, and the process for providing access to offsite care. In addition, the agreement requires that, when any incarcerated person dies or suffers permanent medical or dental injury, the County must conduct a review, including performing a "root cause" analysis to identify any deficiencies in care and recommending and implementing any corrective action. (*Id.* ¶¶ 49–50.)

### G. Addressing refusals of care

The Settlement Agreement requires that the County provide counseling to all people who refuse any medication or appointments. When people refuse lifesaving treatments or medication, Jail staff must provide counseling and must notify a provider, who will decide if additional counseling is appropriate. (*Id.* ¶¶ 39–45.)

### H. Requiring that people with insulin pumps can keep them

The Settlement Agreement mandates that people who enter the Jail with insulin pumps can retain possession of them and that the County will provide appropriate insulin and take reasonable steps to repair or replace broken pumps. (*Id.* ¶ 61.)

### I. Appointment of neutral experts

The Settlement Agreement requires the appointment of neutral experts (one medical and one dental) to report twice yearly on the County's implementation of the agreement based on inspection of the facilities, interviews with staff and class members, as well as access to and review of the County's policies and documentation. Id., ¶¶ 83–92.

### J. Class Counsel participation

The Settlement Agreement provides for the continued involvement of Class Counsel, including through interviews at the facilities with class members as provided by the Settlement Agreement, accompanying the independent neutrals on their inspections of the facilities, and access to documents as provided by the Settlement. (*Id.* ¶¶ 88, 93, 98.)

### K. Continuing Court Jurisdiction

The Settlement Agreement provides that the Court will exercise continuing jurisdiction over the Settlement Agreement until the County has achieved substantial compliance with the Settlement Agreement. (*Id.* ¶ 107.)

## II.     LEGAL STANDARD

A class action may not be settled without court approval. Fed. R. Civ. P. 23(e). At the preliminary stage, the Court must first assess whether a class exists.[1] *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the court must determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Rule 23(e)(1) requires the court to take certain steps to ensure proper administration of the settlement, including "direct[ing] notice in a reasonable manner to all class members who would be bound by the proposal."

"[P]reliminary approval and notice of the settlement terms to the proposed class are appropriate where '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with [sic] the range of possible approval . . . .'" *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST (RZx), 2013 WL 169895, *2 (C.D. Cal. Jan. 16, 2013) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation and citation omitted)) and (citing *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("[t]o determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.")).

///

///

---

[1] As noted above, the Court granted the parties' Joint Motion for Class Certification, which, as relevant here, certified a class of individuals under Rule 23(b)(2), defined as "All adults who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities ("Incarcerated People Class")." (Doc. No. 435 at 10.)

20-cv-00406-AJB-DDL

## IV.    DISCUSSION

### A.    A Product of Serious, Informed, Non-Collusive Negotiations

Federal Rule of Civil Procedure 23(e) requires a district court to determine whether a proposed class action settlement is fundamentally fair, adequate, and reasonable. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026; *see also Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982) (holding a settlement must stand or fall in its entirety because a district court cannot "delete, modify or substitute certain provisions"). A court must assess several factors to determine the overall fairness of a proposed class action settlement:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026.

Plaintiffs and Class Counsel have adequately represented the Class as required by Rule 23(e)(2)(A). Class Counsel have demonstrated their ability to vigorously prosecute this action on behalf of the Incarcerated People Class through conducting significant law-and-motion practice. The facts and the parties' respective legal positions have been extensively briefed in this Court. Class Counsel extensively investigated Plaintiffs' claims and Defendants' defenses, and negotiated an exchange of information sufficient to enable them to fully evaluate the strengths and weaknesses of the claims and defenses raised by both sides. Moreover, Plaintiffs' Counsel defeated the County's motion for summary judgment as to the medical and dental claims. (Doc. No. 961); *see In re Wireless Facilities, Inc. Secs. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

20-cv-00406-AJB-DDL

Second, the settlement was reached with the assistance of an experienced mediator further suggests the settlement is fair and reasonable. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 620 (N.D. Cal. 2014) (noting that discovery and the use of a mediator "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement") (citation omitted). Between January 2026 and May 2026, the parties participated in several settlement discussions with Magistrate Judge Leshner. (Grunfeld Decl. ¶ 15.) The parties also conducted settlement discussions without the involvement of Judge Leshner. (*Id.*) The Board of Supervisors approved the Mental Health Settlement on May 19, 2026. (*Id.*) On May 20, 2026, the parties filed the Settlement Agreement as a joint motion. (Doc. No. 1070.) The Court approved the joint motion on May 26, 2026. (Doc. No. 1073.)

Third, courts generally afford great weight to the recommendation of counsel with respect to settlement because counsel "are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Secs. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, counsel found the strengths and risks of the case support the compromises reached by both sides. Given Plaintiffs' counsel's experience with similar class action litigation, the Court finds that affording deference to their decision to settle the third claim, as well as the terms of that settlement, is appropriate.

Taken together, these facts support finding the settlement to be fair, reasonable, and adequate.

**B.    The Proposal Was Negotiated at Arm's Length**

In reviewing the next Rule 23(e) factor, the Court must examine the Settlement for additional indicia of collusion that would undermine a prima facie arm's length negotiation. Signs of collusion may include (a) disproportionate distributions of settlement funds to counsel; (b) negotiation of attorney's fees separate from the class fund (a "clear sailing" provision); or (c) an arrangement for funds not awarded to revert to the defendants. *See Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). If multiple indicia of implicit

8

collusion are present, the district court has a heightened obligation to assure that fees are not unreasonably high. *Id.*

Based on the intensive settlement process, the Court finds the Settlement was negotiated at arm's length and there is no evidence of collusion. That the Settlement was reached with the assistance of the magistrate judge further suggests that the settlement is fair and reasonable. *See Bellinghausen*, 303 F.R.D. at 620. As discussed above, the parties attended numerous settlement conferences with Judge Leshner. Although this case is still ongoing, the parties were able to reach a class-wide settlement as to the first and sixth claims. The Settlement Agreement has been reduced to writing and executed as of May 20, 2026. (*See* Proposed Settlement Agreement.) Moreover, as this case is one for injunctive relief, there is no risk of disproportionate distribution of settlement funds to counsel, a "clear sailing" provision, or of an arrangement for funds now awarded to revert to the defendants. Thus, this factor weighs in favor of approval.

**C.      The Relief Provided for the Class Is Adequate**

**1.      The Costs, Risk, and Delay of Trial and Appeal**

Moving on, in assessing "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial . . . ." *Hanlon*, 150 F.3d at 1026.

Here, this is a complex class action which has been litigated for years. Plaintiffs allege Defendants violated a number of constitutional and statutory rights. (*See generally* TAC.) Given the complexity and age of the case, the Court concludes that the strength of Plaintiffs' claims against Defendants, and the risk, expense, complexity, and risk of maintaining class status throughout trial weighs in favor of approving the Settlement. The policies, procedures, and practices to protect Class Members' constitutional rights, the expanding medical and dental policies and procedures, and the neutral experts to issue reports on compliance all result in a substantial and tangible recovery, without the considerable risk, expense, and delay of trial and post-trial litigation.

### 2.     Attorneys' Fees

This Court has an "independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). At the fee-setting stage, the interests of the plaintiffs and their attorneys diverge and is described as "adversarial"; therefore, the district court assumes a fiduciary role for the class plaintiffs. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).

The parties have not reached an agreement regarding any specific amount of attorneys' fees and expenses to be recovered. Instead, fees and costs are to be addressed through further litigation. Class counsel has agreed to bear the risk of litigating the amount of fees and expenses recoverable, with no guarantee of receiving any specific amount. Once class counsel moves for interim attorney fees, the Court will cross check the requested amount with the lodestar amount based upon counsels' submission and will determine whether the award is reasonable.

### D.     Notice

Upon a settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." Fed. R. Civ. P. 23(e)(1)(B). Federal Rule of Civil Procedure 23(c)(2) states that for any class certified under Rule 23(b)(2), "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A).

Here, the parties have submitted to the Court a Notice Settlement Agreement ("Proposed Settlement Notice"). (*See* Doc. No. 1093-2 at 46–47.) Having reviewed the Proposed Settlement Notice, the Court concludes the notice complies with Federal Rule of Civil Procedure 23.

The Court previously issued an order regarding how to distribute notice for the settlement of Plaintiff's third claim. (*See* Order Granting Joint Motion for Preliminary Approval of Parties' Settlement Agreement as to Plaintiffs' Third

20-cv-00406-AJB-DDL

Claim, Doc. No. 828 at 13–14.) The parties request the same notice distribution method here:

> 1. Post the Proposed Settlement Notice in English and Spanish throughout the Jail on white paper and in 16-point font for the Class, including in housing units, intake areas, holding cells, and medical units;
>
> 2. Provide a hard copy of the Proposed Settlement Notice to every individual who enters the Jail for a period of four weeks;
>
> 3. Provide the Proposed Settlement Notice in English and Spanish on video kiosks in housing units; and
>
> 4. Read the Proposed Settlement Notice to incarcerated people who have a disability that may affect their ability to read the notice.

The Court finds the parties' proposed methods of disseminating the Proposed Settlement Notice meet all due process and other legal requirements, and are the most effective and appropriate ways to provide notice to incarcerated persons at the Jails.

### E.    Final Approval Hearing

A court must hold a hearing before finally determining whether a class settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). The Court thus **ORDERS** that the final fairness hearing be set for **Thursday, November 19, 2026, at 10:00 AM**.

## VI.    CONCLUSION

Based on the foregoing, the Court **GRANTS** the parties' Joint Motion for Preliminary Approval of the Medical and Dental Settlement. As to distribution of notice, the Court **ORDERS** Defendants to:

> 1. Post the Proposed Settlement Notice in English and Spanish throughout the Jail on white paper and in 16-point font for the Subclass, including in housing units, intake areas, holding cells, and medical units;
>
> 2. Provide a hard copy of the Proposed Settlement Notice to every individual who enters the Jail for a period of four weeks;
>
> 3. Provide the Proposed Settlement Notice in English and Spanish on video kiosks in housing units; and
>
> 4. Read the Proposed Settlement Notice to incarcerated people who have a disability that may affect their ability to read the notice.

20-cv-00406-AJB-DDL

The Court additionally:

1. **ORDERS** Defendants to distribute notice to Class Members within seven (7) business days of entry of this Order;

2. Sets a deadline of forty-five (45) days from distribution of notice for objections by Class Members;

3. Sets a deadline of fifteen (15) days from the objection deadline for filing of Motion of Final Approval and for responses to any timely-filed Class Member Objections; and

4. Sets a hearing on fairness and final approval of settlement to be held on **Thursday, November 19, 2026, at 10:00 AM**.

**IT IS SO ORDERED.**

Dated:  June 25, 2026

Hon. Anthony J. Battaglia
United States District Judge

12

20-cv-00406-AJB-DDL