UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,<br><br>                                  Plaintiffs,<br><br>v.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,<br><br>                                  Defendants. | Case No.:  20-cv-00406-AJB-DDL<br><br>**ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF THE MENTAL HEALTH SETTLEMENT**<br><br>**(Doc. No. 1068)** |

Before the Court is the parties' Joint Motion for Final Approval of the Mental Health Settlement ("Joint Motion"). (Doc. No. 1068.) A hearing on the Joint Motion was held on July 16, 2026. (Doc. No. 1101.) For the reasons set forth below, the Court **GRANTS** the Joint Motion for Final Approval of the Mental Health Settlement.

1

20-cv-00406-AJB-DDL

## I.   BACKGROUND

The facts of this case have been recited in previous orders. (*See* Doc. No. 219.) Plaintiffs are current or former inmates of San Diego County Jail facilities (the "Jail"), operated by Defendants San Diego County Sheriff's Department and the County of San Diego. Plaintiffs bring this action on behalf of "themselves and the approximately 4,000 incarcerated people who are similarly situated on any given day" to "remedy the dangerous, discriminatory, and unconstitutional conditions in the Jail." (Third Amended Complaint ("TAC"), Doc. No. 231, ¶ 4.) Specifically, Plaintiffs contend Defendants' policies and practices contribute to the high death rates in the Jail, which "has for years exceeded the rates nationally and in other large California jails, [and] it reached chilling heights in 2021 when 18 people died, amounting to a death rate of 458 incarcerated people per 100,000." (*Id.* ¶ 1.)

In the operative complaint, Plaintiffs' second claim alleges a failure to provide adequate mental health care to incarcerated people in violation of the of the United States and California Constitutions. (*See* Doc. No. 231 ¶¶ 448–53.) On November 3, 2023, the Court granted the parties' joint motion to certify a class of individuals under Federal Rule of Civil Procedure 23(b)(2). (Doc. No. 435.) As relevant to this Order, the Court certified a class of individuals under Federal Rule of Civil Procedure 23(b)(2) defined as:

> All adults who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities ("Incarcerated People Class").

(*Id.* at 10.)

The Court also granted the parties' request for approval of the proposed class notice plan, ordering that copies of the notice be posted throughout the Jails in English and Spanish ("Class Notice"); that Defendant Sheriff's Department read the Class Notice to individuals who are illiterate or have a disability that may affect their ability to read the Notice; and that copies of the TAC be provided by Defendant Sheriff's Department to class members upon request. (*Id.* at 11.)

The parties started discussing the potential for settlement of issues related to mental

health care on February 5, 2025. (Doc. No. 1038-2 ¶ 19.) Between February 5, 2025, and January 5, 2026, the parties participated in twenty-three settlement conferences before Magistrate Judge Leshner. (Doc. No. 1038-1 at 8.) The parties also conducted settlement discussions, spanning dozens of hours, without the involvement of Judge Leshner. (Doc. No. 1038-2 ¶ 19.) The Board of Supervisors approved the Mental Health Settlement on February 10, 2026. (Doc. No. 1038-1 at 8.) On February 24, 2026, the parties filed the Settlement Agreement as an amended joint motion. (Doc. No. 1034.) The Court approved the amended joint motion the following day. (Doc. No. 1036.)

The parties subsequently filed a joint motion for preliminary approval of the Mental Health Settlement. (Doc. No. 1038.) The Court granted the joint motion and entered the order granting preliminary approval (the "Preliminary Approval Order"), which inter alia approved the parties' distribution method for class notice, set administrative notice and objection deadlines, and tentatively approved the Mental Health Settlement. (Doc. No. 1041.) The Court ordered Defendants to distribute notice to the Class Members within seven business days of the Preliminary Approval Order and set a deadline of 45 days from distribution of notice for objections by Class Members. (*Id.* at 10–11.) After notice was effectuated, the Court received thirty-six letters from people incarcerated at the Jail commenting on the proposed settlement.[1] (Doc. Nos. 1043–46; 1049–51; 1053–54; 1056–57; 1059; 1061–65, 1067; 1074–91.)

On May 19, 2026, the parties filed the Joint Motion for Final Approval of the Mental Health Settlement. (Doc. No. 1068.) The parties provide the Declaration of Gay Crosthwait Grunfeld in support of the Joint Motion for Final Approval. (Doc. No. 1068-2, "Grunfeld Decl.".) The Grunfeld Declaration includes a copy of the February 24, 2026 Amended Joint Motion and Order Re: Mental Health Issues and Resolving Second Claim for Relief

---

[1] Eighteen of the letters were received prior to the parties filing the Joint Motion and were addressed in the Joint Motion. (*See* Doc. Nos. 1043–46; 1049–51; 1053–54; 1056–57; 1059; 1061–65, 1067.) Eighteen letters were received after the parties filed the Joint Motion. (Doc. Nos. 1074–91.) These letters were addressed at the Fairness Hearing.

("Mental Health Settlement Agreement") and a copy of email correspondence between Defendants' Counsel and Plaintiffs' Counsel, confirming that Defendants distributed the Class Notice in accordance with this Court's Order Granting Preliminary Approval. (Doc. No. 1068-2 at 62–68.)

A Fairness Hearing on the Mental Health Settlement and the Motion for Final Approval was held on July 16, 2026.

## II.   SETTLEMENT AGREEMENT

The parties have executed the Mental Health Settlement Agreement. (*See* Doc. No. 1068-2, "Ex. A.") The Mental Health Settlement Agreement resolves Plaintiffs' Second Claim for Relief and identifies the measures that Defendants have agreed to implement to resolve that claim. The primary terms of the Mental Health Settlement Agreement are as follows:

### A.   Policies, Procedures, and Practices to Protect Constitutional Rights

To protect the constitutional rights of Class Members with respect to adequate mental health care, Defendants will take or will continue taking the following actions:

1. Timely referrals to mental health clinicians and psychiatric providers;
2. Assignment Class Members to appropriate Levels of Care and housing units that meet Class Members' mental health needs;
3. Improving Mental health treatment and programming;
4. Continuing to improve confidentiality;
5. Assessing whether individuals should not be placed in Administrative Separation or potentially be moved out due to mental health concerns;
6. Implementing assessments and treatment plans related to suicide prevention;
7. Implementing Release Planning services consistent with the individual's needs and providing medication at release;
8. Implementing a mental health system needs assessment;
9. Improving mental health policies and staff training; and
10. County oversight of all mental health staff working in the jails.

20-cv-00406-AJB-DDL

**B.      Needs Assessment and Expansion of Mental Health Units**

The County initiated a plan prior to the signing of the Mental Health Settlement Agreement to expand Outpatient Stepdown Units for people with mental health needs at Rock Mountain Detention Facility. In addition to these enhancements, under the Mental Health Settlement Agreement, the County agrees to open an additional Outpatient Stepdown module at Rock Mountain Detention Facility by March 2027 intended for high-security class members. The County will also, within one year of the signing of the Mental Health Settlement Agreement, conduct a systemwide needs assessment to develop a bed and staffing plan to meet the needs of the mental health population at its jail facilities. Within two years of the completion of the needs assessment, the County agrees to utilize the findings of the systemwide needs assessment to develop and implement a bed plan and staffing plan to meet the needs of the mental health population through the defined levels of care.

**C.      Neutral Expert to Issue Reports on Compliance**

To help ensure compliance with the Mental Health Settlement Agreement, the County agrees to retain a neutral expert with relevant professional expertise. The neutral expert will be responsible for evaluating compliance with policies, practices, procedures, and training under the Mental Health Settlement Agreement. The neutral expert will conduct site visits of jail facilities twice per year, interview staff and Class Members, and have access to documents, which they will use to issue twice-yearly reports on compliance with the Mental Health Settlement Agreement. The parties will accompany the neutral expert on site visits and will have the opportunity to provide comments on the neutral expert's draft reports.

**D.      Continuing Court Jurisdiction**

The Court will exercise continuing jurisdiction over the Mental Health Settlement Agreement until the County has achieved substantial compliance with the Mental Health Settlement Agreement.

20-cv-00406-AJB-DDL

## III.   MOTION FOR FINAL APPROVAL

The Parties filed the instant Motion for Final Approval, asking the Court to find that (1) the Mental Health Settlement is fair and reasonable and (2) the comments and objections to the Mental Health Settlement do not warrant rejecting the Settlement. (Doc. No. 1068-1 at 12–15, 15–18.) For the reasons set forth below, the Court **GRANTS** the Motion for Final Approval.

### A.   Legal Standard

A class action may only be settled with court approval, "which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)). "Courts reviewing class action settlements must 'ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights,' while also accounting for 'the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556, 568 (9th Cir. 2019) (en banc)).

### B.   Class Certification

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *See* Fed. R. Civ. P. 23(e)(1)(B). However, "[i]f the court has already certified a class [prior to the parties reaching settlement], the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment.

Here, the Court certified the Class after full briefing on the matter, prior to the parties reaching a settlement. (*See* Doc. No. 435.) Because the Mental Health Settlement does not call for any changes to the certified class, the claims, defenses, or issues, the Court does not disturb its prior certification order and finds that no further analysis is necessary.

20-cv-00406-AJB-DDL

## C.    Adequacy of Notice

Next, the Court must determine whether the Class received adequate notice. *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]"). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

As discussed above, the Court approved the proposed Class Notice. (Doc. No. 1041 at 9–10.) Filed in conjunction with the parties' Motion for Final Approval, the Grunfeld Declaration states Defendants' Counsel confirmed with Plaintiffs' Counsel that Defendants posted the Class Notice in accordance with the Court's Order. (Doc. No. 1068-2 ¶ 21.) Specifically, pursuant to the Notice Plan, Defendants (1) posted the Proposed Settlement Notice in English and Spanish throughout the San Diego County Jail facilities on white paper and in 16-point font for the Subclass, including in housing units, intake areas, holding cells, and medical units; (2) provided a hard copy of the Class Notice to every individual who entered the Jail for a period of four weeks; (3) provided the Class Notice in English and Spanish on video kiosks in housing units; and (4) read the Class Notice to incarcerated people who have a disability that may affect their ability to read the Class Notice. (*See* Doc. No. 1041 at 9–10.)

Having reviewed the Grunfeld Declaration, the Court finds that Defendants duly effectuated the Court-approved Class Notice and that Class Members received adequate notice of the Settlement.

## D.    Fairness, Reasonableness, and Adequacy of Settlement

Although Rule 23(e) was previously "silent respecting the standard by which a proposed settlement is to be evaluated, the 'universally applied standard [was] whether the settlement is fundamentally fair, adequate, and reasonable.'" *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather

than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026; *see also Officers for Justice*, 688 F.2d at 630 (holding a settlement must stand or fall in its entirety because a district court cannot "delete, modify or substitute certain provisions").

The Ninth Circuit has proscribed several factors for district courts to consider when evaluating the fairness of a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Campbell*, 951 F.3d at 1121. District courts may consider some or all of these factors. *Id.* (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). "The district court's approval order must show not only that 'it has explored [these] factors comprehensively,' but also that the settlement is 'not[] the product of collusion among the negotiating parties.'" *In re Bluetooth*, 654 F.3d at 947 (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000)).

In 2018, Rule 23(e)(2) was amended to require courts to consider whether:

> (A)    the class representatives and class counsel have adequately represented the class;
> (B)    the proposal was negotiated at arm's length;
> (C)    the relief provided for the class is adequate, taking into account:
>     (i)    the costs, risks, and delay of trial and appeal;
>     (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv)    any agreement required to be identified under Rule 23(e)(3); and
>     (v)    the proposal treats class members equitably relative to each other.

8

Fed. R. Civ. P. 23(e)(2). The amended Rule 23(e)(2) factors were not intended to replace the factors developed by circuits. *Cabrales v. Bae Sys. San Diego Ship Repair, Inc.*, No. 21-cv-02122-AJB-DDL, 2024 WL 4994339, at \*15 (S.D. Cal. Dec. 5, 2024) (citing Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment). Thus, the Court analyzes the Rule 23(e)(2) factors as well as the factors articulated by Ninth Circuit.

### 1.     Rule 23(e)(2) Factors

In its Preliminary Approval Order, the Court found that the applicable Rule 23(e)(2) factors weighed in favor of approving the Mental Health Settlement. (*See* Doc. No. 1041 at 5–9.) Given the complexity and age of the case, the Court concluded that weighing the strength of Plaintiffs' claims against Defendants, and the risk, expense, complexity, and risk of maintaining class status throughout trial, weighed in favor of approving the Settlement. (*Id.*) The Court found that the policies, procedures, and practices proposed to protect Class Members' constitutional rights, the expanding mental health facilities, and the neutral experts to issue reports on compliance all result in a substantial and tangible recovery, without the considerable risk, expense, and delay of trial and post-trial litigation. (*Id.* at 8.)

As of the filing of the Joint Motion for Final Approval, sixteen Class Members responded to the proposed settlement, including one Class Member who submitted three sets of comments. (*See* Doc. Nos. 1043–46; 1049–51; 1053–54; 1056–57; 1059; 1061–65; 1067.) An additional eighteen comments were submitted after the filing on the Joint Motion for Final Approval was filed. (*See* Doc. Nos. 1074–91.) Of the thirty-six comments submitted, four writers object to the Mental Health Settlement Agreement (including the one commenter who submitted three sets of comments), twenty-four writers offer comments which are neither in clear opposition nor support of the Settlement Agreement, and six support the Settlement Agreement. Class Counsel states that they reached out to each of these writers seeking more information and, except for one writer who is out of

9

custody and currently unreachable, mailed each a copy of the Settlement Agreement.[2] (*See* Grunfeld Decl. ¶¶ 22–23.)

### i. Objections

As it relates to the letters submitted in opposition to the Settlement, two writers object and seek a monetary settlement. (*See* Doc. Nos. 1049; 1059.) A third writer submitted three objection letters which raise concerns that the Mental Health Settlement Agreement may cause more mixing of incarcerated people who do and do not have serious mental illness as well as concerns related to Defendants providing tablets to incarcerated persons at only East Mesa Reentry Facility and not the other facilities. (*See* Doc. Nos. 1053–54; 1056.) A fourth writer appears to object on the grounds that the Settlement Agreement should be more expansive. (Doc. No. 1074.)

The first writer contends that an award of $77,000,000 for damages is necessary. (*See* Doc. No. 1049.) Plaintiffs' Counsel has been unable to reach this commenter because they were released from custody. (*See* Grunfeld Decl. ¶ 23.) The second writer requests that the Mental Health Settlement Agreement be delayed and restructured to seek damages payable to local universities to study generationally transmitted trauma and provide scholarships to underserved youth. (*See* Doc. No. 1059.)

In response to these two writers, Class Counsel argues the letters requesting damages should not prevent approval of the Mental Health Settlement Agreement. (Doc. No. 1068-1 at 15–16.) Class Counsel states that the certified Class seeks only declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2) (*see id.* (citing Doc. No. 231 at 225–230)), and the settlement does not bar class members from pursuing individual damage claims (*id.*). The Court agrees.

---

[2] At the Fairness Hearing, Class Counsel confirmed they mailed copies of the Mental Health Settlement Agreement to, spoken with, and/or placed callbacks for individuals whose letters were docketed after the parties filed the Joint Motion for Final Approval.

The third objector's first concern is that the Settlement Agreement may cause more mixing of incarcerated people who do and do not have serious mental illness resulting in violence. In response, Class Counsel represents that the Settlement Agreement's terms do not heighten—but rather are designed to mitigate—any such risk. (Doc. No. 1068-1 at 16.) Class Counsel provides that nothing in the Settlement Agreement obviates the County's duty to classify incarcerated people and place them in safe housing, and the expansion of the mental health program under the Settlement Agreement will support such efforts. (*Id.*) As it relates to this objector's second concern regarding the use of tablets, Class Counsel states that the Settlement Agreement provides for the use of tablets across the jail system and will not be limited to East Mesa. (*Id.*)

Class Counsel discussed the fourth objector's letter at the Fairness Hearing. (*See* Doc. No. 1101.) As with the previous objector, Class Counsel represents that the Settlement Agreement's terms do not heighten—but rather are designed to mitigate—many of the concerns raised in the objection letter. Again, the Court agrees with Class Counsel.

### ii.      Neutral or Unclear

Twenty-four writers submitted comments that appear to neither clearly support nor object to the Mental Health Settlement Agreement. (*See* Doc. Nos. 1046; 1050; 1061–65; 1075–91.) Two letters are "difficult to understand but [do] not raise any objections." (Doc. Nos. 1046; 1079; *see* 1068-1 at 16.) The next letter states the writer wants to address the Court regarding release planning and medication, and the mental health needs assessment. (*See* Doc. No. 1050.) Another writer discusses concerns related to police conduct and does not raise any objections related to the Settlement Agreement. (Doc. No. 1086.) Other commenters state that they agree inmates do not receive adequate mental health care (Doc. Nos. 1087; 1091) and discuss the difficulties of being incarcerated while suffering from a severe mental illness (Doc. No. 1090). These letters do not raise any objections to the Settlement Agreement, which is aimed at mitigating many of concerns raised in these letters. The next letter appears to be a written response the incarcerated individual received from Class Counsel. (Doc. No. 1088.) It does not raise any objections. (*See id.*)

20-cv-00406-AJB-DDL

An additional set of sixteen letters, each from the same facility, make nearly identical comments. (*See* Doc. Nos. 1061–65; 1075–78; 1080–85; 1089.) These sixteen letters comment that the system is not meeting minimum standards for mental health care including with respect to sufficient personnel, a consistent intake process, and clinical evaluation and assignment of incarcerated persons to an appropriate level of care. (*Id.*) These commenters also note difficulty accessing information about the Mental Health Settlement Agreement including via the jail kiosks. (*Id.*) Plaintiffs' Counsel represents that they have mailed copies of the Mental Health Settlement Agreement to, spoken with, and/or placed callbacks for each of these commenters. (Doc. No. 1068-1 at 16–17.) The Court agrees with Class Counsel that none of these commenters clearly support or object to the Mental Health Settlement Agreement, and to the extent they seek additional mental health care, their input supports approval of the Mental Health Settlement Agreement.

### iii. Supportive

Six Class Members filed letters in support of the Mental Health Settlement Agreement, including one who initially wrote in opposition. (*See* Doc. No. 1068-1 at 17.) The first letter comments on concerns with adequacy of mental health care at the Jails, including obtaining psychotropic medications. (*See* Doc. No. 1043.) The second letter argues that it is unfair for Class Members with mental illness to obtain relief through a settlement when other Class Members do not obtain relief. (Doc. No. 1044.) Plaintiffs' Counsel states that they spoke with this writer who, upon learning more about the case, confirmed support of the Settlement Agreement. (*See* Grunfeld Decl. ¶ 24.) The third wrote to raise concerns with not being able to receive certain psychotropic medications and adequate out-of-cell time. (*See* Doc. No. 1045.) The fourth letter includes a positive review of many conditions at the jail facilities along with recommended improvements regarding substance use withdrawal treatment, program wait times, and video court. (*See* Doc. No. 1051.) The fifth Class Member wrote in support of the Settlement Agreement and to raise concerns about mental health treatment. (*See* Doc. No. 1057.) The sixth commenter wrote that the system is not meeting minimum standards for mental health care including with

respect to sufficient personnel, a consistent intake process, and clinical evaluation and assignment of incarcerated persons to an appropriate level of care. (*See* Doc. No. 1067.) Plaintiffs' Counsel states that they spoke with all six of these writers. (*See* Grunfeld Decl. ¶ 24.) All six individuals confirmed their support of the Mental Health Settlement Agreement. (*Id.*)

After careful review of all the comments submitted related to the Mental Health Settlement, the Court finds none of the Class Members' letters merit rejecting the Mental Health Settlement. As it relates to the objectors, because "the general rule is that a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damages claims by class members, even if based on the same events," *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996), Class Members may pursue individual damages in separate proceedings. The Court also agrees with Class Counsel that the Settlement Agreement is designed to mitigate potentially violent interactions in the Jails. Thus, that writer's concerns are addressed by the terms of the Settlement Agreement. None of the remaining submissions object to the Settlement Agreement.

Accordingly, the Court reaffirms and incorporates by reference its analysis of the Rule 23(e) requirements as set forth in its Preliminary Approval Order. (See Doc. No. 1041 at 5–12); *see also Bloom v. City of San Diego*, No. 17-cv-02324-AJB-DEB, 2024 WL 4495512, at *6 (S.D. Cal. Oct. 15, 2024) (finding settlement to be "fair, reasonable, and adequate" where case only sought injunctive relief in part because class members were free to independently file suit for damages).

### 2.    Additional Ninth Circuit Factors

Because the amended Rule 23(e)(2) factors were not intended to replace the factors developed by circuits, the Court now turns to analyze the factors traditionally considered by this Circuit. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

### i.    Experience and Views of Counsel

In its Preliminary Approval Order, the Court found the experience and views of Plaintiffs' Counsel weighed in favor of approval. (Doc. No. 1041 at 7.) As no changes to

Plaintiffs' Counsel have occurred, no relevant facts have changed, and no objections regarding Plaintiffs' Counsel have been brought to the Court, the Court reaffirms and incorporates by reference its analysis on this factor and finds this factor weighs in favor of Settlement approval.

### ii.      Presence of a Governmental Participant

"The presence of a governmental participant in the class action settlement generally weighs in favor of approving the settlement." *Fitzgerald v. Pollard*, No. 20-cv-848-JM-MSB, 2024 WL 4596401, at *7 (S.D. Cal. Oct. 28, 2024).

Here, Defendants include the County of San Diego, the San Diego County Sheriff's Department, and the San Diego County Probation Department. Accordingly, this factor weighs in favor of approving the Settlement. *See id.* ("Defendants are various agents of the State of California and its corrections department who support the Settlement. This factor, therefore, weighs in favor of settlement.")

### iii.      Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)).

Here, although many letters were submitted in response to the Notice of Settlement, only a few of those letters contained objections to the Settlement Agreement. The Court has carefully reviewed each of the letters submitted by the Class Members. (*See* Doc. Nos. 1043–46; 1049–51; 1053–54; 1056–57; 1059; 1061–65; 1067; 1074–91.) As discussed above, the principal complaint was that the Settlement does not include damages. Yet, the certified Class only seeks declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2). Because the Settlement does not bar Class Members from separately pursuing claims for individual damages, the Court finds the objections of Class Members, who can still pursue damages, do not weigh against approving the Settlement.

## IV.    CONCLUSION

Having analyzed the Rule 23(e)(2) factors and the Ninth Circuit's factors, and finding them weigh heavily in favor of approval, the Court finds the Mental Health Settlement fundamentally fair, adequate, and reasonable. *See Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution[,] especially . . . in complex class action litigation . . . ."). Accordingly, based on the foregoing, the Court **GRANTS** the Joint Motion for Final Approval of the Mental Health Settlement. (Doc. No. 1068.)

**IT IS SO ORDERED.**

Dated:  July 23, 2026

Hon. Anthony J. Battaglia
United States District Judge

15

20-cv-00406-AJB-DDL