UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DARRYL DUNSMORE, ANDREE ANDRADE, ERNEST ARCHULETA, JAMES CLARK, ANTHONY EDWARDS, LISA LANDERS, REANNA LEVY, JOSUE LOPEZ, CHRISTOPHER NELSON, CHRISTOPHER NORWOOD, JESSE OLIVARES, GUSTAVO SEPULVEDA, MICHAEL TAYLOR, and LAURA ZOERNER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SAN DIEGO, SAN DIEGO COUNTY PROBATION DEPARTMENT, and DOES 1 to 20, inclusive,

Defendants.

Case No.: 20-cv-00406-AJB-DDL

**ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF THE MEDICAL AND DENTAL SETTLEMENT**

**(Doc. No. 1114)**

Before the Court is the parties' Joint Motion for Final Approval of the Medical and Dental Settlement ("Joint Motion"). (Doc. No. 1114.) A hearing on the Joint Motion was held on November 19, 2026. (Doc. No. 1133.) For the reasons set forth below, the Court **GRANTS** the Joint Motion for Final Approval of the Medical and Dental Settlement.

## I. BACKGROUND

The facts of this case have been recited in previous orders. (*See* Doc. No. 219.) Plaintiffs are current or former inmates of San Diego County Jail facilities (the "Jail"), operated by Defendants San Diego County Sheriff's Department and the County of San Diego. Plaintiffs bring this action on behalf of "themselves and the approximately 4,000 incarcerated people who are similarly situated on any given day" to "remedy the dangerous, discriminatory, and unconstitutional conditions in the Jail." (Third Amended Complaint ("TAC"), Doc. No. 231, ¶ 4.) Specifically, Plaintiffs contend Defendants' policies and practices contribute to the high death rates in the Jail, which "has for years exceeded the rates nationally and in other large California jails, [and] it reached chilling heights in 2021 when 18 people died, amounting to a death rate of 458 incarcerated people per 100,000." (*Id.* ¶ 1.)

In the operative complaint, Plaintiffs' First and Sixth Claims for Relief allege a failure to provide adequate medical and dental care to incarcerated people in violation of the of the United States and California Constitutions. (*See* TAC ¶¶ 442–47, 481–86.) On November 3, 2023, the Court granted the parties' joint motion to certify a class of individuals under Federal Rule of Civil Procedure 23(b)(2). (Doc. No. 435.) As relevant to this Order, the Court certified a class of individuals under Federal Rule of Civil Procedure 23(b)(2) defined as:

> All adults who are now, or will be in the future, incarcerated in any of the San Diego County Jail facilities ("Incarcerated People Class").

(*Id.* at 10.)

The Court also granted the parties' request for approval of the proposed class notice plan, ordering that copies of the notice be posted throughout the Jails in English and Spanish ("Class Notice"); that Defendant Sheriff's Department read the Class Notice to individuals who are illiterate or have a disability that may affect their ability to read the Notice; and that copies of the TAC be provided by Defendant Sheriff's Department to class members upon request. (*Id.* at 11.)

The parties engaged in extensive fact and expert discovery related to the First and Sixth Claims for Relief, including three on-site facility inspections by Plaintiffs' medical experts (Dr. Jeffrey Keller and Dr. Kelly Ramsey) and dental expert (Dr. Jay Shulman), several Rule 30(b)(6) depositions, production of thousands of documents, exchanges of expert reports, and expert depositions. (Declaration of Gay Crosthwait Grunfeld ("Grunfeld Decl."), Doc. No. 1093-2, ¶ 5.)

Between January 2026 and May 2026, the parties exchanged multiple proposals to resolve the First and Sixth Claims for Relief. (Grunfeld Decl. ¶ 15.) The parties engaged in extensive, arms-length settlement discussions, overseen by Magistrate Judge David D. Leshner. (*Id.*) These discussions took place on January 26, 2026; February 12, 2026; February 25, 2026; March 13, 2026; March 25, 2026; and April 9, 2026. (Grunfeld Decl., Ex. A ¶ 3.) Magistrate Judge Leshner attended three of these settlement discussions. (Grunfeld Decl. ¶ 15.) The Board of Supervisors approved the Medical and Dental Settlement Agreement on May 19, 2026. (*Id.*) On May 20, 2026, the parties filed the Settlement Agreement as a joint motion. (Doc. No. 1070.) The Court approved the joint motion on May 26, 2026. (Doc. No. 1073.)

The parties subsequently filed a joint motion for preliminary approval of the Medical and Dental Settlement. (Doc. No. 1093.) The Court granted the joint motion and entered the order granting preliminary approval (the "Preliminary Approval Order"), which *inter alia* approved the parties' distribution method for class notice, set administrative notice and objection deadlines, and tentatively approved the Medical and Dental Settlement. (Doc. No. 1094.) The Court ordered Defendants to distribute notice to the Class Members within seven business days of the Preliminary Approval Order and set a deadline of 45 days from distribution of notice for objections by Class Members. (*Id.* at 10–11.) After notice was effectuated, the Court received four submissions from people incarcerated at

the Jail commenting on the proposed settlement.[1] (Doc. Nos. 1106; 1108; 1109; 1117.)

A Fairness Hearing on the Medical and Dental Settlement and the Motion for Final Approval was held on November 19, 2026.

## II. SETTLEMENT AGREEMENT

The parties have executed the Medical and Dental Settlement Agreement. (*See* Doc. No. 1114-3, Ex. A.) The Medical and Dental Settlement Agreement resolves Plaintiffs' First and Sixth Claims for Relief and identifies the measures that Defendants have agreed to implement to resolve that claim. The primary terms of the Medical and Dental Settlement Agreement are as follows:

### A. Improvements to access to care

The Settlement Agreement requires that a doctor or other provider evaluate all people with chronic or acute medical or dental issues at booking within one or seven days, depending on the presence or absence of symptoms, and that the County continue medications and treatments people were receiving in the community prior to their arrest. The Settlement Agreement also establishes timelines for health care staff to evaluate people who submit requests for medical or dental care. (*See* Grunfeld Decl., Ex. A ¶¶ 24, 27, 31–37.)

### B. Improvements to treatment for people with chronic conditions

The Settlement Agreement requires the County to continue to develop and modify individual treatment plans for all people with chronic conditions, to develop disease management guidelines (DMGs) for many of the most common chronic conditions, and to treat patients consistent with the DMGs or document a clinical justification for deviation. (*Id.* ¶¶ 57–59.)

---

[1] Three of the letters were submitted prior to the filing of the Joint Motion for Final Approval. (*See* Doc. Nos. 1106; 1108; 1109.) The parties address these letters in their Joint Motion. One letter was submitted after the Joint Motion for Final Approval. (*See* Doc. No. 1117.) This letter was addressed at the November 19, 2026 Fairness Hearing.

### C. Improvements in the treatment of people with substance use disorders and who are experiencing withdrawal

Since the filing of this lawsuit, the County has made substantial improvements for treatment for people with substance use disorders. The Settlement Agreement continues those improvements and requires others, including eliminating any policy where the County would discontinue treatment if someone is found to have diverted medication and requiring that the County monitor people experiencing withdrawal at clinically appropriate intervals. (*Id.* ¶¶ 71–74.)

### D. Increases in dental staffing

The Settlement Agreement mandates that the County have at least one dentist for every 1000 people in the Jail, which will likely lead to a significant improvement in dental staffing at the Jail. (*Id.* ¶ 77.)

### E. Improvements in training for sworn and health care staff

The Settlement Agreement mandates that the County provide health care staff with targeted training regarding withdrawal and provide sworn staff with training regarding when to refer incarcerated people to health care staff. (*Id.* ¶¶ 54–55.)

### F. Improvements to continuous quality improvement and review of sentinel events, including deaths

The Settlement Agreement requires that the County conduct its own review of the most important medical and dental processes at the Jail, including the intake process, the health care request process, and the process for providing access to offsite care. In addition, the agreement requires that, when any incarcerated person dies or suffers permanent medical or dental injury, the County must conduct a review, including performing a "root cause" analysis to identify any deficiencies in care and recommending and implementing any corrective action. (*Id.* ¶¶ 49–50.)

### G. Improvements addressing refusals of care

The Settlement Agreement requires that the County provide counseling to all people who refuse any medication or appointments. When people refuse lifesaving treatments or

medication, Jail staff must provide counseling and must notify a provider, who will decide if additional counseling is appropriate. (*Id.* ¶¶ 39–45.)

### H. Requiring that people with insulin pumps can keep them

The Settlement Agreement mandates that people who enter the Jail with insulin pumps can retain possession of them and that the County will provide appropriate insulin and take reasonable steps to repair or replace broken pumps. (*Id.* ¶ 61.)

### I. Appointment of neutral experts

The Settlement Agreement requires the appointment of neutral experts (one medical and one dental) to report twice yearly on the County's implementation of the agreement based on inspection of the facilities, interviews with staff and class members, as well as access to and review of the County's policies and documentation. Id., ¶¶ 83–92.

### J. Class Counsel participation

The Settlement Agreement provides for the continued involvement of Class Counsel, including through interviews at the facilities with class members as provided by the Settlement Agreement, accompanying the independent neutrals on their inspections of the facilities, and access to documents as provided by the Settlement. (*Id.* ¶¶ 88, 93, 98.)

### K. Continuing Court Jurisdiction

The Settlement Agreement provides that the Court will exercise continuing jurisdiction over the Settlement Agreement until the County has achieved substantial compliance with the Settlement Agreement. (*Id.* ¶ 107.)

## III. MOTION FOR FINAL APPROVAL

The Parties filed the instant Motion for Final Approval, asking the Court to find that (1) the Medical and Dental Settlement is fair and reasonable and (2) the comments and objections to the Medical and Dental Settlement do not warrant rejecting the Settlement. (Doc. No. 1114-1 at 11–14, 14–15.) For the reasons set forth below, the Court **GRANTS** the Motion for Final Approval.

**A. Legal Standard**

A class action may only be settled with court approval, "which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)). "Courts reviewing class action settlements must 'ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights,' while also accounting for 'the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556, 568 (9th Cir. 2019) (en banc)).

**B. Class Certification**

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *See* Fed. R. Civ. P. 23(e)(1)(B). However, "[i]f the court has already certified a class [prior to the parties reaching settlement], the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment.

Here, the Court certified the Class after full briefing on the matter, prior to the parties reaching a settlement. (*See* Doc. No. 435.) Because the Medical and Dental Settlement does not call for any changes to the certified class, the claims, defenses, or issues, the Court does not disturb its prior certification order and finds that no further analysis is necessary.

**C. Adequacy of Notice**

Next, the Court must determine whether the Class received adequate notice. *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]"). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

The Court approved the proposed class notice of the Medical and Dental Settlement. (Doc. No. 1094 at 10–11.) Filed in conjunction with the parties' Motion for Final Approval, the Grunfeld Declaration states "I emailed counsel for Defendants to ask them to confirm when they had completed distribution of the Notice of the Settlement Agreement. That same day, counsel for Defendants confirmed via email that Defendants had complied with their notice obligations as of July 13, 2026." (Grunfeld Decl. ¶ 17.) Specifically, pursuant to the Notice Plan, Defendants (1) posted the Proposed Settlement Notice in English and Spanish throughout the San Diego County Jail facilities on white paper and in 16-point font for the Subclass, including in housing units, intake areas, holding cells, and medical units; (2) provided a hard copy of the Class Notice to every individual who entered the Jail for a period of four weeks; (3) provided the Class Notice in English and Spanish on video kiosks in housing units; and (4) read the Class Notice to incarcerated people who have a disability that may affect their ability to read the Class Notice. (*See* Doc. No. 1094 at 10–11.)

Having reviewed the Grunfeld Declaration, the Court finds that Defendants duly effectuated the Court-approved Class Notice and that Class Members received adequate notice of the Medical and Dental Settlement.

**D. Fairness, Reasonableness, and Adequacy of Settlement**

Although Rule 23(e) was previously "silent respecting the standard by which a proposed settlement is to be evaluated, the 'universally applied standard [was] whether the settlement is fundamentally fair, adequate, and reasonable.'" *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026; *see also Officers for Justice*, 688 F.2d at 630 (holding a settlement must

stand or fall in its entirety because a district court cannot "delete, modify or substitute certain provisions").

The Ninth Circuit has proscribed several factors for district courts to consider when evaluating the fairness of a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Campbell*, 951 F.3d at 1121. District courts may consider some or all of these factors. *Id.* (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). "The district court's approval order must show not only that 'it has explored [these] factors comprehensively,' but also that the settlement is 'not[] the product of collusion among the negotiating parties.'" *In re Bluetooth*, 654 F.3d at 947 (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000)).

In 2018, Rule 23(e)(2) was amended to require courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (v) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The amended Rule 23(e)(2) factors were not intended to replace the factors developed by circuits. *Cabrales v. Bae Sys. San Diego Ship Repair, Inc.*, No.

21-cv-02122-AJB-DDL, 2024 WL 4994339, at *15 (S.D. Cal. Dec. 5, 2024) (citing Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment). Thus, the Court analyzes Rule 23(e)(2) factors as well as the factors articulated by Ninth Circuit.

**1. Rule 23(e)(2) Factors**

In its Preliminary Approval Order, the Court found that the applicable Rule 23(e)(2) factors weighed in favor of approving the Medical and Dental Settlement. (*See* Doc. No. 1094 at 7–10.) Given the complexity and age of the case, the Court concluded that weighing the strength of Plaintiffs' claims against Defendants, and the risk, expense, complexity, and risk of maintaining class status throughout trial, weighed in favor of approving the Settlement. (*Id.*) The Court found that the policies, procedures, and practices proposed to protect Class Members' constitutional rights, the expanding medical and dental policies and procedures, and the neutral experts to issue reports on compliance all result in a substantial and tangible recovery, without the considerable risk, expense, and delay of trial and post-trial litigation. (*Id.* at 9.)

As of the filing of the Joint Motion for Final Approval, three Class Members responded to the proposed settlement. (*See* Doc Nos. 1106, 1108, 1109.) Class Counsel reached out to each of these writers seeking more information and mailed each a copy of the Settlement Agreement. (*See* Grunfeld Decl., ¶¶ 18–19.) Of the three writers, one objects to the Settlement Agreement and two offer comments which do not clearly oppose or support the Settlement.

The Class Member who objects to the settlement objects on the grounds that Class Members should receive monetary damages. (Doc. No. 1109.) Plaintiffs' counsel sent the objector a copy of the settlement agreement and submitted multiple attorney call-back requests to speak with him. (Grunfeld Decl. ¶ 21.) The writer has not called Plaintiffs' counsel's office. (*Id.*) In response to this writer, Class Counsel argues that the request for damages should not prevent approval of the Medical and Dental Settlement. (Doc. No. 1114-1 at 14–15.) Class Counsel states that the certified Class seeks only declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2) (*see id.* (citing Doc.

No. 231 at 225–230)), and the settlement does not bar class members from pursuing individual damage claims (*id.*). Consistent with the Court's previous orders, the Court once again agrees. (*See* Doc. Nos. 947; 1104.)

The second writer submitted a six-page letter which does not discuss medical or dental care at the Jail, except for one sentence stating that "[t]here is no oral hygeine [sic] here." (*See* Doc. No. 1108.) Class Counsel states that by the time Plaintiffs' counsel received the letter, the writer was no longer in custody. (Grunfeld Decl. ¶ 22.) Plaintiffs' counsel states that they attempted to contact the writer at the phone number provided, but they were not able to reach her. (*Id.*)

The third writer describes poor dental treatment he has received in the Jail and requests help with his pain and suffering. (*See* Doc. No. 1106.) The writer did not discuss the Medical and Dental Settlement Agreement. (*See id.*) Class Counsel states that Plaintiffs' counsel sent the writer a copy of the Settlement Agreement. (Grunfeld Decl. ¶ 23.) Since then, Plaintiffs have spoken with this writer by telephone, and he has indicated that he supports the Settlement Agreement. (*Id.*)

Plaintiffs' counsel also received one phone call from a class member who sent a letter to the Court that the Court rejected. (Grunfeld Decl. ¶ 24.) The class member read the letter aloud to Plaintiffs' counsel. (*Id.*) According to Plaintiffs' counsel, the letter supports the Medical and Dental Settlement. (*Id.*) At the November 19, 2026 Fairness Hearing, Plaintiff's counsel read aloud the letter's first sentence in support of the Settlement Agreement.

One additional letter was filed with the Court after the Joint Motion for Final Approval. (*See* Doc. No. 1117.) The Court issued an Order in Preparation of Hearing, requesting Class Counsel to be prepared to address this submission at the November 19, 2026 Fairness Hearing. (Doc. No. 1133.) At the hearing, Plaintiff's counsel informed the Court that they had since spoken with the writer on multiple occasions and provided him with the complete settlement agreement, and that the writer does not object to the settlement.

After careful review of all the comments submitted related to the Medical and Dental Settlement, the Court finds none of the Class Members' letters merit rejecting the Settlement. As it relates to the objector, because "the general rule is that a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damages claims by class members, even if based on the same events," *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996), Class Members may pursue individual damages in separate proceedings. None of the remaining submissions object to the Settlement Agreement.

Accordingly, the Court reaffirms and incorporates by reference its analysis of the Rule 23(e) requirements as set forth in its Preliminary Approval Order. (*See* Doc. No. 1041 at 7–11); *see also Bloom v. City of San Diego*, No. 17-cv-02324-AJB-DEB, 2024 WL 4495512, at *6 (S.D. Cal. Oct. 15, 2024) (finding settlement to be "fair, reasonable, and adequate" where case only sought injunctive relief in part because class members were free to independently file suit for damages).

### 2. Additional Ninth Circuit Factors

Because the amended Rule 23(e)(2) factors were not intended to replace the factors developed by circuits, the Court now turns to analyze the factors traditionally considered by this Circuit. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

#### i. Experience and Views of Counsel

In its Preliminary Approval Order, the Court found the experience and views of Plaintiffs' Counsel weighed in favor of approval. (Doc. No. 1094 at 8.) As no changes to Plaintiffs' Counsel have occurred, no relevant facts have changed, and no objections regarding Plaintiffs' Counsel have been brought to the Court, the Court reaffirms and incorporates by reference its analysis on this factor and finds this factor weighs in favor of Settlement approval.

#### ii. Presence of a Governmental Participant

"The presence of a governmental participant in the class action settlement generally weighs in favor of approving the settlement." *Fitzgerald v. Pollard*, No. 20-cv-848-JM-MSB, 2024 WL 4596401, at *7 (S.D. Cal. Oct. 28, 2024).

Here, Defendants include the County of San Diego, the San Diego County Sheriff's Department, and the San Diego County Probation Department. Accordingly, this factor weighs in favor of approving the Settlement. *See id.* ("Defendants are various agents of the State of California and its corrections department who support the Settlement. This factor, therefore, weighs in favor of settlement.")

**iii. Reaction of Class Members**

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)).

Here, four Class Members submitted letters in response to the Notice of Settlement. Only one of those letters contained an objection to the Settlement Agreement. (*See* Doc. No. 1109.) The Court has carefully reviewed the four letters submitted by the Class Members. (*See* Doc. Nos. 1106; 1108; 1109; 1117.) As discussed above, the only opposition to the Settlement is that the Settlement does not include damages. Yet, the certified Class only seeks declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2). Because the Settlement does not bar Class Members from separately pursuing claims for individual damages, the Court finds the Class Member's objection does not weigh against approving the Settlement.

## IV. CONCLUSION

Having analyzed the Rule 23(e)(2) factors and the Ninth Circuit's factors, and finding them to weigh heavily in favor of approval, the Court finds the Medical and Dental Settlement fundamentally fair, adequate, and reasonable. *See Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution[,] especially . . . in complex class action litigation . . . ."). Accordingly,

based on the foregoing, the Court **GRANTS** the Joint Motion for Final Approval of the Medical and Dental Settlement. (Doc. No. 1114-1.)

**IT IS SO ORDERED.**

Dated: November 19, 2026

Hon. Anthony J. Battaglia
United States District Judge